# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | Case No. 19-11466 (____) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) | |
| *al.*,[1] | ) | Joint Administration Requested |
| | ) | |
| Debtors. | ) | |
| | ) | |

## MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; (III) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO POSTPETITION INTERCOMPANY CLAIMS; AND (IV) GRANTING RELATED RELIEF

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through their proposed undersigned counsel, file this motion (this "**Motion**") pursuant to sections 105(a), 363, 364, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**," and together, the "**Proposed Orders**"): (i) authorizing the Debtors to continue to use their cash management system (the "**Cash Management System**") and bank

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

accounts, as set forth below; (ii) authorizing the Debtors to continue their existing deposit practices under the Cash Management System (subject to certain reasonable changes to the Cash Management System that the Debtors may implement); and (iii) authorizing the Debtors to continue to perform Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense priority to Intercompany Claims (as defined below). In support of the Motion, the Debtors rely on and incorporate by reference the *Declaration of Allen Wilen in Support of First Day Relief* (the "**First Day Declaration**"), and respectfully represent:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**")*,* the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2.      On June 30, 2019 and the date hereof (together, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or

2

examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

3.      A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

## **RELIEF REQUESTED**

4.      By this Motion, the Debtors request the entry of the Proposed Orders authorizing the Debtors to continue to use their Cash Management System in the ordinary course of business and granting related relief.

5.      Specifically, the Debtors seek authority to: (i) maintain and continue to use the Bank Accounts (as defined below) in the same manner and with existing account numbers, styles, and document forms; (ii) deposit funds in, and withdraw funds from, the Bank Accounts by usual means, including check, wire transfer, automated clearinghouse ("**ACH**") transfer, draft, electronic fund transfer, centralized lockbox, or other items presented, issued, or drawn on the Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Bank Accounts; (iv) perform their obligations under the Bank Accounts' governing documents and agreements; (v) treat the Bank Accounts for all purposes as "debtor in possession" accounts; and (vi) close any inactive accounts with zero balances.

6.      To maintain the efficient operation of the Cash Management System during these cases, the Debtors also request that their Banks (as defined below) be authorized and directed to continue to administer, service, and maintain the Bank Accounts, as they were prepetition, without interruption and in the Debtors' ordinary course of business.  In that regard, the Debtors seek to continue to receive, process, honor, and pay (or to reissue, as may be necessary) all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued,

or drawn on the Bank Accounts (collectively, the "**Disbursements**") on account of any claim this Court grants the Debtors approval to pay arising before, on, or after the Petition Date, and in reliance on the Debtors' representations of such authority, subject to the applicable Bank Accounts containing sufficient funds.

7.    Both here and in other first-day motions, the Debtors seek authority to pay certain prepetition obligations.  For certain of these obligations, the Debtors issued Disbursements before the Petition Date that have yet to clear.  For others, the Debtors will issue a Disbursement once they have Court authority to do so.  The Debtors request that their Banks be authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored.  If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors request authority to issue replacement Disbursements consistent with the orders of this Court.

8.    While continuity of the Cash Management System is critical to the Debtors' business operations, flexibility is also needed.  To that end, the Debtors request authority to implement reasonable changes to the Cash Management System that are deemed necessary or appropriate in the ordinary course of business, including closing any Bank Account and establishing new bank accounts, and that the applicable Banks be authorized to honor such changes.

9.    Finally, the Debtors request authority to continue, in the ordinary course, certain transactions (the "**Intercompany Transactions**") between and among the Debtors including, for example, payments in connection with intercompany agreements, loans, or advances by or between Debtors, allocations of overhead, and other charges between and among the Debtors. The Intercompany Transactions provide substantial benefits to the Debtors and their estates and are necessary to maintain control over cash management among the Debtors and avoid

substantial disruption to their business.  Furthermore, in order to avoid disruption to the Cash Management System, the Debtors request that all receivables and payables arising postpetition from such Intercompany Transactions (collectively, the "**Intercompany Claims**"*)* be accorded administrative expense status.

### THE CASH MANAGEMENT SYSTEM

10.     The Cash Management System is an integrated network of bank accounts that is critical to the Debtors' operations during these cases.  The Debtors have designed the Cash Management System to meet their operating needs, enable management to control and monitor corporate funds, comply with the requirements of their financing agreements, reduce administrative expenses by facilitating the movement of funds, and enhance the development of accurate account balances.  The Debtors have maintained their Cash Management System since their inception, and the Cash Management System has served as the primary cash flow mechanism for the Debtors' ordinary, usual, and essential business operations.

11.     As of the Petition Date, the Cash Management System includes fifty-five (55) bank accounts listed on **Exhibit C** to this Motion (each a "**Bank Account**" and collectively the "**Bank Accounts**"), which are located at Wells Fargo, N.A. ("**Wells Fargo**"), Bank of America, N.A., Capital One Bank, N.A. ("**Capital One**") and PNC Bank, N.A. (collectively, the "**Banks**") and used in the ordinary course of the Debtors' businesses.[2]  The Debtors routinely deposit, withdraw, and otherwise transfer money to, from, and between the Bank Accounts by various methods (collectively, the "**Ordinary Transfer Methods**"), including by checks, drafts, ACH transfers, and other electronic funds transfers.

---

[2]     The Debtors note that certain parties sublease space from the Debtors within the Debtors' hospitals.  These subtenants deposit their rent payments directly into accounts held by the applicable Debtors' landlords, who are non-debtor affiliates of the Debtors.  The rent from these subtenants is credited against the Debtors' primary rent obligations to the non-debtor landlords.

12.     The Debtors' primary accounts are held at Wells Fargo.  These include master deposit and concentration accounts held by Debtor Philadelphia Academic Health System, LLC ("**PAHS**"), government and non-government lockbox accounts for each operating entity, operating disbursement accounts for CCH, St. Christopher's Healthcare, LLC ("**SCH**") and Philadelphia Academic Medical Associates, LLC ("**PAMA**"), and payroll accounts for CCH and SCH.  PAHS also maintains separate accounts for funding medical and dental benefits claims, voluntary benefits and merchant credit card deposits.

13.     Receipts are deposited into the applicable deposit accounts, and then aggregated on a daily basis into PAHS's master deposit account (the "**Master Deposit Account**") via zero balance accounts.  Cash on hand in the Master Deposit Account and in the lockbox accounts is swept daily by MidCap Funding IV Trust ("**MidCap**"*)* under the Debtors' prepetition senior secured credit facility in order to pay down the  facility.  The Debtors submit advance requests to MidCap via borrowing base certificate, typically on a weekly basis, and proceeds are funded into the master concentration account held by PAHS (the "**Master Concentration Account**").  Intercompany transfers are then made through the Master Concentration Account to other accounts maintained by the Debtors.

14.     STC utilizes the bank accounts at Capital One to facilitate rent payments from subtenants, who sublease space from STC, to STC's landlords (which are non-debtor affiliates of the Debtors).  Each of the accounts is subject to a deposit account control agreement with Capital One and the relevant landlord.  Subtenants deposit their rent payments into the Capital One accounts.  Such amounts are then swept into accounts maintained by STC's landlords.  The rent from the subtenants is credited against STC's primary lease obligations to the landlords.

35177094.6 07/01/2019

15.    A general overview of the movement of cash through the Debtors' Cash Management System is illustrated by the flow of funds charts is attached hereto as **Exhibit D**.

**EXISTING BUSINESS FORMS AND CHECKS**

16.    In the ordinary course of business, the Debtors use a variety of checks, correspondence, and business forms.  To minimize expenses to their estates and avoid unnecessarily confusing their employees and creditors, the Debtors believe it is appropriate to continue to use the existing stock of checks, correspondence, and other business forms (including, without limitation, letterhead, purchase orders, and invoices) (collectively, the "**Business Forms**") as such forms were in existence immediately before the Petition Date – without reference to the Debtors' status as debtors-in-possession – rather than disposing of the existing forms and delaying operations until new Business Forms are obtained, or requiring the Debtors to include a legend on their Business Forms that would cause unnecessary confusion. After existing Business Forms are depleted, the Debtors' Business Forms will identify the Debtors' status as debtors-in-possession.

**BANK FEES**

17.    The Debtors incur periodic service charges and other fees, which are paid daily, in connection with the maintenance of the Cash Management System (the "**Bank Fees**").  Bank Fees are typically paid on a monthly basis, and the Debtors have historically incurred Bank Fees of approximately $56,443 per month.  Such amounts are paid by way of debit from the respective Bank Account for which the Bank Fee is incurred.

18.    As of the Petition Date, the Debtors estimate that approximately $34,000 in Bank Fees have accrued and remain unpaid.  The Debtors seek permission to pay these Bank Fees in the ordinary course and to continue paying the Bank Fees in accordance with past practices.

35177094.6 07/01/2019

## INTERCOMPANY TRANSACTIONS

19.     The Debtors have historically and in the ordinary course of business engaged in routine business relationships with each other and certain of their affiliates.  For example, each operating entity has its own lockbox accounts to collect cash receipts, which are then aggregated into the Master Deposit Account held by PAHS.  Likewise, the Master Concentration Account held by PAHS receives proceeds of the Debtors' prepetition credit facility and distributes the cash to various other disbursement accounts, including petty cash accounts held by subsidiaries. The Debtors track all fund transfers in their accounting systems and can ascertain, trace, and account for all Intercompany Transactions. If the Intercompany Transactions were discontinued, the Cash Management System and the Debtors' operations could be unnecessarily disrupted, to the detriment of the Debtors' estates, their creditors, and other stakeholders.

## BASIS FOR RELIEF REQUESTED

A.     **Continued Use of the Cash Management System is Essential to the Debtors' Business Operations**

20.     Section 363(c)(1) of the Bankruptcy Code permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide debtors flexibility to operate their businesses without unnecessary creditor or court oversight. *In re Roth Am., Inc.,* 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (internal citation omitted).  Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" a debtor's cash management system requires. *In re Amdura Corp.,* 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally

authorized to continue operating its business," including performing "routine transactions necessitated by the [existing] cash management system.").

21.    Bankruptcy courts routinely permit chapter 11 debtors to continue using their existing cash management system. *See In re Columbia Gas Sys.*, 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code). In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

22.    The Court may also rely on its equitable powers to grant the relief requested in this Motion. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court may authorize the continuation of the Cash Management System because such relief is necessary for the Debtors to carry out their fiduciary duties under sections 1107(a) and 1108 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108, debtors in possession are fiduciaries holding the bankruptcy estate and operating the

business for the benefit of their economic stakeholders.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Consistent with such fiduciary duties, courts have authorized payment of prepetition obligations where a sound business purpose justifies the payment of such claims.

23.    The Cash Management System is a customary and essential business practice of the Debtors and provides numerous benefits, including the ability to control and monitor corporate funds and ensure availability of cash to fund operations.  The value of the Debtors' estates cannot be maximized if the Cash Management System is substantially disrupted. Additionally, preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that inevitably would be associated with any substantial disruption of the Cash Management System will facilitate the stabilization of the Debtors' business operations.

24.    Parties in interest will not be harmed by the Debtors' maintenance of the existing Cash Management System, including the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date.  Specifically, with the assistance of their professional advisors and consistent with prior practice, the Debtors will continue to maintain detailed records of all transfers of cash and record all transactions on applicable accounts. Therefore, the Debtors should be permitted to continue to manage their cash and transfer monies among the Bank Accounts in accordance with the Cash Management System.

**B.    Continued Use of Existing Bank Accounts and Business Forms Should be Permitted**

1.    *Use of Existing Bank Accounts and Payment of Bank Fees*

25.    Implementing the U.S. Trustee guidelines, including, without limitation, establishing one debtor in possession account for all estate monies required for the payment of

taxes (including payroll taxes), closing all existing bank accounts and opening new debtor in possession accounts, maintaining a separate debtor in possession account for cash collateral, obtaining checks that bear the designation "debtor in possession," and referencing the bankruptcy case number and the type of account on such checks, would needlessly interrupt the Debtors' operations and impair the Debtors' efforts to preserve the value of their estates.

26.    Specifically, as a healthcare business that receives payments and reimbursements from government payors, the Debtors are required to maintain deposit accounts that are linked with specific healthcare providers.  Modifying the Bank Accounts in any way would be a difficult and time-intensive effort in order to fully comply with applicable regulations and ensure continued receipt of receivables, timely collection of which will inure to the benefit of the Debtors' estates and creditors.  Thus, the Debtors respectfully request that the court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business. In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.[3]

27.    The Debtors further request that the Court authorize the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH Transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH Transfers are dated prior to or subsequent to the

---

[3]    Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

Petition Date.  The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any Bank Account that is the subject of the Motion either (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored post-petition.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

28.    In the ordinary course of business, the Banks charge, and the Debtors pay, honor, or allow the deduction of Bank Fees from the appropriate Bank Account.  The Debtors respectfully request that the Court authorize the Banks to (a) continue to charge the Debtors the Bank Fees and (b) charge-back returned items to the Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.  The Debtors further request that the Court order that liens on any of the Bank Accounts granted to creditors will not have priority over the Bank Fees of the respective Bank at which the Bank Account is located.

29.    Although the Debtors are requesting to be excused from complying with the requirement that they close all Bank Accounts and open new debtor in possession bank accounts, the Debtors may determine, in their business judgment, that opening new bank accounts and closing existing Bank Accounts may be in the best interests of their estates.  As such, the Debtors request that nothing contained herein shall prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate in

12

their sole discretion, so long as any new account is established at a bank insured with the FDIC and that is organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, is on the U.S. Trustee's List of Approved Depositories for the District of Delaware.

2.   *Use of Existing Business Forms*

30.   The Debtors use numerous Business Forms in the ordinary course of their businesses.  As mentioned above, the Debtors request authority to continue using their existing prepetition Business Forms without reference to their status as debtors in possession or any other alteration, until the Business Forms are depleted.

31.   The Debtors will issue, and will instruct third parties issuing checks on their behalf to issue checks bearing the legend "Debtors in Possession" after the existing supply of checks is depleted and it is reasonably practicable for the Debtors or such third parties to do so.

**C.   The Debtors Should be Authorized to Continue Intercompany Transactions in the Ordinary Course of Business.**

32.   As noted above, the Intercompany Transactions are made between and among the Debtors in the ordinary course.  As a result, at any given time there may be intercompany claims between the Debtors.  Because the Debtors engage in the Intercompany Transactions regularly and such transactions are common among enterprises such as the Debtors, the Intercompany Transactions are ordinary course transactions under section 363(c)(1) of the Bankruptcy Code and do not require Court approval.  Nonetheless, out of an abundance of caution, the Debtors seek authority to engage in such transactions post-petition.

33.   Ordinary course Intercompany Transactions are integral to ensure that the Debtors are able to operate their businesses as debtors in possession and to preserve valuable estate assets.  Absent the Intercompany Transactions, the Cash Management System would be severely

disrupted, and the Debtors' businesses in turn would be materially harmed.  The Debtors would be unable to centralize and control cash management, exposing the Debtors to the risks of cash leakage and misallocation of critical resources.  Moreover, the Intercompany Transactions provide the Debtors with access to liquidity that may be necessary to fund ongoing operations. Accordingly, the Debtors respectfully submit that the authority to make Intercompany Transactions in the ordinary course is in the best interest of their estates.

34.     Further, the Debtors also request that the Court grant administrative expense status to all Intercompany Claims against a Debtor by another Debtor that arise postpetition as a result of an Intercompany Transaction.  If Intercompany Claims are accorded such status, each entity using funds that flow through the Cash Management System will continue to bear the ultimate responsibility for their ordinary-course transactions with affiliates.  *See, e.g.*, *In re Real Mex Restaurants, Inc.*, No. 11-13122 (BLS) (Bankr. D. Del. Oct. 5, 2011) (approving intercompany transactions and according administrative priority status to intercompany claims arising after the petition date as a result of such intercompany transactions); *In re Appleseed's Intermediate Holding LLC*, No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011) (allowing debtors to engage in intercompany transactions and to honor and pay obligations in connection with such transactions and according administrative expense priority to claims arising out of such intercompany transactions).

35.     Similar relief has been recently granted in this jurisdiction.  *See, e.g.*, *In re ATD Corp.*, Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [D.I. 101] (order authorizing continued use of cash management system); *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 37] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 66] (same).

## REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

36.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . ." Fed. R. Bankr. P. 6003(b).

37.     Failure to receive the authorization and other relief requested in this Motion during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.  As such, because the relief requested in this Motion is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of the Debtors' operations for the benefit of all stakeholders and otherwise avoid immediate and irreparable harm to the Debtors, the Debtors submit that Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.  *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts can approve orders that allow payment of prepetition debt, which is necessary for the debtors to reorganize and restructure their debts and maximize the value of the bankruptcy estate).

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

38.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a).  Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h). As set forth above, uninterrupted use of the Cash Management System is essential to prevent

potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

39.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  If this Court grants the relief requested in this Motion, any Court authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim.  In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## NOTICE

40.     The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Human Services; (xi) the City of Philadelphia; (xii) the Banks; and (xiii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion seeks "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

WHEREFORE, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: July 1, 2019　　　　　　　　　**SAUL EWING ARNSTEIN & LEHR LLP**

　　　　　　　　　　By:　　*/s/ Monique B. DiSabatino*
　　　　　　　　　　　　　　Mark Minuti (DE Bar No. 2659)
　　　　　　　　　　　　　　Monique B. DiSabatino (DE Bar No. 6027)
　　　　　　　　　　　　　　1201 N. Market Street, Suite 2300
　　　　　　　　　　　　　　P.O. Box 1266
　　　　　　　　　　　　　　Wilmington, DE  19899
　　　　　　　　　　　　　　Telephone: (302) 421-6800
　　　　　　　　　　　　　　Fax: (302) 421-5873
　　　　　　　　　　　　　　mark.minuti@saul.com
　　　　　　　　　　　　　　monique.disabatino@saul.com

　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　Jeffrey C. Hampton
　　　　　　　　　　　　　　Adam H. Isenberg
　　　　　　　　　　　　　　Aaron S. Applebaum (DE Bar No. 5587)
　　　　　　　　　　　　　　Centre Square West
　　　　　　　　　　　　　　1500 Market Street, 38th Floor
　　　　　　　　　　　　　　Philadelphia, PA 19102
　　　　　　　　　　　　　　Telephone: (215) 972-7700
　　　　　　　　　　　　　　Fax: (215) 972-7725
　　　　　　　　　　　　　　jeffrey.hampton@saul.com
　　　　　　　　　　　　　　adam.isenberg@saul.com
　　　　　　　　　　　　　　aaron.applebaum@saul.com

　　　　　　　　　　　　　　*Proposed Counsel for Debtors and*
　　　　　　　　　　　　　　*Debtors in Possession*