**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (___) |
| | Joint Administration Requested |
| Debtors. | |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION AND**
**POSTPETITION TAXES AND FEES AND (II) GRANTING RELATED RELIEF**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), by and through their undersigned proposed counsel, hereby file this motion (the "**Motion**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 363, 507, and 541 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**," and together, the "**Proposed Orders**"), authorizing the payment of certain prepetition and postpetition taxes and fees. In support of the Motion, the Debtors rely on and incorporate by reference the *Declaration of Allen Wilen in Support of First Day Relief* (the "**First Day Declaration**"), and respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On June 30, 2019 and the date hereof (together, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

3.      A description of the Debtors' businesses, capital and debt structures, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

## RELIEF REQUESTED

4.      By this Motion, the Debtors request entry of the Proposed Orders (i) authorizing, but not directing, the Debtors to remit and pay (or use tax credits to offset) the Taxes and Fees (as defined below) in the ordinary course of business, without regard to whether such obligations accrued or arose before or after the Petition Date and (ii) granting related relief.[2]  A summary of the Taxes and Fees for which the Debtors seek authority to pay is set forth below[3]:

| Category | Description | Obligor | Outstanding as of Petition Date | Due within Interim Period |
|---|---|---|---|---|
| Sales and Use Taxes | State taxes and obligations related to the sale of goods or services | CCH | $488,357.60 | $128,906.80 |
| | | STC[4] | $207,164.19 | $90,550.60 |
| Quality Care Assessments | State taxes and obligations related to net patient revenue | STC | $1,580,655.45 | $- |
| Fees | Regulatory and Licensing Fees | CCH | (See ¶¶ 12-13) | (See ¶¶ 12-13) |
| | | STC | (See ¶¶ 12-13) | (See ¶¶ 12-13) |
| | | **Total:** | **$2,276,177.24** | **$219,457.40** |

## TAXES AND FEES

5.      The Debtors collect, withhold, and incur a variety of taxes, including property taxes, bed taxes, business use and occupancy taxes, sales and use taxes and healthcare assessments, as well as annual report filing fees, license and regulatory fees, and other fees. The

---

[2]      By this motion, the Debtors do not seek the authority to collect and remit state and federal employee-related taxes and withholdings.  Such relief is instead requested pursuant to the *Motion of the Debtors for Entry of Interim and Final Orders (i) Authorizing the Debtors to (a) Pay Certain Prepetition Wages, Benefits and Other Compensation, and (b) Continue Employee Compensation and Employee Benefits Programs, and (ii) Granting Related Relief* filed contemporaneously herewith.

[3]      The Debtors acknowledge that their tax obligations as of the Petition Date exceed the amounts described herein.  The Debtors have limited the relief sought by this Motion in a manner consistent with what they anticipate will be their cash availability in the initial portion of these cases.

[4]      "**STC**" refers to St. Christopher's Healthcare, LLC.

Debtors remit the taxes and fees described in this Motion to the Commonwealth of Pennsylvania and the City of Philadelphia, (collectively, the "**Authorities**").[5]

6.      Taxes and fees are remitted and paid by the Debtors through checks and electronic funds transfers that are processed through their banks and other financial institutions.

7.      The Debtors pay taxes and fees to the Authorities on a periodic basis, remitting them monthly, quarterly, semiannually or annually of each year, depending on the nature and incurrence of a particular tax or fee.

**A.      Sales and Use Taxes**

8.      The Debtors are obligated to pay sales and use taxes (the "**Sales and Use Taxes**") on a monthly basis to the Commonwealth of Pennsylvania for the retail sale, consumption, rental or use of tangible personal property in the ordinary course of their operations.  The Debtors typically pay approximately $220,000 per month in Sales and Use Taxes.

9.      The Debtors estimate that they have accrued, as of the Petition Date, approximately $695,521.79 in Sales and Use Taxes, of which $219,457.40 is expected to come due within the first 21 days following the Petition Date (the "**Interim Period**").  The Debtors request authority, but not direction, to pay the Sales and Use Taxes and to continue to pay such taxes if and when they become due and payable during the pendency of these Chapter 11 Cases.

**B.      Quality Care Assessment**

10.      The Commonwealth of Pennsylvania imposes an assessment (the "**Quality Care Assessment**," and together with the Sales and Use Taxes, the "**Taxes**") on the net patient revenue of the Debtors, as well as other licensed hospitals, on a quarterly basis, to ensure access to quality hospital services for Pennsylvania Medicaid beneficiaries.

---

[5]      The Debtors may have inadvertently omitted other taxing authorities.  By this motion, the Debtors request relief with respect to taxes and fees payable to all authorities, regardless of whether such authority has been identified herein.

11.     The Debtors estimate that, as of the Petition Date, STC has accrued approximately $1,580.655.45 in unpaid assessments under the Quality Care Assessment program.  The Debtors request authority, but not direction, to pay STC's assessments under the Quality Care Assessment and to continue to pay STC's assessments if and when they become due and payable during the pendency of these Chapter 11 Cases.[6]

## C.      Regulatory and Licensing Fees

12.     In the ordinary course of the Debtors' operations, the Debtors are obligated to pay a variety of regulatory and licensing Fees, as well as Fees related to the operation of the healthcare business (each a "**Fee**," and collectively, the "**Fees**").  These Fees include annual report filing fees, which are required for the Debtors to conduct their businesses in Pennsylvania.  Moreover, examples of regulatory fees paid by the Debtors include hospital license fees, pharmacy license fees and lab license fees.

13.     To the best of Debtors' knowledge, no Fees are outstanding as of the Petition Date.  However, in an abundance of caution, the Debtors request authority to pay any Fees that may be owed as of the Petition Date, and to continue to pay such Fees as they become due in the ordinary course of the Debtors' businesses.

## BASIS FOR RELIEF

14.     The Debtors believe that any failure to pay the Taxes and Fees may materially disrupt the Debtors' business operations in several ways: (i) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the restructuring process; (ii) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (iii) certain of

---

[6]     Additional Quality Care Assessments may be due and owing by HUH.  The Debtors do not currently have the funding necessary, and therefore do not by this Motion seek authority, to pay HUH's Quality Care Assessments.

the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key employees from their duties related to the Debtors' restructuring. Moreover, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both.

**A.      Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment under the Bankruptcy Code.**

15.      Claims for certain of the Taxes and Fees are or may be priority claims entitled to payment in advance of general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Authorities may attempt to assess interest and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). The accrual of interest is governed by the applicable state law judgment rate. *See In re W. Texas Mktg. Corp.*, 54 F.3d 1194, 1203 (5th Cir. 1995) ("Because § 726(a)(5) states that the interest should be set 'at the legal rate,'…state law determines the existence and amount of interest."). Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.

**B.      Payment of the Taxes and Fees as Provided Herein is a Sound Exercise of the Debtors' Business Judgment.**

16.      Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1). In the

alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

17.     Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

18.     Furthermore, section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity"); *see also In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to a debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del.

1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity).

19.    Moreover, the doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in- possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.").

20.    The Debtors' ability to pay the Taxes and Fees is critical to their continued and uninterrupted operations.  If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, officers or employees, thereby distracting these key personnel from the administration of the Debtors' Chapter 11 Cases.  *See, e.g., In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax" and finding director personally liable for unpaid taxes) (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 547 (1990)); *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 927 (3rd Cir. 1990).  Any collection action on account of such claims, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest.  The dedicated and active participation of the Debtors' officers and employees is integral to the Debtors'

continued operations and essential to the orderly administration and, ultimately, the success of these Chapter 11 Cases.

21.     Furthermore, the Debtors' failure to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the claims for Taxes and Fees, which amounts may also be entitled to priority treatment.  Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders.  As noted above, many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code.  As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied.  To the extent that the Debtors are not able to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest and penalties.  The Debtors' failure to pay the prepetition Taxes and Fees as they come due may, thus, ultimately increase the amount of priority claims held by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors.  *See* 11 U.S.C. §§ 507(a)(8)(C) and 507(a)(8)(G).  Accordingly, the court should grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.

22.     Bankruptcy courts in this District have relied on these authorities and precedent to authorize the payment of prepetition tax obligations in other cases.  *See, e.g.*, *In re Hospital Acquisition LLC*, Case No. 19-10998 (BLS) (Bankr. D. Del. May 8, 2019) (authorizing the debtors to pay certain prepetition taxes); *In re ATD Corporation,* Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [D.I. 98] (same); *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 36] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 69] (same).

C.      **Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates**

23.      To the extent any Taxes or Fees are collected or withheld by the Debtors on behalf of the applicable Authorities, and such Taxes and Fees may be held in trust by the Debtors.  *See, e.g.*, I.R.C. § 7501 (stating that certain Taxes are held in trust).  These Taxes and Fees would not be considered property of the Debtors' estates under section 541 of the Bankruptcy Code.  *See, e.g.*, 11 U.S.C. § 541(d); *Begier v. IRS*, 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference since funds are not the debtor's property); *In re Calabrese*, 689 F.3d 312 (3d Cir. 2012) (finding that sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same).  To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under section 541(d) of the Bankruptcy Code.  *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104–05 (Bankr. E.D. Pa. 1987).  Because the Debtors may not have any interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay any such funds to the Authorities as they become due.[7]

D.      **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Funds Transfers**

24.      The Debtors further request that the Court authorize the Debtors' banks to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks issued or to be issued and electronic funds transfers requested or to be requested by the Debtors relating to the prepetition Taxes and Fees.  The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any

---

[7]      For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes as provided herein regardless of whether such Taxes constitute trust fund obligations.

checks or transfer requests on account of any prepetition Taxes and Fees that are dishonored or rejected as a result of the commencement of the Chapter 11 Cases.

## <u>REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003</u>

25.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding … a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition …."  Fed. R. Bankr. P. 6003(b).

26.     The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## <u>REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)</u>

27.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a).  Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h). As set forth above, the ability to immediately pay any amounts owed to Taxing Authorities is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## <u>RESERVATION OF RIGHTS</u>

28.     The relief requested herein is without prejudice to the Debtors' rights to contest the amount of any Taxes and Fees on any grounds in the Debtors' sole discretion.  Nothing in this Motion shall be considered an admission by the Debtors with respect to: (i) the Debtors' liability to any Authority; (ii) whether any particular obligation constitutes a Tax or Fee, or (iii) whether any liability for Taxes and Fees constitutes a prepetition or postpetition obligation of the Debtors.

29.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim.  In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## <u>NOTICE</u>

30.     The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Revenue; (xi) the Pennsylvania Department of Human Services; (xii) the City of Philadelphia; (xiii) the City of

Philadelphia Department of Revenue; and (xiv) the Center City District of Philadelphia, and (xv) any party that has requested notice pursuant to Bankruptcy Rule 2002.

      **WHEREFORE**, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and  proper.

Dated: July 1, 2019                **SAUL EWING ARNSTEIN & LEHR LLP**

                    By:*/s/ Monique B. DiSabatino*

                      Mark Minuti (DE Bar No. 2659)
                      Monique B. DiSabatino (DE Bar No. 6027)
                      1201 N. Market Street, Suite 2300
                      P.O. Box 1266
                      Wilmington, DE  19899
                      Telephone: (302) 421-6800
                      Fax: (302) 421-5873
                      mark.minuti@saul.com
                      monique.disabatino@saul.com

                          -and-

                      Jeffrey C. Hampton
                      Adam H. Isenberg
                      Jeremiah J. Vandermark
                      Centre Square West
                      1500 Market Street, 38th Floor
                      Philadelphia, PA 19102
                      Telephone: (215) 972-7700
                      Fax: (215) 972-7725
                      jeffrey.hampton@saul.com
                      adam.isenberg@saul.com
                      jeremiah.vandermark@saul.com

                      *Proposed Counsel for Debtors and Debtors in Possession*