## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | Case No. 19-11466 (____) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |  |
| *al.*,[1] | ) | Joint Administration Requested |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

## MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY CERTAIN PREPETITION WAGES, BENEFITS AND OTHER COMPENSATION, AND (B) CONTINUE EMPLOYEE COMPENSATION AND EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through their proposed undersigned counsel, file this motion (this "**Motion**") pursuant to sections 105(a), 363(b), 507(a), 1107(a) and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**" and together, the "**Proposed Orders**"): (i) authorizing the Debtors to (a) pay certain prepetition wages, benefits and other compensation; and (b) continue employee compensation and employee benefits programs; and (ii) granting related relief. In

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

support of the Motion, the Debtors rely on and incorporate by reference the *Declaration of Allen Wilen in Support of First Day Relief* (the "**First Day Declaration**"), and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**")*,* the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On June 30, 2019 and the date hereof (together, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

3.      A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

**RELIEF REQUESTED**

4.      By this Motion, the Debtors request entry of the Proposed Orders authorizing the

Debtors to: (i) pay, in their discretion, all prepetition amounts required under or related to

Employee Compensation, Deductions and Payroll Taxes, and Employee Benefits (each as

defined below and together with all fees, costs, and expenses incident thereto, including amounts

owed to third-party administrators, the "**Employee Obligations**"); and (ii) maintain, and

continue honoring and paying, in their discretion, all amounts with respect to the Employee

Obligations as such were in effect as of the commencement of these Chapter 11 Cases and as

such may be modified, amended, or supplemented from time to time in the ordinary course of

business, including amounts owed to third-party administrators.

5.      To enable the Debtors to carry out the relief requested, the Debtors also request

that the Court authorize all applicable banks, financial institutions, and ADP, LLC ("**ADP**") to

receive, process, honor, and pay all checks presented for payment and all electronic payment

requests made by the Debtors relating to the Employee Obligations, whether such checks were

presented or electronic-payment requests were submitted prior to or after the date hereof.

**THE DEBTORS' EMPLOYEE OBLIGATIONS**

6.      As of the Petition Date, the Debtors employ approximately 4,652 employees (the

"**Employees**"), on full, part-time or per diem (as needed) bases.  In the ordinary course of

business, the Debtors pay Employees, among other things, salary, expense reimbursements, and

certain other forms of compensation that are described herein, depending on the services

provided by the Employees to the Debtors.

7.      The Employees perform a variety of critical functions, including operating the

Debtors' medical treatment centers, providing acute, post-acute and primary care, and recruiting

and training physicians and technicians.  Employees also engage in various functions to manage

3

and support the operations of the Debtors' medical facilities, including various administrative, marketing, legal, accounting, finance and management-related tasks. The skills and experience of the Employees are essential to the Debtors' ongoing operations.

8. Certain of the Debtors are party to five (5) collective bargaining agreement ("**CBAs**") that govern, *inter alia*, rates of pay, hours of work, and conditions of employment for their union employees: (a) an agreement with National Union of Hospital and Health Care Employees, AFSCME, AFL-CIO and District 1199C ("**1199C**"), covering service and maintenance employees at Hahnemann University Hospital ("**HUH**"); (b) an agreement with 1199C, covering technical unit employees at HUH; (c) an agreement with Pennsylvania Association of Staff Nurses and Allied Professionals ("**PASNAP**") covering nurses at HUH; (d) an agreement with PASNAP covering nurses at St. Christopher's Hospital for Children ("**SCH**"); and (e) an agreement with International Brotherhood of Electrical Workers, Local 98 ("**IBEW 98**") covering maintenance employees at SCH.

A.    **Employee Compensation**

9. The following summarizes the various types of Employee compensation offered by the Debtors (collectively, the "**Employee Compensation**"):

10. Wages. The Debtors pay the majority of their Employees' wage and salary obligations (collectively, the "**Wages**") on either a salaried or hourly basis. Nearly all of the Employees receive their wages, salaries, and other compensation by direct deposit, with the remaining Employees receiving checks. Employees are paid one week in arrears.

11. In the ordinary course of business, Employees generally are paid on a bi-weekly basis. The Debtors' last payroll was paid to Employees on June 21, 2019 for the period from June 2, 2019 through June 15, 2019. The next scheduled payroll is due to be paid on July 5,

4

2019 for the period from June 16, 2019 through June 29, 2019.  The Debtors estimate that the total amount of the July 5, 2019 payroll will be approximately $13.5 million.  This pay period will include fourteen (14) prepetition days (the "**Prepetition Pay Period**"), and thus all of the $13.5 million total payroll relates to the Prepetition Pay Period.  Accordingly, the Debtors seek authority to pay their Employees the amounts owed for Wages for those prepetition days in the next scheduled payroll.  No single individual will be paid in excess of the statutory cap of $12,850 on account of any prepetition claim for wages, benefits, or other compensation, absent further order of the Court.[2]

12.     <u>Reimbursable Expenses</u>. Prior to the Petition Date and in the ordinary course of business, the Debtors reimbursed Employees, subject to manager approval, for certain allowed expenses incurred on behalf of the Debtors (the "**Reimbursable Expenses**").  Reimbursable Expenses generally include, among other things, business travel (e.g., airfare/rail, gas mileage, taxis, hotel and telephone/internet) and meals (e.g., business travel-related and onsite). Employees pay for such expenses directly from their own funds and are reimbursed upon the submission of an expense reimbursement form itemizing the applicable business expenses. Reimbursement is contingent on the Debtors' determination that the charges are for legitimate, reimbursable business expenses.

13.     Reimbursable Expenses typically are approximately $80,000 per month, although the Debtors' incurrence of Reimbursable Expenses varies from month to month; as a result, the Debtors cannot precisely estimate prepetition, unpaid Reimbursable Expenses.  Nevertheless, as

---

[2]     To ensure that no Employee would be owed wages in excess of the statutory cap of $12,850, the Debtors processed an interim payroll in the gross amount of approximately $500,000 on June 28, 2019, prior to commencement of these Chapter 11 Cases, with respect to certain Employees.

of the Petition Date, the Debtors estimate that they owe approximately $40,000 in outstanding prepetition Reimbursable Expenses.

14.    Employees incurred the Reimbursable Expenses as business expenses on the Debtors' behalf and with the understanding that they would be reimbursed.  To avoid harming Employees who incurred the Reimbursable Expenses, the Debtors request authority to: (a) continue paying the Reimbursable Expenses in accordance with prepetition practices in accordance with the Debtors' policy for reimbursing such expenses, and continue honoring any prepetition obligations related thereto to the extent Employees have paid for such expenses directly from their own funds or are otherwise personally liable for such expenses; and (b) modify their prepetition policy relating thereto as they deem appropriate without the need for further court approval.

15.    The Debtors request authority to pay up to $40,000 on an interim basis and $80,000 on a final basis on behalf of prepetition Reimbursement Expenses.  The Debtors also seek authority to continue their expense reimbursement policy in the ordinary course during the administration of the Chapter 11 Cases.

16.    <u>Holidays/Paid Time-Off and Leaves of Absence</u>. The Debtors' unionized employees receive holiday pay, paid time-off and other paid time away from work pursuant to the terms of their respective CBAs.  The Debtors seek authority to continue honoring the obligations to their unionized employees pursuant to the CBAs in the ordinary course of business, consistent with applicable requirements of the Bankruptcy Code.  For non-unionized employees, the Debtors offer full-time Employees pay for predetermined holidays ("**Paid Holidays**").  In addition, Employees are eligible for paid time away from work based length of service.  These absences include personal illness, family illness, personal days and vacation

6

(collectively, "**Paid Time Off**").  Paid Time Off can be carried over from year to year, and non-managerial Employees have the option of redeeming accrued Paid Time Off for cash. Redemption of Paid Time Off by non-unionized Employees results in such Employees not accruing additional Paid Time Off for the next six pay periods.  The Debtors anticipate that after the Petition Date, certain Employees will seek to use or redeem for cash Paid Time Off accrued during the prepetition period ("**PTO Payouts**").  As of the Petition Date, the Debtors estimate that their accrued liability in connection with unused Paid Time Off equaled approximately $11 million.

17.    The Debtors respectfully request authority to honor all unused Paid Time Off that accrued prior to the Petition Date in accordance with their historical practices and in the ordinary course of business.  The Debtors also seek authority to continue to incur and pay eligible Employees for Paid Holidays consistent with past practices.

**B.    Deductions and Withholdings**

18.    During each applicable payroll period, the Debtors routinely deduct certain amounts from their Employees' gross pay, including, without limitation, (a) pre-tax and after-tax deductions payable pursuant to the Employee benefit plans discussed herein (e.g., garnishments, contributions relating to health care benefits, insurance premiums and flexible spending programs) and (b) other miscellaneous deductions (collectively, the "**Deductions**").  Out of an abundance of caution, the Debtors request authority to remit any unpaid prepetition Deductions that exist. Additionally, the Debtors seek authority to continue deducting amounts from the applicable Employee's wages and salaries and forwarding Deductions to the appropriate third-party recipients on a postpetition basis, in the ordinary course of business, and consistent with

past practices. The Deductions represent earnings that applicable authorities have designated for deduction from Employees' paychecks and thus may not be property of the Debtors' estates.

19.     In addition to the Deductions, the Debtors are required by law to withhold amounts related to federal income taxes, as well as Social Security and Medicare taxes for remittance to the appropriate taxing authority (collectively, the "**Withheld Amounts**"). The Debtors are also required to pay additional amounts for federal and state unemployment insurance (together with the Withheld Amounts, the "**Payroll Taxes**"). On a bi-weekly basis, the Debtors remit approximately $4.7 million in Payroll Taxes, which amount includes employer taxes plus what is withheld and remitted on behalf of the employee.

20.     As of the Petition Date, the Debtors estimate that they have approximately $4,443,541 in accrued and unpaid Payroll Taxes. Because the Deductions and Payroll Taxes are not property of the Debtors' estates, the Debtors request that the Court authorize the Debtors to transmit these amounts, all of which will become due within the first 21 days of these Chapter 11 Cases, to the appropriate parties in the ordinary course of business.

C.      **Employee Benefits**

21.     The Debtors offer their Employees the opportunity to participate in a number of insurance and benefit programs, including medical insurance, life and disability insurance, and other employee benefit plans as described below (collectively, the "**Employee Benefits**"). Maintaining these benefits and honoring obligations thereunder is necessary to preserve employee morale and maintain the stability of the Debtors' workforce during the Chapter 11 Cases

22.     <u>Medical, Dental and Vision Plans</u>. The Debtors provide health care coverage and dental care to all of their non-unionized full-time Employees and their dependents under various

benefit plans, as described below (collectively, the "**Medical, Dental and Vision Plans**").  In addition, certain of the Debtors' unionized Employees, including all Employees covered by the CBAs with PASNAP and IBEW 98 and certain Employees covered by the CBAs with 1199C, also obtain employee benefits from the Debtors under the Medical, Dental and Vision Plans.[3] The Debtors offer Employees the following Medical, Dental and Vision Plans:

- *Medical Plan.* The Debtors' eligible Employees may enroll in one of several medical/prescription plans through Independence Blue Cross Blue Shield. Employees may generally choose from among Platinum, Gold or Bronze plan options, which offer varying premiums, deductibles and other benefit options. The plans include pharmaceutical coverage, access to Health Advocate and a vision plan through VSP Individual Vision Plans.  The net monthly cost to the Debtors for the Medical Plan, net of Employee contributions, is approximately $2,220,800.

- *Dental Plan.* The Debtors offer eligible Employees dental coverage through one of two plans offered by Delta Dental insurance.  The rates, deductibles and benefit options vary by plan. The net monthly cost to the Debtors for the Dental Plan is approximately $41,000.

23.      In the aggregate, the Debtors estimate that they incur approximately $2,264,000 in aggregate monthly premiums and administrative costs associated with the Medical, Dental and Vision Plans described above.

24.      The Debtors request authority to (a) continue the Medical, Dental and Vision Plans in the ordinary course of business, (b) continue making the above-described contributions to the Medical, Dental and Vision Plans, and (c) pay any amounts related thereto, including premiums, claims amounts and administration fees, to the extent that they remain unpaid as of the Petition Date, in the ordinary course of business.  The Debtors estimate that the total amount

---

[3]      Certain Employees under the CBA with 1199C receive benefits through the union.  The Debtors contribute approximately $615,000 per month to the 1199C benefit plan, and herein seek authority to continue making such contributions in the ordinary course of business.

35178107.10 07/01/2019

accrued and unpaid for the Medical, Dental and Vision Plans as of the Petition Date is approximately $1,100,000.

25.     <u>Insurance and Disability Benefits</u>. The Debtors provide certain Employees with life insurance, accidental death and dismemberment and short-term and long-term disability coverage (collectively, the "**Insurance and Disability Benefits**").    The Debtors pay the premiums for Employees' basic life insurance and certain short-term disability coverage, and Employees pay for all other coverages related thereto.  The monthly premium for the Debtors' Insurance and Disability Benefits, net of amounts paid by Employees, is approximately $69,356. The Debtors request authority to continue paying premiums for the Insurance and Disability Benefits in the ordinary course of business.

26.     The Debtors also provide certain insurance coverage to certain eligible Employees (the "**Supplemental Insurance Benefits**").    The premiums for this coverage are paid by participating Employees.  This insurance includes hospital, accident and critical illness coverage. The Debtors withhold from participating Employees' paychecks amounts sufficient to pay these premiums, although the Debtors pay certain related fees and administrative costs.  The Debtors remit a total of approximately $52,210 per month in aggregate premiums for the Supplemental Insurance Benefits.

27.     The Debtors request authority to pay approximately $122,000 for prepetition unpaid Insurance and Disability Benefits and unremitted Supplemental Insurance Benefits premiums on an interim basis, and any remaining amounts not included therein on a final basis. Additionally, the Debtors hereby seek authority to maintain the Insurance and Disability Benefits and Supplemental Insurance Benefits on a postpetition basis.

28.     The Debtors also provide certain benefits pursuant to the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**"), flexible spending accounts ("**FSAs**"), health savings accounts ("**HSAs**") and commuter benefits to Employees in the ordinary course of business.  On a monthly basis, the Debtors' current obligations under COBRA are approximately $2,051 and the Debtors' current monthly obligations for FSA, HSAs and commuter benefits total approximately $3,741.  The Debtors seek authority to continue providing these benefits in the ordinary course of business, including any amounts accruing prepetition.

29.     <u>Employee Savings Plans</u>. The Debtors maintain for the benefit of eligible Employees an employee savings plan, which is a tax-qualified plan within the meaning of, and administered in accordance with, the requirements of section 401(k) and other applicable sections of the Internal Revenue Code (the "**401(k) Plan**").  There are approximately 2,678 participants in this plan, which is administered by Debtor Philadelphia Academic Health System, LLC in coordination with Lockton Investment Advisors, LLC.  The Debtors withhold certain amounts from participating Employees' paychecks and contribute such amounts to the 401(k) Plan (the "**Employee 401(k) Contributions**").  The Debtors withhold a total of approximately $670,000 per pay period in Employee 401(k) Contributions.  The Debtors request authority to continue the Employee 401(k) Contributions on a postpetition basis.[4]  The Debtors also have historically matched certain contributions to the 401(k) Plan, which the Debtors believe is discretionary.[5]  The Debtors further request authority to pay prepetition fees owed to Lockton

---

[4]     In addition, Employees who are covered by the CBAs with 1199C participate in the union's pension plan, to which the Debtors' contribute approximately $465,000 per month.  As discussed herein, the Debtors intend to continue honoring their obligations under the CBAs.

[5]     The Debtors have not paid such match for calendar year 2018, which the Debtors estimate to be approximately $5.1 million.

Investment Advisors, LLC, in the amount of $18,750, to ensure the continued administration of the 401(k) Plan without interruption.

**D.      The Payroll Processor**

30.      As noted above, the Debtors utilize the services of ADP to administer payroll for Employees, whether through direct deposit or check.  ADP's responsibilities include processing payroll and transferring funds from the Debtors to their Employees and to the relevant taxing authorities.  ADP also provides all other payroll-related services, including wages/payroll tax remittance calculations, timekeeper system and wage attachment processing.  Though the Debtors do not believe that any fees are owing to ADP for prepetition services, out of an abundance of caution, because the services provided by ADP are crucial to the smooth functioning of the Debtors' payroll system, the Debtors request permission to pay any unpaid fees to ADP and to continue to pay fees that accrue during the ordinary course of business.

**E.      Workers' Compensation**

31.      In the ordinary course of business, the Debtors maintain workers' compensation insurance through ACE American Insurance Company and contract with ESIS Inc., a subsidiary of Chubb Insurance Company, as third party administrator.  Under the terms of the Debtors' workers' compensation policy, the Debtors fund, on an installment basis, a prefunded loss account for workers' compensation obligations.  The total amount of the prefunded loss account for 2019 is $1,842,866.  The Debtors make installment payments, which include both the prefunded loss account as well as premiums (for both the workers' compensation insurance and auto insurance) and administrative fees.  To the extent applicable losses exceed the amount of the prefunded loss account, the Debtors are subject to a $500,000 deductible per accident, after which all additional losses are fully insured.  The Debtors are current with respect to their

12

obligations in connection with the prefunded loss account, and respectfully request authority to continue making the installment payments with respect thereto in the ordinary course of business.  As of the Petition Date, the Debtors were also obligated to pay $9,897 with respect to the workers' compensation policy as a result of the most recent payroll audit. Through this Motion, the Debtors respectfully seek authority to remit this amount. The Debtors also seek authority to continue honoring all applicable obligations with respect to their relationship with ESIS as third party administrator in the ordinary course of business.

### BASIS FOR RELIEF REQUESTED

**A.**     **Payment of the Prepetition Employee Obligations is Necessary and Appropriate Under the Bankruptcy Code**

32.     Courts generally acknowledge that it is appropriate to authorize the payment or other special treatment of prepetition obligations in appropriate circumstances, such as when necessary to preserve the going concern value of a debtor's business and facilitate its reorganization.  *See, e.g., In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "'necessity of payment' doctrine ... permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid") (citations and internal quotations omitted); *In re Chateaugay Corp.,* 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include the authority to authorize a debtor to pay prepetition debts).

33.     In authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code.  *See Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973, 985 (2017) (noting that courts have routinely approved orders that allow payment of prepetition debt, which is necessary for the debtors to reorganize and restructure their debts and maximize the value of the bankruptcy estate); *In re*

13

*Columbia Gas Sys., Inc.,* 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business.").

34.     The Debtors believe that payment of the Employee Obligations is critical to the ongoing operation of the Debtors' businesses and patient safety, including in connection with a closure of HUH.  If the Employee Obligations are not paid, the Debtors will risk tangible and intangible loss of the value of their businesses, including, among other things, losses relating to the cost of replacing Employees who seek alternative employment and losses related to the disruption of, and lower productivity in, the Debtors' business operations resulting from low employee morale and high turnover.

       **1.**       *A Significant Portion of the Employee Obligations are Entitled to Priority Treatment*

35.     Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the majority of the unpaid Employee Obligations are entitled to priority treatment.  To confirm a chapter 11 plan, the Debtors must pay priority claims in full.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, commissions, including vacation, severance and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  Thus, granting the vast majority of the relief sought herein only affects the timing of payments to Employees, and does not negatively impact recoveries for general unsecured creditors.[6]  Indeed, the Debtors submit that payment of Employee Obligations at this time enhances value for the benefit of the Debtors and all interested parties.

---

[6]    As noted herein, no single individual will be paid in excess of the statutory cap of $12,850 on account of any prepetition claim for wages, benefits, or other compensation, absent further order of the Court.

36.     Amounts that are paid on account of priority claims for Employee Obligations would not otherwise be available for distribution to unsecured creditors.  Therefore, no prejudice would be caused to the Debtors' unsecured creditors by permitting priority obligations to be satisfied in the ordinary course of business during the Debtors' Chapter 11 Cases rather than at the conclusion of the case pursuant to a plan of reorganization.

2.     ***Payment of Certain of the Employee Obligations is Required by Law***

37.     The Debtors also seek authority to pay the Deductions and Unremitted Payroll Taxes to the appropriate entities.  These amounts represent the Employees' earnings that governments, the Employees, and judicial authorities have designated for deduction from the Employees' paychecks.  Indeed, certain deductions and withheld taxes are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' paychecks on another party's behalf.  *See* 11 U.S.C. § 541*; see also Begier v. IRS,* 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 95 (3d Cir. 1994) (finding that withheld taxes were subject to a trust); *see generally In re Columbia Gas Sys. Inc.,* 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found).  Because the Deductions and Unremitted Payroll Taxes are not property of the Debtors' estates, the Debtors request that the Court authorize the Debtors to transmit these amounts to the appropriate parties in the ordinary course of business.

3.     ***The Court May Authorize Payment of the Employee Obligations Pursuant to Section 363 of the Bankruptcy Code***

38.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he

35178107.10 07/01/2019

[debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Under this section, a court may authorize a debtor to pay certain prepetition claims.  *See In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); *In re UAL. Corp.,* Case No. 02-48191 (Bankr. N.D. Ill., Dec. 9, 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction).  In addition, section 363(c) allows a debtor in possession to enter into transactions involving property of the estate in the ordinary course of business without an order of the court.  *See, e.g., Armstrong World Indus., Inc. v. James A. Phillips, Inc.,* 29 B.R. 391, 395 n.2 (S.D.N.Y. 1983) ("Insofar as transactions are actually in the ordinary course, they are authorized automatically by § 363(c)(1) and § 1107(a), and do not require Bankruptcy Court approval.").

39.    Upon information and belief, the majority of the Debtors' Employees rely primarily or exclusively on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses and maintain their health and well-being.  Consequently, these Employees would be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation, health and welfare Employee Benefits, and Reimbursable Expenses.  Moreover, if the Debtors were unable to satisfy such obligations, Employee morale and loyalty would be jeopardized at a time when Employee support is critical.  Furthermore, if the Court does not authorize the Debtors to honor their various obligations under the Employee Benefit plans, the Employees' health coverage could be threatened, potentially burdening individual Employees with the costs of health care.  At minimum, the loss of health care coverage, or uncertainty regarding coverage, would result in considerable anxiety for

16

Employees at a time when the Debtors need their Employees to perform their jobs at peak efficiency.

40.     For all of the foregoing reasons, a sound business purpose exists to pay the Employee Obligations.   In the absence of such payments, the Debtors believe that their Employees may seek alternative employment opportunities.  Such a development would deplete the Debtors' workforce, hinder the Debtors' ability to meet their obligations, and likely diminish creditors' confidence in the Debtors.   Moreover, the loss of valuable Employees would significantly impact the Debtors' restructuring objectives, including implementing an appropriate closure of HUH while maintaining quality patient care.  Accordingly, the Debtors must be able to pursue all reasonable measures to retain the Employees by, among other things, continuing to honor all wages, benefits, and related obligations, including those that accrued prior to the Petition Date.

41.     Because the Debtors pay the Employee Obligations in the ordinary course of business, the Debtors submit that Court approval to continue their existing policies, programs, and related payments postpetition is not necessary.  Nonetheless, for the avoidance of doubt, the Debtors request that the Court grant the relief requested herein and enter an order authorizing them to pay the Employee Obligations as consistent with their compensation and other benefit policies and plans, and to permit, but not require, the Debtors, in their discretion, to continue their practices, programs, policies and plans for their Employees as those practices, programs, policies and plans were in effect as of the Petition Date, as may be modified, terminated, amended, or supplemented from time to time hereafter.

4.      ***The Court May Authorize Payment of the Employee Obligations Pursuant to Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity***

42.      The Debtors' proposed payment of the Employee Obligations should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs,* 98 B.R. at 175. "Under [section] 105 the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.,* 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs,* 98 B.R. at 177); *accord In re Just for Feet, Inc.,* 242 B.R. 821, 826 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is 'critical to the debtor's reorganization.'") (quoting *In re Fin. News Network, Inc.,* 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991)).

43.      The "doctrine of necessity" or the "necessity of payment" doctrine functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh & New England Ry. Co., 657* F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of debtor); *In re Just for Feet,* 242 B.R. at 824 ("[C]ourts have used their equitable power under section 105(a) of the Code to authorize the

payment of prepetition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization.").  The doctrine is frequently invoked early in a chapter 11 case.

44.      Taken together, the nature of the Employee Obligations, the substantial harm to the Debtors' businesses that would be caused if those obligations were not honored, the related potential for loss of value in the Debtors' estates, and the fact that a significant portion of the obligations in question relates either to priority wage claims or to funds held in trust for the benefit of Employees, lead to the conclusion that the Employee Obligations fall well within the scope of obligations whose payments may be authorized pursuant to the doctrine of necessity.

**B.      The Court Should Authorize Applicable Banks to Honor and Pay Checks Used and Make Other Transfers to Pay the Employee Obligations.**

45.      In connection with the relief requested in this Motion, the Debtors request that the Court authorize (a) all applicable banks and other financial institutions to receive, process, honor, and pay all checks and transfers issued by the Debtors in connection with payment of the claims that the Debtors request authority to pay in this Motion, without regard to whether any check or transfer was issued before or after the Petition Date, (b) all banks and other financial institutions to rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion,, and that these banks and other financial institutions shall not have any liability to any party for relying on such representations by the Debtors, and (c) authorize the Debtors to issue replacement checks or transfers, to the extent any check or transfer in relation to the claims the Debtors request authority to pay in this Motion is dishonored or rejected by the banks and other financial institutions.

## REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

46.    Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . ." Fed. R. Bankr. P. 6003(b).

47.    The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

48.    This Court routinely has approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases. *See, e.g., In re ATD Corp.,* Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [D.I. 100] (authorizing the debtors to pay prepetition wages, compensation, and maintain and continue benefits in the ordinary course); *In re Welded Construction, L.P.,* Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 38] (same); *In re Brookstone Holdings Corp.,* Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 67] (same); *In re Sancilio Pharmaceuticals Co., Inc.,* Case No. 18-11333 (CSS) (Bankr. D. Del. June 7, 2018) [D.I. 31] (same); *In re Southeastern Grocers, LLC,* Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) [D.I. 125] (same); *In re J & M Sales, Inc.,* Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 7, 2018) [D.I. 80] (same).

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

49.    To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a). Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the

use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h). As set forth above, the immediate payment of any amounts owing to or on account of Employees is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## **RESERVATION OF RIGHTS**

50.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim.  In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## **NOTICE**

51.    The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Human Services; (xi) the City of Philadelphia; (xii) the Debtors' depository banks; (xiii) ADP; (xiv) Independence Blue Cross Blue Shield; (xv) Delta Dental; (xvi) VSP; (xvii) Lockton Investment Advisors, LLC; and (xviii) any party that has requested notice pursuant to Bankruptcy Rule

2002.  As this Motion seeks "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

*[remainder of page left intentionally blank]*

WHEREFORE, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: July 1, 2019                     **SAUL EWING ARNSTEIN & LEHR LLP**

                              By:    */s/ Monique B. DiSabatino*
                                     Mark Minuti (DE Bar No. 2659)
                                     Monique B. DiSabatino (DE Bar No. 6027)
                                     1201 N. Market Street, Suite 2300
                                     P.O. Box 1266
                                     Wilmington, DE  19899
                                     Telephone: (302) 421-6800
                                     Fax: (302) 421-5873
                                     mark.minuti@saul.com
                                     monique.disabatino@saul.com

                                            -and-

                                     Jeffrey C. Hampton
                                     Adam H. Isenberg
                                     Aaron S. Applebaum (DE Bar No. 5587)
                                     Centre Square West
                                     1500 Market Street, 38th Floor
                                     Philadelphia, PA 19102
                                     Telephone: (215) 972-7700
                                     Fax: (215) 972-7725
                                     jeffrey.hampton@saul.com
                                     adam.isenberg@saul.com
                                     aaron.applebaum@saul.com

                                     *Proposed Counsel for Debtors and*
                                     *Debtors in Possession*