**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al*.,[1] | ) Case No. 19-11466 (____) |
| | ) Joint Administration Requested |
| Debtors. | ) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF
PAYMENT TO UTILITY COMPANIES, (II) ESTABLISHING PROCEDURES
FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES,
AND (III) PROHIBITING UTILITY COMPANIES FROM ALTERING,
REFUSING, OR DISCONTINUING SERVICE**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through their proposed undersigned counsel, file this motion (this "Motion") pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**" and together, the "**Proposed Orders**")**,** (i) authorizing Debtors' proposed form of adequate assurance of payment to utility companies, (ii) establishing procedures for

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

resolving objections by utility companies, and (iii) prohibiting utility companies from altering, refusing, or discontinuing service. In support of the Motion, the Debtors rely on and incorporate by reference the *Declaration of Allen Wilen in Support of First Day Relief* (the "**First Day Declaration**"), and respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**")*,* the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On June 30, 2019 and the date hereof (together, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

3. A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

## RELIEF REQUESTED

4. Pursuant to section 366 of the Bankruptcy Code, a utility company is prohibited, within the first 30 days after the filing of a chapter 11 case, from altering, refusing, or discontinuing services to, or discriminating against, a debtor solely on the basis of the commencement of bankruptcy proceedings or the debtor's failure to pay a prepetition debt. *See* 11 U.S.C. § 366(a). Upon expiration of the initial 30-day period, however, a utility company may discontinue services if the debtor has not provided the utility company with "adequate assurance of payment for utility services that is satisfactory to the utility." 11 U.S.C. § 366(c)(2).

5. By this Motion, the Debtors request entry of the Proposed Orders (i) authorizing Debtors' proposed form of adequate assurance of payment to utility companies, (ii) establishing procedures for resolving objections by utility companies, and (iii) prohibiting utility companies from altering, refusing, or discontinuing service.

## DESCRIPTION OF UTILITY SERVICES

6. In the ordinary course of business, the Debtors obtain traditional utility services related to the day-to-day operation and/or maintenance of their businesses from approximately twenty-three (23) different utility providers (each a "**Utility Company**" and collectively, the "**Utility Companies**"), for water, electricity, gas, steam, telephone and internet services (the "**Utility Services**"). The Utility Companies include, without limitation, the entities set forth on the list attached hereto as **Exhibit C** (the "**Utility Companies List**").

7. Uninterrupted Utility Services are essential to the continued operation of the Debtors' businesses and, consequently, to the success of their Chapter 11 Cases. Should any

3

Utility Company alter, refuse, or discontinue service, even for a brief period, the Debtors' business operations could be severely disrupted, and such disruption would jeopardize the Debtors' reorganization efforts and patient safety. Accordingly, the Debtors seek to establish an orderly process for providing adequate assurance to their Utility Companies without hindering the Debtors' ability to function as a going concern.

8. The Debtors estimate that the cost for the Utility Services during the next two weeks (not including any deposits to be paid) will be approximately $350,000.

### PROPOSED ADEQUATE ASSURANCE TO UTILITY COMPANIES

9. The Debtors intend to pay their undisputed postpetition obligations to the Utility Companies on a timely basis and have the ability to do so. The Debtors anticipate that they will have sufficient funds to pay the amounts described in this Motion.

10. Consistent with section 366(c)(1)(A) of the Bankruptcy Code, which defines the phrase "assurance of payment" to include a "cash deposit," the Debtors propose to deposit **$356,119.10**, an amount equal to approximately two weeks of Utility Services, calculated as a historical average of all billings for Utility Services incurred by the Debtors (each an "**Adequate Assurance Deposit**") into a segregated bank account designated for the Adequate Assurance Deposits (the "**Adequate Assurance Deposit Account**") on behalf of all Utility Companies identified in **Exhibit C** within 20 days of the Petition Date. The Adequate Assurance Deposit is equal to the prorated aggregate amounts historically billed by the Utility Companies for two weeks of Utility Services. The Adequate Assurance Deposit will be held in the Adequate Assurance Deposit Account for the duration of these Chapter 11 Cases and may be applied to any postpetition defaults in payment to the Utility Companies.

11. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively,

the "**Proposed Adequate Assurance**"), along with the existing deposits held by the Utility Companies, constitute sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy Code. Nonetheless, if any Utility Company believes additional assurance is required, the Debtors request that the Court establish certain procedures, described below, by which a Utility Company may request such assurance.

## THE ADEQUATE ASSURANCE PROCEDURES

12. In light of the severe consequences to the Debtors' business and operations, as well as patient safety, that would result from any interruption in Utility Services, and to address the right of any Utility Company under section 366(c)(2) of the Bankruptcy Code to seek additional adequate assurance satisfactory to it, the Debtors propose that the following procedures (the "**Adequate Assurance Procedures**") be adopted:

   a. Any Utility Company desiring assurance of future payment for Utility Services beyond the Proposed Adequate Assurance must serve a request (an "**Additional Assurance Request**") at the following addresses: (i) Center City Healthcare, LLC et al., c/o Allen Wilen, CRO, 230 North Broad Street, Philadelphia, Pennsylvania 19102, and (ii) Saul Ewing Arnstein & Lehr LLP, 1201 North Market Street, Suite 2300, Wilmington, Delaware 19801 (Attn: Mark Minuti, Esq. and Monique B. DiSabatino, Esq.) and 1500 Market Street, 38th Floor, Philadelphia, PA 19102 (Attn: Aaron S. Applebaum, Esq.) and by email at mark.minuti@saul.com; monique.disabatino@saul.com; aaron.applebaum@saul.com.

   b. Any Additional Assurance Request must: (i) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company; (ii) be made in writing; (iii) set forth the location(s) for which Utility Services are provided and the relevant account number(s); (iv) describe any deposits or other security currently held by the requesting Utility Company; (v) explain whether the Debtors prepay for the Utility Company's services; (vi) describe any payment delinquency or irregularity by the Debtors for the postpetition period, if any; and (vii) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

   c. Upon the Debtors' receipt of an Additional Assurance Request at the addresses set forth above, the Debtors shall have the greater of (i) 20 days

from the receipt of such Additional Assurance Request or (ii) 40 days from the Petition Date (collectively, the "**Resolution Period**") to negotiate with the requesting Utility Company to resolve its Additional Assurance Request. The Resolution Period may be extended by agreement of the Debtors and the applicable Utility Company without application to or approval of the Court.

d. The Debtors, in their discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Company and without further order of the Court, and may, in connection with any such resolution, in their discretion, provide the requesting Utility Company with additional assurance of future payment in a form satisfactory to the Utility Company, including, but not limited to, cash deposits, payments of prepetition balances, prepayments, other forms of security, or any combination of the above, if the Debtors believe such additional assurance is reasonable. If the Debtors and requesting Utility Company resolve the Additional Assurance Request, the Debtors may, by mutual agreement with the requesting Utility Company and without further order of the Court, reduce the Adequate Assurance Deposit by an amount not exceeding the requesting Utility Company's estimated two-week utility expense.

e. If the Debtors determine that an Additional Assurance Request is not reasonable, and the parties are not able to resolve such request during the Resolution Period, then during or immediately after the Resolution Period, the Debtors will schedule the matter for a hearing before the Court at the next available omnibus hearing date to determine the adequacy of assurances of payment made to the requesting Utility Company (the "**Determination Hearing**"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

f. Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such request shall be restrained from discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

g. Any Utility Company that does not comply with the Adequate Assurance Procedures is deemed to find the Proposed Adequate Assurance satisfactory to it and is prohibited from discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment beyond the Proposed Adequate Assurance.

**SUBSEQUENT MODIFICATION OF THE UTILITY COMPANIES LIST**

13. The Debtors request that they be allowed, without further order of the Court, to supplement the Utility Companies List if any Utility Company has been inadvertently omitted from the list (the "**Additional Utility Company**"). If the Debtors determine that the Utility Companies List should be supplemented, the Debtors will, as soon as reasonably practicable, file with the Court an amendment to **Exhibit C** adding the name of any Additional Utility Company (the "**Supplement**"). The Debtors will then serve by email or by facsimile transmission (or where the Debtors do not have the email address or fax number of a Utility Company, by First Class Mail) a copy of this Motion and the signed Interim Order or Final Order, as appropriate, on any Additional Utility Company.

14. The Debtors request that any Additional Utility Company be subject to the terms of the Interim Order and Final Order, as appropriate, including the Adequate Assurance Procedures.

**BASIS FOR RELIEF REQUESTED**

A. **Section 366 of the Bankruptcy Code Grants the Court Discretion to Determine the Adequacy of the Debtors' Proposed Assurance**

15. Congress enacted section 366 of the Bankruptcy Code to protect a debtor from immediate termination of utility services after filing for bankruptcy, while at the same time providing the utility companies with adequate assurance of payment for postpetition utility services. *See* H.R. Rep. No. *95-595,* at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Section 366 defines "assurance of payment" to mean several forms of security, including, cash deposits, letters of credit, and prepayment of utility services. 11 U.S.C. § 366(c)(1)(A). Section 366(c)(1)(B) explicitly excludes, however, offering administrative expense priority as adequate assurance of payment.

16. While section 366(c) of the Bankruptcy Code sets forth what constitutes adequate assurance of payment, the bankruptcy court nonetheless retains discretion to determine what, if any, adequate assurance is necessary to satisfy section 366's requirement that assurance of payment must only be adequate. *See In re Adelphia Bus. Solutions, Inc.,* 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("The bankruptcy courts are in agreement that section 366(b) vests in the bankruptcy court the exclusive responsibility for determining the appropriate security which a debtor must provide to his utilities to preclude termination of service for non-payment of pre-petition utility bills."); *Marion Steel Co. v. Ohio Edison Co.* (*In re Marion Steel Co.*)*,* 35 B.R. 188, 198 (Bankr. N.D. Ohio 1983) (same). Accordingly, a court is not required to give the utility companies an "absolute guarantee of payment," or require that the adequate assurance take the form of a deposit, bond, letter of credit, or similar security. *In re Caldor, Inc. - N.Y.,* 199 B.R. 1, 3 (S.D.N.Y. 1996).

17. Rather, in considering the facts and circumstances of each case, the Court must only ensure that the utility is not subject to an unreasonable risk of non-payment for postpetition services. *See In re Adelphia,* 280 B.R. at 80; *Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (1st Cir. B.A.P. 1981). The Court, therefore, must strike a careful balance between satisfying the utility company's need for adequate assurance and ensuring that the debtor provides no more than what is adequate, as the debtor has a conflicting need to conserve financial resources. *See In re Magnesium Corp. of Am.,* 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) (holding that to require the debtor to allocate valuable liquidity to provide further "adequate assurance" to satisfy a utility's obligations before their amount has been fixed would prejudice the entirety of the debtor's unsecured creditor body for the benefit of a single one).

18.     In determining whether a utility is subject to an unreasonable risk of nonpayment, the Court may consider whether the utility would seek the same additional security from another non-bankruptcy debtor. *See In re Caldor, Inc. - N.Y.*, 199 B.R. at 3 (finding that the utility companies were not seeking additional security for an adequate assurance of future payment, but solely because their monopoly position permitted them to capitalize on the debtors' bankruptcy filing); *In re Whittaker*, 84 B.R. 934, 941-42 (Bankr. E.D. Pa. 1988), *aff'd*, 92 B.R. 110 (E.D. Pa. 1988), *aff'd*, 882 F.2d 791 (3d Cir. 1989).  The Court may not consider, however, the absence of security before the petition date, the debtor's history of timely payments, or the availability of an administrative expense priority.  11 U.S.C. § 366(c)(3)(B).

**B.     The Debtors' Proposed Adequate Assurance Has Been Upheld as Adequate by Courts in this District and Other Jurisdictions**

19.     Given that this Court has the discretion to determine the assurance necessary to satisfy the Utility Companies' needs, the Debtors submit that the Proposed Adequate Assurance is more than adequate to ensure that the Debtors will meet their postpetition utility obligations. Indeed, the Debtors' proposal is similar to the relief granted in other chapter 11 cases commenced in this jurisdiction. *See*, *e.g.*, *In re ATD Corporation,* Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [D.I. 99] (order deeming utility providers adequately assured of future performance upon a deposit, equal to two weeks of utilities services, into a segregated account); *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 34] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 68] (same); *In re One Aviation Corp.*, Case No. 18-12309 (CSS) (Bankr. D. Del. Oct. 11, 2018) [D.I. 49] (same); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) [D.I. 110] (same); *In re J & M Sales, Inc.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 7, 2018) [D.I. 86] (same).

20. Here, the Debtors are proposing the same type of assurance as has been proposed in previous chapter 11 cases in this district and believe that the Adequate Assurance Deposit Account, together with the proposed Adequate Assurance Procedures, strikes a fair balance between the rights of the Utility Companies and the interests of the Debtors' estates. The Debtors operate their business offices and hospitals, and if the Utility Companies altered, refused, or discontinued service, even for a brief period, the Debtors' business operations would be severely disrupted. Such disruption could have a devastating impact on the Debtors' business operations, revenues, and patient safety, thereby jeopardizing the Debtors' ability to successfully reorganize and putting the Debtors' patients in danger. By contrast, the Utility Companies will have received the protection of a cash deposit equal to two weeks' worth of Utility Services, and may receive this deposit in the event that the Debtors fail to timely pay their postpetition utility charges. It is, therefore, critical that this Court grant the relief requested in this Motion and prohibit the Utility Companies from altering, refusing, or discontinuing the Debtors' necessary Utility Services during these Chapter 11 Cases.

## **REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003**

21. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . ." Fed. R. Bankr. P. 6003(b).

22. The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

**REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)**

23. To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a). Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, paying all undisputed invoices for Utility Services rendered by the Utility Companies to the Debtors after the Petition Date and to provide the Adequate Assurance Deposit is essential to prevent potentially irreparable damages to the Debtors' business operations and their estates. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

24. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

**NOTICE**

25. The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University

College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Human Services; (xi) the City of Philadelphia; (xii) the Utility Companies; (xiii) the Debtors' depository banks; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion seeks "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

*[remainder of page left intentionally blank]*

WHEREFORE, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: July 1, 2019 **SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*

35097641.5 07/01/2019