**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (_____) <br> ) <br> ) Joint Administration Requested <br> ) |
| Debtors. | ) <br> ) <br> ) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING THE DEBTORS TO (I) CONTINUE INSURANCE COVERAGE
ENTERED INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS
RELATED THERETO; (II) RENEW, AMEND, SUPPLEMENT, EXTEND,
OR PURCHASE INSURANCE POLICIES; (III) HONOR THE TERMS
OF PREMIUM FINANCING AGREEMENT AND PAY PREMIUMS
THEREUNDER; AND (IV) ENTER INTO NEW PREMIUM FINANCING
AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its

affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**"), by and through their proposed undersigned counsel,

file this motion (this "**Motion**") pursuant to sections 105, 363, 503, 1107(a), 1108, and 1112(b)

of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and final

orders, substantially in the forms attached hereto as **Exhibit A** (the "**Interim Order**") and

**Exhibit B** (the "**Final Order**" and together, the "**Proposed Orders**"), authorizing the Debtors to

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

(i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto, (ii) renew, amend, supplement, extend or purchase Insurance Policies (as defined below), (iii) honor the terms of the Premium Financing Agreement (as defined below) and pay premiums thereunder, and (iv) enter into new Premium Financing Agreements in the ordinary course of business.  In support of the Motion, the Debtors rely on and incorporate by reference the *Declaration of Allen Wilen in Support of First Day Relief* (the "**First Day Declaration**"), and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**")*,* the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On June 30, 2019 and the date hereof (together, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or

35174806.9 07/01/2019

examiner has been made in the Chapter 11 Cases, and no committees have been appointed or

designated.

3.    A description of the Debtors' businesses, the reasons for commencing the Chapter

11 Cases, the relief sought from the Court, and the facts and circumstances supporting this

Motion are set forth in the First Day Declaration filed contemporaneously herewith.

**RELIEF REQUESTED**

4.    By this Motion, the Debtors request entry of the Proposed Orders authorizing the

Debtors to: (i) continue insurance coverage entered into prepetition and satisfy prepetition

obligations related thereto; (ii) renew, amend, supplement, extend or purchase Insurance Policies

(as defined below); (iii) honor the terms of the Premium Financing Agreement (as defined

below) and pay premiums thereunder; and (iv) enter into new Premium Financing Agreements in

the ordinary course of business.

**THE INSURANCE POLICIES AND RELATED PAYMENT OBLIGATIONS**

5.    In the ordinary course of business, the Debtors maintain approximately twenty-

one (21) insurance policies that are administered by various insurance carriers (collectively, the

"**Insurance Carriers**").  These policies provide coverage for, among other things, the Debtors'

property, general liability, professional liability, automobile, excess umbrella liability, workers'

compensation, terrorism, pollution, storage tank, volunteer/student accident, cyber, crime,

fiduciary liability, directors' and officers' liability, and employed lawyers liability (collectively,

the "**Insurance Policies**").  A schedule of the Insurance Policies is attached hereto as **Exhibit**

**C**.[2]

---

[2]    In addition to the Insurance Policies listed on **Exhibit C** attached hereto, the Debtors maintain numerous
insurance policies with respect to, among other things, employee health, dental, disability, and life
insurance benefits, and workers' compensation. These programs are described, and relief is requested with
respect to such programs, in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the*

6.      The Debtors' coverage under the Insurance Policies is provided in connection with a global insurance program providing coverage for both the Debtors as well as certain non-debtor affiliates of the Debtors.  Each of the Debtors are covered under each Insurance Policy, other than the aviation policy, which only covers certain applicable Debtors.

7.      The aggregate annual premium for the Insurance Policies is approximately $19,932,485, including applicable taxes and fees.  The cost of such premiums are allocated among the covered Debtors and non-debtor entities in a manner dependent on the type of coverage provided.  For example, fiduciary, crime, D&O and employment practices Insurance Policies are allocated based on the total number of employees per entity, general liability, terrorism and pollution coverages are allocated based on square footage, workers' compensation insurance is allocated based on payroll, and risk retention group coverage is allocated based on actuarial reports (occupied bed equivalents).

8.      The premiums for eighteen (18) of the Insurance Policies are financed (collectively, the "**Financed Policies**") because it is not economically advantageous to pay the premiums on the Financed Policies, in full, on a lump-sum, quarterly, or monthly basis. The premiums on the Financed Policies are financed pursuant to a premium financing agreement between Philadelphia Academic Health Holdings, LLC, a non-debtor affiliate, and Premium Assignment Corporation (the "**Premium Financing Agreement**").   In consideration for Premium Assignment Corporation's obligation to pay the premiums on account of the Financed Policies, the Premium Financing Agreement requires payment of an initial down payment, followed by 10 monthly payments in the amount of $681,733.00.  Of the total annual premiums associated with the Insurance Policies, $6,657,037 is financed by PAHH through Premium

---

*Debtors to (A) Pay Certain Prepetition Wages, Benefits and Other Compensation, and (B) Continue Employee Compensation and Employee Benefits Programs, and (II) Granting Related Relief* (the "**Wages/Benefits Motion**") filed contemporaneously herewith.

4

35174806.9 07/01/2019

Assignment Corporation, and the down payment and monthly payments associated therewith are allocated among the Debtors and the covered non-debtor affiliates. The Insurance Policies that are subject to the Premium Financing Agreement are indicated on **Exhibit C**.

9.      As of the Petition Date, the Debtors are current with respect to their obligations relating to the Premium Financing Agreement. The Debtors respectfully request authority to pay all outstanding installment payments in connection with the Premium Financing Agreement (which the Debtors believe to be approximately $3.4 million) in the ordinary course of business.

10.     With respect to premiums for non-financed policies, the Debtors request authority to pay $500,000 on account of premiums which came due prior to the Petition Date and remain outstanding, and to continue to pay such premiums coming due postpetition in the ordinary course of business.[3]

11.     The obligations under the Premium Financing Agreement are secured by all sums payable to the applicable Debtor under the Financed Policies, including, among other things, any gross unearned premiums and any payment on account of loss that results in a reduction of unearned premiums in accordance with the terms of the Financed Policies.

12.     If the Debtors were unable to continue honoring their obligations related to the Premium Financing Agreement, Premium Assignment Corporation may seek relief from the automatic stay to terminate the Financed Policies to recoup their losses. The Debtors could then be required to obtain replacement insurance on an expedited basis and likely at significant cost to their estates. The Debtors likely would face great hardship if they were required to obtain replacement insurance and pay a lump-sum premium for the Financed Policies in advance. Even

---

[3]      The $500,000 premium payment is payable to Philadelphia Academic Risk Retention Group, LLC, a non-debtor affiliate of the Debtors that acts as a captive insurer for the Debtors.

35174806.9 07/01/2019

if the Financed Policies were not terminated, any interruption in the Debtors' payments could have a severe, adverse effect on the Debtors' ability to finance premiums for future policies.

13.    Continuation of the Debtors' Insurance Policies, and entry into new insurance policies in the ordinary course of business, is essential to the preservation of the value of the Debtors' business and operations.  Moreover, in many instances, insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the Office of the United States Trustee's (the "**U.S. Trustee**") requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Accordingly, to ensure uninterrupted coverage, the Debtors request authority to maintain their existing Insurance Policies, pay any prepetition obligations related thereto, honor their obligations related to the Premium Financing Agreement, and enter into new Insurance Policies in the ordinary course of business.

14.    In addition, to the extent that the Premium Financing Agreement expires during the course of these Chapter 11 Cases, the Debtors seek authority to renew the Premium Financing Agreement without further Court approval.  The Debtors respectfully submit that renewal of the Premium Financing Agreement falls squarely within their ordinary course of business and, but for the constraints of section 364 of the Bankruptcy Code, the Debtors would not need the Court's prior approval to renew the Premium Financing Agreement.  To reduce the administrative burden, as well as to confirm their ability to satisfy one of their obligations of operating as debtors in possession, the Debtors seek the Court's authority now to renew the Premium Financing Agreement when and as necessary in the Debtors' business judgment.

15.    Pursuant to the Insurance Policies, the Debtors may be required to pay various deductibles or retention amounts (the "**Insurance Deductibles**")*,* depending upon the type of

6

claim and insurance policy involved.  Under certain policies, the Insurance Carriers may pay

claimants and then invoice the Debtors for any Insurance Deductible.  In such situations, the

Insurance Carriers may have prepetition claims against the Debtors.  While the Debtors are not

aware of any Insurance Deductibles that are due and owing as of the Petition Date, the Debtors

seek authority to honor any amounts owed to the Insurance Carriers to ensure uninterrupted

coverage under their Insurance Policies.

16.     In addition to the foregoing, the Debtors also incur obligations in connection with

Pennsylvania's Medical Care Availability and Reduction of Error Fund ("**Mcare**"), created by

Act 13 of 2002 as the successor to the Medical Professional Liability Catastrophe Loss Fund.  As

of the Petition Date, the Debtors believe they may owe up to $12,000 on account of Mcare

obligations, which amount is expected to come due within the first twenty-one days after the

Petition Date.  Through this Motion, the Debtors seek authority to pay the prepetition Mcare

obligations, and to continue to make payments on account of Mcare obligations in the ordinary

course of business on a postpetition basis.

## THE INSURANCE BROKER

17.     The Debtors utilize the services of Lockton Companies as insurance broker (the

"**Insurance Broker**") to obtain their Insurance Policies.  The Insurance Broker primarily assists

the Debtors with the procurement and negotiation of the Insurance Policies, enabling the Debtors

to obtain the Insurance Policies on advantageous terms and at competitive rates.  The Debtors

pay fees (the "**Brokerage Fees**") to the Insurance Broker on a commission basis as policies are

renewed.  While the Debtors are not aware of any Brokerage Fees that are due and owing as of

the Petition Date, the Debtors seek authority to honor any amounts owed to the Insurance Broker

to ensure uninterrupted coverage under their Insurance Policies.

7

## BASIS FOR RELIEF REQUESTED

A.   **Continuation of the Insurance Policies is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines**

18.      Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws and contracts that govern the Debtors' activities, including the operating guidelines issued by the Office of the United States Trustee (the "**U.S. Trustee Operating Guidelines**").  Accordingly, the Debtors believe it is essential to their estates and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines that they continue to satisfy all obligations related to the Insurance Policies and have the authority to supplement, amend, extend, renew or replace their Insurance Policies as needed, in their judgment, without further order of the court.

B.   **Satisfying Obligations under the Insurance Policies in the Ordinary Course of Business is Warranted.**

19.      Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property)*; see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the

8

Bankruptcy Code).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

20.    Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity."  11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan); *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts are authorized to approve orders allowing payment of prepetition claims, which is necessary for the debtors to have a successful reorganization).  "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  *In*

9

*re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (*citing Ionosphere Clubs*, 98 B.R. at 177).

21.     In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See*, *e.g.*, *Miltenberger v. Logansport C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [indispensable] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court may grant the relief requested herein.

22.     Satisfying possible outstanding or future obligations related to the Insurance Policies is warranted under section 363(b) of the Bankruptcy Code and the doctrine of necessity. Continuation of the Insurance Policies is essential to preserving uninterrupted operations and the value of the Debtors' estates.  Failing to maintain the Insurance Policies would impair—if not altogether halt—the Debtors' ability to operate, resulting in a material adverse effect on the Debtors' businesses and the value of their estates.

**C.     The Court Should Authorize the Debtors to Honor and Renew Their Premium Financing Agreements.**

23.     Payment of prepetition premiums and amounts owing under the Premium Financing Agreement is necessary and appropriate and may be authorized under sections 105(a) and 363(b) of the Bankruptcy Code.  Moreover, pursuant to section 364(c) of the Bankruptcy

Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate.  *See*, *e.g.*, *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448-49 (D. Colo. 1985) (authorizing interim financing agreement where debtor's business judgment indicated financing was necessary and reasonable for benefit of estate).

24.    As discussed above, the Debtors believe that continuing to perform under the Premium Financing Agreement on a postpetition basis is in the best interests of their estates. Moreover, in light of their financial circumstances, alternative insurance premium finance companies may not be willing to provide insurance premium financing to the Debtors on attractive market terms on a postpetition basis. Simply put, it is critical for the Debtors to continue to perform under the existing Premium Financing Agreement.

**D.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Funds Transfers.**

25.    The Debtors anticipate that they will have sufficient funds to pay the amounts described in this Motion.  The Debtors respectfully request that the court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

26.    Courts in this district have routinely granted the same or similar relief as requested in this Motion to chapter 11 debtors.  *See*, *e.g.*, *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 35] (order authorizing the debtors continue their insurance policies and pay prepetition and postpetition obligations); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 70]

11

(same); *In re ONE Aviation Corp.*, Case No. 18-12309 (CSS) (Bankr. D. Del. Oct. 11, 2018) [D.I. 48] (same); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) [D.I. 112] (same); *In re Appvion, Inc.*, Case No. 17-12082 (KJC) (Bankr. D. Del. Oct. 3, 2017) [D.I. 59] (same).

## REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

27.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . ." Fed. R. Bankr. P. 6003(b).

28.     The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

29.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a).  Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the immediate payment of any amounts related to the Insurance Policies is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

35174806.9 07/01/2019

## **RESERVATION OF RIGHTS**

30.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim.  In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## **NOTICE**

31.     The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Human Services; (xi) the City of Philadelphia; (xii) the Insurance Carriers; (xiii) the Insurance Broker; (xiv) Premium Assignment Corporation; (xv) the Debtors' depository banks; and (xvi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion seeks "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

35174806.9 07/01/2019

WHEREFORE, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: July 1, 2019

**SAUL EWING ARNSTEIN & LEHR LLP**

By:    */s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Proposed Counsel for Debtors and*
*Debtors in Possession*

35174806.9 07/01/2019