# Exhibit A

**(Proposed Interim Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a ) | Case No. 19-11466 (___) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* ) | |
| *al.*,[1] ) | Joint Administration Requested |
| ) | |
| Debtors. ) | **Re: Docket No. ____** |
| ) | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY OR HONOR PREPETITION OBLIGATIONS TO CERTAIN CRITICAL VENDORS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH CRITICAL VENDOR OBLIGATIONS**

This matter coming before the Court on the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay or Honor Prepetition Obligations to Certain Critical Vendors and (II) Authorizing Banks to Honor and Process Checks and Transfers Related to Such Critical Vendor Obligations* (the "**Motion**"),[2] filed by the above-captioned debtors (collectively, the "**Debtors**"), for entry of an interim order, pursuant to sections 105(a), 363(b), 364, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h), authorizing, but not directing, the Debtors to pay prepetition claims of certain critical vendors up to $125,000 (the "**Interim Cap**") prior to the date of the final hearing on the Motion (the "**Interim Period**"), and (ii) authorizing and directing the applicable banks and financial institutions to honor all related checks and electronic payment requests; and the Court

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Capitalized terms not otherwise defined in this Interim Order shall have the meanings ascribed to such terms in the Motion.

having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion was adequate and appropriate under the particular circumstances; and the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing; and after due deliberation, and good and sufficient cause having been shown,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on an interim basis as set forth in this Interim Order.

2. The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or a portion of the Critical Vendor Claims, subject to the terms and conditions set forth in this Interim Order, in an amount not to exceed $125,000 in the aggregate on an interim basis, unless otherwise ordered by the Court.

3. After the date hereof, the Debtors shall determine who is a Critical Vendor by considering, among other things, whether failure to pay such creditor's prepetition claims will have a material impact on the Debtors' operations and the other criteria set forth in the Motion, including patient safety.

4. The Debtors are authorized, but not directed, to negotiate the supply of goods or services to the Debtors from the Critical Vendors on trade terms that are the same or better than the trade terms that existed immediately prior to the Petition Date (the "**Customary Trade Terms**"). The Debtors reserve the right to negotiate new trade terms (the "**Minimum Credit Terms**") with any Critical Vendor, as a condition to payment of any Critical Vendor Claim, that

vary from the Customary Trade Terms, to the extent the Debtors determine that such terms are necessary to procure essential goods or services or otherwise in the best interests of the Debtors' estates.

5. To ensure that the Critical Vendors deal with the Debtors on either Customary Trade Terms or Minimum Credit Terms, the Debtors are authorized, but not directed, to undertake appropriate efforts to cause Critical Vendors to enter into Trade Agreements with the Debtors substantially in the form of the agreement that is annexed to this Interim Order as **Exhibit 1**, as a condition of payment of their Critical Vendor Claims.

6. Except as set forth in this Interim Order, the Debtors are authorized to make payments on account of Critical Vendor Claims in the absence of a Trade Agreement if the Debtors determine, in their business judgment, that failure to pay such Critical Vendor Claims presents a material risk of irreparable harm to patient safety or otherwise to the Debtors' businesses and there is no reasonable likelihood that the Debtors will negotiate an acceptable Trade Agreement with the applicable vendors and/or service providers.

7. As a further condition of receiving payment on a Critical Vendor Claim, the Debtors are authorized, in their discretion, to require that such Critical Vendor agree to take whatever action is necessary to remove or withdraw, or await the right to assert, any Lien, Reclamation Claim or 503(b)(9) Claim, in each case, at such Critical Vendor's sole cost and expense on account of the paid Critical Vendor Claim; *provided*, *however*, that such Critical Vendor may reserve the right to reinstate such Lien in the event that the payment from the Debtors is reversed.

8. If a Critical Vendor under a Trade Agreement refuses to supply goods and/or services to the Debtors on Customary Trade Terms or Minimum Credit Terms following receipt

of payment on its Critical Vendor Claim or otherwise fails to comply with any Trade Agreement entered into between such Critical Vendor and the Debtors, then the Debtors may (a) declare that any Trade Agreement is immediately terminated without further order of this Court and return the parties to the positions they held immediately prior to entry of this Interim Order with respect to all prepetition claims including, but not limited to, seeking recovery or disgorgement of any payment made to such Critical Vendor on account of its Critical Vendor Claims to the extent that such payments exceeded the postpetition claims of such Critical Vendor, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other defense, and (b) seek leave of the Court to recharacterize payments made to the Critical Vendor on account of its Critical Vendor Claim to have been in payment of then-outstanding (or subsequently accruing) postpetition claims of such Critical Vendor. Nothing in this Interim Order shall constitute a waiver of the Debtors' rights to seek damages or other appropriate remedies against any breaching Critical Vendor.

9. Notwithstanding the foregoing, the Debtors may, in their discretion, reinstate a Trade Agreement if the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor of such default, or the Debtors, in their discretion, reach a favorable alternative agreement with the Critical Vendor.

10. The Debtor shall maintain a matrix summarizing (a) the name of each Critical Vendor, (b) the amount paid to each Critical Vendor on account of its Critical Vendor Claim, and (c) the goods or services provided by such Critical Vendor.

11. Nothing in this Interim Order shall be construed to limit, or in any way affect, the Debtors' ability to dispute any Critical Vendor Claim.

12. Nothing in the Motion or this Interim Order, or the Debtors' payment of any claims pursuant to this Interim Order, shall be deemed or construed as: (a) an admission as to the validity of any claim or lien against the Debtors or their estates or an undertaking, obligation, or commitment to pay claims hereunder; (b) a waiver of the Debtors' right to dispute the extent, perfection, priority, validity, or amount of any claim or lien; (c) an assumption, adoption, approval, or rejection of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (d) an admission of the priority status of any claim, whether under section 503(b)(9) of the Bankruptcy Code or otherwise; or (e) a modification of the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any Critical Vendor.

13. The amount of each Critical Vendor's Critical Vendor Claims set forth in connection with a Trade Agreement shall be used only for purposes of determining such Critical Vendor's claim under this Interim Order and shall not be deemed a claim allowed by the Court. The rights of all interested persons to object to the extent, perfection, priority, validity, or amount of any claim or any lien securing such claim shall be fully preserved until further order of the Court. Further, signing a Trade Agreement containing a claim amount for purposes of this Interim Order shall not excuse such Critical Vendor from filing a proof of claim in these Chapter 11 Cases.

14. Nothing contained in this Interim Order shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Critical Vendor. Notwithstanding the relief granted in this Interim Order and any actions taken hereunder, nothing in this Interim Order shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by any person.

15. The authorization granted hereby to pay Critical Vendor Claims shall not create any obligation on the part of the Debtors or their officers, directors, attorneys or agents to pay the Critical Vendor Claims, none of the foregoing persons shall have any liability on account of any decision by the Debtors not to pay a Critical Vendor Claim, and nothing contained in this Interim Order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Critical Vendor Claims to the extent they are not paid.

16. The Debtors' banks and financial institutions shall be and hereby are authorized to receive, process, honor and pay all checks and fund transfers on account of the Critical Vendor Claims that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Banks are authorized to rely on the representations of the Debtors as to which checks and fund transfers are authorized to be honored and paid pursuant to this Interim Order.

17. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity or priority of any claim or lien against the Debtors; (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien; (c) an undertaking, obligation, or commitment to pay any claims hereunder; or (d) the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

18. Any payment made pursuant to this Interim Order shall not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently, nor shall it be construed as consent to the amount of any claim by a Critical

6

Vendor. The Debtors retain sole discretion as to whether to pay any claim that the Court authorizes under this Interim Order.

19. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b) because the relief granted in this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors' estates.

20. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

21. The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Interim Order.

22. The Final Hearing on the Motion shall be held on _____, 2019 at \_\_\_\_\_ (Prevailing Eastern Time), and any objections or responses to the Motion shall be in writing, filed with the court, and served so as to be actually received on or before _____, 2019 at 4:00 p.m. (Prevailing Eastern Time)

23. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Interim Order.

Dated: _____, 2019
Wilmington, Delaware

_____
United States Bankruptcy Judge

# **EXHIBIT 1**

**(Proposed Trade Agreement)**

_____, 2019

TO:   [Critical Vendor] [Name] [Address]

## Trade Agreement

As you may be aware, on June 30, 2019 and July 1, 2019 (together, the "**Petition Date**"), Center City Healthcare, LLC d/b/a Hahnemann University Hospital, together with certain of its affiliates (collectively, the "**Debtors**"), filed voluntary petitions (the "**Bankruptcy Cases**") under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").  On the Petition Date, we requested the Bankruptcy Court's authority to pay certain vendors and service providers in recognition of the importance of our relationship with such vendors and service providers.  On _____, 2019, the Bankruptcy Court entered an order (the "**Order**") authorizing us, under certain conditions, to pay pre-bankruptcy claims of certain vendors and service providers that agree to be bound by the terms of the Order and to the terms set forth below. A copy of the Order is enclosed for reference.

To receive payment on pre-bankruptcy claims, we require you to agree to supply goods and/or services to the Debtors based on "Customary Trade Terms." Customary Trade Terms are trade terms that are the same or better than the trade terms that existed immediately prior to the Petition Date.

For purposes of administration of this trade program as authorized by the Bankruptcy Court (the "**Trade Payment Program**"), the Debtors and you agree as follows:

1. For purposes of this Trade Agreement, the estimated balance of your prepetition claim (accounting for any setoffs, credits or discounts) (the "**Prepetition Claim**") is $____.  The Prepetition Claim will be paid as follows: **[____].** Notwithstanding our agreement to pay the Prepetition Claim as described herein, it will be necessary for you to file a proof of claim in the Bankruptcy Cases to officially evidence the Prepetition Claim. **You will receive notice of the bar date for filing a proof of claim at a later date.** You hereby agree to accept payment in the amount of the Prepetition Claim in full and complete satisfaction of any and all amounts owed to you by the Debtors for the period ending on the Petition Date, and you hereby waive any right to assert or seek payment of any amount for the period prior to the Petition Date that exceeds the Prepetition Claim. In particular, you agree that your proof of claim will not be filed in an amount that exceeds the Prepetition Claim.

2. The open trade balance or credit line that you will extend to the Debtors for delivery of postpetition goods or performance of postpetition services is $____ (which shall not be less than the greater of the open trade balance

     outstanding (a) on____, 2019, or (b) on normal and customary terms on an historical basis for the period prior to the Petition Date).

3. In consideration for the payment described herein, you agree not to file or otherwise assert against any or all of the Debtors, their estates or any other person or entity or any of their respective assets or property (real or personal) any lien (a "**Lien**"), a claim for reclamation (a "**Reclamation Claim**"), or a claim under section 503(b)(9) of the Bankruptcy Code (a "**503(b)(9) Claim**"), regardless of the statute or other legal authority upon which such Lien, Reclamation Claim, or 503(b)(9) Claim may be asserted, related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date.  In addition, to the extent you have already obtained or otherwise asserted such a Lien, Reclamation Claim, or 503(b)(9) Claim, you shall take (at your own expense) whatever actions are necessary to remove such Lien or withdraw such Reclamation Claim or 503(b)(9) Claim unless your participation in the Trade Payment Program authorized by the Order is terminated.

4. If your Prepetition Claim arises under a contract with the Debtors, you also agree not to file a motion to compel assumption or rejection of the contract.

5. You will hereafter extend to the Debtors all Customary Trade Terms, which are:

**[ADD INDIVIDUALIZED SET OF CUSTOMARY TRADE/SERVICE TERMS OR ATTACH/CROSS-REFERENCE TERM FROM EXISTING AGREEMENT]**

  Payment of your Prepetition Claim in the manner set forth in the Order may occur upon execution of this letter by a duly authorized representative of your company and the return of this letter to the Debtors. Your execution of this letter agreement and the return of the same to the Debtors constitute an agreement by you and the Debtors:

    a. to the Customary Trade Terms and, subject to the reservations contained in the Order, to the amount of the Prepetition Claim set forth above;

    b. that, for at least during the pendency of the Bankruptcy Cases, you will continue to supply the Debtors with goods and/or services under the Customary Trade Terms and any terms set forth herein and that the Debtors will pay for such goods and/or services in accordance with the terms hereof;

    c. that you have reviewed the terms and provisions of the Order and acknowledge that you are bound by such terms; and

2

3

      d.      that if either the Trade Payment Program or your participation therein terminates as provided in the Order, any payments received by you on account of your Prepetition Claim will be deemed to have been in payment of postpetition obligations owed to you and you will immediately repay to the Debtors any payments made to you on account of your Prepetition Claim to the extent that the aggregate amount of such payments exceed the postpetition obligations, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or other defense.

      The Debtors and you also hereby agree that any dispute with respect to this agreement, the Order and/or your participation in the Trade Payment Program shall be determined by the Bankruptcy Court.

      Please indicate your agreement to the terms hereof by returning a signed copy of this letter to [Name] at (   )_____or [Name] (   )_____.

      Sincerely,

      [Debtor] By:  Allen Wilen
      Its: Chief Restructuring Officer

Agreed and Accepted by:
[Name of Critical Vendor/Service Provider] By:
Its:
Dated:

3