**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 )|
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (___) ) ) Joint Administration Requested |
| Debtors. | ) ) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a), 363, AND 1108 OF THE BANKRUPTCY CODE (A) AUTHORIZING THE DEBTORS TO IMPLEMENT A PLAN OF CLOSURE FOR HAHNEMANN UNIVERSITY HOSPITAL AND (B) SCHEDULING A FINAL HEARING**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through their proposed undersigned counsel, file this motion (this "**Motion**"), for the entry of interim and final orders attached hereto as **Exhibits A** and **B**, respectively, pursuant to sections 105(a), 363 and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), (a) authorizing the Debtors to implement a plan of closure for Hahnemann University Hospital ("**HUH**"), and (b) scheduling a final hearing on the Motion. In support of the Motion, the Debtors rely upon the *Declaration of Allen Wilen in Support of First Day Relief* (the "**First Day Declaration**"), and respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

**PRELIMINARY STATEMENT**

1. Shortly after the acquisition of their healthcare businesses, including HUH, from Tenet Business Services Corporation ("**Tenet**") on January 11, 2018 (the "**Acquisition**"), the Debtors encountered financial and operational challenges, which are described in detail in the First Day Declaration. These challenges, and others, have resulted in material and unsustainable losses at HUH. Unless the Debtors can promptly end these losses by closing HUH, which they have been unable to sell, they will incur administrative obligations they cannot pay and will negatively affect St. Christopher's Hospital for Children, a nationally renowned children's hospital owned by one of the Debtors herein that serves a critically underserved and vulnerable patient population.

2. On June 25, 2019, the Board of Managers of Philadelphia Academic Health System, LLC (the "**Board**"), the parent and manager of CCH and one of the Debtors herein, voted to approve the closure of HUH (the "**Closure**"). On June 26, 2019, the Debtors informed the Pennsylvania Department of Health ("**DOH**") of their intention to close HUH, and on June 27, 2019 submitted their plan of closure (as such may be amended from time to time in consultation with DOH, the "**Closure Plan**") to DOH for approval. Although the DOH responded with a cease and desist order, instructing the Debtors not to close HUH or eliminate services (particularly emergency department services) pending DOH's approval of a closure plan, the Debtors believe that DOH's action was based largely on allegedly conflicting information regarding the timing of the closure. The Debtors have discussed, and intend to continue to discuss, their closure plan with DOH, in the hope and expectation that they will reach agreement with DOH on such plan prior to the hearing on this Motion.

3. By this Motion, the Debtors seek interim and final authority to implement the Closure Plan, which deals with, among other things, patients, the transfer and storage of medical records, the disposition of pharmaceuticals, inventory, medical waste and hazardous materials and, ultimately, the cessation of operations at HUH.[2] As noted above, the Debtors will work closely with the DOH and all other authorities to attempt to address their concerns regarding the Closure Plan prior to the hearing on this Motion.

## JURISDICTION AND VENUE

4. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**")*,* the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409

5. The statutory predicates for the relief requested herein are sections 105(a), 363 and 1108 of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[2] Certain elements of the Closure Plan may require the Debtors to assume and reject contracts and leases, enter into new contracts, and dispose of equipment and other property. The Debtors, by this Motion, do not seek authority to assume or reject contracts and leases, enter into any new contracts, or sell equipment or other estate property. To the extent necessary, such relief will be sought by separate motion(s). In addition, while certain of the actions contemplated by the Closure Plan will require the use of cash collateral or other finances, the Debtors, by this Motion, do not seek authorization for such financing; such relief is the subject of a separate motion filed contemporaneously herewith .

3

**GENERAL BACKGROUND**

6. On June 30, 2019 and the date hereof (together, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

7. A description of the Debtors' businesses, HUH's history and operations, the Debtors' reasons for commencing these Chapter 11 Cases, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

**CIRCUMSTANCES LEADING TO CHAPTER 11**

8. As further explained in the First Day Declaration, a host of issues have contributed to the Debtors' financial circumstances. In addition to the Debtors' disputes with Tenet, Conifer and Drexel University d/b/a Drexel University College of Medicine ("**DUCOM**"), which are detailed in the First Date Declaration, these issues include: (a) delays in payment of supplemental payments from the Commonwealth of Pennsylvania to the Debtors and/or their affiliates, as well as a reduction of such payments of approximately $17 million per year; (b) a significant reduction in patient volumes in 2018; (c) increased losses by certain Physician Groups; (d) material declines in outpatient procedures and surgeries; (e) reductions in average daily census, partly due to a reduction in average length of stay and reduced direct admissions; and (f) the continuing need for capital expenditures to HUH's buildings and equipment.

9. In calendar year 2018 (since the Acquisition), HUH's pre-tax losses exceeded $69 million (unaudited). These losses have continued in 2019; for the month of March 2019, HUH's pre-tax losses exceeded $5.8 million (unaudited).

10. By the end of June 2019, these losses, caused by the above factors as well as other factors detailed in the First Day Declaration, combined to create a liquidity crisis that has brought the Debtors to these Chapter 11 Cases.

## THE DECISION TO CLOSE HUH AND FILE FOR CHAPTER 11

11. As noted above, in April 2019, the Debtors engaged EisnerAmper to provide assistance in exploring various transaction alternatives, including restructuring and refinancing alternatives. The Debtors also engaged in intense, arms-length discussions with DUCOM regarding a potential transaction. These discussions were ultimately unsuccessful and terminated in late May or early June.

12. In addition, the Debtors retained SSG to serve as investment banker beginning in June 2019 to provide assistance in, among other things, sourcing and coordinating a transaction that would support the continued operation of HUH. Immediately following SSG's retention in early June 2019, SSG developed marketing materials, including a "teaser" and a confidential information memorandum. SSG also established an electronic data room containing key information for parties to conduct in depth due diligence on HUH. To date, SSG has sent the teaser to approximately 33 potentially interested parties, 5 of which requested entry into non-disclosure agreements and 2 of which subsequently signed non-disclosure agreements and were granted access to the data room. Despite significant effort, SSG has not located a buyer for HUH. As such, given HUH's bleak financial picture and its operational challenges, as well as the Debtors' focus on patient safety, the Debtors, in consultation with their professionals,

determined that it is necessary and unfortunately unavoidable to shut down HUH in the context of a Chapter 11 proceeding. As noted above, unless the Debtors can promptly close HUH, which they have been unable to sell, they endanger the future of St. Christopher's Hospital for Children, a nationally renowned children's hospital owned by one of the Debtors herein that serves a critically underserved and vulnerable patient population.

## THE CLOSURE PLAN

13. In late June 2019, with no meaningful prospect of a sale and no viable sources for additional funding, closure became the only option for HUH. Accordingly, to protect the health and safety of HUH patients, on June 25, 2019, the Board voted to approve the closure of HUH.

14. On June 25, 2019 the Debtors caused WARN Act notifications to be mailed to all HUH employees, providing them with sixty (60) days' advance written notification of the Closure, as required by federal law. City of Philadelphia and state government officials were copied on the WARN Act notifications. In addition, on June 26, 2019, HUH provided notice of the Closure and its mailing of WARN Act notices to the appropriate labor unions (i.e., Pennsylvania Association of Staff Nurses and Allied Professionals, National Union of Hospital and Health Care Employees and AFSCME AFL-CIO, District 1199C).

15. On June 27, 2019, the Debtors provided notice of the Closure Plan to the Health Commissioner of the Philadelphia Department of Health (the "**Philadelphia Health Commissioner**"). The Debtors also provided notice of the Closure to the City of Philadelphia's Fire and EMS Department.

16. Although, as noted above, the DOH has issued a cease and desist directive instructing the Debtors not to close HUH or eliminate services (particularly emergency department services) pending DOH's approval of a closure plan, the Debtors believe that DOH's

6

35534720.8 07/01/2019

concerns relate primarily to timing, and intend to continue discussions with DOH and other authorities. The Debtors hope and expect that they will reach agreement on the Closure Plan prior to the hearing on this Motion.

17. Certain key elements of the Debtors' proposed Closure Plan are described below.

**A.     Overview of the Plan**

18. The Closure Plan provides for the closure of HUH and details each step that will be followed to terminate the operation of Hospital services, including the following steps:

- Cessation of new inpatient admissions;
- Transfer, discharge and referral of patients;
- Communication to employees, patients, providers, government entities, area hospitals and the community at large;
- Safeguarding, transfer and storage of medical records;
- Disposition of pharmaceuticals, including controlled substances;
- Disposition and handling of biomedical hazardous and radioactive waste;
- Coordination with Emergency Medical Services ("**EMS**") and removal of Hospital road signs;
- Enhanced security measures; and
- Resident/fellow orphaning.

19. Above all, the Closure Plan emphasizes patient safety. As noted above, the Debtors plan to work closely with the DOH, other applicable authorities, and area providers to prevent disruption of patient care and ensure a smooth transition of the Debtors' patients to new care providers.

**B.     Timeline**

20.     Although subject to modification based on patient safety concerns and input from the DOH and others, the Debtors' current general timeline for shut-down of operations is as follows:

| *Date[3]*: | *Action* |
|---|---|
| **TBD**: | Notify EMS on diversion to trauma, STEMI, critical and stroke. Begin process of transferring patients, along with their medical record information, to hospitals in the greater Philadelphia area or a hospital of their choice. Complete closure of Psychiatric Medical Care Unit. |
| **TBD**: | Cease all elective inpatient admissions to Hospital. |
| **July 26**: | Conclude and cease all elective surgeries. |
| **August 16**: | Hospital emergency department ("**ED**") closure completed. |
| **August 23**: | Hospital neonatal intensive care unit closure completed. |
| **September 6**: | Hospital closes as an acute care hospital/ceases clinical operations. |

**C.     Transfer and Discharge of Patients**

21.     The most critical aspect of the Closure Plan is ensuring continuity of care for the Debtors' patients. The majority of currently-admitted patients will be discharged in the ordinary course and, if necessary, provided with information and assistance to make follow-up appointments with replacement providers. Inpatients will be notified of the anticipated closure and will be transferred, along with their medical record information, to a hospital in the greater Philadelphia area (within a 10 mile radius) or a hospital of the patients' choice. Arrangements

---

[3]     All dates are subject to ongoing discussion with DOH and others as appropriate.

with an ambulance carrier will be in place to accommodate the orderly transition of all patients. The Debtors expect to complete the transfer and discharge of acute care patients by the Closure Date.

**D.     Medical Records**

22.     The protection, transfer and storage of medical records are also an important element of the Closure Plan. The Debtors currently store a significant portion of their patient medical records with Iron Mountain Information Management, LLC ("**Iron Mountain**"), a major vendor for document management. The Debtors have designated Iron Mountain as the records custodian of all physical medical records for HUH and MediQuant as the custodian of all electronic medical records. Additionally, the Debtors will place public notices in *The Legal Intelligencer* and the *Philadelphia Inquirer* newspapers to alert patients to the location of their medical records. Written notification of how to locate patient records will also be sent to all physicians currently on the active staff of HUH.

**E.     Communications**

23.     The Debtors have developed a comprehensive approach to keep patients, employees, government agencies, area hospitals and the community at large informed of the Closure. In particular, the Debtors have contacted area hospitals and outpatient practices to inform them of the Closure and to discuss procedures for the transfer of patients. In addition, the Debtors have notified the fire department and the appropriate government agencies of the Closure. As noted above, the Debtors intend to place public notices in local Philadelphia newspapers regarding the location of patient medical records, and will provide written notice to all active HUH physicians as to how to locate patient records.

24. With respect to employees, in addition to the WARN Act notices sent on June 25, 2019, the Debtors intend to schedule job fairs for displaced employees and provide information to displaced employees about open positions at STC, which is also operated by the Debtors. As noted above, STC is not in any way subject to the Closure Plan.

F. **Disposition of Pharmaceuticals, Hazardous Materials, and Medical Waste**

25. The Debtors will manage and dispose of pharmaceuticals, hazardous materials, and medical waste in accordance with state and federal guidelines. Medications, radioactive materials, chemicals, medical waste, infectious materials and other hazardous materials will be identified, secured and inventoried, then destroyed, disposed of, returned to vendors, or transferred to other providers as appropriate. HUH has hired vendors to manage the disposal of medical waste and infectious materials. After termination of services, the Debtors will also retain an outside vendor to decontaminate hot rooms.

G. **Resident/Fellow Orphaning**

26. In order to preserve the educational continuity of the residents and fellows currently in training at HUH, HUH's Chief Academic Officer and Designated Institutional Official is working closely with, and has notified, the Accreditation Council for Graduate Medical Education, Graduate Medical Education Committee, Chairperson of the Board of Governors, President of the Medical Executive Committee and the Dean and Senior Vice Dean for Educational Affairs at DUCOM, as well as other interested parties, regarding the immediate implementation of, and compliance with, those policies and procedures related to resident and fellow orphaning and displacement necessary to protect the interests and preserve the educational continuity of residents and fellows currently in training at HUH.

**RELIEF REQUESTED**

27. By this Motion, the Debtors seek the entry of an order, substantially in the forms annexed hereto as **Exhibits A** and **B**, pursuant to sections 105(a), 363, and 1108 of the Bankruptcy Code, authorizing the continued implementation of the Closure Plan in coordination with the DOH and other applicable authorities.

**BASIS FOR RELIEF**

28. Section 1108 of the Bankruptcy Code grants a debtor in possession the *right* to operate its businesses, providing that the trustee (or debtor in possession) "*may* operate the debtor's business." 11 U.S.C. § 1108 (emphasis added). With its use of the permissive term, "may," the statute "clearly indicates that a trustee is not required to operate the debtor's business." *In re Thrifty Liquors, Inc.*, 26 B.R. 26, 28 (Bankr. D. Mass. 1982). Indeed, section 1108 "necessarily implies the lesser authority to modify the operation of the business on such grounds as he deems appropriate under the circumstances." *Id.* Thus, a debtor is not required to operate its business "if such operations will reduce the value of the debtor's assets or if the debtor's business is moribund." 7 *Collier on Bankruptcy* ¶ 1108.13 (Alan N. Resnick & Henry Sommer eds., 16th ed.). Indeed, in such circumstances, "continued operation of a business that ought to be closed down and liquidated may be a breach of the fiduciary duties of a trustee or debtor in possession." *Id.*

29. As discussed further below, the Debtors have determined that there are compelling reasons to cease operations at HUH. To this end, the Debtors have sought appropriate relief from the DOH as required by applicable law. Although the Bankruptcy Code does not require court approval of the Closure, the Debtors recognize that the closure of HUH dramatically affects their core services and thus directly impacts many of their creditors, patients,

and other parties in interest. Therefore, in the exercise of caution, the Debtors seek approval of the continued implementation of the Closure Plan as a non-ordinary course transaction. As noted above, the Debtors intend to work closely with the DOH and the Philadelphia Health Commissioner to address their concerns and comments regarding the Closure Plan.

30. Section 363 of the Bankruptcy Code governs the use of property of the estate by a debtor in possession. A debtor in possession may enter into transactions involving property of the estate in the ordinary course of business without first obtaining bankruptcy court approval. *See* 11 U.S.C. § 363(c)(1); *see also In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("The framework of section 363 is designed to allow a trustee (or debtor-in-possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary.").

31. Where, however, a proposed transaction is outside the ordinary course of the debtor's business, the Bankruptcy Code prohibits the debtor from using property of the estate until creditors and other parties in interest are given notice and the opportunity to be heard. *See* 11 U.S.C. § 363(b)(1); *In re Roth Am., Inc.*, 975 F.2d at 952. Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize a non-ordinary course transaction. However, courts in the Third Circuit have required that such a transaction be supported by a "sound business reason." *See, e.g., In re Del. & Hudson Ry.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).

32. In the present case, the business reasons for the Closure are both sound and compelling. Put simply, the Debtors have no alternative but to close HUH. The Debtors'

financial condition has rapidly deteriorated over the course of the past several months. Although the Debtors, have taken a number of steps to address their liquidity crisis and search for a strategic partner for continued operation of HUH outside of bankruptcy, they have been unable to find a buyer for HUH and lack sufficient cash to continue operating HUH on a standalone basis other than in accordance with the Closure Plan.

33. Without access to financing or a potential transaction, the Debtors have no choice but to close HUH. Accordingly, granting the relief requested herein is appropriate and in the best interests of all parties in interest.

34. Relief similar to that requested herein has been granted in previous chapter 11 cases. *See In re Saint Vincents Catholic Med. Ctr. of N.Y.*, Case No. 10-11963 (Bankr. S.D.N.Y. (May 14, 2010) (order authorizing closure of Debtors' Manhattan hospital and certain affiliated outpatient clinics and practices); *In re Saint Vincents Catholic Med Ctr. of N.Y.*, Case No. 05-14945 (Bankr. S.D.N.Y. Sept. 20, 2005) (order authorizing closure of St. Mary's hospital).

## **REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY**

35. Pursuant to Bankruptcy Rules 6003(b) and 6004(h), the Debtors seek (a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm, the Court may allow the Debtors to use property of the estate prior to the twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) further provides that "[a]n order

13

authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

36. Here, failure to grant immediate relief would risk immediate and irreparable harm to the Debtors' patients. Notwithstanding the unquestioned skill and dedication of the Debtors' employees to attend to the continued needs of the Debtors' patients, given their financial condition and available funding, the Debtors must be permitted to move expeditiously to implement the Closure Plan, in coordination with the DOH and other applicable authorities, to ensure patient safety. Thus, the Debtors seek the entry of an Order granting the relief requested in the Motion on an interim basis pending a final hearing.

## NOTICE

37. The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to MidCap Funding IV Trust; (iv) DUCOM; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Human Services; (xi) the City of Philadelphia; (xii) the City of Philadelphia Fire and EMS Department; (xiii) the Pennsylvania Department of Health, Division of Acute and Ambulatory Care; (xiv) the Philadelphia Health Commissioner; and (xv) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion seeks "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

14

## NO PREVIOUS REQUEST

38. No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested and such other or further relief as is just.

Dated: July 1, 2019                            **SAUL EWING ARNSTEIN & LEHR LLP**

                                                               By:    */s/ Monique B. DiSabatino*
                                                                      Mark Minuti (DE Bar No. 2659)
                                                                      Monique B. DiSabatino (DE Bar No. 6027)
        1201 N. Market Street, Suite 2300
        P.O. Box 1266
        Wilmington, DE  19899
        Telephone: (302) 421-6800
        Fax: (302) 421-5873
        mark.minuti@saul.com
        monique.disabatino@saul.com

        -and-

        Jeffrey C. Hampton
        Adam H. Isenberg
        Aaron S. Applebaum (DE Bar No. 5587)
        Centre Square West
        1500 Market Street, 38th Floor
        Philadelphia, PA 19102
        Telephone: (215) 972-7700
        Fax: (215) 972-7725
        jeffrey.hampton@saul.com
        adam.isenberg@saul.com
        aaron.applebaum@saul.com

        *Proposed Counsel for Debtors and Debtors in Possession*

35534720.8 07/01/2019