# Exhibit A

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COMMERCE DIVISION**

| | | |
|---|---|---|
| DREXEL UNIVERSITY, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | COMMERCE COURT |
| vs. | : | |
| | : | JUNE TERM, 2019 |
| AMERICAN ACADEMIC HEALTH | : | |
| SYSTEM, LLC, *et al.*, | : | No. 06771 |
| | : | |
| Defendants. | : | |
| | : | |

**AFFIDAVIT OF CITY OF PHILADELPHIA HEALTH COMMISSIONER**
**THOMAS FARLEY, MD, MPH**

I, Thomas Farley, M.D., M.P.H., aver the following:

1.  I know personally about the facts recited below and submit this affidavit in the above-caption matters.

2.  I have been the Health Commissioner of the City of Philadelphia since 2015.  As Health Commissioner, I oversee the Department of Public Health, which has a broad mandate and authority to protect the public health of all persons in Philadelphia.  I am also the chairperson of the Philadelphia Board of Health, which promulgates regulations to protect public health, including regulations pertaining to hospitals in Philadelphia.

3.  I am a physician trained in pediatrics and epidemiology and previously served as the health commissioner for New York City from 2009 to 2014.

4.  Before joining New York City, I was chair of the Department of Community Health Sciences at the Tulane University School of Public Health and Tropical Medicine and served in the Centers for Disease Control's Epidemic Intelligence Service.

5.  I am aware that pursuant to a longstanding Regulation of the Board of Health (the "Regulation"), I, as Health Commissioner, must approve the closure of any hospital in Philadelphia that provides emergency care or conducts, maintains, or operates any facilities for such care.

6.  I have reviewed Hahnemann's closure plan submitted to the City on June 27, 2019.  In that closure plan, Hahnemann also sought my approval to close the hospital pursuant to the Regulation.

7.   The above-referenced Hahnemann closure plan is inadequate for at least six reasons.

8.   First, the closure plan does not provide sufficient notice to patients.  The plan states that "patients will be provided written notice of the closure date with sufficient time to allow patients to obtain necessary care," but the timeline of stepwise closure between July 1 and September 6 is inadequate for this.  The plan does not describe in sufficient detail how patients and potential patients will receive this notice of the closure.  This risks patients (including critically ill patients) arriving at the hospital expecting care and not being able to receive it.

9.   Second, the plan does not describe how patients will choose new physicians or how Hahnemann will transfer records to those physicians, which unacceptably leaves the burden of these steps on patients and other (non-Hahnemann) medical providers.  Hahnemann has an obligation to take affirmative steps to find new sites of care for those patients.

10.  Third, the closure plan does not provide sufficient detail regarding transplant programs.  Because of the lack of detail, it is unclear if there is sufficient time to close transplant programs without risking the health of patients on waiting lists and on dialysis.

11.  Fourth, the closure plan does not provide adequate assurance that current or past medical records will be available.  The plan's emergency department diversion component states that patients will be sent with paper medical records, with no provision for electronic access to past medical encounters.  In addition, the closure plan is vague about access to past medical records, stating only that a company called MediQuant will maintain these records, without any presentation about their accessibility to other providers who will have to care for former Hahnemann patients.  At a minimum, an adequate closure plan would include written signed agreements regarding patient transfer to other facilities and provisions for access to electronic medical records.

12.  Fifth, the closure plan does not adequately identify organizational management during the closure period.  I understand that the interim CEO is leaving, with no replacement identified, and the Board of Directors has lost so many members that it does not have a quorum for decisions.  My current understanding is that the Pennsylvania Department of Health is in the process of appointing a temporary manager of Hahnemann, which does not alleviate the need for the owners of Hahnemann to provide proper assurances to City's Department of Public Health.

13.  Sixth, the closure plan must be approved by the State, and thus far the Pennsylvania Department of Health has not approved the closure plan, and in fact ordered Hahnemann to cease and desist from closing or curtailing its services.  The state would also need to approve other aspects such as handling of pharmaceuticals and chemicals that the state regulates.

14.  As a result, I have not approved the closure plan in its current form and have not authorized Hahnemann to close or curtail its emergency department.  To date, Hahnemann University Hospital has not been transparent regarding its plans.  Hahnemann's representatives recently said that they had been working on a closure plan for months, but

they had not involved my department, the Philadelphia Department of Public Health, nor the state Department of Health nor other hospitals before June 27, 2019. In addition, originally Hahnemann said it planned to work with four other hospitals on an emergency department diversion plan, but then changed its story to say that it had developed a new plan as of June 27 to work with Jefferson University Hospital only. This does not provide adequate time to arrange a smooth transition of patient care to other providers or to identify potential problems, let alone put solutions in place.

15. As recently as today, Hahnemann's representations remain inaccurate. For instance, Hahnemann represented that it had agreed with Jefferson such that ambulances would be posted at the Hahnemann Emergency Department, but did not provide any written assurance. Today, a visual inspection by EMS confirms that this has not happened, creating a risk that Hahnemann will not be able to treat or timely transport a patient who self-reports to Hahnemann's Emergency Department with a medical need more acute than Hahnemann can handle.

16. The appointment of a special master to coordinate the flow of accurate information from Hahnemann to the City and State is essential to safely managing any closure of Hahnemann and its emergency department.

17. Based on the foregoing and in the interest of the protection of patient health in the City of Philadelphia, it is imperative that I, as the Commissioner the Department of Health, continue to work with Defendants in discussing, facilitating, and eventually approving the closure of Hahnemann. Postponement or prolongment of my involvement in this process would likely negatively impact patient health.

18. I, Thomas Farley, hereby verify that the facts above set forth are true and correct to the best of my knowledge, information and belief and I expect to be able to prove the same at any hearing hereof. I understand that I make the foregoing statements subject to the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).

Date: July 1, 2019

Thomas Farley, MD, MPH, Health Commissioner