**Exhibit B**

**DIP Term Sheet**



MidCap Financial Trust
c/o MidCap Financial Services, LLC, as Servicer
7255 Woodmont Avenue, Suite 200
Bethesda, MD 20814
www.midcapfinancial.com

June 30, 2019

*Delivery by electronic mail*

Philadelphia Academic Health System, LLC
c/o Paladin Healthcare Capital, LLC
222 N. Sepulveda Blvd., Suite 900
El Segundo, CA 90245

Re:     Debtor in Possession Credit Facility

Ladies and Gentlemen:

Reference is made herein to that certain Credit and Security Agreement dated as of January 11, 2018 by and among MidCap Funding IV Trust, in its capacity as administrative agent, Philadelphia Academic Health System, LLC ("**Parent**") and its subsidiaries listed on Schedule 1 hereto (together with Parent, each a "**Borrower**", and collectively, "**Borrowers**"), and the lenders party thereto from time to time (the "**Prepetition Credit Agreement**", and the credit facility evidenced thereby, the "**Prepetition Credit Facility**"), and the other Financing Documents referenced therein.

We are pleased to advise you that Agent and Lenders (defined below) will agree to enter into a First Priority Secured Priming Superpriority Debtor in Possession Credit and Security Agreement and the other DIP Loan Documents (defined below) to provide a senior secured debtor-in-possession credit facility (the "**DIP Credit Facility**") under Chapter 11 of the federal Bankruptcy Code, 11 U.S.C. § 101, et. seq. (the "**Bankruptcy Code**") pursuant to the terms and conditions set forth below.  The DIP Credit Facility shall be used pursuant to the Use of Proceeds section below.

Any entry into the DIP Credit Facility will only be effectuated upon completion of legal documentation and credit approval by Agent and Lenders, and all terms set forth herein are subject to such approvals and satisfactory completion of due diligence review.

| **General** | |
|---|---|
| Debtor Borrowers: | Philadelphia Academic Health System, LLC and its subsidiaries set forth on Schedule 1 hereto, as debtor(s)-in-possession in a bankruptcy case to be filed under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**", and such cases being the "**Chapter 11 Cases**") |
| Non-Debtor Guarantors: | Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, and Broad Street Healthcare Properties III, LLC, Physicians Clinical Network, LLC, Physician Performance Network of Philadelphia, L.L.C. and Philadelphia Academic Health Holdings, LLC ("**Holdings**") |
| Agent: | MidCap Financial Trust, or a to-be-determined affiliate |
| Servicer: | MidCap Financial Services, LLC |
| Lenders: | MidCap Financial Trust, or one or more to-be-determined affiliates, and such other banks and financial institutions as may be arranged by Agent |
| **Terms and Conditions** | |
| Facility: | The DIP Credit Facility shall be comprised of the DIP Revolver and DIP Term Loan. |
| | However, due to unforeseen circumstances relating to the Philadelphia County Recorder of Deeds, the DIP Term Loan will be added to the DIP Credit Facility by way of amendment or amendment and restatement (in either case, the "**DIP Term Loan Amendment**") at such time as Agent is able to obtain loan title insurance policies in form and substance reasonably acceptable to Agent covering the property currently encumbered by the Broad Street Mortgages (as defined in the Prepetition Credit Agreement), which title insurance policies shall be substantially identical to the title insurance policies currently in place with respect to the Prepetition Credit Agreement. |
| Commitment Amount: | The maximum loan amount under the DIP Revolver (the "**Commitment Amount**") shall initially be $50,000,000 (as reduced from $100,000,000 in the Prepetition Credit Facility), which Commitment Amount shall step down over time as Availability is reduced in connection with the HUH Closure (to be defined in the DIP Loan Documents), in such increments as shall be agreed upon by Agent and Borrowers. The amount available to Borrowers under the DIP Revolver at any time shall be based upon Availability, as described below. |
| | The DIP Term Loan shall be an original principal amount equal to |

| | |
|---|---|
| | $15,000,000, as described below. |
| Availability: | Subject to Agent's Bankruptcy Court-authorized first priority perfected and priming lien, "**Availability**" under the DIP Revolver shall be substantially similar to the "Availability" as defined in the Prepetition Credit Agreement, and thus the existing Borrowing Base will remain substantially the same, except for the additional Availability described below. |
| | Agent and Lenders shall make an additional $10,000,000 available to the Borrowers by reducing the existing Liquidity Reserve in the Borrowing Base from $15,000,000 to $5,000,000, with such $10,000,000 of additional Availability to be advanced or made available as follows: |
| | (i) Agent and Lenders shall advance $3,750,000 in loan proceeds to Borrowers upon entry of the Interim Order (defined below), |
| | (ii) Agent and Lenders shall advance $3,750,000 in loan proceeds to Borrowers upon entry of the Final Order (defined below), and |
| | (iii) Agent will establish a new reserve on the Borrowing Base in an amount equal to $2,500,000 for the payment of Allowed Professional Fees, as more specifically described below. |
| | The remaining $5,000,000 of the existing Liquidity Reserve shall be released and used to partially prepay the Term Loan (as defined in the Prepetition Credit Agreement) (the "**Prepetition Term Loan**") from $20,000,000 to $15,000,000 by way of an advance of $5,000,000 under the DIP Credit Facility upon the entry of the Interim Order, defined below. |
| | Availability under the DIP Revolver shall be reduced for such availability reserves and/or adjustments as may be established and maintained from time to time by Agent in its commercially reasonable discretion. |
| Use of Proceeds; Budget: | To fund the Debtors' day-to-day operations and general corporate purposes pursuant to and in accordance with a rolling 13-week budget to be prepared by the Borrowers and their financial advisors in form and substance acceptable to Agent and approved by the Bankruptcy Court setting forth the expenditures, revenues, receipts and disbursements of the Borrowers on a weekly basis during the Chapter 11 Case, including, without limitation, professional fees, the costs of the Chapter 11 Case, the costs to maintain and preserve the Debtor's assets, and certain other payments approved by Agent (the "**Budget**"). |

3

| | |
|---|---|
| Term: | The earlier of (a) twelve (12) months from the date of closing or (b) the occurrence of a DIP Credit Facility Termination Event (as defined below) (in either case, the "**DIP Credit Facility Maturity Date**"). The term "**DIP Credit Facility Termination Event**" means the termination of the DIP Credit Facility by Agent, in its sole discretion, based upon any one of the following events:<br><br>(i) the occurrence of an event of default under the DIP Loan Documents (defined below),<br><br>(ii) the indefeasible payment in full of the indebtedness and obligations under the DIP Revolver and the DIP Term Loan,<br><br>(iii) the conversion of the Chapter 11 Case to a case under Chapter 7 or any filing by any Debtor requesting such relief,<br><br>(iv) the dismissal of the Chapter 11 Case or any filing by any Debtor requesting such relief,<br><br>(v) appointment of a trustee or examiner,<br><br>(vi) the effective date of a Plan (as defined below) confirmed by a final order in the Chapter 11 Case,<br><br>(vii) such other events as set forth in the DIP Loan Documents or set forth in the Bankruptcy Court order(s) approving the DIP Credit Facility,<br><br>(viii) failure of Borrowers to obtain the entry of a final order acceptable to Agent in its sole discretion, authorizing the DIP Credit Facility and the DIP Loan Documents (the "**Final Order**") on or before the date is thirty (30) days after the entry of the Interim Order,<br><br>(ix) any party in interest or other Person files a Motion for Reconsideration of, or appeals, the Final Order or seeks to modify the Final Order or if the Final Order is modified in any way not acceptable to Agent or the Final Order is vacated or if any party in interest or other Person takes action in contravention of or that is inconsistent with the Final Order,<br><br>(x) if any person other than Agent is granted relief from the automatic stay in the Chapter 11 Case to take action that is adverse to the Agent, the Lenders or their respective Collateral under the DIP Loan Documents,<br><br>(xi) any Borrower (or any of its successors or assigns) filing a motion or application or adversary proceeding challenging the validity, enforceability, perfection or priority of any claim or lien securing or pertaining to the DIP Loan |

|  |  |
|---|---|
|  | Documents and the DIP Credit Facility evidenced thereby or the obligations evidenced thereby, |
| (xii) | except (1) as agreed in writing by the Agent, (2) pursuant to motions or orders or arrangements approved by the Bankruptcy Court or effected and disclosed to the Agent prior to the date hereof, (i) any Debtor Borrower shall make, or file a motion seeking, or the Bankruptcy Court shall enter, an order approving, any prepetition payment, (ii) any Debtor Borrower shall file a motion seeking, or the Bankruptcy Court shall enter, an order granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to any holder of any lien to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets having a book value in excess of $10,000 in the aggregate, excluding relief from stay to set off prepetition deposits or to pursue insured claims against insurance companies to the extent such deposits or claims do not constitute Collateral, or (iii) any Debtor Borrower shall enter into or file a motion seeking approval of, or the Bankruptcy Court shall enter an order approving, any other settlement or other stipulation with any creditor of any Borrower, other than the Agent and the Lenders, or otherwise providing for payments as adequate protection or otherwise to such creditor, |
| (xiii) | if any Borrower's or Guarantor's Board of Directors shall authorize the liquidation of such Borrower's or Guarantor's business pursuant to one or more section 363 sales or otherwise or shall file any motion under section 363 of the Bankruptcy Code, other than as consented to by Agent and the Lenders, |
| (xiv) | if any Borrower or Guarantor shall fail to comply with or perform any of the terms, conditions, covenants or other obligations under an interim order and/or the final order related to the DIP Credit Facility, |
| (xv) | any assumption or rejection of any executory contract without the prior written consent of the Agent that has a material adverse effect on Lenders, |
| (xvi) | the Borrowers or any Credit Party or any of their subsidiaries, shall seek, obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against the Agent or any of the Lenders relating to the DIP Credit Facility or against the administrative agent or other holders of obligations under the Prepetition |

5

|   |   |
|---|---|
|   | Credit Agreement, unless such suit or other proceeding is in connection with the enforcement of the DIP Loan Documents against Agent or Lenders, |
| (xvii) | the amendment, modification, reversal, revocation, issuance of a stay or order to vacate or supplement the (i) any interim order or final order related to the DIP Credit Facility, or any other order of the Bankruptcy Court affecting the DIP Loan Documents or the transactions contemplated thereby, in each case, in any manner not acceptable to Agent and the Required Lenders or (ii) a plan of liquidation to the extent such amendment, modification, reversal, revocation, issuance or supplement results in the obligations owing to the Agent and Lenders not being paid in full in cash on or before any liquidation effective date any obligations owing to the Agent and Lenders will not be paid in full in cash on or before any such liquidation effective date, |
| (xviii) | the filing of a motion, pleading, or proceeding by Debtor Borrower, or any of its Affiliates, that could reasonably be expected to result in a material impairment of the rights or interests of the Agent or any Lender; or a determination by the Bankruptcy Court or any other Governmental Authority with respect to a motion, pleading or proceeding brought by another party that results in a material impairment of the rights, claims and liens relating to the DIP Loan Documents and the DIP Credit Facility and related obligations, |
| (xix) | if any order of the Bankruptcy Court shall fail to provide for the payment in full, in cash of all Obligations owing under the Prepetition Credit Agreement and all obligations arising under the DIP Credit Facility on or before the effective date of any liquidation or reorganization, |
| (xx) | the circulation or distribution by or on behalf of the Borrowers of any plan of liquidation and/or disclosure statement, or draft thereof (or term sheet or similar indicative statements of terms thereof) that does not provide for repayment in full in cash of all Obligations owing under the Prepetition Credit Agreement (to the extent not already paid in full in cash) and all obligations arising under the DIP Credit Facility on or before the effective date of any liquidation, |
| (xxi) | the existence of any claims or charges, or the entry of any order of the Bankruptcy Court authorizing any claims or charges, other than in respect of the DIP Credit Facility |

6

|  | provided hereunder or the Carve-Out, entitled to superpriority under Section 364(c)(1) of the Bankruptcy Code, pari passu or senior to the Obligations, or there shall arise or be granted by the Bankruptcy Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of Section 503 or clause (b) of Section 507 of the Bankruptcy Code (other than the Carve-Out) or (ii) any lien on the Collateral having a priority senior to or pari passu with the liens and security interests granted to Agent, except as expressly consent to by Agent, |
|---|---|
| (xxii) | if there is a stay or injunction of any confirmation order precluding the consummation of the transactions contemplated by such confirmation order, |
| (xxiii) | any lien securing or superpriority claim in respect of the obligations under the DIP Credit Facility shall cease to be valid, perfected (if applicable) and enforceable in all respects or to have the priority described in the DIP Credit Facility, |
| (xxiv) | if a variance occurs with respect to aggregate expenditures in any week under the Budget in an amount exceeding ten percent (10%) without the prior written consent of Agent, |
| (xxv) | notwithstanding the foregoing, any variance above the weekly professional fees set forth in the Budget; provided that any unused portion of the budgeted professional fees can be used in a subsequent week of the Budget, |
| (xxvi) | the failure, no later than ten days after the commencement of the Chapter 11 Cases of Debtor Borrowers to file a motion to implement a discontinuation of operations at the Hahnemann Project (as defined in the Prepetition Credit Agreement), |
| (xxvii) | the failure, no later than September 6, 2019, for the HUH Closure (as will be defined in the Loan Documents) to be complete, |
| (xxviii) | the failure, no later than August 7, 2019, for Debtor Borrowers to file a motion for authority to implement sales procedures, that provide for the sale of the Collateral and St. Christopher's Hospital Property (as defined in the DIP Loan Documents), or a portion thereof, for cash at a price sufficient to indefeasibly pay in full all amounts due and owing to the Lenders (the "**Sales Procedure Motion**"), |
| (xxix) | the failure no later than fourteen days after the filing of the Sales Procedure Motion for an order approving the Sales |

7

|  |  |
|---|---|
|  | Procedure Motion (the "**Sales Procedure Order**"), which shall provide for a reserve price sufficient to pay in full all amounts due and owing to the Lenders to be approved by the Bankruptcy Court, |
|  | (xxx) the failure to receive one or more bids under the Sales Procedure Order on or before September 27, 2019, each of which bid or bids is sufficient to indefeasibly pay in full, in cash, all amounts due and owing Lenders, |
|  | (xxxi) the failure of the Sales Procedure Order to provide that an auction in respect of the Collateral and the St. Christopher's Hospital Property, or a portion thereof (the "**Auction**") shall be conducted on or before October 2, 2019, |
|  | (xxxii) the failure of the Auction to be conducted on or before October 2, 2019, |
|  | (xxxiii) the failure of a hearing approving the results of the Auction to be held on or before October 4, 2019, |
|  | (xxxiv) the failure no later than October 4, 2019 for entry of an Order approving the sale of the Collateral and St. Christopher's Hospital Property for a price sufficient to pay in full all amounts due and owing to Lenders, and |
|  | (xxxv) the failure to repay the DIP Credit Facility and any other prepetition or post-petition Obligations to Agent and Lenders, through the sale of the Borrowers' business or on a refinancing of such Obligations on or before October 14, 2019. |
| <u>Principal Repayment</u>: | All obligations under the DIP Credit Facility shall be due and payable in full by Borrower to Agent and Lenders upon the DIP Credit Facility Maturity Date. |
| <u>Interest and Fees</u>: | Interest on the outstanding balance of the DIP Revolver shall be payable monthly in arrears at an annual rate of reserve-adjusted, 30-day LIBOR (subject to a floor of 50 basis points) plus 425 basis points, reset monthly. |
|  | Interest on the outstanding balance of the DIP Term Loan shall be payable monthly in arrears at an annual rate of reserve-adjusted, 30-day LIBOR (subject to a floor of 50 basis points) plus 1000 basis points, reset monthly. |
|  | Interest shall be calculated on the basis of the actual number of days elapsed in a 360 day year. Collections of cash by Agent under the DIP Revolver shall be credited to Borrowers' obligations thereunder on a daily basis, subject to 6 business clearance days. |

| | |
|---|---|
| | Borrowers shall pay Lenders an unused line fee equal to 0.50% per annum of the average unused portion of the DIP Revolver. The unused line fee shall be payable monthly in arrears. |
| | Borrower shall pay Agent a collateral management fee of 1.20% per annum on the outstanding balance of the DIP Revolver. |
| | Borrowers shall pay Lenders a fully earned, non-refundable origination fee of 1.0% of the Commitment Amount, due and payable in full upon the funding of the initial loans under the DIP Revolver. |
| | Borrowers shall pay to Agent the balance of the Revolving Loan Commitment origination fee of $500,000 and the Term Loan Commitment origination fee of $500,000 which remain owing to Agent under the Fee Letter. |
| **General Terms and Conditions** | |
| Carve-Out: | The DIP Liens, the DIP Superpriority Claim, the liens and security interests securing the "Obligations" as defined in the Prepetition Credit Agreement (such obligations, the "**Prepetition Obligations**"), the Prepetition Replacement Liens, and the Prepetition Superpriority Claims will be subordinate to the following (collectively, the "**Carve-Out**"): |
| | (a) allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (collectively, the "**U.S. Trustee Fees**"); and |
| | (b) to the extent allowed, whether by interim or final order, or Bankruptcy Court authorized procedures for payment of interim compensation, all accrued professional fees (the "**Allowed Professional Fees**") incurred by (i) persons or firms retained by the Debtors pursuant to section 327 or 328 of the Bankruptcy Code (the "**Debtors' Professionals**") and (ii) persons or firms retained pursuant to section 328 or 1103 of the Bankruptcy Code by any Committee(s) appointed pursuant to section 1102 of the Bankruptcy Code ("**Committee(s) Professionals**") and in either case not yet paid at or prior to the time of the Carve-Out Trigger, and with respect to clauses (i) and (ii), such aggregate amount of Allowed Professional Fees not to exceed $2,500,000. |

| | |
|---|---|
| <u>Security</u>: | The DIP Credit Facility will be secured by (a) valid Bankruptcy Court-authorized first priority perfected and priming security interests and liens in and pledges of all assets of the Borrower subject to the Carve Out, (b) valid, perfected and priming security interests, liens in and pledges of all assets of the Guarantors (other than Holdings) and (c) all proceeds and products of the foregoing (such assets, products and proceeds, collectively referred to herein as the "**Collateral**").  All obligations of Borrower under the DIP Credit Facility (collectively, the "**Obligations**") (a) shall be secured, subject to the Carve Out: (i) pursuant to Section 364(d) of the Bankruptcy Code, by a first priority, senior priming perfected lien on, and security interest in, the Collateral that is subject to any valid, duly perfected lien of any party; (ii) pursuant to Section 364(c) of the Bankruptcy Code, by a first priority, perfected lien on, and security interest in, all Collateral that is not subject to any valid, duly perfected lien of any party (such security interests, liens and pledges collectively referred to herein as the "**DIP Liens**"), and (b) subject to the Carve Out, the DIP Liens shall be accorded super-priority under Section 364(c) of the Bankruptcy Code, including over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code. |
| <u>Roll-up</u>: | Upon entry of the Interim Order, all proceeds of the Collateral available in the Lock Box Account shall be applied to repay the Prepetition Obligations (subject to the paragraph below) on a dollar-for-dollar basis in accordance with the Prepetition Credit Agreement and all of the remaining outstanding Prepetition Obligations shall immediately, automatically, and irrevocably be deemed to have been converted into DIP Obligations and shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under the Interim Order, the Final Order, and the DIP Loan Documents. Thereafter, all proceeds of Collateral shall be applied to reduce the DIP Obligations then due and owing in accordance with the DIP Loan Documents. |
| | However, the outstanding Prepetition Term Loan shall be deemed repaid when the DIP Term Loan is added to the Postpetition Credit Facility, at which time such obligations shall immediately, automatically, and irrevocably be deemed to have been converted into DIP Obligations and shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under the Interim Order, the Final Order, and the DIP Loan Documents. |

10

| | |
|---|---|
| Adequate Protection: | As adequate protection for any diminution in the value of the interests of the Lenders in the collateral (including the cash collateral) securing the Prepetition Credit Facility (the "**Prepetition Collateral**") on account of the granting of and subordination to the DIP Liens and security interests, subordination to the Carve Out, the Debtors' use of Cash Collateral, and other decline in value arising out of the imposition of the automatic stay or the Debtors' use, sale, depreciation, or disposition of such Agent, on behalf of the Lenders, shall receive the following: <br><br> (a) the Roll-up described above; <br><br> (b) additional and replacement security interests in and liens on the DIP Collateral (the "**Prepetition Replacement Liens**"), which shall be junior and subject only to the Carve Out and the DIP Liens; <br><br> to the extent of the diminution in the value of the Prepetition Collateral an allowed superpriority administrative expense claim (the "**Prepetition Superpriority Claim**"), which shall have priority (except with respect to (i) the DIP Superpriority Claim, and (ii) the Carve Out) under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment. Other than the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Case, or in any successor case, will be senior to, prior to, or on parity with the Prepetition Superpriority Claim; |
| Priority of Administrative Claims: | Except to the extent expressly set forth in the Interim Order in respect of the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims against the Debtor (the "**DIP Superpriority Claim**") with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtor, now existing or hereafter arising, of any |

11

| | |
|---|---|
| | kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(d), 726, 1113 and 1114 of the Bankruptcy Code and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims become secured by a judgment lien or other non-consensual lien, levy, or attachment. |
| Proceeds from Sales of Collateral: | Any and all sales proceeds (less any closing costs permitted by Agent to be paid from the sale proceeds) arising from the sale of any portion of the Collateral shall be paid to Agent to be applied to reduce the Obligations. |
| Financial Reporting: | Borrower shall provide financial reporting substantially similar to that required by the Prepetition Credit Agreement and a rolling 13-week budget, setting forth anticipated cash receipts and cash disbursements on a weekly basis (the "**Budget**) and a line by line variance report for the preceding week and on a cumulative basis comparing actual and budgeted cash receipts and cash disbursements and other reporting reasonably requested by Agent. |
| Bank Accounts / Lockbox: | Substantially similar to that under the Prepetition Credit Agreement.  Borrowers shall continue to maintain and pay for a depository account the ("**Lock Box Account**") subject to a control agreement satisfactory to Agent into which Borrowers' cash collections shall be remitted and swept to Agent on a daily basis for application to the DIP Revolver loan balance. |
| DIP Loan Documents: | Borrowers shall execute and deliver to Agent such loan agreements, reaffirmation and security agreements, instruments, documents, certificates, and assurances as are reasonable and customary for similar loans and as Agent may reasonably require in connection with the closing of the DIP Credit Facility, including, without limitation, Broad Street Mortgages (as defined in the Prepetition Credit Agreement) and in connection with the execution of the Term Loan Agreement, loan title insurance policies in form and substance acceptable to Agent covering the property currently encumbered by the Broad Street Mortgages (as defined in the Prepetition Credit Agreement), which title insurance policies shall be substantially identical to the title insurance policies currently in place with respect to the Prepetition Credit Agreement and such other documents necessary or required in connection therewith.  Such loan documents shall provide, among other things, that any Lender shall have the right to assign the DIP Credit Facility in whole or in part, at its discretion. |

12

| Conditions Precedent: | Customary conditions for financings of this type, including but not limited to: |
|---|---|
| | (a) satisfactory review by the Lenders of due diligence items, including but not limited to: (a) receipt and satisfaction with financial information, and (b) legal diligence, |
| | (b) due execution and delivery of the DIP Loan Documents, |
| | (c) no material default in any of Borrowers' obligations under any material contract, other than existing defaults to be set forth in a schedule to the DIP Loan Documents, |
| | (d) Borrowers shall be in material compliance with all applicable laws, |
| | (e) perfection of all security interests and liens in the Collateral with priority as herein provided, |
| | (f) the Chapter 11 Case shall have been filed, |
| | (g) all of the orders entered in the Chapter 11 Case shall be in form and substance satisfactory to the Agent and its counsel, |
| | (h) Agent shall have reviewed and shall have no objection to all of the first day and other motions filed by Borrowers, |
| | (i) the Bankruptcy Court shall have entered an interim financing order in form and substance acceptable to Agent, approving the DIP Credit Facility and authorizing the secured financing under the DIP Credit Facility on the terms and conditions contemplated by this term sheet and the DIP Loan Documents and, as is usual and customary for DIP loan facilities of this kind, granting to Agent the security interests and liens and super-priority administrative expense claim status described above, modifying the automatic stay and other provisions required by Agent and its counsel (the "**Interim Order**"). Pursuant to the Interim Order and the Final Order, any right to surcharge the DIP Collateral shall be waived, |
| | (j) Agent shall have received a closing date borrowing base certificate and it shall be satisfactory to Agent in its sole discretion, |
| | (k) Agent shall have received the Budget and the Budget shall be satisfactory to Agent in its sole discretion, |
| | (l) All fees required to be paid to Agent and Lenders shall have been paid, |
| | (m) Receipt by Agent of Borrowers' organizational and |

13

|  |  |
|---|---|
|  | authorizing documents approving the DIP Credit Facility and the DIP Loan Documents all in form and substance satisfactory to the Agent, and |
|  | (n) All necessary government and third party consents and approvals for the DIP Credit Facility shall have been obtained. |
|  | (o) Conditions to funding advances under the DIP Revolver shall be the same as in place under the Prepetition Credit Agreement with the additional condition that Lenders shall have no obligation to fund advances if the Conifer Agreement (as defined in the schedules to the Prepetition Credit Agreement) or an agreement with another revenue cycle management provider in form and substance reasonably acceptable to Agent and covering substantially the same services as does the Conifer Agreement (Conifer or such replacement revenue cycle management provider, a "Revenue Cycle Provider) is not in place or if a Revenue Cycle Provider is not fully performing under its agreement. |
| Facility Costs: | All reasonable costs associated with the DIP Credit Facility, including, but not limited to Agent's out-of-pocket expenses associated with the transaction, professional fees, recording fees, search fees, and filing fees will be paid by Borrowers regardless of whether the transaction closes, all in accordance with the expense reimbursement provisions of the Prepetition Credit Agreement. |
| Indemnification: | The Borrowers shall indemnify the Lenders and Agent and all agents and sub-agents thereof (each such Person being called an "**Indemnitee**") against, and hold each Indemnitee harmless from, any and all losses, claims, causes of action, damages, liabilities, settlement payments, costs, and related expenses (including the fees, charges and disbursements of any counsel for any Indemnitee), incurred by any Indemnitee or asserted against any Indemnitee by any third party or by any of the Debtors arising out of, in connection with, or as a result of the execution or delivery of the DIP Credit Agreement, any other DIP Loan Document or any agreement or instrument contemplated thereby, the performance by the parties thereto of their respective obligations thereunder, the consummation of the transactions contemplated thereby, or the administration of the DIP Credit Agreement, provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the bad faith, gross negligence or willful misconduct of such Indemnitee. |

14

Agent may terminate its review of the above described DIP Credit Facility at any time in its sole discretion.  Closing of the DIP Credit Facility is subject to further due diligence and underwriting, continuing satisfaction with the financial and business conditions of the Borrowers and their principals, and receipt of documentation and assurances satisfactory to Agent and its legal counsel.  This term sheet does not purport to specify all of the terms, conditions, representations and warranties, covenants and other provisions that will be contained in the final DIP Loan Documents, and the DIP Credit Facility shall be subject to such other terms, covenants and conditions as may be deemed appropriate.

This term sheet is being delivered in reliance that all information provided to Agent is and will be accurate and complete.  This term sheet supersedes all previous discussions, communications and proposals relating in any way to the DIP Credit Facility and shall expire if not executed by Parent on behalf of it and the other Borrowers and returned to Agent by 5:00 pm EST on July 1, 2019.

If you would like Agent to continue reviewing your loan request, please evidence your agreement with the forgoing by accepting this proposal on the space set forth below, and returning it to my attention.

We appreciate the opportunity to furnish this proposal to you.  If you have any questions, please do not hesitate to call.

[SIGNATURES APPEAR ON FOLLOWING PAGES]

Sincerely,

**MIDCAP FINANCIAL TRUST**

By:  Apollo Capital Management, L.P.,
       its Investment Manager

By:  Apollo Capital Management GP, LLC,
       its General Partner

By: _____
Name: Maurice Amsellem
Title:    Authorized Signatory

Agreed and accepted by Borrowers this 30th day of June, 2019:

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company

By: _____
Name: Allen Wilen
Title: Chief Restructuring Officer

17

**Schedule 1**

**Debtor Borrowers**

PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC, a Delaware limited liability company
ST. CHRISTOPHER'S HEALTHCARE, LLC, a Delaware limited liability company
CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company
PHILADELPHIA ACADEMIC MEDICAL ASSOCIATES, LLC, a Delaware limited liability company
HPS OF PA, L.L.C., a Pennsylvania limited liability company
SCHC PEDIATRIC ASSOCIATES, L.L.C., a Pennsylvania limited liability company
ST. CHRISTOPHER'S PEDIATRIC URGENT CARE CENTER, L.L.C., a Pennsylvania limited liability company
SCHC PEDIATRIC ANESTHESIA ASSOCIATES, L.L.C., a Pennsylvania limited liability company
STCHRIS CARE AT NORTHEAST PEDIATRICS, L.L.C., a Pennsylvania limited liability company
TPS OF PA, L.L.C., a Pennsylvania limited liability company
TPS II OF PA, L.L.C., a Pennsylvania limited liability company
TPS III OF PA, L.L.C., a Pennsylvania limited liability company
TPS IV OF PA, L.L.C., a Pennsylvania limited liability company
TPS V OF PA, L.L.C., a Pennsylvania limited liability company