# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 |
| | Joint Administration Requested |
| Debtors. | Re: D.I. 9 & D.I. 53 |

## PRELIMINARY RESPONSE OF HSREP VI HOLDING, LLC TO CERTAIN FIRST DAY MOTIONS AND RESERVATION OF RIGHTS

HSREP VI Holding, LLC and its affiliates[2] (collectively, "HSRE"), by and through its counsel, DLA Piper LLP (US), submits this preliminary response (the "Preliminary Response") to the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Continued Use of Existing Cash Management System and Bank Accounts; (II) Authorizing Continued Performance of Intercompany Transactions; (III) Granting Administrative Expense Priority to Postpetition Intercompany Claims; and (IV) Granting Related Relief* [D.I. 9] (the "Cash Management Motion") and the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Secured Superpriority Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] The relevant affiliates of HSRE are as follows: HSRE-PAHH I, LLC, PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Wood Street Garage, LLC, PAHH Erie Street Garage, LLC, PAHH Feinstein MOB, LLC, and PAHH Broad Street MOB, LLC, each, a Delaware limited liability company.

*Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lender, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [D.I. 53] (the "DIP Motion")[3] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"). In support of this Preliminary Response, HSRE respectfully represents:

## PRELIMINARY STATEMENT

At the outset of these Chapter 11 Cases, in an abundance of caution and for the avoidance of any doubt whatsoever, HSRE files this Preliminary Response and Reservation of Rights to assure the record is clear that St. Christopher's Healthcare, LLC is unequivocally obligated under certain Master Leases and Lease DACAs (as described below) to HSRE. Furthermore, given that the Debtors are seeking to grant superpriority liens to its postpetition lender by filing the DIP Motion less than twelve (12) hours before its First Day Hearing, HSRE further responds that the Debtors, or any affiliates of any of the Debtors that may hereafter become Debtors in these Chapter 11 Cases, *may not* encumber property that is not property of their estates and accordingly reserves all rights.

## I. RELEVANT BACKGROUND

1. In January 2018, concurrently with the Debtors' acquisition of Hahnemann University Hospital and St. Christopher's Hospital for Children in Philadelphia, PA (the "Hospitals") from Tenet Healthcare Corporation and certain of its affiliates (collectively, "Tenet"),

---

[3] HSRE includes in this Preliminary Response and Reservation of Rights issues that HSRE anticipates will be germane once the Debtors file their DIP Motion and reserves all rights to object or further respond as appropriate under the time permitted and as the circumstances warrant. Furthermore, should any non-Debtor affiliate become a Debtor and seek to grant liens or other rights and obtain other relief, HSRE respectfully requests that the Court make clear that any order approving the DIP Motion not provide any such liens pending notice and a hearing and HSRE reserves all rights to object to any such requested relief without prejudice as a result of the entry of any order on the First Day Motions.

2

HSRE acquired from Tenet seven (7) buildings (the "Master Lease Buildings") located on or adjacent to the Hospital campuses. The Master Lease Buildings contain office space, classroom space, parking and other ancillary facilities that are essential to the operation of the Hospitals.

2. Concurrently with the Debtors' acquisition of the Hospitals and HSRE's acquisition of the Master Lease Buildings, HSRE, as landlord, and Debtor St. Christopher's Healthcare, LLC, as tenant (the "Master Tenant") entered into six (6) Master Leases (collectively, the "Master Leases") pursuant to which Master Tenant leased each of the Master Lease Buildings on an "absolute triple net" basis. The obligations of the Master Tenant under the Master Leases are guaranteed by non- debtor affiliate Philadelphia Academic Health Holdings, LLC ("PAHH") and non-debtor affiliate Paladin Healthcare Capital, LLC ("PHC" and, together with PAHH, the "Master Guarantors").[4]

3. Under the terms of the purchase agreement for the Master Lease Buildings, the Master Tenant took assignment of and became the sub-landlord under several subleases (the "Subleases") for each of the Master Lease Buildings. The sub-tenants under the Subleases (each a "Subtenant" and collectively, the "Subtenants") include affiliates of Drexel University, as well as certain Debtors and other unaffiliated third-parties.

4. The Master Tenant is obligated to pay to pay all sums due and coming due under the Master Leases. The monthly obligations under the Master Leases approximate $1,300,000.

5. Under Section 9.6 of each Master Lease, the rents payable by the Subtenants under the Subleases and all parking revenue from the Wood Street Garage and the Erie Street Garage and Parking Lot (collectively, the "Sublease Rent") are to be paid by the Subtenants or the parking

---

[4] The Master Leases and Subleases (defined below) are voluminous and may be provided upon request and subject to appropriate confidentiality agreements.

operator, as applicable, directly into six (6) lockbox accounts established by Master Tenant (the "Sublease Lockboxes")[5] under HSRE's lender's control pursuant to those six (6) certain Deposit Account Control Agreements (Non-Springing-Sweep) (the "Lease DACAs"), each entered into by the applicable Master Landlord under each Master Lease, as secured party, Master Tenant and Capital One, N.A. ("CONA"), as Bank. If any Sublease Rent is not paid directly into the Sublease Lockboxes by each Subtenant or parking operator, then the Master Tenant is required to remit the Sublease Rent into the Sublease Lockboxes upon receipt. Funds deposited into the Sublease Lockboxes are used to pay (a) rent due under the Master Leases, (b) reserves required under the Master Leases, and (c) Other Lease Deficit Amounts (as defined in each Master Lease).

6. Concurrently with the execution of the Master Leases, the Master Landlord under each Master Lease, CONA, as secured party, and CONA, as Bank, entered into those six (6) certain Deposit Account Control Agreements under which six separate accounts (the "Master Landlord Accounts") owned and maintained by such Master Landlords were established and into which the amounts deposited into the corresponding Sublease Lockboxes are swept weekly. In addition, concurrently with the execution of the Master Leases, HSRE-PAHH I, LLC, CONA, as secured party, and CONA, as Bank, under which an account (the "Parent Account") owned and maintained by HSRE-PAHH I, LLC was established and into which the Master Landlords deposited funds from the Master Landlord Accounts to pay debt service and other amounts owing by HSRE to the mortgage lender for the Master Lease Buildings. The Debtors do not own the Master Landlord Accounts or the Parent Account and may not grant any lien or control to the Master Landlord Accounts or the Parent Account.

---

[5] The Sublease Lockboxes are as follows: (i) Capital One, N.A. Account #XXXXXX2231; (ii) Capital One, N.A. Account #XXXXXX2255; (iii) Capital One, N.A. Account #XXXXXX2279; (iv) Capital One, N.A. Account #XXXXXX2606; (v) Capital One, N.A. Account #XXXXXX2612; (vi) Capital One, N.A. Account #XXXXXX2618.

7. The Master Tenant is obligated to pay all amounts owing under the Master Lease, whether or not the Subtenants pay their Sublease Rent directly into the applicable Sublease Lockbox (or at all for that matter). Indeed, Section 9.7 of each of the Master Leases unequivocally states:

> The establishment of the [Sublease] Lockbox and the requirement that Subleases Rents be paid directly into the [Sublease] Lockbox ***shall not constitute a release of Tenant from the performance by Tenant of the terms, covenants, and conditions on the part of Tenant to be observed or performed hereunder, including without limitation the obligation to pay Rent***. Tenant hereby authorizes and directs each Subtenant to make such payments of Rent directly to the [Sublease] Lockbox, or into any cash management system required by any Mortgagee, upon receipt of notice from Landlord, and each Sublease will contain this provision. Following an Event of Default, in the event that amounts payable under any Subleases, licenses or occupancy agreements exceed the sums due to Landlord by Tenant hereunder, Landlord shall be entitled to receive all of such excess proceeds and Tenant hereby agrees to immediately pay over to Landlord all such excess upon Tenant's receipt of same. ***No direct collection by Landlord from any such Subtenant shall be construed to constitute a novation or a release of Tenant from the further performance of its obligations hereunder.***

Master Lease at 27 (emphasis added).

8. To date, the Master Tenant is in default as a result of its failure timely and in full to comply with the terms of the Master Leases and the Lease DACAs.

## II. PRELIMINARY RESPONSE

*a. The Cash Management Motion*

9. In addition to the Bank Accounts set forth in the Cash Management System, the Sublease Lockboxes, the Master Landlord Accounts and the Parent Account, even though not owned by the Debtors, also serve a vital role in the day-to-day operations of the Debtors by maintaining a streamlined process, whereby the Debtors can pay the amounts owing under the Master Lease in an efficient manner. As the Debtors note, "[w]hile the continuity of the Cash

Management System is critical to the Debtors' business operations, flexibility is also needed." [D.I. 9 at 4].

10. Although HSRE understands that the Debtors do not seek to disrupt the cash management procedures set forth above, out of an abundance of caution, HSRE objects to the Cash Management Motion to the extent that it does not require that the Debtors: (i) maintain and continue to use the Sublease Lockboxes, the Master Landlord Accounts and the Parent Account, and pay all applicable bank fees related thereto, in the same manner and with existing account numbers, styles, and document forms; (ii) deposit funds in such accounts; (iii) pay prepetition and ordinary course bank fees for the Sublease Lockboxes, Master Landlord Accounts and the Parent Account, as may be required under the Master Leases or Lease DACAs; and (iv) perform their obligations under the governing documents and agreements of the Sublease Lockboxes, including but not limited to the Master Leases and the Lease DACAs.

11. HSRE is entitled to prompt payment of the rent during the pendency of the Debtors' Chapter 11 Cases as adequate protection of interests in the Master Leases. "A landlord's right to adequate protection seems to follow clearly from the language of § 363(e) of the Bankruptcy Code . . . ." *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001). Adequate protection may be provided:

> on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . . .

11 U.S.C. § 363(e).

12. Prepetition, the Sublease Lockboxes, the Master Landlord Accounts and the Parent Account facilitated the ordinary course payments required under the Master Lease. Accordingly,

6

HSRE requests that the maintenance and continued use of the Sublease Lockboxes, the Master Landlord Accounts and Parent Account be required as adequate protection of its interests in the Master Leases and that any interim or final order related to the Cash Management Motion include the continued maintenance and use of Sublease Lockboxes, the Master Landlord Accounts and Parent Account.

b.   *The DIP Motion*

13.   HSRE objects to the DIP Motion to the extent the DIP budget (the "DIP Budget") is insufficient and does not include all amounts owing by the Master Tenant in accordance with the Master Leases, in the approximate amount of $1,300,000 per month.

14.   Under section 2.1(a) of each Master Lease, the Master Tenant is obligated to pay all amounts that constitute Base Rent (as defined in each Master Lease). Further, under Section 2.2 of the Master Lease, the Master Tenant is obligated to pay all amounts that constitute Supplemental Rent (as defined in each Master Lease).

15.   Section 503(b)(1) of the Bankruptcy Code provides for an allowed administrative expense for "the actual and necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1). It is unquestionable that the Debtors' and their sub-tenants' continued occupancy of the Master Lease Buildings will confer an actual and necessary benefit to Debtors by allowing them to continue to serve patients and maintain day-to-day operations. *See In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (observing that "[f]or a commercial lessor's claim to get administrative expense treatment under § 503(b)(1), the debtor's occupancy of the leased premises must confer an actual and necessary benefit to the debtor in the operation of its business."). Thus, postpetition rent owing under the Master Lease constitutes an administrative

7

expense owed by the Debtors and, therefore, should be accounted for in its entirety in the DIP Budget.

16. Furthermore, HSRE anticipates that the DIP Motion will propose to grant a superpriority lien on all of the Debtors' assets, whether existing or after acquired. HSRE objects to the DIP Motion to the extent that it proposes to grant a superpriority lien, currently or a springing lien, on property that is not property of the current Debtors' estates. The amounts paid into and transferred between the Sublease Lockboxes, Master Landlord Accounts and the Parent Account are the property of HSRE and, therefore, ***may not*** be encumbered by the Debtors or their DIP Lenders.

### III. RESERVATION OF RIGHTS

17. HSRE reserves the right to amend and/or supplement this Preliminary Response and Reservation of Rights and to assert any other rights and objections and seek remedies under and relating to the Master Leases and any other transactional documents to which any Debtor or Debtor affiliate is a party under the Bankruptcy Code or other applicable law, including, without limitation, the rights to raise additional arguments or objections concerning the relief requested in the Cash Management Motion and the DIP Motion or any other requested First Day relief, and to interpose amended or further objections at a later date as may be warranted by attendant the facts and circumstances.

### CONCLUSION

WHEREFORE, HSRE respectfully requests that the Court (i) condition approval of the Cash Management Motion and the DIP Motion consistent with this Preliminary Response and (ii) grant such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: July 1, 2019<br>Wilmington, Delaware | Respectfully submitted,<br><br>**DLA PIPER LLP (US)**<br><br>*/s/ Stuart M. Brown*<br>Stuart M. Brown (DE 4050)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801<br>Telephone: (302) 468-5700<br>Facsimile: (302) 394-2341<br>Email: Stuart.Brown@dlapiper.com<br><br>-and-<br><br>Richard A. Chesley (admitted *pro hac vice*)<br>444 West Lake Street, Suite 900<br>Chicago, Illinois 60606<br>Telephone: (312) 368-4000<br>Facsimile: (312) 236-7516<br>Email: Richard.Chesley@dlapiper.com<br><br>*Counsel to HSREP VI Holding, LLC* |

9