IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| CENTER CITY HEALTHCARE | ) | Chapter 11 |
| LLC d/b/a HAHNEMANN | ) | |
| UNIVERSITY HOSPITAL, *et al.*, | ) | Case No. 19-11466 (KG) |
| Debtors. | ) | Joint Administration Requested |

**OBJECTIONS OF THE COMMONWEALTH OF PENNSYLVANIA AS *PARENS PATRIAE* TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a), 363 and 1108 OF THE BANKRUPTCY CODE (A) AUTHORIZING IMPLEMENTATION OF A PLAN OF CLOSURE FOR HAHNEMANN UNIVERSITY HOSPITAL AND (B) SCHEDULING A FINAL HEARING**

The Commonwealth of Pennsylvania, Office of Attorney General, as *parens patriae* ("Attorney General") hereby objects to Debtors' motion for Entry of Interim and Final Orders Pursuant to Sections 105(A), 363 and 1108 of the Bankruptcy Code (A) Authorizing Implementation of a Plan Of Closure For Hahnemann University Hospital and (B) Scheduling A Final Hearing ("Closure Plan Motion") and, in support thereof, hereby states:

1. On June 30, 2019, Center City Healthcare, LLC, d/b/a Hahnemann University Hospital ("Hahnemann") and certain of its subsidiaries and affiliates (collectively "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

2. On the same date Debtors filed the Closure Plan Motion, seeking to implement an accelerated plan of closure.

3. The Commonwealth has been made aware of Objections filed on behalf of the Pennsylvania Department of Health, as well as objections filed on behalf of Drexel University College of Medicine ("DUCOM") and is in sympathy with the concerns expressed therein.

4. Notwithstanding, the Attorney General files his own Objections to the Closure Plan Motion because the Attorney General has *parens patriae* responsibilities which are broader in scope than those of a private party or a state agency.

5. *Parens patriae* functions have historical underpinnings (3 William Blackstone, Commentaries 47) and have been recognized by American courts. *Fontain v. Ravenal*, 58 U.S. 369 (1854); *Synanon Foundation v. California*, 444 U.S. 1307 (1979); *see also In re Allegheny Health Educ. & Research Found.*, 252 B.R. 309 (W.D. Pa. 1999).

6. To establish *parens patriae* standing, a "State must express a quasi-sovereign interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 607 (1982). A State has a "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id.* "Although more must be alleged than injury to an identifiable group of individual residents, the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population." *Id. Com. of Mass. v. Bull HN Information Systems, Inc.*, 16 F.Supp.2d 90, 96-99 (D. Mass. 1998) (holding that the Commonwealth of Massachusetts has a quasi-sovereign interest in protecting its citizens from age discrimination sufficient to establish parens patriae standing); *Support Ministries for Persons with AIDS, Inc. v. Village of Waterford, N.Y.*, 799 F.Supp.2d 272, 277-79 (N.D. N.Y. 1992) (holding that the State of New York has a quasi-sovereign interest in preventing housing discrimination against people with HIV/AIDS).

7. Implementation of the closure plan in its present form poses significant dangers to public health, particularly in the Philadelphia region, in that (a) resident physicians and other faculty at Hahnemann will be unavailable to provide medical treatment to those in need

there, (b) access to healthcare in the region served by HUH (Center City Philadelphia) will be adversely affected by its abrupt and untimely closure, (c) the charitable trust functions of Drexel University, and particularly DUCOM will be adversely affected, and (d) the thousands of employees who will be without work will be adversely affected themselves, and have an adverse impact on the State and local economy.

8. The Commonwealth objects on the grounds that the proposed closure plan, if implemented in its present form, will have far-ranging detrimental effect on the residents of Philadelphia and the Commonwealth as a whole.

9. Drexel places approximately 569 residents at Hahnemann and St. Christopher's Hospital. Those residents provide countless hours of patient care.

10. Hahnemann's patient base consists of high percentage of Medicaid patients and additionally treats a significant number of patients on a charitable basis because those patients do not qualify for Medicaid, but cannot afford other forms of health insurance.

11. In addition to having only Medicaid, which many doctors do not accept, or no insurance at all, many of these patients lack transportation to hospitals distant from Hahnemann and St. Christopher's locations.

12. Hanhemann owns a number of clinics that provide essential, life-saving care such as its Psychiatric Medical Care Unit and its Renal Dialysis Unit.

13. The proposed closure plan will also directly and adversely harm the vulnerable and underserved residents of Philadelphia and the surrounding area who currently benefit from Hahnemann's services. The Attorney General is informed that Hahnemann's Psychiatric Medical Care Unit (PMCU) provides specialized, life-saving care that very few area hospitals have the ability to provide."

14.    The proposed closure plan, if implemented in its present form, will fail to provide transition planning for these specialty units.

15.    Hahnemann is the only hospital in the area to operate a city-funded program to provide care for victims of rape and sexual assault called Sexual Assault Nurse Examiner ("SANE") program.  The proposed closure plan fails to provide a satisfactory transition of the SANE program, stating only that the Debtor is "working closely with the City of Philadelphia and area healthcare institutions for the transition of Hahnemann's SANE program." *Letter dated June 27, 2019 to Garrison E. Gladfelter, Jr. from Ron Dreskin and Allen Wilen*, p. 5, Item 11 as referred to in ¶¶ 2, 15 of Closure Plan Motion.

16.    The proposed closure plan also fails to mention any transition of the Healing Hurt program which provides care for victims of crime and their families.

17.    DUCOM's residents at Hahnemann cover every specialty, including these specialties for which physicians are in short supply.

18.    Traditionally 41% of residents in Philadelphia stay in the Philadelphia area and maintain a practice in the community, providing medical care in their specialties to the people of Philadelphia and all of Pennsylvania.

19.    Hahnemann's abrupt closure and the placement of its residents outside the Philadelphia area will have several adverse impacts to Pennsylvanians.  Those adverse impacts include: the immediate loss of care provided by residents who may be moved out of the area, the loss of career care from these residents who would stay in the Philadelphia area; and loss of residents in areas where there are already shortages will exacerbate those shortages.

20.    The potential loss of residents will also adversely impact DUCOM's charitable mission to train health care professionals (nurses and doctors) and to provide healthcare.

4

21.    Residents play important roles in training new doctors and nurses in Drexel University's programs. That training will be lost if residents are transferred out of the area.

22.    The proposed closure plan will also result in economic harm to the State, as an immediate, disorderly closure, in violation of the federal Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2101-2109, will cause a sudden influx of approximately 2,000 unemployed workers. These workers will no longer earn wages and will be unable to contribute to the local and statewide economy. The workers and their employer will no longer pay taxes to the Commonwealth or the municipality, and will not contribute to unemployment and workers' compensation programs.

23.    Undersigned counsel is aware of ongoing negotiations to effect an orderly reorganization of the Debtors—one which will seek avoidance of the catastrophic public health consequences attendant upon implementation of the closure plan in its present form.

24.    For the reasons stated above, the Attorney General respectfully requests that this Court deny Debtors' Closure Plan Motion so that the temporary manager appointed by the Pennsylvania Department of Health may manage the Debtor, oversee the orderly closure of Hahnemann, the restructuring and possible sale of St. Christopher's Hospital, and the safety of all citizens of the Commonwealth who entrust their medical care and safety to these institutions.

**WHEREFORE** the Attorney General respectfully requests that the Debtors' motion be denied, especially given that the Pennsylvania Department of Health, with the Debtors' consent, has appointed a temporary manager of the Debtor to oversee the orderly closure of Hahnemann University Hospital, the restructuring and possible sale of St. Christopher's Hospital, and the safe administration of medical care to all citizens of the Commonwealth who utilize or may utilize the

services of these institutions, or, in the alternative, that ruling thereon be deferred pending the scheduling of a hearing as recited above, and such other and further relief as this court deems proper.

Respectfully submitted,

JOSH SHAPIRO
ATTORNEY GENERAL

Michelle Henry
First Deputy Attorney General

James A. Donahue, III
Executive Deputy Attorney General
Public Protection Division

David Dembe
Senior Deputy Attorney General
Carol E. Momjian
Senior Deputy Attorney General

Office of Attorney General
Commonwealth of Pennsylvania
1600 Arch Street, Suite 300
Philadelphia, PA  19103
(215) 560-3448 (voice)
(215) 560-1766 (fax)
ddembe@attorneygeneral.gov
cmomjian@attorneygeneral.gov

Date: 7/5/19