UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
|  | . | Case No. 19-11466 (KG) |
| CENTER CITY HEALTHCARE, LLC, | . |  |
| d/b/a HAHNEMANN UNIVERSITY | . |  |
| HOSPITAL, *et al.,* | . |  |
|  | . | Courtroom No. 3 |
|  | . | 824 North Market Street |
|  | . | Wilmington, Delaware 19801 |
|  | . |  |
| Debtors. | . | July 11, 2019 |

. . . . . . . . . . . . . . . . .    4:00 P.M.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| For the Debtors: | Mark Minuti, Esquire |
|---|---|
|  | SAUL EWING ARNSTEIN & LEHR LLP |
|  | 1201 N. Market Street |
|  | Wilmington, Delaware 19801 |

| For PA Association of | Mitchell Malzberg, Esquire |
|---|---|
| Staff Nurses and | LAW OFFICES OF MITCHELL MALZBERG |
| Allied Professionals: | 6 E. Main Street, Suite 7 |
|  | Clinton, New Jersey 08809 |

| Pro se: | Jeffrey Cutler |
|---|---|

| Audio Operator: | GINGER MACE |
|---|---|

| Transcription Company: | Reliable |
|---|---|
|  | 1007 N. Orange Street |
|  | Wilmington, Delaware 19801 |
|  | Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1

<u>INDEX</u>

2

#2) Motion of the Debtors for Entry of Interim and Final
Orders (I) Authorizing the Debtors to Obtain Postpetition
3
Secured Financing Pursuant To Section 364 of the Bankruptcy
Code, (II) Authorizing the Debtors to Use Cash Collateral,
4
(III) Granting Liens and Superpriority Administrative Expense
Status, (IV) Granting Adequate Protection to the Prepetition
5
Lender, (V) Modifying the Automatic Stay, (VI) Scheduling a
6
Final Hearing, and (VII) Granting Related Relief [D.I. 53;
filed: 07/01/19].

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       (Proceedings commenced at 4:00 p.m.)

2              THE CLERK:  Please rise.

3              THE COURT:  Good afternoon, everyone.  Thank you.

4   You may be seated.  And I'm glad we're all here.

5              And before you begin, Mr. Minuti, on the financing

6   motion, I just have a few comments to make about the case in

7   general because it is the kind of case, it's a painful case,

8   it's a difficult case, it's a sensitive case.  It's one that

9   keeps the Judge up late at night worrying about it.

10             And it affects many people.  You know, it affects

11  the residents, the patients, the doctors, the nurses, the

12  employees, the city of Philadelphia, the Commonwealth of

13  Pennsylvania, Drexel, and it also impacts the University of

14  Pennsylvania Hospital and Jefferson Hospital, which I'll get

15  to in a minute.

16             But let me just be clear about one thing, the

17  court holds debtors' counsel in high regard.  They are hard-

18  working.  They are responsive to the court.  They are honest

19  and ethical and that may help in this case to have attorneys

20  of that nature involved.

21             Now yesterday the debtors on behalf of the

22  Commonwealth of Pennsylvania asked to move, what I'll call,

23  the closure motion to Tuesday. And it dawned on me that the

24  committee may be appointed on Monday, that there is a meeting

25  of creditors to select a committee and, thereupon, to select

1  counsel.

2          And I don't see how counsel for the committee will

3  be in a position to address what I consider a motion for

4  extraordinary relief the next day.  So, I'm going to move the

5  motion to close to Friday, the 19th.  And we'll begin at ten

6  o'clock on the 19th and that will give, hopefully, committee

7  counsel sometime to consider and to be able to report,

8  because the court wants to hear from the committee,

9  obviously, in this case and on that important motion.  And I

10  just don't think they'll be ready the next day.  So, I'm

11  going to take it upon myself to move that hearing to Friday

12  the 19th.

13          MR. MINUTI:  What time on the 19th, Your Honor?

14          THE COURT:  Ten o'clock.

15          Now during this additional time, I would hope that

16  parties would meet and by the parties, I mean the debtors,

17  the committee, the Commonwealth of Pennsylvania, the City of

18  Philadelphia, Drexel University, and Jefferson Hospital and

19  the University of Pennsylvania Hospital who will be impacted

20  by the closing because they will suddenly have many

21  additional patients to tend to.  And it would seem to me that

22  there may be, if there is one, some solution that everyone

23  meeting together can reach.

24          And if the parties would like to have a mediator

25  appointed, I am certainly amenable to doing that.  And I give

1  you some thought -- you know, I'm not ordering a meeting, but

2  I'm strongly suggesting that one makes an awful lot of sense

3  in this particular case.

4        MR. MINUTI:  Your Honor, again, for the record,

5  Mark Minuti from Saul Ewing Arnstein & Lehr.  I'm here on

6  behalf of Center City Healthcare LLC and its related debtors.

7        THE COURT:  Yes.

8        MR. MINUTI:  What I intended to do was start

9  today's hearing to give Your Honor a little bit of background

10  on what's been happening relative to our shutdown motion and

11  negotiations.

12        THE COURT:  Yes.

13        MR. MINUTI:  So with the court's permission, I'd

14  like to do that.  And then at the end of that, Your Honor,

15  I'd like to make a request or maybe let me highlight the

16  request now so I don't forget it, Your Honor, which I often

17  do.

18        THE COURT:  All right.

19        MR. MINUTI:  We appreciate that the committee is

20  not going to be up and running until Monday.  But my request,

21  at the end of my presentation, is going to be that if we can

22  get the committee onboard, if we can get the committee

23  onboard, and this assumes we're going to get the other

24  constituents onboard, if we can do that, Your Honor, we'd

25  like to be in a position to shut our emergency room down, I

1 believe, on the 17th.

2          And we've just, by way of preview, we've had some

3 discussions with the Pennsylvania Department of Health,

4 actually also with the City of Philadelphia, Your Honor, and

5 we believe we are close to coming to an agreement to do just

6 that.  But let me give Your Honor a little bit more

7 background.

8          So, I hear what Your Honor is saying with regard

9 to the committee but I, at least, want the opportunity to get

10 them onboard and if I've got all the other constituents

11 onboard, I'd like to, at least, get Your Honor's blessing to

12 move forward with the closure of the -- what we're going to

13 do is stop taking new admissions at the emergency room and

14 that's what we've been discussing.

15          But let me give Your Honor a little more

16 background so you understand why I'm making that request.

17          THE COURT:  All right.

18          MR. MINUTI:  So, as mentioned at last week's

19 hearing, after exploring all reasonable alternatives to avoid

20 a shutdown of the hospital, the debtors reached a sad, but

21 unavoidable conclusion that we lack the funds really to go

22 forward, Your Honor, and that there was no alternative.

23          With the help of inhouse and outside advisors, we

24 put together a detailed and appropriate shutdown plan.  We

25 actually began implementing that plan prior to the petition

1    date.  And when we filed these bankruptcy cases on the

2    petition day, we filed that shutdown motion.

3              THE COURT:  Yes.

4              MR. MINUTI:  A number of parties had raised both

5    formal and informal objections to the closure plan.  And as I

6    mentioned last week, Your Honor, on June 27th, based upon

7    conflicting information, the Pennsylvania Department of

8    Health actually issued us a cease and desist order

9    prohibiting us from further shutdown efforts.

10             And while the debtors did their best, Your Honor,

11   to communicate with the majority of their constituents and

12   parties in interest, there was certainly a lot going on.  It

13   became clear that more was needed to explain our plan, accept

14   feedback from relevant parties.  And also, Your Honor,

15   frankly, to demonstrate to relevant parties the dire

16   situation we're facing.

17             I mean it is very -- look, nobody wants the

18   hospital to close.  And it's very easy to say let's keep the

19   hospital open but without funds, Your Honor, it is almost --

20   well it is impossible to do that without jeopardizing patient

21   care.  But it became clear we needed more time to demonstrate

22   that to people and to have dialogue, accept feedback and,

23   frankly, revise the plan as appropriate to move forward with

24   the shutdown.

25             So when we appeared before Your Honor at last

1  week's first day hearing, we asked to continue the motion to

2  allow that to happen.

3            THE COURT:  Yes.

4            MR. MINUTI:  Now after that hearing on July 3rd,

5  Your Honor entered an order which I would call the

6  negotiations order that essentially required us to sit down

7  with our interested parties and keep them informed and do

8  exactly what I'm talking about.  And I'm pleased to report

9  that even before Your Honor entered that order, those efforts

10  had continued and were well underway.

11            THE COURT:  Good.

12            MR. MINUTI:  Let me just pause now, Your Honor, to

13  say we do want to thank all the people that met with us and

14  we appreciate their feedback and we appreciate folks are

15  working with us.

16            But on July 3rd, so Your Honor knows, the debtors

17  and their professionals met with the Pennsylvania Department

18  of Health and their professionals.  That meeting lasted well

19  over four hours.  There have been a number of follow-up calls

20  and I believe meetings since then.

21            And based upon discussion and input, there's been

22  a revised and updated shutdown plan.  I think the current

23  status, Your Honor, is that that revised plan, based on those

24  discussions is now with the Pennsylvania Department of

25  Health.  We're waiting for them to get back to us to make

1  sure it complies with what we've been talking about.  I'm not

2  casting any aspersions.  I'm not implying at all that they're

3  dragging their feet.  I'm just telling Your Honor what the

4  current status is.

5          Part of that plan, Your Honor, is that the

6  Department of Health wanted to put in place onsite a

7  temporary monitor.  We've agreed with that.  The temporary

8  monitor has been onsite since last week.  They are seeing

9  everything we are doing.  They are providing input. We are

10 consulting with them.  And that's part of the shutdown plan

11 that we've agreed to and will continue.  So, I wanted Your

12 Honor to be aware that that's in place.

13          THE COURT:  Okay.

14          MR. MINUTI:  Similarly, following our hearing last

15 Tuesday, the company and its counsel met with representatives

16 at Drexel University and its counsel for approximately four

17 hours on July 3rd.  There have been a host of follow-up

18 communications.

19          Of particular concern to Drexel was and is the

20 fate of the placement of the 583 residents and fellows in

21 training at the hospital.  We're pleased to report, Your

22 Honor, that on July 9th we filed a motion to transfer our

23 residency programs.

24          And Your Honor has granted us expedited

25 consideration for Tuesday for the bid procedures and that

1  matter is not before Your Honor, but what that motion

2  essentially does, Your Honor, is allow us to transfer the

3  residents to Tower or a higher and better bidder.

4         Tower has six hospitals in our region.  The

5  agreement contemplates that the agreements and licenses and

6  everything necessary to transfer the residents will go.  The

7  residents will have a new home or, Your Honor, the motion

8  provides that if the residents want, they can opt out and go

9  wherever they want; either before the sale or after the sale.

10        At last week's hearing, the court heard several

11  parties talk about the disruption to residents and the need

12  for a quick transfer.  The proposed motion, Your Honor, does

13  just that.  It moves quickly to transfer those residents and

14  provide them with options and a home.

15        I'm not here to suggest for one minute, Your

16  Honor, that that means there's going to be zero disruption to

17  the residents.  Unfortunately, that could not be avoided.

18  But, again, we moved as quickly as we could.

19        And I should say, we think that Drexel is onboard

20  with the program so we think, as long as that moves forward,

21  that's going to, in large part, solve a lot of their concerns

22  with respect to the shutdown.

23        I can also tell Your Honor that on Monday, July

24  8th representatives of the debtor and counsel met with

25  representatives of the City of Philadelphia and its counsel.

1  There's been a number of follow-up communications.  We are

2  keeping them informed of our negotiations with the Department

3  of Health because, obviously, we're hoping that resolution of

4  issues with the Department of Health will satisfy the city as

5  well.

6           The court, I think Your Honor is aware, I think we

7  provided a copy to chambers.  On July 8th -- I'm sorry.  On

8  July 9th, Judge Padilla, Your Honor, of the Court of Common

9  Pleas of Philadelphia County entered an order.  This was an

10 action that was brought in State Court --

11          THE COURT:  Yes.

12          MR. MINUTI:  -- that the city joined in.  The

13 judge entered an order granting, in part, the City's motion

14 for a preliminary injunction.  That order provided,

15          "All defendants --"

16          That would be the debtors --

17          -- "and their agents are enjoined from closing,

18          easing preparations or in any way further reducing

19          or disrupting services at the emergency department

20          at Hahnemann University Hospital without a closure

21          plan that is authorized by the city's health

22          commissioner and the bankruptcy court."

23          We are complying with that order, Your Honor, and

24 working with the City to lift the injunction on a consensual

25 basis, Your Honor.  There is a stipulation that is being

1  circulated among the parties.  We believe we have agreement

2  in principle, subject to documentation for an order that

3  we're going to submit to the Pennsylvania State Court that

4  contemplates and the non-accepting of patients in the

5  emergency room by July 17th.

6         And that brings me to my request that I made at

7  the outset, Your Honor, that if we can get the Department of

8  Health onboard and if we can get the City onboard and we

9  submit that order to Judge Padilla and Judge Padilla enters

10 that order, again, if I can get the committee onboard, I'd

11 like to be able to report to Your Honor I have that and we'd

12 like to ask Your Honor to allow us to do that closure on the

13 17th before we come back on Friday to ask for the full relief

14 we want, at least on an interim basis in our motion.

15        THE COURT:  In other words, on the 17th you would

16 be in court presumably with the committee's approval.

17        MR. MINUTI:  Well, here's what I would say, Your

18 Honor.  If I can get the committee onboard -- this is what I

19 would like to do, this is a request.

20        THE COURT:  Okay.

21        MR. MINUTI:  What I'd like to do if I can get the

22 committee onboard and I have the consent of the Department of

23 Health --

24        THE COURT:  Yes.

25        MR. MINUTI:  -- and I have the City's consent so

1  Judge Padilla enters an order that allows us -- that

2  basically lifts the injunction and allows us to close the

3  emergency room.  What I'd like to do is report that to Your

4  Honor and short of the hearing on Friday, to see if we can be

5  in a position to close it on the 17th.

6          If Your Honor doesn't like it or Judge Padilla

7  doesn't like it, you know, we're, obviously, going to be back

8  before Your Honor on the 17th.  But I'd, at least, like the

9  opportunity to get the committee onboard and effectuate the

10 closing.

11         And the reason for that, Your Honor, is that every

12 dollar I spend in the emergency room at Hahnemann is a dollar

13 I'm taking away from something else and that something else

14 is St. Christopher's Hospital which I'm trying to sell which

15 I think is going to maximize value for all of the

16 constituents here.

17         And that's why it's so important for us to try to

18 stick with our timeline, Your Honor. Again, what I'm trying

19 to do is get everybody onboard, get to the point where

20 everybody understands what we're trying to do, get Your Honor

21 to agree it can go forward.  So that's my request and that's

22 what I would like to do.

23         There are other parts of our closure plan.

24 Remember, what we're talking about is just the emergency

25 room.  We have a whole hospital.  So, I will be back before

1  Your Honor on Friday with respect to the balance of the

2  motion and the request.

3          Again, my hope we have a fully signed off closure

4  plan with the Department of Health and the City and I hope

5  that's going to go a long way to convince any of the other

6  objectors that the plan is acceptable and reasonable.  And I

7  hope that's going to go a long way to convince Your Honor

8  that and we can get the interim relief we want on Friday.

9          THE COURT:  If you can get the committee onboard

10  by the 17th, I will hear you on the 17th.  I think -- let me

11  look at my schedule.  I have you on the 16th.

12          MR. MINUTI:  You do.

13          THE COURT:  That's Tuesday the 16th.  And I think

14  I have sufficient time.  I have you on for eleven o'clock

15  that day, to be in at eleven.

16          MR. MINUTI:  Well the only issue with the 16th,

17  Your Honor, is that it may be a little optimistic for us to

18  get the committee onboard by then since they're only going to

19  be formed on the 15th.

20          THE COURT:  Yes.

21          MR. MINUTI:  So maybe the thing to do, Your Honor,

22  is maybe we can revisit this on the 15th or, excuse me; the

23  16th.  We can tell Your Honor where we are with the committee

24  and then maybe deal with scheduling then.  Would that be

25  acceptable to the court?

1          THE COURT:  That would be acceptable, Mr. Minuti.

2   I know it's a change in what I was thinking but I'm willing

3   to work with you on that.

4          MR. MINUTI:  Thank you, Your Honor.

5          Your Honor, I just want to make a couple other

6   comments before we get to the DIP financing motion.

7          One of the other objectors to the closing motion

8   has been Pennsylvania Attorney General's office.  They

9   actually raised some issues that dovetail to some of the

10  other objections but raised additional objections.

11         Again, one of the issues they raised was concern

12  about the residents. We're hoping that the motion we filed

13  with Tower goes a long way there.  Just yesterday, Your

14  Honor, they asked a number of questions.  We're in the

15  process of answering those questions.

16         So our goal, Your Honor, again, is to try to get

17  our Attorney General's office onboard as well and satisfy

18  their concerns by the time we get to the next hearing.

19         The other things that I can Your Honor is we have

20  another objection from essentially the Nurse's Union.  We did

21  have a meeting.  The company or the hospital met with the

22  Nurse's Union representatives earlier this week to explain

23  what was going on.  And, finally, the member of the

24  Accreditation Council for Graduate Medical Education, that's

25  another objector, they are going to be onsite, I understand,

1   tomorrow, Your Honor, regarding the residency placement and

2   they have raised an objection.

3           So, again, the goal would be to meet with them

4   tomorrow, explain to them or answer any questions they may

5   have about the placement and, hopefully, we'll have them

6   onboard by the time we get back --

7           THE COURT:  And their concern is with the

8   residents, is that right?

9           MR. MINUTI:  Their concern is with the residents,

10  Your Honor.  I think they had -- I know they had some

11  questions about the Tenet -- excuse me; the Tower Health

12  arrangement and what is exactly going to happen and how

13  mechanically it is going to work.  And so, our goal is to

14  answer those questions and, hopefully, again, be in a

15  position next Tuesday to have them signed off on what we're

16  doing.  And if not, obviously, Your Honor is going to hear

17  them and, ultimately, decide where we're going.

18          THE COURT:  How did you leave it with the Nurse's

19  Union, Mr. Minuti?

20          MR. MINUTI:  Well I don't know if Your Honor --

21          THE COURT:  Without going into detail of

22  discussions.

23          MR. MINUTI:  I won't go into details, Your Honor.

24  I don't go into details.

25          If Your Honor read the Nurse's Union objection,

1   it's really more of an objection to the closing than the

2   closing plan.

3           THE COURT:  Yes.

4           MR. MINUTI:  And so, what we've tried to explain

5   to the Nurse's Union is why we're closing, why there is no

6   alternative, and what the plan is, and to show that the plan

7   does provide, you know, the safest outcome for the patients.

8           Candidly, Your Honor, as I sit here, I don't --

9   because their issue is more with the closing itself, I don't

10   know that I'm going to get to the point where I'm going to

11   resolve their concerns, but that's what we've tried to do.

12           THE COURT:  All right.  All right.

13           MR. MINUTI:  So, Your Honor, so just by way of

14   summing up, Your Honor, what we've tried to do is comply with

15   the court's order.  And we've tried to get everybody onboard.

16   We got some more work to do and we are committed to do that.

17   That's why we've agreed to move the motion to next week.

18           There's been a lot of positive developments.

19   We're very pleased with the feedback that we're getting or, I

20   should say, the cooperation we're getting from folks.  I

21   think that the extra time was helpful because we've used it

22   wisely to listen to folk's concerns.  But also, to use the

23   time to explain our situation exactly where we are and what

24   the financial crisis is here.

25           And so, I think that's made everybody a little

1  more amenable to try to get to the right place which is

2  protecting the patients which is what everybody wants.  And

3  so, that's my report on where we are, Your Honor.  And so,

4  let me pause there and see if the court has any questions.

5          THE COURT:  I don't.  I certainly appreciate the

6  report.  And I understand that you're working hard and

7  meeting with people.

8          And, again, I do believe that the meeting that I

9  suggested with the University of Pennsylvania Hospital,

10 Jefferson Hospital and the others could turn out to be

11 useful.  But I leave that up to -- they're not parties in

12 this case, obviously, the hospitals and I can't order the

13 meeting.  But I certainly strongly suggest that one be

14 arranged.

15         MR. MINUTI:  We will, Your Honor.  I can tell Your

16 Honor, and I don't have tremendous detail on this, but I know

17 that there have been that there have been discussions with

18 Jefferson Hospital, at least I'm going to look to Mr.

19 Weiland, my understanding that they've been very receptive.

20         I mean we've had and Mr. Weiland will correct me,

21 but I think we've had a number of calls with them talking

22 about the effect of the closure and where those patients are

23 going to go.  And so, at least, as I understand it, Your

24 Honor, they are apprised of the situation.  They've actually

25 talked to their staff about what that's going to mean.

1        I think they've put in place programs to deal with

2  the influx that will result from Hahnemann closing down.  So,

3  at least, with respect to Jefferson I know discussions have

4  happened and they've been very cooperative.  And, at least,

5  from our perspective are saying all the right things and

6  appear to be doing all the right things to put in place

7  what's going to be necessary to deal with the overflow.

8        I can't speak to the University of Pennsylvania

9  because I just don't know about that, but if you give me a

10 minute, let me just see Mr. Weiland.

11       So, Your Honor, so what Mr. Weiland is telling me

12 is that most of the patient flow will go to Temple and

13 Jefferson.  We have had conversations with the University of

14 Pennsylvania.  We have had conversations with Temple as well.

15 I think Temple needs to get certification.

16       UNIDENTIFIED SPEAKER:  It's expedited

17 conventionally for physicians at both Jefferson and Temple so

18 they can treat their patients as they come over from

19 Hahnemann.

20       THE COURT:  Okay.

21       MR. MINUTI:  Yeah, so those discussions, Your

22 Honor, happened. And I believe those discussions started

23 prepetition and continued, Your Honor.

24       THE COURT:  Okay.  All right, thank you.

25       MR. MINUTI:  Your Honor --

1           MR. MALZBERG:  Your Honor --

2           THE COURT:  Yes.

3           MR. MALZBERG:  Sorry to interject.  My name is

4    Mitchell Malzberg from the Law Office of Mitchell Malzberg.

5    I represent the Nurse's Association.  I have a pro hac

6    pending.

7           THE COURT:  All right.

8           MR. MALZBERG:  I wasn't planning on chiming in but

9    since statements have been made about the union and

10   discussions.

11           I'm not doubting Mr. Minuti's statements, but I

12   just want to make clear for the record that I'm not aware of

13   the communications or a meeting set through me or my local

14   counsel or the delegates.  They might have had these

15   meetings directly with certain nurses which I'm not sure

16   haven't been reported to me.  And the nurses, as stated in

17   the objection, have concerns about the closure itself.

18           Like counsel represented and I'm open to a

19   dialogue, but the nurses, of course, want to do anything in

20   powers to try to keep this hospital open for not only the

21   employees, but also the community at stake because they have

22   great care as to this hospital and the community at large.

23           THE COURT:  I certainly understand that, Mr.

24   Malzberg.  Thank you.  Yes.

25           MR. MINUTI:  Thank you, Your Honor.

1          Your Honor that then brings us to our motion for

2     interim use of cash collateral and debtor-in-possession

3     financing.

4          THE COURT:  Yes.

5          MR. MINUTI:  Your Honor will recall that when we

6     appeared before you last week, we were not fully ready to go

7     forward because we were continuing.  We had not finalized the

8     credit agreement so Your Honor was gracious enough to enter

9     an order that authorized the use of cash collateral that got

10    us through today's hearing.

11         Since then, Your Honor, we have had non-stop

12    negotiations with our DIP lender on the credit agreement.

13    There have been some changes to the interim order, Your

14    Honor, based on both discussions with our proposed lender, as

15    well as some responses based on some of their objections we

16    received, as well as some informal comments from the United

17    States Trustee's office.  And, again, we do appreciate and

18    thank Mr. Hackman for his comments and we have made some

19    changes and I think circulated the order; I note to the

20    United State's Trustee's office and, perhaps, others.

21         What I had hoped to do, Your Honor, was be in a

22    position right now to tell Your Honor that we believe we have

23    reached an agreement in principle on all the major points.

24    And my request of the court was going to be to do the

25    following, was to move forward with the hearing today, for me

1   to present our case in support of the use of cash collateral

2   and interim debtor-in-possession financing, to walk Your

3   Honor through the proposed form of order.  But then to ask

4   Your Honor to hold off on entering that order until we can

5   file our credit agreement, assuming Your Honor is pleased

6   with the credit agreement and then have that order entered.

7   That was the plan.

8          There have been a couple of last-minute wrinkles

9   that appeared, Your Honor, literally right as I walking over

10  for the hearing.  One of those is, Your Honor, we received an

11  email from a lawyer who I believe is on the phone

12  representing the Department of Justice who has raised an

13  issue regarding a super-priority claim or a lien trumping

14  setoff and recoupment rights as it relates to

15  Medicare/Medicaid payments.

16         I literally before Your Honor took the bench was

17  in a conference room in the back of the courtroom talking to

18  the lender about that and what we can do about that.  We

19  hadn't reached closure by the time Your Honor took the bench.

20  I am painfully aware that we are trying the court's patience.

21  It is certainly not my intent to do that.

22         THE COURT:  I'm very patient, Mr. Minuti, don't

23  worry about that.

24      (Laughter)

25         MR. MINUTI:  Well thank you.  And, Your Honor, I

1 know you are and, look, I can say, I know I speak for

2 everybody when I say our last -- the last thing we want to do

3 is try the court's patience and we appreciate what you have

4 done.

5          Here's what I think would make sense Your Honor.

6 If you could give me ten minutes and just to find out whether

7 we think we have a solution or we don't have a solution and

8 how long we think it's going to take, I can then come back

9 and report to Your Honor what we'd like to do just because I

10 don't know because I didn't want to delay taking the bench

11 any further.

12          So that's my request.  If I could have ten minutes

13 to talk to counsel for the lender.  And then we can come back

14 and report where we are.

15          THE COURT:  That's fine, Mr. Minuti.  I also have

16 time available tomorrow in case you don't resolve this and

17 you need more time.

18          MR. MINUTI:  Very well.

19          THE COURT:  But why don't I give you fifteen

20 minutes and I'll be out at quarter of.

21          MR. MINUTI:  Let me ask Your Honor, what time

22 tomorrow?

23          THE COURT:  I have really all-day tomorrow, so you

24 could come at ten o'clock, nine o'clock, eleven o'clock.

25          MR. MINUTI:  Perfect.  Your Honor, let me use the

1  fifteen minutes wisely and then we'll be back.

2           THE COURT:  All right.

3           MR. MINUTI:  Thank you.

4           THE COURT:  We stand in recess.

5      (Recess at 4:25 p.m.)

6      (Proceedings resume at 4:46 p.m.)

7           THE CLERK:  Please rise.

8           THE COURT:  Thank you, everyone.  You may be

9  seated.  Thank you.

10          Mr. Minuti, what can you report?

11          MR. MINUTI:   Your Honor, here's what I can

12 report.

13          We have been on the phone in your conference room

14 with the lawyer from the Department of Justice.  We are

15 exploring how we can resolve the issue that they raised.  We

16 are trying to understand the magnitude of the risk that the

17 issue creates --

18          THE COURT:  Right.

19          MR. MINUTI:   -- because that will help inform how

20 we can hopefully resolve the issue.  We were not able to

21 accomplish that in ten minutes.  And it's overly optimistic

22 to suggest that we'd be able to do it in time for me to

23 finish the DIP hearing this afternoon.

24          So here is what we would like to do.  This is

25 probably my tenth ask of the court today, but I'm going to do

1  it anyway.

2         We'd like to ask if we can come back tomorrow at

3  eleven o'clock.

4         THE COURT:  Yes.

5         MR. MINUTI:  You know I would be lying if I didn't

6  say there was a chance that we would come here at eleven and

7  ask for more time.  But I think if we put it on for eleven

8  everybody understands we have a time.  We'll try to get it

9  resolved and hopefully we can be here tomorrow.

10        I can tell Your Honor with respect to some of the

11 other objections we are working to try to resolve those.  I'm

12 not sure we're going to get all the way there.  But I

13 actually think when the hearing goes forward the hearing

14 itself is not going to be that long.

15        And I think to the extent Your Honor needs to

16 decide or rule on objections, I don't think the issues are

17 going to be complex. So, we're trying to make it as easy on

18 the court as possible once we get here, but that would be the

19 goal.

20        So if we can have until eleven tomorrow, I think

21 that would be productive and we'll come back and see where we

22 are tomorrow.

23        THE COURT:  Eleven is fine.  Let's not try to drag

24 it out all day.  All right.

25        MR. MINUTI:  Nothing would please me more if we

1  could start at eleven, Your Honor.

2          THE COURT:  All right, we'll schedule you for

3  eleven tomorrow and you'll be back and I'll hear if there are

4  objections, I'll resolve them.

5          MR. MINUTI:  Thank you, Your Honor.

6          THE COURT:  All right, anyone else?

7       (No verbal response)

8          THE COURT:  All right with that, we'll stand in --

9          MR. CUTLER:  I was just getting up to respond,

10  Your Honor.

11          THE COURT:  Oh, okay. All right.

12          MR. MINUTI:  I'll cede the podium, Your Honor.

13          THE COURT:  Do you want to come to the podium?

14          MR. CUTLER:  Yes.

15          My name is Jeffrey Cutler.  I made a motion in

16  court to appoint me as trustee because everybody here wants

17  to close the hospital.  I have a plan that may not be perfect

18  but, at least, has a possibility of keeping the hospital

19  open.  And the only thing I believe necessary to do it is I

20  have a default judgment from Federal Court or I filed one in

21  Federal Court on June 18th against Brian Simms (phonetic)

22  essentially putting him as a creditor to this and essentially

23  since the State of Pennsylvania has previously paid for

24  misconduct by congressmen and senators in other courts for

25  things like misappropriation of women's rights.

1    I think there's no reason to say that the State of

2 Pennsylvania couldn't be held accountable for this.  I also

3 have a plan that allows payment on a long-term basis of a do-

4 it-yourself municipal bond which I nicknamed the Jeffrey Bond

5 on December 7th, 2015.  And this is a way to maintain the

6 hospital in its entirety.

7    The only thing I believe this plan would need in

8 order to buy-in from the unions and the -- is some relaxation

9 of work rules and to get ability to do that.  In order to do

10 this, I've been fighting the court system and have found a

11 lot of misconduct by people.  And essentially, I did this

12 strictly as not a means to make a jillion dollars, but as a

13 means to keep the system honest and protect the constitution.

14    On December 31st, 2015, I filed my original

15 lawsuit against the Affordable Care Act because it allows the

16 Government to tell you how to pray.  I actually filed that

17 and it went all the way to the Supreme Court.

18    So, based on that, and based on trying to preserve

19 this, I think this is an admirable plan.  It's workable.  It

20 could find all kinds of funding and buy-in from the City or

21 the State of Pennsylvania to allow this entity called the

22 Jeffie Bond to be enacted which would allow all kinds of

23 money to fund and subsidize the hospital.

24    Essentially, I previously back in the year 2000

25 was in charge of coordinating all the contingency plans for

1  Merck and Company in the West Point site for Y2K for their

2  computer systems.  I'm a Drexel graduate.  And although if

3  people cheat there's no way for me to do that but

4  essentially, I believe have the skill set necessary to

5  actually bring some of this together.

6         I am not a lawyer and have no legal training.  But

7  I'm learning everyday about the procedures.

8         THE COURT:  Well here's the way it works, Mr.

9  Cutler.  I don't name a trustee.  The office of the United

10  States Trustee would name the trustee, not me.

11         MR. CUTLER:  Okay.

12         THE COURT:  And I don't know that this matter is

13  now before the court.

14         MR. CUTLER:  Okay.

15         THE COURT:  I understand you filed -- I think you

16  filed a motion --

17         MR. CUTLER:  It's 104 in the docket.  And

18  essentially what this is about is keeping the hospital open.

19         THE COURT:  Yes.

20         MR. CUTLER:  And nobody else's plan actually does

21  this.  This refines a funding mechanism that could be long

22  term.  It could be fund other hospitals.  I gave a similar

23  speech to Septa as using it to fund other operations.  And I

24  thank you for your time.

25         THE COURT:  All right, Mr. Cutler, thank you very

1  much, sir.

2          All right and with that then we will stand in

3  recess, everyone.  I'll see you tomorrow at eleven.  Thank

4  you.

5          MR. MINUTI:  Thank you, Your Honor.

6      (Proceedings conclude at 4:53 p.m.)

7

8

9

10

11                        CERTIFICATE

12

13      I certify that the foregoing is a correct transcript

14  from the electronic sound recording of the proceedings in the

15  above-entitled matter.

16  /s/Mary Zajaczkowski            July 12, 2019

17  Mary Zajaczkowski, CET**D-531

18

19

20

21

22

23

24

25