## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Re: Docket No. 53** |
| | ) |

### INTERIM ORDER UNDER 11 U.S.C. §§105, 361, 362, 363(C), 363(D), 364(C), 364(D), 364(E) AND 507 AND BANKRUPTCY RULES 2002, 4001 AND 9014; (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION; AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B) AND 4001(C)

This matter comes before the Court pursuant to the motion (the "Motion") dated July 1, 2019 of Center City Healthcare, LLC, d/b/a Hahnemann University Hospital, and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases") commenced on June 30, 2019 and July 1, 2019 (the "Petition Date") pursuant to sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4001(b) and (c) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (this "Court"), seeking, among other things:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

### I. Postpetition Financing

(A)　　authorization for the Debtors to obtain up to $65,000,000 in senior secured super-priority debtor-in-possession financing (the "<u>DIP Facility</u>") from MidCap Financial Trust, as Agent (together with its successors and assigns, the "<u>DIP Agent</u>") and as a lender and the additional financing institutions from time to time party thereto (collectively, the "<u>DIP Lenders</u>") consisting of (a) a revolving facility in the aggregate principal amount of $50,000,000 (the "<u>DIP Revolving Facility</u>," and all extensions of credit under the DIP Revolving Facility, the "<u>DIP Revolving Loans</u>") (**IT BEING UNDERSTOOD AND AGREED THAT IN NO EVENT SHALL THE AGGREGATE OUTSTANDING PRINCIPAL BALANCE OF THE DIP REVOLVING LOANS EXCEED AT ANY TIME THE REVOLVING LOAN LIMIT** (as defined in the DIP Credit Agreement (defined below)), and (b) a term loan facility in the principal amount of $15,000,000 (the "<u>DIP Term Loan</u>" and, together with the DIP Revolving Loans, the "<u>DIP Loans</u>") on the terms and conditions set forth in:

(i)　　this interim order (this "<u>Interim Order</u>") and a Final Order (as defined herein), entered no later than thirty (30) days after the date of this Interim Order;

(ii)　　that certain First Priority Secured Priming Super-Priority Debtor In Possession Credit And Security Agreement, among the Debtors, the DIP Agent and the DIP Lenders (as such agreement may be amended, restated, supplemented or otherwise modified from time to time, and together with any exhibits attached thereto, the "<u>DIP Credit Agreement</u>"), and other agreements related thereto, including all notices, guarantees, security agreements, related or ancillary documents and agreements, and any mortgages contemplated thereby, including those entered into by Physicians Clinical, Network, LLC, Physician Performance Network of Philadelphia, L.L.C., Philadelphia Academic Health Holdings, LLC., Broad Street Healthcare

2

Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC (collectively the "non-Debtor Guarantors") (or any of them) (the "DIP Documents").  A true and correct copy of the DIP Credit Agreement is annexed hereto as Exhibit 1;

(B)    authorization for the Debtors to execute and deliver the DIP Credit Agreement and the other DIP Documents to which they are a party and to perform their respective obligations thereunder and such other and further acts as may be necessary or appropriate in connection therewith;[2]

(C)    authorization for the Debtors to use borrowings under the DIP Credit Agreement in accordance with the budget annexed hereto as Exhibit 2 (the "DIP Budget") to avoid immediate and irreparable harm;

(D)    authorization for the Debtors to use proceeds from the initial borrowing under the DIP Facility to pay down the "Term Loan" (as defined in the Prepetition Credit Agreement, the "Prepetition Term Loan") from $20,000,000 to $15,000,000;

(E)    authorization for the Debtors to (i) use proceeds from the initial borrowing under the DIP Facility to repay all of the Prepetition Obligations (as defined in paragraph 4 below) other than $15,000,000 of the Prepetition Term Loan, arising under the Credit and Security Agreement, dated as of January 11, 2018 (as amended, supplemented or otherwise modified prior to the commencement of the Cases, the "Prepetition Credit Agreement", and together with all security, pledge, mortgages and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified

---

[2]    Terms not otherwise defined in this Order shall have the meaning ascribed to them in the DIP Credit Agreement annexed hereto as Exhibit 1.

# 4173034  v. 7
35606314.6 07/12/2019

prior to the commencement of the Cases, the "<u>Prepetition Financing Documents</u>"), among each of the Debtors in their respective capacities as borrowers thereunder, the Lenders party thereto from time to time (the "<u>Prepetition Lenders</u>") and MidCap Funding IV Trust, successor-by-assignment to MidCap Financial Trust, as Agent (the "<u>Prepetition Agent</u>"), and (ii) to add the remaining Prepetition Term Loan to the DIP Credit Facility by way of amendment or amendment and restatement at such time as DIP Agent is able to obtain loan title insurance policies in form and substance acceptable to DIP Agent encumbering the Broad Street Mortgages (as defined in the Prepetition Credit Agreement) which title insurance shall be substantially identical to the title insurance policies currently in place with respect to the Prepetition Credit Agreement;

(G)    authorization for the Debtors to grant security interests, liens, and superpriority claims to the DIP Agent, for the ratable benefit of itself and the DIP Lenders, to secure the Debtors' obligations under and with respect to the DIP Facility (the "<u>DIP Obligations</u>");

(H)    authorization for the Debtors to use proceeds of the DIP Facility in accordance with, for the purposes of, and in the amounts set forth in, the DIP Budget, subject to a permitted variance of not more than ten percent (10%) with respect to aggregate expenditures, provided, however, that payment of professionals may not exceed the weekly line item amounts set forth in the DIP Budget, and provided, further, that any unused portion of the weekly budgeted professional fees may be used in a subsequent week of the DIP Budget (**IT BEING UNDERSTOOD AND AGREED THAT IF THE DIP BUDGET REFLECTS NEGATIVE AVAILABILITY UNDER THE DIP FACILITY, DIP AGENT AND DIP LENDERS SHALL NOT PERMIT THE AGGREGATE OUTSTANDING PRINCIPAL BALANCE OF THE DIP REVOLVING LOANS TO EXCEED AT ANY TIME THE REVOLVING LOAN LIMIT**);

4

**II.  Use of Collateral**

(A)    authorization for the Debtors to use the Cash Collateral [3] solely to repay Obligations under the DIP Facility; provided however that the Prepetition Agent consented in writing to the use of such Cash Collateral through July 10, 2019 pursuant to the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Further Hearing, and (IV) Granting Related Relief* [D.I. 85], and may further consent to the use of Cash Collateral until the closing under the DIP Credit Agreement for specific line items in the DIP Budget, listed on a separate schedule to be submitted to Prepetition Agent, which are necessary to be paid by Debtors to avoid immediate and irreparable harm to the estate and to ensure patient safety; and

(B)    authorization for the Debtors to use all non-cash Prepetition Collateral (as defined in paragraph 4(b) below).

**III.    Adequate Protection**

(A)    authorization for the Debtors to provide adequate protection to the DIP Lenders and the Prepetition Lenders, to, among other things, make the Adequate Protection Payments  (as defined below) in accordance with the DIP Budget and to grant Prepetition Lender replacement liens on the DIP Collateral;

 (B)    authorization for the DIP Lenders to exercise remedies under the DIP Documents upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Credit Agreement);

---

[3] " <u>Cash Collateral</u>" shall have the meaning assigned to the term "cash collateral" under Bankruptcy Code section 363(a), and consists of the Debtors' cash in which the Agent and Lenders have an interest to secure the Obligations as that term is defined in the Prepetition Credit Agreement.

# 4173034  v. 7
35606314.6 07/12/2019

(C)     authorization for the Debtors to perform their obligations under, and pay the deferred fees set forth in the Fee Letters referred to in the Prepetition Financing Documents;

(D)     the granting of liens and allowed superpriority administrative expense claims to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders, in each case subject to the Carve Out;

(E)     authorization for the Debtors to waive their rights, if any, to surcharge the DIP Collateral as defined in paragraph 8 below pursuant to section 506(c) of the Bankruptcy Code;

(F)     subject to certain challenge rights of parties in interest, approval of certain stipulations by the Debtors with respect to the Prepetition Financing Documents and the liens and security interests arising therefrom.

## IV.     Certain Modifications and Waivers

(A)     modification of the automatic stay under Bankruptcy Code section 362 on the terms and conditions set forth herein to the extent necessary to implement and effectuate the terms of the DIP Documents and the DIP Orders (as defined below);

(B)     waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order, including under Bankruptcy Rule 6004;

## V.     Final Hearing

The scheduling of a final hearing (the "Final Hearing"), pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, to be held within twenty-eight (28) days of the entry of this Interim Order for this Court to consider entry of a final order authorizing and approving on a final basis the relief requested in the Motion (the "Final Order", and together with the Interim Order, the "DIP Orders").

# 4173034  v. 7
35606314.6 07/12/2019

The interim hearing on the Motion having been held by this Court on July 12, 2019 (the "Interim Hearing"), and upon the pleadings and declarations filed with the Bankruptcy Court, the evidence presented at the Interim Hearing and the entire record of the Chapter 11 Cases; and there being no objections to the relief sought in the Motion that have not been withdrawn, waived, settled, or resolved; and the Bankruptcy Court having noted the appearances of the parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and the Debtors' estates and creditors; and the Debtors having provided notice of the Motion as set forth in the Motion, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      Approval of Motion. The relief requested in the Motion is granted on an interim basis, subject to the terms and conditions set forth in this Interim Order.  This Interim Order shall become effective immediately upon its entry.  To the extent the terms of the DIP Documents or the Motion differ in any respect from the terms of this Interim Order, this Interim Order shall control.

2.      Jurisdiction. This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Notice. Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Agent; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the

# 4173034  v. 7
35606314.6 07/12/2019

United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Human Services; (xi) the City of Philadelphia; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rules 4001(b) and (c) and 9014, Bankruptcy Code section 1514 and applicable Local Rules.

4.    <u>Debtor Stipulations</u>. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 12 below), the Debtors admit, stipulate, acknowledge and agree that:

(a)    *Prepetition Indebtedness.* As of the Petition Date, the Debtors and the non-Debtor Guarantors were truly and justly indebted and liable to the Prepetition Agent and the Prepetition Lenders under the Prepetition Financing Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $57.4 million in respect of loans, (including a revolving credit (the "<u>Prepetition Revolving Loan</u>") and other extensions of credit made pursuant to the Prepetition Financing Documents, plus accrued and unpaid interest thereon and any fees and expenses (including fees and expenses of attorneys) related thereto, to the extent provided in the Prepetition Financing Documents, plus all other outstanding amounts that would constitute Obligations under and as defined in the Prepetition Credit Agreement (collectively, the "<u>Prepetition Obligations</u>"). The aggregate value of the Prepetition Collateral exceeds the aggregate amount of the Prepetition Obligations.

(b)    *Prepetition Liens and Collateral.*  As more fully set forth in the Prepetition Financing Documents, the Debtors granted liens and security interests to the Prepetition Agent (for the ratable benefit of the Prepetition Lenders) to secure the Prepetition Obligations (the

"Prepetition Liens") in the Collateral, as that term is defined in the Prepetition Financing Documents (the "Prepetition Collateral"), which liens and security interests are (i) valid, binding, perfected, and enforceable first priority liens on and security interests in the Prepetition Collateral[4], (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or other applicable law, and (iii) subject and subordinate only to liens permitted by section 546(b) of the Bankruptcy Code to the extent such liens are senior to the liens securing the Prepetition Obligations;

(c)     *Guarantor Liens.* The liens and security interests granted to the Prepetition Agent (for the ratable benefit of the Prepetition Lenders) by the non-Debtor Guarantors party to or otherwise obligated under the Prepetition Financing Documents to secure the Prepetition Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Prepetition Financing Documents) liens on and security interests in such non-Debtor Guarantors' personal and real property constituting Collateral (as defined in the Prepetition Credit Agreement), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or other applicable law, and (iii) subject and subordinate only to (A) liens and security interests granted to the DIP Agent and the DIP Lenders pursuant to the terms of the DIP Documents and (B) liens in favor of the City of Philadelphia for real estate taxes and water/sewer usage debt to the extent such liens are first priority liens pursuant to Pennsylvania's Municipal Claims and Tax Liens Act;

(d)     *Claims Waiver.* The Debtors do not have any claims, counterclaims, causes of action, defenses, setoff rights or entitlements to equitable relief related to the Prepetition

---

[4]     The terms "Prepetition Liens" and "Prepetition Collateral" are defined by reference only to assets and property of the Debtors (and liens thereon), and therefore, the terms Prepetition Liens and Prepetition Collateral exclude any assets or property of any  non-Debtor Guarantor that may be pledged as collateral (and liens thereon).

# 4173034  v. 7
35606314.6 07/12/2019

Collateral, Prepetition Obligations and Prepetition Financing Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code, other applicable insolvency law, or applicable non-insolvency law, against the Prepetition Agent and the Prepetition Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors.

(e)     *Lien Validity.*   The Debtors hereby waive and release any right to, and shall be forever barred from any attempt to object to, challenge or seek to avoid, the amount, validity, or enforceability of the Prepetition Obligations or Prepetition Agent's and Prepetition Lenders' liens and security interests in the Prepetition Collateral securing the Prepetition Obligations.

5.     <u>Findings Regarding the DIP Facility, Use of Cash Collateral, and Adequate Protection</u>.

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     In consideration of the diminution in value of their interests in the Prepetition Collateral as a result of the granting of and subordination to the DIP Liens and security interests, subordination to the Carve Out, the Debtors' use of Cash Collateral, and other decline in value arising out of the imposition of the automatic stay or the Debtors' use, sale, depreciation, or disposition of such, the Prepetition Agent and the Prepetition Lenders shall receive adequate protection effective as of the commencement of the Cases in the form of: (i) the roll-up described herein; (ii) valid, enforceable, fully perfected security interests in and replacement liens on the DIP Collateral, subordinate only to the DIP Liens and subject to the Carve-Out (the "<u>Adequate Protection Liens</u>"); (iii) monthly payments of interest at the non-default rate of interest, certain deferred origination fees, other fees and expenses and professional fees and expenses, arising under the Prepetition Credit Agreement (the "<u>Adequate Protection Payments</u>"); and (iv) to the

10

extent of diminution in the value of the Prepetition Cash Collateral, a superpriority administrative claim under sections 503 and 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims now existing or after arising, *provided, however,* that such superpriority claim shall be junior and subject to the Superpriority Claim (as defined herein) of the DIP Agent, for the benefit of the DIP Lenders, in respect of the DIP Facility and the Carve-Out.

(c)    The Debtors have an immediate need to directly or indirectly obtain the DIP Facility and to use the Prepetition Collateral, including Cash Collateral in the form of loan proceeds of the DIP Facility, in order to, among other things, ensure patient safety, permit the orderly continuation of their businesses, implement the closure of Hahnemann University Hospital, preserve the going concern value of the Debtors and the non-Debtor Guarantors, make payroll, maintain business relationships with vendors and suppliers, and satisfy other working capital and general corporate purposes of the Debtors (including costs related to the Cases) and to repay in full the Prepetition Revolving Loan and repay $5,000,000 of the outstanding amount of the Prepetition Term Loan, a critical step to permit the Debtors to obtain this financing.

(d)    Repayment of the Prepetition Obligations to the extent provided for herein with the initial proceeds of the DIP Facility is appropriate because (i) the aggregate value of the Prepetition Collateral securing the Prepetition Obligations exceeds the aggregate amount of the Prepetition Obligations, and (ii) it is a condition to closing under the DIP Credit Agreement that the initial proceeds of the DIP Loan be used to repay the Prepetition Obligations to the extent provided herein so that the Debtors' assets that secure the Prepetition Obligations on a first lien basis will be available to secure on a first lien basis the DIP Facility; provided, however, that due to unforeseen circumstances relating to the Philadelphia County Recorder of Deeds, the DIP

11

Term Loan will be added to the DIP Facility by way of amendment or amendment and restatement (in either case, the "DIP Term Loan Amendment") and the remaining principal balance of the Prepetition Term Loan will be deemed repaid in full upon entry into the DIP Term Loan Amendment at such time as DIP Agent is able to obtain loan title insurance policies in form and substance acceptable to DIP Agent covering the property currently encumbered by the Broad Street Mortgages (as defined in the Prepetition Credit Agreement), which title insurance policies shall be substantially identical to the title insurance policies currently in place with respect to the Prepetition Credit Agreement.

(e)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(l) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain sufficient asset-based revolving credit without: (i) granting the priming DIP Liens to secure the DIP Facility under section 364(d)(l) of the Bankruptcy Code; (ii) granting the Superpriority Claims (as defined in paragraph 7(a) below); and (iii) repaying in full the Prepetition Obligations to the extent provided for herein, in each case on the terms and conditions set forth in this Interim Order and the DIP Documents.

(f)    The extensions of credit under the DIP Facility and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(g)    The DIP Facility and the use of the Prepetition Collateral, including Cash Collateral, have been the subject of extensive negotiations conducted in good faith and at arm's

length among the Debtors, the DIP Agent and DIP Lenders. All of the Debtors' Obligations and indebtedness arising under or in connection with the DIP Documents, this Interim Order and the DIP Facility (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders in "good faith," as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified on appeal or otherwise. The DIP Agent and the DIP Lenders have acted in good faith regarding the DIP Facility and the Debtors' continued use of the Prepetition Collateral (including Cash Collateral in the form of loan proceeds from the DIP Facility) to fund the administration of the Debtors' estates, ensure patient safety, and continued operation of their businesses, in accordance with the terms hereof, and the DIP Agent and DIP Lenders (and the successors and assigns thereof), shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. Therefore, the claims, Superpriority Claims (as defined below), security interests, liens, and other protection granted pursuant to this Interim Order (and, subject to entry by the Court, the Final Order) and the DIP Documents should be preserved to the extent provided for by paragraph 6 of this Interim Order.

(h)    The adequate protection provided to the Prepetition Agent and the Prepetition Lenders with regard to the Prepetition Collateral, as set forth more fully in this Interim Order, for any diminution in the value of the Prepetition Agent's and Prepetition Lenders' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date resulting from, *inter alia*, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code

13

(the "Automatic Stay"), the Debtors' use of any Prepetition Collateral (including the Cash Collateral) pursuant to section 363 of the Bankruptcy Code, and the granting of the priming DIP Liens pursuant to section 364(d) of the Bankruptcy Code, in each case in accordance with this Interim Order, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect the Prepetition Agent's and the Prepetition Lenders' interests in the Prepetition Collateral (including the Cash Collateral) in accordance with sections 361, 362, 363, and 364 of the Bankruptcy Code. As of the date of this Interim Order, and without prejudice to the rights of the Prepetition Agent and the Prepetition Lenders to seek additional adequate protection, the adequate protection provided herein and other benefits and privileges contained herein are sufficient to protect the Prepetition Agent and the Prepetition Lenders from diminution in value of their respective interests in their Prepetition Collateral (including Cash Collateral) resulting from the imposition of the Automatic Stay, the incurrence of the DIP Facility and the use of the Prepetition Collateral (including the Cash Collateral) contemplated by this Interim Order.

(i)     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 400l(b)(2) and 4001(c)(2). Absent granting the interim relief set forth in this Interim Order, the Debtors' estates and their business operations will be immediately and irreparably harmed and patient safety will be jeopardized. The borrowing of the DIP Facility and the use of the Prepetition Collateral in accordance with this Interim Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

6.     Authorization of the DIP Obligations and the DIP Documents.

(a)     The Debtors are hereby authorized (i) to enter into and perform under the DIP Documents in accordance with the DIP Budget, (ii) to incur debt up to an aggregate principal

# 4173034  v. 7
35606314.6 07/12/2019

amount of $50,000,000 with respect to the DIP Revolver and $15,000,000 with respect to the DIP Term Loan, the proceeds of which shall be used for, subject to the terms of this Interim Order, the DIP Documents and the DIP Budget, working capital and other general corporate purposes of the Debtors (including costs related to the Cases), including, without limitation, (1) to pay interest, fees and expenses in connection with the DIP Facility, including unused line fees, collateral management fees and origination fees as described in the DIP Credit Agreement, (2) to repay the Prepetition Obligations to the extent provided herein (including the full amount outstanding under the Prepetition Revolving Loan, $1,000,000 of the deferred origination fees and $5,000,000 toward repayment of the Prepetition Term Loan), and (3) to make the Adequate Protection Payments; and (iii) to enter into and perform the DIP Term Loan Amendment when DIP Agent is able to obtain loan title insurance policies in form and substance acceptable to DIP Agent encumbering the Broad Street Mortgages (as defined in the Prepetition Credit Agreement) which title insurance shall be substantially identical to the title insurance policies currently in place with respect to the Prepetition Credit Agreement.  With respect to the DIP Revolver, the DIP Agent and DIP Lenders shall make an additional $10,000,000 available to the Debtors by reducing the existing Liquidity Reserve in the Borrowing Base from $15,000,000 to $5,000,000, with such $10,000,000 of additional Availability to be advanced or made available as follows:

(i)     the DIP Agent and DIP Lenders shall advance $5,500,000 in loan proceeds to the Debtors upon entry of this Interim Order;

(ii)     The DIP Agent and DIP Lenders shall advance $2,000,000 in loan proceeds to Debtors upon entry of the Final Order; and

(iii)     The DIP Agent will establish a new reserve on the Borrowing Base in an amount equal to $2,500,000 for the payment of allowed professional fees in these Chapter 11 Cases.

# 4173034  v. 7
35606314.6 07/12/2019

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and empowered to perform, and to cause any non-Debtor Guarantor to perform, all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the applicable DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in accordance with the terms of the DIP Documents and in such form as the Debtors, the DIP Agent and the DIP Lenders may agree, and no further approval of this Court shall be required for any amendment, waiver, consent or other modification to and under the DIP Documents (and any fees paid in connection therewith) that do not materially or adversely affect the Debtors or which do not (A) shorten the maturity of the DIP Revolving Facility, (B) increase the principal amount of, the rate of interest on, or fees payable in connection with, the DIP Facility, other than customary amendment or consent fees, or (C) change any Event of Default, add any covenants or amend or otherwise modify the covenants therein, in any such case to be materially more restrictive; provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and counsel to any statutory committee of unsecured creditors appointed in the Cases (the "Committee") two business days in advance of its effectiveness.

(iii)     the non-refundable payment to the DIP Agent and the DIP Lenders of the fees set forth in the applicable DIP Documents as described in the Motion; and

# 4173034  v. 7
35606314.6 07/12/2019

(iv)     the performance of all other acts required or that the Debtors determine to be advisable under or in connection with the DIP Documents.

(c)     Upon the execution thereof, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP Documents. No obligation, payment, transfer or grant of security by the Debtors under the DIP Documents or this Interim Order shall be voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim, provided, however, that (except with respect to amounts advanced hereunder prior to the entry of a Final Order) the roll-up with respect to the Prepetition Obligations provided for herein shall be subject to challenge prior to the entry of a Final Order.

(d)     The DIP Budget is hereby approved. The Debtors shall use the proceeds of the DIP Facility in accordance with the DIP Budget and as limited by the DIP Credit Agreement.

(e)     The Debtors shall maintain and comply with the existing cash management systems initially required and established pursuant to the Prepetition Credit Agreement, and incorporated into the DIP Credit Agreement in the same manner, including, without limitation, all provisions concerning the Lockbox, Lockbox Account and Payment Account (owned by DIP Agent). The Debtors will continue to deposit, sequester, and segregate all of the proceeds from the Debtors' Accounts and other DIP Collateral in the existing Lockbox as provided in the DIP Credit Agreement. All funds paid into the Lockbox shall be deposited into the related Lockbox Account, and then immediately transferred into the Payment Account. The DIP Agent shall be

17

entitled to apply all funds from the Payment Account as provided in the DIP Credit Agreement and this Interim Order. Without limiting the foregoing in any way, the Debtors immediately and continuously will direct their account debtors to send directly to the Lockbox all proceeds of Accounts of the Debtors.

(f)     As provided in the DIP Credit Agreement, DIP Agent is authorized to apply, on a daily basis, all funds transferred into the Payment Account from and after the commencement of the Cases to reduce, first, any Prepetition Revolving Loan and, second, the outstanding DIP Revolving Loans.

7.      <u>Superpriority Claims</u>.

(a)     Except to the extent expressly set forth in this Interim Order in respect of the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "<u>Superpriority Claims</u>") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 328, 330, 331, 503(b), 507(a) (other than 507(a)(l)), 507(b), 1113 or 1114 of the Bankruptcy Code;

(b)     For purposes hereof, the "<u>Carve-Out</u>" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code, (ii) up to $2,500,000 of allowed and unpaid fees, expenses and disbursements of professionals retained pursuant to Bankruptcy Code §§327 or 1103(a), by the Debtors and any statutory committees or other representative or professional

18

appointed in the Bankruptcy Cases (collectively, "Case Professionals"), incurred after the occurrence of a Carve-Out Event (defined below) plus all unpaid professional fees, expenses and disbursements allowed by this Court that were incurred prior to the occurrence of a Carve-Out Event (regardless of when such fees, expenses and disbursements become allowed by order of this Court). For the purposes hereof, a "Carve-Out Event" shall occur upon the occurrence and during the continuance of an Event of Default under the DIP Credit Agreement; provided, that, no Carve-Out Event shall be deemed to have occurred for purposes of this Interim Order if any such Event of Default is subsequently waived by the DIP Agent. The Carve-Out shall not be reduced or increased by any amount of any fees, expenses and disbursements paid prior to a Carve-Out Event to professionals retained by order of this Court, including amounts paid pursuant to the DIP Budget. Upon the occurrence of a Carve-Out Event, the right of the Debtors to pay professional fees incurred under clause (ii) above shall terminate (unless the underlying Event of Default giving rise to the Carve-Out Event is subsequently waived by the DIP Agent) and upon the occurrence of the Carve-Out Event, the Debtors shall provide immediate notice by facsimile and email to all Case Professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay Case Professionals is subject to and shall be payable from the Carve-Out; provided, that (A) up to $25,000.00 of the Carve-Out shall be available to pay any professional fees and expenses incurred by the Committee (and not by Debtors' professionals) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Agent, the Prepetition Lenders, the DIP Agent or the DIP Lenders, and (B) nothing in this Interim Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates. Except with respect to the Carve-Out, none of the DIP Agent or

# 4173034  v. 7
35606314.6 07/12/2019

DIP Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any professional person retained in the Cases incurred in connection with the Cases or any successor cases under the Bankruptcy Code, and nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agents or the DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any professional person retained in the Cases or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)    Prior to the occurrence of a Carve-Out Event, the Debtors shall wire transfer funds, on a weekly basis, to the Saul Ewing Arnstein & Lehr LLP Client Trust Account (to the extent of such funds actually deposited, the "Professional Fee Reserve Account") in the amount equal to, but not to exceed, the professional fees and costs set forth in the Budget for Case Professionals for each such week. From such funds held in the Professional Fee Reserve Account, Saul Ewing Arnstein & Lehr LLP ("Saul Ewing") shall release to the Case Professionals such amounts as are payable pursuant to an applicable order of this Court, including an order approving interim compensation procedures in the Chapter 11 Cases and any order granting interim or final fee applications for Case Professionals (each, a "Fee Order"). For avoidance of doubt, (a) in making payments from the Professional Fee Reserve Account, Saul Ewing shall be entitled to rely upon written certifications of each Case Professional as to the amount such Case Professional is due and owing from the Professional Fee Reserve Account; and (b) in no circumstances shall Saul Ewing be obligated to pay any Case Professional other than from the funds held, from time to time, in the Professional Fee Reserve Account. Funds held in the Professional Fee Reserve Account shall be applied to payable professional fees that have been incurred following the Petition Date in the manner set forth in this Interim Order and in accordance with the procedures established in the Cases. Any payment or reimbursement

# 4173034  v. 7
35606314.6 07/12/2019

made prior to the occurrence of a Carve-Out Event in respect of any professional fees shall not reduce the Carve-Out, and thereafter, all amounts payable to Case Professionals pursuant to an applicable order of this Court shall be paid first from funds remaining in the Professional Fee Reserve Account, if any, and, upon exhaustion thereof, from the Carve-Out as such fees are payable pursuant to a Fee Order.

8.      DIP Liens. As security for the DIP Obligations and as provided in the DIP Documents, DIP Agent, for itself and the benefit of the DIP Lenders, shall have and is hereby granted (effective as of the commencement of the Cases, and continuing without the necessity of the execution, filing and/or recordation of mortgages, security agreements, patent security agreements, trademarks security agreements, pledge agreements, financing statements or otherwise), valid and perfected first priority security interests and liens (the "DIP Liens") in all present and after-acquired personal and real property of the Debtors (the "DIP Collateral"), subject only to the Carve Out and any valid, duly perfected lien of any party to the extent such lien was senior to the Prepetition Liens as of the Petition Date.  Notwithstanding anything to the contrary contained herein or in the DIP Documents, neither the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders shall be granted any lien on any asset of any Borrower that is excluded from the definition of "Collateral" in the DIP Credit Agreement or on the HSRE Master Leases or any subleases thereunder, except for proceeds thereof.

Without limiting the foregoing, DIP Agent's first priority Lien on the Debtors' Accounts (and proceeds therefrom) shall be senior to any right of a holder of a claim, including without limitation, any mortgagee, Governmental Authority or landlord, that arose, or is deemed to arise, prior to the Petition Date. ("Governmental Authority," as used in this Order, means and includes any "governmental unit" as defined in Bankruptcy Code §101(27) and specifically includes,

# 4173034  v. 7
35606314.6 07/12/2019

without limitation, the federal and state agencies and their intermediaries administering the Medicare and Medicaid programs with which the Debtors deal).

Notwithstanding the foregoing or anything to the contrary herein or in the DIP Credit Agreement, no liens or superpriority claims granted to the DIP Agent or the DIP Lenders shall include or encumber those certain lockbox accounts established by Debtor St. Christopher's Healthcare, LLC at Capital One Bank, N.A. under the control of HSREP VI Holding, LLC and its affiliates pursuant to six (6) certain Deposit Account Control Agreements, as more fully described in the *Preliminary Response of HSREP VI Holdings, LLC to Certain First Day Motions and Reservation of Rights* [D.I. 54].  In addition, for the avoidance of doubt, no liens or superpriority claims granted to the DIP Agent or DIP Lenders shall include any actions arising under chapter 5 of the Bankruptcy Code.

Nothing in this Order shall affect, modify or impair any Governmental Authority's recoupment or setoff rights, claims, or defenses, and/or the priority of such recoupment and setoff rights, claims and defenses, *provided*, *however*, that prior to the exercise of any such setoff rights, any Governmental Authority must obtain relief from the Automatic Stay upon proper motion and notice in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Rules. Nothing contained in this Order should be construed to relieve the Debtors of any legal duties or obligations to any governmental unit under applicable non-bankruptcy laws and regulations. Nothing contained in this Order should be construed to affect the exclusive jurisdiction of the U.S. Department of Health & Human Services ("HHS") to adjudicate and pay Medicare claims in the ordinary course.

Moreover, nothing in this Order shall modify the accounts into which HHS and its component, the Centers for Medicare and Medicaid Services, provides reimbursement to the

# 4173034  v. 7
35606314.6 07/12/2019

Debtors as payment for services rendered under the Medicare program. Furthermore, custody and control over those deposit accounts will remain consistent with the applicable Medicare laws, regulations, and enrollment agreements, including, but not limited to, the Electronic Funds Transfer (EFT) Authorization Agreement (Form CMS-588).

9.     <u>The Cash Collateral</u>. Substantially all of the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with Prepetition Agent or any Prepetition Lender and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Agent's and Prepetition Lenders' Collateral and, therefore, are Cash Collateral of the Prepetition Agent and Prepetition Lenders, within the meaning of section 363(a) of the Bankruptcy Code and any cash proceeds of the disposition of any postpetition DIP Collateral, constitute proceeds of the DIP Agent's and DIP Collateral and, therefore, are Cash Collateral of the DIP Agent and DIP Lenders, within the meaning of section 363(a) of the Bankruptcy Code.

10.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.

(a)     The DIP Agent and DIP Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens. The Prepetition Agent and Prepetition Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the Adequate Protection Liens. Whether or not the DIP Agent or the Prepetition Agent chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection

23

of the DIP Liens or the Adequate Protection Liens, such DIP Liens and Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute, or subordination as of the date of entry of this Interim Order.  As set forth elsewhere herein, the roll-up of the Prepetition Obligations shall be subject to the entry of a Final Order.

(b)      A certified copy of this Interim Order may, in the discretion of the DIP Agent or Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(c)      The Debtors shall execute and deliver to the DIP Agent or Prepetition Agent, as applicable, all such agreements, financing statements, instruments and other documents as the applicable DIP Agent or Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and any Adequate Protection Liens. The Debtors shall cause each of the non-Debtor Guarantors to use commercially reasonable efforts to take such actions necessary to grant and perfect or otherwise reaffirm the perfection of the liens contemplated in the DIP Documents to be granted or so reaffirmed by such non-Debtor Guarantors.

11.      <u>Preservation of Rights Granted Under the Order</u>.

(a)      Unless all DIP Obligations shall have been indefeasibly paid in full in cash, it shall constitute an Event of Default under the DIP Credit Agreement and a termination of the right to use the Cash Collateral if any of the Debtors seeks, or if an order is entered converting or dismissing any of the Cases or there is entered, any modification of this Interim Order without

# 4173034  v. 7
35606314.6 07/12/2019

the prior written consent of the DIP Agent, and no such consent shall be implied by any action, inaction or acquiescence by the DIP Agent.

(b)     The DIP Agent and the DIP Lenders have acted in good faith in connection with this Interim Order, and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Agent and the DIP Lenders are entitled to the fullest extent to the protections provided in section 364(e) of the Bankruptcy Code.

(c)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the 507(b) claims and all other rights and remedies of the DIP Agent and the DIP Lenders granted by this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Cases, or (ii) the entry of an order confirming a plan of reorganization or liquidation in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Obligations, the Superpriority Claims, the 507(b) Claims, and the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the DIP Agent or DIP Lenders granted by this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash.

# 4173034  v. 7
35606314.6 07/12/2019

12.    <u>Effect of Stipulations on Third Parties</u>. The stipulations and admissions contained in this Interim Order, including without limitation, in paragraph 4 of this Interim Order, shall be binding upon all parties in interest (including any Committee) under all circumstances and for all purposes unless (a) any party in interest (including any Committee) that successfully seeks and obtains standing to do so has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including without limitation, in this paragraph 12) by no later than (i) in the case of a party in interest with requisite standing other than a Committee, seventy-five (75) days after entry of this Interim Order, or (ii) in the case of a Committee, sixty (60) days after the filing of notice of appointment of the Committee); *provided*, *however*, that if, prior to the end of the challenge period, the cases convert to chapter 7, or if a chapter 11 trustee is appointed, the trustee shall have the later of the remaining challenge period or 10 days. Notwithstanding the foregoing, the Debtors' stipulations in paragraph 4 of this Interim Order shall not be binding as against any parties other than the Debtors and their estates with respect to property and assets of non-Debtor parties and any liens, claims and encumbrances thereon.  Any chapter 7 or 11 trustee appointed or elected in these cases during the investigation period set forth in this paragraph shall, until the expiration of such periods provided herein for asserting lender claims and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to the investigation period (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, stipulations, releases and waivers of the Debtors in this Order.

# 4173034  v. 7
35606314.6 07/12/2019

13.     <u>Limitation on Use of DIP Loans, DIP Collateral and Prepetition Collateral</u>. The Debtors shall use the DIP Facility and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Interim Order and the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no DIP Facility, no DIP Collateral, no Prepetition Collateral (including the Cash Collateral) nor the Carve-Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Documents or the liens or claims granted under this Interim Order, the DIP Documents, the Prepetition Documents, (b) assert any claims, defenses or any other causes of action against the Prepetition Agent, the Prepetition Lenders, the DIP Agent, the DIP Lenders, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Interim Order, (d) seek to modify any of the rights granted to the DIP Agent or the DIP Lenders hereunder or under the DIP Documents or the Prepetition Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents. As long as any portion of the DIP Obligations or the Prepetition Obligations remains unpaid, or any of the DIP Documents or Prepetition Financing Documents remain in effect, the Debtors shall not request, and the Bankruptcy Court will not enter any Order approving or authorizing (under Bankruptcy Code §§105 or 364, or otherwise) (i) the granting of any lien or security interest in any of the DIP Collateral in favor of any party other than DIP Agent, or (ii) the obtaining of credit or the incurring of indebtedness that is entitled to super-priority

# 4173034  v. 7
35606314.6 07/12/2019

administrative status, in either case equal or superior to that granted to DIP Agent pursuant to this Interim Order, unless, in connection with any transaction cited in clause (i) or (ii) of this Paragraph, such request by the Debtors seeks to authorize and direct and such Order requires that the full amount of the Obligations and the Prepetition Obligations shall first be paid indefeasibly and in full.

14.     <u>Rights Upon Default</u>.  DIP Agent must serve written notice of the occurrence of an Event of Default upon the Debtors, the United States Trustee, the patient care ombudsman, the temporary manager of HUH, and any Committee appointed in these cases.  Prior to entry of a Final Order, and upon the occurrence of and during the continuance of an Event of Default, DIP Agent may, acting pursuant to the DIP Credit Agreement, and without further notice to or action by the Court, immediately cease making any DIP Revolving Loan to the Debtors, and charge a default rate of interest as provided in the DIP Credit Agreement.  Upon entry of a Final Order, and upon the occurrence and during the continuance of an Event of Default, DIP Agent may, acting pursuant to the DIP Credit Agreement, exercise its rights and remedies and take all or any of the following actions without further relief from the automatic stay pursuant to Bankruptcy Code §362(a) or any other applicable stay or injunction, or further order of or application to this Court: (a) cease making DIP Loans to the Debtors; (b) declare the principal and accrued interest, fees, and other liabilities constituting the Obligations to be immediately due and payable; (c) enforce its rights against any DIP Collateral, including taking possession thereof; (d) charge a default rate of interest as set forth in the DIP Credit Agreement; and (e) take any other action or exercise any other right or remedy permitted to DIP Agent under the DIP Documents, this Interim Order, or by operation of law. Notwithstanding modification of the stay, it shall not be terminated, and DIP Agent shall not complete the enforcement of its remedies, pending a final

# 4173034  v. 7
35606314.6 07/12/2019

stay relief hearing before this Court which DIP Agent may obtain as an emergency hearing upon five (5) business days' notice. At such hearing, the Debtors will have the limited right to challenge the occurrence of an Event of Default. Pending the outcome of the hearing, DIP Agent will refrain from completing enforcement of its remedies with respect to the DIP Collateral; *provided, however, that,* DIP Agent's rights to accelerate the Obligations and/or cease making DIP Loans shall not be delayed or otherwise limited and DIP Agent shall be entitled to take all actions which it considers, in good faith, to be necessary to protect against loss or diminution of its DIP Collateral.  Notwithstanding the foregoing, nothing herein shall affect the DIP Agent's and DIP Lenders' obligations with respect to funding the Carve-Out.

15.    <u>Waiver of Section 506</u>. Upon entry of a Final Order, and except as expressly provided in this paragraph, no Person will be permitted to surcharge the DIP Collateral under Bankruptcy Code §506(c) or to obtain a lien with respect to the DIP Collateral which is equal or senior to the Liens of DIP Agent on the DIP Collateral (other than with respect to the Prepetition Senior Liens as stated herein). Except as expressly provided in this paragraph, the prohibition on surcharging or priming of the liens of DIP Agent on the DIP Collateral will survive the termination of the DIP Credit Agreement such that no Person, including, but not limited to, Governmental Authorities, will be permitted to obtain a lien (through any means, including recoupment or setoff) which is equal or senior to the liens of DIP Agent on the DIP Collateral. Upon the termination of the DIP Credit Agreement, the Bankruptcy Court will retain jurisdiction over the DIP Collateral for the limited purpose of enforcing this paragraph. Subject to entry of the Final Order, the Debtors have waived and released, and are barred from asserting a claim under Bankruptcy Code §506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by DIP Agent upon, the DIP

# 4173034  v. 7
35606314.6 07/12/2019

Collateral. DIP Agent will not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral. Upon entry of this Interim Order, the post-petition Liens granted to DIP Agent on the DIP Collateral by virtue of this Interim Order and the DIP Credit Agreement will be (and hereby are) adjudicated as first, valid, and perfected as against all third parties, without regard to applicable federal, state, or local filing or recording statutes, *nunc pro tunc* as of the Petition Date, and without further action of any party, including DIP Agent; *provided*, that DIP Agent may, but need not, take such steps as it deems desirable and applicable to comply with such statutes, and all financing statements which are filed listing Debtors as debtor and DIP Agent as secured party, all mortgages or similar instruments which are filed granting to DIP Agent liens upon and security interests in DIP Collateral shall be deemed to have been filed and the security interest and liens evidenced thereby will be deemed perfected *nunc pro tunc* as of the Petition Date, and provided further that (except with respect to amounts advanced hereunder prior to the entry of a Final Order) the roll up of the Prepetition Obligations into DIP Loans shall be subject to challenge prior to the entry of a Final Order. To the extent DIP Agent determines to take such steps, Debtors are hereby authorized and directed to cooperate with DIP Agent, including execution of any documents reasonably request by DIP Agent.

16.    Term.    All Loans made available to the Debtors pursuant to this Interim Order will be due and payable, and the Revolving Loan Commitment (as defined in the DIP Credit Agreement) shall terminate, on the date that is thirty (30) days after the entry of this Interim Order, in the event that the Final Order is not entered by such date.

17.    Survival of the Order.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of

# 4173034  v. 7
35606314.6 07/12/2019

reorganization in the Bankruptcy Cases (and, to the extent not satisfied in full, the Obligations shall not be discharged by the entry of any such order, or pursuant to Bankruptcy Code §1141(d)(4), the Debtors having hereby waived such discharge); (b) converting any of the Bankruptcy Cases to a Chapter 7 case; or (c) dismissing any of the Bankruptcy Cases, and the terms and provisions of this Order as well as the Super-Priority Claims and Liens granted pursuant to this Order and the DIP Documents shall continue in full force and effect notwithstanding the entry of such order, and such Super-Priority Claims and Liens shall maintain their priority as provided by this Order until all of the Obligations are paid indefeasibly and in full.

18.     Plan.  Any plan of reorganization or liquidation filed by the Debtors (including, but not limited to, any amendment or modification of a plan of reorganization or liquidation, whether before or after confirmation) shall provide for payment and performance in full of all of the Obligations on the earlier of the effective date or thirty (30) days after confirmation of the plan of reorganization or liquidation. Nothing in the DIP Credit Agreement or this Interim Order shall be construed as a consent by DIP Agent, or an approval by DIP Agent, of the terms of any plan of reorganization or liquidation or any amendment or modification thereto.

19.     Provider Agreements.  As long as any portion of the Obligations remains unpaid, or any DIP Document remains in effect, absent DIP Agent's prior written consent, which shall not be unreasonably withheld, the Debtors shall not assume or reject, and no order shall be entered authorizing the Debtors to assume or reject, any material provider agreements between the Debtors and any revenue service provider, including, any governmental authority, Conifer Revenue Cycle Solutions, LLC and Tenet Business Services Corp.

# 4173034  v. 7
35606314.6 07/12/2019

20.    <u>Post-petition Assets</u>. Except as otherwise provided in this Interim Order, pursuant to Bankruptcy Code §552(a), all property acquired by the Debtors after the Petition Date, including, without limitation, all DIP Collateral pledged to DIP Agent pursuant to the DIP Credit Agreement and this Interim Order, is not and shall not be subject to a lien of any other entity resulting from any security agreement entered into by the Debtors prior to the Petition Date or otherwise, except only to the extent that such property constitutes proceeds of property of the Debtors existing on or before the Petition Date.

21.    <u>Appearance by DIP Agent</u>.  During the time while the DIP Obligations remain outstanding, and until the DIP Agent is indefeasibly paid in cash in  full pursuant to a final order, the DIP Agent shall be deemed to be a party-in-interest for all purposes in the Bankruptcy Cases with the right and opportunity to appear and be heard on all matters arising in the Cases, including, without limitation, (i) the employment and payment of professionals by the Debtors' estates, (ii) the sale of any estate property, (iii) any plan of reorganization or liquidation proposed in the Cases, and (iv) any proposed conversion or dismissal of any of the Bankruptcy Cases.

22.    <u>Insurance</u>. The DIP Agent is deemed to be the loss payee or lender loss payee under the Debtors' property insurance policies and shall act in that capacity and subject to the terms of the DIP Documents, distribute any proceeds recovered or received in respect of any such insurance policies, to the payment in full of the DIP Obligations.

23.    <u>Loss or Damage of DIP Collateral</u>. Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Agent or DIP Lenders of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as the DIP

# 4173034  v. 7
35606314.6 07/12/2019

Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any earner, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtors and any non-Debtor Guarantors.

24.    <u>Order Governs</u>.  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

25.    <u>Binding Effect; Successors and Assigns</u>. The provisions of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, any examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, and the Debtors and their respective successors and assigns; provided that, except to the extent expressly set forth in this Interim Order or the DIP Documents, the DIP Agent and the DIP Lenders shall have no obligation to permit the use of the DIP Facility or the Prepetition Collateral (including the Cash Collateral) or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

33

26.    <u>Limitation of Liability</u>.

(a)    In determining to make any loan or other extension of credit under the DIP Documents, permitting the use of the Prepetition Collateral (including the Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent and the DIP Lenders shall not (i) be deemed to be in "control" of the operations of the Debtors, (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*. as amended, or any similar federal or state statute).

(b)    Nothing in this Interim Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or the DIP Lenders of any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors, other than with respect to the Carve-Out.

27.    <u>Effectiveness</u>. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Interim Order.

28.    <u>Final Hearing Notice</u>. The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. The final hearing on the Motion shall be held on July 26,

34

2019 at 10:00 a.m. (Prevailing Eastern Time), and any objections or responses to the Motion shall be in writing, filed with the court, and served on: (a) counsel to the Debtors, Saul Ewing Arnstein & Lehr LLP, Attn: Mark Minuti, P.O. Box 1266, Wilmington, DE 19899, and by email at mark.minuti@saul.com; (b) counsel to the DIP Agent, Stradley Ronon Stevens & Young, LLP, Attn: Gretchen M. Santamour, 2005 Market Street, Suite 2600, Philadelphia, PA 19103, and by email at gsantamour@stradley.com; and (c) counsel to the Committee, if any, so as to be actually received on or before _____, 2019 at 4:00 p.m. (Prevailing Eastern Time).

3

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: July 12th, 2019**
**Wilmington, Delaware**