**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a ) | |
| HAHNEMANN UNIVERSITY HOSPITAL, ) | Case No. 19-11466 (KG) |
| *et al.*,[1] ) | |
| Debtors. ) | (Jointly Administered) |

**STATEMENT OF DREXEL UNIVERSITY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALE OF THE DEBTORS' RESIDENT PROGRAM ASSETS, INCLUDING APPROVING A BREAK-UP FEE, (B) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, (C) APPROVING FORM AND MANNER OF NOTICE RELATING THERETO, AND (D) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE; (II)(A) APPROVING THE SALE OF THE DEBTORS' RESIDENT PROGRAM ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (III) GRANTING RELATED RELIEF**

Drexel University ("Drexel"), by and through its undersigned counsel, hereby files this statement in support of the *Debtors' Motion for Entry of Orders (I)(A) Establishing Bidding Procedures Relating to the Sale of the Debtors' Resident Program Assets, Including Approving a Break-Up Fee, (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts, Including Notice of Proposed Cure Amounts, (C) Approving Form and Manner of Notice Relating Thereto, and (D) Scheduling a Hearing to Consider the Proposed Sale; (II)(A) Approving the Sale of the Debtors' Resident Program Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (B) Authorizing the*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatrics Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

*Assumption and Assignment of Certain Executory Contracts; and (III) Granting Related Relief* [Docket No. 142] (the "Sale Motion") and, in support hereof, respectfully states as follows:

## BACKGROUND

1. On July 1, 2019 (the "Petition Date"), Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("Hahnemann") and certain of its affiliates (collectively, the "Debtors"), including Philadelphia Academic Health System, LLC ("PAHS"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On the Petition Date, the Debtors also filed a number of first day motions with the Court, including the *Motion of the Debtors for Entry of Interim and Final Orders Pursuant to Sections 105(a), 363, and 1108 of the Bankruptcy Code (A) Authorizing the Debtors to Implement a Plan of Closure for Hahnemann University Hospital and (B) Scheduling a Final Hearing* [Docket No. 15] (the "Closure Motion").

3. On July 2, 2019, Drexel filed the *Limited Objection of Drexel University to Motion of the Debtors for Entry of Interim and Final Orders Pursuant to Sections 105(a), 363, and 1108 of the Bankruptcy Code (A) Authorizing the Debtors to Implement a Plan of Closure for Hahnemann University Hospital and (B) Scheduling a Final Hearing* [Docket No. 66] (the "Closure Objection"). Drexel objected to the Closure Motion based on, among other things, the transfer of the approximately 570 participants in Drexel's Residency Programs (the "Residents") upon the closure of Hahnemann. Specifically, Drexel expressed concerns regarding the harmful effects that an abrupt and disorderly closure of Hahnemann ("Closure") would have on the Residents, as well as patients, faculty, students, hospital staff, and the public.

4. On July 3, 2019, the Court entered an *Order* [Docket No. 101], requiring the Debtors to engage in regular discussions with Drexel, the City of Philadelphia and the Pennsylvania Department of Health prior to the hearing on interim approval of the Closure Motion.

5. Since the first day hearing held on July 2, 2019, Drexel and the Debtors have been communicating about the impact on the Residents of a closure of Hahnemann.

6. On July 9, 2019, the Debtors filed the Sale Motion seeking to establish bidding procedures and the scheduling of a hearing on the sale of the Debtors' assets relating to the Debtors' residents program, which include (a) national provider identifiers (general and psych) and Medicare provider number and agreement; (b) the Pennsylvania Department of Health license to operate an acute care hospital; and (c) Hahnemann's programs for training Residents (the "Residents Program Assets").  Pursuant to the Sale Motion, Tower Health will serve as the stalking horse bidder for the Residents Program Assets.

**STATEMENT IN SUPPORT**

7. As set forth in the Closure Objection, a primary concern of Drexel in connection with the closure plan submitted for approval in the Closure Motion was its apparent disregard for the fair and equitable treatment of the Residents and its lack of provision for their continued training.  Drexel has also been highly concerned with the impact that the loss of the Residents and of the resident programs (the "Programs") in which they participate could have on the region.  Indeed, Drexel has been the principal advocate for Residents in connection with Closure, both before this Court, and in pre-petition litigation brought against, among others, certain of the Debtors, in the Court of Common Pleas of Philadelphia County.

8. Drexel believes that the transaction (the "Transaction") described in the Sale Motion, and in the letter of intent attached thereto (the "LOI"), comprehensively addresses, in a

creative, positive, forward looking manner, Drexel's concerns regarding Resident treatment and the implications of that treatment for the broader community, in connection with the Closure. The Transaction incorporates the following provisions regarding Residents:

a. Tower Health "will become the principal training site" for substantially all of the current Programs. Sale Motion, ¶ 26; LOI, pp. 2-3. In connection therewith, Tower Health will endeavor to hire the faculty that currently teach such Programs. Sale Motion, ¶ 28; LOI, p. 1

b. **All** current Residents that want a position at a Tower Health hospital will be offered one, regardless of whether the Resident's Program in which they are participating is moved to Tower Health. Sale Motion, ¶ 28; LOI, p. 2. Residents that choose to come to Tower Health who must relocate during the current academic year will receive free housing "for the remainder of the academic year, or during the term of [the] Resident's existing vacated lease." Sale Motion, ¶ 28; LOI, p. 2.

c. **No** Resident will be compelled to train at a Tower Health facility, and may accept a position elsewhere. Tower Health or the Debtors, as applicable, will temporarily **release** the related cap on Medicare reimbursement for any Resident that wishes to complete such Resident's training elsewhere, which will maximize for such Resident the prospects of finding another opportunity.

d. Tower Health will assume all Medicare GME affiliation agreements, at least through the close of the current academic year, so that Residents at other locations under such agreements will not have their training disrupted. LOI, p. 5.

4

9. In sum, Residents are assured of a place at Tower Health to continue their training, or alternatively, they will have the option to go elsewhere if they so choose. If they do so choose, they will do so with the ability to have the Medicare funding associated with their residency positions follow them and be payable to the institution where they elect to continue training, for the duration of such training.

10. Those Residents that choose to continue their training at Tower Health have the prospect of continuity of their Programs, continuity with the academic faculty with whom they enjoy close, mentoring relationships, and continuity with their fellow resident cohort, a path that substantially minimizes the disruption attendant to the Closure, and preserves those key factors that made a residency at Hahnemann and under the educational supervision of Drexel University College of Medicine faculty attractive in the first instance. Simultaneously, the region greatly benefits both from the prospect of retaining a substantial number of Residents, many of whom will continue to practice medicine in the region following completion of their residency, and from the continued availability of the Programs within the region for future Residents.

11. The scale of the Closure of Hahnemann has presented unprecedented challenges to the community, employees, regulators, accreditation agencies, Drexel, and, of course, the faculty, students, and Residents. There is no perfect resolution to these challenges, but the Transaction offers to Residents and the other key constituencies affected by the Closure a path forward that best preserves and protects the interests of Residents and each other affected constituency.

**WHEREFORE,** Drexel University respectfully requests that the Court approve the Sale Motion and grant such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  July 15, 2019<br>          Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Tobey M. Daluz*<br>Tobey M. Daluz (No. 3939)<br>Chantelle D. McClamb (No. 5978)<br>BALLARD SPAHR LLP<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801<br>Tel: (302) 252-4465<br>Fax: (302) 252-4466<br>daluzt@ballardspahr.com<br>mcclambc@ballardspahr.com<br><br>            and<br><br>Vincent J. Marriott III, Esq.*<br>Ballard Spahr LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>Tel: (215) 665-8500<br>Fax: (215) 864-8999<br>marriott@ballardspahr.com<br><br>(*admitted pro hac vice)<br>*Counsel for Drexel University* |


# CERTIFICATE OF SERVICE

I, Tobey M. Daluz, Esquire, do hereby certify that, on this 15th day of July 2019, I caused a true and correct copy of the *Statement of Drexel University in Support of Debtors' Motion for Entry of Orders (I)(A) Establishing Bidding Procedures Relating to the Sale of the Debtors' Resident Program Assets, Including Approving a Break-Up Fee, (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts, Including Notice of Proposed Cure Amounts, (C) Approving Form and Manner of Notice Relating Thereto, and (D) Scheduling a Hearing to Consider the Proposed Sale; (II)(A) Approving the Sale of the Debtors' Resident Program Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts; and (III) Granting Related Relief*, to be served on the addresses on the attached list in the manner indicated thereon.

*/s/ Tobey M. Daluz*
Tobey M. Daluz

**VIA HAND DELIVERY**

Mark Minuti
Monique B. DiSabatino
Saul Ewing Arnstein & Lehr LLP
1201 N. Market St.
Wilmington, DE 19801

Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035

2

**VIA FIRST CLASS MAIL**

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum
Saul Ewing Arnstein & Lehr LLP
1500 Market St.
Philadelphia, PA 19102
*Counsel to the Debtor*