# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) ) ) | Case No. 19-11466 (KG) |
|  | ) | Joint Administration Requested |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**LIMITED OBJECTION OF THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF HEALTH TO THE DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALE OF THE DEBTORS' RESIDENT PROGRAM ASSETS, INCLUDING APPROVING A BREAK-UP FEE, (B) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, (C) APPROVING FORM AND MANNER OF NOTICE RELATING THERETO, AND (D) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE; (II)(A) APPROVING THE SALE OF THE DEBTORS' RESIDENT PROGRAM ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (III) GRANTING RELATED RELIEF [DOC NO. 142]**

The Commonwealth of Pennsylvania Department of Health (the "PA DOH"), by and through undersigned counsel, by way of the *Limited Objection of the Commonwealth of Pennsylvania Department of Health to the Debtors' Motion for Entry of Orders (I)(A)*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102

*Establishing Bidding Procedures Relating to the Sale of the Debtors' Resident Program Assets, Including Approving a Break-Up Fee, (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts, Including Notice of Proposed Cure Amounts, (C) Approving Form and Manner of Notice Relating Thereto, and (D) Scheduling a Hearing to Consider the Proposed Sale; (II)(A) Approving the Sale of the Debtors' Resident Program Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts; and (III) Granting Related Relief* [Doc. No. 142] (the "Sale Motion"], hereby states:

## BACKGROUND

1. On June 30, 2019 (the "Petition Date"), Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("CCH") and its affiliated debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware seeking relief under the provisions of Chapter 11 of the United States Bankruptcy Code.

2. On June 30, 2019, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders Pursuant to Sections 105(a), 363, and 1108 of the Bankruptcy Code (A) Authorizing the Debtors to Implement a Plan of Closure for Hahnemann University Hospital and (B) Scheduling a Final Hearing* [Doc. No. 15] (the "Closure Motion"), seeking, *inter alia*, approval of the Debtors' plan for the closing of Hahnemann University Hospital ("Hahnemann").

3. On July 1, 2019, the PA DOH filed an objection to the Closure Motion [Doc. No. 51], objecting to the relief sought by Debtors in the Closure Motion because, *inter alia*, the Debtors' proposed plan did not (i) include provisions requiring the PA DOH's approval of the closure plan, or (ii) account for the PA DOH's right to appoint a temporary manager, each as provided for under Pennsylvania law.

4. On July 3, 2019, a temporary manager was installed with the agreement of the Debtors. The Debtors have supplied the PA DOH with a revised closure plan which is under review.

5. On July 9, 2019, the Debtors filed the Sale Motion seeking, *inter alia*, entry of an order approving bidding procedures and establishing assumption and assignment procedures relating to the sale of the Debtors' Residents Program Assets (as defined in the Sale Motion) which include, among other assets, the PA DOH license to operate an acute care hospital (the "Hospital License").

6. As an interested party in these bankruptcy proceedings, the PA DOH's primary objectives are to ensure both an orderly closure of Hahnemann and to ensure that the Hahnemann residents are able to find appropriate programs to continue their education, within Pennsylvania if possible.

7. The Pennsylvania Health Care Facilities Act (the "Act") governs the Commonwealth's licensing of Pennsylvania health care facilities. 35 P.S. § 448.801—448.821.

8. Among other things, the Act provides for the establishment and enforcement of regulations regarding standards for the construction, maintenance, and operation of licensed hospitals within the Commonwealth of Pennsylvania (§ 448.801a), sets the standards for issuance of licenses with which health care providers must comply (§ 448.808), and grants the PA DOH the authority to implement and enforce regulations necessary to carry out the purposes of the Act (§ 448.803).

9. The purpose of the Act, *inter alia*, is "to protect and promote the public health and welfare through the establishment and enforcement of regulations setting minimum

standards in the construction, maintenance and operation of health care facilities." 35 P.S. § 448.801a.

10. Pursuant to 35 P.S. § 448.803, the PA DOH has the power and duty (i) "[t]o promulgate . . . the rules and regulations necessary to carry out the purposes and provisions" of the Act, and (ii) "[t]o assure that the provisions of [Chapter 8] and all rules and regulations promulgated under [Chapter 8] are enforced."

11. Section 448.806 of the Act requires all health care facilities within the Commonwealth to obtain a license from the PA DOH prior to providing medical services.

12. Section 448.808 details certain standards which any health care provide must meet to the satisfaction of the PA DOH before the PA DOH will issue a license.

13. Pursuant to 35 P.S. § 448.809(a)(2), all licenses issued by the PA DOH under the Act "shall . . . not be transferable except upon written approval of the [PA DOH]."

14. In addition, pursuant to its authority under the Act, the PA DOH has promulgated certain regulations in order to implement the powers and duties granted to it by the Act which are codified in Chapter 101 of Title 28 of the Pennsylvania Code.

15. Among other things, such regulations require that a hospital license be tied to a specific facility. Because a license can only be transferred with the prior written approval of the PA DOH, even where a specific facility is identified as a transferee, the new facility must submit an application to the PA DOH in order to obtain its approval. *See* 28 Pa. Code § 101.52.

16. Additionally, the regulations provide that a hospital license is automatically void when a hospital "substantially changes its name or location." 28 Pa. Code § 101.53.

17. As a result of the above-summarized statutory framework, implemented by the Commonwealth of Pennsylvania for the protection of the public health and welfare, the Debtors cannot sell, transfer or assign the Hospital License without the prior written approval of the PA DOH. Additionally, before the PA DOH can approve a transferee, the Debtors must identify a specific facility and the transferee must submit an application pursuant to PA DOH regulations. Further, to the extent the Debtors intend to abandon the "Hahnemann University Hospital" name, the current license will be automatically void under Pennsylvania law.

## **LIMITED OBJECTION**

18. The PA DOH hereby objects to the Sale Motion on the following grounds.

19. Pursuant to 11 U.S.C. §363(b)(1), "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."

20. However, Section 363 does not authorize the sale of property "contrary to restrictions imposed by state law." *Integrated Solutions v. Service Support Specialties*, 193 B.R. 722, 728-29 (D.N.J. 1996) (holding that although debtors' prepetition state tort claims became property of the bankruptcy estate, trustee was not permitted to sell the claims in light of state law prohibiting the assignment of pre-judgment personal injury and business claims).

21. In part, this is because of "the general principle that the trustee takes only those rights that the debtor had under state law." *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987) (holding that trustee could not transfer debtors' patronage margin certificates without approval of issuer pursuant to transfer restrictions imposed under Minnesota state law).

22. "The text and spirit of the bankruptcy provisions have not been held to preempt state laws limiting the alienability or present liquidation value of the assets, even though

5

those limitations may undermine the expeditions liquidation of the bankruptcy estate." *Integrated Solutions*, 193 B.R. at 729.

23. "Furthermore, courts have consistently held that the bankruptcy court does not have the power to interfere with state regulations exercised under the state's police powers." *In re United Healthcare System, Inc.*, 1997 U.S. Dist. LEXIS 5090, at *28 (D.N.J. March 26, 1997).

24. In *In re Draughon Training Institute, Inc.*, the debtors-in-possession, operators of a number of proprietary schools, sought the bankruptcy court's approval, pursuant to Section 363(b)(1), of the debtors' sale of its schools, including certain licenses and certifications issued by the U.S. Department of Education and the Texas Education Agency (the "TEA").119 B.R. 927, 929 (Bankr. W.D. La. 1990). The Debtors requested that the court order the relevant government agencies to approve the transfer of the licenses and certifications, including the Certificate of Approval issued by the TEA, to the non-debtor purchaser despite transfer restrictions imposed by state and federal non-bankruptcy law. *Id.*

25. The court determined that because the transfer of the licenses and certifications was restricted by non-bankruptcy law, the court did not have the authority to order their transfer in derogation of otherwise applicable non-bankruptcy law. *Id.* ("The jurisprudence on this issue holds that non-bankruptcy related transfer restrictions burdening property will be given effect when property is sold out of the estate to a non-debtor third party.").

26. Similarly, in *Wilner Wood Prods., Co. v. State of Me., Dep't of Envtl. Protection*, 128 B.R. 1, 1-2 (D. Me. 1991), prior to filing for bankruptcy the debtor had applied to renew its air emissions license from the Maine Department of Environmental Protection (the "ME DEP"). As a result of its financial situation, the debtor was unable to comply with certain

state law requirements and the ME DEP denied its license renewal. *Id.* at 2-3. The bankruptcy court enjoined the ME DEP from denying the renewal, but on appeal the district court reversed finding that the ME DEP's oversight of air emissions plainly fell within its police or regulatory power and thus the bankruptcy court did not have authority to interfere with the ME DEP's licensing determination. *Id.* at 3; *see also In re Yellow Cab*, 132 F.3d 591, 599 (10th Cir. 1997) (holding that bankruptcy court did not have authority under Sections 362 or 105 of the Bankruptcy Code to enjoin public utilities commission's restriction on the transfer of debtor's taxi licenses because the action of the commission fell within commission's regulatory or police power); *In re Nejberger*, 934 F.2d 1300, 1303-04 (holding that by ordering liquor control board to issue new liquor license to debtor, bankruptcy court improperly interfered with liquor control board's discretionary power to consider license renewal).

27. Accordingly, any right the Debtors have to sell or transfer the Hospital License under Section 363(b)(1) of the Bankruptcy Code remains subject to the restrictions on transfer imposed by Pennsylvania law, including the Debtors' obligation to obtain the prior written approval from the PA DOH prior to any transfer of the Hospital License which requires that a specific facility be identified prior to any transfer and that the transferee first submit an application for approval by the PA DOH.

28. Further, the authority granted to the PA DOH by the Pennsylvania Health Care Facilities Act to oversee the operation and licensing of Pennsylvania hospitals is intended to protect the public health and welfare. Thus, such authority is plainly exercised pursuant to the PA DOH's governmental regulatory and/or police powers.

29. Accordingly, the PA DOH objects to the relief requested by the Sale Motion because the Debtors' proposed sale and bidding procedures do not provide that the sale

of the Hospital License remains subject to the PA DOH's prior written approval, which will also require that a specific facility be identified for the transfer of the license and that the transferee first submit an application to the PA DOH prior to obtaining the necessary approval. Finally, the bidding procedures do not account for the additional impediment that the existing will become automatically void if the Debtors cease to use the Hahnemann name.

30. The PA DOH expressly reserves the right to supplement this Limited Objection prior to any hearing before this Court to consider approval of the sale of the Residents Program Assets.

31. WHEREFORE, the PA DOH respectfully requests that the Court deny the Motion for the reasons stated herein.

Dated:  July 15, 2019

By:  /s/ Daniel M. Pereira
Richard A. Barkasy (#4683)
Daniel M. Pereira (#6450)
SCHNADER HARRISON SEGAL & LEWIS LLP
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 888-4554
Facsimile:  (302) 888-1696
rbarkasy@schnader.com
dpereira@schnader.com

-and-

David Smith (*pro hac vice* pending)
Nicholas J. LePore, III (*pro hac vice* pending)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205
dsmith@schnader.com
nlepore@schnader.com

*Counsel for the Commonwealth of Pennsylvania Department of Health*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2019, I caused a copy of the foregoing to be sent via ECF Noticing to all parties receiving ECF Notices in this Chapter 11 case and on the following via electronic mail:

Mark Minuti
Monique B. DiSabatino
Saul Ewing Arnstein & Lehr LLP
1201 N. Market Street
Wilmington, DE 19801
Mark.minuti@saul.com
Monique.disabatino@saul.com

Benjamin Hackman
Office of the United States Trustee
J. Caleb Boggs Federal Building 844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035
Benjamin.a.hackman@usdoj.gov

/s/ Daniel M. Pereira
Daniel M. Pereira, Esq. (#6450)