**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) Jointly Administered |
| | ) **Hearing Date: August 16, 2019 at 10:00 a.m. (EST)** |
| Debtors. | ) **Objection Deadline: July 31, 2019 at 4:00 p.m. (EST)** |

**DEBTORS' APPLICATION FOR THE ENTRY OF AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF
SAUL EWING ARNSTEIN & LEHR LLP AS COUNSEL TO
THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through their proposed undersigned counsel, hereby file this application (the "**Application**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing the retention and employment of Saul Ewing Arnstein & Lehr LLP ("**SEAL**" or the "**Firm**") as counsel to the Debtors, *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Debtors rely on the Declaration of Monique DiSabatino, Esquire (the "**DiSabatino Declaration**"), a copy of which is attached hereto as **Exhibit B**, and the Declaration of Allen

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

35382818.2 07/17/2019

Wilen (the "**Wilen Declaration**"), a copy of which is attached hereto as **Exhibit C**, and respectfully represent as follows:

## Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 2014-1.

## Background

4. On June 30, 2019 and July 1, 2019 (the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases. On July 15, 2019, the Office of the United States Trustee

appointed the Official Committee of Unsecured Creditors of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al*. (the "**Committee**").

5.      A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2] (the "**First Day Declaration**"), which is incorporated by reference herein.

### Relief Requested

6.      By this Application, the Debtors respectfully request the entry of an Order, substantially in the form of the Proposed Order, authorizing the Debtors to employ and retain SEAL as bankruptcy counsel to the Debtors, *nunc pro tunc* to the Petition Date.

### Basis for Relief Requested

**I.      SEAL's Qualifications**

7.      The Debtors seek to retain SEAL as their bankruptcy counsel because of the Firm's extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. The Debtors believe that SEAL's expertise and experience in practicing before the Court will enable the Firm to work in an efficient and cost-effective manner on behalf of the Debtors' estates. Additionally, in preparing for these chapter 11 cases, SEAL has become familiar with the Debtors' businesses and many of the potential legal issues that may arise in connection with these chapter 11 cases. Accordingly, the Debtors believe that SEAL is well-qualified to represent them as bankruptcy counsel in these chapter 11 cases.

**Services to Be Performed**

8.  The professional services that SEAL will render to the Debtors in these chapter 11 cases will include, but shall not be limited to, the following:

    a.  providing legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their businesses and management of their properties;

    b.  preparing and pursuing confirmation of a plan and approval of a disclosure statement;

    c.  preparing, on behalf of the Debtors, necessary applications, motions, answers, orders, reports, and other legal papers;

    d.  appearing in Court and protecting the interests of the Debtors before the Court;

    e.  providing assistance, advice and representation concerning any investigation of the assets, liabilities and financial condition of the Debtors that may be required under local, state or federal law or orders of this or any other court of competent jurisdiction;

    f.  providing counseling and representation with respect to the closure of Hahnemann University Hospital, the assumption or rejection of executory contracts and leases, sales of assets and other bankruptcy-related matters arising from these chapter 11 cases; and

    g.  performing all other services assigned by the Debtors to SEAL as counsel to the Debtors, and to the extent the Firm determines that such services fall outside of the scope of services historically or generally performed by SEAL as counsel in a bankruptcy proceeding, SEAL will file a supplemental declaration pursuant to Bankruptcy Rule 2014.

9.  By separate application or motion, the Debtors have requested, or will request, Court approval of the retentions of: (i) EisnerAmper LLP to provide a chief restructuring officer, an interim system chief executive officer and related services; (ii) SSG Advisors LLP as investment banker; (iii) Omni Management Group as claims and noticing agent and administrative advisor; and (iv) Klehr Harrison Harvey and Branzburg LLP as special counsel to

the Debtors ("**Klehr Harrison**").  In addition, the Debtors also may file motions or applications to employ additional professionals.

10. These professionals work, and will continue to work, under the direction of the Debtors' management.  The Debtors' management is committed to minimizing duplication of services to reduce professional costs.  The Debtors further understand that SEAL is prepared to work closely with each professional to ensure that there is no unnecessary duplication of effort or cost.  In particular, there should be no duplication of effort undertaken by SEAL and Klehr Harrison.  Given SEAL's representation of Drexel University d/b/a Drexel University College of Medicine ("**Drexel**") in other matters, and in order to avoid any potential conflict of interest, SEAL will not be partaking in any legal matters or issues in which the Debtors are adverse to Drexel.  Instead, subject to Court approval, Klehr Harrison will be retained by the Debtors to provide advice and other assistance in matters adverse to Drexel.

**Terms of Retention**

11. The terms of SEAL's employment provide generally that certain attorneys and other personnel within the Firm will undertake this representation at their standard hourly rates, and that SEAL will be reimbursed for reasonable and necessary expenses, subject to the approval of the Court in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and other applicable orders of this Court.

12. The present hourly rates for attorneys and paralegals of the Firm are set forth in the DiSabatino Declaration attached hereto.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and to reflect increased expertise and experience in one's area of law.  In addition, pursuant to the Engagement Agreement, SEAL has agreed to a discount on its invoices equal to 10% of the fees included in each invoice.

13. SEAL will also seek reimbursement for reasonable and necessary expenses incurred, which may include, among other things, travel expenses, work-related meals, telephone and facsimile (outgoing only), tolls and other charges, mail and express or overnight mail charges, special or hand delivery charges, document processing, photocopying (not to exceed $0.10 per page), scanning and printing charges, vendor charges, computerized research, transcription costs, filing fees, non-ordinary overhead expenses (which shall *not* include secretarial or other overtime) and other out-of-pocket expenses incurred in providing professional services to the Debtors. SEAL will charge for these expenses in a manner and at rates consistent with charges made generally to its other clients.

14. As noted above, SEAL will file fee applications with the Court, and be paid in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court. SEAL also intends to make a reasonable effort to comply with the UST's requests for information and additional disclosures, as set forth in the *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under United States Code by Attorneys in Larger Chapter 11 Cases* (the "**UST Guidelines**").

15. SEAL was retained by the Debtors pursuant to an engagement letter dated April 17, 2019 (the "**Engagement Agreement**"). In accordance with the Initial Engagement Agreement, on April 23, 2019, SEAL received a retainer in the amount of $60,000 (as replenished, the "**Retainer**") in connection with advising the Debtors regarding restructuring options. On May 7, 2019, June 6, 2019 and June 21, 2019, SEAL received additional Retainers in the amounts of $50,000, $60,000 and $20,000, respectively. On June 17, 2019, SEAL drew down on the Retainer balance in the amount of $28,525.75.

16.     On June 28, 2019, the Debtors provided SEAL with an additional Retainer of $600,000 in connection with the preparation and filing of these Chapter 11 Cases. Prior to the Petition Date, on June 28, 2019, SEAL applied $417,527.40 of the Retainer to cover fees and expenses incurred, as well as chapter 11 filing fees. The remainder of the Retainer, in the amount of $343,946.85, will constitute an advance security retainer to be applied against SEAL's allowed fees and expenses, except as permitted by the Court.

17.     As set forth in the DiSabatino Declaration, SEAL has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

### SEAL's Disinterestedness

18.     The standard for a debtor in possession to employ attorneys as general bankruptcy counsel is set forth in sections 327(a) and 1107 of the Bankruptcy Code, as interpreted by the Third Circuit. Those sections provide that a debtor in possession, with the court's approval, may employ attorneys "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; *see also In re BH&P, Inc.*, 949 F.2d 1300, 1314 (3d Cir. 1991). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. 11 U.S.C. § 101(14)(e).

19.     As described in detail in the attached DiSabatino Declaration, SEAL has conducted a search of its conflict database with respect to the Debtors and a list of parties in interest and potential parties in interest in these chapter 11 cases. The scope of that conflicts search is set out on **Exhibit 1** to the DiSabatino Declaration and the results of the conflicts search are set forth on **Exhibit 2** to the DiSabatino Declaration. Based on the results of the

7

conflicts search, SEAL has informed the Debtors that, except as may be set forth in the DiSabatino Declaration, SEAL (a) does not hold or represent any interest adverse to the Debtors' estates, and (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

20. SEAL has also informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, SEAL will supplement its disclosure to the Court.

21. For the reasons set forth above, the Debtors submit that SEAL's employment is necessary and in the best interests of the Debtors and their estates.

### *Nunc Pro Tunc* Approval

22. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986). The complexity and speed that have characterized these chapter 11 cases have necessitated that the Debtors, SEAL and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to these chapter 11 cases, pending submission and approval of this Application. Upon information and belief, no party-in-interest would be prejudiced by the granting of the relief requested herein on a *nunc pro tunc* basis.

### Notice

23. The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United

States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## No Prior Request

24. No prior application for the relief requested herein has been made to this or any other court.

*[remainder of page left intentionally blank]*

WHEREFORE, the Debtors respectfully request the entry of an order: (i) authorizing and approving the employment and retention of SEAL as counsel to the Debtors, *nunc pro tunc* to the Petition Date; and (ii) granting such other and further relief as the Court deems appropriate.

Dated: July 17, 2019

Philadelphia Academic Health System, LLC
(for itself and on behalf of its affiliates
Debtors as debtors and debtors in
possession)

By: */s/ Allen Wilen*_____
Name: Allen Wilen
Title: Chief Restructuring Officer