**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 )  |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) ) ) Jointly Administered |
| Debtors. | ) Hearing Date: August 16, 2019 at 10:00 a.m. (ET) ) Objection Deadline: July 31, 2019 at 4:00 p.m. (ET |

**MOTION OF THE DEBTORS FOR THE ENTRY OF AN ORDER AUTHORIZING (I) RETENTION AND EMPLOYMENT OF EISNERAMPER LLP TO PROVIDE INTERIM MANAGEMENT SERVICES, A CHIEF RESTRUCTURING OFFICER, AN INTERIM SYSTEM CEO AND ADDITIONAL PERSONNEL, AND (II) THE DESIGNATIONS OF ALLEN WILEN AS CHIEF RESTRUCTURING OFFICER AND RONALD DRESKIN AS INTERIM SYSTEM CHIEF EXECUTIVE OFFICER TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (the "**Debtors**"), by and through their undersigned proposed counsel, hereby file this motion (the "**Motion**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), (i) authorizing the retention and employment of EisnerAmper LLP ("**EisnerAmper**") to provide interim management services, a chief restructuring officer (a "**CRO**"), an interim system chief executive officer (an "**Interim CEO**") and additional personnel, as set forth in the Engagement Letter dated March 27, 2019,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

-2-

the Master Agreement and accompanying Engagement Letters dated April 22, 2019, as well as the First Amendment to Master Agreement dated June 27, 2019, copies of which are attached hereto as **Exhibit B** (together, the "**Engagement Letters**"),[1] *nunc pro tunc* to the Petition Date (as defined below), and (ii) approving the designations of Allen Wilen as CRO and Ronald Dreskin as Interim CEO to the Debtors. In support of this Motion, the Debtors rely on the *Declaration of Allen Wilen in Support of the Motion of the Debtors for the Entry of an Order Authorizing (I) Retention and Employment of EisnerAmper LLP to Provide Interim Management Services, a Chief Restructuring Officer, an Interim System CEO and Additional Personnel, and (ii) the Designations of Allen Wilen as Chief Restructuring Offer and Ronald Dreskin as Interim System Chief Executive Officer to the Debtors, Nunc Pro Tunc, to the Petition Date*, a copy of which is attached hereto as **Exhibit C** (the "**Wilen Declaration**"), and respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Engagement Letters.

2. The statutory bases for the relief requested herein are sections 105 and 363(b) of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 2016-2.

## BACKGROUND

3. On June 30, 2019 and July 1, 2019 (the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases. On July 15, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Center City Healthcare d/b/a Hahnemann University Hospital, *et al.* (the "**Committee**").

4. A description of the Debtors' businesses, capital structure, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2] (the "**First Day Declaration**").

## RELIEF REQUESTED

5. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek the entry of an Order (i) authorizing the employment and retention of EisnerAmper to provide interim management services, a CRO, an Interim CEO and additional personnel, and (ii) approving the designations of Allen Wilen as CRO and Ronald Dreskin as Interim System CEO in the Chapter 11 Cases, *nunc pro tunc* to the Petition Date, pursuant to the terms and conditions of the Engagement Letters.

## THE RETENTION OF EISNERAMPER

**A.     EisnerAmper's Qualifications**

6.      EisnerAmper is one of the country's premier mid-market accounting firms.  It has a nationally recognized turnaround and crisis management practice.  It is well respected for providing interim turnaround management to stabilize companies in crisis, has extensive experience working with troubled healthcare service providers and multi-hospital systems in complex acquisitions and transactions, and has provided interim turnaround management services to numerous debtors-in-possession and official committees in bankruptcy proceedings.  EisnerAmper is thus well qualified to provide the CRO Services and the Healthcare Consulting Services to the Debtors in these Chapter 11 Cases.

7.      Allen Wilen is a Partner of EisnerAmper and serves as the National Director of the Financial Advisory Services Group.  Mr. Wilen has more than twenty-five years of financial and accounting experience, as well as extensive experience advising insolvent and troubled healthcare entities in turnaround and crisis situations and navigating such companies through turnaround, sale and liquidation processes.  He has frequently been involved in complex matters requiring expertise in forensic accounting and operational analysis and has been qualified as an expert in numerous state and federal courts throughout the United States, including the district of Delaware.

8.      Ronald Dreskin is the Principal-in-Charge of EisnerAmper's Health Care Services Group.  Mr. Dreskin has over 30 years of experience in the field, specializes in healthcare transactions, and provides strategic and operations support services to multi-hospital systems, physician groups and faculty practices, ancillary providers (such as surgery centers and imaging centers), as well as entrepreneurial ventures.

9. EisnerAmper's professionals have developed extensive experience in matters involving complex financial restructurings. Specifically, EisnerAmper has served as financial advisor or interim management for debtors and other parties in a large number of bankruptcy cases in the Third Circuit, including several healthcare cases, such as: *In re Saint Michael's Med. Ctr., Inc.*, 15-24999 (VFP) (Bankr. D.N.J. Sept. 11, 2015); *In re KidsPeace Corp.*, Case No. 13-14508 (REF) (Bankr. E.D. Pa. June 17, 2013); *In re 710 Long Ridge Road Operating Co. II, LLC*, Case No. 13-13653 (DHS) (Bankr. D.N.J. Mar. 26, 2013); *In re St. Mary's Hospital, Passaic, N.J.*, Case no. 09-15619 (MS) (Bankr. D.N.J. Apr. 21, 2009); *In re Bayonne Med. Ctr.*, Case No. 07-15195 (MS) (Bankr. D.N.J. June 14, 2007).

10. As set forth in the Declaration, EisnerAmper was engaged by the Debtors beginning in March 2019, to provide the CRO Services and Healthcare Consulting Services to the Debtors pursuant to the Engagement Letters. As a result, EisnerAmper has become, and will continue to become, intimately familiar with the Debtors' corporate and capital structure, management, operations, and various other aspects of their businesses. EisnerAmper has developed a significant amount of institutional knowledge regarding the Debtors' operations, finances and systems. Furthermore, Mr. Wilen and Mr. Dreskin have taken an active role in spearheading the Debtors' restructuring efforts and their efforts to prepare for their chapter 11 filings, including participating in the negotiations concerning the Debtors' postpetition financing, closure planning, and communicating with the Debtors' various constituencies. On the basis of this experience and knowledge, the Debtors believe that EisnerAmper is uniquely positioned and well-qualified to perform these services and represent the Debtors' interests in these Chapter 11 Cases.

**B.     Services to Be Provided**

11.    Subject to Court approval of this Motion and consistent with the terms of the Engagement Letters,[2] EisnerAmper will provide such turnaround management services as EisnerAmper and the Debtors deem appropriate, including, but not limited to, the following:

CRO Services:

   a. Provide certain consulting services to the Debtors to assist with the financial restructuring of the Debtors.  EisnerAmper will provide the services of Allen Wilen to serve as the CRO;

   b. Develop a range of transaction alternatives, including divestitures, restructuring, adjustments to business model (e.g., closure of Hahnemann), and both judicial and non-judicial reorganization options;

   c. Negotiate on behalf of the Debtors, and at an arms-length basis, terms of agreements between the Debtors and its parent entities, including but not limited to: (i) vendor contracts; (ii) licensing and sales agreements, as applicable; (iii) debtor-in-possession and/or other financing arrangements; (iv) lead communications with key constituents; (v) with the assistance of on-site personnel, cash preservation, including maintenance of a 13-week rolling cash flow statement and vendor management; and (vi) other intercompany agreements and obligations.

   d. Assist the Debtors in contingency planning including the evaluation, planning and execution of a potential chapter 11 filing;

   e. Assist the Debtors and its other advisors with the formulation of a chapter 11 plan of reorganization, liquidation and the preparation of the corresponding disclosure statement;

   f. Advise and assist the Debtors in the assembly and preparation of financial information, statements, schedules, budgets and monthly operating reports necessary due to requirements of the Bankruptcy Court and/or Office of the U.S. Trustee;

   g. Assist the Debtors in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes;

---

[2]    The summary set forth herein is qualified in its entirety by the terms of the Engagement Letters, and the terms of the Engagement Letters shall control in the event of a conflict. Capitalized terms not otherwise defined in this section shall have the meaning ascribed to them in the Engagement Letters.

-6-

h. Assist Debtors' personnel with the communications and negotiations, at Debtors' request and under Debtors' guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest;

i. Assist in the preparation of weekly and monthly reporting in accordance with the debtor-in-possession credit facility and/or other financing arrangements; and

j. Assist with such other accounting and financial services as requested by the Debtors and which are not duplicative of services provided by other professionals.

Healthcare Consulting Services:

a. Provide the services of Ronald Dreskin to serve as Interim CEO;

b. Advise the President on matters relating to the day-to-day operations, as well as advise and make recommendations to the President with respect to strategic planning pertaining to the restructuring of the Debtors;

c. Provide advice and recommendations to the Board with respect to day-to-day operations and strategic planning pertaining to the restructuring of the Debtors. In particular, the Interim CEO will advise the Board with respect to efficiencies and strategic development initiatives, including:

  i. Advising the Board with respect to the quality of patient care;

  ii. Advising on a closure plan for HUH;

  iii. Recommending and following operational standards;

  iv. Advising the Board with respect to and overseeing the day-to-day performance of the Company's senior executives and key personnel;

  v. Identifying and assisting with the implementation of certain business initiatives to improve operational performance;

  vi. Advising the Board with respect to the hiring and training of staff;

  vii. Advising the Board with respect to the implementation of clinical procedure and policy; and

  viii. Advising the Board with respect to compliance with State, Federal and CMS regulations as well as hospital policies.

    d. Provide a part-time Director of Finance for the Debtors' practice groups focused on improving the financial management processes in place, including on site management and participation in all financial related matters, development of routine reporting tools and metrics, providing advice regarding cash flow initiatives and financial decisions, and assisting with the preparation and presentation of operating and capital budgets and financial forecasting.[3]

Support Services

    a. As described further in the Engagement Letters, supplemental EisnerAmper personnel will perform Support Services, including analytical support, design and building of reporting tools, supply chain management and revenue cycle management services, and an assessment of profit improvement plans.

12. The Debtors require qualified professionals to render these essential professional services in these cases. As noted above, EisnerAmper has substantial expertise in all areas for which it is proposed to be retained. Accordingly, the Debtors submit that EisnerAmper is well qualified and best suited to perform these services and to assist the Debtors in the Chapter 11 Cases.

13. All of the services that EisnerAmper will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in the Chapter 11 Cases. EisnerAmper will also use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

**C.     Professional Compensation**

14. Subject to this Court's approval and as set forth in the Engagement Letters,[4] the Debtors and EisnerAmper have agreed to the following compensation and expense structure (the

---

[3] The Director of Finance's projects ceased post-petition, on July 14, 2019.

[4] The summary set forth herein is qualified in its entirety by the terms of the Engagement Letters, and the terms of the Engagement Letters shall control in the event of a conflict. Capitalized terms not otherwise defined in this section shall have the meaning ascribed to them in the Engagement Letters.

"**Fee and Expense Structure**") in consideration for the services to be rendered by EisnerAmper in the Chapter 11 Cases:

> a. EisnerAmper will bill the Debtors $92,250 on a weekly basis for fees incurred in connection with the Healthcare Consulting Services and the Financial Restructuring Services, plus reasonable out-of-pocket expenses incurred.
>
> b. Fees for Director of Finance and Support Services will be billed at a discounted hourly rate of $315, and EisnerAmper is authorized to bill up to 110 hours for Support Services per week.

15. Because EisnerAmper is not being employed as a professional under section 327 of the Bankruptcy Code, EisnerAmper is not required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, EisnerAmper shall submit invoices to the Debtors within ten (10) days from the end of each month. In addition, EisnerAmper will file with the Court and serve on the United States Trustee and counsel for any official committee appointed in the Chapter 11 Cases (collectively, the "**Notice Parties**") a summary fee statement covering work performed for the previous month, which will include the names of and tasks fulfilled by the CRO, the Interim CEO and any additional personnel involved in the Chapter 11 Cases, and which will itemize any expenses incurred for the relevant period (the "**Fee Statement**").

16. The Notice Parties shall have ten (10) days after the date each Staffing Report is served on the Notice Parties to object to such Staffing Report. The Fee Statement, EisnerAmper's staffing decisions, and all compensation identified in the Fee Statement will be subject to review by the Court in the event an objection is filed. Absent any objections, 100% of EisnerAmper's invoices shall be payable after 10 business days of the filing of the Fee Statement.

17. As provided for in the Engagement Agreement, EisnerAmper received $150,000 in advance of the Petition Date to be applied to its professional fees, charges and disbursements for the Engagement (the "**Cash on Account**"). After applying the Cash on Account to unpaid pre-filing fees, charges and disbursements, there is a balance of $36,684 which will be applied to EisnerAmper's final invoice.

18. The Fee and Expense Structure described above is comparable to compensation for turnaround management services, both in and out of court. The Fee and Expense Structure is also consistent with EisnerAmper's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined. EisnerAmper and the Debtors also believe that the Fee and Expense Structure is reasonable and at favorable market rates.

**D.     Indemnification**

19. The Engagement Letters further provide that the Debtors will indemnify and hold harmless EisnerAmper and its members, partners, officers, agents, employees, and affiliates (each, an "**Indemnified Party**," and collectively, the "**Indemnified Persons**"), from and against any and all losses, claims, judgments, liabilities, costs, damages, and expenses, including reasonable attorneys' fees that EisnerAmper may incur, arising out of any services provided by EisnerAmper to the Debtors pursuant to the Engagement Letters, other than those resulting from EisnerAmper's gross negligence or willful misconduct (such obligations being referred to as the "**Indemnification Provisions**"), which provisions are set forth in greater detail in the Engagement Letters.

20. The Indemnification Provisions are standard indemnification terms, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on such terms

that are customary for EisnerAmper and other similar interim turnaround management as approved in this and other jurisdictions. The Indemnification Provisions were fully negotiated between the Debtors and EisnerAmper at arm's length and the Debtors respectfully submit that the Indemnification Provisions are reasonable and in the best interests of the Debtors, their estates, and creditors. Accordingly, as part of this Motion, the Debtors request that this Court approve the Indemnification Provisions, as modified by the Proposed Order.

### E.  EisnerAmper's Disinterestedness

21.     To the best of the Debtors' knowledge, and except as disclosed in the Wilen Declaration: (i) EisnerAmper is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent any interest adverse to the Debtors' estates; and (ii) EisnerAmper has no connection to the Debtors, their creditors or related parties, except as may be disclosed in the Wilen Declaration.

22.     EisnerAmper will review its files against any updated Potential Interested Parties List (as defined in the Wilen Declaration) received from the Debtors from time to time during the pendency of the Chapter 11 Cases pursuant to the procedures described in the Wilen Declaration. If any new relevant facts or relationships are discovered or arise in such review, EisnerAmper will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration where appropriate.

23.     EisnerAmper has agreed to waive any claim for any outstanding pre-petition fees or services. As such, EisnerAmper is not a creditor of the Debtors' bankruptcy estates as of the Petition Date.

**BASIS FOR RELIEF**

24. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law in this and other circuits, courts will approve a debtor's proposed use of assets under section 363(b) if it represents a sound business purpose on the part of the debtor. *See*, *e.g.*, *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a business judgment test."); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (explaining that courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b) when there is a legitimate business justification); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (stating that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

25. Under the business judgment rule, a court will not interfere with the judgment of a board of directors unless there is a showing of "gross and palpable overreaching." *In re Marvel Entm't Group, Inc.*, 273 B.R. 58, 78 (Bankr. D. Del. 2002) ("[U]nder the business judgment rule, a board's 'decisions will not be disturbed if they can be attributed to any rational purpose' and a court 'will not substitute its own notions of what is or is not sound business judgment.'" (*citing Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 719-20 (Del. 1971))).

26. Further, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide additional authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is

-12-

necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also US. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *Adelphia Commc'ns Corp. v. Am. Channel (In re Adelphia Commc'ns Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process."); *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

27. The employment of EisnerAmper and its professionals is a sound exercise of the Debtors' business judgment. As detailed herein, the Debtors selected EisnerAmper to provide their CRO and Interim CEO because of the significant relevant experience and reputation of Mr. Wilen and Mr. Dreskin. Moreover, EisnerAmper has acquired substantial knowledge of the Debtors and their operations as a result of the extensive prepetition work that it performed on the Debtors' behalf in the months leading up to the Petition Date, making EisnerAmper the obvious choice to provide the services detailed in the Engagement Letters.

28. Further, the Debtors believe that Fee and Expense Structure is fair and reasonable in light of the types of services being provided and is consistent with the fee structures generally offered by firms of similar stature to EisnerAmper for comparable engagements. In addition, given the numerous issues EisnerAmper has addressed prior to the Petition Date and may need to address during these Chapter 11 Cases, EisnerAmper's commitment to the variable level of time and effort necessary to address all such related issues as they arise, and the market prices for EisnerAmper's services for engagements of this nature in an out-of-court context, the Debtors believe that the Fee and Expense Structure is fair and reasonable.

-13-

35527989.5 07/17/2019

29. The Debtors are not seeking to retain EisnerAmper as a professional under section 327 of the Bankruptcy Code. Accordingly, the Debtors submit there is no requirement that EisnerAmper be disinterested. However, to the best of the Debtors' knowledge, information and belief, EisnerAmper does not have any interest materially adverse to the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. Further, the Debtors understand that EisnerAmper believes it is disinterested because, to the best of EisnerAmper's knowledge, information, and belief, EisnerAmper has no connection with the Debtors, their creditors, or any other party-in-interest, except as disclosed in the Wilen Declaration.

30. The employment of corporate officers is proper under section 363 of the Bankruptcy Code, and courts in this district have recognized that such employment is an appropriate exercise of a debtor's business judgment. *See*, *e.g.*, *In re Promise Healthcare Group, LLC*, Case No. 18-12491 (CSS) (Bankr. D. Del. Dec. 10, 2018) [D.I. 273] (authorizing the retention of a firm to designate turnaround management officers *nunc pro tunc* to the petition date); *In re J & M Sales, Inc.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 27, 2018) [D.I. 279] (same); *In re The Nordam Group, Inc.*, No. 18-11699 (MFW) (Bankr. D. Del. Aug. 28, 2018) [D.I. 216] (same); *In re Appvion*, Case No. 17-12082 (MFW) (Bankr. D. Del. Oct. 30, 2017) [D.I. 216] (same); *In re Vertellus Specialties Inc.*, Case No. 16-11290 (CSS) (Bankr. D. Del. July 7, 2016) [D.I. 183] (same).

### NOTICE

31. The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors'

35527989.5 07/17/2019

unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request the entry of an order, substantially in the form of the Proposed Order, (i) authorizing the employment and retention of EisnerAmper to provide interim management services, a CRO, an Interim CEO and additional personnel, (ii) approving the designations of Allen Wilen as CRO and Ronald Dreskin as Interim CEO in the Chapter 11 Cases, *nunc pro tunc* to the Petition Date, pursuant to the terms and conditions of the Engagement Letters, and (iii) granting such other and further relief as this Court deems just and proper.

Dated: July 17, 2019

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Jeremiah J. Vandermark
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
jeremiah.vandermark@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*