## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Hearing Date: August 16, 2019 at 10:00 a.m. (EST)** |
| | ) **Objection Deadline: July 31, 2019 at 4:00 p.m. (EST)** |

### APPLICATION OF DEBTORS FOR ORDER AUTHORIZING (I) RETENTION AND EMPLOYMENT OF SSG ADVISORS, LLC, AS INVESTMENT BANKER TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE, AND (II) A WAIVER OF COMPLIANCE WITH CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (the "**Debtors**"), by and through their undersigned proposed counsel, hereby file this application (the "**Application**"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), authorizing the Debtors to employ and retain SSG Advisors, LLC ("**SSG**") as investment banker to the Debtors, *nunc pro tunc* to the

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

Petition Date (as defined below).  In support of this Application, the Debtors rely on the *Declaration of J. Scott Victor in Support of the Application of Debtors for Entry of an Order Authorizing (I) the Employment and Retention of SSG Advisors, LLC, as Investment Banker to the Debtors, Nunc Pro Tunc to the Petition Date, and (II) a Waiver of Compliance with Certain Requirements of Local Rules 2016-2*, a copy of which is attached hereto as **Exhibit B** (the "**Victor Declaration**"), as well as the *Declaration of Allen Wilen in Support of First Day Relief* (the "**First Day Declaration**"), which is incorporated herein by reference.  In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION

1.      The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

2.      On June 30, 2019 and July 1, 2019 (together, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.  On July 15, 2019, the Office of the United

States Trustee appointed the Official Committee of Unsecured Creditors of Center City

Healthcare d/b/a Hahnemann University Hospital, *et al.* (the "**Committee**").

3.      A description of the Debtors' businesses, capital structure, the reasons for

commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and

circumstances supporting this Application are set forth in the First Day Declaration filed

contemporaneously herewith.

## RELIEF REQUESTED

4.      Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy

Rules 2014, 2016, 5002 and 6003, the Debtors seek entry of an Order (i) authorizing the

employment and retention of SSG as their investment banker in the Chapter 11 Cases, *nunc pro*

*tunc* to the Petition Date, pursuant to the terms and conditions of the engagement letter dated as

of June 7, 2019, a copy of which is attached hereto as **Exhibit C** and incorporated by reference

herein (the "**SSG Engagement Letter**"); and (ii) granting a waiver of compliance with the

information requirements relating to compensation requests set forth in Local Rule 2016-2 to the

extent requested herein.

## THE RETENTION OF SSG

**A.      SSG's Qualifications**

5.      SSG is an internationally recognized investment banking firm with offices in New

York and Philadelphia.  Since its founding in 2001, SSG has completed over 350 investment

banking assignments in North America and Europe.  SSG's professionals have expertise in

special situations mergers and acquisitions, private placements, financial restructurings,

valuations, and financial advisory services.  Moreover, SSG has substantial expertise in advising

troubled healthcare service providers in numerous situations, including in connection with

financing and asset sales and related issues, and is particularly well suited to serve as the Debtors' investment banker in the Chapter 11 Cases.

6.      SSG's professionals have developed extensive experience in matters involving complex financial restructurings.  Specifically, SSG has served as an investment banker for debtors and other parties in a large number of bankruptcy cases in the Third Circuit, including *inter alia*: *In re NSC Wholesale Holdings, LLC*, Case No. 18-12394 (CSS); *In re Samuels Jewelers, Inc.*, Case No. 18-11818 (KJC); *In re ABT Molecular Imaging, Inc.*, Case No. 18-11398 (LSS); *In re Nighthawk Royalties LLC*, Case No. 18-10989 (BLS); *In re Vitamin World, Inc.*, Case No. 17-11933 (KJC); *In re Unilife Corporation*, Case No. 17-10805 (LSS); *In re Short Bark Industries, Inc.*, Case No. 17-11502 (KG); *In re Peekay Acquisition, LLC*, Case No. 17-11722 (BLS); *In re Horsehead Holding Corp.*, Case No. 16-10287 (CSS); *In re Verengo, Inc.*, Case No. 16-12098 (BLS); *In re North Philadelphia Health System*, Case No. 16-18931 (MDC), and many more.  As a result, the Debtors believe that SSG is well-qualified to perform these services and represent the Debtors' interests in the Chapter 11 Cases.

7.      As set forth in the Victor Declaration, SSG was engaged by the Debtors effective as of May 31, 2019 to provide investment banking services to the Debtors pursuant to the SSG Engagement Letter.  As a result of conversations with the Debtors and their counsel, SSG has become, and will continue to become, intimately familiar with the Debtors' corporate and capital structure, management, operations, and various other aspects of their businesses.  SSG is developing knowledge of the Debtors' financial history and business operations and is well-suited to provide the Debtors with the investment banking services contemplated by the SSG Engagement Letter.

B.    <u>**Services to Be Provided**</u>

8.    Subject to Court approval of this Application, and consistent with the terms of the SSG Engagement Letter,[2] SSG will provide such investment banking services as SSG and the Debtors deem appropriate, including, but not limited to, the following in connection with a Financing Transaction:

a.    Prepare an information memorandum describing the Company Group, or any part thereof, as applicable, its historical performance and prospects, including existing contracts, patient census information, medical services offered, medical, nursing and staff information, management, and financial projections;

b.    Assist the Company Group in compiling a data room of any necessary and appropriate documents related to the Financing;

c.    Assist the Company Group in developing a list of suitable potential lenders and investors who will be contacted on a discreet and confidential basis after approval by the Company Group;

d.    Coordinate the execution of confidentiality agreements for potential lenders and investors wishing to review the information memorandum;

e.    Assist the Company Group in coordinating site visits for interested lenders and investors and work with the management team to develop appropriate presentations for such visits;

f.    Solicit competitive offers from potential lenders and investors;

g.    Advise and assist the Company Group in structuring the Financing and negotiating the Financing agreements; and

h.    Otherwise assist the Company Group and its other professionals, as necessary, through closing on a best efforts basis.

---

[2]    The summary set forth herein is qualified in its entirety by the terms of the SSG Engagement Letter, and the terms of the SSG Engagement Letter shall control in the event of a conflict. Capitalized terms not otherwise defined in this section shall have the meaning ascribed to them in the SSG Engagement Letter.

35513537.3 07/17/2019

9.      SSG may also provide such investment banking services as SSG and the Debtors deem appropriate, including, but not limited to, the following, in connection with a Sale Transaction:

     a.  Prepare an information memorandum describing Company Group, or any part thereof, as applicable, its historical performance and prospects, including existing contracts, patient census information, medical services offered, medical, nursing and staff information, management and anticipated financial results of the Company Group;

     b.  Assist the Company Group in developing a list of suitable potential buyers for specific assets of the Company Group who will be contacted on a discreet and confidential basis after approval by the Company Group;

     c.  Assist the Company Group in compiling a data room of any necessary and appropriate documents related to the Sale;

     d.  Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

     e.  Assist the Company Group in coordinating site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

     f.  Solicit competitive offers from potential buyers;

     g.  Advise and assist the Company Group in structuring the Sale and negotiating the Sale agreements, including, without limitation, advising and negotiating with respect to Sale structures that include, as may be necessary or desirable, licenses or assignments of intellectual property and leasing arrangement of GME/IME caps/slots; and

     h.  Otherwise assist the Company Group, its attorneys and accountants, as necessary, through closing on a best efforts basis.

10.      SSG may also provide such investment banking services as SSG and the Debtors deem appropriate, including, but not limited to, the following, in connection with a Restructuring Transaction:

     a.  SSG, on a best effort basis, shall assist the Company Group in any negotiation with various stakeholders (the "**Existing Stakeholders**"), including, but not limited to any of the Company Group's lenders, creditors, strategic partners

and/or other stakeholders in regard to a possible Restructuring Transaction of existing claims and equity;

b.   Complete all necessary and appropriate valuations in connection with any Company conversion from a for-profit entity into a not-for-profit entity; and

c.   Assist the Company Group in compiling a data room of any necessary and appropriate documents related to the Restructuring.

11.   The Debtors require qualified professionals to render these essential professional services.  As noted above, SSG has substantial expertise in all areas for which it is proposed to be retained.  Accordingly, the Debtors submit that SSG is well qualified and best suited to perform these services and to assist the Debtors in the Chapter 11 Cases.

12.   The services that SSG will provide to the Debtors are necessary to enable the Debtors to identify the highest and best possible bid for their assets in the case of a sale, or otherwise effectuate a financing or restructuring transaction that is in the best interests of their estates, creditors and parties in interest.  All of the services that SSG will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in the Chapter 11 Cases.  SSG will also use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

**C.   Professional Compensation**

13.   Subject to this Court's approval and as set forth in the SSG Engagement Letter,[3] the Debtors and SSG have agreed to the following compensation and expense structure (the "**Fee and Expense Structure**") in consideration for the services to be rendered by SSG in the Chapter 11 Cases:

---

[3]   The summary set forth herein is qualified in its entirety by the terms of the SSG Engagement Letter, and the terms of the SSG Engagement Letter shall control in the event of a conflict.

a. <u>Initial Fee</u>. An initial fee (the "**Initial Fee**") equal to $50,000 due upon acceptance of the Engagement Agreement by the Company Group. SSG received this Initial Fee on June 5, 2019.

b. <u>Monthly Fees</u>. A monthly fee (the "**Monthly Fee**") of $50,000 per month payable beginning July 1, 2019 and on the first (1st) of each month thereafter throughout the Engagement Term. If the Engagement Term ends prior to the last day of any month, the Monthly Fee for the last month of the Engagement Term shall be prorated for such month. Fifty percent (50%) of the Monthly Fees and Initial Fee paid will be credited to the Transaction Fee (defined below). However, there will be no such Monthly Fee credit for any Sale to Drexel University. SSG received the July Monthly Fee prior to the Petition Date.

c. <u>Financing Fee</u>. Upon the closing and funding of a Financing Transaction from any party other than Midcap Financial, Harrison Street Real Estate, Tenet Business Services Corporation, Conifer Revenue Cycle Management, or any of their respective Affiliates (each, an "**Existing Financing Source**"), SSG shall be entitled to a fee ("**Financing Fee**") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Financing Transaction equal to (a) the greater of (i) $450,000 or (ii) one and a half percent (1.5%) of the principal amount of any Senior Debt, plus 4% of the principal amount of any Tranche B or Traditional Subordinated Debt or the aggregate securities proceeds (net of any fees and expenses thereof) of Equity (each such term as hereafter defined) raised from any financing source other than an Existing Financing Source. The Financing Fee shall be reduced by 50% if a Financing Transaction is with, or is led by, Capital One or Sector Financial, or their Affiliates.

Notwithstanding the foregoing, SSG shall be entitled to a Financing Fee of $150,000 for a Financing Transaction from an Existing Financing Source.

d. <u>Sale Fee</u>. Upon the consummation of a Sale Transaction, SSG shall be entitled to a fee (the "**Sale Fee**"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Sale Transaction, equal to the greater of: (a) $750,000; or (b) one and a half percent (1.5%) of Total Consideration (defined below) up to and including $100 million; plus two percent (2.0%) of Total Consideration over $100 million.

However, in the event that a Sale to Drexel University, or any of its Affiliates, closes outside of a Chapter 11 bankruptcy proceeding and within one hundred (100) days from the date hereof, then the Sale Fee for such Transaction shall be $250,000. In the event of a Sale to Drexel University in a Chapter 11 bankruptcy proceeding or outside of a Chapter 11 bankruptcy

proceeding but after one (100) hundred days from the date hereof, then the Sale Fee for such Transaction shall be $750,000.

In the event of a liquidation of either or both of the operating hospital entities in a PAHC Chapter 11 bankruptcy proceeding, then SSG shall be entitled to a liquidation fee of $250,000 ("**Liquidation Fee**").

    e.   <u>Restructuring Fee</u>. Upon the closing of a Restructuring Transaction, SSG shall be entitled to a fee ("**Restructuring Fee**") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Restructuring Transaction, equal to $750,000.

    f.   <u>Out-of-Pocket Expenses</u>. In addition to the foregoing Initial Fee, Monthly Fee and Transaction Fee noted above, whether or not a Transaction is consummated, SSG will be entitled to reimbursement for all of SSG's reasonable and documented out-of-pocket expenses (other than any overhead expenses of SSG) incurred in connection with the subject matter of this Engagement Agreement; provided that no expenses in excess of $25,000 in the aggregate will be reimbursed by any Company or the Company Group without the prior written approval thereof.

14.    SSG and the Debtors have agreed pursuant to the SSG Engagement Letter that the Sale Fee shall be paid to SSG as a direct carve-out from the proceeds of a sale transaction or a liquidation, prior in right to the rights of any other party.

15.    The Fee and Expense Structure described above is comparable to compensation generally charged by investment banking firms for comparable engagements, both in and out of court.  The Fee and Expense Structure is also consistent with SSG's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined.  SSG and the Debtors also believe that the Fee and Expense Structure is reasonable and at favorable market rates.

**D.**    <u>**Waiver of Compliance with Requirements Regarding Time Entry Detail**</u>

16.    SSG's industry and restructuring experience, its capital markets knowledge, financing skills, and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of SSG's engagement, were important factors in determining the

Fee and Expense Structure.  The ultimate benefit to the Debtors of SSG's services could not be measured merely by reference to the number of hours to be expended by SSG's professionals in the performance of such services.  Moreover, the Fee and Expense Structure takes into consideration SSG's anticipation that it will need to provide a substantial commitment of professional time and effort in order to perform its duties under the SSG Engagement Letter and in light of the fact that such commitment may foreclose other opportunities for SSG.

17.     Because of SSG's expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that SSG will devote to this engagement, the Debtors request that the Court approve the Fee and Expense Structure for SSG pursuant to section 328(a) of the Bankruptcy Code and that the Court evaluate the final compensation and reimbursement of expenses in the Chapter 11 Cases for SSG under the standards of section 328(a) of the Bankruptcy Code, rather than under those of section 330 of the Bankruptcy Code.

18.     SSG will file with the Court a final fee application for allowance of its compensation and reimbursement of its expenses with respect to services rendered in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the applicable guidelines for compensation and reimbursement of expenses established by the U.S. Trustee (the "**UST Guidelines**"), and any applicable orders of the Court.  However, the Debtors are advised by SSG that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys or to keep time records on a "project category" basis.  Furthermore, SSG's Fee and Expense Structure provides for a flat fee based on the occurrence of a Transaction (as defined in the SSG Engagement Letter).

19.     As SSG's compensation will be calculated, depending on the type of transaction as contemplated by the SSG Engagement Letter, SSG requests that they not be required to file

time records in accordance with Local Rule 2016-2 and the UST Guidelines.    Instead, notwithstanding that SSG does not charge for its services on an hourly basis, SSG will maintain records in half (.50) hour increments (in summary format) of its services rendered for the Debtors, including descriptions of those services, the time expended in providing those services and the individuals who provided those services, and will present such records together with its final and sole fee application filed with the Court.

20.    SSG has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of SSG, in accordance with section 504 of the Bankruptcy Code.

**E.    Indemnification**

21.    The SSG Engagement Letter further provides that the Debtors will indemnify and hold harmless SSG and its members, partners, officers, agents, employees, and affiliates (each, an "**Indemnified Party**," and collectively, the "**Indemnified Persons**"), from and against any and all losses, claims, judgments, liabilities, costs, damages, and expenses, including reasonable attorneys' fees that SSG may incur, arising out of any services provided by SSG to the Debtors in pursuant to the SSG Engagement Letter, other than those resulting from SSG's gross negligence or willful misconduct (such obligations being referred to as the "**Indemnification Provisions**"), which provisions are set forth in greater detail in the SSG Engagement Letter.

22.    The Indemnification Provisions are standard indemnification terms, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on such terms that are customary for SSG and other similar investment bankers as approved in this and other jurisdictions. The Indemnification Provisions were fully negotiated between the Debtors and SSG at arm's length and the Debtors respectfully submit that the Indemnification Provisions are

reasonable and in the best interests of the Debtors, their estates, and creditors. Accordingly, as part of this Application, the Debtors request that this Court approve the Indemnification Provisions.

**F.      SSG's Disinterestedness**

23.      To the best of the Debtors' knowledge, and as disclosed herein and in the Victor Declaration: (i) SSG is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent any interest adverse to the Debtors' estates; and (ii) SSG has no connection to the Debtors, their creditors or related parties, except as may be disclosed in the Victor Declaration.

24.      SSG will review its files against any updated Potential Interested Parties List (as defined in the Victor Declaration) received from the Debtors from time to time during the pendency of the Chapter 11 Cases pursuant to the procedures described in the Victor Declaration. If any new relevant facts or relationships are discovered or arise in such review, SSG will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration where appropriate.

25.      SSG is not a creditor of the Debtors' bankruptcy estates as of the Petition Date.

**BASIS FOR RELIEF**

26.      Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code].

11 U.S.C. § 327(a).

27.     Section 328(a) of the Bankruptcy Code provides, in relevant part, that:

> The [debtor] . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provide under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

28.     In addition, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

29.     The resources, capabilities, and experience of SSG in advising the Debtors are crucial to the Debtors during the Chapter 11 Cases.  SSG and its professionals have extensive experience and an excellent reputation for providing high quality advisory services to debtors and creditors in large and complex chapter 11 cases and other debt restructurings.  SSG possesses and will continue to develop its knowledge of the Debtors' financial history and business operations and is well suited to provide the Debtors with the investment banking services contemplated by the SSG Engagement Letter.

30.     Furthermore, in the event the Application is not granted, the Debtors and their estates would be significantly harmed.  The Debtors would be forced to locate a new investment banker lacking the same understanding of the Debtors' business and restructuring initiatives.  Also, engaging a new investment banker would require the Debtors to expend additional time and divert their resources at a critical stage of the Chapter 11 Cases.  For these reasons, the Debtors believe that the retention of SSG is in the best interest of their estates and that the Application should be granted.

31.     As stated in the Victor Declaration, SSG is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors or related parties except as may be disclosed in the Victor Declaration.  The Debtors also believe that the Fee and Expense Structure is reasonable and should be approved by the Court under section 328(a) of the Bankruptcy Code in light of: (a) the nature of services to be provided by SSG; (b) SSG's substantial experience with respect to financial advisory services; (c) fee and expenses provisions typically utilized by SSG and other leading financial advisory firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis; and (d) the complexity and scope of work anticipated to be performed by SSG in connection with the Chapter 11 Cases.

32.     Moreover, as noted above, the Indemnification Provisions are standard terms, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on such terms that are customary for SSG and other similar investment bankers as approved in this and other jurisdictions.  *See United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.),* 315 F.3d 217, 234 (3d Cir. 2003) (finding that indemnification agreement between debtor and

financial advisor was reasonable under section 328 of the Bankruptcy Code).  Indeed, courts in this jurisdiction and others have granted similar relief.  *See*, *e.g.*, *In re A123 Systems, Inc.*, No. 12-12859 (KJC); *In re CHL, Ltd.*, No. 12-12437 (KJC); *In re Int'lMedia Group, Inc.*, No. 12¬10140 (MFW).

33.     For the foregoing reasons, the Debtors submit that the retention of SSG as investment banker is warranted and satisfies the requirements of sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## **NOTICE**

34.     The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

*[Remainder of page intentionally left blank]*

35513537.3 07/17/2019

**WHEREFORE**, the Debtors respectfully request the entry of an order, substantially in the form of the Proposed Order (i) authorizing the Debtors to retain and employ SSG as investment banker to the Debtors, *nunc pro tunc* to the Petition Date, on the terms set forth in the SSG Engagement Letter, (ii) waiving compliance with certain requirements of Local Rule 2016-2, and (iii) granting such other and further relief as this Court deems just and proper.

Dated: July 17, 2019

Philadelphia Academic Health System, LLC
(for itself and on behalf of its affiliates
Debtors as debtors and debtors in
possession)

By: */s/ Allen Wilen*
    Name: Allen Wilen
    Title: Chief Restructuring Officer

35513537.3 07/17/2019