## EXHIBIT A

**Proposed Bidding Procedures Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) Jointly Administered |
| Debtors. | ) Re: Docket No. __ |

**ORDER (I)(A) ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALE OF THE DEBTORS' RESIDENT PROGRAM ASSETS, INCLUDING APPROVING A BREAK-UP FEE, (B) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, (C) APPROVING FORM AND MANNER OF NOTICE RELATING THERETO, AND (D) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**") for the entry of an order (this "**Bidding Procedures Order**"): (a) approving the proposed bidding procedures attached as **Schedule 1** to this Bidding Procedures Order (the "**Bidding Procedures**"), by which the Debtors will solicit and select the highest or otherwise best offer for the sale (the "**Sale**") of the Residents Program Assets; (b) establishing procedures for the assumption and assignment of executory contracts, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**");

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

(c) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto; (d) approving the Debtors' selection of Tower Health ("**Tower Health**") as the stalking horse bidder (the "**Stalking Horse Bidder**"), the Break-Up Fee (as defined below) for the Stalking Horse Bidder, and that certain asset purchase agreement (as may be amended from time to time, the "**Stalking Horse Sale Agreement**"), as filed with the Court [D.I. __], among Debtor Center City Healthcare, LLC d/b/a Hahnemann University Hospital (the "**Seller**") and the Stalking Horse Bidder; (e) scheduling a final hearing (the "**Sale Hearing**") to approve the Sale; and (f) granting related relief, and upon the Debtors' further request that, at the Sale Hearing, this Court enter an order (a "**Sale Order**"), a proposed form of which will be filed on or earlier ~~to~~ than the date that is one (1) day prior to the Sale Hearing, (x) authorizing the sale of the Residents Program Assets free and clear of liens, claims, interests, and encumbrances (collectively, the "**Interests**") with any such Interests to attach to the proceeds thereof with the same validity, extent and priority (under the Bankruptcy Code) as such Interests existed immediately prior to the consummation of the Sale; (y) authorizing the assumption and assignment of certain executory contracts; and (z) granting related relief, all as more fully described in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and

having heard the statements in support of the relief requested therein at a hearing, if any, before the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS THAT**:

A.    The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The statutory bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014, and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

D.    Notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of these Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy

Code, the Bankruptcy Rules, and the Local Rules.  Notice of the Motion has been given to:  (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Debtors' assets during the past six (6) months; (b) all entities known to have asserted any Interest in or upon any of the Debtors' assets; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; (e) counsel to MidCap Funding IV Trust; (f) Drexel University d/b/a Drexel University College of Medicine; (g) the Debtors' unions; (h) the Internal Revenue Service; (i) the United States Attorney for the District of Delaware; (j) the United States Department of Justice; (k) the Pennsylvania Attorney General's Office; (l) the Pennsylvania Department of Human Services; (m) the City of Philadelphia; (n) the CMS; (o) the ACGME; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  Accordingly, no further notice of the Motion or this Bidding Procedures Order is necessary or required.

      E.     The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation:  (a) approval of the Bidding Procedures; (b) approval of the selection of Tower Health as the Stalking Horse Bidder; (c) approval of the Assumption and Assignment Procedures; (d) approval of the form and manner of notice of all procedures, protections, schedules, and agreements described in the Motion and attached thereto; (e) the scheduling of a date for the Sale Hearing; and (f) all related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the hearing for such Motion, are incorporated herein by

reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.  Entry into the Stalking Horse Sale Agreement with the Stalking Horse Bidder is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment. The Stalking Horse Sale Agreement provides the Debtors with the opportunity to sell the Residents Program Assets in order to preserve and realize their optimal value, while at the same time minimizing the negative impact of the closure of Hahnemann University Hospital on Residents, as well as upon the Debtors' academic affiliation partner, Drexel University.

G.  The Bidding Procedures, in the form attached hereto as **Schedule 1** and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates. The Break-Up Fee: (a) shall, if triggered, be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code in accordance with the Stalking Horse Sale Agreement; (b) is commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (c) is reasonable and appropriate, including in light of the size and nature of the Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the Sale is subject to higher or better offers; and (d) was necessary for the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse Sale Agreement.

H.  The Debtors have demonstrated a reasonable business justification for the payment of the Break-Up Fee under the circumstances set forth in the Stalking Horse Sale

Agreement. The Bidding Procedures and the Break-Up Fee were a material inducement to, and express condition of, the willingness of the Stalking Horse Bidder to submit bids through execution of the Stalking Horse Sale Agreement that will serve as a minimum or floor bid on which the Debtors, their creditors, and other bidders may rely. Unless it is assured that the Break-Up Fee will be available, the Stalking Horse Bidder is unwilling to be bound under the Stalking Horse Sale Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated in the Bidding Procedures). The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Residents Program Assets will be realized and that Residents will be protected.

I.  The Assumption and Assignment Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the applicable Designated Contracts in connection with the sale of the Residents Program Assets and the related Cure Costs, and no other or further notice shall be required. The Motion and the Assumption and Assignment Notice are reasonably calculated to provide counterparties to any Designated Contracts with proper notice of the intended assumption and assignment of their Designated Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

J.  The Auction and Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Residents Program Assets, including, without limitation: (a) the date, time, and place of the Auction (if one is held); (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) identification of the assets to be sold;

(e) instructions for promptly obtaining copies of the Stalking Horse Sale Agreement; (f) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; and (g) notice of the proposed assumption and assignment of Designated Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse Sale Agreement (or to another Successful Bidder arising from the Auction, if any), and no other or further notice of the Sale shall be required.

K.     The Debtors' marketing process has been reasonably calculated to maximize value for the benefit of all stakeholders.

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted as provided herein.[3]

2.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.     Timeline for the Sale**

3.     The Debtors, in consultation with the Committee, are authorized to perform any obligations of the Debtors set forth in the Stalking Horse Sale Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order.  The Debtors, in consultation with the Committee, are authorized to proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

---

[3]    Notwithstanding anything to the contrary herein, or in the consummation of Bidding Procedures, the acceptance of a Bid and Sale is Agreement by the Debtors and the consummation of a Sale are subject to entry of the Sale Order.

| Milestone | Proposed Date |
|---|---|
| Deadline to Object to Approval of the Sale to the Stalking Horse Bidder on the terms of the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement | 4:00 p.m. (prevailing Eastern Time) on July 26, 2019 |
| Bid Deadline | 4:00 p.m. (prevailing Eastern Time) on July 26, 2019 |
| Auction (if necessary) | 10:00 a.m. (prevailing Eastern Time) on July 30, 2019 |
| Sale Hearing | July 31, 2019 |
| Deadline to Object to conduct of the Auction and Sale to a Successful Bidder ~~Other~~ (other than a Sale to the Stalking Horse Bidder on the terms of the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement) | (may be raised at the Sale Hearing) |

4. For the avoidance of doubt, the Debtors~~-~~, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**"), reserve the right, and are authorized to, modify the above timeline and the Bidding Procedures in accordance with the provisions of the Bidding Procedures, subject to the terms of the Stalking Horse Sale Agreement.

**II.     The Bidding Procedures**

5. The Bidding Procedures, substantially in the form attached hereto as **Schedule 1**, are approved in their entirety. The Debtors~~-~~, in consultation with the Committee, are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures, in accordance therewith and the Stalking Horse Sale Agreement. The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

6. The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest. As further described in the Bidding Procedures, the Bid Deadline shall be 4:00 p.m. (prevailing Eastern Time) on July 26, 2019. Any disputes or objections to the selection of Qualified Bids, Successful Bids, or Backup Bids (all as defined in the Bidding Procedures) shall be resolved by this Court at the Sale Hearing as set forth herein.

7. The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement is deemed a Qualified Bid. In the event that no other Qualified Bids are submitted, the Debtors, in consultation with the Committee, shall deem the Stalking Horse Bidder to be the Successful Bidder.

8. The Debtors, in consultation with the Committee, are authorized to conduct the Auction in accordance with the Bidding Procedures. The Auction, to the extent that an Auction is necessary under the Bidding Procedures, shall take place at 10:00 a.m. (prevailing Eastern Time) on July 30, 2019 at the offices of the proposed counsel for the Debtors, Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102 (or at any other time and location as the Debtors, in consultation with the Committee, may hereafter designate on proper notice). The Auction will be conducted openly and all creditors and the Committee will be permitted to attend.

9. Any creditor with a valid and perfected lien on any assets of the Debtors' estates (each, a "**Secured Creditor**") shall have the right, subject in all respects to the Bankruptcy Code and other applicable law (and the rights of the Committee and other parties in interest to object to or challenge such creditor's lien thereunder (a "**Challenge**")), to credit bid all or any portion of

-9-

such Secured Creditor's allowed secured claims to the extent that such secured claims are valid and undisputed pursuant to Bankruptcy Code section 363(k) or other applicable law, ~~and any such credit bid shall be deemed a Qualified Bid~~<ins>unless otherwise ordered by the Bankruptcy Court for cause. In the event that the Committee or another party in interest Challenges a creditor's lien, the approval of a Successful Bid by such creditor that includes a credit bid shall be contingent upon a final determination that such creditor's lien is valid and perfected. In the event that such a creditor's lien is successfully Challenged, or otherwise determined not to be valid and perfected, such creditor shall pay the credit bid portion of its Bid in cash at the closing of the Sale</ins>.

10.   Further, in the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to include the full amount of the Break-Up Fee in lieu of cash and ~~for~~ <ins>have the Break-Up Fee treated as equal to cash in the same amount for the</ins> purposes of evaluating the overbid ~~equal to cash in the same amount~~, subject to the limitations set forth in paragraph 9. Notwithstanding the preceding sentence, the inclusion in any overbid of the Break-Up Fee shall not be deemed to create a secured claim or constitute an offset against any such claim under section 363(k) of the Bankruptcy Code.

### III.   Stalking Horse Bidder, Bid Protections, and Stalking Horse Sale Agreement

11.   The Debtors<ins>, in consultation with the Committee,</ins> are authorized to enter into the Stalking Horse Sale Agreement, subject to higher or otherwise better offers at the Auction. The Break-Up Fee contained in the Stalking Horse Sale Agreement is approved. The Debtors<ins>, in consultation with the Committee,</ins> are authorized to pay any and all amounts owing to the Stalking Horse Bidder on account of the Break-Up Fee upon the Debtors' consummation of the

-10-

Sale with a purchaser other than the Stalking Horse Bidder. If triggered, the Break-Up Fee: (a) shall be an allowed administrative expense claim under section 503(b) and 507 of the Bankruptcy Code; and (b) shall be payable in accordance with the terms of the Stalking Horse Sale Agreement without further order of this Court.

**IV.    Notice Procedures**

12. The Auction and Sale Notice is approved.

   *A.    Notice of Sale, Auction, and Sale Hearing.*

13. Within one (1) business day after the entry of this Bidding Procedures Order, or as soon as reasonably practicable thereafter (the "**Mailing Date**"), the Debtors shall serve the Stalking Horse Sale Agreement, Bidding Procedures Order, and Bidding Procedures by first-class mail or, for those parties who have consented to receive notice by the Electronic Case Files ("**ECF**") system, by ECF, upon the Notice Parties.

14. Service of the Auction and Sale Notice as described in the Motion shall be sufficient and proper notice of the Sale with respect to known interested parties. Publication of the Auction and Sale Notice as described in the Motion shall be sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

   *B.    Notice of Successful Bidder.*

15. As soon as reasonably practicable after the conclusion of the Auction, the Debtors, in consultation with the Committee, shall file on the docket, but not serve, the Post-Auction Notice, which shall identify the Successful Bidder.

**V.    Assumption and Assignment Procedures**

16. The Assumption and Assignment Procedures, which are set forth below, regarding the assumption and assignment of the executory contracts proposed to be assumed by

the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, following the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code and in accordance with the Stalking Horse Sale Agreement are hereby approved to the extent set forth herein.

    *A.*    *Notice of Assumption and Assignment.*

17. The Debtors previously filed with the Court, [D.I. ●], a list (the "**Designated Contracts List**") specifying: (a) each of the Debtors' executory contracts that may be assumed and assigned in connection with the Sale (the "**Designated Contracts**"), including the name of each non-Debtor counterparty to such Designated Contract (the "**Designated Contract Counterparty**"); and (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under the Designated Contract (the "**Cure Costs**").

18. A Designated Contract Counterparty listed on the Notice of Assumption and Assignment may file an objection (a "**Contract Objection**") to the proposed assumption and assignment of the applicable Designated Contract, the proposed Cure Costs, if any, and the ability of the Stalking Horse Bidder to provide adequate assurance of future performance. All Contract Objections must: (a) be in writing; (b) state with specificity the basis for the objection as well as any Cure Costs that the objector asserts to be due, including each and every asserted default in the applicable contract or lease (in all cases with appropriate documentation in support thereof); (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed and served on the Debtors and the Committee by the later of (i) 4:00 p.m. (prevailing Eastern Time) on July 26, 2019; and (ii) 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days following the Assumption and Assignment Service Date (the "**Contract Objection Deadline**").

Objections to the ability of a Successful Bidder other than the Stalking Horse Bidder to provide adequate assurance of future performance shall be raised at or prior to the Sale Hearing.

19.     If a Designated Contract Counterparty files a Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Sale Hearing, such later hearing date that the Debtors, in consultation with the Committee, determine in their discretion, or such other date determined by this Court.

### B.     *Supplemental Notice of Assumption and Assignment.*

20.     The Stalking Horse Bidder may modify the Designated Contracts List until the opening of business on the date of the Auction. Following the conclusion of the Auction, if any, and the selection of the Successful Bidder, the Debtors, in consultation with the Committee, reserve the right, but only in accordance with the Stalking Horse Sale Agreement, or as otherwise agreed by the Debtors and the Successful Bidder, in consultation with the Committee, at any time after the Assumption and Assignment Service Date, before or after the closing of the Sale, to: (a) supplement the Designated Contracts List on the Notice of Assumption and Assignment with previously omitted Designated Contracts; (b) remove a Designated Contract from the Designated Contracts List; and/or (c) modify the previously-stated Cure Costs associated with any Designated Contract.

21.     In the event that the Stalking Horse Bidder or Debtors exercise any of the rights reserved above to supplement the Designated Contracts List or modify previously-stated Cure Costs, the Debtors will promptly serve a supplemental notice of assumption and assignment by, first class mail, on the Designated Contract Counterparty, and its attorney, if known, to each

-13-

impacted Designated Contract at the last known address available to the Debtors (a "**Supplemental Notice of Assumption and Assignment**"). Each Supplemental Notice of Assumption and Assignment will include the same information with respect to listed Designated Contracts as was included in the Notice of Assumption and Assignment.

22. Any Designated Contract Counterparty listed on a Supplemental Notice of Assumption and Assignment may file an objection with respect to the impacted Designated Contract (a "**Supplemental Contract Objection**") to (a) Cure Costs, if any, and (b) if such Designated Contract was not previously included on any Notice (or Supplemental Notice) of Assumption and Assignment, (i) the proposed assumption and assignment of the applicable Designated Contract and (ii) the ability of a Successful Bidder, including the Stalking Horse Bidder, to provide adequate assurance of future performance. All Supplemental Contract Objections must: (a) be in writing; (b) state with specificity the basis for the objection as well as any Cure Costs that the objector asserts to be due (in all cases with appropriate documentation in support thereof); (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed and served on the Contract Notice Parties no later than fourteen (14) days from the date of service of such Supplemental Notice of Assumption and Assignment, which date will be set forth in the Supplemental Notice of Assumption and Assignment (the "**Supplemental Contract Objection Deadline**").

23. If a Designated Contract Counterparty files a Supplemental Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors, in consultation with the Committee, will seek an expedited hearing before the Court (a "**Supplemental Designated Contract Hearing**") to determine the Cure Costs, if any, and approve the assumption of the relevant Designated

Contracts.  If there is no such objection (or such objection has been resolved), then the Debtors, in consultation with the Committee, may submit an order (a "**Supplemental Designated Contract Order**") to this Court, including by filing a certification of counsel, fixing the Cure Costs and approving the assumption of any Designated Contract listed on a Supplemental Notice of Assumption and Assignment.

C.      ***Additional Notice of Assumption and Assignment Procedures.***

24.     If a Designated Contract Counterparty does not file and serve a Contract Objection or Supplemental Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court in connection with such objection establishing alternative Cure Costs, (a) the Cure Costs, if any, set forth in the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) shall be controlling with respect to the applicable Designated Contract, notwithstanding anything to the contrary in any Designated Contract or any other document, and (b) the Designated Contract Counterparty will be deemed to have consented to the assumption and assignment of the Designated Contract and the Cure Costs, if any, and will be forever barred from asserting any claim related to such Designated Contract for any default occurring or continuing prior to the Contract Objection Deadline against the Debtors or the Successful Bidder, or the property of any of them.

25.     The inclusion of a Designated Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not:  (a) obligate the Debtors to assume any Designated Contract listed thereon or the Successful Bidder to take assignment of such Designated Contract; or (b) constitute any admission or agreement of the Debtors that such Designated Contract is an executory contract.  Only those Designated

-15-

Contracts that are included on a schedule of assumed and acquired contracts attached to the final asset purchase agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the Successful Bidder.

### VI. Sale Hearing.

26. A Sale Hearing to (a) approve the sale of the Debtors' Residents Program Assets to the Successful Bidder and (b) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held at _____ (prevailing Eastern Time) on July [●], 2019, and may be adjourned or rescheduled without further notice other than by announcement in open court on the date scheduled for the Sale Hearing or by the filing of a notice on the Court's docket. At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Sale to the Successful Bidder, including any Backup Bidder. The Sale Hearing shall be an evidentiary hearing on matters relating to the Sale ~~and there will be no further bidding at the Sale Hearing~~. In the event that the Successful Bidder cannot or refuses to consummate the Sale <u>after the Sale has been approved by the Court</u>, the Debtors~~,~~ <u>, in consultation with the Committee,</u> may, in accordance with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors~~,~~ <u>, in consultation with the Committee,</u> shall be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court.

27. Any and all objections, if any, to <u>(a)</u> the Sale to the Stalking Horse Bidder ~~and~~ <u>on the terms of the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement and (b)</u> entry of the Sale Order <u>approving such Sale</u> (a "**Sale Objection**") must be filed and served on the Objection Recipients <u>and the Committee</u> by 4:00 p.m. (prevailing Eastern Time) on July 26,

-16-

2019 (the "**Sale Objection Deadline**").  Any and all objections to the conduct of the Auction and the terms of a Sale to a Successful Bidder (other than a Sale to the Stalking Horse Bidder on the terms of the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement) (an "**Auction Objection**") must be raised at or prior to the Sale Hearing (the "**Auction Objection Deadline**").  Any party failing to timely file a Sale Objection or raise an Auction Objection, as applicable, will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the Debtors' right, title and interest in, to, and under the assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the definitive agreement for the Sale.  For the avoidance of doubt, if the Stalking Horse Bidder is selected as the Successful Bidder, but its selected bid is not the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement, objections to a Sale to the Stalking Horse Bidder on the new terms must be raised by the Auction Objection Deadline.

**VII.    Miscellaneous.**

28.    Notwithsanding anything to the contrary in any asset purchase agreement, including the Stalking Horse Sale Agreement or any other Sale Agreement, the purchased assets (including the Residents Program Assets) shall not include (i) any cause of action or proceeds of such cause of action under chapter 5 of the Bankruptcy Code or applicable state law equivalents ; (ii) any commercial or other tort claims arising on or before the closing date of the Sale, or any proceeds of such claims, including, without limitation, any and all causes of action (a) against present and former directors and officers of the Debtors and/or any of their affiliates, (b) against direct and indirect equity holders of the Debtors and/or their affiliates, and (c) of the Debtors and/or any of their affiliates against any other Debtors; and (iii) any claims or causes of action

against the Debtors' contract counterparties (other than claims or causes of action arising under any contract that is assumed by the Debtors), or any proceeds of such claims or causes of action.

29. This order and the Bidding Procedures shall be interepreted so as to afford the Debtors, in consultation with the Committee, the greatest opportunity to maximize the value of the Residents Program Assets for the benefit of the Debtors' estates.

30. 26. The Debtors, in consultation with the Committee, are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

31. 27. This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

32. 28. This Bidding Procedures Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors. Certain provisions of this Bidding Procedures Order that relate to the Break-Up Fee shall inure to the benefit of the Stalking Horse Bidder and its affiliates, successors, and assigns.

33. 29. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, any Stalking Horse Sale Agreement, and the implementation of this Bidding Procedures Order.

| Comparison Details | |
|---|---|
| Title | **compareDocs Comparison Results** |
| Date & Time | 7/17/2019 3:53:22 PM |
| Comparison Time | 1.57 seconds |
| compareDocs version | v4.3.300.65 |

| Sources | |
|---|---|
| Original Document | [#6423790] [v1] CCH - Residency Bidding Procedures Order.docx |
| Modified Document | [#6423790] [v2] CCH - Residency Bidding Procedures Order.docx |

| Comparison Statistics | |
|---|---|
| Insertions | 26 |
| Deletions | 6 |
| Changes | 32 |
| Moves | 0 |
| Font Changes | 0 |
| Paragraph Style Changes | 0 |
| Character Style Changes | 0 |
| TOTAL CHANGES | 64 |

| Word Rendering Set Markup Options | |
|---|---|
| Name | Sills Standard |
| Insertions | |
| Deletions | |
| Moves / Moves | |
| Font Changes | |
| Paragraph Style Changes | |
| Character Style Changes | |
| Inserted cells | |
| Deleted cells | |
| Merged cells | |
| Changed lines | Mark left border. |
| Comments color | By Author. |
| Balloons | False |

| compareDocs Settings Used | Category | Option Selected |
|---|---|---|
| Open Comparison Report after Saving | General | Always |
| Report Type | Word | Formatting |
| Character Level | Word | False |
| Include Headers / Footers | Word | True |
| Include Footnotes / Endnotes | Word | True |
| Include List Numbers | Word | True |
| Include Tables | Word | True |
| Include Field Codes | Word | True |
| Include Moves | Word | False |
| Show Track Changes Toolbar | Word | True |
| Show Reviewing Pane | Word | True |
| Update Automatic Links at Open | Word | [Yes / No] |
| Summary Report | Word | End |
| Include Change Detail Report | Word | Separate |
| Document View | Word | Print |
| Remove Personal Information | Word | False |
| Flatten Field Codes | Word | True |