**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) Jointly Administered |
| Debtors. | ) Hearing Date: August 16, 2019 at 10:00 a.m. (EST) |
| | ) Objection Deadline: August 1, 2019 at 4:00 p.m. (EST) |

### MOTION OF THE DEBTORS FOR THE ENTRY OF AN ORDER APPROVING (I) AGREEMENT WITH RANDSTAD PROFESSIONALS US, LLC D/B/A TATUM TO PROVIDE AN INTERIM CHIEF FINANCIAL OFFICER, AND (II) THE DESIGNATION OF PHIL PORTER AS INTERIM CHIEF FINANCIAL OFFICER TO THE DEBTORS

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (the "**Debtors**"), by and through their undersigned proposed counsel, hereby file this motion (the "**Motion**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), (i) approving the agreement with Randstad Professionals US, LLC d/b/a Tatum ("**Tatum**") to provide an interim chief financial officer (an "**Interim CFO**"), as set forth in the Interim Services Agreement, a copy of which is attached hereto as **Exhibit B** (the "**Services Agreement**"),[1] and (ii) approving the designation of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Services Agreement.

Phil Porter ("**Mr. Porter**") as Interim CFO to the Debtors. In support of this Motion, the Debtors rely on the *Declaration of Phil Porter in Support of the Motion of the Debtors for the Entry of an Order Approving (I) Agreement with Randstad Professionals US, LLC d/b/a Tatum to Provide an Interim Chief Financial Officer, and (ii) the Designation of Interim Chief Financial Officer to the Debtors*, a copy of which is attached hereto as **Exhibit C** (the "**Porter Declaration**"), and respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. The statutory bases for the relief requested herein are sections 105 and 363(b) of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 2016-2.

## BACKGROUND

3. On June 30, 2019 and July 1, 2019 (the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

4. A description of the Debtors' businesses, capital structure, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2] (the "**First Day Declaration**").

5. Shortly before the Petition Date, the Debtors' System Chief Financial Officer (the "**Former CFO**"), tendered his resignation, which has since become effective.

6. The ancillary services provided by EisnerAmper LLP in connection with the appointment of Allen Wilen as the Debtors' Chief Restructuring Officer do not include the provision of CFO services to the Debtors. As such, the Debtors have an urgent need to fill the void created as a result of the separation of the Former CFO.

7. To address this need, the Debtors seek authority to enter into the Services Agreement with Tatum to provide the services of Mr. Porter as Interim CFO. Under the circumstances, including the Debtors' status as chapter 11 debtors in possession, the Debtors believe, in the exercise of their reasonable business judgment, that employing an Interim CFO through an arrangement with an entity such as Tatum will enable the Debtors to replace the Former CFO in the most expeditious and efficient way possible, without the added cost and time which would be required to undertake an internally-driven search process for a replacement officer, and is thus in the best interest of the Debtors, their estates and creditors.

8. In light of the urgency of providing these services, prior to filing this Motion, Tatum entered into an agreement with Philadelphia Academic Health Holdings, LLC ("**PAHH**"), the non-debtor parent to Debtor Philadelphia Academic Health System, LLC, to provide

substantively identical services to those provided for in the Services Agreement, paid for by PAHH.  Upon entry of the Proposed Order granting this Motion, the agreement between PAHH and Tatum will be deemed terminated and replaced by the Services Agreement.

## RELIEF REQUESTED

9. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek the entry of an Order (i) approving the Services Agreement with Tatum to provide an Interim CFO, and (ii) approving the designation of Phil Porter as Interim CFO in the Chapter 11 Cases.

## THE SERVICES AGREMEENT

### A. Mr. Porter's Qualifications

10. Mr. Porter is an experienced leader in transforming groups into high performing teams with a demonstrated history of working in the physician practice, managed care, hospital and health care industry.  Mr. Porter has a demonstrable history of partnering with healthcare firms to assess systems and refocus processes, grow impact, improve stewardship, enhance interpersonal and organizational interactions, and improve performance as an interim CFO.  He has a proven track record of improving profitability, revenue cycle management, banking relationships, financing and financial structures, financial and accounting systems, and contracting with providers, clients, and managed care organizations.

11. Tatum is one of the nation's top executive services companies, providing an unparalleled range of executive talent management solutions and global reach.  A trusted professional services firm, Tatum specializes in placing interim executives, executive search and project consulting.  Tatum's leaders and experienced consultants support companies as they navigate critical points in the business lifecycle, enabling such companies to execute strategic initiatives and objectives.

12. As set forth in the Porter Declaration, Tatum has agreed for Mr. Porter to provide interim CFO services to the Debtors pursuant to the terms and conditions of the Services Agreement, commencing upon approval of the Motion by the Court.

**B.     Services to Be Provided**

13. Subject to Court approval of this Motion and consistent with the terms of the Services Agreement,[2] Mr. Porter will provide interim CFO services for the Debtors, including, but not limited to, the following:

Services to be Provided by Interim CFO:

   a. Provide interim chief financial officer services for the Debtors;

   b. Participate as an active member of the Debtors' executive team to define overall strategic and financial goals;

   c. Ensure that financial results are effectively communicated to all relevant parties;

   d. Provide oversight and advise as to cash flow management and initiatives;

   e. Provide oversight and ensure timely compliance with tax reporting obligations;

   f. Serve as point of contact for lenders and other capital partners and facilitate reporting requirements under loan, master lease, equity and other financing documents;

   g. Provide recommendations regarding major financial decisions and oversee implementation of financial policy decisions;

   h. Oversee preparation and presentation of operating and capital budgets;

   i. Provide support to external assurance and tax firm(s) to assure cost effective engagements;

---

[2] The summary set forth herein is qualified in its entirety by the terms of the Services Agreement, and the terms of the Services Agreement shall control in the event of a conflict. Capitalized terms not otherwise defined in this section shall have the meanings ascribed to them in the Services Agreement.

j. Work with third party reimbursement advisors to support financial reporting and communicate with lenders as needed;

k. Identify and make recommendations regarding opportunities for improvement in operations and processes;

l. Oversee implementation of policies, procedures, and internal control mechanisms to ensure compliance with business policies and procedures, and generally accepted accounting principles;

m. Serve as liaison between departments, managers, and financial and administrative personnel; and

n. Supervise and evaluate performance of financial staff.

14. The Debtors require a qualified professional to render these essential specialized services in these cases in light of the resignation of their Former CFO. As noted above, Mr. Porter has substantial expertise in all areas for which he is proposed to be employed. The Debtors submit that Mr. Porter is well qualified and best suited to perform these services as Interim CFO, and as such the Services Agreement should be approved and Mr. Porter should be designated as the Debtors' Interim CFO.

**C.    Compensation**

15. Subject to this Court's approval and as set forth in the Services Agreement,[3] the Debtors and Tatum have agreed to the following compensation and expense structure (the "**Fee and Expense Structure**") in consideration for the services to be rendered by Mr. Porter as Interim CFO:

a. The Debtors will pay a fee of $12,750 per week for Mr. Porter's services as Interim CFO, plus reimbursement of all actual, reasonable, and pre-approved travel and out-of-pocket expenses incurred in connection with the Services Agreement.

---

[3] The summary set forth herein is qualified in its entirety by the terms of the Services Agreement, and the terms of the Services Agreement shall control in the event of a conflict. Capitalized terms not otherwise defined in this section shall have the meaning ascribed to them in the Services Agreement.

-6-

b. The Debtors will pay an initial deposit of $51,000 prior to Mr. Porter providing services. Tatum will invoice the Debtors for Mr. Porter's services against the deposit on a weekly basis. On or before the first Monday of the last full week of each calendar month, the Debtors shall pay a deposit of $51,000, against which Tatum will continue to draw on a weekly basis with respect to its invoices.

c. As described above, pending approval of this Motion, PAHH will pay for Mr. Porter's services pursuant to the agreement between Tatum and PAHH, which agreement will be replaced by the Services Agreement upon entry of the Proposed Order.

16.   Because Mr. Porter is not being employed as a professional under section 327 of the Bankruptcy Code, neither he nor Tatum is required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, Tatum shall submit weekly invoices to the Debtors for Mr. Tatum's services as set forth above. Because the fee structure for Mr. Porter's services is a flat weekly fee, the Debtors submit that there is no need for the Debtors or Tatum to submit monthly staffing reports. The Debtors will include all payments to Tatum on the applicable monthly operating reports filed in these Chapter 11 Cases.

17.   As provided for in the Services Agreement, upon entry of the Proposed Order, Tatum will receive $51,000 as a deposit for payment of its first month of professional fees (the "**Cash on Account**"). As set forth in the Services Agreement, the Cash on Account will be applied to Tatum's weekly invoices with respect to the Mr. Porter's Interim CFO services provided thereunder.

18.   The Fee and Expense Structure described above is comparable to compensation for interim executive officer services, both in and out of court. The Fee and Expense Structure is also consistent with Tatum's normal and customary billing practices for engagements of this nature, including upon consideration of the size of the Debtors and the complexity and scope of

the services to be provided. Tatum and the Debtors also believe that the Fee and Expense Structure is reasonable and at favorable market rates.

### D. Limitation of Liability and Indemnification

19. The Services Agreement provides that, except in the event of Tatum's gross negligence, willful misconduct, fraud, or violation of law, Tatum's liability under the Services Agreement will, in the aggregate, not exceed three times the fees payable by the Debtors to Tatum over the three months of the Services Agreement preceding the date that the claim arose.

20. The Services Agreement further provides that the Debtors will indemnify and hold harmless Tatum and its officers, managers, employees, members, agents, representatives, consultants, contractors, and lenders (each, an "**Indemnified Party**," and collectively, the "**Indemnified Persons**"), from and against any and all liabilities, losses, damages, claims, causes of action, penalties, costs, and expenses, including reasonable attorneys' fees, to the extent caused by the Debtors' gross negligence, fraud, or willful misconduct in connection with the Services Agreement (such obligations being referred to as the "**Indemnification Provisions**"), which provisions are set forth in greater detail in the Services Agreement.

21. Because the Indemnification Provisions only require the Debtors to indemnify Tatum to the extent of the Debtors' gross negligence, fraud, or willful misconduct, the Indemnification Provisions are more favorable to the Debtors than standard indemnification terms. The Debtors respectfully submit that the Indemnification Provisions are reasonable and in the best interests of the Debtors, their estates, and creditors. Accordingly, as part of this Motion, the Debtors request that this Court approve the Indemnification Provisions.

**E.    Disinterestedness**

22.    To the best of the Debtors' knowledge, and except as disclosed in the Porter Declaration: (i) Tatum and Mr. Porter are "disinterested persons" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and do not hold or represent any interest adverse to the Debtors' estates; and (ii) neither Tatum nor Mr. Porter has any connection to the Debtors, their creditors or related parties, except as may be disclosed in the Porter Declaration.

23.    Tatum will review its files against any updated Potential Interested Parties List (as defined in the Porter Declaration) received from the Debtors from time to time during the pendency of the Chapter 11 Cases pursuant to the procedures described in the Porter Declaration. If any new relevant facts or relationships are discovered or arise in such review, Tatum will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration where appropriate.

24.    Neither Tatum nor Mr. Porter are creditors of the Debtors' bankruptcy estates as of the Petition Date.

**BASIS FOR RELIEF**

25.    Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law in this and other circuits, courts will approve a debtor's proposed use of assets under section 363(b) if it represents a sound business purpose on the part of the debtor. *See*, *e.g.*, *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider

a variety of factors, which essentially represent a business judgment test."); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (explaining that courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b) when there is a legitimate business justification); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (stating that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

26. Under the business judgment rule, a court will not interfere with the judgment of a board of directors unless there is a showing of "gross and palpable overreaching." *In re Marvel Entm't Group, Inc.*, 273 B.R. 58, 78 (Bankr. D. Del. 2002) ("[U]nder the business judgment rule, a board's 'decisions will not be disturbed if they can be attributed to any rational purpose' and a court 'will not substitute its own notions of what is or is not sound business judgment.'" (*citing Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 719-20 (Del. 1971))).

27. Further, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide additional authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also US. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *Adelphia Commc'ns Corp. v. Am. Channel (In re Adelphia Commc'ns Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process."); *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

28. The employment of Mr. Porter as Interim CFO pursuant to the terms of the Services Agreement is a sound exercise of the Debtors' business judgment. As detailed herein, the Debtors selected Mr. Porter to serve as Interim CFO because of his significant relevant experience and reputation, especially in the health care industry.

29. Further, the Debtors believe that Fee and Expense Structure is fair and reasonable in light of the types of services being provided and is consistent with the fee structures generally offered by firms of similar stature to Tatum for comparable engagements.

30. The Debtors are not seeking to retain Tatum or Mr. Porter as a professional under section 327 of the Bankruptcy Code. Accordingly, the Debtors submit there is no requirement that Tatum or Mr. Porter be disinterested. However, to the best of the Debtors' knowledge, information and belief, neither Tatum nor Mr. Porter has any interest materially adverse to the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. Further, the Debtors understand that Tatum and Mr. Porter believe they are disinterested because, to the best of their knowledge, information, and belief, Tatum and Mr. Porter have no connection with the Debtors, their creditors, or any other party-in-interest, except as disclosed in the Porter Declaration.

31. The employment of corporate officers is proper under section 363 of the Bankruptcy Code, and courts in this district have recognized that such employment is an appropriate exercise of a debtor's business judgment. *See*, *e.g.*, *In re Promise Healthcare Group, LLC*, Case No. 18-12491 (CSS) (Bankr. D. Del. Dec. 10, 2018) [D.I. 273] (authorizing the retention of a firm to designate turnaround management officers *nunc pro tunc* to the petition date); *In re J & M Sales, Inc.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 27, 2018) [D.I.

279] (same); *In re The Nordam Group, Inc.*, No. 18-11699 (MFW) (Bankr. D. Del. Aug. 28, 2018) [D.I. 216] (same); *In re Appvion*, Case No. 17-12082 (MFW) (Bankr. D. Del. Oct. 30, 2017) [D.I. 216] (same); *In re Vertellus Specialties Inc.*, Case No. 16-11290 (CSS) (Bankr. D. Del. July 7, 2016) [D.I. 183] (same).

## **NOTICE**

32.    The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

35560771.5 07/18/2019

**WHEREFORE**, the Debtors respectfully request the entry of an order, substantially in the form of the Proposed Order: (i) approving the agreement with Tatum to provide an Interim CFO; (ii) approving the designation of Phil Porter as Interim CFO for the Debtors pursuant to the terms and conditions of the Services Agreement; and (iii) granting such other and further relief as this Court deems just and proper.

Dated: July 18, 2019

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Aaron S. Applebaum*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*