**EXHIBIT B**

**PROPOSED REVISED BIDDING PROCEDURES ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (KG) |
| | Jointly Administered |
| Debtors. | **Re: Docket No. 142** |

## ORDER (I)(A) ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALE OF THE DEBTORS' RESIDENT PROGRAM ASSETS, INCLUDING APPROVING A BREAK-UP FEE, (B) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, (C) APPROVING FORM AND MANNER OF NOTICE RELATING THERETO, AND <u>(D) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE</u>

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**") for the entry of an order (this "**Bidding Procedures Order**"):  (a) approving the proposed bidding procedures attached as **<u>Schedule 1</u>** to this Bidding Procedures Order (the "**Bidding Procedures**"), by which the Debtors will solicit and select the highest or otherwise best offer for the sale (the "**Sale**") of the Residents Program Assets; (b) establishing procedures for the assumption and assignment of executory contracts, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**");

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]    Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

(c) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto; (d) approving the Debtors' selection of Tower Health ("**Tower Health**") as the stalking horse bidder (the "**Stalking Horse Bidder**")[3], the Break-Up Fee (as defined below) for the Stalking Horse Bidder, and that certain asset purchase agreement (as may be amended from time to time, the "**Stalking Horse Sale Agreement**"), as filed with the Court [D.I. __], among Debtor Center City Healthcare, LLC d/b/a Hahnemann University Hospital (the "**Seller**") and the Stalking Horse Bidder; (e) scheduling a final hearing (the "**Sale Hearing**") to approve the Sale; and (f) granting related relief, and upon the Debtors' further request that, at the Sale Hearing, this Court enter an order (a "**Sale Order**"), a proposed form of which is attached as Exhibit E to the Stalking Horse Sale Agreement: (x) authorizing the sale of the Residents Program Assets free and clear of Interests as defined in footnote 4, below (the "**Interests**")[4], with any such Interests to attach to the proceeds thereof with the same validity, extent and priority (under the Bankruptcy Code) as such Interests existed immediately prior to the consummation of the Sale; (y) authorizing the assumption and assignment of certain executory contracts; and (z) granting related relief, all as more fully described in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding

---

[3]     The Court has been advised that Reading Hospital, a subsidiary of Tower Health, will actually serve as the Stalking Horse Bidder and, as a result, all references herein to the Stalking Horse Bidder shall be deemed to include Reading Hospital.

[4]     Interests shall include: (i) mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, rights of offset, judgments, demands, encumbrances and claims (as that term is defined in the Bankruptcy Code), (ii) rights or options to effect any forfeiture, modification, repurchase, or termination of the Seller's or purchaser's interest in the Assigned Contracts and/or Residents Program Assets, regardless whether such are "claims" as that term is defined in the Bankruptcy Code, (iii) claims of the Pension Benefit Guaranty Corporation or any plan participant or beneficiary, (iv) tax claims (including taxes as to which applicable returns have not yet been filed, whether or not overdue), and (v) easements, restrictions, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, regardless whether such are "claims" as that term is defined in the Bankruptcy Code.

pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS THAT**:

A.    The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The statutory bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014, and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").  The legal and factual

bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

D.      Notice of the Motion, as relates to the Bidding Procedures Hearing and the proposed entry of this Bidding Procedures Order, was adequate and sufficient under the circumstances of these Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Notice of the Motion as relates to the Bidding Procedures Hearing and the proposed entry of this Bidding Procedures Order has been given to: (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Debtors' Residents Program Assets during the past six (6) months; (b) all entities known to have asserted any Interest in or upon any of the Debtors' Residents Program Assets; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) known counterparties to any unexpired leases or executory contracts related to the Residents Program Assets that could potentially be assumed and assigned to the Successful Bidder; (e) counsel to MidCap Funding IV Trust; (f) Drexel University d/b/a Drexel University College of Medicine; (g) the Debtors' unions; (h) the Internal Revenue Service; (i) the United States Attorney for the District of Delaware; (j) the United States Department of Justice; (k) the Pennsylvania Attorney General's Office; (l) the Pennsylvania Department of Human Services; (m) the City of Philadelphia; (n) the CMS; (o) the ACGME; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  Accordingly, no further notice of the Motion as relates to the Bidding Procedures Hearing and the proposed entry of this Bidding Procedures Order is necessary or required.

E.      The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion as relates to the entry of this Bidding Procedures Order, including, without limitation:  (a) approval of the Bidding Procedures; (b) approval of the selection of the Stalking Horse Bidder and approval of the Break-Up Fee to be paid to the Stalking Horse Bidder under the circumstances described in the Motion; (c) approval of the Assumption and Assignment Procedures; (d) approval of the form and manner of notice of all procedures, protections, schedules, and agreements described in the Motion and attached thereto; (e) the scheduling of a date for the Sale Hearing; and (f) all related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the hearing for such Motion, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.      Entry into the Stalking Horse Sale Agreement with the Stalking Horse Bidder is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment.  The Stalking Horse Sale Agreement provides the Debtors with the opportunity to sell the Residents Program Assets in order to preserve and realize their optimal value, while at the same time minimizing the negative impact of the closure of Hahnemann University Hospital on Residents, as well as upon the Debtors' academic affiliation partner, Drexel University.

G.      The Bidding Procedures, in the form attached hereto as **Schedule 1** and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates.  The Break-Up Fee:  (a) shall, if triggered, be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 503(b)

and 507(a)(2) of the Bankruptcy Code in accordance with the Stalking Horse Sale Agreement; (b) is commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (c) is reasonable and appropriate, including in light of the size and nature of the Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the Sale is subject to higher or better offers; and (d) was necessary for the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse Sale Agreement.

H.     The Debtors have demonstrated a reasonable business justification for the payment of the Break-Up Fee under the circumstances set forth in the Stalking Horse Sale Agreement.  The Bidding Procedures and the Break-Up Fee were a material inducement to, and express condition of, the willingness of the Stalking Horse Bidder to submit bids through execution of the Stalking Horse Sale Agreement that will serve as a minimum or floor bid on which the Debtors, their creditors, and other bidders may rely.  Unless it is assured that the Break-Up Fee will be available, the Stalking Horse Bidder is unwilling to be bound under the Stalking Horse Sale Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated in the Bidding Procedures).  The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Residents Program Assets will be realized and that Residents will be protected.

I.     The Assumption and Assignment Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the applicable Designated Contracts in connection with the sale of the Residents Program Assets and the related Cure Costs, and no other or further notice shall be required.  The

Motion and the Assumption and Assignment Notice are reasonably calculated to provide counterparties to any Designated Contracts with proper notice of the intended assumption and assignment of their Designated Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

J.     The Auction and Sale Notice attached hereto as **Schedule 5** is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Residents Program Assets, including, without limitation:  (a) the date, time, and place of the Auction (if one is held); (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d)  identification of the assets to be sold; (e) instructions for promptly obtaining copies of the Stalking Horse Sale Agreement; (f) a description of the Sale as being free and clear of all Interests, with all Interests attaching with the same validity and priority to the Sale proceeds; and (g) notice of the proposed assumption and assignment of Designated Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse Sale Agreement (or to another Successful Bidder arising from the Auction, if any), and no other or further notice of the Sale shall be required.

K.     All current and former patients of Debtor Center City Healthcare, LLC ("Center City") who have, as of the date of this order, asserted claims against Center City, including but not limited to claims formally asserted by the filing of suit or a proof of claim in these Bankruptcy Cases and claims informally asserted by letter or by a request for medical records from a lawyer or otherwise (the "Known Patient Creditors") shall be treated as known creditors of the Debtors for purposes of notice requirements related to the Sale.

L.     All current and former patients of Center City who, as of the date of this order, are not Known Patient Creditors (including current and former patients who are not, as of the date of

this order, aware that they have or may have claims against the Debtors including such patients as to whom personal injury has not manifested as of the date of this order) (the "Unknown Patient Creditors") shall be treated as unknown creditors of the Debtors for purposes of the notice requirements related to the Sale.

M.    The Debtors' marketing process has been reasonably calculated to maximize value for the benefit of all stakeholders.

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted as provided herein.[5]

2.    All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.    Timeline for the Sale**

3.    The Debtors are authorized to perform any obligations of the Debtors set forth in the Stalking Horse Sale Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order.  The Debtors, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**"), as indicated herein and in the Bidding Procedures, are authorized to proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

---

[5]    Notwithstanding anything to the contrary herein, or in the Bidding Procedures, the acceptance of a Bid and Sale Agreement by the Debtors and the consummation of a Sale are subject to entry of the Sale Order.

| Milestone | Proposed Date |
|---|---|
| Deadline to Object to Approval of the Sale to the Stalking Horse Bidder on the terms of the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement | 4:00 p.m. (prevailing Eastern Time) on August 5, 2019 |
| Bid Deadline | 4:00 p.m. (prevailing Eastern Time) on August 5, 2019 |
| Auction (if necessary) | 10:00 a.m. (prevailing Eastern Time) on August 7, 2019 |
| Sale Hearing | August ___, 2019 |
| Deadline to Object to conduct of the Auction and Sale to a Successful Bidder (Other than a Sale to the Stalking Horse Bidder on the terms of the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement) | (may be raised at the Sale Hearing) |

4.      For the avoidance of doubt, the Debtors, in consultation with the Committee, reserve the right, and are authorized to, modify the above timeline and the Bidding Procedures in accordance with the provisions of the Bidding Procedures, subject to the terms of the Stalking Horse Sale Agreement.

**II.     The Bidding Procedures**

5.      The Bidding Procedures, substantially in the form attached hereto as **Schedule 1**, are approved in their entirety.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures, in accordance therewith and the Stalking Horse Sale Agreement.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

35602324.9 07/19/2019

6.      The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest.  As further described in the Bidding Procedures, the Bid Deadline shall be 4:00 p.m. (prevailing Eastern Time) on August 5, 2019. Any disputes or objections to the selection of Qualified Bids, Successful Bids, or Backup Bids (all as defined in the Bidding Procedures) shall be resolved by this Court at the Sale Hearing as set forth herein.

7.      The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement is deemed a Qualified Bid. In the event that no other Qualified Bids are submitted, the Debtors shall deem the Stalking Horse Bidder to be the Successful Bidder.

8.      The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.  The Auction, to the extent that an Auction is necessary under the Bidding Procedures, shall take place at 10:00 a.m. (prevailing Eastern Time) on August 7, 2019 at the offices of the proposed counsel for the Debtors, Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102 (or at any other time and location as the Debtors may hereafter designate on proper notice).  The Auction will be conducted openly and all creditors and the Committee will be permitted to attend.

9.      Any creditor with a valid and perfected lien on all of the Residents Program Assets (each, a "**Secured Creditor**") shall have the right, subject in all respects to the Bankruptcy Code and other applicable law (and the rights of the Committee and other parties in interest to object to or challenge such creditor's lien thereunder (a "**Challenge**")), to credit bid all or any portion of such Secured Creditor's allowed secured claims to purchase the Residents

Program Assets to the extent that such secured claims are valid and undisputed pursuant to Bankruptcy Code section 363(k) or other applicable law, unless otherwise ordered by the Bankruptcy Court for cause.  The foregoing notwithstanding, any credit bid shall include a cash component sufficient to satisfy in full all costs of sale, including the Break-Up Fee. In the event that the Committee, or another party in interest Challenges a creditor's lien, the approval of a Successful Bid by such creditor that includes a credit bid shall be contingent upon a final determination that such creditor's lien is valid and perfected.  In the event that such a creditor's lien is successfully Challenged, or otherwise determined not to be valid and perfected, such creditor shall pay the credit bid portion of its Bid in cash at the closing of the Sale.

10.    Further, in the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to include all or any portion of the Break-Up Fee in lieu of cash and have the Break-Up Fee be treated as equal to cash in the same amount for the purposes of evaluating the overbid.

**III.**    **Stalking Horse Bidder, Bid Protections, and Stalking Horse Sale Agreement**

11.    The Debtors are authorized to enter into the Stalking Horse Sale Agreement, subject to higher or otherwise better offers at the Auction.  The Break-Up Fee described in the Bidding Procedures is approved.  The Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidder on account of the Break-Up Fee upon the Debtors' closing of the Sale with a purchaser other than the Stalking Horse Bidder (an "**Alternative Transaction**").  If triggered, the Break-Up Fee: (a) shall be an allowed administrative expense claim under section 503(b) and 507 of the Bankruptcy Code and a direct cost of any such Sale; and (b) shall be payable in at closing on the Alternative Transaction without further order of this Court; and (c) shall be payable solely from the proceeds of such Alternative Transaction.  No Interests shall

35602324.9 07/19/2019

attach to the proceeds of any such Alternative Transaction equal to the amounts owed to the Stalking Horse Bidder on account of the Break-Up Fee.

## IV.    Notice Procedures

12.    The Auction and Sale Notice is approved.

*A.    Notice of Sale, Auction, and Sale Hearing.*

13.    Within two (2) business days after the entry of this Bidding Procedures Order, or as soon as reasonably practicable thereafter (the "**Mailing Date**"), the Debtors shall serve the Auction and Sale Notice by first-class mail, electronic mail or, for those parties who have consented to receive notice by the Electronic Case Files ("**ECF**") system, by ECF, upon (a) the Notice Parties, (b) all Residents, and (c) all known creditors of Center City, including any Known Patient Creditors. In addition, on or before the Mailing Date, the Debtors shall serve the *Notice to Residents and Fellows Regarding Proposed Sale of Residency Program Assets* (the "**Residents' Notice**"), in substantially the form attached hereto as **Schedule 2**, on all Residents by first class mail or electronic mail.

14.    Service of the Auction and Sale Notice and the Residents' Notice as described in paragraph 13 above shall be sufficient and proper notice of the and satisfies all due process requirements.

15.    Within ten (10) days of the date of this Bidding Procedures Order, the Debtors shall cause the notice (the "**Publication Notice**") substantially in the form attached hereto as **Schedule 3** to be published once in the National Edition of *USA Today* and once in the *Philadelphia Inquirer*. The Publication Notice shall be sufficient and proper notice of the Sale to all creditors whose identities are unknown to the Debtors, including all of the Unknown Patient Creditors.

        **B.**     *Notice of Successful Bidder.*

16.     As soon as reasonably practicable after the Bid Deadline, if no Qualified Bid

other than the Stalking Horse Sale Agreement is received by the Bid Deadline, or conclusion of

the Auction, if a Qualified Bid other than the Stalking Horse Sale Agreement is received by the

Bid Deadline, the Debtors shall file on the docket, but not serve, a notice which shall identify the

Successful Bidder.

**V.**     <u>**Assumption and Assignment Procedures**</u>

17.     The Assumption and Assignment Procedures, which are set forth below,

regarding the assumption and assignment of the executory contracts proposed to be assumed by

the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking

Horse Bidder (or other Successful Bidder, following the Auction, if any) pursuant to section

365(f) of the Bankruptcy Code and in accordance with the Stalking Horse Sale Agreement are

hereby approved to the extent set forth herein.

        **A.**     *Notice of Assumption and Assignment.*

18.     The Debtors previously filed with the Court, [D.I. ●], a list (the "**Initial**

**Designated Contracts List**") specifying:  (a) each of the Debtors' executory contracts that may

be assumed and assigned in connection with the Sale (the "**Initial Designated Contracts**"),

including the name of each non-Debtor counterparty to such Designated Contract (the "**Initial**

**Designated Contract Counterparty**"); and (b) the proposed amount necessary, if any, to cure

all monetary defaults, if any, under the Initial Designated Contract (the "**Cure Costs**").

19.     On the Mailing Date, the Debtors shall serve the Notice of Proposed Assumption

and Assignment of Executory Contracts attached hereto as <u>**Schedule 4**</u> (the "**Initial Notice of**

**Assumption and Assignment**") on all Initial Designated Contract Counterparties by first-class

mail, email or, for those parties who have consented to receive notice by the Electronic Case Files ("**ECF**") system, by ECF.

20.     Any Initial Designated Contract Counterparty may file an objection (a "**Contract Objection**") to the proposed assumption and assignment of the applicable Initial Designated Contract, the proposed Cure Costs, if any, and the ability of the Stalking Horse Bidder to provide adequate assurance of future performance.  All Contract Objections must:  (a) be in writing; (b) state with specificity the basis for the objection as well as any Cure Costs that the objector asserts to be due, including each and every asserted default in the applicable contract or lease (in all cases with appropriate documentation in support thereof); (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed and served on (i) Saul Ewing Arnstein & Lehr LLP, 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Mark Minuti (mark.minuti@saul.com) and Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania, 19102, Attn: Jeffrey C. Hampton (jeffrey.hampton@saul.com), proposed counsel to the Debtors, (ii) Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey, 07102, Attn: Andrew Sherman (Asherman@sillscummis.com) and Boris Mankovetskiy (BMankoverskiy@sillscummis.com), proposed counsel to the Committee, and (iii) Stevens & Lee, P.C., 620 Freedom Business Center, Suite 200, King of Prussia, Pennsylvania 19406, Attn: Robert Lapowsky (rl@stevenslee.com), counsel to the Stalking Horse Bidder (the "**Contract Notice Parties**") by 4:00 p.m. (prevailing Eastern Time) on August 5, 2019 (the "**Initial Designated Contract Objection Deadline**").  Objections to the ability of a Successful Bidder other than the Stalking Horse Bidder to provide adequate assurance of future performance shall be raised at or prior to the Sale Hearing.

21.     If an Initial Designated Contract Counterparty files a Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, such Contract Objection will be determined at the Sale Hearing.

B.     ***Modification of Initial Designated Contracts List and Supplemental Notice of Assumption and Assignment.***

22.     Prior to the selection of a Successful Bidder, the Debtors may not modify the Initial Designated Contracts List without the consent of the Stalking Horse Bidder. Subsequent to the selection of a Successful Bidder, the Debtors may not modify the Initial Designated Contracts List without the consent of the Successful Bidder (who may be the Stalking Horse Bidder).

23.     Until the opening of business on the date of the Auction, if another Qualified Bid is received by the Bid Deadline, or the conclusion of the Sale Hearing, if another Qualified Bid is not received by the Bid Deadline, at the request of the Stalking Horse Bidder, the Debtors will modify the Initial Designated Contracts List to add or delete contracts and/or to change stated Cure Costs. Following the conclusion of the Auction, if an Auction occurs, and prior to the conclusion of the Sale Hearing, at the request of the Successful Bidder (who may be the Stalking Horse Bidder), the Debtors will modify the Initial Designated Contracts List to add or delete contracts and/or to change stated Cure Costs, *provided*, *however*, that such deletion of any contracts shall not result in any reduction in the Purchase Price (as defined in the Stalking Horse Sale Agreement"), and any contracts added after the Auction will not be considered in connection with the right of termination in Article 9.1(c) of the Stalking Horse Sale Agreement. For the avoidance of doubt, the Initial Designated Contracts List may be modified more than

once. The contracts listed on the Initial Designated Contracts List, as modified from time to time, are hereafter referred to as the "**Designated Contracts**").

24.     In the event that the Initial Designated Contracts List is modified, the Debtors will promptly serve a supplemental notice of assumption and assignment (a "**Supplemental Notice of Assumption and Assignment**") on the affected counterparty in the same manner as the Initial Notice of Assumption and Assignment was served.  Each Supplemental Notice of Assumption and Assignment will include the same information with respect to listed contracts as was included in the Notice of Assumption and Assignment.

25.     Any counterparty to an executory contract listed on a Supplemental Notice of Assumption and Assignment (each a "**Supplemental Designated Contract Counterparty**") may file an objection with respect to the applicable Designated Contract (a "**Supplemental Contract Objection**") to (a) Cure Costs (but only to the extent reduced  as to contracts included on the Initial Notice of Assumption and Assignment or any prior Supplemental Notice of Assumption and Assignment), and (b) if such Designated Contract was not included on the Initial Notice of Assumption and Assignment or any prior Supplemental Notice of Assumption and Assignment, (i) the proposed assumption and assignment of the applicable Designated Contract and (ii) the ability of a Successful Bidder, including the Stalking Horse Bidder, to provide adequate assurance of future performance.  All Supplemental Contract Objections must: (a) be in writing; (b) state with specificity the basis for the objection as well as any Cure Costs that the objector asserts to be due (in all cases with appropriate documentation in support thereof); (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed and served on the Contract Notice Parties no later than seven (7) days from the date of service of such Supplemental Notice of Assumption and Assignment, which date will be set forth in the

Supplemental Notice of Assumption and Assignment (the "**Supplemental Contract Objection Deadline**").

26.     If a Supplemental Designated Contract Counterparty files a Supplemental Contract Objection in a manner that is consistent with the requirements set forth above and the parties are unable to consensually resolve the dispute, (a) if the Supplemental Contract Objection Deadline is on or before the date of the Sale Hearing, such Supplemental Contract Objection will be determined at the Sale Hearing, and (b) if the Supplemental Contract Objection Deadline is after the date of the Sale Hearing the Debtors will seek an expedited hearing before the Court to determine the Supplemental Contract Objection.  If there is no such Supplemental Contract Objection (or such objection has been resolved), then the Debtors may submit an order to this Court, including by filing a certification of counsel, fixing the applicable Cure Costs and approving the assumption of the contract listed on a Supplemental Notice of Assumption and Assignment.

C.     *Additional Notice of Assumption and Assignment Procedures.*

27.     If the counterparty to any Designated Contract does not file and serve a Contract Objection or Supplemental Contract Objection, as applicable, in a manner that is consistent with the requirements set forth above, (a) the Cure Costs, if any, set forth in the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) shall be controlling with respect to the applicable Designated Contract, notwithstanding anything to the contrary in any Designated Contract or any other document, and (b) the Designated Contract Counterparty will be deemed to have consented to the assumption and assignment of the Designated Contract and the Cure Costs, if any, and will be forever barred from asserting any claim related to such Designated Contract for any default occurring or continuing prior to the date of the assumption

and assignment of such Designated Contract against the Debtors or the Successful Bidder, or the property of any of them.

28.    The inclusion of a Designated Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not:  (a) obligate the Debtors to assume any Designated Contract listed thereon or the Successful Bidder to take assignment of such Designated Contract; or (b) constitute any admission or agreement of the Debtors that such Designated Contract is an executory contract.    Only those Designated Contracts that are included on a schedule of assumed and acquired contracts attached to the final asset purchase agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the Successful Bidder.

## VI.    Sale Hearing.

29.    A Sale Hearing to (a) approve the sale of the Debtors' Residents Program Assets to the Successful Bidder and (b) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held at _____ (prevailing Eastern Time) on August [●], 2019, and may be adjourned or rescheduled without further notice other than by announcement in open court on the date scheduled for the Sale Hearing or by the filing of a notice on the Court's docket.    At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Sale to the Successful Bidder, including any Backup Bidder.    The Sale Hearing shall be an evidentiary hearing on matters relating to the Sale.    In the event that the Successful Bidder cannot or refuses to consummate the Sale after the Sale has been approved by the Court, the Debtors may, in consultation with the Committee, in accordance with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors, in consultation with the Committee, shall be

authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court.

30.    Any and all objections, if any, to (a) the Sale to the Stalking Horse Bidder on the terms of the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement and (b) entry of the Sale Order approving such Sale (a "**Sale Objection**") must be filed and served on (i) Saul Ewing Arnstein & Lehr LLP, 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Mark Minuti (mark.minuti@saul.com), proposed counsel to the Debtors, (ii) Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey, 07102, Attn: Andrew Sherman (Asherman@sillscummis.com) and Boris Mankovetskiy (BMankoverskiy@sillscummis.com), proposed counsel to the Committee, and (iii) Stevens & Lee, P.C., 620 Freedom Business Center, Suite 200, King of Prussia, Pa. 19406 Attn: Robert Lapowsky (rl@stevenslee.com), counsel to the Stalking Horse Bidder by 4:00 p.m. (prevailing Eastern Time) on August 5, 2019 (the "**Sale Objection Deadline**").  Any and all objections to the conduct of the Auction and the terms of a Sale to a Successful Bidder (other than a Sale to the Stalking Horse Bidder on the terms of the Stalking Horse Bid as set forth in the Stalking Horse Sale Agreement) (an "**Auction Objection**") must be raised at or prior to the Sale Hearing (the "**Auction Objection Deadline**").  Any party failing to timely file a Sale Objection or raise an Auction Objection, as applicable, will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the Debtors' right, title and interest in, to, and under the assets free and clear of any and all Interests. For the avoidance of doubt, if the Stalking Horse Bidder is selected as the Successful Bidder, but its successful Bid is not the Stalking Horse Bid or an increased bid based on an agreement substantially similar to the Stalking Horse Sale Agreement, objections to a Sale

to the Stalking Horse Bidder, limited to the changed terms (excluding any increase in price) may be raised by the Auction Objection Deadline.

**VII.** **Miscellaneous.**

31.       Notwithstanding anything to the contrary in any asset purchase agreement or document relating to the Sale, the purchased assets (including the Residents Program Assets) shall not include (i) any cause of action or proceeds of such cause of action under chapter 5 of the Bankruptcy Code or applicable state law equivalents; (ii) any commercial or other tort claims arising on or before the closing date of the Sale, or any proceeds of such claims, including, without limitation, any and all causes of action (a) against present and former directors and officers of the Debtors and/or any of their affiliates, (b) against direct and indirect equity holders of the Debtors and/or their affiliates, and (c) of the Debtors and/or any of their affiliates against any other Debtors; and (iii) any claims or causes of action against the Debtors' contract counterparties (other than claims or causes of action arising under any contract that is assumed by the Debtors), or any proceeds of such claims or causes of action. The provisions of this paragraphs shall not apply to the Stalking Horse Sale Agreement, as the same may be modified other than any modifications to the defined term "Purchased Assets."

32.       This order and the Bidding Procedures shall be interpreted so as to afford the Debtors, in consultation with the Committee, the greatest opportunity to maximize the value of the Residents Program Assets for the benefit of the Debtors' estates *provided*, *however*, the provisions of this paragraph shall not apply to any matters affecting the Stalking Horse Bidder without the consent of the Stalking Horse Bidder.

33.       The Debtors, in consultation with the Committee as applicable, are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

35602324.9 07/19/2019

34.     This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

35.     This Bidding Procedures Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors. Certain provisions of this Bidding Procedures Order that relate to the Break-Up Fee shall inure to the benefit of the Stalking Horse Bidder and its affiliates, successors, and assigns.

36.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, any Stalking Horse Sale Agreement, and the implementation of this Bidding Procedures Order.

35602324.9 07/19/2019

# SCHEDULE 1

# BIDDING PROCEDURES

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

### BIDDING PROCEDURES

On July [●], 2019, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered the *Order (I) Establishing Bidding Procedures and Granting Related Relief and (II) Approving the Sale of the Debtors' Resident Program Assets Free and Clear of Liens, Claims, Encumbrances, and Interests* [Docket No. [●]] (the "**Bidding Procedures Order**"),[2] by which the Bankruptcy Court approved the following procedures (the "**Bidding Procedures**").  These Bidding Procedures set forth the process by which the Debtors, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**") as set forth herein, are authorized to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of the resident program assets related to the operation of Hahnemann University Hospital, including: (a) National Provider Identifiers (general and psych) and Medicare provider number and agreement, (b) the Pennsylvania Department of Health license to operate an acute care hospital, and (c) the Hahnemann training programs for Residents (collectively, the "**Residents Program Assets**"), in accordance with and as described in that certain agreement (the "**Stalking Horse Sale Agreement**"), dated as of July [●], 2019, by and among Center City Healthcare, LLC d/b/a Hahnemann University Hospital and Tower Health (the "**Stalking Horse Bidder**"), or in accordance with the terms of such higher and better offer as determined by the Debtors, in consultation with the Committee, to be the Successful Bidder (defined below).

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

A.    Submissions to the Debtors and the Committee.

All submissions to the Debtors and the Committee required to be made under these Bidding Procedures must be directed to each the following persons unless otherwise provided (collectively, the "**Notice Parties**"):

      a.    **Debtors**.  Center City Healthcare, LLC, 230 North Broad Street, Philadelphia, Pennsylvania, Attn: Allen Wilen, Chief Restructuring Officer.

      b.    **Debtors' Counsel**.  Saul Ewing Arnstein & Lehr LLP, 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Mark Minuti (mark.minuti@saul.com).

      c.    **Debtors' Investment Banker**.  SSG Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, West Conshohocken, PA 19428 Suite 420, Attn: J. Scott Victor (jsvictor@ssgca.com); Teresa Kohl (tkohl@ssgca.com); and Craig Warznak (cwarznak@ssgca.com).

      d.    **Committee's Counsel**.  Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, Attn: Andrew Sherman (asherman@sillscummis.com) and Boris Mankovetskiy (bmankovetskiy@sillscummis.com).

B.    Potential Bidders.

The Debtors and their financial advisors have identified, and may in the future, in consultation with the Committee, identify, parties they believe potentially may be interested in consummating (and potentially may have the financial resources necessary to consummate) a competing transaction.  To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (each, a "**Potential Bidder**"), other than the Stalking Horse Bidder, must deliver or have previously delivered, if determined to be necessary by the Debtors:

      a.    an executed confidentiality agreement on terms acceptable to the Debtors, in consultation with the Committee (a "**Confidentiality Agreement**"), to the extent not already executed; and

      b.    the most current audited and latest unaudited financial statements (collectively, the "**Financials**") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Residents Program Assets, (i) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, in consultation with the Committee, (ii) a written commitment acceptable to the Debtors and their advisors, in consultation with the Committee, of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the applicable Sale, and (iii) copies of any documents evidencing any financing commitments necessary to consummate the transaction.

C.    Qualified Bidders.

    a.    A "**Qualified Bidder**" is a Potential Bidder:  (i) whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate the Sale, as determined by the Debtors, in consultation with the Committee; and (ii) whose Bid (as defined below) is a Qualified Bid (as defined below).  On or before the date that is one (1) business day after the Bid Deadline (defined below), the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder.  The Stalking Horse Bidder shall be deemed a Qualified Bidder at all times.  MidCap Funding IV Trust ("**Midcap**"), solely to the extent it seeks to credit bid, shall be deemed a Qualified Bidder at all times; *provided* that MidCap Funding IV Trust's right to credit bid shall be subject to the provisions set forth in the Bidding Procedures Order and these Bidding Procedures.

    b.    If any Potential Bidder is determined by the Debtors, in consultation with the Committee, not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit (as defined below) and all accumulated interest thereon on or within three (3) business days after the Bid Deadline.

    c.    Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the written consent of the Debtors, in consultation with the Committee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided*, *however*, that any Qualified Bid may be improved at the Auction as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

    d.    Any disputes related to these Bidding Procedures, including whether a Bid constitutes a Qualified Bid, shall be resolved by the Bankruptcy Court.

D.    Due Diligence.

    **a.    Diligence Provided to Potential Bidders**.

Only (a) the Stalking Horse Bidder, and (b) Potential Bidders that have entered into a Confidentiality Agreement shall be eligible to receive due diligence information related to the Residents Program Assets.  **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement**.  The Debtors will provide to each Potential Bidder that has entered into a Confidentiality Agreement reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request.  For all Potential Bidders other than the Stalking Horse Bidder, the due

diligence period will end on the Bid Deadline and subsequent to the Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Residents Program Assets, the Debtors' liabilities, or the Sale ("**Confidential Sale Information**") to any person, except to a Potential Bidder that has entered into a Confidentiality Agreement or to such Potential Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement; *provided, however*, that nothing herein shall limit the Debtors' ability to furnish Confidential Sale Information to the professional advisors of any official committee appointed in the Debtors' chapter 11 cases on a professionals' eyes only basis. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided* that the Debtors, in consultation with the Committee, may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

The Debtors also reserve the right to withhold from Potential Bidders any diligence materials that the Debtors, in consultation with the Committee, determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors, in consultation with the Committee, determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not approved by the Debtors, in consultation with the Committee, as a Potential Bidder; *provided, however*, that, subject to the limitations set forth in the immediately preceding paragraph, the Debtors may furnish information to MidCap and the Committee.

**All due diligence requests must be directed by email to SSG Advisors, LLC Attn: J. Scott Victor (jsvictor@ssgca.com); Teresa Kohl (tkohl@ssgca.com); and Craig Warznak (cwarznak@ssgca.com); or by phone to (610) 940-3615.**

     **b.**     **Diligence Provided by Potential Bidders**.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate the Sale. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Committee, to determine that such Potential Bidder is not a Qualified Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids (as defined below) during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information:  (a) with the prior written consent of such bidder and the Debtors; (b) to the applicable bidder; (c) to the professional advisors of any official committee appointed in the Debtors' chapter 11 cases, and (d) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

E.      Bid Requirements.

A proposal, solicitation, or offer (each, a "**Bid**") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (collectively, the "**Bid Requirements**"), as determined by the Debtors, in consultation with the Committee, in their reasonable business judgment, shall constitute a "**Qualified Bid**."  For the avoidance of doubt, notwithstanding the following, the Stalking Horse Sale Agreement will be deemed a Qualified Bid for all purposes.

a.      **Assets**.  Each Bid must provide for the purchase of all or substantially all of the Residents Program Assets, and must clearly state which assets the Qualified Bidder is agreeing to purchase.

b.      **Purchase Price**.  Each Bid must clearly set forth the purchase price to be paid (the "**Purchase Price**").  The Purchase Price must be in cash consideration and must equal or exceed $7,825,000 (*i.e.*, the sum of (i) the Base Purchase Price set forth in the Stalking Horse Sale Agreement and (ii) the Break-Up Fee) and (iii) a $100,000 incremental amount (a "**Minimum Bid**").

c.      **Deposit**.  With its Bid, each Potential Bidder must submit by wire transfer of immediately available funds, a cash deposit in the amount equal to ten (10) percent of the aggregate cash Purchase Price set forth in the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "**Deposit**").  Within three (3) business days after the conclusion of any Auction, the Successful Bidder and Backup Bidder shall submit by wire transfer of immediately available funds, a supplemental cash deposit in an amount that, when added to the amount of the Deposit, is equal to ten (10) percent of the aggregate cash Purchase Price set forth in their respective Successful Bid and Backup Bid. The foregoing notwithstanding, the Stalking Horse Bidder shall not be required to submit any Deposit.

d.      **Residents**.  Each Bid must specify the Potential Bidder's proposed treatment with respect to Residents, including whether and to what extent Residents will be offered placement with the Potential Bidder and on what terms. Each Bid must further provide a description of the Potential Bidder's accreditation status with the Accreditation Council on Graduate Medical Education, including a description of accredited residency and fellowship programs currently offered by the Potential Bidder and/or expected to be offered in the future.

e.    **Same or Better Terms**.   Each Bid must be on terms that are not more burdensome to the Debtors than the terms of the Stalking Horse Sale Agreement, as determined by the Debtors, in consultation with the Committee.  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Sale and shall include a schedule of executory contracts proposed to be assumed by the Debtors and assigned to the Qualified Bidder ("**Assumed Contracts**"), and a copy of the Stalking Horse Sale Agreement clearly marked to show all changes requested by the Qualified Bidder, including those related to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid and a written commitment demonstrating to the satisfaction of the Debtors, in consultation with the Committee, that the Qualified Bidder will be able to close the transaction proposed in its Bid on the terms and conditions set forth therein (the "**Qualified Bid Documents**").

f.    **Contingencies; No Financing or Diligence Outs**.   A Bid shall not be conditioned on (i) the Potential Bidder obtaining financing, (ii) approval of the Potential Bidder's shareholders, board of directors or other internal approval, or (iii) the outcome or completion of due diligence by the Potential Bidder. Notwithstanding the foregoing, a Bid may be subject to (i) the accuracy at the closing of the Sale of specified representations and warranties, (ii) or the satisfaction at the closing of the Sale of specified conditions, which shall not be more burdensome to the Debtors, as determined in the Debtors' business judgment, in consultation with the Committee, than those set forth in the Stalking Horse Sale Agreement.

g.    **Identity**.   Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the Sale), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid.

h.    **Demonstrated Financial Capacity**.   A Qualified Bidder must have, in the Debtors' business judgment, as determined in consultation with the Committee, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.   Each Bid must be accompanied by reasonable evidence of the Qualified Bidder's ability to operate the business related to the Residents Program Assets and include a packet of information, including financial information, that will be provided to the non-Debtor counterparties to Assumed Contracts sufficient to demonstrate adequate assurance of future performance.

i.    **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include executed unconditional committed financing from a qualified source documented to the satisfaction of the Debtors, in consultation with the Committee, which demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors, in consultation with the Committee,.

j.    **Binding and Irrevocable**.  A Qualified Bid must include a signed writing stating that the Qualified Bid is irrevocable until the later of (i) two (2) business days after the closing of a Sale to another Qualified Bidder, and (ii) thirty (30) days after the conclusion of the Sale Hearing (as defined below).

k.    **Expenses; Disclaimer of Fees**.  Each Bid (other than the Stalking Horse Sale Agreement) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Potential Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

l.    **Authorization**.  Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors, in consultation with the Committee) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

m.    **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Residents Program Assets prior to submitting the Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Residents Program Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Residents Program Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid.

n.    **Adherence to Bid Procedures**.  By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

o.    **Regulatory Approvals and Covenants**.  A Bid must set forth each regulatory and third-party approval to consummate the Sale and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible).

p.    **Consent to Jurisdiction**.  Each Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing of the Sale, as applicable.

q.    **Bid Deadline**.  Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before 4:00 p.m. (prevailing Eastern Time) on August 5, 2019 (the "**Bid Deadline**").

The Debtors reserve the right, in consultation with the Committee, to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

F.    Right to Credit Bid.

At the Auction, subject to section 363(k) of the Bankruptcy Code, any Qualified Bidder who has a valid and perfected lien on all of the Resident Program Assets (a "**Secured Creditor**") shall have the right, subject in all respects to the Bankruptcy Code and other applicable law (and the rights of the Committee and other parties in interest to object or challenge such creditor's lien thereunder (a "**Challenge**")) to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code, unless otherwise ordered by the Bankruptcy Court for cause.   In the event that the Committee or another party in interest Challenges a creditor's lien, the approval of a Successful Bid by such creditor that includes a credit bid shall be contingent upon a final determination that such creditor's lien is valid and perfected.  If such creditor's lien is successfully Challenged, or otherwise determined not to be valid and perfected, such creditor shall pay the credit bid portion of its Bid in cash as the closing of the Sale.

In the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to include all or any portion of the Break-Up fee in lieu of cash..

Credit bids, if any, by Secured Creditors will not impair or otherwise affect the Stalking Horse Bidder's entitlement to the Break-Up Fee granted under the Bidding Procedures Order.

Any credit bid shall include a cash component sufficient to satisfy in full all costs of sale, including the Break-Up Fee.

G.    Auction.

If, prior to the Bid Deadline, the Debtors receive a Qualified Bid, other than the Stalking Horse Sale Agreement, the Debtors will conduct an Auction to determine the Successful Bidder. By 6:00 p.m. on the date of the Bid Deadline, the Debtors shall notify the Stalking Horse Bidder if one or more Qualified Bids were received prior to the Bid Deadline.  If the Debtors do not receive a Qualified Bid (other than the Stalking Horse Sale Agreement) prior to the Bid Deadline, the Debtors will not conduct an Auction and shall designate the Stalking Horse Bidder's Bid as the Successful Bid.

On the date that is one (1) day after the Bid Deadline, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment, in consultation with the Committee (the "**Baseline Bid**"), and provide copies of all Qualified Bid Documents supporting the Baseline Bid and each other Qualified Bid to each Qualified Bidder.  The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors, in consultation with the Committee, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, and may include, among other things: (a) the number, type, and nature of any changes to the Stalking Horse Sale Agreement, if any, requested by the Qualified Bidder, including the type and amount of Residents Program Assets sought to be acquired and obligations sought to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the applicable Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (e) the impact on Residents (collectively, the "**Bid Assessment Criteria**"). Only the Stalking Horse Bidder and other Qualified Bidders will be entitled to make any subsequent bids at the Auction.  At least one (1) day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors and the Committee whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person.

The Auction, if necessary, will be conducted at the offices of Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102 on August 7, 2019 at 10:00 a.m. (prevailing Eastern Time), or at such other time and location as designated by the Debtors.  The Auction, if necessary, shall be conducted in a timely fashion according to the following procedures:

a.    **The Debtors Shall Conduct the Auction**.

The Debtors and their professionals shall direct and preside over the Auction, in consultation with the Committee as applicable.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid.  All incremental Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of

each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

The Auction will be conducted openly and the Committee and all creditors will be permitted to attend. The Qualified Bidders, including the Stalking Horse Bidder, may appear at the Auction in person or through duly authorized representatives.

b.    **Terms of Overbids**.

"**Overbid**" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

(a)    **Minimum Overbid Increment**. The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than the sum of $100,000 (a "**Minimum Overbid Increment**").

Additional consideration in excess of the amount set forth in the respective Baseline Bid must include: (1) cash or (2) in the case of a Bid by a Secured Creditor, a credit bid of up to the full amount of such secured creditors' allowed secured claim, subject to section 363(k) of the Bankruptcy Code and any other restrictions set forth in the Bidding Procedures Order or these Bidding Procedures (including the requirement of a cash component sufficient to pay all costs of sale including the Break-Up Fee).

(b)    **Conclusion of Each Overbid Round**. Upon the solicitation of each round of applicable Overbids, the Debtors may, in consultation with the Committee, announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "**Overbid Round Deadline**") by which time any Overbids must be submitted to the Debtors and the Committee.

(c)    **Overbid Alterations**. An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, in consultation with the Committee, but shall otherwise comply with the terms of these Bidding Procedures. Any Overbid must comply with the conditions for a Qualified Bid.

(d)    **Announcing Highest Bid**. Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Committee, have (i) in the initial Overbid round, identified an Overbid as being higher or otherwise better than the Baseline Bid for the Residents Program Assets, or (ii) in subsequent rounds, identified an Overbid as

being higher or otherwise better than the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid for the Residents Program Assets (the "**Prevailing Highest Bid**").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors, in consultation with the Committee, as the Prevailing Highest Bid as well as the value attributable by the Debtors, in consultation with the Committee, to such Prevailing Highest Bid.

    c.    **Consideration of Overbids**.

The Debtors reserve the right, in their reasonable business judgment, and in consultation with the Committee, to adjourn the Auction one or more times to, among other things: (i) facilitate discussions among the Debtors, the Committee, and any Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; (iii) provide Qualified Bidders the opportunity to provide the Debtors and the Committee with such additional evidence as the Debtors, in their reasonable business judgment, in consultation with the Committee, may require, including that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount; and (iv) provide the Debtors with an opportunity to consider, in consultation with the Committee, how to value each Overbid.

    d.    **Closing the Auction**.

    (a)    The Auction shall continue until there is only one Bid that the Debtors determine, in their reasonable business judgment, and in consultation with the Committee, to be the highest or otherwise best Bid in accordance with the Bid Assessment Criteria.  Such Bid shall be declared the "**Successful Bid**," and such Qualified Bidder the "**Successful Bidder**," at which point the Auction will be closed.  The Debtors shall notify the Qualified Bidders of the Successful Bid within one business day following such selection. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid.  Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

    (b)    The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely.

    (c)    As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for the Successful Bid and Backup Bid to be filed with the Bankruptcy Court.

**e.      No Collusion; Good-Faith Offer**.

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that:  (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith offer and it intends to consummate the Sale if selected as the Successful Bidder.  All Potential Bidders and all Qualified Bidders will immediately disclose to the Debtors, the Committee, and the United States Trustee any discussions regarding employment of or offers to retain or employ any officer or insider of the Debtors.

H.      Backup Bidder.

> a.      Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, in consultation with the Committee (the "**Backup Bid**"), shall be required to serve as a backup bidder (the "**Backup Bidder**"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.  The Stalking Horse Bidder shall serve as a Backup Bidder only if (X) the Bid set forth in the Stalking Horse Agreement is not determined to be the Baseline Bid (as defined herein), and (Y) the Stalking Horse Bidder elects, in its sole discretion, to offer a higher and better bid at the Auction.  The Stalking Horse Bidder's Bid described in the Stalking Horse Agreement shall not be a Backup Bid absent the express consent of the Stalking Horse Bidder.

> b.      The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder.  The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable, until the closing of the Sale with the Successful Bidder.  The foregoing notwithstanding, if the Stalking Horse Bidder serves as the Backup Bidder, its Backup Bid shall expire on the earlier of closing on an Alternative Transaction (defined below) or September 6, 2019.  The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder and shall thereafter be returned within five (5) business days.

> c.      If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors, in consultation with the Committee, may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid without further order of the Bankruptcy Court or notice to any party.  In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors.  The Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

I.      Reservation of Rights.

Without prejudice to the rights of the Stalking Horse Bidder under the terms the Stalking Horse Sale Agreement, the Debtors reserve their rights, in consultation with the Committee, to modify these Bidding Procedures in their reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Residents Program Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all bids or Bids.

J.      Sale Hearing.

A hearing to consider approval of the Sale of the Residents Program Assets to the Successful Bidder (or to approve the Stalking Horse Agreement if no Auction is held) (the "**Sale Hearing**") is currently scheduled to take place on or before 10:00 a.m. (prevailing Eastern Time) on August  [●], 2019, before the Honorable Kevin Gross, at the United States Bankruptcy Court, 824 Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Committee, by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder). The foregoing notwithstanding, if the Sale Hearing is continued without the consent of the Stalking Horse, the Stalking Horse may terminate the Stalking Horse Agreement.**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

K.      Break-Up Fee.

To provide an incentive and to compensate the Stalking Horse Bidder for performing the substantial due diligence and incurring the expenses necessary and entering into a Stalking Horse Sale Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to pay the Stalking Horse Bidder, under the conditions set forth in the Bidding Procedures Order, a break-up fee in the amount of $225,000 (the "**Breakup Fee**").

The Break-Up fee, to the extent owed by the Debtors, (a) shall be an allowed administrative expense claim under section 503(b) and 507 of the Bankruptcy Code and a direct cost of any such Sale; (b) shall be payable at closing on of a Sale to a purchaser other than the Stalking Horse Bidder (an "**Alternative Transaction**")without further order of the Court; and (c) shall be payable solely from the proceeds of such Alternative Transaction.  No Interests shall attach to the proceeds of any such Alternative Transaction equal to the amounts owed to the Stalking Horse Bidder on account of the Break-Up Fee.

L.      Return of Deposit.

The Deposit of the Successful Bidder shall be applied to the Purchase Price of the transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors, in consultation with the Committee, and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or within five (5) business days after the Auction. The Stalking Horse Bidder shall not be required to provide a Deposit.

If the Successful Bidder fails to consummate the Sale because of a breach by the Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the Sale with the Backup Bidder without the need for an additional hearing or order of the Bankruptcy Court.

M.      Fiduciary Out.

Nothing in these Bidding Procedures shall require the Debtors' board of managers to take any action, or to refrain from taking any action, with respect to these Bidding Procedures prior to the commencement of the Auction if the Debtors' board of managers determines, based on the advice of counsel, that taking such action, or refraining from taking such action, as the case may be, is required to comply with applicable law or the board's fiduciary obligations thereunder; *provided* that, in the event  the Debtors' board of managers determines to take any action, or refrain from taking any action, pursuant to this paragraph, without the consent of the Stalking Horse Bidder, the Stalking Horse Bidder may, but shall not be required to, terminate the Stalking Horse Agreement if taking such action or refraining from taking such action, as the case may be, would otherwise be grounds for termination under the Stalking Horse Agreement, it being understood that any material modification to the Bid Procedures without the consent of the Stalking Horse would be a breach of the Stalking Horse Agreement pursuant to which the Stalking Horse would have the right to terminate the Stalking Horse Agreement.

35612177.6 07/19/2019

## SCHEDULE 2

## RESIDENT'S NOTICE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|                                                          |     |                          |
| -------------------------------------------------------- | --- | ------------------------ |
|                                                          | )   |                          |
| In re:                                                   | )   | Chapter 11               |
|                                                          | )   |                          |
| CENTER CITY HEALTHCARE, LLC d/b/a                        | )   | Case No. 19-11466 (KG)   |
| HAHNEMANN UNIVERSITY HOSPITAL, *et*                      | )   |                          |
| *al.*,[1]                                                | )   | Jointly Administered     |
|                                                          | )   |                          |
|                              Debtors.                    | )   |                          |
|                                                          | )   |                          |

**NOTICE TO RESIDENTS AND FELLOWS**
**REGARDING PROPOSED SALE OF RESIDENCY PROGRAM ASSETS**

**TO:  ALL RESIDENTS AND FELLOWS AT HAHNEMANN UNIVERSITY HOSPITAL:**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), including Center City Healthcare, LLC, the entity that operates Hahnemann University Hospital ("**Hahnemann**"), each filed a voluntary petition for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") on June 30, 2019 or July 1, 2019.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have entered into an agreement (the "**Agreement**") with Tower Health ("**Tower**") to sell certain assets related to Hahnemann's residency and fellowship training programs (the "**Sale**").  Specifically, the Debtors intend to sell to Tower: (a) National Provider Identifiers (general and psych) and Medicare provider number and agreement; (b) the Pennsylvania Department of Health license to operate an acute care hospital; and (c) to the extent assignable or transferrable, the Hahnemann training programs for residents and fellows.

**KEY DATES AND DEADLINES**

The proposed Sale is subject to the approval of the Court and subject to better offers from other qualified bidders.  On July 9, 2019, the Debtors file a motion (the "**Sale Motion**") seeking the Court's approval of the Sale and certain procedures ("**Bidding Procedures**") related to the Sale.  On July 19, 2019, the Court entered an order (the "**Bidding Procedures Order**"), which

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

sets forth certain key dates and deadlines in connection with the proposed Sale. In particular, the Bidding Procedures establish **August 5, 2019** as the deadline for parties to file objections to the Sale (the "**Sale Objection Deadline**") and as the deadline for third parties to submit competing bids. A final hearing to seek Court approval of the Sale (either to Tower or another party submitting the best bid) is currently scheduled for **August \_\_, 2019** (the "**Sale Hearing**"). A copy of the Agreement, the Bidding Procedures Order and the Bidding Procedures is enclosed herewith.

## THE PROPOSED SALE

If approved by the Court, the Agreement will enable residents and fellows (collectively herein, the "**Residents**") at Hahnemann to continue their training at one of six hospitals operated by Tower - Brandywine Hospital in Coatesville, Pennsylvania, Chestnut Hill Hospital, in Philadelphia, Pennsylvania, Jennersville Hospital in West Grove, Pennsylvania, Phoenixville Hospital in Phoenixville, Pennsylvania, Pottstown Hospital, in Pottstown, Pennsylvania, and Reading Hospital, in Reading, Pennsylvania. **Residents have a choice, and are not required to continue their training with Tower**. For any Resident who elects to complete their training elsewhere, Tower or the Debtors, as applicable, will release the related cap on Medicare reimbursement on a temporary basis to accommodate that choice.

For Residents who elect to stay with Tower, Tower will provide housing for those residents doing rotations at Reading Hospital, which is sixty miles from Hahnemann. Tower has also agreed to seek to hire the faculty who are currently training Residents at Hahnemann to ensure continuity of the Hahnemann training programs. Tower will also provide free housing (subject to parameters set forth in the Agreement) for the remainder of the academic year or during the term of a resident's existing vacated lease if it is necessary for the Resident to relocate during the current academic year. Residents will receive free meals while in any Tower hospital, and Tower will also provide additional amenities to assist Residents and their families with the transition.

If the Sale is approved by the Court to someone other than Tower, the terms of the Sale, and the impact upon Residents, may be different than those under the Agreement.

The Debtors recognize the unique difficulties and challenges facing Residents in light of the bankruptcy filing and expected closure of Hahnemann. The Debtors believe that the proposed Sale is in the best interests of Residents because it provides Residents with the option to continue their training and, to minimize, to the greatest extent possible, the impact of Hahnemann's closure on Residents, their professional training and education, and their families.

## Obtaining Additional Information

Copies of all documents filed with the Court with respect to the Debtors' bankruptcy cases are available free of charge on the website of the Court-appointed claims and noticing agent for the Debtors' chapter 11 cases, Omni Management Group, https://omnimgt.com/sblite/centercityhealthcare/. You may also contact the Debtors' attorneys,

whose contact information is in the signature block below, for more information.  In addition, Residents should contact their Program Director with questions specific to their situation.

### Filing Objections

Objections to the Sale (a "**Sale Objection**"), if any, must (a) be in writing, (b) state the basis of such objection with specificity and (c) be filed with the Court and served upon, so as to be **actually received on or prior to the Sale Objection Deadline**: (a) the Debtors Center City Healthcare, LLC, d/b/a Hahnemann University Hospital, 230 North Broad Street, Philadelphia, Pennsylvania, Attn: Allen Wilen, Chief Restructuring Officer; and (b) proposed counsel to the Debtors, Saul Ewing Arnstein & Lehr LLP, (i) 1201 North Market Street, Suite 2300, Wilmington, DE 19899, Attn: Mark Minuti; and (ii) Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA, Attn: Jeffrey C. Hampton; and (c) Stevens & Lee, P.C., 620 Freedom Business Center, Suite 200, Attn: Robert Lapowsky (rl@stevenslee.com), counsel to Tower.

### CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY ASSERT AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE RESIDENTS PROGRAM ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS.  IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.  ANY CREDITOR THAT RECEIVES NOTICE OF THE SALE HEARING AND FAILS TO TIMELY FILE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE DEEMED TO HAVE CONSENTED UNDER SECTION 363(f)(2) OF THE BANKRUPTCY CODE TO SUCH SALE FREE AND CLEAR OF SUCH CREDITOR'S LIEN OR INTERESTS, IF ANY.**

Dated: July 19, 2019        **SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Aaron S. Applebaum*
    Mark Minuti (DE Bar No. 2659)
    Monique B. DiSabatino (DE Bar No. 6027)
    1201 N. Market Street, Suite 2300
    P.O. Box 1266
    Wilmington, DE 19899
    Telephone: (302) 421-6800
    Fax: (302) 421-5873
    mark.minuti@saul.com
    monique.disabatino@saul.com

       -and-

    Jeffrey C. Hampton
    Adam H. Isenberg
    Aaron S. Applebaum (DE Bar No. 5587)
    Centre Square West
    1500 Market Street, 38th Floor
    Philadelphia, PA 19102
    Telephone: (215) 972-7700
    Fax: (215) 972-7725
    jeffrey.hampton@saul.com
    adam.isenberg@saul.com
    aaron.applebaum@saul.com

    *Proposed Counsel for Debtors and*
    *Debtors in Possession*

# SCHEDULE 3

# PUBLICATION NOTICE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) ) ) ) ) | Case No. 19-11466 (KG)  Jointly Administered |
| Debtors. | ) ) ) | |

## NOTICE REGARDING PROPOSED SALE OF RESIDENTS PROGRAM ASSETS FREE AND CLEAR OF ALL INTERESTS, INCLUDING PERSONAL INJURY CLAIMS

**TO: ALL PERSONS WITH CLAIMS AGAINST THE DEBTORS IN THE ABOVE CAPTIONED CASES, INCLUDING CLAIMS AGAINST HAHNEMANN UNIVERSITY HOSPITAL:**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), including Center City Healthcare, LLC, the entity that operates Hahnemann University Hospital ("**Hahnemann**"), each filed a voluntary petition for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") on June 30, 2019 or July 1, 2019.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have entered into an agreement (the "**Agreement**") with Reading Hospital (the "**Purchaser**") to sell certain assets related to Hahnemann's residency and fellowship training programs (the "**Sale**"). Specifically, the Debtors intend to sell to the Purchaser: (a) National Provider Identifiers (general and psych) and Medicare provider number and agreement; (b) the Pennsylvania Department of Health license to operate an acute care hospital; and (c) to the extent assignable or transferrable, the Hahnemann training programs for residents and fellows.

**PLEASE TAKE FURTHER NOTICE** that the Sale, if approved, will be free and clear of all Interests, including claims of successor liability.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

**PLEASE TAKE FURTHER NOTICE THAT, IF THE SALE IS APPROVED, THE PURCHASER WILL NOT BE LIABLE ON ACCOUNT OF ANY CLAIMS AGAINST ANY OF THE DEBTORS (OTHER THAN CLAIMS AFFIRMATIVELY ASSUMED BY THE PURCHASER), INCLUDING CLAIMS OF PATIENTS TREATED AT HAHNEMANN, INCLUDING CLAIMS OF WHICH THE HOLDER MAY NOT BE PRESENTLY AWARE.**

## KEY DATES AND DEADLINES

The proposed Sale is subject to the approval of the Court and subject to better offers from other qualified bidders.  On July 9, 2019, the Debtors file a motion (the "**Sale Motion**") seeking the Court's approval of the Sale and certain procedures ("**Bidding Procedures**") related to the Sale.  On July __, 2019, the Court entered an order (the "**Bidding Procedures Order**"), which sets forth certain key dates and deadlines in connection with the proposed Sale.  In particular, the Bidding Procedures establish **August 5, 2019** as the deadline for parties to file objections to the Sale (the "**Sale Objection Deadline**") and as the deadline for third parties to submit competing bids.  A final hearing to seek Court approval of the Sale (either to Tower or another party submitting the best bid) is currently scheduled for **August __, 2019** (the "**Sale Hearing**").

## Obtaining Additional Information

Copies of all documents filed with the Court with respect to the Debtors' bankruptcy cases are available free of charge on the website of the Court-appointed claims and noticing agent for the Debtors' chapter 11 cases, Omni Management Group, https://omnimgt.com/sblite/centercityhealthcare/. You may also contact the Debtors' attorneys, whose contact information is below, for more information.  In addition, Residents should contact their Program Director with questions specific to their situation.

## Filing Objections

Objections to the Sale (a "**Sale Objection**"), if any, must (a) be in writing, (b) state the basis of such objection with specificity and (c) be filed with the Court and served upon, so as to be **actually received on or prior to the Sale Objection Deadline**: (a) the Debtors Center City Healthcare, LLC, d/b/a Hahnemann University Hospital, 230 North Broad Street, Philadelphia, Pennsylvania, Attn: Allen Wilen, Chief Restructuring Officer; and (b) proposed counsel to the Debtors, Saul Ewing Arnstein & Lehr LLP, (i) 1201 North Market Street, Suite 2300, Wilmington, DE 19899, Attn: Mark Minuti; and (ii) Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA, Attn: Jeffrey C. Hampton; (c) Stevens & Lee, P.C., 620 Freedom Business Center, Suite 200, Attn: Robert Lapowsky (rl@stevenslee.com), counsel to Tower, and (d) Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey, 07102, Attn: Andrew Sherman (Asherman@sillscummis.com) and Boris Mankovetskiy (BMankoverskiy@sillscummis.com), proposed counsel to the Committee.

**CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY ASSERT AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE RESIDENTS PROGRAM ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS. IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING. ANY CREDITOR THAT FAILS TO TIMELY FILE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE DEEMED TO HAVE CONSENTED UNDER SECTION 363(f)(2) OF THE BANKRUPTCY CODE TO SUCH SALE FREE AND CLEAR OF SUCH CREDITOR'S LIEN OR INTERESTS, IF ANY.**

Dated: July 19, 2019          **SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Mark Minuti*
    Mark Minuti (DE Bar No. 2659)
    Monique B. DiSabatino (DE Bar No. 6027)
    1201 N. Market Street, Suite 2300
    P.O. Box 1266
    Wilmington, DE 19899
    Telephone: (302) 421-6800
    Fax: (302) 421-5873
    mark.minuti@saul.com
    monique.disabatino@saul.com

        -and-

    Jeffrey C. Hampton
    Adam H. Isenberg
    Aaron S. Applebaum (DE Bar No. 5587)
    1500 Market Street, 38th Floor
    Philadelphia, PA 19102
    Telephone: (215) 972-7700
    Fax: (215) 972-7725
    jeffrey.hampton@saul.com
    adam.isenberg@saul.com
    aaron.applebaum@saul.com

    *Proposed Counsel for Debtors and*
    *Debtors in Possession*

# SCHEDULE 4

## INITIAL NOTICE OF ASSUMPTION AND ASSIGNMENT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (KG) |
| | Jointly Administered |
| Debtors. | |

## NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on June 30, 2019 and July 1, 2019 (the "**Petition Date**").

**PLEASE TAKE FURTHER NOTICE** that on July 9, 2019, the Debtors filed a motion [D.I. 142] (the "**Sale Motion**") with the Bankruptcy Court, seeking entry of orders, among other things, approving (a) the sale of certain of the Debtors' assets (the "**Residents Program Assets**") to Tower Health (the "**Stalking Horse Bidder**"), including the assumption of certain contracts and responsibilities of the Debtors with respect to Residents Programs at Hahnemann University Hospital (the "**Sale**"), subject to the submission of higher or better offers in an auction process (the "**Auction**"); (b) procedures for the solicitation of bids in connection with the Auction (the "**Bidding Procedures**"), attached as **Exhibit B** to the Sale Motion; (c) the form and manner of notices related to the Sale; and (d) procedures for the assumption and assignment of executory contracts ("**Designated Contracts**") in connection with the Sale (the "**Assumption and Assignment Procedures**").

**PLEASE TAKE FURTHER NOTICE THAT** on July [●], 2019, the Bankruptcy Court entered an order (the "**Bidding Procedures Order**") [D.I. [●]] granting certain of the relief sought in the Motion, including, among other things, approving: (a) the Bidding Procedures and (b) the Assumption and Assignment Procedures. Copies of the Bidding Procedures Order (which

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

sets forth the Assumption and Assignment Procedures) and the Bidding Procedures are enclosed herewith.

**PLEASE TAKE FURTHER NOTICE** that upon the closing of the Sale, the Debtors intend to assume and assign to the Stalking Horse Bidder, or any other Successful Bidder, the Designated Contracts. A schedule listing the Designated Contracts (the "**Designated Contracts List**") is attached hereto and may also be accessed free of charge on the website of the Court-appointed claims and noticing agent for the Debtors' chapter 11 cases, Omni Management Group, https://omnimgt.com/sblite/centercityhealthcare/. In addition, the cure payments, if any, necessary for the assumption and assignment of the Designated Contracts (the "**Cure Payments**") is set forth on the Designated Contracts List.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO AN INITIAL DESIGNATED CONTRACT IN THE INITIAL DESIGNATED CONTRACTS LIST**. Under the terms of the proposed Assumption and Assignment Procedures, the Stalking Horse Bidder may modify the list of Designated Contracts until the opening of business on the date of the Auction, or until the conclusion of the Sale Hearing, if another Qualified Bid is not received by the Bid Deadline. Following the Auction, if an Auction occurs, and prior to the conclusion of the Sale Hearing, at the request of the Successful Bidder (who may be the Stalking Horse Bidder), the Debtors will modify the Initial Designated Contracts List to add or delete contracts and/or to change stated Cure Payments. If the Initial Designated Contracts List is modified, the Debtors will serve a supplemental notice of assumption and assignment on the affected counterparty, which shall identify the deadline for filing an objection with respect to the applicable Designated Contract.

### IMPORTANT PROPOSED DATES AND DEADLINES

1.    The proposed deadline to file an objection with the Bankruptcy Court to the entry of an order approving the sale (the "**Sale Order**") and all objections related to the Stalking Horse Bidder (collectively, "**Sale Objections**") is **August 5, 2019 at 4:00 p.m. (ET)** (the "Sale Objection Deadline").

2.    The Auction for the Residents Program Assets, if one is necessary, will commence on **August 7, 2019 at 10:00 a.m. (ET)**, or such other date as determined by the Bankruptcy Court, at the offices of Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102 (or at any other location as the Debtors may hereafter designate on proper notice).

3.    A hearing (the "**Sale Hearing**") to consider the proposed Sale will be held before the Bankruptcy Court **on August [●], 2019 at [＿＿] ] (ET)**, or such other date as determined by the United States Bankruptcy Court, at 824 North Market Street, Wilmington, Delaware 19801.

## FILING ASSUMPTION AND ASSIGNMENT OBJECTIONS

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of a Designated Contract ("**Designated Contract Objections**"), including any objection relating to the Cure Payment and/or adequate assurance of future performance, must: (a) be in writing; (b) state with specificity the nature of such objection and alleged Cure Payment, including applicable and appropriate documentation in support of such alleged Cure Payment; (c) comply with the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and (d) be filed with the Bankruptcy Court and served so as to be **actually received** on or before **4:00 p.m. (prevailing Eastern Time) on August 5, 2019**.  Objections to the ability of a Successful Bidder other than the Stalking Horse Bidder to provide adequate assurance of future performance shall be raised at or prior to the Sale Hearing.

Failure to timely file a timely Designated Contract Objection shall constitute a waiver of any objections related to accepting performance by, or rendering performance to, the Stalking Horse Bidder or Successful Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code.

Any objections will be considered at the Sale Hearing, or as soon thereafter as counsel may be heard, and must be served on the following parties: (a) the Debtors Center City Healthcare, LLC, 230 North Broad Street, Philadelphia, Pennsylvania, Attn: Allen Wilen, Chief Restructuring Officer; (b) proposed counsel to the Debtors, Saul Ewing Arnstein & Lehr LLP, 1201 North Market Street, Suite 2300, Wilmington, DE 19899, Attn: Mark Minuti and Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102, Attn: Jeffrey C. Hampton; (c) proposed counsel to the Official Committee of Unsecured Creditors, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey, 07102, Attn: Andrew Sherman and Boris Mankovetskiy; and (d) counsel to the Stalking Horse Bidder, Stevens & Lee, P.C., 620 Freedom Business Center, Suite 200, King of Prussia, Pennsylvania 19406, Attn: Robert Lapowsky.

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION:

**ANY COUNTERPARTY TO A DESIGNATED EXECUTORY CONTRACT WHO FAILS TO TIMELY FILE AND SERVE A TIMELY OBJECTION TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF SUCH DESIGNATED EXECUTORY CONTRACT IN ACCORDANCE WITH THE PROPOSED BIDDING PROCEDURES ORDER AND THE PROPOSED ASSUMPTION AND ASSIGNMENT PROCEDURES SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE DESIGNATED EXECUTORY CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON THE DESIGNATED CONTRACTS LIST, INCLUDING ASSERTING ADDITIONAL CURE AMOUNTS WITH RESPECT TO THE DESIGNATED CONTRACT RELATING TO ANY PERIOD PRIOR TO THE TIME OF ASSUMPTION AND ASSIGNMENT.**

Dated: July __, 2019                    **SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Aaron S. Applebaum*
     Mark Minuti (DE Bar No. 2659)
     Monique B. DiSabatino (DE Bar No. 6027)
     1201 N. Market Street, Suite 2300
     P.O. Box 1266
     Wilmington, DE  19899
     Telephone: (302) 421-6800
     Fax: (302) 421-5873
     mark.minuti@saul.com
     monique.disabatino@saul.com

        -and-

     Jeffrey C. Hampton
     Adam H. Isenberg
     Aaron S. Applebaum (DE Bar No. 5587)
     Centre Square West
     1500 Market Street, 38th Floor
     Philadelphia, PA 19102
     Telephone: (215) 972-7700
     Fax: (215) 972-7725
     jeffrey.hampton@saul.com
     adam.isenberg@saul.com
     aaron.applebaum@saul.com

     *Proposed Counsel for Debtors and*
     *Debtors in Possession*

-4-

**Designated Contracts List**

| No. | Counterparty/Counterparties | Contract Type and Description | Cure Amount |
|---|---|---|---|
| 1 | Abington Memorial Hospital | Medicare GME Affiliation Agreement for July 1, 2019 through June 30, 2020 | $0.00 |
| 2 | Abington Memorial Hospital | Master Agreement for Shared Rotational Arrangements with Hahnemann University Hospital dated June 29, 2007 | $0.00 |
| 3 | Abington Memorial Hospital and Solis Healthcare, LP | Agreement Concerning Family Medicine Training with Tenet HealthSystem Hahnemann, LLC, dated June 23, 2008 | $0.00 |
| 4 | The Centers for Medicare and Medicaid Services | Participating Provider Agreement | $0.00 |
| 5 | Friends Behavioral Health System, L.P. | Medicare GME Affiliation Agreement for July 1, 2019 through June 30, 2020 | $0.00 |
| 6 | Friends Behavioral Health System, L.P. | Residency Rotation Agreement with Tenet HealthSystem Hahnemann, LLC, dated June 2008 | $0.00 |
| 7 | Friends Behavioral Health System, L.P. | Memorandum of Understanding for Residency Rotation Agreement with Tenet HealthSystem Hahnemann, LLC | $0.00 |
| 8 | Prime Healthcare Services Roxborough, LLC | Medicare GME Affiliation Agreement for July 1, 2019 through June 30, 2020 | $0.00 |
| 9 | Solis Healthcare, LP | Agreement Regarding Medicare FTE Resident Caps with Tenet HealthSystem Hahnemann, LLC, dated July 1, 2007 | $0.00 |
| 10 | Solis Healthcare, LP | Second Amendment to Agreement Regarding Medicare FTE Resident Caps with Tenet HealthSystem Hahnemann, LLC, dated June 29, 2010 | $0.00 |
| 11 | Solis Healthcare, LP and Abington Memorial Hospital (duplicate of #3 above) | Agreement Concerning Family Medicine Training with Tenet HealthSystem Hahnemann, LLC, dated June 23, 2008 | $0.00 |
| 12 | St. Christopher's Hospital for Children (co-debtor) | Medicare GME Affiliation Agreement for July 1, 2019 through June 30, 2020 | $0.00 |
| 13 | Temple University Hospital and St. Christopher's Hospital for Children (co-debtor) | Medicare GME Affiliation Agreement for July 1, 2019 through June 30, 2020 | $0.00 |
| 14 | Temple University Hospital | Academic Affiliation Agreement with Tenet HealthSystem St. Christopher's Hospital for Children, LLC, dated October 19, 2007 | $0.00 |
| 15 | Tower Health | Medicare GME Affiliation Agreement for July 1, 2019 through June 30, 2020 | $0.00 |
| 16 | Trustees of the University of Pennsylvania | Medicare GME Affiliation Agreement for July 1, 2019 through June 30, 2020 | $0.00 |

| No. | Counterparty/Counterparties | Contract Type and Description | Cure Amount |
|---|---|---|---|
| 17 | Trustees of the University of Pennsylvania | Agreement regarding Medicare FTE Resident Caps with Tenet HealthSystem Hahnemann, LLC, dated March 30, 2007 | $0.00 |
| 18-X | [INDIVIDUAL RESIDENTS] (to be provided and/or filed under seal) | Resident Employment Contract | $0.00 |

35599108.3 07/19/2019

# SCHEDULE 5

# AUCTION AND SALE NOTICE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
|  | ) |
| Debtors. | ) |
|  | ) |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") on June 30, 2019 and July 1, 2019.

**PLEASE TAKE FURTHER NOTICE** that on July 9, 2019, the Debtors filed a motion (the "**Sale and Bidding Procedures Motion**")[2] seeking the entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the proposed sale of certain of the Debtors' assets to Tower Health (the "**Stalking Horse Bidder**") for $7.5 million plus the assumption of certain contracts and responsibilities of the Debtors with respect to Residents at Hahnemann University Hospital (the "**Sale**"), subject to the submission of higher or better offers in an auction process (the "**Auction**"); (b) the form and manner of notices related to the Sale; and (c) procedures for the assumption and assignment of contracts in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that on July [●], 2019, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale and the Auction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety. To the extent that there are any inconsistencies between the Bidding

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale and Bidding Procedures Motion.

Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.  The deadline by which all Bids must be *actually received* by the parties specified in the Bidding Procedures Order is July 26, 2019 at 4:00 p.m. (prevailing Eastern time) (the "**Bid Deadline**").

## Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Residents Program Assets **must** comply strictly with the Bidding Procedures. **Only Qualified Bids will be considered by the Debtors**. Any interested persons should contact:

| Proposed Investment Banker to Debtors | Proposed Counsel to Debtors |
|---|---|
| SSG Advisors, LLC<br>Five Tower Bridge, Suite 420<br>300 Barr Harbor Drive<br>West Conshohocken, PA 19428<br>J. Scott Victor (jsvictor@ssgca.com)<br>Teresa Kohl (tkohl@ssgca.com)<br>Craig Warznak (cwarznak@ssgca.com)<br>(610) 940-3615 | Saul Ewing Arnstein & Lehr LLP<br>1201 N. Market Street,  Suite 2300<br>Wilmington, Delaware 19899<br>Mark Minuti (mark.minuti@saul.com),<br>Jeffrey C. Hampton (jeffrey.hampton@saul.com),<br>Aaron S. Applebaum (aaron.applebaum@saul.com)<br>(215) 972-7777 |

## Obtaining Additional Information

Copies of the Sale and Bidding Procedures Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including the Stalking Horse Purchase Agreement and all other documents filed with the Court, are available free of charge on the website of the Court-appointed claims and noticing agent for the Debtors' chapter 11 cases, Omni Management Group, https://omnimgt.com/sblite/centercityhealthcare/.

## Important Dates and Deadlines

1.  The deadline to submit a Qualified Bid is August 5, 2019 at 4:00 p.m. (prevailing Eastern time).

2.  The deadline to file an objection with the Bankruptcy Court to the entry of an order approving the Sale (the "**Sale Order**") and all objections relating to the Stalking Horse Bidder (collectively, "**Sale Objections**") is August 5, 2019 at 4:00 p.m. (prevailing Eastern time) (the "**Sale Objection Deadline**").

3.  In the event that the Debtors timely receive a Qualified Bid in addition to the Qualified Bid of the Stalking Horse Bidder, the Debtors intend to conduct an Auction for the Residents Program Assets.  The Auction, if one is necessary, will commence on August 7, 2019 at 10:00 a.m. (prevailing Eastern time), or such other date as determined by the Court, at the offices of Saul Ewing Arnstein & Lehr LLP, Centre

Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102 (or at any other location as the Debtors may hereafter designate on proper notice).

4.   Objections to the conduct of the Auction and the terms of a sale to a Successful Bidder other than the Stalking Horse Bidder (collectively, "**Auction Objections**") may be raised at the Sale Hearing (as defined below).

5.   A hearing (the "**Sale Hearing**") to consider the proposed Sale will be held before the Court on [          ], 2019 at [   ] (ET), or such other date as determined by the Bankruptcy Court, at 824 North Market Street, Wilmington, Delaware 19801.

**Filing Objections**

Sale Objections, if any, must (a) be in writing, (b) state the basis of such objection with specificity and (c) be filed with the Court and served upon, so as to be **actually received on or prior to the Sale Objection Deadline**: (a) the Debtors Center City Healthcare, LLC, 230 North Broad Street, Philadelphia, Pennsylvania, Attn: Allen Wilen, Chief Restructuring Officer; (b) proposed counsel to the Debtors, Saul Ewing Arnstein & Lehr LLP, 1201 North Market Street, Suite 2300, Wilmington, DE 19899, Attn: Mark Minuti and Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102, Attn: Jeffrey C. Hampton; (c) proposed counsel to the Official Committee of Unsecured Creditors, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey, 07102, Attn: Andrew Sherman and Boris Mankovetskiy; and (d) counsel to the Stalking Horse Bidder, Stevens & Lee, P.C., 620 Freedom Business Center, Suite 200, King of Prussia, Pennsylvania 19406, Attn: Robert Lapowsky.

**CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY ASSERT AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE RESIDENTS PROGRAM ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS.  IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.  ANY CREDITOR THAT RECEIVES NOTICE OF THE SALE HEARING AND FAILS TO TIMELY FILE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE DEEMED TO HAVE CONSENTED UNDER SECTION 363(f)(2) OF THE BANKRUPTCY CODE TO SUCH SALE FREE AND CLEAR OF SUCH CREDITOR'S LIEN OR INTERESTS, IF ANY.**

Dated: July 19, 2019

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Aaron S. Applebaum*
     Mark Minuti (DE Bar No. 2659)
     Monique B. DiSabatino (DE Bar No. 6027)
     1201 N. Market Street, Suite 2300
     P.O. Box 1266
     Wilmington, DE  19899
     Telephone: (302) 421-6800
     Fax: (302) 421-5873
     mark.minuti@saul.com
     monique.disabatino@saul.com

        -and-

     Jeffrey C. Hampton
     Adam H. Isenberg
     Aaron S. Applebaum (DE Bar No. 5587)
     Centre Square West
     1500 Market Street, 38th Floor
     Philadelphia, PA 19102
     Telephone: (215) 972-7700
     Fax: (215) 972-7725
     jeffrey.hampton@saul.com
     adam.isenberg@saul.com
     aaron.applebaum@saul.com

     *Proposed Counsel for Debtors and*
     *Debtors in Possession*