# SCHEDULE 1

# BIDDING PROCEDURES

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**BIDDING PROCEDURES**

On July 19, 2019, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered the *Order (I) Establishing Bidding Procedures and Granting Related Relief and (II) Approving the Sale of the Debtors' Resident Program Assets Free and Clear of Liens, Claims, Encumbrances, and Interests* [Docket No. [●]] (the "**Bidding Procedures Order**"),[2] by which the Bankruptcy Court approved the following procedures (the "**Bidding Procedures**"). These Bidding Procedures set forth the process by which the Debtors, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**") as set forth herein, are authorized to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of the resident program assets related to the operation of Hahnemann University Hospital, including: (a) National Provider Identifiers (general and psych) and Medicare provider number and agreement, (b) the Pennsylvania Department of Health license to operate an acute care hospital, and (c) the Hahnemann training programs for Residents (collectively, the "**Residents Program Assets**"), in accordance with and as described in that certain agreement (the "**Stalking Horse Sale Agreement**"), dated as of July 19, 2019, by and among Center City Healthcare, LLC d/b/a Hahnemann University Hospital and Tower Health (the "**Stalking Horse Bidder**"), or in accordance with the terms of such higher and better offer as determined by the Debtors, in consultation with the Committee, to be the Successful Bidder (defined below).

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

A.  Submissions to the Debtors and the Committee.

All submissions to the Debtors and the Committee required to be made under these Bidding Procedures must be directed to each the following persons unless otherwise provided (collectively, the "**Notice Parties**"):

- a. **Debtors**.  Center City Healthcare, LLC, 230 North Broad Street, Philadelphia, Pennsylvania, Attn: Allen Wilen, Chief Restructuring Officer.

- b. **Debtors' Counsel**.  Saul Ewing Arnstein & Lehr LLP, 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Mark Minuti (mark.minuti@saul.com).

- c. **Debtors' Investment Banker**.  SSG Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, West Conshohocken, PA 19428 Suite 420, Attn: J. Scott Victor (jsvictor@ssgca.com); Teresa Kohl (tkohl@ssgca.com); and Craig Warznak (cwarznak@ssgca.com).

- d. **Committee's Counsel**.  Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, Attn: Andrew Sherman (asherman@sillscummis.com) and Boris Mankovetskiy (bmankovetskiy@sillscummis.com).

B.  Potential Bidders.

The Debtors and their financial advisors have identified, and may in the future, in consultation with the Committee, identify, parties they believe potentially may be interested in consummating (and potentially may have the financial resources necessary to consummate) a competing transaction.  To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (each, a "**Potential Bidder**"), other than the Stalking Horse Bidder, must deliver or have previously delivered, if determined to be necessary by the Debtors:

- a. an executed confidentiality agreement on terms acceptable to the Debtors, in consultation with the Committee (a "**Confidentiality Agreement**"), to the extent not already executed; and

- b. the most current audited and latest unaudited financial statements (collectively, the "**Financials**") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Residents Program Assets, (i) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, in consultation with the Committee, (ii) a written commitment acceptable to the Debtors and their advisors, in consultation with the Committee, of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the applicable Sale, and (iii) copies of any documents evidencing any financing commitments necessary to consummate the transaction.

-2-

C. Qualified Bidders.

    a. A "**Qualified Bidder**" is a Potential Bidder: (i) whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate the Sale, as determined by the Debtors, in consultation with the Committee; and (ii) whose Bid (as defined below) is a Qualified Bid (as defined below). On or before the date that is one (1) business day after the Bid Deadline (defined below), the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder. The Stalking Horse Bidder shall be deemed a Qualified Bidder at all times. MidCap Funding IV Trust ("**Midcap**"), solely to the extent it seeks to credit bid, shall be deemed a Qualified Bidder at all times; *provided* that MidCap Funding IV Trust's right to credit bid shall be subject to the provisions set forth in the Bidding Procedures Order and these Bidding Procedures.

    b. If any Potential Bidder is determined by the Debtors, in consultation with the Committee, not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit (as defined below) and all accumulated interest thereon on or within three (3) business days after the Bid Deadline.

    c. Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors, in consultation with the Committee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided, however*, that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

    d. Any disputes related to these Bidding Procedures, including whether a Bid constitutes a Qualified Bid, shall be resolved by the Bankruptcy Court.

D. Due Diligence.

    **a. Diligence Provided to Potential Bidders**.

Only (a) the Stalking Horse Bidder, and (b) Potential Bidders that have entered into a Confidentiality Agreement shall be eligible to receive due diligence information related to the Residents Program Assets. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement**. The Debtors will provide to each Potential Bidder that has entered into a Confidentiality Agreement reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request. For all Potential Bidders other than the Stalking Horse Bidder, the due

-3-

diligence period will end on the Bid Deadline and subsequent to the Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Residents Program Assets, the Debtors' liabilities, or the Sale ("**Confidential Sale Information**") to any person, except to a Potential Bidder that has entered into a Confidentiality Agreement or to such Potential Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement; *provided*, *however*, that nothing herein shall limit the Debtors' ability to furnish Confidential Sale Information to the professional advisors of any official committee appointed in the Debtors' chapter 11 cases on a professionals' eyes only basis. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided* that the Debtors, in consultation with the Committee, may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

The Debtors also reserve the right to withhold from Potential Bidders any diligence materials that the Debtors, in consultation with the Committee, determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors, in consultation with the Committee, determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not approved by the Debtors, in consultation with the Committee, as a Potential Bidder; *provided*, *however*, that, subject to the limitations set forth in the immediately preceding paragraph, the Debtors may furnish information to MidCap and the Committee.

**All due diligence requests must be directed by email to SSG Advisors, LLC Attn: J. Scott Victor (jsvictor@ssgca.com); Teresa Kohl (tkohl@ssgca.com); and Craig Warznak (cwarznak@ssgca.com); or by phone to (610) 940-3615.**

b.      **Diligence Provided by Potential Bidders**.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate the Sale. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Committee, to determine that such Potential Bidder is not a Qualified Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids (as defined below) during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

35612177.6 07/19/2019

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information: (a) with the prior written consent of such bidder and the Debtors; (b) to the applicable bidder; (c) to the professional advisors of any official committee appointed in the Debtors' chapter 11 cases, and (d) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

E.   Bid Requirements.

A proposal, solicitation, or offer (each, a "**Bid**") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (collectively, the "**Bid Requirements**"), as determined by the Debtors, in consultation with the Committee, in their reasonable business judgment, shall constitute a "**Qualified Bid**." For the avoidance of doubt, notwithstanding the following, the Stalking Horse Sale Agreement will be deemed a Qualified Bid for all purposes.

  a.   **Assets**. Each Bid must provide for the purchase of all or substantially all of the Residents Program Assets, and must clearly state which assets the Qualified Bidder is agreeing to purchase.

  b.   **Purchase Price**. Each Bid must clearly set forth the purchase price to be paid (the "**Purchase Price**"). The Purchase Price must be in cash consideration and must equal or exceed $7,825,000 (*i.e.*, the sum of (i) the Base Purchase Price set forth in the Stalking Horse Sale Agreement and (ii) the Break-Up Fee) and (iii) a $100,000 incremental amount (a "**Minimum Bid**").

  c.   **Deposit**. With its Bid, each Potential Bidder must submit by wire transfer of immediately available funds, a cash deposit in the amount equal to ten (10) percent of the aggregate cash Purchase Price set forth in the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "**Deposit**"). Within three (3) business days after the conclusion of any Auction, the Successful Bidder and Backup Bidder shall submit by wire transfer of immediately available funds, a supplemental cash deposit in an amount that, when added to the amount of the Deposit, is equal to ten (10) percent of the aggregate cash Purchase Price set forth in their respective Successful Bid and Backup Bid. The foregoing notwithstanding, the Stalking Horse Bidder shall not be required to submit any Deposit.

  d.   **Residents**. Each Bid must specify the Potential Bidder's proposed treatment with respect to Residents, including whether and to what extent Residents will be offered placement with the Potential Bidder and on what terms. Each Bid must further provide a description of the Potential Bidder's accreditation status with the Accreditation Council on Graduate Medical Education, including a description of accredited residency and fellowship programs currently offered by the Potential Bidder and/or expected to be offered in the future.

e. **Same or Better Terms**. Each Bid must be on terms that are not more burdensome to the Debtors than the terms of the Stalking Horse Sale Agreement, as determined by the Debtors, in consultation with the Committee. Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Sale and shall include a schedule of executory contracts proposed to be assumed by the Debtors and assigned to the Qualified Bidder ("**Assumed Contracts**"), and a copy of the Stalking Horse Sale Agreement clearly marked to show all changes requested by the Qualified Bidder, including those related to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid and a written commitment demonstrating to the satisfaction of the Debtors, in consultation with the Committee, that the Qualified Bidder will be able to close the transaction proposed in its Bid on the terms and conditions set forth therein (the "**Qualified Bid Documents**").

f. **Contingencies; No Financing or Diligence Outs**. A Bid shall not be conditioned on (i) the Potential Bidder obtaining financing, (ii) approval of the Potential Bidder's shareholders, board of directors or other internal approval, or (iii) the outcome or completion of due diligence by the Potential Bidder. Notwithstanding the foregoing, a Bid may be subject to (i) the accuracy at the closing of the Sale of specified representations and warranties, (ii) or the satisfaction at the closing of the Sale of specified conditions, which shall not be more burdensome to the Debtors, as determined in the Debtors' business judgment, in consultation with the Committee, than those set forth in the Stalking Horse Sale Agreement.

g. **Identity**. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the Sale), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid.

h. **Demonstrated Financial Capacity**. A Qualified Bidder must have, in the Debtors' business judgment, as determined in consultation with the Committee, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid. Each Bid must be accompanied by reasonable evidence of the Qualified Bidder's ability to operate the business related to the Residents Program Assets and include a packet of information, including financial information, that will be provided to the non-Debtor counterparties to Assumed Contracts sufficient to demonstrate adequate assurance of future performance.

i. **Committed Financing**. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include executed unconditional committed financing from a qualified source documented to the satisfaction of the Debtors, in consultation with the Committee, which demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors, in consultation with the Committee,.

j. **Binding and Irrevocable**. A Qualified Bid must include a signed writing stating that the Qualified Bid is irrevocable until the later of (i) two (2) business days after the closing of a Sale to another Qualified Bidder, and (ii) thirty (30) days after the conclusion of the Sale Hearing (as defined below).

k. **Expenses; Disclaimer of Fees**. Each Bid (other than the Stalking Horse Sale Agreement) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

l. **Authorization**. Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors, in consultation with the Committee) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

m. **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Residents Program Assets prior to submitting the Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Residents Program Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Residents Program Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid.

n.  **Adherence to Bid Procedures**.  By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

o.  **Regulatory Approvals and Covenants**.  A Bid must set forth each regulatory and third-party approval to consummate the Sale and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible).

p.  **Consent to Jurisdiction**.  Each Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing of the Sale, as applicable.

q.  **Bid Deadline**.  Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before 4:00 p.m. (prevailing Eastern Time) on August 5, 2019 (the "**Bid Deadline**").

The Debtors reserve the right, in consultation with the Committee, to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

F.  Right to Credit Bid.

At the Auction, subject to section 363(k) of the Bankruptcy Code, any Qualified Bidder who has a valid and perfected lien on all of the Resident Program Assets (a "**Secured Creditor**") shall have the right, subject in all respects to the Bankruptcy Code and other applicable law (and the rights of the Committee and other parties in interest to object or challenge such creditor's lien thereunder (a "**Challenge**")) to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code, unless otherwise ordered by the Bankruptcy Court for cause.   In the event that the Committee or another party in interest Challenges a creditor's lien, the approval of a Successful Bid by such creditor that includes a credit bid shall be contingent upon a final determination that such creditor's lien is valid and perfected.  If such creditor's lien is successfully Challenged, or otherwise determined not to be valid and perfected, such creditor shall pay the credit bid portion of its Bid in cash as the closing of the Sale.

In the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to include all or any portion of the Break-Up fee in lieu of cash.

Credit bids, if any, by Secured Creditors will not impair or otherwise affect the Stalking Horse Bidder's entitlement to the Break-Up Fee granted under the Bidding Procedures Order.

-8-

Any credit bid shall include a cash component sufficient to satisfy in full all costs of sale, including the Break-Up Fee.

G.     Auction.

If, prior to the Bid Deadline, the Debtors receive a Qualified Bid, other than the Stalking Horse Sale Agreement, the Debtors will conduct an Auction to determine the Successful Bidder. By 6:00 p.m. on the date of the Bid Deadline, the Debtors shall notify the Stalking Horse Bidder if one or more Qualified Bids were received prior to the Bid Deadline. If the Debtors do not receive a Qualified Bid (other than the Stalking Horse Sale Agreement) prior to the Bid Deadline, the Debtors will not conduct an Auction and shall designate the Stalking Horse Bidder's Bid as the Successful Bid.

On the date that is one (1) day after the Bid Deadline, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment, in consultation with the Committee (the "**Baseline Bid**"), and provide copies of all Qualified Bid Documents supporting the Baseline Bid and each other Qualified Bid to each Qualified Bidder. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors, in consultation with the Committee, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, and may include, among other things: (a) the number, type, and nature of any changes to the Stalking Horse Sale Agreement, if any, requested by the Qualified Bidder, including the type and amount of Residents Program Assets sought to be acquired and obligations sought to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the applicable Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (e) the impact on Residents (collectively, the "**Bid Assessment Criteria**"). Only the Stalking Horse Bidder and other Qualified Bidders will be entitled to make any subsequent bids at the Auction. At least one (1) day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors and the Committee whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person.

The Auction, if necessary, will be conducted at the offices of Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102 on August 7, 2019 at 10:00 a.m. (prevailing Eastern Time), or at such other time and location as designated by the Debtors. The Auction, if necessary, shall be conducted in a timely fashion according to the following procedures:

        a.     **The Debtors Shall Conduct the Auction**.

The Debtors and their professionals shall direct and preside over the Auction, in consultation with the Committee as applicable. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of

each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

The Auction will be conducted openly and the Committee and all creditors will be permitted to attend. The Qualified Bidders, including the Stalking Horse Bidder, may appear at the Auction in person or through duly authorized representatives.

    b.    **Terms of Overbids**.

"**Overbid**" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

    (a)    **Minimum Overbid Increment**. The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than the sum of $100,000 (a "**Minimum Overbid Increment**").

        Additional consideration in excess of the amount set forth in the respective Baseline Bid must include: (1) cash or (2) in the case of a Bid by a Secured Creditor, a credit bid of up to the full amount of such secured creditors' allowed secured claim, subject to section 363(k) of the Bankruptcy Code and any other restrictions set forth in the Bidding Procedures Order or these Bidding Procedures (including the requirement of a cash component sufficient to pay all costs of sale including the Break-Up Fee).

    (b)    **Conclusion of Each Overbid Round**. Upon the solicitation of each round of applicable Overbids, the Debtors may, in consultation with the Committee, announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "**Overbid Round Deadline**") by which time any Overbids must be submitted to the Debtors and the Committee.

    (c)    **Overbid Alterations**. An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, in consultation with the Committee, but shall otherwise comply with the terms of these Bidding Procedures. Any Overbid must comply with the conditions for a Qualified Bid.

    (d)    **Announcing Highest Bid**. Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Committee, have (i) in the initial Overbid round, identified an Overbid as being higher or otherwise better than the Baseline Bid for the Residents Program Assets, or (ii) in subsequent rounds, identified an Overbid as

-10-

being higher or otherwise better than the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid for the Residents Program Assets (the "**Prevailing Highest Bid**"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors, in consultation with the Committee, as the Prevailing Highest Bid as well as the value attributable by the Debtors, in consultation with the Committee, to such Prevailing Highest Bid.

    c.    **Consideration of Overbids**.

The Debtors reserve the right, in their reasonable business judgment, and in consultation with the Committee, to adjourn the Auction one or more times to, among other things: (i) facilitate discussions among the Debtors, the Committee, and any Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; (iii) provide Qualified Bidders the opportunity to provide the Debtors and the Committee with such additional evidence as the Debtors, in their reasonable business judgment, in consultation with the Committee, may require, including that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount; and (iv) provide the Debtors with an opportunity to consider, in consultation with the Committee, how to value each Overbid.

    d.    **Closing the Auction**.

    (a)    The Auction shall continue until there is only one Bid that the Debtors determine, in their reasonable business judgment, and in consultation with the Committee, to be the highest or otherwise best Bid in accordance with the Bid Assessment Criteria. Such Bid shall be declared the "**Successful Bid**," and such Qualified Bidder the "**Successful Bidder**," at which point the Auction will be closed. The Debtors shall notify the Qualified Bidders of the Successful Bid within one business day following such selection. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

    (b)    The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely.

    (c)    As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for the Successful Bid and Backup Bid to be filed with the Bankruptcy Court.

      **e.**    **No Collusion; Good-Faith Offer**.

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith offer and it intends to consummate the Sale if selected as the Successful Bidder. All Potential Bidders and all Qualified Bidders will immediately disclose to the Debtors, the Committee, and the United States Trustee any discussions regarding employment of or offers to retain or employ any officer or insider of the Debtors.

H.    Backup Bidder.

    a.    Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, in consultation with the Committee (the "**Backup Bid**"), shall be required to serve as a backup bidder (the "**Backup Bidder**"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors. The Stalking Horse Bidder shall serve as a Backup Bidder only if (X) the Bid set forth in the Stalking Horse Agreement is not determined to be the Baseline Bid (as defined herein), and (Y) the Stalking Horse Bidder elects, in its sole discretion, to offer a higher and better bid at the Auction. The Stalking Horse Bidder's Bid described in the Stalking Horse Agreement shall not be a Backup Bid absent the express consent of the Stalking Horse Bidder.

    b.    The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable, until the closing of the Sale with the Successful Bidder. The foregoing notwithstanding, if the Stalking Horse Bidder serves as the Backup Bidder, its Backup Bid shall expire on the earlier of closing on an Alternative Transaction (defined below) or September 6, 2019. The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder and shall thereafter be returned within five (5) business days.

    c.    If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors, in consultation with the Committee, may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid without further order of the Bankruptcy Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

-12-

I. Reservation of Rights.

Without prejudice to the rights of the Stalking Horse Bidder under the terms the Stalking Horse Sale Agreement, the Debtors reserve their rights, in consultation with the Committee, to modify these Bidding Procedures in their reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Residents Program Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all bids or Bids.

J. Sale Hearing.

A hearing to consider approval of the Sale of the Residents Program Assets to the Successful Bidder (or to approve the Stalking Horse Agreement if no Auction is held) (the "**Sale Hearing**") is currently scheduled to take place on **August 9, 2019, at 11:00 a.m. (ET)** before the Honorable Kevin Gross, at the United States Bankruptcy Court, 824 Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Committee, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder). The foregoing notwithstanding, if the Sale Hearing is continued without the consent of the Stalking Horse, the Stalking Horse may terminate the Stalking Horse Agreement.**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

K. Break-Up Fee.

To provide an incentive and to compensate the Stalking Horse Bidder for performing the substantial due diligence and incurring the expenses necessary and entering into a Stalking Horse Sale Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to pay the Stalking Horse Bidder, under the conditions set forth in the Bidding Procedures Order, a break-up fee in the amount of $225,000 (the "**Breakup Fee**").

The Break-Up fee, to the extent owed by the Debtors, (a) shall be an allowed administrative expense claim under section 503(b) and 507 of the Bankruptcy Code and a direct cost of any such Sale; (b) shall be payable at closing on of a Sale to a purchaser other than the Stalking Horse Bidder (an "**Alternative Transaction**")without further order of the Court; and (c) shall be payable solely from the proceeds of such Alternative Transaction. No Interests shall attach to the proceeds of any such Alternative Transaction equal to the amounts owed to the Stalking Horse Bidder on account of the Break-Up Fee.

L.        Return of Deposit.

The Deposit of the Successful Bidder shall be applied to the Purchase Price of the transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors, in consultation with the Committee, and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or within five (5) business days after the Auction. The Stalking Horse Bidder shall not be required to provide a Deposit.

If the Successful Bidder fails to consummate the Sale because of a breach by the Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the Sale with the Backup Bidder without the need for an additional hearing or order of the Bankruptcy Court.

M.       Fiduciary Out.

Nothing in these Bidding Procedures shall require the Debtors' board of managers to take any action, or to refrain from taking any action, with respect to these Bidding Procedures prior to the commencement of the Auction if the Debtors' board of managers determines, based on the advice of counsel, that taking such action, or refraining from taking such action, as the case may be, is required to comply with applicable law or the board's fiduciary obligations thereunder; *provided* that, in the event the Debtors' board of managers determines to take any action, or refrain from taking any action, pursuant to this paragraph, without the consent of the Stalking Horse Bidder, the Stalking Horse Bidder may, but shall not be required to, terminate the Stalking Horse Agreement if taking such action or refraining from taking such action, as the case may be, would otherwise be grounds for termination under the Stalking Horse Agreement, it being understood that any material modification to the Bid Procedures without the consent of the Stalking Horse would be a breach of the Stalking Horse Agreement pursuant to which the Stalking Horse would have the right to terminate the Stalking Horse Agreement.

35612177.6 07/19/2019