IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al*.<br><br>Debtor | Chapter 11<br><br>Case No. 19-11466 (KG)<br><br>Joint Administration Requested |

**LIMITED OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDER ESTABLISHING AND APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEURES AND THE FORM AND MANNTER OF NOTICE THREOF**

Pennsylvania Association of Staff Nurses and Allied Professionals, (hereinafter, "PASNAP"), by and through their undersigned counsel, by way of Limited Objection to *Debtor's Motion For Entry of an Order Establishing and Approving Certain Bidding Procedures, Assumption and Assignment Procedures and the Form and Manner of Notice Thereof* hereby states:

**BACKGROUND**

1.   On June 30, 2019 (the "Petition Date"), Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("CCH") and its affiliated debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition in the United States Bankruptcy Court for the District of Delaware seeking relief under the provisions of Chapter 11 of the United States Bankruptcy Code.

2.   On June 30, 2019, the Debtors filed as a first day motion seeking an interim relief and final Orders.

3.   The undersigned represents PASNAP whose members are the nurses at HUH as

well as at St. Christopher's Hospital. There are approximately 800 members at HUH and 500 members at St Christopher's Hospital.

4. The Debtor filed the within Motion for entry of An Order Establishing and Approving Certain Bidding Procedures, Assumption and Assignment Procedures and the Form and Manner of Notice thereof on July 16, 2019 (docket no. 205). The court set a hearing on the within motion on short notice for July 26, 2019.

## **LIMITED OBJECTION**

5. PASNAP generally supports a sale so St. Christopher's Hospital for Children (hereinafter "SCH") will remain open for the benefit of the community and to save the jobs and livelihood of the employees. Further, a sale of SCH is supported by PASNAP to ensure that all neighboring residents will have a hospital for essential care for their children. (Likewise, PASNAP believes Hahnemann University Hospital should also be sold through an auction sale process supervised by this Court and remain open and the motion and relief should also include a sale process for Hahnemann University Hospital) However, PASNAP objects to the contents of the bidding procedures and auction sale as same are devoid of the Debtor and any bidder's obligations pursuant to 11 U.S.C. Section 1113 of the Bankruptcy Code and the Collective Bargaining Agreement (alternatively hereinafter referred to as "C.B.A.") This limited objection is submitted only in response to the Debtor's motion as it relates to the Bid Procedures application. The Union is optimistic that most of these issues can be addressed and resolved prior to the hearing but in the event that same cannot be resolved prior to the hearing, PASNAP is placing this limited objection on the record. PASNAP, of course, reserves all of its rights to object to the approval of the sale at the sale hearing in accordance with the proposed Sale Notice and Order.

6. As relating to SCH, both the Debtor and the Union are parties to a Collective Bargaining Agreement. PASNAP collectively represents approximately four hundred (400) members comprised for the most part registered nurses.

7. The bidding procedures/notices and likewise the form Transaction Agreement (hereinafter referred to as "A.P.A. or "Transaction Agreement") should address and disclose the Debtor and/or any bidder's obligations with respect to Section 1113 of the Bankruptcy Code as it pertains to the Collective Bargaining Agreement by and between the Debtor, SCH and PASNAP. The form Transaction Agreement/APA should be required to contain affirmative language concerning a purchaser's obligation to recognize, honor, assume and cure the Collective Bargaining Agreement and the accrued unpaid employee benefits.

8. As the Court is well aware, the Third Circuit has addressed the issues of Collective Bargaining Agreements in the context of Asset Sales. It is impermissible for a Debtor and/or a Buyer to misuse the Bankruptcy Code in an effort to avoid the Collective Bargaining process which Congress has put in place as a statutory requirement via the sales process. <u>Am. Flint Glass Workers v. Anchor Resolution Corp.</u>, 197 F.3d 76, 81-82 (3rd Cir. 1999). Any unilateral change of the C.B.A. by the Debtor and/or Purchaser is a violation of Section 1113(f). Section 1113 is the exclusive means of Assumption and Rejection of the Collective Bargaining Agreements (See Section 1113). The goal behind Section 1113 is to preclude Debtors (or Trustees) from unilaterally terminating, altering or modifying the C.B.A. without strictly following Section 1113. <u>Id.</u>, See <u>Continental Airlines</u>, 125 F.3d at 137. Further, Section 1113 precludes the use of other code sections to the advantage of Debtors to permit them to escape complying with Section 1113 of the Code. <u>Id</u>. A Debtor cannot use the sale process to avoid its obligations pursuant to a C.B.A. (or reject a C.B.A. for that matter) and/or to avoid its' obligations under Section 1113 of the Bankruptcy Code. <u>Id</u>.

9. The case law is clear. The court in In Re Allegheny Health, Educ. And Research Found, 265 B.R. 88, 116-17 (W.D. Pa. 2001) aff'd and reversed and remanded on other grounds, 383 F.3d 169 (3rd Cir. 2004), interpreted the holding in American Flint as follows: "When a Trustee or a Debtor-in Possession incompletely assigns a C.B.A. within the context of a sale of substantially all of the Debtor's assets such that the Assignee of such agreement does not assume all of the obligations attached to said agreement, such incomplete assignment constitutes an attempt to effect an alteration of the C.B.A. Such an attempt to alter a C.B.A., according the Third Circuit, requires the Debtor to comply with the procedures contained in 11 U.S.C. Section 1113, failing which the Debtor shall be deemed to have violated Section 1113(f)." The obligations pursuant to Section 1113 must be met before the sale. See, Allegheny, 265 B.R. at 116-17. To be clear, Section 1113 obligations cannot occur after the sale or else it is deemed a clear violation of Section 1113. Id.

10. At a minimum, under Federal Labor Law, if there is a genuine change of employer but the employing industry remains substantially the same, the successor employer must recognize and bargain with the representative Union of the predecessor's employees. See Allegheny, 265 B.R. 88, 104-05 (W.D. Pa. 2001 citing Theodore Kheel, Labor Law Section 17.01(1) at 17-3 (Bender 2000) (citing NLRB v. Burns International Security Services, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972)).

11. All procedural and substantive protections governed by Section 1113 apply to an asset sale. Id. Any A.P.A. should contain affirmative language assuming and assigning the C.B.A. and all Employee obligations from the Debtor to the Buyer. Additionally, the bidding procedures and Notice of Auction sale should contain appropriate disclosures concerning the Debtors and/or Bidders/Buyers obligations as they pertain to the C.B.A. and Section 1113. The Union emphasizes that any Purchaser/ Bidder, and for that matter, the Debtor must comply with Section 1113 of the

Bankruptcy Code. If the Debtor will be selling its' assets, the Debtor cannot use the 363 Sale process to circumvent the Collective Bargaining process and Section 1113 of the Bankruptcy Code. As such, the Bidding Procedures/Auction Sale and Transaction Agreement must contain language concerning this issue and the C.B.A and the Union must be recognized and formally assumed by any potential Purchaser/Bidder. To be clear, it is the position of the Union that the Debtor cannot comply with Section 1113 after the sale.

12. The Debtor and any Buyer/Bidder must comply with both the Collective Bargaining Agreement and Section 1113. The Debtor should compel any Purchaser to assume the C.B.A in the A.P.A. as a condition of approval of the sale. See also In Re Agripac, Inc., No. 699-60001-frall, slip op. At 9-12 (Bankr D. Ore April 2, 1999) (concluding that "failure to include in Sale Agreement a successor clause as required by the C.B.A. is a breach of the C.B.A. which may result in a "substantial claim against the estate" and holding that the sale could not proceed absent compliance with Section 1113.)

13. Similarly, the Bankruptcy Court in the Eastern District of Pennsylvania denied confirmation of a Plan of Reorganization that was selling assets as part of the Plan of Reorganization since the asset sale did not comply with a provision of the Debtor's C.B.A. The C.B.A. contained language that provided that the C.B.A. "shall be binding upon (the Debtor's) successors ... and assigns." In re Stein Henry Co., Inc., 91-15491S, 1992 WL 122902 (Bankr. E.D. Pa. June 1, 1992). In In re Stein Henry the Court denied confirmation because the Sales Agreement failed to provide for successor protection which violated Section 1113(f) of the Code because the "rights provided in a (C.B.A.) as to successor-entities must be preserved unless, there is compliance with Section 1113." Id.

14. In short, a Buyer should be made aware of the C.B.A. and for that matter, the C.B.A. should be put in the due diligence/data room thereby alerting any potential Purchaser/Bidder of

the existence of the C.B.A as well as providing the Purchaser/Bidder with a copy of the C.B.A. since the C.B.A. remains in full force and effect.

15. Any potential Purchaser and the Debtor must comply with Section 1113 and Section 365 of the Bankruptcy Code regarding Assumption and Assignment of Executory Contracts. Furthermore, adequate assurance of future performance should also be demonstrated by any Purchaser/Bidder who will be assuming the Collective Bargaining Agreement. In other words, a potential Purchaser should be required to make a showing that it will have sufficient working capital to fund future ongoing hospital operations. Since the application at this time is devoid of what contracts are being assumed and assigned and likewise devoid of cure amounts, the Union reserves any and all rights relating to this issue. Again, it is the position of the Union that the Debtor, as a condition of the bidding procedures and sale, shall require any Buyer to assume the C.B.A. and all employee benefits.

16. The Union has no objection to the following disclaimer being added to the Notice of Bidding and Auction Procedures: Prior to the Auction, all bidders are strongly encouraged to address and seek to resolve any issues concerning assumption and assignment of the Debtor's Collective Bargaining Agreement with the Pennsylvania Association of Staff Nurses & Allied Professionals, its Union, by contacting The Law Offices of Mitchell J. Malzberg, LLC., P.O. Box 5122, 6 East Main Street, Suite 7, Clinton, New Jersey 08809, Attention, Mitchell Malzberg, Esq., attorneys for the Union. **Beneficial consideration will be given to those bidders who have reached an agreement with the Union**.

17. Similar language was used in the Bayonne Medical Center Order approving Auction Procedures entered by this Court; Case no. 07-15195 (See Docket No. 690), and in the Christ Hospital Order Case no. 12-12906 (See Docket No. 98) and Saint Michael's Medical Center, Inc, Case no. 15-24999 (See Docket No. 121). Likewise, form language should be

contained in the Transaction Agreement concerning a Purchaser's obligations to Assume, Assign and Honor the Collective Bargaining Agreement

18. The Union, through its counsel, should be added as not only a noticed party both as to service of any objections and all issues relating to the bids and sale but also should be a noticed party in the Notice of Bid Deadline, Auction and Hearing Procedures that will be mailed. Furthermore, the bid procedures do not require consultation with the Creditors Committee by the Debtor as to rights to change any terms of sale and furthermore, as it relates to consideration of higher and best offers if there are competing bids. PASNAP, by and through its counsel, should also be a Consultation Party as same is defined in the Motion. Likewise, any changes to the form Transaction Agreement, if the court so requires as to any Union Issues should be done only in consultation and in agreement with PASNAP.

19. As to the Auction sale, there should be no limitation on attendance by any interested party. As a party in interest, an authorized representative of the PASNAP Union (and any interested party) and its counsel should be permitted to attend the Auction without restriction. The Auction sale should be transcribed. After the Auction sale, the Court should be provided with a detail listing of the nature and the amounts of all bids so the Court is aware of each and every type of bid that was presented at the Auction not just what the Debtor perceives to be the best offer. In the event there are objections at the hearing as to what is considered the highest and best offer, the court should be aware of all offers especially in light of potential arguments at the hearing about the public interest and the best offer pertaining to continued operations for the benefit of the Community. Likewise, the Auction procedure itself as it relates to the conduct of the Auction should be done in consultation with counsel for the Creditors Committee. The Debtor should consult with the Creditors Committee relating to all issues of the sale as well as the Union concerning each bidders C.B.A. obligations.

20. Likewise, given this case was just filed on June 30/July 1 and SSG only began marketing SCH for Sale on July 10, 2019, Publication should not be limited only to the Philadelphia Inquirer but publication should also be contained in the Wall Street Journal.

21. For the foregoing reasons, while the Union has no outright objection to the sales process as a whole, the Union does object to the fact that the Bidding and Auction Procedures and Transaction Agreement is devoid of any of the Debtor's and/or Purchaser's obligations concerning Section 1113 of the Bankruptcy Code and its' obligations pertaining to the C.B.A and other procedural issues identified hereinabove.

WHEREFORE, PASNAP respectfully requests that the entry of the Bidding and Auction Sale procedures be approved subject to the changes, conditions and reservations stated herein. PASNAP reserves all of its rights to object to the sale upon the return date of the hearing seeking approval of the sale on all issues including but not limited to failure to comply with Section 1113 of the Code.

Dated:  July 23, 2019 **MARKOWITZ & RICHMAN**

 /s/ Claiborne S. Newlin
Claiborne S. Newlin, Esq. (#4745)
Legal Arts Building
1225 King Street, Suite 804
Wilmington, DE 19801
Telephone: 302.656.2308
Facsimile:   215.790.0668
cnewlin@markowitzandrichman.com

-and-

**LAW OFFICES OF MITCHELL J. MALZBERG, LLC**
Mitchell Malzberg, Esquire
P. O. Box 5122
6 E. Main Street, Suite 7
Clinton, NJ  08809
Telephone: 908.323.2958
Facsimile:   908.933-0808
mmalzberg@mjmalzberglaw.com

*Co-Counsel to Pennsylvania Association of Staff Nurses and Allied Professionals*