# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTER CITY HEALTHCARE, | ) | Case No. 19-11466 (KG) |
| LLC d/b/a HAHNEMANN | ) | |
| UNIVERSITY HOSPITAL, *et al.*,[1] | ) | Joint Administration Requested |
| | ) | |
| Debtors. | ) | |
| | ) | |

**LIMITED RESPONSE OF THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF HEALTH TO THE DEBTORS' MOTION FOR ENTRY OF (A) AN ORDER (I) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OR SALES OF SUBSTANTIALLY ALL ASSETS OF ST. CHRISTOPHER'S HEALTHCARE, LLC AND CERTAIN RELATED DEBTORS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, (III) ESTABLISHING PROCEDURES IN CONNECTION WITH THE SELECTION OF AND PROTECTIONS AFFORDED TO ANY STALKING HORSE PURCHASERS, AND (IV) GRANTING RELATED RELIEF; AND (B) ONE OR MORE ORDERS (I) APPROVING THE SALES OR OTHER ACQUISITION TRANSACTIONS FOR THE ASSETS, (II) AUTHORIZING THE SALES FREE AND CLEAR OF ALL ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF [DOC. NO. 205]**

The Commonwealth of Pennsylvania Department of Health (the "PA DOH"), by

and through undersigned counsel, by way of the *Limited Response of the Commonwealth of*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102

*Pennsylvania Department of Health to the Debtors' Motion for Entry of (A) an Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Debtors and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to Any Stalking Horse Purchasers, and (IV) Granting Related Relief; and (B) One or More Orders (I) Approving the Sales or Other Acquisition Transactions for the Assets, (II) Authorizing the Sales Free and Clear of All Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Doc. No. 205] (the "SCH Sale Motion"), hereby states:

## BACKGROUND

1.　　On June 30, 2019 (the "Petition Date"), Center City Healthcare, LLC d/b/a Hahnemann University Hospital and its affiliated debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware seeking relief under the provisions of Chapter 11 of the United States Bankruptcy Code.

2.　　On July 16, 2019, the Debtors filed the SCH Sale Motion seeking, *inter alia*, entry of an order approving bidding procedures and establishing assumption and assignment procedures relating to the sale of substantially all of the assets of St. Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children ("SCH") and certain of its affiliates (collectively, the "STC Entities").

3.      As an interested party in these bankruptcy proceedings, one of the PA DOH's primary objectives is to ensure the health, welfare and safety of all of the Debtors' patients.

4.      Chapter 8 of the Pennsylvania Health Care Facilities Act (the "Act") governs the Commonwealth's licensing of Pennsylvania health care facilities. 35 P.S. § 448.801—448.821.

5.      Among other things, the Act provides for the establishment and enforcement of regulations regarding standards for the construction, maintenance, and operation of licensed hospitals within the Commonwealth of Pennsylvania (§ 448.801a), sets the standards for issuance of licenses with which health care providers must comply (§ 448.808), and grants the PA DOH the authority to implement and enforce regulations necessary to carry out the purposes of the Act (§ 448.803).

6.      The purpose of Chapter 8 of the Act, *inter alia*, is "to protect and promote the public health and welfare through the establishment and enforcement of regulations setting minimum standards in the construction, maintenance and operation of health care facilities." 35 P.S. § 448.801a.

7.      Pursuant to 35 P.S. § 448.803, the PA DOH has the power and duty (i) "[t]o promulgate . . . the rules and regulations necessary to carry out the purposes and provisions" of Chapter 8 of the Act, and (ii) "[t]o assure that the provisions of [Chapter 8] and all rules and regulations promulgated under [Chapter 8] are enforced."

8.      Section 448.806 of the Act requires all health care facilities within the Commonwealth to obtain a license from the PA DOH prior to providing medical services.

9.      Section 448.808 details certain standards which any health care provider must meet to the satisfaction of the PA DOH before the PA DOH will issue a license.

10.     Pursuant to 35 P.S. § 448.809(a)(2), all licenses issued by the PA DOH under the Act "shall . . . not be transferable except upon written approval of the [PA DOH]."

11.     In addition, pursuant to its authority under the Act, the PA DOH has promulgated certain regulations in order to implement the powers and duties granted to it by the Act which are codified in Chapter 101 of Title 28 of the Pennsylvania Code.

12.     Among other things, such regulations require that a hospital license be tied to a specific facility.  Because a license can only be transferred with the prior written approval of the PA DOH, even where a specific owner is identified as a transferee, the new owner of the facility must submit an application to the PA DOH in order to obtain its approval. *See* 28 Pa. Code § 101.52.

13.     Additionally, the regulations provide that a hospital license is automatically void when a hospital "substantially changes its name or location." 28 Pa. Code § 101.53.

14.     Pursuant to the authority and obligations vested in the PA DOH by the Act, the PA DOH has issued certain healthcare facility licenses to the STC Entities (the "STC Licenses").

15.     As a result of the above-summarized statutory framework, implemented by the Commonwealth of Pennsylvania for the protection of the public health and welfare, the Debtors cannot sell, transfer or assign any of the STC Licenses without the prior written approval of the PA DOH.

**LIMITED RESPONSE**

16.     Pursuant to 11 U.S.C. §363(b)(1), "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."

17.     However, Section 363 does not authorize the sale of property "contrary to restrictions imposed by state law." *Integrated Solutions v. Service Support Specialties*, 193 B.R. 722, 728-29 (D.N.J. 1996) (holding that although debtors' prepetition state tort claims became property of the bankruptcy estate, trustee was not permitted to sell the claims in light of state law prohibiting the assignment of pre-judgment personal injury and business claims).

18.     In part, this is because of "the general principle that the trustee takes only those rights that the debtor had under state law." *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987) (holding that trustee could not transfer debtors' patronage margin certificates without approval of issuer pursuant to transfer restrictions imposed under Minnesota state law).

19.     "The text and spirit of the bankruptcy provisions have not been held to preempt state laws limiting the alienability or present liquidation value of the assets, even though those limitations may undermine the expeditious liquidation of the bankruptcy estate." *Integrated Solutions*, 193 B.R. at 729.

20.     "Furthermore, courts have consistently held that the bankruptcy court does not have the power to interfere with state regulations exercised under the state's police powers." *In re United Healthcare System, Inc.*, 1997 U.S. Dist. LEXIS 5090, at *28 (D.N.J. March 26, 1997).

21.     In *In re Draughon Training Institute, Inc.*, the debtors in possession, operators of a number of proprietary schools, sought the bankruptcy court's approval, pursuant to Section 363(b)(1), of the debtors' sale of its schools, including certain licenses and certifications

issued by the U.S. Department of Education and the Texas Education Agency (the "TEA").119

B.R. 927, 929 (Bankr. W.D. La. 1990). The debtors requested that the court order the relevant

government agencies to approve the transfer of the licenses and certifications, including the

Certificate of Approval issued by the TEA, to the non-debtor purchaser despite transfer

restrictions imposed by state and federal non-bankruptcy law. *Id.*

22.    The court determined that because the transfer of the licenses and

certifications was restricted by non-bankruptcy law, the court did not have the authority to order

their transfer in derogation of otherwise applicable non-bankruptcy law. *Id.* ("The jurisprudence

on this issue holds that non-bankruptcy related transfer restrictions burdening property will be

given effect when property is sold out of the estate to a non-debtor third party.").

23.    Similarly, in *Wilner Wood Prods., Co. v. State of Me., Dep't of Envtl.*

*Protection*, 128 B.R. 1, 1-2 (D. Me. 1991), prior to filing for bankruptcy the debtor had applied

to renew its air emissions license from the Maine Department of Environmental Protection (the

"ME DEP"). As a result of its financial situation, the debtor was unable to comply with certain

state law requirements and the ME DEP denied its license renewal. *Id.* at 2-3. The bankruptcy

court enjoined the ME DEP from denying the renewal, but on appeal the district court reversed

finding that the ME DEP's oversight of air emissions plainly fell within its police or regulatory

power and thus the bankruptcy court did not have authority to interfere with the ME DEP's

licensing determination. *Id.* at 3; *see also In re Yellow Cab*, 132 F.3d 591, 599 (10th Cir. 1997)

(holding that bankruptcy court did not have authority under Sections 362 or 105 of the

Bankruptcy Code to enjoin public utilities commission's restriction on the transfer of debtor's

taxi licenses because the action of the commission fell within commission's regulatory or police

power); *In re Nejberger*, 934 F.2d 1300, 1303-04 (holding that by ordering liquor control board

6

to issue new liquor license to debtor, bankruptcy court improperly interfered with liquor control board's discretionary power to consider license renewal).

24.     The authority granted to the PA DOH by the Act to oversee the operation and licensing of Pennsylvania hospitals is intended to protect the public health and welfare. Thus, such authority is plainly exercised pursuant to the PA DOH's governmental regulatory and/or police powers.

25.     Accordingly, any right the Debtors have to sell or transfer the STC Licenses under Section 363(b)(1) of the Bankruptcy Code remains subject to the restrictions on transfer imposed by Pennsylvania law, including the Debtors' obligation to obtain the prior written approval from the PA DOH prior to any transfer.

26.     In addition, the successful bidder will be required to apply for and obtain any and all licenses required by Pennsylvania statutes and regulations.

27.     The PA DOH expressly reserves the right to supplement this Limited Response prior to any hearing before this Court to consider approval of the sale of the STC Entities' assets.

Dated:  July 24, 2019                     By:   /s/ Daniel M. Pereira
                                          Richard A. Barkasy (#4683)
                                          Daniel M. Pereira (#6450)
                                          SCHNADER HARRISON SEGAL & LEWIS LLP
                                          824 North Market Street, Suite 800
                                          Wilmington, DE 19801
                                          Telephone: (302) 888-4554
                                          Facsimile:  (302) 888-1696
                                          rbarkasy@schnader.com
                                          dpereira@schnader.com

                                          -and-

David Smith (admitted *pro hac vice*)
Nicholas J. LePore, III (admitted *pro hac vice*)
Ira N. Richards (admitted *pro hac vice*)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205
dsmith@schnader.com
nlepore@schnader.com
irichards@schnader.com

*Counsel for the Commonwealth of Pennsylvania
Department of Health*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2019, I caused a copy of the foregoing to be sent via ECF

Noticing to all parties receiving ECF Notices in this Chapter 11 case.


/s/ Daniel M. Pereira
Daniel M. Pereira, Esq. (#6450)