# EXHIBIT A

## (Revised Proposed Order)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |  |
| *al.*,[1] | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | **Related to Docket Nos. 205 and ____** |
|  | ) |  |

### ORDER (I) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OR SALES OF SUBSTANTIALLY ALL ASSETS OF ST. CHRISTOPHER'S HEALTHCARE, LLC AND CERTAIN RELATED AFFILIATES AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, (III) ESTABLISHING PROCEDURES IN CONNECTION WITH THE SELECTION OF AND PROTECTIONS AFFORDED TO ANY STALKING HORSE PURCHASERS, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of St. Christopher's Healthcare LLC ("**SCH**") and its

affiliated debtors and debtors in possession (together, the "**Debtors**") in the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**") for the entry of an order, (i) scheduling a hearing (the

"**Sale Hearing**") on approval of one or more sales of, or other acquisition transactions for (each

a "**Sale**"), substantially all of the assets of SCH, SCHC Pediatric Associates, L.L.C, St.

Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates,

L.L.C, StChris Care at Northeast Pediatrics, L.L.C. and TPS V of PA, L.L.C. (together, the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]     Capitalized terms used but not defined herein shall have the meanings given in the Motion or the Bidding Procedures (as defined below), as applicable.

"**STC Entities**" or the "**Sellers**"), free and clear of all liens, claims, encumbrances, and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by the applicable asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"), and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "**Assumed Contract**," and collectively, the "**Assumed Contracts**") in connection therewith, (ii) authorizing and approving certain proposed bidding procedures for the Sales in the form attached hereto as **Exhibit 1** (collectively, the "**Bidding Procedures**"), certain proposed assumption and assignment procedures (collectively, the "**Assumption and Assignment Procedures**"), and the form and manner of notice thereof, (iii) establishing procedures in connection with the selection of Stalking Horse Purchasers (as defined herein) and protections to be afforded thereto, and (iv) granting related relief; and due and proper notice of the Motion having been given as provided in the Motion; and it appearing that no other or further notice need be provided; and the Bidding Procedures Hearing (as defined below) having been held; and all of the proceedings had before the Court; and the Court having reviewed the Motion; and the Court having found and determined that the relief sought in the Motion and set forth herein is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[3]

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

B.      Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532  (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

D.      Good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.      The Sale Notice (as defined below) is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Auction, the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F.      The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize recoveries with respect to the Sale.

G.      The Assumption and Assignment Procedures provided for herein and in the Assumption Notice (as defined below) are reasonable and appropriate and consistent with the

provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections (as defined in the Assumption and Assignment Procedures).

H.      Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Those portions of the Motion seeking approval of (a) the Assumption and Assignment Procedures, (b) the Bidding Procedures, (c) the date, time and place of the Auction and Sale Hearing, and (d) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Sale Notice, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"), and the Assumption Notice, substantially in the form attached hereto as **Exhibit 3** (the "**Assumption Notice**"), are hereby GRANTED as provided herein.

2.      Any objections to the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**I.      Approval of Procedures for the Designation of a Stalking Horse Purchaser and Approval of Bid Protections**

3.      The Debtors, in consultation with the Consultation Parties (as defined below), may (a) select one or more parties to act as a Stalking Horse Purchaser for up to substantially all of the Assets, (b) may negotiate the terms of and enter into one or more purchase agreements with any Stalking Horse Purchaser (a "**Stalking Horse Agreement**") (subject to higher or better bids as contemplated herein), and (c) may agree to provide certain bid protections to such

Stalking Horse Purchaser, subject to approval of the Court after notice and an opportunity to object, as set forth below.

4.      If the Debtors seek to provide bid protections to any Stalking Horse Purchaser, the Debtors shall file a supplement to the Motion (a "**Supplemental Motion**") seeking approval of such protections on or before **August 27, 2019** and serve such Supplemental Motion on the Transaction Notice Parties.  To the extent the Debtors seek to enter into a Stalking Horse Agreement but do *not* seek approval of any bid protections for a Stalking Horse Purchaser, the Debtors shall file a notice of entry into a Stalking Horse Agreement(s) (a "**Stalking Horse Notice**") with the Court on or before **August 27, 2019** and serve such notice on the Transaction Parties.

5.      Such Supplemental Motion or Stalking Horse Notice shall include a summary of the material terms of any Stalking Horse Agreement(s) (including, without limitation, any proposed compensation or bonus arrangements involving any insider of the Debtors), and, in the case of the Supplemental Motion, the proposed bid protections, and attach the Stalking Horse Agreement(s).  If no objections to the motion or notice are filed and served on the Debtors by **September 3, 2019 at 4:00 p.m. (ET)**, the Debtors shall be entitled to immediately file a certificate of no objection with the Court, after which the Court may enter an order approving the Debtors' selection of a Stalking Horse Purchaser and, if applicable, any bid protections requested, without the need for a hearing.  If a timely objection is filed, an expedited hearing to consider approval of the Stalking Horse Agreement(s) and any objections thereto will be held on **September 4, 2019 at 2:00 p.m. (ET)**.  For the avoidance of doubt, nothing in this Order or the Bidding Procedures authorizes bid protections for any Stalking Horse Purchaser(s) or other bidders.

6.    The Debtors shall further have the right, in consultation with the Consultation Parties, to extend or waive the Stalking Horse Bid Deadline and the Stalking Horse Notice Deadline or conduct the Auction without any Stalking Horse Purchaser.

**Approval of Bidding Procedures; Auction**

7.    The Bidding Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are hereby authorized to conduct the Auction of the Assets pursuant to the terms of the Bidding Procedures and this Order.  The Bidding Procedures shall govern the actions of the Potential Bidders and the Qualifying Bidders (each as defined in the Bidding Procedures), as well as the conduct of the Auction.

8.    Notwithstanding any limitations provided for in any due diligence information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders or Qualifying Bidders, provided that such Potential Bidders or Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Potential Bidders or Qualifying Bidders in connection with the Bidding Procedures and the Sale, provided that the information was provided in accordance with this Order and except as otherwise provided for in a Transaction Agreement that is authorized and approved by the Court.

9.    For the avoidance of doubt, and notwithstanding anything to the contrary in the Motion, this Order or the Bidding Procedures, the requirement that a party execute a

confidentiality agreement to obtain access to the data room and other due diligence information shall not restrict, prohibit or alter the right that any party has under any applicable agreement, including loan agreements, to receive, or the Debtors' obligation to provide, any information, which rights and obligations are intended to remain unchanged by this Order and the Bidding Procedures.

10.     A Qualifying Bidder (other than a Stalking Horse Purchaser) that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors, with a copy to the Consultation Parties and the Court-appointed patient care ombudsman (the "**PCO**"), so as to be received on or before **September 17, 2019 at 4:00 p.m. (ET)** (the "**Bid Deadline**"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties.  Any party that does not submit a bid by the Bid Deadline will not be allowed to: (a) submit any offer after the Bid Deadline or (b) participate as a bidder in the Auction.  The term "**Consultation Parties**" as used in the Bidding Procedures and this Order shall mean, with respect to any Asset: (i) counsel to the Official Committee of Unsecured Creditors, and (ii) counsel to MidCap Financial Trust, as DIP Agent and agent under the prepetition first-lien credit facility.

11.     All Qualifying Bidders submitting a Qualifying Bid are deemed to have submitted to the jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Assets identified under the Transaction Agreement.

12.     In the event that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall include such Assets in the Auction.  If there is only one Qualifying Bid submitted for a particular Asset or set of Assets on or before the Bid Deadline, the Debtors, in consultation with the Consultation Parties, may elect not to include such Asset or

Assets in the Auction and, instead, may request at the Sale Hearing that this Court approve the Qualifying Bid (if any) applicable to such Assets and the transactions contemplated thereunder. If there are no Assets for which at least two Qualifying Bids have been timely submitted, the Auction will be cancelled.

13.     The Auction shall be held at the offices of Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102, beginning at **10:00 a.m. (prevailing Eastern Time) on September 19, 2019**.  Each Auction Bidder (as defined in the Bidding Procedures) shall confirm in writing that: (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction and (b) its Qualifying Bid is a good faith *bona fide* offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at the Auction shall be transcribed.

14.     All Assets may be offered individually or in groupings at the Auction.  The Debtors, in consultation with the Consultation Parties, shall have the ability to determine the order in which the Assets will be subjected to bidding during the Auction and what Asset or Assets will be auctioned either individually or in each grouping.  The Debtors, after consultation with the Consultation Parties, shall announce which Asset or Assets will be in the first grouping and which bid is the Baseline Bid (as defined in the Auction and Bidding Procedures), which may include the aggregation of a combination of Qualifying Bids of separate Qualifying Bidders. The applicable Debtors, in consultation with the Consultation Parties, shall assess each bid to determine whether it is the highest and best bid for an Asset or Assets, considering, among other things: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial ability to meet all commitments, and required governmental or other approval; (b) variations between

8

competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant, all in consultation with the Consultation Parties.

15.     The Debtors shall have the right as they may reasonably determine to be in the best interests of their estates, and in consultation with the Consultation Parties, to carry out the Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is a Baseline Bid (as defined in the Bidding Procedures), (d) permit Qualifying Bidders to bid on less than all of the Assets that were included in their Qualifying Bid, if applicable; (e) subject to the terms of the Bidding Procedures, determine which bids are the Successful Bid and Back-Up Bid, each as it relates to the Auction; (f) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the Bankruptcy Code, or

(iii) contrary to the best interests of the Debtors and their estates; (g) adjourn or cancel an Auction and/or the Sale Hearing in open court without further notice or as provided in this Order and in the Bidding Procedures; (h) modify the Bidding Procedures consistent with their fiduciary duties and the Bankruptcy Code; and (i) withdraw the Motion with respect to entry of the Sale Order for any Assets at any time with or without prejudice, all in consultation with the Consultation Parties.

**Assumption and Assignment Procedures; Contract Objections**

16.     The following "Assumption and Assignment Procedures" are hereby approved:

(a)     On or before **August 16, 2019** (the "**Assumption Notice Deadline**"), the Debtors shall file with the Court and serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to an Assumed Contract an assumption notice (an "**Assumption Notice**").  In the event that the Debtors subsequently identify any Assumed Contract that a potential purchaser may potentially seek to acquire by assumption or assumption and assignment or modify the Cure Amount (as defined herein) after the Assumption Notice Deadline, the Debtors shall promptly file a supplemental Assumption Notice (a "**Supplemental Assumption Notice**").

(b)     The Assumption Notice (or Supplemental Assumption Notice, if applicable) shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts.

(c)     If a Counterparty objects to (i) the Debtors' ability to assume and/or assign the Assumed Contract or (ii) the Cure Amount for its Assumed Contract through the Contract Objection Deadline (as defined below), the Counterparty must file with the Court and serve on the counsel to the Debtors and the Consultation Parties a written objection (a "**Contract Objection**").

(d)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on August 30, 2019** (the "**Contract Objection Deadline**"), provided that if the Debtors file any Supplemental Assumption Notice, such notice shall provide that the Contract Objection Deadline shall be at least 14 days after service of such notice; (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the counsel to the Debtors and the Consultation Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under sections 365(b)(1)(A)

and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.  Any objections to adequate assurance of future performance by a Successful Bidder shall be filed in accordance with this Order.

(e)     No later than one (1) day after the conclusion or cancellation of the Auction, the Debtors shall file with the Court one or more notices identifying the Successful Bidder or Successful Bidders for the Assets (a "**Notice of Successful Bidder**"), which shall set forth, among other things, (i) the Successful Bidder and Back-Up Bidder (as defined in the Bidding Procedures), if any, (ii) the Assumed Contracts included in the Successful Bid or Back-Up Bid (as defined in the Bidding Procedures); (iii) the proposed assignee(s) of such Assumed Contracts; and (iv) instructions for contacting the Successful Bidder to obtain Adequate Assurance Information, which may be provided to each affected Counterparty on a confidential basis; <u>provided</u> that if the Auction is cancelled and the Debtors choose to proceed with a transaction with one or more Stalking Horse Purchasers, the Notice of Successful Bidder shall set forth such information for the Stalking Horse Purchaser(s) as the Successful Bidder.

(f)     The Debtors shall serve the Notice of Successful Bidder no later than one (1) day after the conclusion or cancellation of the Auction on each affected Counterparty and Transaction Notice Party by fax, email or, if neither is available, first class mail.  Counterparties may submit objections <u>solely</u> on the basis of adequate assurance of future performance by a Successful Bidder (*other than a Stalking Horse Purchaser*) **on or before September 22, 2019 at 4:00 p.m. (ET)**.

(g)     If no Contract Objection or adequate assurance objection is timely received with respect to an Assumed Contract: (i) the Counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Sellers and (if applicable) assignment of such Assumed Contract, and will be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance); (ii) upon receipt by the Counterparty of any Cure Amount, any and all defaults under such Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount included in the Assumption Notice or Supplemental Assumption Notice, if applicable, for such Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors and (if applicable) the Debtors' assignee, or the property of any of them, that existed prior to the entry of the Sale Order.

(h)     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under sections 365(b)(1)(A) and (B) of the Bankruptcy Code

11

(any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be mutually agreed to by the Debtors and the objecting Counterparty or scheduled by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, such Assumed Contract may be assumed by the Sellers and assigned, provided that the cure amount that the Counterparty asserts is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the proposed assignee pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

17.     As part of its bid, each Qualifying Bidder (including any Stalking Horse Purchaser) must make available, for review by the Consultation Parties and Counterparties to Assumed Contracts of which such Qualified Bidder may seek to take assignment, information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the Qualifying Bidder's financial ability and willingness to perform under any contracts that are assumed and assigned to such Qualifying Bidder; (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance; and (c) the actual assignee's identity.  To the extent available, the Adequate Assurance Information shall also include, to the extent requested: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns and annual reports.  The Debtors shall provide the Adequate Assurance Information to Counterparties to Assumed Contracts and their counsel, if known, as soon as practicable upon receiving a Qualified Bid, but no later than one (1) business day following the receipt of such information, if such Counterparties have requested the information, in writing.  Adequate Assurance Information may be provided on a confidential basis and, in such instances, must be kept confidential and shall only be used and disclosed as agreed to by the Qualifying Bidder that provided such Adequate Assurance Information or as ordered by the Court.

18.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

19.     The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors, their estates, or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

**Sale Hearing and Objections to the Sale**

20.     The Sale Hearing shall be held in this Court on **September [___], 2019 at 10:00 a.m. (ET)**, unless otherwise determined by this Court.  The Debtors may adjourn or reschedule the Sale Hearing without notice or with limited and shortened notice to parties, including by: (a) an announcement of such adjournment at the Sale Hearing or at the Auction or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

21.     Any objections to the Sale or the relief requested in connection with the Sale, (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on September 13, 2019** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the counsel to the Debtors and the Consultation Parties; provided that solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, and the Debtors'

13

inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid (or than a Stalking Horse Bid) or Back-Up Bid (an "**Auction Objection**"), the deadline to file an objection shall be **4:00 p.m. (ET) on September 22, 2019** (the "**Auction Objection Deadline**"). If a Sale Objection or Auction Objection is not filed and served on or before the Sale Objection Deadline or Auction Objection Deadline, as applicable, in accordance with the foregoing requirements, an objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party. A form of Sale Order shall be filed with the Court as soon as practicable prior to the Sale Objection Deadline.

22.     Failure to file a Sale Objection on or before the Sale Objection Deadline and failure to file an Auction Objection on or before the Auction Objection Deadline shall, for purposes of section 363(f) of the Bankruptcy Code, constitute "consent" to the entry of the Sale Order and consummation of the Sale and all transactions related thereto.

23.     The Debtors shall have until commencement of the Sale Hearing to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection, Auction Objection, or Contract Objection.

**Form and Manner of Notice of Sale Hearing**

24.     The Sale Notice, the Assumption Notice, the Notice of Successful Bidder, the Bidding Procedures, and the Assumption and Assignment Procedures and the objection periods associated with any of the foregoing are reasonably calculated to provide sufficient and effective notice to any affected party and to afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, the Auction, the Sale, the Sale Hearing, and the assumption and assignment of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notices and objection periods are hereby approved.

25.     Within three (3) business days following the entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by first class mail on: (1) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin Hackman, Esq.); (2) counsel to the Official Committee of Unsecured Creditors, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102 (Attn: Andrew H. Sherman, Esq. and Boris I. Mankovetskiy, Esq.); (3) counsel to MidCap, Debtors' prepetition secured lender and DIP Agent, Stradley, Ronan, Stevens & Young, LLP, 2005 Market Street, Suite 2600, Philadelphia, PA 19103 (Attn: Gretchen M. Santamour, Esq.) and 1000 N. West Street, Suite 1279, Wilmington, DE 19801 (Attn: Joelle E. Polesky, Esq.); (4) Drexel University d/b/a Drexel University College of Medicine; (5) the Debtors' unions; (6) the United States Attorney for the District of Delaware; (7) the United States Department of Justice; (8) the Pennsylvania and New Jersey Attorney General's Offices; (9) the Pennsylvania Department of Human Services; (10) the City of Philadelphia; (11) all parties known by the Debtors to assert a lien on any of the Assets; (12) all non-Debtor parties to any of the Assumed Contracts; (13) all persons known to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve months prior to the Petition Date; (14) the Office of the Secretary of State for the Commonwealth of Pennsylvania; (15) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (16) the Securities and Exchange Commission; (17) the United States Environmental Protection Agency; (18) the Pennsylvania Department of Environmental Protection; (19) the New Jersey Department of Environmental Protection; and (20) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service (collectively, the "**Transaction Notice Parties**").  In addition, the

Debtors will serve the Sale Notice on all of the Debtors' known creditors and equity holders (for whom identifying information and addresses are available to the Debtors.

26.     The Debtors shall also post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, Omni Management Group, at https://omnimgt.com/CenterCityHealthcare.

27.     The Debtors shall also publish the Sale Notice, as modified in a manner appropriate for publication, in the *Philadelphia Inquirer* and either the *USA Today* or the *Wall Street Journal* by the date that is ten (10) days after the entry of the Bidding Procedures Order or as soon as practicable thereafter.  Such publication notice shall be sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

**Miscellaneous**

28.     Notwithstanding anything to the contrary in any asset purchase agreement, including any Stalking Horse Agreement, any Transaction Agreement, and any other agreement for a Sale of the Assets or any portion thereof, the purchased Assets shall not include any cause of action or proceeds of such cause of action under chapter 5 of the Bankruptcy Code or applicable state law equivalents or any commercial or other tort claims arising on or before the closing date of the Sale, or any proceeds of such claims, (a) against present or former directors and officers of the Debtors and/or any of their affiliates, (b) against direct and indirect equity holders of the Debtors and/or their affiliates, and (c) of the Debtors and/or any of their affiliates against any other Debtors.

29.     For purposes of clarification, the Assets do not include the fee interest in any real estate, all of which is owned by non-Debtors.  All parties shall act in good faith in connection with the separate but parallel sales processes.

30.     This order and the Bidding Procedures shall be interpreted so as to afford the Debtors, in consultation with the Consultation Parties, the greatest opportunity to maximize the value of the Assets for the benefit of the Debtors' estates.

31.     The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

32.     Notwithstanding anything in the Motion [D.I. 205], the Bidding Procedures, the Sale Notice, and/or the Assumption Notice to the contrary, nothing in this Order shall be construed as authorizing the sale, transfer or assignment of any Medicare provider agreement to the Successful Bidder free and clear of successor liability for any liability to the United States arising from such provider agreements, nor as restricting the United States' right of setoff and recoupment. Any assumption and assignment of the Medicare provider agreements shall be authorized only in accordance with 11 U.S.C. § 365, all applicable Medicare statutes and regulations, and the Anti-Assignment Act.

33.     To the extent the Successful Bid or the Backup Bid includes the assignment of a Medicare provider agreement, such bid must include a provision that requires the agreement be assumed and assigned pursuant to and in accordance with section 365 of the Bankruptcy Code, all applicable Medicare statutes and regulations, and the Anti-Assignment Act. No Successful Bid or Backup Bid may include a requirement that any Medicare provider agreement be sold, assigned, or transferred "free and clear" of successor liability for any liability to the United States arising from such provider agreement pursuant to section 363(f) of the Bankruptcy Code.

34.     In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, a Transaction Agreement, or a Stalking Horse Agreement, on

the other hand, this Order and the Bidding Procedures shall control and govern, and this Order shall control in the event of any conflict with the Bidding Procedures.

35.     Prior to mailing the Sale Notice and the Assumption Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

36.     All persons or entities that participate in the bidding process shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to a jury trial in connection with any disputes relating to the any of the foregoing matters.

37.     Joel Freedman, any person or entity acting, directly or indirectly, on behalf of or at the direction of Joel Freedman, and any  person or entity which holds direct or indirect ownership interests in, or is in direct or indirect control of, any of the non-Debtor affiliates, shall be recused from participation in any Sale and any deliberations, decisions and actions relating thereto.  All such deliberations, decisions and actions shall instead be reserved for the Debtors' chief restructuring officer and independent director, in consultation with the Consultation Parties where required by this Order or the Bidding Procedures.  All parties shall act in good faith in connection with the separate but parallel sales processes.

38.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy

Code, the Bankruptcy Rules or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

39.     The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

40.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

41.     For informational purposes only, a chart setting forth key dates related to this Order is attached hereto as **<u>Exhibit 4</u>**.

## Exhibit 1

**Bidding Procedures**

## BIDDING PROCEDURES

On June 30, 2019 or July 1, 2019 (the "**Petition Date**"),  St. Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children ("**SCH**') and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On **[_____]**, 2019, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order **[Docket No. _____]** (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, the "**Bidding Procedures**"), which are to be employed by the Debtors in connection with the proposed sales of or other acquisition transactions for (each a "**Sale**") substantially all assets of SCH, SCHC Pediatric Associates, L.L.C, St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C, StChris Care at Northeast Pediatrics, L.L.C. and TPS V of PA, L.L.C. (together, the "**STC Entities**" or the "**Sellers**"), free and clear of all liens, claims, encumbrances and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by a Transaction Agreement (as defined below), on an AS-IS, WHERE-IS with ALL FAULTS basis.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

If, and to the extent that prior to the Stalking Horse Bid Deadline (as defined below), the Debtors receive one or more acceptable offers that seek stalking horse status, the Debtors reserve the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "**Stalking Horse Purchaser**") to acquire one or more of the Sellers' assets (the "**Assets**") pursuant to a Transaction Agreement between the Sellers and the Stalking Horse Purchaser (each a "**Stalking Horse Agreement**") in accordance with the procedures set forth in the Bidding Procedures Order.  Notwithstanding the selection of any Stalking Horse Purchaser, the Debtors will continue to solicit bids through the Bid Deadline (as defined below).

For purposes of clarification, the Assets do not include the fee interest in any real estate, all of which is owned by non-Debtors.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT:**

> **SSG Advisors, LLC (the "Investment Banker"):**
> **J. Scott Victor (Phone: (610) 940-5802; Email: jsvictor@ssgca.com**
> **Teresa C. Kohl (Phone: (610) 940-9521; Email: tkohl@ssgca.com**
> **Craig D. Warznak (Phone: (610) 940-3615; Email: cwarznak@ssgca.com**

**Summary of Important Dates**

| Milestones | Proposed Dates |
|---|---|
| Bidding Procedures Hearing | July 26, 2019 at 10:00 a.m. (ET) |
| Deadline to Serve Assumption Notice | August 16, 2019 |
| Stalking Horse Bid Deadline | August 23, 2019 at 4:00 p.m. (ET) |
| Deadline to File Supplemental Motion or Stalking Horse Notice | August 27, 2019 |
| Deadline to Object to Assumption Notice (other than adequate assurance) | August 30, 2019 at 4:00 p.m. (ET) |
| Supplemental Cure Objection Deadline | 14 days after service of a Supplemental Assumption Notice |
| Deadline to Object to Supplemental Motion or Stalking Horse Notice | September 3, 2019 at 12:00 p.m. (ET) |
| Tentative Hearing on Approval of Stalking Horse and any Bid Protections | September 4, 2019 at 2:00 p.m. |
| Sale Objection Deadline (including objections to  a sale to a Stalking Horse Purchaser) | September 13, 2019 at 4:00 p.m. (ET) |
| Bid Deadline | September 17, 2019 at 4:00 p.m. (ET) |
| Auction | September 19, 2019 at 10:00 a.m. (ET) |
| Deadline to File and Serve Notice of Successful Bidder and Amount of Successful Bid | No later than 1 day following the conclusion of the Auction. |
| Deadline to Object to Sale to Successful Bidder (other than Stalking Horse Purchaser) and Adequate Assurance of Successful Bidder (other than Stalking Horse Purchaser) | September 22, 2019 at 4:00 p.m. (ET) |
| Sale Hearing | September [__], 2019 at __:__ a.m./p.m. (ET) |
| Outside Closing Date | October 4, 2019 |

1.      **Assets to be Sold**

The Debtors shall offer for sale all of the Assets.  Potential Bidders may bid on all or any number or combination of the Assets.

Notwithstanding anything to the contrary in any asset purchase agreement, including any Stalking Horse Agreement, any Transaction Agreement, and any other agreement for a Sale of the Assets or any portion thereof, the purchased Assets shall not include any commercial or other tort claims arising on or before the closing date of the Sale, or any proceeds of such claims, (a) against present or former directors and officers of the Debtors and/or any of their affiliates, (b) against direct and indirect equity holders of the Debtors and/or their affiliates, and (c) of the Debtors and/or any of their affiliates against any other Debtors.

2.      **Participation Requirements**

Any person or entity that wishes to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**" and such person or entity, a "**Potential Bidder**") must submit to the Debtors and their advisors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidders, to the extent of confidential information relating to the Assets acquired by such party.  If any dispute arises between the Debtors and any person or entity wishing to gain access to the Debtors' confidential electronic data room, then the Debtors may request the Court to adjudicate the dispute.  Pending the Court's adjudication of the dispute, the Debtors shall not be required to provide the person or entity at issue with access to the Debtors' confidential electronic data room.

Any Potential Bidder that wishes to participate in the bidding process for the Assets must first become a "**Qualifying Bidder**."  Except for any Stalking Horse Purchaser(s), parties may be qualified as a Qualifying Bidder up to the Bid Deadline (*i.e.*, **September 17, 2019 at 4:00 p.m. (ET)**)), but **parties interested in submitting a bid for any of the Assets are encouraged to qualify as soon as possible because the Bidding Procedures do not permit any due diligence or financing conditions in Qualifying Bids**.  To become a Qualifying Bidder, Potential Bidders must submit sufficient information, as determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties[1], to determine that the interested party (i) has, or can obtain, the financial ability and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder pursuant to section 365 of the Bankruptcy Code in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

---

[1]      The term "**Consultation Parties**" shall mean (i) counsel to the Official Committee of Unsecured Creditors, and (ii) counsel to MidCap Financial Trust.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures, if and when there is one or more Stalking Horse Purchaser, any such designated Stalking Horse Purchasers shall be considered a Qualifying Bidder and any Stalking Horse Agreement shall be a Qualifying Bid (as defined below).

To the extent that a bid is proposed by a group or committee to which Bankruptcy Rule 2019 applies, such parties must promptly file the statement required by such rule as a condition to becoming a Qualifying Bidder.

## 3.    Bankruptcy Court Jurisdiction

In conjunction with any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction (as defined below), the acts or omissions of the Debtors, the Investment Banker, and their respective representatives and/or the construction and enforcement of the contemplated transaction documents of such parties, any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial and consented and submitted to the exclusive jurisdiction of the Court, (b) bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

## 4.    Form of Agreement

Each Qualifying Bidder, must include with its bid:

(a)    an executed asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"),[2] clean and marked against the form provided by the Debtors, which must include the following:

i.    identification of the specific Assets to be acquired either in the Transaction Agreement itself or as a schedule to the Transaction Agreement;

ii.    full disclosure of the identity of the bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, along with the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors wish to discuss the bid submitted by the Qualifying Bidder;

iii.    the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount, if any, constitutes a credit bid, as well as any liabilities proposed to be paid or assumed by such Qualifying Bidder;

---

[2]    A form of proposed Transaction Agreement to be used by bidders in submitting stalking horse or Qualified Bids (as defined herein) will be located in the data room maintained by the Investment Banker.

iv.     identify whether the Qualifying Bidder or the Debtors shall be responsible for (a) any transfer or similar taxes that arise from the Sale and (b) any cure costs required to be paid to assume and assign executory contracts and unexpired leases that are included in the bid;

v.      a commitment to close the transactions contemplated by the Transaction Agreement promptly upon entry of the order approving the Sale;

vi.     contain a written acknowledgement and representation that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

vii.    a statement that the Transaction Agreement is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, due diligence or third party, regulatory or internal approval, subject to Section 3(a)(ix) of these Bidding Procedures;

viii.   a statement that the Qualifying Bidder has obtained any required internal corporate, legal or other authorizations, and has the ability to close a sale transaction and to provide adequate assurance of future performance as required under section 365 of the Bankruptcy Code;

ix.     a statement that the Qualifying Bidder has the ability to obtain all required regulatory approvals on a timely basis and setting forth a summary of the steps that have been and/or will be taken to obtain such approvals; and to the extent practicable, copies of filed or draft applications, as applicable, for all such approvals; and

x.      a statement regarding whether the Qualifying Bidder will offer employment to the Debtors' employees and whether the Qualifying Bidder will assume any of the Debtor's union contracts.

**5.      <u>Due Diligence</u>**

Subject to the execution of a confidentiality agreement by a Potential Bidder or Qualifying Bidder, the Debtors will provide any Potential Bidder or Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to the Investment Banker at the contact information provided above.

All due diligence materials provided to Potential Bidders and Qualifying Bidders shall be subject to the limitations on use and disclosure included in any confidentiality agreement entered into pursuant to the Bidding Procedures.

Notwithstanding any limitations provided for in any due diligence materials in the Debtors' possession, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders that have executed a confidentiality agreement.

6. **Bid Requirements**

To be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and must satisfy each of the following requirements (each, a "**Bid Requirement**"):

(a)    be in writing;

(b)    fully disclose the identity of the Qualifying Bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)    be accompanied by a clean, **executed** copy of a Transaction Agreement that satisfies the requirements of Section 4 of these Bidding Procedures, along with a marked copy of the Transaction Agreement that reflects any variations from the Debtors' form of Transaction Agreement, if any;

(d)    set forth the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount, if any, constitutes a credit bid, and identify the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(e)    specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase those Assets included in the applicable Stalking Horse Agreement upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement;

(f)    state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or Back-Up Bidder (both as defined below) in which case such offer is formal, binding and unconditional and, in the case of the Back-Up Bidder, is irrevocable until two (2) business days after the closing of the Sale of the subject Assets to the Successful Bidder;

(g)    state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Transaction Agreement and contain such financial

and other information to allow the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by its proposed Transaction Agreement, including, without limitation, (i) written evidence satisfactory to the Debtors, in consultation with the Consultation Parties, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Transaction Agreement, and (ii) such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial ability and willingness to perform under any contracts that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors, within one (1) business day after receipt, to make such information available to any counterparties to any contracts or leases being assumed and assigned in connection with the Sale ("**Counterparties**") that have requested, in writing, such information, provided, however, that such information may be provided on a confidential basis;

(h)    to the extent the proposed purchaser is a newly-formed or special purpose entity, include a guaranty of the Qualified Bidder's obligations under the Transaction Agreement by a creditworthy affiliate of the Qualified Bidder that is reasonably acceptable to the Debtors in consultation with the Consultation Parties or include such other arrangement reasonably acceptable to the Debtors, in consultation with the Consultation Parties;

(i)    identify with particularity each and every executory contract, unexpired lease and unexpired sublease the assumption and assignment of which is a condition to close the transactions contemplated by the proposed Transaction Agreement;

(j)    include a commitment to close the transactions contemplated by the Transaction Agreement promptly upon of entry of the order approving the Sale;

(k)    not request or entitle such Qualifying Bidder (other than a Stalking Horse Purchaser) to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment, or any claim under section 503(b)(3)(D) of the Bankruptcy Code;

(l)    in the event that there is a Stalking Horse Purchaser, and the Qualifying Bidder wishes to bid on the same Assets that are included in the Stalking Horse Agreement, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, plus (B) any break-up fee, expense reimbursement, or other bid protection provided under the Stalking Horse Agreement, plus (C) $500,000;

(m)    not contain any contingencies of any kind, including, including without limitation, contingencies related to financing, due diligence, regulatory or third party or internal approval, subject to Section 3(a)(ix) of these Bidding Procedures;

(n)    provide for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the

"**Back-Up Bid**") after the Successful Bid (as defined below), in accordance with the terms of the Transaction Agreement and these Bidding Procedures;

(o)     include written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Transaction Agreement;

(p)     subject to Section 7 of the Bidding Procedures, provide a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; provided, that the Debtors, after consultation with the Consultation Parties, may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court; and

(q)     provide for minimum damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Transaction Agreement equal to the amount of the Deposit, and not provide for any limitation on damages of any kind or nature.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors both reserve the right and are authorized, in consultation with the Consultation Parties, to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

## 7.     Credit Bidding

Any party that wishes to submit a credit bid either as a component or as the entirety of the consideration for its bid shall identify the amount of the claim and the nature, extent and priority of the lien upon which its credit bid is premised.  Except where the Debtors have stipulated to the amount of a Senior Secured Claim (as defined below) in a "cash collateral" or similar order entered by the Court, any party submitting a credit bid agrees to provide the Debtors and the Consultation Parties with documentation to evidence the amount, nature, extent, validity and perfection of such claim and lien to the extent it has not already done so.

Any party submitting a credit bid must include in their bid either (i) provisions for the satisfaction of any secured claims that are senior to the secured claim that forms the basis of the credit bid (a "**Senior Secured Claim**") or (ii) evidence that the holder of any Senior Secured Claim has affirmatively consented to any other treatment of its Senior Secured Claim.

Parties entitled to credit bid shall not be required to comply with Paragraph 6(o) of the Bidding Procedures regarding providing a Deposit in connection with their bids solely with respect to the amount of the Senior Secured Claim included as consideration for their bid.

Notwithstanding anything to the contrary in the Bidding Procedures Order or these Bidding Procedures, all credit bids must comply with section 363(k) of the Bankruptcy Code, and all liens upon which any credit bids are based shall be subject to objection and challenge by the Committee and other parties in interest (a "**Challenge**"). In the event that the Committee or another party in interest Challenges a creditor's lien, the approval of a Successful Bid by such creditor that includes a credit bid shall be contingent upon a final determination that such creditor's lien is valid and perfected. In the event that such a creditor's lien is successfully Challenged, or otherwise determined not to be valid and perfected, such creditor shall pay the credit bid portion of its bid in cash at the closing of the Sale.

### 8.    Bid Deadline

A Qualifying Bidder, other than a Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors, with a copy to the Consultation Parties, so as to be received on or before **September 17, 2019 at 4:00 p.m. (ET)** (the "**Bid Deadline**"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the Consultation Parties. All parties wishing to submit a Qualifying Bid shall submit the bid materials required by Section 6 (including the **executed** Transaction Agreement and a certified check or wire transfer for the Deposit amount) to the Investment Banker at the contact information provided above with a copy to counsel to the Debtors, Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102 Attn: Jeffrey C. Hampton, Esq. and Adam H. Isenberg, Esq. (jeffrey.hampton@saul.com and adam.isenberg@saul.com), and 1201 North Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Mark Minuti, Esq. (mark.minuti@saul.com) and Monique B. DiSabatino, Esq. (monique.disabatino@saul.com).

**Except as may otherwise be determined by the Debtors in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction. Consistent with the terms of any confidentiality agreements executed by them, all Potential Bidders and Qualifying Bidders shall maintain as confidential, up until the Auction, the fact that they have submitted a bid and the terms and conditions of such bid.**

### 9.    Evaluation of Qualifying Bids

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid (or bid otherwise submitted consistent with Section * above) from a Qualifying Bidder is a Qualifying Bid, and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than one (1) day prior to the Auction (as defined below). In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Debtors and shall have the ability to modify its bid up to the Auction in order to become a Qualifying Bid; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to the commencement of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest and best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**"), and shall

35584444.7 07/26/2019

promptly notify all Qualifying Bidders with Qualifying Bids of the Baseline Bid. The Baseline Bid may be comprised of any combination of Assets, and the Debtors, in consultation with the Consultation Parties, may determine that different Baseline Bids exist for different groupings of the Assets. The Debtors, in consultation with the Consultation Parties, shall have the discretion to determine how to proceed when auctioning the Assets in groupings that do not include all of Debtors' Assets so as to maximize the value of the Assets.

Prior to the Auction, all bidders are encouraged to address any issues concerning the Debtor's Collective Bargaining Agreement with the PASNAP union by contacting PASNAP's counsel, The Law Offices Of Mitchell J. Malzberg, LLC, P.O. Box 5122, 6 East Main Street, Clinton, N.J. 08809, Attention: Mitchell Malzberg, Esq. (mmalzberg@mjmalzberglaw.com) and/or counsel to the Debtors.

### 10.    <u>One Qualifying Bid</u>

If only one Qualifying Bid is submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall have the right to request at the Sale Hearing (as defined in the Bidding Procedures Order) that the Court approve the Transaction Agreement with the Qualifying Bidder and the transactions contemplated thereunder.

### 11.    <u>Auction</u>

In the event that the Debtors timely receive more than one Qualifying Bid, the Debtors shall conduct an auction (the "**Auction**") in consultation with the Consultation Parties. Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest and best bid for the Assets, which will be determined by considering, among other things, the following non-binding and non-exclusive factors: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exists as a result of such variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with one or more other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

Notwithstanding anything to the contrary contained herein, the Debtors reserve the right to determine, in consultation with the Consultation Parties, that no Qualifying Bid was received and/or to not select a Successful Bidder if the Debtors determine, in consultation with the

Consultation Parties, it is not in the best interests of the Debtors' estates and their creditors to do so.

The Auction shall be governed by the following procedures:

(a)    the Auction shall be held on **September 19, 2019 at 10:00 a.m. (ET)** at the offices of Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102;

(b)    only Qualifying Bidders with Qualifying Bids (together, the "**Auction Bidders**") shall be entitled to make any subsequent bids at the Auction;

(c)    the Auction Bidders shall appear in person at the Auction, or through a duly authorized representative.  In the event that a Qualifying Bidder becomes a Successful Bidder or Back-up Bidder, then whomever is attending the Auction on behalf of a Qualifying Bidder must have the authority, immediately after the conclusion of the Auction, to complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which a Successful Bid or Back-up Bid was made;

(d)    only the Debtors, the Auction Bidders, the Consultation Parties, and all creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction.  **Parties who intend to attend the Auction must provide counsel for the Debtors at least five (5) business days' written notice of their intent to attend the Auction so that the Debtors can make appropriate arrangements**;

(e)    the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)    the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

(g)    bidding on any lot of Assets shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least the greater of $500,000 and 1% of the Baseline Bid, underlined provided that: (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest and best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protections available to such Stalking Horse Purchaser; (iii) any bid made by any Stalking Horse Purchaser, including in each and every round of bidding, shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protection available to such Stalking Horse Purchaser in addition to the cash and other consideration provided for in its bid; and (iv) the Debtors shall retain the right to modify the bid increment requirements at the Auction, in consultation with the Consultation Parties;

(h)     the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)     all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(j)     the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

(k)     the Auction Bidders shall have the right to make additional modifications to their Transaction Agreement in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of any Qualifying Bid that was announced as the then-current highest and best bid for the Assets that are the subject of the bids, and (ii) each Qualifying Bid (unless superseded by a subsequent Qualifying Bid at the Auction) shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until the conclusion of the Sale Hearing, unless such bid is selected as a Successful Bid or Back-Up Bid, which shall remain binding as provided for herein;

(l)     the Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination, in consultation with the Consultation Parties, as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Transaction Agreement, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(m)     upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets that is or are the highest and best from among the Qualifying Bids submitted at the Auction (each a "**Successful Bid**").  The bidder submitting a Successful Bid shall be the "**Successful Bidder**" for such Assets and shall have such rights and responsibilities of the purchaser as set forth in the Transaction Agreement.  The Debtors, in consultation with the Consultation Parties, shall designate a "**Back-Up Bid (or Bids)**" in the event that a Successful Bidder does not close a Sale or the Court does not approve

12

the Successful Bid. Subject to Section 7 of the Bidding Procedures, within one business day after the conclusion of the Auction, the Successful Bidder(s) and any Back-Up Bidder(s) shall deliver an additional Deposit payment so that each such bidder's total Deposit amount is equal to ten percent (10%) of the cash amount of the Successful Bid or Back-Up Bid, as applicable; and

(n)    immediately after the conclusion of the Auction and without undue delay, each Successful Bidder and Back-Up Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid or Back-Up Bid was made.

**EACH SUCCESSFUL BID AND ANY BACK-UP BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL THE TIME PERIOD SPECIFIED IN THESE BIDDING PROCEDURES. EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE IRREVOCABLE UNTIL THE CONCLUSION OF THE SALE HEARING, AT WHICH POINT THEY SHALL BE DEEMED WITHDRAWN AND TERMINATED.**

### 12.    <u>Sale Hearing</u>

The Successful Bid (which, if no Auction is held, may be the Staking Horse Agreement) and any Back-Up Bid will be subject to approval by the Court. The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on **<u>September [    ], 2019 at 10:00 a.m. (ET)</u>**. The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

### 13.    <u>Backup Bidder</u>

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close the applicable Sale promptly after the Court enters an order approving the Successful Bid (or such date as may be extended by the Debtors in consultation with the Consultation Parties), (i) the Back-Up Bid for that Sale will be deemed to be the Successful Bid, (ii) the Back-Up Bidder will be deemed to be the Successful Bidder, and (iii) the Debtors will be authorized, but not directed, to immediately close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

### 14.    <u>Return of Deposits</u>

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or Back-Up Bidder for any Sale no later than three (3) business days following the conclusion of the Sale Hearing. The deposit of a Back-Up Bidder shall be returned within three (3) business days of the closing of the applicable Sale to the Successful Bidder; the deposit

of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale.  If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as minimum damages resulting to the Debtors and their estates for such breach or failure to perform, without limitation on any additional damages of any kind or nature.

15.    **Consultation Parties**

The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Assets, unless such party is a potential bidder for such Assets:  (i) counsel to the Official Committee of Unsecured Creditors; and (ii) counsel to MidCap Financial Trust as Agent under the DIP Facility and agent under the prepetition first-lien credit facility.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit (i) the Debtors' discretion in any way (and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment); or (ii) the rights of any Consultation Party to object to any decisions of the Debtors whether or not these Bidding Procedures specifically provide for consultation rights with respect to such decisions.

In the event that any Consultation Party, any member of an official committee (that has not recused itself from participation on such committee with respect to the Sale), or an affiliate of any of the foregoing participates as a potential purchaser in the sales process, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged and released without further action, until such party advises the Debtors that they are irrevocably withdrawing as a potential purchaser in the sale process at which time such party's consultation rights will be reinstated; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of an official committee submits a Qualifying Bid, such committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets in question and shall not provide any information regarding the sale of the Assets to such member.

16.    **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, to allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, to waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), to impose additional terms and conditions with

respect to any or all Potential Bidders, to adjourn or cancel the Auction at or prior to the Auction, and to adjourn or cancel the Sale Hearing.

Additionally, the Debtors, in consultation with the Consultation Parties, have the right to terminate the sale and auction process with respect to any or all of the Assets at any time.

### 17. **Buyer's Brokers/Indemnity**

Each Potential Bidder or Qualifying Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder, or agent acting on another's behalf. Each Potential Bidder or Qualifying Bidder understands that the Debtors and Investment Banker and their respective representatives have not agreed to pay any brokerage commissions, finder's fee or other compensation in connection with a Potential Bidder's or Qualifying Bidder's possible purchase. In addition, each Potential Bidder or Qualifying Bidder hereby agrees to indemnify, defend and hold the Debtors, Investment Banker, and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any such claims made by third-party brokers on account of or related to such Potential Bidder or Qualifying Bidder.

### 18. **Fiduciary Out**

Nothing in these Bidding Procedures shall require the Debtors' board of managers to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, if the Debtors' board of managers determines, based on the advice of counsel, that refraining from taking such action or taking such action, as the case may be, is required to comply with applicable law or the board's fiduciary obligations thereunder.

### 19. **Disclaimer**

By submitting a bid, each Potential Bidder and Qualifying Bidder agrees to and acknowledges the following terms and conditions with respect to any information received from the Debtors related to the Assets ("**Information**"):

(a)     The Assets are being offered AS-IS, WHERE-IS, with ALL FAULTS.

(b)     The Information has been prepared:

i.     for informational purposes only;

ii.     from materials supplied by the Debtors and other sources commonly accepted as reliable sources for such type of Information; and

iii.     to assist Potential Bidders and Qualifying Bidders in making their own evaluation of the offering and does not purport to be all-inclusive or to contain all of the information that interested parties may desire. The Debtors, the Investment Banker and their respective officers, directors, employees, affiliates, agents, advisors and representatives (such parties, collectively, "**Representatives**") have not assumed responsibility for independent verification

35584444.7 07/26/2019

of any of the information contained herein and have not in fact in any way audited such Information.  In all cases, Potential Bidders and Qualifying Bidders should conduct their own investigation and analysis of the offering, conduct site inspections, and scrutinize the Information.  Potential Bidders and Qualifying Bidders should engage legal counsel, accountants, engineers, and/or such other professional advisors as Potential Bidders and Qualifying Bidders deem appropriate for evaluating the Assets.

(c)    None of Potential Bidders, Qualifying Bidders or their respective Representatives are entitled to rely on the accuracy or completeness of the Information except as provided for in a Transaction Agreement that is authorized and approved by the Court.

(d)    Although the Debtors and Investment Banker have endeavored for the Information to contain data that they believe to be relevant for the purpose of any Potential Bidder's or Qualifying Bidder's investigation, except as expressly set forth in a Transaction Agreement accepted by the Debtors and approved by the Court, none of the Debtors, the Investment Banker or any of their respective Representatives:

      i.    have made or make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express or implied or by operation of law or otherwise, with respect to the Assets or with respect to the accuracy, reliability or completeness of the Information;

      ii.    to the fullest extent permitted by law, shall have any liability whatsoever to Potential Bidders, Qualifying Bidders or their Representatives on any basis (including, without limitation, in contract, tort, under federal, foreign or state securities laws or otherwise) as a result of, relating or pertaining to, or resulting or arising from (i) any Potential Bidder's, any Qualifying Bidder's, or any of their Representative's reliance on the Information, (ii) Potential Bidder's, Qualifying Bidder's, or their Representatives' use or non-use of the Information, or (iii) any alleged acts or omissions of Debtors, Investment Banker or any of their respective Representatives, or any errors or omissions in the Information, with the exception of any liability arising from gross negligence or willful misconduct;

      iii.    shall have any liability or responsibility for any decisions made by any Potential Bidder, Qualifying Bidder or any of their Representatives in reliance on any Information;

      iv.    will be under any obligation or duty (express or implied) to make available any Information to any Potential Bidders, any Qualifying Bidders, or any of their Representatives; and

      v.    will be under any duty or obligation (express or implied) to update, supplement, revise or correct any Information disclosed under these Bidding Procedures, regardless of the circumstances.

(e)     No contract or agreement providing for any transaction shall be deemed to exist between a Potential Bidder or Qualifying Bidder and the Sellers unless and until a Qualifying Bidder and the Sellers execute and deliver a Transaction Agreement that is authorized and approved by the Court, and Potential Bidders and Qualifying Bidders hereby waive, in advance, any claims (including, without limitation, breach of contract) in connection with any transaction unless and until a Potential Bidder or Qualifying Bidder and the Sellers shall have executed and delivered a Transaction Agreement, which has been authorized and approved by the Court.  The Debtors reserve the right, in their discretion, in consultation with the Consultation Parties, to reject any and all proposals made by any Potential Bidder or Qualifying Bidder with regard to a transaction, and to terminate discussions and negotiations with a Potential Bidder or Qualifying Bidder at any time.  Subject to the terms of these Bidding Procedures, the Debtors shall be free to establish and change any process or procedure with respect to a transaction as the Debtors, in consultation with the Consultation Parties, shall determine (including, without limitation, negotiating with any other interested party and entering into a final definitive agreement relating to a transaction with any other party without prior notice to any Potential Bidder or Qualifying Bidder.

(f)     Each Debtor, the Investment Banker and the Debtors' other advisors, individually and collectively, have not made any representations or warranties except as expressly set forth in any Transaction Agreement executed by the Sellers, which has been authorized and approved by the Court.  Potential Bidders and Qualifying Bidders may rely only on the representations and warranties expressly set forth in a Transaction Agreement executed by the Sellers that has been authorized and approved by the Court.

**19.    <u>Recusal</u>**

Joel Freedman, any person or entity acting, directly or indirectly, on behalf of or at the direction of Joel Freedman, and any  person or entity which holds direct or indirect ownership interests in, or is in direct or indirect control of, any of the non-Debtor affiliates, shall be recused from participation in any Sale and any deliberations, decisions and actions relating thereto.  All such deliberations, decisions and actions shall instead be reserved for the Debtors' chief restructuring officer and independent director, in consultation with the Consultation Parties where required by this Order or the Bidding Procedures.  For the avoidance of doubt, any and all persons and entities referenced above will be recused from any participation in the following, non-exclusive list of matters relating to the Sale, unless requested otherwise by the Debtors' investment banker in consultation with the Committee:

- Marketing efforts in connection with the sale of the STC assets;
- Review, analysis or negotiation of any letters of intent, term sheets or asset purchase agreements;
- Evaluation or determination of any Qualifying Bids or Qualifying Bidders;
- Evaluation or determination of any stalking horse bidder designations;
- Decisions relating to any modifications of the bidding procedures;
- Determination of the highest or otherwise best bids, including any Successful Bid; and Decisions regarding assumption and assignment or rejection of any executory contracts.

**<u>Exhibit 2</u>**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Related to Docket No. ___** |
| | ) |

### NOTICE OF SALE OF ASSETS

**To:    All Persons with Claims against the Debtors in the Above-Captioned Cases, including Claims against St. Christopher's Hospital for Children:**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), including St. Christopher's Healthcare, LLC, the entity that operates St. Christopher's Hospital for Children ("**STC**"), each filed a voluntary petition for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") on June 30, 2019 or July 1, 2019.

St. Christopher's Healthcare, LLC ("**SCH**") and certain of its affiliates are seeking to sell substantially all assets of SCH, SCHC Pediatric Associates, L.L.C, St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C, StChris Care at Northeast Pediatrics, L.L.C. and TPS V of PA, L.L.C. (together, the "**STC Entities**").[2] The Debtors will consider proposals to acquire some or all of the STC Entities' assets (the "**Assets**") through a sale under section 363 of the Bankruptcy Code. **The Debtors have reserved the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire some or all of the Assets pursuant to a Transaction Agreement between the STC Entities and the Stalking Horse Purchaser.**

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]    For the avoidance of doubt, as reflected herein, the STC Entities do *not* include Center City Healthcare, LLC d/b/a Hahnemann University Hospital or the related Hahnemann University Hospital practice groups.

By order, dated ____ **[Docket No. ___]** (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain "**Bidding Procedures**" that govern the sale(s) of, or other transaction(s) to acquire, the Assets by the highest and best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

The Debtors have requested that the Bankruptcy Court enter an order or orders (the "**Sale Orders**"), providing, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption of certain liabilities. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale Orders.

**IF THE SALE IS APPROVED, THE PURCHASER WILL NOT BE LIABLE ON ACCOUNT OF ANY CLAIMS AGAINST ANY OF THE DEBTORS (OTHER THAN CLAIMS AFFIRMATIVELY ASSUMED BY THE PURCHASER), INCLUDING CLAIMS OF PATIENTS TREATED AT STC, INCLUDING CLAIMS OF WHICH THE HOLDER MAY NOT BE PRESENTLY AWARE.**

### Obtaining Additional Information/Contact Information for Interested Bidders

Copies of the Bidding Procedures Order, the Bidding Procedures, and other pleadings are available at the website for the Debtors' claims and noticing agent, Omni Management Group, at https://omnimgt.com/CenterCityHealthcare.

**Any interested bidder should contact the Debtors' investment banker, SSG Advisors, LLC, c/o J. Scott Victor (Email: jsvictor@ssgca.com; Phone: (610) 940-5802), Teresa C. Kohl (Email: tkohl@ssgca.com; Phone: (610) 940-9521), and Craig D. Warznak (Email: cwarznak@ssgca.com; Phone: (610) 940-3615).**

### Key Dates and Deadlines

- The deadline to file an objection with the Bankruptcy Court to the proposed sale of the Assets (the "**Sale Objection Deadline**") is **September 13, 2019 at 4:00 p.m. (ET)**; provided that, solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, or the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid, the deadline to file an objection **shall be 4:00 p.m. (ET) on September 20, 2019**.

- **How to File an Objection**: Objections must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, on or before the Sale Objection Deadline; and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon: (i) proposed counsel to the Debtors, Saul Ewing Arnstein & Lehr LLP, 1201 North Market Street, Suite 2300, Wilmington, DE 19899, Attn: Mark Minuti, and Centre Square

West, 1500 Market Street, 38th Floor, Philadelphia, PA, Attn: Jeffrey C. Hampton; (ii) counsel to MidCap Financial Trust, Stradley, Ronon, Stevens & Young, LLP, 2005 Market Street, Suite 2600, Philadelphia, PA 19103, Attn: Gretchen M. Santamour, Esq., and 1000 N. West Street, Suite 1279, Wilmington, DE 19801, Attn: Joelle E. Polesky, Esq., and (iii) proposed counsel to the Committee, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey, 07102, Attn: Andrew Sherman and Boris Mankovetskiy.

- Except with respect to any Stalking Horse Purchaser, the deadline to be qualified as a Qualifying Bidder and to submit a Qualifying Bid is **September 17, 2019 at 4:00 p.m. (ET)**. Subject to Section 7 of the Bidding Procedures with respect to credit bids, all Qualifying Bids must be accompanied with a deposit in an amount equal to ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; provided however, that the Debtors may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court.

- An auction for the Assets will commence on **September 19, 2019 at 10:00 a.m. (ET)** at the offices of Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102.

- The Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") to consider the proposed Sale on:  **September [__], 2019 at 10:00 a.m. (ET)**.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE APPLICABLE OBJECTION DEADLINE SHALL BE DEEMED TO CONSENT TO, AND A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO, THE MOTION, THE SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE STC ENTITIES' CONSUMMATION AND PERFORMANCE OF THE TRANSACTION AGREEMENT(S) (INCLUDING, WITHOUT LIMITATION, THE STC ENTITIES' TRANSFER OF ANY OF THE ASSETS AND ASSUMPTION AND ASSIGNMENT OF ANY ASSUMED CONTRACTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

Dated: July 26, 2019                    **SAUL EWING ARNSTEIN & LEHR LLP**

By:*/s/*_____
      Mark Minuti (DE Bar No. 2659)
      Monique B. DiSabatino (DE Bar No. 6027)
      1201 N. Market Street, Suite 2300
      P.O. Box 1266
      Wilmington, DE  19899
      Telephone: (302) 421-6800
      Fax: (302) 421-5873
      mark.minuti@saul.com
      monique.disabatino@saul.com

         -and-

      Jeffrey C. Hampton
      Adam H. Isenberg
      Aaron S. Applebaum (DE Bar No. 5587)
      Centre Square West
      1500 Market Street, 38th Floor
      Philadelphia, PA 19102
      Telephone: (215) 972-7777
      Fax: (215) 972-7725
      jeffrey.hampton@saul.com
      adam.isenberg@saul.com
      aaron.applebaum@saul.com

      *Proposed Counsel for Debtors and*
      *Debtors in Possession*

**Exhibit 3**

**Assumption Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (KG) |
|  | Jointly Administered |
| Debtors. | **Related to Docket No. ___** |

### NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

St. Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children ("**SCH**") and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), are seeking to sell substantially all assets of SCH, SCHC Pediatric Associates, L.L.C, St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C, StChris Care at Northeast Pediatrics, L.L.C. and TPS V of PA, L.L.C. (together, the "**STC Entities**" or the "**Sellers**").  The Debtors will consider proposals to acquire some or all of the STC Entities' assets (the "**Assets**") through a sale under section 363 of the Bankruptcy Code. **The Debtors have reserved the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire some or all of the Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser.**

The Debtors have requested that the Bankruptcy Court enter an order or orders (the "**Sale Orders**"), which provide, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by the applicable purchaser of certain liabilities.  In connection with this marketing and sale process, the Sellers are seeking to assume or assume and assign certain of its executory contracts and unexpired leases related to the Assets (collectively, the "**Assumed Contracts**").

By order, dated ___, 2019 **[Docket No. __]** (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain "**Bidding Procedures**" that govern the sale of all of the Assets to the highest and best bidders.  Capitalized terms used but not otherwise defined herein

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

shall have the meanings ascribed to them in the Bidding Procedures Order. Copies of the Bidding Procedures Order, the Bidding Procedures, and other pleadings are available for download from Debtors' claims and noticing agent, Omni Management Group, at https://omnimgt.com/CenterCityHealthcare.

**You are receiving this Notice because you may be a party to an Assumed Contract. A list of the Assumed Contracts is attached hereto as <u>Exhibit A</u>.** The Debtors have determined the current amounts owing (the "**Cure Amounts**") under each Assumed Contract and have listed the applicable Cure Amounts on <u>Exhibit A</u>. The Cure Amounts are the only amounts proposed to be paid upon any assumption or assumption and assignment of the Assumed Contracts, in full satisfaction of all amounts outstanding under the Assumed Contracts.

**To the extent that a non-Debtor party to an Assumed Contract objects to (i) the assumption and assignment of such party's Assumed Contract or (ii) the applicable Cure Amounts, the non-Debtor counterparty must file and serve an objection in accordance with the Bidding Procedures Order, so as to be received by the undersigned proposed counsel for the Debtors and the other parties specified therein by <u>August 30, 2019, at 4:00 p.m. (ET)</u>.**

Any and all objections, if any, to the Sale, including objections based on lack of adequate assurance relating to a Stalking Horse Purchaser (a "**Sale Objection**"), must be filed with the Clerk of the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, DE 19801, and served on the proposed undersigned counsel and the Consultation Parties, by **<u>4:00 p.m. (prevailing Eastern Time) on September 13, 2019</u>**.

An auction (the "**Auction**") for the Assets, including the Assumed Contracts, will be conducted on **<u>September 19, 2019 at 10:00 a.m. (ET)</u>** at the offices of Saul Ewing Arnstein & Lehr, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102. After the Auction occurs (or after the cancellation of the Auction, if applicable), the Debtors will file and serve a notice that identifies the proposed acquirers of the Assets, and the proposed assignees of any Assumed Contracts. **The deadline to object to adequate assurance of future performance with respect to such proposed assignees (*other than* a Stalking Horse Purchaser), shall be September 20, 2019, at 4:00 p.m. (ET).** The Debtors shall provide the Adequate Assurance Information to Counterparties to Assumed Contracts and their counsel, if known, as soon as practicable upon receiving a Qualified Bid, but no later than one (1) business day following the receipt of such information, if such Counterparties have requested the information, in writing, provided, however, that such information may be provided on a confidential basis.

**If no objection is timely received with respect to Cure Amounts or the assumption of an Assumed Contract, (i) a non-Debtor party to a Contract shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to such Contract, (ii) the Cure Amounts set forth on <u>Exhibit A</u> attached hereto shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the non-Debtor party to an Assumed Contract shall be deemed to have consented to the Cure Amounts, (iii) the non-Debtor party to a Contract shall be forever barred and estopped from asserting any other claims related to such Contract**

**against the Debtors or the applicable transferee, or the property of any of them; and (iv) the Counterparty shall be deemed to consent to, and the Debtors shall be permitted to proceed with, the assumption and assignment of the applicable Assigned Contract.**

The Sale Hearing to approve the Sale of the Assets shall be held before the Honorable Kevin Gross, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom #3, Wilmington, Delaware 19801 (a "**Sale Hearing**") on **September [__], 2019, at 10:00 a.m. (ET)**, or such other date as determined by the Debtors in accordance with the terms of the Bidding Procedures Order. A hearing regarding the Cure Amounts, if any, may be adjourned by agreement of the Debtors and applicable objection party or by order of the Court.

Dated: July 26, 2019                              **SAUL EWING ARNSTEIN & LEHR LLP**

By:*/s/*
_____

Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**Exhibit A**


**Assumed Contracts**

**Exhibit 4**[1]

**Key Auction and Sale-Related Dates (subject to the Court's availability):**

| Milestones | Proposed Dates |
|---|---|
| Bidding Procedures Hearing | July 26, 2019 at 10:00 a.m. (ET) |
| Deadline to Serve Assumption Notice | August 16, 2019 |
| Stalking Horse Bid Deadline | August 23, 2019 at 4:00 p.m. (ET) |
| Deadline to File Supplemental Motion or Stalking Horse Notice | August 27, 2019 |
| Deadline to Object to Assumption Notice (other than adequate assurance) | August 30, 2019 at 4:00 p.m. (ET) |
| Supplemental Cure Objection Deadline | 14 days after service of a Supplemental Assumption Notice |
| Deadline to Object to Supplemental Motion or Stalking Horse Notice | September 3, 2019 at 12:00 p.m. (ET) |
| Tentative Hearing on Approval of Stalking Horse and any Bid Protections | September 4, 2019 at 2:00 p.m. |
| Sale Objection Deadline (including objections to  a sale to a Stalking Horse Purchaser) | September 13, 2019 at 4:00 p.m. (ET) |
| Bid Deadline | September 17, 2019 at 4:00 p.m. (ET) |
| Auction | September 19, 2019 at 10:00 a.m. (ET) |
| Deadline to File and Serve Notice of Successful Bidder and Amount of Successful Bid | No later than 1 day following the conclusion of the Auction. |
| Deadline to Object to Sale to Successful Bidder (other than Stalking Horse Purchaser) and Adequate Assurance of Successful Bidder (other than Stalking Horse Purchaser) | September 20, 2019 at 4:00 p.m. (ET) |

---

[1]   This chart is provided for informational purposes only.  In the event of any conflict between this chart and this Order, the terms of the Order shall control.

| Milestones | Proposed Dates |
|---|---|
| Sale Hearing | September [__], 2019 at __:__ a.m./p.m. (ET) |
| Outside Closing Date | October 4, 2019 |