**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (KG) |
| | Jointly Administered |
| Debtors. | **Related to Docket Nos. 205 and 288** |

**ORDER (I) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OR SALES OF SUBSTANTIALLY ALL ASSETS OF ST. CHRISTOPHER'S HEALTHCARE, LLC AND CERTAIN RELATED AFFILIATES AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, (III) ESTABLISHING PROCEDURES IN CONNECTION WITH THE SELECTION OF AND PROTECTIONS AFFORDED TO ANY STALKING HORSE PURCHASERS, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of St. Christopher's Healthcare LLC ("**SCH**") and its affiliated debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") for the entry of an order, (i) scheduling a hearing (the "**Sale Hearing**") on approval of one or more sales of, or other acquisition transactions for (each a "**Sale**"), substantially all of the assets of SCH, SCHC Pediatric Associates, L.L.C, St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C, StChris Care at Northeast Pediatrics, L.L.C. and TPS V of PA, L.L.C. (together, the

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Capitalized terms used but not defined herein shall have the meanings given in the Motion or the Bidding Procedures (as defined below), as applicable.

"**STC Entities**" or the "**Sellers**"), free and clear of all liens, claims, encumbrances, and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by the applicable asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"), and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "**Assumed Contract**," and collectively, the "**Assumed Contracts**") in connection therewith, (ii) authorizing and approving certain proposed bidding procedures for the Sales in the form attached hereto as **Exhibit 1** (collectively, the "**Bidding Procedures**"), certain proposed assumption and assignment procedures (collectively, the "**Assumption and Assignment Procedures**"), and the form and manner of notice thereof, (iii) establishing procedures in connection with the selection of Stalking Horse Purchasers (as defined herein) and protections to be afforded thereto, and (iv) granting related relief; and due and proper notice of the Motion having been given as provided in the Motion; and it appearing that no other or further notice need be provided; and the Bidding Procedures Hearing (as defined below) having been held; and all of the proceedings had before the Court; and the Court having reviewed the Motion; and the Court having found and determined that the relief sought in the Motion and set forth herein is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[3]

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A. This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

B. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C. The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

D. Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E. The Sale Notice (as defined below) is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Auction, the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F. The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize recoveries with respect to the Sale.

G. The Assumption and Assignment Procedures provided for herein and in the Assumption Notice (as defined below) are reasonable and appropriate and consistent with the

provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections (as defined in the Assumption and Assignment Procedures).

H. Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Those portions of the Motion seeking approval of (a) the Assumption and Assignment Procedures, (b) the Bidding Procedures, (c) the date, time and place of the Auction and Sale Hearing, and (d) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Sale Notice, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"), and the Assumption Notice, substantially in the form attached hereto as **Exhibit 3** (the "**Assumption Notice**"), are hereby GRANTED as provided herein.

2. Any objections to the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

## I. Approval of Procedures for the Designation of a Stalking Horse Purchaser and Approval of Bid Protections

3. The Debtors, in consultation with the Consultation Parties (as defined below), may (a) select one or more parties to act as a Stalking Horse Purchaser for up to substantially all of the Assets, (b) may negotiate the terms of and enter into one or more purchase agreements with any Stalking Horse Purchaser (a "**Stalking Horse Agreement**") (subject to higher or better bids as contemplated herein), and (c) may agree to provide certain bid protections to such

Stalking Horse Purchaser, subject to approval of the Court after notice and an opportunity to object, as set forth below.

4.      If the Debtors seek to provide bid protections to any Stalking Horse Purchaser, the Debtors shall file a supplement to the Motion (a "**Supplemental Motion**") seeking approval of such protections on or before **August 27, 2019** and serve such Supplemental Motion on the Transaction Notice Parties.  To the extent the Debtors seek to enter into a Stalking Horse Agreement but do *not* seek approval of any bid protections for a Stalking Horse Purchaser, the Debtors shall file a notice of entry into a Stalking Horse Agreement(s) (a "**Stalking Horse Notice**") with the Court on or before **August 27, 2019** and serve such notice on the Transaction Parties.

5.      Such Supplemental Motion or Stalking Horse Notice shall include a summary of the material terms of any Stalking Horse Agreement(s) (including, without limitation, any proposed compensation or bonus arrangements involving any insider of the Debtors), and, in the case of the Supplemental Motion, the proposed bid protections, and attach the Stalking Horse Agreement(s).  If no objections to the motion or notice are filed and served on the Debtors by **September 3, 2019 at 4:00 p.m. (ET)**, the Debtors shall be entitled to immediately file a certificate of no objection with the Court, after which the Court may enter an order approving the Debtors' selection of a Stalking Horse Purchaser and, if applicable, any bid protections requested, without the need for a hearing.  If a timely objection is filed, an expedited hearing to consider approval of the Stalking Horse Agreement(s) and any objections thereto will be held on **September 4, 2019 at 2:00 p.m. (ET)**.  For the avoidance of doubt, nothing in this Order or the Bidding Procedures authorizes bid protections for any Stalking Horse Purchaser(s) or other bidders.

6.      The Debtors shall further have the right, in consultation with the Consultation Parties, to extend or waive the Stalking Horse Bid Deadline and the Stalking Horse Notice Deadline or conduct the Auction without any Stalking Horse Purchaser.

**Approval of Bidding Procedures; Auction**

7.      The Bidding Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are hereby authorized to conduct the Auction of the Assets pursuant to the terms of the Bidding Procedures and this Order.  The Bidding Procedures shall govern the actions of the Potential Bidders and the Qualifying Bidders (each as defined in the Bidding Procedures), as well as the conduct of the Auction.

8.      Notwithstanding any limitations provided for in any due diligence information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders or Qualifying Bidders, provided that such Potential Bidders or Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Potential Bidders or Qualifying Bidders in connection with the Bidding Procedures and the Sale, provided that the information was provided in accordance with this Order and except as otherwise provided for in a Transaction Agreement that is authorized and approved by the Court.

9.      For the avoidance of doubt, and notwithstanding anything to the contrary in the Motion, this Order or the Bidding Procedures, the requirement that a party execute a

confidentiality agreement to obtain access to the data room and other due diligence information shall not restrict, prohibit or alter the right that any party has under any applicable agreement, including loan agreements, to receive, or the Debtors' obligation to provide, any information, which rights and obligations are intended to remain unchanged by this Order and the Bidding Procedures.

10. A Qualifying Bidder (other than a Stalking Horse Purchaser) that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors, with a copy to the Consultation Parties and the Court-appointed patient care ombudsman (the "**PCO**"), so as to be received on or before **September 16, 2019 at 4:00 p.m. (ET)** (the "**Bid Deadline**"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties. Any party that does not submit a bid by the Bid Deadline will not be allowed to: (a) submit any offer after the Bid Deadline or (b) participate as a bidder in the Auction. The term "**Consultation Parties**" as used in the Bidding Procedures and this Order shall mean, with respect to any Asset: (i) counsel to the Official Committee of Unsecured Creditors, and (ii) counsel to MidCap Financial Trust, as DIP Agent and agent under the prepetition first-lien credit facility.

11. The Debtors shall disclose the identity of any bidders determined to be Qualifying Bidders to the appropriate persons at the City of Philadelphia's Department of Public Health, Solicitor's Office and Managing Director's Office for Health and Human Services (together, the "**City**") within one (1) business day after determining that such bidder's bid is a Qualified Bid; provided, however, that such information shall be held on a confidential basis by any party receiving such information.

12.     If the Debtors, in consultation with the Consultation Parties, qualify a bid that, as clearly reflected in the bid, significantly impacts the continuity of patient care at STC and/or its related practice groups, the Debtors will disclose to the City, within twenty-four (24) hours after qualification of the bid or as soon as practicable after it becomes apparent to the Debtors, in consultation with the Consultation Parties, that such bid may significantly impact the continuity of patient care at STC and/or its related practice groups, the provisions of the bid that impact such continuity of care; provided, however, that such information shall be held on a confidential basis by any party receiving such information.

13.     All Qualifying Bidders submitting a Qualifying Bid are deemed to have submitted to the jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Assets identified under the Transaction Agreement.

14.     In the event that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall include such Assets in the Auction.  If there is only one Qualifying Bid submitted for a particular Asset or set of Assets on or before the Bid Deadline, the Debtors, in consultation with the Consultation Parties, may elect not to include such Asset or Assets in the Auction and, instead, may request at the Sale Hearing that this Court approve the Qualifying Bid (if any) applicable to such Assets and the transactions contemplated thereunder. If there are no Assets for which at least two Qualifying Bids have been timely submitted, the Auction will be cancelled.

15.     The Auction shall be held at the offices of Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102, beginning at **10:00 a.m. (prevailing Eastern Time) on September 18, 2019**.  Each Auction Bidder (as defined in the Bidding Procedures) shall confirm in writing that: (a) it has not engaged in any collusion with

respect to the submission of any bid, the bidding, or the Auction and (b) its Qualifying Bid is a good faith *bona fide* offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at the Auction shall be transcribed.

16.     All Assets may be offered individually or in groupings at the Auction.  The Debtors, in consultation with the Consultation Parties, shall have the ability to determine the order in which the Assets will be subjected to bidding during the Auction and what Asset or Assets will be auctioned either individually or in each grouping.  The Debtors, after consultation with the Consultation Parties, shall announce which Asset or Assets will be in the first grouping and which bid is the Baseline Bid (as defined in the Auction and Bidding Procedures), which may include the aggregation of a combination of Qualifying Bids of separate Qualifying Bidders. The applicable Debtors, in consultation with the Consultation Parties, shall assess each bid to determine whether it is the highest and best bid for an Asset or Assets, considering, among other things: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial ability to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking

Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant, all in consultation with the Consultation Parties. The City will be consulted as appropriate during the Auction in recognition of the City's interest in continuity of patient care.

17. The Debtors shall have the right as they may reasonably determine to be in the best interests of their estates, and in consultation with the Consultation Parties, to carry out the Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is a Baseline Bid (as defined in the Bidding Procedures), (d) permit Qualifying Bidders to bid on less than all of the Assets that were included in their Qualifying Bid, if applicable; (e) subject to the terms of the Bidding Procedures, determine which bids are the Successful Bid and Back-Up Bid, each as it relates to the Auction; (f) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (g) adjourn or cancel an Auction and/or the Sale Hearing in open court without further notice or as provided in this Order and in the Bidding Procedures; (h) modify the Bidding Procedures consistent with their fiduciary duties and the Bankruptcy Code; and (i) withdraw the Motion with respect to entry of the Sale Order for any Assets at any time with or without prejudice, all in consultation with the Consultation Parties.

**<u>Assumption and Assignment Procedures; Contract Objections</u>**

18. The following "Assumption and Assignment Procedures" are hereby approved:

(a)     On or before **August 16, 2019** (the "**Assumption Notice Deadline**"), the Debtors shall file with the Court and serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to an Assumed Contract an assumption notice (an "**Assumption Notice**").  In the event that the Debtors subsequently identify any Assumed Contract that a potential purchaser may potentially seek to acquire by assumption or assumption and assignment or modify the Cure Amount (as defined herein) after the Assumption Notice Deadline, the Debtors shall promptly file a supplemental Assumption Notice (a "**Supplemental Assumption Notice**").

(b)     The Assumption Notice (or Supplemental Assumption Notice, if applicable) shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts.

(c)     If a Counterparty objects to (i) the Debtors' ability to assume and/or assign the Assumed Contract or (ii) the Cure Amount for its Assumed Contract through the Contract Objection Deadline (as defined below), the Counterparty must file with the Court and serve on the counsel to the Debtors and the Consultation Parties a written objection (a "**Contract Objection**").

(d)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on August 30, 2019** (the "**Contract Objection Deadline**"), provided that if the Debtors file any Supplemental Assumption Notice, such notice shall provide that the Contract Objection Deadline shall be at least 14 days after service of such notice; (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the counsel to the Debtors and the Consultation Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.  Any objections to adequate assurance of future performance by a Successful Bidder shall be filed in accordance with this Order.

(e)     No later than one (1) day after the conclusion or cancellation of the Auction, the Debtors shall file with the Court one or more notices identifying the Successful Bidder or Successful Bidders for the Assets (a "**Notice of Successful Bidder**"), which shall set forth, among other things, (i) the Successful Bidder and Back-Up Bidder (as defined in the Bidding Procedures), if any, (ii) the Assumed Contracts included in the Successful Bid or Back-Up Bid (as defined in the Bidding Procedures); (iii) the proposed assignee(s) of such Assumed Contracts; and (iv) instructions for contacting the Successful Bidder to obtain Adequate Assurance Information, which may be provided to each affected Counterparty on a confidential basis; provided that if the Auction is cancelled and the Debtors choose to proceed with a transaction with one or more Stalking Horse Purchasers, the Notice of Successful Bidder

shall set forth such information for the Stalking Horse Purchaser(s) as the Successful Bidder.

(f)    The Debtors shall serve the Notice of Successful Bidder no later than one (1) day after the conclusion or cancellation of the Auction on each affected Counterparty and Transaction Notice Party by fax, email or, if neither is available, first class mail. Counterparties may submit objections solely on the basis of adequate assurance of future performance by a Successful Bidder (*other than a Stalking Horse Purchaser*) **on or before September 20, 2019 at 4:00 p.m. (ET)**.

(g)    If no Contract Objection or adequate assurance objection is timely received with respect to an Assumed Contract: (i) the Counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Sellers and (if applicable) assignment of such Assumed Contract, and will be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance); (ii) upon receipt by the Counterparty of any Cure Amount, any and all defaults under such Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount included in the Assumption Notice or Supplemental Assumption Notice, if applicable, for such Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors and (if applicable) the Debtors' assignee, or the property of any of them, that existed prior to the entry of the Sale Order.

(h)    To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be mutually agreed to by the Debtors and the objecting Counterparty or scheduled by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, such Assumed Contract may be assumed by the Sellers and assigned, provided that the cure amount that the Counterparty asserts is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the proposed assignee pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

19.    As part of its bid, each Qualifying Bidder (including any Stalking Horse Purchaser) must make available, for review by the Consultation Parties and Counterparties to Assumed Contracts of which such Qualified Bidder may seek to take assignment, information

supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the Qualifying Bidder's financial ability and willingness to perform under any contracts that are assumed and assigned to such Qualifying Bidder; (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance; and (c) the actual assignee's identity.  To the extent available, the Adequate Assurance Information shall also include, to the extent requested: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns and annual reports.  The Debtors shall provide the Adequate Assurance Information to Counterparties to Assumed Contracts and their counsel, if known, as soon as practicable upon receiving a Qualified Bid, but no later than one (1) business day following the receipt of such information, if such Counterparties have requested the information, in writing.  Adequate Assurance Information may be provided on a confidential basis and, in such instances, must be kept confidential and shall only be used and disclosed as agreed to by the Qualifying Bidder that provided such Adequate Assurance Information or as ordered by the Court.

20.    The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

21.    The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors, their estates, or any other party in interest that such contract, lease or other agreement is, in fact, an executory

contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

**Sale Hearing and Objections to the Sale**

22. The Sale Hearing shall be held in this Court on **September 23, 2019 at 1:00 p.m. (ET)**, unless otherwise determined by this Court. The Debtors may adjourn or reschedule the Sale Hearing without notice or with limited and shortened notice to parties, including by: (a) an announcement of such adjournment at the Sale Hearing or at the Auction or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

23. Any objections to the Sale or the relief requested in connection with the Sale, (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on September 13, 2019** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the counsel to the Debtors and the Consultation Parties; provided that solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, and the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid (or than a Stalking Horse Bid) or Back-Up Bid (an "**Auction Objection**"), the deadline to file an objection shall be **4:00 p.m. (ET) on September 20, 2019** (the "**Auction Objection Deadline**"). If a Sale Objection or Auction Objection is not filed and served on or before the Sale Objection Deadline or Auction Objection Deadline, as applicable, in accordance with the foregoing requirements, an objecting party shall be barred from objecting to the Sale

and shall not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.  A form of Sale Order shall be filed with the Court as soon as practicable prior to the Sale Objection Deadline.

24.    Failure to file a Sale Objection on or before the Sale Objection Deadline and failure to file an Auction Objection on or before the Auction Objection Deadline shall, for purposes of section 363(f) of the Bankruptcy Code, constitute "consent" to the entry of the Sale Order and consummation of the Sale and all transactions related thereto.

25.    The Debtors shall have until commencement of the Sale Hearing to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection, Auction Objection, or Contract Objection.

**Form and Manner of Notice of Sale Hearing**

26.    The Sale Notice, the Assumption Notice, the Notice of Successful Bidder, the Bidding Procedures, and the Assumption and Assignment Procedures and the objection periods associated with any of the foregoing are reasonably calculated to provide sufficient and effective notice to any affected party and to afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, the Auction, the Sale, the Sale Hearing, and the assumption and assignment of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notices and objection periods are hereby approved.

27.    Within three (3) business days following the entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by first class mail on: (1) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin Hackman, Esq.); (2) counsel to the Official Committee of Unsecured Creditors, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102 (Attn: Andrew H. Sherman, Esq. and Boris I. Mankovetskiy, Esq.); (3) counsel to MidCap,

Debtors' prepetition secured lender and DIP Agent, Stradley, Ronan, Stevens & Young, LLP, 2005 Market Street, Suite 2600, Philadelphia, PA 19103 (Attn: Gretchen M. Santamour, Esq.) and 1000 N. West Street, Suite 1279, Wilmington, DE 19801 (Attn: Joelle E. Polesky, Esq.); (4) Drexel University d/b/a Drexel University College of Medicine; (5) the Debtors' unions; (6) the United States Attorney for the District of Delaware; (7) the United States Department of Justice; (8) the Pennsylvania and New Jersey Attorney General's Offices; (9) the Pennsylvania Department of Human Services; (10) the City of Philadelphia; (11) all parties known by the Debtors to assert a lien on any of the Assets; (12) all non-Debtor parties to any of the Assumed Contracts; (13) all persons known to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve months prior to the Petition Date; (14) the Office of the Secretary of State for the Commonwealth of Pennsylvania; (15) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (16) the Securities and Exchange Commission; (17) the United States Environmental Protection Agency; (18) the Pennsylvania Department of Environmental Protection; (19) the New Jersey Department of Environmental Protection; and (20) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service (collectively, the "**Transaction Notice Parties**"). In addition, the Debtors will serve the Sale Notice on all of the Debtors' known creditors and equity holders (for whom identifying information and addresses are available to the Debtors.

28.    The Debtors shall also post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, Omni Management Group, at https://omnimgt.com/CenterCityHealthcare.

29. The Debtors shall also publish the Sale Notice, as modified in a manner appropriate for publication, in the *Philadelphia Inquirer* and either the *USA Today* or the *Wall Street Journal* by the date that is ten (10) days after the entry of the Bidding Procedures Order or as soon as practicable thereafter. Such publication notice shall be sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

**Miscellaneous**

30. Notwithstanding anything to the contrary in any asset purchase agreement, including any Stalking Horse Agreement, any Transaction Agreement, and any other agreement for a Sale of the Assets or any portion thereof, the purchased Assets shall not include any cause of action or proceeds of such cause of action under chapter 5 of the Bankruptcy Code or applicable state law equivalents or any commercial or other tort claims arising on or before the closing date of the Sale, or any proceeds of such claims, (a) against present or former directors and officers of the Debtors and/or any of their affiliates, (b) against direct and indirect equity holders of the Debtors and/or their affiliates, and (c) of the Debtors and/or any of their affiliates against any other Debtors.

31. For purposes of clarification, the Assets do not include the fee interest in any real estate, all of which is owned by non-Debtors and shall not be marketed for sale by or on behalf of the Debtors and/or the Committee. All marketing, deliberations, decisions and actions regarding the fee interest in the real estate shall be reserved for the non-Debtor owners of such real estate. All parties shall act in good faith in connection with the separate but parallel sales processes.

32. This order and the Bidding Procedures shall be interpreted so as to afford the Debtors, in consultation with the Consultation Parties, the greatest opportunity to maximize the value of the Assets for the benefit of the Debtors' estates.

33. The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

34. Notwithstanding anything in the Motion [D.I. 205], the Bidding Procedures, the Sale Notice, and/or the Assumption Notice to the contrary, nothing in this Order shall be construed as authorizing the sale, transfer or assignment of any Medicare provider agreement to the Successful Bidder free and clear of successor liability for any liability to the United States arising from such provider agreements, nor as restricting the United States' right of setoff and recoupment. Any assumption and assignment of the Medicare provider agreements shall be authorized only in accordance with 11 U.S.C. § 365, all applicable Medicare statutes and regulations, and the Anti-Assignment Act.

35. To the extent the Successful Bid or the Backup Bid includes the assignment of a Medicare provider agreement, such bid must include a provision that requires the agreement be assumed and assigned pursuant to and in accordance with section 365 of the Bankruptcy Code, all applicable Medicare statutes and regulations, and the Anti-Assignment Act. No Successful Bid or Backup Bid may include a requirement that any Medicare provider agreement be sold, assigned, or transferred “free and clear” of successor liability for any liability to the United States arising from such provider agreement pursuant to section 363(f) of the Bankruptcy Code.

36. In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, a Transaction Agreement, or a Stalking Horse Agreement, on the other hand, this Order and the Bidding Procedures shall control and govern, and this Order shall control in the event of any conflict with the Bidding Procedures.

37. Prior to mailing the Sale Notice and the Assumption Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any

typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

38.     All persons or entities that participate in the bidding process shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to a jury trial in connection with any disputes relating to the any of the foregoing matters.

39.     Joel Freedman, any person or entity acting, directly or indirectly, on behalf of or at the direction of Joel Freedman, and any  person or entity which holds direct or indirect ownership interests in, or is in direct or indirect control of, any of the non-Debtor affiliates, shall be recused from participation in any Sale by or on behalf of the Debtors and any deliberations, decisions and actions relating thereto.  All such deliberations, decisions and actions shall instead be reserved for the Debtors' chief restructuring officer and independent director, in consultation with the Consultation Parties where required by this Order or the Bidding Procedures.  All parties shall act in good faith in connection with the separate but parallel sales processes.

40.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

41. The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

42. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

43. For informational purposes only, a chart setting forth key dates related to this Order is attached hereto as **Exhibit 4**.

**Dated: July 26th, 2019**
**Wilmington, Delaware**

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**