## Exhibit 1

**Bidding Procedures**

## BIDDING PROCEDURES

On June 30, 2019 or July 1, 2019 (the "**Petition Date**"), St. Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children ("**SCH**") and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On **[_____]**, 2019, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order **[Docket No. _____]** (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, the "**Bidding Procedures**"), which are to be employed by the Debtors in connection with the proposed sales of or other acquisition transactions for (each a "**Sale**") substantially all assets of SCH, SCHC Pediatric Associates, L.L.C, St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C, StChris Care at Northeast Pediatrics, L.L.C. and TPS V of PA, L.L.C. (together, the "**STC Entities**" or the "**Sellers**"), free and clear of all liens, claims, encumbrances and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by a Transaction Agreement (as defined below), on an AS-IS, WHERE-IS with ALL FAULTS basis. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

If, and to the extent that prior to the Stalking Horse Bid Deadline (as defined below), the Debtors receive one or more acceptable offers that seek stalking horse status, the Debtors reserve the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "**Stalking Horse Purchaser**") to acquire one or more of the Sellers' assets (the "**Assets**") pursuant to a Transaction Agreement between the Sellers and the Stalking Horse Purchaser (each a "**Stalking Horse Agreement**") in accordance with the procedures set forth in the Bidding Procedures Order. Notwithstanding the selection of any Stalking Horse Purchaser, the Debtors will continue to solicit bids through the Bid Deadline (as defined below).

For purposes of clarification, the Assets do not include the fee interest in any real estate, all of which is owned by non-Debtors.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT:**

> **SSG Advisors, LLC (the "Investment Banker"):**
> **J. Scott Victor (Phone: (610) 940-5802; Email: jsvictor@ssgca.com**
> **Teresa C. Kohl (Phone: (610) 940-9521; Email: tkohl@ssgca.com**
> **Craig D. Warznak (Phone: (610) 940-3615; Email: cwarznak@ssgca.com**

**Summary of Important Dates**

| Milestones | Proposed Dates |
|---|---|
| Bidding Procedures Hearing | July 26, 2019 at 10:00 a.m. (ET) |
| Deadline to Serve Assumption Notice | August 16, 2019 |
| Stalking Horse Bid Deadline | August 23, 2019 at 4:00 p.m. (ET) |
| Deadline to File Supplemental Motion or Stalking Horse Notice | August 27, 2019 |
| Deadline to Object to Assumption Notice (other than adequate assurance) | August 30, 2019 at 4:00 p.m. (ET) |
| Supplemental Cure Objection Deadline | 14 days after service of a Supplemental Assumption Notice |
| Deadline to Object to Supplemental Motion or Stalking Horse Notice | September 3, 2019 at 12:00 p.m. (ET) |
| Tentative Hearing on Approval of Stalking Horse and any Bid Protections | September 4, 2019 at 2:00 p.m. |
| Sale Objection Deadline (including objections to  a sale to a Stalking Horse Purchaser) | September 13, 2019 at 4:00 p.m. (ET) |
| Bid Deadline | September 16, 2019 at 4:00 p.m. (ET) |
| Auction | September 18, 2019 at 10:00 a.m. (ET) |
| Deadline to File and Serve Notice of Successful Bidder and Amount of Successful Bid | No later than 1 day following the conclusion of the Auction. |
| Deadline to Object to Sale to Successful Bidder (other than Stalking Horse Purchaser) and Adequate Assurance of Successful Bidder (other than Stalking Horse Purchaser) | September 20, 2019 at 4:00 p.m. (ET) |
| Sale Hearing | September 23, 2019 at 1:00 p.m. (ET) |
| Outside Closing Date | October 4, 2019 |

1. <u>**Assets to be Sold**</u>

The Debtors shall offer for sale all of the Assets.  Potential Bidders may bid on all or any number or combination of the Assets.

Notwithstanding anything to the contrary in any asset purchase agreement, including any Stalking Horse Agreement, any Transaction Agreement, and any other agreement for a Sale of the Assets or any portion thereof, the purchased Assets shall not include any commercial or other tort claims arising on or before the closing date of the Sale, or any proceeds of such claims, (a) against present or former directors and officers of the Debtors and/or any of their affiliates, (b) against direct and indirect equity holders of the Debtors and/or their affiliates, and (c) of the Debtors and/or any of their affiliates against any other Debtors.

2. <u>**Participation Requirements**</u>

Any person or entity that wishes to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**" and such person or entity, a "**Potential Bidder**") must submit to the Debtors and their advisors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidders, to the extent of confidential information relating to the Assets acquired by such party.  If any dispute arises between the Debtors and any person or entity wishing to gain access to the Debtors' confidential electronic data room, then the Debtors may request the Court to adjudicate the dispute.  Pending the Court's adjudication of the dispute, the Debtors shall not be required to provide the person or entity at issue with access to the Debtors' confidential electronic data room.

Any Potential Bidder that wishes to participate in the bidding process for the Assets must first become a "**Qualifying Bidder**."  Except for any Stalking Horse Purchaser(s), parties may be qualified as a Qualifying Bidder up to the Bid Deadline (*i.e.*, **September 16, 2019 at 4:00 p.m. (ET)**)), but <u>**parties interested in submitting a bid for any of the Assets are encouraged to qualify as soon as possible because the Bidding Procedures do not permit any due diligence or financing conditions in Qualifying Bids**</u>.  To become a Qualifying Bidder, Potential Bidders must submit sufficient information, as determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties[1], to determine that the interested party (i) has, or can obtain, the financial ability and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder pursuant to section 365 of the Bankruptcy Code in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

---

[1]     The term "**Consultation Parties**" shall mean (i) counsel to the Official Committee of Unsecured Creditors, and (ii) counsel to MidCap Financial Trust.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures, if and when there is one or more Stalking Horse Purchaser, any such designated Stalking Horse Purchasers shall be considered a Qualifying Bidder and any Stalking Horse Agreement shall be a Qualifying Bid (as defined below).

To the extent that a bid is proposed by a group or committee to which Bankruptcy Rule 2019 applies, such parties must promptly file the statement required by such rule as a condition to becoming a Qualifying Bidder.

### 3.     Bankruptcy Court Jurisdiction

In conjunction with any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction (as defined below), the acts or omissions of the Debtors, the Investment Banker, and their respective representatives and/or the construction and enforcement of the contemplated transaction documents of such parties, any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial and consented and submitted to the exclusive jurisdiction of the Court, (b) bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

### 4.     Form of Agreement

Each Qualifying Bidder, must include with its bid:

(a)     an executed asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"),[2] clean and marked against the form provided by the Debtors, which must include the following:

i.     identification of the specific Assets to be acquired either in the Transaction Agreement itself or as a schedule to the Transaction Agreement;

ii.     full disclosure of the identity of the bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, along with the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors wish to discuss the bid submitted by the Qualifying Bidder;

iii.     the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount, if any, constitutes a credit bid, as well as any liabilities proposed to be paid or assumed by such Qualifying Bidder;

---

[2]     A form of proposed Transaction Agreement to be used by bidders in submitting stalking horse or Qualified Bids (as defined herein) will be located in the data room maintained by the Investment Banker.

iv.     identify whether the Qualifying Bidder or the Debtors shall be responsible for (a) any transfer or similar taxes that arise from the Sale and (b) any cure costs required to be paid to assume and assign executory contracts and unexpired leases that are included in the bid;

v.      a commitment to close the transactions contemplated by the Transaction Agreement promptly upon entry of the order approving the Sale;

vi.     contain a written acknowledgement and representation that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

vii.    a statement that the Transaction Agreement is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, due diligence or third party, regulatory or internal approval, subject to Section 4(a)(ix) of these Bidding Procedures;

viii.   a statement that the Qualifying Bidder has obtained any required internal corporate, legal or other authorizations, and has the ability to close a sale transaction and to provide adequate assurance of future performance as required under section 365 of the Bankruptcy Code;

ix.     a statement that the Qualifying Bidder believes in good faith that it has the ability to obtain all required regulatory approvals on a timely basis and setting forth a summary of the steps that have been and/or will be taken to obtain such approvals; and to the extent practicable, copies of filed or draft applications, as applicable, for all such approvals; and

x.      a statement regarding whether the Qualifying Bidder will offer employment to the Debtors' employees and whether the Qualifying Bidder will assume any of the Debtor's union contracts.

## 5.    <u>Due Diligence</u>

Subject to the execution of a confidentiality agreement by a Potential Bidder or Qualifying Bidder, the Debtors will provide any Potential Bidder or Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to the Investment Banker at the contact information provided above.

All due diligence materials provided to Potential Bidders and Qualifying Bidders shall be subject to the limitations on use and disclosure included in any confidentiality agreement entered into pursuant to the Bidding Procedures.

Notwithstanding any limitations provided for in any due diligence materials in the Debtors' possession, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders that have executed a confidentiality agreement.

6.    **Bid Requirements**

To be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and must satisfy each of the following requirements (each, a "**Bid Requirement**"):

(a)    be in writing;

(b)    fully disclose the identity of the Qualifying Bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)    be accompanied by a clean, **executed** copy of a Transaction Agreement that satisfies the requirements of Section 4 of these Bidding Procedures, along with a marked copy of the Transaction Agreement that reflects any variations from the Debtors' form of Transaction Agreement, if any;

(d)    set forth the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount, if any, constitutes a credit bid, and identify the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(e)    specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase those Assets included in the applicable Stalking Horse Agreement upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement;

(f)    state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or Back-Up Bidder (both as defined below) in which case such offer is formal, binding and unconditional and, in the case of the Back-Up Bidder, is irrevocable until two (2) business days after the closing of the Sale of the subject Assets to the Successful Bidder;

(g)    state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Transaction Agreement and contain such financial

35584444.9 07/26/2019

and other information to allow the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by its proposed Transaction Agreement, including, without limitation, (i) written evidence satisfactory to the Debtors, in consultation with the Consultation Parties, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Transaction Agreement, and (ii) such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial ability and willingness to perform under any contracts that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors, within one (1) business day after receipt, to make such information available to any counterparties to any contracts or leases being assumed and assigned in connection with the Sale ("**Counterparties**") that have requested, in writing, such information, provided, however, that such information may be provided on a confidential basis;

(h)       to the extent the proposed purchaser is a newly-formed or special purpose entity, include a guaranty of the Qualified Bidder's obligations under the Transaction Agreement by a creditworthy affiliate of the Qualified Bidder that is reasonably acceptable to the Debtors in consultation with the Consultation Parties or include such other arrangement reasonably acceptable to the Debtors, in consultation with the Consultation Parties;

(i)       identify with particularity each and every executory contract, unexpired lease and unexpired sublease the assumption and assignment of which is a condition to close the transactions contemplated by the proposed Transaction Agreement;

(j)       include a commitment to close the transactions contemplated by the Transaction Agreement promptly upon of entry of the order approving the Sale;

(k)       not request or entitle such Qualifying Bidder (other than a Stalking Horse Purchaser) to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment, or any claim under section 503(b)(3)(D) of the Bankruptcy Code;

(l)       in the event that there is a Stalking Horse Purchaser, and the Qualifying Bidder wishes to bid on the same Assets that are included in the Stalking Horse Agreement, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, plus (B) any break-up fee, expense reimbursement, or other bid protection provided under the Stalking Horse Agreement, plus (C) $500,000;

(m)       not contain any contingencies of any kind, including, including without limitation, contingencies related to financing, due diligence, regulatory or third party or internal approval, subject to Section 4(a)(ix) of these Bidding Procedures;

(n)       provide for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the

"**Back-Up Bid**") after the Successful Bid (as defined below), in accordance with the terms of the Transaction Agreement and these Bidding Procedures;

(o)    include written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Transaction Agreement;

(p)    subject to Section 7 of the Bidding Procedures, provide a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; <u>provided</u>, that the Debtors, after consultation with the Consultation Parties, may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court; and

(q)    provide for minimum damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Transaction Agreement equal to the amount of the Deposit, and not provide for any limitation on damages of any kind or nature.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors both reserve the right and are authorized, in consultation with the Consultation Parties, to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

**7.    Credit Bidding**

Any party that wishes to submit a credit bid either as a component or as the entirety of the consideration for its bid shall identify the amount of the claim and the nature, extent and priority of the lien upon which its credit bid is premised. Except where the Debtors have stipulated to the amount of a Senior Secured Claim (as defined below) in a "cash collateral" or similar order entered by the Court, any party submitting a credit bid agrees to provide the Debtors and the Consultation Parties with documentation to evidence the amount, nature, extent, validity and perfection of such claim and lien to the extent it has not already done so.

Any party submitting a credit bid must include in their bid either (i) provisions for the satisfaction of any secured claims that are senior to the secured claim that forms the basis of the credit bid (a "**Senior Secured Claim**") or (ii) evidence that the holder of any Senior Secured Claim has affirmatively consented to any other treatment of its Senior Secured Claim.

Parties entitled to credit bid shall not be required to comply with Paragraph 6(o) of the Bidding Procedures regarding providing a Deposit in connection with their bids solely with respect to the amount of the Senior Secured Claim included as consideration for their bid.

Notwithstanding anything to the contrary in the Bidding Procedures Order or these Bidding Procedures, all credit bids must comply with section 363(k) of the Bankruptcy Code, and all liens upon which any credit bids are based shall be subject to objection and challenge by the Committee and other parties in interest (a "**Challenge**").  In the event that the Committee or another party in interest Challenges a creditor's lien, the approval of a Successful Bid by such creditor that includes a credit bid shall be contingent upon a final determination that such creditor's lien is valid and perfected.  In the event that such a creditor's lien is successfully Challenged, or otherwise determined not to be valid and perfected, such creditor shall pay the credit bid portion of its bid in cash at the closing of the Sale.

8.    **Bid Deadline**

A Qualifying Bidder, other than a Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors, with a copy to the Consultation Parties, so as to be received on or before **September 16, 2019 at 4:00 p.m. (ET)** (the "**Bid Deadline**"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the Consultation Parties.  All parties wishing to submit a Qualifying Bid shall submit the bid materials required by Section 6 (including the **executed** Transaction Agreement and a certified check or wire transfer for the Deposit amount) to the Investment Banker at the contact information provided above with a copy to counsel to the Debtors, Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102 Attn: Jeffrey C. Hampton, Esq. and Adam H. Isenberg, Esq. (jeffrey.hampton@saul.com and adam.isenberg@saul.com), and 1201 North Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Mark Minuti, Esq. (mark.minuti@saul.com) and Monique B. DiSabatino, Esq. (monique.disabatino@saul.com).

**Except as may otherwise be determined by the Debtors in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction. Consistent with the terms of any confidentiality agreements executed by them, all Potential Bidders and Qualifying Bidders shall maintain as confidential, up until the Auction, the fact that they have submitted a bid and the terms and conditions of such bid.**

The Debtors will disclose the identity of any bidders determined to be Qualifying Bidders to the appropriate persons at the City of Philadelphia's Department of Public Health, Solicitor's Office and Managing Director's Office for Health and Human Services (together, the "**City**") within one (1) business day after determining that such bidder's bid is a Qualified Bid; provided, however, that such information shall be held on a confidential basis by any party receiving such information.

If the Debtors, in consultation with the Consultation Parties, qualify a bid that, as clearly reflected in the bid, significantly impacts the continuity of patient care at STC and/or its related practice groups, the Debtors will disclose to the City, within twenty-four (24) hours after qualification of the bid or as soon as practicable after it becomes apparent to the Debtors, in consultation with the Consultation Parties, that such bid may significantly impact the continuity of patient care at STC and/or its related practice groups, the provisions of the bid that impact

35584444.9 07/26/2019

such continuity of care; provided, however, that such information shall be held on a confidential basis by any party receiving such information.

### 9.    Evaluation of Qualifying Bids

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid (or bid otherwise submitted consistent with Section 7 above) from a Qualifying Bidder is a Qualifying Bid, and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than one (1) day prior to the Auction (as defined below).  In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Debtors and shall have the ability to modify its bid up to the Auction in order to become a Qualifying Bid; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to the commencement of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest and best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**"), and shall promptly notify all Qualifying Bidders with Qualifying Bids of the Baseline Bid.  The Baseline Bid may be comprised of any combination of Assets, and the Debtors, in consultation with the Consultation Parties, may determine that different Baseline Bids exist for different groupings of the Assets.  The Debtors, in consultation with the Consultation Parties, shall have the discretion to determine how to proceed when auctioning the Assets in groupings that do not include all of Debtors' Assets so as to maximize the value of the Assets.

Prior to the Auction, all bidders are encouraged to address any issues concerning the Debtor's Collective Bargaining Agreement with the PASNAP union by contacting PASNAP's counsel, The Law Offices Of Mitchell J. Malzberg, LLC, P.O. Box 5122, 6 East Main Street, Clinton, N.J. 08809, Attention: Mitchell Malzberg, Esq. (mmalzberg@mjmalzberglaw.com) and/or counsel to the Debtors.

### 10.    One Qualifying Bid

If only one Qualifying Bid is submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall have the right to request at the Sale Hearing (as defined in the Bidding Procedures Order) that the Court approve the Transaction Agreement with the Qualifying Bidder and the transactions contemplated thereunder.

### 11.    Auction

In the event that the Debtors timely receive more than one Qualifying Bid, the Debtors shall conduct an auction (the "**Auction**") in consultation with the Consultation Parties. Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest and best bid for the Assets, which will be determined by considering, among other things, the following non-binding and non-exclusive factors: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation

with the Consultation Parties, exists as a result of such variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with one or more other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

Notwithstanding anything to the contrary contained herein, the Debtors reserve the right to determine, in consultation with the Consultation Parties, that no Qualifying Bid was received and/or to not select a Successful Bidder if the Debtors determine, in consultation with the Consultation Parties, it is not in the best interests of the Debtors' estates and their creditors to do so.

The Auction shall be governed by the following procedures:

(a)    the Auction shall be held on **September 18, 2019 at 10:00 a.m. (ET)** at the offices of Saul Ewing Arnstein & Lehr LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102;

(b)    only Qualifying Bidders with Qualifying Bids (together, the "**Auction Bidders**") shall be entitled to make any subsequent bids at the Auction;

(c)    the Auction Bidders shall appear in person at the Auction, or through a duly authorized representative.  In the event that a Qualifying Bidder becomes a Successful Bidder or Back-up Bidder, then whomever is attending the Auction on behalf of a Qualifying Bidder must have the authority, immediately after the conclusion of the Auction, to complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which a Successful Bid or Back-up Bid was made;

(d)    only the Debtors, the Auction Bidders, the Consultation Parties, and all creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction. **Parties who intend to attend the Auction must provide counsel for the Debtors at least five (5) business days' written notice of their intent to attend the Auction so that the Debtors can make appropriate arrangements**;

(e)    the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

11

(f)     the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

(g)     bidding on any lot of Assets shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least the greater of $500,000 and 1% of the Baseline Bid, provided that: (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest and best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protections available to such Stalking Horse Purchaser; (iii) any bid made by any Stalking Horse Purchaser, including in each and every round of bidding, shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protection available to such Stalking Horse Purchaser in addition to the cash and other consideration provided for in its bid; and (iv) the Debtors shall retain the right to modify the bid increment requirements at the Auction, in consultation with the Consultation Parties;

(h)     the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)     all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(j)     the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

(k)     the Auction Bidders shall have the right to make additional modifications to their Transaction Agreement in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of any Qualifying Bid that was announced as the then-current highest and best bid for the Assets that are the subject of the bids, and (ii) each Qualifying Bid (unless superseded by a subsequent Qualifying Bid at the Auction) shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until the conclusion of the Sale Hearing, unless such bid is selected as a Successful Bid or Back-Up Bid, which shall remain binding as provided for herein;

(l)     the Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination, in consultation with the Consultation Parties, as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Transaction Agreement, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(m)     upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets that is or are the highest and best from among the Qualifying Bids submitted at the Auction (each a "**Successful Bid**").  The bidder submitting a Successful Bid shall be the "**Successful Bidder**" for such Assets and shall have such rights and responsibilities of the purchaser as set forth in the Transaction Agreement.  The Debtors, in consultation with the Consultation Parties, shall designate a "**Back-Up Bid (or Bids)**" in the event that a Successful Bidder does not close a Sale or the Court does not approve the Successful Bid.  Subject to Section 7 of the Bidding Procedures, within one business day after the conclusion of the Auction, the Successful Bidder(s) and any Back-Up Bidder(s) shall deliver an additional Deposit payment so that each such bidder's total Deposit amount is equal to ten percent (10%) of the cash amount of the Successful Bid or Back-Up Bid, as applicable;

(n)     immediately after the conclusion of the Auction and without undue delay, each Successful Bidder and Back-Up Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid or Back-Up Bid was made; and

(o)     The City will be consulted as appropriate during the Auction in recognition of the City's interest in continuity of patient care.

**EACH SUCCESSFUL BID AND ANY BACK-UP BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL THE TIME PERIOD SPECIFIED IN THESE BIDDING PROCEDURES.  EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE IRREVOCABLE UNTIL THE CONCLUSION OF THE SALE HEARING, AT WHICH POINT THEY SHALL BE DEEMED WITHDRAWN AND TERMINATED.**

## 12.     Sale Hearing

The Successful Bid (which, if no Auction is held, may be the Staking Horse Agreement) and any Back-Up Bid will be subject to approval by the Court.  The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on **September 23, 2019 at 1:00 p.m. (ET)**.  The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties, from time to time without further notice to creditors or other parties in interest other than

13

by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

13. **Backup Bidder**

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close the applicable Sale promptly after the Court enters an order approving the Successful Bid (or such date as may be extended by the Debtors in consultation with the Consultation Parties), (i) the Back-Up Bid for that Sale will be deemed to be the Successful Bid, (ii) the Back-Up Bidder will be deemed to be the Successful Bidder, and (iii) the Debtors will be authorized, but not directed, to immediately close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

14. **Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or Back-Up Bidder for any Sale no later than three (3) business days following the conclusion of the Sale Hearing. The deposit of a Back-Up Bidder shall be returned within three (3) business days of the closing of the applicable Sale to the Successful Bidder; the deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as minimum damages resulting to the Debtors and their estates for such breach or failure to perform, without limitation on any additional damages of any kind or nature.

15. **Consultation Parties**

The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Assets, unless such party is a potential bidder for such Assets: (i) counsel to the Official Committee of Unsecured Creditors; and (ii) counsel to MidCap Financial Trust as Agent under the DIP Facility and agent under the prepetition first-lien credit facility.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit (i) the Debtors' discretion in any way (and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment); or (ii) the rights of any Consultation Party to object to any decisions of the Debtors whether or not these Bidding Procedures specifically provide for consultation rights with respect to such decisions.

In the event that any Consultation Party, any member of an official committee (that has not recused itself from participation on such committee with respect to the Sale), or an affiliate of any of the foregoing participates as a potential purchaser in the sales process, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged and released without further action, until such party advises the Debtors

14

that they are irrevocably withdrawing as a potential purchaser in the sale process at which time such party's consultation rights will be reinstated; <u>provided</u> that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of an official committee submits a Qualifying Bid, such committee will continue to have consultation rights as set forth in these Bidding Procedures; <u>provided</u> that the committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets in question and shall not provide any information regarding the sale of the Assets to such member.

## 16.  <u>Reservation of Rights</u>

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, to allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, to waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), to impose additional terms and conditions with respect to any or all Potential Bidders, to adjourn or cancel the Auction at or prior to the Auction, and to adjourn or cancel the Sale Hearing.

Additionally, the Debtors, in consultation with the Consultation Parties, have the right to terminate the sale and auction process with respect to any or all of the Assets at any time.

## 17.  <u>Buyer's Brokers/Indemnity</u>

Each Potential Bidder or Qualifying Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder, or agent acting on another's behalf.  Each Potential Bidder or Qualifying Bidder understands that the Debtors and Investment Banker and their respective representatives have not agreed to pay any brokerage commissions, finder's fee or other compensation in connection with a Potential Bidder's or Qualifying Bidder's possible purchase.  In addition, each Potential Bidder or Qualifying Bidder hereby agrees to indemnify, defend and hold the Debtors, Investment Banker, and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any such claims made by third-party brokers on account of or related to such Potential Bidder or Qualifying Bidder.

## 18.  <u>Fiduciary Out</u>

Nothing in these Bidding Procedures shall require the Debtors' board of managers to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, if the Debtors' board of managers determines, based on the advice of counsel, that refraining from taking such action or taking such action, as the case may be, is required to comply with applicable law or the board's fiduciary obligations thereunder.

## 19.  <u>Disclaimer</u>

35584444.9 07/26/2019

By submitting a bid, each Potential Bidder and Qualifying Bidder agrees to and acknowledges the following terms and conditions with respect to any information received from the Debtors related to the Assets ("**Information**"):

    (a)    The Assets are being offered AS-IS, WHERE-IS, with ALL FAULTS.

    (b)    The Information has been prepared:

        i.    for informational purposes only;

        ii.    from materials supplied by the Debtors and other sources commonly accepted as reliable sources for such type of Information; and

        iii.    to assist Potential Bidders and Qualifying Bidders in making their own evaluation of the offering and does not purport to be all-inclusive or to contain all of the information that interested parties may desire. The Debtors, the Investment Banker and their respective officers, directors, employees, affiliates, agents, advisors and representatives (such parties, collectively, "**Representatives**") have not assumed responsibility for independent verification of any of the information contained herein and have not in fact in any way audited such Information. In all cases, Potential Bidders and Qualifying Bidders should conduct their own investigation and analysis of the offering, conduct site inspections, and scrutinize the Information. Potential Bidders and Qualifying Bidders should engage legal counsel, accountants, engineers, and/or such other professional advisors as Potential Bidders and Qualifying Bidders deem appropriate for evaluating the Assets.

    (c)    None of Potential Bidders, Qualifying Bidders or their respective Representatives are entitled to rely on the accuracy or completeness of the Information except as provided for in a Transaction Agreement that is authorized and approved by the Court.

    (d)    Although the Debtors and Investment Banker have endeavored for the Information to contain data that they believe to be relevant for the purpose of any Potential Bidder's or Qualifying Bidder's investigation, except as expressly set forth in a Transaction Agreement accepted by the Debtors and approved by the Court, none of the Debtors, the Investment Banker or any of their respective Representatives:

        i.    have made or make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express or implied or by operation of law or otherwise, with respect to the Assets or with respect to the accuracy, reliability or completeness of the Information;

        ii.    to the fullest extent permitted by law, shall have any liability whatsoever to Potential Bidders, Qualifying Bidders or their Representatives on any basis (including, without limitation, in contract, tort, under federal, foreign or state securities laws or otherwise) as a result of, relating or pertaining to, or resulting or arising from (i) any Potential Bidder's, any Qualifying Bidder's, or

any of their Representative's reliance on the Information, (ii) Potential Bidder's, Qualifying Bidder's, or their Representatives' use or non-use of the Information, or (iii) any alleged acts or omissions of Debtors, Investment Banker or any of their respective Representatives, or any errors or omissions in the Information, with the exception of any liability arising from gross negligence or willful misconduct;

iii.    shall have any liability or responsibility for any decisions made by any Potential Bidder, Qualifying Bidder or any of their Representatives in reliance on any Information;

iv.    will be under any obligation or duty (express or implied) to make available any Information to any Potential Bidders, any Qualifying Bidders, or any of their Representatives; and

v.    will be under any duty or obligation (express or implied) to update, supplement, revise or correct any Information disclosed under these Bidding Procedures, regardless of the circumstances.

(e)    No contract or agreement providing for any transaction shall be deemed to exist between a Potential Bidder or Qualifying Bidder and the Sellers unless and until a Qualifying Bidder and the Sellers execute and deliver a Transaction Agreement that is authorized and approved by the Court, and Potential Bidders and Qualifying Bidders hereby waive, in advance, any claims (including, without limitation, breach of contract) in connection with any transaction unless and until a Potential Bidder or Qualifying Bidder and the Sellers shall have executed and delivered a Transaction Agreement, which has been authorized and approved by the Court.  The Debtors reserve the right, in their discretion, in consultation with the Consultation Parties, to reject any and all proposals made by any Potential Bidder or Qualifying Bidder with regard to a transaction, and to terminate discussions and negotiations with a Potential Bidder or Qualifying Bidder at any time.  Subject to the terms of these Bidding Procedures, the Debtors shall be free to establish and change any process or procedure with respect to a transaction as the Debtors, in consultation with the Consultation Parties, shall determine (including, without limitation, negotiating with any other interested party and entering into a final definitive agreement relating to a transaction with any other party without prior notice to any Potential Bidder or Qualifying Bidder.

(f)    Each Debtor, the Investment Banker and the Debtors' other advisors, individually and collectively, have not made any representations or warranties except as expressly set forth in any Transaction Agreement executed by the Sellers, which has been authorized and approved by the Court.  Potential Bidders and Qualifying Bidders may rely only on the representations and warranties expressly set forth in a Transaction Agreement executed by the Sellers that has been authorized and approved by the Court.

19.    **<u>Recusal</u>**

Joel Freedman, any person or entity acting, directly or indirectly, on behalf of or at the direction of Joel Freedman, and any person or entity which holds direct or indirect ownership interests in, or is in direct or indirect control of, any of the non-Debtor affiliates, shall be recused from participation in any Sale by or on behalf of the Debtors and any deliberations, decisions and actions relating thereto.  All such deliberations, decisions and actions shall instead be reserved for the Debtors' chief restructuring officer and independent director, in consultation with the Consultation Parties where required by this Order or the Bidding Procedures.  For the avoidance of doubt, any and all persons and entities referenced above will be recused from any participation in the following, non-exclusive list of matters relating to the Sale, unless requested otherwise by the Debtors' investment banker in consultation with the Committee:

- Marketing efforts in connection with the sale of the STC assets;
- Review, analysis or negotiation of any letters of intent, term sheets or asset purchase agreements;
- Evaluation or determination of any Qualifying Bids or Qualifying Bidders;
- Evaluation or determination of any stalking horse bidder designations;
- Decisions relating to any modifications of the bidding procedures;
- Determination of the highest or otherwise best bids, including any Successful Bid; and Decisions regarding assumption and assignment or rejection of any executory contracts.