**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) | Case No. 19-11466 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) | **Related Docket No. 53** |

**TENET BUSINESS SERVICES CORPORATION AND CONIFER REVENUE CYCLE SOLUTIONS, LLC'S OBJECTION TO MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDER, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Tenet Business Services Corporation ("Tenet") and Conifer Revenue Cycle Solutions, LLC ("Conifer") respectfully represent as follows in support of this objection (this "Objection") to entry of a final order approving the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate*

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

*Protection to the Prepetition Lender, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 53] (the "DIP Motion"):[2]

**Preliminary Statement**

1. Prepetition, the Debtors repeatedly breached their payment and other obligations to Tenet under the TSA and Conifer under the MSA. As a result, on May 2, 2019, Tenet and Conifer provided notice of termination of the TSA and MSA, respectively, as of May 17, 2019. Thereafter, Tenet and Conifer voluntarily agreed to continue to provide services at the levels contemplated by the TSA and MSA. Unfortunately, the Debtors continued to breach their payment obligations postpetition, which left Tenet and Conifer with no choice other than to file the *Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C. 503(b)(1) or, in the Alternative, (II) Granting Relief from the Automatic Stay to the Extent Necessary to Terminate the TSA and MSA* [Docket No. 303] (the "Administrative Claim Motion").[3]

2. The Administrative Claim Motion is scheduled for hearing on August 16, 2019, a week after the final hearing on the DIP Motion. Approval of the Administrative Claim Motion would cause an immediate termination event under the DIP Facility. Accordingly, Tenet and Conifer respectfully submit that the Court should defer the final hearing regarding approval of the DIP Facility until the hearing on the Administrative Claim Motion, to permit the Court to consider these two critical related matters at the same time and avoid the possibility that a default may occur under the DIP Facility days after its approval.

[2] Capitalized terms used herein but not otherwise defined shall have the meaning set forth in the DIP Motion or the Administrative Claim Motion, as applicable.

[3] The Administrative Claim Motion and its supporting declarations [Docket Nos. 304 and 305] are incorporated herein in their entirety by reference.

3. Irrespective of when the Court considers entry of the Final Order, the DIP Facility does not warrant approval because it will benefit the Debtors' prepetition lender to the detriment of the Debtors' general unsecured creditors and vendors. More specifically, the Debtors maintain that the TSA and MSA remain in full force and effect. However, the DIP Facility only includes $200,000 per week in funding for Tenet and Conifer. This amount is inadequate to cover Tenet and Conifer's respective costs and is approximately 75 percent below the contract rate under the TSA and MSA. Simply put, the estates must pay the costs of administering these cases if the Debtors wish to continue to have the benefits of chapter 11.

4. Nor does the proposed DIP Facility provide sufficient liquidity for the Debtors to address other critical matters. More specifically, the Debtors have begun to shutter Hahnemann University Hospital ("Hahnemann") located in downtown Philadelphia. While the Debtors have yet to publicly disclose the proposed closure plan more than a month after filing their closure motion, the closure will require a significant cash outlay. However, the Budget only includes $100,000 per week in wind-down funding (identified in the Budget as "Hospital Shutdown Plan (non-labor)"). This amount may be inadequate to close Hahnemann in a safe, prudent manner given the nature of its operations. This is a significant concern for Tenet and Conifer, which provide an array of services to the Debtors, given that the Debtors are expected to compel continued performance during the closure process. Additionally, the Debtors have provided no guidance on how the Debtors plan to scale back and ultimately wind down the services provided by Tenet and Conifer. Accordingly, Tenet and Conifer submit that the Court should not approve the DIP Facility on a final basis unless the Debtors demonstrate that there is sufficient funding for the closure process (including funding for any vendors that the Debtors may seek to compel to provide services during such period).

5. Finally, the DIP Facility provides negligible incremental liquidity and exposes the estates to the risk of administrative insolvency. Accordingly, the Debtors' proposed section 506(c), section 552(b), and marshaling waivers are inappropriate.

## Objection

### I. The Court Should Not Approve the DIP Facility Because a Default Thereunder Will Occur If the Court Grants the Administrative Claim Motion

6. As of the date hereof, Tenet and Conifer's continued provision of postpetition services at levels contemplated by the TSA and MSA has given rise to a combined unpaid postpetition debt of at least $3.2 million. The Administrative Claim Motion asks for allowance and immediate payment of an administrative expense claim on account of all outstanding postpetition amounts owing for services provided in accordance with the TSA and MSA. In the alternative, the Administrative Claim Motion seeks relief from the automatic stay to allow Tenet and Conifer to terminate the TSA and MSA to the extent those agreements were not previously terminated. If the Court grants the Administrative Claim Motion, events of default would occur. *See* DIP Credit Agreement, §§ 7.2 (g)-(h). Such relief would likely cause additional defaults. For example, full payment on account of the postpetition services would trigger the default that occurs "if a Variance occurs with respect to aggregate expenditures in any week under the [] Budget in an amount exceeding ten percent (10%) without the prior written consent of the Agent[.]" *See* DIP Credit Agreement, § 10.1(ii). With respect, the Court should not put the cart before the horse: it is not a reasonable exercise of the Debtors' business judgement to pursue a DIP Facility when there is a reasonable likelihood of defaulting within a week after its approval. Accordingly, Tenet and Conifer respectfully request that at a minimum, the DIP Facility should not be approved on a final basis until this Court has adjudicated the Administrative Claim Motion.

## II. The Court Should Not Approve the DIP Facility Because It Does Not Provide Sufficient Liquidity for the Debtors' Postpetition Operations

### A. The DIP Facility Includes Funding of $200,000 Per Week for Tenet and Conifer, Approximately 75 Percent Below the Contract Rate

7. The Budget and DIP Facility do not provide for sufficient compensation of Tenet and Conifer on account of the array of critical services they are providing postpetition to the Debtors. Under the Budget, Tenet and Conifer are being paid a total of $200,000 per week, but the TSA and MSA contemplate compensation of approximately $810,000. As a result, Tenet and Conifer are owed approximately $3.2 million on account of postpetition services that the Debtors cannot pay pursuant to the terms of the proposed DIP Facility.

8. Upon information and belief, Tenet and Conifer understand that the Debtors believe that this shortfall is appropriate, and that no additional funding is required, for at least two reasons. ***First***, Tenet and Conifer expect the Debtors will assert that the potential future cash proceeds of the sale of St. Christopher's Hospital for Children will satisfy a portion of Tenet and Conifer's postpetition administrative claims. Tenet and Conifer support a value-maximizing sale. However, there is no stalking horse bidder for the hospital, and the outcome of that process remains unknown at this time. With respect, the sale is being run for the primary benefit of the DIP Lenders, and Tenet and Conifer (and other administrative creditors) should not bear the risk that the sale does not result in sufficient cash to satisfy their administrative claims in full in cash.[4]

[4] *In re NEC Holdings Corp.*, No. 10-11890 (PJW), Hr'g Tr. (July 13, 2010) at 100:17-25, 101:1-3 ("[Secured creditors] have to pay the freight, and the freight is, at least . . . certainly an administratively solvent estate. And while there's not a guarantee, there has to be something other than a wing and a prayer on the payment of the admin claims. . . . [T]here has to be something . . . some evidence that there's a . . . probability that they'll be paid."); *see In re Townsends, Inc.*, No. 10-14092 (CSS), Hr'g Tr. (Jan. 1, 2011) at 24:5-9, 21-22 ("I would have a problem running any case that was administratively insolvent. But one that is both administratively insolvent and prefers one set of administrative creditors over another is doubly troubling. . . . I just — I can't run that kind of case."); *see also In re Sports Authority Holdings, Inc.*, No. 16-11452 (KJC) Hr'g Tr. (July 20, 2016) at 194:16-19 ("[I]f a case is being run for the benefit of the lenders in order to foreclose upon their collateral, the lenders are going to have to pay the cost of that. And that includes all administrative [claims].").

9. ***Second***, the Debtors' suggestion that they may setoff Tenet and Conifer's undisputed postpetition administrative claims against certain disputed and unresolved litigation claims the Debtors have asserted against Tenet lacks any basis in fact or law. As described in the first-day affidavit [Docket No. 2], prepetition, the Debtors and certain affiliated entities commenced litigation against Tenet (but not Conifer) in Delaware state court, asserting a host of claims arising under the Asset Sale Agreement, dated August 31, 2017 (the "ASA"), and the TSA. Tenet disputes those allegations. The Debtors, however, have repeatedly sought to delay those proceedings, and it is uncertain when the applicable court will resolve those matters.

10. In any event, the Debtors' suggestion that they may setoff Tenet and Conifer's postpetition administrative claims against these disputed and unresolved prepetition litigation claims lacks any basis in law. More specifically, a debtor's right to setoff its obligations in bankruptcy only exists to the extent such a right exists outside of bankruptcy. *See In re ADI Liquidation, Inc*., No. 14–12092 (KJC), 2015 WL 4638605, at *4 (Bankr. D. Del. May 5, 2015) ("A debtor's right to effectuate setoffs, *as it exists under state law*, is one of the personal defenses preserved by § 558.") (emphasis added). Both the TSA and the MSA are governed by Delaware law, *see* Administrative Claim Motion, Ex. B, § 1.12; Ex. C, § 19.1, and under Delaware common law, there is no right to setoff unliquidated liabilities against liquidated ones. *See, e.g*., *CanCan Dev., LLC v. Manno*, No. CIV.A. 6283-VCL, 2011 WL 4379064, at *5 (Del. Ch. Sept. 21, 2011) ("[T]here is no right to set-off of a possible unliquidated liability against a liquidated claim that is due and payable.") (internal citation omitted); *Post Holdings, Inc. v. NPE Seller Rep LLC*, No. CV 2017-0772-AGB, 2018 WL 5429833, at *6 (Del. Ch. Oct. 29, 2018) (same). Here, the Debtors' pending litigation claims against Tenet—all of which lack merit—remain contingent and

unliquidated. Accordingly, the Debtors cannot offset postpetition administrative claims against any such prepetition litigation claims under applicable Delaware law.

11. Moreover, Tenet's TSA and ASA expressly prohibit the parties from exercising any setoff rights. *See* Administrative Claim Motion, Ex. B, § 4.1 (attaching the TSA, which provides "Authorized User shall not have the right to offset amounts payable to Vendor under this Agreement as a result of outstanding claims, liabilities or obligations asserted by Authorized User against Vendor under this Agreement or the Asset Sale Agreement."); ASA § 9.1 ("Purchasers (and their respective successors-in-interest, assigns and Affiliates) shall have neither the right to offset amounts payable to Sellers under this Section 9.1(a) against, nor the right to contest their obligation to transfer, assign and convey to Sellers because of, outstanding claims, Liabilities or obligations asserted by Purchasers against Sellers including pursuant to the Post-Closing Purchase Price Adjustment of Section 1.2 and the indemnification provisions of Section 10.2.").

12. The Debtors' ability to setoff any purported claims against the postpetition amounts owed to Conifer is similarly suspect because the MSA is clear that the Debtors cannot offset amounts owed under the MSA against claims asserted against Conifer's affiliates. Administrative Claim Motion, Ex. C, § 7.2 ("Further, neither Party shall attempt to offset, including but not limited to, any statutory rights of offset as permitted by Law, any debt, obligation or duty to perform that it owes under the terms of this Agreement, against any debt, obligation, loss or cause of action which that Party may hold against an Affiliated Company of the other Party.").

13. Accordingly, the Debtors have no right to setoff their alleged claims against Tenet or Conifer. It is inappropriate to withhold payments or base the Budget on purported rights that are expressly prohibited by both law and contract.

**B. The DIP Facility Does Not Provide Adequate Funding for the Debtors' Wind Down or Closure Process**

14. The Budget provides weekly funding of $100,000 to close Hahnemann. As an initial matter, it is difficult to fully evaluate the adequacy of this critical budget line item without additional details regarding the Debtors' closure plans for Hahnemann, which the Debtors still have not provided to the parties in interest in these chapter 11 cases despite the fact that it has now been a month since the Debtors first requested approval of a closure plan. Tenet and Conifer have requested additional details regarding the closure process; while the Debtors have provided certain information, questions remain.

15. In any event, Tenet and Conifer believe that the amounts budgeted for the Hahnemann closure may be inadequate. Tenet has the unique vantage point of having been the former operator of Hahnemann and believes that the budgeted funds are not sufficient given the size and scope of Hahnemann and its operations. The logistics of shuttering a major medical institution in compliance with the array of applicable laws and regulations are complex, the process is time consuming, and the obligations related to Hahnemann will not cease immediately upon it being closed to patients. It is inappropriate, and potentially a risk to public health and patient privacy, to lock the Debtors into financing without knowing if that financing will provide enough liquidity to close the hospital in a safe manner.

16. In a similar vein, the Debtors propose to sell St. Christopher's to a third party, yet the DIP Facility does not include any information about the Debtors' post-sale wind-down process. Without the details of the wind-down budget or the underlying closure plans, stakeholders' ability

to meaningfully evaluate the adequacy of the wind-down budget—a key component of the proposed DIP Facility and Budget—is limited.[5]

## III. The DIP Facility's Section 506(c), Section 552(b), and Marshaling Waivers Are Inappropriate

17. Section 506(c) is designed to prevent a windfall to secured creditors at the expense of the estate. *See In re Visual Indus., Inc.*, 57 F.3d 321 (3d Cir. 1995) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor at the expense of the claimant."). Similarly, section 552(b)'s "equities of the case" exception serves to prevent secured creditors from pushing the costs of funding a case run for their benefit onto the backs of unsecured creditors. And, marshaling prevents a senior creditor from inequitably depriving other creditors of a shared pool of assets. Advanced waivers of rights that could affect the recoveries of unsecured creditors are especially suspect in cases, like here, where there is a serious question whether the debtors are administratively solvent. *See In re Sports Authority Holdings, Inc.*, No. 16-11452 (KJC) Hr'g Tr. (July 20, 2016) at 195:6-16 ("[In] a case where the . . . administrative claims are clearly not budgeted or being paid while . . . the secured lenders' collateral is being liquidated and their secured claim is being paid, I have a serious problem with that. I think the fix is no 506(c) waiver for anybody. And to the extent that administrative claims are not paid at the end of this case, there will be a claim against the lenders for those costs under 506(c) to the extent they were necessary for the preservation or realization of their collateral."); *In re NEC Holdings Corp.*, No. 10-11890 (PJW), Hr'g Tr. (July 13, 2010) at 101:8-9 (raising concerns regarding the payment of administrative creditors before stating "[B]asically, you don't give a 506(c) waiver over an

---

[5] Throughout the early stages of these chapter 11 cases, the Debtors have lacked advance planning and communication with critical stakeholders with respect to the wind-down. For example, as the Debtors have shuttered Hahnemann, the Debtors have terminated or reassigned personnel who had responsibility for the Debtors' information technology systems. This prevents Tenet from being able to effectively administer those services that the Debtors are insisting Tenet continue to provide on a postpetition basis.

objection by the committee."); *Hartford Fire Ins. Co. v. Nw. Bank Minn. (In re Lockwood Corp.)*, 223 B.R. 170, 176 (8th Cir. B.A.P. 1998) (holding that provision in financing order purporting to immunize the postpetition lender from section 506(c) surcharge was unenforceable); *In re Colad Group, Inc.*, 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005) (refusing to approve postpetition financing agreement, explaining that prohibiting the surcharge of collateral under section 506(c) was effectively a modification of statutory rights and obligations created by the Bankruptcy Code).

18. Here, the Debtors are almost certainly running the closure of Hahnemann on the backs of administrative creditors such as Tenet and Conifer. The Budget does not provide for payment of known administrative claims in full, and the Hahnemann closure budget and wind-down budget are unknown at best—and grossly inadequate at worst. On the other hand, the sale of St. Christopher's is likely to bring meaningful value for the sole benefit of the DIP Lenders, who should be paying the freight of the sale process, including the payment of administrative claims for the ordinary course costs of operating their collateral during the sale and wind-down periods.

19. Simply put, these chapter 11 cases and the DIP financing will benefit the DIP Lenders at the expense of administrative and junior creditors. Such circumstances are precisely why sections 506(c) and 552(b) and the equitable doctrine of marshaling exist—to protect junior creditors from the undue control of senior creditors. Accordingly, to the extent this Court is inclined to approve the DIP Facility notwithstanding its grave infirmities, Tenet and Conifer respectfully submit that the waivers are not remotely appropriate given the circumstances and should be stricken.

**Reservation of Rights**

20. Tenet and Conifer reserve all rights, remedies, claims, counterclaims, and defenses under the TSA and the MSA, at law, and in equity, including, without limitation, Tenet and Conifer's right to file an administrative expense claim and/or a rejection damages claim.

**Notice**

21. A copy of the Objection has been provided to (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to MidCap Funding IV Trust; (e) Drexel University d/b/a Drexel University College of Medicine; (f) the Debtors' unions; (g) the Internal Revenue Service; (h) the United States Attorney for the District of Delaware; (i) the United States Department of Justice; (j) the Pennsylvania Attorney General's Office; (k) the Pennsylvania Department of Human Services; (l) the City of Philadelphia; and (m) all applicable federal, state and local taxing and regulatory authorities having jurisdiction over the Assets; and (n) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. Tenet and Conifer submit that, under the circumstances, such notice constitutes good and sufficient notice of this Objection and no other or further notice need be given.

[*Reminder of this page intentionally left blank.*]

WHEREFORE, Tenet and Conifer respectfully request that the Court deny the DIP Motion and grant such other relief as is just and proper under the circumstances.

Dated: August 2, 2019

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Timothy P. Cairns*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com

- and -

KIRKLAND & ELLIS LLP
Stephen C. Hackney, P.C.
Gregory F. Pesce (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: stephen.hackney@kirkland.com
gregory.pesce@kirkland.com

-and-

KIRKLAND & ELLIS LLP
Nicole L. Greenblatt, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: nicole.greenblatt@kirkland.com

*Counsel to Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC*