Case 19-11466-MFW    Doc 352    Filed 08/02/19    Page 1 of 9

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al*.,[1] | Case No. 19-11466(KG) |
| | Jointly Administered |
| Debtors. | Related Docket Nos.: 53, 54 and 172 |

**LIMITED OBJECTION TO ENTRY OF FINAL ORDER ON DEBTOR'S MOTION AUTHORIZING DEBTORS TO OBTAIN POSTPETITION SECURED SUPERPRIORITY FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE**

HSREP VI Holding, LLC and its affiliates[2] (collectively, "HSRE"), by and through their counsel, DLA Piper LLP (US), submits this Limited Objection (the "Objection") to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Secured Superpriority Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lender, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [D.I. 53] (the "DIP Motion"). In support of this Objection, HSRE respectfully represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] The relevant affiliates of HSRE are as follows: HSRE-PAHH I, LLC, PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Wood Street Garage, LLC, PAHH Erie Street Garage, LLC, PAHH Feinstein MOB, LLC, and PAHH Broad Street MOB, LLC, each, a Delaware limited liability company.

EAST\168501287.2

**BACKGROUND**

1.      The debtors in the above-captioned cases (collectively, the "Debtors") commenced these bankruptcy cases by filing voluntary petitions for relief on June 30, 2019 (the "Petition Date") pursuant to the chapter 11 of the Bankruptcy Code.

2.      As described more fully in HSRE's *Preliminary Response Of HSREP VI Holding, LLC To Certain First Day Motions And Reservation Of Rights* (the "Preliminary Response") [D.I. 54],[3] HSRE is the master landlord under Master Leases under which Debtor St. Christopher's Healthcare, LLC is the tenant (the "Master Tenant"). The Master Tenant is obligated to pay all sums due and coming due under the Master Leases, as well as all other occupancy costs and expenses (*i.e.*, real estate taxes, insurance, repairs and maintenance, and utilities). *See* Master Lease dated January 11, 2018, at, *inter alia*, ¶¶ 2.1 (Base Rent); 2.2 (Supplementary Rent); 2.4 (Absolute Net Lease); 3.1 (Impositions); 3.5(a),(b) (Imposition Reserve Fund); 5.5 (Tenant Work); 9.7 (Landlord Lockbox Rights); 11.3 (Indemnity); 11.4 (Mechanic's Liens); 11.5 (Non-Liability of Landlord: Liens); 11.7 (No Services Furnished); 12.12 (Enforcement Costs); 12.15 (Landlord Lien); 19.1 (Reporting, Requirements); 20.4 (Inspections and Audits); 20.13(c) (Property Manager); 21.16 (Rent Obligation Unconditional).[4]

3.      The monthly obligations under the Master Leases owing to HSRE total approximately $1,300,000, however, the Master Tenant is liable under the Master Leases on an absolute net basis, meaning that the Master Tenant is also liable for all other occupancy costs and expenses and repairs and maintenance. *See* Master Leases at ¶ 2.4. The Master Tenant is obligated

---

[3]     Initially capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Preliminary Response. The Preliminary Response is hereby incorporated by reference as if set forth in full herein.

[4]     The Master Leases are voluminous and may be provided upon request and subject to appropriate confidentiality agreements.

2

to pay all amounts owing under the Master Lease, regardless of whether or not their tenants (the "Subtenants") pay their rent to the Master Tenant. To date post-petition, as detailed on the record at the hearing on July 2, 2019 and others, the Master Tenant is in default post-petition as a result of its failure to timely comply, in full, with the terms of the Master Leases and the HSRE Lease deposit account control agreements. For the first full month of these cases, July 2019, the Master Tenant has failed to pay $594,978.11 towards the July rent and has failed to pay anything towards August rent to date.[5]

4. Furthermore, as part of a cost-saving initiative, in 2018, HSRE engaged Green Generation Solutions, LLC ("GreenGen") to develop energy savings initiatives and projects for the benefit of the Master Tenant and the properties. To that end, HSRE entered into Rebate Agency Agreements (the "Agreements") with GreenGen. Within the scope of the Agreements, GreenGen identified energy projects that would make HSRE eligible for certain federal, state, and local utility incentive programs. The objective of the Agreements was to minimize energy costs of the Master Tenant and Subtenants, while maximizing the amount of rebates and incentives HSRE could receive for retrofitting and improving the energy efficiency of its buildings. All improvements were paid for by HSRE and all rebates are to inure for the benefit of HSRE.

5. In support of this cost-saving initiative, the Master Tenant, on behalf of HSRE, applied for rebates through the PECO Energy Company ("PECO") because the electric service accounts were in the name of the Master Tenant. Any rebate application that was granted would be paid directly to the Master Tenant, as the pass-through entity, to be disbursed to HSRE. The beneficial interest in the PECO rebates is held by HSRE and HSRE, GreenGen and the Debtors intended that the rebates would be passed along to HSRE. As a consequence, any funds received

---

[5] As of the date of this Objection, HSRE is owed a total of $1,379,638.23 for August rent and other expenses.

as a PECO rebate do not constitute property of the Debtors' estates. And, while the Debtors have acknowledged this to HSRE, the rebates have not been transferred and the Debtors have expressed their intent to convert the rebate proceeds.

## OBJECTION

6. By the DIP Motion, the Debtors seek entry of a final order approving the terms of its proposed debtor in possession financing (the "DIP Financing"). On July 2, 2019, HSRE filed its Preliminary Response to the DIP Motion. In conjunction with the arguments made in HSRE's Preliminary Response, HSRE objects to the DIP Motion to the extent the Court expressly or implicitly approves the DIP Financing and DIP budget (the "DIP Budget") (Debtors have not provided an updated proposed DIP budget to HSRE, despite repeated requests, nor has one been filed at this time). Thus, administrative creditors such as HSRE, Tenet and others are apparently being asked to simply "trust" the Debtors that a DIP Budget will be prepared that will provide for the full payment of the administrative costs of these chapter 11 cases, while without any assurances whatsoever, granting to the DIP Agent vast protections, benefits and waivers. Unfortunately, the Debtors' track record affords HSRE little comfort that this will come to pass.

7. On July 12, 2019, this Court entered the *Interim Order Under 11 U.S.C. §§105, 361, 362, 363(C), 363(D), 364(C), 364(D), 364(E) And 507 And Bankruptcy Rules 2002, 4001 And 9014; (I) Authorizing Debtors To Obtain Postpetition Financing; (II) Authorizing The Debtors To Use Cash Collateral; (III) Granting Adequate Protection; and (IV) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(B) And 4001(C)* (the "Interim DIP Order") [D.I. 172].

8. When making a determination in connection with DIP financing, the court should ensure, among other factors, that "the financing is in the best interests of the estate and its creditors." *In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005). Courts have

been careful not to approve DIP financing when the terms are too beneficial to the Debtors' lenders: "While certain favorable financing terms may be permitted as a reasonable exercise of the debtor's business judgment, bankruptcy courts do not allow terms in financing arrangements which convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the post-petition lender." *In re Berry Good, LLC*, 400 B.R. 741, 747 (Bankr. D. Ariz. 2008).

9. In its Preliminary Response, HSRE expressed its concerns regarding the adequacy of the DIP Budget and Debtors' ability to account for the Debtors' obligations under the Master Leases. Indeed, the Debtors are currently in default under the Master Leases as a result of the failure to timely comply, in full, with the terms of the Master Leases, including the payment of the amounts due under the Master Lease and their demonstrated inability to cover emergency expenses when they become due. These concerns are far from academic, as section 365(d)(3) of the Bankruptcy Code provides in relevant part that: "The trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." *See* 11 U.S.C. §365(d)(3). Section 365(d)(3) requires that the debtor in possession timely perform all of its obligations under an unexpired lease of nonresidential real property, pending the decision to assume or reject it.

10. While HSRE reserved its rights so the Debtors could obtain the benefits of the entry of the Interim DIP Order, HSRE made clear at the time, and as the record has borne out, the DIP Financing and DIP Budget is simply insufficient for the Debtors to continue to remain administratively solvent.

11. If the Court is nonetheless inclined to approve the DIP Financing on a final basis, certain of the "protections" now being sought by the DIP Lender are simply inappropriate. First, HSRE objects to Debtors' argument that "[b]ecause MidCap, in its capacity as Prepetition Lender, is oversecured, no detriment to the estates or creditors will result from the roll-up or from the conversion of the remaining balance of the Prepetition Term Loan into a postpetition loan in the same amount." *See* D.I. 53 at p. 9.[6] However, the Debtors do not make clear, and the record in these Chapter 11 Cases is not clear that the Debtors' assets, as opposed to the non-Debtors' assets upon which the Prepetition Lender was granted a lien, renders the Prepetiton Lender fully secured. Debtors must demonstrate that the proposed roll-up of the prepetition obligations are fully secured by Debtors' assets alone.

12. Due to the defaults of the Master Tenant under the Master Leases, certain of the Subtenants have resorted to performing services contractually required of the Debtors in order to operate. With a likely DIP Budget that will continue these shortfalls and operating difficulties, the "gift" of a roll-up for a DIP Lender providing no real new money loans is particularly problematic.

13. In a similar vein, the Lenders should not be entitled to a waiver of the rights under section 506(c) of the Bankruptcy Code as it is inappropriate under these circumstances where the Debtors cannot demonstrate that the DIP Budget fully funds the costs of administration in these liquidating Chapter 11 Cases – these cases are being run to liquidate the Prepetition Lenders' and DIP Lenders' collateral and the expenses to accomplish that liquidation should not be borne by any creditor other than the Prepetition Lenders and DIP Lenders. The effect of the waivers sought

---

[6] The DIP Motion requested that the DIP Facility "will 'roll-up' the full amount outstanding under the Prepetition Revolver and the $20 million Prepetition Term Loan…." *See* D.I. 53 at p. 8-9.

6

by the DIP Lenders and supported by the Debtors will allow the lenders to liquidate their collateral without paying the costs. This is simply antithetical to the purpose underlying section 506(c). *See Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus.)*, 57 F.3d 321, 325 (3d Cir. 1995) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor . . . The rule understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate . . ."). The DIP Lenders are the Prepetition Lenders and cannot have their pre-petition collateral administered at the expense of other creditors. If the costs of administration are not satisfied by the DIP Budget, then this Court should not enter a Final DIP order containing a section 506(c) waiver (or an equities of the case 552(b) waiver).

14. Furthermore, as noted in its Preliminary Response, HSRE objects to the entry of a final DIP Order, which proposes to grant a lien on property that is not property of the estate. The amounts paid into, and transferred between, the Sublease Lockboxes, Master Landlord Accounts, and the Parent Account, are the property of HSRE and, therefore, may not be encumbered by the Debtors or their DIP Lenders.

15. Additionally, HSRE is expecting to receive numerous rebates from PECO and it is clear that the parties intended for the Debtors to act as a mere conduit with respect to the PECO rebates; the Debtors acknowledge that but for the fact that they are the account holder with PECO, they would have no part in the rebate payments and agree the rebates are to be turned over to HSRE. When a debtor acts as a mere conduit, as is the case here, the funds do not become property of the bankruptcy estate *See In re Pemaquid Underwriting Brokerage, Inc.*, 319 B.R. 824, 835 (Bankr. D.N.J. 2005); *see In re UDI Corp.*, 301 B.R. 104 (Bankr. D. Mass. 2003) (transfers were never part of the property of the estate as the parties "intended the beneficial interest in the rebate

7

to accrue" to the third party). HSRE objects to the DIP Motion to the extent that it proposes to grant a lien on property that is not property of the Debtors' estates, including any PECO rebates.

## **RESERVATION OF RIGHTS**

16. HSRE reserves the right to amend and/or supplement this Objection and to assert any other rights and objections and seek remedies under and relating to the Master Leases and any other transactional documents to which any Debtor or Debtor affiliate is a party under the Bankruptcy Code or other applicable law, including, without limitation, the rights to raise additional arguments or objections concerning the relief requested in the DIP Motion, and to interpose amended or further objections at a later date as may be warranted by attendant the facts and circumstances. HSRE reserves the right to cross examine any witness of any party at any hearing on the DIP Motion.

## **CONCLUSION**

WHEREFORE, HSRE respectfully requests, in light of this Objection, that this Court (i) condition approval of a Final DIP Order consistent with this Objection; and (ii) grant such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: August 2, 2019<br>Wilmington, Delaware | Respectfully submitted,<br><br>**DLA PIPER LLP (US)**<br><br>*/s/ Stuart M. Brown*<br>Stuart M. Brown (DE 4050)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801<br>Telephone: (302) 468-5700<br>Facsimile:  (302) 394-2341<br>Email: Stuart.Brown@dlapiper.com<br><br>-and-<br><br>Richard A. Chesley (admitted *pro hac vice*)<br>444 West Lake Street, Suite 900<br>Chicago, Illinois 60606<br>Telephone:  (312) 368-4000<br>Facsimile:   (312) 236-7516<br>Email:  Richard.Chesley@dlapiper.com<br><br>*Counsel to HSREP VI Holding, LLC* |

EAST\168501287.2