**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al.*, | Case No. 19-11466 (KG) |
| Debtors. | <u>**Related D.I.**</u>: 142 |

**LIMITED OBJECTION OF THE ASSOCIATION OF
AMERICAN MEDICAL COLLEGES AND THE EDUCATIONAL
COMMISSION FOR FOREIGN MEDICAL GRADUATES TO THE
<u>RESIDENT PROGRAM BID PROCEDURES MOTION</u>**

The Association of American Medical Colleges ("<u>AAMC</u>") and the Educational Commission for Foreign Medical Graduates ("<u>ECFMG</u>"), by and through their undersigned counsel, hereby submit this limited objection (this "<u>Limited Objection</u>")[1] to *the Debtors' Motion for Entry of Orders (I)(A) Establishing Bidding Procedures Relating to the Sale of the Debtors' Resident Program Assets, Including Approving a Break-up Fee, (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts, Including Notice of Proposed Cure Amounts, (C) Approving Form and Manner of Notice Relating Thereto, and (D) Scheduling a Hearing to Consider the Proposed Sale; (II) A) Approving the Sale of the Debtors' Resident Program Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts; and (III) Granting Related Relief* [D.I. 142] (the "<u>Sale Motion</u>").  In support hereof, the AAMC and the ECFMG respectfully state as follows:

---

[1]    The AAMC and the ECFMG reserve their rights to amend or supplement this Limited Objection at a later date.

## I. INTRODUCTION

1.     The AAMC is a not-for-profit association dedicated to transforming health care through innovative medical education, cutting-edge patient care, and groundbreaking medical research. Its members are 154 accredited U.S. and 17 accredited Canadian medical schools; nearly 400 major teaching hospitals and health systems; and more than 80 academic societies. Through these institutions and organizations, the AAMC serves the leaders of America's medical schools and teaching hospitals and their more than 173,000 full-time faculty members, 89,000 medical students, 129,000 resident physicians, and 60,000 graduate students and postdoctoral researchers in the biomedical sciences.  Hahnemann University Hospital ("Hahnemann") is a member of the AAMC.

2.     The ECFMG is a private non-profit organization that promotes quality medical education and health care worldwide.  ECFMG and its foundation, based in Philadelphia, are leading experts on the world's medical education systems and their graduates, the authenticity of physician credentials, and the assessment of physicians.  ECFMG is the sole agency that evaluates the qualifications of international medical graduates ("IMGs") before they enter programs of graduate medical education ("GME") at teaching hospitals across the United States. Each year, ECFMG certifies approximately 10,000 IMGs for entry into U.S. GME programs. ECFMG also is the sole agency designated by the U.S. Department of State to sponsor foreign national physicians in J-1 visa status to participate in U.S. GME programs.  ECFMG provides J-1 visa sponsorship for more than 11,000 residents,[2] including 55 trainees at Hahnemann.

3.     The AAMC and the ECFMG submit this Limited Objection to the Sale Motion in order to highlight for the Court their concerns regarding certain significant issues facing the

---

[2]     The term "resident" or "medical resident" is intended to include fellows who are physicians who have completed training in their initial specialty and have continued training in a subspecialty.

medical residents in this bankruptcy case, which are impacted by the sale of their Resident Program Assets.[3]

## II. LIMITED OBJECTION

4.       The AAMC and the ECFMG have reviewed the Stalking Horse Sale Agreement and have two specific concerns.

## A.       Tail Insurance

5.       First the AAMC and the ECFMG fear that the tail insurance available to cover the Continuing Residents (as such term is defined in the Stalking Horse Sale Agreement) may be insufficient to adequately protect such residents.   Without proper tail coverage, Continuing Residents will be exposed personally to liabilities relating to patients seen during their tenure at Hahnemann.  The Stalking Horse Sale Agreement does not provide sufficient information on the nature and extent of the tail coverage it will provide to the Continuing Residents.  Accordingly the AAMC and the ECFMG object to the sale to the extent the tail coverages being offered is inadequate.

6.       Typically, each resident will have an employment contract that specifies the insurance coverages to be provided by the employing hospital.  It is not uncommon for such a contract to provide that "upon expiration or termination of this Agreement or the expiration or cancellation of the insurance, Provider shall purchase either an unlimited reporting endorsement 'Tail Coverage' from the prior insurer, or 'Prior Acts' coverage from the subsequent insurer with a retroactive date on or prior to the Effective Date of the Agreement, and in either event, for a period extending through the expiration of all statutes of limitation applicable to medical incidents occurring during Term."  The AAMG and the ECFMG are not aware of the specific

---

[3]       Capitalized terms not defined herein shall have the meaning ascribed to such term in the Sale Motion.

terms of the agreements between Hahnemann and its residents but ask that at a minimum, this Court require Hahnemann to honor and satisfy the terms of its residents' contracts, as they relate to insurance coverage.

7.    The AAMC and the ECFMG are focused on ensuring that all current residents and past residents who still may be subject to liability for actions that occurred during their training at Hahnemann receive sufficient tail coverage.  Therefore, the AAMC and the ECFMG also believe that the Debtors should be required to provide more detail on the nature and extent of the tail coverage that they will provide to those residents who do not meet the definition of Continuing Residents and those who have previously completed their residency programs at Hahnemann.  These residents and the Continuing Residents should be treated in the same manner and should receive adequate tail coverage.

8.    The Accreditation Council for Graduate Medical Education (the "ACGME") has published Institutional Requirements that dictate the nature of the insurance that a sponsoring institution must provide.  Specifically, the Institutional Requirements provide that:

> The Sponsoring Institution must provide residents/fellows with professional liability coverage, including legal defense and protection against awards from claims reported or filed during participation in each of its ACGME-accredited programs, or after completion of the program(s) if the alleged acts or omissions of a resident/fellow are within the scope of the program(s).

See ACGME Institutional Requirements, Section IV.E.1.  Further, the Institutional Requirements require that the Sponsoring Institution provide official documentation of the details of liability coverage upon request of the individual. *Id*. at IV.E.2.  Both of these requirements are classified as "core" by the ACGME.  The Court should require the Debtors to make full disclosure of the tail insurance they intend to provide to current and former residents who are not Continuing

Residents and to make provision for a post-closure repository of Hahnemann's tail insurance policies.

**B.      Records Retention**

9.      Second, the AAMC and the ECFMG have concerns that the Stalking Horse Sale Agreement does not adequately provide for the retention of residents' records.   The residents who are displaced because of the Hahnemann closure and residents who have completed their training at Hahnemann will need to access their program records, which provide information related to their training and information on the patients they treated while at Hahnemann.  The residents will need access to these records for licensing, credentialing information and other purposes, for many years.  Typically a resident would reach out to their training program at the future time of need to access the necessary information.  But with Hahnemann being closed, that will not be an option.

10.      The Stalking Horse Sale Agreement provides only that the Stalking Horse Bidder will retain records for a period of six years from the closing of the sale, or such shorter period that records are required to be retained by applicable law.  *See* Stalking Horse Sale Agreement at §6.5.  To avoid a situation where residents lose access to their records, the AAMC and ECFMG request that the Court order the Stalking Horse Bidder (and any other bidder) to turn over the Continuing Residents' records to the Federation of State Medical Boards (the "FSMB") to hold indefinitely.  To the extent the Debtor is not planning to do the same for those residents who do not meet the definition of Continuing Residents or those who have previously completed their residency programs at Hahnemann, the AAMC and ECFMG respectfully request that they be required to do so.

11.     The Federation of State Medical Boards ("FSMB") maintains a  repository for residents' records for closed hospitals.  They charge a nominal fee for their services.  Requiring the Debtor and the Stalking Horse Bidder (and any other bidder) to transfer residents' records to the FSMB would be the safest way to ensure that these important records are maintained and accessible for the duration of the residents' careers.  Therefore, the AAMC and the ECFMG respectfully request that the Debtor and the Stalking Horse Bidder (and any other bidder) be required, at their cost, to transfer residents' records to the FSMB to hold indefinitely.

### III. CONCLUSION

12.     The AAMC and the ECFMG recognize that there are few options other than to close the hospital and sell the Resident Program Assets.  The AAMC and the ECFMG do not object to the sale generally.  In submitting this Limited Objection, they want to ensure that all possible steps are taken to reduce any negative implication the sale may have on the residents and they want to make sure that  costs of closure are appropriately borne by either the Debtors or the winning bidder; not the residents.  Accordingly, the AAMC and the ECFMG ask that: (i) Stalking Horse Sale Bidder (and any other bidder) be required to disclose additional information on the nature and extent of the tail coverage it will provide to the Continuing Residents; (ii) the terms of the Stalking Horse Sale Agreement (and any other sale agreement proposed to be approved) be modified to provide that the Stalking Horse Bidder (and any other bidder) will provide sufficient tail insurance coverage, if the disclosed amount and duration proves insufficient, (iii) in conjunction with the sale, Hahnemann be required to honor and satisfy the terms of its residents' contracts, as they relate to insurance coverage for current and former residents who are not Continuing Residents; (iv) the Debtors be required to make full disclosure of the tail insurance they intend to provide to current and former residents who are not

6

Continuing Residents; (v) the Debtors make provision for a post-closure repository of Hahnemann's tail insurance policies at their cost; (vi) that the Court order the Stalking Horse Bidder (and any other bidder) to turn over the Continuing Residents' records to the FSMB and pay any costs associated therewith and (vii) in conjunction with the sale, the Court require the Debtor to turn the records of those residents who are not Continuing Residents over to the FSMB, and pay any costs associated therewith.

WHEREFORE, the AAMC and the ECFMG respectfully request that the Court grant the relief requested herein and such other and further relief as the Court deems just and warranted.

Dated:  August 5, 2019
Wilmington, Delaware

BAYARD, P.A.

*/s/ Justin R. Alberto*
Justin R. Alberto (No. 5126)
Sophie E. Macon (No. 6562)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: jalberto@bayardlaw.com
         smacon@bayardlaw.com

-and-

DENTONS US LLP
Oscar N. Pinkas (*pro hac vice* pending)
Lauren Macksoud (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York, 10020
Telephone: (212) 768–6700
Facsimile: (212) 768–6800
Email: oscar.pinkas@dentons.com
         lauren.macksoud@dentons.com

*Counsel for the AAMC and the ECFMG*

112925772