# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) |
| | ) Joint Administration Requested |
| Debtors. | ) |
| | ) Re: Docket No. 142 |
| | ) Hearing Date: August 9, 2019 |

## LIMITED OBJECTION OF MIDCAP FUNDING IV TRUST IN RESPONSE TO DEBTORS' MOTION FOR SALE OF RESIDENT PROGRAM ASSETS

MidCap Funding IV Trust, acting in its capacity as administrative agent for MidCap Funding IV Trust and MidCap Financial Trust (successor-by-assignment to MidCap Funding H Trust), the Debtors' prepetition lenders (collectively, the "**Prepetition Agent**"), and MidCap Funding IV Trust (successor-by-assignment to MidCap Financial Trust), acting in its capacity as administrative agent for MidCap Funding IV Trust (successor-by-assignment to MidCap Financial Trust), the Debtors' post-petition DIP lender (collectively, the "**DIP Agent**", and together with the Prepetition Agent, "**MidCap**"), by and through its undersigned counsel, file this statement in response to Debtors' motion to sell, among other things, their resident program assets to a stalking horse bidder (Dkt. No. 142, the "**Motion**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

## JURISDICTION

1. These matters constitute core proceedings pursuant to 28 U.S.C. § 157(b) and Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On June 30, 2019 and July 1, 2019 (the "**Petition Date**"), each of the captioned debtors (together, the "**Debtors**") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et*., *seq*. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

**A.     The MidCap Loans.**

3. Each of the Debtors, as well as certain non-debtor entities,[2] is a "Credit Party" under a Credit and Security Agreement dated January 11, 2018 with the Prepetition Agent, which subsequently was amended on September 20, 2018 (as amended, the "**Prepetition Credit Agreement**"), with the Prepetition Agent and the lenders from time to time party thereto.

4. The Prepetition Credit Agreement provides for credit facilities consisting of: (i) a revolving loan facility of up to $100 million (the "**Prepetition Revolving Loan**"); and (ii) a term loan facility in the original principal amount of $20 million (the "**Prepetition Term Loan**", and

---

[2] The borrowers under the Prepetition Credit Agreement (as amended) are St. Christopher's Healthcare, LLC, CCH, PAHS, Physicians Clinical Network, LLC, Philadelphia Academic Medical Associates, LLC, HPS of PA, LLC, SCHC Pediatric Associates, LLC, St. Christopher's Pediatric Urgent Care Center, LLC, StChris Care at Northeast Pediatrics, LLC, SCHC Pediatric Anesthesia Associates, LLC, TPS of PA, LLC, TPS II of PA, LLC, TPS III of PA, LLC, TPS IV of PA, LLC, TPS V of PA, LLC and Physician Performance Network of Philadelphia, LLC.

together with the Prepetition Revolving Loan, the "**Prepetition Credit Facility**"). As of the Petition Date, the principal amounts outstanding under the Prepetition Revolving Loan and the Prepetition Term Loan were approximately $38.6 million and $20 million, respectively.

5. The Borrowers' obligations under the Prepetition Credit Facility are secured by, among other collateral, a security interest in substantially all of the Borrowers' assets, including account receivable, general intangibles (including payment intangibles) and all of the Debtors' contracts and license agreements, to the extent permitted by law.

6. Pursuant to an Interim Order entered by this Court on July 12, 2019 (Dkt. No. 172), the Debtors were authorized to enter into that certain First Priority Secured Priming Super-Priority Debtor In Possession Credit And Security Agreement (the "**DIP Credit Agreement**") with the DIP Agent and the lenders from time to time party thereto. The obligations of the Debtors under the DIP Credit Agreement are secured by a security interest in substantially all of the Debtors' assets, including account receivable, general intangibles (including payment intangibles) and all of the Debtors' contracts and license agreements, to the extent provided by law.

**B.    Debtor's Motion to Sell Residents Program Assets.**

7. On July 9, 2019, Debtors filed the Motion, in which they requested, among other things, to sell certain assets. (Dkt. No. 142.)

8. Specifically, in the Motion the Debtors seek to sell "**Residents Program Assets**", which include Center City Healthcare, LLC's ("**Hahnemann**") National Provider Identifiers and Medicare provider number and agreement (collectively, the "**Medicare Provider Agreement**")[3],

---

[3]    The Third Circuit has recognized that provider agreements are executory contracts. See In re Univ. Med. Ctr., 973 F.2d 1065, 1077 (3d Cir. 1992).

the Pennsylvania Department of Health license to operate an acute care hospital issued to Hahnemann (such licenses, together with the Medicare Provider Agreement, the "**Resident Program Permits**"), and Hahnemann's programs for training residents.

9. The Medicare Provider Agreement is one of the Debtors' most significant and valuable contracts because it provides Debtors with the right and ability to receive payments from the federal government for medical services.

10. On July 15, 2019, MidCap filed a statement and reservation of rights (Dkt. No. 199.), wherein MidCap asserted the following: (1) MidCap has a valid security interest in the Debtors' Residents Program Assets; (2) the proceeds of the Debtor's accounts receivable and payment intangibles collected after the sale of the Residents Program Assets must continue to flow into the existing lock boxes because such proceeds are MidCap's first priority collateral; (3) access to the Purchaser's records must be granted to the Debtors' or their agent, as necessary, in order to continue to bill and collect accounts receivable and payment intangibles; and (4) MidCap has a security interest in that certain $500,000 payment to Tower Health that was made on June 28, 2019 (the "**$500,000 Payment**").

11. On July 19, 2019, the Court entered an order (Dkt. No. 249) establishing, among other things, bidding procedures relating to the sale of the Debtor's resident program assets, establishing procedures relating to the assumption and assignment of certain executory contracts, and scheduling a hearing to consider the proposed sale. All of MidCap's objections to the bidding procedures were preserved for the Debtor's Motion to sell the Residents Program Assets.

12. Also on July 19, 2019, Debtors filed a certification proposing a stalking horse asset purchase agreement (the "**Asset Purchase Agreement**") with respect to the sale of the Residents Program Assets. (Dkt. No. 246, ¶ 4, Ex. A).

13. The Court scheduled a hearing concerning the sale of the Debtors' Residents Program Assets to be held on August 9, 2019. (Dkt. No. 249, ¶ 29.)

14. While MidCap does not object to the sale of the Residents Program Assets, MidCap does object to: (1) any sale that does not involve payment of the sale's proceeds to MidCap at the closing, (2) any sale that does not include the language to protect the ability of the Seller or an agent of Seller to continue to collect accounts receivable and payment of intangibles received after the closing on account of services rendered or goods sold prior to the closing; and (3) any sale that does not involve transferring the proceeds of the $500,000 Payment to MidCap at closing, unless it can be established that such proceeds have already been transferred to MidCap.

**MidCap Objects to the Sale to the Extent that Proceeds are Not Paid to MidCap at Closing**

15. MidCap has a fully perfected first priority lien against and security interest in the Residents Program Assets.

16. If any of the Residents Program Assets are sold, then MidCap will automatically have a first lien security interest on the proceeds of such assets.

17. As a result, MidCap objects to any sale of the Residents Program Assets that does not provide for MidCap's lien to attach to the proceeds therefrom and for the proceeds to be paid to MidCap at closing.

18. MidCap recognizes that a portion of the proceeds from the sale of the Residents Program Assets, known as the Escrow Amount, will be placed into an Escrow Account. While MidCap has a security interest in the Escrow Amount, it does not object to the funds going into the Escrow Account and not being paid at closing to MidCap. However, the Escrow Agreement must explicitly recognize that the Escrow Amount is subject to the MidCap's first priority

security interest and that any portion of the Escrow Amount remaining on the anniversary date of the Closing should be released to MidCap rather than the Seller if any of MidCap's claims against the Debtors have not been paid in full.

**MidCap Objects to Certain Deficiencies in the Proposed Asset Purchase Agreement**

19.     MidCap has a security interest in, among other things, all payments from the Medicare reimbursements or adjustments, patient accounts receivable, payor/contractor accounts receivable, and all other accounts receivable for services rendered or goods sold prior to closing of the sale of the Residents Program Assets (collectively, "**Accounts Receivable**").

20.     Payments received by the Seller from Medicare pursuant to the Medicare Provider Agreement are assignments of payments made by Medicare to hospital patients who are entitled to receive disbursements from a federal trust account established to provide coverage to such beneficiaries for medical care and, thus, classified as payment intangibles.

21.     The proposed Asset Purchase Agreement does not adequately protect MidCap's security interest in the payment intangibles that exist prior to the closing of the sale for three primary reasons.

22.     *First*, the Asset Purchase Agreement does not clearly state that all Accounts Receivable of the Seller from whatever the source, are "Excluded Assets"[4], drawing into question whether Purchaser also is acquiring the payment intangibles arising from the Medicare Provider Agreement it purchases from the Seller.

---

[4]   All capitalized terms not defined herein shall have the meaning prescribed to them under the Asset Purchase Agreement.

23. *Second*, the Asset Purchase Agreement does not contain an express agreement that the Seller may continue, after the sale to Purchaser, to submit bills under the Medicare Provider Agreement with respect to Accounts Receivable.

24. *Third*, the Asset Purchase Agreement does not clearly state that the Seller and its billing agent shall have reasonable access after closing to books and records as may be necessary to continue to bill and collect the Accounts Receivable.

25. In order to address these deficiencies, MidCap requests that a new Section 6.11 be added into the Asset Purchase Agreement and read as follows:

> Nothing set forth herein shall be deemed to limit in any way (i) Seller's right, title and interest in Seller's cash and patient accounts receivable, payor/contractor accounts receivable, Medicare reimbursements or adjustments and all other accounts receivable (collectively, "Accounts Receivable") for services rendered or goods sold prior to the Closing Date, which cash and Accounts Receivable remain the property of Seller as Excluded Assets and shall be reimbursed to Seller if received by Purchaser nor (ii) Seller's ability to complete any remaining billing for services rendered or goods sold prior to the Closing Date under Seller's Medicare provider number. Purchaser agrees that (i) notwithstanding receipt by Purchaser of its "tie in" notice with respect to Seller's Medicare provider agreement, Seller may continue to bill under Seller's Medicare provider agreement for services rendered or goods sold prior to the Closing Date and (ii) Purchaser will provide Seller (or Seller's billing agent) with reasonable access to the Participating Provider Agreement, Books and Records and Governmental Authorizations as may be necessary in order for Seller to facilitate billing and collecting for services furnished to Medicare beneficiaries by Seller.

26. In order to protect its rights in its collateral, MidCap objects to any sale that does not contain the language cited above in the Asset Purchase Agreement.

**MidCap Objects to the Sale to the Extent that Proceeds of the $500,000 Payment are Not Paid to MidCap at Closing.**

27. In the Motion, Debtors state that on June 28, 2019 – two days prior to the Petition Date –$500,000 was paid by the stalking horse bidder identified in the Motion as consideration for a Medicare GME Affiliation Agreement. (See Dkt. No. 142, ¶ 25).

28. Because MidCap has a first priority lien against substantially all of the Debtors' assets, any proceeds of the $500,000 Payment must be transferred to MidCap.

29. Therefore, MidCap objects to any sale that does not involve payment of such proceeds to it at closing, unless it can be established that such proceeds have already been transferred to MidCap.

## **RESERVATION OF RIGHTS.**

30. MidCap expressly reserves its rights to raise additional objections to the Motion and to object to the sale of the Resident Program Assets and the manner in which proceeds from the sale of such assets are distributed.

STRADLEY RONON STEVENS & YOUNG, LLP

*/s/ Joelle E. Polesky*
Joelle E. Polesky (I.D. No. 3694)
1000 N. West Street, Suite 1279
Wilmington, DE 19801
Telephone: (302) 295-4856
Facsimile: (302) 295-4801
Email: jpolesky@stradley.com

OF COUNSEL

Gretchen M. Santamour (*pro hac vice*)
Deborah Reperowitz (*pro hac vice*)
Mark J. Dorval (*pro hac vice*)
Joseph W. Catuzzi (*pro hac vice*)
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (302) 295-4856
Facsimile: (302) 295-4801

Kathryn L. Stevens (*pro hac vice*)
David L. Kane (*pro hac vice*)
222 North LaSalle Street
Chicago, IL 60601
Telephone: (312) 609 7803

*Attorneys for creditors MidCap Funding IV Trust and MidCap Financial Trust*

**CERTIFICATE OF SERVICE**

I, Joelle E. Polesky, Esquire certify that on August 5, 2019, I caused to be filed a true and correct copy of the *Limited Objection of Midcap Funding IV Trust in Response to Debtors' Motion for Sale of Resident Program Assets* (the "**Limited Objection**") with the United States Bankruptcy Court for the District of Delaware via the CM/ECF system, and caused a copy of the Reservation of Rights to be served via electronic means on all parties that have requested service of process in this case.

On August 5, 2019, I also caused a true and correct copy of the Limited Objection to be served via first class, United States mail, postage pre-paid on the following:

Matthew R. Brooks
Troutman Sanders LLP
600 Peachtree Street NE
Suite 5200
Atlanta, GA 30308

Douglas Carlson
Douglas Carlson LLC
330 N. Wabash
#3300
Chicago, IL 60611

Richard A. Chesley
DLA Piper LLP (US)
444 West Lake Street
Suite 900
Chicago, IL 60606

Louis Curcio
Troutman Sanders LLP
875 Third Avenue
New York, NY 10022

Jeffrey Cutler
PO Box 2806
York, PA 17405

Nicole L. Greenblatt
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022-4611

Stephen C. Hackney
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Phillip Khezri
Arent Fox LLP
1301 Avenue of the Americas
New York, NY 10019

Suzanne Koenig
SAK Management Services, LLC
300 Saunders Road, Suite 300
Riverwoods, IL 60015

Robert Lapowsky
Stevens & Lee
620 Freedom Business Center
Suite 200
King of Prussia, PA 19046

Mitchell Malzberg
Law Offices of Mitchell J. Malzberg, LLC
6 E. Main Street, Suite 7
PO Box 5122
Clinton, NJ 08809

Rachel Jaffe Mauceri
Morgan Lewis Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

Lawrence G. McMichael
Dilworth Paxson LLP
1500 Market Street
Suite 3500E
Philadelphia, PA 19102

Jessica Mikhailevich
Troutman Sanders LLP
875 Third Avenue
New York, NY 10022

Omni Management Group, Inc.
5955 DeSoto Avenue
Suite 100
Woodland Hills, CA 91367

Gregory Francis Pesce
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Nancy A. Peterman
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601

Lisa M. Rhode
Office of Attorney General
1600 Arch Street
Suite 300
Philadelphia, PA 19103

Phillip D. Berger
919 Conestoga Road
Building 3, Suite 114
Rosemont, PA 19010

Kelly Ann Cody
Self Inc. Womens Shelter
1305 W. Susquehanna Ave.
Philadelphia, PA 19122

Med One Capital Funding, LLC
c/o Ray Quinney & Nebeker, P.C.
36 South State Street
14th Floor
Salt Lake City, UT 84111
Attn.: David H. Leigh

Tracy M. Ohm
Stinson LLP
1150 18th Street N.W.
Suite 800
Washington, DC 20036

Oscar N. Pinkas
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089

Ira Neil Richards
David Smith
Schnader Harrison Segal & Lewis LLP
1600 Market Street
Suite 3600
Philadelphia, PA 19103-7286

Shades of Green, Inc.
1777 South Pennsylvania Avenue
Morrisville, PA 19067

William J. Wickward Jr.
2179 East Lyon Station Road
Creedmoor, NC 27522

    STRADLEY RONON STEVENS & YOUNG, LLP

    */s/ Joelle E. Polesky*
    Joelle E. Polesky (I.D. No. 3694)
    1000 N. West Street, Suite 1279
    Wilmington, DE 19801
    Telephone: (302) 295-4856
    Facsimile: 302-295-4801
    Email: jpolesky@stradley.com

Dated: August 5, 2019    *Attorneys for creditors MidCap Funding IV Trust*