**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al*.,[1]<br><br>　　　　　　　Debtors. | Chapter 11<br><br>Case No. 19-11466 (KG)<br><br>Jointly Administered<br><br>Hearing Date: Sept. 23, 2019 at 1:00 p.m. ET<br>Objection Deadline: Sept. 13, 2019 at 4:00 p.m. ET |

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES TO THE DEBTORS' MOTION FOR ENTRY OF (A) AN ORDER (I) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OR SALES OF SUBSTANTIALLY ALL ASSETS OF ST. CHRISTOPHER'S HEALTHCARE, LLC AND CERTAIN RELATED DEBTORS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, (III) ESTABLISHING PROCEDURES IN CONNECTION WITH THE SELECTION OF AND PROTECTIONS AFFORDED TO ANY STALKING HORSE PURCHASERS, AND (IV) GRANTING RELATED RELIEF; AND (B) ONE OR MORE ORDERS (I) APPROVING THE SALES OR OTHER ACQUISITION TRANSACTIONS FOR THE ASSETS, (II) AUTHORIZING THE SALES FREE AND CLEAR OF ALL ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

ACE American Insurance Company, Federal Insurance Company, and Great Northern Insurance Company (and together with each of their affiliates and successors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this Reservation of Rights (the "Reservation of Rights") to the *Debtors' Motion for Entry of (A) an Order (I) Scheduling a*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

*Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Debtors and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to Any Stalking Horse Purchasers, and (IV) Granting Related Relief; and (B) One or More Orders (I) Approving the Sales or Other Acquisition Transactions for the Assets, (II) Authorizing the Sales Free and Clear of all Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 205] (the "Motion"),[2] and in support of the Reservation of Rights, the Chubb Companies respectfully state as follows:

I. **BACKGROUND**

    A. **The bankruptcy case.**

1. On June 30, 2019 (the "Petition Date"), the Debtors filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. On information and belief, the Debtors have continued in possession of their assets and operation of their businesses pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. On July 16, 2019, the Debtors filed the Motion.

---

[2] Any capitalized terms used but not defined herein shall have the meanings attributed to them in the Motion and any exhibits thereto.

DM3\6011223.1

4. Pursuant to the Motion, the Debtors sought approval of the Bidding Procedures attached as Exhibit 1 to Exhibit A to the Motion and an order authorizing and approving Debtors' entry into a Sale of substantially all of certain of the Debtors' assets with any Successful Bidder at the Auction.

5. The Bidding Procedures were approved by the Court on July 26, 2019 [Docket No. 301].

6. As of the date that the Motion was filed, there was no stalking horse purchaser for the Assets that are subject to the proposed Sale, and through the Motion, the Debtors also sought authority to designate a Stalking Horse Bidder on or before August 27, 2019.

7. Upon information and belief, a Stalking Horse Bidder has not yet been identified, and therefore, as of the date hereof, no proposed asset purchase agreement has been filed of record to provide the terms of any possible Sale including whether, for example, the Debtors would seek to transfer certain insurance policies or any proceeds thereof to a Successful Bidder.

**B.    The Insurance Programs.**

8. Prior to the Petition Date, ACE American Insurance Company (together with its affiliates and successors, the "ACE Companies") issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "ACE Policies") to the Debtors, or their predecessors, as named insureds.

9. Pursuant to the ACE Policies (together with any agreements related thereto, the "ACE Insurance Program"), the ACE Companies provide, *inter alia*, directors and officers, fiduciary liability, employment practices liability, privacy protection, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the

DM3\6011223.1

Debtors, are required to pay to the ACE Companies certain amounts, including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "ACE Program Obligations").

10. Prior to the Petition Date, Federal Insurance Company and Great Northern Insurance Company (collectively, the "Federal Companies") issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Federal Policies" and, together with the ACE Policies, the "Policies") to the Debtors, or their predecessors, as named insureds.

11. Pursuant to the Federal Policies (together with any agreements related thereto, the "Federal Insurance Program," and collectively with the ACE Insurance Program, the "Insurance Programs"),[3] the Federal Companies provide, *inter alia*, certain package, automobile liability, financial institution portfolio, umbrella, workers' compensation, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein; and the insureds, including one or more of the Debtors, are required to pay to the Federal Companies certain amounts, including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Federal Insurance Program (the "Federal Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").

---

[3] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to, amend, modify or waive any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

12. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## II. RESERVATION OF RIGHTS[4]

13. The Chubb Companies cannot determine how the Debtors propose to treat the Insurance Programs (and their proceeds) in connection with the proposed Sale, and therefore reserve their rights with respect to any Sale to the extent that the Debtors seek to assume and assign or otherwise transfer either of the Insurance Programs, including certain proceeds thereof. The Chubb Companies assert that (i) the Insurance Programs must each be transferred, if at all, as a whole; (ii) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Programs, the Insurance Programs cannot be assigned without the consent of the Chubb Companies, which consent has not been sought or given; and (iii) given the potential bifurcated treatment of the Debtors' insurance coverage, the Chubb Companies seek an order that the Chubb Companies are not responsible for determining which entity, as between the Debtors and any Successful Bidder, is entitled to coverage or proceeds under the Insurance Programs.

### A. **The Insurance Programs and the obligations thereunder are indivisible.**

14. While the terms of any Sale are unknown at this time, to the extent that the Debtors purport to transfer some portion of either of the Insurance Programs (but not the entirety of such Insurance Program) to the Successful Bidder, such a potential split of the Insurance Programs is improper.

---

[4] The terms of any Sale pursuant to the Motion are not yet known. Accordingly, and in order to put all bidders on notice of the Chubb Companies' position with respect to any attempt to transfer any portion of the Insurance Programs pursuant to the Sale, the Chubb Companies include sections B and C in this Reservation of rights.

15. The Insurance Programs, which are integrated insurance programs, must be read, interpreted and enforced together. *See Physiotherapy Holdings*, 2015 U.S. Dist. LEXIS 90367, at *17-18, 538 B.R. 225 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties"); *In re Aneco Elec. Constr.*, 326 B.R. at 202.

16. Furthermore, it is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("Thus, the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992), *superseded by statute on other grounds*; *Lightfoot v. Borkon (In re Lightfoot)*, 399 B.R. 141, 149 (Bankr. E.D. Pa. 2008) (stating "[a]ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *Chrysler Corp. v. Monroeville Dodge (In re Monroeville Dodge)*, 166 B.R. 264, 267 (Bankr. W.D. Pa. 1994) (same); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part"); *In re Morande Enters.*, 335 B.R. 188, 192 (Bankr. M.D. Fla. 2005) (stating that

6
DM3\6011223.1

the "law is clear that an executory contract may not be assumed in part and rejected in part") (citation omitted); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (stating "[i]t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*'") (citation omitted).

17. Any purported transfer of either of the Insurance Programs and/or the obligations thereunder must be in its entirety, and therefore the Chubb Companies reserve their rights with respect to the Motion to the extent that any Sale to any Successful Bidder contemplates an improper split of the Insurance Programs.

### B. The Insurance Programs cannot be transferred without the prior written consent of the Chubb Companies, which has not been given.

18. If the Debtors seek to assign the Insurance Programs in connection with any Sale, such assignment cannot occur without the express written consent of the Chubb Companies.

19. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

20. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g.*, *Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred

without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

21.   Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs cannot be assigned without the consent of the Chubb Companies.

22.   Furthermore, as of the filing hereof, no Stalking Horse Bidder has been identified, the Auction has not occurred, and the identity of the Successful Bidder, if any, is unknown.

---

[5]   Some courts have found that insurance policies may be assigned to a trust created under § 524(a) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g., In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust"); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case involves neither an assignment to a trust created pursuant to § 524(a) nor an assignment under a plan.

23. Accordingly, the Chubb Companies are not in a position to assess whether any Successful Bidder would satisfy the Chubb Companies' credit and underwriting criteria.

24. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment of the Insurance Programs, the Debtors and the assignee will be required to execute an assumption agreement, in form and substance acceptable to the Chubb Companies. As the ultimate assignee is not yet known, this agreement has not yet been negotiated, let alone executed.

25. Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Programs, the Chubb Companies reserve their rights with respect to any and all such assignments at this time.

C. **The Chubb Companies are not required to make coverage determinations between the Debtors and any Successful Bidder.**

26. Because the terms of any Sale are unknown at this time, the Chubb Companies cannot determine whether the Debtors intend to transfer some portion of the Insurance Programs or any proceeds thereunder to the Successful Bidder.

27. While it is improper, as discussed above, to split the Insurance Programs, any transfer of only a certain (as yet unspecified) portion of the Insurance Programs to the Successful Bidder is likely to result in coverage disputes between the Successful Bidder and the Debtors.

28. To the extent that the Chubb Companies agree to the assignment of the Insurance Programs, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Successful Bidder, which entity is entitled to coverage thereunder in connection with a particular claim. Similarly, the Chubb Companies should not be put in the

position of determining, as between the Debtors and the Successful Bidder, which entity is entitled to proceeds under the Insurance Programs.

WHEREFORE, the Chubb Companies reserve their rights with respect to the Sale.

Dated: August 9, 2019

Respectfully submitted,

*s/ Drew S. McGehrin*
Drew S. McGehrin (DE 6508)
DUANE MORRIS LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
Email: DSMcGehrin@duanemorris.com

-and-

Wendy M. Simkulak, Esquire
Catherine B. Heitzenrater, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email:wmsimkulak@duanemorris.com
Email: cheitzenrater@duanemorris.com

*Counsel for the Chubb Companies*

DM3\6011223.1