## Exhibit A

**(Wilen Declaration)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**DECLARATION OF ALLEN WILEN IN SUPPORT OF DEBTORS'
OBJECTION TO MOTION OF TENET BUSINESS SERVICES
CORPORATION AND CONIFER REVENUE CYCLE SOLUTIONS, LLC FOR
ENTRY OF AN ORDER (I) COMPELLING PAYMENT OF ALL UNPAID
POSTPETITION AMOUNTS PURSUANT TO 11 U.S.C. § 503(B)(1) OR, IN THE
ALTERNATIVE, (II) GRANTING RELIEF FROM THE AUTOMATIC STAY
TO THE EXTENT NECESSARY TO TERMINATE THE TSA AND MSA**

I, Allen Wilen, hereby declare the following, under the penalty of perjury:

1.      I am the Chief Restructuring Officer ("**CRO**") of Philadelphia Academic Health System, LLC and certain of its subsidiaries, each a debtor and debtor-in-possession (each, individually, a "**Debtor**" and, collectively, the "**Debtors**") in the above-captioned chapter 11 cases.

2.      I have served as CRO for the Debtors since April 8, 2019.  In such capacity, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.  I am above 18 years of age, and I am competent to testify.

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

3.    I submit this declaration in support of the *Debtors' Objection to Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C. § 503(b)(1) or, in the Alternative, (II) Granting Relief from the Automatic Stay to the Extent Necessary to Terminate the TSA and MSA* (the "**Objection**").[2]

4.    Except as otherwise indicated herein, all facts set forth in this declaration are based on my personal knowledge, my discussions with other members of the Debtors' management team and the Debtors' advisors, and my review of the relevant documents and information concerning the Debtors' operations, financial affairs, and refinancing and restructuring initiatives.  If called upon to testify, I could and would testify competently to the facts set forth herein.

## I.    The Debtors' Need for the Tenet Parties' Services is Diminishing

5.    As reflected in previous pleadings filed with the Court, significant steps have been taken since the outset of these cases to wind down HUH's operations, and the Debtors expect to close HUH by early September 2019.  Following the Petition Date, the average in-patient census at HUH decreased to 36 patients, as compared to 184 in-patients in the month preceding the bankruptcy filing, and 203 patients in May 2019.  On July 17, 2019, the Debtors ceased admissions at HUH, other than through the emergency department, and, as of the date of this Objection, there are no inpatients at the hospital.  Because Conifer's fees are largely based upon patient billings, the reduced patient volumes at HUH stemming from the wind-down will cause a significant reduction in amounts due to Conifer.  More fundamentally, the closure of HUH reduces the value of the Tenet Parties' services, and warrants a reduction in the weekly

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

35745233.1 08/09/2019

amounts to which the Tenet Parties may otherwise be entitled under the TSA and MSA. Likewise, following the closing of a sale of STC and its related practice groups, which sale is projected to close in October 2019, the need, if any, for the Tenet Parties' services would be greatly reduced.

## II.    The Tenet Parties' Sub-Optimal Performance

6.    As detailed below, Tenet and Conifer's sub-optimal performance under the TSA and MSA, respectively, has caused the Debtors' estates to suffer considerable financial harm:

Conifer's Performance:  Among other examples, Conifer's poor performance under the MSA can be categorized as follows:

- o  Collection Failures: Despite Conifer's representations that it performed at a high level in collecting revenue for Tenet, following the Acquisition, Conifer's revenue collection performance has persistently fallen short of goal.  By way of example, Conifer's cash collections in February 2018, just one month after the Acquisition, were $16 million short of that month's goal, at 59.3% of goal. Conifer's cash collections in March 2018 were $9 million short of that month's goal, at 80.6% of goal.  As such, within 60 days after the Acquisition, Conifer's performance cost the Debtors $25 million in lost revenue.  The Debtors never recovered from this deficit during the remainder of 2018 and its recoveries during 2019 have thus far been deficient as well.

- o  Reporting Failures:  Despite repeated follow-up requests, Conifer has failed to provide many of the daily, weekly and monthly reports that it is required to provide to the Debtors under the MSA, including aging reports, reports relating to patients discharged without final bills, point of sale cash collection rates and write-off rate reports.  Conifer's failures to provide clear reporting on these matters, or to provide any such reports whatsoever, creates challenges to the Debtors' operations.  For example, a lack of up-to-date and accurate reporting concerning write-offs for bad debt and Conifer's failures to timely process write-offs for bad debt have impacted the Debtors' availability to borrow funds needed to operate from their secured lender.  The Debtors estimate that Conifer's failure to process requested write-offs of bad debt have cost them $8 million in availability since the Petition Date.

- o  Poor Intake Performance and Technical Denials: Conifer personnel perform patient registration and intake services for the Debtors.  In connection with these services, Conifer's errors in recording information have resulted in denials of payment by third-party payors, which are known as "technical denials."  The losses that the Debtors have incurred as a result of these denials are substantial.

As of early October 2018, for example, HUH and STC were experiencing $40 million in initial or partial pay denials, of which almost $28 million were due to technical denials arising from Conifer errors or omissions. Therefore, nearly two thirds of all claims denials related to technical reasons, for which Conifer was solely responsible.

o  Failure to Follow Up on Zero-Pay Accounts: Conifer has repeatedly failed to follow up on "zero-pay accounts," which are claims pending for more than 60 days with no action by the third-party payor. A review of accounts receivable in October of 2018, for example, revealed $19 million in "zero-pay accounts." Based on their review, the Debtors determined that Conifer had failed to pursue these open matters on a timely basis (which, per industry standards, would have required Conifer to follow-up on open claims within 30-40 days).

o  Failure to Timely File Appeals When claims are initially denied or partially denied, Conifer is obligated to pursue appeals in accordance with the time requirements established by third-party payors. On a number of occasions, Conifer has failed to timely pursue appeals, resulting in several large accounts receivables (each in excess of $1 million) being out of time for further appeal. In other instances, Conifer has (i) neglected to take any appeal of the initial determination, (ii) cryptically flagged claims as "legal" without sufficient detail to determine required next steps, and (iii) provided inadequate notice to the Debtors of actions needed to be taken in connection with pending appeals.

o  Further Financial Consequences Stemming from Conifer's Failures: As a consequence of Conifer's failures in revenue cycle performance as outlined above, the dollar value of disputed account receivable files as of February 2019 was $89 million, of which $62 million were either closed or beyond time limits for recovery, with the majority simply having been closed by Conifer.

Moreover, Conifer's rate of first pass/initial denials for 2018 was 16.79% for HUH and 16.44% for STC. Both of these rates exceed significantly the standard industry rates of 12% to 12.5%. These excess denials have resulted in both substantial delays in the receipt of payments and losses of payments in instances where appeals were not timely pursued. Based on the value of the initially denied claims at the Hospitals during 2018, a 12.5% initial denial rate would have generated an additional $7,584,800 for the Debtors.

Tenet Disputes: As described in the First Day Declaration, the Debtors' disputes with Tenet include the following:

o  ASA-Related Disputes. Among other issues, following the Acquisition, disputes arose between the Debtors and Tenet (and the Debtors instituted litigation) with regards to the "Net Working Capital Adjustment" provided for under the ASA, most notably, for overstated amounts of accounts receivable totaling approximately $21 million. The Debtors also learned that approximately $5

million of amounts received by Tenet at closing in order for it to pay certain accounts payable was never in fact paid. These issues resulted in a significant liquidity shortfall that adversely affected the Debtors' operations almost immediately after closing of the Acquisition.

o   <u>TSA Disputes</u>: The Debtors believe that the Tenet IT Platform – upon which the Debtors' operations and ability to provide patient care is highly dependent – is outdated and contains functionality gaps that impair (i) the efficient management of patients and patient data production of standard key performance indicators, (ii) financial management functions, and (iii) revenue cycle, supply chain and other important customary functions.

7.     Given the significant deficiencies in Conifer's performance, the Debtors enlisted Ensemble RCM, LLC ("**Ensemble**") for the period February 2019 through June 2019 to provide revenue cycle services similar to those undertaken by Conifer. In exchange for its services, Ensemble agreed to payment of $150,000 per week, which is substantially less than the approximately $430,000 per week sought by Conifer under the MSA. Notably, even with Ensemble's limited ability to access information on the Tenet IT Platform, the Debtors experienced an increase in cash collections as a result of Ensemble's efforts.

**III.    An Order Granting the Motion would Cause Significant Harm to the Debtors and Other Creditors**

8.     Any order compelling the Debtors to pay immediately the Tenet Parties' asserted post-petition claims would cause immediate and substantial harm to the Debtors' businesses, as well as other creditors and parties in interest, since the Debtors would be required to divert funds budgeted for other critical purposes in order to pay the Tenet Parties' claims. Moreover, as reflected in the DIP budget attached to the Interim DIP Order [D.I. 172], if the Debtors are required to immediately pay the $3.2 million that the Tenet Parties are requesting, the Debtors would likely be forced to shut down operations at the Hospitals on an extremely expedited time frame, which would be disastrous and compromise patient safety. Such a result would also deprive the Debtors' estates of the ability to maximize value for *all* creditors, *including* the Tenet

-5-

Parties, since it would impair the Debtors' efforts to sell STC and its related practice groups as a going concern, for the benefit of their estates and creditors.

9.     Likewise, given the critical role of the Tenet Parties' services in the Debtors' operations, any termination of the TSA and MSA would lead to an abrupt and immediate shut down of operations at the Hospitals, the results of which would be disastrous and risk harm to patients, employees and the community at large.

## IV.    Additional Opportunities to Generate Revenue

10.     For example, as noted above, despite the fact that the Tenet Parties' participation is needed to recover a significant amount due from a third party, the Tenet Parties have thus far declined to cooperate even though their participation would impose minimal burden upon them.

11.     ██████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████.

12.    ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed on August 9, 2019              _/s/ Allen Wilen_____
                                         Allen Wilen
                                         Chief Restructuring Officer

35745233.1 08/09/2019