## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*, [1] | Case No. 19-11466 (KG) Jointly Administered |
| Debtors. | **Hearing Date: September 4, 2019 at 2:00 p.m. EDT** **Objection Deadline: August 28, 2019 at 4:00 p.m. EDT** |

### APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF BERKELEY RESEARCH GROUP, LLC, AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS *NUNC PRO TUNC* TO JULY 22, 2019

The Official Committee of Unsecured Creditors (the "Committee") of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al.*, as debtors and debtors in possession (the "Debtors" or "Center City"), submits this application (the "Application") for an order pursuant to Section 1103 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of the Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the employment of Berkeley Research Group, LLC ("BRG"), as financial advisor to the Committee. In support of this Application, the Committee submits the Declaration of Christopher J. Kearns (the "Kearns Declaration") which is incorporated herein as Exhibit A. In further support of this Application, the Committee respectfully represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

## JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for The District of Delaware,* dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Committee confirms its consent pursuant to Local Rule 9013-l(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      The statutory predicates for the relief sought herein are section 1103(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1.

## BACKGROUND

3.      On June 30, 2019 and July 1, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Cases") with the Court. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. A Patient Care Ombudsman was appointed by the U.S. Trustee on July 3, 2019. No trustee or examiner has been appointed in these Cases.

4.      The Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the Court's *Order Directing Joint Administration of the Debtors' Chapter 11 Cases* (Dkt. No. 70), entered on July 2, 2019.

5.      On July 15, 2019 (the "Formation Date"), the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed seven of the Debtors' unsecured

creditors to serve as members of the Committee. The Committee is presently comprised of the following members: (i) Conifer Revenue Cycle Solutions, LLC, (ii) Medline Industries, Inc., (iii) Veolia Energy Philadelphia, Inc., (iv) Medtronic USA, Inc., (v) Crothall Healthcare, Inc., (vi) Global Neurosciences Institute, LLC, and (vii) Pennsylvania Association of Staff Nurses and Allied Professionals.

6.       On July 22, 2019, the Committee selected BRG to serve as its financial advisor. The Committee has also selected Sills Cummis & Gross P.C. ("Sills") and Fox Rothschild LLP ("Fox" and together with Sills "Counsel") to serve as its counsel.

### REQUESTED RELIEF AND REASONS THEREFOR

7.       The Committee respectfully requests entry of an order pursuant to section 330 and 1103(a) of the Bankruptcy Code authorizing BRG to perform financial advisory services for the Committee that will be necessary during these Cases. The Debtors are a large, complex enterprise, and the Committee requires the services of an experienced financial advisor such as BRG to provide financial advisory services that are critical to the success of the case.

8.       Immediately upon its selection, BRG commenced work on several time-sensitive matters and promptly devoted substantial resources to these Cases pending submission and approval of this Application. In order to allow BRG to be compensated for work performed prior to and after the submission of this Application, the Committee seeks to employ BRG as its financial advisor *nunc pro tunc* to July 22, 2019.

### A.       Qualifications of Professionals

9.       BRG has significant qualifications and experience in providing the services contemplated herein. BRG's Corporate Finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing restructuring,

transaction advisory, litigation support, solvency, and valuation assistance and providing a focus on viable solutions that maximize value for companies and creditors, typically in distressed business settings. BRG has acted as financial advisor, crisis manager, and corporate officer in middle market to large multinational restructurings across a wide array of industries. BRG's services include forensic analysis, plan development and implementation, and advice on sale/merger transactions. Moreover, the professionals at BRG have assisted and advised debtors, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases, including Verity Health System of California; 21st Century Oncology Holdings, Peabody Energy Corporation, Orexigen Therapeutics, Inc., Sabine Oil & Gas Corp., Walnut Hill Medical Center (a.k.a. Walnut Hill Physicians' Hospital, LLC), The Weinstein Company, Aralez Pharmaceuticals, Quicksilver Resources, Inc., Walter Energy, Arch Coal, Real Industry, Inc., M & G USA Corporation, Chrysler (a.k.a. Old Carco LLC), MF Global Holdings, Ltd., Molycorp Inc., Nine West Holdings, Inc., Vitamin World, Inc., Reichhold Holdings US, Inc., Refco, Inc., Tropicana Entertainment, LLC, Spiegel Inc., W.R. Grace, Penson Worldwide, SemGroup, and Nortel.[2]

10.     The Committee chose BRG to act as its financial advisor in these Cases based in large part on the experience outlined above. The Committee believes that BRG's services are necessary to enable the Committee to assess and monitor the Debtors' 363 sales and restructuring efforts in furtherance of the Committee's obligations to protect the interests of and maximize value for all unsecured creditors. Moreover, based on the experience of BRG's professionals in large, complex chapter 11 cases, the Committee believes that BRG is well-qualified to provide such services in a cost-effective, efficient and timely manner.

---

[2] The professionals were employed in certain of these engagements prior to joining BRG.

B.    <u>**Services to be Provided**</u>

11.    BRG will provide such financial advisory services to the Committee as the Committee deems necessary during the course of these Cases. BRG intends to communicate regularly with the Committee and its legal advisors to ensure that the actual financial advisory services performed are appropriate based on the status of the case and needs of the Committee. The services to be rendered by BRG, which services may be subject to modification at the Committee's request, are necessary to enable the Committee to faithfully execute its statutory duties to unsecured creditors. The services to be provided by BRG will be at the request and direction of the Committee, so as to avoid duplicative efforts among the Committee's professionals retained in this case.

12.    Subject to further order of this Court, the Committee has requested that BRG render financial advisory services with respect to the following areas:

> a)    Advise and assist the Committee in its analysis and monitoring of the historical, current and projected financial affairs of the Debtors, including, schedules of assets and liabilities and statement of financial affairs;
>
> b)    Advise and assist the Committee with respect to any debtor-in-possession financing arrangements and/or use of cash;
>
> c)    Scrutinize cash disbursements on an on-going basis for the period subsequent to the commencement of these Cases;
>
> d)    Prepare and issue periodic monitoring reports to enable the Committee to evaluate effectively the Debtors' performance, ability to realize or settle claims for avoidance actions, 363 sale process, and subsequent wind-down activities on an ongoing basis;
>
> e)    Advise and assist the Committee in reviewing and evaluating any court motions (including any assumption or rejection motions or objections thereto), applications, or other forms of relief filed or to be filed by the Debtors, or any other parties-in-interest;

f)      Analyze the Debtors' and non-Debtor affiliates' assets (tangible and intangible) and possible recoveries to creditor constituencies under various scenarios;

g)      Develop strategies to maximize recoveries from the Debtors' assets and advise and assist the Committee with such strategies;

h)      As appropriate and in concert with the Committee's other professionals, analyze and monitor any prior sale processes and transactions and assess the reasonableness of the process and the consideration received;

i)      Monitor Debtors' claims management process, analyze claims, analyze guarantees, and summarize claims by entity;

j)      Advise and assist the Committee in identifying and/or reviewing any preference payments, fraudulent conveyances, and other potential causes of action that the Debtors' estates may hold against insiders and/or third parties;

k)      Review and provide analysis of any bankruptcy plan and disclosure statement relating to the Debtors including, if applicable, the development and analysis of any bankruptcy plans proposed by the Committee;

l)      Advise and assist the Committee in its assessment of the Debtors' employee needs and related costs, to insure they are appropriate in the context of the case;

m)      Analyze both historical and ongoing intercompany and/or related party transactions of the Debtors and non-Debtor affiliates;

n)      Advise and assist the Committee in the evaluation of the Debtors' operations and/or investments;

o)      Attend Committee meetings, court hearings, and auctions as may be required;

p)      Work with the Debtors' tax advisors to ensure that any restructuring or sale transaction is structured to minimize tax liabilities to the estate;

q)      Provide other services as may be requested from time to time by the Committee and its counsel, consistent with the role of a financial advisor.

In addition to services related to these areas, BRG understands that it may be requested to participate, at the Committee's request and to the extent appropriate, in meetings and discussions

with the Committee, the Debtors, and the other parties-in-interest and with their respective professionals.

13.     BRG will coordinate all tasks with Counsel to achieve case efficiencies and avoid duplication of efforts. The Committee believes it is necessary to employ BRG as its financial advisor to render the foregoing professional services. In light of BRG's substantial experience and expertise and the complex nature of the Debtors' business and financial affairs, the Committee believes that BRG is well qualified to advise it in these bankruptcy Cases.

14.     Notwithstanding anything in this Application to the contrary, BRG shall (i) to the extent that it uses the services of independent contractors or subcontractors (the "Contractors") in these Cases, pass-through the cost of Contractors to the Debtors at the same rate that BRG pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks and compensation procedures as required for BRG; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

### C.     Disinterestedness of Professionals

15.     To the best of the Committee's knowledge and based upon and subject to the disclosures made in the Kearns Declaration filed contemporaneously herewith, BRG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and the Committee is satisfied that (i) BRG represents no interest adverse to the Committee, the Debtors, their estates, or any other party in interest in the matters upon which it is to be engaged and that its employment is in the best interest of the estates; (ii) BRG together with its Managing Directors and Directors do not have any financial interest in or business with the Debtors; (iii) BRG has no connection with the U.S. Trustee or any other person employed in the office of the U.S. Trustee; and (iv) BRG has no connection with the bankruptcy judge approving the employment of BRG as

the Committee's financial advisor. BRG has not provided, and will not provide, any professional services to the Debtors, any other creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to these Cases.

        **D.**      **Professional Compensation**

      16.     BRG advised the Committee that it intends to charge its standard hourly rates for professional services rendered, plus reimbursement of actual and necessary expenses incurred by BRG. As discussed and agreed to with the Committee, for purposes of this engagement, BRG has agreed that it will not exceed a blended rate of $495 per hour, i.e. in the event that our total fees divided by actual hours charged (the "Blended Hourly Rate") exceeds 495/hour, BRG will discount its submitted fee applications by the amount the Bended Hourly Rate exceeds $495/hour multiplied by the actual hours charged.  Excluded from the calculation of the Blended Hourly Rate is BRG time related to potential expert testimony in these cases or, to produce any documents, prepare expert reports, or to provide testimony at or in connection with any judicial or administrative proceeding, including causes of action, relating to this matter (pursuant to subpoena, legal process, or otherwise). For the avoidance of doubt, BRG will be reimbursed at standard billing rates for all professional time and expenses, including reasonable attorneys' fees, incurred in preparing for and responding to such requests for production of documents or testimony.

      17.     The hourly rates charged by BRG for the services provided by its personnel differ based upon, among other things, each professional's level of experience, geographic differentials, and types of services being provided. In the ordinary course of business, BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.

18.     BRG has advised the Committee that its fees will be commensurate with the fees charged to its other clients and in other cases of this size (provided such clients are billed hourly). BRG has also advised the Committee that it intends to make application to the Court for allowance of its compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the terms of any order establishing procedures for interim compensation that may be entered in this case. BRG's compensation for services rendered on behalf of the Committee shall be fixed by the Court after due application.

19.     For professional services, fees are based on BRG's standard hourly rates (discounted as discussed above). The proposed rates of compensation, subject to final Court approval, are the customary hourly rates in effect when services are performed by the professionals and paraprofessionals who provide services to the Committee. The current standard hourly rates for BRG personnel that will work on this engagement (before the agreed upon discount) are as follows:

|  | 2019 |
|---|---|
| Managing Director | $775 - $1,050 |
| Director | $595 - $815 |
| Professional Staff | $275 - $720 |
| Support Staff | $135 - $275 |

These standard hourly rates are subject to periodic adjustment, which shall be noted on the invoices for the first time period in which the revised rates become effective. The standard hourly rates for the BRG professionals anticipated to be assigned to this engagement are as follows: Christopher Kearns ($1,050), Haywood Miller ($895), Andrew Cowie ($715), and Albert Jiang ($415). We believe that our standard hourly rates are at or below those of firms we consider our

peers.

20.     Consistent with BRG's policy with respect to its other clients, BRG will charge for all other services provided and for other charges and disbursements incurred in rendering services to the Committee. These customary items include, among other things, travel and lodging expenses, business meals, costs of reproduction, research, communications, our legal counsel, any applicable sales or excise taxes and other direct expenses. Internal costs or overhead cost and document production services (including regular secretarial and word processing time) will not be charged for separately.

21.     BRG will also request compensation for any time and expenses (including, without limitation, reasonable legal fees and expenses, except in the case of legal fees pertaining to any fee defense) that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, including, without limitation, those other than the instant matter, as a result of BRG's performance of these services.

22.     BRG acknowledges that neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to Counsel), shall be liable for the fees, expenses or other amounts payable to BRG.

23.     Regardless of the time and manner of interim compensation, BRG understands that, subject to this Court's orders, BRG will be required to follow the procedures for final allowance of fees at the end of the Cases.

24.     No promises have been received by BRG, nor any employee or independent contractor thereof, as to payment or compensation in connection with these Cases other than in accordance with the provisions of the Bankruptcy Code. Except for internal agreements among the

employees and independent contractors of BRG regarding the sharing of revenue or compensation, neither BRG nor any of its employees or independent contractors has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016.

## **NOTICE**

25.     Notice of this Application is being given to the following parties: (i) the Debtors; (ii) counsel to the Debtors; (iii) the Office of the U. S. Trustee; (iv) counsel for the Debtors' purported secured lenders; and (xiii) all parties that have requested service pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). The Committee respectfully submits that in light of the nature of the relief requested and the circumstances surrounding these Cases, no other or further notice is required or necessary.

## **NO PRIOR REQUEST**

26.     No prior application has been made in this or any other court.

27.     The Committee submits that this Application does not present novel issues of law requiring the citation to any authority, other than the statutes and rules cited above and, accordingly, submits that no brief is necessary.

*[Remainder of the Page Left Intentionally Blank]*

WHEREFORE, the Committee respectfully requests that it be authorized to employ BRG as its financial advisor on the terms set forth herein, *nunc pro tunc* to July 22, 2019, and that BRG be paid such compensation as may be allowed by this Court, and for such other further relief as is just and proper.

Dated: August_____, 2019

Respectfully submitted,

Official Committee of Unsecured Creditors of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al.*

By:_____

Conifer Revenue Cycle Solutions, LLC, Chair
By: Tom W. Arnst, Esq.

12