## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) |  |
| *et al.*,[1] | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | **Related to Docket No. 53** |
|  | ) |  |

## MOTION *IN LIMINE* OF TENET BUSINESS SERVICES CORPORATION AND CONIFER REVENUE CYCLE SOLUTIONS, LLC TO EXCLUDE FROM THE AUGUST 19 HEARING EVIDENCE OR ARGUMENT REGARDING THE DEBTORS' PREPETITION LAWSUITS AGAINST TENET FOR ALLEGED VIOLATIONS OF THE ASSET SALE AGREEMENT

Tenet Business Services Corporation ("Tenet") and Conifer Revenue Cycle Solutions, LLC ("Conifer") respectfully request entry of an order excluding from the August 19, 2019 hearing evidence or argument regarding the Debtors' prepetition lawsuits against Tenet for alleged violations of the Asset Sale Agreement, dated August 31, 2017 and as amended January 11, 2018 (the "ASA"), by which the Hospitals were sold to the Debtors and certain of their affiliates. In further support of this motion, Tenet and Conifer respectfully state as follows:

### Preliminary Statement

1. On July 1, 2019, the Debtors sought entry of a final order approving the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain*

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

*Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lender, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 53] (the "DIP Motion"). Among other things, the DIP Motion seeks approval to pay Tenet and Conifer a total of $200,000 per week for services provided pursuant to the Transition Services Agreement ("TSA") and Master Services Agreement ("MSA"), respectively.

2.     As described in greater detail in Tenet's and Conifer's *Objection to Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lender, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 348] (the "DIP Objection"), the Debtors' Budget and DIP Facility do not provide for sufficient compensation of Tenet and Conifer on account of the array of critical services they are providing postpetition to the Debtors.[2]  Under the Budget, Tenet and Conifer are being paid a total of $200,000 per week, but the TSA and MSA contemplate compensation of approximately $810,000 per week.  As a result, as of the date hereof, Tenet and Conifer are owed approximately $3.2 million on account of postpetition services that the Debtors cannot pay pursuant to the terms of the proposed DIP Facility.

---

[2]     Capitalized terms used herein but not otherwise defined shall have the meaning set forth in the DIP Motion, DIP Objection, or Administrative Claim Motion, as applicable.

3.       On July 26, 2019, Tenet and Conifer filed the *Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment Of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C. § 503(B)(1) or, In the Alternative, (II) Granting Relief From The Automatic Stay To The Extent Necessary To Terminate The TSA and MSA* [Docket No. 303] (the "<u>Administrative Claim Motion</u>").  Among other things, the Administrative Claim Motion requests that the Court compel the Debtors pursuant to section 503(b) of the Bankruptcy Code to pay Tenet and Conifer for services provided to the Debtors postpetition at the rates contemplated by the TSA and MSA.  The DIP Motion and the Administrative Claims Motion are set for hearing on August 19, 2019 (the "<u>August 19 Hearing</u>").

4.       On August 9, 2019, the Debtors filed the *Debtors' Objection to Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC For Entry Of An Order (I) Compelling Payment Of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C. § 503(B)(1) Or, In the Alternative, (II) Granting Relief From The Automatic Stay To the Extent Necessary To Terminate The TSA And MSA* [Docket No. 421] (the "<u>Debtors' Objection</u>").  Among other things, the Debtors' Objection argues that Tenet and Conifer should be paid less than the rates contemplated by the TSA and MSA because of alleged "sub-optimal performance."  (Debtors' Objection at 8)

5.       The Debtors argue that paying Tenet and Conifer less than the rates contemplated by the TSA and MSA is appropriate in part because they may set off Tenet and Conifer's undisputed postpetition administrative claims against certain disputed and unresolved litigation claims the Debtors have asserted against Tenet. *See, e.g., Debtors' Objection to Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC For Entry Of An Order (I) Compelling Payment Of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C. § 503(B)(1)*

*Or, In the Alternative, (II) Granting Relief From The Automatic Stay To the Extent Necessary To Terminate The TSA And MSA (*"Debtors' Objection"*)* [Docket No. 420] at *9.   Among other things, prepetition, the Debtors and certain affiliated entities commenced litigation against Tenet (but not Conifer) in Delaware state court, asserting a host of claims arising under the ASA.   Tenet disputes those allegations, which relate solely to the prepetition period, none of which have anything to do with the value of the post-petition services Conifer and Tenet have rendered.

6.      Although the Debtors' allegations regarding the ASA are irrelevant to the value of Tenet and Conifer's postpetition services, the Debtors have made clear that they intend to introduce evidence regarding their ASA-related allegations during the August 19 Hearing.  For example, on August 5, 2019, the Debtors provided Tenet and Conifer with a list of exhibits they intend to use in support of the DIP Motion.  (Ex. B, Aug. 5 email from M. Minuti to N. Wasdin.)  The Debtors' lists includes "[t]he Delaware state court litigation complaints against Tenet." (*Id.*)  And on August 9, 2019, the Debtors provided Tenet and Conifer with the list of exhibits they intend to use in support of the Debtors' Objection.  (Ex. C, Aug. 9 email from M. Minuti to N. Wasdin.)  The list includes the Declaration of Allen Wilen, in which Mr. Wilen argues that underpayments to Tenet and Conifer are appropriate because of, among other things, "ASA-Related Disputes," including alleged "overstated amounts of accounts receivable" at the time the Debtors and their affiliates purchased the Hospitals in January 2018.  (*See Declaration of Allen Wilen In Support of Debtors' Objection To Motion Of Tenet Business Services Corporation And Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment Of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C. § 503(B)(1) or, In the Alternative, (II) Granting Relief From The Automatic Stay To The Extent Necessary To Terminate The TSA and MSA* [Docket No. 421-1 at 4-5] (the "<u>Wilen Declaration</u>").)  The Debtors explicitly reiterated the purported relevance of "ASA-Related

Disputes" in the Debtors' Objection itself, and assert, without support, that the contract rate cannot be justified in part because of "ASA-Related Disputes." *See* Docket No. 420 at *8-9.

7.       Evidence or argument regarding the Debtors' prepetition lawsuits against Tenet for alleged violations of the ASA should be excluded from the August 19 Hearing for two reasons. ***First***, it is irrelevant to the value of Tenet and Conifer's postpetition services and should thus be excluded under Federal Rules of Evidence 401 and 402.  Applicable Delaware law is clear that the Debtors cannot offset postpetition administrative claims against contingent, unliquidated, prepetition litigation claims.  *See, e.g., CanCan Dev., LLC v. Manno*, 2011 WL 4379064, at *5 (Del. Ch. Sept. 21, 2011) ("[T]here is no right to set-off of a possible unliquidated liability against a liquidated claim that is due and payable.") (internal citation omitted).  And the TSA and MSA themselves expressly prohibit the parties from exercising any setoff rights.[3]  Further, amounts allegedly owed under the ASA, which relate to items such as the amount of net working capital available at the time of final consummation of the asset sale ***in January 2018***, do not speak to the value of Tenet and Conifer's ***postpetition*** services to the Debtors, or to whether the value of the postpetition services should be calculated at the contract rate for such services.

8.       ***Second***, evidence related to the Debtors' ASA-related allegations in the Delaware state court lawsuits would cause substantial delay, wasted time, and confusion because it would require Tenet and Conifer to introduce additional (and also irrelevant) evidence rebutting the Debtors' allegations.  Such a result threatens to derail the August 19 Hearing by turning it into a

---

[3]      *See* Motion To Compel, Docket No. 303, Ex. B, § 4.1 (attaching the TSA, which provides "Authorized User shall not have the right to offset amounts payable to Vendor under this Agreement as a result of outstanding claims, liabilities or obligations asserted by Authorized User against Vendor under this Agreement or the Asset Sale Agreement."); *id*, Ex. C, § 7.2 ("Further, neither Party shall attempt to offset, including but not limited to, any statutory rights of offset as permitted by Law, any debt, obligation or duty to perform that it owes under the terms of this Agreement, against any debt, obligation, loss or cause of action which that Party may hold against an Affiliated Company of the other Party.").

mini-trial on the merits of the Debtors' ASA-related claims.  The evidence should also be excluded

pursuant to Federal Rule of Evidence 403 for this independent reason.

## Relief Requested

9.       Tenet and Conifer seek entry of an order, substantially in the form attached hereto

as **Exhibit A** (the "Order"), excluding from the August 19, 2019 hearing evidence or argument

regarding the Debtors' prepetition lawsuits against Tenet for alleged violations of the ASA.

## Jurisdiction and Venue

10.      The United States Bankruptcy Court for the District of Delaware (the "Court") has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2).[4]

11.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.      The bases for the relief requested herein are Rules 401, 402, and 403 of the Federal

Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Bankruptcy

Rules, and Section 105 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## Legal Standard

13.      Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable

than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Fed. R. Evid. 401.  "[E]vidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Even

if a particular piece of evidence may be deemed in some way to be relevant, it may be excluded if

"its probative value is substantially outweighed by a danger of one or more of the following: unfair

---

[4] Pursuant to rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Tenet and Conifer hereby expressly confirm their consent to the entry of a final order by the Court in connection with this motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**Argument**

I.      **ASA-Related Evidence Is Irrelevant To The Postpetition Amounts Owed To Tenet And Conifer And Should Thus Be Excluded Pursuant To Rules 401 And 402.**

14.     Tenet and Conifer object to the DIP Motion in part because it does not provide sufficient liquidity for the Debtors' postpetition operations.  (DIP Objection at 5-7.)  As noted above, the Budget and DIP Facility do not provide for sufficient compensation of Tenet and Conifer on account of the array of critical services they are providing postpetition to the Debtors. Under the Budget, Tenet and Conifer are being paid a total of $200,000 per week, but the TSA and MSA contemplate compensation of approximately $810,000 per week.  As a result, as of the date hereof, Tenet and Conifer are owed approximately $3.2 million on account of postpetition services that the Debtors cannot pay pursuant to the terms of the proposed DIP Facility.  Contrary to the Debtors' assertions, evidence regarding the Debtors' ASA-related allegations is not relevant to whether the DIP Motion should be approved in spite of that shortfall, or whether the Court should compel the Debtors to pay Tenet and Conifer for services provided to the Debtors postpetition at the rates contemplated by the TSA and MSA.

15.     *First*, a debtor's right to set off its obligations in bankruptcy only exists to the extent such a right exists outside of bankruptcy.  *See In re ADI Liquidation, Inc*., 2015 WL 4638605, at *4 (Bankr. D. Del. May 5, 2015) ("A debtor's right to effectuate setoffs, *as it exists under state law*, is one of the personal defenses preserved by § 558.") (emphasis added).  Both the TSA and the MSA are governed by Delaware law, *see* Administrative Claim Motion, Ex. B, § 1.12; Ex. C, § 19.1, and under Delaware common law, there is no right to setoff unliquidated liabilities against liquidated ones.  *See*, *e.g*., *CanCan,* 2011 WL 4379064, at *5 ("[T]here is no right to set-off of a

- 7 -

possible unliquidated liability against a liquidated claim that is due and payable.") (internal citation omitted); *Post Holdings, Inc. v. NPE Seller Rep LLC*, 2018 WL 5429833, at *6 (Del. Ch. Oct. 29, 2018) (same).   Here, the Debtors' pending litigation claims against Tenet—all of which lack merit—remain contingent and unliquidated.  Indeed, as Mr. Wilen conceded at his deposition:

> Q There haven't been any rulings on the merits in the lawsuits that debtors have brought against Tenet; is that right?
>
> A Nothing at this time.
>
> …
>
> Q … You understand that Tenet disputes debtor's claims against Tenet in the Delaware state court litigation?
>
> A That's my understanding.

(Ex. D, A. Wilen 8/13/19 Deposition Tr. (Rough) at 87:6-20)  Accordingly, the Debtors cannot offset postpetition administrative claims against any such prepetition litigation claims under applicable Delaware law.

16.     ***Second***, the TSA and MSA expressly prohibit the Debtors from exercising the alleged setoff rights.  *See* TSA § 4.1 (providing that the "Authorized User shall not have the right to offset amounts payable to Vendor under this Agreement as a result of outstanding claims, liabilities or obligations asserted by Authorized User against Vendor under this Agreement or the Asset Sale Agreement"); MSA § 7.2 ("Further, neither Party shall attempt to offset, including but not limited to, any statutory rights of offset as permitted by Law, any debt, obligation or duty to perform that it owes under the terms of this Agreement, against any debt, obligation, loss or cause of action which that Party may hold against an Affiliated Company of the other Party.").   Indeed, as Mr. Wilen conceded at his deposition:

> Q Do you understand that to mean that PAHS would not have the right to offset amounts payable to Tenet under the TSA as a result of outstanding claims under the TSA or the ASA?

A Yes.

…

Q And so similar question: You understand this to meant that PAHS would not have the right to offset amounts payable to Conifer under the MSA as a result of any cause of action it may hold against Conifer or Tenet?

...

A That's what the document seems to say. Okay.

(Ex. D, A. Wilen  8/13/19 Deposition Tr. (Rough) at 88:17-89:22)  Thus, even if it was not prohibited by Delaware law (and it is), the Debtors would still have no basis for offsetting the amounts owed to Tenet and Conifer for postpetition services against their alleged prepetition litigation claims.

17.     *Third*, contrary to the Debtors' assertions, including those in the Wilen Declaration, the Debtors' ASA-related allegations relating entirely to prepetition events have no relevance to the value of the *postpetition* services provided by Tenet and Conifer under the TSA and MSA, including whether or not the contract rate represents reasonable value for the services.  For example, Mr. Wilen argues in his declaration that Tenet's performance under the TSA was "sub-optimal," in part because Tenet allegedly "overstated amounts of accounts receivable totaling approximately $21 million" at the time of the asset sale *in January 2018*.  (Wilen Declaration at 4-5,)  With respect, that does not follow.  Indeed, Mr. Wilen conceded at his deposition that:

> Q All right. Turning to Tenet disputes in your declaration, there are two listed here and the first is ASA related disputes. And here you call out two disputes, the first being related to a networking capital adjustment. In the amount of approximately $21 million. And the second relating to 5 million of amounts received by Tenet at locations to pay for accounts payable that was never, in fact, paid. ***Would you agree with me that these two issues are not relevant to the fair market value of Tenet's services under[] the TSA***?
>
> A Yes.

(Ex. D, A. Wilen  8/13/19 Deposition Tr. (Rough) at 85:16-86:3)  Mr. Wilen is correct.  The value

of Tenet's administrative claim for postpetition services provided from and after June 30, 2019 as

contemplated by the *TSA* has nothing to do with the Debtors' baseless allegations regarding

disputes related to the *ASA*, when the related transaction closed in January 2018.  The Debtors'

attempt to conflate those issues is without merit.

18.     At bottom, the Debtors have no right to set off their unrelated litigation claims

against the amounts owed to Tenet and Conifer.  It is inappropriate to withhold payments or base

the Budget on purported rights that are expressly prohibited by both law and contract.  For each of

these reasons, evidence or argument regarding the Debtors' prepetition lawsuits against Tenet for

alleged violations of the ASA should be excluded under Rules 401 and 402.

## II.     ASA-Related Evidence Will Cause Substantial Delay, Wasted Time and Confusion, And Should Be Excluded Pursuant To Rule 403.

19.     Evidence or argument regarding the Debtors' prepetition lawsuits against Tenet for

alleged violations of the ASA will also cause substantial delay, wasted time and confusion at the

August 19 Hearing, and will unduly prejudice Tenet and Conifer by forcing them to present

evidence rebutting the Debtors' unrelated allegations.  For example, the Debtors' lawsuit against

Tenet in the Delaware Superior Court alleges a laundry list of ways Tenet purportedly breached

the ASA, including by, for example, failing to maintain certain items of hospital equipment in

accordance with normal industry practice and failing to disclose the existence of a "vegetative"

patient.  *See Philadelphia Academic Health Holdings, LLC, et al v. Tenet Business Services

Corporation*, Case No. N19C-04-035 EMD CCLD, (Del. Sup. Ct. 2019), Amended Complaint,

Docket No. 11.  These claims are without merit, and are subject to a pending motion to dismiss.

*Id.* at Docket Nos. 15-16.  However, if the Debtors are allowed to rely on these claims at the August

19 Hearing, Tenet and Conifer will have no choice but to rebut these allegations, which could

derail the hearing by turning it into a mini trial on the merits of the Debtors' unrelated litigation claims.   The Debtors' ASA-related evidence should be excluded under Rule 403 for this independent reason. *E.g.*, *ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 493–94 (D. Del. 2010) (excluding evidence of "prior copying … of unrelated products" because "the Court agrees with [defendant] that introduction of such contentions would cause substantial delay, wasted time, and confusion because it would require mini-trials to determine whether [defendant] actually copied the unrelated [plaintiff] devices nearly twenty years ago."); *Santrayll v. Burrell*, 1998 WL 24375, at *3 (S.D.N.Y. Jan. 22, 1998) (similar).

## Notice

20.     A copy of the Motion has been provided to (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to MidCap Funding IV Trust; (e) Drexel University d/b/a Drexel University College of Medicine; (f) the Debtors' unions; (g) the Internal Revenue Service; (h) the United States Attorney for the District of Delaware; (i) the United States Department of Justice; (j) the Pennsylvania Attorney General's Office; (k) the Pennsylvania Department of Human Services; (l) the City of Philadelphia; and (m) all applicable federal, state and local taxing and regulatory authorities having jurisdiction over the Assets; and (n) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Tenet and Conifer submit that, under the circumstances, such notice constitutes good and sufficient notice of this Motion and no other or further notice need be given.

## No Prior Request

21.     No prior request for the relief sought in this Motion has been made to this Court or to any other court.

WHEREFORE, Tenet and Conifer respectfully request that the Court enter the Order attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  August 13, 2019        PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:        ljones@pszjlaw.com
              tcairns@pszjlaw.com

- and -


KIRKLAND & ELLIS LLP
Stephen C. Hackney, P.C. (*admitted pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
Nicholas F. Wasdin (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        stephen.hackney@kirkland.com
              gregory.pesce@kirkland.com
              nick.wasdin@kirkland.com

-and-


KIRKLAND & ELLIS LLP
Nicole L. Greenblatt, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        nicole.greenblatt@kirkland.com

*Counsel to Tenet Business Services Corporation and*
*Conifer Revenue Cycle Solutions, LLC*

DOCS_DE:224946.1