## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) | |
| *et al.*,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | **Re: Docket Nos. 303, 417, 420, 423** |

**TENET BUSINESS SERVICES CORPORATION
AND CONIFER REVENUE CYCLE SOLUTIONS, LLC'S
OMNIBUS REPLY IN SUPPORT OF THEIR MOTION FOR
ENTRY OF AN ORDER (I) COMPELLING PAYMENT OF ALL UNPAID
POSTPETITION AMOUNTS PURSUANT TO 11 U.S.C. § 503(B)(1) OR, IN
THE ALTERNATIVE, (II) GRANTING RELIEF FROM THE AUTOMATIC
STAY TO THE EXTENT NECESSARY TO TERMINATE THE TSA AND MSA**

Tenet Business Services Corporation ("Tenet") and Conifer Revenue Cycle Solutions, LLC ("Conifer") respectfully submit this omnibus reply (this "Reply") in further support of the *Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C.§ 503(b)(1) or, in the Alternative, (II) Granting Relief from the Automatic*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

*Stay to the Extent Necessary to Terminate the TSA and MSA* [Docket No. 303] (the "Motion")[2]

and in response to the Objections,[3] Tenet and Conifer respectfully state as follows:

**Preliminary Statement**

1.      For more than 18 months, Tenet and Conifer have upheld their end of the bargain

struck under the TSA, the MSA, and the the Asset Sale Agreement, dated August 31, 2017

(the "ASA"), providing an array of services that are "critical to protecting patient safety and

allowing the Hospitals to continue to operate until the assets can be sold or the hospitals safely

closed." MidCap Obj. ¶ 12. Moreover, Tenet and Conifer have continued to provide such services

in the face of habitual payment defaults by the Debtors totaling more than ***$58 million***.  Tenet and

Conifer hoped that the Debtors would remedy their habitual payment defaults upon filing these

cases; unfortunately, the Debtors continue to refuse to pay Tenet and Conifer's contractual rates

under the TSA and MSA.  Accordingly, Tenet and Conifer had no choice other than to file the

Motion to compel the Debtors to live up to their end of the bargain.

2.      After filing the Motion and their objection to the Debtors' roll-up DIP facility

motion [Docket No. 348] (the "DIP Objection"), Tenet and Conifer have engaged with the Debtors

and MidCap regarding a holistic solution, an effort which included an in-person meeting in

---

[2]    Capitalized terms used herein but not otherwise defined shall have the meaning set forth in the Motion.

[3]    The "Objections" include the:  (a) *Statement and Reservation of Rights in Response to Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC's Motion for Entry of an Order (I) Compelling Payment of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C.§ 503(b)(1) or, in the Alternative, (II) Granting Relief from the Automatic Stay to the Extent Necessary to Terminate the TSA and MSA* [Docket No. 417] (the "MidCap Objection"); (b) *Debtors' Objection to Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C.§ 503(b)(1) or, in the Alternative, (II) Granting Relief from the Automatic Stay to the Extent Necessary to Terminate the TSA and MSA* [Docket No. 420] (the "Debtors' Objection"); and (c) *Official Committee of Unsecured Creditors' Joinder in the Debtors' Objection to Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C.§ 503(b)(1) or, in the Alternative, (II) Granting Relief from the Automatic Stay to the Extent Necessary to Terminate the TSA and MSA* [Docket No. 423].

Philadelphia on August 14.  Unfortunately, that meeting did not result in a reasonable resolution

nor do Tenet and Conifer believe that MidCap will agree, absent this Court's intervention, to pay

the costs of these cases, which contemplate a sale of MidCap's collateral.

3.      Furthermore, the Debtors objected to the Motion on completely meritless grounds

that:  (a) the Hahnemann closure process necessitates a reduction in the terms of the agreed

contractual rates under the TSA and MSA; (b) the TSA and MSA's respective terms are not

reasonable; and (c) the Debtors may offset prepetition litigation claims against postpetition

amounts payable under the TSA and MSA.  These are frivolous arguments that the Court should

overrule.  Indeed, during depositions in connection with this matter, Allen Wilen, the Debtors'

chief restructuring officer, conceded that several of the Debtors' principal objections are wrong:

| Debtor Objection | Tenet/Conifer Response | Wilen Deposition |
| --- | --- | --- |
| The Hahnemann closure process mandates a reduction in payments under the TSA and MSA. (Debtors' Obj. ¶ 15.) | Conifer's MSA fees are largely based on patient billing and, therefore, reduced patient volumes will necessarily affect the amounts owed to Conifer. | Wilen: ▬▬▬ ▬ ▬ ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬ ▬ ▬ ▬▬ ▬ ▬▬▬ ▬▬ ▬▬▬ ▬ ▬▬▬▬ *** Question: ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ Wilen: ▬▬▬▬▬▬ ▬▬▬ |
| The contract rate is not the reasonable value of services provided by Tenet and Conifer. (Debtors' Obj. ¶ 14.) | The Debtors have not conducted a market test, provided any market comparables, or even done any analysis of the proper market rate. | Question: ▬▬ ▬▬▬ ▬▬▬ ▬ ▬▬▬▬▬▬▬▬ ▬▬▬ Wilen: ▬▬▬ ▬▬▬ *** Question: ▬▬▬▬ ▬▬▬ |

| | | |
|---|---|---|
| | | Wilen: ███████████████ █████████████ *** Wilen: ████████████████ ██████████████ ██ ███ ████ ██ ██ ██ ████ |
| The proposed payments of $200,000 per week are reasonable. (Debtors' Obj. ¶ 14; Aug. 7, 2019 Hr'g Tr. 53:21-54:5.) | The Debtors developed the $200,000 payment amount without reference to market information. | Question: █████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████ Wilen: ██████ ████ ████ *** Question: █████████████ ████████████████ ████████ Wilen: ████ ████ ██ |
| There are strong grounds to challenge Tenet and Conifer's rights to payment under the TSA and MSA." (Debtors' Obj. ¶ 28.) | The Bankruptcy Code and applicable Delaware law prohibit a party from offsetting payables using contingent and unliquidated litigation claims. | Question: █████████████ ████████████████ ████████████████ ████████████████ ██████ Wilen: ███████████████ ██ Question: █████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████ [. . .] Wilen: █████████████ ██████ ████ █████ |

4.      The Debtors and MidCap's other arguments likewise cannot survive under even the barest scrutiny.  For example, the Debtors argue that Tenet and Conifer agreed to provide services at $200,000 per week for an indefinite postpetition period (Debtors' Obj. ¶ 17) notwithstanding the fact that Tenet and Conifer have not agreed to do so.  Likewise, MidCap's argument that Tenet and Conifer have failed to mitigate damages, *see* MidCap Obj. ¶ 22, is at odds with the fact that Tenet and Conifer may only mitigate damages by shifting resources to other customers (with respect to Conifer) or reducing service levels (with respect to Tenet), a course of action that is impossible so long as the Debtors continue to compel Tenet and Conifer to provide services to the estates at levels contemplated by the TSA and MSA.

5.      The obvious (and numerous) defects with the Objections are exacerbated by the fact that the Debtors and MidCap are hopelessly conflicted:  the Debtors are under the control of their shareholder, California "venture capitalist" Joel Freedman, who owns the non-Debtor PropCo affiliates and MidCap is a lender to the non-Debtor Hahnemann PropCo affiliate.  As a result, the Debtors and MidCap are incapable of maximizing value for all stakeholders, starting with administrative creditors.  Administrative creditors face the risk of significant impairment, an outcome that would jeopardize both the administrative solvency of these cases and the ability to preserve St. Christopher's Hospital for Children as a going concern.

6.      ***The August 19 hearing on the Motion and the Debtors' DIP financing motion, therefore, represents a critical crossroads for the Court.  Tenet and Conifer respectfully urge the Court to use that hearing to correct the course of these cases before the estates spiral into administrative insolvency.***  Specifically, Tenet and Conifer respectfully request that the Court require the Debtors to pay Tenet and Conifer the reasonable value of their services, amounts which case law and core bankruptcy principles instruct are dictated by the terms of the MSA and TSA.

7.      ***Nor should the Court lose sight of the fact that the resolution of this Motion is tied to the Debtors' roll-up DIP financing motion.***  For the reasons set forth in further detail in the DIP Objection, Tenet and Conifer respectfully submit that the Court should not approve the Debtors' roll-up DIP facility absent significant modifications necessary to provide the estates with liquidity to satisfy postpetition obligations in full in cash.  Indeed, the stakes could not be higher: approval of the DIP facility, which is at odds with the relief requested by the Motion, will signal a dangerous ***"race to the bottom"*** that a prepetition lender can roll up tens of millions of dollars of prepetition indebtedness, without adhering to the District's procedures for such relief or providing sufficient liquidity to satisfy postpetition claims in full in cash.  Simply put, the chapter 11 process must work to maximize value for all stakeholders, including postpetition administrative creditors, not merely a debtor's prepetition secured lender.

8.      Accordingly, Tenet and Conifer respectfully request this Court overrule the Objections and grant the Motion.

## Reply

### I.      The Court Should Grant the Requested Relief and Require the Debtors to Pay Tenet and Conifer at the Contract Rate for Their Postpetition Services.

9.      For the reasons set forth in greater detail in the Motion, Tenet and Conifer respectfully submit that the Court should grant the requested relief.  A bedrock principle of chapter 11 is that a debtor obtains the benefits of the bankruptcy process (including the automatic stay, the "fresh start" permitted by section 1141 of the Bankruptcy Code, and the ability to sell assets free and clear of any claims, liens, or encumbrances, among other things), provided that the debtor satisfies its postpetition obligations in full in cash.[4]  The services provided by Tenet and

---

[4]     *See* 11 U.S.C. § 503(b)(1)(A) (providing an administrative claim to creditors on account of the "actual, necessary costs and expenses of preserving the estate."); *In re NEC Holdings Corp.*, No. 10-11890 (PJW), Hr'g Tr. (July 13, 2010) at 100:17-25, 101:1-3 ("[Secured creditors] have to pay the freight, and the freight is, at least . . .

Conifer pursuant to the TSA and MSA are indisputably necessary to preserve stakeholder value, and the compensation associated therewith, accordingly, represents an "actual, necessary cost[] and expense[] of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The compensation provided under the DIP budget ($200,000 per week) represents a fraction of the (presumptively reasonable) contract rate. Indeed, the amount is insufficient to even cover Tenet and Conifer's respective costs. The Debtors have done nothing to overcome the presumption that the contract rate is the reasonable value of Tenet and Conifer's services. Accordingly, Tenet and Conifer are entitled to payment of their postpetition administrative claims at the contract rate in full in cash.

10.     Absent payment in full in cash, the Court should lift the automatic stay to permit Tenet and Conifer to terminate the TSA and MSA. *See In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (setting forth a three-factor balancing test to determine whether cause exists to lift the stay, including:  (a) the debtor or the debtor's estate will not be greatly prejudiced; (b) the hardship to the movant by maintenance of the automatic stay considerably outweighs the hardship to the debtor; and (c) the movant has a reasonable chance of prevailing on the merits).

11.     Here, all the factors weigh heavily in favor of lifting the automatic stay. ***First***, termination of the TSA and MSA will not impose a new burden on the Debtors; rather, it will end the windfall that the Debtors and MidCap receive from Tenet and Conifer, who are being forced

---

certainly an administratively solvent estate. And while there's not a guarantee, there has to be something other than a wing and a prayer on the payment of the admin claims. . . . [T]here has to be something . . . some evidence that there's a . . . probability that they'll be paid."); *see In re Townsends, Inc.*, No. 10-14092 (CSS), Hr'g Tr. (Jan. 1, 2011) at 24:5-9, 21-22 ("I would have a problem running any case that was administratively insolvent. But one that is both administratively insolvent and prefers one set of administrative creditors over another is doubly troubling. . . . I just — I can't run that kind of case."); *see also In re Sports Authority Holdings, Inc.*, No. 16-11452 (KJC) Hr'g Tr. (July 20, 2016) at 194:16-19 ("[I]f a case is being run for the benefit of the lenders in order to foreclose upon their collateral, the lenders are going to have to pay the cost of that. And that includes all administrative [claims].")

to work for a massive discount.  *Second*, the harm to Tenet and Conifer is real and severe; Tenet

and Conifer continue to lose *millions of dollars per month* by providing services to the Debtors.

*Finally*, as set forth in the Motion and herein, Tenet and Conifer are likely to prevail on the merits.

12.    Accordingly, the Court should grant the Motion and either:  (a) direct the Debtors

to pay Tenet and Conifer's administrative claims (or reserve for such claims); or (b) lift the stay

with respect to the MSA and TSA to allow the termination thereof (to the extent such contracts

have not already been terminated).

## II.    The Court Should Overrule the Debtors and MidCap's Objections.

### A.    Objection:  The Hahnemann Closure Process Mandates a Reduction in TSA and MSA Payments.  (Debtors' Obj. ¶ 15.)

13.    The Debtors argue that the Hahnemann closure process necessitates a reduction in

the contractual rates under the MSA and TSA because the closure process itself will result in

reduced collections by Conifer and reduces the value of the services provided.  Debtors' Obj. ¶ 15.

The suggestion that the Debtors may choose to close Hahnemann—for the benefit of controlling

shareholder Joel Freedman and MidCap—and use such closure as a basis for not paying Tenet and

Conifer in full on a postpetition basis, is an affront to basic principles of contract interpretation

and federal bankruptcy law, which prohibits a debtor from running an estate for the benefit of its

postpetition lender at the expense of other postpetition administrative creditors.[5]

14.    As an initial matter, there is no need to adjust the contract rate set forth under the

MSA, because Conifer's MSA fees are largely based on patient billing and, therefore, reduced

---

[5]    *See In re Townsends, Inc.*, No. 10-14092 (CSS), Hr'g Tr. (Jan. 1, 2011) at 24:5-9, 21-22 ("I would have a problem running any case that was administratively insolvent.  But one that is both administratively insolvent and prefers one set of administrative creditors over another is doubly troubling. . . . I just — I can't run that kind of case."); *see also In re Sports Authority Holdings, Inc.*, No. 16-11452 (KJC) Hr'g Tr. (July 20, 2016) at 194:16-19 ("[I]f a case is being run for the benefit of the lenders in order to foreclose upon their collateral, the lenders are going to have to pay the cost of that.  And that includes all administrative [claims].").

patient volumes will necessarily affect the amounts owed to Conifer.  *See*, *e.g*., Statement of Work, dated January 11, 2018, <u>Attachment IV</u>; ███████████████████████████

████████████████████████████████████████████████

███████████████████    ███████████████████████

████████████████████████████    ██████████████

███████████

15.    Further, the Hahnemann closure process has ***increased***, not decreased, the value of the services provided by Tenet and Conifer.  As MidCap notes, "the termination of [the services provided by Tenet and Conifer] would lead to a cessation of patient services at the Hospitals and would also bring collection activities to a grinding halt."  MidCap Obj. ¶ 18.  As the Debtors' Chief Restructuring Officer noted, the Debtors do not have a replacement for Conifer lined up because they ████████████████████████████████████████████████

███████████████████████████████████

> **B.    Objection:  Contract Rate Is Not the Reasonable Value of Services Provided By Tenet and Conifer.  (Debtors' Obj. ¶ 14.)**

16.    Next, the Debtors stipulate that "the contract rate is presumed to be the reasonable value of services provided to the estate, this presumption is rebuttable if the debtor introduces 'convincing evidence to the contrary.'"  Debtors' Obj. ¶ 13.  However, the Debtors do not provide any evidence for what the reasonable value of Tenet and Conifer's services should be. [6]  Nor could

---

[6]    The Debtors do not even attempt to quantify the reasonable value of Tenet and Conifer's services.  Instead, they argue that "the evidentiary issues inherent in disputing the Tenet Parties' claims" renders "it . . . unrealistic for the Debtors and the Tenet Parties to be able to litigate the true value of the Post-Petition claim at the scheduled hearing on the Motion, which is in less than two weeks."  Debtors' Obj. ¶ 14.  The Court should overrule this objection and consider the Motion at the hearing because the Debtors expressly consented to timing of the hearing on August 19 as part of a consensual resolution of Tenet and Conifer's motion to adjourn the DIP hearing. *See* Aug. 7, 2019 Hr'g Tr. 5:15–23 ("We are agreeable to moving, and have the ability to move the [DIP hearing] . . . to the week of August 18th. . . . We've agreed to move the DIP as long as the [hearing on the DIP and the hearing on Tenet and Conifer's motion for an administrative claim] are combined, during the week of August 18th.").  In

they:  the Debtors have not conducted a market test, provided any market comparables, or even done *any analysis of the proper market rate*. ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

17.    Tenet and Conifer will demonstrate at the hearing that the amounts budgeted in the DIP for the TSA and MSA are simply a continuation of the partial payments Debtors made to Tenet and Conifer prepetition, and bear no relation to the reasonable value of those services. ██████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████    ██████    ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████The Debtors previously asserted that the amounts budgeted for the TSA and MSA are necessary and represent "as much as [the Debtors] can afford"—without any mention of the value of those services. Aug. 7, 2019 Hr'g Tr. 53:21-54:5.  Whether the amounts budgeted for the TSA and MSA are the function of the Debtors' DIP discussions or the DIP budget (which the Creditors' Committee has asserted lacks basic foundation, *see* UCC DIP Obj. ¶¶ 32-38[7]) is without consequence:  in either case, the amount budgeted has absolutely no bearing on the reasonable value of the services, and does *not* rebut the presumption that the contract rate is correct.

---

any event, it is imperative that the Court consider the Motion at the hearing in conjunction with the DIP motion because the relief requested, if granted, would trigger immediate defaults under the proposed DIP facility.

[7]    *Objection of Official Committee of Unsecured Creditors to Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lender, (V) Modifying the*

**C.      Objection:  $200,000 Per Week Is the Reasonable Value of Services Because "There Are Strong Grounds to Challenge Tenet and Conifer's Rights to Payment Under the TSA and MSA."  (Debtors' Obj. ¶ 28.)**

18.      Next, the Debtors assert that "there are strong grounds to challenge Tenet and Conifer's rights to payment under the TSA and MSA."  Debtors' Obj. ¶ 28.  The Debtors cite their unliquidated claims against Tenet under the ASA.  Setting aside the meritless nature of those claims, the Debtors fail to recognize that they can only exercise a right of setoff to the extent such right exists under applicable nonbankruptcy law.  *See In re ADI Liquidation, Inc*., No. 14–12092 (KJC), 2015 WL 4638605, at *4 (Bankr. D. Del. May 5, 2015) ("A debtor's right to effectuate setoffs, *as it exists under state law*, is one of the personal defenses preserved by § 558.") (emphasis added).  Under applicable Delaware law, the Debtors are not entitled to setoff their unliquidated claims against Tenet and Conifer.  *See*, *e.g.*, *CanCan Dev., LLC v. Manno*, No. CIV.A. 6283-VCL, 2011 WL 4379064, at *5 (Del. Ch. Sept. 21, 2011) ("[T]here is no right to set-off of a possible unliquidated liability against a liquidated claim that is due and payable.") (internal citation omitted); *Post Holdings, Inc. v. NPE Seller Rep LLC*, No. CV 2017-0772-AGB, 2018 WL 5429833, at *6 (Del. Ch. Oct. 29, 2018) (same).

19.      The TSA, MSA, and ASA also all expressly prohibit the Debtors from exercising their alleged setoff rights.[8]  Indeed, as Mr. Wilen conceded at his deposition:

███████████████████████████████████████
███████████████████████████████████████
████████████████

---

*Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 368] (the "UCC DIP Objection").

[8]    *See* ██████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████████

██████

████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████

...

████████████████████████████

██████████████████. Thus, even if it was not prohibited by Delaware law (and it is), the Debtors would still have no basis for offsetting the amounts owed to Tenet and Conifer for postpetition services against the Debtors' alleged prepetition litigation claims.

### D.    Objection:  Tenet and Conifer Agreed to Provide Services at $200,000 Per Week Postpetition.  (Debtors' Obj. ¶ 17.)

20.    The Debtors next argue that Tenet and Conifer's acceptance of less than full payment suggests the contract rate is not appropriate.  Debtors' Obj. ¶ 17.  To be clear, Tenet and Conifer never waived any rights to pursue payment in full on account of the services they have provided to the Debtors.  To the contrary, Tenet and Conifer have consistently taken action to receive payment in full, and they have repeatedly reminded the Debtors that they by accepting less than full payment they were not waiving any rights.  *See*, *e.g*., **Exhibit A** (Aug. 9 letter from G. Pesce to J. Hampton); **Exhibit B** (Aug. 2 letter from G. Pesce to J. Hampton); **Exhibit C** (July 26 letter from G. Pesce to J. Hampton).

21.    In good faith and as an accommodation, Tenet and Conifer were willing to continue services and only receive contemporaneous cash payments of a lesser amount for a limited time during negotiations, with all rights reserved and without waiving any claims under the MSA or TSA.  Postpetition, Tenet and Conifer have had no real choice than to accept less than full payment—their only other option is *no* payments at all.  In effect, the Debtors are seeking to penalize Tenet and Conifer for their commitment to the Hospitals and aid to the Debtors during

12

the Debtors' liquidity crisis.  That goodwill cannot be construed as evidence that the reasonable value of Tenet and Conifer's services is any less than the contract rates.

###### E.    Objection:  Tenet and Conifer Have Failed to Mitigate Damages. (MidCap Obj. ¶ 22)

22.    MidCap argues that "Tenet and Conifer have failed to explain how (if at all) they have attempted to mitigate damages."  MidCap Obj. ¶ 22.  Yet, MidCap fails to explain how Tenet and Conifer could have mitigated damages.  Often, a party mitigates contractual damages by providing their goods or services elsewhere.  That is not a result MidCap or the Debtors seek.  And, indeed, the Debtors have not directed Tenet or Conifer to reduce their services except in connection with the Hahnemann closure.  MidCap—like the Debtors—concedes the services are critical and strongly desires for their continuation.  Instead of mitigation, the MidCap and the Debtors truly want Tenet and Conifer to continue performing services and wait in hope for future payment.  But Tenet and Conifer should not bear the risk of nonpayment of their postpetition services depending on a sales process being run for the benefit of MidCap and Joel Freedman.[9]

23.    Alternatively, a party could mitigate damages by reducing services.  But, that ignores that many costs associated with the TSA and MSA are fixed and, as discussed above, Conifer's fees are largely based on patient volume and will correspondingly be reduced.  Moreover, the Debtors have not shared the Hahnemann closure plan with Tenet and Conifer.  Tenet and Conifer could not adjust services levels while they were left in the dark regarding the Debtors'

---

[9]    *In re NEC Holdings Corp.*, No. 10-11890 (PJW), Hr'g Tr. (July 13, 2010) at 100:17-25, 101:1-3 ("[Secured creditors] have to pay the freight, and the freight is, at least . . . certainly an administratively solvent estate.  And while there's not a guarantee, there has to be something other than a wing and a prayer on the payment of the admin claims. . . . [T]here has to be something . . . some evidence that there's a . . . probability that they'll be paid."); *see In re Townsends, Inc.*, No. 10-14092 (CSS), Hr'g Tr. (Jan. 1, 2011) at 24:5-9, 21-22 ("I would have a problem running any case that was administratively insolvent.  But one that is both administratively insolvent and prefers one set of administrative creditors over another is doubly troubling. . . . I just — I can't run that kind of case.").

plans.  Finally, to the extent any mitigation was possible, the MSA and TSA provide the appropriate mechanisms to reduce Tenet and Conifer's fees.  Accordingly, the contract rates should be used to calculate the size of their administrative claims.

      **F.**    **Objection:  The Equities Favor Denial of the Motion. (Debtors' Obj. ¶¶ 29-33.)**

      24.    Finally, the Debtors—which, again, are running a sale process that will line the pockets of their controlling shareholder at the expense of a long-standing Philadelphia hospital—argue that the equities favor the denial of the Motion.  This is simply false.  As set forth herein and in the Motion, Tenet and Conifer operated the Hospitals for nearly twenty years, time and again working to provide the Hospitals with runway to turn around their operations.  Post-closing, Tenet and Conifer's commitment to the Hospitals' important public health mission continued through their contractual service arrangements with the Debtors, and, when the Debtors needed additional runway to restructure their operations, by forbearing from exercising remedies prepetition.  That goodwill has resulted in more than ***$55 million*** in unpaid fees and costs prepetition and over $3.2 million (and counting) postpetition. Despite Tenet and Conifer's good faith engagement to provide the Debtors with additional time and liquidity, the Debtors have done nothing except for delay and distract from their payment obligations.  Tenet and Conifer cannot be forced to continue to provide services for a discount of over 75%, all to allow the Debtors to run a sales process for the benefit of MidCap and Joel Freedman.  Put simply, the time has come for the Debtors to either pay for Tenet and Conifer's postpetition services in cash in the ordinary course of business, or for the Court to authorize Tenet and Conifer to cease providing those services.

<u>**Reservation of Rights**</u>

      25.    Tenet and Conifer reserve all rights, remedies, claims, counterclaims, and defenses under the TSA and the MSA, at law, and in equity, including, without limitation, Tenet and Conifer's right to file an administrative expense claim and/or a rejection damages claim.

WHEREFORE, Tenet and Conifer respectfully request that the Court overrule the Objections and enter the Proposed Order.

Dated:  August 15, 2019        PACHULSKI STANG ZIEHL & JONES LLP

*S/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email:            ljones@pszjlaw.com
                      tcairns@pszjlaw.com


- and -


KIRKLAND & ELLIS LLP
Stephen C. Hackney, P.C.
Gregory F. Pesce (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            stephen.hackney@kirkland.com
                      gregory.pesce@kirkland.com


-and-


KIRKLAND & ELLIS LLP
Nicole L. Greenblatt, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            nicole.greenblatt@kirkland.com

*Counsel to Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC*