**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) Jointly Administered |
| Debtors. | ) **Hearing Date: September 24, 2019 at 10:00 a.m.** |
| | ) **Objection Deadline: August 29, 2019 at 4:00 p.m.** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
APPROVING KEY EMPLOYEE INCENTIVE PLAN**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through their undersigned counsel, file this motion (this "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing and approving the Key Employee Incentive Plan (the "**KEIP**") as set forth herein. In support hereof, the Debtors submit and incorporate by reference the *Declaration of Allen Wilen in Support of Debtors' Motion for Entry of an Order Approving Key Employee Incentive Plan* (the "**Wilen Declaration**"), filed contemporaneously herewith.[2] In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Capitalized terms not otherwise defined in this Motion shall have the meanings given to them in the Wilen Declaration.

## JURISDICTION AND VENUE

1.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief requested in this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**").

## BACKGROUND

3.  On June 30 and July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

4.  On July 15, 2019, the United States Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "**Committee**").

5.  A description of the Debtors' businesses and the reasons for commencing the Chapter 11 Cases are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2] (the "**First Day Declaration**").

## **THE PROPOSED KEIP**

6. The Debtors' ability to preserve the value of their assets, ensure quality patient care, continue normal operations, and maximize recovery in the Chapter 11 cases hinges, in significant part, on their ability to incentivize employee performance. The dedicated assistance of the Debtors' executives, officers, and certain other key employees during the critical stages of these Chapter 11 Cases is and has been necessary to ensure the Debtors' efforts to maximize value while ensuring patient care.

7. The Debtors formulated and began implementation of the KEIP prior to the Petition Date. Through this Motion, the Debtors seek authority and approval of the Court so that the Debtors may continue implementation of the KEIP in order to continue incentivizing their key employees during the Chapter 11 Cases.

8. As described further herein, the goals of the KEIP are: (i) to incentivize essential personnel throughout the critical stages of these Chapter 11 Cases; (ii) to consummate a successful sale of STC and to complete a successful closure of HUH; (iii) to reward essential employees for the successful completion of the Debtors' objectives in the Chapter 11 Cases; and (iv) to maximize the value of the Debtors' estates for the benefit of all stakeholders.

**A.    Eligible Employees**

9. Prior to the Petition Date, the Debtors identified twenty-five employees – nine executives (collectively, the "**Insider Participants**") and sixteen non-insider employees (collectively, the "**Non-Insider Participants**" and together with the Insider Participants, the "**Participants**") – to receive payments under the KEIP. All of the Participants possess significant institutional knowledge and skills that are essential to the Debtors' efforts in these

3

Chapter 11 Cases.[3]  The Participants include certain of the Debtors' executives and officers, various department heads, and certain employees in the Debtors' accounting and legal departments.

10. In addition to the responsibilities related to the Debtors' everyday business operations, the Participants have assumed, and will continue to assume, considerable added responsibilities in connection with the preparation for, and the filing and prosecution of, these Chapter 11 Cases, the sale process for STC, and the closure of HUH.  Such responsibilities include continuing operations with all of the challenges attendant to being in chapter 11, stabilizing the Debtors' vendor base, reviewing executory contracts and leases in an effort to avoid unnecessary administrative expenses, facilitating and conducting management presentations for potential bidders, responding to bidder information requests, developing and implementing the closure plan for HUH, and otherwise taking whatever steps are necessary to maximize value for stakeholders while ensuring quality patient care.

11. The Debtors respectfully submit that the KEIP is necessary to incentivize these key employees to perform their duties in an optimal manner for the benefit of all stakeholders and reward them for their significant efforts during the Chapter 11 Cases.

**B.     Development of the KEIP**

12. The KEIP was developed with substantial input from the Debtors' Chief Restructuring Officer, Allen Wilen, from EisnerAmper LLP ("**EisnerAmper**"), a leading consulting firm specializing in financial advisory services and turnaround management. EisnerAmper has significant experience in chapter 11 restructurings and is well-suited to provide input on the Debtors' executive and employee incentive plans.  The Debtors have given authority

---

[3]   The KEIP is attached hereto as **Exhibit B**.  The names, titles, and salaries of the Participants have been redacted and filed under seal in accordance with a motion to seal filed contemporaneously herewith.

to Mr. Wilen, in his capacity as Chief Restructuring Officer, to lead, manage and assist the Debtors with the Chapter 11 Cases.

13. EisnerAmper, relying on its considerable experience, assisted the Debtors in designing the KEIP, keeping in mind the Debtors' dual goals of maximizing value and ensuring quality patient care. The KEIP was designed in a reasonable, cost-effective way to promote the appropriate incentives under the circumstances of these Chapter 11 Cases. The KEIP has and will continue to incentivize participants in connection with a sale transaction with respect to SCH and the closure of HUH. The Debtors designed the KEIP to focus on going concern or refinancing transactions for SCH, as such transactions will bring more value to the Debtors and their estates than a liquidation, and the successful implementation of a closure of HUH, to minimize further economic loss and ensure quality patient care and safety.

**C.     Description of the KEIP**

14. Each Participant under the KEIP is designated as falling within one of three silos – Philadelphia Academic Health System (the "**PAHS Participants**"), HUH (the "**HUH Participants**") or SCH (the "**SCH Participants**"), depending on their particular role within the Debtors' organizational structure.

15. Each Participant under the KEIP may receive a total incentive amount (for each Participant, the "**Incentive Payment**"), determined as a percentage of each Participant's base salary. The applicable percentage of base salary for each Participant was determined by the Debtors, with consultation from Mr. Wilen, based on the relative criticality of each Participant and projected impact on the Debtors' restructuring goals.

16. All Participants, regardless of silo, received twenty-five percent (25%) of the Incentive Payment designated for such Participant prior to the Petition Date as an incentive to perform all of the tasks necessary to facilitate the filing of the Chapter 11 Cases.

17. The KEIP provides that PAHS Participants will receive the remaining seventy five percent (75%) of the Incentive Payment applicable to each such Participant upon the closing of a sale of SCH or confirmation of a chapter 11 plan for St. Christopher's Healthcare, LLC.

18. The KEIP provides that HUH Participants will receive the remaining seventy five percent (75%) of the Incentive Payment applicable to each such Participant upon the completion of the closure of HUH.

19. The KEIP Provides that STC Participants will receive thirty five percent (35%) of the Incentive Payment applicable to each such Participant upon the signing of an asset purchase agreement with respect to SCH and/or St. Christopher's Healthcare, LLC, and will receive the remaining forty percent (40%) of the Incentive Payment applicable to each such Participant upon consummation of a sale of SCH or confirmation of a chapter 11 plan for St. Christopher's Healthcare, LLC.

20. The sum of all potential Incentive Payments under the Plan is $824,200, equating to, on average, $32,960 per Participant.

21. The Participants will only be eligible to be paid the post-petition portions of their respective Incentive Payments if the Debtors successfully achieve their restructuring goals noted above, which were narrowly based on the particular silo into which each Participant fits and designed to ensure the completion of the Debtors' objectives.

22. Each PAHS Participant, in order to participate in the KEIP, must agree to the following conditions: (i) if the PAHS Participant leaves employment with PAHS for any reason

prior to October 31, 2019, such PAHS Participant must repay a prorated portion of the prepetition portion of the Incentive Payment; (ii) the PAHS Participant must execute a non-disclosure agreement; (iii) the PAHS Participant must be employed on the applicable trigger date in order to receive the remaining portion of the Incentive Payment; (iv) the PAHS Participant must waive all entitlement to severance payment; and (v) the PAHS Participant will remain an at-will employee of PAHS.

23. Each HUH and STC Participant, in order to participate in the KEIP, agreed to the following conditions: (i) the HUH or STC Participant must execute a non-disclosure agreement; (ii) the HUH or STC Participant must be employed on the applicable trigger date in order to receive the remaining portion of the Incentive Payment; (iii) the HUH or STC Participant must waive all entitlement to severance payment; and (iv) the HUH or STC Participant will remain an at-will employee of Center City Healthcare, LLC or St. Christopher's Healthcare, LLC, respectively.

24. Completion of the Debtors' restructuring objectives has required and will continue to require extensive and devoted efforts from the Participants, in consultation and cooperation with the Debtors' legal and financial advisors, all while the Participants must continue to operate the Debtors' businesses under challenging circumstances. These obligations have been and will be compounded by the extraordinary pressures and demands on running the Debtors' businesses and dealing with the day-to-day demands and time constraints attendant to these Chapter 11 Cases, including additional reporting obligations, monitoring the processes for the proposed sale and/or closure of the Debtors' hospitals, as applicable, all while ensuring that the Debtors continue to provide quality patient care.

**RELIEF REQUESTED**

25. Through this Motion, the Debtors request that the Court enter the Proposed Order, authorizing the Debtors to continue, on a postpetition basis, to implement the KEIP and to make the Incentive Payments to the Participants in accordance with the terms thereof.

**BASIS FOR RELIEF**

26. The Debtors believe that if the relief sought herein is not granted, there is a significant risk that the Participants will not be incentivized to continue to perform and take on the extraordinary tasks necessary to promote the successful completion of the Debtors' restructuring goals of maximizing value for creditors and ensuring quality patient care. The Participants provide complex, critical services to the Debtors, and the deterioration of their performance would materially and adversely affect the successful implementation of the Debtors' restructuring goals. The KEIP proposed in this Motion will provide the Participants with the appropriate incentive to achieve the Debtors' restructuring objectives, thus maximizing the value of the estates for the benefit of all creditors while ensuring the Debtors continue to provide quality patient care.

**A.     Implementation of the KEIP as Provided Herein is a Sound Exercise of the Debtors' Business Judgment.**

27. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1). In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999) (citations

omitted) (affirming bankruptcy court approval of various employee incentive programs and requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property); *see also In re Phoenix Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.,* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.,* 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

28.     This Court has recognized that a debtor's implementation of incentive-based programs, such as the KEIP, is a valid exercise of business judgment. *See e.g.*, *In re Glob. Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) ("The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."). When determining whether a compensation proposal satisfies the sound business judgment test, courts have used a number of non-exhaustive factors: (i) whether the plan is calculated to achieve the desired performance; (ii) whether the cost of the plan is reasonable in the context of the debtor's assets, liabilities, and earning potential; (iii) whether the scope of the plan is fair and reasonable; (iv) whether the plan is consistent with industry standards; (v) what due diligence efforts the debtor made in investigating the need for a plan; and (vi) whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation. *Id.* at 786 (*citing In re Dana Corp.,* 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006)). The Debtors respectfully represent that the KEIP meets the requirements for sound business judgment, including, without limitation, satisfying each of the factors listed above.

29. First, the KEIP is calibrated to achieve the desired performance, which is to achieve the Debtors' restructuring objectives of: (i) the successful sale of SCH; (ii) the successful closure of HUH; and (iii) ensuring quality patient care at all of the Debtors' facilities. Under the KEIP, the Participants can only obtain an Incentive Payment upon achievement of the particular restructuring goal applicable to such Participant. These targets are directly aligned with the Debtors' objectives in these Chapter 11 Cases. Thus, the Participants have been, and will continue to be incentivized to achieve the desired performance under the KEIP.

30. Further, the KEIP has been an uncertain prospect for each Participant. At the time of each Participant's agreement to the terms of the KEIP, the Debtors did not have (and still do not have) a stalking horse buyer for SCH, and the proposed closure of HUH was and remains an arduous task. The proposed KEIP requires results materially beyond the current status quo. Indeed, courts in this district have found key employee incentive plans sufficiently incentivizing even when the objective is merely closing a sale with an already established stalking horse bidder. *See*, *e.g.*, *In re Diamond Glass, Inc.,* Case No. 08-10601 (Bankr. D. Del. 2008) (CSS) (rejecting the notion that an incentive plan was inappropriate or unnecessary when a stalking horse bidder has come forward with a viable proposal to purchase substantially all of the Debtors' assets.) In this case, without an existing stalking horse, the targets set forth in the proposed KEIP are truly challenging objectives and are in the best interests of the Debtors and their estates.

31. Second, the cost of the KEIP is reasonable in the context of the Debtors' assets, liabilities, and earning potential because the payouts under the proposed KEIP are minimal compared to the correlative gains the estates will realize upon the completion of a successful sale and the value of ensuring patient care throughout the process cannot be valued in dollars.

10

32.     Third, the scope of the KEIP is fair and reasonable because it applies to only a limited subset of the Debtors' most critical employees in positions most integral to the Debtors' restructuring efforts. As noted above, the Participants play vital roles in both overall operations of the hospitals, but will also play significant roles in promoting a successful sale process and/or closure process with respect to HUH. Given the nexus between the diligent efforts of the Participants and the Debtors' ability to promote a successful sale and/or closure process, it is reasonable, fair and otherwise appropriate to incentivize the Participants through the KEIP.

33.     Finally, the KEIP is consistent with industry standards and is the product of the Debtors' due diligence and consultation with counsel and other advisors. It is important to note, as a preliminary matter, that independent counsel is not always necessary, despite being one of the factors contemplated in the sound business judgment analysis. *See In re Glob. Home Prods., LLC,* 369 B.R. at 786 (noting that, although Debtors did not use independent counsel, the plans were modelled after plans that had previously been used and approved and had "satisfied the independent 'test of time'"). Here, the KEIP is modelled after, and shares similar components with, incentive plans that have previously been approved by this Court. *See In re Arecont Vision Holdings, LLC*, Case No. 18-11142-CSS (Bankr. D. Del. June 7, 2018) [D.I. 106] (approving incentive plan earned and payable upon sale closing); *In re M&G USA Corporation*, Case No. 17-12307-BLS (Bankr. D. Del. Jan. 5, 2018) [D.I. 629] (same). Accordingly, the KEIP is a sound exercise of Debtors' business judgment pursuant to § 363 of the Bankruptcy Code.

**B.    The KEIP is an Incentive Plan Not Governed or Prohibited by Sections 503(c)(1) or 503(c)(2) of the Bankruptcy Code.**

34.     Section 503(c) of the Bankruptcy Code places limitations on a debtor's transfers to or obligations incurred for the benefit of insider employees. 11 U.S.C. § 503(c). Specifically, section 503(c)(1) places a general prohibition on retention plans for insiders, and places stringent

requirements on debtors attempting to overcome that prohibition. Section 503(c)(2), on the other hand, limits severance payments, and section 503(c)(3) governs other transfers to managers that take place outside the ordinary course of business. *Id.*.

35. Because, by its plain language, section 503(c)(1) pertains only to retention plans and section 503(c)(2) pertains only to severance payments, neither section applies to an incentive-based compensation plan such as the KEIP. *See In re Residential Capital, LLC,* 491 B.R. at 83 ("When a plan is designed to motivate employees to achieve specified performance goals, it is primarily incentivizing, and thus not subject to section 503(c)(1)."). In addition, the Court has further narrowed the scope of 503(c)(1) to include a materiality requirement. *In re Nellson Nutraceutical, Inc.,* 369 B.R. 787, 802 (Bankr. D. Del. 2007) ("Thus, the Court reads section 503(c)(1) to mean 'a transfer made to . . . an insider of the debtor for the [primary] purpose of inducing such person to remain with the debtor's business.'"). In other words, incidental retentive effects do not subject an incentive plan to the stringent requirements of section 503(c)(1); retention must be the primary purpose to bring a plan within the purview of section 503(c)(1). *In re Dana Corp.,* 358 B.R. at 571 ("[M]erely because a plan has some retentive effect does not mean that the plan, overall, is retentive rather than incentivizing in nature."); *In re Glob. Home Prods., LLC,* 369 B.R. at 786 (noting that "all compensation has a retentive element" and still finding the compensation plan "primarily incentivizing and only coincidentally retentive").

36. Here, although the KEIP may have some retentive effects, the primary goal is to incentivize the Participants to meet certain performance objectives that will maximize recoveries for the estates and parties in interest and ensure quality patient care. Consequently, because the KEIP is an incentive-based plan and not a retention plan, the Debtors respectfully aver that

sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code do not apply to the KEIP. The KEIP, therefore, falls within the purview of section 503(c)(3) of the Bankruptcy Code.

**C.      The KEIP Satisfies the Requirements of Section 503(c)(3) of the Bankruptcy Code**

37.     The Debtors' implementation of the KEIP is authorized under section 503(c)(3), which precludes payment as an administrative expense of "other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3).  Because the language of section 503(c)(3) closely mirrors that of section 363(b) of the Bankruptcy Code, courts have applied the same business judgment standard when analyzing cases under section 503(c)(3).  *In re Glob. Home Prods., LLC,* 369 B.R. at 783 (providing that plans that are primarily incentive, rather than retentive, are analyzed under "the more liberal business judgment review under § 363" of the Bankruptcy Code).

38.     As set forth above, the KEIP satisfies the requirements of section 363(b) of the Bankruptcy Code and, therefore, the KEIP similarly satisfies section 503(c)(3) of the Bankruptcy Code as a proper exercise of Debtors' business judgment that is justified by the facts and circumstances of the Chapter 11 Cases.

## RESERVATION OF RIGHTS

39.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## **NOTICE**

40. The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002. Given the nature of the relief sought herein, the Debtors respectfully submit that no further notice of this Motion is required.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: August 15, 2019    **SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Aaron S. Applebaum*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Counsel for Debtors and Debtors in Possession*