## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | |
| | : | |
| CENTER CITY HEALTHCARE, LLC | : | Case No. 1:19-11466-KG |
| d/b/a HAHNEMANN UNIVERSITY | : | |
| HOSPITAL, *et al.1* | : | Chapter 11 |
| | : | |
| Debtor, | : | |
| | : | |

## APPENDIX TO MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES

---

1 The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

Relevant Sections from Collective
Bargaining Agreements between
District 1199C and Hahnemann
University Hospital

Agreement

By and Between

Hahnemann University Hospital

And

National Union of Hospital and Health Care

Employees, AFSCME, AFL-CIO

and its affiliate District 1199C

Technical Unit

July 1, 2012

through

June 30, 2018

AGREEMENT                                                     1

WITNESSETH:                                                   1

ARTICLE I                                                     2
RECOGNITION

      ARTICLE II                 4
      MANAGEMENT RIGHTS

      ARTICLE III                5
      CHECKOFF

ARTICLE IV                                                    7
PROBATIONARY EMPLOYEES

ARTICLE V                                                     7
HOURS OF WORK

ARTICLE VI                                                    8
UNION SECURITY

ARTICLE VII                                                   9
GRIEVANCE PROCEDURE

ARTICLE VIII                                                 10
ARBITRATION

ARTICLE IX                                                   10
LAYOFF

ARTICLE X                                                    11
RECALL

ARTICLE XI                                                   12
SENIORITY

ARTICLE XII                                                  14
PROMOTION OR TRANSFER

ARTICLE XIII                                                 14
SHIFT DIFFERENTIAL

ARTICLE XIV                                                  15

App. 003

DEATH IN THE FAMILY

ARTICLE XV                                                          16
HOLIDAYS

ARTICLE XVI                                                         17
VACATION

ARTICLE XVII                                                        18
JURY DUTY

ARTICLE XVII                                                        19
NON-DISCRIMINATION

ARTICLE XIX                                                         19
PART-TIME EMPLOYEES

ARTICLE XX                                                          19
NO STRIKES, LOCKOUTS AND WORK STOPPAGES

ARTICLE XXI                                                         20
UNION ACTIVITY, ACCESS TO HOSPITAL AND BULLETIN BOARDS

ARTICLE XXII                                                        21
PERSONNEL FILES

ARTICLE XXIII                                                       21
SAFETY

ARTICLE XXIV                                                        22
UNPAID LEAVE

ARTICLE XXV                                                         23
WAGES

ARTICLE XXVI                                                        24
SICK LEAVE

ARTICLE XXVII                                                       25
WELFARE

ARTICLE XXVIII                                                      26
TRAINING AND UPGRADING

**App. 004**

ARTICLE XXIX                                          33
PER DIEM EMPLOYEES

ARTICLE XXIX                                          33
PENSION FUND

ARTICLE XXXI                                          35
UNIFORMS

ARTICLE XXXII                                         35
CALL BACK & ON CALL

ARTICLE XXXIII                                        36
TRAVEL REIMBURSEMENT

ARTICLE XXXIV                                         36
COMMITTEES

ARTICLE XXXV                                          37
GENERAL

ARTICLE XXXVI                                         39
TERMINATION

**App. 005**

# AGREEMENT

THIS AGREEMENT made and entered into this 1st day of July, 2016, between HAHNEMANN UNIVERSITY HOSPITAL hereinafter called "Hahnemann" and NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, AFSCME, AFL-CIO, and it's affiliate District 1199C hereinafter called "Union".

## WITNESSETH:

WHEREAS, the parties hereto recognize that the enlightened participation of the public, management and labor is needed if Hahnemann is to make its maximum contribution to the community, and recognizing that complete and uninterrupted patient care is of vital importance to health, welfare and safety of the community, and desiring to establish a standard of wages and other conditions of employment under which members of the Union shall work for Hahnemann during the term of this Agreement, and

WHEREAS, the parties hereto desire to regulate relations  between the parties with a view to securing harmonious cooperation thereby averting interruptions and interferences with services to patients,

NOW THEREFORE, in consideration of the mutual promises hereinafter set forth, it is agreed by and between the parties as follows:

App. 006

## ARTICLE I

### RECOGNITION

1. Hahnemann hereby recognizes the Union as the sole and exclusive bargaining representative of the Employees of Hahnemann as defined in Section 1.1 below pursuant to a certification by the National Labor Relations Board, Case No. 3-RC-12537 which became final on April 21, 1977 and this Agreement shall apply only to such Employees.

1.1. The bargaining unit shall consist of all full time and regular part-time Employees in the following classifications who regularly work twenty (20) or more hours per week, consisting of Anesthesia Technician I, Anesthesia Technician II, Cardiology Technician, Cardiac Cath Technician (Registered), Cardiac Cath Technician (Non-Registered), Cardiac Ultrasound Technician, Catheterization Technician Aide, Clinical Dietitian Technician I (Clinical Dietetic Technician I), Clinical Dietitian Technician II, CT/MRI Technologist, CT Technologist, Dental Assistant I, Dental Assistant II, Diagnostic Radiology Tech I (Non-Registered), Diagnostic Radiology Tech II, Dialysis Technician/Hemodialysis Technician, Dialysis Equipment Technician, Dosimetrist, EEG Technician, EKG Technician, Senior EKG Technician, EMG Technician, Senior EMG Technician, EPS Lap Technician, Chief Technician - EPS, Exercise EKG Technician, Senior Exercise EKG Technician, Intravenous Admixture Technician, Exterminator, Lab Assistant Technician, Laboratory Technician I, Laboratory Technician II, Senior Laboratory Technician, Diagnostic Lead Technician, Special Procedure, Library Technician, Mammography Technologist, Medical Assistant, Medical Technician, MRI Technologist, Nuclear Medicine Technician I (Non-Registered), Nuclear Medicine Technician II, Senior Nuclear Medicine Technician, Obstetrical Technician (Non- Certified), Obstetrical Technician (Certified), Occupational Therapy Assistant, Perfusionist, Pharmacy Technician, Physical Therapy Assistant, Polysomnographic Technician (Non-Registered), Polysomnographic Technician (Registered), Senior Polysomnographic Technician, Radiation Therapy Technician I (Non-Registered), Radiation Therapy Technician II (Registered),  Senior Radiation Therapy Technician, Respiratory Therapy Technician I, Respiratory Therapist - CRTT, Reuse Technician, Routine Technologist, Simulator Technician, Surgical Technician Certified, Surgical Technician (Non-Certified), Chief Surgical Technician, Ultrasound Technologist AUH, Ultrasound Technologist AUIS, Ultrasonographer AUH, Ultrasonographer AUIS, Vascular Laboratory Technician, Phlebotomist,  Lab Support I, Lab Support II, Technical Lab Assistant, Medical Lab Technician, Activities Therapist, Charge Therapist, Child Monitor, Coordinator of Suicide Prevention Hotline,  Creative Art Therapist I, Creative Art Therapist II, Forensic Homeless Worker, Dental Hygienist I,  Dental Hygienist II, Mental Health Worker I, Mental Health Worker II, Mental Health Worker III, Movement Therapist, Nutritionist I, Nutritionist II, Occupational Therapy Assistant,  Psychiatric Social Worker I, Psychiatric Social Worker 11, Psychiatric Social Worker lll,  Pulmonary Function Technologist, Registered Dietitian I, Registered Dietitian II, Registered Renal Dietitian, Research Assistant (MHS), Research Technician- Prison, Recreation Therapist,  Respiratory Therapist I (Registry Eligible), Respiratory Therapist II (Registered), Respiratory Care Practitioner Clinical Associate Registry Eligible (RCP-CA Registry Eligible), Respiratory Care Practitioner Clinical Associate Registered (RCP-CA Registered), Substance Abuse Counselor, Vocational Rehabilitation

(c) In the event that na Employee becomes eligible for benefits under the Pennsylvania Worker's Compensation Laws dues to sickness or injury as a result of employment, the Employee shall be paid at his/her regular rate of pay for the first seven (7) calendar days in which the Employee loses time due to such illness or injury. If the Employee remains eligible for Worker's Compensation for at least (14) calendar days, the Employee shall reimburse Hahnemann for the seven (7) calendar day's pay as aforesaid.

(d) Pay for any day sick leave shall be at the Employee's regular pay. However, in the event that an Employee's illness extend beyond seven (7) consecutive days, Hahnemann will pay the Employee to the extent of his/her entitlement and for each day during which can Employee collects disability benefits, one-third (1/3) of a day's pay per diem (to be changed to Employee's accumulated wick leave) to supplement disability benefits paid under the Union's welfare plan which amounts to two-thirds (2/3) of a day's pay to make a total of one (1) full day's pay for each such day of sickness.

3. Hahnemann reserves the right to require the doctor's certificate in order fro an Employee to receive sick leave pay for absences of more than two (2) days. In order to qualify for sick leave, an Employee must notify his/her supervisor of his/her absence in accordance with departmental procedure, which shall be no more than one (1) hour prior to the start of the shift, except that the Nursing Department may require up to three (3) hours notice prior to the start of the evening and night shifts. Employees who have been on sick leave also may be required to be examined by the Hahnemann Employee Clinic before being permitted to return to work.

4. An Employee on a leave of absence shall not earn sick leave under the provisions of this article.

5. Part-time Employees shall receive pro-rata sick leave benefits.

6. In the event an Employee is sintered while on the job and is sent home or admitted to the hospital by the Hahnemann Employee/Student Health Clinic, or when that is closed, by the Emergency Room, before the end of the shift, the Employee shall be paid for the entire shift.

In the event an Employee becomes ill and is sent home, the Employee shall be paid for the hours actually worked and the hours remaining in the Employee's shift shall be charged to the Employee's accumulated sick leave. An Employee will not be charged for services rendered during working time by the Employee/Student Health Clinic or the Emergency Room.

## ARTICLE XXVII

### WELFARE

1. Hahnemann shall contribute monthly at a rate of thirty six and one fifth percent (36.2%) of gross payroll to the Benefit Fund on behalf of all employees enrolled in the Benefit Fund less an amount equal to all employee copays for the same month period. This rate shall stay in place through June 2014, at which time there shall be a reopened on the sole issue of

**App. 008**

health benefits Employees shall contribute toward their health benefits as set forth by the Fund. Hahnemann remit all employee copays to the Fund.

    (a) The exception as to the contract remaining in effect during the welfare contribution re-opener is the Article regrind No Strike and No Lockouts

    (b) Retirees: As of April 1, 2012, the same medical coverage will be provided for retirees aged 62-64 with at least 20 years of service as it provided by the Benefit Fund and Medicare to those who have reached age 65. These benefits will be medical, hospital and anesthesia, drug, vision care, and private duty nursing. Disability is not included, and death benefits will be reduced to the level provided to other retirees.

2. The Fund shall be administered under the terms and provisions of the Agreement and Declaration of Trust and any amendments thereof, which provide for equal representation by the Union and Employers contributing to said Fund and that any dispute whatsoever that may arise or deadlock that amy develop among or between said Trustees shall be submitted to arbitration before an Arbitrator or Umpire, except as may be otherwise provided for in said Agreement and Declaration of Trust, and his/her decision shall be final and binding.

3. An independent audit of the Fund shall be made annually and a statement of the results shall be furnished to Hahnemann.

4. Together with the periodic payments herein provided, Hahnemann shall submit regularly monthly reports to the Fund in such form as may be necessary for the sound and efficient administration of the Fund. Such regular monthly reports shall, as a minimum, include Employee's names, classifications, date of fire, hours of work,  Social Security numbers, base and gross wages or salaries paid to Employees, dates of termination or leave and such other information as may be required by law or by the fund in order to determine eligibility for benefits. Hahnemann agrees to permit the fund accountant to audit it's records to verify the accuracy of it's payments.

5. All Employees in the technical unit shall continue to be covered under either the Union's Philadelphia Benefit Fund or Hahnemann's medical plans, whichever is currently applicable, and once each year, on or about November 1, all Employees will have the option to exercise to opt for one plan or the other.

## ARTICLE XXVIII

### TRAINING AND UPGRADING

1. Effective July 1, 1995, Hahnemann shall contribute to the Union's Training & Upgrading Fund a maximum contribution to one and one-half percent (1.5%) of the gross payroll for all Employees covered by this Agreement who have satisfactorily completed their probationary period.

    Contributions so received by the Trustees shall be used to study hospital manpower needs, including shortages in entry level jobs, upgraded positions and credential jobs; to develop career ladders, and to subsidize Employees in training and when necessary, the costs

**App. 009**

**PENSION FUND**

1.  Effective July 1, 2012, Hahnemann shall contribute monthly to the Philadelphia and Vicinity Pension Fund for Hospital and Health Care Employees (hereinafter called the "Fund"). Hahnemann shall contribute to the Pension fund for Hospital and Health Care Employees — Philadelphia and Vicinity at rates of gross payroll as set forth below.

| Effective July 1, 2012 | 12.5% |
|---|---|
| Effective July 1, 2013 | 14% |
| Effective July 1, 2014 | 15.5% |
| Effective July 1, 2015 | 17.25% |
| Effective July 1, 2016 | 18.75% |
| Effective July 1, 2017 and thereafter | 20.5% |

Such payments will be used by the Trustees of the Philadelphia and Vicinity Pension Fund for Hospital and Health Care Employees for the purpose of providing pension or retirement benefits for the Employees within the bargaining unit, as the Trustees may from time to time determine. The parties will recommend the following pension benefit improvements:

   (a)  The age of retirement will be reduced from 65 to 62

   (b)  Retirees will receive the same percentage increase as working members

   (c)  A retirement incentive plan will be implanted in an amount not to exceed $2.5 million.

2.  Such payments by Hahnemann shall be made monthly based upon the previous month's payroll.

3.  The Fund shall be administered under the terms and provisions of the Agreement and Declaration of Trust and any amendments thereof which provide for equal representation by the Union and the Employer contributing to said Fund and that any dispute whatsoever that may arise or deadlock that may develop between such Trustees shall be submitted in arbitration before an arbitrator or umpire, except as may be otherwise proved for in said Agreement and Declaration of Trust, and his decision shall be final and binding.

4.  An independent audit of the Philadelphia and Vicinity Pension Fund for Hospital and Health Care Employees shall be made annually and a statement of the results thereof shall be furnished to Hahnemann.

5.  Together with the periodic payments herein provided, Hahnemann shall submit regular monthly reports in such form as may be necessary for the sound and efficient administration of the Fund.

6.  Such Fund at all times shall take whatever action is necessary to secure and retain approval of the U.S. Internal Revenue Service as a qualified pension fund.

7.  Hahnemann agrees to make available to the Philadelphia and Vicinity Pension Fund for Hospital and Health Care Employees any such records of Employees as names, classifications, dates of hire, hours or work, social security numbers, accounts of payroll and/or wages paid, and dates of termination or leave which the Fund may require in connection with the sound and efficient operation of the Funds or that may be so required by ERISA in order to determine the eligibility of Employees for Fund benefits, and to permit an accountant for the Fund to audit such records.

8.  Hahnemann's obligation with respect to contributions to existing pension plans to March 10, 1975, shall be the present cost of such existing plans to the Hospital per Employee. Hahnemann agrees that all Employees whose rights have vested in the existing pension plan shall be entitled to those right either in the form of a deferred benefit, or in the form of a present actuarially determined value of such benefit.

# ARTICLE XXXI

### UNIFORMS

1.  Hahnemann agrees to continue its uniform policy as heretofore.

2.  Those Employees who are required to wear uniforms and who are not provided uniforms shall receive a uniform allowance of $90 annually, payable in three (3) equal installments, on August 15, December 15, and April 15 of each contract year.

3.  In the event a uniform is lost due to job hazards, Hahnemann shall replace the uniform or reimburse the Employee the cost of the uniform, at the option of Hahnemann.

# ARTICLE XXXII

### CALL BACK & ON CALL

1.  Effective June 30,1995, Hahnemann shall continue to make monthly contributions of the sum of seven and one-half cents ($.075) per hour for all hours paid for Employees covered by this Agreement who have satisfactorily completed their probationary period to jointly administered group legal services trust fund to be known as District 1199C, National Union of Hospital and Health Care Employees Group Legal Services Fund (hereinafter refereed to as "the Fund").

2.  Such payments by Hahnemann shall be made monthly based on the previous month's payroll. Contributions so received by the Trustees shall be used to provide Employees with legal services and related benefits, as the Trustees of said from time to time determine.

3.  The Trustees of the Group Legal Services Fund shall be composed of an equal number of representatives designated by the Union and by the hospitals which contribute to the fund. The Trust Agreement shall provide for bloc voting and for the resolution of any dispute or

App. 011

## TENTATIVE AGREEMENT
### (Technical)

DISTRICT 1199C, NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, AFSCME, AFL-CIO, herein the "Union," and CENTER CITY HEALTHCARE (HAHNEMANN UNIVERSITY HOSPITAL), agree to modify the current collective bargaining agreement as follows:

1.    Amend Article V, Sections 1 through 8 to reflect the following:

Effective upon ratification of this agreement, full-time employees shall receive a one-time bonus of $400 that shall not be added to the employee's base rate. Part-time employees shall receive a prorated bonus based upon their regularly scheduled hours of work.

Effective January 1, 2019: 2.0% across the board and in the rate

Effective January 1, 2020: 2.0% across the board and in the rate

Effective January 1, 2021: 2.0% across the board and in the rate

2.    Create new language to read:

Preceptor Pay: Any employee responsible for training or orienting an employee shall receive preceptor pay in the amount of $1.00 per hour. Management will designate and assign employees as preceptors on a voluntary basis when appropriate. When there are insufficient volunteers, management shall have the right to assign the work.

3.    Amend Article VI, STEP 2 to read:

**STEP TWO**. The grievance shall be reduced to writing by the grievant or the Union and referred to the grievances Department Head or his/her authorized representative. A hearing on the grievance shall be convened **within ten (10) days of receipt.** ~~if requested by either party~~. The Department Head or his/her authorized representative shall have ten (10) days after **the hearing** ~~receipt of the grievance~~ to give his/her answer. If no satisfactory settlement is reached within ~~five (5)~~ **ten (10)** days after the Department Head's answer the grievant or the Union may appeal the matter to –

4.    Amend Article VI, Effect of Failure to Appeal to read:

**Effect of Failure to Appeal**. Any grievance shall be considered as settled on the basis of the last answer of Hahnemann if not appealed to the next step or to arbitration within the time limitations set forth herein. **In the event that the Employer fails to answer a grievance in a timely manner, the grievance shall be deemed to be sustained.** Time is of the essence.

1

**App. 012**

5.      Amend Article XXXI – CALL BACK & ON CALL to reflect the following:

Increase on-call pay from $3.00 per hour to $5.00 per hour. Provide on-call pay for all employees scheduled to be on call.

6.      Amend Article XIII - SHIFT DIFFERENTIAL to read:

1.      A shift differential of ten (10%) percent per hour of an employee's regular straight-time rate shall be paid to all employees **who are assigned to work at least half of their scheduled hours between** ~~assigned whose straight-time hours start at or after~~ 2:00 P.M. and ~~before~~ 6:00 A.M. Shift differential shall be included when calculating an Employee's holiday, vacation or sick pay only, and shall not be included for any other benefit whatsoever. [*The Employer will endeavor to make this change in its payroll system within 90 days, to become effective at that time. In the event the change takes more than 90 days, the Employer shall notify the Union with a new effective date*].

7.      Amend Article XIV, DEATH IN FAMILY to read:

In the event of the death of an employee's parent, spouse, child, brother, sister, mother-in-law, father-in-law, grandparent or grandchild, sister-in-law, brother-in-law, stepparent, stepbrother, stepsister and stepchildren an employee who has completed his/her probationary period will be allowed up to ~~three (3)~~ **five (5)** regular scheduled days off with pay at his/her regular straight time rate provided time off is taken between the date of death and the day following the funeral. In the event the funeral is scheduled on a day that is not a regularly scheduled work day for the employee, s/he shall not receive any pay for that day under this provision. Advance notice must be given to the employee's supervisor before any time off can be taken.

An employee shall be able to use vacation, personal or unpaid days to extend bereavement leave with the approval of the Department Head.

There shall be no duplication of payment that the employee may otherwise receive under this Agreement. Proof of death and verification of relationship may be required **prior to the employee receiving bereavement pay**.

8.      Amend Article XXVI, Section 1 – SICK LEAVE to read:

1.      Sick leave is defined as the absence of an employee from his/her regularly scheduled work because of illness or an injury which is non-work connected and not compensable under the Pennsylvania Worker's Compensation Laws. An employee may use up to ~~two (2)~~ **three (3)** sick days or partial days per year to cover time lost from work for visits to the doctor or dentist, provided such time is requested at least five (5) working days in advance and approved. Such approval shall not be unreasonably denied. An employee may use up to two (2) sick days or partial sick days per year to cover time lost from work for care of an employee's parent, spouse, child, brother, sister, mother-in-law, father-in-law, grandparent or grandchild who are ill.

2

9.    Amend Article XVI, Section 2 – VACATION to read:

| 2. **Continuous Service** | **Paid Vacation (Eff. 1/1/19)** | **(Eff. 1/1/20)** |
|---|---|---|
| One to Five Years | ~~10~~ 11 Work Days | **12 Work Days** |
| Five to Fifteen Years | ~~15~~ 16 Work Days | **17 Work Days** |
| Over Fifteen Years | ~~20~~ 21 Work Days | **22 Work Days** |

(An employee who has worked for six (6) months bus less than one (1) year may take five (5) work days of their first year's vacation at that time).

10.    Amend Article XXVII, Section 1 to reflect the following:

Effective July 1, 2018, the contribution percentage set forth in Article XXI, Section 1 shall be 36.4%. This rate may be increased by the Trustees of the Benefit Fund, if necessary, but not higher than a rate of 38.8%. Employees electing dependent coverage shall contribute an additional $10.00 per week effective July 1, 2018, and an additional $10.00 per week effective July 1, 2019. Employees electing employee only coverage shall contribute an additional $5.00 per week effective July 1, 2019.

11.    Amend Article XXIX, Section 1 to reflect the following:

The parties adopt the Rehabilitation Plan, Schedule A, adopted by the Pension Trustees in 2017 and which sets forth a contribution rate of $21.55%.

12.    Amend XXXIII to read:

Hahnemann agrees to continue its uniform policy as heretofore. Those employees who are required to wear uniforms and who are not provided uniforms shall receive a uniform allowance of ~~$140.00~~ **$175.00** annually payable in three (3) payments on August 15, December 15, and April 15 of each contract year. These payments will be received in a separate check.

13.    Create a Side Letter to read:

The parties agree to meet within ninety (90) days of ratification of the agreement, or anytime thereafter, to address any issues in assigning overtime within any department.

14.    Create a Side Letter to read:

The Employer agrees to maintain the current cost of employees' parking for the remainder of the agreement unless the Employer provides a better benefit to any other unit of employees.

**App. 014**

15.    Create Side Letter to read:

The Employer and the Union agree to meet within ninety (90) days to negotiate changes to the current attendance policy, including allowing the Employer to beginning the progressive discipline process on the eleventh call-out for current employees, and on the eight call-out for employees hired after the effective date of this agreement.  The parties will also address other issues with the attendance policy.

16.    The Employer shall restore any paid leave time utilized by members of the bargaining committee to attend negotiations sessions for the 2018 negotiations with the Employer.

FOR THE EMPLOYER:                           FOR THE UNION:

Date: _____                          Date:_____

4

**App. 015**

# AGREEMENT

By and Between

HAHNEMANN UNIVERSITY HOSPITAL

&

NATIONAL UNION OF HOSPITAL AND HEALTH CARE

EMPLOYEES, AFSCME, AFL-CIO

and its affiliate

DISTRICT 1199C

## SERVICE AND MAINTENANCE UNIT

July 1, 2012

through

June 30, 2018

INDEX

ARTICLE                                                                    PAGE

I            RECOGNITION                                              1
II           CHECK-OFF                                               4
III          UNION SECURITY                                          6
IV           PROBATIONARY EMPLOYEES                                  7
V            WAGES                                                   7
VI           GRIEVANCE PROCEDURE                                     11
VII          ARBITRATION                                             14
VIII         SENIORITY                                               15
IX           PER DIEM EMPLOYEES                                      18
X            NURSES AIDES                                            18
XI           LAYOFF                                                  19
XII          RECALL                                                  20
XIII         PROMOTION OR TRANSFER                                   21
XIV          OVERTIME                                                22
XV           SHIFT DIFFERENTIAL AND SHIFT ASSIGNMENTS                23
XVI          DEATH IN FAMILY                                         24
XVII         JURY DUTY                                               24
XVIII        SICK LEAVE                                              25
XIX          HOLIDAYS                                                27
XX           VACATIONS                                               30
XXI          WELFARE                                                 32
XXII         NON-DISCRIMINATION                                      33
XXIII        NO STRIKES, LOCKOUTS AND WORK STOPPAGES                 34
XXIV         UNION ACTIVITY, ACCESS TO HOSPITAL AND BULLETIN BOARDS  35
XXV          SAFETY                                                  36
XXVI         FLU SHOT PROPOSAL                                       37
XXVII        MAINTENANCE UNIFORMS AND CALL BACK                      37
XXVIII       PENSION FUND                                            38
XXIX         UNPAID LEAVE                                            40
XXX          TRAINING AND UPGRADING                                  42
XXXI         GROUP LEGAL FUND SERVICES                               53
XXXII        HOURS OF WORK                                           54
XXXIII       UNIFORMS                                                56
XXXIV        PERSONNEL FILES                                         56
XXXV         MANAGEMENT RIGHTS                                       57
XXXVI        COMMITTEES                                              59
XXXVII       GENERAL                                                 60
XXXVIII      TERMINATION                                             62

APPENDIX A – CHECK-OFF AUTHORIZATION
APPENDIX B – POLITICAL ACTION FUND CHECK-OFF AUTHORIZATION
APPENDIX C – CREDIT UNION CHECK-OFF AUTHORIZATION
APPENDIX D – WAGES
APPENDIX E – MULTI-INSTITUTIONAL PREFERRED PROVIDER NETWORK

**App. 017**

## AGREEMENT

This Agreement made and entered into this 1st day of July, 2012, between Hahnemann University Hospital, it successors and assigns hereinafter called "Hahnemann", and National Union of Hospital and Health Care Employees, AFSCME, AFL-CIO, and its affiliate District 1199C, hereinafter the called "Union".

## WITNESSETH:

WHEREAS, the parties hereto recognize that the enlightened participation of the public, management and labor is needed if Hahnemann is to make its maximum contribution to the community, and recognizing that complete and uninterrupted patient care is of vital importance to the health, welfare and safety of the community, and desiring to establish a standard of wages and other conditions of employment under which members of the Union shall work for Hahnemann during the term of this Agreement, and

WHEREAS, the parties hereto desire to regulate relations between the parties with a view to securing harmonious cooperation thereby averting interruptions and interferences with services to patients and building occupants,

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth, it is agreed by and between the parties as follows:

## ARTICLE I

## RECOGNITION

1.      Hahnemann hereby recognizes the Union as the sole and exclusive bargaining representative of the employees of Hahnemann as defined in Section 1.1. below pursuant to certifications of the Pennsylvania labor Relations Board Case No. PERA-R-28-E, Case No.

**App. 018**

## ARTICLE XXI

## WELFARE

1.     Effective July 1, 2014 Hahnemann shall contribute monthly at a rate of 36.4% of gross payroll to the Benefit fund on behalf of all employees enrolled in the Benefit Fund less an amount equal to all employee copays for the same month period. This rate shall stay in place through June 2016, at which time there shall be a reopener on the sole issue of health benefits. Employees shall contribute toward their health benefits as set forth by the Fund. Hahnemann shall remit all employee copays to the Fund.

The exception as to the contract remaining in effect during the welfare contribution reopener is the Article regarding No Strikes and No Lockouts.

2.     The Fund shall be held and administered under the terms and provisions of the Agreement and Declaration of Trust and any amendments thereof, which provide for equal representation by the Union and the Employer contribution to said Fund and that any dispute whatsoever that may arise or deadlock that may develop shall be submitted in arbitration except as may be otherwise provided for in said Agreement and Declaration of Trust and his/her decision shall be final and binding.

3.     An Independent audit of the Fund shall be made annually and a statement of the results thereof shall be furnished to Hahnemann.

4.     Together with the periodic payments herein provided, Hahnemann shall submit regular monthly reports in such form as may be necessary for the sound and efficient administration of the Fund.

5.     Hahnemann agrees to make available to the Fund such records of employees as classifications, names, social security numbers, dates of hire, hours of work or wages paid, date

App. 019

of termination or leave, and such other information as may be required by law or by the Union's

Benefit Fund in order to determine the eligibility of employees for the Plan benefits.    The

Employer agrees to permit an accountant for the Plan to audit such records to verify the accuracy

of its payment.

6.    Effective January 1, 2000, each employee for whom Hahnemann makes a

contribution to the Health and Welfare Fund shall pay $15.00 per week by way of payroll

deduction as a contribution towards benefits.    Effective the first full pay period of January 1,

2007, each employee shall pay a total of $20.00 per week by way of payroll deduction as a

contribution towards benefits.    Prior to June 30, 2008 Hahnemann shall meet with the Union for

the purpose of negotiating contribution increases, if any, for the years 2008 and 2009. Effective

the first full pay week after July 1, 2009, employee copays shall increase by $10 to a total of $30

per week. Effective the first full pay week after July 1, 2011, employee copays shall increase by

$10 to a total of $40 per week.     It is understood that the subject of contribution increases is the

only subject, except otherwise provided herein, that may be discussed during such negotiations

and in all other respects, except as noted above.    All other terms and conditions of the

Agreement shall remain in effect for the term of the Agreement.    Such amounts shall be added

to the percentage contributions set forth in sub-paragraph (1).


### ARTICLE XXII

### NON-DISCRIMINATION

Neither Hahnemann nor the Union shall discriminate against any employee covered by

this Agreement, on account of race, color, religious creed, national origin, sex, age or political

affiliation.

**App. 020**

2.    Any maintenance employee who is called back to work after finishing his/her regular day's work shall receive time-and-one-half (1-1/2) his/her straight-time hourly rate for all hours actually worked during the call-back or four (4) times his/her straight time hourly rate whichever is greater.

3.    Hahnemann will make adequate provisions for tool security in the shop area.

4.    In the event a uniform is lost due to job hazards, Hahnemann shall replace the uniform or reimburse the employee the cost of the uniform, at the opinion of Hahnemann.


## ARTICLE XXVIII

## PENSION FUND

1.    Hahnemann shall make a monthly contribution to the Pension Fund for Hospital and Health Care Employees – Philadelphia and Vicinity (hereinafter called the "Fund") the rates of gross payroll as set forth below for the Employees within the bargaining unit of the Hospital exclusive of those Employees who have not completed the probationary period.

| Effective July 1, 2012 | 12.5% |
|---|---|
| Effective July 1, 2013 | 14% |
| Effective July 1, 2014 | 15.5% |
| Effective July 1, 2015 | 17.25% |
| Effective July 1, 2016 | 18.75% |
| Effective July 1, 2017 and thereafter | 20.5% |

Such payments will be used by the Trustees of the Philadelphia and Vicinity Pension Fund for Hospital and Health Care Employees for the purpose of providing pension and retirement

App. 021

benefits for the employees within the bargaining unit, as the Trustees may from to time to time determine.

2.     Such payments by Hahnemann shall be made monthly based upon the previous month's payroll.

3.     The Fund shall be administered under the terms end provisions of the Agreement and Declaration of Trust and any amendments thereof which provide for equal representation by the Union and the Employer contributing to said Fund and that any dispute whatsoever that may arise or deadlock that may develop between such Trustees shall be submitted in arbitration before an arbitrator or umpire, except as may be otherwise provided for in said Agreement and Declaration of Trust, and his/her decision shall be final and binding.

4.     An independent audit of the Philadelphia and Vicinity Pension Fund for Hospital and Health Care Employees shall be made annually and a statement of the results thereof shall be furnished to Hahnemann.

5.     Together with the periodic payments herein provided, Hahnemann shall submit regular monthly reports in such form as may be necessary for the sound and efficient administration of the Fund.

6.     Such Fund at all times shall take whatever action is necessary to secure and retain approval of the U.S. Internal Revenue Service as a qualified pension fund.

7.     Hahnemann agrees to make available to the Philadelphia and Vicinity Pension Fund for Hospital and Health Care Employees any such records of employees as names, classifications, dates of hire, hours of work, social security numbers, accounts of payroll and/or wages paid, and dates of termination or leave which the Fund may require in connection with the sound and efficient operation of the Funds or that may be so required by ERISA in order to

**App. 022**

determine the eligibility of employees for Fund benefits, and to permit an accountant for the Fund to audit such records.

B.       Hahnemann's obligation with respect to contributions to existing pension plans to March 10, 1975, shall be the present cost of such existing plans to the Hospital per employee. Hahnemann agrees that all employees whose rights have vested in the existing pension plan shall be entitled to those rights either in the form of a deferred benefit, or in the form of a present actuarially determined value of such benefit.


## ARTICLE XXIX

## UNPAID LEAVE

Employees with at least six (6) months of service shall be eligible for unpaid leave in accordance with the following:

**1.**       **Maternity Leave**.    Whenever an employee shall become pregnant, she shall furnish Hahnemann with a certificate from her physician stating the expected date of delivery. Unless medically unable to do so, the employee shall be permitted to continue to work through the term of her pregnancy, or she may leave earlier if her physician and/or Hahnemann's Employee Health Clinic certifies that she is unable to continue working.    Maternity leave shall be granted for up to six (6) months after delivery or the termination of pregnancy, and such leave may be extended for an additional six (6) months upon application to, and approval of Hahnemann.    An employee who wishes to return to work within the initial six (6) months period stated above, must so notify Hahnemann in writing at the time her maternity leave commences.

App. 023

## TENTATIVE AGREEMENT
### (Service and Maintenance)

DISTRICT 1199C, NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, AFSCME, AFL-CIO, herein the "Union," and CENTER CITY HEALTHCARE (HAHNEMANN UNIVERSITY HOSPITAL), agree to modify the current collective bargaining agreement as follows:

1.    Amend Article V, Sections 1 through 8 to reflect the following:

Effective upon ratification of this agreement, full-time employees shall receive a one-time bonus of $400 that shall not be added to the employee's base rate. Part-time employees shall receive a prorated bonus based upon their regularly scheduled hours of work.

Effective January 1, 2019: 2.0% across the board and in the rate

Effective January 1, 2020: 2.0% across the board and in the rate

Effective January 1, 2021: 2.0% across the board and in the rate

2.    Create new language to read:

Preceptor Pay: Any employee responsible for training or orienting an employee shall receive preceptor pay in the amount of $1.00 per hour. Management will designate and assign employees as preceptors on a voluntary basis when appropriate. When there are insufficient volunteers, management shall have the right to assign the work.

3.    Amend Article VI, STEP 2 to read:

**STEP TWO**. The grievance shall be reduced to writing by the grievant or the Union and referred to the grievances Department Head or his/her authorized representative. A hearing on the grievance shall be convened **within ten (10) days of receipt.** if requested by either party. The Department Head or his/her authorized representative shall have ten (10) days after **the hearing** receipt of the grievance to give his/her answer. If no satisfactory settlement is reached within five (5) **ten (10)** days after the Department Head's answer the grievant or the Union may appeal the matter to --

4.    Amend Article VI, Effect of Failure to Appeal to read:

**Effect of Failure to Appeal**. Any grievance shall be considered as settled on the basis of the last answer of Hahnemann if not appealed to the next step or to arbitration within the time limitations set forth herein. **In the event that the Employer fails to answer a grievance in a timely manner, the grievance shall be deemed to be sustained.** Time is of the essence.

1

**App. 024**

5.    Amend Article XV, Section 1 to read:

1.    A shift differential of ten (10%) percent per hour of an employee's regular straight-time rate shall be paid to all employees **who are assigned to work at least half of their scheduled hours between** assigned whose straight-time hours start at or after 2:00 P.M. and before 6:00 A.M.  Shift differential shall be included when calculating an employee's holiday pay, sick pay or vacation pay only and shall not be included for any other benefit whatsoever. [*The Employer will endeavor to make this change in its payroll system within 90 days, to become effective at that time.  In the event the change takes more than 90 days, the Employer shall notify the Union with a new effective date*].

6.    Amend Article XVI, DEATH IN FAMILY to read:

In the event of the death of an employee's parent, spouse, child, brother, sister, mother-in-law, father-in-law, grandparent or grandchild, sister-in-law, brother-in-law, stepparent, stepbrother, stepsister and stepchildren an employee who has completed his/her probationary period will be allowed up to three (3) **five (5)** regular scheduled days off with pay at his/her regular straight time rate provided time off is taken between the date of death and the day following the funeral.  In the event the funeral is scheduled on a day that is not a regularly scheduled work day for the employee, s/he shall not receive any pay for that day under this provision.  Advance notice must be given to the employee's supervisor before any time off can be taken.

An employee shall be able to use vacation, personal or unpaid days to extend bereavement leave with the approval of the Department Head.

There shall be no duplication of payment that the employee may otherwise receive under this Agreement.  Proof of death and verification of relationship may be required **prior to the employee receiving bereavement pay.**

7.    Amend Article XVIII, Section 1 to read:

1.    Sick leave is defined as the absence of an employee from his/her regularly scheduled work because of illness or an injury which is non-work connected and not compensable under the Pennsylvania Worker's Compensation Laws.  An employee may use up to two (2) **three (3)** sick days or partial days per year to cover time lost from work for visits to the doctor or dentist, provided such time is requested at least five (5) working days in advance and approved.  Such approval shall not be unreasonably denied.  An employee may use up to two (2) sick days or partial sick days per year to cover time lost from work for care of an employee's parent, spouse, child, brother, sister, mother-in-law, father-in-law, grandparent or grandchild who are ill.

2

**App. 025**

8.    Amend Article XVIII, Section 2 to read:

Upon the completion of a regular full-time employee's probationary period, s/he shall earn paid sick leave at the rate of one (1) day for each month of continuous employment up to a maximum of one hundred-thirty (130) days. **The Employer will indicate sick time balances on employee pay stubs.**

9.    Amend Article XIX, Section 2 to read:

In addition, an employee may request and be granted three (3) **twenty-four (24) hours of** personal holidays of their choice **(sixteen (16) hours of personal holidays for part-time employees)** provided fifteen (15) days advance notice is given and there is no conflict with the work schedule of the Department.  In the event of an emergency, an employee may request the use of his/her three (3) personal holidays without giving fifteen (15) days advance notice provided, that advance approval is sought and obtained, with as must notice as possible and provided further that such approval shall not be unreasonably denied.  Each regular full-time employee shall be paid the number of hours s/he is regularly scheduled to work at his/her regular straight-time rate, and each part-time employee shall be paid the number of hours s/he is regularly scheduled to work at his/her regular rate of pay on a pro-rata basis based upon the average hours per day s/he worked during the thirty (30) day period immediately preceding the holiday, provided that:

(a)    such employee has satisfactorily completed his/her probationary period preceding the taking of such holiday; and

(b)    such employee works his/her entire scheduled work day immediately proceeding and his/her entire scheduled work day immediately following the holiday, except for absence approved by Hahnemann.

10.    Amend Article XX, Section 2 to read:

| 2. | **Continuous Service** | **Paid Vacation (Eff. 1/1/19)** | **(Eff. 1/1/20)** |
|----|---|---|---|
| | One to Eight Years | 10 **11** Work Days | **12 Work Days** |
| | Eight to Fifteen Years | 15 **16** Work Days | **17 Work Days** |
| | Over Fifteen Years | 20 **21** Work Days | **22 Work Days** |

(An employee who has worked for six (6) months bus less than one (1) year may take five (5) work days of their first year's vacation at that time).

— 3

**App. 026**

11.    Amend Article XXI, Section 1 to reflect the following:

Effective July 1, 2018, the contribution percentage set forth in Article XXI, Section 1 shall be 36.4%. This rate may be increased by the Trustees of the Benefit Fund, if necessary, but not higher than a rate of 38.8%. Employees electing dependent coverage shall contribute an additional $10.00 per week effective July 1, 2018, and an additional $10.00 per week effective July 1, 2019. Employees electing employee only coverage shall contribute an additional $5.00 per week effective July 1, 2019.

12.    Amend Article XXVIII, Section 1 to reflect the following:

The parties adopt the Rehabilitation Plan, Schedule A, adopted by the Pension Trustees in 2017 and which sets forth a contribution rate of $21.55%.

13.    Amend XXXIII to read:

Hahnemann agrees to continue its uniform policy as heretofore. Those employees who are required to wear uniforms and who are not provided uniforms shall receive a uniform allowance of $135.00 $175.00 annually payable in three (3) payments on August 15, December 15, and April 15 of each contract year. These payments will be received in a separate check.

**Unit Clerks will order five (5) white button down shirts and two navy blue cardigans by August 30, 2018. Beginning in 2019, Unit Clerks will receive two (2) white button down shirts and one navy blue cardigan each year until the expiration of the CBA. Unit Clerks will therefore not receive an allowance.**

**PCAs will have scrubs provided for them each year and will not receive an allowance.**

14.    Create a Side Letter to read:

It shall be the objective of the Employer, consistent with operational needs and management's right, to assign plant operations work to bargaining unit employees. The current job description for the General Mechanic provides that employees in that position may be assigned to a variety of task across crafts. While it is the intent of the Employer to assign work within craft or job title, the Employer reserves its right to assign work to the General Mechanic across all crafts. Further, as the current job descriptions for all positions within plant operations provide that employees may be assigned to a variety of tasks, the Employer reserves the right in an emergency situation or a situation requiring expedited action, to assign work to employees within a particular craft or trade across crafts and trades. It is the Employer's preference to assign employees within their craft or trade.

15.    Create a Side Letter to read:

The parties agree to meet within ninety (90) days of ratification of the agreement, or anytime thereafter, to address any issues in assigning overtime within any department.

**App. 027**

16.    Create a Side Letter to read:

The Employer agrees to maintain the current cost of employees' parking for the remainder of the agreement unless the Employer provides a better benefit to any other unit of employees.

17.    Create Side Letter to read:

The Employer and the Union agree to meet within ninety (90) days to negotiate changes to the current attendance policy, including allowing the Employer to beginning the progressive discipline process on the eleventh call-out for current employees, and on the eight call-out for employees hired after the effective date of this agreement.  The parties will also address other issues with the attendance policy.

18.    The Employer shall restore any paid leave time utilized by members of the bargaining committee to attend negotiations sessions for the 2018 negotiations with the Employer.

FOR THE EMPLOYER:                    FOR THE UNION:

6/26/18

Date: 6/26/11                         Date:

5

**App. 028**

# Pension Fund Delinquency Policy

**PENSION FUND FOR HOSPITAL AND HEALTH CARE EMPLOYEES - PHILADELPHIA AND VICINITY**

DELINQUENCY POLICY

Adopted By Board of Trustees - May 20, 1991
And Amended September 20, 1993 and January 23, 1995

Trustees of the Pension Fund for Hospital and Health Care Employees - Philadelphia and Vicinity (referred to as the "Fund"), adopt the following delinquency policy with respect to the collection of Employer contributions to the Fund. This delinquency policy is in response to an acknowledgment by the Trustees of their fiduciary responsibility established by the Employee Retirement Income Security Act and Department of Labor regulations concerning the monitoring and collecting of delinquent employer contributions to the Fund. In particular, the Trustees recognize that under certain circumstances a delay in the collection of delinquent employer contributions is an extension of credit to the contributing employer in violation of the prohibited transaction prohibitions of ERISA.

1. Delinquent Employer Timetable

Collective bargaining agreements between contributing employers and District 1199C require contributions to the Fund based on a percentage of gross payroll paid to bargaining unit employees in the prior month. The month in which work covered by such gross payroll is performed is defined as the "Work Month." The following month is the month in which contributing employers make such contribution. This month is defined as the "Contribution Due Month".

**App. 030**

Contributions pursuant to the collective bargaining agreements are due for the Work Month in the following month or the Contribution Due Month. Such employer contributions are delinquent if not received in the Fund office by the last day of the Contribution Due Month.

2. Fund Administrative Staff Contact

A member of the Fund administrative staff will contact by telephone a contributing employer as promptly as possible once a contributing employer becomes delinquent. Such telephone contact will be confirmed in correspondence to the delinquent employer.

3. Delinquent Employer Litigation

Fund administrative staff will refer delinquent contribution matters to legal counsel on the 15th day of the month which immediately follows the Contribution Due Month. Counsel will then contact the delinquent employer, explaining that the Fund will pursue all reasonable steps to collect the delinquency including the enforcement of liquidated damages described below in paragraph 6 and the commencement of enforcement litigation. If in the opinion of counsel the delinquent employer is not cooperating with Fund staff in paying the due amounts, counsel will commence enforcement litigation. In such litigation, counsel will seek all unpaid delinquencies, liquidated damages, interest and attorneys' fees.

App. 031

4. Employer Contribution Reports

Fund administrative staff shall prepare monthly and distribute to Trustees and Co-Counsel a report listing each contributing employer and the date of the last contribution report received by the Fund. Such report shall also show the work month covered by such last contribution report. The report will also list action taken  such as contributing employer contact or referral to legal counsel.

5. Settlements.

Neither the Union nor the Fund administrative staff is authorized to enter into any extension of contribution due date or settlement of delinquent contribution payments. Any extension of time granted a contributing employer must be set forth in writing and approved by the Trustees. Any decision to accept less than the full required contribution amount and interest described in paragraph 6 from a contributing employer shall also be made only by the Trustees and set forth in writing. The Trustees will enter into a settlement in which less than the entire contribution amount plus interest is paid only after concluding that the efforts of collection would prove more costly than the contribution and/or interest not collected as a result of the settlement.

6. Liquidated Damages and Interest

Interest of one and one-half percent per month and liquidated damages of ten percent of the amount of any delinquent contributions will be assessed against any contributing employer if the full contribution amount is not received in the Fund office by the last day of the Contribution Due Month.  Fund

- 3 -

**App. 032**

administrative staff will automatically bill contributing employer for the amount of interest and liquidated damages.  If a contributing employer fails to pay due contributions and/or interest and liquidated damages within thirty days, such matter will be referred to Counsel.  If an employer pays all due contributions and interest, Co-counsel will not pursue the matter.

7.  Audits

Specific audits of contributing employers suspected of delinquencies and periodic or routine random audits of contributing employers will be scheduled by the Trustees as the need arises and will be conducted by auditors employed by the Trustees.  In the event that the audit undertaken by the Trustees results in a delinquency in excess of ten percent (10%) of the total amount of the contributing employer's contribution as indicated from the contribution form submitted by the Employer covering the period in which the delinquency arose, the delinquent employer shall also be obligated to pay the audit costs.

# Health Benefit Plan Delinquency Policy

**App. 034**

**BENEFIT FUND FOR HOSPITAL AND HEALTH CARE EMPLOYEES -
PHILADELPHIA AND VICINITY**

<u>DELINQUENCY POLICY</u>

Adopted By Trustees November 25, 1991
And Amended September 20, 1993 and January 23, 1995

Trustees of the Benefit Fund for Hospital and Health Care Employees -

Philadelphia and Vicinity (referred to as the "Fund"), adopt the following delinquency

policy with respect to the collection of Employer contributions to the Fund. This

delinquency policy is in response to an acknowledgment by the Trustees of their

fiduciary responsibility established by the Employee Retirement Income Security Act

and Department of Labor regulations concerning the monitoring and collecting of

delinquent employer contributions to the Fund. In particular, the Trustees recognize

that under certain circumstances a delay in the collection of delinquent employer

contributions is an extension of credit to the contributing employer in violation of the

prohibited transaction prohibitions of ERISA.

1. <u>Delinquent Employer Timetable</u>

Collective bargaining agreements between contributing employers and

District 1199C require contributions to the Fund based on a percentage of gross

payroll paid to bargaining unit employees in the prior month. The month in which

work covered by such gross payroll is performed is defined as the "Work Month." The

following month is the month in which contributing employers make such

contributions. This month is defined as the "Contribution Due Month".

**App. 035**

Contributions pursuant to the collective bargaining agreements are due for the Work Month in the following month or the Contribution Due Month. Such employer contributions are delinquent if not received in the Fund office by the last day of the Contribution Due Month.

### 2. Fund Administrative Staff Contact

A member of the Fund administrative staff will contact by telephone a contributing employer as promptly as possible once a contributing employer becomes delinquent. Such telephone contact will be confirmed in correspondence to the delinquent employer.

### 3. Delinquent Employer Litigation

Fund administrative staff will refer delinquent contribution matters to legal counsel on the 15th day of the month which immediately follows the Contribution Due Month. Counsel will then contact the delinquent employer, explaining that the Fund will pursue all reasonable steps to collect the delinquency including the enforcement of liquidated damages described below in paragraph 7, the discontinuation of benefits described below in paragraph 4, and the commencement of enforcement litigation. If in the opinion of counsel the delinquent employer is not cooperating with Fund staff in paying the due amounts, counsel will commence enforcement litigation. In such litigation, counsel will seek all unpaid delinquencies, liquidated damages, interest and attorneys' fees.

App. 036

4.  Discontinuation of Benefits

If a delinquent employer has not satisfied the delinquent amount or otherwise entered into a settlement agreement acceptable to the Trustees by the end of the first month which immediately follows the Contribution Due Month, Fund staff shall contact participants working for such delinquent employer and explain that the employer is delinquent and benefit eligibility for the participant will terminate if the delinquency is not fully satisfied by the end of the second month following the Contribution Due Month.  If such delinquency is not fully satisfied by the end of the second month following the Contribution Due Month, and the delinquent employer has not by then entered into a settlement agreement satisfactory to the Trustees, then Fund staff shall automatically deem all participants then working for the delinquent contributing employer as ineligible for benefits.  However, notice to participants is not required prior to the discontinuation of benefit eligibility.  Such lost benefit eligibility will be restored only upon the full payment of the delinquent amount or the execution by the delinquent contributing employer and the Trustees of a settlement agreement.

5.  Employer Contribution Reports

Fund administrative staff shall prepare monthly and distribute to Trustees and Co-Counsel a report listing each contributing employer and the date of the last contribution report received by the Fund.  Such report shall also show the work month covered by such last contribution report.  The report will also list action taken  such as contributing employer contact or referral to legal counsel.

App. 037

6.  Settlements.

Neither the Union nor the Fund administrative staff is authorized to enter into any extension of contribution due date or settlement of delinquent contribution payments.  Any extension of time granted a contributing employer must be set forth in writing and approved by the Trustees.  Any decision to accept less than the full required contribution amount and interest described in paragraph 7 from a contributing employer shall also be made only by the Trustees and set forth in writing. The Trustees will enter into a settlement in which less than the entire contribution amount plus interest is paid only after concluding that the efforts of collection would prove more costly than the contribution and/or interest not collected as a result of the settlement.

7.  Liquidated Damages and Interest

Interest of one and one-half percent per month (calculated on a daily basis) and liquidated damages of ten percent of the amount of any delinquent contributions will be assessed against any contributing employer if the full contribution amount is not received in the Fund office by the last day of the Contribution Due Month.  Fund administrative staff will automatically bill contributing employer for the amount of interest and liquidated damages.  If a contributing employer fails to pay due contributions and/or interest and liquidated damages within thirty days, such matter will be referred to Counsel.  If an employer pays all due contributions and interest, Co-counsel will not pursue the matter.

App. 038

8. Audits

   Specific audits of contributing employers suspected of delinquencies and periodic or routine random audits of contributing employers will be scheduled by the Trustees as the need arises and will be conducted by auditors employed by the Trustees.  In the event that the audit undertaken by the Trustees results in a delinquency in excess of ten percent (10%) of the total amount of the contributing employer's contribution as indicated from the contribution form submitted by the employer covering the period in which the delinquency arose, the delinquent employer shall also be obligated to pay the audit costs.

App. 039