Ex. A

Court of Common Pleas of Philadelphia County
Trial Division
# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JUNE 2019**

**005758**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Corinthia Shields | Nazareth Hospital |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 6022 Hegerman Street, 1st Floor<br>Philadelphia, PA 19135 | 2601 Holme Avenue<br>Philadelphia, PA 19135 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Mercy Health System of Southeastern Pennsylvania |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | One West Elm Street<br>Conshohocken, PA 19428 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Trinity Health Corporation |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 20555 Victor Parkway<br>Livonia, MI 48152 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 13 | ☑ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☑ More than $50,000.00 | ☐ Arbitration<br>☑ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

| CASE TYPE AND CODE (SEE INSTRUCTIONS) |
|---|
| 2M |

| STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS) |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| | Yes   No<br>☐   ☐<br>☐   ☐<br>☐   ☐ |

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Leonard V. Fodera, Esq./ Allison Long, Esquire | 1500 Walnut Street, Suite 900 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215) 569-1212 | (215) 569-1550 | Philadelphia, PA 19102 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 57,203   *173608* | LFodera@FoderaLawFirm.com / ALong@FoderaLawFirm.co |

| SIGNATURE | DATE |
|---|---|
| | June 11, 2019 |

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet
### *(Supplemental Parties)*

| For Prothonotary Use Only (Docket Number) |
| --- |
| |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | Donna L. Buggy, RN |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| | Nazareth Hospital 2601 Holme Avenue Philadelphia, PA 19152 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | Steven Pratta, PA-C |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| | 1526 Jill Road  Willow Grove, PA 19090 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | Eric A. Gruber, M.D. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| | 1722 W. High Street  Haddon Heights, NJ 08035 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | Envision Physician Services North Division a/k/a EmCare North 🔁 |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| | 100 Witmer Drive, Suite 220 Horsham, PA 19044 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | Daniel R. Felbaum, M.D. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| | 3925 Fulton St. NW Apt 2  Washington DC 20007-1378 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | Drexel Neurosciences Institute |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| | 219 N. Broad Street, 7th Floor Philadelphia, PA 19107 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | Global Neurosciences Institute |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| | 219 N. Broad Street, 7th Floor Philadelphia, PA 19107 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | Tenet Healthsystem Hahnemann, LLC dba Hahnemann University 🔁 |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| | 230 N. Broad Street Philadelphia, PA 19102 |

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet
### (Supplemental Parties)

| | For Prothonotary Use Only (Docket Number) |
|---|---|

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Paladin Healthcare Capital, LLC |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | 222 N. Sepulveda Blvd, Suite 9 El Segundo, CA 90245 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | American Academic Health System, LLC |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | c/o Cogency Global, Inc. Registered Agent |
| | 850 New Burton Road, Suite 201  Dover, DE 19904 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |

01-102

ASSESSMENT OF DAMAGES

HEARING IS REQUIRED AND

JURY TRIAL DEMANDED

FODERA & LONG, P.C.

BY:    Leonard V. Fodera, Esquire

       Allison Long, Esquire

Identification Nos.  57203/73608

1500 Walnut Street, Suite 900

Philadelphia, PA 19102

(215) 569-1212

File No.:  31747

Attorneys for Plaintiff

ATTEST

JUN 11 2019

JUDICIAL RECORDS
J. MURPHY

---

CORINTHIA SHIELDS

6022 Hegerman Street, 1st Floor

Philadelphia, PA 19135,

       Plaintiff,

       v.

NAZARETH HOSPITAL

2601 Holme Avenue

Philadelphia, PA 19152

       and

MERCY HEALTH SYSYTEM OF

SOUTHEASTERN PENNSYLVANIA

One West Elm Street

Conshohocken, PA 19428

       and

TRINITY HEALTH CORPORATION

20555 Victor Parkway

Livonia, MI 48152

: COURT OF COMMON PLEAS

: PHILADELPHIA COUNTY

: APRIL JUNE 2019 TERM 2019

: NO. 5758

:

:

:

:

:

:

:

:

:

:

:

:

:

|                                          |     |
|------------------------------------------|-----|
| and                                      | :   |
| DONNA L. BUGGY, R.N.                      | :   |
| Nazareth Hospital                        | :   |
| 2601 Holme Avenue                        | :   |
| Philadelphia, PA 19152                   | :   |
| and                                      | :   |
| STEVEN PRATTA, PA-C                       | :   |
| 1526 Jill Road                           | :   |
| Willow Grove, PA 19090                   | :   |
| and                                      | :   |
| ERIC A. GRUBER, M.D.                      | :   |
| 1722 W. High Street                      | :   |
| Haddon Heights, NJ 08035                 | :   |
| and                                      | :   |
| ENVISION PHYSICIAN SERVICES               | :   |
| NORTH DIVISION a/k/a                     | :   |
| EmCare North Division                    | :   |
| 100 Witmer Drive, Suite 220              | :   |
| Horsham, PA 19044                        | :   |
| and                                      | :   |
| DANIEL R. FELBAUM, M.D.                    | :   |
| 3925 Fulton St NW Apt 2                  | :   |
| Washington, DC 20007-1378                | :   |
| and                                      | :   |
| DREXEL NEUROSCIENCES INSTITUTE            | :   |
| 219 N. Broad Street, 7th Floor           | :   |
| Philadelphia, PA 19107                   | :   |
| and                                      | :   |

GLOBAL NEUROSCIENCES INSTITUTE          :

219 N. Broad Street, 7th Floor          :

Philadelphia, PA 19107          :

      and          :

TENET HEALTHSYSTEM          :

HAHNEMENN, LLC          :

d/b/a HAHNEMANN UNIVERSITY          :

HOSPITAL          :

230 N. Broad Street          :

Philadelphia, PA 19102          :

      and          :

PALADIN HEALTHCARE          :

CAPITAL, LLC          :

222 N. Sepulveda Boulevard          :

Suite 9          :

El Segundo, CA 90245          :

      and          :

AMERICAN ACADEMIC HEALTH          :

SYSTEM, LLC          :

c/o Cogency Global, Inc., Registered Agent          :

850 New Burton Road, Suite 201          :

Dover, DE 19904          :

      Defendants.          :

---

## COMPLAINT - CIVIL ACTION
## MEDICAL MALPRACTICE

## NOTICE TO DEFEND

"You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP."

## AVISO

"Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demand.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

"LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIIO.  VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL."

PHILADELPHIA BAR ASSOCIATION

Lawyer's Referral & Information Service

One Reading Center

Philadelphia, PA 19107

(215) 238-6333

TTY (215) 451-6197

1.      Plaintiff, Corinthia Shields, is an adult individual residing at 6022 Hegerman Street, 1st Floor, Philadelphia, PA 19135.

2.      Defendant, Nazareth Hospital (hereinafter referred to as "defendant Nazareth"), is a general hospital for the treatment and care of patients; said hospital owns, operates, and maintains hospital facilities and a place of business at 2601 Holme Avenue, Philadelphia, PA 19152. Plaintiff is asserting a professional liability claim against this defendant.

3.      Defendant, Mercy Health System of Southeastern Pennsylvania (hereinafter "defendant Mercy") is a healthcare network and/or other business organization for the treatment and care of patients which, at all relevant times, owned, operated, and/or maintained hospital facilities and/or a place of business at 2601 Holme Avenue, Philadelphia, PA  19152 and/or One West Elm Street, Conshohocken, PA 19428. Plaintiff is asserting a professional liability claim against this defendant.

4.     Defendant, Trinity Health Corporation (hereinafter "defendant Trinity") is a

healthcare network and/or other business organization for the treatment and care of

patients which, at all relevant times, owned, operated, and/or maintained hospital facilities

and/or a place of business at 2602 Holme Avenue, Philadelphia, PA  19152 and/or

20555 Victor Parkway, Livonia, MI 48152. Plaintiff is asserting a professional liability claim

against this defendant.

5.     Defendant Donna L. Buggy, R.N. (hereinafter referred to as "defendant Buggy") is a

registered nurse licensed to provide nursing care in the Commonwealth of Pennsylvania.  It

is believed that at all times material and relevant to this lawsuit defendant Buggy was a

registered nurse assigned to the Emergency Department of Defendant Nazareth.  Plaintiff is

asserting a professional liability claim against this defendant.

6.     Defendant Steven Pratta, PA-C (hereinafter referred to as "defendant Pratta") is a

physician's assistant licensed to practice medicine in the Commonwealth of Pennsylvania

who resides at 1526 Jill Road, Willow Grove, PA 19090.  It is believed that at all times

material and relevant to this lawsuit defendant Pratta was a physician's assistant specializing

Emergency Medicine who held staff privileges at defendant Nazareth. Plaintiff is asserting a

professional liability claim against this defendant.

7.      Defendant Eric A. Gruber, M.D. (hereinafter referred to as "defendant Gruber") is a

physician licensed to practice medicine in the Commonwealth of Pennsylvania who resides

at 1722 W. High Street, Haddon Heights, NJ 08035.  It is believed that at all times material

and relevant to this lawsuit defendant Gruber was a physician specializing Emergency

Medicine who held staff privileges at defendant Nazareth. Plaintiff is asserting a professional

liability claim against this defendant.

8.      Defendant, Envision Physicians Services North Division a/k/a EmCare North Division

(hereinafter "defendant EmCare") is a Pennsylvania business corporation which employs

Emergency Medicine physicians and physician's assistants for placement the Emergency

Departments at local area hospitals, which, at all relevant times, maintained a principal place

of business at 100 Witmer Drive, Suite 220, Horsham, PA 19044.  Plaintiff is asserting a

professional liability claim against this defendant.

9.      Defendant Daniel R. Felbaum, M.D. (hereinafter referred to as "defendant Felbaum")

is a physician who was licensed to practice medicine in the Commonwealth of Pennsylvania

at all times material and relevant hereto, who now resides at 3925 Fulton St NW Apt 2,

Washington, DC 20007-1378.  It is believed that at all times material and relevant to this

lawsuit defendant Felbaum was a fellow in a Cerebrovascular/Endovascular Neurosurgical

Fellowship with Defendants Drexel Neurosciences Institute, Global Neurosciences Institute,

Tenet Healthsystem

Hahnemenn, LLC d/b/a Hahnemann University, Paladin Healthcare Capital, LLC and

American Academic Health System, LLC.  It is further believed that Defendant Felbaum held

admitting staff privileges at defendant Hahnemann University Hospital at all times material

and relevant hereto.  Plaintiff is asserting a professional liability claim against this defendant.

10.     Defendant, Drexel Neurosciences Institute (hereinafter "defendant Drexel") is a

medical practice and/or other business organization for the treatment and care of patients

which, at all relevant times, owned, operated, and/or a place of business at 219 N. Broad

Street, 7th Floor, Philadelphia, PA 19107.  Plaintiff is asserting a professional liability claim

against this defendant.

11.     Defendant, Global Neurosciences Institute (hereinafter "defendant Global") is a medical practice and/or other business organization for the treatment and care of patients which, at all relevant times, owned, operated, and/or a place of business at 219 N. Broad Street, 7th Floor, Philadelphia, PA 19107.  Plaintiff is asserting a professional liability claim against this defendant.

12.     Defendant Tenet HealthSystem Hahnemann, LLC, d/b/a Hahnemann University Hospital  (hereinafter referred to as "Defendant HUH"), is a general hospital for the treatment and care of patients; said hospital owns, operates, and maintains hospital facilities and a place of business at 230 N. Broad Street, Philadelphia, PA 19102.   Plaintiff is asserting a professional liability claim against this defendant.

13.     Defendant, Paladin Healthcare Capital, LLC (hereinafter "defendant Paladin") is and was at all times material hereto, a California corporation, partnership, and/or other entity which provides medical care to patients, hospital services to patients, and training and instruction to medical students, interns, residents, and fellows at defendant HUH. Defendant Paladin operates and exists in accordance with the laws of the State of

California and has an office for service of process at 222 N. Sepulveda Boulevard, Suite

950, El Segundo, California 90245.  Plaintiff is asserting a professional liability claim

against this defendant.

14.     Defendant, American Academic Health System, LLC (hereinafter "defendant

American) is and was at all times material hereto, a Delaware corporation, partnership,

and/or other entity which provides medical care to patients, hospital services to patients,

and training and instruction to medical students, interns, residents and fellows. AAHS

operates at defendant HUH and exists in accordance with the laws of the State of

Delaware and has an office for service of process at Cogency Global Inc., 850 New

Burton Road, Suite 201, Dover, Delaware 19904. Plaintiff is asserting a professional

liability claim against this defendant.

15.     At all times material and relevant hereto defendant Buggy was an employee, agent,

servant and/or ostensible agent of Defendants Nazareth, Mercy and Trinity.

16.     At all times material and relevant hereto, defendants Pratta and Gruber were the

10

employees, agents, servants and/or ostensible agents of Defendants Nazareth, Mercy, Trinity and Envision Physicians Services North Division a/k/a EmCare North Division.

17.    At all times material and relevant hereto defendant Felbaum was an employee, agent servant and/or ostensible agent of defendants Drexel Neurosciences Institute, Global Neurosciences Institute, Tenet Healthsystem Hahnemenn, LLC d/b/a Hahnemann University, Paladin Healthcare Capital, LLC and American Academic Health System, LLC.

18.    Plaintiff, then a 42 year old woman, presented to the Emergency Department of defendant Nazareth on December 12, 2017 at approximately 8:18 a.m. with a reason for visit documented by registration as left side of body numb.

19.    Plaintiff initially underwent a rapid triage performed by Jacqueline Rice, R.N. at 8:24 a.m. who documented that plaintiff was in a wheelchair and provided a history of feeling pain and numbness after adjusting herself in bed; shooting pain from lower back down left leg; numbness and tingling in the toes; inability to feel her vagina; inability to walk; and pain intensity of 10 on a scale of 0 to 10.

11

20.    Nurse Rice assigned Plaintiff an ESI level of 2.

21.    Plaintiff was next seen by Defendant Buggy at or about 8:40 a.m. at which time she, without explanation, changed Plaintiff's ESI level to 4.

22.    Plaintiff's records reflect that Defendant Pratta examined Plaintiff at 10 a.m. and noted decreased patellar and Achilles reflex on the left and positive sitting straight leg raise bilaterally, ttp midline lumbar and paraspinal.

23.    Defendant Pratta noted that he discussed Plaintiff's case with Defendant Gruber and that there was agreement in proceeding with a STAT MRI and lab work.

24.    At 10:20 a.m. Defendant Buggy noted Plaintiff to be crying and reporting radiating pain from the left buttock to the left leg at a pain level of 10.

25.    Plaintiff's records reflect that she was transported from the Emergency Department to MRI at or about 12:18 p.m.

26.    The MRI of the lumbar spine was reported at or about 1:10 p.m. to show a small hemangioma to L4; L3-4 mild diffuse disc bulge with superimposed small central disc

protrusion and evidence of an annular tear; L4-5 moderate to large central and right

paracentral disc extrusion with inferior extrusion to the level of inferior L5 endplate (measuring

1x1.5x2.5cm); severe narrowing of the spinal canal and right lateral recess; right neural

foramen mild narrowing; left lateral recess with moderate to severe narrowing; likely

compression of the traversing nerve roots;  L5-S1 small left foraminal disc protrusion; and

cauda equine nerve roots compression at L4-L5 level.

27.    Defendant Pratta reviewed the MRI at 1:20 p.m. and consulted neurosurgery at 1:25

p.m. for suspected cauda equina syndrome.

28.    Defendant Pratta noted that he discussed Plaintiff's case with Defendant Felbaum

who agreed to undertake Plaintiff's care at Defendant HUH and requested that Plaintiff be

given 10 mg of decadron.

29.    Plaintiff's records reflect that Defendant Gruber discussed Plaintiff's case with

Defendant Pratta during which time he recommended the STAT MRI and immediate transfer

for neurosurgical management.

30.   Plaintiff's records from Defendant Nazareth reflect that she was accepted as a transfer patient by Defendants Felbaum and HUH at 1:40 p.m.

31.   Plaintiff's records from Defendant Nazareth reflect that she was not transported from Defendant Nazareth to Defendant HUH by AMR ambulance until approximately 4:40 p.m.

32.   Plaintiff's records from Defendant HUH indicate that she arrived at HUH at or about 6:20 p.m. at which time she underwent a history and physical performed by Tiffany Buchert, PA-C who noted that Plaintiff was accepted as a patient by Defendant Felbaum for an emergent laminectomy and discectomy.

33.   Tiffany Buchert, PA-C's neurological exam noted BLLE strength 4-/5; decreased sensation to light touch LLE; intact and symmetric with abdomen and upper body.

34.   Plaintiff's records from Defendant HUH indicate that she underwent a laminectomy, medial facetectomy and bilateral foraminotomy at L3-L4 and L4-L5 starting at 8:00 p.m. which was performed solely by Defendant Felbaum, who was approximately only 4 months into his fellowship, and without any surgical supervision or assistance by a more senior

14

neurosurgical or spinal surgeon.

35.    Plaintiff's records from Defendant HUH reflect that during the surgical procedure,

Defendant Felbaum caused multiple dural tears requiring repair requiring repair, which

contributed to the procedure being prolonged, taking approximately 3 ½ hours to finish.

36.    Plaintiff's immediate post-operative course was complicated by impaired bladder and

bowel function and lasted throughout the time of her discharge from Defendant HUH on

December 21, 2017.

37.    Plaintiff was seen by Defendant Felbaum at the outpatient office of Defendants Drexel

and Global on January 26, 2018 at which time he believed Plaintiff to have near normal

bladder/bowel control; near full strength in both legs; close to normal sensation.

38.    Plaintiff was seen at the outpatient office of Defendants Drexel and Global on February

1, 2018 for a wound check, at which time Megan K. Moore noted, contrary to Defendant

Felbaum's note from 5 days earlier, Plaintiff to provide a history of numbness throughout

lower half of her body and that she continued to have continence issues due to her inability

15

to feel when she needs to void and move bowels.

39.    To date, Plaintiff suffers from significant pelvic organ prolapse, atonic neurogenic bladder, bladder and bowel dysfunction and incontinence, decreased pelvic sensation resulting in sexual dysfunction, and requires the use of a cane for ambulation.

## COUNT I
### CORINTHIA SHIELDS V. NAZARETH HOSPITAL, MERCY HEALTHSYSTEM OF SOUTHEASTERN PENNSYLVANIA AND TRINITY HEALTH CORPORATION

40.    Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 39 with the same force and effect as if set forth here at length.

41.    On December 12, 2017 Plaintiff was a patient of Defendants Nazareth, Mercy and Trinity.

42.    During the aforesaid date, Plaintiff's treatment was under the care and subject to the supervision of Defendants Buggy, Pratta and Gruber and Defendants Buggy, Pratta and Gruber were obligated to properly treat and supervise the treatment of Plaintiff in a reasonable matter so as to avoid any unreasonable risks of harm to her.

16

43.    Defendants Buggy, Pratta and Gruber failed to properly treat Plaintiff, exercise due care, and conform to the standards of reasonable and adequate nursing and/or medical care and treatment of Plaintiff's serious neurological condition.

44.    The negligence of Defendants Nazareth, Mercy and Trinity by and though the actions and inactions of Defendants Buggy, Pratta and Gruber consisted of the following:

a.    failing to promptly obtain adequate and necessary medical and surgical consultations, including but not limited to neurosurgery and neurology regarding Plaintiff's aforementioned neurological medical condition;

b.    failing to cause a prompt assignment and evaluation by a qualified Emergency Medicine attending physician given the severity of Plaintiff's neurological presentation;

c.    failing to promptly obtain adequate and necessary diagnostic testing, including but not limited lumbar MRI regarding Plaintiff's aforementioned neurological medical condition;

d.    failing to promptly arrange for emergent transfer to a more tertiary facility better equipped to manage and treat Plaintiff's serious neurological condition and cauda equina

17

syndrome;

e.    causing unnecessary and harmful delay to Plaintiff's spinal cord and nerve

root decompression surgery;

f.    failing to adequately monitor Plaintiff's condition;

g.    failing to order and provide close monitoring of Plaintiff by nursing staff;

h.    failing to recognize the increased risk of serious neurological injury associated

with inadequately management and monitoring of signs and symptoms of cauda equina

syndrome;

i.    failing to properly assess Plaintiff's level of acuity and assign appropriate

Emergency Severity Index (ESI);

j.    failing to promptly recognize and address Plaintiff's serious neurological

condition and/or cauda equina syndrome;

k.    failing to take measures to prevent permanent neurological injury and/or

deficits from Plaintiff's spinal cord and nerve root compression;

18

l.      failing to conform to accepted standards of Emergency and Internal Medicine and/or care in the diagnosis, treatment, and/or medical management of a condition of the type suffered by the Plaintiff;

m.      failing to conform to accepted standards of medical practice and/or nursing care in the diagnosis, treatment, and/or medical management of cauda equina syndrome and/or spinal cord and nerve root compression;

n.      increasing the risk that Plaintiff would develop permanent neurological injury and/or deficits from Plaintiff's prolonged spinal cord and nerve root compression;

o.      failing to seek measures to prevent and/or decrease the risk of Plaintiff's developing permanent neurological injury and/or deficits from Plaintiff's prolonged spinal cord and nerve root compression;

p.      failing to perform a proper history and physical examination and subsequent serial examinations of Plaintiff;

q.      disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's

19

neurological complaints, history, signs, and/or symptoms;

      r.     failing to take appropriate measures to ensure the health and safety of Plaintiff;

      s.     disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's clinical

findings; and

      t.     disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's

diagnostic findings;

      u.     Failing to take appropriate measures to ensure the health and safety of Plaintiff;

      v.     Increasing the risk and/or likelihood that Plaintiff would be injured and/or

damaged as she was;

      w.     Increasing the risk and/or likelihood that Plaintiff would suffer permanent

neurological injury and/or deficits following her December 12, 2017 surgery; and

      x.     Increasing the risk and/or likelihood that Plaintiff would suffer significant pelvic

organ prolapse, atonic neurogenic bladder, bladder and bowel dysfunction and incontinence,

decreased pelvic sensation resulting in sexual dysfunction, and requires the use of a cane

20

for ambulation following her December 12, 2017 surgery;

45.    As a direct and proximate result of the failure of Defendants Nazareth, Mercy and Trinity to properly care for her, Plaintiff suffered severe physical pain, disability, suffering, mental anguish.

46.    As a direct and proximate result of the negligence of Defendants Nazareth, Mercy and Trinity, Plaintiff has been obligated to expend various and diverse sums for the medical treatment rendered to her.

47.    As a direct and proximate result of the negligence of Defendants Nazareth, Mercy and Trinity, Plaintiff has suffered a great loss and impairment of earning capacity, including but not limited to wage loss.

WHEREFORE, Plaintiff demands judgment against Defendants Nazareth Hospital, Mercy Healthsystem of Southeastern Pennsylvania and Trinity Health Corporation for damages in an amount in excess of fifty ($50,000.00) thousand dollars together with interest, costs of suit, and such other relief as is just and proper.

## COUNT II

## CORINTHIA SHIELDS V. NAZARETH HOSPITAL, MERCY HEALTHSYSTEM OF SOUTHEASTERN PENNSYLVANIA AND TRINITY HEALTH CORPORATION

48.    Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 47 with the same force and effect as if set forth here at length.

49.    On December 12, 2017 Plaintiff was a patient of Defendants Nazareth Hospital, Mercy Healthsystem of Southeastern Pennsylvania and Trinity Health Corporation.

50.    During the aforesaid dates, Plaintiff's treatment was under the care and subject to the supervision of employees, servant, agents and/or ostensible agents, Defendants Buggy, Pratta and Gruber and Defendants Buggy, Pratta and Gruber were obligated to properly treat and supervise the treatment of Plaintiff in a reasonable matter so as to avoid any unreasonable risks of harm to her.

51.    Defendants Nazareth, Mercy and Trinity failed to properly treat Plaintiff, exercise due care, and conform to the standards of reasonable and adequate nursing and medical care and treatment of Plaintiff's condition.

22

52.    The negligence of Defendants Nazareth, Mercy and Trinity also consisted of the following:

        a.    failing to supply adequate and skilled personnel who could reasonably and safely assess, monitor and treat the physical condition of Plaintiff during the aforementioned treatment;

        b.    utilizing substandard medical techniques in the performance of the aforementioned treatment upon the Plaintiff;

        c.    failing to conform to accepted standards of nursing and medical practice and care in the diagnosis, treatment, and medical and surgical management of the type of medical condition suffered by Plaintiff;

        d.    failing to provide adequate supervision of its staff and employees to insure that proper hospital practices and procedures are complied with and followed;

        e.    failing to employ or hire doctors and nursing staff with adequate experience, qualifications and skills to treat persons exhibiting symptoms and complaints as

23

were exhibited by this patient;

    f.  failing to employ or hire doctors and nursing staff with adequate experience, qualifications and skills properly to perform medical procedures upon persons exhibiting symptoms and complaints as were exhibited by this patient.

53. As a direct and proximate result of the failure of Defendants Nazareth, Mercy and Trinity to properly care for her, Plaintiff suffered severe physical pain, disability, suffering and mental anguish.

54. As a direct and proximate result of the negligence of Defendants Nazareth, Mercy and Trinity Plaintiff has been obligated to expend various and diverse sums for the medical treatment rendered to her.

55. As a direct and proximate result of the negligence of Defendants Nazareth, Mercy and Trinity, Plaintiff has suffered a great loss and impairment of earning capacity, including but not limited to wage loss.

WHEREFORE, Plaintiff demands judgment against Defendants Nazareth Hospital, Mercy

Healthsystem of Southeastern Pennsylvania and Trinity Health Corporation for damages in

an amount in excess of fifty ($50,000.00) thousand dollars together with interest, costs of

suit, and such other relief as is just and proper.

COUNT III

CORINTHIA SHIELDS  VS. DONNA L. BUGGY, R.N.

56.    Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 55

with the same force and effect as if set forth here at length.

57.    On December 12, 2017 Plaintiff was a patient of defendant Buggy.

58.    During the aforesaid dates, Plaintiff's treatment was under the care and subject to

the supervision of Defendant Buggy and Defendant Buggy was obligated to properly treat

and provide nursing care to Plaintiff in a reasonable matter so as to avoid any

unreasonable risks of harm to him.

59.    Defendant Buggy failed to properly treat Plaintiff, exercise due care, and conform to

the standards of reasonable and adequate nursing care and treatment of Plaintiff's condition.

25

60.    The negligence of Defendant Buggy consisted of the following:

a.    failing to cause prompt,  adequate and necessary medical and surgical consultations, including but not limited to neurosurgery and neurology regarding Plaintiff's aforementioned neurological medical condition;

b.    failing to cause a prompt assignment and evaluation by a qualified Emergency Medicine attending physician given the severity of Plaintiff's neurological presentation;

c.    failing to cause prompt, adequate and necessary diagnostic testing, including but not limited lumbar MRI regarding Plaintiff's aforementioned neurological medical condition;

d.    failing to cause prompt emergent transfer to a more tertiary facility better equipped to manage and treat Plaintiff's serious neurological condition and cauda equina syndrome;

e.    causing unnecessary and harmful delay to Plaintiff's spinal cord and nerve root decompression surgery;

26

f.      failing to adequately monitor Plaintiff's condition;

g.      failing to closely monitoring Plaintiff;

h.      failing to recognize the increased risk of serious neurological injury associated with inadequately management and monitoring of signs and symptoms of cauda equina syndrome;

i.      failing to properly assess Plaintiff's level of acuity and assign appropriate Emergency Severity Index (ESI);

j.      failing to promptly recognize and address Plaintiff's serious neurological condition and/or cauda equina syndrome;

k.      failing to take measures to prevent permanent neurological injury and/or deficits from Plaintiff's spinal cord and nerve root compression;

l.      failing to conform to accepted nursing standards and/or care in the diagnosis, treatment, and/or nursing management of a condition of the type suffered by the Plaintiff;

m.      failing to conform to accepted standards of nursing practice and/or care in

27

the diagnosis, treatment, and/or nursing management of cauda equina syndrome and/or

spinal cord and nerve root compression;

n.      increasing the risk that Plaintiff would develop permanent neurological injury

and/or deficits from Plaintiff's prolonged spinal cord and nerve root compression;

o.      failing to seek measures to prevent and/or decrease the risk of Plaintiff's

developing permanent neurological injury and/or deficits from Plaintiff's prolonged spinal

cord and nerve root compression;

p.      failing to perform a proper history and physical examination and subsequent

serial examinations of Plaintiff;

q.      disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's

neurological complaints, history, signs, and/or symptoms;

r.      failing to take appropriate measures to ensure the health and safety of Plaintiff;

s.      disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's clinical

findings; and

28

t.      disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's

diagnostic findings;

u.      Failing to take appropriate measures to ensure the health and safety of Plaintiff;

v.      Increasing the risk and/or likelihood that Plaintiff would be injured and/or

damaged as she was;

w.      Increasing the risk and/or likelihood that Plaintiff would suffer permanent

neurological injury and/or deficits following her December 12, 2017 surgery; and

x.      Increasing the risk and/or likelihood that Plaintiff would suffer significant pelvic

organ prolapse, atonic neurogenic bladder, bladder and bowel dysfunction and incontinence,

decreased pelvic sensation resulting in sexual dysfunction, and requires the use of a cane

for ambulation following her December 12, 2017 surgery;  .

61.   As a direct and proximate result of the failure of Defendant Buggy to properly care

for her, Plaintiff suffered severe physical pain, disability, suffering and mental anguish.

62.   As a direct and proximate result of the negligence of Defendant Buggy, Plaintiff has

29

been obligated to expend various and diverse sums for the medical treatment rendered to her.

63.    As a direct and proximate result of the negligence of Defendant Buggy Plaintiff has suffered a great loss and impairment of earning capacity, including but not limited to wage loss.

WHEREFORE, Plaintiff demands judgment against defendant Donna L. Buggy, R.N. for damages in an amount in excess of fifty ($50,000.00) thousand dollars together with interest, costs of suit, and such other relief as is just and proper.

## COUNT IV
### CORINTHIA SHIELDS VS. STEVEN PRATTA, PA-C AND ERIC A GRUBER, M.D.

64.    Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 63 with the same force and effect as if set forth here at length.

65.    On December 12, 2017 Plaintiff was a patient of Defendants Pratta and Gruber.

66.    During the aforesaid dates, Plaintiff's treatment was under the care and subject to

30

the supervision of Defendants Pratta and Gruber and Defendants Pratta and Gruber were

obligated to properly treat and supervise the treatment of Plaintiff in a reasonable matter

so as to avoid any unreasonable risks of harm to her.

67.    Defendants Pratta and Gruber failed to properly treat Plaintiff, exercise due care,

and conform to the standards of reasonable and adequate medical care and treatment of

Plaintiff's condition.

68.    The negligence of Defendants Pratta and Gruber consisted of the following:

a.    failing to promptly obtain adequate and necessary medical and surgical

consultations, including but not limited to neurosurgery and neurology regarding Plaintiff's

aforementioned neurological medical condition;

b.    failing to cause a prompt assignment and evaluation by a qualified Emergency

Medicine attending physician given the severity of Plaintiff's neurological presentation;

c.    failing to promptly obtain adequate and necessary diagnostic testing, including

but not limited lumbar MRI regarding Plaintiff's aforementioned neurological medical condition;

31

d.      failing to promptly arrange for emergent transfer to a more tertiary facility better equipped to manage and treat Plaintiff's serious neurological condition and cauda equina syndrome;

e.      causing unnecessary and harmful delay to Plaintiff's spinal cord and nerve root decompression surgery;

f.      failing to adequately monitor Plaintiff's condition;

g.      failing to order close monitoring of Plaintiff by nursing staff;

h.      failing to recognize the increased risk of serious neurological injury associated with inadequately management and monitoring of signs and symptoms of cauda equina syndrome;

i.      failing to properly assess Plaintiff's level of acuity and assign appropriate Emergency Severity Index (ESI);

j.      failing to promptly recognize and address Plaintiff's serious neurological condition and/or cauda equina syndrome;

32

k.      failing to take measures to prevent permanent neurological injury and/or

deficits from Plaintiff's spinal cord and nerve root compression;

l.      failing to conform to accepted standards of Emergency and Internal Medicine

and/or care in the diagnosis, treatment, and/or medical management of a condition of the

type suffered by the Plaintiff;

m.      failing to conform to accepted standards of medical practice and/or care in

the diagnosis, treatment, and/or medical management of cauda equina syndrome and/or

spinal cord and nerve root compression;

n.      increasing the risk that Plaintiff would develop permanent neurological injury

and/or deficits from Plaintiff's prolonged spinal cord and nerve root compression;

o.      failing to seek measures to prevent and/or decrease the risk of Plaintiff's

developing permanent neurological injury and/or deficits from Plaintiff's prolonged spinal

cord and nerve root compression;

p.      failing to perform a proper history and physical examination and subsequent

33

serial examinations of Plaintiff;

q.      disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's neurological complaints, history, signs, and/or symptoms;

r.      failing to take appropriate measures to ensure the health and safety of Plaintiff;

s.      disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's clinical findings; and

t.      disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's diagnostic findings;

u.      failing to take appropriate measures to ensure the health and safety of Plaintiff;

v.      increasing the risk and/or likelihood that Plaintiff would be injured and/or damaged as she was;

w.      increasing the risk and/or likelihood that Plaintiff would suffer permanent neurological injury and/or deficits following her December 12, 2017 surgery; and

x.      increasing the risk and/or likelihood that Plaintiff would suffer significant pelvic

34

organ prolapse, atonic neurogenic bladder, bladder and bowel dysfunction and incontinence, decreased pelvic sensation resulting in sexual dysfunction, and requires the use of a cane for ambulation following her December 12, 2017 surgery;

69.    As a direct and proximate result of the failure of Defendants Pratta and Gruber to properly care for her, Plaintiff suffered severe physical pain, disability, suffering, and mental anguish.

70.    As a direct and proximate result of the negligence of Defendants Pratta and Gruber, Plaintiff has been obligated to expend various and diverse sums for the medical treatment rendered to her.

71.    As a direct and proximate result of the negligence of Defendants Pratta and Gruber Plaintiff has suffered a great loss and impairment of her earning capacity, including but not limited to wage loss.

WHEREFORE, plaintiff demands judgment against Defendants Steven Pratta, PA-C and Eric A. Gruber, M.D. for damages in an amount in excess of fifty ($50,000.00) thousand

dollars together with interest, costs of suit, and such other relief as is just and proper.

## COUNT V

### CORINTHIA SHIELDS  VS. ENVISION PHYSICIANS SERVICES NORTH DIVISION A/K/A EMCARE NORTH DIVISION

72.    Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 71 with the same force and effect as if set forth here at length.

73.    On December 12, 2017 Plaintiff was a patient of Defendants EmCare, Pratta and Gruber.

74.    During the aforesaid dates, Plaintiff's treatment was under the care and subject to the supervision of Defendants Pratta and Gruber, the agents, employees, servant and/or ostensible agents of Defendant EmCare, and they were obligated to properly treat and supervise the treatment of Plaintiff in a reasonable matter so as to avoid any unreasonable risks of harm to her.

75.    Defendants EmCare, Pratta and Gruber failed to properly treat Plaintiff, exercise due

36

care, and conform to the standards of reasonable and adequate medical care and treatment

of Plaintiff's condition.

76.    The negligence of EmCare, by and though the actions and inactions of Defendants

Pratta and Gruber consisted of the following:

a.    failing to promptly obtain adequate and necessary medical and surgical

consultations, including but not limited to neurosurgery and neurology regarding Plaintiff's

aforementioned neurological medical condition;

b.    failing to cause a prompt assignment and evaluation by a qualified Emergency

Medicine attending physician given the severity of Plaintiff's neurological presentation;

c.    failing to promptly obtain adequate and necessary diagnostic testing, including

but not limited lumbar MRI regarding Plaintiff's aforementioned neurological medical condition;

d.    failing to promptly arrange for emergent transfer to a more tertiary facility better

equipped to manage and treat Plaintiff's serious neurological condition and cauda equina

syndrome;

37

e.       causing unnecessary and harmful delay to Plaintiff's spinal cord and nerve

root decompression surgery;

f.       failing to adequately monitor Plaintiff's condition;

g.       failing to order close monitoring of Plaintiff by nursing staff;

h.       failing to recognize the increased risk of serious neurological injury associated

with inadequately management and monitoring of signs and symptoms of cauda equina

syndrome;

i.       failing to properly assess Plaintiff's level of acuity and assign appropriate

Emergency Severity Index (ESI);

j.       failing to promptly recognize and address Plaintiff's serious neurological

condition and/or cauda equina syndrome;

k.       failing to take measures to prevent permanent neurological injury and/or

deficits from Plaintiff's spinal cord and nerve root compression;

l.       failing to conform to accepted standards of Emergency and Internal Medicine

38

and/or care in the diagnosis, treatment, and/or medical management of a condition of the

type suffered by the Plaintiff;

m.     failing to conform to accepted standards of medical practice and/or care in

the diagnosis, treatment, and/or medical management of cauda equina syndrome and/or

spinal cord and nerve root compression;

n.     increasing the risk that Plaintiff would develop permanent neurological injury

and/or deficits from Plaintiff's prolonged spinal cord and nerve root compression;

o.     failing to seek measures to prevent and/or decrease the risk of Plaintiff's

developing permanent neurological injury and/or deficits from Plaintiff's prolonged spinal

cord and nerve root compression;

p.     failing to perform a proper history and physical examination and subsequent

serial examinations of Plaintiff;

q.     disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's

neurological complaints, history, signs, and/or symptoms;

39

r.      failing to take appropriate measures to ensure the health and safety of Plaintiff;

s.      disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's clinical findings; and

t.      disregarding, ignoring, and/or not sufficiently acting upon the Plaintiff's diagnostic findings;

u.      failing to take appropriate measures to ensure the health and safety of Plaintiff;

v.      increasing the risk and/or likelihood that Plaintiff would be injured and/or damaged as she was;

w.      increasing the risk and/or likelihood that Plaintiff would suffer permanent neurological injury and/or deficits following her December 12, 2017 surgery; and

x.      increasing the risk and/or likelihood that Plaintiff would suffer significant pelvic organ prolapse, atonic neurogenic bladder, bladder and bowel dysfunction and incontinence, decreased pelvic sensation resulting in sexual dysfunction, and requires the use of a cane for ambulation following her December 12, 2017 surgery;

40

77.    As a direct and proximate result of the failure of Defendant EmCare to properly care for her, Plaintiff suffered severe physical pain, disability, suffering and mental anguish.

78.    As a direct and proximate result of the negligence of Defendant EmCare, Plaintiff has been obligated to expend various and diverse sums for the medical treatment rendered to her.

79.    As a direct and proximate result of the negligence of Defendant EmCare Plaintiff has suffered a great loss and impairment of earning capacity, including but not limited to wage loss.

WHEREFORE, plaintiff demands judgment against Defendant Envision Physicians Services North Division a/k/a EmCare North Division for damages in an amount in excess of fifty ($50,000.00) thousand dollars together with interest, costs of suit, and such other relief as is just and proper.

## COUNT VI
### CORINTHIA SHIELDS  VS. ENVISION PHYSICIANS SERVICES NORTH DIVISION A/K/A EMCARE NORTH DIVISION

41

80.    Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 79 with the same force and effect as if set forth here at length.

81.    On December 12, 2017 Plaintiff was a patient of defendant EmCare.

82.    During the aforesaid dates, Plaintiff's treatment was under the care and subject to the supervision of Defendants Pratta and Gruber and they were was obligated to properly treat and supervise the treatment of Plaintiff in a reasonable matter so as to avoid any unreasonable risks of harm to her.

83.    Defendant Emcare, failed to properly treat Plaintiff's, exercise due care, and conform to the standards of reasonable and adequate medical care and treatment of Plaintiff's condition.

84.    The negligence of Defendant EmCare also consisted of the following:

      a.    failing to supply adequate and skilled personnel who could reasonably and safely assess, monitor and treat the physical condition of Plaintiff during the

42

aforementioned treatment;

   b. utilizing substandard medical techniques in the performance of the

aforementioned treatment upon the Plaintiff;

   c. failing to conform to accepted standards of medical practice and care

in the diagnosis, treatment, and medical and surgical management of the type of medical

condition suffered by Plaintiff;

   d. failing to provide adequate supervision of its staff and employees to

insure that proper hospital practices and procedures are complied with and followed;

   e. failing to employ or hire doctors and physician assistants with adequate

experience, qualifications and skills to treat persons exhibiting symptoms and complaints as

were exhibited by this patient;

   f. failing to employ or hire doctors and physician assistants with adequate

experience, qualifications and skills properly to perform medical procedures upon persons

exhibiting symptoms and complaints as were exhibited by this patient.

85.    As a direct and proximate result of the failure of Defendant EmCare to properly care for her, Plaintiff suffered severe physical pain, disability, suffering and mental anguish.

86.    As a direct and proximate result of the negligence of defendant EmCare Plaintiff has been obligated to expend various and diverse sums for the medical treatment rendered to her.

87.    As a direct and proximate result of the negligence of defendant EmCare Plaintiff has suffered a great loss and impairment of earning capacity, including but not limited to wage loss.

WHEREFORE, Plaintiff demands judgment against Defendant Envision Physicians Services North Division a/k/a EmCare North Division for damages in an amount in excess of fifty ($50,000.00) thousand dollars together with interest, costs of suit, and such other relief as is just and proper.

## COUNT VII
### CORINTHIA SHIELDS  VS. DANIEL R. FELBAUM, M.D.

44

88.    Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 87

with the same force and effect as if set forth here at length.

89.    From December 12, 2017 through February 1, 2018 Plaintiff was a patient of

defendant Felbaum.

90.    During the aforesaid dates, Plaintiff's treatment was under the care and subject to

the supervision of Defendant Felbaum and defendant Felbaum was obligated to properly

treat and supervise the treatment of Plaintiff in a reasonable matter so as to avoid any

unreasonable risks of harm to her.

91.    Defendant Felbaum failed to properly treat Plaintiff, exercise due care, and conform

to the standards of reasonable and adequate medical care and treatment of Plaintiff's

condition.

92.    The negligence of Defendant Felbaum consisted of the following:

a.    failing to properly and/or adequately perform spinal cord and nerve root

decompression surgery on Plaintiff on December 12, 2017;

45

b.      failing to request assistance and/or supervision from a more experienced or qualified surgeon in advance of or during Plaintiff's spinal cord and nerve root decompression surgery on Plaintiff on December 12, 2017;

c.      improperly and inadequately performing Plaintiff's laminectomy, medial facetectomy and bilateral foraminotomy at L3-L4 and L4-L5;

d.      failing to cause prompt and emergent spinal cord and nerve root decompression;

e.      failing to cause prompt and emergent spinal cord and nerve root decompression be performed by a more experienced and better trained attending surgeon;

f.      failing to promptly and adequately identify, address, alleviate and/or remedy the compression Plaintiff's spinal cord and nerve roots;

g.      failing to properly identify Plaintiff's spinal anatomy prior to and during the December 12, 2017;

h.      failing to take appropriate measures so that Plaintiff's spinal anatomy could be

46

sufficiently stabilized, corrected, aligned, and/or decompressed during the December 12, 2017 surgery;

i.       failing to conform to accepted standards of surgical practice and/or care in the treatment, and/or surgical management of the spinal cord and nerve root compression and cauda equina syndrome as suffered by Plaintiff;

j.       failing to take appropriate measures to ensure the health and safety of Plaintiff;

k.       increasing the risk and/or likelihood that Plaintiff would be injured and/or damaged as she was;

l.       increasing the risk and/or likelihood that Plaintiff would suffer permanent neurological injury and/or deficits following her December 12, 2017 surgery;

m.       increasing the risk and/or likelihood that Plaintiff would suffer significant pelvic organ prolapse, atonic neurogenic bladder, bladder and bowel dysfunction and incontinence, decreased pelvic sensation resulting in sexual dysfunction, and requires the use of a cane for ambulation following her December 12, 2017 surgery;

n.      performing complex spinal surgery with inadequate experience and training;

and

o.      failing to promptly refer Plaintiff to better qualified spinal surgeon  prior to the

December 12, 2017 surgery.

93.    As a direct and proximate result of the failure of Defendant Felbaum to properly care

for her, Plaintiff suffered severe physical pain, disability, suffering and mental anguish.

94.    As a direct and proximate result of the negligence of Defendant Felbaum Plaintiff has

been obligated to expend various and diverse sums for the medical treatment rendered to

her.

95.    As a direct and proximate result of the negligence of Defendant Felbaum Plaintiff has

suffered a great loss and impairment of earning capacity, including but not limited to wage

loss.

WHEREFORE, Plaintiff demands judgment against Defendant Daniel R. Felbaum,

M.D. for damages in an amount in excess of fifty ($50,000.00) thousand dollars together

with interest, costs of suit, and such other relief as is just and proper.

## COUNT VIII

### CORINTHIA SHIELDS  VS. DREXEL NEUROSCIENCES INSTITUTE AND
### GLOBAL NEUROSCIENCES INSTITUTE

96.    Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 95

with the same force and effect as if set forth here at length.

97.    From December 12, 2017 through February 1, 2018 Plaintiff was a patient of

Defendants Drexel and Global.

98.    During the aforesaid dates, Plaintiff's treatment was under the care and subject to

the supervision of Defendants Drexel and Global and its agent, employee and/or

ostensible defendant Felbaum and Defendants were obligated to properly treat and

supervise the treatment of Plaintiff in a reasonable matter so as to avoid any unreasonable

risks of harm to her.

99.    Defendants Drexel and Global by and through agent, employee and/or ostensible

defendant Felbaum failed to properly treat Plaintiff, exercise due care, and conform to the

49

standards of reasonable and adequate medical care and treatment of Plaintiff's condition.

100.    The negligence of Defendants Drexel and Global consisted of the following:

a.    failing to properly and/or adequately perform spinal cord and nerve root decompression surgery on Plaintiff on December 12, 2017;

b.    failing to request assistance and/or supervision from a more experienced or qualified surgeon in advance of or during Plaintiff's spinal cord and nerve root decompression surgery on Plaintiff on December 12, 2017;

c.    improperly and inadequately performing Plaintiff's laminectomy, medial facetectomy and bilateral foraminotomy at L3-L4 and L4-L5;

d.    failing to cause prompt and emergent spinal cord and nerve root decompression;

e.    failing to cause prompt and emergent spinal cord and nerve root decompression be performed by a more experienced and better trained attending surgeon;

f.    failing to promptly and adequately identify, address, alleviate and/or remedy

the compression Plaintiff's spinal cord and nerve roots;

g.    failing to properly identify Plaintiff's spinal anatomy prior to and during the

December 12, 2017;

h.    failing to take appropriate measures so that Plaintiff's spinal anatomy could be

sufficiently stabilized, corrected, aligned, and/or decompressed during the December 12,

2017 surgery;

i.    failing to conform to accepted standards of surgical practice and/or care in

the treatment, and/or surgical management of the spinal cord and nerve root compression

and cauda equina syndrome as suffered by Plaintiff;

j.    failing to take appropriate measures to ensure the health and safety of Plaintiff;

k.    increasing the risk and/or likelihood that Plaintiff would be injured and/or

damaged as she was;

l.    increasing the risk and/or likelihood that Plaintiff would suffer permanent

neurological injury and/or deficits following her December 12, 2017 surgery;

51

m.      increasing the risk and/or likelihood that Plaintiff would suffer significant pelvic

organ prolapse, atonic neurogenic bladder, bladder and bowel dysfunction and incontinence,

decreased pelvic sensation resulting in sexual dysfunction, and requires the use of a cane

for ambulation following her December 12, 2017 surgery;

n.      performing complex spinal surgery with inadequate experience and training;

and

o.      failing to promptly refer Plaintiff to better qualified spinal surgeon  prior to the

December 12, 2017 surgery.

101.   As a direct and proximate result of the failure of Defendants Drexel and Global  to

properly care for her, Plaintiff suffered severe physical pain, disability, suffering and mental

anguish.

102.   As a direct and proximate result of the negligence of Defendants Drexel and Global

Plaintiff has been obligated to expend various and diverse sums for the medical treatment

rendered to her.

52

103.   As a direct and proximate result of the negligence of Defendants Drexel and Global

Plaintiff has suffered a great loss and impairment of earning capacity, including but not

limited to wage loss.

WHEREFORE, plaintiff demands judgment against Defendants Drexel Neurosciences

Institute and Global Neurosciences Institute for damages in an amount in excess of fifty

($50,000.00) thousand dollars together with interest, costs of suit, and such other relief as

is just and proper.

## COUNT IX
### CORINTHIA SHIELDS VS. DREXEL NEUROSCIENCES INSTITUTE AND GLOBAL NEUROSCIENCES INSTITUTE

104.   Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 103

with the same force and effect as if set forth here at length.

105.   From December 12, 2017 through February 1, 20017 Plaintiff was a patient of

Defendants Drexel and Global.

106.   During the aforesaid dates, Plaintiff's treatment was under the care and subject to

the supervision of Defendants Drexel and Global and their agent, employee and/or

ostensible agent Defendant Felbaum and Defendants were obligated to properly treat and

supervise the treatment of Plaintiff in a reasonable matter so as to avoid any unreasonable

risks of harm to her.

107.   Defendants Drexel and Global by and through agents, employees and/or ostensible

agent Felbaum, failed to properly treat Plaintiff, exercise due care, and conform to the

standards of reasonable and adequate medical care and treatment of Plaintiff's condition.

108.   The negligence of Defendants Drexel and Global also consisted of the following:

      a.   failing to supply adequate and skilled personnel who could reasonably

and safely monitor the physical condition of Plaintiff during the aforementioned treatment;

      b.   utilizing substandard medical techniques in the performance of the

aforementioned treatment upon the Plaintiff;

      c.   failing to conform to accepted standards of medical practice and care

in the diagnosis, treatment, and medical and surgical management of the type of medical

54

condition suffered by Plaintiff;

d.       failing to provide adequate supervision of its staff and employees to insure that proper surgical practices and procedures are complied with and followed;

e.       failing to employ or hire doctors and nursing staff with adequate experience, qualifications and skills to treat persons exhibiting symptoms and complaints as were exhibited by this patient;

f.       failing to employ or hire doctors and medical with adequate experience, qualifications and skills properly to perform medical procedures upon persons exhibiting symptoms and complaints as were exhibited by this patient.

109.   As a direct and proximate result of the failure of Defendants Drexel and Global to properly care for her, Plaintiff suffered severe physical pain, disability, suffering and mental anguish.

110.   As a direct and proximate result of the negligence of Defendants Drexel and Global Plaintiff has been obligated to expend various and diverse sums for the medical treatment

rendered to her.

111.    As a direct and proximate result of the negligence of Defendants Drexel and Global

Plaintiff has suffered a great loss and impairment of her earning capacity, including but not

limited to wage loss.

WHEREFORE, plaintiff demands judgment against Defendants Drexel Neurosciences

Institute And Global Neurosciences Institute for damages in an amount in excess of fifty

($50,000.00) thousand dollars together with interest, costs of suit, and such other relief as

is just and proper.

## COUNT X
### CORINTHIA SHIELDS VS. PALADIN HEALTHCARE CAPITAL, LLC AND AMERICAN ACADEMIC HEALTH SYSTEM, LLC

112.    Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 111

with the same force and effect as if set forth here at length.

113.    From December 12, 2017 through February 1, 2018 Plaintiff was a patient of

Defendants Paladin and American.

114.    During the aforesaid dates, Plaintiff's treatment was under the care and subject to

the supervision of Defendants Paladin and American and their agent, employee and/or

ostensible defendant Felbaum and Defendants were obligated to properly treat and

supervise the treatment of Plaintiff in a reasonable matter so as to avoid any unreasonable

risks of harm to her.

115.    Defendants Paladin and American by and through agent, employee and/or

ostensible defendant Felbaum failed to properly treat Plaintiff, exercise due care, and

conform to the standards of reasonable and adequate medical care and treatment of

Plaintiff's condition.

116.    The negligence of Defendants Paladin and American consisted of the following:

      a.      failing to properly and/or adequately perform spinal cord and nerve root

decompression surgery on Plaintiff on December 12, 2017;

      b.      failing to request assistance and/or supervision from a more experienced or

qualified surgeon in advance of or during Plaintiff's spinal cord and nerve root decompression surgery on Plaintiff on December 12, 2017;

      c.    improperly and inadequately performing Plaintiff's laminectomy, medial facetectomy and bilateral foraminotomy at L3-L4 and L4-L5;

      d.    failing to cause prompt and emergent spinal cord and nerve root decompression;

      e.    failing to cause prompt and emergent spinal cord and nerve root decompression be performed by a more experienced and better trained attending surgeon;

      f.    failing to promptly and adequately identify, address, alleviate and/or remedy the compression Plaintiff's spinal cord and nerve roots;

      g.    failing to properly identify Plaintiff's spinal anatomy prior to and during the December 12, 2017;

      h.    failing to take appropriate measures so that Plaintiff's spinal anatomy could be sufficiently stabilized, corrected, aligned, and/or decompressed during the December 12,

58

2017 surgery;

i.      failing to conform to accepted standards of surgical practice and/or care in the treatment, and/or surgical management of the spinal cord and nerve root compression and cauda equina syndrome as suffered by Plaintiff;

j.      failing to take appropriate measures to ensure the health and safety of Plaintiff;

k.      increasing the risk and/or likelihood that Plaintiff would be injured and/or damaged as she was;

l.      increasing the risk and/or likelihood that Plaintiff would suffer permanent neurological injury and/or deficits following her December 12, 2017 surgery;

m.      increasing the risk and/or likelihood that Plaintiff would suffer significant pelvic organ prolapse, atonic neurogenic bladder, bladder and bowel dysfunction and incontinence, decreased pelvic sensation resulting in sexual dysfunction, and requires the use of a cane for ambulation following her December 12, 2017 surgery;

n.      performing complex spinal surgery with inadequate experience and training;

59

and

o.    failing to promptly refer Plaintiff to better qualified spinal surgeon prior to the

December 12, 2017 surgery.

117.    As a direct and proximate result of the failure of Defendants Paladin and American

to properly care for her, Plaintiff suffered severe physical pain, disability, suffering and mental

anguish.

118.    As a direct and proximate result of the negligence of Defendants Paladin and

American Plaintiff has been obligated to expend various and diverse sums for the medical

treatment rendered to her.

119.    As a direct and proximate result of the negligence of Defendants Paladin and

American Plaintiff has suffered a great loss and impairment of earning capacity, including

but not limited to wage loss.

WHEREFORE, plaintiff demands judgment against Defendants Paladin Healthcare

Capital, LLC and American Academic Health System, LLC for damages in an amount in

excess of fifty ($50,000.00) thousand dollars together with interest, costs of suit, and such

other relief as is just and proper.

## COUNT XI

### CORINTHIA SHIELDS VS. PALADIN HEALTHCARE CAPITAL, LLC AND AMERICAN ACADEMIC HEALTH SYSTEM, LLC

120.   Plaintiff hereby incorporates the averments as set forth in paragraphs 1 through 119

with the same force and effect as if set forth here at length.

121.   From December 12, 2017 through February 1, 20017 Plaintiff was a patient of

Defendants Paladin and American.

122.   During the aforesaid dates, Plaintiff's treatment was under the care and subject to

the supervision of Defendants Paladin and American and their agent, employee and/or

ostensible agent Defendant Felbaum and Defendants were obligated to properly treat and

supervise the treatment of Plaintiff in a reasonable matter so as to avoid any unreasonable

risks of harm to her.

123.   Defendants Paladin and American by and through agents, employees and/or

61

ostensible agent Felbaum, failed to properly treat Plaintiff, exercise due care, and conform

to the standards of reasonable and adequate medical care and treatment of Plaintiff's

condition.

124.    The negligence of Defendants Paladin and American also consisted of the following:

      a.    failing to supply adequate and skilled personnel who could reasonably

and safely monitor the physical condition of Plaintiff during the aforementioned treatment;

      b.    utilizing substandard medical techniques in the performance of the

aforementioned treatment upon the Plaintiff;

      c.    failing to conform to accepted standards of medical practice and care

in the diagnosis, treatment, and medical and surgical management of the type of medical

condition suffered by Plaintiff;

      d.    failing to provide adequate supervision of its staff and employees to

insure that proper surgical practices and procedures are complied with and followed;

      e.    failing to employ or hire doctors and nursing staff with adequate

experience, qualifications and skills to treat persons exhibiting symptoms and complaints as were exhibited by this patient;

f.      failing to employ or hire doctors and medical with adequate experience, qualifications and skills properly to perform medical procedures upon persons exhibiting symptoms and complaints as were exhibited by this patient.

125.   As a direct and proximate result of the failure of Defendants Paladin and American to properly care for her, Plaintiff suffered severe physical pain, disability, suffering and mental anguish.

126.   As a direct and proximate result of the negligence of Defendants Paladin and American Plaintiff has been obligated to expend various and diverse sums for the medical treatment rendered to her.

127.   As a direct and proximate result of the negligence of Defendants Paladin and American Plaintiff has suffered a great loss and impairment of her earning capacity, including but not limited to wage loss.

WHEREFORE, plaintiff demands judgment against Defendants Paladin Healthcare

Capital, LLC and American Academic Health System, LLC for damages in an amount in

excess of fifty ($50,000.00) thousand dollars together with interest, costs of suit, and such

other relief as is just and proper.

FODERA & LONG, P.C.

Leonard V. Fodera

Allison Long

Attorneys for Plaintiff

Date: 6/11/19

64

## VERIFICATION

I, Corinthia Shields, hereby state that I am the plaintiff in this action and verify that the statements made in the foregoing Civil Action Complaint  are true and correct to the best of my knowledge, information and belief.   I understand that the statements therein are made subject to the penalties of 18 Pa. C.S. §4909 relating to unsworn falsification to authorities.

_Ms. Corinthia Shields_                    _06/04/2019_
Corinthia Shields                                    Date