IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In RE: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC, d/b/a HAHNEMANN UNIVERSITY HOSPITAL *et al.*, | ) Case No. 19-11466 (KG) |
| | ) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) **Hearing: September 23, 2019 at 1:00 p.m.** |
| | ) |
| | ) **Re: Docket Nos. 205, 510** |

**OBJECTION OF PREMIER, INC. AND ITS
SUBSIDIARIES TO PROPOSED ASSUMPTION AND
ASSIGNMENT OF CONTRACTS AND PROPOSED CURE AMOUNT**

Premier, Inc. (with its consolidated subsidiaries, including Premier Healthcare Solutions, Inc. ("PHSI") collectively, "Premier") hereby files this objection (the "Objection") to both the cure amount proposed in, and the proposed assumption and assignment of any of its executory contracts listed in, the *Notice of Assumption, Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases of the Debtors* [DI 510] (the "Cure Notice") filed by the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Debtors").

**BACKGROUND**

1. On July 16, 2019, the Debtors filed the *Motion for Entry of (A) an Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Debtors and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to Any Stalking Horse Purchasers, and (IV) Granting Related Relief; and*

1

*(B) One or More Orders (I) Approving the Sales or Other Acquisition Transactions for the Assets, (II) Authorizing the Sales Free and Clear of all Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [DI 205] (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors seek to sell substantially all assets of St. Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children ("St. Christopher's"), SCHC Pediatric Associates, L.L.C, St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C, StChris Care at Northeast Pediatrics, L.L.C. and TPS V of PA, L.L.C (the "Sale") and to seek to assume and assign those executory contracts and unexpired leases related thereto, including those listed in the Cure Notice. On August 16, 2019, the Debtors filed the Cure Notice, which purports to list all executory contracts sought to be assumed and assigned in connection with the Sale, and listed "Premier, Inc." as a counterparty to a certain "Agreement for Registry Access & Infection Control Software" with Debtor, Philadelphia Academic Health System, LLC ("Philadelphia Academic").

2. Premier has provided, and continues to provide, critical information technology, licenses and related healthcare improvement products and services to certain of the Debtors pursuant to the following agreements (the "Premier Agreements"):[1] (i) the Performance Suite™ Solutions Subscription Agreement, executed on or about January 1, 2018, by and between PHSI (formerly known as Premier, Inc.) and Philadelphia Academic (as amended, along with all exhibits, solutions and ancillary agreements and documents related to and/or referenced therein,

---

[1] The Premier Agreements are voluminous and contain information that is confidential and proprietary, and thus the Premier Agreements have not been provided herewith. Notwithstanding, such documentation (to the extent not already in the Debtors' possession) will be provided to the Debtors upon request of Debtors' counsel.

the "Subscription Agreement"), and (ii) the Business Associate Addendum, entered into as of December 22, 2017, between PHSI, Premier Healthcare Alliance, L.P., any other respective Premier subsidiaries a party thereto and Philadelphia Academic (as amended by that certain First Amendment to Business Associate Addendum, entered into as of September 11, 2018, and as referenced and incorporated into the Subscription Agreement in all respects).  Under the Subscription Agreement, Premier makes available licenses to use Premier intellectual property, as well as other products, services and benefits to Philadelphia Academic and certain of its affiliated entities.[2]

**OBJECTION**

**A.      The Cure Notice is Legally Insufficient.**

3.      As an initial matter, the reference to the contract listed in the Cure Notice is an insufficient description for Premier to ascertain which Premier Agreement is sought to be assumed and assigned in connection with the Sale (and thus may be subject to cure).  Despite what the Cure Notice references, there is no "Agreement for Registry Access & Infection Control Software" between Premier, Inc. or any of the Debtors.  Nor is Premier, Inc. a counterparty to any agreements with the Debtors – as PHSI is the primary counterparty under the Premier Agreements.  Further, while certain solutions provided under the Subscription Agreement seemingly match part of the description set forth in the Cure Notice, the description

---

[2]     Upon information and belief, one or more of the Debtors may also have obtained certain benefits under that certain License Agreement, made and entered into as of February 22, 2008, between Tenet HealthSystem Hahnemann, LLC (d/b/a of Hahnemann University Hospital) ("Tenet") and TheraDoc, Inc., a subsidiary of PHSI, as amended, along with all exhibits, solutions and ancillary agreements and documents related to and/or referenced therein, including that certain Business Associate Agreement, entered into as of February 22, 2008, as amended, between Tenet and TheraDoc, Inc. (the "Tenet License Agreement").  To the extent that the Debtors obtain any benefit pursuant to the Tenet License Agreement, such agreement shall be included in the Premier Agreements in all respects.

provided by the Debtors is too vague to determine what the Debtors seek to assume and assign. Nor does the Cure Notice reference the BAA, which is a required and integral part of the Subscription Agreement. However, without further information, it is impossible for Premier to ascertain which Premier Agreements the Debtors seek to assume and assign as part of the Cure Notice and Sale. Therefore, until further detail is made available, the Cure Notice is legally insufficient.

**B.** **The Premier Agreements Must Be Assumed/Assigned *Cum Onere*.**

4. The Cure Notice description further suggests that the Debtors may seek to assume and assign only portions of the Premier Agreements, or even just portions of the Subscription Agreement alone. If that is the case, such an attempt is expressly prohibited by the Bankruptcy Code and binding precedent. First, the Premier Agreements are enterprise agreements as between PHSI and Philadelphia Academic only. The other Debtors (including those Debtors who are parties to the Sale, such as St. Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children) utilize the benefits, licenses, services and products thereunder *solely* by virtue of their status as subsidiaries or affiliates of Philadelphia Academic. None of the other Debtors are parties to any of the Premier Agreements. Further, the licenses and services provided by Premier are by way of the Premier Agreements as an integrated whole. Thus, if the Debtors seek to assume, or assume and assign, any of the Premier Agreements – they must do so *in toto* and pay the entirety of the cure amount due and owing under all of the Premier Agreements. *See, e.g.*, 11 U.S.C. § 365(b); *see also NLRB v. Bildisco & Bildisco*, 465 US 513, 531 (1983) (if the debtor assumes an agreement, it assumes the agreement *cum onere*, and must pay for the obligations that have arisen under the contract); *In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) (holding that the principle of *cum onere* applies to a debtor's assumption of an executory contract under 11 U.S.C. § 365); *In re G-I Holdings, Inc.*, 580 B.R. 388, 420

4

(Bankr. D.N.J. 2018) ("A debtor may not 'cherry-pick' the provisions of an assumed contract with which it will comply.") (citations omitted), *citing Kopel v. Campanile (In re Kopel)*, 232 B.R. 57, 63-64 (Bankr. E.D.N.Y. 1999) ("A debtor cannot simply retain the favorable and excise the burdensome provisions of an agreement."). The Debtors cannot otherwise seek to bifurcate the Premier Agreements, whether solution by solution or as to Debtors other than Philadelphia Academic, absent the consent of Premier and a re-negotiation of the agreements themselves.

C. **The Premier Agreements Cannot be Assumed/Assigned Absent Premier's Consent.**

5. Further, without Premier's consent, which the Debtors do not have at this time, the Debtors cannot assume, assign or otherwise transfer any of the Premier Agreements, or any rights or assets thereunder,[3] in connection with the Sale or otherwise. The Premier Agreements are personal as to Premier and also non-assignable under applicable non-bankruptcy law. The Subscription Agreement, in particular, like the Tenet License Agreement, is a nonexclusive license of Premier's IP – which the Debtors cannot assume, or assume and assign, without the consent of Premier. *See* 11 U.S.C. § 365(c)(l)(A) ("trustee may not assume or assign…" if "applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor"); *see also, e.g., In re Access Beyond Techs., Inc.*, 237 B.R. 32, 43-44 (Bankr. D. Del. 1999) (a debtor cannot assign a non-exclusive patent license without the licensor's consent); *In re Golden Books Family Entm't*, 269 B.R. 311, 316-17 (Bankr. D. Del. 2001) (a debtor cannot assign a nonexclusive copyright license over the objection of the licensor); *In re Patient Educ. Media, Inc.*, 210 B.R. 237, 243 (Bankr. S.D.N.Y. 1997) (same). Moreover, absent Premier's consent, the Debtors have

---

[3] Such assets of Premier include, but are not limited to, intellectual property rights and licenses used in delivering certain IT solutions and platforms to Philadelphia Academic.

5

no interest in the Premier Agreements that they can assume and assign, or transfer in connection with the Sale. *See In re West Electronics, Inc.*, 852 F. 2d 79, 83-84 (3d Cir. 1988) (holding that where a contract cannot be assumed or assigned pursuant to §365(c)(1), a debtor does "not have a legally cognizable interest in the contract" and may not compel a counterparty's performance); *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 127 (Bankr. D. Del 2015) (same). Rather, without Premier's consent to assumption and assignment, the Debtors cannot *unilaterally* assume and/or assign or transfer any of the Premier Agreements, or any rights thereunder, in connection with the Sale or otherwise. Absent assumption and assignment of the Premier Agreements, Premier will have no obligation thereunder to provide any licenses, solutions or offerings to any buyer of any of the Debtors' assets in connection with the Sale.

**D.      The Cure Notice Materially Understates the Cure Amount.**

6.      Lastly, the Cure Notice materially understates the cure amounts required to be paid to assume and assign the Premier Agreements. If the Debtors seek to assume and assign any of the Premier Agreements in relation to the Sale, Premier must first be paid the full cure amount due, which includes payment of all amounts that have accrued under the Premier Agreements. *See* 11 U.S.C. §365(b); *In re G-I Holdings, Inc.*, 568 B.R. 731, 766 (Bankr. D.N.J. 2017) (holding that in order to assume an agreement, the debtor-in-possession must cure defaults and provide assurance of future performance). As set forth on the schedule attached as **Exhibit A** hereto,[4] in the present case, the cure obligation is *no less than* $319,459.21. This amount is inclusive of (i) approximately $296,956.96 in pre-petition amounts owed to Premier under the Premier Agreements,[5] and (ii) approximately $22,502.25 that has accrued post-petition as of the

---

[4]     Copies of the invoices referenced on **Exhibit A** have been provided to the Debtors' counsel.

[5]     Notably, the Debtors also listed in their schedules $222,627.34 in collective pre-petition amounts due and owing to Premier (and such amounts are *not listed* as contingent, unliquidated or disputed). *See*

date hereof under the Premier Agreements (and additional amounts are currently continuing to accrue post-petition). In addition, pursuant to Section 365(b) of the Bankruptcy Code, full cure includes payment of any indemnification costs, attorneys fees and expenses that may have accrued under the Premier Agreements. *See In re Williams*, 2011 Bankr. LEXIS 2463, at *3-4 (Bankr. D. Del. June 24, 2011). Absent payment of the cure amounts due and owing, the Debtors' attempts to assume and assign any Premier Agreements must be denied.

### **RESERVATION OF RIGHTS**

7.      Premier hereby expressly reserves the right to supplement this Objection as additional information is received, both with respect to any Premier Agreements that the Debtors may seek to assume or assume and assign in the Sale (including as to any objections regarding adequate assurance of future performance) and as to any proposed cure amount, as well as to introduce evidence at any hearing related to the Sale Motion, the Cure Notice and/or this Objection. Premier further reserves all of its rights, claims, defenses and remedies with respect to the Debtors and the Premier Agreements, including but not limited to any right to terminate any of the Premier Agreements based upon any current or future default thereunder, or any right to assert any claims, rights of setoff or rights of recoupment against the Debtors, under the Premier Agreements, the Bankruptcy Code, applicable law or otherwise.

---

DI 447 (at page 41) and DI 449 (at page 779).

WHEREFORE, for the foregoing reasons, Premier respectfully requests that, absent payment of the amounts due and owing to Premier under the Premier Agreements, and absent obtaining Premier's consent, (i) the Debtors' request (pursuant to the Sale Motion, the Cure Notice or otherwise), to assume or assume and assign any of the Premier Agreements be denied, (ii) the Court enter an order sustaining this Objection and (iii) the Court provide such other and further relief as the Court deems just and proper.

Dated: August 29, 2019
       Wilmington, Delaware

Respectfully submitted,

KLEIN LLC

*/s/ Julia B. Klein*
Julia B. Klein (Bar No. 5198)
919 North Market Street
Suite 600
Wilmington, Delaware 19801
Phone: (302) 438-0456

and

Marianne S. Mortimer, Esq.
STRADLING YOCCA
CARLSON & RAUTH, P.C.
100 Wilshire Boulevard, Fourth Floor
Santa Monica, CA 90401
Phone: (424) 214-7000
Fax: (424) 645-0794

*Counsel for Premier, Inc. and Its Subsidiaries*