# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) |
| *et al.*,[1] | ) (Jointly Administered) |
| Debtors. | ) **Re: Docket Nos. 301 & 510** |

### OBJECTION OF DREXEL UNIVERSITY TO NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

Drexel University ("Drexel"), by and through its undersigned counsel, hereby objects (the "Objection") to the proposed assumption and assignment of the Contracts (as defined below) and related cure amounts listed in the *Notice of Assumption, Assignment and Cure Amount With Respect to Executory Contracts and Unexpired Leases of the Debtors* [D.I. 510] (the "Notice").[2] In support of the Objection, Drexel respectfully states as follows:

### BACKGROUND

1. On July 1, 2019 (the "Petition Date"), St. Christopher's Healthcare, LLC ("SCH") and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On the Petition Date, the Debtors also filed a number of first day motions with the Court, including the *Motion of the Debtors for Entry of Interim and Final Orders Pursuant to*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatrics Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Notice.

*Sections 105(a), 363, and 1108 of the Bankruptcy Code (A) Authorizing the Debtors to Implement a Plan of Closure for Hahnemann University Hospital and (B) Scheduling a Final Hearing* [D.I. 15] (the "Closure Motion") requesting authority to implement a plan to close Hahnemann University Hospital ("Hahnemann"), an academic medical center in center city Philadelphia, which was the primary teaching hospital for Drexel.  The hearing on the Closure Motion has been continued indefinitely, but the Debtors have largely concluded winding down operations at Hahnemann.

3. On July 16, 2019, the Debtors filed the *Debtors' Motion for Entry of (A) an Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Debtors and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to Any Stalking Horse Purchasers, and (IV) Granting Related Relief* [D.I. 205] (the "St. Christopher's Sale Motion") seeking to establish bidding procedures and the scheduling of a hearing on the sale of substantially all of the assets of St. Christopher's Healthcare, LLC ("SCH"), SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHS Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., and TPS V of PA, L.L.C.  On July 26, 2019, the Court entered an order approving the bidding procedures proposed in the St. Christopher's Sale Motion [D.I. 301].

4. Debtors SCH and certain of its affiliates are parties to various agreements with Drexel (the "Contracts").  As reflected in the Notice, the Debtors believe that such Contracts

include those listed on Exhibit A attached hereto (the "Debtor Contract List"). The Debtors propose to assume and assign the Contracts on the Debtor Contract List.

5. Many of the Contracts on the Debtor Contract List lack sufficient description for Drexel to identify them (for example, some are simply described as "Lease" or "Service Agreement" or even just "Various"), and some appear to be duplicate entries. According to Drexel's records, the Contracts are only those listed on Exhibit B attached hereto (the "Drexel Contract List"). Attached hereto as Exhibit C is Drexel's attempt to reconcile the two lists. As reflected on Exhibit C, such reconciliation leaves at least 13 Unidentified Contracts, as such term is defined on such exhibit.

6. Drexel objects to the assumption and assignment of certain of the Contracts based upon (a) incurable non-monetary defaults, (b) incorrect cure amounts, or (c) prior expiration of such Contracts in accordance with their terms. As to the Unidentified Contracts, Drexel reserves all objections to any Unidentified Contracts that actually exist pending any identification.

**OBJECTION**

**A.  The Debtors' Incurable Non-Monetary Defaults Prohibit the Assumption and Assignment of Certain Contracts Pursuant to Section 365(a).**

7. A debtor cannot assume an executory contract where the debtor's conduct has caused an incurable material breach of the executory contract. *In re Escarent Entities, L.P.*, 423 F. App'x 462, 465 (5th Cir. 2011) ("if a default is incurable, assumption is necessarily precluded by the plain meaning of § 365"). *See also In re Eagle Creek Subdivision, LLC*, 397 B.R. 758, 765 (Bankr. E.D.N.C. 2008) ("Because it is unable to cure a material default, the debtor is precluded under § 365 from assuming executory contracts."); *In re New Breed Realty Enter.*, 278 B.R. 314, 325 (Bankr. E.D.N.Y. 2002) (holding that a non-monetary default which was historical fact was unable to be cured and the contract could not be assumed). Moreover, a debtor may not assume

and assign a contract where a material and economically significant contractual term cannot be performed by the proposed assignee. *In re Fleming Cos.*, 499 F.3d 300, 205-06 (3d Cir. 2007). *See also In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990) (noting that a non-debtor counterparty should be afforded the full benefit of its bargain and any modification of the non-debtor counterparty's rights should not be taken lightly).

8. Here, as a consequence of the closure of Hahnemann, the Debtors have incurably defaulted under the terms of the Amended and Restated Academic Affiliation Agreement (the "AAA") (number 32 on the Debtor Contract List and number 1 on the Drexel Contract List) and, as a result, under what the Debtor Contract List refers to as the Supplemental Academic Affiliation Agreement (the "Supplement") (number 33 on the Debtor Contract List and number 12 on the Drexel Contract List, where the Supplement is referred to as the "Academic Affiliation (Pediatric) Addendums"). Moreover, as the continued operation of Hahnemann was a material term of the AAA, its closure makes it impossible for any assignee of the AAA (or the Supplement) to perform thereunder. Accordingly, the Debtors are prohibited from assuming and assigning the AAA and the Supplement.[3]

**B.      Certain Proposed Cure Amounts in the Notice Are Incorrect.**

9. Where there has been a default under an executory contract, the contract cannot be assumed pursuant to section 365(b)(1) of the Bankruptcy Code unless the debtor:

> (1) cures or provides adequate assurance that it will promptly cure the default;
> (2) compensates or provides adequate assurance of prompt future compensation
> for actual pecuniary loss resulting from the default; and (3) provides adequate
> assurance of future performance under the contract or lease.

---

[3] The AAA has numerous subsidiary agreements, in addition to the Supplement, that relate to Hahnemann. The Debtors appear to be treating the AAA and these subsidiary agreements as a single unified agreement without listing them separately on the Debtor Contract List. To the extent that is the case, Drexel asserts all objections contained herein to assumption and assignment of the AAA and the Supplement as are asserted by Drexel with respect to such subsidiary agreements.

4

*In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000).

10. As such, in order to assume an executory contract pursuant to section 365 of the Bankruptcy Code, the debtor must make the non-debtor counterparty to the contract whole at the time of the assumption of the contract. *In re Entertainment, Inc.*, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998). To that end, a debtor in possession is prohibited from assuming an executory contract until it cures all monetary defaults in full, including both prepetition and postpetition amounts due. *See* 11 U.S.C. § 365(b)(1)(A). *See also Matter of Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996) ("A party to an executory contract must be paid all amounts due him under the contract before the contract may be assumed.") *In re Network Access Sols., Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005) ("when a contract is assumed under section 365, all unpaid amounts due under the agreement must be paid").

11. The cure amounts specified by the Debtors are incorrect as to certain of the Contracts.

12. With respect to the Contracts for which the Debtors identify a cure amount greater than zero:

> a. The cure amount specified for Contract number 6 on the Debtor Contract List, which Drexel believes to correspond to Contract number 14 on the Drexel Contract List, is listed as $98,753.39. As of July 31, 2019, the amount necessary to cure payment defaults under such Contract was $128,056.39, subject to any further accruals.[4]

---

[4] Note that, as set forth below and on Exhibit C, this Contract has expired, such that even with payment of any cure amounts owed with respect to monetary defaults thereunder, this Contract may not be assumed and assigned by the Debtors.

  b. The cure amount specified for Contract number 20 on the Debtor Contract List is listed as $961,912.80. Drexel has so far been unable to identify this Contract and reserves all objections to such cure amount pending such identification.

  c. The cure amount specified for the AAA, Contract number 32 on the Debtor Contract List, which Drexel believes to correspond to Contract number 1 on the Drexel Contract List, is listed as $13,116,121.30. As of July 31, 2019, the amount necessary to cure payment defaults under such Contract was $14,439,162.00, subject to any further accruals. Moreover, the closure of Hahnemann has resulted in other monetary damages to Drexel under the AAA, the total amount of which is yet to be determined.[5]

13. The Debtor Contract List reflects cure amounts of zero for all other Contracts. Zero is incorrect for Contracts numbered 3, 4, 5, 8, 9, and 15 on the Drexel Contract List.[6] As of July 31, 2019, the amount necessary to cure payment defaults under such Contracts is reflected on <u>Exhibit B</u>, subject to any further accruals.

14. To cure the monetary defaults under the Contracts and assume the Contracts, the Debtors must pay the full cure amounts based on the actual amounts that are due on the date that any of the Contracts are assumed. Any order permitting the assumption and assignment of any of the Contracts must direct that the Debtors fully pay all amounts due to Drexel under the Contracts as of the date of the assumption.

---

[5] Note that, as set forth above, the closure of Hahnemann has resulted in an incurable breach of the AAA, such that even with payment of any cure amounts owed with respect to monetary defaults thereunder, the AAA may not be assumed and assigned by the Debtors.

[6] To the extent that Drexel was able to determine possible corresponding Contracts on the Debtor Contract List, those corresponding Contracts can be determined on <u>Exhibit C</u>).

C.  **The Debtor Cannot Assume or Assign Contracts That Have Expired by Their Terms.**

15. A debtor may use section 365 of the Bankruptcy Code to assume an executory contract so long as the contract is executory. *See In re Kong*, 162 B.R. 86, 91 (Bankr. E.D.N.Y. 1993) ("before section 365 applies enabling a debtor to exercise this power, it must be established that an executory contract or unexpired lease exists at the time of the filing").

16. A contract is executory when "the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to compel performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 26, 39 (3d Cir. 1989).

17. A debtor may not change the nature of a contract from non-executory to executory merely by seeking to assume the contract pursuant to section 365 of the Bankruptcy Code. *See In re Exide Tech.*, 378 B.R. 762, 766-67 (Bankr. D. Del. 2007) (noting that a debtor may not deem a contract executory by listing it on an executory contract list); *In re Fitch*, 174 B.R. 96, 101 (Bankr. S.D. Ill. 1994) ("A debtor cannot change the nature of a contract merely by electing to assume it under § 365.").

18. Accordingly, a debtor may not assume a contract that has expired. *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1061 (3d. Cir. 1988) ("A contract may not be assumed under § 365 if it has already expired according to its terms.").

19. Certain of the Contracts on the Drexel Contract List have expired in accordance with their terms, as reflected on <u>Exhibit B</u>.  Accordingly, such Contracts may not be assumed and assigned by the Debtors.

**RESERVATION OF RIGHTS**

20. As noted above, the Debtor Contract List includes many Unidentified Contracts. Drexel reserves the right to supplement this objection if any such Unidentified Contracts exist and are subsequently identified. As contemplated by the Notice, Drexel also reserves all objections as to adequate assurance of future performance pending identification of the proposed assignee for the Contracts.

WHEREFORE, Drexel respectfully requests that the Court enter an order consistent with this Objection and grant such other and further relief as the Court deems just and proper.

Dated: August 30, 2019
       Wilmington, Delaware

Respectfully submitted,

*/s/ Tobey M. Daluz*
Tobey M. Daluz (No. 3939)
Chantelle D. McClamb (No. 5978)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Tel: (302) 252-4465
Fax: (302) 252-4466
daluzt@ballardspahr.com
mcclambc@ballardspahr.com

    and

Vincent J. Marriott III, Esq.*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500
Fax: (215) 864-8999
marriott@ballardspahr.com

(*admitted pro hac vice*)

*Counsel for Drexel University*