**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CENTER CITY HEALTHCARE, LLC | : | Case No. 19-11466 (KG) |
| D/B/A HAHNEMANN UNIVERSITY | : | |
| HOSPITAL, *et al.*,[1] | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Re: Docket Nos. 205, 301, 510 |
| | : | |

------------------------------------------------------x

### OBJECTION OF 3M COMPANY TO ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACT PROPOSED TO BE ASSUMED AND ASSIGNED TO PURCHASER

3M Company ("3M"), by and through its undersigned counsel, hereby files this objection (the "Objection") to (i) the *Debtors' Motion for Entry of (A) an Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Debtors and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to Any Stalking Horse Purchasers, and (IV) Granting Related Relief; and (B) One or More Orders (I) Approving the Sales or Other Acquisition Transactions for the Assets, (II) Authorizing the Sales Free and Clear of All Encumbrances, (III) Authorizing the Assumption and Assignment of*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341); Philadelphia Academic Health System, LLC (8681); St. Christopher's Healthcare, LLC (8395); Philadelphia Academic Medical Associates, LLC (8165); HPS of PA, L.L.C. (1617); SCHC Pediatric Associates, L.L.C. (0527); St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447); SCHC Pediatric Anesthesia Associates, L.L.C. (2326); StChris Care at Northeast Pediatrics, L.L.C. (4056); TPS of PA, L.L.C. (4862); TPS II of PA, L.L.C. (5534); TPS III of PA, L.L.C.(5536); TPS IV of PA, L.L.C. (5537); and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

*Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 205] (the "Sale Motion") filed by St. Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children ("SCH") and certain of its affiliates, as debtors and debtors in possession (collectively, "Debtors"), seeking authorization to, among other things, enter into an asset purchase agreement (the "APA") for the sale of substantially all of the Debtors' assets to, and the assumption and assignment of certain executory contracts and unexpired leases by, the stalking horse purchaser(s) (the "Stalking Horse Purchaser"); and (ii) the *Notice of Assumption, Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases of the Debtors* [Docket No. 510] (the "Cure Notice", and together with the Sale Motion, the "Assumption Motion")[3] to the extent the Assumption Motion seeks authorization from the Court to assume and assign the Master Software and Services Agreement by and between Debtor Philadelphia Academic Health System, LLC ("PAHS") and 3M Health Information Systems, Inc., a division of 3M (together with all exhibits and amendments, the "License Agreement"). By the Assumption Motion, the Debtors seek to assume the License Agreement and assign it to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is outbid at the auction, the successful overbidder. 3M objects to the assumption and assignment of the License Agreement to the Stalking Horse Purchaser or the successful overbidder and represents as follows:

**PRELIMINARY STATEMENT**

1.      Executory contracts such as the License Agreement are subject to the protections provided under section 365 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code") prior to assumption and assignment.

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Sale Motion and Cure Notice.

2. First and foremost, section 365(c)(1) prevents a debtor from assuming an intellectual property license and assigning it to a third party unless the licensor consents to such assumption and assignment. The License Agreement is a non-exclusive copyright license and may not, pursuant to non-bankruptcy applicable law, be assigned without consent. Because 3M does not consent to the assignment of the License Agreement, under applicable federal copyright law, 3M cannot be required to accept or render performance under the License Agreement from or to an assignee of the Debtors.

3. In addition, section 365(b)(1)(A) requires the Debtors to cure outstanding defaults, or provide adequate assurance that such defaults will be promptly cured, in order to assume contract an executory contract. The Debtors stand in default of material provisions of the License Agreement, and the Debtors have not proposed to cure those outstanding defaults in accordance with section 365(b). Should the Court find that the License Agreement is assignable, the Debtors should be required to pay 3M the cure amount of no less than $503,188.03 as the balance due and owing as of September 21, 2019.

4. Finally, no adequate assurance of future performance under the License Agreement has been provided to 3M as required under section 365(b)(1)(C).

5. In sum, this Court need not look beyond the unambiguous terms of the License Agreement and the plain language of section 365(c)(1) to determine that the Agreement is not assumable or assignable to any successful bidder. Moreover, the Debtors fail to cure outstanding defaults or to provide adequate assurance of future performance. For these reasons, 3M respectfully submits that the Assumption Motion should be denied with respect to the License Agreement.

**BACKGROUND**

6.     On April 25, 2019, PAHS and 3M entered into the License Agreement effective as of January 1, 2019.  Pursuant to the License Agreement, PAHS was to submit a purchase order in the amount of $822,914.70 in connection with the execution of the Agreement.[4]  *See* License Agreement, at 1.  Among other things, the License Agreement, by its plain terms conveys a non-exclusive, non-transferable and non-sublicensable license to PAHS.  Specifically, the License Agreement grants PAHS a non-exclusive license for the use of the 3M™ 360 Encompass™ System, an integrated application that combines computer assisted coding, clinical documentation improvement, and quality metrics and analytics.  PAHS has identified facilities operated by various Debtors as "Authorized Sites" (as defined in the License Agreement) that access or host the software on behalf of PAHS.  These Debtors pay license and support fees, and 3M provides software and related services (*e.g.*, support, maintenance and updates) to these Debtors.

7.     The License Agreement provides that 3M is the sole and exclusive owner of all right, title and interest, including without limitation, all extant patent rights, copyrights, trademarks, proprietary information, and trade secrets (collectively, the "<u>Intellectual Property Rights</u>"), in and to the 3M Information (as defined in the License Agreement to include software, products, and deliverables, among other things).  The License Agreement does not transfer to the Debtors any title to or ownership of the 3M Information or any Intellectual Property Rights associated with the 3M Information.  The Debtors are prohibited from providing or allowing any third party to use, access or host the 3M Information without 3M's prior written consent.  Pursuant to the License Agreement, neither the License Agreement nor any part or portion of the

---

[4] The fee in the total amount of the $822,914.70 includes: (i) first year annual software license and support fees in the amount of $436,083.70; (ii) one-time implementation and training fees in the amount of $274,936.00; and (iii) consulting services fees in the amount of $111,895.00

4

License Agreement shall be assigned, sublicensed or otherwise transferred by either party without the other party's written acceptance, and any attempt to do so shall be void.

8. On June 30, 2019 and July 1, 2019 (the "Petition Dates"), approximately two (2) months after the parties entered into the License Agreement, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

9. On July 16, 2019, the Debtors filed the Sale Motion. As of the date that the Sale Motion was filed, there was no Stalking Horse Purchaser for the assets that are subject to the proposed sale.

10. On July 26, 2019, the Court entered an order approving, among other things, the bidding procedures requested in the Sale Motion [Docket No. 301] (the "Bidding Procedures Order").

11. On August 14, 2019, PAHS filed its *Schedules of Assets and Liabilities* [Docket No. 447] (the "Schedules"). The Schedules list 3M as a creditor holding a general unsecured claim in the amount of $399,930.52 (the "Scheduled Claim") and as a counterparty to a "License Agreement". *See* Schedule F, at Item 3.1; Schedule G, at Item 2.1.

12. On August 16, 2019, the Debtors filed the Cure Notice in accordance with the Bidding Procedures Order. Exhibit A to the Cure Notice designates a "License Agreement" between 3M and PAHS for possible assumption and assignment to a third party and sets forth a proposed cure amount of $0.00 (the "Proposed Cure Amount") in connection therewith. The Cure Notice describes the contract as follows:

5

| Contract Party | Title of Agreement | Debtor Party | Proposed Cure Amount |
|---|---|---|---|
| 3M Health Information Systems, Inc. | License Agreement | Philadelphia Academic Health System, LLC | $0.00 |

13. Upon information and belief, a Stalking Horse Purchaser has not yet been identified, and therefore, as of the date hereof, no proposed asset purchase agreement has been filed of record to provide the terms of any possible sale.

## OBJECTION

### A. The License Agreement is an Executory Contract

14. Section 365 of the Bankruptcy Code permits a debtor to assume or reject "executory contracts" provided certain conditions are satisfied. 11 U.S.C. § 365. Although the Bankruptcy Code does not define executory contracts, the Supreme Court has stated that "[a] contract is executory if 'performance remains due to some extent on both sides.'" *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019). The Third Circuit follows the general rule that intellectual property contracts, including copyright licenses, are executory contracts within the meaning of section 365(c). *See*, *e.g.*, *In re Valley Media, Inc.,* 279 B.R. 105, 135-36 (Bankr. D. Del. 2002); *In re Golden Books Family Enter., Inc.*, 269 B.R. 300, 308-09 (Bankr. D. Del. 2001); *In re Access Beyond Tech., Inc.,* 237 B.R. 32, 43 (Bankr. D. Del. 1999).

15. The License Agreement imposes a number of continuing obligations on both parties. The Debtors are required to remit license fee payments and comply with restrictions on the scope of its use of the licensed intellectual property. 3M agrees to maintain the intellectual property rights, to protect the intellectual property against infringement by third parties, to defend claims that the licensed intellectual property infringes a third party's rights and not to sue the Debtors for copyright infringement (provided the Debtors abide by the terms of the License

Agreement).  Such continuing obligations have been held to satisfy the requirements for executory contracts.  *See, e.g., In re Golden Books*, 269 B.R. at 308-09 ("applying the Countryman definition of executory contracts, courts generally have found intellectual property licenses to be 'executory' within the meaning of section 365(c) because each party to the license had the material duty of 'refraining from suing the other for infringement of any of the [intellectual property] covered by the license.'") (alteration in original).  As both PAHS and 3M have ongoing obligations as parties to an intellectual property license, the License Agreement is clearly an executory contract.

B.   **The Debtors May Not Assign the License Agreement Without 3M's Consent**

16.   As set forth above, the License Agreement between 3M and PAHS is an executory contract subject to section 365 of the Bankruptcy Code.  Section 365(c)(1) provides in pertinent part:

> The trustee may not assume or assign an executory contract . . . whether or not such contract . . . prohibits or restricts assignment of rights or delegation of duties, if--
> (1)   (A)   applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>        (B)   such party does not consent to such assumption or assignment . . . .

11 U.S.C. § 365(c)(1).  A debtor's ability to assume and/or assume and assign an executory contract is not absolute as, pursuant to section 365(c), consent is needed to accomplish assumption or assignment if applicable law excuses the non-debtor party to the contract from accepting performance from or rendering performance to an entity other than the debtor.  The term "applicable law" in section 365 encompasses any law which bars assignment, whether

7

contractual or otherwise.  *See, e.g.*, *Reiser v. Dayton Country Club Co.* (*In re Magness*), 972 F.2d 689 (6th Cir. 1992).

17. The License Agreement expressly states that the license granted to use the software is "non-exclusive."  The non-exclusively licensed software programs at issue are duly registered computer programs and the applicable law that governs such agreements outside of bankruptcy is the federal law applicable to copyrights.  *See RCI Tech. Corp. v. Sunterra Corp.* (*In re Sunterra Corp.*), 361 F.3d 257, 262 (4th Cir. 2004); *Ever ex Systems, Inc. v. Cadtrak Corp.* (*In re CFLC, Inc.*), 89 F.3d 673 (9th Cir. 1996).  It is a general principle of copyright law that a non-exclusive license does not transfer ownership, is personal to the named licensee only and may not be transferred without the consent of the copyright owner.  *See*, *e.g.*, *In re Golden Books*, 269 B.R. at 308-10 (analyzing copyright law and holding that the "prevailing case law holds that nonexclusive intellectual property licenses do not give rise to ownership rights and cannot, as a matter of law, be assigned without the consent of the licensor"); *In re Patient Educ. Media*, 210 B.R. 237, 242-43 (Bankr. S.D.N.Y. 1997) (Under copyright law, "a non-exclusive licensee . . . has only a personal and not a property interest in the [intellectual property]," which "cannot be assigned unless the [intellectual property] owner authorizes the assignment. . ."). Courts have consistently held that non-exclusive intellectual property licenses are not assignable under section 365(c) without the consent of the counterparty to such license.  *See In re Sunterra Corp.*, 361 F.3d at 262; *Perlman v. Catapult Entertainment, Inc.* (*In re Catapult Entertainment, Inc.*), 165 F.3d 747 (9th Cir. 1999); *In re Valley Media, Inc.,* 279 B.R. at 136; *In re Buildnet, Inc.*, 2002 WL 31103235, Case No. 01-82293, at *5 (Bankr. M.D.N.C. Sept. 20, 2002); *In re Golden Books*, 269 B.R. at 309; *In re Access Beyond Techs., Inc.*, 237 B.R. 32 (Bankr. D. Del. 1999); *In re Patient Education Media, Inc.*, 210 B.R. at 243.  As a non-exclusive license

agreement, the License Agreement is not assignable without 3M's approval under applicable copyright law. Copyright law prohibits the transfer of non-exclusive licenses without the licensor's consent, and 3M does not consent to the assumption and assignment of the License Agreement between 3M and the Debtors.

C.     **The Debtors Fail to Propose a Cure Amount that Cures Outstanding Defaults**

18.    In addition to contesting the assignability of the License Agreement, 3M objects to the Proposed Cure Amount referenced in the Cure Notice as materially understated. Under section 365(b)(1) of the Bankruptcy Code, a contract may be assumed as an executory contract only if the debtor, at the time of such assumption, cures outstanding defaults or provides adequate assurance that they will be promptly cured. 11 U.S.C. § 365(b)(1)(A). A cure under section 365 means that all unpaid amounts due under the agreement have been paid. *In re Network Access Solutions, Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005).

19.    Notwithstanding the recent execution of the License Agreement requiring the submission of a purchase order in the amount of $822,914.70 or PAHS listing the Scheduled Claim in the amount of $399,930.52, the Debtors propose a cure amount of **$0.00**. The Debtors' Proposed Cure Amount disregards the Debtors' cure obligations in relation to the amounts actually owed under the License Agreement. As set forth on the account statement attached as **Exhibit "A"** hereto, 3M's records reflect that a balance of $389,604.77 is presently overdue in connection with the License Agreement. An additional balance of $113,583.26 comes due on September 21, 2019 and will increase the cure amount to $503,188.03 if not paid in the ordinary course. As the case proceeds, 3M continues to provide postpetition services to the Debtors' estates, and additional amounts become due under the License Agreement. 3M is concerned

9

about the binding nature of a proposed cure amount without knowing when a sale will close or what payments, if any, will be made for those postpetition services in the interim.

20. As the Proposed Cure Amount does not satisfy the requirement under section 365(b)(1) that the Debtors fully cure all monetary defaults in order to assume the License Agreement, 3M hereby objects to the Assumption Motion and the Proposed Cure Amount. If the License Agreement is to be assumed and assigned, such assumption must be conditioned upon full payment of the outstanding balance of $389,604.77 ($503,188.03 if the invoices due September 21, 2019 are not paid in the ordinary course), as well as any additional amounts that may continue to accrue to the extent not paid by the Debtors in the ordinary course.

**D.** **No Adequate Assurance of Future Performance Has Been Provided to 3M**

21. Aside from the requirement that defaults be cured prior to assuming and assigning an executory contract, the assignee must provide "adequate assurance of future performance." 11 U.S.C. § 365(b)(1)(C). 3M objects to the Assumption Motion based on the absence of adequate assurance by any assignee (whose identity remains uncertain at this time) of future performance under the License Agreement, including, without limitation, the ability of the Debtors, the Stalking Horse Purchaser or the successful bidder to cure all monetary defaults.

22. As shown, the Debtors are in default under the License Agreement. Notwithstanding these defaults, the Stalking Horse Purchaser has not provided 3M (or the Court) with adequate assurance that it will be able to perform the obligations under the License Agreement. *See In re Texas Health Enters., Inc.*, 246 B.R. 832, 835 (Bankr. E.D. Tex. 2000) (placing the burden on the movant to make such showing). 3M has not been provided with any assurance that the Stalking Horse Purchaser (or any other successful bidder) will be in a position to pay the license and support fees under the License Agreement. In fact, at this point the

10

ADMIN 35771663v2

identity of the Stalking Horse Purchaser and any overbidder (if there is one) remains unknown. As 3M has not received information sufficient to evaluate whether any potential purchaser or overbidder can provide adequate assurance of future performance of the License Agreement, 3M objects to the assumption and assignment of the License Agreement.

E. **3M Software Must be Removed from the Debtors' Assets Prior to Their Transfer to a Third Party**

23. As explained above, the Debtors may not assume or assign the License Agreement absent 3M's consent. However, 3M's software currently may be loaded on assets that may be transferred to the successful bidder in connection with the proposed sale. In order to prevent the unauthorized transfer of the software, the Debtors must expunge all copies of the software and any portions thereof from all acquired assets on which the software is located prior to the transfer of those assets to the purchaser, return all copies of the software to 3M, and certify to 3M in writing that they have complied with these obligations.

24. Consistent with the above, 3M respectfully requests that the following provision be added to any order approving the sale of the Debtors' assets:

> Notwithstanding anything to the contrary contained in the APA or this Order, this Order does not approve the sale or transfer of the software (the "3M Software") of 3M Company ("3M"), or any rights to use the 3M Software, to the Purchaser and the Purchaser shall not receive any rights to use or otherwise benefit from the 3M Software from and after the Closing Date as a result of entry of this Order. The Purchaser and 3M may agree to enter into a license for the Purchaser's use of the 3M Software (the "Purchaser-3M Agreement"). Unless and until the Purchaser and 3M have entered into a Purchaser-3M Agreement, the Purchaser shall not use the 3M Software. Absent a Purchaser-3M Agreement, the Debtors shall (i) expunge all copies of the 3M Software and any portions thereof from all computers and storage media and devices on which the 3M Software is located (with no copies retained by the Debtors) prior to the transfer of any such assets to the Purchaser, (ii) return the 3M Software, including all related documentation, manuals and copies, to 3M and (iii) certify to 3M in writing that they have complied with these obligations within five (5) days of the Closing Date.

## RESERVATION OF RIGHTS

25. 3M reserves the right to supplement and/or amend this objection and to introduce evidence at any hearing related to the Sale Motion and/or the Cure Notice and this Objection.

## CONCLUSION

WHEREFORE, 3M respectfully requests that this Court enter an order (i) denying the Debtors' effort to assign the License Agreement between 3M and the Debtors to the purchaser of Debtors' assets, or, in the alternative, conditioning the assumption and assignment of the License Agreement on the full and prompt payment of the correct cure amount and adequate assurance of future performance; and (ii) providing such further relief as this Court deems just and proper.

Dated: August 30, 2019

GREENBERG TRAURIG, LLP

 /s/ Dennis A. Meloro
Dennis A. Meloro (DE Bar No. 4435)
The Nemours Building
1007 N. Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile:  (302) 661-7360
E-mail:    melorod@gtlaw.com

-and-

DENTONS US LLP
Alison Elko Franklin
303 Peachtree Street, Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404)527-4198
E-mail:    alison.franklin@dentons.com

*Counsel for 3M Company*