**<u>Exhibit 1</u>**
**Stipulation**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (KG) |
| | (Jointly Administered) |
| Debtors. | |

**STIPULATION BY AND BETWEEN DEBTORS AND PATIENT CARE OMBUDSMAN**
**REGARDING ACCESS TO CONFIDENTIAL PATIENT RECORDS**

The Debtors and Suzanne Koenig, the patient care ombudsman (the "**Ombudsman**" and together with the Debtors, the "**Parties**") appointed in the above-captioned cases (the "**Cases**"), by and through their respective undersigned counsel, enter into this stipulation (this "**Stipulation**") and hereby agree as follows:

**RECITALS**

WHEREAS, on July 2, 2019, the Court entered an order (the "**Appointment Order**") [D.I. 83] directing the Acting United States Trustee for the District of Delaware (the "**U.S. Trustee**") to appoint a patient care ombudsman in these Cases pursuant to section 333 of the Bankruptcy Code.

WHEREAS, on July 3, 2019, pursuant to the Order, the U.S. Trustee appointed Suzanne Koenig as the Ombudsman in these Cases [D.I. 95].

WHEREAS, the Ombudsman was granted, *inter alia*, the authority to (i) monitor the quality of patient care provided to patients of the Debtors, to the extent necessary under the

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Center City Healthcare, LLC (3341); Philadelphia Academic Health System, LLC (8681); St. Christopher's Healthcare, LLC (8395); Philadelphia Academic Medical Associates, LLC (8165); HPS of PA, L.L.C. (1617); SCHC Pediatric Associates, L.L.C. (0527); St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447); SCHC Pediatric Anesthesia Associates, L.L.C. (2326); St Chris Care at Northeast Pediatrics, L.L.C. (4056); TPS of PA, L.L.C. (4862); TPS II of PA, L.L.C. (5534); TPS III of PA, L.L.C. (5536); TPS IV of PA, L.L.C. (5537); and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

circumstances, including interviewing patients and physicians, and (ii) maintain any information obtained by the Ombudsman under section 333 of the Bankruptcy Code that relates to patients, including information relating to patient records, as confidential information.

WHEREAS, the Ombudsman's ability to access and review confidential patient information is necessary to perform her duties as set forth in section 333 of the Bankruptcy Code and the Appointment Order.

WHEREAS, the Ombudsman will be filing applications to retain SAK Management Services LLC as medical operations consultants ("**SAK**") and Greenberg Traurig, LLP as counsel (collectively, with SAK, the "**Ombudsman Representatives**") to assist her in discharging her responsibilities as Ombudsman.

WHEREAS, the Parties agree that in order for the Ombudsman to effectively discharge her duties, the Ombudsman Representatives should also be granted authority to interview patients and physicians and to review confidential patient records.

WHEREAS, the Parties seek a Qualified Protective Order as defined under the Health Insurance Portability and Accountability Act of 1996, and its implementing regulations promulgated thereunder, as amended and in effect (collectively referred to hereinafter as "**HIPAA**") in order to comply with any additional requirement of HIPAA that provides for privacy and security standards for the safeguarding of protected health information that may apply to the Ombudsman and Ombudsman Representatives.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing, the Parties hereby agree and stipulate as follows:

1.      The Ombudsman and the Ombudsman Representatives shall be permitted to access confidential patient information pursuant to the terms of this Stipulation and the Appointment Order.

2.      The Ombudsman and the Ombudsman Representatives shall implement the following procedures to safeguard the confidentiality of protected health information ("**PHI**"), as defined under HIPAA:

   a.   The Ombudsman and Ombudsman Representatives shall be prohibited from using or disclosing the PHI for any purpose other than for purposes of fulfilling the Ombudsman's responsibilities in these cases.  The Ombudsman and Ombudsman Representatives shall use only the minimum necessary PHI for such purposes.

   b.   The Ombudsman and Ombudsman Representatives shall implement appropriate safeguards, and comply with Subpart C of 45 CFR Part 164 with respect to electronic PHI, to prevent review, use, or disclosure of PHI, including subjecting the Ombudsman and Ombudsman Representatives to the same standards regarding confidentiality of patient records as the Debtors under applicable laws, including, but not limited to, HIPAA, 42 USC § 290dd-2 (Confidentiality of [Substance Abuse Treatment] Records), the Federal Confidentiality of Alcohol and Drug Abuse Patient Records regulations found at 42 CFR Part 2, the Pennsylvania Mental Health Procedures Act (50 P.S. §5100, *et seq.*), and the Pennsylvania Drug and Alcohol Abuse Control Act (71 P.S. § 1690.108).

   c.   The Ombudsman and Ombudsman Representatives shall mitigate (to the extent reasonably practicable) any harmful effect that is known to them from a use or disclosure of PHI by them in violation of the requirements of this Stipulation.

   d.   The Ombudsman and Ombudsman Representatives must not make any paper or electronic copies of, or otherwise acquire, any PHI in the course of their duties, such that it is not necessary for them to return or destroy the PHI received at the end of all litigation.

e.  Any person with whom the Ombudsman retains, employs, or contracts, or who otherwise acts as an agent for the Ombudsman, shall abide by the same restrictions and conditions that apply to the Ombudsman with respect to PHI.

f.  The Ombudsman and Ombudsman Representatives shall only review patient records and talk to patients if the patients or their guardians consent.

g.  The Ombudsman and Ombudsman Representatives agree not to review historical patient records.

h.  The Ombudsman and Ombudsman Representatives shall report to Debtors any use or disclosure of PHI not provided for by this Stipulation of which they become aware, including breaches of unsecured PHI, and any security incident of which they become aware.

i.  The Ombudsman and Ombudsman Representatives shall make available to the Debtors and to the Secretary of the United States Department of Health and Human Services, upon request, their internal books and records relating to the use and disclosure of PHI for purposes of determining compliance with HIPAA.

j.  The Ombudsman and Ombudsman Representatives shall document any disclosures of PHI and information related to such disclosures as would be required for the Debtors to respond to a request by an individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.

k.  To the extent the Ombudsman prepares any reports or motions required to be filed under section 333 of the Bankruptcy Code, the Ombudsman shall not disclose any information that would identify any individual patient of the Debtors in any such reports or motions, but shall utilize only summarized or aggregate data that has been de-identified in accordance with 45 CFR § 164.514; provided, however, that, if necessary, the Ombudsman may include personally identifiable information in a report or motion advising the Court of a significant decline in, or material compromise to, the quality of care, provided that the Ombudsman files such report or motion under seal.

3.    The Debtors and the Ombudsman shall enter into a Sub-Business Associate Agreement within the ambit of HIPAA, substantially in the form attached hereto as **Exhibit A**.

4.    This Stipulation contains the entire agreement by the Parties with respect to the subject matter hereof.

5.    Facsimile or other electronic copies of signatures on this Stipulation are acceptable and shall have the same force and effect as original signatures.

6.    This Stipulation may be executed in counterparts, each of which is deemed to be an original, but when taken together constitute one and the same document.

7.    The Bankruptcy Court shall retain jurisdiction to hear any matters or disputes arising from or relating to this Stipulation.

Dated: August 29, 2019

GREENBERG TRAURIG, LLP

*/s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  (302) 661-7000
Facsimile:  (302) 661-7360
Email:  melorod@gtlaw.com

-and-

Nancy A. Peterman (*pro hac vice* pending)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
200 Park Avenue
Chicago, Illinois 60601
Telephone:  (312) 456-8410
Facsimile:  (312) 899-0341
Email:  PetermanN@gtlaw.com

*Proposed Counsel for the Patient Care Ombudsman*

SAUL EWING ARNSTEIN & LEHR LLP

*/s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-5873
Email: mark.minuti@saul.com
Email: monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Facsimile: (215) 972-7725
Email: jeffrey.hampton@saul.com
Email: adam.isenberg@saul.com

*Counsel for Debtors and Debtors in Possession*

**Exhibit A**
**(Sub-Business Associate Agreement)**

## Sub-Business Associate Agreement

This Sub-Business Associate Agreement (the "Agreement"), effective as of _____, 201_ (the "Effective Date") is made by and among Philadelphia Academic Health System, LLC ("Business Associate") and Suzanne Koenig ("Sub- Business Associate"). Business Associate and Sub-Business Associate shall be collectively referred to herein as the "Parties".

WHEREAS, Sub-Business Associate performs certain services for Business Associate and in connection with Sub-Business Associate providing such services to Business Associate, Sub-Business Associate may, on behalf of Business Associate, create, receive, maintain, or transmit certain Protected Health Information ("PHI") on behalf of one or more Covered Entities;

WHEREAS, Business Associate and Sub-Business Associate intend to protect the privacy and provide for the security of PHI disclosed pursuant to this Sub-Business Associate Agreement and the Agreement in compliance with the Health Insurance Portability and Accountability Act of 1996, Subtitle D of the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH"), and regulations and other guidance promulgated under both laws by the U.S. Department of Health and Human Services (collectively, "HIPAA Law"), as well as other applicable federal and state laws; and

WHEREAS, Business Associate and Sub-Business Associate enter into this agreement for the purpose of ensuring compliance with the requirements of the HIPAA Law and relevant State Privacy and Security Laws.

NOW THEREFORE, the premises having been considered and with acknowledgment of the mutual promises and of other good and valuable consideration herein contained, the Parties, intending to be legally bound, hereby agree as follows:

I.    **DEFINITIONS.**  Terms not defined below shall have the meaning set forth in the HIPAA Law.

A.    Individual.  "Individual" shall have the same meaning as the term "individual" in 45 CFR §160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR §164.502(g).

B.    Bankruptcy Case.  "Bankruptcy Case" means the Chapter 11 bankruptcy case currently pending before the United States Bankruptcy Court for the District of Delaware, which is styled *Center City Healthcare, LLC d/b/a Hahnemann University Hospital, et al.*, and numbered 19-11466 (KG).

C.    Bankruptcy Court.  "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

D.    Breach.  "Breach" shall have the same meaning as the term "breach" in 45 CFR §164.402.

E.    Covered Entities.  "Covered Entities" means the covered entity subsidiaries of Business Associate.

F.    Designated Record Set.  "Designated Record Set" shall have the same meaning as the term "designated record set" in 45 CFR §164.501.

1

G.      Electronic Protected Health Information, EPHI or Electronic PHI.  "Electronic Protected Health Information", "EPHI" or "Electronic PHI" shall have the same meaning as the term "electronic protected health information" in 45 CFR §160.103, limited to the information created or received by Sub-Business Associate from or on behalf of Business Associate and the applicable Covered Entity(ies) pursuant to the Agreement.

H.      Encrypted or Encryption.  "Encrypted" or "Encryption" shall mean encryption that meets the U.S. Department of Health and Human Services Guidance Specifying the Technologies and Methodologies that Render Protected Health Information Unusable, Unreadable, or Indecipherable to Unauthorized Individuals for Purposes of the Breach Notification Requirements under Section 13402 of HITECH Act.

I.      Privacy Rule.  "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E, as amended by the HITECH Act and as may otherwise be amended from time to time.

J.      Protected Health Information or PHI.  "Protected Health Information" or "PHI" shall have the same meaning as the term "protected health information" in 45 CFR §160.103, limited to the information created or received by Sub-Business Associate from or on behalf of Business Associate and the applicable Covered Entity(ies) pursuant to the Bankruptcy Case.  As used in this Agreement, Protected Health Information shall also include Electronic PHI.

K.      Required by Law.  "Required by Law" shall have the same meaning as the term "required by law" in 45 CFR §164.103.

L.      Secretary.  "Secretary" shall mean the Secretary of the U.S. Department of Health and Human Services or his or her designee.

M.      Security Incident.  "Security Incident" shall have the same meaning as the term "security incident" in 45 CFR §164.304.

N.      Security Rule.  "Security Rule" shall mean the regulations found at 45 CFR Part 160 and Part 164, Subparts A and C, as amended by the HITECH Act and as may otherwise be amended from time to time.

O.      State Privacy and Security Laws.  "State Privacy and Security Laws" shall mean all applicable state Laws relating to privacy, security, data breach and confidentiality of the information provided to Sub-Business Associate under this Agreement.

P.      Stipulation.  "Stipulation" means the Order Approving Stipulation by and between the Debtors and the Patient Care Ombudsman Regarding Access to Confidential Patient Records entered in the Bankruptcy Case.

Q.      Subcontractor.  "Subcontractor" shall have the same meaning as the term "subcontractor" in 45 CFR § 160.103.

R.      Unsecured Protected Health Information.  "Unsecured Protected Health Information" or "Unsecured PHI" shall have the same meaning as the term "unsecured protected health information" in 45 CFR §164.402.

## II.    APPLICABILITY.

This Agreement applies to the services provided by Sub-Business Associate as the Patient Care Ombudsman for Business Associate and the Covered Entities pursuant to the Bankruptcy Case.

## III.    USE OR DISCLOSURE OF PHI BY SUB-BUSINESS ASSOCIATE.

A.      Except as otherwise limited in this Agreement or the Stipulation, Sub-Business Associate may use or disclose Protected Health Information solely to perform functions, activities, or services for, or on behalf of, Business Associate and the Covered Entities under section 333 of the Bankruptcy Code as the Patient Care Ombudsman for Business Associate and the Covered Entities to monitor patient safety and the quality of patient care, provided that such use or disclosure would not violate the Privacy Rule, if done by Business Associate or the applicable Covered Entity.

B.      Except as otherwise limited in this Agreement or the Stipulation, Sub-Business Associate may use PHI for the proper management and administration of Sub-Business Associate or to carry its legal responsibilities.  Except as otherwise limited in this Agreement or the Stipulation, Sub-Business Associate may disclose PHI for the proper management and administration of Sub-Business Associate, provided that disclosures are Required by Law, or Sub-Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required by Law or for the purpose for which it was disclosed to the person, and the person notifies Sub-Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

C.      Sub-Business Associate shall only use and disclose PHI if such use or disclosure complies with each applicable requirement of 45 CFR §164.504(e).

D.      Sub-Business Associate shall use reasonable efforts to limit uses, disclosures, and requests for PHI to the minimum necessary to accomplish the intended purposes of such use, disclosure or request, in accordance with the minimum necessary standards at 45 CFR § 164.502(b) and in any guidance issued by the Secretary.

## IV.    DUTIES OF SUB-BUSINESS ASSOCIATE RELATIVE TO PHI.

A.      Sub-Business Associate shall not use or disclose PHI other than as permitted or required by this Agreement or the Stipulation, or as Required by Law.

B.      Sub-Business Associate shall be directly responsible for compliance with the relevant requirements of the Privacy Rule to the same extent as Business Associate.

C.      Sub-Business Associate shall comply with the applicable provisions of the Security Rule directing the implementation of Administrative, Physical and Technical Safeguards for Electronic Protected Health Information and the development and enforcement of related policies, procedures, and documentation standards (including but not limited to designation of a security official), and shall enter into written agreements with any Subcontractors that create, receive, maintain, or transmit Electronic Protected Health Information on behalf of Sub-Business Associate pursuant to which the Subcontractors shall agree to comply with the applicable requirements of the Security Rule.  Sub-Business Associate shall implement safeguards and policies, procedures, and documentation consistent with the requirements of 45 C.F.R. §§ 164.306, 164.308, 164.310, 164.312, 164.314 and 164.316.  Any hard drives on any computers or laptops that are used to access, receive, send, or maintain Covered Entities' Electronic Protected

35658215.2 08/29/2019

Health Information must be Encrypted and all communications must be Encrypted if sending Electronic Protected Health Information over an open network. Mobile devices or external or removable media, including, without limitation backup tapes, used for sending, receiving, or storing Electronic Protected Health Information must be Encrypted and password protected.

D.    In the event of an unauthorized use or disclosure of PHI or a Breach of Unsecured PHI, Sub-Business Associate shall mitigate, to the extent practicable, any harmful effects of said disclosure that are known to it.

E.    Sub-Business Associate agrees to enter into a written agreement with any Subcontractor that creates, receives, maintains, or transmits PHI on behalf of Sub-Business Associate, which complies with the requirements of 45 C.F.R. § 164.504(e)(2) through (e)(4), and pursuant to which the Subcontractor agrees to the same restrictions and conditions that apply to Sub-Business Associate with respect to such PHI.

F.    To the extent applicable, Sub-Business Associate shall provide access to Protected Health Information in a Designated Record Set at reasonable times, at the request of Business Associate or, as directed by Business Associate, to an Individual (or Individual's designee) in order to meet the requirements under 45 CFR §164.524. Sub-Business Associate shall notify Business Associate within five (5) days of receipt of any request for access by an Individual. Business Associate shall determine whether to grant or deny any access requested by the Individual. The information shall be provided in the form or format requested, if it is readily producible in such form or format, or in summary, if the Individual has agreed in advance to accept the information in summary form. If the Individual requests an electronic copy of his or her PHI maintained in a Designated Record Set electronically, Sub-Business Associate shall provide the Individual (or Individual's designee) with access to the information in the electronic form and format requested by the Individual, if it is readily producible in such form or format, or, if not, in a machine readable electronic form and format agreed to by the Individual. No fee for copying or providing access to the PHI may be charged.

G.    If Sub-Business Associate maintains a Designated Record Set on behalf of Business Associate, Sub-Business Associate shall amend the PHI maintained by Sub-Business Associate as directed by Business Associate within five (5) days of such request. Sub-Business Associate shall notify Business Associate within five (5) days of receipt of any request for amendment by an Individual. Business Associate shall determine whether to grant or deny any access or amendment requested by the Individual. Sub-Business Associate shall have a process in place for requests for amendments and for appending such requests to the Designated Record Set, as requested by Business Associate. No fee for copying or amending the PHI may be charged.

H.    Sub-Business Associate shall, upon request with reasonable notice and at no charge, provide Business Associate or the applicable Covered Entity reasonable access to its premises for a review and demonstration of its internal practices and procedures for safeguarding PHI. The fact that Business Associate or the applicable Covered Entity inspects, or fails to inspect, or has the right to inspect, Sub-Business Associate's premises, systems, policies and procedures does not relieve Sub-Business Associate of its responsibility to comply with this Agreement, nor does Business Associate's or the applicable Covered Entity's: (i) failure to detect or (ii) detection, but failure to notify Sub-Business Associate or require Sub-Business Associate's remediation of any unsatisfactory practices, constitute acceptance of such practice or a waiver of Business Associate's enforcement rights under this Agreement.

I.      Sub-Business Associate agrees to document and make available such disclosures of PHI and information related to such disclosures as would be required for Business Associate or the applicable Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. §164.528 and Section 13405(c) of the HITECH Act, and any implementing regulations.  Should an Individual make a request to Business Associate or the applicable Covered Entity for an accounting of disclosures of his or her PHI pursuant to 45 C.F.R. §164.528, Sub-Business Associate agrees to promptly provide Business Associate with information in a format and manner sufficient to respond to the Individual's request.  No fee for providing the accounting of disclosures of PHI may be charged. This Section shall survive termination of the Agreement.

J.      If an Individual requests Sub-Business Associate to restrict the use or disclosure of PHI, Sub-Business Associate will forward the request to Business Associate within five (5) days of Sub-Business Associate's receipt of the request.  As between the Parties, Business Associate will be responsible for making all determinations regarding the grant or denial of an Individual's request for restrictions, and Sub-Business Associate will make no such determinations.  Sub-Business Associate will restrict the use or disclosure of PHI consistent with Business Associate's instructions, and shall further comply with any Individual's request for restrictions on PHI disclosures that Business Associate or Sub-Business Associate is required by law to honor, including without limitation, requested restrictions on payment or healthcare operations-related disclosures to health plans when the Individual (or other person on behalf of the Individual) has paid the Individual's healthcare provider in full, unless otherwise required by law.  No fee for providing the restriction of PHI may be charged.

K.      Sub-Business Associate shall make its internal practices, books, records, and any other material requested by the Secretary relating to the use, disclosure, and safeguarding of PHI received from, or created or received by Sub-Business Associate on behalf of, Business Associate and the applicable Covered Entity available to the Secretary for the purpose of determining compliance with the Privacy Rule. The aforementioned information shall be made available to the Secretary in the manner and place as designated by the Secretary or the Secretary's duly appointed delegate. Under this Agreement, Sub-Business Associate shall comply and cooperate with any request for documents or other information from the Secretary directed to Business Associate or the applicable Covered Entity that seeks documents or other information held by Sub-Business Associate.  Notwithstanding this provision, no attorney-client, accountant-client or other legal privilege will be deemed waived by Sub-Business Associate or Business Associate as a result of this Section.  Except to the extent prohibited by law, Sub-Business Associate agrees to notify Business Associate immediately upon receipt by Sub-Business Associate of any and all requests by or on behalf of any and all government authorities served upon Sub-Business Associate relating to this Section or Protected Health Information.

L.      Sub-Business Associate may use Protected Health Information to report violations of law to appropriate Federal and State authorities, consistent with 45 C.F.R. §164.502(j)(1).

M.      Sub-Business Associate may not de-identify any Protected Health Information without the express prior written consent of the Business Associate, and if such consent is given, Sub-Business Associate must comply with the requirements set forth at 45 C.F.R. § 164.514 for de-identifying PHI.

N.      Without prior written consent from an authorized officer of Business Associate, neither Sub-Business Associate nor its agents or subcontractors shall transfer or export any PHI

provided by Business Associate outside the United States or store any PHI provided by Business Associate in a hosted/cloud computing environment.

        O.      To the extent Sub-Business Associate is to carry out any obligation of Business Associate or the applicable Covered Entity under the Privacy Rule, Sub-Business Associate shall agree to comply with the same Privacy Rule requirements that apply to Business Associate or the applicable Covered Entity in the performance of such obligation.

## V.     REPORTING.

        A.      <u>Privacy Breach</u>.  Sub-Business Associate will report to Business Associate any use or disclosure of Business Associate's PHI that is not permitted by this Agreement or the Stipulation within forty-eight (48) hours of discovery of the unauthorized use or disclosure.  In addition, Sub-Business Associate will report to Business Associate following discovery and without unreasonable delay, but in no event later than forty-eight (48) hours following discovery of any suspected or actual Breach of Unsecured Protected Health Information or any actual or suspected disclosure or inappropriate access of Business Associate's information which is subject to State Privacy and Security Laws.  Sub-Business Associate shall cooperate with Business Associate in investigating the potential or actual breach, disclosure or inappropriate access and in meeting Business Associate's obligations under the HITECH Act and any other state or federal privacy or security breach notification laws, including, without limitation, assisting the Business Associate with performing a risk assessment as set forth in 45 C.F.R. §164.402(2) and providing any information and documentation related to such risk assessment to the Business Associate promptly upon request.  Any such report shall contain at a minimum the information set forth on <u>Attachment 1</u> attached hereto and incorporated by reference.

        B.      <u>Security Incident</u>.  Sub-Business Associate agrees to report to Business Associate any Security Incident affecting Electronic Protected Health Information of Business Associate within forty-eight (48) hours of becoming aware of the Security Incident. Sub-Business Associate shall mitigate, to the extent practicable, any harmful effect known to Sub-Business Associate of a Security Incident.

## VI.    TERM AND TERMINATION.

        A.      <u>Term</u>.  The Term of this Agreement shall  commence on the Effective Date and shall terminate when all of the Protected Health Information provided by Business Associate to Sub-Business Associate, or created or received by Sub-Business Associate on behalf of Business Associate or the applicable Covered Entity, is destroyed or returned to Business Associate, or, if it is infeasible to return or destroy the Protected Health Information, protections are extended to such information, in accordance with the termination provisions in this <u>Section VI</u>. Notwithstanding anything to the contrary contained in this Agreement, Sub-Business Associate shall not destroy any Protected Health Information without the prior written consent of Business Associate.

        B.      <u>Termination for Cause</u>.  Upon Business Associate's knowledge of a breach by Sub-Business Associate, Sub-Business Associate's violation of the HIPAA Laws or a Breach of Unsecured Protected Health Information by Sub-Business Associate or any Subcontractor of Sub-Business Associate, Business Associate shall, within its sole discretion, either:

             1.      Provide an opportunity for Sub-Business Associate to cure the breach or end the violation and, if Sub-Business Associate does not cure the breach or

end the violation within the time specified by Business Associate, terminate this Agreement; or

        2.      Immediately terminate this Agreement.

C.    <u>Effect of Termination</u>.

        1.      Except as provided in paragraph C(2) of this section, upon termination of this Agreement, for any reason, Sub-Business Associate shall return or destroy (at Business Associate's sole discretion) all Protected Health Information received from Business Associate, or created or received by Sub-Business Associate on behalf of Business Associate within five (5) days of the effective date of the termination. This provision shall apply to Protected Health Information that is in the possession of subcontractors or agents of Sub-Business Associate. Sub-Business Associate shall not retain any copies of the Protected Health Information. Sub-Business Associate will be responsible for recovering any PHI from such agents or subcontractors at no cost to Business Associate. Any information that is in electronic format shall be provided to Business Associate at no additional charge. The format to be provided should be one that is commonly used for export (i.e. comma delimited, text file, Word, Excel or Access database) that is agreeable to Business Associate.

        2.      In the event that Sub-Business Associate determines that returning or destroying the Protected Health Information is infeasible, Sub-Business Associate shall provide to Business Associate written notification of the conditions that make return or destruction infeasible. If such written notification that return or destruction of Protected Health Information is infeasible and agreed to by Business Associate, Sub-Business Associate shall extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Sub-Business Associate maintains such Protected Health Information.

        3.      Should Sub-Business Associate make a disclosure of PHI in violation of this Agreement, Business Associate shall have the right to immediately seek authorization from the Bankruptcy Court to terminate this Agreement.

## VII.   REMEDIES IN EVENT OF BREACH, DISCLAIMER AND INDEMNIFICATION.

A.    Sub-Business Associate hereby recognizes that irreparable harm may result to Business Associate, and to the business of Business Associate, in the event of breach by Sub-Business Associate of any of the covenants and assurances contained in this Agreement. As such, in the event of breach of any of the covenants and assurances contained in <u>Sections III</u>, <u>IV</u> or <u>V</u> above, Business Associate shall be entitled to enjoin and restrain Sub-Business Associate from any continued violation of <u>Sections III</u>, <u>IV</u> or <u>V</u>.

B.    PHI IS PROVIDED TO SUB-BUSINESS ASSOCIATE SOLELY ON AN "AS IS" BASIS. BUSINESS ASSOCIATE DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE. As between Business Associate and Sub-Business Associate, any PHI disclosed, delivered or provided to Sub-Business Associate in connection with the Agreement, shall be deemed to be the exclusive property of Business Associate. In no event shall Sub-Business

Associate or its subcontractors claim any rights with respect to such PHI. To the extent any Breach of Unsecured Protected Health Information or unauthorized acquisition or access to information subject to State Privacy and Security Laws is attributable to either: (i) a breach of the obligations under this Agreement by Sub-Business Associate or (ii) a violation of the HIPAA Law or State Privacy and Security Laws by Sub-Business Associate, Sub-Business Associate shall bear (a) the costs incurred by Business Associate in complying with its legal obligations relating to such breach or violation, and (b) in addition to other damages for which Sub-Business Associate may be liable for under this Agreement, the following expenses incurred by Business Associate in responding to such breach: (1) the cost of preparing and distributing notifications to affected Individuals, (2) the cost of providing notice to government agencies, credit bureaus, and/or other required entities, (3) the cost of providing affected Individuals with credit monitoring services for a specific period not to exceed twenty-four (24) months, or longer if required by law, to the extent the incident could lead to a compromise of the data subject's credit or credit standing, (4) call center support for such affected Individuals for a specific period not to exceed thirty (30) days from the date the breach notification is sent to such affected Individuals and (5) the cost of any other measures required under applicable law.

      C.      Each Party will indemnify, defend and hold the other Party and its officers, directors, employees, agents, affiliates, successors and assigns harmless, from and against any and all losses, liabilities, damages, costs, penalties, fines and expenses (including reasonably attorneys' fees and costs) arising out of or related to either: (i) the liable Party's breach of its obligations under this Agreement and/or (ii) any third-party claim based upon any breach of this Agreement, violation of HIPAA Laws or State Privacy and Security Laws by the liable Party or by its employees, agents or subcontractors ("Claim"). If the liable Party assumes the defense of a Claim, the other Party shall have the right, at its expense, to participate in the defense of such Claim, and the liable Party shall not take any final action with respect to such Claim without the prior written consent of Business Associate. This Section shall survive termination of this Agreement and any Claim is without regard to any limitation or exclusion of damages or liability provisions otherwise set forth in the Agreement or the Stipulation.

**VIII.**    **MODIFICATION.** This Agreement may only be modified through a writing signed by the Parties. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Business Associate to comply with the requirements of the HIPAA Law.

**IX.**    **INTERPRETATION OF THIS CONTRACT IN RELATION TO OTHER CONTRACTS BETWEEN THE PARTIES.** Should there be any conflict between the language of this contract and any other contract entered into between the Parties (either previous or subsequent to the date of this Agreement), the language and provisions of this Agreement shall control and prevail unless the Parties specifically refer in a subsequent written agreement to this Agreement by its title and date and specifically state that the provisions of the later written agreement shall control over this Agreement. Any ambiguity in this Agreement shall be resolved to permit the Parties to comply with the HIPAA Rules and relevant state laws.

**X.**    **COMPLIANCE WITH STATE LAW.** Sub-Business Associate shall comply with State Privacy and Security Laws. If the HIPAA Law and the law of the State in which Business Associate is located conflict regarding the degree of protection provided for Protected Health Information, Sub-Business Associate shall comply with the more restrictive protection requirement.

## XI.    MISCELLANEOUS.

A.    <u>Ambiguity</u>.    Any ambiguity in this Agreement shall be resolved to permit Business Associate to comply with the HIPAA Law.

B.    <u>Notice to Business Associate</u>.    Any notice required under this Agreement to be given Business Associate shall be made in writing to Chief Compliance and Privacy Officer, 1500 Market Street, 24th Floor, West Tower, Centre Square, Philadelphia, PA 19102; via email at privacyofficer@americanacademic.com; or facsimile at (215) 762-8109.

C.    <u>Notice to Sub-Business Associate</u>. Any notice required under this Agreement to be given Sub-Business Associate shall be made in writing to:

Dennis A. Meloro, Esq.
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Email: melorod@gtlaw.com

Nancy A. Peterman, Esq.
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
200 Park Avenue
Chicago, IL 60601
Email: PetermanN@gtlaw.com

IN WITNESS WHEREOF and acknowledging acceptance and agreement of the foregoing, the Parties affix their signatures hereto.

BUSINESS ASSOCIATE:                              SUB-BUSINESS ASSOCIATE:

By: _____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

Attachment 1

## **FORM OF NOTIFICATION OF**

## **BREACH OF UNSECURED PHI AND STATE LAW**

Date completed: _____

This notification is made pursuant to the Sub-Business Associate Agreement between _____ _____ (Business Associate), and _____ (Sub-Business Associate).

Sub-Business Associate hereby notifies Business Associate that there has been an actual or potential breach of unsecured (unencrypted) protected health information (PHI) or information subject to HIPAA Law and/or State Privacy and Security Laws that Sub-Business Associate (or its agents or subcontractors) has used or has had access to under the terms of the Agreement.

**I.**    Characteristics of the Breach

Date of the breach:_____    Date the breach was discovered:_____

Description of the breach: _____

_____

_____

_____

_____

_____

_____

How was the breach discovered? _____

Number of individuals affected by the breach: _____

Are over 500 individuals affected by the breach?

Yes ___  No ____

Have you been able to identify all individuals affected by the breach?

Yes ___  No ____

If yes, for how many of the affected individuals do you have current addresses? _____

Does the information disclosed in the breach identify, or can reasonably be used to identify, specific patients?

10

Yes ___ No ____

If no, please explain why the information does not identify, or cannot reasonably be used to identify, specific patients: _____

_____

Does the information disclosed in the breach contain any sensitive information or other information that can be used in a manner that would be adverse or cause financial or reputational harm to the individual?

Yes ___ No ____

If no, explain why the information cannot be used in an adverse or harmful manner to the individual:_____

_____

_____

Was all of the patient(s') information compromised or only portions?

Yes ___ No ____

If only portions of the information, explain which portions of the information were compromised: _____

_____

Indicate                     type                     of                     breach:

| ___ Theft | ___ Unauthorized Access | ___ Unknown |
|---|---|---|
| ___ Loss | ___ Hacking/IT Incident | ___ Other: _____ |
| ___ Improper Disposal | ___ Phishing | _____ |
| | | _____ |
| | | _____ |

Location                     of                     breached                     information:

| ___ Laptop | ___ Portable Media/Device | ___ Other: _____ |
|---|---|---|
| ___ Desktop Computer | ___ EMR | _____ |
| ___ Email | ___ Paper | _____ |
| | | _____ |

11

Description of types of unsecured PHI or other data involved in the breach:

| | | |
|---|---|---|
| ___ Demographic (full or partial name) | ___ Account number | ___ ICD-10-CM or CPT-codes |
| ___ Social security number | ___ Disability Code | ___ Driver's license, insurance card, or other form of identification |
| ___ Date of birth | ___ Financial (billing info, credit card # or check/bank account number) | ___ Other:_____ <br> _____ <br> _____ <br> _____ <br> _____ |
| ___ Home address | ___ Clinical (any mention of diagnosis, procedure, or treatment provided) | |

Are the patient(s) or the patient(s') family members aware of the incident?

Yes ___ No ___

If yes, describe _____

_____

_____

## II.   Description of Safeguards

Safeguards that were in place prior to the breach:

| | | |
|---|---|---|
| ___ Firewalls | ___ Encrypted wireless | ___ Secure browser |
| ___ Packet Filtering | ___ Logic access control | ___ Biometrics |
| ___ Intrusion detection | ___ Anti-virus software (list product name):_____ | ___ Strong authentication |
| ___ Other:_____ <br> _____ <br> _____ | ___ Physical security: _____ <br> _____ <br> _____ | |

Was the data encrypted in compliance with the encryption standards set forth in the U.S. Department of Health and Human Services Guidance Specifying the Technologies and Methodologies that Render PHI Unusable, Unreadable, or Indecipherable to Unauthorized Individuals for Purposes of the Breach Notification Requirements under Section 13402 of HITECH Act?

Yes ___ No ___

35658215.2 08/29/2019

If yes, please identify the method of encryption: _____

_____

_____

If no, please identify any other methods of securing the information (for example, password protected file): _____

_____

**III.**    The Recipient

Can you determine whether the PHI was actually acquired or viewed by the unintended recipient?

Yes __   No ___

If yes, please explain how and provide any information regarding the information viewed, length of time viewed, whether it was e-mailed or saved to another device and who viewed the information: _____

_____

_____

Did the breach involve a good faith, unintentional acquisition, access or use of PHI by the entity's employee/workforce member?  (For example, a billing employee receives and opens an e-mail containing PHI about a patient which a nurse mistakenly sent to the billing employee.  The billing employee notices that he is not the intended recipient, alerts the nurse of the misdirected e-mail, and then deletes it.)

Yes __   No ___

If yes, please explain: _____

_____

_____

Did the breach involve an inadvertent disclosure to another authorized person within the entity or Organized Healthcare Arrangement in which the entity participates?  (For example – A physician who has authority to use or disclose PHI at a hospital by virtue of participating in an organized healthcare arrangement with the hospital is similarly situated to a nurse or billing employee at the hospital.)

Yes __   No ___

If yes, please explain: _____

_____

_____

13

Did the breach involve a recipient who could not reasonably have retained or remembered the data?  (For example – A sub-business associate, due to a lack of reasonable safeguards, sends a number of explanations of benefits (EOBs) to the wrong individuals.  A few of the EOBs are returned by the post office, unopened, as undeliverable.)

Yes ___ No ____

If yes, please explain: _____

_____

Was the unauthorized person who received the PHI or to whom the disclosure was made covered by HIPAA and/or a licensed healthcare provider?

Yes ___ No ____

If yes, please identify the licensed healthcare provider, the type of license and any state confidentiality regulations which require the licensed provider to maintain the confidentiality of the information: _____

_____

_____

Can any of the information be used by an unauthorized recipient to further the recipient's own interests?

Yes ___ No ____

If no, explain why none of the information cannot be used by an unauthorized recipient to further the recipient's own interests? _____

_____

_____

**IV.**    <u>Addressing the Breach</u>

Description of what Sub-Business Associate is doing to investigate the breach: _____

_____

_____

_____

_____

_____

Has law enforcement been notified?:

Yes ___ No ____

14

If so, describe _____

_____

Did law enforcement ask for patient notification delay (based on hindering an investigation or causing harm to national security)

Yes ___ No ____

If yes, please provide documentation of the police request and deadline for notifications:_____

_____

_____

Was satisfactory assurance obtained from the recipient of PHI indicating that PHI will not be further used or disclosed?

Yes ___ No ____

If yes, please attach and explain: _____

_____

Has the information been returned or properly destroyed?  (If destroyed – need to obtain satisfactory assurance that the information was destroyed.)

Yes ___ No ____

If yes, please attach the assurances and explain the circumstances:_____

_____

Description of what Sub-Business Associate is doing to mitigate harm to the individual(s): _____

_____

_____

Description of what Sub-Business Associate is doing to protect against any further breaches: _____

_____

_____

Contact information to ask questions and obtain additional information:

Name: _____

Title: _____

15

Address: _____

_____

Email Address: _____

Phone Number: _____

16