**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a<br>HAHNEMANN UNIVERSITY HOSPITAL, *et al.,*[1] | Case No. 19-11466 (KG)<br>(Jointly Administered) |
| *Debtors.* | **Re: Docket No. 205** |

**LIMITED OBJECTION OF CERTAIN PHYSICIANS UNDER THE PHILADELPHIA
ACADEMIC HEALTH SYSTEM PHYSICIAN PRACTICE PLAN TO THE
DEBTORS' MOTION SEEKING APPROVAL OF THE SALE OF SUBSTANTIALLY
ALL OF THE ASSETS OF ST. CHRISTOPHER'S HEALTHCARE, LLC AND
CERTAIN OF ITS AFFILIATES**

Certain physicians under the Philadelphia Academic Health System Physician Practice Plan (collectively, the "PAHSPPP Physicians"), by and through undersigned counsel, hereby submit their limited objection to the *Motion of the Debtors to Sell Substantially All of the Assets of St. Christopher's Healthcare, LLC and Certain of Its Affiliates* (Docket No. 205) (the "Sale Motion"). In support hereof, the PAHSPPP Physicians respectfully state as follows:

**Introduction**

1.      Prior to the Debtors' bankruptcy filing, approximately 107 physicians were under the Philadelphia Academic Health System Physician Practice Plan. These physicians each had an employment agreement with one of the Debtors, including TPS IV of PA, LLC and TPS II of PA, LLC, which fall under the Hahnemann University Hospital umbrella. The PAHSPPP Physicians are comprised of approximately 50 of these physicians.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

2.      As is standard in the industry and required by state law, the Debtors provide their residents, physicians and other healthcare professionals medical malpractice insurance coverage. Currently, this is done through several claims made insurance policies that are set to expire on or about January 11, 2020, although such policies may be terminated sooner by the Debtors.  Here, the Debtors could terminate the policies after the closing of the sale contemplated by the Sale Motion.

3.      It is also standard in the industry and required by the various employment agreements with the PAHSPPP Physicians that the Debtors continue to provide medical malpractice insurance upon the expiration of the employment agreements to cover their employment with the Debtors for the period of time required under the relevant statute of limitations.

4.      Indeed, in connection with the sale of the Hahnemann residency program, the Debtors have agreed to provide <u>all</u> of their residents, regardless of whether they are continuing with the buyer group, with medical malpractice tail insurance for a time period sufficient to cover any relevant statute of limitations for the services such residents provided to the Debtors.  This agreement, in fact, was cited by the Court in its oral ruling approving the sale of the Hahnemann residency program as a reason to approve the sale, recognizing the agreement provides needed tail insurance for residents.

5.      Similarly, it is anticipated that the Debtors will require any purchaser of substantially all of the assets of St. Christopher's Healthcare, LLC and certain of its affiliates (the "St. Christopher's Assets") to assume their obligations to provide the St. Christopher's physicians with continuing medical malpractice coverage to cover any periods during which such physicians provided services to the Debtors.

**Limited Objection**

6.      The Debtors should not be permitted to sell the St. Christopher's Assets without providing for appropriate tail coverage for the PAHSPPP Physicians.

7.      Like the Hahnemann residents and the St. Christopher's physicians, each PAHSPPP Physician has an employment contract that, as an employment benefit for the physician, specifies the insurance coverages to be provided by the Debtors upon expiration or termination of such employment contract or the expiration or cancellation of the insurance policies.  Such contracts generally provide that the Debtor-party shall continue to maintain coverage for the physician under its then current claims made policy for the period of time required under the statute of limitations or, should the Debtor-party cease to maintain claims-made coverage, the Debtor-party shall purchase at its cost an extended reporting period policy or "tail" policy on behalf of the Debtor-party and the physician for medical malpractice claims arising out of medical malpractice incidents occurring during the physician's employment (the "Tail Coverage Benefit").  The PAHSPPP Physicians should be treated in the same manner as the Hahnemann residents and the St. Christopher's physicians and should receive adequate tail coverage.

8.      Under Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.*, the Tail Coverage Benefit owed to the PAHSPPP Physicians falls within the definition of "fringe benefits or wage supplements" and is thus considered "wages" under the statute.  *See* 43 P.S. § 260.2a.  Absent the provision of the Tail Coverage Benefit by the Debtors, the PAHSPPP Physicians are being deprived of valuable bargained for benefits earned while caring for patients seen during their employment with the Debtors.  The PAHSPPP Physicians should not be exposed to personal liabilities relating to patients seen during their employment with the Debtors.  Similarly, they should not be saddled with the obligation to purchase their own tail coverage, as

that is depriving them of their wages and eating into their potential future earnings.  It is bad enough that the Debtors have failed to provide most of the PAHSPPP Physicians with approximately 30 days of compensation owed under their employment contracts.

9.      If the Debtors fail to provide appropriate tail coverage to the PAHSPPP Physicians, they would effectively leave the PAHSPPP Physicians as the only medical professionals of the Debtors without proper tail coverage.  This disparate treatment among similarly situated creditors would not be permitted under any chapter 11 plan and should not be permitted here either.  The Debtors should have sufficient funds from the sale of the Hahnemann residency program and the sale of the St. Christopher's Assets to ensure that all of their healthcare professionals receive appropriate tail coverage.

## Conclusion

10.      To be clear, the PAHSPPP Physicians do not object to the sale generally.  Rather, they submit this limited objection to ensure that the costs of closure and liquidation in these cases are appropriately borne by the Debtors and not the physicians that have provided much needed care to the Debtors' patients.  Accordingly, the PAHSPPP Physicians ask that in conjunction with the sale, the Debtors be required to honor and satisfy the Tail Coverage Benefit.

WHEREFORE, the PAHSPPP Physicians respectfully request that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated:  September 12, 2019

*/s/ David W. Carickhoff*
David W. Carickhoff (DE 3715)
ARCHER & GREINER, P.C.
300 Delaware Ave., Suite 1100
Wilmington, DE 19801
Telephone:  302-777-4350
Facsimile:  302-777-4352
Email:  dcarickhoff@archerlaw.com

Attorneys for the PAHSPPP Physicians

217087781v2