# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) Jointly Administered |
| Debtors. | ) **Related to Docket Nos. 303 and 421** |

### DEBTORS' STATUS REPORT REGARDING MOTION OF TENET BUSINESS SERVICES CORPORATION AND CONIFER REVENUE CYCLE SOLUTIONS, LLC FOR ENTRY OF AN ORDER (I) COMPELLING PAYMENT OF ALL UNPAID POSTPETITION AMOUNTS PURSUANT TO 11 U.S.C. § 503(B)(1) OR, IN THE ALTERNATIVE, (II) GRANTING RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT NECESSARY TO TERMINATE THE TSA AND MSA

The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through their undersigned counsel, submit this status report in connection with the *Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C. § 503(b)(1) or, in the Alternative, (II) Granting Relief from the Automatic Stay to the Extent Necessary to Terminate the TSA and MSA* [D.I. 303] (the "**Motion**" or the "**Tenet Motion**"), which was filed by Tenet Business Services

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

-2-

Corporation ("**Tenet**") and Conifer Revenue Cycle Solutions, LLC ("**Conifer**" and, collectively with Tenet, the "**Tenet Parties**"), an affiliate of Tenet.[2]

1. The Tenet Parties filed their Motion on July 26, 2019 [D.I. 303]. Through the Motion, the Tenet Parties seek allowance and immediate payment of their asserted administrative expense claims pursuant to section 503(b) of the Bankruptcy Code or, in the alternative, relief from the automatic stay under section 362 of the Bankruptcy Code, so that they can immediately terminate two contracts (the so-called "**TSA**" and "**MSA**") that are essential to the Debtors' ability to function.

2. The Court conducted a joint hearing on the Tenet Motion and the Debtors' motion for a final order on their proposed debtor-in-possession financing, on August 19-20, 2019 (the "**Hearing**").[3] At the Hearing, the evidence indicated that the Debtors had been paying the Tenet Parties $200,000 per week on a post-petition basis, rather than the contract rate sought by the Tenet Parties.

## THE COURT'S RULING

3. The Court issued an oral ruling on the Tenet Motion on August 20, 2019, in which it made clear its desire to balance the competing concerns of the Debtors and the Tenet Parties. *See* Hearing Transcript, at page 166, line 20 ("I think it accounts for my genuine concern for the Debtors and for wanting to find a way to provide some fairness to Tenet and Conifer.")

---

[2] As noted in the Motion, Conifer is wholly owned by Conifer Health Solutions, LLC, a joint venture between an affiliate of Tenet and an unrelated entity.

[3] The hearing on the Debtors' motion for approval of debtor-in-possession financing extended until August 21, 2019.

4. The Court ruled that the Debtors had rebutted the presumption that the Tenet Parties were entitled to the level of payment specified in the TSA and MSA. In so ruling, the Court concluded that "the Debtors clearly established to the Court's satisfaction that there has been a very large change in the relationship between the parties post-petition, which is the period of time for which Tenet and Conifer seek payment. There just is substantially less work for Tenet and Conifer to perform **and they are not entitled to their contract rate of compensation**." *Id*. at page 167, line 15 (emphasis added).

5. The Court's ruling also addressed the appropriate amount to be paid, as follows: "[t]he contract amount has been rebutted and so it ought to be an amount obviously less than the contract amount, but *perhaps a little more* than what is being paid to Tenet and Conifer now." *Id*. at page 169, line 3 (emphasis added).

6. The Court did not establish a specific amount that the Debtors should pay for post-petition services. Instead, the Court directed the parties to negotiate:

> I want the parties, Tenet and Conifer and the Debtors, to present an agreed-upon administrative claim amount. It will not have to be paid immediately, but instead, there can be partial payments of the claim beginning at some date in the near future.

*Id*. at page 168, line 7. The Court also made clear that the parties were to negotiate *in good faith*: "I want agreement on an amount or I'll lift the stay. And I don't do that to encourage Tenet and Conifer not to be cooperative with the Debtors, but I'm satisfied that the contract has been rebutted." *Id*. at page 168, line 24.

7. In response to the Debtors' concern that the Court's ruling essentially gave the Tenet Parties a roadmap to force the lifting of the automatic stay by failing to negotiate in good faith, counsel for the Tenet Parties assured the Court that the Tenet Parties would negotiate in

good faith, stating: ". . . to be clear, we'll work in good faith and try to work out where we can by then and we're very hopeful." *Id.* at page 184, line 16.

8. The Hearing also involved discussion as to whether *all* the issues between the Debtors and the Tenet Parties – including significant pre-petition litigation claims asserted by the Debtors – were to be a part of the negotiations. At the end of the discussion, counsel for the Tenet Parties acknowledged that including these disputes in the parties' negotiations was unrealistic because, among things, they might require the inclusion of non-Debtor parties such as the Debtors' principal: "I would suggest that we set aside – we'd be willing to set [a]side having him at the meeting and reaching a resolution of our lawsuits, and we can just focus singularly on the contracts." *Id.*, at page 175, line 19.

## **NEGOTIATION STATUS**

9. As of the filing of this Status Report, no agreement has been reached by the parties with respect to the appropriate treatment to be afforded to the Tenet Parties.

10. The Debtors believe that the parties' failure to reach agreement is due to the Tenet Parties' failure to negotiate in accordance with the guidance provided by the Court. Although the Debtors do not believe that Federal Rule of Evidence 408 prohibits them from sharing the proposals made by the Tenet Parties with the Court[4], in an abundance of caution the Debtors

---

[4] The Debtors submit that the Tenet Parties' designation of their settlement proposals as being protected by Rule 408 of the Federal Rules of Evidence does not prevent the Court's consideration of such proposals. The text of Rule 408 clearly provides that "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b); *see also* Advisory Committee Note (1972) ("Since the rule excludes only when the purpose is providing the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule."); *West Palm Beach Hotel, LLC v. Atlanta Underground, LLC*, 626 Fed.Appx. 37, fn. 5 (3d Cir. 2015) (a party's introduction of evidence of settlement negotiations to prove its own good faith was not a violation of Rule 408); *Rader v. ShareBuilder Corp.*, 772 F.Supp.2d 599 (D. Del. 2011) (Rule 408 does not preclude introduction of settlement offer in later action to prove bad faith); *Rothschild Mobile Imaging Innovations, LLC v. Mitek Systems, Inc.*, 2018 WL 3599359, Case No. 14-617-GMS, n.4 (D. Del. July 27, 2018) ("Rule 408 only prohibits the use of evidence of a settlement offer or a statement made during the negotiations to 'prove or disprove the validity' of the underlying claim.").

have not attached the Tenet Parties' proposals hereto. The Debtors nevertheless respectfully suggest that the Tenet Parties should disclose their proposals to the Court, so that the Court may evaluate them in light of the Court's ruling at the Hearing.

11. The Debtors' last settlement proposal is attached hereto as **Exhibit A**. In fashioning this proposal, the Debtors took the Court's ruling at the Hearing to heart. Although the Court is respectfully referred to **Exhibit A** for the full terms of the Debtors' proposed resolution of the Tenet Motion, the most fundamental feature of the proposal is the *doubling* of the weekly amounts due to the Tenet Parties – from $200,000 per week to $400,000 per week, retroactive to the Petition Date.[5] Other key terms of the proposal are as follows:

(i) For an eleven-week period, commencing on the week of August 26, 2019, the Debtors would make payments to the Tenet Parties of $400,000 (the "**Weekly Payments**"), which is double the weekly amount paid thus far in this case;

(ii) The Tenet Parties would receive an allowed administrative expense claim of $1,600,000 for the eight week period from the Petition Date to August 26, 2019 (the "**Unpaid Allowed Administrative Claim**"). This claim amount would be *in addition* to the $200,000 per week thus far actually paid by the Debtors during this period;

(iii) The Unpaid Allowed Administrative Claim would be paid as follows: one-half of the Unpaid Allowed Administrative Claim would be paid from proceeds of recovery of $2.0 million currently held by a third party, Health Partners Plans ("**HPP**"), which can be obtained with a consent letter from Tenet to HPP.[6] The balance of the Unpaid Allowed Administrative Claim would be paid from the proceeds of the sale of HUH's residency program assets;

---

[5] The Debtors are able to propose this additional funding in large part due to additional funding obtained from their debtor-in-possession lender, MidCap Funding IV Trust ("**MidCap**"). During the Hearing, the Debtors and MidCap reached agreement on the terms of amended debtor-in-possession financing, by which an additional $2.0 million would be made available for administrative claimants such as the Tenet Parties. This agreement was approved by Order entered August 23, 2019. [D.I. 557].

[6] Tenet has refused to issue this consent letter, despite the fact that it assigned its rights with respect to these funds to the Debtors.

    (iv)    The Debtors and the Tenet Parties will meet and confer on or about October 2, 2019 to discuss further modification and/or transition of services from the TSA and MSA in light of the circumstances. The Debtors and the Tenet Parties will request the Court to schedule a further status conference on or about October 16, 2019; and

    (v)    Mediation of the parties' prepetition claims would commence promptly after the sale of SCHC.

## **THE COURT SHOULD APPROVE THE DEBTORS' PROPOSAL**

12. Under any analysis, the Debtors' proposal, as outlined above, easily satisfies the Court's ruling that the Tenet Parties are entitled to "a little more."

13. In response, the Tenet Parties are exerting maximum pressure in order to extract as much as possible from the Debtors' estates. The Debtors are confident that the Court will agree with this conclusion, if and when the Tenet Parties' proposals are made available to the Court.

14. If the Court is inclined to grant Tenet and Conifer relief from the automatic stay to terminate the TSA and MSA – and the Debtors hope this is *not* the case – it is important that the Court appreciate the unintended consequences of termination, which the Debtors are confident the Court does not wish to occur. Simply put, the Debtors would not be able to function without the services provided under the TSA and MSA. Among other things, the Debtors would be unable to admit patients; patient admissions are currently performed by Conifer personnel pursuant to the MSA. The Debtors would be unable to provide patient care; they would have no access to electronic medical records or patient imaging data, which is provided by Tenet under the TSA. The Debtors would lose access to funding; ongoing services under the TSA and MSA are a condition to borrowing under the Debtors' post-petition credit agreement. Without funding, the Debtors could not purchase supplies or pay employees. The

Debtors would be unable to bill for services; billing is conducted by Conifer under the MSA. The Debtors also would lose access to their accounting records, which they access through Tenet, under the TSA; as a result, they would not be able file monthly operating reports, reconcile claims, or fulfill other responsibilities of a debtor-in-possession.

15. For these reasons, the Debtors urge the Court to approve the Debtors' proposed resolution of the Tenet Motion in a manner consistent with **Exhibit A** hereto.

[*remainder of page intentionally blank*]

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court enter the order, substantially in the form attached hereto as **Exhibit B**, and granting such other and further relief as is just and proper.

Dated: September 13, 2019

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Counsel for Debtors and Debtors in Possession*