## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al*. | Case No. 19-11466 (KG) |
| Debtor | Jointly Administered |

### LIMITED OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF
### AN ORDER APPROVING SALE OF ST. CHRISTOPHER'S

Pennsylvania Association of Staff Nurses and Allied Professionals, (hereinafter, "PASNAP" and or "Union"), by and through their undersigned counsel, by way of  Limited Objection to *Debtor's Motion For Entry of  an Order  Approving the Sale of St. Christopher's :*

### BACKGROUND

1.    On June 30, 2019 (the "Petition Date"), Center City Healthcare, LLC d/b/a Hahnemann University Hospital (hereinafter "CCH" ) and its affiliated Debtors and Debtors in possession (collectively, the "Debtors") filed a voluntary petition in the United States Bankruptcy Court for the District of Delaware seeking relief under the provisions of Chapter 11 of the United States Bankruptcy Code.

2.    On June 30, 2019, the Debtors filed a first day motion seeking interim relief and final Orders.

3.    The undersigned represents PASNAP whose members are the Nurses at Hahnemann University Hospital (hereinafter "HUH") as well as at St. Christopher's Hospital. There are approximately 800 members at HUH and 500 Members at St Christopher's Hospital.

4.    The Debtor filed a Motion for entry of An Order Establishing and Approving

Certain Bidding Procedures, Assumption and Assignment Procedures and the Form and Manner of Notice thereof on July 16, 2019 (Docket No. 205).  The court set a hearing on the within motion on short notice for July 26, 2019. The court entered an Order (I) Scheduling a hearing to consider approval of the sale of Substantially all assets of St. Christopher's Healthcare, LLC and certain related affiliates, (II) approving certain bidding procedures, assumption and assignment procedures, and the form and manner of notice thereof (Docket No. 301) on July 26, 2019. Pursuant to the July 26, 2019 Order, objections to the sale are to be filed by September 13, 2019. The bid deadline is September 16, 2019.  Since objections to the sale are due prior to the knowledge of the contents of any bids, PASNAP must file this limited.

5.    PASNAP generally supports a sale so St. Christopher's Hospital for Children (hereinafter "SCH") will remain open for the benefit of the community and to save the jobs and livelihood of the employees.  Further, a sale to SCH is supported by PASNAP to ensure that all neighboring residents will have a hospital for essential care for their children.   Since legal objections to the sale are to be filed prior to the bid deadline, PASNAP must file this objection to protect the PANAP members and the Union's interest as to the Sale itself and as they pertain to the Collective Bargaining Agreement and assumption and assignment and Cure issues as to the Collective Bargaining Agreement.  The Proposed Asset Purchase Agreement is devoid of the Debtor and any bidder's obligations pursuant to 11 U.S.C. Section 1113 of the Bankruptcy Code and the Collective Bargaining Agreement (alternatively hereinafter referred to as "C.B.A.") PASNAP is optimistic that most of these issues can be addressed and resolved prior to the hearing but in the event of lack of resolution, PASNAP is placing this limited objection on the record and reserves its right to supplement this Objection once the bids are received and the details of the Asset Purchase Agreement are reviewed.

6.      As relating to SCH, both the Debtor and the Union are parties to a Collective Bargaining Agreement. PASNAP collectively represents approximately five hundred (500) members comprised of registered nurses.

7.      Any Asset Purchase Agreement (hereinafter "APA") should be required to contain affirmative language concerning a purchaser's requirement to recognize, honor, assume and cure the Collective Bargaining Agreement and the accrued unpaid employee benefits.

8.      To the extent the Debtor does not require any purchaser to assume the CBA and or any bidder has not reached an agreement with the Union or seeks to reject or modify the CBA as part of the Sale process, the Union files the within objection to the Sale and also files the within objection as to assumption, assignment and cure issues.  The Union is hopeful that the Debtor and/and or any bidder reaches out to the Union concerning the CBA.  The Union remains hopeful that any prospective bidder agrees to assume the CBA or reaches an agreement with the Union as part of its bid in advance of the Auction.  To the extent same does not happen, the Union is left with no alternative but to file the within objection.

### PASNAP'S LIMITED OBJECTION

### I.      REJECTION OR MODIFICATION OF THE CBA AS PART OF THE SALE PROCESS IS CONTRARY TO SECTION 1113

#### A.      ANY ATTEMPT TO REJECT OR MODIFY THE CBA AS PART OF THE SALE MUST BE DENIED BECAUSE THE DEBTOR HAS FAILED TO MEET THE MANDATORY REQUIREMENTS OF SECTION 1113 OF THE BANKRUPTCY CODE

9.      The Debtor cannot reject the CBA because it has failed to comply with Section 1113 of the Bankruptcy Code.

     **(a)**     **Section 1113**

10.     After the Supreme Court's decision in <u>National Labor Relations Board v. Bildisco</u> <u>& Bildisco</u>, 465 U.S. 513 (1984), Congress enacted Section 1113 of the Bankruptcy Code.  Section 1113 provides the only way which a Debtor can reject or modify a C.B.A.  See 11 U.S.C. § 1113.  Section 1113 permits a Debtor to reject a C.B.A. so long as the Debtor has complied with the statute's many procedural and substantive requirements. See <u>Id</u>.

As stated in <u>Continental Airlines</u> by the Third Circuit:

> The intent behind Section 1113 is to preclude Debtors or Trustees in bankruptcy from unilaterally terminating, altering, or modifying the terms of a collective bargaining agreement without following its strict mandate. Moreover, the provision operates to preclude the application of other bankruptcy code provisions to the advantage of debtors and trustees to permit them to escape the terms of a collective bargaining agreement without complying with the requirements of Section 1113.

<u>In re Continental Airlines, 125 F.3d 120, 137 (3d Cir. 1997)</u> (*citing* <u>In re Ionosphere Clubs. Inc</u>. 922 F.2d 984, 989-90 (2d Cir. 1990).

11.     In interpreting Section 1113(b) and (c) of the Bankruptcy Code, our Courts have held that a Debtor must fulfill the following requirements prior to rejection of a Collective Bargaining Agreement:

     a.     after the petition date and prior to filing an application to reject the Collective Bargaining Agreement, the Debtor must make a proposal to the union to modify the Collective Bargaining Agreement;

     b.     the proposal must be based on the most complete and reliable information available at the time of the proposal;

     c.     the proposed modifications must be necessary to permit the Debtor's reorganization;

     d.     the proposed modifications must assure that all creditors, the Debtor and all the affected parties are treated fairly and equitably;

     e     the Debtor must provide the union such relevant information as is necessary to evaluate the proposal;

f.      the Debtor must meet at all reasonable times with the union between the time the proposal is made and the hearing on approval of the rejection of the existing collective bargaining agreement;

g.      at the meetings with the Union, the Debtor must confer in good faith in attempting to reach mutually satisfactory modifications of the Collective Bargaining Agreement;

h.      the Union must have refused to accept the proposal without good cause; and

i.      the balance of the equities must clearly favor rejection of the Collective Bargaining Agreement.

*See* Section 1113; *e.g.,* In re Bowen Enters., Inc., (Bankr. W.D. Pa. 1996); In re Am. Provision Co., 44 B.R. 907, 909 (Bankr. D. Minn. 1984).

12.    A Debtor may reject a Collective Bargaining Agreement only if there is full compliance with the requirements of Sections 1113(b)(1).  *See e.g.* In re Lady H Coal Co., 193 B.R. 233, 240 (Bankr. S.D. W. Va. 1996).  To reject a Collective Bargaining Agreement as part of a sale of its assets free and clear of any and all liens to a Purchaser, there must be strict compliance with Section 1113.  *See* In re Maxwell Newspapers, Inc., 981 F.2d 85, 89 (2d Cir. 1992).

13.    It is well settled that Section 1113 applies to <u>all</u> cases filed under Chapter 11 of the Bankruptcy Code, regardless of whether the Debtor intends to reorganize, in the traditional sense, or liquidate its assets. *See,* In re Maxwell Newspapers, Inc., 981 F.2d 85, 91 (2d Cir. 1992); Hoffman Bros. Packing Co., 173 B.R. 177, 186-87 (B.A.P. 9th 1994); In re The Lady H Coal Co., 193 B.R. 233, 240-43 (Bankr. S.D.W. Va. 1996); In re Horizon Natural Res. Co., 316 B.R. 268 (Bankr. E.D. Ky. 2004);

14.    Here, the Debtor has clearly failed to comply with the very stringent mandates of Section 1113. As such, any attempted rejection or modification of the CBA as part of the sale process cannot be permitted without the consent of the Union.

**(b)**     **The Debtor Has Failed to Satisfy the Procedural Requirements of Section 1113(b)**

*i.*     *The Debtor Has Not Complied with Statutory Requirements of Section 1113(b)(1).*

15.     Section 1113(b) provides that "subsequent to the filing of a [Chapter 11] petition and prior to filing an application seeking rejection of a Collective Bargaining Agreement," a Debtor must (1) submit a proposal to the Union outlining those modifications to the Collective Bargaining Agreement that the Debtor believes are necessary to the reorganization and (2) provide the Union with information necessary to evaluate the proposal. 11 U.S.C. § 1113(b)(1).  *See also,* 7 Collier on Bankruptcy 1113.03 (16th ed. 2010).

16.     The statute expressly provides that the above stated conditions must be complied with prior to a Debtor making a motion to reject a Collective Bargaining Agreement.  *See* Section 1113(b).  *See also* In re Wheeling-Pittsburgh Steel Corp,[1] 791 F.2d 1074, 1085.

17.     Since the Debtor has never followed any of the procedural requirements to meet with the Union or made any effort whatsoever to comply with the statutory requirements, it cannot now reject or modify the CBA as part of the sale or after the sale for that matter.  The Debtor's failure to comply with the statutory procedural requirements, mandate any request for approval to reject the CBA to be denied. *See e.g.,* In re Karykeion, Inc., 435 B.R. 663, 677 (Bankr. CD. Cal. 2010) ("In order to reject a CBA, the Debtor must strictly comply with all of § 1113's requirements."); In re Stein Henry Co., Inc., 91-15491S, 1992 WL 122902 (Bankr. E.D. Pa. June

---

[1] In re Wheeling Pittsburgh Steel, 791 F.2d 1074. (3rd Cir. 1986).  In Wheeling citing Section 1113(b)(1)(A), the Third Circuit has held that "necessary" modifications mean modifications essential to prevent liquidation, and are not related to the general long term viability of a Debtor.

1, 1992) (denying confirmation of Plan, which attempted to reject Collective Bargaining Agreement, because Debtor failed to comply with requirements of Section 1113).

> **ii.      The Debtor Can Never Comply With The Good Faith Requirement of Section 1113(b)(2) of the Bankruptcy Code Either At Time Of Sale Or After the Sale Seeking To Reject Or Modify the C.B.A.**

18.      Section 1113(b)(2) mandates that after a Debtor makes a proposal to modify a Collective Bargaining Agreement, and prior to a hearing on the Debtor's motion for approval to reject that Collective Bargaining Agreement, the Debtor must "meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement." 11 U.S.C. § 1113(b)(2).

19.      Section 1113 implores good faith negotiations as part and parcel of the process. *See* In re Maxwell Newspapers, Inc., 981 F.2d 85, 89 (2d Cir. 1992) (clarifying and identifying obligation to negotiate in good faith as most important part of Section 1113 mandate). Such good faith negotiations further the statute's goal of "giv[ing] special consideration to a Collective Bargaining Agreement and encouraging the Debtor and the Union to reach a mutually acceptable agreement. . . ." In re Roth Am., Inc., 975 F.2d 949, 957 (3d Cir. 1992); *See Also* In re The Leslie Fay Cos., Inc., 168 B.R. 294, 303 (Bankr. S.D.N.Y. 1994).

20.      To be clear, the Debtor cannot argue that it has met the standards of Section 1113(b)(2) due to its never having made a proposal to the Union as required by Section 1113(b)(1). Furthermore, the Debtor has failed to satisfy the "good faith" requirement inasmuch as any offer accepted which requires rejection or modification cannot be satisfied under the statutory requirements.

21.      In In re The Lady H Coal Co., Inc., 193 B.R. 233 (Bankr. S.D. W. Va. 1996), the court reviewed an application by the Debtors to reject a Collective Bargaining Agreement  that

was filed by the Debtors in connection with their attempt to sell their assets prior to confirmation.

In denying the Debtors' motion, the court found that the Debtor had not negotiated in good faith.

Id. at 241. The court reasoned:

> This Court has found that the Debtors' motion to sell substantially all assets is
> essentially the Debtors' plan of reorganization. This form of reorganization does
> not mean a debtor can shortcut its duties or take unfair advantage of any particular
> group, as in this case, the employees. The Court finds that a debtor has a duty under
> Section 1113 to not obligate itself prior to negotiations with its union employees,
> which would likely preclude reaching a compromise. Good faith bargaining is
> conduct indicating an honest purpose to arrive at an agreement as the result of the
> bargaining process. In this case, the Debtors could not have bargained in good faith
> as the Debtors were, prior to any negotiations with the union locked into an
> agreement…

Id. at 242. See also, In re Karvkeion, Inc., 435 B.R. 663, 682 (Bankr. CD. Cal. 2010) ("[Beginning

negotiations when one party is already locked into a position does not constitute good faith."); In

re Delta Air Lines, 342 B.R. 685, (Bankr. S.D.N.Y. 2006) (finding that Debtor failed to comply

with it's obligation under 11 U.S.C. § 1113(b)(2) to confer in good faith because it steadfastly

maintained that its initial proposal under §1113(b)(1)(A) was non-negotiable).

22.     By accepting any offer that requires rejection or modification  of the CBA and/or

the Debtor seeking to reject  or modify the C.B.A. after the sale is already locked into a position,

the Debtor has failed to comply with the statutorily mandated requirements and this court can never

make a finding of good faith under Section 1113(b)(2).  As a result, the Debtor can never satisfy

the requirements of Section 1113(b)(2) of the Bankruptcy Code if it seeks to reject or modify the

CBA at the time of sale or after the sale. The Debtor must require any buyer to assume the CBA

as a condition of the sale and/or the Union *in good faith* must reach an agreement with any Buyer

prior to the sale.

> ### *(c)   The Debtor Has Failed to Meet the Strict Requirements of Section 1113(c) of the Bankruptcy Code*

23.     Section 1113(c) of the Bankruptcy Code mandates that:

The court shall approve an application for rejection of a Collective Bargaining Agreement only if the court finds that:

> (1)     the Trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);
>
> (2)     the authorized representative of the employees has refused to accept such proposal without good cause; and
>
> (3)     the balance of the equities clearly favors rejection of the agreement.

11 U.S.C. § 1113(c)

24.     Since the Debtor has outright failed to comply with Section 1113(c)(1), it is not necessary to take the next steps and analyze Sections 1113(c)(2) and 1113(c)(3).  However, the Debtor has clearly failed to meet these statutory mandates as well.

## B     A REJECTION AFTER THE SALE AND/OR UNILATERAL MODIFICATIONS OF THE CBA VIOLATE SECTION 1113(f) AND PRECLUDES THE DEBTOR FROM REJECTING THE CBA

25.     Section 1113(f) of the Bankruptcy Code bars a Debtor from "unilaterally terminating] or alter[ing] any provisions of a Collective Bargaining Agreement prior to compliance with the provisions of [Section 1113]." See 11 U.S.C. Section 1113(f). A Debtor is barred from modifying a Collective Bargaining Agreement unless and until the Collective Bargaining Agreement is rejected. *See* <u>In re Northwest Airlines Corp.</u>, 349 B.R. 338, 357 (S.D.N.Y. 2006) ("Section 1113(f) . . . requires that Collective Bargaining Agreements may not be altered until the Bankruptcy Court approves their rejection."), or interim modifications are permitted pursuant to Section 1113(e).  *See* <u>In re Roth Am., Inc</u>., 975 F.2d 949, 957-58 (3d Cir. 1992). As a result, any

modification by the Debtor to the CBA at the sale by and through the APA or after the sale is a

violation of Section 1113(f).

26.     The Debtor will fail to comply with Section 1113(f) if any potential purchaser

contractually binds the Debtor to reject or modify the C.B.A. as part of any proposed sale.     In

Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76 (3d Cir. 1999), the Third

Circuit reasoned:

> We hold when as here a debtor in possession . . . binds itself contractually to obtain
> a change in legal relations created by a CBA as a condition precedent to closing a
> sale of substantially all of the debtor's assets, that constitutes an attempt to effect
> an alteration of the CBA.

American Flint 197 F.3d 76, 81.

27.     Pursuant to Federal Labor Law, and Section 1113 of the Code,  the Debtor has an

obligation to bargain with the Union in good faith over any changes to the CBA and over the

effects of any decision to alter the scope of the business whether through sale or shutdown or

otherwise.  See 29 U.S.C. Section 158(d) (providing that mid-term modifications to a CBA must

be mutually agreed upon, and that absent a mutual agreement, no party may terminate or modify

such agreement during its term); 11 U.S.C. Section 1113(f) states "no provision of this Title shall

be construed to permit a Trustee to unilaterally terminate or alter any provision of a CBA prior to

compliance with the provisions of this section."  11 U.S.C. Section 1113(f).  Of course, the Union

does recognize that it, likewise, is obligated to bargain in good faith.

28.     As this Court is well aware, the Third Circuit has addressed the issues of Collective

Bargaining Agreements in the context of Asset Sales.  It is impermissible for a Debtor and/or a

Buyer to misuse the Bankruptcy Code in an effort to avoid the Collective Bargaining process which

Congress has put in place as a statutory requirement via the sales process.  Am. Flint Glass Workers

v. Anchor Resolution Corp., 197 F.3d 76, 81-82 (3rd Cir. 1999).  Any unilateral change of the

CBA by the Debtor and/or Purchaser is a violation of Section 1113(f).    Section 1113 is the

exclusive means of Assumption and Rejection of the Collective Bargaining Agreements (See

Section 1113).  The goal behind Section 1113 is to preclude Debtors (or Trustees) from unilaterally

terminating, altering or modifying the CBA absent strict compliance with Section 1113.  Id., *See*

Continental Airlines, 125 F.3d at 137.    Further, Section 1113 precludes the use of other code

sections to the advantage of Debtors to permit them to escape complying with Section 1113 of the

Code.  Id.   A Debtor cannot use the sale process to avoid its obligations pursuant to a CBA (or

reject a C.B.A. for that matter) and/or to avoid its' obligations under Section 1113 of the

Bankruptcy Code.  Id.

29.    The case law is instructive and crystal clear.  In In Re Allegheny Health, Educ. And

Research Found, 265 B.R. 88, 116-17 (W.D. Pa. 2001) *aff'd* and *reversed and remanded on other*

*grounds,* 383 F.3d 169 (3rd Cir. 2004), the Court interpreted the holding in American Flint as

follows: "When a Trustee or a Debtor-in Possession incompletely assigns a CBA within the

context of a sale of substantially all of the Debtor's assets such that the Assignee of such agreement

does not assume all of the obligations attached to said agreement, such incomplete assignment

constitutes an attempt to effect an alteration of the CBA.  Such an attempt to alter a CBA, according

the Third Circuit, requires the Debtor to comply with the procedures contained in 11 U.S.C.

Section 1113, failing which the Debtor shall be deemed to have violated Section 1113(f)."  The

obligations pursuant to Section 1113 must be met before the sale.  *See*, Allegheny, 265 B.R. at

116-17.    To be clear, Section 1113 obligations cannot occur *after* the sale or else it is deemed a

clear violation of Section 1113.  Id.

30.    At a minimum, under Federal Labor Law, if there is a genuine change of employer

but the employing industry remains substantially the same, the successor employer must recognize

and bargain with the representative Union of the predecessor's employees. *See* <u>Allegheny</u>, 265

B.R. 88, 104-05 (W.D. Pa. 2001 *citing* <u>Theodore Kheel</u>, Labor Law Section 17.01(1) at 17-3

(Bender 2000) (*citing* <u>NLRB v. Burns International Security Services</u>, 406 U.S. 272, 92 S.Ct. 1571,

32 L.Ed.2d 61 (1972)).

31.    The Debtor has an affirmative duty to not commit itself to CBA issues prior to

negotiations with the Union. *See,* <u>In Re Lady H Coal Co., Inc.</u>, 193 B.R. 233, 242 (Bank S.D. W.

VA. 1996) <u>*aff'd*</u> on other grounds, 199 B.R. 595. As in <u>Lady H Coal</u>, the Debtor cannot lock itself

into an agreement to, essentially, avoid the CBA without first negotiating with the Union, the Court

cannot grant a motion for rejection of the CBA pursuant to Section 1113 at the time of the sale or

after the sale. <u>Id</u>. at 242-243.

32.    An agreement as part of a sale by the Debtor to reject or modify would be deemed

an outright violation of Section 1113(f) and thus, bar the Debtor from seeking to reject the CBA.

As the District Court for the Northern District of Alabama explained, a violation of Section 1113(f)

bars a debtor from later rejecting a Collective Bargaining Agreement:

> If a Debtor is free to breach the CBA without impairing its ability to reject the
> contract later, then § 1113 provides no incentive to abide by the terms of the CBA
> in the interim.... Congressional intent to prevent the unilateral rejection of CBAs ...
> is accomplished only if a breach of contract is viewed as a violation of § 1113(f)
> preventing rejection of the contract.

<u>In re Alabama Symphony Ass'n</u>, 211 B.R. 65, 70 (N.D. Ala. 1996).

33.    All procedural and substantive protections afforded and governed by Section 1113

apply to an asset sale. <u>Id</u>. Any APA should contain affirmative language assuming and assigning

the C.B.A. and all Employee obligations from the Debtor to the Buyer. The Union emphasizes

that any Purchaser/ Bidder, and for that matter, the Debtor must comply with Section 1113 of the

Bankruptcy Code. If the Debtor will be selling its assets, the Debtor cannot use the 363 Sale

process to circumvent the Collective Bargaining process and Section 1113 of the Bankruptcy Code.  As such, the APA/ Transaction Agreement must contain language concerning this issue and the CBA and the Union must be recognized and formally assumed by any potential Purchaser/Bidder.

34.     The Debtor and any Buyer/Bidder must comply with both the Collective Bargaining Agreement and Section 1113.   The Debtor should compel any Purchaser to assume the CBA in the APA as a condition of approval of the sale

35.     Furthermore, any potential Purchaser and the Debtor must comply with Section 1113 and Section 365 of the Bankruptcy Code regarding Assumption and Assignment of Executory Contracts.   Moreover, adequate assurance of future performance should also be demonstrated by any Purchaser/Bidder who will be assuming the Collective Bargaining Agreement.   In other words, a potential Purchaser should be required to make a showing that it will have sufficient working capital to fund future ongoing hospital operations.   Since the application at this time is devoid of what contracts are being assumed and assigned and likewise devoid of cure amounts, the Union reserves any and all rights relating to this issue.  Again, it is the position of the Union that the Debtor, as a condition of the bidding procedures and sale, shall require any Buyer to assume the CBA and all employee benefits.

## II.     THE SALE SHOULD NOT BE APPROVED AS SAID SALE IS *SUB ROSA* PLAN

36.     The court in <u>In re Lionel</u>, 722 F.2d 1063 (2nd Cir. 1983) listed factors to evaluate when a Debtor seeks a sale of assets outside of a Plan.  This analysis is commonly called the *Sub Rosa* plan analysis. The contemplated factors are as follows:

1.     The proportionate value of the estate as a whole;
2.     The amount of elapsed time since the filing;

3.    The likelihood that a Plan of Reorganization will be proposed and confirmed in the near future;

4.    The effect of the proposed disposition on future Plans of Reorganization;

5.    The proceeds to be obtained from the disposition *vis-a-vis* any appraisals of the property; and

6.    Most importantly, whether the asset is increasing or decreasing in value. (Emphasis added).

In re Lionel, 722 F.2d at 1071.  The foregoing list of factors is not intended to be exhaustive. Id. The Court should not follow "the hue and cry of the most vocal special interest groups". Id.  The burden is on the Debtor and the Union recognizes that in opposing the sale, it must present evidence that such sale is not justified. Id.   This court must consider the Debtor's failure to comply with Section 1113 as one of the *Sub Rosa* factors and not approve the sale as the Debtor would not be able to confirm a Plan of Reorganization which provided for a sale of assets in its plan without complying with Section 1113 of the Code.   *See*, In re Stein Henry Co., Inc., 91-15491S, 1992 WL 122902 (Bankr. E.D. Pa. June 1, 1992).

37.    The Bankruptcy Court in the Eastern District of Pennsylvania denied confirmation of a Plan of Reorganization that was selling assets as part of the Plan and the Asset Sale did not comply with the CBA,  In re Stein Henry Co., Inc., 91-15491S, 1992 WL 122902 (Bankr. E.D. Pa. June 1, 1992) The Court in Stein Henry outright denied confirmation for failing to comply with Section 1113 of the Code. Id.  In failing to negotiate with the Union, the Debtor and the Purchaser have not complied with Section 1113 of the Code.  As such, the sale cannot and should not be approved.

38.    The Debtor cannot successfully argue that Section 1113 does not apply because this is a liquidating Chapter 11 proceeding.   As stated in Stein Henry, this is a Chapter 11 proceeding and Section 1113 applies whether or not there is a liquidation.  Id at 7. See, In re Maxwell Newspapers, Inc., 981 F.2d 85, 91 (2d Cir. 1992); In re Horizon Natural Res. Co., 316 B.R. 268

(Bankr. E.D. Ky. 2004); In re The Lady H Coal Co., 193 B.R. 233, 240-43 (Bankr. S.D.W. Va. 1996); Hoffman Bros. Packing Co., 173 B.R. 177, 186-87 (B.A.P. 9th 1994).    Just as in a confirmation, the sale must satisfy all applicable Code Sections including Section 1113. Id.  The Debtor cannot argue that the sale is emergent because the sale of this hospital has been in progress for many months.  The Debtor has elected to voluntarily file and proceed under Chapter 11 and therefore, it's compliance with all Sections of the Bankruptcy Code is mandatory.  Again, approving the sale and ignoring Section 1113 of the Code would render Section 1113 meaningless and would set a dangerous precedent in essence allowing the Debtor and any future Debtor to circumvent the strict mandates of the Code.  Importantly, in enacting Section 1113, Congress has specifically recognized that Collective Bargaining rights play a significant role in a Bankruptcy proceeding. See, Wheeling Pittsburgh Steel v. United Steelworkers, 791 F.2d 1074, 1089 (3rd Cir. 1986).

39.    The Court in In Re Lady H. Coal Co., Inc. approved the Sale of Assets despite the violation of a CBA and Section 1113.  In Re Lady H. Coal Co. Inc., 193 B.R. 233.   The case before the Court is distinguishable in that the Lady Coal court found that the sale was emergent and still precluded the rejection of the C.B.A.  Id.  As such, any argument by the Debtor that it is a so called emergent sale is defeated by the Debtor's own admission that they have been contemplating this sale prior to the filing.   If the Court were to approve the sale over the objection of the Union, (and it is the position of the Union, that this can only be done if this Court makes a finding as a matter of law that the sale falls into the category of an "emergent sale"), then the Section 1113(f) rejection damage claims of the Union, become administrative expense claims. *See*, In Re Lady H Coal Co., Inc., 193 B.R. 233 at 243.

### III.    ASSSUMPTION NOTICE AND CURE RESERVATION

40.    The Bidding Procedures Order contains an Assumption Notice and cure procedure. To date, the Debtor has not identified the C.B.A. to be assumed and or any Assumption Notice has failed to identify the CBA and employee accrued benefit claims.   The Union must reserve its rights as its objection stands that the CBA must be assumed.  Furthermore, the Union must reserve all of its rights as to cure amounts and as to the Assumption obligations concerning the C.B.A. and all Employee Benefits that are outstanding.

41.    A Reservation of Rights must apply to each member's Employee Benefit Accrual. The Union must reserve its' rights for each member as the procedure for each member to dispute a benefit amount is covered by the Collective Bargaining Agreement by and through the Grievance procedure.   Since the Debtor failed to list any Cure amounts, all rights must be reserved.    To that end, the Union must reserve its rights as to the Cure amounts, as the procedure for each member to dispute a benefit is covered by the Collective Bargaining Agreement by and through the Grievance procedure.  All employee benefits must be honored by any Purchaser/Bidder.

42.    Any potential Purchaser and the Debtor must comply with Section 1113 and Section 365 of the Bankruptcy Code regarding Assumption and Assignment of the CBA and employee benefits.    Furthermore, adequate assurance of future performance should also be demonstrated by any Purchaser/Bidder who will be assuming the Collective Bargaining Agreement and employee benefits.  To be clear, a potential Purchaser should be required to make a showing that it will have sufficient working capital to fund future ongoing hospital operations including the CBA and employee benefits.

WHEREFORE, for the reasons set forth above, the Union respectfully requests that the Court (i) compel any sale to require the Buyer to assume the CBA and all PASNAP employee

accrual benefits and (ii) if the Debtor or Buyer fails to assume the CBA then the sale shall not be approved; (iii) expressly reserve PASNAP and it's members rights as to any possible cure objection and (iv) grant such other and further relief as the Court deems just and equitable.

Dated:  September 13, 2019                   **MARKOWITZ & RICHMAN**

                                             /s/ Claiborne S. Newlin
                                            Claiborne S. Newlin, Esq. (#4745)
                                            Legal Arts Building
                                            1225 King Street, Suite 804
                                            Wilmington, DE 19801
                                            Telephone: 302.656.2308
                                            Facsimile:  215.790.0668
                                            cnewlin@markowitzandrichman.com

                                                    -and-

                                            **LAW OFFICES OF MITCHELL J. MALZBERG,
                                            LLC**
                                            Mitchell Malzberg, Esquire
                                            P. O. Box 5122
                                            6 E. Main Street, Suite 7
                                            Clinton, NJ  08809
                                            Telephone: 908.323.2958
                                            Facsimile:   908.933-0808
                                            mmalzberg@mjmalzberglaw.com

                                            *Co-Counsel to Pennsylvania Association of Staff Nurses
                                            and Allied Professionals*