# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL *et al.*,[1] | Case No. 19-11466 (KG) |
| | (Jointly Administered) |
| Debtors. | **Re: Docket No. 205, 301**<br>**Obj. Deadline: September 13, 2019 (4:00 p.m.)** |

**LIMITED OBJECTION OF THE UNITED STATES TO THE SALE OF THE ASSETS OF ST. CHRISTOPHER'S HEALTHCARE**

The United States of America (the "United States"), on behalf of the Department of Health and Human Services ("HHS"), acting through its designated component, the Centers for Medicare & Medicaid Services ("CMS"), objects to the sale of St. Christopher's Healthcare's, LLC, ("St. Christopher's) assets pursuant to the Sale Motion.[2] In support of its Objection, the United States represents as follows:

---

[1] The Debtors in these jointly administered cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Debtors' Motion for Entry of (A) an Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Debtors and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to any Stalking Horse Purchasers, and (IV) Granting Related Relief; and (B) One or More Orders (I) Approving the Sales or Other Acquisition Transactions for the Assets, (II) Authorizing the Sales Free and Clear of All Encumbrances, (III) Authorizing the

**REGULATORY BACKGROUND**

1.     Certain of the Debtors are "providers" of hospital and skilled nursing services under the Social Security Act, 42 U.S.C. § 1395-1395lll and 42 C.F.R. Chapter IV and CMS policies and procedures (collectively, the "Medicare Program").  To be eligible to be reimbursed for services to Medicare beneficiaries, certain Debtors are party to separate Medicare Part A provider agreements ("Provider Agreements"). 42 U.S.C. § 1395cc; 42 C.F.R. § 400.202 (defining "provider").  A Provider Agreement is defined as an agreement between CMS and a hospital, skilled nursing facility, home health agency, clinic, outpatient rehabilitation facility, hospice, or community mental health center.  42 C.F.R. §§ 489.2 and 489.3.

2.     To obtain a Provider Agreement, a new provider must apply for initial certification.  *See* 42 C.F.R. §§ 488.1, 488.3, 489.1, 489.2 and 489.10.  The certification process enables HHS to determine, *inter alia*, that the provider is qualified to provide health care services to patients.  *See* 42 C.F.R. §§ 489.10-.12 (grounds for denying a Provider Agreement); *see also* 42 C.F.R. Part 418 (health and safety requirements to qualify as a hospice).

3.     As a result, the transfer of a Provider Agreement is strictly limited.  Provider Agreements may be assigned only if there is a "change of ownership." 42 C.F.R. § 489.18.  When CMS determines that a valid "change of ownership" has occurred, the existing Provider Agreement is automatically assigned to the new owner.  42 C.F.R. § 489.18(c); *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 696 (5th Cir. 1994).  An assigned agreement is subject to all statutory and regulatory terms under which it originally was issued, including the adjustment of payments

---

Assumption and Assignment pf Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief.  Dkt. 205.

2

to account for previously made overpayments. *Vernon*, 21 F.3d at 696 (*citing* 42 C.F.R. § 489.18(a), (d)).

4. HHS contracts with Medicare Administrative Contractors ("MACs") to administer payment to providers for Medicare covered services. MACs make interim payments to providers in accordance with the Medicare Program and perform the day-to-day administration of Medicare, *e.g.*, audit and reimbursement activities. 42 U.S.C. § 1395kk-1; 42 C.F.R. §§ 421.400–.404.

5. At their request, certain of Debtors' facilities receive Medicare Periodic Interim Payments ("PIP"). 42 U.S.C. § 1395g(e)(2); 42 C.F.R. § 418.307, 42 C.F.R. § 413.64(h)(2)(v). The PIP is adjusted to make it consistent with current claim levels, and to determine overpayments for the current fiscal year. Alternatively, the MAC may adjust payments to assure that total payments at the end of the fiscal year approximate, as closely as possible, the reimbursement determined to be due after review and audit of the provider's cost report. 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.64(h)(6-7).

6. Within five months after the end of the cost year, a provider must submit a report of its costs to a MAC. 42 C.F.R. §§ 413.1, 413.20, 413.24(f); *see* 42 U.S.C. §§ 1395g and 1395hh (giving the Secretary authority to require submission of cost reports). Once the cost report is submitted, the MAC audits the cost report and determines the provider's actual, rather than estimated, reimbursement amount for the year, which can result in overpayment or underpayment claims. 42 U.S.C. §§ 1395g; 1395x(v)(1)(A)(ii); 42 C.F.R. § 413.24. Following an audit, providers have various appeal rights, including judicial review, with respect to the MAC's determination. *See, e.g.*, 42 C.F.R. § 405.1807; 42 U.S.C. § 1395oo(f)(1).

7. In addition, by motion of the MAC or the provider, or at the direction of CMS, final cost report determinations are subject to reopening for up to three years from their issuance to make corrections. 42 C.F.R. § 405.1885.

## FACTUAL AND PROCEDURAL BACKGOUND

8. On June 30 and July 1, 2019, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

9. Before the Petition Date, St. Christopher's participated in the Medicare Program as a Medicare Part A provider. St. Christopher's d/b/a St. Christopher's Hospital for Children has a Provider Agreement with the United States.

10. In the ordinary course of business, the MACs may determine Medicare overpayments owed by St. Christopher's relating to prepetition service dates and postpetition service dates under the Medicare Program.

11. On July 16, 2019, St. Christopher's filed the Sale Motion, seeking authorization to auction St. Christopher's assets, establish bid procedures for the auction, and establish procedures to notify certain counterparties to executory contracts of their potential assumption and assignment. Dkt. 205.

12. The Court entered the Bid Procedures Order[3] on July 26, 2019. The Bid Procedures Order mandates:

> 34. Notwithstanding anything in the Motion [D.I. 205], the Bidding Procedures, the Sale Notice, and/or the Assumption Notice to the contrary,

---

[3] Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Affiliates and the Assumption And Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to any Stalking Horse Purchasers, and (IV) Granting Related Relief. Dkt. No. 301.

nothing in this Order shall be construed as authorizing the sale, transfer or assignment of any Medicare provider agreement to the Successful Bidder free and clear of successor liability for any liability to the United States arising from such provider agreements, nor as restricting the United States' right of setoff and recoupment. Any assumption and assignment of the Medicare provider agreements shall be authorized only in accordance with 11 U.S.C. § 365, all applicable Medicare statutes and regulations, and the Anti-Assignment Act.

35. To the extent the Successful Bid or the Backup Bid includes the assignment of a Medicare provider agreement, such bid must include a provision that requires the agreement be assumed and assigned pursuant to and in accordance with section 365 of the Bankruptcy Code, all applicable Medicare statutes and regulations, and the Anti-Assignment Act. No Successful Bid or Backup Bid may include a requirement that any Medicare provider agreement be sold, assigned, or transferred "free and clear" of successor liability for any liability to the United States arising from such provider agreement pursuant to section 363(f) of the Bankruptcy Code.

13. The Bid Procedures Order required St. Christopher's to file a notice of contracts that may be potentially assumed and assigned by August 16, 2019. Dkt. No. 301 at ¶ 18(a). On August 16, 2019, St. Christopher's filed a Notice of Assumption, Assignment and Cure Amount With Respect To Executory Contracts and Unexpired Leases of the Debtors. Dkt. 510. The Notice did *not* include the Provider Agreement as an assumed contract. Dkt. 510, Ex. A.

14. The Bid Procedures Order also imposed an August 27, 2019 deadline by which St. Christopher's had to name a stalking horse purchaser, if any. Dkt. 301 at ¶4. Additionally, the Bid Procedures Order required "[a] form of Sale Order shall be filed with the Court as soon as practicable prior to the Sale Objection Deadline," of September 13, 2019. Dkt. 301 at ¶23.

15. To date, St. Christopher's has yet to identify a stalking horse purchaser. More importantly, St. Christopher's has yet to file a form of sale order with the Court.

## ARGUMENT

16. Because St. Christopher's has yet to file a form asset purchase agreement or a form sale order with the Court, the United States is unable to determine if the sale of St. Christopher's

assets will comply with applicable non-bankruptcy federal law.  To the extent that the eventual sale of St. Christopher's assets does not comply with applicable the Medicare Program, this Court should deny the sale.

17. St. Christopher's may transfer its Provider Agreement only by complying with the Medicare Program.  St. Christopher's Provider Agreement may only be assumed and assigned under 42 C.F.R. § 489.18, if CMS determined that the St. Christopher's sale qualifies as a change of ownership or "CHOW."  If the transaction qualifies as a CHOW, St. Christopher's Provider Agreement will be automatically be assigned to the successful bidder.  *See* 42 C.F.R. § 489.18(c). That assignment must be "subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued."  § 42 C.F.R. § 489.18(d).  As recognized by the Fifth Circuit in *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 696 (5th Cir. 1994), this includes the requirement that any payments are subject to adjustments, or recoupment, pursuant to 42 U.S.C. § 1395g(a).  In other words, as the Third Circuit has made clear, when assuming a provider agreement, "a hospital accepts the 'burden' of allowing HHS to recover the amount of prior overpayments from Medicare reimbursement currently due," *i.e.*, successor liability. *University Med. Ctr. v. Sullivan* (*In re University Med. Ctr.*), 973 F.2d 1065, 1075 (3d Cir. 1992); *see In re Charter Behavioral Health Systems, LLC*, 45 F. Appx. 150, 151 n.1 (3d Cir. 2002); *Vernon,* 21 F.3d at 696 ("The operative effect of section 498.18(d) is that all assigned provider agreements are subject to the rules and regulations of the Social Security Act."); *Mission Hosp. Regional Medical Center v. Burwell*, 819 F.3d 1112, 1116 (9th Cir. 2016) ("The regulation [section 489.18] which Mission tried to circumvent, provides continuity of obligations, continuity which is essential to the functioning of Medicare's Prospective Payment System.  The regulation talks about an assignment, not a new beginning with a clean slate on new terms.").

18.     Section 363 is not a vehicle for St. Christopher's to transfer its Provider Agreement.[4] Section 363 permits St. Christopher's to sell property of its estate. 11 U.S.C. § 363(b)(1). St. Christopher's has no property interest in its Provider Agreement, *c.f. Koerpel v. Heckler*, 797 F.2d 858, 863-65 (10th Cir. 1986) (concluding that physician lacked a property interest in Medicare participation); *Cervoni v. Sec'y of Health, Ed., and Welfare,* F.2d 1010, 1019 (1st Cir. 1978) (same), and no right to sell it. To the extent that St. Christopher's has any rights in its provider agreement, those rights are defined and strictly limited by the Medicare Program and were not enhanced by St. Christopher's bankruptcy to transform into freely alienable property rights. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) (citation omitted) (acknowledging "general bankruptcy rule" that "[t]he estate cannot possess anything more than the debtor itself did outside bankruptcy."). Nothing about the Provider Agreement or the Medicare Program grants Debtors a property right to render the provider agreement "property of the estate" transferrable under section 363. *See Shah v. Azar*, 920 F.3d 987, 997-98 (5th Cir. 2019) (stating that "health care providers . . . . do not have a property interest in continued participation or reimbursement."); *c.f.* 11 U.S.C. § 541(d)(where debtor has limited interests in property, those limitations apply to the estate's interests).

19.     To the extent the St. Christopher's attempts to transfer its Provider Agreement other than by a compliant CHOW as determined by CMS with full successor liability pursuant to the Medicare Program, this Court must deny such a sale.

---

[4] Although the Bid Procedures Order would appear to prohibit this argument, the United States is compelled to protect its rights by making this objection to the sale motion in anticipation of a change of tack on the eve of a sale hearing in light of the approach taken by the Debtors in their efforts to sell Hahnemann Hospital's provider agreement and residency slots. Bid Procedures Order at ¶¶ 34 & 35 and Dkt. 681.

**RESERVATION OF RIGHTS**

20. Because no form of asset purchase agreement or sale order has been filed with the Court, the United States is unable to fully analyze any potential sale of St. Christopher's assets. Thus, the United States reserves its rights to supplement this Objection after St. Christopher's has identified a successful bidder, the successful bidder's asset purchase agreement has been filed with this Court, and St. Christopher's has filed a proposed sale order.

**CONCLUSION**

21. For the foregoing reasons, this Court should deny the sale of St. Christopher's assets to the extent that the successful bidder's asset purchase agreement or proposed sale order attempts to transfer St. Christopher's Provider Agreement without complying with Medicare Program.

Dated:  September 13, 2019

Respectfully submitted

JOSEPH H. HUNT
Assistant Attorney General

DAVID C. WEISS
United States Attorney

ELLEN SLIGHTS
Assistant United States Attorney

/s/ Marc S. Sacks
RUTH A. HARVEY
MARGARET M. NEWELL
MARC S. SACKS

Department of Justice
Commercial Litigation Branch,
Civil Division
P.O. Box 875, Ben Franklin Station
Washington, DC 20044-0875
Tel. (202) 307-1104
Fax (202) 514-9163
marcus.s.sacks@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 13th day of September 2019, I caused a true and correct copy of the foregoing objection to be served via electronic mail upon all parties receiving electronic notice under the Court's CM/ECF system.

      /s/ Marc S Sacks
      MARC S. SACKS