# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) ) ) ) | Case No. 19-11466 (KG) (Jointly Administered) |
| Debtors. | ) ) ) ) ) ) ) ) | **Objection Deadline: September 20, 2019 at 4:00 p.m. (Proposed)** <br> **Hearing Date: September 23, 2019 at 1:00 p.m. (Proposed)** <br><br> **Related Docket Nos. 205, 301, and 510** |

## MOTION OF UROLOGY FOR CHILDREN, LLC
## TO EXTEND OBJECTION DEADLINE

COMES NOW, Urology for Children, LLC ("**UFC**"), by and through its undersigned counsel, and hereby moves this Honorable Court to extend its deadline to object to cure amount in connection with the Debtors' St. Christopher's Sale Motion.[2]

In support of its motion, UFC respectfully states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A).

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Unless it is plainly apparent from the context that another meaning is intended, capitalized terms not otherwise defined shall have the meanings ascribed to them in UFC's accompanying Objection to Sale Motion, which is being filed contemporaneously herewith.

1

2. Pursuant to Local Rule 9013-1(f), to the extent that it is later determined that this Court may not, in accordance with Article III of the U.S. Constitution, enter final orders or judgments in connection with this contested matter without the parties' consent, UFC so consents.

3. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for relief are 11 U.S.C. § 105 and Fed.R.Bankr.P. 9006(b)(1).

## BACKGROUND

5. UFC is pediatric urology practice with six offices located in Pennsylvania and Southern New Jersey, including one on the grounds of St. Christopher's Hospital for Children. UFC is comprised of five physicians and three nurse practitioners. UFC's pediatric urologists are experts in the diagnosis and treatment of urological problems affecting boys, girls, and adolescents. UFC manages all genitourinary problems that involve the kidney, ureter, bladder, penis, scrotum, and testicles in youth aged newborn to 18 years in the South Jersey and Philadelphia area.

6. Gregory E. Dean, MD, a member of UFC, serves as Chief of Urology at St. Christopher's Hospital for Children.[3] The physicians of UFC are contracted to provide 24/7 emergency room coverage for St. Christopher's Hospital for Children.

---

[3] Dr. Dean's declaration is attached hereto as Exhibit 1.

7. Pre-petition, UFC entered into three agreements with Debtor St. Christopher's Healthcare, LLC and two agreements with Debtor SCHC Pediatric Associates, L.L.C.[4] From time to time, these Executory Agreements[5] have been renewed, continued, or extended.

8. On or about June 30, 2019 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

9. On or about July 16, 2019, St. Christopher's Healthcare, LLC, along with the other debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed the St. Christopher's Sale Motion.

10. On July 16, 2019, the Debtors filed the St. Christopher's Sale Motion (Docket No. 205).

11. On July 26, 2019, the Court entered that certain *Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Affiliates and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to any Stalking Horse Purchasers, and (IV) Granting Related Relief* (Docket No. 301) (the "**Sale Procedures Order**").

---

[4] As set forth in the Assumption and Assignment Notice, the agreements with St. Christopher's are a Service Agreement, an Emergency Room On-Call Agreement, and a Timeshare Sublease (together, the "**St. Christopher's Executory Agreements**"). The agreements with SCHC Pediatric Associates are a Lease Agreement and a Service Agreement (together, the "**SCHC Pediatric Executory Agreements**," and together with the St. Christopher's Executory Agreements, the "**Executory Agreements**"). UFC is still investigating whether there are additional agreements between the parties and reserves all rights in this regard.

[5] Despite the nomenclature adopted herein, UFC does not concede that the Executory Agreements are, in fact, "executory" within the meaning ascribed to that term in proceedings under the Bankruptcy Code and reserves all rights in this regard. Indeed, the Debtors are in post-petition default of the Net 15 payment terms established under the Executory Agreements. UFC does not waive the Debtors' post-petition payment default, or any other default, and reserves all rights in this regard.

12. Section 18(d) of the Sale Procedures Order set August 30, 2019 as the "Contract Objection Deadline."

13. On August 16, 2019, the Debtors filed the Assumption and Assignment Notice setting forth proposed cure amounts for certain executory contracts (Docket No. 510). The Debtors listed the cure amounts for each of the Executory Agreements as zero. The Assumption and Assignment Notice recited the August 30, 2019 deadline to object to cure or assignability.

14. In accordance with the terms and conditions set forth in the Executory Agreements and any related documents, Debtors were obligated to make certain payments to UFC for services rendered. The Debtors have defaulted on their obligation to make all the required payments in the aggregate pre-petition and post-petition amount of $147,600, subject to adjustment.

15. UFC did not timely object.

16. The Affidavit of Service (Docket No. 560) filed in connection with the Assumption and Assignment Notice relates that the notice was served at the following three addresses:

UROLOGY FOR CHILDREN, LLC
ATTN: OWNER AND PARTNER
200 BOWMAN DR, STE E-360
VOORHEES, NJ 08043

UROLOGY FOR CHILDREN LLC
200 BOWMAN DR, STE 560
VOORHEES, NJ 08043

UROLOGY FOR CHILDREN, LLC
200 BOWMAN DR, STE E-360
VOORHEES, NJ 08043

## RELIEF REQUESTED; BASIS THEREFOR

17. Section 105 of the Bankruptcy Code authorizes the Court to exercise its equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

18. None of the three addresses provided UFC with constitutionally adequate notice of the deadline to file its cure objection. The address reciting suite 560 is simply incorrect. Neither of the other two addresses complied with Rule 7004(b)(3).[6]

19. Inadequate notice, without more, is a sufficient basis upon which to UFC relief. *See,* In re Grand Union Co., 204 B.R. at 871 (Bankr. D. Del. 1997).

20. However, inadequate notice can also constitute cause and/or excusable neglect for a failure to timely object to a deadline fixing the value of a creditor's claim. *See,* In re Sharon Steel Corp., 110 B.R. 205, 207 (Bankr. W.D. Pa. 1990). Accordingly, out of an abundance of caution, UFC also requests, as alternative relief, an extension of the Contract Objection Deadline to accommodate the filing of his objection contemporaneously herewith pursuant to Rule 9006(b)(1) within the definition of excusable neglect that justifies an enlargement of time.

21. Rule **9006**(b)(1) provides as follows:

(b) ENLARGEMENT.

(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, *the court for cause shown may at any time in its discretion* (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

(Emphasis supplied).

22. The Supreme Court has stated that inadvertent neglect alone is sufficient cause for approving the late filing of proofs of claim pursuant to Rule 9006(b)(1).

---

[6] As noted by another objector, the filing of the cure notice creates a contested matter under Federal Rule of Bankruptcy Procedure 9014. Rule 9014(b) requires service of any contested matter pursuant to Rule 7004. Rule 7004(b)(3) requires that service on a corporation by mail be sent to the "attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process...." The Debtors did not do that here.

23. In Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993), the Supreme Court held that a creditor could file its proof of claim beyond the bar date where the failure to timely file was the result of excusable neglect, including for inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control. Pioneer, 507 U.S. at 385 (1993). UFC respectfully submits that the proposed fixing of its cure claim at zero is sufficiently akin to the operation of a general bar date that this Court should apply Pioneer to the Contract Objection Deadline.

24. Here, Dr. Dean, UCF's managing member, was on constant travel during the entire pendency of the Contract Objection Deadline, from the date of filing of the Assumption and Assignment Notice of August 16, 2019 through the Contract Objection Deadline on August 30, 2019. Moreover, that 14-day period was only two-thirds of the 21 day period required by Rule 2002 for minimum notice of a bar date. Fed. R. Bankr. P. 2002(a)(7). Typically, this Court requires 30 days' notice of a general bar date. Furthermore, the Debtors' claims agent's website noted and still reflects that no bar date had yet been established in these cases.

25. The four factors to be considered in determining whether "excusable neglect" exists under Rule 9006(b)(1) are, "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395; *see also,* In re Garden Ridge Corp., 348 B.R. 642 (Bankr. D. Del. 2006).

26. In its Garden Ridge opinion, this Court stated that the following factors are considered when a court determines "prejudice":

> whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors; whether payment of the claim would jeopardize the success of the

6

debtor's reorganization; whether allowance of the claim would adversely impact the debtor actually or legally; and whether allowance of the claim would open the floodgates to other future claims.

*Id.* at 646 (citing In re Inacom Corp., 2004 WL 2283599, *4 (D. Del. Oct. 4, 2004)).

27. None of these factors weighs against enlarging the Contract Objection Deadline.

## I. THE DEBTORS WILL NOT SUFFER PREJUDICE.

### i. Surprise

28. The Debtors cannot contend that allowing UFC's late objection to cure caught them unaware or could not have been anticipated because they were in receipt of UFC's invoices for May through August 2019, none of which has been paid.

### ii. Return of Payment

29. The Debtors cannot contend that allowing UFC's late objection to cure would force the return of amounts already paid out under a confirmed plan or affect the distribution to creditors because no plan has yet been confirmed in these cases nor has any distribution to creditors been made. Rather, denying UFC's motion would allow Debtors to reap an unearned windfall. Indeed, the cure procedures entered by the Court contemplate a resolution process in connection with cure objections.

### iii. Jeopardizing the Success of a Reorganization

30. The Debtors cannot contend that the allowing UFC's late objection to cure would jeopardize the success of a reorganization because the Debtors in their Sale Motion indicate that the going concern value of St. Christopher's Hospital for Children, along with the transfer of executory contracts related thereto, is a substantial estate asset.

### iv. Adverse Impact on Debtors Legally or Actually

31. The Debtors cannot contend that the allowing UFC's late objection to cure would harm them legally or actually because they are required by Bankruptcy Code Section 365(b)(1)(A) to cure all monetary and non-monetary defaults in connection with the assumption and assignment of executory contracts.

### v. Floodgates

32. There is no evidence that allowing UFC's late objection to cure would open the floodgates to similar claims. And it should be noted that a general bar date has not yet been set in these cases.

33. Each of these factors demonstrates that Debtors will suffer no prejudice if the Court allows UFC's late objection to cure.

## II. THE DELAY WILL NOT IMPACT THE PROCEEDINGS.

34. The delay is less than two weeks. It will have no impact on the proceedings. Allowing the late filing of the cure objection will simply mean that Debtors will have to review it and decide whether to subject it to the dispute cure claim procedure.

## III. THE REASON FOR THE DELAY, INCLUDING WHETHER IT WAS WITHIN MOVANT'S REASONABLE CONTROL

35. The brief delay was no fault of UFC as its managing member was on travel during the 14-day notice period of the Contract Objection Deadline. Additionally, service of the Assumption and Assignment Notice was defective, and the notice period was only two-thirds of the minimum notice required for the pendency of a general bar date under Rule 2002.

36. When UFC became aware of the missed deadline, it secured bankruptcy counsel within one day.

### IV. UFC ACTED IN GOOD FAITH.

37. There is no indication or inference to be drawn from any fact suggesting that UFC did not act in good faith.

38. Under these circumstances, UFC respectfully submits that there will be no prejudice to the Debtors if the time by which it must object to the proposed cure amounts is enlarged pursuant to Rule 9006(b)(1). Accordingly, UFC respectfully submits that either cause or excusable neglect exists such that this Court should grant its alternative request to extend the Contract Objection Deadline pursuant to Bankruptcy Code section 105(a) and Rule 9006(b)(1).

### CONCLUSION

WHEREFORE, for the reasons stated above, UFC respectfully requests that this Honorable Court enter an Order substantially in the form attached hereto as Exhibit 2 (i) granting its motion, (ii) deeming its cure objection timely filed, or (iii) in the alternative, extending the Contract Objection Deadline to accommodate the filing of its cure objection, and (iv) granting to it such other and further relief as the Court deems just and proper.

Dated: September 13, 2019  
Wilmington, Delaware

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ E.E. Allinson III*  
Elihu E. Allinson, III (No. 3476)  
901 North Market Street, Suite 1300  
Wilmington, DE 19801  
Tel: (302) 428-8191  
Fax: (302) 428-8195  
Email: zallinson@sha-llc.com

*Attorneys for Urology for Children, LLC*