**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11466 (KG)<br><br>Jointly Administered<br><br>Re:  D.I. 620 |

**LIMITED OBJECTION OF MASTER LANDLORDS TO THE FIFTH OMNIBUS
MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
THE REJECTION OF CERTAIN UNEXPIRED REAL ESTATE LEASES**

HSRE-PAHH I, LLC, PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Wood Street Garage, LLC, PAHH Feinstein MOB, LLC, and PAHH Broad Street MOB, LLC (collectively, the "Master Landlords"),[2] by and through their counsel, DLA Piper LLP (US), object (this "Limited Objection") to the *Fifth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Unexpired Real Estate Leases* [D.I. 620] (the "Motion").  Not only are the Master Leases fully integrated, requiring that they all be assumed or rejected, but the proposed rejection of the Master Leases cannot occur until the earlier of (i) the closure of the Debtors' Hospitals and the transfer or surrender of any applicable licenses, (ii) the turnback of the Master Lease Buildings in the condition required under the Master Leases, and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] It appears to the Master Landlords that the Debtors omitted the Master Lease between SCHC and PAHH Erie Street Garage, LLC ("Erie Lease").  In the event the Debtors included or intended to include the Erie Lease as an unexpired lease to be rejected, then this Objection shall be deemed to be filed on behalf of PAHH Erie Street Garage, LLC and PAHH Erie Street Garage, LLC shall be deemed to be a Master Landlord through this Objection.

(iii) the Debtors' resolution of all Subtenant issues. In support of this Limited Objection, the Master Landlords respectfully represent as follows:

## BACKGROUND

1. On January 11, 2018, the Debtors and certain of their non-Debtor affiliates, consummated the purchase of Hahnemann University Hospital and St. Christopher's Hospital for Children (together, the "Hospitals") and certain related assets from Tenet Healthcare Corporation and certain of its affiliates (collectively, "Tenet") pursuant to an Asset Sale Agreement dated August 31, 2017, as amended (the "Acquisition").

2. Concurrent with the Debtors' acquisition of the Hospitals, the Master Landlords in a single, integrated transaction purchased from Tenet several buildings (the "Master Lease Buildings") located on or adjacent to the Hospital campuses.[3] The Master Lease Buildings contain an ambulatory surgical center, a cancer treatment center providing radiation therapy, office space, classroom space, parking, and other ancillary facilities that are essential to the operation of the Hospitals.

3. Incident to the Debtors' acquisition of the Hospitals and the Master Landlords' acquisition of the Master Lease Buildings, the Master Landlords, as landlord, and Debtor St. Christopher's Healthcare, LLC, as tenant (the "Master Tenant") entered into Master Leases (collectively, the "Master Leases") pursuant to which the Master Tenant leased the Master Lease Buildings on an "absolute triple net" basis. The Master Tenant is required to pay all amounts owing under the Master Leases and all occupancy costs for the premises leased under the Master Leases. The obligations of the Master Tenant under the Master Leases are guaranteed by non-

---

[3] Section 9.1 of each Master Lease provides, "Notwithstanding any provision of this Lease to the contrary, except as otherwise agreed by Landlord in its sole discretion… this Lease shall not be assigned in whole or in part unless the Other Master Leases are simultaneously assigned to the same Person." The inverse is equally applicable, all Master Leases must be rejected.

2

debtor affiliate Philadelphia Academic Health Holdings, LLC ("PAHH") and non-debtor affiliate Paladin Healthcare Capital, LLC ("PHC" and, together with PAHH, the "Master Guarantors").[4]

4. Under the terms of the purchase agreement for the Master Lease Buildings, the Master Tenant took assignment of and became the sub-landlord under several subleases (the "Subleases") for each of the Master Lease Buildings. The Master Tenant currently sub-leases the majority of the Master Lease Buildings to Drexel University College of Medicine ("DUCOM") or to DUCOM affiliates, as well as to other sub-tenants, including certain of its non-Debtor affiliates and other unaffiliated third-parties (each a "Subtenant" and collectively, the "Subtenants").

5. On July 16, 2019, the Debtors filed the *Motion for Entry of (A) an Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Debtors and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to Any Stalking Horse Purchasers, and (IV) Granting Related Relief and (B) One or More Orders (I) Approving the Sales or Other Acquisition Transactions for the Assets, (II) Authorizing the Sales Free and Clear of all Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 205] (the "SCHC Sale Motion").

6. On July 26, 2019, the Court approved bidding procedures and established assumption and assignment procedures relating to the sale of substantially all of the assets of St.

---

[4] The Master Leases are voluminous and may be provided upon request and subject to appropriate confidentiality agreements.

Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children ("SCHC") and certain of its affiliates [D.I. 301].

7. On August 30, 2019, the Debtors filed the *Fifth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Unexpired Real Estate Leases* [D.I. 620] (the "Motion"), seeking to reject the Master Leases and Subleases effective as of the date of the entry of the Proposed Order (on or about September 24, 2019).

8. The Debtors' Hospitals are still open and operating and upon information and belief remain licensed by the Commonwealth of Pennsylvania Department of Health ("PA DOH"). *See Transcript of Hearing Held Sept. 9, 2019*, at 22:10. Yet under the Master Leases, the Debtors are required to return the Master Lease Buildings to Master Landlord "free of all Tenant Personal Property, and in the same level of condition and repair as on the Commencement Date…and Tenant shall remove or demolish all of the Fixtures and Related Personal Property, structures and other improvements[.]" *See* Master Lease § 16.1, excerpt attached hereto as Exhibit A.

9. Over the past several weeks, the Master Landlords have made repeated attempts to discuss with the Master Tenant and its Debtor affiliates and advisors a transition plan for the transfer or closure of the Hospitals and to address various Subtenant issues, but the Debtors have yet to engage in these negotiations. Further, as has been described previously to the Court, the Hahnemann Center City campus constitutes buildings owned by affiliates of the Debtors as well as certain of the Master Lease Buildings developed in an integrated complex of buildings that are open to each other with many utilities coming into the complex only at a single point. Certain outstanding transition issues include cleaning the premises of radioactive materials and waste in accordance with applicable non-bankruptcy law, security, health and safety concerns, transition of shared services, access to utilities and new accounts with utility providers for utilities that

4

enter through only Hospital buildings, vendor access as well as the resolution of various Subtenant matters and the Debtors' plan to return the Master Lease Buildings to Master Landlord in the condition required by section 16.1 of the Master Leases. It should go without saying that time is critical for this transition plan, and to date no steps have been taken to implement this plan.

## LIMITED OBJECTION

10. The Master Landlords object to the effective date of the rejection of the Master Leases prior to the closure of the Debtors' Hospitals and the assignment or other transfer of all applicable state and federal licenses, among other issues. More specifically, if the Court authorizes the Debtors to reject the Master Leases and Subleases, the effective date of the rejection should be subsequent to the later of (i) the closure of the Debtors' Hospitals and the transfer or surrender of any applicable licenses, (ii) the turnback of the Master Lease Buildings in the condition required under the Master Leases, and (iii) the Debtors' resolution of all Subtenant issues.

11. As detailed in the various responses and objections filed by PA DOH and the United States of America on behalf of the Department of Health and Human Services, acting through its designated component, the Centers for Medicare & Medicaid Services ("CMS"), the Debtors' health care facilities are subject to various state and federal rules and regulations. *See generally*, D.I. 185, 280, 364, 671, 675.

12. Among these requirements is Chapter 8 of the Pennsylvania Health Care Facilities Act (the "Act"), which governs the PA DOH's licensing requirements for Pennsylvania health care facilities.[5] 35 P.S. § 448.801-448.821. Section 448.806 of the Act requires all health care

---

[5] The Act defines a "health care facility" as follows:

facilities within the Commonwealth to obtain a license from the PA DOH prior to providing medical services, which license cannot be transferred without the express authorization of the PA DOH. 35 P.S. § 448.806.

13.     The definition of a "health care facility" includes, in a non-exhaustive list, medical office buildings, such as those subject to the Master Leases, in which cancer treatment radiation therapy and surgical procedures are performed. As determined by the Court during the telephonic hearing held September 9, 2019, the Debtors' health care facilities are still open and operating, and while the Debtors plan to close the Hospitals at the end of September, they are still continuing to negotiate with the PA DOH and CMS over the transfers of applicable licenses and the Hospital closure processes. *See generally* Sept. 9 Hr'g Tr. at 24:3-10, 38:10-16. The Debtors have provided the Master Landlords with no information, including no information pertaining to their plans to surrender any licenses affecting the Master Lease Buildings. Therefore, if the Master Leases are rejected prior to the Debtors' closure of the Hospitals and surrender of any licenses affecting the Master Lease Buildings, the Master Landlords may be forced to continue operations or face uncertain liability for any loss of licensure or the burden to surrender the licenses, among other potential issues.

---

> For purposes of Chapter 8, a health care facility includes, but is not limited to, a general, chronic disease or other type of hospital, a home health care agency, a home care agency, a hospice, a long-term care nursing facility, *cancer treatment centers using radiation therapy on an ambulatory basis, an ambulatory surgical facility*, a birth center regardless of whether such health care facility is operated for profit, nonprofit or by an agency of the Commonwealth or local government. The department shall have the authority to license other health care facilities as may be necessary due to emergence of new modes of health care. When the department so finds, it shall publish its intention to license a particular type of health care facility in the Pennsylvania Bulletin in accordance with the act of June 25, 1982 (P.L. 633, No. 181), known as the "Regulatory Review Act." The term health care facility shall not include an office used primarily for the private practice of a health care practitioner, nor a program which renders treatment or care for drug or alcohol abuse or dependence unless located within a health facility, nor a facility providing treatment solely on the basis of prayer or spiritual means. The term health care facility shall not apply to a facility which is conducted by a religious organization for the purpose of providing health care services exclusively to clergymen or other persons in a religious profession who are members of a religious denomination.

35 P.S. § 448.802a (emphasis added).

EAST\169149990.3

14. In addition, as noted above, the Debtors' health care facilities are still open and operating, and the Master Lease Buildings contain, among other operations, an ambulatory surgical center and a radiation treatment center. Yet, the Debtors have repeatedly refused to communicate how and when they intend to remove medical equipment and materials, including the radioactive material used in the radiation treatment center, in order to comply with the turnback requirements in section 16.1 of the Master Leases. At this point, it is entirely possible that the Debtors will vacate the premises without removal and remediation of radioactive materials in accordance with applicable non-bankruptcy law, which will cause the Master Landlords to incur substantial expenses that the Debtors can ill afford to pay.

15. If the Master Leases are rejected prior to the closure of the Debtors' health care facilities, then the Master Landlords under the Master Leases may be required to operate under the licenses in order to maintain the Debtors' valuable licenses and to prevent a significant loss to the Debtors' estates.

16. Furthermore, the Debtors have failed to address the various Subtenant issues, including potential Subtenant arguments to continue in possession under the Subleases pursuant to section 365(h) of the Bankruptcy Code, which is inapplicable under the circumstances of these cases, or other applicable law. *See, e.g.*, *Chatlos Sys., Inc. v. Kaplan*, 147 B.R. 96, 100 (D. Del. 1992) *aff'd* 998 F.2d 1005 (3d Cir. 1993) ("[W]hen a lease is deemed rejected pursuant to § 365(d)(4), any subleases under that primary lease must also be deemed rejected since the sublessee's rights in the property extinguish with those of the sublessor."); *In re The Great Atlantic & Pacific Tea Co., Inc.*, 544 B.R. 43, 53 (Bankr. S.D.N.Y. 2016) ("section 365(h) does

not give the subtenant a meaningful election to remain in its former subtenancy when the debtor has rejected the overlease first or simultaneously with the sublease.").[6]

17. Accordingly, if the Court authorizes the Debtors to reject the Master Leases, the rejection date should be subsequent to the later of (i) the closure of the Debtors' Hospitals and the transfer or surrender of any licenses affecting the Master Lease Buildings, (ii) the turnback of the Master Lease Buildings in the condition required under the Master Leases, and (iii) the Debtors' resolution of all Subtenant issues.

## RESERVATION OF RIGHTS

18. The Master Landlords reserve the right to amend and/or supplement this Limited Objection and to assert any other rights and objections and seek remedies under and relating to the Master Leases and any other transactional documents to which any Debtor or Debtor affiliate is a party under the Bankruptcy Code or other applicable law, including, without limitation, the rights to raise additional arguments or objections concerning the relief requested in the Motion, and to interpose amended or further objections at a later date as may be warranted by the attendant facts and circumstances.

## CONCLUSION

WHEREFORE, the Master Landlords respectfully request that the Court (A) set the effective date of any rejection of the Master Leases to be subsequent to the later of (i) the closure of the Debtors' Hospitals and the transfer or surrender of any applicable licenses, (ii) the turnback of the Master Lease Buildings in the condition required under the Master Leases, and (iii) the Debtors' resolution of all Subtenant issues; and (B) grant such other and further relief as this Court deems just and proper.

---

[6] The Court in *Great Atlantic & Pacific Tea Co.* discussed *In re Amicus Wind Down Corp.*, 2012 WL 604143, 2012 Bankr. LEXIS 662 (Bankr. D. Del. Feb. 24, 2012) and *In re Zota Petroleums, LLC*, 482 B.R. 154 (Bankr. E.D. Va. 2012), and distinguished both cases because each debtor had not rejected the overlease. *Id.* at 54.

EAST\169149990.3

| | |
|---|---|
| Dated: September 13, 2019 | Respectfully submitted, |
| | **DLA PIPER LLP (US)** |
| | */s/ Stuart M. Brown* |
| | Stuart M. Brown (DE 4050) |
| | 1201 North Market Street, Suite 2100 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 468-5700 |
| | Facsimile: (302) 394-2341 |
| | Email: Stuart.Brown@us.dlapiper.com |
| | |
| | -and- |
| | |
| | Richard A. Chesley (admitted *pro hac vice*) |
| | 444 West Lake Street, Suite 900 |
| | Chicago, Illinois 60606 |
| | Telephone: (312) 368-4000 |
| | Facsimile: (312) 236-7516 |
| | Email: Richard.Chesley@us.dlapiper.com |
| | |
| | *Counsel to the Master Landlords* |