## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL *et al.*,[1] | Case No. 19-11466 (KG) |
| | (Jointly Administered) |
| Debtors. | **Re: Docket No. 681** |

## STATUS REPORT REGARDING STAY PENDING APPEAL
## OF HAHNEMANN SALE ORDER ENTERED BY DISTRICT COURT

The United States of America (the "United States"), on behalf of the Department of

Health and Human Services ("HHS"), acting through its designated component, the Centers for

Medicare & Medicaid Services ("CMS"), submits this status report to notify the Court that, on

September 16, 2019, the United Stated District Court for the District of Delaware ("district

court") issued a stay pending appeal of the *Order Under 11 U.S.C. § 105, 106, 363, 365, 503,*

*507, and 525 (A) Approving Asset Purchase Agreement with Thomas Jefferson University*

*Hospitals, Inc., (B) Authorizing Sale of Certain of Debtor's Assets Free and Clear of Interests,*

*(C) Authorizing Assumption and Assignment of Certain of the Debtor's Executory Contracts, and*

*(D) Granting Related Relief* (the "Sale Order"). Dkt. 681.

---

[1] The Debtors in these jointly administered cases, along with the last four digits of each Debtor's federal tax identification number, are:  Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

## BACKGROUND

1.  On September 5, 2019, the Court ruled orally that it would approve the sale to Jefferson, and shorten execution of the order from the fourteen days ordinarily required under Fed. R. Bankr. P. 6004(h) to seven days.

2.  During the September 5, 2019 hearing, the United States moved orally for a stay pending its appeal of the to-be-entered Sale Order, and Debtors opposed. The Court denied the United States' oral motion.

3.  This Court entered the Sale Order on September 10, 2019.

4.  On September 12, 2019, the United States filed a Notice of Appeal of the Sale Order.

5.  On September 12, 2019, the United States moved the district court, pursuant to Rules 8007(b) and 8013(d) of the Federal Rules of Bankruptcy Procedure, for an emergency stay pending appeal of the Sale Order.  Debtors, Jefferson and the Official Committee of Unsecured Creditors filed written oppositions to the United States' motion.

6.  On September 16, 2019, the district court held a hearing on the United States' motion and, after argument by the parties, orally granted a stay pending appeal.

7.  Later on September 16, 2019, the district court entered a written order granting a stay pending appeal "for the reasons set forth on the record."

**STATUS REPORT**

The United States hereby notifies the Court of the district court's issuance of a stay

pending appeal of the Sale Order.  The United States attaches the district court's oral ruling (Tr.

58:13 – 70:3) as Exhibit 1.  The district court's written order is attached as Exhibit 2.


Dated:  September 23, 2019                    Respectfully submitted,


                                              JOSEPH H. HUNT
                                              Assistant Attorney General

                                              DAVID C. WEISS
                                              United States Attorney

                                              ELLEN SLIGHTS
                                              Assistant United States Attorney

                                              /s/ Marc S Sacks
                                              RUTH A. HARVEY
                                              MARGARET M. NEWELL
                                              MARC S. SACKS

                                              Department of Justice
                                              Commercial Litigation Branch,
                                              Civil Division
                                              P.O. Box 875, Ben Franklin Station
                                              Washington, DC 20044-0875
                                              Tel. (202) 307-1104
                                              Fax (202) 514-9163
                                              marcus.s.sacks@usdoj.gov

                                              ATTORNEYS FOR THE UNITED STATES

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September 2019, I caused a true and correct copy of the foregoing objection to be served via electronic mail upon all parties receiving electronic notice under the Court's CM/ECF system.


s/ Marc S Sacks
MARC S. SACKS

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL *et al.*, | Case No. 19-11466 (KG) |
| | (Jointly Administered) |
| Debtors. | **Re: Docket No. 681** |

**STATUS REPORT REGARDING STAY PENDING APPEAL
OF HAHNEMANN SALE ORDER ENTERED BY DISTRICT COURT**

# EXHIBIT 1

01:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re:                                    )
                                          )
CENTER CITY HEALTHCARE, LLC d/b/a )
HAHNEMANN UNIVERSITY HOSPITAL,     )
et al.,                                   )
                                          )
              Debtors,                    )
_____)
                                          ) C.A. No. 19-1711(UNA)
UNITED STATES OF AMERICA,                 )
                                          )
              Appellant,                  )
                                          )
v.                                        )
                                          )
CENTER CITY HEALTHCARE, LLC, d/b/a )
HAHNEMANN UNIVERSITY HOSPITAL,     )
And THOMAS JEFFERSON UNIVERSITY    )
HOSPITALS, INC.,                          )
                                          )
              Appellees.                  )


                         Monday, May 16, 2019
                         3:00 p.m.
                         Teleconference


                         844 King Street
                         Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge



APPEARANCES:


              U.S. DEPARTMENT OF JUSTICE
              BY:  MARCUS S. SACKS, ESQ.

                    Counsel for the Appellant

APPEARANCES CONTINUED:


                SAUL EWING ARNSTEIN & LEHR, LLP
                BY:  MARK MINUTI, ESQ.

                        Counsel for the Debtor


                DRINKER BIDDLE & REATH, LLP
                BY:  PATRICK A. JACKSON, ESQ.
                BY:  ANDREW KASSNER, ESQ.

                        Counsel for the Appellee



                FOX ROTHSCHILD
                BY:  THOMAS HORAN, ESQ.

                -and-

                SILLS CUMMIS & GROSS
                BY:  ANDREW SHERMAN, ESQ.

                        Counsel for the Official
                        Committee of Unsecured Creditors



                        - oOo -

                    P R O C E E D I N G S

                (REPORTER'S NOTE:  The following telephone

conference was held in chambers, beginning at 3:05 p.m.)


                THE COURT:  Good afternoon, counsel.  Who is

there, please?

04:20:41  1    need for tail coverage that would permit an illegal sale.

04:20:45  2    In the sale were legal, it wouldn't matter if there was no

04:20:48  3    justification for it.  At the same time, if the sale is not

04:20:51  4    legal, it doesn't matter what the justification is.

04:20:53  5              On St. Christopher, the bidding procedures of

04:20:57  6    St. Christopher says, that was just altered today by the

04:21:00  7    debtors, that they come in two days, the auction is in three

04:21:04  8    days and the St. Christopher sale hearing on September 23rd,

04:21:09  9    one week.  If there is really a need to continue to operate

04:21:11 10    St. Christopher until it's sold, we're talking about seven

04:21:15 11    days.  That does not require $55 million.

04:21:17 12              Thank you, Your Honor.

04:21:18 13              THE COURT:  Okay.  Thank you, counsel, for the

04:21:23 14    arguments today.  They were very helpful to me.  I have

04:21:31 15    carefully reviewed the proceedings in the Bankruptcy Court

04:21:32 16    as well as all of the briefs and declarations submitted.

04:21:35 17    And I have considered the arguments presented today.  The

04:21:38 18    parties agree that there is a chance that if the case is not

04:21:41 19    stayed, the close of the sale of the resident program assets

04:21:44 20    pursuant to the Bankruptcy Court's Sale Order could take

04:21:47 21    place as of 12:01 a.m. tomorrow.  That's less than eight

04:21:51 22    hours from now.  Thus, in the interest of time, I am going

04:21:55 23    to rule orally on the government's motion to stay.

04:21:58 24              I am granting the motion.

04:22:01 25              Initially, there is no dispute that the Court

04:22:03 1   has jurisdiction to consider this motion under 28 United

04:22:08 2   States Code Sections 158(a) and 1334.

04:22:10 3           Pursuant to Rule 8007 of the Federal Rules of

04:22:14 4   Bankruptcy Procedure, a party may move to stay the effect of

04:22:18 5   a bankruptcy court order pending a resolution on appeal.

04:22:21 6   The factors for the court to balance regarding whether to

04:22:24 7   issue a stay are:

04:22:25 8           (1) whether the stay applicant has made a strong

04:22:28 9   showing that it is likely to succeed on the merits; (2)

04:22:31 10  whether the applicant will be irreparably injured absent a

04:22:35 11  stay; (3) whether issuance of the stay will substantially

04:22:39 12  injure the other parties interested in the proceeding; and

04:22:40 13  (4) where the public interest lies.

04:22:41 14          And that's from the *Hilton v. Braunskill*, 481

04:22:46 15  U.S. 770, 776 (1987).

04:22:51 16          Here, the government presented its motion to

04:22:53 17  stay orally to the Bankruptcy Court at the end of a long

04:22:57 18  hearing.  The Bankruptcy Court did not expressly apply the

04:22:59 19  four factor test for evaluating whether to grant a stay.

04:23:03 20  The entirety of the Bankruptcy Court's ruling on the motion

04:23:06 21  was "I am going to deny the motion.... I do believe,

04:23:09 22  frankly, balancing the harm to the government versus the

04:23:12 23  harm to the debtors, it falls clearly within the debtors'

04:23:16 24  square here that the harm would occur if I do stay pending

04:23:19 25  appeal."  The Bankruptcy Court then noted that the

04:23:21  1    government had been given seven days to appeal to this

04:23:23  2    court, which the government has done.

04:23:25  3            The District Court applies a clearly erroneous

04:23:29  4    standard to the Bankruptcy Court's findings of fact and a

04:23:32  5    plenary standard to its legal conclusions.

04:23:34  6            In order to determine whether a stay should

04:23:36  7    issue, I consider the four-factor test that has just been

04:23:40  8    referenced, and that was presented in the briefing submitted

04:23:43  9    and argued here today.

04:23:45 10            As to the first factor, in the Third Circuit, a

04:23:47 11    sufficient degree of success for a strong showing exists if

04:23:50 12    there is "a reasonable chance, or probability, of winning."

04:23:54 13    That's *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir.

04:24:03 14    2015) (quoting the Third Circuit's *en banc* decision in

04:24:12 15    *Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 229

04:24:17 16    (3d Cir. 2011).  It "is not enough that the chance of

04:24:18 17    success on the merits be 'better than negligible,'" but that

04:24:20 18    being said, the likelihood of winning on appeal need not be

04:24:23 19    "more likely than not."  That's also from *In re Revel AC,*

04:24:28 20    *Inc.*, 802 F.3d at 569.  The question the Third Circuit asked

04:24:31 21    in *Revel* was "did the applicant make a sufficient showing

04:24:35 22    that...it can win on the merits" by a showing "significantly

04:24:39 23    better than negligible but not necessarily greater than 50

04:24:42 24    percent."  That's *In re Revel AC, Inc.*, 802 F.3d at 571.

04:24:46 25            Here I find that the government has made a

04:24:48  1    sufficient showing that it has a "reasonable chance" of

04:24:50  2    succeeding on appeal under the Third Circuit standard.  In

04:24:56  3    making this finding, I note that the issues on appeal are

04:24:59  4    complex and difficult.  The Bankruptcy Court agreed,

04:25:02  5    observing the complexity of the issues on a number of

04:25:05  6    occasions, and offering that they were the type to keep a

04:25:09  7    judge awake at night and that the court was at times

04:25:13  8    treading on thin ice.

04:25:15  9         Here, the government has asserted at least six

04:25:17 10    bases upon which it asserts that the Bankruptcy Court erred.

04:25:21 11    In the interests of time, I will address two:

04:25:22 12         The first issue relates to whether the hospital

04:25:24 13    has ceased to provide services to the community under the

04:25:28 14    statute.  According to 42 CFR Section 489.52(b)(3), a

04:25:36 15    cessation of business is a termination effective on the date

04:25:39 16    it stopped providing services to the community.

04:25:43 17         The Debtor argues that the Bankruptcy Court's

04:25:46 18    determination that the hospital was still providing services

04:25:49 19    to the community is a factual finding that will be entitled

04:25:51 20    to deference on appeal under the clearly erroneous standard,

04:25:56 21    and therefore the government is less likely to prevail on

04:25:58 22    the merits of this issue.

04:26:00 23         It is undisputed, however, that no doctors and

04:26:03 24    no patients remain at Hahnemann.  All of the former

04:26:06 25    Hahnemann residents have gone to new hospitals eligible for

04:26:10  1    temporary funding through the end of their residencies.

04:26:11  2            Additionally, the portions of the transcript

04:26:13  3    cited by the Debtor in a footnote in their papers and here

04:26:17  4    on the phone to support its argument that the hospital is

04:26:20  5    still providing services to the community state only that

04:26:24  6    the hospital was providing referral services, forwarding

04:26:28  7    copies of medical records, and subletting to other testing

04:26:31  8    services.  There is no case law or regulation cited

04:26:35  9    supporting the assertion that such activities meet the

04:26:40 10    "services" of the statutory requirement.  And there is a

04:26:43 11    significant question as to whether that is what is covered

04:26:45 12    in "providing services to the community" in the statute.

04:26:49 13    Thus, I find that CMS has demonstrated substantial

04:26:53 14    likelihood that the Bankruptcy Court's finding that the

04:26:56 15    hospital is still providing services to the community was

04:26:59 16    clearly erroneous.

04:27:00 17            The second issue that I will address involves

04:27:02 18    the question of whether the provider agreement is a

04:27:06 19    statutory right that the Debtors are entitled to sell under

04:27:09 20    section 363 or whether it is an executory contract subject

04:27:12 21    to section 365.

04:27:14 22            The government asserts that the Bankruptcy Court

04:27:20 23    erred in that the Sale Order improperly authorizes the sale

04:27:20 24    of the resident program under the provider agreement free

04:27:23 25    and clear pursuant to section 363 of the Bankruptcy Code,

04:27:27  1   when the provider agreement is an executory contract that

04:27:30  2   cannot be assigned without satisfying the requirements of

04:27:33  3   section 365 to cure defaults, provide adequate assurance of

04:27:38  4   future performance and obtain the consent of CMS.

04:27:41  5        In response, Debtors cite to cases from the 11th

04:27:44  6   Circuit and the 9th Circuit referring to certain Medicare

04:27:47  7   agreements as statutory rights.  And also the case from the

04:27:51  8   district court in Florida.

04:27:52  9        In the Third Circuit, however, in *In re*

04:27:56 10   *University Medical Center,* 973 F.2d 1065, 1075 (3d Cir.

04:28:02 11   1992), a Medicare provider agreement was treated as an

04:28:06 12   executory contract that may be assumed and assigned pursuant

04:28:10 13   to section 365 of the Bankruptcy Code.  While in that case,

04:28:13 14   the Third Circuit did not squarely address whether the

04:28:16 15   provider agreement was an executory contract, it repeatedly

04:28:20 16   referred to the provider agreement as an executory contract,

04:28:23 17   and the entirety of the Court's reasoning as to whether

04:28:27 18   section 365 requirements were met was based on its

04:28:31 19   understanding that the provider agreement was an executory

04:28:34 20   contract.

04:28:34 21        Moreover, while the Debtor focuses on whether

04:28:38 22   statutory rights are assignable as a general matter, the

04:28:40 23   applicable statutes make the reassignment of residency spots

04:28:45 24   CMS's responsibility to determine based on community need.

04:28:48 25   And the parties have cited to me no case where the

04:28:50 1    assignment of these particular rights or similar ones to

04:28:54 2    them have been approved by a Bankruptcy Court.

04:28:58 3            I thus find that CMS has raised a substantial

04:28:59 4    question of whether the Bankruptcy Court erred in applying

04:29:02 5    section 363.

04:29:04 6            As to the second factor of the stay analysis,

04:29:07 7    the applicant for a stay must "demonstrate that irreparable

04:29:12 8    injury is likely in the absence of the stay."  That's

04:29:17 9    *Winters v. Natural Resources Defense Council, Inc.*, 555 U.S.

04:29:21 10   7, 22 (2008).

04:29:23 11           Irreparable harm is an injury that "cannot be

04:29:25 12   redressed by a legal or equitable remedy following a trial."

04:29:30 13   That is from *Novartis Consumer Health, Inc. v. Johnson &*

04:29:35 14   *Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578 at 595 (3d

04:29:41 15   Cir. 2002).

04:29:42 16           Here, the Court concludes that the government

04:29:44 17   has demonstrated that it will likely suffer irreparable harm

04:29:48 18   in the absence of a stay.

04:29:50 19           Section 5506 of the ACA requires the Secretary

04:29:56 20   to redistribute the residency slots upon a hospital's

04:30:00 21   closing.  The sale here, if closed, however, is likely to

04:30:03 22   prevent the Secretary from exercising that statutory

04:30:06 23   authority and thus violate the Medicare Program laws and

04:30:09 24   regulations.

04:30:10 25           Moreover, despite the arguments that the

government's asserted injuries can be compensated with money, that ignores that the CMS-funded residency slots are limited by statute, making the slots a limited resource that CMS may permanently lose the ability to distribute.

And CMS has established that the precedent set by the Sale Order - even if not binding in other circuits - likely irreparable harms CMS by undermining its authority to carry out its responsibilities in redistributing residency slots upon the closing of a hospital.  Even the Debtors here assert that it should create persuasive authority for other courts to follow.

Finally, "where the denial of the stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied." That's *Williams v. Republic (In re Cujas),* 376 B.R. 480, 487 from the Eastern District of Pennsylvania Bankruptcy Court 2007.  I understand that the risk of mootness is not, by itself, sufficient to demonstrate irreparable harm to justify a stay, this risk is a factor that courts may consider.  As the Third Circuit has stated in *Republic of Philippines v. Westinghouse Electric Corp.,* 949 F.2d, 653, 658 (3d Cir. 1991), however, "certainly, the fact that the decision on the stay may be dispositive of the appeal ... is a factor that an appellate court must consider" in determining whether irreparable harm will result from the

04:31:45  1    denial of a stay.

04:31:46  2              Here, there appears to be a substantial risk of

04:31:49  3    mootness.

04:31:50  4              If the sale goes through, CMS will likely lose

04:31:53  5    its right to pursue an appeal on an important issue

04:31:56  6    affecting the Medicare trust fund and its funding of the

04:31:59  7    training of doctors under the residency program.  Under the

04:32:01  8    test for mootness in the Third Circuit, absent a stay, the

04:32:05  9    vacation of the Sale Order would almost certainly affect the

04:32:08 10    validity of the sale.  Indeed, even the Debtors have not

04:32:11 11    argued that CMS's rights would be unaffected if the sale is

04:32:15 12    permitted to close.

04:32:16 13              CMS thus has demonstrated that, in the absence

04:32:19 14    of a stay, its appeal on complex and important issues may be

04:32:20 15    rendered moot by events and the passage of time.  That

04:32:24 16    favors the grant of a stay.

04:32:26 17              Having found that the government has made a

04:32:28 18    sufficient showing as to the first two factors, I will turn

04:32:31 19    to the third factor - balancing the equities.  This factors

04:32:35 20    calls for "assessing the harm to the opposing party."  That

04:32:39 21    is from *Nken v. Holder,* 556 U.S. 418, 435 (2009).

04:32:46 22              To do this, the Court must weigh the likely harm

04:32:49 23    to the movant absent a stay against the likely harm to the

04:32:52 24    stay opponent if the stay is granted.

04:32:56 25              Here, I conclude that entry of a stay will not

04:32:59 1  cause Debtors to suffer significant harm.

04:33:02 2          The Debtors and the Official Committee of

04:33:04 3  Unsecured Creditors argue that a stay would harm them

04:33:06 4  because the Outside Closing Date for the Sale is September

04:33:09 5  19, 2019 and after that date the deal may fall apart.  That

04:33:14 6  date, however, appears to be an artificial deadline set by

04:33:18 7  the parties to the deal.  If the sale is not closed by that

04:33:20 8  date, the parties are not required to abandon it.  Neither

04:33:23 9  party, here, has asserted that it will walk away from the

04:33:26 10  sale if the September 19 date slips.  Jefferson has

04:33:30 11  indicated that it would consider extending the date if it is

04:33:34 12  necessary to do so.  As the government pointed out in its

04:33:38 13  reply papers, the Asset Purchase Agreement previously filed

04:33:41 14  in the Bankruptcy Court defines "Outside Closing Date" as

04:33:45 15  "September 6, 2019 or such other date as Seller and

04:33:46 16  Purchaser may agree."  And the parties have already moved

04:33:50 17  the outside date once.

04:33:52 18          Moreover, it appears that Jefferson cannot fill

04:33:55 19  any of the residency slots until sometime in 2020.  And

04:33:58 20  there is no evidence that the residency slots - which are

04:34:01 21  the asset at issue - will lose value if the stay is granted.

04:34:05 22          The Debtors also claim that the Pennsylvania

04:34:08 23  Department of Health may revoke Hahnemann's license, which

04:34:12 24  would irreparably harm the Debtors.  If the Department of

04:34:15 25  Health, however, is entitled to terminate Hahnemann's

04:34:19  1   license because Hahnemann no longer operates, the

04:34:21  2   termination of Hahnemann's license by the Pennsylvania

04:34:23  3   Department of Health in bankruptcy would not be a

04:34:27  4   preventable harm, but merely a state enforcing the law

04:34:32  5   because the hospital does not meet the state's requirements.

04:34:35  6          The Debtors also claim that they are harmed

04:34:37  7   because they must continue to provide services at Hahnemann.

04:34:40  8   The Bankruptcy Court, however, concluded in the Sale Order

04:34:43  9   that Hahnemann is deemed to be doing business as long as the

04:34:46 10   sale is closed within a week of the order becoming effective

04:34:49 11   - which presumably could occur after the stay is lifted.

04:34:53 12          Lastly, in balancing the equities, the Debtors

04:34:56 13   and the Committee claim that the sale would provide

04:34:59 14   "much-needed liquidity" to market and sell other assets and

04:35:00 15   pay creditors.  This however is the nature of a bankruptcy

04:35:04 16   proceeding and essentially true in all cases in which a stay

04:35:08 17   of a sale is sought.  I am sympathetic to the Debtors'

04:35:13 18   desire to monetize its assets, but there do remain here

04:35:17 19   significant issues as to whether it can sell the particular

04:35:20 20   assets at issue.

04:35:21 21          Finally, the fourth factor that the court

04:35:25 22   considers in a stay analysis is where the public interest

04:35:28 23   lies.  Here, the government has demonstrated that the public

04:35:31 24   interest favors granting a stay.

04:35:33 25          This case presents substantial issues involving

04:35:38  1    complex regulations and novel arguments.   The end result

04:35:43  2    could go either way.   The Bankruptcy judge recognized this -

04:35:49  3    noting as I said before that it was a difficult case and at

04:35:50  4    times he was treading on thin ice.   Essentially, preserving

04:35:54  5    the status quo and giving the parties time to ensure that

04:35:59  6    the result is correct is in the public interest.

04:36:00  7          Additionally, as I stated earlier, section 5506

04:36:04  8    of the Affordable Care Act provides the Secretary with the

04:36:08  9    authority to redistribute a closed hospital's permanent

04:36:14 10    Residency Slots by "establishing a process" to "increase the

04:36:17 11    otherwise applicable resident limit...for other hospitals."

04:36:20 12          Thus, by statute, Hahnemann's closure should

04:36:25 13    allow other hospitals to participate in the redistribution

04:36:29 14    process.   Other hospitals would have an opportunity to

04:36:29 15    increase their own number of resident by applying for

04:36:33 16    Residency Slots and articulate why they should be able to

04:36:36 17    expand their respective training programs.   It is in the

04:36:38 18    public's interest that other hospitals serving critical

04:36:42 19    needs have that opportunity.

04:36:44 20          In sum, I find that each of the four factors

04:36:47 21    weighs in favor of granting a stay, and I will grant the

04:36:50 22    government's motion.   Effective immediately, the

04:36:52 23    effectiveness of the Bankruptcy Court's Sale Order is stayed

04:36:56 24    pending final resolution of the government's appeal of that

04:37:01 25    Sale Order.

04:37:01  1          So that's my ruling.  We will issue a separate

04:37:05  2   order should the parties wish to take further action, but is

04:37:12  3   there anything else that we need to address at this moment?

04:37:19  4          MR. SACKS:  Not for the United States, Your

04:37:21  5   Honor.  Thank you.

04:37:23  6          MR. MINUTI:  Nothing from the Debtor.  Thank you

04:37:25  7   for your time.

04:37:25  8          THE COURT:  Okay.

04:37:31  9          MR. SHERMAN:  Your Honor, Andrew Sherman for the

04:37:32 10   Committee.  If Your Honor because of the timing of this

04:37:34 11   would consider expedited nature of the appeal and expedited

04:37:40 12   schedules, is that appropriate now, Your Honor or in a

04:37:41 13   separate motion?

04:37:41 14          THE COURT:  So the way this works is I have this

04:37:43 15   motion because I was the duty judge last week.  The case

04:37:46 16   will be assigned either to me or to another district court

04:37:49 17   judge on Wednesday.  So I think that's an issue that should

04:37:54 18   be addressed with the judge that receives the case on

04:37:58 19   Wednesday.

04:38:00 20          MR. SHERMAN:  Thank you, Your Honor.

04:38:03 21          THE COURT:  Okay.  With that, then we'll get the

04:38:07 22   order issued.

04:38:07 23          Thank you very much.

        24          (Teleconference ended at 4:38 p.m.)

        25

1          I hereby certify the foregoing is a true
and accurate transcript from my stenographic notes in the
2    proceeding.

3

                                    /s/ Dale C. Hawkins
4                                  Official Court Reporter
                                     U.S. District Court
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL *et al.*, | Case No. 19-11466 (KG) |
| | (Jointly Administered) |
| Debtors. | **Re: Docket No. 681** |

**STATUS REPORT REGARDING STAY PENDING APPEAL
OF HAHNEMANN SALE ORDER ENTERED BY DISTRICT COURT**

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: CENTER CITY HEALTHCARE, LLC, d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.,*<br><br>Debtors. | )<br>)<br>)<br>)<br>)<br>) | Chapter 11<br>Bankruptcy No. 19-11466 (KG)<br>(Jointly Administered) |
| UNITED STATES OF AMERICA,<br><br>Appellant,<br><br>v.<br><br>CENTER CITY HEALTHCARE, LLC, d/b/a HAHNEMANN UNIVERSITY HOSPITAL and THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.,<br><br>Appellees. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 19-1711 (UNA) |

## **ORDER**

At Wilmington this 16th day of September 2019, for the reasons set forth on the record, it is HEREBY ORDERED that:

1.     The *United States' Emergency Motion for Stay Pending Appeal* (D.I. 4) is GRANTED.

2.     The Bankruptcy Court's *Order Under 11 U.S.C. §§ 105, 106, 363, 365, 503, 507, and 525 (A) Approving Asset Purchase Agreement with Thomas Jefferson University Hospitals, Inc., (B) Authorizing Sale of Certain of Debtor's Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the Debtor's Executory Contracts, and (D) Granting Related Relief*, dated September 10, 2019 (B.D.I. 681) ("Sale Order"), is STAYED pending final resolution of the United States' appeal (D.I. 1) of that Sale Order.

The Honorable Maryellen Noreika
United States District Judge