**EXHIBIT B**

**(Redline - Sale Order)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
|  | ) |
|  | ) **Re: Docket No. 205** |
| Debtors. | ) |

### ORDER UNDER 11 U.S.C. § 105, 363, 365, 503 AND 507 (A) APPROVING ASSET PURCHASE AGREEMENT WITH STC OPCO, LLC (B) AUTHORIZING SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF INTERESTS, (C) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[2] [D.I. 205] of the above captioned Debtors (the

"Debtors"), for, *inter alia*, entry of an order, pursuant to sections 105, 363, 365, 503 and 507 of

title 11 of the United States Code (the "Bankruptcy Code"): (i) approving the sale by Debtor St.

Christopher's Healthcare, LLC ("STC") and certain other Debtors (defined in the Sale Motion as

the "STC Practice Groups" and collectively with STC referred to herein as the "STC Entities") of

certain Assets, free and clear of all encumbrances, and (ii) authorizing the assumption by the

Debtors and assignment to the purchaser of the Assets of executory contracts designated by such

purchaser free and clear of all encumbrances, and (iii) granting certain related relief; and the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion or the Agreement (defined below) as applicable.

1" = "1" "09/20/2019 SL1 1604825v5 006375.01166" "" 09/20/2019 SL1 1604825v5 006375.01166 09/26/2019 SL1 1606119v5 006375.01166

35933184.3 09/20/2019

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166

35933560.1 09/26/2019 09/26/2019 SL1 1606744v1 006375.01166

Court having entered an order (the "Bidding Procedures Order") [D.I. 301] pursuant to which, *inter alia*. the Court approved procedures for the sale of the Assets; and the Debtors having identified STC Opco, LLC (the "Purchaser") as the Successful Bidder (as defined in the Bidding Procedures Order) for the Assets; and the Debtors having filed a copy of an agreement (the "Original Agreement") between the STC Entities and the Purchaser stating the terms of the Successful Bid (as defined in the Bidding Procedures Order) [D.I. 753]; and the Court having held a hearing on September 23, 2019 (the "Sale Hearing") to approve the Sale Motion and the Agreement; and the STC Entities and the Purchaser having made certain modifications to the Original Agreement after the Sale Hearing; and the revised version of the Original Agreement incorporating those modifications (hereafter referred to as the "Agreement") being attached hereto as Exhibit "A," and the Court having reviewed and considered (a) the Sale Motion, (b) the Agreement, (c) the objections to the Sale Motion, if any, and (d) the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing and after due deliberation thereon; and good cause appearing therefore,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (M), (N) and (O) O), and the Court may enter a final order consistent with Article III of the United States

Constitution.. The statutory predicates for the relief requested in this Sale Motion are sections 105, 363, 365, 503, 507 and 525 of the Bankruptcy Code.

   B. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

   C. Proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing and the Debtors' assumption and assignment (or assignment, as applicable) of the contracts and leases listed on **Exhibit B** hereto (as such list may be modified in accordance with the Agreement, the "Assigned Contracts") to the Purchaser has been provided in accordance with sections 102(1), 363, 365, 503 and 507 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, 6006, 9008 and 9014 and the Bidding Procedures Order, and no other or further notice of the Sale Motion, the Sale Hearing, or of the entry of this Order is required.

   D. A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion has been afforded to all interested persons and entities including by serving the Sale Notice in the manner required by, and on or before the deadline stated in, the Bidding Procedures Order on: (1) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin Hackman, Esq.); (2) counsel to the Official Committee of Unsecured Creditors, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102 (Attn: Andrew H. Sherman, Esq. and Boris I. Mankovetskiy, Esq.); (3) counsel to MidCap, Debtors' prepetition secured lender and DIP Agent, Stradley, Ronan, Stevens & Young, LLP, 2005 Market Street, Suite 2600, Philadelphia, PA 19103 (Attn: Gretchen M. Santamour, Esq.) and 1000 N. West Street, Suite 1279,

3

Wilmington, DE 19801 (Attn: Joelle E. Polesky, Esq.); (4) Drexel University d/b/a Drexel University College of Medicine; (5) the Debtors' unions; (6) the United States Attorney for the District of Delaware; (7) the United States Department of Justice; (8) the Pennsylvania and New Jersey Attorney General's Offices; (9) the Pennsylvania Department of Health; (10) the City of Philadelphia; (11) all parties known by the Debtors to assert a lien on any of the Assets; (12) all non-Debtor parties to any of the Assumed Contracts; (13) all persons known to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve months prior to the Petition Date; (14) the Office of the Secretary of State for the Commonwealth of Pennsylvania; (15) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (16) the Securities and Exchange Commission; (17) the United States Environmental Protection Agency; (18) the Pennsylvania Department of Environmental Protection; (19) the New Jersey Department of Environmental Protection; (20) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service; and (21) all of the Debtors' known creditors and equity holders for whom identifying information and addresses are available to the Debtors, including all current and former patients of the STC Entities who, as of the date of the Bidding Procedures Order (the "Bidding Procedures Order Date"), had asserted claims against any STC Entity, including but not limited to claims formally asserted by the filing of suit or a proof of claim in these Bankruptcy Cases and claims informally asserted by letter or by a request for medical records from a lawyer or otherwise (the "Known Patient Creditors").

   E.  The Debtors also caused the Sale Notice, modified in a manner appropriate for publication, to be published in The *Philadelphia Inquirer* and *The Wall Street Journal* on or before the deadline stated in the Bidding Procedures Order, which notice by publication is

4

reasonable and sufficient to bind holders of claims against the STC Entities whose identity was not known to the Debtors as of the day before the Bidding Procedures Order Date, including all patients of any STC Entity who was not a Known Patient Creditor as of the Bidding Procedures Order Date.

F.      The STC Entities have full corporate power and authority to execute the Agreement and all other documents contemplated thereby and consummate the transactions contemplated therein and the sale of the Assets and assumption and assignment (or assignment, as applicable) to the Purchaser of the Assigned Contracts  (collectively, the "Sale") has been duly and validly authorized by all necessary corporate action of the STC Entities and no consents or approvals, other than the approval of this Court, are required for the STC Entities to consummate such transactions.

G.      The Purchaser is not a successor to or mere continuation of the Debtors (including the STC Entities) or their estates.

H.      The bidding procedures established pursuant to the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any entity to make a higher or better offer to purchase the Assets and Assigned Contracts and no higher or better offer has been made.

I.      The Debtors have demonstrated that it is an exercise of the STC Entities' sound business judgment to enter into the Agreement and assume and assign the Assigned Contracts and sell the Assets to the Purchaser in connection with the consummation of the Agreement, and that approval of the Agreement and the Sale pursuant thereto is in the best interests of the Debtors (including each STC Entity) and their estates.

J.      The Sale must be completed as soon as practicable in order to preserve the value of the Assets and as a result, good and sufficient business justification exists for the Sale as

1" − "1" "09/20/2019 SL1 1604825v5 006375.01166" "" 09/20/2019 SL1 1604825v5 006375.01166
35933184.3 09/20/2019
1" − "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.1 09/26/2019
09/26/2019 SL1 1606744v1 006375.01166 09/26/2019 SL1 1606119v5 006375.01166

soon as practicable of the Assets and assumption and assignment (or assignment, as applicable) of the Assigned Contracts to the Purchaser outside of a plan of reorganization.

K.      The Purchaser is not an insider, as that term is defined in the Bankruptcy Code, of any Debtor (including any STC Entity).  Furthermore, no insiders of the Debtors are receiving or retaining any property or payments in connection with the Sale except to the extent such insiders have allowed claims against or equity interests in any STC Entity and, as a result, may participate in a distribution of Sale proceeds.

L.      STC is party to Medicare provider agreements No. 39-3307 and 39-2360 (the "Provider Agreements") with the Secretary of the United States Department of Health and Human Services ("HHS"), and its component agency, the Centers for Medicare & Medicaid Services ("CMS"), to receive payment for services provided to Medicare beneficiaries pursuant to the provisions of, and regulations, policies and procedures promulgated under, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395lll (the "Medicare Statute")

M.      L. The Agreement was negotiated, proposed and entered into by the STC Entities and Purchaser without collusion, in good faith, and as a result of arm's-length bargaining.  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby with respect to the transactions authorized by this Order (including specifically, but without limitation, any assumption and assignment of executory contracts under section 365 of the Bankruptcy Code). Neither the Debtors (including the STC Entiites) nor the Purchaser has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code.

N.      M. In the absence of a stay pending appeal, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the

6

transactions contemplated by the Agreement at any time after the entry of this Order, provided the Purchaser shall not be obligated to close until all applicable conditions to Closing under the Agreement have been satisfied or waived as provided in such Agreement.

O.   N.   The consideration provided by the Purchaser for the Assets being purchased, including the Assigned Contracts, pursuant to the Agreement constitutes the best and highest offer for the Assets and the Assigned Contracts and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof, and the District of Columbia.

P.   O.   The Subject to paragraphs 11-14 of this Order with respect to the Provider Agreements, the STC Entities may sell the Assets and Assigned Contracts free and clear of all Interests (including, without limitation, those (i) that purport to give to any party a right or option to effect any forfeiture, modification or termination of any STC Entities' or the Purchaser's interest in the Assets and/or Assigned Contracts and, (ii) in respect of Taxes), because each entity with an Interest in any of the Assets and/or Assigned Contracts, including but not limited to any "Governmental Unit," as defined in the Bankruptcy Code,, accrediting body, or other third party, as applicable, has consented to the Sale, is deemed to have consented to the Sale, has a claim which is subject to a bona fide dispute, or could be compelled in a legal or equitable proceeding to accept a money satisfaction of such Interest. For the avoidance of doubt, Interests do not include any recoupment rights of the United States otherwise available under applicable law, or other rights of HHS or CMS pursuant to the Medicare Statute.

Q.   P.   The STC Entities have good title to the Assets and Assigned Contracts and, accordingly, the transfer of the Assets and assignment of the Assigned Contracts to the

Purchaser pursuant to the Agreement will be a legal, valid, and effective transfer of the Assets and assignment of the Assigned Contracts.

R.        Q. Neither Except for HHS's or CMS's rights under the Medicare Statute, including without limitation its rights to recoup or offset overpayments under the Provider Agreements, neither the transfer of the Assets nor the assignment of the Assigned Contracts pursuant to the Agreement will subject the Purchaser to any liability (except the Assumed Obligations expressly assumed by the Purchaser pursuant to the Agreement) for claims against the Debtors (including the STC Entities) or the Debtors' (including the STC Entities') predecessors or affiliates of any kind or character, whether known or unknown, now existing or hereafter occurring, whether fixed or contingent, based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor, vicarious or transferee liability. Without limiting the general nature of the foregoing, neither the transfer of the Assets nor the assignment of the Assigned Contracts will subject the Purchaser or its affiliates to any liability (1) on account of any employee benefit plan maintained by any Debtor (including the STC Entites) or any Debtors' (including the STC Entities) predecessors or affiliates, including but not limited to any liability related to benefits, underfunding, termination and/or termination premiums, regardless when such claims are deemed to have accrued and regardless whether such would be considered "claims" as such term is defined in the Bankruptcy Code, to (i) the PBGC, or (ii) to any plan participant or beneficiary (collectively, the "PBGC Claims"); (2) except for HHS's or CMS's right to recoup or offset overpayments under the Provider Agreements, claims, administrative proceedings or actions brought by or on behalf of any Governmental Unit, accrediting body, or other third party relating to the operation of the Hospital Business or Physician Practice Business prior to the effective time of Closing; and/or

8

(3) except for HHS's or CMS's right to recoup or offset overpayments under the Provider Agreements, claims or actions or proceedings brought under Medicaid statutes or regulations or the statutes and regulations applicable to other governmental health care reimbursement programs including enforcement actions and administrative agency rulings or interpretations, including claims of the Pennsylvania Department of Health related, in any way, to the participation in the Medicaid program by any STC ~~Entitiy~~Entity prior to the effective time of Closing.

S. ~~R.~~ The Purchaser has provided adequate assurance of future performance under the Assigned Contracts to the extent required by section 365(b)(1)(C) of the Bankruptcy Code.

T. ~~S.~~ Upon the assumption and assignment (or assignment, as applicable) of the Assigned Contracts, as provided herein, the Purchaser shall succeed to all of the right, title and interest of the STC Entities under the Assigned Contracts including, without limitation, the right to exercise renewal options which, pursuant to any provision of the applicable Assigned Contract or applicable nonbankruptcy law, are not exercisable by assignees of the STC Entities, the Court having found that such provisions, as they relate to the assumption and assignment (or assignment, as applicable) to the Purchaser of the Assigned Contracts, are unenforceable restrictions pursuant to section 365(f)(3) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED THAT:

1. The Sale Motion, and the relief sought therein (including approval of the Sale) is GRANTED, in all respects as set forth herein.

1" − "1" "09/20/2019 SL1 1604825v5 006375.01166" "" 09/20/2019 SL1 1604825v5 006375.01166
3593184.3 09/20/2019
1" − "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166
3593560.1 09/26/2019
09/26/2019 SL1 1606744v1 006375.01166 09/26/2019 SL1 1606119v5 006375.01166

2. ~~All~~The Supplemental Objection of Temple University Health System, Inc., Temple University Hospital, and Temple University Lewis Katz School of Medicine Regarding Sale [D.I.758] has been withdrawn for the reasons as set forth on the record at the Sale Hearing and all other objections to the Sale Motion or the relief requested therein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3. The Agreement, each document, instrument, and agreement contemplated thereby, and all of the terms and conditions thereof, is hereby approved.

4. Pursuant to sections 105(a), 363(b) and 365 of the Bankruptcy Code, the Debtors are authorized and directed to take all actions necessary to consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement.

5. As of the Closing Date, the Assigned Contracts that are executory contracts or unexpired leases shall be deemed to have been assumed by the applicable STC Entity and assigned to the Purchaser pursuant to section 365(f) of the Bankruptcy Code. Pursuant to section 365(k) of the Bankruptcy Code, the applicable STC Entities' estate shall be relieved from any liability for any breach of an Assigned Contract occurring after the Closing Date. As of the Closing Date, the Assigned Contracts that are not executory contracts or unexpired leases shall be deemed to have been assigned to the Purchaser pursuant to section 363(b) of the Bankruptcy Code.

6. On the Closing Date, or as soon as reasonably practical thereafter, the Purchaser shall pay to the non-debtor party to each Assigned Contract as to which a liquidated cure amount is stated on **Exhibit B** (the "<u>Liquidated Cure Amount</u>") such Liquidated Cure Amount.

10

7.      As to contracts for which a Liquidated Cure Amount is not stated in **Exhibit B** (each a "Disputed Cure Contract"), the amount claimed by the non-debtor party to such Assigned Contract (the "Maximum Unliquidated Cure Amounts") is stated in **Exhibit B**. For the avoidance of doubt, the Maximum Unliquidated Cure Amounts stated on **Exhibit B** shall be the maximum amount of any subsequently allowed claim to which any non-debtor party to an Disputed Cure Contract shall be entitled pursuant to section 365(b)(1)(A) of the Bankruptcy Code, except as to HHS or CMS under the Provider Agreements.  The cure amounts in dispute as of the Closing Date are hereafter referred to as the "Disputed Cure Amounts."

8.      UponSubject to paragraphs 11-14 of this Order with respect to the Provider Agreements, upon payment of the Liquidated Cure Amounts to the applicable non-debtor parties, (i) all defaults under the related Assigned Contracts required to be cured pursuant to section 365(b)(1)(A) of the Bankruptcy Code shall be deemed cured and all amounts due to the non-debtor parties to, and beneficiaries of, such Assigned Contracts (including any Governmental Unit (other than CMSHHS or CMS under the Provider Agreements), accrediting body or other third party) pursuant to section 365(b)(1)(B) on account of any pecuniary loss resulting from such defaults shall be deemed paid in full, and (ii) each non-debtor party to such Assigned Contracts shall be forever bound by such Liquidated Cure Amounts and enjoined from seeking to terminate such Assigned Contract or enforce any other remedies under such Assigned Contract against the Purchaser on account of defaults by the Debtors, including defaults as to which, pursuant to section 365(b)(1)(A) of the Bankruptcy Code, cure is not required.

1" − "1" "09/20/2019 SL1 1604825v5 006375.01166" "" 09/20/2019 SL1 1604825v5 006375.01166
35933181.3 09/20/2019
1" − "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.1 09/26/2019
09/26/2019 SL1 1606744v1 006375.01166 09/26/2019 SL1 1606119v5 006375.01166

9.      Upon liquidation of any Disputed Cure Amount (by settlement or by entry of an order of this Court), the Purchaser shall promptly pay such liquidated amount to the applicable counterparty.

10.     On and after the Closing Date, the Purchaser shall have the sole authority to contest and settle any Disputed Cure Amounts and shall not require Court approval of any such settlements.  Upon liquidation of any Disputed Cure Amount, such liquidated amount shall become a Liquidated Cure Amount and, upon payment (including by way of offset) the provisions of paragraph 8 above shall apply to such Assigned Contract and the applicable counterparty. For so long as the Debtors' bankruptcy cases remain open, within a reasonable time following the settlement of any Disputed Cure Amount, the Purchaser shall file a notice of such settlement on the docket.

11.     For the avoidance of doubt, nothing in this Order shall limit, modify, or in any way affect the United States Secretary (the "Secretary") of Health and Human Services' police and regulatory powers and authority to regulate the Debtors' or the Purchaser's enrollment or participation as a Medicare provider or supplier (to the extent the Purchaser enrolls or participates as a Medicare supplier) or the right and authority of the Secretary, CMS or its contractors to review, approve, deny, set-off, recoup, or pay Medicare claims in the ordinary course of business in accordance with the Medicare Statute and regulations, and the policies and procedures thereunder. Nothing herein shall be construed as the Secretary's consent to, or acceptance of, the Agreement or any underlying transactions described in or supporting the Agreement.

12.     For the avoidance of doubt, notwithstanding anything to the contrary in this Order or the Agreement, the Provider Agreements shall not be sold pursuant to section 363

12

of the Bankruptcy Code but shall be assumed and assigned, including, without limitation, any and all liability arising from or under the Provider Agreements, pursuant to and in accordance with section 365 of the Bankruptcy Code and the Medicare Statute, the regulations promulgated under the Medicare Statute, and CMS's Medicare policies and procedures.  Nothing in this Order shall be construed as authorizing the sale, transfer, or assignment of any Medicare provider agreements free and clear of successor liability, nor as restricting the United States' rights of setoff and recoupment.

13.    For the avoidance of doubt, notwithstanding any other provision of this Order, the Agreement, or any other document implementing the Sale,  (i) no Debtor shall assume and assign or otherwise transfer any national provider identifier, provider transaction access number or Medicare enrollment agreement to the Purchaser; and (ii) no Debtor shall loan or otherwise permit the Purchaser to use or submit claims under a Debtor's provider transaction access number or Medicare enrollment agreement; except, in each case, in accordance with the Medicare Statute, the regulations promulgated under the Medicare Statute, and CMS's Medicare policies and procedures and with the approval of CMS.

14.    Any cure amount set forth by Debtors is not binding on the United States, and shall not be interpreted to set a cure amount related to the Provider Agreements or limit successor liability with respect to the Provider Agreements that are assumed and assigned to Purchaser. At Closing, unless otherwise agreed by the Department of Justice (on behalf of the Department of Health and Human Services), on account of STC's estimated Medicare liabilities, there shall be paid via wire transfer of immediately available funds to an account designated by the Department of Justice such amount as is agreed upon by the Purchaser, the Debtors and the Department of Justice (on behalf of the Department of Health and Human Services). STC shall

13

pay the first two hundred thousand dollars ($200,000.00) of such amounts at Closing, unless otherwise agreed by the Department of Justice (on behalf of the Department of Health and Human Services), and the Purchaser shall pay any balance.

15.     11. Any provision in any Assigned Contract that purports to declare a breach, default or payment right as result of an assignment or a change of control in respect of the applicable STC Entity or the Debtors as relates to the assumption of any Assigned Contract by an STC Entity and assignment of such Assigned Contract to the Purchaser is unenforceable, and all such Assigned Contracts shall remain in full force and effect, notwithstanding any such provision.   No sections or provisions of any Assigned Contract that purports to provide for additional payments, rent accelerations, assignment fees, increases, payments, deposits, security, charges or any other fees charged to the Purchaser or the applicable STC Entity as a result of the assumption and the assignment of the Assigned Contracts (or assignment, as applicable) to the Purchaser shall have any force and effect with respect to the transactions contemplated by the Agreement and assignments authorized by this Order, and such provisions are unenforceable under sections 363(l), 365(e)(1), 365(f), or 541(c)(1) of the Bankruptcy Code, as applicable.

16.     12. Except for the Assumed Obligations and except as provided in paragraphs 11-14, with respect to the Provider Agreements, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing under the Agreement, the Assets and the Assigned Contracts shall be free and clear of all (i) mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, rights of offset, judgments, demands, encumbrances and claims (as that term is defined in the Bankruptcy Code), (ii) rights or options to effect any forfeiture, modification, repurchase, or termination of any STC Entities' or Purchaser's interest in the Assigned Contracts and/or Assets, regardless whether such are

14

"claims" as that term is defined in the Bankruptcy Code, (iii) PBGC Claims, (iv) claims in respect of Taxes (including taxes as to which applicable returns have not yet been filed, whether or not overdue), and (v) easements, restrictions, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, regardless whether such are "claims" as that term is defined in the Bankruptcy Code (collectively, items (i) to (v) above, with the exception of any rights arising under the Medicare Statute with respect to the Provider Agreements are referred to as "Interests"), with all such Interests to attach to the Net Proceeds of Sale (defined below) in the order of their respective priorities, with the same validity, force and effect (if any) which they now have against the Assets and Assigned Contracts, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  The "Net Proceeds of Sale" is the Purchase Price, as adjusted pursuant to the Agreement, minus other costs of sale.

17.    13. The Debtors are authorized to disburse funds from the Net Proceeds of Sale to MidCap Funding IV Trust up to the amount, and in repayment of the DIP Obligations, as defined in the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Granting Adequate Protection and Modifying the Automatic Stay* (the "Final DIP Order") [Docket No. 557].  Any payment of the DIP Obligations shall be subject to the reservation of rights of the Committee and MidCap Funding IV Trust as set forth in the Final DIP Order and the *Stipulation With MidCap Funding IV Trust Determining Certain Committee Rights Pursuant to Final DIP Financing Order* [Docket No. 686].

1" − "1" "09/20/2019 SL1 1604825v5 006375.01166" "" "" 09/20/2019 SL1 1604825v5 006375.01166
3593184.3 09/20/2019
1" − "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "" 09/20/2019 SL1 1605864v2 006375.01166
3593560.1 09/26/2019
09/26/2019 SL1 1606744v1 006375.01166 09/26/2019 SL1 1606119v5 006375.01166

18.    14. AllExcept as provided in paragraphs 11-14 with respect to the Provider Agreements, all persons are hereby enjoined from asserting, prosecuting or otherwise pursuing any claim against the Purchaser to recover on any claims (regardless of when accrued and regardless whether meeting the definition of "claim" under the Bankruptcy Code) such person had, has or may have (other than an Assumed Obligation) against (x) the Debtors, their estates, officers, directors, shareholders, the Assets or the Assigned Contracts, or (y) the Purchaser in connection with the negotiation of, and any agreements contained in, related to or conditioned upon, the Agreement. The foregoing injunction shall be deemed to include conditioning entry by the Purchaser into a new managed care agreement with any Medicaid managed care company on payment, or agreement to be subject to offset for payment, of claims of such Medicaid managed care company against any Debtor, including any of the STC Entities.

19.    15. As of the Closing Datedate of this Order, each of the Debtors' (including the STC Entities) creditors is authorized and directed to (a) deliver to the Purchaser any document required to be delivered under the Agreement which is subject to a non-disclosure or similar agreement provided the Purchaser agrees to hold such agreement confidence pursuant to the same terms that apply to the Debtors, and (b) execute such documents and take all other actions as may be necessary to release its Interests in or claims against the Assets and Assigned Contracts, if any, as such Interests or claims may have been recorded or may otherwise exist.

20.    16. EachNotwithstanding that nothing in this Order or the Agreement shall restrict HHS's or CMS's  regulatory powers established by the provisions of, and regulations promulgated under the Medicare Statute or require CMS to approve the transaction set forth in the Agreement as a CHOW pursuant to 42 C.F.R. § 489.18, and subject to paragraphs 30, 31, 32, and 33 of this Order, each and every Governmental Unit shall be, and hereby is, directed to

16

accept (i) this Order as sufficient evidence of the transfers of all right, title, and interest in, to, and under the Assets and the Assigned Contracts, and are authorized to rely on this Order in consummating, or facilitating the consummation of, the transactions contemplated by the Agreement, and (ii) any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

21.    17. UponSubject to paragraphs 11-14 of this Order with respect to the Provider Agreements, upon the occurrence of the Closing, all Interests in, against, or upon the Assets or the Assigned Contracts shall be unconditionally released, terminated, and discharged without the need for any further action.  Notwithstanding the foregoing, at the Closing, or as soon as practicable thereafter, (x) the Debtors (including the STC Entities) and the Purchaser are hereby authorized to execute and file such termination statements, instruments of satisfaction, releases, or other documents to reflect the unconditional release, termination, and discharge of such Interests on behalf of such person or entity with respect to the Assets and the Assigned Contracts, and (y) the Purchaser is hereby authorized on behalf of each holder of a purported Interest to file, register, or otherwise record a copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the unconditional release, termination, and discharge of all Interests in, against, or upon the Assets or the Assigned Contracts.  The provisions of this Order authorizing the sale of the Assets (including the Assigned Contracts) free and clear of all Interests are self-executing and, notwithstanding the failure of the Debtors, the Purchaser or any other party to execute, file or obtain termination statements, instruments of satisfaction, releases, or other documents to reflect the release, termination, and discharge of any such Interests, all such Interests shall be deemed divested immediately upon Closing.

17

22.    18. All entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser on the Closing Date.

23.    19. As of the Closing Date, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the transactions contemplated by the Agreement.

24.    20. To the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets or the Assigned Contracts on account of the filing or pendency of the Bankruptcy Cases or the consummation of the Sale. The foregoing shall be deemed to, *inter alia*, prohibit the Pennsylvania Department of Human Services from conditioning its entry into a provider agreement with the Purchaser for participation by the Purchaser in the Medical Assistance Program on Purchaser's payment, agreement by Purchaser to be subject to offset for payment, or Purchaser's assumption of liability with respect to any overpayments made by the Pennsylvania Department of Human Services to the Debtors.

25.    21. To Except as provided in paragraphs 11-14 with respect to the Provider Agreements, to the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date and upon the occurrence of Closing, to operate under any transferred license, permit, registration and governmental authorization or approval of the STC Entities with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

18

26.    22. No law of any state or other jurisdiction relating to bulk sales or similar laws shall apply in any way to the transaction contemplated by the Agreement, the Sale Motion, and this Order.

27.    23. For the avoidance of doubt, any privileges, protections or immunities of the Debtors for communications, documents, materials or matters arising at any time, whether before or after the Petition Date, including but not limited to any attorney-client privilege, work product doctrine, common interest or joint defense privilege, relating to any matter whatsoever, including without limitation any matter relating to the negotiation and implementation of the Agreement and any of the transactions contemplated thereby or entered into in connection therewith (collectively, "Privilege") shall not be Assets under the Agreement, and any such Privilege is owned and will continue to be owned by the Debtors, and notwithstanding anything to the contrary herein or in the Agreement, the Purchaser shall have no interest in or rights with respect to the Privilege, whether pursuant to this Order, the Agreement, or otherwise. The Privilege shall remain within the sole control of the Debtors and may not be waived by any other person or entity.

28.    24. The Agreement as well as other agreements related thereto, may be modified, amended, or supplemented by the Debtors (in consultation with the Committee) and the Purchaser without further order of the Court, provided that any such modification, amendment, or supplement either is (a) not material or (b) not less favorable to the STC Entities than the existing applicable provisions.

25.    [PLACEHOLDER FOR REASONABLE ACCESS PROVISION]

29.    26. Notwithstanding anything to the contrary in the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, any cure notice or assumption notice

19

(including, but not limited to, any Assumption Notice or Supplemental Assumption Notice), or this Order (i) none of the insurance policies or any related agreements (collectively, the "Chubb Insurance Contracts") issued at any time by any of ACE American Insurance Company, Illinois Union Insurance Company, ACE Property and Casualty Insurance Company, Federal Insurance Company, or their respective affiliates or successors (collectively, the "Chubb Companies"), or any rights, benefits, claims, rights to payments and/or recoveries under the Chubb Insurance Contracts shall be sold, assigned or otherwise transferred to the Purchaser in connection with the Sale; (ii) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (iii) for the avoidance of doubt, the Purchaser is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts; *provided, however*, that to the extent any claim with respect to the Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchaser any such insurance proceeds (each, a "Proceed Turnover"); *provided, further, however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

30.     Nothing in this Order is intended to abrogate or limit the authority or discretion of the Pennsylvania Department of Health ("DOH") over regulatory matters such as the licensing and permitting of health care facilities.

31.     The transfer to the Purchaser of the healthcare facility licenses issued to STC or the STC Entities by the DOH is subject to the prior written approval of the DOH pursuant to 35 P.S. §448.809(a)(3).

32.     Buyer's right to assign its rights under this Agreement to one or more of its affiliates prior to the Closing Date pursuant to Article 13.2 of the APA is subject to any and

1" − "1" "09/20/2019 SL1 1604825v5 006375.01166" "" 09/20/2019 SL1 1604825v5 006375.01166
35933181.3 09/20/2019
1" − "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.1 09/26/2019
09/26/2019 SL1 1606744v1 006375.01166 09/26/2019 SL1 1606119v5 006375.01166

all requirements of Pennsylvania state law relating to the licensing or permitting of health care facilities.

33.    27. This Court shall retain jurisdiction (a) to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith, (b) to compel delivery of the Assets and Assigned Contracts to the Purchaser, (c) to resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, and (d) to interpret, implement and enforce the provisions of this Order. Nothing herein shall be construed as conferring jurisdiction upon this Court for matters relating to the licensing or permitting of the Hospital under Pennsylvania law.

34.    28. Nothing contained in any plan confirmed in this case or the order confirming any plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.  Further, the provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any plan or converting the Debtors' case from chapter 11 to a case under chapter 7 of the Bankruptcy Code.

35.    29. The terms and provisions of the Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estate, its their creditors, the Purchaser and its affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting a claim against or Interest in the Debtors' estates or any of the Assigned Contracts and the Assets and any trustee appointed for any Debtor under any chapter of the Bankruptcy Code.

1" = "1" "09/20/2019 SL1 1604825v5 006375.01166" "" 09/20/2019 SL1 1604825v5 006375.01166
35933184.3 09/20/2019
1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.1 09/26/2019
09/26/2019 SL1 1606744v1 006375.01166 09/26/2019 SL1 1606119v5 006375.01166

36.    30.    The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

37.    31.    The Purchaser is a party in interest and shall have standing to appear and be heard on all issues related to or otherwise connected with this Order, the Sale or the Agreement.

38.    Herman Goldner Co., Inc. ("HG") has asserted a mechanics' lien on certain Assets.  Notwithstanding anything in this Order to the contrary, to the extent HG holds a valid, perfected and unavoidable lien on any Asset, and to the extent HG's alleged cure claim in the amount of $80,124.42, plus interest, costs, expenses and attorneys' fees, is not paid in connection with the Purchaser's assumption and assignment of the lease between Front Street Healthcare Properties, LLC and St. Christopher's Healthcare, LLC for the property located at 160 E. Erie Avenue, Philadelphia, PA, HG's lien shall attach to the proceeds of the Sale.  For the avoidance of doubt, the Debtors reserve all rights to challenge the validity and perfection of HG's asserted mechanics' lien.

39.    Nothing contained herein shall waive any transfer, stamp or similar tax with respect to the Sale.

40.    32.    Notwithstanding the provisions of Fed. R. Bankr. P. 6004 (h), 6006(d), and 7062, this Order shall be effective and enforceable immediately upon entry.

Dated:                              , 2019
            Wilmington, Delaware

22

_____
United States Bankruptcy Judge

1" − "1" "09/20/2019 SL1 1604825v5 006375.01166" "" 09/20/2019 SL1 1604825v5 006375.01166
35933181.3 09/20/2019
1" − "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.1 09/26/2019
09/26/2019 SL1 1606744v1 006375.0116609/26/2019 SL1 1606119v5 006375.01166

**EXHIBIT A**

**ASSET PURCHASE AGREEMENT**

1" = "1" "09/20/2019 SL1 1604825v5 006375.01166" "" 09/20/2019 SL1 1604825v5 006375.0116609/26/2019 SL1 1606119v5 006375.01166

35933184.3 09/20/2019

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166

35933560.1 09/26/201909/26/2019 SL1 1606744v1 006375.01166

**ASSET PURCHASE AGREEMENT**

**By and Among**

**St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC and certain affiliates (defined in the Agreement as the Debtor Parties)**

**and**

**STC OpCo LLC**

**Dated September 20, 2019**

# TABLE OF CONTENTS

**Page**

ARTICLE 1 SALE AND TRANSFER OF ASSETS; CONSIDERATION; CLOSING .................. 2

    1.1    Sale and Transfer of Assets; Purchase Price ............................ 2
    1.2    Deposit ............................................................ 32
    1.3    Closing Date ...................................................... 3
    1.4    Items to be Delivered by Sellers at Closing ........................ 3
    1.5    Items to be Delivered by OpCo Buyer at Closing .................... 4
    1.6    Prorations and Utilities ............................................ 4
    1.7    Transfer of Assets of Sellers ...................................... 5
    1.8    Excluded Assets .................................................. 7
    1.9    Assumed Obligations .............................................. 9
    1.10   Excluded Liabilities .............................................. 10
    1.11   Designation of Assumed Contracts and Assumed Leases. ............ 10
    1.12   Disclaimer of Warranties ........................................ 11

ARTICLE 2 REPRESENTATIONS AND WARRANTIES OF SELLERS ................ 11

    2.1    Organization and Good Standing; No Violation. .................... 12
    2.2    Authorization; Consents .......................................... 12
    2.3    Binding Agreement .............................................. 12
    2.4    Assumed Contracts and Assumed Leases .......................... 13
    2.5    Brokers and Finders .............................................. 13
    2.6    **[RESERVED]**. .................................................. 13
    2.7    Compliance with Legal Requirements .............................. 13
    2.8    Required Consents ................................................ 13
    2.9    Certain Other Representations with Respect to the Hospital and the
           Practices. ........................................................ 14
    2.10   Financial Statements. ............................................ 14
    2.11   Certain Post-Balance Sheet Results ................................ 15
    2.12   Legal Proceedings ................................................ 15
    2.13   Permits .......................................................... 15
    2.14   Medicare Participation; Accreditation and Compliance .............. 16
    2.15   Regulatory Compliance .......................................... 17
    2.16   **[RESERVED]** .................................................. 17
    2.17   Title ............................................................ 17
    2.18   Employee Benefit Plans .......................................... 17
    2.19   Taxes ............................................................ 18
    2.20   Employee Relations .............................................. 19
    2.21   Personnel. ........................................................ 19
    2.22   Supplies .......................................................... 20
    2.23   Insurance ........................................................ 20
    2.24   Payor Contracts .................................................. 20
    2.25   Excluded Individuals ............................................ 20
    2.26   Third Party Payor Cost Reports .................................... 2120
    2.27   Regulatory Compliance. .......................................... 21

2.28   Information Privacy and Security Compliance. .......................... 21
2.29   Intellectual Property. .......................................................... 22

ARTICLE 3 REPRESENTATIONS AND WARRANTIES OF OPCO BUYER .......... 22

3.1   Existence and Capacity ...................................................... 22
3.2   Powers; Consents; Conflicts ............................................. 2322
3.3   Binding Agreement ........................................................... 23
3.4   Availability of Funds ......................................................... 23
3.5   OpCo Buyer Knowledge .................................................... 23

ARTICLE 4 COVENANTS OF SELLERS .................................................. 23

4.1   Access and Information; Inspections .................................. 23
4.2   Cooperation ...................................................................... 24
4.3   [RESERVED] ................................................................... 25
4.4   Sellers' Efforts to Close ................................................... 25
4.5   Termination Cost Reports ................................................. 25
4.6   Conduct of the Business .................................................... 25
4.7   Name Change ................................................................... 26

ARTICLE 5 COVENANTS OF OPCO BUYER ............................................ 26

5.1   OpCo Buyer's Efforts to Close .......................................... 26
5.2   Required Governmental Approvals ..................................... 26
5.3   Certain Employee Matters ................................................. 27
5.4   Residents ......................................................................... 28
5.5   Excluded Assets ............................................................... 28
5.6   HSR Filing ....................................................................... 28

ARTICLE 6 BANKRUPTCY COURT APPROVAL ....................................... 28

6.1   Bankruptcy Court Approval ............................................... 28
6.2   Appeal of Sale Order ........................................................ 29

ARTICLE 7 CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLERS ........ 29

7.1   Signing and Delivery of Instruments .................................. 29
7.2   No Restraints .................................................................... 29
7.3   Performance of Covenants ................................................. 29
7.4   Governmental Authorizations ............................................ 29
7.5   Bankruptcy Court Approval ............................................... 30
7.6   HSR Act ........................................................................... 30
7.7   Representations and Warranties; Covenants ....................... 30

ARTICLE 8 CONDITIONS PRECEDENT TO OBLIGATIONS OF OPCO BUYER .. 30

8.1   Governmental Authorizations ............................................ 30
8.2   Bankruptcy Court Approval ............................................... 30
8.3   Signing and Delivery of Instruments .................................. 31
8.4   Performance of Covenants ................................................. 31

DMEAST #38866290 v46.docx
09/24/2019 SL1 1606157v1 006375.0116609/25/2019 SL1 1606129v5 006375.01166

| 8.5 | No Restraints | 31 |
| 8.6 | Tail Coverage | 31 |
| 8.7 | Medicare and Medicaid Provider Agreements | 31 |
| 8.8 | HSR Act | 31 |
| 8.9 | Health Partners Plans, Inc. | 31 |
| 8.10 | Assumed Contracts; Notice | 31 |
| 8.11 | Collective Bargaining Agreements | 32 |
| 8.12 | Tenet Transition Services Agreement | 32 |
| 8.13 | Conifer Agreement | 32 |
| 8.14 | Representations and Warranties; Covenants | 32 |

**ARTICLE 9 TERMINATION** 32

| 9.1 | Termination | 32 |
| 9.2 | Termination Consequences | 33 |

**ARTICLE 10 POST-CLOSING MATTERS** 34

| 10.1 | Preservation and Access to Records After the Closing | 34 |
| 10.2 | **[RESERVED]** | 35 |
| 10.3 | Medical Staff | 35 |

**ARTICLE 11 DEFAULT, TAXES AND COST REPORTS** 35

| 11.1 | OpCo Buyer Default | 35 |
| 11.2 | Sellers Default | ~~35~~36 |
| 11.3 | Cost Report Matters | ~~35~~36 |

**ARTICLE 12 [RESERVED]** 36

**ARTICLE 13 MISCELLANEOUS PROVISIONS** 36

| 13.1 | Further Assurances and Cooperation | 36 |
| 13.2 | Successors and Assigns | 36 |
| 13.3 | Governing Law; Venue | 36 |
| 13.4 | Amendments | 37 |
| 13.5 | Disclosure Schedules | 37 |
| 13.6 | Notices | 37 |
| 13.7 | Headings | 38 |
| 13.8 | Fair Meaning | 38 |
| 13.9 | Gender and Number; Construction; Affiliates | 38 |
| 13.10 | Third Party Beneficiary | 38 |
| 13.11 | Waiver of Jury Trial | 38 |
| 13.12 | Expenses and Attorneys' Fees | 39 |
| 13.13 | Counterparts | 39 |
| 13.14 | Entire Agreement | 39 |
| 13.15 | No Waiver | 39 |
| 13.16 | Severability | 39 |
| 13.17 | Time is of the Essence | 40 |

DMEAST #38866290 v46.docx

09/24/2019 SL1 1606157v1 006375.0116609/25/2019 SL1 1606129v5 006375.01166

**EXHIBITS**

| Description | Exhibits |
|---|---|
| Sale Order | A |

**SCHEDULES**

| Description | Schedules |
|---|---|
| Permits | 1.7(b) |
| Leased Real Property | 1.7(r)(i) |
| Tenant Leases | 1.7(r)(ii) |
| Bankruptcy Claims | 1.7(t) |
| Assumed Obligations | 1.09 |
| Designation of Assumed Contracts and Assumed Leases | 1.11 |
| Threatened or Expiring Permits | 2.9(a) |
| Historical Financial Statements | 2.10(a) |
| Litigation Schedule | 2.12 |
| Medicare Participation; Accreditation and Compliance | 2.14 |
| HIPAA Compliance | 2.15 |
| Seller Plans | 2.18(a) |
| Unfiled Taxes | 2.19 |
| Employee Relations | 2.20 |
| Personnel | 2.21(a) |
| Terminated or Suspended Personnel | 2.21(b) |
| Insurance | 2.23 |
| Payor Contracts | 2.24 |
| Third Party Payor Cost Reports | 2.26 |
| Information Privacy and Security Non-compliance | 2.28(a) |
| Excluded Intellectual Property | 2.29(d) |
| Certain Employee Matters | 5.3 |

DMEAST #38866290 v46.docx

09/24/2019 SL1 1606157v1 006375.0116609/25/2019 SL1 1606129v5 006375.01166

# GLOSSARY OF DEFINED TERMS

| Description | Section |
|---|---|
| Agreement | Introduction |
| Assets | Recitals |
| Assumed Contracts | 1.7(c) |
| Assumed Leases | 1.7(r) |
| Assumed Obligations | 1.9 |
| Assignment and Assumption Agreement | 1.4(c) |
| Bankruptcy Cases | Recitals |
| Bankruptcy Code | Recitals |
| Bankruptcy Court | Recitals |
| Bid Procedures | 6.1(b) |
| Bill of Sale | 1.4(a) |
| Cash Consideration | 1.1(b) |
| Closing | 1.3 |
| Closing Date | 1.3 |
| CMS | 1.7(b) |
| Code | 2.18(a) |
| ~~Continuing Residents~~ | ~~5.4~~ |
| Debtor Parties | Introduction |
| Deposit | 1.2 |
| Document Retention Period | 10.1(a) |
| Effective Time | 1.3 |
| Employee Liabilities | 1.10 |
| ERISA | 2.18(c) |
| ERISA Affiliate | 2.18(a) |
| Excluded Assets | 1.8 |
| Excluded Contract | 1.11 |
| Excluded Individual | 2.25 |
| Excluded Intellectual Property | 2.29(d) |
| Excluded Liabilities | 1.10 |
| Final Order | 8.2(b) |
| Government Entity | 2.15 |
| HIPAA | 2.15 |
| Hired Employees | 5.3(a) |
| Historical Financial Statements | 2.10(a) |
| Hospital | Recitals |
| Hospital Business | Recitals |
| Hospital Seller | Introduction |
| HSR Act | 5.6 |
| IBEW | 5.3(b) |
| Independent CPA | 1.1(e) |
| Information Privacy or Security Laws | 2.28(c) |
| Intellectual Property | 2.29(c) |

| Description | Section |
|---|---|
| Inventory | 1.7(f) |
| IRS | 2.18(b) |
| Leased Real Property | 1.7(r)(i) |
| Legal Requirements | 2.7 |
| Material Adverse Effect | 9.1 |
| Medicaid Provider Agreements | 8.7 |
| OpCo Buyer | Introduction |
| PASNAP | 8.11 |
| Payor Contracts | 2.24 |
| PDHS | 8.7 |
| Permits | 1.7(b) |
| Person | 13.9 |
| Personal Information | 2.28(e) |
| Personal Property | 1.7(a) |
| Physician Practice Business | Recitals |
| Practice Group Seller | Introduction |
| Practices | Recitals |
| Prepaids | 1.7(g) |
| Provider Agreements | 1.7(b) |
| Purchase Price | 1.1(b) |
| PTO | 5.3 |
| Purchase Price Allocation | 1.1(e) |
| OpCo Buyer | Introduction |
| Real Estate Assignment and Assumption Agreements | 1.4(b) |
| RRG | 1.8(e) |
| Sale Motion | Recitals |
| Sale Order | 6.1(a) |
| Seller Cost Reports | 11.3(a) |
| Seller or Sellers | Introduction |
| Seller Contracts | 1.11 |
| Seller Parties | 10.1(a) |
| Seller Plans | 2.18(a) |
| Seller Employees | 2.21(a) |
| Signing Date | Introduction |
| Sellers' Tail Coverage Expense | 8.6 |
| Superseded Agreements | 13.14 |
| Tail Coverage | 8.6 |
| Tax or Taxes | 2.19 |
| Tenant Leases | 1.7(r)(ii) |
| Utility Deposits | 1.8(j) |

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**") is made and entered into as of the 20th day of September, 2019 (the "**Signing Date**") by and among St. Christopher's Healthcare, LLC (the "**Hospital Seller**"), Philadelphia Academic Medical Associates, LLC and certain affiliated debtor physician practice groups, Philadelphia Academic Medical Associates, LLC, SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., ~~StChris~~St Chris Care at Northeast Pediatrics, L.L.C., TPS V of PA, L.L.C. (the "**Practice Group Seller**" and with the Hospital Seller, the "**Debtor Parties**"), (the Debtor Parties each referred to herein individually as "**Seller**" and collectively as "**Sellers**"), and STC OpCo LLC, a Pennsylvania limited liability company formed by Drexel University and Tower Health to acquire certain assets of the Debtor Parties ("**OpCo Buyer**").

## R E C I T A L S :

A.      The Hospital Seller engages in the business of the operation of the hospital known as St. Christopher's Hospital for Children, located at 160 E. Erie Avenue, Philadelphia, PA 19134, including the hospital inpatient, outpatient, clinics, pharmacy, laboratory, emergency department services (collectively, the "**Hospital**"; the business of the operation of the Hospital is referred to herein as the "**Hospital Business**").

B.      The Practice Group Seller operates primary and specialty care services at Yardley Pediatrics, Northeast Pediatrics, Bucks County, St. Luke's Hospital, Jenkintown, Abington, Washington Township, Reading Hospital owned or operated by affiliates of the Practice Group Seller (collectively, the "**Practices**"; the business of the operation of the Practices is referred to herein as the "**Physician Practice Business**").

C.      OpCo Buyer desires to purchase from Sellers, and Sellers desire to sell to OpCo Buyer, the assets described in Section 1.7 (the "**Assets**") owned by Sellers and used with respect to the Hospital and Physician Practice Businesses, for the consideration and upon the terms and conditions contained in this Agreement.

D.      Debtor Parties filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), lead Case No. 19-11466-KG, jointly administered with certain of their affiliates (the "**Bankruptcy Cases**").

E.      The Debtor Parties filed a motion (the "**Sale Motion**") pursuant to which, among other things, it sought approval from the Bankruptcy Court for the sale of the Assets.

F.      The parties intend to effectuate the transactions contemplated by this Agreement through a sale of the Assets approved by the Bankruptcy Court pursuant to Section 363 and 365 of Title 11 of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises and covenants contained in this Agreement, and for their mutual reliance and incorporating into this Agreement the above recitals, the parties hereto agree as follows:

## ARTICLE 1
## SALE AND TRANSFER OF ASSETS; CONSIDERATION; CLOSING

1.1    <u>Sale and Transfer of Assets; Purchase Price</u>. Subject to the terms and conditions of this Agreement,

(a)    OpCo Buyer is (i) acquiring the Assets and (ii) only assuming the Assumed Obligations (as defined below).

(b)    The purchase price (the "**Purchase Price**") shall consist of a cash payment to Sellers in an amount equal to Fifty Million Dollars ($50,000,000) (the "**Cash Consideration**").

(c)    OpCo Buyer shall prepare and deliver to Sellers within 90 calendar days after the Closing Date a schedule for each Seller setting forth the allocation of the Purchase Price and other consideration for the Assets allocated to such Seller and any other relevant items among the Assets owned by such Seller in accordance with Section 1060 of the Internal Revenue Code (the "**Purchase Price Allocation**").  The allocation shall be considered final and binding on the parties, unless, within 30 calendar days after the delivery of the Purchase Price Allocation by OpCo Buyer, Sellers notify OpCo Buyer that they have a good faith objection to the allocation set forth in the OpCo Buyer's allocation schedule.  If Sellers timely make such an objection, OpCo Buyer and Sellers shall work in good faith to resolve such dispute within 20 calendar days from the date Sellers deliver the objection to OpCo Buyer.  In the event that OpCo Buyer and Sellers are unable to resolve such dispute within the 20 calendar day period, the issue(s) in dispute will be submitted to an independent accounting firm mutually acceptable to Sellers and OpCo Buyer (the "**Independent CPA**") for resolution.  The determination of the Independent CPA shall be final, binding, and conclusive on the parties.  OpCo Buyer, on the one hand, and Sellers, on the other hand, shall each bear fifty percent (50%) of the fees and expenses of the Independent CPA.  In the event of any adjustments to the Purchase Price and other consideration for the Assets, any such adjustments shall be allocated in a manner consistent with the Purchase Price Allocation and the parties hereto shall cooperate to adjust the Purchase Price Allocation. OpCo Buyer and Sellers each shall report all Taxes and file all Tax returns (including amended Tax returns and claims for refund) consistent with the Purchase Price Allocation, and shall take no position contrary thereto or inconsistent therewith (including, in any audits or examinations by any taxing authority or any other proceedings), unless, and then only to the extent, required by a final determination.  OpCo Buyer and Sellers shall exchange completed and executed forms with respect to the allocation (including Internal Revenue Service Form 8594 and any comparable forms required to be filed for state or local Tax purposes) at least 30 calendar days prior to the due date for filing such forms and shall cooperate in the filing of any forms (including Form 8594) with respect to such Purchase Price Allocation, including any amendments to such forms required with respect to any adjustment to the Purchase Price and other consideration for the Assets, pursuant to this Agreement.  Notwithstanding any other provisions of this Agreement, the foregoing agreement shall survive the Closing Date without limitation.

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

1.2    Deposit. OpCo Buyer, by wire transfer to an account designated by Sellers has made a good faith deposit in the amount of Ten (10%) Percent of the Purchase Price on the date hereof (the "**Deposit**"). The Deposit shall be non-refundable in all events, except as provided in Section 6.2, or in the event OpCo Buyer has terminated this Agreement pursuant to Section 9.1 (other than Section 9.1(b)) or as set forth in Section 9.2 or Section 11.2, in which case Seller shall immediately return the Deposit to OpCo Buyer with all interest earned thereon. Upon Closing, the Deposit and all interest thereon will be credited against the Purchase Price. Pending the Closing, or until this Agreement is terminated, the Deposit shall be deposited in an interest bearing account, with interest credited to OpCo Buyer, at a federally-insured financial institution mutually acceptable to OpCo Buyer and Sellers.

1.3    Closing Date. The consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place on the later of (a) October 4, 2019 or (b) as promptly as possible following the receipt of all governmental approvals and the satisfaction or waiver of the conditions set forth in ARTICLE 7 and ARTICLE 8, other than those conditions that by their nature are to be satisfied at Closing but subject to fulfillment or waiver of those conditions. at the offices of Ballard Spahr LLP, 1735 Market Street, 48th Floor, Philadelphia, PA 19103 (the day on which Closing actually occurs, the "**Closing Date**") The Closing shall be deemed to occur and to be effective as of 11:59 p.m. Eastern time on the Closing Date (the "**Effective Time**").

1.4    Items to be Delivered by Sellers at Closing. At or before the Closing, Sellers shall deliver, or cause to be delivered, to the entity designated by OpCo Buyer, the following:

(a)    a Bill of Sale in a form and substance acceptable to Sellers and OpCo Buyer (the "**Bill of Sale**"), duly executed by each Seller, with respect to the Assets;

(b)    Real Estate Assignment and Assumption Agreements (the "**Real Estate Assignment and Assumption Agreements**") in a form and substance acceptable to Sellers and OpCo Buyer with respect to the Assumed Leases, each duly executed by the applicable Seller;

(c)    an Assignment and Assumption Agreement (the "**Assignment and Assumption Agreement**") in a form and substance acceptable to Sellers and OpCo Buyer with respect to the Assumed Contracts and other Assumed Obligations duly executed by each Seller;

(d)    favorable original certificates of good standing, of each Seller, issued by the Commonwealth of Pennsylvania or appropriate state of jurisdiction;

(e)    a duly executed certificate of an officer of each Seller certifying to OpCo Buyer (i) the incumbency of the officers of such Seller on the Signing Date and on the Closing Date and bearing the authentic signatures of all such officers who have executed this Agreement and any additional documents contemplated by this Agreement and (ii) the due adoption and text of the resolutions or consents of the Board of Directors, Managers or Members (as applicable) of such Seller authorizing (A) the transfer of the Assets and transfer of the Assumed Obligations by such Seller to OpCo Buyer and (B) the due execution, delivery and performance of this Agreement and all additional documents contemplated by this Agreement, and that such resolutions have not been amended or rescinded and remain in full force and effect on the Closing Date;

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

(f)    a copy of the Sale Order, and

(g)    any such other instruments, certificates, consents or other documents which OpCo Buyer and Sellers mutually deem reasonably necessary to carry out the transactions contemplated by this Agreement and to comply with the terms hereof.

1.5    _Items to be Delivered by OpCo Buyer at Closing_. At or before the Closing, OpCo Buyer shall deliver or cause to be delivered to Sellers the following:

(a)    payment of an amount equal to the Cash Consideration _less_ the Sellers' Tail Coverage Expense subject to credits or plus payment to Sellers of all amounts as provided under Section 1.6;

(b)    a duly executed certificate of the secretary of OpCo Buyer certifying to Sellers (a) the incumbency of the officers of OpCo Buyer on the Signing Date and on the Closing Date and bearing the authentic signatures of all such officers who have executed this Agreement and any additional documents contemplated by this Agreement and (b) the due adoption and text of the resolutions of the members of OpCo Buyer authorizing the execution, delivery and performance of this Agreement and all additional documents contemplated by this Agreement, and that such resolutions have not been amended or rescinded and remain in full force and effect on the Closing Date;

(c)    the Bill of Sale, duly executed by OpCo Buyer;

(d)    the Assignment and Assumption Agreement, duly executed by OpCo Buyer;

(e)    the Real Estate Assignment and Assumption Agreement, duly executed by OpCo Buyer, and

(f)    any such other instruments, certificates, consents or other documents which OpCo Buyer and Sellers mutually deem reasonably necessary to carry out the transactions contemplated by this Agreement and to comply with the terms hereof.

1.6    _Prorations and Utilities_. All items of income and expense listed below with respect to the Assets shall be prorated in accordance with the principles and the rules for the specific items set forth hereafter:

(a)    In the event that as of the Closing Date the actual tax bills for the tax year or years in question are not available and the amount of taxes to be prorated as aforesaid cannot be ascertained, then rates, millages and assessed valuation of the previous year, with known changes, shall be used for proration of any lease expenses. The parties agree that if the real estate and personal property tax prorations are made based upon the taxes for the preceding tax period, the prorations shall be re-prorated after the Closing. As to power and utility charges, "final readings" as of the Closing Date shall be ordered from the utilities; the cost of obtaining such "final readings," if any, shall be paid by Sellers.

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

(b)     All prorations and payments to be made under the foregoing provisions shall be agreed upon by OpCo Buyer and Sellers prior to the Closing and shall be binding upon the parties. In the event any proration, apportionment or computation shall prove to be incorrect for any reason, then either the applicable Seller or OpCo Buyer shall be entitled to an adjustment to correct the same, provided that said party makes written demand on the party from whom it is entitled to such adjustment within thirty (30) calendar days after the erroneous payment or computation was made, or such later time as may be required, in the exercise of due diligence, to obtain the necessary information for proration. This Section 1.6 shall survive Closing.

1.7     Transfer of Assets of Sellers. On the Closing Date, each Seller shall sell, assign, transfer, convey and deliver to the entity designated by OpCo Buyer, free and clear of all "Interests" as defined in the Sale Order, other than the Assumed Obligations, and OpCo Buyer shall acquire, all of each Seller's right, title and interest in and to only the following assets and properties, such transfers being deemed to be effective as of the Effective Time:

(a)     all of the tangible personal property owned by the Hospital and the Practices for use in the Hospital Business and Physician Practice Business, including equipment, furniture, fixtures, machinery, vehicles, office furnishings and leasehold improvements (the "**Personal Property**");

(b)     all of Sellers' rights, (i) to Sellers' Provider Agreements with the Centers for Medicare and Medicaid Services ("**CMS**") Number 39-3307 and Number 39-2360 (the "**Provider Agreements**"), and (ii) to the extent assignable or transferable, to all other licenses, certificates of exemption, franchises, accreditations and registrations and other governmental licenses, permits or regulatory approvals issued to such Seller for use in the operation of the Hospital and Practices (the "**Permits**"), including, without limitation, the Permits set forth on Schedule 1.7(b), except to the extent OpCo Buyer elects, in its sole discretion, not to take assignment of any such Permits;

(c)     all of Sellers' rights in and to all contracts and other agreements (other than leases of real property) that have been designated by OpCo Buyer as a contract to be assumed pursuant to Section 1.11 (collectively, the "**Assumed Contracts**"), it being understood and agreed that, if and only to the extent the Provider Agreements are determined to be executory contracts, that the Provider Agreements shall also be Assumed Contracts;

(d)     **[RESERVED]**;

(e)     all of Sellers' interest in Health Partners Plans, Inc., if any, currently owned and/or associated with the Hospital Seller, including the right of any Seller to receive or to designate a third party as recipient of "distributions" (other than distributions allocable to the period prior to the Closing Date) as that term is used in the Articles of Incorporation of Health Partners Plans, Inc.;

(f)     all inventories of supplies, drugs, food, janitorial and office supplies and other disposables and consumables (i) located at the Hospital or the Practices or (ii) used in the operation of the Hospital or the Practices (the "**Inventory**") except as set forth in Section 1.8(f);

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

(g)    other than Utility Deposits, all prepaid rentals, deposits, prepayments (excluding prepaid insurance and prepaid taxes) and similar amounts relating to the Assumed Contracts and/or Assumed Leases (the "**Prepaids**");

(h)    all of the following: operating manuals, files and computer software with respect to the operation of the Hospital and Practices, including, without limitation, all patient records, medical records, employee records, financial records, equipment records, construction plans and specifications, and medical and administrative libraries; provided, however, that any patient records and medical records which are not required by law to be maintained by Sellers as of the Closing Date shall be an Excluded Asset and provided further, all expenses for the transfer of Hospital and Practices medical and/or patient records that are transferred to OpCo in connection with the Closing shall be borne by OpCo Buyer;

(i)    all systems, servers, computers, hardware, firmware, middleware, telecom equipment, networks, data communications lines, routers, hubs, switches and all other information technology equipment, and all associated documentation owned, leased or, to the extent transferable, licensed by Sellers and used by Sellers with respect to the operations of the Hospital or the Practices but, in the case of any such item which is leased or to the extent transferable licensed pursuant to an executory contract, only such lease or license if an Assumed Contract;

(j)    all surpluses arising out of any risk pools, shared savings program or accountable care organization arrangement to which any Seller is party on the Closing Date, in each case to the extent, if the underlying contract relating to such risk pools, shared savings program or accountable care organization arrangement is an executory contract and such contract is an Assumed Contract;

(k)    all transferable unclaimed property of any Person in Sellers' possession as of the Closing Date, including, without limitation, property which is subject to applicable escheat laws;

(l)    all warranties (including warranties of any manufacturer or vendor) on or in connection with the Assets (including the Personal Property) in favor of the Hospital; Practices or Sellers;

(m)    the right to use the names "St. Christopher's Hospital for Children", including any derivation thereof and including any trademarks, service marks, trademark and service mark registrations and registration applications, trade names, trade name registrations, logos, domain names, trade dress, copyrights, copyright registrations, website content, know-how, trade secrets and the corporate or company names of Sellers and the names of the Hospital, together with all rights to sue and recover damages for infringement, dilution, misappropriation or other violation or conflict associated with any of the foregoing;

(n)    all goodwill of the Hospital and the Practices evidenced by or associated with any of the Assets;

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

(o)    the Hospital's and the Practices' right or interest in the telephone and facsimile numbers, email addresses and uniform resource locaters used with respect to the operation of the Hospital and the Practices;

(p)    except for the Excluded Assets, any other assets owned by the Hospital or the Practices (which are not otherwise specifically described above in this Section 1.7) that are used in the operation of the Hospital or the Practices;

(q)    all rights to insurance proceeds under all insurance policies and contracts and coverages obtained by any Seller or listing any Seller as insured party, a beneficiary or loss payee, relating to any casualty claim arising from or relating to the Assets;

(r)    all of Sellers' interest in and to all of the following: (i) the real property leases for all real property leased by the Hospital and the Practices and set forth on Schedule 1.7(r)(i) (the "**Leased Real Property**"), and (ii) the real property leased or subleased by such Seller to a third party and set forth on Schedule 1.7(r)(ii) (the "**Tenant Leases**" and with the leases for the Leased Real Property, the "**Assumed Leases**");

(s)    any of the Sellers' rights (but not their obligations) to acquire the Sellers' interest in the real property related to the Center for Urban Child building; and

(t)    all claims, counterclaims and causes of action of such Seller or such Seller's bankruptcy estate (including parties acting for or on behalf of such Seller's bankruptcy estate, including, but not limited to, the official committee of unsecured creditors appointed in the Bankruptcy Cases), arising under or with respect to claims and causes of action that relate to the Assets (other than assets that are covered only by Section 1.7(p)) or the Assumed Obligations but excluding any claims or causes of action: (i) relating to the Excluded Assets; (ii) arising under Chapter 5 of the Bankruptcy Code; or (iii) as set forth on Schedule 1.7(t).

1.8    Excluded Assets. Notwithstanding anything to the contrary in Section 1.7, the following interests, rights and assets of such Seller (collectively, the "**Excluded Assets**"):

(a)    cash, cash equivalents and short-term investments;

(b)    all accounts, notes or other amounts receivable relating to services rendered on or prior to the Closing Date;

(c)    all Seller Plans and the assets of all Seller Plans and any asset that would revert to the employer upon the termination of any Seller Plan, including, without limitation, any assets representing a surplus or overfunding of any Seller Plan;

(d)    all contracts that are not Assumed Contracts, Assumed Leases or the Provider Agreements (to the extent, if any, such agreement is determined to be a contract but not an executory contract), including any collective bargaining agreement to which any of Sellers is a party, or by or under which any of Sellers is otherwise bound;

(e)    Philadelphia Academic Risk Retention Group, LLC ("**RRG**") and its assets;

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

(f)    the portions of Inventory, Prepaids, and other assets disposed of, expended or canceled, as the case may be, by such Seller after the Signing Date and prior to the Closing Date in the ordinary course of business;

(g)    all of such Seller's organizational or corporate record books, minute books, tax returns, tax records and reports, data, files and documents, including electronic data related thereto;

(h)    all claims, counterclaims and causes of action of Sellers or any Seller's bankruptcy estate (including parties acting for or on behalf of such Seller's bankruptcy estate, including, but not limited to, the official committee of unsecured creditors appointed in the Bankruptcy Cases), not included among the Assets pursuant to Section 1.7(t)) hereof;

(i)    all insurance policies and contracts and coverages obtained by such Seller or listing such Seller as insured party, a beneficiary or loss payee, including prepaid insurance premiums, subject to rights of the OpCo Buyer under Section 1.7(q);

(j)    all deposits made with any entity that provides utilities to the Hospital or the Practices (the "**Utility Deposits**");

(k)    all rents, deposits, prepayments, and similar amounts relating to any contract or lease that is not an Assumed Contract, Assumed Lease or any contract, including the Provider Agreements, which is assigned to the OpCo Buyer but is deemed not to be an executory contract;

(l)    all non-transferrable unclaimed property of any third party as of the Closing Date, including, without limitation, property which is subject to applicable escheat laws;

(m)    all bank accounts of such Sellers;

(n)    all writings and other items that are protected from discovery by the attorney-client privilege, the attorney work product doctrine or any other cognizable privilege or protection;

(o)    all director/manager and officer insurance;

(p)    all tax refunds and tax attributes of such Seller;

(q)    all documents, records, operating manuals and film pertaining to the Hospital or the Practices that the parties agree that such Seller is required by law to retain;

(r)    all patient records and medical records which are required by law to be maintained by such Seller as of the Closing Date, other than those records that will be transferred to OpCo Buyer;

(s)    all documents, records, correspondence, work papers and other patient records that may not be transferred under applicable law, and any other documents, records, or

correspondence (including with respect to any employees) that may not be transferred under applicable law;

(t)    any rights or documents relating to any Excluded Liability or other Excluded Asset;

(u)    any rights or remedies provided to such Seller under this Agreement and each other document executed in connection with the Closing;

(v)    any (i) personnel files for employees of such Seller who are not Hired Employees; (ii) other books and records that such Seller is required by law to retain; provided, however, that except as prohibited by law and subject to ARTICLE 5, OpCo Buyer shall have the right to make copies of any portions of such retained books and records that relate to the business of the Hospital or the Practices as conducted before the Closing or that relate to any of the Assets; (iii) documents which such Seller is not permitted to transfer pursuant to any contractual obligation owed to any third party that is not superseded by the Sale Order; (iv) documents primarily related to any Excluded Assets; and (v) documents necessary to prepare tax returns (OpCo Buyer shall be entitled to a copy of such documents). With respect to documents necessary to prepare cost reports, OpCo Buyer shall receive the original document and such Seller shall be entitled to retain a copy of such documents for any period ending on or prior to the Closing Date;

(w)    all deposits or other prepaid charges and expenses paid in connection with or relating to any other Excluded Assets; and

(x)    other than as set forth in Section 1.7(t), all rights, claims, counterclaims, defenses and causes of action of each Seller.

1.9    Assumed Obligations. On the Closing Date, each Seller shall assign, and OpCo Buyer shall assume and agrees to discharge, perform and satisfy fully, on and after the Closing Date, the following liabilities and obligations of such Seller and only the following liabilities and obligations (collectively, the "**Assumed Obligations**"):

(a)    all liabilities and obligations of such Seller under the Assumed Contracts (other than the Provider Agreements) solely to the extent related to periods after the Closing Date;

(b)    all liabilities and obligations under the Provider Agreements, provided that the foregoing notwithstanding, (i) to the extent of any amounts asserted as due as of the Closing Date, the Sellers shall, pay at Closing (subject to the proviso below) the first two hundred thousand dollars ($200,000.00) and OpCo Buyer shall pay at Closing (subject to the proviso below) any amounts in excess of two hundred thousand dollars ($200,000.00), and (ii) in the event OpCo Buyer pays, after Closing, any amounts to CMS that are first asserted by CMS after Closing on account of such Assumed Obligation (by setoff against amounts owed to OpCo Buyer or otherwise), OpCo Buyer, following payment in full of Sellers' obligations to MidCap Funding IV Trust, shall have the right to offset such amounts against any amounts owed by OpCo Buyer to any Seller; provided that, Sellers may dispute the amount asserted by CMS as due as of the

9

Closing Date under the Provider Agreements, only so long as (1) CMS agrees that the Provider Agreements may be transferred to OpCo Buyer on the Closing Date notwithstanding the pendency of such dispute, and (2) the Sellers escrow the lesser of $200,000 and the amount asserted as due pursuant to an escrow agreement in form and substance satisfactory to the Sellers and OpCo Buyer. In the event of any such permitted dispute by the Sellers, the amounts asserted as due as of the Closing Date by CMS shall not be paid on the Closing Date but, rather, shall be paid promptly following resolution of such dispute.  OpCo Buyer may participate in the resolution of such dispute, and must consent to any settlement of such dispute in excess of $200,000;

(c)    all liabilities and obligations of such Seller under the Assumed Leases solely to the extent related to periods after the Closing Date;

(d)    all liabilities and obligations of such Seller under the Assumed Permits solely to the extent related to periods after the Closing Date;

(e)    all unpaid real and personal property taxes, if any, that are attributable to the Assets and relate to periods after the Closing Date;

(f)    all liabilities or obligations relating to utilities being furnished in connection with the operation of the Hospital and the Practices that relate to periods after the Closing Date;

(g)    all liabilities or obligations relating to employees provided for in Section 5.3 after the Closing Date to the extent related to periods after the Closing Date, and

(h)    the PTO Obligation (as defined in Section 5.3(a).

For the avoidance of doubt, (i) none of the Assumed Obligations shall relate to any liabilities or obligations of any party other than the Hospital Seller and the Practice Group Seller, unless expressly agreed by OpCo Buyer and listed on Schedule 1.09, and (ii) OpCo Buyer shall be responsible for the payment of any cure amounts necessary for the assumption and assignment of any Assumed Contracts or Assumed Leases.

1.10    Excluded Liabilities. OpCo Buyer shall not assume or become responsible for any duties, obligations or liabilities of any Seller that are not expressly assumed by OpCo Buyer pursuant to the terms of this Agreement, the Bill of Sale, the Assignment and Assumption Agreement or the Real Estate Assignment and Assumption Agreement, including but not limited to, (a) except for the PTO Obligation, any liabilities associated with or related to any employees of Sellers and their employment, compensation and/or benefits, including any liabilities associated with or arising out of any collective bargaining agreements with any labor organizations representing any employees of Sellers and any liabilities under any employee benefit plans in which any employees of Sellers participate or otherwise are entitled to receive any benefits (collectively, "**Employee Liabilities**"), (b) any pre-closing liabilities, including recoupment claims for overpayments by any governmental health plan (including Medicaid or TRICARE but excluding the Provider Agreements) or other managed care payor administering a plan for a government health plan, that are required to be paid by OpCo Buyer as successor to

Sellers, and (c) all liabilities related to RRG (collectively, the "**Excluded Liabilities**"); and each Seller shall remain fully and solely responsible for all Excluded Liabilities.

.

1.11    <u>Designation of Assumed Contracts and Assumed Leases</u>. All contracts, leases and other agreements of each Seller (collectively the "**Seller Contracts**") will be subject to evaluation by OpCo Buyer for designation as Assumed Contracts or Assumed Leases. Sellers shall promptly, and in any event, no later than September 27, 2019, provide to OpCo Buyer true and correct copies of all Seller Contracts, in each case as amended or otherwise modified and in effect, together with any extension notices and other material correspondence or documentation related thereto, in the possession or control of the Sellers, provided however, the Sellers' obligation to provide to OpCo Buyer any Seller Contract which is subject to a nondisclosure agreement binding upon a Seller shall be required only if the Sale Order or other order of the Bankruptcy Court, permits such Seller Contract to be provided to OpCo Buyer. Attached hereto as <u>Schedule 1.11</u>, <u>Schedule 1.7(r)(i)</u> and <u>Schedule 1.7(r)(ii)</u> are OpCo Buyer's initial schedules of Seller Contracts designated as Assumed Contracts or Assumed Leases.  Except for physician contracts, which shall not be subject to further revision, OpCo Buyer may modify <u>Schedule 1.11,</u> <u>Schedule 1.7(r)(i)</u> and <u>Schedule 1.7(r)(ii)</u> to add or delete Seller Contracts until the Closing Date. Only Seller Contracts that are on the final version of <u>Schedule 1.11</u>, <u>Schedule 1.7(r)(i)</u> and <u>Schedule 1.7(r)(ii)</u> as of the Closing Date shall be Assumed Contracts or Assumed Leases (as applicable). To the extent that OpCo Buyer adds to any such schedule an Assumed Contract or an Assumed Lease after the Sale Hearing, Sellers agree to promptly file a motion to assume and assign such Assumed Contract or Assumed Lease, and shall give appropriate notice to the non-debtor party to such Assumed Contract or Assumed Lease. Any contract or lease of any Seller that is not an Assumed Contract, Assumed Lease or any other agreement (including the Provider Agreements) deemed not to be an executory contract but assigned hereunder shall be deemed an "**Excluded Contract**". Notwithstanding anything to the contrary set forth in this Agreement, the Excluded Contracts shall constitute part of the Excluded Assets pursuant to, and as defined in, this Agreement. It shall be a condition to Closing that the Sale Order or a subsequent order of the Bankruptcy Court approve the assumption and assignment of the Assumed Contracts and Assumed Leases.

1.12    <u>Disclaimer of Warranties</u>.

(a)    THE PHYSICAL ASSETS TRANSFERRED TO OPCO BUYER WILL BE SOLD BY SELLERS AND PURCHASED BY OPCO BUYER IN THEIR PHYSICAL CONDITION AT THE CLOSING DATE, "AS IS, WHERE IS AND WITH ALL FAULTS AND NONCOMPLIANCE WITH LAWS" WITH NO WARRANTIES, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, USAGE, WORKMANSHIP, QUALITY, PHYSICAL CONDITION, OR VALUE, AND ANY AND ALL SUCH OTHER REPRESENTATIONS AND WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED, AND WITH RESPECT TO THE LEASED REAL PROPERTY WITH NO WARRANTY OF HABITABILITY OR FITNESS FOR HABITATION, INCLUDING, WITHOUT LIMITATION, THE LAND, THE BUILDINGS AND THE IMPROVEMENTS. ALL OF THE PROPERTIES, ASSETS, RIGHTS, LICENSES, PERMITS, PRIVILEGES, LIABILITIES, AND

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.0116609/25/2019 SL1 1606129v5 006375.01166

OBLIGATIONS OF SELLERS INCLUDED IN THE ASSETS AND THE ASSUMED OBLIGATIONS ARE BEING ACQUIRED OR ASSUMED "AS IS, WHERE IS" ON THE CLOSING DATE AND IN THEIR PRESENT CONDITION, WITH ALL FAULTS. ALL OF THE TANGIBLE ASSETS SHALL BE FURTHER SUBJECT TO NORMAL WEAR AND TEAR AND NORMAL AND CUSTOMARY USE OF THE INVENTORY AND SUPPLIES IN THE ORDINARY COURSE OF BUSINESS UP TO THE CLOSING DATE. THE FOREGOING DISCLAIMER SHALL NOT BE INTERPRETED TO MODIFY OR ELIMINATE ANY EXPRESS REPRESENTATION OR WARRANTY PROVIDED UNDER THIS AGREEMENT OR ANY RELATED DOCUMENT AND, TO THE EXTENT OF ANY CONFLICT BETWEEN SUCH EXPRESS REPRESENTATIONS AND WARRANTIES AND THIS DISCLAIMER, SUCH EXPRESS REPRESENTATION AND WARRANTY SHALL CONTROL.

(b)    OpCo Buyer acknowledges that OpCo Buyer will be examining, reviewing and inspecting all matters which in OpCo Buyer's judgment bear upon the Assets, Sellers, the Hospital and the Practices, the businesses of the Hospital and the Practices and their value and suitability for OpCo Buyer's purposes and is relying solely on OpCo Buyer's own examination, review and inspection of the Assets and Assumed Obligations. OpCo Buyer releases each Seller from all responsibility and liability regarding the condition, valuation, salability or utility of the business of the Hospital, the Practices or the Assets, or their suitability for any purpose whatsoever.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES OF SELLERS

As an inducement to OpCo Buyer to enter into this Agreement and to consummate the transactions contemplated by this Agreement, each Seller hereby represents, warrants and covenants to OpCo Buyer that the following matters are true and complete as of the date hereof, and when read in light of any schedules which have been updated in accordance with the provisions of Section 13.5, as of the Closing Date:

2.1    Organization and Good Standing; No Violation.

(a)    Each Seller is duly organized and validly existing in good standing under the laws of the state of its formation. Subject to entry of the Sale Order, each Seller has the requisite power and authority to enter into this Agreement, to perform its obligations hereunder and to conduct its business as now being conducted.

(b)    Neither the execution and delivery by such Seller of this Agreement nor the consummation of the transactions contemplated hereby by such Seller nor compliance with any of the material provisions hereof by such Seller, will violate, conflict with or result in a breach of any material provision of such Seller's certificate of formation, operating agreement or any other organizational documents of such Seller.

2.2    Authorization; Consents. Subject to the entry of the Sale Order, the execution, delivery, and performance of this Agreement by each Seller and all other agreements referenced

herein, or ancillary hereto, to which such Seller is a party, and the consummation of the transactions contemplated herein by each Seller:

(a)     are within its limited liability company or corporate powers, are not in contravention of law or of the terms of its organizational documents, and have been duly authorized by all appropriate limited liability company or corporate action;

(b)     do not require any approval or consent of, or filing with, any governmental agency or authority bearing on the validity of this Agreement which is required by law or the regulations of any such agency or authority;

(c)     will neither conflict with, nor result in any breach or contravention of, or the creation of any lien, charge, or encumbrance under, nor result in acceleration of the timing of payment or performance of such Seller's obligations under, any indenture, agreement, lease, instrument or understanding to which it is a party or by which it is bound;

(d)     will not violate any statute, law, rule, or regulation of any Governmental Entity to which it or the Assets may be subject; and

(e)     will not violate any judgment, decree, writ or injunction of any court or Governmental Entity to which it or the Assets may be subject.

2.3     Binding Agreement. This Agreement has been duly and validly executed and delivered by such Seller and, assuming due and valid execution by OpCo Buyer and entry of the Sale Order, this Agreement constitutes a valid and binding obligation of such Seller enforceable in accordance with its terms subject to (a) applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditors' rights generally from time to time in effect and (b) limitations on the enforcement of equitable remedies. Except for such corporate actions which have been taken on or before the date hereof, no other corporate action on the part of Sellers is necessary to authorize the execution, delivery and performance of this Agreement and the transactions contemplated hereby and thereby.

2.4     Assumed Contracts and Assumed Leases. Sellers represent and warrant with respect to the Assumed Contracts and Assumed Leases that:

(a)     All Assumed Contracts and Assumed Leases will be upon the consummation of the transactions contemplated hereby, in full force and effect, constitute valid and legally binding obligations of the appropriate Seller and, the other parties with respect thereto, and are enforceable against the appropriate Seller and the other parties with respect thereto, in accordance with their terms;

(b)     No Seller is in breach of or default under any Assumed Contract or Assumed Lease except to the extent of defaults that will be cured in connection with assumption pursuant to Section 365 of the Bankruptcy Code, and no act or omission by the appropriate Seller has occurred or failed to occur which, with the giving of notice, the lapse of time or both would constitute a default under the Assumed Contracts or Assumed Leases except to the extent of defaults that will be cured in connection with assumption pursuant to Section 365 of the Bankruptcy Code;

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

(c)    There has been no breach or anticipated breach by the other parties to any Assumed Contract or Assumed Lease; and

(d)    Subject to entry of the Sale Order, the Assumed Contracts and Assumed Leases do not require consent to their assumption by the applicable Seller and assignment to OpCo Buyer.

2.5    <u>Brokers and Finders</u>. No Seller nor any affiliate thereof, nor any officer or director or manager (as applicable) thereof, has engaged or incurred any liability to any finder, broker or agent in connection with the transactions contemplated hereunder.

2.6    **[RESERVED]**.

2.7    <u>Compliance with Legal Requirements</u>. Each Seller, with respect to the operation of the Hospital and the Practices, is in material compliance with all applicable laws, statutes, ordinances, orders, rules, regulations, policies, guidelines, licenses, certificates, judgments or decrees of all judicial or governmental authorities (federal, state, local, foreign or otherwise) except to the extent such compliance is excused by the filing of the Bankruptcy Cases (collectively, "**Legal Requirements**"). None of Sellers, with respect to the operation of the Hospital and the Practices, has been charged in writing with or been given written notice of or is under investigation with respect to, any material violation of, or any obligation to take material remedial action under, any applicable Legal Requirements.

2.8    <u>Required Consents</u>. Sellers are not a party to or bound by, nor are any of the Assets subject to, any mortgage, or any material lien, deed of trust, material lease, or material contract or any material order, judgment or decree which, after giving effect to the Sale Order (a) will require the consent of any third party to the execution of this Agreement or (b) will require the consent of any third party to consummate the transactions contemplated by this Agreement.

2.9    <u>Certain Other Representations with Respect to the Hospital and the Practices</u>.

(a)    All of the Permits which are material and/or necessary to the operation of the Hospital or the Practices by Sellers are valid and in good standing and Sellers are in compliance with the terms and conditions of all such Permits in all material respects, in each case except where the failure to be valid and in good standing or in compliance would not have a material adverse effect on the Assets, the Hospital or the Practices. As of the Closing Date Sellers will have any and all material Permits required under Legal Requirements to conduct the Hospital and the Practices as presently conducted by Sellers, except where the failure to have any such license would not have a material adverse effect on the Assets, the Hospital or Practices. To the knowledge of Sellers, except as set forth on <u>Schedule 2.9(a)</u>, no loss or expiration of any Permit is pending or threatened.

(b)    Sellers are certified for participation in the Medicare, Medicaid and TRICARE programs and any other federal or state health care reimbursement programs in which they participate, and have current and valid provider agreements with each such program, except where the failure to be so certified or have such provider agreements would not have a material adverse effect.

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

(c)     Sellers have not been excluded from Medicare, Medicaid or any federal or state health care reimbursement program, and there is no pending or threatened exclusion action by a governmental authority against Sellers.

(d)     Sellers' Graduate Medical Education Residency Programs are fully accredited and operated in accordance with the requirements of the Accreditation Council for Graduate Medical Education, the appropriate Residency Review Committee, Liaison Committee on Medical Education, Middle States Commission on Higher Education and Pennsylvania Department of Education and Sellers have not entered into any agreements for Shared Rotational Arrangements and Residency Cap Affiliations except as listed in the Notice of Assumption, Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases of the Debtor as filed in the Bankruptcy Court

2.10    Financial Statements.

(a)     Schedule 2.10(a) hereto contains the following financial statements (the "**Historical Financial Statements**"): (i) the unaudited balance sheets of Sellers as of June 30, 2019; (ii) unaudited income statements of Sellers for the twelve (12)-month periods ended June 30, 2019; (iii) the unaudited consolidated income statement of Sellers for the year 2018; and (iv) the unaudited consolidated balance sheet of Sellers as of June 30, 2019.

(b)     the income statements contained in the Historical Financial Statements present, fairly in all material respects the results of the operations of Sellers as of and for the periods covered therein and, the balance sheets contained in the Historical Financial Statements (i) are true, complete and correct in all material respects; and (ii) present, fairly in all material respects the financial condition of Sellers as of the dates indicated thereon.

2.11    Certain Post-Balance Sheet Results. Since June 30, 2019 there has not been any:

(a)     material damage, destruction, or loss (whether or not covered by insurance) affecting the Hospital, the Practices or the Assets;

(b)     threatened employee strike, work stoppage, or labor dispute pertaining to the Hospital or the Practices;

(c)     sale, assignment, transfer, or disposition of any item of property, plant or equipment included in the Assets having a value in excess of Ten Thousand Dollars ($10,000) (other than supplies), except in the ordinary course of business and consistent with past hospital practices;

(d)     changes in the accounting methods or practices employed by Sellers or changes in depreciation or amortization policies;

(e)     any grant or incurrence of any obligation for any increase in the compensation of any employee who is employed at the Hospital (including any increase pursuant to any bonus, pension, profit-sharing, retirement, or other plan or commitment) except in the ordinary course of business or as approved in the Bankruptcy Cases or in accordance with existing, written personnel policies;

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.0116609/25/2019 SL1 1606129v5 006375.01166

(f)   making or changing of any Tax election, settling of any audit, investigation or other administrative or judicial proceeding related to Taxes, entering into any closing agreement with respect to Taxes, or filing of any amended tax return, in each case by or with respect to any Seller; or

(g)   transaction or other occurrence pertaining to the Hospital or the Practices by Sellers outside the ordinary course of business unless approved in the Bankruptcy Cases.

2.12   <u>Legal Proceedings</u>. Except for any and all cases and/or pleadings filed or to be filed in the Bankruptcy Court, or addressed in the Bankruptcy Cases by mediation or otherwise, or as set forth in the Litigation Schedule (<u>Schedule 2.12</u>), which shall be available through Sellers' claims and noticing agent's website for this bankruptcy proceeding, there are no claims, actions, suits, proceedings, or investigations pending, or threatened against or related to Sellers, the Hospital, the Practices or the Assets, at law or in equity, or before or by any federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality wherever located. Sellers have delivered to OpCo Buyer (by inclusion in the data room made available to OpCo Buyer) an accurate list and summary description of all current litigation or proceedings with respect to the Hospital, the Practices and the Assets, as well as settlements, orders and similar agreements (the **"Litigation Schedule"**) under which Sellers or any of their affiliates have current or future obligations with respect to the Hospital, the Practices or the Assets. Sellers are not in default under any order of any court or federal, state, municipal, or other governmental department, commission, board, bureau, agency or instrumentality wherever located.

2.13   <u>Permits</u>. The Hospital is duly registered with the Pennsylvania Department of Health in accordance with the applicable laws of the Commonwealth of Pennsylvania. Sellers have delivered to OpCo Buyer an accurate list and summary description on <u>Schedule 1.7(b)</u> of all such Permits owned or held by Sellers relating to the ownership, development, or operation of the Hospital, the Practices or the Assets, all of which are now, and as of the Closing shall be, in good standing. Sellers, the Hospital and the Practices, as applicable, are, and at all times since January 10, 2018, except to the extent such good standing is affected by the Bankruptcy Cases have been, in compliance in all material respects with the terms of such Permits and there are no provisions in, or agreements relating to, any Permit that preclude or limit Sellers from operating the Hospital and carrying on their operations as currently conducted. There is no pending or, , threatened proceeding by or before any Government Entity to revoke, cancel, rescind, suspend, restrict, modify, or refuse to renew any Permit owned or held by any Seller, and all such Permits are now, and as of the Closing shall be without limitation, in good standing, in full force and effect and not subject to meritorious challenge. , no event has occurred and no facts exist with respect to any material Permit owned or held by Sellers that allows, or after notice or the lapse of time or both, would allow the suspension, revocation, or termination of any such material Permit, or would result in any other material impairment in the rights of any holder thereof. Since January 11, 2018, neither Sellers nor the Hospital nor the Practices have received any written notice or communication from any Government Entity regarding any material violation of any Permit owned or held by Sellers (other than any surveys or deficiency reports for which Sellers have submitted a plan of correction that has been accepted or approved by the applicable Government Entity). Sellers have delivered to OpCo Buyer accurate and complete copies of all survey reports, deficiency notices, plans of correction, and related correspondence received by

Sellers or the Hospital since January 11, 2018 in connection with the Permits owned or held by Sellers.

2.14    Medicare Participation; Accreditation and Compliance. The Hospital is qualified for participation in the Medicare, Medicaid and TRICARE programs, has current and valid provider contracts with such programs, is in compliance in all material respects with the conditions of participation in such programs, and has received all approvals or qualifications necessary for capital reimbursement for the Hospital. Sellers have, or shall at least two days prior to Closing Date, delivered accurate and complete copies of all such program agreements to Buyer OpCo, each of which is in full force and effect. All billing practices of Sellers to all third party payors, including, without limitation, the government programs and private insurance companies, have been conducted in material compliance with all applicable law and the billing guidelines of such third party payors, and Sellers have not billed or received any payment or reimbursement in excess of amounts allowed by law. There is no proceeding, survey, or other action pending or, , threatened, involving any of the government programs or any other third party payor programs, including the Hospital's participation in and the reimbursement received by Sellers and the Hospital from the government programs or any such program. No Seller (i) is a party to a Corporate Integrity Agreement with the Office of Inspector General of the United States Department of Health and Human Services, (ii) has any reporting obligations pursuant to any settlement agreement entered into with any governmental entity, (iii) has been, , within the past five (5) years the subject of any governmental payor program investigation conducted by any federal or state enforcement agency, (iv) is and has been, , within the past five (5) years a defendant in any qui tam/False Claims Act litigation, (v) during the past five (5) years has been served with or received any search warrant, subpoena, civil investigative demand, or, contact letter or telephone or personal contact by or from any federal or state enforcement agency, and (vi) has during the past five (5) years received any written complaints from any employee, independent contractor, vendor, physician or other person or organization that would indicate that such Seller has violated any healthcare law or regulation. The Hospital is duly accredited, with no contingencies, by The Joint Commission. A copy of the most recent accreditation letter from The Joint Commission pertaining to the Hospital has been made available to OpCo Buyer. Schedule 2.14 contains a list of all national provider identifiers and all provider numbers under the government programs issued to and held by Sellers and the Hospital, all of which are in full force and effect. No Seller has been excluded from participation in the Medicare, Medicaid or TRICARE programs, nor is any such exclusion threatened. Sellers have not received any notice from any of the Medicare, Medicaid or TRICARE programs, or any other third party payor programs, of any pending or threatened investigations or surveys.

2.15    Regulatory Compliance . Sellers are in compliance in all material respects with all material statutes, rules, regulations, and requirements of the Government Entities having jurisdiction over the Hospital or the Practices and the operations of the Hospital, the Practices or its related ancillary services. As used herein, "**Government Entity**" means any government or any agency, bureau, board, directorate, commission, court, department, official, political subdivision, tribunal or other instrumentality of any government, whether federal, state or local. Sellers have timely filed all material reports, data, and other information required to be filed with the Government Entities. Sellers have not committed a material violation of federal or state laws regulating fraud, including but not limited to the federal Anti-Kickback Law, the Stark Law, and the False Claims Act. Sellers' contracts with physicians are in compliance in all material respects

with all applicable state corporate practice of medicine and fee-splitting laws and regulations. Except as set forth in Schedule 2.15, Sellers are in compliance in all material respects with the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**") as amended and all rules and regulations promulgated pursuant to HIPAA. Sellers' contracts with referral sources, including (a) physicians, or physicians' immediate family members (as that term is defined at 42 C.F.R. § 411.351), or other healthcare providers or entities in which physicians or other healthcare providers are equity owners or healthcare providers, (b) entities that refer to Sellers, or (c) entities that are the beneficiaries of referrals from providers at Sellers, are in compliance in all material respects with all applicable laws, including, without limitation, state corporate practice of medicine, fee splitting, anti-markup, anti-kickback, disclosure and self-referral related laws and regulations.

2.16    **[RESERVED]**.

2.17    Title. Subject to the entry of the Sale Order, on the Closing Date Sellers will transfer to OpCo good and valid title to all tangible personal property assets and valid title to all intangible assets included in the Assets, free and clear of all Interests, except the Assumed Obligations.

2.18    Employee Benefit Plans.

(a)    Set forth on Schedule 2.18(a) is a list of each Seller Plan. For purposes of this Agreement, "**Seller Plans**" means (i) each "employee benefit plan" (within the meaning of Section 3(3) of ERISA), and (ii) each other retirement, non-qualified deferred compensation, disability, vacation, leave of absence, fringe benefit, severance, change-in-control, option, equity or equity-based, bonus, incentive, welfare or material fringe benefit plan, program, agreement or arrangement currently maintained, contributed to, or required to be contributed to, by Seller or any ERISA Affiliate for the benefit of any current or former director, officer, consultant or employee of the Hospital or the Practices. For purposes of this Agreement, "**ERISA Affiliate**" means any person or entity under common control with the Seller within the meaning of Section 414(b), (c), (m) or (o) of the Internal Revenue Code of 1986, as amended (the "**Code**").

(b)    As applicable with respect to each of the Seller Plans, the Seller has made available to Buyer true and complete copies of (i) the applicable plan document (including all amendments thereof) and in the case of an unwritten Seller Plan, a written description of the material terms thereof, (ii) the most recent summary plan description, (iii) the last filed Form 5500 series and all schedules thereto and (iv) the most recent determination, opinion or advisory letter issued by the Internal Revenue Service ("**IRS**").

(c)    Each Seller Plan has been maintained, operated and administered in compliance with its terms and the applicable provisions of ERISA, the Code and all other applicable laws, including, without limitation, the applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), and the Code.

(d)    Each Seller Plan that is intended to meet the qualification requirements of Section 401(a) of the Code has received a determination, opinion or advisory letter from

the IRS to the effect that such Seller Plan is so qualified, and no determination, opinion or advisory letter with respect to any Seller Plan has been revoked nor is any such revocation threatened.

(e)     All contributions and premium payments that are due to any Seller Plan on or before the Closing Date have been timely made or accrued and reflected on the Seller's financial statements.

(f)     No Seller Plan provides medical, life insurance, disability or other welfare benefits beyond termination of service or retirement other than coverage mandated by law.

(g)     Except as set forth in any Court-approved key employee incentive plan, neither the execution of this Agreement nor the consummation of the transactions contemplated hereby (either alone or together with any other event) will (i) entitle any current or former employee, officer, director or consultant of the Hospital or the Practices to any payment or benefit, including any bonus, retention, separation, severance, termination, retirement or similar benefits or payments; or (ii) accelerate the time of payment or vesting or trigger any payment or funding (through a grantor trust or otherwise) of compensation or benefits under, or increase the amount payable under, any Seller Plan.

2.19    <u>Taxes</u>. Except as set forth on <u>Schedule 2.19</u>, Sellers have filed all federal, state and local tax returns required to be filed by Sellers (all of which are true and correct in all material respects) and have duly paid or made provision for the payment of all Taxes (including any interest or penalties and amounts due state unemployment authorities) which are due and payable to the appropriate tax authorities. no deficiencies for any of such Taxes have been asserted or threatened, and no audit on any such returns is currently under way or threatened. There are no outstanding agreements by Sellers for the extension of time for the assessment of any such Taxes. There are no tax liens on any of the Assets and no basis exists for the imposition of any such liens. As used in this Agreement, "**Tax**" or "**Taxes**" means (a) any federal, state, local or foreign income, gross receipts, capital, bulk, production, license, payroll, employment, excise, severance, stamp, recording, occupation, premium, windfall profits, environmental, customs duties, franchise, single business, profits, margin, withholding, social security, unemployment, disability, real property, real estate excise, mortgage, inventory, personal property, intangible property, escheatment, unclaimed property, sales, use, ad valorem, transfer, registration, value added, alternative or add-on minimum, estimated or other tax, fee or assessment of any kind whatsoever, including any interest, penalties, fines, additions to tax or additional amounts imposed by any Government Entity with respect thereto, whether disputed or not, and (b) any liability for payment of amounts described in clause (a) whether as a result of transferee liability, of being a member of an affiliated, consolidated, combined or unitary group for any taxable period (including, without limitation, any liability pursuant to Treasury Regulations Section 1.1502-6 or any similar provision of state, local or foreign law), by contract, or otherwise.

2.20    <u>Employee Relations </u>. All employees of the Hospital are employees of one of the Sellers.  There is no threatened employee strike, work stoppage, or labor dispute pertaining to the

Hospital. No union representation question exists respecting any employees of any Seller. Except as set forth on Schedule 2.20, no collective bargaining agreement exists or is currently being negotiated by any Seller, no demand has been made for recognition by a labor organization by or with respect to any employees of any Seller, no union organizing activities by or with respect to any employees of any Seller are taking place, and none of the employees of any Seller is represented by any labor union or organization. There is no unfair practice claim against any Seller before the National Labor Relations Board, nor any strike, dispute, slowdown, or stoppage pending or threatened against or involving the Hospital or the Practices, and none has occurred within the last five (5) years. Sellers are in compliance in all material respects with all federal and state laws respecting employment and employment practices, terms and conditions of employment, and wages and hours. Sellers are not engaged in any unfair labor practices. Sellers have complied in all material respects with all requirements of the Immigration and Reform and Control Act of 1986. Except as set forth on Schedule 2.20, there are no pending or threatened EEOC claims, OSHA complaints, union grievances, wage and hour claims, unemployment compensation claims, workers' compensation claims or the like.

2.21    Personnel.

(a)    Schedule 2.21(a) sets forth a complete list (as of the date set forth therein) of names, positions and current annual salaries or wage rates and scheduled bonus, and the accrued paid time off pay of all employees of the Debtor Parties who are providing services at the Hospital and Practices immediately prior to August 18, 2019, whether such employees are full time employees, part-time employees, on short-term or long-term disability or on leave of absence pursuant to Sellers's policies, the Family and Medical Leave Act of 1993 or other similar Legal Requirements (the "**Seller Employees**") and indicating whether the Sellers Employee is full-time or part-time. Sellers shall have the obligation to update to Schedule 2.21(a) to reflect changes in employment status or new hires and terminations occurring after August 18, 2019 by providing a revised schedule to OpCo Buyer no later than five (5) business days before the date scheduled for the Closing.

(b)    There are no adverse actions with respect to any Seller Employee or any applicant thereto for which a Seller Employee or applicant has requested a judicial review which has not been scheduled or has been scheduled but has not been completed, and there are no pending threatened disputes with applicants, Seller Employees, or health professional affiliates, and Sellers know of no basis therefore, and all appeal periods in respect of any Seller Employee or applicant against whom an adverse action has been taken have expired. Schedule 2.21(b) sets forth a complete list of all Seller Employees who have resigned or had their privileges revoked or suspended since July 1, 2019.

2.22    Supplies. All the inventory and supplies constituting any part of the Assets are substantially of a quality and quantity usable and salable in the ordinary course of business of the Hospital and the Practices. The inventory levels as of the Closing Date will be consistent with normalized inventory levels at the Hospital and the Practices since the filing of the Bankruptcy Cases.

2.23    Insurance. Schedule 2.23 contains an accurate listing of the insurance policies covering the ownership and operations of the Hospital, the Practices and the Assets, which

Schedule 2.23 reflects the policies' numbers, terms, identity of insurers, amounts, and coverage. All of such policies are in full force and effect with no premium arrearage. Sellers have given in a timely manner to its insurers all notices required to be given under their insurance policies with respect to all of the claims and actions covered by insurance, and no insurer has denied coverage of any such claims or actions. Sellers have not (a) received any notice or other communication from any such insurance company canceling or materially amending any of such insurance policies, and no such cancellation or amendment is threatened or (b) failed to give any required notice or present any claim which is still outstanding under any of such policies with respect to the Hospital, the Practices or any of the Assets.

2.24    Payor Contracts. Schedule 2.24 sets forth a complete list of all written contracts with private third party payors including insurance companies, managed care organizations and HMOs ("**Payor Contracts**"). Sellers have provided OpCo Buyer with a true and correct copy of all material Payor Contracts, whether or not entered into in the ordinary course of business, or otherwise required to be disclosed on Schedule 2.24, in each case together with all amendments thereto.

2.25    Excluded Individuals. Neither Sellers, the Hospital, Practices nor any director or manager (as applicable), officer or employee of Sellers or the Hospital or Practices (a) was, is or is proposed to be, suspended, excluded from participation in, or sanctioned under, any federal or state health care program (including, without limitation, Medicare and Medicaid) (an "**Excluded Individual**"); (b) has been convicted of any criminal offense related to the delivery of any medical or health care services or supplies, or related to the neglect or abuse of patients; (c) has failed to maintain its current license to provide the services required to be provided by it to or on behalf of Sellers, the Hospital and the Practices; or (d) is unable to obtain or maintain liability insurance consistent with commercially reasonable industry practices.

2.26    Third Party Payor Cost Reports. Sellers have duly filed all required cost reports for all the fiscal years set forth on Schedule 2.26, and copies of all such cost reports filed by or on behalf of Sellers since January 11, 2018 have been provided to OpCo Buyer. All of such cost reports accurately reflect in all material respects the information required to be included thereon and such cost reports do not claim, and neither the Hospital nor Sellers have received, reimbursement in any amount in excess of, the amounts provided by law or any applicable agreement.  There are no facts or circumstances that would give rise to any disallowance under such cost reports. Schedule 2.26 indicates which of such cost reports have not been audited and finally settled and a brief description of any and all notices of program reimbursement, proposed or pending audit adjustments, disallowances, appeals of disallowances, and any and all other unresolved claims or disputes in respect of such cost reports. Sellers have established adequate reserves to cover any potential reimbursement obligations that Sellers may have in respect of any such third party cost reports, and such reserves are set forth in the Historical Financial Statements.

2.27    Regulatory Compliance.

(a)    Neither Sellers nor the Hospital, nor any of their respective officers, directors or employees, have been convicted of, charged with or, , investigated for, or have engaged in conduct that would constitute, a Medicare or other Federal Health Care Program (as

defined in 42 U.S.C. § 1320a-7(b)(f)) related offense or convicted of, charged with or, , investigated for, or engaged in conduct that would constitute a violation of any law related to fraud, theft, embezzlement, breach of fiduciary duty, kickbacks, bribes, other financial misconduct, obstruction of an investigation or controlled substances. None of Sellers, the Hospital nor any officer, director, employee or independent contractor of Sellers or the Hospital (whether an individual or entity), has been excluded from participating in any government program, subject to sanction pursuant to 42 U.S.C. § 1320a-7a or § 1320a-8 or been convicted of a crime described at 42 U.S.C. § 1320a-7b, nor, , are any such exclusions, sanctions or charges threatened or pending.

(b)    Neither Sellers nor the Hospital have received at any time since January 10, 2018, any communication from a Government Entity, commercial payor or patient that alleges the Hospital, the Practices or the Assets are not in compliance with any law, other than statements of deficiencies from a Government Entity received in the ordinary course of business. Sellers have timely filed all material reports, data, and other information required to be filed with such commissions, boards, bureaus, and agencies regarding the Hospital, the Practices and the Assets.

2.28    <u>Information Privacy and Security Compliance</u>.

(a)    Except as set forth in <u>Schedule 2.28(a)</u>, Sellers and the Hospital (i) to the extent their operations are subject to the administrative simplification provisions of HIPAA, and the implementing regulations contained in 45 C.F.R. Parts 160, 162 and 164, are in compliance in all material respects with those administrative simplification provisions and implementing regulations, including, without limitation, in conducting any of the standard transactions set forth in 45 C.F.R. Part 162; and (ii) are in compliance in all material respects with all other applicable Information Privacy or Security Laws.

(b)    "**Information Privacy or Security Laws**" means HIPAA and the implementing regulations and any other law concerning the privacy or security of Personal Information, including federally-assisted substance use disorder treatment programs, as defined 42 CFR Part 2, state data breach notification laws, state health information privacy laws, the FTC Act, the FTC Red Flag Rules, and state consumer protection laws. "**Personal Information**" means any information with respect to which there is a reasonable basis to believe that the information can be used to identify an individual, including "individually identifiable health information" as defined in 45 C.F.R. 160.103, demographic information, and Social Security numbers.

2.29    <u>Intellectual Property</u>.

(a)    Sellers own, or will own, or are licensed or will be licensed or otherwise possesses or will possess all necessary rights to use, all of the Intellectual Property and the Excluded Intellectual Property.

(b)    There is no unauthorized use, disclosure, infringement or misappropriation of any Intellectual Property rights of Sellers, or any trade secret material to Sellers, by any third

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

party, including any employee or former employee of Sellers or any of their affiliates, relating in any way to any of the Assets.

(c)    "**Intellectual Property**" means, to the extent used or held for use in or ancillary to the Hospital, the Practices and the Assets, all intellectual property or rights thereto, including patents, trademarks, trade names, service marks, symbols, copyrights and any applications therefor, mask works, net lists, schematics, technology, know-how, trade secrets, ideas, algorithms, processes, internet domain names, computer software programs and applications (in both source code and object code form), and tangible or intangible proprietary information or material, except for the Excluded Intellectual Property.

(d)    "**Excluded Intellectual Property**" means the Intellectual Property listed as excluded on Schedule 2.29(d).

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES OF OPCO BUYER

As an inducement to Sellers to enter into this Agreement and to consummate the transactions contemplated by this Agreement, OpCo Buyer hereby represents, warrants and covenants to Sellers that the following matters are true and complete as of the date hereof, and when read in light of any schedules which have been updated in accordance with the provisions of Section 13.5, as of the Closing Date:

3.1    Existence and Capacity. OpCo Buyer is a limited liability company duly organized and validly existing in good standing under the laws of the Commonwealth of Pennsylvania. OpCo Buyer has the requisite power and authority to enter into this Agreement, to perform their respective obligations hereunder, and to conduct its business as historically conducted.

3.2    Powers; Consents; Conflicts. The execution, delivery, and performance of this Agreement by OpCo Buyer and all other agreements referenced herein, or ancillary hereto, to which OpCo Buyer is a party, and the consummation of the transactions contemplated herein by OpCo Buyer:

(a)    are within its corporate powers, are not in contravention of law or of the terms of its organizational documents, and have been duly authorized by all appropriate corporate action;

(b)    except as provided in ARTICLE 8, do not require any approval or consent of, or filing with, any governmental agency or authority bearing on the validity of this Agreement which is required by law or the regulations of any such agency or authority;

(c)    will neither conflict with, nor result in any breach or contravention of, or the creation of any lien, charge or encumbrance under, any indenture, agreement, lease, instrument or understanding to which it is a party or by which it is bound;

(d)    will not violate any statute, law, rule, or regulation of any Government Entity to which it may be subject; and

(e)    will not violate any judgment, decree, writ, or injunction of any court or Government Entity to which it may be subject.

3.3    <u>Binding Agreement</u>. Subject to entry of the Sale Order, this Agreement and all agreements to which OpCo Buyer will become a party pursuant hereto are and will constitute the valid and legally binding obligations of OpCo Buyer and are and will be enforceable against OpCo Buyer in accordance with the respective terms hereof and thereof.

3.4    <u>Availability of Funds</u>. OpCo Buyer has the ability to obtain funds in cash in amounts equal to the Purchase Price by means of credit facilities or otherwise and will at the Closing have immediately available funds in cash which are sufficient to pay the Purchase Price and to pay any other amounts payable pursuant to this Agreement and to consummate the transactions contemplated by this Agreement.

3.5    <u>OpCo Buyer Knowledge</u>. References in this Agreement to "OpCo Buyer's knowledge" or "the knowledge of OpCo Buyer" means the actual knowledge of the Clint Matthews, Daniel Ahern, John Fry, Anthony Esposito and Jill Tillman, without independent research. No constructive or imputed knowledge shall be attributed to any such individual by virtue of any position held, relationship to any other Person or for any other reason.

## ARTICLE 4
## COVENANTS OF SELLERS

4.1    <u>Access and Information; Inspections</u>.

(a)    From the Signing Date through the Closing Date, (a) each Seller shall afford to the officers and agents of OpCo Buyer (which shall include accountants, attorneys, bankers and other consultants and authorized agents of OpCo Buyer) reasonable access during normal business hours at such Seller's corporate headquarters in Philadelphia, Pennsylvania to, and the right to inspect, the books, accounts, records and all other relevant documents and information with respect to the assets, liabilities and business of the Hospital and the Practices of such Seller and the plant and property of the Hospital of such Seller at the Hospital of such Seller and (b) each Seller shall furnish OpCo Buyer with such additional financial and operating data and other information in such Seller's possession as to businesses and properties of the Hospital and Practices of such Seller as OpCo Buyer or its representatives may from time to time reasonably request; provided, however, that all disclosures of information shall be consistent with the confidentiality agreements and any other non-disclosure agreements entered into (or to be entered into) among OpCo Buyer, its representatives and such Seller. OpCo Buyer's right of access and inspection shall be exercised in such a manner as not to interfere unreasonably with the operations of any Seller, the Hospital or Practices.

(b)    Notwithstanding anything contained herein, no Seller shall be required to provide OpCo Buyer or their representatives or agents access to or disclose information where such access or disclosure would violate the rights of its patients, jeopardize the attorney-client or similar privilege with respect to such information or contravene any law, judgment or contract with respect to such information, provided however, the Sellers' obligation to provide to OpCo Buyer any Seller Contract which is subject to a nondisclosure agreement binding upon a Seller

shall be required only if the Sale Order (whether by generic reference or otherwise), or other order of the Bankruptcy Court, permits such Seller Contract to be provided to OpCo Buyer.

(c)     Sellers will delivered to OpCo Buyer true, correct and complete copies of each Assumed Contract and Assumed Lease and each Assumed Contract and Assumed Lease constitutes the entire agreement by and between the respective parties thereto with respect to the subject matter thereof;

(d)     Sellers will provide to OpCo Buyer any records in their possession relating to any data security breach, written complaint alleging a violation of any Information Privacy or Security Laws and any open requests for medical records delivered to Sellers, the Hospital or the Practices since January 11, 2018.

4.2     Cooperation.

(a)     Each Seller shall reasonably cooperate with OpCo Buyer and its authorized representatives and attorneys: (a) in OpCo Buyer's efforts to obtain all consents, approvals, authorizations, clearances and licenses required to carry out the transactions contemplated by this Agreement (including, without limitation, those of governmental and regulatory authorities) or which OpCo Buyer reasonably deems necessary or appropriate, (b) in the preparation of any document or other material which may be required by any governmental agency as a predicate to or result of the transactions contemplated in this Agreement, and (c) in OpCo Buyer's efforts to effectuate the assignment of Assumed Contracts and Assumed Leases to OpCo Buyer as of the Closing Date. Except as may be otherwise requested by a Seller in order to comply with applicable law or regulatory guidance, notwithstanding anything contained herein, other than Bankruptcy Court orders and authorizations, it shall be OpCo Buyer's sole responsibility (including payment of any fees, expenses, filings costs or other amounts) to obtain all governmental consents, approvals, assignments, authorizations, clearances and licenses required to (x) carry out the transactions contemplated by this Agreement, including but not limited to medical licenses and/or (y) transfer any of the Assets, including any Permits. To the extent OpCo Buyer needs certain information and data which is in the possession of a Seller in order for OpCo Buyer to complete OpCo Buyer's license and permit approval applications, OpCo Buyer shall receive, upon request, reasonable assistance from such Seller in connection with the provision of such information.

(b)     OpCo Buyer and Sellers will enter into a mutually acceptable form of transition agreement to permit OpCo Buyer to use the Sellers' Medicare institutional provider numbers and related billing information and the Pennsylvania provider numbers and related billing information, following the Closing during the pendency of the OpCo Medicare CHOW Applications and Medicaid Enrollment Application to bill for services furnished by OpCo to Medicare and Medicaid beneficiaries.

4.3     **[RESERVED]**.

4.4     Sellers' Efforts to Close. Seller shall use its reasonable commercial efforts to satisfy all of the conditions precedent set forth in ARTICLE 7 and ARTICLE 8 to its or OpCo

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.0116609/25/2019 SL1 1606129v5 006375.01166

Buyer's obligations under this Agreement to the extent that such Seller's action or inaction can control or materially influence the satisfaction of such conditions.

4.5    Termination Cost Reports. Each Seller shall file all Medicare, Medicaid and any other termination cost reports required to be filed as a result of the consummation of (a) the transfer of the Assets of such Seller to OpCo Buyer and (b) the transactions contemplated by this Agreement with respect to such Seller.  OpCo Buyer shall permit each Seller access to all Hospital and Practices books and records to prepare such reports and shall assist such Seller in the process of preparing, filing, and reviewing the termination cost reports. All such termination cost reports shall be filed by the applicable Seller in a manner that is consistent with current laws, rules and regulations. Each Seller shall be responsible for filing governmental cost reports for the period of January 1, 2019 through the Closing Date. OpCo Buyer shall be responsible for its own cost report filings relating to the Hospital or the Practices beginning on the day immediately following the Closing Date.

4.6    Conduct of the Business. From the Signing Date until the Closing, or the earlier termination of this Agreement, without the prior written consent of OpCo Buyer (which consent shall not be unreasonably withheld), Sellers shall, with respect to the ownership of the Assets and the operation of the Hospital and the Practices, use commercially reasonable efforts to, in each case except as would not have a material adverse effect (other than as noted below):

(a)    without regard to material adverse effect, carry on Sellers' ownership of the Assets and the operation of the Hospital, the Practices and the graduate medical education residency and fellowship programs in the ordinary course of business consistent with past practice of hospital operations;

(b)    maintain in effect the insurance and equipment replacement coverage with respect to the Assets;

(c)    maintain the Assets in materially the same condition as at present, ordinary wear and tear excepted;

(d)    perform its obligations under all Assumed Contracts and Assumed Leases;

(e)    following entry of the Sale Order, permit and allow reasonable access by OpCo Buyer and its representatives (which shall include the right to send written materials, all of which shall be subject to Sellers' reasonable approval prior to delivery) to make offers of post-Closing employment to any of Sellers' personnel (including access by OpCo Buyer and its representatives for the purpose of conducting open enrollment sessions for OpCo Buyer's employee benefit plans and programs) and to establish relationships with physicians, medical staff and others having business relations with Sellers;

(f)    with respect to material deficiencies, if any, cited by any governmental authority or accreditation body in the most recent surveys conducted by each, cure or develop and timely implement a plan of correction that is acceptable to such governmental authority or such accreditation body;

(g)    timely file or cause to be filed all material reports, notices and tax returns required to be filed and pay all required taxes as they come due to the extent that nonpayment would result in a lien that would not be divested by the Sale Order;

(h)    comply in all material respects with all Legal Requirements (including environmental laws) applicable to the conduct and operation of the Hospital and Practices; and

(i)    without regard to material adverse effect, maintain all material approvals, Permits and environmental Permits relating to the Hospital and the Practices, and the Assets.

4.7    <u>Name Change</u>. Immediately after the Closing, the Sellers will change their name to a name not containing the words "ST. CHRISTOPHER'S HOSPITAL FOR CHILDREN" or any similar words and Sellers shall promptly deliver to OpCo Buyer evidence of such name change. At the request of OpCo Buyer, Sellers shall take all necessary actions to permit OpCo Buyer or OpCo Buyer's Affiliates to do business under the name "ST. CHRISTOPHER'S HOSPITAL FOR CHILDREN" and under any similar names in any jurisdiction in which the Hospital Business and the Physician Practice Business are currently conducted.

**ARTICLE 5**
**COVENANTS OF OPCO BUYER**

5.1    <u>OpCo Buyer's Efforts to Close</u>. OpCo Buyer shall use its reasonable commercial efforts to satisfy all of the conditions precedent set forth in <u>ARTICLE 7</u> and <u>ARTICLE 8</u> to its or Sellers' obligations under this Agreement to the extent that OpCo Buyer's action or inaction can control or materially influence the satisfaction of such conditions. Prior to consummation of the transactions contemplated hereby or the termination or expiration of this Agreement, OpCo Buyer shall be permitted to communicate and meet with (a) counter-parties to the Assumed Contracts, and the Assumed Leases regarding the terms and conditions under which they may be assumed and assigned to OpCo Buyer, and (b) applicable governmental and regulatory authorities regarding prospective compliance with regulatory requirements and related issues; so long as, in the case of each of (a) and (b) (i) such communications and meetings do not interfere with the operation of the Hospital Business or Physician Practice Business or the conduct of the Bankruptcy Cases and (ii) any communications or meetings with any governmental authority are approved in advance by Sellers as to timing and content (and Sellers are copied on such communications and afforded the opportunity to participate in such meetings).

5.2    <u>Required Governmental Approvals</u>. OpCo Buyer believes in good faith that it has the ability to obtain all required consents, approvals (or exemptions therefrom), authorizations, clearances and licenses required to be obtained from governmental and regulatory authorities in order to carry out the transactions contemplated by this Agreement. OpCo Buyer, at its sole cost and expense (a) shall use its best efforts to secure, as promptly as practicable before the Closing Date, all consents, approvals (or exemptions therefrom), authorizations, clearances and licenses required to be obtained from governmental and regulatory authorities in order to carry out the transactions contemplated by this Agreement and to cause all of its covenants and agreements to be performed, satisfied and fulfilled (and provide Sellers copies of all materials relating to such consents, approvals, authorizations, clearances and licenses upon submission and all materials received from third parties in connection with such consents, approvals, authorizations,

clearances and licenses upon receipt), and (b) will provide such other information and communications to governmental and regulatory authorities as any Seller or such authorities may reasonably request. OpCo Buyer will provide Sellers periodic and timely updates regarding all such consents, approvals, authorizations, clearances and licenses. OpCo Buyer is responsible for all filings with and requests to governmental authorities necessary to enable OpCo Buyer to operate the Hospital and the Practices after the Effective Time. OpCo Buyer shall, promptly, after the entry of the Sale Order or sooner if required by applicable governmental or regulatory authorities, file all applications, licensing packages and other similar documents with all applicable governmental and regulatory authorities which are a prerequisite to obtaining the material licenses, Permits, authorizations and provider numbers described in Section 8.1. OpCo Buyer shall be entitled, but not obligated, to solicit and obtain estoppel certificates from any third party to any Leased Real Property.

5.3    Certain Employee Matters.

(a)    OpCo Buyer agrees to offer, or cause any affiliate to offer, employment to substantially all of the Sellers' Employees; provided, that such Sellers' Employees satisfy OpCo Buyer's screening and required employment background checks and meet the customary and reasonable conditions and qualifications for their respective positions. Any of the Sellers' Employees who accept an offer of employment with OpCo Buyer as of the Closing Date shall be referred to in this Agreement as the "**Hired Employees**", and shall be listed on Schedule 5.3, and such schedule shall be delivered to Sellers by OpCo Buyer prior to the Closing Date. For the avoidance of doubt, the Sellers' Employees shall not include any employees of any affiliate of Sellers unless such individual is listed on Schedule 5.3. All employees who are Hired Employees shall cease to be employees of the applicable Seller or its affiliates as of the Effective Time. OpCo Buyer shall credit all Hired Employees with any paid time off ("**PTO**") accruing but unused under Sellers' PTO policy subsequent to the commencement of the Bankruptcy Cases ("**PTO Obligation**").

(b)    OpCo Buyer will recognize and assume the collective bargaining agreement (the "**IBEW CBA**") between St. Christopher's Hospital for Children and International Brotherhood of Electrical Workers Local 98 ("**IBEW**") covering August 12, 2017 through August 11, 2020. Notwithstanding anything in this Agreement, OpCo Buyer shall not recognize, be a party to or agree to assume any other collective bargaining agreement or bargaining obligations between any Seller and any Seller Employees.

(c)    The provisions of this Section 5.3 are solely for the benefit of the parties to this Agreement, and no employee or former employee or any other individual associated therewith or any employee benefit plan or trustee thereof shall be regarded for any purpose as a third party beneficiary of this Agreement, and nothing herein shall be construed as an amendment to any employee benefit plan for any purpose.

(d)    In the event that any transaction under this Agreement results in an employment loss that constitutes a "plant closing," "mass layoff," "transfer of operations" or "termination of operations" or is otherwise subject to the WARN Act or any similar state or local law), Sellers shall be solely responsible, and accept all liability, for compliance with the WARN

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

Act or any similar applicable law (including, without limitation, the issuance of any required notices) in connection with all transactions covered by this Agreement.

5.4    Residents. OpCo Buyer agrees to assume responsibilityOpCo Buyer intends to negotiate with counterparties to existing academic affiliation agreements to provide, at a minimum, for the continued training of all current students, Hospital residents and fellows (the "Continuing Residents") on and afterplanned through the current academic year and for such longer period as may be agreed to between OpCo Buyer and applicable academic institution on or before the Closing Date...

5.5    Excluded Assets. As soon as practicable after the Closing Date, OpCo Buyer shall deliver to each Seller or such Seller's designee any physical Excluded Assets of such Seller found at the Hospital on and after the Closing Date.

5.6    HSR Filing. If applicable, OpCo Buyer and each Seller will as promptly as practicable, and in any event no later than five (5) business days after the date of the Sale Order, file with the Federal Trade Commission and the Department of Justice the notification and report forms required for the transactions contemplated hereby and any supplemental information that may be reasonably requested in connection therewith pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "**HSR Act**"), which notification and report forms and supplemental information will comply in all material respects with the requirements of the HSR Act. OpCo Buyer shall pay all filing fees required with respect to the notification, report and other requirements of the HSR Act. Each of OpCo Buyer and Sellers shall furnish to the other such information and assistance as the other shall reasonably requires in connection with the preparation and submission to, or agency proceedings by, any governmental authority under the HSR Act, and each of OpCo Buyer and Sellers shall keep the other promptly apprised of any communications with, and inquires or requests for information from, such governmental authorities. OpCo Buyer shall take such action (including divestitures or hold separate arrangements) as may be required by any governmental authority in order to resolve with the minimum practicable delay any objections such governmental authorities may have to the transactions contemplated by this Agreement under the HSR Act.  To the extent that expedited review by the Federal Trade Commission or the Department of Justice as contemplated by this Section 5.6 is available, the Sellers agree to seek such expedited review.

**ARTICLE 6**
**BANKRUPTCY COURT APPROVAL**

6.1    Bankruptcy Court Approval.

(a)    Sellers and OpCo Buyer acknowledge that this Agreement and the sale of the Assets and the assumption and assignment of the Assumed Contracts and Assumed Leases are subject to entry by the Bankruptcy Court of an Order (the "**Sale Order**") in the form attached hereto as Exhibit A.

(b)    Each Seller shall at the sale hearing contemplated by the order entered by the Bankruptcy Court establishing procedures for the sale of the Assets (the "**Bid Procedures**") exercise reasonable efforts to obtain the Sale Order.

6.2     Appeal of Sale Order. In the event an appeal is taken or a stay pending appeal is requested from the Sale Order, Sellers shall immediately notify OpCo Buyer of such appeal or stay request and shall provide to OpCo Buyer promptly a copy of the related notice of appeal or order of stay. Sellers shall also provide OpCo Buyer with written notice of any motion or application filed in connection with any appeal from either of such orders. In the event of an appeal of the Sale Order, Sellers shall be primarily responsible for drafting pleadings and attending hearings as necessary to defend against the appeal; provided, however, OpCo Buyer, at its option, shall have the right to participate as a party in interest in such appeal. In the event a stay is issued by any appellate court, including the United States District Court, which prevents the sale from closing, as scheduled, in addition to all other OpCo Buyer termination rights provided under this Agreement, OpCo Buyer shall have the right to terminate this Agreement if such stay is not vacated on or before forty-five (45) days from the date the stay is issued and, upon such termination, OpCo Buyer shall be entitled to the prompt return of the Deposit and any interest earned thereon.

**ARTICLE 7**
**CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLERS**

Sellers' obligation to sell the Assets and to close the transactions as contemplated by this Agreement shall be subject to the satisfaction of each of the following conditions on or prior to the Closing Date unless specifically waived in writing by Sellers in whole or in part at or prior to the Closing:

7.1     Signing and Delivery of Instruments. OpCo Buyer shall have executed and delivered all documents, instruments and certificates required to be executed and delivered pursuant to the provisions of this Agreement.

7.2     No Restraints. No temporary restraining order, preliminary or permanent injunction or other order preventing the consummation of the transactions contemplated in this Agreement shall have been issued by any court of competent jurisdiction or any other governmental body and shall remain in effect on the Closing Date, and further, no governmental entity shall have commenced any action or suit before any court of competent jurisdiction or other governmental authority that seeks to restrain or prohibit the consummation of the transactions contemplated hereby.

7.3     Performance of Covenants. OpCo Buyer shall have in all respects performed or complied with each and all of the obligations, covenants, agreements and conditions required to be performed or complied with by it on or prior to the Closing Date.

7.4     Governmental Authorizations. OpCo Buyer shall have obtained all material licenses, permits and authorizations from governmental agencies or governmental bodies that are necessary or required for completion of the transactions contemplated by this Agreement, including reasonable assurances that any material licenses, permits and authorizations not actually issued as of the Closing will be issued following Closing (which may include oral assurances from appropriate governmental agencies or bodies).

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

7.5     <u>Bankruptcy Court Approval</u>. The Bankruptcy Court shall have entered the Sale Order.

7.6     <u>HSR Act</u>. The applicable waiting period under the HSR Act shall have expired or been earlier terminated.

7.7     <u>Representations and Warranties; Covenants</u>. The representations and warranties of OpCo Buyer contained in this Agreement shall be true in all material respects when made and, when read in light of any schedules which have been updated in accordance with the provisions of <u>Section 13.5</u> as of the Closing Date as though such representations and warranties had been made on and as of such Closing Date. Each and all of the terms, covenants, and conditions of this Agreement to be complied with or performed by OpCo Buyer on or before the Closing Date pursuant to the terms hereof shall have been duly complied with and performed in all material respects.

## ARTICLE 8
## CONDITIONS PRECEDENT TO OBLIGATIONS OF OPCO BUYER

OpCo Buyer's obligation to purchase the Assets and to close the transactions contemplated by this Agreement shall be subject to the satisfaction of each of the following conditions on or prior to the Closing Date unless specifically waived in writing by OpCo Buyer in whole or in part at or prior to the Closing.

8.1     <u>Governmental Authorizations</u>. Except as otherwise set forth in this Agreement, OpCo Buyer and Sellers shall have obtained licenses, permits and authorizations from governmental agencies or governmental bodies that are required for the purchase, sale and operation of the Hospital and the Practices, except in such case where failure to obtain such license, permit or authorizations from a governmental agency or governmental body does not have a material adverse effect. OpCo Buyer shall promptly and in good faith undertake to obtain all required regulatory approvals. Sellers shall promptly and in good faith cooperate with OpCo Buyer's governmental authorization undertakings by providing any and all information required by any regulators in connection with any required license or provider enrollment applications and requests for regulatory approvals.

8.2     <u>Bankruptcy Court Approval</u>.

(a)     The Bankruptcy Court shall have entered the Sale Order, which shall have become a Final Order.

(b)     For purposes hereof, "**Final Order**" shall mean an order of the Bankruptcy Court, the operation or effect of which has not been stayed, and which is not subject to any pending appeal, request for leave to appeal, or request for reconsideration, and as to which the time for any such appeal, request for leave to appeal, or request for reconsideration has expired.

8.3     <u>Signing and Delivery of Instruments</u>. Sellers shall have executed and delivered all documents, instruments and certificates required to be executed and delivered pursuant to all of the provisions of this Agreement, including Section ~~1.4.~~1.4.

8.4    Performance of Covenants. Sellers shall have in all material respects performed or complied with each and all of the obligations, covenants, agreements and conditions required to be performed or complied with by Sellers on or prior to the Closing Date.

8.5    No Restraints. No temporary restraining order, preliminary or permanent injunction or other order preventing the consummation of the transactions contemplated in this Agreement shall have been issued by any court of competent jurisdiction and shall remain in effect on the Closing Date, and further, no governmental entity shall have commenced any action or suit before any court of competent jurisdiction or other governmental authority that seeks to restrain or prohibit the consummation of the transactions contemplated hereby.

8.6    Tail Coverage. OpCo Buyer shall have obtained the Tail Coverage.  For purposes of this Agreement, "**Tail Coverage**" means the reporting endorsement to insure against professional liabilities of the Debtor Parties and the Continuing ResidentsHospital residents and fellows as of the Closing Date, including any excess and umbrella coverage, in amounts and coverage satisfactory to OpCo Buyer in its sole discretion.  Sellers shall be responsible to pay one half of the cost of the Tail Coverage, up to a cap on Sellers' contribution of Two Million Dollars ("**Sellers' Tail Coverage Expense**").

8.7    Medicare and Medicaid Provider Agreements. Sellers shall have executed and delivered all documents necessary to transfer to OpCo Buyer the Provider Agreements. With respect to Sellers' provider agreements with the Pennsylvania Department of Human Services ("**PDHS**") (the "**Medicaid Provider Agreements**"), which cannot be legally transferred, OpCo Buyer shall submit new enrollment applications to participate in the Pennsylvania Medicaid program. OpCo Buyer acknowledges that it will succeed to the quality history associated with the Medicaid Provider Agreements assigned and shall be treated, for purposed of survey and certification issues as if it is the relevant Seller and no change of ownership occurred.

8.8    HSR Act. Any applicable waiting period under the HSR Act shall have expired or been earlier terminated.

8.9    Health Partners Plans, Inc. Sellers shall have executed and delivered documents sufficient to transfer to OpCo Buyer all of Sellers' interest in Health Partners Plans, Inc. currently owned and/or associated with the Hospital Seller, including the right of any Seller to receive or to designate a third party as recipient of "distributions" (other than distributions allocable to the period prior to the Closing Date) as that term is used in the Articles of Incorporation of Health Partners Plans, Inc.

8.10    Assumed Contracts; Notice. Sellers shall have provided to OpCo Buyer evidence satisfactory to OpCo Buyer that the Sellers have fully complied with the Bid Procedures, including by having provided timely service on all required parties of the Sale Notice and the Notice of Assumption, Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases of the Debtors (each as defined in the Bid Procedures) and timely publication of the form of the Sale Notice as modified for publication.

8.11    Collective Bargaining Agreements.  InSubject to the eventprovisions of Section 5.3, OpCo Buyer and eitherwill make offers of employment to the employees represented by St.

Christopher's Hospital for Children Nurses United/Pennsylvania Association of Staff Nurses and Allied Professionals ("**PASNAP**") ~~or~~and National Union of Hospital and Healthcare Employees, District 1199 ("**District 1199**"), OpCo Buyer agrees to recognize PASNAP and District 1199 as the bargaining agent for their affiliated employees. OpCo Buyer intends to negotiate with PASNAP and District 1199 regarding new mutually acceptable collective bargaining agreements which may include, *inter alia*, the terms and conditions of the offer letters given to the employees represented by PASNAP and the employees represented by District 1199.  In the event OpCo Buyer and either PASNAP or District 1199 have not entered into a mutually acceptable collective bargaining agreement with OpCo Buyer by the Closing Date, OpCo Buyer agrees to comply with applicable labor laws in any negotiations with such unions after the Closing Date.  Sellers hereby authorize OpCo Buyer to commence discussions with these unions immediately after the Signing Date.

8.12    <u>Tenet Transition Services Agreement</u>.    OpCo Buyer and Tenet Healthcare Corporation shall have entered into a transition services agreement on terms mutually acceptable to OpCo Buyer and Tenet Healthcare Corporation.

8.13    <u>Conifer Agreement</u>.  OpCo Buyer and Conifer Revenue Cycle Solution, LLC shall have entered into a Master Services Agreement on terms mutually acceptable to OpCo Buyer and Conifer Revenue Cycle Solution, LLC.

8.14    <u>Representations and Warranties; Covenants</u>. The representations and warranties of Sellers contained in this Agreement shall be true in all material respects when made and, when read in light of any schedules which have been updated in accordance with the provisions of <u>Section 13.5</u> as of the Closing Date as though such representations and warranties had been made on and as of such Closing Date. Each and all of the terms, covenants, and conditions of this Agreement to be complied with or performed by Sellers on or before the Closing Date pursuant to the terms hereof shall have been duly complied with and performed in all material respects.

## ARTICLE 9
## TERMINATION

9.1    <u>Termination</u>. This Agreement may be terminated at any time prior to Closing:

(a)    by the mutual written consent of the parties;

(b)    by Sellers if a material breach of this Agreement has been committed by OpCo Buyer and such breach has not been (i) waived in writing by Sellers or (ii) cured by OpCo Buyer to the reasonable satisfaction of Sellers within fifteen (15) business days after service by Sellers upon OpCo Buyer of a written notice which describes the nature of such breach;

(c)    by OpCo Buyer if a material breach of this Agreement has been committed by Sellers and such breach has not been (i) waived in writing by OpCo Buyer or (ii) cured by Sellers to the reasonable satisfaction of OpCo Buyer within fifteen (15) business days after service by OpCo Buyer upon Sellers of a written notice which describes the nature of such breach;

(d)     by OpCo Buyer if satisfaction of any of the conditions in ARTICLE 8 has not occurred by December 13, 2019 or becomes impossible, and OpCo Buyer has not waived such condition in writing (provided that the failure to satisfy any of the applicable condition or conditions in Sections 8.1, 8.2, 8.3, 8.4 and 8.5 inclusive has occurred by reason other than (i) through the failure of OpCo Buyer to comply with its obligations under this Agreement or (ii) Sellers' failure to provide their Closing deliveries on the Closing Date as a result of OpCo Buyer not being ready, willing and able to close the transaction on the Closing Date).  The foregoing notwithstanding, OpCo Buyer shall not be entitled to terminate this Agreement pursuant to this subsection, as a result of breach by Sellers of any representations and warranties of Sellers contained in ~~Article 2,~~ARTICLE 2, unless any such breach, alone or in the aggregate with other such breaches, results in the occurrence of a material adverse effect as defined herein.  "**Material Adverse Effect**" means any change or effect that is or would reasonably be expected to be materially adverse to the Hospital Business and Physician Practice Business (including, without limitation, material changes in relationships with providers, suppliers and patients), assets, operations, financial condition or results of operations of the Hospital Business and Physician Practice Business, taken as a whole.

(e)     by Sellers if satisfaction of any of the conditions in ARTICLE 7 has not occurred by December 13, 2019 or becomes impossible, and Sellers have not waived such condition in writing (provided that the failure to satisfy the applicable condition or conditions has occurred by reason other than (i) through the failure of Sellers to comply with their obligations under this Agreement or (ii) OpCo Buyer's failure to provide its Closing deliveries on the Closing Date as a result of Sellers not being ready, willing and able to close the transaction on the Closing Date);

(f)     by OpCo Buyer if the Bankruptcy Court enters an order dismissing any of the Sellers' Bankruptcy Cases or converting any of the Sellers' Bankruptcy Cases to Chapter 7;

(g)     by either OpCo Buyer or Sellers if the Closing has not occurred (other than as a result of a material breach of this Agreement by the party seeking to terminate) on or before December 13, 2019;

(h)     by OpCo Buyer if a force majeure event (such as acts of God, storms, floods, landslides, earthquakes, lightning, riots, fires, pandemics, sabotage, civil commotion or civil unrest, interference by civil or military authorities, acts of war (declared or undeclared) or armed hostilities, other national or international calamity, one or more acts of terrorism, or failure of energy sources) shall have occurred between the Signing Date and Closing Date, which event is reasonably likely to have a material adverse effect,

(i)     by OpCo Buyer on the day after the Auction (as defined in the Bid Procedures) if the OpCo Buyer is not designated as the Successful Bidder (as defined in the Bid Procedures), and

(j)     by OpCo Buyer if the Sale Order has not been entered on or before September ~~24,~~26, 2019.

9.2 <u>Termination Consequences</u>. If this Agreement is terminated pursuant to <u>Section 6.2</u> or <u>Section 9.1</u>: all further obligations of the parties under this Agreement shall terminate, and; further, provided, in the case of any termination based on <u>Section 9.1(b)</u> or <u>Section 9.1(c)</u> the consequences of such termination shall be determined in accordance with <u>ARTICLE 11</u>. In addition, if this Agreement is terminated pursuant to <u>Section 6.2</u> or <u>Section 9.1</u> (other than <u>Section 9.1(b)</u>), Sellers shall immediately return the Deposit to OpCo Buyer with all interest earned thereon. Each Party acknowledges that the agreements contained in this <u>Section 9.2</u> are an integral part of the transactions contemplated by this Agreement, that without these agreements such Party would not have entered into this Agreement.

### ARTICLE 10
### POST-CLOSING MATTERS

10.1 <u>Preservation and Access to Records After the Closing</u>.

(a) From the Closing Date until seven (7) years after the Closing Date or such longer period as required by law (the "**Document Retention Period**"), OpCo Buyer shall keep and preserve all medical records (including, without limitation, electronic medical records), patient records, medical staff records and other books and records which are among the Assets as of the Closing Date, but excluding any records which are among the Excluded Assets. OpCo Buyer will afford to the representatives of Sellers, Sellers' estate representative or, any liquidating trustee of Sellers' bankruptcy estate, or the Committee, subject to the Sellers' consent, (the "**Seller Parties**"), including their counsel and accountants, full and complete access to, and copies (including, without limitation, color laser copies) of, such records with respect to time periods prior to the Effective Time (including, without limitation, access to records of patients treated at the Hospital or by the Practices prior to the Effective Time) during normal business hours after the Closing Date, to the extent reasonably needed by any Seller Party for any lawful purpose, including in connection with the Bankruptcy Cases or otherwise. OpCo Buyer acknowledges that, as a result of entering into this Agreement and operating the Hospital and the Practices, it will gain access to patient records and other information which are subject to rules and regulations concerning confidentiality. OpCo Buyer shall abide by any such rules and regulations relating to the confidential information it acquires. OpCo Buyer shall maintain the patient and medical staff records at the Hospital or the Practices in accordance with applicable law and the requirements of relevant insurance carriers. After the expiration of the Document Retention Period, if OpCo Buyer intends to destroy or otherwise dispose of any of the documents described in this <u>Section 10.1(a)</u>, OpCo Buyer shall provide written notice to Sellers' counsel as of the Signing Date of OpCo Buyer's intention no later than forty-five (45) calendar days prior to the date of such intended destruction or disposal. Any of Seller Parties shall have the right, at its sole cost, to take possession of such documents during such forty-five (45) calendar day period. If any of Seller Parties does not take possession of such documents during such forty-five (45) calendar day period, OpCo Buyer shall be free to destroy or otherwise dispose of such documentation upon the expiration of such forty-five (45) calendar day period.

(b) In connection with (i) the transition of the Hospital or the Practices pursuant to the transaction contemplated by this Agreement, (ii) Sellers' rights to the Excluded Assets, (iii) any claim, audit, or proceeding, including, without limitation, any tax claim, audit, or proceeding and (iv) Sellers' obligations under the Excluded Liabilities, OpCo Buyer shall after

the Closing Date give ~~Sellers~~Seller Parties access during normal business hours to OpCo Buyer's books, personnel, accounts and records and all other relevant documents and information with respect to the assets, liabilities and business of the Hospital and the Practices as representatives of Sellers and their affiliates may from time to time reasonably request, all in such manner as not to unreasonably interfere with the operations of the Hospital and the Practices.

(c)    OpCo Buyer and its representatives shall be given access by Sellers during normal business hours to the extent reasonably needed by OpCo Buyer for business purposes to all documents, records, correspondence, work papers and other documents retained by Sellers pertaining to any of the Assets (excluding confidential employee information, privileged materials and patient records), all in such manner as to not interfere unreasonably with Sellers. Such documents and other materials shall be, at Sellers' option, either (i) copied by Sellers for OpCo Buyer at OpCo Buyer's expense, or (ii) removed by OpCo Buyer from the premises, copied by OpCo Buyer and promptly returned to Sellers.

(d)    OpCo Buyer shall comply with, and be solely responsible for, all obligations under the Standards for Privacy of Individually Identifiable Health Information (45 CFR Parts 160 and 164) promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 with respect to the operation of the Hospital or the Practices on and after the Effective Time.

(e)    To the maximum extent permitted by law, if any Person requests or demands, by subpoena or otherwise, any documents relating to the Excluded Liabilities or Excluded Assets, including without limitation, documents relating to the operations of any of the Hospital or the Practices or any of the Hospital's or the Practices' committees prior to the Effective Time, prior to any disclosure of such documents, OpCo Buyer shall notify Sellers and shall provide Sellers with the opportunity to object to, and otherwise coordinate with respect to, such request or demand.

(f)    If, notwithstanding the provisions of Sections 363 and 365 of the Bankruptcy Code, consent or approval is required for the assumption and assignment of any Assumed Contract, Assumed Lease or contract deemed not to be an executory contract, and OpCo Buyer nevertheless elects to proceed with Closing, Sellers will cooperate with OpCo Buyer in any reasonable arrangement designed to provide OpCo Buyer with the benefits of or under any such Assumed Contract, Assumed Lease or non-executory contract.

10.2    **[RESERVED]**.

10.3    <u>Medical Staff</u>. To ensure continuity of care in the community, OpCo Buyer agrees that the Hospital's medical staff members in good standing as of the Closing Date shall maintain medical staff privileges at the Hospital as of the Closing Date. On and after the Closing Date, the medical staff will be subject to the Hospital's medical staff bylaws then currently in effect, provided that such bylaws are in compliance with all applicable laws and regulations and contain customary obligations.

DMEAST #38866290 v4
~~09/24/2019 SL1 1606157v1 006375.01166~~09/25/2019 SL1 1606129v5 006375.01166

## ARTICLE 11
## DEFAULT, TAXES AND COST REPORTS

11.1    <u>OpCo Buyer Default</u>. If OpCo Buyer commits any material default under this Agreement and, as a result, Sellers terminate this Agreement pursuant to <u>Section 9.1(b)</u>, Sellers shall have the right to sue for damages; provided, however that the amount of such damages shall never exceed Three Million Dollars ($3,000,000). For the avoidance of doubt, Sellers shall have no right to sue for specific performance under this Agreement.

11.2    <u>Sellers Default</u>. If Sellers commit any material default under this Agreement and, as a result, OpCo Buyer terminates this Agreement pursuant to <u>Section 9.1(c)</u> hereof, OpCo Buyer shall have the right to demand and receive a refund of the Deposit as its sole remedy.

11.3    <u>Cost Report Matters</u>.

(a)    Consistent with <u>Section 4.5</u>, Sellers shall prepare and timely file all cost reports relating to the periods ending prior to the Effective Time or required as a result of the consummation of the transactions described in this Agreement, including, without limitation, those relating to Medicare, Medicaid, and other third party payors which settle on a cost report basis (the "**Seller Cost Reports**").

(b)    Upon reasonable notice and during normal business office hours, OpCo Buyer will cooperate reasonably with Sellers in regard to Sellers' preparation and filing of Seller Cost Reports. Such cooperation shall include, at no cost to Sellers, obtaining access to files at the Hospital or the Practices and OpCo Buyer's provision to Sellers of data and statistics, and the coordination with Sellers pursuant to reasonable notice of Medicare and Medicaid exit conferences or meetings. Sellers shall have no obligations after the Closing Date with respect to Seller Cost Reports except for preparation and filing thereof.

## ARTICLE 12
## [RESERVED]

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    <u>Further Assurances and Cooperation</u>. Sellers shall execute, acknowledge and deliver to OpCo Buyer any and all other assignments, consents, approvals, conveyances, assurances, documents and instruments reasonably requested by OpCo Buyer at any time and shall take any and all other actions reasonably requested by OpCo Buyer at any time for the purpose of more effectively assigning, transferring, granting, conveying and confirming to OpCo Buyer, the Assets. After consummation of the transaction contemplated in this Agreement, the parties agree to cooperate with each other and take such further actions as may be necessary or appropriate to effectuate, carry out and comply with all of the terms of this Agreement, the documents referred to in this Agreement and the transactions contemplated hereby.

13.2    <u>Successors and Assigns</u>. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the respective successors and assigns of the parties hereto; provided, however, that no party hereto may assign any of its

rights or delegate any of its duties under this Agreement without the prior written consent of the other parties which consent shall not be unreasonably withheld or delayed, except that OpCo Buyer may, without the prior written consent of Sellers, assign all or any portion of its rights under this Agreement to one or more of its affiliates prior to the Closing Date.

13.3    Governing Law; Venue. This Agreement shall be construed, performed, and enforced in accordance with, and governed by, the laws of the Commonwealth of Pennsylvania (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law. For so long as Sellers are subject to the jurisdiction of the Bankruptcy Court and provided the Bankruptcy Court does not decline to exercise jurisdiction, the parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. The parties hereby consent to the jurisdiction of such court and waive their right to challenge any proceeding involving or relating to this Agreement on the basis of lack of jurisdiction over the Person or forum non conveniens.

13.4    Amendments. This Agreement may not be amended other than by written instrument signed by the parties hereto.

13.5    Disclosure Schedules. All disclosure schedules referred to in this Agreement shall be attached hereto and are incorporated by reference herein. From the Signing Date until the Closing, the parties agree that Sellers may, except with respect to Schedules 1.09, 1.11, 1.7(r)(i), 1.7(r)(ii) and 5.3, which may only be modified by OpCo Buyer in its sole discretion, update the disclosure schedules as necessary upon written notice to OpCo Buyer, and the applicable representation and warranty shall thereafter be deemed amended for all purposes by such updated disclosure schedule. Notwithstanding the foregoing, should any Sellers' schedule not be completed and attached hereto as of the Signing Date, such schedule shall be delivered or completed on or before September 27, 2019. It shall be deemed a condition precedent to the obligations of the parties hereto that each of the schedules and related documents attached hereto by Sellers after the Signing Date shall be acceptable to the other party. The headings, if any, of the individual sections of the disclosure schedules are provided for convenience only and are not intended to affect the construction or interpretation of this Agreement. The disclosure schedules are arranged in sections and paragraphs corresponding to the numbered and lettered sections and paragraphs of this Agreement merely for convenience.

13.6    Notices. Any notice, demand or communication required, permitted, or desired to be given hereunder shall be deemed effectively given when personally delivered, when received by telegraphic or other electronic means (including facsimile) or overnight courier, or five (5) calendar days after being deposited in the United States mail, with postage prepaid thereon, certified or registered mail, return receipt requested, addressed as follows:

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.0116609/25/2019 SL1 1606129v5 006375.01166

|                        |                                                       |
|------------------------|-------------------------------------------------------|
| If to Sellers:         | **Allen Wilen, Chief Restructuring Officer**          |
|                        | **c/o EisnerAmper**                                    |
|                        | 1 Logan Square                                        |
|                        | 130 N. 18th Street                                    |
|                        | Suite 3000 ~~Phialdelphia~~                            |
|                        | Philadelphia PA 19103                                 |

|                        |                                                       |
|------------------------|-------------------------------------------------------|
| With copies to:        | Saul Ewing Arnstein & Lehr LLP                        |
|                        |                                                       |
| (which copies shall    | Centre Square West                                    |
| not constitute notice) | 1500 Market St., 38th Floor                           |
|                        | Philadelphia PA 19102                                 |
|                        | Attn: Jeffrey C. Hampton, Esq.                        |
|                        | Adam H. Isenberg, Esq.                                |

If to OpCo Buyer:           OpCo Buyer
420 S. Fifth Avenue
West Reading, PA 19611
Attention: President and Vice President

|                        |                                                       |
|------------------------|-------------------------------------------------------|
| With copies to:        | Ballard Spahr LLP                                     |
|                        |                                                       |
| (which copies shall    | 1735 Market Street, 51st Floor                        |
| not constitute notice) | Philadelphia, PA 19130                                |
|                        | Attention: Jean Hemphill, Esq.                        |
|                        | Facsimile: 215-864-8999                               |

and

Stevens and Lee
620 Freedom Business Center, Suite 200
King of Prussia, PA 19406
Attention: Joanne Judge, Esq.
Facsimile: 610-337-4374

or at such other address as one party may designate by notice hereunder to the other parties.

13.7    Headings. The section and other headings contained in this Agreement and in the schedules to this Agreement are included for the purpose of convenient reference only and shall not restrict, amplify, modify or otherwise affect in any way the meaning or interpretation of this Agreement or the schedules hereto.

13.8    Fair Meaning. This Agreement shall be construed according to its fair meaning and as if prepared by all parties hereto.

13.9    Gender and Number; Construction; Affiliates. All references to the neuter gender shall include the feminine or masculine gender and vice versa, where applicable, and all references to the singular shall include the plural and vice versa, where applicable. Unless

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

otherwise expressly provided, the word "including" followed by a listing does not limit the preceding words or terms and shall mean "including, without limitation." Any reference in this Agreement to an "affiliate" shall mean any Person directly or indirectly controlling, controlled by or under common control with a second Person. The term "control" (including the terms "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise. A "**Person**" shall mean any natural person, partnership, corporation, limited liability company, association, trust or other legal entity.

13.10   Third Party Beneficiary. None of the provisions contained in this Agreement are intended by the parties, nor shall they be deemed, to confer any benefit on any person not a party to this Agreement, except for (a) the parties' successors and permitted assigns and (b) any liquidating trustee or plan administrator for Sellers' estate.

13.11   Waiver of Jury Trial. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY SCHEDULES ATTACHED TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) IT HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) IT MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY, AND (D) IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 13.11.

13.12   Expenses and Attorneys' Fees. Except as otherwise provided in this Agreement, each party shall pay its own fees and expenses and those of any respective agents, advisers, attorneys, financing sources, accountants and any other representatives of such party with respect to the negotiation, execution and delivery of this Agreement and the Closing.

13.13   Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement, binding on all of the parties hereto. The parties agree that facsimile copies of signatures shall be deemed originals for all purposes hereof and that a party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder.

13.14   Entire Agreement. This Agreement, the schedules, and the documents referred to in this Agreement contain the entire understanding between the parties with respect to the transactions contemplated hereby and supersede all prior or contemporaneous agreements, understandings, representations and statements, oral or written, between the parties on the subject matter hereof (the "**Superseded Agreements**"), which Superseded Agreements shall be of no further force or effect.

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.01166 09/25/2019 SL1 1606129v5 006375.01166

13.15  <u>No Waiver</u>. Any term, covenant or condition of this Agreement may be waived at any time by the party which is entitled to the benefit thereof but only by a written notice signed by the party expressly waiving such term or condition. The subsequent acceptance of performance hereunder by a party shall not be deemed to be a waiver of any preceding breach by any other party of any term, covenant or condition of this Agreement, other than the failure of such other party to perform the particular duties so accepted, regardless of the accepting party's knowledge of such preceding breach at the time of acceptance of such performance. The waiver of any term, covenant or condition shall not be construed as a waiver of any other term, covenant or condition of this Agreement.

13.16  <u>Severability</u>. If any term, provision, condition or covenant of this Agreement or the application thereof to any party or circumstance shall be held to be invalid or unenforceable to any extent in any jurisdiction, then the remainder of this Agreement and the application of such term, provision, condition or covenant in any other jurisdiction or to persons or circumstances other than those as to whom or which it is held to be invalid or unenforceable, shall not be affected thereby, and each term, provision, condition and covenant of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

13.17  <u>Time is of the Essence</u>. Time is of the essence for all dates and time periods set forth in this Agreement and each performance called for in this Agreement.

*[Signature Page Follows]*

DMEAST #38866290 v4
09/24/2019 SL1 1606157v1 006375.0116609/25/2019 SL1 1606129v5 006375.01166

IN WITNESS WHEREOF, this Agreement has been entered into as of the day and year first above written.

**OPCO BUYER:**

STC OpCo, LLC, a Pennsylvania limited liability company

Signature By:_____
Print Name:  Clint Matthews
Title:           President

**SELLERS:**

**St. Christopher's Healthcare, LLC,**
**Philadelphia Academic Medical Associates, LLC**
**SCHC Pediatric Associates, L.L.C.,**
**St. Christopher's Pediatric Urgent Care Center,**
**L.L.C.,**
**SCHC Pediatric Anesthesia Associates, L.L.C.,**
**St Chris Care at Northeast Pediatrics, L.L.C.,**
**TPS V of PA, L.L.C.**


Signature By:_____
Print Name:   Allen Wilen,
Title:             Chief Restructuring Officer

**EXHIBIT B**

**ASSIGNED CONTRACTS**

| CONTRACT DESCRIPTION | LIQUIDATED CURE AMOUNT | MAXIMUM UNLIQUIDATED CURE AMOUNT (IF APPLICABLE) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

1" = "1" "09/20/2019 SL1 1604825v5 006375.01166" "" 09/20/2019 SL1 1604825v5 006375.0116609/26/2019 SL1 1606119v5 006375.01166

35933184.3 09/20/2019

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166

35933560.1 09/26/201909/26/2019 SL1 1606744v1 006375.01166

**EXHIBIT B**

**ASSIGNED CONTRACTS**

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| 12 St Catering, Inc. | Catering Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| 3300 Henry Avenue Operating Company d/b/a Pediatric Specialty Care | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| 3E Company Environmental, Ecological And Engineering | Quote | St. Christopher's Healthcare, LLC | $0.00 | |
| Aa Casa Inc | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Abbott Molecular Inc. | Agreement For Laboratory Probe Kits | St. Christopher's Healthcare, LLC | $0.00 | |
| Abbott Nutrition | Agreement For Infant Formula | St. Christopher's Healthcare, LLC | $136.98 | |
| Abbott Point Of Care | Comprehensive Service Plan Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Abington Memorial Hospital | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Abington Memorial Hospital | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Abington Memorial Hospital (Jefferson) | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Abington Memorial Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Abo Haven Early Learning Center | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Access Nurse Pm, Inc. | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Accruent, LLC | License Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Acs Education Services, Inc. | Tax Credit Reporting Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Ad Prima Charter School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| ADP, LLC | Payroll, Benefits, & Talent Mgt Solutions | Philadelphia Academic Health System, LLC | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Advanced Av, Llc | Statement Of Work | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Advanced Door Services, Inc. | Preventive Maintenance Agreement | St. Christopher's Healthcare, LLC | $12,011.16 | _ |
| Advanced Technologies Group, Inc. | Application Service Provider Hosting & Support Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Advantage Career Inst. | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Adynxx, Inc. | Product Consignment Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Agilent Technologies, Inc. | Quotation | St. Christopher's Healthcare, LLC | $30,264.47 | _ |
| Agustin Legido, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Ajit Mammen, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Alan Zubrow, M.D. | Physician Agreements | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Alan Zubrow, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Alanna Kramer-Wildgrube, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Albert Einstein Medical Center/Einstein Center One | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Albert Einstein Medical Center | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Albert Einstein Medical Center | Leased Employees Service Agreement (Sonographers) | St. Christopher's Healthcare, LLC | *$0.00* | _ |
| Albert Einstein Medical Center | Agreement for Clinical Rotation (Well-Baby Nursery) | St. Christopher's Healthcare, LLC | $0.00 | |
| Albert Einstein Medical Center | Agreement for Clinical Rotations (Neonatology/Maternal Fetal Medicine) | St. Christopher's Healthcare, LLC | $0.00 | |
| Albert Einstein Medical Center | Agreement for Clinical Rotations (Pathology) | St. Christopher's Healthcare, LLC | $0.00 | |
| Albert Einstein Medical Center/Einstein Practice Plan | Master Service Agreement (EEG Interpretations) | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Albert Pesis, D.D.S. | Physician Agreements | St. Christopher's Healthcare, LLC | $0.00 | _ |

46

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Alere Informatics, Inc. | License Agreement | St. Christopher's Healthcare, LLC | $13,685.76 | |
| Alexander Manteghi, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Alfred I Dupont Hospital For Children Of | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Alison J. Carey, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Alison L. Gattuso, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Allergy And Asthma Specialists, Pc | Services Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Allmed Healthcare Management, Inc. | Agreement For External Peer Review Svcs | Philadelphia Academic Health System, LLC | $0.00 | |
| Almost Like Home | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Altoona Regional Health System | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Alyssa Terk, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Amazing Kidz Academy, Llc | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Ambika Lall, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| America On Hold | Agreement For On Hold Messaging | St. Christopher's Healthcare, LLC | $0.00 | |
| American Center For Technical A&S | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| American College Of Cardiology Foundation | Agreement For Data Registry Participation | St. Christopher's Healthcare, LLC | $0.00 | |
| American College of Surgeons | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| American Dental Association | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| American International College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| American Medical Response Mid-Atlantic, Inc. | Letter Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| American Messaging Services, Llc | Customer Agreement | Philadelphia Academic Health System, LLC | $0.00 | |

47

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| American Registry for Internet Numbers, Ltd. | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Ameriwater, Inc. | Agreement For Water Testing Svcs | St. Christopher's Healthcare, LLC | $832.00 | |
| Amir Toib, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Amit Chandra Misra, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Amy E. Bridgeman , M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Amy Leader, Dr.P.H, M.P.H. | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Analytic Solutions Network, Llc | Asn Data Use Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Anda K. Kuo, Md | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Angela Woo Jung Kim , M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Anita Azam, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Anja Mowes, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Anna Marie Carr, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Anticare Health System | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Apple Drugs Inc. t/a the Apple Pharmacy | Service Agreement | St. Christopher's Healthcare, LLC | $1,245.13 | |
| Arcadia University | Student Affiliation Agreement | TPS V of PA, L.L.C. | $0.00 | |
| Arcadia University | Student Affiliation Agreement | StChris Care at Northeast Pediatrics, L.L.C. | $0.00 | |
| Arcadia University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Arcadia University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Arcadia University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Arcadia University | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Archana Malik, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Aria Health | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Aria Health | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Arianna Minicozzi, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Arizant Healthcare Inc. | Partnership Program Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Arledge Electronics, Inc. | Agreement For Television Repair & Parts | St. Christopher's Healthcare, LLC | $18,449.34 | |
| Ascension School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Aseptic Technical Solutions | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Ashish Dhawan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Aspira Bilingual Cyber Charter School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Athena Diagnostics | Pricing Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Atlantic Diagnostic Laboratories, Llc | Agreement For Clincal Laboratory Svcs | St. Christopher's Healthcare, LLC | $16,242.00 | |
| Atlantic Lithotripsy, LLC d/b/a Mid-Atlantic Stone Center | Lithotripsy Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Ayaka Maeda Silverman, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Aysha Hasan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Azima Health Services, Inc. | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Ball State University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Barry Alan Cohen, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Barton & Associates, Inc. | Locum Tenens Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Bc Solutions LLC | Agreement For Conversion Of Blood Bank Data To Cerner | Philadelphia Academic Health System, LLC | $0.00 | |
| Bc Technical, Inc. | Nm Full Service Agreement | St. Christopher's Healthcare, LLC | $8,464.50 | |
| Beasley Media Group, Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

49

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Beebe Medical Center, Inc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Beekley Corporation | Pricing Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Best Practice Professionals Inc. | Facility Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Beth Etra, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Bethanna | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| BHC Northwest Psychiatric Hospital, LLC | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Biochrom US | Service Contract | St. Christopher's Healthcare, LLC | $1,111.29 | _ |
| Biocompatibles, Inc. | Pricing Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Bio-Optronics, Inc. | Agreement For Software For Clinical Trials | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Biotronx Llc | Estimate | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Blair Dickinson, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Bloomsburg University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Blue Pillar, Inc. | Invoice | St. Christopher's Healthcare, LLC | $25,660.80 | _ |
| Boban Abraham, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Bondtech Incorporated | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Bonel Medical Equipment, Inc. | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Boston Scientific Corporation | Pricing Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Boston University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Brandon Poterjoy, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |

50

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Brigham and Women's Physicians Organization | Clinical Laboratory Services Agreement | St. Christopher's Healthcare, LLC | $1,700.00 | _ |
| Brightside Academy | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Brightside Academy | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Brightside Academy | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Brightwood Career Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Brooke A. Burkey, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Brooke Glen Behavioral Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Bryn Mawr | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Bryn Mawr Graduate School | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Bryon Lauer, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Building With Books | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Bulldog Orthodontics, Llc | Agreement For Purchase Of Dental Appliances | St. Christopher's Healthcare, LLC | $0.00 | _ |
| C. Igor Mesia, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| California Polytechnic | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Cape Regional Medical Center | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Capital Health | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Capital Health | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Capital Helath System, Inc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Capstar Radio Operating Company | Agreement For Advertising Svcs | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Cardeza Foundation Hemophilia And Thrombosis Center | Transitional Svcs Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Cardinal Health Solutions, Inc. | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Cardioaccess, Inc. | Software License Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Cardioaccess, Inc. | Software Maintenance Terms & Conditions | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Cardionet, Inc. | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Carefusion Solutions, LLC | Agreement For Software Mgt System | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Carmela V. Calvo, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Casa Del Carmen | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Catherine Burdette, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Catholic University Of America (The) | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Cathy Litty, M.D. | Physician Agreements | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Cedar Crest College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Center City Film And Video, Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Center For Student Learning Charter School At Pennsbury | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Center for the Urban Child, Inc | Operating Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Central Penn College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Central Penn College | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Chamberlain College Of Nursing | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Champion Energy Services, LLC | Agreement For Energy Utility For The Facilities | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Change Healthcare Technologies, LLC | Contract Supplement To License Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Chestnut Hill Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Chg Companies, Inc. | Agreement For Physician Coverage | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Chi Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Chi Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Children's Care Collaborative (DHS, City, CHOP) | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Children's Care Collaborative (DHS, City, CHOP) | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Christina La Monica, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Christine Capriolo, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Christine Schlichting, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Chubb Hotel & Conference Center | Agreement For Intern Retreat | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Ciana Hayes-Maxwell, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Cincinnati Children'S Hospital Medical Center | Irb Reliance Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Cisco Systems Capital Corporation | Schedule No. 046-000 | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Clark Services Group, Llc | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Cocco Enterprises, Inc. | Orthotic & Prosthetic Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Cochlear Americas | Master Purchase Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| College Of American Pathologists | Laboratory Improvement Programs Order Form | St. Christopher's Healthcare, LLC | $0.00 | _ |
| College Of New Jersey | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Columbia University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Columbia University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Community College Of Philadelphia | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

53

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Community College Of Philadelphia | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Community College Of Philadelphia | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Computer Kids Day Care Center | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Concilio | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Congresso Delatinos Unidos | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Congresso Delatinos Unidos, Inc. | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Conmed Corporation | Pricing Agreement | St. Christopher's Healthcare, LLC | $2,029.00 | _ |
| Continuum, LLC | Consignment Agreement For Nebulizers | St. Christopher's Pediatric Urgent Care Center, L.L.C. | $0.00 | _ |
| Convergeone Systems Integration, Inc. | Master Order Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Cooper Health System | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Coopr Health System | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Corporate Cost Control, Inc. | Agreement For Unemployment Compensation Mgt Svcs | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Council On Accreditation Of Nurse Anesthesia Edu Prgms | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Courtney Dominic, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Covidien Sales Llc | Agreement For Equipment Rental | St. Christopher's Healthcare, LLC | $425.00 | _ |
| Creighton University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Crozer Chester Medical Center | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Crozer-Chester Medical Center | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Cues Creative Urban Edu Sys | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | TPS V of PA, L.L.C. | $0.00 | _ |

54

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | TPS V of PA, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | TPS V of PA, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | TPS V of PA, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | StChris Care at Northeast Pediatrics, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | StChris Care at Northeast Pediatrics, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | StChris Care at Northeast Pediatrics, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | StChris Care at Northeast Pediatrics, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Culinary Academy Of Long Island d/b/a Star Career Academy | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |

55

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Cumberland County Community College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| CyraCom International Inc. | Service Agreement | TPS V of PA, L.L.C. | $0.00 | _ |
| CyraCom International Inc. | Service Agreement | StChris Care at Northeast Pediatrics, L.L.C. | $0.00 | _ |
| CyraCom International Inc. | Service Agreement | St. Christopher's Healthcare, LLC | $36,387.13 | _ |
| CyraCom International Inc. | Service Agreement | SCHC Pediatric Associates, L.L.C. | $19,047.45 | _ |
| Dan Decotiis, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Dana Toib, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Daniel Conway, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Daniel Taylor, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Danielle Ascher (Casher), M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Daphne Hasbani, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| David A Desimone | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| David B. Cooperberg, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| David Metroka, D.D.S. | Physician Agreements | St. Christopher's Healthcare, LLC | $0.00 | _ |
| David Zwillenberg, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| De Long Industries Group, Inc. d/b/a Wavetech Industries | Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Deborah Ann Sandrock, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Deborah Heart and Lung Center | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Deepti Raybagkar, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Delaware County Community College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Delaware County Community College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

56

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Delaware County Memorial Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Delaware Valley Academy | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Delta Dental Of Pennsylvania | Agreement For Dental Benefit Plan | Philadelphia Academic Health System, LLC | $0.00 | |
| Deraj Medical Career Training | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Devil'S Alley | Event Proposal | St. Christopher's Healthcare, LLC | $0.00 | |
| Dga Partners, Inc. | Letter Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Diagnostica Stago, Inc. | Service & Maintenance Agreement | St. Christopher's Healthcare, LLC | $31,788.78 | |
| Diagnostica Stago, Inc. | Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Digital Innovation, Incorporated | Software License Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| DigiTrace Care Services, Incorporated | Sleep Monitoring Equipment Rental | St. Christopher's Healthcare, LLC | $0.00 | |
| Divya S. Khurana, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Dolbey-Jamison, Inc. | Quote | St. Christopher's Healthcare, LLC | $0.00 | |
| Donald Goldsmith, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Dorota Pazdrowska-Chowdhry, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Doylestown Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| DPT Business School | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Drueding Center | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Duquesne University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Dynamic Language Services, LLC | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Eagles Taxi, LLC | Services Agreement | St. Christopher's Healthcare, LLC | $742.00 | |
| Eagles Youth Partnership | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Earlham College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| East Carolina University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| East Stroudsburg University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| East Stroudsburg University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Easter Seals of E. Pennsylvania | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Eastern Center For Arts & Technology | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Eastern Society For Pediatric Research | Letter Of Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Echo, Inc. | Master Services Agreement | Philadelphia Academic Health System, LLC | $1,240.00 | |
| Echo, Inc. | Order Form ORD-0555530 | Philadelphia Academic Health System, LLC | $0.00 | |
| Echo, Inc. | Order Form ORD-0559699 | Philadelphia Academic Health System, LLC | $0.00 | |
| Echo, Inc. | Order Form ORD-0574520 | Philadelphia Academic Health System, LLC | $0.00 | |
| Echo, Inc. | Order Form ORD-0576228 | Philadelphia Academic Health System, LLC | $0.00 | |
| Edgar Collazo, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Edinboro | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Education Resources, Inc. | Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Edwards Lifesciences Llc | Consignment Agreement For Heart Valves | St. Christopher's Healthcare, LLC | $12,802.00 | |
| Ehidiamen Anetor, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Einstein Medical Center Montgomery | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Einstein Practice Plan, Inc. | Interventional Radiology Coverage Services Agreement | St. Christopher's Healthcare, LLC | | $45,833.37 |
| Einstein Practice Plan, Inc. | Services Agreement (Hematopathology) | SCHC Pediatric Associates, L.L.C. | | $26,745.94 |

58

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Einstein Practice Plan, Inc. | Services Agreement (Infectious Disease) | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Electronic Ink | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Electronic Payment Exchange | Epx Merchant Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Elemental Inc. | Price List | St. Christopher's Healthcare, LLC | $174.00 | _ |
| Elite Office Solutions, Inc. | Services Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Elizabeth Suarez, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Ellen Lide Mitchell, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Emd Millipore Corporation | Pricing Agreement | St. Christopher's Healthcare, LLC | $3,042.96 | _ |
| Emergency Medical Associates | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Emergency Systems Service Company | Proposal | St. Christopher's Healthcare, LLC | $2,916.00 | _ |
| Emily Ann Spengler, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Emily Mathis Quiros, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Emily Souder, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Employment Tax Servicing Corp | Agreement For Employment Tax Consulting Svcs | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Encore Medical International, Inc. | Rental Svcs Agreement | St. Christopher's Healthcare, LLC | $21,942.00 | _ |
| Endla Anday, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Energy Products And Service Co, Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Enitan Adegite, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Entercom | Agreement For Radio Network Sponsorship | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Environmental And Engineering Solutions, Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $10,187.50 | _ |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Eric Douglas Thompson, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Eric Lusinski, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Erica Cucinella, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Erica Poletto, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Erin Cipko, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Essential Consulting Llc | Software License Agreement | Philadelphia Academic Health System, LLC | $15,000.00 | _ |
| Ethan Kentzel | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Eugenia Jungsun Kim, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Eurofins Viracor, Inc. | Agreement For Laboratory Svcs | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Evan Geller, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Evan Weiner, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Everbridge, Inc. | Agreement For Services For Mass Notifications | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Everbridge, Inc. | Quote # Q-08937 | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Everest Institute | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Evoqua Water Technologies, Llc | Agreement For Water Filters & Maintenance Svcs | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Fairmount Behavioral Health System | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Field House Philly | Event Contract | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Firm Revenue Cycle Management Services, Inc. | Agreement For Denied Account Review & Gap Analysis Service | Philadelphia Academic Health System, LLC | $0.00 | _ |
| First Philadelphia Charter School For Literacy | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

60

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| First Philadelphia Paradigm, Tacony Academy | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Fishheads Aquarium Service LLC | Aquarium Service Proposal | St. Christopher's Healthcare, LLC | $9,396.00 | _ |
| Fm Cost Containment, LLC | Professional Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Focus Diagnostics, Inc. | Integrated Cycler Master Acquisition Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Folasade Kehinde, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Fonemed, Llc | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Fordham University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Fox Institute Of Business | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Francis X. Mcnesby, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Frank J. Tornetta School Of Anesthesia (La Salle) | Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Frankford Hospital | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Frankford Hospital | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Frankford Hospital Of The City Of Philadelphia | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Franklin Cleaning Equipment & Supply Company | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Fresenius Medical Care | Price List | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Gabrielle J. Costello, M.D | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Gannon University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Garda Cl Atlantic, Inc. | Armored Car Service Agreement | St. Christopher's Healthcare, LLC | $2,460.12 | _ |
| Garrison Printing Company | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| GE Healthcare IITS USA Corp. | GE Healthcare Software License Transfer Agreement | St. Christopher's Healthcare, LLC | $57,683.81 | - |
| GE Medical Systems Information Technologies, Inc. | Quote # Pr10-C131175 | St. Christopher's Healthcare, LLC | $0.00 | - |
| GE Medical Systems Information Technologies, Inc. | Service Quotation #39772 | St. Christopher's Healthcare, LLC | $0.00 | - |
| Geisinger Medical Center | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | - |
| Geisinger Systems Services | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | - |
| General Electric Company, by and through its GE Healthcare division | Quote # 99990432A | St. Christopher's Healthcare, LLC | $304,888.63 | - |
| Geoffrey Bajwa, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Geoffrey Everett, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Georgetown University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Gift of Life | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Global Affiliates, Inc. | Agreement For Access To Gym Memberships | Philadelphia Academic Health System, LLC | $0.00 | |
| Global Healthcare Exchange, Llc | Agreement For Electronic Data Exchange | Philadelphia Academic Health System, LLC | $0.00 | |
| Global Neurosciences Institute, LLC | Service Agreement | St. Christopher's Healthcare, LLC | - | $314,337.74 |
| Golshid Tazhibi, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Good Shepherd Rehabilitation Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | - |
| Grambling State University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | - |
| Grand Canyon University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | - |
| Grandview Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | - |
| Gregory Disilvio, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | - |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Gregory Halligan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Gretchen Metzenberg, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Gwynedd-Mercy College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Gwynedd-Mercy College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Gwynedd-Mercy College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Gwynedd-Mercy College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| H.C.A.S. Of Florida, Inc. | Services Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Haddon Property LLC | Lease Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Hahnemann University Hospital | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Hahnemann University Hospital | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Hahnemann University Hospital | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Hahnemann University Hospital | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Hahnemann University Hospital | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Hahnemann University Hospital | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Hahnemann University Hospital (Center City Healthcare) | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Hahnemann Univesity Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Hans Kersten, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Harcum College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Harcum College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Harpreet Pall, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Harris School Of Business | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Harrison Career Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Harry J Lawall & Son, Inc. | Orthotic & Prosthetic Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Harsh Grewal, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Hayes Locum, LLC, f/k/a Healthcare, LLC | Physician Locum Tenens Coverage Agreement | Philadelphia Academic Health System, LLC | $373,978.50 | |
| Health Care Appraisers | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Health Partners Plan | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Health Partners Plans | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Health Promotion Council | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Healthcare Administrative Partners, LLC | Coding & Charge Entry Svcs Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Heather Orman-Lubell, | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Heather Parsells, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Hematechnologies, Inc. | Warranty Quotation | St. Christopher's Healthcare, LLC | $0.00 | |
| Hillmont Endoscopy Center | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Hilton Philadelphia City Avenue | Banquest Event Order Contract | St. Christopher's Healthcare, LLC | $0.00 | |
| Historic Hotel Bethlehem | Catering Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| HMI LLC | Agreement For Physician Coding Audits | Philadelphia Academic Health System, LLC | $0.00 | |
| HMI LLC | Service Supplement No. 1 | St. Christopher's Healthcare, LLC | $0.00 | |
| Holland - Glen | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Hollis Cobb Associates, Inc. | Agreement For Collections Svcs | Philadelphia Academic Health System, LLC | $0.00 | |
| Holy Family University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Holy Family University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Holy Family University | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Holy Redeemer Health System | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Howmedica Osteonics Corp. | System Product Pricing Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Hub Parking Technology Usa, Inc. | Purchase Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Hui Leng Deng, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Huntington Technology Finance, Inc. | Schedule No. SHC-025 | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Hussain Shakir, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| I. Miller Precision Optical Instruments, Inc. | Agreement For Maintenance On Microscopes | St. Christopher's Healthcare, LLC | $0.00 | _ |
| iContracts, Inc. | Policy Management Software | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Ignacio Valencia, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Immaculata University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Immaculata University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Impact Services Corporation | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Impementation Mangement Assistance, Llc | Sows Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Impementation Mangement Assistance, LLC | Master Services Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Independent Hardware, Inc. | Pricing Agreement | St. Christopher's Healthcare, LLC | $3,172.70 | _ |
| Indiana University Of Pa | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Infor (US), Inc. | Software Services Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Infor (US), Inc. | Fixed Fee Services Work Order | Philadelphia Academic Health System, LLC | $216,605.04 | _ |

65

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Infor (US), Inc. | SaaS Order Form | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Infor (Us), Inc. | Software Subscription License & Svcs Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Ingenious Med, Inc. | Master Services Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Ingenious Med, Inc. | Statement of Work #1 | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Innovative Print & Media Group, Inc. | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Innovative Product Achievements, LLC | Linen Control Subscription Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Inquicker, LLC | Application Service Provider Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Integrated Healthcare Solutions, Inc. | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Integrated Medical Systems International, Inc. | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Integrity Healthcare, Llc | Agreement For Physician Recruiting & Search Svcs | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Interphase Medical Equipment, Inc. | Convenience Closet Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Interphase Medical Equipment, Inc. | Dmepos Consignment Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Interphase Medical Equipment, Inc. | Dmepos Consignment Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Iraj Rezvani, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Irina Mikolaenko, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Iron Mountain Information Management, Llc | Agreement For Records Mgt | Philadelphia Academic Health System, LLC | $4,189.15 | _ |
| Ishminder Kaur, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Ivwatch, Llc | Equipment Evaluation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| J.W. Carrigan, Llc | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Jacquelyn Klicka-Skeels, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| James Murphy, D.M.D. | Physician Agreements | St. Christopher's Healthcare, LLC | $0.00 | |
| James Starc, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Jamie Katz , D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Jan M. Goplerud, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Janet Chen, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Jdi Net Systems | Software License Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Jean Marie Rinnan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Jeanne Velasco, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Jeans Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Jeein Yoon, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Jefferson Gardens North Philadelphia Head Start | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Jennersville Regional Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Jennifer Eng, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Jennifer Tingo, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Jeremiah Goldstein, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| JFK Community Mental Health | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Jherna Balany, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Jie Sun, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Joanna Johnson, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| John B. Stetson Middle School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| John Saludades, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Johnson & Johnson Health Care Systems Inc. | Pricing Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Joseph Melvin, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Joseph Rosenblatt, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Juan Ballesteros, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Judy Mae Pascasio, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Justright Surgical, Llc | Rental Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Jyoti Bhatia-Barnes, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kaplan Career Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Kaplan Career Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Karen Souza Carvalho, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Karl Storz Endoscopy-America, Inc. | Protection 1 Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Kathleen O'Brien, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kathryn Mccans, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kathryn Stroup, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Keith Douglas Herzog, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kelly Kovatis, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kenco Kalibration Inc. | Quote | St. Christopher's Healthcare, LLC | $3,898.50 | |
| Ken-Crest Services | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Kennedy Memorial Hospitals | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Keri Nakao Fugarolas, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Keystone Academy Charter School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

68

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Keystone Quality Transport Company | Agreement For Ambulance Svcs | St. Christopher's Healthcare, LLC | $3,204.00 | |
| Keystone Quality Transport Company dba EMStar | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Kheyandra Lewis, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kiersten Arthur, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kimberly Fuld, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kimberly Neidig, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kimberly Rarick, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kinder Academy | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Klenzoid, Inc. | Water Treatment Contract | St. Christopher's Healthcare, LLC | $0.00 | |
| Korn/Ferry International | Agreement For Recruiting Svcs | St. Christopher's Healthcare, LLC | $0.00 | |
| Kristine Schmitz, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kushbu Shah, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Kutztown University Of Pennsylvania | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Laerdal Medical Corporation | Quote | St. Christopher's Healthcare, LLC | $2,761.68 | |
| Lam Oculofacial | Service Agreement | St. Christopher's Healthcare, LLC | $5,835.20 | |
| Lancaster General | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lancaster General Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lankenau Hospital | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lasalle University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lasalle University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lasalle University | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |

69

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Laser Service Solutions, Llc | Aesthetic Facility Agreement Of Service | St. Christopher's Healthcare, LLC | $8,640.00 | _ |
| Laura M. Donaldson, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Lauren Carr, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Laurence Feinstein, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Laurie Varlotta, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Leah Coppolino | Consulting Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Leah Scherzer, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Leasing Associates Of Barrington, Inc. | Lease Agreement | St. Christopher's Healthcare, LLC | $8,655.36 | _ |
| Legal Clinic For The Disabled, Inc. | Agreement For Legal Clinic Svcs | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Legal Services Department | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lehigh Valley Health Network (formerly Pocono) | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Lehigh Valley Hosp & Health Network | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Leonard J. Levine, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Leucadia Pharmaceuticals | Pricing Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Life Image Inc. | Software License Agreement | St. Christopher's Healthcare, LLC | $12,750.00 | _ |
| Life Image Inc. | Master Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Lighthouse | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Limb Technologies, Inc. | Orthotic & Prosthetic Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Lincoln Tech | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Lindsay Grier Arthur, Iii, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Lisa Fazi, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Lisa The | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lita Chen, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Live Message America | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lockton-Dunning Series Of Lockton Companies, Llc | Agreement For Benefits Admin Svcs | Philadelphia Academic Health System, LLC | $0.00 | |
| Locumtenens.Com, Llc | Client Contract & Addendum | Philadelphia Academic Health System, LLC | $0.00 | |
| Logan Consultants | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lori's Gifts, Inc | Management and Operation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lower Bucks Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Loyola University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| LRD Graphics, Inc. t/a Fels Printing | Services Agreement | TPS V of PA, L.L.C. | $0.00 | |
| LRD Graphics, Inc. t/a Fels Printing | Services Agreement | StChris Care at Northeast Pediatrics, L.L.C. | $0.00 | |
| Lrd Graphics, Inc. T/A Fels Printing | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| LRD Graphics, Inc. t/a Fels Printing | Services Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Luis Gamboa , M.D | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Lutheran Children And Family Service | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lutheran Settlement House | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lyons Advisors, Llc | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Lyons-Chvala Nephrology Assoc. | Time Share | St. Christopher's Healthcare, LLC | $0.00 | |
| M&M Autoclave Cleaning, Llc | Contract For Svcs | St. Christopher's Healthcare, LLC | $2,794.93 | |
| Magee Rehabilitation Hosp | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Main Line Hospitals, Inc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Mala Rastogi, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Manhattan Telecommunications Corporation | Agreement For Phone Svcs | Philadelphia Academic Health System, LLC | $0.00 | |
| Mantua Institute For Sterile Processing | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Manufacturer Technical Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Mar Cor Purification, Inc. | Service Proposal | St. Christopher's Healthcare, LLC | $13,198.49 | |
| Margaret Gilfillan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Maria Bergel, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Maria Mahoney, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Marie Kaifer-Zajdowicz, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Marita Lind, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Marta E. Santos, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Marta K. Rozans, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Martin Herman, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Mary Agnew, Snr VP/CNO | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Mary Mallon, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Maryville University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Marywood University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Mastery At Smedley Charter School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Maureen Fee, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Med One Capital Funding, LLC | Linen Control Subscription Agreement | St. Christopher's Healthcare, LLC | $10,186.95 | |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Med3000 Inc. | Information System & Revenue Cycle Mgt Agreement | TPS V of PA, L.L.C. | $0.00 | _ |
| Med3000 Inc. | Information System & Revenue Cycle Mgt Agreement | StChris Care at Northeast Pediatrics, L.L.C. | $0.00 | _ |
| Med3000 Inc. | Information System & Revenue Cycle Mgt Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Medacist Solutions Group, LLC | Service Agreement | St. Christopher's Healthcare, LLC | $2,652.60 | _ |
| Medhub, LLC | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Medialab, Inc. | Agreement For Compliance & Education Materials | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Medical Doctor Associates, LLC | Locum Tenens Svcs Agreement | SCHC Pediatric Associates, L.L.C. | $17,404.62 | _ |
| Medical Gas Solutions, Inc. | Agreement For Medical Gas Inspections & Svcs | St. Christopher's Healthcare, LLC | $3,390.96 | _ |
| Medical Neurogenetics, LLC | Laboratory Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Medlytix, Llc | Agreement For Insurance/Payer Identification Svcs | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Mednet Healthcare Technologies, Inc. | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Megan Gresh , M.D | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Memorial Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Merchants Association Collection Division, Inc. | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Mercy Hospital Of Philadelphia | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Mercy Neighborhood Ministries Of Philadelphia, Inc. | Dental Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Mercy Suburban Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Methodist Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Michael C. Schneider, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |

73

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Michael Gillman, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Michael Soon Il Kwon, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Michael Suchar, D.D.S. | Physician Agreements | St. Christopher's Healthcare, LLC | $0.00 | |
| Michael Szatkowski, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Mindray Ds Usa, Inc. | Trial Evaluation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Mindy Dickerman, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Moira Brooks | Independent Contractor Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Molly Linehan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Monica Lynn Koncicki, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Monika Gupta, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Monterey Medical Solutions, Inc. | Software License Agreement | St. Christopher's Healthcare, LLC | $43,815.05 | |
| Montgomery Co Emergency Medical Services Training Inst | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Mother Of Divine Grace Pn | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Msw Enterprises Inc. | Contract For Service | TPS V of PA, L.L.C. | $2,256.71 | |
| N. Isaura Lopez Thibault, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| N. Patricia Jinés, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Nadja Peter , M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Nandini Madan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Nataly Apollonsky, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Natus Medical Incorporated | Maintenance Agreement | St. Christopher's Healthcare, LLC | $19,783.92 | |
| Navex Global, Inc. | Agreement For Hotline & Incident Mgt | Philadelphia Academic Health System, LLC | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Navex Global, Inc. | Order Form 314646 | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Nazareth Hospital, School Of Nursing | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Network Of Victim Assistance, LLC | Services Agreement | SCHC Pediatric Associates, L.L.C. | $158.00 | _ |
| Network Of Victim Assistance, LLC | Equipment Lease Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Neumann University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| New Foundations Charter School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| New Innovations, Inc. | Software License Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Nicholas Kuzma, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Nickolas Dawlabani, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Nicolas Brodie, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Nicole Delarato, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Noah Buboltz, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Noelle Johansson, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Norrell K. Atkinson, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Norris Square Children'S Center | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Northeastern Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Nthrive Revenue Systems, Llc | Agreement For Contract Mgt & Modeling | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Nthrive Revenue Systems, Llc | Master Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Nueva Esperanza | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Nueva Esperanza | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Oakwood University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

75

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Occupational Health Centers Of The Southwest, P.A. | Settlement Agreement & Mutual Release | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Office Of Civic Engagement & Volunteer Services' Foster Grandparent Program | Memorandum Of Understanding | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Office Of Counsel | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Office Of Counsel | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Ogechukwu Menkiti, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Ohio Children'S Hospital Solutions For Patient Safety | Agreement For Participation | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Olympus America Inc. | Master Lease Agreement 0016015 | St. Christopher's Healthcare, LLC | $0.00 | |
| Olympus America Inc. | Lease Schedule 001 | St. Christopher's Healthcare, LLC | $27,470.96 | |
| Olympus America Inc. | Equipment Service Agreement | St. Christopher's Healthcare, LLC | $4,026.80 | |
| Omnicell, Inc. | Pricing Supplement | St. Christopher's Healthcare, LLC | $131,636.74 | |
| On Time Ambulance, Inc. | Acknowledgement & Release | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Optum360 Solutions, LLC | Master Services and License Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Ortho-Clinical Diagnostics, Inc. | Gpo Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Osborn Family Health Center formerly Lourdes Medical Associates, PC | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Otech Group Llc | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Our Lady of Lourdes Medical Center, Inc. | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Pan American Academy Charter School | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Parkingsoft, LLC | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Parkingsoft, LLC | Master Software Subscription Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Paul Glat, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Paul Shore, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Payal Trivedi, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Pca Emstar Holdings, LP | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Pediatric Rehabilitation Associates, LLC (formerly Pediatricians for Exceptional Children, LLC) | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Pediatric Rehabilitation Associates, LLC (formerly Pediatricians for Exceptional Children, LLC) | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Pennoni Associates | Agreement For Structural Analysis | St. Christopher's Healthcare, LLC | $1,799.00 | |
| Pennsylvania Institute Of Technology | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Pennsylvania Oral & Maxillofacial Surgery, Ltd. | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Pennsylvania Oral & Maxillofacial Surgery, LTD | Agreement for Residency Teaching | St. Christopher's Healthcare, LLC | $0.00 | |
| Pennsylvania State University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Pennsylvania State University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Pennsylvania Trauma Systems Foundation | Agreement For Participation | St. Christopher's Healthcare, LLC | $0.00 | |
| People For People Charter School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Perinatal Cardiology Consultants | Service Agreement | SCHC Pediatric Associates, L.L.C. | $10,900.85 | |
| Perioperative Services, Llc | Professional Billing Svcs Agreement | SCHC Pediatric Associates, L.L.C. | $6,961.73 | |
| Perkinelmer Genetics, Inc. | Agreement For Screening Svcs | St. Christopher's Healthcare, LLC | $1,275.00 | |

77

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Perkinelmer Genetics, Inc. | Agreement For Penn Mandated Newborn Screening | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Peter D. Pizzutillo, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Pharmacy Onesource Inc. | Software License Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Pharmacy Onesource Inc. | Software License Agreement | St. Christopher's Healthcare, LLC | $1,583.20 | _ |
| Phat Pham, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Philadelphia Business Journal | Advertising Contract | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Philadelphia Ear, Nose, and Throat | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Philadelphia Job Corps | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Philadelphia Parent Child Center | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Philadelphia University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Philadelphia University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Philip Stein, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $4,824.75 | _ |
| Philips Healthcare | Software Maintenance Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Philly Star Events | Agreement For Dj | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Pinnacle Health | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Pinnacle Health | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Please Touch Museum | Facility Rental, Fees & Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Pope John Paul Ii Regional School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Porter'S Family Center | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Pramath Nath, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Pravin Taneja, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Precision Sprinkler Services, Inc. | Proposal #Ip2387 | St. Christopher's Healthcare, LLC | $4,763.90 | _ |
| Preschool Project, Woolston | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Prescient Logistics, Llc | Agreement For Placement/Rental Of Vending Machines | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Press Ganey Associates, Inc. | Sows Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Prestige Perfusion, Llc | Agreement For Perfusion Svcs | St. Christopher's Healthcare, LLC | $18,000.00 | _ |
| Priority Express Courier, Inc. | Agreement | St. Christopher's Healthcare, LLC | $205.48 | _ |
| Prism Career Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Priya Patel, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Proserv Removal, Inc. | Agreement For Disposal Of Items From The Warehouse | St. Christopher's Healthcare, LLC | $6,580.00 | _ |
| Prospect Ccmc | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Providertrust, Inc. | License & Exclusion Monitoring Svcs Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Puppet Kitchen International, Inc. | Agreement For Commerical Production | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Quantros, Inc. | Software License & Maintenance Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Quest Diagnostic Clinical Laboratories Inc. | Agreement For Reference Lab Svcs | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Quest Diagnostic Clinical Laboratories Inc. | Specimen Collection Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Quest Diagnostics | Service Agreement | St. Christopher's Healthcare, LLC | $506.60 | _ |
| Quest Diagnostics Infectious Disease, Inc. | Laboratory Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Quidel Corporation | Quote | St. Christopher's Healthcare, LLC | $2,434.21 | _ |
| Rachael Bonawitz, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Ralph J. Riviello, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Randolph J. Miller, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Randy Stevens, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Raphael J. Yoo, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Raquel Mora, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Rawan Nahas, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Reading Hospital and Medical Center | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Realmed Corporation | Agreement For Eligibility Verification & Revenue Cycle Svcs | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Recognition Advantage, Llc | Services Agreement | St. Christopher's Healthcare, LLC | $1,066.89 | _ |
| Red Lion Surgicenter, Llc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Red Shield Family Shelter | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Renee Kottenhahn, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Renee Turchi, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Respiratory Associates | Time Share Extension | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Richard J. Clark, D.M.D. | Physician Agreements | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Richard Stockton College Of New Jersey | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Risa Eichinger | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Rita Ann Kubicky, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Rita Guevara, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Robert Dinunzio | Agreement For Environmental Svcs | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Robert Siegle, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Robert Spector, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Roberta Laguerre, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Romulus Enterprises, Llc | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Roschanak Mossabeb, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Rosemont College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Roy E. Schwartz, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Rush University Medical Center | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Rutgers University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Sabina Singh, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Sacred Heart Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| SAI Global Compliance, Inc. | Software License Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |
| SAI Global Compliance, Inc. | Customer Order | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Saint Francis Medical Center | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Saint Joseph'S College Online | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Saint Joseph'S Hospital School Of Nursing | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Salus University College Of Audiology | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Samina Muneeruddin, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Samuel Krass, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Sanford Brown Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Sanford Brown Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Sanford Brown Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

81

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Sanford Brown Institute | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Sarah (Keafer) Burns, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Sarah Long, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Saranya Chinnappan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| ScanSTAT Technologies, LLC | Agreement for Services | Philadelphia Academic Health System, LLC | $0.00 | _ |
| SCHC Pediatric Associates, LLC | Services Agreement | St. Christopher's Pediatric Urgent Care Center, L.L.C. | $0.00 | _ |
| SCHC Pediatric Associates, LLC | Master Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| SCHC Pediatric Associates, LLC | Physician Advisor Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| SCHC Pediatric Associates, LLC | Directorship Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| SCHC Pediatric Associates, LLC | Directorship Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| SCHC Pediatric Associates, LLC | Directorship Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| SCHC Pediatric Associates, LLC | Directorship Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| SCHC Pediatric Associates, LLC | Services Agreement dated March 11, 2010 | St. Christopher's Healthcare, LLC | $0.00 | _ |
| SCHC Pediatric Associates, LLC | Services Agreement dated March 11, 2010 | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| SCHC/SCHC-PA | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| SCHC/SCHC-PA | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| SCHC/SCHC-PA | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Scribe Care, Inc. | Agreement For Scribe Svcs | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Sean Ciullo, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Security And Data Technologies, Inc. | Agreement For Fire Alarm System Testing Svcs | St. Christopher's Healthcare, LLC | $0.00 | _ |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Seema Rani, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Seth Zwillenberg, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shadi Malaeb, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shannon David Safier, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Share Food Program Inc. | Donation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Shareen F. Kelly, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Sharon Calaman, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Sherman Engineering Company | Quote | St. Christopher's Healthcare, LLC | $153.15 | |
| Shore Medical Center | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shore Memorial Hospital | Shared Marketing Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Shriners Hospital For Children | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Shriners Hospital for Children | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Shriners Hospital for Children | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shriners Hospital for Children | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shriners Hospital for Children | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shriners Hospital for Children | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shriners Hospital for Children | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shriners Hospital for Children | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shriners Hospital for Children | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shriners Hospital for Children | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shriners Hospital for Children | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Shriners Hospitals For Children | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

83

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Shuping Ge, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Sickle Cell Disease Association Of America, Philadelphia/Delaware Valley Chapter | Business Associate Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Siemens Healthcare Diagnostics, Inc. | Master Equipment and Products Agreement | St. Christopher's Healthcare, LLC | $16,479.48 | _ |
| Siemens Industry, Inc. | Advantage Svcs Agreement | St. Christopher's Healthcare, LLC | $870.00 | _ |
| Siemens Industry, Inc. | Advantage Svcs Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Simkar Corporation | Agreement For Replacement Of Lights | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Simmons College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Simon Gratz Mastery Charter School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Singletary Group Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Sisco, Inc. | Agreement For Support For Security Id System | St. Christopher's Healthcare, LLC | $8,652.97 | _ |
| Slippery Rock University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Smokin' Betty'S | Event Proposal | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Solid Waste Services Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $23,514.68 | _ |
| Solis Healthcare, LP | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Solis Healthcare, LP | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Solis Healthcare, LP | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Sonal Goenka, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Sorin Group Usa, Inc. | Maintenance Agreement | St. Christopher's Healthcare, LLC | $1,767.43 | _ |
| South Dakota State Univeristy | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| South Jersey Healthcare Regional Med Center | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |

84

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Southeast Reimbursement Group, LLC | Engagement Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Specialists On Call | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Specialtycare Iom Services, LLC | Services Agreement | St. Christopher's Healthcare, LLC | _ | $98,232.05 |
| Spin At Frankford | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Spok, Inc. | Maintenance Sales Order | St. Christopher's Healthcare, LLC | $16,262.76 | _ |
| Sportworx, Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $6,397.48 | _ |
| St Josephs Hospital Of The N Philadelphia Health System | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St Lukes Health Network, Inc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St Marys Medical Center | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St. Bernard Pn | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St. Chris Pediatric Urgent Care Center | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St. Chris Pediatric Urgent Care Center | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| St. Christopher's Foundation for Children | Mobile Unit Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St. Christopher's Foundation for Children | Sublicense Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St. Christopher's Healthcare | Operating Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| St. Christopher's Healthcare, LLC | Equipment Lease Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| St. Elizabeth North Philadelphia Headstart | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St. Helena School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St. James School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| St. Luke's Health Network, Inc. | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| St. Luke's Hospital of Bethlehem, PA | First Amend | SCHC Pediatric Associates, L.L.C. | $6,288.63 | |
| St. Martin De Porres School | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| St. Mary Medical Center | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Stacy Ellen, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Staff Care, Inc. | Agreement For Locum Tenens Coverage | St. Christopher's Healthcare, LLC | $0.00 | |
| Stericycle, Inc. | Master Service Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Stericycle, Inc. | Master Service Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Stericycle, Inc. | Master Service Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Steven Ford And Associates, Inc | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Susan B. Conley, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Susan M. Schmidt, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Suzanne M. Touch, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Svetlana Harel, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Svetlana Lvovich, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Swetha Madhavarapu, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Sysmex America, Inc. | Service Agreement | St. Christopher's Healthcare, LLC | $58,411.47 | |
| Systematech Technical Management Services, Inc. | Agreement For Interpretation Svcs | St. Christopher's Healthcare, LLC | $5,852.10 | |
| T. Cruse Design | Services Agreement | TPS V of PA, L.L.C. | $0.00 | |
| T. Cruse Design | Services Agreement | StChris Care at Northeast Pediatrics, L.L.C. | $0.00 | |
| T. Cruse Design | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

86

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| T. Cruse Design | Services Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Tab Service Company | Agreement For 1098-T Tax Form Svcs | St. Christopher's Healthcare, LLC | $507.50 | |
| Taylor Wheaton, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Teleflex Medical Incorporated | Agreement For Rental Of Heated Humidifiers | St. Christopher's Healthcare, LLC | $10,757.85 | |
| Telehealth Services | Television Programming License | St. Christopher's Healthcare, LLC | $0.00 | |
| Telehealth Services | Television Programming License | St. Christopher's Healthcare, LLC | $0.00 | |
| Teleradiology Solutions (formerly Arjun Kalyanpur and Associates) | Service Agreement | St. Christopher's Healthcare, LLC | $4,251.00 | |
| Temple University | Service Agreement | St. Christopher's Healthcare, LLC and SCHC Pediatric Associates, LLC | $32,158.10 | |
| Temple University Hospital | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Temple University Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Tenet HealthSystem St. Christopher's Hospital for Children, LLC | Services Agreement dated March 11, 2010 | St. Christopher's Healthcare, LLC | $0.00 | |
| Tenet HealthSystem St. Christopher's Hospital for Children, LLC | Services Agreement dated March 11, 2010 | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Teresa Carlin, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| The American National Red Cross, Penn Jersey Region | Agreement For Blood Supplies | Philadelphia Academic Health System, LLC | $0.00 | |
| The American National Red Cross, Penn Jersey Region | Therapeutic Apheresis Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| The American National Red Cross, Penn Jersey Region | Perioperative Autologous Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| The Bancorp Bank | Epx Merchant Agreement | Philadelphia Academic Health System, LLC | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| The Bettinger Company, Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Children'S Hospital Of Philadelphia | Transfer Agreement | St. Christopher's Healthcare, LLC | $6,918.40 | _ |
| The City Of Philadelphia Fire Department | Provider Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Communication Connection | Services Agreement | St. Christopher's Healthcare, LLC | $281.20 | _ |
| The Communication Connection | Services Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| The Cooper Health System | Services Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| The Healh Network Of The Chester County Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The John Hopkins Children Center | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Johns Hopkins Health System Corp | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Johns Hopkins University | Laboratory Svcs Agreement | St. Christopher's Healthcare, LLC | $15,239.00 | _ |
| The Leapfrog Group | License Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Nemours Fiundation | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Otis Elevator Company | Agreement For Elevator Repair & Maintenance | St. Christopher's Healthcare, LLC | *$19,998.60* | _ |
| The Phillie Phanatic | Phanatic Contract | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Shriners Hospital For Children | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Society of Thoracic Surgeons | Congenital Heart Surgery Database | St. Christopher's Healthcare, LLC | $5,385.00 | _ |
| The Standard Register Company | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Starlight Starbright Children'S Foundation International | Fun Center - Mobile Entertainment Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| The Staywell Company, Llc | License Agreement | Philadelphia Academic Health System, LLC | $0.00 | _ |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Thomas Edison State College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Thomas Jefferson University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Thomas Jefferson University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Thomas Jefferson University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Thomas Jefferson University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Thomas Jefferson University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Thomas Jefferson University Hospitals, Inc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Total Package Express Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $3,498.38 | |
| Tps Iv Of Pa, Llc | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Tractmanager, Inc. | Agreement For Contract Mgt System | Philadelphia Academic Health System, LLC | $0.00 | |
| Translate Medical | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Trinity Mission Critical, Llc | Quotation | St. Christopher's Healthcare, LLC | $0.00 | |
| U.S. Bank, N.A. | Lease Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Underwood Memorial Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Unique Pharmaceuticals Ltd. | Business Associate Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Akron | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Delaware | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Delaware | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Florida | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Massachusetts | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| University Of New Mexico | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |

89

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| University Of North Carolina | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Pennsylvania | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Pennsylvania | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Pennsylvania | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Pennsylvania | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Pittsburgh | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of The Sciences | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of The Sciences | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of The Sciences | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of The Sciences | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| University Of Virginia | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Upmc Benefit Management Services, Inc. | Agreement For Admin Of Absence & Leave For Employees | Philadelphia Academic Health System, LLC | $0.00 | |
| Uptodate, Inc. | Subscription & License | St. Christopher's Healthcare, LLC | $0.00 | |
| Urban Village Brewing Company | Event Contract | St. Christopher's Healthcare, LLC | $0.00 | |
| Urology For Children, Llc | Emergency Room On-Call Agreement | St. Christopher's Healthcare, LLC | $73,200.00 | |
| Urology for Children, LLC | Service Agreement | St. Christopher's Healthcare, LLC | | $147,600.00 |
| Urology for Children, LLC | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Ursinus College | Student Affiliation Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Us Regional Occupational Health II, Pc | Agreement For Employment Health Screenings | St. Christopher's Healthcare, LLC | $0.00 | |
| Uzma Sharif, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Van Hong Nguyen | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Vanessa Durand, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Vanguard Cleaning Systems, Inc. | Agreement For Environmental Svcs | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Vapotherm, Inc. | Pricing Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Vatsala Ramprasad, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| VDM, LP | Lease Agreement | SCHC Pediatric Associates, L.L.C. | $17,922.25 | |
| VDM, LP | Lease | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Vericom | Message On Hold Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Vesta Salehi, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Vicki Mahan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Victoria Sorokin, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Villanova University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Vilmaris Quinones, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Virginia Commonwealth University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Virtua Health, Inc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Virtua Health, Inc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Vision Quest National Limited | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Visitation School | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Vizient, Inc. | Sows Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Vizient, Inc. | Master Services Agreement | Philadelphia Academic Health System, LLC | $0.00 | |
| Vizient, Inc. | Vizient Committed Program Participation Addendum | Philadelphia Academic Health System, LLC | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Vizient, Inc. | Joinder Agreement - Mid-Atlantic Purchasing Coalition - Pharmacy | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Vyera Pharmaceuticals, Llc | Pricing Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Walden University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Warden Hwan, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | _ |
| Warren Technology, Inc. | Services Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Wayne Moving And Storage Company | Agreement For Relocation Svcs | St. Christopher's Healthcare, LLC | $11,884.50 | _ |
| Weatherby Locums, Inc. | Agreement For Physician Locum Tenens Coverage | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Webbcam LLC | Services Agreement | St. Christopher's Healthcare, LLC | $1,430.79 | |
| Wegmans Schoolf Of Pharmacy, St. John Fisher College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| Weisman Children'S Rehabilitation Hospital | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Wellington J. Davis, Iii, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| West Chester University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| West Chester University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| West Health Advocate Solutions, Inc. | Agreement For Health Advocate Svcs For Employees | Philadelphia Academic Health System, LLC | $19,160.75 | |
| West Penn Allegheny Health System, Inc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| West Penn Allegheny Health System, Inc | Transfer Agreement | St. Christopher's Healthcare, LLC | $0.00 | _ |
| West Physics Consulting, LLC | Physics Service Agreement | St. Christopher's Healthcare, LLC | $25,375.00 | _ |
| West Unified Communications Services, Inc. | Agreement For Conference Call Lines | Philadelphia Academic Health System, LLC | $0.00 | _ |
| Wheelock College | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| Widener University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Widener University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Widener University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Widener University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Wilkes University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Wilkes University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Wilmington University | Student Affiliation Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Wolters Kluwer Clinical Drug Information, Inc. | Agreement For Knowledge Database For Pharmacy | St. Christopher's Healthcare, LLC | $791.60 | |
| Women Against Abuse, Inc. | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Womencertified Inc. | License Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Woods Services, Inc. | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Woods Services, Inc. | Service Agreement | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Woodstock Family Center - Oess | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| X-Change Dialysis, Inc. | Agreement For Purchase Of Dialysis Supplies | St. Christopher's Healthcare, LLC | $9,934.64 | |
| Xerox Corporation | Maintenance Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Yanick Vibert, D.O. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Yard Truck Specialists, Inc. | Agreement For Rental Of A Truck | St. Christopher's Healthcare, LLC | $2,592.00 | |
| Young Achievers Learning Center | Service Agreement | St. Christopher's Healthcare, LLC | $0.00 | |
| Yuri Olegovich Shevchenko, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $0.00 | |
| Zach Kassutto, M.D. | Physician Agreements | SCHC Pediatric Associates, L.L.C. | $17,600.09 | |
| Zoological Society of Philadelphia | Sponsorship Agreement | St. Christopher's Healthcare, LLC | $0.00 | |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "" 09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| Contract Party | Title of Agreement | Debtor Party | Liquidated Cure Amount | Maximum Unliquidated Cure Amount (if applicable) |
|---|---|---|---|---|
| | | | $2,068,861.08 | $632,749.10 |

| CONTRACT DESCRIPTION | LIQUIDATED CURE AMOUNT | MAXIMUM UNLIQUIDATED CURE AMOUNT (IF APPLICABLE) |
|---|---|---|
| **MEDICARE PROVIDER AGREEMENTS** | | |
| Medicare Provider Agreement (CCN 39-3307) | N/A | N/A |
| Medicare Provider Agreement (CCN 39-2360) | N/A | N/A |
| **LEASED REAL PROPERTY** | | |
| **Leases in Which Hospital is the Lessee** | | |
| Lease Agreement dated September 1, 2017 between SD Real Estate Developers, LLC as landlord and Tenet Healthsystem St. Christopher's Hospital for Children, L.L.C. as tenant, for 500 surface parking spaces in the surface lot located at the intersection of Erie Avenue and B Street adjacent to the St. Christopher's Hospital campus.  The tenant's interest in the lease was assigned to St. Christopher's Healthcare, LLC pursuant to Assignment and Assumption of Lease Agreements (Tenant Leases) dated January 11, 2018. | $18,548.38 | |
| Office Lease dated September 9, 2011 between Rydal Square, L.P. as landlord and Tenet Healthsystem St. Christopher's Hospital for Children, L.L.C. as tenant, for Suites 250, 251 and a portion of 260 located on the 2nd floor of 500 Old York Road, Jenkintown, PA 19046, as amended.  The tenant's interest in the lease was assigned to St. Christopher's Healthcare, LLC pursuant to Assignment and Assumption of Lease Agreements (Tenant Leases) dated January 11, 2018. | $8,117.41 | $148,459.18 |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| CONTRACT DESCRIPTION | LIQUIDATED CURE AMOUNT | MAXIMUM UNLIQUIDATED CURE AMOUNT (IF APPLICABLE) |
|---|---|---|
| **Leases in Which the Practices are the Lessee** | | |
| Lease Agreement dated June 20, 2013 between Center for the Urban Child, Inc. as landlord and SCHC Pediatric Associates, LLC as tenant, for the approximately 30,000 rentable square feet building constructed on the campus of St. Christopher's Hospital and known as the Center for the Urban Child. | $0.00 | |
| Amended and Restated Lease dated February 27, 1990 between Edgewood Village Medical Center Limited Partnership as landlord and Clinical Care Associates of the University of Pennsylvania as tenant, for approximately 5,208.57 square feet of space located on the first floor of 680 Heacock Rd, Yardley, PA, as amended.  The tenant's interest in the lease was assigned to St. Christopher's Healthcare, LLC pursuant to Assignment of Lease Agreement and Fourth Amendment to Lease dated July 1, 2006. | $0.00 | |
| Lease Agreement dated September 10, 2010 between Erin Development Company as landlord and SCHC Pediatric Associates, LLC as tenant, for approximately 2,640 square feet of office space located on the first and second floors (Suite 1201) of 301 Oxford Valley Road, Township of Lower Makefield, Bucks County, PA (Makefield Executive Quarters). | $0.00 | |
| Lease Agreement dated May 31, 2013 between St. Luke's Hospital of Bethlehem, Pennsylvania as landlord and SCHC Pediatric Associates, LLC as tenant, for approximately 2,470.4 square feet of space on the first floor of 153 Broadhead Rd., Bethlehem, PA. | $0.00 | |
| Building Lease dated April 23, 2012 between TF Development LTD as landlord and SCHC Pediatric Associates, LLC as tenant for Suite 305 of the Aria Health Pavilion, northeast corner of Roosevelt Boulevard and Grant Avenue, Philadelphia, PA. | $0.00 | |

| CONTRACT DESCRIPTION | LIQUIDATED CURE AMOUNT | MAXIMUM UNLIQUIDATED CURE AMOUNT (IF APPLICABLE) |
|---|---|---|
| Lease Agreement dated August 24, 2012 between Haddon Property LLC as landlord and SCHC Pediatric Associates, LLC as tenant, for approximately 7,619 square feet and Unit C of 100 Kings Way, Washington Township, New Jersey.  The landlord's interest in the lease was assigned to Medical Heights Associates, LLC by Assignment of Lease dated December 23, 2015.  VDM, LP-NJ acquired the building in 2018 | $0.00 | |
| Medical Office Lease dated November 1, 2014 between Langhorne MOB Partners, L.P. as landlord and SCHC Pediatric Associates, LLC as tenant, for Suite 401 of 1205 Langhorne-Newtown Road, Langhorne, PA known as the Franciscan Medical Office Building. | $4,147.16 | |
| Sub-Sublease dated December 4, 2015 between City of Philadelphia through its Department of Public Property for the benefit of its Department of Human Services as sublandlord and SCHC Pediatric Associates, LLC as subtenant, for approximately 866 square feet of space located in 300 E. Hunting Park Avenue, Philadelphia, PA. | $1,372.00 | |
| Sublease dated September 9, 2011 between Tenet Healthsystem St. Christopher's Hospital for Children, L.L.C. as sublandlord and SCHC Pediatric Associates, LLC as subtenant, for approximately 6,319 square feet of space in 500 Old York Road, Jenkintown, PA 19046. | $0.00 | |
| TENANT LEASES | | |
| Leases in Which the Hospital is the Lessor | | |

1" = "1" "09/20/2019 SL1 1605864v2 006375.01166" "" "09/20/2019 SL1 1605864v2 006375.01166
35933560.2 09/26/2019

| **CONTRACT DESCRIPTION** | **LIQUIDATED CURE AMOUNT** | **MAXIMUM UNLIQUIDATED CURE AMOUNT (IF APPLICABLE)** |
|---|---|---|
| Lease Agreement dated June 30, 2017 between Tenet Healthsystem St. Christopher's Hospital for Children, L.L.C. as landlord and Apple Drugs, Inc. t/a Apple Pharmacy as tenant, for approximately 843.49 usable square feet of office space located on the first floor of 160 E. Erie Avenue, Philadelphia, PA 19134. The landlord's interest in the lease was assigned to St. Christopher's Healthcare, LLC pursuant to Assignment and Assumption of Lease Agreements (Lessor Leases) dated January 11, 2018. | $0.00 | |
| Gift Shop Management and Operation Agreement dated January 1, 2019 between Tenet Healthsystem St. Christopher's Hospital for Children, L.L.C. as landlord and Lori's Gifts, Inc. as tenant, for approximately 413 square feet of retail space and 110 square feet of storage space of 160 E. Erie Avenue, Philadelphia, PA 19134. The landlord's interest in the lease was assigned to St. Christopher's Healthcare, LLC pursuant to Assignment and Assumption of Lease Agreements (Lessor Leases) dated January 11, 2018. | $0.00 | |
| Time Share Sublease dated February 1, 2017 between SCHC Pediatric Associates, LLC as sublandlord and Urology for Children, LLC as subtenant, for approximately 92.37 usable square feet of non-clinical office space and approximately 980.46 usable square feet on a time-share basis for 5 of the 10 available slots for the operation of a medical professional office in 160 E. Erie Avenue, Philadelphia, PA. The sublandlord's interest in the sublease was assigned to St. Christopher's Healthcare, LLC pursuant to Assignment and Assumption of Lease Agreements (Lessor Leases) dated January 11, 2018. | $0.00 | |

97

| CONTRACT DESCRIPTION | LIQUIDATED CURE AMOUNT | MAXIMUM UNLIQUIDATED CURE AMOUNT (IF APPLICABLE) |
|---|---|---|
| Convenience Closet Agreement dated January 1, 2019 between Tenet Healthsystem St. Christopher's Hospital for Children, L.L.C. as landlord and Interphase Medical Equipment, Inc. as tenant, for 38 square feet of storage space between St. Christopher's Hospital's Respiratory and Emergency Departments in 160 E. Erie Avenue, Philadelphia, PA 19134. Interphase Medical Equipment, Inc. changed its name to Continuum LLC. | $0.00 | |
| **Leases in Which the Practices are the Lessor** | | |
| Timeshare Sublease Agreement dated March 1, 2017 between SCHC Pediatric Associates, LLC as sublandlord and Global Neurosciences Institute, LLC as subtenant, for approximately 698.99 square feet on a full time basis for non-clinical office space and approximately 980.46 usable square feet on a time-share basis for 5 of the 10 available slots for the operation of a medical professional office in 160 E. Erie Avenue, Philadelphia, PA. | $0.00 | |
| Timeshare Sublease Agreement (undated) between SCHC Pediatric Associates, LLC as sublandlord and Drexel University as subtenant, for approximately 2,470.4 square feet of space on the first floor of 153 Broadhead Rd., Bethlehem, PA. | $0.00 | |
| Timeshare Sublease Agreement dated September 1, 2017 between SCHC Pediatric Associates, LLC as sublandlord and St. Christopher's Pediatric Urgent Care Center, LLC as subtenant, for Suite 250 in 500 Old York Road, Jenkintown, PA 19046. | $0.00 | |
| | **$32,184.95** | **$148,459.18** |

98