# THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
|  | ) |
| Debtors. | ) **Re: Docket No. 205** |
|  | ) |

## ORDER UNDER 11 U.S.C. § 105, 363, 365, 503 AND 507 (A) APPROVING ASSET PURCHASE AGREEMENT WITH STC OPCO, LLC (B) AUTHORIZING SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF  INTERESTS, (C) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[2] [D.I. 205] of the above captioned Debtors (the "Debtors"), for, *inter alia*, entry of an order, pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"): (i) approving the sale by Debtor St. Christopher's Healthcare, LLC ("STC") and certain other Debtors (defined in the Sale Motion as the "STC Practice Groups" and collectively with STC referred to herein as the "STC Entities") of certain Assets, free and clear of all encumbrances, and (ii) authorizing the assumption by the Debtors and assignment to the purchaser of the Assets of executory contracts designated by such purchaser free and clear of all encumbrances, and (iii) granting certain related relief; and the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion or the Agreement (defined below) as applicable.

Court having entered an order (the "Bidding Procedures Order") [D.I. 301] pursuant to which, *inter alia*. the Court approved procedures for the sale of the Assets; and the Debtors having identified STC Opco, LLC (the "Purchaser") as the Successful Bidder (as defined in the Bidding Procedures Order) for the Assets; and the Debtors having filed a copy of an agreement (the "Agreement") between the STC Entities and the Purchaser stating the terms of the Successful Bid (as defined in the Bidding Procedures Order) [D.I. 753]; and the Court having held a hearing on September 23, 2019 (the "Sale Hearing") to approve the Sale Motion and the Agreement; and the STC Entities and the Purchaser having made certain modifications to the Original Agreement after the Sale Hearing; and the revised version of the Original Agreement incorporating those modifications (hereafter referred to as the "Agreement") being attached hereto as Exhibit "A;" and the Court having reviewed and considered (a) the Sale Motion, (b) the Agreement, (c) the objections to the Sale Motion, if any, and (d) the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing and after due deliberation thereon; and good cause appearing therefore,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (M), (N) and (O) O), and the Court may enter a final order consistent with Article III of the United States Constitution.. The statutory predicates for the relief requested in this Sale Motion are sections 105, 363, 365, 503, 507 and 525 of the Bankruptcy Code.

B.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

C.     Proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing and the Debtors' assumption and assignment (or assignment, as applicable) of the contracts and leases listed on **Exhibit B** hereto (as such list may be modified in accordance with the Agreement, the "Assigned Contracts") to the Purchaser has been provided in accordance with sections 102(1), 363, 365, 503 and 507 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, 6006, 9008 and 9014 and the Bidding Procedures Order, and no other or further notice of the Sale Motion, the Sale Hearing, or of the entry of this Order is required.

D.     A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion has been afforded to all interested persons and entities including by serving the Sale Notice in the manner required by, and on or before the deadline stated in, the Bidding Procedures Order on: (1) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin Hackman, Esq.); (2) counsel to the Official Committee of Unsecured Creditors, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102 (Attn: Andrew H. Sherman, Esq. and Boris I. Mankovetskiy, Esq.); (3) counsel to MidCap, Debtors' prepetition secured lender and DIP Agent, Stradley, Ronan, Stevens & Young, LLP, 2005 Market Street, Suite 2600, Philadelphia, PA 19103 (Attn: Gretchen M. Santamour, Esq.) and 1000 N. West Street, Suite 1279, Wilmington, DE 19801 (Attn: Joelle E. Polesky, Esq.); (4) Drexel University d/b/a Drexel University College of Medicine; (5) the Debtors' unions; (6) the United States Attorney for the

District of Delaware; (7) the United States Department of Justice; (8) the Pennsylvania and New Jersey Attorney General's Offices; (9) the Pennsylvania Department of Health; (10) the City of Philadelphia; (11) all parties known by the Debtors to assert a lien on any of the Assets; (12) all non-Debtor parties to any of the Assumed Contracts; (13) all persons known to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve months prior to the Petition Date; (14) the Office of the Secretary of State for the Commonwealth of Pennsylvania; (15) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (16) the Securities and Exchange Commission; (17) the United States Environmental Protection Agency; (18) the Pennsylvania Department of Environmental Protection; (19) the New Jersey Department of Environmental Protection; (20) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service; and (21) all of the Debtors' known creditors and equity holders for whom identifying information and addresses are available to the Debtors, including all current and former patients of  the STC Entities who, as of the date of the Bidding Procedures Order (the "Bidding Procedures Order Date"), had asserted claims against any STC Entity, including but not limited to claims formally asserted by the filing of suit or a proof of claim in these Bankruptcy Cases and claims informally asserted by letter or by a request for medical records from a lawyer or otherwise (the "Known Patient Creditors").

E.      The Debtors also caused the Sale Notice, modified in a manner appropriate for publication, to be published in The *Philadelphia Inquirer* and *The Wall Street Journal* on or before the deadline stated in the Bidding Procedures Order, which notice by publication is reasonable and sufficient to bind holders of claims against the STC Entities whose identity was not known to the Debtors as of the day before the Bidding Procedures Order Date,

4

including all patients of any STC Entity who was not a Known Patient Creditor as of the Bidding

Procedures Order Date.

F.      The STC Entities have full corporate power and authority to execute the

Agreement and all other documents contemplated thereby and consummate the transactions

contemplated therein and the sale of the Assets and assumption and assignment (or assignment,

as applicable) to the Purchaser of the Assigned Contracts  (collectively, the "Sale") has been duly

and validly authorized by all necessary corporate action of the STC Entities and no consents or

approvals, other than the approval of this Court, are required for the STC Entities to consummate

such transactions.

G.      The Purchaser is not a successor to or mere continuation of the Debtors

(including the STC Entities) or their estates.

H.      The bidding procedures established pursuant to the Bidding Procedures

Order afforded a full, fair and reasonable opportunity for any entity to make a higher or better

offer to purchase the Assets and Assigned Contracts and no higher or better offer has been made.

I.      The Debtors have demonstrated that it is an exercise of the STC Entities'

sound business judgment to enter into the Agreement and assume and assign the Assigned

Contracts and sell the Assets to the Purchaser in connection with the consummation of the

Agreement, and that approval of the Agreement and the Sale pursuant thereto is in the best

interests of the Debtors (including each STC Entity) and their estates.

J.      The Sale must be completed as soon as practicable in order to preserve the

value of the Assets and as a result, good and sufficient business justification exists for the Sale as

soon as practicable of the Assets and assumption and assignment (or assignment, as applicable)

of the Assigned Contracts to the Purchaser outside of a plan of reorganization.

K.  The Purchaser is not an insider, as that term is defined in the Bankruptcy Code, of any Debtor (including any STC Entity).  Furthermore, no insiders of the Debtors are receiving or retaining any property or payments in connection with the Sale except to the extent such insiders have allowed claims against or equity interests in any STC Entity and, as a result, may participate in a distribution of Sale proceeds.

L.  STC is party to Medicare provider agreements No. 39-3307 and 39-2360 (the "Provider Agreements") with the Secretary of the United States Department of Health and Human Services ("HHS"), and its component agency, the Centers for Medicare & Medicaid Services ("CMS"), to receive payment for services provided to Medicare beneficiaries pursuant to the provisions of, and regulations, policies and procedures promulgated under, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395lll (the "Medicare Statute")

M.  The Agreement was negotiated, proposed and entered into by the STC Entities and Purchaser without collusion, in good faith, and as a result of arm's-length bargaining.  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby with respect to the transactions authorized by this Order (including specifically, but without limitation, any assumption and assignment of executory contracts under section 365 of the Bankruptcy Code). Neither the Debtors (including the STC Entiites) nor the Purchaser has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code.

N.  In the absence of a stay pending appeal, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Agreement at any time after the entry of this Order, provided

6

the Purchaser shall not be obligated to close until all applicable conditions to Closing under the Agreement have been satisfied or waived as provided in such Agreement.

O.    The consideration provided by the Purchaser for the Assets being purchased, including the Assigned Contracts, pursuant to the Agreement constitutes the best and highest offer for the Assets and the Assigned Contracts and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof, and the District of Columbia.

P.    Subject to paragraphs 11-14 of this Order with respect to the Provider Agreements, the STC Entities may sell the Assets and Assigned Contracts free and clear of all Interests (including, without limitation, those (i) that purport to give to any party a right or option to effect any forfeiture, modification or termination of any STC Entities' or the Purchaser's interest in the Assets and/or Assigned Contracts and, (ii) in respect of Taxes), because each entity with an Interest in any of the Assets and/or Assigned Contracts, including but not limited to any "Governmental Unit," as defined in the Bankruptcy Code, accrediting body, or other third party, as applicable, has consented to the Sale, is deemed to have consented to the Sale, has a claim which is subject to a bona fide dispute, or could be compelled in a legal or equitable proceeding to accept a money satisfaction of such Interest. For the avoidance of doubt, Interests do not include any recoupment rights of the United States otherwise available under applicable law, or other rights of HHS or CMS pursuant to the Medicare Statute.

Q.    The STC Entities have good title to the Assets and Assigned Contracts and, accordingly, the transfer of the Assets and assignment of the Assigned Contracts to the Purchaser pursuant to the Agreement will be a legal, valid, and effective transfer of the Assets and assignment of the Assigned Contracts.

09/26/2019 SL1 1606709v1 006375.01166
35933560.3 09/27/2019

R.       Except for HHS's or CMS's rights under the Medicare Statute, including without limitation its rights to recoup or offset overpayments under the Provider Agreements, neither the transfer of the Assets nor the assignment of the Assigned Contracts pursuant to the Agreement will subject the Purchaser to any liability (except the Assumed Obligations expressly assumed by the Purchaser pursuant to the Agreement)  for claims against the Debtors (including the STC Entities) or the Debtors' (including the STC Entities') predecessors or affiliates of any kind or character, whether known or unknown, now existing or hereafter occurring, whether fixed or contingent, based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor, vicarious or transferee liability. Without limiting the general nature of the foregoing, neither the transfer of the Assets nor the assignment of the Assigned Contracts will subject the Purchaser or its affiliates to any liability (1) on account of any employee benefit plan maintained by any Debtor (including the STC Entites) or any Debtors' (including the STC Entities) predecessors or  affiliates, including but not limited to any liability related to benefits, underfunding, termination and/or termination premiums, regardless when such claims are deemed to have accrued and regardless whether such would be considered "claims" as such term is defined in the Bankruptcy Code, to (i) the PBGC, or (ii) to any plan participant or beneficiary (collectively, the "PBGC Claims"); (2) except for HHS's or CMS's right to recoup or offset overpayments under the Provider Agreements, claims, administrative proceedings or actions brought by or on behalf of any Governmental Unit, accrediting body, or other third party relating to the operation of the Hospital Business or Physician Practice Business prior to the effective time of Closing; and/or (3) except for HHS's or CMS's right to recoup or offset overpayments under the Provider Agreements, claims or actions or proceedings brought under Medicaid statutes or regulations or the statutes and regulations

8

applicable to other governmental health care reimbursement programs including enforcement actions and administrative agency rulings or interpretations, including claims of the Pennsylvania Department of Health related, in any way, to the participation in the Medicaid program by any STC Entity prior to the effective time of Closing.

S.     The Purchaser has provided adequate assurance of future performance under the Assigned Contracts to the extent required by section 365(b)(1)(C) of the Bankruptcy Code.

T.     Upon the assumption and assignment (or assignment, as applicable) of the Assigned Contracts, as provided herein, the Purchaser shall succeed to all of the right, title and interest of the STC Entities under the Assigned Contracts including, without limitation, the right to exercise renewal options which, pursuant to any provision of the applicable Assigned Contract or applicable nonbankruptcy law, are not exercisable by assignees of the STC Entities, the Court having found that such provisions, as they relate to the assumption and assignment (or assignment, as applicable) to the Purchaser of the Assigned Contracts, are unenforceable restrictions pursuant to section 365(f)(3) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED THAT:

1.     The Sale Motion, and the relief sought therein (including approval of the Sale) is GRANTED, in all respects as set forth herein.

2.     The Supplemental Objection of Temple University Health System, Inc., Temple University Hospital, and Temple University Lewis Katz School of Medicine Regarding Sale [D.I.758] has been withdrawn for the reasons as set forth on the record at the Sale Hearing and all other objections to the Sale Motion or the relief requested therein that have not been

9

withdrawn with prejudice, waived, or settled, and all reservations of rights included therein, are (a) overruled on the merits, to the extent such objections and reservations of rights relate to the relief granted herein, or (b) moot, as relates to this Order, because they do not relate to the relief granted herein.[3]

3.   The Agreement, each document, instrument, and agreement contemplated thereby, and all of the terms and conditions thereof, is hereby approved.

4.   Pursuant to sections 105(a), 363(b) and 365 of the Bankruptcy Code, the Debtors are authorized and directed to take all actions necessary to consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement.

5.   As of the Closing Date, the Assigned Contracts that are executory contracts or unexpired leases shall be deemed to have been assumed by the applicable STC Entity and assigned to the Purchaser pursuant to section 365(f) of the Bankruptcy Code. Pursuant to section 365(k) of the Bankruptcy Code, the applicable STC Entities' estate shall be relieved from any liability for any breach of an Assigned Contract occurring after the Closing Date. As of the Closing Date, the Assigned Contracts that are not executory contracts or unexpired leases shall be deemed to have been assigned to the Purchaser pursuant to section 363(b) of the Bankruptcy Code.

---

[3]   The objections that are moot because they do not relate to the relief granted by this Order include, but are not limited to, the limited objection and reservation of rights of Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC (the "Non-Debtor Lessors") [D.I. 622 and 757] and the objection and reservation of rights of PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Erie Street Garage, LLC, PAHH Feinstein MOB, LLC, PAHH New College, MOB, LLC and PAHH Wood Street Garage, LLC (together, the "Master Landlords") [D.I. 689, 744 and 751], including any reservations of rights made by such parties on the record of the Sale Hearing. None of the leases between the STC Entities and the Non-Debtor Lessors or the STC Entities and the Master Landlords are being assumed and assigned pursuant to this Order. To the extent the Purchaser seeks to designate for assumption and assignment any additional executory contracts or unexpired leases not covered by this Order, the assumption and assignment of any such executory contracts or unexpired leases shall be subject to the entry of a separate order.

10

6.      On the Closing Date, or as soon as reasonably practical thereafter, the Purchaser shall pay to the non-debtor party to each Assigned Contract as to which a liquidated cure amount is stated on **Exhibit B** (the "Liquidated Cure Amount") such Liquidated Cure Amount.

7.      As to contracts for which a Liquidated Cure Amount is not stated in **Exhibit B** (each a "Disputed Cure Contract"), the amount claimed by the non-debtor party to such Assigned Contract (the "Maximum Unliquidated Cure Amounts") is stated in **Exhibit B**. For the avoidance of doubt, the Maximum Unliquidated Cure Amounts stated on **Exhibit B** shall be the maximum amount of any subsequently allowed claim to which any non-debtor party to a Disputed Cure Contract shall be entitled pursuant to section 365(b)(1)(A) of the Bankruptcy Code, except as to HHS or CMS under the Provider Agreements. The cure amounts in dispute as of the Closing Date are hereafter referred to as the "Disputed Cure Amounts."

8.      Subject to paragraphs 11-14 of this Order with respect to the Provider Agreements, upon payment of the Liquidated Cure Amounts to the applicable non-debtor parties, (i) all defaults under the related Assigned Contracts required to be cured pursuant to section 365(b)(1)(A) of the Bankruptcy Code shall be deemed cured and all amounts due to the non-debtor parties to, and beneficiaries of, such Assigned Contracts (including any Governmental Unit (other than HHS or CMS under the Provider Agreements), accrediting body or other third party) pursuant to section 365(b)(1)(B) on account of any pecuniary loss resulting from such defaults shall be deemed paid in full, and (ii) each non-debtor party to such Assigned Contracts shall be forever bound by such Liquidated Cure Amounts and enjoined from seeking to terminate such Assigned Contract or enforce any other remedies under such Assigned Contract against the

Purchaser on account of defaults by the Debtors, including defaults as to which, pursuant to section 365(b)(1)(A) of the Bankruptcy Code, cure is not required.

9.      Upon liquidation of any Disputed Cure Amount (by settlement or by entry of an order of this Court), the Purchaser shall promptly pay such liquidated amount to the applicable counterparty.

10.     On and after the Closing Date, the Purchaser shall have the sole authority to contest and settle any Disputed Cure Amounts and shall not require Court approval of any such settlements.  Upon liquidation of any Disputed Cure Amount, such liquidated amount shall become a Liquidated Cure Amount and, upon payment (including by way of offset) the provisions of paragraph 8 above shall apply to such Assigned Contract and the applicable counterparty. For so long as the Debtors' bankruptcy cases remain open, within a reasonable time following the settlement of any Disputed Cure Amount, the Purchaser shall file a notice of such settlement on the docket.

11.     For the avoidance of doubt, nothing in this Order shall limit, modify, or in any way affect the United States Secretary (the "Secretary") of Health and Human Services' police and regulatory powers and authority to regulate the Debtors' or the Purchaser's enrollment or participation as a Medicare provider or supplier (to the extent the Purchaser enrolls or participates as a Medicare supplier) or the right and authority of the Secretary, CMS or its contractors to review, approve, deny, set-off, recoup, or pay Medicare claims in the ordinary course of business in accordance with the Medicare Statute and regulations, and the policies and procedures thereunder. Nothing herein shall be construed as the Secretary's consent to, or acceptance of, the Agreement or any underlying transactions described in or supporting the Agreement.

09/26/2019 SL1 1606709v1 006375.01166
35933560.3 09/27/2019

12.     For the avoidance of doubt, notwithstanding anything to the contrary in this Order or the Agreement, the Provider Agreements shall not be sold pursuant to section 363 of the Bankruptcy Code but shall be assumed and assigned, including, without limitation, any and all liability arising from or under the Provider Agreements, pursuant to and in accordance with section 365 of the Bankruptcy Code and the Medicare Statute, the regulations promulgated under the Medicare Statute, and CMS's Medicare policies and procedures.  Nothing in this Order shall be construed as authorizing the sale, transfer, or assignment of any Medicare provider agreements free and clear of successor liability, nor as restricting the United States' rights of setoff and recoupment.

13.     For the avoidance of doubt, notwithstanding any other provision of this Order, the Agreement, or any other document implementing the Sale,  (i) no Debtor shall assume and assign or otherwise transfer any national provider identifier, provider transaction access number or Medicare enrollment agreement to the Purchaser; and (ii) no Debtor shall loan or otherwise permit the Purchaser to use or submit claims under a Debtor's provider transaction access number or Medicare enrollment agreement; except, in each case, in accordance with the Medicare Statute, the regulations promulgated under the Medicare Statute, and CMS's Medicare policies and procedures and with the approval of CMS.

14.     Any cure amount set forth by Debtors is not binding on the United States, and shall not be interpreted to set a cure amount related to the Provider Agreements or limit successor liability with respect to the Provider Agreements that are assumed and assigned to Purchaser. At Closing, unless otherwise agreed by the Department of Justice (on behalf of the Department of Health and Human Services), on account of STC's estimated Medicare liabilities, there shall be paid via wire transfer of immediately available funds to an account designated by

13

the Department of Justice such amount as is agreed upon by the Purchaser, the Debtors and the

Department of Justice (on behalf of the Department of Health and Human Services). STC shall

pay the first two hundred thousand dollars ($200,000.00) of such amounts at Closing, unless

otherwise agreed by the Department of Justice (on behalf of the Department of Health and

Human Services), and the Purchaser shall pay any balance.

15.     Any provision in any Assigned Contract that purports to declare a breach,

default or payment right as result of an assignment or a change of control in respect of the

applicable STC Entity or the Debtors as relates to the assumption of any Assigned Contract by an

STC Entity and assignment of such Assigned Contract to the Purchaser is unenforceable, and all

such Assigned Contracts shall remain in full force and effect, notwithstanding any such

provision.  No sections or provisions of any Assigned Contract that purports to provide for

additional payments, rent accelerations, assignment fees, increases, payments, deposits, security,

charges or any other fees charged to the Purchaser or the applicable STC Entity as a result of the

assumption and the assignment of the Assigned Contracts (or assignment, as applicable) to the

Purchaser shall have any force and effect with respect to the transactions contemplated by the

Agreement and assignments authorized by this Order, and such provisions are unenforceable

under sections 363(l), 365(e)(1), 365(f), or 541(c)(1) of the Bankruptcy Code, as applicable.

16.     Except for the Assumed Obligations and except as provided in paragraphs

11-14, with respect to the Provider Agreements, pursuant to sections 105(a) and 363(f) of the

Bankruptcy Code, upon the Closing under the Agreement, the Assets and the Assigned

Contracts shall be free and clear of all (i) mortgages, security interests, conditional sale or other

title retention agreements, pledges, liens, rights of offset, judgments, demands, encumbrances

and claims (as that term is defined in the Bankruptcy Code), (ii) rights or options to effect any

14

forfeiture, modification, repurchase, or termination of any STC Entities' or Purchaser's interest in the Assigned Contracts and/or Assets, regardless whether such are "claims" as that term is defined in the Bankruptcy Code, (iii) PBGC Claims, (iv) claims in respect of Taxes (including taxes as to which applicable returns have not yet been filed, whether or not overdue), and (v) easements, restrictions, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, regardless whether such are "claims" as that term is defined in the Bankruptcy Code (collectively, items (i) to (v) above, with the exception of any rights arising under the Medicare Statute with respect to the Provider Agreements are referred to as "Interests"), with all such Interests to attach to the Net Proceeds of Sale (defined below) in the order of their respective priorities, with the same validity, force and effect (if any) which they now have against the Assets and Assigned Contracts, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  The "Net Proceeds of Sale" is the Purchase Price, as adjusted pursuant to the Agreement, minus other costs of sale.

17.    The Debtors are authorized to disburse funds from the Net Proceeds of Sale to MidCap Funding IV Trust up to the amount, and in repayment of the DIP Obligations, as defined in the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Granting Adequate Protection and Modifying the Automatic Stay* (the "Final DIP Order") [Docket No. 557].  Any payment of the DIP Obligations shall be subject to the reservation of rights of the Committee and MidCap Funding IV Trust as set forth in the Final DIP Order and the *Stipulation With MidCap Funding IV Trust Determining Certain Committee Rights Pursuant to Final DIP Financing Order* [Docket No. 686].

09/26/2019 SL1 1606709v1 006375.01166
35933560.3 09/27/2019

18.      Except as provided in paragraphs 11-14 with respect to the Provider Agreements, all persons are hereby enjoined from asserting, prosecuting or otherwise pursuing any claim against the Purchaser to recover on any claims (regardless of when accrued and regardless whether meeting the definition of "claim" under the Bankruptcy Code) such person had, has or may have (other than an Assumed Obligation) against (x) the Debtors, their estates, officers, directors, shareholders, the Assets or the Assigned Contracts, or (y) the Purchaser in connection with the negotiation of, and any agreements contained in, related to or conditioned upon, the Agreement. The foregoing injunction shall be deemed to include conditioning entry by the Purchaser into a new managed care agreement with any Medicaid managed care company on payment, or agreement to be subject to offset for payment, of claims of such Medicaid managed care company against any Debtor, including any of the STC Entities.

19.      As of the date of this Order, each of the Debtors (including the STC Entities) is authorized and directed to (a) deliver to the Purchaser any document required to be delivered under the Agreement which is subject to a non-disclosure or similar agreement provided the Purchaser agrees to hold such agreement in confidence pursuant to the same terms that apply to the Debtors, and (b) execute such documents and take all other actions as may be necessary to release its Interests in or claims against the Assets and Assigned Contracts, if any, as such Interests or claims may have been recorded or may otherwise exist.

20.      Notwithstanding that nothing in this Order or the Agreement shall restrict HHS's or CMS's   regulatory powers established by the provisions of, and regulations promulgated under the Medicare Statute or require CMS to approve the transaction set forth in the Agreement as a CHOW pursuant to 42 C.F.R. § 489.18, and subject to paragraphs 30, 31, 32, and 33 of this Order, each and every Governmental Unit shall be, and hereby is, directed to

accept (i) this Order as sufficient evidence of the transfers of all right, title, and interest in, to, and under the Assets and the Assigned Contracts, and are authorized to rely on this Order in consummating, or facilitating the consummation of, the transactions contemplated by the Agreement, and (ii) any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

21.     Subject to paragraphs 11-14 of this Order with respect to the Provider Agreements, upon the occurrence of the Closing, all Interests in, against, or upon the Assets or the Assigned Contracts shall be unconditionally released, terminated, and discharged without the need for any further action.   Notwithstanding the foregoing, at the Closing, or as soon as practicable thereafter, (x) the Debtors (including the STC Entities) and the Purchaser are hereby authorized to execute and file such termination statements, instruments of satisfaction, releases, or other documents to reflect the unconditional release, termination, and discharge of such Interests on behalf of such person or entity with respect to the Assets and the Assigned Contracts, and (y) the Purchaser is hereby authorized on behalf of each holder of a purported Interest to file, register, or otherwise record a copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the unconditional release, termination, and discharge of all Interests in, against, or upon the Assets or the Assigned Contracts.   The provisions of this Order authorizing the sale of the Assets (including the Assigned Contracts) free and clear of all Interests are self-executing and, notwithstanding the failure of the Debtors, the Purchaser or any other party to execute, file or obtain termination statements, instruments of satisfaction, releases, or other documents to reflect the release, termination, and discharge of any such Interests, all such Interests shall be deemed divested immediately upon Closing.

09/26/2019 SL1 1606709v1 006375.01166
35933560.3 09/27/2019

22.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser on the Closing Date.

23.     As of the Closing Date, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the transactions contemplated by the Agreement.

24.     To the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets or the Assigned Contracts on account of the filing or pendency of the Bankruptcy Cases or the consummation of the Sale. The foregoing shall be deemed to, *inter alia*, prohibit the Pennsylvania Department of Human Services from conditioning its entry into a provider agreement with the Purchaser for participation by the Purchaser in the Medical Assistance Program on Purchaser's payment, agreement by Purchaser to be subject to offset for payment, or Purchaser's assumption of liability with respect to any overpayments made by the Pennsylvania Department of Human Services to the Debtors.

25.     Except as provided in paragraphs 11-14 with respect to the Provider Agreements, to the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date and upon the occurrence of Closing, to operate under any transferred license, permit, registration and governmental authorization or approval of the STC Entities with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date

18

26.    No law of any state or other jurisdiction relating to bulk sales or similar laws shall apply in any way to the transaction contemplated by the Agreement, the Sale Motion, and this Order.

27.    For the avoidance of doubt, any privileges, protections or immunities of the Debtors for communications, documents, materials or matters arising at any time, whether before or after the Petition Date, including but not limited to any attorney-client privilege, work product doctrine, common interest or joint defense privilege, relating to any matter whatsoever, including without limitation any matter relating to the negotiation and implementation of the Agreement and any of the transactions contemplated thereby or entered into in connection therewith (collectively, "Privilege") shall not be Assets under the Agreement, and any such Privilege is owned and will continue to be owned by the Debtors, and notwithstanding anything to the contrary herein or in the Agreement, the Purchaser shall have no interest in or rights with respect to the Privilege, whether pursuant to this Order, the Agreement, or otherwise.  The Privilege shall remain within the sole control of the Debtors and may not be waived by any other person or entity.

28.    The Agreement as well as other agreements related thereto, may be modified, amended, or supplemented by the Debtors (in consultation with the Committee) and the Purchaser without further order of the Court, provided that any such modification, amendment, or supplement either is (a) not material or (b) not less favorable to the STC Entities than the existing applicable provisions.

29.    Notwithstanding anything to the contrary in the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, any cure notice or assumption notice (including, but not limited to, any Assumption Notice or Supplemental Assumption Notice), or this Order (i)

19

none of the insurance policies or any related agreements (collectively, the "Chubb Insurance Contracts") issued at any time by any of ACE American Insurance Company, Illinois Union Insurance Company, ACE Property and Casualty Insurance Company, Federal Insurance Company, or their respective affiliates or successors (collectively, the "Chubb Companies"), or any rights, benefits, claims, rights to payments and/or recoveries under the Chubb Insurance Contracts shall be sold, assigned or otherwise transferred to the Purchaser in connection with the Sale; (ii) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (iii) for the avoidance of doubt, the Purchaser is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts; *provided, however*, that to the extent any claim with respect to the Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchaser any such insurance proceeds (each, a "Proceed Turnover"); *provided, further, however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

30.     Nothing in this Order is intended to abrogate or limit the authority or discretion of the Pennsylvania Department of Health ("DOH") over regulatory matters such as the licensing and permitting of health care facilities.

31.     The transfer to the Purchaser of the healthcare facility licenses issued to STC or the STC Entities by the DOH is subject to the prior written approval of the DOH pursuant to 35 P.S. §448.809(a)(3).

32.     Buyer's right to assign its rights under this Agreement to one or more of its affiliates prior to the Closing Date pursuant to Article 13.2 of the APA is subject to any and

all requirements of Pennsylvania state law relating to the licensing or permitting of health care facilities.

33.     This Court shall retain jurisdiction (a) to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith, (b) to compel delivery of the Assets and Assigned Contracts to the Purchaser, (c) to resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, and (d) to interpret, implement and enforce the provisions of this Order. Nothing herein shall be construed as conferring jurisdiction upon this Court for matters relating to the licensing or permitting of the Hospital under Pennsylvania law.

34.     Nothing contained in any plan confirmed in this case or the order confirming any plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.  Further, the provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any plan or converting the Debtors' case from chapter 11 to a case under chapter 7 of the Bankruptcy Code.

35.     The terms and provisions of the Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estate, its their creditors, the Purchaser and its affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting a claim against or Interest in the Debtors' estates or any of the Assigned Contracts and the Assets and any trustee appointed for any Debtor under any chapter of the Bankruptcy Code.

36.    The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

37.    The Purchaser is a party in interest and shall have standing to appear and be heard on all issues related to or otherwise connected with this Order, the Sale or the Agreement.

38.    Herman Goldner Co., Inc. ("HG") has asserted a mechanics' lien on certain Assets.  Notwithstanding anything in this Order to the contrary, to the extent HG holds a valid, perfected and unavoidable lien on any Asset, and to the extent HG's alleged cure claim in the amount of $80,124.42, plus interest, costs, expenses and attorneys' fees, is not paid in connection with the Purchaser's assumption and assignment of the lease between Front Street Healthcare Properties, LLC and St. Christopher's Healthcare, LLC for the property located at 160 E. Erie Avenue, Philadelphia, PA, HG's lien shall attach to the proceeds of the Sale.  For the avoidance of doubt, the Debtors reserve all rights to challenge the validity and perfection of HG's asserted mechanics' lien.

39.    Nothing contained herein shall waive any transfer, stamp or similar tax with respect to the Sale.

40.    Notwithstanding the provisions of Fed. R. Bankr. P. 6004 (h), 6006(d), and 7062, this Order shall be effective and enforceable immediately upon entry.

Dated: September 27th, 2019
Wilmington, Delaware

KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE