## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (KG) |
| | (Jointly Administered) |
| Debtors. | Re: D.I. 763 |

### LIMITED OBJECTION OF TEMPLE UNIVERSITY HEALTH SYSTEM, INC. TO SECOND SUPPLEMENTAL NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

Temple University Health System, Inc. ("Temple"), by and through its undersigned counsel, hereby files this limited objection (the "Limited Objection") to the *Second Supplemental Notice of Assumption, Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases of the Debtors* (D.I. 763) (the "Supplemental Assumption Notice").  In support of this Limited Objection, Temple states as follows:

### BACKGROUND

1.      On June 30 and July 1, 2019 (collectively, the "Petition Date"), each of the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

2.        On July 16, 2019, the Debtors filed the *Debtors' Motion for Entry of (A) an Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Debtors and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to Any Stalking Horse Purchasers, and (IV) Granting Related Relief; and (B) One or More Orders (I) Approving the Sales or Other Acquisition Transactions for the Assets, (II) Authorizing the Sales Free and Clear of All Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (D.I. 205) (the "Sale Motion").

3.        On September 23, 2019, the Debtors filed the Supplemental Assumption Notice and served it upon counterparties to executory contracts and unexpired leases that the Debtors may seek to assume or assume and assign in connection with the sale of the assets of St. Christopher's Healthcare, LLC and certain related affiliates.

4.        The Supplemental Assumption Notice designates four contracts between the Debtors and Temple for potential assumption and assignment (as listed in the Supplemental Assumption Notice), all with a cure amount of $0.00:

a.        Clinical rotation agreement between Jeanes Hospital (Temple) and St. Christopher's Healthcare, LLC;

b.        Clinical rotation agreement (NICU) between Temple University and St. Christopher's Healthcare, LLC;

c.      Clinical rotation agreement (Neurology) between Temple

University and St. Christopher's Healthcare, LLC (the "<u>Neurology Clinical Rotation</u>

<u>Agreement</u>")[2]; and

d.      Clinical rotation agreement (PGY 1 to Well Baby Nursery)

between Temple University Hospital and St. Christopher's Healthcare, LLC.

## **LIMITED OBJECTION**

5.      Temple asserts that the correct cure amount, as of the date of filing this

Limited Objection, for the Neurology Clinical Rotation Agreement is $31,618.49 (the "<u>Correct</u>

<u>Cure Amount</u>"), which relates to administrative, supervisory and teaching ("<u>AS&T</u>") activities

for residents' faculty and administrators.  The invoice reflecting this amount is attached hereto as

**<u>Exhibit 1</u>**.

6.      If the Neurology Clinical Rotation Agreement is to be assumed or

assumed and assigned, the Debtors should be required to pay to Temple the Current Cure

Amount in accordance with section 365(b) of the Bankruptcy Code together with any other cure

amounts accruing under the Neurology Clinical Rotation Agreement between the date of this

filing and the date that the Neurology Clinical Rotation Agreement is assumed by the Debtors.

7.      Bankruptcy Code section 365(b)(1) provides that:

[i]f there has been a default in an executory contract or unexpired
lease of the debtor, the trustee may not assume such contract or
lease unless, at the time of assumption of such contract or lease,
the trustee –

(A) cures, or provides adequate assurance that the trustee
will promptly cure, such default … ;

---

[2] The formal title of the Neurology Clinical Rotation Agreement is the Resident Affiliation Agreement for
Non-TUHS Residents at TUH, by and between Tenet Health System St. Christopher's Hospital for Children, LLC
and Temple University Hospital, Inc., dated as of August 28, 2015.

#55423253 v1

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

8.      Under the express terms of section 365 of the Bankruptcy Code, in connection with an assumption, all defaults must be cured and all other obligations arising under such lease must be assumed in their entirety and must be performed as and when provided under the contract and applicable non-bankruptcy law.  The Debtors' obligations therefore include cure of all defaults existing *as of the time of assumption* and the satisfaction of all other obligations as they arise under the Neurology Clinical Rotation Agreement.  *See In re Liljeberg Eners., Inc.*, 304 F.3d 410, 438 (5th Cir. 2002); *In re Building Block Child Care Ctrs., Inc.*, 234 B.R. 762, 765 (9th Cir. BAP 1999).

9.      Temple has continued to perform under the Neurology Clinical Rotation Agreement with the Debtors.  Accordingly, additional amounts have and will continue to accrue under the Neurology Clinical Rotation Agreement and will be payable to Temple.  Thus, to the extent, if any, the Debtors fail to pay such post-petition amounts in the ordinary course of business (some of which may come due after the filing of this Limited Objection) arising prior to the assumption of the Neurology Clinical Rotation Agreement, such amounts must be paid as additional cure amounts in connection with assumption in addition to the Current Cure Amount.

10.     Furthermore, the Neurology Clinical Rotation Agreement must be assumed subject to all post-petition claims, amounts, and other obligations that have accrued under the Neurology Clinical Rotation Agreement but that are not in default as of the date of assumption (and therefore are technically not "cure" obligations), and these obligations must

#55423253 v1

survive assumption and be satisfied in the ordinary course of business post-assumption as and when such claims come due under the Neurology Clinical Rotation Agreement.

11.     Temple objects to the Supplemental Assumption Notice to the extent it: (a) purports to limit Temple's present cure amount (as it existed as of the date of this filing) for the Neurology Clinical Rotation Agreement to an amount that is less than the Current Cure Amount: (b) purports to fix the final cure amount as it existed on the date of the cure objection deadline rather than the date the Neurology Clinical Rotation Agreement is actually assumed (in other words Temple is entitled to the Current Cure Amount plus cures arising from the date of this filing through the date of assumption); or (c) seeks to limit Temple's right to obtain payment in full of any amounts that have accrued, but are not in default, as of the date the Neurology Clinical Rotation Agreement is assumed—and the foregoing rights of Temple must be expressly acknowledged pursuant to any order approving the assumption and assignment of the Neurology Clinical Rotation Agreement.

## RESERVATION OF RIGHTS

12.     Temple further reserves the right to amend and/or supplement this Limited Objection and the Cure Amount.

## CONCLUSION

WHEREFORE, Temple respectfully requests that the Court sustain Temple's Limited Objection and grant any other and further relief that the Court may deem just and appropriate.

#55423253 v1

Dated: October 7, 2019
     Wilmington, Delaware

**PEPPER HAMILTON LLP**

*/s/ Marcy J. McLaughlin*
John H. Schanne, II (DE 5260)
Marcy J. McLaughlin (DE 6184)
Hercules Plaza, Suite 5100
1313 N. Market Street, P.O. Box 1709
Wilmington, Delaware  19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390
E-mail:     schannej@pepperlaw.com
          mclaughlinm@pepperlaw.com

-and-

**PEPPER HAMILTON LLP**

Francis J. Lawall (admitted *pro hac vice*)
Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone:  (215) 981-4000
Facsimile:  (215) 981-4750
E-mail:     lawallf@pepperlaw.com

*Counsel for Temple University Health System, Inc.*

-6-