**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11466 (KG)<br><br>Jointly Administered<br><br>Hearing Date: Nov. 4, 2019, at 9:30 a.m.<br>Obj. Deadline: Oct. 28, 2019, at 4:00 p.m. |

**MOTION OF MASTER LANDLORDS FOR ENTRY OF AN ORDER (A) ALLOWING ADMINISTRATIVE CLAIMS, AND (B) COMPELLING DEBTORS (I) TO PAY POSTPETITION RENT AND OTHER OBLIGATIONS UNDER MASTER LEASES AND (II) TO COORDINATE WITH MASTER LANDLORDS REGARDING REJECTION OF MASTER LEASES AND SURRENDER OF PREMISES**

HSRE-PAHH I, LLC, PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Wood Street Garage, LLC, PAHH Feinstein MOB, LLC, PAHH Erie Street Garage, LLC, and PAHH Broad Street MOB, LLC (collectively, the "Master Landlords"), by and through their counsel, DLA Piper LLP (US), hereby submit this motion (the "Motion") for entry of an order (a) seeking allowance of administrative claims and (b) compelling the Debtors (i) to pay administrative expense claims to the Master Landlords in an amount not less than $3.25 million[2] for postpetition rent and other postpetition obligations under the Master Leases, and (ii) to coordinate with the Master Landlords regarding the contemplated rejection of the various leases and contracts affecting the Hahnemann University Hospital campus and surrounding properties. In support of this Motion, the Master Landlords respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] The exact amount of the Debtors' unpaid postpetition obligations under the Master Leases continues to accrue and is being reconciled.

EAST\169843584.2

**JURISDICTION**

1.  This Court has jurisdiction over the above-captioned cases, property of the Debtors' estates and this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Master Landlords consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**BACKGROUND**

4.  On January 11, 2018, the Debtors and certain of their non-Debtor affiliates, consummated the purchase of Hahnemann University Hospital and St. Christopher's Hospital for Children (together, the "Hospitals") and certain related assets from Tenet Healthcare Corporation and certain of its affiliates (collectively, "Tenet") pursuant to an Asset Sale Agreement dated August 31, 2017, as amended (the "Acquisition").

5.  Concurrent with the Debtors' acquisition of the Hospitals, the Master Landlords in a single, integrated transaction purchased from Tenet several buildings (the "Master Lease Buildings") located on or adjacent to the Hospital campuses. The Master Lease Buildings contain an ambulatory surgical center, a cancer treatment center providing radiation therapy,

office space, classroom space, parking, and other ancillary facilities that are essential to the operation of the Hospitals.

6. Incident to the Debtors' acquisition of the Hospitals and the Master Landlords' acquisition of the Master Lease Buildings, the Master Landlords, as landlord, and Debtor St. Christopher's Healthcare, LLC, as tenant ("Master Tenant SCH") entered into Master Leases (collectively, the "Master Leases") pursuant to which the Master Landlords leased the Master Lease Buildings on an "absolute triple net" basis to Master Tenant SCH.[3]  Master Tenant SCH is required to pay all amounts owing under the Master Leases and all occupancy costs for the premises leased under the Master Leases.  The obligations of Master Tenant SCH under the Master Leases are guaranteed by non-Debtor affiliate Philadelphia Academic Health Holdings, LLC ("PAHH") and non-Debtor affiliate Paladin Healthcare Capital, LLC ("PHC" and, together with PAHH, the "Master Guarantors").

7. Under the terms of the purchase agreement for the Master Lease Buildings, Master Tenant SCH took assignment of and became the sub-landlord under several subleases (the "Subleases") for each of the Master Lease Buildings.  Master Tenant SCH currently sub-leases the majority of the Master Lease Buildings to Drexel University College of Medicine ("DUCOM") or to DUCOM affiliates, as well as to other subtenants, including certain of its non-Debtor affiliates and other unaffiliated third parties (each a "Subtenant" and collectively, the "Subtenants").

8. Over the past several weeks, the Master Landlords have made repeated attempts to discuss with Master Tenant SCH and its Debtor affiliates and advisors a transition plan for the transfer or closure of the Hospitals and to address various Subtenant issues, but the Debtors, save

---

[3]   The Master Leases are voluminous and may be provided upon request and subject to appropriate confidentiality agreements.

3

for a single preliminary telephone conference on September 19, 2019, have yet to engage in these negotiations. Further, as has been described previously to the Court, the Hahnemann Center City campus constitutes buildings owned by affiliates of the Debtors as well as certain of the Master Lease Buildings developed in an integrated complex of buildings that are open to each other with many utilities coming into the complex only at a single point. Certain outstanding transition issues include cleaning the premises of radioactive materials and waste in accordance with applicable non-bankruptcy law, security, health and safety concerns, information technology and data center access, transition of shared services, access to utilities and new accounts with utility providers for utilities that enter through only Hospital buildings, vendor access as well as the resolution of various Subtenant matters and the Debtors' plan to return the Master Lease Buildings to Master Landlord in the condition required by section 16.1 of the Master Leases. Finally, the Master Landlords understand that the Debtors will require the use of certain of the demised premises following the effective date of the rejection of the Master Leases.

9. It should go without saying that time is critical for this transition plan, and to date no steps have been taken to develop or implement this plan. Yet, the Debtors have not communicated with Master Landlords in a meaningful way with respect to these issues since September 20, 2019.

10. Under the Master Leases the Rent and Supplementary Rent are due on the first day of each month and shall be paid not later than the tenth business day of such month. As the Court is well aware, the Debtors have not paid any Supplementary Rent postpetition. In addition, the Debtors have not paid the Rent or Supplementary Rent due for the month of

September, 2019 and are now past due in the payment of Rent and Supplementary Rent for the month of October, 2019.

11.     The Master Landlords are aware of other postpetition obligations of the Debtors that are not being paid including amounts owing to mechanics and materialmen, other vendors and accrued real estate taxes.  The Master Landlords reserve all rights relative to such additional obligations and will seek allowance of such sums following discovery.

## RELIEF REQUESTED

12.     By this Motion, the Master Landlords respectfully request that the Court enter an order, substantially in the form attached as Exhibit A, (a) allowing administrative claims in an amount not less than $3.25 million, and (b) compelling the Debtors (i) to pay in full postpetition Rent and Supplementary Rent due under the Master Leases within three business days of the entry of the Order, and (ii) to coordinate with the Master Landlords with respect to the contemplated rejection of leases and contracts affecting the Hahnemann University Hospital campus and surrounding properties.

## ARGUMENT

13.     The Debtors are required by section 365(d)(3) of the Bankruptcy Code to promptly pay all postpetition rent and all other obligations under each of the Master Leases pending the assumption or rejection of the Master Leases.  Section 365(d)(3) of the Bankruptcy Code provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in § 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3); *see also Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 210 (3d Cir. 2001) (intent of Congress in enacting section 365(d)(3) was to alleviate landlords' burden of having to (1) move to compel payment, (2) demonstrate reasonable value of actual use, and (3) await payment at confirmation of any administrative claim allowed).

14. The Debtors have not rejected the Master Leases and are still in possession of the Master Lease Properties; therefore, the Debtors are required by section 365(d) of the Bankruptcy Code to timely perform their obligations under the Master Leases.  Under the Master Leases, Rent and Supplementary Rent are due to be paid on the first day of the month, and no later than the tenth business day of the month.  The Debtors have refused—without basis—to pay postpetition Rent and Supplementary Rent under the Master Leases.

15. The Master Leases also require the Debtors to pay accrued real estate taxes and amounts owing to mechanics, materialmen, and other vendors, and to maintain the Master Lease Properties free of liens.  In addition, the Debtors are obligated under the Master Leases to pay utility costs, insurance, service costs and other operating expenses incurred or that should have been incurred by Master Tenant SCH, capital expenditures that were to have been made by Master Tenant SCH, capital projects initiated by or for Master Tenant SCH that are incomplete, maintenance that was to be performed prior to and following the commencement of the Debtors' chapter 11 cases, and value destruction resulting from Master Tenant SCH's partial or non-performance of preventative maintenance.  The Debtors have also refused to pay these amounts, which nonpayment has resulted in at least one postpetition mechanic's lien against the Master Lease Properties.  *See also Limited Objection and Reservation of Rights of the Non-Debtor Lessors to Debtors' Motion for an Order Extending the Deadline for the Debtors to Assume or*

*Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4)* [D.I. 876, ¶ 9] (listing various mechanics' liens that have been filed against the Debtors' leased properties and attaching as exhibits the filed mechanics' lien notices).

16.     Furthermore, section 503 of the Bankruptcy Court provides that, after notice and a hearing, there shall be allowed administrative expenses, including the actual, necessary costs and expenses of preserving the estate.  *See* 11 U.S.C. § 503(b)(1)(A).  "Courts have discretion to determine when an administrative expense will be paid." *In re Garden Ridge Corp.,* 323 B.R. 136, 143 (Bankr. D. Del. 2005) (citing *HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002)). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *Id*.

17.     The Master Landlords are not the only administrative creditor that the Debtors have failed to pay for key postpetition services.  Approximately two weeks ago the Master Landlords were informed that certain fire safety equipment at the Wood Street garage was in disrepair.  To the Master Landlords' knowledge the Debtors have not yet obtained quotes to repair, let alone commenced or completed such repairs.  The Debtors' inability or refusal to commence and complete such repairs may put lives at risk and certainly devalues the property.

18.     Indeed, certain other of the Debtors' creditors holding administrative claims have filed motions seeking allowance and payment of their administrative expense claims. *See, e.g., Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC's Motion to Enforce the Order Granting in Part the Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C. § 503(b)(1) or, in the Alternative, (II) Granting Relief from the Automatic Stay to the Extent Necessary to Terminate the TSA and*

*MSA* [D.I. 851], *Motion for Payment of Administrative Expenses of Philadelphia Hospital and Health Care Employees – District 1199C Training and Upgrading Fund* [D.I. 867].  The Master Landlords should be treated no less favorably than other administrative claimants providing postpetition services to the Debtors—and value to the Debtors' estates—in these cases.

19. Last, as the Master Landlords have previously noted, the Debtors continue to refuse to coordinate with the Master Landlords with respect to the contemplated rejection of leases and contracts affecting the Hahnemann University Hospital campus and surrounding properties.  This post-rejection transition plan includes, among other action items, the Debtors' plan (i) to remove medical equipment and materials, including the removal of radioactive material used in the radiation treatment center and any remediation required by applicable non-bankruptcy law; (ii) to resolve the various Subtenant issues; (iii) to transition shared services; (iv) to provide access to utilities and new accounts with utility providers for utilities that enter through only Hospital buildings; (v) to provide access to various vendors; and (vi) to comply with the turnback requirements set forth in section 16.1 of the Master Leases.

20. Accordingly, the Master Landlords respectfully request that this Court allow the Master Landlords' administrative expense claim in an amount not less than $3.25 million, direct the Debtors to pay postpetition Rent and Supplementary Rent due under the Master Leases, and further direct the Debtors to coordinate with the Master Landlords with respect to the contemplated rejection of leases and contracts affecting the Hahnemann University Hospital campus and surrounding properties.

## **NOTICE**

21. Notice of the filing of this Motion to has been given to: (a) the United States Trustee, (b) counsel to the Debtors, (c) counsel to the Committee, (d) counsel to the DIP Lender,

and (e) all parties that have requested notice in these cases. The Master Landlords respectfully submit that no other or further notice of this Motion is required.

Dated: October 18, 2019

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Stuart M. Brown*
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@us.dlapiper.com

-and-

Richard A. Chesley (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: Richard.Chesley@us.dlapiper.com

*Counsel to the Master Landlords*