## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Objection Deadline: November 8, 2019 at 4:00 p.m. (EST)** |
| | ) **Hearing Date: November 19, 2019  at 10:00 a.m. (EST)** |

### MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
### EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE
### A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON

By this motion (this "Motion"), Center City Healthcare, LLC d/b/a Hahnemann University Hospital and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") seek the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), (a) extending the period in which the Debtors have the exclusive right to file a chapter 11 plan or plans (the "Exclusive Filing Period") by 120 days, through and including February 25, 2020; and (b) extending the period in which the Debtors have the exclusive right to solicit acceptances of a chapter 11 plan or plans (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") by 120 days, through and including April 26, 2020.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

**Preliminary Statement**

1.      The current goals and direction of the Debtors' Chapter 11 Cases remain the same as those announced at the July 2, 2019 "first day" hearing in these cases, and include (i) the safe and effective wind down of Hahnemann University Hospital ("HUH") and (ii) the ultimate preservation and sale of St. Christopher's Hospital for Children ("STC").

2.      Despite facing numerous challenges during these Chapter 11 Cases, the Debtors remain on track to accomplish these goals.  Specifically, the Debtors developed and finalized an appropriate wind-down plan for HUH and are currently working to implement that plan.  As for STC, the Court approved the sale of STC as a going concern by order dated September 27, 2019, and the Debtors expect that transaction to close on or before December 13, 2019.  Once the sale of STC is closed and certain other significant case issues are addressed, the Debtors intend to formulate, propose and implement (in consultation with the Committee (as defined below)) an appropriate plan of liquidation for all fourteen debtor entities.

3.      As further described herein, under these circumstances, and given the substantial progress made by the Debtors in these cases to date, an extension of the Exclusive Periods is warranted and will permit the Debtors to continue working toward achieving the important goals established at the outset of these Chapter 11 Cases.

**Jurisdiction and Venue**

4.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

5.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief requested herein are sections 105(a) and 1121(d) of the Bankruptcy Code.

**Background**

8.      On June 30 and July 1, 2019 (collectively, the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases.  On July 15, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al*. [D.I. 182] (the "Committee").

9.      A description of the Debtors' businesses and the reasons for commencing these Chapter 11 Cases is set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2] (the "First Day Declaration"), which is incorporated herein by reference.

10.      As described above, the Debtors are pursuing these Chapter 11 Cases with two primary objectives: (i) the orderly closure of HUH; and (ii) the going concern sale of STC and its

related affiliated entities.   In addition, the Debtors are engaged disputes with Tenet Business

Service Corporation and Conifer Revenue Cycle Solutions, LLC (together, the "Tenet Parties"),

some of which are the subject of pending litigation, as described in greater detail in the First Day

Declaration.

11.     As described below, the Debtors have made considerable progress in these cases

in achieving each of their primary objectives, and in working to resolve their disputes with the

Tenet Parties.   The Debtors intend to work to achieve their goals in a manner that best serves

creditors, patients and parties in interest.

**A.     The Debtors' Progress with Respect to the Closure Plan**

12.     Since the outset of these Chapter 11 Cases, the Debtors have been engaged in

ongoing discussions with various parties, and have provided significant supporting information,

in an effort to formulate and implement an acceptable and safe closure plan for HUH.   In the

meantime, and consistent with the intended closure efforts, steps were taken to wind down

various clinical services and programs.   Ultimately, on July 25, 2019, HUH discharged its last

inpatient and thereafter treated and discharged its last emergency room patient, closed the

Emergency Department and terminated radiology outpatient procedures and closed the radiology

department.

13.     The Debtors have received written approval of the HUH closure plan (the

"Closure Plan") from the Pennsylvania Department of Health.   The Closure Plan addresses,

among other things, patient issues, the transfer and storage of medical records, the disposition of

pharmaceuticals, inventory, medical waste and hazardous materials and, ultimately, the cessation

of operations at HUH.

14.     Following approval of the Closure Plan, and consistent with the procedures set forth in the plan, the Debtors have, *inter alia*, transferred stem cells to a biological storage facility, removed food supplies and donated them to various charities, secured patient records in anticipation of transfer, catalogued and begun the process of removing radioactive materials, and secured and categorized equipment.  The Debtors have thus made significant process with respect to the safe and orderly wind down of HUH's operations since the outset of these cases.

**B.     The Debtors' Progress with Respect to the Sale of Assets**

15.     Since the outset of these cases, the Debtors have made significant progress when it comes to the sale of their assets and, in particular, achieving the Debtors' objective of selling STC and its related affiliated entities through a going concern sale.  First, on September 10, 2019, following a lively auction process, the Court entered an order [D.I. 681] (the "Residency Program Order") authorizing the Debtors to, *inter alia*, transfer HUH's graduate medical education training program assets to Thomas Jefferson University Hospitals, Inc., which is acting on behalf of a consortium of non-profit entities (the "Residency Program Sale").  The purchase price for the Residency Program Assets is $55 million.  The Residency Program Order is currently stayed and is the subject of a pending appeal filed by the United States of America before the United States District Court for the District of Delaware.

16.     Second, on September 27, 2019, the Court entered an *Order under 11 U.S.C. § 105, 363, 365, 503 and 507 (A) Approving Asset Purchase Agreement with STC OpCo, LLC (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the Debtors' Executory Contracts, and (D) Granting Related Relief* [D.I. 795] (the "STC Sale Order"), pursuant to which the Court authorized the sale (the "STC Sale") of substantially all assets of St. Christopher's Healthcare, LLC and certain related Debtors to STC OpCo, LLC in accordance with the asset purchase agreement attached to

the STC Sale Order as Exhibit A (the "STC APA").  Pursuant to the STC APA, the outside

closing date for the STC Sale is December 13, 2019.  The Debtors are working closely with the

Buyer to ensure that the closing of the STC Sale takes place as soon as practicable.

**C.    The Status of the Debtors' Disputes with Tenet and Conifer**

17.    The Debtors have further devoted significant time and resources in litigating, and

working to resolve consensually, their pending disputes with the Tenet Parties. On September 19,

2019, the Court entered an order [D.I. 733] (the "Tenet Parties Order"), pursuant to which it

directed the Debtors and the Tenet Parties to, among other things, promptly engage in mediation

of certain of their disputes and ordered that if the parties could not reach an agreement by

October 18, 2019 regarding the ongoing provision of services by the Tenet Parties, the Tenet

Parties could terminate service.

18.    Consistent with the Tenet Parties Order, the Debtors, the Tenet Parties and the

Committee selected the Honorable Judith K. Fitzgerald (ret.) to mediate the various disputes

between the Debtors and the Tenet Parties, including whether or not the Tenet Parties will

continue to provide services beyond the outside date set forth in the Tenet Parties Order.  The

mediation is ongoing as of the date of this Motion.  The Debtors are guardedly optimistic that the

mediation will lead to a resolution of the various issues in a manner that will assure the closing

of the STC Sale.

19.    On October 2, 2019, the Debtors filed a notice of appeal [D.I. 803] ("Notice of

Appeal") from the Tenet Parties Order insofar as it permits the termination of the TSA and MSA

(both as defined in the Tenet Parties Order) after October 18, 2019.  Contemporaneously with the

Notice of Appeal, the Debtors filed a motion for a stay pending appeal [D.I. 804] of the Tenet

Parties Order to avoid harm to the Debtors' patients and the harsh results that would occur upon

the abrupt termination of the agreements.  Absent settlement of the parties' disputes, the Tenet

Parties will oppose the motion, which is scheduled to be heard by the Court on November 4,

2019.

**D.      The Debtors' Exclusivity Periods**

20.      The Debtors' Exclusive Filing Period is scheduled to expire on October 28, 2019

and the Debtors' current Exclusive Solicitation Period is scheduled to expire on December 27,

2019.  To ensure that these Chapter 11 Cases continue to progress in an effective and efficient

manner, the Debtors seek the extensions requested herein so that they can work towards the

closing of the STC Sale, litigate the pending appeal of the Residency Program Order, work to

resolve their disputes with the Tenet Parties, and address other pressing issues arising in these

cases.

**Relief Requested**

21.      By this Motion, the Debtors seek the entry of an Order, pursuant to sections

105(a) and 1121(d) of the Bankruptcy Code, (a) extending the Debtors' Exclusive Filing Period

by 120 days, through and including February 25, 2020 and (b) extending the Debtors' Exclusive

Solicitation Period by 120 days, through and including April 26, 2020.

**Basis for Relief Requested**

22.      Section 1121(b) of the Bankruptcy Code provides that "only the debtor may file a

plan until after 120 days after the date of the order for relief under this chapter."  11 U.S.C.

§ 1121(b).  Sections 1121(c)(2) and (3) further provide, in relevant part, that a party in interest

may file a plan if and only if "the debtor has not filed a plan before 120 days after the date of the

order for relief under this chapter" or "the debtor has not filed a plan that has been accepted,

before 180 days after the date of the order for relief."  See 11 U.S.C. § 1121(c)(2)-(3).

23.     Section 1121(d)(1) provides, in relevant part:

> [O]n request of a party in interest made within the respective
> periods in subsections (b) and (c) of this section and after notice
> and a hearing, the court may for cause reduce or increase the 120-
> day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

24.     Pursuant to section 1121(d)(2), the 120-day Exclusive Filing Period may not be extended beyond a date that is 18 months after the Petition Date, and the 180-day Exclusive Solicitation Period may not be extended beyond a date that is 20 months after the Petition Date. See 11 U.S.C. § 1121(d)(2).  In the present case, the requested extensions of the Exclusive Periods, if granted, do not extend beyond these deadlines.  Thus, this Motion is consistent with the requirements of Bankruptcy Code section 1121(d)(2).

## I.     A Court May Extend the Exclusive Periods for "Cause" under Section 1121(d) of the Bankruptcy Code

25.     As indicated above, section 1121(d)(1) of the Bankruptcy Code provides that a court may extend Exclusive Periods for "cause" shown.  See 11 U.S.C. § 1121(d); In re Pine Run Trust, Inc., 67 B.R. 432, 433 (Bankr. E.D. Pa. 1986).  The term "cause" is not defined in the Bankruptcy Code; rather, courts have broad discretion to determine "cause" based on the facts and circumstances of each case.  See First Am. Bank of N.Y. v. Southwest Gloves & Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986) (stating that section 1121(d)(1) provided the bankruptcy court with flexibility to increase the period of exclusivity in its discretion); see also In re Burns and Roe Enters., Inc., No 00-41610 (RG), 2005 WL 6289213, at *3-4 (D.N.J. Nov. 2, 2005); In re Sharon Steel Corp., 78 B.R. 762, 763-65 (Bankr. W.D. Pa. 1987).

26.     Legislative history also makes clear that the term "cause" is intended to be a flexible standard aimed at balancing the competing interests of a debtor and its creditors.  See

-8-

H.R. Rep. No. 95-595 at 231-32 (1978).    The purpose of exclusivity is to "promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." See H.R. Rep. No. 95-595, at 36 (1994); Burns and Roe, 2005 WL 6289213, at *4. Accordingly, to fulfill Congress's legislative intent, debtors should be granted a reasonable opportunity to remain in control for a period of time to prepare adequate financial and non-financial information regarding the outcome of any proposed plan for disclosure to creditors. See In re McLean Indus., Inc., 87 B.R. 830, 833-34 (Bankr. S.D.N.Y. 1987); see also In re All Seasons Indus., Inc., 121 B.R. 1002, 1006 (Bankr. N.D. Ind. 1990) ("One of the most important reasons for extending the debtor's period of exclusivity is to give the chapter 11 process of negotiation and compromise an opportunity to be fulfilled, so that a consensual plan can be proposed and confirmed without opposition.").

27.    To determine whether cause exists to extend the Exclusive Periods, courts consider several non-exclusive factors, including: (i) the size and complexity of a case; (ii) the debtor's need for sufficient time to negotiate a plan and prepare adequate information; (iii) the existence of good faith progress toward reorganization; (iv) whether the debtor is paying its bills as they come due; (v) whether the debtor has shown a reasonable likelihood of proposing a viable plan; (vi) the progress the debtor has made in negotiating with its creditors; (vii) the amount of time that has elapsed in the case; (viii) whether the debtor is seeking an extension of the exclusive periods to pressure creditors to submit to the debtors' reorganization demands; and (ix) whether any unresolved contingencies exist.    See, e.g., In re Adelphia Comm. Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).    No single factor is dispositive in determining whether to extend exclusivity; rather, courts can

36005296.5 10/25/2019

choose to rely on only a few factors or even altogether differing factors.  See In re Elder-Beerman Stores Corp., No. C-3-97-175, 1997 WL 1774880, at *4 (S.D. Ohio June 23, 1997); Dow Corning, 208 B.R. at 669-70 (noting that sometimes certain factors are more important or relevant than others).

28.    As set forth below, ample cause exists to grant the Debtors' requested extensions of the Exclusive Periods.

## II.    Cause Exists to Extend the Exclusive Periods

### A.    The Debtors Have Made Good Faith Progress Towards a Plan

29.    As detailed above, since the Petition Date, the Debtors have made significant progress in these Chapter 11 Cases.  For example, the Debtors have (i) obtained significant "first day" and other relief; (ii) retained various professionals; (iii) prepared and filed schedules and statements of financial affairs; (iv) obtained interim and final approval of a debtor in possession financing facility; (v) sought and obtained entry of several rejection orders under which the Debtors have rejected burdensome and unnecessary executory contracts and unexpired leases; (vi) negotiated and entered into trade agreements with certain vendors to ensure the continued provision of critical supplies and services; (vii) addressed a multitude of creditor and patient inquiries; (viii) responded to numerous threatened violations of the automatic stay; (ix) filed bidding procedures and sale motions for the Residency Program Sale and STC Sale, conducted an auction for the residency program assets, and obtained Bankruptcy Court approval of both sales; (x) defended against and challenged significant claims set forth in the motion filed by the Tenet Parties for payment of an administrative expense claim and relief from the automatic stay, and engaged in discussions and mediation with the Tenet Parties concerning the parties' disputes; (xi) established and obtained Court approval of a key employee incentive plan and key

employee retention plan; and (xii) otherwise attended to tasks required to administer these Chapter 11 Cases.

30.     The Debtors intend to maintain the speed and efficiency of these Chapter 11 Cases as they work to formulate a chapter 11 plan or plans.  That said, the Debtors are mindful of the time required to close the STC Sale, address the pending appeal of the Residency Program Order, resolve their disputes with the Tenet Parties, address other significant landlord and vendor issues and conduct an analysis of claims filed, all of which are necessary predicates to the Debtors' ability to formulate a viable chapter 11 plan.  The Debtors thus seek an extension of the Exclusive Periods so that the Debtors, in consultation with their key constituents, can work to develop a viable and consensual chapter 11 plan.

**B.      The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan or Plans**

31.     The Debtors' prospects for filing and ultimately confirming a viable chapter 11 plan are favorable.  Indeed, the Debtors' progress in achieving their goals of an orderly wind-down of HUH and going concern sale of STC, as well as the speed in which the Debtors have made such progress, demonstrate that they will likewise be able to approach the plan formulation and confirmation process with the same speed and efficiency.  The Debtors intend to work in consultation with the Committee to develop the terms of a plan so that a consensual plan can be filed.  The Debtors also submit that any proposed plan will be structured so as to ensure a maximum recovery to the Debtors' creditors and parties in interest and an orderly wind-down of the Debtors' estates.  Thus, because the Debtors have reasonable prospects for filing a viable plan, an extension of the Exclusive Periods is warranted.

36005296.5 10/25/2019

C.      **The Chapter 11 Cases Have Been Pending for a Short Period of Time**

32.      The fact that the Chapter 11 Cases have been pending for just over four months, during which time the Debtors have made significant progress, supports the requested extension of the Exclusive Periods.  While the Debtors hope to negotiate and file a consensual chapter 11 plan as quickly as practicable, the Debtors need additional time to focus on and ensure closure of the STC Sale, continue the wind down at HUH, resolve their disputes with the Tenet Parties and address the other significant issues described herein.  The requested extensions of the Exclusive Periods will provide the Debtors with the time needed to address these issues and thereby permit the Debtors to focus on both resolving such issues in a manner that best serves their estates and creditors and establishing a framework for a viable, consensual plan, without the distraction of a looming exclusivity deadline.

D.      **No Prejudice to Creditors**

33.      The Debtors do not believe that the requested extension of the Exclusive Periods will harm the Debtors' creditors or other parties in interest.  On the contrary, the Debtors have conducted these Chapter 11 Cases in a manner intended to maximize the recoveries of their creditors and to best serve the interests of patients and other parties in interest.  In addition, the Debtors are not seeking this extension to prejudice their creditors or to otherwise pressure creditors to submit to reorganization demands.  Instead, the Debtors seek the requested extension so that they can maintain the status quo in these Chapter 11 Cases while addressing the other significant time-sensitive and potentially case dispositive issues and begin the formulation of a consensual plan.  Thus, because neither the Debtors' creditors nor any other party in interest will be prejudiced by the proposed extension of the Exclusive Periods, the Debtors submit that the relief requested should be approved.

34.     Lastly, although the Debtors hope to be in a position to file a chapter 11 plan of liquidation within the extended Exclusive Filing Period, as a precautionary measure, the Debtors reserve the right to request further extensions of the Exclusive Periods for cause.

## No Prior Request

35.     No previous request for the relief sought herein has been made to this or any other Court.

## Notice

36.     Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the Committee; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.


[remainder of page left intentionally blank]

36005296.5 10/25/2019

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form annexed hereto at **Exhibit A**: (i) extending the Debtors' Exclusive Filing Period by 120 days, through and including February 25, 2020; (ii) extending the Debtors' Exclusive Solicitation Period by 120 days, through and including April 26, 2020; and (iii) granting the Debtors such other and further relief as is just and proper.

Dated: October 25, 2019              **SAUL EWING ARNSTEIN & LEHR LLP**

                                     By: */s/ Monique B. DiSabatino*
                                         Mark Minuti (DE Bar No. 2659)
                                         Monique B. DiSabatino (DE Bar No. 6027)
                                         1201 N. Market Street, Suite 2300
                                         P.O. Box 1266
                                         Wilmington, DE 19899
                                         Telephone: (302) 421-6840
                                         Fax: (302) 421-5873
                                         mark.minuti@saul.com
                                         monique.disabatino@saul.com

                                                      -and-

                                         Jeffrey C. Hampton
                                         Adam H. Isenberg
                                         Melissa A. Martinez
                                         Centre Square West
                                         1500 Market Street, 38th Floor
                                         Philadelphia, PA 19102
                                         Telephone: (215) 972-7777
                                         Fax: (215) 972-7725
                                         jeffrey.hampton@saul.com
                                         adam.isenberg@saul.com
                                         melissa.martinez@saul.com

                                         *Counsel for Debtors and Debtors in Possession*