**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 )  |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al*.,[1] | ) Case No. 19-11466 (KG) ) ) Jointly Administered |
| Debtors. | ) ) **Related to Docket No. 956** ) |

**DEBTORS' OBJECTION TO MOTION OF GLOBAL NEUROSCIENCES INSTITUTE, LLC FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") submit this objection (the "**Objection**") to the *Motion of Global Neurosciences Institute, LLC for Allowance and Payment of Administrative Expense Claim* [D.I. 956] (the "**Administrative Claim Motion**"), filed by Global Neurosciences Institute, LLC ("**GNI**"). In support of their Objection, the Debtors rely on the *Declaration of Allen Wilen in Support of Debtors' Objection to Motion of Global Neurosciences Institute, LLC for Allowance and Payment of Administrative Expense Claim*, a copy of which is attached hereto as **Exhibit A** (the "**Wilen Declaration**") and the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2] (the "**First Day Declaration**"), and respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

## PRELIMINARY STATEMENT

1. Through the Administrative Claim Motion, GNI attempts to capitalize on the Debtors' inadvertent omission of GNI from the service list in connection with the Debtors' first omnibus motion, through which the Debtors sought to reject GNI's contract for services at Hahnemann University Hospital ("**Hahnemann**") effective August 2, 2019. The contract was ultimately rejected as of August 27, 2019.

2. GNI seeks allowance of an administrative expense claim of more than $200,000 for the intervening period, despite having provided no services to Hahnemann during such time and despite having been expressly advised by the Debtors on *July 25, 2019* that its services were no longer needed at Hahnemann.

3. Regardless of when GNI technically knew its contract was *officially rejected*, GNI provided no value to the Debtors' estate and knew that the Debtors did not need or require its services.

4. GNI's failure to provide actual services weighs against any presumption that GNI should be entitled to administrative expense claims at contract rates. As no services were actually rendered, GNI should not receive an allowed administrative expense claim.

5. Moreover, GNI's request for *prompt* payment of its alleged post-petition claim should be denied. GNI fails to demonstrate any hardship and its underlying contract has been rejected.

## FACTUAL BACKGROUND

6. The Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 30 and July 1, 2019 (collectively, the "**Petition Date**").

7. Debtor Center City Healthcare, LLC, as successor to Tenet Health System Hahnemann, LLC, and GNI are parties to that certain Clinical Service Chief, Neurosurgery Coverage and Neurosurgery/Trauma On-Call Coverage Services Agreement (the "**GNI Agreement**"), pursuant to which GNI agreed to provide on-call and on-site neurosurgical physician and physician assistant staffing at Hahnemann. To be clear, all of the alleged services for which GNI seeks an administrative expense claim were allegedly provided to Hahnemann alone, and not to St. Christopher's Hospital for Children.

8. GNI acknowledges that on July 25, 2019, a representative of the Debtors emailed GNI that "Hahnemann discharged their final inpatient today, so the service/coverage is not needed at Hahnemann going forward." Administrative Claim Motion, ¶14.

9. From July 25, 2019 forward, the Debtors had no inpatients at Hahnemann, consistent with the Debtors' July 25, 2019 email referenced above.

10. Further, from July 25, 2019 forward, the Debtors never utilized GNI's services at Hahnemann, consistent with the Debtors' July 25, 2019 email referenced above.

11. Moreover, upon information and belief, GNI provided no services to Hahnemann on or after July 25, 2019, and no physicians, physicians assistants, or other personnel from GNI reported to Hahnemann to provide on-site services or otherwise conferred any value to the Debtors in connection with their operations at Hahnemann.

12. On August 2, 2019, the Debtors filed their *First Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Executory Contracts and Unexpired Leases* (the "**Rejection Motion**") [D.I. 349], through which the Debtors sought to reject the GNI Agreement effective August 2, 2019. Inadvertently, GNI was excluded from the service list for the Rejection Motion.

13. On August 22, 2019, the Court entered an order granting the Rejection Motion [D.I. 547], approving the rejection of the GNI Contract as of August 2, 2019.

14. On September 5, 2019, GNI filed its *Motion of Global Neurosciences Institute, LLC for Reconsideration of and/or to Vacate Order Rejecting Services Agreement* [D.I. 652], which the parties resolved by stipulating that the GNI Agreement would be deemed rejected as of August 27, 2019 while reserving all rights with respect to any claims asserted by GNI. The Court approved that resolution by order dated October 16, 2019 [D.I. 864].

15. GNI filed the Administrative Claim Motion on November 4, 2019, seeking an allowed "administrative expense claim in the amount of $216,022.40 plus interest, costs, and, to the extent appropriate, legal fees, and directing the prompt payment of such claim." Administrative Claim Motion, pp. 12-13.

16. The Debtors understand that the foregoing amounts relate solely to the period from August 2, 2019 through August 27, 2019.[2]

## THE GNI AGREEMENT

17. The following chart summarizes the services that GNI was to provide pursuant to the GNI Agreement, and the corresponding amounts sought by GNI for the period of August 2, 2019 through August 27, 2019:

---

[2] Specifically, the Debtors note that the invoices attached to the Administrative Claim Motion total, in the aggregate, $257,938.88, and the last invoice references services from August 26, 2019 through August 31, 2019. The Debtors assume that GNI pro-rated this last invoice to arrive at its final amount of $216,022.40. To the extent any amounts are awarded to GNI for services during this time period, the Debtors reserve all rights with respect to the calculation of such pro-ration.

| Service Category | Amount Per Invoice | Description |
|---|---|---|
| On-Call Coverage – Trauma | $9,010.71 | Per Appendix B to the GNI Agreement, GNI was to provide unrestricted, general, spine and trauma neurosurgery call coverage to Hahnemann. *Per the Debtors' records, no such coverage was utilized or required from August 2, 2019 through August 27, 2019, and GNI's physicians were never called to Hahnemann for trauma coverage.* |
| On-Call Coverage – Neurosurgery | $8,109.66 | Per Appendix B to the GNI Agreement, GNI was to provide unrestricted, general, spine and trauma neurosurgery call coverage to Hahnemann. *Per the Debtors' records, no such coverage was utilized or required from August 2, 2019 through August 27, 2019, and GNI's physicians were never called to Hahnemann for neurosurgery coverage.* |
| On-Site Coverage – Neurosurgery | $15,119.93 | Per Appendix B to the GNI Agreement, GNI was to provide "onsite GNI neurosurgeons (Monday through Friday). *Per the Debtors' records, no neurosurgeons were actually onsite during the period from August 2, 2019 through August 27, 2019.* |
| On-Site Physician Assistant Coverage | $17,807.08 | Per the First Amendment to the GNI Agreement, GNI agreed to provide "sufficient Physician Assistant FTEs trained in coverage of neurosurgical patients to provide appropriate coverage in connection with the Covered Services, as mutually determined by GNI and Hospital." *Per the Debtors' records, no physician assistants were actually onsite during the period from August 2, 2019 through August 27, 2019, and the Debtors did not agree that such coverage was appropriate during such time period.* |
| Physician Assistant Onboarding & Ongoing Training | $933.34 | Per the First Amendment to the GNI Agreement, GNI agreed to provide "certain mutually determined training on an ongoing basis including onboarding for the Physician Assistants." *Per the Debtors' records, no such training or onboarding was actually provided during the period from August 2,2019 through August 27, 2019, and the Debtors did not participate in any mutual determination that such services were appropriate for such time period. Moreover, the Debtors' understand that these services were actually provided pre-petition, and the invoiced amounts represent installment payments on a prepetition balance.* |

| | | |
|---|---|---|
| Medical Administrative Services by Clinical Service Chief | $13,504.00 | Appendix A to the GNI Agreement provides a list of twenty-eight (28) duties to be provided by the Clinical Services Chief, including such tasks as managing staff, monitoring neurosurgery staff behavior, recruiting/deploying/orienting neurosurgery providers and staff, providing ongoing education, and coordinating medical residency teaching. *Per the Debtors' records, no such services were provided. Each invoice contains an identical "report" setting forth services allegedly performed, which appears to have been photocopied for each invoice with only the dates changed.* |

## **OBJECTION**

### I.  GNI is Not Entitled to an Administrative Expense Claim for the Period from August 2, 2019 through August 27, 2019

18. Section 503(b)(1)(A) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including – (1)(A) the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

19. In the Administrative Claim Motion, GNI acknowledges that claims under section 503(b)(1)(A) include "'actual necessary costs and expenses' that benefit the debtor's estate both directly and indirectly." Administrative Claim Motion, at ¶ 33.

20. In this case, GNI cannot credibly show that it provided services that resulted in either a direct or indirect benefit to the Debtors' estates with respect to the GNI Agreement during the period of August 2, 2019 through August 27, 2019.

21. GNI's invoices reference services provided in four general categories – (1) on-call services; (2) on-site services; (3) physician assistant training services; and (4) administrative services by the clinical service chief. The Debtors address each below.

22. **On-Call Services**. GNI seeks allowance of an administrative expense claim of more than $17,000 per week related to on-call trauma and on-call neurosurgery services. The

Debtors did not receive any benefit from these services, in light of the fact that the Debtors had already discharged their last inpatient prior to August 2, 2019, as the Debtors expressly advised GNI on July 25, 2019. In light of the Debtors' July 25, 2019 correspondence, if GNI actually kept trauma and/or neurosurgery physicians available and on-call during this time period, it was unreasonable for GNI to have done so.

23. **On-Site Services**. GNI seeks allowance of an administrative expense claim of nearly $33,000 per week for on-site neurosurgery and physician assistant services. Any services provided on-site would necessarily require the applicable physicians and physician assistants to be physically "on-site" at Hahnemann. Because GNI's physicians and physician assistants did not actually come to Hahnemann during the period of August 2, 2019 through August 27, 2019, GNI did not actually provide these services. GNI is not entitled to an administrative expense claim for on-site services it did not actually provide.

24. **Physician Assistant Training Services**. GNI seeks allowance of an administrative expense claim of nearly $1,000 per week for physician assistant onboarding and ongoing training services. No such onboarding or training services were actually provided during the period of August 2, 2019 through August 27, 2019, such that there is no basis for allowance of an administrative expense claim. Moreover, the Debtors understand that the amounts reflected on the invoices for such training services actually relate to services provided before the Petition Date, and as such merely constitute installment payments in connection with a prepetition obligation. GNI is not entitled to an administrative expense claim for training services it did not actually provide.

25. **Administrative Services by Clinical Service Chief**. GNI seeks allowance of an administrative expense claim of approximately $13,500 per week for administrative services

purportedly provided by a clinical service chief, neurosurgery or a supplemental physician. In support of this claim, each invoice includes "time allocation worksheets," which are merely a copy of Appendix D from the GNI Agreement, and a "log" of duties allegedly provided by each of Dr. Erol Veznedaroglu, Dr. Kenneth Liebman, and Dr. Mandy J. Binning during the applicable time period. Each such log appears to be an exact duplicate of the log submitted with each other invoice. Moreover, the activities described on the log suggest that GNI physicians were providing administrative services in connection with an operational inpatient facility – despite the fact that Hahnemann had no inpatients during this time period and GNI personnel were not onsite and not performing any services. Such activities allegedly performed include, merely by way of example:

(a) Reviewing weekly reports;

(b) Ensure adherence to established protocols and comprehensive plan of care for HUH Neurosurgery patients;

(c) Oversight of staff/ancillary support;

(d) Supervision of medical directors and other neurosurgeons; and

(e) Supervision of system/patient issues.

The Debtors dispute that GNI physicians performed any of these services during the period of August 2, 2019 through August 27, 2019, and as such, GNI should not be entitled to an administrative expense claim in connection therewith.[3]

26. GNI contends that "if a debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to assume or reject the contract, the debtor is obligated to pay the 'reasonable value' of those services as an administrative

---

[3] Even assuming, *arguendo*, that GNI was somehow unaware that patient care at Hahnemann was ending and that its services were not needed in August, if the GNI physicians had performed any of the tasks outlined above they would have quickly realized that future services were not needed.

expense claim." Administrative Claim Motion, ¶ 35, citing National Labor Relations Board v. Bildisco and Bildisco, 465 U.S. 513, 531; In re Smurfit-Stone Container Corp., 425 B.R. 735, 741 (Bankr. D. Del. 2010) ("Courts in this District had consistently held that an administrative expense priority is available to contract parties where the debtor enjoys the benefits of the contract pending assumption or rejection.").

27. By the standard GNI acknowledges applies, GNI is not entitled to an administrative expense claim for the period from August 2, 2019 through August 27, 2019. The Debtors did not elect to continue to receive benefits from GNI – indeed, the Debtors expressly told GNI on July 25, 2019 that they no longer needed any services from GNI at Hahnemann. Moreover, GNI cannot plausibly establish that an administrative expense claim of more than $200,000 is the "reasonable value" of services given that: (a) GNI knew that Hahnemann had no inpatients and thus needed no on-call trauma neurosurgeons; (b) GNI did not actually provide on-site services; (c) GNI did not actually provide training or onboarding services; and (d) GNI physicians did not actually provide administrative services.

28. The Debtors did not "enjoy the benefits" of GNI's services between August 2, 2019 and August 27, 2019. Such services were not needed, as evidenced by the Debtors' July 25, 2019 email to GNI and the fact that the Debtors filed a motion to reject the GNI Agreement on August 2, 2019. GNI merely seeks to take advantage of a clerical error by the Debtors in connection with service of the Rejection Motion – but the inadvertent exclusion of GNI from a service list does not transform the services that GNI failed to provide into "actual, necessary costs and expenses" that benefitted the Debtors' estates, either directly or indirectly.

## II.   Any Post-Petition Claim of GNI Should Not Be Calculated at the Contract Rate

29.   While a contract rate is *presumed* to be the reasonable value of services provided to the estate, this presumption is rebuttable if the debtor introduces "convincing evidence to the contrary." In re Smurfit-Stone Container Corp., 425 B.R. 735, 741 (Bankr. D. Del. 2010); see also In re ID Liquidation One, LLC, 503 B.R. 392, 400 (Bankr. D. Del. 2013) (finding that objectors had presented sufficient evidence to rebut the presumption that the contract rate represented the reasonable value of services provided); In re Sportsman's Warehouse, Inc., 436 B.R. 308, 315 (Bankr. D. Del. 2009) (noting that "the debtor can submit evidence that the benefit to the estate is lower than the contract rate").

30.   In the present case, "convincing evidence" exists to demonstrate that use of the contract rate in determining any amount owed to GNI is inappropriate and unwarranted. As noted above, GNI did not actually provide on-site coverage, training services or administrative services, and the Debtors received no benefit from any on-call services, if any, actually provided. Accordingly, this Court can easily find that application of the contract rate is inappropriate in determining any amounts due to GNI for the period from August 2, 2019 through August 27, 2019.

## III.   GNI Should Not be Entitled to Interest, Costs or Legal Fees

31.   In the "wherefore" clause of the Administrative Claim Motion, GNI asks the Court for allowance of an administrative expense claim of $216,022.40 "plus interest, costs and, to the extent appropriate, legal fees." Administrative Claim Motion, at p. 13. The proposed order submitted with the Administrative Claim Motion references interest and costs only.

32.   To the extent the Court allows any administrative expense claim for GNI (which the Debtors contend it should not), such claim should not include interest, fees or costs. The

Administrative Claim Motion does not set forth any legal or factual basis for such claims, and the Debtors accordingly request that such a request be denied.

### IV. The Court Should Not Compel Immediate or Prompt Payment

33. GNI asks the Court to direct the "prompt payment" of its alleged post-petition claim for the period from August 2, 2019 through August 27, 2019. Through the proposed order submitted with the Administrative Claim Motion, GNI asks the Court to compel payment within 10 business days from the entry of the order.

34. Even if GNI is entitled to a post-petition claim, case law is clear that courts have discretion as to *when* the claim gets paid. See In re HQ Glob. Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002) (explaining that "[t]he determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court"). In Global Home Products, this Court explained that "[t]o qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay." In re Global Home Products, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006). This Court also considered the following three factors in determining an entitlement to immediate payment: (1) the prejudice to the debtors, (2) hardship to the claimant, and (3) potential detriment to other creditors. Id. at *4; see also In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D. Del. 2005) (applying three-factor test as to landlord's 503(b) claims); In re Bookbinders' Restaurant, Inc., No. 06-12302, 2006 WL 3858020, at *4 (Bankr. E.D. Pa. Dec. 28, 2006) (applying three-factor test in denying immediate payment to 503(b)(9) claimant).

35. An application of these factors to the present case weighs against compelling immediate or "prompt" payment. First, compelling the Debtors to pay GNI immediately would cause immediate and substantial harm to the Debtors' businesses, as well as other creditors and

-12-

parties in interest, since the Debtors would be required to divert funds budgeted for other critical purposes in order to pay GNI's claims.

36. Moreover, GNI acknowledges that the GNI Agreement has been rejected, and as such GNI is no longer performing any services at Hahnemann. Accordingly, this is not a situation where the Debtors are requiring GNI to continue to perform services without being paid. The Debtors acted reasonably in seeking to prevent GNI from incurring unnecessary costs – including by advising GNI that its services were no longer needed at Hahnemann more than a week before filing the Rejection Motion. As such, GNI will not be unfairly prejudiced if any allowed administrative expense claim is not required to be paid on a current basis.

37. Based on the foregoing, and in light of the fact that the hardship to the Debtors and other creditors greatly outweighs any hardships faced by GNI, the Court should exercise its discretion by denying GNI's request for prompt payment.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, based on the foregoing, the Debtors respectfully request that the Court enter the order, substantially in the form attached hereto as **Exhibit B,** denying the Administrative Claim Motion, and granting such other and further relief as is just and proper.

Dated: November 11, 2019

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Aaron S. Applebaum*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Counsel for Debtors and Debtors in Possession*