**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a<br>HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 19-11466 (KG)<br><br>Jointly Administered<br>Hearing Date: Nov. 19, 2019 at 10:00a.m.<br>Objection Deadline: Nov. 12, 2019 at 4:00p.m.<br>Re: D.I. 923 |

**LIMITED OBJECTION OF MASTER LANDLORDS TO THE MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING RETENTION AND EMPLOYMENT OF CENTURION SERVICE GROUP, LLC, AS AUCTIONEER, (II) WAIVING COMPLIANCE WITH CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2; AND (III) APPROVING SALE AND LIQUIDATION OF CERTAIN MEDICAL EQUIPMENT, FURNITURE AND INVENTORY**

PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Wood Street Garage, LLC, PAHH Feinstein MOB, LLC, and PAHH Broad Street MOB, LLC (collectively, the "Master Landlords"), by and through their counsel, DLA Piper LLP (US), object (this "Limited Objection") to the *Motion of Debtors for Order (I) Authorizing Retention and Employment of Centurion Service Group, LLC, as Auctioneer, (II) Waiving Compliance with Certain Requirements of Local Rule 2016-2; and (III) Approving Sale and Liquidation of Certain Medical Equipment, Furniture and Inventory* [D.I. 923] (the "Sale Motion"). In support of this Limited Objection, the Master Landlords respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

EAST\170139017.4

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the above-captioned cases, property of the Debtors' estates, the Sale Motion, and this Limited Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Master Landlords consent to the entry of a final judgment or order with respect to the Limited Objection if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

4. On January 11, 2018, the Debtors and certain of their non-Debtor affiliates, consummated the purchase of Hahnemann University Hospital (the "Hospital")[2] and certain related assets from Tenet Healthcare Corporation and certain of its affiliates (collectively, "Tenet") pursuant to an Asset Sale Agreement dated August 31, 2017, as amended (the "Acquisition").

5. Concurrent with the Debtors' acquisition of the Hospital, the Master Landlords in a single, integrated transaction purchased from Tenet several buildings (the "Master Lease Buildings") located on or adjacent to the Hahnemann Hospital campus. The Master Lease Buildings contain, among other uses by Debtor St. Christopher's Healthcare, LLC, as tenant (the

---

[2] PAHH Erie Street Garage, LLC purchased the Erie Street garage that is adjacent to St. Christopher's Hospital for Children. The Sale Motion presents issues relating to assets located in, on or about the Hahnemann Hospital campus only. Accordingly, this Limited Objection only refers to the assets and rights and issues pertaining to the Hahnemann Hospital campus.

2

"Master Tenant"), the master tenant of the Master Lease Buildings and its sub-tenants, an ambulatory surgical center, a cancer treatment center providing radiation therapy, office space, classroom space, parking, and other ancillary facilities that are beneficial to the operation of the Hospital and the other uses by the Master Tenant and sub-tenants.

6. Incident to the Debtors' acquisition of the Hospital and the Master Landlords' acquisition of the Master Lease Buildings, the Master Landlords, as landlord, and Master Tenant entered into Master Leases (collectively, the "Master Leases") pursuant to which the Master Tenant leased the Master Lease Buildings on an "absolute triple net" basis.  The Master Tenant is required to pay all amounts owing under the Master Leases and all occupancy costs for the premises leased under the Master Leases, including all repairs and maintenance of the Master Lease Buildings.[3]

7. Under the Master Leases, the Master Tenant is required to return the Master Lease Buildings to the Master Landlords "free of all Tenant Personal Property, and in the same level of condition and repair as on the Commencement Date…."  *See* Master Lease section 16.1, excerpt attached hereto as Exhibit A and incorporated herein.

8. The Master Landlords have been attempting to work with the Master Tenant and its Debtor affiliates and advisors on a transition plan for the transfer or closure of the Hospital and to address various sub-tenant issues.  These efforts are ongoing and are also the subject of the Master Landlords', including PAHH Erie Street Garage, LLC's, *Motion for Entry of an Order (A) Allowing Administrative Claims, and (B) Compelling Debtors (I) To Pay Postpetition Rent and Other Obligations Under Master Leases and (II) To Coordinate With Master Landlords Regarding Rejection of Master Leases and Surrender of Premises* [D.I. 878].  The Debtors remain in possession of the premises demised under the Master Leases, the Master

---

[3] The Master Leases are voluminous and may be provided upon request and subject to appropriate confidentiality agreements.

Leases have not been rejected and administrative claims in favor of the Master Landlords continue to accrue and are unpaid.

9.     As has been described previously to the Court, the Hahnemann Center City campus constitutes buildings owned by affiliates of the Debtors as well as certain of the Master Lease Buildings developed in an integrated complex of buildings that are open to each other with most of the utilities coming into the complex only at a single point.  Certain outstanding transition issues include cleaning the premises of radioactive materials and waste in accordance with applicable non-bankruptcy law, security, health and safety concerns, transition of shared services, access to and maintenance of utilities and new accounts with utility providers for utilities that enter through only Hospital buildings, vendor access as well as the resolution of various sub-tenant matters and the Debtors' plan to return the Master Lease Buildings to Master Landlord in the condition required by the Master Leases.

10.    Under the Master Leases, the Rent and Supplementary Rent are due on the first day of each month and shall be paid no later than the tenth business day of such month.  As the Court is well aware, the Debtors have not paid Rent and Supplementary Rent postpetition, approximately $4.3 million of obligations are owing to the Master Landlords postpetition through November 15, 2019.[4]

11.    On October 30, 2019, the Debtors filed the Sale Motion, requesting the authority to sell certain medical equipment, furniture and inventory (the "Auction Assets") free and clear of all liens, claims and encumbrances through the retention of Centurion Service Group, LLC ("Centurion").  According to the Sale Motion, certain Auction Assets are located in, or about certain Master Lease Buildings, specifically the main premises of Hahnemann University Hospital and related Hahnemann auxiliary buildings (the "Hahnemann Buildings").

---

[4] Including amounts owing to PAHH Erie Street Garage, LLC and including amounts estimated to complete repairs required due to Debtors' failure to repair and maintain the Master Lease Buildings.

EAST\170139017.4

12. To date, the Debtors have failed to file a closure plan as represented by the Debtors and as required by the Pennsylvania Department of Health's regulations. *See* 28 Pa. Code § 101.196. In fact, on November 1, 2019, the Pennsylvania Secretary of Health wrote a letter to this Court indicating that although some progress has been made toward closure, there is still significant work to be done: "There are still medical records and personnel, billing, and financial files in the building; there are still highly flammable chemicals that must be disposed of or removed; there are a significant number of medical supplies remaining; the laboratory is full of equipment and supplies; and nuclear medicine, imaging, and radiology equipment are still on-site." *See Letter from Richard A. Barkasy to the Honorable Kevin Gross enclosing letter from the Commonwealth of Pennsylvania Secretary of Health regarding Hahnemann hospital* [D.I. 945]. The Secretary of Health noted that the Pennsylvania Department of Health is "deeply concerned about the state and security of the building and the supplies and equipment it is housing." *Id.*

13. At this point, it is entirely possible that following the sale of the Auction Assets that the Debtors will vacate the premises without removal and remediation of radioactive materials in accordance with applicable non-bankruptcy law, or to restore the Master Lease Buildings to the condition that existed at the time the Debtors took possession of the Master Lease Building as required by section 16.1 of the Master Leases, which will cause the Master Landlords to incur substantial expenses that the Debtors likely will not pay. Indeed, as a direct result of the Debtors negligent maintenance of the Master Lease Buildings, the physical plant has materially deteriorated during the Master Tenant's occupancy, including following the commencement of the Debtors' bankruptcy cases.

5

14.     Accordingly, the Master Landlords are demanding that the Court condition the Debtors' sale of the Auction Assets from the Master Lease Buildings on providing the Master Landlords adequate protection of their interests and rights.  11 U.S.C. § 363(e).

## **LIMITED OBJECTION**

15.     Pursuant to 11 U.S.C. § 363(b), after notice and a hearing, the Debtors "may use, sell, or lease, other than in the ordinary course of business, property of the estate."  However, "section 363 itself provides for a mechanism to protect the rights of parties whose interests may be adversely affected by the sale of estate property."  *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 547 (7th Cir. 2003).

16.     Under 11 U.S.C. § 363(e), a landlord is entitled to adequate protection of its interests:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

*In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001).  Interested parties "have the right to seek protection under section 363(e), and upon request, the bankruptcy court is obligated to ensure that their interests are adequately protected."  *Precision Indus., Inc.*, 327 F.3d at 548.  The Court "must determine whether the landlord's interests are protected as nearly as possible against possible risks to that interest."  *In re P.J. Clarke's Rest. Corp.*, 265 B.R. at 404 (citation omitted).

17.     As of the time of this filing, the Debtors have repeatedly refused to communicate what Auction Assets are located in, on or about the Master Lease Buildings, how and when they intend to remove medical equipment and materials, including the radioactive material used in the radiation treatment center, in order to comply with the turnback requirements in section 16.1 of

the Master Leases or when they will pay the Rent and Supplementary Rent and make the necessary repairs to the Master Lease Buildings required by the Master Leases. In the likely event that the Debtors fail to properly dispose of the radioactive and dangerous property, or worse yet abandon such hazardous materials, the Master Landlords will be substantially harmed and exposed for which the Master Landlords are entitled to adequate protection.

18. Moreover, the Debtors have shown repeatedly that they do not intend to comply with their postpetition obligations. The Debtors have a daily obligation to maintain and a daily obligation to repair responsibly the Master Lease Buildings. The Debtors failed to abide by this requirement prepetition and have continued to shirk their responsibilities postpetition. The Debtors' failures are numerous and have resulted in at least one postpetition mechanic's lien against the Master Lease Buildings. *See Limited Objection and Reservation of Rights of the Non-Debtor Lessors to Debtors' Motion for an Order Extending the Deadline for the Debtors to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4)* [D.I. 876, ¶ 9] (listing various mechanics' liens that have been filed against the Debtors' leased properties and attaching as exhibits the filed mechanics' lien notices).

19. Furthermore, the Debtors have allowed the elevators and sprinkler/fire suppression systems at certain Master Lease Buildings to fall into disrepair, requiring significant and likely expensive repairs in order to return the elevators and sprinkler/fire suppression systems to fully functioning service. The Master Landlords have been informed that certain fire safety equipment at the Wood Street garage is in disrepair and the Debtors have permitted the garage not to be protected by security and the lights not to be replaced resulting in dangerous conditions. To the Master Landlords' knowledge, the Debtors have not yet obtained quotes to repair, let alone commenced or completed such repairs in a responsible manner. The Debtors' inability or refusal to commence and complete such repairs may put lives at risk and certainly

7

devalues the Master Lease Buildings for which the Master Landlords are entitled to adequate protection.

20. Because the Sale Motion seeks approval to sell Auction Assets located in, on or about the Master Lease Buildings, the Master Leases are implicated and the Auction Assets cannot be removed without oversight and approval by the Master Landlords. While the Master Landlords do not intend to disrupt the Debtors' efforts to conduct the proposed auction, the Master Landlords must ensure that their interests under the Master Leases are adequately protected.

21. In order to adequately protect the Master Landlords' property and the bankruptcy estate, any sale of the Auction Assets authorized by this Court must be conditioned on the Debtors' compliance with section 16.1 of the Master Leases. As detailed above, the Master Leases require that the Debtors return the Master Lease Buildings to the Master Landlords "free of all Tenant Personal Property, and in the same level of condition and repair as on the Commencement Date…and Tenant shall remove or demolish all of the Fixtures and Related Personal Property, structures and other improvements[.]" *See* Exhibit A. The right to sell (in-place) and remove (subject to appropriate insurance and repairs to the premises) the Auction Assets from the Master Landlords' premises must be regulated by the requirements set forth in the Master Leases and other applicable law, including the current payment of all Rent and Supplementary Rent now due and to become due until the effective date of the Debtors' rejection of the Master Leases, following the last to occur of removal of the Debtors' assets and hazardous substances, vacating the premises by all occupants, and restoration of the Master Lease Buildings as required by section 16.1 of the Master Leases.

22. Removing the Auction Assets from the Master Lease Buildings will require the removal (and subsequent repair/restoration) of certain ceilings, windows or walls. As such, any

8

sale must provide certain protections for the Master Landlords in order to ensure that the Master Landlords' property is not damaged, and if necessary to do so, then restored to the Master Landlords' satisfaction. In order to ensure compliance with the Master Leases' turnback provisions and applicable non-bankruptcy law, the Master Landlords request that the Debtors be required, at the Debtors' expense, to abide by the following conditions:

a. The Debtors will provide for appropriate insurance for Master Landlords, their lender, Capital One, N.A., and the Hahnemann Buildings (reasonably acceptable to the Master Landlords) and will provide for any necessary repairs or restoration to the Master Landlords' Master Lease Buildings to be made immediately upon removal of the Auction Assets by the Debtors (through Centurion or otherwise).

b. The means and methods to be used to move or remove the Auction Assets, together with the planned passage through the premises is subject to and must be accompanied by a cash security deposit to assure compliance with means and methods and approved by the Master Landlords in advance of any access or work.

c. The Debtors shall be responsible for obtaining and complying with all permits, licenses and inspections with respect to such work. The Debtors have and shall bear all, and the Master Landlords shall have no, responsibility for any Auction Assets or other property of the Debtors, including any security, situated in, on or about, or moved through any of the Master Landlord premises.

d. Removal work shall not commence or be deemed complete until paid for in full by the Debtors or their assigns or designees and no removal work shall be deemed complete until a full and final Release of Liens is provided to the Master Landlords with respect to all contractors and suppliers providing materials or work performed on and off site relating to the removal of any Auction Assets.

e. The Debtors and each of the Debtors contractors and suppliers hired to complete the removal shall indemnify the Master Landlords and their lender, Capital One, N.A.

f. In order to complete the removal process, the Debtors will be required to:
   i. remove all radioactive waste from the Center City campus, and shall provide to the Master Landlords a satisfactory Certificate of Clearance by a Radiological Contractor satisfactory to the Master Landlords;
   ii. repair the Wood Street garage elevators and lights;
   iii. replace the Bobst elevator cables; and
   iv. repair and restored the fire safety and sprinkler systems to full dry pipe functionality.

23.     Furthermore, if the Debtors are allowed to liquidate the Auction Assets without payment of Rent or Supplementary Rent, the Master Landlords should be granted a section 507(b) Super-priority Allowed Administrative Expense Claim for their Rent and Supplementary Rent due and to become due.  The Master Landlords should be granted a lien on the Auction Assets and the proceeds thereof, subject only to the lien of MidCap Funding IV Trust, to secure the timely and full payment of such Super-priority Allowed Administrative Expense Claim, which lien should be granted and automatically perfected by the Order granting the Sale Motion subject to sustaining this Limited Objection and granting to the Master Landlords the requested adequate protection.

## **RESERVATION OF RIGHTS**

24.     The Master Landlords reserve the right to amend and/or supplement this Limited Objection and to assert any other rights and objections and seek remedies under and relating to the Master Leases and any other transactional documents to which any Debtor or Debtor affiliate is a party under the Bankruptcy Code or other applicable law, including, without limitation, the rights to raise additional arguments or objections concerning the relief requested in the Sale Motion, and to interpose amended or further objections at a later date as may be warranted by the attendant facts and circumstances.

## **NOTICE**

25.     Notice of the filing of this Limited Objection to has been given to: (a) the United States Trustee, (b) the Debtors and counsel to the Debtors, and (c) counsel to the Committee. The Master Landlords respectfully submit that no other or further notice of this Limited Objection is required.

WHEREFORE, the Master Landlords respectfully request that the Court (A) sustain its limited objection; (B) enter an order conditioning the sale of the Auction Assets on the Debtors' compliance with section 16.1 of the Master Leases and granting adequate protection in the forms and conditions listed herein; and (C) grant such other and further relief as this Court deems just and proper.

Dated: November 12, 2019

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ Stuart M. Brown
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@us.dlapiper.com

-and-

Richard A. Chesley (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: Richard.Chesley@us.dlapiper.com

*Counsel to the Master Landlords*