## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (KG) |
|  | Jointly Administered |
| Debtors. | **Related to Docket No. 878** |

### DEBTORS' OBJECTION TO MOTION OF MASTER LANDLORDS FOR ENTRY OF AN ORDER (A) ALLOWING ADMINISTRATIVE CLAIMS, AND (B) COMPELLING DEBTORS (I) TO PAY POSTPETITION RENT AND OTHER OBLIGATIONS UNDER MASTER LEASES AND (II) TO COORDINATE WITH MASTER LANDLORDS <u>REGARDING REJECTION OF MASTER LEASES AND SURRENDER OF PREMISES</u>

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") submit this objection (the "**Objection**") to the *Motion of Master Landlords for Entry of an Order (A) Allowing Administrative Claims, and (B) Compelling Debtors (I) to Pay Postpetition Rent and Other Obligations Under Master Leases and (II) to Coordinate with Master Landlords Regarding Rejection of Master Leases and Surrender of Premises* [D.I. 878] (the "**Administrative Claim Motion**"), filed by HSRE-PAHH I, LLC, PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Wood Street Garage, LLC, PAHH Feinstein MOB, LLC, PAHH Erie Street Garage, LLC, and PAHH Broad Street

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

MOB, LLC (collectively, the "**Master Landlords**").  In support of their Objection, the Debtors and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.     Through the Administrative Claim Motion, the Master Landlords seek allowance and payment of significant administrative expense claims in connection with certain of the Debtors' nonresidential real estate leases, all but one of which relate to the Debtors' operations at Hahnemann University Hospital ("**Hahnemann**").

2.     While the Debtors do not contest the Master Landlords' entitlement to allowance of certain amounts as administrative expenses pursuant to the Administrative Claim Motion, many of the amounts sought by the Master Landlords are not entitled to administrative priority status, either because such amounts are not valid obligations under the parties' leases (defined below as the "**Master Leases**"), because such obligations arose prepetition, or because such obligations do not correspond to any benefit to the Debtors' estates.

3.     The Master Landlords accordingly should be allowed administrative expense claims in significantly reduced amounts than those sought.  Whatever amount is allowed should not be payable immediately.  Rather, the payment of any allowed administrative claim should be deferred until after closing on the Debtors' pending sale of the assets of St. Christopher's Hospital for Children, LLC, and pursuant to a plan, when the Debtors anticipate that they will have the sufficient funding for payment, or pursuant to further order of the Court.

**FACTUAL BACKGROUND**

4.     The Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 30 and July 1, 2019 (collectively, the "**Petition Date**").

5.      Since filing their petitions for relief, the Debtors have served as debtors-in-possession and have operated the Debtors' business pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

A.      **The HSRE Buildings**

6.      An understanding of the Administrative Claim Motion requires an understanding of Hahnemann's physical layout.

7.      ***North Tower, South Tower, Feinstein, Bobst and New College Buildings***. Hahnemann's core campus in Center City, Philadelphia includes the buildings in the square block bounded by Broad Street and 15th Street (to the east and west) and between Race Street and Vine Street (to the south and north).  In addition to what are often called the "North Tower" and "South Tower" (which are building CCH leases from entities other than the Master Landlords), the buildings within this square block include the "Feinstein," "Bobst" and "New College" buildings.

8.      St. Christopher's Healthcare, LLC ("**SCHC**"), one of the Debtors herein, leases these buildings through Master Leases from PAHH Feinstein MOB, LLC (the lessor of the Feinstein Building and the Bobst Building) and PAHH New College MOB, LLC (the lessor of the New College Building).

9.      The North Tower and South Tower, on one hand, and the Feinstein, Bobst and New College buildings, on the other hand, are physically connected, and have no clear lines of demarcation; a visitor cannot easily determine when he/she leaves one building and enters another.  The buildings also share many essential systems, such as steam, electricity and water, and the Debtors historically have used portions of the Feinstein, Bobst and/or New College Buildings for key functions, such as the storage of supplies, equipment, medical records,

-3-

computer systems or equipment, and the like.  Hahnemann's radiology department, for example, is and has been located in an HSRE Building.  The shared and interconnected nature of these properties pre-dates the Debtors' January 2018 acquisition of Hahnemann, when all of the Hahnemann campus, including the HSRE Buildings and the North and South Towers, had one direct or indirect owner (Tenet Business Services Corporation).  As part of the 2018 acquisition, ownership of the subject properties was divvied up among multiple entities – non-debtor entities owned and/or controlled by Joel Freedman and the Master Landlords – although the physical configuration and interconnected nature of the campus was not changed.

10.     An overhead photo of Hahnemann's Center City campus is attached hereto as **Exhibit A**.

11.     ***Bellet Building and 231 North Broad***.  SCHC also leases two nearby buildings (outside the above-mentioned square block) known generally as the "**Bellet Building**" and "**231 North Broad Street."**  SCHC leases these buildings (again, through Master Leases) from non-debtor entities PAHH Bellet MOB, LLC (the lessor of the Bellet Building) and PAHH Broad Street MOB, LLC (the lessor of 231 North Broad Street).

12.     ***Parking Garages***.  SCHC also leases a nearby parking garage, referred to as the "Wood Street Garage", from PAHH Wood Street Garage, LLC.  The Wood Street Garage is in close physical proximity to the Hahnemann's Center City campus.

13.     Finally, SCHC leases a parking garage, referred to as the "Erie Street Garage", from PAHH Erie Street Garage, LLC.  The Erie Street Garage is adjacent to SCHC.

14.     ***Definitions***.  The Feinstein, Bobst, New College and Bellet Buildings, 231 North Broad Street, the Wood Street Garage and the Erie Street Garage are collectively referred to herein as the "**HSRE Buildings.**"  The Wood Street Garage and the Erie Street Garage are

collectively referred to as the "**Parking Garages**." The above-referenced master lessors – PAHH Feinstein MOB, LLC, PAHH New College MOB, LLC, PAHH Feinstein MOB, LLC, PAHH New College MOB, LLC, PAHH Wood Street Garage, LLC and PAHH Erie Street Garage, LLC – are collectively referred to herein as the "**Master Landlords.**" The leases from the Master Landlords to SCHC are collectively referred to herein as the "**Master Leases**".

15.    *__The Master Landlords__*.    The Master Landlords are owned by HSRE-PAHH I, LLC ("**HSRE-PAHH**"). Upon information and belief, the Master Landlords are affiliated with Harrison Street Real Estate Capital, a private real estate investment management firm. Philadelphia Academic Health Holdings, LLC ("**PAHH**"), a non-debtor that is indirectly owned and/or controlled by Joel Freedman, owns a portion of HSRE-PAHH. Specifically, PAHH owns 10% of the Class A Units of HRSE-PAHH and 100% of its Class B Units. PAHH is also a guarantor of the Master Leases, along with Paladin Healthcare Capital, LLC, an entity owned and/or controlled by Mr. Freedman

**B.    The Subleases and Sub-Subleases**

16.    SCHC, which as noted above is the lessee with respect to the HSRE Buildings and is the party legally obligated under the applicable leases, does not actually use or occupy any of the HSRE Buildings, other than the Parking Garages. Instead, it sub-leases most of these buildings to other parties – primarily Drexel University College of Medicine ("**DUCOM**") and in certain instances other Debtors.

17.    Significantly, the rent received by the Debtors with respect to the DUCOM and other subleases is materially less than the total cost to SCHC under the Master Leases. Moreover, SCHC's subleases to DUCOM are "gross" (not "net") leases; SCHC is required to pay substantially all operating costs with respect to the leased space, for things such as utilities,

HVAC service, security, maintenance, snow, trash and garbage removal, janitorial service, without reimbursement or contribution from DUCOM.

**C.    Procedural History**

18.    On August 30, 2019, the Debtors filed their *Fifth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Unexpired Real Estate Leases* (the "**Rejection Motion**") [D.I. 620].

19.    Through the Rejection Motion, the Debtors sought to reject all of the Master Leases, other than the lease with PAHH Erie Street Garage, LLC, as well as all subleases and sub-subleases related to the HSRE Buildings to which one or more of the Debtors is a party.

20.    The Master Landlords filed a limited objection to the Rejection Motion on September 13, 2019 [D.I. 719].  The hearing on the Rejection Motion has been continued while the parties attempt to coordinate the rejection of the Master Leases and the surrender of the HSRE Buildings.

21.    On October 18, 2019, the Master Landlords filed the Administrative Claim Motion, seeking entry of an order (a) allowing administrative expense claims, (b) compelling the Debtors to pay postpetition rent and other amounts allegedly due under the Master Leases, and (c) compelling the Debtors to coordinate with the Master Landlords regarding rejection of the Master Leases and surrender of the HSRE Buildings.

**THE ASSERTED ADMINISTRATIVE CLAIM**

22.    Through the Administrative Claim Motion, HSRE seeks allowance of an administrative expense claim in an amount not less than $3.25 million for "postpetition rent and other postpetition obligations under the Master Leases" and immediate payment of all "postpetition Rent and Supplementary Rent due under the Master Leases."

23.     The Administrative Claim Motion does not identify a specific dollar amount allegedly owed by the Debtors under the Master Leases since the Petition Date, nor does it include a breakdown of the alleged "$3.25 million" amount.  However, based on discussions with HSRE, the Debtors understand that HSRE's asserted administrative expense claim exceeds $4.2 million and is based upon the following general categories: (a) rent; (b) so-called "Lease Rollover Reserve" payment obligations; (c) real estate taxes; (d) operating expenses and fees; (e) amounts owing to mechanics, materialmen, and other vendors; and (f) other amounts generally asserted by HSRE related to maintenance of the HSRE Buildings.

## **OBJECTION**

### A.     **Legal Standards**

24.     Section 503(b)(1)(A) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including – (1)(A) the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

25.     Additionally, section 365(d)(3) of the Bankruptcy Code provides that "the trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising ***from and after the order for relief under any unexpired lease of nonresidential real property,*** until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3) (emphasis added).

26.     The Third Circuit Court of Appeals has made clear that section 365(d)(3) requires a debtor-in-possession to perform obligations under an unexpired lease "as they become due under the terms of the lease."  In re Montgomery Ward Holding Corp., 268 F.3d 205, 209 (3d. Cir. 2001).  Accordingly, the test under section 365(d)(3) is whether amounts "first become due and enforceable after the order [for relief] under the terms of the lease." Id.  Alternatively stated,

"an obligation arises under a lease for the purposes of § 365(d)(3) when the legally enforceable duty to perform arises under that lease."  Id. at 211, citing In re Koenig Sporting Goods, Inc., 203 F.3d 986 (6th Cir. 2000).

27.     While section 365(d)(3) requires a debtor-in-possession to "timely perform" all the obligations of the debtor under an unexpired lease of nonresidential real property, the section does not provide any remedy for the lessor if the debtor-lessee fails to comply with its performance obligation.  In DBSI, Inc., 407 B.R. 159 (Bankr. D. Del. 2009), the Bankruptcy Court ruled that the appropriate remedy for a debtor's failure to timely pay such obligations is to compel the timely rejection of the lease – relief that the Debtors already have requested here – rather than immediate payment.  In re DBSI, Inc., 407 B.R. at 164 (holding that "§ 365(d)(3) should not be read to provide for an administrative claim as a potential penalty" but that "an appropriate remedy for a violation of § 365(d)(3) is to cause the lease to be rejected in a timely fashioned matter").  See also In re Southwest Aircraft Servs., 831 F.2d 848, 854 (9th Cir. 1987), cert denied, 487 U.S. 1206 (1988); In re Mr. Gatti's, Inc., 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994).

28.     In DBSI, Judge Walsh expressly held that he "agree[d] with those courts that do not automatically allow an administrative claim as the penalty for violation of § 365(d)(3)." After holding that the remedy for non-compliance with section 365(d)(3) is timely rejection of the lease, Judge Walsh analyzed whether and to what extent the landlord was entitled to an administrative expense claim pursuant to section 503(b)(1).  DBSI, 407 B.R. at 165-66.

29.     To the extent Master Landlords are entitled to an allowed administrative expense claim under section 503(b)(1), courts have discretion as to when the claim gets paid.  See In re HQ Glob. Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002) (explaining that "[t]he

determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court"). In <u>Global Home Products</u>, this Court explained that "[t]o qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay." <u>In re Global Home Products</u>, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006). This Court also considered the following three factors in determining an entitlement to immediate payment: (1) the prejudice to the debtors, (2) hardship to the claimant, and (3) potential detriment to other creditors. <u>Id.</u> at *4; <u>see also</u> <u>In re Garden Ridge Corp.</u>, 323 B.R. 136, 143 (Bankr. D. Del. 2005) (applying three-factor test as to landlord's 503(b) claims); <u>In re Bookbinders' Restaurant, Inc.</u>, No. 06-12302, 2006 WL 3858020, at *4 (Bankr. E.D. Pa. Dec. 28, 2006) (applying three-factor test in denying immediate payment to 503(b)(9) claimant).

**B.     HSRE is Not Entitled to Its Asserted Allowed Administrative Expense Claims**

30.     For the reasons set forth herein, substantial portions of the amounts asserted by HSRE are not entitled to allowance or payment under sections 365(d)(3) or 503(b)(1)(A) of the Bankruptcy Code.

31.     **Mechanics Lien**. The Debtors understand that HSRE's asserted administrative claim includes $252,000 related to a mechanics' lien assessed against one of the HSRE Buildings. From the Debtors' review of the documentation provided by HSRE regarding the alleged mechanic's lien, it appears that all services performed by the applicable vendor were completed prior to the Petition Date – specifically, on or before June 25, 2019. To the extent the obligations underlying any mechanic's lien arose prior to the Petition Date, the Debtors' obligation to discharge it under the Master Leases likewise arose prior to the Petition Date (<u>see</u> <u>Master Leases</u>, § 5.5(e) ("The cost of all Work . . . shall be paid promptly so that the Premises . . . shall at all times be free from . . . liens for labor or materials supplied or claims to have been

-9-

supplied to the Premises or Tenant . . ."), such that the obligation does not satisfy the standard set forth by the Third Circuit in <u>Montgomery Ward</u>, discussed above.

32.     In light of the Debtors' requested rejection of the Master Leases, the Debtors' obligation to discharge any mechanic's lien should be considered pursuant to section 503(b)(1) of the Bankruptcy Code.  <u>See</u> <u>generally</u>, <u>DBSI</u>, <u>supra</u>.  Because discharging such lien would provide no benefit to the Debtors' bankruptcy estates, HSRE should not receive an administrative expense claim for this amount.

33.     **Tenant Maintenance**.  The Debtors understand that HSRE seeks over $1.0 million for alleged "tenant maintenance" obligations.  The Debtors have been told that this amount includes approximately $283,600 for winterization costs for one or more of the HSRE Buildings, $160,000 for elevator repairs in the Bobst Building, $255,000 for elevator repairs for the Wood Street Garage, and $310,000 for fire system repairs of the sprinkler system in the Wood Street Garage.

34.     Upon information and belief, some or all of the maintenance issues identified by HSRE existed prepetition, such that any obligation of the Debtors to remedy them arose *before* the Petition Date.  The Master Landlords acknowledge as much.  <u>See</u> *Limited Objection of Master Landlords to the Motion of Debtors for Order (I) Authorizing Retention and Employment of Centurion Service Group, LLC, as Auctioneer, (II) Waiving Compliance with Certain Requirements of Local Rule 2016-2; and (III) Approving Sale and Liquidation of Certain Medical Equipment, Furniture and Inventory*, filed November 12, 2019 [D.I. 980], at ¶ 18 ("The Debtors have a daily obligation to maintain and a daily obligation to repair responsibly the Master Lease Buildings.  The Debtors failed to abide by this requirement prepetition . . .").

36191558.5 11/12/2019

Under these circumstances, these obligations cannot properly give rise to an administrative expense claim under the legal standards set forth in <u>Montgomery Ward</u>, as discussed above.

35.    The Debtors' understanding regarding the condition of the HSRE Buildings is consistent with Section 26.1 of the Master Leases, which require the Master Landlords to make available a ***$22.5 million*** "Tenant Improvement Reserve" for the "cost of certain immediate capital expenditure requirements for the Work that is either identified on Schedule 26.1 [of the Master Leases] or, if not identified on Schedule 26.1, [as] agreed by Landlord, the other Master Landlords and Tenant within 120 days after the [execution of the Master Leases]". <u>Master Leases</u>, at § 26.1.  The Debtors do not have a copy of Schedule 26.1 of the Master Leases.  They have requested the Schedule from the Master Landlords, who have informed them that it was never agreed to.  Whatever the circumstances, the sheer size of the Tenant Improvement Reserve suggests that the HSRE Buildings had a significant need for capital improvement at the time the Master Leases were executed.  To the extent any such maintenance issues existed as of the Petition Date, the Debtors' obligation to provide a remedy likewise arose prior to the Petition Date, and is thus not allowable or payable under section 365(d)(3) of the Bankruptcy Code.

36.    Moreover, in light of the pending rejection of the Master Leases, the Debtors' obligation to pay these alleged maintenance costs must also be evaluated pursuant to section 503(b)(1) of the Bankruptcy Code and accordingly should not be allowed as administrative expense claims.  The maintenance costs asserted by the Master Landlords all relate to future protection and preservation of the HSRE Buildings that, by definition, provides no benefit to the Debtors or their estates.

37.    **<u>Operating Expenses and Fees</u>**.  Section 12.12 of each Master Lease provides as follows:

Tenant shall pay to Landlord all ***reasonable costs and expenses***, including, without limitation, reasonable attorneys' fees and disbursements, ***incurred by Landlord in any action or proceeding to which Landlord may be made a party by reason of any act or omission of Tenant***.  Tenant shall also pay to Landlord all reasonable costs and expenses including, without limitation, actual, customary and reasonable attorneys' fees and disbursements, ***incurred by Landlord in enforcing any of the covenants and provisions of this Lease and incurred in any action brought by Tenant on account of the provisions hereof***, and all such reasonable costs, expenses and attorneys' fees and disbursements may be included in and form a part of any judgment entered in any proceeding brought by Landlord against Tenant on or under this Lease. All of the sums paid or obligations incurred by Landlord as aforesaid, with interest and costs, shall be paid by Tenant to Landlord on demand.

38.     Based on discussions with HSRE to date, the Debtors understand that HSRE includes within this category an amount equal to $100,000 per applicable debtor entity, to FTI Consulting (or an affiliate) for a "consulting fee".  The Debtors dispute that any such consulting fees are compensable under the Master Leases, and as such are not payable as administrative expenses under sections 365(d)(3) or 503(b)(1)(A) of the Bankruptcy Code.  Upon information and belief, the Master Landlords' claimed consulting fees were not "incurred . . . in any action or proceeding to which Landlord [has been] made a party by reason of any act or omission of [SCHC]," nor were such consulting fees "incurred by the [Master] Landlords in enforcing any of the covenants and provisions of [the Master Leases] in any action brought by [SCHC] on account of the provisions [of the Master Leases]."  <u>Master Leases</u> § 12.12.

39.     That is, upon information and belief, the Master Landlords have retained FTI Consulting to assist them in matters well beyond the scope of the provision cited above, and relate instead to services provided in connection with the Master Landlord's negotiations with one or more of the guarantors of the Master Leases and/or a receivership action brought by the Master Landlords against PAHH, in the Philadelphia Court of Common Pleas, Civ. Action No. 4677 (August term, 2019).

36191558.5 11/12/2019

40.     Even if consulting fees are payable, the Debtors dispute that the amounts sought by HSRE are reasonable, as expressly required under the Master Leases.

41.     **Lease Rollover Reserve**.  Section 26.4 of each Master Lease generally  provides that HSRE shall fund an amount up to $2.4 million and that the Debtors will deposit "two hundred thousand dollars ($200,000) per month, as allocated among the Master Leases into a reserve account (the "**Lease Rollover Reserve**") beginning in the seventh (7th) month of the second (2nd) Lease Year."  Any obligation of the Debtors to begin making payments into the Lease Rollover Reserve commenced in August 2019.

42.     Section 26.4 of each Master Lease provides that funds in the Lease Rollover Reserve "shall be utilized for tenant improvements and leasing commissions, if any (the "**DUCOM Leasing Costs**"), that may be required under a DUCOM Extension."

43.     The Debtors understand that HSRE seeks at least $700,000 related to the Lease Rollover Reserve.  The Debtors dispute that these amounts are payable as administrative expenses under sections 365(d)(3) or 503(b)(1)(A) of the Bankruptcy Code.  Any "tenant improvements" or "leasing commissions" would serve only to provide a benefit to the Master Landlords by way of future protection and preservation of the HSRE Buildings, and as such confers no benefit on the Debtors or their estates.

C.     **The Court Should Not Compel Immediate or Prompt Payment**

44.     HSRE asks the Court to direct the payment of all Rent and Supplementary Rent within three (3) business days of entry of an order with respect to the Administrative Claim Motion.

45.    The Debtors submit that this request should be denied.    As noted above, the remedy for a failure to comply with section 365(d)(3) is the timely rejection of the subject lease – not immediate payment of an administrative expense claim.  <u>See</u>, <u>e.g.</u>, <u>DBSI</u>, <u>supra</u>.

46.    An application of the <u>Global Home Products</u> standards – which govern the timing of payment of an administrative expense claim – to the present case weighs against compelling immediate payment.  First, compelling the Debtors to pay Master Landlords immediately would cause immediate and substantial harm to the Debtors' businesses, as well as other creditors and parties in interest, since the Debtors would be required to divert funds budgeted for other critical purposes in order to pay Master Landlords' claims.

47.    As noted above, the Debtors have already sought, and continue to seek, the rejection of the Master Leases.  The Debtors recognize that there are transition and related issues that need to be addressed in connection with rejection of the Master Leases, in light of the interconnectedness of the HSRE Buildings with the other buildings that comprise the Hahnemann main campus that are not owned by HSRE, and given the Debtors' closure of Hahnemann pursuant to applicable non-bankruptcy law.   While resolving these issues has delayed rejection, the Debtors nonetheless remain committed to a prompt rejection of the Master Leases and contend that such rejection is the appropriate remedy for any failure to comply with the Debtors' performance obligations under the Master Leases pursuant to section 365(d)(3) of the Bankruptcy Code.   To the extent the Master Landlords are entitled to an allowed administrative claim, such claim should be paid after closing on the Debtors' pending sale of the assets of SCHC, and pursuant to a confirmed plan of reorganization in these cases, when the Debtors anticipate that they will have sufficient funds to pay the Master Landlords' administrative claim.

48.     Based on the foregoing the Court should exercise its discretion by denying HSRE's request for immediate payment.

**WHEREFORE**, based on the foregoing, the Debtors respectfully request that the Court enter the order, substantially in the form attached hereto as **Exhibit B**, and grant such other and further relief as is just and proper.

Dated: November 12, 2019           **SAUL EWING ARNSTEIN & LEHR LLP**

By:    */s/ Aaron S. Applebaum*
       Mark Minuti (DE Bar No. 2659)
       Monique B. DiSabatino (DE Bar No. 6027)
       1201 N. Market Street, Suite 2300
       P.O. Box 1266
       Wilmington, DE  19899
       Telephone: (302) 421-6800
       Fax: (302) 421-5873
       mark.minuti@saul.com
       monique.disabatino@saul.com

           -and-

       Jeffrey C. Hampton
       Adam H. Isenberg
       Aaron S. Applebaum (DE Bar No. 5587)
       Centre Square West
       1500 Market Street, 38th Floor
       Philadelphia, PA 19102
       Telephone: (215) 972-7700
       Fax: (215) 972-7725
       jeffrey.hampton@saul.com
       adam.isenberg@saul.com
       aaron.applebaum@saul.com

       *Counsel for Debtors and Debtors in Possession*

36191558.5 11/12/2019