# **EXHIBIT B**

**(Declaration of Allen Wilen in Support of Motion of the Debtors for Entry of an Order Approving Settlement Term Sheet between the Debtors, Tenet Business Services Corporation, Conifer Revenue Cycle Solutions, LLC and the Official Committee of Unsecured Creditors)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| CENTER CITY HEALTHCARE, LLC, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| Debtors. | ) Jointly Administered |

**DECLARATION OF ALLEN WILEN IN SUPPORT OF THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING SETTLEMENT TERM SHEET BETWEEN THE DEBTORS, TENET BUSINESS SERVICES CORPORATION, CONIFER REVENUE CYCLE SOLUTIONS, LLC AND THE OFFICIAL COMMITTTEE OF UNSECURED CREDITORS**

I, Allen Wilen, hereby declare the following, under the penalty of perjury:

1. I am the Chief Restructuring Officer ("**CRO**") of Center City Healthcare, LLC and certain of its subsidiaries and affiliates, each a debtor and debtor-in-possession (each, individually, a "**Debtor**" and, collectively, the "**Debtors**") in the above-captioned chapter 11 cases.

2. I have served as CRO for the Debtors since April 8, 2019. In such capacity, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I am above 18 years of age, and I am competent to testify.

3. I am duly authorized to make and submit this declaration on behalf of the Debtors in support of the *Motion of the Debtors for Entry of an Order Approving Settlement Term Sheet*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

*between the Debtors, Tenet Business Services Corporation, Conifer Revenue Cycle Solutions, LLC and the Official Committee of Unsecured Creditors* (the "**Motion**"),[2] filed contemporaneously herewith.

4. I read and authorized the filing of the Motion. The facts set forth in the Motion are true and correct to the best of my knowledge, information and belief.

## I. The Chapter 11 Cases and the STC Sale

5. The Debtors filed these bankruptcy cases with two primary goals: first, to safely and effectively shut down HUH, and second, to either reorganize or sell the operating assets of STC so that STC would continue as a going concern.

6. Soon after the Petition Date, it became clear that the Debtors lacked the liquidity and ability to reorganize STC. As such, the Debtors turned their attention to selling the STC operating assets pursuant to, *inter alia*, sections 363 and 365 of the Bankruptcy Code.

7. By order dated September 27, 2019 [D.I. 795], the Court approved the sale of substantially all of STC's operating assets to STC Opco, LLC (the "**Buyer**"), a special purpose entity created by Tower Health and Drexel University. The Debtors and the Buyer are working cooperatively toward a closing of that transaction, which is anticipated to occur on or about December 15, 2019.

8. Throughout these Chapter 11 Cases, the Debtors' liquidity has been extremely tight. The Debtors have managed, and will continue to manage, their cash to operate STC in the ordinary course so that the sale transaction can close and the good work of the hospital can continue in the hands of new ownership. While there have certainly been a number of challenges, including these liquidity challenges, to the Debtors' ability to make it to a closing of

---

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

2

the STC sale, there was no greater challenge than that posed by the Debtors' disputes and differences with the Tenet Parties.

## II.   The Debtors' Disputes with the Tenet Parties

9. The Debtors' businesses and assets were purchased in January of 2018 from Tenet and its affiliates pursuant to the ASA. At the time of the Acquisition, Debtor PAHS and Tenet entered into the TSA, pursuant to which Tenet agreed to provide to the Debtors almost all IT services needed to operate the Debtors' businesses. PAHS also entered into the MSA with Conifer, pursuant to which Conifer agreed to provide all revenue cycle (i.e. billing and collecting) services for the Debtors.

10. Immediately upon or shortly after the Acquisition, as detailed in the Motion, the Debtors' financial performance was adversely affected by a number of disputes with the Tenet Parties as well as certain operational challenges arising in connection with the services provided. In turn, the Tenet Parties asserted that the Debtors breached the TSA and MSA by failing to pay amounts due to them under the agreements in an amount collectively in excess of $57 million.

11. While the Debtors would have preferred to transition services away from the Tenet Parties and were working to do just that prior to the Petition Date, the remaining cost to transition such services was significant and an effective transition of such services was estimated to take up to an additional four months. Simply stated, the Debtors ran out of time and money to effectuate any such transition prior to the Petition Date.

12. Once the Debtors filed for bankruptcy, the Debtors began paying the Tenet Parties approximately $200,000 per week for services under the TSA and MSA and continued such payments after the Petition Date. In response, the Tenet Parties asserted that, under the TSA and

MSA, the Debtors were required to pay them approximately $800,000 per week. The Debtors lacked the liquidity to pay this amount.

13. On July 26, 2019, the Tenet Parties filed the *Motion of Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC for Entry of an Order (I) Compelling Payment of All Unpaid Postpetition Amounts Pursuant to 11 U.S.C. § 503(b)(1) or, in the Alternative, (II) Granting Relief from the Automatic Stay to the Extent Necessary to Terminate the TSA and MSA* (the "**Tenet Parties Motion**"), pursuant to which the Tenet Parties sought the entry of an order compelling the Debtors to pay them the alleged full contract rates for their post-petition services or, alternatively, granting the Tenet Parties relief from the automatic stay so that they could terminate the TSA and MSA.

14. The termination of services under the TSA and MSA would have a dramatic and disastrous effect on the Debtors since the services being provided under the MSA and TSA are critical to the operation of the Debtors' businesses and the Debtors' ability to care for patients. As already noted, the Debtors lacked the time and funds necessary to migrate the critical services provided by the Tenet Parties to other providers. As a result, the termination of services under the MSA and TSA would essentially preclude the Debtors from functioning, likely causing the immediate shut down of STC. Such termination would also likely lead to the immediate conversion of the Debtors cases to cases under chapter 7.

15. The Debtors and other parties objected to the Tenet Parties Motion. Following discovery, a full evidentiary hearing on August 19-20, 2019, further negotiations and a Chambers' Conference on September 13, 2019, the Court entered the September 19 Order.

16. Consistent with the September 19 Order, in late September, the Debtors and the Tenet Parties selected the Honorable Judith K. Fitzgerald (ret.) to mediate their disputes.

**III.    The Mediation**

17.    While I was familiar with the Debtors' claims against the Tenet Parties, in advance of the mediation, I took a number of additional steps to become fully informed of the strengths and weaknesses of all such claims, including:

- reviewing the ASA, TSA, MSA and the operative pleadings in the Delaware Chancery and Superior Courts;

- reviewing the Debtors' internal documents related to such claims;

- speaking with, or having current counsel interview, a number of current and former in-house lawyers and/or employees with knowledge of certain of the claims;

- reviewing certain analysis performed by the Debtors' litigation counsel and pre-bankruptcy accounting/financial experts;

- consulting with other representatives of EisnerAmper regarding certain of the claims;

- speaking with, or having current counsel speak with, the Debtors' litigation counsel and former counsel who assisted in analyzing certain of the claims; and

- directing current counsel to perform certain legal analysis of such claims, and discussing and relying upon such analysis.

18.    Shortly after Judge Fitzgerald's selection as mediator, the Debtors, the Tenet Parties and the Official Committee of Unsecured Creditors (together, the "**Parties**") provided Judge Fitzgerald with the relevant documents and pleadings and thereafter engaged in ongoing discussions with Judge Fitzgerald in an effort to resolve their respective disputes and claims.

19.    Albert Mezzaroba, the Debtors' independent director, Jacqueline Roe, in-house counsel to the Debtors, the Debtors' bankruptcy counsel and I attended in-person mediation sessions with Judge Fitzgerald in New York on each of October 15, 21 and 22, 2019. Representatives and counsel for the Tenet Parties and the Committee's professionals also attended and participated in these in-person sessions. Midcap, the Debtors' lender, attended the

mediation session on October 15 and was available by phone on each of October 21 and 22, as necessary.

20. Over the course of the in-person mediation sessions, the Debtors consulted frequently with the Committee and negotiated through Judge Fitzgerald, and in some cases, directly with the Tenet Parties.

21. By day two of the in-person mediation sessions, the Parties began exchanging a form settlement term sheet. With Judge Fitzgerald's assistance, the Parties continued to negotiate and revise the term sheet for several weeks following the last in-person mediation session and, on November 6, 2019, ultimately finalized and signed the settlement term sheet that is pending before the Court. The Settlement Term Sheet was approved by Mr. Mezzaroba, the Debtors' independent director, upon my recommendation.

**IV.  The Settlement Term Sheet and the Benefits of the Settlement**

22. The Settlement Term Sheet attached as Exhibit 1 to the Proposed Order is a true and correct copy of the Settlement Term Sheet signed by the Parties.

23. Mr. Mezzaroba and I support the Settlement Term Sheet because the settlement provides tremendous benefit to the Debtors and their estates and, without question, is fair, reasonable and in the best interest of the Debtors, their creditors, their patients and the Philadelphia medical community.

24. The Debtors' disputes with the Tenet Parties have required significant attention and resources during these Chapter 11 Cases, to the detriment of the Debtors' estates, creditors and others. Indeed, the critical role of the Tenet Parties' services in the Debtors' operations and the Debtors' ability to provide patient care has meant that, in the absence of resolution, the

Debtors' efforts to wind down HUH's operations in an orderly fashion and sell STC as a going concern without disruptions to its operations would be derailed.

25. Not only would the termination of the Tenet Parties services undermine the Debtors' ability to continue to operate, but the termination of such services would also constitute an immediate default under the Debtors' post-petition financing facility, impair many of the Debtors' accounting, billing and banking functions, and jeopardize the STC Sale, which requires STC to maintain ordinary course operations through closing.

26. With the Settlement Term Sheet, the Tenet Parties' termination of services will no longer constitute a looming threat to the viability of these Chapter 11 Cases. Through the Settlement Term Sheet, the Debtors can devote their efforts and attention to finalizing the orderly wind-down of HUH, achieving closure of the STC Sale, addressing critical issues with landlords and vendors, and developing a chapter 11 liquidating plan that will maximize value to creditors and parties in interest.

27. The Settlement Term Sheet helps to ensure that the Tenet Parties will continue to provide their services for the time periods necessary for their functions to be transitioned to the Debtors or to other services providers and provides for the maintenance of electronic and non-electronic records and the ability of the Debtors and third parties to access such records going forward. The Debtors estimate that the costs for the Debtors to make alternative arrangements to maintain and provide access to the records alone are substantial.

28. The Settlement Term Sheet also clarifies the resolution and treatment of the Tenet Parties' claims in these cases, and provides for a cash infusion of $2.8 million to the Debtors' estates.

29. Finally, and as detailed in the Motion, the Settlement Term Sheet resolves complex, costly and time consuming litigation and claims, the outcome of which were far from certain. While the Debtors believe in the strength of their causes of action, the Tenet Parties take the position that the evidence is to the contrary. If the Tenet Parties are correct and are able to prevail at trial, the Debtors would be obligated to pay significant amounts to satisfy the Tenet Parties' claims, after having already devoted significant time and resources to the litigation of such claims. Under these circumstances, the paramount interest of creditors is best served by the resolution embodied in the Settlement Term Sheet.

30. The Settlement Term Sheet is the result of the focused efforts of Judge Fitzgerald and the substantial, good faith, arms-length negotiations between the Debtors, the Committee and the Tenet Parties.

31. For all of the foregoing reasons, I would respectfully encourage the Court to approve the Settlement Term Sheet.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 18, 2019                                      Respectfully submitted,


                                                              */s/  Allen Wilen*
                                                              Allen Wilen
                                                              Chief Restructuring Officer