## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11466 (KG)<br><br>Jointly Administered<br><br>**Re: D.I. 878 & 987** |

### REPLY IN SUPPORT OF THE MOTION OF MASTER LANDLORDS FOR ENTRY OF AN ORDER (A) ALLOWING ADMINISTRATIVE CLAIMS, AND (B) COMPELLING DEBTORS (I) TO PAY POSTPETITION RENT AND OTHER OBLIGATIONS UNDER MASTER LEASES AND (II) TO COORDINATE WITH MASTER LANDLORDS REGARDING REJECTION OF MASTER LEASES AND SURRENDER OF PREMISES

HSRE-PAHH I, LLC, PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Wood Street Garage, LLC, PAHH Feinstein MOB, LLC, PAHH Erie Street Garage, LLC, and PAHH Broad Street MOB, LLC (collectively, the "Master Landlords"), by and through their counsel, DLA Piper LLP (US), hereby submit this reply (the "Reply") in support of the *Motion of Master Landlords for Entry of an Order (A) Allowing Administrative Claims, and (B) Compelling Debtors (I) To Pay Postpetition Rent and Other Obligations Under Master Leases and (II) To Coordinate With Master Landlords Regarding Rejection of Master Leases and Surrender of Premises* [D.I. 878] (the "Motion")[2] and in response to the Debtors' objection

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1

to the Motion (the "Objection"). In support of this Reply, the Master Landlords respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Debtors "do not contest the Master Landlords' entitlement to allowance of certain amounts as administrative expenses." *See* Objection at ¶ 2. The Debtors' primary objection to the Motion is that the Master Landlords' administrative expense claims include prepetition claims and postpetition expenses that did not provide either a direct or indirect benefit to the Debtors' bankruptcy estates, which allegations are contrary to the facts of these cases, the text of the Master Leases, and Third Circuit law. The Debtors further argue that the Master Landlords' allowed administrative expense claims should not be payable immediately, but rather should be paid pursuant to some future chapter 11 plan and after closing on the Debtors' pending sale of the assets of SCHC. Equally lacking in transparency, is the Debtors' promised hospital closure plan, build-up of postpetition payables and on account of what event could the Debtors ever satisfy the requirements of 11 U.S.C. § 1129(a)(9) in order to confirm a plan in these cases. These cases are being administered on the backs of the Master Landlords and many other administrative creditors and, if nothing else, the Debtors ought to be compelled be transparent, including on what basis Tenet should be afforded a super-priority administrative claim, with priority in payment from proceeds of furniture, fixture and equipment located in, or about the Master Landlords' buildings that remain in place and for which use of the Master Landlords' buildings the Debtors have not made payment.

**REPLY ARGUMENT**

A.   **The Master Landlords' Administrative Expense Claims Should Be Allowed**

2.   The "clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms." *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001). Courts "have consistently held that administrative expense priority is available to contract parties when the debtor enjoys the benefits of the contract pending assumption or rejection." *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010). A "debtor must pay the reasonable value of the services received." *Id.* The reasonable value of services standard applied in this District presumes that the contract rate is reasonable. *Id.* If the debtor "fails to timely perform any lease obligations that accrue during the post-petition, pre-rejection period, the lessor is entitled to an administrative claim for damages regardless of whether the use of the leased property during this period benefitted the estate." *In re Nat'l Refractories & Minerals Corp.*, 297 B.R. 614, 617 (Bankr. N.D. Cal. 2003); *see also In re Cornwall Paper Mills Co.*, 169 B.R. 844, 851 (Bankr. D.N.J. 1994) ("'the lessor is entitled to collect the fair rental value of the leased premises so long as the debtor is occupying the leased property and using it to help preserve the estate' regardless of whether the property is being put to the same use as it was pre-petition").

3.   Contrary to the Debtors' reliance on *In re DBSI, Inc.*, 407 B.R. 159, 164 (Bankr. D. Del. 2009), Third Circuit law explains that "§ 365(d)(3) makes recovery of post-petition rent automatic, rather than requiring landlords to bring, and prove, a § 503(b)(1) administrative expense claim." *In re Goody's Family Clothing, Inc.*, 401 B.R. 656, 663 (D. Del. 2009), *aff'd sub nom. In re Goody's Family Clothing Inc.*, 610 F.3d 812 (3d Cir. 2010).

Accordingly, "[l]ease obligations arising after filing the petition, but before assumption or rejection of the lease, are payable automatically." *Id.* at 665. Although "the Bankruptcy Code is silent on a landlord's remedy if a debtor-tenant fails to pay post-petition rent as required by § 365(d)(3), a majority of courts have held that his remedy lies with an 'automatic' § 503(b) administrative expense claim." *Id.* at 667.

4.  The Master Landlords' administrative expense claims should be allowed for the reasons set forth in the Motion. The Debtors have not rejected the Master Leases and are still in possession of the Master Lease Properties; therefore, the Debtors are required by section 365(d) of the Bankruptcy Code to timely perform their obligations in full under the Master Leases. This includes the obligations to pay all rent, including one component of which is to fund the Lease Rollover Reserve, which is an obligation due under the Master Leases that has been accruing post-petition. The Debtors' objection that the Lease Rollover Reserve is not benefitting the estate is of no consequence. It is another rental obligation currently due under the Master Lease, which has not been rejected. It is clear that the Debtors have failed to perform their obligations under the Master Leases, while benefitting from the continued use of the Master Lease Buildings.

5.  The Debtors rely heavily on the *Montgomery Ward* holding where the Court held that "an obligation arises under a lease for the purposes of § 365(d)(3) when the legally enforceable duty to perform arises under that lease." *In re Montgomery Ward Holding Corp.*, 268 F.3d at 211. A "lease obligation cannot 'first arise' under section 365(d)(3) until it becomes legally enforceable against the lessee." *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 479 (Bankr. D. Del. 2006). The Court held in *Montgomery Ward* that although tax liability is "incurred on the date it accrues, not on the date of the assessment or date on which it is payable,"

4

in the context of a § 365(d)(3) interpretation, the Court must look to the lease provisions to determine when the duty to perform arises. *In re Montgomery Ward Holding Corp.*, 268 F.3d at 212. Here, the obligation under the Master Leases to fund a reserve for payment of taxes first arose with the obligation to pay July 2019 rent, a post-petition obligation. "Because the debtor-lessee was not obligated to pay the taxes until receipt of the invoice from the lessor, which occurred post-petition, the Third Circuit found no basis in the text of section 365(d)(3) for limiting the lessor's administrative claim to those taxes accruing post-petition." *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. at 479.

6. The Debtors' argument with respect to the mechanics lien which has been assessed against the Master Lease Properties likewise is unavailing. The Master Leases require the Debtors each day during the term to pay accrued real estate taxes and amounts owing to mechanics, materialmen, and other vendors, and to maintain the Master Lease Properties free of liens. As with the tax liability in the *Montgomery Ward* case, the obligation to keep the properties free of liens by paying the lien claimant did not occur until post-petition and is an obligation each day post-petition. With respect to the mechanic's lien mentioned in the Motion, the work was completed on June 27, 2019, but the Debtors were not obligated to pay until the work was certified for payment, which occurred post-petition on August 13, 2019. Moreover, under the relevant state statute, the lien claimant cannot file a lien until after providing 30 days-notice to the property owner. *See* 49 P.S. § 1501(b.1). Because this lien right first arose and was filed post-petition, the Debtors' breach of their obligation to maintain the Master Lease Properties free of liens did not arise until after the filing of their bankruptcy petitions and, therefore, the Master Landlords are entitled to an administrative expense claim for this amount. Moreover, since the filing of the Motion, the Master Landlords have received notice of additional

mechanics liens that have been filed against the Master Lease Properties due to the Debtors' continued refusal to pay their contractors. The work completed by these contractors and subcontractors was and is essential to the Debtors' occupancy and the Debtors' bankruptcy estates have derived a benefit from this work.

7. The Debtors next argue that the Master Landlords are not entitled to an administrative expense claim for the maintenance obligations that are required under the Master Leases because the Debtors allege that "any obligation of the Debtors to remedy them arose *before* the Petition Date." *See* Objection at ¶ 34. To be consistent with the intent of § 365(d)(3), "any interpretation must look to the terms of the lease to determine both the nature of the 'obligation' and when it 'arises.'" *In re Montgomery Ward Holding Corp.*, 268 F.3d at 209. In order to determine when these maintenance obligations first arose, under the *Montgomery Ward* standard, the Court "must examine the terms of the Master Lease to determine what performance was legally required and when." *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. at 479. Based on the terms of the Master Leases, although maintenance is a daily obligation, repair is a separate obligation, the need to repair in a workmanlike manner the elevators in the Master Lease Properties is similarly an obligation arising each day post-petition.

8. Moreover, by failing to maintain and repair the premises, the Debtors and their estate have benefitted from their breach. *See In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. at 478 (breach of daily obligation to maintain lease property "benefitted the estate by saving it the cost of continuing the maintenance programs"). If the Debtors' bankruptcy estates are allowed to benefit from the failure to provide this on-going maintenance and repair, then the Master Landlords should be entitled to an administrative expense claim for the amounts they have been or will be forced to pay to fulfill the Debtors' continuing obligations. Because the Master Leases

6

EAST\170267027.3

have not been rejected and the Debtors are still in possession of—and continue to use—the Master Lease Properties, the Debtors "must pay the reasonable value of the services received," which in this case, includes, among others things, the contractual rate for rent under the Master Leases. *See In re Smurfit-Stone Container Corp.*, 425 B.R. at 741.

9. With respect to the operating fees and expenses, the Master Landlords are entitled to an administrative expense claim for work done by FTI Consulting. Section 12.12 of the Master Leases envisions situations where the Master Landlords would be obligated to enforce its rights under the Master Leases, through reasonable costs and expenses. Because the Debtors sought to obtain post-petition financing in reliance on a budget that on its face appeared inadequate to support the administration of these cases, and which has now proven to be grossly inadequate, and because the Debtors filed incomplete schedules and statements and untimely monthly operating reports, the Master Landlords were forced to seek the assistance of FTI Consulting to understand not only that the Debtors' budget did not provide for the payment of anticipated accrued expenses, but equally important, the Debtors did not expect to actually collect the projected cash under the budget – a double whammy. FTI Consulting's work led to this discovery, it was not disclosed by the Debtors in their financing motion.

**B.    The Master Landlords Are Entitled to Immediate Payment of their Administrative Expense Claims**

10. As noted in the Motion, "[c]ourts have discretion to determine when an administrative expense will be paid." *In re Garden Ridge Corp.,* 323 B.R. 136, 143 (Bankr. D. Del. 2005) (citing *HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002)). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *Id*.

11. The Debtors' delay in coordinating with the Master Landlords with respect to the contemplated rejection of the Master Leases and post-rejection transition plan to account for, among other action items, the Debtors' plan (i) to remove medical equipment and materials, including the removal of radioactive and other hazardous materials used in the radiation treatment center and any remediation required by applicable non-bankruptcy law; (ii) to resolve the various subtenant issues; (iii) to transition shared services; (iv) to provide access to utilities and new accounts with utility providers for utilities that enter through only Hospital buildings; (v) to provide access to various vendors; and (vi) to comply with the turnback requirements set forth in section 16.1 of the Master Leases, is prejudicial to the Master Landlords.

12. Time is critical for the creation of a transition plan for the transfer or closure of the Hospitals to address various subtenant issues, which implicate, among other issues, security, health, and safety concerns, including Debtors' transparency in the status of approval and complete implementation of its Hospital closure plan. The Motion made clear that the Debtors' inability or refusal to repair fire safety equipment and elevators may put lives at risk and certainly devalues the Master Lease Properties. Under the current circumstances, the Master Landlords' interests are not adequately protected and necessitate immediate payment. The Debtors cannot credibly dispute the hardship and detriment that will occur if the Debtors fail to coordinate with the Master Landlords regarding the contemplated rejection of the Master Leases and contracts affecting the Hahnemann University Hospital Campus and surrounding properties. Because of the outstanding transition issues and the pending sale of the Debtors' remaining assets at the Master Lease buildings, the Master Landlords should be entitled to immediate payment of the outstanding postpetition Rent and Supplementary Rent.

13. Finally, the Master Landlords have not yet asserted their full claims entitled to administrative priority and reserve all rights to supplement their administrative claims at any hearing on the Motion or otherwise.

WHEREFORE, the Master Landlords respectfully request that this Court grant the relief requested in the Motion and allow the Master Landlords' administrative expense claim in an amount not less than $3.25 million, direct the Debtors immediately to pay postpetition Rent and Supplementary Rent due under the Master Leases, further direct the Debtors to coordinate with the Master Landlords with respect to the contemplated rejection of leases and contracts affecting the Hahnemann University Hospital campus and surrounding properties, and grant such other and further relied as is just and equitable.

Dated: November 21, 2019

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Stuart M. Brown*
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@us.dlapiper.com

-and-

Richard A. Chesley (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: Richard.Chesley@us.dlapiper.com

*Counsel to the Master Landlords*