# EXHIBIT A

**(Proposed Order)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Related to Docket Nos. 620, 719,  878, 987, 1051** |
| | ) **and ____** |

### ORDER APPROVING STIPULATION BETWEEN DEBTORS AND MASTER LANDLORDS REGARDING REJECTION OF LEASES AND ALLOWED ADMINISTRATIVE EXPENSE CLAIM

Upon consideration of the *Stipulation Between Debtors and Master Landlords Regarding Rejection of Leases and Allowed Administrative Expense Claim* (the "**Stipulation**")[2] attached hereto as **Exhibit 1;** and the Court having jurisdiction over the matters raised in the Stipulation pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Stipulation and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Stipulation having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Stipulation is in the best interest of the Debtors, their estates, creditors and all parties-in-interest, and that the legal and factual bases set forth in the Stipulation establish just cause for the relief granted

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Stipulation.

herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Stipulation is approved.

2.      The Debtors are authorized to take any and all actions necessary to effectuate the Stipulation.

3.      The leases set forth on **Exhibit 2** hereto are hereby rejected, effective as of November 15, 2019.

4.      All leases and subleases between and among the Debtors with respect to the HSRE Properties, including, without limitation, those set forth on **Exhibit 3** attached hereto, are hereby rejected, effective as of November 15, 2019.

5.      This Order shall not be a determination of whether any of the leases on **Exhibit 2** or **Exhibit 3** are unexpired leases.

6.      To the extent that a counterparty to a lease on **Exhibit 2** chooses to file a proof of claim relating to rejection damages, such proof of claim must be filed with the Court on or before the later of (i) thirty (30) calendar days after service of this Order and (ii) the general deadline to file claims in these Chapter 11 Cases, as determined by the Court by separate order.

7.      This Court shall retain jurisdiction over any and all matters arising from or related to the implementation of this Order or the Stipulation.

8.      This Order is effective immediately upon entry.

# EXHIBIT 1

## Stipulation

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al*.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |

## STIPULATION BETWEEN DEBTORS AND MASTER LANDLORDS REGARDING REJECTION OF LEASES, ALLOWED ADMINISTRATIVE EXPENSE CLAIM AND RELATED MATTERS

This Stipulation Between Debtors and Master Landlords Regarding Rejection of Leases, Allowed Administrative Expense Claim and Related Matters (the "**Stipulation**") is made and entered into as of the 22nd day of November, 2019 between and among the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") and PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Feinstein MOB, LLC, PAHH New College, MOB, LLC, PAHH Wood Street Garage, LLC and PAHH Erie Street Garage, LLC (collectively, the "**Master Landlords**," and together with the Debtors, the "**Parties**"), by and through their respective duly authorized undersigned counsel.

## INTRODUCTION

**WHEREAS**, on June 30 and July 1, 2019 (collectively, the "**Petition Date**"), each Debtor commenced a case (the "**Chapter 11 Cases**") by filing a voluntary petition for relief

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**");

**WHEREAS**, the Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, the Master Landlords own various medical office buildings and parking garages (referred to herein as the "**HSRE Properties**"), which are generally adjacent to Hahnemann University Hospital ("**HUH**"), except with respect to a garage (hereinafter, the "**Erie Street Garage**") located adjacent to the hospital operated by debtor St. Christopher's Healthcare, LLC ("**STC**");

**WHEREAS**, on or about January 11, 2018, STC entered into master leases (the "**Master Leases**") for the HSRE Properties with the Master Landlords;

**WHEREAS**, on August 30, 2019, the Debtors filed the *Fifth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Unexpired Real Estate Leases* (the "**Rejection Motion**") [D.I. 620], which sought entry of an order authorizing the Debtors to reject, among other things, the Master Leases except for the Master Lease for the Erie Street Garage (the "**Erie Street Master Lease**");

**WHEREAS**, on September 13, 2019, the Master Landlords filed their *Limited Objection of Master Landlords to the Fifth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Unexpired Real Estate Leases* [D.I. 719];

**WHEREAS**, on September 27, 2019, the Court entered the *Order Under 11 U.S.C. § 105, 363, 365, 503 and 507 (A) Approving Asset Purchase Agreement with STC Opco, LLC (B) Authorizing the Sale of Certain of Debtors' Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the Debtors' Executory Contracts, and*

2

*(D) Granting Related Relief* [D.I. 795] that approved, among other things, the sale of certain assets of STC and certain other debtors (the "**SCHC Sale**");

**WHEREAS**, on October 18, 2019 the Master Landlords filed the *Motion of Master Landlords for Entry of an Order (A) Allowing Administrative Claims, and (B) Compelling Debtors (I) To Pay Postpetition Rent and Other Obligations under Master Leases and (II) to Coordinate with Master Landlords Regarding Rejection of the Master Leases and Surrender of the Premises* (the "**Master Landlords' Motion**") [D.I. 878];

**WHEREAS**, on November 12, 2019, the Debtors filed the *Debtors' Objection to Motion of Master Landlords for Entry of an Order (A) Allowing Administrative Claims, and (B) Compelling Debtors (I) To Pay Postpetition Rent and Other Obligations under Master Leases and (II) to Coordinate with Master Landlords Regarding Rejection of the Master Leases and Surrender of the Premises* [D.I. 987];

WHEREAS, on November 21, 2019, the Master Landlords filed a *Reply in Support of the Motion of Master Landlords for Entry of an Order (A) Allowing Administrative Claims, and (B) Compelling Debtors (I) to Pay Postpetition Rent and Other Obligations Under Master Lease and (II) to Coordinate with Master Landlords Regarding Rejection of Master Leases and Surrender of Premises* [D.I. 1051];

**WHEREAS**, the Parties have met and conferred and now seek to resolve the matters set forth in the Rejection Motion and the Master Landlords' Motion as set forth herein.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements contained herein, the Parties hereby agree, subject to Bankruptcy Court approval as set forth herein, as follows:

36060279.14 11/22/2019

**STIPULATION**

1.      Each of the Recitals set forth above is incorporated herein by reference.

2.      This Stipulation shall not become effective unless and until it is approved by order of the Bankruptcy Court on or before December 13, 2019.

3.      The Master Leases for which rejection is sought pursuant to the Rejection Motion shall be deemed rejected effective as of November 15, 2019 (the "**Rejection Date**").   For avoidance of doubt, the Erie Street Master Lease shall not be deemed rejected pursuant to this Stipulation.

4.      In resolution of the obligations of any Debtor to the Master Landlords under sections 365(d)(3) and 503(b) of the Bankruptcy Code, the Master Landlords shall be allowed an administrative expense claim in the amount of $2,600,000 (the "**Allowed Administrative Expense Claim**") for (i) obligations arising under the Master Leases (other than the Erie Street Master Lease) from the Petition Date through the Rejection Date; and (ii) obligations arising under the Erie Street Master Lease from the Petition Date through December 14, 2019.

5.      The Debtors shall pay the Allowed Administrative Expense Claim as follows:

> i.   $650,000 from the net proceeds of the SCHC Sale.   For avoidance of doubt, "net proceeds" as used in the foregoing sentence means the proceeds of the SCHC Sale after payment of:  (a) all obligations owed by any Debtor to MidCap Funding IV Trust ("**MidCap**"), (b) all investment banking fees owed to SSG Advisors, LLC relating to the SCHC Sale, (c) all customary attendant direct costs of the SCHC Sale and (d) $2,200,000 to Tenet Business Services Corporation/Conifer Revenue Cycle Solutions, LLC (hereinafter, collectively, "**Tenet/Conifer**")

4

pursuant to the terms of the settlement (the "**Tenet/Conifer Settlement**")

for which approval is sought pursuant to the *Motion of the Debtors for*

*Entry of an Order Approving Settlement Term Sheet Between the Debtors,*

*Tenet Business Services Corporation, Tenet Healthcare Corporation,*

*Conifer Health Solutions, LLC, Conifer Revenue Cycle Solutions, LLC and*

*the Official Committee of Unsecured Creditors* (the "**Tenet/Conifer**

**Settlement Motion**") [D.I. 1030].

ii.  $1,950,000 as a subordinated super-priority administrative claim payable

from the net proceeds payable to the Debtors, other than the Guarantee, of

the sale of Auction Assets to be sold pursuant to the Centurion

Engagement Agreement for which approval is sought by means of that

certain *Motion of Debtors for Order (I) Authorizing Retention and*

*Employment of Centurion Service Group, LLC, as Auctioneer, (II)*

*Waiving Compliance With Certain Requirements of Local Rule 2016-2;*

*and (III) Approving Sale and Liquidation of Certain Medical Equipment,*

*Furniture and Inventory* [D.I. 923] (the "**Equipment Sale Motion**").  To

the extent the Allowed Administrative Claim is not paid in full from such

net proceeds, it shall be paid from the Rebates (defined below), with any

remaining balance to be paid *pro rata* with all other unpaid administrative

claims.  The Rebates shall be applied upon receipt as payment toward the

Allowed Administrative Expense Claim (after application of all amounts

paid with respect thereto).  If the Rebates are collected after the Allowed

Administrative Expense Claim is paid in full, the Debtors shall retain the

proceeds of the Rebates.   The Debtors shall use commercially reasonable efforts promptly to collect the Rebates and the Master Landlords shall, upon reasonable request by the Debtors, provide any assistance required by the Debtors in connection with their efforts to collect the Rebates.   As used herein, the term "**Rebates**" shall mean amounts payable to the Debtors pursuant to an energy efficiency incentive rebate program sponsored by PECO Energy Company and related to the HSRE Properties. *Notwithstanding the foregoing or anything to the contrary set in this Stipulation including without limitation this paragraph 5(ii)*:

1. no amount shall be paid to the Master Landlords unless and until all obligations of the Debtors to MidCap have been satisfied in full, and all claims and rights of MidCap pursuant to the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Granting Adequate Protection and Modifying the Automatic Stay* [D.I. 557] (the "**Final DIP Order**") are expressly preserved and shall be unaffected by this Stipulation;

2. the superpriority administrative claim granted to the Master Landlords pursuant to paragraph 5(ii) of this Stipulation shall be subordinate to any superpriority administrative claims granted to Tenet/Conifer in the Tenet/Conifer Settlement, and nothing contained herein shall affect the terms of the Tenet/Conifer Settlement; and

36060279.14 11/22/2019

3.  no other party, with the exception of MidCap (pursuant to the Final DIP Order) and Tenet/Conifer (pursuant to the Tenet/Conifer Settlement), shall have or be granted a lien on, and/or a superpriority administrative claim payable specifically from, the Auction Assets, the Rebates, and/or proceeds thereof.

iii.  As used herein, the terms "Guarantee", "Auction Assets", and "Centurion Engagement Agreement" shall have the meanings ascribed to them in the Equipment Sale Motion.

iv.  If and to the extent proceeds of the Auction Assets, other than the Guarantee, are paid to MidCap prior to the closing on the SCHC Sale, the amount payable to the Master Landlords from the net proceeds of the SCHC Sale shall be correspondingly increased and applied to the Allowed Administrative Expense Claim.  For the avoidance of doubt, nothing in this provision shall be construed to increase the amount of the Allowed Administrative Expense Claim.

6.  [intentionally omitted]

7.  The Master Landlords shall provide the following to the Debtors at no charge:

   a.  On or before January 31, 2020, the right to sell (in-place) and remove (subject to appropriate insurance and repairs to the premises) the Debtors' assets, including without limitation specifically identified and tagged radiological and other equipment, furniture and inventory, from the HSRE Properties.

   b.  So long as the Debtors are not in default of the terms and conditions of this Stipulation, the Debtors may continue accessing and using on a non-exclusive basis the following spaces in the HSRE Properties through March 31, 2020 (the Debtors have and shall bear all, and the Master Landlords shall have no, responsibility for any medical records or property of the Debtors, including any security):

7

i. The portion of space in the basements of New College Building and the Bobst Building necessary for the Debtors' operations related to maintenance, IT, environmental services, and security.

ii. The loading dock at the Bobst Building and the freight elevator in the Bobst Building; and

iii. Mechanical closets, chases and equipment reasonably necessary for the Debtors' operations in the North and South Towers.

iv. On or prior to January 31, 2020, the Debtors shall have, at Debtors' expense:

    1. removed all radioactive waste from the HSRE Properties, and shall provide to the Master Landlords a satisfactory Certificate of Clearance by a Radiological Contractor reasonably satisfactory to the Master Landlords, it being understood that the Debtors may remove radioactive waste through the HSRE Properties (e.g., through loading docks and/or other exits located in HSRE Properties);

    2. As a condition to Debtors' continued access, Debtors shall:
      a. Maintain adequate insurance;
      b. not interfere with the activities of the Master Landlords or their sub-tenants or other business conducted on the premises;
      c. not remove any property or systems of the Master Landlords; and
      d. have access only during normal business hours.

8. The Master Landlords shall retain the following without cost to the Master Landlords with respect to the Debtors' premises in the North and South Towers until such time of the effective date of Debtors' rejection of the leases for the North and South Towers, provided, however, such rights shall be in addition to, and nothing herein is intended to and shall not negatively impact, any party's rights under the Reciprocal Easement Agreement and similar rights of record encumbering such premises:

i. Access to, and continued operation by Drexel University, and/or contractor(s) employed by the Master Landlords through NexCore, of the PBX and IT Area located on the 19th floor of the South Tower, being

Rooms 1901 and 1902A, respectively, and the necessary hallways, stairs and elevators between those rooms and adjacent buildings or the outside. The Debtors shall continue to provide required cooling and electric services with respect to such Areas;

    ii.   Access to and continued operation of the space currently utilized by WorkNet and ARA in the South Tower (located on the 1st and 12th floors, respectively);

   iii.   Access to and continued use of the surface parking lot for patients and staff, as currently being provided outside the Feinstein and Bobst Buildings;

   iv.   Access to and continued use of mechanical closets, chases and equipment reasonably necessary for the Master Landlords', and any tenants' and subtenants', operations in the HSRE Properties.

    v.   Access to and continued operation of the underground parking garage underneath the School of Health Sciences and Humanities Building.

9.    The Debtors will use their commercially reasonable best efforts to and cooperate with the Master Landlords in transitioning vendors, other service providers and utility services (where applicable) to the Master Landlords or their designee(s).   The Debtors will use commercially reasonable efforts to provide copies of all available contracts, amendments, memos, purchase orders, invoices relating to the HSRE Properties for the period from January 2018 to present, bills of lading, warranties, service manuals and sub-leases, as amended, modified or restated, to the Master Landlords.  The Debtors have designated Allen Wilen as their authorized and knowledgeable representative to interact with the Master Landlords with respect to all aspects of this Stipulation.  The Debtors may designate another representative, upon written notice to the Master Landlords.

10.    The Master Landlords shall commence payment of all utility service for the Center City campus comprising the land and improvements owned by Broad Street  Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street  Healthcare Properties

III, LLC and the Master Landlords beginning for service after November 15, 2019. The allocation for such utilities shall be as agreed by the Debtors and the Master Landlords and/or the Master Landlords' agent, in good faith.

11.    The Master Landlords shall be responsible for all further repairs and modifications to the steam vault located in the basement of NCB.

12.    The Master Landlords' objection to the Rejection Motion and the Master Landlords' Motion shall be deemed settled and resolved pursuant to the terms hereof.

13.    The Parties are authorized to take any and all actions necessary to effectuate this Stipulation.

14.    This Stipulation is the entire agreement between the Debtors and the Master Landlords with respect to the subject matter hereof.  This Stipulation supersedes any and all agreements, whether written or oral, that may have previously existed between the Parties with respect to the matters set forth herein.  No statements, promises, or representations have been made by any Party to any other, or relied upon, and no consideration has been offered, promised, expected or held out other than as expressly provided for herein.

15.    The Parties, by and through their undersigned counsel, each represent and warrant that the undersigned is fully authorized and empowered to execute and deliver this Stipulation on behalf of, and to bind, each Party, as applicable, to the terms and conditions of this Stipulation; provided, however, the Debtors' authorization is subject to Bankruptcy Court approval and this Stipulation shall become effective upon the order approving this Stipulation becoming a Final Order.

16.    Each of the Parties further acknowledges that it has been fully advised with respect to its rights and obligations under this Stipulation by counsel of its own choosing.  Each

of the Parties has consulted with counsel of its own choosing and has had adequate opportunity to make whatever investigation or inquiry it deems necessary or desirable with respect to the subject matter and terms of this Stipulation.

17.    In the event of any ambiguity in this Stipulation, no inferences shall be drawn against any Party on the basis of authorship of this Stipulation.

18.    This Stipulation shall be binding and inure to the benefit of the Parties hereto, their successors and assigns, and including, as to the Debtors, any chapter 7 or chapter 11 trustee, plan administrator or estate representative.

19.    This Stipulation may be modified, amended, or supplemented by the Parties, in writing, and without further order of the Court, provided that any such modification, amendment, or supplement either is (a) not material or (b) not less favorable to the Debtors than the existing applicable provisions without further order of the Court.

20.    This Stipulation is a fully integrated agreement with each provision being fully integrated and dependent on each other provision and no provision of this Stipulation may held to be unenforceable without this entire Stipulation being held to be unenforceable and no provision may be "blue penciled" to render such provision enforceable.

21.    This Stipulation shall be governed by and construed in accordance with the Bankruptcy Code and, where not inconsistent, the laws of the State of Delaware, without regard to the conflict of laws' principles thereof.  This Stipulation shall be binding upon and inure to the benefit of the Parties and their respective successors, assignees, designees, agents, attorneys and representatives.

36060279.14 11/22/2019

22.     This Stipulation may be executed in one or more counterparts, including by facsimile and/or electronic mail, each of which when so executed shall be deemed to be an original, and all of which, when taken together, shall constitute one and the same Stipulation.

23.     The Parties acknowledge and agree that the Court shall retain jurisdiction over all disputes concerning or related to the subject matter of this Stipulation.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the Parties by and through their duly authorized respective counsel hereby execute this Stipulation as of the date first written above, intending to be legally bound.

**SAUL EWING ARNSTEIN & LEHR LLP**

*/s/  Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique Bair DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899-1266
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

   -and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Counsel for Debtors and Debtors in Possession*

**DLA PIPER (US)**

*/s/ Stuart M. Brown*
Stuart M. Brown (DE Bar No. 4050)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Stuart.Brown@dlapiper.com

   -and-

Richard A. Chesley
444 West Lake Street, Suite 900
Chicago, IL 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Richard.Chesley@dlapiper.com

*Counsel to the Master Landlords*

13

# EXHIBIT 2

## Rejected Leases

| No. | Non-Debtor Counterparty | Description | Debtor Party |
|---|---|---|---|
| 1 | Arthur Huppert, MD | Sublease for 231 N. Broad Street – Suite 101 | Center City Healthcare, LLC |
| 2 | Lyons-Chvala Nephrology Associates | Sublease – timeshare for suite 101 of 231 N. Broad Street | Center City Healthcare, LLC |
| 3 | New Cingular Wireless PCS | Sublease – roof space of New College Building | Center City Healthcare, LLC (d/b/a Hahnemann University Hospital) |
| 4 | The Dialysis Unit of Center City Philadelphia, LLC | Sublease – Suite 1200 of Bobst Building | Center City Healthcare, LLC |
| 5 | Drexel University | Sublease – assigned master lease from PAHH Bellet MOB, LLC | St. Christopher's Healthcare, LLC |
| 6 | Drexel University | Sublease – assigned master lease from PAHH Broad Street MOB, LLC | St. Christopher's Healthcare, LLC |
| 7 | Drexel University | Sublease – assigned master lease from PAHH Feinstein MOB, LLC | St. Christopher's Healthcare, LLC |
| 8 | Drexel University | Sublease – assigned master lease from PAHH New College MOB, LLC | St. Christopher's Healthcare, LLC |
| 9 | Drexel University | Sublease – New College Building – Suite 12317 | TPS IV of PA, L.L.C. |
| 10 | Drexel University | Sublease – New College Building – Suite 744 | TPS IV of PA, L.L.C. |
| 11 | Drexel University | Sublease – New College Building - Suites 12316, 12318, 12320, 12322, 12324, 12326, and 12328 | TPS IV of PA, L.L.C. |
| 12 | Drexel University | Sublease – New College Building – Radiation Oncology Suite | Center City Healthcare, LLC |
| 13 | Drexel University | Sublease – New College Building – Radiation Oncology Suite | TPS IV of PA, L.L.C. |
| 14 | PAHH Bellet MOB, LLC | Master Lease for Bellet Building – 1501-1511 Race Street | St. Christopher's Healthcare, LLC |

| No. | Non-Debtor Counterparty | Description | Debtor Party |
|---|---|---|---|
| 15 | PAHH Broad Street MOB, LLC | Master Lease for 231 N. Broad Street | St. Christopher's Healthcare, LLC |
| 16 | PAHH Feinstein MOB, LLC | Master Lease for Feinstein and Bobst Buildings – 216-220 North Broad Street | St. Christopher's Healthcare, LLC |
| 17 | PAHH New College MOB, LLC | Master Lease for New College Building – 225-251 North 15th Street | St. Christopher's Healthcare, LLC |
| 18 | PAHH Wood Street Garage MOB, LLC | Master Lease for Wood Street Garage  306-320 North Broad Street | St. Christopher's Healthcare, LLC |
| 19 | Respiratory Associates LTD | Sublease – timeshare for suite 101 of 231 N. Broad Street | Center City Healthcare, LLC |
| 20 | Urology Consultants of Southeastern PA | Sublease for 231 N. Broad Street (2nd Floor) | Center City Healthcare, LLC |
| 21 | U.S. Regional Occupational Health (Worknet) | Sublease – Bobst Building – Suites B131, B133, and B134 | Center City Healthcare, LLC |

2

# EXHIBIT 3

## Rejected Inter-Debtor Leases

| No. | Debtor Sublessor | Debtor Sublessee | Description |
|---|---|---|---|
| 1 | St. Christopher's Healthcare, LLC | Center City Healthcare, LLC | Sublease for Bellet Building |
| 2 | St. Christopher's Healthcare, LLC | Center City Healthcare, LLC | Sublease for Feinstein & Bobst buildings |
| 3 | St. Christopher's Healthcare, LLC | Center City Healthcare, LLC | Sublease for New College Building |
| 4 | St. Christopher's Healthcare, LLC | TPS of PA, L.L.C. | Sublease for Feinstein Building, 2nd Floor |
| 5 | St. Christopher's Healthcare, LLC | TPS of PA, L.L.C. | 231 North Broad Street, 3rd Floor |
| 6 | St. Christopher's Healthcare, LLC | TPS IV of PA, L.L.C. | Sublease for Feinstein Building – Radiology Oncology Suite |
| 7 | St. Christopher's Healthcare, LLC | TPS IV of PA, L.L.C. | Sublease for New College Building, 7th and 12th Floors |