# EXHIBIT A

## Proposed Revised Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (KG) |
| | Jointly Administered |
| Debtors. | **Related to Docket Nos. 923 and ___** |

**ORDER (I) AUTHORIZING RETENTION AND EMPLOYMENT OF CENTURION SERVICE GROUP, LLC, AS AUCTIONEER, (II) WAIVING COMPLIANCE WITH CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2; (III) APPROVING SALE AND LIQUIDATION OF CERTAIN MEDICAL EQUIPMENT, FURNITURE AND INVENTORY AND (IV) GRANTING ADEQUATE PROTECTION**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") for entry of an order (this "**Order**") (i) authorizing the Debtors to employ and retain Centurion Service Group, LLC ("**Centurion**") as auctioneer to the Debtors; (ii) waiving compliance with certain requirements of Local Rule 2016-2; and (iii) approving the sale and liquidation of certain medical equipment, furniture and inventory (as described further below, the "**Auction Assets**") free and clear of all liens, claims and encumbrances through Centurion and the *Limited Objection* (the "**Limited Objection**") of the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Motion.

Master Landlords[3] thereto requesting adequate protection [D.I. 980]; and upon consideration of

the Centurion Declaration and the First Day Declaration; and it appearing that this Court has

jurisdiction over the Motion pursuant to 28 U.S.C. §§ 57 and 1334; and it appearing that venue

of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b);

and this Court being satisfied based on the representations made in the Motion and in the

Centurion Declaration that the terms and conditions of Centurion's employment as set forth in

the Centurion Engagement Agreement and summarized in the Motion and in the Centurion

Declaration, are reasonable as required by section 328(a) of the Bankruptcy Code; and Centurion

not holding or representing interests adverse to the Debtors' estates; and Centurion being a

"disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code;

and this Court having found that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors and other parties in interest; and a sound business purpose exists

for the relief granted herein; and due and proper notice of the Motion and the Limited Objection

having been provided, and it appearing that no other or further notice need be provided; and

upon the record of the hearing, if any, and all of the proceedings had before the Court; and upon

finding that the legal and factual bases set forth in the Motion and the Limited Objection

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor:

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

---

[3]    The Master Landlords consist of PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Wood
Street Garage, LLC, PAHH Feinstein MOB, LLC, and PAHH Broad Street MOB, LLC.

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      Approving of the retention of Centurion and the sale of the Auction Assets pursuant to the terms set forth in the Centurion Engagement Agreement are in the best interests of the Debtors and their creditors, estates and other parties in interest.

D.      The Debtors have demonstrated a good, sufficient and sound business purpose and justification for the retention of Centurion and the sale of the Auction Assets pursuant to the terms set forth in the Centurion Engagement Agreement.

E.      The Debtors may sell the Auction Assets free and clear of all Interests of any kind or nature because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

F.      The sale of the Auction Assets should be subject to the conditions set forth herein in order to ensure adequate protection for the Master Landlords.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent provided herein.

2.      The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, to employ and retain Centurion as their equipment auctioneer in connection with the Chapter 11

Cases in accordance with the terms and conditions set forth in the Motion and in the Centurion Engagement Agreement.

3.      The Debtors are authorized to compensate and reimburse Centurion pursuant to the terms of the Centurion Engagement Agreement.

4.      The compensation structure as set forth in the Centurion Engagement Agreement, is approved pursuant to section 328(a) of the Bankruptcy Code, and Centurion shall be compensated and reimbursed for its fees and expenses in the Chapter 11 Cases pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Centurion Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the UST Guidelines and any applicable orders of this Court.

5.      Centurion's compensation shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code; provided, however, that the U.S. Trustee shall have the right to object to Centurion's request for compensation and expense reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, and not section 328(a) of the Bankruptcy Code.

6.      Centurion shall comply with all requirements of Bankruptcy Rule 2016(a) and Local Rule 2016-2, except that Centurion is hereby granted a waiver of the information-keeping requirements of Local Rule 2016-2, such that Centurion shall not be required to keep professional time records.

7.      The Indemnification Provisions set forth in the Centurion Engagement Agreement are approved, subject during the pendency of the Debtors' Chapter 11 Cases to the following:

       a.    Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify, Centurion for any claims arising

from, related to, or in connection with the services to be provided by Centurion as specified in the Motion, but not for any claim arising from, related to, or in connection with Centurion post-petition performance of any other services other than those in connection with the engagement, unless such postpetition services and indemnification therefor are approved by this Court;

b.  Notwithstanding any provisions of the Centurion Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Centurion or provide contribution or reimbursement to Centurion (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Centurion's bad faith, self-dealing, breach of fiduciary duty (if any), willful misconduct or gross negligence, (ii) for a contractual dispute in which the Debtors allege the breach of Centurion's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to In re United Artists Theatre Company, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), infra, to be a claim or expense for which Centurion should not receive indemnity, contribution or reimbursement under the terms of the Centurion Engagement Agreement, as modified by this Order; and

c.  If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, Centurion believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification obligations under the Motion, including, without limitation, the advancement of defense costs, Centurion must file an application in this Court, and the Debtors may not pay any such amounts to Centurion before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Centurion for indemnification, and not as a provision limiting the duration of the Debtors' obligation to Centurion. All parties-in-interest shall retain the right to object to any demand by Centurion for indemnification, contribution or reimbursement.

8.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to perform their obligations under, and comply with the terms of, the Centurion Engagement Agreement relating to the sale of the Auction Assets, and to consummate such sale or sales, pursuant to and in accordance with the terms and conditions of the Centurion Engagement

Agreement as set forth herein.  For the avoidance of doubt, and in accordance with the Centurion Engagement Agreement, the Auction Assets shall not include any items or equipment that are leased to the Debtors or that the Debtors otherwise cannot sell pursuant to the terms of the Centurion Engagement Agreement.  In addition, with respect to any computers and/or laptops containing personally identifiable information or protected health information, the Debtors shall wipe the devices of existing data prior to either selling or discarding such devices.

9.     The Debtors are authorized to execute and deliver, and empowered to consummate and implement any and all sales of the Auction Assets pursuant to the terms set forth in the Centurion Engagement Agreement, and to execute and deliver, and perform under, any additional instruments and documents that the Debtors deem necessary or appropriate to implement such sales, and to take all further action as may be necessary or appropriate in connection therewith.

10.    In connection with the sale of the Auction Assets, the following conditions shall apply:[4]

    a.  Centurion will provide for appropriate insurance for Master Landlords, their lender, Capital One, N.A., and the Hahnemann Buildings (reasonably acceptable to the Master Landlords) and, in accordance with the terms of the Centurion Engagement Agreement, will provide for any necessary repairs or restoration to the Master Landlords' Master Lease Buildings to be made upon removal of the Auction Assets (through Centurion or otherwise), but not later than January 31, 2020.  The Master Landlords reserve the right to seek a reasonable increase in the performance and completion bond to be provided by Centurion before any damage or destruction is caused to the Master Lease Buildings and after Centurion provides its planned manner and scope of work to remove the furniture, fixtures and equipment.  If the amount of the foregoing bond is increased beyond the amount contemplated by the Centurion Engagement Agreement (i.e., $250,000), the Debtors shall pay the increased cost of obtaining such bond.

---

[4] Capitalized terms used but not defined within this paragraph shall have the meanings ascribed to them in the Limited Objection.

    b.    Centurion and/or the Debtors shall be responsible for obtaining and complying with all permits, licenses and inspections with respect to such work. The Debtors and, to the extent set forth in the Centurion Engagement Agreement, Centurion, have and shall bear all, and the Master Landlords shall have no, responsibility for any Auction Assets or other property of the Debtors, including any security, situated in, on or about, or moved through any of the Master Landlord premises.

    c.    Removal work shall not be deemed complete until paid for in full and a full and final Release of Liens is provided to the Master Landlords with respect to all contractors and suppliers providing materials or work performed on and off site relating to the removal of any Auction Assets.

11.    Pursuant to section 363(f) of the Bankruptcy Code, all sales of the Auction Assets under the terms set forth in the Centurion Engagement Agreement shall be free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever. Any such interests shall be transferred and attached to the sale proceeds with the same validity and priority, and subject to the same defenses, that such interests had against the Auction Assets.

12.    The Debtors shall not be required to file a separate motion or seek court approval for the sale of the Auction Assets, which are authorized to be sold pursuant to the terms set forth in this Order and the Centurion Engagement Agreement.

13.    At the conclusion of the auction process, the Debtors shall file with the Court a report of the results of the auction sales, including the net proceeds realized by the estates therefrom.

14.    Notwithstanding any provision to the contrary herein, in the Motion or in the Centurion Engagement Agreement, (i) the amount of the Guarantee shall be $1,597,750 and (ii) each reference in the Centurion Engagement Agreement to "$2,450,000" shall be and hereby is revised to $2,167,650.

15.    Notwithstanding any provision to the contrary herein, in the Motion or in the Centurion Engagement Agreement, until the Debtors' obligations to MidCap IV Funding Trust

("**MidCap**") under the DIP Credit Agreement (as defined in the final order approving post-petition financing approved by this Court on August 23, 2019 [D.I. 557] (the "**Final DIP Order**")) are paid in full, (i) the Guarantee (as defined in the Centurion Engagement Agreement) and any other amounts to be paid to the Debtors under the terms of the Centurion Engagement Agreement shall be paid directly to MidCap, with the understanding that MidCap will apply $1,042,500 of the Guarantee to the DIP Term Loan (both as defined in the Final DIP Order) and the balance of the Guarantee to the DIP Revolving Facility and (ii) all proceeds of the Auction Assets in excess of the Guarantee and otherwise payable to the Debtors under the terms of the Centurion Engagement Agreement may be applied by MidCap first to the outstanding balance of the DIP Term Loan and then to the outstanding balance of the DIP Revolving Facility.  For the avoidance of doubt: (a) Centurion shall make the payment due under paragraph 15(i) herein to MidCap pursuant to wire transfer instructions to be provided by MidCap to Centurion; and (b) Centurion shall make the payment due under paragraph 15(ii) herein to MidCap pursuant to wire transfer instructions to be provided by MidCap to Centurion unless, prior to the making of such payment, Centurion receives a written certification from the Debtors informing Centurion that the Debtors' obligations to MidCap under the DIP Credit Agreement are paid in full, in which case Centurion shall pay all proceeds of the Auction Assets in excess of the Guarantee, and otherwise payable to the Debtors, to the Debtors, pursuant to wire transfer instructions to be provided by the Debtors.  Centurion shall be entitled to rely on any such written certification from the Debtors.

16.     To the extent the Motion or the Centurion Engagement Agreement is inconsistent with the terms of this Order, the terms of this Order shall govern.

36055585.12 11/25/2019

17.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this order.

18.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.     This Court shall retain jurisdiction to hear and to determine all matters arising from or related to the implementation of this Order.

20.     Notwithstanding anything to the contrary contained herein, in the Centurion Engagement Agreement or in the Motion, the Auction Assets shall not include those assets subject to the asserted lien and interest of Med One Capital Funding, LLC ("**Med One**"); specifically, 485 8015 BD – BD Alaris System Point of Care Units, model 8015 and related software and services (collectively, the "**Med One Assets**"), and the Med One Assets shall not be sold pursuant to the Centurion Engagement Agreement and/or by the Debtors or their agents, absent either written agreement of Med One or further order of the Court after sufficient notice to Med One.  Med One's claims, rights and defenses under applicable law and any contracts, all of which are expressly reserved, are not prejudiced or otherwise affected by this Order.