# Exhibit A

PHYSICIAN EMPLOYMENT AGREEMENT

BY AND BETWEEN

SCHC PEDIATRIC ASSOCIATES, L.L.C.

AND

ACHINTYA MOULICK, M.D., M.S., M.CH.

## PHYSICIAN EMPLOYMENT AGREEMENT

THIS PHYSICIAN EMPLOYMENT AGREEMENT ("Agreement") is made and entered into as of the Commencement Date (as hereinafter defined) by and between SCHC Pediatric Associates, L.L.C. ("Employer") and Achintya Moulick, M.D., M.S., M.CH. ("Physician").

### R E C I T A L S:

A.    Employer provides for the care and treatment of pediatric patients at one or more clinics and hospitals located in greater Philadelphia, Pennsylvania, and the surrounding region (the "Area"), including at St. Christopher's Hospital for Children ("Hospital"), which is operated by an affiliate of Employer.

B.    Employer and Hospital act in concert as an integrated pediatric academic medical center.

C.    Physician is (or prior to the Commencement Date (as hereinafter defined) will be) licensed to practice medicine in the Commonwealth of Pennsylvania ("State"), is qualified in the specialty of Cardiothoracic Surgery ("Specialty"), and desires to become a bona fide employee of Employer under the terms and conditions outlined below and is willing to provide such Specialty services.

D.    Employer desires to employ Physician under the terms and conditions outlined below.

### AGREEMENT

In consideration of the above recitals, which are incorporated herein, and the mutual agreements set forth herein, the parties hereto agree as follows:

1.    **EMPLOYMENT.** Employer hereby employs Physician, on a full-time basis (1.0 full-time equivalent (FTE), for the practice of medicine in the care and treatment of patients in the Hospital's Department of Cardiothoracic Surgery ("Department") or at such other hospitals or clinic sites in the Area as Employer may designate from time to time (collectively, hereinafter referred to as the "Practice Sites" or, individually, as a "Practice Site"). Hospital has entered into an Academic Affiliation Agreement, amended and restated, with Drexel University, successor-in-interest to Philadelphia Health and Education Corporation d/b/a Drexel University College of Medicine (the "University") by which it has agreed to provide, among other things, teaching, education and research services to the University through qualified employed physicians specializing in acute health care. It is expressly understood and agreed Employer shall have reasonable discretion to consolidate and relocate clinics operated by Employer in the Area and to redesignate Practice Sites served by Physician from time to time. Physician shall be subject to Employer's employment policies, directives, rules and regulations ("Employer Policies") as promulgated by Employer from time to time, including, but not limited to, those pertaining to employees; provided, however, in the event of any inconsistency between the Employer Policies and this Agreement, the provisions of this Agreement shall prevail. Physician shall retain the right to exercise Physician's independent medical judgment in care and treatment to patients. Employer further acknowledges that Physician has been appointed as Chairman of the Hospital's Department of Cardiothoracic Surgery and Executive Director of the Hospital's Heart Center.

2.    **TERM.** The term of this Agreement ("Term") shall be for a period of five (5) years, commencing on the Commencement Date (as hereinafter defined). The term "Commencement Date" shall mean the date set in the Commencement Certificate attached hereto as **Exhibit A** to the Agreement. As used herein, an "Employment Year" shall mean the annual period beginning on the Commencement Date and each annual period thereafter.

3.    **PHYSICIAN'S OBLIGATIONS.**

a.    **Use of Premises.** Physician shall use the Practice Sites as designated by Employer exclusively for the practice of medicine in the care and treatment of patients, the education and training of medical students and residents, and shall comply with all applicable federal, state, and local laws, rules and regulations.

b.    **Medical Practice.** Physician, as directed by Employer, shall engage in the practice of medicine and education and training activities in the Department and at the Practice Sites (sometimes referred to herein, collectively or individually, as a "Practice"), as reasonably directed by Employer, on a full-time basis, exclusively as an exempt employee of Employer and provide the duties and responsibilities set forth in this Agreement and as further described in Schedule 3.b.1 (Description of General Duties and Responsibilities), Schedule 3.b.2 (Chief of Section of Cardiothoracic Surgery) and Schedule 3.b.3 (Executive Director of the Hospital's Heart Center) attached hereto and incorporated herein by reference. In addition, Physician shall be responsible for a proportionate amount of after-hours, holiday and weekend call coverage for the Practice Sites, which shall be sufficient to serve the Practice Sites' patients in a high quality and professional manner as defined in Schedule 3.b.4 (the "Required Coverage"). The Required Coverage shall be scheduled by Employer, in its sole and reasonable discretion. Except as otherwise provided herein, while this Agreement is in effect, Physician shall not enter into any other physician employment contract or otherwise engage in the practice of medicine, directly or indirectly, except as Employer's employee. Physician acknowledges employees in the Practice Site are under the direct supervision of Employer and/or Employer's designated management staff, for non-clinical services and human resource matters.

c.    **Professional Qualifications.** Physician shall be and remain duly licensed to practice medicine in the State. Upon request of Employer throughout Term, Physician, at Employer's expense, shall obtain a self-query report from the National Practitioner Data Bank ("NPDB") and provide a copy of same to Employer or its designee.

d.    **Medical Staff Privileges.** Physician shall obtain and maintain in good standing such medical staff membership and privileges as required by the medical staff bylaws of each hospital and/or facility at which Employer requires Physician to maintain medical staff membership and privileges, including but not limited to, providing emergency department call coverage. Physician shall obtain and maintain, in good standing, medical staff membership and appropriate privileges based on Physician's Specialty and services to be provided under this Agreement at Hospital. Any action taken with respect to Physician's medical staff privileges shall be solely within the prerogative of Hospital or its medical staff.

e.    **Identifiers.** Physician will obtain and/or maintain an Individual Medicare Provider Number and a National Provider Identifier ("NPI") number prior to the Commencement Date and throughout Term.

f.    **Authority to Contract; Managed Care Entities, Networks and Government Programs.** For and on behalf of Physician, Employer shall have the sole and exclusive right and authority to enter into contractual relationships with insurers, HMOs, IPAs, PPOs, PHOs, ACOs, health care plans, health care payors, third party administrators, employer groups, provider networks, including clinically integrated networks, and other managed care organizations and programs (collectively, "Managed Care Entities") for Employer's and Physician's participation with and provision of services to such Managed Care Entities. As Employer's employee, Physician shall participate and be included in the networks of Managed Care Entities with whom Employer contracts. Physician shall comply with the administrative, utilization management and quality management programs of such Managed Care Entities as agreed to by

2

Employer, consistent with Employer policies and procedures. Upon request from Employer, Physician shall execute Managed Care Entity documents as "provider" if deemed necessary or advisable by Employer. As Employer's employee, Physician shall not independently contract with any Managed Care Entity, whether or not Employer contracts with such Managed Care Entity, nor hold himself/herself out as participating or non-participating with a Managed Care Entity, independent of Employer's participation or non-participation with such Managed Care Entity. Additionally, for and on behalf of Physician, Employer shall have the sole and exclusive right and authority to complete any health care payor and Managed Care Entity enrollment applications on behalf of Physician and Physician agrees to grant Employer access to enrollment systems to facilitate same.

        g.    **Non-Discrimination and Standards of Care.** Physician shall not discriminate in the provision of health care services to members of Managed Care Entities based on race, color, national origin, ancestry, religion, health status, sex, gender identity, marital status, age or source of payment and shall otherwise render health care services in accordance with generally accepted professional, clinical and ethical standards of care and safety and in compliance with all relevant federal, state and local laws and regulations governing and applicable to Physician.

        h.    **Professional Fees.** Employer shall have the exclusive right and authority to set, collect and retain all fees, including professional fees, to be charged to patients of the Practice. All professional fees generated by Physician (including, without limitation, capitated, bundled and risk-based fees, professional retainer fees, honoraria, medical director fees, clinical research payments, professional consulting and teaching fees, on-call fees, earned performance incentive payments of any kind from any source, including, but not limited to, performance-based, value-based and shared savings incentives under payor contracts and incentive payments from payors including government entities for implementing electronic health record ("EHR") technology and completion of health assessments and other forms as may be applicable, and fees for expert testimony, but excluding Physician's private investment and non-professional income) while an employee of Employer, including both cash collections and accounts receivable, will be the sole and exclusive property of Employer, whether received by Employer or by Physician and whether received during the Term or any time thereafter. Physician hereby assigns all rights to said fees and accounts to Employer and shall execute all documents required from time to time by Employer and otherwise fully cooperate with Employer to enable Employer to collect accounts from patients and third-party payors. With respect to any capitation payments, bundled or global payments, shared savings and performance incentive payments of any kind to which Employer may be entitled and which are paid directly to Employer under Employer's contracts with Managed Care Entities which contain such payment mechanisms for provision of health care services to Managed Care Entities' members, Physician acknowledges and agrees that he or she shall not have any interest in such funds. Notwithstanding the foregoing, Employer hereby agrees Physician may retain any fees which may be related to those certain activities set forth on Schedule 3.h attached hereto and made a part hereof ("Outside Activities") or from additional Outside Activities with prior written approval of Employer, subject to the following requirements: (1) Outside Activities must be performed by Physician on Physician's own time; (2) Outside Activities must not interfere with the performance of Physician's duties under this Agreement, or result in diminution in the quality or amount of Physician's service to Employer under this Agreement; (3) Physician may not hold Physician out as Employer's employee while engaged in Outside Activities; (4) Physician agrees to indemnify, defend and hold harmless Employer for any claims, causes of action, damages, losses, attorneys' fees, etc., Employer may incur as a result of the Outside Activities; (5) Physician must obtain and maintain a separate malpractice policy because Physician will not be covered by Employer's policy when engaged in Outside Activities as they are outside the scope of employment; (6) Physician may not utilize any company assets, employees, services, etc., while performing Outside Activities and will not perform such Outside Activities on Employer's premises or while performing services on behalf of Employer; and (7) Physician shall be solely responsible for any applicable federal, state, and local income

tax, self-employment tax, and all other taxes related to income generated by Physician for Physician's own account in accordance with Outside Activities.

      i.    **Teaching and Education.** Physician shall provide teaching and education services to University medical students and the Hospital's residents, and continuing medical education services, as directed by Employer. The teaching and education responsibilities of Physician shall be determined and coordinated by Employer in consultation with the University.

      j.    **Authorization to Release Information.** Physician hereby authorizes Managed Care Entities, certifying agencies, government programs, hospitals and other third parties to release to Employer and its agents any information requested by Employer or its agents from time to time relating to Physician's professional qualifications or competency. Physician agrees to execute the Authorization to Release Information in the form set forth in <u>Schedule 3.j</u> attached hereto and incorporated herein by reference and to execute all other documents required by Employer from time to time and to otherwise fully cooperate with Employer to enable Employer and its agents to obtain such information from third parties.

      k.    **Additional Physicians.** Employer and Physician agree as an essential term of this Agreement that it is the intent of the parties to develop a comprehensive medical practice. It is further understood Employer intends to negotiate and enter into employment relationships with additional qualified physicians. Physician agrees to use best efforts to forge and establish an ongoing relationship and team approach with such additional physicians for the furnishing of professional medical and related services to patients.

      l.    **Use of Electronic Health Records.** Physician hereby agrees to use all electronic health records, electronic prescribing, voice recognition dictation, and any other electronic or automation acquired and implemented by Employer. Moreover, as applicable at Hospital, Physician will: utilize computerized provider order entry; enter all orders in Hospital's electronic health record; and do what is necessary to comply with the meaningful use provision of the Health Information Technology for Economic and Clinical Health Act ("HITECH Act") including, but not limited to, entering orders, performing medication reconciliation, viewing results and nursing documentation, and performing electronic physician documentation, if available.

      m.    **Coding Compliance.** It is Physician's responsibility to accurately code Physician's services with CPT, HCPS, modifiers, ICD-10 codes, or diagnoses in narrative, for accurate reporting to patients and third-party payors whether Physician manually enters such codes or allows the electronic medical record system to select and submit them on his or her behalf. Physician understands submitted codes will represent the services are medically necessary, delivered and documented. Physician agrees to comply with Employer's compliance policies and procedures, including those related to documentation and billing, and to use Physician's best efforts to accurately code Physician's services with the goal of attaining and maintaining a coding error rate of no more than five percent (5%). Physician will participate in coding compliance training, education and audit programs. Upon initial employment, Employer will perform a coding audit covering the first thirty (30) days following the Commencement Date. A coding improvement plan will be developed with Physician to address errors identified in the audit. If Physician's coding error rate exceeds five percent (5%), the plan will include re-audit within three (3) to six (6) months with re-audit until an error rate of five percent (5%) or less is achieved. Thereafter, Physician may be selected for audit on an annual basis. To the extent Physician's coding error rate exceeds five percent (5%) following the first anniversary of the Commencement Date, compensation (as set forth in <u>Schedule 5.a.</u> attached hereto) will be reduced by the actual amount of compensation earned by or attributed to Physician due to Physician's coding errors. Such reduction shall be limited to ten percent (10%) of Physician's Base Salary (as hereinafter defined).

n.    **Completion of Clinical Documentation.** It is Physician's responsibility to submit complete documentation of all clinical encounters in the time frame as specified by the Medical Staff Rules and Regulations (or applicable health information management policy). Complete documentation will include: i) signature or co-signature by Physician of any order or note, and ii) the inclusion of any relevant teaching physician attestation. At no time will the back dating of orders or other documentation be permitted.

o.    **Physician Timekeeping.** For any timekeeping requirements set forth in this Agreement, Physician must timely complete and submit an activity/time log in the form prescribed from Employer from time to time, of the duties and hours performed, by the end of each month following the month in which the services were provided. Once Employer has reasonably determined that Physician has timely and accurately completed the activity/time log in accordance with Employer's Policies, the applicable compensation will be paid to Physician in accordance with Employer's Policies for such services. Physician is required to submit to Employer monthly time logs documenting administrative duties as Chairman of the Hospital's Department of Cardiothoracic Surgery and Executive Director of the Hospital's Heart Center in the form of time log attached hereto as **Exhibit B**.

4.    **SPACE AND SUPPORT.** Employer shall provide Physician with office and clinic space, equipment, supplies, and personnel at the Practice Sites (or, in the case of certain support services, at other locations) as Employer determines to be reasonably necessary, after consultation with Physician, to enable Physician to provide medical services to patients consistent with recognized medical standards. Physician will utilize only equipment and supplies provided by Employer in the Practice Site and will not order additional equipment and supplies without Employer's prior written consent.

5.    **PHYSICIAN'S COMPENSATION.**

a.    **Compensation.** Physician shall be compensated as stated in Schedule 5.a attached hereto and made a part hereof.

b.    **Expenses in the Ordinary Course.** Employer shall reimburse Physician for expenses incurred in the ordinary course of business in accordance with Employer's policies and procedures, which shall be made available to Physician upon request.

c.    **Managed Care Entity Performance Compensation.** Physician acknowledges that under certain contracts with Managed Care Entities, Employer may receive funds, including, but not limited to shared savings and performance and value-based incentive payments, that result from performance, including surpluses generated by cost effective delivery of health care services by Employer. Any portion of such funds and performance based incentive payment attributable to employed physician services shall be distributed to Physician, at Employer's sole discretion, only to the extent Physician is eligible to receive such distribution in accordance with the applicable Managed Care Entity agreement and Employer's distribution policies, including, but not limited to the requirement that Physician be employed by Employer for the full measurement period under the Managed Care Entity agreement and employed on the date of any such distribution. Physician shall not be entitled to any distribution if Physician has not complied with the terms of this Agreement, including, but not limited to, Section 3 hereof.

6.    **PHYSICIAN'S BENEFITS.** Physician will receive employee benefits only as provided in this Agreement. Benefits are subject to amendment from time to time by Employer.

a.  **General Benefits.**  Physician shall receive those general benefits, including paid time off, described in Schedule 6.a attached hereto and incorporated herein by reference.  Benefits are subject to the terms of the plan documents or insurance contracts, as applicable, and may be changed at the discretion of Employer.  To the extent Physician was part of a Practice (2 or more physicians operating under the same legal entity) prior to the Commencement Date, Physician shall be given credit (as established by Employer) for prior service with Practice for eligibility and vesting purposes (but not benefit accrual purposes) under Employer's benefit plans in which Physician is eligible for and offered participation as described in Schedule 6.a.

b.  **Seminars, Professional Dues and Subscriptions, Etc.**  Physician shall be entitled to attend medical seminars.  All related seminar expenses such as travel, meals, and lodging shall be in accordance with and limited by Hospital policy which in most cases requires submission of actual receipts.  Employer will not reimburse or pay for seminars outside of the contiguous United States.  Moreover, during periods of re-negotiation or extensions of this Agreement, and during any period of time following either party having given notice to terminate this Agreement, Employer will not pay or reimburse for seminar costs.  The cost of such attendance, and the cost of Physician's professional dues (excluding medical staff dues pursuant to Subsection 3.h) subscriptions, and books shall be paid by Employer, in an amount not to exceed Eight Thousand and 00/100 Dollars ($8,000.00) in the aggregate in each Employment Year.  Continuing Medical Education ("CME") days are to be scheduled with Employer's approval in advance and subject to the needs of the Practice Sites.  Any such expenses incurred by Physician in excess of such sum set forth herein shall be the sole and exclusive responsibility of Physician and must be paid by Physician.  Physician shall submit to Employer the necessary documentation within sixty (60) days from the end of the month the expense was incurred as required by Employer Policies prior to reimbursement of any expenses.  Physician agrees not to receive any cash, cash equivalent (e.g., gift card), or any item of value in exchange for attending CME seminars reimbursed or paid for by Employer and if received, further agrees to give the cash equivalent of any such item of value to Employer.

7.  **PHYSICIAN'S COVENANTS.**

a.  **Covenants.**  During the Term of this Agreement and for a period of one (1) year after the expiration or termination of this Agreement (unless such termination is by Physician for cause pursuant to Section 9 below), Physician, unless otherwise permitted by the written consent of Employer or listed as an Outside Activity on Schedule 3.h, shall not, on Physician's own account or as an employee, landlord, lender, trustee, associate, consultant, partner, agent, principal, contractor, owner, officer, director, investor, member or stockholder of any other person, or in any other capacity, directly or indirectly, in whole or in part:

(1)     Engage in any activities in competition with Employer, including the operation of any medical practice or offering of any medical services similar to services offered at the Practice Sites, within ten (10) miles of Hospital or five (5) miles of Physician's primary Practice Site where Physician provides medical services to patients of Employer;

(2)     Have any financial interest in any hospital, surgery center, imaging center, outpatient therapy center, clinic or other facility that is competitive with any activity engaged in by Employer or Hospital, within ten (10) miles of Hospital or five (5) miles of Physician's primary Practice Site (collectively, "Competitor(s)").  A "financial interest" includes, without limitation, any direct or indirect ownership or investment interest in a Competitor (except for ownership of securities traded on a recognized stock exchange in which quotations are published daily);

(3)     Solicit or encourage the resignation of any employee of Employer or a third-party,

6

including but not limited to, the practice management service provider, with whom Physician had a working relationship during Physician's employment with Employer;

(4)     Solicit or divert patients with whom Physician had personal contact during such employment; or

(5)     Influence or attempt to influence any payor, provider or other person or entity to cease, reduce or alter any business relationship with Employer relating to the Practice Sites.

b. **Construction and Enforcement.** The covenants on the part of Physician in Subsection 7.a above shall be construed as an agreement independent of any other provision in this Agreement, and the existence of any other claims or causes of action by Physician against Employer, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by Employer of said covenants. Physician acknowledges and agrees the restrictions set forth in Subsection 7.a above are necessary for the protection of Employer's legitimate business and professional interests and are reasonable in scope and content. The parties recognize if the provisions in Subsection 7.a above are breached or threatened to be breached by Physician, the extent of actual damages sustained by Employer will be difficult to ascertain, although great and irreparable, and compensation at law will be inadequate, and money damages alone may not be an appropriate measure of the harm to Employer from such continuing breach, especially because Physician's employment is part of a long range business plan. Therefore, the parties expressly agree Employer shall have the right to injunctive relief for breach or threatened breach of such provisions, in addition to any other available legal or equitable remedies. Physician shall indemnify and hold Employer harmless with respect to all of Employer's costs and expenses (including attorneys' fees and costs) in successfully enforcing such provisions. If any portion of any covenant or its application is construed to be invalid, illegal or unenforceable then the other portions or their application shall not be affected thereby and shall be enforceable without regard thereto. If any covenant is determined to be unenforceable because of its scope, duration, geographic area or similar factor, then the court or arbitrator making such determination shall have the power to reduce or limit such scope, duration, geographic area or other factor and such covenant shall then be enforceable in its reduced or limited form.

8.    **TERMINATION.**

a. **Termination Without Right of Cure.** Employer may terminate this Agreement effective immediately upon written notice to Physician under the following circumstances: (i) the failure to obtain and maintain, or the denial, suspension, revocation, termination, restriction, lapse or voluntary relinquishment (under threat of disciplinary action) of Physician's membership or medical staff privileges at any health care facility including Hospital for any reason, or Physician's license to practice medicine in any jurisdiction including the State, (ii) Physician's death, (iii) Physician's failure or inability to perform Physician's duties under this Agreement for ninety (90) consecutive days, (iv) Physician's acts or conduct materially detrimental to patient care or to the reputation or operations of Employer and/or the Practice Sites (as determined in Employer's sole discretion), (v) Physician's repeated or routine (as determined in Employer's sole discretion) failure to complete all notes and documentation for each patient encounter (including, but not limited to, inpatient consults, operative reports, and ambulatory encounters) in Employer's electronic medical record system (the "EMR") and/or properly close each such encounter in the EMR within seventy-two (72) hours of the applicable encounter, (vi) Physician's repeated and routine (as determined in Employer's sole discretion) failure to comply with the timekeeping requirements in accordance with Employer's Policies, (vii) Physician's failure to follow (as determined in Employer's sole discretion) Employer's policies and procedures and other rules of conduct applicable to all employees of Employer, including, without limitation, policies prohibiting sexual harassment, (viii) Physician's conviction of an offense related to health care or Physician's listing by a federal agency as being debarred,

excluded, or otherwise ineligible for federal program participation, (ix) the termination, revocation, restriction or relinquishment of Physician's Drug Enforcement Agency number, (x) the breach by Physician of the representations and warranties set forth in Section 13 hereof, (xi) Physician's willful failure or refusal to perform any lawful duties set forth in this Agreement, including those duties set forth in Schedules 3.b.1, 3.b.2, 3.b.3 & 3.b.4 hereof; (xii) the breach by Physician of any of the Professional Fees provisions set forth in Section 3.h. hereof, (xiii) the breach by Physician of the confidentiality provisions of this Agreement, and (xiv) Physician's willful misconduct, gross negligence, or breach of fiduciary duties in the performance of his or her duties (as determined in Employer's sole discretion). Additionally, Physician certifies that his or her application for credentialing by Employer contains true and correct information and agrees to notify Employer immediately of any material change therein. Physician acknowledges that any material misstatement in, or omission from, his or her credentialing application shall constitute cause for immediate termination of this Agreement.

The causes for termination described in this Subsection 7.a do not require thirty (30) days' notice nor give the right of a thirty (30) day cure.

b. **Termination With Right of Cure.** Employer may terminate this Agreement with cause by written notice to Physician upon the failure by Physician to observe or perform any of the material covenants, conditions or provisions of this Agreement including the duties and responsibilities described in Schedule 3.b (other than the circumstances set forth in Subsection 7.a above) where such failure shall continue for a period of thirty (30) days after written notice thereof has been given by Employer; provided, however, if the nature of the non-compliance is such that more than thirty (30) days is reasonably required for its cure, then Physician shall not be deemed to be in default if Physician has commenced such cure within the said thirty (30) days and thereafter is diligently pursuing such cure to completion.

c. **Termination Without Cause.** Either party may terminate this Agreement without cause by giving the other party hereto at least three hundred sixty-five (365) days' prior written notice. If such notice is given by Employer, Employer may, in its sole discretion, at any time prior to the effective date of such termination, remove Physician from Physician's position hereunder, as long as Employer continues to pay Physician all compensation and benefits due under this Agreement until the effective date of such termination. If such notice is given by Employer during Productivity Compensation Period, Employer will set Physician's remaining compensation at the draw amount in effect on the date of notice.

d. **Termination for Changes in Law.** In the event any governmental or nongovernmental agency, or any court or administrative tribunal passes, issues or promulgates any new, or change to any existing, law, rule, regulation, standard, interpretation, order, decision or judgment (individually or collectively, "Legal Event"), which a party (the "Noticing Party") reasonably believes (i) materially and adversely effects either party's licensure, accreditation, certification, or ability to refer, to accept any referral, to present a bill or claim, or to receive payment or reimbursement from any governmental or non-governmental payor, or (ii) implicates a Legal Event with which the Noticing Party desires further compliance, then, in either event, the Noticing Party may give the other party thirty (30) days prior written notice of its intent to amend or terminate this Agreement. Notwithstanding the foregoing, the Noticing Party may propose an amendment to the Agreement to take into account the Legal Event and, if accepted by the other party prior to the end of the thirty (30) day notice period, the Agreement shall be amended as of the date of such acceptance and if not amended shall automatically terminate.

9. **TERMINATION BY PHYSICIAN.** Physician may terminate this Agreement with cause by written notice to Employer upon the failure of Employer to observe or perform any of the material covenants, conditions or provisions of this Agreement when such failure shall continue for a period of thirty (30) days after written notice thereof has been given by Physician; provided, however, if the nature of the

8

non-compliance is such that more than thirty (30) days is reasonably required for its cure, then Employer shall not be deemed to be in default if Employer has commenced such cure within the said thirty (30) days and thereafter is diligently pursuing such cure to completion.

10.    **PATIENT MEDICAL RECORDS.**  All patient medical records of the Practice, including, without limitation, patient medical records generated during the Term, shall be the property of Employer subject always to the rights of the respective patients.  Upon the expiration of this Agreement or the termination of this Agreement by either party for any reason, Employer will retain custody and control of such patient medical records and, at Employer's discretion, Employer shall be responsible to send required notices to patients.

11.    **PHYSICIAN/PATIENT RELATIONSHIP.**  Physician shall be responsible for the quality of medical care rendered to patients assigned to Physician in the Practice.  Physician shall perform all services with respect to the diagnosis and treatment of patients in such manner as the Physician, in the independent exercise of Physician's medical judgment, deems to be in the best interests of the patients, subject only to a quality assurance and peer review program of Employer. Employer shall not, except as provided in this Agreement, exercise control or supervision over patient care and medical judgment of Physician.

12.    **MISCELLANEOUS.**

a.    **Schedules, Headings, Inclusive Words, Severability.**  The schedules and exhibits attached hereto constitute a part of this Agreement and are incorporated herein by reference in their entirety as if fully set forth in the Agreement at the point where first mentioned herein. The headings of this Agreement are inserted for convenience only and are not to be considered in the construction of the provisions hereof and shall not in any way limit the scope or modify the substance or context of any section or paragraph hereof. Unless the context otherwise requires, any terms of the Agreement which indicate the neuter of any gender shall be held to include the neuter and the other gender, as the case may be; and the words in singular shall be held and construed to include the plural and vice versa. The provisions of this Agreement shall be severable. The unenforceability of any provision of this Agreement shall not affect the validity of the remaining provisions hereof, unless either party should determine in its sole and complete discretion such term or provision materially or adversely affects the benefit of its bargain under this Agreement in which case said party may terminate this Agreement without further liability to the other party hereto. To the extent the time or geographic boundaries of any provision are deemed unreasonable by a court or arbitrator, the parties agree the Agreement shall be amended to set forth the maximum limits allowed by law.

b.    **Confidentiality.**  Physician agrees to maintain and hold as confidential and to not disclose the terms of this Agreement or any confidential or proprietary information Physician may be provided during the Term of this Agreement to any other person (with the exception of Physician's legal counsel, accountant, or financial advisors), unless disclosure thereof is required by law or otherwise authorized by the Agreement or consented to in writing by Employer.  With respect to any patient or medical record information regarding the Practice Site or Hospital patients, Physician shall comply with all federal and state laws and regulations, and all bylaws, rules, regulations, and policies of Employer and Hospital and its medical staff, regarding the confidentiality of such patient health information, including, without limitation, all applicable provisions and regulations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The provisions of this Subsection shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

9

c.  **Marketing and Advertising.** Employer may engage in marketing or advertising activities respecting the Practice and the Practice Sites and Physician shall participate as reasonably requested.

d.  **Proprietary Information and Intellectual Property.**

(1)  Physician acknowledges during Physician's employment hereunder Physician will have contacts with and develop and service the patients of Employer and referring sources of business of Employer. In all of Physician's activities, Physician, through the nature of Physician's work, will have access to and will acquire confidential information related to the business and operations of Employer, including, without limiting the generality of the foregoing, patient lists and confidential information relating to processes, plans, methods of doing business and special needs of referring doctors and patients. Physician acknowledges all such information is solely the property of Employer and constitutes proprietary and confidential information of Employer; and the disclosure thereof would cause substantial loss to the goodwill of Employer; and disclosure to Physician is being made only because of the position of trust and confidence Physician will occupy. The parties agree confidential information does not include information (i) generally known and used by persons with expertise comparable to Physician; (ii) common knowledge in the industry; or (iii) available in the public domain.

(2)  Physician covenants, except as required by law, Physician will not, at any time during the Term or any time thereafter, disclose to any person, hospital, firm, partnership, entity or organization (except when authorized in writing by Employer) any information whatsoever pertaining to the business or operations of Employer, any affiliate thereof or of any other physician employed by Employer, including, without limitation, any of the kinds of information described in this Subsection. Physician agrees throughout the Term and at all times thereafter not to make any disparaging remarks to any third party concerning Employer or any of its officers or directors or any other comments to any third party which might damage or adversely affect the reputation, goodwill or business of Employer or any of its officers or directors.

(3)  Physician acknowledges and agrees all Work Product (as defined below) is the exclusive property of Employer as a work made for hire, as that term is defined under federal copyright law. Title to any Work Product, including, but not limited to, any inventions or discoveries, is the property of Employer. Physician shall promptly disclose to Employer in writing such Work Product and, upon request of Employer, will execute all documents and take all actions reasonably necessary to assist Employer in protecting its intellectual property rights in such Work Product. Additionally, Physician shall not publish or publicly distribute or disseminate any such Work Product without Employer's prior written consent, which shall not be unreasonably withheld. For purposes of this provision, "Work Product" means all rights, title and interest in and to any reports, documents, plans, data, inventions, discoveries, or other work product prepared, developed, or resulting from, or arising out of, or relating to, the Practice or Physician's obligations under this Agreement, including, without limitation: all documentation, materials, notes, outlines, and the like created in connection therewith; all formulas, processes, algorithms, ideas, inventions, know how, techniques, and other information generated by Physician during the course of Physician's performance under this Agreement; the copyright, patent, trademark, trade secret, and other proprietary rights therein; and any intermediate and partial versions thereof or derivative works created there from.

(4)  The provisions of this Subsection shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

13.  **ARBITRATION.** Excluding any action for injunctive relief only, any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment

hereof, or the breach hereof shall be determined and settled by arbitration in Philadelphia County, Pennsylvania, in accordance with the Employer's Fair Treatment Process ("FTP"), a comprehensive method for affording fair procedure and resolving employment-related disputes, as detailed in Employer's Human Resources Policy and Procedures manual. The Policy is in Human Resources. **Physician further acknowledges receipt of documentation regarding the Open Door Policy and Fair Treatment Process, including the arbitration process, prior to executing this Agreement.** It is understood and mutually agreed Physician shall be considered a Facility Management employee at the Department Head level or above for purposes of processing grievances pursuant to the FTP. It is further understood and mutually agreed, to the extent permitted by law, Physician may not join any such claim or dispute with the dispute of another employee in a class, collective, representative or group action. Arbitration under the Fair Treatment Process is limited to individual disputes, claims or controversies a court of law would be authorized or have jurisdiction over to grant relief, and by agreeing to the use of arbitration to resolve disputes, the parties agree to forego any right to a jury trial on issues covered by the Fair Treatment Process. If the provisions of this section conflict with the provision of the FTP, the provision of this section shall prevail. Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereof may be entered in any court having jurisdiction thereof. The costs of arbitration shall be borne equally by both parties, provided each party shall bear the fees and costs of attorneys or other persons representing the interests of such party. During the pendency of any such arbitration and until final judgment hereon has been entered, this Agreement shall remain in full force and effect unless otherwise terminated as provided hereunder.

14.    <u>**REPRESENTATIONS AND WARRANTIES.**</u>    Physician represents and warrants to Employer, upon execution and throughout the Term of this Agreement, as follows: (a) Physician is not bound by any Agreement or arrangement which would preclude Physician from entering into, or from fully performing the services required under this Agreement; (b) Physician's license to practice medicine or Drug Enforcement Agency Number in the State or in any other jurisdiction has never been denied, suspended, revoked, terminated, voluntarily relinquished under threat of disciplinary action, or restricted in any way; (c) Physician's medical staff privileges at any health care facility have never been denied, suspended, revoked, terminated, voluntarily relinquished under threat of disciplinary action, or made subject to terms of probation or any other restriction; (d) Physician shall perform the services required hereunder in accordance with (i) all applicable federal, state, and local laws, rules and regulations; (ii) all applicable standards of The Joint Commission or other relevant accrediting organizations; and (iii) all applicable Bylaws, Rules, and Regulations of Hospital and its medical staff; (e) Physician has not in the past conducted and is not presently conducting, Physician's medical practice in such a manner as to cause Physician to be suspended, excluded, debarred or sanctioned under the Medicare or Medicaid Programs or any government licensing agency, and has never been convicted of an offense related to health care, or listed by a federal agency as debarred, excluded or otherwise ineligible for federal program participation; (f) Physician has, and shall maintain throughout the Term of this Agreement, an unrestricted license to practice medicine in the State and staff membership and privileges at Hospital; (g) Physician shall immediately notify Employer if Physician is required to pay damages in any malpractice action by way of judgment or settlement; (h) Physician shall immediately notify Employer if Physician becomes the subject of a disciplinary or other proceeding or action before any governmental, professional, medical staff, or peer review body; (i) Physician shall notify Employer within five (5) business days of the receipt of a health care liability claim or upon learning Physician is under investigation by a governmental agency or licensing board; (j) other than as disclosed in writing to Employer, Physician has not had an action or claim against Physician based on an allegation of malpractice by Physician which has been settled or otherwise resolved by the patient to a plaintiff or claimant of any amount of money during the five-year period preceding the Commencement Date; and (k) other than as disclosed in writing to Employer, a final judgment in a malpractice action awarding money has not been entered against Physician during the five-year period preceding the Commencement Date; (l) Physician shall disclose in writing to Employer any arrest, charge, or criminal

11

conviction, excluding misdemeanor traffic tickets, within five (5) business days and (m) all information provided by Physician as part of the credentialing process is true and correct and Physician shall notify Employer in writing within one (1) business day if any information on Physician's credentialing application becomes untrue, for any reason. Each of the representations and warranties set forth herein shall be continuing and in the event any such representation or warranty fails to remain true and accurate during the Term, Physician shall immediately notify Employer.

15.    **ENTIRE AGREEMENT; MODIFICATIONS; GOVERNING LAW; COUNTERPARTS; NOTICES; WAIVER; ASSIGNMENT; THIRD PARTY BENEFICIARIES**. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the parties relating to such subject matter. This Agreement may not be amended or modified except by mutual written agreement of Employer and Physician. This Agreement shall be construed in accordance with the laws of the State and shall survive the expiration or other termination of this Agreement. This Agreement may be executed in one or more counterparts, all of which together shall constitute only one Agreement. All notices hereunder shall be in writing, delivered personally, by certified or registered mail, return receipt requested, or by overnight courier, and shall be deemed to have been duly given when delivered personally or when deposited in the United States mail, postage prepaid, or deposited with the overnight courier, addressed at the place identified on the signature page below. A waiver by either party of a breach or failure to perform hereunder shall not constitute a waiver of any subsequent breach or failure. Physician shall not assign or transfer, in whole or in part, this Agreement or any of Physician's rights, duties or obligations under this Agreement without the prior written consent of Employer, and any assignment or transfer by Physician without such consent shall be null and void. This Agreement is assignable by Employer without consent or notice. Nothing in this Agreement, either expressly or implicitly, confers, or intends to confer, any rights or remedies upon any person or entity not a party to this Agreement, except as otherwise specifically stated herein.

16.    **COMPLIANCE OBLIGATIONS**. Physician represents Physician has read, understands, and shall abide by Employer's Standards of Conduct. Physician shall comply with Employer's Compliance Program and Employer's policies and procedures related to the Deficit Reduction Act of 2005, Anti-Kickback Statute and the Stark Law. Employer's Standards of Conduct, summary of Compliance Program, and policies and procedures, including a summary of the Federal False Claims Act and applicable state false claims laws (collectively "False Claims Laws") with descriptions of penalties and whistleblower protections pertaining to such laws, are available from Employer upon request. Further, the parties to this Agreement certify they shall not violate the Anti-Kickback Statute and Stark Law, and shall abide the Deficit Reduction Act of 2005, as applicable, in performing services to Employer or Hospital. Hardcopies of any information shall be made available upon request.

17.    **AFFIRMATION OF STARK AND ANTI-KICKBACK COMPLIANCE.** By signing this Agreement, Physician affirms to the best of his/her knowledge and understanding, the employment under this Agreement and the compensation set forth herein, is not conditioned upon or determined based on the volume or value of any referrals to Employer or its affiliates. Physician further affirms he/she has not solicited or received any offer to be paid any compensation by Employer and/or Employer's affiliates, directly or indirectly, overtly or covertly, in cash or in-kind to induce or reward the referral, purchase, order, lease or recommendation of any item or service payable under a federal health care program. Each of the affirmations set forth herein shall be continuing and in the event any such representation or warranty fails to remain true and accurate during the Term, Physician shall immediately notify Employer.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the dates set forth below.

EMPLOYER:  SCHC Pediatric Associates, L.L.C.

By: _____
Name: Joel Freedman
Title:  President
Address: 1500 Market Street
Suite 2400, West Tower
Philadelphia, PA  19102

PHYSICIAN: Achintya Moulick, M.D., M.S., M.CH.

By: _____ , 11/7/2018
Achintya Moulick, M.D., M.S., M.CH.
Address:  200 West Washington Square, #4303
Philadelphia, PA 19106

13

SCHEDULE 3.b.1

DESCRIPTION OF DUTIES AND RESPONSIBILITIES

Physician agrees the duties and responsibilities listed below are reasonable and agrees to abide by such duties and responsibilities during the Term of the Agreement. Physician acknowledges and agrees additional duties not contemplated below may arise from time to time while providing medical care for his/her patients. To the extent additional duties arise during the course of Physician's employment, Physician agrees to use his/her best efforts to carry out those obligations, whether originated by Physician or requested by Employer.

1.  Physician is expected to have an average of no less than forty (40) available clinical patient care and administrative hours (as Chairman of the Hospital's Department of Cardiothoracic Surgery and Executive Director of the Hospital's Heart Center) per week ("Minimum Hours") in the Practice Site, Hospital, and other Practice locations as scheduled by Employer. Physician acknowledges it may take more than the Minimum Hours per week to complete required clinical and administrative activities due to other associated activities, including but not limited to, documentation and coordination of patient care, administrative duties and responsibilities.

2.  Physician is expected to see patients as they reasonably present in the Practice Site.

3.  Physician is expected to see same day walk-in patients as reasonable patient demand dictates.

4.  Physician will reschedule or cancel patients only in unavoidable or emergency situations.

5.  Physician will make every effort to maintain patient schedule in an efficient manner such that patients are seen promptly and without unreasonable delays. Physician will see urgent patients, or make arrangements for all urgent patients, to be seen and treated promptly regardless of time of arrival.

6.  Physician will complete all patient medical records in accordance with applicable by-laws, policies, and procedures of Employer and/or the applicable facility. Physician agrees to document patient visits in accordance with federal, State, and payor regulations. Patient visit documentation will be completed by Physician by the end of the visit day.

7.  Physician shall utilize the Electronic Health Record System in place or to be put in place at the Practice Site and shall use all electronic prescribing, voice recognition dictation, and any other electronic or automation acquired and implemented by Employer and Hospital's computerized provider order entry as applicable.

8.  Physician will use best efforts to ensure that residents and fellows comply with the foregoing medical records standards.

9.  Hospital fee slips shall be turned into the Practice manager or designee on the first work day following the hospital visit. Office fee slips shall be completed by the Physician and submitted on the day of the patient visit. If an electronic medical record is used by Employer, Physician will document all office and hospital visits within the timeframes outlined in Employer's procedures.

10. Physician agrees to utilize Practice Site's electronic medical record, take all required training and timely enter all required documentation. Practice Site's physical medical records shall not be removed from Practice Site.

11. Physician will consistently treat Practice employees, colleagues, patients and their families and others who accompany patients to office and hospital visits in a professional, respectful manner.

12. Physician is expected to see all patients presenting to the Practice, without regard to race, sex, religion, financial status, sexual orientation, or insurance class.

13. Physician will not fire and/or dismiss patients from the Practice without prior conversation with the Employer or Employer's practice manager. Procedures will be established on how to resolve conflicts among providers and patients and Physician may not transfer care to another provider without ensuring continuity of care for the patient.

14. Physician will participate in and cooperate with the peer review, Quality Improvement and Quality Management programs and procedures of Employer.

15. Physician shall comply with all rules, regulations, and policies established by Employer, the Occupational Health and Safety Administration, all Federal, State, and local agencies, and other accreditation organizations. Physician will comply with all Medicare, Medicaid, and other third party payor reimbursement rules and OIG compliance standards. Physician shall comply with and participate in any Ethics Training Programs and Compliance Training Programs established by Employer and Hospital.

16. Physician shall assist Employer in the investigation, documentation, and resolution of any issue arising out of Employer's dealings with peer review and all regulatory agencies having jurisdiction relating to the Practice Site.

17. Physician will exercise best efforts to assist Employer to build the Practice patient base through networking, emergency room coverage, community outreach to educated community on program, extended/weekend hours and other reasonable marketing activities as requested by Employer and in accordance with Employer's policies and procedures.

18. At Employer's request, Physician will participate in Employer volume growth initiatives, such as telemedicine and virtual appointments.

19. Physician shall cooperate fully with Employer and facility credentialing office, including providing, in a timely manner, the information necessary to process credentialing materials relating to Physician for health insurers, state and federal agencies, and other health organizations.

20. Physician shall review and acknowledge by signature Physician's annual performance targets and shall use best efforts to meet or exceed those targets.

21. If required, Physician will actively participate in Hospital medical staff committees as assigned by the medical staff.

22. Physician will assist Hospital in maintaining five (5) Star Patient satisfaction, if applicable.

23.     Physician will work actively with Hospital case management to efficiently follow patient care plans and discharge patients when medically appropriate, if applicable.

24.     If applicable, Physicians will cooperate with Hospital's physician advisor or delegate from the utilization management plan for the Hospital in complying with Hospital policies regarding appropriate bed placement and admission criteria.

25.     If required, Physician will actively participate in new program development for Hospital. Physician involvement may include meetings, development of evidence based protocols, collaboration with Hospital and non-Hospital employed physician groups.

26.     To the extent Physician provides patient care at Hospital, Physician will participate in Hospital's Medicare Performance Improvement ("MPI") initiatives and other performance management and innovation initiatives as they pertain to increasing quality, efficiency and effectiveness for care delivered to patients. Participation may include meetings, development and adoption of evidence based protocols and review of practitioner and group data.

27.     Physician will take all training and education courses reasonably required by Employer.

28.     If approved by Employer, Physician may participate in clinical research studies. Employer must approve participation in each study, in writing.

29.     At Employer's request, accompany an Employer representative to meals at which such Employer representative and Physician discuss issues relating to Physician's duties under this Agreement, provided the meal is modest as judged by local standards and occurs in a venue conducive to a meeting.

30.     Physician will use means of electronic communication provided or otherwise approved by Employer, including but not limited to an Employer-issued email account, to communicate regarding work-related matters. Physician further acknowledges and agrees Physician shall be deemed to have constructively received any email communications from Employer sent to Physician's Employer-issued email account.

31.     Physician shall build relationships to revitalize and grow the Department.

32.     Physician shall work with the Chief of Cardiology for the cardiac product line to develop and grow the program.

SCHEDULE 3.b.2

**Chief of the Section of Cardiothoracic Surgery**

DUTIES AND RESPONSIBILITIES

**Achintya Moulick, M.D., M.S., M.Ch.**

Physician shall serve as the chief of the section ("Section Chief") of cardiothoracic surgery ("Operational Unit"). As Section Chief, Physician shall ultimately be responsible for operational, fiscal, and human resource management of the professional staff within his/her Operational Unit as described below, as well as corporate management responsibilities as assigned by Employer.

## OPERATIONAL MANAGEMENT

1. Oversee and manage the Operational Unit's development of a strategic plan, which is compatible with and supportive of the organization's mission.

2. Oversee and manage the Operational Unit's preparation of an annual departmental report for review by the leadership council of the Hospital (the "Leadership Council").

3. Serve as chair during regular meetings of professional staff within the Operational Unit.

4. Provide data and management reports concerning the Operational Unit to the Pediatrician-in-Chief of Surgery on a regular basis. As required, assist Pediatrician-in-Chief/Chief of Surgery in resolving issues, including those concerning resource utilization, productivity, and access to the Operational Unit, patient satisfaction, and other administrative functions.

5. Address intra- and inter-Operational Unit issues as necessary.

6. Ensure that all operations within the Operational Unit are consistent with basic organization policies as promulgated and adopted by the Employer, the medical executive committee ("Medical Executive Committee"), Leadership Council, and Hospital.

## FISCAL MANAGEMENT

1. Prepare an Operational Unit budget to be presented to the Leadership Council with support of the Practice Administrative Director and Chief Financial Officer or their respective designees. Such budget will include the:

   a. Projected income and direct costs for the Operational Unit;

   b. Prioritization of equipment requests; and

   c. Prioritization of space and remodeling requests.

2. Monitor the performance of the Operational Unit throughout the year as compared to budget and analyze budget variances.

3. Collaborate with other Operational Units to ensure the units collectively maximize financial

performance while maintaining a position of medical excellence.

4. Consult with the Hospital's Chief Executive Officer, the University's Chair of Pediatrics, and the Employer's Chief Administrative Officer and Chief Financial Officer on a regular basis concerning the financial performance of the Operational Unit.

## HUMAN RESOURCE MANAGEMENT

1. Recruit professional staff.

2. Prospectively develop, review, and approve plans for the recruitment of physicians to the Hospital's Medical Staff and Employer.

3. Complete performance evaluations for each professional staff member of the Operational Unit.

4. Participate as requested in the review of the Hospital's compliance with requirements relative to the Graduate Medical Education Program, clinical accreditation bodies, and any other applicable review agencies.

5. Manage the performance of each physician staff member of the Operational Unit.

6. Ensure the highest quality of professional practice within the Operational Unit.

7. Ensure that the Operational Unit provides appropriate information to allow external and internal reviewers and the Medical Executive Committee to objectively evaluate the clinical performance of the unit's staff.

8. Provide leadership and mentoring to professional medical staff within the Operational Unit.

9. Ensure that the Operational Unit and its staff adhere to Employer's organizational policies regarding human resource management.

10. Monitor and ensure high quality education and research programs in the Operational Unit.

## ORGANIZATIONAL RESPONSIBILITIES

1. Participate on other organizational committees and task forces as requested by Employer. While the Section Chief is directly responsible for the Operational Unit, his/her perspective is expected to encompass the functioning and performance of the entire organization.

SCHEDULE 3.b.3

## DUTIES OF EXECUTIVE DIRECTOR OF THE HEART CENTER

### Achintya Moulick, M.D., M.S., M.Ch.

Physician shall serve as the Physician Executive Director of the Heart Center (the "Heart Center") which includes the Sections of Cardiothoracic Surgery, Regional Fetal Evaluation Center, Extracorporeal Membrane Oxygenation (ECMO) unit, Cardiac Intensive Care Unit, Interventional Cardiology, Electrophysiology and General Cardiology. Physician Executive Director of the Heart Center shall have an overall focus and direction of implementing a cohesive, structured system across the enterprise, recruiting key staff as needed and charting a course for vigorous growth in all areas, while balancing consistent clinical delivery, driving quality initiatives, and developing service standards. Physician Executive Director will be accountable for, in cooperation with the leadership of the Heart Center ("Heart Center Operational Leadership"), developing, and executing short and long-term Heart Center services strategic plans for Employer's enterprise, and engaging administration, clinical leadership, providers, and staff to facilitate enterprise alignment. The Physician Executive Director shall ultimately be responsible for operational, fiscal, and human resource management of the professional staff within the Heart Center as described below.

## OPERATIONAL MANAGEMENT

1. In cooperation with Employer's leadership and the Heart Center Operational Leadership, Physician Executive Director shall have oversight in the Operational Unit's development of a short and long term strategic plan, which has alignment with the overall strategic plan and mission of Employer.

2. Work collaboratively across Employer's enterprise to influence and lead clinical efforts to improve healthcare in the communities we serve.

3. Oversee collection and reporting of clinical quality metrics and clinical outcomes.

4. Explore and develop business opportunities working closely with Employer's leadership and enterprise clinical leadership to expand geographic coverage of current programs into new markets as well as new programs and services related to the Heart Center.

5. Serve as chair during regular meetings of professional staff within the Operational Unit.

6. Work collaboratively across Employer's enterprise to influence and lead clinical efforts to improve and further develop the Heart Center Clinical Programs regionally with a strong focus on quality metrics.

7. Provide data and management reports concerning the Heart Center to Hospital's Chief Executive Officer regularly. As required, assist Pediatrician-in-Chief/Chief of Surgery in resolving issues, including those concerning resource utilization, productivity, and access to the Heart Center, patient satisfaction, and other administrative functions.

8. Ensure that all operations within the Heart Center are consistent with basic organization policies as promulgated and adopted by the Employer, Medical Executive Committee, Leadership Council, and Hospital.

9. Oversee data reporting to relevant external entities to ensure the quality of the Heart Center continues and grows.

## FISCAL MANAGEMENT

1. Direct oversight in the development and management of the annual Heart Center budget for presentation to the Leadership Council with support of the Heart Center Operational Leadership and the Hospital's Chief Financial Officer or their respective designees.

2. Monitor the performance of the Heart Center including physician productivity throughout the year and analyze budget variances. Provide continuous and regular communication, in cooperation with Heart Center Operational Leadership, regarding budget performance and provider productivity.

3. Consult with the Hospital's Chief Executive Officer, the University's Chair of Pediatrics, Employer's Chief Administrative Officer, and Employer's Chief Financial Officer on a regular basis concerning the financial performance of the Operational Unit.

## HUMAN RESOURCE MANAGEMENT

1. Provide leadership in support of the interests of physicians, physician organizations, including physician recruitment and development of relational models. Work with private practice physicians to develop partnership models. Coordinate with internal and external medical groups, other health systems, health plans, hospitals, and shared services employees to establish, design or provide an effective and efficient continuum of Heart Center services.

2. Prospectively develop, review and approve plans for the recruitment of Heart Center physicians with an understanding of and plan for productivity and return on investment model.

3. Participate as requested in the review of Hospital's compliance with requirements relative to the Graduate Medical Education Program, clinical accreditation bodies, and any other applicable review agencies.

4. Manage the performance of each physician staff member of the Heart Center.

5. Provide leadership, mentoring, and performance evaluations for each professional medical staff member within the Heart Center.

## SCHEDULE 3.h

### OUTSIDE ACTIVITIES

1.    Expert testimony fees (e.g., medical malpractice expert) and speaking engagements for which Physician has obtained the approval of Employer. Such approval shall not be unreasonably withheld, prior to providing or agreeing to provide (whether orally or in writing) any expert testimony or public presentation.

2.    Expert testimony will be limited to three (3) cases per year unless additional approval is sought from Employer. Approval for an additional case may be granted to those physicians who give a minimum 30-minute lecture to their department on an element of medicine or clinical practice learned from their expert work. Expert testimony for a plaintiff may not take place in the State or any state that shares a border with the State. Physicians practicing in New Jersey have the same limitation. Physicians who practice in both states (Pennsylvania and New Jersey) may not serve as a plaintiff's expert in any state sharing a border with the State or New Jersey.

3.    Consulting Services, speaking engagements (e.g., Honoraria), or writing (provided any such activities for pharmaceutical companies or medical device manufacturers requires specific, written approval of Employer).

SCHEDULE 3.j

AUTHORIZATION TO RELEASE INFORMATION

**Achintya Moulick, M.D.**

I, the undersigned physician, hereby authorize SCHC Pediatric Associates, L.L.C. ("Employer") and its duly authorized representatives to obtain information from time to time about my professional education, training, licensure, competence, ethics and character from any source having such information. This information may include, without limitation, peer review information, DRG analysis, ancillary usage information and other utilization and quality related data.

I hereby release Employer, its authorized representatives and any third parties from any liability for actions, recommendations, statements, reports, records or disclosures, including privileged and confidential information, involving me that are made, requested, taken or received by Employer or its authorized representatives to, from or by any third parties in good faith and relating to or arising from my professional conduct, character and capabilities.

I agree this authorization to release information shall remain effective until termination of my employment by Employer. A duplicate of this authorization may be relied upon to the same degree as the original by any third party providing information pursuant to Employer's request.

_____
Signature

11/07/2018
_____
Date

23

SCHEDULE 5.a

COMPENSATION

a.      **Base Salary.**  Physician shall receive an annual salary (the "Base Salary") in the amount of Eight Hundred and Ninety-Nine Thousand and 00/100 Dollars ($899,000.00).  Employer shall pay Physician the Base Salary, monthly or bi-weekly in accordance with Employer's policy. Notwithstanding anything in this Schedule 5.a to the contrary, Physician's compensation under this Agreement shall always remain consistent with fair market value as required by applicable law.

b.      **Performance Incentive Payments.**  In addition to the Base Salary compensation described above, Employer shall also pay Physician the additional amounts provided for in this Subsection b. (1) ("Level One"), (2) ("Level Two") or (3) ("Level Three") respectively (the "Performance Incentive Payments") to the extent that the performance standards related to each such payment are satisfied. The aggregate performance incentive payments shall not exceed Four Hundred Thousand and 00/100 Dollars ($400,000.00) for each Employment Year. After the end of each Employment Year, Employer shall determine the Performance Incentive Payments payable to Physician, to the extent that the performance standards related to each such payment are satisfied, as determined in Employer's sole discretion. All such payments shall be made within forty-five (45) days of the final reconciliation of the Performance Incentive Payments for the preceding Employment Year.

Promptly, but in no event more than thirty (30) days, after the end of each Employment Year, Employer shall provide a report to Physician setting forth Employer's determination of Physician's performance in each of the categories covered by this Subsection b.  If requested by Physician, Employer and Physician shall meet to discuss any questions and disagreements relating to Physician's performance as reflected in any such report; it being understood that the Performance Incentive Payments may not be altered by a party after final annual reconciliation by the parties pursuant to the requirements of this Section.

(1)  **Level One Performance Incentive Payments.**  For each Employment Year, Employer shall pay Physician Two Hundred Thousand and 00/100 Dollars ($200,000.00) if, during such Employment Year, Physician meets **all** of the performance standards set forth below:

(a)  **Quality Maintenance:** The St. Christopher's Heart Center (sometimes hereinafter referred to as, the "Program") shall maintain its Society of Thoracic Surgeons (STS) Congenital Heart Surgery 2-star certification; and

(b)  **Program Growth:** The Heart Center shall have a total of 100 Index Cases. "Index Cases" are defined as patients entering into the Heart Center requiring a surgical or interventional procedure; and

(c)  **Program Development:** To have fully staffed the approved number of cardiologists as agreed upon with Employer and its management.

(2)  **Level Two Performance Incentive Payments.**  For each Employment Year, Employer shall pay Physician Three Hundred Thousand and 00/100 Dollars ($300,000.00) if, during such Employment Year, Physician meets **all** of the performance standards set forth below:

24

(a) **Quality Maintenance:** The Program shall maintain an overall mortality rate within 5% of the previous year's mortality rate and also maintain the Congenital Heart Surgery 2-star certification by the STS; and

(b) **Program Growth:** The Heart Center will have a total of 125 Index Cases; and

(c) **Program Development:** Physician shall have successfully launched a transport Extracorporeal Membrane Oxygenation (ECMO) program. The program entails having an ECMO setup that can travel to neighboring institutions in initiating the ECMO process on patients at facilities where such capabilities do not exist.

(3) **Level Three Performance Incentive Payments.** For each Employment Year, Employer shall pay Physician Four Hundred Thousand and 00/100 Dollars ($400,000.00) if, during such Employment Year, Physician meets **all** of the performance standards set forth below:

(a) **Quality Maintenance:** The Program will maintain an overall mortality rate within 5% of the previous year's mortality rate and also maintain the Congenital Heart Surgery 2-star certification by the STS; and

(b) **Program Growth:** The Heart Center shall have a total of 150 Index Cases; and

(c) **Program Development:** To have successfully performed a cardiac transplant at Hospital and launched the cardiac transplant program. The success of the transplant will be evidenced by survival twelve (12) months post procedure.

SCHEDULE 6.a

GENERAL BENEFITS

1.      **Employee Benefits**. Physician shall be entitled to participate in benefits maintained by Employer, pursuant to the terms and conditions of such plans, which may be changed at the sole discretion of Employer.  The following is a listing of current benefits available to physicians at this time:

a.      **Employer's Physician Time Off Plan**. Physician is entitled to take part in a time-off program providing income replacement, when taking approved time off from scheduled work in each Employment Year for vacation, sick time, continuing medical education ("CME") and holidays. Although no set amount of time off is provided or guaranteed and may be changed in Employer's sole discretion at any time, at the time of the execution of Agreement, full-time physicians are generally entitled to take up to thirty (30) days of time off per calendar year (pro-rated based on Commencement Date).  The thirty (30) days includes Employer recognized Holidays and CME days.  Vacation and CME days are to be scheduled with Employer's approval in advance and subject to the needs of the Practice Sites.  If Physician does not take off all of the days to which Physician is entitled under this plan during an Employment Year, Physician shall not be entitled to receive any compensation for such unused days nor may any such unused days be used in any other Employment Year.  If this Agreement is terminated for any reason by either party or expires, Physician shall forfeit any accrued but unused paid time off, to the extent permitted by applicable law.

b.      **Employer's Employee Benefit Plan**, which is a comprehensive welfare benefit plan providing various benefits including, medical benefits, dental benefits, vision benefits, life insurance benefits, long-term disability benefits, accidental death and dismemberment benefits and health care and dependent day care flexible spending account benefits.  If applicable, Physician is entitled to Practice years of service credit (as established in <u>Section 6.a.</u> of Agreement) for purposes of determining plan eligibility.

c.      **Healthcare Corporation 401(k) Retirement Savings Plan**, which is a qualified retirement plan, including a cash or deferred arrangement described in section 401(k) of the Internal Revenue Code with an employer matching contribution feature.

d.      **Employer's Deferred Compensation Plan**, which is a nonqualified deferred compensation plan within the meaning of the Employee Retirement Income Security Act of 1974 and the Internal Revenue Code.

2.      **Medical Staff Dues**.  The cost of medical staff application fees and medical staff dues at Hospital shall be paid by Employer after the Commencement Date of this Agreement.

3.      **Medical Malpractice Insurance.**

a.      Medical Malpractice Insurance.  During the Term, Physician shall be provided with claims made or occurrence medical malpractice insurance coverage and Mcare coverage in the amounts required annually by the Commonwealth of Pennsylvania. Should Physician qualify as a participant under the Pennsylvania Medical Care Availability and Reduction of Error Act (MCare), such participation shall be

26

procured and retained by Employer at the limits of liability promulgated annually by the Commonwealth of Pennsylvania. Unless otherwise provided herein, Employer shall have no responsibility for providing coverage for Physician's acts prior to the Commencement Date of this Agreement any prior physician employment agreement between Physician and Employer, provided there was no lapse in employment. Further, Employer shall have no responsibility for providing coverage or for services rendered outside the scope of this Agreement unless approval is granted by the CEO. This coverage shall apply to all services rendered regardless of location provided the Physician is acting within the scope of his or her employment. If the coverage maintained during the Term is claims-made coverage, then upon expiration or termination of this Agreement, Employer will purchase at its cost an extended reporting period policy or "tail" policy on behalf of the Company and the Physician for medical malpractice claims arising out of medical malpractice incidents occurring during Physician's employment. Should this Agreement be terminated for cause, Physician may be required to purchase tail insurance. If Employer purchases tail coverage for Physician before the natural termination of this Agreement, Employer does not waive any rights or remedies it may have against Physician for breach of contract or other claims.

b.       During the Term of this Agreement and thereafter, the parties recognize certain risk management issues, legal issues, claims or actions may arise which involve or could potentially involve the parties and their respective affiliates, other employees and agents. The parties further recognize the importance of cooperating with each other in good faith when such issues, claims, or actions arise, to the extent such cooperation does not violate any applicable laws, cause the breach of any duties created by any policies of insurance, or otherwise compromise the confidentiality of communications or information regarding the issues, claims or actions.

**Exhibit A**

**Commencement Certificate**

The Commencement Date shall mean ___November 8___, 20 _1 8_

REVIEWED BY THE LEGAL DEPARTMENT:

By: _____

Samantha Gross

*The date above will be inserted by The Legal Department after the contract has all blanks filled in, has been signed by all parties thereto and has been faxed or emailed to The Legal Department. The Physician Practices CEO should assure that the original contract is mailed to The Legal Department promptly after it has been faxed or emailed.*

**EXHIBIT B**

Achintya Moulick, M.D., M.S., M.CH.                    Month/Year: _____
Title: Executive Director, Heart Center

**IMPORTANT NOTICES:** All information recorded on this Log must be legible.  Please <u>print or type</u> all information.   Please <u>total your hours prior to submitting</u> this Log to your hospital representative.   Time expended shall be logged using quarter hour increments as follows:  (i) 15 minutes should be logged as 0.25, (ii) a half hour log as 0.5, (iii) log 45 minutes as 0.75, and (iv) log one hour as 1.0.

| Date Activity Performed | Duty From List Above | Time Expended (log as noted above) | Activities Performed Under this Duty (Brief Description of Activity is **REQUIRED**) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTAL** | | | |

By signing this document, the Executive Director, Heart Center hereby affirms and attests that the Services, number of hours recorded for such Services, and all designated duties required during this month set forth herein were performed.

_____                    11/7/18
**Executive Director, Heart Center**                         **Date**

By signing this document, the Director of Practice Plan Operations, SCHC Pediatric Associates, L.L.C. affirms and attests he has reviewed the above Log for completeness, legibility, and overall compliance with the terms of the Agreement.

_____                    _____
**Director of Practice Plan Operations**                         **Date**

By signing this document, the Chief Compliance Officer hereby affirms and attests he has reviewed the above Log for completeness, legibility, and overall compliance with the terms of the Agreement.

_____                    _____
**Chief Compliance Officer**                                         **Date**

By signing this document, the CEO affirms and attests that he has confirmed that the Services rendered and the number of hours recorded for such Services.

_____                    _____
**Chief Executive Officer**                                         **Date**

**EXHIBIT B**

Achintya Moulick, M.D., M.S., M.CH.                     Month/Year: _____
**Title:  Chairman, Department of Cardiothoracic Surgery**

**IMPORTANT NOTICES:** All information recorded on this Log must be legible.  Please print or type all information.   Please total your hours prior to submitting this Log to your hospital representative.   **Time expended shall be logged using quarter hour increments as follows:  (i) 15 minutes should be logged as 0.25, (ii) a half hour log as 0.5, (iii) log 45 minutes as 0.75, and (iv) log one hour as 1.0.**

| Date Activity Performed | Duty From List Above | Time Expended (log as noted above) | Activities Performed Under this Duty (Brief Description of Activity is **REQUIRED**) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

By signing this document, the Executive Director, Heart Center hereby affirms and attests that the Services, number of hours recorded for such Services, and all designated duties required during this month set forth herein were performed.

_(signature)_                                             11\7\18
_____                    _____
**Executive Director, Heart Center**                              **Date**

By signing this document, the Director of Practice Plan Operations, SCHC Pediatric Associates, L.L.C. affirms and attests he has reviewed the above Log for completeness, legibility, and overall compliance with the terms of the Agreement.

_____                    _____
**Director of Practice Plan Operations**                          **Date**

By signing this document, the Chief Compliance Officer hereby affirms and attests he has reviewed the above Log for completeness, legibility, and overall compliance with the terms of the Agreement.

_____                    _____
**Chief Compliance Officer**                                    **Date**

By signing this document, the CEO affirms and attests that he has confirmed that the Services rendered and the number of hours recorded for such Services.

_____                    _____
**Chief Executive Officer**                                     **Date**

**SCHEDULE 3.b.4**

**CALL REQUIREMENT SCHEDULE**

Physician shall be responsible to participate in the Department of Cardiothoracic Surgery call coverage schedule, with no additional compensation on a pro-rated departmental basis, as mutually determined by the Chair of the Department (the "Required Call"). Physician's Required Call responsibility includes availability for the following:

1.  Any in hospital emergent cardiothoracic surgical needs;

2.  Trauma patients requiring emergent cardiothoracic surgery;

3.  Provide consultation for potential incoming patients from neighboring facilities;

4.  Provide consultation on pre- and post-operative patients requiring emergent cardiothoracic intervention; and

5.  Address any cardiothoracic emergencies after a cardiac catheterization or other surgical procedures.