# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) Jointly Administered |
| Debtors. | ) **Related to Docket No. 950** |

## DEBTORS' LIMITED OBJECTION TO MOTION OF NG 1500 MARKET ST. LLC FOR AN ORDER COMPELLING DEBTOR PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC TO IMMEDIATELY PAY UNPAID POST-PETITION RENT AND OTHER OBLIGATIONS UNDER UNEXPIRED LEASE PURSUANT TO 11 U.S.C. § 365(D)(3) AND 503(B)(1)

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") submit this limited objection (the "**Objection**") to the *Motion of NG 1500 Market St. LLC for an Order Compelling Debtor Philadelphia Academic Health System, LLC to Immediately Pay Unpaid Post-Petition Rent and Other Obligations under Unexpired Lease Pursuant to 11 U.S.C. § 365(d)(3) and 503(b)(1)* [D.I. 950] (the "**Motion**"), which was filed by NG 1500 Market St. LLC ("**Nightingale**" or the "**Landlord**"). In support of their Objection, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

## RELEVANT FACTUAL BACKGROUND

1. On June 30 and July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases

2. Prior to the filing of the Chapter 11 Cases, the Debtors and the Landlord were parties to a lease agreement (as amended, the "**Centre Square Lease**") for office space located at Centre Square, 1500 Market Street, West Tower, 24th Floor, Suite 2400, Philadelphia, Pennsylvania (the "**Premises**").

3. Because the Debtors determined that they no longer required their office space at the Premises, the Debtors filed a motion to reject the Centre Square Lease on October 31, 2019 [D.I. 938]. On November 13, 2019, the Court entered an order authorizing the rejection of the Centre Square Lease, effective as of October 31, 2019 [D.I. 997]. The Debtors vacated the Premises and returned the keys and access cards thereto to the Landlord prior to close of business on October 31, 2019.

## OBJECTION

4. By the Motion, Nightingale seeks: (i) payment of Unpaid Post-Petition Obligations (as defined in the Motion) in the amount of $117,364.04; and (ii) *immediate* payment of such Unpaid Post-Petition Obligations, within three business days following the entry of an order granting the Motion.

5. The Debtors do not dispute the asserted claim amount of $117,364.04 and are willing to agree to treatment of such claim as an administrative expense claim. Nightingale's request for immediate payment of this claim, however, should be denied.

-3-

6. Section 365(d)(3) of the Bankruptcy Code provides that "the trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."  11 U.S.C. § 365(d)(3).

7. In *DBSI*, this Court ruled that the appropriate remedy for a debtor's failure to timely pay lease obligations is to compel rejection of the lease – which has already occurred in the present case – rather than immediate payment of the obligations. *See DBSI, Inc.*, 407 B.R. 159, 164 (Bankr. D. Del. 2009) (holding that "§ 365(d)(3) should not be read to provide for an administrative claim as a potential penalty" but that "an appropriate remedy for a violation of § 365(d)(3) is to cause the lease to be rejected in a timely fashioned matter").  Moreover, in *DBSI*, Judge Walsh "agree[d] with those courts that do not automatically allow an administrative claim as the penalty for violation of § 365(d)(3)."  Rather, after holding that the remedy for non-compliance with section 365(d)(3) is timely rejection of the lease, Judge Walsh analyzed whether and to what extent the landlord was entitled to an administrative expense claim pursuant to section 503(b)(1). *See id.* at 165-66.

8. While, as noted above, the Debtors have agreed to treat the Unpaid Post-Petition Obligations as an administrative expense claim, case law is clear that courts have discretion as to *when* administrative expense claims are paid. *See In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (explaining that "[t]he determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court").  In *Global Home Products*, this Court explained that "[t]o qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability

to pay." *In re Global Home Products*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006). This Court also considered the following three factors in determining an entitlement to immediate payment: (1) the prejudice to the debtors, (2) hardship to the claimant, and (3) potential detriment to other creditors. *Id.* at *4; *see also In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) (applying three-factor test as to landlord's 503(b) claims); *In re Bookbinders' Restaurant, Inc.*, No. 06-12302, 2006 WL 3858020, at *4 (Bankr. E.D. Pa. Dec. 28, 2006) (applying three-factor test in denying immediate payment to 503(b)(9) claimant).

9. An application of these factors to the present case weighs against compelling immediate payment. First, compelling the Debtors to pay immediately the Landlord's asserted post-petition claim would cause immediate and substantial harm to the Debtors' businesses, as well as other creditors and parties in interest, since the Debtors would be required to divert funds budgeted for other critical purposes in order to pay the Landlord's claims. Moreover, as reflected in the DIP budget attached to the Final DIP Order [D.I. 557], if the Debtors are required to immediately pay the Unpaid Post-Petition Obligations, the Debtors would likely be forced to cut costs on expenses and supplies that are necessary to ensure smooth operations and patient care at STC. Such a payment is further not permitted under the terms of the DIP Facility, as reflected in MidCap's limited objection to the Motion [D.I. 1063].

10. In comparison to the severe harm that would be suffered by the Debtors if the Debtors were required to pay immediately the Unpaid Post-Petition Obligations, the Landlord has failed to demonstrate any hardship warranting the prompt payment of its administrative claim. On the contrary, in the Motion, the Landlord acknowledges that the Centre Square Lease has been rejected, the Premises have been surrendered, and that, as such, the Landlord is free to abandon any remaining personal property at the Premises and re-let the space to another tenant.

This is therefore not a situation where the Debtors are requiring Nightingale to continue to perform services without being paid.  The Debtors acted as promptly as possible in seeking to minimize the incurrence of post-petition amounts to be paid to the Landlord.   As such, the Landlord will not be unfairly prejudiced if any allowed administrative expense claim is not required to be paid on a current basis.

11. Based on the foregoing, and in light of the fact that the hardship to the Debtors and other creditors greatly outweighs any hardships faced by the Landlord, the Court should exercise its discretion by denying Nightingale's request for prompt payment

[remainder of page left intentionally blank]

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court enter the order, substantially in the form attached hereto as **Exhibit A**, granting the Motion only insofar as it seeks payment of the Unpaid Post-Petition Obligations as an administrative expense claim.

Dated: December 5, 2019	**SAUL EWING ARNSTEIN & LEHR LLP**

By:	*/s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Counsel for Debtors and Debtors in Possession*