IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>*Debtors.* | Chapter 11<br><br>Case No. 19-11466 (KG)<br>(Jointly Administered)<br><br>Re: Docket No. 1096 |

**MOTION TO (I) SHORTEN TIME FOR NOTICE AND RESPONSE TO THE EMERGENCY MOTION OF GROUP OF FORMER RESIDENTS, FELLOWS AND MEDICAL STAFF OF ST. CHRISTOPHER'S HEALTHCARE, LLC AND AFFILIATED DEBTOR ENTITIES TO ENFORCE THE SALE ORDER APPROVING THE ST. CHRISTOPHER'S TRANSACTION AND TO ENFORCE THE ASSET PURCHASE AGREEMENT, OR, IN THE ALTERNATIVE, TO RECONSIDER THE SALE ORDER APPROVING THE ST. CHRISTOPHER'S TRANSACTION, AND (II) SCHEDULE AN EXPEDITED HEARING**

Certain former residents, fellows and medical staff of St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., St. Chris Care at Northeast Pediatrics, L.L.C., and/or TPS V of PA, L.L.C. (collectively, the "Former Physician Group"),[2] by and through undersigned counsel, hereby file this motion (the "Motion to Shorten") under section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 9006(c)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9006-1(e) of the Local Rules of Bankruptcy Practice

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] The Former Physician Group is comprised of not less than 71 former residents, fellows and medical staff of St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., St. Chris Care at Northeast Pediatrics, L.L.C., and/or TPS V of PA, L.L.C.

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for entry of an order (i) to shorten time for notice and response to the *Emergency Motion of Group of Former Residents, Fellows and Medical Staff of St. Christopher's Healthcare, LLC and Affiliated Debtor Entities to Enforce the Sale Order Approving the St. Christopher's Transaction and to Enforce the Asset Purchase Agreement, or, in the Alternative, to Reconsider the Sale Order Approving the St. Christopher's Transaction* (the "Enforcement Motion")[3] filed contemporaneously herewith; (ii) allowing the Enforcement Motion to be heard at a hearing (the "Hearing") **prior to December 13, 2019**, the scheduled closing date of the Sale; and (iii) permitting interested parties to raise objections to the Enforcement Motion by a date and time set by the Court (the "Objection Deadline").  In support of this Motion to Shorten, the Former Physician Group respectfully represents as follows:

## JURISDICTION

1.　　This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.　　The predicates for the relief sought by this Motion to Shorten are Rule 9006 of the Bankruptcy Rules and Local Rules 9006-1(c) and 9006-1(e).

## BACKGROUND

3.　　Prior to the Debtors' bankruptcy filing, members of the Former Physician Group were employed by the Debtor Parties.  Each member of the Former Physician Group has an employment contract that, as an employment benefit for the physician, specifies the insurance coverages to be provided by the Debtor Parties upon expiration or termination of such

---

[3] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Enforcement Motion.

employment contract or the expiration or cancellation of the insurance policies. Such contracts generally provide that the Debtor-party shall continue to maintain coverage for the physician under its then current claims made policy for the period of time required under the statute of limitations or, should the Debtor-party cease to maintain claims-made coverage, the Debtor-party shall purchase at its cost an extended reporting period policy or "tail" policy on behalf of the Debtor-party and the physician for medical malpractice claims arising out of medical malpractice incidents occurring during the physician's employment (the "Tail Coverage Benefit").

4. Currently, the Debtor Parties provide their current and former residents, physicians and other healthcare professionals medical malpractice insurance coverage through several claims made insurance policies that are set to expire on January 11, 2020.

5. On July 16, 2019, the Debtors filed their motion seeking to sell substantially all of the Debtor Parties' assets [Docket No. 205] (the "Sale Motion").

6. On September 23, 2019, the Court held a hearing on the Sale Motion (the "Sale Hearing"). At the Sale Hearing, the Debtor Parties made the following representations to the Court about tail coverage:

> Mr. Minuti proffering the testimony of Allen Wilen, Chief Restructuring Officer: The buyer is purchasing tail insurance coverage to cover the debtor parties and continuing resident[sic], subject to splitting the costs with the debtors 50/50 with the debtors' obligation cap at $2 million dollars. *Transcript* at 33:21 – 33:24.

7. The foregoing representations are based on a requirement in Section 8.6 of the APA that provides as follows:

> Tail Coverage. OpCo Buyer shall have obtained the Tail Coverage. For purposes of this Agreement, "Tail Coverage" means the reporting endorsement to insure against professional liabilities of the Debtor Parties and the Hospital residents and fellows as of the Closing Date, including any excess and umbrella coverage, in amounts and coverage satisfactory to OpCo Buyer in its sole discretion. Sellers shall be responsible to pay

3

> one half of the cost of the Tail Coverage, up to a cap on Sellers' contribution of Two Million Dollars ("<u>Sellers' Tail Coverage Expense</u>").

APA, § 8.6 (underlining added).

8. Nothing in the statements made to the Court at the Sale Hearing sought to qualify the tail insurance coverage to be provided to cover only personnel continuing in the employ of OpCo Buyer. Nothing in the APA requiring Tail Coverage limits it to personnel of the Debtor Parties that remain in the employ of OpCo Buyer. The APA clearly and unambiguously states that "Tail Coverage means the reporting endorsement to <u>insure against professional liabilities of the Debtor Parties … as of the Closing Date</u>." "Professional liabilities of the Debtor Parties as of the Closing Date" necessarily includes the obligations of the Debtor Parties to provide the Tail Coverage Benefit to their former residents, fellows and other medical staff. Those obligations have not gone away.

9. Despite the clear and unambiguous language of the APA and the unqualified representations to the Court at the Sale Hearing, upon information and belief, the parties to the APA do not intend to follow the Tail Coverage requirement, but rather seek to limit Tail Coverage to those personnel that remain in the employ of OpCo Buyer after the upcoming sale.

**RELIEF REQUESTED**

10. By this Motion to Shorten, the Former Physician Group respectfully requests that the Court enter an order (a) shortening notice pursuant to Local Rule 9006-1(e) with respect to the Enforcement Motion so that the relief requested therein can be heard prior to the closing of the Sale; (b) permitting parties to file and serve objections to the approval of the Enforcement Motion, up to the Objection Deadline to be established by the Court; (c) allowing the Enforcement Motion to be heard on an expedited basis at the Hearing set by the Court, and (d)

granting such other and further relief to the Former Physician Group as the Court deems appropriate.

## BASIS FOR RELIEF REQUESTED

11. Local Rule 9006-1(c) requires that, unless the Bankruptcy Rules or the Local Rules provide otherwise, all motion papers shall be filed and served at least fourteen (14) days prior to a hearing date scheduled for such motion. Bankruptcy Rule 9006(e)(1) allows the Court for cause shown to reduce the time period specified by other Bankruptcy Rules. Fed. R. Bankr. P. 9006(c)(1). Similarly, Del. Bankr. LR 9006-1(e) provides in pertinent part that "no motion will be scheduled on less notice than required by these Local Rules or the Fed. R. Bankr. P. except by order of the Court, on written motion . . . specifying the exigencies justifying shortened notice."

12. The Former Physician Group respectfully submits that the exigencies of this matter justify considering approval of the Enforcement Motion on an expedited basis at the proposed Hearing before December 13, 2019. In the context of the present cases, a hearing on the Enforcement Motion prior to the scheduled Sale closing of December 13, 2019, is necessary. Failure to obtain the Court's expedited consideration of the Enforcement Motion would gravely prejudice the rights of the Former Physician Group, deprive them of the benefits they were entitled to receive for their work for the Debtors, and expose them to liability and expenses for which they received assurances that they would not be exposed.

13. As indicated in the Enforcement Motion, the decision to <u>not</u> notify the affected former residents, fellows and other physicians of the Debtor Parties that the Debtor Parties and OpCo Buyer do not intend to provide them the Tail Coverage Benefit was intentional. They cannot now claim prejudice for a mess of their own making. But for certain concerned

physicians still with the Debtor Parties reaching out, the Former Physician Group would never have known about their plight until after the Sale closed.

14. With respect to Local Rule 9006-1(e), the undersigned counsel has not reached out to Debtors' counsel to see if they oppose the relief requested herein because Debtors' counsel has failed to even provide him with confirmation regarding their intention to not provide the Tail Coverage Benefit to former residents, fellows and other physicians of the Debtor Parties despite his repeated efforts that began the evening of November 25, 2019. The Office of the United States Trustee does not oppose the expedited consideration of the Enforcement Motion. The undersigned has attempted to reach Mr. Sherman, counsel for the Creditors' Committee, but has not been able to speak with him as of this writing.

## NOTICE

15. Notice of this Motion will be given to (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Creditors' Committee; and (d) all creditors that have requested notice under Fed. R. Bankr. P. 2002.

## NO PRIOR REQUEST

16. No prior request for the relief sought in this Motion has been made to this Court or any other Court.

WHEREFORE, the Former Physician Group respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: December 5, 2019

  */s/ David W. Carickhoff*
David W. Carickhoff (DE 3715)
ARCHER & GREINER, P.C.
300 Delaware Ave., Suite 1100
Wilmington, DE 19801
Telephone: 302-777-4350
Facsimile: 302-777-4352
Email: dcarickhoff@archerlaw.com

*Attorneys for the Former Physician Group*

217704342v2