**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a ) | Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, ) | (Jointly Administered) |
| *et al.*,¹ ) | |
| Debtors. ) | **Re: Docket No. 1096** |
| ) | |

**OBJECTION OF THE STC OPCO PARTIES TO EMERGENCY MOTION OF GROUP OF FORMER RESIDENTS, FELLOWS AND MEDICAL STAFF OF ST. CHRISTOPHER'S HEALTHCARE, LLC AND AFFILIATED DEBTOR ENTITIES TO ENFORCE THE SALE ORDER APPROVING THE ST. CHRISTOPHER'S TRANSACTION AND TO ENFORCE THE ASSET PURCHASE AGREEMENT, OR, IN THE ALTERNATIVE, TO RECONSIDER THE SALE ORDER APPROVING THE ST. CHRISTOPHER'S TRANSACTION**

STC OpCo, LLC ("STC OpCo"), Drexel University, and Tower Health, Inc. (collectively, the "STC OpCo Parties"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the *Emergency Motion of Group of Former Residents, Fellows and Medical Staff of St. Christopher's Healthcare, LLC and Affiliated Debtor Entities to Enforce the Sale Order Approving the St. Christopher's Transaction and to Enforce the Asset Purchase Agreement, or, In the Alternative, to Reconsider the Sale Order Approving the St. Christopher's Transaction* [D.I. 1096] (the "Motion").² In support of the Objection, the STC OpCo Parties respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatrics Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**INTRODUCTION**

1.  Movants, the Former Physician Group, a "group of former residents, fellows, and medical staff," of St. Christopher's Hospital for Children (the "Hospital"), only recently identified on December 11, 2019 [D.I. 1127], claim an entitlement to medical malpractice tail coverage purchased by STC OpCo, the buyer of the Hospital, and/or the Debtors. They ground this claim on the assertions either that (a) the APA (as hereinafter defined) requires such purchase of coverage, or (b) if the APA does not so require, the Sale Order (as hereinafter defined) should be reconsidered and amended to insert such a requirement into the APA, because its absence was, mistakenly or deliberately, not disclosed, entitling Movants to relief under Rule 60(b) of the Federal Rules of Civil Procedure.[3]

2.  Both of these arguments are unavailing. With respect to the first, the Former Physician Group lacks standing to enforce any provision of the APA, as they are not third party beneficiaries thereof, and in any event, the APA is clear on its face that the only tail coverage purchase obligation of STC OpCo thereunder arises with respect to the selling Debtor entities themselves, and to Hospital residents and fellows *as of the closing date*. The Former Physician Group members are not, by their own admission, current residents or fellows of the Hospital.

3.  Nor is the Former Physician Group entitled to seek a modification of the Sale Order compelling an amendment to the APA. In the first instance, the Motion is procedurally defective, as it should have been brought under Rule 59 of the Federal Rules of Civil Procedure made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9023, and is untimely under that Rule. Moreover, even if Rule 60 were to apply, there was no mistake or

---

[3] The Movants also separately assert an entitlement to the purchase of tail coverage by the Debtors under Pennsylvania's Wage Payment and Collection Law. *See* Motion, at ¶¶ 23-25. That issue is properly considered as part of the claims allowance process, and is unrelated to the APA, to any obligations of STC OpCo thereunder, or to the Sale Order.

misrepresentation entitling the Former Physician Group to relief. Argument and testimony at the Sale Hearing (as hereinafter defined) were consistent and clear – only current residents and fellows are entitled to tail coverage under the APA.

4. Finally, even if the Former Physician Group could fairly argue that they were unaware of the tail coverage limitation under the APA, and that their lack of awareness entitled them under Rule 60(b) to seek reconsideration of the Sale Order and amendment of the APA, they have asserted no substantive basis for compelling the relief they seek. The sale of the Hospital was by its terms free and clear of liens, claims, liability, and encumbrances under section 363 of the Bankruptcy Code, STC OpCo was under no obligation to assume *any* tail coverage obligations under the APA, and so was free to circumscribe, as it did, any tail coverage or other obligations that it did agree to assume.

## BACKGROUND

5. On July 1, 2019, St. Christopher's Healthcare, LLC ("SCH") and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6. On July 16, 2019, the Debtors filed the *Debtors' Motion for Entry of (A) an Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Debtors and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to Any Stalking Horse Purchasers, and (IV) Granting Related Relief; and (B) One or More Orders (I) Approving the Sales or Other Acquisition Transactions for the*

*Assets, (II) Authorizing the Sales Free and Clear of All Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 205] (the "St. Christopher's Sale Motion") seeking to establish bidding procedures and the scheduling of a hearing on the sale of substantially all of the assets of SCH, SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHS Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., and TPS V of PA, L.L.C. (collectively, the "SCH Debtors"). On July 26, 2019, the Court entered an order approving the bidding procedures proposed in the St. Christopher's Sale Motion [D.I. 301] (the "Bidding Procedures Order").

7. Drexel and Tower Health submitted a bid pursuant to the Bidding Procedures Order through STC OpCo, a limited liability company formed to acquire certain assets of the SCH Debtors. The Debtors deemed the bid of STC OpCo and the bid of a second interested party to be qualified bids and decided to proceed with an auction for the SCH Debtors' assets. However, only representatives for STC OpCo appeared for the auction scheduled for the morning of September 19, 2019. The Debtors sought to have STC OpCo increase its bid, resulting in the Debtors and STC OpCo spending the next two days negotiating an asset purchase agreement on terms acceptable to both parties. After extensive discussions, upon reaching agreement on the terms and form of an asset purchase agreement for the SCH Debtors' assets, the Debtors cancelled the auction and designated STC OpCo as the purchaser of substantially all of the assets of the SCH Debtors. On the evening of September 20, 2019 the Debtors filed a notice cancelling the auction, attaching the resulting asset purchase agreement (the "Original APA"). *See* D.I. 753.

8. On September 23, 2019, the Court held a hearing to approve the sale of substantially all of the assets of the SCH Debtors to STC OpCo (the "Sale Hearing").

9. On September 27, 2019, the Court entered the *Order Under 11 U.S.C. §§ 105, 363, 365, 503 and 507 (A) Approving Asset Purchase Agreement With STC OpCo, LLC (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the Debtors' Executory Contracts, and (D) Granting Related Relief* [D.I. 795] (the "Sale Order") approving an asset purchase agreement between the SCH Debtors and STC OpCo, LLC (as modified from the Original APA as a result of the Sale Hearing, the "APA") for the sale of substantially all of the assets related to the operation of the Hospital.

10. The sale of the Hospital to STC OpCo is anticipated to close as of December 15, 2019.

11. On December 5, 2019, the Former Physician Group filed the Motion contending that the APA requires the SCH Debtors and STC OpCo to provide medical malpractice tail coverage to the Former Physician Group and other former physicians, or in the alternative, seeking an amendment to the Sale Order compelling the insertion of such a requirement.

**OBJECTION**

**A. The APA Does Not Require the Purchase of Tail Coverage for Former Medical Staff.**

12. The Former Physician Group's principal argument in support of the relief they seek is that the APA itself, by its terms, requires STC OpCo to purchase tail coverage for former residents and fellows at the Hospital (*i.e.* residents and fellows no longer employed by the Hospital, and who will not be employed by STC OpCo after closing under the APA), and should be so enforced. The Motion states that "[n]othing in the APA limits it to personnel of the Debtor

5

Parties that remain in the employ of [STC OpCo]." Motion, at ¶ 6. The Motion cites to Section 8.6 of the APA as support for this proposition.

13. As an initial matter, even if the APA contained such a tail coverage requirement as the Former Physician Group contends, the Former Physician Group has not established that it has any standing to seek enforcement of the provisions of the APA. The APA itself expressly states that:

> None of the provisions contained in this Agreement are intended by the parties, nor shall they be deemed, to confer any benefit on any person not a party to this Agreement, except for (a) the parties' successors and permitted assigns and (b) any liquidating trustee or plan administrator for Sellers' estate.

APA, at § 13.10. The Former Physician Group members are none of the enumerated beneficiaries under the APA.

14. More importantly, aside from standing issues, the APA, and in particular the very Section 8.6 of the APA that is relied upon by the Former Physician Group, makes clear that the APA does *not* require purchase of tail coverage for former residents and fellows, or for former members of the medical staff. In fact, Section 8.6 makes no mention of medical staff members at all.

15. Section 8.6 of the APA provides as follows:

> **Tail Coverage**. OpCo Buyer shall have obtained the Tail Coverage. For purposes of this Agreement "**Tail Coverage**" means the reporting endorsement to insure against professional liabilities of *the Debtor Parties and the Hospital residents and fellows as of the Closing Date*, including any excess and umbrella coverage, in amounts and coverage satisfactory to OpCo Buyer in its sole discretion. Sellers shall be responsible to pay one half of the cost of the Tail Coverage, up to a cap on Sellers' contribution of Two Million Dollars ("**Sellers' Tail Coverage Expense**").

APA, at § 8.6 (italicized emphasis added). The APA defines the Debtor Parties to be the SCH Debtors, Philadelphia Academic Medical Associates, LLC, Philadelphia Academic Medical

6

Associates, LLC, SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., St. Chris Care at Northeast Pediatrics, L.L.C., and TPS V of PA, L.L.C.  APA, at p. 1.

16.     Contrary to the assertion by the Former Physician Group that "nothing in the APA limits" the tail coverage option to *current* personnel, that is precisely what Section 8.6 does – it limits the tail coverage obligation to residents and fellows *"as of the Closing Date."*  There is no suggestion, express or implied, that former residents, fellows, or medical staff who are not employed at the Hospital as of the closing date are entitled to tail coverage.

17.     In support of its backwards reading of the APA to require tail coverage for former residents, fellows, and medical staff rather than, as is in fact the case, to exclude such coverage, the Motion also asserts that "[nothing] in the statements made to the Court at the Sale Hearing sought to qualify the tail insurance coverage to be provided to cover only personnel continuing in the employ of [STC OpCo]."  Motion, at ¶ 6.  This again gets it exactly backwards.

18.     First, in his proffered testimony at the Sale Hearing, Mr. Wilen testified that "[t]he buyer is purchasing tail insurance coverage to cover the debtor parties and *continuing resident[s]*."  Transcript of September 23, 2019 Sale Hearing ("TR"), at 33:21-22 (emphasis added).[4]

19.     Similarly, Mr. Matthews, President and CEO of STC OpCo, in his proffered testimony, testified that

> [I]t is STC Opco's intent to purchase tail insurance, both primary and excess coverage, for St. Christopher's, for the hospital itself, and also for its *employed physicians* including residents.

TR, at 49:23-50:2 (emphasis added).

---

[4] The pages of the Transcript of September 23, 2019 Sale Hearing cited in this Objection are attached hereto as Exhibit A.

20. Mr. Minuti, counsel for the Debtors, made the same point in his presentation to the Court, stating that "[i]n addition, Your Honor, a critical element here is the buyer is going to be purchasing tail insurance coverage to cover the debtor parties and *continuing residents*. TR, at 11:13-15 (emphasis added).

21. In other words, the parties to the APA (STC OpCo and the SCH Debtors) all agreed on the meaning of Section 8.6. All represented to the Court that Section 8.6 was intended to limit the obligation of STC OpCo to purchase tail coverage to (a) the Debtor Parties, and (b) the residents and fellows as of the closing date. The Former Physician Group is asking this Court to interpret a contract term to mean something that no party to the contract intended, which is contrary to this Court's well established doctrine of enforcing agreements as they were written, not as a disappointed party *wished* they were written.

22. In sum, the plain terms of the APA, supported by express statements on the record, requires tail coverage only for continuing, not former, residents and fellows.

**B. There is No Basis to Reconsider the Sale Order or Modify the APA.**

23. As a fallback position, the Former Physician Group argues that even if the APA does not presently require the purchase of tail coverage for the benefit of former residents, fellows, and other medical staff at the Hospital, there are grounds to reconsider the Sale Order, and to amend the order to require such purchase as a condition to approval of the APA.

24. In the first instance, the Motion is untimely. The Motion purports to be under Rule 60 of the Federal Rules of Civil Procedure, as incorporated by Rule 9024 of the Federal Rules of Bankruptcy Procedure, which applies to relief from the terms of a judgment or order. *See* Fed. R. Civ. P. 60. There is nothing in the Sale Order that imposes any duty, obligation,

consequence, or other compliance burden on the Former Physician Group from which they now seek relief.

25.     Rather, the Former Physician Group seeks an *amendment* to the Sale Order and the APA *adding* to each (not relieving the Former Physician Group from) a requirement that tail coverage be purchased for former residents, fellows, and medical staff.  Such an amendment is properly sought under Rule 59 of the Federal Rules of Civil Procedure, as incorporated by Rule 9023 of the Federal Rules of Bankruptcy Procedure, which applies to the alteration or amendments of judgments.  *See* Fed. R. Civ. P. 59.  In bankruptcy court, a motion seeking to alter or amend a judgment under Rule 59 must be filed within 14 days of entry.  *See* Fed. R. Bankr. P. 9023.  The Sale Order was entered on September 27, 2019, almost 70 days prior to the filing of the Motion.  Accordingly, the Motion should be dismissed as untimely.

26.     Moreover, even if Rule 60 were the correct procedural vehicle for the Motion, the Former Physician Group cannot establish an entitlement to relief thereunder.  The Former Physician Group asserts in support of relief under Rule 60 that:

> If the Debtor Parties and [STC OpCo] intended to limit the Tail Coverage to personnel of the Debtor Parties that remain in the employ of [STC OpCo], *they should have informed the Court* at the Sale Hearing.  The Debtors' failure to qualify the representations to the Court regarding the Tail Coverage were either a mistake or a misrepresentation (regardless of whether inadvertent), either of which is grounds for reconsideration."

Motion, at ¶ 19 (emphasis added).

27.     As set forth above, the Debtors and STC OpCo *did* so inform the Court.  Not once, not twice, but three separate times, as representations of counsel and as witness testimony of both the Debtors and STC OpCo.  There was no mistake or misrepresentation.  The record is in fact clear that, in the words of the Motion, only "personnel of the Debtor Parties that remain in the employ of [STC OpCo]" are entitled to tail coverage.  Moreover, counsel to the Former

Physician Group, on behalf of "Certain Physicians," was present in the courtroom at the Sale Hearing, and presumably heard both the statements of counsel and the testimony of witnesses on this point, so there can be no claim to lack of knowledge or notice. *See* TR, at 3:10-12

28. Finally, even if there were grounds to reconsider the Sale Order under Rule 60 on the basis of mistake or misrepresentation, as noted above, the Former Physician Group does not seek relief from any provision of the Sale Order, but rather the addition to the Sale Order and the APA of an affirmative obligation on the part of STC OpCo to purchase tail coverage for the Former Physician Group. The sale of the Hospital and related assets to STC OpCo was conducted under section 363 of the Bankruptcy Code, and as such, was free and clear of all liens, claims, liabilities, and encumbrances, with only certain limited, enumerated exceptions contained in the Sale Order and the APA. *See* Sale Order, at ¶ 16; APA, at § 1.9.

29. The obligation that the Former Physician Group seeks to impose on STC OpCo with respect to tail coverage for the members of such group is not one of those exceptions. The Motion cites to no authority for the proposition that this Court may compel STC OpCo to assume an obligation that the sale under the APA would otherwise have been free of under section 363. *See generally* 11 U.S.C. § 363. Accordingly, even if the Former Physician Group had objected at the Sale Hearing on the grounds that STC OpCo should be compelled to provide tail coverage to the members of such group, such an objection certainly would have been overruled.[5]

30. Under circumstances where even if grounds otherwise exist under Rule 60 to reconsider a ruling, the outcome would not or could not have changed in any event, relief under

---

[5] On September 12, 2019, counsel for the Former Physician Group filed a limited objection to the St. Christopher's Sale Motion on behalf of "Certain Physicians" [D.I. 699] (the "Certain Physicians Objection"). The Certain Physician Objection requested that the Court order the Debtors to provide tail coverage to the movants (who appear to have been Hahnemann physicians). Certain Physicians Objection, at ¶ 11. It did not seek to compel STC OpCo to provide such coverage. Nevertheless, the objection was overruled, with the Court stating that "I certainly am not in a position today to order that you [the Debtors] do so [provide tail coverage]." TR, at 98:16-17.

Rule 60 should be denied. *See generally, Am. Tissue, Inc. v. Arthur Anderson, L.L.P.*, 2005 U.S. Dist. LEXIS 4931, at *12-13 (S.D.N.Y. Mar. 28, 2005)

31. Accordingly, the Former Physician Group has established no basis either for this Court to reconsider the Sale Order or, even if it were inclined to do so, to grant the substantive relief sought.

## **JOINDER AND RESERVATION OF RIGHTS**

32. To the extent not inconsistent with this Objection, the STC OpCo Parties join in any objections to the Motion filed by the Debtors and the Official Committee of Unsecured Creditors. The STC OpCo Parties reserve the right to join in any other objections to the Motion. The STC OpCo Parties further reserve the right to supplement this Objection and make any other and further objections that the STC OpCo Parties deem necessary.

[*remainder of page intentionally left blank*]

WHEREFORE, the STC OpCo Parties respectfully request that the Court enter an order consistent with this Objection, deny the relief requested in the Motion, and grant such other and further relief as the Court deems just and proper.

Dated: December 11, 2019
       Wilmington, Delaware

Respectfully submitted,

*/s/ Tobey M. Daluz*
Tobey M. Daluz (No. 3939)
Chantelle D. McClamb (No. 5978)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Tel: (302) 252-4465
Fax: (302) 252-4466
Email: daluzt@ballardspahr.com
       mcclambc@ballardspahr.com

-and-

Vincent J. Marriott III, (*admitted pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500
Fax: (215) 864-8999
Email: marriott@ballardspahr.com

*Counsel for Drexel University and Co-Counsel for STC OpCo, LLC*

*/s/ Joseph H. Huston, Jr.*
Joseph H. Huston, Jr. (No. 4035)
919 North Market Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 425-3310
Fax: (610) 371-7972
Email: jhh@stevenslee.com

-and-

Robert Lapowsky (*admitted pro hac vice*)
Stevens & Lee, P.C.
620 Freedom Business Center, Suite 200
King of Prussia, PA 19406
Telephone: (215) 751-2866
Fax: (610) 371-7958
Email: rl@stevenslee.com

*Counsel for Tower Health, Inc. and Co-Counsel for STC OpCo, LLC*