**<u>EXHIBIT A</u>**

1

1          UNITED STATES BANKRUPTCY COURT
2                DISTRICT OF DELAWARE

3                                .   Chapter 11
   IN RE:                        .
4                                .   Case No. 19-11466 (KG)
   CENTER CITY HEALTHCARE, LLC,  .
5  d/b/a HAHNEMANN UNIVERSITY    .
   HOSPITAL, *et al.,*           .
6                                .   Courtroom No. 3
                                 .   824 North Market Street
7                                .   Wilmington, Delaware 19801
                                 .
8             Debtors.           .   September 23, 2019
   . . . . . . . . . . . . . . . .   1:00 P.M.
9

10                 TRANSCRIPT OF HEARING
          BEFORE THE HONORABLE KEVIN GROSS
11           UNITED STATES BANKRUPTCY JUDGE

12  APPEARANCES:

13  For the Debtors:        Mark Minuti, Esquire
                            SAUL EWING ARNSTEIN & LEHR LLP
14                          1201 N. Market Street
                            Wilmington, Delaware 19801
15
    For Debtor 3M:          Alison Elko-Franklin, Esquire
16  (Telephonic)            GREENBERG TRAURIG, LLP
                            3333 Piedmont Road NE
17                          Atlanta, Georgia 30305
18
    For Tower Health:       Robert Lapowsky, Esquire
19                          STEVENS & LEE
                            620 Freedom Business Center
20                          King of Prussia, Pennsylvania 19406

21  Audio Operator:         GINGER MACE

22  Transcription Company:  Reliable
                            1007 N. Orange Street
23                          Wilmington, Delaware 19801
                            Email:  gmatthews@reliable-co.com
24

25  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.

| | | |
|---|---|---|
| 1 | In Propria Persona: | Jeffrey Cutler |
| 2 | For Dr. Achintya | David Klauder, Esquire |
| | Moulick: | BIELLI & KLAUDER |
| 3 | | 1500 Walnut Street |
| | | Philadelphia, Pennsylvania 19102 |
| 4 | | |
| 5 | For Medical Staff: | Joseph McMahon, Esquire |
| | | CIARDI ASTIN |
| 6 | | 1204 North King Street |
| | | Wilmington, Delaware 19801 |
| 7 | | |
| | For ACGME: | Curtis Miller, Esquire |
| 8 | | Albert Ciardi, III, Esquire |
| | | MORRIS NICHOLS ARSHT & TUNNELL |
| 9 | | 1201 North Market Street |
| | | Wilmington, Delaware 19801 |
| 10 | | |
| 11 | For Certain Physicians: | David Carickhoff, Esquire |
| | | ARCHER & GREINER, P.C. |
| 12 | | 300 Delaware Avenue |
| | | Wilmington, Delaware 19801 |
| 13 | | |
| 14 | For Urology for Children: | Elihu Allinson, Esquire |
| | | SULLIVAN HAZELTINE ALLINSON |
| 15 | | 901 North Market Street |
| | | Wilmington, Delaware 19801 |
| 16 | For Chubb: | Michael Lastowski, Esquire |
| | | DUANE MORRIS |
| 17 | | 222 Delaware Avenue |
| | | Wilmington, Delaware 19801 |
| 18 | | |
| 19 | For PASNAP: | Mitchell Malzberg, Esquire |
| | | LAW OFFICE OF MITCHELL MALZBERG |
| 20 | | 6 East Main Street |
| | | Clinton, New Jersey 08809 |
| 21 | | |
| 22 | For Hayes Locums: | Daniel Hogan, Esquire |
| | | HOGAN MCDANIEL |
| 23 | | 1311 Delaware Avenue |
| | | Wilmington, Delaware 19801 |
| 24 | | |
| 25 | | |

1        The buyer here, Your Honor, is going to offer

2   employment to substantially all of the debtors or St.

3   Christopher's Hospital's workforce, subject to certain

4   conditions contained in the APA.

5        The buyer is going to recognize and assume the

6   collective bargaining agreement with the International

7   Brotherhood of Electrical Workers Local 98;

8        The buyer is going to assume responsibility for

9   training the current residents and fellows at the hospital;

10        The buyer is going to be responsible for post-

11   petition PTO obligations for those employees that are

12   ultimately hired.

13        In addition, Your Honor, a critical element here

14   is the buyer is going to be purchasing tail insurance

15   coverage to cover the debtor parties and continuing residents

16   subject to splitting the costs with the debtors 50/50 with

17   the debtors' obligation to pay capped at $2 million dollars.

18        The outside closing date of the transaction, Your

19   Honor, is December 13, although we certainly hope to be able

20   to close sooner.

21        Our buyers here are taking an assignment of a

22   number of executory contracts, leases.  And, Your Honor, I

23   should note the CMS provider agreements with our buyer here,

24   Your Honor, paying the cure claim pursuant to the APA.

25        The buyer here are going to maintain all of the

1  that we filed on Friday as the final signed asset purchase

2  agreement with our buyer, STC Opco.  It is a true and correct

3  copy of that asset purchase agreement.  Mr. Wilen would

4  describe the main components of the STC Opco APA as follows.

5          The purchase price is $50 million dollars;

6          The assets are substantially all assets of the St.

7  Christopher's operating debtors.  There are some excluded

8  items, for example; cash, accounts receivable, certain estate

9  claims and causes of action.

10          Mr. Wilen would testify that the buyer is to offer

11  employment to substantially all of St. Christopher's

12  workforce subject to certain conditions.  That includes our

13  positions, Your Honor.

14          Mr. Wilen would testify that the buyer is going to

15  recognize and assume the collective bargaining agreement with

16  the International Brotherhood of Electrical Workers Local 98.

17          The buyer is going to assume responsibility for

18  training the current residents and fellows.

19          The buyer is going to be responsible for post-

20  petition PTO obligations for employees that it hires.

21          The buyer is purchasing tail insurance coverage to

22  cover the debtor parties and continuing resident, subject to

23  splitting the costs with the debtors 50/50 with the debtors'

24  obligation cap at $2 million dollars.

25          Mr. Wilen would testify again that the outside

1  hospitals that it acquired during that fiscal year.  But he

2  would testify that even with those losses, the consolidated

3  assets still exceed consolidated liabilities by something in

4  excess of $800 million dollars.

5        He would testify that he's familiar with the

6  contracts that are to be assumed by the St. Christopher's

7  debtor entities and assigned to STC Opco under the purchase

8  agreement.

9        He would testify that its his belief that STC Opco

10  has the ability to perform under those contracts.  He would

11  testify that that belief is based upon his review of the most

12  recent historic financial information provided by the St.

13  Christopher's entities which indicates that they are

14  currently operating on about a breakeven basis taking into

15  account the cost associated with the contracts that are being

16  assumed.

17        He would also testify that it is his belief that

18  under the management of STC Opco, the operating results of

19  St. Christopher's will improve.

20        Last, he will testify that Tower and Drexel have

21  committed to arranging for additional working capital for STC

22  Opco in an amount of at least $20 million dollars.

23        Last, Your Honor, he would testify that it is STC

24  Opco's intent to purchase tail insurance, both primary and

25  excess coverage, for St. Christopher's, for the hospital

1  itself, and also for its employed physicians including

2  residents.  And as Mr. Minuti noted, the cost of that tail

3  insurance is agreed to be split 50/50 between STC Opco and

4  the sellers until the seller's 50 percent piece hits $2

5  million dollars. And beyond that, the financial liability is

6  entirely STC Opco's.

7           Your Honor, that would be Mr. Matthews' testimony.

8  He is present and available for cross-examination, if anyone

9  desires to do that.

10          THE COURT:  Does anyone wish to cross-examine Mr.

11 Matthews?

12          Good afternoon.

13          MS. UHLAND:  Good afternoon, Your Honor.  Suzzanne

14 Uhland of O'Melveny and Myers on behalf of the non-debtor

15 affiliates, the landlord, in this case.

16          I do not wish to cross-examine the witness, but I

17 do want to just be clear that we would like to reserve

18 rights.  The debtors have been very busy over the past and

19 the buyer have been busy over the past several days and have

20 not had the opportunity to work with us with respect to our

21 cure amounts and our adequate assurance or provide us with

22 the necessary information.

23          So, we've agreed to have a holding date to be

24 determined for that hearing with respect to our cured

25 adequate assurance.  And we, hopefully, won't need it, the

1  both the residents' program asset sale.  If there is a way

2  for this to happen, he is going to try to look for

3  opportunities at ways to make it happen.  Unfortunately,

4  we're not in a position where we can commit to do that right

5  now.  And, again, there is no legal basis and no legal

6  argument to escrow or set aside a reserve or any of those

7  issues.

8            So, we hear them.  We are sympathetic to the

9  argument, Your Honor.  We are committed to try to figure out

10 a solution to that problem, but I can't fix it today with

11 respect to this sale, Your Honor.  And that is really all I

12 can say about that.

13           THE COURT:  Let me interrupt just to say I agree

14 with your position, Mr. Minuti.  I think that it is a subject

15 of great concern and sensitivity, and one that, hopefully,

16 debtors can find a solution to, but I certainly am not in a

17 position today to order that you do so.

18           MR. MINUTI:  Thank you, Your Honor.

19           Your Honor, if you give me just one moment, I

20 think I'm concluded because I think I hit all the ones that I

21 wanted to hit, but let me just check.

22           THE COURT:  I think so too.

23           MR. MINUTI:  Your Honor, I think that's it in

24 terms of my rebuttal for any of the objections that remain

25 outstanding.