## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CENTER CITY HEALTHCARE, | ) | Case No. 19-11466 (KG) |
| LLC d/b/a HAHNEMANN | ) |  |
| UNIVERSITY HOSPITAL, *et al.*,[1] | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

### THE COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF HEALTH'S MOTION FOR AN ORDER
### COMPELLING DEBTORS TO OBTAIN
### POST-CLOSURE TAIL INSURANCE COVERAGE

The Commonwealth of Pennsylvania Department of Health ("PA DOH"), by and through undersigned counsel, by way of *The Commonwealth of Pennsylvania Department of Health's Motion for an Order Compelling Debtors to Obtain Post-Closure Tail Insurance Coverage* (the "Motion"), hereby states:

### BACKGROUND

1.     On June 30, 2019 (the "Petition Date"), Center City Healthcare, LLC d/b/a Hahnemann University Hospital, and its affiliated debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions in the United States Bankruptcy Court for

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

the District of Delaware (the "Court") seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.    On June 30, 2019, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders Pursuant to Sections 105(a), 363, and 1108 of the Bankruptcy Code (A) Authorizing the Debtors to Implement a Plan of Closure for Hahnemann University Hospital and (B) Scheduling a Final Hearing* [Doc. No. 15] (the "Closure Motion").

3.    On July 3, 2019, PA DOH, with the agreement of the Debtors, installed a temporary manager to oversee closure of Hahnemann and, thereafter, PA DOH worked diligently with the Debtors toward finalizing a closure plan, which plan was finalized on August 7, 2019 and approved by PA DOH (the "Closure Plan").

4.    Pursuant to the Closure Plan, the Debtors were to cease all operations and close Hahnemann as an acute care hospital as of September 6, 2019.

5.    On September 10, 2019, the Court entered an *Order Under 11 U.S.C. §§ 105, 106, 363, 365, 503, 507, and 525 (A) Approving Asset Purchase Agreement with Thomas Jefferson University Hospitals, Inc., (B) Authorizing Sale of Certain of Debtor's Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the Debtor's Executory Contracts, and (D) Granting Related Relief* [Doc. No. 681] (the "Residents Sale Order").

6.    Among other things, the Residents Sale Order provides that it is not "intended to abrogate or limit the authority or discretion of the Pennsylvania Department of Health over regulatory matters such as closure and licensing of health care facilities." Residents Sale Order at ¶ 22.

7. On September 16, 2019, the United States District Court for the District of Delaware issued an Order staying the Residents Sale Order pending an appeal of the Residents Sale Order by the federal government. *United States of America v. Center City Healthcare, LLC, et al.*, C.A. No. 19-1711 (UNA), Doc. No. 17 (D. Del. Sept. 16, 2019).

8. Effective November 1, 2019, PA DOH revoked Hahnemann University Hospital's state hospital license.

9. On September 27, 2019, the Court entered an order approving the sale of certain assets of St. Christopher's Healthcare, LLC and certain other Debtors (together, "St. Christopher's") to STC OpCo, LLC [Doc. No. 795].

10. PA DOH brings this motion pursuant to its statutory and regulatory authority, and in its capacity of *parens patriae,* to protect the citizens of the Commonwealth of Pennsylvania.

11. Pursuant to its police powers, and statutory and regulatory authority, PA DOH has determined that it is in the best interests of the public, including but not limited to the Debtors' patients, employees, and other hospital staff, for the Debtors to obtain tail insurance covering former residents, fellows, and medical staff of Hahnemann and former residents, fellows, and medical staff of St. Christopher's, including those who will not be employed by the new owners and for whom the new owners apparently do not intend to buy tail insurance.

### Relief Requested

12. PA DOH seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), compelling the Debtors to obtain tail insurance sufficient to provide coverage for any and all claims asserted against former residents, fellows, and medical staff of Hahnemann and former residents, fellows, and medical staff of St. Christopher's, including those

who will not be employed by the new owners and for whom the new owners apparently do not intend to buy tail insurance, for work done during the course of their employment by the Debtors.

## Jurisdiction and Venue

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[2]

14.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     The bases for the relief requested herein are Sections 105 and 1112(b)(4)(C) of the Bankruptcy Code.

## Argument

16.     The statutory mission of the PA DOH is to promote healthy behaviors, prevent injury and disease, and assure the safe delivery of quality health care for all people in the Commonwealth of Pennsylvania.  *See* https://www.health.pa.gov/About/Pages/About.aspx ; *see also* Act of April 27, 1905, P.L 312, modified through the Administrative Code of 1929 and Act 87 of July 2, 1996, P.L. 518.

17.     PA DOH is responsible for the licensing and oversight of hospitals within the Commonwealth of Pennsylvania.

---

[2] Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), PA DOH hereby expressly confirms its consent to the entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment in connection therewith consistent with Article III of the United States Constitution.

18.     Pursuant to the Pennsylvania Health Care Facilities Act, 35 P.S §§ 448.101, *et seq.* (the "Act"), PA DOH is "the sole statewide health planning and development agency" in the Commonwealth of Pennsylvania. *See Grandview Surgical Center, Inc. v. Holy Spirit Hospital of Sisters of Christian Charity*, 533 A.2d 796, 799 (Pa. Commw. Ct. 1987) (citing 35 P.S. § 448.201, which outlines the powers and duties of PA DOH and provides, among other things, that PA DOH has the "exclusive jurisdiction over health care providers" in accordance with the provisions of the Act).

19.     The Act is intended to "enhance the public health and welfare" of the Commonwealth of Pennsylvania's citizens and to "provide[] for quality care at appropriate health care facilities throughout the Commonwealth." *See Rehab Hosp. Servs. Corp. v. Health Sys. Agency*, 475 A.2d 883, 885-86 (Pa. Commw. Ct. 1984) (*quoting* 35 P.S. § 448.102).

20.     Additionally, the Act charges PA DOH with ensuring that the Commonwealth's health care system is "responsive and adequate to the needs of its citizens," that healthcare facilities "meet high quality standards," and that "all citizens receive humane, courteous, and dignified treatment." *Id.*

21.     Chapter 8 of the Act governs the Commonwealth's licensing of Pennsylvania health care facilities, including hospitals, and sets the standards for issuance of licenses with which health care providers must comply. *See* 35 P.S. §§ 448.801 *et seq.*

22.     The purposes of Chapter 8 of the Act are, *inter alia*, "to protect and promote the public health and welfare through the establishment and enforcement of regulations setting minimum standards in the construction, maintenance and operation of health care facilities" and to "assure quality health care . . . with due regard to the protection of the health and rights of privacy of patients . . . ." 35 P.S. § 448.801a.

23. The Act grants PA DOH the authority to implement and enforce the purposes of Chapter 8 within the Commonwealth.

24. Pursuant to the above-summarized statutory framework, PA DOH is charged both with overseeing the safe operation of all health care facilities within the Commonwealth of Pennsylvania and with ensuring the health and safety of those members of the public, including patients, employees, and other hospital staff, who come into contact with health care facilities in the Commonwealth of Pennsylvania.

25. PA DOH, in its capacity of *parens patriae,* likewise can act to protect the health, safety, and welfare of the public at large. As with police powers, the Commonwealth must act on behalf of all of its citizens. *See, e.g*., *Adams Sanitation Co., Inc. v. Commonwealth of Pennsylvania, Dep't of Environmental Protection*, 715 A.2d 390, 395 (Pa. 1998) (internal citations omitted).

26. Pursuant to its police powers and statutory and regulatory authority, PA DOH has determined that it is in the best interests of the public, including but not limited to Hahnemann and St. Christopher's patients, employees, and other hospital staff, for the Debtors to obtain tail insurance covering former residents, fellows, and medical staff of Hahnemann and former residents, fellows, and medical staff of St. Christopher's, including those who will not be employed by the new owners and for whom the new owners apparently do not intend to buy tail insurance.

27. Currently, the Debtors provide their current and former residents, physicians, and other health care professionals medical malpractice insurance coverage through several claims-made insurance policies that are set to expire in January, 2020.

6

28.    However, on information and belief, the Debtors notified its former residents, fellows, and physicians that insurance coverage will terminate on January 11, 2020, and that the Debtors will not be purchasing tail insurance coverage for any of their former employees.

29.    As a result, PA DOH is concerned that inadequate protections are in place to ensure that funds are available for any claims that may be asserted against Hahnemann or St. Christopher's, including claims against their former residents, physicians, and other health care professionals, by members of the public, which arose or may arise during the pendency of or following the closure of Hahnemann, or which arose or may arise during the Debtors' ownership of St. Christopher's.

30.    As acknowledged by the Debtors in the *Motion of the Debtors for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue Insurance Coverage Entered into Prepetition and Satisfy Prepetition Obligations Related Thereto; (II) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies; (III) Honor the Terms of Premium Financing Agreement and Pay Premiums Thereunder; and (IV) Enter into New Premium Financing Agreements in the Ordinary Course of Business* [Doc. No. 13] (the "Insurance Motion"), "in many instances, insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the Office of the United States Trustee's requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case." *See* Insurance Motion, Doc. No. 13, at ¶ 13.

31.    Pursuant to the applicable Operating Guidelines for Chapter 11 Cases, during the pendency of a chapter 11 case, debtors "must maintain … insurance coverage … as is

customary in the debtor's business." U.S. Department of Justice, Operating Guidelines for Chapter 11 Cases, Region 3, District of Delaware, at ¶ 3.

32.    Further, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate *or to the public*" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C) (emphasis supplied). *See also In re Delta AG Grp., LLC*, 596 B.R. 186, 196 (Bankr. W.D. La. 2019) (dismissing debtor's chapter 11 bankruptcy case for cause where debtor failed to maintain appropriate insurance on its grain storage bins) (citing *Gilroy v. Ameriquest Mortgage Co.*, No. NH 07-054, 2008 Bankr. Lexis 3968 (1st Cir. BAP Aug. 4, 2008) (failure to maintain property and liability insurance for five condominiums constitutes cause for dismissal); *Derivium Capital LLC v. U.S. Trustee*, No. 5 Civ. 10845, 2006 U.S. Dist. LEXIS 31427, 2006 WL 1317021, *11 (S.D.N.Y. May 12, 2006) (affirming bankruptcy court's decision to convert chapter 11 case partially because debtor lacked proper insurance coverage); *In re Van Eck*, 425 B.R. 54, 60-61 (Bankr. D. Conn. 2010) (finding that cause existed, in part, because debtor failed to show that there was insurance on residential property)).

33.    Under 28 Pa. Code § 101.31(10)(xv), hospitals within the Commonwealth of Pennsylvania are required to maintain "[m]inimum supportive capabilities," including "[c]omprehensive policies and standards for assuring the safety of patients, employees and visitors and for protection against malpractice and negligence."

34.    Further, state regulations governing the operations of hospitals within the Commonwealth of Pennsylvania provide:

> There should be an insurance program which provides for the
> protection of the physical and financial resources of the hospital.
> There should be appropriate coverage of the buildings and
> equipment and adequate comprehensive liability insurance or an

equivalent self-insurance plan covering members of the governing
body and appropriate medical and administrative personnel.

28 Pa. Code § 103.43.

35.     Although Hahnemann is no longer a licensed facility, the past licensed operation of the hospital presents a potential for continuing claims to be asserted by patients, against former residents, fellows, and medical staff of Hahnemann based on occurrences arising prior to or during the pendency of the closure of the hospital.

36.     This is because the operation of a hospital carries certain inherent risks. Among many other things, there are the risks to patients attendant to the performance of any number of medical procedures, including invasive surgeries. Such claims, although arising prior to the closure of Hahnemann, may continue to be asserted well after closure.

37.     St. Christopher's is faced with the same inherent risks for an occurrence during the Debtors' ownership of the hospital and potentially even greater risk as the applicable statute of limitations to bring a claim relating to an injury of a minor does not begin to run until the minor is emancipated at age 18.

38.     The provision of tail insurance coverage is critical to ensure that funding is in place for the adequate and equal treatment of any such claims. *See In re Baltimore Emergency Services II, LLC*, 334 B.R. 164, 167 (Bankr. D. Md. 2005) (noting inequity of unequal treatment of pre- and post-petition malpractice claims asserted against debtor hospitals that could arise in absence of sufficient existing insurance policies and tail insurance coverage).

39.     Moreover, the Commonwealth of Pennsylvania's MCARE Act requires Pennsylvania physicians to maintain insurance coverage, including tail coverage. *See* 40 P.S. §1303.711; 40 P.S. §1303.742. Therefore, those of the Debtors' former residents, fellows, and physicians who are unable to obtain tail coverage on their own, would be at risk of losing their

ability to provide medical care in the Commonwealth of Pennsylvania due to lack of insurance coverage. A physician's medical license "shall" be suspended or revoked by the relevant Commonwealth of Pennsylvania state licensing board if the physician fails to comply with the required insurance provisions of the Act. *See* 40 P.S. §1303.711(c).

40.     Thus, hundreds of the Debtors' former residents, fellows, and physicians may be prevented from providing medical care in the Commonwealth of Pennsylvania at a time when the Commonwealth of Pennsylvania is experiencing a shortage of physicians. *See* Amici Brief previously filed by the American Medical Association, the Pennsylvania Medical Society, and the Philadelphia County Medical Society (collectively the "Amici Curiae"), which brief is at Docket 729.

41.     In addition, the Debtors' former residents, fellows, and physicians may have additional state medical licenses, such as in Delaware, New Jersey, or Maryland. If a physician with multiple medical licenses is disciplined by the Pennsylvania state licensing board, then the physician may also be subject to discipline by the other state boards where he maintains a medical license; there often are reciprocal reporting and discipline requirements. Further, discipline by a Pennsylvania state medical board would also result in a report to the National Practitioners' Data Bank, which becomes a permanent part of the physician's record. This avalanche effect could impact whether a physician is able to continue to practice medicine. *See* Amici Brief previously filed by the Amici Curiae.

42.     Pursuant to Section 105 of the Bankruptcy Code, this Court has authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," including Section 1112(b)(4)(C)'s requirement that chapter 11 debtors maintain appropriate insurance coverage under the circumstances of the case.

43.     Thus, this Court has the authority to order the Debtors to obtain tail insurance coverage to ensure the protection of the public in connection with claims relating to the Debtors' operations, regardless of whether those claims are asserted prior to the expiration of the current coverage period.

44.     Further, it is within the purview of PA DOH and its statutory, regulatory and *parens patriae* authority to oversee the safety of all hospitals within the Commonwealth, and to ensure that adequate insurance is available to provide for any claims that may be asserted against the Debtors, including against former residents, fellows, and the medical staff of the Debtors.

45.     In light of Hahnemann's and St. Christopher's roles as public institutions and providers of services intended to benefit the health and welfare of the populace at large, the circumstances of this bankruptcy, the closing of Hahnemann and the sale of St. Christopher's present a unique case of particular concern to PA DOH and the Commonwealth of Pennsylvania.

46.     Because of PA DOH's above-described statutory, regulatory, and *parens patriae* authority, PA DOH is uniquely positioned as the most appropriate party-in-interest to invoke the applicable protections of the Bankruptcy Code and petition this Court for the relief requested herein.

47.     In order to enable PA DOH to fulfill its statutory, regulatory, and *parens patriae* responsibility to ensure the health, safety, and welfare of the public and to oversee the operation and licensing of the Commonwealth's hospitals, PA DOH respectfully requests that this Court enter an Order compelling the Debtors to obtain tail insurance covering former residents, fellows, and medical staff of Hahnemann and former residents, fellows, and medical staff of St. Christopher's, including those who will not be employed by the new owners and for

whom the new owners apparently do not intend to buy tail insurance, for a sufficient period of time to ensure adequate funding for potential claims asserted against Hahnemann and St. Christopher's by members of the public.

48.    Requiring the Debtors to obtain any necessary tail insurance coverage (i) is within this Court's Section 105 equitable power to ensure the Debtors' compliance with Section 1112(b)(4)(C) of the Bankruptcy Code and (ii) will further the public interest and assist PA DOH in its mission to protect the health, safety, and welfare of the public.

49.    Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) Office of the United States Trustee; (ii) the Debtors; (iii) the Unsecured Creditors' Committee; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. PA DOH submits that no other or further notice is necessary.

WHEREFORE, PA DOH respectfully requests that the Court enter the Order attached hereto as **Exhibit A**.

Dated:  December 11, 2019

By:  /s/ Richard A. Barkasy
Richard A. Barkasy (#4683)
SCHNADER HARRISON SEGAL & LEWIS LLP
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 888-4554
Facsimile:  (302) 888-1696
rbarkasy@schnader.com

-and-

David Smith (admitted *pro hac vice*)
Nicholas J. LePore, III (admitted *pro hac vice*)
Ira Neil Richards (admitted *pro hac vice*)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205
dsmith@schnader.com
nlepore@schnader.com
irichards@schnader.com

*Counsel for the Commonwealth of Pennsylvania Department of Health*