# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) Related to Docket Nos. 205, 622, 757 and 795 |

## ORDER AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' LEASES WITH FRONT STREET HEALTHCARE PROPERTIES, LLC AND FRONT STREET HEALTHCARE PROPERTIES II, LLC IN CONNECTION WITH THE STC OPCO SALE AND GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[2] [D.I. 205] of the above captioned Debtors (the "Debtors"), for, *inter alia*, entry of an order, pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"): (i) approving the sale by Debtor St. Christopher's Healthcare, LLC ("STC") and certain other Debtors (defined in the Sale Motion as the "STC Practice Groups" and collectively with STC referred to herein as the "STC Entities") of certain Assets, free and clear of all encumbrances, and (ii) authorizing the assumption by the Debtors and assignment to the purchaser of the Assets of executory contracts designated by such purchaser free and clear of all encumbrances, and (iii) granting certain related relief; and the Court having entered the *Order under 11 U.S.C. § 105, 363, 365, 503 and 507 (A) Approving Asset Purchase Agreement with STC OpCo, LLC (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion or the Sale Order (defined below), as applicable.

*Debtors' Executory Contracts, and (D) Granting Related Relief* [D.I. 795] (the "Sale Order") pursuant to which, *inter alia*, the Court authorized the sale of substantially all of the STC Entities' assets to STC OpCo, LLC (the "Buyer") in accordance with the asset purchase agreement attached to the Sale Order as Exhibit A (the "Agreement"); and the Sale Order having provided that, *inter alia*, to the extent the Buyer seeks to designate leases between the STC and Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC (collectively, the "Lessors") for assumption and assignment, such assumption and assignment would be the subject of a separate order; and it appearing that the Debtors' ability to assume and assign the leases identified on **EXHIBIT 1** attached hereto (collectively, the "Leases", and each individually, a "Lease") to the Buyer is in the best interests of the Debtors, their estates and creditors and other parties in interest; and due and proper notice of the Sale Motion, including the potential assumption and assignment of the Leases having been provided, and it appearing that no other or further notice need be provided; and the Buyer having provided adequate assurance of its ability to promptly cure any defaults and to perform in the future under the Leases as provided herein and in accordance with sections 365(b)(1)(A) and (C) of the Bankruptcy Code; and the Court having found and determined that the Buyer is not a successor to or mere continuation of the Debtors (including the STC Entities) or their estates; and the Buyer having the right, under the Agreement, to add or delete contracts from Schedule 1.7(r)(i) to the Agreement at any time until the Closing Date such that only contracts that are listed on Schedule 1.7(r)(i) as of the Closing Date (the "Closing Date Schedule") will be assumed and assigned to the Buyer; and after due deliberation and sufficient cause appearing therefor,

12/12/2019 SL1 1618932v6 006375.01166
36319989.1 12/12/2019

IT IS HEREBY FOUND AND DETERMINED THAT:

A.  This Court maintains jurisdiction over the matters set forth herein and in the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (M), (N) and (O), and the Court may enter a final order consistent with Article III of the United States Constitution.

B.  The findings of fact set forth in paragraphs A through T of the Sale Order are incorporated by reference as if fully set forth herein, as applicable.

C.  The Buyer is owned by Tower Health System ("Tower") and Drexel University ("Drexel"). In the event either Lease becomes an Assigned Contract, Tower and Drexel have each agreed to separately enter into a guaranty agreement with each Lessor to guaranty all (i) Allowed Cure Obligations (as defined below), and (ii) amounts coming due under the applicable Lease attributable to the period from and after the Effective Time, as defined in the Agreement (collectively, the "Tower/Drexel Guaranty"). The foregoing notwithstanding, the Tower/Drexel Guaranty shall be joint and several up to the amount of ten million dollars ($10,000,000.00) plus the Allowed Cure Obligations (the "Joint and Several Threshold"). As to any claims under the Tower/Drexel Guaranty in excess of the Joint and Several Threshold, Tower and Drexel shall be liable such that each party is liable for fifty percent (50%) of the amount of any liability. The Lessors shall be free to pursue either or both of Tower and Drexel with respect to the Tower/Drexel Guaranty and neither shall be considered an "indispensable party."

12/12/2019 SL1 1618932v6 006375.01166
36319989.1 12/12/2019

D.  The Lessors, the Buyer and the Debtors dispute the claims and obligations required to be cured by the Debtors pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code (the "Cure Obligations") as a condition to the assumption and assignment of the Leases to the Buyer (the "Cure Dispute").

NOW THEREFORE, IT IS HEREBY ADJUDGED, ORDERED AND DECREED THAT:

1. Subject to the execution and delivery of the Tower/Drexel Guaranty to the Lessors and the terms of this Order, STC is authorized to assume and assign each Lease to the Buyer.

2. The Tower/Drexel Guaranty, an execution copy of which is attached hereto as **Exhibit A**[3], shall be executed by Tower and Drexel on or before the Closing Date and delivered to the Lessors if one or both of the Leases become Assigned Contracts.

3. As of the Closing Date, to the extent either Lease is an Assigned Contract, (i) such Lease shall be deemed to have been assumed by STC and assigned to the Buyer pursuant to section 365(f) of the Bankruptcy Code, and subject to the terms of this Order and the provisions of section 365 of the Bankruptcy Code, the Buyer shall be bound by, and subject to all of the terms, conditions and obligations of, such Lease from and after the Closing, and (ii) pursuant to section 365(k) of the Bankruptcy Code, the STC estate shall be relieved from any liability for any breach of such Lease occurring after the Closing Date.

4. All claims, rights and defenses of any kind or nature related to the Cure Obligations and the Cure Dispute are fully preserved.

5. On or before the first business day following the Closing or, as to the pro-rated portion of the base rent for the period October 1, 2019 to December 31, 2019 referenced in

---

[3] Exhibit A is the execution copy of the Tower/Drexel Guaranty to be executed and delivered by Tower. The Tower/Drexel Guaranty to be executed by Drexel will be in the same form other than as relates to the identity of the Guarantor

subparagraph (iv) below, in the event the Lessors and Debtor do not agree on the appropriate recipient, on the first business day after ruling by the Court, the Debtors shall pay or satisfy (i) base rent outstanding for the prior quarter in the amount of $14,063 (which shall be paid to the Lessors), (ii) outstanding use and occupancy taxes in the approximate amount of $41,000 (which shall be paid to the appropriate taxing authority), (iii) outstanding parking taxes in the amount of $1,190 (which shall be paid to the appropriate taxing authority), and (iv) a pro-rated portion of the base rent for the time period October 1, 2019 through and including the December 31, 2019, (which pro-rated amount, assuming a Closing on December 15, 2019 is $243,292) which shall be paid to the party as agreed by the Lessors and the Debtor or as determined by the Court at a hearing on December 17, 2019 at 1:30 p.m. (collectively, the "Debtor Post-Petition Ordinary Course Obligations"), and shall provide written evidence of such payments to the Lessors and the Buyer on or before the first business day following the applicable payment date as set forth in this paragraph. No other amounts shall be payable with respect to Cure Obligations at or prior to Closing.

6. In the event either Lease is an Assigned Contract, the Lessors may schedule a hearing (the "Non-Performance Rent Cure Hearing") to determine the Cure Obligations as to either Lease that has become an Assigned Contract, at any time on or after February 15, 2020 and such hearing shall be set on a date prior to March 15, 2020, provided, however, the Cure Obligations determined at the Non-Performance Rent Cure Hearing shall not include any claims based upon Performance-Based Rent (as defined in each Lease) (the "Performance-Based Rent"). The Cure Obligations not inclusive of any Performance-Based Rent are hereafter referred to as the "Non-Performance Rent Cure Obligations."

12/12/2019 SL1 1618932v6 006375.01166
36319989.1 12/12/2019

7. Unless otherwise satisfied in a manner acceptable to the Lessors in their sole discretion, within five (5) days after the date that an order of this Court determining the allowed amount of the Non-Performance Rent Cure Obligations (the "Allowed Non-Performance Rent Cure Obligations" and together with the Allowed Performance-Based Rent Cure Obligations (as defined below), the "Allowed Cure Obligations") has become a Final Order, the Buyer shall pay or otherwise satisfy the Allowed Non-Performance Rent Cure Obligations.

8. Upon payment or other satisfaction of the Allowed Non-Performance Rent Cure Obligations, (i) all defaults under the Leases required to be cured pursuant to section 365(b)(1)(A) of the Bankruptcy Code other than those related to Performance-Based Rent shall be deemed cured and all amounts due to the Lessors pursuant to section 365(b)(1)(B) on account of any pecuniary loss resulting from such defaults shall be deemed paid in full, and (ii) each of the Lessors shall be forever bound by such Allowed Non-Performance Rent Cure Obligations and enjoined from seeking to terminate the Leases or enforce any other remedies under such Leases against the Buyer or the Debtors on account of defaults by the Debtors not related to Performance-Based Rent, including defaults as to which, pursuant to section 365(b)(1)(A) of the Bankruptcy Code, cure is not required.

9. The Buyer shall have the sole authority to contest and settle any Cure Obligations and shall not require Court approval of any such settlements. Any and all payments or other satisfaction of any contested or settled Cure Obligations shall be the sole responsibility of the Buyer and not the Debtors. For so long as the Debtors' bankruptcy cases remain open, within a reasonable time following the settlement of any Cure Obligations, the Buyer shall file a notice of such settlement on the docket. The Court shall retain jurisdiction over any dispute regarding the Buyer's payment or other satisfaction of the Allowed Cure Obligations.

10. On or before January 24, 2020, the Lessors shall deliver to the Debtors and the Buyer a statement setting forth Lessors' list of the Non-Performance Rent Cure Obligations (the "<u>Cure Statement</u>"). In connection therewith, the Debtors (with the cooperation of the Buyer on or after the Closing as to subpart (a)(i)) shall (a) (i) provide to the Lessors the information and documents in the possession, custody or control of the Debtors and the Buyer, respectively, as shall be reasonably requested by the Lessors, and (ii) on or before December 31, 2019, respond to the reasonable requests for information and documents in the Lessors' letter to the Debtors dated October 13, 2019 (with each side reserving their rights on the reasonableness of such requests). Subsequent to the Closing, the Buyer shall provide promptly to the Lessors reasonable access to the premises subject to the Leases, in order for the Lessors to timely and accurately prepare the Cure Statement, including by way of a lease audit performed by a third party consultant at the Lessors' expense.

11. For a period of one hundred and twenty (120) days after the Closing, the rent currently payable by the Buyer under any Lease that is an Assigned Contract shall be the Base Rent (with any Performance-Based Rent, determined pursuant to the resolution procedures provided for immediately below, to accrue during such period) along with Taxes, Operating Expenses (as such terms are defined in the Leases) and other obligations accruing under such Lease during Buyers occupancy of the subject premises, all as specified in such Lease. At any time after expiration of such one hundred and twenty (120) days after the Closing, the Lessors may request that a court of competent jurisdiction determine whether or not Performance-Based Rent arising after the Closing is due and payable under the Leases. Upon the entry of an order by such court determining that any such Performance-Based Rent is due and payable from and after Closing, and such order becoming a Final Order, the Buyer shall pay as required, or otherwise

12/12/2019 SL1 1618932v6 006375.01166
36319989.1 12/12/2019

satisfy in a manner acceptable to the Lessors in their sole discretion, such Performance-Based Rent.

12. Notwithstanding anything else herein, Lessors reserve all rights and claims of any kind and nature with respect to Performance-Based Rent and, no sooner than 120 days after the Closing, also reserve all of their rights to seek from this Court an order regarding the payment of postpetition Performance-Based Rent from the petition date to the Closing Date (the "Performance-Based Rent Cure Obligations") as an additional cure for assumption of the Leases.

13. Upon payment or other satisfaction of the Performance-Based Rent Cure Obligations allowed by the Court (the "Allowed Performance-Based Rent Cure Obligations") to the Lessors, (i) all defaults under the Leases required to be cured pursuant to section 365(b)(1)(A) of the Bankruptcy Code related to Performance-Based Rent shall be deemed cured and all amounts due to the Lessors pursuant to section 365(b)(1)(B) on account of any pecuniary loss resulting from such defaults shall be deemed paid in full, and (ii) each of the Lessors shall be forever bound by such Performance-Based Rent Cure Obligations and enjoined from seeking to terminate the Leases or enforce any other remedies under such Leases against the Buyer or Debtors on account of defaults by the Debtors related to Performance-Based Rent, including defaults as to which, pursuant to section 365(b)(1)(A) of the Bankruptcy Code, cure is not required.

14. Any provision in either Lease that purports to declare a breach, default or payment right as result of an assignment or a change of control in respect of STC or the Debtors as relates to the assumption of the Leases by STC and assignment of such Lease to the Buyer is unenforceable and, in the event either Lease becomes an Assigned Contract, such Lease shall remain in full force and effect, notwithstanding any such provision; provided that Buyer agrees that Buyer shall be subject to Section 6.2 of each Lease in connection with any future assignment of such Lease by

12/12/2019 SL1 1618932v6 006375.01166
36319989.1 12/12/2019

Buyer. No sections or provisions of the Leases that purports to provide for additional payments, rent accelerations, assignment fees, increases, payments, deposits, security, charges or any other fees charged to the Buyer or STC solely as a result of the assumption and the assignment of the Leases to the Buyer shall have any force and effect with respect to the transactions contemplated by the Agreement and assignments authorized by this Order, and such provisions are unenforceable under sections 363(l), 365(e)(1), 365(f), or 541(c)(1) of the Bankruptcy Code, as applicable.

15. For the avoidance of doubt, the Buyer maintains discretion to not include either Lease on the Closing Date Schedule and neither of the Leases shall be assumed or assigned to the Buyer unless it is listed on the Closing Date Schedule. If either Lease is not included on the Closing Date Schedule, the Debtors shall immediately notify counsel to the Lessors via email of such deletion.

16. If either of the Leases is on the Closing Date Schedule, it shall be treated as an Assigned Contract under the terms of the Sale Order, and shall be subject to all applicable terms of the Sale Order, including provisions providing for the sale of such Assigned Contract free and clear of Interests pursuant to section 363 of the Bankruptcy Code.

17. If, and only to the extent that, either of the Leases is on the Closing Date Schedule, the effective date of assumption of such Lease shall be the Closing Date. If either of the Leases is *not* on the Closing Date Schedule, all rights of the Debtors to assume or reject such Lease, if any, is reserved, and all rights of the Lessors to oppose any such relief and/or to seek affirmative relief for the Debtors' failure to comply postpetition with the terms of the Leases are fully preserved.

18. Upon the assignment of either Lease, as provided herein, the Buyer shall succeed to all of the right, title and interest of STC under the Lease.

19. This Court shall retain jurisdiction over any and all matters arising from or related to the implementation of this Order or the Motion.

20. This Order is effective immediately upon entry.

**Dated: December 13th, 2019**
**Wilmington, Delaware**

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**