EXHIBIT "A"

FORM OF GUARANTY

## GUARANTY

This **GUARANTY** is entered into as of December [__], 2019 by the undersigned (the **"Guarantor"**), in favor of and for the benefit of **FRONT STREET HEALTHCARE PROPERTIES, LLC ("Guaranteed Party")**.

### RECITALS.

A.  In connection with and pursuant to that certain Asset Purchase Agreement by and among St. Christopher's Healthcare, LLC ("**Tenant**"), Philadelphia Academic Medical Associates, LLC and other entities, as sellers, and STC OpCo LLC, a Pennsylvania limited liability company formed by the Guarantor and Drexel University ("**Drexel**") to acquire certain assets of the sellers, as buyer ("**Buyer**"), dated as of September 20, 2019 (the "**Asset Purchase Agreement**"), Buyer is taking an assignment of all of Tenant's interests, rights and obligations under that certain lease agreement between Guaranteed Party and Tenant dated as of January 11, 2018 (the "**Lease**").

B.  Tenant's assumption and assignment of the Lease to Buyer was approved by the United States Bankruptcy Court pursuant to the Order Authorizing Assumption and Assignment of Certain of Debtors' Leases with Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC in Connection with the STC OpCo Sale and Granting Related Relief on December [__], 2019 (the "**Assumption Order**"), which requires Guarantor's delivery of this Guaranty to Guaranteed Party at the time of the assignment of the Lease to Buyer.

C.  Contemporaneously herewith and pursuant to the Assumption Order, Drexel is also delivering a guaranty to Guaranteed Party (the "**Drexel Guaranty**").

D.  Guarantor is willing irrevocably and unconditionally to guaranty all of Buyer's obligations under the Lease to the extent hereinafter set forth.

1.  **Guaranty.**  Guarantor irrevocably and unconditionally guaranties, as primary obligor and not merely as surety:

(a)  except as limited by the last paragraph of this Section 1, the due and punctual payment in full of all Guaranteed Obligations (as hereinafter defined) when the same shall become due, whether at stated maturity, by acceleration, demand or otherwise (including amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code); and

(b)  the prompt, full and complete performance of all of Guaranteed Obligations under each and every covenant contained in the Lease.

The term **"Guaranteed Obligations"** is used herein in its most comprehensive sense and includes any and all obligations of Buyer, now or hereafter made, incurred or created, whether absolute or contingent, liquidated or unliquidated, whether due or not due, and however first arising after the date hereof under or in connection with the Lease and this Guaranty, and all Allowed Cure Obligations (as defined in the Assumption Order).

1

Any interest on any portion of the Guarantied Obligations that accrues after the commencement of any proceeding, voluntary or involuntary, involving the bankruptcy, insolvency, receivership, reorganization, liquidation or arrangement of Buyer ("**Insolvency Proceeding**") (or, if interest on any portion of the Guarantied Obligations ceases to accrue by operation of law by reason of the commencement of said proceeding, such interest as would have accrued on such portion of the Guarantied Obligations if said proceeding had not been commenced) shall be included in the Guarantied Obligations because it is the intention of Guarantor and Guarantied Party that the Guarantied Obligations should be determined without regard to any rule of law or order that may relieve Buyer of any portion of such Guarantied Obligations. In the event that Guarantied Party's (or its affiliate's) damages arising under the Lease are capped in a future Insolvency Proceeding pursuant to relevant rule of law or an order, the Guarantied Obligations shall include the full, uncapped amount of damages.

In the event that all or any portion of the Guarantied Obligations is paid by Buyer, the obligations of Guarantor hereunder shall continue and remain in full force and effect or be reinstated, as the case may be, in the event that all or any part of such payment(s) is rescinded or recovered directly or indirectly from Guarantied Party as a preference, fraudulent transfer or otherwise, and any such payments that are so rescinded or recovered shall constitute Guarantied Obligations.

Subject to the other provisions of this Section 1, upon the failure of Buyer to pay or perform any of the Guarantied Obligations when and as the same shall become due (after giving effect to applicable cure periods) (an "**Event of Default**"), Guarantor will upon demand pay or perform, or cause to be paid, in cash, to Guarantied Party, an amount equal to the aggregate of the unpaid Guarantied Obligations or perform Guarantied Obligations if an applicable Event of Default constitutes a non-monetary breach or default.

Guarantor's obligations under this Guaranty and Drexel's obligations under the Drexel Guaranty shall be joint and several up to the amount of Ten Million Dollars ($10,000,000.00) plus the Allowed Cure Obligations (as such term is defined in the Assumption Order) (such sum, the "**Joint and Several Threshold**"), and Guarantor's obligations under this Guaranty in excess of the Joint and Several Threshold shall not exceed fifty percent (50%) of the excess of the Guarantied Obligations over the Joint and Several Threshold, plus any costs and expenses to which Guarantied Party is entitled to pursuant to this Guaranty.

**2.    Guaranty Absolute; Continuing Guaranty.**  The obligations of Guarantor hereunder are irrevocable, absolute, independent and unconditional and shall not be affected by any circumstance which constitutes a legal or equitable discharge of a guarantor or surety other than payment in full of Guarantor's liability for the Guarantied Obligations hereunder.  In furtherance of the foregoing and without limiting the generality thereof, Guarantor agrees that:  (a) this Guaranty is a guaranty of payment when due and not of collectability; (b) Guarantied Party may initiate enforcement of this Guaranty upon the occurrence and during the continuance of an Event of Default provided all parties reserve all rights and defenses with respect to the existence of an Event of Default and the continued enforcement of the Guaranty; (c) the obligations of Guarantor hereunder are independent of the obligations of Buyer under the Lease and the obligations of any other guarantor of the obligations of Buyer and a separate action or actions may be brought and prosecuted against Guarantor whether or not any action is brought

2

against Buyer or any of such other guarantors and whether or not Buyer is joined in any such action or actions; (d) Guarantor's payment of a portion, but not all, of the Guaranteed Obligations shall in no way limit, affect, modify or abridge Guarantor's liability for any portion of Guarantor's liability for the Guaranteed Obligations hereunder that has not been paid; and (e) Guaranteed Party may pursue either or both of Guarantor and Drexel under this Guaranty and/or the Drexel Guaranty and neither Guarantor nor Drexel shall be considered an "indispensable party," and Guarantor waives any rights and defenses with respect thereto. This Guaranty is a continuing guaranty and shall be binding upon Guarantor and its successors and assigns, and Guarantor irrevocably waives any right to revoke this Guaranty as to future transactions giving rise to any Guaranteed Obligations.

3. **Actions by Guaranteed Party.** Guaranteed Party may from time to time, without notice or demand and without affecting the validity or enforceability of this Guaranty or giving rise to any limitation, impairment or discharge of Guarantor's liability hereunder, (a) renew, extend, accelerate or otherwise change the time, place, manner or terms of payment of the Guaranteed Obligations, (b) settle, compromise, release or discharge, or accept or refuse any offer of performance with respect to, or substitutions for, the Guaranteed Obligations or any agreement relating thereto and/or subordinate the payment of the same to the payment of any other obligations, (c) request and accept other guaranties of the Guaranteed Obligations and take and hold security for the payment of this Guaranty or the Guaranteed Obligations, (d) release, exchange, compromise, subordinate or modify, with or without consideration, any security for payment of the Guaranteed Obligations, any other guaranties of the Guaranteed Obligations, or any other obligation of any Person with respect to the Guaranteed Obligations, (e) enforce and apply any security now or hereafter held by or for the benefit of Guaranteed Party in respect of this Guaranty or the Guaranteed Obligations and direct the order or manner of sale thereof, or exercise any other right or remedy that Guaranteed Party may have against any such security, as Guaranteed Party in its discretion may determine consistent with the Lease and any applicable security agreement, including foreclosure on any such security pursuant to one or more judicial or nonjudicial sales, whether or not every aspect of any such sale is commercially reasonable, and (f) exercise any other rights available to Guaranteed Party under the Lease. **"Person"** means and includes natural persons, corporations, limited partnerships, general partnerships, limited liability companies, limited liability partnerships, joint stock companies, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts or other organizations, whether or not legal entities, and governmental authorities.

4. **No Discharge.** This Guaranty and the obligations of Guarantor hereunder shall be valid and enforceable and shall not be subject to any limitation, impairment or discharge for any reason (other than payment in full of Guarantor's liability for the Guaranteed Obligations hereunder), including without limitation the occurrence of any of the following, whether or not Guarantor shall have had notice or knowledge of any of them: (a) any failure to assert or enforce or agreement not to assert or enforce, or the stay or enjoining, by order of court, by operation of law or otherwise, of the exercise or enforcement of, any claim or demand or any right, power or remedy with respect to the Guaranteed Obligations or any agreement relating thereto, or with respect to any other guaranty of or security for the payment of the Guaranteed Obligations, (b) any waiver or modification of, or any consent to departure from, any of the terms or provisions of the Lease or any agreement or instrument executed pursuant thereto, or of any other guaranty

3

or security for the Guarantied Obligations, (c) the Guarantied Obligations, or any agreement relating thereto, at any time being found to be illegal, invalid or unenforceable in any respect, (d) the application of payments received from any source other than the Guarantor to the payment of indebtedness other than the Guarantied Obligations, even though Guarantied Party might have elected to apply such payment to any part or all of the Guarantied Obligations, (e) any failure to perfect or continue perfection of a security interest in any collateral which secures any of the Guarantied Obligations, (f) any defenses, set-offs or counterclaims which Buyer may assert against Guarantied Party in respect of the Guarantied Obligations, including but not limited to failure of consideration, breach of warranty, payment, statute of frauds, statute of limitations, accord and satisfaction and usury, and (g) any other act or thing or omission, or delay to do any other act or thing, which may or might in any manner or to any extent vary the risk of Guarantor as an obligor in respect of the Guarantied Obligations.

        5.        **Waivers.**  Guarantor waives, for the benefit of Guarantied Party: (a) any right to require Guarantied Party, as a condition of payment or performance by Guarantor, to (i) proceed against Buyer, any other guarantor of the Guarantied Obligations or any other Person, (ii) proceed against or exhaust any security held from Buyer, any other guarantor of the Guarantied Obligations or any other Person, (iii) proceed against or have resort to any balance of any account or credit on the books of Guarantied Party in favor of Buyer or any other Person, or (iv) pursue any other remedy in the power of Guarantied Party; (b) any defense arising by reason of the incapacity, lack of authority or any disability or other defense of Buyer including, without limitation, any defense based on or arising out of the lack of validity or the unenforceability of the Guarantied Obligations or any agreement or instrument relating thereto or by reason of the cessation of the liability of Buyer from any cause other than payment in full of the Guarantied Obligations; (c) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (d) any defense based upon Guarantied Party's errors or omissions in the administration of the Guarantied Obligations, except behavior that amounts to bad faith; (e) (i) any principles or provisions of law, statutory or otherwise, that are or might be in conflict with the terms of this Guaranty and any legal or equitable discharge of Guarantor's obligations hereunder, (ii) the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement hereof, (iii) any rights to set-offs, recoupments and counterclaims, and (iv) promptness, diligence and any requirement that Guarantied Party protect, secure, perfect or insure any Lien or any property subject thereto; (f) notices, demands, presentments, protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance of this Guaranty, notices of default or breach under the Lease, or any agreement or instrument related thereto, notices of any renewal, extension or modification of the Guarantied Obligations or any agreement related thereto, and notices of any of the matters referred to in Sections 3 and 4 and any right to consent to any thereof; and (g) to the fullest extent permitted by law, any defenses or benefits that may be derived from or afforded by law which limit the liability of or exonerate guarantors or sureties, or which may conflict with the terms of this Guaranty. **"Lien"** means any lien, mortgage, pledge, assignment, security interest, charge or encumbrance of any kind (including any conditional sale or other title retention agreement, any lease in the nature thereof, and any agreement to give any security interest) and any option, trust or other preferential arrangement having the practical effect of any of the foregoing.

4

6. **Guarantor's Rights of Subrogation, Contribution, Etc.; Subordination of Other Obligations.**  Until the Guaranteed Obligations shall have been paid in full, Guarantor shall withhold exercise of (a) any claim, right or remedy, direct or indirect, that Guarantor now has or may hereafter have against Buyer or any of its assets in connection with this Guaranty or the performance by Guarantor of its obligations hereunder, in each case whether such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise and including without limitation (i) any right of subrogation, reimbursement or indemnification that Guarantor now has or may hereafter have against Buyer, (ii) any right to enforce, or to participate in, any claim, right or remedy that Guaranteed Party now has or may hereafter have against Buyer, and (iii) any benefit of, and any right to participate in, any collateral or security now or hereafter held by Guaranteed Party with respect to Buyer, and (b) any right of contribution Guarantor now has or may hereafter have against any other guarantor of any of the Guaranteed Obligations.  Guarantor further agrees that, to the extent the agreement to withhold the exercise of its rights of subrogation, reimbursement, indemnification and contribution as set forth herein is found by a court of competent jurisdiction to be void or voidable for any reason, any rights of subrogation, reimbursement or indemnification Guarantor may have against Buyer or against any collateral or security, and any rights of contribution Guarantor may have against any such other guarantor, shall be junior and subordinate to any rights Guaranteed Party may have against Buyer, to all right, title and interest Guaranteed Party may have in any such collateral or security, and to any right Guaranteed Party may have against such other guarantor.

7. **Expenses.**  Guarantor agrees to pay, or cause to be paid, on demand, and to save Guaranteed Party harmless against liability for, (i) any and all reasonable, out-of-pocket costs and expenses (including reasonable fees, costs of settlement and disbursements of counsel) incurred or expended by Guaranteed Party in connection with the enforcement of or preservation of any rights under this Guaranty and (ii) any and all costs and expenses (including those arising from rights of indemnification) required to be paid by Guarantor under the Lease as part of the Guaranteed Obligations.

8. **Financial Condition of Buyer.**  Guaranteed Party shall not have any obligation, and Guarantor waives any duty on the part of Guaranteed Party, to disclose or discuss with Guarantor its assessment, or Guarantor's assessment, of the financial condition of Buyer or any matter or fact relating to the business, operations or condition of Buyer.  Guarantor has adequate means to obtain information from Buyer on a continuing basis concerning the financial condition of Buyer and its ability to perform its obligations under the Lease, and Guarantor assumes the responsibility for being and keeping informed of the financial condition of Buyer and of all circumstances bearing upon the risk of nonpayment of the Guaranteed Obligations.

9. **Covenants.**  Guarantor agrees that, so long as any part of Guarantor's portion of the Guaranteed Obligations shall remain unpaid, Guarantor will perform or observe all of the terms, covenants and agreements that the Lease states that Buyer is to perform or observe.

10. **Set Off.**  In addition to any other rights Guaranteed Party may have under law or in equity, if any amount shall at any time be due and owing by Guarantor to Guaranteed Party under this Guaranty, Guaranteed Party is authorized at any time or from time to time, without notice (any such notice being expressly waived), to set off and to appropriate and to

apply any and all deposits (general or special, including but not limited to indebtedness evidenced by certificates of deposit, whether matured or unmatured) and any other indebtedness of Guaranteed Party owing to Guarantor and any other property of Guarantor held by Guaranteed Party to or for the credit or the account of Guarantor against and on account of Guarantor's liability for the Guaranteed Obligations hereunder and liabilities of Guarantor to Guaranteed Party under this Guaranty.

    **11.**  **Amendments and Waivers.** No amendment, modification, termination or waiver of any provision of this Guaranty, and no consent to any departure by Guarantor therefrom, shall in any event be effective without the written concurrence of Guaranteed Party and, in the case of any such amendment or modification, Guarantor.  Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

    **12.**  **Miscellaneous.** It is not necessary for Guaranteed Party to inquire into the capacity or powers of Guarantor or Buyer or the officers, directors, managers or any agents acting or purporting to act on behalf of any of them.

    The rights, powers and remedies given to Guaranteed Party by this Guaranty are cumulative and shall be in addition to and independent of all rights, powers and remedies given to Guaranteed Party by virtue of any statute or rule of law or in the Lease or any agreement between Guarantor and Guaranteed Party or between Buyer and Guaranteed Party.  Any forbearance or failure to exercise, and any delay by Guaranteed Party in exercising, any right, power or remedy hereunder shall not impair any such right, power or remedy or be construed to be a waiver thereof, nor shall it preclude the further exercise of any such right, power or remedy.

    In case any provision in or obligation under this Guaranty shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

    **THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF GUARANTOR AND GUARANTIED PARTY HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.**

    This Guaranty shall inure to the benefit of Guaranteed Party and their respective successors and assigns.

    ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE  STATE OF DELAWARE, AND BY EXECUTION AND DELIVERY OF THIS GUARANTY GUARANTOR ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE NONEXCLUSIVE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON

CONVENIENS AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS GUARANTY.  Guarantor agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested, to Guarantor at its address set forth below its signature hereto, such service being acknowledged by Guarantor to be sufficient for personal jurisdiction in any action against Guarantor in any such court and to be otherwise effective and binding service in every respect.  Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Guaranteed Party to bring proceedings against Guarantor in the courts of any other jurisdiction.

**GUARANTOR AND, BY ITS ACCEPTANCE OF THE BENEFITS HEREOF, GUARANTIED PARTY EACH AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS GUARANTY.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  GUARANTOR AND, BY ITS ACCEPTANCE OF THE BENEFITS HEREOF, GUARANTIED PARTY EACH (I) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR GUARANTOR AND GUARANTIED PARTY TO ENTER INTO A BUSINESS RELATIONSHIP, THAT GUARANTOR AND GUARANTIED PARTY HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS GUARANTY OR ACCEPTING THE BENEFITS THEREOF, AS THE CASE MAY BE, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (II) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS OF THIS GUARANTY.**  In the event of litigation, this Guaranty may be filed as a written consent to a trial by the court.

       **13.**    **Counterparts.**  This Guaranty may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original for all purposes; but all such counterparts together shall constitute but one and the same instrument.

[signatures follow]

**IN WITNESS WHEREOF**, Guarantor and, solely for purposes of the waiver of the right to jury trial contained in Section 12, Guarantied Party have caused this Guaranty to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**TOWER HEALTH**

By: _____
    Name: _____
    Title: _____


Address:   _____
                  _____
                  _____


**FRONT STREET HEALTHCARE PROPERTIES, LLC**

By: _____
    Name: _____
    Title: _____