# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11466 (KG)<br><br>(Jointly Administered) |

## DECLARATION OF MARTIE ANN POLASKI

I, Martie Ann Polaski, of the City and County of Philadelphia, Commonwealth of Pennsylvania, declare and state as follows:

1. I am the Acting Philadelphia & Atlanta Deputy Group Director, Office of Program Operations and Local Engagement, Region III, Centers for Medicare & Medicaid Services, United States Department of Health and Human Services, and am duly authorized to make this Proof of Claim on behalf of the United States.

2. A petition for bankruptcy under Chapter 11 of the Bankruptcy Code was filed by Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("HUH") and the debtors noted below (collectively, the "Debtors") on June 30, 2019.[1]

3. The above-mentioned Debtors are justly and truly indebted to the United States of America in the sum of **$3,406,070.37.**

4. Certain of the Debtors participated in the Medicare program as Part A Medicare Providers pursuant to separate Part A provider agreements and Part B Medicare Suppliers pursuant to separate Part B supplier agreements with the Secretary of the United States Department of Health and Human Services (the "Secretary"). The Medicare program is governed

---

[1] The Debtors in these jointly administered cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 through 1395lll, its implementing regulations and policies.

5. The Secretary contracts with Medicare Administrative Contractors ("MACs") to administer payment to providers for Medicare covered services. 42 U.S.C. § 1395kk-1; 42 C.F.R. §§ 421.400 – 421.404. From time to time during a provider's fiscal year, a provider submits claims for payment to its MAC.

6. For claims made under Medicare Part A, the MAC makes estimated interim payments of Medicare funds to the provider. 42 U.S.C. § 1395g(a); 42 C.F.R. part 412. After the end of each fiscal year, the provider must submit financial information in the form of a cost report verifying the actual amount of reimbursement owed to it for the past fiscal year. 42 C.F.R. §§ 412.52, 413.20; *see* 42 U.S.C. §§ 1395g and 1395hh (giving the Secretary authority to require submission of cost reports). Once the cost report has been submitted, the MAC audits the cost report for that year and determines the provider's actual, rather than estimated, reimbursement amount for the year. 42 U.S.C. §§ 1395g; 1395x(v)(1)(A)(ii); 42 C.F.R. §§ 412.112-412.130; 413.20 and 413.60.

7. When the actual reimbursement amount is determined, the MAC calculates an overpayment (or underpayment) based on the difference between the amount of actual interim payments to the provider and the amount of reimbursement determined to be due for the fiscal year. 42 C.F.R. § 413.64(f). Accordingly, the Secretary cannot know whether a provider owes the Secretary for overpayments relating to a particular fiscal year until after that year's cost report has been submitted and audited.

8. For individual Medicare Part B claims (which are not submitted on a cost report), where a supplier certifies that a given item or service it provided to a Medicare beneficiary was covered by Medicare and was medically necessary, the MAC, in the absence of evidence to the contrary, will process the claim for payment. After a MAC has paid Medicare Part B claims, the MAC may review claims, request additional information and, as appropriate, determine that claimed services were not reasonable, necessary, adequately documented and/or covered by Medicare, and make necessary adjustments. *See* 42 U.S.C. § 1395l(e) (prohibiting Medicare payment if supplier fails to furnish information needed to determine the amounts due "with respect to which the amounts are being paid *or for any prior period*") (emphasis added). CMS regulations at 42 C.F.R. §§ 421.200 and 421.304 provide that if, after appropriate consultation, the MAC concludes that a service, or services, for which a claim has been made and paid were not medically necessary, or that the claim presented was otherwise improper in reflecting the amount and character of the services rendered, the MAC is responsible for taking appropriate action with respect to an adjustment or rejection of the claim submitted to the MAC. The MAC may reopen all claims for up to four years after the initial determination, and reopen claims at any time if there is reliable evidence of fraud. 42 C.F.R. § 405.908(b).

9. Following final determination of an overpayment, interest accrues on unrepaid overpayment amounts at the applicable federal rate set forth in statutes and regulations, which changes periodically. 42 U.S.C. § 1395g(d); 42 C.F.R. § 405.378.

10. As of this date, the Secretary has identified pre-petition overpayments totaling $2,595,663.11 in principal and post-petition overpayments totalling $810,407.26 in principal owed by HUH. Debtors were previously given notice of all of these overpayments in the ordinary course of the Medicare program.

11. As a result of HUH's pre-petition overpayments, the Secretary has frozen a total of $1,671,395.83 in HUH's claims for reimbursement for pre-petition dates of service. The United States reserves the right, with court approval as necessary, to set-off the frozen amounts against the respective Debtors' pre-petition overpayments.

12. This claim reflects the known pre-petition liability of the Debtor to this instrumentality of the United States. The United States reserves the right to amend this claim to assert subsequently discovered liabilities.

13. The United States does not hold, and has not, nor has any person by its order, or for its use, had or received, any security or securities for the said debt.

14. No note or other negotiable instrument has been received for the said debt or for any part thereof, and no judgment has been rendered thereon.

15. The filing of this Claim is not: (a) a waiver or release of the United States' rights against any person, entity, or property; (b) a waiver or release of any right or claim of the United States, of any nature whatsoever, under the Bankruptcy Code or applicable non-bankruptcy law, including, but not limited to, to follow any property, or proceeds thereof, into the hands of whoever the same may be, including the receiver or trustee in bankruptcy; (c) an election of any remedy to the exclusion, express or implied, of any other remedy; (d) a consent that this Claim is a debt that is subject to discharge in this or any other bankruptcy proceeding; (e) a ratification or consent to any obligation or liability based upon or arising out of any transaction between the United States and Debtor; (f) a waiver or release of any right of the United States to have any and all final orders in any and all noncore matters entered only after de novo review by a United States District Court; or (g) a waiver or release of any right of the United States to trial by jury in any proceeding as to any and all matters so triable. All such rights are hereby expressly reserved by the United States without exception and with no purpose of confessing or conceding any right or claim by this filing or by any other participation in the case.

In accordance with 28 U.S.C. §1746,
I declare under penalty of perjury that
the foregoing is true and correct.

Executed on December 27, 2019 by

_____
Martie Ann Polaski
Acting Philadelphia & Atlanta Deputy Group Director
Office of Program Operations and Local Engagement,
Region III
Centers for Medicare & Medicaid Services
United States Department of Health and Human Services