IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

FILED
2019 DEC 27  PM 12: 33

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a. | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et al.*, | ) |
| | ) Jointly Administered |
| | ) |
| | ) Hearing Date: January 23, 2020 at 10:00 a.m. |
| | ) Objection Deadline: December 30, 2019 at 4:00 p.m. |

## OBJECTION TO THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE REJECTION OF HAHNEMANN RESIDENT PHYSICIAN EMPLOYMENT AGREEMENT

I, Ulyana Kulish, DPM, identified as a counterparty in the Eleventh Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Hahnemann Resident Physician Employment Agreement on an Exhibit 1, object to debtors and debtors in possession (collectively, the "**Debtors**") motion and relief requested. I object to the motion in its entirety and to the following paragraphs in particular:

6. States that "all resident physicians who were employed at Hahnemann as of the Petition Date left voluntarily ..." This is incorrect. On June 25, 2019 the Hahnemann Hospital mailed out a letter stating that "We [the Hahnemann University Hospital] regret to inform you that your position will be eliminated on August 25, 2019." *See* Exhibit 1. This clearly shows that the residents did not leave voluntarily and thus the Hahnemann University Hospital should not be granted their motion to eject Hahnemann resident physician employment agreements from the bankruptcy proceedings.

8. Similarly, the Debtors note that the termination of residents was voluntarily, which is wrong under beforementioned objection to paragraph number six.

Further, under Graduate Medical Education House Staff Employment Agreement 3.C the "hospital shall provide continuation of employment." *See* Exhibit 2.

3.D. States that the "Hospital shall provide occurrence-based professional liability insurance coverage for House Staff's acts and omissions, within the scope of the Program, that occur during the Training Period. Such coverage will provide legal defense and protection against awards from claims reported or filed during or after the completion of the Program, if and only if, the alleged omissions of House Staff occurred during the term of the Training Period and are/were within the scope of the Program." – As can be seen from the contract, even upon termination of the contract Hahnemann has responsibility to provide professional liability insurance."

17. The case law provided is inappropriate, the Debtor's provided cases that talk about leases, whereas, here the issue is employment contracts.

19. The debtors got the weighing test wrong. In this case, the weighing of equities clearly weighs in favor of the employee residents. Residents have provided services to patients of Hahnemann University Hospital and can be held professionally liable for these services for several years even

after completion of the residency programs. If they are denied insurance from Debtor under the contractors, then they may be personally liable for professional liability, shall such instance arise. Further, to remedy premature termination of the agreement, the resident incurred substantial expenses and it would be unfair to deny them the reimbursement for such expenses. Debtors, in this case will not be disadvantaged at any point, they will be in the same position as before. So given that residents will be put at a worse position than before and Debtors will remain in the same position the balancing of the equities clearly weighs in favor of the HUH Residents remaining in the bankruptcy procedures.

Wherefore, I, Ulyana Kulish, respectfully request denial of the Proposed Order granting the relief requested in Debtors motion.

Dated: December 26, 2019

Ulyana Kulish DPM

_____



June 25, 2019

*Exhibit 1*

**Via Email and U.S. Mail**

Ulyana Kulish
121 Stout
Hercules, CA 94547

Re:   **Announcement of Planned Action**

Dear Ulyana Kulish:

I am writing on behalf of Center City Healthcare LLC d/b/a Hahnemann University Hospital to inform you that Hahnemann University Hospital will close on August 25, 2019. The entire facility will be closed and all employees at the facility will be impacted. This closure is expected to be permanent.

We regret to inform you that your position will be eliminated on August 25, 2019. There will not be any bumping rights for the affected employees, that is, employees will not be able to displace more junior employees out of their job positions as a result of this closure.

If you have any questions or want additional information concerning this matter, please contact me at (215) 762-2991 or John DiNome, CHRO & Assistant General Counsel at (215) 762-7323.

Sincerely,

*Melissa Alfieri*

Melissa Alfieri
Human Resources Director
Hahnemann University Hospital

35526606 2 06/25/2019
35537911 1



*Exhibit 2*

**Graduate Medical Education**
230 N. Broad Street
Mail Stop 623
Philadelphia, PA 19102

April 15, 2019

Dear Dr. Ulyana Kulish :

I want to welcome you as a new house staff member at Hahnemann University Hospital / Drexel University College of Medicine. We are pleased that you will be part of our exciting graduate medical education program and working with us in the near future.

You are being offered a position as a **PGY 1** in **Podiatric Medicine and Surgery with Reconstructive Rearfoot/Ankle Surgery** beginning June 23, 2019 . The current salary for this level is $58,147.00. This appointment is contingent upon receipt of a medical training license from the State of Pennsylvania, a visa (if applicable), the completion of a Post Graduate Year One and health clearance (PPD, drug screening, etc.).

Your employment will be at will and will be subject to American Academic Health System's Open Door Policy and Fair Treatment Process (FTP) as more fully described in the Employee Handbook which can be obtained from Human Resources. The FTP and its provisions shall be incorporated into this offer letter. Additionally, your employment will be subject to American Academic Health System's customary policies, procedures, and rules.

Your signature below is a confirmation that you wish to accept the offer. Please sign and return this letter within ten (10) days. If the letter is not returned within 10 days, the Program has the right to seek another candidate.

The Office of Graduate Medical Education will send employment documents to you in the spring of 2019. A House Staff Employment Agreement (contract) will be available for your signature once you have passed all employment required clearances. In the interim, a business card of your respective GME Coordinator is enclosed for your convenience. Please inform your GME Coordinator of any change in status (i.e., address, C.V., ECFMG certification, social security, etc.).

Please inform your GME Coordinator of any change in status (i.e., address, C.V., ECFMG certification, social security, etc.).

Again, we are pleased that you will be joining us for the 2019-2020 academic year.

Most sincerely,

William C. Boyer, DHSc. MS, CHSE
Chief Academic Officer
Designated Institutional Official

I accept the position: _____    Date: 04/17/2019
                              Signature

# GRADUATE MEDICAL EDUCATION
# HOUSE STAFF EMPLOYMENT AGREEMENT

This Graduate Medical Education House Staff Employment Agreement ("Agreement") is made and entered into by and between Center City Healthcare, LLC d/b/a Hahnemann University Hospital with an address location of 230 N. Broad Street, Philadelphia, PA 19102, a Delaware limited liability company ("Hospital") and **Ulyana Kulish, D.P.M** ("House Staff") (each a "Party" and, collectively, the "Parties").

Hospital is recognized and accredited by the Accreditation Council for Graduate Medical Education ("ACGME") as the institutional sponsor for one or more residency programs, which are overseen by the Hospital's Graduate Medical Education Committee ("GMEC"), its Designated Institutional Official ("DIO") and its Program Director ("Program Director"). Hospital hereby employs House Staff to receive training in connection with Hospital's residency program designated in Section 1 below, subject to and in accordance with the terms and conditions set forth herein.

1. **Employment.** Hospital hereby employs House Staff as a post graduate year ("PGY") **1** in the **Podiatric Medicine and Surgery with Reconstructive Rearfoot/Ankle Surgery** graduate medical education ("GME") training program (the "Program") for the period of time beginning on June 10, 2019 for orientation and preclinical training with clinical training beginning **June 23, 2019** ("Start Date") and ending on **June 30, 2020** End Date"), which period of time shall be referred to as the training period ("Training Period"). House Staff shall report to the Hospital on the Start Date for mandatory House Staff orientation.

2. **Responsibilities of House Staff.** House Staff shall comply with all Hospital and Program requirements, including, but not limited to, the following:

    A. **Pre-Employment Requirements.** House Staff understand and acknowledge that this Agreement and House Staff's participation in the Program is contingent upon House Staff satisfying certain pre–employment requirements established by Hospital, state and federal laws prior to the Start Date, including, but not limited to, fulfilling all of the pre-employment checks set forth below in (i) through (vii). These requirements are continuing obligations of House Staff during the Training Period. Failure of House Staff to continue to adhere to any of the below-referenced requirements for the term of the Training Period will be cause for immediate termination of the Agreement by Hospital without any right to due process in accordance with the policies and procedures set forth in the GME House Staff Manual, which will be provided to House Staff on the Start Date.

        i. Documentation of identity verification and eligibility for employment, including work authorization and training visa status, if applicable;
        ii. Documentation of receipt of immunizations or signed declinations (required pursuant to Hospital policy);
        iii. Passing laboratory screening tests for the abuse of controlled substances;
        iv. Passing criminal background check;
        v. Documentation of occupational health screening;
        vi. Obtaining and maintaining a Pennsylvania medical training license; and
        vii. Proof of graduation from an accredited medical or osteopathic school, in accordance with the eligibility requirements set forth in the GME House Staff Manual.

    House Staff acknowledges and agrees that if all pre-employment requirements are not met prior to the Start Date, this Agreement may be either (i) delayed without pay to House Staff until all such pre-employment requirements have been met, or (ii) terminated by Hospital; in either case without the provision of due process, as set forth in the GME House Staff Manual.

    B. **Education and Professional Duties.** House Staff shall fulfill all educational and professional duties, obligations and assignments in accordance with the ACGME requirements for graduate medical education, the American Osteopathic Association's ("AOA") Basic Standards for Postdoctoral Training, and the American Dental Association ("ADA") and/or Council on Podiatric Medical Education's ("CPME") training requirements in addition to all other applicable training and accreditation requirements.

    C. **Manuals, Policies and Regulations.** House Staff shall be responsible for reading, understanding and abiding by all Hospital and Program policies, manuals, rules and regulations as they now exist and as they may be amended from time-to-time in Hospital's sole discretion.

    D. **Licensure.** House Staff shall obtain and maintain at all times during the Training Period a current license to practice medicine (either an educational limited training license or a full medical license) in the Commonwealth of Pennsylvania ("State"). House Staff must provide documentation of such licensure to Hospital upon request and shall immediately notify Hospital if any such license, permit or certification becomes restricted, revoked, suspended, or not renewed either prior to the Start Date of this Agreement or at any time during the Training Period. House Staff understand and acknowledge that failure to maintain current medical licensure will result in immediate suspension from the Program without pay until either (i) House Staff's license is renewed, or (ii) this Agreement is terminated in Hospital's sole discretion .

E. **Drug Enforcement Administration.** To the extent House Staff possesses a full medical license in the State, House Staff shall maintain an unrestricted Drug Enforcement Administration ("DEA") registration number.

F. **USMLE STEP 3 and COMLEX LEVEL 3 TESTING.** If applicable, House Staff acknowledges that Hospital policy requires House Staff to pass the United States Medical Licensing Examination ("USMLE") Step 3 or the Comprehensive Osteopathic Medical Licensing Examination ("COMLEX") Level 3 by the end of PGY 2 before House Staff will be eligible for promotion to PGY 3. Failure to pass the USMLE Step 3 or COMLEX Level 3 may result in disciplinary action up to and including termination of House Staff from the Program in accordance with Hospital policy.

G. **Confidentiality and HIPAA.** House Staff shall keep strictly confidential and hold in trust all confidential information of Hospital and/or its patients and not disclose or reveal any confidential information to any third party without the express prior written consent of Hospital. House Staff shall not disclose the terms of this Agreement to any person who is not a party to this Agreement, except to House Staff's legal and financial advisors, as required by law or as otherwise authorized in writing by Hospital. Unauthorized disclosure of confidential information or of the terms of this Agreement shall be a material breach of this Agreement. House Staff acknowledges that many healthcare providers are "covered entities" as that term is defined at 45 C.F.R. § 160.103. House Staff agrees to comply with the Health Information Technology for Economic and Clinical Health Act of 2009 (the "HITECH Act"), the Administrative Simplification Provisions of the Health Insurance Portability and Accountability Act of 1996, as codified at 42 U.S.C. 1320d, et seq. ("HIPAA"), and all current and future regulations promulgated under the HITECH Act or HIPAA. House Staff agrees not to use or further disclose any Protected Health Information ("PHI") as defined in 45 C.F.R. §160.103, including Electronic Health Information, other than as permitted by applicable laws and the terms of this Agreement.

H. **Extramural Professional Activities ("Moonlighting").** House Staff understands and acknowledges that Moonlighting outside the scope of the Program is prohibited unless specifically approved in advance in writing by Hospital, Hospital's DIO and the Program Director in accordance with Hospital and Program policies and procedures as set forth in the GME House Staff Manual. House Staff agrees, understands and acknowledges that Moonlighting outside the scope of the Program is not covered by the Hospital's professional liability insurance program. House Staff engaged in unapproved Moonlighting activities will be terminated in accordance with Hospital and Program policies and procedures.

3. **Responsibilities of Hospital.**

   A. **Education Program.** Hospital shall provide and maintain a Podiatric Medicine and Surgery with Reconstructive Rearfoot/Ankle Surgery GME program accredited by ACGME, AOA, ADA and/or CPME.

   B. **GME House Staff Manual.** Hospital shall make available to House Staff online an electronic manual of written policies and procedures defining the duties and privileges of House Staff participating in the Program (the "GME House Staff Manual"), including, but not limited to requirements relating to employee physical and drug screenings, dress code, impairment and substance abuse, disabilities and sexual harassment.

   C. **Conditions for Reappointment and Promotion.** Hospital shall provide continuation of employment, training and/or promotion to House Staff that is contingent upon satisfactory academic and professional performance as determined by the Program Director, Program faculty and in accordance with the policies and procedures described in the GME House Staff Manual. Measures of performance and promotion shall include, but not be limited to, achievement of competency-based goals and objectives for each level of training and specialty-specific milestones. Hospital is not obligated to renew or extend this Agreement for subsequent training levels in the event that House Staff's academic and professional performance is determined to be unsatisfactory, subject to the applicable provisions of due process set forth in the GME House Staff Manual. Hospital shall provide notice to House Staff prior to the End Date of this Agreement regarding promotion to the next year of training or graduation from the Program. If House Staff is denied promotion, Hospital shall endeavor to provide reasonable notice to House Staff as circumstances permit prior to the End Date of this Agreement. Disputes that arise from Hospital's promotion or graduation decisions shall be directed through the grievance and due process procedures described in the GME House Staff Manual.

   D. **Professional Liability Insurance.** Hospital shall provide occurrence-based professional liability insurance coverage for House Staff's acts and omissions, within the scope of the Program, that occur during the Training Period. Such coverage will provide legal defense and protection against awards from claims reported or filed during or after the completion of the Program, if and only if, the alleged omissions of House Staff occurred during the term of the Training Period and are/were within the scope of the Program. The minimum amount of coverage amount will be the limits as required by the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Act of 2002. Such professional liability coverage provided for the purpose of Program training does not extend to Moonlighting activities as described in Section 2(H) of this Agreement and/or other activities by House Staff.

   E. **Eligibility for Specialty Board Examinations.** Hospital shall provide information to House Staff related to eligibility for specialty-specific board examinations.

F. **Clinical Experience and Educational Work Hours ("Duty Hours").** Hospital shall be responsible for promoting patient safety and a high quality learning environment for education through carefully constructed "Duty Hour" assignments that comply with current ACGME requirements. Duty Hour assignments shall include any approved Moonlighting activities in accordance with ACGME requirements as set forth in the policies and procedures in the GME House Staff Manual. Such policies and procedures shall govern professional activities performed by House Staff outside the scope of this Agreement.

4. **Grievance and Due Process.** The Parties agree to comply with all grievance and due process policies and procedures set forth in the GME House Staff Manual to address House Staff disputes or disagreements, including proposed suspension, non-renewal, non-promotion or dismissal of House Staff.

5. **House Staff Compensation and Benefits.**

    A. **Base Salary.** Hospital shall pay House Staff an annual base salary commensurate with the House Staff's PGY status, as set forth in <u>Exhibit A</u> attached hereto and made a part hereof.

    B. **General Benefits.** Hospital shall provide House Staff with benefits as set forth in <u>Exhibit A</u> attached hereto and made a part hereof.

    C. **Vacation Time, Sick Time and Leaves of Absence.** The benefits set forth in <u>Exhibit A</u> attached hereto and made a part hereof include, among other things, vacation time, sick time, parental and other approved leaves of absence, including educational leave as described in the GME House Staff Manual. All leaves of absence taken by House Staff must be approved by the Program Director in coordination with the DIO. House Staff will not be reimbursed as cash or cash equivalent for leaves of absence not taken during the Training Period upon termination or expiration of this Agreement or otherwise be permitted to carryover to any subsequent contract year vacation time or leave of absences not taken. Hospital shall provide information to House Staff regarding the impact that any such leave(s) of absence may have on House Staff's ability to satisfy the requirements for completion of the Program.

    D. **Compensation in Full.** House Staff understands and acknowledges that the base salary and benefits described in <u>Exhibit A</u> attached hereto and incorporated herein are the sole compensation for participation in Program and services furnished by House Staff under this Agreement. House Staff agrees not to bill or collect from any patient or third-party payor for any services provided pursuant to this Agreement or to accept fees in any form from Hospital patients. The Parties acknowledge that none of the benefits granted hereunder are conditioned on any requirement that House Staff make referrals to, be in a position to make or influence referrals to, or otherwise generate business for Hospital.

6. **General Provisions.**

    A. **Falsification of Information by House Staff.** House Staff's falsification of any information supplied to the Program or Hospital, or House Staff assisting others in doing so, as part of House Staff's entrance requirements into the Program shall constitute grounds for immediate dismissal of House Staff from the Program and immediate termination of this Agreement, regardless of when such falsification is discovered.

    B. **Records.** Hospital and the Program expressly acknowledge their obligations as providers of health care and as an academic medical center to maintain as confidential the applicable educational records and evaluations of House Staff. These educational records and evaluations may be delivered to other health care treatment institutions or prospective employers only upon written request to the Program or Hospital's GME Office and upon written consent by House Staff; provided, however, records may be furnished to appropriate government agencies or third parties, as required by law.

7. **Compliance with Laws, Regulations, Accreditation and Program Policies.**

    A. House Staff shall be automatically upon the Start Date provided access to the GME House Staff Manual, as well as Hospital's specialty-specific program manual ("<u>Program Manual</u>"). House Staff shall abide by Hospital's Medical Staff Bylaws, Rules and Regulations, applicable Hospital policies and procedures, applicable Program policies and procedures, including the GME House Staff Manual and Program Manual, and all applicable federal and state laws. House Staff acknowledges that Hospital has certain obligations in connection with applicable laws, regulations and accreditation standards, including but not limited to obligations to: (i) the State, where Hospital is located; (ii) the Occupational Safety and Health Administration; (iii) the Office of Inspector General; (iv) Medicare and Medicaid; (v) The Joint Commission; (iv) the ACGME, AOA, ADA and/or CPME, as applicable; and (vii) all applicable labor, employment and civil rights laws. House Staff further acknowledges that Hospital from time-to-time may adopt policies, procedures and/or documentation requirements in connection with the implementation of such laws, regulations and accreditation standards. House Staff agrees to cooperate fully with Hospital in its compliance with all applicable laws, regulations and accreditation standards, as may be enacted or amended from time to time. House Staff will conduct himself/herself in a professional manner consistent with Hospital standards. The Parties shall not

discriminate on the basis of race, color, national origin, religion, sex, age (40 and older), sexual orientation, citizenship status, veteran status, disability or any other legally protected classification.

B. The Parties shall comply with applicable policies and procedures of the National Resident Match Program ("NRMP"), including any waiver requirements relating to the termination of this Agreement or release of House Staff to seek employment elsewhere. Any alleged breach or determined violation of the NRMP match results for failure to extend or accept appointment may result in serious consequences taken by the NRMP, per NRMP's policies and procedures.

8. **Notices.**

All notices provided under or in conjunction with this Agreement shall be delivered (a) personally, (b) by certified U.S. mail, return receipt requested, postage paid, or (c) by reputable overnight courier (such as Federal Express). Any delivery other than a personal delivery to House Staff shall be made to House Staff's residential address currently on file with Hospital. All notices to Hospital shall be delivered to the addresses below.

*If to Hospital:*
Hahnemann University Hospital
230 N. Broad Street
Philadelphia, PA 19102
Attn: Chief Executive Officer

*Copy to:*
Hahnemann University Hospital
Office of Academic Affairs/Dept of GME
Attn: Chief Academic Officer/DIO
230 N. Broad Street
Philadelphia, PA 19102

*Copy to:*
American Academic Health System
Center Square West
1500 Market Street, 24th Floor
Philadelphia, PA 19102
Attn: Legal Department

*If to House Staff:*
Ulyana Kulish , D.P.M

Any notice shall be deemed to have been duly given three (3) United States Post Office delivery days following the date of mailing. Overnight mail shall be deemed to have been given on the next business day following the date of mailing. Any notice delivered in person shall be deemed given upon delivery. Either party may change the address for the service of notice by providing written notice to the other in the manner herein provided for the provision of such notice.

9. **Term and Termination.**

   A. **Term.** If not earlier terminated as otherwise provide in this Agreement, this Agreement shall terminate as of the End Date. Termination of this Agreement for any reason shall immediately terminate House Staff's appointment to the Program.

   B. **Termination for Cause.** The DIO and/or Hospital may immediately terminate this Agreement for any of the following reasons with respect to House Staff:

      i. Professional incompetence, as determined solely by Hospital's Clinical Competency Committee;

      ii. Failure to obtain and maintain, or the denial, suspension, revocation, termination, restriction, lapse or voluntary relinquishment (under threat of disciplinary action) of House Staff's license to practice medicine and/or DEA registration, as applicable;

      iii. Substantial breach of the terms of this Agreement;

      iv. Serious neglect of duty or violation of Hospital or Program rules, regulations, policies or procedures, including but not limited to those relating to the use of drugs and alcohol;

      v. House Staff's failure to follow Hospital's policies and procedures and other rules of conduct applicable to all employees of Hospital, including, without limitation, policies prohibiting sexual harassment;

      vi. House Staff engaging in Medicare or Medicaid fraud and abuse, including violations of the Anit-Kickback Statute and Stark Law;

      vii. Becoming uninsurable by Hospital's selected insurance provider for any reason;

      viii. Convicted of a felony or other serious crime, as determined by Hospital;

      ix. Conduct that Hospital reasonably determines to be prejudicial to the best interests of Hospital or the Program;

  x. Action or inaction reasonably determined by Hospital to involve inadvisable decisions that reflect poorly on Hospital/Program or that are contrary to the best interests of patient care or Hospital;

  xi. Unapproved leave of absence from the Program;

  xii. Failure to progress satisfactorily in the Program's educational and clinical program;

  xiii. Death or total disability as defined by Hospital's employment policies and procedures, or inability to perform duties required hereunder for a designated period of time in accordance with Hospital's employment policies and procedures;

  xiv. House Staff's conviction of an offense related to health care or House Staff's listing by a federal agency as being debarred, excluded, or otherwise ineligible for federal health care program participation;

  xv. Any changes in law or economics which materially reduces or eliminates government support on which Hospital relies in order to operate the Program;

  xvi. Engaging in unapproved Moonlighting or other external activities;

  xvii. Material failure to comply with any specific obligations or intent of this Agreement as determined solely by Hospital; or

  xviii. The breach by House Staff of the confidentiality and HIPAA provisions of this Agreement.

 C. **Termination Without Cause.** House Staff may terminate this Agreement without cause for any reason or no reason by giving Hospital at least ninety (90) days' prior written notice, provided that such termination complies with NRMP requirements.

 D. **Termination for Program Closure or Reduction.** In the event the Program is closed or reduced, Hospital shall use its best efforts to allow House Staff to complete the Program at Hospital. In the event that continuation of the Program is untenable by Hospital, Hospital shall utilize its best efforts to transfer House Staff to another program at Hospital or elsewhere. If Hospital loses its accreditation during House Staff's Training Period, on the effective date of any loss of such accreditation, House Staff shall be immediately released from this Agreement, the Agreement shall terminate and Hospital and its personnel shall provide references in connection with House Staff's application to enter an appropriate program elsewhere.

 E. **Termination for Changes in Law.** This Agreement is intended to comply with all applicable laws, rules and regulations. If at any time Hospital determines that the Agreement does not, in any respect, comply with such laws, rules, and regulations, House Staff agrees to cooperate with Hospital to negotiate a new agreement which fully complies with such laws, rules and regulations. If the Parties cannot reach agreement within thirty (30) days, then Hospital may immediately terminate this Agreement.

 F. **Effect of Termination.** As of the effective date of termination of this Agreement, neither Party shall have any further rights or obligations hereunder, except (a) as otherwise provided herein (including the survival provisions of Section 15); (b) for rights and obligations accruing prior to such effective date of termination (including accrued but unpaid compensation); or (c) arising as a result of any breach of this Agreement.

10. **Intellectual Property.** All patents, formulae, ideas, inventions, processes, copyrights, know-how, proprietary information, trademarks, trade names, or other developments for future improvements to patients that are conceived through House Staff's work during the Training Period shall be the property of Hospital, and all royalties, fees, or other income attributable to it will be the sole property of the Hospital. This provision shall not apply where any such patents, formulae, ideas, inventions, processes, copyrights, know-how, proprietary information, trademarks, trade names, or other developments for future improvements to patients that are conceived or related to research conducted with Drexel University College of Medicine faculty. House Staff shall promptly disclose in writing to House Staff's Program Director and department chair all patents, formulae, ideas, inventions, processes, copyrights, know-how, proprietary information, trademarks, trade names, or other developments for future improvements to patients that are conceived through the House Staff's work during the Training Period. House Staff shall execute, from time to time, during or after termination of this Agreement, all documents, including without limitation, applications for letters of patent and assignment thereof, as may be deemed necessary or desirable by Hospital to effectuate the provisions of this Section 10. This Section 10 shall survive the expiration or termination of this Agreement for any reason.

11. **Warranty that House Staff is not Excluded from Federal Healthcare Programs.** House Staff represents and warrants to Hospital that House Staff (i) is not currently excluded, debarred, or otherwise ineligible to participate in any federal health care programs as defined in 42 U.S.C. § 1320a-7b(f) ("<u>Federal Healthcare Programs</u>"), (ii) has not been convicted of a criminal offense related to the provision of healthcare items or services, and (iii) is not, to the best of House Staff's

knowledge or belief, under investigation or otherwise aware of any circumstances which may result in House Staff being excluded from participation in Federal Healthcare Programs. This shall be an ongoing representation and warranty by House Staff during the Training Period and House Staff shall immediately notify Hospital of any change in the status of the representations and warranties set forth in this Section 11. Notwithstanding any provision of this Agreement to the contrary, any breach of this Section 11 shall be cause for immediate termination of this Agreement by Hospital, in its sole discretion.

12. **Entire Agreement; Modifications; Governing Law; Counterparts; Waiver; Assignment; Third Party Beneficiaries.** This Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the Parties relating to the subject matter hereof. This Agreement may not be amended or modified except by mutual written agreement of the Parties. This Agreement shall be construed in accordance with the laws of the State which provision shall survive the expiration or other termination of this Agreement. This Agreement may be executed in one or more counterparts, all of which together shall constitute only one Agreement. A waiver by either party of a breach or failure to perform hereunder shall not constitute a waiver of any subsequent breach or failure. House Staff shall not assign or transfer, in whole or in part, this Agreement or any of House Staff's rights, duties or obligations under this Agreement without the prior written consent of Hospital, and any assignment or transfer by House Staff without such consent shall be null and void. This Agreement is assignable by Hospital without consent or notice. Nothing in this Agreement, either expressly or implicitly, confers, or intends to confer, any rights or remedies upon any person or entity not a party to this Agreement, except as otherwise specifically stated herein.

13. **Compliance Obligations.** House Staff represents that House Staff has received, read, understands and shall abide by Hospital's Standards of Conduct and Hospital's Compliance Program. Additionally, House Staff shall comply and abide by Hospital's policies and procedures related to the prevention of fraud and abuse as well as all applicable laws and regulations, including the Anti-Kickback Statute and Stark Law. Hospital's Standards of Conduct, summaries of the Compliance Program, policies and procedures, including a summary of the Federal False Claims Act and any applicable state false claims laws (collectively, "False Claims Laws") with descriptions of penalties and whistleblower protections pertaining to such laws shall be made available to House Staff upon request.

14. **Arbitration.** Subject to the foregoing, any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled by arbitration in Philadelphia County, Pennsylvania, in accordance with the rules of the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration and applying the laws of the State. Any award rendered by the arbitrator shall be final and binding upon each of the Parties, and judgment thereof may be entered in any court having jurisdiction thereof. The costs of the arbitrator shall in all instances be borne equally by each party hereunder. Prior to initiating and pursuing arbitration under this Section 14, House Staff must have exhausted all other procedural remedies set forth in this Agreement applicable to the dispute or controversy.

15. **Survival.** The provisions of Sections 2.g., 3.D., 5, 6.B., 7.B., 8, 10, 12, and 14 shall survive expiration or termination of this Agreement regardless of the cause of such termination.

*[Remainder of page left intentionally blank. Signature page to follow.]*

**IN WITNESS WHEREOF,** the Parties have executed this Agreement effective on the date first written below.

House Staff

_____  Date: 04/17/2019
Ulyana Kulish, D.P.M

Hospital:

_____  Date: 3/29/2019
William C. Boyer, DHSc, MS, CHSE
Chief Academic Officer
Designated Institutional Official

_____  Date: 3/29/2019
Gary S. Bryant
Chief Executive Officer