# **Exhibit B**

SIEMENS FINANCIAL SERVICES, INC.

CONTRACT ADDENDUM

MASTER EQUIPMENT LEASE AGREEMENT

Dated: 06/10/2011

This Addendum shall become a part of that certain Master Equipment Lease Agreement dated 06/10/11 (the "Agreement") between Siemens Financial Services, Inc. ("Lessor") and the undersigned lessee ("Lessee"). If there is any conflict between the terms of this Addendum and the terms of the Agreement, the terms of this Addendum shall control. Capitalized terms used herein and not otherwise defined herein, unless the context otherwise requires, shall have the same meanings set forth in the Agreement.

Lessee and Lessor hereby agree as follows:

1. Section 1 of the Agreement is amended by the addition of the following provision:

"Lessor and Lessee agree that those certain medical facilities affiliated with Lessee identified on the schedule attached as Exhibit A hereto and made a part hereof (each an "Affiliated Facility") may from time to time enter into individual Leasing Schedules to this Agreement. With respect to each Leasing Schedule executed by an Affiliated Facility, and in order to induce Lessor to enter into the Lease and to provide Lessor with assurances of the performance of all obligations set forth in such Lease, Lessor and Lessee agree that for all purposes of such Lease the term "Lessee" shall mean the undersigned Lessee and the Affiliated Facility executing such Leasing Schedule as a co-lessee ("Co-Lessee"). Each Lessee shall be jointly and severally liable and responsible for fulfilling all obligations of Lessee under the Lease, and the undersigned Lessee hereby waives any and all claims of contribution, subrogation or recoupment that may arise with respect to its status as Lessee until all obligations under the Lease are satisfied. Moreover, it is specifically understood and agreed that Lessor shall discharge its obligations under the Lease by rendering performance to one but not both of the Lessees, provided that such performance is rendered to the Co-Lessee, who will be the actual user of the Equipment, and any consents, waivers or modifications to the Lease shall be sufficient and effective when executed by Lessor and only Lessee. For avoidance of doubt, (i) each Affiliated Facility shall be obligated as "Lessee" (together with the undersigned Lessee) only under those Leasing Schedules executed by it as a co-lessee, and (ii) the undersigned Lessee shall be obligated as "Lessee" (together with the applicable co-lessee) under all Leasing Schedules."

2.    Section 2 of the Master Agreement is amended as follows:

In the 3rd sentence, the last section of the sentence in the parenthetical, commencing with "(except that any Lease. . . .") is deleted.

3.    Section 3 of the Master Agreement is amended as follows:

(a) In the 7th sentence, "set up" is replaced with "setoff".

(b) In the last sentence, after "TO THE EXTENT PERMITTED BY APPLICABLE LAW", the following is inserted:  "AND IF APPLICABLE HEREUNDER".

4.    Section 4 of the Master Agreement is amended as follows:

(a) In the second sentence, after "lien", the following is inserted:  "except for customary liens, such as liens for future taxes, that do not arise from the wrongful actions of Lessee ("Customary Liens")".

(b) The last sentence is deleted in its entirety.

1

5.      In the last sentence of Section 5 of the Master Agreement, the following is inserted at the end of the sentence prior to the period:  ", other than with respect to Lessor's gross negligence or willful misconduct".

6.      Section 7 of the Master Agreement shall be amended as follows:

(a) Subsection (d) of the 5th sentence shall be replaced with the following:

"(d) permit the Equipment to be removed from the equipment location specified in the Leasing Schedule ("Equipment Location") except upon at least thirty (30) days prior written notice, stating the new location, and only to the location of another Affiliated Facility".

(b) In subsection (e)(ii) of the 5th sentence, "materially" is inserted prior to "impair".

(c) The 6th sentence shall be replaced with the following:

"All additions, repairs, parts, accessories, equipment and devices attached or affixed to any item of Equipment which are not readily removable, shall become part of the Equipment for all purposes hereof."

(d) In the last sentence, after "Lessor shall have the right", the following is inserted:  ", limited to twice per year unless a Default has occurred,".

7.      Section 8(a) of the Master Agreement shall be amended as follows:

(a) The 2nd sentence shall be replaced with the following:

"Lessee shall give Lessor prompt notice of any Material Damage (as defined below) to or loss of any Equipment or of any occurrence arising from the possession, use or operation of the Equipment resulting in death or bodily injury, or Material Damage to property.  For purposes of this section, "Material Damage" shall be defined to be damages in excess of $10,000."

(b) The portion of Section 8(a) of the Master Agreement commencing with the third sentence and continuing to the end of the section shall be replaced with the following:

"In the event of damage to any item(s) of Equipment, Lessee at its option shall (a) immediately place such item(s) in good repair (with no abatement of Lease Payments), with the proceeds of any insurance recovery being permitted to be applied to the cost of such repair, or (b) within ten (10) business days after the date of occurrence of the damage to the Equipment, time being of the essence, prepay all amounts owing under the Lease with respect to such damaged Equipment in accordance with the terms of the "Early Purchase Option" in the Lease.  Should any item(s) of Equipment become lost, stolen, destroyed, worn out, damaged beyond repair, condemned, confiscated, seized or requisitioned (herein "Event of Loss"), Lessee shall at its option, either (i) replace the same with like equipment in good repair (with no abatement of Lease Payments) with Lessor as the title holder to the Equipment, subject to the provisions of section 12 of the Leasing Schedule, and execute any documents or instruments reasonably requested by Lessor in order to ensure, in the event the Lease is deemed to be a security agreement, a valid, perfected and enforceable first priority security interest in such replaced equipment or pay to Lessor on the date of the scheduled Lease Payment immediately following such Event of Loss (herein "Loss Payment Date"), the pro rata portion relating to such item(s) of the net payment value as set forth in the schedule to the Lease and made a part thereof ("Net Payment Value") calculated for the Payment Period immediately following the Loss Payment Date plus all past due and unpaid Lease Payments and any other payments due and unpaid through the Loss Payment Date relating to such item(s), whereupon the Lease shall terminate as to such item(s)."

8.      Section 8(b) of the Master Agreement shall be amended as follows:

2

(a) In the first sentence, the phrase "or, if Option A was selected, the applicable Stipulated Loss Value thereof, if greater" is deleted.

(b) The following is inserted prior to the beginning of the 3ʳᵈ sentence:  "When a Default exists,".

9.    Section 9(a) of the Master Agreement shall be amended as follows:

(a) In subsection 9(a)(ii)(B), "twenty (20) days" is replaced with "thirty (30) days after receipt of notice from Lessor".

(b) In subsection 9(a)(iv), the following is inserted at the end of the subsection prior to the semicolon:  ", which is not removed within thirty (30) days from the date such unauthorized lien is imposed".

(c) In subsection 9(a)(v), "thirty (30)" is replaced with "forty-five (45)" and "the inability of an Obligor to generally pay its debts" is replaced with "the Obligor stating that it generally cannot pay its debts".

(d) Subsection 9(a)(vi) is replaced with the following:

"(vi) any material adverse change from the date of the Leasing Schedule in a Guarantor's business operations or financial condition; the liquidation of an Obligor; without the prior written consent of Lessor, not to be unreasonably withheld, any sale or other disposition of all or substantially all of the assets of a Guarantor, or any merger or consolidation of a Guarantor unless such Guarantor is a surviving entity and such Guarantor's tangible net worth, after giving effect to such transaction, equals or exceeds that which existed prior thereto, or the cessation of business by a Guarantor; provided, however, that if one of these events occur with respect to a Guarantor and such Guarantor is replaced with a guarantor ("Replacement Guarantor") with a Standard and Poors' rating of at least BB- (or similar credit rating reasonably satisfactory to Lessor) as of the date of the occurrence of such event and further provided that (a) the Replacement Guarantor is a U.S. company, (b) there is no pending material litigation, proceeding or investigation or threatened material litigation, proceeding or investigation against such Replacement Guarantor that could have a material adverse effect on such Replacement Guarantor and (c) such Replacement Guarantor executes all documents reasonably required by Lessor to evidence Replacement Guarantor's guaranty of the Lease, then the occurrence of any such foregoing event shall not be an event of Default."

(e) Subsection 9(a)(vii) is replaced with the following:

"(vii) (A) a default by a Guarantor under any guaranty of a Lease, or under a guaranty of a lease under a Master Equipment Lease Agreement with Lessor, as lessor; (B) a default by a Lessee under any Lease with Lessor, provided that a default by a co-lessee other than Co-Lessee under a Lease shall not constitute a default under the Lease".

(f) Subsection 9(a)(viii) is deleted in its entirety.

10.    Section 9(b) of the Master Agreement shall be amended as follows:

(a) In the first sentence of the subsection, "Upon the occurrence of any Default" is replaced with "Upon the occurrence and continuation of any Default".

(b) Subsection 9(b)(i) is replaced with the following:  "cancel or terminate the Lease and/or any unfunded commitments or proposals to Lessee under or in connection with this Agreement or any other Master Equipment Lease Agreement between Lessor and Lessee".

(c) At the end of subsection 9(b)(ii), the following is inserted prior to the semicolon:  ", but subject to all laws applicable to such Equipment and to the premises where such Equipment is located".

(d) In subsection 9(b)(v), "expenses" is replaced with "reasonable expenses".

3

(e) The "and" at the end of subsection (v) is deleted and at the end of subsection (vi), prior to the period, the following is inserted: "; and (vii) permit Lessee, but only within ten (10) business days after the date of occurrence of any Default and time being of the essence, prepay all amounts owing under the Lease in accordance with the terms of the "Early Purchase Option" in the Schedule".

(f) In the last sentence of this section, the following is inserted prior to the period: ", but in all cases subject to applicable law in connection with such Equipment and the premises where such Equipment is located."

11.    Section 9(c) of the Master Agreement shall be deleted in its entirety.

12.    Section 9(d) of the Master Agreement is deleted and replaced with the following:

"(d) Lessor may exercise the following remedy in addition to the remedies set forth in Section 9(b) above (which remedies shall be cumulative, and may be exercised simultaneously, in each case to the extent permitted by law): By notice to Lessee, as liquidated damages for loss of a bargain and not as a penalty, declare the Net Payment Value calculated for the Payment Period immediately following the date of such notice immediately due and payable, together with (i) all past due and unpaid Lease Payments through such Payment Period, and (ii) all other amounts due and unpaid under the Lease (including late charges), whereupon such shall be immediately due and payable."

13.    Section 11 of the Master Agreement is amended as follows:

(a) The 2nd sentence shall be deleted in its entirety.

(b) The following is inserted at the beginning of the first sentence: "Subject in all cases to Lessee's exercise of its early purchase option as described in the Lease, "

14.    Section 12 of the Master Agreement shall be amended as follows:

(a) In subsection 12(b), "judgment" is replaced with "material judgment".

(b) In subsection 12(d), the following is inserted at the end of the subsection prior to the semicolon: ", provided, however, if the financial statements of the Guarantor are publicly available, then Lessee shall not be required to furnish such financial statements."

(c) In subsection 12(f), "all information set forth on the Leasing Schedule is true and complete" shall be replaced with "all information set forth on the Leasing Schedule is true and complete in all material respects".

(d) Subsection 12(j) is replaced with the following: "(j) Lessee shall promptly notify Lessor in writing upon the occurrence of any Default".

15.    In Section 13 of the Master Agreement, subsection (ii), "reasonable" is inserted prior to "costs" and after "Lessor may determine", the following is inserted: "in its reasonable discretion".

16.    Section 14 of the Master Agreement shall be amended as follows:

(a) At the end of the first sentence, the following shall be inserted prior to the period: "but only to banks, financial institutions, financial services companies or leasing companies that customarily lease or finance equipment similar to the Equipment or to one of Lessor's affiliates."

(b) In the 4th sentence, "assignments" is replaced with "assignments permitted hereunder".

4

(c) In the last sentence, the following is inserted at the end prior to the period: "PROVIDED, HOWEVER, THAT ANY LESSEE MAY ASSIGN ANY LEASE AND TRANSFER ANY EQUIPMENT TO AN AFFILIATED FACILITY PROVIDED THAT LESSOR HAS RECEIVED AT LEAST 30 DAYS PRIOR WRITTEN NOTICE OF THE ASSIGNMENT AND THE ORIGINAL LESSEE AND ASSIGNEE/TRANSFEREE LESSEE HAVE EXECUTED ALL DOCUMENTS REASONABLY REQUIRED BY LESSOR TO EVIDENCE SUCH TRANSFER AND ASSIGNMENT."

17.    Section 15 of the Master Agreement shall be amended as follows:

(a) The 9th sentence ("No action, regardless of form. . . .") is deleted in its entirety.

(b) In the 10th sentence, "to the extent required for their full observance" is replaced with "to the extent such provisions are specifically stated to survive".

(c) The 11th sentence is deleted in its entirety.

(d) In the 13th sentence, "reasonable" is inserted prior to "costs".

(e) The 16th sentence is deleted in its entirety.

(f) In the last sentence, "NEW JERSEY" is replaced with "New York".

IN WITNESS WHEREOF, the Lessor and Lessee have caused this Addendum to be executed by their authorized representatives.  For all purposes hereof, the date of this Addendum shall be the date of Lessor's execution as set forth below.

LESSOR:                                          LESSEE:

SIEMENS FINANCIAL SERVICES, INC.                 TENET HEALTHSYSTEM MEDICAL, INC.

BY:  _____                     BY:  _____
        (Authorized Signature)                            (Authorized Signature)

NAME:  _____                   NAME:  _James E. Snyder III_
          (Printed or Typed)                               (Printed or Typed)

TITLE:  _____                  TITLE:  _Assistant Treasurer_
           (Printed or Typed)                              (Printed or Typed)

BY:  _____                     DATE:  _6/12/12_
        (Authorized Signature)

NAME:  _Michele Morrisey_
          (Printed or Typed)

TITLE:  _Senior Lease Admin._
           (Printed or Typed)

DATE:  _6/14/12_

5

**EXHIBIT A**

**SCHEDULE OF AFFILIATED FACILITIES**

**(See attached list)**

LIST OF Tenet General Hospitals and Specialty Facilities
**Alabama**
Facility Name /Legal Name
Brookwood Medical Center/ Brookwood Health Services, Inc. (AL)
**California**
Facility Name/ Legal Name
Desert Regional Medical Center/ Tenet HealthSystem Desert, Inc. (CA)
Doctors Hospital of Manteca /Doctors Hospital of Manteca, Inc. (CA)
Doctors Medical Center of Modesto/ Doctors Medical Center of Modesto, Inc. (CA)
Fountain Valley Regional Hospital /Fountain Valley Regional Hospital and Medical Center (CA)
John F. Kennedy Memorial Hospital /JFK Memorial Hospital, Inc. (CA)
Lakewood Regional Medical Center /Lakewood Regional Medical Center, Inc. (CA)
Los Alamitos Medical Center /Los Alamitos Medical Center, Inc. (CA)
Placentia-Linda Hospital /Placentia-Linda Hospital, Inc. (CA)
San Ramon Regional Medical Center/ San Ramon Regional Medical Center, Inc. (CA)/ Pleasanton Diagnostic Imaging, Inc.
Sierra Vista Regional Medical Center /Sierra Vista Hospital, Inc. (CA)
Twin Cities Community Hospital /Twin Cities Community Hospital, Inc. (CA)/ Templeton Imaging, Inc.
**Florida**
Facility Name/ Legal Name
Coral Gables Hospital/CGH Hospital, Ltd. (FL) /Coral Gables Hospital, Inc., the General Partner of CGH Hospital, Ltd.
Delray Medical Center /Delray Medical Center, Inc. (FL)/ DMC Imaging, LLC
Good Samaritan Medical Center /Tenet Good Samaritan, Inc. (FL)
Hialeah Hospital /Tenet Hialeah HealthSystem, Inc. (FL)
North Shore Medical Center /Tenet HealthSystem North Shore, Inc. (FL)
North Shore Medical Center – FMC Campus /Tenet HealthSystem North Shore, Inc. (FL)
Palm Beach Gardens Medical Center /Palm Beach Gardens Community Hospital, Inc. (FL)
Palmetto General Hospital /Lifemark Hospitals of Florida, Inc. (FL)
St. Mary's Medical Center /Tenet St. Mary's, Inc. (FL)
West Boca Medical Center /West Boca Medical Center, Inc. (FL)
**Georgia**
Facility Name /Legal Name
Atlanta Medical Center/ Tenet HealthSystem GB, Inc. (GA)
North Fulton Hospital/ North Fulton Medical Center, Inc. (GA)
South Fulton Medical Center /Tenet South Fulton, Inc. (GA)
Spalding Regional Medical Center /Tenet HealthSystem Spalding, Inc. (GA)
Sylvan Grove Hospital /Tenet HealthSystem SGH, Inc. (GA)
**Missouri**
Facility Name/ Legal Name
Des Peres Hospital /Tenet HealthSystem DI, Inc. (MO)
Saint Louis University Hospital /Tenet HealthSystem SL, Inc. (MO)
**Nebraska**
Facility Name/ Legal Name
Creighton University Medical Center /Creighton Saint Joseph Regional Healthcare System, L.L.C. (DE)
**North Carolina**
Facility Name/ Legal Name/State
Central Carolina Hospital /AMISUB of North Carolina, Inc. (NC)
Frye Regional Medical Center/ Frye Regional Medical Center, Inc. (NC)
**Pennsylvania**
Facility Name /Legal Name/State
Hahnemann University Hospital /Tenet HealthSystem Hahnemann, LLC (PA)
St. Christopher's Hospital for Children/ Tenet HealthSystem St. Christopher's Hospital for Children, LLC (PA)
**South Carolina**
Facility Name Legal Name/State
Coastal Carolina Hospital /Coastal Carolina Medical Center, Inc. (SC)
East Cooper Medical Center/ East Cooper Community Hospital, Inc. (SC)
Hilton Head Hospital/Hilton Head Health System, L.P. (SC)
Piedmont Medical Center /MISUB of South Carolina, Inc. (SC)
**Tennessee**
Facility Name/Legal Name/
Saint Francis Hospital /misub (SFH), Inc. (TN)
Saint Francis Hospital – Bartlett /Tenet HealthSystem Bartlett, Inc. (TN)
**Texas**
Facility Name/Legal Name
Centennial Medical Center /Tenet Frisco, Ltd. (TX)
Cypress Fairbanks Medical Center /New Medical Horizons II, Ltd. (TX)
Doctors Hospital at White Rock Lake /Tenet Hospitals Limited (TX)
Houston Northwest Medical Center/ Houston Northwest Operating Company, L.L.C. (TX)
Lake Pointe Medical Center /Lake Pointe Operating Company, L.L.C. (TX)
Nacogdoches Medical Center /TH Healthcare, Ltd. (TX)
Park Plaza Hospital /TH Healthcare, Ltd. (TX)
Plaza Specialty Hospital (Long-Term Acute Care) /Houston Specialty Hospital, Inc. (TX)
Providence Memorial Hospital /Tenet Hospitals Limited (TX)
Sierra Medical Center /Tenet Hospitals Limited (TX)
Sierra Providence East Medical Center /Tenet Hospitals Limited (TX)