# **<u>Exhibit C</u>**

# SIEMENS

**Siemens Financial Services, Inc.**

**LEASING SCHEDULE #: 35052-51346**

| | |
|---|---|
| **LESSOR:** SIEMENS FINANCIAL SERVICES, INC.<br>170 Wood Avenue South<br>Iselin, NJ 08830<br>(800) 327-4443 | **LESSEE:** Tenet Healthsystem Hahnemann, L.L.C.<br>*(Exact Legal Name; herein "Lessee")*<br>1445 Ross Ave, Ste 1400<br>*(Address)*<br>Dallas, TX 75202<br>*(City, State, Zip)* |

LEASING SCHEDULE # 35052-51346 (herein also referred to as the "Leasing Schedule" or "Lease"), to that certain Master Equipment Lease Agreement dated 06/10/2011 (herein "Agreement"), between Lessor and Lessee.

1. **EQUIPMENT DESCRIPTION:** 1 Artis Zee Ceiling Interv. Rad. and all equipment related thereto as described in Supplier's Quote # 1-I5B3XR.

2. **EQUIPMENT COST:** $684,181.00
   **Financed Taxes:** $54,734.48
   **TOTAL EQUIPMENT COST:** $738,915.48
   **Total Finance Charges:** $40,547.88
   **Finance Rate:** 3.50%

3. **SUPPLIER:** Siemens Medical Solutions USA, Inc.

4. **LEASE TERM** (in months)**:** thirty-six (36)
   (plus any Interim Period, if applicable)

5. **COMMENCEMENT DATE:** The date of Equipment acceptance as set forth in a delivery and acceptance certificate, delivered to Lessor, in the form supplied by Lessor.

6. **NUMBER OF LEASE PAYMENTS:** thirty six (36)

7. **LEASE PAYMENT** (per payment period)**:** $21,651.76
   Base Rate: 1.17900%
   Reference Rate: Yield of the **3 Year Swap Rate**
   Base Rate Determination Date: October 11, 2016
   Reference Rate Source: **Federal Reserve Statistical Release H.15**
   Payable:

   **In Arrears** – First Lease Payment due on the first (Payment Period) anniversary of the Commencement Date, or if Interim Rent is applicable, the first day of the second month immediately following the Interim Period.

8. **PAYMENT PERIOD:** Monthly

9. (a) **ADVANCE LEASE PAYMENT(S):** NA

9. (b) **DOCUMENTATION FEE:** NA

10. (a) **EQUIPMENT LOCATION** (if different from Lessee's address above)**:** Hahnemann University Hospital, 1400 Race St (West of Broad), Philadelphia, PA 19102

10. (b) **LESSEE'S STATE OF INCORPORATION/ORGANIZATION:** PA

11. **INTERIM RENT APPLICABLE:** [ ] YES [X] NO;
    AMOUNT: $

12. **PURCHASE OPTION:** Lessee selects the following option (which shall be irrevocable by Lessee once exercised):
    OPTION A [ ] a **Fair Market Value** purchase option.
    OPTION B [ ] a **Fixed Purchase Option** at a Purchase Option Price of [ ]% of the Total Equipment Cost.
    OPTION C [X] a **Nominal Fixed Purchase Option** at a Purchase Option Price of $ 1.00.

---

**THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE FOLLOWING PAGE**

**IN WITNESS WHEREOF,** the parties hereto have duly executed the Lease as of the dates set forth below. For all purposes hereof, the date of the Lease shall be the date of Lessor's acceptance as set forth below. **LESSEE ACKNOWLEDGES THAT NEITHER LESSOR NOR THE SUPPLIER IS AN AGENT OR REPRESENTATIVE OF THE OTHER AND NEITHER HAS AUTHORITY TO BIND THE OTHER.**

| | |
|---|---|
| ACCEPTED BY:<br>LESSOR: SIEMENS FINANCIAL SERVICES, INC.<br>BY: *Maureen CO-Thompson* *(Authorized Signature)*<br>NAME: Maureen Ciliberto-Thompson *(Printed or Typed)*<br>TITLE: VP *(Printed or Typed)*<br>BY: *Jaunu Guzman* *(Authorized Signature)*<br>NAME: Jaunu Guzman *(Printed or Typed)*<br>TITLE: VP *(Printed or Typed)*<br>DATE: 11-1-16 | BY EXECUTION HEREOF, THE SIGNER CERTIFIES THAT (S)HE HAS READ THE ENTIRE LEASE, THAT LESSOR OR ITS REPRESENTATIVES HAVE MADE NO AGREEMENTS OR REPRESENTATIONS EXCEPT AS SET FORTH HEREIN, OR IN THE AGREEMENT, AND THAT (S)HE IS DULY AUTHORIZED TO EXECUTE THE LEASE ON BEHALF OF LESSEE.<br>LESSEE: Tenet Healthsystem Hahnemann, L.L.C.<br>BY: *(signature)* *(Authorized Signature)*<br>NAME: James E. Snyder III *(Printed or Typed)*<br>TITLE: Assistant Treasurer *(Printed or Typed)*<br>DATE: 10/21/16 |

**OPTION A - FAIR MARKET VALUE PURCHASE OPTION:** If Option A has been selected, provided no Default has occurred and is continuing and provided the Lease shall not have previously terminated, Lessee shall have the option, exercisable by written notice to Lessor received by Lessor at least one hundred twenty (120) but not more than one hundred eighty (180) days before the expiration of the (original) Lease Term, to purchase on the day following the last day of such Lease Term (herein "Purchase Date") all but not less than all of the Equipment subject to the Lease for its "Fair Market Value". Fair Market Value shall mean the value of the Equipment (on an installed and operating basis) which would be obtained in an arm's-length transaction between an informed and willing buyer-user (other than a lessee currently in possession or a used equipment dealer) under no compulsion to buy, and an informed and willing seller under no compulsion to sell, and in such determination, costs of removal from the location of current use shall not be a deduction from such value. Fair Market Value shall be determined by the mutual agreement of Lessor and Lessee in accordance with the preceding sentence. If Lessor and Lessee cannot agree, Fair Market Value shall be determined by a qualified independent equipment appraiser selected by Lessor and approved by Lessee, and Lessee shall pay the cost of appraisal. Provided Lessee has timely exercised its option to purchase, Lessee shall pay to Lessor on the Purchase Date the aforementioned purchase price in cash, together with all sales and other taxes or costs applicable to the transfer of the Equipment and any other amounts as may be due and owing under the Lease, whereupon Lessor shall transfer its interest in the Equipment to Lessee without recourse, on an **AS-IS, WHERE-IS** basis and without any warranty, express or implied from Lessor, other than the absence of any liens by or through Lessor, except those (if any) Lessee is obligated to discharge.

**OPTION B - FIXED PURCHASE OPTION:** If Option B has been selected, provided no Default has occurred and is continuing and provided the Lease shall not have previously terminated, Lessee shall have the option, exercisable by written notice to Lessor received by Lessor at least one hundred twenty (120) but not more than one hundred eighty (180) days before the expiration of the (original) Lease Term, to purchase on the day following the last day of such Lease Term (herein "Purchase Date") all but not less than all of the Equipment subject to the Lease for the amount specified in Option B. Provided Lessee has exercised its option to purchase, Lessee shall pay to Lessor on the Purchase Date the aforementioned purchase price in cash, together with all sales and other taxes or costs applicable to the transfer of the Equipment and any other amounts as may be due and owing under the Lease, whereupon Lessor shall transfer its interest in the Equipment to Lessee without recourse, on an **AS-IS, WHERE-IS** basis and without any warranty, express or implied from Lessor, other than the absence of any liens by or through Lessor, except those (if any) Lessee is obligated to discharge.

**OPTION C - NOMINAL FIXED PURCHASE OPTION:** If Option C has been selected, provided no Default has occurred and is continuing and provided the Lease shall not have previously terminated, Lessee may purchase all but not less than all of the Equipment at the end of the (original) Lease Term for the nominal purchase price specified in Option C. Lessee shall pay to Lessor on the day following the last day of such Lease Term such purchase price together with all sales and other taxes applicable to the transfer of the Equipment and any other amounts as may be due and owing under the Lease, whereupon Lessor shall transfer its interest in the Equipment to Lessee without recourse, on an **AS-IS, WHERE-IS** basis and without any warranty, express or implied from Lessor, other than the absence of any liens by or through Lessor, except those (if any) Lessee is obligated to discharge.

**13. LEASE PAYMENTS; ADJUSTMENTS:** Lessee acknowledges that the Lease Payments herein, are based upon the Total Equipment Cost set forth above, and as a result of authorized changes to the Equipment, the final Total Equipment Cost may increase or decrease by up to 10%. In such event, the Lease Payments shall be adjusted accordingly, and Lessee authorizes Lessor to correct the Lease (and all related documentation) to reflect such changes, and Lessee, if requested by Lessor, shall confirm such changes to Lessor in writing. The Lease Payments specified in the foregoing Section 7 are based upon the Base Rate, which is the Reference Rate as reported in the Reference Rate Source for the Base Rate Determination Date (in each case as specified in Section 7). The rate that will actually be used in establishing the Lease Payments will be increased by one (1) basis point for each one (1) basis point increase in the Reference Rate, as determined by Lessor and as reported in the Reference Rate Source for the date that is two (2) business days prior to the Commencement Date (or if no Reference Rate has been published in the Reference Rate Source for the date that is two (2) business days prior to the Commencement Date, then the immediately preceding date for which a Reference Rate has been reported). Lessee acknowledges that Lessor may access the Reference Rate Source through whichever medium Lessor deems appropriate, including, without limitation, print or online editions. Lessee authorizes Lessor to unilaterally make the appropriate changes to the Lease (and all related documentation) to reflect any changes to the Lease Payments consistent with the foregoing and, if requested by Lessor, Lessee shall confirm such changes to Lessor in writing.

**14. SUPPLY CONTRACT:** Lessee acknowledges either that (a) Lessee has reviewed and approved any written purchase agreement or purchase order covering the Equipment ("Supply Contract") purchased from Supplier, or (b) Lessor has informed or advised Lessee, in writing, either previously or by the Lease, of the following: (i) the identity of the Supplier, (ii) that Lessee may have rights under the Supply Contract, and (iii) that Lessee may contact the Supplier for a description of any such rights Lessee may have under the Supply Contract. If Lessee has entered into a written Supply Contract, then Lessee hereby assigns to Lessor all of Lessee's rights and interests in and to the Equipment and the Supply Contract. If requested by Lessor, Lessee shall obtain any consent required for such assignment. If Lessee has not entered into any such Supply Contract, Lessee authorizes Lessor to (and Lessor may at its option) act on behalf of Lessee to obtain a Supply Contract from Supplier. Lessor's sole obligation under the Supply Contract shall be to pay the Supplier for the Equipment, if (and only if) the Equipment is accepted by Lessee under the Lease, and Lessee, not Lessor, shall at all times remain liable to perform all of the duties and obligations under the Supply Contract. Lessee hereby represents and warrants that: (a) Lessee has delivered herewith a true and correct copy of the Supply Contract; (b) neither Supplier nor Lessee is in default under the Supply Contract; (c) the Supply Contract shall not be amended without Lessor's prior written consent; and (d) the Supply Contract is free from all claims, security interests, liens and encumbrances, except for the interest being conveyed hereunder. Lessee shall indemnify and hold Lessor (and its assigns) harmless with respect to any and all claims relating to the performance of Lessee's obligations under the Supply Contract.

**15. SECURITY INTEREST; ADDITIONAL REPRESENTATIONS & COVENANTS:** (a) In the event the Lease is deemed to be a security agreement, (i) Lessee hereby grants to Lessor and Lessor shall have, to secure all payments and all other obligations of Lessee to Lessor under the Lease, a security interest in the Equipment together with all accessions, attachments, replacements, substitutions, modifications and additions thereto, now or hereafter acquired, and all Proceeds (as defined in the applicable Uniform Commercial Code) thereof (including insurance proceeds), and (ii) notwithstanding any applicable state laws to the contrary, Lessee agrees to reimburse Lessor for all reasonable attorneys' fees incurred by it incident to any action or proceeding involving the Lessee brought pursuant to the Bankruptcy Code, as amended, which are allowable under Section 506(b) thereof.

(b) Lessee represents that no person or entity holding a direct or indirect ownership or controlling interest in Lessee is named on a "Sanctions List" published by the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury, including without limitation the Specially Designated Nationals List, the Consolidated Sanctions List and any additional sanctions list published by OFAC ("Blocked Persons"), and Lessee covenants that it shall not allow a Blocked Person to obtain a direct or indirect ownership interest in or direct or indirect control of Lessee.

(c) Lessee shall notify Lessor immediately, in writing, at any time Lessee becomes aware that there will be a sale or transfer of any shares of its capital stock or of any direct or indirect ownership interest in Lessee to any person, persons, entity or entities (whether in one transaction or in multiple transactions) resulting in a transfer of a direct or indirect majority interest in the ownership and/or control of the Lessee from the person, persons, entity or entities who hold direct or indirect ownership and/or control of Lessee as of the Commencement Date ("Change of Control"). In the event that there shall be a Change of Control, Lessor may at its option, upon written notice to Lessee, either (i) demand and Lessee shall provide Lessor with such financial accommodations as Lessor shall have requested, or (ii) declare the amount payable by Lessee pursuant to Section 9(c) or Section 9(d) of the Agreement immediately due and payable, whereupon Lessee shall pay such amounts to Lessor within ten (10) days of such declaration, along with all applicable sales and other taxes relating to the transfer of the Equipment, and Lessor shall, upon receipt of such funds, transfer its interest in the Equipment to Lessee without recourse or warranty of any kind, on an **AS-IS, WHERE-IS** basis. Without limiting the foregoing, at any time Lessor becomes aware of a Change of Control, or incipient Change of Control, Lessor may at its option, upon written notice to Lessee, cancel or terminate the Lease and/or any unfunded commitments or proposals to Lessee, whether related to the Lease or otherwise.

**16. MISCELLANEOUS:** Lessor and Lessee agree that the terms and conditions of the Agreement are hereby incorporated into this Leasing Schedule to the same extent as if such terms and conditions were set forth in full herein. **THIS LEASING SCHEDULE (AS INCORPORATING THE TERMS OF THE AGREEMENT), TOGETHER WITH ANY APPLICABLE STIPULATED LOSS VALUE SCHEDULE, CONTAIN THE COMPLETE AGREEMENT OF THE PARTIES WITH RESPECT TO ITS SUBJECT MATTER AND SUPERSEDE AND REPLACE ANY PREVIOUSLY MADE PROPOSALS, REPRESENTATIONS, WARRANTIES AND AGREEMENTS.** Capitalized terms used herein, which are not otherwise defined herein, shall have the same meanings as set forth in the Agreement. **LESSOR AND LESSEE AGREE THAT ALL ACTIONS OR PROCEEDINGS RELATING DIRECTLY OR INDIRECTLY TO THE LEASE AND THE TRANSACTION CONTEMPLATED HEREBY MAY BE LITIGATED IN THE FEDERAL, STATE OR LOCAL COURTS SITTING IN OR FOR THE COUNTY OF MIDDLESEX, NEW JERSEY, AND HEREBY SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF SUCH COURTS.** Lessor and Lessee acknowledge that such courts are convenient forums and waive any defense based upon doctrines of venue or forum non-conveniens or similar rules or doctrines. Lessee consents to service of process by certified mail or by overnight delivery by a nationally recognized courier

at its address above (or to such other address as Lessee shall have designated by proper notice) in connection with any legal action brought by Lessor. Any amendments contained or incorporated into this Leasing Schedule, which in any way alter the terms of the Agreement, shall be effective only with respect to this Leasing Schedule and shall be ineffective with respect to any other Leasing Schedule. The Lease shall become effective at the time of Lessor's acceptance (by execution hereof) at its corporate offices, by an authorized representative of Lessor. Whenever Lessee is required to pay the applicable Stipulated Loss Value hereunder with respect to all or any portion of the Equipment, upon payment of such amount by Lessee and satisfaction of all other obligations of Lessee under the Lease (and satisfaction of all other obligations secured by such Equipment under any Leasing Schedule or any other agreement), Lessor shall transfer its interest in such Equipment to Lessee without recourse, on an AS-IS, WHERE-IS basis and without any warranty, express or implied from Lessor, other than the absence of any liens by or through Lessor, except those (if any) Lessee is obligated to discharge.

SIEMENS FINANCIAL SERVICES, INC.
CONTRACT ADDENDUM
LEASING SCHEDULE #35052-51346

---

This Addendum shall become a part of that certain Leasing Schedule #35052-51346 (the "Lease") to Master Equipment Lease Agreement dated 06/10/2011 (the "Agreement") between Siemens Financial Services, Inc. ("Lessor") and the undersigned lessee ("Lessee"). If there is any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control. Capitalized terms used herein and not otherwise defined herein, unless the context otherwise requires, shall have the same meanings set forth in the Lease.

Lessee and Lessor hereby agree as follows:

1. The definition of "Agreement" set forth in the first sentence of the Lease shall be restated to be: "that certain Master Equipment Lease Agreement dated 06/10/2011 (herein "Agreement"), between Lessor and Tenet HealthSystem Medical, Inc. ("Original Lessee")."

2. The Lease is amended by the addition of a new Section under the first sentence of the Lease to read in its entirety as follows:

   "**Co-Lessee**. Lessee is an Affiliated Facility as defined in Section 1 of the Agreement. As contemplated in the Agreement, in order to induce Lessor to enter into this Lease and to provide Lessor with assurances of the performance of all obligations set forth in this Lease, Lessor and Lessee agree that for all purposes of this Lease the term "Lessee" shall mean the undersigned Lessee and Original Lessee. Each Lessee shall be jointly and severally liable and responsible for fulfilling all obligations of Lessee under the Lease, and the undersigned Lessee hereby waives any and all claims of contribution, subrogation or recoupment that may arise with respect to its status as Lessee until all obligations under the Lease are satisfied. Moreover, it is specifically understood and agreed that Lessor shall discharge its obligations under the Lease by rendering performance to one but not both of the Lessees, provided that such performance is rendered to the undersigned Lessee, who will be the actual user of the Equipment, and any consents, waivers or modifications to this Lease shall be sufficient and effective when executed by Lessor and only the Original Lessee."

3. Section 5 of the Lease is amended to add the following at the end, prior to the period: ", provided that Lessor funds the cost of the Equipment specified in such delivery and acceptance certificate on the Commencement Date."

4. *Intentionally Omitted*

5. Section 12 of the Lease is amended to as follows:

   (a) The checkboxes for Option A and Option B are deleted.

1

(b) The sections entitled "OPTION A – FAIR MARKET VALUE PURCHASE OPTION" AND "OPTION B – FIXED PURCHASE OPTION" are deleted in their entirety.

(c) In the section entitled "OPTION C – NOMINAL FIXED PURCHASE OPTION", the language "provided no Default has occurred and is continuing and provided the Lease shall not have previously terminated" is deleted and the last sentence is replaced with the following:

"Provided that on the day following the last day of the Lease Term, Lessee has paid to Lessor the Purchase Option Price together with all sales and other taxes applicable to the transfer of the Equipment, if any, and any other amounts as may be due and owing under the Lease, Lessor's interest in the Equipment shall be automatically transferred to Lessee without recourse, on an **AS-IS, WHERE-IS** basis and without any warranty, express or implied from Lessor, other than the absence of any liens by or through Lessor, except those (if any) Lessee is obligated to discharge, whereupon the Lease shall terminate."

6. The fourth sentence of Section 13 of the Lease is hereby deleted and replaced with the following sentence:

"The rate that will actually be used in establishing the Lease Payments will be increased or decreased, as applicable, by one (1) basis point for each one (1) basis point increase or decrease in the Reference Rate, as determined by Lessor and as reported in the Reference Rate Source for the date that is two (2) business days prior to the Commencement Date (or if no Reference Rate has been published in the Reference Rate Source for the date that is two (2) business days prior to the Commencement Date, then the immediately preceding date for which a Reference Rate has been reported)."

7. Section 14 of the Lease is amended as follows:

(a) The 2nd sentence is replaced with the following: "If Lessee has entered into a written Supply Contract, then Lessee, if permitted under such Supply Contract, hereby assigns to Lessor (subject to the provisions of section 12 of this Lease) all of Lessee's rights and interests in and to the Equipment and the Supply Contract."

(b) In the 3rd sentence, "If requested" is replaced with "If reasonably requested".

(c) The 4th sentence is deleted in its entirety.

(d) In subsection (c) of the next to last sentence, "without Lessor's prior written consent" is replaced with "so as to negatively impact the interests of Lessor".

(e) In subsection (d), the following is inserted prior to the period: "or other Customary Liens".

8. Section 15(c) of the Lease is hereby deleted in its entirety,

9. Section 16 of the Lease is amended as follows:

(a) The 4th and 5th sentences are deleted in their entirety and the following inserted in their place: "THIS LEASE SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF".

(b) In the last sentence, subsection (ii) is deleted in its entirety.

10. The following Section is added to the Lease:

"**EARLY PURCHASE OPTION**: (a) Notwithstanding anything contained in the Lease to the contrary, provided that (i) Lessor and Lessee have not previously amended the Lease to reduce the Lease Payments and/or extend the Lease Term; (ii) Lessor shall have received from the Lessee the first Lease Payment; and (iii) the Lease shall not have previously terminated, Lessee shall have the option, exercisable by written notice to Lessor, received by Lessor at least five business days (5) days before the proposed purchase date (which date shall be specified in the notice), to purchase all, but not less than all, of the Equipment effective on any regularly scheduled Lease Payment due date occurring on or after the **2nd Lease Payment due date**. The actual date of purchase is hereinafter the "Early Purchase Date."

(b) If Lessee has elected to purchase the Equipment in accordance with the terms of this Section, then on or before the Early Purchase Date, Lessee shall pay to Lessor, in immediately available funds, an amount equal to the sum of the following: (i) all Lease Payments and other amounts due and owing under the Lease as of the Early Purchase Date, plus (ii) the Net Payment Value calculated for the Payment Period as of the Early Purchase Date; plus (iii) all applicable taxes, including but not limited to, estimated sales and property taxes, and all other costs applicable to the transfer of the Equipment

(c) Provided that Lessee has completely fulfilled the terms and conditions of the Lease (including, without limitation, this Section), then on the Early Purchase Date, Lessor shall transfer its interest in the Equipment to Lessee without recourse, on an **AS-IS, WHERE-IS** basis and without any warranty, express or implied from Lessor, other than the absence of any liens by or through Lessor, except those (if any) Lessee is obligated to discharge, whereupon the Lease shall terminate."

3

**IN WITNESS WHEREOF,** the Lessor and Lessee have caused this Addendum to be executed by their authorized representatives. For all purposes hereof, the date of this Addendum shall be the date of Lessor's execution as set forth below.

(CO-) LESSEE:

<u>Tenet Healthsystem Hahnemann, L.L.C.</u>

BY: _____
         *(Authorized Signature)*

NAME: _____James E. Snyder III_____
              *(Printed or Typed)*

TITLE: _____Assistant Treasurer_____
              *(Printed or Typed)*

DATE: _____10/21/16_____

LESSOR: SIEMENS FINANCIAL SERVICES, INC.

BY: ____Maureen Cilla Thompson____          BY: ____Jaime Guzman____
         *(Authorized Signature)*                         *(Authorized Signature)*

NAME: __Maureen Ciliberto-Thompson__       NAME: ____Jaime Guzman____
         *(Printed or Typed)*                              *(Printed or Typed)*

TITLE: _____VP_____                       TITLE: _____VP_____
         *(Printed or Typed)*                              *(Printed or Typed)*

                                            DATE: ____11-1-16____

4

# Siemens Healthineers

**INVOICE**

Siemens Medical Solutions USA, Inc.
40 Liberty Boulevard, Malvern, PA 19355

| | |
|---|---|
| INVOICE NUMBER | 90348934 |
| INVOICE DATE | 12/29/2016 |
| CUSTOMER NO. | 25193 |
| SALES ORDER NO. | 30199538 |
| DISTRICT | 69 |
| DIVISION | 01 |

**BILL TO:**

SIEMENS FINANCIAL SERVICES INC
SIEMENS FINANCIAL SERVICES INC
170 WOOD AVE
ISELIN NJ 08830

**SHIP TO:**

SHIPPED ON: 12/29/2016
TENET HAHNEMANN UNIVERSITY HOSPITAL
1400 RACE ST
PHILADELPHIA PA 19102

*SN 148236*

**YOUR PURCHASE ORDER**
NUMBER: ER - 35052-51346    DATE: 10/18/2016

PAGE 1 of 2

*400-544750 apps 1/3/17*

| FOB POINT | CARRIER'S NAME, FREIGHT REMARKS | | SHIPPED VIA | |
|---|---|---|---|---|
| FOB - Destination | | | | |
| TERMS OF PAYMENT | | TAX STATE | FREIGHT TERM | |
| Acceptance of Equipment | | PA | | |

| ITEM | QTY ORDERED | QTY SHIPPED | LIST NUMBER DESCRIPTION/SERIAL NO. | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|---|
| 1000 | 1 | 1 | 14430362<br>Artis zee ceiling YMAT | 403,377.00 | 403,377.00 |
| 2000 | 1 | 1 | AXA_INITIAL_32<br>Initial onsite training 32 hrs | 7,800.00 | 7,800.00 |
| 3000 | 1 | 1 | AXA_FOLLOWUP_32<br>Follow-up training 32 hrs | 7,800.00 | 7,800.00 |
| 4000 | 1 | 1 | AXA_FOLLOWUP_12<br>Follow-up training 12 hrs | 4,200.00 | 4,200.00 |
| 5000 | 1 | 1 | AXA_FOLLOWUP_12<br>Follow-up training 12 hrs | 4,200.00 | 4,200.00 |
| 6000 | 1 | 1 | AXA_ECLASS<br>e.class-Virtual Instructor Led Training | 450.00 | 450.00 |
| 7000 | 1 | 1 | AXA_PURE_ESSCL<br>AX Artis PURE Essential Class | 4,500.00 | 4,500.00 |

The customer is hereby informed that section 1128B(b) of the Social Security Act requires that discounts and other reductions in price or the existence of discount programs be properly disclosed and reflected in the costs claimed or charges made by a provider under Medicare or a State Health Program.

**PLEASE REMIT TO:**

Siemens Medical Solutions USA, Inc. PO Box 120001 - Dept. 0733, DALLAS, TX 75312-0733

NOTICE: COMPLIANCE WITH LEGAL AND INTERNAL REGULATIONS IS AN INTEGRAL PART OF ALL BUSINESS PROCESSES AT SIEMENS. POSSIBLE INFRINGEMENTS CAN BE REPORTED TO OUR HELPDESK "TELL US" AT WWW.SIEMENS.COM/TELL-US
PAST DUE INVOICES ARE SUBJECT TO A SERVICE CHARGE OF 1 1/2% PERMONTH, EQUAL TO 18% PER YEAR APPLICABLE.
GOODS HAVE BEEN CAREFULLY CHECKED ANDSAFELY PACKED. NO RETURN OFMERCHANDISE WILL BE ACCEPTED UNLESS PREVIOUSLY APPROVED. EQUIPMENTORDERED IN COLORSOTHERTHAN STANDARD COLORS CANNOT BE CHANGEDWITHOUTPRIOR WRITTEN CONSENT OF SIEMENS MEDICAL SOLUTIONS USA, INC. ALLMERCHANDISE REMAINS THE PROPERTY OF SIEMENS MEDICAL SOLUTIONS USA, INC.UNTIL PAID FOR IN FULL. CLAIMS MUST BE MADE WITHIN SEVEN (7)DAYS AFTERRECEIPT OF SHIPMENT.
THIS INVOICE IS FOR PAYMENT DUEPURSUANTTO THE TERMS OF THE EQUIPMENTSALES AGREEMENT BETWEEN SIEMENS AND CUSTOMER. PLEASE REFER TO THATAGREEMENT FORALLAPPLICABLE TERMS AND CONDITIONS OF SALE AND THESOFTWARE LICENSE SCHEDULE.

# SIEMENS
## Healthineers

**INVOICE**

Siemens Medical Solutions USA, Inc.
40 Liberty Boulevard, Malvern, PA 19355

| INVOICE NUMBER | 90348934 |
|---|---|
| INVOICE DATE | 12/29/2016 |
| CUSTOMER NO. | 25193 |
| SALES ORDER NO. | 30199538 |
| DISTRICT | 69 |
| DIVISION | 01 |

BILL TO:
SIEMENS FINANCIAL SERVICES INC

PAGE 2 of 2

| ITEM | QTY ORDERED | QTY SHIPPED | LIST NUMBER DESCRIPTION/SERIAL NO. | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|---|
| 8000 | 1 | 1 | AXA_PURE_3DADVCL<br>AX PURE 3D Advanced Class | 4,500.00 | 4,500.00 |
| 9000 | 1 | 1 | EPW935515UPS<br>Eaton Powerware 9355 15 kVA UPS | 20,801.00 | 20,801.00 |
| 0000 | 1 | 1 | AXA_RIG_ZEESP_STD<br>Standard Rigging zee SP | 13,500.00 | 13,500.00 |
| 1000 | 1 | 1 | 14409422<br>AX ELEVATE #0 ANGIO/CARD | 0.00 | 0.00 |
| 2000 | 1 | 1 | AXA_ELVOFCMP_DEINS<br>Elevate O Deinstallation Ceiling-Flr-MP | 15,000.00 | 15,000.00 |
| 3000 | 1 | 1 | AXA_ELVOFCMP_DEOFF<br>Elevate O Deinstal Ceiling-Flr-MP Offset | 15,000.00- | 15,000.00- |
| 4000 | 1 | 1 | AXA_ADDL_RIGGING<br>Additional Rigging AXA  $14,801 | 14,801.00 | 14,801.00 |
| 4100 | 1 | 1 | UE01T29869<br>Used Multistar D 2003 SN 1849-127587 | 1.00- | 1.00- |
| 4200 | 1 | 1 | AXA_EXTEND_WARRANT<br>12 Month Extended Warranty | 129,390.00 | 129,390.00 |
| 4300 | 4 | 4 | AX_EXTWAR_MEGASP<br>Megalix SP 3 Months Extended War | 4,125.00 | 16,500.00 |
| 4400 | 1 | 1 | AXA_BIOMED_TRN<br>Biomedical Training AXA | 42,100.00 | 42,100.00 |
| 4500 | 1 | 1 | AXA_EXT_WAR_SVC<br>AXA Extended Warranty Funded By Service | 43,130.00 | 43,130.00 |
| 4600 | 1 | 1 | AXA_EXT_WAR_SVC<br>AXA Extended Warranty Funded By Service | 43,130.00- | 43,130.00- |
| | | | SUBTOTAL | | 673,918.00 |
| | | | TAX<br>INVOICE TOTAL | | 673,918.00 |

PLEASE DIRECT ANY INQUIRIES REGARDING THIS BILLING TO:
csgsibillinginquirycentral.healthcare@siemens.com

**PLEASE REMIT TO:**
Siemens Medical Solutions USA, Inc  PO Box 120001 - Dept. 0733, DALLAS, TX 75312-0733

NOTICE: COMPLIANCE WITH LEGAL AND INTERNAL REGULATIONS IS AN INTEGRAL PART OF ALL BUSINESS PROCESSES AT SIEMENS. POSSIBLE INFRINGEMENTS CAN BE REPORTED TO OUR HELPDESK "TELL US" AT WWW.SIEMENS.COM/TELL-US
PAST DUE INVOICES ARE SUBJECT TO A SERVICE CHARGE OF 1 1/2% PERMONTH, EQUAL TO 18% PER YEAR APPLICABLE.
GOODS HAVE BEEN CAREFULLY CHECKED ANDSAFELY PACKED.  NO RETURN OFMECHANDISE WILL BE ACCEPTED UNLESS PREVIOUSLY APPROVED.  EQUIPMENTORDERED IN COLORSOTHERTHAN STANDARD COLORS CANNOT BE CHANGEDWITHOUTPRIOR WRITTEN CONSENT OF SIEMENS MEDICAL SOLUTIONS USA, INC. ALLMERCHANDISE REMAINS THE PROPERTY OF SIEMENS MEDICAL SOLUTIONS USA, INC.UNTIL PAID IN FULL. CLAIMS MUST BE MADE WITHIN SEVEN (7)DAYS AFTERRECEIPT OF SHIPMENT.