IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTER CITY HEALTHCARE, LLC, d/b/a HAHNEMANN UNIVERSITY HOSPITAL *et al.*, | ) ) ) | Case No. 19-11466 (KG) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Hearing: January 23, 2020 at 10:00 a.m.** |
| | ) | |
| | ) | **Re:  D.I. 1242** |

**LIMITED OBJECTION AND
RESERVATION OF RIGHTS OF PREMIER, INC. AND ITS
SUBSIDIARIES IN RELATION TO THE DEBTORS' SEVENTEENTH
OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE
REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Premier, Inc. (with its consolidated subsidiaries, including Premier Healthcare Solutions, Inc. ("PHSI"), collectively, "Premier") hereby files this limited objection and reservation of rights (the "Limited Objection") with respect to the *Seventeenth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Executory Contracts and Unexpired Leases* [D.I. 1242] (the "Motion") filed by the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, the "Debtors"), pursuant to which the Debtors seek to reject, among other things, the Premier Agreements (defined below).

## BACKGROUND

1.    Certain of the Debtors and Premier entities are party to the (i) Performance Suite™ Solutions Subscription Agreement, executed on or about January 1, 2018, by and between PHSI (formerly known as Premier, Inc.) and Philadelphia Academic Health System, LLC ("Philadelphia Academic") (as amended, along with all exhibits, solutions and ancillary agreements and documents related to and/or referenced therein, the "Subscription Agreement"), as well as the (ii) the Business Associate Addendum, entered into as of December 22, 2017,

1

between PHSI, Premier Healthcare Alliance, L.P., any other respective Premier subsidiaries a party thereto and Philadelphia Academic (as amended by that certain First Amendment to Business Associate Addendum, entered into as of September 11, 2018, and as referenced and incorporated into the Subscription Agreement in all respects) (collectively the "Premier Agreements").  Pursuant to the Premier Agreements, Premier provides critical information technology, intellectual property licenses and related healthcare improvement products, services and benefits to Philadelphia Academic and certain of its affiliated entities, including certain of the Debtors which utilize the benefits, licenses, services and products provided solely by virtue of their status as subsidiaries or affiliates of Philadelphia Academic.

2.      On June 30, 2019 (the "Petition Date"), the Debtors filed voluntary petitions pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  As of the Petition Date, approximately $296,956.96 was due and owing to Premier pursuant to the Premier Agreements.  Since the Petition Date, Premier has continued to provide, pursuant to the Premier Agreements, critical licenses, products and services which have greatly benefitted the Debtors in their post-petition operations.  However, to date no post-petition payments have been received by the Debtors – despite numerous requests for follow-up by Premier's counsel and the Debtors' promises for prompt payment.  As a result, Premier is currently owed approximately $90,000 by the Debtors for post-petition amounts incurred under the Premier Agreements.

3.      On December 23, 2019, the Debtors filed the Motion seeking an order authorizing the rejection of certain executory contracts and unexpired leases, including the Premier Agreements.  In short, while Premier does not object to the rejection of the Premier Agreements, Premier does object to the Motion to the extent that, among other things, the Debtors seek to use the Motion to further delay or avoid full payment on Premier's post-petition administrative

claims. For that reason and the others set forth herein, Premier is hereby asserting this Limited Objection to the Motion and further preserving its rights.

**LIMITED OBJECTION**

**A.   Premier Objects to the Debtors' Motion to the Extent the Debtors are Seeking to Avoid or Further Delay Paying Premier's Post-Petition Administrative Claims.**

4.  Premier does not object to the Debtors' ability to reject the Premier Agreements pursuant to the Motion, but rather, Premier objects to the Motion to the extent the Debtors are attempting to use it as a means of avoiding or continuing to delay payment of Premier's post-petition administrative claims. Premier's information technology and services have provided a substantial benefit to the Debtors, facilitating the overall provision of health care services to patients and ensuring smooth operations on a day-to-day basis. As such, Premier's provision of services, products and licenses to the Debtors post-petition have been critical, actual and necessary costs of the Debtors' operations entitling Premier's claims to administrative expense priority. *See*, *e.g.*, *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3rd Cir. 2010) (adopting the test that "[w]hen third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of [administrative claims] plainly require their claims be afforded priority") (citation omitted).

5.  Despite the fact that (i) Premier has continued performing post-petition under the Premier Agreements, (ii) the Debtors have not contested Premier's post-petition invoices or amounts due and (iii) the Debtors have assured Premier that payment on post-petition amounts would be forthcoming (per an email from counsel dated December 2, 2019, attached hereto as **Exhibit A**), Premier has yet to be paid. While Premier intends to file a motion seeking payment of its administrative claims if such claims are not paid in short order, Premier objects to the Motion to the extent the relief requested is intended to allow the Debtors to avoid paying

Premier's post-petition administrative claims in full, or to further delay payment on such claims. The provision of licenses, products and services by Premier conferred substantial benefit to the Debtors and their estates, and the Debtors should not be entitled to avoid compensating Premier accordingly.

**B.     The Effective Date Should be the Date an Order Approving Rejection is Entered.**

6.      Notwithstanding that rejection of an executory contract cannot take effect until the Court enters an order allowing such rejection, the Debtors' Motion seeks retroactive approval of rejection of the Premier Agreements *nunc pro tunc* to the date of the Motion. S*ee* 11 U.S.C. §365(a) ("the trustee, *subject to the court's approval*, may assume or reject any executory contract…") (emphasis added); *see also Republic Underwriters Ins. Co. v. DBSI Republic, LLC, et al. (In re DBSI, Inc.)*, 409 B.R. 720, 731 (Bankr. D. Del. 2009) ("rejection becomes effective when the bankruptcy court enters an order authorizing that rejection"); *but see* Motion at ¶¶ 12-16.  While retroactive effectiveness may be permissible under certain circumstances, in the present case, it leaves counterparties with a choice of either continuing to incur post-petition costs at their own expense or ceasing performance essentially in reliance only on the Debtor's word, notwithstanding any implications that might otherwise arise under the Bankruptcy Code. In contrast, the Debtors have provided no compelling reason for requesting retroactive relief. Certainly if the Debtors had sought to reduce administrative claims, they could have filed the Motion on an expedited basis or filed the Motion *prior to* closure of the St. Christopher's sale with a list of proposed contracts or leases – but they did neither.  Counterparties are not in the position to know or even guess the timing of forthcoming actions of the Debtors (which notice, after the fact, cannot cure), and counterparties are certainly not in the position to bear the burden of any delay of the Debtors.  As such, to the extent that counterparties do incur post-petition

administrative claims prior to rejection, counterparties should be entitled to full payment of such claims – and the Debtors' request for retroactive effectiveness of rejection should be denied.

**C.     Any Order Approving the Rejection Should Expressly Provide that the Premier Agreements and the Parties' Obligations Thereunder Will Terminate on Rejection.**

7.     Finally, any order approving the rejection of the Premier Agreements should include language expressly providing that the Premier Agreements, and the ongoing obligations of all parties to the Premier Agreements (other than any surviving confidentiality, HIPAA and/or regulatory or compliance obligations, as applicable), will terminate on the date of rejection. While the Motion includes language regarding termination of the services underlying the executory contracts and leases to be rejected, the actual relief sought by the Debtors does not expressly state as much. *See* Motion at Page 1 ("Debtors intend to… terminate all services…"), *but see* Motion at ¶ 9 (requesting only rejection). The Premier Agreements, however, include continuing obligations of the parties thereto, including Premier, which may not expressly terminate on rejection. Premier therefore requests that any order approving the rejection of the Premier Agreements must also terminate those agreements and their obligations, as noted above.

**RESERVATION OF RIGHTS**

8.     Premier hereby expressly reserves the right to supplement this Limited Objection as additional information is received, and to introduce evidence at any hearing related to the Motion, this Limited Objection and/or any future objection. Premier further reserves all of its rights, claims, defenses and remedies with respect to the Debtors and the Premier Agreements, including but not limited to any right to assert any claims, rights of setoff or rights of recoupment against the Debtors, under the Premier Agreements, the Bankruptcy Code, applicable law or otherwise.

WHEREFORE, for the foregoing reasons, Premier respectfully requests that (i) any order approving the Motion expressly state that the relief granted therein shall have no impact upon Premier's ability to assert, and receive full and prompt payment of, administrative or other claims against the Debtors, (ii) the Debtors' request for relief *nunc pro tunc* to the filing of the Motion be denied, and any rejection be effective as of the date an order is entered approving the Motion, (iii) any order approving the Motion reflect that, upon rejection, the Premier Agreements, and any ongoing obligations of Premier and/or the Debtors thereunder (other than any surviving confidentiality, HIPAA and/or regulatory or compliance obligations, as applicable), shall terminate, (iv) the Court enter an order sustaining this Objection and (v) the Court provide such other and further relief as the Court deems just and proper.

Dated: January 6, 2020　　　　　　　　　　　Respectfully submitted,
　　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　　　　KLEIN LLC

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Julia Klein*
　　　　　　　　　　　　　　　　　　　　　　　Julia B. Klein (Bar No. 5198)
　　　　　　　　　　　　　　　　　　　　　　　919 North Market Street
　　　　　　　　　　　　　　　　　　　　　　　Suite 600
　　　　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　　　　　Phone: (302) 438-0456

　　　　　　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　　　　　　Marianne S. Mortimer Martin, Esq.
　　　　　　　　　　　　　　　　　　　　　　　Jessica P.G. Newman, Esq.
　　　　　　　　　　　　　　　　　　　　　　　JEFFER MANGELS BUTLER & MITCHELL, LLP
　　　　　　　　　　　　　　　　　　　　　　　1900 Avenue of the Stars
　　　　　　　　　　　　　　　　　　　　　　　7th Floor
　　　　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90067
　　　　　　　　　　　　　　　　　　　　　　　Phone: (310) 201-3531
　　　　　　　　　　　　　　　　　　　　　　　Fax: (310) 203-0567

　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Premier, Inc. and Its Subsidiaries*