## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In re

CENTER CITY HEALTHCARE, LLC
d/b/a HAHNEMANN UNIVERSITY
HOSPITAL, *et al.*[1]

Debtors.

-------------------------------------------------------x

Chapter 11

Case No. 19-11466 (KG)

(Jointly Administered)

**Hearing Date: Jan. 23, 2020 at 10:00 a.m. (ET)**
**Obj. Deadline: Jan. 16, 2020 at 4:00 p.m. (ET)**

## MOTION OF MEDLINE INDUSTRIES HOLDINGS, L.P.
## FOR ALLOWANCE AND IMMEDIATE PAYMENT OF
## ADMINISTRATIVE EXPENSE CLAIMS UNDER 11 U.S.C. § 503

Medline Industries Holdings, L.P. ("**Medline**"), by and through its undersigned counsel,

respectfully files this motion (the "**Motion**") for entry of an order (i) allowing Medline's claim

under section 503(b)(9) (the "**503(b)(9) Claim**") of Title 11 of the United States Code (the

"**Bankruptcy Code**"); (ii) allowing Medline's postpetition administrative claim pursuant to

section 503(a) of the Bankruptcy Code (the "**Postpetition Claim**," and collectively with the

503(b)(9) Claim, the "**Administrative Claims**"); and (iii) directing the Debtors to pay the

Administrative Claims immediately.  In support of this Motion, Medline respectfully represents as

follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334, and the Amended Standing Order of Reference from the United States District Court for

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013−1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), Medline consents to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      On June 30 and July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

3.      On July 15, 2019, the United States Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "**Committee**").

4.      A description of the Debtors' businesses and the reasons for commencing the Chapter 11 Cases are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2].

5.      On July 16, 2019, the Debtors filed a motion seeking to sell all or substantially all of the assets of certain Debtors (the "**Sale Motion**") [D.I. 205].  On September 27, 2019, the Bankruptcy Court entered an order approving an asset purchase agreement (the "**APA**") between certain Debtors and STC Opco, LLC (the "**Sale Order**") [D.I. 795].

6.      Article 1.3 of the APA provides that

The consummation of the transactions contemplated by this Agreement (the "Closing") shall take place on the later of (a) October 4,

2019 or (b) as promptly as possible following the receipt of all
governmental approvals and the satisfaction or waiver of the conditions set
forth in ARTICLE 7 and ARTICLE 8, other than those conditions that by
their nature are to be satisfied at Closing but subject to fulfillment or waiver
of those conditions. at the offices of Ballard Spahr LLP, 1735 Market Street,
48th Floor, Philadelphia, PA 19103 (the day on which Closing actually
occurs, the "Closing Date") The Closing shall be deemed to occur and to be
effective as of 11:59 p.m. Eastern time on the Closing Date (the "Effective
Time").

[Docket No. 795-1].

7.       On December 17, 2019, the Debtors filed the Notice of Closing of Sale of Assets

of St. Christopher's Hospital for Children [D.I. 1196] which states that the Closing (as defined in

the APA) occurred on December 16, 2019.

8.       Prior to the Petition Date, Medline supplied various medical goods and products to

the Debtors in the ordinary course of business pursuant to a certain Corporate Program Agreement

dated August 1, 2018 (the "**Corporate Program Agreement**").[2]   Medline sold goods worth

$791,927.89 in the ordinary course of business to the Debtors which were received during the

twenty (20) days prior to the Petition Date, when the Debtors were insolvent, and for which

Medline has not received payment from the Debtors.

9.       Subsequent to the Petition Date, Medline supplied various medical goods and

products to the Debtors pursuant to the Corporate Program Agreement in the total aggregate

amount of $50,681.39 for which Medline has not received payment from the Debtors.

10.      Upon information and belief, the Debtors used Medline's goods in the ordinary

course of business and generated revenue from the use of such goods.  Despite using Medline's

goods for the benefit the Debtors' estates, the Debtors have not paid for such goods.

---

[2] Upon information and belief, the Debtors are in possession of a copy of the Corporate Program Agreement.  Medline
has not attached a copy of the Corporate Program Agreement due to a confidentiality provision contained therein.

11.    A chart reflecting the invoices comprising the Administrative Claims are attached

hereto as **Exhibit B**.

**RELIEF REQUESTED**

12.    By this Motion, Medline seeks an Order from this Court (i) allowing Medline's

Administrative Claims in the total aggregate amount of $842,609.28; and (ii) directing the Debtors

pay the Administrative Claims immediately.[3]

**ARGUMENT**

**I.    Allowance of the 503(b)(9) Claim as an Administrative Expense is Appropriate**

13.    Medline is entitled to the allowance and payment of its 503(b)(9) Claim pursuant

to section 503(b)(9) of the Bankruptcy Code, which provides that:

> After notice and a hearing, there shall be allowed, administrative
> expenses, other than claims allowed under § 502(f) of this title,
> including . . . the value of any goods received by the debtor within
> 20 days before the date of commencement of a case under this title
> in which the goods have been sold to the debtor in the ordinary
> course of such debtor's business.

11 U.S.C. § 503(b)(9).

14.    As identified in **Exhibit B**, the Debtors received goods from Medline in the

ordinary course of business within twenty (20) days before the Petition Date, and Medline is

therefore entitled to have the 503(b)(9) Claim allowed as an administrative expense claim pursuant

to section 503(b)(9) of the Bankruptcy Code.  Accordingly, at present, Medline is entitled to an

administrative expense claim in the amount of $791,927.89 pursuant to section 503(b)(9) of the

Bankruptcy Code.

---

[3] Medline reserves all rights, including the rights to amend the amount of the Administrative Claims and to request additional amounts owing.  If there is a difference between the amount of the Administrative Claims and the corresponding amount in the Debtors' books and records, Medline will attempt to address such difference with the Debtors in an effort to fix the amount of the Administrative Claims.

## II.     <u>Allowance of the Postpetition Claim as an Administrative Expense is Appropriate</u>

15.     Section 503 of the Bankruptcy Code provides that, after notice and a hearing, there shall be allowed administrative expenses, including the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

16.     This Court has consistently held that a debtor must pay the reasonable value of the goods received under a post-petition executory contract pending assumption or rejection of that contract. *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010) (citing *NLRB. v. Bildisco*, 465 U.S. 513, 531 (1984)). It is presumed that the contract rate is the reasonable rate for goods and services provided to a debtor's estate. *See id.*

17.     Accordingly, because the Debtors used Medline's goods after the Petition Date, but before rejection of the Corporate Program Agreement, and because such goods benefited the Debtors' estates, Medline is entitled to an administrative claim pursuant to section 503(b) of the Bankruptcy Code in the amount the Debtors are obligated to pay under the Corporate Program Agreement, $50,681.39.

## III.     <u>Immediate Payment of the Administrative Claims is Appropriate</u>

18.     Medline's Administrative Claims are entitled to priority, pursuant to section 507(a)(2) of the Bankruptcy Code.

19.     In determining the timing of payment of an administrative claim, this Court has held:

> Distributions to administrative claimants are generally disallowed prior to confirmation if there is a showing that the bankruptcy estate may not be able to pay all of the administrative expenses in full. Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration. To qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay.

*In re Glob. Home Prod., LLC*, No. 06-10340 KG, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (internal citations and quotations omitted).

20.     There is no reason for the Debtors to not pay Medline's Administrative Claims immediately, as the consideration (at least $50 million) provided by STC Opco, LLC to the Debtors at the Closing under the APA should be sufficient to cover all administrative expenses.  The Debtors should also no longer be accruing significant administrative expenses, as all or substantially all of the Debtors' assets have been sold under the APA, and, as of the Closing Date, STC Opco, LLC will be responsible for operating costs associates with the assets sold under the APA.

21.     If the Debtors cannot satisfy all administrative expenses at this time, the Debtors should not have the discretion to select which administrative creditors they pay, including the payment of its professionals, who are not entitled to greater priority treatment than other administrative creditors.

22.     Moreover, currently pending before this Court is the *Emergency Motion of Ad Hoc Committee of Hahnemann Residents and Fellows to Compel Debtors to Provide Professional Liability Insurance in Accordance With Resident Employment Agreements* [D.I. 1134] which seeks to compel the Debtors to purchase "tail coverage" for former residents and fellows.  If approved, it is unknown at this time how much the estate will be obligated to remit to purchase insurance coverage.  As such, there is a substantial likelihood that the Debtors' estates may be rendered administratively insolvent.  Creditors such as Medline should not bare the risk of administrative insolvency while professionals, who have no higher priority entitlement to payment for their fees, receive payment in full.

23.     Accordingly, Medline respectfully submits that allowance and immediate payment of its Administrative Claims is appropriate and consistent with the purpose of section 503(b) of the Bankruptcy Code, and should be approved, or the Debtors should be directed to cease paying administrative creditors, including professional fees, until they can demonstrate administrative insolvency.

## NOTICE

24.     Notice of this Motion has been given to: (i) the Debtors; (ii) the United States Trustee; and (iii) any party entitled to receive notice under Bankruptcy Rule 2002. No prior motion for the relief requested herein has been made to this or any other Court.  In light of the nature of the relief requested herein, Medline submits that no other or further notice is required.

## NO PRIOR REQUEST

25.     No previous motion for the relief sought herein has been made to this or to any other court.

## <u>CONCLUSION</u>

WHEREFORE, Medline respectfully requests that this Court enter an order, substantially in the form of the proposed order annexed hereto as Exhibit A, (i) allowing the Administrative Claims and (ii) directing the Debtors to immediately pay the Administrative Claims; and (iii) for such other and further relief as is proper and just.

Dated: January 9, 2020
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

<u>*/s/ Jason A. Gibson*</u>
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com
      leonhardt@teamrosner.com
      gibson@teamrosner.com

-and-

Robert M. Hirsh
**ARENT FOX LLP**
1301 Avenue of the Americas, Floor 42
New York, New York 10019
Telephone: (212) 484-3900
Email: robert.hirsh@arentfox.com

*Counsel for Medline Industries Holdings, L.P.*