## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Related to Docket No. 1307** |
| | ) |

### DEBTORS' OBJECTION TO MOTION OF MEDLINE INDUSTRIES HOLDINGS, L.P. FOR ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS UNDER 11 U.S.C. § 503

The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") submit this objection (the "**Objection**") to the *Motion of Medline Industries Holdings, L.P. for Allowance and Immediate Payment of Administrative Expense Claims under 11 U.S.C. § 503* [D.I. 1307] (the "**Motion**"), which was filed by Medline Industries Holdings, L.P. ("**Medline**").  In support of their Objection, the Debtors respectfully represent as follows:

### RELEVANT FACTUAL BACKGROUND

1.     On June 30 and July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

2.      A description of the Debtors' businesses and the reasons for commencing these Chapter 11 Cases are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2] (the "**First Day Declaration**").[2]

3.      As detailed in the First Day Declaration, as of the Petition Date, the Debtors operated two hospitals – Hahnemann University Hospital ("**Hahnemann**") and St. Christopher's Hospital for Children ("**St. Christopher's**").

4.      The Debtors commenced these cases primarily because of ongoing, unsustainable operating losses at Hahnemann, and therefore to implement and facilitate an orderly closure of Hahnemann while ensuring patient safety and quality patient care.  The Debtors also sought to implement a sale of St. Christopher's to a going concern buyer, for the benefit of an at-risk community that relies on St. Christopher's as a safety net hospital for children, and for creditors.

5.      On September 27, 2019, the Court entered an *Order under 11 U.S.C. § 105, 363, 365, 503 and 507 (A) Approving Asset Purchase Agreement with STC OpCo, LLC (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the Debtors' Executory Contracts, and (D) Granting Related Relief* [D.I. 795] (the "**Sale Order**"), pursuant to which the Court authorized the sale (the "**STC Sale**") of substantially all assets of St. Christopher's Healthcare, LLC and certain related Debtors to STC OpCo, LLC.  The STC Sale closed effective as of December 15, 2019.

6.      As reflected in the Motion, Medline and Debtor Philadelphia Academic Health System, LLC ("**PAHS**") were parties to a Corporate Program Agreement (the "**Agreement**"),

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

36419119.3 01/16/2020

effective August 1, 2018. In addition, on or about February 4, 2019 non-debtor Philadelphia

Academic Health Holdings, LLC ("**PAHH**"), which is owned and controlled by Joel Freedman,

executed a Corporate Guaranty, guaranteeing indebtedness owed to Medline by PAHS, as well

as indebtedness owed to Medline by Debtors Center City Healthcare, LLC ("**CCH**") and St.

Christopher's Healthcare, LLC ("**STC**"). Medline asserts that it sold goods to the Debtors

pursuant to the Agreement, both before and after the Petition Date.

7.      By the Motion, Medline asserts a pre-petition administrative expense claim

pursuant to section 503(b)(9) of the Bankruptcy Code generally against the Debtors in the

amount of $791,927.89 (the "**Asserted 503(b)(9) Claim**") and a post-petition administrative

expense claim pursuant to section 503(b)(1) of the Bankruptcy Code against the Debtors in the

amount of $50,681.39 (the "**Asserted Post-Petition Claim**" and, collectively with the Asserted

503(b)(9) Claim, the "**Asserted Claims**") and seeks immediate payment of both such alleged

claims.

8.      While Medline seeks allowance and payment of the Asserted Claims against the

Debtors generally, Exhibit B to the Motion suggests the following breakdown of the Asserted

Claims:

Hahnemann University Hospital:
- Asserted 503(b)(9) Claim: $473,617.55
- Asserted Post-Petition Claim: $21,432.17

St. Christopher's Healthcare, LLC:
- Asserted 503(b)(9) Claim:  $318,310.34
- Asserted Post-Petition Claim: $29,249.22

The Motion does not identify the specific Debtor or Debtors to which goods were sold under the

category of "Hahnemann University Hospital."

9.      For the reasons set forth below, the relief requested in the Motion with respect to the Asserted 503(b)(9) Claim is inappropriate, unwarranted and premature.  In particular, the Asserted 503(b)(9) Claim should be disallowed to the extent it consists of invoices already paid by the Debtors prior to the Petition Date, and any allowed administrative expense claim pursuant to section 503(b)(9) of the Bankruptcy Code should be appropriately allocated by the Debtor to which goods were sold and delivered.  Further, to the extent Medline is entitled to any allowed administrative expense claims under section 503(b)(9) of the Bankruptcy Code, Medline's request for immediate payment should be denied.  The Debtors are reviewing their books and records to reconcile their amounts requested by Medline in the Motion and respectfully reserve all rights in connection therewith.[3]

**OBJECTION**

**I.      The 503(b)(9) Claim Should be Denied without Prejudice and/or Reduced**

10.     Section 503(b)(9) of the Bankruptcy Code provides for allowance of administrative expense with regard to "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  11 U.S.C. § 503(b)(9).

11.     To establish a section 503(b)(9) claim, a claimant must prove by a preponderance of the evidence that (1) that the vendor sold "goods" to the debtor; (2) the goods were received by the debtor within 20 days prior to the bankruptcy filing; and (3) the goods were sold to the debtor in the ordinary course of business.  See, e.g., In re Goody's Fam. Clothing, Inc., 401 B.R. 131, 133 (Bankr. D. Del. 2009); In re SemCrude, LP, 416 B.R. 399, 403 (Bankr. D. Del. 2009.

---

[3]      The Debtors note that the Motion was filed so as to only provide seven (7) calendar days to file a response. The Debtors requested that Medline unconditionally agree to continue the hearing and the response deadline until the next omnibus hearing in the Chapter 11 Cases to afford the Debtors a reasonable opportunity to reconcile the amounts sought in the Motion, but Medline refused.

36419119.3 01/16/2020

12.     As a threshold matter, the Motion fails to establish the *prima facie* elements required for allowance of an administrative expense claim under section 503(b)(9) of the Bankruptcy Code.  The Motion fails to: (i) identify the Debtors to which Medline claims to have sold goods; (ii) set forth the date(s) any goods were actually received by the Debtors; and (iii) allege or otherwise address whether such goods were sold to the Debtors in the ordinary course of the Debtors' business.  The Debtors are reconciling the invoices included in the 503(b)(9) Claim against their books and records and reserve all rights in connection therewith, including the right to amend and/or supplement this Objection to the extent such review demonstrates that all or some of the 503(b)(9) Claim does not satisfy the elements of section 503(b)(9) of the Bankruptcy Code.  Given the limited timeframe afforded the Debtors to respond to the Motion, the Debtors also reserve the right to issue expedited discovery to Medline to ascertain facts relevant to the Motion.

## II.     Medline's Request for Immediate Payment Should be Denied

13.     To the extent Medline is ultimately allowed any administrative expense claims against one or more of the Debtors pursuant to section 503(b)(9) of the Bankruptcy Code, Medline is not entitled to immediate payment thereof.

14.     As described above, section 503(b)(9) of the Bankruptcy Code provides that certain prepetition debts, for the value of goods sold to and received by a debtor within 20 days before the commencement of a bankruptcy case, are entitled to treatment as administrative expenses.  Section 503(b)(9) does not, however, address the timing for the payment of any claim that may be allowed thereunder.  Immediate payment is not required by section 503(b)(9) of the Bankruptcy Code, and the Court has discretion as to *when* administrative expense claims are paid.  See In re HQ Glob. Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002) (explaining

that "[t]he determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court").

15.    On the specific issue of immediate payment of a section 503(b)(9) administrative expense claim, in Global Home Products, this Court explained that "[t]o qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay."   In re Global Home Products, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006).  The Court in Global Home Products considered the following three factors in determining entitlement to the *exceptional* immediate payment: (1) the prejudice to the debtors, (2) hardship to the claimant, and (3) potential detriment to other creditors.  Id. at *4; see also In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D. Del. 2005) (applying three-factor test as to landlord's 503(b) claims); In re Bookbinders' Restaurant, Inc., No. 06-12302, 2006 WL 3858020, at *4 (Bankr. E.D. Pa. Dec. 28, 2006) (applying three-factor test in denying immediate payment to 503(b)(9) claimant).

16.    An application of these factors weighs against compelling immediate payment for any administrative expense claims ultimately allowed in favor of Medline under section 503(b)(9) of the Bankruptcy Code.

17.    With respect to the first factor, the Debtors would be unfairly prejudiced if they are forced to pay Medline's Asserted 503(b)(9) Claim immediately.  While the Debtors remain confident that these cases are administratively solvent, the Debtors have only just closed on the STC Sale and are continuing to pursue additional recoveries, including collecting accounts receivable and investigating potential causes of action.  The Debtors believe, in the exercise of their reasonable business judgment, that this process will lead to the recovery of sufficient assets to pay all administrative expense obligations upon the effective date of one or more confirmed

plans, including any allowed administrative expense claims under section 503(b)(9) of the Bankruptcy Code.  Forcing the Debtors to pay section 503(b)(9) claims immediately, however, will have a negative impact on the Debtors' current cash flow that could jeopardize the Debtors' restructuring efforts, to the detriment of the Debtors, their estates and all creditors.

18.     With respect to the second factor, the Debtors submit that Medline would not suffer hardship if its Asserted 503(b)(9) Claim, to the extent allowed, is not paid immediately. Indeed, in the Motion, Medline makes no reference to any hardship it might suffer if the Court does not order immediate payment.  Further, as noted above, all debts owed to Medline by PAHS, CCH and STC have been guaranteed by non-debtor PAHH, mitigating any hardship that Medline might face in waiting for payment.

19.     Indeed, the Debtors submit that Medline will not suffer any prejudice if its Asserted 503(b)(9) Claim, to the extent allowed, is not paid immediately.  Medline is a large, financially strong corporation – described on its website as "the largest privately held manufacturer and distributor of medical supplies."[4]  The Debtors respectfully submit that any delay in paying the Asserted 503(b)(9) Claim, to the extent allowed, will not be harmful to Medline.

20.     With respect to the third Global Home Products factor, the Debtors assert that other creditors could be adversely affected if the Court compels immediate payment of Medline's Asserted 503(b)(9) Claim, if any.   While the Debtors believe cases to be administratively solvent, a deadline has not yet been set for the filing of claims, including administrative expense claims under section 503(b)(9) of the Bankruptcy Code.  In the unlikely

---

[4]     See, https://www.medline.com/pages/about-us/our-company/ (accessed Jan. 14, 2020).  Medline's website further indicates that the company is #32 on the *Forbes* 2019 list of America's largest private companies, conducts business in more than 90 countries, has 42 distribution centers across North America and enjoys $11.7 billion in overall company sales. Id.

event that one or more of these cases are not administratively solvent, similarly situated holders of allowed section 503(b)(9) claims will be unfairly prejudiced if Medline, simply by virtue of having raced to the court to assert its claims, receives immediate payment.

21.     In support of its request for exceptional immediate payment, Medline argues only that closing on the STC Sale has occurred and notes concern that other demands on the Debtors might leave insufficient funds to pay section 503(b)(9) claims in full.  These arguments do not establish a basis for immediate payment in favor of Medline and, in fact, the latter argument supports the Debtors' position with respect to the third Global Home Products factor.   If insufficient funding later becomes an issue in these cases, other creditors would be negatively impacted if Medline's Asserted 503(b)(9) Claim, to the extent allowed, is paid immediately.

22.     With respect to the STC Sale, Medline ignores that over $33 million of the funds paid at closing were disbursed at closing to pay off Debtors' post-petition secured financing. The sale proceeds ultimately retained by the Debtors were further reduced by the costs of sale, amounts required to be paid to Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC and other post-petition operating expenses of the Debtors.  Medline also ignores the fact that less than half of its Asserted 503(b)(9) Claim relates to goods allegedly sold to Debtor STC, and Medline offers no explanation for why proceeds of the STC Sale should be used to pay administrative expenses allegedly owed by other Debtors in these cases.   For avoidance of doubt, while the Debtors cases are being jointly administered for procedural purposes, they have not been substantively consolidated.

23.     Based on the foregoing, and in light of the fact that the hardship and/or potential hardship to the Debtors and other creditors greatly outweighs any hardships faced by Medline,

the Court should exercise its discretion by denying Medline's request for immediate payment of its Asserted 503(b)(9) Claim, if any.

**III.     The Post-Petition Claim**

24.     The Debtors do not dispute their obligation to pay post-petition claims arising in the ordinary course of business under section 503(b)(1) of the Bankruptcy Code.  Any amounts currently due and owing to Medline on account of post-petition purchases will be paid upon final reconciliation thereof.  The Debtors respectfully reserve all rights in connection with the amount of such claims, but to the extent reconciled, such claims will be paid in full.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

36419119.3 01/16/2020

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court enter the order, substantially in the form attached hereto as **Exhibit A,** denying the Motion with respect to the Asserted 503(b)(9) Claim.

Dated: January 16, 2020                **SAUL EWING ARNSTEIN & LEHR LLP**

                                    By:    */s/ Aaron S. Applebaum*
                                           Mark Minuti (DE Bar No. 2659)
                                           Monique B. DiSabatino (DE Bar No. 6027)
                                           1201 N. Market Street, Suite 2300
                                           P.O. Box 1266
                                           Wilmington, DE  19899
                                           Telephone: (302) 421-6800
                                           Fax: (302) 421-6813
                                           mark.minuti@saul.com
                                           monique.disabatino@saul.com

                                                   -and-

                                           Jeffrey C. Hampton
                                           Adam H. Isenberg
                                           Aaron S. Applebaum (DE Bar No. 5587)
                                           Centre Square West
                                           1500 Market Street, 38th Floor
                                           Philadelphia, PA 19102
                                           Telephone: (215) 972-7777
                                           Fax: (215) 972-7725
                                           jeffrey.hampton@saul.com
                                           adam.isenberg@saul.com
                                           aaron.applebaum@saul.com

                                           *Counsel for Debtors and Debtors in Possession*