**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (KG) |
| | ) Jointly Administered |
| Debtors. | ) Related to Docket No. 1081 |

**DEBTORS' OBJECTION TO MOTION OF**
**ACHINTYA MOULICK, MD FOR ALLOWANCE AND PAYMENT**
**OF AN ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. § 503(b)**

The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") respectfully submit this objection (the "**Objection**") to the *Motion of Achintya Moulick, MD for Allowance and Payment of an Administrative Claim Pursuant to 11 U.S.C. § 503(b)* (the "**Motion**"). In support of their Objection, the Debtors state as follows:

**PRELIMINARY STATEMENT**

1. Achintya Moulick, MD ("**Dr. Moulick**") was an employee of one of the Debtors prior to the sale (the "**STC Sale**") of the assets of St. Christopher's Hospital for Children ("**St. Christopher's**") to STC OpCo, LLC (the "**Purchaser**") on December 15, 2019.

2. In connection with the STC Sale, the Purchaser designated virtually all the physicians employment agreements for physicians who were associated with St. Christopher's as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

-2-

agreements to be assumed and assigned to it.  It did not, however, so designate Dr. Moulick's employment agreement and it did not otherwise offer employment to Dr. Moulick.  Through the Motion, Dr. Moulick requests allowance of an administrative expense claim in the amount of **$2,689,641** – representing two years of base salary, alleged unearned incentive payments and other benefits.

3. The Motion should be denied.  Dr. Moulick is a party to a pre-petition *Physician Employment Agreement* with Debtor SCHC Pediatric Associates, L.L.C. ("**SCHC**") dated on or about November 7, 2018.  Pursuant to black-letter bankruptcy law, all claims arising from his agreement, other than for the reasonable value of services provided post-petition, must be treated as pre-petition, general unsecured claims, unless the agreement is assumed.  Dr. Moulick's employment agreement has not been assumed; to the contrary, it is subject to a pending motion to reject.

4. Perhaps because he understands this legal defect, Dr. Moulick contends that his *pre-petition* employment agreement should be treated as a *post-petition* contract.  Toward this end, Dr. Moulick relies upon a separate, post-petition document (defined below as the "**Addendum**") as somehow being evidence of the Debtors' alleged post-petition "ratification" of his pre-petition employment agreement.  Dr. Moulick provides no statutory or other authority in support of his "ratification" theory, which is inconsistent with section 365 of the Bankruptcy Code.  More fundamentally, even if the Addendum had been fully executed (it was not), it would have been between two Debtors (and not Dr. Moulick), and would have served solely to address the allocation, as between these Debtors, of certain existing costs as a result of Dr. Moulick's pre-petition appointment as the "Chief Medical Officer" of St. Christopher's.

5. For these reasons, and for the reasons set forth below, there is no basis to treat Dr. Moulick's pre-petition employment agreement as a post-petition agreement, and no basis to allow Dr. Moulick an administrative expense claim. The Debtors respectfully submit that the Motion should be denied.

## FACTUAL BACKGROUND

6. On June 30 and July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

7. On July 15, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I. 182].

8. A description of the Debtors' businesses and the reasons for commencing the Chapter 11 Cases are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* (the "**First Day Declaration**") [D.I. 2].

9. As detailed in the First Day Declaration, as of the Petition Date the Debtors operated two hospitals – Hahnemann University Hospital ("**Hahnemann**") and St. Christopher's – and certain related practice groups.

10. The Debtors commenced these cases primarily because of ongoing, unsustainable operating losses at Hahnemann, and therefore to implement and facilitate an orderly closure of Hahnemann while ensuring patient safety and quality patient care. The Debtors also sought to

implement a sale of St. Christopher's to a going concern buyer, for the benefit of an at-risk community that relies on St. Christopher's as a safety net hospital for children, and for creditors.

A. **Dr. Moulick's Pre-petition Employment Agreement**

11. On or about November 7, 2018, Dr. Moulick and Debtor SCHC entered into a *Physician Employment Agreement* (the "**Employment Agreement**"), a copy of which is attached hereto as **Exhibit A**.

12. Through the Employment Agreement, SCHC employed Dr. Moulick as a full-time physician in St. Christopher's Department of Cardiothoracic Surgery.

13. Pursuant to Schedule 5.a of the Employment Agreement, SCHC agreed to pay Dr. Moulick an annual salary of $899,000, plus certain performance incentive benefits. Dr. Moulick was also entitled to participate in benefits maintained by SCHC, as provided in Schedule 6.a of the Employment Agreement.

14. In June 2019, prior to the Petition Date, Dr. Moulick was named "Chief Medical Officer" of St. Christopher's. This appointment was made in a highly irregular manner. Among other things, it was done on a unilateral basis by the Debtors' principal, Mr. Freedman, rather than by, or at a minimum in collaboration with, St. Christopher's medical staff and St. Christopher's Chief Executive Officer or in accordance with the Medical Staff Bylaws.

15. Dr. Moulick's compensation was not changed as a result of this designation, and no modifications were made to his Employment Agreement.

B. **The Master Agreement and the "Addendum"**

16. Debtors St. Christopher's Healthcare, LLC ("**STC**") and SCHC were parties to a pre-petition Master Medical Director Agreement dated May 9, 2018 (the "**Master Agreement**"). As set forth in greater detail therein, the Master Agreement provided a framework for St. Christopher's to receive medical director, program director or other administrative services from

-5-

physicians, such as Dr. Moulick, employed by its practice groups. A copy of the Master Agreement is attached hereto as **Exhibit B**.

17. The Master Agreement contemplated the execution of directorship addendums to such agreement, which were to document "the name of Group Physician who will furnish the Medical Director Services (the 'Medical Director'), the directorship title . . . [and STC's] compensation to [SCHC] for the Medical Director Services." Master Agreement, at ¶ 1(a). The Master Agreement also provided that "[a]s full compensation for Services rendered in accordance with any Directorship Addendum, [STC] shall pay [SCHC] the amounts specified in such Directorship Addendum." Id. at ¶ 7(a).

18. In the time period leading up to their execution of an Asset Purchase Agreement with the Purchaser, the Debtors considered whether they should address Dr. Moulick's appointment as St. Christopher's Chief Medical Officer by means of an "addendum" (the "**Addendum**") to the Master Agreement. Although an Addendum was prepared, in the form attached hereto as **Exhibit C**, it was not signed by SCHC.

C.    **The St. Christopher's Sale and Rejection of the Employment Agreement**

19. On September 27, 2019, the Court issued its *Order Under 11 U.S.C. § 105, 363, 365, 503 and 507 (A) Approving Asset Purchase Agreement with STC OpCo, LLC, (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of the Debtors' Executory Contracts, and (D) Granting Related Relief* (the "**STC Sale Order**") [D.I. 795].

20. Among other things, the STC Sale Order authorized the Debtors to sell substantially all of the assets of St. Christopher's and its affiliated practice groups, and authorized the Debtors to assume and assign to the Purchaser various related contracts and leases.

-5-

21. The closing of the STC Sale occurred, effective as of December 15, 2019. In connection therewith, the Purchaser extended employment offers to virtually all of the physicians who had been employed by the Debtors at St. Christopher's. The Purchaser did not offer employment to Dr. Moulick. This decision was solely the Purchaser's, and did not involve the Debtors.

22. Presumably as a result of the Purchaser's decision not to hire him, and expecting the Debtors to reject his Employment Agreement, Dr. Moulick then filed the Motion. As noted above, the Motion requests the allowance and immediate payment of an alleged administrative expense claim in the amount of $2,689,641. This amount represents two years of salary, alleged bonuses and the value of various benefits under the Employment Agreement.

23. As Dr. Moulick presumably expected, in connection with the closing on the STC Sale, the Debtors filed a motion seeking to reject Dr. Moulick's Employment Agreement effective December 15, 2019. See *Seventh Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Executory Contracts and Unexpired Leases* (the "**Rejection Motion**") [D.I. 1137]. The Rejection Motion is scheduled to be heard on January 23, 2020.

## OBJECTION

### A. Contractual Claims Under the Employment Agreement Constitute Pre-Petition General Unsecured Claims Only

24. The Employment Agreement is a pre-petition contract, which the Debtors have not sought to assume and instead have sought to reject. Pursuant to undisputed black-letter law, the agreement is not enforceable against the Debtors. See In re Whitcomb & Keller Mortg. Co., 715 F.2d 375, 379 (7th Cir. 1983). "During [the time period prior to assumption], the terms of an executory contract are temporarily unenforceable against the debtor." Id., citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 532 (1984). Upon rejection, any continuing claims under the

-6-

rejected contract become general unsecured claims. See 11 U.S.C. §§ 365(g) and 502(g). As one court has said, "[i]t would frustrate the entire purpose of granting debtors the power to reject burdensome executory contracts if, despite choosing to reject, they were nonetheless saddled with an administrative expense corresponding to the burdensome obligation they sought to avoid, and sections 365(g) and 502(g) collectively work together to avoid that result." AppliedTheory, 312 B.R. 225, 236 (Bankr. S.D.N.Y. 2004).

25.     Pending the decision to assume or reject, the Debtors' sole obligation is to pay Dr. Moulick the reasonable value of services actually provided. See In re Smurfit-Stone Container Corp., 425 B.R. 735, 741 (Bankr. D. Del. 2010) (citing Bildisco, 465 U.S. at 531 and In re Continental Airlines, Inc., 146 B.R. 520, 526-27 (Bankr. D. Del. 1992)). The Debtors have complied with this obligation; they have paid Dr. Moulick for the services he provided through December 14, 2019, in accordance with the terms of his Employment Agreement.

26.     Dr. Moulick seeks more than this, however. By the Motion, he requests payment, on an administrative expense basis, of *amounts he claims he would have earned in the future* if he had remained employed by the Debtors for the next two years. Putting aside the calculation of such claims (with which the Debtors disagree),[2] the reality is that such services will never be provided, such that Dr. Moulick cannot claim to have provided additional value to the estates in excess of $2.6 million.

27.     To the extent Dr. Moulick suggests that his services allegedly prevented St. Christopher's from "fall[ing] apart" and a "calamitous situation" from occurring, the Debtors

---

[2] Among other things, Dr. Moulick's claim includes two years' worth of "incentive payments," at $400,000 per year. This amount assumes Dr. Moulick's entitlement to "Level Three" incentive payments, as described in Schedule 5.a of the Employment Agreement. The Debtors dispute Dr. Moulick's entitlement to *any* incentive payment, let alone a Level Three payment, which required satisfaction of various criteria that were not satisfied. The Debtors reserve all rights regarding the calculation of Dr. Moulick's asserted administrative expense claim.

strongly disagree. In any event, such arguments are irrelevant to his claim of post-petition ratification. As a factual matter, the Debtors will be prepared to address Dr. Moulick's post-petition conduct at the hearing on the Motion, to the extent it is relevant to the Motion. As a legal matter, post-petition service under a pre-petition employment agreement does not entitle the contract party to anything other than the reasonable value of his post-petition services. Reasonable value is presumed to be the contract rate, which the Debtors have fully paid. As stated previously, the Debtors have filed a motion to reject Dr. Moulick's Employment Agreement. Once this agreement is rejected, any resulting damages are deemed by law to have occurred pre-petition, and give rise to pre-petition claims under sections 365(g) and 502(g) of the Bankruptcy Code. See, e.g., In re Texaco Inc., Case No. 10-CV-8151, 2011 WL 4526538, at *8, (Bankr. S.D.N.Y. Sept. 28, 2011) ("Post-termination . . . expenses result in a breach of contract, and thus are pre-petition claims") (citing 11 U.S.C. § 365(g)(1)).

**B.    The Addendum Does Not Create an Administrative Expense Claim for Dr. Moulick**

28.    As noted above, Dr. Moulick relies heavily upon the Addendum in support of his request for an administrative expense claim. He contends as follows:

> [p]ursuant to the Addendum, Dr. Moulick was made Chief Medical Officer of St. Chris and given specific compensation related thereto as provided for in the Addendum. The Addendum also fully ratified the terms of the Employment Agreement and provided for a 2-year term fully compensable.

Motion, ¶ 9 (internal definitions omitted).

29.    These contentions are incorrect. Specifically: (a) the Addendum was never fully executed or delivered to Dr. Moulick; (b) the Addendum did not appoint Dr. Moulick as Chief Medical Officer; (c) the Addendum did not provide for additional compensation for Dr. Moulick; and (d) the Addendum did not "ratify" Dr. Moulick's pre-petition Employment Agreement.

### *1.    The Addendum Was Never Fully Executed or Delivered to Dr. Moulick*

30. Dr. Moulick claims to be in possession of emails "confirming the execution of the Addendum by St. Chris" (Motion, fn. 2). In reality, the Addendum was never executed on behalf of SCHC. Moreover, a fully signed copy of the Addendum was never delivered to Dr. Moulick and he was made aware it never would be. These facts are more than mere technicalities; the Debtors made a conscious decision not to proceed with the Addendum due to the status of the STC Sale and the Purchaser's decision not to offer employment to Dr. Moulick.

### *2.    Dr. Moulick's Designation as Chief Medical Officer Occurred Pre-petition*

31. Contrary to Dr. Moulick's assertion that he became STC's Chief Medical Officer through the Addendum, in fact he was appointed to the role and title of Chief Medical Officer in June 2019, prior to the Petition Date. As noted above, this appointment was highly irregular, in that, among other things, it was a unilateral act by the Debtors' principal, Joel Freedman. Typically, an appointment such as this would have been made by St. Christopher's medical staff, or at a minimum in coordination with St. Christopher's medical staff and in accordance with the Medical Staff Bylaws.

32. In any event, Dr. Moulick's pre-petition appointment was communicated through announcements posted and circulated in June 2019. A copy of such an announcement is attached hereto as **Exhibit D**. Dr. Moulick also held himself out to be the Chief Medical Officer of St. Christopher's prior to the Petition Date and long before the Addendum was prepared or even contemplated.

33. Thus, Dr. Moulick's relationship with the Debtors was fully established pre-petition. His Employment Agreement was signed pre-petition, and he was named Chief Medical Officer of St. Christopher's pre-petition. The fact that the Debtors, after the Petition Date,

considered documenting Dr. Moulick's designation for purposes of internal bookkeeping of his pre-petition compensation between STC and SCHC does not transform Dr. Moulick's Employment Agreement into a post-petition agreement.

### *3.     The Addendum Did Not Change Dr. Moulick's Compensation*

34.     Dr. Moulick's contention that the Addendum modified his compensation is wrong. Even if the Addendum had been fully executed and effective, it did not provide for any increased compensation to Dr. Moulick and he was not a party to it. To the contrary, by merely referencing Dr. Moulick's Employment Agreement, it suggests that Dr. Moulick's compensation would merely continue in effect. This is consistent with the calculation of Dr. Moulick's asserted administrative expense claim in the Motion, which appears to be based upon the Employment Agreement's base salary, without any modification based on any amount included in the Addendum.[3]

### *4.     The Addendum Does Not "Ratify" or Amend the Employment Agreement*

35.     Dr. Moulick's characterization of the Addendum as "ratifying" his pre-petition Employment Agreement must fail. As a preliminary matter, and tellingly, Dr. Moulick cites to no case law or other authority supporting his contention that the Addendum "ratified" his Employment Agreement and transformed it into a post-petition contract. Perhaps this is not a surprise; diligent research has disclosed no case law that recognizes the concept of contract "ratification" in bankruptcy. Put simply, there is literally no legal or precedential support for a "ratification" argument.

36.     Dr. Moulick's contentions regarding "ratification" amount to an argument that the Debtors should be deemed to have implicitly assumed the Employment Agreement, without

---

[3]     Motion, at ¶ 19.

-10-

seeking or obtaining Court approval.  Case law is clear that contracts may not be deemed to have been implicitly assumed.  In re Univ. Med. Ctr., 973 F.2d at 1077 ("In order to insure that a debtor has the opportunity to assess the advantages and disadvantages of assuming a contract, assumption must be approved.  It cannot be presumed.").  See also Counties Contracting & Constr. Co. v. Constitution Life Ins. Co., 855 F.2d 1054, 1060 (3d Cir. 1988) (finding court approval "mandated for effective assumption under [section 365(a)]").

37. Several other considerations undermine Dr. Moulick's ratification argument.

38. As previously noted, the Addendum was merely an addendum to the Master Agreement, a separate document to which Dr. Moulick is not a party.  The only reference in the Addendum to Dr. Moulick's Employment Agreement is a statement, under the heading "Other Terms and Conditions," which states that "Physician will provide professional medical services pursuant to a Physician Employment Agreement between Physician and Group, dated as of November 8, 2018."  A mere acknowledgment that Dr. Moulick would continue to perform services under his pre-petition Employment Agreement cannot reasonably be deemed to transform that contract into a post-petition agreement.

39. Moreover, the Employment Agreement contains an integration clause.  Pursuant to this clause, the agreement could not be amended or modified "except by mutual written agreement of Employer and Physician." Employment Agreement, ¶15.  Because the Addendum was not signed by SCHC, which is the "employer" under the Employment Agreement, it could not have modified or amended the Employment Agreement.  See, e.g., In re MK Lombard Group, Ltd., No. Civ.A. 04-2700, 2005 WL 735993, *13-14 (E.D. Pa. Mar. 15, 2005) (barring subsequent agreements purporting to modify an agreement with an integration clause unless in writing and signed by the parties).  If the Employment Agreement could not be amended without

all parties' written agreement, it certainly could not have been "ratified" (if such a concept exists) without all parties' written agreement.

40. One final point warrants mention. The suggestion that the Addendum would have created any independent rights for Dr. Moulick is contradicted by the terms of the Master Agreement, which provides that "[e]ither Party [i.e., STC or SCHC] may terminate any Directorship Addendum at any time, with or without cause, by providing written notice to the other Party." Master Agreement, ¶ 6(b). Thus, if the Addendum had been signed, it could have been terminated by either STC or SCHC at any time.

## CONCLUSION

41. Dr. Moulick was employed by SCHC pursuant to his pre-petition Employment Agreement and was paid for his services. The fact that the Debtors considered, on a post-petition basis, documenting the impact of Dr. Moulick's pre-petition designation as St. Christopher's Chief Medical Officer on the intercompany relationship between Debtors STC and SCHC, through the Addendum, does not entitle Dr. Moulick to an administrative expense claim – of $2.6 million or any other amount. Any claims Dr. Moulick may have will constitute rejection damages, and should be treated as pre-petition general unsecured claims.

42. For these reasons, and for the other reasons set forth above, the Motion should be denied.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit E,** denying the Motion, and granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated: January 16, 2020 | **SAUL EWING ARNSTEIN & LEHR LLP** |

By: */s/ Aaron Applebaum*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Aaron S. Applebaum (DE Bar No. 5587)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com
aaron.applebaum@saul.com

*Counsel for Debtors and Debtors in Possession*