**<u>Exhibit B</u>**

**(Master Agreement)**

## MASTER MEDICAL DIRECTOR AGREEMENT

This **MASTER MEDICAL DIRECTOR AGREEMENT** (this "Agreement") is made and entered into as of Commencement Date (as hereinafter defined) by and between **ST. CHRISTOPHER'S HEALTHCARE, LLC,** a Pennsylvania limited liability company ("Hospital"), and **SCHC PEDIATRIC ASSOCIATES, L.L.C.**, a Pennsylvania limited liability company ("Group"). Hospital and Group are referred to herein individually as a "Party" and collectively as the "Parties".

### BACKGROUND

A.      Hospital owns and operates St. Christopher's Hospital for Children, a pediatric acute care hospital located in Philadelphia, Pennsylvania. Hospital operates various departments and units and offers various programs and services (each, a "Program") for which the services of experienced physicians are needed to furnish professional medical director, program director or other medico-administrative services ("Medical Director Services").

B.      Group employs, contracts, and/or is otherwise affiliated with one or more physicians (the "Group Physicians") who are duly licensed to practice medicine in the Commonwealth of Pennsylvania (the "State") and qualified to provide Medical Director Services.

C.      Hospital desires to contract with Group to furnish Group Physicians to provide Medical Director Services to Hospital, and Group desires to so contract with Hospital, on the terms set forth herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants herein set forth, the Parties agree as follows:

1.      **Engagement of Group for Medical Director Services**.

a.      <u>Directorship Addendums</u>. From time to time during the Term of this Agreement, Hospital and Group may request that Group furnish the services of a Group Physician to provide Medical Director Services in connection with a Program. If Group agrees to furnish such Medical Director Services, the Parties shall complete and execute a Directorship Addendum substantially in the form attached hereto as <u>Exhibit A</u> (each, a "Directorship Addendum") [and the applicable Group Physician shall execute the Directorship Addendum to acknowledge his appointment as Medical Director]. The Directorship Addendum shall set forth, among other things, the Program, the name of Group Physician who will furnish the Medical Director Services (the "Medical Director"), the directorship title, the Commencement Date of the Directorship Addendum, the initial term of the Directorship Addendum, a description of the duties and responsibilities of the Medical Director, the Hospital's compensation to the Group for the Medical Director Services, any existing arrangements under which the Medical Director provides directorship or other administrative services to any other person, and any other terms and conditions associated with the Medical Director Services contemplated by the Directorship Addendum.

b.    Incorporation of Directorship Addendums.    Beginning on the Commencement Date of a Directorship Addendum, Group shall provide the services of the Medical Director to provide Medical Director Services in accordance with such Directorship Addendum and this Agreement.  To the extent of any conflict between this Agreement and any Directorship Addendum, the terms of this Agreement will govern and control.

2.    **Responsibilities of Each Medical Director**.

a.    Services.  Group shall cause the applicable Medical Director to perform the duties and obligations set forth in this Agreement and the Directorship Addendum ("Services"). Group shall cause each Medical Director to report to the Hospital's Chief Executive Officer ("CEO"), who will represent Hospital in relation to this Agreement.

b.    Coordination of Services.  CEO and each Medical Director shall coordinate their activities in connection with the applicable Program, and Group shall cause each Medical Director to inform the CEO of any extended periods (i.e., one week or more) during which such Medical Director will be unavailable.  It is understood and agreed by the Parties that no Medical Director will be unavailable for more than four (4) weeks total per year.

c.    Time Records.  Group shall cause each Medical Director to record contemporaneously and to maintain all information pertaining to such Medical Director's performance of duties under this Agreement and the applicable Directorship Addendum.  Said documentation shall be substantially in the form attached as Exhibit B and made a part hereof, and shall contain the information requested by Hospital.  Said documentation shall be submitted to Hospital no later than the last day of the second month following the month in which Services were rendered.

d.    Representations and Warranties.  Group represents and warrants to Hospital as follows: (i) neither Group nor any Medical Director is or shall be bound by any agreement or arrangement which would preclude Group or any Medical Director from entering into, or from fully performing the Services; (ii) each Medical Director's license to practice medicine in the State or in any other jurisdiction and Medical Director's Drug Enforcement Agency number have never been denied, suspended, revoked, terminated, relinquished under threat of disciplinary action, or restricted in any way; (iii) no Medical Director's medical staff privileges at any health care facility have ever been denied, suspended, revoked, terminated, relinquished under threat of disciplinary action, or made subject to terms of probation or any other restriction; (iv) Group and each Medical Director shall perform the Services in accordance with: (1) all applicable federal, state, and local laws, rules and regulations, (2) all applicable standards of The Joint Commission and any other relevant accrediting organizations, and (3) all applicable bylaws, rules, regulations, procedures, and policies of Hospital and its medical staff; (v) each Medical Director shall be a participating physician in Medicare and the State's Medicaid program; (vi) neither Group nor any Medical Director shall have in the past conducted or shall be conducting its or his/her medical practice in such a manner as to cause Group or Medical Director to be suspended, excluded, debarred or sanctioned under the Medicare or Medicaid Programs or by any government licensing agency, and neither Group nor any Medical Director has ever been charged with or convicted of an offense related to health care, or listed by a federal agency as debarred, excluded or otherwise ineligible for federal program participation; and (vii) except for those existing arrangements set forth on the

applicable Directorship Addendum, no Medical Director will provide directorship or other administrative services to any other person, entity, hospital or clinic while serving as Medical Director without Hospital's prior written consent, which consent shall not be unreasonably withheld. Group further represents to Hospital that the compensation paid or to be paid by Group to any physician is and will, at all times during the term of the Agreement, be fair market value for services actually provided by such physician, not taking into account the value or volume of referrals or other business generated by such physician for Hospital. Group represents to Hospital that Group has and will at all times maintain a written agreement with each physician receiving compensation from Group who is not an employee of Group (e.g., each non-employed independent contractor), which written agreement is or will be signed by the Parties, and does or will specify the services covered by the arrangement. Group further represents that with respect to physician employees of Group with whom Group does not have a written employment agreement, the employment arrangement is or will be for identifiable services and is or will be commercially reasonable even if no referrals are made to Group by the employee. Further, Group shall comply with all relevant claims submission and billing laws and regulations. Each of the representations and warranties set forth herein shall be continuing and in the event any such representation or warranty fails to remain true and accurate during the Term, Group shall immediately notify Hospital.

3.    **Independent Contractors**.  In performing the Services, Group and each Medical Director are acting as independent contractors, and neither Group nor any Medical Director shall be considered an employee or agent of Hospital.

4.    **Term of Agreement**.  The initial term of this Agreement (the "Initial Term") shall be five (5) years commencing on the Commencement Date (hereinafter as defined) of this Agreement.  This Agreement shall renew for an additional term of five years (each a "Renewal Term") immediately following the expiration of the Initial Term or any Renewal Term, unless either Party provides notice to the other Party, at least one hundred eighty (180) days prior to expiration, that such Party does not desire that the Agreement renew.  The Initial Term and each Renewal Term are collectively referred to herein as the "Term".  The term "Commencement Date" shall mean the date set in the Commencement Certificate attached hereto as Exhibit C to the Agreement.

5.    **Termination of Agreement**.

a.    Termination of Agreement Without Cause.  Either Party may, in its sole discretion, terminate this Agreement without cause by giving the other Party at least one hundred eighty (180) days' prior written notice.

b.    Termination of Agreement for Breach.  Either Party may terminate this Agreement for cause in the event of a breach of any material term or condition of this Agreement, provided such breach continues for 15 days after receipt by the breaching Party of written notice of such breach from the non-breaching Party.

c.    Immediate Termination of Agreement by Hospital.  Hospital may terminate this Agreement immediately by written notice to Group upon the occurrence of any of the following: (i) the denial, suspension, revocation, termination, restriction, lapse or relinquishment

(under threat of disciplinary action) of the Medical Director's medical staff membership and/or privileges at the Hospital or any other health care facility, or Medical Director's license to practice medicine in the State; or any other jurisdiction; (ii) the death of Medical Director; (iii) the failure of Group or Medical Director to notify Hospital as required by Section 2(d); (iv) conduct by Group or Medical Director which in the sole discretion of Hospital could affect the quality of professional care provided to Unit/Service patients or the performance of duties required hereunder, or be prejudicial or adverse to the best interest and welfare of Hospital, the Hospital or its patients; (v) breach by Group or Medical Director of the confidentiality provisions hereof; (vi) closure of the Unit/Service, cessation of the Unit/Service patient care operations or sale of all, or substantially all, of Hospital's assets; or (vii) Group's or Medical Director's conviction of an offense related to health care, or Group's or Medical Director's listing by a federal agency as being debarred, excluded or otherwise ineligible for federal program participation.

      d.    <u>Termination of Agreement for Changes in Law</u>. In the event that any governmental or nongovernmental agency, or any court or administrative tribunal passes, issues, promulgates or changes any law, rule, regulation, standard, interpretation, order, decision or judgment (individually or collectively, "Legal Event"), which a Party (the "Noticing Party") reasonably believes, by reason of this Agreement (i) materially and adversely effects either Party's licensure, accreditation, certification, or ability to refer, to accept any referral, to present a bill or claim, or to receive payment or reimbursement from any governmental or non-governmental payor, or (ii) indicates a Legal Event with which the Noticing Party desires further compliance, then, in either event, the Noticing Party may give the other Party thirty (30) days prior written notice of its intent to amend or terminate this Agreement. Notwithstanding the foregoing, the Noticing Party may propose an amendment to the Agreement to take into account the Legal Event and, if accepted by the other Party prior to the end of the thirty (30) day notice period, the Agreement shall be amended as of the date of such acceptance and if not amended within the thirty (30) day notice period shall automatically terminate.

      e.    <u>Effect of Termination</u>. As of the effective date of termination of this Agreement, neither Party shall have any further rights or obligations hereunder except: (1) as otherwise provided herein; (2) for rights and obligations accruing prior to such effective date of termination; and (3) arising as a result of any breach of this Agreement.

**6.    <u>Term and Termination of Directorship Addendum.</u>**

      a.    <u>Term of Directorship Addendum</u>. The initial term of each Directorship Addendum shall be set forth in the Directorship Addendum. Unless otherwise provided in such Directorship Addendum, each Directorship Addendum shall renew for a term of twelve months immediately following the expiration of the initial term and each renewal term of such Directorship Addendum.

      b.    <u>Termination of Directorship Addendum</u>. Either Party may terminate any Directorship Addendum at any time, with our without cause, by providing written notice of termination to the other Party. If any Directorship Addendum is terminated, this Agreement shall continue in effect in accordance with its terms and shall remain applicable to all other Directorship Addendums that have not been terminated.

7. **Compensation**.

    a.    As full compensation for Services rendered in accordance with any Directorship Addendum, Hospital shall pay Group the amounts specified in such Directorship Addendum. Hospital's obligation to pay Group for Services shall be subject to Group providing Hospital with time records for such Services in accordance with Section 2(c).

    b.    Neither Group nor any Medical Director shall bill or assert any claim for payment against any patient or other third party for Services performed by Group or Medical Director under this Agreement or any Directorship Addendum.

    c.    Group shall have the sole responsibility to compensate each Medical Director, including for any Services furnished by each such Medical Director. Subject to Section 2(d), Group reserves the right, in its sole discretion, to determine the compensation payable to each Medical Director. Group hereby agrees to indemnify and hold Hospital harmless from any and all claims, costs and/or liability suffered or incurred by Hospital in connection with any claims for compensation by Medical Director for Services rendered hereunder.

    d.    Group hereby expressly authorizes Hospital to, and acknowledges that Hospital may, in its sole discretion at any time and from time to time, set off and/or withhold from any amounts payable to Group pursuant to the terms of this Agreement, to the fullest extent allowed by applicable law, any sum or sums necessary to satisfy all or any portion of any outstanding and delinquent obligation owed by Group to Hospital in connection with this Agreement or any other financial arrangement Group may have with Hospital, or its affiliates, including, without limitation, any outstanding loan or rental obligations owed by Group to Hospital, or its affiliates.

8. **Access to Books and Records**. If the value or cost of Services rendered to Hospital pursuant to this Agreement is $10,000 or more over a 12-month period, in accordance with section 1861(v)(1)(I) of the Social Security Act, Group agrees that for at least four (4) years following the furnishing of such Services, Group shall, upon written request, make available to the Secretary of the United States Department of Health and Human Services (the "Secretary"), the Comptroller General of the United States, or their respective duly-authorized representatives, such books, documents and records as may be necessary to certify the nature and extent of the cost of such Services.

9. **Confidentiality**. Group agrees, and shall cause and each Medical Director to agree, to maintain and hold as confidential and to not disclose the terms of this Agreement, any Directorship Addendum or any confidential or proprietary information that Group or such Medical Director may be provided during the term of this Agreement to any other person (with the exception of Group's or any Medical Director's legal counsel, accountant or financial advisors), unless disclosure thereof is required by law or otherwise authorized by this Agreement or consented to in writing by Hospital ("Confidential Information"). As between Hospital, its affiliates, and Group, any Confidential Information of Hospital or its affiliates or Data provided to or learned by Group for any purpose, in connection with any software pursuant to this Agreement, shall be deemed to be the exclusive property of Hospital. In no event shall Group claim any rights with respect to such Confidential Information or Data or take any action with respect to such

Confidential Information or Data that is inconsistent with the duties of a bailee for hire or in addition to the services Group is authorized to provide under this Agreement, without prior written consent of Hospital or its affiliates. Additionally, Group shall not use, authorize to use or disclose the Data received from Hospital for the purpose of developing information or statistical compilations for use by third Parties or other division or subsidiary of Group or for any commercial exploitation, unless otherwise agreed upon in writing by Hospital or its affiliates. Moreover, Group hereby waives any and all statutory and common law liens it may now or hereafter have with respect to data derived from Hospital's or any of its affiliate's Confidential Information or Data. For purposes hereof, "Data" means all tangible data elements belonging to Hospital or its affiliates under the terms of this Agreement. Data specifically includes, but is not limited to, patient identification information, patient medical records, financial information, business forecasts, personnel information, customer lists, marketing information, Medicare, Medicaid and other payor information, reimbursement information, and other information relating to the business of Hospital or any affiliate thereof or their respective patients, clients or customers. With respect to any patient or medical record information regarding Hospital patients, Group shall comply, and shall cause each Medical Director to comply, with all federal and state laws and regulations, and all bylaws, rules, regulations, and policies of Hospital and its medical staff, regarding the confidentiality of such information, including, without limitation, all applicable provisions and regulations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

10.    **Insurance**.  Hospital represents that each Medical Director shall be covered under Hospital's Commercial General Liability Insurance and Professional Liability Insurance only while performing administrative Medical Director duties outlined hereunder.

11.    **Arbitration**.  Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled by final and binding arbitration in the county in which the Hospital is located in accordance with the Commercial Rules of Arbitration ("Rules") of the Judicial Arbitration and Mediation Services ("JAMS") before one arbitrator applying the laws of the State. The Parties shall attempt to mutually select the arbitrator.  In the event they are unable to mutually agree, the arbitrator shall be selected by the procedures prescribed by the JAMS Rules.  Any award rendered by the arbitrator shall be final and binding upon each of the Parties, and judgment thereof may be entered in any court having jurisdiction thereof.  The costs shall be borne equally by the Parties.

12.    **Entire Agreement, Modification, Governing Law, Counterparts, Notices, Waiver; Assignment**.  This Agreement and the Directorship Addendums contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the Parties relating to such subject matter.  This Agreement may not be amended or modified except by mutual written agreement.  This Agreement shall be construed in accordance with the laws of the State, which provision shall survive the expiration or other termination of this Agreement.  This Agreement may be executed in one or more counterparts, all of which together shall constitute only one Agreement.  All notices hereunder shall be in writing, delivered personally, by certified or registered mail, return receipt requested, or by overnight courier, and shall be deemed to have been duly given when delivered personally or when deposited in the United States mail, postage prepaid, or deposited with the overnight courier addressed at the place identified on the signature page

below.  A waiver by either Party of a breach or failure to perform hereunder shall not constitute a waiver of any subsequent breach or failure.  Group shall not assign or transfer, in whole or in part, this Agreement or any of Group's rights, duties or obligations under this Agreement without the prior written consent of Hospital, and any assignment or transfer by Group without such consent shall be null and void.  This Agreement is assignable by Hospital without consent or notice.

13.    **Referrals**.  The Parties acknowledge that none of the benefits granted Group or any Medical Director hereunder are conditioned on any requirement that Group, or any physician affiliated with Group, make referrals to, be in a position to make or influence referrals to, or otherwise generate business for Hospital or its affiliates.  The Parties further acknowledge that no Medical Director or any physician affiliated with Group is restricted by this Agreement from establishing staff privileges at, referring any patient to, utilizing the services of, or otherwise generating any business for any other facility of such Group-affiliated physician's choosing.

14.    **Non-Discrimination**.  The Group agrees, and shall cause each Medical Director to agree, to treat in a nondiscriminatory manner any and all patients receiving medical benefits or assistance under any federal health care program.

15.    **Indemnification**.  Group shall indemnify Hospital and hold Hospital harmless from and against all liability, losses, damages, claims, causes of action, cost or expenses (including reasonable attorneys' fees), which directly or indirectly arise from the performance of the Services hereunder.

16.    **Marketing**.  Neither Party shall use the name, trade name, trademarks, service marks or logos of the other Party or any of its affiliates in any press release, advertising, marketing, publicity or other materials, without the prior written consent of the other Party.  Group shall not represent, directly or indirectly, that any product or service of Group has been approved or endorsed by Hospital or any of its affiliates, without the prior written consent of Hospital.

17.    **Compliance Obligations**.  Group shall comply, and shall cause each Medical Director to comply, with Hospital's Code of Conduct, Hospital's Compliance Program, and Hospital's related policies and procedures (including without limitation those related to the Deficit Reduction Act of 2005, the Anti-Kickback Statute and the Stark Law, and related to compliance training), as each shall be in effect from time to time.

18.    **Exclusion Lists Screening**.  Group shall screen its current and prospective owners, officers, directors and each Medical Director and employee, contractor, and agent performing services under this Agreement ("Screened Persons") against (a) the United States Department of Health and Human Services/Office of Inspector General List of Excluded Individuals/Entities (available through the Internet at http://www.oig.hhs.gov), (b) the General Services Administration's System for Award Management (available through the Internet at http://www.sam.gov), and (c) any applicable state healthcare exclusion list (collectively, the "Exclusion Lists") to ensure that none of the Screened Persons are currently excluded, debarred, suspended, or otherwise ineligible to participate in Federal healthcare programs or in Federal procurement or nonprocurement programs, or have been convicted of a criminal offense that falls within the ambit of 42 U.S.C. § 1320a-7(a), but have not yet been excluded, debarred, suspended, or otherwise declared ineligible (each, an "Ineligible Person").  If, at any time during the term of

this Agreement any Screened Person becomes an Ineligible Person or proposed to be an Ineligible Person, Group shall immediately notify Hospital of the same.

19. **Survival**. The provisions of Sections 3, 5(e), 7, 8, 9, and 15 shall survive expiration or termination of this Agreement regardless of the cause of such termination.

**ST. CHRISTOPHER'S HEALTHCARE, LLC**

By: _____
Name: Joel Freedman
Title:   President
Address: 160 E. Erie Avenue
Philadelphia, PA 19134

**SCHC PEDIATRIC ASSOCIATES, L.L.C.**

By: _____
Name: Joel Freedman
Title:   President
Address: 160 E. Erie Avenue
Philadelphia, PA 19134

**Exhibit C**

The Commencement Date shall mean _May 9_, 20_18_.

REVIEWED BY THE LEGAL DEPARTMENT:

By: _Miriam Hogan_

*The date above will be inserted by The Legal Department after the contract has all blanks filled in, has been signed by all parties thereto and has been faxed or emailed to The Legal Department. The Physician Practices CEO should assure that the original contract is mailed to The Legal Department promptly after it has been faxed or emailed.*

### Exhibit A

### Directorship Addendum

This Directorship Addendum is being entered into in connection with that certain Master Medical Director Agreement dated _____, 2018 between St. Christopher's Healthcare, LLC, and SCHC Pediatric Associates, L.L.C. (the "Master Medical Director Agreement"). Capitalized terms not otherwise defined in this Directorship Addendum shall have the meanings ascribed to them in the Master Medical Director Agreement.

| Topic | Terms |
|---|---|
| Program | |
| Name of Medical Director | |
| Directorship Title | |
| Effective Date | |
| Initial Term | |
| Duties and Responsibilities | See Attachment 1. |
| Compensation | $____ per hour for the first ____ hours that Medical Director spends providing Services each calendar month, as reflected in time records submitted to Hospital. No additional compensation will be paid for additional time spent providing Services during such calendar month. |
| Other Terms and Conditions | |
| Permitted Existing Directorship Arrangements | |

**ST. CHRISTOPHER'S HEALTHCARE, LLC**

By: _____
Name:
Title:
Date: _____

**SCHC PEDIATRIC ASSOCIATES, L.L.C.**

By: _____
Name:
Title:
Date: _____

**ACKNOWLEDGEMENT BY MEDICAL DIRECTOR:**

By: _____
Name:
Date: _____

**Attachment 1**

## Duties and Responsibilities of Medical Director

US_ACTIVE-139639629.2

**Exhibit B**
**Activity Log**

**Medical Director:** _____
**Directorship Title:** _____

Number of Calendar Months Remaining
in Term of Directorship Addendum: _____

**A.    Directorship Duties [see Attachment 1]:**

1.
2.
3.
4.
5.
6.
7.
8.
9.
10.

**B.    Log**

<u>IMPORTANT NOTICES:</u>

1.    All information recorded on this Log must be legible.  Please print or type all information.
2.    Please total your hours prior to submitting this Log to your hospital representative.

| Date Activity Performed | Duty From List Above | Time Expended (In Quarter Hours) | Activities Performed Under this Duty (Brief Description of Activity is REQUIRED) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| Date Activity Performed | Duty From List Above | Time Expended (In Quarter Hours) | Activities Performed Under this Duty (Brief Description of Activity is REQUIRED) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| **TOTAL** |  |  |  |

By signing this document, the Medical Director hereby affirms and attests that the Services and the number of hours recorded for such Services set forth herein were performed by Medical Director and that Medical Director fully performed all designated duties required during this month.

_____
**Medical Director**

By signing this document, the Hospital Compliance Officer hereby affirms and attests he/she has reviewed the above Log for completeness, legibility, and overall compliance with the terms of the Agreement.

_____
**Hospital Compliance Officer**

Approved for applicability of reported duties:

_____
**Hospital Program Director**

By signing this document, the CFO and the CEO affirm and attest that they have confirmed that the Services rendered and the number of hours recorded for such Services by Medical Director satisfy the contractual obligations of Medical Director, and that the number of months remaining in the Term of Directorship Addendum, as stated on Page One, are correct.

_____          _____
**Chief Financial Officer**          **Date**          **Chief Executive Officer**          **Date**