## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) **Objection Deadline: March 9, 2020 at 4:00 p.m. (EST)** |
| | ) **Hearing Date: To be determined (if necessary)** |
| | ) |

## SECOND MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER FURTHER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON

By this motion (this "Motion"), Center City Healthcare, LLC d/b/a Hahnemann University Hospital and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") seek the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), (a) further extending the period in which the Debtors have the exclusive right to file a chapter 11 plan or plans (the "Exclusive Filing Period") by 120 days, through and including June 24, 2020; and (b) extending the period in which the Debtors have the exclusive right to solicit acceptances of a chapter 11 plan or plans (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") by 120 days, through and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

including August 24, 2020.  In support of this Motion, the Debtors respectfully represent as follows:

## **Preliminary Statement**

1.      Despite facing numerous challenges during these Chapter 11 Cases, the Debtors have made substantial progress in accomplishing their goals of a safe and effective wind-down of Hahnemann University Hospital ("HUH") and a going concern sale of St. Christopher's Hospital for Children ("STC").  In particular, and as further described below, the sale of STC closed, effective as of December 15, 2019, and, since that time, the Debtors have addressed various transition issues and rejected numerous contracts no longer needed by the estates.  In addition, during the last few months, the Debtors devoted significant time to resolving disputes with the Master Landlords (as defined below) and also obtained Court approval to retain Centurion (as defined below) to sell much of the remaining medical equipment, furniture and inventory at HUH, thereby enabling the Debtors to more readily transition out of buildings that have housed hospital and hospital-related operations for decades.

2.      The Debtors have also focused significant attention and resources to addressing the challenging issues presented in the motions filed by the Ad Hoc Committee and the DOH (both as defined below) (the "Motions to Compel") to compel the Debtors to purchase tail professional liability insurance for former residents, attending physicians and staff.  Following extensive discussions with key stakeholders in these cases and considerable outreach to insurers, certain local and regional hospitals, the Commonwealth of Pennsylvania and certain other organizations, the Debtors are pleased to report that, pending Court approval of the Debtors' recently filed motion, the Debtors will, in resolution of the Motions to Compel, purchase tail coverage for all persons and entities for whom insurance is required under applicable law (other

than those covered by insurance obtained by the Buyer (as defined below) or by Reading Hospital.

3.     While certainly making material progress by addressing these and other open issues, the Debtors require additional time to formulate, prepare, propose, and implement such a plan.  In the meantime, as further described herein, given the substantial progress made by the Debtors in these cases to date, a further extension of the Exclusive Periods is warranted and appropriate so as to permit the Debtors to continue to address outstanding critical issues while formulating a viable consensual plan.

## Jurisdiction and Venue

4.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

5.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The statutory predicates for the relief requested herein are sections 105(a) and 1121(d) of the Bankruptcy Code.

**Background**

8.    On June 30 and July 1, 2019 (collectively, the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases.

9.    On July 15, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al*. [D.I. 182] (the "Committee").

10.    A description of the Debtors' businesses and the reasons for commencing these Chapter 11 Cases is set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2], which is incorporated herein by reference.

11.    As noted above, the Debtors entered the Chapter 11 Cases with two primary objectives: (i) the orderly closure of HUH; and (ii) the going concern sale of STC and its related affiliated entities.  As described below, over the past several months, the Debtors have made significant progress in furtherance of these objectives, as well as in addressing certain other pressing case issues.

A.    **The Closing of the STC Sale**

12.    Effective as of December 15, 2019, the sale (the "STC Sale") of substantially all assets of STC and certain related Debtors to STC OpCo, LLC (the "Buyer") closed.  Since the closing, the Debtors have addressed various transitional issues, including certain vendor issues, various operational transition issues and certain assumption and assignment issues.  Further, in

connection with the closing, the Debtors have rejected hundreds of burdensome executory contracts and unexpired leases that are no longer needed by their estates.

**B.      The Debtors' Progress with Respect to their Leased Premises and the Sale of Remaining Medical Equipment, Furniture, and Inventory at HUH**

13.      The Debtors have also made significant progress with respect to their transition out of the HUH building and the surrounding medical office buildings.  On November 25, 2020, the Court approved a stipulation between the Debtors and certain landlords owning property adjacent to HUH (and in one instance, a parking garage adjacent to STC) (together, the "Master Landlords") that, *inter alia*, provided for the rejection of the relevant leases, resolved significant claims asserted by the Master Landlords against the Debtors for allegedly outstanding lease obligations and set forth terms for the Debtors' continued access to the leased premises for an agreed period of time and the transition of the buildings to the Master Landlords.

14.      The Debtors also obtained Court authority [D.I. 1062] (the "Centurion Order") to retain Centurion Service Group, LLC ("Centurion") to conduct liquidation sales of certain remaining medical equipment, inventory and furniture at HUH.  Consistent with the Centurion Order, such sales took place throughout the month of January 2020.  Since then, Centurion and representatives of the Debtors have been working expeditiously to coordinate the removal of equipment purchased through the liquidation sales prior to the Debtors' agreed rejection date for their lease of the HUH building, which is February 29, 2020.

**C.      The Debtors' Additional Areas of Progress in Recent Months**

15.      In recent months, the Debtors have devoted considerable effort to developing a solution to issues raised in the Motions to Compel filed by the Commonwealth of Pennsylvania Department of Health ("DOH") and the Ad Hoc Committee of Hahnemann Residents and Fellows ("Ad Hoc Committee"), which sought to compel the Debtors to obtain tail insurance

coverage for any and all claims asserted against former residents, fellows and medical staff at HUH and STC.

16.     Stemming from (i) a genuine desire to mitigate at least some of the harm to the regional medical community caused by HUH's closure, (ii) a desire to circumvent what the Debtors anticipate would be costly and difficult litigation concerning the Motions to Compel and related claims based on the lack of tail insurance coverage, the Debtors have devoted considerable time and resources to seeking out sources of funding for the tail insurance coverage needed and requesting quotes from various insurers.  Such efforts have resulted in the Debtors' agreement, subject to Court approval, to purchase tail coverage from Pennsylvania Academic Risk Retention Group, LLC ("PARRG") on the most favorable terms that the Debtors could obtain for such coverage.  Not only would such insurance alleviate significant concerns among former residents, physicians and staff concerning coverage but also would resolve the Motions to Compel, for the benefit of the Debtors estates and creditors.

17.     In addition to the foregoing, the Debtors have also dedicated significant time and attention to the following tasks: (i) collecting outstanding accounts receivable; (ii) analyzing potential estate causes of action; (iii) addressing regulatory issues regarding the removal of assets from HUH and various other issues related to the wind-down of HUH; (iv) responding to inquiries regarding certain pending litigation claims, including personal injury claims, and assessing the best course of action to address such claims; and (v) preparing a bar date motion.

D.      **The Debtors' Exclusivity Periods**

18.     The Debtors' Exclusive Filing Period is scheduled to expire on February 25, 2020 and the Debtors' current Exclusive Solicitation Period is scheduled to expire on April 26, 2020. To ensure that these Chapter 11 Cases continue to progress in an effective and efficient manner,

the Debtors seek the extensions requested herein so that they can work towards resolution of the open issues above, as well as towards a consensual plan or plans of liquidation.

**Relief Requested**

19.     By this Motion, the Debtors seek the entry of an Order, pursuant to sections 105(a) and 1121(d) of the Bankruptcy Code, (a) extending the Debtors' Exclusive Filing Period by 120 days, through and including June 24, 2020 and (b) extending the Debtors' Exclusive Solicitation Period by 120 days, through and including August 24, 2020.

**Basis for Relief Requested**

20.     Section 1121(b) of the Bankruptcy Code provides that "only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter."  11 U.S.C. § 1121(b).  Sections 1121(c)(2) and (3) further provide, in relevant part, that a party in interest may file a plan if and only if "the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter" or "the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief."  See 11 U.S.C. § 1121(c)(2)-(3).

21.     Section 1121(d)(1) provides, in relevant part:

> [O]n request of a party in interest made within the respective periods in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

22.     Pursuant to section 1121(d)(2), the 120-day Exclusive Filing Period may not be extended beyond a date that is 18 months after the Petition Date, and the 180-day Exclusive Solicitation Period may not be extended beyond a date that is 20 months after the Petition Date.  See 11 U.S.C. § 1121(d)(2).  In the present case, the requested extensions of the Exclusive

Periods, if granted, do not extend beyond these deadlines.  Thus, this Motion is consistent with the requirements of Bankruptcy Code section 1121(d)(2).

**I.      A Court May Extend the Exclusive Periods for "Cause" under Section 1121(d) of the Bankruptcy Code**

23.      As indicated above, section 1121(d)(1) of the Bankruptcy Code provides that a court may extend Exclusive Periods for "cause" shown.  <u>See</u> 11 U.S.C. § 1121(d); <u>In re Pine Run Trust, Inc.</u>, 67 B.R. 432, 433 (Bankr. E.D. Pa. 1986).  The term "cause" is not defined in the Bankruptcy Code; rather, courts have broad discretion to determine "cause" based on the facts and circumstances of each case.  <u>See First Am. Bank of N.Y. v. Southwest Gloves & Safety Equip., Inc.</u>, 64 B.R. 963, 965 (D. Del. 1986) (stating that section 1121(d)(1) provided the bankruptcy court with flexibility to increase the period of exclusivity in its discretion); <u>see also In re Burns and Roe Enters., Inc.</u>, No 00-41610 (RG), 2005 WL 6289213, at *3-4 (D.N.J. Nov. 2, 2005); <u>In re Sharon Steel Corp.</u>, 78 B.R. 762, 763-65 (Bankr. W.D. Pa. 1987).

24.      Legislative history also makes clear that the term "cause" is intended to be a flexible standard aimed at balancing the competing interests of a debtor and its creditors.  <u>See</u> H.R. Rep. No. 95-595 at 231-32 (1978).  The purpose of exclusivity is to "promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." <u>See</u> H.R. Rep. No. 95-595, at 36 (1994); <u>Burns and Roe</u>, 2005 WL 6289213, at *4.  Accordingly, to fulfill Congress's legislative intent, debtors should be granted a reasonable opportunity to remain in control for a period of time to prepare adequate financial and non-financial information regarding the outcome of any proposed plan for disclosure to creditors.  <u>See In re McLean Indus., Inc.</u>, 87 B.R. 830, 833-34 (Bankr. S.D.N.Y. 1987); <u>see also In re All Seasons Indus., Inc.</u>, 121 B.R. 1002, 1006 (Bankr. N.D. Ind. 1990) ("One of the most important reasons for extending the debtor's period of exclusivity is to give the chapter 11 process of

negotiation and compromise an opportunity to be fulfilled, so that a consensual plan can be proposed and confirmed without opposition.").

25.    To determine whether cause exists to extend the Exclusive Periods, courts consider several non-exclusive factors, including: (i) the size and complexity of a case; (ii) the debtor's need for sufficient time to negotiate a plan and prepare adequate information; (iii) the existence of good faith progress toward reorganization; (iv) whether the debtor is paying its bills as they come due; (v) whether the debtor has shown a reasonable likelihood of proposing a viable plan; (vi) the progress the debtor has made in negotiating with its creditors; (vii) the amount of time that has elapsed in the case; (viii) whether the debtor is seeking an extension of the exclusive periods to pressure creditors to submit to the debtors' reorganization demands; and (ix) whether any unresolved contingencies exist.  See, e.g., In re Adelphia Comm. Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).  No single factor is dispositive in determining whether to extend exclusivity; rather, courts can choose to rely on only a few factors or even altogether differing factors.  See In re Elder-Beerman Stores Corp., No. C-3-97-175, 1997 WL 1774880, at *4 (S.D. Ohio June 23, 1997); Dow Corning, 208 B.R. at 669-70 (noting that sometimes certain factors are more important or relevant than others).

26.    As set forth below, ample cause exists to grant the Debtors' requested extensions of the Exclusive Periods in the present case.

II.    **Cause Exists to Extend the Exclusive Periods**

    A.    **The Debtors Have Made Good Faith Progress Towards a Plan**

27.    First, the Debtors have made significant progress in these Chapter 11 Cases to date.  For example, in the last couple months, the Debtors have (i) sought and obtained entry of several rejection orders under which the Debtors have rejected burdensome and unnecessary executory contracts and unexpired leases; (ii) negotiated with parties in interest to resolve the Motions to Compel; (iii) addressed a multitude of creditor and patient inquiries; (iv) closed the STC Sale; (v) negotiated settlements of certain significant administrative claims; (vi) coordinated efforts with Centurion in connection with the liquidation sales of medical inventory, equipment, and furniture at HUH; (vii) negotiated significant claims and transition issues with the Master Landlords; (viii) worked to collect outstanding accounts receivable; (ix) analyzed potential estate causes of action; (x) addressed regulatory issues relating to HUH and the wind down of its operations; (xi) responded to inquiries regarding certain pending litigation claims, including personal injury claims; (xii) prepared a bar date motion; and (xiii) otherwise attended to tasks required to administer these Chapter 11 Cases.

28.    The Debtors intend to maintain focus and efficiency in these Chapter 11 Cases as they work to address open issues, and, after the filing of a bar date motion, analyze claims asserted against the estate.  Thereafter, the Debtors will work with parties in interest to formulate a chapter 11 plan or plans.  That said, the Debtors are mindful of the time required to carry-out these tasks,  particularly to negotiate a plan that will meet the threshold for confirmation.  The Debtors thus seek an extension of the Exclusive Periods so that the Debtors, in consultation with their key constituents, can work to develop a viable and consensual chapter 11 plan.

36553337.5 02/24/2020

**B.      The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan or Plans**

29.      The Debtors' prospects for filing and ultimately confirming a viable chapter 11 plan are favorable.  Indeed, the Debtors' speed and progress towards achieving their goals of an orderly wind-down of HUH and a going concern sale of STC demonstrate that they will likewise be able to approach the plan formulation and confirmation process with the same speed and efficiency.  The Debtors submit that any proposed plan will be structured so as to ensure a maximum recovery to the Debtors' creditors and parties in interest and an orderly wind-down of the Debtors' estates.  Thus, because the Debtors have reasonable prospects for filing a viable plan, an extension of the Exclusive Periods is warranted.

**C.      The Chapter 11 Cases Have Been Pending for a Short Period of Time**

30.      The Chapter 11 Cases have been pending for approximately eight months, during which time the Debtors have made significant progress.  Given the complexity of the ongoing issues faced by the Debtors' estates and the short time period in which the Debtors have had to address them, the Debtors believe a short extension of the Exclusive Periods is necessary in order to permit the Debtors to focus on the preparation and filing of a consensual chapter 11 plan.  The requested extensions of the Exclusive Periods will provide the Debtors with the time needed to address the open issues described above and permit the Debtors to focus on establishing a framework for a viable, consensual plan, without the distraction of a looming exclusivity deadline.

**D.      No Prejudice to Creditors**

31.      The Debtors do not believe that the requested extension of the Exclusive Periods will harm the Debtors' creditors or other parties in interest.  On the contrary, the Debtors have conducted these Chapter 11 Cases in a manner intended to maximize the recoveries of their

creditors and to best serve the interests of parties in interest.  In addition, the Debtors are not seeking this extension to prejudice their creditors or to otherwise pressure creditors to submit to reorganization demands.  Instead, the Debtors seek the requested extension so that they can maintain the status quo in these Chapter 11 Cases, address significant time-sensitive and potentially case dispositive issues, and begin formulating a consensual plan.  Thus, because neither the Debtors' creditors nor any other party in interest will be prejudiced by the proposed extension of the Exclusive Periods, the Debtors submit that the relief requested should be approved.

32.    Lastly, although the Debtors hope to be in a position to file a chapter 11 plan of liquidation within the extended Exclusive Filing Period, as a precautionary measure, the Debtors reserve the right to request further extensions of the Exclusive Periods for cause.

## No Prior Request

33.    No previous request for the relief sought herein has been made to this or any other Court.

## Notice

34.    Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the Committee; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In

36553337.5 02/24/2020

light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[remainder of page left intentionally blank]

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form annexed hereto at **Exhibit A**: (i) extending the Debtors' Exclusive Filing Period by 120 days, through and including June 24, 2020; (ii) extending the Debtors' Exclusive Solicitation Period by 120 days, through and including August 24, 2020; and (iii) granting the Debtors such other and further relief as is just and proper.

Dated: February 24, 2020 **SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Monique B. DiSabatino*
     Mark Minuti (DE Bar No. 2659)
     Monique B. DiSabatino (DE Bar No. 6027)
     1201 N. Market Street, Suite 2300
     P.O. Box 1266
     Wilmington, DE 19899
     Telephone: (302) 421-6840
     Fax: (302) 421-5873
     mark.minuti@saul.com
     monique.disabatino@saul.com

          -and-

     Jeffrey C. Hampton
     Adam H. Isenberg
     Melissa A. Martinez
     Centre Square West
     1500 Market Street, 38th Floor
     Philadelphia, PA 19102
     Telephone: (215) 972-7777
     Fax: (215) 972-7725
     jeffrey.hampton@saul.com
     adam.isenberg@saul.com
     melissa.martinez@saul.com

     *Counsel for Debtors and Debtors in Possession*