## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) Case No. 19-11466 (MFW) |
| *et al.*,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Objection Deadline: August 17, 2020 at 4:00 p.m.** |
| | ) **Hearing Date: To be determined** |

### COVER SHEET TO THE FIRST AND FINAL FEE APPLICATION OF CENTURION SERVICE GROUP, LLC, AUCTIONEER TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM NOVEMBER 25, 2019 THROUGH MAY 31, 2020

| | |
|---|---|
| Name of Applicant: | Centurion Service Group, LLC |
| Authorized to Provide Professional Services to: | Debtors and Debtors-in-Possession |
| Date of Retention: | November 25, 2019 |
| Period for which compensation and reimbursement is sought: | November 25, 2019 through May 31, 2020 |
| Amount of Compensation sought as actual, reasonable and necessary: | $726,426.00 |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $0.00 |

This is a(n): ___ monthly        ____ interim  **X** final application.

Prior Applications:  NONE.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) Case No. 19-11466 (MFW) |
| *et al.*,[2] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Objection Deadline: August 17, 2020 at 4:00 p.m.** |
| | ) **Hearing Date: To be determined** |
| | ) |

## FIRST AND FINAL APPLICATION OF CENTURION SERVICES, LLC, AUCTIONEER TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM NOVEMBER 25, 2019 THROUGH MAY 31, 2020

Centurion Service Group, LLC ("**Centurion**" or "**Applicant**"), auctioneer to the debtors

and debtors-in-possession (the "**Debtors**"), hereby submits its first and final fee application (the

"**Application**") for allowance of compensation for professional services rendered and

reimbursement of actual and necessary expenses incurred for the period from November 25,

2019 through May 31, 2020 (the "**Application Period**").

## JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**")

has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of*

*Delaware*, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C.

---

[2]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

37070554.4 07/27/2020

§ 157(b), and Centurion confirms its consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief requested herein are sections 105(a), 327(a), 328(a) and 1107 of title 11 of the United States Code (11 U.SC. §§ 101-1532 as amended, the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

## INTRODUCTION

4.     On June 30, 2019 and July 1, 2019 (together, the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

5.     On July 15, 2019, the Office of the United States Trustee (the "**UST**") appointed the Official Committee of Unsecured Creditors of Center City Healthcare d/b/a Hahnemann University Hospital, *et al*. (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code.

6.     On August 2, 2019, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 341] (the "**Interim Compensation Order**"), which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in the Chapter 11 Cases.

## RETENTION OF CENTURION

7.    When this case commenced, the Debtors owned various medical equipment, furniture and inventory located at the buildings known as the "North" and "South" Towers on North Broad Street in Philadelphia, Pennsylvania (the "**Hahnemann Main Premises**"), as well as certain other leased real estate in Center City, Philadelphia (collectively, the "**Hahnemann Auxiliary Premises**").

8.    Due to the closure of Hahnemann University Hospital ("**Hahnemann**"), the Debtors no longer required the medical equipment, furniture or inventory located at the Hahnemann Main Premises or Hahnemann Auxiliary Premises (collectively, the "**Auction Assets**"). As a result, Debtors determined to sell the Auction Assets for the benefit of the Debtors' estates and creditors.

9.    To aid in obtaining competitive offers from potential purchasers of the Auction Assets, the Debtors elected to retain Centurion as auctioneer to sell the Auction Assets, pursuant to the terms and conditions of the Auction Engagement Agreement dated October 30, 2019 between Debtors and Centurion (the "**Centurion Engagement Agreement**"), a copy of which was attached as Exhibit D to the *Motion of Debtors for Order (I) Authorizing Retention and Employment of Centurion Service Group, LLC, as Auctioneer, (II) Waiving Compliance with Certain Requirements of Local Rule 2016-2; and (III) Approving Sale and Liquidation of Certain Medical Equipment, Furniture and Inventory* [D.I. 923] (the "**Centurion Retention Application**").

10.    Under the terms of the Centurion Engagement Agreement, the terms of Centurion's compensation were as follows:

a.  Centurion was to pay the Debtors $2,042,500 as a guarantee of proceeds (the "**Guarantee**") within 48 hours after approval of the Centurion Engagement Agreement by the Court.

b.  Centurion was to hold the net proceeds from all auction sales (as defined in the Centurion Engagement Agreement, the "**Net Proceeds**"), which were to exclude any "Buyer's Premium" (as defined below), in trust, and in a segregated account, until disbursed pursuant to the terms of the Centurion Engagement Agreement. Centurion was to disburse Net Proceeds in the following order of priority:

   i.  Centurion was to receive the first $2,450,000 from the Net Proceeds to reimburse it for the Guarantee and for all expenses; and

   ii.  All Net Proceeds in excess of $2,450,000 were to be shared eighty-five percent (85%) to the Debtors and fifteen percent (15%) to Centurion.

c.  Centurion was permitted to charge a premium (a "**Buyer's Premium**") of up to eighteen percent (18%) of the amount of the purchase price for a given item of the Auction Assets sold at the auction sale, to be paid by the purchasers thereof. Such Buyer's Premium was to accrue exclusively for the benefit of Centurion and not be included in the Net Proceeds.

11.  On November 25, 2019, this Court entered an order granting the Centurion Retention Application [D.I. 1062] (the "**Centurion Retention Order**").  Under the terms of the Centurion Retention Order, the Court approved the basic compensation structure as set forth in the Centurion Engagement Agreement pursuant to section 328(a) of the Bankruptcy Code, subject to the procedures set forth in the Bankruptcy Code, Bankruptcy Rules, Local Rules, UST Guidelines, and any applicable orders of the Court; provided, however, with the agreement of the parties, the Court: (a) reduced the amount of the Guarantee payable by Centurion from $2,042,500 to $1,597,750 (the "Modified Guarantee"); and (b) reduced the fee Centurion would receive from the Net Proceeds to compensate it for the Modified Guarantee and expenses from $2,450,000 to $2,167,650.

12.  In light of these changes, the economic agreement agreed by the parties and approved by the Court was as follows:

a.    Centurion would make the Modified Guarantee to the Debtors in the amount of $1,597,750[3];

b.    In exchange for making the Modified Guarantee and for agreeing to assume certain costs in connection with the sale, Centurion would be entitled to the first $2,167,650 of Net Proceeds from the auction, effectively giving Centurion the right, subject to final Court approval, of $569,900 of the first $2,167,650 of Net Proceeds;

c.    The Debtors and Centurion would split all remaining Net Proceeds on a 85% (Debtors) / 15% (Centurion) basis, subject to final Court approval.

13.    Furthermore, pursuant to the Centurion Retention Order, (i) Centurion's compensation is subject to review under section 328(a) of the Bankruptcy Code, except the U.S. Trustee has the right to object to Centurion's request for compensation and expense reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, and (ii) the Court granted Centurion a waiver of the information-keeping requirements of Local Rule 2016-2 such that Centurion is not required to keep professional time records.

## PROFESSIONAL SERVICES RENDERED

14.    Pursuant to the Interim Compensation Order, Centurion submits this Application, seeking interim approval and allowance of compensation in the amount of $726,426 incurred during the period from November 25, 2019 through May 31, 2020.

15.    During the Application Period, Centurion performed all of its obligations under the terms of the Centurion Engagement Agreement. Without limiting the generality of the foregoing, Centurion:

---

[3]    The Modified Guarantee was made to the Debtors' debtor-in-possession lender, MidCap Funding Trust IV, and reduced MidCap's secured claim against the Debtors.

    a.   Paid $1,597,750.00 to the Debtors' lender (MidCap Funding Trust IV) as and for the Modified Guarantee;

    b.   Performed an inventory of the Auction Assets;

    c.   Prepared an auction catalog and list of the Auction Assets, organizing the Auction Assets into lots;

    d.   Advertised and marketed the various auctions and sales of the Auction Assets;

    e.   Facilitated competitive bidding and private sales of certain radiology equipment;

    f.   Conducted a live onsite medical equipment auction of some of the Auction Assets;

    g.   Conducted an onsite timed instruments and disposables auction of some of the Auction Assets;

    h.   Facilitated and supervised the removal of Auction Assets from the Hahnemann Main Premises and Hahnemann Auxiliary Premises by the purchasers at the above-referenced onsite auctions;

    i.   Removed some of the Auction Assets left unsold following the completion of the above-referenced onsite auctions;

    j.   Conducted offsite auctions and sales of certain items left unsold following the conclusion of above-referenced onsite auctions; and

    k.   Compiled and maintained records of the various sales of the Auction Assets.

16.    As reflected in Centurion's summary report regarding the various sales of the Auction Assets, Centurion received total Net Proceeds of $3,211,156 in exchange for the Auction Assets it was able to sell during the Application Period.  A true and correct copy of Centurion's summary sale report regarding the Auction Assets is attached hereto as **Exhibit A**.

17.    Under the terms of the Centurion Engagement Agreement, as modified by the Centurion Retention Order, and as described above, Centurion is entitled to the following

compensation: (a) $569,900 from the first $2,167,650 of Net Proceeds; *plus* (b) fifteen percent, or $156,526[4], of the remaining $1,043,506 of Net Proceeds, **for a total of $726,426[5]**.

18.     Accordingly, Centurion respectfully requests that the Court approve: (a) total compensation to Centurion of $726,426 of fees and commissions owed to Centurion under the express terms of the Centurion Engagement Agreement, as modified and approved by the Court in the Centurion Retention Order.

## COMPLIANCE WITH RULES AND GUIDELINES

19.     Centurion believes that this Application substantially complies with the Local Rules and the U.S. Trustee guidelines for fee applications. To the extent there has not been material compliance with any guidelines or rules, Centurion respectfully requests a waiver of such guidelines or rules.

## NOTICE

20.     In compliance with the Interim Compensation Order, notice of this Application and any order entered hereon will be provided to: (i) Debtors, Center City Healthcare, LLC, 230 North Broad Street, Philadelphia, PA 19102 (Attn: Allen Wilen, CRO [allen.wilen@americanacademic.com]); (ii) counsel to the Debtors, Saul Ewing Arnstein & Lehr, LLP, 1201 N. Market Street, Suite 2300, P.O. Box 1266, Wilmington, DE 19899-1266  (Attn: Mark Minuti, Esq. [mark.minuti@saul.com] and Monique B. DiSabatino, Esq. [monique.disabatino@saul.com]) and 1500 Market Street, 38th Floor, Philadelphia, PA 19102 (Attn: Jeffrey Hampton, Esq. [jeffrey.hampton@saul.com] and Adam H. Isenberg, Esq. [adam.isenberg@saul.com]); (iii) the Office United States Trustee for the District of Delaware,

---

[4]     This figure was calculated as follows:
   a.     total Net Proceeds ($3,211,156) minus $2,167,650 =  $1,043,506.
   b.     $1,043,506 x 0.15 = $156,526.

[5]     $569,900 + $156,526 = $726,426.

844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin A. Hackman, Esq. [benjamin.a.hackman@usdoj.gov]); (iv) counsel to the Official Committee of Unsecured Creditors, Sills Cummis & Gross P.C., The Legal Center, One Riverfront Plaza, Newark, NJ 07102 (Attn: Andrew H. Sherman, Esq. [asherman@sillcummis.com] and Boris I. Mankovetskiy, Esq. [bmankovetskiy@sillcummis.com]; (v) Fox Rothschild LLP, 919 N. Market Street, Suite 300, Wilmington, DE 19899-2323 (Attn: Thomas M. Horan, Esq. [thoran@foxrothschild.com]); (vi) Counsel for the DIP Agent, Stradley, Ronon, Stevens & Young, LLP, 2005 Market Street, Suite 2600, Philadelphia, PA 19103 (Attn: Gretchen M. Santamour, Esq. [gsantamour@stradley.com]) and 100 N. West Street, Suite 1279, Wilmington, DE 19801 (Attn: Joel E. Polesky, Esq. [jpolesky@stradley.com]); and (vii) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. Given the nature of the relief requested, no further notice should be required.

21.     No prior request for the relief sought by this Application has been made to this or any other court.

## CONCLUSION

22.     Centurion submits that the services provided to the Debtors during the Application Period were necessary and appropriate given the complexity of these Chapter 11 Cases, the issues involved, the nature and extent of services provided, and the cost of comparable services outside of bankruptcy. Accordingly, Centurion submits that approval of the compensation sought for the Application Period is appropriate and should be approved.

WHEREFORE, Centurion respectfully requests that the Court enter an Order, substantially in the form of the Proposed Order attached hereto as **Exhibit B** (i) allowing and authorizing payment of final compensation in the amount of $726,426 to Centurion for services

37070554.4 07/27/2020

rendered as auctioneer on behalf of the Debtors during the Application Period and (ii) granting

such other and further relief as the Court deems just and proper.

Dated: July 27, 2020                              CENTURION SERVICE GROUP, LLC


                                    By: */s/ Erik Tivin*_____
                                        Name: Erik Tivin
                                        Title: Chief Executive Officer

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) |  |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) | Case No. 19-11466 (MFW) |
| *et al.*,[1] | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |
|  | ) |  |

## <u>DECLARATION OF ERIK TIVIN</u>

1.       I am the Chief Executive Officer of Centurion Service Group, LLC ("**Centurion**").

2.       I have read the foregoing application of Centurion for allowance of compensation and reimbursement of expenses and know the contents thereof.  The same are true and correct to the best of my knowledge, information and belief.

3.       There is no agreement or understanding between Centurion and any other person for a division of compensation as Debtors' auctioneer.

4.       No division prohibited by the Bankruptcy Code will be made by Centurion.

5.       No agreement prohibited by Title 18, Section 155 has been made.


*/s/ Erik Tivin*
ERIK TIVIN

---

[1]       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

37070554.4 07/27/2020