IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

_____
                                            :
In re:                                      :     Chapter 11
                                            :
CENTER CITY HEALTHCARE, LLC d/b/a           :
HAHNEMANN UNIVERSITY HOSPITAL, et al.,[1]   :     Case No. 19-11466 (MFW)
                                            :     Jointly Administered
                 Debtors.                   :
                                            :     **Objection Deadline**:
                                            :     August 17, 2020 at 4:00 p.m. (ET)
                                            :     **Hearing Date**:
_____ :     TBD

## REQUEST FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS OF TEMPLE UNIVERSITY HEALTH SYSTEM, INC. AND TEMPLE UNIVERSITY HOSPITAL, INC.

Temple University Health System, Inc. ("Temple Health") and Temple University Hospital, Inc. ("Temple Hospital", and, collectively with Temple Health, "Temple"), by and through its undersigned counsel, respectfully files this request (this "Request") for an order, substantially in the form attached hereto as **Exhibit A**, granting the allowance and payment of Temple Health's administrative priority expense claim in the amount of $506,806.12 and Temple Hospital's administrative priority expense claim in the amount of $14,669.05 pursuant to sections 503(b) and 507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). In support of this Request, Temple respectfully states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

1

## JURISDICTION AND VENUE

1. This Request is a core proceeding under 28 U.S.C. § 157(b)(2) and this Court has jurisdiction over the Request pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## TEMPLE HEALTH CLAIM

2. On October 19, 2007, Temple Health and SCHC Pediatric Associates, L.L.C. (the "SCHC Debtor") entered into that certain Academic Affiliation Agreement with Tenet HealthSystem Philadelphia, Inc., Tenet HealthSystem St. Christopher's Hospital for Children LLC, and the SCHC Debtor (as amended, the "Academic Affiliation Agreement").[2] The Academic Affiliation Agreement provides the Debtors' hospital, St. Christopher's Hospital for Children, will be Temple Health's primary clinical pediatric teaching site, where Temple Health's residents will be trained, in exchange for the residents and other Temple Health employees providing the Debtors' patients with pediatric care. *See* Academic Affiliation Agreement at Background, Article 1. In exchange for this pediatric care, the Debtors agreed to pay the salaries of the Temple Health employees and residents staffed to the hospital. *See id.* at Section 6.05.

3. On July 1, 2019 (the "SCHC Petition Date"), the SCHC Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[2] Due to confidentiality considerations, Temple has not filed a copy of the Academic Affiliation Agreement. While Temple believes the Debtors have a copy of the agreement, Temple will provide the Debtors and other parties with copies upon request and subject to appropriate safeguards.

4.	Temple Health performed under the Academic Affiliation Agreement from the SCHC Petition Date through December 14, 2019.[3]  The SCHC Debtor currently owes $506,806.12 to Temple Health for those post-petition services.[4]  Accordingly, Temple Health asserts an allowable administrative claim in the amount of $506,806.12 (the "Temple Health Administrative Claim").  The invoice reflecting the Temple Health Administrative Claim is attached hereto as **Exhibit B**.[5]

5.	Temple Health asserts that the Temple Health Administrative Claim is entitled to administrative expense status under sections 507(a)(2) and 503(b) of the Bankruptcy Code because it is an actual, necessary cost of preserving the Debtors' estates.[6]

## TEMPLE HOSPITAL CLAIM

6.	On or about August 28, 2015, Temple Hospital and St. Christopher's Healthcare, LLC (the "St. Chris Debtor") entered into the Resident Affiliation Agreement for Non-TUHS Residents at TUH, by and between Tenet Health System St. Christopher's Hospital for Children, LLC and Temple University Hospital, Inc. (the "Neurology Clinical Rotation

---

[3] On January 10, 2020, the Bankruptcy Court entered the *Order Approving Eighteenth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Executory Contracts and Unexpired Leases* (D.I. 1311) (the "Rejection Order"), rejecting the Academic Affiliation Agreement, effective as of December 23, 2019.  The Temple Health Administrative Claim relates to post-petition services provided by Temple Health to the SCHC Debtor *prior* to entry of the Rejection Order and the rejection effective date.

[4] Temple Health filed a proof of claim for a general unsecured claim in the amount of $829,716.58 for prepetition amounts owed to Temple Health under the Academic Affiliation Agreement.

[5] Only the first page of the invoice is attached hereto.  Temple did not file the remaining pages as they disclose the residents' names.  Temple believes that the Debtors have a complete copy of the invoice, but Temple will provide the Debtors and other parties with copies upon request and subject to appropriate safeguards.

[6] If the Temple Health Administrative Claim is not granted administrative expenses status, Temple Health asserts that the Temple Health Administrative Claim should be incorporated as part of its general unsecured claim.

Agreement").[7]  The Neurology Clinical Rotation Agreement relates to administrative, supervisory and teaching activities for the Debtors' neurology residents by Temple Hospital faculty and administrators.  *See* Neurology Clinical Rotation Agreement at recitals.  In exchange for Temple Hospital's services, the St. Chris Debtor is obligated to pay quarterly fees to Temple Health.  *See id.* at Section 2.15.

7. On June 30, 2019 (the "St. Chris Petition Date"), the St. Chris Debtor filed a voluntary petition for relief under the Bankruptcy Code.

8. Temple Hospital performed under the Neurology Clinical Rotation Agreement from the St. Chris Petition Date through December 14, 2019.[8]  The St. Chris Debtor currently owes $14,669.05 to Temple Hospital for those post-petition services.[9]  Accordingly, Temple Hospital asserts an allowable administrative claim in the amount of $14,669.05 (the "Temple Hospital Administrative Claim" and, collectively, with the Temple Health Administrative Claim, the "Administrative Claims").  The invoice reflecting the Temple Hospital Administrative Claim is attached hereto as **Exhibit C**.

---

[7] Due to confidentiality considerations, Temple has not filed a copy of the Neurology Clinical Rotation Agreement.  While Temple believes the Debtors have a copy of the agreement, Temple will provide the Debtors and other parties with copies upon request and subject to appropriate safeguards.

[8] On January 10, 2020, the Bankruptcy Court entered the Rejection Order, rejecting the Neurology Clinical Rotation Agreement, effective as of December 23, 2019.  The Temple Hospital Administrative Claim relates to post-petition services provided by Temple Hospital to the St. Chris Debtor *prior* to entry of the Rejection Order and the rejection effective date.

[9] Temple Hospital filed a proof of claim for a general unsecured claim in the amount of $23,537.34 for prepetition amounts owed to Temple Hospital under the Neurology Clinical Rotation Agreement.

9. Temple Hospital asserts that the Temple Hospital Administrative Claim is entitled to administrative expense status under sections 507(a)(2) and 503(b) of the Bankruptcy Code because it is an actual, necessary cost of preserving the Debtors' estates.[10]

## RELIEF REQUESTED

10. Temple respectfully requests that the Court enter an order for allowance and payment of (i) the Temple Health Administrative Claim in the amount of $506,806.12; and (ii) the Temple Hospital Administrative Claim in the amount of $14,669.05, pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

11. Section 507(a) of the Bankruptcy Code provides that administrative expense claims that are allowed under section 503(b) of the Bankruptcy Code effectively have first priority. *See* 11 U.S.C. § 507(a)(2).[11]

12. Section 503(b)(1)(A) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—(1)(A) the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). The Third Circuit, in interpreting the meaning of section 503(b)(1)(A), in *Pennsylvania Dep't of Envt'l. Res v. Tri-State Clinical Labs, Inc.*, 178 F.3d 685, 689 (3d Cir. 1999), stated, that "for a claim to be given priority as an administrative expense under this provision of the Code, it must be (1) a cost or expense that is (2) actual and necessary to (3) preserving the estate." *Id*. at 689 (internal quotations omitted). In construing the meaning

---

[10] If the Temple Hospital Administrative Claim is not granted administrative expenses status, Temple Hospital asserts that the Temple Hospital Administrative Claim should be incorporated as part of its general unsecured claim.

[11] The other types of claims given first priority under section 507(a)(1) of the Bankruptcy Code are not applicable in these cases as they are based on domestic support obligations and amounts owed to appointed trustees.

of these words, the Third Circuit relied upon the Supreme Court's decision in *Reading Co. v. Brown*, 391 U.S. 471, 483 (1968), wherein the Supreme Court observed that "necessary costs" are those "costs ordinarily incident to operation of a business" but are "not [ ] limited to costs without which rehabilitation would be impossible." *Id.* at 689.

13. Pursuant to the Academic Affiliation Agreement and Neurology Clinical Rotation Agreement, Temple provided post-petition services to the Debtors in the ordinary course of the Debtors' business and to the benefit of the Debtors and their estates. Specifically, the Debtors benefitted from Temple's provision of services under these agreements—with respect to the Academic Affiliation Agreement, the Debtors benefitted from the pediatric care services provided by Temple Health to the Debtors' patients; and with respect to the Neurology Clinical Rotation Agreement, the Debtors benefitted from the neurology services provided by Temple Hospital to the Debtors' neurology residents. These Temple services directly benefitted the Debtors and their estates by Temple's continued provision of pediatric care and resident training while the Debtors were navigating potential sales of both St. Christopher's Hospital for Children and the resident program. Accordingly, Temple's Administrative Claims are actual, necessary costs of preserving the Debtors' estates, and this Court should allow the Administrative Claims as administrative priority expense claims.

## RESERVATION OF RIGHTS

14. Temple reserves all rights with respect to its Administrative Claims, including, but not limited to, the right to amend, update or supplement this Request at any time and in any respect and to file additional proofs of claim. Temple does not waive any claims against the Debtors that may arise in these cases after the day of this Request. To the extent applicable, Temple reserves all rights of setoff and recoupment.

## **NOTICE**

15.  Notice of this Request will be provided to: (i) counsel to the Debtors; and (ii) the Office of the United States Trustee for the District of Delaware.  In light of the relief requested, Temple submits that no further notice is required.

WHEREFORE, Temple respectfully requests that the Court enter an order awarding the allowance and payment of (i) the Temple Health Administrative Claim in the amount of $506,806.12; and (ii) the Temple Hospital Administrative Claim in the amount of $14,669.05, against the Debtors' estates, pursuant to sections 503(b) and 507(a) of the Bankruptcy Code, and providing for other and further relief as the Court deems just and necessary.

Dated: August 3, 2020
      Wilmington, DE

*/s/ Marcy J. McLaughlin Smith*
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Marcy J. McLaughlin Smith (DE 6184)
Hercules Plaza, Suite 510
1313 N. Market Street, P.O. Box 1709
Wilmington, Delaware  19899-1709
Telephone:    (302) 777-6500
Facsimile:     (302) 421-8390
E-mail:           marcy.smith@troutman.com

- and –

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Francis J. Lawall (*pro hac vice*)
Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone:   (215) 981-4000
Facsimile:    (215) 981-4750
E-mail:          Francis.lawall@troutman.com

*Counsel for Temple University Health System, Inc. and Temple University Hospital, Inc.*