## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------- x
                                                          :
In re:                                                    :   Chapter 11
                                                          :
CENTER CITY HEALTHCARE, LLC D/B/A                         :   Case No. 19-11466 (MFW)
HAHNEMANN UNIVERSITY HOSPITAL, et                         :
al.,¹                                                     :   (Jointly Administered)
                                                          :
                 Debtors.                                 :   Hearing Date: Sept. 9, 2020 at 11:30 a.m. (ET)
--------------------------------------------------------- x   Obj. Deadline: Aug. 26, 2020 at 4:00 p.m. (ET)
```

**MOTION OF PHILADELPHIA ACADEMIC HEALTH HOLDINGS,
PHILADELPHIA ACADEMIC RISK RETENTION GROUP, LLC
FRONT STREET HEALTH PROPERTIES, LLC AND
JOEL FREEDMAN ON BEHALF OF HIMSELF AND THE INDEMNITIES
TO DEEM CERTAIN LATE-FILED CLAIMS AS TIMELY FILED**

Philadelphia Academic Health Holdings, LLC ("PAHH"), Philadelphia Academic Risk

Retention Group, LLC ("PARRG"), Front Street Health Properties, LLC ("Front Street"); and Joel

Freedman on behalf of himself and the Indemnities² (collectively, "Freedman," together with

PAHH, PARRG, and Front Street, the "Claimants"), by and through their undersigned counsel,

pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3003(c) and 9006(b)(1),

move this Court to deem forty-eight (48) proofs of claims listed in Exhibit 1 attached hereto

(collectively, the "Late-Filed Claims") as timely-filed, and in support of their Motion (the

"Motion"), state the following:

---

¹ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's
Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC
Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric
Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862),
TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C.
(5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

² "Indemnities" include Joel Freedman as an officer, along with his affiliates, partners, employees, and agents, and
as an officer of any such affiliate.

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory basis for the relief sought in this motion is 11 U.S.C. § 502 and Federal Rules of Bankruptcy Procedure 3002, 3003 and 9006.

## BACKGROUND

4.      On June 30 and July 1, 2019 (collectively, the "Petition Date"), each of the above-captioned Debtors commenced a case (the "Chapter 11 Cases") under chapter 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").  By order entered June 11, 2020 [D.I. 1666], the Court established August 5, 2020 at 5:00 p.m. (ET) (the "Claims Bar Date") as the deadline for all persons or entities to file proofs of claim based on claims against any Debtor that arose prior to the Petition Date.

5.      Suzzanne Uhland has been leading the representation of the Claimants in these Chapter 11 cases since August 2019.  The Claimants are affiliates of the Debtor entities and have a variety of contractual and other relationships with them.  Ms. Uhland led the representation of the Claimants after she left her prior firm and joined Latham & Watkins LLP, other than certain matters retained in whole or in part by her prior firm, O'Melveny & Myers LLP.

6.      For matters that Ms. Uhland was leading on behalf of the Claimants, she planned to file their proofs of claim by the Claims Bar Date deadline of 5:00 p.m. (ET) on August 5, 2020. Given Ms. Uhland's history and understanding of the relationships, she was responsible for reviewing a total of one hundred and twenty-two (122) proofs of claim filed by the Claimant and

2

was the only agent authorized to sign the seventy-nine (79) proofs of claim (the "Proofs of Claim"). The number of proofs of claim was large because most of the proofs of claim had to be filed against each of the Debtors.

7.      On August 4, 2020, Tropical Storm Isaias swept through the New York City region, leaving over a million people without power and prompting the Governor of New York to declare a state of emergency.[3]  The power outage was the second largest power outage in Con Edison history.[4]  Like countless others who have been forced to work from home because of the coronavirus pandemic,[5] on the afternoon of August 4, 2020, Ms. Uhland found herself without power, phone and internet service and unable to file all of the Proofs of Claim in a timely fashion. See the Declaration of Suzanne Uhland, attached hereto as Exhibit 2 (the "Uhland Declaration") at ¶¶4, 11.  However, notwithstanding the impact of the natural disaster, all of the Claimants' Proofs of Claim were filed by 8:33 p.m. (ET) on the Claims Bar Date.  See Uhland Declaration at ¶11.

8.      As further set forth in the Uhland Declaration, as well as the email chain attached hereto as Exhibit 3 (the "Email Notice"), the Claimants' Delaware counsel, Mark D. Collins, contacted Debtors' counsel at 3:09 p.m. (ET) on August 5, 2020, and requested that the Debtors extend the Claims Bar Date for the Claimants by one day due to the interruption of phone and internet service caused by Tropical Storm Isaias.  The Claimants did not receive a response until

---

[3] *NY declares emergency, probes Isaias power outage response*, ASSOCIATED PRESS, Aug. 7, 2020; Mihir Zaveri, *Storm Batters N.Y. Region; More Than 2 Million Without Power*, N.Y. TIMES, Aug. 7, 2020; Michael Gold, *Power Outages Hit Manhattan and Queens as Utilities Face Storm Damage*, N.Y. TIMES, Aug. 7, 2020.

[4] Con Edison Customer Update – August 5, 2020 12:00 PM, https://www.coned.com/en/about-us/media-center/outage-and-restoration-updates (last visited Aug. 8, 2020) ("It is the 2nd largest amount of customer outages in company history.  The record for storm-related outages is 1.1 million caused by Hurricane Sandy in 2012").

[5] Mihir Zaveri and Tracey Tully, *Outages Pile on Misery for 1.4 Million Coping With Pandemic*, N.Y. TIMES, Aug. 7, 2020.

August 7th, but were able to file eighty-eight (88) proofs of claim by the 5:00 p.m. (ET) deadline. <u>See</u> Uhland Declaration at ¶11.  On August 7, 2020, Debtors counsel denied Claimants' request for an extension, stating that "[a]t this time, the Debtors are not at liberty to agree to extend the bar date for anyone."  Exhibit 3.

<b><u>RELIEF SOUGHT AND BASIS THEREFORE</u></b>

9.    The Claimants request the Court to enter an order deeming the Late-Filed Claims as timely filed.

10.    Rule 3003(c) of the Federal Rules of Bankruptcy Procedure sets out the requirements for filing proofs of claim in Chapter 11 Reorganization cases.  Rule 3003(c)(3) provides that the "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."  Rule 9006 of the Federal Rules of Bankruptcy Procedures is the general rule governing computation, enlargement, and reduction of periods of time prescribed under other bankruptcy rules. Fed. R. Bankr. P. 9006.  Specifically Rule 9006(b)(1) empowers a bankruptcy court to permit a late filing if the movant's failure to meet a deadline "was the result of excusable neglect."  The Supreme Court and the Third Circuit Court have both held that Rule 9006 and Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure should be read in conjunction; in other words, a court's ability to extend time because of "excusable neglect" applies to the late filing of proofs of claim.  <u>See Pioneer Inv. Serv. v. Brunswick Assoc.</u>, 507 U.S. 380 (1993); <u>In re Vertientes, Ltd.</u>, 845 F.2d 57 (3d Cir.1988).

11.    The Supreme Court in <u>Pioneer Invest. Servs. v. Brunswick Assoc.</u> explained that "by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted,

4

where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, <u>as well as by intervening circumstances beyond the party's control</u>."  507 U.S. at 388 (emphasis added).

12.    The <u>Pioneer</u> Court held that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  <u>Id</u>. at 395.  The <u>Pioneer</u> test asks courts to consider the following factors to determine whether to exempt a party's late-filed claims: (1) the danger of prejudice to the debtor, (2) the length of the delay, (3) the delay's potential impact on judicial proceedings, (4) the reason for the delay, including whether it was in reasonable control of the movant, and (5) whether the movant acted in good faith.  <u>Id</u>.  All of these factors, discussed in turn, weigh in favor of deeming the Late-Filed Claims as timely filed.

**A.    Deeming The Late-Filed Claims as Timely Filed Will Not Prejudice to the Debtors**

13.    A late-filed claim is prejudicial to the debtors where "it will 'injure or damage the debtor.'"  <u>In re O'Brien Envtl. Energy, Inc.</u>, 188 F.3d 116, 126 (3d Cir. 1999) (quoting <u>In re Papp Int'l, Inc.</u>, 189 B.R. 939, 945 (Bankr. D. Neb. 1995).  This Court considers several factors in determining whether a debtor will be prejudiced by permitting the filing of an untimely claim: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or effect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether the allowance of the claim would impact the debtor actually or legally; and (v) whether allowance of the claim would open the floodgates to future claim.  <u>In re New Century TRS Holdings. Inc.</u>, 465 B.R. 38,

51 (Bankr. D. Del. 2012); citing In re Inacom Corp., No. 00-2426, 2004 WL 2283599 at *4 (D. Del. Oct. 4, 2004).

14.     First, the Debtors cannot assert that they were surprised by the Late-Filed Claims. As discussed above and in the Email Notice, the Claimants gave the Debtors notice that the Late-Filed Claims may be filed late due to the historic power outage caused by Tropical Storm Isaias. See Exhibit 3.  The Debtors cannot argue that they were surprised that the Late-Filed Claims were filed a few hours after the 5:00 p.m. (ET) deadline on the Claims Bar Date.

15.     Second, the claims reconciliation process has not yet commenced and no distributions have been made to any claimants.  Accordingly, deeming the Late-Filed Claims as timely filed could not possibly force the disgorgement of claims already paid out to claimants.

16.     Next, there is no evidence that deeming the Late-Filed Claims as timely filed would have any legal or actual impact on the Debtors at all.  The Debtors have not confirmed a plan or began any distributions to creditors.  Deeming the Late-Filed Claims as timely filed would also not jeopardize the success of the Debtors' reorganization because, as noted above, the Late-Filed Claims were only three and a half hours late.  Indeed, as of the date hereof the Debtors have not filed a chapter 11 plan.  Accordingly, any such chapter 11 plan will take the Late-Filed Claims into account in the first instance.

17.     Finally, there is no actual evidence that deeming the Late-Filed Claims as timely filed would open the floodgates for similar claims because Claimants' situation is unique, stemming from a historic power outage that affected the only authorized agent to review and file the Late-Filed Claim.  See, e.g., In re Majestic Holdco, LLC, No. 09-14142 KG, 2013 WL 653091, at *3 (Bankr. D. Del. Feb. 21, 2013) (finding that the movant's claims "would not open the

6

floodgates and expose the Debtors to other claims" because the movant's "situation is unique, stemming from malfunctioning equipment," but finding prejudice on other grounds).

18.     Accordingly, when examining the above factors, no prejudice to the Debtor can be found to exist.

**B.     The Minimal Delay Could Not Have Had an Impact on Judicial Proceedings**

19.     There is simply no discernable impact on judicial proceedings as a result of the Claimants' brief delay in filing all of their Proofs of Claim.  In examining the length of delay and impact on judicial proceedings, the Court considers the length of the delay in absolute terms.  In re Garden Ridge Corp., 348 B.R. 642, 646 (Bankr. D. Del. 2006).  This Court in In re Garden Ridge Corp. held that a proof of claim filed seven days after the bar date had "minimal impact on judicial proceedings in real terms: the Committee is in the midst of bringing their claims objections (e.g., late filed, amended, and duplicate) and a distribution is not expected for some time." Id.; see also Pioneer, 507 U.S. at 384 (allowing claim filed twenty days after bar date); Chemetron Corp. v. Jones, 72 F.3d 341, 350 (3d Cir. 1995) (finding excusable neglect two years after the debtors' plan was confirmed); In re O'Brien Envtl. Energy, Inc., 188 F.3d at 129-130 (finding two month delay was not unreasonable despite the fact that the filing occurred after the effective date of the plan); In re Inacom Corp., No. 00-2426 (PJW), 2004 WL 2283599, at *6 (D. Del. Oct. 4, 2004) (holding that a delay of nine months after plan confirmation was not significant when the debtor was still litigating disputed claims, and distributions to creditors would be based upon the debtor's progress in resolving claims); In re Crane Rental Co., 334 B.R. 73 (Bankr. D. Ma. 2005) (allowing claim filed thirty days after bar date) compare In re Smidth & Co., 413 B.R. 161, 167 (Bankr. D. Del. 2009) (disallowing the proof of claim that was filed after the plan was confirmed); In re Majestic Holdco, LLC, No. 09-14142 KG, 2013 WL 653091 (Bankr. D. Del. Feb. 21, 2013)

7

(disallowing the proofs of claim when the movant filed its motion for late filed claims more than

eighteen (18) months after the Debtors' plan was confirmed and three weeks before most of the

Debtors' cases were closed).

20.     Likewise here, the Debtors have not commenced the claims review or objection

process and have not begun to make distributions to creditors, and the duration between the Claims

Bar Date and when the Late-Filed Claims were filed is far less than the seven day period in <u>Garden</u>

<u>Ridge Corp.</u>  Therefore, deeming the Late-Filed Claims as timely filed will not have an impact on

the judicial proceedings.

**C.     The Reason for the Delay Was Outside of the Claimants' Control**

21.     The delay, as minimal as it was, was outside of the Claimants' control.  As

explained in the Uhland Declaration, Ms. Uhland was the only authorized agent to sign the Late-

Filed Claims on behalf of the Claimants.  Uhland Declaration at ¶3.  The initial information she

obtained by having an out-of-state relative search the website of the utility provider on August 4,

2020, indicated that the outage would last 2-8 hours.  <u>Id</u>. at ¶5.  But on the morning of August 5,

2020, she was still without electricity, phone service, cellular service, or internet access.  <u>Id</u>.  She

spent almost two hours driving around until she found a safe place to charge her phone and tablet

while practicing social distancing.  <u>Id</u>. at ¶6.  Although the outdoor mall did not have sufficient

signal for her to connect with her laptop, Ms. Uhland's team provided her the documents in a

format that she could open on her tablet.  <u>Id</u>.  Ms. Uhland then found a way to communicate

changes to the documents using her tablet pencil and verbally over the phone.  <u>Id</u>. at ¶7.  Because

this process was so cumbersome, Ms. Uhland and Mr. Collins decided to request an extension

midafternoon as it seemed apparent that all the Proofs of Claim could not be filed on time.  Id. at

¶8; Exhibit 3.

22.     The coronavirus pandemic which has forced millions of people to work from home,

coupled with this historic power outage, created a perfect storm that impeded Ms. Uhland's ability

to sign the Late-Filed Claims and coordinate the filing of such signed claims by the Claims Bar

Date's 5:00 p.m. (ET) deadline.  Importantly, a bankruptcy court can deem late-filed proofs of

claim as timely filed when inclement weather was a factor in the delay.  See, e.g., In re Bicoastal

Corp., 136 B.R. 288, 289-90 (Bankr. M.D. Fla. 1990) (exercising the court's discretion to permit

the proofs of claim to stand as timely filed when the proofs of claim were one day late and the

delay in delivery was a result of hazardous weather conditions that caused lengthy mail delivery

delays).  Despite these conditions, Claimant's counsel was able to file all of the Claimant's Proofs

of Claim within three and a half hours of the Claims Bar Date's 5:00 p.m. (ET) deadline.  This

factor should likewise weigh in favor of Claimants.

**D.     The Movant Has Acted In Good Faith**

23.     As to the fifth and final factor, there is no basis whatsoever to suggest, yet alone

conclude, that the Claimants did not file a timely claim for some improper purpose.  The Claimants

had every intention of filing the Proofs of Claim on time, and immediately contacted the Debtors'

counsel when it appeared that not all Proofs of Claim could be filed by the 5:00 p.m. (ET) deadline.

This Court has found that a claimant has acted in good faith when "[t]he record is void of anything

that suggests [the claimant] did not act in good faith."  In re Garden Ridge Corp., 348 B.R. at 647

see also In re Smidth & Co., 413 B.R. 161, 168 (Bankr. D. Del. 2009) (finding that the claimant

who waited to "assert its rights in the final moments of this bankruptcy case does not constitute

good faith").  Claimants made every effort to file the Proofs of Claim prior to the Claim Bar Date's

9

5:00 p.m. (ET) deadline under the circumstances.  Ms. Uhland, as the only authorized agent of the Late-Filed Claims, took the extraordinary steps to sign and file the Proofs of Claim outside an outdoor mall, following a tropical storm and during a pandemic.  A three and a half hour delay should not result in a denial of the Late-Filed Claims.

24.     Accordingly, the Court should deem the Late-Filed Claims as timely filed pursuant to Fed. R. Bankr. P. 9006.

WHEREFORE, the Claimants respectfully request entry of an order, substantially in the form attached hereto as Exhibit 4, deeming the Late-Filed Claims as timely filed and granting any and all other such relief as the Court deems appropriate.

RLF1 23861254v.2

Dated: August 12, 2020
      Wilmington, Delaware

*/s/ Brendan J. Schlauch*

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Tel:    (302) 651-7700
Email:  collins@rlf.com
          merchant@rlf.com
          schlauch@rlf.com

-and-

Suzzanne Uhland
Robert Malionek
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Tel:    (212) 906-1308
Email:  suzzanne.uhland@lw.com
         robert.malionek@lw.com

*Counsel for Claimants*

11