## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (MFW) |
| | Jointly Administered |
| Debtors. | **Hearing Date: TBD**<br>**Objection Deadline: October 19, 2020 at 4:00 p.m. (ET)** |

### MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING SUPPLEMENTAL RETENTION AND EMPLOYMENT OF CENTURION SERVICE GROUP, LLC, AS AUCTIONEER, (II) WAIVING COMPLIANCE WITH CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2; AND (III) APPROVING SALE AND LIQUIDATION OF ADDITIONAL MEDICAL EQUIPMENT

The above-captioned debtors and debtors-in-possession (the "**Debtors**"), by and through

their undersigned counsel, hereby file this motion (the "**Motion**"), pursuant to sections 327(a),

328(a), 330 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002,

2014(a), 2016, 6004 and 6005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy

Rules**") and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure

for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for

entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed

Order**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), (i) authorizing the

Debtors to employ and retain Centurion Service Group, LLC ("**Centurion**"), on a supplemental

basis, as auctioneer to the Debtors; (ii) waiving compliance with certain requirements of Local

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 216 N. Broad Street, 4th Floor, Philadelphia, PA 19102.

Rule 2016-2; and (iii) approving the sale and liquidation of certain medical equipment (as described further below, the "**Additional Equipment**") free and clear of all liens, claims and encumbrances, through Centurion.   In support of this Motion, the Debtors rely on the *Declaration of Erik Tivin in Support of the Motion of Debtors for Order (I) Authorizing Supplemental Retention and Employment of Centurion Service Group, LLC, as Auctioneer, (II) Waiving Compliance with Certain Requirements of Local Rule 2016-2; and (III) Approving Sale and Liquidation of Certain Medical Equipment*, a copy of which is attached hereto as **Exhibit B** (the "**Centurion Declaration**"), as well as the *Declaration of Allen Wilen in Support of First Day Relief* (the "**First Day Declaration**"), which is incorporated herein by reference.   In further support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      Pursuant to Order entered November 25, 2019 [D.I. 1062] (the "**Prior Retention**"), the Court authorized the Debtors to retain Centurion to sell by auction, free and clear of all liens, claims and encumbrances, certain equipment, furniture and inventory located in the Debtors' Center City, Philadelphia campus.  The basic economic terms of the Prior Retention were as follows: (i) Centurion made a "guaranteed" up-front payment to the Debtors, in advance of the sale, in the amount of $1,597,750 and (ii) all amounts realized from the sale in excess of $2,167,650 were shared by the Debtors and Centurion pursuant to the following formula:  85% (Debtors) and 15% (Centurion).   Centurion duly completed the sale, after which the Court approved Centurion's first and final fee application by Order dated September 4, 2020 [D.I. 1772].

2.      STC OpCo, LLC, the purchaser of St. Christopher's Hospital for Children pursuant to Court Order entered September 27, 2019 [D.I. 795], recently informed the Debtors

37484568.3 10/02/2020

that it is in possession of certain items of medical equipment that belong to the Debtors.  The Debtors were not previously aware of this equipment, which was not included either in the sale of certain assets to STC OpCo, LLC that closed as of December 15, 2019 or the auction sale conducted by Centurion pursuant to the Prior Retention.  A list of this Additional Equipment is attached hereto as **Exhibit C**.

3.      By the within Motion, the Debtors seek authority to retain Centurion on a supplemental basis to sell the Additional Equipment free and clear of all liens, claims and encumbrances, pursuant to the same basic terms and conditions that applied with respect to the Prior Retention – specifically, an 85% (Debtors) / 15% (Centurion) split of the net proceeds of sale, as further described below.

**JURISDICTION**

4.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

37484568.3 10/02/2020

## BACKGROUND

8.      On June 30 and July 1, 2019 (the "**Petition Date**"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

9.      The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.     No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

11.     On July 15, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Center City Healthcare d/b/a Hahnemann University Hospital, *et al*. (the "**Committee**").

12.     As detailed in the First Day Declaration, as of the Petition Date the Debtors' operations primarily consisted of operating two hospitals in Philadelphia, Pennsylvania – Hahnemann University Hospital ("**Hahnemann**") and St. Christopher's Hospital for Children ("**St. Christopher's**").  A primary purpose of the Debtors' bankruptcy cases was the safe closure of Hahnemann and the sale of St. Christopher's to a responsible party.  Both goals have been achieved; Hahnemann was closed in 2019 and St. Christopher's was sold to STC OpCo, LLC (an entity owned by Tower Health and Drexel University) in December 2019.

## THE ADDITIONAL EQUIPMENT

13.     As noted above, the Debtors have recently become aware of the Additional Equipment. As a result of the closure of Hahnemann and the sale of St. Christopher's, the Debtors no longer require the Additional Equipment and believe its sale is in the best interest of the Debtors' estates.

37484568.3 10/02/2020

## RELIEF REQUESTED

14.     Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014, 2016 and 6005, the Debtors seek entry of an Order (i) authorizing the supplemental employment and retention of Centurion as auctioneer to sell the Additional Equipment, pursuant to the terms and conditions of the Auction Engagement Agreement dated as of September 30, 2020, a copy of which is attached hereto as **Exhibit D** and incorporated by reference herein (the "**Centurion Supplemental Engagement Agreement**"); and (ii) granting a waiver of compliance with the information requirements relating to compensation requests set forth in Local Rule 2016-2 to the extent requested herein.

15.     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6005, the Debtors further seek entry of an order approving the sale of the Additional Equipment free and clear of liens, claims, encumbrances and other interests.

## THE RETENTION OF CENTURION

A.     **Centurion's Qualifications**

16.     Centurion is an experienced auctioneer that specializes in medical and hospital equipment.

17.     Centurion is the world's largest medical auction house, with locations in Chicago, Las Vegas, South Florida, and Dallas.

18.     Centurion hosts live and timed auctions, selling over 6,000 pieces of surplus medical equipment every month.

19.     The Debtors believe that Centurion's significant experience in this field makes it well-qualified to perform auctioneer services to facilitate the sale of hospital and medical equipment owned by the Debtors' estates.

B.    **Compensation**

20.    The Debtors seek to employ Centurion to market and sell the Additional Equipment.

21.    The terms of compensation proposed for Centurion are as follows[2], subject to approval of the Court:

(a)    Centurion shall hold the net proceeds from all auction sales (as defined in the Centurion Supplemental Engagement Agreement, the "**Net Proceeds**"), which shall exclude any "Buyer's Premium" (as defined below), in trust, and in a segregated account, until disbursed pursuant to the terms of the Centurion Supplemental Engagement Agreement.  Centurion shall disburse Net Proceeds as follows:

(i)    All Net Proceeds shall be shared eighty-five percent (85%) to the Debtors and fifteen percent (15%) to Centurion.

(b)    Centurion may charge a premium (a "**Buyer's Premium**") of up to eighteen percent (18%) of the amount of the purchase price for a given item of the Additional Equipment sold at the auction sale, to be paid by the purchasers thereof.  Such Buyer's Premium shall accrue exclusively for the benefit of Centurion and shall not be included in the Net Proceeds.

22.    The Debtors require qualified professionals to render auctioneer services.  As noted above, Centurion has substantial expertise as an auctioneer and specializes in hospital and medical equipment.  Accordingly, the Debtors submit that Centurion is well qualified and best suited to perform these services and to assist the Debtors in the Chapter 11 Cases.

C.    **Waiver of Compliance with Requirements Regarding Time Entry Detail**

23.    As set forth above, the Debtors seek to compensate Centurion, as is customary for auctioneers, on a percentage fee basis.  The benefit to the Debtors of Centurion's services could not be measured merely by reference to the number of hours to be expended by Centurion's professionals in the performance of such services.

---

[2]    The summary set forth herein is qualified in its entirety by the terms of the Centurion Supplemental Engagement Agreement, and the terms of the Centurion Supplemental Engagement Agreement shall control in the event of a conflict.

37484568.3 10/02/2020

24. Because of Centurion's expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that Centurion will devote to this engagement, the Debtors request that the Court approve the compensation structure set forth in the Centurion Supplemental Engagement Agreement pursuant to section 328(a) of the Bankruptcy Code and that the Court evaluate the final compensation and reimbursement of expenses in the Chapter 11 Cases for Centurion under the standards of section 328(a) of the Bankruptcy Code, rather than under those of section 330 of the Bankruptcy Code.

25. Centurion will file with the Court a final fee application for allowance of its compensation and reimbursement of its expenses with respect to services rendered in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the applicable guidelines for compensation and reimbursement of expenses established by the United States Trustee (the "**UST Guidelines**"), and any applicable orders of the Court. However, the Debtors are advised by Centurion that it is not the general practice of auctioneers to keep detailed time records similar to those customarily kept by attorneys or to keep time records on a "project category" basis. Furthermore, the proposed compensation structure provides for a calculation of fees payable to Centurion based on the amount of sale proceeds realized.

26. Accordingly, the Debtors and Centurion request that Centurion not be required to file or maintain time records in accordance with Local Rule 2016-2 and the UST Guidelines.

27. Centurion has informed the Debtors that it has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than principals and employees of Centurion, in accordance with section 504 of the Bankruptcy Code.

**D.**     **Indemnification**

28.     The Centurion Supplemental Engagement Agreement  provides that the Debtors will indemnify and hold harmless Centurion and its employees, agents, members and managers (the "**Indemnified Parties**"), from any and all liability or defense costs, including, without limitation, reasonable attorneys' fees, arising out of or relating to any breach of the Centurion Supplemental Engagement Agreement by the Debtors or any intentional, reckless or grossly negligent actions by the Debtors or their employees or agents concerning the Additional Equipment or the Auction Sale (the "**Indemnification Provisions**").

29.     The Indemnification Provisions are standard indemnification terms, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on such terms that are customary for Centurion. The Indemnification Provisions were fully negotiated between the Debtors and Centurion at arms'-length and the Debtors respectfully submit that the Indemnification Provisions are reasonable and in the best interests of the Debtors, their estates, and creditors. Accordingly, as part of this Motion, the Debtors request that this Court approve the Indemnification Provisions.

**E.**     **Centurion's Disinterestedness**

30.     To the best of the Debtors' knowledge, and as disclosed herein and in the Centurion Declaration: (i) Centurion is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent any interest adverse to the Debtors' estates; and (ii) Centurion has no connection to the Debtors, their creditors or related parties, except as may be disclosed in the Centurion Declaration.

37484568.3 10/02/2020

31.     Centurion will review its files against any updated Potential Interested Parties List (as defined in the Centurion Declaration) received from the Debtors from time to time during the pendency of the Chapter 11 Cases pursuant to the procedures described in the Centurion Declaration. If any new relevant facts or relationships are discovered or arise in such review, Centurion will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration where appropriate.

32.     Centurion was not a creditor of the Debtors' bankruptcy estates as of the Petition Date.

### THE COURT SHOULD APPROVE CENTURION'S RETENTION

33.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code].

11 U.S.C. § 327(a).

34.     Section 328(a) of the Bankruptcy Code provides, in relevant part, that:

> The [debtor] . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provide under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

35.     In addition, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

36.     The resources, capabilities, and experience of Centurion as an auctioneer specializing in hospital and medical equipment qualify them to provide auctioneer services for the Debtors in the Chapter 11 Cases.  Centurion has extensive experience and an excellent reputation for providing high quality auctioneer services.

37.     As stated in the Centurion Declaration, Centurion is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors or related parties except as may be disclosed in the Centurion Declaration.  The Debtors also believe that the compensation structure set forth in the Centurion Supplemental Engagement Agreement is reasonable and should be approved by the Court under section 328(a) of the Bankruptcy Code in light of: (a) the nature of services to be provided by Centurion; (b) Centurion's substantial experience; and (c) fee and expense provisions typically utilized by Centurion and other leading auctioneer firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis.

38.     Moreover, as noted above, the Indemnification Provisions are reasonable, as they only arise on account of a breach of the Centurion Supplemental Engagement Agreement by the Debtors, or any intentional, reckless or grossly negligent actions of the Debtors.

39.     For the foregoing reasons, the Debtors submit that the retention of Centurion as auctioneer is warranted and satisfies the requirements of sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## THE COURT SHOULD AUTHORIZE THE DEBTORS TO SELL THE ADDITIONAL EQUIPMENT

40.     Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  In general, a debtor may engage in transactions outside the ordinary course of its business where the transaction represents an exercise of the debtor's sound business judgment. See, e.g., In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business purpose" test).

41.     In determining whether to approve a transaction, the Court should consider the following: (a) whether a sound business justification exists for the transaction; (b) whether accurate and reasonable notice of the transaction was given to interested parties; (c) whether the transaction will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  See, e.g., In re Del. & Hudson Ry. Co., 124 B.R. at 176; In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

42.     Here, a sound business justification exists for the sale of the Additional Equipment on the terms set forth in the Centurion Supplemental Engagement Agreement.  The

Debtors have stopped treating patients and thus no longer need the Additional Equipment to operate their businesses.  The Debtors have thus concluded, in a sound exercise of their business judgment, that the sale of the Additional Equipment in the manner described herein will maximize the value of the Additional Equipment for the benefit of the Debtors' estates and creditors.

43.     Furthermore, accurate and reasonable notice of the sale of the Additional Equipment will be given to interested parties.  Centurion is an experienced auctioneer that specializes in medical equipment of the sort included in the Additional Equipment.  Centurion will market its auctions to a variety of parties that, based on its experience, are likely to be interested in purchasing the Additional Equipment.

44.     Finally, the Debtors and Centurion negotiated the terms of the Centurion Supplemental Engagement Agreement in good faith and at arms'-length, and Centurion will likewise conduct the sale process for the Additional Equipment in a manner that ensures that all transactions are arms'-length and in good faith.

## REQUEST TO SELL THE ASSETS FREE AND CLEAR OF
## LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

45.     The Debtors further submit that it is appropriate that the Additional Equipment be sold free and clear of liens, claims, encumbrances and other interests (collectively, "**Interests**"), pursuant to section 363(f) of the Bankruptcy Code.  Section 363(f) of the Bankruptcy Code provides as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

46.     The Debtors should be authorized to sell the Additional Equipment free and clear of all Interests, with such Interests attaching to the proceeds of sale with the same validity and priority, and subject to the same defenses, that such Interests had against the Additional Equipment.

47.     The Debtors are not aware of any liens on, or other Interests in, any of the Additional Equipment.  To the extent there are any liens on or other Interests in the Additional Equipment, the Debtors believe that they would satisfy at least one of the five conditions of section 363(f), and that any such lien or other Interest would be adequately protected by attachment to the sale proceeds, subject to any claims and defenses that the Debtors may possess with respect thereto.  The Debtors further believe that any such parties holding an Interest on or in the Additional Equipment could be compelled to accept a monetary satisfaction of such Interests, satisfying section 363(f)(5) of the Bankruptcy Code.  As such, the Debtors believe that the Additional Equipment may be sold free and clear of any and all Interests.

## **NOTICE**

48.     The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of

Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; (xii) all parties known to the Debtors who hold any liens or security interests in the Debtors' assets who have filed UCC-1 financing statements against the Debtors or who, to the Debtors' knowledge, have asserted any liens on any of the Debtors' assets; and (xiii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

*[Remainder of page intentionally left blank]*

37484568.3 10/02/2020

**WHEREFORE**, the Debtors respectfully request the entry of an order, substantially in the form of the Proposed Order: (i) authorizing the Debtors to employ and retain Centurion, on a supplemental basis, as auctioneer to the Debtors; (ii) waiving compliance with certain requirements of Local Rule 2016-2; (iii) approving the sale and liquidation of the Additional Equipment free and clear of all liens, claims and encumbrances through Centurion; and (iv) granting such other and further relief as the Court deems warranted.

Dated: October 2, 2020            **SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Mark Minuti*

Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone: (302) 421-6800
Fax: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com

*Counsel for Debtors and Debtors-in-Possession*

37484568.3 10/02/2020