# Exhibit D

# Auction Engagement Agreement

# AUCTION ENGAGEMENT AGREEMENT

This agreement ("**Agreement**") is made on this  30  day of September, 2020 by and between Center City Healthcare, LLC and its affiliated debtors (collectively, "**SELLER**") and Centurion Service Group LLC, an Illinois limited liability corporation ("**CENTURION**").

WITNESSTH:

WHEREAS, SELLER wishes to sell certain items of medical equipment, as listed on Exhibit A hereto (the "**Auction Assets**"), and wishes to appoint CENTURION as its exclusive agent for purposes of conducting a sale of the Auction Assets (the "**Auction Sale**").

NOW, THEREFORE, in mutual consideration of the premises and of the covenants and agreements as heretofore and hereafter set forth, the parties agree as follows:

1. <u>Appointment of Exclusive Agency</u>.  Subject to Bankruptcy Court approval as set forth herein, SELLER hereby agrees to employ CENTURION as its exclusive independent agent for the purpose of selling the Auction Assets and CENTURION hereby accepts such appointment on the terms and conditions hereinafter set forth.  Exhibit A shall not include items presently being leased and it shall be SELLER'S responsibility to ensure CENTURION is made aware of all leased items to ensure no such items are included on Exhibit A.

2. <u>Guarantee and Division of Proceeds of Auction Sale</u>.  The net proceeds from the Auction Sale shall be all proceeds from the Auction Sale excluding (i) amounts collected by CENTURION as and for any applicable sales or use tax, (ii) Centurion's reasonable, documented, out-of-pocket costs of relocating the Auction Assets to a warehouse for purpose of the Auction Sale and (iii) any "Buyer's Premium" (described below) charged by CENTURION (the "**Net Proceeds**").  Centurion shall hold the Net Proceeds in trust, and in a segregated account, until disbursed pursuant to the terms of the Agreement.  Promptly upon SELLER'S written request, Centurion shall provide SELLER with written evidence that Centurion is complying with the foregoing requirement.  The following amounts shall be disbursed by CENTURION within twenty (20) calendar days of the conclusion of the Auction Sale from the Net Proceeds in the following order of priority:

   A. [intentionally omitted].

   B. All Net Proceeds will be split Eighty Five Percent (85%) to the SELLER and Fifteen Percent (15%) to CENTURION.

It is specifically understood and agreed that CENTURION may charge a "**Buyer's Premium**" of up to eighteen percent (18%) of the amount of the purchase price for a given item of the Auction Assets sold at the Auction Sale, to be paid by the purchasers thereof.  Such Buyer's Premium shall accrue exclusively for the benefit of CENTURION and shall not be included in Net Proceeds.

3. <u>CENTURION'S Obligations</u>.  CENTURION agrees that it shall:

    (a)    pending the Auction Sale, store the Auction Assets in a secure warehouse or similar facility, obtain insurance for the Auction Assets, in an amount reasonably acceptable to both SELLER and CENTURION and cause SELLER to be named as loss payee with respect to such insurance;

    (b)    hold the Auction Sale in its usual and customary manner, via live webcast and timed auction and shall determine the manner of advertising the same;

    (c)    advertise the Auction Sale where, in CENTURION'S opinion, customers will be found who are willing to pay the highest prices for the Auction Assets;

    (d)    sell the Auction Assets to purchasers at the Auction Sale for cash;

    (e)    be responsible, at its cost, for the disposal of Auction Assets paid for but not removed by purchasers thereof;

    (f)    [intentionally omitted];

    (g)    hold the Net Proceeds of the sale of the Auction Assets in trust, in a segregated account, pending distribution in accordance with this Agreement;

    (h)    sell the Auction Assets "as is where is" irrespective of condition, wear or damage and without guarantee or warranty of any nature, kind or description; and

    (i)    keep accurate records of the Auction Sale, and provide SELLER a copy of said records, CENTURION will supply SELLER weekly reporting once the sale commences, and no later than twenty (20) calendar days after completion of the Auction Sale.

Notwithstanding anything else herein contained, it is expressly agreed and understood by SELLER that CENTURION is not responsible for, nor obligated to, remove or dispose of, any toxic substances, bio-hazardous, sharp or FDA controlled substances or other pharmaceuticals, or other hazardous garbage, materials, debris, or waste. CENTURION reserves the right of abandonment for unsold assets.

    4.    [intentionally omitted]

    5.    <u>Representations and Warranties of SELLER</u>.  SELLER hereby represents and warrants to CENTURION as follows:

    (a)    SELLER owns and, subject to Bankruptcy Court approval as set forth herein, has all the requisite power and authority to enter into this Agreement and to sell all of the Auction Assets pursuant to the terms hereof, free and clear of any liens, security interests or encumbrances of every kind and nature;

  (b)  To the extent material to this Agreement, SELLER has paid, will pay, or has made provision to pay all taxes (whether arising pursuant to federal, state, city or local taxation statutes, ordinances, or otherwise) which have been or could be levied against it and/or the Auction Assets or which were heretofore or are hereinafter due, or which in the future may be levied against it and/or the Auction Assets, or which will or might affect or prevent, in any manner whatsoever, the sale of the Auction Assets or the vesting of clear title in the purchasers thereof. To the extent material to this Agreement, SELLER has complied with all laws, regulations, and licenses which govern its business and activities.

  (c)  Except to the extent not material to this Agreement, SELLER has received no notice from any government or regulatory agency or other authority that it is in violation of any existing federal, state, or local environmental or other public protection law or regulation pertaining to the Auction Assets, or the obligations being imposed upon CENTURION by this Agreement, and that the same will not violate any such laws or regulations, or any other agreement or contract to which SELLER is a party;

  (d)  SELLER will fully cooperate with the reasonable directions and requests of CENTURION pertaining to the performance of CENTURION'S obligations hereunder, including without limitation the vesting of title to the purchased Auction Assets in the purchasers thereof, and the completion of any additional services to be performed by CENTURION.

  6.  <u>Representations and Warranties of CENTURION</u>. CENTURION hereby represents and warrants to SELLER that it has all requisite power and authority to operate its business as it is now being conducted and has complete and unrestricted power to enter into this Agreement and to perform the acts it is to perform under this Agreement. All necessary action has been taken to authorize the execution and performance of this Agreement by CENTURION.

  7.  <u>Indemnification</u>. SELLER shall indemnify and hold CENTURION and its employees, agents, members and managers (the "**Indemnified Parties**") harmless from any and all liability or defense costs, including, without limitation, reasonable attorneys' fees, arising out of or relating to any breach of this Agreement by SELLER or any intentional, reckless or grossly negligent actions by SELLER or its employees or agents concerning the Auction Assets or Auction Sale.

  8.  <u>Entire Agreement Modification</u>. This Agreement shall not be changed, modified, altered or amended except by written agreement duly executed by all parties.

  9.  <u>Choice of Law</u>. It is the intention of the parties that the laws of the State of Illinois shall govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties. The parties further agree that, in the event of a dispute arising hereunder, they shall submit themselves to the jurisdiction of the United States Bankruptcy Court for the District of Delaware.

10. <u>Cooperation by SELLER</u>.  SELLER shall in all respects cooperate with and further the interests of CENTURION in discharging SELLER'S duties under this Agreement as required by any applicable statute or regulation, and by this Agreement, and shall refrain from all acts that would reasonably tend to interfere with CENTURION in discharging CENTURION'S duties under this Agreement or as required by statute or regulation.

11. <u>Bankruptcy Court Approval</u>.  This Agreement, and CENTURION'S engagement hereunder, shall not be valid unless and until approved by Order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  CENTURION understands and agrees that its fees hereunder may be subject to Bankruptcy Court approval, after application and notice to parties in interest.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the day and year first above written.

| | |
|---|---|
| CENTURION SERVICE GROUP LLC | SELLER |
| By: _____[signature]_____ | By: _____ |
| Its Authorized Agent | Allen Wilen, Chief Restructuring Officer |

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the day and year first above written.

| CENTURION SERVICE GROUP LLC | SELLER |
|---|---|
| By:_____ | By: _/s/ Allen Wilen_____ |
| Its Authorized Agent | Allen Wilen, Chief Restructuring Officer |

## **EXHIBIT A**

[List of Auction Assets]

| Manufacturer | Model | Serial Number |
|---|---|---|
| welch Allyn | C100 surgical Illuminator | 100001466 |
| welch Allyn | Spot Vital Sings | N/A |
| Smiths | H-1200 Level 1 | S10002108 |
| Glidescope | video monitor | An162648 |
| Seca | Scale | 5703192083877 |
| Abiomed | Impella Controller | IC2692 |
| Smiths | H-1200 Level 1 | S10002106 |
| Luxtec | Fiberoptics | 1262390 |
| Aquadex | s100 | 267 |
| welch Allyn | C1100 surgical Illuminator | 100-001-460 |
| Karlstorz | xenon 300 | N/A |
| Conmed | system 7500 | 01fgk025 |
| welch Allyn | Spot Vital Sings | N/A |
| Gomco | G180 | 1015 |
| Ultra Pilse | Encore | A1216537 |
| GE | Ohmeda | HDGR52258 |
| GE | Ohmeda | HDDGR51958 |
| Ohio | Infant Warmer | HCCK01384 |
| Sage | Warmer 7937 | 13365-075 |
| Philips | MP5 | DE53796659 |
| Philips | M1019A | ASFH-0017 |
| Datex Ohmeda | Aestiva/5 | N/A |
| Philips | MX800 | DE12516142 |
| Aquadex | s100 | 212 |
| Fisher & Raykel Healthcare | Warmer | 20924000736 |
| Scope Buddy | ECA-100G | SB681010-17 |
| Mega Power | MegaDyne | 184646001 |
| Datex Ohmeda | Aestiva/5 | N/A (Anesthesia Unit) |
| Philips | M1019A | ASDJ-0062 |
| Philips | MX800 | DE12516143 |
| Belmont | FMS2000 | N/A |

| | | |
|---|---|---|
| BK Medical | Ultrasound Scanner 1202 | 5003632 |
| Ohmeda Medical | ENG Ebase S Humid | HDGN51188 |
| Ohmeda Medical | ENG Ebase S Humid | HDGR52243 |
| Maxi move | KMCLUW | 300L07283 |
| Datex Ohmeda | s/5 Avance | M1019PN6100079 |
| Datex Ohmeda | s/5 Avance | M1019PN6100080 |
| Abiomed | Impella Controller | IC2691 |
| Fujifilm | Sonosite | 03X57Q |
| ERBE | Icc300 E UL | F-1887 |
| Datex Ohmeda | s/5 Avance | M1019PN6120047 |
| EZ lift | 498 | 25336 |
| Olympus | OEV143 | A414033 |
| Leica Microsystems | Leica M530 | 290917441 |
| Ecmo | Stockert s5 | N/A |
| Masimo | Radical 7 quantity 3 | N/A |
| Drager | Ti500-1 | N/A |
| Drager | 03800R | AHF04515 |
| Stryker | 1731 Stretcher | 204043063 |
| Ohmeda Medical | Giraffe Incubator | HDHK51318 |
| GE | Giraffe Incubator | HDGV60204 |
| GE | Giraffe Incubator | HDGV60205 |
| Zeiss | Super-lux 40 | Fw0389 |
| Integra Neuro Science | MPM-1 | MMB076002 |
| Philips | Suresihns VM4 | US91930939 |
| Philips | Suresihns VM4 | US91930936 |
| Philips | Suresihns VM4 | US91930935 |
| Philips | Suresihns VM4 | US91930934 |
| Philips | Suresihns VM4 | US91930937 |
| Philips | Suresihns VM4 | US90307626 |
| Datascope | CS300 | S1210117D5 |
| Accuvein | Av400 | Av13290149 |
| Synergetic INC | Codman | 180386 |
| Masimo | Rad 57 Quantity 7 | Misc |
| welch Allyn | 53000 | N/A |

| | | |
|---|---|---|
| BFW | Maxenon | 30144 |
| ERBE | Icc300 | F-1711 |
| Datascope | Accutorr V | A7502056H9 |
| Scale Tronix | 4802D | 4802-Z2009 |
| Zoll | AED Pluss | X09K427490 |
| GE | Mac 5500HD | SGM12094890PA |
| Edwards Lifescience | Vigilancell | VG003454 |
| Zeiss | Superlux300 | LM90F1151B2675 |
| GE | Giraffe Incubator | 400911 |
| Glidescope | Clidescope | PV112445 |
| Philips | Suresings VMF | VS919390938 |
| Philips | Suresings VMF | VS919390942 |
| Philips | Suresings VMF | VS919390940 |
| Maquet | CS300 | ST234731E6 |