# **EXHIBIT A**

**MBNF 2004 Subpoena**

# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey  07102**
**Tel: (973) 643-7000**
**Fax (973) 643-6500**

101 Park Avenue
28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

**Andrew H. Sherman**
**Member**
**Direct Dial:  973-643-6982**
**Email: asherman@sillscummis.com**

600 College Road East
Princeton, NJ 08540
Tel: (609) 227-4600
Fax: (609) 227-4646

January 2, 2020

VIA ELECTRONIC MAIL

O'Melveny & Meyers, LLP
Times Square Tower
7 Times Square
New York, NY 10036
Attn:   Suzzanne Uhland (suhland@omm.com)
            Daniel S. Shamah (dshamah@omm.com)
            Diana M. Perez (dperez@omm.com)

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Attn:   Mark D. Collins (collins@rlf.com)
            Michael J. Merchant (merchant@rlf.com)
            Brendan J. Schlauch (schlauch@rlf.com)

## Sills Cummis & Gross
### A Professional Corporation

January 2, 2020
Page 2

> Re:     <u>Center City Healthcare LLC d/b/a Hahnemann University Hospital, *et. al.*,</u>[1] Case
>         No. 19-11466 (KG)

Dear Suzzanne and Mark:

This firm represents the Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Center City Healthcare LLC d/b/a Hahnemann University Hospital, *et. al.* (collectively, the "<u>Debtors</u>") in the above-referenced chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware.

The Committee is in the process of conducting an investigation of potential claims and causes of action that may exist against various parties, including Joel Freedman, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Physicians Clinical Network, LLC, Physician Performance Network of Philadelphia, LLC, Philadelphia Academic Risk Retention Group, LLC, and Paladin Healthcare Capital, LLC (collectively, the "<u>MBNF Non-Debtor Entities</u>").

To that end, and consistent with the Committee's rights under rule 2004 of the Federal Rules of Bankruptcy Procedure and rule 2004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware ("<u>Local Rule 2004</u>"), the Committee has prepared a subpoena for production of documents directed at the MBNF Non-Debtor Entities (the "<u>MBNF Subpoena</u>"), attached hereto as <u>Exhibit 1</u>.

The Committee understands that the MBNF Non-Debtor Entities have agreed to voluntarily produce the documents included in the MBNF Subpoena pursuant to Local Rule 2004-1(e), subject to customary objections, such as privilege.  Please confirm this understanding by January 9, 2020.  In connection with a voluntary production, the Committee has agreed to receive the requested documents on a rolling basis.  As such, please also confirm the date by which the MBNF Non-Debtor Entities anticipate making their first production, and the anticipated timeline for any subsequent document productions.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).

**Sills Cummis & Gross**
A Professional Corporation

January 2, 2020
Page 3

If the MBNF Non-Debtor Entities elect not to voluntarily produce the documents, the Committee will file a motion for production under Local Rule 2004 (the "Motion").  Prior to filing the Motion, Local Rule 2004-1(a) requires counsel for the Committee and counsel for the MBNF Non-Debtor Entities confer and attempt to arrange for a mutually agreeable date, time, place and scope of examination or production (the "Rule 2004-1(a) Conference").  As required by Local Rule 2004-1(b), the Motion must include a certification stating "that either (i) a conference was held as required and no agreement was reached or (ii) a conference was not held and an explanation as to why no conference was held."  Local Rule 2004-1(b).  As such, if the MBNF Non-Debtor Entities elect not to voluntarily produce the documents, please let us know by January 9, 2020 your availability the week of January 13, 2020 to conduct the Rule 2004-1(a) Conference in advance of the Committee filing the Motion for production.

For the avoidance of doubt, nothing contained herein or in the MBNF Subpoena shall in any way limit, prejudice, or waive the Committee's rights (i) to amend or modify the MBNF Subpoena or (ii) to make any additional requests in connection with the MBNF Subpoena, including, but not limited to, requests for any depositions, and all such rights of the Committee are expressly reserved and preserved.

Very truly yours,

*/s/ Andrew H. Sherman*

Andrew H. Sherman

**Exhibit 1**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of __Delaware__

In re __Center City Healthcare LLC d/b/a Hahnemann University Hospital, et. al.__          Case No. __19-11466 (KG)__
                                        Debtor

                                                                      Chapter __11__

## SUBPOENA FOR RULE 2004 EXAMINATION

To: __MBNF Non-Debtor Entities (as defined in Exhibit A attached hereto)__

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The examination will be recorded by this method: _____

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Exhibit A.  All documents should be sent to: Sills Cummis & Gross, P.C., Attn: Andrew H. Sherman & Boris I. Mankovetskiy, One Riverfront Plaza, Newark, NJ 07102

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

                    CLERK OF COURT

                                        OR

                    _____          _____
                    *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
__The Official Committee of Unsecured Creditors__  , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____ _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                        _____
                                                    *Server's signature*

                                        _____
                                                   *Printed name and title*

                                        _____
                                                    *Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## Exhibit A

## DEFINITIONS

1.      As used herein, the term "document" or "documents" means any and all documents, tangible things and/or property, of any kind, as described by Federal Rules of Civil Procedure Rule 34(a), and all writings as defined by Federal Rule of Evidence 1001(1), including originals and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and including without limitation communications, electronically stored media (as defined in Paragraph 3), e-mails, inquiries, discussions, conversations, negotiations, agreements, understanding, meetings, conferences, interviews, cards, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, telex, telefax, cables, or other forms of interpersonal disclosure, whether oral or written, however transmitted, minutes, lists, agendas, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, catalogues, questionnaires, surveys, inter office and intra office communications, notations of any sort of conversations, telephone calls, meetings, or other communications, bulletins, invoices, worksheets, graphical or aural records or representations of any kind, including, without limitation, photographs, charts, microfiche, microfilm, punch cards, videotape, records, motion pictures, and electronic, mechanical, or electrical records or representations of any kind, including, without limitation, tapes, cassettes, discs, and tape recordings, voice mail recordings, wire recordings, hard drives, thumb drives, administrative and computer records, back-up recordings and files, computer printouts, computer magnetic tape, computer discs, computer tapes, computer cards, computer programs, computer software, computer readable media, machine sensible media, any other form of stored information, computer data or other computer-stored information, fields of data, data processing records and the written information necessary to understand and use such material. The term "document" or

"documents" shall also include any written, drawn, recorded, transcribed, filed or graphic matter, however produced or reproduced, and all forms of drafts, notations, workings, alterations, modifications, changes, and amendments of any of the foregoing.

2.      As used herein, the term "communication" and "communications" shall mean any and all forms of contact, including, without limitation, inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, conferences, telephone conversations, interviews, cards, letters, emails, notes, correspondence, emails, text messages and other forms of electronic messaging, or other forms of interpersonal discourse, whether oral or written, however transmitted, including reports, notes, memoranda, lists, agendas, and other reports documenting, memorializing, summarizing or relating to such communication. "Communications" also means Electronically Stored Media (as defined in Paragraph 3).

3.      As used herein, the term "Electronically Stored Media" or "ESM" means all electronically stored communications and/or documents, including e-mail messages and files (including both work and personal e-mail accounts), correspondence, drafts of working documents, contracts, agreements, memoranda, reports, personal notes, administrative and computer records, word processing files, spreadsheets, digital or other photographs, video files, instant messages, text messages, voice mail messages and files, backup voice mail files, backup e-mail files, deleted e-mails, data files, program files, temporary files, system history files, web site information stored in textual, graphical or audio format, web site log files, cache files, cookies, and data stored on hard drives, CDs, floppy disks, personal digital assistants (*e.g.* Apple, Samsung, Android, Blackberry, Palm and other "Smart" or PDA devices), thumb drives, servers, backup tapes, and any other electronic media at both your home and/or office, or any and all

other data compilations from which information can be obtained and translated if necessary. This list is not meant to be exhaustive.

4.     As used herein, the term "between" shall mean sent to, received from, or otherwise shared with.

5.     As used herein, the terms "all" and "any" both shall mean and refer to "any" and "all," in the conjunctive and/or disjunctive.

6.     As used herein, the term "person" means any individual, sole proprietorship, partnership, corporation, limited liability company, trust, governmental authority or other entity of any kind or nature.

7.     As used herein, the phrase "possession, custody or control" means in Your physical possession or as to which You have the right to secure or compel the production of the document (or a copy) from another person, affiliate, corporation, partnership or other entity having physical possession thereof, including stockbrokers, investment advisors, investment counselors, financial planners, accountants, attorneys, or other agents or advisors.

8.     As used herein, the terms "relating to" and "relate to" shall mean, without limitation: bearing a subject matter relationship to, concerning, evidencing, embodying, discussing, consisting of, comprising, containing, comparing, evidencing, constituting, setting forth, showing, disclosing, concerning, describing, explaining, evaluating, analyzing, summarizing, pertaining to, reflecting, referring to, touching upon, or having any logical or factual connection with the subject matter of the documents requested by these requests.

9.     As used herein, the term "date" shall mean the exact day, month and year, if ascertainable, or if not, the best approximation, including the temporal relationship to other events.

3

10.     As used herein, the term "Acquisition" means the purchase of the businesses of the Hospitals and certain related assets, including, without limitation, real estate assets, by the Purchasers from the Sellers pursuant to the ASA.

11.     As used herein, the term "Acquisition Financing Documents" means any and all transactions and/or credit applications relating to the financing of the Acquisition, including, but not limited to, (i) the MidCap Credit Facility; (ii) the approximately $51 million loan from an affiliate of Harrison Street Real Estate; and (iii) the $17.5 million loan from Tenet to Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC.  Each document referred to individually as an "Acquisition Finance Document."

12.     As used herein, the term "ASA" means the Asset Sale Agreement, dated as of August 31, 2017, by and among Sellers, Purchasers, and Purchasers Representative.

13.     As used herein, the term "Base Purchase Price" means the aggregate consideration paid by Purchasers to Sellers for the purchase of the assets acquired in the Acquisition in the amount of one hundred seventy million dollars ($170,000,000).

14.     As used herein, the term "Broad Street Entities" means Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC.

15.     As used herein, the term "Chancery Court Litigation" means the litigation captioned *Philadelphia Academic Health Holdings, LLC v. Tenet Business Services Corporation* currently pending in the Chancery Court of Delaware, Case No. 2018-0684-KSJM.

16.     As used herein, the term "Committee" means the Official Committee of Unsecured Creditors in the Debtors' chapter 11 cases.

17.     As used herein, the term "Conifer" means Conifer Revenue Cycle Solutions, LLC.

18.     As used herein, the term "Debtors" means Center City Healthcare, LLC, PAHS, St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, HPS of PA, L.L.C., SCHC Pediatric Associates, L.L.C, St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., TPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., TPS IV of PA, L.L.C., and TPS V of PA, L.L.C.  Each referred to individually as a "Debtor."

19.     As used herein, the term "DUCOM" means Drexel University d/b/a Drexel University College of Medicine

20.     As used herein, the term "First Amendment" means the First Amendment to the ASA, dated as of January 11, 2018, by and among Sellers, Purchasers, and Purchasers Representative.

21.     As used herein, the term "Hospitals" means Center City Healthcare, LLC d/b/a Hahnemann University Hospital and St. Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children.

22.     As used herein, the term "HSRE" means HSRE-PAHH I, LLC.

23.     As used herein, the term "HSRE Non-Debtor Entities" means HSRE, HSRE-PAHH 1A, LLC, HSREP VI Holding, LLC, PAHH New College MOB LLC, PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Feinstein MOB, LLC, PAHH Wood Street Garage, LLC and PAHH Erie Street Garage, LLC.

24.     As used herein, the term "HUH" means Hahnemann University Hospital.

25.     As used herein, the term "Landlords" means the HSRE Non-Debtor Entities.

5

26.     As used herein, the term "Master Leases" means the six leases, each dated as of January 11, 2018, of certain property from the Landlords to St. Christopher's Healthcare, LLC, as identified in the Receivership Action.

27.     As used herein, the term "MBNF Non-Debtor Entities" means Joel Freedman, Paladin, MBNF Investments, LLC, American Academic Health System, LLC, PAHH, the Broad Street Entities, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Physicians Clinical Network, LLC, Physician Performance Network of Philadelphia, LLC, and PARRG.

28.     As used herein, the term "MidCap" means MidCap Funding IV Trust and MidCap Funding H Trust.

29.     As used herein, the term "MidCap Borrowers" means the Debtors, Physicians Clinical Network, LLC and Physician Performance Network of Philadelphia, L.L.C.

30.     As used herein, the term "MidCap Credit Facility" means the Credit and Security Agreement, dated as of January 11, 2018, as amended on September 20, 2018, between MidCap and the MidCap Borrowers and all addendums, schedules, and/or exhibits thereto.

31.     As used herein, the term "MSA" means the Master Services Agreement, dated as of January 11 2018, between PAHS and Conifer and all addendums, schedules, and/or exhibits thereto.

32.     As used herein, the term "Net Working Capital Adjustment" the net working capital adjustment determined in accordance with section 1.1(a)(ii) of the ASA.

33.     As used herein, the term "Non-Debtor Entities" means the HSRE Non-Debtor Entities and the MBNF Non-Debtor Entities.  Each referred to individually as a "Non-Debtor Entity."

6

34.    As used herein, the term "PAHH" means Philadelphia Academic Health Holdings, LLC.

35.    As used herein, the "PAHS" means Philadelphia Academic Health System, LLC.

36.    As used herein, the term "Paladin" means Paladin Healthcare Capital, LLC.

37.    As used herein, the term "PARRG" means Philadelphia Academic Risk Retention Group, LLC.

38.    As used herein, the term "Petition Date" means June 30, 2019 or July 1, 2019, as applicable.

39.    As used herein, the term "Purchasers" means St. Christopher's Healthcare, LLC, St. Christopher's Physician Associates, LLC,[1] Center City Healthcare, LLC, Center City Physician Associates, LLC,[2] Front Street Healthcare Properties, LLC, Broad Street Healthcare Properties, LLC, PAHH New College MOB, LLC, PAHH Feinstein MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Bellet MOB, LLC, PAHH BOBST MOB, LLC,[3] PAHH Wood Street Garage, LLC, PAHH Erie Street Garage, LLC, Philadelphia Academic Medical Associates, LLC, PAHS.

40.    As used herein, the term "Purchasers Representative" means PAHH.

41.    As used herein, the term "Receivership Action" means the receivership litigation captioned *PAHH Broad Street MOB, LLC, et. al. v. Philadelphia Academic Health Holdings, LLC, et. al.* currently pending in the Court of Common Pleas Philadelphia County, Commerce Program, Case No. 4677, Case ID: 190804677, Control No.: 19084137.

---

[1] Now known as Broad Street Healthcare Properties III, LLC
[2] Now known as Broad Street Healthcare Properties II, LLC
[3] Now known as Front Street Healthcare Properties II, LLC

6778677

42.      As used herein, the term "Sellers" means Tenet Healthsystem Hahnemann, LLC, TPS of PA, LLC, TPS II of PA, LLC, TPS III of PA, LLC, TPS IV of PA, LLC, Tenet Healthsystem St. Christopher's Hospital for Children LLC, TPS V of PA, LLC, SCHC Pediatric Anesthesia Associates, LLC, SCHC Pediatric Associates, LLC, StChris Care at Northeast Pediatrics, LLC, St. Christopher's Pediatric Urgent Care Center, LLC, HPS of PA, LLC.

43.      As used herein, the term "Sellers' Representative" means Tenet.

44.      As used herein, the term "SHC" means St. Christopher's Hospital for Children.

45.      As used herein, the term "Superior Court Litigation" means the litigation captioned *Philadelphia Academic Heath Holdings, LLC et al v. Tenet Business Services Corporation* currently pending in the Superior Court of Delaware, Case No. N19C-04-035EMDCCLD.

46.      As used herein, the term "Tenet" means Tenet Business Services Corporation.

47.      As used herein, the term "Tenet IT Platform" means Tenet's information technology platform.

48.      As used herein, the term "TSA" means the Transition Services Agreement, dated as of January 11, 2018, between PAHS and Tenet and all addendums, schedules, and/or exhibits thereto.

49.      As used herein, the term "You" or "Your," unless otherwise specified, refers to the MBNF Non-Debtor Entities or each individual MBNF Non-Debtor Entity, as applicable.

## **INSTRUCTIONS**

1.     The requests contained herein are to be construed liberally, so as to be inclusive rather than exclusive. Particularly, "and" and "or" shall be construed conjunctively rather than disjunctively as necessary, to make the requests inclusive rather than exclusive. As used herein, the singular shall include the plural, and the plural shall include the singular (except as otherwise dictated by the context). As used herein, a masculine, feminine, or neutral pronoun shall not exclude the other genders, all to the end that the interpretation applied results in the more expansive production.

2.     You shall produce all responsive documents and/or communications, in Your possession, custody, or control, meaning in Your physical possession, or as to which You have the right to secure or compel the production of the documents and/or communications (or a copy) from another person, affiliate, corporation, partnership, or other entity having physical possession thereof, including but not limited to partners, joint ventures, proprietorships, business associations, stockbrokers, investment advisors, investment counselors, financial planners, accountants, attorneys, or other agents or advisors.

3.     These requests shall be deemed continuing. Should You subsequently prepare, discover or obtain possession, custody or control of any documents and/or communications responsive to these requests, You shall produce such document and/or communication upon receipt or preparation thereof.

4.     In responding to the requests, furnish all responsive documents and/or communications available at the time of production, including, but not limited to, documents and/or communications in Your possession or the possession of Your attorneys, agents and representatives.

5.     You are requested to produce all documents and/or communications described below in the same order within each file in which they are located prior to production. The file folders, boxes, binders or other containers in which such documents and/or communications are

9

found are also requested to be produced intact, including the title, labels or other descriptions of each such folder, box, binder or container.

      6.     If any documents and/or communications called for by these requests is not produced on the ground that it is privileged or otherwise claimed to be protected against production, You are requested to provide the following information with respect to each such documents and/or communications:

      a.   The date of the documents and/or communications;

      b.   The author(s) and/or the signatory(ies) and the names of those who participated in the formation of the documents and/or communications;

      c.   The type of documents and/or communications it is;

      d.   A description of the document's and/or communication's subject matter and length;

      e.   A list of those persons, entities to whom said documents and/or communications was/were disseminated, together with such persons' and entities' last known addresses;

      f.   The custodian of the documents and/or communications; and

      g.   The nature of the privilege or other rule relied upon in withholding production of each such documents and/or communications.

      7.     Notwithstanding the assertion of any objection to the requests, any objection to documents and/or communications containing non-objectionable matter that is relevant and material to a request must be produced.  That portion of the documents and/or communications for which an objection is asserted may be withheld, provided that the information in paragraph 6 above is furnished.

      8.     The documents and/or communications requested herein for inspection and copying are to be produced in their entirety and without deletions or excisions, regardless of whether You consider the entire documents and/or communications to be relevant or responsive to the request. If You have redacted any portion of a documents and/or communications, stamp

the word "redacted" on each portion of the documents and/or communications which You have redacted. Redactions should be included on the privilege log described in paragraph 6 above.

9.      If any documents and/or communications within the scope of these requests have been destroyed, You shall describe the circumstances of such destruction, and shall produce documents and/or communications relating to such destruction.

10.      ESI Production Format. Please produce ESI and non-ESI in Relativity load file format, *i.e.*, as text searchable image files (*e.g.*, PDF or TIFF), meeting the following requirements: when a text-searchable image file is produced, please preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.  Please produce information in color, single page TIFF images and associated multi-page text files containing extracted text or OCR with Relativity load files containing all requisite information including relevant metadata.  The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files.  For all ESI produced, provide the following metadata to the extent such metadata exists:  Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

11.      Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition except where such words have a specific custom and usage definition in Your trade or industry, in which case they shall be interpreted in accordance with such usual custom and usage definition of which You are aware.

12.      Nothing contained herein shall in any way limit, prejudice, or waive the Committee's rights (i) to amend or modify this document request or (ii) to make any additional requests in connection therewith, including, but not limited to, requests for any depositions, and all such rights of the Committee are expressly reserved and preserved.

6778677

## DOCUMENTS TO BE PRODUCED

1.      Any and all communications and documents relating to the diligence on, negotiation of and/or execution of the ASA.

2.      Any and all communications and documents relating to the diligence on, negotiation of and/or execution of the First Amendment.

3.      Any and all communications and documents relating to the diligence on, negotiation of and/or calculation of the Base Purchase Price, including, without limitation, any and all appraisals and valuation models.

4.      Any and all communications and documents relating to the diligence on, negotiation of and/or calculation of the Net Working Capital Adjustment, including, without limitation, actual performance.

5.      Any and all appraisals of real property and/or personal property that was the subject of the Acquisition.

6.      Any and all communications and/or documents relating to the financing of the Acquisition, including communications and documents relating to the negotiation and execution of the Acquisition Financing Documents and any and all guarantees and security agreements executed in connection therewith.

7.      Any and all communications and/or documents relating to the determination of which Debtors and Non-Debtor Entities would be borrowers and/or guarantors under each Acquisition Financing Document.

8.      Any and all communications and/or documents relating to the determination of which Non-Debtor Entities would provide financing to fund the Acquisition.

12

9.      Any and all communications and/or documents relating to the allocation of assets and liabilities – among the Purchasers and/or any other non-Purchaser entities – that were acquired in the Acquisition.

10.     Any and all communications relating to and/or documents evidencing any encumbrances, including any mortgages, on any property owned by any of the Broad Street Entities, Front Street Healthcare Properties, LLC, Front Street Properties II, LLC and/or PAHH.

11.     Any and all communications and documents relating to the diligence of the accounts receivable and accounts payables purchased in the Acquisition.

12.     Any and all communications and/or documents relating to the MSA.

13.     Any and all communications and/or documents relating to the TSA.

14.     Any and all communications and/or documents relating to the Chancery Court Litigation.

15.     Any and all communications and/or documents relating to the Superior Court Litigation.

16.     Any and all communications and/or documents relating to any claims or causes of action alleged or to be alleged by You against Tenet and/or Conifer not already alleged in the Chancery Court Litigation and/or the Superior Court Litigation.

17.     Any and all communications and/or documents relating to any alleged or actual defaults by any party under the MSA, TSA and/or ASA.

18.     Any and all communications and/or documents relating to the Tenet Information Technology ("IT") Platform, including any diligence conducted in connection with the Tenet IT Platform prior to the Acquisition.

13

19.     Any and all communications and/or documents relating to the Debtors' efforts to transition their IT system from the Tenet IT Platform to any new platform or configuration.

20.     Any and all communications and/or documents relating to the capitalization of the Debtors, PAHH, the Broad Street Entities, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Physicians Clinical Network, LLC, Physician Performance Network of Philadelphia, LLC, and PARRG.

21.     Any and all financial statements (whether audited or unaudited), management advisory comments, and/or audit reports for each of the Debtors prepared at any time prior to the Petition Date.

22.     Any and all financial statements (whether audited or unaudited), management advisory comments, and/or audit reports for PAHH, the Broad Street Entities, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Physicians Clinical Network, LLC, Physician Performance Network of Philadelphia, LLC, and PARRG prepared at any time.

23.     Any and all communications and/or documents relating to HUH's pre-Acquisition financial condition and the diligence thereof, including, without limitation, HUH's revenues, expenses, assets, liabilities, and cash flows, including quality of earnings documents.

24.     Any and all communications and/or documents relating to SCH's pre-Acquisition financial condition and the diligence thereof, including, without limitation, SCH's revenues, expenses, assets, liabilities, and cash flows, including quality of earnings documents.

25.     Any and all communications and/or documents relating to HUH's financial condition between January 11, 2018 and the Petition Date, including, without limitation, HUH's revenues, expenses, assets, liabilities, and cash flows, including quality of earnings documents.

6778677

26.     Any and all communications and/or documents relating to SCH's financial condition between January 11, 2018 and the Petition Date, including, without limitation, SCH's revenues, expenses, assets, liabilities, and cash flows, including quality of earnings documents.

27.     Any and all communications and/or documents relating to the financial condition of PAHH, the Broad Street Entities, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Physicians Clinical Network, LLC, Physician Performance Network of Philadelphia, LLC, and PARRG, including, without limitation, each entity's revenues, expenses, assets, liabilities, and cash flows.

28.     Any and all communications and/or documents relating to each Debtor's financial condition from the date of inception of each Debtor through the Petition Date, including, without limitation, each Debtor's revenues, expenses, assets, liabilities, and cash flows.

29.     Any and all communications and/or documents that consist of and/or relate to board meeting minutes for the Debtors, PAHH, the Broad Street Entities, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Physicians Clinical Network, LLC, Physician Performance Network of Philadelphia, LLC, and PARRG, including any minutes from meetings of committees or subcommittees.

30.     Any and all communications and/or documents relating to structural or operational changes the Purchasers and/or Purchasers Representative considered and/or implemented in connection with HUH, including the estimated and/or actual costs associated with such structural and/or operational changes.

31.     Any and all communications and/or documents relating to the negotiation and execution of the MidCap Credit Facility, as well as any and all guarantees and security

agreements and/or mortgages executed in connection therewith, including the guarantees and security agreements and/or mortgages entered into by the Broad Street Entities.

32. Any and all communications and/or documents relating to the Debtors' relationship with DUCOM, including, but not limited to, (i) the Debtors' pre-petition discussions with DUCOM regarding a potential transactions in which DUCOM would acquire SCH and HUH, (ii) the Master Leases under which St. Christopher's Healthcare, LLC is the master tenant and DUCOM is the subtenant, and (iii) any and all agreements between the Debtors and DUCOM, including, without limitation, any amendments and schedules thereto.

33. Any and all communications and/or documents relating to PAHH's ownership interest in HSRE and any of HSRE's parent and/or subsidiary companies, including HSREP VI Holding, LLC.

34. Any and all communications and/or documents relating to any transactions between Paladin, MBNF Investments, LLC, or American Academic Health System, LLC and HSRE or its affiliates, including HSRE-PAHH IA, LLC, HSREP VI Holding, LLC.

35. Any and all communications and/or documents relating to the Acquisition, the financing of the Acquisition, or any transactions related to the Acquisition between and/or among the MBNF Non-Debtor Entities and the HSRE Non-Debtor Entities.

36. Any and all communications and/or documents relating to the Acquisition, the financing of the Acquisition, or any transactions related to the Acquisition between and/or among the MBNF Non-Debtor Entities and the Debtors.

37. Any and all communications and/or documents relating to the determination of which Debtors and/or Non-Debtor Entities would file petitions for relief under chapter 11 of the Bankruptcy Code.

6778677

38.     Any and all communications and/or documents relating to the Debtors' consideration of and/or filing petitions for relief under chapter 11 of the Bankruptcy Code.

39.     Any and all communications and/or documents relating to any Non-Debtor Entities' consideration of filing petitions for relief under chapter 11 of the Bankruptcy Code.

40.     Any and all organizational and/or formation documents for each Debtor, PAHH, the Broad Street Entities, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Physicians Clinical Network, LLC, Physician Performance Network of Philadelphia, LLC, and PARRG.

41.     Any and all communications and/or documents relating to any and all transactions between and/or among the Debtors and Non-Debtor Entities, including any leases between and/or among the Debtors and Non-Debtor Entities, including the Master Leases and guarantees associated therewith.

42.     Any and all communications and/or documents relating to any alleged or actual defaults by any party under the Master Leases.

43.     Any and all business plans prepared in connection with the Acquisition and all communications and/or documents relating thereto.

44.     Any and all turn-around plans or initiatives prepared post-Acquisition and all communications and/or documents relating thereto.

45.     Any applications (including drafts) submitted to regulatory authorities in connection with the Acquisition, including the transfer of any hospital licenses, and all communications and documents relating thereto.

46.     Any and all communications and/or documents relating to any distributions to holders of equity interests in any of the Debtors, PAHH, the Broad Street Entities, Front Street

17

Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Physicians Clinical

Network, LLC, Physician Performance Network of Philadelphia, LLC, and/or PARRG.

47. Any and all communications and/or documents relating to the allocation of costs

and expenses for employees working at more than one Debtor and/or Non-Debtor Entity.

48. Any and all communications and/or documents relating to the Receivership

Action.

49. Any and all communications and/or documents relating to the diligence,

negotiation and calculation of the payments made to the Landlords under the Master Leases,

including, but not limited to, the Base Rent, Rent Increase, and Supplementary Rent, as such

terms are defined in the Receivership Action.

50. Any and all communications relating to and/or documents evidencing any

guaranty obligations of the MBNF Non-Debtor Entities relating to the Acquisition, the

Acquisition Financing Documents, or any related transaction.

51. Any and all communications and/or documents relating to any post-Petition

transactions between any of the MBNF Non-Debtor Entities and any of the Debtors.

52. Any and all communications and/or documents relating to any post-Petition

transactions between any of the MBNF Non-Debtor Entities and any of the HSRE Non-Debtor

Entities.

53. Any and all communications and/or documents relating to the diligence,

negotiation and/or execution of any professional liability insurance policies for any of the

Debtors' current and/or former employees.

18

54.     Any and all communications and/or documents relating to the purchase, provision, maintenance and/or termination of professional liability insurance for any of the Debtors' current and/or former employees.

55.     Any and all communications and/or documents regarding any quotes with respect to the purchase and provision of professional liability insurance for any of the Debtors' current and/or former employees, including, but not limited to, any quotes for claims-made insurance policies and/or occurrence-based insurance policies.

56.     Any and all communications and/or documents regarding the scope of coverage in connection with the provision of any professional liability insurance for the Debtors' current and/or former employees, including, but not limited to, the decision to purchase claims-made insurance policies and/or occurrence-based insurance policies.

57.     Any and all communications and/or documents regarding any professional liability insurance requirements contained in any employment agreements between the Debtors and any current and/or former employees of the Debtors.

58.     Any and all communications and/or documents relating to the retention of any insurance broker with respect to the provision of professional liability insurance for the Debtors' current and/or former employees.

59.     Any and all communications and/or documents between the Debtors and/or the MBNF Non-Debtor Entities (with the exception of PARRG)  on the one hand, and PARRG on the other hand, regarding the provision of professional liability insurance for any of the Debtors' current and/or former employees.

6778677

60.     Any and all communications and/or documents relating to any transactions between PARRG and the Debtors, including, but not limited to, any insurance policies provided by PARRG to the Debtors.

61.     Any and all insurance policies reviewed and/or purchased by the Debtors and/or MBNF Non-Debtor Entities in connection with the provision of professional liability insurance for any of the Debtors' current and/or former employees.

62.     Any and all communications and/or documents between the MBNF Non-Debtor Entities and/or the Debtors on one hand, and the Sellers and/or Sellers' Representative on the other hand, regarding the acquisition, provision, maintenance and/or termination of any professional liability insurance with respect to any employees of the Sellers.

6778677