# Exhibit D

**(Declaration of John Dinome, Esquire)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*, | ) Jointly Administered |
|  | ) |
| Debtors. | ) |
|  | ) |

**DECLARATION OF JOHN DINOME, ESQUIRE**
**IN SUPPORT OF JOINT MOTION OF THE DEBTORS AND**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**FOR APPROVAL OF CONSENT ORDER REGARDING**
**COMMITTEE DISCOVERY OF DEBTORS AND RELATED RELIEF**

I, John DiNome, Esquire, hereby declare as follows:

1. I am the Chief Human Resources Officer and Assistant General Counsel to the above-referenced debtors (the "Debtors"). I have served in these capacities since June, 2018.

2. I submit this Declaration in support of the Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Approval of Consent Order Regarding Committee Discovery of Debtors and Related Relief Regarding the Application and Waiver of Privileges (the "Joint Motion").

3. My job duties include the development and implementation of system-wide strategic human resources initiatives, labor negotiations, investigations, staff performance evaluations, benefits, training, and all labor and employment related litigation and claims.

4. As part of my duties, I am responsible for enforcing the human resources policies that have been implemented by the debtors and debtors in possession (collectively, the "**Debtors**").

5.      One of the Debtors' human resources policies is HR 4.514, titled Use of Information and Technology Systems (the "**Policy**").  A true and accurate copy of the Policy is attached hereto as **Exhibit A**.

6.      To the best of my knowledge, the Policy was originally promulgated on January 1, 1993.  *Id.* at 1.  Over time, it underwent several revisions by Tenet Business Services Corporation ("Tenet"), the prior owner of the Debtors' assets.  The most recent revision to the Policy was dated August 18, 2009.  *Id.*

7.      After acquiring their assets from Tenet, the Debtors continued to maintain and apply the Policy.

8.      The stated purpose of the Policy was:

> [t]o ensure [the Debtors'] technology and information systems such as voice-mail, e-mail, computers, associated computer networks, software, the Internet and other related technologies are used for business purposes only, to notify employees that they must refrain from personal use of these systems, to advise employees that all information stored in or transmitted through such systems, as well as the equipment itself is company property and to alert all employees of the privacy and confidentiality limitations inherent in the use of such company systems.

*Id*.

9.      The Policy stated that it "governs the use of [the Debtors'] electronic mail (e-mail) and voice mail systems, Internet usage on company systems, computers, computer systems . . . and software resident on any of these systems."  *Id*.

10.     The Policy also warned that any personal communications may be accessed, viewed, read, or retrieved by the Debtors:

> Employees should not expect privacy with regard to [the Debtors'] information systems.  Any communication which is private, confidential or personal should not be placed on [the Debtors'] information systems. Employees should expect that any e-mail or voice mail message that is created, sent or received and that any file in the computer network, in local PCS or on disks located on [the Debtors'] property may be read or listened

to at any time. [The Debtors] expressly reserves the right to intercept, read, review, access and disclose all e-mail messages, to intercept, listen to, review, access and disclose all voice mail messages and to intercept, read, review, access and disclose all computer files, including, but not limited to Internet usage and Web sites that you have accessed. Every time you use or log on to these devices you are consenting to such action.

*Id.* at 3.

11.     The Policy further advised users to "note that it is possible that [the Debtors] could choose to or be compelled to produce e-mail and computer files in litigation." *Id.* Finally, the policy required that employees "[u]tilize the computer and computer networks solely for company business in accordance with this policy." *Id.* at 5.

12.     For a period of time after the Debtors acquired their assets from Tenet, certain Tenet employees who were hired by the Debtors (the "**Legacy Employees**"), continued to use email addresses with a Tenet domain name (i.e. john.doe@tenethealth.com), operating over a server provided to the Debtors (the "**Debtors' Servers**") pursuant to a contract with NTT Data Services, LLC ("**NTT**"). New employees of the Debtors, and eventually the Legacy Employees, were issued email addresses under the domain name "americanacademic.com" (i.e., john.doe@americanacademic.com), operating over the Debtors' Servers.

13.     The domain name "americanacademic.com" was originally chosen based upon the aspirational goals of Mr. Joel Freedman, the ultimate owner of the Debtors, to acquire other distressed healthcare operations outside of Philadelphia through other entities affiliated with Mr. Freedman under the umbrella of the indirect holding entity, American Academic Health System, LLC ("**AAHS**"). But, the Debtors' businesses failed, no other healthcare operations were established or acquired and, to my knowledge, no entities, other than the Debtors, used the "americanacademic.com" domain name.

-3-

14.     The emails sent and received using the Debtors' email system are stored on the Debtors' Servers.

15.     The Debtors, not AAHS, contracted with and paid NTT to manage the email system and Debtors' Servers on behalf of the Debtors.

16.     The Debtors' and NTT's employees have access to emails sent or received using the Debtors' system and/or stored on the Debtors' Servers.

17.     Mr. Freedman and Svetlana Attestatova, who represented some or all of the MBNF Non-Debtor Entities (as such term is defined in the Joint Motion) and who also served as the Debtors' General Counsel, were provided with email accounts by the Debtors for the purpose of conducting business relating to the Debtors and performing their duties for the Debtors.

18.     Like my own email account and the email accounts for all employees of Debtor Philadelphia Academic Health System, LLC, Mr. Freedman and Ms. Attestatova's Debtor-provided email accounts used the "americanacademic.com" domain name.

19.     These email accounts utilized and are stored on the Debtors' email system and the Debtors' Servers.  Accordingly, the Debtors are currently in possession, custody, and control of Mr. Freedman and Ms. Attestatova's emails sent and received using the Debtors' email system and Debtors' Servers.

20.     The Policy applied to Mr. Freedman and Ms. Attestatova's use of the Debtors' email system and servers.

21.     Mr. Freedman and Ms. Attestatova were, at all times relevant to the issues raised in the Joint Motion, aware of the Policy and its application to their use of the Debtors' email system and servers.  In fact, I worked directly with Mr. Freedman and Ms. Attestatova to draft proposed

-4-

-5-

updates and changes to the Policy, but due to other pressing matters, the Policy was never changed or updated.

22.    The Debtors were permitted by the Policy to intercept, read, review, access, and disclose any and all emails sent or received by Mr. Freedman or Ms. Attestatova using the Debtors' email system and the Debtors' Servers.

23.    Mr. Freedman and Ms. Attestatova also maintain different email accounts using a different email system and servers that are owned by the MBNF Non-Debtor Entities.  Those email accounts use a different domain name:  "pldn.com."

24.    The Policy does not apply to those non-Debtor-owned email accounts.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 12, 2020

/s/ John DiNome
John DiNome, Esquire

37730264.3 11/12/2020