# Exhibit A

**(Proposed Order)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Related to Docket No. ____** |
| | ) |

## ORDER APPROVING JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR APPROVAL OF CONSENT ORDER REGARDING COMMITTEE DISCOVERY OF DEBTORS AND RELATED RELIEF REGARDING THE APPLICATION AND WAIVER OF PRIVILEGES

Upon consideration of the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors For Approval of Consent Order Regarding Committee Discovery of Debtors and Related Relief Regarding the Application and Waiver of Privilege*s (the "Motion")[2] and any response thereto, and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this matter being a "core" proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court being satisfied that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

[2]      Capitalized terms not otherwise defined in this Order shall have the meaning set forth in the Motion.

37743232.1

upon review of the Motion and all the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.      The Consent Order attached hereto as **Exhibit 1** (the "Consent Order") is hereby APPROVED in its entirety.

2.      The Debtors shall review documents in their possession for privilege prior to production of documents to the Committee pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1.  The Debtors shall produce to the Committee non-privileged documents responsive to the Discovery Requests, subject to the Consent Order, without first having to provide the MBNF Non-Debtor Entities with an opportunity to review such documents.

3.      To the extent that individuals associated with the MBNF Non-Debtor Entities sent communications over and/or stored on email servers owned and/or controlled by any of the Debtors, and such communications are not subject to a common interest or joint client privilege with one or more of the Debtors, any claim of attorney-client privilege over such communications is deemed to have been waived.

4.      The Debtors may, in their discretion, waive their own privilege and produce to the Committee, pursuant to the Consent Order, any document responsive to the Document Requests, but the Debtors' waiver of such privilege shall be document specific, and shall not operate as a waiver of privilege as it relates to any other document relating to the same subject-matter.

5.      The Debtors may, in their discretion, waive their own privilege and produce to the Committee, pursuant to the Consent Order, any documents responsive to the Documents Requests that are otherwise subject to a joint client or common interest privilege, which joint client or common interest privilege has been waived as a result of the Investigation.  *See Sec Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 213 B. R. 433, 434 (Bankr. S. D. N. Y. 1997).  The Debtors'

waiver of their own privilege as it relates to joint client or common interest privilege documents shall be document specific, and shall not operate as a waiver of privilege as it relates to any other document relating to the same subject-matter.

6.    The Court retains exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

**EXHIBIT 1**

**CONSENT ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC, d/b/a HAHNEMANN UNIVERSITY HOSPITAL *et al.*,[1] | Case No. 19-11466 (MFW) |
| Debtors. | (Jointly Administered) |

### CONSENT ORDER REGARDING PRODUCTION OF DOCUMENTS BY DEBTORS TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS

This matter comes before the Court in connection with those certain document requests, dated on or about June 16, 2020 (the "Document Requests"), served by the Official Committee of Unsecured Creditors (the "Committee") on Center City Healthcare, LLC d/b/a Hahnemann University Hospital and its affiliated debtors and debtors in possession (collectively, the "Debtors," and together with the Committee, the "Parties").

**WHEREAS**, the Committee is in the process of conducting an investigation (the "Investigation") of potential claims and causes of action that may exist against, among other entities and/or individuals, Joel Freedman, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC,

---

[1]       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

Philadelphia Academic Risk Retention Group, LLC, and Paladin Healthcare Capital, LLC (collectively, the "MBNF Non-Debtor Entities"); and

      **WHEREAS**, in connection with the Investigation, and consistent with the Committee's rights under rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Federal Rules") and Rule 2004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Committee served the Document Requests on the Debtors; and

      **WHEREAS**, the Parties have engaged in good faith negotiations regarding the Document Requests and have agreed to the consensual discovery process set forth herein pursuant to Local Rule 2004-1(e); now, therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

      1.    The Debtors shall produce to the Committee (i) all non-privileged electronically stored information ("ESI") containing one or more of the Parties' agreed-upon search terms from the Parties' agreed-upon custodians and responsive to any of the Document Requests and (ii) all non-privileged documents containing one or more of the Parties' agreed-upon search terms and responsive to any of the Document Requests identified through a reasonable search of central network drives and shared electronic drives currently within the possession, custody or control of the Debtors (each a "Document" and collectively, the "Documents").

      2.    The Parties agree that the production of the Documents described in paragraph 1 shall fulfill and satisfy the Debtors' obligation to comply with the Document Requests; *provided, however*, that nothing contained in this paragraph shall prevent the Committee from serving additional document requests or discovery on the Debtors.

2

3.      The production of Documents shall begin on or about [insert date] and shall continue on a rolling basis thereafter.

4.      Within 30 days after the Debtors have completed their production of the documents described in paragraph 1, *supra*, the Debtors shall provide a privilege log (the "Initial Privilege Log") covering a portion of the Documents withheld or redacted on the basis of any asserted privilege.  Within 30 days thereafter (i.e., 60-days from the production of all documents described in paragraph 1), the Debtors shall provide a supplemental privilege log covering any additional Documents, not included in the Initial Privilege Log, withheld or redacted on the basis of any asserted privilege.  The Committee reserves the right to challenge the assertion of privilege with respect to any Documents withheld or redacted on the basis of privilege and, in the event of such challenge, the Parties shall meet and confer regarding the challenged Documents. If the Parties are unable to resolve the challenge, the Parties shall submit the issue to the Court, which may be done on an expedited basis.

5.      To expedite the production of Documents, the Parties have agreed that, in the first instance, all Documents produced by the Debtors shall be subject to Del. Bankr. LR 9018-1(f), treated as confidential, produced only to Committee counsel whose employment was authorized by the Bankruptcy Court, and subject to the following terms (the "Protective Order"):

a.      Documents shall only be accessed by or disclosed to (i) the Court, its officers, and its staff; (ii) any court in which a proceeding related to the Debtors' above-captioned bankruptcy cases is initiated and the officers and staff of such court; (iii) the Committee's attorneys, and their attorneys' staff and supporting vendors; (iv) any professionals other than Committee counsel retained by the Committee in or relating to the Debtors' bankruptcy cases, and any employees of such professionals; (v) any consultants or experts retained by the Committee in or relating to the Debtors' bankruptcy cases; (vi) any authors or recipients of the original Documents; and (vii) any governmental entities to which the Committee is required to disclose such information (subject to the notice provisions in paragraph 5(h), *infra*).

3

b.      Documents shall not be provided, without the Debtors' written consent, to any individual employed by, associated with, or affiliated with any Committee member.

c.      Documents may also be accessed by or disclosed to witnesses or potential witnesses in the Debtors' above-captioned bankruptcy cases and any related proceedings, but only for purposes of testimony or preparation of testimony.

d.      Documents may also be accessed by or disclosed to any other person authorized by court order, or anyone to whom the Parties have agreed in writing.

e.      Any person (excluding those parties listed in (i)-(ii) or (vii) of paragraph 5(a) above) to whom a disclosure of Documents is made by the Committee shall be given a copy of this Protective Order and must agree in writing to be bound by its terms before such disclosure takes place.

f.      Notwithstanding anything to the contrary contained in this Protective Order, the Committee's professionals may describe and generally discuss the subject-matter and content of any Document with any individual employed by, associated with, or affiliated with any Committee member, provided such professionals determine, in their reasonable judgment, that the information disclosed cannot be used by individual Committee members to the material disadvantage of the Debtors or any other person or entity.

g.      If the Committee's professionals believe that any Document produced should not be subject to this Protective Order, the Committee's professionals shall notify the Debtors in writing of their position, identifying the specific Document(s) at issue.  The Parties shall meet and confer in good faith to determine whether or not any specific Document shall not be subject to the Protective Order.  If the Parties are unable to agree on whether or not a Document should be subject to the Protective Order, the Parties shall submit the issue to the Court, which may be done on an expedited basis.

h.      Nothing in this Protective Order shall prevent the Committee from complying with any subpoena seeking to compel the production of such Documents after complying with the following procedure: if the Committee is served with a subpoena seeking to compel production of Documents, the Committee shall promptly forward a copy of such subpoena to the Debtors at least fourteen (14) days before the production date (or as soon as practicable after being served with the subpoena if the subpoena provides less than fourteen (14) days' notice) and promptly notify the party who served the subpoena that some or all of the material is subject to this Protective Order.  The Debtors may, at their own cost, contest the subpoena or seek a protective order in the subject proceeding.  If the Debtors do not contest the subpoena or seek a protective order in the subject proceeding, or if such opposition or request is unsuccessful, the Committee may produce any Documents it is ordered or otherwise legally required to produce.

i.      If the Committee wishes to attach or quote any Documents in any court filing (including, without limitation, any pleadings, affidavits, briefs, memoranda, appendices, deposition transcripts, filings related to discovery, or filings made under paragraph 5(g) of this Protective Order), to the extent practicable, the Committee must first seek the Debtors' approval that such Documents may be filed without being under seal. If the Debtors do not consent, or seeking consent is not practicable, the Committee must (i) obtain an order from the Court pursuant to paragraph 5(g) of this Protective Order that the Documents sought to be filed are not entitled to protection under this Protective Order or (ii) seek to file such Documents under seal, which the Committee may do on an expedited basis.  In the event that a motion to file under seal is denied, the Committee may file the Documents with the applicable court unsealed.

j.      This Protective Order shall not apply to any Documents obtained by the Committee from parties other than the Debtors.

k.      Even after the date on which the bankruptcy cases are closed and the Court has entered a final decree (the "Case Closure Date"), the confidentiality obligations imposed by this Protective Order shall remain in effect.  Within sixty (60) days after the Case Closure Date, the Debtors may request that all Documents be returned to the Debtors or destroyed, as instructed by the Debtors (a "Return Request").  The Committee shall have sixty (60) days after receipt of a Return Request to comply with such request and shall notify the Debtors when the material has been destroyed or returned in compliance with this provision.

l.      If the Committee determines that it has inadvertently disclosed material produced pursuant to this Protective Order to any person or in any circumstance not authorized under this Protective Order, the Committee must (a) notify the Debtors in writing of the unauthorized disclosure; (b) use its best efforts to retrieve the material; (c) inform the person to whom the unauthorized disclosures were made of all of the terms of this Protective Order; and (d) request that such person abide by the conditions of this Protective Order.

6.      All Documents produced by the Debtors are to be used only in connection with the above-captioned bankruptcy cases and any related proceedings (including any related adversary proceedings), including any appeals therefrom, unless otherwise agreed to by the Parties or ordered by the Court.

7.      Nothing contained herein shall be construed as a waiver (i) by the Debtors of their attorney-client privilege, joint-defense privilege, common interest privilege, work product

protection and/or any other applicable privilege, protection, right or immunity or (ii) of the Committee's right to object to any assertions by the Debtors of their attorney-client privilege, joint-defense privilege, common interest privilege, work product protection and/or any other applicable privilege, protection, right or immunity.

8.      Nothing contained herein shall be construed as a waiver (i) by the MBNF Non-Debtor Entities of their attorney-client privilege, joint-defense privilege, common interest privilege, work product protection and/or any other applicable privilege, protection, right or immunity or (ii) of the Committee's right to object to any assertions by the MBNF Non-Debtor Entities of their attorney-client privilege, joint-defense privilege, common interest privilege, work product protection and/or any other applicable privilege, protection, right or immunity.

9.      Pursuant to Federal Rule of Evidence 502(d), the inadvertent or unintentional disclosure of any Documents (the "Debtor Privileged Material") protected by the Debtors' attorney-client privilege or the Debtors' work product protection (collectively, the "Debtors' Privilege Rights") shall not be construed to be a waiver, in whole or in part, of the Debtors' claim to the Debtors' Privilege Rights over any specific Debtor Privileged Material or in general; nor shall any discreet waiver of privilege constitute a general waiver of the Debtors' Privilege Rights.

10.      To the extent applicable to the Debtors' production of Documents, pursuant to Federal Rule of Evidence 502(d), the inadvertent or unintentional disclosure of any Privileged Material (the "MBNF Non-Debtor Entity Privileged Material") protected by the MBNF Non-Debtor Entities' attorney-client privilege or the MBNF Non-Debtor Entities' work product protection (collectively, the "MBNF Non-Debtor Entities' Privilege Rights") shall not be construed to be a waiver, in whole or in part, of the MBNF Non-Debtor Entities' claim to the

6

MBNF Non-Debtor Entities' Privilege Rights over any specific MBNF Non-Debtor Entity Privileged Material or in general; nor shall any discreet waiver of privilege constitute a general waiver of the MBNF Non-Debtor Entities' Privilege Rights.

11.     If the Debtors determine that they inadvertently produced Debtor Privileged Material, the Debtors shall notify the Committee that such Debtor Privileged Material was inadvertently produced and should have been withheld as privileged pursuant to the Debtors' Privilege Rights.  Once the Debtors provide such notice to the Committee, the Committee shall: (i) promptly return the specified Debtor Privileged Material and any copies thereof; (ii) to the extent practicable, retrieve the specified Debtor Privileged Material and any copies thereof from any third parties to which the Committee has disclosed the specified Debtor Privileged Material; (iii) destroy any notes, other documents, or ESI the Committee has created that reflect the contents of the specified Debtor Privileged Material; (iv) instruct any third parties to which the Committee has disclosed the specified Debtor Privileged Material to destroy any notes, other documents, or ESI that such third parties have created that reflect the contents of the specified Debtor Privileged Material; and (v) refrain from disclosing the substance of such Debtor Privileged Material to any third party.  By complying with these obligations, the Committee does not waive any right to challenge the assertion of privilege and to request an order of the Court denying such privilege and compelling production of such Debtor Privileged Material.  In the event of a challenge by the Committee to the assertion of privilege with respect to such inadvertently produced materials, the Parties shall meet and confer regarding the inadvertently produced materials.  If the Parties are unable to resolve the challenge, the issue shall be submitted to the Court, which may be done on an expedited basis.

12.      To the extent applicable to the Debtors' production of Documents, if the MBNF Non-Debtor Entities determine that the Debtors inadvertently produced MBNF Non-Debtor Entity Privileged Material, the MBNF Non-Debtor Entities shall promptly seek a determination, from the Court or, if applicable, any mediator or appointed discovery master, of whether such specified MBNF Non-Debtor Entity Privileged Material should have been produced.  If and to the extent the Court or, if applicable, any mediator or appointed discovery master determines that specified MBNF Non-Debtor Entity Privileged Material should not have been produced ("Inadvertently Produced MBNF Non-Debtor Privileged Material"), the Committee shall: (i) promptly return the specified Inadvertently Produced MBNF Non-Debtor Entity Privileged Material and any copies thereof; (ii) to the extent practicable, retrieve the specified Inadvertently Produced MBNF Non-Debtor Entity Privileged Material and any copies thereof from any third parties to which the Committee has disclosed the specified Inadvertently Produced MBNF Non-Debtor Entity Privileged Material; (iii) destroy any notes, other documents, or ESI the Committee has created that reflect the contents of the specified Inadvertently Produced MBNF Non-Debtor Entity Privileged Material; (iv) instruct any third parties to which the Committee has disclosed the specified Inadvertently Produced MBNF Non-Debtor Entity Privileged Material to destroy any notes, other documents, or ESI that such third parties have created that reflect the contents of the specified Inadvertently Produced MBNF Non-Debtor Entity Privileged Material; and (v) refrain from disclosing the substance of such Inadvertently Produced MBNF Non-Debtor Entity Privileged Material to any third party.  The Debtors and Committee shall retain the right to challenge any assertion that MBNF Non-Debtor Entity Privileged Material has been inadvertently produced to the Committee.  The Parties and the MBNF Non-Debtor Entities shall

meet and confer regarding any assertion by the MBNF Non-Debtor Entities that the Committee has inadvertently provided with MBNF Non-Debtor Entity Privileged Material.

13.     The Parties agree that nothing contained in this Order shall be construed as constituting a waiver, release, or relinquishment of (i) any of the Debtors' rights, including but not limited to their right to raise any and all objections to the Document Requests and/or seek any relief from the Court or (ii) any of the Committee's rights, including, but not limited to, the right to respond to any objections by the Debtors to the Document Requests, and/or seek any relief from the Court.  The Debtors do not waive any right to object on any ground to use, in evidence, of any of the material covered by this Order, and their compliance with the terms of this Order shall not operate as an admission that any particular material is or is not confidential, privileged, or admissible as evidence at trial.  The Committee does not waive any right to (a) respond to any objection by the Debtors regarding the use, in evidence, of any of the material covered by this Order or (b) object to any assertion by the Debtors that any particular material is or is not confidential, privileged, or admissible as evidence at trial.

14.     The Debtors are authorized to serve notice of this Order on each counterparty (each a "Counterparty") to a Document that the Debtors believe contains a confidentiality provision and/or may be subject to a joint-defense privilege, common interest privilege or similar privilege  (each a "Counterparty Document") that would otherwise prevent the Debtors from producing such Counterparty Document to the Committee pursuant to the terms of this Order. Such notice shall describe each Counterparty Document to be produced, and attach a copy of the Discovery Requests and this Order.  To the extent a Counterparty disputes the Debtors' ability to produce a Counterparty Document to the Committee, such Counterparty must file an objection with the Court within the longer of (a) 14 days of receipt of such notice or (b) the time period

9

required by the Debtors' agreement with the Counterparty.  If no objection is timely filed, the Debtors shall produce the Counterparty Document to the Committee pursuant to the terms of this Order.  The Committee and the Debtors shall treat Counterparty Documents as Documents pursuant to the Protective Order, except that the rights of the Debtors in the Protective Order will also extend to the Counterparty.

15.    Upon the completion of production and the Committee's review of the Documents, the Committee and the Debtors shall endeavor to engage the MBNF Non-Debtor Entities and discuss a consensual resolution of any potential claims and causes of action that may be asserted against the MBNF Non-Debtor Entities, including those on behalf of the Debtors' estates; *provided, however*, that nothing contained herein shall in any way be deemed to delay or prevent the commencement of any litigation in connection with any such claims or causes of action.

16.    The Debtors shall comply with their legal obligations to preserve documents, correspondence, and records within their possession, custody or control relevant to the subject matter of the Document Requests, the Debtors' bankruptcy filings, any transactions between the MBNF Non-Debtor Entities and any of the Debtors, and the Debtors' transactions with third parties (collectively, the "Relevant Data").  To the extent that in the course of complying with the Documents Requests any such Relevant Data is destroyed, deleted, altered or otherwise modified, the Debtors shall promptly notify the Committee and provide a detailed list of such items and an explanation as to why they have been destroyed, altered or otherwise modified.

17.    The Debtors shall comply with their legal obligations to preserve all Relevant Data within their possession, custody, or control until further notice from the Committee.  Any and all existing document retention policies providing for any periodic destruction or deletion of

documents or records that may be in effect must be disabled or overwritten. Any cloud services or vendors hosting the Relevant Data must also be notified that all data must be preserved. In identifying and preserving electronic data, "electronic data" includes, but is not limited to, all text files (including word processing documents and presentations), spreadsheets, email, calendars, and metadata. Nothing contained herein shall be construed as imposing an obligation on the Debtors to preserve Relevant Data currently in the custody or under the control of any entity, organization, company, or person, not under the control of the Debtors.

18.    This Court shall retain jurisdiction over any and all matters arising from or related to the implementation of this Order.

19.    This Order is effective immediately upon entry.

Agreed to and Approved for entry by:

*/s/ Seth A. Niederman*
Seth A. Niederman (DE Bar No. 4588)
919 N. Market Street, Suite 300
Wilmington, DE 19899
Telephone: (302) 654-7444
Facsimile: (302) 295-2013
Email: sniederman@foxrothschild.com

Andrew H. Sherman
Boris I. Mankovetskiy
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ 07102
Telephone:  973-643-7000
Facsimile:  973-643-6500
Email: asherman@sillscummis.com
          bmankovetskiy@sillscummis.com

*Counsel for the Official Committee*
*of Unsecured Creditors*

11

- and –


**SAUL EWING ARNSTEIN & LEHR LLP**

*/s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone: (302) 421-6800
Facsimile: (302) 421-5873
Email: mark.minuti@saul.com
        monique.disabatino@saul.com

        -and-

Jeffrey C. Hampton
Adam H. Isenberg
Amy S. Kline
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Facsimile: (215) 972-7725
Email: jeffrey.hampton@saul.com
        adam.isenberg@saul.com
        amy.kline@saul.com

*Counsel for Debtors and Debtors in Possession*

37735800.2 11/12/2020