## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| | ) Case No. 19-11466 (MFW) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) (Jointly Administered) |
| *et al.*,[1] | ) |
| | ) Re: D.I. No. 1873 |
| | ) |
| Debtors. | ) |

---

**RESPONSE OF McKESSON CORPORATION AND ITS AFFILIATES TO DEBTORS'
FIRST OMNIBUS OBJECTION TO CLAIMS (NON-SUBSTANTIVE) PURSUANT TO
SECTIONS 502(b) AND 503 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES
3001, 3003, AND 3007 AND LOCAL RULE 3007-1**

McKesson Corporation, on behalf of itself and its corporate affiliates McKesson Plasma &

Biologics ("Plasma") and McKesson Medical-Surgical Inc. ("MMS," collectively with Plasma and

McKesson Corporation, "McKesson"), by and through its undersigned counsel of record, hereby

responds to the Debtors' First Omnibus Objection to Claims (Non-Substantive) Pursuant to

Sections 502(b) and 503 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007 and

Local Rule 3007-1 [Dkt. 1873] (the "Objection"), to McKesson's proofs of claim[2] and, along with

the concurrently-filed Declaration of John Crumrine (the "Crumrine Decl."), represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number are:
Center City Healthcare, LLC (3341) ("Center City"), Philadelphia Academic Health System, LLC (8681), St.
Christopher's Healthcare, LLC (8395) ("St. Christopher"), Philadelphia Academic Medical Associates, LLC (8165),
HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center,
L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. 2326, StChris Care at Northeast Pediatrics, L.L.C.
(4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C.
(5537) and TPS V of PA, L.L.C. (5540) (collectively, the "Debtors"). The Debtors' mailing address is 216 North
Broad Street Floor, Philadelphia Pennsylvania, 19102.

[2] McKesson filed identical proofs of claim against each of the Debtors as follows: Claim No. 138 against Philadelphia
Academic Health Systems, LLC; Claim No. 21 against Philadelphia Academic Medical Associates, LLC; Claim No.
15 against HPS of PA, LLC; Claim No. 57 against SCHC Pediatric Associates, LLC; Claim No. 22 against St.
Christopher's Pediatric Urgent Care Center, LLC; Claim No. 14 against SCHC Pediatric Anesthesia Associates, LLC;

**INTRODUCTION**

The Debtors seek to (i) modify the 12 of 14 of McKesson's Claims[3] to designate Center City as the liable Debtor and (ii) disallow 12 of the 14 of McKesson's Claims as duplicative after modification.   As to McKesson's Claims, the Objection is unfounded.   First, based on the information currently available to McKesson, it properly asserted its Claims against each of the Debtors and the Claims cannot be modified without prejudicing McKesson's rights.   Pursuant to McKesson's various credit applications with the Debtors, McKesson's Claims are asserted against those Debtors involved in the purchasing of "Goods" severally *and* jointly and severally.   Due to the Debtors' corporate structure and their apparent joint use of a central pharmacy and centralized purchasing, at this time and without the benefit of any discovery, McKesson is unable to ascertain which of the Debtors actually purchased, used and were paid (by third party payors) for the various pharmaceutical products and medical-surgical goods purchased from McKesson.   Second, as there is not yet substantive consolidation of any of the Debtors' estates, under the law and the facts, McKesson is entitled to hold its claims against each Debtor that either executed the credit applications or used the goods sold by McKesson.   Supreme Court precedent requires corporate separateness and allows a creditor holding an allowable claim under applicable law against multiple debtors to assert that claim against each debtor and each estate.   Accordingly, the Objection must be overruled as to McKesson's Claims.

---

Claim No. 18 against StChris Care at Northeast Pediatrics, LLC; Claim No. 15 against StChris Care at TPS of PA, LLC; Claim No. 54 against StChris Care at TPS II of PA, LLC; Claim No. 19 against StChris Care at TPS III of PA, LLC; Claim No. 31 against StChris Care at TPS V of PA, LLC; Claim No. 18 against StChris Care at TPS V of PA, LLC; Claim No. 564 against St. Christopher; and Claim No. 918 against Center City (collectively, the "Claims").

[3] The Objection seeks to modify and disallow McKesson's Claims against 12 of the 14 Debtors except for Claim No. Claim No. 564 against St. Christopher and Claim No. 918 against Center City (the "Objected Claims").

**BACKGROUND**[4]

On June 30, 2019 (the "Petition Date") the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the District of Delaware Bankruptcy Court (the "Bankruptcy Court"). On July 2, 2019, the Bankruptcy Court signed an order granting Joint Administration [Dkt. 70] under the lead Debtor Center City's case no. 19-11466 (KG).

Prior to filing for bankruptcy, the Debtors operated through two major hospitals in Philadelphia, PA—St. Christopher's Hospital for Children and Hahnemann University Hospital (the "Hospitals")—as well as several affiliated physician practice groups, each of which are directly or indirectly owned by Philadelphia Academic Health System, LLC. [Dkt. 2, ¶ 7].

McKesson is one of the largest providers of pharmaceutical goods in the United States. Plasma is one of the largest providers of plasma-derived products, biologics, and specialty drug distribution in the United States. MMS is one of the largest distributors of medical-surgical products in the United States. Plasma and MMS are corporate subsidiaries of McKesson.

On or about July 5, 2018, Center City submitted a Credit Application to McKesson (the "Center City Application"). On or about July 23, 2018, St. Christopher submitted a Credit Application to McKesson (the "St. Christopher Application"). On or about June 20, 2012, St. Christopher submitted a Customer Application to MMS (the "MMS Application," collectively with the Center City Application and the St. Christopher Application, the "Credit Applications"). A true and correct copy of the Credit Applications are attached to the Crumrine Declaration as Exhibit A.

Pursuant to the Credit Applications, the Debtors purchased pharmaceutical goods and medical-surgical goods and lab equipment (the "Goods") on credit from McKesson. Each of the Credit Applications provides, *inter alia*, the following:

> Customer agrees to pay for all purchases, fees and other charges incurred by Customer *or an authorized user on any account of Customer*, including service charges on past due amounts at the

---

[4] The following facts are taken from the "first day" pleadings and declaration filed by the Debtors.

highest rate permitted by law (including purchases shipped and/or
billed to a third party agent on behalf of Customer). . . .

As to regulated pharmaceutical products, Federal and Pennsylvania law and regulations requires pharmaceutical products be delivered to licensed pharmacies, which then can distribute those pharmaceutical products to either administering physicians and other healthcare professionals, or directly to the end-user patient. With respect to the Debtors, McKesson delivered the pharmaceutical Goods to the Hospitals' on-site pharmacies.

On June 11, 2020, the Court entered the *Order (I) Establishing Deadlines for Filing Proofs of Claim, Including 503(b)(9) Claims, and (II) Approving the Form and Manner of Notice Thereof* (the "Bar Date Order") [Dkt. 1666], which established the bar date for filing proofs of claim as August 5, 2020 at 5:00 p.m. (Eastern Standard Time) (the "Bar Date"). In accordance with the Bar Date Order, McKesson timely filed its Claims in each of the Debtors' cases prior to the Bar Date. The aggregate amount of each of the unsecured Claims is $145,946.15. In addition, the Claims also assert a $1,114.87 administrative claim pursuant to 11 U.S.C. § 503(b)(9) for certain Goods delivered to the Debtors during the 20 days immediately preceding the Petition.

The Attachment to the Claims details the components of the Claims. Quoting the Claims:

> 6. Plasma Claim. As of the Petition Date, Debtor St. Christopher owes Plasma $8,909.36 for pharmaceutical goods purchased and delivered. As of the Petition Date, Debtor Center City owes Plasma $118,674.38 for pharmaceutical goods purchased and delivered. The total claim owed to Plasma is $127,583.74 (the "Plasma Claim"). …
>
> * * *
>
> 8. MMS Claim. As of the Petition Date, St. Christopher's Hospital for Children owes MMS $18,362.41 for medical-surgical goods and lab equipment purchased by and delivered to St. Christopher's Hospital for Children (the "MMS Claim"®).

4

As shown by the invoices, the only pharmaceutical Goods sold by McKesson to the Debtors and are the basis of the Plasma Claim was Nulojix®.[5]  *See* Crumrine Decl., Ex. B.  Nulojix® is a physician-administered immunosuppressant drug used to help prevent organ rejection in patients who have received kidney transplants.  While Nulojix® was delivered to the pharmacies located within Hahnemann University and St. Christopher's hospitals, by necessity, it was administered by physicians or other healthcare professionals.  At this point, and without the benefit of discovery, McKesson is uncertain which of the Debtors ordered or caused Nulojix® to be ordered and then caused its medical professionals to administer this drug and then were reimbursed for this pharmaceutical Good.

Similarly, pursuant to the MMS Invoices,[6] MMS delivered medical-surgical goods and lab equipment to primarily St. Christopher.  *See* Crumrine Decl., Ex. C.  At this point, and without the benefit of discovery, McKesson is uncertain which of the Debtors ordered or caused the medical-surgical goods to be ordered, used those Goods, and then in some instances were reimbursed for these Goods.

Thus, as set forth in the Attachment to the Claims, St. Christopher, based on the St. Christopher Application, owes Plasma $8,909.36 for pharmaceutical goods purchased and delivered.  As of the Petition Date, Center City, based on the Center City Application, owes Plasma $118,674.38 for pharmaceutical goods purchased and delivered.  The total claim owed to Plasma is $127,583.74.  As of the Petition Date, St. Christopher, based on the MMS Application, owes MMS $18,362.41 for medical-surgical goods and lab equipment purchased by and delivered to St. Christopher's Hospital for Children.  MMS is entitled to an administrative claim in the amount of $1,114.87, which represents goods received by St. Christopher in the 20 days immediately prior

---

[5]  True and correct copies of the invoices that make up the portion of the Claims owed to Plasma (the "Plasma Invoices"), redacted to remove confidential pricing information, are attached to the Crumrine Decl. as Exhibit B.

[6] True and correct copies of the invoices that make up the portion of the Claims owed to MMS (the "MMS Invoices"), redacted to remove confidential pricing information, are attached to the Crumrine Decl. as Exhibit C.

to the Petition Date and thus entitled to administrative priority under 11 U.S.C. § 503(b)(9). McKesson's Claims seek $145,946.15 in total.

In addition to these Debtors, as provided for in the Credit Applications, any other Debtor that ordered the Goods, used those Goods, or were reimbursed for the Goods are jointly and severally liable to McKesson.

## LEGAL ARGUMENT

The Debtors argue that McKesson's Objected Claims are defective because they supposedly are duplicative as filed against many of the affiliated but non-substantively consolidated Debtors. The Debtors seek to address this by modifying the Objected Claims to be against Center City and then disallowing all of the Objected Claims. This objection is not well founded. The Objected Claims should not be modified because McKesson's Claims are appropriately asserted against those Debtors that ordered the Goods, used those Goods, or were reimbursed for the Goods. They are jointly and severally liable with Center City and the Hospitals.

Further, the Objected Claims cannot be disallowed. At this stage, the Court has not substantively consolidated all or some of the Debtors. In fact, the Debtors have not sought or obtained substantive consolidation of any of their estates. In the absence of substantive consolidation, McKesson holds separate claims against each of the Debtors that either i) executed the Customer Applications or ii) ordered the Goods, used those Goods, or were reimbursed for the Goods are jointly and severally liable to McKesson.

### A.    Certain of the Debtors Are Jointly and Severally Liable on McKesson's Claims if They Order, Received, Used or Were Reimbursed for the Goods

Due to the Debtors' corporate structure involving the Hospitals and multiple affiliated physician practice groups, it is beyond McKesson's personal knowledge as to which Debtors ordered, caused to be order, used or were reimbursed for the Goods. But, regardless, the Credit Applications provide joint and several liability irrespective of which Debtor ultimately received the Goods McKesson delivered to the Hospitals.

First, McKesson primarily supplied the Hospitals with Nulojix®, a physician-administered drug.  *See* Crumrine Decl., Ex. B.  Since Nulojix® is physician-administered, and without the benefit of discovery, McKesson is unable to determine which physicians and other medical professionals administered this drug or whether those physicians and other health care professionals were employed by Center City, the Hospitals or the other Debtors.  Similarly, without discovery, McKesson is unable to determine which of the Debtors were reimbursed for Nulojix®.  Thus, while McKesson delivered Nulojix® to the Hospitals' pharmacies, McKesson does not know which Debtor-entity actually received, administered and was paid for these drugs.  While not all of the Debtors may be implicated in the supply chain related to the Plasma Invoices—and therefore not liable—without access to the Debtors' records, McKesson is unable to ascertain the specifics of how the Hospitals distributed and administered the Goods.  Accordingly, as permitted by the Credit Applications, McKesson appropriately asserted its Claims jointly and severally against the Debtors.

Second, MMS delivered the bulk of the Goods to St. Christopher.  *See* Crumrine Decl., Ex. C.  St. Christopher the designated customer on the MMS Application, however, St. Christopher is jointly and severally liable for any debts incurred by authorized users of its accounts.  For example, one of the Debtors, St. Christopher's Pediatric Urgent Care Center ("SCPUCC") received various invoices and credit memos from MMS,[7] which involved Goods ordered through St. Christopher's MMS Application.  Additionally, MMS generated invoices and credit memos for several non-debtor affiliates of St. Christopher.[8]  Moreover, once MMS delivered the Goods to St. Christopher, and without the benefit of discovery, McKesson has no way of determining who utilized the Goods, whether they be contractual-counterparty Debtors or some of the other Debtors, and therefore has no way of determining which Debtors are liable on the Claim.

---

[7] *See* Crumrine Decl., Ex. B at 10, 13, 21, 25, 30, 34, 36, 63, 70, 76, 82, 85, 88, and 94

[8] *See* Crumrine Decl., Ex. C at 50, 52, 54, 57, and 119.

The Debtors contend that the Court should modify the Objected Claims because they "were incorrectly asserted against the wrong Debtor." *See* [Dkt. 1873, ¶ 23].  While not all Debtors may be liable for the Claims, without the benefit of discovery, McKesson is unable to ascertain which— if any—the Debtors should be excluded from its Claims.  As discussed above, pursuant to the Credit Applications, McKesson asserted its Claims severally and jointly and severally against each of the Debtors to account for McKesson's lack of knowledge as to which Debtor ordered, used and were reimbursed for the Goods delivered to the Hospitals.  Thus, at this time, McKesson is unable to determine if any of the Claims are asserted against the "wrong Debtor."  It is incumbent on the Debtors to establish whether the Claims should not be asserted against any of the Debtors because a particular Debtor never received, used or were reimbursed for the Goods.  Until the Debtors establish as such, McKesson appropriately reserved its rights by filing the Claims against each of the Debtors and the Objected Claims should not be modified.

**B.      McKesson's Claims Are Not Duplicative Because the Debtors Have Not Been Substantively Consolidated**

The Debtors' second prong of the Objection is to remove all of the potentially modified Objected Claims as duplicative.  The Debtors contend that they "should not be required to pay a claimant twice on the same obligation or debt." *See* [Dkt. 1873, ¶ 18].  Yet, the Debtors provide no legal or factual support to justify ignoring the established rules regarding substantive consolidation.

In the event the Bankruptcy Court substantively consolidates some or all of the Debtors' bankruptcy estates, McKesson agrees that it will only hold a single claim against the consolidated Debtors.  But, unless and until there is substantive consolidation among some or all of the Debtors, McKesson holds its claim against each of the non-consolidated Debtors.

The law in this area is clear and undisputed.  Substantive consolidation usually results in pooling the assets of, and claims against, two or more debtor entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans. *See In re Owens Corning*, 419 F.3d

195, 204-05 (3d Cir. 2005); *see also Union Savings Bank v. Augie/Restivo Baking Co., Ltd.* (*In re Augie/Restivo Baking Co., Ltd.*), 860 F.2d 515, 518 (2d Cir. 1988).  In the absence of substantive consolidation, there is corporate separateness and a creditor holding an allowable claim under applicable law against multiple debtors is entitled to assert that claim against each debtor and each estate.

This fundamental rule is supported by the Supreme Court's 1935 decision in *Ivanhoe Building & Loan Ass'n v. Orr*, 295 U.S. 243 (1935).  In *Ivanhoe*, the debtor assumed a secured real estate mortgage on certain land and immediately convey the real property to a third party, who subsequently defaulted.  The mortgagee, Ivanhoe, foreclosed, purchasing the property at the foreclosure sale for a $100 credit bid, and then asserted a $10,739.94 claim against the debtor bankruptcy estate.  The asserted claim consisted of the amount due on the note less the $100 bid at the sale.  The parties stipulated that the property was worth $9,000 at the time of foreclosure.  The bankruptcy court reduced Ivanhoe's claim against the debtor to the difference—$1,739.94— and the Third Circuit affirmed.  *Ivanhoe Building & Loan Ass'n v. Orr.*, 73 F.2d 609 (3d Cir. 1934), *rev'd* 295 U.S. 243 (1935).  The Supreme Court reversed, holding that Ivanhoe could continue to assert the *full* amount of its claim—$10,739.94—against the debtor without taking into account the value of the property it obtained through the foreclosure sale.  295 U.S. at 245-46. Notwithstanding its age, *Ivanhoe* is still controlling law on this issue and followed by modern day courts.[9]

Here, pursuant to the Credit Applications and by operation of law, each of the Debtors which ordered or caused the Goods to be ordered is liable to McKesson.  Similarly, each of the Debtors that used or dispensed or were reimbursed for the Goods is liable to McKesson.  Similar to the result in *Ivanhoe* and in the absence of substantive consolidation, any recovery by McKesson

---

[9]  *See e.g., In re Nat'l. Energy & Gas Transmission, Inc.*, 492 F.3d 297, 301 (4th Cir. 2007); *In re Del Biaggio*, 496 B.R. 600, 602-605 (Bankr. N.D. Cal. 2012) (denying committee's partial claim objection based on payments received from co-obligors, relying upon the *Ivanhoe* analysis,).

on its Claims in one bankruptcy case does not reduce McKesson's Claims in another bankruptcy case.  Accordingly, the Objection must be overruled.

**CONCLUSION**

For the foregoing reasons, McKesson respectfully requests that (i) the Objection be overruled in part as to McKesson's Claims and (ii) that the Court grant such other relief as is just and proper.

Dated: November 19, 2020

**The Powell Firm, LLC**
Wilmington, Delaware


/s/ *Jason C. Powell*
Jason C. Powell (No. 3768)
1201 N. Orange Street
Wilmington, Delaware 19801
Telephone:      (302) 650-1572
Facsimile:      (302) 650-1574
Email:           Jpowell@delawarefirm.com

—and—


/s/ *Jeffrey K. Garfinkle*
**Buchalter, APC**
18400 Von Karman Avenue
Suite 800
Irvine, California 92612-0514
Telephone:      (949) 760-1121
Facsimile:      (949) 720-0182
Email:           jgarfinkle@buchalter.com
*Counsel for McKesson Corporation and its*
*affiliates*