# EXHIBIT A

# EXHIBIT A

# MCKESSON
*Empowering Healthcare*

McKesson Corporation or an affiliated company ("McKesson")

## CUSTOMER APPLICATION
(Please print in block letters)

CD01-M  V.09-07

Type of Business: ☐ Acute ☐ Primary Care ☐ Specialty ☐ Home Health ☐ Extended ☐ Long Term ☐ Pharmacy ☐ Closed Door ☐ Internet ☐ Mail Order ☐ Supplier ☐ Government ☑ Other Hospital

| | | |
|---|---|---|
| **St. Christopher's Hospital for Children** | **stchristophershospital.com** | **Federal Tax ID** |
| Legal Company Name | Website Address | |
| **3601 A Street** | **Philadelphia** | **PA**  **19134** |
| Legal Address (Main Office) | City | State  Zip |
| **Wilma Aponte** | **Billing Coordinator** | **215-427-6084** |
| Contact Name we may call for questions regarding this application | Title | Phone |
| **PO Box 26968** | **Philadelphia** | **PA**  **19134-6968** |
| Billing / Statement Address (if different than Main Office) | City | State  Zip |
| **Lois Evans**  **215-427-8124** | **215-427-4950** | **lois.evens@tenethealth.com** |
| Accounts Payable Contact Person  Accounts Payable Telephone | Accounts Payable Fax | Accounts Payable Email |

Shipping Information: ☐ If more than 1 Ship-to, please attach multiple Ship-to's Information

| | | | | |
|---|---|---|---|---|
| | $ | | $ | |
| DBA or Business Trade Name of Account | | Estimated Monthly Purchases | Initial Order | Number of Employees |
| **3601 A Street** | | **Philadelphia** | | **PA**  **19134** |
| Ship to Address | | City | | State  Zip |
| **Wilma Aponte**  **215-427-6084** | | **215-427-5511** | | **wilma.aponte@tenethealth.com** |
| Ship to Contact Person  Ship to Telephone | | Ship to Fax | | Ship to Email |

Has applicant's, applicant's parent or affiliates ever filed for bankruptcy? ☑ No ☐ Yes, attach explanation

| | | |
|---|---|---|
| Years in Business | State Org/Charter ID/License# | Name of State |

Ownership Type: ☐ Proprietorship ☐ Partnership ☐ Limited Partnership ☑ LLC ☐ (S) Corp ☐ (C) Corp ☐ Professional Corp ☐ Non-Profit Corp

| | | |
|---|---|---|
| Principal Owner(s) or Stockholder(s) | % Ownership(s) | Social Security Number(s) |
| **Tenet**  Parent Company | | **469-893-6583** |
| NAME OF CONTROLLING ENTITY (if any) | Applicant's relationship to controlling entity | Phone |
| **1445 Ross Avenue Suite 1400** | **Dallas** | **TX**  **75202-2703** |
| Address of Controlling Entity | City | State  Zip |

**REFERENCES:**

| | | | |
|---|---|---|---|
| **Bank of New York** | | | |
| Primary Bank/Financial Institution | Account Number | Contact Name | Phone |
| **Owens and Minor** | | | **856-423-9900** |
| Primary Supply Provider | Account Number | Contact Name | Phone |
| **Medline Industries** | | | **800-633-5463** |
| Primary Technology Provider | Account Number | Contact Name | Phone |

Additional Information Required (If applicable, please attach these documents to this application):
☐ Copy of Resale/Tax Exemption Certificate
☐ Copy of DEA Registration, State Pharmacy License, or Medical License      DEA#____  HIN#____      Medical License# & Name of State
☐ Copies of 3 most recent and consecutive primary supplier statements
☐ Annual Financial Statements for the past 2 years (including balance sheet, income statement, and cash flow statements)

This section applies to all "MCKESSON MEDICAL-SURGICAL INC.," McKesson Medical-Surgical Minnesota Supply Inc.," and Moore Medical LLC" accounts only. Invoices are due 30 days from the date of invoice unless otherwise stated. Actual payment terms extended may differ depending on credit approval and are due as printed on the invoice. Please refer to the most recent invoice and statement for actual payment terms. A 1.5% per month service charge (or the maximum amount permissible under applicable law, if lower) will be imposed on all past due balances.

This section applies to all accounts with MCKESSON CORPORATION or an affiliated company.
Customer agrees to abide by Standard Terms of Sale published by McKesson, as shown on McKesson's invoices or statements, or by any written agreement or terms of sale with McKesson governing Customer's account. Customer agrees to pay for all purchases, fees and other charges incurred by Customer or an authorized user on any account of Customer, including service charges on past due amounts at the highest rate permitted by law (including purchases shipped and/or billed to a third-party agent on behalf of Customer). Without limiting McKesson's other legal rights, McKesson may exercise a right of set-off against amounts due Customer from McKesson Corporation or any of its affiliates. McKesson reserves the right, in its sole discretion, to change a payment term (including imposing cash payment upon delivery), limit total credit, suspend or discontinue the shipment of any orders to Customer if McKesson concludes that (i) there has been a material change in the Customer's financial condition or payment performance or (ii) Customer has ceased or is likely to cease to meet McKesson's credit requirements.
Customer represents that it is entitled to discounted prices from manufacturers as it has notified McKesson ("Contract Prices"). In consideration of McKesson allowing Customer to purchase products at Contract Prices, Customer represents that McKesson will be paid by the appropriate manufacturer the difference between McKesson's cost and the Contract Price ("Chargeback") and Customer will be liable to McKesson for any unpaid Chargeback if any manufacturer (i) denies a Chargeback for any reason, (ii) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of its property or a proceeding is begun which will substantially impair its ability to pay Chargebacks or (iii) fails to pay McKesson Chargebacks for any reason other than McKesson's gross negligence.
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating due to race, color, religion, national origin, sex, marital status, age; or because all or part of the Customer's income is from any public assistance program; or the Customer exercises any right under the Consumer Credit Protection Act. The Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580 administers compliance with this law.
Customer represents and warrants that Customer has read and understands this form and has reviewed the information provided in its entirety, including responses completed by a McKesson representative, and that all information is complete and correct, and agrees that McKesson will be relying on this information and will notify McKesson of any material changes to such information. Customer agrees to provide McKesson with financial statements upon request. This form is subject to credit approval by McKesson. Customer authorizes McKesson, its employees, representatives, and agents (i) to investigate information provided, and Customer's credit, financial and banking records, (ii) to obtain Customer's credit bureau report and (iii) to share with its affiliates experiential and transactional information regarding Customer and Customer's Account. McKesson is authorized to retain information obtained as part of the application process whether or not the requested account and/or credit is granted. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by McKesson in enforcing its rights to collect amounts due from Customer.

By signing below, the undersigned authorized McKesson to order a consumer report related to the business principal(s) to determine credit eligibility.

| | | | |
|---|---|---|---|
| *Terry Raymond* | *Terry Raymond* | *Controller* | *6/30/10* |
| Authorized Signature | Print Name | Title | Date |

*(This form must be signed by a Corporate Officer, Partner, Owner or Authorized Agent)*



Total Pages: 2

06/20/12

McKesson

RE: St. Christopher's Hospital

To Whom It May Concern:

In response to your request for credit information, we are providing the following information. Tenet Healthcare Corporation (Tenet) is the second largest private healthcare provider in the United States. Through its subsidiaries, Tenet owns and operates acute care hospitals and related healthcare services. Our hospitals aim to provide the best possible care to every patient who comes through their doors, with a clear focus on quality and service.

For the year ending March 31, 2012, Tenet had total assets of $8.5 billion and net operating revenues of $2.3 billion. For the quarter ending March 31, 2012, Tenet had total long-term debt of $4.3 billion and had total Shareholders' equity of $1.4 billion. Tenet is publicly traded on the NYSE under the symbol "THC." Tenet's credit rating is C- by Standard and Poor's Rating Services and B+ by Moody's Investors Service, Inc.

If you would like a copy of our most recent annual report or other financial information, please visit the Investor Relations section of our website at www.tenethealth.com. Due to the size and scope of our nationwide banking relationships, we, as a matter of policy, do not provide specific bank account information. **Please contact** Kelly Choy 215-427-8339 **with credit application questions.**

Sincerely,
James E. Snyder III
Director, Cash Management

Encl.



# Credit References
Last Updated 09/19/2011

Owens & Minor Inc.
9120 Lockwood Boulevard
Tom Bernhardt
804.723.7118 Fax

Medtronic
7000 Central Ave N.E.
Minneapolis, MN  55432-3576
Angela Yoerger
763.514.7111
763.367.1405 Fax

Johnson & Johnson, Ethicon
15101 Trinity Boulevard
Fort Worth, TX  76155
John Shipley
732.562.3264
732.562.3596 Fax

# MᶜKESSON

McKesson Corporation and its affiliated companies (collectively referred to as "McKesson")

## CUSTOMER APPLICATION

(Please print in block letters)

CD01-B   V.01-11

Type of Business: ■ Acute □ Primary Care □ Specialty □ Home Health □ Extended □ Long Term □ Pharmacy □ Closed Door □ Mail Order □ Supplier □ Other____

| | |
|---|---|
| **St. Christopher's Healthcare, LLC dba St. Christopher's Hospital for Children** | www.stchristophershospital.com |
| Legal Company Name | Website Address |

| | | | | |
|---|---|---|---|---|
| **1500 Market Street,  West Tower, Suite 2400** | **Philadelphia** | | **PA** | **19102** |
| Legal Address (Main Office) | City | | State | Zip / EIN |

| | | |
|---|---|---|
| **Kyle Schmidt** | VP, Finance and M&A | **310-947-6855** |
| Contact Name we may call for questions regarding this application | Title | Phone |

| | | | |
|---|---|---|---|
| **PO Box 26968** | **Philadelphia** | **PA** | **19101** |
| Billing / Statement Address (if different than Main Office) | City | State | Zip |

| | | | |
|---|---|---|---|
| **Karen Howard** | 215-427-5244 | 215-427-4950 | karen.howard@americanacademic.com |
| Accounts Payable Contact Person | Accounts Payable Telephone | Accounts Payable Fax | Accounts Payable Email |

Shipping Information: □ If more than 1 Ship-to, please attach multiple Ship-to's Information

| | $ | | $ | |
|---|---|---|---|---|
| **St. Christopher's Hospital for Children** | | | | |
| DBA or Business Trade Name of Account | | **Estimated Monthly Purchases** | **Initial Order** | **Number of Employees** |

| | | | |
|---|---|---|---|
| **160 E. Erie Avenue** | **Philadelphia** | **PA** | **19134** |
| Ship to Address | City | State | Zip |

| | | | | |
|---|---|---|---|---|
| Ship to Contact Person | Ship to Telephone | Ship to Fax | | Ship to Email |

| | | |
|---|---|---|
| **2017** | **DE** | Has applicant, applicant's parent or affiliates ever filed for bankruptcy? ■ No  □ Yes, attach explanation |
| **YEAR established    YEAR Current Ownership** | **State Org** | |

Ownership Type: □ Proprietorship  □ Partnership □ Limited Partnership ■ Limited Liability Company □ Private Corp □ Public Corp □ Professional Corp □ Non-Profit Corp □ Government

| | | |
|---|---|---|
| **Joel Freedman** | **52.8** | |
| Principal Owner(s) or Stockholder(s) | % Ownership(s) | Social Security Number(s) |

| | | |
|---|---|---|
| **Philadelphia Academic Health System, LLC** | Parent Company | 215-255-3500 |
| NAME OF CONTROLLING ENTITY (if any) | Applicant's relationship to controlling entity | Phone |

| | | | |
|---|---|---|---|
| **1500 Market Street, West Tower, Suite 2400** | **Philadelphia** | **PA** | **19102** |
| Address of Controlling Entity | City | State | Zip |

**REFERENCES:**

| | | | |
|---|---|---|---|
| Primary Bank/Financial Institution | Account Number | Contact Name | Phone |
| Primary Supply Provider | Account Number | Contact Name | Phone |
| Primary Technology Provider | Account Number | Contact Name | Phone |

Additional Information Required (If applicable, please attach these documents to this application):
- □ Copy of Resale/Tax Exemption Certificate
- □ Copy of DEA Registration, State Pharmacy License, or Medical License    DEA#____    HIN#____    Medical License # & State____
- □ Copies of 3 most recent and consecutive primary supplier statements
- □ Annual Financial Statements for the past 2 years (including balance sheet, income statement, and cash flow statements)

This section applies to all accounts with MCKESSON CORPORATION and its affiliated companies ("McKesson")

Customer agrees to abide by (I) standard terms of sale provided or made available by McKesson and/or shown on McKesson's invoices or statements and (II) any written agreement or terms of sale with McKesson governing Customer's account.  Customer agrees to pay for all purchases, fees and other charges incurred by Customer or an authorized user on any account of Customer, including service charges on past due amounts at the highest rate permitted by law (including purchases shipped and/or billed to a third-party agent on behalf of Customer).  Any payment made after the net due date shall result in the loss of any prompt cash payment discount specified on the related invoice or statement and Customer shall pay the gross amount plus any applicable service charges.  Without limiting McKesson's other legal rights, McKesson may exercise a right of set-off against amounts due Customer from McKesson Corporation or any of its affiliates.  McKesson reserves the right, in its sole discretion, to change a payment term (including imposing cash payment upon delivery), to limit total credit and/or to suspend or discontinue the shipment of any orders to Customer if McKesson concludes that (I) there has been a material adverse change in the Customer's financial condition or payment performance or (II) Customer has ceased or is likely to cease to meet McKesson's credit requirements.

Customer represents that it is entitled to discounted prices from manufacturers as it has notified McKesson ("Contract Prices").  In consideration of McKesson allowing Customer to purchase products at Contract Prices, Customer represents that McKesson will be paid by the appropriate manufacturer the difference between McKesson's acquisition price and the Contract Price ("Chargeback") and Customer will be liable to McKesson for any unpaid Chargeback if any manufacturer (I) denies a Chargeback for any reason, (II) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of its property or a proceeding is begun which will substantially impair its ability to pay Chargebacks or (III) fails to pay McKesson Chargebacks for any reason other than McKesson's gross negligence.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating due to race, color, religion, national origin, sex, marital status, age; or because all or part of the Customer's income is from any public assistance program; or the Customer, in good faith, exercises any right under the Consumer Credit Protection Act.  The Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580 administers compliance with this law.  Customer represents and warrants that Customer has read and understands this form and has reviewed the information provided in its entirety, including responses completed for Customer by a McKesson representative, and that all information is complete and correct.  Customer agrees that McKesson will be relying on such information and will notify McKesson of any material changes to such information.

Customer agrees to provide McKesson with financial statements upon request. Customer authorizes McKesson, its employees, representatives, and agents to (I) investigate information provided and Customer's credit, financial and banking records, (II) obtain Customer's credit bureau report and (III) share with its affiliates experiential and transactional information regarding Customer and Customer's account.  McKesson is authorized to retain copies of the application process whether or not the requested account and/or credit is granted.  Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by McKesson in enforcing its rights to collect amounts due from Customer.  This form and any account opened in favor of Customer are subject to credit approval by McKesson.

By signing below, the undersigned authorized McKesson to order a consumer report related to the business principal(s) to determine credit eligibility.

| | | |
|---|---|---|
| _____ | Joel Freedman | CEO |
| Authorized Signature | Print Name | Title |
| | | July 23, 2018 |
| | | Date |

(By signing, I represent that I have sufficient authority to execute this application on behalf of the applicant and bind the applicant to the terms hereof)

**MCKESSON** McKesson Corporation and its affiliated companies (collectively referred to as "**McKesson**")

## CUSTOMER APPLICATION

(Please print in block letters)

CD01-B   V.01-11

Type of Business: ■ Acute ☐Primary Care ☐Specialty ☐Home Health ☐Extended ☐Long Term ☐Pharmacy ☐Closed Door ☐Mail Order ☐Supplier ☐Other____

| Center City Healthcare, LLC dba Hahnemann University Hospital | | www.hahnemannhospital.com | | | | |
|---|---|---|---|---|---|---|
| **Legal Company Name** | | Website Address | | | Federal Tax ID / EIN | |
| 1500 Market Street, West Tower, Suite 2400 | | Philadelphia | | PA | 19102 | |
| Legal Address (Main Office) | | City | | State | Zip | |
| Kyle Schmidt | | VP, Finance and M&A | | 310-947-6855 | | |
| Contact Name we may call for questions regarding this application | | Title | | Phone | | |
| PO Box 42487 | | Philadelphia | | PA | 19101 | |
| Billing / Statement Address (if different than Main Office) | | City | | State | Zip | |
| Cathy Stevens | 215-762-8261 | 215-762-8201 | | Cathy.Stevens@tenethealth.com | | |
| Accounts Payable Contact Person | Accounts Payable Telephone | Accounts Payable Fax | | Accounts Payable Email | | |

Shipping Information: ☐ If more than 1 Ship-to, please attach multiple Ship-to's Information

| Hahnemann University Hospital | | $ | | $ | | |
|---|---|---|---|---|---|---|
| DBA or Business Trade Name of Account | | **Estimated Monthly Purchases** | | **Initial Order** | | Number of Employees |
| 230 N Broad Street | | Philadelphia | | PA | 19102 | |
| Ship to Address | | City | | State | Zip | |
| | | | | | | |
| Ship to Contact Person | Ship to Telephone | Ship to Fax | | Ship to Email | | |

| 2017 | | DE | Has applicant, applicant's parent or affiliates ever filed for bankruptcy? ■ No ☐ Yes, attach explanation | | |
|---|---|---|---|---|---|
| **YEAR established** | **YEAR Current Ownership** | **State Org** | | | |

Ownership Type: ☐Proprietorship ☐Partnership ☐Limited Partnership ■Limited Liability Company ☐Private Corp ☐Public Corp ☐Professional Corp ☐Non-Profit Corp ☐Government

| Joel Freedman | | 52.8 | | |
|---|---|---|---|---|
| **Principal Owner(s) or Stockholder(s)** | | % Ownership(s) | **Social Security Number(s)** | |

| Philadelphia Academic Health System, LLC | Parent Company | 215-762-7000 | | |
|---|---|---|---|---|
| **NAME OF CONTROLLING ENTITY (if any)** | Applicant's relationship to controlling entity | Phone | | |
| 1500 Market Street, West Tower, Suite 2400 | Philadelphia | | PA | 19102 |
| Address of Controlling Entity | City | | State | Zip |

**REFERENCES:**

| Primary Bank/Financial Institution | Account Number | Contact Name | Phone |
|---|---|---|---|
| Primary Supply Provider | Account Number | Contact Name | Phone |
| Primary Technology Provider | Account Number | Contact Name | Phone |

Additional Information Required (If applicable, please attach these documents to this application):
☐ Copy of Resale/Tax Exemption Certificate
☐ Copy of DEA Registration, State Pharmacy License, or Medical License         DEA#         HIN#         Medical License # & State
☐ Copies of 3 most recent and consecutive primary supplier statements
☐ Annual Financial Statements for the past 2 years (including balance sheet, income statement, and cash flow statements)

**This section applies to all accounts with MCKESSON CORPORATION and its affiliated companies ("McKesson")**
Customer agrees to abide by (I) standard terms of sale provided or made available by McKesson and/or shown on McKesson's invoices or statements and (II) any written agreement or terms of sale with McKesson governing Customer's account. Customer agrees to pay for all purchases, fees and other charges incurred by Customer or an authorized user on any account of Customer, including service charges on past due amounts at the highest rate permitted by law (including purchases shipped and/or billed to a third-party agent on behalf of Customer). Any payment made after the net due date shall result in the loss of any prompt cash payment discount specified on the related invoice or statement and Customer shall pay the gross amount plus any applicable service charges. Without limiting McKesson's other legal rights, McKesson may exercise a right of set-off against amounts due Customer from McKesson Corporation or any of its affiliates. McKesson reserves the right, in its sole discretion, to change a payment term (including imposing cash payment upon delivery), to limit total credit and/or to suspend or discontinue the shipment of any orders to Customer if McKesson concludes that (I) there has been a material adverse change in the Customer's financial condition or payment performance or (II) Customer has ceased or is likely to cease to meet McKesson's credit requirements.

Customer represents that it is entitled to discounted prices from manufacturers as it has notified McKesson ("Contract Prices"). In consideration of McKesson allowing Customer to purchase products at Contract Prices, Customer represents that McKesson will be paid by the appropriate manufacturer the difference between McKesson's acquisition price and the Contract Price ("Chargeback") and Customer will be liable to McKesson for any unpaid Chargeback if any manufacturer (I) denies a Chargeback for any reason, (II) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of its property or a proceeding is begun which will substantially impair its ability to pay Chargebacks or (III) fails to pay McKesson Chargebacks for any reason other than McKesson's gross negligence.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating due to race, color, religion, national origin, sex, marital status, age; or because all or part of the Customer's income is from any public assistance program; or the Customer, in good faith, exercises any right under the Consumer Credit Protection Act. The Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580 administers compliance with this law. Customer represents and warrants that Customer has read and understands this form and has reviewed the information provided in its entirety, including responses completed for Customer by a McKesson representative, and that all information is complete and correct. Customer agrees that McKesson will be relying on such information and will notify McKesson of any material changes to such information.

Customer agrees to provide McKesson with financial statements upon request. Customer authorizes McKesson, its employees, representatives, and agents to (I) investigate information provided and Customer's credit, financial and banking records, (II) obtain Customer's credit bureau report and (III) share with its affiliates experiential and transactional information regarding Customer and Customer's account. McKesson is authorized to retain information obtained as part of the application process whether or not the requested account and/or credit is granted. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by McKesson in enforcing its rights to collect amounts due from Customer. This form and any account opened in favor of Customer are subject to credit approval by McKesson.

By signing below, the undersigned authorized McKesson to order a consumer report related to the business principal(s) to determine credit eligibility.

| _Joel Freedman_ | CEO | _07/05/2018_ |
|---|---|---|
| Authorized Signature     Print Name | Title | Date |

(By signing I represent that I have sufficient authority to execute this application on behalf of the applicant and bind the applicant to the terms hereof)

# EXHIBIT B

# EXHIBIT B

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
  16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 06/16/2020

**Printed:** 06/16/2020

**Invoice Number:** 4000194246

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000194246 | Service Charge | Past Due Bal | 973.06 |

| | |
|---|---|
| **Date Due:** | 06/16/2020 |
| **Net Amount Due if Paid on Time:** | 973.06 |
| **Gross Amount Due if Paid Late:** | 973.06 |

3700004579

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
   16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 06/01/2020

**Printed:** 06/01/2020

**Invoice Number:** 4000193232

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000193232 | Service Charge | Past Due Bal | 973.06 |

|  |  |
|---|---|
| **Date Due:** | 06/01/2020 |
| **Net Amount Due if Paid on Time:** | 973.06 |
| **Gross Amount Due if Paid Late:** | 973.06 |

3700003381

# MSKESSON

# SERVICE CHARGE

**Mail to:**
McKesson Plasma & Biologics LL

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 05/16/2020

**Invoice Number:** 4000192121

**Printed:** 05/16/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000192121 | Service Charge | Past Due Bal | 973.06 |

**Date Due:** 05/16/2020

**Net Amount Due if Paid on Time:** 973.06

3700002431

**Gross Amount Due if Paid Late:** 973.06

# MCKESSON

## SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

**Mail to:**
McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**  05/01/2020

**Printed:**  05/01/2020

**Invoice Number:**  4000191110

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000191110 | Service Charge | Past Due Bal | 973.06 |

|  |  |
|---|---|
| **Date Due:** | 05/01/2020 |
| **Net Amount Due if Paid on Time:** | 973.06 |
| **Gross Amount Due if Paid Late:** | 973.06 |

3700001502

# MᶜKESSON

# SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
   16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 04/16/2020

**Printed:** 04/16/2020

**Invoice Number:** 4000189841

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000189841 | Service Charge | Past Due Bal | 973.06 |

**Date Due:** 04/16/2020

**Net Amount Due if Paid on Time:** 973.06

3700000993

**Gross Amount Due if Paid Late:** 973.06

# M⶜KESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 04/01/2020

**Printed:** 04/01/2020

**Invoice Number:** 4000188827

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000188827 | Service Charge | Past Due Bal | 973.06 |

**Date Due:** 04/01/2020

**Net Amount Due if Paid on Time:** 973.06

3700000044

**Gross Amount Due if Paid Late:** 973.06

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**    03/16/2020

**Invoice Number:**    4000187983

**Printed:**    03/16/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000187983 | Service Charge | Past Due Bal | 973.06 |

|  |  |
|---|---|
| **Date Due:** | 03/16/2020 |
| **Net Amount Due if Paid on Time:** | 973.06 |
| **Gross Amount Due if Paid Late:** | 973.06 |

3700019926

**McKESSON**

# SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 03/02/2020

**Invoice Number:** 4000187198

**Printed:** 03/02/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000187198 | Service Charge | Past Due Bal | 973.06 |

**Date Due:** 03/02/2020

**Net Amount Due if Paid on Time:** 973.06

3700019018

**Gross Amount Due if Paid Late:** 973.06

# MᶜKESSON

## SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 02/17/2020

**Invoice Number:** 4000186643

**Printed:** 02/17/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000186643 | Service Charge | Past Due Bal | 973.06 |

|  |  |
|---|---|
| **Date Due:** | 02/17/2020 |
| **Net Amount Due if Paid on Time:** | 973.06 |
| **Gross Amount Due if Paid Late:** | 973.06 |

3700018124

# SERVICE CHARGE

**Mail to:**
McKesson Plasma & Biologics LL
McK Plasma & Biologics          16578 Collections Center Drive   **Customer:** 507908        **Contract:**
401 Mason Road              CHICAGO IL 60693
LA VERGNE TN 37086


HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P                                **Invoice Date:**  02/01/2020    **Invoice Number:**   4000185253
PO BOX 42487
PHILADELPHIA PA  19101              **Printed:**       02/01/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000185253 | Service Charge | Past Due Bal | 973.06 |

**Date Due:** 02/01/2020

**Net Amount Due if Paid on Time:** 973.06

3700017187                              **Gross Amount Due if Paid Late:** 973.06

# McKESSON

## SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA 19101

**Invoice Date:** 01/16/2020

**Invoice Number:** 4000184315

**Printed:** 01/16/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000184315 | Service Charge | Past Due Bal | 973.06 |

**Date Due:** 01/16/2020

**Net Amount Due if Paid on Time:** 973.06

3700016264

**Gross Amount Due if Paid Late:** 973.06

# MCKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**    01/01/2020

**Invoice Number:**    4000183317

**Printed:**    01/01/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000183317 | Service Charge | Past Due Bal | 973.06 |

**Date Due:**    01/01/2020

**Net Amount Due if Paid on Time:**    973.06

3700015230

**Gross Amount Due if Paid Late:**    973.06

# MᶜKESSON

## SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 12/01/2019

**Invoice Number:** 4000182072

**Printed:** 12/01/2019

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000182072 | Service Charge | Past Due Bal | 973.06 |

3700013974

| | |
|---|---|
| **Date Due:** | 12/01/2019 |
| **Net Amount Due if Paid on Time:** | 973.06 |
| **Gross Amount Due if Paid Late:** | 973.06 |

# MCKESSON

# SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

McKesson Plasma & Biologics LL
   16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 11/16/2019

**Printed:** 11/16/2019

**Invoice Number:** 4000181252

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000181252 | Service Charge | Past Due Bal | 973.06 |

**Date Due:** 11/16/2019

**Net Amount Due if Paid on Time:** 973.06

3700013069

**Gross Amount Due if Paid Late:** 973.06

# MCKESSON

## SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 11/01/2019

**Printed:** 11/01/2019

**Invoice Number:** 4000180370

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000180370 | Service Charge | Past Due Bal | 973.06 |

**Date Due:** 11/01/2019

**Net Amount Due if Paid on Time:** 973.06

3700012213

**Gross Amount Due if Paid Late:** 973.06

# MCKESSON

# SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

| **Customer:** 507908 | **Contract:** |

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

| **Invoice Date:** | 10/16/2019 | **Invoice Number:** | 4000179539 |
| **Printed:** | 10/16/2019 | | |

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000179539 | Service Charge | Past Due Bal | 973.06 |

|  | **Date Due:** | 10/16/2019 |
|---|---|---|
|  | **Net Amount Due if Paid on Time:** | 973.06 |
| 3700011408 | **Gross Amount Due if Paid Late:** | 973.06 |

# MCKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 10/01/2019

**Printed:** 10/01/2019

**Invoice Number:** 4000178705

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000178705 | Service Charge | Past Due Bal | 973.06 |

| | |
|---|---|
| **Date Due:** | 10/01/2019 |
| **Net Amount Due if Paid on Time:** | 973.06 |
| **Gross Amount Due if Paid Late:** | 973.06 |

3700010577

# MCKESSON

# SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 09/16/2019

**Printed:** 09/16/2019

**Invoice Number:** 4000178258

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000178258 | Service Charge | Past Due Bal | 973.06 |

**Date Due:** 09/16/2019

**Net Amount Due if Paid on Time:** 973.06

3700009735

**Gross Amount Due if Paid Late:** 973.06

# MCKESSON

# SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**    09/02/2019

**Printed:**    09/02/2019

**Invoice Number:**    4000176936

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000176936 | Service Charge | Past Due Bal | 973.06 |

3700008804

**Date Due:**    09/02/2019

**Net Amount Due if Paid on Time:**    973.06

**Gross Amount Due if Paid Late:**    973.06

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**    08/16/2019

**Printed:**         08/16/2019

**Invoice Number:**    4000176405

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000176405 | Service Charge | Past Due Bal | 1,072.74 |

**Date Due:**    08/16/2019

**Net Amount Due if Paid on Time:**    1,072.74

3700008027

**Gross Amount Due if Paid Late:**    1,072.74

# MCKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
 16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 08/01/2019

**Invoice Number:** 4000175661

**Printed:** 08/01/2019

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000175661 | Service Charge | Past Due Bal | 923.68 |

**Date Due:** 08/01/2019

**Net Amount Due if Paid on Time:** 923.68

3700007231

**Gross Amount Due if Paid Late:** 923.68

# MCKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:** 07/16/2019

**Printed:** 07/16/2019

**Invoice Number:** 4000174452

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000174452 | Service Charge | Past Due Bal | 187.12 |

3700006295

| | |
|---|---|
| **Date Due:** | 07/16/2019 |
| **Net Amount Due if Paid on Time:** | 187.12 |
| **Gross Amount Due if Paid Late:** | 187.12 |

# McKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**    06/01/2019

**Printed:**           06/01/2019

**Invoice Number:**      4000171835

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000171835 | Service Charge | Past Due Bal | 64.21 |

3700003517

**Date Due:**           06/01/2019

**Net Amount Due if Paid on Time:**      64.21

**Gross Amount Due if Paid Late:**      64.21

# MCKESSON

## Invoice

McKesson Plasma and Biologics LLC
2615 Medical Center Parkway,
Suite 1580,
Murfreesboro, TN, 37129

**BILL TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN A/P
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**SHIP FROM:**
4100 Quest Way
Memphis TN  38115

**SHIP TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN PHARMACY
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**Phone:**  1-877-625-2566
**DEA:**

**DEA:**  BH6123448
**PHCY:**  HP418082L

| | | |
|---|---|---|
| **Invoice No:** | | 7137596311 |
| **Billing Date:** | | 05/30/2019 |
| **PO#:** | | 717053019 |

| 507908 | DD | 001 | 1 of 2 |
|---|---|---|---|
| **Customer** | **Route** | **Stop** | **Page** |

The prices on this invoice may be subject to rebates, credits and other price adjustments   You are obligated to properly disclose and appropriately reflect all discounts, including rebates, in claims and costs submitted to federal and state government health care programs (including Medicare and Medicaid) and to provide this invoice and other discount documentation to government authorities on request, in accordance with all applicable laws and regulations, including 42 USC 1320a-7b(b)and the discount safe harbor  In addition, the purchase of products hereunder may qualify customer for discounts on certain purchases made under a distribution agreement between customer and McKesson Corporation

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **** Gillette - Consumer/Patient Level Recall **** | | | | | | | | | | | |

DAISY CLSSC DISP RZR 12+ 1, Lot # 9009A17400, UPC 4740030071, Econo # 3749777, GIL VENUS SIMPLY DISP PINK 4, Lot #s 9007A17400 & 9003A17400, UPC # 4740031535, Econo # 1936558. Please contact 800-362-1258 to return product.

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00003-0371-13 | 362-8203 | 1098162629 | 3 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 4 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 3 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 2 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 2 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 2 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 3 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 2 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 2 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 2 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |
| 00003-0371-13 | 362-8203 | 1098162629 | 2 | EA | MPB NULOJIX 250MG VIAL 1  Lot :AAZ9379 Exp date :01/31/2022 | | R | ▮ | K | ▮ | |

# McKESSON

## Invoice

| | | |
|---|---|---|
| Page No | | 7137596311 |
| Billing Date: | | 05/30/2019 |
| PO#: | | 717053019 |

**DC:**
McKesson Plasma & Biologics LLC

**Phone:** 1-877-625-2566
**DEA:**

| 507908 | DD | 001 | 2 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

**BILL TO:**
HAHNEMANN UNIV HSP MPB

**SHIP TO:**
HAHNEMANN UNIV HSP MPB

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SUMMARY

| | | | |
|---|---|---|---|
| TOTAL RX PURCHASES: | $24,270.57 | TOTAL CONTRACT PURCHASES: | $24,270.57 |
| TOTAL OTC PURCHASES: | $0.00 | TOTAL NON CONTRACT PURCHASES: | $0.00 |

**NET PAYABLE BY STATEMENT DATE 07/26/2019:** $24,270.57
**GROSS PAYABLE AFTER STATEMENT DATE 07/26/2019:** $24,765.89

| Lines | Cases | Pieces |
|---|---|---|
| 0 | 0 | 0 |

This invoice is payable to **McKesson Plasma & Biologics LLC 16578 Collections Center Drive CHICAGO IL 60693**
Claims must be made within 5 days and show date of invoice

# McKESSON

## Invoice

McKesson Plasma and Biologics LLC
2615 Medical Center Parkway,
Suite 1580,
Murfreesboro, TN, 37129

**SHIP FROM:**
4100 Quest Way
Memphis TN  38115

**Phone:** 1-877-625-2566
**DEA:**

| | | | |
|---|---|---|---|
| | | | 7136251814 |
| Billing Date: | | | 05/22/2019 |
| PO#: | | | 717052219 |

**BILL TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN A/P
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**SHIP TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN PHARMACY
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**DEA:** BH6123448
**PHCY:** HP418082L

| 507908 | DD | 001 | 1 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

The prices on this invoice may be subject to rebates, credits and other price adjustments   You are obligated to properly disclose and appropriately reflect all discounts, including rebates, in claims and costs submitted to federal and state government health care programs (including Medicare and Medicaid) and to provide this invoice and other discount documentation to government authorities on request, in accordance with all applicable laws and regulations, including 42 USC 1320a-7b(b)and the discount safe harbor  In addition, the purchase of products hereunder may qualify customer for discounts on certain purchases made under a distribution agreement between customer and McKesson Corporation

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

**** Torrent Pharma - Consumer/Patient Level Recall - Various Lots ****
LOSARTAN, LOSARTAN HCTZ, LOSARTAN P/HCTZ, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-037C). Contact Qualanex at 1-888-280-2040 to return product. **** AvKare
Pharma - Consumer/Patient Level Recall - Various Lots **** LOSARTAN HCTZ, LOSARTAN POT, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-064). Contact AvKare at 931-
292-6222 to return product. **** Alvogen Pharma - Consumer/Patient Level Recall -Lot # 180073 & 180060 **** FENTANYL TDS 12MCG/H ALVO 5@, NDC # 47781042347, Econo # 3620986. Please contact Qualanex at 888-
504-2012. **** Pfizer Pharma - Consumer/Patient Level Recall - Lot # S97473 **** THERMAC 8HR BACK&HIP LG/XLG  2, NDC # 00573301003, Econo # 1136811. Please return impacted product to McKesson. **** Golden
State Medical Supply - Consumer/Patient Level Recall - Various Lots **** LOSARTAN POT, Various NDC #s, Various Econo #s.Please see full recall notice on McKesson Connect (RC 19-075).
Contact GSMS incorporated
for directions on return authorization by calling 800-284-8633 ext. 215. **** Sagent Pharma - Consumer/Patient Level Recall - Lot M813513 *** KETOR TRO SDV 60MG/2ML SAG 25, NDC # 25021070102, Econo # 3250149.
Please contact Sagent Customer Service at 1-866-625-1618 option 1 for questions.

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | | R X | | I D | | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00003-0371-13 | 362-8203 | 7135027366 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▆▆ | K | ▆▆ | |
| | | | | | Lot :AAZ9379 Exp date :01/31/2022 | | | | | | |
| 00003-0371-13 | 362-8203 | 7135027366 | 3 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▆▆ | K | ▆▆ | |
| | | | | | Lot :AAZ9379 Exp date :01/31/2022 | | | | | | |

**SUMMARY**

# McKESSON

**Invoice**

| | |
|---|---|
| | 7136251814 |
| Billing Date: | 05/22/2019 |
| PO#: | 717052219 |

**DC:**
McKesson Plasma & Biologics LLC

**Phone:** 1-877-625-2566
**DEA:**

| 507908 | DD | 001 | 2 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

**BILL TO:**
HAHNEMANN UNIV HSP MPB

**SHIP TO:**
HAHNEMANN UNIV HSP MPB

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

TOTAL RX PURCHASES:  $4,494.55        TOTAL CONTRACT PURCHASES:  $4,494.55
TOTAL OTC PURCHASES:  $0.00          TOTAL NON CONTRACT PURCHASES:  $0.00

**NET PAYABLE BY STATEMENT DATE 07/19/2019:**  $4,494.55
**GROSS PAYABLE AFTER STATEMENT DATE 07/19/2019:**  $4,586.28

| Lines | Cases | Pieces | |
|---|---|---|---|
| 0 | 0 | 0 | This invoice is payable to **McKesson Plasma & Biologics LLC 16578 Collections Center Drive CHICAGO IL 60693** |

Claims must be made within 5 days and show date of invoice

# McKESSON

## Invoice

| | |
|---|---|
| | 7135461015 |
| Billing Date: | 05/17/2019 |
| PO#: | 717051719 |

McKesson Plasma and Biologics LLC
2615 Medical Center Parkway,
Suite 1580,
Murfreesboro,TN,37129

**SHIP FROM:**
4100 Quest Way
Memphis TN  38115

**Phone:**   1-877-625-2566
**DEA:**

**BILL TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN A/P
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**SHIP TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN PHARMACY
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**DEA:**   BH6123448
**PHCY:**   HP418082L

The prices on this invoice may be subject to rebates, credits and other price adjustments   You are obligated to properly disclose and appropriately reflect all discounts, including rebates, in claims and costs submitted to federal and state government health care programs (including Medicare and Medicaid) and to provide this invoice and other discount documentation to government authorities on request, in accordance with all applicable laws and regulations, including 42 USC 1320a-7b(b)and the discount safe harbor  In addition, the purchase of products hereunder may qualify customer for discounts on certain purchases made under a distribution agreement between customer and McKesson Corporation

| 507908 | DD | 001 | 1 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

**** Torrent Pharma - Consumer/Patient Level Recall - Various Lots ****
LOSARTAN, LOSARTAN HCTZ, LOSARTAN P/HCTZ, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-037C). Contact Qualanex at 1-888-280-2040 to return product. **** AvKare Pharma - Consumer/Patient Level Recall - Various Lots **** LOSARTAN HCTZ, LOSARTAN POT, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-064). Contact AvKare at 931-292-6222 to return product. **** Alvogen Pharma - Consumer/Patient Level Recall -Lot # 180073 & 180060 **** FENTANYL TDS 12MCG/H ALVO 5@, NDC # 47781042347, Econo # 3620986. Please contact Qualanex at 888-504-2012. **** Pfizer Pharma - Consumer/Patient Level Recall - Lot # S97473 **** THERMAC 8HR BACK&HIP LG/XLG  2, NDC # 00573301003, Econo # 1136811. Please return impacted product to McKesson. **** Golden State Medical Supply - Consumer/Patient Level Recall - Various Lots **** LOSARTAN POT, Various NDC #s, Various Econo #s.Please see full recall notice on McKesson Connect (RC 19-075). Contact GSMS incorporated
for directions on return authorization by calling 800-284-8633 ext. 215. **** Sagent Pharma - Consumer/Patient Level Recall - Lot M813513 *** KETOR TRO SDV 60MG/2ML SAG 25, NDC # 25021070102, Econo # 3250149.
Please contact Sagent Customer Service at 1-866-625-1618 option 1 for questions.

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | | R X | | | | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00003-0371-13 | 362-8203 | 1098132473 | 3 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | K | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 1098132473 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | K | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 1098132473 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | K | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 1098132473 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | K | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 1098132473 | 3 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | K | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 1098132473 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | K | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 1098132473 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 1098132473 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | K | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 1098132473 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | K | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 1098132473 | 3 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▇ | K | ▇ | |
| | | | | | Lot :AAZ3022 Exp date :10/31/2021 | | | | | | |

# McKESSON

## Invoice

| | | |
|---|---|---|
| | Billing Date: | 7135461015 |
| | Billing Date: | 05/17/2019 |
| | PO#: | 717051719 |

**DC:**
McKesson Plasma & Biologics LLC

**Phone:** 1-877-625-2566
**DEA:**

| 507908 | DD | 001 | 2 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

**BILL TO:**
HAHNEMANN UNIV HSP MPB

**SHIP TO:**
HAHNEMANN UNIV HSP MPB

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

**SUMMARY**

| | | | |
|---|---|---|---|
| TOTAL RX PURCHASES: | $20,674.93 | TOTAL CONTRACT PURCHASES: | $20,674.93 |
| TOTAL OTC PURCHASES: | $0.00 | TOTAL NON CONTRACT PURCHASES: | $0.00 |

**NET PAYABLE BY STATEMENT DATE 07/12/2019:** $20,674.93
**GROSS PAYABLE AFTER STATEMENT DATE 07/12/2019:** $21,096.87

| Lines | Cases | Pieces |
|---|---|---|
| 0 | 0 | 0 |

This invoice is payable to **McKesson Plasma & Biologics LLC 16578 Collections Center Drive CHICAGO IL 60693**
Claims must be made within 5 days and show date of invoice

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  507908

**Contract:**

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**    05/16/2019

**Invoice Number:**    4000170935

**Printed:**        05/16/2019

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000170935 | Service Charge | Past Due Bal | 64.21 |

3700002715

**Date Due:**    05/16/2019

**Net Amount Due if Paid on Time:**    64.21

**Gross Amount Due if Paid Late:**    64.21

# MᶜKESSON

## RESIDUAL INVOICE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  507908

**Contract:**  7122672671

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**  05/16/2019

**Printed:**  05/16/2019

**Invoice Number:**  010  0061215002

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| CK34623 | 7122672671 | 7122672671 | PAYMENT RECEIVED BEYOND DUE DATE | 73.38 |

100061215

**Date Due:**  05/03/2019

**Net Amount Due if Paid on Time:**  73.38

**Gross Amount Due if Paid Late:**  73.38

# MCKESSON

**Invoice**

Page 89 of 204    7134216547
Billing Date:    05/11/2019
PO#:    717051119

McKesson Plasma and Biologics LLC
2615 Medical Center Parkway,
Suite 1580,
Murfreesboro,TN,37129

**SHIP FROM:**
4100 Quest Way
Memphis TN  38115

**Phone:**    1-877-625-2566
**DEA:**

**BILL TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN A/P
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**SHIP TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN PHARMACY
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**DEA:**    BH6123448
**PHCY:**    HP418082L

| 507908 | DD | 001 | 1 of 1 |
|---|---|---|---|
| Customer | Route | Stop | Page |

The prices on this invoice may be subject to rebates, credits and other price adjustments   You are obligated to properly disclose and appropriately reflect all discounts, including rebates, in claims and costs submitted to federal and state government health care programs (including Medicare and Medicaid) and to provide this invoice and other discount documentation to government authorities on request, in accordance with all applicable laws and regulations, including 42 USC 1320a-7b(b)and the discount safe harbor  In addition, the purchase of products hereunder may qualify customer for discounts on certain purchases made under a distribution agreement between customer and McKesson Corporation

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

**** Torrent Pharma - Consumer/Patient Level Recall - Various Lots ****
LOSARTAN, LOSARTAN HCTZ, LOSARTAN P/HCTZ, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-037C). Contact Qualanex at 1-888-280-2040 to return product. **** AvKare
Pharma - Consumer/Patient Level Recall - Various Lots **** LOSARTAN HCTZ, LOSARTAN POT, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-064). Contact AvKare at 931-
292-6222 to return product. **** Alvogen Pharma - Consumer/Patient Level Recall -Lot # 180073 & 180060 **** FENTANYL TDS 12MCG/H ALVO 5@, NDC # 47781042347, Econo # 3620986. Please contact Qualanex at 888-
504-2012. **** Pfizer Pharma - Consumer/Patient Level Recall - Lot # S97473 **** THERMAC 8HR BACK&HIP LG/XLG  2, NDC # 00573301003, Econo # 1136811. Please return impacted product to McKesson. **** Golden
State Medical Supply - Consumer/Patient Level Recall - Various Lots **** LOSARTAN POT, Various NDC #s, Various Econo #s.Please see full recall notice on McKesson Connect (RC 19-075).
Contact GSMS incorporated
for directions on return authorization by calling 800-284-8633 ext. 215.

| 353-8352 | 353-8352 | 123819878 | 1 | EA | MPB SATURDAY DELIVERY FEE | ▇ | | | | ▇ | |

**NET PAYABLE BY STATEMENT DATE 07/12/2019:**    $75.00
**GROSS PAYABLE AFTER STATEMENT DATE 07/12/2019:**    $76.53

| Lines | Cases | Pieces | |
|---|---|---|---|
| 0 | 0 | 0 | This invoice is payable to  **McKesson Plasma & Biologics LLC 16578 Collections Center Drive CHICAGO IL 60693**  Claims must be made within 5 days and show date of invoice |

# McKESSON

## Invoice

| | | |
|---|---|---|
| | Invoice #: | 7134199223 |
| | Billing Date: | 05/10/2019 |
| | PO#: | 717051119 |

McKesson Plasma and Biologics LLC
2615 Medical Center Parkway,
Suite 1580,
Murfreesboro,TN,37129

**SHIP FROM:**
4100 Quest Way
Memphis TN  38115

**Phone:**  1-877-625-2566
**DEA:**

| 507908 | DD | 001 | 1 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

**BILL TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN A/P
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**SHIP TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN PHARMACY
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**DEA:**  BH6123448
**PHCY:**  HP418082L

The prices on this invoice may be subject to rebates, credits and other price adjustments   You are obligated to properly disclose and appropriately reflect all discounts, including rebates, in claims and costs submitted to federal and state government health care programs (including Medicare and Medicaid) and to provide this invoice and other discount documentation to government authorities on request, in accordance with all applicable laws and regulations, including 42 USC 1320a-7b(b)and the discount safe harbor  In addition, the purchase of products hereunder may qualify customer for discounts on certain purchases made under a distribution agreement between customer and McKesson Corporation

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

**** Torrent Pharma - Consumer/Patient Level Recall - Various Lots ****
LOSARTAN, LOSARTAN HCTZ, LOSARTAN P/HCTZ, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-037C). Contact Qualanex at 1-888-280-2040 to return product. **** AvKare
Pharma - Consumer/Patient Level Recall - Various Lots **** LOSARTAN HCTZ, LOSARTAN POT, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-064). Contact AvKare at 931-292-6222 to return product. **** Alvogen Pharma - Consumer/Patient Level Recall -Lot # 180073 & 180060 **** FENTANYL TDS 12MCG/H ALVO 5@, NDC # 47781042347, Econo # 3620986. Please contact Qualanex at 888-504-2012. **** Pfizer Pharma - Consumer/Patient Level Recall - Lot # S97473 **** THERMAC 8HR BACK&HIP LG/XLG  2, NDC # 00573301003, Econo # 1136811. Please return impacted product to McKesson. **** Golden
State Medical Supply - Consumer/Patient Level Recall - Various Lots **** LOSARTAN POT, Various NDC #s, Various Econo #s.Please see full recall notice on McKesson Connect (RC 19-075). Contact GSMS incorporated
for directions on return authorization by calling 800-284-8633 ext. 215.

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00003-0371-13 | 362-8203 | 7131704121 | 3 | EA | MPB NULOJIX 250MG VIAL 1 Lot :AAZ9378 Exp date :10/31/2021 | | R | ▉ | K | ▉ | |
| 00003-0371-13 | 362-8203 | 7131704121 | 2 | EA | MPB NULOJIX 250MG VIAL 1 Lot :AAZ9378 Exp date :10/31/2021 | | R | ▉ | K | ▉ | |
| 00003-0371-13 | 362-8203 | 7131704121 | 3 | EA | MPB NULOJIX 250MG VIAL 1 Lot :AAZ9378 Exp date :10/31/2021 | | R | ▉ | K | ▉ | |

**SUMMARY**

# MCKESSON

**Invoice**

| | | | 7134199223 |
|---|---|---|---|
| Invoice #: | | | |
| Billing Date: | | | 05/10/2019 |
| PO#: | | | 717051119 |

**DC:**
McKesson Plasma & Biologics LLC

**Phone:** 1-877-625-2566
**DEA:**

**BILL TO:**
HAHNEMANN UNIV HSP MPB

**SHIP TO:**
HAHNEMANN UNIV HSP MPB

| 507908 | DD | 001 | 2 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

| NDC/UPC# | ITEM# | DEL DOC# | QTY UM | ITEM DESCRIPTION | AWP OR R RETAIL X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|

|  | TOTAL RX PURCHASES: | $7,191.28 |  | TOTAL CONTRACT PURCHASES: | $7,191.28 |
|---|---|---|---|---|---|
|  | TOTAL OTC PURCHASES: | $0.00 |  | TOTAL NON CONTRACT PURCHASES: | $0.00 |

**NET PAYABLE BY STATEMENT DATE 07/05/2019:** $7,191.28

**GROSS PAYABLE AFTER STATEMENT DATE 07/05/2019:** $7,338.04

| Lines | Cases | Pieces |
|---|---|---|
| 0 | 0 | 0 |

This invoice is payable to **McKesson Plasma & Biologics LLC 16578 Collections Center Drive CHICAGO IL 60693**
Claims must be made within 5 days and show date of invoice

# MCKESSON

## Invoice

| | | 7134199222 |
|---|---|---|
| | Billing Date: | 05/10/2019 |
| | PO#: | 71705919 |

McKesson Plasma and Biologics LLC
2615 Medical Center Parkway,
Suite 1580,
Murfreesboro,TN,37129

**SHIP FROM:**
4100 Quest Way
Memphis TN  38115

**Phone:**  1-877-625-2566
**DEA:**

**BILL TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN A/P
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**SHIP TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN PHARMACY
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**DEA:**  BH6123448
**PHCY:**  HP418082L

| Customer | Route | Stop | Page |
|---|---|---|---|
| 507908 | DD | 001 | 1 of 2 |

The prices on this invoice may be subject to rebates, credits and other price adjustments   You are obligated to properly disclose and appropriately reflect all discounts, including rebates, in claims and costs submitted to federal and state government health care programs (including Medicare and Medicaid) and to provide this invoice and other discount documentation to government authorities on request, in accordance with all applicable laws and regulations, including 42 USC 1320a-7b(b)and the discount safe harbor  In addition, the purchase of products hereunder may qualify customer for discounts on certain purchases made under a distribution agreement between customer and McKesson Corporation

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

**** Torrent Pharma - Consumer/Patient Level Recall - Various Lots ****
LOSARTAN, LOSARTAN HCTZ, LOSARTAN P/HCTZ, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-037C). Contact Qualanex at 1-888-280-2040 to return product. **** AvKare
Pharma - Consumer/Patient Level Recall - Various Lots **** LOSARTAN HCTZ, LOSARTAN POT, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-064). Contact AvKare at 931-
292-6222 to return product. **** Alvogen Pharma - Consumer/Patient Level Recall -Lot # 180073 & 180060 **** FENTANYL TDS 12MCG/H ALVO 5@, NDC # 47781042347, Econo # 3620986. Please contact Qualanex at 888-
504-2012. **** Pfizer Pharma - Consumer/Patient Level Recall - Lot # S97473 **** THERMAC 8HR BACK&HIP LG/XLG  2, NDC # 00573301003, Econo # 1136811. Please return impacted product to McKesson. **** Golden
State Medical Supply - Consumer/Patient Level Recall - Various Lots **** LOSARTAN POT, Various NDC #s, Various Econo #s.Please see full recall notice on McKesson Connect (RC 19-075). Contact GSMS incorporated
for directions on return authorization by calling 800-284-8633 ext. 215.

| 00003-0371-13 | 362-8203 | 7131704121 | 3 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 3 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 3 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | ▮ | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |
| 00003-0371-13 | 362-8203 | 7131704121 | 2 | EA | MPB NULOJIX 250MG VIAL 1 | | R | ▮ | K | ▮ | |
| | | | | | Lot :AAZ9378 Exp date :10/31/2021 | | | | | | |

# MCKESSON

## Invoice

Doc 1908-2   Filed 11/19/20

|  | 7134199222 |
|---|---|
| Billing Date: | 05/10/2019 |
| PO#: | 71705919 |

**DC:**
McKesson Plasma & Biologics LLC

**Phone:** 1-877-625-2566
**DEA:**

**BILL TO:**
HAHNEMANN UNIV HSP MPB

**SHIP TO:**
HAHNEMANN UNIV HSP MPB

| 507908 | DD | 001 | 2 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SUMMARY

| TOTAL RX PURCHASES: | $22,472.75 | TOTAL CONTRACT PURCHASES: | $22,472.75 |
|---|---|---|---|
| TOTAL OTC PURCHASES: | $0.00 | TOTAL NON CONTRACT PURCHASES: | $0.00 |

**NET PAYABLE BY STATEMENT DATE 07/05/2019:** $22,472.75
**GROSS PAYABLE AFTER STATEMENT DATE 07/05/2019:** $22,931.38

| Lines | Cases | Pieces |
|---|---|---|
| 0 | 0 | 0 |

This invoice is payable to **McKesson Plasma & Biologics LLC 16578 Collections Center Drive CHICAGO IL 60693**
Claims must be made within 5 days and show date of invoice

# McKESSON

## Invoice

| | | | 7132756446 |
|---|---|---|---|
| | | Billing Date: | 05/02/2019 |
| | | PO#: | 71705219 |

McKesson Plasma and Biologics LLC
2615 Medical Center Parkway,
Suite 1580,
Murfreesboro, TN, 37129

**SHIP FROM:**
4100 Quest Way
Memphis TN  38115

**Phone:**  1-877-625-2566
**DEA:**

**BILL TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN A/P
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**SHIP TO:**
HAHNEMANN UNIV HSP MPB
ATTN: ATTN PHARMACY
BROAD AND VINE STREETS
PHILADELPHIA PA  19102

**DEA:**  BH6123448
**PHCY:**  HP418082L

The prices on this invoice may be subject to rebates, credits and other price adjustments   You are obligated to properly disclose and appropriately reflect all discounts, including rebates, in claims and costs submitted to federal and state government health care programs (including Medicare and Medicaid) and to provide this invoice and other discount documentation to government authorities on request, in accordance with all applicable laws and regulations, including 42 USC 1320a-7b(b)and the discount safe harbor  In addition, the purchase of products hereunder may qualify customer for discounts on certain purchases made under a distribution agreement between customer and McKesson Corporation

| 507908 | DD | 001 | 1 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

**** Torrent Pharma - Consumer/Patient Level Recall - Various Lots ****
LOSARTAN, LOSARTAN HCTZ, LOSARTAN P/HCTZ, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-037C). Contact Qualanex at 1-888-280-2040 to return product. **** AvKare
Pharma - Consumer/Patient Level Recall - Various Lots **** LOSARTAN HCTZ, LOSARTAN POT, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-064). Contact AvKare at 931-292-6222 to return product. **** Alvogen Pharma - Consumer/Patient Level Recall -Lot # 180073 & 180060 **** FENTANYL TDS 12MCG/H ALVO 5@, NDC # 47781042347, Econo # 3620986. Please contact Qualanex at 888-504-2012. **** Pfizer Pharma - Consumer/Patient Level Recall - Lot # S97473 **** THERMAC 8HR BACK&HIP LG/XLG  2, NDC # 00573301003, Econo # 1136811. Please return impacted product to McKesson. **** Golden
State Medical Supply - Consumer/Patient Level Recall - Various Lots **** LOSARTAN POT, Various NDC #s, Various Econo #s.Please see full recall notice on McKesson Connect (RC 19-075).
Contact GSMS incorporated
for directions on return authorization by calling 800-284-8633 ext. 215.

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | R X | | H M |
|---|---|---|---|---|---|---|---|---|
| 00003-0371-13 | 362-8203 | 7890109334 | 2 | EA | MPB NULOJIX 250MG VIAL 1<br>Lot :AAZ3022 Exp date :10/31/2021 | R | K | |
| 00003-0371-13 | 362-8203 | 7890109334 | 2 | EA | MPB NULOJIX 250MG VIAL 1<br>Lot :AAZ3022 Exp date :10/31/2021 | R | K | |
| 00003-0371-13 | 362-8203 | 7890109334 | 2 | EA | MPB NULOJIX 250MG VIAL 1<br>Lot :AAZ3022 Exp date :10/31/2021 | R | K | |
| 00003-0371-13 | 362-8203 | 7890109334 | 4 | EA | MPB NULOJIX 250MG VIAL 1<br>Lot :AAZ3022 Exp date :10/31/2021 | R | K | |
| 00003-0371-13 | 362-8203 | 7890109334 | 2 | EA | MPB NULOJIX 250MG VIAL 1<br>Lot :AAZ3022 Exp date :10/31/2021 | R | K | |
| 00003-0371-13 | 362-8203 | 7890109334 | 2 | EA | MPB NULOJIX 250MG VIAL 1<br>Lot :AAZ3022 Exp date :10/31/2021 | R | K | |
| 00003-0371-13 | 362-8203 | 7890109334 | 2 | EA | MPB NULOJIX 250MG VIAL 1<br>Lot :AAZ3022 Exp date :10/31/2021 | R | K | |
| 00003-0371-13 | 362-8203 | 7890109334 | 2 | EA | MPB NULOJIX 250MG VIAL 1<br>Lot :AAZ3022 Exp date :10/31/2021 | R | K | |

# McKESSON

## Invoice

| | | |
|---|---|---|
| | Phone: | 7132756446 |
| | Billing Date: | 05/02/2019 |
| | PO#: | 71705219 |

**DC:**
McKesson Plasma & Biologics LLC

**Phone:** 1-877-625-2566
**DEA:**

**BILL TO:**
HAHNEMANN UNIV HSP MPB

**SHIP TO:**
HAHNEMANN UNIV HSP MPB

| 507908 | DD | 001 | 2 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

### SUMMARY

| | | | |
|---|---|---|---|
| TOTAL RX PURCHASES: | $16,180.38 | TOTAL CONTRACT PURCHASES: | $16,180.38 |
| TOTAL OTC PURCHASES: | $0.00 | TOTAL NON CONTRACT PURCHASES: | $0.00 |

**NET PAYABLE BY STATEMENT DATE 06/28/2019:** $16,180.38
**GROSS PAYABLE AFTER STATEMENT DATE 06/28/2019:** $16,510.59

| Lines | Cases | Pieces | |
|---|---|---|---|
| 0 | 0 | 0 | This invoice is payable to **McKesson Plasma & Biologics LLC 16578 Collections Center Drive CHICAGO IL 60693** |

Claims must be made within 5 days and show date of invoice

# RESIDUAL INVOICE

**McKESSON**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  507908

**Contract:**  7107861372

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**  03/04/2019

**Printed:**  03/04/2019

**Invoice Number:**  010  0435052002

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| CK31629 | 7107861372 | 7170121318 | PAYMENT RECEIVED BEYOND DUE DATE | 165.11 |

| | |
|---|---|
| **Date Due:** | 02/08/2019 |
| **Net Amount Due if Paid on Time:** | 165.11 |
| **Gross Amount Due if Paid Late:** | 165.11 |

100435052

# MSKESSON

# **RESIDUAL INVOICE**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

**Mail to:**
McKesson Plasma & Biologics LL
   16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  507908

**Contract:**     7104630184

HAHNEMANN UNIV HSP MPB
AMERICAN ACADEMIC
A/P
PO BOX 42487
PHILADELPHIA PA  19101

**Invoice Date:**     01/31/2019

**Printed:**          01/31/2019

**Invoice Number:**    010  0394780002

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| CK29731 | 7104630184 | 7104630184 | PAYMENT RECEIVED BEYOND DUE DATE | 330.21 |

|  |  |
|---|---|
| **Date Due:** | 11/26/2018 |
| **Net Amount Due if Paid on Time:** | 330.21 |
| **Gross Amount Due if Paid Late:** | 330.21 |

100394780

**MCKESSON**

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 06/16/2020

**Invoice Number:** 4000194193

**Printed:** 06/16/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000194193 | Service Charge | Past Due Bal | 35.96 |

| | |
|---|---|
| **Date Due:** | 06/16/2020 |
| **Net Amount Due if Paid on Time:** | 35.96 |
| **Gross Amount Due if Paid Late:** | 35.96 |

3700004768

# McKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 06/01/2020

**Printed:** 06/01/2020

**Invoice Number:** 4000192981

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000192981 | Service Charge | Past Due Bal | 35.96 |

3700003606

**Date Due:** 06/01/2020

**Net Amount Due if Paid on Time:** 35.96

**Gross Amount Due if Paid Late:** 35.96

# MCKESSON

## SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 05/16/2020

**Printed:** 05/16/2020

**Invoice Number:** 4000192098

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000192098 | Service Charge | Past Due Bal | 35.96 |

**Date Due:** 05/16/2020

**Net Amount Due if Paid on Time:** 35.96

3700002592

**Gross Amount Due if Paid Late:** 35.96

# MCKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 05/01/2020

**Invoice Number:** 4000191209

**Printed:** 05/01/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000191209 | Service Charge | Past Due Bal | 35.96 |

| | |
|---|---|
| **Date Due:** | 05/01/2020 |
| **Net Amount Due if Paid on Time:** | 35.96 |
| **Gross Amount Due if Paid Late:** | 35.96 |

3700001704

# McKESSON

## SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 04/16/2020

**Invoice Number:** 4000190011

**Printed:** 04/16/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000190011 | Service Charge | Past Due Bal | 35.96 |

| | |
|---|---|
| **Date Due:** | 04/16/2020 |
| **Net Amount Due if Paid on Time:** | 35.96 |
| **Gross Amount Due if Paid Late:** | 35.96 |

3700001276

# MCKESSON

## SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:**    04/01/2020

**Invoice Number:**    4000189073

**Printed:**    04/01/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000189073 | Service Charge | Past Due Bal | 35.96 |

3700000324

| | |
|---|---|
| **Date Due:** | 04/01/2020 |
| **Net Amount Due if Paid on Time:** | 35.96 |
| **Gross Amount Due if Paid Late:** | 35.96 |

# MCKESSON

## SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 03/16/2020

**Printed:** 03/16/2020

**Invoice Number:** 4000187944

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000187944 | Service Charge | Past Due Bal | 35.96 |

| | |
|---|---|
| **Date Due:** | 03/16/2020 |
| **Net Amount Due if Paid on Time:** | 35.96 |
| **Gross Amount Due if Paid Late:** | 35.96 |

3700020151

# MCKESSON

## SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 03/02/2020

**Invoice Number:** 4000187295

**Printed:** 03/02/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000187295 | Service Charge | Past Due Bal | 35.96 |

**Date Due:** 03/02/2020

**Net Amount Due if Paid on Time:** 35.96

3700019293

**Gross Amount Due if Paid Late:** 35.96

# McKESSON

## SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 02/17/2020

**Printed:** 02/17/2020

**Invoice Number:** 4000186453

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000186453 | Service Charge | Past Due Bal | 35.96 |

**Date Due:** 02/17/2020

**Net Amount Due if Paid on Time:** 35.96

3700018340

**Gross Amount Due if Paid Late:** 35.96

# McKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 02/01/2020

**Invoice Number:** 4000185509

**Printed:** 02/01/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000185509 | Service Charge | Past Due Bal | 35.96 |

**Date Due:** 02/01/2020

**Net Amount Due if Paid on Time:** 35.96

3700017581

**Gross Amount Due if Paid Late:** 35.96

# MCKESSON

# SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 01/16/2020

**Printed:** 01/16/2020

**Invoice Number:** 4000184448

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000184448 | Service Charge | Past Due Bal | 35.96 |

|  | **Date Due:** | 01/16/2020 |
|---|---|---|
|  | **Net Amount Due if Paid on Time:** | 35.96 |
| 3700016589 | **Gross Amount Due if Paid Late:** | 35.96 |

# McKESSON

# SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 01/01/2020

**Invoice Number:** 4000183367

**Printed:** 01/01/2020

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000183367 | Service Charge | Past Due Bal | 35.96 |

| | |
|---|---|
| **Date Due:** | 01/01/2020 |
| **Net Amount Due if Paid on Time:** | 35.96 |
| **Gross Amount Due if Paid Late:** | 35.96 |

3700015547

# McKESSON

## SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 12/01/2019

**Invoice Number:** 4000182378

**Printed:** 12/01/2019

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000182378 | Service Charge | Past Due Bal | 35.96 |

3700014272

| | |
|---|---|
| **Date Due:** | 12/01/2019 |
| **Net Amount Due if Paid on Time:** | 35.96 |
| **Gross Amount Due if Paid Late:** | 35.96 |

# McKESSON

## SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

**Mail to:**
McKesson Plasma & Biologics LL
   16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:**  11/16/2019

**Printed:**  11/16/2019

**Invoice Number:**  4000181282

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000181282 | Service Charge | Past Due Bal | 35.96 |

3700013370

**Date Due:**  11/16/2019

**Net Amount Due if Paid on Time:**  35.96

**Gross Amount Due if Paid Late:**  35.96

# MCKESSON

## SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 11/01/2019

**Printed:** 11/01/2019

**Invoice Number:** 4000180322

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000180322 | Service Charge | Past Due Bal | 35.96 |

| | |
|---|---|
| **Date Due:** | 11/01/2019 |
| **Net Amount Due if Paid on Time:** | 35.96 |
| **Gross Amount Due if Paid Late:** | 35.96 |

3700012556

# MCKESSON

## SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 10/16/2019

**Invoice Number:** 4000179571

**Printed:** 10/16/2019

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000179571 | Service Charge | Past Due Bal | 35.96 |

**Date Due:** 10/16/2019

**Net Amount Due if Paid on Time:** 35.96

3700011707

**Gross Amount Due if Paid Late:** 35.96

# MCKESSON

## SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 10/01/2019

**Printed:** 10/01/2019

**Invoice Number:** 4000178942

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000178942 | Service Charge | Past Due Bal | 35.96 |

3700010906

**Date Due:** 10/01/2019

**Net Amount Due if Paid on Time:** 35.96

**Gross Amount Due if Paid Late:** 35.96

# McKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 09/16/2019

**Invoice Number:** 4000178139

**Printed:** 09/16/2019

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000178139 | Service Charge | Past Due Bal | 25.93 |

| | |
|---|---|
| **Date Due:** | 09/16/2019 |
| **Net Amount Due if Paid on Time:** | 25.93 |
| **Gross Amount Due if Paid Late:** | 25.93 |

3700009986

# McKESSON

# SERVICE CHARGE

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
    16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 09/02/2019

**Printed:** 09/02/2019

**Invoice Number:** 4000176965

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000176965 | Service Charge | Past Due Bal | 103.28 |

**Date Due:** 09/02/2019

**Net Amount Due if Paid on Time:** 103.28

3700009071

**Gross Amount Due if Paid Late:** 103.28

# McKESSON

## Credit Memo

McKesson Plasma & Biologics LLC
4100 Quest Way
Memphis TN  38115

**Phone:**  855/625-4677
**DEA:**

**BILL TO:**
ST CHRISTOPHER GPO MPB
ATTN: ATTN A/P
PO BOX 26968
PHILADELPHIA PA  19134

**DEA:**  BS6123436
**PHCY:**  HP418173L

| Billing No.: | 7153570218 |
|---|---|
| Billing Date: | 08/28/2019 |
| PO#: | ENTYVIO PURCHASE 7/17 |
| Ref Doc#: | 6540853890 |
| Ref Doc Date: | 08/28/2019 |
| Order Reason: | MPB-Customer Satisfaction(Saleable) |

| 498838 | DD | 001 | 1 of 1 |
|---|---|---|---|
| Customer | Route | Stop | Page |

The prices on this invoice may be subject to rebates, credits and other price adjustments   You are obligated to properly disclose and appropriately reflect all discounts, including rebates, in claims and costs submitted to federal and state government health care programs (including Medicare and Medicaid) and to provide this invoice and other discount documentation to government authorities on request, in accordance with all applicable laws and regulations, including 42 USC 1320a-7b(b)and the discount safe harbor

| REF INV DATE | REF INV# | DEPT | ITEM# | QTY | UM | ITEM DESCRIPTION | EXTENDED AMOUNT |
|---|---|---|---|---|---|---|---|
| 07/17/2019 | 7145945933 | ZX | 292-1047 | 1 | EA | MPB EMERGENCY COURIER FEE | 6,600.00 |

**NET CREDIT AMOUNT:**                    $6,600.00

# MSKESSON

## SERVICE CHARGE

**Mail to:**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

McKesson Plasma & Biologics LL
   16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA 19134

| | |
|---|---|
| **Invoice Date:** | 08/16/2019 |
| **Printed:** | 08/16/2019 |

**Invoice Number:** 4000176462

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| N/A | 4000176462 | Service Charge | Past Due Bal | 179.71 |

|  |  |
|---|---|
| **Date Due:** | 08/16/2019 |
| **Net Amount Due if Paid on Time:** | 179.71 |
| **Gross Amount Due if Paid Late:** | 179.71 |

3700008312

# MCKESSON

# RESIDUAL CREDIT

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
 16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:** 7146431739

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 08/14/2019

**Printed:** 08/14/2019

**Invoice Number:** 010 0181906001

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| CK081319WIRE | 7146431739 | 7146431739 | PAID EARNED DISCOUNT AMOUNT | 132.02- |

100181906

| | |
|---|---|
| **Date Due:** | 07/19/2019 |
| **Net Amount Due if Paid on Time:** | 132.02- |
| **Gross Amount Due if Paid Late:** | 132.02- |

# MᶜKESSON

## RESIDUAL CREDIT

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN  37086

**Mail to:**
McKesson Plasma & Biologics LL
   16578 Collections Center Drive
CHICAGO IL 60693

**Customer:**  498838

**Contract:**

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:**  07/09/2019

**Printed:**  07/09/2019

**Invoice Number:**  010  0130570001

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| CK35659 | | 4000146137 | INV.# REFERENCED WAS PREVIOUSLY CLEARED | 92.85- |

|  |  |
|---|---|
| **Date Due:** | 06/12/2019 |
| **Net Amount Due if Paid on Time:** | 92.85- |
| **Gross Amount Due if Paid Late:** | 92.85- |

100130570

# RESIDUAL CREDIT

**McKESSON**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:** 7135791296

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 06/13/2019

**Invoice Number:** 010  0098281003

**Printed:** 06/13/2019

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| CK35659 | 7135791296 | 7135791296 | PAID EARNED DISCOUNT AMOUNT | 2,395.98- |

100098281

| | |
|---|---|
| **Date Due:** | 05/20/2019 |
| **Net Amount Due if Paid on Time:** | 2,395.98- |
| **Gross Amount Due if Paid Late:** | 2,395.98- |

# McKESSON

## Invoice

McKesson Plasma and Biologics LLC
2615 Medical Center Parkway,
Suite 1580,
Murfreesboro,TN,37129

**SHIP FROM:**
4100 Quest Way
Memphis TN  38115

**Phone:**  1-877-625-2566
**DEA:**

**BILL TO:**
ST CHRISTOPHER GPO MPB
ATTN: ATTN A/P
PO BOX 26968
PHILADELPHIA PA  19134

**SHIP TO:**
ST CHRISTOPHER GPO MPB
ATTN: ATTN 2ND FL PHARM
160 E. ERIE AVENUE
PHILADELPHIA PA  19134

**DEA:**  BS6123436
**PHCY:**  HP418173L

Invoice No.      7136252178
Billing Date:    05/22/2019
PO#:             5-22-19

| 498838 | DD | 001 | 1 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

The prices on this invoice may be subject to rebates, credits and other price adjustments   You are obligated to properly disclose and appropriately reflect all discounts, including rebates, in claims and costs submitted to federal and state government health care programs (including Medicare and Medicaid) and to provide this invoice and other discount documentation to government authorities on request, in accordance with all applicable laws and regulations, including 42 USC 1320a-7b(b)and the discount safe harbor  In addition, the purchase of products hereunder may qualify customer for discounts on certain purchases made under a distribution agreement between customer and McKesson Corporation

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

**** Torrent Pharma - Consumer/Patient Level Recall - Various Lots ****
LOSARTAN, LOSARTAN HCTZ, LOSARTAN P/HCTZ, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-037C). Contact Qualanex at 1-888-280-2040 to return product. **** AvKare Pharma - Consumer/Patient Level Recall - Various Lots **** LOSARTAN HCTZ, LOSARTAN POT, Various NDC #s, Various Econo #s. Please see full recall notice on McKesson Connect (RC 19-064). Contact AvKare at 931-292-6222 to return product. **** Alvogen Pharma - Consumer/Patient Level Recall -Lot # 180073 & 180060 **** FENTANYL TDS 12MCG/H ALVO 5@, NDC # 47781042347, Econo # 3620986. Please contact Qualanex at 888-504-2012. **** Pfizer Pharma - Consumer/Patient Level Recall - Lot # S97473 **** THERMAC 8HR BACK&HIP LG/XLG  2, NDC # 00573301003, Econo # 1136811. Please return impacted product to McKesson. **** Golden State Medical Supply - Consumer/Patient Level Recall - Various Lots **** LOSARTAN POT, Various NDC #s, Various Econo #s.Please see full recall notice on McKesson Connect (RC 19-075). Contact GSMS incorporated for directions on return authorization by calling 800-284-8633 ext. 215. **** Sagent Pharma - Consumer/Patient Level Recall - Lot M813513 *** KETOR TRO SDV 60MG/2ML SAG 25, NDC # 25021070102, Econo # 3250149. Please contact Sagent Customer Service at 1-866-625-1618 option 1 for questions.

| 64764-0300-20 | 278-2639 | 123834273 | 2 | EA | MPB ENTYVIO SDV 300MG 20ML | | R |  | | | |
| | | | | | Lot :C27667 Exp date :07/31/2021 | | | | | | |

**SUMMARY**

# MCKESSON

**Invoice**

| | |
|---|---|
| **Phone:** | 1-877-625-2566 |
| **DEA:** | |

**DC:**
McKesson Plasma & Biologics LLC

| | | | | |
|---|---|---|---|---|
| | | | Invoice No | 7136252178 |
| | | | Billing Date: | 05/22/2019 |
| | | | PO#: | 5-22-19 |

| 498838 | DD | 001 | 2 of 2 |
|---|---|---|---|
| Customer | Route | Stop | Page |

**BILL TO:**
ST CHRISTOPHER GPO MPB

**SHIP TO:**
ST CHRISTOPHER GPO MPB

| NDC/UPC# | ITEM# | DEL DOC# | QTY | UM | ITEM DESCRIPTION | AWP OR RETAIL | R X | UNIT PRICE | I D | EXTENDED AMOUNT | H M |
|---|---|---|---|---|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| TOTAL RX PURCHASES: | $12,560.98 | |
| TOTAL OTC PURCHASES: | $0.00 | |
| TOTAL CONTRACT PURCHASES: | $0.00 |
| TOTAL NON CONTRACT PURCHASES: | $12,560.98 |

**NET PAYABLE BY STATEMENT DATE 07/19/2019:**   $12,560.98
**GROSS PAYABLE AFTER STATEMENT DATE 07/19/2019:**   $12,817.33

| Lines | Cases | Pieces | |
|---|---|---|---|
| 0 | 0 | 0 | This invoice is payable to **McKesson Plasma & Biologics LLC 16578 Collections Center Drive CHICAGO IL 60693** |

Claims must be made within 5 days and show date of invoice

# **RESIDUAL INVOICE**

McK Plasma & Biologics
401 Mason Road
LA VERGNE TN 37086

**Mail to:**
McKesson Plasma & Biologics LL
16578 Collections Center Drive
CHICAGO IL 60693

**Customer:** 498838

**Contract:** 7121951211

ST CHRISTOPHER GPO MPB
AMERICAN ACADEMIC
A/P
160 E. ERIE DR
PHILADELPHIA PA  19134

**Invoice Date:** 05/16/2019

**Printed:** 05/16/2019

**Invoice Number:** 010 0061215001

| Check Number | Original Receivable Number | Order Reference | Description | Amount |
|---|---|---|---|---|
| CK34623 | 7121951211 | 030419KM | PAYMENT RECEIVED BEYOND DUE DATE | 4,392.64 |

100061215

**Date Due:** 05/03/2019

**Net Amount Due if Paid on Time:** 4,392.64

**Gross Amount Due if Paid Late:** 4,392.64

# EXHIBIT C

# EXHIBIT C

# McKESSON

**Invoice**
**Page 1 of 1**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL SURGICAL (HOUSTON)
HOUSTON #16
20710 HEMPSTEAD RD
HOUSTON,TX 77065

Bill To:    4265044

District License   7200001102
Shipped To:   4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 17364482 | Invoice Number | 37246916 |
|---|---|---|---|
| Sales Order Date | 10/01/2018 | Invoice Date | 10/03/2018 |
| PO Number | 033D-244542 | Payment Due Date | 11/17/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $400.68 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 907757 | Vendor:  GECUFF | BP CUFF 17-25CM SM ADULT | 10 | BX | 10 | ▮ | ▮ | 22.68 |
| | Vend Cat#:  SFT-A1-2A | PO LN 4 | | | | | | |
| | SHIPPED: 10/03/2018 | Houston | | | | | | |

| | STATE | COUNTY | CITY | DISTRICT | OTHER |
|---|---|---|---|---|---|
| **S A L E S   T A X** | $22.68 | $0.00 | $0.00 | $0.00 | $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $378.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $22.68 | $400.68 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 37246916 | Date | 10/03/2018 |
| | **Terms** | AR | NET 45 DAYS |
| **Pay This Amount Before** | 11/17/2018 | | $400.68 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to the sale of Products (as described below) or services (as described below) by purchaser (the entity as sophisticated intermediary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

**1.   General Terms of Sale.**

1.1.   "Standard Credit and Payment Terms.   All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.   Taxes.   All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.   Discrepancies.   Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.   Non-Disposable Products.   Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.   Freight Charges, Shipping and Handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.   Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.   Third-Party Logistics Provider Services.   If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.   Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§   All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§   All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§   Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§   The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
·   Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality. FULL CREDIT.
·   Locally stocked Products returned within thirty (30) days of date of invoice. FULL CREDIT.
·   Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice. FULL CREDIT LESS A 15% RESTOCKING CHARGE.
·   Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
·   Non-returnable Products that are returnable to the Supplier  NO CREDIT WILL BE ISSUED
§   Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.   **Chargebacks.**   In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount.  In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.   **Force Majeure**.   Except for the obligation to pay money, a party shall not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.   **Product Recommendations**.   Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION.  The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history.  Alternative products are not necessarily the lowest priced items available.

5.   **DISCLAIMER.**   SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEFECTS ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.   **LIMITATION OF LIABILITY.**   IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.   **Government Contracts**.  Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.   **No Conflict or Interference**.  Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective  contractual obligation or other commitment  or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.   **Confidential Information**.  Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.   **REPORTING AND DISCLOSURE OBLIGATIONS.**  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11.   **Controlled Substances and Other Regulations.**  If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or ordinance or any governmental requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability. If: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.   **Compliance with Laws.**  Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.   **Own Use**. All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.   **Relationship of the Parties**.  The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15.   **Governing Law**.  This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.   **WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# McKESSON

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License  3000009121
Shipped To:     4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:             1-800-866-9243

| Sales Order Number | 3789962 | Invoice Number | 22303910 |
|---|---|---|---|
| Sales Order Date | 03/02/2018 | Invoice Date | 03/05/2018 |
| PO Number | 033D-236051 | Payment Due Date | 04/19/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $425.13 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 354626 | Vendor:  MEDLNE | PAD, GROUNDING SAFETY RING (40 PO LN 1 | 3 | CS | 3 | ■ | ■ | .00 |
|  | Vend Cat#:   9165 |  |  |  |  |  |  |  |
|  | 1Z31FW670368953439 |  |  |  |  |  |  |  |
|  | SHIPPED: 03/05/2018 | Winchester |  |  |  |  |  |  |

| | | SALES TAX | | | | | |
|---|---|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $425.13 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $425.13 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Invoice**

# McKESSON

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 22303910 | Date | 03/05/2018 |
| Terms | | AR  NET 45 DAYS | |
| Pay This Amount Before | 04/19/2018 | | $425.13 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

Please Remit To:

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms and conditions of this invoice apply to all ( **"Products"** ) and/or services ( **"Services"** ) purchased by Buyer from Seller. These Terms of Sale supersede the terms and conditions of any prior documents, unless such written agreement is executed by an authorized representative of Seller, any Buyer purchase order or other document, or any oral agreement between the parties. In the event of any conflict or inconsistency between these Terms of Sale and a separate document signed by both parties, the terms of the separate document signed by both parties shall control. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course or dealing or usage of trade shall affect this invoice or be admissible to explain, modify, or contradict this invoice and the agreement arising therefrom (collectively " **Agreement** " ). For purposes of this Agreement, the term "Supplier" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1   **Credit and Payment.**   All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice, unless otherwise agreed to by the parties. Any invoiced amount remaining unpaid after thirty (30) days shall be "past due." Past due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law shall be refunded. If Buyer fails to pay any or all of the invoiced amount when due or if Buyer's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion, without further notice immediately: (i) suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to any term extended by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or deduce Buyer ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to Buyer regardless of when such payments would otherwise be due from Buyer, and/or (v) increase the prices for Products and/or Services. Any discrepancy between any order placed by Buyer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date, except for price or payment discrepancies or any claims for reimbursement, which must be reported to Seller for resolution within thirty (30) days of Seller's invoice date. Seller shall have no obligation to receive and Buyer shall hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if claim therefore is not made within said applicable ten (10) or thirty (30) day period. All requests for proof of delivery for reasons other than shipment, price or payment disputes must be made within sixty (60) days of Seller's invoice date. If the payment term due date falls on a weekend day or holiday, payment is due and payable on the succeeding business day.

2   **Chargebacks.**  In consideration of Seller allowing Buyer to purchase Products at discounted prices, Buyer agrees that seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier (" **Chargeback(s)** "). In the event Seller is denied any Chargeback from a Supplier as a result of buyer providing incomplete, inaccurate, or incorrect information to Seller or Supplier, Buyer will be liable to Seller for such Chargeback amount.

3   **Reporting and Disclosure Obligations. THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  BUYER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR.**

4   **Shipment, Risk of Loss and Title.**  Shipment of Products per routine order to Buyer and subsequent back orders related to the original shipment shall be shipped FOB Destination, except for drop shipments which shall be shipped in accordance with Supplier's shipping policies. The cost of shipment, if any, has been paid by Seller and added to this invoice. Emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, Products dropped shipped from Supplier, and orders not regularly scheduled are subject to an added shipping and handling charge determined by Seller and disclosed to Buyer prior to or at the time of order. Seller shall have the right to ship the Products at all times via its own vehicle or a carrier selected by Seller.

5   **Minimum Order Requirement.**  Minimum orders may be subject to Seller's minimum order requirement in effect and quoted at the time of order.  For orders less than such minimum order requirement or orders placed via telephone or facsimile, Seller may add to the invoice a handling charge determined by Seller and disclosed to Buyer prior to or at the time of order.

6   **Product Recommendations.**  Seller may make available to Buyer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Buyer (" **Equivalency Recommendations** ").

Buyer agrees and stipulates that in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Buyer can rely in order to make its product selection decision.  Buyer agrees and stipulates that in making product decisions Buyer is relying on its independent professional judgment.  Buyer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Buyer agrees and stipulates that it is a sophisticated user of medical products and it agrees and stipulates that it is a learned intermediary between Seller and the end user/patient.

THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE.  THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY THE BUYER'S SUPPLIER AND OTHER INDUSTRY–AVAILABLE INFORMATION.

7   **Data.**  Buyer acknowledges that Seller will provide information and reports to group purchasing organizations, Suppliers, and other third parties relating to Buyer's purchases from Seller.  Buyer hereby waives any rights of confidentiality with respect to such information to the extent necessary to allow Seller to provide such information to group purchasing organizations, Suppliers, and other third parties.

8   **Resale of Products.**  Buyer hereby certifies that it is purchasing Products from Seller for its own use.  Products are not for resale.  Buyer shall purchase Products from Seller for its own use and shall not resell or redistribute Products.

9   **Return Goods Policy.**  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy.  Seller's current Return Good Policy is as follows:

All requests for return of Products must have a return authorization number issued by Seller customer service department.

All returned Products must be:  (i) returnable to Supplier; (ii) in the original unopened packaging; and (iii) in resalable condition, unless such Products are not in original unopened packaging or resalable condition due to the fault of Seller.

Products that are:  (a) special order Products; (b) custom Products; or (c) Products not available for general or unrestricted distribution are not returnable.

The amount of credit on any given return, as described below, will be issued no later than thirty (30) days after the receipt of the merchandise and necessary documentation and the examination and inspection of such return at the local Seller distribution center.

Products shipped in error by Seller and nonconforming Products – FULL CREDIT – if returned within thirty (30) days of date of invoice.

Products shipped that are damaged or do not meet Seller standard quality – FULL CREDIT – if returned within thirty (30) days of date of invoice.

Locally stocked Products returned within thirty (30) days of date of invoice – FULL CREDIT.

Locally stocked Products returned after thirty (30) days of date of invoice – 15% RESTOCKING CHARGE.

Non-locally stocked Products that are returned within thirty (30) days of date of invoice - 15% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier).

Notwithstanding anything  above to the contrary, Buyer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

10   **Excusable Delays.**  If a party is unable, wholly or in part, by reason of an act of God or  any other reason beyond the reasonable control of the party, including unavailability of Products, to carry out its obligations hereunder (other than the obligation to make money payments), that party shall give the other party written notice thereof with reasonable particulars concerning it.  During the period of delay, the obligations of all parties hereunder (other than the obligation to make money payments), shall be suspended. The affected party shall use reasonable due diligence to continue performance as quickly as possible.

Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

11   **Taxes; Enforcement Costs.**  All amounts payable to Seller under this Agreement are exclusive of all sales, use, value-added, withholding, and other taxes and duties.  Buyer will promptly pay, and indemnify Seller against, all taxes and duties assessed in connection with any such amounts, this Agreement and its performance by any authority within or outside of the U.S., except for taxes payable on Seller's net income.

In the event it becomes necessary for either party to take action to collect any sums due or enforce any other provisions of this Agreement, the prevailing party shall be entitled to recover all costs and expenses of collection, including without limitation, reasonable attorney's fees and court costs.

12   **Time for Bringing Action.**  Any action of any kind arising out of or in any way connected with this Agreement, other than collection of outstanding payment obligations, must be commenced within one (1) year upon which the cause of action accrued.

13   **Non-Disposable Products.**  Non-disposable Products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

14   **Disclaimer.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  BUYER SHALL LOOK TO SUPPLIER OF PRODUCTS AND THE PROVIDER OF SERVICE FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

BUYER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES.  REGARDLESS OF KIND.  BUYER AGREES TO FILE SOLELY WITH SUPPLIER OF THE PRODUCTS OR THE PROVIDER OF SERVICE ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

IN NO EVENT SHALL SELLER BE LIABLE TO BUYER UNDER, IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS OR THE PROVISION OF SERVICES, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

15   **Assignment.**  Buyer shall not  assign or transfer any interest under any order accepted by Seller or delegate any obligation hereunder without the prior written consent of Seller.

16   **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the commonwealth of Virginia, without any construction or interpretation against Buyer or Seller.  Buyer and Seller irrevocably consent to the exclusive jurisdiction of the state courts of Henrico County, Virginia  and the federal courts situated in Richmond, Virginia, in connection with any action to enforce the provisions of this Agreement, to recover any damages or to obtain any other relief with respect to any matter connected with or arising from this Agreement or the  transactions contemplated  therein, including  without  limitation, breach or default  under this Agreement, or otherwise arising under or by reason of this  Agreement.

**McKESSON**

**Invoice**
Page 1 of 2

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:     4265044

District License   3000009121
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 17364482 | Invoice Number | 37153697 |
|---|---|---|---|
| Sales Order Date | 10/01/2018 | Invoice Date | 10/02/2018 |
| PO Number | 033D-244542 | Payment Due Date | 11/16/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $1,642.79 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 908251 | Vendor:  GECUFF | BP CUFF 12-19CM CHILD | 15 | BX | 15 | ■ | ■ | 34.02 |
|  | Vend Cat#:  SFT-P2-2A | PO LN 1 | | | | | | |
|  | 1Z31FW670375403206 | 1Z31FW670375412401 | | | | | | |
|  | SHIPPED: 10/02/2018 | Winchester | | | | | | |
| 907757 | Vendor:  GECUFF | BP CUFF 17-25CM SM ADULT | 15 | BX | 15 | ■ | ■ | 34.02 |
|  | Vend Cat#:  SFT-A1-2A | PO LN 2 | | | | | | |
|  | 1Z31FW670375405295 | 1Z31FW670375429886 | | | | | | |
|  | SHIPPED: 10/02/2018 | Winchester | | | | | | |
| 908251 | Vendor:  GECUFF | BP CUFF 12-19CM CHILD | 15 | BX | 6 | ■ | ■ | 13.61 |
|  | Vend Cat#:  SFT-P2-2A | PO LN 3 | | | | | | |
|  | 1Z31FW670375403206 | | | | | | | |
|  | SHIPPED: 10/02/2018 | Winchester | | | | | | |
| 907757 | Vendor:  GECUFF | BP CUFF 17-25CM SM ADULT | 15 | BX | 5 | ■ | ■ | 11.34 |
|  | Vend Cat#:  SFT-A1-2A | PO LN 4 | | | | | | |
|  | 1Z31FW670375429886 | | | | | | | |

**McKESSON**

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 37153697 | Date | 10/02/2018 |
| Terms | | AR | NET 45 DAYS |
| Pay This Amount Before | 11/16/2018 | | $1,642.79 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to all sales of Products and services (collectively, the "**Products**") purchased by the entity named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

**1.    General Terms of Sale.**

1.1.    "Standard Credit and Payment Terms.    All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements out of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time to Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.    Taxes.    All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.    Discrepancies.    Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.    Non-Disposable Products.    Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.    Freight Charges, Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.    Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.    Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.    Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).

§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.

§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.

§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.

-    Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.

-    Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.

-    Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.

-    Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).

-    Non-returnable Products  NO CREDIT WILL BE ISSUED

§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.    **Chargebacks**. In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount.  In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.    **Force Majeure**. Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.    **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

---

as sophisticated Customer can obtain the medical information directly from the intermediary between Seller and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION.  The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history.  Alternative products are not necessarily the lowest priced items available.

5.    **DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR SERVICES ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.    **LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.    **Government Contracts**.  Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.    **No Conflict or Interference**.  Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.    **Confidential Information**.  Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.    **REPORTING AND DISCLOSURE OBLIGATIONS.  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.**

11.    **Controlled Substances and Other Regulations.**  If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, ordinance, regulation, or any governmental requirement, guideline or procurement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.    **Compliance with Laws.**  Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnity and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.    **Own Use**. All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.    **Relationship of the Parties.**  The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15.    **Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.    **WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# McKESSON

**Invoice**
Page 2 of 2

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:    4265044
ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Shipped To:

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

| Invoice Number  37153697 | PO Number 033D-244542 | | Invoice Date    10/02/2018 |
|---|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| | SHIPPED: 10/02/2018 | Winchester | | | | | | |

| | | | **S A L E S   T A X** | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | **STATE** $92.99 | **COUNTY** $0.00 | **CITY** $0.00 | **DISTRICT** $0.00 | **OTHER** $0.00 | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $1,549.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $92.99 | $1,642.79 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:     4265044

District License   3000009121
Shipped To      4324957
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:              1-800-866-9243

| | | | |
|---|---|---|---|
| Sales Order Number | 5597127 | Invoice Number | 24301016 |
| Sales Order Date | 04/02/2018 | Invoice Date | 04/02/2018 |
| PO Number | 033D237180 | Payment Due Date | 05/17/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $300.10 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 684172 | Vendor:  BD | SYRINGE/NDL, INSULIN .3CC 31GX | 2 | CS | 2 | ▮ | ▮ | .00 |
| | Vend Cat#:   328440 | PO LN 1 | | | | | | |
| | 1Z31FW670369819967 | 1Z31FW670369819976 | | | | | | |
| | SHIPPED: 04/02/2018 | Winchester | | | | | | |

| SALES TAX | | | | | |
|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $300.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $300.10 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Invoice**

**McKESSON**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| | | | |
|---|---|---|---|
| Account Number | 4265044 | | |
| Document Number | 24301016 | Date | 04/02/2018 |
| Terms | | AR  NET 45 DAYS | |
| Pay This Amount Before | 05/17/2018 | | $300.10 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

Please Remit To:
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms and conditions of this invoice apply to all ( "**Products**" ) and/or services ( "**Services**" ) purchased by Buyer from Seller. These  Terms  of  Sale  supersede  the  terms  and  conditions  of  any  other  document,  or  any  oral agreement  is  executed  by  an  authorized  representative  of  Seller,  any  Buyer  purchase  order  or  other  document,  or  any  oral agreement  between  the  parties.   In  the  event  of  any  conflict  or  inconsistency  between  these  Terms  of  Sale  and  a separate  document  signed  by  both  parties,  the  terms  of  the  separate  document  signed  by  both  parties  shall  control.   No  provision  in either  party's  purchase  order  or  in  any  other  business  form  employed  by  either  party,  excluding  a  separate  document  signed  by  both parties,  will  supersede  these  Terms  of  Sale.   No  prior  course  of  dealing  or  usage  of  trade  shall  affect  this  invoice  or  be  admissible  to explain,  modify,  or  contradict  this  invoice  and  the  agreement  arising  therefrom  (collectively  "**Agreement**" ).  For  purposes  of  this Agreement,  the  term  "Supplier"  means  a  manufacturer,  vendor,  or  other  supplier  of  a  Product  that  is  purchased  by  Seller  for distribution.

1    **Credit and Payment.**   All payments for Products and/or Services must be received by Seller Net within thirty (30) days  from  the  date  of  invoice,  unless  otherwise  agreed  to  by  the  parties.   Any  invoiced  amount  remaining  unpaid  after thirty  (30)  days  shall  be  "past  due."   Past  due  balances  are  subject  to  an  interest  charge  of  one  and  one-half  percent (1.5%)  per  month.   Any  interest  charged  and  collected  in  excess  of  applicable  state  law  shall  be  returned  to  Buyer.   If  Buyer  fails  to pay  any  or  all  of  the  invoiced  amount  when  due  or  if  Buyer's  credit  or  financial  status  erodes  or  otherwise  renders Seller  insecure,  Seller  may,  in  its  sole  discretion,  without  further  notice  immediately:  (i)  suspend  Seller's  performance  or cancel  all  or  any  part  of  an  order  hereunder,  (ii)  change  any  payment  term  by  requiring  payment  prior  to  shipment,  by  terms  demanded  by  Seller (including  imposing  the  requirement  of  cash  payment  upon  delivery);  (iii)  pay  any  incentives,  rebates,  fees,  or  other discount  arrangements  net  of  any  amounts  due  hereunder,  and  any  unauthorized  deductions  and  service  charges  and terminate  and/or  declare  Buyer  ineligible  for  any  incentives,  rebates,  fees,  or  other  discount  arrangements;  (iv)  declare immediately  due  and  payable  all  other  amounts  invoiced  by  Seller  to  Buyer  regardless  of  when  such  payments  would otherwise  be  due  from  Buyer,  and/or  (v)  increase  the  prices  for  Products  and/or  Services.   Any  discrepancy  between  any order  placed  by  Buyer  and  Seller's  corresponding  shipment(s)  must  be  reported  to  Seller  for  resolution  within  ten  (10)  days of  Seller's  invoice  date,  except  for  price  or  payment  discrepancies  or  any  claims  for  reimbursement,  which  must  be reported  to  Seller  for  resolution  within  thirty  (30)  days  of  Seller's  invoice  date.   Seller  shall  have  no  obligation  to  receive and  Buyer  shall  hold  Seller  harmless  and  waives  any  rights  to  any  discrepancy  or  to  issue  any  credit  or  refund,  or  to replace  any   goods  if  claim  therefore  is  not  made  within  said  applicable  ten  (10)  or  thirty  (30)  day  period.   All  requests  for proof  of   delivery  for  reasons  other  than  shipment,  price  or  payment  disputes  must  be  made  within  sixty  (60)  days  of Seller's  invoice  date.   If  the  payment  term  due  date  falls  on  a  weekend  day  or  holiday,  payment  is  due  and  payable  on the  succeeding  business  day.

2    **Chargebacks.**   In  consideration  of  Seller  allowing  Buyer  to  purchase  Products  at  discounted  prices,  Buyer  agrees  that seller  will  be  paid  the  difference  between  Seller's  acquisition  cost  and  the  discounted  price  of  the  Product  from  the applicable  Supplier  ("**Chargeback(s)**").   In  the  event  Seller  is  denied  any  Chargeback  from  a  Supplier  as  a  result  of Buyer  providing  incomplete,  inaccurate,  or  incorrect  information  to  Seller  or  Supplier,  Buyer  will  be  liable  to  Seller  for such  Chargeback  amount.

3    **Reporting  and  Disclosure  Obligations.THE  PRICES  ON  THIS  INVOICE  MAY  BE  SUBJECT  TO  REBATES, CREDITS  AND  OTHER  PRICE  ADJUSTMENTS.   BUYER  IS  OBLIGATED  TO  PROPERLY  DISCLOSE  AND APPROPRIATELY  REFLECT  ALL  DISCOUNTS,  INCLUDING  REBATES,  IN  CLAIMS  AND  COSTS  SUBMITTED  TO FEDERAL  AND  STATE  GOVERNMENT  HEALTH  CARE  PROGRAMS  (INCLUDING  MEDICARE  AND  MEDICAID), AND  TO  PROVIDE  THIS  INVOICE  AND  OTHER  DISCOUNT  DOCUMENTATION  TO  GOVERNMENT  AUTHORITIES ON  REQUEST,  IN  ACCORDANCE  WITH  ALL  APPLICABLE  LAWS  AND  REGULATIONS,  INCLUDING  42  USC 1320A-7B(B)  AND  THE  DISCOUNT  SAFE  HARBOR.**

4    **Shipment,  Risk  of  Loss  and  Title.**   Shipment  of  Products  per  routine  order  to  Buyer  and  subsequent  back orders  related  to  the  original  shipment  shall  be  shipped  FOB  Destination,  except  for  drop  shipments  which  shall  be  shipped in  accordance  with  Supplier's  shipping  policies.  The  cost  of  shipment,  if  any,  has  been  paid  by  Seller  and  added  to  this invoice.   Emergency  orders,  rush  orders,  orders  for  Products  not  regularly  stocked  by  Seller's  local  servicing  distribution center,  Products  dropped  shipped  from  Supplier,  and  orders  not  regularly  scheduled  are  subject  to  an  added  shipping and  handling  charge  determined  by  Seller  and  disclosed  to  Buyer  prior  to  or  at  the  time  of  order.   Seller  shall  have  the right  to  ship  the  Products  at  all  times  via  its  own  vehicle  or  a  carrier  selected  by  Seller.

5    **Minimum  Order  Requirement.**   Minimum  orders  may  be  subject  to  Seller's  minimum  order  requirement  in  effect  and quoted  at  the  time  of  order.   For  orders  less  than  such  minimum  order  requirement  or  orders  placed  via  telephone  or facsimile,  Seller  may  add  to  the  invoice  a  handling  charge  determined  by  Seller  and  disclosed  to  Buyer  prior  to  or  at  the time  of  order.

6    **Product  Recommendations.**   Seller  may  make  available  to  Buyer  certain  recommendations  concerning  products  that are  comparable,  functionally  equivalent,  clinically  equivalent,  or  equivalent  to  other  products  used  or  identified  by  Buyer ("**Equivalency  Recommendations**").

Buyer  agrees  and  stipulates  that  in  making  any  Equivalency  Recommendation,  Seller  is  relying  solely  on  the  independent skill,  knowledge  and  judgment  of  its  suppliers  or  others  in  the  industry  and  is  not  independently  providing  medical  product information  upon  which  Buyer  can  rely  in  order  to  make  its  product  selection  decision.   Buyer  agrees  and  stipulates  that in  making  product  decisions  Buyer  is  relying  on  its  independent  professional  judgment.   Buyer  hereby  agrees  to  waive, release,  indemnify  and  hold  Seller  and  its  affiliates  harmless  from  any  claim  arising  from  an  Equivalency Recommendation.   Buyer  agrees  and  stipulates  that  it  is  a  sophisticated  user  of  medical  products  and  it  agrees and  stipulates  that  it  is  a  learned  intermediary  between  Seller  and  the  end  user/patient.

THESE  EQUIVALENCY  RECOMMENDATIONS  MAY  BE  MADE  VERBALLY,  IN  WRITING  OR  VIA  A  DATABASE.   THE EQUIVALENCY  RECOMMENDATIONS  ARE  RECOMMENDATIONS  ONLY  AND  ARE  NOT  REPRESENTATIONS  OR WARRANTIES  CONCERNING  ANY  PRODUCT  PERFORMANCE  OR  EQUIVALENCY  AND  ANY  SUCH REPRESENTATIONS  OF  WARRANTY  ARE  HEREBY  DISCLAIMED.  THESE  EQUIVALENCY  RECOMMENDATIONS ARE  BASED  UPON  MATERIALS  SUPPLIED  BY  THE  BUYER'S  SUPPLIER  AND  OTHER  INDUSTRY–AVAILABLE INFORMATION.

7    **Data.**   Buyer  acknowledges  that  Seller  will  provide  information  and  reports  to  group  purchasing  organizations,  Suppliers, and  other  third  parties  relating  to  Buyer's  purchases  from  Seller.   Buyer  hereby  waives  any  rights  of  confidentiality  with respect  to  such  information  to  the  extent  necessary  to  allow  Seller  to  provide  such  information  to  group  purchasing organizations,  Suppliers,  and  other  third  parties.

8    **Resale  of  Products.**   Buyer  hereby  certifies  that  it  is  purchasing  Products  from  Seller  for  its  own  use.   Products  are  not for  resale.   Buyer  shall  purchase  Products  from  Seller  for  its  own  use  and  shall  not  resell  or  redistribute  Products.

9    **Return  Goods  Policy.**   Subject  to  applicable  law,  Seller  will  process  returned  goods  for  Products  purchased  from  Seller, in  accordance  with  its  then  standard  Return  Goods  Policy.   Seller's  current  Return  Good  Policy  is  as  follows:

All  requests  for  return  of  Products  must  have  a  return  authorization  number  issued  by  Seller  customer  service department.

All  returned  Products  must  be:   i)  returnable  to  Supplier;  (ii)  in  the  original  unopened  packaging;  and  (iii)  in resalable  condition,  unless  such  Products  are  not  in  original  unopened  packaging  or  resalable  condition  due  to the  fault  of  Seller.

Products  that  are:   (a)  special  order  Products;  (b)  custom  Products;  or  (c)  Products  not  available  for  general  or unrestricted  distribution  are  not  returnable.

The  amount  of  credit  on  any  given  return,  as  described  below,  will  be  issued  no  later  than  thirty  (30)  days  after the  receipt  of  the  merchandise  and  necessary  documentation  and  the  examination  and  inspection  of  such  return at  the  local  Seller  distribution  center.

Products  shipped  in  error  by  Seller  and  nonconforming  Products  –  FULL  CREDIT  –  if  returned  within  thirty  (30) days  of  date  of  invoice.

Products  shipped  that  are  damaged  or  do  not  meet  Seller  standard  quality  –  FULL  CREDIT  –  if  returned  within thirty  (30)  days  of  date  of  invoice.

Locally  stocked  Products  returned  within  thirty  (30)  days  of  date  of  invoice  –  FULL  CREDIT.

Locally  stocked  Products  returned  after  thirty  (30)  days  of  date  of  invoice  –  15%  RESTOCKING CHARGE.

Non-locally  stocked  Products  that  are  returned  within  thirty  (30)  days  of  date  of  invoice  -  15% RESTOCKING  CHARGE  (plus  any  additional  costs  incurred  in  returning  such  Products  to  Supplier).

Notwithstanding  anything   above  to  the  contrary,  Buyer  shall  receive  FULL  CREDIT  on  any  Products returned  as  the  result  of  a  recall  or  defective  condition.

10    **Excusable  Delays.**   If  a  party  is  unable,  wholly  or  in  part,  by  reason  of  an  act  of  God  or  any  other  reason beyond  the  reasonable  control  of  the  party,  including  unavailability  of  Products,  to  carry  out  its  obligations hereunder  (other  than  the  obligation  to  make  money  payments),  that  party  shall  give  the  other  party  written notice  thereof  with  reasonable  particulars  concerning  it.   During  the  period  of  delay,  the  obligations  of  all  parties hereunder  (other  than  the  obligation  to  make  money  payments),  shall  be  suspended.   The  affected  party  shall use  reasonable  due  diligence  to  continue  performance  as  quickly  as  possible.

Except  for  the  obligation  to  pay  money,  a  party  will  not  be  liable  to  the  other  party  for  any  failure  or  delay  in performance  caused  by  fires,  shortage  of  materials  or  transportation,  government  acts,  acts  of  terrorism,  or  any other  matters  beyond  the  first  party's  reasonable  control,  and  such  failure  or  delay  will  not  constitute  a  material breach  of  this  Agreement.

11    **Taxes;  Enforcement  Costs.**   All  amounts  payable  to  Seller  under  this  Agreement  are  exclusive  of  all  sales, use,  value-added,  withholding,  and  other  taxes  and  duties.   Buyer  will  promptly  pay,  and  indemnify  Seller against,  all  taxes  and  duties  assessed  in  connection  with  any  such  amounts,  this  Agreement  and  its performance  by  any  authority  within  or  outside  of  the  U.S.,  except  for  taxes  payable  on  Seller's  net  income.

In  the  event  it  becomes  necessary  for  either  party  to  take  action  to  collect  any  sums  due  or  enforce  any  other provisions  of  this  Agreement,  the  prevailing  party  shall  be  entitled  to  recover  all  costs  and  expenses  of collection,  including  without  limitation,  reasonable  attorney's  fees  and  court  costs.

12    **Time  for  Bringing  Action.**   Any  action  of  any  kind  arising  out  of  or  in  any  way  connected  with  this  Agreement, other  than  collection  of  outstanding  payment  obligations,  must  be  commenced  within  one  (1)  year  upon  which the  cause  of  action  accrued.

13    **Non-Disposable  Products.**   Non-disposable  Products,  such  as  furniture  and  equipment,  sold  by  Seller  may  be refurbished  or  reconditioned.

14    **Disclaimer.**   SELLER  MAKES  NO  REPRESENTATION  OR  WARRANTY  OF  ANY  KIND,  EXPRESS  OR IMPLIED,  AS  TO  THE  MERCHANTABILITY  OF  ANY  PRODUCTS  OR  THEIR  FITNESS  FOR  ANY PARTICULAR  USE  OR  PURPOSE.   BUYER  SHALL  LOOK  TO  SUPPLIER  OF  PRODUCTS  AND  THE PROVIDER  OF  SERVICE  FOR  ANY  WARRANTY  THEREON.   NO  AGENT,  EMPLOYEE,  OR REPRESENTATIVE  OF  SELLER  HAS  ANY  AUTHORITY  TO  MAKE  ANY  AFFIRMATION, REPRESENTATION,  OR  WARRANTY  CONCERNING  PRODUCTS  NOT  SET  FORTH  IN  THIS  AGREEMENT.

BUYER  SHALL  NOT  HOLD  SELLER  LIABLE  FOR  ANY  DEFECT  IN  PRODUCTS  OR  SERVICES. REGARDLESS  OF  KIND.   BUYER  AGREES  TO  FILE  SOLELY  WITH  SUPPLIER  OF  THE  PRODUCTS  OR THE  PROVIDER  OF  SERVICE  ANY  CLAIM  OR  LAWSUIT  ALLEGING  LOSS,  INJURY,  DAMAGE,  OR  DEATH ARISING  OUT  OF  OR  CAUSED  BY  THE  USE,  SALE,  DISTRIBUTION,  OR  POSSESSION  OF  PRODUCTS  OR SERVICES.

IN  NO  EVENT  SHALL  SELLER  BE  LIABLE  TO  BUYER  UNDER,  IN  CONNECTION  WITH,  OR  RELATED  TO THIS  AGREEMENT  FOR  ANY  SPECIAL,  INCIDENTAL,  INDIRECT,  PUNITIVE,  OR  CONSEQUENTIAL DAMAGES,  WHETHER  BASED  ON  BREACH  OF  CONTRACT,  WARRANTY,  TORT,  PRODUCT  LIABILITY, OR  OTHERWISE,  (INCLUDING  LOST  PROFITS)  FROM  ANY  CAUSE,  INCLUDING,  WITHOUT  LIMITATION, DAMAGES  RESULTING  FROM  ANY  UNAVAILABILITY  OF,  DEFECT  IN,  OR  MISSHIPMENT  OF  PRODUCTS OR  THE  PROVISION  OF  SERVICES,  AND  WHETHER  OR  NOT  SELLER  HAS  BEEN  ADVISED  OF  THE POSSIBILITY  OF  SUCH  DAMAGE.

15    **Assignment.**   Buyer  shall  not   assign  or  transfer  any  interest  under  any  order  accepted  by  Seller  or  delegate any  obligation  hereunder  without  the  prior  written  consent  of  Seller.

16    **Governing  Law.**   This  Agreement  shall  be  governed  by  and  construed  in  accordance  with  the  laws  of the  commonwealth  of  Virginia,  without  any  construction  or  interpretation  against  Buyer  or  Seller.   Buyer  and  Seller irrevocably  consent  to  the  exclusive  jurisdiction  of  the  state  courts  of  Henrico  County,  Virginia  and  the  federal courts  situated  in  Richmond,  Virginia,  in  connection  with  any  action  to  enforce  the  provisions  of  this  Agreement,  to recover  any  damages  or  to  obtain  any  other  relief  with  respect  to  any  matter  connected  with  or  arising  from  this Agreement  or  the  transactions  contemplated  therein,  including  without  limitation,  breach  or  default  under this  Agreement,  or  otherwise  arising  under  or  by  reason  of  this  Agreement.

**McKESSON**

**Credit Memo**
Page 1 of 2

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:     4265044

District License    3000009121
Shipped To:     4265045

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046
Ordered By: EMAIL

Regulatory License    MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:

Customer Service Phone:         1-800-866-9243

| Sales Order Number | 16445557 | Credit Number | 36120871 |
|---|---|---|---|
| Sales Order Date | 09/18/2018 | Credit Date | 09/18/2018 |
| PO Number | KISHA090418 | Original Invoice Number | 35027807 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($817.44) |

Notes: See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 783552 | Vendor: DJORTH Vend Cat#: 79-95523 | ANKLE WALKER, XCELTRAX AIR SM PO LN 1 | -5 | EA | -5 | ███ | ███ | .00 |
| | | Winchester | UPS GROUND | | | | | |
| 783553 | Vendor: DJORTH Vend Cat#: 79-95525 | ANKLE WALKER, XCELTRAX AIR MED PO LN 2 | -7 | EA | -7 | ███ | ███ | .00 |
| | | Winchester | UPS GROUND | | | | | |
| 783554 | Vendor: DJORTH Vend Cat#: 79-95527 | ANKLE WALKER, XCELTRAX AIR LG PO LN 3 | -5 | EA | -5 | ███ | ███ | .00 |
| | | Winchester | UPS GROUND | | | | | |
| 783551 | Vendor: DJORTH Vend Cat#: 79-95522 | ANKLE WALKER, XCELTRAX AIR PED PO LN 4 | -7 | EA | -7 | ███ | ███ | .00 |
| | | Winchester | UPS GROUND | | | | | |

**McKESSON**

**Credit Memo**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 36120871 | Date | 09/18/2018 |
| | | Terms | AR  NET 45 DAYS |
| | | | ($817.44) |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
Please Remit To:
*****************************************
CREDIT MEMORANDUM
DO NOT PAY

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to all sales of Products (as defined below) and services (the "**Services**") purchased by the entity named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

**0.    General Terms of Sale.**

1.1.    "Standard Credit and Payment Terms.    All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements out of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.  In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.    Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.    Discrepancies.  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.  Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.    Non-Disposable Products.  Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.    Freight Charges, Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice.  Detailed information on the fuel surcharge can be obtained by request.  Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.    Title and Risk of Loss.  Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.    Third-Party Logistics Provider Services.  If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.    Returned Goods.  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
-    Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.
-    Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.
-    Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.
-    Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
§    Products that are non-returnable to the Supplier  NO CREDIT WILL BE ISSUED
§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.    Chargebacks.  In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount.  In the event Supplier:  (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.    Force Majeure.  Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.    Product Recommendations.  Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision.  Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Customer agrees and stipulates that it is

as sophisticated in its knowledge of such products as the intermediary between Seller and the end user/patient.  THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE.  THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION.  The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history.  Alternative products are not necessarily the lowest priced items available.

5.    DISCLAIMER.  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR SERVICES ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.    LIMITATION OF LIABILITY.  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.    Government Contracts.  Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.    No Conflict or Interference.  Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment  or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.    Confidential Information.  Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.    REPORTING AND DISCLOSURE OBLIGATIONS.  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11.    Controlled Substances and Other Regulations.  If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or any governmental requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.    Compliance with Laws.  Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.    Own Use. All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products to Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.    Relationship of the Parties.  The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of any other party.

15.    Governing Law.  This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.    WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.

# MCKESSON

**Credit Memo**
Page 2 of 2

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:    4265044
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Shipped To:
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046
Ordered By: EMAIL

| Invoice Number  36120871 | PO Number KISHA090418 | Invoice Date    09/18/2018 |
| --- | --- | --- |

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |

**S A L E S   T A X**

| | | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
| ($817.44) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($817.44) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Bill To:     4265044

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

District License   3000009121
Shipped To:     4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046
Ordered By: LAKEISHA

Regulatory License    MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:

Customer Service Phone:            1-800-866-9243

| Sales Order Number | 5619779 | Credit Number | 24363328 |
|---|---|---|---|
| Sales Order Date | 04/02/2018 | Credit Date | 04/02/2018 |
| PO Number | KISHA330 | Original Invoice Number | 24194464 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($95.00) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| | | | S A L E S   T A X | | | | | |
| | | | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |
| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($95.00) | $0.00 | $0.00 | ($95.00) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

**Credit Memo**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 24363328 | Date | 04/02/2018 |
| | Terms | AR  NET 45 DAYS | |
| | | | ($95.00) |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*************************************

CREDIT MEMORANDUM
DO NOT PAY

The terms and conditions of this invoice apply to all ("**Products**") and/or services ("**Services**") purchased by Buyer from Seller. These Terms of Sale supersede the terms and conditions of any purchase order form furnished by parties, unless such written agreement is executed by an authorized representative of Seller, any Buyer purchase order or other document, or any oral agreement between the parties. In the event of any conflict or inconsistency between these Terms of Sale and a separate document signed by both parties, the terms of the separate document signed by both parties shall control. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall be effective to or be admissible to explain, modify, or contradict this invoice and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "Supplier" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

**1    Credit and Payment.**   All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice, unless otherwise agreed to by the parties. Any invoiced amount remaining unpaid after thirty (30) days shall be "past due." Past due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law shall be refunded. If Buyer fails to pay any or all of the invoiced amount when due or if Buyer's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion, without further notice immediately: (i) suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to any permitted terms determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Buyer ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to Buyer regardless of when such payments would otherwise be due from Buyer, and/or (v) increase the prices for Products and/or Services. Any discrepancy between any order placed by Buyer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date, except for price or payment discrepancies or any claims for reimbursement, which must be reported to Seller for resolution within thirty (30) days of Seller's invoice date. Seller shall have no obligation to receive and Buyer shall hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if claim therefore is not made within said applicable ten (10) or thirty (30) day period. All requests for proof of delivery for reasons other than shipment, price or payment disputes must be made within sixty (60) days of Seller's invoice date. If the payment term due date falls on a weekend day or holiday, payment is due and payable on the succeeding business day.

**2    Chargebacks.**   In consideration of Seller allowing Buyer to purchase Products at discounted prices, Buyer agrees that seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("**Chargeback(s)**"). In the event Seller is denied any Chargeback from a Supplier as a result of buyer providing incomplete, inaccurate, or incorrect information to Seller or Supplier, Buyer will be liable to Seller for such Chargeback amount.

**3    Reporting and Disclosure Obligations. THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. BUYER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR.**

**4    Shipment, Risk of Loss and Title.**   Shipment of Products per routine order to Buyer and subsequent back orders related to the original shipment shall be shipped FOB Destination, except for drop shipments which shall be shipped in accordance with Supplier's shipping policies. The cost of shipment, if any, has been paid by Seller and added to this invoice. Emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, Products dropped shipped from Supplier, and orders not regularly scheduled are subject to an added shipping and handling charge determined by Seller and disclosed to Buyer prior to or at the time of order. Seller shall have the right to ship the Products at all times via its own vehicle or a carrier selected by Seller.

**5    Minimum Order Requirement.**   Minimum orders may be subject to Seller's minimum order requirement in effect and quoted at the time of order. For orders less than such minimum order requirement or orders placed via telephone or facsimile, Seller may add to the invoice a handling charge determined by Seller and disclosed to Buyer prior to or at the time of order.

**6    Product Recommendations.**   Seller may make available to Buyer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Buyer ("**Equivalency Recommendations**").

Buyer agrees and stipulates that in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Buyer can rely in order to make its product selection decision. Buyer agrees and stipulates that in making product decisions Buyer is relying on its independent professional judgment. Buyer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Buyer agrees and stipulates that it is a sophisticated user of medical products and it agrees and stipulates that it is a learned intermediary between Seller and the end user/patient.

THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY THE BUYER'S SUPPLIER AND OTHER INDUSTRY–AVAILABLE INFORMATION.

**7    Data.**   Buyer acknowledges that Seller will provide information and reports to group purchasing organizations, Suppliers, and other third parties relating to Buyer's purchases from Seller. Buyer hereby waives any rights of confidentiality with respect to such information to the extent necessary to allow Seller to provide such information to group purchasing organizations, Suppliers, and other third parties.

**8    Resale of Products.**   Buyer hereby certifies that it is purchasing Products from Seller for its own use. Products are not for resale. Buyer shall purchase Products from Seller for its own use and shall not resell or redistribute Products.

**9    Return Goods Policy.**   Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

All requests for return of Products must have a return authorization number issued by Seller customer service department.

All returned Products must be:  (i) returnable to Supplier; (ii) in the original unopened packaging; and (iii) in resalable condition, unless such Products are not in original unopened packaging or resalable condition due to the fault of Seller.

Products that are:  (a) special order Products; (b) custom Products; or (c) Products not available for general or unrestricted distribution are not returnable.

The amount of credit on any given return, as described below, will be issued no later than thirty (30) days after the receipt of the merchandise and necessary documentation and the examination and inspection of such return at the local Seller distribution center.

Products shipped in error by Seller and nonconforming Products – FULL CREDIT – if returned within thirty (30) days of date of invoice.

Products shipped that are damaged or do not meet Seller standard quality – FULL CREDIT – if returned within thirty (30) days of date of invoice.

Locally stocked Products returned within thirty (30) days of date of invoice – FULL CREDIT.

Locally stocked Products returned after thirty (30) days of date of invoice – 15% RESTOCKING CHARGE.

Non-locally stocked Products that are returned within thirty (30) days of date of invoice - 15% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier).

Notwithstanding anything above to the contrary, Buyer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

**10    Excusable Delays.**   If a party is unable, wholly or in part, by reason of an act of God or any other reason beyond the reasonable control of the party, including unavailability of Products, to carry out its obligations hereunder (other than the obligation to make money payments), that party shall give the other party written notice thereof with reasonable particulars concerning it. During the period of delay, the obligations of all parties hereunder (other than the obligation to make money payments), shall be suspended. The affected party shall use reasonable due diligence to continue performance as quickly as possible.

Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

**11    Taxes; Enforcement Costs.**   All amounts payable to Seller under this Agreement are exclusive of all sales, use, value-added, withholding, and other taxes and duties. Buyer will promptly pay, and indemnify Seller against, all taxes and duties assessed in connection with any such amounts, this Agreement and its performance by any authority within or outside of the U.S., except for taxes payable on Seller's net income.

In the event it becomes necessary for either party to take action to collect any sums due or enforce any other provisions of this Agreement, the prevailing party shall be entitled to recover all costs and expenses of collection, including without limitation, reasonable attorney's fees and court costs.

**12    Time for Bringing Action.**   Any action of any kind arising out of or in any way connected with this Agreement, other than collection of outstanding payment obligations, must be commenced within one (1) year upon which the cause of action accrued.

**13    Non-Disposable Products.**   Non-disposable Products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

**14    Disclaimer.**   SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. BUYER SHALL LOOK TO SUPPLIER OF PRODUCTS AND THE PROVIDER OF SERVICE FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

BUYER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES. REGARDLESS OF KIND. BUYER AGREES TO FILE SOLELY WITH SUPPLIER OF THE PRODUCTS OR THE PROVIDER OF SERVICE ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

IN NO EVENT SHALL SELLER BE LIABLE TO BUYER UNDER, IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS OR THE PROVISION OF SERVICES, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

**15    Assignment.**   Buyer shall not assign or transfer any interest under any order accepted by Seller or delegate any obligation hereunder without the prior written consent of Seller.

**16    Governing Law.**   This Agreement shall be governed by and construed in accordance with the laws of the commonwealth of Virginia, without any construction or interpretation against Buyer or Seller. Buyer and Seller irrevocably consent to the exclusive jurisdiction of the state courts of Henrico County, Virginia and the federal courts situated in Richmond, Virginia, in connection with any action to enforce the provisions of this Agreement, to recover any damages or to obtain any other relief with respect to any matter connected with or arising from this Agreement or the transactions contemplated therein, including without limitation, breach or default under this Agreement, or otherwise arising under or by reason of this Agreement.

Terms of Sale-PC Invoice 3-31-11

# McKESSON

**Invoice**
Page 1 of 1

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK, VA 22624

Bill To:    4265044

District License    3000009121
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 15959874 | Invoice Number | 35690760 |
|---|---|---|---|
| Sales Order Date | 09/11/2018 | Invoice Date | 09/12/2018 |
| PO Number | 033D-243669 | Payment Due Date | 10/27/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $987.76 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 578997 | Vendor:  MOLYCK Vend Cat#:  287400 | DRESSING, MEPILEX FOAM ANTI MI PO LN 1 | 4 | BX | 4 | ██████ | ██████ | .00 |
| | 1Z31FW670374773381 | | | | | | | |
| | SHIPPED: 09/12/2018 | Winchester | | | | | | |

| | | | **S A L E S   T A X** | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $987.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $987.76 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

---

**Invoice**

# McKESSON

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 35690760 | Date | 09/12/2018 |
| | Terms | AR  NET 45 DAYS | |
| Pay This Amount Before | 10/27/2018 | | $987.76 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

These terms of sale ("**Terms of Sale**") shall apply to all Seller's ("**Products**") and services ("**Services**") purchases and/or agreements to purchase, and may be between the sophisticated third-party intermediary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1.    **General Terms of Sale.**

1.1.    "Standard Credit and Payment Terms.    All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due". Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements out of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.    Taxes.    All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.    Discrepancies.    Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.    Non-Disposable Products.    Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.    Freight Charges, Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.    Title and Risk of Loss.    Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.    Third-Party Logistics Provider Services.    If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispose Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.    Returned Goods.    Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
-       Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality. FULL CREDIT.
-       Locally stocked Products returned within thirty (30) days of date of invoice. FULL CREDIT.
-       Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice. FULL CREDIT LESS A 15% RESTOCKING CHARGE.
-       Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
-       Non-returnable stocked Products that are not returnable to the Supplier NO CREDIT WILL BE ISSUED
§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.    **Chargebacks.**    In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.    **Force Majeure.**    Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.    **Product Recommendations.**    Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

sophisticated party capable of deciding in its own independent judgment whether and how to use Products with respect to their end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5.    **DISCLAIMER.**    SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR EXPENSE ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.    **LIMITATION OF LIABILITY.**    IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.    **Government Contracts.**    Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.    **No Conflict or Interference.**    Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment  or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.    **Confidential Information.**    Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.    **REPORTING AND DISCLOSURE OBLIGATIONS.**    THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DIFFERENT AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11.    **Controlled Substances and Other Regulations.**    If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or any governmental requirement, guideline or procurement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.    **Compliance with Laws.**    Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnity and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.    **Own Use.**    All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market to Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.    **Relationship of the Parties.**    The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15.    **Governing Law.**    This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.    **WAIVER OF JURY TRIAL.    THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Bill To:    4265044

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

District License   3000009121
Shipped To:    4324957
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134
Ordered By: EH7682X

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:            1-800-866-9243

| Sales Order Number | 18049543 | Credit Number | 38040513 |
|---|---|---|---|
| Sales Order Date | 10/10/2018 | Credit Date | 10/12/2018 |
| PO Number | 045D-012922 | Original Invoice Number | 37470542 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($31.00) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 1034507 | Vendor: MGM168 | SUTURE, 4-0 NYLON 18" C-13 (12 | -1 | BX | -1 | ▆▆ | ▆▆ | .00 |
| | Vend Cat#:  S662GX | PO LN 1 | | | | | | |
| | SHIPPED: 10/11/2018 | Winchester | | | | | | |

| | S A L E S   T A X | | | | |
|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($31.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($31.00) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Credit Memo**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 38040513 | Date | 10/12/2018 |
| | Terms | AR  NET 45 DAYS | |
| | | | ($31.00) |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

Please Remit To:
*******************************************

CREDIT MEMORANDUM
DO NOT PAY

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to all sales of products ("**Products**") and/or services ("**Services**") purchased by the end user named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1. **General Terms of Sale.**

1.1. "Standard Credit and Payment Terms. All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery), (iii) pay any incentives, rebates, fees, or other discount arrangements out of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2. Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3. Discrepancies. Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4. Non-Disposable Products. Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5. Freight Charges. Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6. Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7. Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispose Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8. Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§ All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§ All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§ Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§ The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
- Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality FULL CREDIT.
- Locally stocked Products returned within thirty (30) days of date of invoice FULL CREDIT.
- Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice FULL CREDIT LESS A 15% RESTOCKING CHARGE.
- Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
- Non-returnable Products that are not returnable to the Supplier NO CREDIT WILL BE ISSUED
§ Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2. **Chargebacks.** In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3. **Force Majeure.** Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4. **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

as sophisticated, knowledgeable and licensed medical intermediary between Seller and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5. **DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT. CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR SERVICES ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6. **LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7. **Government Contracts.** Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8. **No Conflict or Interference.** Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9. **Confidential Information.** Pricing and terms of this Agreement are confidential information and shall not be disclosed without consent from Seller. Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10. **REPORTING AND DISCLOSURE OBLIGATIONS.** THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DIFFERENT AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11. **Controlled Substances and Other Regulations.** If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, ordinance, regulation or governmental requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12. **Compliance with Laws.** Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13. **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14. **Relationship of the Parties.** The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16. **WAIVER OF JURY TRIAL.** THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.

# McKESSON

**Invoice**
Page 1 of 1

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:   4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 1403211 | Invoice Number | 19683858 |
|---|---|---|---|
| Sales Order Date | 01/26/2018 | Invoice Date | 01/26/2018 |
| PO Number | 0333D234416 | Payment Due Date | 03/12/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $37.10 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| | | S A L E S   T A X | | | | | | |
| | | | STATE $2.10 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |
| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $35.00 | $35.00 | $2.10 | $37.10 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 19683858 | Date | 01/26/2018 |
| Terms | | AR | NET 45 DAYS |
| Pay This Amount Before | 03/12/2018 | | $37.10 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

Please Remit To:
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms and conditions of this invoice apply to all ( **"Products"** ) and/or services ( **"Services"** ) purchased by Buyer from Seller. These Terms of Sale supersede  the terms and conditions of any prior agreement between the parties, unless such  written agreement is executed by an authorized representative of Seller, any Buyer purchase order or other document, or any oral agreement between the parties.  In the event of any conflict or inconsistency between these Terms of Sale and a separate  document signed by both parties, the terms of the separate document signed by both parties shall control.  No provision in either  party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale.  No prior course of dealing or usage of trade shall constitute or be admissible  to explain, modify, or contradict this invoice and the agreement arising therefrom (collectively " **Agreement** " ). For purposes of this Agreement, the term "Supplier" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1    **Credit and Payment.**   All payments for Products and/or Services must be received by Seller Net within thirty (30) days  from the date of invoice, unless otherwise agreed to by the parties.  Any invoiced amount remaining unpaid after thirty  (30) shall be "past due."  Past due balances are subject to an interest charge of one and one-half percent (1.5%)  per month.  Any interest charged and collected in excess of applicable state law shall be returned to Buyer.  If Buyer fails to pay  any or all of the invoiced amount when due or if Buyer's credit or financial status erodes or otherwise renders Seller  insecure, Seller may, in its sole discretion, without further notice immediately:  (i) suspend Seller's performance or cancel  all or any part of an order hereunder, (ii) change any payment term to any term determined by Seller (including  imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount  arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate  and/or declare Buyer ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately  due and payable all other amounts invoiced by Seller to Buyer regardless of when such payments would otherwise be  due from Buyer, and/or (v) increase the prices for Products and/or Services.  Any discrepancy between any order placed  by Buyer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of  Seller's  invoice date, except for price or payment discrepancies or any claims for reimbursement, which must be reported  to  Seller for resolution within thirty (30) days of Seller's invoice date.  Seller shall have no obligation to receive and Buyer  shall hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any  goods if claim therefore is not made within said applicable ten (10) or thirty (30) day period.  All requests for proof  of  delivery for reasons other than shipment, price or payment disputes must be made within sixty (60) days of Seller's  invoice date.  If the payment term due date falls on a weekend day or holiday, payment is due and payable on the  succeeding business day.

2    **Chargebacks.**  In consideration of Seller allowing Buyer to purchase Products at discounted prices, Buyer agrees that seller  will be paid the  difference between Seller's acquisition cost and the discounted price  of the Product from the applicable  Supplier (" **Chargeback(s)** ").  In the event Seller is denied any Chargeback from a Supplier as a result of buyer  providing  incomplete, inaccurate, or incorrect information to Seller or applicable Supplier, Buyer will be  liable to Seller for such  Chargeback amount.

3    **Reporting and Disclosure Obligations. THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS  AND OTHER PRICE ADJUSTMENTS.  BUYER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY  REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL  AND STATE  GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE  THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST,  IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B)  AND THE DISCOUNT SAFE HARBOR.**

4    **Shipment, Risk of Loss and Title.**  Shipment of Products per routine order to Buyer and subsequent back orders  related to the original shipment shall be shipped FOB Destination, except for drop shipments which shall be shipped in  accordance with Supplier's shipping policies.  The cost of shipment, if any, has been paid by Seller and added to this invoice.   Emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center,  Products dropped shipped from Supplier, and orders not regularly scheduled are subject to an added shipping and handling  charge determined by Seller and disclosed to Buyer prior to or at the time of order.  Seller shall have the right to  ship the Products at all times via its own vehicle or a carrier selected by Seller.

5    **Minimum Order Requirement.**  Minimum orders may be subject to Seller's minimum order requirement in effect and  quoted at the time of order.  For orders less than such minimum order requirement or orders placed via telephone or facsimile,  Seller may add to the invoice a handling charge determined by Seller and disclosed to Buyer prior to or at the time of  order.

6    **Product Recommendations.**  Seller may make available to Buyer certain recommendations concerning products that are  comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Buyer (" **Equivalency  Recommendations** ").

Buyer agrees and stipulates that in making any Equivalency Recommendation, Seller is relying solely on the independent skill,  knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information  upon which Buyer can rely in order to make its product selection decision.  Buyer agrees and stipulates that in  making product decisions Buyer is relying on its independent professional judgment.  Buyer hereby agrees to waive, release,  indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.   Buyer agrees and stipulates that it is a sophisticated user of medical products and it agrees and stipulates  that it is a learned intermediary between Seller and the end user/patient.

THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE.  THE  EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES  CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS  OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED  UPON MATERIALS SUPPLIED BY THE BUYER'S SUPPLIER AND OTHER INDUSTRY–AVAILABLE INFORMATION.

7    **Data.**  Buyer acknowledges that Seller will provide information and reports to group purchasing organizations, Suppliers, and  other third parties relating to Buyer's purchases from Seller.  Buyer hereby waives any rights of confidentiality with respect  to such information to the extent necessary to allow Seller to provide such information to group purchasing organizations,  Suppliers, and other third parties.

8    **Resale of Products.**  Buyer hereby certifies that it is purchasing Products from Seller for its own use.  Products are not for  resale.  Buyer shall purchase Products from Seller for its own use and shall not resell or redistribute Products.

9    **Return Goods Policy.**  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in  accordance with its then standard Return Goods Policy.  Seller's current Return Good Policy is as follows:

All requests for return of Products must have a return authorization number issued by Seller customer service department.

---

All returned Products must be:  i) returnable to Supplier; (ii) in the original unopened packaging; and (iii) in resalable  condition, unless such Products are not in original unopened packaging or resalable condition due to the fault  of Seller.

Products that are:  (a) special order Products; (b) custom Products; or (c) Products not available for general or unrestricted  distribution are not returnable.

The amount of credit on any given return, as described below, will be issued no later than thirty (30) days after the  receipt of the merchandise and necessary documentation and the examination and inspection of such return at the local  Seller distribution center.

Products shipped in error by Seller and nonconforming Products – FULL CREDIT – if returned within thirty (30) days of  date of invoice.

Products shipped that are damaged or do not meet Seller standard quality – FULL CREDIT – if returned within thirty (30)  days of date of invoice.

Locally stocked Products returned within thirty (30) days of date of invoice – FULL CREDIT.

Locally stocked Products returned after thirty (30) days of date of invoice – 15% RESTOCKING CHARGE.

Non-locally stocked Products that are returned within thirty (30) days of date of invoice - 15% RESTOCKING CHARGE  (plus any additional costs incurred in returning such Products to Supplier).

Notwithstanding anything  above to the contrary, Buyer shall receive FULL CREDIT on any Products returned as the  result of a recall or defective condition.

10    **Excusable Delays.**  If a party is unable, wholly or in part, by reason of  an act of God or  any other reason beyond  the reasonable control of the party, including unavailability of Products, to carry out its obligations hereunder (other  than the obligation to make money payments), that party shall  give the other party written notice thereof with  reasonable particulars concerning it.  During the period of delay, the obligations of all parties hereunder (other than the  obligation to make money payments), shall be suspended.  The affected party shall use reasonable due diligence  to continue performance as quickly as possible.

Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused  by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond  the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

11    **Taxes; Enforcement Costs.**  All amounts payable to Seller under this Agreement are exclusive of  all sales, use, value-added,  withholding, and other taxes and duties.  Buyer will promptly pay, and indemnify Seller against, all taxes  and duties assessed in connection with any such amounts, this Agreement and its performance by any authority within  or outside of the U.S., except for taxes payable on Seller's net income.

In the event it becomes necessary for either party to take action to collect any sums due or enforce any other provisions of  this Agreement, the prevailing party shall be entitled to recover all costs and expenses of collection, including  without limitation, reasonable attorney's fees and court costs.

12    **Time for Bringing Action.**  Any action of any kind arising out of or in any way connected with this Agreement, other  than collection of outstanding payment obligations, must be commenced within one (1) year upon which the cause  of action accrued.

13    **Non-Disposable Products.**  Non-disposable Products, such as furniture and equipment, sold by Seller may be refurbished  or reconditioned.

14    **Disclaimer.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO  THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.   BUYER SHALL LOOK TO SUPPLIER OF PRODUCTS AND THE PROVIDER OF SERVICE FOR ANY WARRANTY  THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY  AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

BUYER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES. REGARDLESS OF  KIND.  BUYER AGREES TO FILE SOLELY WITH SUPPLIER OF THE PRODUCTS OR THE PROVIDER OF SERVICE  ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED  BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

IN NO EVENT SHALL SELLER BE LIABLE TO BUYER UNDER, IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT  FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER  BASED ON BREACH OF CONTRACT, WARRANTY,  TORT, PRODUCT LIABILITY, OR OTHERWISE, INCLUDING  LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM  ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS OR THE PROVISION OF  SERVICES, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

15    **Assignment.**  Buyer shall not  assign or transfer any interest under any order accepted by Seller or delegate any obligation  hereunder without the prior written consent of Seller.

16    **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the commonwealth  of Virginia, without any construction or interpretation against Buyer or Seller.  Buyer and Seller irrevocably  consent to the exclusive jurisdiction of the state courts of Henrico County, Virginia  and the federal courts situated  in Richmond, Virginia, in connection with any action to enforce the provisions of this Agreement, to recover any  damages or to obtain any other relief with respect to any matter connected with or arising from this Agreement or  the  transactions contemplated  therein, including  without  limitation, breach or default  under this Agreement, or otherwise  arising under or by reason of this  Agreement.

Terms of Sale-PC Invoice 3-31-11

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Bill To:    4265044

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

District License   3000009121
Shipped To:    4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046
Ordered By: NIKISHA

Regulatory License   MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:

Customer Service Phone:         1-800-866-9243

| Sales Order Number | 18351542 | Credit Number | 38170080 |
|---|---|---|---|
| Sales Order Date | 10/15/2018 | Credit Date | 10/15/2018 |
| PO Number | KISHA9-18-18 | Original Invoice Number | 36423135 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($34.52) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 923944 | Vendor:  UNDSTR  Vend Cat#:  NLE-828473 | WATER, DEER PARK 8OZ (48/CT) PO LN 1 | -1 | CT | -1 | ████ | ████ | .00 |
| | | Winchester          UPS GROUND | | | | | | |

| | | | S A L E S   T A X | | | |
|---|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($34.52) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($34.52) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Credit Memo**

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 38170080 | Date | 10/15/2018 |
| | Terms | AR  NET 45 DAYS | |
| | | | ($34.52) |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*******************************************
CREDIT MEMORANDUM
DO NOT PAY

These terms of sale ("**Terms of Sale**") shall apply to the sale of products (the "**Products**") and the provision of services ("**Services**") purchased by the entity named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

**1.    General Terms of Sale.**

1.1.    "Standard Credit and Payment Terms.    All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.    Taxes.    All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.    Discrepancies.    Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.    Non-Disposable Products.    Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.    Freight Charges, Shipping and Handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice.  Detailed information on the fuel surcharge can be obtained by request.  Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.    Title and Risk of Loss.    Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.    Third-Party Logistics Provider Services.    If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.    Returned Goods.    Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
·    Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.
·    Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.
·    Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.
·    Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
·    Non-returnable Products that are returnable to the Supplier  NO CREDIT WILL BE ISSUED
§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.    Chargebacks.    In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount.  In the event Supplier:  (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.    Force Majeure.    Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.    Product Recommendations.    Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision.  Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Customer agrees and stipulates that it is

as sophisticated customer that will review and evaluate the information provided by the intermediary between Seller and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE.  THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION.  The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history.  Alternative products are not necessarily the lowest priced items available.

5.    DISCLAIMER.    SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DAMAGES ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.    LIMITATION OF LIABILITY.    IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.    Government Contracts.  Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.    No Conflict or Interference.  Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.    Confidential Information.  Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.    REPORTING AND DISCLOSURE OBLIGATIONS.  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11.    Controlled Substances and Other Regulations.  If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or ordinance or any governmental requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.    Compliance with Laws.  Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.    Own Use. All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products to Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.    Relationship of the Parties.  The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other party.

15.    Governing Law.  This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.    WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

District License   3000009121
Shipped To:    4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046
Ordered By: MARYELLEN

Regulatory License   MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:

Customer Service Phone:        1-800-866-9243

| Sales Order Number | 18975310 | Credit Number | 38783196 |
|---|---|---|---|
| Sales Order Date | 10/23/2018 | Credit Date | 10/23/2018 |
| PO Number | KISHA9-18-18 | Original Invoice Number | 38562159 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($34.52) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 923944 | Vendor:  UNDSTR | WATER, DEER PARK 8OZ (48/CT) | -1 | CT | -1 | ███ | ███ | .00 |
| | Vend Cat#:   NLE-828473 | PO LN 1 | | | | | | |
| | Winchester | UPS GROUND | | | | | | |

| | STATE | COUNTY | CITY | DISTRICT | OTHER |
|---|---|---|---|---|---|
| **S A L E S   T A X** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($34.52) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($34.52) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**

RCHAP6519

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 38783196 | Date | 10/23/2018 |
| | Terms | | AR  NET 45 DAYS |
| | | | ($34.52) |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
Please Remit To:
*****************************************

CREDIT MEMORANDUM
DO NOT PAY

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to all sales of products (the "**Products**") and/or services (collectively, "**Services**") purchased under any agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

**1.    General Terms of Sale.**

1.1.    "Standard Credit and Payment Terms.    All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements out of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to pay pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.    Taxes.    All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.    Discrepancies.    Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.    Non-Disposable Products.    Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.    Freight Charges, Shipping and Handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.    Title and Risk of Loss.    Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.    Third-Party Logistics Provider Services.    If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.    Returned Goods.    Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).

§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.

§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.

§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.

-      Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.

-      Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.

-      Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.

-      Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).

-      Non-returnable Products that are not returnable to the Supplier  NO CREDIT WILL BE ISSUED

§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.    **Chargebacks.**    In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.    **Force Majeure.**    Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.    **Product Recommendations.**    Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

---

as sophisticated buyer as relates to the ordering of Products and that the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OR WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRY-AVAILABLE INFORMATION.  The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history.  Alternative products are not necessarily the lowest priced items available.

5.    **DISCLAIMER.**    SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR EXPENSE ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.    **LIMITATION OF LIABILITY.**    IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.    **Government Contracts.**    Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.    **No Conflict or Interference.**    Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment  or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.    **Confidential Information.**    Pricing and terms of this Agreement are confidential information of Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.    **REPORTING AND DISCLOSURE OBLIGATIONS.**  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND McKESSON CORPORATION.

11.    **Controlled Substances and Other Regulations.**    If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or ordinance or any governmental requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.    **Compliance with Laws.**    Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnity and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.    **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market to Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.    **Relationship of the Parties.**    The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15.    **Governing Law.**    This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.    **WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# McKESSON

**McKesson Medical-Surgical**
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1
RCHAP6519

Bill To:    4265044

Shipped From:

MCKESSON MEDICAL SURGICAL (HOUSTON)
HOUSTON #16
20710 HEMPSTEAD RD
HOUSTON,TX 77065

District License  7200001102
Shipped To:    4324957

**ST CHRISTOPHERS HOPSITAL FOR CHILDREN**
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134
Ordered By: EMTZPML

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:            1-800-866-9243

| Sales Order Number | 18223177 | Credit Number | 38560064 |
|---|---|---|---|
| Sales Order Date | 10/12/2018 | Credit Date | 10/19/2018 |
| PO Number | 033D-244542 | Original Invoice Number | 37246916 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($320.54) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 907757 | Vendor:  GECUFF  Vend Cat#:  SFT-A1-2A | BP CUFF 17-25CM SM ADULT PO LN 4 | -8 | BX | -8 | ▉ | ▉ | -18.14 |
| | SHIPPED: 10/15/2018 | Houston | WILL CALL | | | | | |

| | | **S A L E S   T A X** | | | |
|---|---|---|---|---|---|
| | STATE ($18.14) | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($302.40) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($18.14) | ($320.54) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Credit Memo**
RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 38560064 | Date | 10/19/2018 |
| | Terms | AR  NET 45 DAYS | |
| | | | ($320.54) |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*****************************************

CREDIT MEMORANDUM
DO NOT PAY

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to all Products or Services ("**Products or Services**") purchased by a customer ("**Customer**") from the subsidiary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRY-AVAILABLE INFORMATION. The Switch & Save program is an by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a items available. manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. 5. **DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO

1. **General Terms of Sale.** THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER
1.1. "Standard Credit and Payment Terms. All payments for Products and/or Services must be received by Seller Net within thirty (30) WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due". Past Due balances are subject ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or AGREEMENT. CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, SERVICES. fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless 6. **LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED specified payment term Due Dates fall on a non-business day or holiday, payment is due and payable on the succeeding business day. ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing THIS AGREEMENT. at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount 7. **Government Contracts.** Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly and conditions of any government contracts to which Customer may be a party. substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information 8. **No Conflict or Interference.** Customer represents and warrants that execution and performance of this Agreement does not required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the both, would become a default) under, or require any consent under any agreement between Customer and any other party or Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer. Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or
1.2. Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and and hold Seller harmless for any breach of the foregoing representation and warranty. payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory 9. **Confidential Information.** Pricing and terms of this Agreement are confidential information of Seller and shall not be requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, disclosed without consent from Seller. Seller may provide purchase data to its affiliates, vendors, designated group purchasing unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations. organizations, and other third parties.
1.3. Discrepancies. Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any 10. **REPORTING AND DISCLOSURE OBLIGATIONS.** THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All CREDITS AND OTHER PRICE ADJUSTMENTS. CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE applicable invoice is due. WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE
1.4. Non-Disposable Products. Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON reconditioned. CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON
1.5. Freight Charges, Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement CORPORATION. or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the 11. **Controlled Substances and Other Regulations.** If performance of this Agreement would cause Seller to be noncompliant contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or ordinance or any governmental local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped from the supplier. For orders requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller. notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny
1.6. Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state distribution center. or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller
1.7. Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products. products or activities.
1.8. Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with 12. **Compliance with Laws.** Customer represents and warrants that it will fully comply with all Federal, state and local laws and its then standard Return Goods Policy. Seller's current Return Good Policy is as follows: regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or
§ All requests for return of Products must have a return authorization number issued by Seller's customer service department or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being Seller's automated Customer Service Platform (e.g., SupplyManager™). purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in
§ All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller. compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a
§ Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to SupplyManager; or (iv)Products not available for general or unrestricted distribution. non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive
§ The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product termination or expiration of this Agreement. and necessary documentation, and the examination and inspection of such return at the local Seller distribution center. 13. **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in
- Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality FULL CREDIT. shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products
- Locally stocked Products returned within thirty (30) days of date of invoice FULL CREDIT. purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market for Products that
- Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice FULL CREDIT LESS A are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of 15% RESTOCKING CHARGE. Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer
- Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's Seller). policies.
§ Non-returnable Products are not returnable to the Supplier NO CREDIT WILL BE ISSUED 14. **Relationship of the Parties.** The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to
§ Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or recall or defective condition. employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.
2. **Chargebacks.** In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that 15. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier Virginia. ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or 16. **WAIVER OF JURY TRIAL. THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION** incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such **ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.** Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.
3. **Force Majeure.** Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.
4. **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

# MCKESSON

**Invoice**
Page 1 of 2

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:     4265044

District License   3000009121
Shipped To      4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:            1-800-866-9243

| Sales Order Number | 19740372 | Invoice Number | 39573864 |
|---|---|---|---|
| Sales Order Date | 11/02/2018 | Invoice Date | 11/02/2018 |
| PO Number | 033D-245945 | Payment Due Date | 12/17/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $363.44 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 726145 | Vendor:  MOLYCK Vend Cat#:  42165 | GLOVE, BIOGEL PI ULTRTOUCH G S PO LN 1 | 1 | CS | 0 | ■ | ■ | .00 |
| | SHIPPED: 11/02/2018 | Little Rock | | | | | | |
| 726146 | Vendor:  MOLYCK Vend Cat#:  42170 | GLOVE, BIOGEL PI ULTRTOUCH G S PO LN 2 | 1 | CS | 0 | ■ | ■ | .00 |
| | SHIPPED: 11/02/2018 | Pittsburgh | | | | | | |
| 962936 | Vendor:  MOLYCK Vend Cat#:  48575 | GLOVE, SURG PI MICRO SYN PF ST PO LN 3 | 1 | CS | 1 | ■ | ■ | .00 |
| | 1Z31FW670376558217 | | | | | | | |
| | SHIPPED: 11/02/2018 | Winchester | | | | | | |
| 726147 | Vendor:  MOLYCK Vend Cat#:  42175 | GLOVE, BIOGEL PI ULTRTOUCH G S PO LN 4 | 2 | CS | 0 | ■ | ■ | .00 |
| | SHIPPED: 11/02/2018 | Orlando | | | | | | |

# MCKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 39573864 | Date | 11/02/2018 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 12/17/2018 | | $363.44 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

These terms of sale ("**Terms of Sale**") shall apply to and govern all Products ("**Products**") and/or services ("**Services**") purchased by the Customer (intermediary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1.   **General Terms of Sale.**

1.1.   "Standard Credit and Payment Terms.   All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery), (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on or becomes a Past Due balance, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.   Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.   Discrepancies.  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.   Non-Disposable Products.  Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.   Freight Charges, Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice.  Detailed information on the fuel surcharge can be obtained by request.  Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.   Title and Risk of Loss.  Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.   Third-Party Logistics Provider Services.  If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.   Returned Goods.  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§   All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).

§   All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.

§   Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.

§   The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.

·   Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.

·   Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.

·   Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.

·   Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).

·   Non-returnable Products that are returnable to the Supplier  NO CREDIT WILL BE ISSUED

§   Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.   **Chargebacks.**  In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.   **Force Majeure.**  Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.   **Product Recommendations.**  Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision.  Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Customer agrees and stipulates that it is

a sophisticated purchaser of Products and that it agrees to assume all risk in the use of the Products by the intermediary between Seller and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION.  The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5.   **DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEFECTS ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.   **LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL, DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.   **Government Contracts.**  Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.   **No Conflict or Interference.**  Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment  or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.   **Confidential Information.**  Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.   **REPORTING AND DISCLOSURE OBLIGATIONS.  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.**

11.   **Controlled Substances and Other Regulations.**  If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, prescription requirement, or any governmental requirement, guideline or procurement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.   **Compliance with Laws.**  Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.   **Own Use.**  All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.   **Relationship of the Parties.**  The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15.   **Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.   **WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# McKESSON

**Invoice**
Page 2 of 2

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:    4265044
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Shipped To:
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

| Invoice Number  39573864 | PO Number 033D-245945 | Invoice Date    11/02/2018 |
|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|

**S A L E S   T A X**

| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |
|---|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $363.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $363.44 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

District License  3000009121
Shipped To:     4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046
Ordered By: NIKISHA

Regulatory License    MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:

Customer Service Phone:          1-800-866-9243

| | | | |
|---|---|---|---|
| Sales Order Number | 13557380 | Credit Number | 33501550 |
| Sales Order Date | 08/06/2018 | Credit Date | 08/13/2018 |
| PO Number | KISHA731 | Original Invoice Number | 32613659 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($21.05) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 549597 | Vendor:  MEDACT Vend Cat#:  115 | PEN, MARKING STD CODED W/RULER PO LN 1 | -1 | BX | -1 | ▮ | ▮ | .00 |
| | SHIPPED: 08/13/2018 | Winchester | UPS GROUND | | | | | |

| | STATE | COUNTY | S A L E S   T A X CITY | DISTRICT | OTHER |
|---|---|---|---|---|---|
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($21.05) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($21.05) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Credit Memo**

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

| | | | |
|---|---|---|---|
| Account Number | 4265044 | | |
| Document Number | 33501550 | Date | 08/13/2018 |
| | Terms | AR  NET 45 DAYS | |
| | | | ($21.05) |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*******************************************

CREDIT MEMORANDUM
DO NOT PAY

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to all Products or Services ("Products/Services") purchased by customer ("**Customer**") from a supplier ("**Seller**"). If an agreement to purchase Products exists between Seller and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE.

named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

**1.    General Terms of Sale.**

1.1.    Standard Credit and Payment Terms.    All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.    Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.    Discrepancies.  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.    Non-Disposable Products.  Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.    Freight Charges, Shipping and Handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice.  Detailed information on the fuel surcharge can be obtained by request.  Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.    Title and Risk of Loss.  Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.    Third-Party Logistics Provider Services.  If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.    Returned Goods.  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).

§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.

§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.

§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.

-    Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.

-    Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.

-    Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.

-    Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).

-    Products that are not returnable to the Supplier  NO CREDIT WILL BE ISSUED

§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

**2.    Chargebacks.**  In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount.  In the event Supplier:  (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

**3.    Force Majeure.**  Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

**4.    Product Recommendations.**  Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision.  Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

**5.    DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

**6.    LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.    Government Contracts.**  Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

**8.    No Conflict or Interference.**  Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment  or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

**9.    Confidential Information.**  Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

**10.    REPORTING AND DISCLOSURE OBLIGATIONS.**  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

**11.    Controlled Substances and Other Regulations.**  If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation, registration or governmental requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

**12.    Compliance with Laws.**  Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that:  (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnity and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

**13.    Own Use.**  All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

**14.    Relationship of the Parties.**  The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

**15.    Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

**16.    WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

Terms of Sale-PC Invoice 5-31-18

# McKESSON

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License  3000009121
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:              1-800-866-9243

| Sales Order Number | 12261733 | Invoice Number | 31640711 |
|---|---|---|---|
| Sales Order Date | 07/17/2018 | Invoice Date | 07/18/2018 |
| PO Number | 033D-241403 | Payment Due Date | 09/01/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $594.12 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 195186 | Vendor: SMITHS  Vend Cat#:   305306 | CATHETER, IV PROT 24GX3/4" (50  PO LN 1 | 1 | CS | 1 | ███ | ███ | .00 |
|  | 1Z31FW670373105694 |  |  |  |  |  |  |  |
|  | SHIPPED: 07/18/2018 | Winchester |  |  |  |  |  |  |

| | | SALES TAX | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | |
| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
| $594.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $594.12 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Invoice**

# McKESSON

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 31640711 | Date | 07/18/2018 |
| | | Terms | AR  NET 45 DAYS |
| Pay This Amount Before | 09/01/2018 | | $594.12 |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

Please Remit To:
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to and govern Products and Services that are delivered, sold, or provided by the party identified as a seller on any applicable invoice or other document, or any subsidiary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1. **General Terms of Sale.**

1.1. "Standard Credit and Payment Terms. All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a non-business day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time to Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer under the applicable invoice is due.

1.2. Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3. Discrepancies. Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4. Non-Disposable Products. Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5. Freight Charges, Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6. Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7. Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispose Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8. Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§ All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).

§ All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.

§ Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.

§ The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.

- Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality FULL CREDIT.

- Locally stocked Products returned within thirty (30) days of date of invoice FULL CREDIT.

- Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice FULL CREDIT LESS A 15% RESTOCKING CHARGE.

- Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).

- Non-returnable Products that are not resalable to the Supplier NO CREDIT WILL BE ISSUED

§ Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2. **Chargebacks.** In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3. **Force Majeure.** Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4. **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("Equivalency Recommendations"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

a superior Product or that it is appropriate for use in any particular circumstance.

THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5. **DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT. CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR EXPENSE ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6. **LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7. **Government Contracts.** Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8. **No Conflict or Interference.** Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9. **Confidential Information.** Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller. Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10. **REPORTING AND DISCLOSURE OBLIGATIONS.** THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11. **Controlled Substances and Other Regulations.** If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, ordinance, governmental or regulatory requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12. **Compliance with Laws.** Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13. **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14. **Relationship of the Parties.** The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16. **WAIVER OF JURY TRIAL. THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# McKESSON

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:    4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Regulatory License   MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:                1-800-866-9243

| | | | |
|---|---|---|---|
| Sales Order Number | 1359339 | Invoice Number | 19990404 |
| Sales Order Date | 01/25/2018 | Invoice Date | 01/31/2018 |
| PO Number | KISHA012218 | Payment Due Date | 03/17/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $4.19 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| | please approve, bill is expensive but its becuse of the pei pens and tetanus diptheria vaccines. | | | | | | | |
| 595900 | Vendor:  UNDSTR | CALCULATOR,8 DIG LRG DIS | 1 | EA | 1 | ▉ | ▉ | .24 |
| | Vend Cat#:   SHR-EL233SB | PO LN 12 | | | | | | |
| | MMS PO#    21841451 | | | | | | | |

| S A L E S   T A X | | | | | |
|---|---|---|---|---|---|
| | STATE $0.24 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $3.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.24 | $4.19 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| | | | |
|---|---|---|---|
| Account Number | 4265044 | | |
| Document Number | 19990404 | Date | 01/31/2018 |
| Terms | | AR  NET 45 DAYS | |
| Pay This Amount Before | 03/17/2018 | | $4.19 |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms and conditions of this invoice apply to all ("**Products**") and/or services ("**Services**") purchased by Buyer from Seller. These Terms of Sale supersede  the  terms  and  conditions  of  any  prior  agreement.  These  Terms  of  Sale  is  a  separate  document  signed  by  both parties, the terms of the separate document signed by both parties, unless such written agreement is executed by an authorized representative of Seller, any Buyer purchase order or other document, or any oral agreement between the parties.  In the event of any conflict or inconsistency between these Terms of Sale and a separate  document signed by both parties, the terms of the separate document signed by both parties shall control.  No provision in either  party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale.  No prior course of dealing or usage of trade shall affect this invoice or be admissible to explain, modify, or contradict this invoice and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "Supplier" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1   **Credit and Payment.**  All payments for Products and/or Services must be received by Seller Net within thirty (30) days  from the date of invoice, unless otherwise agreed to by the parties.  Any invoiced amount remaining unpaid after thirty  (30) days shall be "past due."  Past due balances are subject to an interest charge of one and one-half percent (1.5%)  per month.  Any interest charged and collected in excess of applicable state law shall be returned to Seller.  If Buyer fails to pay  any or all of the invoiced amount when due or if Buyer's credit or financial status erodes or otherwise renders Seller  insecure, Seller may, in its sole discretion, without further notice immediately:  (i) suspend Seller's performance or cancel  all or any part of an order hereunder, (ii) change any payment term to any term determined by Seller (including  imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount  arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate  and/or deduce Buyer ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately  due and payable all other amounts invoiced by Seller to Buyer regardless of when such payments would otherwise  be due from Buyer, and/or (v) increase the prices for Products and/or Services.  Any discrepancy between any order  placed  by Buyer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days  of Seller's invoice date, except for price or payment discrepancies or any claims for reimbursement, which must be reported to  Seller for resolution within thirty (30) days of Seller's invoice date.  Seller shall have no obligation to receive and Buyer  shall hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any  goods if claim therefore is not made within said applicable ten (10) or thirty (30) day period.  All requests for proof of  delivery for reasons other than shipment, price or payment disputes must be made within sixty (60) days of Seller's  invoice date.  If the payment term due date falls on a weekend day or holiday, payment is due and payable on the  succeeding business day.

2   **Chargebacks.**  In consideration of Seller allowing Buyer to purchase Products at discounted prices, Buyer agrees that seller  will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable  Supplier ("**Chargeback(s)**").  In the event Seller is denied any Chargeback from a Supplier as a result of buyer  providing incomplete, inaccurate, or incorrect information to Seller or Supplier, Buyer will be liable to Seller for such Chargeback amount.

3   **Reporting  and Disclosure Obligations.THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER  PRICE ADJUSTMENTS.  BUYER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL  DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT  HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER  DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL  APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR.**

4   **Shipment, Risk of Loss and Title.**  Shipment of Products per routine order to Buyer and subsequent back orders related to  the original shipment shall be shipped FOB Destination, except for drop shipments which shall be shipped in accordance  with Supplier's shipping policies.  The cost of shipment, if any, has been paid by Seller and added to this invoice.  Emergency  orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, Products  dropped shipped from Supplier, and orders not regularly scheduled are subject to an added shipping and handling  charge determined by Seller and disclosed to Buyer prior to or at the time of order.  Seller shall have the right to ship the  Products at all times via its own vehicle or a carrier selected by Seller.

5   **Minimum Order Requirement.**  Minimum orders may be subject to Seller's minimum order requirement in effect and quoted at  the time of order.  For orders less than such minimum order requirement or orders placed via telephone or facsimile,  Seller may add to the invoice a handling charge determined by Seller and disclosed to Buyer prior to or at the time of order.

6   **Product Recommendations.**  Seller may make available to Buyer certain recommendations concerning products that are  comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Buyer ("**Equivalency Recommendations**").

Buyer agrees and stipulates that in making any Equivalency Recommendation, Seller is relying solely on the independent skill,  knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information  upon which Buyer can rely in order to make its product selection decision.  Buyer agrees and stipulates that in making  product decisions Buyer is relying on its independent professional judgment.  Buyer hereby agrees to waive, release, indemnify  and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Buyer agrees  and stipulates that it is a sophisticated user of medical products and it agrees and stipulates that it is a learned  intermediary between Seller and the end user/patient.

THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE.  THE EQUIVALENCY  RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES  CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY  ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY  THE BUYER'S SUPPLIER AND OTHER INDUSTRY–AVAILABLE INFORMATION.

7   **Data.**  Buyer acknowledges that Seller will provide information and reports to group purchasing organizations, Suppliers, and  other third parties relating to Buyer's purchases from Seller.  Buyer hereby waives any rights of confidentiality with respect to  such information to the extent necessary to allow Seller to provide such information to group purchasing organizations,  Suppliers, and other third parties.

8   **Resale of Products.**  Buyer hereby certifies that it is purchasing Products from Seller for its own use.  Products are not for  resale.  Buyer shall purchase Products from Seller for its own use and shall not resell or redistribute Products.

9   **Return Goods Policy.**  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in  accordance with its then standard Return Goods Policy.  Seller's current Return Good Policy is as follows:

All requests for return of Products must have a return authorization number issued by Seller customer service department.

All returned Products must be:  i) returnable to Supplier; (ii) in the original unopened packaging; and (iii) in resalable  condition, unless such Products are not in original unopened packaging or resalable condition due to the fault of Seller.

Products that are:  (a) special order Products; (b) custom Products; or (c) Products not available for general or unrestricted  distribution are not returnable.

The amount of credit on any given return, as described below, will be issued no later than thirty (30) days after the receipt  of the merchandise and necessary documentation and the examination and inspection of such return at the local Seller  distribution center.

Products shipped in error by Seller and nonconforming Products – FULL CREDIT – if returned within thirty (30) days of date of  invoice.

Products shipped that are damaged or do not meet Seller standard quality – FULL CREDIT – if returned within thirty (30) days of  date of invoice.

  Locally stocked Products returned within thirty (30) days of date of invoice – FULL CREDIT.

  Locally stocked Products returned after thirty (30) days of date of invoice – 15% RESTOCKING CHARGE.

  Non-locally stocked Products that are returned within thirty (30) days of date of invoice - 15% RESTOCKING CHARGE  (plus any additional costs incurred in returning such Products to Supplier).

Notwithstanding anything  above to the contrary, Buyer shall receive FULL CREDIT on any Products returned as the result of a  recall or defective condition.

10   **Excusable Delays.**  If a party is unable, wholly or in part, by reason of  an act of God or  any other reason beyond the  reasonable control of the party, including unavailability of Products, to carry out its obligations hereunder (other than the  obligation to make money payments), that party shall give the other party written notice thereof with reasonable  particulars concerning it.  During the period of delay, the obligations of all parties hereunder (other than the obligation to make  money payments), shall be suspended. The affected party shall use reasonable due diligence to continue performance as quickly as possible.

Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by  fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's  reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

11   **Taxes; Enforcement Costs.**  All amounts payable to Seller under this Agreement are exclusive of all sales, use,  value-added, withholding, and other taxes and duties.  Buyer will promptly pay, and indemnify Seller against, all  taxes and duties assessed in connection with any such amounts, this Agreement and its performance by any authority  within or outside of the U.S., except for taxes payable on Seller's net income.

In the event it becomes necessary for either party to take action to collect any sums due or enforce any other provisions of  this Agreement, the prevailing party shall be entitled to recover all costs and expenses of collection, including without  limitation, reasonable attorney's fees and court costs.

12   **Time for Bringing Action.**  Any action of any kind arising out of or in any way connected with this Agreement, other than  collection of outstanding payment obligations, must be commenced within one (1) year upon which the cause of action accrued.

13   **Non-Disposable Products.**  Non-disposable Products, such as furniture and equipment, sold by Seller may be refurbished or  reconditioned.

14   **Disclaimer.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE  MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  BUYER SHALL  LOOK TO SUPPLIER OF PRODUCTS AND THE PROVIDER OF SERVICE FOR ANY WARRANTY THEREON.  NO AGENT,  EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR  WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

BUYER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES. REGARDLESS OF KIND.  BUYER  AGREES TO FILE SOLELY WITH SUPPLIER OF THE PRODUCTS OR THE PROVIDER OF SERVICE ANY CLAIM OR LAWSUIT  ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR  POSSESSION OF PRODUCTS OR SERVICES.

IN NO EVENT SHALL SELLER BE LIABLE TO BUYER UNDER, IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY  SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF  CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, INCLUDING LOST PROFITS) FROM ANY CAUSE,  INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF  PRODUCTS OR THE PROVISION OF SERVICES, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF  SUCH DAMAGE.

15   **Assignment.**  Buyer shall not  assign or transfer any interest under any order accepted by Seller or delegate any  obligation hereunder without the prior written consent of Seller.

16   **Governing Law.**  This Agreement shall be  governed  by and construed  in accordance  with the laws of the  commonwealth  of Virginia, without any construction or interpretation against Buyer or Seller.  Buyer and Seller irrevocably  consent to the exclusive jurisdiction of the state courts of Henrico County, Virginia  and the federal courts situated in  Richmond, Virginia, in connection with any action to enforce the provisions of this Agreement, to recover any damages  or to obtain any other relief with respect to any matter connected with or arising from this Agreement or the  transactions contemplated  therein, including  without  limitation, breach or default  under this Agreement, or otherwise  arising under or by reason of this  Agreement.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Bill To:     4265044

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

District License  3000009121
Shipped To:     4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046
Ordered By: KISHA

Regulatory License    MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:

Customer Service Phone:             1-800-866-9243

| Sales Order Number | 2554437 | Credit Number | 20952945 |
|---|---|---|---|
| Sales Order Date | 02/13/2018 | Credit Date | 02/13/2018 |
| PO Number | KISHA020618 | Original Invoice Number | 20586075 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($18.32) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 817521 | Vendor:  SPSMED  Vend Cat#:   GCIBL | MASK, FACE PROT ISOFLUID EARLO PO LN 1 | -2 | BX | -2 | ███ | ███ | .00 |
| | | Winchester          UPS GROUND | | | | | | |

| | | STATE $0.00 | COUNTY $0.00 | S A L E S   T A X  CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |
|---|---|---|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($18.32) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($18.32) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Credit Memo**

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 20952945 | Date | 02/13/2018 |
| | Terms | AR  NET 45 DAYS | |
| | | | ($18.32) |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*****************************************

CREDIT MEMORANDUM
DO NOT PAY

The terms and conditions of this invoice apply to all ( **"Products"** ) and/or services ( **"Services"** ) purchased by Buyer from Seller. These Terms of Sale supersede the terms and conditions of any purchase order from Buyer, unless such written agreement is executed by an authorized representative of Seller, any Buyer purchase order or other document, or any oral agreement between the parties. In the event of any conflict or inconsistency between these Terms of Sale and a separate document signed by both parties, the terms of the separate document signed by both parties shall control. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course or dealing or usage of trade shall affect this invoice or be admissible to explain, modify, or contradict this invoice and the agreement arising therefrom (collectively " **Agreement** " ). For purposes of this Agreement, the term "Supplier" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

**1    Credit and Payment.**  All payments for Products and/or Services must be received by Seller Net within thirty (30) days  from the date of invoice, unless otherwise agreed to by the parties.  Any invoiced amount remaining unpaid after thirty  (30) days shall be "past due."  Past due balances are subject to an interest charge of one and one-half percent (1.5%)  per month.  Any interest charged and collected in excess of applicable state law shall be repaid to Seller to pay  any or all of the invoiced amount when due or if Buyer's credit or financial status erodes or otherwise renders Seller  insecure, Seller may, in its sole discretion, without further notice immediately:  (i) suspend Seller's performance or  cancel  all or any part of an order hereunder, (ii) change any payment term to any terms determined by Seller (including  imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount   arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate  and/or declare Buyer ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately  due and payable all other amounts invoiced by Seller to Buyer regardless of when such payments would otherwise  be  due from Buyer, and/or (v) increase the prices for Products and/or Services.  Any discrepancy between any order  placed  by Buyer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days  of Seller's  invoice date, except for price or payment discrepancies or any claims for reimbursement, which must be reported  to Seller for resolution within thirty (30) days of Seller's invoice date.  Seller shall have no obligation to receive and Buyer  shall hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any  goods if claim therefore is not made within said applicable ten (10) or thirty (30) day period.  All requests for proof of  delivery for reasons other than shipment, price or payment disputes must be made within sixty (60) days of Seller's  invoice  date.  If the payment term due date falls on a weekend day or holiday, payment is due and payable on the  succeeding business day.

**2    Chargebacks.**  In consideration of Seller allowing Buyer to purchase Products at discounted prices, Buyer agrees that seller  will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable  Supplier ("**Chargeback(s)**").  In the event Seller is denied any Chargeback from a Supplier as a result of buyer  providing incomplete, inaccurate, or incorrect information to Seller or Supplier, Buyer will be liable to Seller for such  Chargeback amount.

**3    Reporting and Disclosure Obligations. THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS  AND OTHER PRICE ADJUSTMENTS.  BUYER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY  REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND  STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE  THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN  ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE  DISCOUNT SAFE HARBOR.**

**4    Shipment, Risk of Loss and Title.**  Shipment of Products per routine order to Buyer and subsequent back orders related  to the original shipment shall be shipped FOB Destination, except for drop shipments which shall be shipped in accordance  with Supplier's shipping policies.  The cost of shipment, if any, has been paid by Seller and added to this invoice.  Emergency  orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, Products  dropped shipped from Supplier, and orders not regularly scheduled are subject to an added shipping and handling charge  determined by Seller and disclosed to Buyer prior to or at the time of order.  Seller shall have the right to ship the  Products at all times via its own vehicle or a carrier selected by Seller.

**5    Minimum Order Requirement.**  Minimum orders may be subject to Seller's minimum order requirement in effect and quoted  at the time of order.  For orders less than such minimum order requirement or orders placed via telephone or facsimile,  Seller may add to the invoice a handling charge determined by Seller and disclosed to Buyer prior to or at the time of  order.

**6    Product Recommendations.**  Seller may make available to Buyer certain recommendations concerning products that are  comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Buyer  ("**Equivalency Recommendations**").

Buyer agrees and stipulates that in making any Equivalency Recommendation, Seller is relying solely on the independent skill,  knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product  information upon which Buyer can rely in order to make its product selection decision.  Buyer agrees and stipulates that in  making product decisions Buyer is relying on its independent professional judgment.  Buyer hereby agrees to waive, release,  indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Buyer  agrees and stipulates that it is a sophisticated user of medical products and it agrees and stipulates that it is a learned  intermediary between Seller and the end user/patient.

THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE.  THE  EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR  WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH  REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS  ARE BASED UPON MATERIALS SUPPLIED BY THE BUYER'S SUPPLIER AND OTHER INDUSTRY–AVAILABLE  INFORMATION.

**7    Data.**  Buyer acknowledges that Seller will provide information and reports to group purchasing organizations, Suppliers,  and other third parties relating to Buyer's purchases from Seller.  Buyer hereby waives any rights of confidentiality with  respect to such information to the extent necessary to allow Seller to provide such information to group purchasing  organizations, Suppliers, and other third parties.

**8    Resale of Products.**  Buyer hereby certifies that it is purchasing Products from Seller for its own use.  Products are not for  resale.  Buyer shall purchase Products from Seller for its own use and shall not resell or redistribute Products.

**9    Return Goods Policy.**  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in  accordance with its then standard Return Goods Policy.  Seller's current Return Good Policy is as follows:

All requests for return of Products must have a return authorization number issued by Seller customer service department.

All returned Products must be:  i) returnable to Supplier; (ii) in the original unopened packaging; and (iii) in resalable condition, unless such Products are not in original unopened packaging or resalable condition due to the fault of Seller.

Products that are:  (a) special order Products; (b) custom Products; or (c) Products not available for general or unrestricted distribution are not returnable.

The amount of credit on any given return, as described below, will be issued no later than thirty (30) days after the receipt of the merchandise and necessary documentation and the examination and inspection of such return at the local Seller distribution center.

Products shipped in error by Seller and nonconforming Products – FULL CREDIT – if returned within thirty (30) days of date of invoice.

Products shipped that are damaged or do not meet Seller standard quality – FULL CREDIT – if returned within thirty (30) days of date of invoice.

Locally stocked Products returned within thirty (30) days of date of invoice – FULL CREDIT.

Locally stocked Products returned after thirty (30) days of date of invoice – 15% RESTOCKING CHARGE.

Non-locally stocked Products that are returned within thirty (30) days of date of invoice - 15% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier).

Notwithstanding anything above to the contrary, Buyer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

**10    Excusable Delays.**  If a party is unable, wholly or in part, by reason of an act of God or any other reason beyond the  reasonable control of the party, including unavailability of Products, to carry out its obligations hereunder (other than the  obligation to make money payments), that party shall give the other party written notice thereof with reasonable  particulars concerning it.  During the period of delay, the obligations of all parties hereunder (other than the obligation to  make money payments) shall be suspended.  The affected party shall use reasonable due diligence to continue performance  as quickly as possible.

Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance  caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the  first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

**11    Taxes; Enforcement Costs.**  All amounts payable to Seller under this Agreement are exclusive of all sales, use, value-added,  withholding, and other taxes and duties.  Buyer will promptly pay, and indemnify Seller against, all taxes and duties  assessed in connection with any such amounts, this Agreement and its performance by any authority within or outside of the  U.S., except for taxes payable on Seller's net income.

In the event it becomes necessary for either party to take action to collect any sums due or enforce any other provisions of  this Agreement, the prevailing party shall be entitled to recover all costs and expenses of collection, including without  limitation, reasonable attorney's fees and court costs.

**12    Time for Bringing Action.**  Any action of any kind arising out of or in any way connected with this Agreement, other than  collection of outstanding payment obligations, must be commenced within one (1) year upon which the cause of action accrued.

**13    Non-Disposable Products.**  Non-disposable Products, such as furniture and equipment, sold by Seller may be refurbished or  reconditioned.

**14    Disclaimer.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO  THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.   BUYER SHALL LOOK TO SUPPLIER OF PRODUCTS AND THE PROVIDER OF SERVICE FOR ANY WARRANTY  THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY  AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

BUYER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES.  REGARDLESS OF  KIND.  BUYER AGREES TO FILE SOLELY WITH SUPPLIER OF THE PRODUCTS OR THE PROVIDER OF SERVICE  ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE  USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

IN NO EVENT SHALL SELLER BE LIABLE TO BUYER UNDER, IN CONNECTION WITH, OR RELATED TO THIS  AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES,  WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE,  (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING  FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS OR THE PROVISION OF SERVICES,  AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

**15    Assignment.**  Buyer shall not  assign or transfer any interest under any order accepted by Seller or delegate any obligation  hereunder without the prior written consent of Seller.

**16    Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the commonwealth  of Virginia, without any construction or interpretation against Buyer or Seller.  Buyer and Seller irrevocably consent to the  exclusive jurisdiction of the state courts of Henrico County, Virginia  and the federal courts situated in Richmond, Virginia,  in connection with any action to enforce the provisions of this Agreement, to recover any damages or to obtain any other  relief with respect to any matter connected with or arising from this Agreement or the transactions contemplated  therein,  including without limitation, breach or default under this Agreement, or otherwise arising under or by reason of this  Agreement.

**McKESSON**

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License  3000009121
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:                1-800-866-9243

| Sales Order Number | 5034209 | Invoice Number | 23687990 |
|---|---|---|---|
| Sales Order Date | 03/22/2018 | Invoice Date | 03/23/2018 |
| PO Number | 033D-236827 | Payment Due Date | 05/07/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $600.20 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 684172 | Vendor:  BD | SYRINGE/NDL, INSULIN .3CC 31GX PO LN 1 | 4 | CS | 4 | ▮ | ▮ | .00 |
| | Vend Cat#:    328440 | | | | | | | |
| | 1Z31FW670369526167 | 1Z31FW670369526176 | | | 1Z31FW670369526185 | | | |
| | 1Z31FW670369526194 | | | | | | | |
| | SHIPPED: 03/23/2018 | Winchester | | | | | | |

| | **S A L E S   T A X** | | | | | |
|---|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $600.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $600.20 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Invoice**

**McKESSON**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 23687990 | Date | 03/23/2018 |
| Terms | | AR  NET 45 DAYS | |
| Pay This Amount Before | 05/07/2018 | | $600.20 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
Please Remit To:
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms and conditions of this invoice apply to all ("**Products**") and/or services ("**Services**") purchased by Buyer from Seller. These Terms of Sale supersede the terms and conditions of any prior document. The parties, unless such written agreement is executed by an authorized representative of Seller, any Buyer purchase order or other document, or any oral agreement between the parties. In the event of any conflict or inconsistency between these Terms of Sale and a separate document signed by both parties, the terms of the separate document signed by both parties shall control. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or be admissible to explain, modify, or contradict this invoice and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "Supplier" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1  **Credit and Payment.** All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice, unless otherwise agreed to by the parties. Any invoiced amount remaining unpaid after thirty (30) days shall be "past due." Past due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law shall be refunded. If Buyer fails to pay any or all of the invoiced amount when due or if Buyer's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion, without further notice immediately: (i) suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to any amount requested by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Buyer ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to Buyer regardless of when such payments would otherwise be due from Buyer, and/or (v) increase the prices for Products and/or Services. Any discrepancy between any order placed by Buyer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date, except for price or payment discrepancies or any claims for reimbursement, which must be reported to Seller for resolution within thirty (30) days of Seller's invoice date. Seller shall have no obligation to receive and Buyer shall hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if claim therefore is not made within said applicable ten (10) or thirty (30) day period. All requests for proof of delivery for reasons other than shipment, price or payment disputes must be made within sixty (60) days of Seller's invoice date. If the payment term due date falls on a weekend day or holiday, payment is due and payable on the succeeding business day.

2  **Chargebacks.** In consideration of Seller allowing Buyer to purchase Products at discounted prices, Buyer agrees that seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("**Chargeback(s)**"). In the event Seller is denied any Chargeback from a Supplier as a result of buyer providing incomplete, inaccurate, or incorrect information to Seller or Supplier, Buyer will be liable to Seller for such Chargeback amount.

3  **Reporting and Disclosure Obligations. THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. BUYER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR.**

4  **Shipment, Risk of Loss and Title.** Shipment of Products per routine order to Buyer and subsequent back orders related to the original shipment shall be shipped FOB Destination, except for drop shipments which shall be shipped in accordance with Supplier's shipping policies. The cost of shipment, if any, has been paid by Seller and added to this invoice. Emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, Products dropped shipped from Supplier, and orders not regularly scheduled are subject to an added shipping and handling charge determined by Seller and disclosed to Buyer prior to or at the time of order. Seller shall have the right to ship the Products at all times via its own vehicle or a carrier selected by Seller.

5  **Minimum Order Requirement.** Minimum orders may be subject to Seller's minimum order requirement in effect and quoted at the time of order. For orders less than such minimum order requirement or orders placed via telephone or facsimile, Seller may add to the invoice a handling charge determined by Seller and disclosed to Buyer prior to or at the time of order.

6  **Product Recommendations.** Seller may make available to Buyer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Buyer ("**Equivalency Recommendations**").

Buyer agrees and stipulates that in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Buyer can rely in order to make its product selection decision. Buyer agrees and stipulates that in making product decisions Buyer is relying on its independent professional judgment. Buyer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Buyer agrees and stipulates that it is a sophisticated user of medical products and it agrees and stipulates that it is a learned intermediary between Seller and the end user/patient.

THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. The EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY THE BUYER'S SUPPLIER AND OTHER INDUSTRY–AVAILABLE INFORMATION.

7  **Data.** Buyer acknowledges that Seller will provide information and reports to group purchasing organizations, Suppliers, and other third parties relating to Buyer's purchases from Seller. Buyer hereby waives any rights of confidentiality with respect to such information to the extent necessary to allow Seller to provide such information to group purchasing organizations, Suppliers, and other third parties.

8  **Resale of Products.** Buyer hereby certifies that it is purchasing Products from Seller for its own use. Products are not for resale. Buyer shall purchase Products from Seller for its own use and shall not resell or redistribute Products.

9  **Return Goods Policy.** Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

All requests for return of Products must have a return authorization number issued by Seller customer service department.

All returned Products must be:  (i) returnable to Supplier; (ii) in the original unopened packaging; and (iii) in resalable condition, unless such Products are not in original unopened packaging or resalable condition due to the fault of Seller.

Products that are:  (a) special order Products; (b) custom Products; or (c) Products not available for general or unrestricted distribution are not returnable.

The amount of credit on any given return, as described below, will be issued no later than thirty (30) days after the receipt of the merchandise and necessary documentation and the examination and inspection of such return at the local Seller distribution center.

Products shipped in error by Seller and nonconforming Products – FULL CREDIT – if returned within thirty (30) days of date of invoice.

Products shipped that are damaged or do not meet Seller standard quality – FULL CREDIT – if returned within thirty (30) days of date of invoice.

Locally stocked Products returned within thirty (30) days of date of invoice – FULL CREDIT.

Locally stocked Products returned after thirty (30) days of date of invoice – 15% RESTOCKING CHARGE.

Non-locally stocked Products that are returned within thirty (30) days of date of invoice - 15% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier).

Notwithstanding anything above to the contrary, Buyer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

10  **Excusable Delays.** If a party is unable, wholly or in part, by reason of an act of God or any other reason beyond the reasonable control of the party, including unavailability of Products, to carry out its obligations hereunder (other than the obligation to make money payments), that party shall give the other party written notice thereof with reasonable particulars concerning it. During the period of delay, the obligations of all parties hereunder (other than the obligation to make money payments), shall be suspended. The affected party shall use reasonable due diligence to continue performance as quickly as possible.

Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

11  **Taxes; Enforcement Costs.** All amounts payable to Seller under this Agreement are exclusive of all sales, use, value-added, withholding, and other taxes and duties. Buyer will promptly pay, and indemnify Seller against, all taxes and duties assessed in connection with any such amounts, this Agreement and its performance by any authority within or outside of the U.S., except for taxes payable on Seller's net income.

In the event it becomes necessary for either party to take action to collect any sums due or enforce any other provisions of this Agreement, the prevailing party shall be entitled to recover all costs and expenses of collection, including without limitation, reasonable attorney's fees and court costs.

12  **Time for Bringing Action.** Any action of any kind arising out of or in any way connected with this Agreement, other than collection of outstanding payment obligations, must be commenced within one (1) year upon which the cause of action accrued.

13  **Non-Disposable Products.** Non-disposable Products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

14  **Disclaimer.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. BUYER SHALL LOOK TO SUPPLIER OF PRODUCTS AND THE PROVIDER OF SERVICE FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

BUYER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. BUYER AGREES TO FILE SOLELY WITH SUPPLIER OF THE PRODUCTS OR THE PROVIDER OF SERVICE ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

IN NO EVENT SHALL SELLER BE LIABLE TO BUYER UNDER, IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS OR THE PROVISION OF SERVICES, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

15  **Assignment.** Buyer shall not assign or transfer any interest under any order accepted by Seller or delegate any obligation hereunder without the prior written consent of Seller.

16  **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the commonwealth of Virginia, without any construction or interpretation against Buyer or Seller. Buyer and Seller irrevocably consent to the exclusive jurisdiction of the state courts of Henrico County, Virginia and the federal courts situated in Richmond, Virginia, in connection with any action to enforce the provisions of this Agreement, to recover any damages or to obtain any other relief with respect to any matter connected with or arising from this Agreement or the transactions contemplated therein, including without limitation, breach or default under this Agreement, or otherwise arising under or by reason of this Agreement.

Terms of Sale-PC Invoice 3-31-11

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

## Credit Memo
Page: 1 of 1

Bill To:    4265044

Payment / Account Balance
Inquiries Phone:         1-800-845-3870

Customer Service Phone:  1-800-866-9243

| | |
|---|---|
| Customer Reference | INV 17556944 |
| Chargeback Number | 1275215 |
| Chargeback Date | 07/25/2018 |
| Chargeback Amount | ($83.22) |

Note: See back for terms and conditions

RCHAP6519

ST CHRISTOPHERS HOSPITAL FOR CHILDREN
PO BOX 26968
PHILADELPHIA PA  19134

| Reason Code | Description | Amount |
|---|---|---|
| CO | Overpaid Invoice | -83.22 |

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

## Credit Memo
RCHAP6519

| Account Number | 4265044 |
|---|---|
| Document Number | 1275215 |
| Date | 07/25/2018 |
| Amount | ($83.22) |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN

PO BOX 26968
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

CREDIT MEMO
NO PAYMENT REQUIRED

These terms of sale ("**Terms of Sale**") shall apply to purchases of products and/or Services ("**Products**" or "**Services**") purchased by Customer (as defined below, also referred to as "Buyer") directly between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1. **General Terms of Sale.**

1.1. "Standard Credit and Payment Terms. All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on an invoice or the Terms of Sale is permissible to explain, modify, or contradict this invoice or the Terms of Sale. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer hereunder and the applicable invoice is due.

1.4. Non-Disposable Products. Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.2. Terms. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3. Discrepancies. Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.5. Freight Charges. Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6. Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7. Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispose Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8. Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
-       Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.
-       Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.
-       Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.
-       Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
-       Products returned that are not returnable to the Supplier  NO CREDIT WILL BE ISSUED
§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2. **Chargebacks.** In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3. **Force Majeure.** Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4. **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

a sophisticated healthcare consumer and that it agrees to use the Equivalency Recommendation solely between Seller and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5. **DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT. CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6. **LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7. **Government Contracts.** Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8. **No Conflict or Interference.** Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9. **Confidential Information.** Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller. Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10. **REPORTING AND DISCLOSURE OBLIGATIONS.** THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11. **Controlled Substances and Other Regulations.** If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or any governmental requirement, guideline or procurement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12. **Compliance with Laws.** Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate description. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13. **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14. **Relationship of the Parties.** The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16. **WAIVER OF JURY TRIAL.** THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.

# McKESSON

**Invoice**

Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121

Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:         1-800-866-9243

| Sales Order Number | 12261733 | Invoice Number | 31625119 |
|---|---|---|---|
| Sales Order Date | 07/17/2018 | Invoice Date | 07/17/2018 |
| PO Number | 033D-241403 | Payment Due Date | 08/31/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $594.12 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 195186 | Vendor:  SMITHS | CATHETER, IV PROT 24GX3/4" (50 PO LN 1 | 2 | CS | 1 | ███ | ███ | .00 |
| | Vend Cat#:   305306 | | | | | | | |
| | 1Z31FW670373096105 | | | | | | | |
| | SHIPPED: 07/17/2018 | Winchester | | | | | | |

| | S A L E S   T A X | | | | |
|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $594.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $594.12 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

---

**Invoice**

# McKESSON

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 31625119 | Date | 07/17/2018 |
| | | Terms | AR  NET 45 DAYS |
| Pay This Amount Before | 08/31/2018 | | $594.12 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

Please Remit To:

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to Products or Services ("Products" or "**Services**"), purchased by the Customer identified on the face of the applicable purchase order, or if applicable, a subsidiary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1.    **General Terms of Sale.**

1.1.    "Standard Credit and Payment Terms.    All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements out of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on or before the applicable due date without making any payments on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.    Taxes.    All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.    Discrepancies.    Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.    Non-Disposable Products.    Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.    Freight Charges, Shipping and Handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.    Title and Risk of Loss.    Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.    Third-Party Logistics Provider Services.    If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.    Returned Goods.    Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., Supply Manager™).
§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in Supply Manager; or (iv)Products not available for general or unrestricted distribution.
§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
-    Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.
-    Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.
-    Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.
-    Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
-    Non-returnable Products that are returnable to the Supplier  NO CREDIT WILL BE ISSUED
§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.    **Chargebacks.**    In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.    **Force Majeure.**    Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.    **Product Recommendations.**    Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision.  Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Customer agrees and stipulates that it is

a sophisticated purchaser of Products and it agrees that it will independently verify any information provided by Seller and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRY AVAILABLE INFORMATION.  The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history.  Alternative products are not necessarily the lowest priced items available.

5.    **DISCLAIMER.**    SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEFECTS ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.    **LIMITATION OF LIABILITY.**    IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.    **Government Contracts.**    Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.    **No Conflict or Interference.**    Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment  or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.    **Confidential Information.**    Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.    **REPORTING AND DISCLOSURE OBLIGATIONS.**  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR.  IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11.    **Controlled Substances and Other Regulations.**    If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, ordinance, regulation or any governmental requirement, guideline or procurement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.    **Compliance with Laws.**    Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.    **Own Use.**    All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries of affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.    **Relationship of the Parties.**    The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15.    **Governing Law.**    This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.    **WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# McKESSON

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL
INC(URBANCREST
COLUMBUS #072
3500 CENTERPOINT DRIVE STE A
URBANCREST,OH 43123

Bill To:    4265044

District License  3000006817
Shipped To:    4324957
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:        1-800-866-9243

| Sales Order Number | 16254321 | Invoice Number | 35881076 |
|---|---|---|---|
| Sales Order Date | 09/14/2018 | Invoice Date | 09/14/2018 |
| PO Number | 033D 243840 | Payment Due Date | 10/29/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $680.72 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 722348 | Vendor:  USSURG Vend Cat#:  E3305 | SUCTION COAG, HND CNTL 12FR 6' PO LN 1 | 2 | CS | 2 | ███ | ███ | .00 |
| | 1Z4862300359399473 | 1Z4862300359399482 | | | | | | |
| | SHIPPED: 09/14/2018 | Columbus | | | | | | |

| | | | **S A L E S   T A X** | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $680.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $680.72 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 35881076 | Date | 09/14/2018 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 10/29/2018 | | $680.72 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to and govern all Products or Services ("**Products or Services**") purchased by Customer from an intermediary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a items available. manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

5.   **DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO

1.   **General Terms of Sale.** THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER
1.1.   "Standard Credit and Payment Terms.  All payments for Products and/or Services must be received by Seller Net within thirty (30) WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, SERVICES. fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the 6.   **LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS specified payment term Due Dates fall on a non-business day or holiday, payment is due and payable on the succeeding business day. AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.  In the event Customer files or FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount THIS AGREEMENT. payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information 7.   **Government Contracts.**  Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this and conditions of any government contracts to which Customer may be a party. Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the 8.   **No Conflict or Interference.**  Customer represents and warrants that execution and performance of this Agreement does not Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer. both, would become a default) under, or require any consent under any agreement between Customer and any other party or
1.2.   Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction interfere with any existing or prospective  contractual obligation or other commitment  or arrangement  of any kind between taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, and hold Seller harmless for any breach of the foregoing representation and warranty. unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations. 9.   **Confidential Information.**  Pricing and terms of this Agreement are confidential information of Seller and shall not be
1.3.   Discrepancies.  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All organizations, and other third parties. requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under 10.   **REPORTING AND DISCLOSURE OBLIGATIONS.**  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL applicable invoice is due. AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS
1.4.   Non-Disposable Products.  Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE reconditioned. WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE
1.5.   Freight Charges, Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's CORPORATION. local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to 11.   **Controlled Substances and Other Regulations.**  If performance of this Agreement would cause Seller to be noncompliant Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice.  Detailed information on the fuel with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation, standard or governmental surcharge can be obtained by request.  Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller. requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other
1.6.   Title and Risk of Loss.  Title and risk of loss for the Products will pass at the time the Products reach their designated destination for regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny distribution center. any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of
1.7.   Third-Party Logistics Provider Services.  If Seller is providing third-party logistics provider services to Customer, Customer represents Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products. receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any
1.8.   Returned Goods.  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) its then standard Return Goods Policy. Seller's current Return Good Policy is as follows: under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated
§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or products or activities. Seller's automated Customer Service Platform (e.g., SupplyManager™).
§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller. 12.   **Compliance with Laws.**  Customer represents and warrants that it will fully comply with all Federal, state and local laws and
§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or SupplyManager; or (iv)Products not available for general or unrestricted distribution. dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being
§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in and necessary documentation, and the examination and inspection of such return at the local Seller distribution center. compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a
-    Products returned within thirty (30) days date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT. non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive
-    Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT. termination or expiration of this Agreement.
-    Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 13.   Own Use.  All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in 15% RESTOCKING CHARGE. judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer
-    Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market to Customer that Seller). are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries of affiliates of
-    Non-stocked Products that cannot be returnable to the Supplier  NO CREDIT WILL BE ISSUED Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer
§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and recall or defective condition. chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's
2.   **Chargebacks.**  In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that policies. Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier 14.   **Relationship of the Parties.**  The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such employee of that party) shall make any representations or warranties or incur any liability on behalf of the other. Chargeback amount.  In the event Supplier:  (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated 15.   **Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is Virginia. commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of 16.   **WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION** Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier. **ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**
3.   **Force Majeure.**  Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.
4.   **Product Recommendations.**  Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

## Credit Memo
Page: 1 of 1

Bill To:    4265044

Payment / Account Balance
Inquiries Phone:              1-800-845-3870

Customer Service Phone:  1-800-866-9243

ST CHRISTOPHERS HOSPITAL FOR CHILDREN
PO BOX 26968
PHILADELPHIA PA  19134

| Customer Reference | MCKBRANDPROMO |
|---|---|
| Chargeback Number | 1155569 |
| Chargeback Date | 03/20/2018 |
| Chargeback Amount | ($5.69) |

Note: See back for terms and conditions

RCHAP6519

| Reason Code | Description | Amount |
|---|---|---|
| MR | McKesson Brand Rebate | -5.69 |

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

## Credit Memo

RCHAP6519

| Account Number | 4265044 |
|---|---|
| Document Number | 1155569 |
| Date | 03/20/2018 |
| Amount | ($5.69) |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN

PO BOX 26968
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

CREDIT MEMO
NO PAYMENT REQUIRED

The terms and conditions of this invoice apply to all ("**Products**") and/or services ("**Services**") purchased by Buyer from Seller. These Terms of Sale supersede the terms and conditions of any prior document or the parties, unless such written agreement is executed by an authorized representative of Seller, any Buyer purchase order or other document, or any oral agreement between the parties. In the event of any conflict or inconsistency between these Terms of Sale and a separate document signed by both parties, the terms of the separate document signed by both parties shall control. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or be admissible to explain, modify, or contradict this invoice and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "Supplier" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

**1    Credit and Payment.**  All payments for Products and/or Services must be received by Seller Net within thirty (30) days  from the date of invoice, unless otherwise agreed to by the parties.  Any invoiced amount remaining unpaid after thirty  (30) days shall be "past due." Past due balances are subject to an interest charge of one and one-half percent (1.5%)  per month.  Any interest charged and collected in excess of applicable state law shall be returned to Seller. If Buyer fails to  pay  any or all of the invoiced amount when due or if Buyer's credit or financial status erodes or otherwise renders  Seller  insecure, Seller may, in its sole discretion, without further notice immediately:  (i) suspend Seller's performance or  cancel  all or any part of an order hereunder, (ii) change any payment term to any terms determined by Seller (including  imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount  arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate  and/or declare Buyer ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately  due and payable all other amounts invoiced by Seller to Buyer regardless of when such payments would otherwise be  due from Buyer, and/or (v) increase the prices for Products and/or Services. Any discrepancy between any order placed by  Buyer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days  of Seller's  invoice date, except for price or payment discrepancies or any claims for reimbursement, which must be reported to   Seller for resolution within thirty (30) days of Seller's invoice date.  Seller shall have no obligation to receive and Buyer   shall hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any   goods if claim therefore is not made within said applicable ten (10) or thirty (30) day period.  All requests for proof of   delivery for reasons other than shipment, price or payment disputes must be made within sixty (60) days of Seller's   invoice date.  If the payment term due date falls on a weekend day or holiday, payment is due and payable on the   succeeding business day.

**2    Chargebacks.**  In consideration of Seller allowing Buyer to purchase Products at discounted prices, Buyer agrees that seller  will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable  Supplier ("**Chargeback(s)**").  In the event Seller is denied any Chargeback from a Supplier as a result of buyer providing  incomplete, inaccurate, or incorrect information to Seller or Supplier, Buyer will be liable to Seller for such Chargeback  amount.

**3    Reporting and Disclosure Obligations.THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND  OTHER PRICE ADJUSTMENTS.  BUYER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL  DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH  CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT   DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND  REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR.**

**4    Shipment, Risk of Loss and Title.**  Shipment of Products per routine order to Buyer and subsequent back orders related to  the original shipment shall be shipped FOB Destination, except for drop shipments which shall be shipped in accordance  with Supplier's shipping policies. The cost of shipment, if any, has been paid by Seller and added to this invoice.   Emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center,  Products dropped shipped from Supplier, and orders not regularly scheduled are subject to an added shipping and  handling charge determined by Seller and disclosed to Buyer prior to or at the time of order.  Seller shall have the right to  ship the Products at all times via its own vehicle or a carrier selected by Seller.

**5    Minimum Order Requirement.**  Minimum orders may be subject to Seller's minimum order requirement as reflected and  quoted at the time of order.  For orders less than such minimum order requirement or orders placed via telephone or  facsimile, Seller may add to the invoice a handling charge determined by Seller and disclosed to Buyer prior to or at the  time of order.

**6    Product Recommendations.**  Seller may make available to Buyer certain recommendations concerning products that are  comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Buyer  ("**Equivalency Recommendations**").

Buyer agrees and stipulates that in making any Equivalency Recommendation, Seller is relying solely on the independent skill,  knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information  upon which Buyer can rely in order to make its product selection decision.  Buyer agrees and stipulates that in making product  decisions Buyer is relying on its independent professional judgment.  Buyer hereby agrees to waive, release, indemnify and hold   Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Buyer agrees and stipulates that it  is a sophisticated user of medical products and it agrees and stipulates that it is a learned intermediary between Seller and the end  user/patient.

THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE.  THE EQUIVALENCY  RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY  PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.   THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY THE BUYER'S SUPPLIER AND OTHER  INDUSTRY–AVAILABLE INFORMATION.

**7    Data.**  Buyer acknowledges that Seller will provide information and reports to group purchasing organizations, Suppliers, and  other third parties relating to Buyer's purchases from Seller.  Buyer hereby waives any rights of confidentiality with respect to  such information to the extent necessary to allow Seller to provide such information to group purchasing organizations,  Suppliers, and other third parties.

**8    Resale of Products.**  Buyer hereby certifies that it is purchasing Products from Seller for its own use.  Products are not for  resale.  Buyer shall purchase Products from Seller for its own use and shall not resell or redistribute Products.

**9    Return Goods Policy.**  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in  accordance with its then standard Return Goods Policy.  Seller's current Return Good Policy is as follows:

All requests for return of Products must have a return authorization number issued by Seller customer service department.

All returned Products must be:  (i) returnable to Supplier; (ii) in the original unopened packaging; and (iii) in resalable  condition, unless such Products are not in original unopened packaging or resalable condition due to the fault of Seller.

Products that are:  (a) special order Products; (b) custom Products; or (c) Products not available for general or unrestricted  distribution are not returnable.

The amount of credit on any given return, as described below, will be issued no later than thirty (30) days after the receipt of  the merchandise and necessary documentation and the examination and inspection of such return at the local Seller  distribution center.

Products shipped in error by Seller and nonconforming Products – FULL CREDIT – if returned within thirty (30) days of date of  invoice.

Products shipped that are damaged or do not meet Seller standard quality – FULL CREDIT – if returned within thirty (30)  days of date of invoice.

Locally stocked Products returned within thirty (30) days of date of invoice – FULL CREDIT.

Locally stocked Products returned after thirty (30) days of date of invoice – 15% RESTOCKING CHARGE.

Non-locally stocked Products that are returned within thirty (30) days of date of invoice - 15% RESTOCKING CHARGE (plus  any additional costs incurred in returning such Products to Supplier).

Notwithstanding anything  above to the contrary, Buyer shall receive FULL CREDIT on any Products returned as the result of  a recall or defective condition.

**10    Excusable Delays.**  If a party is unable, wholly or in part, by reason of an act of God or any other reason beyond the  reasonable control of the party, including unavailability of Products, to carry out its obligations hereunder (other than the  obligation to make money payments), that party shall give the other party written notice thereof with reasonable particulars  concerning it.  During the period of delay, the obligations of all parties hereunder (other than the obligation to make money  payments) shall be suspended.  The affected party shall use reasonable due diligence to continue performance as quickly as  possible.

Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance  caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the  first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

**11    Taxes; Enforcement Costs.**  All amounts payable to Seller under this Agreement are exclusive of all sales, use, value-added,  withholding, and other taxes and duties.  Buyer will promptly pay, and indemnify Seller against, all taxes and duties  assessed in connection with any such amounts, this Agreement and its performance by any authority within or outside of the  U.S., except for taxes payable on Seller's net income.

In the event it becomes necessary for either party to take action to collect any sums due or enforce any other provisions of  this Agreement, the prevailing party shall be entitled to recover all costs and expenses of collection, including without  limitation, reasonable attorney's fees and court costs.

**12    Time for Bringing Action.**  Any action of any kind arising out of or in any way connected with this Agreement, other than  collection of outstanding payment obligations, must be commenced within one (1) year upon which the cause of action  accrued.

**13    Non-Disposable Products.**  Non-disposable Products, such as furniture and equipment, sold by Seller may be refurbished or  reconditioned.

**14    Disclaimer.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE  MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  BUYER SHALL LOOK  TO SUPPLIER OF PRODUCTS AND THE PROVIDER OF SERVICE FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR  REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY  CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

BUYER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES.  REGARDLESS OF KIND.  BUYER  AGREES TO  FILE SOLELY WITH SUPPLIER OF THE PRODUCTS OR THE PROVIDER OF SERVICE ANY CLAIM OR LAWSUIT  ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR  POSSESSION OF PRODUCTS OR SERVICES.

IN NO EVENT SHALL SELLER BE LIABLE TO BUYER UNDER, IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR  ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF  CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, INCLUDING LOST PROFITS) FROM ANY CAUSE,  INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF  PRODUCTS OR THE PROVISION OF SERVICES, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF  SUCH DAMAGE.

**15    Assignment.**  Buyer shall not  assign or transfer any interest under any order accepted by Seller or delegate any obligation  hereunder without the prior written consent of Seller.

**16    Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the commonwealth of  Virginia, without any construction or interpretation against Buyer or Seller.  Buyer and Seller irrevocably consent to the  exclusive jurisdiction of the state courts of Henrico County, Virginia  and the federal courts situated in Richmond, Virginia, in  connection with any action to enforce the provisions of this Agreement, to recover any damages or to obtain any other relief  with respect to any matter connected with or arising from this Agreement or the  transactions contemplated  therein,  including  without  limitation, breach or default  under this Agreement, or otherwise arising under or by reason of this  Agreement.

Terms of Sale-PC Invoice 3-31-11

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Invoice**
Page 1 of 1

RCHAP6519

Bill To:    4265044

Shipped From:
MCKESSON MEDICAL SURGICAL (HOUSTON)
HOUSTON #16
20710 HEMPSTEAD RD
HOUSTON,TX 77065

District License   7200001102
Shipped To:    4324957
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 26281804 | Invoice Number | 46610581 |
|---|---|---|---|
| Sales Order Date | 02/05/2019 | Invoice Date | 02/06/2019 |
| PO Number | 033D-249724 | Payment Due Date | 03/23/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $47.52 |

Notes: See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 742655 | Vendor:  CARDCV Vend Cat#:  2531C | TAPE, ADHSV POROUS 1" (12RL/BX PO LN 2 | 3 | BX | 3 | ■ | ■ | .00 | |
| | 1Z0868110316413805 | | | | | | | | |
| | SHIPPED: 02/06/2019 | Houston | | | | | | | |

**SALES TAX**

| | | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | | |
|---|---|---|---|---|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $47.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $47.52 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

---

# McKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

| Account Number | | 4265044 | | |
|---|---|---|---|---|
| Document Number | | 46610581 | Date | 02/06/2019 |
| | Terms | | AR | NET 45 DAYS |
| Pay This Amount Before | | 03/23/2019 | | $47.52 |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms of sale located at https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.   Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, code or regulations.

**2.   Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.   Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.   Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.   Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products that have been altered/used, but not discarded; (vi) Products with packaging opened, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

○  Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

○  Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

○  Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

○  Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.   DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.   LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.   FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

# McKESSON

Credit Memo
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License  3000009121
Shipped To:    4410664

ST. CHRIS SPECIALTY PEDIS AT ABINGTON
500 OLD YORK RD STE 250
JENKINTOWN PA  19046

ST. CHRIS SPECIALTY PEDIS AT ABINGTON
500 OLD YORK RD STE 250
JENKINTOWN PA  19046
Ordered By: KRIS

Regulatory License    MD023326E
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:                1-800-866-9243

| Sales Order Number | 26062007 | Credit Number | 46712582 |
|---|---|---|---|
| Sales Order Date | 02/01/2019 | Credit Date | 02/06/2019 |
| PO Number | | Original Invoice Number | 45870298 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($93.57) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 993034 | Vendor:  MGM16 Vend Cat#:  16-013 | BANDAGE, CNFRM 4"X4.1YDS N/S L PO LN 6 | -4 | CS | -3 | ███ | ███ | .00 | |
| | SHIPPED: 02/06/2019 | Winchester        UPS GROUND | | | | | | | |

| S A L E S   T A X | | | | | |
|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($93.57) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($93.57) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

Credit Memo

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 46712582 | Date | 02/06/2019 |
| | | Terms | AR  NET 45 DAYS |
| | | | ($93.57) |

ST. CHRIS SPECIALTY PEDIS AT ABINGTON

500 OLD YORK RD STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
Please Remit To:
*****************************************
CREDIT MEMORANDUM
DO NOT PAY

# TERMS OF SALE

The terms of sale located at https://mms.mckesson.com/commerce/spclsite/Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1. Invoice, Payment, and Finance**

1.1. Standard Credit and Payment Terms. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3. Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2. Discrepancies.** Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1. Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2. Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3. Title and Risk of Loss.** For Bulk Delivery and General Sale Purposes: For delivery without any patient/consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4. Third-Party Logistics Provider Services.** If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5. Returned Goods.** Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer. Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products that have been opened, marked, or defaced, but are undamaged; (vi)Products with less than six (6) months remaining before their expiration date; (vii)Products that are outdated, open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products: if returned within 180 days Full amount; if returned after 180 days No Credit. Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer. Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

  ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days Full amount; if returned after 180 days No Credit

  ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days Full amount; if returned between 30-180 days Full amount, less a restocking fee; if returned after 180 days No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are less than $100 No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days Full amount, less Seller and vendor restocking fees; if returned after 180 days No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer. All other Products should not be sent back to Seller's distribution center.

**6. DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7. LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8. FRAUD AND ABUSE LAWS.** CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS. ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION. FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED. IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Bill To:    4265044

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

District License   3000009121
Shipped To:    4410664

ST. CHRIS SPECIALTY PEDIS AT ABINGTON
500 OLD YORK RD STE 250
JENKINTOWN PA  19046

ST. CHRIS SPECIALTY PEDIS AT ABINGTON
500 OLD YORK RD STE 250
JENKINTOWN PA  19046
Ordered By: KRIS

Regulatory License    MD023326E
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:            1-800-866-9243

| Sales Order Number | 26062007 | Credit Number | 46818246 |
|---|---|---|---|
| Sales Order Date | 02/01/2019 | Credit Date | 02/07/2019 |
| PO Number | | Original Invoice Number | 45870298 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($31.19) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 993034 | Vendor: MGM16 Vend Cat#:  16-013 | BANDAGE, CNFRM 4"X4.1YDS N/S L PO LN 6 | -1 | CS | -1 | ███ | ███ | .00 | |
| | SHIPPED: 02/07/2019 | Winchester | | UPS GROUND | | | | | |

| | S A L E S   T A X | | | | |
|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($31.19) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($31.19) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

**Credit Memo**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 46818246 | Date | 02/07/2019 |
| Terms | | AR  NET 45 DAYS | |
| | | | ($31.19) |

ST. CHRIS SPECIALTY PEDIS AT ABINGTON

500 OLD YORK RD STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*****************************************

CREDIT MEMORANDUM
DO NOT PAY

The terms of sale located at https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn_Documents/
TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1. Invoice, Payment, and Finance**

**1.1.** Standard Credit and Payment Terms. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

**1.2.** Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

**1.3.** Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, code or regulations.

**2. Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

**2.1.** Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

**2.2.** Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3. Title and Risk of Loss.** For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4. Third-Party Logistics Provider Services.** If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5. Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

products returned in a saleable mix, but that may require a manufacturer's approval to return; (vi) products that are open, damaged, past minimum expiration date for the resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6. DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7. LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8. FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# MCKESSON

**Invoice**
Page 1 of 2

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL SURGICAL (HOUSTON)
HOUSTON #16
20710 HEMPSTEAD RD
HOUSTON,TX 77065

Bill To:    4265044

District License    7200001102
Shipped To:    60341459

SAINT CHRIS CARE @ FISHTOWN
2424 EAST YORK AVE
PHILADELPHIA PA  19125

SAINT CHRIS CARE @ FISHTOWN
2424 EAST YORK AVE
PHILADELPHIA PA  19125

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 26958809 | Invoice Number | 47306164 |
|---|---|---|---|
| Sales Order Date | 02/14/2019 | Invoice Date | 02/14/2019 |
| PO Number | BETTY EDWARDS | Payment Due Date | 03/31/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $56.34 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 199235 | Vendor: 3MORTH Vend Cat#:  82002X | TAPE, CAST SCOTCHCAST 2"X4YDS PO LN 1 | 1 | BX | 0 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 201252 | Vendor: 3MORTH Vend Cat#:  82002A | TAPE, CAST SCOTCHCAST 2"X4YDS PO LN 2 | 3 | BX | 1 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Houston | | | | | | | |
| 198265 | Vendor: 3MORTH Vend Cat#:  82002B | TAPE, CAST SCOTCHCAST 2"X4YDS PO LN 3 | 3 | BX | 0 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 199227 | Vendor: 3MORTH Vend Cat#:  82002R | TAPE, CAST SCOTCHCAST 2"X4YDS PO LN 4 | 3 | BX | 0 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 199232 | Vendor: 3MORTH Vend Cat#:  82003L | TAPE, CAST SCOTCHCAST 3"X4YDS PO LN 7 | 2 | BX | 0 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |

# MCKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 47306164 | Date | 02/14/2019 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 03/31/2019 | | $56.34 |

SAINT CHRIS CARE @ FISHTOWN

2424 EAST YORK AVE
PHILADELPHIA PA  19125

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
Please Remit To:
MCKESSON MEDICAL SURGICAL
PO BOX 634404
CINCINNATI  OH 45263-4404

The terms of sale located at https://imgcdl.mckesson.com/CumulusWeb/Click_Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.   Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.   Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.   Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.   Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.   Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsalable

Products that cannot be resold, including, but not limited to Products whose packaging is open, damaged, past minimum expiration date for the resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

 ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

 ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

 ○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

 ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.   DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.   LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.   FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

# McKESSON

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:     4265044
SAINT CHRIS CARE @ FISHTOWN
2424 EAST YORK AVE
PHILADELPHIA PA  19125

Shipped To:
SAINT CHRIS CARE @ FISHTOWN
2424 EAST YORK AVE
PHILADELPHIA PA  19125

| Invoice Number  47306164 | PO Number BETTY EDWARDS | Invoice Date  02/14/2019 |
|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 201236 | Vendor:  3MORTH  Vend Cat#:  82003G | TAPE, CAST SCOTCHCAST 3"X4YDS  PO LN 8 | 2 | BX | 0 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 199236 | Vendor:  3MORTH  Vend Cat#:  82003X | TAPE, CAST SCOTCHCAST 3"X4YDS  PO LN 10 | 2 | BX | 0 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 201062 | Vendor:  MGM18  Vend Cat#:  18-10847 | GOWN, EXAM T/P/T ECON BLU 30X4  PO LN 11 | 1 | CS | 0 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 198266 | Vendor:  3MORTH  Vend Cat#:  82003B | TAPE, CAST SCOTCHCAST 3"X4YDS  PO LN 12 | 2 | BX | 0 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 201253 | Vendor:  3MORTH  Vend Cat#:  82003A | TAPE, CAST SCOTCHCAST 3"X4YDS  PO LN 13 | 2 | BX | 0 | ■ | ■ | .00 | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |

| S A L E S   T A X | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | STATE  $0.00 | COUNTY  $0.00 | | CITY  $0.00 | DISTRICT  $0.00 | OTHER  $0.00 | | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $56.34 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $56.34 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# MCKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Invoice**
Page 1 of 2

RCHAP6519

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:    60341459
SAINT CHRIS CARE @ FISHTOWN
2424 EAST YORK AVE
PHILADELPHIA PA  19125

SAINT CHRIS CARE @ FISHTOWN
2424 EAST YORK AVE
PHILADELPHIA PA  19125

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:              1-800-866-9243

| Sales Order Number | 26958809 | Invoice Number | 47365593 |
|---|---|---|---|
| Sales Order Date | 02/14/2019 | Invoice Date | 02/14/2019 |
| PO Number | BETTY EDWARDS | Payment Due Date | 03/31/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $1,225.62 |

Notes: See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 199235 | Vendor: 3MORTH Vend Cat#: 82002X | TAPE, CAST SCOTCHCAST 2"X4YDS PO LN 1 | 1 | BX | 1 | ■ | ■ | .00 | |
| | 1Z31FW670380556845 | | | | | | | | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 201252 | Vendor: 3MORTH Vend Cat#: 82002A | TAPE, CAST SCOTCHCAST 2"X4YDS PO LN 2 | 2 | BX | 2 | ■ | ■ | .00 | |
| | 1Z31FW670380556578 | | | | | | | | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 198265 | Vendor: 3MORTH Vend Cat#: 82002B | TAPE, CAST SCOTCHCAST 2"X4YDS PO LN 3 | 3 | BX | 3 | ■ | ■ | .00 | |
| | 1Z31FW670380558272 | | | | | | | | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 199227 | Vendor: 3MORTH Vend Cat#: 82002R | TAPE, CAST SCOTCHCAST 2"X4YDS PO LN 4 | 3 | BX | 3 | ■ | ■ | .00 | |
| | 1Z31FW670380558058 | 1Z31FW670380558272 | | | | | | | |

**Invoice**

# MCKESSON

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 47365593 | Date | 02/14/2019 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 03/31/2019 | | $1,225.62 |

SAINT CHRIS CARE @ FISHTOWN

2424 EAST YORK AVE
PHILADELPHIA PA  19125

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
Please Remit To:
MCKESSON MEDICAL SURGICAL
PO BOX 634404
CINCINNATI  OH 45263-4404

# TERMS OF SALE

The terms of sale located at https://imgcdn.mckesson.com/CumulusWeb/Click_Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.    Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, code or regulations.

**2.    Discrepancies**.  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.    Title and Risk of Loss**.  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.    Third-Party Logistics Provider Services**.  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.    Returned Goods**.  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products. Other non-returnable products are listed online, but the products listed are not all inclusive. Products that are past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

  ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

  ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.    DISCLAIMER**.  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.    LIMITATION OF LIABILITY**.  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.    FRAUD AND ABUSE LAWS**.  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H).  CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

# McKESSON

**Invoice**
Page 2 of 2

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

Bill To:     4265044
SAINT CHRIS CARE @ FISHTOWN
2424 EAST YORK AVE
PHILADELPHIA PA 19125

Shipped To:
SAINT CHRIS CARE @ FISHTOWN
2424 EAST YORK AVE
PHILADELPHIA PA 19125

| Invoice Number 47365593 | PO Number BETTY EDWARDS | Invoice Date 02/14/2019 |
|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 199232 | Vendor: 3MORTH Vend Cat#:  82003L | TAPE, CAST SCOTCHCAST 3"X4YDS PO LN 7 | 2 | BX | 2 | ▮ | ▮ | .00 | |
| | 1Z31FW670380558058 | | | | | | | | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 201236 | Vendor: 3MORTH Vend Cat#:  82003G | TAPE, CAST SCOTCHCAST 3"X4YDS PO LN 8 | 2 | BX | 2 | ▮ | ▮ | .00 | |
| | 1Z31FW670380556845 | | | | | | | | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 199236 | Vendor: 3MORTH Vend Cat#:  82003X | TAPE, CAST SCOTCHCAST 3"X4YDS PO LN 10 | 2 | BX | 2 | ▮ | ▮ | .00 | |
| | 1Z31FW670380556578 | | | | | | | | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 201062 | Vendor: MGM18 Vend Cat#:  18-10847 | GOWN, EXAM T/P/T ECON BLU 30X4 PO LN 11 | 1 | CS | 1 | ▮ | ▮ | .00 | |
| | 1Z31FW670380559164 | | | | | | | | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 198266 | Vendor: 3MORTH Vend Cat#:  82003B | TAPE, CAST SCOTCHCAST 3"X4YDS PO LN 12 | 2 | BX | 2 | ▮ | ▮ | .00 | |
| | 1Z31FW670380556578 | | | | | | | | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |
| 201253 | Vendor: 3MORTH Vend Cat#:  82003A | TAPE, CAST SCOTCHCAST 3"X4YDS PO LN 13 | 2 | BX | 2 | ▮ | ▮ | .00 | |
| | 1Z31FW670380558272 | 1Z31FW670380597006 | | | | | | | |
| | SHIPPED: 02/14/2019 | Winchester | | | | | | | |

| | | **S A L E S   T A X** | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $1,225.62 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,225.62 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**McKesson Medical-Surgical**
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Invoice**
Page 1 of 2

RCHAP6519

**Shipped From:**
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 27301379 | | Invoice Number | 47677415 |
|---|---|---|---|---|
| Sales Order Date | 02/19/2019 | | Invoice Date | 02/19/2019 |
| PO Number | 033D-250284 | | Payment Due Date | 04/05/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | | Invoice Amount | $1,624.66 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 695627 | Vendor: MCKSPC | EOVIST, VL 10ML 2.5MMOL/10ML 1 | 1 | CT | 1 | ███ | ███ | .00 | |
| | NDC Num: & 50419032005 | PO LN 1 | | | | | | | |
| | 1Z31FW670380765913 | | | | | | | | |
| | SHIPPED: 02/19/2019 | Winchester | | | | | | | |
| 695627 | Vendor: MCKSPC | EOVIST, VL 10ML 2.5MMOL/10ML 1 | 1 | CT | 1 | ███ | ███ | .00 | |
| | NDC Num: & 50419032005 | PO LN 2 | | | | | | | |
| | 1Z31FW670380765913 | | | | | | | | |
| | SHIPPED: 02/19/2019 | Winchester | | | | | | | |

# McKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | | 4265044 | | |
|---|---|---|---|---|
| Document Number | | 47677415 | Date | 02/19/2019 |
| | Terms | | AR | NET 45 DAYS |
| Pay This Amount Before | | 04/05/2019 | | $1,624.66 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms of sale located at https://imgcdnmckesson.com/CumulusWeb/Click_and_Learn_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience.

**1.   Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.   Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.   Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.   Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.   Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

· All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

· Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

· The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products that are unsaleable or obsolete, but may become saleable; except those items that are (i) open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

· Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

· Seller will issue a credit as follows for all other eligible Products:

  ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

  ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

· Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.   DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.   LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.   FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:     4265044
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Shipped To:
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

| Invoice Number  47677415 | PO Number 033D-250284 | Invoice Date    02/19/2019 |
|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|

**S A L E S   T A X**

| STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |
|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $1,624.66 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,624.66 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

District License   3000009121
Shipped To:    4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046
Ordered By: NAKISHA

Regulatory License   MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:

Customer Service Phone:         1-800-866-9243

| Sales Order Number | 27715791 | Credit Number | 48117065 |
|---|---|---|---|
| Sales Order Date | 02/25/2019 | Credit Date | 02/25/2019 |
| PO Number | POKISHA22219 | Original Invoice Number | 48002781 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($70.00) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|

S A L E S   T A X

| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | |
|---|---|---|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($70.00) | $0.00 | $0.00 | ($70.00) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**

RCHAP6519

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 48117065 | Date | 02/25/2019 |
| | | Terms | AR  NET 45 DAYS |
| | | | ($70.00) |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*****************************************
CREDIT MEMORANDUM
DO NOT PAY

The terms of sale located at https://mms.mckesson.com/common/pdf/SMO2_Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.   Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.   Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.   Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.   Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.   Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products returnable as saleable; and, but not limited to, Products that exist in open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

   o  Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

   o  Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

   o  Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

   o  Products NOT stocked in any of Seller's distribution centers that are greater than $100: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.   DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.   LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.   FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# MCKESSON

**Finance Charge Invoice**

Page: 1 of 4

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:    4265044

Payment / Account Balance
Inquiries Phone:          1-800-845-3870

Customer Service Phone:  1-800-866-9243

| Customer Reference | |
| --- | --- |
| Document Number | 50834934 |
| Due Date | 03/31/2019 |
| Document Amount | $579.98 |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN
PO BOX 26968
PHILADELPHIA PA  19134

Note: See back for terms and conditions

RCHAP6519

| Reason Code | Description | Amount |
| --- | --- | --- |
| | Finance Charge | 579.98 |

| Document Number | Type | Doc. Date | Due Date | Reference |
| --- | --- | --- | --- | --- |
| 46948006 | RI | 02/11/2019 | 03/28/2019 | BUCKS ORDER 2/8/2019 |
| 46955250 | RI | 02/11/2019 | 03/28/2019 | BUCKS ORDER 1/24/2019 |
| 44830139 | RM | 01/14/2019 | 02/28/2019 | 033D-248194 |
| 47029595 | RI | 02/11/2019 | 03/28/2019 | 033D-249970 |
| 44841888 | RI | 01/15/2019 | 03/01/2019 | 033D-248780 |
| 38170080 | RM | 10/15/2018 | 11/29/2018 | KISHA9-18-18 |
| 42378253 | RI | 12/11/2018 | 01/25/2019 | 033D-247463 |
| 41377497 | RI | 11/28/2018 | 01/12/2019 | 033D-247001 |
| 41391150 | RI | 11/28/2018 | 01/12/2019 | 033D-246948 |
| 1315051 | RB | 12/12/2018 | 12/12/2018 | INV#35899198 Overpaid |
| 44877139 | RI | 01/15/2019 | 03/01/2019 | WASHTWPCAST TAPE |
| 40464130 | RI | 11/14/2018 | 12/29/2018 | 033D-246488 |
| 33501550 | RM | 08/13/2018 | 09/27/2018 | KISHA731 |

# MCKESSON

**Finance Charge Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 |
| --- | --- |
| Document Number | 50834934 |
| Date | 03/31/2019 |
| Amount | $579.98 |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN

PO BOX 26968
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA    GA   31193-3027

The terms of sale located at https://imgcdf.mckesson.com/CumulusWeb/Click_and_Learn_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.   Invoice, Payment, and Finance**

**1.1.** Standard Credit and Payment Terms. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

**1.2.** Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

**1.3.** Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.   Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

**2.1.** Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

**2.2.** Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.   Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.   Third-Party Logistics Provider Services.** If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.   Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Customer.  Seller's current Return Good Policy is as follows:

· All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

· Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

· The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable Products that have been opened, used, or destroyed, but are returnable, but are not suitable to be resold as new, open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

· Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

· Seller will issue a credit as follows for all other eligible Products:

   ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

   ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

   ○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

   ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

· Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.   DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.   LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.   FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF.  CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# McKESSON

**McKesson Medical-Surgical**
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:    4265044

| Reason Code | Description | | | | Amount |
|---|---|---|---|---|---|
| | Finance Charge | | | | |
| Document Number | Type | Doc. Date | Due Date | Reference | |
| 47100266 | RI | 02/12/2019 | 03/29/2019 | KISHA0212192 | |
| 47129974 | RI | 02/12/2019 | 03/29/2019 | KISHA021219 | |
| 35690760 | RI | 09/12/2018 | 10/27/2018 | 033D-243669 | |
| 45039052 | RI | 01/16/2019 | 03/02/2019 | KISHA010219 | |
| 45042342 | RI | 01/16/2019 | 03/02/2019 | KISHA011519 | |
| 47220426 | RI | 02/13/2019 | 03/30/2019 | 033D-250085 | |
| 47233731 | RI | 02/13/2019 | 03/30/2019 | KISHA010219 | |
| 42636950 | RI | 12/13/2018 | 01/27/2019 | 033D-247575 | |
| 45059883 | RI | 01/17/2019 | 03/03/2019 | 046D-001087 | |
| 42638915 | RI | 12/14/2018 | 01/28/2019 | 033D-247640 | |
| 46019648 | RI | 01/30/2019 | 03/16/2019 | KISHA012919 | |
| 20952945 | RM | 02/13/2018 | 03/30/2018 | KISHA020618 | |
| 31118969 | RI | 07/10/2018 | 08/24/2018 | 048D-000960 | |
| 35881076 | RI | 09/14/2018 | 10/29/2018 | 033D 243840 | |
| 38560064 | RM | 10/19/2018 | 12/03/2018 | 033D-244542 | |
| 38560074 | RM | 10/19/2018 | 12/03/2018 | 033D-244542 | |
| 45164103 | RI | 01/18/2019 | 03/04/2019 | 033D-249000 | |
| 31421608 | RM | 07/13/2018 | 08/27/2018 | 033D-240123 | |
| 38653259 | RI | 10/22/2018 | 12/06/2018 | BUCKS ORDER 10/19/2018 | |
| 1155569 | RB | 03/20/2018 | 03/20/2018 | MCKBRANDPROMO | |
| 31625119 | RI | 07/17/2018 | 08/31/2018 | 033D-241403 | |
| 31640711 | RI | 07/18/2018 | 09/01/2018 | 033D-241403 | |
| 42757168 | RI | 12/17/2018 | 01/31/2019 | 033D-247575 | |
| 36120871 | RM | 09/18/2018 | 11/02/2018 | KISHA090418 | |
| 31820587 | RM | 07/19/2018 | 09/02/2018 | 033D-240932 | |
| 31823174 | RI | 07/19/2018 | 09/02/2018 | 033D-240932 | |
| 46074277 | RI | 01/30/2019 | 03/16/2019 | 033D-249425 | |
| 38783196 | RM | 10/23/2018 | 12/07/2018 | KISHA9-18-18 | |
| 39573864 | RI | 11/02/2018 | 12/17/2018 | 033D-245945 | |
| 40936191 | RI | 11/21/2018 | 01/05/2019 | 033D-246746 | |
| 40989370 | RI | 11/21/2018 | 01/05/2019 | 033D-246761 | |
| 40995435 | RI | 11/21/2018 | 01/05/2019 | 033D-246761 | |
| 41001075 | RI | 11/21/2018 | 01/05/2019 | 033D-246761 | |
| 43139725 | RI | 12/20/2018 | 02/03/2019 | 033D-247902 | |
| 45470084 | RI | 01/22/2019 | 03/08/2019 | 033D-249000 | |
| 43164933 | RM | 12/20/2018 | 02/03/2019 | 033D-247083 | |
| 46114687 | RM | 01/30/2019 | 03/16/2019 | | |
| 45479901 | RI | 01/23/2019 | 03/09/2019 | 033D-249000 | |
| 45585862 | RI | 01/24/2019 | 03/10/2019 | ST LUKES SUPPLIES | |
| 45587164 | RI | 01/24/2019 | 03/10/2019 | BUCKS ORDER 1/23/19 | |

# McKESSON

**McKesson Medical-Surgical**
9954 Mayland Drive Suite 4000
Richmond, VA 23233

## Finance Charge Invoice
**Page: 3 of 4**

Bill To:    4265044

| Reason Code | Description | | | | Amount |
|---|---|---|---|---|---|
| | Finance Charge | | | | |

| Document Number | Type | Doc. Date | Due Date | Reference |
|---|---|---|---|---|
| 45675809 | RM | 01/24/2019 | 03/10/2019 | CARDI,OPTHOSUPPLIESWASH |
| 19683858 | RI | 01/26/2018 | 03/12/2018 | 0333D234416 |
| 23687990 | RI | 03/23/2018 | 05/07/2018 | 033D-236827 |
| 45716824 | RI | 01/25/2019 | 03/11/2019 | 033D-249207 |
| 32102576 | RI | 07/24/2018 | 09/07/2018 | 033D-240932 |
| 32101700 | RM | 07/24/2018 | 09/07/2018 | 033D-240932 |
| 1275215 | RB | 07/25/2018 | 07/25/2018 | INV 17556944 |
| 45738254 | RI | 01/25/2019 | 03/11/2019 | 033D-249239 |
| 41244154 | RI | 11/27/2018 | 01/11/2019 | 033D-246890 |
| 41507770 | RI | 11/30/2018 | 01/14/2019 | 033D-247083 |
| 45762297 | RI | 01/25/2019 | 03/11/2019 | 033D-249262 |
| 43661576 | RI | 12/31/2018 | 02/14/2019 | 033D-248194 |
| 45776437 | RI | 01/27/2019 | 03/13/2019 | 033D-249315 |
| 45791872 | RI | 01/28/2019 | 03/14/2019 | POKISHA012519 |
| 45829613 | RI | 01/28/2019 | 03/14/2019 | 033D-249340 |
| 45830304 | RI | 01/28/2019 | 03/14/2019 | POKISHA012519 |
| 45912641 | RI | 01/29/2019 | 03/15/2019 | 033D-249359 |
| 45953955 | RI | 01/29/2019 | 03/15/2019 | 033D-249359 |
| 45955452 | RI | 01/29/2019 | 03/15/2019 | 033D-248708 |
| 22303910 | RI | 03/05/2018 | 04/19/2018 | 033D-236051 |
| 24301016 | RI | 04/02/2018 | 05/17/2018 | 033D237180 |
| 24363328 | RM | 04/02/2018 | 05/17/2018 | KISHA330 |
| 1223821 | RB | 05/11/2018 | 05/11/2018 | MCKBRANDPROMO |
| 37153697 | RI | 10/02/2018 | 11/16/2018 | 033D-244542 |
| 37246916 | RI | 10/03/2018 | 11/17/2018 | 033D-244542 |
| 38040513 | RM | 10/12/2018 | 11/26/2018 | 045D-012922 |
| 41575768 | RI | 11/30/2018 | 01/14/2019 | 033D-247051 |
| 41592104 | RI | 11/30/2018 | 01/14/2019 | 033D-247085 |
| 43934970 | RI | 01/03/2019 | 02/17/2019 | 033D-248268 |
| 44040319 | RI | 01/04/2019 | 02/18/2019 | 033D-248170 |
| 44040321 | RI | 01/04/2019 | 02/18/2019 | 033D-248138 |
| 44055827 | RI | 01/04/2019 | 02/18/2019 | 033D-248368 |
| 44440849 | RI | 01/09/2019 | 02/23/2019 | 033D-248576 |
| 44471344 | RI | 01/09/2019 | 02/23/2019 | 033D-248622 |
| 44494012 | RI | 01/09/2019 | 02/23/2019 | 033D-248622 |
| 46198025 | RI | 01/31/2019 | 03/17/2019 | 033D-249511 |
| 46251490 | RI | 02/01/2019 | 03/18/2019 | BUCKS ORDER 01/31/2019 |
| 46354831 | RI | 02/03/2019 | 03/20/2019 | 033D-249606 |
| 46380981 | RI | 02/04/2019 | 03/21/2019 | 033D-248780 |
| 46452505 | RI | 02/04/2019 | 03/21/2019 | 033D-249613 |

**MCKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Finance Charge Invoice**
Page: 4 of 4

Bill To:    4265044

| Reason Code | Description | Amount |
|---|---|---|
| | Finance Charge | |

| Document Number | Type | Doc. Date | Due Date | Reference |
|---|---|---|---|---|
| 46467271 | RI | 02/04/2019 | 03/21/2019 | 033D-249600 |
| 46471414 | RI | 02/04/2019 | 03/21/2019 | 033D-249649 |
| 46490125 | RI | 02/05/2019 | 03/22/2019 | 033D-249600 |
| 46579202 | RI | 02/05/2019 | 03/22/2019 | 033D-249724 |
| 46601534 | RI | 02/06/2019 | 03/23/2019 | KISHA2519 |
| 46610581 | RI | 02/06/2019 | 03/23/2019 | 033D-249724 |
| 46712582 | RM | 02/06/2019 | 03/23/2019 | |
| 46718498 | RI | 02/07/2019 | 03/24/2019 | 033D-249776 |
| 46807189 | RI | 02/07/2019 | 03/24/2019 | 033D-249825 |
| 46818246 | RM | 02/07/2019 | 03/24/2019 | |
| 46822770 | RI | 02/08/2019 | 03/25/2019 | 033D-249875 |
| 46889793 | RI | 02/08/2019 | 03/25/2019 | ST LUKES SUPPLIES |

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

District License    3000009121
Shipped To:    4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046
Ordered By: NIKISHA

Regulatory License    MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:        1-800-866-9243

| Sales Order Number | 29367094 | Credit Number | 51198716 |
|---|---|---|---|
| Sales Order Date | 03/19/2019 | Credit Date | 04/03/2019 |
| PO Number | POKISHA22219 | Original Invoice Number | 48002781 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($114.17) |

Notes: See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 951139 | Vendor:  QUIDEL | TEST KIT, STREP A+ SOFIA (25/K | -1 | KT | -1 | ███ | ███ | -6.46 | |
| | Vend Cat#:  20274 | PO LN 2 | | | | | | | |
| | SHIPPED: 04/03/2019 | Winchester | | | | | | | |

| SALES TAX | | | | | |
|---|---|---|---|---|---|
| | STATE | COUNTY | CITY | DISTRICT | OTHER |
| | ($6.46) | $0.00 | $0.00 | $0.00 | $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($107.71) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($6.46) | ($114.17) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Credit Memo**

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 51198716 | Date | 04/03/2019 |
| | Terms | AR | NET 45 DAYS |
| | | | ($114.17) |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*******************************************

CREDIT MEMORANDUM
DO NOT PAY

The terms of sale located at https://mgoto.mckesson.com/customers/en/sales/Legal_Documents/ TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience.

**1. Invoice, Payment, and Finance**

1.1. Standard Credit and Payment Terms. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3. Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2. Discrepancies.** Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1. Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2. Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3. Title and Risk of Loss.** For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4. Third-Party Logistics Provider Services.** If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5. Returned Goods.** Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer. Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products that have been opened, used, or defaced, but are not in a condition that would permit their resale; (vi) Products that are not in saleable condition for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products: if returned within 180 days Full amount; if returned after 180 days No Credit. Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer. Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

 ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days Full amount; if returned after 180 days No Credit

 ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days Full amount; if returned between 30-180 days Full amount, less a restocking fee; if returned after 180 days No Credit

 ○ Products NOT stocked in any of Seller's distribution centers that are less than $100 No Credit

 ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days Full amount, less Seller and vendor restocking fees; if returned after 180 days No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer. All other Products should not be sent back to Seller's distribution center.

**6. DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7. LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8. FRAUD AND ABUSE LAWS.** CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS. ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION. FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED. IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# McKESSON

**Finance Charge Invoice**

Page: 1 of 3

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Payment / Account Balance
Inquiries Phone:                1-800-845-3870

Customer Service Phone:  1-800-866-9243

Bill To:     4265044

| Customer Reference | |
| --- | --- |
| Document Number | 53238704 |
| Due Date | 04/30/2019 |
| Document Amount | $436.96 |

Note: See back for terms and conditions

RCHAP6519

ST CHRISTOPHERS HOSPITAL FOR CHILDREN
PO BOX 26968
PHILADELPHIA PA  19134

| Reason Code | Description | Amount |
| --- | --- | --- |
| | Finance Charge | 436.96 |

| Document Number | Type | Doc. Date | Due Date | Reference |
| --- | --- | --- | --- | --- |
| 46948006 | RI | 02/11/2019 | 03/28/2019 | BUCKS ORDER 2/8/2019 |
| 46955250 | RI | 02/11/2019 | 03/28/2019 | BUCKS ORDER 1/24/2019 |
| 44830139 | RM | 01/14/2019 | 02/28/2019 | 033D-248194 |
| 47029595 | RI | 02/11/2019 | 03/28/2019 | 033D-249970 |
| 44841888 | RI | 01/15/2019 | 03/01/2019 | 033D-248780 |
| 38170080 | RM | 10/15/2018 | 11/29/2018 | KISHA9-18-18 |
| 41377497 | RI | 11/28/2018 | 01/12/2019 | 033D-247001 |
| 41391150 | RI | 11/28/2018 | 01/12/2019 | 033D-246948 |
| 1315051 | RB | 12/12/2018 | 12/12/2018 | INV#35899198 Overpaid |
| 44877139 | RI | 01/15/2019 | 03/01/2019 | WASHTWPCAST TAPE |
| 33501550 | RM | 08/13/2018 | 09/27/2018 | KISHA731 |
| 35690760 | RI | 09/12/2018 | 10/27/2018 | 033D-243669 |
| 47220426 | RI | 02/13/2019 | 03/30/2019 | 033D-250085 |

# McKESSON

**Finance Charge Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 |
| --- | --- |
| Document Number | 53238704 |
| Date | 04/30/2019 |
| Amount | $436.96 |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN

PO BOX 26968
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA    GA   31193-3027

The terms of sale located at https://mms.mckesson.com/content/about/sales/Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1. Invoice, Payment, and Finance**

1.1. Standard Credit and Payment Terms. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3. Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2. Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3. Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4. Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5. Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credit for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products (i.e. labeled, broken, unsaleable, etc., but not unopened); (vi) Products that have been open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

   ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

   ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

   ○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

   ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6. DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7. LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8. FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:    4265044

| Reason Code | Description | | | | Amount |
|---|---|---|---|---|---|
| | Finance Charge | | | | |

| Document Number | Type | Doc. Date | Due Date | Reference |
|---|---|---|---|---|
| 42636950 | RI | 12/13/2018 | 01/27/2019 | 033D-247575 |
| 45059883 | RI | 01/17/2019 | 03/03/2019 | 046D-001087 |
| 47306164 | RI | 02/14/2019 | 03/31/2019 | BETTY EDWARDS |
| 47309770 | RI | 02/14/2019 | 03/31/2019 | BUCKS ORDER 2/13/2019 |
| 47359287 | RI | 02/14/2019 | 03/31/2019 | 033D-250123 |
| 47365593 | RI | 02/14/2019 | 03/31/2019 | BETTY EDWARDS |
| 1364640 | RB | 04/18/2019 | 04/18/2019 | inv#42378253 |
| 47379580 | RI | 02/15/2019 | 04/01/2019 | 033D-250143 |
| 47433471 | RI | 02/15/2019 | 04/01/2019 | 033D-250188 |
| 47447026 | RI | 02/15/2019 | 04/01/2019 | 033D-250158 |
| 47677415 | RI | 02/19/2019 | 04/05/2019 | 033D-250284 |
| 20952945 | RM | 02/13/2018 | 03/30/2018 | KISHA020618 |
| 47799671 | RI | 02/21/2019 | 04/07/2019 | 033D-250287 |
| 47949830 | RI | 02/22/2019 | 04/08/2019 | 033D-250404 |
| 47960368 | RI | 02/22/2019 | 04/08/2019 | 033D-250390 |
| 48037044 | RI | 02/25/2019 | 04/11/2019 | BUCKS ORDER 2/25/2019 |
| 35881076 | RI | 09/14/2018 | 10/29/2018 | 033D 243840 |
| 38560064 | RM | 10/19/2018 | 12/03/2018 | 033D-244542 |
| 38560074 | RM | 10/19/2018 | 12/03/2018 | 033D-244542 |
| 48117065 | RM | 02/25/2019 | 04/11/2019 | POKISHA22219 |
| 48183914 | RI | 02/26/2019 | 04/12/2019 | 033D-250505 |
| 48201559 | RI | 02/26/2019 | 04/12/2019 | 033D-250533 |
| 48238743 | RI | 02/27/2019 | 04/13/2019 | 033D-250511 |
| 31421608 | RM | 07/13/2018 | 08/27/2018 | 033D-240123 |
| 48396485 | RI | 02/28/2019 | 04/14/2019 | 033D-250606 |
| 48436754 | RI | 02/28/2019 | 04/14/2019 | 033D-250560 |
| 38653259 | RI | 10/22/2018 | 12/06/2018 | BUCKS ORDER 10/19/2018 |
| 1155569 | RB | 03/20/2018 | 03/20/2018 | MCKBRANDPROMO |
| 31625119 | RI | 07/17/2018 | 08/31/2018 | 033D-241403 |
| 31640711 | RI | 07/18/2018 | 09/01/2018 | 033D-241403 |
| 42757168 | RI | 12/17/2018 | 01/31/2019 | 033D-247575 |
| 36120871 | RM | 09/18/2018 | 11/02/2018 | KISHA090418 |
| 31820587 | RM | 07/19/2018 | 09/02/2018 | 033D-240932 |
| 31823174 | RI | 07/19/2018 | 09/02/2018 | 033D-240932 |
| 38783196 | RM | 10/23/2018 | 12/07/2018 | KISHA9-18-18 |
| 39573864 | RI | 11/02/2018 | 12/17/2018 | 033D-245945 |
| 48971328 | RI | 03/07/2019 | 04/21/2019 | CARDI,OPTHOSUPPLIESWASH |
| 48971332 | RI | 03/07/2019 | 04/21/2019 | WFILINUKORTH/RHEUM |
| 48971336 | RI | 03/07/2019 | 04/21/2019 | WASH TWP OPHTHALMO |
| 45470084 | RI | 01/22/2019 | 03/08/2019 | 033D-249000 |

# MCKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Finance Charge Invoice**
**Page: 3 of 3**

Bill To:    4265044

| Reason Code | Description | Amount |
|---|---|---|
| | Finance Charge | |

| Document Number | Type | Doc. Date | Due Date | Reference |
|---|---|---|---|---|
| 43164933 | RM | 12/20/2018 | 02/03/2019 | 033D-247083 |
| 46114687 | RM | 01/30/2019 | 03/16/2019 | |
| 45585862 | RI | 01/24/2019 | 03/10/2019 | ST LUKES SUPPLIES |
| 45587164 | RI | 01/24/2019 | 03/10/2019 | BUCKS ORDER 1/23/19 |
| 45675809 | RM | 01/24/2019 | 03/10/2019 | CARDI,OPTHOSUPPLIESWASH |
| 19683858 | RI | 01/26/2018 | 03/12/2018 | 0333D234416 |
| 23687990 | RI | 03/23/2018 | 05/07/2018 | 033D-236827 |
| 32102576 | RI | 07/24/2018 | 09/07/2018 | 033D-240932 |
| 32101700 | RM | 07/24/2018 | 09/07/2018 | 033D-240932 |
| 1275215 | RB | 07/25/2018 | 07/25/2018 | INV 17556944 |
| 45776437 | RI | 01/27/2019 | 03/13/2019 | 033D-249315 |
| 22303910 | RI | 03/05/2018 | 04/19/2018 | 033D-236051 |
| 24301016 | RI | 04/02/2018 | 05/17/2018 | 033D237180 |
| 24363328 | RM | 04/02/2018 | 05/17/2018 | KISHA330 |
| 37153697 | RI | 10/02/2018 | 11/16/2018 | 033D-244542 |
| 37246916 | RI | 10/03/2018 | 11/17/2018 | 033D-244542 |
| 38040513 | RM | 10/12/2018 | 11/26/2018 | 045D-012922 |
| 43934970 | RI | 01/03/2019 | 02/17/2019 | 033D-248268 |
| 44040319 | RI | 01/04/2019 | 02/18/2019 | 033D-248170 |
| 46251490 | RI | 02/01/2019 | 03/18/2019 | BUCKS ORDER 01/31/2019 |
| 46354831 | RI | 02/03/2019 | 03/20/2019 | 033D-249606 |
| 46380981 | RI | 02/04/2019 | 03/21/2019 | 033D-248780 |
| 46452505 | RI | 02/04/2019 | 03/21/2019 | 033D-249613 |
| 46467271 | RI | 02/04/2019 | 03/21/2019 | 033D-249600 |
| 46471414 | RI | 02/04/2019 | 03/21/2019 | 033D-249649 |
| 46490125 | RI | 02/05/2019 | 03/22/2019 | 033D-249600 |
| 46610581 | RI | 02/06/2019 | 03/23/2019 | 033D-249724 |
| 46712582 | RM | 02/06/2019 | 03/23/2019 | |
| 46718498 | RI | 02/07/2019 | 03/24/2019 | 033D-249776 |
| 46807189 | RI | 02/07/2019 | 03/24/2019 | 033D-249825 |
| 46818246 | RM | 02/07/2019 | 03/24/2019 | |
| 46822770 | RI | 02/08/2019 | 03/25/2019 | 033D-249875 |
| 46889793 | RI | 02/08/2019 | 03/25/2019 | ST LUKES SUPPLIES |

# MCKESSON

**Invoice**
Page 1 of 2

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License  3000009121
Shipped To:    4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Regulatory License   MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:              1-800-866-9243

| Sales Order Number | 34014714 | Invoice Number | 54860945 |
|---|---|---|---|
| Sales Order Date | 05/21/2019 | Invoice Date | 05/21/2019 |
| PO Number | NIKISHA JACOBS 52119 | Payment Due Date | 07/05/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $604.18 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 783553 | Vendor: DJORTH  Vend Cat#:  79-95525 | ANKLE WALKER, XCELTRAX AIR MED  PO LN 1 | 3 | EA | 3 | ■ | ■ | .00 | |
| | 1Z31FW670384745268 | | | | | | | | |
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |
| 783551 | Vendor: DJORTH  Vend Cat#:  79-95522 | ANKLE WALKER, XCELTRAX AIR PED  PO LN 2 | 3 | EA | 3 | ■ | ■ | .00 | |
| | 1Z31FW670384745268 | | | | | | | | |
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |
| 783552 | Vendor: DJORTH  Vend Cat#:  79-95523 | ANKLE WALKER, XCELTRAX AIR SM  PO LN 3 | 3 | EA | 3 | ■ | ■ | .00 | |
| | 1Z31FW670384745277 | | | | | | | | |
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |
| 842418 | Vendor: 9AUROB  NDC Num: & 65862039010 | ONDANSETRON ODT, TAB 4MG 3X10  PO LN 4 | 3 | BX | 3 | ■ | ■ | .00 | |
| | 1Z31FW670384745277 | | | | | | | | |

# MCKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 54860945 | Date | 05/21/2019 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 07/05/2019 | | $604.18 |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

The terms of sale located at https://mms.mckesson.com/content/about/sales-Legal-Documents/ TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.   Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.   Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.   Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.   Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.   Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products that cannot be otherwise remarketed, but are eligible for return to the manufacturer; (vi) Products in open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.   DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.   LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.   FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF.  CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

# McKESSON

**McKesson Medical-Surgical**
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Invoice**
Page 2 of 2

RCHAP6519

Bill To:    4265044
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Shipped To:
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

| Invoice Number  54860945 | PO Number NIKISHA JACOBS 52119 | Invoice Date  05/21/2019 |
|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |
| 1074917 | Vendor: 9WEST NDC Num: & 00054418425 | DEXAMETHASONE, TAB 4MG (100/BT PO LN 5 | 1 | BT | 1 | ■ | ■ | .00 | |
| | 1Z31FW670384745277 | | | | | | | | |
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |
| 251621 | Vendor: DJORTH Vend Cat#: 79-87100 | THUMB SPLINT, SPICA ABDUCTED R PO LN 6 | 10 | EA | 10 | ■ | ■ | .00 | |
| | 1Z31FW670384745277 | | | | | | | | |
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |
| 412020 | Vendor: DJORTH Vend Cat#: 79-87101 | THUMB SPLINT, SPICA ABDUCTED L PO LN 7 | 10 | EA | 10 | ■ | ■ | .00 | |
| | 1Z31FW670384745277 | | | | | | | | |
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |
| 951315 | Vendor: MGM32 Vend Cat#: 5011 | CONTROL KIT, PREG HCG (1/BX) PO LN 8 | 1 | BX | 1 | ■ | ■ | 1.24 | |
| | 1Z31FW670384746310 | | | | | | | | |
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |
| | Lot/Serial:  KN00096 | 09/30/2021 | | | | | | | |
| 690839 | Vendor: 9PLIVA NDC Num: & 50111078766 | AZITHROMYCIN, TAB 250MG 3X6 (1 PO LN 9 | 3 | CT | 3 | ■ | ■ | .00 | |
| | 1Z31FW670384745277 | | | | | | | | |
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |
| 400665 | Vendor: 9WEST NDC Num: & 00641036725 | DEXAMETHASONE, VL 10MG/ML 1ML PO LN 10 | 2 | BX | 2 | ■ | ■ | .00 | |
| | 1Z31FW670384745277 | | | | | | | | |
| | SHIPPED: 05/21/2019 | Winchester | | | | | | | |

**S A L E S   T A X**

| | STATE $1.24 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | |
|---|---|---|---|---|---|---|---|
| **SUB TOTAL** | **HANDLING** | **COLD CHAIN** | **HAZMAT** | **BULK** | **STD/EXP FREIGHT** | **TOTAL FREIGHT** | **TOTAL TAX** | **TOTAL AMOUNT** |
| $602.94 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.24 | $604.18 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Finance Charge Invoice**

Page: 1 of 2

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Payment / Account Balance
Inquiries Phone:                1-800-845-3870

Customer Service Phone:  1-800-866-9243

Bill To:     4265044

| Customer Reference | |
| --- | --- |
| Document Number | 55624391 |
| Due Date | 05/31/2019 |
| Document Amount | $224.67 |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN
PO BOX 26968
PHILADELPHIA PA  19134

Note: See back for terms and conditions

RCHAP6519

| Reason Code | Description | Amount |
| --- | --- | --- |
| | Finance Charge | 224.67 |

| Document Number | Type | Doc. Date | Due Date | Reference |
| --- | --- | --- | --- | --- |
| 44830139 | RM | 01/14/2019 | 02/28/2019 | 033D-248194 |
| 44841888 | RI | 01/15/2019 | 03/01/2019 | 033D-248780 |
| 38170080 | RM | 10/15/2018 | 11/29/2018 | KISHA9-18-18 |
| 41377497 | RI | 11/28/2018 | 01/12/2019 | 033D-247001 |
| 41391150 | RI | 11/28/2018 | 01/12/2019 | 033D-246948 |
| 1315051 | RB | 12/12/2018 | 12/12/2018 | INV#35899198 Overpaid |
| 51198716 | RM | 04/03/2019 | 05/18/2019 | POKISHA22219 |
| 33501550 | RM | 08/13/2018 | 09/27/2018 | KISHA731 |
| 46818246 | RM | 02/07/2019 | 03/24/2019 | |
| 35690760 | RI | 09/12/2018 | 10/27/2018 | 033D-243669 |
| 42636950 | RI | 12/13/2018 | 01/27/2019 | 033D-247575 |
| 46712582 | RM | 02/06/2019 | 03/23/2019 | |
| 46610581 | RI | 02/06/2019 | 03/23/2019 | 033D-249724 |

# McKESSON

**Finance Charge Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 |
| --- | --- |
| Document Number | 55624391 |
| Date | 05/31/2019 |
| Amount | $224.67 |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN

PO BOX 26968
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA    GA   31193-3027

**TERMS OF SALE**

The terms of sale located at https://imsqd.mckesson.com/content/dam/imsqd/Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.    Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.    Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.    Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.    Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.    Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products that have been opened or used, but are not broken; returned products in altered, torn open, damaged, past minimum expiration date for the resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

   o  Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

   o  Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

   o  Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

   o  Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.    DISCLAIMER**.  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.    LIMITATION OF LIABILITY**.  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.    FRAUD AND ABUSE LAWS**.  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

# McKESSON

**Finance Charge Invoice**

Page: 2 of 2

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:    4265044

| Reason Code | Description | | | | | Amount |
|---|---|---|---|---|---|---|
| | Finance Charge | | | | | |
| | Document Number | Type | Doc. Date | Due Date | Reference | |
| | 47306164 | RI | 02/14/2019 | 03/31/2019 | BETTY EDWARDS | |
| | 47365593 | RI | 02/14/2019 | 03/31/2019 | BETTY EDWARDS | |
| | 1364640 | RB | 04/18/2019 | 04/18/2019 | inv#42378253 | |
| | 47677415 | RI | 02/19/2019 | 04/05/2019 | 033D-250284 | |
| | 20952945 | RM | 02/13/2018 | 03/30/2018 | KISHA020618 | |
| | 35881076 | RI | 09/14/2018 | 10/29/2018 | 033D 243840 | |
| | 38560064 | RM | 10/19/2018 | 12/03/2018 | 033D-244542 | |
| | 38560074 | RM | 10/19/2018 | 12/03/2018 | 033D-244542 | |
| | 48117065 | RM | 02/25/2019 | 04/11/2019 | POKISHA22219 | |
| | 31421608 | RM | 07/13/2018 | 08/27/2018 | 033D-240123 | |
| | 1155569 | RB | 03/20/2018 | 03/20/2018 | MCKBRANDPROMO | |
| | 31625119 | RI | 07/17/2018 | 08/31/2018 | 033D-241403 | |
| | 31640711 | RI | 07/18/2018 | 09/01/2018 | 033D-241403 | |
| | 42757168 | RI | 12/17/2018 | 01/31/2019 | 033D-247575 | |
| | 36120871 | RM | 09/18/2018 | 11/02/2018 | KISHA090418 | |
| | 38783196 | RM | 10/23/2018 | 12/07/2018 | KISHA9-18-18 | |
| | 39573864 | RI | 11/02/2018 | 12/17/2018 | 033D-245945 | |
| | 44040319 | RI | 01/04/2019 | 02/18/2019 | 033D-248170 | |
| | 45470084 | RI | 01/22/2019 | 03/08/2019 | 033D-249000 | |
| | 43164933 | RM | 12/20/2018 | 02/03/2019 | 033D-247083 | |
| | 46114687 | RM | 01/30/2019 | 03/16/2019 | | |
| | 43934970 | RI | 01/03/2019 | 02/17/2019 | 033D-248268 | |
| | 45675809 | RM | 01/24/2019 | 03/10/2019 | CARDI,OPTHOSUPPLIESWASH | |
| | 19683858 | RI | 01/26/2018 | 03/12/2018 | 0333D234416 | |
| | 23687990 | RI | 03/23/2018 | 05/07/2018 | 033D-236827 | |
| | 32102576 | RI | 07/24/2018 | 09/07/2018 | 033D-240932 | |
| | 32101700 | RM | 07/24/2018 | 09/07/2018 | 033D-240932 | |
| | 1275215 | RB | 07/25/2018 | 07/25/2018 | INV 17556944 | |
| | 45776437 | RI | 01/27/2019 | 03/13/2019 | 033D-249315 | |
| | 38040513 | RM | 10/12/2018 | 11/26/2018 | 045D-012922 | |
| | 37246916 | RI | 10/03/2018 | 11/17/2018 | 033D-244542 | |
| | 37153697 | RI | 10/02/2018 | 11/16/2018 | 033D-244542 | |
| | 22303910 | RI | 03/05/2018 | 04/19/2018 | 033D-236051 | |
| | 24301016 | RI | 04/02/2018 | 05/17/2018 | 033D237180 | |
| | 24363328 | RM | 04/02/2018 | 05/17/2018 | KISHA330 | |

# McKESSON

**Invoice**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Page 1 of 2**

RCHAP6519

Shipped From:
MCKESSON MEDICAL SURGICAL (HOUSTON)
HOUSTON #16
20710 HEMPSTEAD RD
HOUSTON,TX 77065

Bill To:    4265044

District License   7200001102
Shipped To:    4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Regulatory License   MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 35160783 | Invoice Number | 56440362 |
|---|---|---|---|
| Sales Order Date | 06/06/2019 | Invoice Date | 06/11/2019 |
| PO Number | KISHA0605192 | Payment Due Date | 07/26/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $62.34 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 1080944 | Vendor:  GECUFF  Vend Cat#:  002766 | CUFF, BP DURACUF 1TU W/SCREW C  PO LN 1 | 1 | BX | 1 | ▇ | ▇ | 3.53 | |
| | 1Z0868110317390981 | | | | | | | | |
| | SHIPPED: 06/11/2019 | Houston | | | | | | | |
| 906624 | Vendor:  GECUFF  Vend Cat#:  DUR-P2-2A | BP CUFF CHILD 2TB DURACUF  PO LN 2 | 1 | BX | 0 | ▇ | ▇ | .00 | |
| 881998 | Vendor:  GECUFF  Vend Cat#:  DUR-A1-2A | CUFF, BP DURACUF 2TU ADLT SM (  PO LN 3 | 1 | BX | 0 | ▇ | ▇ | .00 | |

# McKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 56440362 | Date | 06/11/2019 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 07/26/2019 | | $62.34 |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
Please Remit To:
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms of sale located at https://imsc.mckesson.com/Customer/SMSForms/en/Legal_Documents/TermsofSale_PC.pdf (**"Terms of Sale"**) apply to all purchases you (**"Customer"**) make. You cannot modify these Terms of Sale without our (**"Seller"**) written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.    Invoice, Payment and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes (**"Transaction Taxes"**).  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.    Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.    Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation (**"Bulk Delivery"**), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.    Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.    Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products - including hazardous, but not saleable; (vi) damaged products once open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

  ○  Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

  ○  Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

  ○  Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

  ○  Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.    DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.  LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.  FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# McKESSON

**Invoice**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Page 2 of 2**

RCHAP6519

Bill To:     4265044
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Shipped To:
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

| Invoice Number  56440362 | PO Number KISHA0605192 | Invoice Date   06/11/2019 |
|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|

**S A L E S   T A X**

| STATE $3.53 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |
|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $58.81 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.53 | $62.34 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.

PRICING IS CONFIDENTIAL AND PROPRIETARY.

# MCKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Invoice**

**Page 1 of 2**

RCHAP6519

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:   4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Regulatory License   MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 35162472 | Invoice Number | 56524532 |
|---|---|---|---|
| Sales Order Date | 06/06/2019 | Invoice Date | 06/12/2019 |
| PO Number | KISHA060519 | Payment Due Date | 07/27/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $945.17 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 783554 | Vendor: DJORTH Vend Cat#:  79-95527 | ANKLE WALKER, XCELTRAX AIR LG PO LN 1 | 4 | EA | 4 | ███ | ███ | .00 | |
| | 1Z31FW670385652302 | | | | | | | | |
| | SHIPPED: 06/12/2019 | Winchester | | | | | | | |
| 783553 | Vendor: DJORTH Vend Cat#:  79-95525 | ANKLE WALKER, XCELTRAX AIR MED PO LN 2 | 6 | EA | 6 | ███ | ███ | .00 | |
| | 1Z31FW670385651223 | | | | | | | | |
| | SHIPPED: 06/12/2019 | Winchester | | | | | | | |
| 783551 | Vendor: DJORTH Vend Cat#:  79-95522 | ANKLE WALKER, XCELTRAX AIR PED PO LN 3 | 6 | EA | 6 | ███ | ███ | .00 | |
| | 1Z31FW670385652197 | | | | | | | | |
| | SHIPPED: 06/12/2019 | Winchester | | | | | | | |
| 783552 | Vendor: DJORTH Vend Cat#:  79-95523 | ANKLE WALKER, XCELTRAX AIR SM PO LN 4 | 6 | EA | 6 | ███ | ███ | .00 | |
| | 1Z31FW670385652240 | | | | | | | | |

**Invoice**

RCHAP6519

# MCKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 56524532 | Date | 06/12/2019 |
| | | Terms | AR  NET 45 DAYS |
| Pay This Amount Before | 07/27/2019 | | $945.17 |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms of sale located at https://mpc.mckesson.com/customer/portal/sales/Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.    Invoice, Payment, and Finance**

1.1. Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3. Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.    Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1. Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2. Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.    Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.    Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.    Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products returned from one customer for resale, but not purchased from Seller; (vi) Products in opened, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

  ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

  ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.    DISCLAIMER**.  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.    LIMITATION OF LIABILITY**.  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.    FRAUD AND ABUSE LAWS**.  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# McKESSON

**McKesson Medical-Surgical**
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Invoice**

**Page 2 of 2**

RCHAP6519

Bill To:    4265044
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Shipped To:
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

| Invoice Number 56524532 | PO Number KISHA060519 | | Invoice Date | 06/12/2019 |
|---|---|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| | SHIPPED: 06/12/2019 | Winchester | | | | | | | |
| 911727 | Vendor: MGM173 Vend Cat#: 32644 | NEBULIZER, W/MOUTHPC LF ADLT 7 PO LN 5 | 1 | CS | 1 | ███ | ███ | .00 | |
| | 1Z31FW670385651876 | | | | | | | | |
| | SHIPPED: 06/12/2019 | Winchester | | | | | | | |
| 862691 | Vendor: MGM173 Vend Cat#: 32641 | NEBULIZER, PACIFIER 45DEG ELBO PO LN 6 | 5 | EA | 5 | ███ | ███ | .00 | |
| | 1Z31FW670385651223 | | | | | | | | |
| | SHIPPED: 06/12/2019 | Winchester | | | | | | | |
| 951139 | Vendor: QUIDEL Vend Cat#: 20274 | TEST KIT, STREP A+ SOFIA (25/K PO LN 7 | 1 | KT | 1 | ███ | ███ | 6.46 | |
| | 1Z31FW670385651223 | | | | | | | | |
| | SHIPPED: 06/12/2019 | Winchester | | | | | | | |
| | Lot/Serial:  705052 | 11/30/2020 | | | | | | | |
| 362644 | Vendor: DJORTH Vend Cat#: 79-97863 | ANKLE BRACE, AIR GEL SM UNIV 8 PO LN 8 | 6 | EA | 6 | ███ | ███ | .00 | |
| | 1Z31FW670385651223 | | | | | | | | |
| | SHIPPED: 06/12/2019 | Winchester | | | | | | | |
| 691812 | Vendor: 9PERR NDC Num: & 45802095243 | IBUPROFEN, SUSP ORAL 100MG/5ML PO LN 9 | 2 | EA | 2 | ███ | ███ | .00 | |
| | 1Z31FW670385651223 | | | | | | | | |
| | SHIPPED: 06/12/2019 | Winchester | | | | | | | |

| **S A L E S   T A X** | | | | | |
|---|---|---|---|---|---|
| | STATE $6.46 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $938.71 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.46 | $945.17 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.

PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Invoice**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Page 1 of 2**                              RCHAP6519

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License  3000009121
Shipped To:    4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Regulatory License   MD427985
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:                1-800-866-9243

| | | | |
|---|---|---|---|
| Sales Order Number | 35160783 | Invoice Number | 57528490 |
| Sales Order Date | 06/06/2019 | Invoice Date | 06/26/2019 |
| PO Number | KISHA0605192 | Payment Due Date | 08/10/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $107.36 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 906624 | Vendor:  GECUFF<br>Vend Cat#:  DUR-P2-2A | BP CUFF CHILD 2TB DURACUF PO LN 2 | 1 | BX | 1 | ███ | ███ | 3.03 | |
| | 1Z31FW670386257210 | | | | | | | | |
| | SHIPPED: 06/26/2019 | Winchester | | | | | | | |
| 881998 | Vendor:  GECUFF<br>Vend Cat#:  DUR-A1-2A | CUFF, BP DURACUF 2TU ADLT SM ( PO LN 3 | 1 | BX | 1 | ███ | ███ | 3.05 | |
| | 1Z31FW670386257210 | | | | | | | | |
| | SHIPPED: 06/26/2019 | Winchester | | | | | | | |

**Invoice**

RCHAP6519

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| | | | |
|---|---|---|---|
| **Account Number** | 4265044 | | |
| **Document Number** | 57528490 | Date | 06/26/2019 |
| | | **Terms** | AR  NET 45 DAYS |
| **Pay This Amount Before** | 08/10/2019 | | $107.36 |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

The terms of sale located at https://imgcdf.mckesson.com/CumulusWeb/Click_Legal_Documents/ TermsofSale_PC.pdf ("Terms of Sale") apply to all purchases you ("Customer") make. You cannot modify these Terms of Sale without our ("Seller") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.    Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.    Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.    Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes:  For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.    Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.    Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products - that are in sellable condition, but are returned by Customer in multiple boxes or are open, damaged, past minimum expiration date for the resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

   o  Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

   o  Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

   o  Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

   o  Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.    DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.    LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.    FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# McKESSON

**Invoice**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Page 2 of 2**

RCHAP6519

Bill To:    4265044
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

Shipped To:
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA  19046

| Invoice Number  57528490 | PO Number KISHA0605192 | Invoice Date    06/26/2019 |
|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|

**S A L E S   T A X**

| | STATE $6.08 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | | | |
|---|---|---|---|---|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $101.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.08 | $107.36 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.

PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Finance Charge Invoice**

Page: 1 of 2

Bill To:    4265044

Payment / Account Balance
Inquiries Phone:              1-800-845-3870

Customer Service Phone:  1-800-866-9243

| Customer Reference | |
| --- | --- |
| Document Number | 57842453 |
| Due Date | 06/30/2019 |
| Document Amount | $223.84 |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN
PO BOX 26968
PHILADELPHIA PA  19134

Note: See back for terms and conditions

RCHAP6519

| Reason Code | Description | | Amount |
| --- | --- | --- | --- |
| | Finance Charge | | 223.84 |

| Document Number | Type | Doc. Date | Due Date | Reference |
| --- | --- | --- | --- | --- |
| 44830139 | RM | 01/14/2019 | 02/28/2019 | 033D-248194 |
| 44841888 | RI | 01/15/2019 | 03/01/2019 | 033D-248780 |
| 38170080 | RM | 10/15/2018 | 11/29/2018 | KISHA9-18-18 |
| 41391150 | RI | 11/28/2018 | 01/12/2019 | 033D-246948 |
| 1315051 | RB | 12/12/2018 | 12/12/2018 | INV#35899198 Overpaid |
| 51198716 | RM | 04/03/2019 | 05/18/2019 | POKISHA22219 |
| 33501550 | RM | 08/13/2018 | 09/27/2018 | KISHA731 |
| 46818246 | RM | 02/07/2019 | 03/24/2019 | |
| 35690760 | RI | 09/12/2018 | 10/27/2018 | 033D-243669 |
| 42636950 | RI | 12/13/2018 | 01/27/2019 | 033D-247575 |
| 46712582 | RM | 02/06/2019 | 03/23/2019 | |
| 46610581 | RI | 02/06/2019 | 03/23/2019 | 033D-249724 |
| 47306164 | RI | 02/14/2019 | 03/31/2019 | BETTY EDWARDS |

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Finance Charge Invoice**

RCHAP6519

| Account Number | 4265044 |
| --- | --- |
| Document Number | 57842453 |
| Date | 06/30/2019 |
| Amount | $223.84 |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN

PO BOX 26968
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA    GA   31193-3027

The terms of sale located at https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.   Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, code or regulations.

**2.   Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.   Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.   Third-Party Logistics Provider Services.** If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.   Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

·  All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

·  Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

·  The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsalable

Products returnable to the Supplier, including once, but not limited to, Products that are: (i)un-saleable, (ii)returned beyond the Supplier's specified time period; (iii)no longer in original packaging; (iv)with less than six months' dating remaining; (v)not in saleable condition; (vi)not in unopened original packaging with seals intact; (vii)damaged Products. No credit will be issued for Products that are open, damaged, past minimum expiration date for the resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

·  Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount;  if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

·  Seller will issue a credit as follows for all other eligible Products:

   ○  Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

   ○  Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

   ○  Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

   ○  Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

·  Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.   DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.   LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.   FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:    4265044

| Reason Code | Description | Amount |
|---|---|---|
| | Finance Charge | |

| Document Number | Type | Doc. Date | Due Date | Reference |
|---|---|---|---|---|
| 47365593 | RI | 02/14/2019 | 03/31/2019 | BETTY EDWARDS |
| 1364640 | RB | 04/18/2019 | 04/18/2019 | inv#42378253 |
| 47677415 | RI | 02/19/2019 | 04/05/2019 | 033D-250284 |
| 20952945 | RM | 02/13/2019 | 03/30/2019 | KISHA020618 |
| 1381380 | RB | 06/17/2019 | 06/17/2019 | Adj-Streeter Julie L |
| 35881076 | RI | 09/14/2018 | 10/29/2018 | 033D 243840 |
| 38560064 | RM | 10/19/2018 | 12/03/2018 | 033D-244542 |
| 48117065 | RM | 02/25/2019 | 04/11/2019 | POKISHA22219 |
| 1155569 | RB | 03/20/2018 | 03/20/2018 | MCKBRANDPROMO |
| 31625119 | RI | 07/17/2018 | 08/31/2018 | 033D-241403 |
| 31640711 | RI | 07/18/2018 | 09/01/2018 | 033D-241403 |
| 42757168 | RI | 12/17/2018 | 01/31/2019 | 033D-247575 |
| 36120871 | RM | 09/18/2018 | 11/02/2018 | KISHA090418 |
| 38783196 | RM | 10/23/2018 | 12/07/2018 | KISHA9-18-18 |
| 39573864 | RI | 11/02/2018 | 12/17/2018 | 033D-245945 |
| 44040319 | RI | 01/04/2019 | 02/18/2019 | 033D-248170 |
| 45470084 | RI | 01/22/2019 | 03/08/2019 | 033D-249000 |
| 43164933 | RM | 12/20/2018 | 02/03/2019 | 033D-247083 |
| 46114687 | RM | 01/30/2019 | 03/16/2019 | |
| 43934970 | RI | 01/03/2019 | 02/17/2019 | 033D-248268 |
| 45675809 | RM | 01/24/2019 | 03/10/2019 | CARDI,OPTHOSUPPLIESWASH |
| 19683858 | RI | 01/26/2018 | 03/12/2018 | 0333D234416 |
| 23687990 | RI | 03/23/2018 | 05/07/2018 | 033D-236827 |
| 32102576 | RI | 07/24/2018 | 09/07/2018 | 033D-240932 |
| 32101700 | RM | 07/24/2018 | 09/07/2018 | 033D-240932 |
| 1275215 | RB | 07/25/2018 | 07/25/2018 | INV 17556944 |
| 45776437 | RI | 01/27/2019 | 03/13/2019 | 033D-249315 |
| 38040513 | RM | 10/12/2018 | 11/26/2018 | 045D-012922 |
| 37246916 | RI | 10/03/2018 | 11/17/2018 | 033D-244542 |
| 37153697 | RI | 10/02/2018 | 11/16/2018 | 033D-244542 |
| 22303910 | RI | 03/05/2018 | 04/19/2018 | 033D-236051 |
| 24301016 | RI | 04/02/2018 | 05/17/2018 | 033D237180 |
| 24363328 | RM | 04/02/2018 | 05/17/2018 | KISHA330 |

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**

**Page 1 of 1**          RCHAP6519

Shipped From:
MCKESSON MEDICAL-SURGICAL(LEHIGH VALLEY)
075 LEHIGH VALLEY
3769 COMMERCE CENTER BLVD
BETHLEHEM,PA 18015

Bill To:      4265044

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA 19046

District License   8000003006
Shipped To:      4265045
ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA 19046
Ordered By: LANE BLAIR

Regulatory License   MD427985
Payment / Account Balance Inquires  1-800-453-5180
Phone:

Customer Service Phone:          1-800-866-9243

| | | | |
|---|---|---|---|
| Sales Order Number | 47133239 | Credit Number | 68504133 |
| Sales Order Date | 11/05/2019 | Credit Date | 11/06/2019 |
| PO Number | KISHA31119 | Original Invoice Number | 49640209 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($37.10) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| | S A L E S   T A X | | | | | |
|---|---|---|---|---|---|---|
| | STATE ($2.10) | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($35.00) | ($35.00) | ($2.10) | ($37.10) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.

PRICING IS CONFIDENTIAL AND PROPRIETARY.

---

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**

RCHAP6519

| | | | |
|---|---|---|---|
| Account Number | 4265044 | | |
| Document Number | 68504133 | Date | 11/06/2019 |
| | Terms | AR Cash In Advance | |
| | | | ($37.10) |

ST CHRISTOPHER'S PEDIATRIC URGENT CARE
ST. CHRIS CARE - URGENT CARE CTR
500 OLD YORK RD - STE 250
JENKINTOWN PA 19046

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
Please Remit To:
*****************************************
CREDIT MEMORANDUM
DO NOT PAY

**TERMS OF SALE**

The terms of sale located at https://imqol.mckesson.com/cumulus/en/SMO/Legal_Documents/
TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("Customer") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

1.    **Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, code or regulations.

2.    **Discrepancies**.  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

3.    **Title and Risk of Loss**.  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

4.    **Third-Party Logistics Provider Services**.  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

5.    **Returned Goods**.  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products returnable to the original source, but not purchased from Seller; (vi) Products that are open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

  ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

  ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

6.    **DISCLAIMER**.  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.    **LIMITATION OF LIABILITY**.  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

8.    **FRAUD AND ABUSE LAWS**.  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF.  CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H).  CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

## Credit Memo
Page: 1 of 1

Bill To:    4265044

Payment / Account Balance
Inquiries Phone:              1-800-845-3870

Customer Service Phone:  1-800-866-9243

| Customer Reference | INV#35899198 Overpaid |
|---|---|
| Chargback Number | 1315051 |
| Chargeback Date | 12/12/2018 |
| Chargeback Amount | ($156.89) |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN
PO BOX 26968
PHILADELPHIA PA  19134

Note: See back for terms and conditions

RCHAP6519

| Reason Code | Description | Amount |
|---|---|---|
| CO | Overpaid Invoice | -156.89 |

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

## Credit Memo
RCHAP6519

| Account Number | 4265044 |
|---|---|
| Document Number | 1315051 |
| Date | 12/12/2018 |
| Amount | ($156.89) |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN

PO BOX 26968
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

CREDIT MEMO
NO PAYMENT REQUIRED

These terms of sale ("**Terms of Sale**") shall apply to any sale of products or services ("**Products**" or "**Services**"), purchased by the end user/patient named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1. **General Terms of Sale.**

1.1. "Standard Credit and Payment Terms. All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements out of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on an invoice for a Product or facility, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2. Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3. Discrepancies. Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4. Non-Disposable Products. Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5. Freight Charges, Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6. Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7. Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8. Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
-    Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.
-    Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.
-    Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.
-    Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
§    Products that are not returnable to the Supplier  NO CREDIT WILL BE ISSUED
§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2. **Chargebacks.** In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3. **Force Majeure.** Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4. **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("Equivalency Recommendations"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

a sophisticated Customer with experience in ordering products of the type identified in any Equivalency Recommendation between Seller and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5. **DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT. CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6. **LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7. **Government Contracts.** Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8. **No Conflict or Interference.** Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9. **Confidential Information.** Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller. Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10. **REPORTING AND DISCLOSURE OBLIGATIONS.** THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11. **Controlled Substances and Other Regulations.** If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, ordinance, regulation or any governmental requirement, guideline or procurement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12. **Compliance with Laws.** Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13. **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries of affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14. **Relationship of the Parties.** The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16. **WAIVER OF JURY TRIAL. THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page: 1 of 1

Bill To:    4265044

Payment / Account Balance
Inquiries Phone:           1-800-845-3870

Customer Service Phone:  1-800-866-9243

| | |
|---|---|
| Customer Reference | Adj-Streeter Julie L |
| Chargeback Number | 1381380 |
| Chargeback Date | 06/17/2019 |
| Chargeback Amount | ($14.53) |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN
PO BOX 26968
PHILADELPHIA PA  19134

Note: See back for terms and conditions

RCHAP6519

| Reason Code | Description | Amount |
|---|---|---|
| AC | Account Cleanup | -14.53 |

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**

RCHAP6519

| | |
|---|---|
| **Account Number** | **4265044** |
| **Document Number** | **1381380** |
| **Date** | **06/17/2019** |
| **Amount** | **($14.53)** |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN

PO BOX 26968
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

CREDIT MEMO
NO PAYMENT REQUIRED

**TERMS OF SALE**

The terms of sale located at https://imgcdn.mckesson.com/CumulusWeb/Click_Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.   Invoice, Payment, and Finance**

**1.1.**  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

**1.2.**  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

**1.3.**  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.   Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

**2.1.**  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

**2.2.**  Price or Payment Discrepancies.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.   Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.   Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.   Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

· All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

· Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

· The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products: that have been opened or otherwise used, but are repackaged in units or cases that are open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

· Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

· Seller will issue a credit as follows for all other eligible Products:

○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

· Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.   DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.   LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.   FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

**McKESSON**

**Invoice**
Page 1 of 2

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License    3000009121
Shipped To:    4324957
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:            1-800-866-9243

| Sales Order Number | 21458471 | Invoice Number | 41391150 |
|---|---|---|---|
| Sales Order Date | 11/28/2018 | Invoice Date | 11/28/2018 |
| PO Number | 033D-246948 | Payment Due Date | 01/12/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $1,228.81 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 288479 | Vendor: BBRAUN<br>Vend Cat#: V6220 | EXT SET, MICROBORE PVC FREE .3<br>PO LN 1 | 3 | CS | 3 | ▮ | ▮ | .00 |
| | 1Z31FW670377421602 | | | | | | | |
| | SHIPPED: 11/28/2018 | Winchester | | | | | | |
| 679814 | Vendor: PKRLAB<br>Vend Cat#: 15-25 | GEL, ELECTRODE SIGNAGEL 250GM<br>PO LN 2 | 1 | CS | 1 | ▮ | ▮ | 11.67 |
| | 1Z31FW670377421522 | | | | | | | |
| | SHIPPED: 11/28/2018 | Winchester | | | | | | |
| 234732 | Vendor: BD<br>Vend Cat#: 309628 | SYRINGE, LL 1CC (100/BX)<br>PO LN 3 | 4 | CS | 4 | ▮ | ▮ | .00 |
| | 1Z31FW670377421568 | 1Z31FW670377421746 | | | | | | |
| | SHIPPED: 11/28/2018 | Winchester | | | | | | |

---

**MCKESSON**

**Invoice**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 41391150 | Date | 11/28/2018 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 01/12/2019 | | $1,228.81 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to a specific Product or Service ("**Product**" or "**Service**"), purchased by the subsidiary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

user level patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5.  **DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTUROR OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT. CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTUROR OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.  **LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.  **Government Contracts.** Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.  **No Conflict or Interference.** Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.  **Confidential Information.** Pricing and terms of this Agreement are confidential information and shall not be disclosed without consent from Seller. Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.  **REPORTING AND DISCLOSURE OBLIGATIONS.** THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11.  **Controlled Substances and Other Regulations.** If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or ordinance or any governmental requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.  **Compliance with Laws.** Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.  **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market to Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.  **Relationship of the Parties.** The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15.  **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.  **WAIVER OF JURY TRIAL.** THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.

---

1.  **General Terms of Sale.**

1.1.  "Standard Credit and Payment Terms. All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements out of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a non-business day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from the Customer.

1.2.  Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.  Discrepancies. Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.  Non-Disposable Products. Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.  Freight Charges. Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.  Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.  Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.  Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§  All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§  All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§  Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§  The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
-  Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality. FULL CREDIT.
-  Locally stocked Products returned within thirty (30) days of date of invoice. FULL CREDIT.
-  Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice. FULL CREDIT LESS A 15% RESTOCKING CHARGE.
-  Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
-  Non-returnable Products. NO CREDIT WILL BE ISSUED
§  Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.  **Chargebacks.** In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (iii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.  **Force Majeure.** Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.  **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

**McKESSON**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:    4265044
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA 19134

Shipped To:
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA 19134

| Invoice Number 41391150 | PO Number 033D-246948 | Invoice Date 11/28/2018 |
|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|

S A L E S   T A X

| | | STATE $11.67 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |
|---|---|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $1,217.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $11.67 | $1,228.81 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:    4324957
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Regulatory License    HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:              1-800-866-9243

| Sales Order Number | 22537860 | Invoice Number | 42636950 |
|---|---|---|---|
| Sales Order Date | 12/12/2018 | Invoice Date | 12/13/2018 |
| PO Number | 033D-247575 | Payment Due Date | 01/27/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $209.55 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 321308 | Vendor:  KCLAPC  Vend Cat#:  67330 | DIAPER, HUGGIES PREMIE UPTO6LB PO LN 3 | 3 | CS | 3 | ▮ | ▮ | .00 |
| | 1Z31FW670378025244 | 1Z31FW670378025253 | | | 1Z31FW670378025262 | | | |
| | SHIPPED: 12/13/2018 | Winchester | | | | | | |

| | | SALES TAX | | | | |
|---|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $209.55 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $209.55 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Invoice**

**McKESSON**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 42636950 | Date | 12/13/2018 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 01/27/2019 | | $209.55 |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

These terms of sale ("**Terms of Sale**") shall apply to all orders for Products ("**Products**") and/or services ("**Services**") purchased by Customer, a wholly-owned subsidiary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1.    **General Terms of Sale.**

1.1.   "Standard Credit and Payment Terms.    All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on any weekend or holiday, payment is due and payable on the succeeding business day.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.  In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims.  Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise.  If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller.  Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller.  Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.   Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.   Discrepancies.  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.   Non-Disposable Products.  Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.   Freight Charges.  Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering.  Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier.  For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order.  A fuel surcharge, if applicable, may be added to the invoice.  Detailed information on the fuel surcharge can be obtained by request.  Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.   Title and Risk of Loss.  Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.   Third-Party Logistics Provider Services.  If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.   Returned Goods.  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:
§      All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§      All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§      Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§      The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
-       Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.
-       Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.
-       Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.
-       Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
-       Non-returnable Products that are not returnable to the Supplier  NO CREDIT WILL BE ISSUED
§      Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.    **Chargebacks.**  In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)").  In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount.  In the event Supplier:  (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.    **Force Majeure**.  Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.    **Product Recommendations**.  Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**").  Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision.  Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment.  Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Customer agrees and stipulates that it is

a sophisticated purchaser, and that it agrees to make any use of any Equivalency Recommendation in the exercise of its sole use/patient.  THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE.  THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION.  The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history.  Alternative products are not necessarily the lowest priced items available.

5.    **DISCLAIMER**.  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEFECTS ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.    **LIMITATION OF LIABILITY**.  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.    **Government Contracts**.  Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.    **No Conflict or Interference**.  Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective  contractual obligation or other commitment  or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.    **Confidential Information**.  Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.   **REPORTING AND DISCLOSURE OBLIGATIONS.  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.**

11.   **Controlled Substances and Other Regulations.**  If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or governmental requirement, guideline or procurement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.   **Compliance with Laws.**  Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that:  (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription.  Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.   **Own Use**.  All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean:  (i) any sale of Products purchased hereunder outside the United States by Customer;  (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.   **Relationship of the Parties**.  The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15.   **Governing Law**.  This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.   **WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# MCKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Invoice**
Page 1 of 1

RCHAP6519

Bill To:    4265044

Shipped From:

MCKESSON MEDICAL SURGICAL (HOUSTON)
HOUSTON #16
20710 HEMPSTEAD RD
HOUSTON,TX 77065

District License  7200001102
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Regulatory License  HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:            1-800-866-9243

| Sales Order Number | 22537860 | Invoice Number | 42757168 |
|---|---|---|---|
| Sales Order Date | 12/12/2018 | Invoice Date | 12/17/2018 |
| PO Number | 033D-247575 | Payment Due Date | 01/31/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $139.70 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 321308 | Vendor:  KCLAPC Vend Cat#:  67330 | DIAPER, HUGGIES PREMIE UPTO6LB PO LN 3 | 2 | CS | 2 | ▉ | ▉ | .00 |
|  | 1Z0868110316062622 |  |  |  |  |  |  |  |
|  | SHIPPED: 12/17/2018 | Houston |  |  |  |  |  |  |

| | **S A L E S   T A X** | | | | |
|---|---|---|---|---|---|
|  | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $139.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $139.70 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# MCKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 42757168 | Date | 12/17/2018 |
| | | Terms | AR  NET 45 DAYS |
| Pay This Amount Before | 01/31/2019 | | $139.70 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to any sale of a product or products ("**Product**" or "**Products**") or services ("**Services**") purchased from the subsidiary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1. **General Terms of Sale.**

1.1. "Standard Credit and Payment Terms. All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a non-business day or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2. Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3. Discrepancies. Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4. Non-Disposable Products. Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5. Freight Charges. Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6. Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7. Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8. Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§ All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§ All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§ Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§ The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
- Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality FULL CREDIT.
- Locally stocked Products returned within thirty (30) days of date of invoice FULL CREDIT.
- Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice FULL CREDIT LESS A 15% RESTOCKING CHARGE.
- Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
- Non-returnable Products NO CREDIT WILL BE ISSUED
§ Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2. **Chargebacks.** In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3. **Force Majeure.** Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4. **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

a sole or exclusive recommendation, if it appears, is intended to be only a recommendation to the Customer and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5. **DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT. CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6. **LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7. **Government Contracts.** Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8. **No Conflict or Interference.** Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9. **Confidential Information.** Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller. Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10. **REPORTING AND DISCLOSURE OBLIGATIONS.** THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11. **Controlled Substances and Other Regulations.** If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or ordinance or any governmental requirement, guideline or procurement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12. **Compliance with Laws.** Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any purchased Products will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13. **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market to Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14. **Relationship of the Parties.** The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16. **WAIVER OF JURY TRIAL. THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

**McKESSON**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134
Ordered By: E578OMX

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 22073029 | Credit Number | 43164933 |
|---|---|---|---|
| Sales Order Date | 12/06/2018 | Credit Date | 12/20/2018 |
| PO Number | 033D-247083 | Original Invoice Number | 41507770 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($17.69) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 44577 | Vendor:  TELFLX  Vend Cat#:  381-50 | CONCHA, 1500 STR WATER 1650 ML  PO LN 1 | -1 | CS | -1 | ██████ | ██████ | .00 |
|  | SHIPPED: 12/06/2018 | Winchester |  |  |  |  |  |  |
| PACKAGE WAS DAMAGED |  |  |  |  |  |  |  |  |

| | S A L E S   T A X | | | | |
|---|---|---|---|---|---|
|  | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($17.69) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($17.69) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

**Credit Memo**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 43164933 | Date | 12/20/2018 |
| | | Terms | AR  NET 45 DAYS |
| | | | ($17.69) |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*****************************************
CREDIT MEMORANDUM
DO NOT PAY

These terms of sale ("**Terms of Sale**") shall apply to and govern Products and/or Services ("**Products and/or Services**") purchased by the customer or other ultimate intermediary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1. **General Terms of Sale.**

1.1. "Standard Credit and Payment Terms. All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery), (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a Saturday, Sunday, or legal holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2. Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3. Discrepancies. Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4. Non-Disposable Products. Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5. Freight Charges. Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6. Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7. Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispense Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8. Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§ All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).

§ All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.

§ Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.

§ The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.

- Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality FULL CREDIT.

- Locally stocked Products returned within thirty (30) days of date of invoice FULL CREDIT.

- Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice FULL CREDIT LESS A 15% RESTOCKING CHARGE.

- Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).

§ Non-returnable Products will not be returnable to the Supplier NO CREDIT WILL BE ISSUED

§ Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2. **Chargebacks.** In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3. **Force Majeure.** Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4. **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

a superior product to or the same as another product or that it is interchangeable with, appropriate for, or as safe or effective as another use/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5. **DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT. CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR SERVICES ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6. **LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7. **Government Contracts.** Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8. **No Conflict or Interference.** Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9. **Confidential Information.** Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller. Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10. **REPORTING AND DISCLOSURE OBLIGATIONS.** THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11. **Controlled Substances and Other Regulations.** If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation, licensing or enrollment requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12. **Compliance with Laws.** Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate description. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13. **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market by Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14. **Relationship of the Parties.** The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16. **WAIVER OF JURY TRIAL. THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

**MCKESSON**

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:     4265044

District License   3000009121
Shipped To:       4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134
Ordered By: ROLAND

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:

Customer Service Phone:              1-800-866-9243

| Sales Order Number | 23782233 | Invoice Number | 43934970 |
|---|---|---|---|
| Sales Order Date | 01/02/2019 | Invoice Date | 01/03/2019 |
| PO Number | 033D-248268 | Payment Due Date | 02/17/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $1,546.20 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 373326 | Vendor: ZOLMED  Vend Cat#:  8900-2065 | ELECTRODE, STATZ PADZ CHILD/PE PO LN 1 | 6 | CS | 6 | ▬ | ▬ | .00 |
|  | 1Z31FW670378696145 | 1Z31FW670378696154 |  |  | 1Z31FW670378696163 |  |  |  |
|  | 1Z31FW670378696172 | 1Z31FW670378696181 |  |  | 1Z31FW670378696190 |  |  |  |
|  | SHIPPED: 01/03/2019 | Winchester |  |  |  |  |  |  |

| | S A L E S   T A X | | | | | |
|---|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $1,546.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,546.20 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Invoice**

**MCKESSON**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 43934970 | Date | 01/03/2019 |
| Terms | | AR  NET 45 DAYS | |
| Pay This Amount Before | 02/17/2019 | | $1,546.20 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

Please Remit To:

MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

These terms of sale ("**Terms of Sale**") shall apply to all products or services ("Products" or "**Services**") purchased by a customer ("**Customer**") from a supplier, subsidiary between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1. **General Terms of Sale.**

1.1. "Standard Credit and Payment Terms. All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a invoice or the Terms of Sale or be admissible to explain, modify, or payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2. Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3. Discrepancies. Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4. Non-Disposable Products. Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5. Freight Charges. Shipping and handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice. Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6. Title and Risk of Loss. Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7. Third-Party Logistics Provider Services. If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispose Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8. Returned Goods. Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§   All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).
§   All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.
§   Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.
§   The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.
-     Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality FULL CREDIT.
-     Locally stocked Products returned within thirty (30) days of date of invoice FULL CREDIT.
-     Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice FULL CREDIT LESS A 15% RESTOCKING CHARGE.
-     Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).
-     Non-returnable Products that are returnable to the Supplier NO CREDIT WILL BE ISSUED
§   Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2. **Chargebacks.** In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount. In the event Supplier: (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3. **Force Majeure.** Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4. **Product Recommendations.** Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision. Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment. Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation. Customer agrees and stipulates that it is

a sophisticated buyer in the marketplace, that it agrees to the independent, arms-length relationship between Seller and the end user/patient. THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED. THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRY AVAILABLE INFORMATION. The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history. Alternative products are not necessarily the lowest priced items available.

5. **DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT. CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6. **LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7. **Government Contracts.** Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8. **No Conflict or Interference.** Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment or arrangement of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9. **Confidential Information.** Pricing and terms of this Agreement are confidential information of Seller and shall not be disclosed without consent from Seller. Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10. **REPORTING AND DISCLOSURE OBLIGATIONS.** THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS. CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11. **Controlled Substances and Other Regulations.** If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, ordinance or governmental requirement, guideline or procurement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12. **Compliance with Laws.** Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that: (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13. **Own Use.** All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market to Customer Products that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products by Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14. **Relationship of the Parties.** The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16. **WAIVER OF JURY TRIAL. THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**

# McKESSON

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:
MCKESSON MEDICAL-SURGICAL (ROSEVILLE)
074 ROSEVILLE
7701 FOOTHILLS BLVD
ROSEVILLE,CA 95747

Bill To:   4265044

District License  7200001139
Shipped To:   4324957
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 23530598 | Invoice Number | 44040319 |
|---|---|---|---|
| Sales Order Date | 12/28/2018 | Invoice Date | 01/04/2019 |
| PO Number | 033D-248170 | Payment Due Date | 02/18/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $2,270.52 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 705459 | Vendor:  MASIMO | SENSOR, LNCS NEO-3 (20/BX) | 7 | BX | 7 | ▉ | ▉ | 128.52 |
|  | Vend Cat#:  2320 | PO LN 1 |  |  |  |  |  |  |
|  | 1Z7RY2294211792150 |  |  |  |  |  |  |  |
|  | SHIPPED: 01/04/2019 | Roseville | PRIVATE FLEET - D74 - ROSEVILL |  |  |  |  |  |

| S A L E S   T A X | | | | |
|---|---|---|---|---|
| STATE | COUNTY | CITY | DISTRICT | OTHER |
| $128.52 | $0.00 | $0.00 | $0.00 | $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $2,142.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $128.52 | $2,270.52 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Invoice**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 44040319 | Date | 01/04/2019 |
| Terms | | AR | NET 45 DAYS |
| Pay This Amount Before | 02/18/2019 | | $2,270.52 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
Please Remit To:
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

The terms of sale located at https://mms.mckesson.com/content/legal/sales-terms/ Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.    Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.    Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.    Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.    Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.    Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

·  All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

·  Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

·  The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products returnable to a Supplier for credit, but in a quantity greater than amounts Seller is able to return; (vi) opened, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

·  Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

·  Seller will issue a credit as follows for all other eligible Products:

   ○  Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

   ○  Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

   ○  Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

   ○  Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

·  Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.    DISCLAIMER**.  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.    LIMITATION OF LIABILITY**.  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.    FRAUD AND ABUSE LAWS**.  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF.  CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:     4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134
Ordered By: EJ7B1XE

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:            1-800-866-9243

| Sales Order Number | 24343680 | Credit Number | 44830139 |
|---|---|---|---|
| Sales Order Date | 01/09/2019 | Credit Date | 01/14/2019 |
| PO Number | 033D-248194 | Original Invoice Number | 43661576 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($24.96) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 520839 | Vendor: VYARMD Vend Cat#:  2D0735X | WATER, INH SOL STR 1000ML (14/ PO LN 1 | -1 | CS | -1 | ███ | ███ | .00 | |
| | SHIPPED: 01/09/2019 | Winchester | | | | | | | |

Package was damaged

| S A L E S   T A X | | | | | |
|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($24.96) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($24.96) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**

RCHAP6519

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 44830139 | Date | 01/14/2019 |
| | Terms | AR  NET 45 DAYS | |
| | | | ($24.96) |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

Please Remit To:

*****************************************

CREDIT MEMORANDUM
DO NOT PAY

The terms of sale located at https://imgsol.mckesson.com/Common/assets/sites/1/Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

1. **Invoice, Payment, and Finance**

1.1. Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3. Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

2. **Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1. Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2. Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

3. **Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

4. **Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

5. **Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsallable

Products, including as determined by Seller, but not limited to Products whose boxes are broken open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

6. **DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7. **LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

8. **FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

**McKESSON**

**Invoice**
Page 1 of 1

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134
Ordered By: ROLAND

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 24631677 | Invoice Number | 44841888 |
|---|---|---|---|
| Sales Order Date | 01/14/2019 | Invoice Date | 01/15/2019 |
| PO Number | 033D-248780 | Payment Due Date | 03/01/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $215.94 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 352172 | Vendor:  CARDCV | ELECTRODE, MEDITRACE SNAP MINI | 3 | CS | 3 | ███ | ███ | .00 | |
| | Vend Cat#:   31112496 | PO LN 1 | | | | | | | |
| | 1Z31FW670379158028 | | | | | | | | |
| | SHIPPED: 01/15/2019 | Winchester | UPS GROUND | | | | | | |

| S A L E S   T A X | | | | | | |
|---|---|---|---|---|---|---|
| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $215.94 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $215.94 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Invoice**

**McKESSON**                                        RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 44841888 | Date | 01/15/2019 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 03/01/2019 | | $215.94 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

**TERMS OF SALE**

The terms of sale located at https://imgcdn.mckesson.com/CumulusWeb/Click_Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.    Invoice, Payment, and Finance**

**1.1.** Standard Credit and Payment Terms. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

**1.2.** Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

**1.3.** Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.    Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

**2.1.** Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

**2.2.** Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.    Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.    Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.    Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products that cannot be otherwise resold, but are otherwise fit for use; (vi)products that are not in resalable condition for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

  ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

  ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

  ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.    DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.    LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.    FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

# McKESSON

**McKesson Medical-Surgical**
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Invoice**
Page 1 of 1

RCHAP6519

Bill To:     4265044

Shipped From:

MCKESSON MEDICAL-SURGICAL (ROSEVILLE)
074 ROSEVILLE
7701 FOOTHILLS BLVD
ROSEVILLE,CA 95747

District License   7200001139
Shipped To:     4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:             1-800-866-9243

| Sales Order Number | 24982899 | Invoice Number | 45470084 |
|---|---|---|---|
| Sales Order Date | 01/17/2019 | Invoice Date | 01/22/2019 |
| PO Number | 033D-249000 | Payment Due Date | 03/08/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $3,756.32 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 705459 | Vendor:  MASIMO | SENSOR, LNCS NEO-3 (20/BX) | 10 | BX | 10 | ███ | ███ | 212.62 | |
| | Vend Cat#:   2320 | PO LN 1 | | | | | | | |
| | 1Z7RY2290312079501 | | | | | | | | |
| | SHIPPED: 01/22/2019 | Roseville | PRIVATE FLEET - D74 - ROSEVILL | | | | | | |

**S A L E S   T A X**

| | STATE $212.62 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |
|---|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $3,543.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $212.62 | $3,756.32 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

**Invoice**

RCHAP6519

**McKesson Medical-Surgical**
9954 Mayland Drive Suite 4000
Richmond, VA 23233

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 45470084 | Date | 01/22/2019 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 03/08/2019 | | $3,756.32 |

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

**TERMS OF SALE**

The terms of sale located at https://imqcdn.mckesson.com/CumulusWeb/Click_Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.   Invoice, Payment and Finance**

**1.1.**   **Standard Credit and Payment Terms.**  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

**1.2.**  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

**1.3.**   **Taxes.**  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2.**   **Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

**2.1.**   **Shipment Discrepancies.** Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

**2.2.**   **Price or Payment Discrepancies.** Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.**   **Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes:  For delivery without any patient/consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies.  For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.**   **Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.**   **Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products I that have been labeled, marked, or otherwise altered, but not defective; (vi) Products that are 180+ open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount;  if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.**   **DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.  LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.  FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF.  CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H).  CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Bill To:    4265044

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

District License   5004595
Shipped To:    4410660

ST. CHRIS SPECIALTY PEDIS AT WA TOWNSHIP
100 KINGS WAY BLDG C
SEWELL NJ  08080

ST. CHRIS SPECIALTY PEDIS AT WA TOWNSHIP
100 KINGS WAY BLDG C
SEWELL NJ  08080
Ordered By: BILL

Regulatory License   25MA08958500
Payment / Account Balance Inquires  1-800-845-3870
Phone:

Customer Service Phone:              1-800-866-9243

| Sales Order Number | 24723638 | Credit Number | 45675809 |
|---|---|---|---|
| Sales Order Date | 01/15/2019 | Credit Date | 01/24/2019 |
| PO Number | CARDI,OPTHOSUPPLIESWASH | Original Invoice Number | 43986183 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($27.21) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

### Invoice Detail

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 536381 | Vendor:  MGM120 Vend Cat#:  87-50SG | ELECTRODE, EKG ALL-PURP FOAM S PO LN 2 | -4 | BG | -4 | ▉ | ▉ | -1.69 | |
| | SHIPPED: 01/24/2019 | Winchester | | UPS GROUND | | | | | |

| | | | **S A L E S   T A X** | | | |
|---|---|---|---|---|---|---|
| | STATE ($1.69) | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ($25.52) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($1.69) | ($27.21) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

---

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**

RCHAP6519

ST. CHRIS SPECIALTY PEDIS AT WA TOWNSHIP

100 KINGS WAY BLDG C
SEWELL NJ  08080

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 45675809 | Date | 01/24/2019 |
| | Terms | AR  NET 45 DAYS | |
| | | | ($27.21) |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*****************************************
CREDIT MEMORANDUM
DO NOT PAY

The terms of sale located at https://mms.mckesson.com/content/about/sales-Legal_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1.   Invoice, Payment, and Finance**

1.1.  Standard Credit and Payment Terms.  Any invoiced amount remaining unpaid after the due date will be "Past Due."  Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month.  Any interest charged and collected in excess of applicable state law will be returned.  If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion:  (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2.  Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3.  Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**").  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, code or regulations.

**2.   Discrepancies**.  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1.  Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2.  Price or Payment Discrepancies.  Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3.   Title and Risk of Loss**.  For Bulk Delivery and General Sale Purposes:  For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4.   Third-Party Logistics Provider Services**.  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5.   Returned Goods**.  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

·  All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

·  Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

·  The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products that cannot be resold for sale, but are still useable; (vi)Products sold as short-dated, non-returnable, open, damaged, past minimum expiration date for the resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

·  Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

·  Seller will issue a credit as follows for all other eligible Products:

○  Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

○  Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

○  Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

○  Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

·  Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6.   DISCLAIMER**.  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7.   LIMITATION OF LIABILITY**.  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8.   FRAUD AND ABUSE LAWS**.  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# MCKESSON

**Invoice**
Page 1 of 2

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License  3000009121
Shipped To:      4324957
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134
Ordered By: BOB

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:          1-800-866-9243

| Sales Order Number | 25548427 | Invoice Number | 45776437 |
|---|---|---|---|
| Sales Order Date | 01/25/2019 | Invoice Date | 01/27/2019 |
| PO Number | 033D-249315 | Payment Due Date | 03/13/2019 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $104.37 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 742556 | Vendor:  BBRAUN | SALINE, SYR/3ML 0.9% 2.5ML (10 | 1 | BX | 1 | ▮ | ▮ | .00 | |
| | NDC Num:  & 63807010003 | PO LN 1 | | | | | | | |
| | 1Z31FW670379709174 | | | | | | | | |
| | SHIPPED: 01/27/2019 | Winchester | | | | | | | |
| | | MINIMUM ORDER     #25548427 | 1 | EA | 1 | ▮ | ▮ | .00 | |
| | Vend Cat#: | PO LN 3 | | | | | | | |

**Invoice**

RCHAP6519

# MCKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 45776437 | Date | 01/27/2019 |
| | | Terms | AR  NET 45 DAYS |
| Pay This Amount Before | 03/13/2019 | | $104.37 |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

**TERMS OF SALE**

The terms of sale located at https://imgcdn.mckesson.com/CumulusWeb/SMO/Legal_Documents/
TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience.

**1. Invoice, Payment, and Finance**

**1.1.** Standard Credit and Payment Terms. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

**1.2.** Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

**1.3.** Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2. Discrepancies.** Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

**2.1.** Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

**2.2.** Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3. Title and Risk of Loss.** For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4. Third-Party Logistics Provider Services.** If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5. Returned Goods.** Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer. Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products that have been altered or defaced, but are saleable; (vi)Products with less than 6 months open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products: if returned within 180 days Full amount; if returned after 180 days No Credit. Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer. Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

 o Products stocked in Seller's distribution center that are less than $15: if returned within 180 days Full amount; if returned after 180 days No Credit

 o Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days Full amount; if returned between 30-180 days Full amount, less a restocking fee; if returned after 180 days No Credit

 o Products NOT stocked in any of Seller's distribution centers that are less than $100 No Credit

 o Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days Full amount, less Seller and vendor restocking fees; if returned after 180 days No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer. All other Products should not be sent back to Seller's distribution center.

**6. DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7. LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8. FRAUD AND ABUSE LAWS.** CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS. ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION. FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED. IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# McKESSON

**Invoice**
**Page 2 of 2**

RCHAP6519

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

Bill To:     4265044
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

Shipped To:
ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134
Ordered By: BOB

| Invoice Number  45776437 | PO Number 033D-249315 | Invoice Date    01/27/2019 |
|---|---|---|

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|

**S A L E S   T A X**

| STATE $2.10 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |
|---|---|---|---|---|

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $67.27 | $0.00 | $0.00 | $0.00 | $0.00 | $35.00 | $35.00 | $2.10 | $104.37 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**
Page 1 of 1

RCHAP6519

Shipped From:
MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License   3000009121
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134
Ordered By: MARYELLEN

Regulatory License   HP418173L
Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:            1-800-866-9243

| Sales Order Number | 25866448 | Credit Number | 46114687 |
|---|---|---|---|
| Sales Order Date | 01/30/2019 | Credit Date | 01/30/2019 |
| PO Number | | Original Invoice Number | 43580275 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Credit Amount | ($110.63) |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax | Codes (*) |
|---|---|---|---|---|---|---|---|---|---|
| 474560 | Vendor:  HOLSTR  Vend Cat#:  18133 | POUCH, DRN TRANSP 57MM 2 1/4" PO LN 1 | -13 | BX | -13 | ███ | ███ | .00 | |
| | | Winchester              UPS GROUND | | | | | | | |

**S A L E S   T A X**

| | STATE $0.00 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 | | | |
|---|---|---|---|---|---|---|---|---|
| **SUB TOTAL** | **HANDLING** | **COLD CHAIN** | **HAZMAT** | **BULK** | **STD/EXP FREIGHT** | **TOTAL FREIGHT** | **TOTAL TAX** | **TOTAL AMOUNT** |
| ($110.63) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($110.63) |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of
such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may
not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Credit Memo**

RCHAP6519

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 46114687 | Date | 01/30/2019 |
| | Terms | AR  NET 45 DAYS | |
| | | | ($110.63) |

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.
**Please Remit To:**
*******************************************

CREDIT MEMORANDUM
DO NOT PAY

The terms of sale located at https://mgod.mckesson.com/dumn/bowdn/SM2/ Legal_Documents/ TermsofSale_PC.pdf (**"Terms of Sale"**) apply to all purchases you (**"Customer"**) make. You cannot modify these Terms of Sale without our (**"Seller"**) written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience:

**1. Invoice, Payment, and Finance**

1.1. Standard Credit and Payment Terms. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services.  If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

1.2. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

1.3. Taxes.  All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes (**"Transaction Taxes"**).  Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements.  Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

**2. Discrepancies.**  Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

2.1. Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

2.2. Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3. Title and Risk of Loss.**  For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation (**"Bulk Delivery"**), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4. Third-Party Logistics Provider Services.**  If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5. Returned Goods.**  Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer.  Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™).  Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products returned, lost, damaged, or defective, but not purchased from Seller; (vi) Products in boxes that are open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products:  if returned within 180 days  Full amount; if returned after 180 days  No Credit.  Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

○  Products stocked in Seller's distribution center that are less than $15: if returned within 180 days  Full amount; if returned after 180 days  No Credit

○  Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days  Full amount; if returned between 30-180 days  Full amount, less a restocking fee; if returned after 180 days  No Credit

○  Products NOT stocked in any of Seller's distribution centers that are less than $100  No Credit

○  Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days  Full amount, less Seller and vendor restocking fees; if returned after 180 days  No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer.  All other Products should not be sent back to Seller's distribution center.

**6. DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7. LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8. FRAUD AND ABUSE LAWS.**  CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS.  ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.  FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED.  IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

## Credit Memo
Page: 1 of 1

Bill To:    4265044

Payment / Account Balance
Inquiries Phone:              1-800-845-3870
Customer Service Phone:  1-800-866-9243

| | |
|---|---|
| Customer Reference | inv#42378253 |
| Chargback Number | 1364640 |
| Chargeback Date | 04/18/2019 |
| Chargeback Amount | ($5.15) |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN
PO BOX 26968
PHILADELPHIA PA  19134

Note: See back for terms and conditions

RCHAP6519

| Reason Code | Description | Amount |
|---|---|---|
| CO | Overpaid Invoice | -5.15 |

# McKESSON

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

## Credit Memo
RCHAP6519

| | |
|---|---|
| **Account Number** | **4265044** |
| **Document Number** | **1364640** |
| **Date** | **04/18/2019** |
| **Amount** | **($5.15)** |

ST CHRISTOPHERS HOSPITAL FOR CHILDREN

PO BOX 26968
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

**Please Remit To:**

CREDIT MEMO
NO PAYMENT REQUIRED

# TERMS OF SALE

The terms of sale located at https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn_Documents/TermsofSale_PC.pdf ("**Terms of Sale**") apply to all purchases you ("**Customer**") make. You cannot modify these Terms of Sale without our ("**Seller**") written consent and these Terms of Sale supersede the terms and conditions on any purchase order or other business form. Prior courses of dealing between us will have no effect on these Terms of Sale and would be inadmissible to explain, modify, or contradict these Terms of Sale. The term "**Supplier**" as used in these Terms of Sale means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution. While you are bound by all provisions in the Terms of Sale, we have highlighted several provisions on the back of this invoice for your convenience.

**1. Invoice, Payment, and Finance**

**1.1.** Standard Credit and Payment Terms. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements net of any amounts due hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend day or holiday, payment is due and payable on the succeeding business day.

**1.2.** Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery.

**1.3.** Taxes. All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, code or regulations.

**2. Discrepancies.** Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below. All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date.

**2.1.** Shipment Discrepancies. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date.

**2.2.** Price or Payment Discrepancies. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

**3. Title and Risk of Loss.** For Bulk Delivery and General Sale Purposes: For delivery without any patient/ consumer designation or segregation ("**Bulk Delivery**"), title and risk of loss for the Products will pass to Customer at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. For Patient Home Delivery: For Seller Product shipments directly to end-user patients/consumers made at the direction of Customer, (i.e., Patient Home Delivery), ownership of the Products will transfer to Customer at the time Customer places the Product order with Seller but risk of loss will remain with Seller until the Products reach their designated destination.

**4. Third-Party Logistics Provider Services.** If Seller is providing third-party logistics provider services to Customer or otherwise providing direct patient/consumer shipment services for Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions/physician orders necessary to dispense or administer Products to its patients, including, without limitation, all required licenses to dispense or administer the Products into the states in which Customer dispenses, administers or sells Products and (ii) it has verified that all recipients of the Products are appropriately registered or otherwise authorized to receive delivery of the Products. Customer is solely responsible for confirming that the Products ordered are appropriate and medically necessary for its patients and in compliance with the required prescriptions or physician orders.

**5. Returned Goods.** Subject to applicable law, Seller will process returns in accordance with its Returned Goods Policy currently in effect, or as otherwise agreed to by Seller and Customer. Seller's current Return Good Policy is as follows:

- All requests for credits for Products must have a return authorization number issued by Seller's customer service department or Seller's automated customer service platform (e.g., McKesson SupplyManager™). Credit for Products not stocked in Seller's distribution center that are greater than $500 require additional approval by Seller.

- Seller will issue a full credit for any Product returned due to Seller error (i.e. shipping error, damage in transit) or due to a recall or defective condition.

- The following Products are not eligible for a credit, unless the return is due to fault of Seller, recall, or defective condition: (i)special order Products; (ii)custom Products; (iii) Products identified as non-returnable in McKesson SupplyManager; (iv)Products not available for general or unrestricted distribution; (v) nonsellable

Products, including those damaged, broken, but are saleable, but otherwise in sellable condition, or units open, damaged, past minimum expiration date for resell, cold chain, hazmat, controlled pharmaceuticals, or discontinued by the manufacturer, or that contain markings not made by Seller.

- Seller will issue a credit as follows for McKesson brand products: if returned within 180 days Full amount; if returned after 180 days No Credit. Non-consumable McKesson brand products must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer. Consumable McKesson brand products should not be sent back to Seller's distribution center.

- Seller will issue a credit as follows for all other eligible Products:

 ○ Products stocked in Seller's distribution center that are less than $15: if returned within 180 days Full amount; if returned after 180 days No Credit

 ○ Products stocked in Seller's distribution center that are $15 and greater: if returned within 30 days Full amount; if returned between 30-180 days Full amount, less a restocking fee; if returned after 180 days No Credit

 ○ Products NOT stocked in any of Seller's distribution centers that are less than $100 No Credit

 ○ Products NOT stocked in any of Seller's distribution centers that are $100 and greater: if returned within 180 days Full amount, less Seller and vendor restocking fees; if returned after 180 days No Credit

- Products stocked in a Seller distribution center that are $15 and greater and Products NOT stocked in a Seller distribution center that are $100 and greater must be sent back to Seller to be eligible for a credit, and are subject to inspection by Seller before credit is issued to Customer. All other Products should not be sent back to Seller's distribution center.

**6. DISCLAIMER.** SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE. CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON. NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.

CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND. CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**7. LIMITATION OF LIABILITY.** IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF, DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES. THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

**8. FRAUD AND ABUSE LAWS.** CUSTOMER MAY RECEIVE DISCOUNTS OR OTHER REDUCTIONS IN PRICE IN CONNECTION WITH ITS PURCHASES OF PRODUCTS UNDER THIS AGREEMENT, AND SUCH PURCHASES MAY ALSO QUALIFY CUSTOMER FOR DISCOUNTS OR OTHER REDUCTIONS IN PRICE ON CERTAIN PURCHASES MADE PURSUANT TO A SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION OR ITS SUBSIDIARY SUBJECT TO TERMS AND CONDITIONS THEREOF. CUSTOMER WILL BE RESPONSIBLE FOR REPORTING ALL PRICES, DISCOUNTS, AND REBATES PURSUANT TO THIS AGREEMENT AND PURSUANT TO ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION, TO REIMBURSING AGENCIES TO THE EXTENT REQUIRED BY LAW OR REGULATION, INCLUDING MEDICARE AND MEDICAID, AND OTHER ENTITIES, MAINTAINING RECORDS THEREOF, AND PROVIDING INFORMATION TO REIMBURSING AGENCIES, IN ACCORDANCE WITH ALL APPLICABLE LAWS. ANY PRICE REDUCTION OR DISCOUNT PROGRAM DESCRIBED IN THIS AGREEMENT OR ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION IS INTENDED TO BE A DISCOUNT WITHIN THE MEANING OF APPLICABLE FEDERAL AND STATE ANTI-KICKBACK LAWS, INCLUDING, 42 U.S.C. §1320A-7B(B) AND THE DISCOUNT SAFE HARBOR PROMULGATED THEREUNDER AND CURRENTLY FOUND AT 42 C.F.R. §1001.952(H). CUSTOMER UNDERSTANDS THAT THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION MAY NOT REFLECT THE NET COST OF A PRODUCT DUE TO A REBATE OR OTHER DISCOUNT PROGRAM.

CUSTOMER REPRESENTS AND WARRANTS THAT IT WILL SATISFY ANY AND ALL REQUIREMENTS IMPOSED ON BUYERS, INCLUDING WHEN REQUIRED BY LAW, THE REQUIREMENT TO ACCURATELY REPORT, OR MAKE AVAILABLE UPON REQUEST BY A FEDERAL OR STATE HEALTH CARE PROGRAM, THE NET COST ACTUALLY PAID BY CUSTOMER FOR THE PRODUCTS AND SERVICES COVERED BY THIS AGREEMENT AND ANY SUPPLY AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION. FOR PURPOSES OF COST REPORTING REQUIREMENTS UNDER A FEDERAL OR STATE PROGRAM WHICH PROVIDES COST BASED REIMBURSEMENT, CUSTOMER UNDERSTANDS THAT ANY SUCH DISCOUNTS, INCLUDING REBATES, SHOULD BE PROPERLY ALLOCATED ON A UNIT BASIS SO AS TO REPORT A NET SALE PRICE THAT ACCURATELY REFLECTS THE TOTAL AMOUNT OF THE DISCOUNT RECEIVED. IN THE EVENT EITHER PARTY DETERMINES THAT THIS AGREEMENT MAY NOT COMPLY WITH SUCH STATUTES, THE PARTIES AGREE TO WORK TOGETHER TO ESTABLISH A DISCOUNT OR REBATE STRUCTURE THAT MEETS THE REQUIREMENTS OF SUCH STATUTES.

Terms of Sale-PC Invoice 10-19-18

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

**Invoice**
Page 1 of 1

RCHAP6519

Shipped From:

MCKESSON MEDICAL-SURGICAL (WINCHESTER)
WINCHESTER #007
4027 MARTINSBURG PIKE
CLEAR BROOK,VA 22624

Bill To:    4265044

District License    3000009121
Shipped To:    4324957

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

ST CHRISTOPHERS HOPSITAL FOR CHILDREN
160 E ERIE AVE
PHILADELPHIA PA  19134

160 E ERIE AVE
PHILADELPHIA PA  19134

Payment / Account Balance Inquires  1-800-845-3870
Phone:
Customer Service Phone:        1-800-866-9243

| Sales Order Number | 12692727 | Invoice Number | 32102576 |
|---|---|---|---|
| Sales Order Date | 07/24/2018 | Invoice Date | 07/24/2018 |
| PO Number | 033D-240932 | Payment Due Date | 09/07/2018 |
| Sales Rep Name | SHIELDS-HILL, MARYELLEN | Invoice Amount | $320.80 |

Notes:  See back for Terms and Conditions.
Please contact us regarding electronic payment options at
MMS.Treasury@ McKesson.com

**Invoice Detail**

| Item Number | Vendor / Vendor Cat # | Description | Ordered | Unit | Shipped | Unit Price | Amount | Sales Tax |
|---|---|---|---|---|---|---|---|---|
| 649343 | Vendor:  PRFDIS  Vend Cat#:    P15984 | WIPE, SANI-HANDS ALCHL LG CANI PO LN 1 | 8 | CS | 8 | ██ | ██ | 18.16 |
| | | Winchester | | | | | | |

| SALES TAX | | | | | |
|---|---|---|---|---|---|
| | STATE $18.16 | COUNTY $0.00 | CITY $0.00 | DISTRICT $0.00 | OTHER $0.00 |

| SUB TOTAL | HANDLING | COLD CHAIN | HAZMAT | BULK | STD/EXP FREIGHT | TOTAL FREIGHT | TOTAL TAX | TOTAL AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $302.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $18.16 | $320.80 |

The purchase listed on this invoice may be subject to a discount or other promotional consideration that may require you to report the value of such discount or promotional consideration, if any, as a discount. In addition, the prices on this invoice may include fees for services that may not be reimbursable under the Medicare/Medicaid statutes. You can receive an itemized list of any fees included in the prices upon request.
PRICING IS CONFIDENTIAL AND PROPRIETARY.

**Invoice**

**McKESSON**

McKesson Medical-Surgical
9954 Mayland Drive Suite 4000
Richmond, VA 23233

RCHAP6519

ST CHRISTOPHERS HOPSITAL FOR CHILDREN

160 E ERIE AVE
PHILADELPHIA PA  19134

Please contact us regarding electronic payment options at MMS.Treasury@McKesson.com.

| Account Number | 4265044 | | |
|---|---|---|---|
| Document Number | 32102576 | Date | 07/24/2018 |
| | Terms | AR | NET 45 DAYS |
| Pay This Amount Before | 09/07/2018 | | $320.80 |

Please Remit To:
MCKESSON MEDICAL SURGICAL
PO BOX 933027
ATLANTA  GA 31193-3027

# TERMS OF SALE

These terms of sale ("**Terms of Sale**") shall apply to any order for Products and/or Services ("Products and/or Services") purchased directly or indirectly between Seller and the end named on this invoice ("**Customer**") from the seller named on this invoice ("**Seller**"), unless Customer has executed a product supply agreement with Seller or Customer is participating in a group purchasing program for which Seller has executed a group purchasing agreement with the applicable GPO, in which case the documents will control in the following order: the agreement between Customer and Seller, the applicable group purchasing agreement, and then these Terms of Sale. These Terms of Sale may not be modified, supplemented or extended except by a writing signed by both parties. No provision in either party's purchase order or in any other business form employed by either party, excluding a separate document signed by both parties, will supersede these Terms of Sale. No prior course of dealing or usage of trade shall affect this invoice or the Terms of Sale or be admissible to explain, modify, or contradict this invoice or the Terms of Sale and the agreement arising therefrom (collectively "**Agreement**"). For purposes of this Agreement, the term "**Supplier**" means a manufacturer, vendor, or other supplier of a Product that is purchased by Seller for distribution.

1.    **General Terms of Sale.**

1.1.    "Standard Credit and Payment Terms.    All payments for Products and/or Services must be received by Seller Net within thirty (30) days from the date of invoice. Any invoiced amount remaining unpaid after the due date will be "Past Due." Past Due balances are subject to an interest charge of one and one-half percent (1.5%) per month. Any interest charged and collected in excess of applicable state law will be returned. If a Customer's facility fails to pay any or all of the invoiced amount when due or if a facility's credit or financial status erodes or otherwise renders Seller insecure, Seller may, in its sole discretion: (i) immediately suspend Seller's performance or cancel all or any part of an order hereunder, (ii) change any payment term to a payment term determined by Seller (including imposing the requirement of cash payment upon delivery); (iii) pay any incentives, rebates, fees, or other discount arrangements not yet earned, reasons, the hereunder, and any unauthorized deductions and service charges and terminate and/or declare Customer and the facility ineligible for any incentives, rebates, fees, or other discount arrangements; (iv) declare immediately due and payable all other amounts invoiced by Seller to the facility regardless of when such payments would otherwise be due from the facility, and/or (v) increase the prices for Products and/or services. If any of the specified payment term Due Dates fall on a weekend or holiday, payment is due and payable on the succeeding business day. Customer agrees to render payment in full to Seller on the applicable due date without making any deductions or adjustments to such payment obligation; or seeking to condition such remittance on any demand for or receipt of proofs of delivery. In the event Customer files or is involved in any bankruptcy, insolvency or similar case or proceeding, Seller shall apply any amounts owed by Seller to the Customer, first to any pre-bankruptcy, non 11 U.S.C. § 503(b)(9) claims, and then to the 11 U.S.C. § 503(b)(9) claims. Seller may set off any amount owing at any time from Customer (and with respect to any Customer account) to Seller (including its subsidiaries and affiliates) against any amount payable at any time by Seller to Customer, whether arising under this agreement or otherwise. If requested by Seller, Customer will promptly substantiate in writing, the current state of its financial condition with audited financial statements and any other supporting information required by Seller. Customer hereby unconditionally guarantees the performance of all obligations of any of its Facilities under this Agreement, including the prompt payment of the purchase price and any applicable interest and other charges for all Products shipped to the Facilities, and agrees to pay any outstanding past due amounts to Seller immediately upon demand by Seller. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by Seller in enforcing its rights to collect amounts due from Customer.

1.2.    Taxes.    All amounts payable under this Agreement are exclusive of sales, use, value-added, gross receipts, and other transaction taxes ("**Transaction Taxes**"). Customer will promptly pay and indemnify Seller against all such Transaction Taxes legally imposed upon and payable by Customer, unless Customer provides Seller satisfactory evidence of a valid tax exemption within applicable statutory requirements. Seller shall be fully responsible for and not entitled to any reimbursement for any taxes imposed upon Seller's net income, unemployment insurance or social insurance or pensions, maintained pursuant to any laws, ordinances, codes or regulations.

1.3.    Discrepancies.    Seller will have no obligation to resolve and Customer will hold Seller harmless and waives any rights to any discrepancy or to issue any credit or refund, or to replace any goods if such claim is not made within the applicable period below.  All requests for proof of delivery must be made within sixty (60) days of Seller's invoice date. Any discrepancy between any order placed under this Agreement by Customer and Seller's corresponding shipment(s) must be reported to Seller for resolution within ten (10) days of Seller's invoice date. Any price or payment discrepancies or any claims for reimbursement must be reported to Seller for resolution before the applicable invoice is due.

1.4.    Non-Disposable Products.    Non-disposable products, such as furniture and equipment, sold by Seller may be refurbished or reconditioned.

1.5.    Freight Charges, Shipping and Handling charges, if any, for standard deliveries will be mutually agreed upon by separate agreement or by disclosure at the time of ordering. Shipping and handling charges may be added to the shipping invoice for deliveries outside the contiguous forty-eight (48) states, additional deliveries, emergency orders, rush orders, orders for Products not regularly stocked by Seller's local servicing distribution center, cold chain orders, hazmat orders, bulk freight, and Products dropped shipped from the supplier. For orders less than Seller's minimum order requirement, Seller may add to the invoice a handling charge determined by Seller and disclosed to Customer prior to or at the time of order. A fuel surcharge, if applicable, may be added to the invoice.  Detailed information on the fuel surcharge can be obtained by request. Seller has the right to ship Products at all times via its own vehicle or a carrier selected by Seller.

1.6.    Title and Risk of Loss.  Title and risk of loss for the Products will pass at the time the Products reach their designated destination for both outbound shipments and returns, except that drop shipments directly from a Supplier will be shipped in accordance with the Supplier's shipping policies. Ownership transfer for purposes of third-party logistics provider services occurs at the time the Product leaves Seller's distribution center.

1.7.    Third-Party Logistics Provider Services.  If Seller is providing third-party logistics provider services to Customer, Customer represents and warrants that (i) it has all required permits, licenses and prescriptions necessary to dispose Products to its patients, including, without limitation, all required licenses to dispense devices into the states in which Customer dispenses Products and (ii) it has verified that all recipients of devices are appropriately registered or otherwise authorized to receive delivery of the Products.

1.8.    Returned Goods.  Subject to applicable law, Seller will process returned goods for Products purchased from Seller, in accordance with its then standard Return Goods Policy. Seller's current Return Good Policy is as follows:

§    All requests for return of Products must have a return authorization number issued by Seller's customer service department or Seller's automated Customer Service Platform (e.g., SupplyManager™).

§    All returned Products must be in the original unopened packaging and in resalable condition, unless due to the fault of Seller.

§    Products cannot be returned if they are: (i)special order Products; (ii)custom Products; (iii) identified as non-returnable in SupplyManager; or (iv)Products not available for general or unrestricted distribution.

§    The following credit, if applicable, for returnable Products will be issued no later than thirty (30) days after the receipt of the Product and necessary documentation, and the examination and inspection of such return at the local Seller distribution center.

-      Products returned within thirty (30) days of date of invoice that are (i) shipped in error by Seller, (ii) damaged during shipping by Seller, (iii) nonconforming, or (iv) do not meet Seller's standard quality  FULL CREDIT.

-      Locally stocked Products returned within thirty (30) days of date of invoice  FULL CREDIT.

-      Locally stocked Products returned after thirty (30) but no more than ninety (90) days of date of invoice  FULL CREDIT LESS A 15% RESTOCKING CHARGE.

-      Non-locally stocked Products that are returned within thirty (30) days of date of invoice - FULL CREDIT LESS A 20% RESTOCKING CHARGE (plus any additional costs incurred in returning such Products to Supplier such as Supplier restocking fees paid by Seller).

-      Non-returnable Products that are returnable to Seller  NO CREDIT WILL BE ISSUED

§    Notwithstanding anything above to the contrary, Customer shall receive FULL CREDIT on any Products returned as the result of a recall or defective condition.

2.    **Chargebacks.**  In consideration of Seller allowing a Customer facility to purchase Products at discounted prices, Customer agrees that Seller will be paid the difference between Seller's acquisition cost and the discounted price of the Product from the applicable Supplier ("Chargeback(s)"). In the event Seller is denied any Chargeback from a Supplier as a result of a facility providing incomplete, inaccurate, or incorrect information to Seller or Supplier or the facility is otherwise ineligible for the Chargeback, Customer will be liable to Seller for such Chargeback amount.  In the event Supplier:  (i) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of Supplier's property or a proceeding is commenced against it which will substantially impair its ability to pay on Chargebacks; or (ii) otherwise defaults in the payment of Chargebacks to Seller, Customer will be invoiced and become liable for the unpaid Chargebacks allocable to its purchases from Supplier.

3.    **Force Majeure.**  Except for the obligation to pay money, a party will not be liable to the other party for any failure or delay in performance caused by fires, shortage of materials or transportation, government acts, acts of terrorism, or any other matters beyond the first party's reasonable control, and such failure or delay will not constitute a material breach of this Agreement.

4.    **Product Recommendations.**  Seller may make available to Customer certain recommendations concerning products that are comparable, functionally equivalent, clinically equivalent, or equivalent to other products used or identified by Customer ("**Equivalency Recommendations**"). Customer agrees and stipulates that, in making any Equivalency Recommendation, Seller is relying solely on the independent skill, knowledge and judgment of its suppliers or others in the industry and is not independently providing medical product information upon which Customer can rely in order to make its product selection decision.  Customer agrees and stipulates that in making product decisions Customer is relying on its independent professional judgment.  Customer hereby agrees to waive, release, indemnify and hold Seller and its affiliates harmless from any claim arising from an Equivalency Recommendation.  Customer agrees and stipulates that it is

a sophisticated purchaser of the Products and it agrees to independently verify and confirm the suitability of such Products to the user/patient.  THESE EQUIVALENCY RECOMMENDATIONS MAY BE MADE VERBALLY, IN WRITING OR VIA A DATABASE. THE EQUIVALENCY RECOMMENDATIONS ARE RECOMMENDATIONS ONLY AND ARE NOT REPRESENTATIONS OR WARRANTIES CONCERNING ANY PRODUCT PERFORMANCE OR EQUIVALENCY AND ANY SUCH REPRESENTATIONS OF WARRANTY ARE HEREBY DISCLAIMED.  THESE EQUIVALENCY RECOMMENDATIONS ARE BASED UPON MATERIALS SUPPLIED BY SELLER'S SUPPLIER AND OTHER INDUSTRYAVAILABLE INFORMATION.  The Switch & Save program is an automated tool that shows Customer's savings available by switching from products in a Customer's current purchasing history to alternative products from the Customer's current purchasing history.  Alternative products are not necessarily the lowest priced items available.

5.    **DISCLAIMER.**  SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF ANY PRODUCTS OR THEIR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  CUSTOMER WILL LOOK TO THE MANUFACTURER OF PRODUCTS AND THE PROVIDER OF SERVICES (IF OTHER THAN SELLER) FOR ANY WARRANTY THEREON.  NO AGENT, EMPLOYEE, OR REPRESENTATIVE OF SELLER HAS ANY AUTHORITY TO MAKE ANY AFFIRMATION, REPRESENTATION, OR WARRANTY CONCERNING PRODUCTS NOT SET FORTH IN THIS AGREEMENT.  CUSTOMER SHALL NOT HOLD SELLER LIABLE FOR ANY DEFECT IN PRODUCTS OR SERVICES, REGARDLESS OF KIND.  CUSTOMER AGREES TO FILE SOLELY WITH MANUFACTURER OF THE PRODUCTS OR PROVIDER OF SERVICES (IF OTHER THAN SELLER) ANY CLAIM OR LAWSUIT ALLEGING LOSS, INJURY, DAMAGE, OR DEATH ARISING OUT OF OR CAUSED BY THE USE, SALE, DISTRIBUTION, OR POSSESSION OF PRODUCTS OR SERVICES.

6.    **LIMITATION OF LIABILITY.**  IN NO EVENT WILL SELLER BE LIABLE IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL, DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, WARRANTY, TORT, PRODUCT LIABILITY, OR OTHERWISE, (INCLUDING LOST PROFITS) FROM ANY CAUSE, INCLUDING, WITHOUT LIMITATION, DAMAGES RESULTING FROM ANY UNAVAILABILITY OF DEFECT IN, OR MISSHIPMENT OF PRODUCTS, AND WHETHER OR NOT SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR THE PROVISION OF SERVICES.  THIS PROVISION WILL SURVIVE TERMINATION OR EXPIRATION OF THIS AGREEMENT.

7.    **Government Contracts.**  Unless specifically notified and agreed to in writing by Seller, Seller will not be bound by the terms and conditions of any government contracts to which Customer may be a party.

8.    **No Conflict or Interference.**  Customer represents and warrants that execution and performance of this Agreement does not and will not conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, or require any consent under any agreement between Customer and any other party or interfere with any existing or prospective contractual obligation or other commitment  or arrangement  of any kind between Customer or any of its affiliates and any other entity. Customer shall promptly advise Seller in writing of any such existing or prospective contractual obligation or other commitment or arrangement of any kind or character. Customer shall defend, indemnify and hold Seller harmless for any breach of the foregoing representation and warranty.

9.    **Confidential Information.**  Pricing and terms of this Agreement are confidential information and shall not be disclosed without consent from Seller.  Seller may provide purchase data to its affiliates, vendors, designated group purchasing organizations, and other third parties.

10.    **REPORTING AND DISCLOSURE OBLIGATIONS.**  THE PRICES ON THIS INVOICE MAY BE SUBJECT TO REBATES, CREDITS AND OTHER PRICE ADJUSTMENTS.  CUSTOMER IS OBLIGATED TO PROPERLY DISCLOSE AND APPROPRIATELY REFLECT ALL DISCOUNTS, INCLUDING REBATES, IN CLAIMS AND COSTS SUBMITTED TO FEDERAL AND STATE GOVERNMENT HEALTH CARE PROGRAMS (INCLUDING MEDICARE AND MEDICAID), AND TO PROVIDE THIS INVOICE AND OTHER DISCOUNT DOCUMENTATION TO GOVERNMENT AUTHORITIES ON REQUEST, IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING 42 USC 1320A-7B(B) AND THE DISCOUNT SAFE HARBOR. IN ADDITION, THE PURCHASE OF PRODUCTS HEREUNDER MAY QUALIFY CUSTOMER FOR DISCOUNTS ON CERTAIN PURCHASES MADE UNDER A DISTRIBUTION AGREEMENT BETWEEN CUSTOMER AND MCKESSON CORPORATION.

11.    **Controlled Substances and Other Regulations.**  If performance of this Agreement would cause Seller to be noncompliant with or in jeopardy of being noncompliant with any federal, state or local law, rule, regulation or governmental requirement, guideline or pronouncement involving either controlled pharmaceutical drugs ("**Controlled Substances**") or any other regulated products or activities, including but not limited to the Drug Enforcement Administration's regulatory requirements for verifying its customers and reporting suspicious or excessive orders, Seller may, in its sole and absolute discretion and, notwithstanding anything in this Agreement to the contrary, without any penalty or liability, do any of the following: (a) limit or deny any order for Controlled Substances or other regulated products as warranted by any established diversion monitoring program of Seller and (b) immediately terminate this Agreement, in whole or in part, without liability if: (i) continued performance of any part of this Agreement would violate any federal, state or local law, rule or regulation, or put Seller in jeopardy of violating any federal, state or local law, rule or regulation regarding either Controlled Substances or any other regulated products or activities; or (ii) Seller receives a complaint, notice, warning letter or other communication from a governmental agency alleging noncompliance with any laws, rules or regulations in relation to Seller's distribution of any Products (including without limitation Controlled Substances) under this Agreement or to Seller's actions or omissions with respect to either Controlled Substances or any other regulated products or activities.

12.    **Compliance with Laws.**  Customer represents and warrants that it will fully comply with all Federal, state and local laws and regulations relating to its obligations under this Agreement or otherwise applicable to the purchase, handling, sale, distribution or dispensing of and the reimbursement for the Products and represents and warrants that:  (i) pharmaceutical Products are being purchased for dispensing or administration to patients pursuant to a legitimate prescription; and (ii) any subsequent resale will be in compliance with applicable law and to a licensed healthcare provider for its dispensing or administration to patients pursuant to a legitimate prescription. Customer will defend, indemnify and hold Seller harmless from any and all liability arising out of or due to non-adherence with such legal or regulatory requirements or the foregoing representation and warranty. This provision will survive termination or expiration of this Agreement.

13.    **Own Use.**  All purchases under this Agreement by Customer will be for Customer's "own use" as that term is defined in judicial or legislative interpretation, and Customer will comply with applicable manufacturers' pricing criteria and policies. Customer shall not intentionally or knowingly participate in any Diversion of Products. "Diversion" shall mean: (i) any sale of Products purchased hereunder outside the United States by Customer; (ii) any sale or transfer of Products into the market to Customer that are expired or have been withdrawn from the market; (iii) any sale or transfer of Products by Customer to subsidiaries or affiliates of Customer for resale; or (iv) any sale or transfer of Products to Customer to any unauthorized third party for any reason. Customer acknowledges that purchases of Products from Seller may be subject to pricing, distribution, provenance, identification, return and chargeback policies from the manufacturers of such Products and that Customer is required to comply with all such manufacturer's policies.

14.    **Relationship of the Parties.**  The Parties hereto are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture between the parties. No party hereto (nor any agent or employee of that party) shall make any representations or warranties or incur any liability on behalf of the other.

15.    **Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

16.    **WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHTS TO A JURY TRIAL IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, OR THE TRANSACTION CONTEMPLATED HEREBY.**