1

```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3                                      .   Chapter 11
     IN RE:                             .
 4                                      .   Case No. 19-11466 (MFW)
     CENTER CITY HEALTHCARE, LLC,       .
 5   d/b/a HAHNEMANN UNIVERSITY         .
     HOSPITAL, et al.,                  .
 6                                      .   Courtroom No. 4
                                        .   824 North Market Street
 7                                      .   Wilmington, Delaware 19801
                                        .
 8              Debtors.                .   November 20,2020
     . . . . . . . . . . . . . . . .        3:00 P.M.
 9

10                        TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE MARY F. WALRATH
11                  UNITED STATES BANKRUPTCY JUDGE

12   APPEARANCES:

13   For the Debtors:         Mark Minuti, Esquire
                              SAUL EWING ARNSTEIN & LEHR LLP
14                            1201 N. Market Street
                              Wilmington, Delaware 19801
15
     For the Committee:        Andrew H. Sherman, Esquire
16                            SILLS CUMMIS & GROSS P.C.
                              1 Riverfront Plaza, Suite 10
17                            Newark, New Jersey 07102

18

19
     Audio Operator:          Brendan McCarthy
20
     Transcription Company:   Reliable
21                            1007 N. Orange Street
                              Wilmington, Delaware 19801
22                            Email:  gmatthews@reliable-co.com

23   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
24

25
```

APPEARANCES (Continued):

For PAHH/Front Street:     Edward Moss, Esquire
                          O'MELVENEY & MYERS LLP
                          7 Times Square
                          New York, New York 10036

                          - and -

                          Brendan Schlauch, Esquire
                          RICHARDS LAYTON & FINGER
                          920 North King Street
                          Wilmington, Delaware 19801

1

INDEX

2

3   #1) Emergency Motion of the MBNF Non-Debtor Entities for an
    Order Extending the Time to Respond to (I) the Joint Motion
4   of the Debtors and the Official Committee of Unsecured
    Creditors to Compel Production of Documents from the MBNF
5   Non-Debtor Entities and (II) the Joint Motion of the Debtors
    and the Official Committee of Unsecured Creditors For
6   Approval of Consent Order Regarding Committee Discovery of
    Debtors and Related Relief Regarding the Application and
7   Waiver of Privileges [Docket No. 1906; filed: 11/18/20].

8   **Ruling: 19**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 3:00 p.m.)

2          THE COURT:  All right, good afternoon.  This is

3   Judge Walrath.  We're here for a teleconference in the Center

4   City Healthcare matter.

5          I will turn it over to the movants who filed the

6   emergency motion for extension of time.

7          MR. SCHLAUCH:  Good afternoon, Your Honor.  For

8   the record, Brendan Schlauch, Richards Layton & Finger on

9   behalf of the MBNF nondebtor entity.

10         With me on the phone this afternoon are Edward

11  Moss and William Pollak of O'Melveny.  I also believe Suzanne

12  Uhland from Latham & Watkins is on the phone.

13         Before I turn it over to my co-counsel, I did just

14  want to thank the court and its staff for scheduling the

15  emergency teleconference today, especially given the late

16  hour on a Friday afternoon.

17         So with that, I would turn it over to my co-

18  counsel, I believe, Mr. Moss, will be handling argument this

19  afternoon.

20         MR. MOSS:  That's right. Thank you.

21         THE COURT:  All right, thank you.

22         MR. MOSS:  Thank you.  Good afternoon, Your Honor.

23  It's Edward Moss from O'Melveny on behalf of the MBNF

24  nondebtor entities.

25         I have to confess, Your Honor, this is my first

1  time arguing extension motion because it's usually the sort

2  of thing the parties can reach agreement on it, and I

3  apologize for burdening the court with this, especially on a

4  Friday.  But usually we reach agreement, especially in a

5  situation like this one where one side is seeking only a

6  modest extension, and the other side has made absolutely no

7  showing of any exigency.

8        I'll be brief, Your Honor, because, from our

9  standpoint, this is really a very straightforward issue.  I

10 have just two points.

11       The first one is we legitimately need more time,

12 and this is not about delay.  If we were trying to delay, we

13 would ask for more than two weeks. The other side, in this

14 dispute, has mounted a total assault on our attorney/client

15 privilege.  Maybe it's because they haven't found what

16 they're looking for in the 40,000 documents we've already

17 produced.  But, in any event, they're trying to completely

18 invade the privilege.

19       For a little context, of the four email custodians

20 that they insisted on, one was the general counsel. She's on

21 70 percent of the emails because their document requests

22 specifically called for privilege information, any and all

23 documents relating to the negotiation of the key contracts,

24 any and all documents relating to certain of our litigations.

25       The document requests actually say give me your

1  documents relating to litigations.  Any and all documents

2  about filing the bankruptcy petition.  There was legal advice

3  all over this.  We've produced the non-privilege documents

4  and we have been judicious in our privilege calls.

5           For example, they talk about the general counsel

6  having a business role. Well what they don't mention is that

7  we produced 70 percent of her internal emails that didn't

8  have outside counsel. So if she's giving business advice, the

9  intent was to produce those documents.

10          The suggestion that we're being sweeping and

11 overbroad in our calls is not the case.  It's the opposite.

12 These are very difficult issues.  Each document is really *sui*

13 *generis*, given the different entities involved, the different

14 hats that people were wearing.

15          They suggest well O'Melveny is not prepared. We

16 haven't done the research.  You know, we're not prepared to

17 write the brief.  That's silly, Your Honor.

18          The reason we need more time is that they filed

19 almost seventy-five pages of briefs, framing certain of the

20 issues in a different way then they had even during our

21 discussions, attaching documents that we've asked them for

22 that they refuse to give us, and now they're attaching for

23 the first time before the court.

24          We need a little bit more time to prepare papers

25 that will be sufficiently helpful for the court to analyze

1  these difficult issues and they're not just difficult.

2  They're critically important.

3          Again, they are basically asserting that because

4  of how this transaction was structured and because of how we

5  communicated in running our business that there is no more

6  attorney/client privilege.  That's the sum and substance of

7  what they're saying.  Any litigator standing in my shoes,

8  Judge, would tell you that that is very significant.

9          The second point is that there's no exigency.

10  There's no upcoming deadline, and they don't even suggest in

11  their papers that this is an urgent situation.  The only

12  argument I see in their papers is well we're frustrated that

13  this has been taking a long time.

14          First, that's what happens when you ask for

15  privileged documents and you question every entry on a

16  privilege log.  That's just a natural consequence here.  But

17  we're only asking for a modest amount of time because,

18  frankly, we're frustrated at the process too.

19          Every time they ask us a series of questions and

20  we have to respond in writing, we have to have meet and

21  confer calls, we have to try to appease them by revising our

22  privilege log by re-reviewing and reproducing some subset of

23  documents, that takes a long of time and, frankly, it costs a

24  lot of money.  And we do not have any interest in dragging

25  this out and delaying and having this time a long time.

1          Actually, the additional time will benefit

2    everybody.  It will give the parties an opportunity to narrow

3    the issues before the court. We are still actively talking,

4    as of today. We're exchanging proposals about how to resolve

5    this. And even if we don't, there's some things that they're

6    asking for in the first time in their papers that we'll

7    probably end up agreeing to.

8          So the additional time will allow us to,

9    hopefully, narrow the issues before the court and will allow

10   us to present these complicated and critically important

11   issues to you, Your Honor, in a way that will allow you to

12   make a decision.

13         And so, that is -- I said I would be brief. That's

14   all I have for now.  Thank you.

15         THE COURT:  All right, thank you.

16         I'll hear from the debtor or committee, whoever

17   wants to talk first.

18         MR. MINUTI:  Thank you, Your Honor.  It's Mark

19   Minuti from Saul Ewing Arnstein & Lehr. Can you hear me okay?

20         THE COURT:  I can.

21         MR. MINUTI:  Thank you, Your Honor.

22         With me on the phone is my partner, Jeff Hampton.

23   Also on the phone, Your Honor, is John DiNome.  He is one of

24   the in-house lawyers with the debtors.

25         Mr. Hampton and I, obviously, represent the

1  debtors.  We are going to try to be brief as well.

2          And let me say at the outset, Your Honor, it's not

3  lost on us that the motion seeks only a two-week delay of the

4  hearing on the discovery motions and I can also imagine that

5  the only thing worse for the court then addressing a

6  discovery dispute is addressing a dispute over when that

7  discovery dispute will be heard.

8          Under the circumstances of this case, the debtors

9  and the committee feel strongly that the matter should go

10 forward on November 30th.  So, let me take just a little bit

11 of time and describe for Your Honor what the discovery is

12 about and then what the discovery dispute is about.

13         The movants here are the MBNF nondebtor entities,

14 but the MBNF nondebtor entities, Your Honor, are ultimately

15 Mr. Joel Freedman.  Mr. Freedman is the architect of the

16 acquisition of the hospital businesses and related assets

17 from Tenet Business Services in January of 2018 where the

18 real estate associated with the businesses was contrary to

19 the then existent structure stripped away from the operating

20 assets outside of the reach of the operating entities

21 creditors, including some creditors, Your Honor, that existed

22 at the time of the acquisition.

23         Following the acquisition, the debtors operating

24 debtors spectacularly failed, filing for bankruptcy near

25 eighteen months after the acquisition.  Hahnemann Hospital,

1  an important safety net hospital for the Philadelphia

2  community, a hospital that dated back to the mid-1800's was

3  forced to close.  St. Christopher's Hospital, a safety net

4  pediatric hospital was sold.

5       The Philadelphia medical community was

6  significantly impacted, thousands of people lost their jobs,

7  hundreds of residents were displaced, and they're now left,

8  Your Honor, with approximately $11 billion dollars in

9  asserted claims against this estate, including, by the way,

10 billions in claims asserted by the entities controlled by Mr.

11 Freedman.

12      The real estate, Your Honor, entities were formed

13 and controlled by Mr. Freedman did not file for bankruptcy

14 and are currently in the process of being marketed.  The

15 point Your Honor here is that something drastically wrong

16 happened.

17      The debtors and the committee have been working

18 together quite cooperatively to investigate what happened and

19 to determine whether there are state claims against Mr.

20 Freedman or the MBNF nondebtor entities or other parties.

21      The discovery disputes before the court in the

22 joint motions relate to 2004 discovery in furtherance of that

23 investigation.  And, specifically, these disputes relate to

24 Mr. Freedman's broad assertions of alleged privileges

25 including the joint client privilege and the common interest

1  privilege.

2          As we sit here today, Mr. Freedman's nondebtor

3  entities have withheld approximately 17,000 responsive

4  documents on the basis of these alleged privileges.  And

5  equally as important, Your Honor, he is insisting that he be

6  inserted into the debtors' production of documents to the

7  committee so that he can look at those documents, determine

8  whether he believes any are privileged, and then withhold

9  those documents from production on the basis of those

10  privileges.

11          And to give the court a little bit of color, I'll

12  just touch on two things.

13          Counsel spoke about in-house counsel, there's an

14  in-house counsel, Svetlana Attestatova.  She was counsel for

15  Mr. Freedman individually.  She was counsel for the MBNF

16  nondebtor entities. She was counsel for the debtors.  And the

17  way Mr. Freedman did business is, she was copied on almost

18  everything, Your Honor.  So if this is a complicated process,

19  it's complicated by Mr. Freedman's own doing.

20          Another just simple example, Your Honor, of what

21  we're talking about is Mr. Freedman, the debtor has its own

22  group of in-house lawyers that are debtor employees and work

23  for the debtor.  Mr. Freedman claims that throughout the

24  years, those debtor employee lawyers did work for nondebtors.

25  And so, his view is because they may have done some work for

1  nondebtors, any email that has their name on it he gets to

2  look at, decide whether it's privilege and try to hold that

3  back from the committee.

4         Now as detailed in the joint motions, Mr.

5  Freedman's broad views on privilege are not legally

6  supportable and that's why we filed the motions.

7         Now relative to today's hearing, Your Honor, the

8  parties have tried for months to resolve it on their own. And

9  the motion that was filed before Your Honor today even

10 recounts the fact that for the last four months the parties

11 have tried to resolve these discovery disputes without

12 bothering the court.

13        As counsel said, there have been numerous emails,

14 letters, calls, meet and confer conferences, exchanging of

15 case law, term sheets, proposals.  We've reached the

16 conclusion, Your Honor, that without court intervention or,

17 at least, the threat of court intervention these issues are

18 not going to be resolved.

19        And so, we told Mr. Freedman's counsel that we

20 would be filing the motion and we ultimately filed those

21 motions, Your Honor.  And that's why we're here today.

22        By the joint motions, we're asking the court to

23 rule on a handful of legal issues and/or approving process

24 for testing Mr. Freedman's assertion of privilege.  And now,

25 we think the court will ultimately approve those motions when

1  they're heard, either way, we need to get these issues behind

2  us so the court can provide some guidance for the parties and

3  we can move forward with an investigation.

4         So why should the court deny Mr. Freedman's

5  request to continue the motion today?  First, Your Honor,

6  we're talking about discovery disputes which our own local

7  rules make clear are to be done on an expedited basis. These

8  matters should be resolved quickly.  They should be resolved

9  efficiently, and they should move onto the merits.

10        That's what's contemplated by the local rules.  We

11  follow the local rules.  In fact, we gave even more time than

12  the local rules require for a response deadline.  Mr.

13  Freedman here is not entitled to any special treatment.

14        If the request is granted that he's seeking today,

15  Your Honor, he will have as much time as somebody who is

16  responding to a claim objection it has and that's not what

17  the local rules contemplate.

18        And let me make clear, Your Honor, we are still,

19  as counsel said, we're still trying to resolve these issues

20  on a consensual basis.  But after four months of trying to do

21  that, I think it's pretty clear it's not going to happen

22  unless we have -- without the court's intervention or, at

23  least, a threat of court intervention, and that's why we need

24  the hearing to stay on November 30th.

25        Second, Your Honor, if the motions are a problem

1    for Mr. Freedman, they are a product of Mr. Freedman's own

2    making.  Again, what we're doing in the motion is responding

3    -- we are responding to broad assertions of privilege that

4    Mr. Freedman has raised.  The case law is clear that he bears

5    the burden of proving that a responsive document should be

6    withheld on the basis of privilege.

7              As capable counsel must have already researched

8    and analyzed all these issues since they needed to do that in

9    order to assert the privilege in the first place and

10   certainly to push back on us during the last four months as

11   he tried to meet and confer and come to a reasonable

12   resolution here.  They don't need more time to "analyze" the

13   discovery issues as is cited in their motion.

14             Now, Your Honor, I'm not going to kid the court

15   and I will admit, the motions are long, but that's only

16   because we are forced to respond to the numerous arguments

17   that Mr. Freedman has raised as to why he is able to assert

18   these broad, ridiculous and argue positions of privilege as

19   to all these documents.

20             So, in other words, Your Honor, there's nothing

21   new here.  There's no basis for a continuance, and Mr.

22   Freedman should be prepared to carry his burden and prove his

23   position.

24             Finally, Mr. Freedman argues that the movants have

25   not shown any prejudice and, therefore, Your Honor, that in

1  and of itself should be (indiscernible) this hearing.  Again,

2  Your Honor, I'm not dodging the issue.  I recognize we're

3  talking about a two-week extension here.  But everyday of

4  delay in this case impacts the progress of the cases.

5  Everyday, Your Honor, impacts the investigation.

6          But before we get to prejudice, your Honor, we

7  need to focus on Mr. Freedman's burden, and that's the burden

8  of proving his (indiscernible) delay is necessary. Again,

9  we're dealing with nothing new.  We talked about these issues

10 before.  We clearly need the court's intervention or, at

11 least, the threat of the court's intervention to resolve it.

12 And, therefore, Your Honor, we believe the motion should go

13 forward on November 30th and today's motion should be denied.

14          Thank you.

15          THE COURT:  Thank you.  Does the committee wish to

16 say anything?

17          MR. SHERMAN:  Yes, briefly, Your Honor.  We do

18 echo and endorse Mr. -- oh, for the record, Your Honor.

19 Andrew Sherman, Sills Cummis, for the committee.

20          We echo and endorse Mr. Minuti's statements.  The

21 only thing I would add for Your Honor is part of our motion

22 or one of the joint motions consider the appointment of a

23 special discovery master.

24          And if the court was considering the request for a

25 discovery master, we would only say it may make sense to get

1  together if Your Honor would indulge the parties and not

2  adjourn this on the 30th; even at a minimum, to address the

3  prospect of a discovery master, so we're not then further

4  delayed.

5         I mean we are butting against plan deadline

6  issues, Your Honor, so there's what he talks about prejudice.

7  Things are happening in the case.  We continue to burn money

8  which really should come back to creditor's pockets.

9         So all we ask for, Your Honor, is addressing this

10  as promptly as possible.  And to the extent any, Your Honor

11  is considering even the prospect of a discovery master that

12  issue doesn't have to get pushed at all.  That can get

13  addressed and maybe the issues can be done promptly.

14         We thank you, Your Honor, for your consideration.

15         THE COURT:  All right, thank you.

16         Let me hear if the movant wants to reply.

17         MR. MOSS:  Thank you, Your Honor.  I'll be brief

18  and I guess I'll start at the end with Mr. Sherman's

19  suggestion about moving forward with a discovery master so as

20  not to delay the process.

21         We have no objection to that.  As I said, we are

22  not seeking to delay the process in any way here, Your Honor.

23  We just want sufficient time to be able to frame the issues

24  and sufficient time to see if we can potentially work

25  something out here.

1        I guess I'm a little bit more optimistic than Mr.

2   Minuti that we might have a path forward that doesn't require

3   the court's intervention.

4        On the merits issue that they make, I'll just be

5   very brief on that about inserting ourself into the process

6   that we want to review some of the debtors' documents.

7        Well those are our emails.  That is a server

8   called the American Academic Server and that's actually a

9   nondebtor entity that they have control over.  So we do want

10  to review those emails because they implicate our privilege.

11       That's the last thing I'll say about the merits.

12       I think we're really here on the timing and what I

13  heard Mr. Minuti say about all of these different entities

14  and all these different documents, I've been doing this for

15  several months, Your Honor.  Some of it still makes my head

16  spin.  I think he confirms through his argument that these

17  are very complex issues and I didn't hear anything about

18  exigency other than we'd like to get this moving.  And we

19  would too, Your Honor, but we don't think that two weeks is

20  prejudicial in any way.

21       Thank you.

22       THE COURT:  All right, thank you.

23       MR. MINUTI:  Your Honor, Mark Minuti, can I just

24  make one comment responding to the issue about the debtors'

25  server?

1          THE COURT:  Yes.

2          MR. MINUTI:  Your Honor, that is one of the issues

3    that, frankly, is in dispute here and we think it's a

4    ridiculous dispute.

5          The nondebtor entities have taken the position

6    that the servers that are controlled by the debtors, paid for

7    by the debtors, contracted by the debtors is somehow their

8    server simply because it's using a domain name of American

9    Academic, Your Honor.  And so, that gives you a flavor for

10   the broad arguments they raised that we need the court's help

11   on.  So I just wanted to make that clear.

12         Thank you.

13         THE COURT:  All right, well I'm not going to

14   decide any disputed issues, but let me talk, first, about the

15   concept of a discovery master.

16         I think there are some question as to whether or

17   not a bankruptcy judge has authority to appoint a master.

18   And I think that's because the bankruptcy rules don't

19   incorporate Rule 56.  But I can certainly appoint a mediator

20   and tell a mediator to do the same thing.  And I think it is

21   a good idea.

22         So I would like the parties to talk about whom

23   they would like.  And if they don't come up with an

24   acceptable mediator, I would select somebody that you may or

25   may not like.  And I agree that we can use the 30th to get

1  that finally resolved and, hopefully, with the use of a

2  mediator, some of these disputes can be resolved quickly.

3         But other than that, I am going to grant the

4  motion to continue because I don't see that there is any

5  exigency here.  I can see that the parties believe that they

6  have got to an impasse, but I think with the appointment of a

7  mediator that impasse can be broken.  And it's a better use

8  of everybody's time to do that, rather than to litigate the

9  details of 17,000 documents and whether or not lets it into a

10 proper claim for privilege.

11        So I'll ask the parties, again, to meet and confer

12 on an appropriate mediator, report to the court.  If you can

13 agree on one, we don't have to have a hearing on the 30th.

14 But if you can't agree on one, file a certification to that

15 effect and I will be prepared on the 30th to appoint one.

16        And, otherwise, I will grant the extension

17 requested when we get the form of order.

18        MR. SCHLAUCH:  Thank you, Your Honor.  This is

19 Brendan Schlauch for the record.

20        I (indiscernible) the order sets the objection

21 deadline I believe for December 7th.  I also have a -- we did

22 include a date for a hearing if that is something the court

23 wanted to set today, but we're happy to revise an order,

24 however the court wishes, to reflect her ruling today.

25        THE COURT:  All right, the answer December 7th I

1  think you said.

2           MR. SCHLAUCH:  Yes.

3           THE COURT:  Mr. Minuti, there aren't any omnibus

4  hearings scheduled in December in this case, are there?

5           MR. MINUTI:  Bear with me for one minute, Your

6  Honor.  I do think we have one scheduled.  We have a hearing

7  that's actually a fees hearing on December 14th at 11:30.

8  Would the court have time to consider the motion then?

9           THE COURT:  I do have some other hearings on that

10 day.  Well, let me do this.  I'm not going to -- I think

11 that's too soon.  If we get a mediator appointed on the 30th

12 that would be too soon.

13          I'm going to skip -- set it for the first week of

14 January.  How does January 4th look at 11:30, that work?

15          MR. MOSS:  This is Edward Moss, Your Honor. That's

16 fine for me on the MBNF nondebtor side.

17          MR. MINUTI:  Your Honor, Mark Minuti.  That is

18 acceptable to the debtor.

19          THE COURT:  Okay.

20          MR. MINUTI:  Again, Your Honor, Mark Minuti.  I'm

21 sorry; what time did you say on the 4th?

22          THE COURT:  I'm sorry; 11:30.

23          MR. MINUTI:  11:30.  Thank you.

24          MR. MOSS:  And, Your Honor, this is Edward Moss.

25 I'm sorry if I missed it.  Now that we are appointing a

1  mediator and we're not hearing this until, if necessary,

2  January, when will our responsive pleading be due?

3          MR. SHERMAN:  Your Honor, this is Andrew Sherman

4  for the committee.  Can we get that as promptly as possible,

5  if they can do it by the 4th?  They said they can do it by

6  the 4th.  That's going to frame out the issues, so we -- at

7  least --

8          THE COURT:  I thought they said the 7th.

9          MR. SHERMAN:  I'm sorry; the 7th yes.

10          MR. MOSS:  We can, Your Honor.  I was just

11  thinking that if there are going to be productive sessions

12  with the mediator that it might be more useful to push it

13  back a little bit so that we can continue to work and try to

14  narrow the issues and not have to brief and tee up issues

15  before the court that may, again, resolve, you know,

16  thereafter.

17          THE COURT:  Well, let's leave it for the 7th and

18  if I see any progress on the 30th then we can talk about

19  that.  But I'll set it for the 7th and then committee and

20  debtor would have reply dates of the 18th of December.

21          MR. MOSS:  Fair enough.  Thank you, Your Honor.

22          MR. MINUTI:  Thank you, Your Honor.

23          MR. SCHLAUCH:  Your Honor, this is Brendan

24  Schlauch of Richards Layton.

25          We're happy to prepare a revised form of order and

1  submit it under certification of counsel, if that would help

2  the court.

3          THE COURT:  That will help. Thank you.

4          MR. SCHLAUCH:  We can do that.

5          THE COURT:  All right, thank you.  And we'll stand

6  adjourned then.

7      (A Chorus of "Thank you, Your Honor")

8      (Proceedings conclude at 3:26 p.m.)

9

10

11                  CERTIFICATE

12

13     I certify that the foregoing is a correct transcript

14  from the electronic sound recording of the proceedings in the

15  above-entitled matter.

16
   /s/Mary Zajaczkowski              November 23, 2020
17  Mary Zajaczkowski, CET**D-531

18

19

20

21

22

23

24

25