**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**DEBTORS' CHAPTER 11 PLAN OF LIQUIDATION**

**SAUL EWING ARNSTEIN & LEHR LLP**
Mark Minuti (DE No. 2659)
Monique B. DiSabatino (DE No. 6027)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone:  (302) 421-6800
Facsimile:  (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
1500 Market Street, 38th Floor
Philadelphia, PA  19102
Telephone:  (215) 972-7777
Facsimile:  (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com

Dated:  December 30, 2020        *Counsel for Debtors and Debtors-in-Possession*

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 216 N. Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

INTRODUCTION...................................................................................................1

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION............................1**
- A. Rules of Construction ........................................................................1
- B. Definitions........................................................................................1
- C. Rules of Interpretation ....................................................................13
- D. Computation of Time ......................................................................13
- E. Governing Law ...............................................................................13

**ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS .................................13**
- A. Introduction....................................................................................13
- B. Unclassified Claims (not entitled to vote on the Plan) .........................14
  - 1. Administrative Claims against any of the Debtors. ...................14
  - 2. Professional Fee Claims against any of the Debtors.................14
  - 3. Priority Tax Claims against any of the Debtors.......................14
- C. Unimpaired Classes of Claims (deemed to have accepted the Plan and, therefore, not entitled to vote on the Plan)..............................................14
  - 1. Class 1: Priority Non-Tax Claims against any of the Debtors....14
  - 2. Class 2: Secured Claims against any of the Debtors.................14
- D. Secured Lender Claims (although the Debtors believe that the Secured Lender Claims are Unimpaired by the Plan, the DIP Secured Parties shall be entitled to vote on the Plan) ...........................................................14
  - 1. Class 2/MidCap: Secured Lender Claims against any of the Debtors. ......14
- E. Impaired Classes of Claims (entitled to vote on the Plan)....................14
  - 1. Class 3A:  Convenience Claims.............................................14
  - 2. Class 3B: General Unsecured Claims against any of the Debtors. ............14
- F. Impaired Classes of Interests (deemed to have rejected the Plan and, therefore, not entitled to vote on the Plan)............................................14
  - 1. Class 4: Interests in any of the Debtors. ................................14

**ARTICLE III TREATMENT OF CLAIMS AND INTERESTS .........................................14**
- A. Unclassified Claims .......................................................................14
  - 1. Administrative Claims and Professional Fee Claims.................14
  - 2. Priority Tax Claims............................................................15
- B. Unimpaired Claims .........................................................................15
  - 1. Class 1: Priority Non-Tax Claims against Any of the Debtors.................15
  - 2. Class 2: Secured Claims against Any of the Debtors .................15
- C. Secured Lender Claims ....................................................................16
  - 1. Class 2/MidCap – Secured Lender Claims against Any of the Debtors. ....16
- D. Impaired Claims and Interests ..........................................................16
  - 1. Class 3A: Convenience Claims against any of the Debtors.......16
  - 2. Classes 3B and 3C: General Unsecured Claims and HSRE Claims against any of the Debtors........................................................16

|  | 3. | Class 3D:  Insider Claims | 17 |
|  | 4. | Class 4: Interests in Any of the Debtors | 18 |
| E. | | Special Provision Regarding Unimpaired Claims | 18 |
| F. | | Allowed Claims | 18 |

**ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ......................................... 18**

| A. | | Impaired Classes of Claims and Interests Entitled to Vote | 18 |
| B. | | Acceptance by an Impaired Class | 18 |
| C. | | Presumed Acceptances by Unimpaired Classes | 18 |
| D. | | Impaired Equity Interests | 19 |
| E. | | Summary of Classes Voting on the Plan | 19 |
| F. | | Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code | 19 |

**ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ......................................... 19**

| A. | | Global Settlement | 19 |
|  | 1. | Settlement of Issues Relating to Intercompany Claims | 20 |
|  | 2. | Settlement of Issues Relating to Substantive Consolidation | 20 |
| B. | | Implementing Actions | 20 |
| C. | | Liquidation of the Debtors | 20 |
| D. | | Continued Corporate Existence | 26 |
| E. | | Cancellation of Interests | 26 |
| F. | | Exemption from Certain Transfer Taxes | 27 |
| G. | | The Creditors' Committee | 27 |
| H. | | Remaining Assets | 27 |
|  | 1. | **General Assets** | 27 |
| I. | | Counterclaims | 27 |
| J. | | Post-Effective Date Costs | 28 |
| K. | | Preservation of Causes of Action | 28 |
| L. | | Effectuating Documents; Further Transactions | 28 |
| M. | | Reserves and Distribution Accounts | 28 |
|  | 1. | **Funding of the Reserves** | 28 |
|  | 2. | **Funding of the Distribution Account** | 30 |
| N. | | Intercompany Claims | 30 |
| O. | | Tenet/Conifer Settlement | 30 |

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ......................................... 30**

| A. | | Distributions for Claims Allowed as of the Effective Date | 30 |
| B. | | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 31 |
|  | 1. | **Delivery of Distributions in General** | 31 |
|  | 2. | **Undeliverable and Unclaimed Distributions** | 31 |
| C. | | Workers Compensation Claims | 31 |
| D. | | Means of Cash Payment | 31 |
| E. | | Interest on Claims | 32 |
| F. | | Withholding and Reporting Requirements | 32 |
| G. | | Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims | 32 |
|  | 1. | **Claims Administration Responsibilities** | 32 |

|   | 2. | **Objection Deadline; Prosecution of Objections; Claim Estimation**....32 |
|---|----|-----|
|   | 3. | **Late Filed Claims** .................................................................................33 |
|   | 4. | **No Distributions Pending Allowance** ................................................33 |
|   | 5. | **Distributions After Allowance** .........................................................33 |
|   | 6. | **De Minimis Distributions** ..................................................................33 |
|   | 7. | **Fractional Dollars** ..............................................................................33 |
| **H.** |  | Allocation of Plan Distributions Between Principal and Interest.........................34 |
| **I.** |  | Distribution Record Date ......................................................................................34 |
| **J.** |  | De Minimis Fund Distribution...............................................................................34 |

**ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES** ........................................................................................ **34**
| **A.** |  | Rejected Contracts and Leases..............................................................................34 |
|---|---|---|
| **B.** |  | Bar to Rejection Damages .....................................................................................35 |
| **C.** |  | Assumed and Assigned Contracts and Leases .......................................................35 |
| **D.** |  | Insurance Policies .................................................................................................36 |

**ARTICLE VIII CONFIRMATION AND CONSUMMATION OF THE PLAN** ................. **36**
| **A.** |  | Conditions to the Effective Date...........................................................................36 |
|---|---|---|
| **B.** |  | Consequences of Non-Occurrence of Effective Date ............................................36 |

**ARTICLE IX ALLOWANCE AND PAYMENT OF CERTAIN
ADMINISTRATIVE CLAIMS**................................................................................. **37**
| **A.** |  | Final Fee Applications ..........................................................................................37 |
|---|---|---|
| **B.** |  | Employment of Professionals after the Effective Date..........................................37 |
| **C.** |  | Administrative Claim Bar Date .............................................................................37 |

**ARTICLE X EFFECT OF PLAN CONFIRMATION**............................................................. **38**
| **A.** |  | Binding Effect .......................................................................................................38 |
|---|---|---|
| **B.** |  | No Discharge of the Debtors..................................................................................38 |
| **C.** |  | Releases by the Debtors .........................................................................................38 |
| **D.** |  | Injunction ..............................................................................................................39 |
| **E.** |  | Term of Bankruptcy Injunction or Stays ..............................................................39 |
| **F.** |  | Debtors, Debtors' Representative, Creditors' Committee and Plan
Implementation Committee Release of DIP Secured Parties ...............................39 |
| **G.** |  | Levy, Garnishment and Attachment ......................................................................40 |
| **H.** |  | Exculpation and Limitation of Liability ................................................................40 |
| **I.** |  | Indemnification Obligations ..................................................................................41 |
| **J.** |  | Confirmation Order................................................................................................41 |

**ARTICLE XI RETENTION OF JURISDICTION** ................................................................. **41**

**ARTICLE XII MISCELLANEOUS PROVISIONS** ............................................................... **43**
| **A.** |  | Modifications and Amendments ............................................................................43 |
|---|---|---|
| **B.** |  | Substantial Consummation ....................................................................................44 |
| **C.** |  | Severability of Plan Provisions .............................................................................44 |
| **D.** |  | Successors and Assigns..........................................................................................44 |

**E.**    Payment of Statutory Fees ...................................................................................44
**F.**    Revocation .............................................................................................................45
**G.**    Service of Documents ...........................................................................................45
**H.**    Plan Exhibits .........................................................................................................47
**I.**    Closing of the Chapter 11 Cases ...........................................................................47
**J.**    Tax Reporting and Compliance ............................................................................47
**K.**    Special Environmental Provisions ........................................................................47
**L.**    Filing of Additional Documents ...........................................................................47
**M.**    2002 List ...............................................................................................................48

## INTRODUCTION

The above-captioned debtors and debtors-in-possession propose the within Chapter 11 Plan of Liquidation.  This Plan provides for the consolidation of the Debtors, for Plan purposes only, and contemplates the liquidation of each of the Debtors.  Reference is made to the Disclosure Statement for a discussion of (i) the Debtors' history, business, properties and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan.  All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all Exhibits thereto) in their entirety before voting to accept or reject the Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan, in whole or in part, prior to its substantial consummation.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

No solicitation materials, other than the Disclosure Statement, and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of the Plan.  Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all Holders of Claims and Interests to the extent required by section 1125 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Rules of Construction**

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan or any Exhibit hereto.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B.    Definitions**

**1.1    2002 List** shall have the meaning contained in Article XII(M) hereof.

**1.2    Administrative Claim** means a Claim for costs and expenses of administration of the Chapter 11 Cases under sections 503(b) and/or 507(b) of the Bankruptcy Code including: (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving a

Debtor's Estate and operating the businesses of any of the Debtors (such as wages, salaries and payments for inventory, leased equipment and premises), Claims of Governmental Units for Taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date) and Section 503(b)(9) Claims; and (b) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court, excluding Professional Fee Claims.

      **1.3**    **Administrative Claim Bar Date** shall have the meaning set forth in Article IX(C) of the Plan.

      **1.4**    **Allowed Claim** means, with reference to any Claim against the Debtors (including any Administrative Claim), (a) any Claim that has been listed by the Debtors in the Schedules (as such Schedules may be amended by the Debtors or the Debtors' Representative from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent, and for which no Proof of Claim has been filed, (b) any timely filed Proof of Claim or request for payment of an Administrative Claim, unless an objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, and which applicable period of limitations has expired, (c) any Claim (other than a Professional Fee Claim) expressly allowed by a Final Order or under the Plan, (d) any Professional Fee Claim allowed by Order of the Bankruptcy Court, or (e) any Claim that is compromised, settled or otherwise resolved pursuant to the authority granted to the Debtors' Representative under the Plan; provided, however, that Claims temporarily allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims; provided, further, that any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code shall not be considered an Allowed Claim.

      **1.5**    **Allowed . . . Claim** means an Allowed Claim of the particular type or Class described.

      **1.6**    **Ballot** means a ballot form distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

      **1.7**    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Cases.

      **1.8**    **Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware, or any other court with jurisdiction over the Chapter 11 Cases.

      **1.9**    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the Local Rules, as now in effect or hereafter amended and applicable to the Chapter 11 Cases.

      **1.10**    **Bar Date** means the deadline established by the Bar Date Order for the filing of certain Claims against any of the Debtors' Estates.

      **1.11**    **Bar Date Order** means the order of the Bankruptcy Court entered June 11, 2020 [D.I. No. 1666] for the filing of certain Claims against any of the Debtors' Estates.

**1.12    Business Day** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.13    Cash** means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

**1.14    Catch-Up Distribution** means the Distribution necessary to provide the Holder of an Allowed Claim whose Claim was Allowed subsequent to the Initial Distribution Date the Distribution percentage previously paid to the Holders of Allowed Claims in such Class.

**1.15    Causes of Action** means any and all claims, actions, proceedings, causes of action, actions, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies and rights to payment or damages, whether under the Bankruptcy Code or under State or other applicable law, including without limitation actions seeking subordination of any Claim, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that a Debtor and/or its Estate may hold against any Person including, without limitation, claims for accounts receivable due to any Debtor, except to the extent waived or released pursuant to any order of the Bankruptcy Court.

**1.16    Chapter 11 Cases** means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

**1.17    Claim** means a "claim" as defined in section 101(5) of the Bankruptcy Code.

**1.18    Claims Agent** means Omni Agent Solutions, the claims and noticing agent retained in the Chapter 11 Cases.

**1.19    Claims Objection Deadline** means the last day for filing objections to Claims, other than Administrative Claims and Professional Fee Claims, which day shall be (a) the later of (i) one hundred and eighty days (180) after the Effective Date or (ii) one hundred and eighty days (180) after the filing of a Proof of Claim for, or request for payment of, such Claim or (b) such other later date as the Bankruptcy Court may order.  The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion; provided, however, that in the event that a motion to extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the then-current Claims Objection Deadline or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

**1.20    Class** means a category of Holders of Claims or Interests, as described in Article II hereof.

**1.21    Class 3B Cash Available For Distribution** means the amount of Cash in the Debtors' Distribution Account, at any given time, net of the amounts payable hereunder to (i) the Debtors' SAP Claims Reserve Account and (ii) Convenience Claims Reserve.

**1.22    Confirmation** means entry by the Bankruptcy Court of the Confirmation Order.

**1.23    Confirmation Date** means the date on which the signed Confirmation Order is docketed.

**1.24    Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.25    Confirmation Order** means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

**1.26    Consolidated Debtor Cash** means the combined Cash of the Debtors immediately prior to the Effective Date.

**1.27    Consolidated Debtor Cash Account** means the account containing the Consolidated Debtor Cash.

**1.28    Convenience Claim** means any Claim that is not an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, Secured Lender Claim, Professional Fee Claim, Insider Claim, HSRE Claim or Workers Compensation Claim and that also is (i) equal to or less than $[_____] (ii) has been voluntarily reduced to $[____] by the Holder thereof by election on such Holder's Ballot.

**1.29    Convenience Claim Reserve** means a segregated reserve account funded from the Debtors' Distribution Account in accordance with the Plan, in the amount set forth in the Plan Supplement or as otherwise provided in the Confirmation Order.

**1.30    Cure Amount** means the payment of Cash or the distribution of other property necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease to be assumed by the Debtors pursuant to this Plan, and (ii) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**1.31    Creditors' Committee** means the Official Committee of Unsecured Creditors of the Debtors appointed by the United States Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

**1.32    Debtors** means, collectively, Center City Healthcare, LLC, Philadelphia Academic Health System, LLC, St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, HPS of PA, L.L.C., SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., TPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., TPS IV of PA, L.L.C., and TPS V of PA, L.L.C.

**1.33    Debtors' Distribution Account** means the account into which the Consolidated Debtor Cash, and any Cash received by the Debtors after the Effective Date, is to be deposited pursuant to the terms of the Plan.

**1.34    Debtors' Representative** means Allen Wilen, who is the Person appointed to act on behalf of the Debtors in accordance with the terms of this Plan and the Confirmation Order, or any successor appointed in accordance with the terms of this Plan.

**1.35    Debtors' Representative Expenses** means all actual and necessary costs and reasonable expenses incurred by the Debtors' Representative in connection with carrying out the terms of this Plan.

**1.36    Debtors' SAP Claims Reserve Account** means the reserve funded from the Debtors' Distribution Account, on or as soon as practicable after the Effective Date, in the Face Amount of the: (i) Administrative Claims asserted against any of the Debtors, (ii) Priority Tax Claims asserted against any of the Debtors, (iii) Class 1 Priority Non-Tax Claims, and (iv) Class 2 Secured Claims, in accordance with Article V(M)(1)(C) of the Plan.

**1.37    DIP Agent** means MidCap Funding IV Trust, solely in its capacity as administrative agent under the DIP Credit Agreement.

**1.38    DIP Credit Agreement** means that certain First Priority Secured Priming Super-Priority Debtor In Possession Credit and Security Agreement dated July 15, 2020, including all agreements, notes, instruments and any other documents delivered pursuant thereto or in connection therewith (in each case, as amended, restated, supplemented, or otherwise modified from time to time).

**1.39    DIP Lender** means the "Lender" under and as defined in the DIP Credit Agreement.

**1.40    DIP Orders** means, collectively, the Interim DIP Order and the Final DIP Order.

**1.41    DIP Secured Parties** means, collectively, the DIP Agent, the DIP Lender and the "Additional Lenders" under and as defined in the DIP Credit Agreement.

**1.42    Disallowed Claim** means, with reference to any Claim, (a) a Claim, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim, or any portion thereof, that is expressly disallowed under the Plan, or (c) unless scheduled by a Debtor as a fixed, liquidated, non-contingent, and undisputed Claim, a Claim as to which a Bar Date has been established by the Bankruptcy Code, Bankruptcy Rules, or Final Order but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, notwithstanding anything in section 506(d) of the Bankruptcy Code to the contrary.

**1.43    Disclosure Statement** means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, distributed contemporaneously herewith in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

**1.44    Disclosure Statement Order** means the order approving the Disclosure Statement and the procedures for soliciting and tabulating votes on the Plan.

**1.45    Disputed Claim** means, with reference to any Claim, a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim.

**1.46    Disputed . . . Claim** means a Disputed Claim of the type described.

**1.47    Disputed Claim Amount** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtors (prior to the Effective Date), or the Debtors' Representative (on or after the Effective Date), and the holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court; and (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtors (prior to the Effective Date), or the Debtors' Representative (on or after the Effective Date), and the holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim.

**1.48    Distribution** means any distribution made pursuant to the Plan to the Holders of Allowed Claims.

**1.49    Distribution Record Date** means the date the Confirmation Order is docketed or such other date designated in the Confirmation Order.

**1.50    Effective Date** means the Business Day this Plan becomes effective, as provided herein.

**1.51    Estate** means the estate of any Debtor created under section 541 of the Bankruptcy Code.

**1.52    Exhibit** means an exhibit or schedule annexed to either this Plan or the Disclosure Statement.

**1.53    Face Amount** means (a) when used in reference to a Disputed Claim, the Disputed Claim Amount and (b) when used in reference to an Allowed Claim, the Allowed Claim amount.

**1.54    Federal Judgment Rate** means the federal judgment rate, calculated in accordance with 28 U.S.C. § 1961, as in effect as of the Petition Date, or such other interest rate that, as determined by the Bankruptcy Court at the Confirmation Hearing, will cause the Plan to conform to, and meet, the requirements of applicable law.

**1.55    Final Decree** means the decree contemplated under Bankruptcy Rule 3022.

**1.56    Final DIP Order** means the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Granting Adequate Protection and Modifying the Automatic Stay* [D.I. 557].

**1.57** **Final Distribution Date** means the date on which the final distribution of Cash is made to Holders of Allowed Class 3 General Unsecured Claims, as determined by the Debtors' Representative in consultation with the Plan Implementation Committee.

**1.58** **Final Distribution Percentage** means, with respect to Holders of Allowed General Unsecured Claims in Class 3B, the percentage obtained by dividing the aggregate sum of the Cash Available For Distribution for Class 3B, net of any Catch-Up Distributions required by the Plan, by the Face Amount of all Allowed General Unsecured Claims in Class 3B.

**1.59** **Final Fee Applications** means all final requests for payment of Professional Fee Claims.

**1.60** **Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases, that has not been reversed, stayed, modified or amended and to which the time to appeal, petition for certiorari, or seek re-argument or rehearing has expired and to which no appeal, re-argument, petition for certiorari, or rehearing is pending or, if an appeal, re-argument, certiorari, or rehearing thereof has been sought, such order has been affirmed by the highest court to which the order was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired, provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Rule 9024 of the Federal Rules of Bankruptcy Procedure may be filed with respect to such order, as long as such a motion actually has not been filed.

**1.61** **General Unsecured Claim** means a Claim that is not an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, Secured Lender Claim, Professional Fee Claim, Convenience Class Claim, Insider Claim, HSRE Claim or Workers Compensation Claim.

**1.62** **Governmental Unit** means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

**1.63** **Holder** means an entity holding a Claim or Interest.

**1.64** **HPP** means Health Plan Partners, Inc. and its successors and assigns.

**1.65** **HPP Assets** means all rights, interests, claims and Causes of Action held by any Debtor in, against or with respect to HPP, including without limitation surplus notes, equity/membership interests, rights to retained earnings, rights to any distributions, and rights as a terminated or withdrawn member.

**1.66** **HSRE** means, collectively, Harrison Street Real Estate, LLC and its affiliates and subsidiaries, including without limitation PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Feinstein MOB, LLC, PAHH Wood Street Garage, LLC, PAHH Erie Street Garage, LLC, HSRE-PAHH I, LLC, HSRE-PAHH 1A, LLC and HSREP VI Holding, LLC.

**1.67**    **HSRE Claim** means any Claim filed by, scheduled for or otherwise asserted against any of the Debtors by or on behalf of any person or entity within the meaning of the term "HSRE" as defined in the Plan.

**1.68**    **HSRE Subordination** means an order of the Bankruptcy Court or other court of competent jurisdiction subordinating the HSRE Claims to General Unsecured Claims

**1.69**    **Impaired** means, when used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.70**    **Independent Managers** means Michael E. Jacoby, Albert A. Mezzaroba and any other independent managers of PAHS.  For avoidance of doubt, Joel Freedman shall not be deemed to be an Independent Manager.

**1.71**    **Initial Distribution Date** means the date upon which initial distributions are made to Holders of Allowed Claims entitled to receive Distributions under the Plan, as determined by the Debtors' Representative in consultation with the Plan Implementation Committee.

**1.72**    **Initial Distribution Percentage** means, with respect to Holders of Class 3B General Unsecured Claims, the percentage obtained by dividing, as of the contemplated Initial Distribution Date, the Cash available for distribution for Class 3B, by the Face Amount of all Allowed and Disputed General Unsecured Claims in such Class.

**1.73**    **Insider Claim** means any Claim filed by, scheduled for or otherwise asserted against any of the Debtors by or on behalf of any of the MBNF Non-Debtor Parties.

**1.74**    **Insurance Policy** means any issued policy of insurance and any agreements relating thereto covering one or more of the Debtors, the Debtors' Estates or their respective assets, directors, officers, members, managers, employees and fiduciaries, or that may be available to provide coverage for Claims against the Debtors or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrella or excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary and organization liability policy(ies) (A, B or C coverage), and any tail with respect thereto.

**1.75**    **Intercompany Claim** shall mean any Claim by a Debtor against another Debtor.

**1.76**    **Interest** means the legal, equitable, contractual, and other rights of any Person with respect to any capital stock or other ownership interest in any of the Debtors, whether or not transferable, and any option, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in any of the Debtors.

**1.77**    **Interim DIP Order** means the *Interim Order Under 11 U.S.C. §§105, 361, 362, 363(c), 363(d), 364(c), 364(d), 364(e) and 507 And Bankruptcy Rules 2002, 4001 and 9014; (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing The Debtors To Use Cash Collateral; (III) Granting Adequate Protection; and (IV) Scheduling Final Hearing Pursuant To Bankruptcy Rule 4001(b) and 4001(c)*, entered July 12, 2019 [D.I. 172].

**1.78    Interim Distribution Percentage** means, with respect to Class 3B (General Unsecured Claims), the percentage obtained by dividing, as of the applicable Subsequent Distribution Date, the Cash Available for Distribution for Class 3B, net of any Catch-Up Distributions required by the Plan, by the Face Amount of all Allowed and Disputed General Unsecured Claims in Class 3B.

**1.79    Lien** means any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage or hypothecation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.80    Local Rules** means the Local Rules for the United States Bankruptcy Court District of Delaware.

**1.81    MBNF Mediation** means mediation between and among the Debtors, the Committee and the MBNF Non-Debtor Parties regarding among other things the Debtors' alleged Causes of Action against some or all of the MBNF Non-Debtor Parties and the Insider Claims.

**1.82    MBNF Non-Debtor Parties** means Joel Freedman, Stella Freedman, Svetlana Attestatova, Kyle Schmidt, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, Paladin Capital and Globe Health Foundation, Inc.

**1.83    Non-Debtor Real Estate** means the real estate owned by one or more of the following entities as of the Petition Date: Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, including without limitation the real estate located at 160 E. Erie Ave., Philadelphia PA; 3647-3669 N. Front Street, Philadelphia, PA; 3843-3863 D Street, Philadelphia, PA; 222-248 N. Broad Street, Philadelphia, PA; 221-223 N. 15th Street, Philadelphia, PA; 325 N. 15th Street, Philadelphia, PA; 300-304 N. Broad Street, Philadelphia, PA; 211-213 N. Broad Street, Philadelphia, PA; 200-214 N. Broad Street, Philadelphia, PA; and 201-219 N. 15th Street, Philadelphia, PA and, in all instances, the proceeds thereof.

**1.84    Non-Debtor Real Estate Litigation** means any litigation or other action, commenced, to be commenced, or pending in the Bankruptcy Court or other court of competent jurisdiction, seeking (i) a declaratory judgment that the Non-Debtor Real Estate or the proceeds thereof is or should be property of the Debtors or the Debtors' estate, (ii) to impose a constructive trust upon some or all of the Non-Debtor Real Estate or the proceeds thereof for the benefit of the Debtors or the Debtors' estate, (iii) to substantively consolidate one or more of the Debtors with any Person that is an owner of some or all of the Non-Debtor Real Estate, (iv) to pierce the "corporate veil" with respect to any Person that is an owner of some or all of the Non-Debtor Real Estate, (v) a declaratory judgment that one or more Persons that is/are not a Debtor

in the Bankruptcy Cases are the "alter ego" of one or more of the Debtors, and/or (vi) similar or related relief.

**1.85    Nuclear Pacemaker** means that certain nuclear pacemaker inserted into a patient of one of the Debtors' predecessors prior to the Petition Date.

**1.86    PAHS** means Philadelphia Academic Health System, LLC, a Delaware limited liability company and one of the Debtors herein.

**1.87    Paladin Entity** means, collectively, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, Paladin Capital and Globe Health Foundation, Inc.

**1.88    Person** means "person" as defined in section 101(41) of the Bankruptcy Code.

**1.89    Petition Date** means June 30, 2019 and July 1, 2019, collectively.

**1.90    Plan** means this chapter 11 plan, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**1.91    Plan Document** means the Plan, any Plan Supplement(s), and any exhibits and schedules thereto, together with any contract, instrument, release, or other agreement or document entered in connection with the Plan.

**1.92    Plan Implementation Committee** means the committee appointed pursuant to Article V(C)(e) of the Plan.

**1.93    Plan Supplement** means any supplement or supplements filed with the Bankruptcy Court with respect to the Plan no later than ten (10) days prior to the deadline for submitting timely Ballots on the Plan.

**1.94    Post-Effective Date Debtors** means the Debtors, following the Effective Date.

**1.95    Post-Effective Date Reserve** means a segregated reserve account established for the purpose of paying post-Effective Date costs and expenses, including without limitation: (i) Taxes, (ii) reasonable out of pocket costs and expenses incurred by members of the Plan Implementation Committee, and (iii) costs and expenses incurred by the Debtors' Representative, the Debtors, the Creditors' Committee and the Claims Agent and their professionals in connection with the implementation of the Plan (including in connection with any appeal of the Confirmation Order and the prosecution of Final Fee Applications) and the administration of the Bankruptcy Cases and the Plan.

**1.96    Priority Non-Tax Claim** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.97    Priority Tax Claim** means a Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.98    Professional** means any professional employed in the Chapter 11 Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

**1.99    Professional Fee Claim** means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred on or after the Petition Date and prior to and including the Effective Date.

**1.100    Professional Fee Claims Reserve** means a segregated reserve account funded from the Consolidated Debtor Cash Account in accordance with the Plan, in the amount set forth in the Plan Supplement or as otherwise provided in the Confirmation Order.

**1.101    Proof of Claim** means the proof of claim that must be filed on or before the applicable Bar Date or such other date as prescribed by the Bankruptcy Court.

**1.102    Released DIP Secured Parties** shall have the meaning contained in Article X(F) hereof.

**1.103    Releasing Part(y)(ies)** shall have the meanings contained in Article X(F) hereof.

**1.104    Remaining Assets** shall have the meaning contained in Article V(H) hereof.

**1.105    Representative Parties** shall have the meaning contained in Article V(C)(h) hereof.

**1.106    Sale Order** means an order of the Bankruptcy Court approving the sale of one or more of the Debtors' assets.

**1.107    Scheduled** means, with respect to any Claim or Interest, the status, priority and amount, if any, of such Claim or Interest as set forth in the Schedules.

**1.108    Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.109    Section 503(b)(9) Claim** means a claim entitled to priority under section 503(b)(9) of the Bankruptcy Code.

**1.110    Secured Claim** means any Claim secured by a valid, perfected and enforceable Lien in or on any of the Debtors' property, which is not void or voidable under the Bankruptcy Code or any other applicable law, to the extent of the value of the Claim Holder's interest in the Debtors' property, as determined pursuant to section 506 of the Bankruptcy Code, exclusive of Secured Lender Claims.

**1.111   Secured Lender Claims** means the secured claims of the DIP Secured Parties pursuant to the DIP Credit Agreement and/or the DIP Orders.

**1.112   Schedule of Assumed Contracts and Leases** means the schedule of executory contracts and unexpired leases intended to be assumed by the Debtors in accordance with Article VII(C) of this Plan, which schedule shall be attached hereto as an Exhibit or included in the Plan Supplement.

**1.113   Special Manager** means that Person designated as special manager in the Plan Supplement.

**1.114   Subsequent Distribution Date** means any date (other than the Final Distribution Date) on which Cash is distributed to Holders of Allowed Class 3B General Unsecured Claims following the Initial Distribution Date, as determined by the Debtors' Representative in consultation with the Plan Implementation Committee.

**1.115   Tax Claim** means all or that portion of a Claim held by a Governmental Unit for a Tax against the Debtors, including income and employment taxes and any related penalties or interest.

**1.116   Tax or Taxes** means any and all taxes of whatever nature imposed at any time by any governmental authority or by any political subdivision or taxing authority thereof or therein, and all interest, penalties or similar liabilities with respect thereto.

**1.117   Tenet/Conifer** means those certain entities that are defined as "Tenet" and "Conifer" in the Tenet/Conifer Settlement.

**1.118   Tenet/Conifer Claim** means the "Allowed Pre-Petition Claims" of Tenet/Conifer, in the aggregate amount of $57.2 million, as set forth in the Tenet/Conifer Settlement.

**1.119   Tenet/Conifer Settlement** means that certain Settlement Term Sheet between and among the Debtors, Tenet Healthcare Corporation, Tenet Business Services Corp., Conifer Health Solutions LLC, Conifer Revenue Cycle Solutions LLC, and the Committee, as approved by Order of the Bankruptcy Court entered December 9, 2019 [D.I. 1118] and attached hereto as **Exhibit "A"**.

**1.120   Unclassified Claims** means Administrative Claims, Professional Fee Claims and Priority Tax Claims.

**1.121   Unimpaired** means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.122   Workers Compensation Claim** means a Claim arising prior to the Petition Date of any former employee of any of the Debtors for workers compensation benefits under applicable law.

## C.    Rules of Interpretation

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to sections, articles, schedules and Exhibits are references to sections, articles, schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply, subject to Article I(A) hereof.

## D.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## E.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the State of Delaware shall govern the construction and implementation of the Plan and any agreements, document and instruments executed in connection with the Plan, without giving effect to the principles of conflicts of law thereof.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

## A.    Introduction

All Claims and Interests, except Administrative Claims, Professional Fee Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is Allowed in that Class and such Claim or Interest has not been paid, released or otherwise satisfied prior to the Effective Date.

The Debtors have set forth the Classes below.

**B.**    **Unclassified Claims (not entitled to vote on the Plan)**

      1.    Administrative Claims against any of the Debtors.

      2.    Professional Fee Claims against any of the Debtors.

      3.    Priority Tax Claims against any of the Debtors.

**C.**    **Unimpaired Classes of Claims (deemed to have accepted the Plan and, therefore, not entitled to vote on the Plan)**

      1.    Class 1: Priority Non-Tax Claims against any of the Debtors.

      2.    Class 2: Secured Claims against any of the Debtors.

**D.**    **Secured Lender Claims (although the Debtors believe that the Secured Lender Claims are Unimpaired by the Plan, the DIP Secured Parties shall be entitled to vote on the Plan)**

      1.    Class 2/MidCap: Secured Lender Claims against any of the Debtors.

**E.**    **Impaired Classes of Claims (entitled to vote on the Plan)**

      1.    Class 3A:  Convenience Claims

      2.    Class 3B: General Unsecured Claims against any of the Debtors.

      2.    Class 3C:  HSRE Claims against any of the Debtors.

      3.    Class 3D: Insider Claims against any of the Debtors.

**F.**    **Impaired Classes of Interests (deemed to have rejected the Plan and, therefore, not entitled to vote on the Plan)**

      1.    Class 4: Interests in any of the Debtors.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

**A.**    **Unclassified Claims**

      1.    Administrative Claims and Professional Fee Claims

Except as otherwise provided herein, and subject to the requirements set forth herein, on, or as soon as reasonably practicable after the later of (i) the Effective Date, but in no event later than forty-five (45) days after the Effective Date if the Administrative Claim is an Allowed Administrative Claim on the Effective Date, or (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full satisfaction of such Allowed Administrative Claim, (a) Cash from the Debtors' SAP

Claims Reserve Account equal to the amount of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtors shall have agreed upon in writing.

On or as soon as reasonably practicable after the later of (i) the Effective Date or (ii) the date a Professional Fee Claim becomes an Allowed Professional Fee Claim, a Holder of an Allowed Professional Fee Claim shall receive, in full satisfaction of such Allowed Professional Fee Claim, Cash from the Professional Fee Claims Reserve equal to the unpaid portion of the Allowed Professional Fee Claim.

2. Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive Cash from the Debtors' SAP Claims Reserve Account in an amount equal to such Allowed Priority Tax Claim on, or as soon as reasonably practicable after the later of (i) the Effective Date, but in no event later than forty-five (45) days after the Effective Date if the Priority Tax Claim is an Allowed Priority Tax Claim on the Effective Date, or (ii) the date such Claim becomes an Allowed Priority Tax Claim.

**B.     Unimpaired Claims**

1. Class 1: Priority Non-Tax Claims against Any of the Debtors

Except to the extent that a Holder of an Allowed Priority Non-Tax Claim against any of the Debtors has been paid prior to the Effective Date or agrees to a different treatment, on or as soon as reasonably practicable after the later of (i) the Effective Date, but in no event later than forty-five (45) days after the Effective Date if the Priority Non-Tax Claim is an Allowed Priority Non-Tax claim on the Effective Date, or (ii) the date such Claim becomes an Allowed Priority Non-Tax Claim, the Debtors' Representative shall pay to each Holder of an Allowed Priority Non-Tax Claim Cash in an amount equal to the Allowed Priority Non-Tax Claim from the Debtors' SAP Claims Reserve Account.

2. Class 2: Secured Claims against Any of the Debtors

Except to the extent that a Holder of an Allowed Class 2 Secured Claim against any of the Debtors has been paid prior to the Effective Date or agrees to a different treatment, on or as soon as is reasonably practicable after the later of (i) the Effective Date, but in no event later than thirty (30) days after the Effective Date if the Class 2 Secured Claim is an Allowed Class 2 Secured Claim on the Effective Date or (ii) the date such Claim becomes an Allowed Secured Claim, the Debtors' Representative shall either: (a) pay from the Debtors' SAP Claims Reserve Account, to each Holder of an Allowed Class 2 Secured Claim, Cash in an amount equal to such Allowed Class 2 Secured Claim; or (b) release to such Holder the collateral securing such Allowed Class 2 Secured Claim. In either event, such payment or release of collateral shall be in full satisfaction of the applicable Allowed Class 2 Secured Claim. Notwithstanding the preceding or anything in the Plan to the contrary, nothing contained herein is intended to preclude or prevent payment to the Holder of an Allowed Class 2 Secured Claim of the proceeds of the sale of any asset in which such Holder has a Lien as and when such proceeds become available for distribution.

**C.**     **Secured Lender Claims**

      1.      Class 2/MidCap – Secured Lender Claims against Any of the Debtors.

Upon the occurrence of the Effective Date, the Holders of the Secured Lender Claims shall be deemed, without any action of any Person, to forever release and discharge their security interest in and liens on all assets of the Debtors.  On the Effective Date, and as provided in the DIP Credit Agreement and the DIP Orders, the Debtors shall pay, in full in Cash, all reasonable and documented fees and expenses of each DIP Secured Party and their respective professionals incurred prior to the Effective Date (subject to the Debtors' receipt of invoices in customary form in connection therewith and without the requirement to file a fee application with the Bankruptcy Court).  To the extent such invoices are submitted after the Effective Date, such invoices shall be paid no later than three (3) Business Days after the Debtors' receipt of such invoice.

**D.**     **Impaired Claims and Interests**

      1.      Class 3A: Convenience Claims against any of the Debtors

      (a)      The Holder of each Allowed Class 3A Convenience Class Claim shall receive, from the Convenience Claims Reserve, on or as soon as is practicable after the later of (i) the Effective Date or (ii) the date on which the Holder's Convenience Class Claim is Allowed by Final Order, Cash in the amount of [___%] of the Allowed Amount of such Holder's Convenience Class Claim.

      2.      Classes 3B and 3C: General Unsecured Claims and HSRE Claims against any of the Debtors

      (a)      On the Initial Distribution Date, if a Class 3B General Unsecured Claim or Class 3C HSRE Claim is Allowed at least thirty (30) days prior to the Initial Distribution Date, the Holder of such Allowed Claim shall receive, from the Debtors' Distribution Account, Cash equal to (i) the amount of its Allowed Class 3B General Unsecured Claim or Class 3C HSRE Claim, as applicable, multiplied by (ii) the Initial Distribution Percentage.

      (b)      On each Subsequent Distribution Date, if a Class 3B General Unsecured Claim or Class 3C HSRE Claim is Allowed at least thirty (30) days prior to such Subsequent Distribution Date, the Holder of such Allowed Claim shall receive, from the Debtors' Distribution Account (i) a Catch-Up Distribution, if applicable, and (ii) Cash equal to (a) the amount of its Allowed Class 3B General Unsecured Claim or Allowed Class 3C HSRE Claim, as applicable, multiplied by (b) the then-current Interim Distribution Percentage.

      (c)      On the Final Distribution Date, each Holder of an Allowed Class 3B General Unsecured Claim and Allowed Class 3C HSRE Claim shall receive, from the Debtors' Distribution Account (i) a Catch-Up Distribution, if applicable, and (ii) Cash equal to (a) the amount of its Allowed Class 3B General Unsecured Claim or Allowed Class 3C HSRE Claim, as applicable, multiplied by (b) the Final Distribution Percentage.

(d)    Notwithstanding anything to the contrary set forth herein, but subject to subsection 2(f), below, until Holders of Allowed Convenience Claims, Allowed General Unsecured Claims other than Tenet/Conifer and Allowed HSRE Claims receive, in the aggregate, the lesser of (i) $25 million or (ii) 50% of the amount of their Allowed Convenience Claims, General Unsecured Claims and HSRE Claims (the "**Tenet/Conifer Recovery Threshold**"), (A) the Tenet/Conifer Claim shall not be considered in calculating the Initial Distribution Percentage, any Subsequent Distribution Percentage or the Final Distribution Percentage and (B) no distribution shall be made on account of the Tenet/Conifer Claim.  If and to the extent the Tenet/Conifer Recovery Threshold is reached, the Tenet/Conifer Claim shall be included in the calculation of the Initial Distribution Percentage, any Subsequent Distribution Percentage and the Final Distribution Percentage, as applicable, and shall be entitled to receive Distributions under the Plan as a Class 3B General Unsecured Claim.  For the avoidance of doubt, the Tenet/Conifer Claim shall not be entitled to any Catch-Up Distribution but shall be entitled to receive payment in full from Cash remaining in the Debtors' Distribution Account, if any, after all other Allowed Class 3B General Unsecured Claims and all Allowed Class 3C HSRE Claims have been paid in full.

(e)    Notwithstanding anything to the contrary set forth herein, no Holder of an Allowed Class 3B General Unsecured Claim or Allowed Class 3C HSRE Claim shall be entitled to receive, on account of such Allowed Claim, Cash under the Plan in excess of 100% of such Holder's Allowed Class 3B General Unsecured Claim or Allowed Class 3C HSRE Claim, as applicable.

(f)    Notwithstanding anything to the contrary set forth herein, in the event of an HSRE Subordination (i) all references to "Class 3C HSRE Claim(s)" and "Allowed Class 3C HSRE Claim(s)" shall be deemed removed from subsections 2(a) – (d), above, and (ii) upon the prior payment of 100% of each Allowed Class 3B General Unsecured Claim in accordance with the Plan, Allowed HSRE Claims shall receive a pro rata distribution of all Cash Available for Distribution that has not been distributed to Holders of Allowed Class 3B General Unsecured Claims; provided, however, that no Holder of an Allowed Class 3C HSRE Claim shall be entitled to receive, on account of such Allowed Class 3C HSRE Claim, Cash under the Plan in excess of 100% of such Holder's Allowed Class 3C HSRE Claim.

3.    Class 3D:  Insider Claims

Class 3D Insider Claims are subordinated to Class 3A Convenience Claims, Class 3B General Unsecured Claims and Class 3C HSRE Claims.  Upon the prior payment of 100% of each Allowed Class 3B General Unsecured Claim and each Allowed Class 3C HSRE Claim in accordance with the Plan, the Holders of Allowed Insider Claims shall receive a pro rata distribution of all Cash Available for Distribution that has not been distributed to Holders of Allowed Class 3B General Unsecured Claims or Holders of Allowed Class 3C HSRE Claims; provided, however, that no Holder of an Allowed Class 3D Insider Claim shall be entitled to receive, on account of such Allowed Class 3D Insider Claim, Cash under the Plan in excess of 100% of such Holder's Allowed Class 3D Insider Claim.

4.      Class 4: Interests in Any of the Debtors

Holders of Class 4 Interests shall not receive or retain any property or interest in property on account of their Interests, which shall be cancelled and terminated upon the occurrence of the Effective Date.

## E.    Special Provision Regarding Unimpaired Claims

Except as otherwise provided herein, the Confirmation Order, any other order of the Bankruptcy Court, or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of the Debtors with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims; provided, however, that the Secured Lender Claims shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization, or reduction of any kind, including pursuant to Section 502(d) of the Bankruptcy Code.

## F.    Allowed Claims

Notwithstanding any provision herein to the contrary, the Debtors' Representative shall only make distributions to Holders of Allowed Claims.  No Holder of a Disputed Claim will receive any distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim.  Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its distribution in accordance with the terms and provisions of the Plan.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN

## A.    Impaired Classes of Claims and Interests Entitled to Vote

Subject to Articles II and III, only the Holders of Claims in Classes 2/MidCap and 3A, 3B, 3C and 3D are entitled to vote to accept or reject the Plan.

## B.    Acceptance by an Impaired Class

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

## C.    Presumed Acceptances by Unimpaired Classes

Classes 1 and 2 are Unimpaired by the Plan.  Under section 1126 of the Bankruptcy Code, such Holders are conclusively presumed to accept the Plan, and the votes of such Holders will not be solicited.

**D.      Impaired Equity Interests**

With respect to Interests, in accordance with section 1126(g) of the Bankruptcy Code, the Holders of Classes 4 Interests are deemed to have rejected the Plan and will not be entitled to vote on the Plan.

**E.      Summary of Classes Voting on the Plan**

Consistent with the provisions of Articles II and III herein, the votes of Holders of Claims in Classes 2/MidCap and 3A, 3B, 3C and 3D will be solicited with respect to the Plan.

**F.      Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

If any Impaired Class of Claims that is entitled to vote on the Plan rejects the Plan, the Debtors may (i) seek confirmation of the Plan from the Bankruptcy Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code and/or (ii) modify the Plan. The Debtors, in consultation with the Creditors' Committee, reserve the right to alter, amend or modify the Plan, including to amend or modify the Exhibits thereto, to satisfy the requirements of section 1129(b) of the Bankruptcy Code. Each Debtor reserves the right to revoke or withdraw the Plan, as it applies to such Debtor. The withdrawal of the Plan by a Debtor shall not affect the right or ability of another Debtor to seek confirmation of the Plan, as it applies to such Debtor.

**ARTICLE V**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.      Global Settlement**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates a compromise and settlement of numerous inter-Debtor issues. The Plan is designed to achieve an economic settlement of Claims against the Debtors and an efficient, just and equitable resolution of these Chapter 11 Cases. This global settlement constitutes a settlement of a number of potential litigation issues, including issues regarding substantive consolidation between and among the Debtors, the validity and enforceability of Intercompany Claims, the allocation of borrowings (and use of such borrowings) from the DIP Agent and from the Debtors' pre-Petition Date lenders, and the allocation of expenses and sale proceeds among the Debtors' Estates. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, their creditors, and other parties-in-interest, and are fair, equitable and within the range of reasonableness. Each provision of the global settlement shall be deemed non-severable from each other and from the remaining terms of the Plan. As set forth in detail below, the global settlement will be implemented as follows:

1.      Settlement of Issues Relating to Intercompany Claims

Intercompany Claims shall be extinguished as of the Effective Date without any further action by the Debtors or the Debtors' Representative.

2.      Settlement of Issues Relating to Substantive Consolidation

Entry of the Confirmation Order shall constitute approval, pursuant to sections 105(a) and 1123(a)(5) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Estates of the Debtors.  For the avoidance of doubt, the Plan shall serve as a motion by the Debtors seeking the entry of an order approving the foregoing substantive consolidation.  Notwithstanding the substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee Fees until its particular case is closed, dismissed or converted.

The assets and liabilities of each of the Debtors shall be deemed to be the assets and liabilities of a single, consolidated entity.  Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the Debtors shall be considered a single claim filed against the consolidated Debtors on and after the Effective Date.  Any joint and several liability of two or more of the Debtors, and all Claims against such entities on account of such joint and several liability, shall be considered a single Claim and single liability against the consolidated Debtors. Any guarantee by a Debtor of the liabilities of any other Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan such that any Claim against any Debtor and any guaranty thereof executed by any other Debtor shall be deemed to be one obligation of the consolidated Debtors.

**B.      Implementing Actions**

Unless otherwise provided in the Plan, on the Effective Date or as soon thereafter as practicable, the following shall occur in implementation of the Plan: (i) all actions, documents and agreements necessary to implement the Plan shall have been effected or executed; (ii) the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, opinions or other documents, if any, that are determined by the Debtors to be necessary to implement the Plan; (iii) the Debtors' Representative shall make all Distributions, if any, required to be made on the Effective Date pursuant to the Plan; and (iv) the Debtors' Distribution Account, the Professional Fee Claims Reserve, the Post-Effective Date Reserve, the Debtors' SAP Claims Reserve Account, and the Convenience Claims Reserve shall be established and funded in a manner consistent with Article V(M) of the Plan.  All Cash in such accounts shall be deposited or invested in accordance with section 345 of the Bankruptcy Code and Local Rule 4001-3.

**C.      Liquidation of the Debtors**

(a)      Appointment of Debtors' Representative

The Debtors' Representative shall be Allen Wilen.  The Plan Supplement shall include an affidavit of disinterestedness of the proposed Debtors' Representative.  The appointment of the Debtors' Representative shall be approved in the Confirmation Order, and the Debtors' Representative's duties shall commence as of the Effective Date.  The Debtors' Representative

shall administer the Plan and shall serve as a representative of the Debtors' Estates under section 1123(b) of the Bankruptcy Code for the purpose of enforcing Causes of Action. The Debtors' Representative may retain professionals who were previously employed by the Debtors and/or the Creditors' Committee and nothing in the Plan shall limit the Debtors' Representative from engaging the Debtors' Representative's financial advisory/accounting firm.

Unless the Bankruptcy Court orders otherwise, the Debtors' Representative shall serve in such capacity through the earlier of (i) the date all of the Debtors are dissolved and (ii) the date such Debtors' Representative resigns or is otherwise unable to serve; provided, however, that, in the event that the Debtors' Representative resigns or is otherwise unable to serve, the Special Manager shall, in consultation with the Plan Implementation Committee, within ten (10) days, appoint a successor, who shall be a disinterested Person, to serve as the Debtors' Representative in accordance with the Plan. Notice of such appointment (accompanied by an affidavit of disinterestedness) shall be filed with the Bankruptcy Court ten (10) days prior to the effectiveness of such proposed appointment. To the extent that the Special Manager does not appoint a successor within the time periods specified, then the Bankruptcy Court, upon the motion of any party-in-interest, shall approve a successor to serve as the Debtors' Representative. Upon the appointment of any successor Debtors' Representative, the prior Debtors' Representative shall have no further obligations under the Plan.

(b)     Responsibilities of the Debtors' Representative

Subject to the provisions of Article V(C)(f) of the Plan regarding the Plan Implementation Committee, to the extent applicable, the responsibilities of the Debtors' Representative shall include, but are not limited to the following:

(i)     implementing the Plan, including making the Distributions contemplated herein, and establishing the Initial Distribution Date, each Subsequent Distribution Date and the Final Distribution Date(s);

(ii)     establishing procedures and, if necessary, establishing and funding an escrow, trust or other arrangement to resolve any remaining obligations of any Debtor with respect to the Nuclear Pacemaker, in accordance with applicable law;

(iii)     receiving, managing, liquidating, administering, investing, supervising and protecting the Remaining Assets;

(iv)     conducting an analysis of any and all Claims, and in accordance with the Debtors' Representative's business judgment prosecuting objections thereto or settling or otherwise compromising such Claims, in accordance with Article VI(G) of the Plan;

(v)     approving any settlement of the MBNF Mediation and any Causes of Action, including without limitation the Non-Debtor Real Estate Litigation, against any of the MBNF Non-Debtor Parties;

(vi)     maintaining and administering the reserves established pursuant to this Plan;

(vii)    in accordance with the Debtors' Representative's business judgment, commencing, prosecuting, or settling claims and Causes of Action, enforcing contracts, and asserting claims, defenses, and offsets in accordance with the Plan and paying all associated costs from the Post-Effective Date Reserve;

(viii)    recovering and compelling turnover of the Debtors' property;

(ix)    paying all amounts payable from the Post-Effective Date Reserve;

(x)    abandoning any property that cannot be sold or otherwise disposed of for value and whose Distribution to holders of Allowed Claims would not be feasible or cost-effective in the Debtors' Representative's business judgment;

(xi)    preparing and filing post-Effective Date operating reports;

(xii)    filing all tax returns for the Debtors and defending all audits and proceedings in connection with the Debtors' tax returns;

(xiii)    paying or causing to be paid from the Post Effective Date Reserve, any Taxes incurred after Effective Date;

(xiv)    retaining such professionals as are necessary and appropriate in furtherance of the Debtors' Representative's obligations; and

(xv)    taking such actions as are necessary and/or desirable to carry out the purposes of the Plan, including effectuating the terms of the Plan, winding down the Debtors' business affairs, and seeking one or more final decrees for the Chapter 11 Cases.

(c)    Retention of Assets and Causes of Action

On the Effective Date, any and all of the Debtors' assets, including without limitation the Remaining Assets, shall be deemed retained by the Debtors.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and subject to the terms of this Plan, only the Debtors' Representative shall have the right to pursue or not to pursue, compromise or settle any of the Debtors' assets not otherwise sold, released or otherwise settled prior to the Effective Date.  From and after the Effective Date, the Debtors' Representative may commence, litigate and settle any Causes of Action, except as otherwise expressly provided in this Plan.  The Debtors' Representative shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code, subject to any order(s) entered in the Chapter 11 Cases.

(d)    Vesting of Debtors' Assets

In accordance with section 1141 of the Bankruptcy Code, the Debtors' assets shall automatically vest in the Debtors free and clear of all Claims, Liens, and other interests, subject only to (i) the Allowed Claims of the Holders of Claims as set forth in the Plan and (ii) the costs

and expenses payable from the Post-Effective Date Reserve or from the Professional Fee Claims Reserve, as set forth herein.

(e)    Non-Debtor Real Estate Litigation

If and to the extent the MBNF Mediation does not result in a settlement or other resolution acceptable to the Debtors and the Plan Implementation Committee, the Debtors' Representative, in consultation with the Plan Implementation Committee, may in his discretion commence or continue with the Non-Debtor Real Estate Litigation and/or may commence or continue with any other Cause of Action against any of the MBNF Non-Debtor Parties in order to make some or all of the Non-Debtor Real Estate or its value or proceeds available to Holders of Claims or to obtain such other relief and/or remedy that may be appropriate, including without limitation monetary damages.

(f)    Plan Implementation Committee

The Creditors' Committee, after consultation with the Debtors, shall choose a maximum of three (3) members of the Creditors' Committee to serve as members of the Plan Implementation Committee, which shall have the responsibility to consult with and advise the Debtors' Representative with respect to the liquidation and distribution of the Debtors' assets in accordance with the Plan. A member of the Plan Implementation Committee shall recuse itself from considering any matter in which it is not disinterested. The Debtors shall file a notice identifying the members of the Plan Implementation Committee with the Plan Supplement. Vacancies on the Plan Implementation Committee shall be filled by a Person designated by the remaining member or members of the Plan Implementation Committee from among the holders of General Unsecured Claims. A majority of the Plan Implementation Committee may remove or replace members of the Plan Implementation Committee for cause, and any party-in-interest shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Plan Implementation Committee for cause. Any successor appointed pursuant to this Section shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor. For the avoidance of doubt, no member of the Plan Implementation Committee shall be compensated for serving as a member of the Plan Implementation Committee; provided, however, that such members may be reimbursed by the Debtors' Representative for documented reasonable out-of-pocket costs and expenses from the Post Effective Date Reserve. All communications between the Plan Implementation Committee and the Debtors' Representative shall be deemed confidential, privileged, and protected from discovery pursuant to the Bankruptcy Rules or the Federal Rules of Civil Procedure or any state equivalent.

The rights, powers and duties of the Plan Implementation Committee are as follows:

(i)    To approve any release or indemnity in favor of any third party granted or agreed to by the Debtors' Representative, other than as set forth in the Plan;

        (ii)    To consult with the Debtors' Representative regarding the commencement or continuation of the prosecution of any material Cause of Action;

        (iii)    To approve the settlement of any Cause of Action or dispute, for which the amount in controversy exceeds $250,000;

        (iv)    Consult with the Debtors' Representative regarding the Remaining Assets and the use, sale, assignment, transfer, abandonment or other disposition thereof;

        (v)    To approve any settlement of the MBNF Mediation and any Causes of Action, including without limitation the Non-Debtor Real Estate Litigation, against any of the MBNF Non-Debtor Parties;

        (vi)    To consult with the Debtors' Representative regarding the Initial Distribution Date, the Subsequent Distribution Dates and the Final Distribution Dates;

        (vii)    To review and object to fees and expenses of Professionals retained by the Debtors' Representative in accordance with the terms of the Plan;

        (viii)    To consider and, if appropriate, approve any action proposed by the Debtors' Representative that is not specifically authorized by the Plan that would have a material effect upon administration of the Estates, _provided_, _however_, nothing contained herein shall be deemed to authorize the Debtors' Representative to take any action that is inconsistent with the terms of the Plan;

        (ix)    Retain professionals (the reasonable fees and out-of-pocket expenses of which shall be paid by the Debtors' Representative from the Post-Effective Date Reserve); and

        (x)    Consult with the Debtors' Representative regarding any other matter related to the Plan and/or the implementation of the terms thereof.

Notwithstanding the foregoing or anything to the contrary in the Plan, in the event of a disagreement between the Debtors Representative and the Plan Implementation Committee, the Debtors Representative may take any of the actions described in subparagraphs (i), (iii), (vii) and (viii) above without the consent of the Plan Oversight Committee if the Debtors Representative obtains the prior approval for such action(s) from the Bankruptcy Court, on notice to the Plan Implementation Committee. The Plan Implementation Committee may oppose any request for such approval.

        (g)    <u>Insurance: Bond</u>

      The Debtors' Representative shall maintain insurance coverage with respect to the liabilities and obligations of the Debtors' Representative, the Debtors and the Plan Implementation Committee under the Plan (in the form of an errors and omissions policy or

otherwise), the cost and expense of which shall be paid by the Debtors from the Post-Effective Date Reserve.  The Debtors' Representative shall serve with a bond, the terms of which shall be agreed to by the Plan Implementation Committee and filed with the Bankruptcy Court, and the cost and expense of which shall be paid by the Debtors from the Post-Effective Date Reserve. The proposed amount and terms of such bond shall be set forth in the Plan Supplement.

(h)      Fiduciary Duties of the Debtors' Representative

Pursuant to this Plan, the Debtors' Representative shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that will receive Distributions pursuant to the terms of this Plan.

(i)      Liability of Debtors' Representative and Plan Implementation Committee: Indemnification

Neither the Debtors, the Debtors' Representative, the Plan Implementation Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Debtors' Representative or the Plan Implementation Committee, nor their respective employees, (collectively, the "Representative Parties") shall be liable for the act or omission of any other member, designee, agent, or representative of the Debtors' Representative or Plan Implementation Committee, nor shall any of the Representative Parties be liable for any act or omission taken or omitted to be taken in its capacity as a Representative Party other than for specific acts or omissions resulting from such Representative Party's willful misconduct, gross negligence or fraud.  The Debtors' Representative shall be entitled to enjoy all of the rights, powers, immunities and privileges of a representative of the Estates contemplated by Section 1123(b)(3)(B) of the Bankruptcy Code, and shall have those powers and duties set forth in Sections 323, 704(a) (1), 704(2), 704(4), 704(5), 704(7), 704(9), 704(a)(11), 1106(a)(6) and 1106(a)(7) of the Bankruptcy Code.  The Debtors' Representative or the Plan Implementation Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their attorneys, accountants, financial advisors and agents, and shall not be liable (other than for willful misconduct, gross negligence or fraud) for any act taken, omitted to be taken, or suffered to be done in accordance with written advice or opinions rendered by such persons.  The Debtors' Representative shall be entitled to all rights to indemnification provided to all officers and/or directors under the Debtors' corporate charter and/or bylaws and to the maximum extent permitted under applicable law.  In addition, the Debtors shall indemnify and hold harmless the Debtors' Representative, the Plan Implementation Committee and their members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Plan or the discharge of their duties under the Plan; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud as determined by a Final Order.  Persons dealing with the Debtors' Representative shall look only to the Debtors' assets to satisfy any liability incurred by the Debtors' Representative or

25

the Plan Implementation Committee to such person in carrying out the terms of the Plan, and neither the Debtors' Representative nor the Plan Implementation Committee shall have any personal obligation to satisfy any such liability, except for any such liability caused by willful misconduct, gross negligence or fraud as determined by a Final Order.

### D.    Continued Corporate Existence

From and after the Effective Date, the Debtors shall continue in existence for the purpose of (i) winding up their affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash or other methods, any Remaining Assets not disposed of prior to the Effective Date as expeditiously as reasonable possible, (iii) enforcing and prosecuting those Causes of Action the Debtors' Representative believes, in the exercise of his business judgment, should be enforced or prosecuted, subject to Plan Implementation Committee approval when applicable, (iv) administering the Plan, (v) filing appropriate tax returns, and (vi) dissolution. Upon the Effective Date, all transactions and other actions provided for under the Plan shall be deemed to be authorized and approved by the Debtors without any requirement of further action by the Debtors, the Debtors' members, the Debtors' shareholders or the Debtors' boards of directors.  As of the Effective Date, the Debtors' Representative shall be deemed to be the sole equity holder and the only duly authorized, board-appointed officer and manager of each of the Debtors, other than the Special Manager (who shall have such limited duties as may be set forth in the Plan Supplement), and all by-laws, articles or certificates of incorporation and related corporate documents of the Debtors shall be deemed to have been amended by the Plan to permit and authorize such sole appointment.

After the Effective Date, the Debtors' Representative shall be authorized to take, in his or her sole discretion, all actions reasonably necessary to dissolve one or more of the Debtors under applicable law, and to pay all reasonable costs and expenses in connection with such dissolution, including the costs of preparing or filing any necessary paperwork or documentation.  Upon the Final Distribution Date, any Debtors that have not been previously dissolved shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors, and the Debtors' Representative shall be authorized to file any documents as may be necessary in connection with such dissolution.  Further, upon the entry of a Final Decree or other order of the Bankruptcy Court, the Debtors' Representative shall be authorized to discard or destroy any and all of the Debtors' books and records except to the extent that such books relate to open tax years, are necessary for the completion and filing of tax returns, the analysis or prosecution of Causes of Action, or are required to be retained pursuant to an agreement of sale approved by a Sale Order and any ancillary documents or agreements entered in connection therewith.

### E.    Cancellation of Interests

Upon the occurrence of the Effective Date, Class 4 Interests shall be deemed of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order or rule.

**F.      Exemption from Certain Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to any other Person pursuant to the Plan shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state and local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**G.      The Creditors' Committee**

On the Effective Date, except as provided in this Article V(G), the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to, arising from or in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants and other agents, if any, shall terminate, except for purposes of filing and prosecuting applications for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith, or any appeal of the Confirmation Order.

**H.      Remaining Assets**

1.      **General Assets**.

On and after the Effective Date, without further approval of the Bankruptcy Court, the Debtors' Representative shall, in accordance with the Plan, liquidate the remaining property of the Debtors, including without limitation all Causes of Action (including without limitation those set forth on **Exhibit "B"** hereto) and the HPP Assets (the "Remaining Assets") and in connection therewith may use, sell, assign, transfer, abandon or otherwise dispose of at a public or private sale any of the Remaining Assets for the purpose of liquidating or converting such assets to Cash; provided, however, that nothing herein restricts the right of the Debtors' Representative to seek Bankruptcy Court approval for the sale, assignment, transfer or other disposal of the Remaining Assets after the Effective Date.

To the extent not previously authorized under a Sale Order and/or any other order(s) of the Bankruptcy Court, on and after the Effective Date, the Debtors' Representative shall be deemed authorized and empowered to fully perform under, consummate and implement any agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to consummate a sale, assignment, transfer, or other disposal of the Remaining Assets, and to take all further actions as may reasonably be requested by a purchaser or transferee for the purpose of selling, assigning, transferring, granting, conveying or conferring to a purchaser or transferee, or reducing to possession, any or all of the Remaining Assets free and clear of any and all Liens and encumbrances.

**I.      Counterclaims**

Causes of Action shall not be subject to any affirmative counterclaims; provided, however, that Causes of Action may be subject to set-off and recoupment rights to the extent, if

any, permitted by applicable law and to the extent consistent with any Order of the Bankruptcy Court and the terms of this Plan.

**J.     Post-Effective Date Costs**

From and after the Effective Date, the Debtors' Representative shall, without the necessity for any approval by the Bankruptcy Court, pay from the Post-Effective Date Reserve those fees and expenses incurred by the Debtors' Representative, the Plan Implementation Committee and the Debtors subsequent to the Effective Date in connection with the implementation and consummation of the Plan.  All fees and expenses of the Debtors' Representative, the Debtors, the Creditors' Committee, the Plan Implementation Committee and the Claims Agent, and any of their respective agents and employees and retained professionals that are incurred subsequent to the Effective Date shall be paid by the Debtors' Representative, subject to the right of the Debtors' Representative and the Plan Implementation Committee to object to the payment of such fees and expenses in accordance with Articles V(C)(b) and V(C)(e) of this Plan.  If the Debtors' Representative or the Plan Implementation Committee objects to the payment of an invoice by written notice to the Person submitting such invoice within fourteen (14) days after submission of such invoice to the Debtors' Representative, the Debtors' Representative shall pay, from the Post-Effective Date Reserve, only the non-disputed portion of the related statement, with the disputed portion payable only (a) upon agreement of the parties or (b) to the extent ordered by the Bankruptcy Court.

**K.     Preservation of Causes of Action**

In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as otherwise provided in an order of the Bankruptcy Court, the Debtors and the Debtors' Estates shall retain the Causes of Action, including but not limited to the Causes of Action identified on **Exhibit "B"** hereto.  The Debtors' Representative may settle any Cause of Action without approval from the Bankruptcy Court, subject to the approval of the Plan Implementation Committee as set forth in Articles V(C)(b) and V(C)(e) of the Plan.

For the avoidance of doubt, nothing in the Plan shall waive or otherwise affect the right of the Debtors' Representative to seek to subordinate any Claim pursuant to section 510 of the Bankruptcy Code, and all such rights are expressly preserved hereunder.

**L.     Effectuating Documents; Further Transactions**

The Debtors and the Debtors' Representative shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**M.     Reserves and Distribution Accounts**

**1.     Funding of the Reserves**

(a)     _Professional Fee Claims Reserve_.  On or as soon as practicable after the Effective Date, the Debtors' Representative shall fund the Professional Fee Claims Reserve from

Cash in the Consolidated Debtor Cash Account, in the amount set forth in the Plan Supplement or as otherwise provided in the Confirmation Order. There shall be deposited into the Professional Fee Claims Reserve an amount sufficient to enable the Debtors to pay all Allowed Professional Fee Claims.

Any Cash remaining in the Professional Fee Claims Reserve after payment of all Allowed Professional Fee Claims shall be transferred by the Debtors' Representative to the Post-Effective Date Reserve in accordance with the terms of this Plan.

The Professional Fee Claims Reserve shall at all times be maintained as a segregated account.

(b)    Post-Effective Date Reserve.  On or as soon as practicable after the Effective Date, the Debtors' Representative shall fund the Post-Effective Date Reserve from Cash in the Consolidated Debtor Cash Account, in the amount set forth in the Plan Supplement or as otherwise provided in the Confirmation Order.  There shall be deposited into the Post-Effective Date Reserve an amount sufficient to permit the consummation and implementation of the Plan and to pay the costs and expenses, including without limitation Taxes and amounts payable to Professionals, incurred after the Effective Date by the Debtors' Representative, the Debtors, the Claims Agent, the Creditors' Committee and the Plan Implementation Committee. The Debtors' Representative, in consultation with the Plan Implementation Committee, may at any time increase or decrease the amount of the Post-Effective Date Reserve.

Any Cash remaining in the Post-Effective Date Reserve after payment of, or other provision for, all actual or anticipated expenses and operating costs shall be transferred by the Debtors' Representative to the Debtors' Distribution Account.

The Post-Effective Date Reserve shall at all times be maintained by the Debtors' Representative in a segregated account.  All Cash obtained by the Debtors after the Effective Date from whatever source shall be deposited by the Debtors' Representative into the Post-Effective Date Reserve.

(c)    Debtors' SAP Reserve Account.  On or as soon as practicable after the Effective Date, the Debtors' Representative shall establish the Debtors' SAP Reserve Account and fund such account from Cash, in amount equal to the Face Amount of: (i) all Administrative Claims asserted against any of the Debtors; (ii) all Priority Tax Claims asserted against any of the Debtors, and (iii) all asserted Class 1 Priority Claims.  If and to the extent any such Administrative Claims, Priority Tax Claims, Class 1 Priority Claims and/or Class 2 Secured Claims become Disallowed, withdrawn, or reduced, the Debtors' Representative shall reduce the amount in the Debtors' SAP Reserve Account in a corresponding amount and shall transfer such amount from the Debtors' SAP Reserve Account to the Debtors' Distribution Account.

The Debtors' SAP Reserve Account shall at all times be maintained as a segregated account.

(d)    Convenience Claims Reserve.  On or as soon as practicable after the Effective Date, the Debtors' Representative shall establish the Convenience Claims Reserve from Cash, in amount equal to [____%] of the amount (as such amount may have been reduced by

election on a Holder's Ballot) of all asserted Class 3A Convenience Claims or in such other amount set forth in the Confirmation Order.  If and to the extent any such Convenience Claims become Disallowed, withdrawn, or reduced, the Debtors' Representative shall reduce the amount in the Convenience Claims Reserve in a corresponding amount and shall transfer such amount from the Convenience Claims Reserve to the Debtors' Distribution Account.

The Convenience Claims Reserve shall at all times be maintained as a segregated account.

2. **Funding of the Distribution Account**

(a) Debtors' Distribution Account.  On or as soon as practicable after the Effective Date, the Debtors' Representative shall fund the Debtors' Distribution Account in accordance with the terms of the Plan.  This account shall at all times be maintained as a segregated account.

## N. Intercompany Claims

All Claims that a Debtor may have against another Debtor shall be deemed Disallowed, cancelled and expunged upon the occurrence of the Effective Date.

## O. Tenet/Conifer Settlement

The Tenet/Conifer Settlement, as approved by Bankruptcy Court Order entered December 9, 2019 [D.I. 1118], is incorporated herein as if fully set forth, and shall remain in full force and effect from and after the Effective Date.

Without limitation of the foregoing, all provisions in the Tenet/Conifer Settlement regarding HUH Electronic Medical Records and Iron Mountain HUH Records (as such terms are defined in the Tenet/Conifer Settlement) shall remain fully binding upon the parties to the Tenet/Conifer Settlement, including without limitation Tenet (as such term is defined in the Tenet/Conifer Settlement), such that none of the Debtors shall have any further obligations regarding medical records except as may be expressly set forth in the Tenet/Conifer Settlement.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

## A. Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in the Plan, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Initial Distribution Date.  Distributions on account of Claims that first become Allowed Claims after the Initial Distribution Date shall be made pursuant to the terms and conditions of the Plan. Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court.

**B.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

      1.      **Delivery of Distributions in General**

Distributions to Holders of Allowed Claims under the Plan shall be made (a) at the addresses set forth on the Proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim is filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Debtors' Representative after the date of any related Proof of Claim, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Debtors' Representative or the Debtors have not received a written notice of a change of address.

In making Distributions under the Plan, the Debtors' Representative, or any disbursing agent retained by the Debtors' Representative with the consent of the Plan Implementation Committee, may rely upon the accuracy of the claims register maintained by the Claims Agent in the Chapter 11 Cases and the Schedules, as may be modified by any Final Order of the Bankruptcy Court Allowing or Disallowing Claims in whole or in part.

      2.      **Undeliverable and Unclaimed Distributions**

Any Holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed Distribution, including checks not returned as undeliverable but which remain unnegotiated, within one hundred twenty (120) days after the date on which the Distribution is made: (a) shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution; (b) may, in the sole discretion of the Debtors' Representative, be barred from receiving further Distributions under the Plan on account of such claim; and (c) shall be forever barred and enjoined from asserting any claim for an undeliverable or unclaimed Distribution against the Debtors' Representative, the Debtors and their Estates or the Plan Implementation Committee and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall be added to the funds in the Post-Effective Date Reserve, notwithstanding any federal or state escheat laws to the contrary, and shall be distributed in accordance with the terms of the Plan. Nothing contained in the Plan shall require the Debtors, the Debtors' Representative, or his or her respective agents and professionals to attempt to locate any Holder of an Allowed Claim.

**C.      Workers Compensation Claims**

Notwithstanding anything to the contrary set forth herein, Workers Compensation Claims shall be paid solely from any applicable Insurance Policy of any of the Debtors, from any applicable state's workers compensation fund, agency or program, or from such other third party source as provided under applicable law. No Holder of a Workers Compensation Claim shall receive any payment under the Plan from any Debtor.

**D.      Means of Cash Payment**

Cash payments made pursuant to the Plan shall be in U.S. dollars and shall be made at the option and in the sole discretion of the Debtors' Representative by (i) checks drawn on, or

(ii) wire transfers from, a domestic bank selected by the Debtors' Representative.  In the case of foreign creditors, Cash payments may be made, at the option of the Debtors' Representative, in such funds and by such means as are necessary or customary in a particular jurisdiction.

**E.      Interest on Claims**

Unless otherwise specifically provided for herein, in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

**F.      Withholding and Reporting Requirements**

In accordance with section 346 of the Bankruptcy Code and in connection with the Plan and all Distributions hereunder, the Debtors shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority.  The Debtors' Representative shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.

All Distributions hereunder shall be subject to withholding and reporting requirements. As a condition of making any Distribution under the Plan, the Debtors' Representative may require the Holder of an Allowed Claim to provide such Holder's taxpayer identification number and such other information, certification or forms, if and as required to comply with applicable tax reporting and withholding laws.  If a Holder of an Allowed Claim fails to provide such information after two written requests, failure to comply may result in the Debtors' Representative seeking an order of the Bankruptcy Court disallowing such Claims. Notwithstanding any other provision of the Plan, each entity receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

**G.      Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims**

**1.      Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Debtors' Representative shall have the sole authority, subject to the rights and duties of the Plan Implementation Committee as set forth herein, to (a) file, withdraw or litigate to judgment objections to Claims, (b) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court, and (c) amend the Schedules in accordance with the Bankruptcy Code and the Local Rules.

**2.      Objection Deadline; Prosecution of Objections; Claim Estimation**

Except as set forth herein with respect to Professional Fee Claims and Administrative Claims, all objections to Claims must be filed on or before the Claims Objection Deadline (as such deadline may be extended hereunder).  If an objection has not been filed or the Schedules have not been amended with respect to a Claim by the Claims Objection Deadline (as the Claims

Objection Deadline may be extended hereunder), the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been Allowed earlier. The Debtors' Representative shall be the sole Person with the right and standing to object to Claims. The Debtors' Representative shall have the right to seek an order of the Bankruptcy Court estimating any contingent or unliquidated Claim.

3.    **Late Filed Claims**

Pursuant to the Bar Date Order, any Person that is required but failed to file a Claim or application with respect to a Claim before the applicable Bar Date in compliance with the procedures set forth in the Bar Date Order shall not be treated as a creditor with respect to such Claim for purposes of voting on, and distribution under, the Plan. In the event a late Claim filed after the Effective Date is deemed timely filed, the Debtors' Representative shall have one hundred twenty (120) days from the date the Holder is permitted to file the Claim to file an objection to such Claim.

4.    **No Distributions Pending Allowance**

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtors on account of a Cause of Action, the Debtors' Representative may withhold all Distributions to such Holder until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

5.    **Distributions After Allowance**

Distributions to each respective Holder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with provisions of the Plan that govern Distributions to such Holders.

6.    **De Minimis Distributions**

The Debtors' Representative shall have no obligation to make a Distribution on account of an Allowed Claim or otherwise if the amount to be distributed to the specific Holder of the Allowed Claim on the Initial Distribution Date, Subsequent Distribution Date or Final Distribution Date is less than $50.00.

7.    **Fractional Dollars**

Any other provision of the Plan notwithstanding, the Debtors' Representative shall not be required to make Distributions of fractions of dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

33

**H.**     **Allocation of Plan Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

**I.**     **Distribution Record Date**

The Debtors' Representative shall have no obligation to recognize the transfer of or sale of any participation in any Claim that occurs after the close of business on the Distribution Record Date, and shall be entitled for all purposes regarding the Plan to recognize and distribute only to those Holders of Claims who are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.  Instead, the Debtors' Representative shall be entitled to recognize and deal for all purposes under the Plan with only those record Holders stated on the official claims register as of the close of business on the Distribution Record Date.

**J.**     **De Minimis Fund Distribution**

In the event a Final Distribution under the Plan is not, in the judgment and discretion of the Debtors' Representative, in consultation with the Plan Implementation Committee, economically warranted with respect to one or more Classes given the cost of making such Final Distribution relative to the benefits to the Holders of Claims, the Debtors' Representative may cause any amount that would have been subject to such Final Distribution to be paid to any organization qualified under section 501(c)(3) of the Internal Revenue Code agreed to by the Debtors' Representative and the Plan Implementation Committee or determined by the Bankruptcy Court.  Notwithstanding the foregoing, the amount to be paid to a charitable organization pursuant to this subsection shall not be in excess of $25,000, without prior Bankruptcy Court approval.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     **Rejected Contracts and Leases**

Except as otherwise provided in the Confirmation Order, the Plan, or in any other Plan Document, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code rejecting any pre-petition executory contract and unexpired lease to which any of the Debtors are a party, to the extent such contract or lease is an executory contract or an unexpired lease, as of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtors, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, (c) is the subject of a pending motion to assume or reject on the Confirmation Date, or (d) is assumed pursuant to Article VII(C) hereof.

B.      **Bar to Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors or their respective successors, properties or Estates unless a Proof of Claim is filed and served on the Debtors' Representative and counsel for the Debtors' Representative within thirty (30) days after service of a notice of the Effective Date or such other date as is prescribed by the Bankruptcy Court.

C.      **Assumed and Assigned Contracts and Leases**

Except as otherwise provided in the Confirmation Order, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code assuming, as of the Effective Date, those executory contracts and unexpired leases, if any, listed on the Schedule of Assumed Contracts and Leases, which schedule shall be attached hereto as **Exhibit "C"** or included in the Plan Supplement.  The Debtors reserve the right, prior to the Confirmation Hearing, to amend the Schedule of Assumed Contracts and Leases to add or remove any executory contract or unexpired lease.

The Cure Amounts payable with respect to any executory contracts or unexpired leases listed in the Schedule of Assumed Contracts and Leases are listed in the schedule.  Any Cure Amounts shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code by payment of the Cure Amounts, as reflected in the Schedule of Assumed Contracts and Leases, in Cash on the Effective Date, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

Any counterparty to an executory contract or unexpired leases reflected in the Schedule of Assumed Contracts and Leases shall have the time prescribed by the Disclosure Statement Order to object to the proposed Cure Amount listed in the notice.  Any counterparty to an executory contract or unexpired lease that fails to timely object to the proposed assumption or the Cure Amount (i) shall be deemed to have assented to such assumption or Cure Amount, notwithstanding any provision thereof that purports to (a) prohibit, restrict or condition the transfer or assignment of such contract or lease or (b) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or Post-Effective Date Debtors, or terminating or modifying such contract or lease on account of transactions contemplated by the Plan, and (ii) shall be forever barred, estopped and enjoined from challenging the validity of such assumption thereafter.

Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the Post-Effective Date Debtors in accordance with its terms, except as modified by the provisions of the Plan, any Final Order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

**D.      Insurance Policies**

Notwithstanding anything to the contrary contained in the Plan, all Insurance Policies shall remain in full force and effect unless otherwise validly terminated, and issuers of such Insurance Policies shall remain responsible for Claims, in accordance with the terms and provisions of such Insurance Policies.  The Debtors do not consider Insurance Policies that have expired as of the Effective Date (whether or not entered into prior or subsequent to the Petition Date) to be executory contracts subject to assumption or rejection.  However, the issuers of Insurance Policies shall be responsible for continuing coverage obligations thereunder, regardless of the payment status of any retrospective or other insurance premiums.  Nothing in the Plan shall constitute or be deemed to be a waiver of any Cause of Action that any Debtor may hold against Persons, including, without limitation, any issuer under any Insurance Policy of any of the Debtors.

**ARTICLE VIII**
**CONFIRMATION AND CONSUMMATION OF THE PLAN**

**A.      Conditions to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing by the Debtors and the Creditors' Committee:

1.      The Confirmation Order shall have been entered by the Bankruptcy Court and shall provide that the Debtors and the Debtors' Representative are authorized to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Plan or effectuate, advance or further the purposes thereof.

2.      The Debtors have sufficient Cash available to fully fund the Professional Fee Claims Reserve, the Post-Effective Date Reserve, the Debtors SAP Reserve Account and the Convenience Claims Reserve, in accordance with the Plan.

3.      Any Causes of Action, including without limitation the Non-Debtor Real Estate Litigation, against any of the MBNF Non-Debtor Parties that is pending on the Confirmation Date has been resolved by Final Order.

**B.      Consequences of Non-Occurrence of Effective Date**

At any time prior to the occurrence of the Effective Date and the substantive consummation of the Plan, the Debtors, in consultation with the Creditors Committee, may modify the Plan in accordance with, and subject to, section 1127 of the Bankruptcy Code.

## ARTICLE IX
## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

**A.      Final Fee Applications**

All Final Fee Applications must be filed no later than forty-five (45) days after the Effective Date.  Objections, if any, to Final Fee Applications of such Professionals must be filed and served on the Debtors, their counsel, the requesting Professional and the United States Trustee no later than twenty-one (21) days from the date on which each such Final Fee Application is served and filed.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.  Allowed Professional Fee Claims shall be paid as set forth in Article III(A)(1).

**B.      Employment of Professionals after the Effective Date**

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code or any order previously entered by the Bankruptcy Court in seeking retention or compensation for services rendered or expenses incurred after such date will terminate.

**C.      Administrative Claim Bar Date**

Unless expressly provided otherwise herein, all requests for payment of an Administrative Claim, other than (i) Claims arising under 28 U.S.C. § 1930, (ii) Administrative Claims described in section 503(b)(1)(B) or (C) of the Bankruptcy Code and (iii) Claims asserting Administrative Claim priority status under section 503(b)(9) of the Bankruptcy Code must be filed with the Court and served on counsel for the Debtors' Representative no later than thirty (30) days from and after service of the notice of the Effective Date of the Plan (the "Administrative Claim Bar Date").  Unless the Debtors or any other party in interest objects to an Administrative Claim by the Claims Objection Deadline (as such deadline may be extended in accordance with the terms set forth herein), such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtors or any other party in interest objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim, if any.

Notwithstanding the foregoing, Holders of Secured Lender Claims shall not be required to file or serve any request for payment of such Administrative Claims.  Such Administrative Claims are allowed in the amount agreed upon between the Debtors and the DIP Secured Parties, as specified in the DIP Credit Agreement and the DIP Orders, and shall be satisfied pursuant to Article III(C).

## ARTICLE X
## EFFECT OF PLAN CONFIRMATION

**A.      Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, and their respective successors and assigns.

**B.      No Discharge of the Debtors**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will <u>not</u> discharge Claims against the Debtors; <u>provided</u>, <u>however</u>, that, other than as provided in any agreement, no Holder of a Claim or Interest may, on account of such Claim or Interest, seek or receive any payment or other distribution from, or seek recourse against, any of the Debtors and/or its respective successors, assigns and/or property, including but not limited to the Debtors' Representative, except as expressly provided in the Plan.

**C.      Releases by the Debtors**

**ON THE EFFECTIVE DATE, THE DEBTORS, ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE ESTATES, SHALL RELEASE UNCONDITIONALLY, AND HEREBY ARE DEEMED TO FOREVER RELEASE UNCONDITIONALLY THE CREDITORS' COMMITTEE, THE MEMBERS OF THE CREDITORS' COMMITTEE (BUT SOLELY IN THEIR CAPACITY AS SUCH), THE INDEPENDENT MANAGERS AND THE CREDITORS' COMMITTEE'S AND THE DEBTORS' RESPECTIVE AGENTS, ADVISORS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, ATTORNEYS AND OTHER REPRESENTATIVES (INCLUDING WITHOUT LIMITATION THE DEBTORS' CHIEF RESTRUCTURING OFFICER AND EISNERAMPER LLP), SOLELY IN THEIR RESPECTIVE CAPACITIES AS SUCH, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER (OTHER THAN THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, TO THE DEBTORS UNDER THE PLAN, AND THE CONTRACTS, INSTRUMENTS, RELEASES AND OTHER AGREEMENTS DELIVERED UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, DIRECTLY OR DERIVATIVELY, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE PLAN OR THE DISCLOSURE STATEMENT; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN IS INTENDED TO OR SHALL OPERATE AS A RELEASE OF (I) ANY CLAIMS FOR WILLFUL MISCONDUCT, FRAUD OR GROSS NEGLIGENCE, AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION OR (II) ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF**

**ACTION AND LIABILITIES WHATSOEVER AGAINST ANY OF THE MBNF NON-DEBTOR PARTIES OR HSRE.**

**D.     Injunction**

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN ANY OF THE DEBTORS ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST ANY DEBTOR OR ITS ESTATE, OR ANY OF ITS PROPERTY, OR THE DEBTORS' REPRESENTATIVE OR EISNERAMPER LLP ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO ANY OF THE DEBTORS; (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN; AND (F) TAKING ANY ACTIONS WHICH INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING AND/OR ENFORCING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN, THE CONFIRMATION ORDER OR A SALE ORDER.**

**E.     Term of Bankruptcy Injunction or Stays**

**ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT.**

**F.     Debtors, Debtors' Representative, Creditors' Committee and Plan Implementation Committee Release of DIP Secured Parties**

As of the Effective Date, the Creditors' Committee, the Debtors and their Estates, the Debtors' Representative, the Plan Implementation Committee and any respective successors and assigns of the Creditors' Committee, the Debtors, and/or their Estates, the Debtors' Representative, and the Plan Implementation Committee (each a "Releasing Party" and collectively, the "Releasing Parties"), and their respective agents, affiliates, subsidiaries, parent entities, predecessors-in-interest, beneficiaries, designees, attorneys, representatives, trustees, EisnerAmper LLP and all other persons that may be acting for or on behalf of a Releasing Party, and any and all persons who may purport to claim by, through or for a Releasing Party, including, without limitation, all present and former officers, directors, restructuring officers, professionals and employees, shall and do hereby forever waive, release and discharge each DIP

Secured Party and any of their affiliates, together with their respective present and former agents, representatives, officers, members, directors, shareholders, professionals and employees (collectively with each DIP Secured Party and any of their affiliates, the "Released DIP Secured Parties") of and from any and all obligations, rights, claims, liabilities, actions, causes of action, suits, demands, costs, expenses, losses, cross-claims, counterclaims, controversies, damages, bankruptcy claims, and claims of any kind, nature and character whatsoever whether at law or equity or otherwise, whether based on contract (including without limitation, quasi-contract, estoppel, statute, regulation, tort (including, without limitation, intentional torts, fraud, recklessness, gross negligence and willful misconduct) or otherwise, accrued or unaccrued, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, known or unknown, foreseen or unforeseen, whether held directly or derivatively, that any of the Releasing Parties has, had or may have, as of the Effective Date, against any Released DIP Secured Party with respect to, or relating or arising in connection with, any of the Debtors or the Estates, the Chapter 11 Cases, the Plan, any Plan Document, the Disclosure Statement, the DIP Credit Agreement, the DIP Orders, the Pre-Petition Credit Documents (as used and defined in the DIP Credit Agreement), and/or any transaction proposed in connection with any of the foregoing (in each case, including, without limitation, the negotiation, consideration, formulation, preparation, dissemination, implementation, confirmation or consummation of any of the foregoing or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any obligations arising under any of the foregoing); provided, however, that nothing contained herein shall affect the obligations of the DIP Agent or the rights of the Debtors and the Debtors' Representative under Article III(C) hereof and all enforcement rights related thereto.

## G.    Levy, Garnishment and Attachment

Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment or like legal process by any Holder of Claim by reason of any subordination rights or otherwise, so that each Holder of Claim shall have and receive the benefit of the Distributions in the manner set forth in the Plan.

## H.    Exculpation and Limitation of Liability

**Except as otherwise specifically provided in the Plan, including without limitation in Article V(K) and Exhibit "B" attached hereto, each of the Debtors, the Debtors' Chief Restructuring Officer, EisnerAmper LLP, the Independent Managers and the Debtors' Professionals, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents, and any of such parties' successors and assigns, the Creditors' Committee, the members of the Creditors' Committee (but solely in their capacity as such) and the Professionals of the Creditors' Committee, shall not be liable for any claim, action, proceeding, Cause of Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment or Claim (as defined in section 101(5) of the Bankruptcy Code), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise to one another or to any Holder of a**

Claim or Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or any of their successors or assigns, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and filing of the Plan or any prior plans, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan or any prior plans, any Sale Order, the consummation of the Plan and the administration of the Plan or the property to be liquidated and/or distributed under the Plan, except for willful misconduct, gross negligence or fraud as determined by a Final Order of a court of competent jurisdiction.

Notwithstanding the foregoing or any other provision of this Plan, and for the avoidance of doubt, nothing contained herein shall in any way operate to exculpate or limit the liability of Joel Freedman or any of the other MBNF Non-Debtor Parties.

**I.      Indemnification Obligations**

Except as otherwise provided in the Plan, any Sale Order, other order of the Bankruptcy Court, or any contract, instrument, release or other agreement or document entered into in connection with the Plan, any and all indemnification obligations that any of the Debtors has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document or applicable law shall be deemed rejected (if and to the extent executory) as of the Effective Date.

**J.      Confirmation Order**

Confirmation of the Plan shall be deemed to ratify all transactions undertaken by the Debtors during the period commencing on the Petition Date and ending on the Effective Date except for any acts constituting willful misconduct, intentional misconduct, gross negligence or fraud as determined by a Final Order of a court of competent jurisdiction.

## ARTICLE XI
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the Allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under sections 507(a)(l) or 507(a)(2) of the Bankruptcy Code, including compensation of any reimbursement of expenses of parties entitled thereto;

41

2.      Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that, except as otherwise provided in the Plan, from and after the Effective Date, the payment of the fees and expenses of the Debtors' Representative and the Debtors and their retained agents and employees and professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

3.      Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.      Effectuate performance of and payments under the provisions of the Plan;

5.      Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Chapter 11 Cases or the Plan;

6.      Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

7.      Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan including, without limitation the Plan Documents;

8.      Consider any modifications of the Plan and any implementing documents, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

10.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

11.     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

12.     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

13. Except as otherwise limited by the Plan, hear and determine proceedings seeking the recovery of assets of the Debtors and property of the Estates;

14. Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

15. Hear and determine all matters related to the property of the Estates;

16. Hear and determine all Causes of Action, including without limitation the Non-Debtor Real Estate Litigation, against any of the MBNF Non-Debtor Parties;

17. Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan and any Sale Order;

18. Hear and determine all disputes or other matters arising in connection with the interpretation, implementation or enforcement of any Sale Order;

19. Hear and determine matters related (i) the property of the Estates from and after the Confirmation Date, (ii) the winding up of the Debtors' affairs, (iii) the resignation, incapacity or removal of the Debtors' Representative and members of the Plan Implementation Committee; and (iv) the release of the Debtors' Representative;

20. Hear and determine disputes with respect to the compensation of Professionals;

21. Hear and determine all disputes involving the existence, nature and/or scope of the injunctions and releases provided by the Plan;

22. Hear and determine all disputes relating to any liability arising out of any termination of employment or the termination of any employee or retiree benefit provision, regardless of whether such termination occurred prior to or after the Effective Date;

23. Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

24. Enforce all orders previously entered by the Bankruptcy Court; and

25. Enter one or more Final Decrees closing one or more of the Chapter 11 Cases.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### A.    Modifications and Amendments

The Debtors may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to the Effective Date, the Debtors, in consultation with the Creditors' Committee, may, under section 1127(b) of the Bankruptcy Code, institute proceedings

43

in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims and Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.  To the extent of any conflict between the Disclosure Statement and the Plan, the provisions of the Plan shall control.

**B.** **Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

**C.** **Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, then the Bankruptcy Court, at the request of the Debtors, in consultation with the Creditors' Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**D.** **Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

**E.** **Payment of Statutory Fees**

Notwithstanding anything to the contrary contain herein, all fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter, irrespective of lack of compliance with the requirements of Article IX(C) hereof, including without limitation any requirement in Article IX(C) to file Administrative Claims on or before the Administrative Claim Bar Date.  The Debtors shall pay all required quarterly fees to the United States Trustee until each of the Debtors' Chapter 11 Cases is closed or converted and/or is subject to a Final Decree.  The Debtors' Representative shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the United States Trustee Guidelines. The United States Trustee shall not be required to file a request for payment of its quarterly fees.

**F.     Revocation**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans.  The Debtors, in consultation with the Creditors' Committee, may withdraw this Plan as to one or more of the Debtors but seek confirmation of the Plan as to the remaining Debtors.

**G.     Service of Documents**

Any notice, request or demand required or permitted to be made or provided to or upon the Debtors, the Debtors' Representative, the Creditors' Committee and/or the Claims Agent shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail or (v) e-mail, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by e-mail, when received and telephonically confirmed and (d) addressed as follows:

**The Debtors:**

Center City Healthcare, LLC
c/o Allen Wilen, CPA, CFA, CTP
EisnerAmper LLP
One Logan Square
130 North 18th Street, Suite 3000
Philadelphia, PA 19103

With a copy to:

Saul Ewing Arnstein & Lehr LLP
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Attn:    Mark Minuti, Esquire
         Monique B. DiSabatino, Esquire
         Telephone:  (302) 421-6800
         Facsimile:  (302) 421-5873
         mark.minuti@saul.com
         monique.disabatino@saul.com

and

Saul Ewing Arnstein & Lehr LLP
1500 Market Street, 38th Floor
Philadelphia, PA  19102
Attn:   Jeffrey C. Hampton, Esquire
        Adam H. Isenberg, Esquire
        Telephone:  (215) 972-7777
        Facsimile:  (215) 972-7725
        jeffrey.hampton@saul.com
        adam.isenberg@saul.com

**The Creditors' Committee:**

Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102
Attn:   Andrew H. Sherman, Esquire
        Boris I. Mankovetskiy, Esq.
        Telephone: (973) 643-7000
        Facsimile: (973) 643-6500
        asherman@sillcummis.com
        bmankovetskiy@sillscummis.com

and

Fox Rothschild LLP
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
Attn:   Seth A. Niederman, Esquire
        Telephone: (302) 654-7444
        Facsimile: (302) 656-8920
        sneiderman@foxrothschild.com

**The Debtors' Representative:**

Center City Healthcare, LLC
c/o Allen Wilen, CPA, CFA, CTP
EisnerAmper LLP
One Logan Square
130 North 18th Street, Suite 3000
Philadelphia, PA 19103

**The Plan Implementation Committee**

[TBD]


**H.      Plan Exhibits**

Any and all Plan Exhibits, the Plan Supplement or other lists or schedules not filed with the Plan shall be filed with the Bankruptcy Court in accordance with the deadlines established by the Disclosure Statement Order.

**I.      Closing of the Chapter 11 Cases**

On or after the occurrence of the Effective Date, the Post-Effective Date Debtors may submit a proposed final decree order to the Bankruptcy Court under certification of counsel, closing any or all of the Chapter 11 Cases and amending the case caption accordingly as of the Effective Date.  For the avoidance of doubt, the closing of any particular Debtor's Chapter 11 Case shall not have any effect, in any manner, on any Causes of Action that may be asserted in accordance with the Plan.  As to any Debtor for which the Chapter 11 Case is closed, any and all recourse for any Claims, Interests or equitable relief with respect to such Debtor shall proceed exclusively in the remaining Chapter 11 Case(s) in accordance with the Plan and any Final Orders entered in the Chapter 11 Cases.  No statutory fees shall be due or payable on account of any Debtor for which a final decree has been entered.

**J.      Tax Reporting and Compliance**

The Debtors' Representative and/or the Debtors shall be deemed authorized to request an expedited determination under section 505(b) of the Bankruptcy Code, or otherwise, of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**K.      Special Environmental Provisions**

Nothing in the Plan discharges, releases, precludes, or enjoins: (i) any environmental liability to any Governmental Unit that is not a Claim as defined in 11 U.S.C. § 101(5); (ii) any environmental Claim of any Governmental Unit arising on or after the Effective Date; (iii) any environmental liability to any Governmental Unit on the part of any entity as the owner or operator of property after the Effective Date; or (iv) any liability to the United States on the part of any entity other than a Debtor.  Nothing in the Plan divests any tribunal of any jurisdiction it may have under environmental law to interpret the Plan.

**L.      Filing of Additional Documents**

On or before substantial consummation of this Plan, the Debtors may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**M.**     **2002 List**

On and after the Effective Date, the Claims Agent shall maintain the list of parties entitled to receive notices in these Chapter 11 Cases in accordance with Local Rule 2002-1(b) (the "2002 List").  Any party that desires to remain on the 2002 List shall, within thirty (30) days after the Effective Date, file a renewed request for receipt of notices and serve copies of such request by mail upon the Claims Agent and the Debtors' Representative.   The Debtors' Representative may remove from the 2002 List any party that does not file and serve a renewed request within 30 days after the Effective Date, provided, however, that the Office of the United States Trustee for the District of Delaware shall remain on the 2002 List without the need to file a renewed request for receipt of notices.  Any party removed from the 2002 List in accordance with this paragraph shall be added back to the 2002 List promptly upon the filing and service of a renewed request by such party in accordance with this paragraph.

Dated:  December 30, 2020

> Center City Healthcare, LLC, Philadelphia Academic Health System, LLC, St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, HPS of PA, L.L.C., SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., TPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., TPS IV of PA, L.L.C., and TPS V of PA, L.L.C.
>
> By:      _/s/ Allen Wilen_____
>           Name: Allen Wilen
>           Title: Chief Restructuring Officer

**List of Exhibits**

Exhibit "A" – Tenet/Conifer Settlement

Exhibit "B" – Preserved Causes of Action

Exhibit "C" – Schedule of Assumed Contracts and Leases