**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11466 (MFW)<br><br>Jointly Administered<br><br>Hearing Date: April 16, 2021 at 11:30 a.m. (ET)<br>Obj. Deadline: March 12, 2021 at 4:00 p.m. (ET) |

**MOTION OF MASTER LANDLORDS TO**
**MODIFY THE AUTOMATIC STAY**

PAHH New College MOB, LLC, PAHH Wood Street Garage, LLC, PAHH Feinstein MOB, LLC, and PAHH Broad Street MOB, LLC (collectively, the "Master Landlords")[2] hereby file this motion (the "Motion") for entry of an order (the "Proposed Order"), a copy of which is attached hereto as **Exhibit A**, modifying the automatic stay so that the Master Landlords may terminate the Debtors' interest in the Master Leases between each Master Landlord and St. Christopher's Healthcare, LLC ("STC"), each dated as of January 11, 2018 (collectively, the "Master Leases"), all of which were rejected pursuant to the *Order Approving Stipulation Between Debtors and Master Landlord Regarding Rejection of Leases and Allowed Administrative Expense Claim* [D.I. 1057] (the "Rejection Stipulation"), entered by this Court on November 25, 2019. In further support of this Motion, the Master Landlords respectfully submit:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] PAHH Bellet MOB, LLC was previously granted relief from the stay by the *Emergency Order Modifying the Automatic Stay* entered by this Court on October 22, 2020 [D.I. 1851].

**JURISDICTION, VENUE, AND PREDICATES FOR RELIEF**

1. The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2. The statutory bases for the relief requested herein are sections 362(d)(1) and 365(d) of title 11 of the United States Code (the "Bankruptcy Code") and rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

3. On June 30 and July 1, 2019 (collectively, the "Petition Date"), each Debtor filed with the Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing collectively the above-captioned chapter 11 cases.

4. No trustee or examiner has been appointed and the Debtors continues to operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. A full description of the Debtors' prepetition business structure is included on the Debtors' *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2], filed on the Petition Date.

5. The Master Landlords own medical office buildings and parking facilities (referred to herein as "Master Lease Properties"), which are adjacent to or near Hahnemann University Hospital ("HUH").

6. As of January 11, 2018, STC entered into the Master Leases. In connection therewith, certain non-Debtor affiliates entered into guarantees of the Master Leases (the "ML Guarantees").

7. Article 12 of the Master Leases provides the lessor with several remedies that it may exercise based on the occurrence of an event of default, or the tenant's failure to comply with the provisions of the Master Leases. Upon notice, the Master Landlords may terminate the Master Leases upon issuing written notice of termination, in which case the premises shall be immediately surrendered.

8. On August 30, 2019, the Debtors filed the *Fifth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Unexpired Real Estate Leases* [D.I. 620], which sought entry of an order authorizing the Debtors to reject, among other things, the Master Leases.

9. On September 13, 2019, the Master Landlords filed their *Limited Objection of Master Landlords to the Fifth Omnibus Motion of the Debtors for Entry of an Order Authorizing the Rejection of Certain Unexpired Real Estate Leases* [D.I. 719].

10. After a period of litigation and negotiation, the Debtors and the Master Landlords, among others, entered into the Rejection Stipulation. This Court entered an order approving the Rejection Stipulation on November 25, 2019 [D.I. 1057].

11. The Debtors have surrendered their leasehold interest in the Master Lease Properties.

12. The Master Landlords intend to sell the Master Lease Properties on or about June 1, 2021. The purchaser of the Master Lease Properties requires that the Master Lease Properties be free and clear of all interests, and, therefore, the Master Landlords now seek to terminate the Master Leases.

## RELIEF REQUESTED

13. By this Motion, the Master Landlords seek entry of an order, out of an abundance of caution, substantially in the form annexed hereto as **Exhibit A**, modifying the automatic stay to allow the Master Landlords to terminate the Master Leases.

## BASIS FOR RELIEF REQUESTED

14. Because the Debtors no longer have any interest in the Master Leases or the Master Lease Properties, there is cause to lift the stay. Section 362(d) of the Bankruptcy Code provides:

> On request of a party in interest, and after notice and a hearing, the court shall grant relief from the automatic stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or modifying such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

15. Courts in the Third Circuit assess "cause" under this section on a case-by-case basis. *See In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009) ("The term 'cause' as used in § 362(d)(1) is undefined; courts have ruled that whether there is cause to lift the automatic stay must be determined on a case-by-case basis."). "In order to establish cause for relief under section 362(d)(1), 'the party seeking relief from the stay must show that "the balance of hardships from not obtaining relief tips significantly in [its] favor.'" *In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006) (quoting *Atl. Marine, Inc v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003)). A "lack of any connection with or interference with the pending bankruptcy case" may also constitute "cause." *DBSI, Inc.*, 407 B.R. at 167 (quoting *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir.1990)).

16. When seeking stay relief related to property, it is the landlord's burden to show that the Debtor no longer has any interest in the property. *RNI Wind Down Corp.*, 348 B.R. at

299 ("Section 362(g) of the Bankruptcy Code provides that the party requesting relief from the automatic stay has the burden of proof on the question of the debtor's equity in property . . . .").

17.     The primary effect of rejection of an unexpired lease that has not been previously assigned is that "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease . . . immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1). Even though "a rejection and surrender of a nonresidential real property lease is a breach of the lease and not a termination thereof," rejection eliminates certain leasehold rights, including possessory rights, which are no longer property of the debtor's estate. *In re Teleglobe Commc'ns Corp.*, 304 B.R. 79, 83 (D. Del. 2004); *see In re Overseas Shipholding Grp., Inc.*, No. 12-20000, 2015 WL 3475727, at *3 (Bankr. D. Del. June 1, 2015) (citing *Chatlos Sys., Inc. v. Kaplan*, 147 B.R. 96, 98 (D. Del. 1992)) ("[O]nce a debtor rejects a lease he must surrender possession of the premises to the landlord."). "Because the deemed rejection of a lease terminates a debtor's possessory right to the leased premises, that possessory right is no longer property of the estate at the time of dismissal and it cannot revest in a debtor." *In re Scarborough-St. James Corp.*, No. 15-10625 (LSS), 2015 WL 5672628, at *4 (Bankr. D. Del. Sept. 24, 2015) (citing *In re Tri–Glied, Ltd.*, 179 B.R. 1014, 1021 (Bankr. E.D.N.Y. 1995)); *see also* 11 U.S.C. § 365(d)(4)(A) (providing that a lessee under a lease of nonresidential real property that is "deemed rejected" must "immediately surrender that that nonresidential real property to the lessor.").

18.     Allowing a modification of the automatic stay for a landlord to proceed against a lease that has long been rejected is also consistent with the principle that relief from the stay is appropriate to terminate an executory contract that cannot be assumed or assigned. *See In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) (finding that, where an

executory contract cannot be assumed, "the non-debtor party to the contract is entitled to relief from the automatic stay pursuant to Section 362(d)(1) in order to seek termination of the contract."); *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 48 (Bankr. D. Del. 1999) (citing *West Elecs., Inc.*, 852 F.2d 79, 82 (3d Cir. 1988) ("Because the debtor could not assume the contract, the Court held that relief from the stay should be granted to permit the government to terminate the contract.").

19. Here, it is clear that there will be no impact on the bankruptcy estates if the Master Landlords are granted relief from stay to terminate the Master Leases, as was the case upon the termination of the Bellet Master Lease. The Debtors rejected the Master Leases over a year ago and the Debtors' access period to space in other buildings, to which the Master Landlords stipulated, has since expired. Accordingly, the Debtors' remaining interest, if any, in the Master Lease Properties does not provide value to the estates.

20. On the other hand, it would prejudice the Master Landlords to deny their ability to terminate the Master Leases. While the Debtors have no remaining interest in the Master Lease Properties, preventing the Master Landlords from executing the sale of the Master Lease Properties free and clear of any interest would be materially prejudicial to the Master Landlords.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

21. Cause, therefore, exists to modify the automatic stay to allow the Master Landlords to exercise their rights under the Master Leases and applicable law to terminate the Master Leases. Because the Debtors no longer have any interest in the Master Lease Properties, the impact on the estate is small, while the burden of preserving the rejected Master Leases on the Master Landlords is great. Accordingly, the Master Landlords respectfully request that the Court enter an order lifting the automatic stay to allow the Master Landlords to terminate the Master Leases.

Dated: February 26, 2021
       Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Stuart M. Brown*
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@us.dlapiper.com

-and-

Richard A. Chesley (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: Richard.Chesley@us.dlapiper.com

*Counsel to the Master Landlords*