**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (MFW) |
|  | ) Jointly Administered |
| Debtors. | ) |

**MOTION OF TENET BUSINESS
SERVICES CORPORATION FOR AN ORDER
(I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY, OR
(II) IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY**

Tenet Business Services Corporation ("**Tenet**"), by and through its undersigned counsel, submits this motion (this "**Motion**") for an order, substantially in the form attached hereto as **Exhibit A**, confirming that the automatic stay does not apply with respect to the filing of an adversary complaint, the form of which is attached hereto as **Exhibit B** (the "**Adversary Complaint**"), against Center City Healthcare, LLC (d/b/a Hahnemann University Hospital) ("**Center City**"), one of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), or, in the alternative, to the extent such relief is required, for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to permit Tenet to file the Adversary Complaint. In support of this Motion, Tenet respectfully states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

**Preliminary Statement**[2]

1. The relationship between Tenet and the Debtors has been a focal point of these chapter 11 cases since their inception over a year and half ago, and Tenet's accommodations of the Debtors date back even further. Since 2017, when Tenet sold the Hospitals to the Debtors and entered the Transition Services Agreement, Tenet, along with its affiliate Conifer Revenue Cycle Solutions, LLC, has upheld its end of its bargain with the Debtors and provided uninterrupted information management services at the Hospitals in what was supposed to be a transitionary arrangement. The Debtors, in contrast, defaulted on their obligations almost immediately and have strung Tenet along ever since. Notwithstanding the Debtors' track record, for the good of the Hospitals' constituents, Tenet *to this day* has continued to provide uninterrupted services and has attempted to work with the Debtors throughout these chapter 11 cases to reach an optimal outcome for all parties involved.

2. In November 2020, Tenet learned that certain reimbursements from the Centers for Medicare and Medicare Services that were associated with Tenet's operation of the Hospitals were being processed and would be remitted to the Debtors. These reimbursements, which Tenet expressly retained its legal rights to as part of the sale, total approximately ***$3.6 million***. Upon learning of the scheduled reimbursements, Tenet promptly contacted the Debtors and had its counsel engage with the Debtors' counsel regarding the same. Despite phone calls, e-mails, and formal letters, the Debtors have neither remitted the reimbursements to Tenet nor meaningfully engaged regarding next steps.

3. After weeks of repeated, amicable attempts to recover its rightful property, Tenet is left with no choice but to seek Court intervention.

---

[2] Terms capitalized but not defined herein shall have the meanings ascribed to such terms elsewhere in this Motion.

**Jurisdiction and Venue**

4. On June 30, 2019, the Debtors filed voluntary petitions for relief under title 11 of the Unites States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").

5. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Tenet confirms its consent to the entry of a final order by the Court.

6. Venue properly lies in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

7. The bases for the relief requested in this Motion are sections 105(a) and 362(d) of the Bankruptcy Code, rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

**Background**

**I.    The Reimbursements.**

8. Tenet is a subsidiary of Tenet Healthcare Corporation ("**THC**"), a diversified healthcare services company with over 100,000 employees. Through its subsidiaries and partnerships, THC operates hospitals, urgent care centers, and other outpatient facilities across the country. Prior to January 2018, Tenet owned Hahnemann University Hospital ("**Hahnemann**") and St. Christopher's Hospital for Children ("**St. Christopher's**" and, with Hahnemann, the "**Hospitals**") in Philadelphia, Pennsylvania.

9. Pursuant to the terms of an August 31, 2017 Asset Sale Agreement (as amended, the "**ASA**"), Tenet sold certain assets comprising the Hospitals to a group of purchasers, including the Debtors and certain of their affiliates (the "**Purchasers**"). The ASA went effective on January 11, 2018 (the "**ASA Effective Time**").

3

10. For the period prior to the ASA Effective Time, Tenet submitted cost reports to the Center for Medicare and Medicaid Services ("**CMS**"). At the time the ASA was executed, Tenet had not yet received CMS reimbursements for 2016 and 2017 (the last two years of Tenet's ownership of the Hospitals).

11. Pursuant to the ASA, Tenet and the Debtors agreed that those receivables would be excluded from the assets sold pursuant to the ASA and remain Tenet's property. Specifically, pursuant to Section 1.7 of the ASA, certain assets were designated as "Excluded Assets," which were retained by Tenet and not sold to the Debtors as part of the sale. "Excluded Assets" included, among others, "any receipts relating to the HITECH Payments, Sellers' Cost Reports or Agency Settlements (whether resulting from an appeal by Sellers or otherwise) with respect to time periods prior to the [ASA] Effective Time." Section 11.2(a) of the ASA defines "Sellers' Cost Reports" as "all cost reports relating to the periods ending prior to the [ASA] Effective Time, including, all Medicare, Medicaid, TRICARE, and any other termination cost reports for periods ending on or prior to the [ASA] Effective Time required to be filed as a result of the consummation of the transfer of the Assets to Purchasers and the other Transaction contemplated by this Agreement." The ASA defines "Agency Settlements" as "rights to settlements and retroactive adjustments on the Sellers' Cost Reports."

12. Under Section 9.1(a) of the ASA, the Purchasers, including the Debtors, agreed that, if any "Excluded Asset" came "into the possession, custody or control of Purchasers . . . , Purchasers (and their respective successors-in-interest, assigns and Affiliates) shall not have any right, title or interest in or obligation or responsibility with respect to such asset or liability except that Purchasers shall hold such asset in trust for the benefit of Sellers."

KE 74697960

13. Accordingly, pursuant to the ASA, all receipts relating to cost reports submitted to CMS for the Hospitals for the time period prior to the ASA Effective Time are the property of Tenet, and were not sold to the Debtors under the ASA.

## II. The Remittance.

14. On November 11, 2020, CMS issued two Notices of Program Reimbursements (the "**NPRs**") to the Debtors on account of Hahnemann. In total, the NPRs notified the Debtors of $3,568,404 in reimbursements, all of which are attributable to the period Tenet owned and operated the Hospitals (the "**Reimbursements**"). On information and belief, CMS has paid the Reimbursements to Center City, and not to Tenet, because Center City currently maintains the CMS provider ID associated with the Reimbursements.

15. The Reimbursements (i) constitute "receipts relating to . . . Sellers' Cost Reports or Agency Settlements . . . with respect to time periods prior to the [ASA] Effective Time," (ii) are "Excluded Assets" under the ASA, and (iii) are property of Tenet.

16. On January 6, 2021, counsel for Tenet contacted counsel for the Debtors to discuss the NPRs and the Reimbursements. During this call, Tenet's counsel explained that the Reimbursements were Tenet's property and requested that the Debtors return them to Tenet. The next day, counsel to Tenet sent a letter to counsel to the Debtors reiterating that the Reimbursements were "Excluded Assets" under the ASA, and requesting that the Debtors turn over the Reimbursements by January 17, 2021. Tenet has subsequently made repeated requests that the Debtors return Tenet's property, and the Debtors have refused to do so.

17. In light of the foregoing, Tenet prepared the attached Adversary Complaint.

**Argument**

I. **The Automatic Stay Does Not Prohibit the Commencement of an Adversary Proceeding.**

18. Bankruptcy courts in this district and other districts have held that the automatic stay does not apply to an adversary proceeding filing in the home court of the bankruptcy. *See In re Uni-Marts, LLC*, 404 B.R. 767, 782–83 (Bankr. D. Del. 2009) ("The Court agrees with the reasoning of the majority of courts addressing the issue that the filing of an adversary proceeding against a debtor in the home bankruptcy court is equivalent to the filing of a proof of claim in the Debtor's bankruptcy case and, therefore, does not violate the automatic stay. Consequently, the Court concludes that the Plaintiff's filing of this adversary proceeding in this Court is not a violation of the automatic stay. Accordingly, the Court will deny the Debtor's motion to dismiss the Complaint on this basis."); *see also In re Transcolor Corp.*, 296 B.R. 343, 358 (Bankr. D. Md. 2003) ("[T]he Code implicitly permits the filing of suit in the bankruptcy court against a debtor without violating the automatic stay."); *In re Roxford Foods, Inc.*, 12 F.3d 875, 878 (9th Cir. 1993) ("[T]he automatic stay [is] inapplicable to a suit commenced in the same court where the bankruptcy was pending."); *In re North Coast Vill., Ltd.*, 135 B.R. 641, 644 (B.A.P. 9th Cir. 1992) ("[W]e conclude that the automatic stay does not apply to proceedings against the debtor in home bankruptcy court . . . .").

19. Courts have reasoned that the filing of an adversary proceeding is equivalent to the filing of claims against the estate, which is allowed under section 501 of the Bankruptcy Code and does not violate the automatic stay. *In re J.T. Moran Fin. Corp.*, 124 B.R. 931, 940 (S.D.N.Y. 1991). Because the Adversary Complaint is being brought before the Court, rather than being pursued in another Court, the automatic stay is not implicated. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 325 B.R. 89, 97 (Bankr. S.D.N.Y. 2005), *rev'd on other grounds*,

331 B.R. 93 (S.D.N.Y. 2005) ("Because [Plaintiff] sued on his prepetition claims in *this* Court, his assertion of those claims here was not violative of the automatic stay provisions of Bankruptcy Code sections 362(a)(1) and (a)(3), as would have been the case if those claims had been asserted elsewhere.").

II. **The Automatic Stay Does Not Apply Because the Reimbursements Are Not Property of the Debtors' Estates.**

20. Even if the automatic stay does apply to the filing of an adversary proceeding, the automatic stay does not apply to the Reimbursements because they are not property of the Debtors' estates. By its terms, the automatic stay "applies only to property of the estate." *In re Aleris Int'l, Inc.*, 456 B.R. 35, 46 (Bankr. D. Del. 2011). While generally what constitutes property of the estate is broad, *In re Lenox Healthcare, Inc.*, 343 B.R. 96, 100 (Bankr. D. Del. 2006), Bankruptcy Code section 541(d) provides: "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's **legal title** to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." (emphasis added). In the present case, the Debtors did not have **any** interest in the Reimbursements as of the commencement of their chapter 11 cases, and subsequently, the Debtors merely obtained possession of the Reimbursements—never legal title.

21. Bankruptcy courts have held that funds that were inappropriately deposited in a debtor's account are excluded from the debtor's estate. *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993) (holding that the customer refunds wrongfully deposited into the debtor's estate were to be excluded from the bankruptcy estate because they were held in constructive trust); *In re United Milk Prods. Co.*, 261 F. Supp. 766, 767 (N.D. Ill. 1966) (holding that federal funds from Department of Agriculture held by debtor were not property of the estate

7

and must be transferred to their intended recipient); *In re CMC Telecom, Inc.*, 383 B.R. 52, 62 (Bankr. E.D. Mich. 2008) (following *LAN Tamers* and determining that the debtor had a mere possessory interest in reimbursed amounts on account of discounts brought by a federal subsidy program when the debtor filed for bankruptcy, and further holding that the debtor did not have equitable title to the funds, which were not property of the estate).  In light of this precedent, and as further described in the Adversary Complaint, the Debtors should be viewed as holding the Reimbursements in trust for Tenet, the rightful owner of the Reimbursements.

22. A debtor does not have an equitable interest in property that it holds in trust for another entity, which precludes such property from being property of that debtor's estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"). Where a debtor holds property in trust, even constructively, that property does not become property of the estate. *Columbia Gas*, 997 F.2d at 1059 ("Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust."); *see, e.g.*, *In re LAN Tamers, Inc.*, 329 F.3d 204, 209 (1st Cir. 2003) (holding that under section 541(d), the debtor did not have an equitable interest in funds it received which were to be paid to others); *In re Computrex, Inc.*, 403 F.3d 807 (7th Cir. 2005) (same); *In re SemCrude, L.P.*, 418 B.R. 98 (Bankr. D. Del. 2009) (same).  Accordingly, the Reimbursements are not part of the Debtors' estates and are not subject to the automatic stay.

### III. The Debtors Do Not Have Equity in the Reimbursements, and the Reimbursements Are Not Necessary to the Debtors' Effective Reorganization.

23. Pursuant to section 362(d)(2) of the Bankruptcy Code, relief from the automatic stay is warranted with respect to property if (i) a debtor does not have equity in such property and (ii) such property is not necessary to an effective reorganization.

24. The first element has been satisfied here because, as discussed above, the Debtors do not have any legal right or title to the Reimbursements. *See, e.g.*, *In re LTAP US, LLLP*, No. 10-14125, 2011 WL 671761, at *4 (Bankr. D. Del. Feb. 18, 2011) (holding that, because the chapter 11 debtor had no equity in the insurance policies which served as collateral, the lender was entitled to relief from the automatic stay).

25. Because it is clear that the Debtors do not have equity in Tenet's property, the Debtors have the burden of showing that the Reimbursements are "necessary to an effective reorganization." 11 U.S.C. § 362(d)(2); *see United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988); 11 U.S.C. § 362(g) ("[T]he party requesting [] relief [from the automatic stay] has the burden of proof on the issue of the debtor's equity in property; and the party opposing such relief has the burden of proof on all other issues."). Though Tenet does not dispute that using someone else's property to reorganize would be ***helpful***, the Debtors have no legal basis to argue that property in which they have never had a legal interest is necessary to effectuate their reorganization.

26. The Supreme Court has clarified that, for a debtor to show that property is necessary to an effective reorganization, it must establish that "the property is essential for an effective reorganization that is in prospect." *Timbers of Inwood,* 484 U.S. at 376 (emphasis omitted). Because the Debtors cannot show, that the Reimbursements—which are, and always have been, Tenet's property—are essential to an effective reorganization, to the extent the Court finds that the automatic stay applies, relief is proper under section 362(d)(2) of the Bankruptcy Code.

**IV.     "Cause" Exists to Lift the Automatic Stay.**

27.     The Bankruptcy Code also requires that bankruptcy courts grant relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

28.     "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (citing *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007)). The factors which courts in this district apply to determine whether cause exists are: (1) the probability of the creditor prevailing on the merits; (2) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the automatic stay; and (3) whether the hardship to the non-bankrupt party by maintenance of the automatic stay considerably outweighs the hardship to the debtor. *In re Samson Res. Corp.*, 559 B.R. 360, 370 (Bankr. D. Del. 2016).

29.     In a motion for relief from the automatic stay, the movant must establish a prima facie case that "cause" exists, at which point the burden shifts to the non-moving party to show that lifting the stay would cause harm. *See Matter of Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D. Del. 1996) ("[The creditor] has the initial burden in proving a prima facie case of cause, which if proved, must be rebutted by [the debtor] if the stay is not to be lifted."); *In re Abeinsa Holding, Inc.*, No. 16-10790, 2016 WL 5867039, at *3 (Bankr. D. Del. Oct. 6, 2016) ("[T]he burden to resist lifting of the stay rests entirely with the Debtor . . . . The statute, by its burden shifting, seems almost . . . to ask, 'why shouldn't the stay be lifted?' . . . It is not [the Movant's] burden to show that the Debtor[] would not be harmed by stay relief.").

**A.     Tenet Has a Strong Probability of Prevailing on the Merits.**

30.     Delaware courts have held that "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *Tribune*,

10

418 B.R. at 129 (quoting *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993)). Thus, this prong merely requires a showing that the cause of action has *some* merit. Tenet overwhelmingly satisfies this standing. The facts are simple and difficult for the Debtors to dispute: (i) the Reimbursement rights were never transferred to the Debtors, (ii) Center City is now in possession of the Reimbursements, and (iii) Center City has wrongfully refused to remit the Reimbursements to Tenet. Therefore, Tenet has a high likelihood of success on the merits.

### B. The Hardship to Tenet by Maintenance of the Automatic Stay Would Considerably Outweigh the Hardship to the Debtors.

31. Tenet would endure significant hardship if the automatic stay precluded the filing of the Adversary Complaint, whereas the Debtors would suffer no material hardship whatsoever if Tenet's adversary proceeding were to proceed. Absent relief from the automatic stay, Tenet would have no readily available recourse to recover its rightful property. In such a scenario, the Reimbursements would be distributed through the Debtors' chapter 11 plan and would be impossible to recover. Alternatively, the Debtors would not face any hardship if the automatic stay is lifted because, as stated above, Tenet is likely to succeed on the merits and establish that the funds at issue do not belong to the Debtors. The Debtors cannot suffer a hardship from "losing" what was never theirs.

32. Further, the adversary proceeding is directly related to the bankruptcy and is crucial to the determination of distributions under the Debtors' chapter 11 plan. The Debtors should *want* the Adversary Complaint to proceed and be heard by the Court so they can promptly and properly settle their estates.

### C. Lifting the Automatic Stay Would not Prejudice the Debtors or Their Estates.

33. Allowing Tenet to file the Adversary Complaint and proceed with the adversary proceeding would not prejudice the Debtors or their estates. As detailed herein and in

the Adversary Complaint, the Debtors are not entitled to the Reimbursements, which are Tenet's property and are not part of the Debtors' estates. Therefore, participating in an adversary proceeding with the Court would not impact the Debtors' rights.

34. Further, courts have held that the fact that the resolution of a legal claim may result in the loss of money or reduced recovery for a party does not constitute legal prejudice. *In re Draw Another Circle, LLC*, 595 B.R. 174, 180–81 (Bankr. D. Del. 2018) ("Damage to other creditors in the form of a reduced recovery is not a consideration [when determining whether prejudice exists]."); *see also In re Horizon Womens Care Professional LLC*, 506 B.R. 553, 559 (Bankr. D. Colo. 2014) ("The fact that the lawful and appropriate resolution of a legal claim may result in a reduced potential for recovery by the estate does not constitute legal prejudice to the rights of creditors.").

## Conclusion

35. Tenet respectfully requests enter of an order (i) confirming that the automatic stay does not apply with respect to Tenet's filing of the Adversary Complaint, or (ii) in the alternative, to the extent such relief is required, granting relief from the automatic stay to permit Tenet to file the Adversary Complaint, and (iii) granting such other relief as the Court deems appropriate under the circumstances.

[*Remainder of page intentionally left blank.*]

KE 74697960

Dated:  March 8, 2021PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:(302) 652-4100
Facsimile:(302) 652-4400
Email:ljones@pszjlaw.com
tcairns@pszjlaw.com


- and -


KIRKLAND & ELLIS LLP
Stephen C. Hackney, P.C.
Gregory F. Pesce (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:(312) 862-2000
Facsimile:(312) 862-2200
Email:shackney@kirkland.com
gregory.pesce@kirkland.com


-and-


KIRKLAND & ELLIS LLP
Nicole L. Greenblatt, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:(212) 446-4800
Facsimile:(212) 446-4900
Email:ngreenblatt@kirkland.com

*Counsel to Tenet Business Services Corporation*