## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) **Related to Docket No.  2370** |
| | ) |

### JOINT OBJECTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF HSREP VI HOLDING, LLC AND ITS AFFILIATES TO INTERVENE/PARTICIPATE IN MEDIATION

The debtors and debtors in possession (collectively, the "**Debtors**") and the Official Committee of Unsecured Creditors (the "**Committee**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") hereby object (the "**Objection**") to the *Motion to Intervene/Participate in Mediation* (the "**Motion to Intervene**") [D.I. 2370] filed by HSREP VI Holding, LLC and its affiliates (collectively, the "**HSRE Entities**").  In support of this Objection, the Debtors and the Committee respectfully state as follows:

### INTRODUCTION

1.    On the eve of what the Debtors and the Committee hope will be a productive, mediation with the MBNF Non-Debtor Parties (as defined below) involving various claims by and among the Debtors' estates and the MBNF Non-Debtor Parties, the HSRE Entities have filed a motion seeking extraordinary relief:  entry of an order modifying a prior order of this Court to

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 216 N. Broad Street, 4th Floor, Philadelphia, PA  19102.

include the HSRE Entities as mediation parties over the objection of the estate representatives in the mediation, *i.e.*, the Debtors and the Committee.  The HSRE Entities request this extraordinary relief apparently because they are fearful that the mediation may result in a settlement that could impact their own claims against two of the seventeen parties that constitute the MBNF Non-Debtor Parties.  It is no surprise then that the Motion to Intervene is unsupported by any case, rule, or statute; there is simply no legal, factual, or procedural basis for the HSRE Entities to force themselves into an otherwise consensual mediation to advance their self-interest.

2.      The Motion to Intervene is nothing more than a request for an unprecedented legal remedy without even a whisper as to the applicable legal standards under Rule 60 of the Federal Rules of Civil Procedure and the misuse of the intervention standards as those criteria require a pending adversary proceeding or a contested matter and neither are present herein.  The Motion to Intervene is predicated upon the HSRE Entities' opinion that the mediation will be more productive if they were included, however the Debtors and the Committee disagree and there is no basis or reason for substituting the views of the Debtors and the Committee for the self-serving opinions and views of the non-fiduciary HSRE Entities.

3.      The HSRE Entities will suffer no prejudice if the Motion to Intervene is denied. Any settlement reached at mediation will be subject to Court approval.  To the extent the HSRE Entities believe the settlement is not in the best interest of the Debtors, their estates, or their creditors, the HSRE Entities will have a full and fair opportunity to object and be heard by the Court.

4.      In contrast, the Debtors and the Committee will certainly suffer prejudice if the Motion to Intervene is granted.  The HSRE Entities' participation in the mediation will delay the

38649245.1

mediation for months, increase costs and their participation is likely to disrupt an opportunity for the Debtors to resolve their various issues and claims with the MBNF Non-Debtor Parties.

5.      As discussed in more detail below, and for the foregoing reasons, the Motion to Intervene should be denied.

## BACKGROUND

A.      **The Project Liberty Transaction.**

6.      On August 31, 2017, certain entities controlled by Joel Freedman ("**Freedman**"), and entities controlled by or affiliated with certain HSRE Entities, and Tenet Business Services Corporation and certain of its affiliates (collectively, "**Tenet**"), entered into an asset sale agreement (as amended, the "**ASA**") for the sale of Hahnemann University Hospital ("**HUH**"), St. Christopher's Hospital for Children ("**STC**," and together with HUH, the "**Hospitals**"), and certain real property (collectively, the "**Project Liberty Transaction**").  In connection with the ASA, Freedman created (i) "OpCo" entities (currently the Debtors in these chapter 11 cases), which purchased the Hospitals and various related practice groups (the "**Practice Groups**"), and (ii) several "PropCo" entities (the "**Freedman Real Estate Entities**"),[2] which took ownership of certain real estate, including the real estate on which the Hospitals were located (the "**Freedman Real Estate**").  The Freedman Real Estate includes the land underlying HUH and STC, a vacant building known as the "SHSH Building," a park near HUH called "Martinelli Park" and certain adjacent surface parking lots.

7.      Certain other valuable real estate (the "**JV Real Estate**") was acquired in the Project Liberty Transaction by HSRE-PAHH I, LLC, a joint venture (the "**Joint Venture**")

---

[2]      The Freedman Real Estate Entities include Front Street Healthcare Properties, LLC; Front Street Healthcare Properties II, LLC; Broad Street Healthcare Properties, LLC; Broad Street Healthcare Properties II, LLC; and Broad Street Healthcare Properties III, LLC.

owned by one of the HSRE Entities, as majority owner, and Philadelphia Academic Health Holding, LLC ("**PAHH**") (a Freedman-owned/controlled entity that was formed at the time of the acquisition), as minority owner.  The JV Real Estate includes four medical office buildings and two parking garages.  Title to JV Real Estate is held by special purpose entities (the "**Master Landlords**")[3] owned and controlled by the Joint Venture.

8.       As detailed in the Motion to Intervene, the Project Liberty Transaction was funded primarily by a combination of the following:  (a) a $51 million loan (the "**HSRE Loan**") from one of the HSRE Entities to non-debtor PAHH, secured solely by Mr. Freedman's indirect interest in the Joint Venture; (b) a $107 million mortgage loan (the "**CapOne Loan**") to the Joint Venture, for the purchase of the JV Real Estate and the funding of certain reserves and escrows relating to such real estate, which HSRE arranged from Capital One Bank, N.A., and which was secured by mortgages on the Joint Venture's real estate; (c) an approximate $49.4 million draw on an asset-based lending facility with Midcap Financial Trust and certain of its affiliates, for the purchase of the Hospitals' operating assets, the Practice Groups, and working capital, secured by liens on substantially all of the operating assets of the Hospitals and the Practice Groups; and (d) $17.5 million of take-back financing from Tenet.

9.       Although PAHH was the borrower with respect to the HSRE Loan, and although the Joint Venture was the borrower with respect to the CapOne Loan, the debt service for both of these loans was placed on the Debtors, in the form of rent payable under extremely unfavorable "master leases."   That is, debtor St. Christopher's Healthcare, LLC ("**SCHC**") (the owner of STC), was forced to serve as "master tenant" and to enter into master leases (the "**Master**

---

[3]       The Master Landlords are the following HSRE Entities:  PAHH New College MOB, LLC; PAHH Bellet MOB, LLC; PAHH Broad Street MOB, LLC; PAHH Feinstein MOB, LLC; PAHH Wood Street Garage, LLC; and PAHH Erie Street Garage, LLC.

**Leases**") with the Master Lessors for the JV Real Estate.  The initial aggregate annual base rent paid under the Master Leases was $11,250,000, which was not designed to be fair value for the leased space; rather it was designed to be sufficient to service—*and indeed was the only source for servicing*—the CapOne Loan (to the Joint Venture) and the HSRE Loan (to PAHH). The obligations of SCHC, as master tenant under the Master Leases, were guaranteed by both Paladin and PAHH (collectively, the "**Guaranty Agreements**").

10.     In summary, the Project Liberty Transaction was structured to separate the valuable real estate from the operating Hospitals and to impose all of the costs of acquisition, debt service, and property maintenance on those entities, *i.e.* the Debtors, to their detriment.

11.     The Project Liberty Transaction closed on January 11, 2018 (the "**Closing**").

**B.     The Debtors Fail And Are Forced To File For Bankruptcy.**

12.     The Debtors spectacularly failed from inception; ultimately filing for bankruptcy less than eighteen months after the Closing on June 30, 2019 and July 1, 2019.   The consequences have been catastrophic and include the closure of HUH, the loss of thousands of jobs at HUH, the disruption of the lives and professional careers of hundreds of physicians, residents, and fellows at HUH, and the loss of an important medical safety-net hospital for the Philadelphia community.   STC was sold during the Chapter 11 Cases for a fraction of its perceived value.   The Debtors' bankruptcy filings have resulted in creditors asserting almost $11.5 billion of claims.[4]

---

[4]     Notably, this amount includes over *$8.5 billion* in claims filed by Mr. Freedman and certain of his affiliates (the "**MBNF Non-Debtor Parties' Claims**").

**C.**    **The Debtors' and Committee's Investigation and Discovery.**

13.    The Debtors and the Committee have spent months investigating (the "**Investigation**") certain claims and causes of action against Mr. Freedman and related parties, collectively referred to as the "MBNF Non-Debtor Parties,"[5] the HSRE Entities and others, including with respect to the acquisition structure and post-closing operations of the Hospitals. To be clear, the definition of MBNF Non-Debtor Parties used by the Debtors, the Committee and the MBNF Non-Debtor Parties themselves is much broader than the defined term "MBNF Non-Debtor Entities," used by the HSRE Entities in their Motion to Intervene.

14.    In furtherance of the Investigation, on January 2, 2020, the Committee served the MBNF Non-Debtor Parties and their counsel with a subpoena for the production of documents to the Debtors and the Committee pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("**Federal Rule 2004**") and Rule 2004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (collectively with Federal Rule 2004, "**Rule 2004**").

15.    Similarly, in June of 2020, the Committee requested a host of document categories from the Debtors pursuant to Rule 2004.

16.    Discovery disputes arose among the Debtors, the Committee, and the MBNF Non-Debtor Parties, but those disputes were eventually resolved with the help of the Honorable Kevin J. Carey (ret.), who was appointed by the Court on December 1, 2020 [D.I. 1940] to mediate the parties' discovery disputes.

---

[5]    The "MBNF Non-Debtor Parties" include Joel Freedman, Stella Freedman, Svetlana Attestatova, Kyle Schmidt, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, Paladin Capital, and Globe Health Foundation, Inc.

17.     To date, the MBNF Non-Debtor Parties have produced tens of thousands of documents to the Debtors and the Committee, and the Debtors have produced tens of thousands of documents to the Committee.  At considerable cost, time and expense, the Debtors and/or the Committee have reviewed hundreds of thousands of pages documents in connection with the Investigation.  Meanwhile, the Debtors and the Committee tried, but were unable, to obtain consensual discovery under Rule 2004 from the HSRE Entities.  As of the date of this Objection, the HSRE Entities have not produced a single document to the Debtors or to the Committee.

**D.     The Claim Letter and Consensual Mediation.**

18.     By letter dated January 4, 2021 (the "**Claim Letter**"), the Debtors and the Committee asserted Debtors estates' claims and causes of action against the MBNF Non-Debtor Parties (collectively, the "**MBNF Estate Claims**").

19.     By letter dated February 23, 2021, the MBNF Non-Debtor Parties responded to the Claim Letter, generally denying the MBNF Estate Claims.

20.     Meanwhile, the MBNF Non-Debtor Parties have asserted claims against the Debtors' estates, which claims the Debtors and Committee deny (the "**MBNF Non-Debtor Parties Claims**").

21.     Following good faith and arm's length discussions, the Debtors, the Committee, and the MBNF Non-Debtor Parties (collectively, the "**Mediation Parties**") agreed to mediate (the "**Mediation**") the MBNF Estate Claims and the MBNF Non-Debtor Parties Claims (collectively, the "**MBNF Mediation Claims**").

22.     With the consent of the Committee and the MBNF Non-Debtor Parties, on February 23, 2021, counsel to the Debtors filed the *Certification Of Counsel Regarding Proposed Order Appointing Mediator In Connection With Claims By And Between The Debtors'*

*Estates And The MBNF Non-Debtor Entities* [D.I. 2117] (the "**Certification**") seeking entry of

an order approving the Mediation Parties' agreement to mediate the MBNF Mediation Claims.

The agreement to mediate was detailed in the Certification at paragraph 8, as follows:

> Subject to Court approval, and in an attempt to save costs and avoid
> protracted litigation, the [Mediation Parties] have agreed to mediate the [MBNF
> Mediation Claims] and have agreed that Judge Carey should serve as the mediator
> in connection with the [MBNF Mediation Claims].  Subject to Court approval,
> Judge Carey has agreed to serve as the mediator in connection with the [MBNF
> Mediation Claims].

*See* Certification at para. 8.

23.    Based upon the Certification and lack of objection by any party including the

HSRE Entities, the Court entered an order on February 23, 2021 [D.I. 2119] (the "**MBNF

Mediation Order**"), appointing Judge Carey as Mediator over the MBNF Mediation Claims

only.

24.    All of the facts set forth in the Motion to Intervene were either known or should

have been known to the HSRE Entities at the time of the entry of the MBNF Mediation Order.

**E.    The HSRE Entities' Alleged Claims.**

25.    Meanwhile, even though certain of the HSRE Entities were former landlords of

**Debtor SCHC only**, the HSRE Entities filed over ninety (90) proofs of claims (collectively, the

"**HSRE Debtor Claims**") in the Debtors' Chapter 11 Cases, including unliquidated claims for

indemnification against **all of the Debtors** and inflated claims of approximately $433 million

against SCHC for, *inter alia*, damages allegedly flowing from the rejection of the Master Leases;

without application of the cap in 11 U.S.C. §502(b)(6).[6]

---

[6]    The Debtors and/or the Committee expect to timely object to the HSRE Debtor Claims and reserve any and
all rights and defenses related thereto.   As discussed herein, the HSRE Debtor Claims are irrelevant to the
Motion to Intervene, as the HSRE Entities' admitted purpose for seeking to intervene in the Mediation has
nothing to do with the HSRE Debtor Claims.  Instead, the HSRE Entities seek to intervene in the Mediation
to gain access to information to further their own interests and to protect their direct claims against PAHH
and Paladin.

-8-

26.     Certain of the HSRE Entities allege claims **against only two of the seventeen MBNF Non-Debtor Parties**. First, HSREP VI Holding, LLC ("**HSRE VI**") asserts a claim against PAHH for the HSRE Loan, which was secured only by PAHH's interest in the Joint Venture.   Second, the Master Landlords have asserted guaranty claims against PAHH and Paladin under the Guaranty Agreements.[7]

27.     Contrary to the HSRE Entities' assertion that they "hold rights and significant claims" against the Freedman Real Estate Entities, *See* Motion to Intervene at 2, the truth is that (a) none of the HSRE Entities is a creditor of any of the Freedman Real Estate Entities; and (b) none of the HSRE Entities holds a mortgage or interest in any Freedman Real Estate.  While the HSRE Entities go out of their way to suggest that their participation in the Project Liberty Transaction was tied to the value of all of the real estate, the HSRE Entities helped structure, and closed on, the Project Liberty Transaction without retaining claims against the Freedman Real Estate Entities and without a mortgage on any Freedman Real Estate.

28.     To put the various claims in context for purposes of the Motion to Intervene, the Debtors and HSRE VI are competing creditors against PAHH and Paladin only.  None of the HSRE Entities hold claims against any of the other MBNF Non-Debtor Parties.

**F.     The Motion to Intervene.**

29.     On June 9, 2021, the HSRE Entities filed their Motion to Intervene.  By the Motion to Intervene, the HSRE Entities seek extraordinary relief.  Specifically, the HSRE Entities ask the Court to modify the MBNF Mediation Order and turn a consensual Mediation into an "involuntary" Mediation, by forcing the Debtors and the Committee to include competing

---

[7]     As set forth in the Motion to Intervene at ¶ 19, apparently certain of the HSRE Entities are litigating their claims against PAHH and Paladin, but have agreed to stay those proceedings while the parties "seek to settle those claims."  The Debtors are not parties to any such settlement negotiations and the HSRE Entities have, understandably, not invited the Debtors to participate in such settlement discussions.

creditors of PAHH and Paladin in a mediation of estate claims by and against all the MBNF

Non-Debtor Parties.  Moreover, the HSRE Entities seek to be designated a "Mediation Party," to

obtain access to all information and documents shared among the Mediation Parties.  As made

clear by their Motion to Intervene, the HSRE Entities seek to insert themselves into the

Mediation and to obtain information and documents, not to benefit the Debtors or their estates

and creditors, but to protect their own interests, and to ensure that their competing claims against

PAHH and Paladin receive paramount treatment.[8]

30.    The HSRE Entities' best interests are served by delaying or defeating the estates'

claims against the MBNF Non-Debtor Parties, so that any value held, for example, by the

Freedman Real Estate Entities, flows up to PAHH (rather than to the Debtors) and is thereby

available to satisfy the HSRE Entities' claims against PAHH.

## OBJECTION

**A.    The HSRE Entities Cannot Insert Themselves Into The Mediation Over The Debtors' And The Committee's Objection.**

31.    There is no legal basis for the HSRE Entities, former landlords of SCHC,[9] and

competing creditors against non-debtors PAHH and Paladin, to force the Debtors and the

Committee to include the HSRE Entities in the consensual Mediation of the MBNF Mediation

Claims.

---

[8]    While the Debtors and Committee object entirely to entry of the HSRE Entities in the Mediation, to the extent any participation by the HSRE Entities is permitted, the proposed order attached to the Motion to Intervene must be amended to include that the HSRE Entities shall be responsible for payment of 33.33% of the Mediator's fees and costs for the Mediation.  As currently drafted, the proposed order attached to the Motion to Intervene states that "[t]he Debtors and the MBNF Non-Debtor Entities shall be each responsible for payment of fifty percent (50%) of the Mediator's fees and costs for the Mediation[,]" without requiring the HSRE Entities to pay for any Mediation costs.

[9]    Each of the Master Leases were rejected by debtor SCHC pursuant to 11 U.S.C. §365(a).

32.     While the HSRE Entities pepper the Motion to Intervene with legal jargon, claiming that they are "necessary and indispensable parties"[10] and "real parties in interest,"[11] none of these assertions are true.  The HSRE Entities cannot cite to any case where parties to a voluntary mediation were compelled to share mediation documents and information and forced to mediate their respective claims in the presence of a third-party holding its own claims against the mediation parties.  Indeed, no such case could exist, particular where—as here—the interests of the party seeking to intervene are best served by delaying resolution of the mediation claims thereby ensuring that the mediation claims are not settled and that one side of the mediation (here, the Debtors and the Committee) recover as little as possible from the other side (here, the MBNF Non-Debtor Parties).

33.     It is also untrue that the HSRE Entities' consent is "required" for any settlement among the Mediation Parties.  *See* Motion to Intervene at 3–4.  As noted, the HSRE Entities hold claims against only two of the MBNF Non-Debtor Parties, PAHH and Paladin.  With respect to PAHH and Paladin, the HSRE Entities are, at best, creditors with unliquidated claims.  There is nothing in the Motion to Intervene which even remotely supports the assertion that the HSRE Entities' consent to a settlement of any MBNF Mediation Claims is necessary or required, even as to the Debtors' claims against PAHH and Paladin.

34.     In support of their Motion to Intervene, the HSRE Entities cite to Local Rules 9013-1(k), 9019-3 and 9019-5, but these rules deal with the procedural aspects of amending an order (Local Rule 9013-1(k)) or, *inter alia*, mediation generally (Local Rules 9019-3 and 9019-5).  Not one of the Local Rules cited by the HSRE Entities provides any basis to disrupt a

---

[10]     *See* Motion to Intervene at 2

[11]     *See* Motion to Intervene at 3, 11–12.

38649245.1

consensual mediation and override the business judgement of the mediation parties by forcing them to include a third-party, competing creditor in claims by and against the Debtors' estates against another party.

35.     While Local Rule 9013-1(k) includes procedures for amending an order, this rule does not provide the basis or standard for actually obtaining the relief requested by the HSRE Entities. The standards for amending the MBNF Mediation Order are set forth in Federal Rule 60 and Bankruptcy Rule 9024, but the HSRE Entities do not mention these rules, let alone offer any evidence or arguments to meet the standards set forth therein.

36.     Next, the HSRE Entities seek to apply the intervention elements applicable to adversary proceedings under Rule 24 of the Federal Rules of Civil Procedure, applicable to adversary proceedings under Bankruptcy Rule 7024, *see* Motion to Intervene at ¶ 54, but the HSRE Entities' arguments fail, as (a) these rules apply to intervening in an adversary proceeding (and possibly a contested matter), but not a mediation and (b) the Mediation did not arise in an adversary proceeding. Accordingly, Federal Rule 24 and Bankruptcy Rule 7024 are wholly inapplicable to the current Mediation as it did not arise in an adversary proceeding or contested matter.

37.     Further, the Court's holding in *In re Nutritional Sourcing Corp.*, 398 B. R. 816 (Bankr. D. Del. 2008) provides no support for the HSRE Entities' position. In *Nutritional Sourcing Corp.*, the Court sustained objections to confirmation of a plan of liquidation which included a compromise of a subordination provision contained in certain notes issued by one of the debtors. The compromise was significant, as it resulted in unsecured creditors of one of the debtors being separately classified as either "trade claims" or "unsecured claims;" with creditors holding trade claims receiving 100% recovery on their claims and creditors holding "non-goods

claims" classified as unsecured claims receiving an estimated recovery of 13.2% on their claims. *Id*. at 822.

38.     Among several reasons for denying approval of the comprise in the proposed plan, the Court cited the facts that the negotiations that led to the compromise included holders of trade claims but not any holders of "non-goods" claims, that the Debtors' noteholders (who stood to benefit by the compromise) dominated the negotiations, and that neither the debtors nor the committee, under the facts of that case, adequately represented the interests of the holders of non-goods claims **against the debtors**.  *Id*. at 836 (emphasis added).  Ultimately, in denying confirmation of the plan, the Court concluded that "none of the parties negotiating the definition of [trade claims] had adequate reason to protect the interests of the 'non-goods trade creditors.'" *Id*.

39.     Here, and unlike the objectors in *Nutritional Sourcing Corp.*, the HSRE Entities do not, and cannot, argue that their interests **as creditors of the Debtors** are not adequately represented by the Debtors or the Committee in the Mediation of the MBNF Mediation Claims.

40.     The HSRE Entities' alleged interests as alleged creditors of the Debtors are perfectly aligned with the interests being pursued by the Debtors and the Committee in the Mediation, with the Debtors and Committee attempting to recover as much as possible from the MBNF Non-Debtor Parties for distribution among the Debtors' creditors consistent with the priority scheme and any other applicable provisions of the Bankruptcy Code.[12]  But, this is not what the Motion to Intervene is about.

---

[12]     As noted in footnote 6 nothing herein shall constitute a waiver or limitation of any rights, claims, defenses or objections of the Debtors or Committee with respect to any claims asserted by the HSRE Entities against the Debtors' estates, and all such rights, claims, defenses and objections are expressly preserved and reserved, including, but not limited to, any objections to the HSRE Entities' alleged claims based on equitable subordination.

38649245.1

41.     The Motion to Intervene is about the HSRE Entities furthering the HSRE Entities' self-interests alone, by gaining access to documents and information they would not otherwise have and ensuring that their own competing claims against PAHH and Paladin are protected and receive priority treatment.  This is not an appropriate reason to participate in the Mediation and the holding in *In re Nutritional Sourcing Corp.* provides no support for the Motion to Intervene.[13]

42.     In summary, the Mediation is a consensual mediation among the Mediation Parties.  The Debtors and the Committee agreed to mediate the MBNF Mediation Claims with the understanding that the HSRE Entities would not participate in the Mediation at this time. The Debtors and the Committee would not have agreed to the Mediation if the HSRE Entities were included from its inception and there is no basis for the HSRE Entities to force themselves into the Mediation over the Debtors' and the Committee's objection.  The HSRE Entities had the opportunity to object to MBNF Mediation Order for all the reasons set forth in the Motion to Intervene.  Having failed to object, those objections and arguments have been waived and should not be renewed herein.

**B.     The Debtors' and the Committees' Opinions And Business Judgement Should Control.**

43.     Even, assuming, *arguendo*, that the HSRE Entities' motives for participating in the Mediation are pure—a position which with the Debtors and the Committee have their doubts—the Motion to Intervene is, in essence, a legally unsupported request to have the Court

---

[13]     The HSRE Entities' reliance on *In re Tribune Co.*, 464 B. R. 126, 157 (Bankr. D. Del.), *on reconsideration in part*, 464 B.R. 208 (Bankr. D. Del. 2011), *aff'd sub nom In re Tribune Media Co.*, 587 B. R. 606 (D. Del. 2018) and the transcript in *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS) are equally misplaced, as both cases involve creditors asserting that their interests as creditors of the debtor were not adequately represented in settlement negotiations or mediation.  For the reasons already stated, the Debtors and/or the Committee are fully capable of participating in the Mediation with the best interest of all the Debtors' creditors in mind and the HSRE Entities do not argue otherwise.

substitute the HSRE Entities' business judgment for that of the Debtors and the Committee. Contrary to the Debtors' and Committee's views, the HSRE Entities believe that their immediate participation in the Mediation will be more efficient, avoid litigation, and will lead to a resolution of issues in the Chapter 11 Cases. *See* Motion to Intervene at 2. The Debtors and the Committee disagree.

44.     The Debtors and the Committee, each of which are fiduciaries of the Debtors' estates, in the exercise of their own business judgment, have determined that the interests of the Debtors, their estates, and their creditors would best be served by proceeding with the Mediation of the MBNF Mediation Claims only, at this time, without the distraction of the HSRE Entities, who are not estate fiduciaries and who have their own agenda; an agenda that is inconsistent with the goals of the Debtors and the Committee.

45.     The MBNF Mediation Claims alone are significant, numerous, and complex and include (a) claims wholly unrelated to the claims alleged in the Motion to Intervene; and (b) claims against MBNF Non-Debtor Parties against which the HSRE Entities hold no claims or alleged "legal or equitable interests" (whatever that means). The Mediation will likely take significant time and expense. The Debtors and the Committee strongly believe that the Mediation will be more productive, without the HSRE Entities' participation, at least for now. While the HSRE Entities may disagree, there is no basis to substitute their admittedly self-serving business judgment for that of the Debtors and the Committee.

**C.     The HSRE Entities Will Suffer No Prejudice If The Motion To Intervene Is Denied.**

46.     Contrary to the HSRE Entities allegations, they will suffer no prejudice if the Motion to Intervene is denied. The HSRE Entities' arguments are based on the fear that the

settlement of the MBNF Mediation Claims will somehow prejudice their own claims against PAHH and Paladin.

47.     Even assuming this argument provides a legitimate basis for injecting the HSRE Entities into the Mediation, which it does not, no settlement of the MBNF Mediation Claims is possible without Court approval under Bankruptcy Rule 9019.   Accordingly, if the Debtors and the Committee are able to reach resolution of the MBNF Mediation Claims as a result of the Mediation, the HSRE Entities will receive appropriate notice of the resolution and will have a full and fair opportunity to take discovery, oppose any settlement, and convince the Court why the settlement is not in the best interests of the Debtors, their estates, and their creditors; just like the objecting creditors in *In re Nutritional Sourcing Corp.*  Like every other creditor of the Debtors, the HSRE Entities' right to oppose any settlement cannot be prejudiced by the Mediation.

**D.     The Debtors And The Committee Will Suffer Prejudice If The Motion To Intervene Is Granted.**

48.     The Debtors and the Committee have worked tirelessly for months and expended significant monies, first on the Investigation (which is ongoing), and more recently, towards what they hope will be a productive Mediation with the MBNF Non-Debtor Parties.  All of this work and the progress made to date will be disrupted, or at minimum, significantly delayed and costs will inherently be increased if the Motion to Intervene is granted.

49.     While the HSRE Entities' profess a desire to be a productive participant in the Mediation, their focus on protecting their own claims against PAHH and Paladin, and their lack of cooperation in the discovery process, strongly suggest that their participation in the Mediation will be an expensive distraction, inherent delay and impediment to a productive Mediation.

38649245.1

50.     Without violating any mediation privilege, it is sufficient to state that the Debtors and the Committee have been participating in the Mediation to date with the understanding that the HSRE Entities are not mediation parties.  If the HSRE Entities are inserted into the mediation now as mediation parties over the Debtors' and Committee's objections, certain actions and submissions of the Debtors and the Committee may need to be amended or altered to accommodate the HSRE Entities' participation.  This will delay the Mediation and will cost the Debtors' estates even more money.

51.     Moreover, the Debtors' estates have their own significant claims against the HSRE Entities and their affiliates.  As noted above, and for their part, the HSRE Entities have filed baseless and/or inflated claims against all of the Debtors, which will be the subject of objections.  While noticeably not mentioned in the Motion to Intervene, no mediation involving the HSRE Entities could possibly be productive without including these claims.  Before mediating any such claims, however, the Debtors and the Committee will need discovery from the HSRE Entities, and, based upon the HSRE Entities' actions to date, a motion to compel discovery from the HSRE Entities will likely be necessary to so obtain.  In addition, significant time will be needed to review any documents produced by the HSRE Entities, since to date, they have not provided the Debtors or the Committee with any responsive documents.

52.     Accordingly, and at best, the HSRE Entities participation in Mediation will throw the current Mediation significantly off track, compound costs and push off for months any progress toward resolution of the MBNF Mediation Claims.

53.     At this time, the Committee, the Debtors, and their estates are best served by proceeding with the Mediation with the MBNF Non-Debtor Parties only.  If, or when, the Debtors, the Committee, and the MBNF Non-Debtor Parties collectively agree that the HSRE

-17-

Entities' participation in the Mediation is necessary, or will be helpful and appropriate, the HSRE Entities may be invited to participate in the Mediation at that time. For now, however, the Motion to Intervene should be denied and the Mediation Parties should be given the opportunity to make progress toward settling their issues on a consensual basis as they had agreed.

WHEREFORE, for the foregoing reasons, the Debtors and the Committee respectfully request that the Court deny the Motion to Intervene and grant the Debtors and the Committee such other and further relief as is just and proper.

Dated: June 23, 2021
Wilmington, Delaware

**SAUL EWING ARNSTEIN & LEHR LLP**

/s/ *Mark Minuti*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-6813
mark.minuti@saul.com
monique.disabatino@saul.com

- and –

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg(admitted *pro hac vice*)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Facsimile: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com

*Counsel for the Debtors and Debtors in Possession*

**FOX ROTHSCHILD LLP**

/s/ *Seth A. Niederman*
Seth A. Niederman (No. 4588)
919 North Market Street, Suite 300
Wilmington, DE 19899
Telephone: 302-654-7444
Facsimile: 302-656-8920
sniederman@foxrothschild.com

- and –

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ 07102
Telephone: 973-643-7000
Facsimile: 973-643-6500
asherman@sillscummis.com
bmankovetskiy@sillscummis.com

*Counsel for the Official Committee of Unsecured Creditors*