IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 19-11466 (MFW)<br>)<br>) Jointly Administered<br>)<br>) Re: D.I. 2119, 2370, 2428, 2429<br>) |

## REPLY OF HSREP VI HOLDING, LLC AND ITS AFFILIATES TO RESPONSES TO MOTION TO INTERVENE/PARTICIPATE IN MEDIATION

HSREP VI Holding, LLC ("HSRE VI") and its affiliates (collectively, the "JV Entities"[2]), by their counsel, DLA Piper LLP (US), submit this reply to: (i) the *Joint Objection of the Debtors and the Official Committee of Unsecured Creditors to Motion of HSREP VI Holding, LLC and Its Affiliates to Intervene/Participate in Mediation* [D.I. 2428] (the "Objection"); and (ii) the *MBNF*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] The other relevant affiliates of HSRE VI that form the JV Entities are: HSRE-PAHH I, LLC (the "JV"), and the "Master Landlords"—PAHH New College MOB, LLC; PAHH Bellet MOB, LLC; PAHH Wood Street Garage, LLC; PAHH Erie Street Garage, LLC; PAHH Feinstein MOB, LLC; and PAHH Broad Street MOB, LLC, each, a Delaware limited liability company. In addition, Capital One, N.A., as agent for a three lender syndicated loan (collectively, the "Lenders"), holds a first priority mortgage and security interests in substantially all of the JV and Master Landlord Entities' assets, which security interests the JV Entities may not waive, release, or modify without the Lenders' consent. Thus, for the purposes of the relief requested in the Motion only, the Lenders are to participate in the Mediation coextensively with the JV Entities in an effort to reach an efficient resolution for all parties in interest.

*Non-Debtor Entities' Statement In Response to the Motion of HSREP VI Holding, LLC and Its Affiliates to Intervene/Participate in Mediation* [D.I. 2429] (the "<u>MBNF Non-Debtor Entities' Response</u>"); and in support of the JV Entities' *Motion to Intervene/Participate in Mediation* [D.I. 2370] (the "<u>Motion to Intervene</u>").

## **REPLY**

1.　　If the Mediation is indeed limited to the MBNF Non-Debtor Entities' administrative claims, lease rejection claims, and ERISA claims, and related claims for contribution, indemnification and reimbursement against the Debtors' estates, then the JV Entities would not need to participate at this time.  However, if the Mediation involves the consolidation of certain **non-Debtor entities**' assets with the Debtors' estates —which the JV Entities believe to be the case—then the JV Entities need to participate in the Mediation (or be allowed the right to challenge substantive consolidation of non-Debtor entities' assets with the Debtors' estates before any settlement is submitted for Court approval).  *See In re Owens Corning*, 419 F.3d 195, 212 (3d Cir. 2007) ("Creditor opponents of consolidation can nonetheless defeat a *prima facie* showing [ ] if they can prove they are adversely affected and actually relied on debtors' separate existence.").

2.　　As set forth below and in the Motion, the JV Entities will be significantly prejudiced if they are not allowed to participate in the Mediation, while their participation causes no prejudice or delay for the Debtors and Committee.  Therefore, the JV Entities respectfully request that the Court, pursuant to its power under Local Rule 9013-1(k),[3] should amend the *Order Appointing*

---

[3] Local Rule 9013-1(k) provides as follows:

> (k) Amendment of Order. Any request for amendment of an order entered by the Court shall have attached the proposed amended order and a blacklined copy reflecting the changes. Additionally, **any request for amendment of an order entered by the Court shall be made only as follows**:

*Mediator in Connection with Claims by and Between the Debtors' Estate and the MBNF Non-Debtor Entities* [D.I. 2119] (the "Order") to include the JV Entities and the Lenders as Parties to the Mediation.[4]

### A. The JV Entities and Lenders Are Necessary Parties in the Mediation.

3.  Since the Debtors and Committee have gone to great lengths to obfuscate the real issues underscoring the Motion and the Mediation, the JV Entities reiterate that the reason they are seeking to participate in the Mediation is because the Debtors and Committee are attempting to take the assets of non-Debtor entities (but not their liabilities) and use them exclusively to pay the Debtors' liabilities. It should be noted that while the Objection fails to explicitly mention substantive consolidation, this goal is clear from a close reading of the Objection, specifically, paragraph 30, which states:

> The HSRE Entities' best interests are served by delaying or defeating the estates' claims against the MBNF Non-Debtor Parties, so that any value held, for example, by the Freedman Real Estate Entities, flows up to PAHH (rather than to the Debtors) and is thereby available to satisfy the HSRE Entities' claims against PAHH.

Obj., ¶ 30. But this belies the fact that the Debtors have no claim to any value held by the non-Debtor Freedman Real Estate Entities (or any other non-Debtor entities, for that matter). The JV

---

(i) If the amendment is non-material, by certification of Delaware Counsel that the amendment is not material and that all parties in interest have consented to the amendment;
**(ii) By motion under this Local Rule**; or
(iii) By the filing of a stipulation to amend, signed by all interested parties.

Del. Bankr. L.R. 9013-1 (emphasis added).

[4] Local Rule 9013-1(k) applies to the JV Entities' requested relief to amend the Order, and the Debtors and Committee have cited no case law to support their contention that this rule does not apply.[4] Moreover, Federal Rule 60 and Bankruptcy Rule 9024 provide an avenue for parties to seek relief from a judgment or final order binding on them. The Order is not a final order.

relied on the structure of separateness created at the closing of the transactions with Tenet; to collapse this separateness into the Debtors' estates would materially adversely affect the JV.[5]

4. Two years after the Debtors filed the Chapter 11 Cases, and facing "billions"[6] in creditors' claims (including those of the JV Entities), the Debtors and Committee are now attempting to take **non-Debtor** assets to which they have no rightful claim.

5. As reflected on the Debtors' organizational chart attached as Exhibit C to the *Disclosure Statement Relating to Debtors' Chapter 11 Plan of Liquidation* [D.I. 2002], a copy of which is attached hereto as Exhibit A, the Freedman Real Estate Entities are non-Debtor entities owned 100% by non-Debtor entity Philadelphia Academic Health Holdings, LLC ("PAHH"), an entity indirectly owned and controlled by Mr. Freedman and included in the Debtors' and JV Entities' definition of "MBNF Non-Debtor Parties."[7]  Obj., ¶ 13, n. 5.  PAHH is obligated to the JV Entities as a guarantor of the Master Leases and as the maker of a note in the original principal amount of $51,075,000.  PAHH is the direct parent owning 100% of the Freedman Real Estate Entities, the assets of which are unencumbered; therefore, any value held by the Freedman Real Estate Entities is owned by and the proceeds of their assets flows up to PAHH.  This separateness

---

[5] The JV Entities reserve all due process protections and rights to oppose substantive consolidation of the Freedman Real Estate Entities with the estates or diversion of value from the Freedman Real Estate Entities or PAHH.

[6] Debtors allege that the estates are encumbered by billions of dollars of claims; however, when all of the duplicate claims are removed, claims against the estates likely will not exceed $300 million, not to mention the $10.7 million in accrued estate professional fees as of May 31, 2021. *See* Chapter 11 Monthly Operating Report for the Month Ending: 05/31/2021 [D.I. 2412], p. 4. No fee examiner has been appointed in the Chapter 11 Cases.

[7] The JV Entities are happy to adopt the definition of "MBNF Non-Debtor Parties" used by the Debtors and Committee to address their concerns over any difference in the defined term.

4

Case 19-11466-MFW   Doc 2471   Filed 06/25/21   Page 5 of 9

and lack of liens on the Freedman Real Estate Entities' assets was relied upon by the JV Entities and Lenders in entering into the transaction.

6. As described in detail in the Motion, *see id.* ¶¶ 5-15, the JV Entities, the Debtors, and the MBNF Non-Debtor Entities purchased the Hospitals and related assets, including a group of medical office buildings and two parking garages located on or adjacent to the Hospital campuses (the "Master Lease Buildings" [8]), from Tenet in a single transaction for a purchase price of approximately $170 million. Approximately 90% of the total acquisition price was funded through loan proceeds provided by HSRE VI: (i) HSRE VI arranged for a senior secured mortgage loan obtained from the Lenders in the original principal amount of up to $110 million (the "CONA Loan")[9] to finance the acquisition of the Master Lease Buildings; plus (ii) an additional loan in the principal amount of $51,075,000 was made by HSRE VI to PAHH (the "JV Note"). The balance of the purchase price was funded by: (i) an additional "seller note" made in favor of Tenet in the original principal amount of $17.5 million that was paid in full during the pendency of these

---

[8] The Master Lease Buildings were leased to Debtor entity St. Christopher's Healthcare, LLC ("St. Chris"), and St. Chris's obligations under the associated master leases (the "Master Leases") were guaranteed by non-Debtors PAHH and Paladin Healthcare Capital, LLC ("PHC").

[9] As described in the Motion, the JV Entities' lenders (the "Lenders") provided a three-lender syndicated loan in the amount of $110 million, which was collateralized by first priority security interests on substantially all of the JV Entities' assets, including the bankruptcy claims filed by the JV Entities against the Debtors' estates and against certain of the non-Debtor Mediation parties and certain guaranties. These first priority security interests may not be waived, released or modified by the JV Entities without the Lenders' consent. More likely than not, the JV Entities will be requested to "bargain" with their assets during the Mediation process which, in turn, will require modifications to the lien rights of the Lenders. Therefore, the Lenders, like the JV Entities, are real parties in interest and should participate coextensively in the Mediation process so that settlement negotiations can proceed efficiently.

5

EAST\183073261.1

Chapter 11 Cases; and (ii) a loan from MidCap secured by the Debtors' working capital assets that also has been paid in full during the pendency of these Chapter 11 Cases.[10]

7. Therefore, the JV Entities are not only some of the most significant remaining creditors in these Chapter 11 Cases, but upon information and belief they are also collectively PAHH's and PHC's largest creditors. The JV Entities relied on the separate entity structure of PAHH and the Freedman Real Estate Entities, with value flowing directly to PAHH then to the JV Entities to repay the CONA Loan and the JV Note. Accordingly, any proposed taking or consolidation by the Debtors and Committee of the assets or value of non-Debtors PAHH or the Freedman Real Estate Entities, without accepting those entities' liabilities, has a *substantial* negative impact on the JV Entities.

8. As for HSRE's interests being perfectly aligned with the Debtors' on account of HSRE's alleged claims, HSRE holds claims against PHC and PAHH that are not subject to the Debtors' ability to object or to link allowance to recovery of any avoidance action, and which are not subject to dilution from all of the other "billions" of dollars or claims.

9. Accordingly, under Local Rule 9019-5(c)(iv)(A)(5), the JV Entities and the Lenders should be required to attend the Mediation because they are interested parties "whose presence is necessary for a full resolution of the matter assigned to mediation." Del. Bankr. L.R. 9019-5.

### B. The JV Entities' and Lenders' Participation Does Not Delay the Mediation.

10. The JV Entities' participation will not result in significant delay in the Mediation. The Debtors and the Committee already have all of the discovery documents they need; what they

---

[10] *See* Final Order (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Granting Adequate Protection and Modifying the Automatic Stay [D.I. 557].

6

EAST\183073261.1

are demanding from the JV Entities is duplicative of the documents the Debtors possess and the discovery they have received from the MBNF Non-Debtor Entities. The JV Entities would be happy to give the Debtors and Committee the duplicative documents if they would be reasonable in agreeing to a protective order. For example, the Debtors and Committee have demanded that the JV Entities produce a privilege log covering the postpetition period, which is completely unnecessary.

11. Contrary to the Debtors' and Committee's implications that the JV Entities have somehow sat back and failed to act, the JV Entities have been in negotiations with the Debtors and Committee over these very issues for months. In fact, during the MBNF Non-Debtor Entities' negotiation of discovery requests propounded on them, the MBNF Non-Debtor Entities raised concern that their production would breach or waive certain confidentiality agreements or privileges shared with the JV Entities. The JV Entities participated in the very same mediation to permit a final resolution whereby the MBNF Non-Debtor Entities, and separately, the Debtors, could produce documents without fear of exposing themselves to claims by the JV Entities.

12. The JV Entities are willing to share Mediation costs going forward, provided that if the JV Entities are included in the Mediation only for select issues, they would share in the costs as fairly allocated only for those issues.

### C. Reply to the MBNF Non-Debtor Entities' Response.

13. As noted above, the JV Entities are not seeking to delay the Mediation but to participate and to protect their interests. Therefore, the JV Entities would suggest that the Mediation begin with the claims between the MBNF Non-Debtor Entities, Debtors and Committee unrelated to the JV Entities' claims or substantive consolidation. The JV Entities have been negotiating with the MBNF Non-Debtor Entities, Debtors, and Committee for nearly a year

regarding these issues and participating in discovery relating to these issues, and have attempted to enter into a protective order to facilitate discovery, yet it is the Debtors and Committee who continue to act unreasonably. In short, the JV Entities have been trying to accomplish the suggested actions, but due to the Debtors' and Committee's refusal to act reasonably, a protective order is yet to be agreed.

14. Finally, the JV Entities requested that the parties consent to their participation. The MBNF Non-Debtor Entities consented, but the Debtors and Committee did not. Although the substantive consolidation issues cannot be resolved without the JV Entities' participation, the Debtors and Committee are disregarding the JV Entities' rights, as well as their reliance on the value of the Freedman Real Estate Entities to pay the claims of the JV Entities, to the JV Entities' substantial detriment.

15. The Court, pursuant to its power under Local Rule 9013-1(k), should amend its Order pursuant to Local Rule 9013-1(k) to include the JV Entities and the Lenders as Parties to the Mediation.

EAST\183073261.1

| | |
|---|---|
| Dated: June 25, 2021<br>Wilmington, Delaware | Respectfully submitted,<br><br>**DLA PIPER LLP (US)**<br><br>*/s/ Stuart M. Brown*<br>Stuart M. Brown (DE 4050)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801<br>Telephone: (302) 468-5700<br>Facsimile: (302) 394-2341<br>Email: Stuart.Brown@us.dlapiper.com<br><br>-and-<br><br>Richard A. Chesley (admitted *pro hac vice*)<br>444 West Lake Street, Suite 900<br>Chicago, Illinois 60606<br>Telephone: (312) 368-4000<br>Facsimile: (312) 236-7516<br>Email: Richard.Chesley@us.dlapiper.com<br><br>*Counsel to HSREP VI Holding, LLC; HSRE-PAHH I, LLC; PAHH New College MOB, LLC; PAHH Bellet MOB, LLC; PAHH Wood Street Garage, LLC; PAHH Erie Street Garage, LLC; PAHH Feinstein MOB, LLC; and PAHH Broad Street MOB, LLC* |

EAST\183073261.1