UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | Case No. 19-11466(MFW) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*, | . | (Jointly Administered) |
| Debtors. | . | 824 Market Street, Wilmington, Delaware 19801 |
| . . . . . . . . . . . . . . . | . | Wednesday, June 30, 2021, 11:30 a.m. |

TRANSCRIPT OF ZOOM HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors: Mark Minuti, Esquire
SAUL EWING ARNSTEIN & LEHR LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801

For MBNF Non-Debtor Entities: Suzzanne Uhland, Esquire
LATHAM & WATKINS LLP
1271 6th Avenue
New York, New York 10020

(APPEARANCES CONTINUED)

Electronically Recorded By: Lesa Neal, ECRO

Transcription Service: Reliable
1007 N. Orange Street
Wilmington, Delaware 19801
Telephone: (302) 654-8080
E-Mail: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording: transcript produced by transcription service.

APPEARANCES (CONTINUED):

| | |
|---|---|
| For Official Committee Of Unsecured Creditors: | Andrew Sherman, Esquire<br>SILLS CUMMIS & GROSS PC<br>One Riverfront Plaza<br>Newark, New Jersey 07102 |
| For JV Entities: | Stuart Brown, Esquire<br>DLA PIPER LLP (US)<br>1201 North Market Street<br>Suite 2100<br>Wilmington, Delaware 19801<br><br>- and -<br><br>Joseph Kernen, Esquire<br>DLA PIPER LLP (US)<br>One Liberty Place<br>1650 Market Street<br>Suite 5000<br>Philadelphia, Pennsylvania 19103 |

INDEX

MATTER GOING FORWARD: PAGE

Agenda Item 6: Motion of HSREP VI Holding, LLC and Its Affiliates to Intervene/Participate in Mediation [Docket No. 2370; filed: 06/09/21] 5

Court's ruling (Continued) 17

Transcriptionist's Certificate 19

-o0o-

(Proceedings commenced at 11:30 a.m.)

THE COURT: Good morning. This is Judge Walrath, and we're here in the Center City Healthcare case.

I'll turn it over to counsel for the debtor.

MR. MINUTI: Good morning, Your Honor, Mark Minuti from Saul Ewing, counsel for the debtor. Can you hear me okay?

THE COURT: I can. Thank you.

MR. MINUTI: Thank you, Your Honor.

Your Honor, there were six items on today's agenda, only the last of which was listed as going forward and that is the motion of HSREP VI Holdings, LLC and its affiliates to intervene and participate in a mediation, but before we get there, and if we get there, I need to bring to the Court's attention some disturbing actions that have taken place this morning by Mr. Freedman, the ultimate owner of the debtors.

Today marks the two year anniversary of these cases, Your Honor; the petitions were filed back in 2019. And so, accordingly, today is the deadline for filing many of the estate's causes of action, today is the statute of limitations, including, for example, avoidance actions. So, over the last week or so, the debtors have filed approximately 115 avoidance actions to make sure those claims were preserved before the statute of limitations.

In addition, yesterday the debtors instituted an adversary proceeding against 14 of the MBNF non-debtor parties, including Mr. Freedman, and a separate adversary proceeding against the HSRE entities. Both of these complaints were filed prior to the applicable statute of limitations to preserve the claims. The debtors and the committee, Your Honor, had filed -- or, excuse me, the debtors filed motions to seal both complaints, and the debtors' and the committee's intent, Your Honor, was to stay the MBNF action and hopefully move forward with the mediation.

It bears noting, Your Honor, that both of the complaints that were filed were filed at the direction of the debtors' two independent managers, Al Mezzaroba and Michael Jacoby. It bears noting that both Mr. Mezzaroba and Mr. Jacoby were appointed by Mr. Freedman. Mr. Jacoby himself, Your Honor, was chosen and hired by Mr. Freedman on his own last summer without any notice or consultation with the debtors' CRO, the other independent manager, or counsel.

Now, apparently, in retaliation for filing the complaints last night, Mr. Freedman, Your Honor, who is hopelessly conflicted, but he is the manager and the owner of the debtors, has acted negatively and inappropriately. At 6:00 a.m. this morning, Mr. Freedman filed a motion to appoint a Chapter 11 trustee in these cases and he scheduled

that motion for hearing on July 22nd. Later this morning, Your Honor, Mr. Freedman sent notices purporting to fire the two independent managers and Mr. Wilen as the CRO, leaving only Mr. Freedman in charge of the debtors.

Now, we've had little time to look into these inappropriate actions or to talk to the independent managers, but we believe his actions have likely constituted an additional breach of his fiduciary duty, we believe they constitute a violation of the automatic stay, and they may cause harm to the debtors' estates.

In light of these actions, Your Honor, it's the debtors' view that it really makes no sense to go forward today with the HSRE motion to intervene in a mediation that appears, at least at this point, unlikely to happen or certainly not to happen any time soon. So there's no prejudice to HSRE, I would submit, if the matter is continued.

We'd like some time, Your Honor, to consult with the committee, we'd like some time to look into Mr. Freedman's actions and to consult with our independent managers to determine whether in fact an emergency motion is appropriate to seek relief for violating the automatic stay. We'd also like time, quite frankly, Your Honor, to speak with the mediator, Judge Carey, and counsel to the MBNF parties to see if cooler heads can't prevail and we can get this back on

track.

And so, unfortunately, Your Honor, it's not news I had hoped to bring to the Court this morning, but I wanted the Court to be aware of what's going on. So our request, at least for now, is to continue the HSRE motion. Unless Your Honor has any questions of me, I'd like to turn the podium over, the virtual podium over to Mr. Sherman on behalf of the committee, who I know is equally as disturbed by what has happened this morning.

THE COURT: All right. Let me hear from the committee first.

MR. SHERMAN: Good morning, Your Honor, and may it please the Court, Andrew Sherman, Sills Cummis, for the committee. What we just heard from Mr. Minuti is simply outrageous, Your Honor, I think that's the only way to describe those actions. Effectively, as we sit here now, Mr. Freedman is on both sides of the V in a significant lawsuit that was filed before Your Honor under seal. Right now, as we sit here, Mr. Freedman theoretically can control the privileges, can direct the debtor to take actions in his own interests.

So right now the committee is considering, Your Honor -- we just found this out -- whether injunctive relief is appropriate or necessary. I do note, Your Honor, in other situations, I think there was the SS Body Armor case before

Judge Sontchi where people tried to take actions to displace management, Judge Sontchi looked at it in clear abuse, sort of building on the Johns Manville Second Circuit case -- I don't want to argue it today, Your Honor, I just want to tell Your Honor of the simple outrage, the fact that right now the debtor needs to be protected, that Mr. Freedman can't be in a position where he shouldn't be taking any action relating to the estate, he shouldn't be taking any action, you know, affecting -- and theoretically, Your Honor, as I sit here, he could compel the debtors to dismiss the lawsuit that was just filed.

So we -- again, we're considering -- again, it just -- we're talking about -- we're trying to react in real time, Your Honor. So the question of I'm going to get in front of the client and make sure everybody is aware of it and get direction, Your Honor, but viscerally what has transpired over the last number of hours is simply deleterious to this estate, was completely retaliatory and probably consistent with lots of different actions that we have seen since our -- since the committee's involvement in this case.

So, again, I don't know what is before Your Honor -- obviously, only the motions, but, you know, we would urge the Court, knowing where we are, to make sure that the status quo is preserved, nothing is changed by the time we can get a

pleading filed, you know, requesting some level of relief. But obviously, Judge, we are deeply concerned with what's happened, we think it is clearly a violation -- and not just -- you know, a willful violation of the automatic stay subject to all the remedies encompassed by such a willful action.

So, again, Your Honor, I just wanted to express those concerns to the Court, to the extent that the Court is considering or would consider some kind of interim remedy by the time we get in with some type of injunctive relief that would prevent any harm, we would only urge the Court to see if something can be fashioned so that no harm is done by the time we can get in and seek to remedy what's happened over the last, what is it, five and a half hours that we found out about this -- or actually I only found out about in the last two hours or something.

So the only other thing I have, Your Honor, is on this -- the Chapter 11 trustee motion was filed under seal, Ms. Uhland sent it to me for professionals' eyes only. I'd like to be able to share it with the committee, so if the Court would permit that we could take that sealed motion -- the committee does have confidentiality restrictions in its bylaws, it won't go out, but we need to share this motion with our committee so we can react properly.

Other than that, Your Honor, I'm prepared to

answer any questions, but, again, I just wanted to express to the Court our deep concern and effective outrage at what's happened over the last number of hours.

MS. UHLAND: Your Honor, this is Suzzanne Uhland of Latham & Watkins on behalf of the MBNF non-debtors. May I be heard?

THE COURT: You may.

MS. UHLAND: Let me start with the first request -- or the last request first. We are in the process of filing a motion to seal the trustee pleading; our understanding is we have three days to do that. Right now, it is sealed. I did provide it to Mr. Sherman, as well as counsel for the debtors, on a -- and I provided it to Mr. Sherman on a professionals' eyes only basis until there is our seal motion before the Court. I don't think it's appropriate for Mr. Sherman to seek to expand the agreement that he made this morning to maintain it on a professionals' eyes only basis. And so I'd just like to be clear about our position on that.

Next, where we are is that Joel Freedman is and has always been the chairman of the debtors. Joel Freedman appointed an independent director that prior to -- or around the beginning of the Chapter 11 case, that was before my involvement, and a second independent director last summer. We have been working to restore corporate governance to these

debtors, but we have been met with a brick wall, and we are unable to have any evidence that there's been any proper board meetings or actions. There's never been a committee appointed of the independent directors. Those have all been under discussion, but we've never gotten to an agreement with that.

Our frustration is with basically governance deadlock and we think it's, you know, an appropriate -- to try to move these cases forward. We're not trying to damage the estate; we're one of the largest creditors of the estate, we're trying to preserve the estate and what we're trying to do is move these cases forward. And we are doing this in the interest of creditors, all creditors, and that is our intent in what we're doing.

As far as Mr. Freedman being on both sides of the V, as I said, he is the chairman, he was always the chairman, he's always been on both sides of the V. At this point, our understanding is the debtors still have their general counsel as an officer and, you know, he is -- still remains there, as well as Mr. Freedman as chairman. Mr. Freedman has never engaged during this case in a manner in which debtors' counsel has asserted he had a conflict, even if he disagreed with that determination, and that is where we are today.

We agree with Mr. Minuti and we have been in discussions already with Judge Carey about these matters, who

also expressed the hope that maybe after a cooling-off period we'll be able to discuss all of these matters together. And, you know, on behalf of my clients, we're open to that and that's the mediator's recommendation and we're willing to accept that. But as far as talking motions, speaking motions today about, you know, enjoining my client, it's not even before this Court and our trustee motion isn't to be heard until the 22nd, I don't see any reason for extraordinary relief at -- you know, based at this point.

THE COURT: Well, does he have any intention to take any other actions?

MS. UHLAND: No.

(Pause)

THE COURT: Well, it just seems a little entirely too coincidental that his actions occurred today.

Mr. Minuti, have you been able to be in contact with general counsel?

MR. MINUTI: Your Honor, if they're speaking about John Dinome, we have exchanged emails today with Mr. Dinome. We have not had a chance to speak with him directly about what has happened and what the ramifications are. We've only exchanged emails with the independent board members, we're trying to set up a call with them as quickly as we can to speak with them, you know.

We have concerns, Your Honor, in terms of, you

know, who are we taking direction -- who we, Saul Ewing, are taking direction from right now. A payroll was due this week, for example. I mean, things are happening at the company, you know, outside of the court that we need direction on. I mean, if Ms. Uhland is telling me that we can rely on Mr. Dinome for that, you know, we will proceed in that fashion.

But, look, I think Your Honor is right. You know, I'm not going to get into the merits of the trustee motion. This is all a litigation tactic, this is all a pretext. The timing of the motion and what -- the actions that have been taken speaks volumes. And, you know, look, we'd like an opportunity to absorb what has happened, figure out what makes the most sense for this estate, consult with our clients, the independent board, consult with the independent board members, consult with the committee, and then react.

And as I said, Your Honor, you know, we are in contact with the mediator, we will enlist the mediator's help to see if cooler heads can prevail here and we can make sure that no harm is done to this estate, but unless and until we're certain that that is not going to happen, you know, we have to look into other avenues, as Mr. Sherman has said, about steps we need to -- may need to take to protect the estate.

So, you know --

MS. UHLAND: So, Your Honor --

MR. MINUTI: And let me just finish, if you don't mind.

MS. UHLAND: Sorry.

MR. MINUTI: And so, to be quite candid, Your Honor, this is a first for me in my career. I'm not really sure what the rules are in light of what's happened this morning, and that's why we need time to digest it and figure it out.

MS. UHLAND: Your Honor, what I would propose that we do is for let's say a week that, on behalf of Joel Freedman as chairman and shareholder, I agree that John Dinome is vested with the powers of the board of managers of the debtor, who's the general counsel, and that way the debtor has operating governance for the next week. And I can also agree that for the next week the shareholder will take no corporate action.

MR. SHERMAN: Your Honor, it's Andrew Sherman. May I be heard?

THE COURT: You may.

MR. SHERMAN: Thank you, Your Honor. To the extent the actions are violative of the automatic stay, Your Honor, I don't want to have those endorsed in any respect. So if the conduct that occurred this morning violated the injunction, obviously, 362 would provide it void *ab initio*.

So, again, we're now -- Ms. Uhland is working under a hypothesis that somehow the conduct didn't violate the stay and the stay --

THE COURT: Well, I'm not going to decide that today, Mr. Sherman, that --

MR. SHERMAN: Understood, Your Honor.

THE COURT: So if we can have a stand-down for the next week, have an agreement that general counsel has the authority to act for the debtor and to consult with counsel for the debtor regarding the necessary actions for the debtor that need to occur in the next week, then let's see if that -- I think that's acceptable. And I'm happy to continue this for a week or ten days, but I hate to put pressure on the mediator to resolve this over the 4th of July holiday.

MS. UHLAND: Your Honor, we would agree that that one-week period can be extended by Judge Carey.

THE COURT: All right. I will set -- continue this to July 7th at 11:30 in the morning. And if the parties can agree or Judge Carey suggests that it be continued for a further period of time, I will continue it. But I agree, I shouldn't go forward with Mr. Brown's motion -- oh, I'm sorry, I have a hearing, I'm reminded, at 11:30.

So, how about July 7th at 2 o'clock? Let me see. I have -- well, okay, I have other matters at that time too. July 7th at 3 o'clock, does that work for the parties?

MS. UHLAND: Yes, Your Honor.

MR. BROWN: So, Your Honor, Stuart Brown, for the record, may I be heard?

THE COURT: You may.

MR. BROWN: At this point I'd like to just be heard with a question. I didn't catch or hear with clarity Your Honor's remark about the JV motion to intervene or participate in the mediation and whether it's your intention that that matter be moved to the July 7th hearing date.

THE COURT: Yes, we should move it to the July 7th hearing date as well.

MR. BROWN: Your Honor, I do want to point out preliminarily that while the (indiscernible) filed against the JV entities is filed under seal, the committee is party to neither of those actions and I find that a significant fact in the context of our motion to participate in mediation.

THE COURT: All right. Well, that can be argued on the 7th.

MR. BROWN: Okay. Thank you, Your Honor.

MR. MINUTI: Your Honor, it's Mark Minuti. May I ask just -- I just want to ask one point of clarification regarding the governance between now and the 7th. Do I understand correctly that Mr. Dinome has the independent authority to make decisions on behalf of the debtor without

the need to consult with Mr. Freedman?

THE COURT: Ms. Uhland?

MS. UHLAND: Yes.

THE COURT: Yes.

MS. UHLAND: And the board of managers, yes.

MR. MINUTI: Thank you, Your Honor. You know, obviously, we have to discuss that with Mr. Dinome and make sure he's comfortable, we will do that. If there's an issue, I will certainly let the Court and the parties know.

THE COURT: All right.

MR. BROWN: And, Your Honor, Stuart Brown. If I may, one final remark, and that is I was going to introduce my partner Joseph Kernen to Your Honor. He's been admitted *pro hac vice* into this case; he was going to argue the intervention motion. I'm conferring with him and I just received that -- that the July 7th at 3 o'clock date works for his calendar as well. Thank you, Your Honor.

MR. KERNEN: Good morning, Your Honor.

THE COURT: Good morning. All right, well, I'll see you and the other parties back on the 7th or, if this can be moved, I would move your motion to whatever additional date we have the status conference to -- if it appears that Judge Carey needs the additional time and can make some progress on at least stabilizing the debtors' situation, so that we can take up other matters. Okay?

MR. BROWN: Yes, Your Honor. We would request that we be provided at least 24 hours notice of whether the matter is going to go forward on the 7th or not.

THE COURT: All right, I will direct Mr. Minuti to let you know that then.

MR. BROWN: Thank you, Your Honor.

MR. MINUTI: Will do.

THE COURT: All right.

MR. MINUTI: Your Honor, unless there's anything else, I do think that completes this morning's hearing. Thank you.

THE COURT: All right, thank you. We'll stand adjourned then.

COUNSEL: Thank you, Your Honor.

(Proceedings concluded at 11:52 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ Tracey Williams July 1, 2021

Tracey Williams, CET-914

Certified Court Transcriptionist

For Reliable