IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| Debtors. | ) |
| | ) Re: D.I. 2400 |
| | ) |

**HSREP VI HOLDING, LLC AND ITS AFFILIATES' OBJECTION TO VICINITY'S MOTION TO ENFORCE 2019 STIPULATION AS THIRD-PARTY BENEFICIARY AND CROSS-MOTION TO COMPEL DEBTORS, PROPCOS OR MASTER LEASE GUARANTORS TO PAY UTILITY OBLIGATIONS**

HSREP VI Holding, LLC ("HSRE VI") and its affiliates (collectively, the "JV Entities" [2]), by their counsel, DLA Piper LLP (US), submit this objection to Vicinity Energy Philadelphia, Inc.'s ("Vicinity") *Motion to Enforce 2019 Stipulation As Third Party Beneficiary* [D.I. 2400] (the "Motion") and *Cross-Motion of HSREP VI Holding, LLC And Its Affiliates' For Entry of An Order Compelling Debtors, Propcos Or Master Lease Guarantors To Pay Utility Obligations* (the "Cross-Motion") filed contemporaneously herewith.

In further support of this objection (the "Objection") and Cross-Motion, the JV Entities state as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]     The other relevant affiliates of HSRE VI that form the JV Entities are: HSRE-PAHH I, LLC (the "JV"), and the "Master Landlords"—PAHH New College MOB, LLC; PAHH Bellet MOB, LLC; PAHH Wood Street Garage, LLC; PAHH Feinstein MOB, LLC; and PAHH Broad Street MOB, LLC.

**JURISDICTION**

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**RELEVANT BACKGROUND**

4.      In January 2018, as part of a transaction involving the Debtors' acquisition of the operations of Hahnemann University Hospital and St. Christopher's Hospital for Children in Philadelphia, PA (the "Hospitals") from Tenet Healthcare Corporation and certain of its affiliates (collectively, "Tenet"), the Broad Street and Front Street Entities purchased the real estate in which the Hospitals operated and the JV Entities acquired from Tenet a group of medical office buildings and two parking garages (the "Master Lease Buildings") located on or adjacent to the Hospital campuses.

5.      The JV owns and controls several entities relevant here (referred to as the "Master Landlords"): PAHH New College MOB; LLC, PAHH Bellet MOB, LLC; PAHH Broad Street MOB, LLC; PAHH Feinstein MOB, LLC; and PAHH Wood Street Garage, LLC.  Each Master Landlord is a special purpose entity that acquired a medical office building or parking garage that is generally adjacent to the Hospitals.

6.      PAHH is the parent of and wholly owns Debtor Philadelphia Academic Heath System, LLC ("PAHS").  PAHH is a holding company that also owns the equity of Front Street Healthcare Properties, LLC; Front Street Healthcare Properties II, LLC; Broad Street Healthcare Properties, LLC; Broad Street Healthcare Properties II, LLC f/k/a Center City Physician

2

Associates, LLC; Broad Street Healthcare Properties III, LLC f/k/a St. Christopher's Physician Associates, LLC  (collectively, the "Broad Street Propcos" or "Propcos," and together with Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC the "MBNF Non-Debtor Entities") and indirectly owns the other subsidiaries of PAHS that are Debtors.

7.      The real estate and Hospital buildings, or the proceeds thereof, are owned by certain special purpose entities that are included as MBNF Non-Debtor Entities and are unencumbered by liens.  The Hahnemann Hospital buildings are owned by the Propcos.

8.      Concurrently with the Debtors' acquisition of the Hospitals and the JV Entities' acquisition of the Master Lease Buildings, certain JV Entities, as landlords, and Debtor St. Christopher's Healthcare, LLC, as tenant (the "Master Tenant"), entered into master leases (collectively, the "Master Leases") pursuant to which the Master Tenant leased each of the Master Lease Buildings on an "absolute triple net" basis.

9.      The Master Tenant, Debtor St. Christopher's Healthcare, LLC, was obligated to pay all sums due and coming due under the Master Leases, including the stated base rent and all costs of operating, repairing, and maintaining the Master Lease Buildings.

10.      The obligations of the Master Tenant under the Master Leases are guaranteed by non-debtor affiliate PAHH and non-debtor affiliate Paladin Healthcare Capital, LLC (together with PAHH, the "Master Lease Guarantors" or the "Guaranty Agreements," as applicable).[3]

11.      On June 30 and July 1, 2019, PAHS and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned cases.

---

[3]      The Guaranty Agreements, Master Leases, and the subleases are voluminous and will be provided upon request if relevant.

12.     The Master Leases were deemed rejected by the Debtors in accordance with a stipulation (the "Stipulation") approved by the Court on November 25, 2019 [D.I. 1057].

## **OBJECTION**

### I.     **Vicinity's Motion is Procedurally Improper, Should Have Been Filed as a Separate Adversary Proceeding[4] and Fails to Include Necessary Parties**

13.     Vicinity's Motion is procedurally improper because it seeks relief that is properly requested only through the commencement of an adversary proceeding.

14.     Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requires that a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, must be sought through an adversary proceeding. Fed. R. Bankr. P. 7001.

15.     Rule 7001 states, in pertinent part, the "following are adversary proceedings… (1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee….". *Id.*

16.     Therefore, the plain language of the Rule 7001 dictates that this issue should have been raised in an adversary complaint, not by motion.

17.     Additionally, the Federal Rules of Civil Procedure and Rule 7019 of the Bankruptcy Rules require: "A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double,

---

[4]     The JV Entities' motion, however, may be properly brought as a motion as it seeks to join necessary parties to the contested matter commenced by Vicinity.

multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party." Fed. R. Civ. P. 19(a); Fed. R. Bankr. P. 7019.

18.     The Debtors, Propcos and Guarantors are directly liable for these outstanding amounts under the Guaranty Agreement and Stipulation, and absent their presence, complete relief cannot be accorded.  As such Vicinity should have included all of them as necessary parties to their Motion.  Failure to do so renders the Vicinity Motion procedurally improper.

19.     Because Vicinity filed the Motion improperly under Bankruptcy Rules 7001 and 7019, the Motion should be denied.

## II.     Vicinity Is Not a Third-Party Beneficiary to the Stipulation

20.     The Stipulation was entered into between the Debtors and the Master Landlords for purposes of agreeing upon rejection of the leases and administrative expense claims. Neither of these parties showed any intent for Vicinity, or any other utility company, to be a beneficiary of the Stipulation.

21.     Although payment of utilities is mentioned briefly in the Stipulation, it is only a small portion of the Stipulation and tangentially related to the overarching purpose of the Stipulation—*i.e.* rejection of the leases.

22.     In Delaware, essential to a third party's right of enforceability is the intention of the contracting parties to view that party as a beneficiary. *Triple C Railcar Serv., Inc. v. City of Wilmington*, 630 A.2d 629, 633 (Del. 1993); *see also Empire Fire & Marine Ins. Co. v. Miller*, 2012 WL 1151031, at *5 (Del. Com. Pl. Apr. 5, 2012) (a party 'qualifies as a third party beneficiary' with standing to pursue a contract claim if it is an '*intended beneficiary*,' as opposed to an 'indirect beneficiary').

EAST\183587042.7

23.    A party is an intended beneficiary where the third party stands to benefit from the contract "and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate the promisee intends to give the beneficiary the benefit of the promised performance." *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *3 n.25 (Del. Ch. Feb. 17, 2004).

24.    Indirect beneficiaries do not have standing to bring suit on an underlying contract or agreement. *Triple C Railcar Serv., Inc.,* 630 A.2d at 634.

25.    A utility company, such as Vicinity, cannot be considered an intended beneficiary of the Stipulation when Vicinity is never specifically mentioned, and utility payments in general are mentioned only once in the context of the rejection of the Master Leases. *See Iowa Power & Light Co. v. Abild Const. Co.*, 259 Iowa 314, 330, 144 N.W.2d 303, 312 (1966) ("a stranger to the contract must at least show that the contract was intended for his direct benefit before he can avail himself of the exceptional privileges of suing for breach of the contract."

26.    Under Delaware law, indirect beneficiaries do not have standing to enforce the contract in question. Accordingly, Vicinity has no standing to enforce the Stipulation.

27.    The Master Landlords paid their share of the charges and the Debtors, Propcos or Master Lease Guarantors should be compelled to pay the balance because otherwise they would be unjustly enriched by the goods and services provided by Vicinity for the steam services provided by Vicinity from the period of November 15, 2019 through December 9, 2019 on their properties.

## MOTION TO COMPEL

28.    The obligations of the Master Tenant under the Master Leases are guaranteed by Master Lease Guarantors. As such, the JV Entities have also filed the corresponding Cross-Motion,

6

seeking an order compelling the Master Lease Guarantors to pay the outstanding utility obligations to Vicinity.

## I.      The Debtors Are Liable for the Remaining 46% of the Utility Services

29.      Section 503 of the Bankruptcy Court provides that, after notice and a hearing, there shall be allowed administrative expenses, including the actual, necessary costs and expenses of preserving the estate.  *See* 11 U.S.C. § 503(b)(1)(A).  "Courts have discretion to determine when an administrative expense will be paid." *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) (*citing HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002)). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors."  *Id.*

30.      The utility payments outstanding to Vicinity constitute such administrative expenses payable by the Debtors under the Master Leases.

## II.     The Propcos Are Liable for the Remaining 46% of the Utility Services Under the Reciprocal Easement Agreement

31.      The Stipulation contains a provision providing that "The Master Landlords shall commence payment of all utility services for the Center City Campus comprising the land and improvements …beginning for service after November 15, 2019.  The allocation for such utilities shall be as agreed by the Debtors and the Master Landlords and/or the Master Landlord's agent, in good faith." Stipulation, at ¶ 10.

32.      Unpaid invoices for goods sold and services rendered from the period of November 15, 2019 to December 9, 2019 are subject to this provision.

33.      The foregoing requirement that the Master Landlords pay for utility services provided to the entire Hospitals' campus was based on the shared nature of certain utility service to the Hospitals' campus.

7

34.     Some or all of the Hospitals' campus was serviced by shared water or steam lines. However, the Master Landlords and the MBNF Entities have already come to an agreement on allocation of utilities, set forth in a reciprocal easement agreement that was drafted and signed by the parties in 2018 (the "REA").

35.     Under the REA, the parties agreed to allocate responsibility for utility payments based on each entity's corresponding square footage of the properties.

36.     Under the REA, the Master Landlords are responsible for their individual usage of the utilities proportionately on the basis of the lot floor area of each property.

37.     As stated in Vicinity's Motion, 54% of the utilities provided by Vicinity for the outstanding invoices were determined to be the responsibility of the JV Entities under this agreed upon calculation, leaving the Debtors and the Propcos responsible for the remaining 46% of the cost.

38.     The rate stated by Vicinity in the Motion does not reflect the accurate rate under the then-current contract.

39.     The JV Entities remitted to Vicinity their portion of the utility cost under the REA and as such have fulfilled their responsibilities under both the Stipulation and the REA. The Debtors, Propcos and Guarantors are responsible for the remainder of the cost, as provided for in the REA and the Stipulation, without waiver of the JV Entities' claim against the Guarantors for JV Entities' payment of this or any other expense or any other claim or cause of action.

40.     Should Debtors or Propcos avoid payment of their portion of the utilities, they would have benefitted in the usage of the services and receipt of the goods at the cost of the JV Entities, contrary to the provisions in the REA.

41.     The Master Lease Guarantors have guaranteed obligations of the Master Tenant under the Master Leases should the Master Tenant not be able to pay.

42.     As such, the interests of equity would have Vicinity proceed exclusively against either the Debtors or the Master Lease Guarantors, who are ultimately liable for these payments under the Guaranty Agreements, rather than against the JV Entities.

[*Remainder of Page Intentionally Left Blank*]

9

## CONCLUSION

WHEREFORE, HSREP VI Holding, LLC and its affiliates respectfully request that the

Court deny the Motion. and grant the Cross-Motion.

Dated:   July 12, 2021           Respectfully submitted,
         Wilmington, Delaware

**DLA PIPER LLP (US)**

*/s/ Stuart M. Brown*
Stuart M. Brown (DE 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email:  Stuart.Brown@us.dlapiper.com

-and-

Richard A. Chesley (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email:  Richard.Chesley@us.dlapiper.com

*Counsel to HSREP VI Holding, LLC; HSRE-PAHH I, LLC;
PAHH New College MOB, LLC; PAHH Bellet MOB, LLC;
PAHH Wood Street Garage, LLC; PAHH Erie Street
Garage, LLC; PAHH Feinstein MOB, LLC; and PAHH
Broad Street MOB, LLC*

EAST\183587042.7