**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) |
| *et al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Hearing Date: September 23, 2021 at 10:30 a.m. (ET)** |
| | ) **Objection Deadline: September 16, 2021 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING
PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC TO ENTER INTO
AN AGREEMENT TO TRANSFER RADIOACTIVE MATERIALS LICENSE
PURSUANT TO 11 U.S.C. § 363, (II) AUTHORIZING PHILADELPHIA ACADEMIC
HEALTH SYSTEM, LLC TO TRANSFER RADIOACTIVE MATERIALS LICENSE,
AND (III) GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**"), by and through their undersigned counsel, file this

motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "**Proposed Order**"), pursuant to sections 363 and 105(a) of title 11 of the United

States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), (i) authorizing Philadelphia Academic Health System, LLC

("**PAHS**") to enter into an agreement ("**Agreement**") with Perma-Fix Environmental Services Inc.

("**Perma-Fix**") to transfer a radioactive materials license (the "**License**") for maintenance and

future disposal of a pacemaker (the "**Pacemaker**"), a copy of which is attached hereto as **Exhibit**

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number,
are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St.
Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA,
L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center,
L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics,
L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS
IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 216 N. Broad
Street, 4th Floor, Philadelphia, Pennsylvania 19102.

**B**, (ii) authorizing PAHS to transfer the License to Perma-Fix in accordance with the Agreement, and (iii) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

## Jurisdiction and Venue

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 6004.

## General Background

3.      On June 30 and July 1, 2019, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On July 15, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al.* [D.I. 182] (the "**Committee**").

38899199.4

4.     A description of the Debtors' businesses and the reasons for commencing these Chapter 11 Cases is set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2].

## Specific Background

A.    **Overview of the Pacemaker and the License**

5.     In 1975, a physician (the "**Physician**") associated with Hahnemann University Hospital surgically implanted the Pacemaker in a patient (the "**Patient**") that was 23 years old at the time.  The Pacemaker is a Coratomic model C-100, manufactured by Coratomic, Inc. (the "**Manufacturer**"), and is powered by a radioactive substance, which is hermetically sealed inside a welded titanium case.  Pacemakers of this kind were designed to be extremely durable to prevent the release of radioactive material under credible accident scenarios, including those scenarios involving extreme force, heat, pressure or corrosion.

6.     The Pacemaker is covered by the License, specifically identified as Radioactive Materials License PA-1616SNM, issued by the Pennsylvania Department of Environmental Protection ("**PADEP**") to PAHS, a copy of which is attached hereto as **Exhibit C**.[2]  The License imposes certain responsibilities and obligations upon PAHS for reporting requirements, maintenance, and the explantation (i.e., removal) and proper disposal of the Pacemaker upon the Patient's death.

7.     In 1995, the Patient received a replacement lithium battery-powered pacemaker and the Pacemaker was disconnected but not removed.  The Pacemaker is no longer functioning and the Patient relies on the lithium battery-powered pacemaker, however, the Pacemaker remains

---

[2]     The name of the Physician and the Radiation Safety Officer have been redacted from Exhibit C.

38899199.4

implanted in the Patient's chest.  Removal of the Pacemaker is not warranted as it would require

an invasive surgical procedure with the attendant risks.

8.       Notwithstanding the fact that the Pacemaker is now disconnected and no longer

functioning, the License imposes two continued responsibilities and obligations, among others,

upon the Debtors and are particularly relevant to this Motion:

(a)      Condition 12 of the License specifies that the Physician is responsible for

follow-up, explantation and return of the Pacemaker to the Manufacturer for proper disposal.  The

Physician, however, is no longer affiliated with the Debtors, but under the License, the Debtors

remain responsible for the follow-up reporting and recovery procedures.  Due to the bankruptcy

filings and cessation of business operations, the Debtors have no remaining medical physicians to

perform these tasks.  Given the Patient's good health and current age, the time for explantation of

the Pacemaker is uncertain.

(b)      Condition 14 of the License requires that the Debtors continue follow-up

and reporting procedures for the Pacemaker during the life of the Patient and follow procedures

for recovery and disposal of the Pacemaker by return to the Manufacturer upon the death of the

Patient.  Semi-annual follow-ups are conducted with the Patient to confirm the Patient's contact

information remains accurate and remind the Patient of the need to notify the licensee when the

Pacemaker is available for removal and disposal.  These follow-ups continue to be performed by

the Debtors' Radiation Safety Officer, who is a consultant contracted by the Debtors.  The Patient

and the Patient's relatives know they are required to notify the Debtors when the Pacemaker is to

be explanted for retrieval.

9.       Although the License requires the Pacemaker to be returned to the Manufacturer

for proper disposal, that is not possible because the Manufacturer is no longer in business.  In light

38899199.4

of the Manufacturer's inability to receive the Pacemaker, the Debtors have been in contact with the proper regulatory bodies regarding the go-forward plan for explantation and proper disposal of the Pacemaker.

10.     Due to the circumstances described herein, the Debtors cannot continue to indefinitely maintain and meet the obligations[3] under the License.  Accordingly, the Debtors seek authorization to enter into the Agreement to transfer the License, which will provide assurances to all parties that the Pacemaker will be properly monitored and maintained throughout the life of the Patient and explanted and disposed of at the proper time.

**B.      The Debtors' Outreach for Proposals**

11.     In light of the issues described herein, the Debtors canvassed the marketplace for qualified third parties capable of assuming the License and the obligations and responsibilities thereunder.  The Debtors first approached state agencies of the state where the License was issued and the state where the Patient currently resides (which is outside of Pennsylvania), however, the Debtors could not reach an agreement with these certain state agencies for their assuming responsibility for the Pacemaker and termination of the License.

12.     The Debtors thereafter identified three (3) private companies that were qualified to assume the License and responsibilities and obligations thereunder.  After considering proposals from two of these companies (the third company declined to submit a proposal), the Debtors selected Perma-Fix based on its qualifications, reputation in the industry, and price.  Additionally, Perma-Fix has extensive history dealing with PADEP, including Perma-Fix's performance of several similar projects involving PADEP.

---

[3]      For the avoidance of doubt, the Debtors are and will remain current on all obligations and responsibilities in accordance with the License through a contractual agreement with West Physics, an entity the Debtors retained.  Absent further renewal, the West Physics contract will expire in the coming months.

38899199.4

13.     The Debtors and Perma-Fix engaged in extensive arms'-length negotiations for the transfer of the License, the product of which is the proposed Agreement, which will provide a benefit to the Debtors and other parties in interest, as well as relieve any concerns with respect to continuing obligations under the License.

**C.     The Agreement**

14.     The Debtors propose to enter into the Agreement with Perma-Fix to facilitate the transfer of the License.

15.     Under the Agreement, the Debtors will transfer the License to Perma-Fix and Perma-Fix will assume all responsibilities and obligations under the License.  Perma-Fix proposes a cost estimate[4] in the aggregate amount of $48,644, representing a combination of initial costs (the "**Initial Costs**") for the transfer of the License and regulatory requirements, as well future costs (the "**Future Costs**" and together with the Initial Costs, the "**Proposed Costs**") over the 20-year estimated period of performance.  The Proposed Costs over the lifetime of the Agreement average approximately $2,432 per year.

16.     The Initial Costs include license transfer costs for both Perma-Fix and PADEP for administrative licensing requirements imposed by PADEP.  The Initial Costs also include licensing conversion costs to convert the License to a decommissioning license for the eventual explantation and disposal of the Pacemaker.  Future Costs include twice-yearly communication with the Patient or the Patient's family, periodic license maintenance, execution, and eventual termination, and final disposal of the Pacemaker.  As detailed herein, the Debtors found Perma-Fix to be both the most qualified and cost-effective third-party to transfer the License to for proper maintenance and

---

[4]     For the avoidance of doubt, the costs indicated in the Agreement and summarized herein are Perma-Fix's estimates based on prior dealings with similar licenses, anticipated hours attributed to Perma-Fix's potential involvement and PADEP's potential involvement, as well as future economic factors, among other things. Accordingly, the costs are estimated and are subject to change.

administration, which in turn relieves the Debtors of the burden to maintain the License, and ensures that the Pacemaker is tracked and will be properly disposed of when it is removed from the Patient.

17.    In connection with the Proposed Costs, the Debtors will pay to Perma-Fix (i) its actual costs for preparing an application to PADEP to transfer the License and coordinating with PAHS and PADEP to facilitate approval of the application and transfer of the License, as well as any fees assessed by PADEP to review the application, and (ii) a lump sum for future costs to maintain the License and for financial assurance (in an amount to be determined by PADEP) to ensure explantation and proper disposal of the Pacemaker.

## Relief Requested

18.    By this Motion, the Debtors request entry of the Proposed Order (i) authorizing the Debtors to enter into the Agreement with Perma-Fix to transfer the License, (ii) authorizing the Debtors to transfer the License to Perma-Fix in accordance with the Agreement, and (iii) granting related relief as is necessary and required.

## Basis for Relief Requested

19.    Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "Section 363 permits the trustee, after notice and a hearing, to use, sell, or lease property of the estate outside of the ordinary course of business." *In re Rickel Home Ctrs.*, 209 F.3d 291, 297 (3d Cir. 2000). "Property of the estate" includes, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

38899199.4

20.     In determining whether to authorize the use, sale or lease of property of the estate under section 363 of the Bankruptcy Code, courts require the debtor to show that a sound business purpose justifies such actions. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (*citing In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  Specifically, to approve a transaction, courts should consider: (a) whether a sound business justification exists for the transaction, (b) whether accurate and reasonable notice of the transaction was given to interested parties, (c) whether the transaction will produce a fair and reasonable price for the property, and (d) whether the parties have acted in good faith. *Del. & Hudson Ry*. 124 at 176; *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

21.     First, the Debtors believe that  entry into the Agreement is well within the Debtors' business judgment and is in the best interests of the estates.  Here, the Debtors seek authorization to enter into the Agreement with Perma-Fix to assure the Patient and PADEP that the Pacemaker will be properly maintained throughout the time of the Patient's life and properly disposed of after explantation from the Patient.  Due to the bankruptcy filings and cessation of business operations, the Debtors have no remaining medical physicians to perform these tasks.  Given the Patient's good health and the fact that the time for explantation of the Pacemaker is uncertain, the Debtors seek authorization to enter into the Agreement with Perma-Fix, a company that is experienced and capable of complying with all requirements and obligations with respect to the License, to fulfill the continuing obligations thereunder.  Additionally, the circumstances surrounding the maintenance of the License and eventual explantation will remain unchanged and entry into the Agreement and transfer of the License will provide comfort and continuity to all parties involved.

22.     Second, while the Debtors continue to meet the current obligations under the License, the Debtors were required to expend slightly in excess of $15,000 to do so for a six (6)

38899199.4

month period.  In light of that, the Debtors sought and negotiated the Agreement with Perma-Fix that not only covers an extended period of the License (20 years), but also provides a more cost-effective service that is more favorable to the Debtors and their estates.  Thus, entry into the Agreement authorizing the Debtors to transfer the License provides a fair and reasonable price for maintenance of the License.

23.    Lastly, the Debtors submit that accurate and reasonable notice of this transaction was provided to all parties in interest and the Debtors have negotiated with those parties and brought forth this Motion in good faith.

24.    Based on the foregoing, the Debtors respectfully submit that entry into the Agreement and transfer of the License in accordance therewith is appropriate under the circumstances and reflects the Debtors' sound business judgment.

**Reservation of Rights**

25.    Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, or (iv) an approval, adoption, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party-in-interest's rights to dispute such claim subsequently.

38899199.4

**Notice**

26.     Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the Committee; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; (xii) the Pennsylvania Department of Environmental Protection; (xiii) the Patient; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**No Previous Request**

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page intentionally left blank]*

38899199.4

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the

relief requested herein and such other and further relief as the Court may deem just and appropriate.


Dated: September 2, 2021                    **SAUL EWING ARNSTEIN & LEHR LLP**

                                            By: */s/ Matthew P. Milana*
                                                Mark Minuti (DE Bar No. 2659)
                                                Monique B. DiSabatino (DE Bar No. 6027)
                                                Matthew P. Milana (DE Bar No. 6681)
                                                1201 N. Market Street, Suite 2300
                                                P.O. Box 1266
                                                Wilmington, DE  19899
                                                Telephone: (302) 421-6800
                                                Fax: (302) 421-5873
                                                mark.minuti@saul.com
                                                monique.disabatino@saul.com

                                                        -and-

                                                Jeffrey C. Hampton
                                                Adam H. Isenberg
                                                Shannon A. McGuire
                                                Centre Square West
                                                1500 Market Street, 38th Floor
                                                Philadelphia, PA 19102
                                                Telephone: (215) 972-7777
                                                Fax: (215) 972-7725
                                                jeffrey.hampton@saul.com
                                                adam.isenberg@saul.com
                                                shannon.mcguire@saul.com

                                                *Counsel for Debtors and Debtors in Possession*

38899199.4