IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:
:
CENTER CITY HEALTHCARE, LLC D/B/A
HAHNEMANN UNIVERSITY HOSPITAL, *et*
*al.*,[1]
:
Debtors.
:
------------------------------------------------------------ x

Chapter 11

Case No. 19-11466 (MFW)

(Jointly Administered)

Re: Docket Nos. 2573 and 2578

### THE MBNF NON-DEBTOR ENTITIES' OBJECTION TO THE CROSS-MOTION OF HSREP VI HOLDING, LLC AND ITS AFFILIATES FOR ENTRY OF AN ORDER COMPELLING DEBTORS, PROPCOS OR MASTER LEASE GUARANTORS TO PAY UTILITY OBLIGATIONS

The MBNF Non-Debtor Entities,[2] by and through their undersigned counsel, hereby submit this objection to (i) *HSREP VI Holding, LLC and Its Affiliates' Objection to Vicinity's Motion to Enforce 2019 Stipulation as Third-Party Beneficiary and Cross-Motion to Compel Debtors, PropCos or Master Lease Guarantors to Pay Utility Obligations* [Docket No. 2573] and (ii) the *Cross-Motion of HSREP VI Holding, LLC and Its Affiliates for Entry of An Order Compelling Debtors, PropCos or Master Lease Guarantors to Pay Utility Obligations* [Docket No. 2578] (together with Docket No. 2573, the "**Cross-Motion**").

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]   For purposes of this Objection, "**MBNF Non-Debtor Entities**" means Philadelphia Academic Health Holdings, LLC ("**PAHH**"), Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, and Paladin Healthcare Capital, LLC ("**Paladin**").

RLF1 25989966v.1

In support of this objection ("**Objection**"), the MBNF Non-Debtor Entities respectfully state as follows:

## PRELIMINARY STATEMENT

1. The MBNF Non-Debtor Entities have no place in this dispute. Any attempt to rope them into such baseless motion practice is merely a smoke screen hiding the Debtors' and HSRE's refusal to fulfill their obligations and pawn them off on an innocent third-party.

2. As an initial matter, Section 365(d)(3) of the Bankruptcy Code dictates that the Debtors pay the steam charges pursuant to the Center City Lease (defined below). That provision alone makes this an open-and-shut case, resolving HSRE's Cross-Motion.

3. Should the Debtors refuse to pay the steam charges owed by them under the Bankruptcy Code, however, HSRE must step in pursuant to the terms of its stipulation with the Debtors. Because HSRE agreed to assume the Debtors' liability with respect to their utility obligations, the current dispute remains between **only** those two parties, and the MBNF Non-Debtor Entities should not be caught in the crossfire.

4. In any event, HSRE has failed to assert a proper jurisdictional basis for this Court to adjudicate a dispute between two non-Debtors. Without the requisite jurisdictional hook, the Cross-Motion must be denied.

## BACKGROUND

5. As part of an acquisition from Tenet Healthcare Corporation and certain of its subsidiaries and affiliates (collectively, "**Tenet**"), Harrison Street Real Estate, LLC and certain of its affiliates (collectively, "**HSRE**") formed a holding company and beneath it, six property-owning entities (each a "**Master Landlord**") to purchase from Tenet a group of medical office buildings and two parking garages (the "**Master Lease Premises**") located on or adjacent to the

Hahnemann University Hospital ("**Hahnemann**") or St. Christopher's Hospital for Children ("**St. Christopher's**"). Additionally, the Front Street Entities[3] and the Broad Street Entities[4] acquired the real estate assets other than the Master Lease Premises. Moreover, several operating companies (now Debtors in these Chapter 11 cases)—including: Philadelphia Academic Health System, LLC; Philadelphia Academic Medical Associates, LLC; St. Christopher's Healthcare, LLC d/b/a St. Christopher's Hospital for Children ("**SCH**" or the "**Master Tenant**"); Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**"); and Physicians Clinical Network, LLC—purchased the operating assets and the affiliated physician practice groups related to Hahnemann and St. Christopher's.

6. Concurrently with the acquisition from Tenet, the Master Landlords and the Master Tenant entered into master leases (collectively, the "**Master Leases**") pursuant to which the Master Tenant leased the Master Lease Premises. In addition, at the same time, CCH leased from Broad I the Center City Premises (each as defined below).

7. On June 30, 2019 and July 1, 2019, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

   A. **The Stipulation Between the Debtors and HSRE**

8. The Master Leases were deemed rejected by the Debtors as of November 15, 2019 in accordance with the Court-approved *Stipulation Between Debtors and Master Landlords Regarding Rejection of Leases, Allowed Administrative Expense Claim and Related Matters* [Docket No. 1057-1] (the "**HSRE Stipulation**").

---

[3] "**Front Street Entities**" means Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC.

[4] "**Broad Street Entities**" means Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, and Broad Street Healthcare Properties III, LLC.

9. The HSRE Stipulation provides that "[t]he Master Landlords shall commence payment of all utility services for the Center City Campus comprising the land and improvements owned by Broad Street Healthcare Properties, LLC [("**Broad I**")], Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC [("**Broad III**")] and the Master Landlords beginning for service after November 15, 2019. The allocation for such utilities shall be as agreed by the Debtors and the Master Landlords and/or the Master Landlord's agent, in good faith." HSRE Stipulation ¶ 10. In exchange for the payment obligation by the Master Landlords in the HSRE Stipulation, HSRE was allowed an administrative claim in the amount of $2.6 million on account of unpaid post-petition rent. *See id.* ¶ 4.

B. **The Outstanding Balance**

10. Upon information and belief, Vicinity Energy Philadelphia, Inc. ("**Vicinity**") provides steam utility services to customers in the Philadelphia area, and charges were incurred as a result of such services provided to a Master Landlord—PAHH Feinstein MOB LLC—for one of the Master Lease Premises with the address of 230 N. Broad Street, Philadelphia, Pennsylvania 19102. Vicinity acknowledged that "all amounts due to Vicinity have been paid, save for the amount due for the period of November 15, 2019 to December 9, 2019." *Vicinity's Motion to Enforce 2019 Stipulation as Third-Party Beneficiary* [Docket No. 2400] (the "**Vicinity Motion**") ¶ 9. Approximately $220,573.34 remains due on the invoice (the "**Outstanding Balance**").

C. **The Center City Lease**

11. Broad I and Debtor CCH entered into that certain lease, dated as of January 11, 2018 (the "**Center City Lease**"), pursuant to which Broad I leased to CCH a portion of the "Center City Campus"—referenced in the HSRE Stipulation—located at 222-248 N. Broad Street and 221-223 N. 15th Street, Philadelphia, Pennsylvania (the "**Center City Premises**"). While the base rent

under the Center City Lease was only **$1** per calendar year, CCH was required to pay, among other things, operating expenses allocable to the Center City Premises.

12. Pursuant to Section 1.2 of the Center City Lease, "Operating Expenses" include "all costs associated with the maintenance, repair and alterations of the Premises; all water, gas, heat, light power, telephone and **other utilities** and services supplied to the Premises and used by [CCH], together with any taxes thereon and all easement agreement assessments attributable to the Premises." *See* Center City Lease § 1.2 (emphasis added) (attached as **Exhibit A**). The Center City Lease was deemed rejected as of February 29, 2020. *See Stipulation Regarding Broad Street Lease* [Docket No. 1364-1] ¶ 1.[5] Accordingly, the Outstanding Balance for the period of November 15, 2019 to December 9, 2019 was incurred prior to the date on which the Center City Lease was rejected. The Debtors were required to pay the Outstanding Balance by December 31, 2019 pursuant to the terms of the Center City Lease and to date, the Debtors have not remitted to Broad I any payment on account of the Outstanding Balance.

## ARGUMENT

### A. The Debtors Have An Uncontroverted Obligation To Pay The Steam Charges Under Section 365(d)(3) Of The Bankruptcy Code

13. Section 365(d)(3) provides that a debtor is required to "timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected . . . ." 11 U.S.C. § 365(d)(3). *See also In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001) (holding that the Bankruptcy Code imposes on a debtor-in-possession the obligation to perform all of its obligations under a lease of nonresidential real property until the lease is rejected).

---

[5] Not until on or around March 7, 2020 did the Debtors vacate the Center City Premises.

14. The majority of courts having considered the operation of Section 365(d)(3) have arrived at the same conclusion: costs and expenses incurred for post-petition, pre-assumption, or rejection performance under an unexpired nonresidential real estate lease must be allowed as an administrative expense regardless of Section 503(b)(1)(A) limitations.[6] Here, the Center City Lease was deemed rejected as of February 29, 2020. *See Stipulation Regarding Broad Street Lease* [Docket No. 1364-1] ¶ 1. Because the Outstanding Balance was incurred prior to the rejection date and Debtor CCH is obligated to perform all of its obligations under the Center City Lease until the lease was rejected, the Debtors are responsible for the Outstanding Balance. As noted above, the Debtors were required to pay the Outstanding Balance by December 31, 2019 pursuant to the terms of the Center City Lease and Section 365(d)(3) of the Bankruptcy Code. To date, the Debtors have not remitted to Broad I any payment on account of the Outstanding Balance.

    **B.**    **HSRE Is Required To Pay The Steam Charges Under The Clear And Unambiguous Language Of The HSRE Stipulation**

15. Under Delaware law, which governs the HSRE Stipulation, a stipulation between parties is interpreted according to general principles of contract construction. *See ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 68 (Del. 2011). "One such principle is to give effect to the plain meaning of a contract's terms and provisions when the contract is clear and unambiguous." *Id.* at 69. "Clear and unambiguous language in a contract should be given its ordinary and usual meaning. Absent some ambiguity, Delaware courts will not destroy or twist [contract] language under the guise of construing it." *Wells Fargo Bank, N.A. v. Am. Home Mortgage Inv. Corp. (In*

---

[6] *See also In re Liberty Outdoors, Inc.*, 205 B.R. 414, 417 (Bankr. E.D. Mo. 1997) (lessor entitled to recover unpaid expenses pursuant to Section 365(d)(3) of the Bankruptcy Code regardless of whether such "expenses benefited or preserved the estate"); *In re Worths Stores Corp.*, 135 B.R. 112, 115 (Bankr. E.D. Mo. 1991) (same); *In re S. Lincoln Med. Grp., P.C.*, Case No. BK07-41636-TLS, 2008 WL 506086, at *2 (Bankr. D. Neb. Feb. 21, 2008) (citing *In re Brewer*, 233 B.R. 825, 829 (Bankr. E.D. Ark. 1999). Thus, the plain language of Section 365(d)(3) and the relevant case law clearly requires the Debtors' immediate payment of all rents and related charges that arise postpetition as administrative expenses of these estates.

6

RLF1 25989966v.1

*re Am. Home Mortg., Inc.)*, No. 07–51741, 2008 WL 4753342, at *4 (Bankr. D. Del. 2008) (citing *Rhone–Poulenc Basic Chem. Corp. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195–96 (Del. 1992)).

16. Here, the language in the HSRE Stipulation—"[t]he Master Landlords shall commence payment of all utility services"—is clear and unambiguous. HSRE does not dispute this. *See* Cross-Motion ¶ 32 ("Unpaid invoices for goods sold and services rendered from the period of November 15, 2019 to December 9, 2019 are subject to this provision."). The applicable rules of interpretation and the plain language of the HSRE Stipulation demonstrate that, in exchange for the allowance of its claims as administrative expenses, HSRE agreed to pay all utility services. Additionally, HSRE likely included such language to ensure that the steam utility service would be uninterrupted subsequent to the rejection of the Master Leases. This is consistent with the Debtors' account. *See Response of Debtors to Vicinity's Motion to Enforce 2019 Stipulation as Third Party Beneficiary* [Docket No. 2553] ¶ 12 ("[T]he Master Landlords required the above-cited provision to be included in the HSRE Stipulation so that, subsequent to the rejection of the Master Leases, they could ensure that there would be no interruption in utility service to their properties as a result of potential non-payment of shared utility bills.").

17. Notably, there are no exceptions in, or conditions to, HSRE's payment obligations. To be clear, the language—"[t]he allocation for such utilities shall be as agreed by the Debtors and the Master Landlords and/or the Master Landlord's agent, in good faith"—does not constitute an exception in, or a condition to, HSRE's obligation to pay all utility services. Rather, it provides that after HSRE pays all utility services, such payment shall be allocated between the Debtors and HSRE. *See id.* ¶ 13 ("Pursuant to the HSRE Stipulation, the Master Landlords are responsible for paying the utility services in the first instance, with later allocation among the Debtors and the

7

Master Landlords to occur through good faith negotiations among the Debtors and the Master Landlords.").

18.     Moreover, neither the guarantees provided by PAHH and Paladin (two of the MBNF Non-Debtor Entities) nor the Reciprocal Easement and Operating Agreement dated December 30, 2017 (the "**REA**") overrides the plain language of the HSRE Stipulation. As the Debtors acknowledged, "[p]ursuant to the HSRE Stipulation, the Master Landlords are responsible for paying the utility services in the first instance, with later allocation among the Debtors and the Master Landlords to occur through good faith negotiations among the Debtors and the Master Landlords." *Id.* HSRE cannot ask the Court to enforce the HSRE Stipulation piecemeal, by requiring the Debtors to allow its claims as administrative expense but ignoring HSRE's payment obligation. To be clear, in the absence of the HSRE Stipulation, the REA would have allocated certain maintenance costs to Broad I and Broad III, but PAHH and Paladin guaranteed the rent obligations of the Master Tenant rather than the obligations of Broad I and Broad III under the REA. To bring the guarantees and REA together is to force a round peg into a square hole. Further, neither the guarantees nor the REA is relevant to the present dispute. *First,* the guarantees provided by PAHH and Paladin are predicated upon the Master Tenant's rent obligations to HSRE and are therefore no longer enforceable as a result of HSRE's waiver of the Master Tenant's rent obligations pursuant to the HSRE Stipulation. *Second*, HSRE agreed to waive its right to charge the MBNF Non-Debtor Entities for the Outstanding Balance. *See* Letter dated July 30, 2020 (attached as **Exhibit B**) ("Our client agrees not to seek and waives the right to charge your client for the Interim Charges[7] incurred pursuant to the REA.")

---

[7]     "Interim Charges" is defined as "any amounts charged to the Master Landlords under the REA from November 15, 2019 until the date the Debtors surrendered possession of the properties known as the 'North and South Towers' at 222-248 North Broad Street in Philadelphia on March 8, 2020. *See* Letter dated May 26, 2020 (attached as **Exhibit C**).

C.  **The Guarantees Are The Subject Of A State Court Proceeding, And The Court Lacks Jurisdiction To Adjudicate The Related Disputes**

19. HSRE seeks to undermine the clear and unambiguous language in the HSRE Stipulation by arguing that "[t]he obligations of the Master Tenant under the Master Leases are guaranteed by non-debtor affiliate PAHH and non-debtor affiliate Paladin Healthcare Capital, LLC" and that "[t]he Debtors, Propcos [*sic*] and Guarantors are directly liable for these outstanding amounts under the Guaranty Agreement and Stipulation." *See HSREP VI Holding, LLC and Its Affiliates' Objection to Vicinity's Motion to Enforce 2019 Stipulation as Third-Party Beneficiary and Cross-Motion to Compel Debtors, PropCos or Master Lease Guarantors to Pay Utility Obligations* [Docket No. 2573] ¶¶ 10, 18. HSRE desperately seeks to divert its payment obligations under the HSRE Stipulation by relying upon the guarantees provided by PAHH and Paladin. But HSRE has already done that very song and dance in a **separate** state court proceeding captioned *HSRE-PAHH I, LLC, et al v. Philadelphia Academic Health Holdings, LLC, et al*. Case No. 000202 pending in the Court of Common Pleas of Philadelphia County, which proceeding is consensually stayed for the duration of the ongoing mediation in these Chapter 11 cases. This maneuver distracts the Court from the salient issues and the relevant parties involved in the present dispute, and re-litigates claims already subject to the state court's jurisdiction. In the interest of judicial economy and preservation of this Court's resources, the issue of the guaranty agreements should remain within the state court's purview. This Court should thus refuse to hear any "repeat" claims asserted by HSRE against the MBNF Non-Debtor Entities related to the guaranty agreements.

20. In any event, this Court lacks the jurisdiction to adjudicate a dispute between non-debtor parties (HSRE and the MBNF Non-Debtor Entities). In *In re Millennium Lab Holdings II, LLC*, the Third Circuit was asked whether the bankruptcy court, without running afoul of Article

9

III of the Constitution, could confirm a Chapter 11 reorganization plan containing nonconsensual third-party releases and injunctions. 945 F.3d 126 (3d Cir. 2019), *cert. denied sub nom. ISL Loan Tr. v. Millennium Lab Holdings II, LLC*, 140 S. Ct. 2805, 207 (2020). The Third Circuit cited to *Stern v. Marshall*, 564 U.S. 462 (2011), where the Supreme Court concluded that the bankruptcy court's actions violated Article III. *Millennium Lab*, 945 F.3d at 133. There, the Supreme Court reasoned that "[w]hen a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Stern*, 564 U.S. at 484. The Supreme Court held that the bankruptcy court had gone beyond the constitutional limits when it "exercised the 'judicial Power of the United States' in purporting to resolve and enter final judgment on a state common law claim[.]" *Id.* at 487. The Third Circuit in *Millennium Labs* clarified that one of the takeaways from *Stern* was that claims that do not "'stem[ ] from the bankruptcy itself or would [not] necessarily be resolved in the claims allowance process' (and therefore would not be integral to the restructuring of the debtor-creditor relationship) must be decided by Article III courts." *Millennium Labs*, 945 F.3d at 136 (quoting Stern, 564 U.S. at 497, 499). On the "specific, exceptional facts" of the case, the *Millennium Labs* court determined that the bankruptcy court was permitted to confirm the plan because the existence of the releases and injunctions was indeed "integral to the restructuring of the debtor-creditor relationship." *Id.* at 129. Here, the dispute between HSRE and the MBNF Non-Debtor Entities is not "integral" to any debtor-creditor relationship, and because the conflict between these two non-debtors began in state court at HSRE's initiation, it should remain there.

## RESERVATION OF RIGHTS

21.     The MBNF Non-Debtor Entities remain hopeful that the parties will resolve the dispute in the mediation that commenced on August 9, 2021.  The MBNF Non-Debtor Entities are aware of other postpetition obligations that the Debtors have yet to fulfill, including, without limitation, accrued taxes and mechanics' liens.  While such claims are being resolved as part of the ongoing mediation, the MBNF Non-Debtor Entities continue to reserve all rights to assert such claims against the Debtors.

[*Remainder of this page intentionally left blank*]

**CONCLUSION**

WHEREFORE, the MBNF Non-Debtor Entities respectfully request that the Court deny the Cross-Motion and grant in part the Vicinity Motion to the extent the motion seeks payment from HSRE.

Dated: September 14, 2021
      Wilmington, Delaware

/s/ *Travis J. Cuomo*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Brendan J. Schlauch (No. 6115)
Travis J. Cuomo (No. 6501)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701
Email: collins@rlf.com
       merchant@rlf.com
       schlauch@rlf.com
       cuomo@rlf.com

- and -

Suzzanne Uhland (admitted *pro hac vice*)
Gregory Mortenson (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Danielle E. Sekerak (admitted *pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10022
Telephone: 212/906-1200
Facsimile: 212/751-4864
E-mail: suzzanne.uhland@lw.com
       gregory.mortenson@lw.com
       tj.li@lw.com
       danielle.sekerak@lw.com

*Counsel for the MBNF Non-Debtor Entities*