**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMAN UNIVERSAL HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (MFW) |
| | ) Jointly Administered |
| | ) **Hearing Date: Sept. 23, 2021 at 10:30 a.m. (ET)** |
| Debtors. | ) **Reply Deadline: Sept. 20, 2021 at 4:00 p.m. (ET)** |

**VICINITY'S REPLY TO HSRE'S OBJECTION AND DEBTORS' AND MBNF NON-DEBTOR ENTITIES' RESPONSES TO VICINITY'S MOTION TO ENFORCE 2019 STIPULATION AS
THIRD PARTY BENEFICIARY**

Vicinity Energy Philadelphia, Inc. ("Vicinity"), by and through its undersigned counsel, hereby files this reply to the various responses to Vicinity's motion (the "Motion") for entry of an order enforcing this Court's *Order Approving Stipulation Between Debtors and Master Landlords Regarding Rejection of Leases and Allowed Administrative Expense Claim* [Dkt. 1057] and ordering Master Landlord PAHH Feinstein MOB LLC and/or Broad Street Healthcare Properties, LLC to pay Vicinity's outstanding account receivable in the amount of $220,573.74, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code").[2] In further support of the Motion, Vicinity respectfully states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC 98395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617). SCHC Pediatrics Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4065), TPS of PA, L.L.C. (4863), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.
[2] Capitalized terms used herein shall have the meaning ascribed in the Motion unless otherwise defined.

1

2902851.1 116281-102629

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), and (O).

2. The statutory basis for the relief requested herein is 11 U.S.C. § 105.

## BACKGROUND

3. The only objection to the relief sought by way of the Motion was filed by HSREP VI Holdings, LLC and its affiliates (together, "HSRE"), presumably on behalf of its affiliate Feinstein MOB. HSRE filed its "Objection to Vicinity's Motion to Enforce 2019 Stipulation as Third-Party Beneficiary and Cross-Motion to Compel Debtors, Propcos or Master Lease Guarantors to Pay Utility Objections" ("HSRE Objection" [Doc 2573]) in a desperate attempt to avoid Feinstein MOB's clear obligation to pay the Outstanding Balance due to Vicinity under the Stipulation and, as discussed below, its express contractual obligation to pay that amount pursuant to the New Steam Agreement identified in footnote 2 of the Motion.

4. For their part, the Debtors filed their "Response and Objection of Debtors to Cross-Motion of HSREP VI Holdings, LLC and its Affiliates to Compel the Debtors, Propcos or Master Lease Guarantors to Pay Utility Objections" ("Debtors Response" [Doc 2825])" which essentially supports Vicinity's position that Feinstein MOB is unconditionally liable for the Outstanding Balance. Similarly, the "MBNF Non-Debtor Entities," i.e. the Joel Freedman controlled entities including Broad Street, filed "The MBNF Non-Debtor Entities Objection to Cross-Motion of HSREP VI Holdings, LLC and its Affiliates for Entry of an Order Compelling the Debtors,

Propcos or Master Lease Guarantors to Pay Utility Objections" ("MBNF Response" [Doc 2825])" which likewise demonstrates Feinstein MOB's liability to Vicinity for the Outstanding Balance.

5. Abundantly clear from the HSRE Objection, the Debtors Response and the MBNF Response is the fact that HSRE is improperly using the protracted mediation that is ongoing before Judge Carey to attempt to lever the Debtors to pay the Outstanding Balance to Vicinity, where is it clear from the Court approved Stipulation that, as between HSRE (inclusive of Feinstein MOB) and the Debtors, that obligation is Feinstein MOB's alone.  Whatever rights that Feinstein MOB and HSRE to recover that amount from the Debtors or guarantors does not obviate Feinstein MOB's primary obligation to pay that amount to Vicinity.  Thus, Feinstein MOB is holding approximately $221,000 of Vicinity's money hostage and turning Vicinity into an unwilling participant in the mediation.

6. Moreover the "New Steam Agreemens" between Feinstein MOB and Vicinity referenced in footnote 2 of the Motion consist of two "Vicinity Energy Philadelphia, Inc. Steam Service Agreement" between Feinstein MOB and Vicinity dated February 13, 2020 for the premises at 1501 Race Street and for the premises at 230 Broad Street, each of which was effective as of November 15, 2019 (together, the "New Steam Agreement".)  A copy of the New Steam Agreement is attached to the Declaration of Lindsey B. Sands, Esq., Associate General Counsel of Vicinity's parent Vicinity Energy dated September 20, 2021 ("Dec. II") as Exhibit A. The New Steam Agreement provides that it is effective as of November 15, 2019, the date that Feinstein MOB assumed the obligation to pay all amounts due to Vicinity under the Stipulation. New Steam Agreement, Section 1, p.1.  On September 15, 2020, Ms. Sands forwarded a copy of the New

Steam Agreement, the 2019 Invoice and the Stipulation to Feinstein MOB's counsel, Stuart Brown, Esq. of DLA Piper by email. A copy of that email is attached to Dec. II as Exhibit B.

7. More importantly, the New Steam Agreement sets forth Feinstein MOB's express agreement to pay the Outstanding Amount and it's acknowledgement of the validity of that obligation. Specifically, Section 7.B., p. 3, provides in pertinent part that Feinstein MOB (the "Customer") "hereby acknowledges that it has received the following invoices: . . . (ii) an invoice in the amount of $485,737.76 due on February 19, 2020 for services rendered from November 15, 2019 through December 9, 2019. . . ." Said invoice is the 2019 Invoice identified in the Motion, and as discussed therein, Feinstein MOB partially paid the 2019 Invoice leaving the Outstanding Balance unpaid. The New Steam Agreement further provides Feinstein MOB's agreement and acknowledgement that "[f]ailure to pay" the 2019 Invoice "when due shall constitute a material breach of this Agreement entitling" Vicinity (the "Company") to terminate this Agreement and exercise all other rights and remedies under this Agreement or at equity or law." New Steam Agreement, Section 7.B., p. 3; Dec. II, Exhibit A.

8. The HSRE Objection claims, falsely, that the Motion should have been brought by way of adversary proceeding. That claim flies in the face of the Stipulation's express provision that this Court retains jurisdiction to resolve disputes arising under the Stipulation. This dispute arises due to Feinstein MOB's blatant disregard for its obligation to pay the Outstanding Amount to Vicinity and then deal with collecting any amounts due from the Debtors in separate negotiation. As discussed below and in the Motion, Vicinity is clearly a third-party beneficiary of the Stipulation and is thus entitled to seek the relief sought by way of the Motion pursuant to the Stipulation's retention of jurisdiction provision.

9.      While it is the case that, if this were simply a dispute between Vicinity and Feinstein MOB under the New Steam Agreement, this Court would not have jurisdiction over such a non-debtor dispute.  However, as the dispute is originally grounded in Feinstein MOB's wrongful breach of the Stipulation, apparently designed to lever the Debtors to pay the Outstanding Amount, it is properly before this Court.  The Court approved the Stipulation in part to ensure that utility vendors such as Vicinity would not be left unpaid for services clearly rendered while being held hostage to HSRE's machinations in its negotiations with the Debtors. The Outstanding Amount has been outstanding for almost two years, and Vicinity is not in a position to continue to provide service to its customers, including Feinstein MOB, if its invoices are not paid.

10.     Thus, the New Steam Agreement is not submitted for a judgment on Feinstein MOB's contractual liability, but to further demonstrate that Feinstein MOB agreed in the Stipulation to pay the 2019 Invoice in full, inclusive of the Outstanding Amount, when it agreed to the Stipulation.

11.     As to HSRE's specious argument that the Motion is procedurally improper because Vicinity did not join the Debtors and others as parties, that claim is likewise belied by the clear terms of the Stipulation, which provides that Feinstein MOB "shall commence payment of all utility services . . . after November 15, 2019" and then negotiate with the Debtors as to the proper allocation of such payments.3  By definition, that negotiation does not involve the utility providers in any way, and, as pointed out by MBNF, appears to have been negotiated by HSRE to ensure seamless utility services to its buildings.  Having now benefitted from steam service under the

---

3 In any event, to the extent that these other parties are necessary for adjudication of the Motion, HSRE has cured that issue by naming these parties as the objects of its cross-motion filed in response to the Motion.  Whether those parties are liable to reimburse HSRE for the Outstanding Amount for the reasons articulated in the cross-motion does not alter the fact that HSRE and Feinstein MOB are directly liable to Vicinity for the Outstanding Amount.

5

2019 Invoice in heating the 203 N. Broad Street and 1501 Race Street buildings during the Fall of 2019, Feinstein MOB and HSRE are now improperly trying to drag Vicinity into its protracted negotiations with the Debtors, *which the Stipulation was specifically designed to prevent.* This is entirely improper, violates the letter and spirit of the Court's Order approving the Stipulation, and should not be countenanced by this Court.

12. Thus, whether the "Debtors, Propcos and Guarantors are directly liable for" the Outstanding Amount as HSRE claims or not is not Vicinity's problem. The Stipulation was drafted specifically to keep utility vendors out of such disputes and to ensure timely payment of invoices for utility services.

13. HSRE's argument that Vicinity, and other utility vendors, were not intended to be third-party beneficiaries of the Stipulation, is nothing short of ludicrous. Seamless delivery of utility services to HSRE's buildings was a critical provision of the Stipulation that, as discussed above, was negotiated because it benefitted HSRE alone.[4] Nothing about the provision for HSRE's payment of utility invoices could possibly have benefitted the Debtors because they were rejecting the leases for HSRE's buildings effective November 15, 2019. Further, utility vendors relied on this provision in not objecting to the rejection of the leases without provision for seamless payments, and it is apparent that HSRE designed the provision to induce that reliance.

14. Curiously, HSRE cites a case cited by Vicinity in the Motion on the issue: A party is an intended beneficiary where the third party stands to benefit from the contract "and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate the promisee intends to give the beneficiary the

---

[4] MBNF concurs, see MBNF Response, ¶16.

benefit of the promised performance." *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *3 n.25 (Del. Ch. Feb. 17, 2004). Left unexplained is how this case is perceived to benefit HSRE's specious position. The Stipulation clearly provides for a benefit to utility providers by HSRE's payment for utility services on and after November 5, 2019, and the Stipulation clearly provides HSRE's agreement to make those payments and benefit the utilities. Moreover, it appears that this provision was included to induce utilities to rely upon this language, and Feinstein MOB's agreement to pay the 2019 Invoice in full, inclusive of the Outstanding Amount, is further evidenced by the New Steam Agreement.

15. HSRE's argument that Vicinity is not a third-party beneficiary because "Vicinity is never specifically mentioned, and utility payments in general are mentioned only once in the context of" rejection of the leases is inane. The provision for payment of utilities was an integral part of the protocol for the Debtors' relinquishment of possession of *HSRE's assets back to HSRE* and the provision of seamless utility service, *and in Vicinity's case heat at the outset of Winter*, to those buildings. HSRE's suggestion that this provision was some sort of afterthought that this Court should ignore is laughable. The fact that this provision is only one of many issues addressed in the Stipulation does not alter the fact that the Stipulation clearly provides for HSRE's payment of all utilities.

16. As such, no argument that Vicinity was somehow an "indirect beneficiary" of the Stipulation bears any serious scrutiny whatsoever.5 The direct beneficiaries of the provision at issue were: (i) HSRE, which received seamless utility services to its buildings, and (ii) utility

---

5 The Debtors concur, as set forth in ¶ 16 of the Debtors Response: "In fact, the Master Landlords [HSRE] were obligated to have paid [the full amount of the 2019 Invoice to] Vicinity themselves, with allocation issues to be resolved between the Debtors and the Master Landlords later, pursuant to good faith negotiations . . . ."

providers such as Vicinity, which received assurance of payment for those services. Simply put, the HSRE Objection articulates no cogent basis upon which this Court can conclude that Vicinity is not a third-party beneficiary of the Stipulation, because no such basis exists.

17. Finally, during informal discussions, counsel to HSRE has asserted that HSRE and Feinstein MOB are entitled to a discount akin to that provided to HUH under the original Steam Agreement dating to 2002 between Trigen and Tenet. Copies of the 2019 Invoice and an invoice issued by Vicinity to HUH for the period covered by the 2019 Invoice before the New Steam Agreement was executed, and which reflects the discount at issue, are attached the Debtors Response as Exhibits A and B.

18. This argument, like HSRE's other gambits, is meritless and simply ignores reality. Following HUH's relinquishment of Vicinity's steam service to Feinstein MOB under the Stipulation, Vicinity entered into the New Steam Agreement to reflect the reality that Feinstein MOB was the customer from November 15, 2019 forward and then reissued the 2019 Invoice to eliminate the discount because it was not a term of the New Steam Agreement. With respect to HSRE's position that Feinstein MOB should now benefit from the discount set forth in the 2002 Steam Agreement, at best, had HUH paid the earlier invoice prior to the execution of the New Steam Agreement, HUH would have benefited from the discount. It did not, so the discount is no longer applicable. Moreover, the Debtors could have assumed the 2002 Steam Agreement and assigned same to Feinstein MOB, but they did not, presumably because neither party wanted to pay a cure. In executing the New Steam Agreement, Feinstein MOB acknowledged the full $485,737.76 amount of the 2019 Invoice and its obligation to pay the same in full. Finally,

under applicable tariffs, such discounts are only available for long term contracts, which HSRE did not want to enter into. *See* Dec. II, ¶ 4.

19. As for Vicinity's common law claims for *quantum meruit* and unjust enrichment against Broad Street that are addressed in the Motion, the MBNF Response does not say much other than that MBNF has no place in this dispute and that HSRE is improperly attempting to pawn off its responsibilities under the Stipulation onto other parties. While Vicinity agrees with the latter point, the fact remains that it appears that Broad Street did receive the benefit of a portion of the steam service billed under the 2019 Invoice, and, to the extent that Vicinity is unsuccessful in recovering the Outstanding Amount from Feinstein MOB, Broad Street should pay for its usage.

20. The MBNF Response goes on to argue that the Debtors are responsible for the Outstanding Balance pursuant to the terms of the "Center City Lease." MBNF Response, ¶¶ 13-14. While that may be the case – and Vicinity does not intend to incur the costs of parsing the Center City Lease and the various other extraneous contracts referenced in the responses – under the New Steam Agreement and the Stipulation, Feinstein MOB and HSRE are obligated to pay the full Outstanding Amount without regard to the discount afforded the Debtors in the 2002 Steam Agreement. As discussed above, HSRE is now improperly trying to avail itself of that discount. To be clear, the discount is gone, and any technical liability that the Debtors may have for the Outstanding Amount under the Center City Lease in no way serves to revive the discount for HSRE's and Feinstein MOB's benefit.

21. Despite the clear terms of the Stipulation, the Outstanding Balance remains unpaid. Accordingly, Feinstein MOB and Broad Street should be compelled to pay the Outstanding

Balance of the 2019 Invoice pursuant to the terms of the Stipulation and this Court's inherent powers under 11 U.S.C. § 105.

## **NOTICE**

22. Notice of this Motion has been provided to the following parties and/or counsel (if known): (a) counsel to the Debtors; (b) the Office of the United States Trustee for the District of Delaware; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to PAHH Feinstein MOB, LLC; (e) counsel to Broad Street Healthcare Properties, LLC and (f) those parties requesting notice pursuant to Federal Rule of Bankruptcy Procedure 2002.  Vicinity submits that, considering the nature of the relief requested, no other or further notice is necessary.

**CONCLUSION**

Vicinity respectfully requests that the Court enter an order compelling the payment of the Outstanding Balance due to Vicinity pursuant to the terms of the Stipulation, and granting such other relief as the Court deems just and proper.

**GIBBONS P.C.**

Dated: September 20, 2021

By: /s/ *Howard A. Cohen*
Howard A. Cohen (DE 4082)
300 Delaware Ave., Suite 1015
Wilmington, DE 19801-1671
Telephone:  (302) 518-6300
Facsimile:  (302) 429-6294
Email:  hcohen@gibbonslaw.com

-and-

Dale E. Barney (admitted pro hac vice)
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
E-mail: dbarney@gibbonslaw.com

*Attorneys for Vicinity Energy Philadelphia, Inc.*