# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) Case No. 19-11466 (MFW) |
|  | ) |
|  | ) Jointly Administered |
|  | ) |
| Debtors. | ) **Objection Deadline: October 18, 2021 at 4:00 p.m. (ET)** |
|  | ) **Hearing Date: October 25, 2021 at 10:30 a.m. (ET)** |
|  | ) |

## MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO ASSIGNMENT, ASSUMPTION AND NOVATION AGREEMENT PURSUANT TO 11 U.S.C. § 363 AND (II) GRANTING RELATED RELIEF

The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through their undersigned counsel, file this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to sections 363 and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing Philadelphia Academic Health System, LLC ("**PAHS**") to enter into an Assignment, Assumption and Novation Agreement (the "**Agreement**")[2], by and among PAHS, Philadelphia Academic Risk Retention Group, LLC ("**PARRG**") and Accredited Surety and Casualty Company, Inc. ("**ASC**" and with PAHS and PARRG, the "**Parties**"). In support of the Motion, the Debtors respectfully state as follows:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).

[2]    A partially redacted version of the Agreement is attached hereto as **Exhibit B**.

**Jurisdiction and Venue**

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 6004.

**General Background**

3.      On June 30 and July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.  On July 15, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al.* [D.I. 182] (the "**Committee**").

4.      A description of the Debtors' businesses as of the Petition Date is set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2].

38803355.7

**Specific Background**

**A.    Overview of the Debtors' Insurance Policies with PARRG**

5.      As of the Petition Date, the Debtors maintained, through a number of insurers, various insurance coverages (the "**Coverages**"), including aviation, professional and general liability, auto, workers' compensation, property, terrorism, pollution, storage tank, volunteer/student accident, cyber, crime, fiduciary, director and officer, employment practices, and employed lawyers liability. The Coverages are described in greater detail in the *Motion of The Debtors For Entry of Interim And Final Orders Authorizing The Debtors To (I) Continue Insurance Coverage Entered Into Prepetition and Satisfy Prepetition Obligations Related Thereto; (II) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies; (III) Honor The Terms of Premium Financing Agreement and Pay Premiums Thereunder; and (IV) Enter Into New Premium Financing Agreements in The Ordinary Course of Business*, filed on July 1, 2019 [D.I. 13].

6.      The Coverages include certain first-layer[3] policies issued by PARRG (a Vermont-based risk retention group, 90% of which is owned by Philadelphia Academic Health Holdings, LLC ("**PAHH**"), an entity controlled by Joel Freedman, the Debtors' officer and principal, 5% of which is owned by PAHS, and 5% of which is owned by PAHS's wholly owned subsidiary Philadelphia Academic Medical Associates, LLC ("**PAMA**")) for healthcare professional liability, physician professional liability, non-healthcare provider professional liability and general liability (collectively, the "**Policies**").

---

[3]      Pennsylvania's Medical Care Availability and Reduction of Error Act (the "**MCARE Act**"), Act 13 of 2002, 40 P.S. 1303.101 *et seq*., provides among other things for a fund, known as the MCARE Fund, to ensure reasonable compensation for persons injured due to medical negligence by providing coverage in excess of basic (i.e., first-layer) insurance coverage provided by primary professional liability insurance companies or self-insurers. See 40 P.S. § 1303.712. The MCARE Act is the successor to the Medical Professional Liability Catastrophe Loss Fund, better known as the "CAT" Fund, which originally was established by section 701(e) of the Health Care Services Malpractice Act, Act 11 of 1975 (40 P.S. §§ 1301.101-1301.1006, *et seq*.).

7.      Certain disputes arose during the Chapter 11 Cases regarding the Policies for certain attending physicians, nurses and other medical professionals, as well as residents and fellows.  Through separate motions filed on December 11, 2019 (each, a "**Motion to Compel**" and, collectively, the "**Motions to Compel**"), the Ad Hoc Committee of Hahnemann Residents and Fellows (the "**Ad Hoc Committee**") and the Commonwealth of Pennsylvania Department of Health ("**DOH**") asked the Court to compel the Debtors to purchase "tail coverage" related to professional liability insurance.[4]   The facts alleged in the Motion to Compel also resulted in the Court's issuance of an Order For Rule to Show Cause Directed to Debtors, entered December 16, 2019 [D.I. 1169], by which the Court directed the Debtors to show cause why their cases should not be converted to Chapter 7 for alleged failure to maintain appropriate insurance, pursuant to 11 U.S.C. § 1112(b)(4)(C).

8.      After filing an objection to the Motions to Compel, the Debtors extended the expiration date of their then-current professional liability insurance twice – first, until on or about February 11, 2020 and, second, until on or about March 12, 2020.  Meanwhile, the Debtors engaged in discussions with key stakeholders, including the Committee, the Ad Hoc Committee, DOH, PARRG, PAHH, the Commonwealth of Pennsylvania, the Pennsylvania Professional Liability Joint Underwriting Association, and certain local and regional hospitals that hired significant numbers of Hahnemann's prior residents.  In addition, the Debtors engaged insurance brokers and obtained quotes from various insurers for the requested tail insurance.

9.      These efforts resulted from a desire on the part of the Debtors to resolve the issues raised by the Motions to Compel in a cost-effective manner and to circumvent what otherwise likely would have been difficult litigation – involving both the Motions to Compel and the various

---

[4]     Generally, "tail insurance" extends coverage to include claims asserted after the underlying policy terminates for occurrences taking place prior to such termination but reported after such termination.

administrative, priority and other claims that would have been asserted if tail insurance had not been obtained.  The Debtors' efforts also resulted from a desire to mitigate at least some of the harm to the regional medical community caused by Hahnemann's closure.

10.    As a result of the Debtors' efforts, the Debtors concluded that they would, subject to Court approval, purchase tail coverage (the "**Tail Coverage**") from PARRG.  PARRG agreed that the premiums for the desired Tail Coverage could be payable in three equal installments, over approximately eight (8) months.  The Debtors would be responsible for paying only the first and the third premium installments; if permitted by the Vermont Department of Financial Regulation ("**Vermont DFR**"), PARRG would fund the second installment, via a premium credit.  Absent Vermont DFR's approval, the second installment would be funded by PAHH through a capital contribution, subject to repayment on a priority basis upon PARRG's dissolution.[5]

11.    The Debtors accordingly filed their *Motion of Debtors Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authority to Purchase Specified Professional Liability Tail Insurance* [D.I. No. 1418] (the "**Tail Motion**"), by which they sought authority to purchase Tail Coverage from PARRG.

12.    On March 4, 2020, the Court entered the *Order Granting Motion of Debtors Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authority to Purchase Specified Professional Liability Tail Insurance* [D.I. 1447], authorizing the Debtors to purchase Tail Coverage from PARRG, in resolution of the issues described above.

13.    After such Order was entered, the Debtors proceeded to purchase Tail Coverage from PARRG, consistent with the terms of the Tail Motion and the members agreement of

---

[5]    Because Vermont DFR did not approve the contemplated premium credit, PAHH made a capital contribution to PARRG in the amount of approximately $2.7 million.

PARRG.  All of the premiums that were due and payable with respect to the Tail Coverage have been paid.[6]  The Tail Coverage currently remains in place.

## B.    Proposed Novation Transaction

14.    Several months ago, PARRG informed the Debtors that it has sought for some period of time a qualified third party that would assume the obligations of PARRG under the Policies, as extended/modified by the Tail Coverage (as so extended/modified, the "**Extended Policies**").  PARRG further informed the Debtors that, based upon its review of potential transactional candidates, it believes ASC has offered the most favorable terms and conditions for a transaction.

15.    After discussions and arms-length negotiations with PARRG and ASC regarding certain terms and conditions of the proposed Agreement, PAHS – in its capacity as the first named insured[7] – has agreed, subject to Court approval, to consent to the proposed assignment and novation of the Extended Policies to ASC on the terms and conditions set forth in the Agreement.  PAHS believes the proposed transaction will not only provide unaltered, continuing coverage under the Extended Policies, but will also provide heightened comfort for all constituents, due to ASC's financial strength, as described below.  Moreover, the transaction contemplated by the Agreement will allow for the eventual dissolution of PARRG, in which PAHS holds direct and indirect membership interests, as noted above.  This dissolution will facilitate the ultimate liquidation of an asset of the Debtors' estates.

---

[6]    In connection with the Tail Coverage, PAHH placed a total of $3,198,750 in escrow.  PARRG applied $438,750 of such amount to the first installment of the premium payments and $2,760,000 to the second installment, respectively.

[7]    As set forth above, PAHS holds a 10% interest in PARRG, directly and indirectly through its wholly owned subsidiary PAMA.

38803355.7

## Relief Requested

16.     By this Motion, the Debtors request entry of the Proposed Order authorizing the Debtors to enter into the Agreement and granting related relief as is necessary and required.

## Basis for Relief Requested

17.     Section 363(b)(1) of the Bankruptcy Code provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  "Section 363 permits the trustee, after notice and a hearing, to use, sell, or lease property of the estate outside of the ordinary course of business." *In re Rickel Home Ctrs.*, 209 F.3d 291, 297 (3d Cir. 2000)   "Property of the estate" includes, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

18.     In determining whether to authorize the use, sale or lease of property of the estate under section 363 of the Bankruptcy Code, courts require the debtor to show that a sound business purpose justifies such actions.  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (*citing In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  Specifically, to approve a transaction, courts should consider: (a) whether a sound business justification exists for the transaction, (b) whether accurate and reasonable notice of the transaction was given to interested parties, (c) whether the transaction will produce a fair and reasonable price for the property, and (d) whether the parties have acted in good faith.  *Del. & Hudson Ry.* 124 at 176; *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

19.     By this Motion, the Debtors seek authority to enter into the Agreement, which as explained above will substitute ASC for PARRG under the Extended Policies, while maintaining existing coverage under the Extended Policies.  It should be noted that no estate property will be

sold under the Agreement, and the Debtors have filed this motion in an abundance of caution.[8]

Indeed, coverage will be unaffected; all insured constituents will receive the same coverage as

currently provided by PARRG, but from a larger insurance company with a greater asset pool.  To

PAHS's knowledge, ASC is a Florida domiciled insurance company and a wholly owned indirect

subsidiary of Randall & Quilter Investment Holdings Ltd, which is headquartered in Bermuda.

ASC holds net admitted assets that are nearly eleven (11) times more than PARRG's total assets,

and that it carries outstanding losses and loss adjustment expenses, net of reinsurance, that are only

one-third more than PARRG's outstanding losses.  As a result, PAHS believes that consummation

of the Agreement will provide added financial assurances to all constituents while maintaining the

coverage under the Extended Policies.  For these reasons, the Debtors believe that entry into the

Agreement is within the Debtors' business judgment and is in the best interests of their estates.

20.    Pursuant to the terms of the Agreement, PARRG will pay ASC a fee, as specified

in the Agreement, for its agreement to assume PARRG's obligations under the Extended Policies.

Neither PAHS nor any other Debtor will be liable to ASC or PARRG for any consideration due

under the Agreement; rather, PARRG will be using its own funds to pay ASC to assume PARRG's

obligations with respect to the Extended Policies.  PAHS, Center City Healthcare, LLC, and other

insured constituents will continue to receive the same coverage under the Extended Policies, but

with greater financial assurance, at no additional cost.

21.    The Debtors note that the transaction represented by the Agreement has been

approved by Vermont DFR, subject to this Court's approval, and that PARRG has disclosed the

terms of the Agreement to the Pennsylvania Insurance Department (MCARE Fund – Division of

---

[8]    This motion also does not seek Court authority, to the extent it may be required, for the dissolution of PARRG
or the distribution of capital or any other payment or disposition of assets from PARRG subsequent to the
consummation of the transaction contemplated by the Agreement.

38803355.7

Claims Administration) ("**MCARE**").  On August 30, 2021, MCARE confirmed that (i) the Agreement is comprehensive in ASC assuming all present and future coverage obligations of all insureds as reported to MCARE and resulting claims and (ii) when the Novation Agreement is finalized, MCARE will handle coverage and claims communications with ASC.

22.     Based on the foregoing, the Debtors respectfully submit that they should be authorized to enter into the Agreement in the exercise of their sound business judgment.

## **Request for Waiver of Stay**

23.     The Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). A waiver of the stay imposed by Bankruptcy Rule 6004(h) is appropriate due to the desire of ASC, PARRG and PAHS to consummate the transaction contemplated by the Agreement as promptly as possible.

## **Notice**

24.     Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the Official Committee of Unsecured Creditors; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) counsel to DOH; (xi) the City of Philadelphia; (xii) Accredited Surety and Casualty Company, Inc.; (xiii) MCARE, (xiv) the Vermont DFR, (xv) counsel to the Ad Hoc Committee, and (xvi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**No Previous Request**

25.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: October 4, 2021                       **SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Mark Minuti*
                        Mark Minuti (DE Bar No. 2659)
                        Monique B. DiSabatino (DE Bar No. 6027)
                        1201 N. Market Street, Suite 2300
                        P.O. Box 1266
                        Wilmington, DE 19899
                        Telephone: (302) 421-6840
                        Fax: (302) 421-6813
                        mark.minuti@saul.com
                        monique.disabatino@saul.com

                            -and-

                        Jeffrey C. Hampton
                        Adam H. Isenberg
                        Shannon A. McGuire
                        Centre Square West
                        1500 Market Street, 38th Floor
                        Philadelphia, PA 19102
                        Telephone: (215) 972-7777
                        Fax: (215) 972-7725
                        jeffrey.hampton@saul.com
                        adam.isenberg@saul.com
                        shannon.mcguire@saul.com

                        *Counsel for Debtors and Debtors in Possession*