**Exhibit B**


**Agreement**

Execution Version

## ASSIGNMENT, ASSUMPTION AND NOVATION AGREEMENT

This Assignment, Assumption and Novation Agreement (this "**Agreement**"), dated as of the _____ day of _____, 20___ (the "**Execution Date**"), is entered into by and among Philadelphia Academic Risk Retention Group, LLC ("**PARRG**"), a Vermont limited liability company, Accredited Surety and Casualty Company, Inc., a Florida corporation ("**ASC**"), and Philadelphia Academic Health System, LLC, a Delaware limited liability company ("**PAHS**" and together with PARRG and ASC, the "**Parties**" and each, a "**Party**").

## RECITALS

WHEREAS, PARRG issued to PAHS, as the first named insured, policies of healthcare professional liability, physician professional liability, non-healthcare provider professional liability and general liability insurance coverage for the following periods: (i) January 11, 2018 at 12:01 a.m. to January 11, 2019 at 12:01 a.m., and (ii) January 11, 2019 at 12:01 a.m. to March 12, 2020 at 12:01 a.m., including an applicable extended reporting period (collectively, the "**Policies**"), full and complete copies of which are attached hereto as **Exhibit A**;

WHEREAS, PARRG and ASC desire to enter into this Agreement pursuant to which PARRG will, on a novation basis, transfer and assign to ASC, and ASC will assume and accept from PARRG, all of the rights, interests, duties, liabilities, obligations and responsibilities of PARRG under the Policies, such that PARRG shall thereby be discharged from any existing and further obligations and liabilities under the Policies, and ASC shall thereby be substituted for PARRG in PARRG's name, place and stead as the insurer on and under the Policies, in each case as of the Effective Date;

WHEREAS, according to PARRG, as of March 31, 2021, PARRG's total assets were $18,941,499 and PARRG's outstanding losses and loss adjustment expenses (as reflected on PARRG's balance sheet, not including the write-ins) were $10,334,832 in the aggregate;

WHEREAS, according to ASC, as of March 31, 2021, ASC's net admitted assets were $210,748,715 and ASC's outstanding losses and loss adjustment expenses (as reflected on ASC's balance sheet, net of reinsurance and not including the write-in portfolios) were $13,573,415 in the aggregate;

WHEREAS, on June 30 and July 1, 2019, PAHS and its affiliated co-debtor entities (collectively, the "**Debtors**") filed voluntary petitions pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Chapter 11 Cases**") with the United States Bankruptcy Court for the District of Delaware, Case No. 19-11466 (the "**Bankruptcy Court**");

WHEREAS, on July 15, 2019, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") in the Chapter 11 Cases;

WHEREAS, PAHS received approval from the Bankruptcy Court to obtain the extended reporting period endorsement under the Policies and obtained such endorsement effective as of March 12, 2020;

WHEREAS, PAHS has provided to PARRG and ASC the listing of all claims that, to the best of its knowledge, have been noticed under the Policies;

WHEREAS, it is intended by the Parties that this Agreement be interpreted in such a manner that coverage afforded to policyholders of PARRG will remain unaltered and in full force and effect in accordance with the Policies, with the sole exception that ASC will be substituted for PARRG as the insurer under the Policies;

WHEREAS, PAHS, as the first named insured in the Policies, is willing to allow PARRG to make such assignment and novation of the Policies on the terms and conditions set forth below;

WHEREAS, PARRG is a party to the Sub-Business Associate Agreement, effective as of January 11, 2018 (the "**2018 BAA**"), with PAHS, a full and complete copy of which is attached hereto as **Exhibit B**, and PARRG desires to assign the 2018 BAA to ASC and ASC desires to assume the 2018 BAA pursuant to the terms and conditions of this Agreement, effective as of the Effective Date; and

WHEREAS, although the 2018 BAA may be assigned by PARRG without PAHS's consent, PAHS acknowledges such assignment of the 2018 BAA on the terms and conditions set forth below.

NOW THEREFORE, in consideration of the above premises, the terms and conditions contained herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties hereby agree to the following:

1.      This Agreement, and all assignments, assumptions, consents, agreements, releases, and indemnities contained in this Agreement shall be deemed to be effective and enforceable as of the date when the Parties have received all necessary Bankruptcy Court approvals (acceptable in form and substance to the Debtors and the Creditors' Committee) and regulatory approvals from the applicable regulatory authorities in the State of Vermont for the transactions described herein (the "**Effective Date**"). The Parties understand and agree that if PARRG fails to transfer the Premium Payment (as defined below) to ASC in accordance with Section 2 of this Agreement, this Agreement and the assignment and assumption and other transactions contemplated herein shall be null and void and of no effect.

2.      Within five (5) days from the Effective Date, PARRG shall transfer payment in the amount of ▆▆▆▆▆▆ (the "**Premium Payment**") by wire transfer in immediately available funds to ASC's account designated to PARRG in writing prior to the Effective Date, which Premium Payment shall be subject to further adjustment for losses and loss adjustment expenses paid by PARRG under the Policies from December 31, 2020 to (but excluding) the Effective Date (collectively, "**Interim Paid Losses**"), with the adjustment reconciliation and payment process to be completed in accordance with Section 9 of this Agreement, and prior notice of such adjustment for the Interim Paid Losses shall be provided via email by Latham & Watkins LLP (as counsel to PARRG) to Saul Ewing

Arnstein & Lehr LLP (as counsel to the Debtors) and Sills Cummis & Gross P.C. (as counsel to the Creditors' Committee).

3.      PARRG hereby transfers, delegates and assigns, by novation, to ASC, absolutely and unconditionally, all of its rights, interests, duties, obligations, responsibilities and liabilities under the Policies, as incorporated into this Agreement as **Exhibit A**, under and subject to the terms of this Agreement. ASC hereby accepts and assumes from PARRG, absolutely and unconditionally, all of the rights, interests, duties, obligations, responsibilities and liabilities of PARRG under the Policies, as incorporated into this Agreement as **Exhibit A**, under and subject to the terms of this Agreement, and ASC shall be substituted for PARRG in PARRG's name, place and stead as the insurer on and under the Policies, so as to effect a novation of the Policies and to fully release PARRG from any and all existing and further rights, interests, duties, obligations, responsibilities and liabilities under the Policies.

4.      PARRG hereby assigns, transfers, conveys, delivers, and sets over to ASC the 2018 BAA, including all of PARRG's right, title, interest, benefit, privileges, burdens, obligations and liabilities in, to and under the 2018 BAA, other than the liabilities arising under the 2018 BAA solely as a result of PARRG's wrongful failure to perform any covenants or obligations required to be performed by PARRG under the 2018 BAA prior to the Effective Date (the "**BAA Retained Liabilities**").  ASC hereby accepts such assignment, transfer, conveyance, delivery and setting over of the 2018 BAA and assumes and agrees to observe, pay, perform and discharge, as the same become due, each and all of such burdens, obligations and liabilities, other than the BAA Retained Liabilities.  For the avoidance of doubt, notwithstanding anything to the contrary in this Agreement, the Policies and the 2018 BAA, ASC assumes no BAA Retained Liabilities, and the Parties agree that all such BAA Retained Liabilities shall remain the sole responsibility of PARRG.

5.      PAHS hereby consents and agrees, as of the Effective Date, to the transfer, delegation, assignment, and novation by PARRG to ASC of all of PARRG's rights, interests, duties, obligations, responsibilities and liabilities under the Policies, subject to the terms hereof, without recourse to PARRG, and to the assumption of and performance by ASC of all of PARRG's rights, interests, duties, obligations, responsibilities and liabilities under the Policies, as incorporated into this Agreement as **Exhibit A**.

6.      PAHS hereby acknowledges, as of the Effective Date, the assignment and transfer by PARRG to ASC of PARRG's right, title, interest, benefit, privileges, burdens, obligations and liabilities under the 2018 BAA, other than the BAA Retained Liabilities, subject to the terms hereof, without recourse to PARRG solely with the exception of the BAA Retained Liabilities, and the assumption of and performance by ASC of all of PARRG's burdens, obligations and liabilities under the 2018 BAA, other than the BAA Retained Liabilities.

7.      [Intentionally Omitted].[1]

8.      ████████████████████████████████████████████████████████████

---

[1] NTD: language was deleted in response to Debtors' request.



9.   PARRG shall provide to ASC a written statement of Interim Paid Losses within ten (10) days from the Effective Date, and ASC shall have ten (10) days from the date of receipt thereof to respond in writing to PARRG's statement by identifying any items that ASC does not agree with and/or agreeing to PARRG's statement in whole or in part.  PARRG shall have ten (10) days to respond to any items that ASC does not agree with, and PARRG and ASC shall work in good faith to resolve any items that ASC disagrees with within ten (10) days from the date of PARRG's response.  ASC shall pay PARRG the amount of any Interim Paid Losses as to which PARRG and ASC agree, within five (5) days from the date of their agreement thereto by wire transfer in immediately available funds to PARRG's account designated to ASC in writing (with a notice to the Debtors and the Creditors' Committee), and PARRG and ASC shall seek assistance of a mediator in accordance with Section 17(f) as to the remaining Interim Paid Losses that they cannot agree to.

10.  Each Party hereby agrees to promptly execute any and all supplemental agreements, amendments, releases, affidavits, waivers or other documents of any nature or kind which

may be necessary in order to implement the provisions or objectives of this Agreement, to the extent doing so is commercially reasonable.

11. 

12. Each Party represents and warrants that it has not dealt with any brokers, finders or salesmen in connection with the transactions effected by this Agreement other than Cobbs Allen Capital, LLC dba CAC Specialty ("**CAC**"). ASC acknowledges and agrees that it is solely responsible for compensating CAC for its fees or commissions in connection with the transactions effected by this Agreement, and that neither PARRG nor any of its Affiliates shall be liable therefor. 

13. ASC acknowledges that PARRG intends to commence its final winding-up and liquidation following the consummation of the transactions described herein, and hereby consents to such winding-up and liquidation.

14. Each Party represents and warrants to the other, as of the Execution Date and the Effective Date, that: (i) it is authorized to enter into this Agreement; (ii) the persons executing this

Agreement are authorized and empowered to do so; (iii) it is not a party to any agreement, transaction, negotiation or legal proceeding that would render this Agreement or any part of it void, voidable or unenforceable as of the Execution Date; and (iv) no claim, liability, obligation or loss which is assigned and assumed under this Agreement has been assigned, transferred or sold by PARRG or PAHS to any other party or entity. Each Party further represents and warrants to the other that, as of the Effective Date, it will have obtained all authorizations, consents and approvals of any governmental or regulatory entity and the Bankruptcy Court required to make this Agreement valid and binding.  PARRG represents and warrants to ASC that, to its actual knowledge without investigation or inquiry, as of the Execution Date and the Effective Date, it is not aware of (a) any default on the part of PARRG that exists under the Policies or (b) any notices thereof received by PARRG.  If, prior to the Effective Date, PARRG becomes aware of any default on the part of PARRG that exists under the Policies, PARRG shall notify ASC of the same, and if such default would materially increase ASC's liabilities under the Policies, ASC shall have the option of terminating this Agreement by providing written notice thereof to PARRG within five (5) days of being notified of such default and upon such termination this Agreement shall be null and void and the assignment and assumption contemplated hereunder shall be of no effect.

15.    ASC shall have reasonable rights during normal business hours and upon reasonable notice to inspect and audit the records of PARRG relating to the subject matter of this Agreement until the earlier of (i) the completion of PARRG's final winding-up and liquidation or (ii) one (1) year after the Effective Date.  Following the Effective Date and as is commercially reasonably practicable, and until the earlier of (i) the completion of PARRG's final winding-up and liquidation or (ii) one (1) year after the Effective Date, upon the reasonable request of ASC, and at no material cost or expense to PARRG, PARRG shall reasonably cooperate in good faith with ASC in the handling of all claims that were asserted under the Policies and known to PARRG prior to the Effective Date.  Following the Effective Date and as is commercially reasonably practicable, and until one (1) year after the Effective Date, upon the reasonable request of PARRG, and at no material cost or expense to ASC, ASC shall reasonably cooperate in good faith with PARRG in connection with PARRG's final winding-up and liquidation.  For the avoidance of any doubt, any cooperation by PARRG or ASC under this Section 15 shall not require such Party to waive or modify any of its rights under this Agreement.

16.    This Agreement does not transfer to ASC any rights, obligations or liabilities of PARRG except as set forth herein.  In particular, PARRG shall remain liable for all costs and expenses incurred in its ordinary corporate course of business in its winding-up and liquidation and for the BAA Retained Liabilities.

17.    Miscellaneous.

    a.    <u>Entire Agreement</u>.  This Agreement contains all of the terms and conditions agreed upon by the Parties with respect to the subject matter hereof, and supersedes any and all other agreements, whether prior or contemporaneous and whether written or oral.  This Agreement may only be modified in writing, signed by the Parties.

b.     <u>Incorporation of Recitals</u>.  The Recitals to this Agreement are incorporated into and shall constitute a part of this Agreement.

c.     <u>Severability</u>.  If any court or administrative body of competent jurisdiction finds any provision of this Agreement to be invalid, unenforceable or illegal, the other provisions of this Agreement shall remain in force.  If any invalid or unenforceable or illegal provision would be valid, enforceable or legal if some part of it were deleted, that provision shall apply with what any modification is necessary to make it valid, enforceable and legal.

d.     <u>No Assignment</u>.  No assignment of this Agreement shall be made in whole or in part by any Party without the written consent of the other Parties.  Such consent shall not be unreasonably withheld. Any assignment in violation hereof shall be null and void.

e.     <u>Governing Law and Venue</u>.  This Agreement shall be governed by, construed under and enforced according to the laws of the State of Vermont, and the rights and duties of the Parties shall be governed by those laws without regard to any conflict of laws principles.  All judicial proceedings brought by any Party arising out of or relating to this Agreement shall be brought in any state or federal court of competent jurisdiction in the State of Vermont, Chittenden County, and each Party accepts generally and unconditionally the exclusive jurisdiction and venue of such courts, waives any defense of *forum non conveniens*, and agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested.

f.     <u>Mediation</u>.  In the event there is any dispute among the Parties arising out of or relating in any way to this Agreement, the Parties must mediate such dispute before commencement of any legal action.  The Parties agree that such mediation will occur in New York or Delaware and that (i) in connection with any dispute relating to this Agreement becoming effective, the mediator will be selected by the Parties and will be a retired federal judge of the United States Bankruptcy Court for the Southern District of New York, the United States Bankruptcy Court for the District of Delaware, or a United States District Court for the foregoing districts, and (ii) in connection with any other dispute, the mediator will be a disinterested active or retired insurance or reinsurance industry professional with at least twenty-five (25) years of experience in such industry. The mediator's charges and expenses shall be split by the Parties on an equal sharing basis. The mediation fees and costs do not include any Party's attorney fees and costs. Each Party shall be responsible for its own attorney fees and costs at mediation. Those costs may not be assessed against any other Party that is not a prevailing party.  During a mediation, the Parties may stipulate to allow the mediator, if qualified as an arbitrator, to hear and arbitrate the dispute.

g.     <u>Notices</u>. All notices to be given or delivered under or by reason of the provisions of this Agreement will be in writing and shall be deemed to have been given (a) when delivered personally by hand, (b) when delivered by email, (c) on the following business day after being sent to the recipient by reputable overnight courier service (charges prepaid) and designated for next business day delivery, or

(d) three (3) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid. Such notices, demands and other communications will be delivered to each Party at the address set forth below (or to such other address as a Party may have specified by notice given to the other Parties pursuant to this provision):

If to PARRG:

c/o Strategic Risk Solutions (Vermont), Ltd.
159 Bank Street, Fourth Floor
Burlington, VT 05401
Attention: Patricia Henderson

With a copy of such notices to:

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attn:   Suzzanne Uhland, Esq.
        Tianjiao ("TJ") Li, Esq.
Email:  suzzanne.uhland@lw.com
        tj.li@lw.com

If to ASC:

Accredited Surety and Casualty Company, Inc.
4798 New Broad Street, Suite 200
Orlando, FL 32814
Attention: CEO

If to the Debtors (including PAHS):

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186

Attn:   Jeffrey C. Hampton, Esq.
        Adam H. Isenberg, Esq.
Email: Jeffrey.Hampton@saul.com
       Adam.Isenberg@saul.com

If to the Creditors' Committee:

Sills Cummis & Gross P.C.
The Legal Center
One Riverfront Plaza

Newark, NJ 07102

Attn:   Andrew H. Sherman, Esq.
        Boris Mankovetskiy, Esq.
Email: asherman@sillscummis.com
        bmankovetskiy@sillscummis.com

h.   <u>No Waiver</u>.  No waiver of any term, provision, or condition of this Agreement whether by conduct or otherwise in any one or more instances shall be deemed to be construed as a further or continuing waiver of any such term, provision or condition or of any other term, provision or condition of this Agreement.

i.   <u>No Third Party Beneficiaries</u>.  This Agreement shall enure only to the benefit of the Parties, and their successors and permitted assigns, and nothing herein expressed or implied shall give or be construed to give to any individual, partnership, corporation, association, trust, limited liability company, joint venture, unincorporated organization or other entity, other than the Parties and such successors and permitted assigns, any legal or equitable rights, remedy or claim hereunder.

j.   <u>Headings</u>.  All headings used in this Agreement are for convenience only and shall not be interpreted as altering or affecting the interpretation of any provision contained herein.

k.   <u>Counterparts; Electronic Execution</u>.  This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which together shall constitute one and the same Agreement.  Signature pages delivered in PDF or another electronic format shall be deemed to have the same force and effect as manually executed signature pages.

l.   <u>Confidentiality</u>. The Parties acknowledge that the existence and the terms of this Agreement and any oral or written information exchanged among the Parties in connection with the preparation and performance of this Agreement are regarded as confidential and proprietary information. Each Party shall maintain confidentiality of all such confidential and proprietary information, and without obtaining the prior written consent of the other Parties, it shall not disclose any such confidential and proprietary information to any third parties, except for the information that:

   i.   at the time of disclosure is, or thereafter becomes, generally available to and known by the public other than as a result of, directly or indirectly, any breach of this Agreement, act or omission by such Party, its affiliates or any of its or its affiliates' employees, officers, directors, managers, partners, shareholders, agents, attorneys, accountants, advisors or financiers (collectively, "**Representatives**");

   ii.  is under the obligation to be disclosed pursuant to applicable federal, state or local laws or regulations, or a valid order of a court or other governmental authority of competent jurisdiction but only after complying with the following procedure: if a Party is served with a subpoena seeking to compel production

of this Agreement or information regarding the terms of this Agreement, then the Party receiving the subpoena (the "**Subpoenaed Party**") shall promptly forward a copy of such subpoena to the other Parties (the "**Non-Subpoenaed Parties**") at least fourteen (14) days before the production date (or as soon as practicable after being served with the subpoena if the subpoena provides less than fourteen (14) days' notice). Any Non-Subpoenaed Party may, at its own cost, contest the subpoena or seek a protective order in the subject proceeding. The Subpoenaed Party will reasonably cooperate with respect to all reasonable requests or procedures sought by any Non-Subpoenaed Party with respect to a challenge to a subpoena. If neither party contests the subpoena or seeks a protective order in the subject proceeding, or if such opposition or request is unsuccessful, the Subpoenaed Party may produce this Agreement if it is ordered or otherwise legally required to do so provided that it shall designate this Agreement with the highest level of confidentiality in the subject proceeding;

iii. is necessary to be disclosed by the Debtors in pleading(s) filed with the Bankruptcy Court to obtain all necessary approvals from the court; provided that such pleadings shall be (a) provided by Saul Ewing Arnstein & Lehr LLP (as counsel to the Debtors) to Latham & Watkins LLP (as counsel to PARRG) no later than three (3) business days before such pleadings are filed with the Bankruptcy Court and (b) reasonably acceptable in form and substance to PARRG; provided further, that the pricing, release, and indemnification provisions shall not be disclosed unless disclosure of the release provision is required to obtain the approval of the Bankruptcy Court;

iv. is necessary to be disclosed by the Debtors in response to inquiries by individuals covered under the Policies; provided that such disclosure shall be limited to the fact that the Policies have been assigned by PARRG to ASC; or

v. is required to be disclosed by any Party to its Representatives regarding the transactions effected hereunder, provided that such Representatives shall be bound by the confidentiality obligations similar to those set forth in this Section 17(l) and such Party remains responsible for any breach of this Agreement caused by any of its Representatives.

For the purposes of this Section 17(l), PARRG and PAHS shall not be deemed to be affiliates of each other.

Disclosure of any confidential or proprietary information by the staff members or agencies hired by any Party shall be deemed disclosure of such confidential and proprietary information by such Party, which Party shall be held liable for breach of this Agreement. This Section 17(l) shall survive for a period of five (5) years following the occurrence of: (x) any termination of this Agreement, provided that the Parties shall continue to keep confidential any personally identifiable information of any individual and ASC shall continue to be bound by the 2021 BAA (as defined below) (including its confidentiality obligations) in accordance with its terms, or (y) the Effective Date, provided that the Parties shall continue to keep confidential any personally identifiable information of any individual and

ASC shall continue to be bound by the 2018 BAA (including its confidentiality obligations) in accordance with its terms.

The rights of PARRG under this Section 17(l) shall be in addition to and not in substitution for the rights of PARRG under the Confidentiality Agreement, dated as of September 30, 2020, between PARRG and ASC, as amended, including the Sub-Business Associate Agreement, effective as of February 22, 2021, incorporated therein (the "**2021 BAA**") (as so amended, the "**Confidentiality Agreement**"), which shall continue in full force and effect until the Effective Date, and as otherwise set forth herein, at which time the Confidentiality Agreement shall terminate, and ASC shall assume all rights and obligations of PARRG under the 2018 BAA, except for the BAA Retained Liabilities, in accordance with this Agreement.

If, for any reason, this Agreement is terminated prior to the Effective Date or because the Effective Date does not occur or because this Agreement is rendered null and void, the Confidentiality Agreement, including the 2021 BAA incorporated therein, shall nonetheless continue in full force and effect in accordance with its terms.

In the event of any conflict between the terms of the Confidentiality Agreement and this Agreement, the terms of this Agreement shall prevail.

PARRG and ASC agree to amend or otherwise modify the Confidentiality Agreement and/or the 2021 BAA to the extent necessary to fulfill the conditions set forth in this Section 17(l) should this Agreement terminate for any reason whatsoever.

Notwithstanding anything to the contrary contained herein, ASC may disclose the assignment and assumption transaction contemplated by this Agreement to ASC's regulators and as may be required by the rules of any stock market exchange which bind ASC or any of its Affiliates or any rating agency which assesses ASC or its Affiliates' obligations or securities.

m.  No Reliance.  In executing this Agreement, each Party relied solely on the statements expressly set forth herein, and has placed no reliance whatsoever on any statement, representation, or promise of any other Party, or any other person or entity, not expressly set forth herein, or upon the failure of any other Party, or any other person or entity to make any statement, representation or disclosure of anything whatsoever. The discovery by any Party, subsequent to the execution of this Agreement, of any facts not heretofore known to that Party, or that the facts or law upon which any Party relied in executing this Agreement was not as that Party believed it to be, shall not constitute grounds for declaring this Agreement void, voidable, or otherwise unenforceable.

n.  Investigation; Legal Counsel.  Each Party has made such investigation as it deems necessary or desirable of all matters contained in or relating to this Agreement. Furthermore, each Party has been represented by legal counsel of its choosing in connection with this Agreement, and each Party executes this Agreement knowingly and voluntarily after receiving such legal advice.

o.    <u>Not Construed Against Drafter</u>.  This Agreement shall be construed without regard to the identity of the person who drafted the various provisions. Each and every provision of this Agreement shall be construed as though all of the Parties participated equally in the drafting of them, and any rule of construction that a document is to be construed against the drafting party shall not be applicable to this Agreement. All references to the neuter gender shall include the feminine or masculine gender and vice versa, where applicable.

[signature pages follow]

IN WITNESS WHEREOF, the Parties have executed this Agreement on the Execution Date, to be effective as of the Effective Date.
.

**Philadelphia Academic Risk Retention Group, LLC**

By:_____

Name:_____

Title:_____

**Accredited Surety and Casualty Company, Inc.**

By:_____

Name:_____

Title:_____

**Philadelphia Academic Health System, LLC**

By:_____

Name:_____

Title:_____

**EXHIBIT A**

**<u>PARRG POLICIES</u>**

[attached]

**EXHIBIT B**

## 2018 BAA

[attached]