# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a<br>HAHNEMANN UNIVERSITY HOSPITAL, *et al.,*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11466 (MFW)<br><br>(Jointly Administered)<br><br>Hearing Date: November 19, 2021 at 10:30 a.m. (ET)<br>Obj. Deadline: November 12, 2021 at 4:00 p.m. (ET) |

**THE MOTION OF THE BROAD STREET ENTITIES AND PAHH FOR ENTRY OF AN ORDER (I) DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY TO THEIR ASSETS OR (II) IN THE ALTERNATIVE, GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY FOR THEM TO SELL, TRANSFER, OR OTHERWISE ENCUMBER SUCH ASSETS**

Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC (collectively, the "**Broad Street Entities**"), and Philadelphia Academic Health Holdings, LLC ("**PAHH**"), by and through their undersigned counsel, hereby file this motion (the "**Motion**"), to provide comfort to third party lenders and title insurance companies, for entry of an order (i) determining that the automatic stay does not apply to the assets owned by the Broad Street Entities and by PAHH, including PAHH's equity interest in the Broad Street Entities (collectively, the "**MBNF Assets**")[2] or, (ii) in the alternative, granting limited relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] The MBNF Assets include buildings and parcels located at 222-248 N. Broad Street, 221-223 N. 15th Street, 325 N. 15th Street, 300-304 N. Broad Street, 200-214 N. Broad Street, and 201-219 N. 15th Street.

RLF1 26260143v.1

permit the Broad Street Entities and PAHH to sell, transfer, or otherwise encumber the MBNF Assets, including any actions in connection with imposing first priority liens and/or mortgages on the MBNF Assets as consideration for financing, such as the Term Loan (as defined below). In support of the Motion, the Broad Street Entities and PAHH respectfully state as follows:

## BACKGROUND

I.    **The Organizational Structure**

1.    The Debtors and the non-Debtor MBNF PropCos[3] are distinct entities in the same corporate family. Non-Debtor PAHH is the holding company at the top of the corporate structure encompassing the Debtors, including Philadelphia Academic Health System, LLC, Center City Healthcare, LLC formerly d/b/a Hahnemann University Hospital (together with its affiliated practice groups, "**CCH**") and St. Christopher's Healthcare, LLC formerly d/b/a St. Christopher's Hospital for Children (together with its affiliated practice groups, "**SCH**"). Also under PAHH's ownership are the remaining MBNF PropCos that own, or formerly owned, a portion of the real property underlying or adjacent to the hospitals.

2.    On June 30, 2019 and July 1, 2019 (collectively, the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Chapter 11 cases have been jointly administered for procedural purposes only. As illustrated in the organizational chart attached to the *Declaration of Allen Wilen in Support of First Day Relief* [Docket No. 2] (the "**First Day Declaration**"), the MBNF PropCos are not Debtors in these Chapter 11 cases. Indeed, the Debtors' Schedules of Assets and Liabilities make clear that the MBNF Assets are not property of the Debtors' bankruptcy estates. *See, e.g., Schedule A/B:*

---

[3] "**MBNF PropCos**" means PAHH, the Broad Street Entities, Front Street Healthcare Properties, LLC ("**Front I**"), and Front Street Healthcare Properties II, LLC ("**Front II**" and together with Front Street I, the "**Front Street Entities**").

2

*Assets – Real and Personal Property of Debtor Center City Healthcare, LLC* [Docket No. 445] at 16 (listing no property ownership); *Schedule A/B: Assets – Real and Personal Property of Debtor St. Christopher's Healthcare, LLC* [Docket No. 449] at 16-17 (same).

## II.     The Debtor-in-Possession Financing

3.     The Debtors solicited offers for a debtor-in-possession financing facility ("**DIP Financing**"). After assessing the significant risks and uncertainty of prevailing in a dispute with the Debtors' prepetition lender, MidCap,[4] over any proposed priming DIP Financing, the Debtors determined that obtaining DIP Financing from MidCap was in the best interests of the Debtors' estates. As support for CCH and SCH and for no consideration in exchange, PAHH provided a guaranty and the Broad Street Entities pledged all of their real estate and personal property assets and provided guarantees to enable the Debtors to obtain the $65 million DIP Financing from MidCap, who would not agree to provide the DIP Financing without such guaranty and pledge from PAHH and the Broad Street Entities. *See Debtors' Motion Seeking Approval of DIP Financing* [Docket No. 53] at 10, 11 (listing the Broad Street Entities as "Guarantors" and pledging "all assets of the Guarantors" as collateral). The DIP Financing was critical to an orderly closing of Hahnemann University Hospital and the sale of SCH.

## III.    The Sale of SCH

4.     Substantially all assets of SCH were marketed shortly after the Petition Date. In approving the bidding procedures in connection with the sale of SCH, the Court recognized that the real property associated with St. Christopher's Hospital for Children (a subset of the MBNF Assets) was not owned by the Debtors and therefore made a finding that "the Assets do not include the fee interest in any real estate, all of which is owned by non-Debtors and shall not be marketed

---

[4]     "**MidCap**" means, collectively, MidCap Funding IV Trust and MidCap Funding H Trust.

for sale by or on behalf of the Debtors and/or the Committee." Bidding Procedures Order ¶ 31.[5] Further, the Court required that "[a]ll marketing, deliberations, decisions and actions regarding the fee interest in the real estate shall be reserved for the non-Debtor owners of such real estate." *See id.* Mindful of the Court's mandate that "[a]ll parties shall act in good faith in connection with the separate but parallel sales processes" (*see id.*), the MBNF PropCos cooperated with the Debtors in connection with the sale of SCH.

### IV. Payment Of Debtors' Post-Petition, Pre-Rejection Expenses

5. Several months after the closing of the Hahnemann University Hospital, the Debtors rejected that certain lease dated as of January 11, 2018 (the "**Hahnemann Lease**"), between Broad Street Healthcare Properties, LLC ("**Broad I**") and CCH, pursuant to which Broad I leased to CCH the premises located at 222-48 N. Broad Street and 221-223 N. 15th Street, Philadelphia, Pennsylvania (the "**Hahnemann Premises**"). The Hahnemann Lease was deemed rejected as of February 29, 2020, and the Debtors vacated the Hahnemann Premises on or around March 7, 2020. *See Stipulation Regarding Broad Street Lease* [Docket No. 1364-1] ¶ 1. The Debtors failed to comply with their post-petition lease obligations in many respects, with the result that the MBNF PropCos were required to pay no less than $2.1 million in post-petition pre-rejection expenses on behalf of the Debtors. As set forth below, substantial carrying costs have been incurred to maintain the MBNF Assets, including the Hahnemann Premises.

---

[5] "**Bidding Procedures Order**" means the *Order (I) Scheduling a Hearing to Consider Approval of the Sale or Sales of Substantially All Assets of St. Christopher's Healthcare, LLC and Certain Related Affiliates and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Establishing Procedures in Connection with the Selection of and Protections Afforded to Any Stalking Horse Purchasers, and (IV) Granting Related Relief* [Docket No. 301]

## V. The MBNF PropCos' Expenses

6. The most significant MBNF Assets are the premises previously occupied by Hahnemann University Hospital. Despite its closing, such premises require ongoing maintenance and therefore incur substantial operating expenses in connection with security, cleaning, electrical systems, elevators, HVAC maintenance, and utility costs. For instance, electricity needs to be turned on so that (i) the interior of the Towers can be maintained at a proper temperature to prevent pipes from freezing during colder months and to prevent humidity and mold in warmer months and (ii) emergency exit signs and emergency lighting can function. Given that unoccupied buildings are susceptible to trespassing, vandalism, and undetected building damage easily resulting in public safety issues, security personnel are required to patrol the properties and remain on site 24/7 to ensure that there are no signs of vandalism and that all doors, windows, and other openings are secured to avoid trespassing and damage caused by inclement weather, water leaks, and fire. Moreover, for public safety reasons, the MBNF Assets require continuous spending related to life safety measures, the fire alarm system, the sprinkler system, fire extinguishers, and snow and ice removal. Other key maintenance tasks focus on the lighting system, water systems, heating and cooling systems, access controls, and exterior walls and accessories. In addition, the MBNF PropCos are required to pay substantial real estate taxes and property insurance.

7. The MBNF PropCos face mounting professional fees. For instance, the MBNF PropCos have incurred, and will continue to incur, significant legal fees to engage in mediation and to defend the adversary proceeding commenced by the Debtors.

## VI. The Pension Obligation

8. As a result of the complete withdrawal by Debtor Center City Healthcare, LLC formerly d/b/a Hahnemann University Hospital from a multiemployer defined benefit pension plan within the meaning of the Employee Retirement Income Security Act of 1974 ("**ERISA**") § 4203,

the Pension Fund for Hospital and Health Care Employees of Philadelphia and Vicinity (the "**Pension Fund**") asserted that the Debtors' "control group" includes the MBNF PropCos. Under ERISA, payments are required to be made even if the liability is disputed. Accordingly, the MBNF PropCos are obligated (and will continue to be obligated into the future) to make periodic payments on behalf of the Debtors, in addition to incurring significant professional fees as a result of this disputed liability.[6] As a result of the obligation to the Pension Fund and other expenditures set forth above, the MBNF PropCos depend upon access to sufficient liquidity generated by the disposition of, or financing secured by, the MBNF Assets.

### VII. MBNF Has Sought Financing To Preserve the Value of the MBNF Assets

9. Over the past several months, the MBNF PropCos have been able to obtain limited financing from related parties, with such financing secured by certain of the MBNF Assets, but in light of the need for additional liquidity, the MBNF PropCos must obtain financing from third party lenders. To that end, the MBNF PropCos undertook discussions with various lenders regarding a financing opportunity. Among such lenders, Gordon Brothers Realty Services, LLC ("**Gordon Brothers**") offered the most attractive terms. After many weeks of constructive arm's length diligence and negotiations by the MBNF PropCos, Gordon Brothers, and their respective professionals and on October 29, 2021, the MBNF PropCos and Gordon Brothers executed a financing term sheet for a 15-month term loan in the amount of $17.5 million (the "**Term Loan**") that would refinance the existing mortgages on certain of the MBNF Assets.[7] The consideration for the Term Loan includes first priority liens and/or mortgages on the MBNF Assets and a

---

[6] The MBNF PropCos reserve all rights to assert an administrative expense claim on account of (a) all payments and/or payment obligations to the Pension Fund or (b) other benefits conferred upon the Debtors' estates as a result of the MBNF PropCos' intercession as described above.

[7] Upon executing the term sheet, the MBNF PropCos deposited fees with Gordon Brothers and is fully committed to closing the Term Loan.

monthly interest payment in an amount equal to the 90-day Secured Overnight Financing Rate plus 950 basis points. The loan proceeds will be used to fund the carrying costs of the MBNF Assets, thereby preserving the value of the real property, in addition to paying professional fees.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this Motion, pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2) and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

11. The MBNF PropCos consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent such consent, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

12. The statutory predicates for the relief sought in this Motion are sections 362 and 541(d) of title 11 of the United States Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 4001-1.

## RELIEF REQUESTED

13. As set forth above, although the First Day Declaration, the Schedules of Assets and Liabilities, the MBNF PropCos' assistance with the DIP Financing, the Bidding Procedures Order, rejection of the Hahnemann Lease, and the vacation of the Hahnemann Premises make abundantly clear that the MBNF Assets are not, and have never been, property of the Debtors' bankruptcy estates, the Broad Street Entities and PAHH file this Motion in an abundance of caution to seek entry of an order (i) determining that the automatic stay does not apply to the MBNF Assets or, (ii) in the alternative, granting limited relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code to permit the Broad Street Entities and PAHH to sell, transfer, or otherwise

7

encumber the MBNF Assets, including any actions in connection with imposing first priority liens and/or mortgages on the MBNF Assets as consideration for financing, such as the Term Loan described above.

### BASIS FOR RELIEF REQUESTED

**I.    Because The MBNF Assets Are Not Property Of The Estates, The Automatic Stay Does Not Apply**

14.    The Debtors do not have an interest in the MBNF Assets, and therefore, the MBNF PropCos should be permitted to sell, transfer, or otherwise encumber the MBNF Assets, including any actions in connection with imposing first priority liens and/or mortgages on the MBNF Assets as consideration for financing, such as the Term Loan described above.  Section 541(a)(1) of the Bankruptcy Code provides that property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1). Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate, as defined by section 541 of the Bankruptcy Code. 11 U.S.C. § 362(a)(3).  Since the rejection of the leases applicable to certain of the MBNF Assets, the Debtors have had no interest whatsoever in the MBNF Assets. As set forth above, the absence of the Debtors' interest in any of the MBNF Assets is evidenced by the First Day Declaration, the Schedules of Assets and Liabilities, the MBNF PropCos' assistance with the DIP Financing, the Bidding Procedures Order, the rejection of the Hahnemann Lease, and the vacation of premises owned by the MBNF PropCos.

15.    Under these circumstances, the Debtors do not hold an interest in the MBNF Assets for such assets to be deemed property of the estates.  *See Winters By and Through McMahon v. George Mason Bank*, 94 F.3d 130, 134 (4th Cir. 1996) ("Most courts find that . . . the nondebtor's interest is not property of the estate.").  As a result, the MBNF PropCos should not be prevented

from selling, transferring, or otherwise encumbering the MBNF Assets in the sole discretion of the MBNF PropCos.

## II.     Alternatively, The MBNF PropCos Are Entitled To Relief From The Automatic Stay

16.     If the Debtors were to have any interest in the MBNF Assets to warrant the application of the automatic stay, the Broad Street Entities and PAHH should be granted relief from the automatic stay to sell, transfer, or otherwise encumber the MBNF Assets, including any actions in connection with imposing first priority liens and/or mortgages on the MBNF Assets as consideration for financing, such as the Term Loan described above.  It is well-established that, although broad, the automatic stay is not absolute and that relief from the stay should be granted when appropriate.  *Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Grp., Ltd. (In re Wedgewood)*, 878 F.2d 693, 697 (3d Cir. 1989); *In re ABC Learning Centers Ltd.*, 445 B.R. 318, 336 (Bankr. D. Del. 2010).  Indeed, section 362(d)(1) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—for cause . . . .

"Cause" is a flexible, fact-intensive concept determined on a case-by-case basis upon consideration of the totality of the circumstances.  *In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009); *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007); *see also Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997).  Although "cause" for stay relief under section 362(d)(1) of the Bankruptcy Code is assessed on a case-by-case basis, courts typically consider three factors: (1) whether any great prejudice to either the estate or the debtor will result from lifting the stay; (2) whether hardship to non-debtor party by maintenance of stay considerably outweighs hardship to debtor; and (3) the probability of the creditor prevailing on the merits.  *See, e.g., In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 120-21 (Bankr. D Del. 2015) (citing *Izzarelli v. Rexene Prods.*

9

*Co. (In re Rexene Prods. Co.*), 141 B.R. 574, 576 (Bankr. D. Del. 1992)); *In re Downey Fin'l Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010) (citing *In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007)); *In re SCO Grp.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007). Here, even if the MBNF Assets were property of the estates (which they are not), each factor would weigh in favor of granting the MBNF PropCos the relief requested here from the automatic stay.

17. *First*, there would be no prejudice to the Debtors' estates arising from the lifting of the stay. After the closing[8] of Hahnemann University Hospital and the sale of SCH, the Debtors' estates have been reduced to cash awaiting distribution. Moreover, because the Chapter 11 cases have been pending for almost two and a half years, the Debtors have lost the exclusive right to file a plan. Thus, the MBNF Assets could not be used to fund the Debtors' reorganization efforts because there is no attempt to reorganize and all of the operating assets have been discarded or sold. The record shows that the Debtors have not attempted to propose a confirmable plan other than a placeholder filed at the end of last year.

18. *Second*, the MBNF PropCos would suffer prejudice if the automatic stay is not lifted. The MBNF PropCos, not the Debtors, purchased the MBNF Assets underlying and/or surrounding two Philadelphia hospitals on January 11, 2018. The purchase was funded with cash of the MBNF PropCos, not cash that was property of the Debtors' estates. Without the lifting of the automatic stay, the MBNF PropCos would not be able to pay the carrying costs as set forth above, much less preserve the value of the MBNF Assets for the benefit of the creditors of the MBNF PropCos. Effectively, the MBNF Assets would be taken away from the MBNF PropCos

---

[8] "In late June 2019, with no meaningful prospect of a sale and no viable sources for additional funding, the Debtors concluded that the closure of HUH was necessary." *Disclosure Statement Relating to Debtors' Chapter 11 Plan of Liquidation* [Docket No. 2002].

and MBNF PropCos' creditors, with the MBNF PropCos' property rights annihilated. Accordingly, the second factor weighs in favor of lifting the stay, in light of the prejudice that could befall the MBNF PropCos without the requested relief and the absence of any hardship to the Debtors.

19. *Third*, the MBNF PropCos will almost certainly prevail on the merits upon adjudication of the issue of whether the MBNF Assets constitute property of the Debtors' estates. As set forth above, the MBNF PropCos are not Debtors in these Chapter 11 cases. Thus, the sale, transfer, or encumbrance of the MBNF Assets does not implicate the property of the estates. Further, as reflected in the First Day Declaration and the Schedules of Assets and Liabilities, the Debtors conceded that the Debtors and the property of their estates are separate and apart from the MBNF PropCos and the MBNF Assets. Indeed, in connection with providing the DIP Financing, MidCap would not proceed with the DIP Financing without additional consideration and assurances from the non-debtor entities backed by the MBNF Assets, which further evidences the separateness between the Debtors and the MBNF PropCos.

20. For the foregoing reasons, to the extent the Court determines that the Debtors have any interest in the MBNF Assets, "cause" exists to lift the automatic stay to grant the MBNF PropCos stay relief to sell, transfer, or otherwise encumber the MBNF Assets, including any actions in connection with imposing first priority liens and/or mortgages on the MBNF Assets as consideration for financing, such as the Term Loan described above.

## NOTICE

21. Notice of this Motion has been given to (a) the Office of the United States Trustee; (b) counsel for the Debtors; (c) counsel for the Creditors' Committee; (d) counsel to HSRE;[9] (e) counsel to Tenet Healthcare Corporation; (f) counsel to the Pension Fund; and (g) all parties that have requested notice pursuant to Bankruptcy Rule 2002.[10]  The MBNF PropCos submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of this page intentionally left blank*]

---

[9] "**HSRE**" means, collectively, PAHH Bellet MOB, LLC; PAHH Broad Street MOB, LLC; PAHH Erie Street Garage, LLC; PAHH Feinstein MOB, LLC; PAHH New College MOB, LLC; PAHH Wood Street Garage, LLC; HSREP VI Holding, LLC; HSRE-PAHH IA, LLC; and HSRE-PAHH I, LLC.

[10] Local Rule 4001-1(a) requires notice to be provided on "all known parties having an interest in the subject property or relief requested."  PAHH and the Broad Street Entities are not aware of any such parties.

**CONCLUSION**

WHEREFORE, the Broad Street Entities and PAHH respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) determining that the automatic stay does not apply to the MBNF Assets or, (ii) in the alternative, granting limited relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code to permit the Broad Street Entities and PAHH to sell, transfer, or otherwise encumber the MBNF Assets, including placing first priority liens and/or mortgages on certain of the MBNF Assets as consideration for financing, such as the Term Loan described above.

Dated: October 29, 2021
      Wilmington, DE

/s/ Brendan J. Schlauch
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701
Email: collins@rlf.com
merchant@rlf.com
schlauch@rlf.com

- and -

Suzzanne Uhland (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Alexandra M. Zablocki (admitted *pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10022
Telephone: 212/906-1200
Facsimile: 212/751-4864
E-mail: suzzanne.uhland@lw.com
    tj.li@lw.com
    alexandra.zablocki@lw.com

*Counsel for PAHH and the Broad Street Entities*