# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x

In re:

CENTER CITY HEALTHCARE, LLC D/B/A HAHNEMANN UNIVERSITY HOSPITAL, *et. al.*,[1]

Debtors.

----------------------------------------------------------- x

Chapter 11

Case No. 19-11466 (MFW)

(Jointly Administered)

**Obj. Deadline: Nov. 15, 2021 at 4:00 p.m. (ET)**

**Hearing Date: Nov. 19, 2021 at 10:30 a.m. (ET)**

## RESPONDENTS' MOTION TO
## (I) QUASH THE DEBTORS' AND THE CREDITORS' COMMITTEE'S
## NOTICE OF RULE 26 AND 30(b)(6) DEPOSITION AND SUBPOENAS AND
## (II) FOR ENTRY OF A PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY

Pursuant to Rules 7026, 7030, and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "**Federal Rules**") and Rule 7030-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Respondents[2] hereby file this motion (the "**Motion**") requesting the entry of an order (i) quashing the Deposition Notices and Non-Party Subpoenas and (ii) entering a protective order shielding the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]    "Respondents" are the entities who received discovery requests: William Brinkman, Joel Freedman, Kyle Schmidt, Broad Street Healthcare Properties, LLC, ("**Broad Street I**"), Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC ("**Broad Street III**," and collectively, the "**Broad Street Entities**"), Front Street Healthcare Properties, LLC ("**Front Street I**"), Front Street Healthcare Properties II, LLC ("**Front Street II**, and collectively, the "**Front Street Entities**"), Paladin Healthcare Capital, LLC ("**Paladin**"), and Philadelphia Academic Health Holdings, LLC ("**PAHH**").  The Broad Street Entities and PAHH received the *Debtors' and the Committee's First Set of Requests for Production of Documents to the Broad Street Entities and PAHH* [Docket No. 3025] (the "**Document Request**"); Mr. Freedman, the Broad Street Entities, and PAHH received deposition notices [Docket Nos. 3026-30] (the "**Deposition Notices**"); and Mr. Brinkman, Mr. Schmidt, the Front Street Entities, and Paladin received subpoenas [Docket Nos. 3034-39] (the "**Non-Party Subpoenas**" and, together with the Document Request and the Deposition Notices, the "**Discovery Requests**").

Respondents from the Document Request.  The Discovery Requests are overly broad, unduly burdensome, and not relevant to the claims or defenses at issue in *The Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining that the Automatic Stay Does Not Apply to Their Assets or (II) In the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets* [Docket No. 3002] (the "**Financing Motion**").

In support of this Motion, the Respondents respectfully state as follows:

**INTRODUCTION**

1.    The Debtors and the Official Committee of Unsecured Creditors (the "**Creditors' Committee**" and, together with the Debtors, the "**Estate Parties**") have engaged in mediation with PAHH, the Broad Street Entities (together with PAHH, the "**Movants**"), and other MBNF Non-Debtor Entities for approximately one year since the entry of the *Order Appointing Mediator in Connection with Discovery Disputes* [Docket No. 1943] in an attempt to resolve a variety of issues central to these Chapter 11 cases.  Throughout the mediation, the MBNF Non-Debtor Entities, including the Movants, have produced documents and in response to the joint investigation of the Debtors and the Creditors' Committee and supplemental information requests.  However, the Estate Parties have repeatedly sought to gain leverage over the MBNF Non-Debtor Entities and prevent the Movants from obtaining access to needed liquidity.  For instance, the Debtors refused to enter into an agreement tolling certain estate claims against the Movants that did not face imminent expiration of the applicable statutes of limitations—even though the Debtors did the same with other defendants, upon information and belief.  The Creditors' Committee has similarly tried to exert improper pressure on the Movants, in essence stonewalling the approval of a transaction beneficial to not only the Movants, but to the Debtors and the numerous insured former

doctors of Hahnemann University Hospital.  When the Movants filed their Financing Motion

seeking a straightforward determination of whether the automatic stay applies to their property,

which the Estate Parties have known for months is necessary to properly maintain and protect the

Movants' assets, the Estate Parties' response was to launch a discovery attack—and impose a due

date of fewer than 72 hours later.  As if that were not enough, the Estate Parties abused the judicial

process again by serving yet another round of unnecessary and overbroad discovery on several

*non-parties* the very next day, with an even tighter and impossible turnaround time of less than 48

hours.  These requests include:

| Title | Docket No. | Response Deadline / Time of Deposition or Testimony (Eastern Time) | Exhibit |
|---|---|---|---|
| **Document Request** | | | |
| *Debtors' and Committee's First Set of Requests for Production of Documents to the Broad Street Entities and PAHH* | 3025 | November 5, 2021 at 5:00 p.m. | Exhibit B |
| **Deposition Notices** | | | |
| *Debtors' and Committee's Notice of Deposition of Broad Street Healthcare Properties, LLC Pursuant to Rule 30(B)(6) of the Federal Rules of Civil Procedure* | 3026 | November 9, 2021 at 9:00 a.m. | Exhibit C |
| *Debtors' and Committee's Notice of Deposition of Broad Street Healthcare Properties II, LLC Pursuant to Rule 30(B)(6) of the Federal Rules of Civil Procedure* | 3027 | November 9, 2021 at 12:00 p.m. | Exhibit D |
| *Debtors' and Committee's Notice of Deposition of Broad Street Healthcare Properties III, LLC Pursuant to Rule 30(B)(6) of the Federal Rules of Civil Procedure* | 3028 | November 9, 2021 at 3:00 p.m. | Exhibit E |
| *Debtors' and Committee's Notice of Deposition of Philadelphia Academic Health Holdings, LLC Pursuant to Rule 30(B)(6) of the Federal Rules of Civil Procedure* | 3029 | November 10, 2021 at 9:00 a.m. | Exhibit F |
| *Notice of Deposition of Joel Freedman* | 3030 | November 11, 2021 at 9:00 a.m. | Exhibit G |
| **Non-Party Subpoenas** | | | |
| *The Debtors' and the Official Committee of Unsecured Creditors' Notice of Issuance of Subpoena of Front Street Healthcare Properties, LLC* | 3034 | November 10, 2021 at 9:00 a.m. | Exhibit H |
| *The Debtors' and the Official Committee of Unsecured Creditors' Notice of Issuance of* | 3035 | November 10, 2021 at 12:00 p.m. | Exhibit I |

| | | | |
|---|---|---|---|
| *Subpoena of Front Street Healthcare Properties II, LLC* | | | |
| *The Debtors' and the Official Committee of Unsecured Creditors' Notice of Issuance of Subpoena of Kyle Schmidt* | 3036 | November 10, 2021 at 9:00 a.m. | Exhibit J |
| *The Debtors' and the Official Committee of Unsecured Creditors' Notice of Issuance of Subpoena to Gordon Brothers Realty Services, LLC* | 3037 | November 11, 2021 at 9:00 a.m. | Exhibit K |
| *The Debtors' and the Official Committee of Unsecured Creditors' Notice of Issuance of Subpoena of William Brinkman* | 3038 | November 11, 2021 at 9:00 a.m. | Exhibit L |
| *The Debtors' and the Official Committee of Unsecured Creditors' Notice of Issuance of Subpoena of Paladin Healthcare Capital, LLC* | 3039 | November 11, 2021 at 12:00 p.m. | Exhibit M |

2.      The Movants have been producing responsive documents, as well as numerous unresponsive documents requested by Debtors, through this past weekend.  But make no mistake about what the Debtors are doing: improperly seeking leverage for their claims in their separate adversary proceeding and harassing the Movants and Movants' principals and professionals in an effort to gain advantage in the mediation and exploit their need for liquidity.

3.      For these reasons, the Deposition Notices and Non-Party Subpoenas should be quashed and a protective order issued to protect the Respondents from any remaining Document Request.  In light of the volumes of documents already produced by the Movants, which go beyond adequately addressing the Estate Parties' information requests ostensibly to oppose the Financing Motion, the Document Request should be tailored to the limited determination sought by the Financing Motion, namely, whether the real property to which the Movants hold title constitutes property of the Debtors' bankruptcy estates.

## **JURISDICTION AND VENUE**

4.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).

5.      Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

6.      Pursuant to Local Rule 9013-1(f), the Respondents consent to entry of a final order by this Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

7.      The Debtors and the Movants are distinct legal entities part of the same corporate family.  Movant PAHH is the holding company at the top of the corporate structure encompassing the Debtors, including Philadelphia Academic Health System, LLC, Center City Healthcare, LLC formerly d/b/a Hahnemann University Hospital (together with its affiliated practice groups, "**CCH**") and St. Christopher's Healthcare, LLC formerly d/b/a St. Christopher's Hospital for Children (together with its affiliated practice groups, "**St. Christopher's**).  Also under PAHH's ownership are the remaining Movants, the Broad Street Entities, which own a portion of the real property underlying or adjacent to the former Hahnemann University Hospital.

8.      On June 30, 2019 and July 1, 2019 (collectively, the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Chapter 11 cases have been jointly administered for procedural purposes only, and the Movants are not Debtors in these Chapter 11 cases.

9.      For approximately the last year, under the auspices of the Honorable Kevin Carey (ret.), the Movants, together with related entities and individuals (collectively with the Movants, the "**MBNF Non-Debtor Entities**"[3]), have been working toward a global settlement, including

---

[3]     The MBNF Non-Debtor Entities are the Movants, the Front Street Entities, Paladin, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin Healthcare Management, LLC, Paladin Capital and Globe Health Foundation, Inc., Joel Freedman, Stella Freedman, Svetlana Attestatova, and Kyle Schmidt

resolution of the Debtors' governance issues and the claims that the Debtors and the MBNF Non-Debtor Entities have against each other, as well as a variety of tax issues. On June 29, 2021, the Debtors filed a wide-ranging adversary proceeding against certain of the MBNF Non-Debtor Entities, which proceeding has been stayed and sealed and is subject to the ongoing mediation process. Over the course of the mediation, the MBNF Non-Debtor Entities stressed the importance of a swift resolution due to their dwindling and limited liquidity, and in the absence of such swift resolution, the need for a third-party financing to maintain the real properties owned by the Movants.

10.    PAHH's primary assets are its equity interests in the subsidiaries that own or owned real estate adjacent to or underlying the hospitals operated by the Debtors. As noted above, the Movant Broad Street Entities own the property underlying or adjacent to the now-closed Hahnemann University Hospital. Other subsidiaries of PAHH, the Front Street Entities, owned the real estate adjacent to or used by St. Christopher's. The Front Street Entities sold the real estate related to St. Christopher's around the time the Debtors sold such hospital's operating assets, and thus are not Movants. Because the Debtors did not vacate the real property related to Hahnemann University Hospital until March 8, 2020 (although the hospital's last patient left on or around September 6, 2019), the sale process for the Broad Street Entities was delayed. In light of the global COVID-19 pandemic, the Movants have not been able to sell the Hahnemann University Hospital-related property for an acceptable price. Meanwhile, the Movants' expenses over the past 18 months, including the carrying costs of the two buildings, have continued to mount. These carrying costs include millions of dollars of expenses not paid by the Debtors, which are detailed, among other things, in Proof of Claim No. 1050 filed by certain of the MBNF Non-Debtor Entities against the Debtors.

11.     To cover these expenses, and to preserve the value of the MBNF Assets,[4] the Movants sought financing options from third party lenders, including Gordon Brothers Realty Services, LLC ("**Gordon Brothers**").  On October 29, 2021, the Movants and Gordon Brothers executed a financing term sheet (the "**Term Sheet**") for a 15-month term loan in the amount of $17.5 million (the "**Term Loan**").  The consideration for the Term Loan includes first priority liens and/or mortgages on the MBNF Assets and a monthly interest payment, as well as related fees described in the Term Sheet.

12.     To facilitate this financing and to enable non-Debtors to meet their legal and fiduciary obligations, the Movants sought approval to encumber the MBNF Assets—property to which they alone have title.  The majority of the financing is slated for operating expenses necessary to comply with federal law and various reserves for pension, tax, utilities, property management, and other payments deemed essential by Gordon Brothers, with limited proceeds to cover legal and professional costs that will continue to increase as a result of the unresolved disputes among the parties.[5]  To that end, the Movants filed the Financing Motion on October 29, 2021, seeking the Court's determination that the automatic stay does not prevent the encumbrance of the MBNF Assets.  For the reasons set forth in the Financing Motion, the MBNF Assets do not belong to the Debtors, are not the subject of these bankruptcy proceedings, and therefore are not subject to the automatic stay.

13.     Despite the ongoing mediation, the Estate Parties did not attempt to seek informal discovery.  Rather, they issued the above-described cavalcade of deposition notices, requests for

---

[4]     The "**MBNF Assets**" include buildings and parcels located at 222-248 N. Broad Street, 221-223 N. 15th Street, 325 N. 15th Street, 300-304 N. Broad Street, 200-214 N. Broad Street, and 201-219 N. 15th Street.

[5]     Indeed, the Estate Parties' continual efforts to disrupt the Movants' financing opportunities has led to outrageous professional fees and expenses, which so far total no less than $18 million since the Petition Date.

productions, and subpoenas designed to deplete the Movants' limited resources, delay the Court's consideration of the Financing Motion, and scare the Movants' lender into walking away from the transaction.  This barrage of formal discovery in response to the Financing Motion is despite the Movants' responsiveness to information requests over the past two years and throughout the mediation process.

14.    On November 2, 2021, at approximately 8:00 p.m. (Eastern Time), the Estate Parties served on the Movants twenty-three requests for production of documents.  Exacerbating these unreasonable and voluminous requests, the Document Request establishes an unrealistically short deadline for the Respondents to produce these documents.  The Estate Parties demanded that the Respondents respond to the Production Requests by no later than November 5, 2021, at 5:00 p.m. (Eastern Time), less than 72 hours after the requests were served on the Respondents.  In addition to the Document Request, the Debtors served Deposition Notices on the Movants and one non-party Respondent, Mr. Freedman.

15.    Following this initial round of discovery requests against the Movants and Mr. Freedman, shortly after midnight on November 4, 2021, the Estate Parties served the Non-Party Subpoenas on Gordon Brothers, in its capacity as the lender under the proposed financing, certain of the Movants' professionals,[6] and certain entities affiliated with the Movants.[7]  The Non-Party Subpoenas also seek production of the same overbroad twenty-three categories of irrelevant documents as the Document Request sent to the Movants, with production of such materials demanded by November 5, 2021—one day after the Non-Party Subpoenas were issued.

---

[6]    These professionals include Kyle Schmidt, Managing Director of Paladin and Vice President, and William Brinkman, both of whom are third parties to the present proceeding.

[7]    These entities include the Front Street Entities and Paladin.

16.     These discovery requests are unnecessarily broad, largely irrelevant to the Financing Motion, overly burdensome to the Respondents, and intended to harass.  For example, the Document Request (attached hereto as <u>Exhibit B</u>) asks for, *inter alia*, the following:

- Document Request No. 4:  "All Documents and Communications relating to any obligation of any of the MBNF PropCos to the Pension Fund, including without limitation all Documents and Communications relating to any payment made by any of the MBNF PropCos to or for the benefit of the Pension Fund and any agreements between any of the MBNF PropCos and the Pension Fund, including without limitation the source of funding for such payments."

- Document Request No. 8:  "All Documents and Communications between You and Gordon Brothers regarding the Term Loan, the condition of the MBNF Assets, and all claims and potential claims asserted against such assets."

- Document Request No. 9:  "All Documents and Communications regarding any Movant's need for additional liquidity."

- Document Request No. 10:  "All Documents and Communications regarding the calculation of the amount of liquidity allegedly required by any of the Movants, including, but not limited to, with respect to the alleged Property Expenses and/or any other carrying costs for the MBNF Assets, including the Hahnemann Premises."

- Document Request No. 12: "All Documents and Communications relating to any transaction or ancillary documents related to the Term Loan."

- Document Request No. 13:  "All Documents and Communications between You and ***any title company or title agent*** related to the Term Loan." (emphasis added).

- Document Request No. 16:  "All Documents and Communications regarding the ***Professional Fees***." (emphasis added).

- Document Request No. 18:  "For each professional whose Professional Fees You seek to pay, all Documents and Communications regarding any allocation of such Professional Fees between the MBNF PropCos and any other person or entity."

- Document Request No. 19:  "All Documents and Communications relating to each of the MBNF PropCos' use of its assets subsequent to July 1, 2019."

- Document Request No. 20:  "All Documents and Communications relating to the use of assets owned by Front I, including without limitation the proceeds from disposition of such assets, subsequent to July 1, 2019."

- Document Request No. 22: "All Documents and Communications regarding the use of assets owned by Front II at any time subsequent to the Petition Date."

17.    As explained in more detail below, *none* of these requests are relevant to the relief sought in the Financing Motion, which is narrowly concerned with the issue of whether the MBNF Assets are subject to the automatic stay.  None of these requests pertains to the question of whether the property is in fact the property of the Debtors' estates.  Instead, as an example, in Document Request Nos. 20 and 22 reproduced above, the Estate Parties seek information about the uses of the sale proceeds of a completely separate set of real property formerly owned by the Front Street Entities, who are not the Movants.  There can be no other explanation for these requests other than that these discovery requests are a fishing expedition designed to net information for the Debtors' adversary proceeding against the MBNF Non-Debtor Entities, which is currently stayed and sealed—not for the Financing Motion.

18.    Per Local Rule 7026-1(c), copies of the Document Request, the Deposition Notices, and the Non-Party Subpoenas are attached hereto as <u>Exhibits B –M</u>.

19.    On November 5, 2021, counsel for the Respondents met and conferred with counsel for the Estate Parties regarding the Document Request, the Deposition Notices, and the Non-Party Subpoenas.  Despite the unreasonably short response deadline, the Movants produced to the Debtors the Term Sheet and the sources and uses of the Term Loan proceeds immediately after the meet-and-confer teleconference.  In keeping with the spirit of cooperation, the Movants then gathered and produced approximately 500 pages of additional documents requested on Friday and Saturday, including the documents related to the properties formerly owned by the Front Street Entities, which documents were produced for transparency but are not pertinent to the Financing Motion.  Such documents include:

- Documents relating to payments made on behalf of the Debtors by the MBNF Non-Debtor Entities for expenses incurred at the premises while occupied by the Debtors (such as repairs and maintenance, utility payments, tax payments, and others);[8]

- The sources of uses of the sale proceeds from the real property formerly owned by the Front Street Entities, setting forth, among other things, (i) payment of certain taxes in connection with the sale, (ii) property related expenses, (iii) professional fees paid to legal counsel, tax advisors, and valuation experts, and (iv) payments made by certain of the MBNF Non-Debtor Entities to the Pension Fund,[9] as set forth in the Financing Motion;[10]

- The run rates of the Broad Street Entities, including operating expenses (*i.e.*, building security, life and safety systems, cleaning, electrical, and plumbing), insurance, real estate taxes, and professional fees;

- Documents relating to obligation of certain of the MBNF Non-Debtor Entities to the Pension Fund;[11]

- The support for payments made to the Pension Fund by the MBNF Non-Debtor Entities;

- All existing mortgages on the MBNF Assets;

- All promissory notes secured by such mortgages; and

- All UCC filings related to such notes.

20.    Notwithstanding that meet-and-confer teleconference and various follow-up correspondence, the parties were unable to reach agreement on a more limited scope for the discovery sought by the Estate Parties.

---

[8]    *See* Document Request No. 2, Document Request [Exhibit B].

[9]    The "Pension Fund" refers to the Pension Fund for Hospital and Health Care Employees of Philadelphia and Vicinity.

[10]    The MBNF Non-Debtor Entities only produced this information in the interest of transparency, even though the document request clearly exceeds the scope of the relief sought in the Financing Motion because the uses of the sale proceeds are not at issue in the Financing Motion.

[11]    *See* Document Request No. 4, Document Request [Exhibit B].

21.    The Respondents therefore file this Motion to resolve the dispute regarding discovery in connection with the Financing Motion in an efficient manner so the parties can proceed to the Financing Motion itself.

## RELIEF REQUESTED

22.    By this Motion, the Respondents respectfully request issuance of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), (i) quashing the Deposition Notices and Non-Party Subpoenas and (ii) issuing a protective order against the Debtors' Production Requests.

## BASIS FOR RELIEF

23.    "[W]hen the burden of a discovery request is likely to outweigh the benefits, Federal Rule of Civil Procedure 26(b)(2)(C) vests the [Court] with the authority to limit a party's pursuit of otherwise discoverable information." *F.T.C. v. Dutchman Enterprises, LLC*, No. 2:09-cv-141 (FSH)(MAS), 2010 WL 3034521, at *2 (D.N.J. Aug. 2, 2010).   Under Rule 26 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 7026 and 9014 of the Federal Rules of Bankruptcy Procedure, parties may obtain discovery only that is (i) "relevant" to any party's claim or defense and (ii) "proportional" to the needs of the case considering, among other things, the "importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1); *see also* Del. Bankr. L. R. 7026-1(a).  A court must limit discovery if, among other things, "the proposed discovery is outside the scope permitted by Rule 26(b)(1)" or "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C).

24.    The determination of whether to quash discovery requests is a matter of judicial discretion, based on the facts and circumstances of the case.  *See, e.g.*, *City of Rockford v. Baumann*

12

*(In re Mallinckrodt plc)*, Civ. No. 20-1533-LPS, 2021 WL 2036673, at *5 (D. Del. May 21, 2021) (affirming order quashing subpoena: "The Quash Order rests on the Bankruptcy Court's review of the facts and its determination of matters such as relevance, undue burden, and duplication regarding the information sought in the amended subpoena—all factual matters that were within the discretion of the Bankruptcy Court to evaluate").  Specifically, Bankruptcy Rule 703(d)(3) provides that a court may order a deposition to be limited in scope in accordance with Rule 26(c).

25.     Similarly, this Court has the discretion to grant a request for a protective order.  *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995).  Rule 26(c), as made applicable to this contested matter (*i.e.*, the Financing Motion) by Bankruptcy Rules 9014(c) and 7026, provides:

> (1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A)  forbidding the disclosure or discovery; . . . [and]
> (D)  forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .

26.     The Discovery Requests are overbroad, largely irrelevant, and not proportional to the limited issues raised in the Financing Motion.  Discovery of material is permitted regarding matters that are "relevant" to a party's claim or defense, meaning the fact is of consequence in the action or the evidence makes a fact more or less probable.  *See* Fed. R. Bankr. P. 7026(b)(1); Fed. R. Evid. 401.  "[W]hen an objection has been raised regarding a discovery item's relevancy, 'the party seeking the discovery bears the burden of demonstrating the relevance of the sought information to the claims, defenses, or the subject matter of the litigation.'"  *Am. Media, Inc. v. Anderson Mgmt. Servs., Inc. (In re Anderson News, LLC)*, 615 B.R. 45, 50 (Bankr. D. Del. 2020)

(citation omitted); *see also Inventio AG v. ThyssenKrupp Elevator Am. Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009) (same).  The Estate Parties have not, and cannot, meet that burden.

27.     Moreover, the Court should quash the Non-Party Subpoenas because (i) they seek information that is not within the scope of the Financing Motion and (ii) the testimony sought will undoubtedly implicate privileged information.

**A.     The Document Request Seeks Irrelevant Information and Is Unduly Burdensome upon the Movants.**

28.     First, the Document Request seeks information and documents that are irrelevant to the determination of whether the relief sought by the Financing Motion should be granted. Under the Federal Rules, discovery may only be sought if it is "relevant" to any party's claim or defense.  Fed. R. Civ. P. 26(b)(1).

29.     The Document Request goes far beyond the scope of the Financing Motion.  It is well-settled that "good cause" exists for entry of a protective order under Rule 26(c) when a party seeks irrelevant discovery.  *See, e.g.*, *McCurdy v. Wedgewood Capital Mgmt. Co.*, 1998 WL 961897, *2 (E.D. Pa. Dec. 31, 1998) ("Irrelevancy satisfies the good case requirement."); *Hall v. Harleyville Ins. Co.*, 164 F.R.D. 172, 173 (E.D. Pa. 1995) (granting protective order with regard to irrelevant discovery); *Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994) (providing that "a showing of irrelevance of proposed discovery can satisfy the 'good cause' requirement of Rule 26(c)").

30.     The main issue in the Financing Motion is whether the real property the Movants seek to encumber is subject to the automatic stay.  Information relevant to this issue would include, for example, documents related to title of the properties.  Instead, the Estate Parties request information such as all documents and communications regarding professional fees paid with respect to the present matter, including "all engagement letters or other written agreements

between any of the MBNF PropCos and such professionals," and "all engagement letters or other written agreements between any affiliates of the MBNF PropCos (including without limitation Paladin Healthcare Capital, LLC, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Joel Freedman and Stella Freedman) and such professionals." Document Requests 16–17, Document Request (attached hereto as Exhibit B). The Document Request is irrelevant to the extent it seeks documents and information well beyond the scope of the claims or defenses at issue in the Financing Motion.

31. The many demands encompassed by the Document Request are also not proportional to the context of and issues involved in the Financing Motion. The Federal Rules require that discovery requests be "proportional" to the needs of the case considering, among other things, the "importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

32. The Movants have already made a reasonable and proportional document production to the Estate Parties, and have agreed to produce additional documents as quickly as possible. Courts can limit discovery "if the parties seek duplicative or cumulative information . . . or the burden outweighs the benefit." *United States v. Fed'n of Physicians & Dentists, Inc.*, 63 F. Supp. 2d 475, 478 (D. Del. 1999). Indeed, much of the Production Requests seek information that the Movants have already provided to the Debtors in the context of the mediation, and the Movants have agreed to re-produce, and have already re-produced, those documents outside the mediation privilege so that they could be used by the Debtors. Again, this includes documents used in the mediation and not relevant to the Financing Motion, including documents related to the real estate formerly owned by the Front Street Entities.

33. Finally, the many demands encompassed by the Document Request are unduly burdensome. Courts routinely grant protective orders to protect a party from "disclosure or discovery" or to limit discovery to "specified terms and conditions, including designation of time and place" in order "to protect a party or person from annoyance . . . oppression, or undue burden or expense." *Pansy v. Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). Each of the requests contained in the Document Request seeks "All Documents and Communications," which would require the creation of privilege logs—a burdensome and time-consuming process for the Movants that would require them to crawl through individual documents and emails rather than just produce them wholesale. This process would be especially onerous considering the breadth of the Document Request (which goes back over two years) and considering the Debtors' accelerated and unreasonable deadline. *See, e.g.*, Document Request No. 2, Document Request (attached hereto as Exhibit B) (seeking "All Documents and Communications relating to payments made on behalf of any Debtor by any of the MBNF PropCos for expenses incurred at the Hahnemann Premises" going back to "July 1, 2019" (emphasis added)).

34. The Debtors could have requested documents from the Respondents informally or simply requested to use the documents provided in the mediation process. Instead, they chose to pursue this overly expansive, irrelevant, and burdensome demand. To make matters worse, the Debtors provide the Respondents an unreasonably short runway to furnish the requested documents. The Document Request deadline—fewer than 72 hours after service was given—is unnecessarily short and thus increases the burden on the Movants. This tactic is designed to unduly burden and harass the Movants, sap their resources as they prepare for the hearing on the Financing Motion, exert undue influence on the mediation process, and disrupt the Movants' efforts to obtain financing.

16

35.    Regardless, the Movants endeavored to produce responsive—and additional requested—documents and filed the present motion for a protective order by such deadline. Even though the Document Request clearly exceeds the scope of the relief sought in the Financing Motion, in response to it, the Movants have provided documents relating to (i) payments made on behalf of the Debtors by the MBNF Non-Debtor Entities for expenses incurred at the premises once occupied by the Debtors; (ii) the uses of the sale proceeds from the real property formerly owned by the Front Street Entities (even though the uses of the sale proceeds are of a completely different property and are far afield of the Financing Motion), including payments made by certain of the MBNF Non-Debtor Entities to the Pension Fund, as set forth in the Financing Motion; (iii) support for the run rates of the Broad Street Entities; (iv) obligations of certain of the MBNF Non-Debtor Entities to the Pension Fund; and (v) all existing mortgages on the MBNF Assets, the notes secured by such mortgages, and related UCC filings. The Movants have also produced the Term Sheet, with details of the loan proceeds. Nevertheless, the Respondents submit that the remaining scope of the Document Request should be limited for the reasons stated above and below.

**B.    The Deposition Notices and Non-Party Subpoenas Are Irrelevant, Not Proportional, and Unduly Burdensome.**

36.    On November 2, 2021, the Estate Parties sent a total of five Deposition Notices to certain Respondents, targeting the Movants and Joel Freedman. The "Topics of Examination" chosen by the Estate Parties track the Document Request and suffer from the same defects discussed above. For example, in the Deposition Notice directed to Broad II, Topic #7 asks about "[e]ach of the MBNF PropCos' use of their assets subsequent to July 1, 2019," while Topic #13 is concerned with "[a]ll facts relating to the calculation of the amount of liquidity allegedly required by any of the Movants, including, but not limited to, with respect to the alleged Property Expenses

and/or any other carrying costs for the MBNF Assets[.]"  *See* Deposition Notice for Broad Street Healthcare Properties II, LLC (attached hereto as <u>Exhibit D</u>).  Topic #14, meanwhile, asks about the use of the Front II proceeds.  *Id*.  Each of these topics is irrelevant to the relief sought in the Financing Motion, which is whether the MBNF Assets are property of the Debtors' estates and by extension subject to the automatic stay.

37.    In addition, just after midnight on November 4, 2021, the Estate Parties served six Non-Party Subpoenas on Front Street I, Front Street II, Kyle Schmidt, William Brinkman, Paladin, and Gordon Brothers.  These Non-Party Subpoenas exemplify the Estate Parties' intent to harass and intimidate the Movants by targeting their affiliates and professionals and requesting information irrelevant to the Financing Motion.  In particular, the subpoena for the Gordon Brothers is a transparent attempt to make it more difficult for the Movants to obtain financing by scaring away the lender selected by the Movants following a lengthy and carefully conducted selection process and negotiation of terms.

38.    The intent of these requests is clearly to burden and harrass the Movants.  By the Document Request, the Estate Parties ask for the same twenty-three categories of information from four different entities.  Similarly, the Estate Parties request eleven separate depositions, ostensibly all in connection with the Financing Motion.  The scattershot nature of the Discovery Requests is not merely annoying and unduly burdensome on the Respondents' finite resources, however.  It is very apparent that they comprise a fishing expedition in support of the Debtors' adversary proceeding against the MBNF Non-Debtor Entities.  This is in violation of the current stay of such adversary proceeding, but more to the point, this bad faith activity is on its own grounds enough for this Court to deny the Discovery Requests.  It is well-established that this Court may properly deny a discovery request "when the purpose of a discovery request is to gather information for use

in proceedings other than the pending suit." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

352, n.17 (1978) (citation omitted); *see Econo-Car International, Inc. v. Antilles Car Rentals, Inc.*,

61 F.R.D. 8, 10 (D.V.I. 1973), *rev'd on other grounds*, 499 F.2d 1391 (3d Cir. 1974)) (finding

respondents' discovery request was outside the scope of discovery permitted under Rule 26(b)(1)

because respondents did not seek information bearing on any issues in the case); *Midland-Ross

Corp. v. United Steelworkers of Am.*, AFL-CIO, 83 F.R.D. 426, 427 (W.D. Pa. 1979) (holding that

a court "may deny discovery requests if the underlying purpose is delay or harassment, or if the

information is sought for use in a different proceeding or context").

39.     Indeed, virtually all of the topics of examination proposed in the Deposition Notices

are directed to the Movants' use of their own property, their operating and maintenance costs, and

the financing terms they negotiated with third parties and specifically Gordon Brothers.

Information about the Movants' use of their *own* property, and a justification of their specific

liquidity concerns, is far afield of the scope of the relief sought.  In addition to being beyond the

scope of the proposed relief in the Financing Motion, these inquiries are duplicative of the

information the Respondents already furnished to the Debtors through the mediation process and

in response to earlier requests for supporting documentation.

40.     The Non-Party Subpoenas and the Deposition Notices, particularly that of Joel

Freedman, intended not only to harass, but to burden the Movants at a critical time.  This factor

alone warrants quashing Deposition Notices and the Non-Party Subpoenas. *See Tri-Star Pictures,

Inc. v. Unger*, 171 F.R.D. 94, 102 (S.D.N.Y. 1997) ("When the discovery to be obtained is through

the deposition of a senior executive, a court must remain mindful that permitting unfettered

discovery of corporate executives would threaten disruption of their business and could serve as a

potent tool for harassment in litigation.") (internal quotation marks and citation omitted); *see, e.g.*,

*Wertheim Schroder & Co. Inc. v. Avon Prod., Inc.*, No. 91 CIV. 2287 (PKL), 1995 WL 6259, at

\*4 (S.D.N.Y. Jan. 9, 1995) (quashing deposition of two senior executives of defendant-corporation

where their testimony would be "duplicative" of information already provided through discovery);

*see also Donnelly v. Am. Express Bank, FSB*, No. 18-CV-1024-GPC-WVG, 2018 WL 4759206,

at \*6 (S.D. Cal. Oct. 2, 2018), *aff'd sub nom. In re Donnelly*, 773 F. App'x 963 (9th Cir. 2019)

(holding there was "good cause to forbid discovery under Rule 26(c)(1)" where "[t]he record

shows ample evidence that Debtor's counsel used the discovery process to harass and otherwise

burden AmEx, rather than to obtain information relevant to Debtor's claim"); *Hickman v. Taylor*,

329 U.S. 495, 507–08 (1947) ("[Discovery] limitations inevitably arise when it can be shown that

the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or

oppress the person subject to the inquiry.").

      **C.**    **The Non-Party Subpoenas Seek Information That Is Not Relevant to the Financing Motion and Are Improperly Directed Towards Privileged Communications.**

      41.    First, for the same reasons as with the Deposition Notices above, the Non-Party

Subpoenas primarily seek information that is not relevant to the relief sought in the Financing

Motion. "Although irrelevance is not among the litany of enumerated reasons for quashing a

subpoena found in Rule 45, courts have incorporated relevance as a factor when determining

motions to quash a subpoena." *United States v. Capone*, 2019 WL 108853, \*2 (M.D. Pa. January

4, 2019) (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)). The Third

Circuit Court of Appeals has also affirmed district court orders that quashed subpoenas due to the

responding party's failure to demonstrate the relevance of the desired information. *Id*. (citing

*Smith v. BIC Corp.*, 869 F.2d 194, 202 (3d Cir. 1989) and *Ekhato v. Rite Aid Corp.*, 529 F. App'x

152, 154 n. 3 (3d Cir. 2013)).

42.     The rider for each Non-Party Subpoena makes twenty-three document requests identical to the twenty-three requests contained in the Document Request, and the Non-Party Subpoenas are therefore overbroad and irrelevant for the same reasons.  *See*, *e.g.*, Subpoena of Kyle Schmidt (attached hereto as <u>Exhibit J</u>).  As explained above, the Financing Motion merely seeks confirmation that the real property the Movants seek to encumber is not subject to the automatic stay.  Information relevant to this issue would, for example, include documents related to title of the properties.  But again, the Debtors request all documents and communications regarding professional fees paid with respect to the present matter, including "all engagement letters or other written agreements between any of the MBNF PropCos and such professionals," and "all engagement letters or other written agreements between any affiliates of the MBNF PropCos (including without limitation Paladin Healthcare Capital, LLC, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Joel Freedman and Stella Freedman) and such professionals."  Document Requests 16-17, Subpoena of Kyle Schmidt (attached hereto as <u>Exhibit J</u>).  For the same reasons as with the Document Request and the Deposition Notices, the information sought through these Non-Party Subpoenas is simply not relevant to the relief sought in the Financing Motion.  Given that the stated scope of the subpoenaed testimony is not relevant to the Financing Motion, compelling the subpoenaed non-parties to testify will not aid the Court's determination regarding the Financing Motion.  Accordingly, the Court should quash the Non-Party Subpoenas for lack of relevance.

43.     Second, the Non-Party Subpoenas are certain to implicate privileged communications.  Fed. R. Civ. P. 45(d)(3) requires that a court quash a subpoena that "requires a disclosure of privileged or other protected matter…" *Id*.  The Non-Party Subpoenas are targeted towards an overly broad swath of documents and information that unavoidably sweeps in

privileged communications.  For instance, the Non-Party Subpoenas seek "All Documents and Communications regarding the Professional Fees."  *See*, *e.g.*, Document Requests Nos. 16-17, Subpoena of Kyle Schmidt (attached hereto as <u>Exhibit J</u>).  Beyond that, the Non-Party Subpoenas also seek all documents and communications "regarding any Movant's need for additional liquidity," as well as all documents and communications "relating to each of the MBNF PropCos' use of its assets subsequent to July 1, 2019."  Document Requests Nos. 9, 19, Subpoena of Kyle Schmidt (attached hereto as <u>Exhibit J</u>).

44.    The unnecessarily broad scope of these requests is substantially likely to sweep in privileged communication with counsel.  There is no doubt that Movants would consult heavily with their counsel on these very issues.  Thus, on their face, these requests would apply to counsels' communications with their clients regarding any Movant's need for liquidity or the MBNF PropCos' use of its assets.  The potential for disclosing privileged information in response to the Non-Party Subpoenas is exacerbated by the fact that the Non-Party Subpoenas allow these non-parties an impossible turnaround time of less than 48 hours in which to respond to an unnecessary and overbroad discovery.  Accordingly, the Court should quash the Non-Party Subpoenas.

*****

Altogether, the burden and expense of the Discovery Requests outweighs any benefit they even purport to have.  *See* Fed. R. Civ. P. 26(b)(1); *see also Inventio AG*, 662 F. Supp. 2d at 381 ("The probative value of the information requested should be balanced against the costs and burdens imposed upon the producing party.").  The Discovery Requests do not constitute a reasonable, proportional effort to identify relevant discovery pursuant to the Federal Rules or Local Rules.  *See* Fed. R. Civ. P. 26(b); Del. Bankr. L. R. 7026-1(a).  Taken together with the burdensome subpoenas to the Respondents' professionals and to Gordon Brothers, the clear purpose of these

demands is to harass the Movants and their professionals, to make it more difficult, if not impossible, for the Movants to obtain financing, and to strong-arm the MBNF Non-Debtor Entities into an undesirable settlement. The Respondents therefore respectfully request that the Court quash the Deposition Notices and the Non-Party Subpoenas and enter a protective order limiting the Document Request.

### COMPLIANCE WITH LOCAL RULE 7026-1(d)

45. The undersigned counsel certifies that the Respondents have made a reasonable effort to reach an agreement with counsel to the Debtors regarding the relief requested herein, but no agreement could be reached.

### NOTICE

46. Notice of this Motion has been provided to (a) the Office of the United States Trustee; (b) counsel for the Debtors; (c) counsel for the Creditors' Committee; (d) counsel to HSRE;[12] (e) counsel to Tenet Healthcare Corporation; (f) counsel to the Pension Fund; and (g) any other party entitled to receive notice pursuant to Bankruptcy Rule 2002. The Respondents submit that, in view of the facts and circumstances, that notice is sufficient and no other or further notice is necessary, except that the Debtors and the Creditors' Committee agreed to extend the Respondents' deadline to respond to the Document Request from November 5, 2021 at 5:00 p.m. (Eastern Time) to November 8, 2021 at 12:00 p.m. (Eastern Time) in exchange for the Respondents' agreement to extend the objection deadline of the Financing Motion from November 12, 2021 at 4:00 p.m. (Eastern Time) to November 14, 2021 at 4:00 p.m. (Eastern Time). In

---

[12] "**HSRE**" means, collectively, PAHH Bellet MOB, LLC; PAHH Broad Street MOB, LLC; PAHH Erie Street Garage, LLC; PAHH Feinstein MOB, LLC; PAHH New College MOB, LLC; PAHH Wood Street Garage, LLC; HSREP VI Holding, LLC; HSRE-PAHH IA, LLC; and HSRE-PAHH I, LLC.

keeping with the spirit of cooperation and for the sake of transparency, the Respondents produced approximately 427 pages of responsive documents prior to the original November 5 deadline..

## **CONCLUSION**

47.    For the reasons above, the Respondents respectfully request that the Court enter an order (a) quashing the Deposition Notices and the Non-Party Subpoenas and (ii) entering a protective order shielding the Respondents from additional production in response to the Document Request.

Dated:  November 8, 2021
        Wilmington, DE

/s/ Brendan J. Schlauch
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701
Email: collins@rlf.com
merchant@rlf.com
schlauch@rlf.com

- and -

Suzzanne Uhland (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Alexandra M. Zablocki (admitted *pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
E-mail: suzzanne.uhland@lw.com
        tj.li@lw.com
        alexandra.zablocki@lw.com

*Counsel for PAHH and the Broad Street Entities*