## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) Case No. 19-11466 (MFW) |
| *et al.*,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) ***Related to: D.I. 3055 & 3051*** |
| | ) |

### OBJECTION OF DEBTORS AND COMMITTEE TO RESPONDENTS' MOTION TO (I) QUASH THE DEBTORS' AND THE CREDITORS' COMMITTEE'S NOTICE OF RULE 26 AND 30(B)(6) DEPOSITION AND SUBPOENAS AND (II) FOR ENTRY OF A PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY

The above-referenced debtors and debtors-in-possession (collectively, the "**Debtors**") and

the Official Committee of Unsecured Creditors (the "**Committee**"), by and through their

undersigned attorneys, hereby object to *Respondents' Motion to (I) Quash the Debtors' and the*

*Creditors' Committee's Notice of Rule 26 and 30(b)(6) Deposition and Subpoenas and (II) for*

*Entry of a Protective Order Limiting Written Discovery* [D.I. 3055] (the "**Motion to Quash**") and

in opposition thereto respectfully represent as follows:

### PRELIMINARY STATEMENT

1.    The Financing Motion[2] seeks an order (i) determining that the automatic stay does

not apply to the MBNF Assets (as such term is defined in the Financing Motion), or (ii) in the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 216 N. Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

[2]    As used herein, the term "**Financing Motion**" refers to the *Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets* [D.I. 3002].

alternative, granting limited relief from the automatic stay stay to permit Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC (collectively, the "**Broad Street PropCos**") and their sole member Philadelphia Academic Health Holdings, LLC (with the Broad Street PropCos, the "**Financing Motion Movants**") to sell, transfer, or otherwise encumber the Broad Street PropCos' real estate, including granting Gordon Brothers Realty Services, LLC ("**Gordon Brothers**") a first priority lien in consideration for proposed financing of $17.5 million.

2.      In response to the relief requested, the Debtors and Committee sought certain discovery, which is necessary for the Debtors and Committee to adequately understand and reply to the factual contentions in the Financing Motion made by the Financing Motion Movants and the other Respondents[3], which the Debtors and Committee believe are inaccurate.

3.      The Debtors and Committee are entitled to discovery with respect to the Financing Motion and the factual disputes in connection therewith, which is a contested matter pursuant to Federal Rule of Bankruptcy Procedure 9014.  The only question is whether the requested discovery is reasonable and appropriate.  For the reasons set forth below, this is clearly the case.  The Motion to Quash accordingly should be denied.

## BACKGROUND

4.      On August 31, 2017, Tenet Business Services Corporation and certain of its affiliates, collectively as sellers, and certain entities controlled by Joel Freedman ("**Freedman**") and entities controlled by Harrison Street Real Estate LLC (the "**HSRE Entities**"), collectively as

---

[3]      The **Respondents** are the Financing Motion Movants and Joel Freedman, Kyle Schmidt, William Brinkman, Front Street Healthcare Properties, LLC ("**Front I**"), Front Street Healthcare Properties II, LLC ("**Front II**"), Paladin Healthcare Capital, LLC and Philadelphia Academic Health Holdings, LLC.

purchasers, entered into an asset sale agreement (as amended, the "**ASA**") for the sale of Hahnemann University Hospital ("**HUH**"), St. Christopher's Hospital for Children ("**STC**," and together with HUH, the "**Hospitals**"), and certain real property (collectively, the "**Transaction**"). In connection with the ASA, Freedman created (i) "opco" entities (currently the Debtors in these chapter 11 cases), which purchased the Hospitals and various related practice groups, and (ii) several "propco" entities, which took ownership of certain real estate, including the real estate on which the Hospitals were located (the "**Freedman Real Estate**").

5.      Certain other valuable real estate was acquired in the Transaction by HSRE-PAHH I, LLC, a joint venture (the "**Joint Venture**") owned by one of the HSRE Entities, as majority owner, and Philadelphia Academic Health Holding, LLC (a Freedman-owned/controlled entity that was formed at the time of the acquisition), as minority owner (the "**JV Real Estate**").

6.      As part of the Transaction, debtor St. Christopher's Healthcare, LLC was forced to enter into "Master Leases" for the JV Real Estate with subsidiaries of the Joint Venture, in which the rent payable by the Debtors funded, on a *de facto* basis, the debt service underlying the acquisition of the JV Real Estate and the Freedman Real Estate.  In addition to rent, the Debtors had to pay all taxes, insurance and other operating costs for the leased space.

7.      The Transaction closed on January 11, 2018.  The Debtors failed spectacularly thereafter and filed for bankruptcy on June 30, 2019 and July 1, 2019, less than eighteen months after the Transaction closed.  The Debtors' bankruptcy filings resulted in the closure of Hahnemann University Hospital (a long-established safety net hospital in Philadelphia), the loss of thousands of jobs, the displacement of physicians, nurses and other health professionals, significant disruption in the training of hundreds of medical residents and fellows, the sale of St.

Christopher's Hospital for Children and approximately $11 billion in asserted claims against the Debtors.

8.      On June 29, 2021, following an investigation conducted jointly by the Debtors and the Committee, the Debtors filed a detailed complaint (the "**Adversary Complaint**") against certain individuals and entities including the Freedman-controlled entities that own the Freedman Real Estate, including the Broad Street PropCos.[4]  The Adversary Complaint details why the Freedman Real Estate, or its value, should be available to satisfy the claims of the Debtors' creditors, pursuant to various legal theories which give rise to the Debtors' interests in the MBNF Assets.

9.      Since the Adversary Complaint was filed, the Debtors have agreed to keep it sealed and stayed while the Debtors, the Committee, Freedman and the other defendants in the Adversary Complaint, and the HSRE Entities, engage in mediation (the "**Mediation**"), with The Honorable Kevin J. Carey (ret.) serving as mediator.  With the agreement of the parties, Judge Carey has coordinated with The Honorable Joseph J. Farnan, Jr. (ret.), who is mediating certain related disputes between the MBNF Non-Debtor Entities and Tenet.[5]

---

[4]      For reasons that are unclear, but perhaps in an attempt to rehabilitate themselves in the eyes of the Court, the Respondents misrepresent the circumstances surrounding the Debtors' filing of the Adversary Complaint. Specifically, they refer to the Debtors' "refus[al] to enter into an agreement tolling certain estate claims against the Movants." *Motion to Quash*, at ¶ 1.  In fact, the MBNF Non-Debtor Entities first requested a tolling agreement on about June 27, 2021 – only a few days before the two-year anniversary of the Debtors' bankruptcy filing and the expiration of certain statutes of limitations.  The draft "Confidential Stay, Sealing and Tolling Agreement" proposed by the MBNF Non-Debtor Entities was a one-sided, self-serving document that went beyond mere issues of tolling and that would not have allowed the Debtors to commence litigation against certain MBNF Non-Debtor Entities, unless the Debtors' complaints were "in form and substance acceptable to the MBNF Non-Debtor Entities, subject to the input of [Judge Carey]."  Actions against Freedman and other individuals were prohibited for thirty (30) days after Freedman could, pursuant to a proposed second amendment to debtor PAHS's operating agreement, remove the Debtors' independent managers.  Of course the Debtors refused to sign this agreement.

[5]      The Respondents contend that the mediation among the Debtors, the Committee, the MBNF Non-Debtor Entities and other parties has been proceeding for "approximately one year since the entry of the Order Appointing Mediator in Connection with Discovery Disputes." *Motion to Quash*, at ¶ 1.  The relevance of this assertion is unclear, but it is misleading.  Judge Carey was appointed as mediator in connection with certain *discovery disputes* among the parties by Order entered December 1, 2020 [D.I. 1943].  The scope of

10.     Critically, each of the parties in the Mediation, as well as certain non-Mediation parties, asserts rights in or claims against the Freedman Real Estate owned by the Broad Street PropCos.  The goal of the Mediation is to reach a global resolution of all such claims, and any such resolution will depend significantly on the availability of the Freedman Real Estate owned by the Broad Street PropCos to address such asserted claims.  Similarly, absent settlement through mediation, the Debtors and the Committee assert that the Freedman Real Estate will be a critical source of recovery for the Debtors' creditors.  In all instances, the Freedman Real Estate is essential to righting the wrongs inflicted upon the Debtors and their creditors, for the reasons set forth in the Adversary Complaint.

## THE FINANCING MOTION

11.     Notwithstanding the claims against the Broad Street PropCos and the competing claims against the Broad Street PropCos' real estate, including claims by the Debtors' estates, on the evening of October 29, 2021, the Financing Motion Movants filed the Financing Motion.  They did this immediately after executing mortgages on the Broad Street PropCos's real estate for the benefit of Freedman's professionals and Freedman's company Paladin Healthcare Capital, LLC ("**Paladin**"), without Court approval, and with no advance notice to the Debtors or Committee.

12.     The Financing Motion is or will be opposed by every relevant party in the Mediation, including the Debtors, the Committee, HSRE and Tenet.

## THE DISCOVERY

13.     Given the estates' interests in the Broad Street PropCos' real estate pursuant to section 541 of the Bankruptcy Code, the importance of such real estate to creditors' recovery in

---

the mediation was not extended to the parties' *substantive claims* until February 22, 2021 [D.I. 2119], and HSRE was not authorized to participate in the mediation until the Court's Order of July 28, 2021 [D.I. 2648]. The first actual mediation session did not occur until August 9, 2021.  In reality, the parties have been substantively mediating for approximately three months.

these cases, and the paucity of information about the proposed financing in the Financing Motion, the Debtors and Committee promptly propounded discovery upon the Movants and various related individuals and parties.  Although the Movants have responded with what they describe as "500 pages" of documents, in fact the Movants have produced very little of the information requested and have provided literally no Communications.  Over 400 of the "500 pages of documents" provided are nothing more than publicly filed supporting detail for mortgage and UCC filings (such as detailed property descriptions).

14.    ***Document Production***.  Set forth below is a chart summarizing the documents the Debtors and Committee have requested from the Respondents, and the current status of production.

| *Document Request* | *Status of Production* |
|---|---|
| 1.  All Documents and Communications relating to Your allegation at paragraph 5 of the Financing Motion that the Debtors failed to comply with their post-petition lease obligations for the Hahnemann Premises | Limited information provided for certain alleged unpaid expenses. |
| 2.  All Documents and Communications relating to payments made on behalf of any Debtor by any of the MBNF PropCos for expenses incurred at the Hahnemann Premises between July 1, 2019 and February 29, 2020, including without limitation the source of funding for such payments | Minimal information provided. |
| 3.  All Documents and Communications relating to Property Expenses paid or incurred by any of the MBNF PropCos after the Debtors' rejection of their lease for the Hahnemann Premises, including without limitation the source of funding for such payments | Summary schedule provided with no with no backup. |
| 4.  All Documents and Communications relating to any obligation of any of the MBNF PropCos to the Pension Fund, including without limitation all Documents and Communications relating to any payment made by any of the MBNF PropCos to or for the benefit of the Pension Fund and any agreements between any of the MBNF PropCos and the Pension Fund, including without limitation the source of funding for such payments | Some information provided but material information omitted. |
| 5.  All Documents and Communications relating to financing the MBNF PropCos have obtained from related parties, as referenced in paragraph 9 of the Financing Motion, including without limitation any liens granted to secure such financing | No information provided. |

| | |
|---|---|
| 6. All Documents and Communications relating to efforts undertaken by or on behalf of the MBNF PropCos to discuss, request, apply for and/or obtain financing from any lender, including the efforts referenced in paragraph 9 of the Financing Motion | No information provided. |
| 7. All Documents and Communications regarding the Term Loan including without limitation all drafts and versions of the "financing term sheet" referenced in paragraph 9 of the Financing Motion and any payment or commitments related thereto (as referenced in footnote 7 of the Financing Motion). | Only Final Term Sheet provided. No other information provided. |
| 8. All Documents and Communications between You and Gordon Brothers regarding the Term Loan, the condition of the MBNF Assets, and all claims and potential claims asserted against such assets. | No information provided other than the Final Term Sheet. |
| 9. All Documents and Communications regarding any Movant's need for additional liquidity. | No information provided. |
| 10. All Documents and Communications regarding the calculation of the amount of liquidity allegedly required by any of the Movants, including, but not limited to, with respect to the alleged Property Expenses and/or any other carrying costs for the MBNF Assets, including the Hahnemann Premises | No information provided. |
| 11. All Documents and Communications relating to any fee or other amount deposited, paid, or caused to be deposited or paid, to Gordon Brothers in connection with the Term Loan, including without limitation the source of funding for such payments. | No information provided. |
| 12. All Documents and Communications relating to any transaction or ancillary documents related to the Term Loan. | No information provided. |
| 13. All Documents and Communications between You and any title company or title agent related to the Term Loan. | No information provided. |
| 14. All Documents and Communications relating to any existing mortgages or liens on any of the MBNF Assets. | Only publicly filed documents provided. No other documents nor any communications provided. |
| 15. All Documents and Communications regarding Your intended use of the proceeds of the Term Loan including without limitation funding the "carrying costs of the MBNF Assets" referenced in paragraph 9 of the Financing Motion. | Very little responsive information provided. |
| 16. All Documents and Communications regarding the Professional Fees. | No information provided. |
| 17. For each professional whose Professional Fees You seek to pay (i) all engagement letters or other written agreements between any of the MBNF PropCos and such professional and (ii) all engagement letters or other written agreements between any affiliates of the MBNF PropCos (including without limitation Paladin Healthcare Capital, LLC, MBNF Investments, LLC, | No information provided. |

| American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Joel Freedman and Stella Freedman) and such professional. | |
| --- | --- |
| 18. For each professional whose Professional Fees You seek to pay, all Documents and Communications regarding any allocation of such Professional Fees between the MBNF PropCos and any other person or entity | No information provided. |
| 19. All Documents and Communications relating to each of the MBNF PropCos' use of its assets subsequent to July 1, 2019. | Limited information provided with no supporting detail. |
| 20. All Documents and Communications relating to the use of assets owned by Front I, including without limitation the proceeds from disposition of such assets, subsequent to July 1, 2019. | Limited information provided with no supporting detail. |
| 21. All Documents and Communications relating to any sale or transfer, or any attempted sale or transfer, of any of the MBNF Assets.. | No information provided. |
| 22. All Documents and Communications regarding the use of assets owned by Front II at any time subsequent to the Petition Date. | Limited information provided with no supporting detail. |
| 23. All Documents and Communications relating to the condition and maintenance of the Hahnemann Premises from June 29, 2019 to the present. | Limited information provided with no supporting detail. |

15.     Contrary to what the Financing Motion Movants allege in the Respondents' Motion to Quash, the Debtors and Committee are not using the discovery process to seek leverage for the Debtors' claims in the Adversary Proceeding.  First, the discovery requests are in response to the Financing Motion; neither the Debtors nor Committee initiated this sequence of events.  Second, the discovery requests: (i) are in response to direct factual contentions made in the Financing Motion; and (ii) are necessary for the Debtors and Committee to respond to the Financing Motion Movants' request for "relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code to permit the Broad Street Entities and PAHH to sell, transfer, or otherwise encumber the MBNF Assets, including any actions in connection with imposing first priority liens and/or mortgages on the MBNF Assets as consideration for financing, such as the Term Loan[.]" Financing Motion, ¶ 13.

16.    Without answers to the following questions, the Debtors and Committee cannot adequately reply to the Financing Motion:

      a.    what specific uses are intended for the proposed loan's proceeds?

      b.    what are all the terms of the proposed loan?

      c.    to what extent are the contemplated uses of the loan fraudulent conveyances – that is, for Freedman's personal benefit or for the benefit of other entities, rather than for the maintenance of the real estate owned by the Broad Street Entities?

      d.    why is it necessary or beneficial, and to whom, to maintain the real estate for 15 months rather than for a shorter period of time?

      e.    given that certain of the intended uses (*e.g.*, payment of amounts due to the Pension Fund) appear to be joint and several obligations of the Movants and other Freedman-owned entities, such as Front I and Front II, why cannot such other entities – which sold real estate during the course of the Debtors' cases for over $50 million – pay for some or all of such shared expenses?

      f.    inasmuch as the Financing Motion seeks approval for the sale of the real estate, what if any sale discussions have occurred?

17.    An understanding of these issues is required for the Debtors and Committee to determine whether and to what extent relief from the automatic stay is appropriate, as specifically requested in the Financing Motion.

18.    The Respondents' limited responses to the Discovery already have provided relevant, albeit some of it troubling, information which was conveniently not disclosed in the Financing Motion.  Absent the Discovery, would the Debtors and Committee have obtained the Term Sheet?  Would they have learned that immediately before or after the filing of the Financing Motion, Freedman granted mortgages (*in the amount of approximately $5.7 million*) on the Broad Street PropCos' properties to Freedman's professionals, and to Paladin – and without the Court approval that the Financing Motion seeks?

19.    ***Depositions***.  As part of their Discovery, the Debtors and Committee sought 30(b)(6) depositions of each of the Financing Motion Movants, Front I, Front II, Freedman's

company Paladin, and depositions of Kyle Schmidt (Freedman's in-house financial consultant) and William Brinkman (the principal of Freedman's outside financial advisor, Jigsaw Advisors, LLC). In so doing, the Debtors and Committee anticipated that most of these depositions would be consolidated into one omnibus deposition of Freedman, who as noted is the principal of each of the Financing Motion Movants, Front I, Front II and Paladin. The Respondents initially refused to produce any witness for deposition; subsequently, they agreed to produce only those witnesses, if any, that they expected to testify on their behalf at the hearing on the Financing Motion.

20. The positions of the Respondents regarding the Debtors' and Committee's discovery requests are inconsistent with basic legal principles. Discovery – including production of communications and production of witnesses for depositions under oath – is the best and only way for the Debtors and Committee to obtain other potentially highly relevant information related to the relief sought and necessary for the Debtors and Committee to adequately respond to the Financing Motion Movants' requested relief. *See generally Green v. Cosby*, 314 F.R.D. at 171 (denying motion to quash and finding third-party materials relevant or leading to relevant materials to dispute); *SWIMC, Inc. v. Hy-Tech Thermal Solutions, LLC*, No. CIV. 08-084-SLR, 2009 WL 1795177, at *1 (D. Del. June 24, 2009) (granting motion to compel response to interrogatories and document requests from litigant party); *Neuberger & Scott v. Shapiro*, 196 F.R.D. at 287 (compelling deposition of third-party so that relevant information could be obtained); *Marshall v. Elec. Hose & Rubber Co.*, 68 F.R.D. 287, 295 (D. Del. 1975) (compelling deposition of corporate party's manager where it was merely "conceivable that it [the deposition] might have a bearing upon the subject matter of this action").

21.     To be clear, after review of the relevant requested discovery, the Debtors and Committee may not oppose limited and reasonably priced[6] borrowing against the Real Estate to pay for its reasonable costs of maintenance during a reasonable period of time pending sale.  No such determination can be made without receiving documents responsive to the Debtors' and Committee's discovery requests.  Unfortunately, the relief sought by the Financing Motion appears to go well beyond this limited purpose; it includes the payment of millions of dollars of loan proceeds for either Freedman's personal benefit or for the benefit of affiliates to the Broad Street Entities, as well as other amounts for "working capital" with no clear purpose, and requires significant financing costs.  Given the history of these cases, the facts as described in the Adversary Complaint, and the questionable use of substantial sale proceeds by Front I and Front II which may give rise to fraudulent conveyance claims, the Debtors and Committee have good reason for concern regarding the requested dissipation of assets which could be available for the benefit of the estates herein.  There is a reason that all major constituencies in these cases – the Debtors, the Committee and upon information and belief the HSRE Entities and Tenet Business Services Corporation – oppose the Financing Motion.

## TIMING

22.     The Respondents complain in their Motion to Quash about the time frames requested by the Debtors and Committee for their Discovery.  Yet the timing of the Discovery is driven entirely by the Respondents.

23.     The original objection deadline (the "**Objection Deadline**") for the Financing Motion was November 12, 2021 and its hearing date (the "**Hearing Date**") was November 19, 2021.  Given this timing, the Debtors and Committee promptly propounded their Discovery.

---

[6]     Among other things, the Debtors and Committee do not believe the proposed Gordon Brothers financing is reasonably priced.

Counsel for the Debtors then immediately contacted counsel to the Respondents to request a "meet and confer."  During a conference call held on November 5, 2021, the Debtors explained that they needed their Discovery completed prior to the Objection Deadline.  They offered to extend the Respondents' deadlines to respond to the Discovery if the Respondents would agree to a brief continuance of the Hearing Date and the Objection Deadline.  Although the Respondents initially agreed to a short extension of the Objection Deadline, from November 12th to November 14th (in exchange for an agreed response-date/time for the Discovery of 12:00 noon on November 8, 2021), they did not at that time agree to adjourn the Hearing Date; instead, they produced a few documents and filed the Motion to Quash.  Approximately one week later the parties executed a *Stipulation Regarding Comfort / Lift Stay Motion and Discovery Motions* (the "**Discovery Stipulation**"), which was submitted to the Court by Certification of Counsel filed November 16, 2021 [D.I. 3114].[7]  Pursuant to the Discovery Stipulation, and subject to Court approval, the Objection Deadline for the Financing Motion will be November 24, 2021 and the Hearing Date will be December 1, 2021.

24.    Under the terms of the Discovery Stipulation, all parties have agreed to use good faith efforts to mediate the discovery disputes prior to the November 19, 2021 hearing on the Motion to Quash and the Financing Motion Movants agreed to produce additional documents pursuant to the terms of the Discovery Stipulation.  Further, the Financing Motion Movants have agreed to make available for deposition all person(s) who will serve as the MBNF Parties' witness(es) at the hearing on the Financing Motion.  In addition, all parties have agreed to work in good faith regarding the scheduling of additional depositions, subject to a reservation of rights.

---

[7]    Under the terms of the Discovery Stipulation, the Debtors and Committee agreed to withdraw the discovery requests they had made upon Gordon Brothers.

25.     Despite the extensions of time contained in the Discovery Stipulation, as of the date hereof, the Respondents have produced no additional documents.  They also have not agreed to produce any witness for deposition other than those to be called at the hearing.

## CONCLUSION

26.     One final point warrants mention.  Although the Respondents boast, in their Motion to Quash, about their production of documents to the Debtors and Committee in connection with the Mediation, in fact Freedman's business dealings relevant to the Debtors have been marked by a seemingly obsessive insistence on secrecy[8].  He has repeatedly, and routinely, required broad confidentiality provisions to be included in agreements that have no apparent sensitivity, and has outright refused to provide reasonably detailed explanations for seemingly basic questions.  For example, and among (many) other things, what exactly did Front I and Front II do with the sale proceeds from the St. Christopher's Hospital for Children real estate?  Whose legal fees do the Respondents intend to pay with the proceeds of the proposed Gordon Brothers loan?  This secrecy is unwarranted and especially concerning in light of the Debtors' asserted interests in such property as set forth in the Adversary Complaint.

27.     For the foregoing reasons, the Motion to Quash is without merit, and should be denied.  Each of the Respondents should be compelled to respond to the Debtors' and Committee's Discovery in sufficient time so as to allow the Debtors and Committee to prepare their objection to the Financing Motion, file an objection to the Financing Motion and otherwise prepare for a contested hearing.

*[Remainder of Page Intentionally Left Blank.]*

---

[8]     See, e.g., note 5, *supra* (regarding the proposed "*Confidential* Stay, Sealing and Tolling Agreement" sent to the Debtors on June 27, 2021 (emphasis added).

**WHEREFORE**, the Debtors and Committee respectfully request the Court to (i) deny the

Motion to Quash and (ii) grant such other and related relief as the Court deems necessary, just and

appropriate.

Dated: November 16, 2021

| **SAUL EWING ARNSTEIN & LEHR LLP** | **FOX ROTHSCHILD LLP** |
|---|---|
| /s/ *Mark Minuti* | /s/ *Seth A. Niederman* |
| Mark Minuti (DE Bar No. 2659) | Seth A. Niederman (DE Bar No. 4588) |
| Monique B. DiSabatino (DE Bar No. 6027) | FOX ROTHSCHILD LLP |
| 1201 N. Market Street, Suite 2300 | 919 North Market Street, Suite 300 |
| P.O. Box 1266 | Wilmington, DE  19899-2323 |
| Wilmington, DE 19899 | Telephone:  (302) 654-7444 |
| Telephone: (302) 421-6800 | Facsimile:  (302) 656-8920 |
| Fax: (302) 421-5873 | E-mail: sniederman@foxrothschild.com |
| mark.minuti@saul.com | |
| monique.disabatino@saul.com | - and - |
| | |
| - and – | Andrew H. Sherman (admitted pro hac vice) |
| | Boris I. Mankovetskiy (admitted pro hac vice) |
| Jeffrey C. Hampton (*admitted pro hac vice*) | One Riverfront Plaza |
| Adam H. Isenberg (*admitted pro hac vice*) | Newark, NJ 07102 |
| Centre Square West | Telephone:  973-643-7000 |
| 1500 Market Street, 38th Floor | Facsimile:  973-643-6500 |
| Philadelphia, PA 19102 | asherman@sillscummis.com |
| Telephone: (215) 972-7777 | bmankovetskiy@sillscummis.com |
| Fax: (215) 972-7725 | |
| jeffrey.hampton@saul.com | *Counsel for the Official Committee* |
| adam.isenberg@saul.com | *of Unsecured Creditors* |
| | |
| *Counsel for the Debtors and Debtors in* | |
| *Possession* | |