## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                                    :
                                                          :   Chapter 11
                                                          :
                                                          :   Case No. 19-11466 (MFW)
CENTER CITY HEALTHCARE, LLC D/B/A.                        :
HAHNEMANN UNIVERSITY HOSPITAL, et.                        :   (Jointly Administered)
al.,1                                                     :
                                                          :   Re: Docket No. 3053
                     Debtors.                             :
                                                          :
-------------------------------------------------------- x
```

### RESPONDENTS' OBJECTION TO
### <u>DEBTORS' AND COMMITTEE'S MOTION TO COMPEL DISCOVERY</u>

The Respondents[2] hereby submit this objection (the "**<u>Objection</u>**") to the *Debtors' and Committee's Expedited Motion to (A) Compel Discovery on Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets and (B) to Continue Hearing* [Docket No. 3053]

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]     "**<u>Respondents</u>**" are the parties who received the Discovery Requests (as defined below in this footnote): William Brinkman, Joel Freedman, Kyle Schmidt, Broad Street Healthcare Properties, LLC, ("**<u>Broad Street I</u>**"), Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC ("**<u>Broad Street III</u>**," and collectively, the "**<u>Broad Street Entities</u>**"), Front Street Healthcare Properties, LLC ("**<u>Front Street I</u>**"), Front Street Healthcare Properties II, LLC ("**<u>Front Street II</u>**," and collectively, the "**<u>Front Street Entities</u>**"), Paladin Healthcare Capital, LLC ("**<u>Paladin</u>**"), and Philadelphia Academic Health Holdings, LLC ("**<u>PAHH</u>**").  The Broad Street Entities and PAHH received the *Debtors' and the Committee's First Set of Requests for Production of Documents to the Broad Street Entities and PAHH* [Docket No. 3025] (the "**<u>Document Request</u>**"); Mr. Freedman, the Broad Street Entities, and PAHH received deposition notices [Docket Nos. 3026-30] (the "**<u>Deposition Notices</u>**"); and Mr. Brinkman, Mr. Schmidt, the Front Street Entities, and Paladin received subpoenas [Docket Nos. 3034-39] (the "**<u>Non-Party Subpoenas</u>**" and, together with the Document Request and the Deposition Notices, the "**<u>Discovery Requests</u>**").

(the "**Motion to Compel**") filed by the Debtors and the Official Committee of Unsecured Creditors (the "**Committee**" and, together with the Debtors, the "**Estate Parties**").

In support of this Objection, the Respondents respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      There should be nothing as simple and straightforward as the Comfort Motion.[3] Simply put, PAHH and the Broad Street Entities (together, the "**Movants**") are not seeking Court approval to encumber the MBNF Assets, but rather a comfort order to provide assurance to a third-party financing source so that the MBNF Assets can be preserved for the benefit of their stakeholders—the City of Philadelphia, the Pension Fund for Hospital and Health Care Employees of Philadelphia and Vicinity (the "**Pension Fund**"), and whoever else might ultimately be found to have an interest (including the Debtors' estates).  The standards for the Comfort Motion are narrow—essentially, (i) whether there is such great prejudice to the Debtors that it outweighs the prejudice to the Movants if the requested order is not granted, and (ii) whether the likelihood is that the Movants will prevail on the merits of the Comfort Motion.  Given that the Movants own the MBNF Assets outright, there should be no dispute that the Movants will prevail on the merits and will be irreparably prejudiced if they are prevented even from giving assurance to a third-party financing source that the MBNF Assets actually are available for stakeholders.  The Comfort Motion is that simple.

2.      And yet, the Estate Parties have demanded an extraordinary breadth of discovery spanning well beyond the issues in the simple Comfort Motion.  Why?  Because the Estate Parties are intent upon harassing the Movants, delaying the Comfort Motion, scuttling a much-needed

---

[3]    "**Comfort Motion**" means the *Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets* [Docket No. 3002].

US-DOCS\127852860.6RLF1 26361718v.2

financing transaction, and depriving the Movants of the opportunity to conduct a fulsome marketing process to maximize the sale price before selling the MBNF Assets with the assurance that best efforts have been made—and the Estate Parties are perfectly willing to exert improper leverage over the Movants in order to do so.   By preventing third-party financing or an advantageous sale of the MBNF Assets, the Estate Parties will deprive the Movants of the funding they so desperately need to pay for essential operating expenses and—more pertinently for the Estate Parties' purposes—various third-party advisor fees related to these proceedings, which have not been paid for two years.  The Debtors' informal financing proposal, which they tout as an alternative to the third-party financing contemplated in the Comfort Motion, also illustrates this strategy.  Inadequate in both substance and format (consisting solely of bullet points in an email), the Debtors' financing proposal fails to provide for sufficient working capital, repayment of outstanding professional fees, or payment obligations to the Pension Fund.  *See* Exhibit B hereto (email dated November 17, 2021 containing Debtors' financing proposal).  By preventing the Movants from using their own assets to ease their liquidity issues and effectively blocking their payment of their professionals, the Estate Parties are endeavoring to force the Movants to the settlement table, where the Estate Parties can exert additional unreasonable financial pressure to gain further leverage over the Movants and drive a lopsided settlement in their absurd adversary proceeding.

3.      This is why the Estate Parties have served discovery—which of course should be limited to the narrow issues relevant to the Comfort Motion—that is so ridiculously onerous as to harass and distract the Movants from what is truly important in these proceedings.  The Discovery Requests must be viewed through this lens—*i.e.*, they are intended to harass and gain leverage over Movants (forcing Movants to run out of money and into a settlement on unreasonable terms).

Nevertheless, despite the fact that virtually all of the Estate Parties' requests are utter nonsense, the Movants have produced hundreds of pages of documents beyond the thousands of pages already produced as part of the parties' multi-year mediation process and have offered to produce more documents and additional information under oath, all to obviate the need to bother the Court with a discovery motion like this. We wish we could report that the Estate Parties have participated with us in such an efficient process, but they have not. The reason is obvious: their aims are to harass Movants, delay the Comfort Motion, and extract an unreasonable settlement—all of which are antithetical to a consensual resolution. While we understand the unreasonable tactics employed by the Estate Parties, these tactics are not supported by the law or by the context of this case. Therefore, the Motion to Compel patently unreasonable discovery should be denied, and the Respondents should be required to produce only those documents tailored to the Comfort Motion.

4.      Notwithstanding the Estate Parties' tactics, the Movants have responded to the Discovery Requests, in spite of their irrelevance and obvious intent to harass, with a host of substantive productions and under-oath responses. For example, the Respondents made an initial round of document production prior to the original deadline set forth in the Document Request—merely three days after it was received—and an additional production the day after. The produced documents totaled approximately 500 pages and are more than sufficient in light of the narrow relief sought in the Comfort Motion. These documents include:

- Documents relating to payments made on behalf of the Debtors by the MBNF Non-Debtor Entities for expenses incurred at the premises while occupied by the Debtors (such as repairs and maintenance, utility payments, tax payments, and others);

- The sources of uses of the sale proceeds from the real property formerly owned by the Front Street Entities, setting forth, among other things, (i) payment of certain taxes in connection with the sale, (ii) property related expenses, (iii) professional fees paid to legal counsel, tax advisors, and valuation experts,

and (iv) payments made by certain of the MBNF Non-Debtor Entities to the Pension Fund, as set forth in the Comfort Motion;

- The run rates of the Broad Street Entities, including operating expenses (i.e., building security, life and safety systems, cleaning, electrical, and plumbing), insurance, real estate taxes, and professional fees;

- Documents relating to obligation of certain of the MBNF Non-Debtor Entities to the Pension Fund;

- The support for payments made to the Pension Fund by the MBNF Non-Debtor Entities;

- All existing mortgages on the MBNF Assets;

- All promissory notes secured by such mortgages; and

- All UCC filings related to such notes.

5.      In addition, as set forth in the Motion to Quash,[4] the MBNF Non-Debtor Entities, including the Movants, have produced documents in response to the joint investigation of the Estate Parties, in support of the mediation briefing, and in the course of mediation after receiving supplemental information requests from the Estate Parties over the course of the last two years. As discussed below, the Movants have also continued to provide documents and information requested by the Estate Parties—despite the irrelevance of the Discovery Requests. Nonetheless, each time a dispute arises, the Estate Parties always seem to resort to discovery demands and other litigation tactics to exert pressure on the MBNF Non-Debtor Entities, such as the Motion to Shorten,[5] which the Court denied.

6.      Notwithstanding the Estate Parties' nonconsensual approach, the Movants have continued to work with the Estate Parties to resolve the discovery issues. As the Court is aware,

---

[4]   "**Motion to Quash**" means the *Respondents' Motion to (I) Quash the Debtors' and the Creditors' Committee's Notice of Rule 26 and 30(b)(6) Deposition and Subpoenas and (II) for Entry of a Protective Order Limiting Written Discovery* [Docket No. 3055].

[5]   "**Motion to Shorten**" means the *Motion for Expedited Consideration of Debtors' and Committee's Expedited Motion to (A) Compel Discovery on Motion of the Broad Street Entities and PAHH for Entry of an Order (I)*

the Movants, the Estate Parties, HSRE, and Tenet entered into the *Stipulation Regarding Comfort / Lift Stay Motion and Discovery Motions* [Docket No. 3116-1]. There, the Movants agreed to, among other things, adjourn the hearing on the Comfort Motion from November 19 to December 1, 2021 and the objection deadline from November 12 to November 24, 2021, with the goal of enabling the parties to resolve the Comfort Motion on a consensual basis.

7.     The Movants have gone far beyond their obligation to provide relevant information to the Estate Parties. In truth, anything beyond that is intended solely to harass, and the Motion to Compel accordingly should be denied.

## **RELEVANT BACKGROUND**

8.     As set forth in the Motion to Quash, the Movants have produced sufficient documents relevant to, and beyond the scope of, the Comfort Motion. To be clear, the Movants are not seeking Court approval to encumber the MBNF Assets, but rather a comfort order to provide assurance to a third-party financing source so that the MBNF Assets can be preserved for the benefit of all of their stakeholders—whoever they turn out to be—and for the sake of public safety and the community immediately surrounding the MBNF Assets. The issues relevant to the relief sought in the Comfort Motion are whether the MBNF Assets constitute the property of the Debtors' bankruptcy estates or, in the alternative, the possibility of prejudice to the Debtors if the stay is lifted, the hardship to the Movants by maintaining the stay, and the Movants' likelihood of success on the merits of their position that the MBNF Assets are not the property of the Debtors' bankruptcy estates.

---

*Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets and (B) To Continue Hearing* [Docket No. 3054].

9.      In their objection to the Motion to Quash,[6] the Estate Parties took the position that, beyond the documents already produced, six questions needed to be answered in connection with the Comfort Motion.  *See* Objection to Motion to Quash, ¶ 16.   While the Movants dispute the relevance of these inquiries, the Movants have nonetheless responded to each such inquiry in interrogatory form and provided the same to the Estate Parties.  *See* Ex. A to November 18, 2021 Letter and (attached hereto as <u>Exhibit A</u>).  During the November 17th meet-and-confer, the Estate Parties requested yet additional information <u>beyond</u> these six categories.   Again, the Movants agreed to provide additional information despite its lack of relevance.  To that end, the Movants have provided the following additional information:

- the detail of the amounts paid for pre-rejection property-related liabilities;

- monthly reports from the Movants' property manager for a period of approximately 15 months;

- the amount and other details regarding related party financing referenced in the Comfort Motion;

- the total amounts deposited with Gordon Brothers Realty Services, LLC or its designated affiliates; and

- a summary of topics regarding which the Movants' designated deponent, William Brinkman, is qualified to testify.

*See* <u>Exhibit A</u>.

10.      Despite the previous document productions, the additional production to come, the Movants' responses to the Estate Parties' questions in an interrogatory form, and the Movants'

---

[6]    On November 16, 2021, the Estate Parties filed the *Objection of Debtors and Committee to Respondents' Motion to (I) Quash the Debtors' and the Creditors' Committee's Notice of Rule 26 and 30(b)(6) Deposition and Subpoenas and (II) for Entry of a Protective Order Limiting Written Discovery* [Docket No. 3115] (the "**<u>Objection to Motion to Quash</u>**").

willingness to offer as deponent William Brinkman,[7] the Estate Parties continue to insist on deposing Mr. Freedman and continue to demand additional document production well beyond the scope of the Comfort Motion, including document requests pertaining to the Front Street Entities that are neither the Movants nor relevant to the instant dispute.

### **OBJECTION**

A.    **The Discovery Requests Are Not Proportional to the Needs of the Case and Are Irrelevant, Unduly Burdensome, Harassing and Duplicative**

11.    Federal Rule of Civil Procedure 26(b)(1) permits discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."   Relevance and proportionality are key limitations on unreasonable discovery demands.  "Although the scope of discovery is broad, it is not unlimited.  The probative value of the information requested should be balanced against the costs and burdens imposed upon the producing party."  *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009).  Rule 26(b)(1), in turn, requires "proportional[ity]" including consideration of "the importance of the discovery in resolving the issues [at stake in the action]" and whether "the burden or expense of the proposed discovery outweighs its likely benefit."  Notably, Rule 26(b)(1) was modified in 2015—after the issuance of all decisions cited by the Estate Parties in support of their contention that discovery should be so broad and liberal as to be near limitless—to limit discovery to information relevant to a "claim or defense."  In explaining its decision to eliminate "subject-matter" discovery, the Advisory Committee on Federal Rules of Civil Procedure

---

[7]    Mr. Brinkman serves as the Interim Chief Financial Officer of MBNF Investments, LLC, the parent entity indirectly above PAHH and the holding company of the Movants, who has personal knowledge of the proposed Term Loan.

expressly stated that "the proper focus of discovery is on the claims and defenses in the litigation." FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment.

12.     Relevance to the claims and defenses at hand is at the crux of any Rule 26 discovery. Further, courts deciding discovery motions in the context of contested matters—such as the Comfort Motion—have accorded even more significance to the tailoring of discovery requests in relation to the proceeding at hand. For instance, in connection with a motion by a local unit of the American Legion to assume a lease, the landlord sought discovery on the state-level unit so that it could obtain information on the Debtor's authority. The court held that such information was not pertinent to the issue presented by the contested matter and held that the discovery "shall be tailored to the issues triable in the instant Contested Matter." *In re Charles F. Hamblen Post 37 Amer. Legion Dept. of Fl., Inc.*, 2019 WL 10733641, at *2 (Bankr. M.D. Fla. Jun. 26, 2019); *see also In re Hogan*, 625 B.R. 134, 145 (Bankr. D. S.C. 2020) (granting protective order where party sought deposition on a variety of topics which did "not 'tend to prove the matter sought to be proved' here"). Indeed, the *Hamblen* court observed that "[a]lthough the scope of discovery is broad, 'the discovery rules do not permit the [parties] to go on a fishing expedition.'" *In re Charles F. Hamblen Post 37 Amer. Legion Dept. of Fl., Inc.* at *2 (citing *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006)). Importantly, the Estate Parties cite no cases regarding discovery in connection with a contested matter.[8]

13.     Courts hearing motions to compel have placed similar emphasis on the necessity of narrow tailoring. This Court has previously denied a motion to compel where the moving party

---

[8]     Instead, both of the cases cited by the Estate Parties in support of liberal discovery arose in the broader civil litigation context. One addressed discovery that the court held was directly relevant to plaintiff's fraudulent representation claim in connection with a contest for a feature role in the Broadway musical *Annie*, and the other addressed discovery in the context of a race-based employment discrimination lawsuit, where plaintiffs had asserted various claims and were seeking class certification.

sought production of information only tangential to the matter at hand on grounds that the desired discovery "provides little information toward determining [the claim at hand]." *In re Newstarcom Holdings, Inc.*, 514 B.R. 394 (Bankr. D. Del. 2014). Similarly, where discovery requests were directed "primarily, if not exclusively," to allegations other than those at issue, the Delaware District Court has refused to order document and witness production on grounds that "[w]hatever dim potential there is that certain responsive documents could in some way *also* relate to Plaintiff's [allegations at issue], the discovery at issue, as written, is not narrowly tailored to such allegations." *Princeton Digital Image Corp. v. Ubisoft Entm't SA*, 2018 U.S. Dist. LEXIS 66802, at *8 (D. Del. 2018); *see also Novanta Corp. v. Iradion Laser, Inc.*, 2016 U.S. Dist. LEXIS 126042, at *4 (D. Del. Sept. 16, 2016) (noting that it is the propounding party's burden to show how discovery is proportional to the needs of the case and denying the plaintiff's motion to compel discovery that was not "narrowly tailored or proportional to the infringement claims in the pending suit"). The Court should be appropriately skeptical of the Estate Parties' broad requests where the Estate Parties—as well as all of the parties joining the Motion to Compel—are parties to pending lawsuits against the Movants. While those parties assert that this provides them a basis to obtain discovery into the Movants' assets and internal affairs, this is false. The Estate Parties are not entitled to discovery only appropriate for a judgment creditor merely on account of having filed a complaint. *See, e.g.*, *Parallel Iron LLC v. NetApp, Inc.*, 84 F. Supp. 3d 352, 362 (D. Del. 2015) (where party sought discovery regarding opposing party's financial condition and injunction to prevent dissipation of assets, the court held that such request was premature and "would render [F.R.C.P.] 69(a)(2) superfluous"). As noted above, the relevant issues are the balance of hardship

and the likelihood of the Movants' prevailing on their assertion that their property is not subject to the Debtors' automatic stay.

14.     Further, the Estate Parties misleadingly assert that "history" somehow justifies broader discovery.  The Estate Parties' unsubstantiated allegations that the Movants improperly encumbered or transferred assets—framed as statements of fact—are untrue, unwarranted, and unfair, and certainly do not justify a fishing expedition under the guise of discovery.

15.     Although they began producing documents almost immediately following receipt of the Discovery Requests, the Respondents contemporaneously challenged the relevance and scope of such requests, including via informal communication to the Estate Parties' counsel and by filing the Motion to Quash.  However, to date, the Estate Parties have failed to carry their burden of demonstrating the relevance of each of the twenty-three topics on which they seek discovery. *See Inventio AG*, 662 F. Supp. 2d at 381 ("Once an objection is raised as to relevancy, the party seeking discovery bears the burden of demonstrating the relevance of the sought information to either the claims, defenses, or the subject matter of the litigation.").  Instead, they doubled down on their impermissible Discovery Requests by filing the Motion to Compel and Motion to Shorten.[9]

16.     The Estate Parties' failure to carry their burden of demonstrating the relevance of the Discovery Requests is explained by their inability to do so.  This inability is the natural result of the Estate Parties' improper motivation for seeking discovery, which they themselves state is beyond the scope of the Comfort Motion.  As the Estate Parties explain in the Motion to Compel, their "particular concern" is that the Comfort Motion, if granted, would allow the Movants'

---

[9]   The "**Motion to Shorten**" is the *Motion for Expedited Consideration of Debtors' and Committee's Expedited Motion to (A) Compel Discovery on Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets and (B) to Continue Hearing* [Docket No. 3054].

principal and owner to dispose of the Movants' assets in accordance with his business judgment. Motion to Compel, ¶ 3.

17.     The Discovery Requests are clearly not proportional to the needs of the case.  Of the twenty-three topics propounded to each Respondent, variously by Document Request, Deposition Notice, and Non-Party Subpoena, exactly zero go to the question of whether the automatic stay—which applies solely to property of the Debtors' estates, per the plain language of the underlying statute[10]—also applies to property of the Movants.  Instead, the Discovery Requests seek information relating to, among other things, the Movants' financial status,[11] the Movants' as well as certain non-party Respondents' historic use of their respective assets,[12] the Movants' past and present efforts to obtain financing,[13] the Movants' intended uses of the proceeds of the proposed financing,[14] and the Movants' relationships with their attorneys and other professionals.[15]

18.     In spite of the irrelevance of the Discovery Requests, as a show of good faith and in the spirit of consensual dispute resolution, the Respondents have voluntarily produced information responsive to such requests, as described above.

---

[10]  *See* 11 U.S.C. § 362(a).

[11]  *See, e.g.*, Document Request No. 9 ("All Documents and Communications regarding any Movant's need for additional liquidity . . .") and Document Request No. 10 ("All Documents and Communications regarding the calculation of the amount of liquidity allegedly required by any of the Movants . . .").

[12]  *See, e.g.*, Document Request No. 19 ("All Documents and Communications relating to each of the MBNF PropCos' use of its assets subsequent to July 1, 2019") and Document Request No. 20 ("All Documents and Communications relating to the use of assets owned by Front I, including without limitation the proceeds from disposition of such assets, subsequent to July 1, 2019").

[13]  *See, e.g.*, Document Request No. 6 ("All Documents and Communications relating to efforts . . . to obtain financing from any lender . . .") and Document Request No. 7 ("All Documents and Communications regarding the Term Loan including without limitation all drafts and versions of the 'financing term sheet' referenced in paragraph 9 of the [Comfort] Motion . . .").

[14]  *See, e.g.*, Document Request No. 15 ("All Documents and Communications regarding Your intended use of the proceeds of the Term Loan . . .").

[15]  *See, e.g.*, Document Request No. 17 ("For each professional who Professional Fees You seek to pay (i) all engagement letters or other written agreements between any of the MBNF PropCos and such professional . . .").

### B.    The Discovery Requests Seek Privileged Information.

19.    The Respondents further object to the Motion to Compel to the extent it seeks to force production of privileged information and generally seeks inappropriate information regarding the Movants' arrangements with their counsel.  *See, e.g.*, *Benitez v. Lopez*, 2019 U.S. Dist. LEXIS 64532, at *3 (E.D.N.Y. Mar. 14, 2019) (denying discovery into litigation funding upon party's failure to establish relevance of such information "'to any party's claims or defense'" and noting that "'[w]hether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue'") (internal citations omitted); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) ("The Court agrees with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant.").  Rule 26 expressly removes privileged information from the scope of discovery, and courts have respected this canon in denying discovery that may encroach on privileged information.  *See, e.g.*, *In re Hogan* at 143-45.  The Discovery Requests, and correspondingly the Motion to Compel, should be denied outright, without any further inquiry, to the extent they seek privileged information.

### <u>CONCLUSION</u>

20.    For the reasons above, the Debtors respectfully request that the Court deny the Motion.

*[Signature page follows]*

Dated: November 18, 2021
      Wilmington, DE

                            */s/ Brendan J. Schlauch*
                            Mark D. Collins (No. 2981)
                            Michael J. Merchant (No. 3854)
                            Brendan J. Schlauch (No. 6115)
                            RICHARDS, LAYTON & FINGER, P.A.
                            One Rodney Square
                            920 North King Street
                            Wilmington, Delaware 19801
                            Tel: (302) 651-7700
                            Fax: (302) 651-7701
                            Email: collins@rlf.com
                                    merchant@rlf.com
                                    schlauch@rlf.com

                            - and -

                            Suzzanne Uhland (admitted *pro hac vice*)
                            Robert J. Malionek (admitted *pro hac vice*)
                            Tianjiao ("TJ") Li (admitted *pro hac vice*)
                            Alexandra M. Zablocki (admitted *pro hac vice*)
                            LATHAM & WATKINS LLP
                            1271 Avenue of the Americas
                            New York, New York 10020
                            Telephone: (212) 906-1200
                            Facsimile: (212) 751-4864
                            E-mail: suzzanne.uhland@lw.com
                                    robert.malionek@lw.com
                                    tj.li@lw.com
                                    alexandra.zablocki@lw.com

                            *Counsel for PAHH and the Broad Street Entities*

US-DOCS\127852860.6RLF1 26361718v.2