# Exhibit A

**November 18, 2021 Letter to Estate Parties' Counsel**

Robert Malionek  
Direct Dial: +1.212.906.1816  
robert.malionek@lw.com

1271 Avenue of the Americas  
New York, New York 10020-1401  
Tel: +1.212.906.1200  Fax: +1.212.751.4864  
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

November 18, 2021

**VIA E-MAIL**

Mark Minuti  
Saul Ewing Arnstein & Lehr LLP  
1201 N. Market Street, Suite 2300  
P.O. Box 1266  
Wilmington, DE 19899

- and -

Andrew H. Sherman  
Sills Cummis & Gross P.C.  
One Riverfront Plaza  
Newark, NJ 07102

      RE:    *In re Center City Healthcare, LLC, d/b/a Hahnemann University Hospital et al.*, **Case No. 19-11466 (MFW)**

             **The Comfort Motion and Related Discovery Disputes**

Dear Messrs. Minuti and Sherman:

      I write on behalf of the MBNF Non-Debtor Entities[1], including the Respondents[2] to the Discovery Requests[3] served in connection with *The Motion of the Broad Street Entities and PAHH*

---

[1] For purposes of this letter, "**MBNF Non-Debtor Entities**" means Joel Freedman, Stella Freedman, Svetlana Attestatova, Kyle Schmidt, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, and Globe Health Foundation, Inc.

[2] "**Respondents**" are the parties who received the Discovery Requests: William Brinkman, Joel Freedman, Kyle Schmidt, Broad Street Healthcare Properties, LLC, ("**Broad Street I**"), Broad Street Healthcare Properties II, LLC ("**Broad Street II**"), Broad Street Healthcare Properties III, LLC ("**Broad Street III**" and, together with Broad Street I and Broad Street II, the "**Broad Street Entities**"), Front Street Healthcare Properties, LLC ("**Front Street I**"), Front Street Healthcare Properties II, LLC ("**Front Street II**" and, together with Front Street I, the "**Front Street Entities**"), Paladin Healthcare Capital, LLC ("**Paladin**"), and Philadelphia Academic Health Holdings, LLC ("**PAHH**").

[3] The "**Discovery Requests**" include: (i) the *Debtors' and the Committee's First Set of Requests for Production of Documents to the Broad Street Entities and PAHH* [Docket No. 3025] served on November 2, 2021 (the "**Document Request**"); (ii) the deposition notices served on Joel Freedman, Broad Street Healthcare Properties, LLC, Broad Street

**LATHAM&WATKINS**LLP

*for Entry of an Order (I) Determining that the Automatic Stay Does Not Apply to Their Assets or (II) In the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets* [Docket No. 3002] (the "**Comfort Motion**"). The purpose of this letter is to memorialize the lengthy meet-and-confer discussion between Respondents' counsel and counsel for the Debtors and the Official Committee of Unsecured Creditors (collectively, the "**Estate Parties**") that occurred on November 17, 2021 (the "**November 17 Meet and Confer**").

As you know, the Respondents maintain that the Discovery Requests are overly broad, unduly burdensome, and irrelevant to the narrow issues raised in the Comfort Motion. The relevant issues are simply whether the MBNF Assets[4] constitute the property of the Debtors' bankruptcy estates or, in the alternative, the possibility of prejudice to the Debtors if the stay is lifted, the hardship to the Movants by maintaining the stay, and the Movants' likelihood of success on the merits of their position that the MBNF Assets are not the property of the Debtors' bankruptcy estates. The Discovery Requests go far beyond those issues. However, in the spirit of cooperation and as fully set forth in the Motion to Quash, the Respondents have provided the Estate Parties with a significant amount of information and documents in response to the Discovery Requests, and agreed yesterday to provide even more—well beyond what is relevant to the Comfort Motion.

Indeed, the Respondents already provided two productions in response to the Discovery Request, including:

- Documents relating to payments made on behalf of the Debtors by the MBNF Non-Debtor Entities for expenses incurred at the premises while occupied by the Debtors (such as repairs and maintenance, utility payments, tax payments, and others);

- The sources and uses of the sale proceeds from the real property formerly owned by the Front Street Entities, setting forth, among other things, (i) payment of certain taxes in connection with the sale, (ii) property related expenses, (iii) professional fees paid to legal counsel, tax advisors, and valuation experts, and (iv) payments made by certain of the MBNF Non-Debtor Entities to the Pension Fund, as set forth in the Comfort Motion;

- The run rates of the Broad Street Entities, including operating expenses (i.e., building security, life and safety systems, cleaning, electrical, and plumbing), insurance, real estate taxes, and professional fees;

---

Healthcare Properties II, LLC, and Broad Street Healthcare Properties III, LLC [Docket Nos. 3026-30] (the "**Deposition Notices**") served on November 2, 2021; and (iii) the non-party subpoenas served on William Brinkman, Kyle Schmidt, the Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC and Paladin Healthcare Capital, LLC on November 3, 2021 [Docket Nos. 3034-39] (the "**Non-Party Subpoenas**").

[4] Capitalized but undefined terms herein shall have the meanings ascribed to them in the Comfort Motion or the *Respondents' Motion to (I) Quash the Debtors' and the Creditors' Committee's Notice of Rule 26 and 30(b)(6) Deposition and Subpoenas and (II) for Entry of a Protective Order Limiting Written Discovery* [Docket No. 3055] (the "**Motion to Quash**"), as applicable.

- Documents relating to obligations of certain of the MBNF Non-Debtor Entities to the Pension Fund;

- The support for payments made to the Pension Fund by the MBNF Non-Debtor Entities;

- All existing mortgages on the MBNF Assets;

- All promissory notes secured by such mortgages; and

- All UCC filings related to such notes.

In the spirit of further cooperation and in an effort to resolve the Discovery Requests without further court intervention, the Respondents represented yesterday that they will supplement their document productions to date with the following information (the "**Supplemental Production**") at the insistence of the Estate Parties, even though such information is not necessary to assess the merits of the Comfort Motion:

- Detailed amounts paid for pre-rejection property related expenses for the benefit of the Debtors;

- Monthly reports from the Movants' property manager for a period of approximately 15 months;

- The amounts of the related party financing as referenced in the Comfort Motion; and

- The total amounts deposited with Gordon Brothers (in its capacity as the proposed lender of the Term Loan) or its designated affiliates.

Additionally, the Respondents are providing interrogatory responses (attached hereto as **Exhibit A**) to the six questions set forth in the Objection to Motion to Quash[5] because the Estate Parties claim that "[w]ithout answers to the [] questions, the Debtors and Committee cannot adequately reply to the Financing Motion." Objection to Motion to Quash ¶ 16. Now, with these interrogatory responses providing the answers the Estate Parties seek, there should be no reason the Estate Parties cannot adequately reply to the Comfort Motion.

Even beyond all of this, and as discussed, we will make available for deposition William Brinkman, the witness whose testimony we plan to offer during the hearing on the Comfort Motion (if the Estate Parties continue to insist on opposing the Comfort Motion). A list of the topics that Mr. Brinkman expects to testify is itemized below. We will endeavor to preview with you a draft declaration of Mr. Brinkman by November 22, 2021. Consistent with our proposal during the

---

[5] "**Objection to Motion to Quash**" means the *Objection of Debtors and Committee to Respondents' Motion to (I) Quash the Debtors' and the Creditors' Committee's Notice of Rule 26 and 30(b)(6) Deposition and Subpoenas and (II) For Entry of a Protective Order Limiting Written Discovery* [Docket No. 3115]

3

LATHAM&WATKINS<sup>LLP</sup>

November 17 Meet and Confer and made to you in writing before that, the Respondents again suggest, for the sake of efficiency, as follows: proffering Mr. Brinkman's testimony through that declaration, making him immediately available for deposition, and once you take his deposition (with the benefit of his draft declaration), you then designate portions of his deposition testimony in lieu of live cross-examination at the hearing. This will streamline the hearing considerably.

- Movants' efforts to obtain financing;

- Movants' term sheet with Gordon Brothers for the Term Loan;

- Movants' current financial position;

- Movants' expected expenses;

- Movants' current financial obligations (including pension obligations);

- Intended uses of Term Loan; and

- Ramifications of failing to obtain relief sought in the Comfort Motion.

We believe these topics overlap with all relevant "topics" laid out in the Estate Parties' Rule 30(b)(6) deposition notices.

***

We trust that this letter, together with the productions already made, the Supplemental Production, Exhibit A, and the draft declaration to be provided to you, address the Discovery Requests. We reserve all rights.

Respectfully,

*/s/ Robert Malionek*

Robert Malionek

4

# **Exhibit A**

Interrogatory Responses

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC D/B/A HAHNEMANN UNIVERSITY HOSPITAL, *et. al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11466 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: Nov. 19, 2021 at 10:30 a.m. (ET)** |

## RESPONDENTS' RESPONSES AND OBJECTIONS TO THE QUESTIONS SET FORTH IN THE OBJECTION OF DEBTORS AND COMMITTEE TO RESPONDENTS' MOTION TO (I) QUASH THE DEBTORS' AND THE CREDITORS' COMMITTEE'S NOTICE OF RULE 26 AND 30(B)(6) DEPOSITION AND SUBPOENAS AND (II) FOR ENTRY OF A PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, made applicable herein by Rules 7033 and 9014 of the Federal Rules of Bankruptcy Procedure, the Respondents[2] in the above-captioned cases, by and through their undersigned counsel, respectfully submit the following responses and objections (the "**Responses**") to the six questions (each, a "**Question**"

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] "**Respondents**" are the entities who received discovery requests: William Brinkman, Joel Freedman, Kyle Schmidt, Broad Street Healthcare Properties, LLC, ("**Broad Street I**"), Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC ("**Broad Street III**," and collectively, the "**Broad Street Entities**"), Front Street Healthcare Properties, LLC ("**Front Street I**"), Front Street Healthcare Properties II, LLC ("**Front Street II**, and collectively, the "**Front Street Entities**"), Paladin Healthcare Capital, LLC ("**Paladin**"), and Philadelphia Academic Health Holdings, LLC ("**PAHH**"). The Broad Street Entities and PAHH received the *Debtors' and the Committee's First Set of Requests for Production of Documents to the Broad Street Entities and PAHH* [Docket No. 3025] (the "**Document Request**"); Mr. Freedman, the Broad Street Entities, and PAHH received deposition notices [Docket Nos. 3026-30] (the "**Deposition Notices**"); and Mr. Brinkman, Mr. Schmidt, the Front Street Entities, and Paladin received subpoenas [Docket Nos. 3034-39] (the "**Non-Party Subpoenas**" and, together with the Document Request and the Deposition Notices, the "**Discovery Requests**").

and collectively, the "**Questions**") set forth in the *Objection of Debtors and Committee to Respondents' Motion to (I) Quash the Debtors' and the Creditors' Committee's Notice of Rule 26 and 30(b)(6) Deposition and Subpoenas and (II) For Entry of a Protective Order Limiting Written Discovery* [Docket No. 3115] (the "**Objection to Motion to Quash**"). The Debtors and the Official Committee of Unsecured Creditors (the "**Creditors' Committee**" and, together with the Debtors, the "**Estate Parties**") claim that "[w]ithout answers to the [] questions, the Debtors and Committee cannot adequately reply to the Financing Motion." Objection to Motion to Quash ¶ 16. The Questions are as follows:

1. What specific uses are intended for the proposed loan's proceeds?

2. What are all the terms of the proposed loan?

3. To what extent are the contemplated uses of the loan fraudulent conveyances – that is, for Freedman's personal benefit or for the benefit of other entities, rather than for the maintenance of the real estate owned by the Broad Street Entities?

4. Why is it necessary or beneficial, and to whom, to maintain the real estate for 15 months rather than for a shorter period of time?

5. Given that certain of the intended uses (e.g., payment of amounts due to the Pension Fund) appear to be joint and several obligations of the Movants and other Freedman-owned entities, such as Front I and Front II, why cannot such other entities – which sold real estate during the course of the Debtors' cases for over $50 million – pay for some or all of such shared expenses?

6. Inasmuch as the Financing Motion seeks approval for the sale of the real estate, what if any sale discussions have occurred?

*Id.*

## PRELIMINARY STATEMENT

As discussed with the Estate Parties, the following Responses are based upon the facts, documents, and information presently known and available to the Respondents, which the

Respondents offered to provide as interrogatory responses in light of the very specific six Questions raised in the Objection to Motion to Quash.

Without obligating themselves to do so, the Respondents reserve the right to change or supplement the Responses as additional facts or documents are discovered, revealed, recalled or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, contentions or legal theories which may apply.  The Respondents specifically reserve the right to utilize subsequently discovered facts, documents, or evidence in these chapter 11 cases.

The general and specific objections set forth below are intended to apply to all information provided or produced pursuant to the Questions.  Further, these Responses do not in any way waive any objections by the Respondents, in this or in any subsequent proceeding, on any grounds, including objections as to the competency, relevancy, materiality, privilege or admissibility of the Responses, or the subject matter thereof.

**GENERAL OBJECTIONS**

In addition to those grounds for objection that are set forth specifically in response to each Question, the Respondents object generally to the Questions on the following grounds (the "**General Objections**").  The Respondents' responses and objections incorporate, and are to be read in light of, these General Objections.  Any undertaking to search for, or provide information in response to, any Question remains subject to the General Objections.

1.     The Respondents object to the Questions to the extent they purport to impose requirements, obligations, and duties different from or beyond those imposed by the Federal Rules

of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, or any other applicable agreement or rule.

2. The Respondents object to the Questions insofar as they seek or require the disclosure of information protected from disclosure by the attorney-client privilege, attorney work-product privilege, common interest privilege, or any other applicable privilege or immunity from production. The Respondents' Responses to the Questions are not intended to be, and should not in any way be deemed to be, a waiver of any such privilege or immunity. Any inadvertent disclosure or production of information protected by the attorney-client privilege, prepared in anticipation of litigation or trial, or otherwise protected or immune from discovery does not constitute a waiver of any privilege or other basis for objecting to the disclosure of such information or its subject matter. The Respondents expressly reserve the right to object to the use or introduction of such information.

3. The Respondents object to the Questions to the extent that they are unreasonably cumulative and/or duplicative of each other, or seek information that is not relevant to the claims or defenses at issue in these proceedings nor reasonably calculated to lead to the discovery of admissible evidence.

4. The Respondents object to the Questions to the extent they are vague, ambiguous, use undefined terms, or otherwise fail to specify with sufficient particularity the nature of the documents sought.

5. The Respondents object to the Questions to the extent they are overly broad or unduly burdensome, or seek information for which the burden and expense of locating and disclosing is not proportional to the needs of the action. The Respondents submit these responses

and objections without conceding the relevancy or materiality of the subject matter of any Questions or any information provided thereto.

6. The Respondents object to the Questions to the extent that they contain or are predicated on legal or factual assumptions that are incorrect.

7. The Respondents object to the Questions to the extent that they call for the Respondents to make legal conclusions.

8. The Respondents object to the Questions to the extent they seek the disclosure of information that is not in the Respondents' possession, custody, or control, and is already in the Estate Parties' possession, custody, or control, or is publicly available.

9. The Respondents object to the Questions to the extent they seek the disclosure of information that does not exist or has never existed.

10. The Respondents object to the Questions to the extent they seek the disclosure of information that may not be divulged by law or contract with a third party or information that the Respondents lack the authority to produce.

11. The Respondents object to the Questions to the extent they call for information or documents without regard to a time period reasonably related to these chapter 11 cases.

12. The Respondents object to the Questions to the extent they seek "all" information relating to a specific topic, on the grounds that such Questions are overly broad and unduly burdensome, and impose an excessive burden on the Respondents.

13. The Responses herein are based on the Respondents' present knowledge, information, and belief. The Respondents reserve the right to amend, revise, correct, supplement, or clarify any of the Responses herein, and to incorporate and use any relevant, responsive, and

non-objectionable information that the Respondents disclose or produce in response to the Questions.

## SPECIFIC RESPONSES AND OBJECTIONS

In addition to the General Objections set forth above, which are expressly incorporated by reference in each response below, the Respondents further submit the following responses and objections:

### QUESTION NO. 1:

What specific uses are intended for the proposed loan's proceeds?

### RESPONSE:

The uses are set forth in the sources and uses attached as Exhibit A to the term sheet of the Term Loan (the "**Term Sheet**"), a copy of which was provided to the Estate Parties on November 5, 2021. The $1.4 million working capital will be largely consumed by closing related costs in connection with the Term Loan, including, but are not limited to, brokerage fees and environment, zoning, title, and other closing related expenses.

In addition to and without waiving the foregoing General Objections, which are incorporated herein, the Respondents refer the Estate Parties to the Term Sheet as it responds to this question.

### QUESTION NO. 2:

What are all the terms of the proposed loan?

### RESPONSE TO QUESTION NO. 2:

The terms of the proposed loan are set forth in the Term Sheet. There are no other definitive agreements with Gordon Brothers. The parties are working on the definitive agreements as of the date hereof.

In addition to and without waiving the foregoing General Objections, which are incorporated herein, the Respondents object to this Question as not relevant to the issues in the Comfort Motion.

### QUESTION NO. 3:

To what extent are the contemplated uses of the loan fraudulent conveyances—that is, for Freedman's personal benefit or for the benefit of other entities, rather than for the maintenance of the real estate owned by the Broad Street Entities?

**RESPONSE TO QUESTION NO. 3:**

All uses of the Term Loan proceeds are set forth in the Term Sheet. No proceeds will be distributed as a dividend. The concept of fraudulent conveyances does not apply here because none of the Movants are currently debtors in Chapter 7 or Chapter 11 cases. Thus, it is factually and legally inaccurate and misleading to characterize the "contemplated uses" of the Term Loan proceeds as fraudulent conveyances.

In addition to and without waiving the foregoing General Objections, which are incorporated herein, the Respondents object to this Question as not relevant to the issues relevant to the Comfort Motion. The Respondents also object to this Question on the ground that the information sought is based upon legal or factual assumptions that are incorrect.

**QUESTION NO. 4:**

Why is it necessary or beneficial, and to whom, to maintain the real estate for 15 months rather than for a shorter period of time?

**RESPONSE TO QUESTION NO. 4:**

The marketing period was negotiated by the Movants, and the marketing process of the MBNF Assets will be managed by the Movants in their business judgment as advised by experts. Consistent with the Respondents' fiduciary duty to their creditors, the Term Loan can be repaid at any time prior to the end of the 15-month period.

In addition to and without waiving the foregoing General Objections, which are incorporated herein, the Respondents object to this Question as not relevant to the issues in the Comfort Motion.

**QUESTION NO. 5:**

Given that certain of the intended uses (*e.g.*, payment of amounts due to the Pension Fund) appear to be joint and several obligations of the Movants and other Freedman-owned entities, such as Front I and Front II, why cannot such other entities – which sold real estate during the course of the Debtors' cases for over $50 million – pay for some or all of such shared expenses?

**RESPONSE TO QUESTION NO. 5:**

While not relevant to the Comfort Motion as the Broad Street Entities and PAHH are jointly and severally liable to the Pension Fund, related parties have paid or advanced funds for prior Pension Fund payments to date and have loaned to the Broad Street Entities funds to cover their operating expenses. As noted in the Comfort Motion, additional financing is not available from the Front Street Entities or other related parties. As you are aware, the net sale proceeds of the assets once owned by the Front Street Entities totaled approximately $30 million after the payment of Tenet's secured note and the legal fees of Kirkland & Ellis LLP in the amount of approximately $1 million.

In addition to and without waiving the foregoing General Objections, which are incorporated herein, the Respondents object to this Question as not relevant to the issues in the Comfort Motion because, among other thing, the Front Street Entities are not the Movants.

7

**QUESTION NO. 6:**

Inasmuch as the Financing Motion seeks approval for the sale of the real estate, what if any sale discussions have occurred?

**RESPONSE TO QUESTION NO. 6:**

While not relevant to the Comfort motion, the Movants intend to restart the sale process insofar as the prior sale process was hindered by the COVID-19 pandemic. The Movants have agreed not to "further encumber, sell, transfer, or convey the MBNF Assets . . . prior to 11:59 p.m. ET on December 3, 2021." *Stipulation Regarding Comfort / Lift Stay Motion and Discovery Motions* [Docket No. 3116-1].

The Respondents refer the Estate Parties to the information provided in the course of mediation, including, without limitation, the offers to purchase certain of the MBNF Assets. In addition to and without waiving the foregoing General Objections, which are incorporated herein, the Respondents object to this Question as not relevant to the issues in the Comfort Motion.

[*Remainder of this page intentionally left blank*]

Dated: November 18, 2021
Wilmington, DE

/s/ Robert Malionek
Suzzanne Uhland (admitted *pro hac vice*)
Robert Malionek (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Alexandra M. Zablocki (admitted *pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
E-mail: suzzanne.uhland@lw.com
robert.malionek@lw.com
tj.li@lw.com
alexandra.zablocki@lw.com

*Counsel for the Respondents*