IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

In re:

CENTER CITY HEALTHCARE, LLC D/B/A HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]

Debtors.

---

Chapter 11

Case No. 19-11466 (MFW)

(Jointly Administered)

Re: Docket Nos. 3002 & 3186

**DECLARATION OF WILLIAM R. BRINKMAN
IN SUPPORT OF THE MOTION OF THE BROAD STREET ENTITIES AND PAHH
FOR ENTRY OF AN ORDER (I) DETERMINING THAT THE AUTOMATIC STAY
DOES NOT APPLY TO THEIR ASSETS OR (II) IN THE ALTERNATIVE, GRANTING
LIMITED RELIEF FROM THE AUTOMATIC STAY FOR THEM TO
SELL, TRANSFER, OR OTHERWISE ENCUMBER SUCH ASSETS**

I, William R. Brinkman, hereby declare as follows under penalty of perjury:

1. I submit this declaration ("**Declaration**") on behalf of PAHH[2] and the Broad Street Entities[3] (together, the "**Movants**") in support of the *Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] "**PAHH**" means Philadelphia Academic Health Holdings, LLC.

[3] "**Broad Street Entities**" means, collectively, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, and Broad Street Healthcare Properties III, LLC. The properties owned by the Broad Street Entities include (i) Feinstein Lot, 200-214 N. Broad St.; (ii) SHSH Building, 201-219 N. 15th St.; (iii) the parcel next to the SHSH Building, 221-223 N. 15th St.; (iv) North and South Towers, 222-248 N. Broad St (the "**Towers**"); (v) Martinelli Park; and (vi) the Stiles Alumni Hall underground parcel.

*(II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets* [Docket No. 3002] (the "**Comfort Motion**").[4]

2. Since August 2019, I have been serving as the Interim Chief Financial Officer of MBNF Investments, LLC, the parent entity indirectly above PAHH and the holding company of the Movants.

3. I am a Partner at Jigsaw Advisors, LLC ("**Jigsaw**"), an advisory, fiduciary, and interim management services firm. Except as otherwise explicitly stated in this Declaration, the statements made in this Declaration are based on my personal knowledge. If sworn as a witness, I could and would testify competently to the truth thereof.

4. I have nearly 25 years of experience in the specialized areas of bankruptcies, restructurings, receiverships, as well as assignments for the benefit of creditors, and in various management capacities (CEO/CRO/CFO) as they relate to business operations and the sale of assets.

5. Previously, I was appointed as an interim manager, restructuring advisor, receiver and acted as fiduciary and officer, and have operated numerous types of businesses.

## THE PENSION AGREEMENT

6. In December 2020, certain of the MBNF Non-Debtor Entities[5] entered into a settlement agreement (the "**Pension Agreement**") with the Pension Fund for Hospital and Health Care Employees of Philadelphia and Vicinity (the "**Pension Fund**"). Initially, the Pension Fund

---

[4] Capitalized but undefined terms herein shall have the meanings ascribed to them in the Comfort Motion.

[5] "**MBNF Non-Debtor Entities**" means Joel Freedman, Stella Freedman, Svetlana Attestatova, Kyle Schmidt, MBNF Investments, LLC, American Academic Health System, LLC ("**AAHS**"), Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, and Globe Health Foundation, Inc.

demanded payment in the amount of $59,400,000. Under the Pension Agreement, which did not determine which of the MBNF Non-Debtor Entities was in the "control group," the Front Street Entities,[6] the Broad Street Entities, AAHS, and PAHH (collectively, the "**Payor Non-Debtor Entities**") are payors obligated to make payments to the Pension Fund on a joint and several basis. While the Payor Non-Debtor Entities are jointly and severally liable to the Pension Fund, for internal allocation purposes, 50% of the payment obligation to the Pension Fund was allocated to the Front Street Entities, with the remaining 50% allocated to the Broad Street Entities.

## THE MOVANTS' NEED FOR FINANCING

7. The most significant assets of the Broad Street Entities are the premises previously occupied by Hahnemann University Hospital. Despite its closing, such premises require ongoing maintenance and therefore incur substantial operating expenses in connection with security, cleaning, electrical systems, elevators, HVAC maintenance, and utility costs. For instance, electricity needs to be turned on so that (i) the interior of the Towers can be maintained at a proper temperature to prevent pipes from freezing during colder months and to prevent humidity and mold in warmer months and (ii) emergency exit signs and emergency lighting can function. Given that unoccupied buildings are susceptible to trespassing, vandalism, and undetected building damage easily resulting in public safety issues, security personnel are required to patrol the properties and remain on site 24/7 to ensure that there are no signs of vandalism and that all doors, windows, and other openings are secured to avoid trespassing and damage caused by inclement weather, water leaks, and fire. Moreover, for public safety reasons, the premises require continuous spending related to life safety measures, the fire alarm system, the sprinkler system, fire extinguishers, and

---

[6] "**Front Street Entities**" means Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC.

snow and ice removal. Other key maintenance tasks focus on the lighting system, water systems, heating and cooling systems, access controls, and exterior walls and accessories. In addition, the Broad Street Entities are required to pay substantial real estate taxes and property insurance premiums.

8. Without the GB Facility (as defined below), the Movants will be unable to (i) pay all of the real estate taxes levied and municipal fees incurred with respect to their property; (ii) properly manage the property and ensure it remains compliant with applicable building and safety codes; and (iii) correct or otherwise remedy code violations.

9. The Movants face mounting professional fees. For instance, the Movants have incurred, and will continue to incur, significant legal fees to engage in mediation and to defend the adversary proceeding commenced by the Debtors.

## GORDON BROTHERS FINANCING

10. In April 2021, Gordon Brothers indicated its interest in providing financing (the "**GB Facility**").

11. The Movants and Gordon Brothers executed a term sheet on October 29, 2021.

12. Since being retained, I assisted the Movants in evaluating their liquidity position and potential financing needs. I worked closely with the Movants and their other advisors and the property manager to evaluate the Movants' cash requirements.

13. I prepared a schedule of sources and uses for the GB Facility (attached hereto as **Exhibit A**) (the "**Sources and Uses**"). As set forth in the Sources and Uses, the Movants require the funds to pay, *inter alia*, property operating costs (examples of which are described above), property taxes, and property insurance premiums. As further set forth in the Sources and Uses,

funds critical to fulfilling future obligations, including tax, insurance, and pension, are placed in reserves.

14. The Sources and Uses also provide for the repayment of a first lien note and a second lien note to Paladin Healthcare Capital, LLC, as agent, with approximately $3.162 million outstanding as of October 28, 2021, which amount was updated and increased by $382,722 on November 11, 2021.

## COST AND EXPENSE ALLOCATIONS

15. Most professional and personnel costs (*i.e.*, Sonsara Management Services, LLC and Jigsaw) are generally allocated 40% to the Front Street Entities, 40% to the Broad Street Entities, and 20% to PAHH, with each invoice allocated as recommended by the provider and confirmed by management of the Movants. Legal professionals (*i.e.*, O'Melveny & Myers LLP and Latham & Watkins LLP) divided their time by matters that had specific allocations.

16. Based on the allocations of obligations owed to the Pension Fund as well as allocations of other costs and expenses, the Broad Street Entities have or will have receivables from other related entities. Because the Front Street Entities loaned over $14 million to the Broad Street Entities to address the Broad Street Entities' liquidity concerns, most amounts owed to the Front Street Entities will be repaid by offset.

17. The Movants assert an approximately $2.1 million administrative expense claim against the Debtors as a result of their failure to comply with their postpetition lease obligations, including their obligation to maintain the buildings in a safe condition. The Movants were required to pay over a third of such obligations to protect the property. The Comfort Motion states the Movants were "required to pay" these amounts; what is meant by that statement is that the Debtors'

failure to comply with the lease has resulted in obligations in such amounts in accordance with the lease.

19. In addition, because the Front Street Entities have no liquidity to satisfy payment obligations owed to the Pension Fund, the Broad Street Entities must make the payment. As discussed above, the Front Street Entities and the Broad Street Entities are allocating obligations and payments to the Pension Fund on a 50/50 basis.

## IMPORTANCE OF THE GB FACILITY

19. Without immediate access to the GB Facility, the Movants will be unable to continue to preserve and maximize the value of their assets for the benefit of all the Movants' stakeholders. Any failure to promptly close the GB Facility, as set forth in the Comfort Motion, will cause immediate and irreparable harm to the Movants and their stakeholders, and will diminish the value of the Movants' assets. Additionally, the inability to access the GB Facility would severely damage the Movants' ability to pay professionals, insurance, taxes, or other expenses. This would cause substantial harm to the Movants' assets and the Movants' ability to realize maximum value for the assets.

20. If the Movants are unable to obtain access to the GB Facility, the Movants currently project that they will not have sufficient liquidity to maintain the property's safety during the first quarter of 2022. The Movants' preexisting cash balances of approximately $170,000 are not sufficient. Accordingly, a significant cash infusion is necessary to preserve the value of the Movants' assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: November 29, 2021
       Lafayette, California

*/s/ William R. Brinkman*
William R. Brinkman