# **EXHIBIT 1**

## **Redacted Objection**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                        :
                                              :   Chapter 11
                                              :
                                              :   Case No. 19-11466 (MFW)
CENTER CITY HEALTHCARE, LLC D/B/A             :
HAHNEMANN UNIVERSITY HOSPITAL, et             :   (Jointly Administered)
al.,¹                                         :
                                              :   Re: Docket No. 3177
                Debtors.                      :
                                              :
-------------------------------------------------------- x
```

### RESPONDENTS' OBJECTION TO DEBTORS' AND COMMITTEE'S (I) RENEWED MOTION TO COMPEL DISCOVERY AND CONTINUE HEARING ON COMFORT / LIFT STAY MOTION AND (II) MOTION IN LIMINE

The Respondents[2] hereby submit this objection (the "**Objection**") to the *Debtors' and (I) Renewed Motion to Compel Discovery and Continue Hearing on Comfort / Lift Stay Motion and (II) Motion in Limine* [Docket No. 3177] (the "**Renewed Motion to Compel**") filed by the

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]   "**Respondents**" are the parties who received the Discovery Requests (as defined below in this footnote): William Brinkman, Joel Freedman, Kyle Schmidt, Broad Street Healthcare Properties, LLC, ("**Broad Street I**"**)**, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC ("**Broad Street III**," and collectively, the "**Broad Street Entities**"), Front Street Healthcare Properties, LLC ("**Front Street I**"), Front Street Healthcare Properties II, LLC ("**Front Street II**," and collectively, the "**Front Street Entities**"), Paladin Healthcare Capital, LLC ("**Paladin**"), and Philadelphia Academic Health Holdings, LLC ("**PAHH**").  The Broad Street Entities and PAHH received the *Debtors' and the Committee's First Set of Requests for Production of Documents to the Broad Street Entities and PAHH* [Docket No. 3025] (the "**Document Request**"); Mr. Freedman, the Broad Street Entities, and PAHH received deposition notices [Docket Nos. 3026-30] (the "**Deposition Notices**"); and Mr. Brinkman, Mr. Schmidt, the Front Street Entities, and Paladin received subpoenas [Docket Nos. 3034-39] (the "**Non-Party Subpoenas**" and, together with the Document Request and the Deposition Notices, the "**Discovery Requests**").

Debtors and the Official Committee of Unsecured Creditors (the "**Committee**" and, together with the Debtors, the "**Estate Parties**").[3]

In support of this Objection, the Respondents respectfully state as follows:

## PRELIMINARY STATEMENT

1.     The Movants are seeking simple relief that should be uncontroversial:  a comfort order holding that assets indisputably belonging to the Movants, as non-Debtors, are exempt from the automatic stay.  As if that were not uncontroversial enough, the Movants alternatively seek an order lifting the automatic stay to whatever extent it applies in order to permit the Movants to obtain third-party financing that is critical to preserve those same assets for the benefit of all the Movants' creditors and other stakeholders.  The Estate Parties have an equally simple goal in mind:  to blockade the Movants' much needed third-party financing in order to gain leverage in a completely separate adversary proceeding and ongoing mediation.

2.     As an initial matter, the Movants have already provided all relevant documents, Rule 30(b)(6) deposition testimony, individual testimony, interrogatory-style responses, and even more, in line with the Court's clear ruling on November 19, 2021 as to relevant discovery.  That the Estate Parties have chosen to renew their discovery motion and request again to delay the hearing on the Comfort Motion shows their desperation.  Respectfully, there is no basis to grant their Renewed Motion to Compel.

3.     Any relief the Court might grant in response to the Renewed Motion to Compel is effectively limited by section 362(e)(1) of the Bankruptcy Code, which permits only 30 days for a stay relief request to remain pending, unless the Court earlier orders that the stay be continued in

---

[3]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets* [Docket No. 3002] (the "**Comfort Motion**").

effect pending the outcome of a final hearing and determination.  The Movants filed the Comfort Motion on October 29, 2021.  At the insistence of the Estate Parties, and despite the potential harm to the Movants as a result of such delay, the Movants voluntarily agreed to an extension of this 30-day period until the hearing set for December 1, 2021 (*i.e.*, tomorrow).   Thus, under section 362(e)(1), if the Estate Parties were successful in further delaying the December 1st hearing, the automatic stay will automatically be lifted.  We therefore respectfully suggest that the Court proceed with this hearing as scheduled, and we would hope and request that the Court's decision at the December 1st hearing be rendered on a final basis.[4]  To the extent the Estate Parties seek additional discovery as part of their delay tactic, the Estate Parties will not be able to use such discovery in their ongoing attempt to wield the automatic stay against the Movants.  Thus, the Renewed Motion to Compel is effectively moot.

4.      Even if the Court were to set aside the Bankruptcy Code-derived limitation on the relief sought by the Estate Parties, their Renewed Motion to Compel must fail on the merits.  The standards in play in connection with the Comfort Motion are narrow:  the Court may base its ruling on either a finding that the Debtors do not own the Movants' assets, or application of the three-prong test used to decide stay relief—namely, (i) whether prejudice to the Debtors' estate would result from lifting the stay, (ii) whether the balance of hardships favors the Movants' request for stay relief, and (iii) whether the Movants have a probability of success on the merits.  As the Movants explained in their Omnibus Reply,[5] the relief sought by the Comfort Motion may

---

[4]    While the Bankruptcy Code provides that a presiding court has the power to issue a stay relief ruling on a preliminary basis, it reserves such preliminary relief for instances in which there is a reasonable likelihood that the party opposing stay relief will succeed on its objection.  Because the Estate Parties have not shown a reasonable likelihood of succeeding on their objection to the Comfort Motion, preliminary relief is inappropriate here.

[5]    The "**Omnibus Reply**" is the *Omnibus Reply in Support of the Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the*

rightfully be granted on either grounds.  However, more to the point for this Objection, the narrow standards in play mean that the discovery permitted should be equally constrained.  In no event should discovery outside the scope of the Court's prior ruling regarding relevance (or irrelevance) be compelled.

5.      The Movants have already produced all available (*i.e.*, non-privileged) documents regarding the topics deemed relevant by the Court during the November 19th Hearing on the Estate Parties' Initial Motion to Compel.[6]  In addition, they produced two witnesses (MBNF Investments, LLC chief financial officer, Mr. William Brinkman, and their officer and equityholder, non-Movant Mr. Joel Freedman) for depositions lasting eight-and-a-half hours, in the aggregate, even though they were required to produce only a single witness under Rule 30(b)(6).[7]  During these depositions, the Estate Parties' counsel were permitted to ask broad-ranging questions as they attempted to build foundations for relevant lines of questioning.  Beyond these depositions, the Movants provided sworn declarations by each Mr. Brinkman and Mr. Freedman, even providing the Estate Parties with a preliminary draft of Mr. Brinkman's declaration in order to facilitate what the Movants had hoped would be an effective and efficient deposition.

6.      Regardless of the complete nature of the information produced by the Movants to date, the Estate Parties remain unsatisfied.  Indeed, they refuse to be bound by either the bounds of what is logically relevant to the Comfort Motion or the clear parameters set by the Court at the

---

*Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets* [Docket No. 3186].

[6]     The "**Initial Motion to Compel**" is the *Debtors' and Committee's Expedited Motion to (A) Compel Discovery on Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets and (B) to Continue Hearing* [Docket No. 3053]. The Initial Motion to Compel was granted in part and denied in part at the hearing conducted by this Court on November 19, 2021 (the "**November 19th Hearing**").

[7]     The transcripts of Mr. Brinkman's deposition and Mr. Freedman's deposition are attached hereto as Exhibits A and B, respectively.

November 19th Hearing, where many of the Estate Parties' now-reasserted Discovery Requests were designated irrelevant.  In particular, the Court held that the Movants' negotiations and business judgment in selecting the Term Loan and the use of the proceeds from the sale of the Front Street Entities' real property are irrelevant to the Comfort Motion.[8]  The Court specifically noted that the Front Street Entities' sale proceeds may be relevant to the Debtors' adversary complaint, but are not relevant for the instant matter.[9]  The Court also held that, to the extent the Movants are required to show that they are obligated to pay certain professional fees, it is their choice how to demonstrate this.[10]  Nevertheless, the Estate Parties continue to seek further information regarding all of these topics.  Given its immateriality to the Comfort Motion, the Movants can only speculate that—beyond their desire to delay the Movants' resolution of their current liquidity crisis in order to gain an advantage in their litigation against the Movants—the Estate Parties' never-ending pursuit of such information relates to the Debtors' need to procure some sort of evidence to substantiate the claims made in the adversary complaint that gave rise to the sealed and (for the last five months) stayed adversary proceeding.

7.    The Movants have met and even exceeded their obligation to provide relevant information in connection with the Comfort Motion to the Estate Parties, making painstaking efforts to comply with the Court's ruling on November 19th.  In truth, any efforts to procure discovery beyond what has already been provided is intended solely to harass.  The Comfort

---

[8]    *See* Nov. 19th Hr'g Tr. 48:4-8 ("With respect to the inquiring into the negotiations with Gordon Brothers and what other options the movants had, I don't think that's relevant at all to the motion.  I don't think that questioning their business judgment is relevant to the motion.  They are not entities in bankruptcy.").

[9]    *See* Nov. 19th Hr'g Tr. 48:9-13 ("With respect to . . . the use of the proceeds of the sale of the Front Street properties, I similarly think that is irrelevant.  That may be relevant to the Debtors' adversary, but it is not relevant to the comfort/financing/relief from the stay motion.").

[10]    Nov. 19th Hr'g Tr. 47:23-48:3 ("[I]f [the Movants are] asserting that [they] need[] financing to pay [] bills, [they are] going to have to show that [they], or the Broad Street property companies are obligated, or were obligated to pay those.  **So I will leave it to the movants to figure out how they produce that.**") (emphasis added).

Motion is fully briefed,[11] and the time has come to decide such motion on its merits.  Accordingly, the Renewed Motion to Compel should be denied.

## RELEVANT BACKGROUND

8.      As set forth in the Reply, the Movants have produced sufficient documents relevant to, and even beyond the scope of, the Comfort Motion.  To be clear, the Movants are not seeking Court approval to encumber the MBNF Assets, but rather a comfort order to provide assurance to a third-party financing source so that the MBNF Assets can be preserved for the benefit of all of their stakeholders—whoever they turn out to be—and for the sake of public safety and the community immediately surrounding the MBNF Assets.  The issues relevant to the relief sought in the Comfort Motion are whether the MBNF Assets constitute the property of the Debtors' bankruptcy estates or, in the alternative, the possibility of prejudice to the Debtors if the stay is lifted, the hardship to the Movants by maintaining the stay, and the Movants' likelihood of success on the merits of their position that the MBNF Assets are not the property of the Debtors' bankruptcy estates.

9.      Almost immediately after the Movants filed the Comfort Motion, the Estate Parties served their Discovery Requests—and almost immediately upon such service, the Movants commenced producing relevant and responsive information.  However, the Estate Parties quickly resorted to adversarial measures, filing the Initial Motion to Compel.  Guided by the spirit of cooperation and a strong desire to obtain the relief they need as efficiently as possible, the Movants sought clarification of the extremely broad Discovery Requests, and additionally offered solutions such as having both Mr. Brinkman (whom the Movants identified as their most appropriate witness

---

[11]     Indeed, the Estate Parties submitted their fulsome objection to the Comfort Motion a full four days before deciding to file the Renewed Motion to Compel.

under Rule 30(b)(6)) and Mr. Freedman (who is not a Movant) sit for depositions.  The Movants

also agreed to continue the hearing on the Comfort Motion (which was initially scheduled for

November 19th) until December 1st, with the hope that this additional time would permit for

consensual resolution of the Estate Parties' concerns.  The Movants' overtures were unsuccessful.

At the November 19th Hearing, the Court granted in part and denied in part the Initial Motion to

Compel, and in doing so clarified the scope of permitted discovery.  In the intervening time, the

Movants have provided the Estate Parties with thousands of additional pages of documents,

produced their promised deponents for eight-and-a-half hours of deposition, and, most recently,

filed declarations by each Mr. Brinkman and Mr. Freedman.  Nevertheless, on the eve of the

Movants' deadline to file their Omnibus Reply in opposition to, among others, the Estate Parties'

fully baked objection to the Comfort Motion, the Estate Parties sought a second ruling on the same

Discovery Requests—and a further delay of the direly needed financing that the relief sought in

the Comfort Motion represents.

## OBJECTION

A.    **The Estate Parties Failed To Show Any Likelihood Of Success On The Merits Sufficient To Continue The December 1 Hearing, And Their Renewed Motion To Compel Accordingly Is Moot**

10.    Section 362(e)(1) of the Bankruptcy Code provides, in relevant part:

> Thirty days after a request under subsection (d) of the section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, **unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing** and determination under subsection (d) of this section.  [. . .]  The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section **if there is a reasonable likelihood**

> **that the party opposing relief from such stay will**
> **prevail** at the conclusion of such final hearing.

11 U.S.C. § 362(e)(1) (emphasis added).

11.     Although more than 30 days have passed since the Movants filed the Comfort Motion on October 29, 2021, the Movants voluntarily agreed to move the initial hearing on the Comfort Motion to December 1, 2021, thereby extending the applicable time period in which the Court must hold at least a preliminary hearing.  However, as further detailed in the Omnibus Reply, it would be prejudicial to the Movants to postpone the hearing on the Comfort Motion any further, and the Movants are unwilling to agree to any further extension.  Accordingly, lest the automatic stay terminate automatically by operation of section 362(e)(1)'s first sentence, the hearing on the Comfort Motion must proceed on December 1, 2021, as previously agreed, on at least a preliminary basis.

12.     In order for the decision emanating from the December 1st hearing to be considered only preliminary, rather than final, the Estate Parties must demonstrate a reasonable likelihood of success in opposing the Comfort Motion.  *See In re Pemberton Pub., Inc.*, 16 B.R. 275, 276 (Bankr. D. Mass. 1981) ("11 U.S.C. § 362 provides for dissolving the stay if the reasonable likelihood is that the party opposing relief will not prevail.  11 U.S.C. § 362(g) places the burden of proof on the debtor except as to equity.").  Yet, the Estate Parties did not even attempt to do so.  This failure to meet the clear standard set forth in the Bankruptcy Code limits the availability of preliminary relief at the December 1st hearing.

13.     Because the Court's decision on December 1st effectively must be rendered on a final basis, any additional discovery in connection with the Comfort Motion, such as that sought by the Renewed Motion to Compel, can have no effect on the outcome of the Comfort Motion.

The Renewed Motion to Compel accordingly should be denied because the relief sought therein is moot.

**B.    The Movants Have Provided Discovery Even Beyond What They Were Required To Produce And Should Not Be Compelled To Produce Information That The Court Has Already Ruled Is Irrelevant**

**1.    The Movants Have Shown That They Are Obligated To Make Payments To The Professionals**

14.    During the November 19th hearing, the Court instructed that "if [the Movants are] asserting that [they] need[] financing to pay [] bills, [they are] going to have to show that [they], or the Broad Street property companies are obligated, or were obligated to pay those.  **So I will leave it to the movants to figure out how they produce that**."  Nov. 19th Hr'g Tr. 47:23-48:3 (emphasis added).  The Movants took this ruling to heart and produced the following information to show that the obligations owed to the Professionals are valid and the Movants are required to pay them:

- The first and second lien notes, made by the Broad Street Entities in favor of Latham & Watkins LLP, Jigsaw Advisors, LLC, Paladin Healthcare Capital, LLC, and Sonsara Management Services, LLC (collectively, the "**Professionals**," and their fees, the "**Professional Fees**"), together with a schedule of advances by each of the lenders thereto evidencing the exact dollar amounts of the obligations secured by such notes as of their date of execution (attached hereto as Exhibits C and D, respectively);

- Paragraphs 15-16 and 18 of the Brinkman Declaration,[12] wherein Mr. Brinkman explains (a) the Movants' methodology for allocating responsibility for the Professionals' fees among the Movants and the non-Movant Front Street Entities and (b) the fact that any payment by the Movants allocable to the Front Street Entities in fact largely comprises repayment of the Movants' $14-plus million debt to Front Street I, which together with the other Front Street Entities now has insufficient liquidity to fund payment of the Movants' and the Front Street Entities' joint and several obligation to the Pension Fund (which, as noted

---

[12]    The "**Brinkman Declaration**" is the *Declaration of William R. Brinkman in Support of the Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets* [Docket No. 3187].

in the Omnibus Reply, is itself is on account of amounts that the Debtors owe but have failed to take responsibility for); and

- Deposition testimony elaborating on:

    a)                         REDACTED

REDACTED

REDACTED

16.     In spite of the Movants' presentation of evidence of the secured obligations owed to the Professionals as well as their detailed explanation of the allocation methodology that renders the Broad Street Entities responsible for full payment of such amounts, the Estate Parties have continued to push for additional discovery.          REDACTED

REDACTED

**2.    The Movants Have Produced More Than Sufficient Information Regarding Relevant Topics And Should Not Be Compelled To Produce The Irrelevant Information Sought By The Estate Parties**

18.    Laboring under a misconception that every single business decision should be documented in anticipation of possible future discovery requests, the Estate Parties discount the sworn testimony of both Mr. Freedman and Mr. Brinkman in hopes of showing that the Movants failed to comply with the Court's ruling.  To the contrary, the Movants have produced more than sufficient documents.  Such documents, along with Mr. Brinkman's and Mr. Freedman's deposition testimony, the Brinkman Declaration, and the Freedman Declaration,[13] adequately

---

[13]    The "**Freedman Declaration**" is the *Declaration of Joel L. Freedman in Support of the Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining That the Automatic Stay Does Not Apply to Their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for Them to Sell, Transfer, or Otherwise Encumber Such Assets* [Docket No. 3192] (attached hereto as Exhibit B).

address all issues relevant to the Comfort Motion and comply with the Court's ruling, as set forth in the following table.

| Category | Court Ordered Production | Additional Documents Produced After November 19 Ruling / Depositions / Declarations |
|---|---|---|
| 1 | Sources and uses of the funds from the Gordon Bros. financing | • A 6-page worksheet showing the proposed uses of the term loan and budgeted property expenses (attached hereto as Exhibit E)<br>• Monthly reports from property managers for each of the Broad Street Entities from March 2020 to October 2021, which reports show accrued expenses and payments made (an example of which is attached hereto as Exhibit F)<br>• A redacted copy of the pension settlement agreement (attached hereto as Exhibit G)<br>• Deposition of Mr. Brinkman |
| 2 | Backup for the $2.1M figure for postpetition prerejection expenses born by the MBNF PropCos, per Comfort Motion ¶ 5, and related inconsistencies between the motion and the document reflecting such expenses as they related to the Debtors' lease of the MBNF Non-Debtor Parties' real property | • A 14-page detailed worksheet showing amount paid and total obligations, including property related expenses, water charges, and utility bills (attached hereto as Exhibit H)<br>• Filings related to mechanics' liens (attached hereto as Exhibit I)<br>• Documents evidencing real estate taxes asserted by the City of Philadelphia (attached hereto as Exhibit J)<br>• Deposition of Mr. Brinkman |
| 3 | Information regarding the Movants' pension obligation, including the circumstances leading to it and whether others share this obligation | • A redacted copy of the pension settlement agreement, including a schedule setting forth payments made to date and future payment obligations on a quarterly basis from January 2022 to October 15, 2027 and showing who the obligors are (attached hereto as Exhibit G)<br>• Deposition of Mr. Brinkman<br>• Brinkman Declaration |
| 4 | Broad Street Entities' obligation to pay professional fees | • Global Intercompany Note dated May 29, 2019 (attached hereto as Exhibit K)<br>• Deposition of Mr. Brinkman<br>• Brinkman Declaration<br>• Deposition of Mr. Freedman<br>• Freedman Declaration |

REDACTED

REDACTED

REDACTED

REDACTED

## **CONCLUSION**

24.     The time is ripe for the Court to rule on the Comfort Motion.  Per section 362(e)(1)

of the Bankruptcy Code, the Movants are entitled to at least a preliminary ruling at the hearing set

for December 1st.  Per the Estate Parties' failure to include in the Renewed Motion to Compel any

showing of a likelihood of success in opposing the Comfort Motion, such ruling should be rendered

on a final basis.  This outcome is not only compelled by the Bankruptcy Code, it is the right result.

With the Omnibus Reply, the Brinkman Declaration, and the Freedman Declaration on file,

briefing on the Comfort Motion is now complete.  As the Court is aware, the Comfort Motion

seeks (i) a determination that the automatic stay does not apply to the MBNF Assets or (ii) in the

alternative, relief from the automatic stay to the extent the Court finds that the Debtors have an

interest in the MBNF Assets.  At the very least, no additional discovery is required as to the narrow

legal issue that the MBNF Assets do not constitute estate property.  And the Court could grant the

Comfort Motion on that basis alone.  Further, the Movants submit that no additional discovery is

appropriate or required as to (a) the prejudice to the Debtors' estate resulting from any stay relief,

(b) the hardships suffered by the Movants absent the requested relief, or (c) the Movants' likelihood of success in the adversary proceeding that the Estate Parties allege gives rise to their self-proclaimed interest in the Movants' real property, because the Movants have adequately demonstrated that the obligations for which the Term Loan proceeds are to be used are valid obligations of the Movants.  Thus, as explained in the Comfort Motion and the Omnibus Reply in support thereof, the Court may equally validly decide to grant the relief sought by the Comfort Motion on this alternative grounds.  Therefore, in the interest of conserving judicial resources and abrogating duplicative motion practice, the Movants urge the Court to consider the merits of the Comfort Motion and deny the Renewed Motion to Compel.

*[Signature page follows]*

Dated: November 30, 2021
       Wilmington, DE

/s/ Brendan J. Schlauch
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701
Email: collins@rlf.com
       merchant@rlf.com
       schlauch@rlf.com

- and -

Suzzanne Uhland (admitted *pro hac vice*)
Robert J. Malionek (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Alexandra M. Zablocki (admitted *pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
E-mail: suzzanne.uhland@lw.com
        robert.malionek@lw.com
        tj.li@lw.com
        alexandra.zablocki@lw.com

*Counsel for PAHH and the Broad Street Entities*

**<u>Exhibit A</u>**

**Page 1**

                    ***CONFIDENTIAL***

            UNITED STATES BANKRUPTCY COURT

                DISTRICT OF DELAWARE

--------------------------x
IN RE:                    : CHAPTER 11
                          : CASE NO. 19-11466 (MFW)
CENTER CITY HEALTHCARE,   : (Jointly Administered)
LLC d/b/a HAHNEMANN       :
UNIVERSITY HOSPITAL, ET   :
AL.,                      :
         Debtor(s).       :
--------------------------x

                    - - -
                November 23, 2021
                    - - -

        Videoteleconferenced Deposition of

WILLIAM R. BRINKMAN, held remotely via Zoom,

by agreement of all parties, beginning at

11:04 a.m., on the above date, before Denise

D. Bach, a Registered Professional Reporter,

Certified Court Reporter, License No.

XI0003990, and Notary Public.

                    RELIABLE
              1007 N. Orange Street
              Wilmington, DE 19801
                 (302) 654-8080

**Page 2**

1  APPEARANCES:

2      SAUL EWING ARNSTEIN & LEHR, LLP
3      BY: MARK MINUTI, ESQUIRE
       ADAM H. ISENBERG, ESQUIRE
       JEFFREY C. HAMPTON, ESQUIRE
4      Suite 2300
       1201 North Market Street
5      Wilmington, DE 19801
       302.421.6840
6      mark.minuti@saul.com
       adam.isenberg@saul.com
7      jeffrey.hampton@saul.com
       --Representing the Debtor(s)
8
       SILLS CUMMIS & GROSS, P.C.
9      BY: ANDREW H. SHERMAN, ESQUIRE
       BORIS I. MANKOVETSKIY, ESQUIRE
10     RACHEL E. BRENNAN, ESQUIRE
       The Legal Center, One Riverfront Plaza
11     1037 Raymond Blvd.
       Newark, NJ 07102
12     973.643.6982
       asherman@sillscummis.com
13     bmankovetskiy@sillscummis.com
       rbrennan@sillscummis.com
14     --Representing the Official Committee
        of Unsecured Creditors
15
       LATHAM & WATKINS, LLC
16     BY: ROBERT J. MALIONEK, ESQUIRE
       SUZANNE UHLAND, ESQUIRE
17     CHRISTOPHER JAMES STRATIGEAS, ESQUIRE
       ALEXANDRA ZABLOCKI, ESQUIRE
18     T.J. LI, ESQUIRE
       1271 Avenue of the Americas
19     New York, NY 10020
       212.906.1816
20     robert.malionek@lw.com
       suzanne.uhland@lw.com
21     christopher.stratigeas@lw.com
       alexandra.zablocki@lw.com
22     tj.li@lw.com
       --Representing the PAHH, Broad Street
23      Entities, et al.
24

**Page 3**

1  APPEARANCES: (Continued)

2      DLA PIPER LLP
3      BY: JOSEPH KERNEN, ESQUIRE
       Suite 5000, One Liberty Place
       1650 Market Street
4      Philadelphia, PA 19103
       215.656.3345
5      joseph.kernen@dlapiper.com
       --Representing Harrison Street Real
6       Estate, LLC, and its affiliates

7      KIRKLAND & ELLIS LLP
       BY: KENT J. HAYDEN, ESQUIRE
8      300 North LaSalle Street
       Chicago, IL 60654
9      312.862.2000
       kent.hayden@kirkland.com
10     --Representing Tenet

11     DOVEL & LUNER
       BY: JULIEN ADAMS, ESQUIRE
12     Suite 600
       201 Santa Monica Blvd.
13     Santa Monica, CA 90401
       310.656.7066
14     julien@dovel.com
       --Representing the MBNF Non-Debtor
15      Entities

16  ALSO PRESENT:

17     ALLEN WILEN
       JOHN DiNOME
18       - - -
       BRIAN COLLINS, EXHIBIT TECHNICIAN
19

20
21
22
23
24

**Page 4**

1                    I N D E X

2  WITNESS                              PAGE
   WILLIAM R. BRINKMAN
3  Mr. Minuti                            6
   Mr. Sherman                          173
4  Mr. Kernen                           185





























































































## **Exhibit B**

3

1           1

1    UNITED STATES BANKRUPTCY COURT

2      DISTRICT OF DELAWARE

3   ---------------------------x
    IN RE:            : CHAPTER 11
4                 : CASE NO. 19-11466 (MFW)
    CENTER CITY HEALTHCARE,   : (Jointly Administered)
5     LLC d/b/a HAHNEMANN      :
    UNIVERSITY HOSPITAL, ET  :
6     AL.,               :
         Debtor(s).      :
7   ---------------------------x

8              - - -
         November 23, 2021
9              - - -

10     Videoteleconferenced Deposition of

11   JOEL L. FREEDMAN, held remotely via Zoom, by

12   agreement of all parties, beginning at 5:03

13   p.m., on the above date, before Denise D.

14   Bach, a Registered Professional Reporter,

15   Certified Court Reporter, License No.

16   XI0003990, and Notary Public.

17

18

19

20

21            RELIABLE
        1007 N. Orange Street
22       Wilmington, DE 19801
        (302) 654-8080
23

24

---

2

1 APPEARANCES:

2     SAUL EWING ARNSTEIN & LEHR, LLP
3     BY: MARK MINUTI, ESQUIRE
    ADAM H. ISENBERG, ESQUIRE
    JEFFREY C. HAMPTON, ESQUIRE
4     Suite 2300
    1201 North Market Street
5     Wilmington, DE 19801
    302.421.6840
6     mark.minuti@saul.com
    adam.isenberg@saul.com
7     jeffrey.hampton@saul.com
    --Representing the Debtor(s)
8

9     SILLS CUMMIS & GROSS, P.C.
    BY: ANDREW H. SHERMAN, ESQUIRE
10    BORIS I. MANKOVETSKIY, ESQUIRE
    RACHEL E. BRENNAN, ESQUIRE
11    The Legal Center, One Riverfront Plaza
    1037 Raymond Blvd.
12    Newark, NJ 07102
    973.643.6982
13    asherman@sillscummis.com
    bmankovetskiy@sillscummis.com
14    rbrennan@sillscummis.com
    --Representing the Official Committee
15    of Unsecured Creditors

16    LATHAM & WATKINS, LLC
    BY: ROBERT J. MALIONEK, ESQUIRE
17    SUZANNE UHLAND, ESQUIRE
    CHRISTOPHER JAMES STRATIGEAS, ESQUIRE
    ALEXANDRA ZABLOCKI, ESQUIRE
18    T.J. LI, ESQUIRE
    1271 Avenue of the Americas
19    New York, NY 10020
    212.906.1816
20    robert.malionek@lw.com
    suzanne.uhland@lw.com
21    christopher.stratigeas@lw.com
    alexandra.zablocki@lw.com
22    tj.li@lw.com
    --Representing the PAHH, Broad Street
23    Entities, et al.

24

---

3

1 APPEARANCES: (Continued)

2     DLA PIPER LLP
3     BY: JOSEPH KERNEN, ESQUIRE
    Suite 5000, One Liberty Place
    1650 Market Street
4     Philadelphia, PA 19103
    215.656.3345
5     joseph.kernen@dlapiper.com
    --Representing Harrison Street Real
6    Estate, LLC, and its affiliates

7     KIRKLAND & ELLIS LLP
8     BY: KENT J. HAYDEN, ESQUIRE
    300 North LaSalle Street
    Chicago, IL 60654
9     312.862.2000
    kent.hayden@kirkland.com
10    --Representing Tenet

11    DOVEL & LUNER LLP
    BY: JULIEN ADAMS, ESQUIRE
12    Suite 600
    201 Santa Monica Blvd.
13    Santa Monica, CA 90401
    310.656.7066
14    julien@dovel.com
    --Representing the MBNF Non-Debtor
15    Entities

16 ALSO PRESENT:

17    ALLEN WILEN
    JOHN DiNOME
18       - - -
    BRIAN COLLINS, EXHIBIT TECHNICIAN
19

20
21
22
23
24

---

4

1         I N D E X

2 WITNESS            PAGE
    JOEL L. FREEDMAN
3    Mr. Minuti         6

4

5

6

7

8

9

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24























































## **Exhibit C**

**BROAD STREET HEALTHCARE PROPERTIES, LLC**
**BROAD STREET HEALTHCARE PROPERTIES II, LLC**
**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

**AMENDED AND RESTATED**
**DEMAND AND SECURED PROMISSORY NOTE**

$2,500,000.00                                                                    El Segundo, California

October 28, 2021

   **FOR VALUE RECEIVED**, **BROAD STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company ("**Broad Street I**"), **BROAD STREET HEALTHCARE PROPERTIES II, LLC**, a Delaware limited liability company ("**Broad Street II**"), **BROAD STREET HEALTHCARE PROPERTIES III, LLC**, a Delaware limited liability company ("**Broad Street III**" and collectively with Broad Street I and Broad Street II, "**Maker**"), unconditionally, jointly and severally, promise to pay to the Persons (as defined in Section 11) named on the signature pages hereto (each, a "**Lender**" and collectively, the "**Lenders**"), in the manner and at the place hereinafter provided, the lesser of (a) TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) and (b) the unpaid Principal Amount of all Advances (each as defined below), together with any accrued and unpaid interest thereon, on demand, but in any event no later than January 31, 2022 (the "**Maturity Date**").

   This Amended and Restated Demand and Secured Promissory Note (this "**Note**") amends and restates in its entirety the Demand and Secured Promissory Note made by Maker in favor of Joel Freedman, as individual, as payee, dated as of January 8, 2020 in the original principal amount of $2,500,000, as amended or otherwise modified by Note Modification Agreement and Allonge effective as of January 30, 2021, and as assigned by Joel Freedman to Paladin Healthcare Capital, LLC, a Delaware limited liability company ("**Paladin**") as of the date hereof (as so amended, modified and assigned, the "**Existing Note**"), and this Note is not intended to constitute and does not constitute an interruption, suspension of continuity, satisfaction, discharge of prior duties, novation or termination of the liens, security interests, indebtedness, loans, liabilities, expenses or obligations under the Existing Note. Maker acknowledges and agrees that the Existing Note and security instruments entered into pursuant thereto have continued to secure the indebtedness, loans, liabilities, expenses, and obligations under the Existing Note since the date of execution of the Existing Note, and that this Note is entitled to all rights and benefits originally pertaining to the Existing Note.

   1.  **Advances**.  This Note evidences the advances made by Lenders to Maker, another person or entity on behalf of Maker or designated by Maker, on or about the date hereof (the "**Advances**" and each, an "**Advance**"), the principal amount of which, the date on which such advances were made and the Lender who made such advance(s) are set forth on Schedule A attached hereto.

1

2.    **Interest**.  Interest on the unpaid principal amount of all Advances (including all PIK Amounts (as defined below) added thereto, the "**Principal Amount**") shall accrue at a rate per annum equal to eight and one half percent (8.5%) commencing, with respect to each Advance, on the date such Advance was made; <u>provided</u> that any Principal Amount not paid when due and, to the extent permitted by applicable law, any interest not paid when due, in each case whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (both before as well as after judgment), shall bear interest payable upon demand at a rate that is five percent (5%) per annum in excess of the rate of interest otherwise payable under this Note.  Interest shall be (i) calculated on the basis of a 360-day year, for the actual number of days elapsed in the relevant period, and (ii) payable quarterly, in arrears, on the first Business Day of each calendar quarter through and including the Maturity Date, and on the Maturity Date, whether by acceleration or otherwise (each, an "**Interest Payment Date**").  Interest on the Principal Amount that shall have accrued and shall remain unpaid as of any Interest Payment Date (for any Interest Payment Date, a "**PIK Amount**") shall be paid on such Interest Payment Date by addition of such PIK Amount to the Principal Amount.  At the option of Agent, the PIK Amounts added to the Principal Amount shall be evidenced by a note (a "**PIK Note**") in form and substance satisfactory to Agent, <u>provided</u>, however, that such PIK Note shall not be necessary to evidence such portion of the Principal Amount nor shall the absence of such PIK Note relieve Maker of its obligation to pay any portion of the Principal Amount to Lenders.  Notwithstanding any other provision of this Note and the addition of any PIK Amount to the Principal Amount, Maker may, in its sole discretion, pay any PIK Amount in cash on any Interest Payment Date without any premium or penalty.  Maker shall give written notice to Agent of any such payment of a PIK Amount in cash not less than one Business Day prior to the applicable Interest Payment Date.

3.    **Payments.**  All payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America in same day funds at the location of Agent as Agent may direct.  Whenever any payment on this Note is stated to be due on a day that is not a Business Day, such payment shall instead be made on the next Business Day, and such extension of time shall be included in the computation of interest payable on this Note.  Each payment or prepayment made hereunder shall be credited first to interest then due and the remainder of such payment shall be credited to principal, and interest shall thereupon cease to accrue upon the principal so credited.  The Agent agrees  that before disposing of this Note or any part hereof it will make a notation hereon of all principal payments previously made hereunder and of the date to which interest hereon has been paid; <u>provided</u>, however, that the failure to make a notation of any payment made on this Note shall not limit or otherwise affect the obligation of Maker hereunder with respect to payments of principal or interest on this Note.

4.    **Prepayments.**

(a) <u>Optional</u>.  Maker shall have the right at any time and from time to time to prepay the Principal Amount in whole or in part, without premium or penalty.  Any prepayment hereunder shall be accompanied by interest on the Principal Amount being prepaid to the date of prepayment.

- 2 -

MBNF002637

(b) <u>Mandatory</u>.  If Maker sells, transfers or otherwise disposes of any Collateral which results in the realization by Maker of any cash and cash equivalents received in connection with such transaction (including those received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise, but only as and when so received), Maker shall prepay an aggregate principal amount of Advances equal to such cash and cash equivalents less reasonable and customary out-of-pocket expenses incurred by Maker in connection with such transaction, within two Business Days from receipt thereof by Maker.

(c) Amounts prepaid under this Note pursuant to this Section 4 may not be reborrowed.

5.    **Application and Sharing of Payments, Etc**.  Any amounts received on account of the Obligations shall be applied by Agent to payment of the Obligations payable to the Lenders, ratably among them in proportion to the respective amounts of Advances, <u>first</u> to any asserted but unpaid indemnities, expenses and other amounts payable under this Note and the Mortgage, <u>second</u> to unpaid interest and <u>then</u> to unpaid principal amount.  If any Lender shall obtain any payment (whether voluntary, involuntary, through the exercise of any right of set-off, or otherwise) on account of the Advances owing to it in excess of its ratable share of payments on account of the Advances obtained by all the Lenders, then such Lender shall forthwith purchase from the other Lenders such participations in the Advances owing to them as shall be necessary to cause such purchasing Lender to share the excess payment ratably with each of them, provided, however, that if all or any portion of such excess payment is thereafter recovered from such purchasing Lender, such purchase from each Lender shall be rescinded and such Lender shall repay to the purchasing Lender the purchase price to the extent of such recovery together with an amount equal to such Lender's ratable share (according to the proportion of (i) the amount of such Lender's required repayment to (ii) the total amount so recovered from the purchasing Lender) of any interest or other amount paid or payable by the purchasing Lender in respect of the total amount so recovered.  The Maker agrees that any Lender so purchasing a participation from another Lender pursuant to this Section 5 or any other provision of this Note may, to the fullest extent permitted by law, exercise all of its rights of payment (including the right to set-off) with respect to such participation as fully as if such Lender were the direct creditor of the Maker in the amount of such participation.

6.    **Covenants**.  Maker covenants and agrees that until this Note is paid in full it will:

(a) promptly provide to Agent and all Lenders all financial and operational information with respect to Maker as Agent or any Lender may reasonably request;

(b) promptly after the occurrence of an Event of Default or an event, act or condition that, with notice or lapse of time or both, would constitute an Event of Default, provide Agent, for distribution to the Lenders, with a certificate of the Maker specifying the nature thereof and Maker's proposed response thereto;

- 3 -

(c) without Agent's prior written consent thereto, after consultation with all Lenders, not create, assume, guaranty, incur or otherwise become or remain directly or indirectly liable with respect to any indebtedness for borrowed money, except for any such indebtedness created or incurred pursuant to the documentation entered into prior to or on the date hereof the existence of which has been disclosed to the Lenders in writing;

(d) without Agent's prior written consent thereto, after consultation with all Lenders, not merge or consolidate with any other Person, or sell, lease or otherwise dispose of all or any part of its property or assets to any other Person;

(e) without Agent's prior written consent thereto, after consultation with all Lenders, not create, incur, assume or suffer to exist, directly or indirectly, any lien, security interest, mortgage, deed of trust, pledge, hypothecation, assignment, charge, encumbrance, easement, or other security arrangement (each of the foregoing, a "**Lien**") on or with respect to any of its property or assets, whether now owned or hereafter acquired, or any income or profits therefrom, except for any Lien created or incurred pursuant to the documentation entered into prior to or on the date hereof the existence of which has been disclosed to the Lenders in writing;

(f) without Agent's prior written consent thereto, after consultation with all Lenders, not pay, redeem, defease, purchase or otherwise acquire any indebtedness that ranks junior in priority or is subordinated to the obligations evidenced by this Note, except for any such indebtedness created or incurred pursuant to the documentation entered into prior to or on the date hereof the existence of which has been disclosed to the Lenders in writing that has been subordinated to the indebtedness outstanding pursuant to this Note on the terms satisfactory to the Agent;

(g) without Agent's prior written consent thereto, after consultation with all Lenders, not declare or pay any dividend or make any other payment or distribution on account of, or purchase or redeem, any equity interests issued by Maker, including, without limitation, any outstanding warrants, options or other rights to acquire equity interests of Maker, now or hereafter outstanding; and

(h) without Agent's prior written consent thereto, after consultation with all Lenders, not use cash, cash equivalents or any other assets of Maker for any purpose other than the payment of reasonable and customary operating expenses incurred in the ordinary course of Maker consistent with past practices.

7. **Representations and Warranties.** Maker hereby represents and warrants to Agent and each Lender that:

(a) it is a duly organized and validly existing limited liability company in good standing under the laws of the jurisdiction of its organization and has the power and authority under its limited liability company agreement to own and operate its properties, to transact the business in which it is now engaged and to execute and deliver this Note and the Mortgage (as defined in Section 14);

- 4 -

(b) each of this Note and the Mortgage constitutes the duly authorized, legally valid and binding obligation of Maker, enforceable against Maker in accordance with its respective terms, subject to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and general principles of equity;

(c) all consents and grants of approval required to have been granted by any Person in connection with the execution, delivery and performance of this Note and the Mortgage have been granted;

(d) the execution, delivery and performance by Maker of this Note and the Mortgage do not and will not (i) violate any law, governmental rule or regulation, court order or agreement to which it is subject or by which its properties are bound or the organizational documents of Maker or (ii) contravene, result in a breach of, or violate any indenture, mortgage, deed of trust, lease, agreement or other instrument to which Maker is a party or by which Maker or any of its property or assets is bound;

(e) other than as disclosed to Agent and each Lender prior to the date hereof, there is no action, suit, proceeding or governmental investigation pending or, to the knowledge of Maker, threatened against Maker or any of its assets which, if adversely determined, would have a material adverse effect on the business, operations, properties, assets, condition (financial or otherwise) or prospects of Maker, or the ability of Maker to comply with its obligations hereunder;

(f) the proceeds of the Advances evidenced by this Note shall be used by Maker solely to make advances to Maker's affiliates in Maker's sole and absolute discretion, to refinance indebtedness outstanding under the Existing Note, and for working capital purposes; and

(g) no Lien exists on any property or asset of Maker as of the date hereof and the execution, delivery, and performance by Maker of this Note and the Mortgage do not and will not result in or require the creation or imposition of any Lien of any nature whatsoever upon any of its property or assets except (i) in favor of Agent for the ratable benefit of the Lenders pursuant to this Note and the Mortgage, (ii) in favor of Paladin, as agent for the ratable benefit of certain lenders pursuant to the Demand and Secured Promissory Note entered into by Maker as of the date hereof in the original principal amount of $3,000,000 and the mortgages entered into by Maker in connection with such note on or about the date hereof, and (iii) in favor of Front Street Healthcare Properties, LLC pursuant to the Demand and Secured Promissory Note entered into by Maker as of February 12, 2020 in the original principal amount of $10,000,000, as modified by those certain note modification agreements and allonges dated as of June 1, 2020 and January 30, 2021.

8. **Grant of Security**.

(a) Maker hereby grants, pledges, assigns, transfers, hypothecates and sets over to Agent, for the ratable benefit of the Lenders, a valid, continuing first priority security interest in all of Maker's right, title and interest in the Collateral (as described below), in each case

- 5 -

whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located, in order to secure prompt, full, faithful and timely payment and performance of the obligations under this Note and the Mortgage, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder and thereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Maker, would accrue on such obligations, whether or not a claim is allowed against Maker for such amounts in the related bankruptcy proceeding) (collectively, the "**Obligations**"), whether at stated maturity, acceleration or otherwise, together with all extensions or renewals thereof, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, whether or not jointly owned with others, and whether or not such Obligations are from time to time decreased or extinguished and later increased, created or incurred, and all or any portion of such Obligations that are paid, to the extent all or any part of such payment is avoided or recovered directly or indirectly from Agent or any Lender as a preference, fraudulent transfer or otherwise. "Collateral" shall include all of Maker's interests in all of the following types of personal property, wherever located and whether now owned or hereafter acquired (collectively, the "Collateral"):

     (i)     all Accounts;

     (ii)     all Chattel Paper;

     (iii)     all Money and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

     (iv)     all Documents;

     (v)     all General Intangibles (including (i) patents, trademarks, service marks, copyrights, and other intellectual property and (ii) all contracts, contract rights, and payments under any contracts, including contracts for the sale of Maker's property), Payment Intangibles and Software;

     (vi)     all Goods, including Inventory, Equipment and Fixtures;

     (vii)     all Instruments;

     (viii)     all Investment Property;

     (ix)     all Letter-of-Credit Rights and other Supporting Obligations;

     (x)     all Records;

     (xi)     all Commercial Tort Claims (including those certain Commercial Tort Claims set forth on Schedule B attached hereto); and

     (xii)     all Proceeds and Accessions with respect to any of the foregoing Collateral.

- 6 -

MBNF002641

Each foregoing category of Collateral set forth above shall have the meaning set forth in Division 9 of the Pennsylvania Uniform Commercial Code in effect on the date hereof (the "**UCC**").

(b)    Maker agrees that from time to time, at the expense of Maker, Maker will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Agent may request, in order to perfect any security interest granted or purported to be granted hereby or to enable Agent to exercise and enforce its and Lenders' rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, Maker will:  (i) execute (if necessary) and file such financing or continuation statements, or amendments thereto, and (ii) execute and deliver such further instruments and take such further action as Agent may reasonably request to effect the intent and purposes hereof, to perfect and continue perfected Agent's security interests in the Collateral.  Maker hereby authorizes Agent to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral (including any financing statement indicating that it covers "all assets" or "all personal property" of Maker).

(c)    Maker hereby irrevocably appoints Agent as Maker's attorney-in-fact, effective upon the occurrence and during the continuance of an Event of Default hereunder, with full authority in the place and stead of Maker and in the name of Maker, Agent or otherwise, from time to time in Agent's discretion, to take any action and to execute any instrument that Agent may deem necessary or advisable to accomplish the purposes of this Note.

(d)    The powers conferred on Agent hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers.  Except for the exercise of reasonable care in the custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Agent shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.  Agent shall be deemed to have exercised reasonable care in the custody and preservation of Collateral in its possession if such Collateral is accorded treatment substantially equal to that which Agent accords its own property.

(e)    Upon the unconditional satisfaction of the Obligations in full, (i) the security interest in the Collateral in favor of Agent, for the ratable benefit of the Lenders, granted hereby shall automatically terminate without any further action on the part of Maker, Agent or any Lender, and (ii) Maker and its designees shall be authorized to file such terminations of such security interest Maker reasonably deems necessary, and Agent shall execute and deliver, at Maker's expense, such further evidence of the termination or release of such security interest as Maker may reasonably request.

9.    **Events of Default.**  The occurrence of any of the following events shall constitute an "**Event of Default**":

- 7 -

(a)  failure of Maker to pay any principal or interest under this Note when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, or failure of Maker to pay any other amount due under this Note within five days after the date due; or

(b)  failure of Maker to pay, or the default in the payment of, any amount due under or in respect of any promissory note, indenture or other agreement or instrument relating to any indebtedness owing by Maker, to which Maker is a party or by which Maker or any of its property is bound beyond any grace period provided; or the occurrence of any other event or circumstance that, with notice or lapse of time or both, would permit acceleration of such indebtedness; or

(c)  failure of Maker to perform or observe any other term, covenant or agreement to be performed or observed by it pursuant to this Note or the Mortgage; or

(d)  any representation or warranty made by Maker to Agent or any Lender in connection with this Note or the Mortgage shall prove to have been false in any material respect when made; or

(e)  any order, judgment or decree shall be entered against Maker; or

(f)  suspension of the usual business activities of Maker or the complete or partial liquidation of Maker's business; or

(g)  (i) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of Maker in an involuntary case under Title 11 of the United States Code entitled "Bankruptcy" (as now and hereinafter in effect, or any successor thereto, the "**Bankruptcy Code**") or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, which decree or order is not stayed; or any other similar relief shall be granted under any applicable federal or state law; or (ii) an involuntary case shall be commenced against Maker under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or a decree or order of a court having jurisdiction in the premises for the appointment of a receiver, liquidator, sequestrator, trustee, custodian or other officer having similar powers over Maker, or over all or a substantial part of its property shall have been entered; or the involuntary appointment of an interim receiver, trustee or other custodian of Maker for all or a substantial part of its property shall have occurred; or a warrant of attachment, execution or similar process shall have been issued against any substantial part of the property of Maker, and, in the case of any event described in this clause (ii), such event shall have continued for 60 days unless dismissed, bonded or discharged; or

(h)  an order for relief shall be entered with respect to Maker or Maker shall commence a voluntary case under the Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case, or to the conversion of an involuntary case to a voluntary case, under any such law, or shall consent to the appointment of or taking possession by a receiver, trustee or other custodian for all or a substantial part

- 8 -

of its property; or Maker shall make an assignment for the benefit of creditors; or Maker shall be unable or fail, or shall admit in writing its inability, to pay its debts as such debts become due; or the governing body or equityholders of Maker shall adopt any resolution or otherwise authorize action to approve any of the foregoing; or

(i)  Maker shall challenge, or institute any proceedings to challenge, the validity, binding effect or enforceability of this Note or the Mortgage or any endorsement of this Note, the Mortgage or any other obligation to Agent or any Lender; or

(j)  any provision of this Note or the Mortgage shall cease to be in full force or effect or shall be declared to be null or void or otherwise unenforceable in whole or in part; or Agent shall not have or shall cease to have a valid and perfected first priority security interest in the collateral described in the Mortgage or in the Collateral; or

(k)  a Change of Control (as defined below) shall occur with respect to Maker, unless the Agent shall have expressly consented to such Change of Control in writing, after consultation with all Lenders.  A "**Change of Control**" shall mean any event or circumstance as a result of which (i) any "Person" or "group" (as such terms are defined in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934 (as in effect on the date hereof, the "**Exchange Act**")), other than Agent, is or becomes the "beneficial owner" (as defined in Rules 13(d)-3 and 13(d)-5 under the Exchange Act), directly or indirectly, of ten percent (10%) or more on a fully diluted basis of the then outstanding voting equity interest of Maker, (ii) the manager of Maker shall cease to consist of the same manager on the date hereof, or (iii) Maker merges or consolidates with, or sells all or substantially all of its assets to, any other Person.

10.    **Remedies.**

(a)    Upon the occurrence of any Event of Default specified in Section 9(g) or 9(h) above, the Principal Amount together with accrued interest thereon shall become immediately due and payable, without presentment, demand, notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker).  Upon the occurrence and during the continuance of any other Event of Default, Agent shall at the request, or may with the consent, of the Majority Lenders (as defined in Section 11), by written notice to Maker, declare the Principal Amount together with accrued interest thereon to be due and payable, and the Principal Amount together with such interest shall thereupon immediately become due and payable without presentment, further notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker).  In either case Agent shall at the request, or may with the consent, of the Majority Lenders, in addition to exercising any other rights and remedies it may have, exercise those rights of set off provided for in Section 13(c).  Demand for payment may be made whether or not any of the foregoing events shall have occurred if the Principal Amount is payable on demand.

(b)    In addition to all other rights and remedies provided for herein or otherwise available to it, Agent may exercise in respect of the Collateral, all the rights

- 9 -

MBNF002644

and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral), and also may (i) require Maker to, and Maker hereby agrees that it will at its expense and upon request of Agent forthwith, assemble all or part of the Collateral as directed by Agent and make it available to Agent at a place to be designated by Agent that is reasonably convenient to both parties, (ii) subject to the rights of third parties, enter onto the property where any Collateral is located and take possession thereof with or without judicial process, (iii) prior to the disposition of the Collateral, store, process, repair or recondition the Collateral or otherwise prepare the Collateral for disposition in any manner to the extent the Agent deems appropriate, (iv) subject to the rights of third parties, take possession of Maker's premises or place custodians in exclusive control thereof, remain on such premises and use the same and any of Maker's equipment for the purpose of completing any work in process, taking any actions described in the preceding clause (iii) and collecting any Obligation, and (v) sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Agent's or Lender's offices or elsewhere, for cash, on credit or for future delivery, at such time or times and at such price or prices and upon such other terms as Agent may deem commercially reasonable.  Agent may be the purchaser of any or all of the Collateral at any such sale and Agent, as agent for and representative of Lenders (but not any Lender or Lenders in its or their respective individual capacities unless Majority Lenders shall otherwise agree in writing), shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such sale, to use and apply any of the Obligations as a credit on account of the purchase price for any Collateral payable by Agent at such sale.  Maker hereby waives any claims against Agent and each Lender arising by reason of the fact that the price at which any Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale, even if Agent accepts the first offer received and does not offer such Collateral to more than one offeree.  If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Obligations, Maker shall be liable for the deficiency and the reasonable fees of any attorneys employed by Agent to collect such deficiency.

11.    **Definitions**.  The following terms used in this Note shall have the following meanings (and any of such terms may, unless the context otherwise requires, be used in the singular or the plural depending on the reference):

"**Agent**" means Paladin, as administrative agent for the Lenders, appointed and authorized by the Lenders pursuant to Section 12 of this Note.

"**Business Day**" means any day other than a Saturday, Sunday or legal holiday under the laws of the State of California, the Commonwealth of Pennsylvania or any other day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"**Event of Default**" means any of the events set forth in Section 9.

- 10 -

"**Majority Lenders**" means, as of any date of determination, Lenders owning at least 51% of the then aggregate unpaid principal amount of the Advances.

"**Person**" means any individual, partnership, limited liability company, joint venture, firm, corporation, association, bank, trust or other enterprise, whether or not a legal entity, or any government or political subdivision or any agency, department or instrumentality thereof.

12.    **The Agent.**

(a)  Each Lender hereby appoints and authorizes the Agent to take such action as agent on its behalf and to exercise such powers under this Note and the Mortgage as are delegated to the Agent by the terms hereof and thereof, together with such powers as are reasonably incidental thereto. As to any matters not expressly provided for by this Note or the Mortgage, the Agent shall not be required to exercise any discretion or take any action, but shall be required to act or to refrain from acting (and shall be fully protected in so acting or refraining from acting) upon the instructions of the Majority Lenders, and such instructions shall be binding upon all Lenders and all holders of this Note; provided, however, that the Agent shall not be required to take any action which exposes the Agent to personal liability or which is contrary to this Note, the Mortgage or applicable law. The Agent agrees to give to each Lender prompt notice of each notice given to it by the Maker pursuant to the terms of this Note.

(b)  The Agent shall not liable for any action taken or omitted to be taken by it or them under or in connection with this Note, except for its or their own gross negligence or willful misconduct. Without limitation of the generality of the foregoing, the Agent: (i) may consult with legal counsel (including counsel for the Maker), independent public accountants and other experts selected by it and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel, accountants or experts; (ii) makes no warranty or representation to any Lender and shall not be responsible to any Lender for any statements, warranties or representations made in or in connection with this Note or the Mortgage; (iii) shall not have any duty to ascertain or to inquire as to the performance or observance of any of the terms, covenants or conditions of this Note or the Mortgage on the part of the Maker or to inspect the property (including the books and records) of the Maker; (iv) shall not be responsible to any Lender for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of this Note, the Mortgage or any other instrument or document furnished pursuant hereto; and (v) shall incur no liability under or in respect of this Note or the Mortgage by acting upon any notice, consent, certificate or other instrument or writing (which may be by electronic mail) believed by it to be genuine and signed or sent by the proper party or parties.

(c)  With respect to its Advance(s), the Advance or Advances made by it, Paladin shall have the same rights and powers under this Note and the Mortgage as any other Lender and may exercise the same as though it were not the Agent; and the

- 11 -

MBNF002646

term "Lender" or "Lenders" shall, unless otherwise expressly indicated, include Paladin in its individual capacity.

(d) Each Lender acknowledges that it has, independently and without reliance upon the Agent or any other Lender and based on the documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Note. Each Lender also acknowledges that it will, independently and without reliance upon the Agent or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Note.

(e) The Agent may resign at any time by giving written notice thereof to the Lenders and the Maker and may be removed at any time with cause by the Majority Lenders after written notice to Agent describing such cause and to the extent curable, providing for a reasonable opportunity to cure. Upon any such resignation or removal, the Majority Lenders shall have the right to appoint a successor Agent. Upon the acceptance of any appointment as Agent hereunder by a successor Agent, such successor Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Agent, and the retiring Agent shall be discharged from its duties and obligations under this Note and the Mortgage. After any retiring Agent's resignation or removal hereunder as Agent, the provisions of this Section 12 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Agent under this Note and the Mortgage.

13.     **Miscellaneous**.

(a)     Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including telefacsimile communication and electronic communications via .PDF) and mailed, telecopied, or delivered at its address specified under its signature below; or in each case at such other address as shall be designated by Agent, any Lender or Maker. All such notices and communications shall, when mailed, telecopied or sent by overnight courier, be effective when deposited in the mails, delivered to the overnight courier, as the case may be, or sent by telecopier, or when received if sent by electronic mail.

(b)     Maker agrees to indemnify Agent and each Lender against any losses, claims, damages and liabilities and related expenses, including counsel fees and expenses, incurred by Agent or any Lender arising out of or in connection with or as a result of the transactions contemplated by this Note. In particular, Maker agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, of Agent and each Lender incurred in connection with the preparation, execution, delivery, enforcement, collection and administration of this Note, the documents and instruments referred to herein and any amendments, waivers or consents relating hereto or thereto. In addition, Maker agrees to pay, and to save Agent and each Lender harmless from all liability for, any stamp or other documentary taxes which may be payable in connection with Maker's execution or delivery of this Note and the Mortgage.

- 12 -

MBNF002647

(c)     In addition to and not in limitation of any rights of set off that Agent or any Lender may now or hereafter have under applicable law, Agent or such Lender, upon the occurrence of any Event of Default, is hereby authorized at any time or from time to time, without notice of any kind to Maker or to any other Person, any such notice being hereby expressly waived, to set off and to appropriate and apply any and all deposits (general or special, time or demand, provisional or final) and any other indebtedness at any time held or owing by Agent or such Lender or their respective affiliates to or for the credit or the account of Maker against and on account of the obligations and liabilities of Maker to Agent and/or any Lender under this Note and all other claims of any nature or description arising out of or connected with this Note, irrespective of whether or not Agent or any Lender shall have made any demand hereunder and although said obligations, liabilities or claims, or any of them, shall be contingent or unmatured.

(d)     No failure or delay on the part of Agent, any Lender or any other holder of this Note to exercise any right, power or privilege under this Note and no course of dealing between Maker, on the one hand, and Agent or any Lender, on the other hand, shall impair such right, power or privilege or operate as a waiver of any default or an acquiescence therein, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies expressly provided in this Note are cumulative to, and not exclusive of, any rights or remedies that Agent or any Lender would otherwise have.  No notice to or demand on Maker in any case shall entitle Maker to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of Agent or any Lender to any other or further action in any circumstances without notice or demand.

(e)     Maker and any endorser of this Note hereby consent to renewals and extensions of time at or after the maturity hereof, without notice, and hereby waive diligence, presentment, protest, demand and notice of every kind and, to the full extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.

(f)     **THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF MAKER AND AGENT AND EACH LENDER HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.**

(g)     **ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST MAKER ARISING OUT OF OR RELATING TO THIS NOTE MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE COMMONWEALTH OF PENNSYLVANIA OR THE STATE OF NEW YORK, AND BY EXECUTION AND DELIVERY OF THIS NOTE MAKER ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE**

- 13 -

CONFIDENTIAL

MBNF002648

**NONEXCLUSIVE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS NOTE.** Maker hereby agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested, to Maker at its address set forth below its signature hereto, such service being hereby acknowledged by Maker to be sufficient for personal jurisdiction in any action against Maker in any such court and to be otherwise effective and binding service in every respect. Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Agent or any Lender to bring proceedings or enforce any award or judgment or exercise any rights against Maker or against the property of Maker in the courts of any other county, state or other foreign or domestic jurisdiction.

(h)    **MAKER, AGENT AND EACH LENDER HEREBY IRREVOCABLY AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS NOTE AND THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED.** The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation contract claims, tort claims, breach of duty claims and all other common law and statutory claims. Each of Maker, Agent and the Lenders (i) acknowledges that this waiver is a material inducement to enter into a business relationship, that each has already relied on this waiver in entering into this relationship, and that each will continue to rely on this waiver in their related future dealings and (ii) further warrants and represents that each has reviewed this waiver with its legal counsel and that each knowingly and voluntarily waives its jury trial rights following consultation with legal counsel. **THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS OF THIS NOTE.** In the event of litigation, this provision may be filed as a written consent to a trial by the court.

(i)    Maker hereby waives the benefit of any statute or rule of law or judicial decision, which would otherwise require that the provisions of this Note be construed or interpreted most strongly against the party responsible for the drafting thereof.

(j)    This Note shall be binding upon Maker and its successors and assigns, and shall inure to the benefit of Agent, each Lender and their respective successors and assigns, and may not be assigned by Agent or any Lender without the prior written consent of Maker; any such purported assignment without such consent being null and void. Maker may not assign any of its obligations under this Note without the

- 14 -

prior written consent of Agent and each Lender, any such purported assignment without such consent being null and void.

(k)    Maker acknowledges that this Note and Maker's obligations under this Note to pay the principal of and interest on this Note at the place, at the respective times, and in the currency prescribed herein, are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker under this Note. This Note sets forth the entire agreement and understanding of Agent, each Lender and Maker with respect to the subject matter hereof, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Note or the obligations of Maker hereunder or otherwise in any action or proceeding brought by Agent or any Lender to collect this Note, or any portion thereof.  Maker acknowledges that no oral or other agreements, conditions, promises, understandings, representations or warranties exist with respect to this Note or with respect to the obligations of Maker under this Note, except those specifically set forth in this Note.

(l)    The headings and captions of the numbered Sections of this Note are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof. All personal pronouns used in this Note shall include the other genders, whether used in the masculine, feminine or neuter gender, and the singular shall include the plural and vice versa, whenever and as often as may be appropriate.

(m)    This Note may not be modified, amended, changed or terminated orally, except by an agreement in writing signed by Maker, on the one hand, and Agent and each Lender, on the other hand. No waiver of any term, covenant or provision of this Note shall be effective unless given in writing by Agent and each Lender and, if so given by Agent and each Lender, shall only be effective in the specific instance in which given.

(n)    Each entity comprising Maker is accepting joint and several liability hereunder in consideration of the financial accommodations to be provided by Agent and each Lender evidenced by this Note, for the mutual benefit, directly and indirectly, of each entity comprising Maker and in consideration of the undertakings of the other entities comprising Maker to accept joint and several liability for the obligations evidenced by this Note.  If and to the extent that any entity comprising Maker shall fail to make any payment with respect to any of the obligations evidenced by this Note as and when due or to perform any such obligations in accordance with the terms thereof, then in each such event each other entity comprising Maker will make such payment with respect to, or perform, such obligations until such time as all of the obligations evidenced by this Note are paid in full.  The obligations of each entity comprising Maker under the provisions of this Section 13(n) constitute the absolute and unconditional, full recourse obligations of each entity comprising Maker

CONFIDENTIAL

enforceable against each entity comprising Maker to the full extent of its properties and assets, irrespective of the validity, regularity or enforceability of the provisions of this Note or any other circumstances whatsoever.  Except as otherwise expressly provided in this Note, each entity comprising Maker hereby waives notice of acceptance of its joint and several liability, notice of any Advances, notice of the occurrence of any Event of Default, or of any demand for any payment under this Note, notice of any action at any time taken or omitted by Agent or any Lender under or in respect of any of the obligations evidenced by this Note, any requirement of diligence or to mitigate damages and, generally, to the extent permitted by applicable law, all demands, notices and other formalities of every kind in connection with this Note.

(o)     The obligation of each Lender hereunder is several, and no Lender shall be responsible for the obligation of any other Lender hereunder.  Nothing contained in this Note and no action taken by the Lenders pursuant hereto shall be deemed to constitute the Lenders to be a partnership, an association, a joint venture or any other kind of entity.

14.     **Reference Agreements**.  This Note is secured pursuant to the provisions of (a) that certain Amended and Restated Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street I in favor of Agent, (b) that certain Amended and Restated Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street II in favor of Agent, and (c) that certain Amended and Restated Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street III in favor of Agent, in each case, as the same may be amended, supplemented or otherwise modified from time to time (each such mortgage and security agreement, individually and collectively, the "**Mortgage**").

15.     **Confession of Judgment.  MAKER HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF RECORD OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA TO APPEAR FOR THE MAKER IN ANY SUCH COURT, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AFTER THE OCCURRENCE AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT UNDER THIS NOTE OR THE MORTGAGE, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST MAKER IN FAVOR OF THE AGENT OR ANY LENDER (OR THEIR SUCCESSORS OR ASSIGNS) OR ANY HOLDER OF THIS NOTE FOR ALL SUMS DUE OR TO BECOME DUE BY THE MAKER TO THE AGENT AND LENDERS UNDER THIS NOTE AND THE MORTGAGE, TOGETHER WITH COSTS OF SUIT AND RELEASE OF ERRORS, AND REASONABLE ATTORNEY'S FEES INCURRED BY AGENT OR ANY LENDER IN AN AMOUNT NOT LESS THAN 5% OF THE PRINCIPAL AMOUNT DUE BUT IN NO EVENT LESS THAN $5,000.00 AND MAKER ACKNOWLEDGES THAT ATTORNEYS' FEES ARE STATED TO BE FIVE PERCENT (5%) SOLELY FOR PURPOSES OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION AND AGREES THAT IN ENFORCING ANY SUCH**

- 16 -

MBNF002651

**JUDGMENT, NEITHER AGENT NOR ANY LENDER SHALL DEMAND, SOLELY WITH RESPECT TO ATTORNEY'S FEES INCURRED BY AGENT OR SUCH LENDER IN CONNECTION WITH SUCH INDEBTEDNESS AFTER SUCH JUDGMENT IS RENDERED, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF REASONABLE ATTORNEYS' FEES CHARGED OR BILLED TO AGENT OR SUCH LENDER (WHICH ATTORNEYS' FEES SHALL BE CHARGED OR BILLED TO THE AGENT OR SUCH LENDER AT THE STANDARD HOURLY RATES); AND FOR DOING SO THIS NOTE, OR A COPY HEREOF VERIFIED BY AFFIDAVIT OF AGENT OR SUCH LENDER OR AGENT'S OR SUCH LENDER'S ATTORNEY AS A TRUE AND CORRECT COPY OF THE ORIGINAL, SHALL BE SUFFICIENT WARRANT.  SUCH AUTHORITY AND POWER TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED BY ANY SINGLE EXERCISE THEREOF AND JUDGMENT MAY BE CONFESSED HEREUNDER AS AFORESAID ONE OR MORE TIMES, AND FROM TIME TO TIME, AS OFTEN AS THERE IS OCCASION THEREFOR.**

**UPON ENTRY OF JUDGMENT AGAINST MAKER AS PROVIDED HEREIN, AGENT MAY, WITHOUT ANY PRIOR NOTICE OR HEARING (EXCEPT AS MAY BE REQUIRED BY LAW) PROCEED TO EXECUTE ON ANY PROPERTY OF THE MAKER, REAL OR PERSONAL, IN PARTIAL OR COMPLETE SATISFACTION OF SUCH JUDGMENT, AND UPON ENTRY OF JUDGMENT BY CONFESSION, AS AFORESAID, A WRIT OF EXECUTION MAY ISSUE FORTHWITH WITHOUT ANY PRIOR NOTICE, HEARING OR OTHER PROCEEDINGS OF ANY KIND.  TO THE FULLEST EXTENT PERMITTED BY LAW, MAKER HEREBY WAIVES THE RIGHT TO STAY EXECUTION ON ANY JUDGMENT OBTAINED ON OR UNDER THIS NOTE OR THE MORTGAGE, BY CONFESSION OR OTHERWISE.**

**MAKER BY SIGNING THIS NOTE ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY LEGAL COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS NOTE AND THAT IT HAS KNOWINGLY AND VOLUNTARILY WAIVED THE RIGHT TO NOTICE AND A HEARING BEFORE JUDGMENT MAY BE ENTERED BY CONFESSION ON THIS NOTE, AND BEFORE EXECUTION PROCEEDINGS THEREON MAY BE COMMENCED.**

[signature follows]

- 17 -

CONFIDENTIAL                                                                                          MBNF002652

**IN WITNESS WHEREOF**, Maker, the Lenders and Agent have caused this Note to be executed and delivered by their respective duly authorized officer as of the day and year and at the place first above written.

**MAKER:**

**BROAD STREET HEALTHCARE PROPERTIES, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**BROAD STREET HEALTHCARE PROPERTIES II, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

Amended and Restated Demand and Secured Promissory Note

**LENDERS**:

**LATHAM & WATKINS LLP**

By: _____

Name:  Suzzanne Uhland
Title:  Partner
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**

By: _____
Name:
Title:
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**

By: _____
Name:
Title:
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556

Amended and Restated Demand and Secured Promissory Note

CONFIDENTIAL

MBNF002654

**LENDERS**:

**LATHAM & WATKINS LLP**

By: _____
Name:
Title:
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**

By: _____
Name:  WILLIAM R. BRINKMAN
Title:  PRINCIPAL
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**

By: _____
Name:
Title:
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556

Amended and Restated Demand and Secured Promissory Note

MBNF002655

**LENDERS**:

**LATHAM & WATKINS LLP**

By: _____
Name:
Title:
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**

By: _____
Name:
Title:
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**

By: _____
Name:
Title:
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556

Amended and Restated Demand and Secured Promissory Note

**LENDERS**:

**LATHAM & WATKINS LLP**


By: _____
Name:
Title:
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**


By: _____
Name:
Title:
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**


By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**


By: _Svetlana Attestatova_____
Name: Svetlana Attestatova
Title: President
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556


Amended and Restated Demand and Secured Promissory Note

**AGENT**:

**PALADIN HEALTHCARE CAPITAL, LLC,**
as administrative agent

Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

Amended and Restated Demand and Secured Promissory Note

CONFIDENTIAL

## SCHEDULE A

**ADVANCES**

# REDACTED

Schedule A to Amended and Restated Demand and Secured Promissory Note

CONFIDENTIAL
MBNF002659

## SCHEDULE B

### COMMERCIAL TORT CLAIMS

1.      Philadelphia Academic Health Holdings, LLC vs. Tenet Business Services Corporation, Case No. 2018-0684, Court of Chancery of the State of Delaware

2.      Philadelphia Academic Health Holdings, LLC et al. vs. Tenet Business Services Corporation, Case No. N19C-04-035-EMD-CCLD C.A. No. N19C-04-035-EMD-CCLD, Superior Court of the State of Delaware

Schedule B to Amended and Restated Demand and Secured Promissory Note

CONFIDENTIAL

# Exhibit D

THIS DEMAND AND SECURED PROMISSORY NOTE AND PAYMENT HEREOF ARE SUBJECT TO AND GOVERNED BY THE TERMS OF AN AMENDED AND RESTATED SUBORDINATION AGREEMENT DATED AS OF OCTOBER 28, 2021 AMONG AGENT NAMED BELOW, PALADIN HEALTHCARE CAPITAL, LLC, AS ADMINISTRATIVE AGENT UNDER THE SENIOR NOTE (AS DEFINED BELOW), MAKER NAMED BELOW, AND FRONT STREET HEALTHCARE PROPERTIES, LLC, THE PROVISIONS OF WHICH ARE INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART HEREOF.

**BROAD STREET HEALTHCARE PROPERTIES, LLC**
**BROAD STREET HEALTHCARE PROPERTIES II, LLC**
**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

**DEMAND AND SECURED PROMISSORY NOTE**

$3,000,000.00                                                      El Segundo, California

October 28, 2021

**FOR VALUE RECEIVED**, **BROAD STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company ("**Broad Street I**"), **BROAD STREET HEALTHCARE PROPERTIES II, LLC**, a Delaware limited liability company ("**Broad Street II**"), **BROAD STREET HEALTHCARE PROPERTIES III, LLC**, a Delaware limited liability company ("**Broad Street III**" and collectively with Broad Street I and Broad Street II, "**Maker**"), unconditionally, jointly and severally, promise to pay to the Persons (as defined in Section 11) named on the signature pages hereto (each, a "**Lender**" and collectively, the "**Lenders**"), in the manner and at the place hereinafter provided, the lesser of (a) the sum of (i) SIX HUNDRED SIXTY ONE THOUSAND FIVE HUNDRED EIGHTY EIGHT DOLLARS AND SIXTY THREE CENTS ($661,588.63) plus (ii) all Additional Advances (as defined below) made by Lenders to Maker on and after the date hereof and (b) the unpaid Principal Amount of all Advances (each as defined below), together with any accrued and unpaid interest thereon, on demand, but in any event no later than January 31, 2022 (the "**Maturity Date**").

1.      **Advances**.  This Demand and Secured Promissory Note (this "**Note**") evidences the advances made by Lenders to Maker, another person or entity on behalf of Maker or designated by Maker, on or about the date hereof (the "**Current Advances**"), the principal amount of which, the date on which such advances were made and the Lender who made such advance(s) are set forth on Schedule A attached hereto.  Any Lender may, in its sole and absolute discretion, from time to time, make to Maker additional advances under this Note (the "**Additional Advances**" and together with the Current Advances, the "**Advances**" and each, an "**Advance**") so long as the sum of (a) the unpaid Principal Amount of all Advances outstanding at the time that any Additional Advance is requested to be made and (b) the principal amount of such requested Additional Advance does not exceed the face amount of this Note.  At the option of Agent (as defined in Section 11), the Additional Advances outstanding under this Note may be evidenced by a schedule to this Note in form and substance satisfactory to Agent, provided, however, that such schedule shall not be

1

necessary to evidence such Additional Advances nor shall the absence of such schedule limit or otherwise affect the obligation of Maker hereunder with respect to payments of principal of, or interest on, such Additional Advances.

2.     **Interest**.  Interest on the unpaid principal amount of all Advances (including all PIK Amounts (as defined below) added thereto, the "**Principal Amount**") shall accrue at a rate per annum equal to eight and one half percent (8.5%) commencing, with respect to each Advance, on the date such Advance was made; underlined provided that any Principal Amount not paid when due and, to the extent permitted by applicable law, any interest not paid when due, in each case whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (both before as well as after judgment), shall bear interest payable upon demand at a rate that is five percent (5%) per annum in excess of the rate of interest otherwise payable under this Note.  Interest shall be (i) calculated on the basis of a 360-day year, for the actual number of days elapsed in the relevant period, and (ii) payable quarterly, in arrears, on the first Business Day of each calendar quarter through and including the Maturity Date, and on the Maturity Date, whether by acceleration or otherwise (each, an "**Interest Payment Date**").  Interest on the Principal Amount that shall have accrued and shall remain unpaid as of any Interest Payment Date (for any Interest Payment Date, a "**PIK Amount**") shall be paid on such Interest Payment Date by addition of such PIK Amount to the Principal Amount.  At the option of Agent, the PIK Amounts added to the Principal Amount shall be evidenced by a note (a "**PIK Note**") in form and substance satisfactory to Agent, provided, however, that such PIK Note shall not be necessary to evidence such portion of the Principal Amount nor shall the absence of such PIK Note relieve Maker of its obligation to pay any portion of the Principal Amount to Lenders.  Notwithstanding any other provision of this Note and the addition of any PIK Amount to the Principal Amount, Maker may, in its sole discretion, pay any PIK Amount in cash on any Interest Payment Date without any premium or penalty.  Maker shall give written notice to Agent of any such payment of a PIK Amount in cash not less than one Business Day prior to the applicable Interest Payment Date.

3.     **Payments.**  All payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America in same day funds at the location of Agent as Agent may direct.  Whenever any payment on this Note is stated to be due on a day that is not a Business Day, such payment shall instead be made on the next Business Day, and such extension of time shall be included in the computation of interest payable on this Note.  Each payment or prepayment made hereunder shall be credited first to interest then due and the remainder of such payment shall be credited to principal, and interest shall thereupon cease to accrue upon the principal so credited.  The Agent agrees  that before disposing of this Note or any part hereof it will make a notation hereon of all principal payments previously made hereunder and of the date to which interest hereon has been paid; provided, however, that the failure to make a notation of any payment made on this Note shall not limit or otherwise affect the obligation of Maker hereunder with respect to payments of principal or interest on this Note.

4.     **Prepayments.**

- 2 -

(a) <u>Optional</u>.  Subject to the provisions of the Subordination Agreement, Maker shall have the right at any time and from time to time to prepay the Principal Amount in whole or in part, without premium or penalty.  Any prepayment hereunder shall be accompanied by interest on the Principal Amount being prepaid to the date of prepayment.

(b) <u>Mandatory</u>.  Subject to the provisions of the Subordination Agreement, if Maker sells, transfers or otherwise disposes of any Collateral which results in the realization by Maker of any cash and cash equivalents received in connection with such transaction (including those received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise, but only as and when so received), Maker shall prepay an aggregate principal amount of Advances equal to such cash and cash equivalents less reasonable and customary out-of-pocket expenses incurred by Maker in connection with such transaction, within two Business Days from receipt thereof by Maker.

(c) Amounts prepaid under this Note pursuant to this Section 4 may not be reborrowed.

5.    **Application and Sharing of Payments, Etc**.  Subject to the provisions of the Subordination Agreement, any amounts received on account of the Obligations shall be applied by Agent to payment of the Obligations payable to the Lenders, ratably among them in proportion to the respective amounts of Advances, <u>first</u> to any asserted but unpaid indemnities, expenses and other amounts payable under this Note and the Mortgage, <u>second</u> to unpaid interest and <u>then</u> to unpaid principal amount.  If any Lender shall obtain any payment (whether voluntary, involuntary, through the exercise of any right of set-off, or otherwise) on account of the Advances owing to it in excess of its ratable share of payments on account of the Advances obtained by all the Lenders, then such Lender shall forthwith purchase from the other Lenders such participations in the Advances owing to them as shall be necessary to cause such purchasing Lender to share the excess payment ratably with each of them, provided, however, that if all or any portion of such excess payment is thereafter recovered from such purchasing Lender, such purchase from each Lender shall be rescinded and such Lender shall repay to the purchasing Lender the purchase price to the extent of such recovery together with an amount equal to such Lender's ratable share (according to the proportion of (i) the amount of such Lender's required repayment to (ii) the total amount so recovered from the purchasing Lender) of any interest or other amount paid or payable by the purchasing Lender in respect of the total amount so recovered.  The Maker agrees that any Lender so purchasing a participation from another Lender pursuant to this Section 5 or any other provision of this Note may, to the fullest extent permitted by law, exercise all of its rights of payment (including the right to set-off) with respect to such participation as fully as if such Lender were the direct creditor of the Maker in the amount of such participation.

6.    **Covenants.**  Maker covenants and agrees that until this Note is paid in full it will:

(a) promptly provide to Agent and all Lenders all financial and operational information with respect to Maker as Agent or any Lender may reasonably request;

CONFIDENTIAL                                                                MBNF002663

(b) promptly after the occurrence of an Event of Default or an event, act or condition that, with notice or lapse of time or both, would constitute an Event of Default, provide Agent, for distribution to the Lenders, with a certificate of the Maker specifying the nature thereof and Maker's proposed response thereto;

(c) without Agent's prior written consent thereto, after consultation with all Lenders, not create, assume, guaranty, incur or otherwise become or remain directly or indirectly liable with respect to any indebtedness for borrowed money, except for any such indebtedness created or incurred pursuant to the documentation entered into prior to or on the date hereof the existence of which has been disclosed to the Lenders in writing;

(d) without Agent's prior written consent thereto, after consultation with all Lenders, not merge or consolidate with any other Person, or sell, lease or otherwise dispose of all or any part of its property or assets to any other Person;

(e) without Agent's prior written consent thereto, after consultation with all Lenders, not create, incur, assume or suffer to exist, directly or indirectly, any lien, security interest, mortgage, deed of trust, pledge, hypothecation, assignment, charge, encumbrance, easement, or other security arrangement (each of the foregoing, a "**Lien**") on or with respect to any of its property or assets, whether now owned or hereafter acquired, or any income or profits therefrom, except for any Lien created or incurred pursuant to the documentation entered into prior to or on the date hereof the existence of which has been disclosed to the Lenders in writing;

(f) without Agent's prior written consent thereto, after consultation with all Lenders, not pay, redeem, defease, purchase or otherwise acquire any indebtedness that ranks junior in priority or is subordinated to the obligations evidenced by this Note, except for any such indebtedness created or incurred pursuant to the documentation entered into prior to the date hereof the existence of which has been disclosed to the Lenders in writing that has been subordinated to the indebtedness outstanding pursuant to this Note on the terms satisfactory to the Agent;

(g) without Agent's prior written consent thereto, after consultation with all Lenders, not declare or pay any dividend or make any other payment or distribution on account of, or purchase or redeem, any equity interests issued by Maker, including, without limitation, any outstanding warrants, options or other rights to acquire equity interests of Maker, now or hereafter outstanding; and

(h) without Agent's prior written consent thereto, after consultation with all Lenders, not use cash, cash equivalents or any other assets of Maker for any purpose other than the payment of reasonable and customary operating expenses incurred in the ordinary course of Maker consistent with past practices.

7.    **Representations and Warranties.**  Maker hereby represents and warrants to Agent and each Lender that:

- 4 -

MBNF002664

(a) it is a duly organized and validly existing limited liability company in good standing under the laws of the jurisdiction of its organization and has the power and authority under its limited liability company agreement to own and operate its properties, to transact the business in which it is now engaged and to execute and deliver this Note and the Mortgage (as defined in Section 14);

(b) each of this Note and the Mortgage constitutes the duly authorized, legally valid and binding obligation of Maker, enforceable against Maker in accordance with its respective terms, subject to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and general principles of equity;

(c) all consents and grants of approval required to have been granted by any Person in connection with the execution, delivery and performance of this Note and the Mortgage have been granted;

(d) the execution, delivery and performance by Maker of this Note and the Mortgage do not and will not (i) violate any law, governmental rule or regulation, court order or agreement to which it is subject or by which its properties are bound or the organizational documents of Maker or (ii) contravene, result in a breach of, or violate any indenture, mortgage, deed of trust, lease, agreement or other instrument to which Maker is a party or by which Maker or any of its property or assets is bound;

(e) other than as disclosed to Agent and each Lender prior to the date hereof, there is no action, suit, proceeding or governmental investigation pending or, to the knowledge of Maker, threatened against Maker or any of its assets which, if adversely determined, would have a material adverse effect on the business, operations, properties, assets, condition (financial or otherwise) or prospects of Maker, or the ability of Maker to comply with its obligations hereunder;

(f) the proceeds of the Advances evidenced by this Note shall be used by Maker solely for satisfaction of Maker's obligations to the Pension Fund for Hospital and Health Care Employees—Philadelphia and Vicinity, to make advances to Maker's affiliates in Maker's sole and absolute discretion, and for working capital purposes; and

(g) no Lien exists on any property or asset of Maker as of the date hereof and the execution, delivery, and performance by Maker of this Note and the Mortgage do not and will not result in or require the creation or imposition of any Lien of any nature whatsoever upon any of its property or assets except (i) in favor of Agent for the ratable benefit of the Lenders pursuant to this Note and the Mortgage, (ii) in favor of Paladin Healthcare Capital, LLC, as administrative agent for the ratable benefit of First Lien Lenders pursuant to the Senior Note (each as defined in Section 14) and the mortgages entered into by Maker in connection therewith, and (iii) in favor of Front Street Healthcare Properties, LLC pursuant to the Demand and Secured Promissory Note entered into by Maker as of February 12, 2020 in the original principal amount of $10,000,000, as modified by those certain note modification agreements and allonges dated as of June 1, 2020 and January 30, 2021.

CONFIDENTIAL                                                                 MBNF002665

8.    **Grant of Security**.

(a)    Maker hereby grants, pledges, assigns, transfers, hypothecates and sets over to Agent, for the ratable benefit of the Lenders, a valid, continuing second priority security interest in all of Maker's right, title and interest in the Collateral (as described below), in each case whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located, in order to secure prompt, full, faithful and timely payment and performance of the obligations under this Note and the Mortgage, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder and thereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Maker, would accrue on such obligations, whether or not a claim is allowed against Maker for such amounts in the related bankruptcy proceeding) (collectively, the "**Obligations**"), whether at stated maturity, acceleration or otherwise, together with all extensions or renewals thereof, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, whether or not jointly owned with others, and whether or not such Obligations are from time to time decreased or extinguished and later increased, created or incurred, and all or any portion of such Obligations that are paid, to the extent all or any part of such payment is avoided or recovered directly or indirectly from Agent or any Lender as a preference, fraudulent transfer or otherwise.  "Collateral" shall include all of Maker's interests in all of the following types of personal property, wherever located and whether now owned or hereafter acquired (collectively, the "Collateral"):

(i)    all Accounts;

(ii)    all Chattel Paper;

(iii)    all Money and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

(iv)    all Documents;

(v)    all General Intangibles (including (i) patents, trademarks, service marks, copyrights, and other intellectual property and (ii) all contracts, contract rights, and payments under any contracts, including contracts for the sale of Maker's property), Payment Intangibles and Software;

(vi)    all Goods, including Inventory, Equipment and Fixtures;

(vii)    all Instruments;

(viii)    all Investment Property;

(ix)    all Letter-of-Credit Rights and other Supporting Obligations;

(x)    all Records;

- 6 -

(xi)    all Commercial Tort Claims (including those certain Commercial Tort Claims set forth on Schedule B attached hereto); and

(xii)    all Proceeds and Accessions with respect to any of the foregoing Collateral.

Each foregoing category of Collateral set forth above shall have the meaning set forth in Division 9 of the Pennsylvania Uniform Commercial Code in effect on the date hereof (the "**UCC**").

(b)    Maker agrees that from time to time, at the expense of Maker, Maker will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Agent may request, in order to perfect any security interest granted or purported to be granted hereby or to enable Agent to exercise and enforce its and Lenders' rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, Maker will: (i) execute (if necessary) and file such financing or continuation statements, or amendments thereto, and (ii) execute and deliver such further instruments and take such further action as Agent may reasonably request to effect the intent and purposes hereof, to perfect and continue perfected Agent's security interests in the Collateral. Maker hereby authorizes Agent to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral (including any financing statement indicating that it covers "all assets" or "all personal property" of Maker).

(c)    Maker hereby irrevocably appoints Agent as Maker's attorney-in-fact, effective upon the occurrence and during the continuance of an Event of Default hereunder, with full authority in the place and stead of Maker and in the name of Maker, Agent or otherwise, from time to time in Agent's discretion, to take any action and to execute any instrument that Agent may deem necessary or advisable to accomplish the purposes of this Note.

(d)    The powers conferred on Agent hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Except for the exercise of reasonable care in the custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Agent shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral. Agent shall be deemed to have exercised reasonable care in the custody and preservation of Collateral in its possession if such Collateral is accorded treatment substantially equal to that which Agent accords its own property.

(e)    Upon the unconditional satisfaction of the Obligations in full, (i) the security interest in the Collateral in favor of Agent, for the ratable benefit of the Lenders, granted hereby shall automatically terminate without any further action on the part of Maker, Agent or any Lender, and (ii) Maker and its designees shall be authorized to file such terminations of such security interest Maker reasonably deems necessary, and Agent shall execute and

CONFIDENTIAL

MBNF002667

deliver, at Maker's expense, such further evidence of the termination or release of such security interest as Maker may reasonably request.

            9.    **Events of Default.**  The occurrence of any of the following events shall constitute an "**Event of Default**":

            (a)  failure of Maker to pay any principal or interest under this Note when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, or failure of Maker to pay any other amount due under this Note within five days after the date due; or

            (b)  failure of Maker to pay, or the default in the payment of, any amount due under or in respect of any promissory note, indenture or other agreement or instrument relating to any indebtedness owing by Maker, to which Maker is a party or by which Maker or any of its property is bound beyond any grace period provided; or the occurrence of any other event or circumstance that, with notice or lapse of time or both, would permit acceleration of such indebtedness; or

            (c)  failure of Maker to perform or observe any other term, covenant or agreement to be performed or observed by it pursuant to this Note or the Mortgage; or

            (d)  any representation or warranty made by Maker to Agent or any Lender in connection with this Note or the Mortgage shall prove to have been false in any material respect when made; or

            (e)  any order, judgment or decree shall be entered against Maker; or

            (f)  suspension of the usual business activities of Maker or the complete or partial liquidation of Maker's business; or

            (g)  (i) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of Maker in an involuntary case under Title 11 of the United States Code entitled "Bankruptcy" (as now and hereinafter in effect, or any successor thereto, the "**Bankruptcy Code**") or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, which decree or order is not stayed; or any other similar relief shall be granted under any applicable federal or state law; or (ii) an involuntary case shall be commenced against Maker under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or a decree or order of a court having jurisdiction in the premises for the appointment of a receiver, liquidator, sequestrator, trustee, custodian or other officer having similar powers over Maker, or over all or a substantial part of its property shall have been entered; or the involuntary appointment of an interim receiver, trustee or other custodian of Maker for all or a substantial part of its property shall have occurred; or a warrant of attachment, execution or similar process shall have been issued against any substantial part of the property of Maker, and, in the case of any event described in this clause (ii), such event shall have continued for 60 days unless dismissed, bonded or discharged; or

- 8 -

MBNF002668

(h) an order for relief shall be entered with respect to Maker or Maker shall commence a voluntary case under the Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case, or to the conversion of an involuntary case to a voluntary case, under any such law, or shall consent to the appointment of or taking possession by a receiver, trustee or other custodian for all or a substantial part of its property; or Maker shall make an assignment for the benefit of creditors; or Maker shall be unable or fail, or shall admit in writing its inability, to pay its debts as such debts become due; or the governing body or equityholders of Maker shall adopt any resolution or otherwise authorize action to approve any of the foregoing; or

(i) Maker shall challenge, or institute any proceedings to challenge, the validity, binding effect or enforceability of this Note or the Mortgage or any endorsement of this Note, the Mortgage or any other obligation to Agent or any Lender; or

(j) any provision of this Note or the Mortgage shall cease to be in full force or effect or shall be declared to be null or void or otherwise unenforceable in whole or in part; or Agent shall not have or shall cease to have a valid and perfected second priority security interest in the collateral described in the Mortgage or in the Collateral; or

(k) a Change of Control (as defined below) shall occur with respect to Maker, unless the Agent shall have expressly consented to such Change of Control in writing, after consultation with all Lenders. A "**Change of Control**" shall mean any event or circumstance as a result of which (i) any "Person" or "group" (as such terms are defined in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934 (as in effect on the date hereof, the "**Exchange Act**")), other than Agent, is or becomes the "beneficial owner" (as defined in Rules 13(d)-3 and 13(d)-5 under the Exchange Act), directly or indirectly, of ten percent (10%) or more on a fully diluted basis of the then outstanding voting equity interest of Maker, (ii) the manager of Maker shall cease to consist of the same manager on the date hereof, or (iii) Maker merges or consolidates with, or sells all or substantially all of its assets to, any other Person.

10.    **Remedies.**

(a)    Upon the occurrence of any Event of Default specified in Section 9(g) or 9(h) above, the Principal Amount together with accrued interest thereon shall become immediately due and payable, without presentment, demand, notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker). Upon the occurrence and during the continuance of any other Event of Default, Agent shall at the request, or may with the consent, of the Majority Lenders (as defined in Section 11), by written notice to Maker, declare the Principal Amount together with accrued interest thereon to be due and payable, and the Principal Amount together with such interest shall thereupon immediately become due and payable without presentment, further notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker). In either case Agent shall at the

- 9 -

MBNF002669

request, or may with the consent, of the Majority Lenders, in addition to exercising any other rights and remedies it may have, exercise those rights of set off provided for in Section 13(c). Demand for payment may be made whether or not any of the foregoing events shall have occurred if the Principal Amount is payable on demand.

(b)    In addition to all other rights and remedies provided for herein or otherwise available to it, Agent may exercise in respect of the Collateral, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral), and also may (i) require Maker to, and Maker hereby agrees that it will at its expense and upon request of Agent forthwith, assemble all or part of the Collateral as directed by Agent and make it available to Agent at a place to be designated by Agent that is reasonably convenient to both parties, (ii) subject to the rights of third parties, enter onto the property where any Collateral is located and take possession thereof with or without judicial process, (iii) prior to the disposition of the Collateral, store, process, repair or recondition the Collateral or otherwise prepare the Collateral for disposition in any manner to the extent the Agent deems appropriate, (iv) subject to the rights of third parties, take possession of Maker's premises or place custodians in exclusive control thereof, remain on such premises and use the same and any of Maker's equipment for the purpose of completing any work in process, taking any actions described in the preceding clause (iii) and collecting any Obligation, and (v) sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Agent's or Lender's offices or elsewhere, for cash, on credit or for future delivery, at such time or times and at such price or prices and upon such other terms as Agent may deem commercially reasonable. Agent may be the purchaser of any or all of the Collateral at any such sale and Agent, as agent for and representative of Lenders (but not any Lender or Lenders in its or their respective individual capacities unless Majority Lenders shall otherwise agree in writing), shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such sale, to use and apply any of the Obligations as a credit on account of the purchase price for any Collateral payable by Agent at such sale. Maker hereby waives any claims against Agent and each Lender arising by reason of the fact that the price at which any Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale, even if Agent accepts the first offer received and does not offer such Collateral to more than one offeree. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Obligations, Maker shall be liable for the deficiency and the reasonable fees of any attorneys employed by Agent to collect such deficiency.

11.    **Definitions**. The following terms used in this Note shall have the following meanings (and any of such terms may, unless the context otherwise requires, be used in the singular or the plural depending on the reference):

"**Agent**" means Paladin Healthcare Capital, LLC, a Delaware limited liability company, as administrative agent for the Lenders, appointed and authorized by the Lenders pursuant to Section 12 of this Note.

- 10 -

 MBNF002670

"**Business Day**" means any day other than a Saturday, Sunday or legal holiday under the laws of the State of California, the Commonwealth of Pennsylvania or any other day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"**Event of Default**" means any of the events set forth in Section 9.

"**Majority Lenders**" means, as of any date of determination, Lenders owning at least 51% of the then aggregate unpaid principal amount of the Advances.

"**Person**" means any individual, partnership, limited liability company, joint venture, firm, corporation, association, bank, trust or other enterprise, whether or not a legal entity, or any government or political subdivision or any agency, department or instrumentality thereof.

"**Subordination Agreement**" means the Amended and Restated Subordination Agreement dated as of the date hereof by and among Agent, Paladin Healthcare Capital, LLC, as administrative agent under the Senior Note (defined below), Maker and Front Street Healthcare Properties, LLC, as the same may be amended, restated, supplemented or otherwise modified from time to time.

12.     **The Agent.**

(a) Each Lender hereby appoints and authorizes the Agent to take such action as agent on its behalf and to exercise such powers under this Note and the Mortgage as are delegated to the Agent by the terms hereof and thereof, together with such powers as are reasonably incidental thereto. As to any matters not expressly provided for by this Note or the Mortgage, the Agent shall not be required to exercise any discretion or take any action, but shall be required to act or to refrain from acting (and shall be fully protected in so acting or refraining from acting) upon the instructions of the Majority Lenders, and such instructions shall be binding upon all Lenders and all holders of this Note; provided, however, that the Agent shall not be required to take any action which exposes the Agent to personal liability or which is contrary to this Note, the Mortgage or applicable law. The Agent agrees to give to each Lender prompt notice of each notice given to it by the Maker pursuant to the terms of this Note.

(b) The Agent shall not liable for any action taken or omitted to be taken by it or them under or in connection with this Note, except for its or their own gross negligence or willful misconduct. Without limitation of the generality of the foregoing, the Agent: (i) may consult with legal counsel (including counsel for the Maker), independent public accountants and other experts selected by it and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel, accountants or experts; (ii) makes no warranty or representation to any Lender and shall not be responsible to any Lender for any statements, warranties or representations made in or in connection with this Note or the Mortgage; (iii) shall not have any duty to ascertain or to inquire as to the

- 11 -

performance or observance of any of the terms, covenants or conditions of this Note or the Mortgage on the part of the Maker or to inspect the property (including the books and records) of the Maker; (iv) shall not be responsible to any Lender for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of this Note, the Mortgage or any other instrument or document furnished pursuant hereto; and (v) shall incur no liability under or in respect of this Note or the Mortgage by acting upon any notice, consent, certificate or other instrument or writing (which may be by electronic mail) believed by it to be genuine and signed or sent by the proper party or parties.

(c)  With respect to its Advance(s), the Advance or Advances made by it, Paladin Healthcare Capital, LLC shall have the same rights and powers under this Note and the Mortgage as any other Lender and may exercise the same as though it were not the Agent; and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated, include Paladin Healthcare Capital, LLC in its individual capacity.

(d) Each Lender acknowledges that it has, independently and without reliance upon the Agent or any other Lender and based on the documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Note.  Each Lender also acknowledges that it will, independently and without reliance upon the Agent or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Note.

(e)  The Agent may resign at any time by giving written notice thereof to the Lenders and the Maker and may be removed at any time with cause by the Majority Lenders after written notice to Agent describing such cause and to the extent curable, providing for a reasonable opportunity to cure.  Upon any such resignation or removal, the Majority Lenders shall have the right to appoint a successor Agent. Upon the acceptance of any appointment as Agent hereunder by a successor Agent, such successor Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Agent, and the retiring Agent shall be discharged from its duties and obligations under this Note and the Mortgage. After any retiring Agent's resignation or removal hereunder as Agent, the provisions of this Section 12 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Agent under this Note and the Mortgage.

13.  **Miscellaneous.**

(a)     Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including telefacsimile communication and electronic communications via .PDF) and mailed, telecopied, or delivered at its address specified under its signature below; or in each case at such other address as shall be designated by Agent, any Lender or Maker.  All such notices and communications shall, when mailed, telecopied or sent by overnight courier, be

- 12 -

effective when deposited in the mails, delivered to the overnight courier, as the case may be, or sent by telecopier, or when received if sent by electronic mail.

(b)     Maker agrees to indemnify Agent and each Lender against any losses, claims, damages and liabilities and related expenses, including counsel fees and expenses, incurred by Agent or any Lender arising out of or in connection with or as a result of the transactions contemplated by this Note.  In particular, Maker agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, of Agent and each Lender incurred in connection with the preparation, execution, delivery, enforcement, collection and administration of this Note, the documents and instruments referred to herein and any amendments, waivers or consents relating hereto or thereto.  In addition, Maker agrees to pay, and to save Agent and each Lender harmless from all liability for, any stamp or other documentary taxes which may be payable in connection with Maker's execution or delivery of this Note and the Mortgage.

(c)     In addition to and not in limitation of any rights of set off that Agent or any Lender may now or hereafter have under applicable law, Agent or such Lender, upon the occurrence of any Event of Default, is hereby authorized at any time or from time to time, without notice of any kind to Maker or to any other Person, any such notice being hereby expressly waived, to set off and to appropriate and apply any and all deposits (general or special, time or demand, provisional or final) and any other indebtedness at any time held or owing by Agent or such Lender or their respective affiliates to or for the credit or the account of Maker against and on account of the obligations and liabilities of Maker to Agent and/or any Lender under this Note and all other claims of any nature or description arising out of or connected with this Note, irrespective of whether or not Agent or any Lender shall have made any demand hereunder and although said obligations, liabilities or claims, or any of them, shall be contingent or unmatured.

(d)     No failure or delay on the part of Agent, any Lender or any other holder of this Note to exercise any right, power or privilege under this Note and no course of dealing between Maker, on the one hand, and Agent or any Lender, on the other hand, shall impair such right, power or privilege or operate as a waiver of any default or an acquiescence therein, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies expressly provided in this Note are cumulative to, and not exclusive of, any rights or remedies that Agent or any Lender would otherwise have.  No notice to or demand on Maker in any case shall entitle Maker to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of Agent or any Lender to any other or further action in any circumstances without notice or demand.

(e)     Maker and any endorser of this Note hereby consent to renewals and extensions of time at or after the maturity hereof, without notice, and hereby waive diligence, presentment, protest, demand and notice of every kind and, to the full

- 13 -

MBNF002673

extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.

(f)      **THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF MAKER AND AGENT AND EACH LENDER HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.**

(g)      **ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST MAKER ARISING OUT OF OR RELATING TO THIS NOTE MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE COMMONWEALTH OF PENNSYLVANIA OR THE STATE OF NEW YORK, AND BY EXECUTION AND DELIVERY OF THIS NOTE MAKER ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE NONEXCLUSIVE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS NOTE.**  Maker hereby agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested, to Maker at its address set forth below its signature hereto, such service being hereby acknowledged by Maker to be sufficient for personal jurisdiction in any action against Maker in any such court and to be otherwise effective and binding service in every respect.  Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Agent or any Lender to bring proceedings or enforce any award or judgment or exercise any rights against Maker or against the property of Maker in the courts of any other county, state or other foreign or domestic jurisdiction.

(h)      **MAKER, AGENT AND EACH LENDER HEREBY IRREVOCABLY AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS NOTE AND THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED.**  The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation contract claims, tort claims, breach of duty claims and all other common law and statutory claims.  Each of Maker, Agent and the Lenders (i) acknowledges that this waiver is a material inducement to enter into a business relationship, that each has already relied on this waiver in entering into this relationship, and that each will continue to rely on this waiver in their related future dealings and (ii) further warrants and represents that each has reviewed this waiver with its legal counsel and that each knowingly and voluntarily waives its jury trial rights following consultation with legal counsel.  **THIS WAIVER IS**

- 14 -

**IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS OF THIS NOTE.** In the event of litigation, this provision may be filed as a written consent to a trial by the court.

(i)      Maker hereby waives the benefit of any statute or rule of law or judicial decision, which would otherwise require that the provisions of this Note be construed or interpreted most strongly against the party responsible for the drafting thereof.

(j)      This Note shall be binding upon Maker and its successors and assigns, and shall inure to the benefit of Agent, each Lender and their respective successors and assigns, and may not be assigned by Agent or any Lender without the prior written consent of Maker; any such purported assignment without such consent being null and void. Maker may not assign any of its obligations under this Note without the prior written consent of Agent and each Lender, any such purported assignment without such consent being null and void.

(k)      Maker acknowledges that this Note and Maker's obligations under this Note to pay the principal of and interest on this Note at the place, at the respective times, and in the currency prescribed herein, are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker under this Note. This Note sets forth the entire agreement and understanding of Agent, each Lender and Maker with respect to the subject matter hereof, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Note or the obligations of Maker hereunder  or otherwise in any action or proceeding brought by Agent or any Lender to collect this Note, or any portion thereof.  Maker acknowledges that no oral or other agreements, conditions, promises, understandings, representations or warranties exist with respect to this Note or with respect to the obligations of Maker under this Note, except those specifically set forth in this Note.

(l)      The headings and captions of the numbered Sections of this Note are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof. All personal pronouns used in this Note shall include the other genders, whether used in the masculine, feminine or neuter gender, and the singular shall include the plural and vice versa, whenever and as often as may be appropriate.

(m)      This Note may not be modified, amended, changed or terminated orally, except by an agreement in writing signed by Maker, on the one hand, and Agent and each Lender, on the other hand. No waiver of any term, covenant or provision of this Note shall be effective unless given in writing by Agent and each

- 15 -

CONFIDENTIAL                                                                                    MBNF002675

Lender and, if so given by Agent and each Lender, shall only be effective in the specific instance in which given.

(n)     Each entity comprising Maker is accepting joint and several liability hereunder in consideration of the financial accommodations to be provided by Agent and each Lender evidenced by this Note, for the mutual benefit, directly and indirectly, of each entity comprising Maker and in consideration of the undertakings of the other entities comprising Maker to accept joint and several liability for the obligations evidenced by this Note.  If and to the extent that any entity comprising Maker shall fail to make any payment with respect to any of the obligations evidenced by this Note as and when due or to perform any such obligations in accordance with the terms thereof, then in each such event each other entity comprising Maker will make such payment with respect to, or perform, such obligations until such time as all of the obligations evidenced by this Note are paid in full.  The obligations of each entity comprising Maker under the provisions of this Section 13(n) constitute the absolute and unconditional, full recourse obligations of each entity comprising Maker enforceable against each entity comprising Maker to the full extent of its properties and assets, irrespective of the validity, regularity or enforceability of the provisions of this Note or any other circumstances whatsoever.  Except as otherwise expressly provided in this Note, each entity comprising Maker hereby waives notice of acceptance of its joint and several liability, notice of any Advances, notice of the occurrence of any Event of Default, or of any demand for any payment under this Note, notice of any action at any time taken or omitted by Agent or any Lender under or in respect of any of the obligations evidenced by this Note, any requirement of diligence or to mitigate damages and, generally, to the extent permitted by applicable law, all demands, notices and other formalities of every kind in connection with this Note.

(o)     The obligation of each Lender hereunder is several, and no Lender shall be responsible for the obligation of any other Lender hereunder.  Nothing contained in this Note and no action taken by the Lenders pursuant hereto shall be deemed to constitute the Lenders to be a partnership, an association, a joint venture or any other kind of entity.

14.     **Reference Agreements**.

(a) This Note is secured pursuant to the provisions of (a) that certain Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street I in favor of Agent, (b) that certain Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street II in favor of Agent, and (c) that certain Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street III in favor of Agent, in each case, as the same may be amended, supplemented or otherwise modified from time to time (each such mortgage and security agreement, individually and collectively, the "**Mortgage**").

(b) This Note and payment hereof are subject to and governed by the terms of the Subordination Agreement, the provisions of which are incorporated herein by this

CONFIDENTIAL

MBNF002676

reference and made a part hereof. This Note is subordinate to, and payments of principal and any amounts due hereunder are deferred until payment in full of all amounts and obligations outstanding under, that certain Amended and Restated Demand and Secured Promissory Note dated as of the date hereof among Maker, the entities named on the signature pages thereto ("**First Lien Lenders**") and Paladin Healthcare Capital, LLC, as administrative agent for the First Lien Lenders (such Amended and Restated Demand and Secured Promissory Note, together with all extensions, renewals, replacements, restatements or modifications thereof being hereinafter referred to as the "**Senior Note**"). Anything contained in this Note to the contrary notwithstanding, in the event restrictions under the Subordination Agreement prevent payments of interest or principal hereunder, such payments will be deferred until such restrictions are removed or otherwise cease to exist, and such deferral will not constitute an Event of Default hereunder.

(c) Each Lender (i) acknowledges that it has received a copy of the Subordination Agreement, (ii) consents to the subordination of Liens provided for in the Subordination Agreement, (iii) agrees that it will be bound by and will take no actions contrary to the provisions of the Subordination Agreement and (iv) authorizes and instructs Agent to enter into the Subordination Agreement as Agent and on behalf of such Lender. The foregoing provisions are intended as an inducement to the First Lien Lenders to extend credit to Maker and such First Lien Lenders are intended third party beneficiaries of such provisions.

15. **Confession of Judgment.** MAKER HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF RECORD OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA TO APPEAR FOR THE MAKER IN ANY SUCH COURT, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AFTER THE OCCURRENCE AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT UNDER THIS NOTE OR THE MORTGAGE, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST MAKER IN FAVOR OF THE AGENT OR ANY LENDER (OR THEIR SUCCESSORS OR ASSIGNS) OR ANY HOLDER OF THIS NOTE FOR ALL SUMS DUE OR TO BECOME DUE BY THE MAKER TO THE AGENT AND LENDERS UNDER THIS NOTE AND THE MORTGAGE, TOGETHER WITH COSTS OF SUIT AND RELEASE OF ERRORS, AND REASONABLE ATTORNEY'S FEES INCURRED BY AGENT OR ANY LENDER IN AN AMOUNT NOT LESS THAN 5% OF THE PRINCIPAL AMOUNT DUE BUT IN NO EVENT LESS THAN $5,000.00 AND MAKER ACKNOWLEDGES THAT ATTORNEYS' FEES ARE STATED TO BE FIVE PERCENT (5%) SOLELY FOR PURPOSES OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION AND AGREES THAT IN ENFORCING ANY SUCH JUDGMENT, NEITHER AGENT NOR ANY LENDER SHALL DEMAND, SOLELY WITH RESPECT TO ATTORNEY'S FEES INCURRED BY AGENT OR SUCH LENDER IN CONNECTION WITH SUCH INDEBTEDNESS AFTER SUCH JUDGMENT IS RENDERED, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF REASONABLE ATTORNEYS' FEES CHARGED OR BILLED TO

- 17 -

MBNF002677

**AGENT OR SUCH LENDER (WHICH ATTORNEYS' FEES SHALL BE CHARGED OR BILLED TO THE AGENT OR SUCH LENDER AT THE STANDARD HOURLY RATES); AND FOR DOING SO THIS NOTE, OR A COPY HEREOF VERIFIED BY AFFIDAVIT OF AGENT OR SUCH LENDER OR AGENT'S OR SUCH LENDER'S ATTORNEY AS A TRUE AND CORRECT COPY OF THE ORIGINAL, SHALL BE SUFFICIENT WARRANT.  SUCH AUTHORITY AND POWER TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED BY ANY SINGLE EXERCISE THEREOF AND JUDGMENT MAY BE CONFESSED HEREUNDER AS AFORESAID ONE OR MORE TIMES, AND FROM TIME TO TIME, AS OFTEN AS THERE IS OCCASION THEREFOR.**

**UPON ENTRY OF JUDGMENT AGAINST MAKER AS PROVIDED HEREIN, AGENT MAY, WITHOUT ANY PRIOR NOTICE OR HEARING (EXCEPT AS MAY BE REQUIRED BY LAW) PROCEED TO EXECUTE ON ANY PROPERTY OF THE MAKER, REAL OR PERSONAL, IN PARTIAL OR COMPLETE SATISFACTION OF SUCH JUDGMENT, AND UPON ENTRY OF JUDGMENT BY CONFESSION, AS AFORESAID, A WRIT OF EXECUTION MAY ISSUE FORTHWITH WITHOUT ANY PRIOR NOTICE, HEARING OR OTHER PROCEEDINGS OF ANY KIND.  TO THE FULLEST EXTENT PERMITTED BY LAW, MAKER HEREBY WAIVES THE RIGHT TO STAY EXECUTION ON ANY JUDGMENT OBTAINED ON OR UNDER THIS NOTE OR THE MORTGAGE, BY CONFESSION OR OTHERWISE.**

**MAKER BY SIGNING THIS NOTE ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY LEGAL COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS NOTE AND THAT IT HAS KNOWINGLY AND VOLUNTARILY WAIVED THE RIGHT TO NOTICE AND A HEARING BEFORE JUDGMENT MAY BE ENTERED BY CONFESSION ON THIS NOTE, AND BEFORE EXECUTION PROCEEDINGS THEREON MAY BE COMMENCED.**

[signature follows]

CONFIDENTIAL

MBNF002678

**IN WITNESS WHEREOF**, Maker, the Lenders and Agent have caused this Note to be executed and delivered by their respective duly authorized officer as of the day and year and at the place first above written.

**MAKER:**

**BROAD STREET HEALTHCARE PROPERTIES, LLC**

By: _____
Name: Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**BROAD STREET HEALTHCARE PROPERTIES II, LLC**

By: _____
Name: Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

By: _____
Name: Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

Demand and Secured Promissory Note

CONFIDENTIAL

MBNF002679

**LENDERS**:

**LATHAM & WATKINS LLP**


By: _____

Name:  Suzzanne Uhland
Title:   Partner
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**


By: _____
Name:
Title:
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**


By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**


By: _____
Name:
Title:
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556


Demand and Secured Promissory Note

**LENDERS**:

**LATHAM & WATKINS LLP**

By: _____
Name:
Title:
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**

By: _____
Name: WILLIAM R. BRINKMAN
Title: PRINCIPAL
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**

By: _____
Name:
Title:
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556

Demand and Secured Promissory Note

**LENDERS**:

**LATHAM & WATKINS LLP**

By: _____
Name:
Title:
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**

By: _____
Name:
Title:
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**

By: _____
Name:
Title:
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556

Demand and Secured Promissory Note

CONFIDENTIAL

**<u>LENDERS</u>**:

**LATHAM & WATKINS LLP**


By: _____
Name:
Title:
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**


By: _____
Name:
Title:
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**


By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**


By: _____
Name: Svetlana Attestatova
Title: President
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556


Demand and Secured Promissory Note

**AGENT**:

**PALADIN HEALTHCARE CAPITAL, LLC,**
as administrative agent

Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

Demand and Secured Promissory Note

CONFIDENTIAL

MBNF002684

**<u>SCHEDULE A</u>**

**ADVANCES**

# REDACTED

Schedule A to Demand and Secured Promissory Note

CONFIDENTIAL

MBNF002685

## **SCHEDULE B**

## **COMMERCIAL TORT CLAIMS**

1.      Philadelphia Academic Health Holdings, LLC vs. Tenet Business Services Corporation, Case No. 2018-0684, Court of Chancery of the State of Delaware

2.      Philadelphia Academic Health Holdings, LLC et al. vs. Tenet Business Services Corporation, Case No. N19C-04-035-EMD-CCLD C.A. No. N19C-04-035-EMD-CCLD, Superior Court of the State of Delaware

Schedule B to Demand and Secured Promissory Note

CONFIDENTIAL                                                                                      MBNF002686

## Exhibit E



## Summary of Indicative Terms and Conditions

The terms and conditions summarized in this term sheet are provided by Gordon Brothers Realty Services, LLC ("GBRS") for discussion purposes only and do not constitute an offer, agreement, or commitment to extend financing.  The terms and conditions contained herein are subject to the satisfactory completion of due diligence, internal credit approvals, satisfactory review and execution of documentation, and such other conditions as may be required by GBRS and its counsel.

| | |
|---|---|
| **Borrower or Company:** | Broad Street Healthcare Properties, LLC; Broad Street Healthcare Properties II, LLC & Broad Street Healthcare Properties III, LLC |
| **Guarantor:** | Philadelphia Academic Health Holdings, LLC ("Parent"), a direct parent company of the Borrower, will guaranty the credit facility on a limited basis with the recourse limited solely to its equity interests in the Borrower, which will be pledged to the Lender in support of Parent's guaranty obligations. |
| **Broker:** | Trikuta Hills Inc. |
| **Lender:** | GBRS or one of its affiliates |
| **Facility:** | $17.5 million Term Loan (the "Term Loan") fully funded at close |
| **Interest and Other Reserves:** | The Proceeds of the Facility less the amount earmarked for repayment of the secured notes issued by Borrower to Paladin Healthcare Capital, LLC, as agent (the "Paladin Notes") will be used to fund the carrying costs of the portfolio and other operating costs in such amounts and at such times as mutually agreed between Borrower and Lender, substantially consistent with the use of proceeds attached hereto as Exhibit A, subject to a mutually acceptable variance set forth in the definitive documentation, with a portion of the proceeds to be placed into an escrow account with the Lender as contemplated in Exhibit A. The escrow amounts will be released upon the repayment in full of the Term Loan facility (other than contingent indemnification obligations for which no claim has been asserted). |
| **Anticipated Closing Date:** | The five weeks from the date of execution of this Summary of Indicative Terms and Conditions. |
| **Use of Proceeds:** | Use of proceeds attached hereto as Exhibit A. |
| **Collateral:** | First priority lien on the following sites located in Center City Philadelphia with the addresses and OPAs as follows: |

| Property | Owner | Address | OPA |
|---|---|---|---|
| North Tower, South Tower | Broad Street Healthcare Properties, LLC | 222-248 N. Broad Street | 772025002 |
| (land next to SHSH Building) | Broad Street Healthcare Properties, LLC | 221-223 N. 15th Street | 772028498 |
| Stiles Alumni Hall Underground | Broad Street Healthcare Properties, LLC | 325 N. 15th Street | 881038202 |
| Martinelli Park | Broad Street Healthcare Properties II, LLC | 300-304 N. Broad Street | 885620242 |
| (redevelopment land/surface parking) (city block) | Broad Street Healthcare Properties III, LLC | 200-214 N. Broad Street | 885467862 |

MBNF000070



| SHSH Building (city block) | Broad Street Healthcare Properties III, LLC | 201-219 N. 15th Street | 772028496 |
|---|---|---|---|

PHL Vine Development is the former Hahnemann University Hospital and contains 1.56 acres with two buildings; the North Tower is 20 stories built in 1978 and the South Tower is 12 stories constructed in 1928.  The PHL Race Development contains a low-rise building and surface parking lot.  Martinelli Park is 0.76 acres located on the Northwest corner of the intersection of Broad Street and Vine Street.

| | |
|---|---|
| **Term:** | Fifteen (15) months from closing.  Borrower will use commercially reasonable efforts to sell properties within the 15-month period and will work cooperatively with Lender to establish commercially reasonable milestones associated with such sale which will be set forth in the loan documents.  Borrower may request to extend the maturity date up to six (6) months if any of the parcels comprising the Collateral are subject to a purchase agreement and no event of default exists at the time of such request, with a payment of an extension fee in the amount of the greater of $100,000 or 0.75% of the outstanding Term Loan Facility. |
| **Pricing:** | 90 Day SOFR (with a floor of 0.25%) + 9.50% (950 basis points) paid monthly |
| **Transaction Fees:** | 1.0% of the Term Loan Facility principal amount funded, fully earned and paid at closing and 1.0% of the outstanding Term Loan Facility principal amount fully earned at closing but paid at the time of each partial loan repayment with respect to the repaid principal amount. |
| **Ticking Fees:** | None |
| **Termination Fee:** | $200,000 shall be deposited with Lender and fully earned upon execution of Term Sheet (the "Termination Fee").  The Termination Fee shall be retained by Lender in the event the Borrower elects to terminate any discussions with the Lender to enter into definitive documentation substantially consistent with this Term Sheet within forty-five (45) days' following the execution of the Term Sheet; provided, however, if Lender fails to provide definitive documents substantially consistent with this Term Sheet within thirty (30) days from the execution of this Term Sheet, an amount equal to the Termination Fee less any actual out-of-pocket expenses of Lender, which are in excess of the deposit described below, will be returned to the Borrower.  In the event that the Comfort Order is not entered on the Closing Date, the Termination Fee shall be held in escrow to support Borrower's indemnification obligations, and shall be released upon the repayment in full of the Term Loan facility (other than contingent indemnification obligations for which no claim has been asserted) or when the Comfort Order is entered into, whatever occurs first. |
| **Call Protection:** | <u>First 12 Months</u>: "Make-Whole" for 12 months.  A make-whole is defined as the interest that would have been earned if the Term Loan was outstanding for twelve (12) months minus the interest actually paid to date.<br><br><u>Month 13 and beyond</u>: None |
| **Payment Terms:** | Interest only payments due monthly.  Prepayment in connection with any sale of Collateral, subject to agreed-upon prepayment percentages in the event of partial Collateral sales. |
| **Amortization and Excess Cash Flow capture:** | None |
| **Deposit:** | $75,000 to be deposited with Lender at execution of Term Sheet for the Lender's actual out-of-pocket expenses. Once utilized, the Borrower will provide, within 3 business days of a request, additional deposits (in $75,000 increments) as requested to reimburse the Lender for incremental actual out-of-pocket expenses.  The Lender's estimate of its expenses in connection with the preparation of definitive documentation (including attorneys' fees and costs), assuming the closing date occurs as anticipated above and there is no litigation related to the Chapter 11 Cases is $150,000.  If Borrower fails to provide additional deposits when due under this Term Sheet, Lender may terminate this Term Sheet and retain any portion of the Termination Fee necessary to reimburse it for such expenses incurred prior to termination.  Any portion of the deposit not utilized will be returned to the Company upon Closing or at the Company's request (net of actual out-of-pocket expenses incurred to date). |

MBNF000071



| | |
|---|---|
| **Loan to Value Threshold:** | Definitive documentation to include a covenant to provide that outstanding loan balance shall not exceed 35% of future Broker Opinion of Value or MAI appraisal obtained in the sole discretion and at the election of Borrower, whichever is higher. |
| **Transfers of Equity Interests in Borrower:** | None permitted without written approval by Lender |
| **Additional Debt:** | None permitted without written approval by Lender, including as approved by Lender pursuant to the definitive loan documents; it being understood that (i) the Paladin Notes and related liens granted by the Borrower prior to the execution of the Term Sheet (approximately $3.16 million as of October 28, 2021) shall be repaid from the loan proceeds, (ii) existing intercompany loans and liens the documentation for which has been provided to the Lender shall be permitted to remain outstanding on the terms and conditions satisfactory to the Lender in its sole discretion, and (iii) customary premium financing arrangements shall be permitted. |
| **Recourse** | Non-recourse except for bad boy and environmental carve-outs provided by Parent.  In addition, the Lender agrees that the definitive loan documentation will not provide for the remedy of Confession of Judgement in Pennsylvania in connection with an event of default. |
| **Indemnity** | For the avoidance of doubt, Borrower shall use all commercially reasonable efforts to obtain a Comfort Order (as defined below). In the event that a Comfort Order is not obtained prior to closing, Borrower shall agree to indemnify Lender for any losses or costs associated with the *City Center Healthcare LLC* chapter 11 cases captioned 19-11466 (the "Chapter 11 Cases").  Such indemnification obligations shall be guaranteed by Parent under its limited recourse guaranty described above. |
| **Conditions Precedent:** | The Loan is subject to Lender's final satisfactory underwriting and due diligence of the Collateral and Borrower including, but not limited to, the following:<br><br>• Completion of business and legal due diligence<br>• In person visit to Philadelphia, PA and Collateral<br>• Completion and satisfactory review of a Phase I environmental study, and a Phase 2 if necessary<br>• Completion and satisfactory review of Borrower's financial condition<br>• Completion and satisfactory review of insurance<br>• Completion and satisfactory review of title<br>• Completion and satisfactory loan documentation customary for transactions of this type<br>• Completion and satisfactory review of MAI appraisal<br>• Satisfactory KYC reports<br>• Entry of an order of the Bankruptcy Court for the District of Delaware (in form and substance reasonably acceptable to Lender) that provides that the automatic stay does not prevent the sale, transfer, or other encumbrance of the Collateral (including actions in connection with imposing first priority liens and/or mortgages on the Collateral), or, in the alternative, lifting the automatic stay to permit the foregoing actions (the "Comfort Order").  If the Comfort Order is not obtained and Lender completes a satisfactory review of Parent's financials, limited guaranty of Borrower's indemnification obligations by Parent will be executed. |
| **Confidentiality:** | This letter is being transmitted to you with the express understanding that each of Lender and Borrower shall keep confidential its contents and the fact that it has been transmitted except that (i) the Lender and Borrower may share this letter with its agents, attorneys and other advisors and in all other instances only when Lender provides express written consent and (ii) the Borrower may disclose certain contents of this letter in pleading(s) filed with the Bankruptcy Court to obtain approval of the Comfort Order; provided that such pleadings shall be (a)  provided by Latham & Watkins LLP (as counsel to the Borrower) to Katten Muchin Rosenman LLP (as counsel to the Lender) no later than three (3) business days before such pleadings are filed with the Bankruptcy Court and (b) in form and substance reasonably acceptable to Lender. |
| **Non-binding:** | This letter is an expression of interest and is not intended to constitute a binding obligation on the part of either party to consummate the transactions contemplated hereby.  Except for the obligations set forth in the "Confidentiality," "Termination Fee," "Deposit" and "Non-binding" provisions (which obligations are binding and, except as otherwise provided, shall survive any termination of this letter), neither party shall have any liability or obligation whatsoever (including any obligation to negotiate in any particular manner) with respect to any aspect of the transactions contemplated by or any provision of this letter unless and until definitive agreements with respect thereto, containing detailed terms, conditions and covenants satisfactory to both parties in their sole |

US_150559373v8_340878-00043 10/27/2021 4:14 PM



discretion, have been executed and unconditionally delivered by both parties.  No provision of this letter shall be interpreted as bestowing any rights whatsoever on any third party.

Sincerely,

**Gordon Brothers Realty Services, LLC**

By: _____

  Kyle C. Shonak

Title:  Managing Director

**AGREED & ACCEPTED**

**Broad Street Healthcare Properties, LLC**

By: _____

  Joel Freedman

Title:  CEO & President

**Broad Street Healthcare Properties II, LLC**

By: _____

  Joel Freedman

Title:  CEO & President

**Broad Street Healthcare Properties III, LLC**

By: _____

  Joel Freedman

Title:  CEO & President

US_150559373v8_340878-00043 10/27/2021 4:14 PM

MBNF000073



**EXHIBIT A**
**Use of Proceeds**

| Sources and Uses (000s) | | | |
|---|---|---|---|
| **Sources** | **Uses** | | **Comments** |
| Senior Secured Loan $ 17,500 | Financing Transaction Costs | $ 175 | Assumes 1% fees and costs |
| | Operating Costs (excl. tax/ins) | 3,848 | Assumes management company run-rate & excludes insurance and taxes which are reserved for separately |
| | Reserves (to be placed into escrow): | | |
| | Interest Reserve | 2,133 | 15 months reserve assuming 9.75% cost of money |
| | Tax Reserve | 1,108 | 15 months of reserve at current assessment |
| | Tax Reserve - In dispute R/E Tax | 145 | Claim by City of Philadelphia received 9/30 and is indispute |
| | Insurance Reserve | 1,336 | 15 months of reserve |
| | Pension Reserve | 4,158 | 15 months of reserve with first payment ($581K in 1/22) and quarterly thereafter ($894K) through 1Q23 |
| | Environmental Reserve | TBD | Amount to be determined |
| | Repayment of Paladin Notes | 3,161 | Repaid concurrent with funding. Amount outstanding under the Paladin Notes as of Oct 28. |
| | Working Capital | 1,436 | Residual amounts to be utilized for general working capital purposes. |
| **Total** $ 17,500 | **Total** | $ 17,500 | |

US_150559373v8_340878-00043 10/27/2021 4:14 PM

MBNF000074

# Exhibit F

# NEWMARK

**Broad Street Healthcare Properties, LLC**

**May 2021**
**FINANCIAL REPORTS**

Prepared for
**Broad Street Healthcare Properties, LLC**
**222-248 North Broad Street**
**221-223 North 15th Street**
**325 North 15th Street**
**Philadelphia, Pennsylvania 19102**

Prepared by
Timothy Herb - Property Manager
Gabriel Perez - Property Accountant
Kathleen Guarnera - Accounting Manager

CONFIDENTIAL

MBNF000869

**Broad Street Healthcare Properties, LLC**
**222-248 Broad Street, 325 N. 15ᵗʰ Street, 221-223 N. 15ᵗʰ Street**
**Executive Summary**
**May 2021**



CONFIDENTIAL

## Property Description:

| | |
|---|---|
| Ownership Entity: | Broad Street Healthcare Properties, LLC |
| Square Footage: | 717,121 |
| Portfolio: | North & South Tower, Stiles Hall Underground and Land next to the SHSH building. |
| Property Type: | Commercial |
| Location: | Philadelphia, PA  19102. |



CONFIDENTIAL

**2020 Budget Variances**

<u>**VARIANCE DETAIL**</u>
**CRITERIA:**                              ACTUAL VS BUDGET VARIES BY >10% or $5,000, unless under $2,000
<u>**Current Month**</u>

**Income:**                    **None**

**Expenses:**                Life Safety - $2k under budget due to less repairs than budgted.
                             Security - $9k under budget due to less services than budgeted.
                             Electric Repairs - $2k under due to less repairs.
                             General Repairs - $2k under budget due to less repairs than budgeted.
                             HVAC Repairs - $10k under budget due to less repairs than budgeted.
                             Plumbing Repairs - $5k under budget due to less repairs than budgeted.
                             Elevator Repairs - $1k over budget due to more repairs than budgeted.
                             Salaries - $1k under budget due to less costs than budgeted.
                             Utility -Water - $20k over budget due to more use than budgeted.
                             Utility -Electric - $17k under budget due to less use than budgeted
                             RET - $30k under budget.  Payment was made less credit due.

**Non-Operating Exp:**       None

**Year to Date**

**Income:**          **None**

**Expenses:**     Life Safety - $56k under budget due to Fire Alarm inspections not completed.
Security - $36k under budget due to less services than budgeted.
Generator- $2k over due to timing of inspections.
Security Supplies - $5k under budget due to less supplies than budgeted.
Electric Repairs - $30k over budget due to electric submeter project.
General Reapirs - $6k under budget due to less repairs.
HVAC wages - $9k over budget due to one month catch up payment.
HVAC Repairs - $37k over budget primarily due to Steam line repairs.
Plumbing Repairs - $17k under budget due to less repairs than budgeted.
Elevator Repairs - $4k over budget due to unbudgeted repairs to freight elevators.
Salaries - $4k under budget due to less cost than budgeted.
Telephone / Interent - $3k under budget due charges less than anticipated.
Professional Fees - $3k over budget due to Penn ER invoice.
Snow Removal - $15k under budget due to less services.
Roof Repairs - $1k under budget due to less repairs
Parking lot/grounds repairs - $1k under budget due to less repairs.
Building Supplies - $1k under budget due to less supplies.
Utility -Water - $59k over budget due to more use than budgeted ██████████
Utility -Electric - $105k under budget due to less use than budgeted. ██████████
Utility -Steam - $11k under budget due to less steam than budgeted
Property Insurance - $51k over budget.  3/20 – 3/21 premium fully expensed.
RET - $149k under budget.  Payment was made less credit due.
Credit of $611k in non operating due to insurance proceeds.

**Non-Operating Exp:**     None

CONFIDENTIAL

| Database: | GEMS_EAST | Trial Balance | Page: | 1 |
|---|---|---|---|---|
| | | **GEMS_EAST** | Date: | 6/9/2021 |
| | | **Broad Street Healthcare I** | Time: | 08:19 AM |

Accrual    Year to Date Balances for period 05/21

| Account | Description | Debit | Credit |
|---|---|---|---|
| 111-04 | CASH | 767,153.03 | |
| 111-50 | UTILITY DEPOSIT | 150,000.00 | |
| 117-21 | PREPAID INSURANCE | 552,431.57 | |
| 117-22 | PREPAID REAL ESTATE TAX | 30,102.79 | |
| 179-01 | CONSTRUCTION IN PROGRESS | 17,500.00 | |
| 211-06 | ACCRUED OPERATING EXPENSE | | 193,696.67 |
| 211-08 | SHORT TERM NOTE PAYABLE | | 452,074.96 |
| 255-55 | TRANSFER OF FUNDS | | 1,235,484.49 |
| 256-10 | EQUITY-OWNER CONTRIBUTIONS | | 4,444,973.74 |
| 257-10 | EQUITY-OWNER DISTRIBUTIONS | 184,954.98 | |
| 290-00 | RETAINED EARNINGS | 3,856,895.21 | |
| 444-99 | MISCELLANEOUS INCOME | 0.00 | |
| 445-95 | INTEREST INCOME | | 268.78 |
| 510-22 | SEC/SAFETY-C.SVC FIRE SYS | 7,800.30 | |
| 510-27 | SEC/SAFETY-CARD ACCESS | 223,074.43 | |
| 510-35 | EMERGENCY GEN. SERVICE | 2,494.80 | |
| 511-20 | CLEANING-C.SVC BASE BLDG. | 11,067.00 | |
| 511-40 | CLEANING-MAT/SUPPLIES | 283.22 | |
| 512-20 | ELECT MAINT C.SVC | 42,339.01 | |
| 513-20 | G REP/MAINT CONTRACT SVC | 6,682.08 | |
| 514-01 | HVAC MAINT WAGES | 66,225.60 | |
| 514-27 | HVAC MAINT.& REPAIR | 86,544.28 | |
| 514-51 | HVAC MAINT-WATER TREATMET | 7,560.00 | |
| 515-21 | PLUMBING REPAIRS | 8,394.58 | |
| 516-20 | ELEVATOR-CONTRACT SVC | 7,469.28 | |
| 516-25 | ELEV-REP & MAINT-BLDG | 14,060.50 | |
| 517-01 | ADMIN-SALARIES WAGES | 40,316.64 | |
| 517-41 | ADMIN-POSTAGE | 40.00 | |
| 517-44 | ADMIN-TELEPHONE | 1,579.78 | |
| 517-50 | ADMIN-TRAVEL | 450.47 | |
| 517-59 | ADMIN-PROF FEES OTHER | 3,332.43 | |
| 517-60 | ADMIN-MGMT FEES/GEMS | 35,625.00 | |
| 517-68 | ADMIN-BANK CHARGES | 553.23 | |
| 518-20 | GEN BLDG-C.SVC EXTERMINA | 3,425.00 | |
| 518-21 | GEN BLDG-C.SVC TRASH HAUL | 750.00 | |
| 518-24 | GEN BLDG-C.SVC SNOW REMOV | 14,900.00 | |
| 518-27 | GEN BLDG-C.SVC EX/LANDSC | 625.00 | |
| 518-40 | GEN BLDG-MAT/SUPPLIES | 44.14 | |
| 519-21 | UTILITIES-WATER | 148,095.99 | |
| 519-23 | UTILITIES-ELECTRICITY | 135,063.76 | |
| 519-24 | UTILITIES-STEAM | 148,784.67 | |
| 519-25 | UTILITIES-GAS | 5,863.88 | |
| 531-31 | INSURANCE-PROPERTY | 333,540.79 | |
| 532-33 | R.E. TAXES-COUNTY | 7,838.57 | |
| 532-34 | R.E. TAXES-CITY/BOROUGH | 13,663.40 | |
| 718-45 | GEN BLDG-MISCELLANEOUS | | 611,026.77 |
| | Total: | 6,937,525.41 | 6,937,525.41 |

CONFIDENTIAL

| Database: | GEMS_EAST | Trial Balance | Page: | 1 |
| ENTITY: | PH096A | **GEMS_EAST** | Date: | 6/9/2021 |
| | | **BROAD STREET NORTH/SOUTH TOWER** | Time: | 08:20 AM |

Accrual                           Year to Date Balances for period 05/21

| Account | Description | Debit | Credit |
|---------|-------------|------:|-------:|
| 111-04 | CASH | 777,519.85 | |
| 111-50 | UTILITY DEPOSIT | 150,000.00 | |
| 117-21 | PREPAID INSURANCE | 552,431.57 | |
| 117-22 | PREPAID REAL ESTATE TAX | 26,812.00 | |
| 179-01 | CONSTRUCTION IN PROGRESS | 17,500.00 | |
| 211-06 | ACCRUED OPERATING EXPENSE | | 193,696.67 |
| 211-08 | SHORT TERM NOTE PAYABLE | | 452,074.96 |
| 255-55 | TRANSFER OF FUNDS | | 1,235,484.49 |
| 256-10 | EQUITY-OWNER CONTRIBUTIONS | | 4,444,973.74 |
| 257-10 | EQUITY-OWNER DISTRIBUTIONS | 184,954.98 | |
| 290-00 | RETAINED EARNINGS | 3,853,737.12 | |
| 444-99 | MISCELLANEOUS INCOME | 0.00 | |
| 445-95 | INTEREST INCOME | | 268.78 |
| 510-22 | SEC/SAFETY-C.SVC FIRE SYS | 7,800.30 | |
| 510-27 | SEC/SAFETY-CARD ACCESS | 223,074.43 | |
| 510-35 | EMERGENCY GEN. SERVICE | 2,494.80 | |
| 511-20 | CLEANING-C.SVC BASE BLDG. | 11,067.00 | |
| 511-40 | CLEANING-MAT/SUPPLIES | 283.22 | |
| 512-20 | ELECT MAINT C.SVC | 42,339.01 | |
| 513-20 | G REP/MAINT CONTRACT SVC | 6,682.08 | |
| 514-01 | HVAC MAINT WAGES | 66,225.60 | |
| 514-27 | HVAC MAINT.& REPAIR | 86,544.28 | |
| 514-51 | HVAC MAINT-WATER TREATMET | 7,560.00 | |
| 515-21 | PLUMBING REPAIRS | 8,394.58 | |
| 516-20 | ELEVATOR-CONTRACT SVC | 7,469.28 | |
| 516-25 | ELEV-REP & MAINT-BLDG | 14,060.50 | |
| 517-01 | ADMIN-SALARIES WAGES | 39,500.42 | |
| 517-41 | ADMIN-POSTAGE | 40.00 | |
| 517-44 | ADMIN-TELEPHONE | 1,579.78 | |
| 517-50 | ADMIN-TRAVEL | 450.47 | |
| 517-59 | ADMIN-PROF FEES OTHER | 3,331.27 | |
| 517-60 | ADMIN-MGMT FEES/GEMS | 34,875.00 | |
| 517-68 | ADMIN-BANK CHARGES | 553.23 | |
| 518-20 | GEN BLDG-C.SVC EXTERMINA | 3,425.00 | |
| 518-21 | GEN BLDG-C.SVC TRASH HAUL | 750.00 | |
| 518-24 | GEN BLDG-C.SVC SNOW REMOV | 14,900.00 | |
| 518-27 | GEN BLDG-C.SVC EX/LANDSC | 625.00 | |
| 518-40 | GEN BLDG-MAT/SUPPLIES | 44.14 | |
| 519-21 | UTILITIES-WATER | 148,095.99 | |
| 519-23 | UTILITIES-ELECTRICITY | 135,063.76 | |
| 519-24 | UTILITIES-STEAM | 148,784.67 | |
| 519-25 | UTILITIES-GAS | 5,863.88 | |
| 531-31 | INSURANCE-PROPERTY | 333,540.79 | |
| 532-33 | R.E. TAXES-COUNTY | 5,939.51 | |
| 532-34 | R.E. TAXES-CITY/BOROUGH | 13,211.90 | |
| 718-45 | GEN BLDG-MISCELLANEOUS | | 611,026.77 |
| | Total: | 6,937,525.41 | 6,937,525.41 |

MBNF000875

| Database: | GEMS_EAST | Trial Balance | Page: | 2 |
| ENTITY: | PH096B | **GEMS_EAST** | Date: | 6/9/2021 |
| | | **BROAD STREET LAND/SHSH** | Time: | 08:20 AM |

Accrual                          Year to Date Balances for period 05/21

| Account | Description | Debit | Credit |
|---------|-------------|-------|--------|
| 111-04 | CASH | | 8,562.24 |
| 117-22 | PREPAID REAL ESTATE TAX | 3,290.79 | |
| 211-05 | ACCOUNTS PAYABLE | 0.00 | |
| 290-00 | RETAINED EARNINGS | 2,136.62 | |
| 517-01 | ADMIN-SALARIES WAGES | 408.11 | |
| 517-59 | ADMIN-PROF FEES OTHER | 1.16 | |
| 517-60 | ADMIN-MGMT FEES/GEMS | 375.00 | |
| 532-33 | R.E. TAXES-COUNTY | 1,899.06 | |
| 532-34 | R.E. TAXES-CITY/BOROUGH | 451.50 | |
| | Total: | 8,562.24 | 8,562.24 |

CONFIDENTIAL

| Database: | GEMS_EAST | Trial Balance | Page: | 3 |
|-----------|-----------|---------------|-------|---|
| ENTITY: | PH096C | **GEMS_EAST** | Date: | 6/9/2021 |
| | | **BROAD STREET STILES ALUMNI HAL** | Time: | 08:20 AM |

| Accrual | Year to Date Balances for period 05/21 |
|---------|----------------------------------------|

| Account | Description | Debit | Credit |
|---------|-------------|-------|--------|
| 111-04 | CASH | | 1,804.58 |
| 290-00 | RETAINED EARNINGS | 1,021.47 | |
| 517-01 | ADMIN-SALARIES WAGES | 408.11 | |
| 517-60 | ADMIN-MGMT FEES/GEMS | 375.00 | |
| | Total: | 1,804.58 | 1,804.58 |

CONFIDENTIAL

MBNF000877

| Database Id: | GEMS_EAST | | **Comparative Income Statement** | | | | Page: | 1 |
| Report Id: | GEMS_CMPINCA | | **BUDGET COMPARATIVE INCOME STATEMENT** | | | | Date: | 6/9/2021 |
| | | | **GEMS_EAST** | | | | Time: | 08:21 AM |
| Consolidated | | | **Broad Street Healthcare I** | | | | | |
| Budget Type: | STD | | | | | | | |
| Basis | Accrual | | | | | | | |

| | | **Current Period** | | | | **Year-To-Date** | | |
| | Thru: | Actual<br>May 2021 | Budget<br>May 2021 | Variance | | YTD Actual<br>May 2021 | YTD Budget<br>May 2021 | YTD Variance | YTD<br>Var % |
|---|---|---|---|---|---|---|---|---|---|
| **INTEREST INCOME** | | | | | | | | | |
| 445-95 | INTEREST INCOME | 31.73 | 0.00 | 31.73 | 0.00% | 268.78 | 0.00 | 268.78 | 100.00% |
| | | | | | | | | | |
| TOTAL INTEREST INCOME | | 31.73 | 0.00 | 31.73 | | 268.78 | 0.00 | 268.78 | |
| | | | | | | | | | |
| TOTAL INCOME | | 31.73 | 0.00 | 31.73 | | 268.78 | 0.00 | 268.78 | |
| | | | | | | | | | |
| **OPERATING EXPENSES** | | | | | | | | | |
| | | | | | | | | | |
| **SECURITY/LIFE SAFETY** | | | | | | | | | |
| 510-22 | SEC/SAFETY-C.SVC FIRE SYS | 981.68 | 2,500.00 | 1,518.32 | 60.73% | 7,800.30 | 63,835.00 | 56,034.70 | 87.78% |
| 510-27 | SEC/SAFETY-CARD ACCESS | 42,667.48 | 51,855.00 | 9,187.52 | 17.72% | 223,074.43 | 259,275.00 | 36,200.57 | 13.96% |
| 510-35 | EMERGENCY GEN. SERVICE | 604.80 | 0.00 | (604.80) | 0.00% | 2,494.80 | 0.00 | (2,494.80) | -100.00% |
| 510-40 | SEC/SAFETY-MAT/SUPPLIES | 0.00 | 1,000.00 | 1,000.00 | 100.00% | 0.00 | 5,000.00 | 5,000.00 | 100.00% |
| | | | | | | | | | |
| TOTAL SECURITY/LIFE SAFT. | | 44,253.96 | 55,355.00 | 11,101.04 | 20.05% | 233,369.53 | 328,110.00 | 94,740.47 | 28.87% |
| | | | | | | | | | |
| **CLEANING** | | | | | | | | | |
| 511-20 | CLEANING-C.SVC BASE BLDG. | 2,213.40 | 2,279.00 | 65.60 | 2.88% | 11,067.00 | 11,395.00 | 328.00 | 2.88% |
| 511-40 | CLEANING-MAT/SUPPLIES | 141.61 | 200.00 | 58.39 | 29.20% | 283.22 | 1,000.00 | 716.78 | 71.68% |
| | | | | | | | | | |
| TOTAL CLEANING | | 2,355.01 | 2,479.00 | 123.99 | 5.00% | 11,350.22 | 12,395.00 | 1,044.78 | 8.43% |
| | | | | | | | | | |
| **ELECTRICAL** | | | | | | | | | |
| 512-20 | ELECT MAINT C.SVC | 0.00 | 2,500.00 | 2,500.00 | 100.00% | 42,339.01 | 12,500.00 | (29,839.01) | -238.71% |
| | | | | | | | | | |
| TOTAL ELECTRICAL | | 0.00 | 2,500.00 | 2,500.00 | 100.00% | 42,339.01 | 12,500.00 | (29,839.01) | -238.71% |
| | | | | | | | | | |
| **GENERAL REPAIRS/MAINT.** | | | | | | | | | |
| 513-09 | G REP/MAINT OTHER | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 513-20 | G REP/MAINT CONTRACT SVC | 0.00 | 2,500.00 | 2,500.00 | 100.00% | 6,682.08 | 12,500.00 | 5,817.92 | 46.54% |
| 513-45 | G REP/MAINT MISCELLANEOUS | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| | | | | | | | | | |
| TOTAL GEN. REPAIRS/MAINT. | | 0.00 | 2,500.00 | 2,500.00 | 100.00% | 6,682.08 | 12,500.00 | 5,817.92 | 46.54% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Database Id:  GEMS_EAST | | **Comparative Income Statement** | | | | Page: | | 2 |
| Report Id:  GEMS_CMPINCA | | **BUDGET COMPARATIVE INCOME STATEMENT** | | | | Date: | | 6/9/2021 |
| | | **GEMS_EAST** | | | | Time: | | 08:21 AM |
| Consolidated | | **Broad Street Healthcare I** | | | | | | |
| Budget Type:  STD | | | | | | | | |
| Basis        Accrual | | | | | | | | |

| | | Current Period | | | | Year-To-Date | | |
|---|---|---|---|---|---|---|---|---|
| | | Actual | Budget | | | YTD Actual | YTD Budget | | YTD |
| | Thru: | May 2021 | May 2021 | Variance | | May 2021 | May 2021 | YTD Variance | Var % |

**HVAC MAINTENANCE**

| | | Actual | Budget | Variance | | YTD Actual | YTD Budget | YTD Variance | YTD Var % |
|---|---|---|---|---|---|---|---|---|---|
| 514-01 | HVAC MAINT WAGES | 11,037.60 | 11,369.00 | 331.40 | 2.91% | 66,225.60 | 56,845.00 | (9,380.60) | -16.50% |
| 514-27 | HVAC MAINT.& REPAIR | 0.00 | 10,000.00 | 10,000.00 | 100.00% | 86,544.28 | 50,000.00 | (36,544.28) | -73.09% |
| 514-51 | HVAC MAINT-WATER TREATME | 1,512.00 | 1,557.00 | 45.00 | 2.89% | 7,560.00 | 7,785.00 | 225.00 | 2.89% |
| | TOTAL HVAC MAINTENANCE | 12,549.60 | 22,926.00 | 10,376.40 | 45.26% | 160,329.88 | 114,630.00 | (45,699.88) | -39.87% |

**PLUMBING**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 515-21 | PLUMBING REPAIRS | 0.00 | 5,000.00 | 5,000.00 | 100.00% | 8,394.58 | 25,000.00 | 16,605.42 | 66.42% |
| | TOTAL PLUMBING | 0.00 | 5,000.00 | 5,000.00 | 100.00% | 8,394.58 | 25,000.00 | 16,605.42 | 66.42% |

**ELEVATOR**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 516-20 | ELEVATOR-CONTRACT SVC | 1,529.28 | 1,530.00 | 0.72 | 0.05% | 7,469.28 | 7,650.00 | 180.72 | 2.36% |
| 516-25 | ELEV-REP & MAINT-BLDG | 3,417.00 | 2,000.00 | (1,417.00) | -70.85% | 14,060.50 | 10,000.00 | (4,060.50) | -40.61% |
| | TOTAL ELEVATOR | 4,946.28 | 3,530.00 | (1,416.28) | -40.12% | 21,529.78 | 17,650.00 | (3,879.78) | -21.98% |

**ADMINISTRATIVE**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 517-01 | ADMIN-SALARIES WAGES | 7,604.93 | 8,831.00 | 1,226.07 | 13.88% | 40,316.64 | 44,155.00 | 3,838.36 | 8.69% |
| 517-41 | ADMIN-POSTAGE | 0.00 | 50.00 | 50.00 | 100.00% | 40.00 | 250.00 | 210.00 | 84.00% |
| 517-44 | ADMIN-TELEPHONE | 913.87 | 930.00 | 16.13 | 1.73% | 1,579.78 | 4,650.00 | 3,070.22 | 66.03% |
| 517-45 | ADMIN-MISCELLANEOUS | 0.00 | 160.00 | 160.00 | 100.00% | 0.00 | 800.00 | 800.00 | 100.00% |
| 517-50 | ADMIN-TRAVEL | 119.00 | 100.00 | (19.00) | -19.00% | 450.47 | 500.00 | 49.53 | 9.91% |
| 517-55 | ADMIN-LICENSES & PERMITS | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 517-59 | ADMIN-PROF FEES OTHER | 100.00 | 100.00 | 0.00 | 0.00% | 3,332.43 | 500.00 | (2,832.43) | -566.49% |
| 517-60 | ADMIN-MGMT FEES/GEMS | 7,125.00 | 7,125.00 | 0.00 | 0.00% | 35,625.00 | 35,625.00 | 0.00 | 0.00% |
| 517-61 | ADMIN-MGMT FEES/OTHERS | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 517-68 | ADMIN-BANK CHARGES | 103.22 | 100.00 | (3.22) | -3.22% | 553.23 | 500.00 | (53.23) | -10.65% |
| | TOTAL ADMINISTRATIVE | 15,966.02 | 17,396.00 | 1,429.98 | 8.22% | 81,897.55 | 86,980.00 | 5,082.45 | 5.84% |

**GENERAL BUILDING**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 518-07 | GEN BLDG-INSURANCE | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 518-20 | GEN BLDG-C.SVC EXTERMINA | 700.00 | 721.00 | 21.00 | 2.91% | 3,425.00 | 3,605.00 | 180.00 | 4.99% |
| 518-21 | GEN BLDG-C.SVC TRASH HAUL | 150.00 | 155.00 | 5.00 | 3.23% | 750.00 | 775.00 | 25.00 | 3.23% |
| 518-24 | GEN BLDG-C.SVC SNOW REMO | 0.00 | 0.00 | 0.00 | 0.00% | 14,900.00 | 30,000.00 | 15,100.00 | 50.33% |

CONFIDENTIAL

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Database Id: | GEMS_EAST | | **Comparative Income Statement** | | | | Page: | 3 |
| Report Id: | GEMS_CMPINCA | | **BUDGET COMPARATIVE INCOME STATEMENT** | | | | Date: | 6/9/2021 |
| | | | **GEMS_EAST** | | | | Time: | 08:21 AM |
| Consolidated | | | **Broad Street Healthcare I** | | | | | |
| Budget Type: | STD | | | | | | | |
| Basis | Accrual | | | | | | | |

| | | **Current Period** | | | | **Year-To-Date** | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Thru: | Actual<br>May 2021 | Budget<br>May 2021 | Variance | | YTD Actual<br>May 2021 | YTD Budget<br>May 2021 | YTD Variance | YTD<br>Var % |
| 518-25 | GEN BLDG-C.SVC ROOF REPAR | 0.00 | 250.00 | 250.00 | 100.00% | 0.00 | 1,250.00 | 1,250.00 | 100.00% |
| 518-27 | GEN BLDG-C.SVC EX/LANDSC | 0.00 | 625.00 | 625.00 | 100.00% | 625.00 | 1,250.00 | 625.00 | 50.00% |
| 518-28 | GEN BLDG-PRKG LOT REPAIRS | 0.00 | 250.00 | 250.00 | 100.00% | 0.00 | 1,250.00 | 1,250.00 | 100.00% |
| 518-32 | GEN BLDG-KEYS & LOCKS | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 518-40 | GEN BLDG-MAT/SUPPLIES | 0.00 | 250.00 | 250.00 | 100.00% | 44.14 | 1,250.00 | 1,205.86 | 96.47% |
| | TOTAL GENERAL BUILDING | 850.00 | 2,251.00 | 1,401.00 | 62.24% | 19,744.14 | 39,380.00 | 19,635.86 | 49.86% |
| UTILITIES | | | | | | | | | |
| 519-21 | UTILITIES-WATER | 34,144.00 | 14,000.00 | (20,144.00) | -143.89% | 148,095.99 | 88,750.00 | (59,345.99) | -66.87% |
| 519-23 | UTILITIES-ELECTRICITY | 22,296.86 | 39,000.00 | 16,703.14 | 42.83% | 135,063.76 | 240,000.00 | 104,936.24 | 43.72% |
| 519-24 | UTILITIES-STEAM | 10,661.01 | 10,000.00 | (661.01) | -6.61% | 148,784.67 | 160,000.00 | 11,215.33 | 7.01% |
| 519-25 | UTILITIES-GAS | 1,115.31 | 1,000.00 | (115.31) | -11.53% | 5,863.88 | 5,000.00 | (863.88) | -17.28% |
| | TOTAL UTILITIES | 68,217.18 | 64,000.00 | (4,217.18) | -6.59% | 437,808.30 | 493,750.00 | 55,941.70 | 11.33% |
| INSURANCE | | | | | | | | | |
| 531-31 | INSURANCE-PROPERTY | 61,381.29 | 61,660.00 | 278.71 | 0.45% | 333,540.79 | 282,698.00 | (50,842.79) | -17.98% |
| | TOTAL INSURANCE | 61,381.29 | 61,660.00 | 278.71 | 0.45% | 333,540.79 | 282,698.00 | (50,842.79) | -17.98% |
| REAL ESTATE TAXES | | | | | | | | | |
| 532-33 | R.E. TAXES-COUNTY | 1,567.71 | 30,980.00 | 29,412.29 | 94.94% | 7,838.57 | 154,900.00 | 147,061.43 | 94.94% |
| 532-34 | R.E. TAXES-CITY/BOROUGH | 2,732.68 | 3,150.00 | 417.32 | 13.25% | 13,663.40 | 15,750.00 | 2,086.60 | 13.25% |
| | TOTAL REAL ESTATE TAXES | 4,300.39 | 34,130.00 | 29,829.61 | 87.40% | 21,501.97 | 170,650.00 | 149,148.03 | 87.40% |
| OTHER PROFESSIONAL FEES | | | | | | | | | |
| | TOTAL PROFESSIONAL FEES | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| | TOTAL OPERATING EXPENSES | 214,819.73 | 273,727.00 | 58,907.27 | 21.52% | 1,378,487.83 | 1,596,243.00 | 217,755.17 | 13.64% |
| | NET OPERATING INCOME (LOSS) | (214,788.00) | (273,727.00) | 58,939.00 | 21.53% | (1,378,219.05) | (1,596,243.00) | 218,023.95 | 13.66% |

CONFIDENTIAL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Database Id: GEMS_EAST | | **Comparative Income Statement** | | | | Page: | 4 |
| Report Id: GEMS_CMPINCA | | **BUDGET COMPARATIVE INCOME STATEMENT** | | | | Date: | 6/9/2021 |
| | | **GEMS_EAST** | | | | Time: | 08:21 AM |
| Consolidated | | **Broad Street Healthcare I** | | | | | |
| Budget Type: STD | | | | | | | |
| Basis      Accrual | | | | | | | |

| | | Current Period | | | | Year-To-Date | | | |
| | | Actual | Budget | | | YTD Actual | YTD Budget | | YTD |
| | Thru: | May 2021 | May 2021 | Variance | | May 2021 | May 2021 | YTD Variance | Var % |
|---|---|---|---|---|---|---|---|---|---|
| **FINANCIAL EXPENSES** | | | | | | | | | |
| TOTAL FINANCIAL EXPENSES | | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| TOTAL OPER. & FIN. EXPEN. | | 214,819.73 | 273,727.00 | 58,907.27 | 21.52% | 1,378,487.83 | 1,596,243.00 | 217,755.17 | 13.64% |
| **NON-OPERATING EXPENSES** | | | | | | | | | |
| **ADMINISTRATIVE** | | | | | | | | | |
| 717-59   ADMIN-PROF FEES OTHER | | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 718-45   GEN BLDG-MISCELLANEOUS | | (15,165.10) | 0.00 | 15,165.10 | 0.00% | (611,026.77) | 0.00 | 611,026.77 | 100.00% |
| TOTAL ADMINISTRATIVE | | (15,165.10) | 0.00 | 15,165.10 | | (611,026.77) | 0.00 | 611,026.77 | |
| TOTAL NON-OPER. EXPENSES | | (15,165.10) | 0.00 | 15,165.10 | | (611,026.77) | 0.00 | 611,026.77 | |
| **PRIOR YEAR EXPENSE (INC)** | | | | | | | | | |
| 760-01   PRIOR PERIOD (INC) / EXP | | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| TOTAL PRIOR YEAR EXP/INC | | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| NET INCOME (LOSS) | | (199,622.90) | (273,727.00) | 74,104.10 | 27.07% | (767,192.28) | (1,596,243.00) | 829,050.72 | 51.94% |

CONFIDENTIAL

MBNF000881

| Database Id: | GEMS_EAST | **Comparative Income Statement** | | | | Page: | 1 |
|---|---|---|---|---|---|---|---|
| Report Id: | GEMS_CMPINCA | **BUDGET COMPARATIVE INCOME STATEMENT** | | | | Date: | 6/9/2021 |
| | PH096A | **GEMS_EAST** | | | | Time: | 08:21 AM |
| GL Entity | PH096A | **BROAD STREET NORTH/SOUTH TOWER** | | | | | |
| Budget Type: | STD | | | | | | |
| Basis | Accrual | | | | | | |

| | | **Current Period** | | | | **Year-To-Date** | | | |
| | Thru: | Actual<br>May 2021 | Budget<br>May 2021 | Variance | | YTD Actual<br>May 2021 | YTD Budget<br>May 2021 | YTD Variance | YTD<br>Var % |
|---|---|---|---|---|---|---|---|---|---|
| **INTEREST INCOME** | | | | | | | | | |
| 445-95 | INTEREST INCOME | 31.73 | 0.00 | 31.73 | 0.00% | 268.78 | 0.00 | 268.78 | 100.00% |
| | | | | | | | | | |
| TOTAL INTEREST INCOME | | 31.73 | 0.00 | 31.73 | | 268.78 | 0.00 | 268.78 | |
| | | | | | | | | | |
| TOTAL INCOME | | 31.73 | 0.00 | 31.73 | | 268.78 | 0.00 | 268.78 | |
| | | | | | | | | | |
| **OPERATING EXPENSES** | | | | | | | | | |
| | | | | | | | | | |
| **SECURITY/LIFE SAFETY** | | | | | | | | | |
| 510-22 | SEC/SAFETY-C.SVC FIRE SYS | 981.68 | 2,500.00 | 1,518.32 | 60.73% | 7,800.30 | 63,835.00 | 56,034.70 | 87.78% |
| 510-27 | SEC/SAFETY-CARD ACCESS | 42,667.48 | 51,855.00 | 9,187.52 | 17.72% | 223,074.43 | 259,275.00 | 36,200.57 | 13.96% |
| 510-35 | EMERGENCY GEN. SERVICE | 604.80 | 0.00 | (604.80) | 0.00% | 2,494.80 | 0.00 | (2,494.80) | -100.00% |
| 510-40 | SEC/SAFETY-MAT/SUPPLIES | 0.00 | 1,000.00 | 1,000.00 | 100.00% | 0.00 | 5,000.00 | 5,000.00 | 100.00% |
| | | | | | | | | | |
| TOTAL SECURITY/LIFE SAFT. | | 44,253.96 | 55,355.00 | 11,101.04 | 20.05% | 233,369.53 | 328,110.00 | 94,740.47 | 28.87% |
| | | | | | | | | | |
| **CLEANING** | | | | | | | | | |
| 511-20 | CLEANING-C.SVC BASE BLDG. | 2,213.40 | 2,279.00 | 65.60 | 2.88% | 11,067.00 | 11,395.00 | 328.00 | 2.88% |
| 511-40 | CLEANING-MAT/SUPPLIES | 141.61 | 200.00 | 58.39 | 29.20% | 283.22 | 1,000.00 | 716.78 | 71.68% |
| | | | | | | | | | |
| TOTAL CLEANING | | 2,355.01 | 2,479.00 | 123.99 | 5.00% | 11,350.22 | 12,395.00 | 1,044.78 | 8.43% |
| | | | | | | | | | |
| **ELECTRICAL** | | | | | | | | | |
| 512-20 | ELECT MAINT C.SVC | 0.00 | 2,500.00 | 2,500.00 | 100.00% | 42,339.01 | 12,500.00 | (29,839.01) | -238.71% |
| | | | | | | | | | |
| TOTAL ELECTRICAL | | 0.00 | 2,500.00 | 2,500.00 | 100.00% | 42,339.01 | 12,500.00 | (29,839.01) | -238.71% |
| | | | | | | | | | |
| **GENERAL REPAIRS/MAINT.** | | | | | | | | | |
| 513-09 | G REP/MAINT OTHER | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 513-20 | G REP/MAINT CONTRACT SVC | 0.00 | 2,500.00 | 2,500.00 | 100.00% | 6,682.08 | 12,500.00 | 5,817.92 | 46.54% |
| 513-45 | G REP/MAINT MISCELLANEOUS | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| | | | | | | | | | |
| TOTAL GEN. REPAIRS/MAINT. | | 0.00 | 2,500.00 | 2,500.00 | 100.00% | 6,682.08 | 12,500.00 | 5,817.92 | 46.54% |

CONFIDENTIAL

| Database Id: | GEMS_EAST | **Comparative Income Statement** | Page: | 2 |
|---|---|---|---|---|
| Report Id: | GEMS_CMPINCA | **BUDGET COMPARATIVE INCOME STATEMENT** | Date: | 6/9/2021 |
| | PH096A | **GEMS_EAST** | Time: | 08:21 AM |
| GL Entity | PH096A | **BROAD STREET NORTH/SOUTH TOWER** | | |
| Budget Type: | STD | | | |
| Basis | Accrual | | | |

| | | **Current Period** | | | **Year-To-Date** | | | |
| | | Actual | Budget | | YTD Actual | YTD Budget | | YTD |
| | Thru: | May 2021 | May 2021 | Variance | May 2021 | May 2021 | YTD Variance | Var % |
|---|---|---|---|---|---|---|---|---|
| **HVAC MAINTENANCE** | | | | | | | | |
| 514-01 | HVAC MAINT WAGES | 11,037.60 | 11,369.00 | 331.40 | 2.91% | 66,225.60 | 56,845.00 | (9,380.60) | -16.50% |
| 514-27 | HVAC MAINT.& REPAIR | 0.00 | 10,000.00 | 10,000.00 | 100.00% | 86,544.28 | 50,000.00 | (36,544.28) | -73.09% |
| 514-51 | HVAC MAINT-WATER TREATME | 1,512.00 | 1,557.00 | 45.00 | 2.89% | 7,560.00 | 7,785.00 | 225.00 | 2.89% |
| | TOTAL HVAC MAINTENANCE | 12,549.60 | 22,926.00 | 10,376.40 | 45.26% | 160,329.88 | 114,630.00 | (45,699.88) | -39.87% |
| **PLUMBING** | | | | | | | | |
| 515-21 | PLUMBING REPAIRS | 0.00 | 5,000.00 | 5,000.00 | 100.00% | 8,394.58 | 25,000.00 | 16,605.42 | 66.42% |
| | TOTAL PLUMBING | 0.00 | 5,000.00 | 5,000.00 | 100.00% | 8,394.58 | 25,000.00 | 16,605.42 | 66.42% |
| **ELEVATOR** | | | | | | | | |
| 516-20 | ELEVATOR-CONTRACT SVC | 1,529.28 | 1,530.00 | 0.72 | 0.05% | 7,469.28 | 7,650.00 | 180.72 | 2.36% |
| 516-25 | ELEV-REP & MAINT-BLDG | 3,417.00 | 2,000.00 | (1,417.00) | -70.85% | 14,060.50 | 10,000.00 | (4,060.50) | -40.61% |
| | TOTAL ELEVATOR | 4,946.28 | 3,530.00 | (1,416.28) | -40.12% | 21,529.78 | 17,650.00 | (3,879.78) | -21.98% |
| **ADMINISTRATIVE** | | | | | | | | |
| 517-01 | ADMIN-SALARIES WAGES | 7,448.27 | 8,831.00 | 1,382.73 | 15.66% | 39,500.42 | 44,155.00 | 4,654.58 | 10.54% |
| 517-41 | ADMIN-POSTAGE | 0.00 | 50.00 | 50.00 | 100.00% | 40.00 | 250.00 | 210.00 | 84.00% |
| 517-44 | ADMIN-TELEPHONE | 913.87 | 930.00 | 16.13 | 1.73% | 1,579.78 | 4,650.00 | 3,070.22 | 66.03% |
| 517-45 | ADMIN-MISCELLANEOUS | 0.00 | 160.00 | 160.00 | 100.00% | 0.00 | 800.00 | 800.00 | 100.00% |
| 517-50 | ADMIN-TRAVEL | 119.00 | 100.00 | (19.00) | -19.00% | 450.47 | 500.00 | 49.53 | 9.91% |
| 517-55 | ADMIN-LICENSES & PERMITS | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 517-59 | ADMIN-PROF FEES OTHER | 100.00 | 100.00 | 0.00 | 0.00% | 3,331.27 | 500.00 | (2,831.27) | -566.25% |
| 517-60 | ADMIN-MGMT FEES/GEMS | 6,975.00 | 7,125.00 | 150.00 | 2.11% | 34,875.00 | 35,625.00 | 750.00 | 2.11% |
| 517-61 | ADMIN-MGMT FEES/OTHERS | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 0.00% |
| 517-68 | ADMIN-BANK CHARGES | 103.22 | 100.00 | (3.22) | -3.22% | 553.23 | 500.00 | (53.23) | -10.65% |
| | TOTAL ADMINISTRATIVE | 15,659.36 | 17,396.00 | 1,736.64 | 9.98% | 80,330.17 | 86,980.00 | 6,649.83 | 7.65% |
| **GENERAL BUILDING** | | | | | | | | |
| 518-07 | GEN BLDG-INSURANCE | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 518-20 | GEN BLDG-C.SVC EXTERMINA | 700.00 | 721.00 | 21.00 | 2.91% | 3,425.00 | 3,605.00 | 180.00 | 4.99% |
| 518-21 | GEN BLDG-C.SVC TRASH HAUL | 150.00 | 155.00 | 5.00 | 3.23% | 750.00 | 775.00 | 25.00 | 3.23% |
| 518-24 | GEN BLDG-C.SVC SNOW REMO | 0.00 | 0.00 | 0.00 | 0.00% | 14,900.00 | 30,000.00 | 15,100.00 | 50.33% |

CONFIDENTIAL

| Database Id: | GEMS_EAST | **Comparative Income Statement** | Page: | 3 |
| Report Id: | GEMS_CMPINCA | **BUDGET COMPARATIVE INCOME STATEMENT** | Date: | 6/9/2021 |
| | PH096A | **GEMS_EAST** | Time: | 08:21 AM |
| GL Entity | PH096A | **BROAD STREET NORTH/SOUTH TOWER** | | |
| Budget Type: | STD | | | |
| Basis | Accrual | | | |

| | | **Current Period** | | | | **Year-To-Date** | | | |
| | | Actual | Budget | Variance | | YTD Actual | YTD Budget | YTD Variance | YTD |
| | Thru: | May 2021 | May 2021 | | | May 2021 | May 2021 | | Var % |
|---|---|---|---|---|---|---|---|---|---|
| 518-25 | GEN BLDG-C.SVC ROOF REPAIR | 0.00 | 250.00 | 250.00 | 100.00% | 0.00 | 1,250.00 | 1,250.00 | 100.00% |
| 518-27 | GEN BLDG-C.SVC EX/LANDSC | 0.00 | 625.00 | 625.00 | 100.00% | 625.00 | 1,250.00 | 625.00 | 50.00% |
| 518-28 | GEN BLDG-PRKG LOT REPAIRS | 0.00 | 250.00 | 250.00 | 100.00% | 0.00 | 1,250.00 | 1,250.00 | 100.00% |
| 518-32 | GEN BLDG-KEYS & LOCKS | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 518-40 | GEN BLDG-MAT/SUPPLIES | 0.00 | 250.00 | 250.00 | 100.00% | 44.14 | 1,250.00 | 1,205.86 | 96.47% |
| | TOTAL GENERAL BUILDING | 850.00 | 2,251.00 | 1,401.00 | 62.24% | 19,744.14 | 39,380.00 | 19,635.86 | 49.86% |
| UTILITIES | | | | | | | | | |
| 519-21 | UTILITIES-WATER | 34,144.00 | 14,000.00 | (20,144.00) | -143.89% | 148,095.99 | 88,750.00 | (59,345.99) | -66.87% |
| 519-23 | UTILITIES-ELECTRICITY | 22,296.86 | 39,000.00 | 16,703.14 | 42.83% | 135,063.76 | 240,000.00 | 104,936.24 | 43.72% |
| 519-24 | UTILITIES-STEAM | 10,661.01 | 10,000.00 | (661.01) | -6.61% | 148,784.67 | 160,000.00 | 11,215.33 | 7.01% |
| 519-25 | UTILITIES-GAS | 1,115.31 | 1,000.00 | (115.31) | -11.53% | 5,863.88 | 5,000.00 | (863.88) | -17.28% |
| | TOTAL UTILITIES | 68,217.18 | 64,000.00 | (4,217.18) | -6.59% | 437,808.30 | 493,750.00 | 55,941.70 | 11.33% |
| INSURANCE | | | | | | | | | |
| 531-31 | INSURANCE-PROPERTY | 61,381.29 | 61,660.00 | 278.71 | 0.45% | 333,540.79 | 282,698.00 | (50,842.79) | -17.98% |
| | TOTAL INSURANCE | 61,381.29 | 61,660.00 | 278.71 | 0.45% | 333,540.79 | 282,698.00 | (50,842.79) | -17.98% |
| REAL ESTATE TAXES | | | | | | | | | |
| 532-33 | R.E. TAXES-COUNTY | 1,187.90 | 30,980.00 | 29,792.10 | 96.17% | 5,939.51 | 154,900.00 | 148,960.49 | 96.17% |
| 532-34 | R.E. TAXES-CITY/BOROUGH | 2,642.38 | 3,150.00 | 507.62 | 16.11% | 13,211.90 | 15,750.00 | 2,538.10 | 16.11% |
| | TOTAL REAL ESTATE TAXES | 3,830.28 | 34,130.00 | 30,299.72 | 88.78% | 19,151.41 | 170,650.00 | 151,498.59 | 88.78% |
| OTHER PROFESSIONAL FEES | | | | | | | | | |
| | TOTAL PROFESSIONAL FEES | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| | TOTAL OPERATING EXPENSES | 214,042.96 | 273,727.00 | 59,684.04 | 21.80% | 1,374,569.89 | 1,596,243.00 | 221,673.11 | 13.89% |
| | NET OPERATING INCOME (LOSS) | (214,011.23) | (273,727.00) | 59,715.77 | 21.82% | (1,374,301.11) | (1,596,243.00) | 221,941.89 | 13.90% |

CONFIDENTIAL

MBNF000884

| Database Id: | GEMS_EAST | **Comparative Income Statement** | Page: | 4 |
| Report Id: | GEMS_CMPINCA | **BUDGET COMPARATIVE INCOME STATEMENT** | Date: | 6/9/2021 |
| | PH096A | **GEMS_EAST** | Time: | 08:21 AM |
| GL Entity | PH096A | **BROAD STREET NORTH/SOUTH TOWER** | | |
| Budget Type: | STD | | | |
| Basis | Accrual | | | |

| | | Current Period | | | | Year-To-Date | | | |
| | | Actual | Budget | | | YTD Actual | YTD Budget | | YTD |
| | Thru: | May 2021 | May 2021 | Variance | | May 2021 | May 2021 | YTD Variance | Var % |
|---|---|---|---|---|---|---|---|---|---|
| **FINANCIAL EXPENSES** | | | | | | | | | |
| TOTAL FINANCIAL EXPENSES | | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| TOTAL OPER. & FIN. EXPEN. | | 214,042.96 | 273,727.00 | 59,684.04 | 21.80% | 1,374,569.89 | 1,596,243.00 | 221,673.11 | 13.89% |
| **NON-OPERATING EXPENSES** | | | | | | | | | |
| ADMINISTRATIVE | | | | | | | | | |
| 717-59 | ADMIN-PROF FEES OTHER | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| 718-45 | GEN BLDG-MISCELLANEOUS | (15,165.10) | 0.00 | 15,165.10 | 0.00% | (611,026.77) | 0.00 | 611,026.77 | 100.00% |
| TOTAL ADMINISTRATIVE | | (15,165.10) | 0.00 | 15,165.10 | | (611,026.77) | 0.00 | 611,026.77 | |
| TOTAL NON-OPER. EXPENSES | | (15,165.10) | 0.00 | 15,165.10 | | (611,026.77) | 0.00 | 611,026.77 | |
| **PRIOR YEAR EXPENSE (INC)** | | | | | | | | | |
| 760-01 | PRIOR PERIOD (INC) / EXP | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00 | 100.00% |
| TOTAL PRIOR YEAR EXP/INC | | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| NET INCOME (LOSS) | | (198,846.13) | (273,727.00) | 74,880.87 | 27.36% | (763,274.34) | (1,596,243.00) | 832,968.66 | 52.18% |

CONFIDENTIAL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Database Id: GEMS_EAST | | **Comparative Income Statement** | | | | Page: | 5 |
| Report Id: GEMS_CMPINCA | | **BUDGET COMPARATIVE INCOME STATEMENT** | | | | Date: | 6/9/2021 |
| PH096B | | **GEMS_EAST** | | | | Time: | 08:21 AM |
| GL Entity PH096B | | **BROAD STREET LAND/SHSH** | | | | | |
| Budget Type: STD | | | | | | | |
| Basis Accrual | | | | | | | |

| | Current Period | | | | Year-To-Date | | |
| | Actual | Budget | | | YTD Actual | YTD Budget | | YTD |
| Thru: | May 2021 | May 2021 | Variance | | May 2021 | May 2021 | YTD Variance | Var % |
|---|---|---|---|---|---|---|---|---|
| TOTAL INCOME | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | |
| OPERATING EXPENSES | | | | | | | | |
| | | | | | | | | |
| ADMINISTRATIVE | | | | | | | | |
| 517-01      ADMIN-SALARIES WAGES | 78.33 | 0.00 | (78.33) | 0.00% | 408.11 | 0.00 | (408.11) | -100.00% |
| 517-59      ADMIN-PROF FEES OTHER | 0.00 | 0.00 | 0.00 | 0.00% | 1.16 | 0.00 | (1.16) | -100.00% |
| 517-60      ADMIN-MGMT FEES/GEMS | 75.00 | 0.00 | (75.00) | 0.00% | 375.00 | 0.00 | (375.00) | -100.00% |
| TOTAL ADMINISTRATIVE | 153.33 | 0.00 | (153.33) | | 784.27 | 0.00 | (784.27) | |
| | | | | | | | | |
| REAL ESTATE TAXES | | | | | | | | |
| 532-33      R.E. TAXES-COUNTY | 379.81 | 0.00 | (379.81) | 0.00% | 1,899.06 | 0.00 | (1,899.06) | -100.00% |
| 532-34      R.E. TAXES-CITY/BOROUGH | 90.30 | 0.00 | (90.30) | 0.00% | 451.50 | 0.00 | (451.50) | -100.00% |
| TOTAL REAL ESTATE TAXES | 470.11 | 0.00 | (470.11) | | 2,350.56 | 0.00 | (2,350.56) | |
| | | | | | | | | |
| OTHER PROFESSIONAL FEES | | | | | | | | |
| TOTAL PROFESSIONAL FEES | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | |
| TOTAL OPERATING EXPENSES | 623.44 | 0.00 | (623.44) | | 3,134.83 | 0.00 | (3,134.83) | |
| | | | | | | | | |
| NET OPERATING INCOME (LOSS) | (623.44) | 0.00 | (623.44) | | (3,134.83) | 0.00 | (3,134.83) | |
| | | | | | | | | |
| FINANCIAL EXPENSES | | | | | | | | |
| TOTAL FINANCIAL EXPENSES | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | |
| TOTAL OPER. & FIN. EXPEN. | 623.44 | 0.00 | (623.44) | | 3,134.83 | 0.00 | (3,134.83) | |

CONFIDENTIAL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Database Id: GEMS_EAST | | Comparative Income Statement | | | | Page: | 6 |
| Report Id: GEMS_CMPINCA | | BUDGET COMPARATIVE INCOME STATEMENT | | | | Date: | 6/9/2021 |
| PH096B | | GEMS_EAST | | | | Time: | 08:21 AM |
| GL Entity PH096B | | BROAD STREET LAND/SHSH | | | | | |
| Budget Type: STD | | | | | | | |
| Basis Accrual | | | | | | | |

| | | Current Period | | | Year-To-Date | | | |
| | Thru: | Actual May 2021 | Budget May 2021 | Variance | YTD Actual May 2021 | YTD Budget May 2021 | YTD Variance | YTD Var % |
|---|---|---|---|---|---|---|---|---|
| NON-OPERATING EXPENSES | | | | | | | | |
| TOTAL NON-OPER. EXPENSES | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| PRIOR YEAR EXPENSE (INC) | | | | | | | | |
| TOTAL PRIOR YEAR EXP/INC | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| NET INCOME (LOSS) | | (623.44) | 0.00 | (623.44) | (3,134.83) | 0.00 | (3,134.83) | |

CONFIDENTIAL

MBNF000887

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Database Id: GEMS_EAST | | **Comparative Income Statement** | | | | Page: | 7 |
| Report Id: GEMS_CMPINCA | | **BUDGET COMPARATIVE INCOME STATEMENT** | | | | Date: | 6/9/2021 |
| PH096C | | **GEMS_EAST** | | | | Time: | 08:21 AM |
| GL Entity PH096C | | **BROAD STREET STILES ALUMNI HAL** | | | | | |
| Budget Type: STD | | | | | | | |
| Basis Accrual | | | | | | | |

| | **Current Period** | | | | **Year-To-Date** | | |
| | Actual | Budget | | | YTD Actual | YTD Budget | | YTD |
| Thru: | May 2021 | May 2021 | Variance | | May 2021 | May 2021 | YTD Variance | Var % |
|---|---|---|---|---|---|---|---|---|
| TOTAL INCOME | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| OPERATING EXPENSES | | | | | | | | |
| ADMINISTRATIVE | | | | | | | | |
| 517-01     ADMIN-SALARIES WAGES | 78.33 | 0.00 | (78.33) | 0.00% | 408.11 | 0.00 | (408.11) | -100.00% |
| 517-60     ADMIN-MGMT FEES/GEMS | 75.00 | 0.00 | (75.00) | 0.00% | 375.00 | 0.00 | (375.00) | -100.00% |
| TOTAL ADMINISTRATIVE | 153.33 | 0.00 | (153.33) | | 783.11 | 0.00 | (783.11) | |
| OTHER PROFESSIONAL FEES | | | | | | | | |
| TOTAL PROFESSIONAL FEES | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| TOTAL OPERATING EXPENSES | 153.33 | 0.00 | (153.33) | | 783.11 | 0.00 | (783.11) | |
| NET OPERATING INCOME (LOSS) | (153.33) | 0.00 | (153.33) | | (783.11) | 0.00 | (783.11) | |
| FINANCIAL EXPENSES | | | | | | | | |
| TOTAL FINANCIAL EXPENSES | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| TOTAL OPER. & FIN. EXPEN. | 153.33 | 0.00 | (153.33) | | 783.11 | 0.00 | (783.11) | |
| NON-OPERATING EXPENSES | | | | | | | | |
| TOTAL NON-OPER. EXPENSES | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| PRIOR YEAR EXPENSE (INC) | | | | | | | | |

CONFIDENTIAL

MBNF000888

| Database Id: | GEMS_EAST | | | | | | | Page: | 8 |
|---|---|---|---|---|---|---|---|---|---|
| Report Id: | GEMS_CMPINCA | | | | | | | Date: | 6/9/2021 |
| | PH096C | | | | | | | Time: | 08:21 AM |
| GL Entity | PH096C | | | | | | | | |
| Budget Type: | STD | | | | | | | | |
| Basis | Accrual | | | | | | | | |

**Comparative Income Statement**
**BUDGET COMPARATIVE INCOME STATEMENT**
**GEMS_EAST**
**BROAD STREET STILES ALUMNI HAL**

| | Thru: | **Current Period** | | | | **Year-To-Date** | | | |
| | | Actual May 2021 | Budget May 2021 | Variance | | YTD Actual May 2021 | YTD Budget May 2021 | YTD Variance | YTD Var % |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL PRIOR YEAR EXP/INC | | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | |
| NET INCOME (LOSS) | | (153.33) | 0.00 | (153.33) | | (783.11) | 0.00 | (783.11) | |

MBNF000889

| Database: | GEMS_EAST | STANDARD BALANCE SHEET | Page: | 1 |
|---|---|---|---|---|
| | | GEMS_EAST | Date: | 6/9/2021 |
| | | Broad Street Healthcare I | Time: | 08:22 AM |

Accrual

May 2021

ASSETS
CURRENT ASSETS
CASH .................................................. 767,153.03
UTILITY DEPOSIT ............................ 150,000.00
PREPAID INSURANCE ..................... 552,431.57
PREPAID REAL ESTATE TAX ......... 30,102.79

   TOTAL CURRENT ASSETS ........... 1,499,687.39

PROP, PLANT, & EQUIP
CONSTRUCTION IN PROGRESS ..... 17,500.00

   TOTAL PROP,PLANT,EQUIP ......... 17,500.00


TOTAL ASSETS ................................ 1,517,187.39


LIAB & EQUITY
CURRENT LIABILITY
ACCRUED OPERATING EXPENSE .. 193,696.67
SHORT TERM NOTE PAYABLE ....... 452,074.96

   TOTAL CURRENT LIABILITY ......... 645,771.63

LONG TERM LIABILITY

   TOTAL LONG TERM LIAB ............. 0.00

EQUITY
TRANSFER OF FUNDS ..................... 1,235,484.49
EQUITY-OWNER CONTRIBUTIONS .. 4,444,973.74
EQUITY-OWNER DISTRIBUTIONS ... (184,954.98)
RETAINED EARNINGS ..................... (3,856,895.21)
CURRENT EARNINGS ...................... (767,192.28)

   TOTAL EQUITY ............................. 871,415.76


TOTAL LIAB & EQUITY .................... 1,517,187.39

MBNF000890

| Database: | GEMS_EAST | **STANDARD BALANCE SHEET** | Page: | 1 |
|-----------|-----------|----------------------------|-------|---|
| ENTITY: | PH096A | **GEMS_EAST** | Date: | 6/9/2021 |
| | | **BROAD STREET NORTH/SOUTH TOWER** | Time: | 08:22 AM |

Accrual

May 2021

ASSETS
CURRENT ASSETS
| CASH | 777,519.85 |
|------|-----------|
| UTILITY DEPOSIT | 150,000.00 |
| PREPAID INSURANCE | 552,431.57 |
| PREPAID REAL ESTATE TAX | 26,812.00 |
| TOTAL CURRENT ASSETS | 1,506,763.42 |

PROP, PLANT, & EQUIP
| CONSTRUCTION IN PROGRESS | 17,500.00 |
|--------------------------|-----------|
| TOTAL PROP,PLANT,EQUIP | 17,500.00 |

| TOTAL ASSETS | 1,524,263.42 |
|--------------|--------------|

LIAB & EQUITY
CURRENT LIABILITY
| ACCRUED OPERATING EXPENSE | 193,696.67 |
|---------------------------|-----------|
| SHORT TERM NOTE PAYABLE | 452,074.96 |
| TOTAL CURRENT LIABILITY | 645,771.63 |

LONG TERM LIABILITY
| TOTAL LONG TERM LIAB | 0.00 |
|----------------------|------|

EQUITY
| TRANSFER OF FUNDS | 1,235,484.49 |
|-------------------|--------------|
| EQUITY-OWNER CONTRIBUTIONS | 4,444,973.74 |
| EQUITY-OWNER DISTRIBUTIONS | (184,954.98) |
| RETAINED EARNINGS | (3,853,737.12) |
| CURRENT EARNINGS | (763,274.34) |
| TOTAL EQUITY | 878,491.79 |

| TOTAL LIAB & EQUITY | 1,524,263.42 |
|---------------------|--------------|

CONFIDENTIAL

| Database: | GEMS_EAST | **STANDARD BALANCE SHEET** | Page: | 2 |
|-----------|-----------|----------------------------|-------|---|
| ENTITY: | PH096B | **GEMS_EAST** | Date: | 6/9/2021 |
| | | **BROAD STREET LAND/SHSH** | Time: | 08:22 AM |

Accrual

May 2021

ASSETS
CURRENT ASSETS
CASH                                        (8,562.24)
PREPAID REAL ESTATE TAX                       3,290.79
                                            _____
  TOTAL CURRENT ASSETS                       (5,271.45)

PROP, PLANT, & EQUIP                        _____

  TOTAL PROP,PLANT,EQUIP                         0.00
                                            _____

TOTAL ASSETS                                 (5,271.45)
                                            ════════════


LIAB & EQUITY
CURRENT LIABILITY                           _____

  TOTAL CURRENT LIABILITY                        0.00

LONG TERM LIABILITY                         _____

  TOTAL LONG TERM LIAB                           0.00

EQUITY
RETAINED EARNINGS                            (2,136.62)
CURRENT EARNINGS                             (3,134.83)
                                            _____
  TOTAL EQUITY                               (5,271.45)

                                            _____

TOTAL LIAB & EQUITY                          (5,271.45)
                                            ════════════

CONFIDENTIAL

| Database: | GEMS_EAST | **STANDARD BALANCE SHEET** | Page: | 3 |
|---|---|---|---|---|
| ENTITY: | PH096C | **GEMS_EAST** | Date: | 6/9/2021 |
| | | **BROAD STREET STILES ALUMNI HAL** | Time: | 08:22 AM |

Accrual

May 2021

ASSETS
CURRENT ASSETS
CASH                                                (1,804.58)

   TOTAL CURRENT ASSETS                            (1,804.58)

PROP, PLANT, & EQUIP

   TOTAL PROP,PLANT,EQUIP                              0.00

TOTAL ASSETS                                        (1,804.58)


LIAB & EQUITY
CURRENT LIABILITY

   TOTAL CURRENT LIABILITY                             0.00

LONG TERM LIABILITY

   TOTAL LONG TERM LIAB                                0.00

EQUITY
RETAINED EARNINGS                                   (1,021.47)
CURRENT EARNINGS                                      (783.11)

   TOTAL EQUITY                                    (1,804.58)


TOTAL LIAB & EQUITY                                  (1,804.58)

CONFIDENTIAL

| | | | | | | | | | | Page: | 1 |

**General Ledger**
GEMS_EAST
Broad Street Healthcare I

| Database: | GEMS_EAST | | | | | | | Page: | 1 |
|---|---|---|---|---|---|---|---|---|---|

Date: 6/9/2021
Time: 08:23 AM

Accrual

05/21 - 05/21

| Account Entity | Period | Entry Date | Src | Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **111-04** | | **CASH** | | | | | | *Balance Forward* | | | *80,212.05* |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | | | 1239 5/6/2021 ELECTRONIC SECURITY & CONTROL | 0.00 | 605.00 | 79,607.05 |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | | | 1260 5/10/2021 GDI SERVICES INC | 0.00 | 2,213.40 | 77,393.65 |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | | | 1260 5/12/2021 GDI SERVICES INC | 2,213.40 | 0.00 | 79,607.05 |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | | | 1132 5/5/2021 WESTERN PEST SERVICES | 700.00 | 0.00 | 80,307.05 |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | | | 1235 5/5/2021 WESTERN PEST SERVICES | 0.00 | 700.00 | 79,607.05 |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | | | A/P Cash Disbursed for checks  1235-1269 | 0.00 | 247,175.04 | -167,567.99 |
| PH096B | 05/21 | 5/31/2021 | AP | 203331 | 06 | | | A/P Cash Disbursed for checks  1244-1244 | 0.00 | 151.16 | -167,719.15 |
| PH096C | 05/21 | 5/31/2021 | AP | 203333 | 06 | | | A/P Cash Disbursed for checks  1257-1257 | 0.00 | 150.00 | -167,869.15 |
| PH096A | 05/21 | 5/8/2021 | JE | PH096B | 06 | | | BankDirect Auto-Debit | 0.00 | 72,466.50 | -240,335.65 |
| PH096A | 05/21 | 5/26/2021 | JE | PH9612 | 06 | | | Ins. Proceeds - Aspen | 5,055.03 | 0.00 | -235,280.62 |
| PH096A | 05/21 | 5/31/2021 | JE | PH96BF | 06 | | | Int Period Ending 04/30/2021 | 31.73 | 0.00 | -235,248.89 |
| PH096A | 05/21 | 5/31/2021 | JE | PH96BF | 06 | | | Corporate Account Analysis Charge | 0.00 | 103.22 | -235,352.11 |
| PH096A | 05/21 | 5/19/2021 | JE | PH96IN | 06 | | | Insurance Proceeds | 10,110.07 | 0.00 | -225,242.04 |
| PH096A | 05/21 | 5/6/2021 | JE | PH96WT | 06 | | | Funding from Ownership | 1,000,000.00 | 0.00 | 774,757.96 |
| PH096A | 05/21 | 5/13/2021 | PR | PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 0.00 | 3,596.63 | 771,161.33 |
| PH096B | 05/21 | 5/13/2021 | PR | PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 0.00 | 38.67 | 771,122.66 |
| PH096C | 05/21 | 5/13/2021 | PR | PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 0.00 | 38.67 | 771,083.99 |
| PH096A | 05/21 | 5/26/2021 | PR | PH96P2 | 06 | | | Payroll 05/25/21 | 0.00 | 116.72 | 770,967.27 |
| PH096A | 05/21 | 5/27/2021 | PR | PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 0.00 | 3,734.92 | 767,232.35 |
| PH096B | 05/21 | 5/27/2021 | PR | PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 0.00 | 39.66 | 767,192.69 |
| PH096C | 05/21 | 5/27/2021 | PR | PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 0.00 | 39.66 | 767,153.03 |
| | | | | | | | | ** **Account Totals** | 1,018,110.23 | 331,169.25 | **767,153.03** |
| **111-50** | | **UTILITY DEPOSIT** | | | | | | *Balance Forward* | | | *150,000.00* |
| **117-21** | | **PREPAID INSURANCE** | | | | | | *Balance Forward* | | | *613,812.86* |
| PH096A | 05/21 | 5/31/2021 | AC | 96PPI | 06 | | | Expense PPI | 0.00 | 61,381.29 | 552,431.57 |
| | | | | | | | | ** **Account Totals** | 0.00 | 61,381.29 | **552,431.57** |
| **117-22** | | **PREPAID REAL ESTATE TAX** | | | | | | *Balance Forward* | | | *34,403.18* |
| PH096A | 05/21 | 5/31/2021 | AC | 96RETX | 06 | | | Expense RE Tax | 0.00 | 3,830.28 | 30,572.90 |
| PH096B | 05/21 | 5/31/2021 | AC | 96RETX | 06 | | | Expense RE Tax | 0.00 | 470.11 | 30,102.79 |
| | | | | | | | | ** **Account Totals** | 0.00 | 4,300.39 | **30,102.79** |

CONFIDENTIAL

MBNF000894

| Database: | GEMS_EAST | | | | | General Ledger | | | Page: | 2 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | GEMS_EAST | | | Date: | 6/9/2021 |
| | | | | | | Broad Street Healthcare I | | | Time: | 08:23 AM |
| Accrual | | | | | | 05/21 - 05/21 | | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

179-01 - CONSTRUCTION IN PROGRESS  (Continued)

| Account Entity | Period | Entry Date | Src | Reference | Site Id | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|
| **179-01** | | | **CONSTRUCTION IN PROGRESS** | | | *Balance Forward* | | | *17,500.00* |
| **211-05** | | | **ACCOUNTS PAYABLE** | | | *Balance Forward* | | | *-113,584.75* |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | A/P Total Payables for 05/21 | 605.00 | 0.00 | -112,979.75 |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | A/P Total Payables for 05/21 | 46,356.32 | 0.00 | -66,623.43 |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | A/P Total Payables for 05/21 | 26,006.89 | 0.00 | -40,616.54 |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | A/P Total Payables for 05/21 | 700.00 | 0.00 | -39,916.54 |
| PH096A | 05/21 | 5/31/2021 | AP | 203329 | 06 | A/P Total Payables for 05/21 | 39,765.38 | 0.00 | -151.16 |
| PH096B | 05/21 | 5/31/2021 | AP | 203331 | 06 | A/P Total Payables for 05/21 | 76.16 | 0.00 | -75.00 |
| PH096C | 05/21 | 5/31/2021 | AP | 203333 | 06 | A/P Total Payables for 05/21 | 75.00 | 0.00 | 0.00 |
| | | | | | | ** Account Totals | 113,584.75 | 0.00 | **0.00** |
| **211-06** | | | **ACCRUED OPERATING EXPENSE** | | | *Balance Forward* | | | *-186,763.22* |
| PH096A | 05/21 | 4/30/2021 | AC | 96AA04 | 06 | 04/21 Accrual | 186,763.22 | 0.00 | 0.00 |
| PH096A | 05/21 | 5/31/2021 | AC | 96AC05 | 06 | 05/21 Accruals | 0.00 | 193,696.67 | -193,696.67 |
| | | | | | | ** Account Totals | 186,763.22 | 193,696.67 | **-193,696.67** |
| **211-08** | | | **SHORT TERM NOTE PAYABLE** | | | *Balance Forward* | | | *-460,973.88* |
| PH096A | 05/21 | 5/31/2021 | AC | 96NPRA | 06 | Re-allocate ST NP from 96G to 96A PH096G sold 4/6/21. Reallocated La bility to PH096A. | 0.00 | 42,320.40 | -503,294.28 |
| PH096A | 05/21 | 5/8/2021 | JE | PH096B | 06 | BankDirect Auto-Debit | 51,219.32 | 0.00 | -452,074.96 |
| | | | | | | ** Account Totals | 51,219.32 | 42,320.40 | **-452,074.96** |
| **211-12** | | | **ACCRUED REAL ESTATE TAX** | | | *Balance Forward* | | | *0.00* |
| **212-10** | | | **OTHER LONG TERM LOAN PAYAE** | | | *Balance Forward* | | | *0.00* |
| **255-55** | | | **TRANSFER OF FUNDS** | | | *Balance Forward* | | | *-1,299,052.07* |
| PH096A | 05/21 | 5/31/2021 | AC | 96NPRA | 06 | Re-allocate ST NP from 96G to 96A PH096G sold 4/6/21. Reallocated La bility to PH096A. | 42,320.40 | 0.00 | -1,256,731.67 |
| PH096A | 05/21 | 5/8/2021 | JE | PH096B | 06 | BankDirect Auto-Debit | 7,340.86 | 0.00 | -1,249,390.81 |
| PH096A | 05/21 | 5/8/2021 | JE | PH096B | 06 | BankDirect Auto-Debit | 8,616.27 | 0.00 | -1,240,774.54 |

CONFIDENTIAL

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Database: | GEMS_EAST | | | | | **General Ledger**<br>GEMS_EAST<br>Broad Street Healthcare I | | | Page:<br>Date:<br>Time: | | 3<br>6/9/2021<br>08:23 AM |
| Accrual | | | | | | 05/21 - 05/21 | | | | |

| Account<br>Entity | Period | Entry<br>Date | Src Reference | Site<br>Id | Job<br>Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **255-55 - TRANSFER OF FUNDS** (Continued) | | | | | | | | | | |
| PH096A | 05/21 | 5/8/2021 | JE  PH096B | 06 | | | BankDirect Auto-Debit | 5,290.05 | 0.00 | -1,235,484.49 |
| | | | | | | | ** **Account Totals** | 63,567.58 | 0.00 | **-1,235,484.49** |
| **256-10** | | | **EQUITY-OWNER CONTRIBUTIONS** | | | | *Balance Forward* | | | *-3,444,973.74* |
| PH096A | 05/21 | 5/6/2021 | JE  PH96WT | 06 | | | Funding from Ownership | 0.00 | 1,000,000.00 | -4,444,973.74 |
| | | | | | | | ** **Account Totals** | 0.00 | 1,000,000.00 | **-4,444,973.74** |
| **257-10** | | | **EQUITY-OWNER DISTRIBUTIONS** | | | | *Balance Forward* | | | *184,954.98* |
| **290-00** | | | **RETAINED EARNINGS** | | | | *Balance Forward* | | | *3,856,895.21* |
| **290-01** | | | **CURRENT EARNINGS** | | | | *Balance Forward* | | | *0.00* |
| **444-99** | | | **MISCELLANEOUS INCOME** | | | | *Balance Forward* | | | *0.00* |
| **445-95** | | | **INTEREST INCOME** | | | | *Balance Forward* | | | *-237.05* |
| PH096A | 05/21 | 5/31/2021 | JE  PH96BF | 06 | | | Int Period Ending 04/30/2021 | 0.00 | 31.73 | -268.78 |
| | | | | | | | ** **Account Totals** | 0.00 | 31.73 | **-268.78** |
| **510-22** | | | **SEC/SAFETY-C.SVC FIRE SYS** | | | | *Balance Forward* | | | *6,818.62* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1249 5/6/2021 HVAC SERVICE<br>OLIVER SPRINKLER CO., INC. | 981.68 | 0.00 | 7,800.30 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1262 5/12/2021 10th FL SMOKE<br>DETECT ELECTRONIC SECURITY SYSTEMS | 605.00 | 0.00 | 8,405.30 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1239 5/12/2021 wrong vendor ID<br>ELECTRONIC SECURITY & CONTROL | 0.00 | 605.00 | 7,800.30 |
| | | | | | | | ** **Account Totals** | 1,586.68 | 605.00 | **7,800.30** |
| **510-27** | | | **SEC/SAFETY-CARD ACCESS** | | | | *Balance Forward* | | | *180,406.95* |
| PH096A | 05/21 | 4/30/2021 | AC  96AA04 | 06 | | | 04/21 Accrual | 0.00 | 50,517.67 | 129,889.28 |
| PH096A | 05/21 | 5/31/2021 | AC  96AC05 | 06 | | | 05/21 Accruals | 42,533.67 | 0.00 | 172,422.95 |

CONFIDENTIAL

| Database: | GEMS_EAST | | | | | | | Page: | 4 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | General Ledger | | | | Date: | 6/9/2021 |
| | | | | GEMS_EAST | | | | Time: | 08:23 AM |
| | | | | Broad Street Healthcare I | | | | | |
| Accrual | | | | 05/21 - 05/21 | | | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 510-27 - SEC/SAFETY-CARD ACCESS  (Continued) | | | | | | | | | | |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1236 5/6/2021 SECURITY OFFICER UNIVERSAL PROTECTION SERVICE LP | 44,517.67 | 0.00 | 216,940.62 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1267 5/26/2021 security benefits UNIVERSAL PROTECTION SERVICE LP | 6,133.81 | 0.00 | 223,074.43 |
| | | | | | | ** Account Totals | | 93,185.15 | 50,517.67 | **223,074.43** |
| **510-35** | | | **EMERGENCY GEN. SERVICE** | | | | *Balance Forward* | | | *1,890.00* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1242 5/6/2021 generator SERVICE GENSERVE INC | 604.80 | 0.00 | 2,494.80 |
| | | | | | | ** Account Totals | | 604.80 | 0.00 | **2,494.80** |
| **510-40** | | | **SEC/SAFETY-MAT/SUPPLIES** | | | | *Balance Forward* | | | *0.00* |
| **511-20** | | | **CLEANING-C.SVC BASE BLDG.** | | | | *Balance Forward* | | | *8,853.60* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1260 5/10/2021 JANITORIAL GDI SERVICES INC | 2,213.40 | 0.00 | 11,067.00 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1260 5/12/2021 wrong vendorID GDI SERVICES INC | 0.00 | 2,213.40 | 8,853.60 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1263 5/12/2021 JANITORIAL GDI SERVICES INC | 2,213.40 | 0.00 | 11,067.00 |
| | | | | | | ** Account Totals | | 4,426.80 | 2,213.40 | **11,067.00** |
| **511-40** | | | **CLEANING-MAT/SUPPLIES** | | | | *Balance Forward* | | | *141.61* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1259 5/10/2021 JANITORIAL GDI SERVICES INC | 48.15 | 0.00 | 189.76 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1266 5/17/2021 JANITORIAL GDI SERVICES INC | 93.46 | 0.00 | 283.22 |
| | | | | | | ** Account Totals | | 141.61 | 0.00 | **283.22** |
| **512-20** | | | **ELECT MAINT C.SVC** | | | | *Balance Forward* | | | *42,339.01* |

CONFIDENTIAL

MBNF000897

| Database: | GEMS_EAST | | | | | | General Ledger | Page: | | 5 |
| | | | | | | | GEMS_EAST | Date: | | 6/9/2021 |
| | | | | | | | Broad Street Healthcare I | Time: | | 08:23 AM |
| Accrual | | | | | | | 05/21 - 05/21 | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**513-09 - G REP/MAINT OTHER**  (Continued)

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **513-09** | | | | | | **G REP/MAINT OTHER** | *Balance Forward* | | | *0.00* |
| **513-20** | | | | | | **G REP/MAINT CONTRACT SVC** | *Balance Forward* | | | *6,682.08* |
| **513-45** | | | | | | **G REP/MAINT MISCELLANEOUS** | *Balance Forward* | | | *0.00* |
| **514-01** | | | | | | **HVAC MAINT WAGES** | *Balance Forward* | | | *55,188.00* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1245 5/6/2021 SERVICE CONTRACT TOZOUR ENERGY SYSTEMS INC | 11,037.60 | 0.00 | 66,225.60 |
| | | | | | | | ** Account Totals | 11,037.60 | 0.00 | **66,225.60** |
| **514-27** | | | | | | **HVAC MAINT.& REPAIR** | *Balance Forward* | | | *86,544.28* |
| **514-51** | | | | | | **HVAC MAINT-WATER TREATMET** | *Balance Forward* | | | *6,048.00* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1238 5/6/2021 HVAC WATER TREATMEAN BARCLAY WATER MANAGEMENT, INC. | 1,512.00 | 0.00 | 7,560.00 |
| | | | | | | | ** Account Totals | 1,512.00 | 0.00 | **7,560.00** |
| **515-21** | | | | | | **PLUMBING REPAIRS** | *Balance Forward* | | | *8,394.58* |
| **516-20** | | | | | | **ELEVATOR-CONTRACT SVC** | *Balance Forward* | | | *5,940.00* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1268 5/26/2021 OIL & GREASE SERVICE ELITE ELEVATOR SERVICES LLC | 1,529.28 | 0.00 | 7,469.28 |
| | | | | | | | ** Account Totals | 1,529.28 | 0.00 | **7,469.28** |
| **516-25** | | | | | | **ELEV-REP & MAINT-BLDG** | *Balance Forward* | | | *10,643.50* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1258 5/10/2021 ELEVATOR SERVICE ELITE ELEVATOR SERVICES LLC | 927.00 | 0.00 | 11,570.50 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1265 5/17/2021 ELEVATOR INSPECTION APEX ELEVATOR INSPECTION AND | 2,490.00 | 0.00 | 14,060.50 |
| | | | | | | | ** Account Totals | 3,417.00 | 0.00 | **14,060.50** |

CONFIDENTIAL

MBNF000898

| Database: | GEMS_EAST | | | | | | **General Ledger**<br>GEMS_EAST<br>Broad Street Healthcare I | | | | Page:<br>Date:<br>Time: | 6<br>6/9/2021<br>08:23 AM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

Accrual — 05/21 - 05/21

| Account<br>Entity | Period | Entry<br>Date | Src Reference | Site<br>Id | Job<br>Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

517-01 - ADMIN-SALARIES WAGES  (Continued)

| Account<br>Entity | Period | Entry<br>Date | Src Reference | Site<br>Id | Job<br>Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **517-01** | | | **ADMIN-SALARIES WAGES** | | | | *Balance Forward* | | | *32,711.71* |
| PH096A | 05/21 | 5/13/2021 | PR PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 3,596.63 | 0.00 | 36,308.34 |
| PH096B | 05/21 | 5/13/2021 | PR PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 38.67 | 0.00 | 36,347.01 |
| PH096C | 05/21 | 5/13/2021 | PR PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 38.67 | 0.00 | 36,385.68 |
| PH096A | 05/21 | 5/26/2021 | PR PH96P2 | 06 | | | Payroll 05/25/21 | 116.72 | 0.00 | 36,502.40 |
| PH096A | 05/21 | 5/27/2021 | PR PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 3,734.92 | 0.00 | 40,237.32 |
| PH096B | 05/21 | 5/27/2021 | PR PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 39.66 | 0.00 | 40,276.98 |
| PH096C | 05/21 | 5/27/2021 | PR PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 39.66 | 0.00 | 40,316.64 |
| | | | | | | | **\*\* Account Totals** | 7,604.93 | 0.00 | **40,316.64** |
| **517-41** | | | **ADMIN-POSTAGE** | | | | *Balance Forward* | | | *40.00* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | PH096PS0321    POSTAGE<br>G&E REAL ESTATE MGMT SERVICES INC | 53.06 | 0.00 | 93.06 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | PH096PS0321    POSTAGE<br>G&E REAL ESTATE MGMT SERVICES INC | 0.00 | 53.06 | 40.00 |
| | | | | | | | **\*\* Account Totals** | 53.06 | 53.06 | **40.00** |
| **517-44** | | | **ADMIN-TELEPHONE** | | | | *Balance Forward* | | | *665.91* |
| PH096A | 05/21 | 5/31/2021 | AC  96AC05 | 06 | | | 05/21 Accruals | 900.00 | 0.00 | 1,565.91 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1248 5/6/2021 CELL PHONE<br>G&E REAL ESTATE MANAGEMENT SERVICES | 13.87 | 0.00 | 1,579.78 |
| | | | | | | | **\*\* Account Totals** | 913.87 | 0.00 | **1,579.78** |
| **517-45** | | | **ADMIN-MISCELLANEOUS** | | | | *Balance Forward* | | | *0.00* |
| **517-50** | | | **ADMIN-TRAVEL** | | | | *Balance Forward* | | | *331.47* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1248 5/6/2021 EXPENSE<br>G&E REAL ESTATE MANAGEMENT SERVICES | 35.00 | 0.00 | 366.47 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1248 5/6/2021 MILEAGE<br>G&E REAL ESTATE MANAGEMENT SERVICES | 84.00 | 0.00 | 450.47 |
| | | | | | | | **\*\* Account Totals** | 119.00 | 0.00 | **450.47** |

MBNF000899

| Database: | GEMS_EAST | | | | | General Ledger GEMS_EAST Broad Street Healthcare I | | Page: Date: Time: | 7 6/9/2021 08:23 AM |
|---|---|---|---|---|---|---|---|---|---|
| Accrual | | | | | | 05/21 - 05/21 | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**517-55 - ADMIN-LICENSES & PERMITS  (Continued)**

| Account Entity | Period | Entry Date | Src Reference | Job Code | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|
| **517-55** | | | **ADMIN-LICENSES & PERMITS** | | *Balance Forward* | | | *0.00* |
| **517-59** | | | **ADMIN-PROF FEES OTHER** | | *Balance Forward* | | | *3,232.43* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | 1248 5/6/2021 EMS MONTHLY FEE G&E REAL ESTATE MANAGEMENT SERVICES | 100.00 | 0.00 | 3,332.43 |
| | | | | | ** Account Totals | 100.00 | 0.00 | **3,332.43** |
| **517-60** | | | **ADMIN-MGMT FEES/GEMS** | | *Balance Forward* | | | *28,500.00* |
| PH096A | 05/21 | 4/30/2021 | AC 96AA04 | 06 | 04/21 Accrual | 0.00 | 7,125.00 | 21,375.00 |
| PH096A | 05/21 | 5/31/2021 | AC 96AC05 | 06 | 05/21 Accruals | 7,125.00 | 0.00 | 28,500.00 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | 1244 5/6/2021 PRIOR MTH MGT FEE G&E REAL ESTATE MGMT SERVICES INC | 6,975.00 | 0.00 | 35,475.00 |
| PH096B | 05/21 | 5/31/2021 | AP 203331 | 06 | 1244 5/6/2021 PRIOR MTH MGT FEE G&E REAL ESTATE MGMT SERVICES INC | 75.00 | 0.00 | 35,550.00 |
| PH096C | 05/21 | 5/31/2021 | AP 203333 | 06 | 1257 5/7/2021 PRIOR MTH MGT FEE G&E REAL ESTATE MGMT SERVICES INC | 75.00 | 0.00 | 35,625.00 |
| | | | | | ** Account Totals | 14,250.00 | 7,125.00 | **35,625.00** |
| **517-61** | | | **ADMIN-MGMT FEES/OTHERS** | | *Balance Forward* | | | *0.00* |
| **517-68** | | | **ADMIN-BANK CHARGES** | | *Balance Forward* | | | *450.01* |
| PH096A | 05/21 | 5/31/2021 | JE PH96BF | 06 | Corporate Account Analysis Charge | 103.22 | 0.00 | 553.23 |
| | | | | | ** Account Totals | 103.22 | 0.00 | **553.23** |
| **518-07** | | | **GEN BLDG-INSURANCE** | | *Balance Forward* | | | *0.00* |
| **518-20** | | | **GEN BLDG-C.SVC EXTERMINA** | | *Balance Forward* | | | *2,725.00* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | 1252 5/6/2021 PEST CONTROL WESTERN PEST SERVICES | 700.00 | 0.00 | 3,425.00 |
| | | | | | ** Account Totals | 700.00 | 0.00 | **3,425.00** |

MBNF000900

| Database: | GEMS_EAST | | | | | General Ledger | | Page: | 8 |
| | | | | | | GEMS_EAST | | Date: | 6/9/2021 |
| | | | | | | Broad Street Healthcare I | | Time: | 08:23 AM |
| Accrual | | | | | | 05/21 - 05/21 | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**518-21 - GEN BLDG-C.SVC TRASH HAUL  (Continued)**

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **518-21** | | | **GEN BLDG-C.SVC TRASH HAUL** | | | | *Balance Forward* | | | *600.00* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1237 5/6/2021 TRASH REMOVAL ATHENA CONTRACTING INC | 150.00 | 0.00 | 750.00 |
| | | | | | | | ** **Account Totals** | 150.00 | 0.00 | **750.00** |
| **518-24** | | | **GEN BLDG-C.SVC SNOW REMOV** | | | | *Balance Forward* | | | *14,900.00* |
| **518-25** | | | **GEN BLDG-C.SVC ROOF REPAR** | | | | *Balance Forward* | | | *0.00* |
| **518-27** | | | **GEN BLDG-C.SVC EX/LANDSC** | | | | *Balance Forward* | | | *625.00* |
| **518-32** | | | **GEN BLDG-KEYS & LOCKS** | | | | *Balance Forward* | | | *0.00* |
| **518-40** | | | **GEN BLDG-MAT/SUPPLIES** | | | | *Balance Forward* | | | *44.14* |
| **519-21** | | | **UTILITIES-WATER** | | | | *Balance Forward* | | | *113,951.99* |
| PH096A | 05/21 | 4/30/2021 | AC  96AA04 | 06 | | | 04/21 Accrual | 0.00 | 19,698.55 | 94,253.44 |
| PH096A | 05/21 | 5/31/2021 | AC  96AC05 | 06 | | | 05/21 Accruals | 33,894.00 | 0.00 | 128,147.44 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1251 5/6/2021 WATER 3/15-4/14 WATER REVENUE BUREAU | 19,698.55 | 0.00 | 147,845.99 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1269 5/26/2021 ELECTRIC METER ENERGY MANAGEMENT SYSTEMS | 250.00 | 0.00 | 148,095.99 |
| | | | | | | | ** **Account Totals** | 53,842.55 | 19,698.55 | **148,095.99** |
| **519-23** | | | **UTILITIES-ELECTRICITY** | | | | *Balance Forward* | | | *112,766.90* |
| PH096A | 05/21 | 4/30/2021 | AC  96AA04 | 06 | | | 04/21 Accrual | 0.00 | 100,000.00 | 12,766.90 |
| PH096A | 05/21 | 5/31/2021 | AC  96AC05 | 06 | | | 05/21 Accruals | 100,000.00 | 0.00 | 112,766.90 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1254 5/6/2021 ELECTRIC 4/1-4/30 PECO ENERGY | 22,296.86 | 0.00 | 135,063.76 |
| | | | | | | | ** **Account Totals** | 122,296.86 | 100,000.00 | **135,063.76** |
| **519-24** | | | **UTILITIES-STEAM** | | | | *Balance Forward* | | | *138,123.66* |

CONFIDENTIAL

| Database: | GEMS_EAST | | | | | General Ledger | | | Page: | 9 |
| | | | | | | GEMS_EAST | | | Date: | 6/9/2021 |
| | | | | | | Broad Street Healthcare I | | | Time: | 08:23 AM |
| Accrual | | | | | | 05/21 - 05/21 | | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **519-24 - UTILITIES-STEAM** (Continued) | | | | | | | | | | |
| PH096A | 05/21 | 4/30/2021 | AC 96AA04 | 06 | | | 04/21 Accrual | 0.00 | 9,422.00 | 128,701.66 |
| PH096A | 05/21 | 5/31/2021 | AC 96AC05 | 06 | | | 05/21 Accruals | 9,244.00 | 0.00 | 137,945.66 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1261 5/10/2021 STEAM 3/31-4/30 VICINITY ENERGY PHILADELPHIA INC | 10,839.01 | 0.00 | 148,784.67 |
| | | | | | | | ** **Account Totals** | 20,083.01 | 9,422.00 | **148,784.67** |
| **519-25** | | | **UTILITIES-GAS** | | | | *Balance Forward* | | | *4,748.57* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1264 5/13/2021 GAS 3/26-4/27 PHILADELPHIA GAS WORKS | 1,115.31 | 0.00 | 5,863.88 |
| | | | | | | | ** **Account Totals** | 1,115.31 | 0.00 | **5,863.88** |
| **531-31** | | | **INSURANCE-PROPERTY** | | | | *Balance Forward* | | | *272,159.50* |
| PH096A | 05/21 | 5/31/2021 | AC 96PPI | 06 | | | Expense PPI | 61,381.29 | 0.00 | 333,540.79 |
| | | | | | | | ** **Account Totals** | 61,381.29 | 0.00 | **333,540.79** |
| **532-33** | | | **R.E. TAXES-COUNTY** | | | | *Balance Forward* | | | *6,270.86* |
| PH096A | 05/21 | 5/31/2021 | AC 96RETX | 06 | | | Expense RE Tax - County | 1,187.90 | 0.00 | 7,458.76 |
| PH096B | 05/21 | 5/31/2021 | AC 96RETX | 06 | | | Expense RE Tax - County | 379.81 | 0.00 | 7,838.57 |
| | | | | | | | ** **Account Totals** | 1,567.71 | 0.00 | **7,838.57** |
| **532-34** | | | **R.E. TAXES-CITY/BOROUGH** | | | | *Balance Forward* | | | *10,930.72* |
| PH096A | 05/21 | 5/31/2021 | AC 96RETX | 06 | | | Expense RE Tax - CCD | 2,642.38 | 0.00 | 13,573.10 |
| PH096B | 05/21 | 5/31/2021 | AC 96RETX | 06 | | | Expense RE Tax - County | 90.30 | 0.00 | 13,663.40 |
| | | | | | | | ** **Account Totals** | 2,732.68 | 0.00 | **13,663.40** |
| **620-51** | | | **AMORT-LEASE BUYOUT** | | | | *Balance Forward* | | | *0.00* |
| **717-59** | | | **ADMIN-PROF FEES OTHER** | | | | *Balance Forward* | | | *0.00* |

MBNF000902

| Database: | GEMS_EAST | | | | | **General Ledger**<br>GEMS_EAST<br>Broad Street Healthcare I | | | Page:<br>Date:<br>Time: | 10<br>6/9/2021<br>08:23 AM |

| Accrual | | | | | | 05/21 - 05/21 | | | |

| Account<br>Entity | Period | Entry<br>Date | Src Reference | Site<br>Id | Job<br>Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 718-45 - GEN BLDG-MISCELLANEOUS  (Continued) | | | | | | | | | | |
| **718-45** | | | **GEN BLDG-MISCELLANEOUS** | | | | *Balance Forward* | | | *-595,861.67* |
| PH096A | 05/21 | 5/26/2021 | JE  PH9612 | 06 | | | Ins. Proceeds - Aspen | 0.00 | 5,055.03 | -600,916.70 |
| PH096A | 05/21 | 5/19/2021 | JE  PH96IN | 06 | | | Ins. Proceeds- First Specialty | 0.00 | 7,582.55 | -608,499.25 |
| PH096A | 05/21 | 5/19/2021 | JE  PH96IN | 06 | | | Ins. Proceeds- Arch Inurance | 0.00 | 2,527.52 | -611,026.77 |
| | | | | | | **** Account Totals** | | 0.00 | 15,165.10 | **-611,026.77** |
| **740-54** | | | **NON-ESCALATABLE-CONSULTNG** | | | | *Balance Forward* | | | *0.00* |
| **740-75** | | | **NON ESCALATABLE-OWNER EXP** | | | | *Balance Forward* | | | *0.00* |
| **760-01** | | | **PRIOR PERIOD (INC) / EXP** | | | | *Balance Forward* | | | *0.00* |
| **** Grand Totals** | | | | | | | | **1,837,699.51** | **1,837,699.51** | |

CONFIDENTIAL

MBNF000903

| | | | | | | | Page: | 1 |
|---|---|---|---|---|---|---|---|---|

**General Ledger**

| Database: | GEMS_EAST | | | | | | Page: | 1 |
| ENTITY: | PH096A | | | | | | Date: | 6/9/2021 |
| | | | GEMS_EAST | | | | Time: | 08:45 AM |
| | | | BROAD STREET NORTH/SOUTH TOWER | | | | | |

Accrual                                            05/21 - 05/21

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **111-04** | | | **CASH** | | | | *Balance Forward* | | | *90,121.05* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1239 5/6/2021 ELECTRONIC SECURITY & CONTROL | 0.00 | 605.00 | 89,516.05 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1260 5/10/2021 GDI SERVICES INC | 0.00 | 2,213.40 | 87,302.65 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1260 5/12/2021 GDI SERVICES INC | 2,213.40 | 0.00 | 89,516.05 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1132 5/5/2021 WESTERN PEST SERVICES | 700.00 | 0.00 | 90,216.05 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1235 5/5/2021 WESTERN PEST SERVICES | 0.00 | 700.00 | 89,516.05 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | A/P Cash Disbursed for checks  1235-1269 | 0.00 | 247,175.04 | -157,658.99 |
| PH096A | 05/21 | 5/8/2021 | JE PH096B | 06 | | | BankDirect Auto-Debit | 0.00 | 72,466.50 | -230,125.49 |
| PH096A | 05/21 | 5/26/2021 | JE PH9612 | 06 | | | Ins. Proceeds - Aspen | 5,055.03 | 0.00 | -225,070.46 |
| PH096A | 05/21 | 5/31/2021 | JE PH96BF | 06 | | | Int Period Ending 04/30/2021 | 31.73 | 0.00 | -225,038.73 |
| PH096A | 05/21 | 5/31/2021 | JE PH96BF | 06 | | | Corporate Account Analysis Charge | 0.00 | 103.22 | -225,141.95 |
| PH096A | 05/21 | 5/19/2021 | JE PH96IN | 06 | | | Insurance Proceeds | 10,110.07 | 0.00 | -215,031.88 |
| PH096A | 05/21 | 5/6/2021 | JE PH96WT | 06 | | | Funding from Ownership | 1,000,000.00 | 0.00 | 784,968.12 |
| PH096A | 05/21 | 5/13/2021 | PR PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 0.00 | 3,596.63 | 781,371.49 |
| PH096A | 05/21 | 5/25/2021 | PR PH96P2 | 06 | | | Payroll 05/25/21 | 0.00 | 116.72 | 781,254.77 |
| PH096A | 05/21 | 5/27/2021 | PR PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 0.00 | 3,734.92 | 777,519.85 |
| | | | | | | | **\*\* Account Totals** | 1,018,110.23 | 330,711.43 | **777,519.85** |
| **111-50** | | | **UTILITY DEPOSIT** | | | | *Balance Forward* | | | *150,000.00* |
| **117-21** | | | **PREPAID INSURANCE** | | | | *Balance Forward* | | | *613,812.86* |
| PH096A | 05/21 | 5/31/2021 | AC 96PPI | 06 | | | Expense PPI | 0.00 | 61,381.29 | 552,431.57 |
| | | | | | | | **\*\* Account Totals** | 0.00 | 61,381.29 | **552,431.57** |
| **117-22** | | | **PREPAID REAL ESTATE TAX** | | | | *Balance Forward* | | | *30,642.28* |
| PH096A | 05/21 | 5/31/2021 | AC 96RETX | 06 | | | Expense RE Tax | 0.00 | 3,830.28 | 26,812.00 |
| | | | | | | | **\*\* Account Totals** | 0.00 | 3,830.28 | **26,812.00** |
| **179-01** | | | **CONSTRUCTION IN PROGRESS** | | | | *Balance Forward* | | | *17,500.00* |
| **211-05** | | | **ACCOUNTS PAYABLE** | | | | *Balance Forward* | | | *-113,433.59* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | A/P Total Payables for 05/21 | 605.00 | 0.00 | -112,828.59 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | A/P Total Payables for 05/21 | 46,356.32 | 0.00 | -66,472.27 |

CONFIDENTIAL

| Database: | GEMS_EAST | | | | | | | Page: | 2 |
| ENTITY: | PH096A | | | | | | | Date: | 6/9/2021 |
| | | | | | | | | Time: | 08:45 AM |

**General Ledger**
**GEMS_EAST**
**BROAD STREET NORTH/SOUTH TOWER**

Accrual

05/21 - 05/21

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **211-05 - ACCOUNTS PAYABLE** (Continued) | | | | | | | | | | |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | A/P Total Payables for 05/21 | 26,006.89 | 0.00 | -40,465.38 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | A/P Total Payables for 05/21 | 700.00 | 0.00 | -39,765.38 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | A/P Total Payables for 05/21 | 39,765.38 | 0.00 | -39,765.38 |
| | | | | | | | **\*\* Account Totals** | 113,433.59 | 0.00 | **0.00** |
| **211-06** | | | **ACCRUED OPERATING EXPENSE** | | | | *Balance Forward* | | | *-186,763.22* |
| PH096A | 05/21 | 4/30/2021 | AC 96AA04 | 06 | | | 04/21 Accrual | 186,763.22 | 0.00 | 0.00 |
| PH096A | 05/21 | 5/31/2021 | AC 96AC05 | 06 | | | 05/21 Accruals | 0.00 | 193,696.67 | -193,696.67 |
| | | | | | | | **\*\* Account Totals** | 186,763.22 | 193,696.67 | **-193,696.67** |
| **211-08** | | | **SHORT TERM NOTE PAYABLE** | | | | *Balance Forward* | | | *-460,973.88* |
| PH096A | 05/21 | 5/31/2021 | AC 96NPRA | 06 | | | Re-allocate ST NP from 96G to 96A | 0.00 | 42,320.40 | -503,294.28 |
| | | | | | | | PH096G sold 4/6/21. Reallocated La bility to PH096A. | | | |
| PH096A | 05/21 | 5/8/2021 | JE PH096B | 06 | | | BankDirect Auto-Debit | 51,219.32 | 0.00 | -452,074.96 |
| | | | | | | | **\*\* Account Totals** | 51,219.32 | 42,320.40 | **-452,074.96** |
| **211-12** | | | **ACCRUED REAL ESTATE TAX** | | | | *Balance Forward* | | | *0.00* |
| **212-10** | | | **OTHER LONG TERM LOAN PAYAE** | | | | *Balance Forward* | | | *0.00* |
| **255-55** | | | **TRANSFER OF FUNDS** | | | | *Balance Forward* | | | *-1,299,052.07* |
| PH096A | 05/21 | 5/31/2021 | AC 96NPRA | 06 | | | Re-allocate ST NP from 96G to 96A | 42,320.40 | 0.00 | -1,256,731.67 |
| | | | | | | | PH096G sold 4/6/21. Reallocated La bility to PH096A. | | | |
| PH096A | 05/21 | 5/8/2021 | JE PH096B | 06 | | | BankDirect Auto-Debit | 7,340.86 | 0.00 | -1,249,390.81 |
| PH096A | 05/21 | 5/8/2021 | JE PH096B | 06 | | | BankDirect Auto-Debit | 8,616.27 | 0.00 | -1,240,774.54 |
| PH096A | 05/21 | 5/8/2021 | JE PH096B | 06 | | | BankDirect Auto-Debit | 5,290.05 | 0.00 | -1,235,484.49 |
| | | | | | | | **\*\* Account Totals** | 63,567.58 | 0.00 | **-1,235,484.49** |
| **256-10** | | | **EQUITY-OWNER CONTRIBUTIONS** | | | | *Balance Forward* | | | *-3,444,973.74* |
| PH096A | 05/21 | 5/6/2021 | JE PH96WT | 06 | | | Funding from Ownership | 0.00 | 1,000,000.00 | -4,444,973.74 |

CONFIDENTIAL

| Database: | GEMS_EAST | | | | | General Ledger | | Page: | 3 |
| ENTITY: | PH096A | | | | | GEMS_EAST | | Date: | 6/9/2021 |
| | | | | | | BROAD STREET NORTH/SOUTH TOWER | | Time: | 08:45 AM |

Accrual                                              05/21 - 05/21

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**256-10 - EQUITY-OWNER CONTRIBUTIONS  (Continued)**

| | | | | | | | ** Account Totals | 0.00 | 1,000,000.00 | **-4,444,973.74** |

| **257-10** | | | **EQUITY-OWNER DISTRIBUTIONS** | | | | *Balance Forward* | | | *184,954.98* |
| **290-00** | | | **RETAINED EARNINGS** | | | | *Balance Forward* | | | *3,853,737.12* |
| **290-01** | | | **CURRENT EARNINGS** | | | | *Balance Forward* | | | *0.00* |
| **444-99** | | | **MISCELLANEOUS INCOME** | | | | *Balance Forward* | | | *0.00* |
| **445-95** | | | **INTEREST INCOME** | | | | *Balance Forward* | | | *-237.05* |
| PH096A | 05/21 | 5/31/2021 | JE  PH96BF | 06 | | | Int Period Ending 04/30/2021 | 0.00 | 31.73 | -268.78 |
| | | | | | | | ** Account Totals | 0.00 | 31.73 | **-268.78** |

| **510-22** | | | **SEC/SAFETY-C.SVC FIRE SYS** | | | | *Balance Forward* | | | *6,818.62* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1249 5/6/2021 HVAC SERVICE OLIVER SPRINKLER CO., INC. | 981.68 | 0.00 | 7,800.30 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1262 5/12/2021 10th FL SMOKE DETECT ELECTRONIC SECURITY SYSTEMS | 605.00 | 0.00 | 8,405.30 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1239 5/12/2021 wrong vendor ID ELECTRONIC SECURITY & CONTROL | 0.00 | 605.00 | 7,800.30 |
| | | | | | | | ** Account Totals | 1,586.68 | 605.00 | **7,800.30** |

| **510-27** | | | **SEC/SAFETY-CARD ACCESS** | | | | *Balance Forward* | | | *180,406.95* |
| PH096A | 05/21 | 4/30/2021 | AC  96AA04 | 06 | | | 04/21 Accrual | 0.00 | 50,517.67 | 129,889.28 |
| PH096A | 05/21 | 5/31/2021 | AC  96AC05 | 06 | | | 05/21 Accruals | 42,533.67 | 0.00 | 172,422.95 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1236 5/6/2021 SECURITY OFFICER UNIVERSAL PROTECTION SERVICE LP | 44,517.67 | 0.00 | 216,940.62 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1267 5/26/2021 security benefits UNIVERSAL PROTECTION SERVICE LP | 6,133.81 | 0.00 | 223,074.43 |
| | | | | | | | ** Account Totals | 93,185.15 | 50,517.67 | **223,074.43** |

CONFIDENTIAL                                                                                          MBNF000906

| Database: | GEMS_EAST | | | | | General Ledger | | | Page: | 4 |
| ENTITY: | PH096A | | | | | GEMS_EAST | | | Date: | 6/9/2021 |
| | | | | | | BROAD STREET NORTH/SOUTH TOWER | | | Time: | 08:45 AM |

Accrual

05/21 - 05/21

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **510-35** | | | **EMERGENCY GEN. SERVICE** | | | | *Balance Forward* | | | *1,890.00* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1242 5/6/2021 generator SERVICE GENSERVE INC | 604.80 | 0.00 | 2,494.80 |
| | | | | | | | ** Account Totals | 604.80 | 0.00 | **2,494.80** |
| **510-40** | | | **SEC/SAFETY-MAT/SUPPLIES** | | | | *Balance Forward* | | | *0.00* |
| **511-20** | | | **CLEANING-C.SVC BASE BLDG.** | | | | *Balance Forward* | | | *8,853.60* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1260 5/10/2021 JANITORIAL GDI SERVICES INC | 2,213.40 | 0.00 | 11,067.00 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1260 5/12/2021 wrong vendorID GDI SERVICES INC | 0.00 | 2,213.40 | 8,853.60 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1263 5/12/2021 JANITORIAL GDI SERVICES INC | 2,213.40 | 0.00 | 11,067.00 |
| | | | | | | | ** Account Totals | 4,426.80 | 2,213.40 | **11,067.00** |
| **511-40** | | | **CLEANING-MAT/SUPPLIES** | | | | *Balance Forward* | | | *141.61* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1259 5/10/2021 JANITORIAL GDI SERVICES INC | 48.15 | 0.00 | 189.76 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1266 5/17/2021 JANITORIAL GDI SERVICES INC | 93.46 | 0.00 | 283.22 |
| | | | | | | | ** Account Totals | 141.61 | 0.00 | **283.22** |
| **512-20** | | | **ELECT MAINT C.SVC** | | | | *Balance Forward* | | | *42,339.01* |
| **513-09** | | | **G REP/MAINT OTHER** | | | | *Balance Forward* | | | *0.00* |
| **513-20** | | | **G REP/MAINT CONTRACT SVC** | | | | *Balance Forward* | | | *6,682.08* |
| **513-45** | | | **G REP/MAINT MISCELLANEOUS** | | | | *Balance Forward* | | | *0.00* |
| **514-01** | | | **HVAC MAINT WAGES** | | | | *Balance Forward* | | | *55,188.00* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1245 5/6/2021 SERVICE CONTRACT TOZOUR ENERGY SYSTEMS INC | 11,037.60 | 0.00 | 66,225.60 |

CONFIDENTIAL

| Database: | GEMS_EAST | | | | | | General Ledger | | Page: | 5 |
| ENTITY: | PH096A | | | | | | GEMS_EAST | | Date: | 6/9/2021 |
| | | | | | | | BROAD STREET NORTH/SOUTH TOWER | | Time: | 08:45 AM |
| Accrual | | | | | | | 05/21 - 05/21 | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **514-01 - HVAC MAINT WAGES**  (Continued) | | | | | | | | | | |
| | | | | | | | ** Account Totals | 11,037.60 | 0.00 | **66,225.60** |
| **514-27** | | | **HVAC MAINT.& REPAIR** | | | | *Balance Forward* | | | *86,544.28* |
| **514-51** | | | **HVAC MAINT-WATER TREATMET** | | | | *Balance Forward* | | | *6,048.00* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1238 5/6/2021 HVAC WATER TREATMEAN BARCLAY WATER MANAGEMENT, INC. | 1,512.00 | 0.00 | 7,560.00 |
| | | | | | | | ** Account Totals | 1,512.00 | 0.00 | **7,560.00** |
| **515-21** | | | **PLUMBING REPAIRS** | | | | *Balance Forward* | | | *8,394.58* |
| **516-20** | | | **ELEVATOR-CONTRACT SVC** | | | | *Balance Forward* | | | *5,940.00* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1268 5/26/2021 OIL & GREASE SERVICE ELITE ELEVATOR SERVICES LLC | 1,529.28 | 0.00 | 7,469.28 |
| | | | | | | | ** Account Totals | 1,529.28 | 0.00 | **7,469.28** |
| **516-25** | | | **ELEV-REP & MAINT-BLDG** | | | | *Balance Forward* | | | *10,643.50* |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1258 5/10/2021 ELEVATOR SERVICE ELITE ELEVATOR SERVICES LLC | 927.00 | 0.00 | 11,570.50 |
| PH096A | 05/21 | 5/31/2021 | AP  203329 | 06 | | | 1265 5/17/2021 ELEVATOR INSPECTION APEX ELEVATOR INSPECTION AND | 2,490.00 | 0.00 | 14,060.50 |
| | | | | | | | ** Account Totals | 3,417.00 | 0.00 | **14,060.50** |
| **517-01** | | | **ADMIN-SALARIES WAGES** | | | | *Balance Forward* | | | *32,052.15* |
| PH096A | 05/21 | 5/13/2021 | PR  PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 3,596.63 | 0.00 | 35,648.78 |
| PH096A | 05/21 | 5/26/2021 | PR  PH96P2 | 06 | | | Payroll 05/25/21 | 116.72 | 0.00 | 35,765.50 |
| PH096A | 05/21 | 5/27/2021 | PR  PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 3,734.92 | 0.00 | 39,500.42 |
| | | | | | | | ** Account Totals | 7,448.27 | 0.00 | **39,500.42** |
| **517-41** | | | **ADMIN-POSTAGE** | | | | *Balance Forward* | | | *40.00* |

CONFIDENTIAL

MBNF000908

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Database: | GEMS_EAST | | | | | General Ledger | | Page: | 6 |
| ENTITY: | PH096A | | | | | GEMS_EAST | | Date: | 6/9/2021 |
| | | | | | | BROAD STREET NORTH/SOUTH TOWER | | Time: | 08:45 AM |
| Accrual | | | | | | 05/21 - 05/21 | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **517-41 - ADMIN-POSTAGE** (Continued) | | | | | | | | | | |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | PH096PS0321    POSTAGE<br>G&E REAL ESTATE MGMT SERVICES INC | 53.06 | 0.00 | 93.06 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | PH096PS0321    POSTAGE<br>G&E REAL ESTATE MGMT SERVICES INC | 0.00 | 53.06 | 40.00 |
| | | | | | | | ** Account Totals | 53.06 | 53.06 | **40.00** |
| **517-44** | | | **ADMIN-TELEPHONE** | | | | *Balance Forward* | | | *665.91* |
| PH096A | 05/21 | 5/31/2021 | AC 96AC05 | 06 | | | 05/21 Accruals | 900.00 | 0.00 | 1,565.91 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1248 5/6/2021 CELL PHONE<br>G&E REAL ESTATE MANAGEMENT SERVICES | 13.87 | 0.00 | 1,579.78 |
| | | | | | | | ** Account Totals | 913.87 | 0.00 | **1,579.78** |
| **517-45** | | | **ADMIN-MISCELLANEOUS** | | | | *Balance Forward* | | | *0.00* |
| **517-50** | | | **ADMIN-TRAVEL** | | | | *Balance Forward* | | | *331.47* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1248 5/6/2021 EXPENSE<br>G&E REAL ESTATE MANAGEMENT SERVICES | 35.00 | 0.00 | 366.47 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1248 5/6/2021 MILEAGE<br>G&E REAL ESTATE MANAGEMENT SERVICES | 84.00 | 0.00 | 450.47 |
| | | | | | | | ** Account Totals | 119.00 | 0.00 | **450.47** |
| **517-55** | | | **ADMIN-LICENSES & PERMITS** | | | | *Balance Forward* | | | *0.00* |
| **517-59** | | | **ADMIN-PROF FEES OTHER** | | | | *Balance Forward* | | | *3,231.27* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1248 5/6/2021 EMS MONTHLY FEE<br>G&E REAL ESTATE MANAGEMENT SERVICES | 100.00 | 0.00 | 3,331.27 |
| | | | | | | | ** Account Totals | 100.00 | 0.00 | **3,331.27** |
| **517-60** | | | **ADMIN-MGMT FEES/GEMS** | | | | *Balance Forward* | | | *27,900.00* |
| PH096A | 05/21 | 4/30/2021 | AC 96AA04 | 06 | | | 04/21 Accrual | 0.00 | 7,125.00 | 20,775.00 |
| PH096A | 05/21 | 5/31/2021 | AC 96AC05 | 06 | | | 05/21 Accruals | 7,125.00 | 0.00 | 27,900.00 |

CONFIDENTIAL

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Database: | GEMS_EAST | | | | | General Ledger | | Page: | 7 |
| ENTITY: | PH096A | | | | | GEMS_EAST | | Date: | 6/9/2021 |
| | | | | | | BROAD STREET NORTH/SOUTH TOWER | | Time: | 08:45 AM |

Accrual                                    05/21 - 05/21

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **517-60 - ADMIN-MGMT FEES/GEMS  (Continued)** | | | | | | | | | | |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | | 06 | | 1244 5/6/2021 PRIOR MTH MGT FEE | 6,975.00 | 0.00 | 34,875.00 |
| | | | | | | | G&E REAL ESTATE MGMT SERVICES INC | | | |
| | | | | | | | ** Account Totals | 14,100.00 | 7,125.00 | **34,875.00** |
| **517-61** | | | **ADMIN-MGMT FEES/OTHERS** | | | | *Balance Forward* | | | *0.00* |
| **517-68** | | | **ADMIN-BANK CHARGES** | | | | *Balance Forward* | | | *450.01* |
| PH096A | 05/21 | 5/31/2021 | JE PH96BF | | 06 | | Corporate Account Analysis Charge | 103.22 | 0.00 | 553.23 |
| | | | | | | | ** Account Totals | 103.22 | 0.00 | **553.23** |
| **518-07** | | | **GEN BLDG-INSURANCE** | | | | *Balance Forward* | | | *0.00* |
| **518-20** | | | **GEN BLDG-C.SVC EXTERMINA** | | | | *Balance Forward* | | | *2,725.00* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | | 06 | | 1252 5/6/2021 PEST CONTROL | 700.00 | 0.00 | 3,425.00 |
| | | | | | | | WESTERN PEST SERVICES | | | |
| | | | | | | | ** Account Totals | 700.00 | 0.00 | **3,425.00** |
| **518-21** | | | **GEN BLDG-C.SVC TRASH HAUL** | | | | *Balance Forward* | | | *600.00* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | | 06 | | 1237 5/6/2021 TRASH REMOVAL | 150.00 | 0.00 | 750.00 |
| | | | | | | | ATHENA CONTRACTING INC | | | |
| | | | | | | | ** Account Totals | 150.00 | 0.00 | **750.00** |
| **518-24** | | | **GEN BLDG-C.SVC SNOW REMOV** | | | | *Balance Forward* | | | *14,900.00* |
| **518-25** | | | **GEN BLDG-C.SVC ROOF REPAR** | | | | *Balance Forward* | | | *0.00* |
| **518-27** | | | **GEN BLDG-C.SVC EX/LANDSC** | | | | *Balance Forward* | | | *625.00* |
| **518-32** | | | **GEN BLDG-KEYS & LOCKS** | | | | *Balance Forward* | | | *0.00* |
| **518-40** | | | **GEN BLDG-MAT/SUPPLIES** | | | | *Balance Forward* | | | *44.14* |

CONFIDENTIAL

| Database: | GEMS_EAST | | | | | **General Ledger** | | Page: | 8 |
| ENTITY: | PH096A | | | | | GEMS_EAST | | Date: | 6/9/2021 |
| | | | | | | BROAD STREET NORTH/SOUTH TOWER | | Time: | 08:45 AM |

Accrual                                             05/21 - 05/21

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **519-21** | | | **UTILITIES-WATER** | | | | *Balance Forward* | | | *113,951.99* |
| PH096A | 05/21 | 4/30/2021 | AC 96AA04 | 06 | | | 04/21 Accrual | 0.00 | 19,698.55 | 94,253.44 |
| PH096A | 05/21 | 5/31/2021 | AC 96AC05 | 06 | | | 05/21 Accruals | 33,894.00 | 0.00 | 128,147.44 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1251 5/6/2021 WATER 3/15-4/14 WATER REVENUE BUREAU | 19,698.55 | 0.00 | 147,845.99 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1269 5/26/2021 ELECTRIC METER ENERGY MANAGEMENT SYSTEMS | 250.00 | 0.00 | 148,095.99 |
| | | | | | | | **\*\* Account Totals** | 53,842.55 | 19,698.55 | **148,095.99** |
| **519-23** | | | **UTILITIES-ELECTRICITY** | | | | *Balance Forward* | | | *112,766.90* |
| PH096A | 05/21 | 4/30/2021 | AC 96AA04 | 06 | | | 04/21 Accrual | 0.00 | 100,000.00 | 12,766.90 |
| PH096A | 05/21 | 5/31/2021 | AC 96AC05 | 06 | | | 05/21 Accruals | 100,000.00 | 0.00 | 112,766.90 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1254 5/6/2021 ELECTRIC 4/1-4/30 PECO ENERGY | 22,296.86 | 0.00 | 135,063.76 |
| | | | | | | | **\*\* Account Totals** | 122,296.86 | 100,000.00 | **135,063.76** |
| **519-24** | | | **UTILITIES-STEAM** | | | | *Balance Forward* | | | *138,123.66* |
| PH096A | 05/21 | 4/30/2021 | AC 96AA04 | 06 | | | 04/21 Accrual | 0.00 | 9,422.00 | 128,701.66 |
| PH096A | 05/21 | 5/31/2021 | AC 96AC05 | 06 | | | 05/21 Accruals | 9,244.00 | 0.00 | 137,945.66 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1261 5/10/2021 STEAM 3/31-4/30 VICINITY ENERGY PHILADELPHIA INC | 10,839.01 | 0.00 | 148,784.67 |
| | | | | | | | **\*\* Account Totals** | 20,083.01 | 9,422.00 | **148,784.67** |
| **519-25** | | | **UTILITIES-GAS** | | | | *Balance Forward* | | | *4,748.57* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1264 5/13/2021 GAS 3/26-4/27 PHILADELPHIA GAS WORKS | 1,115.31 | 0.00 | 5,863.88 |
| | | | | | | | **\*\* Account Totals** | 1,115.31 | 0.00 | **5,863.88** |
| **531-31** | | | **INSURANCE-PROPERTY** | | | | *Balance Forward* | | | *272,159.50* |
| PH096A | 05/21 | 5/31/2021 | AC 96PPI | 06 | | | Expense PPI | 61,381.29 | 0.00 | 333,540.79 |
| | | | | | | | **\*\* Account Totals** | 61,381.29 | 0.00 | **333,540.79** |

CONFIDENTIAL                                                                              MBNF000911

| Database: | GEMS_EAST | | | | | **General Ledger** | | | Page: | 9 |
| ENTITY: | PH096A | | | | | GEMS_EAST | | | Date: | 6/9/2021 |
| | | | | | | BROAD STREET NORTH/SOUTH TOWER | | | Time: | 08:45 AM |
| Accrual | | | | | | 05/21 - 05/21 | | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **532-33** | | | **R.E. TAXES-COUNTY** | | | | *Balance Forward* | | | *4,751.61* |
| PH096A | 05/21 | 5/31/2021 | AC 96RETX | 06 | | | Expense RE Tax - County | 1,187.90 | 0.00 | 5,939.51 |
| | | | | | | | ** **Account Totals** | 1,187.90 | 0.00 | **5,939.51** |
| **532-34** | | | **R.E. TAXES-CITY/BOROUGH** | | | | *Balance Forward* | | | *10,569.52* |
| PH096A | 05/21 | 5/31/2021 | AC 96RETX | 06 | | | Expense RE Tax - CCD | 2,642.38 | 0.00 | 13,211.90 |
| | | | | | | | ** **Account Totals** | 2,642.38 | 0.00 | **13,211.90** |
| **620-51** | | | **AMORT-LEASE BUYOUT** | | | | *Balance Forward* | | | *0.00* |
| **717-59** | | | **ADMIN-PROF FEES OTHER** | | | | *Balance Forward* | | | *0.00* |
| **718-45** | | | **GEN BLDG-MISCELLANEOUS** | | | | *Balance Forward* | | | *-595,861.67* |
| PH096A | 05/21 | 5/26/2021 | JE PH9612 | 06 | | | Ins. Proceeds - Aspen | 0.00 | 5,055.03 | -600,916.70 |
| PH096A | 05/21 | 5/19/2021 | JE PH96IN | 06 | | | Ins. Proceeds- First Specialty | 0.00 | 7,582.55 | -608,499.25 |
| PH096A | 05/21 | 5/19/2021 | JE PH96IN | 06 | | | Ins. Proceeds- Arch Inurance | 0.00 | 2,527.52 | -611,026.77 |
| | | | | | | | ** **Account Totals** | 0.00 | 15,165.10 | **-611,026.77** |
| **740-54** | | | **NON-ESCALATABLE-CONSULTNG** | | | | *Balance Forward* | | | *0.00* |
| **740-75** | | | **NON ESCALATABLE-OWNER EXP** | | | | *Balance Forward* | | | *0.00* |
| **760-01** | | | **PRIOR PERIOD (INC) / EXP** | | | | *Balance Forward* | | | *0.00* |
| | | | ** **Grand Totals** | | | | | 1,836,771.58 | 1,836,771.58 | |

CONFIDENTIAL

MBNF000912

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Database: | GEMS_EAST | | | | **General Ledger** | | Page: | | 10 |
| ENTITY: | PH096B | | | | GEMS_EAST | | Date: | | 6/9/2021 |
| | | | | | BROAD STREET LAND/SHSH | | Time: | | 08:45 AM |
| | | | | | | | | | |
| Accrual | | | | | 05/21 - 05/21 | | | | |

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **111-04** | | | **CASH** | | | | *Balance Forward* | | | *-8,332.75* |
| PH096B | 05/21 | 5/31/2021 | AP  203331 | 06 | | | A/P Cash Disbursed for checks  1244-1244 | 0.00 | 151.16 | -8,483.91 |
| PH096B | 05/21 | 5/13/2021 | PR  PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 0.00 | 38.67 | -8,522.58 |
| PH096B | 05/21 | 5/27/2021 | PR  PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 0.00 | 39.66 | -8,562.24 |
| | | | | | | **** Account Totals** | | 0.00 | 229.49 | **-8,562.24** |
| **117-21** | | | **PREPAID INSURANCE** | | | | *Balance Forward* | | | *0.00* |
| **117-22** | | | **PREPAID REAL ESTATE TAX** | | | | *Balance Forward* | | | *3,760.90* |
| PH096B | 05/21 | 5/31/2021 | AC  96RETX | 06 | | | Expense RE Tax | 0.00 | 470.11 | 3,290.79 |
| | | | | | | **** Account Totals** | | 0.00 | 470.11 | **3,290.79** |
| **211-05** | | | **ACCOUNTS PAYABLE** | | | | *Balance Forward* | | | *-76.16* |
| PH096B | 05/21 | 5/31/2021 | AP  203331 | 06 | | | A/P Total Payables for 05/21 | 76.16 | 0.00 | 0.00 |
| | | | | | | **** Account Totals** | | 76.16 | 0.00 | **0.00** |
| **290-00** | | | **RETAINED EARNINGS** | | | | *Balance Forward* | | | *2,136.62* |
| **290-01** | | | **CURRENT EARNINGS** | | | | *Balance Forward* | | | *0.00* |
| **514-27** | | | **HVAC MAINT.& REPAIR** | | | | *Balance Forward* | | | *0.00* |
| **517-01** | | | **ADMIN-SALARIES WAGES** | | | | *Balance Forward* | | | *329.78* |
| PH096B | 05/21 | 5/13/2021 | PR  PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 38.67 | 0.00 | 368.45 |
| PH096B | 05/21 | 5/27/2021 | PR  PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 39.66 | 0.00 | 408.11 |
| | | | | | | **** Account Totals** | | 78.33 | 0.00 | **408.11** |
| **517-59** | | | **ADMIN-PROF FEES OTHER** | | | | *Balance Forward* | | | *1.16* |
| **517-60** | | | **ADMIN-MGMT FEES/GEMS** | | | | *Balance Forward* | | | *300.00* |
| PH096B | 05/21 | 5/31/2021 | AP  203331 | 06 | | | 1244 5/6/2021 PRIOR MTH MGT FEE  G&E REAL ESTATE MGMT SERVICES INC | 75.00 | 0.00 | 375.00 |

MBNF000913

| Database: | GEMS_EAST | General Ledger | Page: | 11 |
| ENTITY: | PH096B | GEMS_EAST | Date: | 6/9/2021 |
| | | BROAD STREET LAND/SHSH | Time: | 08:45 AM |

Accrual                                                  05/21 - 05/21

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|

**517-60 - ADMIN-MGMT FEES/GEMS  (Continued)**

|  |  |  |  |  |  |  | ** Account Totals | 75.00 | 0.00 | **375.00** |
| **519-21** | | **UTILITIES-WATER** | | | | | *Balance Forward* | | | *0.00* |
| **531-31** | | **INSURANCE-PROPERTY** | | | | | *Balance Forward* | | | *0.00* |
| **532-33** | | **R.E. TAXES-COUNTY** | | | | | *Balance Forward* | | | *1,519.25* |
| PH096B | 05/21 | 5/31/2021 | AC  96RETX | 06 | | | Expense RE Tax - County | 379.81 | 0.00 | 1,899.06 |
|  |  |  |  |  |  |  | ** Account Totals | 379.81 | 0.00 | **1,899.06** |
| **532-34** | | **R.E. TAXES-CITY/BOROUGH** | | | | | *Balance Forward* | | | *361.20* |
| PH096B | 05/21 | 5/31/2021 | AC  96RETX | 06 | | | Expense RE Tax - County | 90.30 | 0.00 | 451.50 |
|  |  |  |  |  |  |  | ** Account Totals | 90.30 | 0.00 | **451.50** |
| | ** Grand Totals | | | | | | | **699.60** | **699.60** | |

CONFIDENTIAL

MBNF000914

| Database: | GEMS_EAST | | | | | | **General Ledger** | | | Page: | 12 |
| ENTITY: | PH096C | | | | | | GEMS_EAST | | | Date: | 6/9/2021 |
| | | | | | | | BROAD STREET STILES ALUMNI HAL | | | Time: | 08:45 AM |

Accrual                                    05/21 - 05/21

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **111-04** | | | **CASH** | | | | *Balance Forward* | | | *-1,576.25* |
| PH096C | 05/21 | 5/31/2021 | AP  203333 | 06 | | | A/P Cash Disbursed for checks  1257-1257 | 0.00 | 150.00 | -1,726.25 |
| PH096C | 05/21 | 5/13/2021 | PR  PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 0.00 | 38.67 | -1,764.92 |
| PH096C | 05/21 | 5/27/2021 | PR  PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 0.00 | 39.66 | -1,804.58 |
| | | | | | | | **\*\* Account Totals** | 0.00 | 228.33 | **-1,804.58** |
| **117-21** | | | **PREPAID INSURANCE** | | | | *Balance Forward* | | | *0.00* |
| **211-05** | | | **ACCOUNTS PAYABLE** | | | | *Balance Forward* | | | *-75.00* |
| PH096C | 05/21 | 5/31/2021 | AP  203333 | 06 | | | A/P Total Payables for 05/21 | 75.00 | 0.00 | 0.00 |
| | | | | | | | **\*\* Account Totals** | 75.00 | 0.00 | **0.00** |
| **290-00** | | | **RETAINED EARNINGS** | | | | *Balance Forward* | | | *1,021.47* |
| **290-01** | | | **CURRENT EARNINGS** | | | | *Balance Forward* | | | *0.00* |
| **517-01** | | | **ADMIN-SALARIES WAGES** | | | | *Balance Forward* | | | *329.78* |
| PH096C | 05/21 | 5/13/2021 | PR  PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 38.67 | 0.00 | 368.45 |
| PH096C | 05/21 | 5/27/2021 | PR  PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 39.66 | 0.00 | 408.11 |
| | | | | | | | **\*\* Account Totals** | 78.33 | 0.00 | **408.11** |
| **517-60** | | | **ADMIN-MGMT FEES/GEMS** | | | | *Balance Forward* | | | *300.00* |
| PH096C | 05/21 | 5/31/2021 | AP  203333 | 06 | | | 1257 5/7/2021 PRIOR MTH MGT FEE  G&E REAL ESTATE MGMT SERVICES INC | 75.00 | 0.00 | 375.00 |
| | | | | | | | **\*\* Account Totals** | 75.00 | 0.00 | **375.00** |
| **531-31** | | | **INSURANCE-PROPERTY** | | | | *Balance Forward* | | | *0.00* |
| **\*\* Grand Totals** | | | | | | | | 228.33 | 228.33 | |

CONFIDENTIAL

MBNF000915

| Database: | GEMS_EAST | | | | Check Register<br>GEMS_EAST | | | | Page:<br>Date:<br>Time: | 1<br>6/7/2021<br>08:42 AM |
|---|---|---|---|---|---|---|---|---|---|---|

05/21 Through 05/21

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| **1132**<br>PH096A | **5/5/2021**<br>check lost | **05/21** | **SM2682** | **WESTERN PEST SERVICES**  *** **VOID** ***<br>518-20 | 1999372 | 11/1/2020 | *Voided Check*<br>11/1/2020 | -700.00 | 0.00 | -700.00 |
| | | | | | | | *Check Total:* | *-700.00* | *0.00* | *-700.00* |
| **1235**<br>PH096A | **5/5/2021**<br>PEST CONTROL | **05/21** | **SM2682** | **WESTERN PEST SERVICES**<br>518-20 | 1999372 | 11/1/2020 | 11/1/2020 | 700.00 | 0.00 | 700.00 |
| | | | | | | | *Check Total:* | *700.00* | *0.00* | *700.00* |
| **1236**<br>PH096A<br>PH096A<br>PH096A | **5/6/2021**<br>ACCESS CARDS<br>security<br>SECURITY OFFICER | **05/21** | **06ALLUNI** | **UNIVERSAL PROTECTION SERVICE LP**<br>510-27<br>510-27<br>510-27 | 11138680<br>11204698<br>11268747 | 3/25/2021<br>4/15/2021<br>4/29/2021 | 3/25/2021<br>4/15/2021<br>4/29/2021 | 35,389.44<br>3,975.08<br>44,517.67 | 0.00<br>0.00<br>0.00 | 35,389.44<br>3,975.08<br>44,517.67 |
| | | | | | | | *Check Total:* | *83,882.19* | *0.00* | *83,882.19* |
| **1237**<br>PH096A<br>PH096A<br>PH096A | **5/6/2021**<br>TRASH REMOVAL<br>TRASH REMOVAL<br>TRASH REMOVAL | **05/21** | **06ATHCON** | **ATHENA CONTRACTING INC**<br>518-21<br>518-21<br>518-21 | 28633<br>29366<br>30143 | 3/1/2021<br>3/31/2021<br>5/1/2021 | 3/1/2021<br>3/31/2021<br>5/1/2021 | 150.00<br>150.00<br>150.00 | 0.00<br>0.00<br>0.00 | 150.00<br>150.00<br>150.00 |
| | | | | | | | *Check Total:* | *450.00* | *0.00* | *450.00* |
| **1238**<br>PH096A<br>PH096A<br>PH096A | **5/6/2021**<br>HVAC WATER TREATM<br>HVAC WATER TREATM<br>HVAC WATER TREATM | **05/21** | **06BARWAT** | **BARCLAY WATER MANAGEMENT, INC.**<br>514-51<br>514-51<br>514-51 | 9105536-IN<br>9106223-IN<br>9107192-IN | 3/1/2021<br>4/1/2021<br>5/3/2021 | 3/1/2021<br>4/1/2021<br>5/3/2021 | 1,512.00<br>1,512.00<br>1,512.00 | 0.00<br>0.00<br>0.00 | 1,512.00<br>1,512.00<br>1,512.00 |
| | | | | | | | *Check Total:* | *4,536.00* | *0.00* | *4,536.00* |
| **1239**<br>PH096A<br>PH096A | **5/6/2021**<br>10th FL SMOKE DETEC<br>wrong vendor ID | **05/21** | **06ELESEC** | **ELECTRONIC SECURITY & CONTROL**  *** **VOID** ***<br>510-22<br>510-22 | 29461<br>29461 | 2/23/2021<br>2/23/2021 | *Voided Check*<br>2/23/2021<br>2/23/2021 | 605.00<br>-605.00 | 0.00<br>0.00 | 605.00<br>-605.00 |
| | | | | | | | *Check Total:* | *0.00* | *0.00* | *0.00* |
| **1240**<br>PH096A<br>PH096A | **5/6/2021**<br>OIL & GREASE SERVIC<br>OIL & GREASE SERVIC | **05/21** | **06ELOELE** | **ELITE ELEVATOR SERVICES LLC**<br>516-20<br>516-20 | 16375<br>16519 | 3/22/2021<br>4/20/2021 | 3/22/2021<br>4/20/2021 | 1,485.00<br>1,485.00 | 0.00<br>0.00 | 1,485.00<br>1,485.00 |

MBNF000916

| Database: | GEMS_EAST | | | Check Register GEMS_EAST | | | | | Page: | 2 |
| | | | | | | | | | Date: | 6/7/2021 |
| | | | | | | | | | Time: | 08:42 AM |

05/21 Through 05/21

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Check Total: | 2,970.00 | 0.00 | 2,970.00 |
| **1241** | **5/6/2021** | **05/21** | **06GDISER** | **GDI SERVICES INC** | | | | | | |
| PH096A | JANITORIAL | | | 511-20 | AINV20206677 | 3/10/2021 | 3/10/2021 | 2,213.40 | 0.00 | 2,213.40 |
| PH096A | JANITORIAL supplies | | | 511-40 | AINV20206822 | 3/10/2021 | 3/10/2021 | 93.46 | 0.00 | 93.46 |
| PH096A | JANITORIAL | | | 511-20 | AINV20207130 | 4/8/2021 | 4/8/2021 | 2,213.40 | 0.00 | 2,213.40 |
| | | | | | | | Check Total: | 4,520.26 | 0.00 | 4,520.26 |
| **1242** | **5/6/2021** | **05/21** | **06GENSE1** | **GENSERVE INC** | | | | | | |
| PH096A | BUILDING LOAD TEST | | | 510-35 | 0233222-IN | 3/31/2021 | 3/31/2021 | 1,512.00 | 0.00 | 1,512.00 |
| PH096A | SERVICE | | | 510-35 | 0234673-IN | 4/19/2021 | 4/19/2021 | 378.00 | 0.00 | 378.00 |
| PH096A | generator SERVICE | | | 510-35 | 0235923-IN | 4/30/2021 | 4/30/2021 | 604.80 | 0.00 | 604.80 |
| | | | | | | | Check Total: | 2,494.80 | 0.00 | 2,494.80 |
| **1243** | **5/6/2021** | **05/21** | **06HBFRAZ** | **H B FRAZER COMPANY PA** | | | | | | |
| PH096A | ELECTRICAL SERVICE | | | 512-20 | 154150 | 4/14/2021 | 4/14/2021 | 2,520.16 | 0.00 | 2,520.16 |
| | | | | | | | Check Total: | 2,520.16 | 0.00 | 2,520.16 |
| **1244** | **5/6/2021** | **05/21** | **06NGKF** | **G&E REAL ESTATE MGMT SERVICES INC** | | | | | | |
| PH096A | PRIOR MTH MGT FEE | | | 517-60 | PH096MF202 | 4/1/2021 | 4/1/2021 | 6,975.00 | 0.00 | 6,975.00 |
| PH096A | PRIOR MTH MGT FEE | | | 517-60 | PH096MF202 | 5/1/2021 | 5/1/2021 | 6,975.00 | 0.00 | 6,975.00 |
| PH096B | PRIOR MTH MGT FEE | | | 517-60 | PH096MF202 | 4/1/2021 | 4/1/2021 | 75.00 | 0.00 | 75.00 |
| PH096B | PRIOR MTH MGT FEE | | | 517-60 | PH096MF202 | 5/1/2021 | 5/1/2021 | 75.00 | 0.00 | 75.00 |
| PH096A | 3/21 AVID | | | 517-59 | 40439781 | 4/1/2021 | 4/1/2021 | 30.05 | 0.00 | 30.05 |
| PH096A | FEB 2021 AVID | | | 517-59 | 40426615 | 2/28/2021 | 2/28/2021 | 56.62 | 0.00 | 56.62 |
| PH096B | 3/21 AVID | | | 517-59 | 40439781 | 4/1/2021 | 4/1/2021 | 1.16 | 0.00 | 1.16 |
| | | | | | | | Check Total: | 14,187.83 | 0.00 | 14,187.83 |
| **1245** | **5/6/2021** | **05/21** | **06TOZTRA** | **TOZOUR ENERGY SYSTEMS INC** | | | | | | |
| PH096A | HVAC CONTRACT | | | 514-01 | 055628297 | 4/6/2021 | 4/6/2021 | 11,037.60 | 0.00 | 11,037.60 |
| PH096A | SERVICE CONTRACT | | | 514-01 | 055630160 | 5/5/2021 | 5/5/2021 | 11,037.60 | 0.00 | 11,037.60 |
| | | | | | | | Check Total: | 22,075.20 | 0.00 | 22,075.20 |
| **1246** | **5/6/2021** | **05/21** | **06VICENG** | **VICINITY ENERGY PHILADELPHIA INC** | | | | | | |
| PH096A | STEAM 2/28-3/31 | | | 519-24 | 627870968513 | 4/12/2021 | 4/12/2021 | 10,839.66 | 0.00 | 10,839.66 |

CONFIDENTIAL

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Database: | GEMS_EAST | | | Check Register<br>GEMS_EAST | | | | Page: | | 3 |
| | | | | | | | | Date: | | 6/7/2021 |
| | | | | | | | | Time: | | 08:42 AM |
| | | | | 05/21 Through 05/21 | | | | | | |

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Check Total: | 10,839.66 | 0.00 | 10,839.66 |
| **1247** | **5/6/2021** | **05/21** | **M2GRAI80** | **GRAINGER** | | | | | | |
| PH096A | SUPPLIES | | | 518-40 | 9824111414 | 3/3/2021 | 3/3/2021 | 44.14 | 0.00 | 44.14 |
| | | | | | | | Check Total: | 44.14 | 0.00 | 44.14 |
| **1248** | **5/6/2021** | **05/21** | **SM000231** | **G&E REAL ESTATE MANAGEMENT SERVICES** | | | | | | |
| PH096A | EMS MONTHLY FEE | | | 517-59 | 0421-PH096A | 4/30/2021 | 4/30/2021 | 100.00 | 0.00 | 100.00 |
| PH096A | CELL PHONE | | | 517-44 | 0421-PH096A | 4/30/2021 | 4/30/2021 | 13.87 | 0.00 | 13.87 |
| PH096A | EXPENSE | | | 517-50 | 0421-PH096A | 4/30/2021 | 4/30/2021 | 35.00 | 0.00 | 35.00 |
| PH096A | MILEAGE | | | 517-50 | 0421-PH096A | 4/30/2021 | 4/30/2021 | 84.00 | 0.00 | 84.00 |
| | | | | | | | Check Total: | 232.87 | 0.00 | 232.87 |
| **1249** | **5/6/2021** | **05/21** | **SM000274** | **OLIVER SPRINKLER CO., INC.** | | | | | | |
| PH096A | SERVICE CALL | | | 510-22 | 311208 | 3/31/2021 | 3/31/2021 | 675.00 | 0.00 | 675.00 |
| PH096A | HVAC SERVICE | | | 510-22 | 311871 | 4/26/2021 | 4/26/2021 | 981.68 | 0.00 | 981.68 |
| | | | | | | | Check Total: | 1,656.68 | 0.00 | 1,656.68 |
| **1250** | **5/6/2021** | **05/21** | **SM228** | **WATER REVENUE BUREAU** | | | | | | |
| PH096A | WATER 3/11-4/15 | | | 519-21 | 22001-041621 | 4/16/2021 | 4/16/2021 | 1,253.52 | 0.00 | 1,253.52 |
| | | | | | | | Check Total: | 1,253.52 | 0.00 | 1,253.52 |
| **1251** | **5/6/2021** | **05/21** | **SM228** | **WATER REVENUE BUREAU** | | | | | | |
| PH096A | WATER 3/15-4/14 | | | 519-21 | 36002-041921 | 4/19/2021 | 4/19/2021 | 19,698.55 | 0.00 | 19,698.55 |
| | | | | | | | Check Total: | 19,698.55 | 0.00 | 19,698.55 |
| **1252** | **5/6/2021** | **05/21** | **SM2682** | **WESTERN PEST SERVICES** | | | | | | |
| PH096A | PEST CONTROL | | | 518-20 | 6834573 | 4/1/2021 | 4/1/2021 | 700.00 | 0.00 | 700.00 |
| PH096A | PEST CONTROL | | | 518-20 | IN-12186861W | 7/24/2020 | 7/24/2020 | 1,500.00 | 0.00 | 1,500.00 |
| PH096A | PEST CONTROL | | | 518-20 | IN-6803579 | 3/5/2021 | 3/5/2021 | 175.00 | 0.00 | 175.00 |
| PH096A | PEST CONTROL | | | 518-20 | IN-6803580 | 3/12/2021 | 3/12/2021 | 175.00 | 0.00 | 175.00 |
| PH096A | PEST CONTROL | | | 518-20 | IN-6803581 | 3/19/2021 | 3/19/2021 | 175.00 | 0.00 | 175.00 |
| PH096A | PEST CONTROL | | | 518-20 | IN-6803582 | 3/26/2021 | 3/26/2021 | 175.00 | 0.00 | 175.00 |
| PH096A | PEST CONTROL | | | 518-20 | IN-6834573 | 4/2/2021 | 4/2/2021 | 175.00 | 0.00 | 175.00 |
| PH096A | PEST CONTROL | | | 518-20 | IN-6834574 | 4/9/2021 | 4/9/2021 | 175.00 | 0.00 | 175.00 |

MBNF000918

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Database: | GEMS_EAST | | | | Check Register GEMS_EAST | | | Page: Date: Time: | | 4 6/7/2021 08:42 AM |

05/21 Through 05/21

| Check # Entity | Check Date Reference | Check Pd | Vendor/Alternate Address ID P.O. Number | Vendor Name Account Number | Invoice Number | Invoice Date | Due Date | Invoice Amount | Discount Amount | Check Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Check Total: | 3,250.00 | 0.00 | 3,250.00 |
| **1253** PH096A | **5/6/2021** GAS 2/23-3/26 | **05/21** | **SM3988** | **PHILADELPHIA GAS WORKS** 519-25 | 78663-041021 | 4/10/2021 | 4/10/2021 | 1,256.57 | 0.00 | 1,256.57 |
| | | | | | | | Check Total: | 1,256.57 | 0.00 | 1,256.57 |
| **1254** PH096A | **5/6/2021** ELECTRIC 4/1-4/30 | **05/21** | **SM4085** | **PECO ENERGY** 519-23 | 65018-050321 | 5/3/2021 | 5/3/2021 | 22,296.86 | 0.00 | 22,296.86 |
| | | | | | | | Check Total: | 22,296.86 | 0.00 | 22,296.86 |
| **1255** PH096A | **5/6/2021** ELECTRIC 3/3-4/1 | **05/21** | **SM4085** | **PECO ENERGY** 519-23 | 65018-060421 | 4/6/2021 | 4/6/2021 | 22,896.49 | 0.00 | 22,896.49 |
| | | | | | | | Check Total: | 22,896.49 | 0.00 | 22,896.49 |
| **1256** PH096A | **5/6/2021** PLANTERS | **05/21** | **SM4340** | **JAY B. COMLY BUILDING AND** 518-27 | 39411 | 3/23/2021 | 3/23/2021 | 625.00 | 0.00 | 625.00 |
| | | | | | | | Check Total: | 625.00 | 0.00 | 625.00 |
| **1257** PH096C PH096C | **5/7/2021** PRIOR MTH MGT FEE PRIOR MTH MGT FEE | **05/21** | **06NGKF** | **G&E REAL ESTATE MGMT SERVICES INC** 517-60 517-60 | PH096MF202 PH096MF202 | 5/1/2021 4/1/2021 | 5/1/2021 4/1/2021 | 75.00 75.00 | 0.00 0.00 | 75.00 75.00 |
| | | | | | | | Check Total: | 150.00 | 0.00 | 150.00 |
| **1258** PH096A | **5/10/2021** ELEVATOR SERVICE | **05/21** | **06ELOELE** | **ELITE ELEVATOR SERVICES LLC** 516-25 | 16452 | 3/22/2021 | 3/22/2021 | 927.00 | 0.00 | 927.00 |
| | | | | | | | Check Total: | 927.00 | 0.00 | 927.00 |
| **1259** PH096A | **5/10/2021** JANITORIAL | **05/21** | **06GDISER** | **GDI SERVICES INC** 511-40 | AINV20207600 | 5/6/2021 | 5/6/2021 | 48.15 | 0.00 | 48.15 |
| | | | | | | | Check Total: | 48.15 | 0.00 | 48.15 |
| **1260** PH096A PH096A | **5/10/2021** JANITORIAL wrong vendorID | **05/21** | **06GDISVC** | **GDI SERVICES INC  *** VOID *** 511-20 511-20 | INV20207555 INV20207555 | 5/10/2021 5/10/2021 | **Voided Check** 5/10/2021 5/10/2021 | 2,213.40 -2,213.40 | 0.00 0.00 | 2,213.40 -2,213.40 |

CONFIDENTIAL

| Database: | GEMS_EAST | | | Check Register | | | | | Page: | 5 |
| | | | | GEMS_EAST | | | | | Date: | 6/7/2021 |
| | | | | | | | | | Time: | 08:42 AM |

05/21 Through 05/21

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Check Total: | 0.00 | 0.00 | 0.00 |
| **1261**<br>PH096A | **5/10/2021**<br>STEAM 3/31-4/30 | **05/21** | 06VICENG | **VICINITY ENERGY PHILADELPHIA INC**<br>519-24 | 627423326393 | 5/6/2021 | 5/6/2021 | 10,839.01 | 0.00 | 10,839.01 |
| | | | | | | | Check Total: | 10,839.01 | 0.00 | 10,839.01 |
| **1262**<br>PH096A | **5/12/2021**<br>10th FL SMOKE DETEC | **05/21** | 06ELCSEC | **ELECTRONIC SECURITY SYSTEMS**<br>510-22 | 29461 | 2/23/2021 | 2/24/2021 | 605.00 | 0.00 | 605.00 |
| | | | | | | | Check Total: | 605.00 | 0.00 | 605.00 |
| **1263**<br>PH096A | **5/12/2021**<br>JANITORIAL | **05/21** | 06GDISER | **GDI SERVICES INC**<br>511-20 | INV20207555 | 5/10/2021 | 5/11/2021 | 2,213.40 | 0.00 | 2,213.40 |
| | | | | | | | Check Total: | 2,213.40 | 0.00 | 2,213.40 |
| **1264**<br>PH096A | **5/13/2021**<br>GAS 3/26-4/27 | **05/21** | SM3988 | **PHILADELPHIA GAS WORKS**<br>519-25 | 78663-050621 | 5/6/2021 | 5/6/2021 | 1,115.31 | 0.00 | 1,115.31 |
| | | | | | | | Check Total: | 1,115.31 | 0.00 | 1,115.31 |
| **1265**<br>PH096A | **5/17/2021**<br>ELEVATOR INSPECTIC | **05/21** | 06APEXEL | **APEX ELEVATOR INSPECTION AND**<br>516-25 | 36033 | 5/12/2021 | 5/12/2021 | 2,490.00 | 0.00 | 2,490.00 |
| | | | | | | | Check Total: | 2,490.00 | 0.00 | 2,490.00 |
| **1266**<br>PH096A | **5/17/2021**<br>JANITORIAL | **05/21** | 06GDISER | **GDI SERVICES INC**<br>511-40 | PAINV0206822 | 3/10/2021 | 3/10/2021 | 93.46 | 0.00 | 93.46 |
| | | | | | | | Check Total: | 93.46 | 0.00 | 93.46 |
| **1267**<br>PH096A | **5/26/2021**<br>security benefits | **05/21** | 06ALLUNI | **UNIVERSAL PROTECTION SERVICE LP**<br>510-27 | 11328847 | 5/20/2021 | 5/20/2021 | 6,133.81 | 0.00 | 6,133.81 |
| | | | | | | | Check Total: | 6,133.81 | 0.00 | 6,133.81 |
| **1268**<br>PH096A | **5/26/2021**<br>OIL & GREASE SERVIC | **05/21** | 06ELOELE | **ELITE ELEVATOR SERVICES LLC**<br>516-20 | 16674 | 5/20/2021 | 5/20/2021 | 1,529.28 | 0.00 | 1,529.28 |
| | | | | | | | Check Total: | 1,529.28 | 0.00 | 1,529.28 |

CONFIDENTIAL

| Database: | GEMS_EAST | | | | Check Register<br>GEMS_EAST | | | | Page:<br>Date:<br>Time: | 6<br>6/7/2021<br>08:42 AM |
|---|---|---|---|---|---|---|---|---|---|---|

05/21 Through 05/21

| Check #<br>Entity | Check Date<br>Reference | Check Pd | Vendor/Alternate<br>Address ID<br>P.O. Number | Vendor Name<br>Account Number | Invoice Number | Invoice<br>Date | Due Date | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| **1269**<br>PH096A | **5/26/2021**<br>ELECTRIC METER | **05/21** | **AXAXENER** | **ENERGY MANAGEMENT SYSTEMS**<br>519-21 | 335785 | 5/19/2021 | 5/19/2021 | 250.00 | 0.00 | 250.00 |
| | | | | | | | *Check Total:* | *250.00* | *0.00* | *250.00* |
| | | | | | | | *Grand Total:* | *248,081.20* | *0.00* | *248,081.20* |

MBNF000921

| Database: | GEMS_EAST | | | **Distribution List** **GEMS_EAST** | | | Fiscal Period 05/21 - 05/21 | | Page: Date: Time: | 1 6/7/2021 08:43 AM |

| Invoice Number | Invoice Date | P.O. Number | Entity | Reference | Invoice Amount | Discount Amount | Check Amount | Check Date | Check Number |
|---|---|---|---|---|---|---|---|---|---|
| **Account:** | **510-22** | | **SEC/SAFETY-C.SVC FIRE SYS** | | | | | | |
| | Vendor: | 06ELESEC | ELECTRONIC SECURITY & CONTROL | | | | | | |
| 29461 | 2/23/2021 | | PH096A | wrong vendor ID | -605.00 | 0.00 | -605.00 | 5/12/2021 | 1239 |
| | | | | Expense Period 03/21 Total: | -605.00 | 0.00 | -605.00 | | |
| | Vendor: | 06ELCSEC | ELECTRONIC SECURITY SYSTEMS | | | | | | |
| 29461 | 2/23/2021 | | PH096A | 10th FL SMOKE DETECT | 605.00 | 0.00 | 605.00 | 5/12/2021 | 1262 |
| | Vendor: | SM000274 | OLIVER SPRINKLER CO., INC. | | | | | | |
| 311871 | 4/26/2021 | | PH096A | HVAC SERVICE | 981.68 | 0.00 | 981.68 | 5/6/2021 | 1249 |
| | | | | Expense Period 05/21 Total: | 1,586.68 | 0.00 | 1,586.68 | | |
| | | | | **Account Total:** | **981.68** | **0.00** | **981.68** | | |
| **Account:** | **510-27** | | **SEC/SAFETY-CARD ACCESS** | | | | | | |
| | Vendor: | 06ALLUNI | UNIVERSAL PROTECTION SERVICE LP | | | | | | |
| 11268747 | 4/29/2021 | | PH096A | SECURITY OFFICER | 44,517.67 | 0.00 | 44,517.67 | 5/6/2021 | 1236 |
| 11328847 | 5/20/2021 | | PH096A | security benefits | 6,133.81 | 0.00 | 6,133.81 | 5/26/2021 | 1267 |
| | | | | Expense Period 05/21 Total: | 50,651.48 | 0.00 | 50,651.48 | | |
| | | | | **Account Total:** | **50,651.48** | **0.00** | **50,651.48** | | |
| **Account:** | **510-35** | | **EMERGENCY GEN. SERVICE** | | | | | | |
| | Vendor: | 06GENSE1 | GENSERVE INC | | | | | | |
| 0235923-IN | 4/30/2021 | | PH096A | generator SERVICE | 604.80 | 0.00 | 604.80 | 5/6/2021 | 1242 |
| | | | | Expense Period 05/21 Total: | 604.80 | 0.00 | 604.80 | | |
| | | | | **Account Total:** | **604.80** | **0.00** | **604.80** | | |
| **Account:** | **511-20** | | **CLEANING-C.SVC BASE BLDG.** | | | | | | |
| | Vendor: | 06GDISER | GDI SERVICES INC | | | | | | |
| INV20207555 | 5/10/2021 | | PH096A | JANITORIAL | 2,213.40 | 0.00 | 2,213.40 | 5/12/2021 | 1263 |
| | Vendor: | 06GDISVC | GDI SERVICES INC | | | | | | |

CONFIDENTIAL

| Database: | GEMS_EAST | | | **Distribution List** | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **GEMS_EAST** | | Fiscal Period 05/21 - 05/21 | | Page: | | 2 |
| | | | | | | | | Date: | | 6/7/2021 |
| | | | | | | | | Time: | | 08:43 AM |

| Invoice Number | Invoice Date | P.O. Number | Entity | Reference | Invoice Amount | Discount Amount | Check Amount | Check Date | Check Number |
|---|---|---|---|---|---|---|---|---|---|
| INV20207555 | 5/10/2021 | | PH096A | JANITORIAL | 2,213.40 | 0.00 | 2,213.40 | 5/10/2021 | 1260 |
| INV20207555 | 5/10/2021 | | PH096A | wrong vendorID | -2,213.40 | 0.00 | -2,213.40 | 5/12/2021 | 1260 |
| | | | | Expense Period 05/21 Total: | 2,213.40 | 0.00 | 2,213.40 | | |
| | | | | **Account Total:** | **2,213.40** | **0.00** | **2,213.40** | | |

**Account: 511-40**     **CLEANING-MAT/SUPPLIES**

Vendor: 06GDISER   GDI SERVICES INC

| Invoice Number | Invoice Date | P.O. Number | Entity | Reference | Invoice Amount | Discount Amount | Check Amount | Check Date | Check Number |
|---|---|---|---|---|---|---|---|---|---|
| AINV20207600 | 5/6/2021 | | PH096A | JANITORIAL | 48.15 | 0.00 | 48.15 | 5/10/2021 | 1259 |
| PAINV0206822 | 3/10/2021 | | PH096A | JANITORIAL | 93.46 | 0.00 | 93.46 | 5/17/2021 | 1266 |
| | | | | Expense Period 05/21 Total: | 141.61 | 0.00 | 141.61 | | |
| | | | | **Account Total:** | **141.61** | **0.00** | **141.61** | | |

**Account: 514-01**     **HVAC MAINT WAGES**

Vendor: 06TOZTRA   TOZOUR ENERGY SYSTEMS INC

| Invoice Number | Invoice Date | P.O. Number | Entity | Reference | Invoice Amount | Discount Amount | Check Amount | Check Date | Check Number |
|---|---|---|---|---|---|---|---|---|---|
| 055630160 | 5/5/2021 | | PH096A | SERVICE CONTRACT | 11,037.60 | 0.00 | 11,037.60 | 5/6/2021 | 1245 |
| | | | | Expense Period 05/21 Total: | 11,037.60 | 0.00 | 11,037.60 | | |
| | | | | **Account Total:** | **11,037.60** | **0.00** | **11,037.60** | | |

**Account: 514-51**     **HVAC MAINT-WATER TREATMET**

Vendor: 06BARWAT   BARCLAY WATER MANAGEMENT, INC.

| Invoice Number | Invoice Date | P.O. Number | Entity | Reference | Invoice Amount | Discount Amount | Check Amount | Check Date | Check Number |
|---|---|---|---|---|---|---|---|---|---|
| 9107192-IN | 5/3/2021 | | PH096A | HVAC WATER TREATMEAN | 1,512.00 | 0.00 | 1,512.00 | 5/6/2021 | 1238 |
| | | | | Expense Period 05/21 Total: | 1,512.00 | 0.00 | 1,512.00 | | |
| | | | | **Account Total:** | **1,512.00** | **0.00** | **1,512.00** | | |

**Account: 516-20**     **ELEVATOR-CONTRACT SVC**

Vendor: 06ELOELE   ELITE ELEVATOR SERVICES LLC

| Invoice Number | Invoice Date | P.O. Number | Entity | Reference | Invoice Amount | Discount Amount | Check Amount | Check Date | Check Number |
|---|---|---|---|---|---|---|---|---|---|
| 16674 | 5/20/2021 | | PH096A | OIL & GREASE SERVICE | 1,529.28 | 0.00 | 1,529.28 | 5/26/2021 | 1268 |
| | | | | Expense Period 05/21 Total: | 1,529.28 | 0.00 | 1,529.28 | | |
| | | | | **Account Total:** | **1,529.28** | **0.00** | **1,529.28** | | |

CONFIDENTIAL

| Database: | GEMS_EAST | | | Distribution List<br>GEMS_EAST | | | Fiscal Period 05/21 - 05/21 | | Page:<br>Date:<br>Time: | 3<br>6/7/2021<br>08:43 AM |
|---|---|---|---|---|---|---|---|---|---|---|

| Invoice<br>Number | Invoice<br>Date | P.O. Number | Entity | Reference | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount | Check<br>Date | Check<br>Number |
|---|---|---|---|---|---|---|---|---|---|
| **Account: 516-25** | | **ELEV-REP & MAINT-BLDG** | | | | | | | |
| Vendor: | 06APEXEL | APEX ELEVATOR INSPECTION AND | | | | | | | |
| 36033 | 5/12/2021 | | PH096A | ELEVATOR INSPECTION | 2,490.00 | 0.00 | 2,490.00 | 5/17/2021 | 1265 |
| Vendor: | 06ELOELE | ELITE ELEVATOR SERVICES LLC | | | | | | | |
| 16452 | 3/22/2021 | | PH096A | ELEVATOR SERVICE | 927.00 | 0.00 | 927.00 | 5/10/2021 | 1258 |
| | | | | Expense Period 05/21 Total: | 3,417.00 | 0.00 | 3,417.00 | | |
| | | | | **Account Total:** | **3,417.00** | **0.00** | **3,417.00** | | |
| **Account: 517-41** | | **ADMIN-POSTAGE** | | | | | | | |
| Vendor: | 06NGKF | G&E REAL ESTATE MGMT SERVICES INC | | | | | | | |
| PH096PS0321 | 3/31/2021 | | PH096A | POSTAGE | 53.06 | 0.00 | 53.06 | 4/24/2021 | DELETED |
| PH096PS0321 | 3/31/2021 | | PH096A | POSTAGE | -53.06 | 0.00 | -53.06 | 4/24/2021 | DELETED |
| | | | | Expense Period 05/21 Total: | 0.00 | 0.00 | 0.00 | | |
| | | | | **Account Total:** | **0.00** | **0.00** | **0.00** | | |
| **Account: 517-44** | | **ADMIN-TELEPHONE** | | | | | | | |
| Vendor: | SM000231 | G&E REAL ESTATE MANAGEMENT SERVICES | | | | | | | |
| 0421-PH096A | 4/30/2021 | | PH096A | CELL PHONE | 13.87 | 0.00 | 13.87 | 5/6/2021 | 1248 |
| | | | | Expense Period 05/21 Total: | 13.87 | 0.00 | 13.87 | | |
| | | | | **Account Total:** | **13.87** | **0.00** | **13.87** | | |
| **Account: 517-50** | | **ADMIN-TRAVEL** | | | | | | | |
| Vendor: | SM000231 | G&E REAL ESTATE MANAGEMENT SERVICES | | | | | | | |
| 0421-PH096A | 4/30/2021 | | PH096A | EXPENSE | 35.00 | 0.00 | 35.00 | 5/6/2021 | 1248 |
| 0421-PH096A | 4/30/2021 | | PH096A | MILEAGE | 84.00 | 0.00 | 84.00 | 5/6/2021 | 1248 |
| | | | | Expense Period 05/21 Total: | 119.00 | 0.00 | 119.00 | | |
| | | | | **Account Total:** | **119.00** | **0.00** | **119.00** | | |

CONFIDENTIAL

MBNF000924

| Database: | GEMS_EAST | | | **Distribution List** | | | | | Page: | 4 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **GEMS_EAST** | | Fiscal Period 05/21 - 05/21 | | | Date: | 6/7/2021 |
| | | | | | | | | | Time: | 08:43 AM |

| Invoice Number | Invoice Date | P.O. Number | Entity | Reference | Invoice Amount | Discount Amount | Check Amount | Check Date | Check Number |
|---|---|---|---|---|---|---|---|---|---|
| **Account:** | **517-59** | | **ADMIN-PROF FEES OTHER** | | | | | | |
| Vendor: | SM000231 | G&E REAL ESTATE MANAGEMENT SERVICES | | | | | | | |
| 0421-PH096A | 4/30/2021 | | PH096A | EMS MONTHLY FEE | 100.00 | 0.00 | 100.00 | 5/6/2021 | 1248 |
| | | | | Expense Period 05/21 Total: | 100.00 | 0.00 | 100.00 | | |
| | | | | **Account Total:** | **100.00** | **0.00** | **100.00** | | |
| **Account:** | **517-60** | | **ADMIN-MGMT FEES/GEMS** | | | | | | |
| Vendor: | 06NGKF | G&E REAL ESTATE MGMT SERVICES INC | | | | | | | |
| PH096MF202 | 5/1/2021 | | PH096A | PRIOR MTH MGT FEE | 6,975.00 | 0.00 | 6,975.00 | 5/6/2021 | 1244 |
| PH096MF202 | 5/1/2021 | | PH096B | PRIOR MTH MGT FEE | 75.00 | 0.00 | 75.00 | 5/6/2021 | 1244 |
| PH096MF202 | 5/1/2021 | | PH096C | PRIOR MTH MGT FEE | 75.00 | 0.00 | 75.00 | 5/7/2021 | 1257 |
| | | | | Expense Period 05/21 Total: | 7,125.00 | 0.00 | 7,125.00 | | |
| | | | | **Account Total:** | **7,125.00** | **0.00** | **7,125.00** | | |
| **Account:** | **518-20** | | **GEN BLDG-C.SVC EXTERMINA** | | | | | | |
| Vendor: | SM2682 | WESTERN PEST SERVICES | | | | | | | |
| 6834573 | 4/1/2021 | | PH096A | PEST CONTROL | 700.00 | 0.00 | 700.00 | 5/6/2021 | 1252 |
| | | | | Expense Period 05/21 Total: | 700.00 | 0.00 | 700.00 | | |
| | | | | **Account Total:** | **700.00** | **0.00** | **700.00** | | |
| **Account:** | **518-21** | | **GEN BLDG-C.SVC TRASH HAUL** | | | | | | |
| Vendor: | 06ATHCON | ATHENA CONTRACTING INC | | | | | | | |
| 30143 | 5/1/2021 | | PH096A | TRASH REMOVAL | 150.00 | 0.00 | 150.00 | 5/6/2021 | 1237 |
| | | | | Expense Period 05/21 Total: | 150.00 | 0.00 | 150.00 | | |
| | | | | **Account Total:** | **150.00** | **0.00** | **150.00** | | |
| **Account:** | **519-21** | | **UTILITIES-WATER** | | | | | | |
| Vendor: | AXAXENER | ENERGY MANAGEMENT SYSTEMS | | | | | | | |

MBNF000925

| Database: | GEMS_EAST | | | **Distribution List**<br>**GEMS_EAST** | | | Fiscal Period 05/21 - 05/21 | | Page:<br>Date:<br>Time: | 5<br>6/7/2021<br>08:43 AM |

| Invoice<br>Number | Invoice<br>Date | P.O. Number | Entity | Reference | Invoice<br>Amount | Discount<br>Amount | Check<br>Amount | Check<br>Date | Check<br>Number |
|---|---|---|---|---|---|---|---|---|---|
| 335785 | 5/19/2021 | | PH096A | ELECTRIC METER | 250.00 | 0.00 | 250.00 | 5/26/2021 | 1269 |
| Vendor: SM228 | | WATER REVENUE BUREAU | | | | | | | |
| 36002-041921 | 4/19/2021 | | PH096A | WATER 3/15-4/14 | 19,698.55 | 0.00 | 19,698.55 | 5/6/2021 | 1251 |
| | | | | Expense Period 05/21 Total: | 19,948.55 | 0.00 | 19,948.55 | | |
| | | | | **Account Total:** | **19,948.55** | **0.00** | **19,948.55** | | |
| **Account: 519-23** | | **UTILITIES-ELECTRICITY** | | | | | | | |
| Vendor: SM4085 | | PECO ENERGY | | | | | | | |
| 65018-050321 | 5/3/2021 | | PH096A | ELECTRIC 4/1-4/30 | 22,296.86 | 0.00 | 22,296.86 | 5/6/2021 | 1254 |
| | | | | Expense Period 05/21 Total: | 22,296.86 | 0.00 | 22,296.86 | | |
| | | | | **Account Total:** | **22,296.86** | **0.00** | **22,296.86** | | |
| **Account: 519-24** | | **UTILITIES-STEAM** | | | | | | | |
| Vendor: 06VICENG | | VICINITY ENERGY PHILADELPHIA INC | | | | | | | |
| 627423326393 | 5/6/2021 | | PH096A | STEAM 3/31-4/30 | 10,839.01 | 0.00 | 10,839.01 | 5/10/2021 | 1261 |
| | | | | Expense Period 05/21 Total: | 10,839.01 | 0.00 | 10,839.01 | | |
| | | | | **Account Total:** | **10,839.01** | **0.00** | **10,839.01** | | |
| **Account: 519-25** | | **UTILITIES-GAS** | | | | | | | |
| Vendor: SM3988 | | PHILADELPHIA GAS WORKS | | | | | | | |
| 78663-050621 | 5/6/2021 | | PH096A | GAS 3/26-4/27 | 1,115.31 | 0.00 | 1,115.31 | 5/13/2021 | 1264 |
| | | | | Expense Period 05/21 Total: | 1,115.31 | 0.00 | 1,115.31 | | |
| | | | | **Account Total:** | **1,115.31** | **0.00** | **1,115.31** | | |
| | | | | **Grand Total:** | **134,496.45** | **0.00** | **134,496.45** | | |

CONFIDENTIAL

MBNF000926

NEW

| | | BANK: | PNC BANK | | OFFICE: | |
| | | ACCOUNT NUMBER: | ████ | | PROPERTY: | Broad Street Healthcare PH096ABC |

| | | | | | | | | | CORRECTED | |
| DATE | DESCRIPTION | REFERENCE | AMOUNT | DATE | DESCRIPTION | REFERENCE | AMOUNT | REFERENCE | RESOLUTION | BY | DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/31/21 | Bank Balance: | | 796,718.19 | 5/31/21 | GL Balance 111-04: | | 767,153.03 | | | | |
| Less: | Outstanding Checks: (Attach Detail) | | (29,565.16) | | Reconciling Items: | | | | | | |
| Add: | Outstanding Additions: | | | | | | | | | | |
| | Other: | | | | | | | | | | |
| | Adjusted Bank Balance: | | 767,153.03 | | Adjusted Book Balance: | | 767,153.03 | | | | |

| PREPARED BY: | DATE: | 6/1/21 | APPROVED BY: | DATE: | CONTROLLER: | DATE: |
|---|---|---|---|---|---|---|
| *Gabriel J Perez* | | | *Kathleen Guarnera* | 06/03/21 | | |

0.00

CONFIDENTIAL

MBNF000927

# Hybrid Checking Account Statement



Page 1 of 2
Account Number: ███████

**For the period** 05/01/2021 to 05/28/2021

BROAD STREET HEALTHCARE PROPERTIES
LLC G&E REAL ESTATE MANAGEMENT
SERVICES INC PROPERTY MANAGER
210 SIXTH AVENUE, SUITE 600
PITTSBURGH PA 15222

Number of enclosures: 0
Tax ID Number: ███████
☎ For Client Services:
   Call 1-800-669-1518

🖳 Visit us at PNC.com/treasury

✉ Write to: Treas Mgmt Client Care
   One Financial Parkway
   Locator Z1-Yb42-03-1
   Kalamazoo MI 49009

## Account Summary Information

### Balance Summary

| | Beginning balance | Deposits and other credits | Checks and other debits | Ending balance |
|---|---|---|---|---|
| | 80,912.05 | 1,015,196.83 | 299,390.69 | 796,718.19 |

| Deposits and Other Credits | | | Checks and Other Debits | | |
|---|---|---|---|---|---|
| Description | Items | Amount | Description | Items | Amount |
| Deposits | 2 | 15,165.10 | Checks | 27 | 219,216.04 |
| National Lockbox | 0 | .00 | Returned Items | 0 | .00 |
| ACH Credits | 0 | .00 | ACH Debits | 8 | 80,071.43 |
| Funds Transfers In | 1 | 1,000,000.00 | Funds Transfers Out | 0 | .00 |
| Trade Services | 0 | .00 | Trade Services | 0 | .00 |
| Investments | 0 | .00 | Investments | 0 | .00 |
| Zero Balance Transfers | 0 | .00 | Zero Balance Transfers | 0 | .00 |
| Adjustments | 0 | .00 | Adjustments | 0 | .00 |
| Other Credits | 1 | 31.73 | Other Debits | 1 | 103.22 |
| Total | 4 | 1,015,196.83 | Total | 36 | 299,390.69 |

### Ledger Balance

| Date | Ledger balance | Date | Ledger balance | Date | Ledger balance |
|---|---|---|---|---|---|
| 05/01 | 80,912.05 | 05/13 | 803,788.12 | 05/24 | 798,155.61 |
| 05/06 | 1,080,912.05 | 05/14 | 796,641.12 | 05/25 | 795,665.61 |
| 05/10 | 972,560.53 | 05/17 | 796,036.12 | 05/26 | 800,603.92 |
| 05/11 | 879,321.72 | 05/18 | 788,139.00 | 05/27 | 796,821.41 |
| 05/12 | 864,751.02 | 05/19 | 798,249.07 | 05/28 | 796,718.19 |

## Deposits and Other Credits

### Deposits

**2 transactions for a total of $15,165.10**

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 05/19 | 10,110.07 | Remote Capture 1 | 071761619 |
| 05/26 | 5,055.03 | Remote Capture 1 | 071186030 |

### Funds Transfer In

**1 transaction for a total of $1,000,000.00**

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 05/06 | 1,000,000.00 | Wire Transfer In 2156I48355815Clm | W2156I48355815CLM |

# Hybrid Checking Account Statement

BROAD STREET HEALTHCARE PROPERTIES
LLC G&E REAL ESTATE MANAGEMENT

**For the period**    05/01/2021  to  05/28/2021
Account number: ███████████
Page 2 of 2

## Deposits and Other Credits  *continued*

### Other Credits                          1 transaction for a total of $31.73

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 05/27 | 31.73 | Int Period Ending 04/30/2021 | I-GEN121052700007329 |

## Checks and Other Debits

### Checks and Substitute Checks          27 transactions for a total of $219,216.04

| Date posted | Check number | Amount | Reference number | Date posted | Check number | Amount | Reference number | Date posted | Check number | Amount | Reference number |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/10 | 1245 | 22,075.20 | 070071944 | 05/11 | 1256 | 625.00 | 072119754 | 05/14 | 1252 | 3,250.00 | 075568123 |
| 05/10 | 1237 | 450.00 | 070632450 | 05/12 | 1244 | 14,187.83 | 072191428 | 05/14 | 1258 | 927.00 | 075579498 |
| 05/10 | 1243 | 2,520.16 | 070677903 | 05/12 | 1248 | 232.87 | 072191429 | 05/17 | 1262 | 605.00 | 077335444 |
| 05/10 | 1246 | 10,839.66 | 070473799 | 05/12 | 1257 | 150.00 | 072191421 | 05/18 | 1241 | 4,520.26 | 070205971 |
| 05/11 | 1236 | 83,882.19 | 070779767 | 05/13 | 1261 | 10,839.01 | 073422729 | 05/18 | 1259 | 48.15 | 070205973 |
| 05/11 | 1249 | 1,656.68 | 071255904 | 05/13 | 1254 | 22,296.86 | 073620343 | 05/18 | 1263 | 2,213.40 | 070205972 |
| 05/11 | 1242 | 2,494.80 | 071546076 | 05/13 | 1255 | 22,896.49 | 073620342 | 05/18 | 1264 | 1,115.31 | 071192513 |
| 05/11 | 1247 | 44.14 | 071548044 | 05/13 | 1253 | 1,256.57 | 074181726 | 05/24 | 1266 | 93.46 | 077475605 |
| 05/11 | 1238 | 4,536.00 | 072076777 | 05/14 | 1240 | 2,970.00 | 075579517 | 05/25 | 1265 | 2,490.00 | 048694608 |

### ACH Debits                             8 transactions for a total of $80,071.43

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 05/10 | 72,466.50 | ACH Web-Single Web Pmts Bankdirect Capit Y6Jkcg | 00021130009024254 |
| 05/13 | 3,596.63 | Corporate ACH Cash Con G E Real Estate Ph096A | 00021132012374578 |
| 05/13 | 38.67 | Corporate ACH Cash Con G E Real Estate Ph096B | 00021132012374579 |
| 05/13 | 38.67 | Corporate ACH Cash Con G E Real Estate Ph096C | 00021132012374580 |
| 05/26 | 116.72 | Corporate ACH Cash Con G E Real Estate Ph096A | 00021145013765226 |
| 05/27 | 3,734.92 | Corporate ACH Cash Con G E Real Estate Ph096A | 00021146010072608 |
| 05/27 | 39.66 | Corporate ACH Cash Con G E Real Estate Ph096B | 00021146010072609 |
| 05/27 | 39.66 | Corporate ACH Cash Con G E Real Estate Ph096C | 00021146010072610 |

### Other Debits                           1 transaction for a total of $103.22

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 05/28 | 103.22 | Corporate Account Analysis Charge | 0000000000000007206 |

Member FDIC                    ⌂ Equal Housing Lender

CONFIDENTIAL

| Database: | GEMS_EAST | Outstanding Check List for Banks | Page: | 1 |
| Report Id: | MRI_OUTLST | GEMS_EAST | Date: | 6/1/2021 |
| | | Outstanding Checks as of 5/28/2021 | Time: | 01:29 PM |
| | | Bank Account PH096OP   PNC BANK, NA | | |

| Check # | Check Date | Check Period | Vendor Number | Vendor Name | Amount |
|---------|------------|--------------|---------------|-------------|--------|
| 1235 | 5/5/2021 | 05/21 | SM2682 | WESTERN PEST SERVICES | 700.00 |
| 1250 | 5/6/2021 | 05/21 | SM228 | WATER REVENUE BUREAU | 1,253.52 |
| 1251 | 5/6/2021 | 05/21 | SM228 | WATER REVENUE BUREAU | 19,698.55 |
| 1267 | 5/26/2021 | 05/21 | 06ALLUNI | UNIVERSAL PROTECTION SERVICE LF | 6,133.81 |
| 1268 | 5/26/2021 | 05/21 | 06ELOELE | ELITE ELEVATOR SERVICES LLC | 1,529.28 |
| 1269 | 5/26/2021 | 05/21 | AXAXENEF | ENERGY MANAGEMENT SYSTEMS | 250.00 |
| | | | | **Outstanding Check Total:** | **29,565.16** |

MBNF000930

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Database: | GEMS_EAST | | | | | **General Ledger** | Page: | | 1 |
| | | | | | | GEMS_EAST | Date: | | 6/1/2021 |
| | | | | | | Broad Street Healthcare I | Time: | | 01:30 PM |

Accrual

05/21 - 05/21
Report includes an open period.  Entries are not final.

| Account Entity | Period | Entry Date | Src Reference | Site Id | Job Code | Dept | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **111-04** | | | **CASH** | | | | *Balance Forward* | | | *80,212.05* |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1239 5/6/2021 ELECTRONIC SECURITY & CONTROL | 0.00 | 605.00 | 79,607.05 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1260 5/10/2021 GDI SERVICES INC | 0.00 | 2,213.40 | 77,393.65 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1260 5/12/2021 GDI SERVICES INC | 2,213.40 | 0.00 | 79,607.05 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1132 5/5/2021 WESTERN PEST SERVICES | 700.00 | 0.00 | 80,307.05 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | 1235 5/5/2021 WESTERN PEST SERVICES | 0.00 | 700.00 | 79,607.05 |
| PH096A | 05/21 | 5/31/2021 | AP 203329 | 06 | | | A/P Cash Disbursed for checks  1235-1269 | 0.00 | 247,175.04 | -167,567.99 |
| PH096B | 05/21 | 5/31/2021 | AP 203331 | 06 | | | A/P Cash Disbursed for checks  1244-1244 | 0.00 | 151.16 | -167,719.15 |
| PH096C | 05/21 | 5/31/2021 | AP 203333 | 06 | | | A/P Cash Disbursed for checks  1257-1257 | 0.00 | 150.00 | -167,869.15 |
| PH096A | 05/21 | 5/8/2021 | JE PH096B | 06 | | | BankDirect Auto-Debit | 0.00 | 72,466.50 | -240,335.65 |
| PH096A | 05/21 | 5/26/2021 | JE PH9612 | 06 | | | Ins. Proceeds - Aspen | 5,055.03 | 0.00 | -235,280.62 |
| PH096A | 05/21 | 5/31/2021 | JE PH96BF | 06 | | | Int Period Ending 04/30/2021 | 31.73 | 0.00 | -235,248.89 |
| PH096A | 05/21 | 5/31/2021 | JE PH96BF | 06 | | | Corporate Account Analysis Charge | 0.00 | 103.22 | -235,352.11 |
| PH096A | 05/21 | 5/19/2021 | JE PH96IN | 06 | | | Insurance Proceeds | 10,110.07 | 0.00 | -225,242.04 |
| PH096A | 05/21 | 5/6/2021 | JE PH96WT | 06 | | | Funding from Ownership | 1,000,000.00 | 0.00 | 774,757.96 |
| PH096A | 05/21 | 5/13/2021 | PR PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 0.00 | 3,596.63 | 771,161.33 |
| PH096B | 05/21 | 5/13/2021 | PR PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 0.00 | 38.67 | 771,122.66 |
| PH096C | 05/21 | 5/13/2021 | PR PH96P1 | 06 | | | Payroll 04/26/21 - 05/09/21 | 0.00 | 38.67 | 771,083.99 |
| PH096A | 05/21 | 5/26/2021 | PR PH96P2 | 06 | | | Payroll 05/25/21 | 0.00 | 116.72 | 770,967.27 |
| PH096A | 05/21 | 5/27/2021 | PR PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 0.00 | 3,734.92 | 767,232.35 |
| PH096B | 05/21 | 5/27/2021 | PR PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 0.00 | 39.66 | 767,192.69 |
| PH096C | 05/21 | 5/27/2021 | PR PH96P3 | 06 | | | Payroll 05/10/21 - 05/23/21 | 0.00 | 39.66 | 767,153.03 |
| | | | | | | **\*\* Account Totals** | | 1,018,110.23 | 331,169.25 | **767,153.03** |
| | | | | | | **\*\* Grand Totals** | | **1,018,110.23** | **331,169.25** | |

CONFIDENTIAL

MBNF000931

# **Exhibit G**

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

### SETTLEMENT, ASSIGNMENT, AND RELEASE OF CLAIMS AGREEMENT

This Settlement, Assignment, and Release of Claims Agreement (this "**Agreement**"), dated as of December 24, 2020 (the "**Effective Date**"), between the Pension Fund for Hospital and Health Care Employees of Philadelphia and Vicinity (the "**Fund**"), on the one hand, and American Academic Health System, LLC, a Delaware limited liability company ("**AAHS**"), Front Street Healthcare Properties, LLC, a Delaware limited liability company ("**Front I**"), Front Street Healthcare Properties II, LLC, a Delaware limited liability company ("**Front II**"), Broad Street Healthcare Properties, LLC, a Delaware limited liability company ("**Broad I**"), Broad Street Healthcare Properties II, LLC, a Delaware limited liability company ("**Broad II**") and Broad Street Healthcare Properties III, LLC, a Delaware limited liability company ("**Broad III**"), MBNF Investments, LLC, a Delaware limited liability company, Philadelphia Academic Health Holdings, LLC ("**PAHH**"), a Delaware limited liability company, and Philadelphia Academic Risk Retention Group, LLC, a Vermont limited liability company ("**RRG**"), along with their affiliates, subsidiaries, and any other members of the "control group"[1] but excluding the Debtors and Debtors' Subsidiaries, each as hereinafter defined (collectively, the "**Non-Debtor Entities**" and the term "**Payor Non-Debtor Entities**" as used herein shall refer collectively and individually to AAHS, Front I, Front II, Broad I, Broad II, Broad III, and PAHH), on the other hand. This Agreement refers to the Fund and the Non-Debtor Entities collectively as the "**Parties**" and each individually as a "**Party**." "**Debtors**" means Center City Healthcare, LLC, a Delaware limited liability company, Philadelphia Academic Health System, LLC, a Delaware limited liability company ("**PAHS**"), St. Christopher's Healthcare, LLC, a Delaware limited liability company ("**St. Christopher's**"), Philadelphia Academic Medical Associates, LLC, a Delaware limited liability company ("**PAMA**"), HPS of PA, L.L.C., a Pennsylvania limited liability company, SCHC Pediatric Associates, L.L.C., a Pennsylvania limited liability company, St. Christopher's Pediatric Urgent Care Center, L.L.C., a Pennsylvania limited liability company, SCHC Pediatric Anesthesia Associates, L.L.C., a Pennsylvania limited liability company, StChris Care at Northeast Pediatrics, L.L.C., a Pennsylvania limited liability company, TPS of PA, L.L.C., a Pennsylvania limited liability company, TPS II of PA, L.L.C., a Pennsylvania limited liability company, TPS III of PA, L.L.C., a Pennsylvania limited liability company, TPS IV of PA, L.L.C., a Pennsylvania limited liability company, and TPS V of PA, L.L.C., a Pennsylvania limited liability company. "**Debtors' Subsidiaries**" means Physicians Clinical Network, LLC, a Delaware limited liability company, and Physician Performance Network of Philadelphia, L.L.C., a Pennsylvania limited liability company.

### RECITALS

**WHEREAS**, Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**Center City**") is a party to certain collective bargaining agreements that require it to make monthly contributions to a multiemployer defined benefit pension plan (the 1199C Pension Fund) operated by the Fund (the "**Plan**").

---

[1] As used throughout this Agreement, the term "control group" has the same definition set forth in ERISA. *See* 29 U.S.C. § 1002; 29 U.S.C. § 1301(a)(14)(A).

1

                                                                 MBNF002545

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

**WHEREAS**, Atlantic Specialty Insurance Company ("**ASIC**") issued Bond Number 800014386 (the "**Bond**") in the amount of $5,000,000 on behalf of Center City for the benefit of the Fund, pursuant to Section 4204(a)(1)(B) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**").

**WHEREAS**, on June 17, 2019, ASIC commenced a lawsuit in the New York State Supreme Court against PAHH and Debtors Center City, PAHS, St. Christopher's, and PAMA, demanding that an additional $4,000,000 of cash collateral be posted to protect against loss under the Bond (the "**New York State Action**").  *See Atlantic Specialty Ins. Co. v. Phila. Acad. Health Holdings, LLC*, No. 653513/2019, Complaint [D.I. 1.] (Sup. Ct. N.Y. Cty. June 17, 2019).

**WHEREAS**, on June 30 and July 1, 2019, Center City and certain of its affiliates described in the definition of "Debtors" above, each commenced a case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (collectively, the "**Bankruptcy**").

**WHEREAS**, the Bankruptcy stayed the New York State Action against the Debtors named as defendants therein but not against PAHH.

**WHEREAS**, on July 19, 2019, the Fund sent a letter notifying Center City and all trades and business under common control with Center City that it was seeking payment of certain unfunded vested pension benefits pursuant to ERISA § 4219 as a result of a complete withdrawal from the Plan due to Center City ceasing its Hahnemann University Hospital operations (the "**Withdrawal Liability Asserted Claims**").[2]

**WHEREAS**, in the same July 19, 2019 letter, the Fund alleged that all trades and business under common control with Center City, including the Debtors, Debtors' Subsidiaries, and certain Non-Debtor Entities allegedly meeting such definition, are jointly liable for the payment of Center City's withdrawal liability because they are members of the same "control" group as defined under ERISA § 4001.

**WHEREAS**, the Fund has also alleged that Center City failed to make contribution payments to the Fund due at various dates during 2019 and asserted that all trades and business under common control with Center City, including the Debtors, Debtors' Subsidiaries, and certain Non-Debtor Entities allegedly meeting such definition, were also liable for those claims (the "**Contribution Claims**").

**WHEREAS**, on August 21, 2019, the Fund also submitted a claim to ASIC against the Bond to recover the asserted shortfall in Center City's contribution payments during 2019.

---

[2] Pursuant to ERISA § 4203(a), an employer that ceases all covered operations under a multiemployer defined benefit pension plan has withdrawn from the plan.  ERISA § 4201 provides that an employer that completely or partially withdraws from a multiemployer defined benefit pension plan is liable for a portion of the plan's unfunded vested benefits under ERISA § 4201(a).

CONFIDENTIAL                                                                 MBNF002546

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

**WHEREAS**, on January 27, 2020, the Non-Debtor Entities submitted a Demand for Arbitration of the Fund's Withdrawal Liability Asserted Claims to the American Arbitration Association's Multi-Employer Pension Plan Withdrawal Liability Arbitration Tribunal, Case No. 01-20-0000-2874 (the "**Arbitration**").

**WHEREAS**, the Fund has also submitted claims against the Debtors in the Bankruptcy seeking to collect on its Contribution Claims and Withdrawal Liability Asserted Claims.  In particular:

- On July 19 and July 23, 2019, the Fund asserted claims against Center City for $59,400,090 in alleged withdrawal liability.  [Proof of Claim Nos. 21 and 51].  On July 16, 2020, the Fund amended and revised the amount of its withdrawal liability claims to $22,599,359. [Proof of Claim No. 485, amending Claim No. 51].  The Fund further amended this claim on August 5, 2020 to attach an addendum that reserved all of the Fund's rights, including the right to assert additional claims and to assert priority or administrative status with respect to this claim.  [Proof of Claim 1086].  On August 5, 2020, the Fund also filed similar claims for $22,599,359 (and attaching the same reservation of rights) against St. Christopher's, PAMA, HPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., and TPS IV of PA, L.L.C.  [Proof of Claim Nos. 24, 26, 29, 38, 61, and 684].  On December 1, 2020, the Court disallowed Proof of Claim Nos. 21, 51, and 485 as duplicative of or superseded by Claim No. 1086.  Order Sustaining Debtors' First Omnibus Objection to Claims (Non-Substantive) Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1 [Docket No. 1942]  Proof of Claim Nos. 21, 51, 24, 26, 29, 38, 61, 485, 684, and 1086 are collectively referred to herein as the "**Withdrawal Liability Proof of Claim**."

- The Fund also asserted claims against the Debtors for certain unpaid contributions.  On April 3, 2020, the Debtors, including Center City, entered into a Stipulation (the "**Stipulation**") with the Fund and the Benefit Fund for Hospital and Health Care Employees Philadelphia and Vicinity, acknowledging liability and agreeing to an allowed administrative expense claim for unpaid contribution payments on account of August 2019 through December 2019 of the Debtors' payroll (the "**Allowed Administrative Expense Claim**").  *See* Stipulation Between Center City and Trustees of the Fund and Trustees of the Benefit Fund for Hospital and Health Care Employees Philadelphia and Vicinity (the "**Benefit Fund**") [D.I. 1552].  The Court approved and granted the Stipulation on April 21, 2020.  Order Approving Stipulation [D.I. 1594].  A portion of the Allowed Administrative Expense Claim was paid by the Debtors in accordance with the Court Order.  The unpaid Allowed Administrative Expense Claim in the aggregate amount of $1,346,728.30 consists of: (i) $540,183.13 in unpaid Fund contribution payments on account of the August 2019 Debtors' payroll (the "**Pension Fund Allowed Administrative Expense Claim Portion**"); (ii) $706,905.55 in unpaid Benefit Fund contribution payments for the same period; (iii) $18,642.02 in unpaid dues for the same period; and (iv) $80,997.71 in unpaid copays for the same period.  The Debtors and the Fund stipulated that the unpaid Allowed Administrative Expense Claim would be paid in accordance with the terms of a confirmed chapter 11 plan or plans.

CONFIDENTIAL                                                                                MBNF002547

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
<u>*NOT ADMISSIBLE*</u>

- On July 28, 2020, the Fund asserted a priority claim in the aggregate amount of $1,302,530.47 against Center City, consisting of: (i) $1,112,103.06 in unpaid contribution payments for the 2019 pre-Bankruptcy period; (ii) $32,415.30 in interest for the same period; and (iii) $158,012.11 in liquidated damages for the same period. [Proof of Claim No. 711] (Proof of Claim No. 711 is referred to herein as the "**Unpaid Pension Contributions Proof of Claim**").

**WHEREAS**, certain Non-Debtor Entities made installment payments, as required under ERISA § 4221, totaling $3,687,661 in 2019 and 2020, in order to preserve all of the Non-Debtor Entities' rights with respect to the Withdrawal Liability Asserted Claims. On October 8, 2020, while the Parties were negotiating this Agreement, certain Non-Debtor Entities made a payment to the Fund in the amount of $783,884.00 (the "**October 2020 Payment**") in order to preserve all of Non-Debtor Entities' rights with respect to the Withdrawal Liability Asserted Claims and any other claims that are being settled and released herein, and the Parties have come to an agreement set forth in this Agreement with respect to the application of the October 2020 Payment.

**WHEREAS**, the Bankruptcy remains ongoing, and none of the Debtors or Debtors' Subsidiaries is a party to, nor does any of them have any legal or financial interest in, this Agreement or in the releases, promises, and covenants herein.

**WHEREAS**, the Fund wishes to sell and assign to Front I, and Front I wishes to purchase and take from the Fund, all of the Unpaid Contribution Claims and the Withdrawal Liability Claims (each such term as defined below), on the terms and conditions set forth below.

**WHEREAS**, the Fund has agreed to release and settle the Unpaid Contribution Claims, the Withdrawal Liability Claims, and all other Claims against the Released Parties (each such term as defined below) on the terms and conditions set forth below.

## AGREEMENT

**NOW, THEREFORE**, based upon the foregoing recitals, the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      **Contribution Claims Settlement Amount**.  In consideration for the payment of $2,113,680.19 (the "**Contribution Claims Settlement Amount**") as described in Section 3(a), the Fund agrees to (i) fully release the Released Parties as defined and described below; and (ii) sell, transfer, assign, and otherwise convey all of its rights, title, and interest to Front I in the Unpaid Contribution Claims.  "**Unpaid Contribution Claims**" means, collectively, any and all claims, demands, actions, suits, obligations, debts, damages, interest, liquidated damages, penalties, fees (including attorneys' fees), costs, judgments, sums of money, reckonings, liens, causes of action, and liabilities of any kind whatsoever, past or present, known or unknown, whether in contract or in tort or under any statute, or under any other legal theory, whether at law or in equity, matured or unmatured, fixed or contingent, including derivative and subrogation claims, that the Fund had, has, or may have against the Debtors, the Debtors' Subsidiaries, the Released Parties (as defined

4

                                                    MBNF002548

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

below), and each of their respective Affiliates (as defined below) arising from, related to, or connected in any way to any contribution payments, or failure to make such payments, to the Fund, including any claims that have been alleged or could be alleged by the Fund in the Bankruptcy or any other court with jurisdiction, including the Unpaid Pension Contributions Proof of Claim and the Pension Fund Allowed Administrative Expense Claim Portion.

2.      **Withdrawal Liability Settlement Amount**.  In consideration for the payment of the Withdrawal Liability Settlement Amount (defined below), the Fund agrees to (i) fully release the Released Parties as defined and described below and (ii) sell, transfer, assign, and otherwise convey all of its rights, title, and interest to Front I in the Withdrawal Liability Claims. "**Withdrawal Liability Claims**" means, collectively, any and all claims, demands, actions, suits, obligations, debts, damages, interest, liquidated damages, penalties, fees (including attorneys' fees), costs, judgments, sums of money, reckonings, liens, causes of action, and liabilities of any kind whatsoever, past or present, known or unknown, whether in contract or in tort or under any statute, or under any other legal theory, whether at law or in equity, matured or unmatured, fixed or contingent, including derivative and subrogation claims, that the Fund had, has, or may have against the Debtors, the Debtors' Subsidiaries, the Released Parties (as defined below), and each of their respective Affiliates (as defined below) arising from, related to, or connected in any way to withdrawal liability, or failure to make payments with respect thereto, to the Fund, whether arising from Center City's full or partial withdrawal from the Fund under ERISA § 4201(a), including any claims that have been alleged or could be alleged by the Fund in the Bankruptcy or any other court with jurisdiction, including the Withdrawal Liability Proof of Claim.

3.      **Payment Terms**.

(a)      The Parties agree that the Contribution Claims Settlement Amount will be paid as follows: (i) on the Effective Date the October 2020 Payment shall be applied by the Fund to the Contribution Claims Settlement Amount on a dollar-for-dollar basis and (ii) the Payor Non-Debtor Entities, jointly and severally, agree to make a payment of, or shall cause a payment to be made on their behalf of, the remaining $1,329,796.19 of the Contribution Claims Settlement Amount to the Fund in full within fifteen (15) days of the Effective Date.

(b)      The Payor Non-Debtor Entities, jointly and severally, agree to make payments with respect of, or shall cause payments to be made on their behalf with respect of, the Withdrawal Liability Settlement Amount (hereinafter defined) on the dates and in the amounts set forth in **Schedule 3(b)** attached hereto and incorporated herein by this reference.  The "**Withdrawal Liability Settlement Amount**" means the sum of: (i) the amount with the present value of $18,349,359 as of the withdrawal date (the "**Principal**") and (ii) the aggregate interest payments with respect of the Principal calculated in accordance with ERISA Section 4219(c), using the discount rate of 7.75%; it being understood that prior to the Effective Date, certain Non-Debtor Entities made four payments to the Fund totaling $3,687,661.  The Parties hereby agree that the sum of such previously made payments and all payments to be made after the Effective Date pursuant to **Schedule 3(b)** shall have the present value, as of the withdrawal date, equal to $18,349,359.  The unpaid Principal, in whole or in part, may be prepaid by the Payor Non-Debtor Entities, or on their behalf, at any time and from time to time, without any premium or penalty.

5

MBNF002549

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

Whenever the Payor Non-Debtor Entities desire to make such a prepayment, in whole or in part, they shall notify the Fund in writing of the proposed prepayment date, at least five (5) business days prior to such proposed prepayment date, whether the proposed prepayment is in whole or part and the desired prepayment amount (if the proposed prepayment is in part), and the Fund shall provide to the Payor Non-Debtor Entities a payoff letter within three (3) business days after receiving such notice that sets forth, as of such proposed prepayment date, the total unpaid Principal and interest with respect thereof calculated in accordance with clauses (i) and (ii) of this Section 3(b), taking into account all payments made after the Effective Date.

(c)    All payments under this Section 3 shall be made to the following bank account:

4.    **Failure to Make Payment.**  If any payment required by Section 3 is not made within ten (10) days after its due date set forth in Section 3, the Fund will provide the Payor Non-Debtor Entities with written notice, and an opportunity to make such payment within seven (7) days of the Payor Non-Debtor Entities' receipt of such notice.  If a payment is not made within such seven (7) day period, the Fund shall be entitled to charge default interest on the unpaid amount at the rate of 7.75% per annum from the due date until the payment is made in full.  In addition, if any delinquent payment is not made within ninety (90) days of the Payor Non-Debtor Entities' receipt of such notice, the Fund may declare a default (such declared default, a "Payment Default") and require immediate payment of the sum of (i) the outstanding Principal that remains unpaid at such time and (ii) $4,250,000, as may be further adjusted, solely to the extent permitted by ERISA § 502(g), for interest and other amounts set forth in ERISA § 502(g), and the Payor Non-Debtor Entities shall be jointly and severally liable for such payment.

5.    **Assignment of the Fund's Certain Claims.**

(a)    For the consideration set forth above and subject to the conditions set forth in this Agreement, the Fund hereby, as of the Assignment Effective Date with respect to the 2021 Assigned Claims (each term as defined below), and as of the Effective Date with respect to the Pension Fund Allowed Administrative Expense Claim Portion, sells, transfers, assigns, sets over, delivers, and otherwise conveys to Front I, and Front I hereby purchases and takes from the Fund, all rights, title, and interest (whether now owned or hereafter acquired or arising and wherever located) of the Fund in, to, and under (a) the Unpaid Contribution Claims and (b) the Withdrawal Liability Claims (collectively, the "**Assigned Claims**" and such sale and purchase, transfer, assignment, setting over, delivery, and conveyance, the "**Assignment**").  Front I does not assume and shall not be responsible for any obligations or liabilities of the Fund related to or in connection with the Assigned Claims or the Bankruptcy.



6

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*<u>NOT ADMISSIBLE</u>*



CONFIDENTIAL

MBNF002551

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*



CONFIDENTIAL

MBNF002552

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

9.      **The Fund's Representations and Warranties.**  The Fund represents and warrants to the Non-Debtor Entities and other Released Parties that:

(a)      It (i) has all requisite power, authority, and legal right to (x) execute, deliver, and perform this Agreement, (y) carry out the terms of this Agreement and the transactions and releases contemplated hereby, and (z) sell and assign the Assigned Claims described above on the terms and conditions provided herein; and (ii) has duly authorized by all requisite action the execution, delivery, and performance of this Agreement and the transactions and releases contemplated hereby, including the sale and assignment of the Assigned Claims on the terms and conditions herein provided.  This Agreement constitutes the legal, valid, and binding obligation of the Fund, subject to (x) applicable bankruptcy, reorganization, insolvency, moratorium, and other laws affecting creditors' rights generally from time to time in effect; and (y) limitations on the enforcement of equitable remedies.

(b)      This Agreement has been duly executed and delivered by the Fund.  The execution, delivery, and performance by the Fund of this Agreement require no action by or in respect of, or filing with, any governmental authority and do not contravene, or constitute a default under, any provision of applicable law, rule, or regulation or of the organizational documents of the Fund or of any agreement or of any judgment, injunction, order, writ, decree, or other instrument binding upon the Fund or its assets or result in the creation or imposition of any lien, pledge, encumbrance, charge, assignment, privilege, or security interest on the assets of the Fund.

(c)      The Non-Debtor Entities have given reasonably equivalent value to the Fund in consideration of the transfer to the Non-Debtor Entities of the Assigned Claims, and no such transfer is being made for or on account of an antecedent debt owed by the Fund to the Non-Debtor Entities.

(d)      (i) The Fund has good title to the Assigned Claims and the Fund is the only one with right, title, and interest in and to the Assigned Claims, and no portion of any Assigned Claim has been assigned or transferred to any other Person (as defined below); (ii) the Fund is not a party to or bound by, and no Assigned Claims are subject to, any lien, security interest, mortgage, deed of trust, pledge, hypothecation, assignment, charge, encumbrance or other security arrangement, agreement or instrument, order, judgment, or decree which requires the consent of any Person prior to the consummation of the transactions contemplated herein; (iii) there are no legal actions, suits, or proceedings pending, nor, to the Fund's knowledge, threatened in writing, which would affect the Fund's ability to consummate the transactions contemplated hereby; and (iv) the Assigned Claims include all proofs of claims, or other claims, asserted by the Fund against the Debtors.  "**Person**" means any individual, partnership, limited liability company, joint venture, firm, corporation, association, bank, trust or other enterprise, whether or not a legal entity, or any government or political subdivision or any agency, department, or instrumentality thereof.

9

CONFIDENTIAL                                                                                    MBNF002553

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*



(d)    "**Affiliates**" means, with respect to each Party, such Party's past, present, or future officers, directors, shareholders, managers, supervisors, managing members, members, equity holders, partners, agents, employees, heirs, family members, representatives, executors, administrators, fiduciaries, auditors, accountants, attorneys, advisers, experts, insurers, sureties, predecessors, successors, assigns, and affiliates, including any parent, subsidiary, and affiliated entities controlled or under control directly or indirectly by each or any of them, and their respective past, present, or future officers, directors, shareholders, managers, supervisors, managing members, members, equity holders, partners, agents, employees, heirs, family members, representatives, executors, administrators, fiduciaries, auditors, accountants, attorneys, advisers, experts, insurers, sureties, predecessors, successors, assigns, and affiliates, including any parent, subsidiary, and affiliated entities controlled or under control directly or indirectly by each or any of them, and those in active concert with them or any of them up to and including the date hereof; provided, however, that Affiliates of the Non-Debtor Entities, Joel Freedman, Stella Freedman, Barbara S. Kramer, Trustee, Michael Ouzounian Irrevocable Trust, dated June 26, 2017, Barbara S. Kramer, Trustee, Benjamin Joseph Freedman Irrevocable Trust, dated June 26, 2017, Barbara S. Kramer, Trustee, Nathan Alexander Freedman Irrevocable Trust, dated June 26, 2017, or Paladin shall not include any Debtors or Debtors' Subsidiaries.

(e)    "**Claims**" means, collectively, any and all claims, demands, actions, suits, obligations, debts, damages, interest, liquidated damages, penalties, fees (including attorneys' fees), costs, judgments, sums of money, reckonings, liens, causes of action, and liabilities of any kind whatsoever, past or present, known or unknown, whether in contract or in tort or under any statute, or under any other legal theory, whether at law or in equity, matured or unmatured, fixed or contingent, including derivative and subrogation claims, arising from, related to or connected in any way to Hahnemann University Hospital, Center City, and their Affiliates, including their participation in the Plan, including the Assigned Claims.

CONFIDENTIAL                                                                    MBNF002554

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*<u>NOT ADMISSIBLE</u>*

    (f)    Each Party hereby acknowledges that it has been informed by its respective attorneys of, and that it is familiar with, Section 1542 of the Civil Code of the State of California, which provides the following:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

    Each Party expressly waives and relinquishes all rights and benefits vis-à-vis the Released Parties that it has or may have under Section 1542 of the Civil Code (or any similar statute, rule, or regulation) to the fullest extent it may lawfully waive such rights and benefits. Each Party acknowledges that it is aware that it, or its attorneys, may hereafter discover facts different from or in addition to those that it or its attorneys may now know or believe to be true with respect to the claims, demands, debts, liabilities, accounts, obligations, and causes of action of every kind so released, and each agrees that the general release so given shall be and remain in effect as a full and complete release of the Released Parties notwithstanding any such different or additional facts.



11

MBNF002555

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*



CONFIDENTIAL

MBNF002556

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*<u>NOT ADMISSIBLE</u>*



13

MBNF002557



14

20.    **Ambiguities.**  The Parties and counsel for each Party have reviewed and negotiated this Agreement, and accordingly, the rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

21.    **Construction; Headings**.  Wherever from the context it appears appropriate, each term stated in either the singular or plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.  The words "including," "includes," and "include" shall be deemed to be followed by the words "without limitation," and where general words are followed by a specific listing of items, the general words shall be given their broadest meaning and shall not be limited by an enumeration of specific matters; and the word "or" is not exclusive.  The titles and headings of the various sections of this Agreement have been inserted only for convenience of reference.  They are not part of this Agreement and may not be used to construe or interpret any of the terms hereof.  The recitals set forth at the beginning of this Agreement are an integral part of this Agreement.

22.    **Amendment; Waiver**.  This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing signed by authorized representatives of all Parties.  Any delay or failure by any Party to enforce or take advantage of any provision hereof shall not be deemed a waiver or relinquishment of the right subsequently to enforce or take advantage of such provision.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver unless it is identified as such in writing.

23.    **Survival**.  Unless explicitly stated otherwise, all representations, warranties, releases, waivers, covenants, and agreements contained in this Agreement shall survive the Effective Date in perpetuity.

24.    **Integration; Counterparts; Severability**.  This Agreement contains the final and complete integration of all prior expressions by the Parties with respect to the subject matter hereof and shall constitute the entire agreement among the Parties with respect to the subject matter hereof, superseding all prior oral or written understandings.  This Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same Agreement.  Copies of this Agreement with signatures transmitted by facsimile or e-mail in a .pdf format shall be deemed to be original, signed versions of this Agreement.  The Parties agree that each of the provisions of this Agreement are valid, legal, and enforceable and that they intend to be bound by each of these provisions.  In the event any provision of this Agreement shall be judged, declared, held, or ruled to be invalid, illegal, or unenforceable, in whole or in part, such provision shall be deemed severable, and it shall not invalidate or impair this Agreement as a whole or any other provision of this Agreement.

25.    **Notices**.  All notices, requests, demands, consents, and other communications to any Party shall be in writing, shall be addressed to the recipients below, and shall be delivered both by electronic mail and by hand delivery, registered or certified mail with return receipt requested, or overnight courier with confirmation of delivery:

CONFIDENTIAL                                                                                              MBNF002559

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

| Notices to the Fund | Notices to the Non-Debtor Entities |
|---|---|
| James S. Beall<br>Willig, Williams, and Davidson<br>1845 Walnut Street, 24th Floor<br>Philadelphia, PA 19103<br>jbeall@wwdlaw.com<br>(215) 656-3610 | Edward Moss<br>O'Melveny & Meyers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>emoss@omm.com<br>(212) 728-5671 |
| With a copy to: | With a copy to:<br><br>Joel Freedman and Svetlana Attestatova<br>c/o Paladin Healthcare Capital, LLC<br>222 North Pacific Coast Highway, Suite 900<br>El Segundo, CA 90245<br>jfreedman@pldn.com<br>sattestatova@pldn.com |

A Party may change its address for receiving notice by giving notice of a new address in the manner provided herein. All such notices, requests, demands, consents, and other communications shall be deemed to have been duly given or sent on the date received by the Party to whom such communication is addressed as set forth above.

26.    **Dispute Resolution.** In the event of any dispute, claim, question, or disagreement arising from this Agreement (a "**Dispute**"), the Parties shall abide by the following procedures:

(a)    A Party must provide written notification of the Dispute to any other Party or Parties directly involved in such Dispute (a "**Dispute Notice**"). Upon receipt of the Dispute Notice, the Parties will consult and negotiate in good faith and attempt to reach a just and equitable solution.

(b)    If the Dispute cannot be resolved within thirty (30) days of the Dispute Notice, then, upon written notice by either Party to the other Party or Parties to the Dispute, the Parties agree to submit the matter to a mediation to be completed within thirty (30) days of such written mediation notice.

(c)    If the Dispute is not resolved within thirty (30) days of the conclusion of the mediation, the Dispute shall be resolved by binding arbitration conducted by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules in effect at the time the Dispute is submitted to arbitration.

16

    MBNF002560

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

(d)    The cost of the arbitration shall initially be borne equally by the Parties to the Dispute, but the prevailing Party (as determined by the arbitrator) shall be entitled to recoup its costs incurred in connection with the mediation and the arbitration, including attorneys' fees, from the other Party to the Dispute.

(e)    Notwithstanding any of the foregoing, a Party may seek immediate injunctive relief (pending the final outcome of the foregoing dispute resolution procedures) in the courts of Delaware (as specified in Section 27) to address the Dispute if and only if such Party believes in good faith that such relief is necessary to protect against irreparable harm.  A Party may also appeal the result of the arbitration in the courts of Delaware (as specified in Section 27).

27.    **Governing Law and Jurisdiction**.  This Agreement and the rights and obligations of each Party hereunder shall be governed and construed and enforced in accordance with the laws of the State of Delaware and the United States without regard to choice of law provisions. Exclusive jurisdiction for disputes arising out of this Agreement shall be vested in the courts of Delaware, including Delaware Superior Court or Delaware Chancery Court, and each of the Parties hereby irrevocably and unconditionally submits, for itself and its property, to the jurisdiction of such courts (and the appropriate respective appellate courts therefrom) in any such proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to: (i) the laying of the venue of any such suit or proceeding; (ii) any defense that it is not personally subject to the jurisdiction of any such court; and (iii) any defense that any such suit or proceeding brought in any such court has been brought in an inconvenient forum.

[*signatures follow*]

17

 MBNF002561

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*<u>NOT ADMISSIBLE</u>*

IN WITNESS WHEREOF, the Fund and the Non-Debtor Entities, intending to be legally bound, have caused this Agreement to be duly executed by their respective representatives thereunto duly authorized, as of the Effective Date.

<u>**THE FUND:**</u>

**PENSION FUND FOR HOSPITAL AND HEALTH CARE EMPLOYEES OF PHILADELPHIA AND VICINITY**

By: _____
Name: Laverne K. DeValia
Title: Executive Director

<u>**THE NON-DEBTOR ENTITIES**</u>, on behalf of themselves and also on behalf of their affiliates, subsidiaries, and any other members of the "control group" but excluding the Debtors and Debtors' Subsidiaries, each as herein defined:

**AMERICAN ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer

**FRONT STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

18

MBNF002562

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
<u>*NOT ADMISSIBLE*</u>

IN WITNESS WHEREOF, the Fund and the Non-Debtor Entities, intending to be legally bound, have caused this Agreement to be duly executed by their respective representatives thereunto duly authorized, as of the Effective Date.

<u>**THE FUND:**</u>

**PENSION FUND FOR HOSPITAL AND HEALTH CARE EMPLOYEES OF PHILADELPHIA AND VICINITY**

By: _____
Name:
Title:

<u>**THE NON-DEBTOR ENTITIES**</u>, on behalf of themselves and also on behalf of their affiliates, subsidiaries, and any other members of the "control group" but excluding the Debtors and Debtors' Subsidiaries, each as herein defined:

**AMERICAN ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer

**FRONT STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

18

MBNF002563

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*<u>NOT ADMISSIBLE</u>*

**FRONT STREET HEALTHCARE**
**PROPERTIES II, LLC**, a Delaware limited
liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE**
**PROPERTIES, LLC**, a Delaware limited
liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE**
**PROPERTIES II, LLC**, a Delaware limited
liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE**
**PROPERTIES III, LLC**, a Delaware limited
liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**MBNF INVESTMENTS, LLC**, a Delaware
limited liability company

By: _____
Name: Joel Freedman
Title: President

19

MBNF002564

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
<u>*NOT ADMISSIBLE*</u>

**PHILADELPHIA ACADEMIC HEALTH
HOLDINGS, LLC**, a Delaware limited liability
company

By: _____

Name: Joel Freedman
Title: Chief Executive Officer and President

**PHILADELPHIA ACADEMIC RISK
RETENTION GROUP, LLC**, a Vermont
limited liability company

By: _____

Name: Joel Freedman
Title: Chief Executive Officer and President

CONFIDENTIAL

MBNF002565

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

## SCHEDULE 3(b)

**Withdrawal Liability Settlement Amount Payment Schedule**

| Payment Date | Payment Amount |
|---|---|
| 2019-2020 | $3,687,661[3] |
| 2021 | $0 |
| January 15, 2022 | $580,617 |
| April 15, 2022 | $894,309 |
| July 15, 2022 | $894,309 |
| October 15, 2022 | $894,309 |
| January 15, 2023 | $894,309 |
| April 15, 2023 | $894,309 |
| July 15, 2023 | $894,309 |
| October 15, 2023 | $894,309 |
| January 15, 2024 | $894,309 |
| April 15, 2024 | $894,309 |
| July 15, 2024 | $894,309 |
| October 15, 2024 | $894,309 |
| January 15, 2025 | $894,309 |
| April 15, 2025 | $894,309 |
| July 15, 2025 | $894,309 |
| October 15, 2025 | $894,309 |
| January 15, 2026 | $894,309 |
| April 15, 2026 | $894,309 |
| July 15, 2026 | $894,309 |
| October 15, 2026 | $894,309 |
| January 15, 2027 | $894,309 |
| April 15, 2027 | $894,309 |
| July 15, 2027 | $894,309 |
| October 15, 2027 | $431,327 |
| **TOTAL**: | $24,374,403 |

---

[3] As noted above, certain Non-Debtor Entities have already made payments totaling $3,687,661 in 2019 and 2020 and are not required to make (i) any other payments with respect to the Withdrawal Liability Settlement Amount in 2020 or (ii) any payments with respect to the Withdrawal Liability Settlement Amount in 2021.

CONFIDENTIAL

MBNF002566

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*

## EXHIBIT A

### EVIDENCE OF TRANSFER OF CLAIMS

The Pension Fund for Hospital and Health Care Employees of Philadelphia and Vicinity ("**Seller**") and Front I, its successors and assigns ("**Purchaser**"), and certain other parties party thereto entered into that certain Settlement, Assignment, and Release of Claims Agreement dated as of December 24, 2020 (the "**Assignment Agreement**"). Seller and Purchaser are collectively referred to herein as the "**Parties**" and individually as a "**Party**."

On June 30, 2019 and July 1, 2019, Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**Center City**") and certain other related entities (collectively with Center City, the "**Debtors**") filed voluntary petitions for the reorganization of their debts under Chapter 11 of the United States Bankruptcy Code (collectively, the "**Chapter 11 Cases**")[4] in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

Pursuant to the terms of the Assignment Agreement, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby certifies that it has unconditionally and irrevocably sold, transferred, and assigned to Purchaser, all rights, title, and interest (whether now owned or hereafter acquired or arising and wherever located) of Seller in, to, and under (i) any and all claims, demands, actions, suits, obligations, debts, damages, interest, liquidated damages, penalties, fees (including attorneys' fees), costs, judgments, sums of money, reckonings, liens, causes of action, and liabilities of any kind whatsoever, past or present, known or unknown, whether in contract or in tort or under any statute, or under any other legal theory, whether at law or in equity, matured or unmatured, fixed or contingent, including derivative and subrogation claims, that Seller had, have, or may have against the Debtors or the Debtors' Subsidiaries arising from, related to, or connected in any way to any contribution payments, or failure to make such payments, to Seller, including any claims that have been alleged or could be alleged by Seller in the Chapter 11 Cases or any other court with jurisdiction, including the Unpaid Pension Contributions Proof of Claim other than the Pension Fund Allowed Administrative Expense Claim Portion (collectively, the "**Unpaid Contribution Claims**") and (ii) any and all claims, demands, actions, suits, obligations, debts, damages, interest, liquidated damages, penalties, fees (including attorneys' fees), costs, judgments, sums of money, reckonings, liens, causes of action, and liabilities of any kind whatsoever, past or present, known or unknown, whether in contract or in tort or under any statute, or under any other legal theory, whether at law or in equity, matured or unmatured, fixed or contingent, including derivative and subrogation claims, that Seller had, have, or may have against the Debtors or the Debtors' Subsidiaries arising from, related to, or connected in any way to withdrawal liability, or failure to make payments with respect thereto, to Seller, whether arising from Center City's full or partial withdrawal from Seller under ERISA § 4201(a), including any claims that have been alleged or could be alleged by Seller in the Chapter 11 Cases or any other court with jurisdiction, including the Withdrawal Liability Proof of Claim (collectively, the "**Withdrawal Liability Claims**" and together with the Unpaid Contribution Claims, the "**Claims**"). "**Unpaid Pension Contributions Proof of Claim**" means

---

[4] The Chapter 11 Cases are jointly administered under Case No. 19-11466 (KG).

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
<u>*NOT ADMISSIBLE*</u>

Proof of Claim No. 711 filed in the Bankruptcy.  "**Pension Fund Allowed Administrative Expense Claim Portion**" means the portion of the Allowed Administrative Expense Claim approved by the Court on April 21, 2020 for $540,183.13 in unpaid pension fund contribution payments on account of the August 2019 Debtors' payroll [D.I. 1594].  "**Withdrawal Liability Proof of Claim**" means Proof of Claim Nos. 21, 51, 24, 26, 29, 38, 61, 485, 684, and 1086 filed in the Bankruptcy.

The Parties acknowledge, understand, and agree that, pursuant to Rule 3001(e)(1) of the Federal Rules of Bankruptcy Procedure, only Purchaser has the right to file a proof of claim in the Chapter 11 Cases for the Claims.  Purchaser does not assume and shall not be responsible for any obligations or liabilities of Seller related to or in connection with the Claims or the Chapter 11 Cases.  The Parties agree that all payments and distributions of money or property in respect of the Claims shall be delivered or made to Purchaser.

*[Signatures on following page]*

23

MBNF002568

***SETTLEMENT COMMUNICATION PROTECTED BY
FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT
NOT ADMISSIBLE***

**IN WITNESS WHEREOF**, Seller and Purchaser have executed this Evidence of Transfer of Claims as of _____.

**SELLER:**

**PENSION FUND FOR HOSPITAL AND
HEALTH CARE EMPLOYEES OF
PHILADELPHIA AND VICINITY**

By: _____
Name:
Title:

**PURCHASER:**

**FRONT STREET HEALTHCARE
PROPERTIES, LLC**

By: _____
Name:
Title:

24

MBNF002569

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*



CONFIDENTIAL

MBNF002570

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*<u>NOT ADMISSIBLE</u>*

CONFIDENTIAL

MBNF002571

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
*NOT ADMISSIBLE*



CONFIDENTIAL

MBNF002572

*SETTLEMENT COMMUNICATION PROTECTED BY*
*FED. R. EVID. 408 AND RULES OF SIMILAR IMPORT*
<u>*NOT ADMISSIBLE*</u>



CONFIDENTIAL

MBNF002573

## **Exhibit H**

**Broad Street Healthcare Properties, LLC Claims Against Center City Healthcare, LLC**
*Claims Arising Under Lease*

| Obligation | Administrative[1] | Amount Paid[2] |
|---|---|---|
| 2019-2020 Real Estate Taxes[3] | $        438,530.25 | $   438,530.25 |
| 2019 Business Use & Occupancy Taxes[4] | 831.79 | 831.79 |
| 2019-2020 Center City District Taxes | 83,179.84 | 83,179.84 |
| Water[5] | 578,458.27 | 0.00 |
| Mechanic's Liens[6] | 142,988.36 | 3,412.35 |
| Repairs & Def. Maintenance Obligations[7] | 789,478.75 | 143,825.75 |
| Unpaid Rent | 0.69 | *N/A* |
| Legal - ▮▮▮▮▮▮ | 51,274.38 | 10,684.80 |
| **Total Obligations** | **$   2,084,742.33** | **$   680,464.78** |

Notes: 1) Administrative amounts exclude general unsecured claims under the lease, although backup may include such amounts within the included schedules

2) Paid as of 11/22/21

3) Tax amounts due under reconciliation with the City of Philadelphia

4) Payment backup in process of being located
5) This schedule corrects the previously scheduled amount by $400.49
6) Mechanic's Liens backup documentation to be provided under separate cover ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮

7) Prepared by Athenian and NKF, third-party property management companies, post-turnover of property in March 2020; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

CONFIDENTIAL                                                                MBNF002580

Prepared by Athenian Razak, Property Manager for Broad Street Healthcare Properties
*Summary of Real Estate Taxes*

## HAHNEMANN PARCEL LIST

| STREET | NUMBER | BLDG NAME | OWNER | | OPA PARCEL # | ALT PROPERTY ID | | BUO 2020 MONTHLY | BUO 2019 MONTHLY | BUO ALTUS TOTAL DUE |
|--------|--------|-----------|-------|--|--------------|-----------------|--|------------------|------------------|---------------------|
| Broad N | 222-48 | North/South Towers | BSHP I | | 772025002 | 772025000 | | 32,584 | 43,580 | |
| 15th N | 221-23 | Service Parcel | BSHP I | | 772028498 | | | | | |
| 15th N | 325 | Land only, Stiles Hall | BSHP I | | 881038202 | 88-1-038200 | | 0 | 52,422 | 22,057 |
| Broad N | 300-04 | Martinelli Park | BSHP II | | 885620242 | 88-5-620240&-620580&-620900 | | | | |
| Broad N | 200-14 | Parking Lot | BSHP III | | 885467862 | 88-5-467860 | | 1,977 | 10,280 | |
| TOTAL | | | | | | | | 34,561 | 106,282 | 22,057 |
| | | | | | | | | | | |
| Race | 1417-35 | SHSH Parking | BSHP III | | 772026000 | DUPE? ALTUS ALSO HAS W/ BSHP | | | | |
| 15th N | 201-19 | SHSH Building | BSHP III | | 772028496 | 88070201 | | | 9,769 | 6,869 |
| D | 3843-63 | Warehouse | FSHP II | | 884460950 | 270803843 | | | | |
| FORMER TOTAL | | | | | | | | 0 | 9,769 | 6,869 |

## HAHNEMANN PARCEL LIST

| STREET | NUMBER | BLDG NAME | OWNER | | OPA PARCEL # | ALT PROPERTY ID | TAX-RE DUE TOTAL | TAX-RE DUE '20 | TAX-RE TOTAL '19 | TAX-RE BASE '19 | TAX-RE PENALT. '19 | OPA IMPUTED 20 ASSESS | OPA 19 ASSESS |
|--------|--------|-----------|-------|--|--------------|-----------------|------------------|----------------|------------------|-----------------|--------------------|----------------------|---------------|
| Broad N | 222-48 | North/South Towers | BSHP I | | 772025002 | 772025000 | 661,521 | 282,327 | 379,194 | 324,676 | 54,518 | 20,169,100 | 43,220,000 |
| 15th N | 221-23 | Service Parcel | BSHP I | | 772028498 | | 10,447 | 4,558 | 5,889 | 5,241 | 648 | 325,600 | |
| 15th N | 325 | Land only, Stiles Hall | BSHP I | | 881038202 | 88-1-038200 | 168,255 | 74,052 | 94,203 | 85,160 | 9,043 | 5,290,200 | 5,290,200 |
| Broad N | 300-04 | Martinelli Park | BSHP II | | 885620242 | 88-5-620240&-620580&-620900 | 315,193 | 138,759 | 176,433 | 159,573 | 16,860 | 9,912,800 | 9,912,800 |
| Broad N | 200-14 | Parking Lot | BSHP III | | 885467862 | 88-5-467860 | 188,349 | 142,708 | 45,641 | 39,002 | 6,639 | 10,194,900 | 10,194,900 |
| TOTAL | | | | | | | 1,343,765 | 642,405 | 701,360 | 613,652 | 87,708 | 45,892,600 | 68,617,900 |
| Race | 1417-35 | SHSH Parking | BSHP III | | 772026000 | DUPE? ALTUS ALSO HAS W/ BSHP1 | | | | | | 0 | |
| 15th N | 201-19 | SHSH Building | BSHP III | | 772028496 | 88070201 | 317,801 | 135,610 | 182,191 | 155,951 | 26,240 | 9,687,800 | 5,111,200 |
| D | 3843-63 | Warehouse | FSHP II | | 884460950 | 270803843 | 17,636 | 7,511 | 10,124 | 8,583 | 1,541 | 536,600 | 536,600 |
| FORMER TOTAL | | | | | | | 335,437 | 143,121 | 192,315 | 164,535 | 27,781 | 10,224,400 | 5,647,800 |
| | | | | | | | | | | RE Tax Rate: | | 1.400% | |

*\*\*\*Prepared by property manager Athenian Razak LLC in March 2020 based on information available on the City of Philadelphia's OPA Website*

|  | | | | | | $282,327.06 | $379,194.26 | | Tax Obligation: Admin % Allocation | | |
|--|--|--|--|--|--|-------------|-------------|--|------------------------------------|--|--|
| | | | | | | $4,557.75 | $5,888.96 | | | | |
| | | | | | | **2020 Tax** | **2019 Tax** | | **2020 Tax** | **2019 Tax** | **Total** |
| | | | | | N/S Towers | $282,327.06 | $379,194.26 | | $52,597.92 | $379,194.26 | |
| | | | | | Service Parcel | $4,557.75 | $5,888.96 | | $849.12 | $5,888.96 | |
| 2019 Admin % | 100.0% | Montgomery ruling allows 100% in filing year | | | | | | | $53,447.03 | $385,083.22 | $438,530.25 |
| 2020 Admin % | 18.6% | Applies 2019 rates to portion of 2020 occupied by CCH | | | | | | | | | |

CONFIDENTIAL

MBNF002581

**Real Estate Taxes Paid**

| Date | Amount | Entity Paying | Related to | Parcel/Year |
|------|--------|---------------|-----------|-------------|
| 4/2/2020 | $324,676.12 | Broad I | Real Estate Taxes | N/S Tower - 2019 |
| 4/2/2020 | $282,327.06 | Broad I | Real Estate Taxes | N/S Tower - 2020 |
| 4/2/2020 | $5,241.41 | Broad I | Real Estate Taxes | Airgas Parcel - 2019 |
| 4/2/2020 | $4,557.75 | Broad I | Real Estate Taxes | Airgas Parcel - 2020 |
| 4/16/2021 | $181,500.03 | Broad I | CCD Taxes | All Broad St. - 2019-20 |

# WellsOne® Account

Account number: ■■■■■■ ▪ April 1, 2020 - April 30, 2020 ▪ Page 1 of 3



**BROAD STREET HEALTHCARE PROPERTIES, LLC**
222 N SEPULVEDA BLVD STE 900
EL SEGUNDO CA 90245-5670

**Questions?**

Call your Customer Service Officer or Client Services
**1-800-AT WELLS** (1-800-289-3557)
5:00 AM TO 6:00 PM Pacific Time Monday - Friday

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (182)
PO Box 63020
San Francisco, CA 94163

## Debits
### Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|------|------|------|------|
| | 04/02 | 324,676.12 | < Business to Business ACH Debit - Philadelphiaptx Web Pmts 040220 7W6B4D Broad Street Healthcar |
| | 04/02 | 282,327.06 | < Business to Business ACH Debit - Philadelphiaptx Web Pmts 040220 4x6B4D Broad Street Healthcar |

████████████████████████████████████████

Account number: ■■■■■ ▪ April 1, 2020 - April 30, 2020 ▪ Page 2 of 3



### Electronic debits/bank debits *(continued)*

| Effective date | Posted date | Amount | Transaction detail |
|------|------|------|------|
| ████████ | ██████ | ████ | ████████████████████████████ |
| | 04/02 | 5,241.41 | < Business to Business ACH Debit - Philadelphiaptx Web Pmts 040220 4Y6B4D Broad Street Healthcar |
| | 04/02 | 4,557.75 | < Business to Business ACH Debit - Philadelphiaptx Web Pmts 040220 007B4D Broad Street Healthcar |
| | 04/16 | 181,500.03 | WT Fed#08097 Td Bank, NA /Ftr/Bnf=Center City District Srf# Gw00000032676141 Trn#200416006669 Rfb# 3665 |

CONFIDENTIAL                                                                    MBNF002582

City of Philadelphia Tax and Fee Account Balances (Business Use & Occupancy) - Prepared by Altus

Broad Street Healthcare Properties, LLC; Broad Street Healthcare Properties II, LLC; and, Broad Street Healthcare Properties III, LLC
March 4, 2020

| Entity | Physical Address | Account | Account Number | Liability: | | | | Post-Petition |
|---|---|---|---|---|---|---|---|---|
| | | | | Liability Filename | Predecessor Balance | <<<< Balance as of: | Balance as of 03/04/2020 (incl Predecessor) | |
| Broad Street Healthcare Properties, LLC | 222-248 N. Broad Street | Business Use & Occupancy Tax (UOL) | ▬▬▬ | 2980951.pdf | $97,872.64 | 6/30/2019 | $98,704.43 | $831.79 |
| | | | | | | | | |

CONFIDENTIAL

MBNF002583

| Property Address | 2020 – Parcel # | Previous Parcel # | Owner | Owner's Address | 2020 Charge | 2019 Premium | Past Due Interest | Past Due Amount (2019 Premium + Past Due Interest) | Total Due** |
|---|---|---|---|---|---|---|---|---|---|
| 222-48 N Broad St | 772025002 | 772025000 | Tenet Healthsystem Hahnem | P. O. Box 92129, Southlake, Texas 76092 | $31,090.05 | $66,077.85 | $11,309.87 | $77,387.72 | $108,477.77 |

|  |  |  | 2020 Tax |  | 2019 Tax | Total |
|---|---|---|---|---|---|---|
| 2019 Admin % | 100.0% | Montgomery ruling allows 100% in filing year |  |  | $77,387.72 |  |
| 2020 Admin % | 18.6% | Applies 2019 rates to portion of 2020 occupied by CCH | $5,792.12 |  |  |  |
|  |  |  | $5,792.12 |  | $77,387.72 | $83,179.84 |

**See Real Estate Taxes Paid support for payment made for CCD Taxes

5 of 14

CONFIDENTIAL

MBNF002584

**Water Invoice Summary - Hahnemann Campus**

|  | Post-Petition/ Pre-Turnover Charges | Reference[1] |
|---|---|---|
| Accounts: ███████████████ | 1,065.68 | [A] |
| Account: ████████████ | 565,419.33 | [B] |
| Account: 236 N. Broad[2] | 11,973.26 |  |
| **Total** | **$        578,458.27** |  |

Note: 1) References to subsequent page summaries

2) Invoice backup in process of being located

CONFIDENTIAL

**Broad St. Utility Bills - WaterAccounts:** ███████████

| | | |
|---|---|---|
| | ███████ | ███████ |
| Balance As of | 7/1/2020 | 7/1/2020 |
| Total Balance | $1,197.40 | $804.41 |
| Current Charges | $75.77 | $50.74 |
| Balance As of: | 5/31/2020 | 5/31/2020 |
| Estimated Balance: | $1,121.63 | $753.67 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 4/30/2020 | 4/30/2020 |
| Total Balance | $1,045.86 | $702.93 |
| Estimated Charges | $75.77 | $50.74 |
| Estimated Balance: | 3/31/2020 | 3/31/2020 |
| Total Balance | $970.09 | $652.19 |
| Estimated Charges | $75.77 | $50.74 |
| Estimated Balance: | 3/8/2020 | 3/8/2020 |
| Total Balance | $911.43 | $612.91 |
| Estimated Balance: | 2/29/2020 | 2/29/2020 |
| Total Balance | $894.32 | $601.45 |
| Estimated Charges | $75.77 | $75.77 |
| Balance As of: | 1/31/2020 | 1/31/2020 |
| Total Balance | $818.55 | $525.68 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 12/31/2019 | 12/31/2019 |
| Total Balance | $742.78 | $474.94 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 11/30/2019 | 11/30/2019 |
| Total Balance | $667.01 | $424.20 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 10/31/2019 | 10/31/2019 |
| Total Balance | $591.24 | $373.46 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 9/30/2019 | 9/30/2019 |
| Total Balance | $515.47 | $322.72 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 8/31/2019 | 8/31/2019 |
| Total Balance | $439.70 | $271.98 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 7/31/2019 | 7/31/2019 |
| Total Balance | $363.93 | $221.24 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 6/30/2019 | 6/30/2019 |
| Total Balance | $288.16 | $170.50 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 5/31/2019 | 5/31/2019 |
| Total Balance | $212.39 | $119.76 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 4/30/2019 | 4/30/2019 |
| Total Balance | $136.62 | $69.02 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 3/31/2019 | 3/31/2019 |
| Total Balance | $60.85 | $18.28 |
| Estimated Charges | $75.77 | $50.74 |
| Balance As of: | 2/28/2019 | 2/28/2019 |
| Total Balance | $60.85 | $18.28 |

CONFIDENTIAL

MBNF002586

|  | ▮▮▮▮▮▮ | ▮▮▮▮▮▮ |  |
|---|---|---|---|
| Balance at Turnover Date | $911.43 | $612.91 |  |
| Less: Balance at Petition Date | $288.16 | $170.50 |  |
| **Water Charges During Period** | **$623.27** | **$442.41** | [A] |

CONFIDENTIAL

MBNF002587


CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
WATER REVENUE BUREAU


City of
**Philadelphia**

## Water/Sewer & Stormwater Bill
Please pay **$1,197.40**

Questions?
**www.phila.gov/revenue**
**(215) 685-6300** Monday-Friday, 8am-5pm

**Customer Name:** BROAD STREET HEALTHCARE P
**Service Address:** 238 N Broad St, Philadelphia PA 19102
**Bill Date:** July 01, 2020 (Bill Period: Jun 02, 2020 - Jul 01, 2020)

**Account Number:**
**Water Access Code:** 001541841
**Bill Number:** B0801501461
**Includes Payments Through:** July 01, 2020

### Your Account

| | |
|---|---|
| Water/Sewer/Stormwater balance at last bill | $1,121.63 |
| No payment received | $0.00 |
| Unpaid Balance | $1,121.63 |

**This Bill**

| | |
|---|---|
| Fire Service Charge (Period: 06/02/20 - 07/01/20) | $75.77 |
| Total Current Charges | $75.77 |
| Total Account Balance | $1,197.40 |
| **Please Pay Now** | **$1,197.40** |

**Past Due Balance**
When your water bill is past due, your service is subject to shut-off. To avoid shut-off, pay your balance in full at one of our payment centers in the city. Payment information can be found on the back.

**Payment Types**
Pay by phone (877) 309-3709; credit card or e-check at www.phila.gov. Select water bill from pay menu options.

See back for more information and contact details ➔

### Your Water Usage
**Meter Readings**

Meter:          ERT:          Service: Y2V

Total CCFs used          0
*Approximate gallons used per day*          0

**Usage History (ccf)**

Actual Reading   Estimate

0  0  0  0  0  0  0  0  0  0  0  0
Jul Aug Sep Oct Nov Dec Jan Feb Mar Apr May Jun Jul
2019                                    2020

Please fold and detach

**Paying by mail?**
Send this coupon with your payment.
See back for other ways to pay ➔

**Account Number**

| | |
|---|---|
| **Please pay** | **$1,197.40** |
| Late payment penalty | $9.40 |
| Total amount due if paid after Jul 31, 2020 | $1,206.80 |


BROAD STREET HEALTHCARE P
238 N BROAD ST
PHILADELPHIA PA 19102

420  CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
WATER REVENUE BUREAU

CONFIDENTIAL

MBNF002588



CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
WATER REVENUE BUREAU



City of
**Philadelphia**

# Water/Sewer & Stormwater Bill
Please pay **$804.41**

Questions?
**www.phila.gov/revenue**
**(215) 685-6300** Monday-Friday, 8am-5pm

**Customer Name:** BROAD STREET HEALTHCARE P
**Service Address:** 238 N Broad St, Philadelphia PA 19102
**Bill Date:** July 01, 2020 (Bill Period: Jun 02, 2020 - Jul 01, 2020)

**Account Number:** 001541840
**Water Access Code:** 001541840
**Bill Number:** B0801501452
**Includes Payments Through:** July 01, 2020

## Your Account

| | |
|---|---|
| Water/Sewer/Stormwater balance at last bill | $753.67 |
| No payment received | $0.00 |
| Unpaid Balance | $753.67 |

**This Bill**

| | |
|---|---|
| Fire Service Charge (Period: 06/02/20 - 07/01/20) | $50.74 |
| Total Current Charges | $50.74 |
| Total Account Balance | $804.41 |
| **Please Pay Now** | **$804.41** |

**Past Due Balance**
When your water bill is past due, your service is subject to shut-off. To avoid shut-off, pay your balance in full at one of our payment centers in the city. Payment information can be found on the back.

**Payment Types**
Pay by phone (877) 309-3709; credit card or e-check at www.phila.gov. Select water bill from pay menu options.

See back for more information and contact details →

## Your Water Usage
**Meter Readings**

Meter:        ERT:        Service: Y2N

| | |
|---|---|
| Total CCFs used | 0 |
| *Approximate gallons used per day* | *0* |

**Usage History (ccf)**

☐ Actual Reading   ☐ Estimate

| Jul 2019 | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

*Please fold and detach*

**Paying by mail?**
Send this coupon with your payment.
See back for other ways to pay →

**Account Number**

| | |
|---|---|
| **Please pay** | **$804.41** |
| Late payment penalty | $6.31 |
| Total amount due if paid after Jul 31, 2020 | $810.72 |

BROAD STREET HEALTHCARE P
238 N BROAD ST
PHILADELPHIA PA 19102

420   CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
WATER REVENUE BUREAU

CONFIDENTIAL

MBNF002589

**Water Account Bills Analysis -** ▉▉▉▉▉▉▉
*Meter in Non-Occupied SHSH Building Serviced Water to N/S Tower & Adjoining Properties*

| Invoice date | Invoice Period | Consumption charges | Late fees & Lien fees | Outstanding Consumption Charges* | Payments | CCH Pre-Petition | CCH Administrative | Total |
|---|---|---|---|---|---|---|---|---|
| N/A | Pre-12/13/17 | $ 107,426.97 | $ - | $ 107,426.97 | $ - | $ 107,426.97 | $ - | $ 107,426.97 |
| 1/17/2018 | 12/13/17 - 1/11/18 | 40,340.28 | 3,147.41 | 84,819.15 | (66,095.51) | 43,487.69 | - | 43,487.69 |
| 2/15/2018 | 1/11/18 - 2/13/18 | 45,250.99 | 2,223.94 | 85,591.27 | (46,702.81) | 47,474.93 | - | 47,474.93 |
| 3/19/2018 | 2/13/18 - 3/14/18 | 43,274.35 | - | 128,865.62 | | 43,274.35 | - | 43,274.35 |
| 4/17/2018 | 3/14/18 - 4/11/18 | 57,777.95 | - | 13,993.74 | (172,649.83) | 57,777.95 | - | 57,777.95 |
| 5/16/2018 | 4/11/18 - 5/10/18 | 71,095.57 | - | 85,089.31 | - | 71,095.57 | - | 71,095.57 |
| 6/15/2018 | 5/10/18 - 6/14/18 | 78,472.52 | 699.69 | 106,993.43 | (57,268.09) | 79,172.21 | - | 79,172.21 |
| 7/18/2018 | 6/14/18 - 7/15/18 | 82,245.05 | 5,499.41 | 194,737.89 | | 87,744.46 | - | 87,744.46 |
| 8/15/2018 | 7/15/18 - 8/10/18 | 61,712.37 | - | 148,030.78 | (108,419.48) | 61,712.37 | - | 61,712.37 |
| 9/19/2018 | 8/10/18 - 9/10/18 | 79,302.01 | 3,085.63 | 79,302.02 | (151,116.40) | 82,387.64 | - | 82,387.64 |
| 10/17/2018 | 9/14 - 10/14 | 65,387.85 | - | 65,387.85 | (79,302.02) | 65,387.85 | - | 65,387.85 |
| 11/19/2018 | 10/14 - 11/14 | 52,348.46 | - | 52,348.46 | (65,387.85) | 52,348.46 | - | 52,348.46 |
| 12/17/2018 | 11/14 - 12/16 | 55,220.49 | - | 107,568.95 | | 55,220.49 | - | 55,220.49 |
| 1/16/2019 | 12/16/18 - 1/15 | 49,644.64 | 2,617.42 | 159,831.01 | - | 52,262.06 | - | 52,262.06 |
| 2/14/2019 | 1/15 - 2/13 | 54,292.22 | 2,774.11 | 164,548.88 | (52,348.46) | 57,066.33 | - | 57,066.33 |
| 3/15/2019 | 2/13 - 3/14 | 60,410.08 | 2,785.29 | 227,744.25 | | 63,195.37 | - | 63,195.37 |
| 4/17/2019 | 3/14 - 4/13 | 51,831.37 | 3,371.27 | 233,302.25 | (49,644.64) | 55,202.64 | - | 55,202.64 |
| 5/16/2019 | 4/13 - 5/12 | 63,743.13 | 3,349.24 | 245,174.13 | (55,220.49) | 67,092.37 | - | 67,092.37 |
| 6/17/2019 | 5/12 - 6/13 | 73,586.53 | 2,967.65 | 207,026.01 | (114,702.30) | 76,554.18 | - | 76,554.18 |
| 7/17/2019 | 6/13 - 7/11 | 75,075.50 | 3,626.63 | 285,728.14 | - | | 78,702.13 | 78,702.13 |
| 8/15/2019 | 7/11 - 8/11 | 81,087.45 | 4,363.75 | 371,179.34 | - | | 85,451.20 | 85,451.20 |
| 9/17/2019 | 8/11 - 9/16 | 82,789.00 | 10,356.00 | 464,324.34 | - | | 93,145.00 | 93,145.00 |
| 10/16/2019 | 9/16 - 10/15 | 61,005.30 | 91.45 | 525,421.09 | - | | 61,096.75 | 61,096.75 |
| 11/15/2019 | 10/15 - 11/15 | 63,758.39 | 6,046.21 | 595,225.69 | - | | 69,804.60 | 69,804.60 |
| 12/16/2019 | 11/15 - 12/16 | 63,789.89 | 5,401.21 | 664,416.79 | - | | 69,191.10 | 69,191.10 |
| 1/21/2020 | 12/16/19 - 1/16 | 33,817.46 | 12,182.95 | 710,417.20 | - | | 46,000.41 | 46,000.41 |
| 2/18/2020 | 1/16 - 2/13 | 29,180.65 | 5,072.04 | 744,669.89 | - | | 34,252.69 | 34,252.69 |
| 3/17/2020 | 2/13 - 3/15 | 29,451.55 | 5,195.93 | 779,317.37 | - | | 27,775.45 | 27,775.45 |
| **Outstanding Ending Balance** | | | | **779,317.37** | | $ 1,225,883.89 | $ 565,419.33 | $ 1,791,303.22 [B] |

Note: *Late fees & Lien fees applied on a FIFO basis for each payment
Note: Final invoice is pro-rated for charges; however, late fees and lien fees are not pro-rated.

Straddle-Bill Around Filing Date Allocation

| | | | |
|---|---|---|---|
| Filing Date: | 6/30/2019 | | |
| Straddle Start | 6/13/2019 | 27 | Days on Invoice |
| Straddle End | 7/10/2019 | 17 | Days Pre-Petition |

Straddle-Bill Around Property Return Date Allocation

| | | | |
|---|---|---|---|
| Property Return: | 3/7/2020 | | |
| Straddle Start | 2/13/2020 | 30 | Days on Invoice |
| Straddle End | 3/14/2020 | 23 | Days Post-Straddle Start Date |

CONFIDENTIAL

MBNF002590

| | Debtor's Property Condition Turnover Costs Revised 11/22/21 | | | | | | |
|---|---|---|---|---|---|---|---|
| Trade | Issue | Vendor | Cost | Paid to date | Approved but not paid | Date paid | Comments |
| | Hospital Towers | | $ 789,478.75 | $ 143,825.75 | $ 157,218.00 | | |

**Prepared by Newmark Knight Frank with cost estimates provided by the vendors

CONFIDENTIAL

| Debtor's Property Condition Turnover Costs Revised 5/5/21 | | | | | | |
|---|---|---|---|---|---|---|
| Trade | Issue | Vendor | Cost | Paid to date | Date paid | Comments |
| | Hospital Towers | | $ 816,134.90 | $ 127,805.32 | | |

**Prepared by Newmark Knight Frank with cost estimates provided by the vendors

CONFIDENTIAL

MBNF002592



CONFIDENTIAL    MBNF002593

## Exhibit I

## NOTICE OF INTENT TO FILE MECHANICS' LIEN CLAIM
Pursuant to 49 P.S. § 1501

TO:  Broad Street Healthcare Properties, LLC
c/o Cogency Global Inc.
600 North 2nd Street
Harrisburg, PA 17101

FROM:  Shelly Electric Company, Inc.
1126 Callowhill Street
Philadelphia, PA 19132

**PLEASE TAKE NOTICE** that Shelly Electric Company, Inc., furnished labor and materials to:

Broad Street Healthcare Properties, LLC
c/o Cogency Global Inc.
600 North 2nd Street
Harrisburg, PA 17101

in the execution of its contract with Green Generation Solutions, LLC as follows:

1. The Subcontractor Claimant, Shelly Electric Company, Inc., has a place of business at 1126 Callowhill Street, Philadelphia, Pennsylvania 19132.

2. The owner is Broad Street Healthcare Properties, LLC with a registered agent for service of Cogency Global Inc., 600 North 2nd Street, Harrisburg, PA 17101.

3. Shelly Electric Company, Inc. furnished labor and materials including the installation of 1,620 LED light fixtures and lamps at 222-48 North Broad Street, Philadelphia, PA 19102, pursuant to its subcontract with Green Generation Solutions, LLC entered into on or around October 16, 2018.

4. Shelly Electric Company, Inc. last supplied labor and materials to 222-48 North Broad Street, Philadelphia, PA 19102, on May 31, 2019.

5. Green Generation Solutions, LLC, despite repeated demand, remains indebted to Shelly Electric Company, Inc. for $58,439.01 for the labor and materials supplied to 222-48 North Broad Street, Philadelphia, PA 19102.

6. The Claimant intends to file a mechanics' lien on the property located at 222-48 North Broad Street, Philadelphia, PA 19102, a/k/a Philadelphia OPA #772025002.

**LEONARD A. WINDISH, P.C.**

Dated: ___10/18/19___            By: _Leonard A. Windish_

LEONARD A. WINDISH
1835 Market Street, Suite 1215
Philadelphia, PA 19109
(215) 979-7605
Attorneys for Claimant Shelly Electric Company, Inc.

**EXHIBIT A**

MBNF002595

**THOMAS E. WEIERS, JR., ESQ.**
PA I.D. No. 43715
2000 Georgetowne Dr.
Suite 100
Sewickley, PA 15143
Phone: 412-874-5298
Tom.weiersesq@gmail.com

*Attorney for Claimant/Plaintiff,*
Otis Elevator Company

---

Otis Elevator Company,

                    Claimant,

              v.

Broad Street Healthcare Properties, LLC
And Tenet HealthSystem Hahnemann, LLC,
d/b/a Hahnemann University Hospital,

                    Owners or Reputed.
                    Owners.

Philadelphia County
Court of Common Pleas
Civil Division

No.  1909M0021

**MECHANIC'S LIEN CLAIM**

---

### NOTICE OF FILING OF MECHANIC'S LIEN

To:    Broad Street Healthcare Properties, LLC
          <u>c/o</u> Cogency Global, Inc., Its PA Registered Agent
          600 North 2nd St.
          Harrisburg, PA 17101

Notice is hereby given that a Statement of Mechanic's Lien, a true and correct copy of which is attached hereto, was filed on behalf of Otis Elevator Company on September 20, 2019 in the Court of Common Pleas of Philadelphia County, Pennsylvania, Civil Division, at case number 1909M0021. This Mechanic's Lien claim is asserted against the property owned by Broad Street Healthcare Properties, LLC, and leased by Tenant HealthSystem Hahnemann, LLC, 222-248 Broad St., Philadelphia, 19102.

                              Respectfully submitted

                              _____
                              Thomas E. Weiers, Jr.
                              Attorney for Claimant, Otis Elevator Co.

MBNF002596

**THOMAS E. WEIERS, JR., ESQ.**
PA I.D. No. 43715
2000 Georgetowne Dr.
Suite 100
Sewickley, PA 15143
Phone: 412-874-5298
Tom.weiersesq@gmail.com

*Attorney for Claimant/Plaintiff,*
Otis Elevator Company

---

| | |
|---|---|
| Otis Elevator Company, | Philadelphia County<br>Court of Common Pleas<br>Civil Division |
|        Claimant,<br>  v. | No. 1909 M 0021 |
| Broad Street Healthcare Properties, LLC<br>And Tenet HealthSystem Hahnemann, LLC,<br>d/b/a Hahnemann University Hospital, | **MECHANIC'S LIEN CLAIM** |
|        Owners or Reputed.<br>       Owners. | |

---

## STATEMENT OF MECHANIC'S LIEN

AND NOW, comes Otis Elevator Company ("Otis"), by and through its undersigned

counsel, Thomas E. Weiers, Jr., Esquire and files this Statement of Mechanic's Lien as a

contractor pursuant to the Mechanic's Lien Laws of 1963, 49 P.S. §1101, et seq., against the fee

simple and leasehold interests of the premises herein described, any and all building erected

thereupon and the curtilage appurtenant thereto for the payment of $81,137.00, together with

applicable interest.  The following is a statement of the claim.

    1.    <u>Name of Claimant:</u>

        Otis Elevator Company
        30 Twosome Dr. – Suite 4
        Moorestown, NJ 08057

2.    Name and Address of Owners or Reputed Owners of the Buildings
      and/or Property and of Lessee:

      Broad Street Healthcare Properties, LLC
      222 N. Sepulveda Blvd. – Suite 900
      El Segundo, CA 90245
      (Fee Owner)

      Tenet HealthSystem Hahnemann, LLC,
      d/b/a Hahnemann University Hospital
      230 N. Broad St.
      Philadelphia, PA 19102
      (Leaseholder)

3.    Completion of Work/Supply of Materials at the Project:

      March 31, 2019

4.    Detailed Statement of the Kind and Character of the Work and
      Labor Done:

      Otis provided materials and labor to make repairs and maintain elevators and
      escalators as set forth in more detail in the Contract, as amended, attached hereto
      and incorporated herein as Exhibit "A." Otis contracted with Owner, Tenet
      HealthSystem Hahnemann, LLC, the former fee simple owner and current lessee of
      the property.

5.    Amount or Sum Claimed to be Due is:

      Eighty One Thousand One Hundred Thirty Seven Dollars and Zero Cents
      ($81,137.00) for materials and services furnished within six (6) months last past
      for erection, construction, alteration or repair and upon the credit of the property,
      buildings and curtilage described herein.

MBNF002598

6.    <u>Lien is Claimed Against the Following Described Real Property and Structures Thereon</u>:

The fee simple interest of real property and structures known as the Hannemann University Hospital, with a US Postal address of 222-248 Broad St., Philadelphia, 19102 and being further described as Parcel "A" in a deed filed January 18, 2018 at Document ID No. 53316745 and having Tax Parcel ID No. 77-2-0250-02, together with the leasehold interest held therein by Tenet HealthSystem Hahnemann, LLC d/b/a Hahnemann University Hospital.  It is reasonably believed and therefore averred that the fee simple Owner, Broad Street Healthcare Properties, LLC provided written consent for the improvements, repairs, maintenance and/or services to the leasehold interest held by Tenet HealthSystem Hahnemann, LLC d/b/a Hahnemann University Hospital including those improvements made by Claimant, and that Claimant's improvements, repairs, maintenance and/or services were for the immediate use and benefit of Owner, Broad Street Healthcare Properties, LLC

Respectfully submitted,

Dated: September 20, 2019

_____
Thomas E. Weiers, Jr., Esq.
*Attorney for Otis Elevator Company*

MBNF002600

MBNF002601

MBNF002602

MBNF002603

MBNF002604

MBNF002605

MBNF002606

MBNF002607

MBNF002608

MBNF002609

MBNF002610

MBNF002611

MBNF002612

MBNF002613

MBNF002614

MBNF002615

MBNF002616

MBNF002617

MBNF002618

MBNF002619

MBNF002620

MBNF002621

MBNF002622

MBNF002623

MBNF002624



MBNF002625

MBNF002626



MBNF002628


MBNF002629

MBNF002630



MBNF002631



MBNF002633

MBNF002634

MBNF002635

# Exhibit J

325 N 15TH ST
Philadelphia PA 19102-1020
OPA Number 881038202
Owner: BROAD STREET HEALTHCARE PROPERTIES LLC
Assessed Value: $2290200.00
Sale Date: 01/10/2018
Sale Price: $10.00

| Year | Principal | Interest | Penalty | Other | Total | Lien Number | City Solicitor | Status |
|------|-----------|----------|---------|-------|-------|-------------|----------------|--------|
| 2019 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2021 | 32058.22 | 2885.24 | 0.00 | 0.00 | 34943.46 | | | |
| Total | 32058.22 | 2885.24 | 0.00 | 0.00 | 34943.46 | | | |

MBNF002574

222-48 N BROAD ST
Philadelphia PA 19102-1121
OPA Number 772025002
Owner: BROAD STREET HEALTHCARE PROPERTIES LLC
Assessed Value: $20169100.00
Sale Date: 01/10/2018
Sale Price: $26200000.00

| Year | Principal | Interest | Penalty | Other | Total | Lien Number | City Solicitor | Status |
|------|-----------|----------|---------|-------|-------|-------------|----------------|--------|
| 2019 | -172889.30 | 3415.20 | 3035.74 | 9591.20 | -156847.16 | | | |
| 2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2021 | 268072.22 | 20105.42 | 0.00 | 0.00 | 288177.64 | | | |
| Total | 95182.92 | 23520.62 | 3035.74 | 9591.20 | 131330.48 | | | |

CONFIDENTIAL

221-23 N 15TH ST
Philadelphia PA 19102-1101
OPA Number 772028498
Owner: BROAD STREET HEALTHCARE PROPERTIES LLC
Assessed Value: $325600.00
Sale Date: 01/10/2018
Sale Price: $26200000.00

| Year | Principal | Interest | Penalty | Other | Total | Lien Number | City Solicitor | Status |
|------|-----------|----------|---------|-------|-------|-------------|----------------|--------|
| 2019 | 0.00 | 117.93 | 104.83 | 424.79 | 647.55 | 2002R19478793 | MARCEL S. PRATT | |
| 2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| Total | 0.00 | 117.93 | 104.83 | 424.79 | 647.55 | | | |

CONFIDENTIAL

300-04 N BROAD ST
Philadelphia PA 19102-1110
OPA Number 885620242
Owner: BROAD STEET HEALTHCARE PROPERTIES II LLC
Assessed Value: $9912800.00
Sale Date: 01/10/2018
Sale Price: $6290000.00

| Year | Principal | Interest | Penalty | Other | Total | Lien Number | City Solicitor | Status |
|---|---|---|---|---|---|---|---|---|
| 2019 | 0.00 | 3474.68 | 3088.60 | 9756.54 | 16319.82 | | | BRT |
| 2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| Total | 0.00 | 3474.68 | 3088.60 | 9756.54 | 16319.82 | | | |

CONFIDENTIAL

MBNF002577

200-14 N BROAD ST
Philadelphia PA 19102-1121
OPA Number 885467862
Owner: JOEL FREEDMAN
Assessed Value: $10194900.00
Sale Date: 01/10/2018
Sale Price: $9120000.00

| Year | Principal | Interest | Penalty | Other | Total | Lien Number | City Solicitor | Status |
|------|-----------|----------|---------|-------|-------|-------------|----------------|--------|
| 2001 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2002 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2003 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2004 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2005 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2006 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2007 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2008 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2009 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2010 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2014 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2015 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2016 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2017 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2018 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2019 | 0.00 | 877.53 | 780.03 | 2536.48 | 4194.04 | 2002R19477853 | MARCEL S. PRATT | |
| 2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | BRT |
| 2021 | 142708.21 | 10703.12 | 0.00 | 0.00 | 153411.33 | | | |
| Total | 142708.21 | 11580.65 | 780.03 | 2536.48 | 157605.37 | | | |

CONFIDENTIAL

MBNF002578

201-19 N 15TH ST
Philadelphia PA 19102-1101
OPA Number 772028496
Owner: JOEL FREEDMAN
Assessed Value: $9687800.00
Sale Date: 01/10/2018
Sale Price: $9120000.00

| Year | Principal | Interest | Penalty | Other | Total | Lien Number | City Solicitor | Status |
|------|-----------|----------|---------|-------|-------|-------------|----------------|--------|
| 2019 | 0.00 | 3508.90 | 3119.03 | 9851.69 | 16479.62 | 2002R19478792 | MARCEL S. PRATT | |
| 2020 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | |
| 2021 | 135609.82 | 10170.74 | 0.00 | 0.00 | 145780.56 | | | |
| Total | 135609.82 | 13679.64 | 3119.03 | 9851.69 | 162260.18 | | | |

CONFIDENTIAL



**From:** Mary Kate Martin <MaryKate.Martin@Phila.gov>
**Sent:** Wednesday, September 29, 2021 2:07 PM
**To:** David Lebor <dlebor@mkbattorneys.com>; Stephan Pahides <spahides@mkbattorneys.com>
**Cc:** Christine Bak <Christine.Bak@phila.gov>; James Zwolak <James.Zwolak@phila.gov>
**Subject:** PAHH Taxes

Dear Dave,
Thank you again for your patience in this matter. Attached please find the current snapshot of all real estate tax account balances for years 2018, 2019, 2020 and 2021 on the following list of 16 different accounts which are either owned, or previously owned, by Broad Street Healthcare Properties, LLC; Broad Street Healthcare Properties II, LLC; Broad Street Healthcare Properties III, LLC; Front Street Healthcare Properties, LLC; and Front Street Healthcare Properties II, LLC.

| Address | BRT |
|---------|-----|
|         |     |

CONFIDENTIAL
MBNF002700

| | |
|---|---|
| 222-248 N. Broad Street | 772025002 |
| 221-223 N. 15th Street | 772028498 |
| 325 N. 15th Street | 881038202 |
| 300-304 N. Broad Street | 885620242 |
| 200-214 N. Broad Street | 885467862 |
| 201-219 N. 15th Street | 772028496 |
| 160 E. Erie Avenue | 777011735 |
| 3647-3669 N. Front Street | 883001100 |
| 211-213 N. Broad Street | 885467980 |
| 3843-3863 D Street | 884460950 |
| 225-231 N. 15th Street | 772028502 |
| 225-251 N. 15th Street | 772028500 |
| 1501-1511 N. Race Street | 772027000 |
| 231-233 N. Broad Street | 772027000 |
| 306-320 N. Broad Street | 772027000 |
| 120 E. Erie Avenue | 772027000 |

The Department of Revenue has carefully reviewed each account, and made adjustments where necessary, to ensure that payments were applied in the same manner indicated by your client in its April and May 2021 memos. According to our records, your client has a balance in the aggregate of $144,700.69. This total includes a credit on an old BRT number 772028500, which does not appear on the City's website but for which I attached information from our in-house database.

Please let me know whether you would like to meet to discuss the data, or if you would like for us to review additional materials your client might wish to submit. Thank you for your time.

Sincerely,
Mary-Kate
_____

Mary-Kate Martin, Esquire

Deputy City Solicitor

Real Estate Tax Division

Philadelphia Law Department

Municipal Services Building

1401 JFK Blvd. 5th Floor
Philadelphia, PA 19102
(215) 686-0511
her/she
MaryKate.Martin@phila.gov

NOTICE: This electronic mail ("E-mail") transmission is for the intended recipient(s) only and may constitute a communication that is confidential and/or privileged at law.  Any unauthorized copying, disclosure or distribution of material in this E-mail is strictly forbidden.  If you are not the intended

CONFIDENTIAL

MBNF002701

recipient, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender.

The information contained in this email and any attachments is confidential and may be legally privileged and protected under State or Federal laws. It is intended solely for the addressee and access by anyone else is unauthorized. If you have received this communication or any of its attachments in error, you must notify the sender immediately and delete from your system without retaining a copy. If you are not the intended recipient, any disclosure, copying, or distribution is strictly prohibited and may be unlawful.

3

CONFIDENTIAL

MBNF002702

## Exhibit K

# GLOBAL INTERCOMPANY NOTE

May 29, 2019

Each of the parties identified on Schedule 1 hereto (each, an "Issuer") hereby acknowledges that it owes, and promises to pay, on demand, to each applicable party identified on Schedule 2 hereto (each, a "Holder", and together with the Issuers, each, a "Note Party"), in U.S. Dollars in immediately available funds, at such location as the applicable Holder shall from time to time designate, all amounts as may be owing from time to time on and after the date hereof by each such Issuer to each such applicable Holder whether owing in consideration of loans, advances, payments on behalf of (through expense allocations or otherwise) or other extensions of credit, together with interest thereon at such rate as may be agreed upon from time to time.

Each Holder may make demand for all or any subset of the amounts owing to such Holder under this Note, by all Issuers or any Issuer, without the consent or permission of any Issuer or any other Holder.

Upon the commencement of any bankruptcy, reorganization, arrangement, adjustment of debt, relief of debtors, dissolution, insolvency, receivership or liquidation or similar proceeding of any jurisdiction relating to any Issuer, all amounts owed by such Issuer to each Holder shall become immediately due and payable without presentment, demand, protest or notice of any kind in connection with this Note.

All payments under this Note shall be made without setoff, counterclaim or deduction of any kind. Any amount owing by any Issuer to any Holder shall not be reduced in any way by any outstanding obligations of the Holder to such Issuer, whether such obligations are monetary or otherwise. Each Holder is hereby authorized to record all amounts owing in consideration of loans, advances, payments on behalf of (through expense allocations or otherwise) or other extensions of credit by the Issuers to such Holder, all of which shall be evidenced by this Note, and all repayments thereof, in its books and records in accordance with its usual practice, such books and records constituting prima facie evidence of the accuracy of the information contained therein; provided, however, that the failure of any Holder to record such information shall not affect any Issuer's obligations hereunder.

Each Issuer hereby waives diligence, presentment, demand, protest and notice of any kind whatsoever. No delay on the part of any Holder in the exercise of any right, power or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy preclude any other or further exercise thereof, or the exercise of any other right, power or remedy. No amendment, modification or waiver of, or consent with respect to, any provision of this Note shall in any event be effective against any party hereto unless the same shall be in writing and signed and delivered by such party. This Note shall be construed as a separate agreement with respect to each loan, advance or other extension of credit owed by an Issuer to a Holder and may be amended, modified, supplemented, waived or released with respect to any such Issuer or such Holder with respect to such loan, advance or other extension of credit without the approval of any other party hereto and without affecting the obligations of any other Issuer or Holder hereunder. This Note shall be binding upon each Issuer and its successors

MBNF002694

and assigns, and shall inure to the benefit of each Holder and its successors and assigns, and may not be assigned by any Holder without the prior written consent of each Issuer; any such purported assignment without such consent being null and void.  No Issuer may assign any of its obligations under this Note without the prior written consent of each Holder, any such purported assignment without such consent being null and void.  The rights and obligations of each Note Party hereunder shall remain in full force and effect notwithstanding the addition of any new Note Party as a party to this Note.

**THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

[The Remainder of this Page Intentionally Left Blank]

CONFIDENTIAL

MBNF002695

**ISSUERS:**

**MBNF INVESTMENTS, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**AMERICAN ACADEMIC HEALTH SYSTEM, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer

**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**FRONT STREET HEALTHCARE PROPERTIES, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**FRONT STREET HEALTHCARE PROPERTIES II, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES II, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

*[Signature Page to Global Intercompany Note]*

CONFIDENTIAL

**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

*[Signature Page to Global Intercompany Note]*

CONFIDENTIAL

SCHEDULE 1

### Issuers (Jurisdiction of Organization)

MBNF Investments, LLC (a Delaware limited liability company)

American Academic Health System, LLC (a Delaware limited liability company)

Philadelphia Academic Health Holdings, LLC (a Delaware limited liability company)

Front Street Healthcare Properties, LLC (a Delaware limited liability company)

Front Street Healthcare Properties II, LLC (a Delaware limited liability company)

Broad Street Healthcare Properties, LLC (a Delaware limited liability company)

Broad Street Healthcare Properties II, LLC (a Delaware limited liability company)

Broad Street Healthcare Properties III, LLC (a Delaware limited liability company)

CONFIDENTIAL

MBNF002698

SCHEDULE 2

## **Holders (Jurisdiction of Organization)**

MBNF Investments, LLC (a Delaware limited liability company)

American Academic Health System, LLC (a Delaware limited liability company)

Philadelphia Academic Health Holdings, LLC (a Delaware limited liability company)

Front Street Healthcare Properties, LLC (a Delaware limited liability company)

Front Street Healthcare Properties II, LLC (a Delaware limited liability company)

Broad Street Healthcare Properties, LLC (a Delaware limited liability company)

Broad Street Healthcare Properties II, LLC (a Delaware limited liability company)

Broad Street Healthcare Properties III, LLC (a Delaware limited liability company)

CONFIDENTIAL

MBNF002699