**Exhibit C**

*Broad Street Entities Demand and Secured Promissory Note dated October 28, 2021*

THIS DEMAND AND SECURED PROMISSORY NOTE AND PAYMENT HEREOF ARE SUBJECT TO AND GOVERNED BY THE TERMS OF AN AMENDED AND RESTATED SUBORDINATION AGREEMENT DATED AS OF OCTOBER 28, 2021 AMONG AGENT NAMED BELOW, PALADIN HEALTHCARE CAPITAL, LLC, AS ADMINISTRATIVE AGENT UNDER THE SENIOR NOTE (AS DEFINED BELOW), MAKER NAMED BELOW, AND FRONT STREET HEALTHCARE PROPERTIES, LLC, THE PROVISIONS OF WHICH ARE INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART HEREOF.

**BROAD STREET HEALTHCARE PROPERTIES, LLC**
**BROAD STREET HEALTHCARE PROPERTIES II, LLC**
**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

**DEMAND AND SECURED PROMISSORY NOTE**

$3,000,000.00                                                     El Segundo, California

                                                                 October 28, 2021

   **FOR VALUE RECEIVED**, **BROAD STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company ("**Broad Street I**"), **BROAD STREET HEALTHCARE PROPERTIES II, LLC**, a Delaware limited liability company ("**Broad Street II**"), **BROAD STREET HEALTHCARE PROPERTIES III, LLC**, a Delaware limited liability company ("**Broad Street III**" and collectively with Broad Street I and Broad Street II, "**Maker**"), unconditionally, jointly and severally, promise to pay to the Persons (as defined in Section 11) named on the signature pages hereto (each, a "**Lender**" and collectively, the "**Lenders**"), in the manner and at the place hereinafter provided, the lesser of (a) the sum of (i) [SIX HUNDRED SEVENTY NINE THOUSAND FIVE HUNDRED DOLLARS ($679,500.00)] plus (ii) all Additional Advances (as defined below) made by Lenders to Maker on and after the date hereof and (b) the unpaid Principal Amount of all Advances (each as defined below), together with any accrued and unpaid interest thereon, on demand, but in any event no later than January 31, 2022 (the "**Maturity Date**").

   1. **Advances**.  This Demand and Secured Promissory Note (this "**Note**") evidences the advances made by Lenders to Maker, another person or entity on behalf of Maker or designated by Maker, on or about the date hereof (the "**Current Advances**"), the principal amount of which, the date on which such advances were made and the Lender who made such advance(s) are set forth on <u>Schedule A</u> attached hereto.  Any Lender may, in its sole and absolute discretion, from time to time, make to Maker additional advances under this Note (the "**Additional Advances**" and together with the Current Advances, the "**Advances**" and each, an "**Advance**") so long as the sum of (a) the unpaid Principal Amount of all Advances outstanding at the time that any Additional Advance is requested to be made and (b) the principal amount of such requested Additional Advance does not exceed the face amount of this Note.  At the option of Agent (as defined in Section 11), the Additional Advances outstanding under this Note may be evidenced by a schedule to this Note in form and substance satisfactory to Agent, <u>provided</u>, however, that such schedule shall not be necessary to evidence such Additional Advances nor shall the absence of such schedule limit

1

or otherwise affect the obligation of Maker hereunder with respect to payments of principal of, or interest on, such Additional Advances.

2.    **Interest**.  Interest on the unpaid principal amount of all Advances (including all PIK Amounts (as defined below) added thereto, the "**Principal Amount**") shall accrue at a rate per annum equal to eight and one half percent (8.5%) commencing, with respect to each Advance, on the date such Advance was made; provided that any Principal Amount not paid when due and, to the extent permitted by applicable law, any interest not paid when due, in each case whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (both before as well as after judgment), shall bear interest payable upon demand at a rate that is five percent (5%) per annum in excess of the rate of interest otherwise payable under this Note.  Interest shall be (i) calculated on the basis of a 360-day year, for the actual number of days elapsed in the relevant period, and (ii) payable quarterly, in arrears, on the first Business Day of each calendar quarter through and including the Maturity Date, and on the Maturity Date, whether by acceleration or otherwise (each, an "**Interest Payment Date**").  Interest on the Principal Amount that shall have accrued and shall remain unpaid as of any Interest Payment Date (for any Interest Payment Date, a "**PIK Amount**") shall be paid on such Interest Payment Date by addition of such PIK Amount to the Principal Amount.  At the option of Agent, the PIK Amounts added to the Principal Amount shall be evidenced by a note (a "**PIK Note**") in form and substance satisfactory to Agent, provided, however, that such PIK Note shall not be necessary to evidence such portion of the Principal Amount nor shall the absence of such PIK Note relieve Maker of its obligation to pay any portion of the Principal Amount to Lenders.  Notwithstanding any other provision of this Note and the addition of any PIK Amount to the Principal Amount, Maker may, in its sole discretion, pay any PIK Amount in cash on any Interest Payment Date without any premium or penalty.  Maker shall give written notice to Agent of any such payment of a PIK Amount in cash not less than one Business Day prior to the applicable Interest Payment Date.

3.    **Payments.**  All payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America in same day funds at the location of Agent as Agent may direct.  Whenever any payment on this Note is stated to be due on a day that is not a Business Day, such payment shall instead be made on the next Business Day, and such extension of time shall be included in the computation of interest payable on this Note.  Each payment or prepayment made hereunder shall be credited first to interest then due and the remainder of such payment shall be credited to principal, and interest shall thereupon cease to accrue upon the principal so credited.  The Agent agrees  that before disposing of this Note or any part hereof it will make a notation hereon of all principal payments previously made hereunder and of the date to which interest hereon has been paid; provided, however, that the failure to make a notation of any payment made on this Note shall not limit or otherwise affect the obligation of Maker hereunder with respect to payments of principal or interest on this Note.

4.    **Prepayments.**

(a) Optional.  Subject to the provisions of the Subordination Agreement, Maker shall have the right at any time and from time to time to prepay the Principal

MBNF000045

Amount in whole or in part, without premium or penalty. Any prepayment hereunder shall be accompanied by interest on the Principal Amount being prepaid to the date of prepayment.

(b) <u>Mandatory</u>. Subject to the provisions of the Subordination Agreement, if Maker sells, transfers or otherwise disposes of any Collateral which results in the realization by Maker of any cash and cash equivalents received in connection with such transaction (including those received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise, but only as and when so received), Maker shall prepay an aggregate principal amount of Advances equal to such cash and cash equivalents less reasonable and customary out-of-pocket expenses incurred by Maker in connection with such transaction, within two Business Days from receipt thereof by Maker.

(c) Amounts prepaid under this Note pursuant to this Section 4 may not be reborrowed.

5.      **Application and Sharing of Payments, Etc**. Subject to the provisions of the Subordination Agreement, any amounts received on account of the Obligations shall be applied by Agent to payment of the Obligations payable to the Lenders, ratably among them in proportion to the respective amounts of Advances, <u>first</u> to any asserted but unpaid indemnities, expenses and other amounts payable under this Note and the Mortgage, <u>second</u> to unpaid interest and <u>then</u> to unpaid principal amount. If any Lender shall obtain any payment (whether voluntary, involuntary, through the exercise of any right of set-off, or otherwise) on account of the Advances owing to it in excess of its ratable share of payments on account of the Advances obtained by all the Lenders, then such Lender shall forthwith purchase from the other Lenders such participations in the Advances owing to them as shall be necessary to cause such purchasing Lender to share the excess payment ratably with each of them, provided, however, that if all or any portion of such excess payment is thereafter recovered from such purchasing Lender, such purchase from each Lender shall be rescinded and such Lender shall repay to the purchasing Lender the purchase price to the extent of such recovery together with an amount equal to such Lender's ratable share (according to the proportion of (i) the amount of such Lender's required repayment to (ii) the total amount so recovered from the purchasing Lender) of any interest or other amount paid or payable by the purchasing Lender in respect of the total amount so recovered. The Maker agrees that any Lender so purchasing a participation from another Lender pursuant to this Section 5 or any other provision of this Note may, to the fullest extent permitted by law, exercise all of its rights of payment (including the right to set-off) with respect to such participation as fully as if such Lender were the direct creditor of the Maker in the amount of such participation.

6.      **Covenants.** Maker covenants and agrees that until this Note is paid in full it will:

(a) promptly provide to Agent and all Lenders all financial and operational information with respect to Maker as Agent or any Lender may reasonably request;

MBNF000046

(b) promptly after the occurrence of an Event of Default or an event, act or condition that, with notice or lapse of time or both, would constitute an Event of Default, provide Agent, for distribution to the Lenders, with a certificate of the Maker specifying the nature thereof and Maker's proposed response thereto;

(c) without Agent's prior written consent thereto, after consultation with all Lenders, not create, assume, guaranty, incur or otherwise become or remain directly or indirectly liable with respect to any indebtedness for borrowed money, except for any such indebtedness created or incurred pursuant to the documentation entered into prior to or on the date hereof the existence of which has been disclosed to the Lenders in writing;

(d) without Agent's prior written consent thereto, after consultation with all Lenders, not merge or consolidate with any other Person, or sell, lease or otherwise dispose of all or any part of its property or assets to any other Person;

(e) without Agent's prior written consent thereto, after consultation with all Lenders, not create, incur, assume or suffer to exist, directly or indirectly, any lien, security interest, mortgage, deed of trust, pledge, hypothecation, assignment, charge, encumbrance, easement, or other security arrangement (each of the foregoing, a "**Lien**") on or with respect to any of its property or assets, whether now owned or hereafter acquired, or any income or profits therefrom, except for any Lien created or incurred pursuant to the documentation entered into prior to or on the date hereof the existence of which has been disclosed to the Lenders in writing;

(f) without Agent's prior written consent thereto, after consultation with all Lenders, not pay, redeem, defease, purchase or otherwise acquire any indebtedness that ranks junior in priority or is subordinated to the obligations evidenced by this Note, except for any such indebtedness created or incurred pursuant to the documentation entered into prior to the date hereof the existence of which has been disclosed to the Lenders in writing that has been subordinated to the indebtedness outstanding pursuant to this Note on the terms satisfactory to the Agent;

(g) without Agent's prior written consent thereto, after consultation with all Lenders, not declare or pay any dividend or make any other payment or distribution on account of, or purchase or redeem, any equity interests issued by Maker, including, without limitation, any outstanding warrants, options or other rights to acquire equity interests of Maker, now or hereafter outstanding; and

(h) without Agent's prior written consent thereto, after consultation with all Lenders, not use cash, cash equivalents or any other assets of Maker for any purpose other than the payment of reasonable and customary operating expenses incurred in the ordinary course of Maker consistent with past practices.

7.    **Representations and Warranties.**  Maker hereby represents and warrants to Agent and each Lender that:

- 4 -

(a)  it is a duly organized and validly existing limited liability company in good standing under the laws of the jurisdiction of its organization and has the power and authority under its limited liability company agreement to own and operate its properties, to transact the business in which it is now engaged and to execute and deliver this Note and the Mortgage (as defined in Section 14);

(b)  each of this Note and the Mortgage constitutes the duly authorized, legally valid and binding obligation of Maker, enforceable against Maker in accordance with its respective terms, subject to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and general principles of equity;

(c)  all consents and grants of approval required to have been granted by any Person in connection with the execution, delivery and performance of this Note and the Mortgage have been granted;

(d)  the execution, delivery and performance by Maker of this Note and the Mortgage do not and will not (i) violate any law, governmental rule or regulation, court order or agreement to which it is subject or by which its properties are bound or the organizational documents of Maker or (ii) contravene, result in a breach of, or violate any indenture, mortgage, deed of trust, lease, agreement or other instrument to which Maker is a party or by which Maker or any of its property or assets is bound;

(e)  other than as disclosed to Agent and each Lender prior to the date hereof, there is no action, suit, proceeding or governmental investigation pending or, to the knowledge of Maker, threatened against Maker or any of its assets which, if adversely determined, would have a material adverse effect on the business, operations, properties, assets, condition (financial or otherwise) or prospects of Maker, or the ability of Maker to comply with its obligations hereunder;

(f)  the proceeds of the Advances evidenced by this Note shall be used by Maker solely for satisfaction of Maker's obligations to the Pension Fund for Hospital and Health Care Employees—Philadelphia and Vicinity, to make advances to Maker's affiliates in Maker's sole and absolute discretion, and for working capital purposes; and

(g)  no Lien exists on any property or asset of Maker as of the date hereof and the execution, delivery, and performance by Maker of this Note and the Mortgage do not and will not result in or require the creation or imposition of any Lien of any nature whatsoever upon any of its property or assets except (i) in favor of Agent for the ratable benefit of the Lenders pursuant to this Note and the Mortgage, (ii) in favor of Paladin Healthcare Capital, LLC, as administrative agent for the ratable benefit of First Lien Lenders pursuant to the Senior Note (each as defined in Section 14) and the mortgages entered into by Maker in connection therewith, and (iii) in favor of Front Street Healthcare Properties, LLC pursuant to the Demand and Secured Promissory Note entered into by Maker as of February 12, 2020 in the original principal amount of $10,000,000, as modified by those certain note modification agreements and allonges dated as of June 1, 2020 and January 30, 2021.

- 5 -

MBNF000048

8.      **Grant of Security**.

(a)      Maker hereby grants, pledges, assigns, transfers, hypothecates and sets over to Agent, for the ratable benefit of the Lenders, a valid, continuing second priority security interest in all of Maker's right, title and interest in the Collateral (as described below), in each case whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located, in order to secure prompt, full, faithful and timely payment and performance of the obligations under this Note and the Mortgage, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder and thereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Maker, would accrue on such obligations, whether or not a claim is allowed against Maker for such amounts in the related bankruptcy proceeding) (collectively, the "**Obligations**"), whether at stated maturity, acceleration or otherwise, together with all extensions or renewals thereof, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, whether or not jointly owned with others, and whether or not such Obligations are from time to time decreased or extinguished and later increased, created or incurred, and all or any portion of such Obligations that are paid, to the extent all or any part of such payment is avoided or recovered directly or indirectly from Agent or any Lender as a preference, fraudulent transfer or otherwise.  "Collateral" shall include all of Maker's interests in all of the following types of personal property, wherever located and whether now owned or hereafter acquired (collectively, the "Collateral"):

(i)      all Accounts;

(ii)      all Chattel Paper;

(iii)      all Money and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

(iv)      all Documents;

(v)      all General Intangibles (including (i) patents, trademarks, service marks, copyrights, and other intellectual property and (ii) all contracts, contract rights, and payments under any contracts, including contracts for the sale of Maker's property), Payment Intangibles and Software;

(vi)      all Goods, including Inventory, Equipment and Fixtures;

(vii)      all Instruments;

(viii)      all Investment Property;

(ix)      all Letter-of-Credit Rights and other Supporting Obligations;

(x)      all Records;

- 6 -

(xi)    all Commercial Tort Claims (including those certain Commercial Tort Claims set forth on Schedule B attached hereto); and

(xii)    all Proceeds and Accessions with respect to any of the foregoing Collateral.

Each foregoing category of Collateral set forth above shall have the meaning set forth in Division 9 of the Pennsylvania Uniform Commercial Code in effect on the date hereof (the "**UCC**").

(b)    Maker agrees that from time to time, at the expense of Maker, Maker will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Agent may request, in order to perfect any security interest granted or purported to be granted hereby or to enable Agent to exercise and enforce its and Lenders' rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, Maker will:  (i) execute (if necessary) and file such financing or continuation statements, or amendments thereto, and (ii) execute and deliver such further instruments and take such further action as Agent may reasonably request to effect the intent and purposes hereof, to perfect and continue perfected Agent's security interests in the Collateral.  Maker hereby authorizes Agent to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral (including any financing statement indicating that it covers "all assets" or "all personal property" of Maker).

(c)    Maker hereby irrevocably appoints Agent as Maker's attorney-in-fact, effective upon the occurrence and during the continuance of an Event of Default hereunder, with full authority in the place and stead of Maker and in the name of Maker, Agent or otherwise, from time to time in Agent's discretion, to take any action and to execute any instrument that Agent may deem necessary or advisable to accomplish the purposes of this Note.

(d)    The powers conferred on Agent hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers.  Except for the exercise of reasonable care in the custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Agent shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.  Agent shall be deemed to have exercised reasonable care in the custody and preservation of Collateral in its possession if such Collateral is accorded treatment substantially equal to that which Agent accords its own property.

(e)    Upon the unconditional satisfaction of the Obligations in full, (i) the security interest in the Collateral in favor of Agent, for the ratable benefit of the Lenders, granted hereby shall automatically terminate without any further action on the part of Maker, Agent or any Lender, and (ii) Maker and its designees shall be authorized to file such terminations of such security interest Maker reasonably deems necessary, and Agent shall execute and

MBNF000050

deliver, at Maker's expense, such further evidence of the termination or release of such security interest as Maker may reasonably request.

9. **Events of Default.** The occurrence of any of the following events shall constitute an "**Event of Default**":

(a) failure of Maker to pay any principal or interest under this Note when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, or failure of Maker to pay any other amount due under this Note within five days after the date due; or

(b) failure of Maker to pay, or the default in the payment of, any amount due under or in respect of any promissory note, indenture or other agreement or instrument relating to any indebtedness owing by Maker, to which Maker is a party or by which Maker or any of its property is bound beyond any grace period provided; or the occurrence of any other event or circumstance that, with notice or lapse of time or both, would permit acceleration of such indebtedness; or

(c) failure of Maker to perform or observe any other term, covenant or agreement to be performed or observed by it pursuant to this Note or the Mortgage; or

(d) any representation or warranty made by Maker to Agent or any Lender in connection with this Note or the Mortgage shall prove to have been false in any material respect when made; or

(e) any order, judgment or decree shall be entered against Maker; or

(f) suspension of the usual business activities of Maker or the complete or partial liquidation of Maker's business; or

(g) (i) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of Maker in an involuntary case under Title 11 of the United States Code entitled "Bankruptcy" (as now and hereinafter in effect, or any successor thereto, the "**Bankruptcy Code**") or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, which decree or order is not stayed; or any other similar relief shall be granted under any applicable federal or state law; or (ii) an involuntary case shall be commenced against Maker under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or a decree or order of a court having jurisdiction in the premises for the appointment of a receiver, liquidator, sequestrator, trustee, custodian or other officer having similar powers over Maker, or over all or a substantial part of its property shall have been entered; or the involuntary appointment of an interim receiver, trustee or other custodian of Maker for all or a substantial part of its property shall have occurred; or a warrant of attachment, execution or similar process shall have been issued against any substantial part of the property of Maker, and, in the case of any event described in this clause (ii), such event shall have continued for 60 days unless dismissed, bonded or discharged; or

- 8 -

MBNF000051

(h) an order for relief shall be entered with respect to Maker or Maker shall commence a voluntary case under the Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case, or to the conversion of an involuntary case to a voluntary case, under any such law, or shall consent to the appointment of or taking possession by a receiver, trustee or other custodian for all or a substantial part of its property; or Maker shall make an assignment for the benefit of creditors; or Maker shall be unable or fail, or shall admit in writing its inability, to pay its debts as such debts become due; or the governing body or equityholders of Maker shall adopt any resolution or otherwise authorize action to approve any of the foregoing; or

(i)  Maker shall challenge, or institute any proceedings to challenge, the validity, binding effect or enforceability of this Note or the Mortgage or any endorsement of this Note, the Mortgage or any other obligation to Agent or any Lender; or

(j)  any provision of this Note or the Mortgage shall cease to be in full force or effect or shall be declared to be null or void or otherwise unenforceable in whole or in part; or Agent shall not have or shall cease to have a valid and perfected second priority security interest in the collateral described in the Mortgage or in the Collateral; or

(k) a Change of Control (as defined below) shall occur with respect to Maker, unless the Agent shall have expressly consented to such Change of Control in writing, after consultation with all Lenders.  A "**Change of Control**" shall mean any event or circumstance as a result of which (i) any "Person" or "group" (as such terms are defined in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934 (as in effect on the date hereof, the "**Exchange Act**")), other than Agent, is or becomes the "beneficial owner" (as defined in Rules 13(d)-3 and 13(d)-5 under the Exchange Act), directly or indirectly, of ten percent (10%) or more on a fully diluted basis of the then outstanding voting equity interest of Maker, (ii) the manager of Maker shall cease to consist of the same manager on the date hereof, or (iii) Maker merges or consolidates with, or sells all or substantially all of its assets to, any other Person.

10.  **Remedies.**

(a)    Upon the occurrence of any Event of Default specified in Section 9(g) or 9(h) above, the Principal Amount together with accrued interest thereon shall become immediately due and payable, without presentment, demand, notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker).  Upon the occurrence and during the continuance of any other Event of Default, Agent shall at the request, or may with the consent, of the Majority Lenders (as defined in Section 11), by written notice to Maker, declare the Principal Amount together with accrued interest thereon to be due and payable, and the Principal Amount together with such interest shall thereupon immediately become due and payable without presentment, further notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker).  In either case Agent shall at the

- 9 -

request, or may with the consent, of the Majority Lenders, in addition to exercising any other rights and remedies it may have, exercise those rights of set off provided for in Section 13(c). Demand for payment may be made whether or not any of the foregoing events shall have occurred if the Principal Amount is payable on demand.

(b)　　In addition to all other rights and remedies provided for herein or otherwise available to it, Agent may exercise in respect of the Collateral, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral), and also may (i) require Maker to, and Maker hereby agrees that it will at its expense and upon request of Agent forthwith, assemble all or part of the Collateral as directed by Agent and make it available to Agent at a place to be designated by Agent that is reasonably convenient to both parties, (ii) subject to the rights of third parties, enter onto the property where any Collateral is located and take possession thereof with or without judicial process, (iii) prior to the disposition of the Collateral, store, process, repair or recondition the Collateral or otherwise prepare the Collateral for disposition in any manner to the extent the Agent deems appropriate, (iv) subject to the rights of third parties, take possession of Maker's premises or place custodians in exclusive control thereof, remain on such premises and use the same and any of Maker's equipment for the purpose of completing any work in process, taking any actions described in the preceding clause (iii) and collecting any Obligation, and (v) sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Agent's or Lender's offices or elsewhere, for cash, on credit or for future delivery, at such time or times and at such price or prices and upon such other terms as Agent may deem commercially reasonable. Agent may be the purchaser of any or all of the Collateral at any such sale and Agent, as agent for and representative of Lenders (but not any Lender or Lenders in its or their respective individual capacities unless Majority Lenders shall otherwise agree in writing), shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such sale, to use and apply any of the Obligations as a credit on account of the purchase price for any Collateral payable by Agent at such sale. Maker hereby waives any claims against Agent and each Lender arising by reason of the fact that the price at which any Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale, even if Agent accepts the first offer received and does not offer such Collateral to more than one offeree. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Obligations, Maker shall be liable for the deficiency and the reasonable fees of any attorneys employed by Agent to collect such deficiency.

11.　　**Definitions.** The following terms used in this Note shall have the following meanings (and any of such terms may, unless the context otherwise requires, be used in the singular or the plural depending on the reference):

"**Agent**" means Paladin Healthcare Capital, LLC, a Delaware limited liability company, as administrative agent for the Lenders, appointed and authorized by the Lenders pursuant to Section 12 of this Note.

MBNF000053

"**Business Day**" means any day other than a Saturday, Sunday or legal holiday under the laws of the State of California, the Commonwealth of Pennsylvania or any other day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"**Event of Default**" means any of the events set forth in Section 9.

"**Majority Lenders**" means, as of any date of determination, Lenders owning at least 51% of the then aggregate unpaid principal amount of the Advances.

"**Person**" means any individual, partnership, limited liability company, joint venture, firm, corporation, association, bank, trust or other enterprise, whether or not a legal entity, or any government or political subdivision or any agency, department or instrumentality thereof.

"**Subordination Agreement**" means the Amended and Restated Subordination Agreement dated as of the date hereof by and among Agent, Paladin Healthcare Capital, LLC, as administrative agent under the Senior Note (defined below), Maker and Front Street Healthcare Properties, LLC, as the same may be amended, restated, supplemented or otherwise modified from time to time.

12.    **The Agent.**

(a)  Each Lender hereby appoints and authorizes the Agent to take such action as agent on its behalf and to exercise such powers under this Note and the Mortgage as are delegated to the Agent by the terms hereof and thereof, together with such powers as are reasonably incidental thereto. As to any matters not expressly provided for by this Note or the Mortgage, the Agent shall not be required to exercise any discretion or take any action, but shall be required to act or to refrain from acting (and shall be fully protected in so acting or refraining from acting) upon the instructions of the Majority Lenders, and such instructions shall be binding upon all Lenders and all holders of this Note; provided, however, that the Agent shall not be required to take any action which exposes the Agent to personal liability or which is contrary to this Note, the Mortgage or applicable law. The Agent agrees to give to each Lender prompt notice of each notice given to it by the Maker pursuant to the terms of this Note.

(b)  The Agent shall not liable for any action taken or omitted to be taken by it or them under or in connection with this Note, except for its or their own gross negligence or willful misconduct. Without limitation of the generality of the foregoing, the Agent: (i) may consult with legal counsel (including counsel for the Maker), independent public accountants and other experts selected by it and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel, accountants or experts; (ii) makes no warranty or representation to any Lender and shall not be responsible to any Lender for any statements, warranties or representations made in or in connection with this Note or the Mortgage; (iii) shall not have any duty to ascertain or to inquire as to the

- 11 -

performance or observance of any of the terms, covenants or conditions of this Note or the Mortgage on the part of the Maker or to inspect the property (including the books and records) of the Maker; (iv) shall not be responsible to any Lender for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of this Note, the Mortgage or any other instrument or document furnished pursuant hereto; and (v) shall incur no liability under or in respect of this Note or the Mortgage by acting upon any notice, consent, certificate or other instrument or writing (which may be by electronic mail) believed by it to be genuine and signed or sent by the proper party or parties.

(c)  With respect to its Advance(s), the Advance or Advances made by it, Paladin Healthcare Capital, LLC shall have the same rights and powers under this Note and the Mortgage as any other Lender and may exercise the same as though it were not the Agent; and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated, include Paladin Healthcare Capital, LLC in its individual capacity.

(d) Each Lender acknowledges that it has, independently and without reliance upon the Agent or any other Lender and based on the documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Note.  Each Lender also acknowledges that it will, independently and without reliance upon the Agent or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Note.

(e)  The Agent may resign at any time by giving written notice thereof to the Lenders and the Maker and may be removed at any time with cause by the Majority Lenders after written notice to Agent describing such cause and to the extent curable, providing for a reasonable opportunity to cure.  Upon any such resignation or removal, the Majority Lenders shall have the right to appoint a successor Agent. Upon the acceptance of any appointment as Agent hereunder by a successor Agent, such successor Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Agent, and the retiring Agent shall be discharged from its duties and obligations under this Note and the Mortgage. After any retiring Agent's resignation or removal hereunder as Agent, the provisions of this Section 12 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Agent under this Note and the Mortgage.

13.   **Miscellaneous.**

(a)    Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including telefacsimile communication and electronic communications via .PDF) and mailed, telecopied, or delivered at its address specified under its signature below; or in each case at such other address as shall be designated by Agent, any Lender or Maker.  All such notices and communications shall, when mailed, telecopied or sent by overnight courier, be

MBNF000055

effective when deposited in the mails, delivered to the overnight courier, as the case may be, or sent by telecopier, or when received if sent by electronic mail.

(b)     Maker agrees to indemnify Agent and each Lender against any losses, claims, damages and liabilities and related expenses, including counsel fees and expenses, incurred by Agent or any Lender arising out of or in connection with or as a result of the transactions contemplated by this Note.  In particular, Maker agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, of Agent and each Lender incurred in connection with the preparation, execution, delivery, enforcement, collection and administration of this Note, the documents and instruments referred to herein and any amendments, waivers or consents relating hereto or thereto.  In addition, Maker agrees to pay, and to save Agent and each Lender harmless from all liability for, any stamp or other documentary taxes which may be payable in connection with Maker's execution or delivery of this Note and the Mortgage.

(c)     In addition to and not in limitation of any rights of set off that Agent or any Lender may now or hereafter have under applicable law, Agent or such Lender, upon the occurrence of any Event of Default, is hereby authorized at any time or from time to time, without notice of any kind to Maker or to any other Person, any such notice being hereby expressly waived, to set off and to appropriate and apply any and all deposits (general or special, time or demand, provisional or final) and any other indebtedness at any time held or owing by Agent or such Lender or their respective affiliates to or for the credit or the account of Maker against and on account of the obligations and liabilities of Maker to Agent and/or any Lender under this Note and all other claims of any nature or description arising out of or connected with this Note, irrespective of whether or not Agent or any Lender shall have made any demand hereunder and although said obligations, liabilities or claims, or any of them, shall be contingent or unmatured.

(d)     No failure or delay on the part of Agent, any Lender or any other holder of this Note to exercise any right, power or privilege under this Note and no course of dealing between Maker, on the one hand, and Agent or any Lender, on the other hand, shall impair such right, power or privilege or operate as a waiver of any default or an acquiescence therein, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies expressly provided in this Note are cumulative to, and not exclusive of, any rights or remedies that Agent or any Lender would otherwise have.  No notice to or demand on Maker in any case shall entitle Maker to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of Agent or any Lender to any other or further action in any circumstances without notice or demand.

(e)     Maker and any endorser of this Note hereby consent to renewals and extensions of time at or after the maturity hereof, without notice, and hereby waive diligence, presentment, protest, demand and notice of every kind and, to the full

MBNF000056

extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.

(f)     **THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF MAKER AND AGENT AND EACH LENDER HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.**

(g)     **ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST MAKER ARISING OUT OF OR RELATING TO THIS NOTE MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE COMMONWEALTH OF PENNSYLVANIA OR THE STATE OF NEW YORK, AND BY EXECUTION AND DELIVERY OF THIS NOTE MAKER ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE NONEXCLUSIVE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS NOTE.**  Maker hereby agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested, to Maker at its address set forth below its signature hereto, such service being hereby acknowledged by Maker to be sufficient for personal jurisdiction in any action against Maker in any such court and to be otherwise effective and binding service in every respect.  Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Agent or any Lender to bring proceedings or enforce any award or judgment or exercise any rights against Maker or against the property of Maker in the courts of any other county, state or other foreign or domestic jurisdiction.

(h)     **MAKER, AGENT AND EACH LENDER HEREBY IRREVOCABLY AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS NOTE AND THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED.**  The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation contract claims, tort claims, breach of duty claims and all other common law and statutory claims.  Each of Maker, Agent and the Lenders (i) acknowledges that this waiver is a material inducement to enter into a business relationship, that each has already relied on this waiver in entering into this relationship, and that each will continue to rely on this waiver in their related future dealings and (ii) further warrants and represents that each has reviewed this waiver with its legal counsel and that each knowingly and voluntarily waives its jury trial rights following consultation with legal counsel.  **THIS WAIVER IS**

- 14 -

**IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS OF THIS NOTE.** In the event of litigation, this provision may be filed as a written consent to a trial by the court.

(i)     Maker hereby waives the benefit of any statute or rule of law or judicial decision, which would otherwise require that the provisions of this Note be construed or interpreted most strongly against the party responsible for the drafting thereof.

(j)     This Note shall be binding upon Maker and its successors and assigns, and shall inure to the benefit of Agent, each Lender and their respective successors and assigns, and may not be assigned by Agent or any Lender without the prior written consent of Maker; any such purported assignment without such consent being null and void. Maker may not assign any of its obligations under this Note without the prior written consent of Agent and each Lender, any such purported assignment without such consent being null and void.

(k)     Maker acknowledges that this Note and Maker's obligations under this Note to pay the principal of and interest on this Note at the place, at the respective times, and in the currency prescribed herein, are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker under this Note. This Note sets forth the entire agreement and understanding of Agent, each Lender and Maker with respect to the subject matter hereof, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Note or the obligations of Maker hereunder  or otherwise in any action or proceeding brought by Agent or any Lender to collect this Note, or any portion thereof.  Maker acknowledges that no oral or other agreements, conditions, promises, understandings, representations or warranties exist with respect to this Note or with respect to the obligations of Maker under this Note, except those specifically set forth in this Note.

(l)     The headings and captions of the numbered Sections of this Note are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof. All personal pronouns used in this Note shall include the other genders, whether used in the masculine, feminine or neuter gender, and the singular shall include the plural and vice versa, whenever and as often as may be appropriate.

(m)     This Note may not be modified, amended, changed or terminated orally, except by an agreement in writing signed by Maker, on the one hand, and Agent and each Lender, on the other hand. No waiver of any term, covenant or provision of this Note shall be effective unless given in writing by Agent and each

MBNF000058

Lender and, if so given by Agent and each Lender, shall only be effective in the specific instance in which given.

(n)     Each entity comprising Maker is accepting joint and several liability hereunder in consideration of the financial accommodations to be provided by Agent and each Lender evidenced by this Note, for the mutual benefit, directly and indirectly, of each entity comprising Maker and in consideration of the undertakings of the other entities comprising Maker to accept joint and several liability for the obligations evidenced by this Note.  If and to the extent that any entity comprising Maker shall fail to make any payment with respect to any of the obligations evidenced by this Note as and when due or to perform any such obligations in accordance with the terms thereof, then in each such event each other entity comprising Maker will make such payment with respect to, or perform, such obligations until such time as all of the obligations evidenced by this Note are paid in full.  The obligations of each entity comprising Maker under the provisions of this Section 13(n) constitute the absolute and unconditional, full recourse obligations of each entity comprising Maker enforceable against each entity comprising Maker to the full extent of its properties and assets, irrespective of the validity, regularity or enforceability of the provisions of this Note or any other circumstances whatsoever.  Except as otherwise expressly provided in this Note, each entity comprising Maker hereby waives notice of acceptance of its joint and several liability, notice of any Advances, notice of the occurrence of any Event of Default, or of any demand for any payment under this Note, notice of any action at any time taken or omitted by Agent or any Lender under or in respect of any of the obligations evidenced by this Note, any requirement of diligence or to mitigate damages and, generally, to the extent permitted by applicable law, all demands, notices and other formalities of every kind in connection with this Note.

(o)     The obligation of each Lender hereunder is several, and no Lender shall be responsible for the obligation of any other Lender hereunder.  Nothing contained in this Note and no action taken by the Lenders pursuant hereto shall be deemed to constitute the Lenders to be a partnership, an association, a joint venture or any other kind of entity.

14.     **Reference Agreements**.

(a) This Note is secured pursuant to the provisions of (a) that certain Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street I in favor of Agent, (b) that certain Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street II in favor of Agent, and (c) that certain Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street III in favor of Agent, in each case, as the same may be amended, supplemented or otherwise modified from time to time (each such mortgage and security agreement, individually and collectively, the "**Mortgage**").

(b) This Note and payment hereof are subject to and governed by the terms of the Subordination Agreement, the provisions of which are incorporated herein by this

MBNF000059

reference and made a part hereof. This Note is subordinate to, and payments of principal and any amounts due hereunder are deferred until payment in full of all amounts and obligations outstanding under, that certain Amended and Restated Demand and Secured Promissory Note dated as of the date hereof among Maker, the entities named on the signature pages thereto ("**First Lien Lenders**") and Paladin Healthcare Capital, LLC, as administrative agent for the First Lien Lenders (such Amended and Restated Demand and Secured Promissory Note, together with all extensions, renewals, replacements, restatements or modifications thereof being hereinafter referred to as the "**Senior Note**"). Anything contained in this Note to the contrary notwithstanding, in the event restrictions under the Subordination Agreement prevent payments of interest or principal hereunder, such payments will be deferred until such restrictions are removed or otherwise cease to exist, and such deferral will not constitute an Event of Default hereunder.

(c) Each Lender (i) acknowledges that it has received a copy of the Subordination Agreement, (ii) consents to the subordination of Liens provided for in the Subordination Agreement, (iii) agrees that it will be bound by and will take no actions contrary to the provisions of the Subordination Agreement and (iv) authorizes and instructs Agent to enter into the Subordination Agreement as Agent and on behalf of such Lender. The foregoing provisions are intended as an inducement to the First Lien Lenders to extend credit to Maker and such First Lien Lenders are intended third party beneficiaries of such provisions.

15. <u>**Confession of Judgment**</u>. **MAKER HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF RECORD OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA TO APPEAR FOR THE MAKER IN ANY SUCH COURT, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AFTER THE OCCURRENCE AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT UNDER THIS NOTE OR THE MORTGAGE, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST MAKER IN FAVOR OF THE AGENT OR ANY LENDER (OR THEIR SUCCESSORS OR ASSIGNS) OR ANY HOLDER OF THIS NOTE FOR ALL SUMS DUE OR TO BECOME DUE BY THE MAKER TO THE AGENT AND LENDERS UNDER THIS NOTE AND THE MORTGAGE, TOGETHER WITH COSTS OF SUIT AND RELEASE OF ERRORS, AND REASONABLE ATTORNEY'S FEES INCURRED BY AGENT OR ANY LENDER IN AN AMOUNT NOT LESS THAN 5% OF THE PRINCIPAL AMOUNT DUE BUT IN NO EVENT LESS THAN $5,000.00 AND MAKER ACKNOWLEDGES THAT ATTORNEYS' FEES ARE STATED TO BE FIVE PERCENT (5%) SOLELY FOR PURPOSES OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION AND AGREES THAT IN ENFORCING ANY SUCH JUDGMENT, NEITHER AGENT NOR ANY LENDER SHALL DEMAND, SOLELY WITH RESPECT TO ATTORNEY'S FEES INCURRED BY AGENT OR SUCH LENDER IN CONNECTION WITH SUCH INDEBTEDNESS AFTER SUCH JUDGMENT IS RENDERED, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF REASONABLE ATTORNEYS' FEES CHARGED OR BILLED TO**

MBNF000060

**AGENT OR SUCH LENDER (WHICH ATTORNEYS' FEES SHALL BE CHARGED OR BILLED TO THE AGENT OR SUCH LENDER AT THE STANDARD HOURLY RATES); AND FOR DOING SO THIS NOTE, OR A COPY HEREOF VERIFIED BY AFFIDAVIT OF AGENT OR SUCH LENDER OR AGENT'S OR SUCH LENDER'S ATTORNEY AS A TRUE AND CORRECT COPY OF THE ORIGINAL, SHALL BE SUFFICIENT WARRANT.  SUCH AUTHORITY AND POWER TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED BY ANY SINGLE EXERCISE THEREOF AND JUDGMENT MAY BE CONFESSED HEREUNDER AS AFORESAID ONE OR MORE TIMES, AND FROM TIME TO TIME, AS OFTEN AS THERE IS OCCASION THEREFOR.**

**UPON ENTRY OF JUDGMENT AGAINST MAKER AS PROVIDED HEREIN, AGENT MAY, WITHOUT ANY PRIOR NOTICE OR HEARING (EXCEPT AS MAY BE REQUIRED BY LAW) PROCEED TO EXECUTE ON ANY PROPERTY OF THE MAKER, REAL OR PERSONAL, IN PARTIAL OR COMPLETE SATISFACTION OF SUCH JUDGMENT, AND UPON ENTRY OF JUDGMENT BY CONFESSION, AS AFORESAID, A WRIT OF EXECUTION MAY ISSUE FORTHWITH WITHOUT ANY PRIOR NOTICE, HEARING OR OTHER PROCEEDINGS OF ANY KIND.  TO THE FULLEST EXTENT PERMITTED BY LAW, MAKER HEREBY WAIVES THE RIGHT TO STAY EXECUTION ON ANY JUDGMENT OBTAINED ON OR UNDER THIS NOTE OR THE MORTGAGE, BY CONFESSION OR OTHERWISE.**

**MAKER BY SIGNING THIS NOTE ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY LEGAL COUNSEL IN CONNECTION WITH THE EXECUTION OF THIS NOTE AND THAT IT HAS KNOWINGLY AND VOLUNTARILY WAIVED THE RIGHT TO NOTICE AND A HEARING BEFORE JUDGMENT MAY BE ENTERED BY CONFESSION ON THIS NOTE, AND BEFORE EXECUTION PROCEEDINGS THEREON MAY BE COMMENCED.**

[signature follows]

MBNF000061

**IN WITNESS WHEREOF**, Maker, the Lenders and Agent have caused this Note to be executed and delivered by their respective duly authorized officer as of the day and year and at the place first above written.

**MAKER:**

**BROAD STREET HEALTHCARE
PROPERTIES, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**BROAD STREET HEALTHCARE
PROPERTIES II, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**BROAD STREET HEALTHCARE
PROPERTIES III, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

Demand and Secured Promissory Note

**LENDERS**:

**LATHAM & WATKINS LLP**


By: _____
Name:  Suzzanne Uhland
Title:  Partner
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**


By: _____
Name:
Title:
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**


By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**


By: _____
Name:
Title:
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556


Demand and Secured Promissory Note

**LENDERS**:

**LATHAM & WATKINS LLP**

By: _____
Name:
Title:
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**

By: _____
Name: WILLIAM R. BRINKMAN
Title: PRINCIPAL
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES,
LLC**

By: _____
Name:
Title:
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556

Demand and Secured Promissory Note

**LENDERS**:

**LATHAM & WATKINS LLP**

By: _____
Name:
Title:
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**

By: _____
Name:
Title:
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**

By: _____
Name:
Title:
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556

Demand and Secured Promissory Note

**LENDERS**:

**LATHAM & WATKINS LLP**

By: _____
Name:
Title:
Address:
1271 Avenue of the Americas
New York, NY 10020

**JIGSAW ADVISORS, LLC**

By: _____
Name:
Title:
Address:
3581 Mt. Diablo Blvd., Suite 215
Lafayette, CA 94549

**PALADIN HEALTHCARE CAPITAL, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**SONSARA MANAGEMENT SERVICES, LLC**

By: _____
Name: Svetlana Attestatova
Title: President
Address:
1480 Moraga Rd, Suite C-179
Moraga, CA 94556

Demand and Secured Promissory Note

**AGENT**:

**PALADIN HEALTHCARE CAPITAL, LLC,**
as administrative agent

Name: Joel Freedman
Title:  Chief Executive Officer
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

Demand and Secured Promissory Note

MBNF000067

**SCHEDULE A**

**ADVANCES**

| Date | Lender Who Made Advance | Amount of Advance Made This Date | Amount of Principal Paid This Date | Outstanding Principal Balance This Date | Notation Made By |
|------|------------------------|----------------------------------|-----------------------------------|-----------------------------------------|------------------|
| October 28, 2021 | Latham & Watkins LLP | $389,726.75 | | $389,726.75 | |
| October 28, 2021 | Jigsaw Advisors, LLC | $145,388.85 | | $535,115.60 | |
| October 28, 2021 | Paladin Healthcare Capital, LLC | $93,093.32 | | $628,208.92 | |
| October 28, 2021 | Sonsara Management Services, LLC | $51,291.08 | | $679,500.00 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Schedule A to Demand and Secured Promissory Note

MBNF000068

## SCHEDULE B

## COMMERCIAL TORT CLAIMS

1.    Philadelphia Academic Health Holdings, LLC vs. Tenet Business Services Corporation, Case No. 2018-0684, Court of Chancery of the State of Delaware

2.    Philadelphia Academic Health Holdings, LLC et al. vs. Tenet Business Services Corporation, Case No. N19C-04-035-EMD-CCLD C.A. No. N19C-04-035-EMD-CCLD, Superior Court of the State of Delaware

MBNF000069