# Exhibit D

***Gordon Brothers' Loan Term Sheet***



## Summary of Indicative Terms and Conditions

The terms and conditions summarized in this term sheet are provided by Gordon Brothers Realty Services, LLC ("GBRS") for discussion purposes only and do not constitute an offer, agreement, or commitment to extend financing. The terms and conditions contained herein are subject to the satisfactory completion of due diligence, internal credit approvals, satisfactory review and execution of documentation, and such other conditions as may be required by GBRS and its counsel.

**Borrower or Company:** Broad Street Healthcare Properties, LLC; Broad Street Healthcare Properties II, LLC & Broad Street Healthcare Properties III, LLC

**Guarantor:** Philadelphia Academic Health Holdings, LLC ("Parent"), a direct parent company of the Borrower, will guaranty the credit facility on a limited basis with the recourse limited solely to its equity interests in the Borrower, which will be pledged to the Lender in support of Parent's guaranty obligations.

**Broker:** Trikuta Hills Inc.

**Lender:** GBRS or one of its affiliates

**Facility:** $17.5 million Term Loan (the "Term Loan") fully funded at close

**Interest and Other Reserves:** The Proceeds of the Facility less the amount earmarked for repayment of the secured notes issued by Borrower to Paladin Healthcare Capital, LLC, as agent (the "Paladin Notes") will be used to fund the carrying costs of the portfolio and other operating costs in such amounts and at such times as mutually agreed between Borrower and Lender, substantially consistent with the use of proceeds attached hereto as Exhibit A, subject to a mutually acceptable variance set forth in the definitive documentation, with a portion of the proceeds to be placed into an escrow account with the Lender as contemplated in Exhibit A. The escrow amounts will be released upon the repayment in full of the Term Loan facility (other than contingent indemnification obligations for which no claim has been asserted).

**Anticipated Closing Date:** The five weeks from the date of execution of this Summary of Indicative Terms and Conditions.

**Use of Proceeds:** Use of proceeds attached hereto as Exhibit A.

**Collateral:** First priority lien on the following sites located in Center City Philadelphia with the addresses and OPAs as follows:

| Property | Owner | Address | OPA |
|---|---|---|---|
| North Tower, South Tower | Broad Street Healthcare Properties, LLC | 222-248 N. Broad Street | 772025002 |
| (land next to SHSH Building) | Broad Street Healthcare Properties, LLC | 221-223 N. 15th Street | 772028498 |
| Stiles Alumni Hall Underground | Broad Street Healthcare Properties, LLC | 325 N. 15th Street | 881038202 |
| Martinelli Park | Broad Street Healthcare Properties II, LLC | 300-304 N. Broad Street | 885620242 |
| (redevelopment land/surface parking) (city block) | Broad Street Healthcare Properties III, LLC | 200-214 N. Broad Street | 885467862 |



| | | | | |
|---|---|---|---|---|
| | SHSH Building (city block) | Broad Street Healthcare Properties III, LLC | 201-219 N. 15th Street | 772028496 |

| | |
|---|---|
| | PHL Vine Development is the former Hahnemann University Hospital and contains 1.56 acres with two buildings; the North Tower is 20 stories built in 1978 and the South Tower is 12 stories constructed in 1928. The PHL Race Development contains a low-rise building and surface parking lot. Martinelli Park is 0.76 acres located on the Northwest corner of the intersection of Broad Street and Vine Street. |
| **Term:** | Fifteen (15) months from closing. Borrower will use commercially reasonable efforts to sell properties within the 15-month period and will work cooperatively with Lender to establish commercially reasonable milestones associated with such sale which will be set forth in the loan documents. Borrower may request to extend the maturity date up to six (6) months if any of the parcels comprising the Collateral are subject to a purchase agreement and no event of default exists at the time of such request, with a payment of an extension fee in the amount of the greater of $100,000 or 0.75% of the outstanding Term Loan Facility. |
| **Pricing:** | 90 Day SOFR (with a floor of 0.25%) + 9.50% (950 basis points) paid monthly |
| **Transaction Fees:** | 1.0% of the Term Loan Facility principal amount funded, fully earned and paid at closing and 1.0% of the outstanding Term Loan Facility principal amount fully earned at closing but paid at the time of each partial loan repayment with respect to the repaid principal amount. |
| **Ticking Fees:** | None |
| **Termination Fee:** | $200,000 shall be deposited with Lender and fully earned upon execution of Term Sheet (the "Termination Fee"). The Termination Fee shall be retained by Lender in the event the Borrower elects to terminate any discussions with the Lender to enter into definitive documentation substantially consistent with this Term Sheet within forty-five (45) days' following the execution of the Term Sheet; provided, however, if Lender fails to provide definitive documents substantially consistent with this Term Sheet within thirty (30) days from the execution of this Term Sheet, an amount equal to the Termination Fee less any actual out-of-pocket expenses of Lender, which are in excess of the deposit described below, will be returned to the Borrower. In the event that the Comfort Order is not entered on the Closing Date, the Termination Fee shall be held in escrow to support Borrower's indemnification obligations, and shall be released upon the repayment in full of the Term Loan facility (other than contingent indemnification obligations for which no claim has been asserted) or when the Comfort Order is entered into, whatever occurs first. |
| **Call Protection:** | First 12 Months: "Make-Whole" for 12 months. A make-whole is defined as the interest that would have been earned if the Term Loan was outstanding for twelve (12) months minus the interest actually paid to date.<br><br>Month 13 and beyond: None |
| **Payment Terms:** | Interest only payments due monthly. Prepayment in connection with any sale of Collateral, subject to agreed-upon prepayment percentages in the event of partial Collateral sales. |
| **Amortization and Excess Cash Flow capture:** | None |
| **Deposit:** | $75,000 to be deposited with Lender at execution of Term Sheet for the Lender's actual out-of-pocket expenses. Once utilized, the Borrower will provide, within 3 business days of a request, additional deposits (in $75,000 increments) as requested to reimburse the Lender for incremental actual out-of-pocket expenses. The Lender's estimate of its expenses in connection with the preparation of definitive documentation (including attorneys' fees and costs), assuming the closing date occurs as anticipated above and there is no litigation related to the Chapter 11 Cases is $150,000. If Borrower fails to provide additional deposits when due under this Term Sheet, Lender may terminate this Term Sheet and retain any portion of the Termination Fee necessary to reimburse it for such expenses incurred prior to termination. Any portion of the deposit not utilized will be returned to the Company upon Closing or at the Company's request (net of actual out-of-pocket expenses incurred to date). |



| | |
|---|---|
| **Loan to Value Threshold:** | Definitive documentation to include a covenant to provide that outstanding loan balance shall not exceed 35% of future Broker Opinion of Value or MAI appraisal obtained in the sole discretion and at the election of Borrower, whichever is higher. |
| **Transfers of Equity Interests in Borrower:** | None permitted without written approval by Lender |
| **Additional Debt:** | None permitted without written approval by Lender, including as approved by Lender pursuant to the definitive loan documents; it being understood that (i) the Paladin Notes and related liens granted by the Borrower prior to the execution of the Term Sheet (approximately $3.16 million as of October 28, 2021) shall be repaid from the loan proceeds, (ii) existing intercompany loans and liens the documentation for which has been provided to the Lender shall be permitted to remain outstanding on the terms and conditions satisfactory to the Lender in its sole discretion, and (iii) customary premium financing arrangements shall be permitted. |
| **Recourse** | Non-recourse except for bad boy and environmental carve-outs provided by Parent. In addition, the Lender agrees that the definitive loan documentation will not provide for the remedy of Confession of Judgement in Pennsylvania in connection with an event of default. |
| **Indemnity** | For the avoidance of doubt, Borrower shall use all commercially reasonable efforts to obtain a Comfort Order (as defined below). In the event that a Comfort Order is not obtained prior to closing, Borrower shall agree to indemnify Lender for any losses or costs associated with the *City Center Healthcare LLC* chapter 11 cases captioned 19-11466 (the "Chapter 11 Cases"). Such indemnification obligations shall be guaranteed by Parent under its limited recourse guaranty described above. |
| **Conditions Precedent**: | The Loan is subject to Lender's final satisfactory underwriting and due diligence of the Collateral and Borrower including, but not limited to, the following:<br>• Completion of business and legal due diligence<br>• In person visit to Philadelphia, PA and Collateral<br>• Completion and satisfactory review of a Phase I environmental study, and a Phase 2 if necessary<br>• Completion and satisfactory review of Borrower's financial condition<br>• Completion and satisfactory review of insurance<br>• Completion and satisfactory review of title<br>• Completion and satisfactory loan documentation customary for transactions of this type<br>• Completion and satisfactory review of MAI appraisal<br>• Satisfactory KYC reports<br>• Entry of an order of the Bankruptcy Court for the District of Delaware (in form and substance reasonably acceptable to Lender) that provides that the automatic stay does not prevent the sale, transfer, or other encumbrance of the Collateral (including actions in connection with imposing first priority liens and/or mortgages on the Collateral), or, in the alternative, lifting the automatic stay to permit the foregoing actions (the "Comfort Order"). If the Comfort Order is not obtained and Lender completes a satisfactory review of Parent's financials, limited guaranty of Borrower's indemnification obligations by Parent will be executed. |
| **Confidentiality:** | This letter is being transmitted to you with the express understanding that each of Lender and Borrower shall keep confidential its contents and the fact that it has been transmitted except that (i) the Lender and Borrower may share this letter with its agents, attorneys and other advisors and in all other instances only when Lender provides express written consent and (ii) the Borrower may disclose certain contents of this letter in pleading(s) filed with the Bankruptcy Court to obtain approval of the Comfort Order; provided that such pleadings shall be (a) provided by Latham & Watkins LLP (as counsel to the Borrower) to Katten Muchin Rosenman LLP (as counsel to the Lender) no later than three (3) business days before such pleadings are filed with the Bankruptcy Court and (b) in form and substance reasonably acceptable to Lender. |
| **Non-binding:** | This letter is an expression of interest and is not intended to constitute a binding obligation on the part of either party to consummate the transactions contemplated hereby. Except for the obligations set forth in the "Confidentiality," "Termination Fee," "Deposit" and "Non-binding" provisions (which obligations are binding and, except as otherwise provided, shall survive any termination of this letter), neither party shall have any liability or obligation whatsoever (including any obligation to negotiate in any particular manner) with respect to any aspect of the transactions contemplated by or any provision of this letter unless and until definitive agreements with respect thereto, containing detailed terms, conditions and covenants satisfactory to both parties in their sole |

discretion, have been executed and unconditionally delivered by both parties. No provision of this letter shall be interpreted as bestowing any rights whatsoever on any third party.

Sincerely,

**Gordon Brothers Realty Services, LLC**

By: ______________________
Kyle C. Shonak

**Title:** Managing Director

**AGREED & ACCEPTED**

**Broad Street Healthcare Properties, LLC**

By: ______________________
Joel Freedman

Title: CEO & President

**Broad Street Healthcare Properties II, LLC**

By: ______________________
Joel Freedman

Title: CEO & President

**Broad Street Healthcare Properties III, LLC**

By: ______________________
Joel Freedman

Title: CEO & President



**EXHIBIT A**
**Use of Proceeds**

| Sources and Uses (000s) | | | | |
|---|---|---|---|---|
| **Sources** | | **Uses** | | **Comments** |
| Senior Secured Loan | $ 17,500 | Financing Transaction Costs | $ 175 | Assumes 1% fees and costs |
| | | Operating Costs (excl. tax/ins) | 3,848 | Assumes management company run-rate & excludes insurance and taxes which are reserved for separately |
| | | Reserves (to be placed into escrow): | | |
| | | Interest Reserve | 2,133 | 15 months reserve assuming 9.75% cost of money |
| | | Tax Reserve | 1,108 | 15 months of reserve at current assessment |
| | | Tax Reserve - In dispute R/E Tax | 145 | Claim by City of Philadelphia received 9/30 and is indispute |
| | | Insurance Reserve | 1,336 | 15 months of reserve |
| | | Pension Reserve | 4,158 | 15 months of reserve with first payment ($581K in 1/22) and quarterly thereafter ($894K) through 1Q23 |
| | | Environmental Reserve | TBD | Amount to be determined |
| | | Repayment of Paladin Notes | 3,161 | Repaid concurrent with funding. Amount outstanding under the Paladin Notes as of Oct 28. |
| | | Working Capital | 1,436 | Residual amounts to be utilized for general working capital purposes. |
| **Total** | **$ 17,500** | **Total** | **$ 17,500** | |