**Exhibit A**

**Term Sheet**

## Summary of Indicative Terms and Conditions

## Loan to Broad Street Entities

The terms and conditions summarized in this term sheet ("**Term Sheet**") are provided by the Debtors[1] for discussion purposes only and do not constitute an offer, agreement, or commitment to extend financing. The terms and conditions contained herein are subject to satisfactory review and execution of definitive documentation (collectively, the "**Term Loan Documents**"), Bankruptcy Court Approval (as defined below), satisfaction of the Conditions (as defined below), and such other terms and conditions as may be reasonably required by the Lender and customary for loans of this type.

**Borrower or Company**: Broad Street Healthcare Properties, LLC; Broad Street Healthcare Properties II, LLC & Broad Street Healthcare Properties III, LLC (the "**Borrowers**")

**Broker**: None.

**Lender**: Philadelphia Academic Health System, LLC

**Facility**: $5.6 million term loan (the "**Term Loan**")

**Use of Loan Proceeds**: The proceeds of the Term Loan will be used to fund the budgeted (as reasonably agreed, in writing, by the Lender and Borrowers), documented direct operating/maintenance costs of the real estate owned by the Borrowers (the "**Operating Costs**"), and certain other costs of the Borrowers in such amounts, at such times and through such procedures as may be mutually agreed in writing by the Borrowers and the Lender. The Lender shall disburse proceeds of the Term Loan monthly to Newmark Knight Frank or such other third party property manager retained by the Borrowers and reasonably acceptable to the Lender (the "**Property Manager**"), which shall use such proceeds solely to pay budgeted and documented Operating Costs, as follows: (i) on a monthly basis, the Property Manager shall provide to the Lender reasonably detailed documentation, such as invoices, work orders, vendor proposals etc., that support the proposed Operating Costs; (ii) to the extent it has confirmed that such documentation is adequate and that the expenses at issue are consistent with the parties' budget, the Lender shall disburse the appropriate funds to the Property Manager; and (iii) the Property Manager shall promptly use such funds solely to pay the budgeted Operating Costs at issue and shall periodically, but no less often than every fifteen (15) calendar days, provide to the Lender written evidence, such as copies of negotiated checks or wire transfer confirmations, that it has used the monthly disbursements received from the Lender to pay the specific Operating Costs at issue. For the avoidance of doubt, the term "Operating Costs" shall include all direct operating/maintenance costs listed on the "Open Invoice List" prepared by the Property Manager,

---

[1] As used herein, the term "**Debtors**" means, collectively, Center City Healthcare, LLC, Philadelphia Academic Health System, LLC, St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, HPS of PA, L.L.C., SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., TPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., TPS IV of PA, L.L.C., and TPS V of PA, L.L.C.

provided by the Borrowers to, and approved by, the Lender prior to the execution of this Term Sheet.

**Funding**: The Debtors will seek expedited approval to fund $1.3 million (the "**Initial Funding**") pursuant to an order of the Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") under § 363 of the Bankruptcy Code (the "**Initial Court Order**"), which Initial Court Order shall be in form and substance reasonably acceptable to the Lender and Borrowers. The Debtors shall seek approval on regular notice to fund the remaining $4.3 million (the "**Subsequent Fundings**") pursuant to a second order of the Bankruptcy Court under § 363 of the Bankruptcy Code (the "**Second Court Order**"), which Second Court Order shall be in form and substance reasonably acceptable to the Lender and Borrowers.

**Collateral**: First priority liens on all real property and attendant fixtures of the Borrowers, which are as follows:

| Property | Owner | Address | OPA |
| --- | --- | --- | --- |
| North Tower, South Tower | Broad Street Healthcare Properties, LLC | 222-248 N. Broad Street | 772025002 |
| (Land next to SHSH Building) | Broad Street Healthcare Properties, LLC | 221-223 N. 15th Street | 772028498 |
| Stiles Alumni Hall Underground | Broad Street Healthcare Properties, LLC | 325 N. 15th Street | 881038202 |
| Martinelli Park | Broad Street Healthcare Properties II, LLC | 300-304 N. Broad Street | 885620242 |
| (redevelopment land/ surface parking) (city block) | Broad Street Healthcare Properties III, LLC | 200-214 N. Broad Street | 885467862 |
| SHSH Building (city block) | Broad Street Healthcare Properties III, LLC | 201-219 N. 15th Street | 772028496 |

**Term**: Nine (9) months from closing, subject to extension(s) in the sole and unfettered discretion of the Lender; *provided, however*, that upon the occurrence of the earlier of (i) the pending mediation among, among other persons, the Debtors, the MBNF Parties[2], and HSRE, under the auspices of The Honorable Kevin J. Carey (ret.) (the "**Mediation**") is terminated or deemed terminated, without settlement, pursuant to Local Rules 9019-5(f)(ii) and 9019(h) of the United States Bankruptcy Court for the District of Delaware (such date, the "**Mediation Termination Date**"), or (ii) six (6) months from closing if the Mediation has not resulted in a settlement, the Borrowers' real estate and related assets shall be marketed for sale in accordance with mutually acceptable procedures and milestones, which shall be set forth in the Term Loan Documents. Any disputes regarding such milestones or procedures shall be subject to mediation before Judge Carey. Notwithstanding anything to the contrary set forth above, the Borrowers and the Lender (in

---

[2] The term "**MBNF Parties**" means, collectively, Joel Freedman, Stella Freedman, Svetlana Attestatova, Kyle Schmidt, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, and Globe Health Foundation, Inc.

consultation with the Committee, Tenet and HSRE) shall, commencing upon the closing of the Term Loan, negotiate in good faith regarding the selection of a broker to market the Borrowers' real estate in accordance with the milestones and procedures contained in the Term Loan Documents, it being understood that such marketing shall not commence until the earlier of termination of the Mediation as set forth above or the six-month anniversary of the closing date if the Mediation has not been terminated or settled at such time, unless otherwise agreed by the parties.

**Pricing**: PIK at 5% per annum (the "**Base Rate**"). Upon default, interest shall be PIK at Base Rate plus 3%.

**Transaction Fees**: None

**Ticking Fees**: None

**Early Termination Fee**: None.

**Call Protection**: None.

**Payment Terms**: Interest only payments, paid in kind, compounding monthly. Repayment in connection with any sale of Collateral, with such sale to be on terms and conditions reasonably acceptable to Lender. The Borrowers shall not refinance the Term Loan, which shall be repaid or otherwise satisfied solely in accordance with a resolution reached through the Mediation or, absent such resolution, the sale of the Borrowers' real estate consistent with the provisions of this Term Sheet; provided, that no covenants or provisions of the Term Loan shall survive repayment in full of the Term Loan from the proceeds of Collateral. Notwithstanding any default, the Lender shall not take any action to foreclose on the Borrowers' real estate prior to the fifteen (15) month anniversary of closing on the Term Loan. Repayment obligations with respect to the Term loan shall not be subject to setoff, counterclaim, recoupment or deduction of any kind.

**Amortization and Excess Cash Flow capture**: None.

**Deposit**: None.

**Loan to Value Threshold**: n/a.

**Transfers of Equity Interests in any of Borrowers**: None permitted without prior written approval of the Lender.

**Additional Debt/Liens**: None permitted without prior written approval by the Lender; it being understood that (i) both Paladin Notes and any liens granted to Paladin as agent shall be fully subordinated to the Term Loan pursuant to inter-creditor and remedies standstill agreements, subject to a full reservation by the Debtors of all rights and remedies regarding the validity, enforceability and priority of such notes and liens, (ii) other existing intercompany loans, as listed on **Exhibit A** hereto, the documentation for which is provided to the Lender prior to the closing on the Term Loan, shall be permitted to remain outstanding on terms and conditions reasonably satisfactory to the Lender, and (iii) customary premium financing arrangements (on terms and conditions reasonably acceptable to Lender) shall be permitted. Notwithstanding the foregoing or

anything to the contrary contained in this Term Sheet, the lien currently held on some or all of the Collateral by the City of Philadelphia Water Revenue Bureau shall be unaffected by the Term Loan.

**Cash Covenants:** The Borrowers shall reserve their entire existing cash balance of $336,000 and shall not use such funds for any purpose without the express written consent of the Lender until the Mediation Termination Date.

**Recourse:** The Term Loan shall be non-recourse except for limited bad boy carve outs provided by Philadelphia Academic Health Holdings. In addition, the Lender agrees that the Term Loan Documents will not provide for the remedy of Confession of Judgement in Pennsylvania in connection with an event of default.

**Indemnity:** n/a

**Conditions Precedent**: The Initial Funding is subject to the following conditions (the "**Initial Conditions**"):

☐ Completion and satisfactory review of title

☐ Execution of satisfactory Term Loan Documentation customary for transactions of this type consisting of one or more promissory notes, mortgage(s), UCC fixture filings, UCC-1 financing statements, certificate of insurance naming the Lender as a loss payee, corporate authority certificates, resolutions, and inter-creditor and remedies standstill agreements

☐ Entry of an order of the Initial Court Order

The Subsequent Fundings are subject to the following condition (the "**Second Condition**"):

☐ Entry of the Second Court Order

**Confidentiality:** The Borrowers and Lender shall keep confidential the contents of this Term Sheet except that (i) the Borrowers and Debtors may share this Term Sheet with their agents, attorneys and other advisors (it being understood that neither Gordon Brothers, Trikuta Hills LLC nor any of their agents or affiliates falls into any of the foregoing categories) and in all other instances only when Lender provides express prior written consent and (ii) the Lender may disclose this Term Sheet to the Official Committee of Unsecured Creditors, HSRE, Tenet and Judge Carey and Judge Farnan in connection with the Mediation, and in pleading(s) filed with the Bankruptcy Court, which pleadings the Lender shall use commercially reasonable efforts to provide to Borrowers 24 hours prior to filing.

**Non-binding**: This Term Sheet is an expression of interest and is not intended to constitute a binding obligation on the part of either party to consummate the transactions contemplated hereby. No party hereunder shall have any liability or obligation whatsoever (including any obligation to negotiate in any particular manner) with respect to any aspect of the transactions contemplated by or any provision of this Term Sheet unless and until definitive agreements with respect thereto, containing detailed terms, conditions and covenants satisfactory to both parties in their sole

discretion, have been executed and unconditionally delivered by both parties. The parties understand and agree that time is of the essence with respect to the transactions described herein and the closing and funding thereof. No provision of this Term Sheet shall be interpreted as bestowing any rights whatsoever on any third party.

Dated: as of March 1, 2022

Sincerely,

**Debtors**

By: _____  3/2/22
    John DiNome, Authorized Representative

**AGREED AND ACCEPTED**

**Broad Street Healthcare Properties, LLC**

By: _____
    Joel Freedman, CEO & President

**Broad Street Healthcare Properties II, LLC**

By: _____
    Joel Freedman, CEO & President

**Broad Street Healthcare Properties III, LLC**

By: _____
    Joel Freedman, CEO & President

# Exhibit A

## Existing Intercompany Loans[3]

(i)     Subordinated Demand and Secured Promissory Note made by Broad Street Healthcare Properties LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC in favor of Front Street Healthcare Properties, LLC dated as of February 12, 2020 in the principal amount of $15,000,000. **Collateral**: liens on personalty.

(ii)    Amended and Restated Demand and Secured Promissory Note by and among Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC in favor of Paladin Healthcare Capital, LLC, as administrative agent for the lenders set forth on the signature pages thereto, and such lenders dated as of October 28, 2021 in the original principal amount of $2,500,000 and the mortgages entered into in connection therewith. **Collateral**: liens on Real Estate and personalty.

(iii)   Demand and Secured Promissory Note by and among Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC in favor of Paladin Healthcare Capital, LLC, as administrative agent for the lenders set forth on the signature pages thereto, and such lenders dated as of October 28, 2021 in the original principal amount of $3,000,000 and the mortgages entered into in connection therewith. **Collateral**: liens on Real Estate and personalty.

(iv)    Global Intercompany Note dated as of May 29, 2019 among the Borrowers and other non-Debtor MBNF entities. This note is unsecured.[4]

---

[3]     For the avoidance of doubt, the Debtors reserve all rights and remedies regarding the priority, validity, enforceability and avoidability of the loans and liens described on this Exhibit A.

[4]     The Borrowers shall, prior to the closing on the Term Loan, provide the Lender with the amounts due, if any, by the Borrowers under this Note and the entity(ies) to whom such amounts, if any, are owed.