## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) | |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) | Case No.:  19-11466 (MFW) |
| *et al*,[1] | ) | |
|  | ) | Jointly Administered |
| Debtors. | ) | |
|  | ) | Hearing: April 19, 2022 @ 10:30 a.m. |
|  | ) | Objections: April 1, 2022 @ 4:30 p.m. |

**MOTION OF SHAWANDA SMITH AND CHAMARR FANNING,
INDIVIDUALLY AND AS PARENTS AND NATURAL
GUARDIANS OF N.F., A MINOR, TO ALLOW LATE FILED
CLAIM AND FOR RELIEF FROM THE AUTOMATIC STAY**

Shawanda Smith and Chamarr Fanning, individually and as parents and natural

guardians of N.F., a minor ("Movants"), by and through their undersigned counsel, by way of

Motion to Allow Late Filed Claim and for Relief from the Automatic Stay (the "Motion"),

hereby state:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §1334(b).  This

is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C.

§1409(a).

2.      The statutory and legal basis for the relief sought is 11 U.S.C. §105(a) and 362(a),

and Federal Rules of Bankruptcy Procedure 3003(c) and 9006(b)(1).

---

[1]      The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are as follows:  Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associate, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), St. Chris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540) (the "Debtors").  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

## PRELIMINARY STATEMENT

3.      Movants seek leave to file late proofs of claim to allow them to assert their claims against the certain Debtors arising from the "accidental extubation" of their 12-month-old child on June 25, 2019, while in the care of St. Christopher's Healthcare LLC, d/b/a St. Christopher's Hospital for Children (the "Hospital").

4.      Although they were known creditors, Movants were not served with notice of the bar date. For this and other reasons set forth below, Movants should be permitted to file a late proof of claim.

5.       Further, Movants should be granted relief from the automatic stay to allow their Pennsylvania state court case to proceed for the purposes of permitting Movants to recover from any available insurance proceeds and liquidating Movants' claims for purposes of distribution in this Chapter 11 case.

## BACKGROUND

6.      On June 30 and July 1, 2019 (the "Petition Dates"), the Debtors filed petitions for relief under Chapter 11 of the United States Bankruptcy Code on in the United States Bankruptcy Court for the District of Delaware.

7.      On June 11, 2020, the Court entered an order (the "Bar Date Order") establishing August 5, 2020, as the bar date for filing proofs of claim (the "Bar Date"). D.I. 1666.  The Bar Date Order required that notice of the bar date (the "Bar Date Notice") be mailed via first class mail, along with a copy of the proof of claim form to ***"[a]ll parties known to the Debtors as having potential claims against the Debtors' estates as of the applicable Bar Date and their counsel (if known)".*** D.I. 1666 at 12 v. ¶ (emphasis added).

8.      The Bar Date Notice was served on June 11, 2020. D.I. 1666.  None of the

Movants are listed on the Affidavit of Service filed with respect to the Bar Date Notice (D.I.

1671).  Declaration of Kristi J. Doughty, Esquire ("Doughty Dec.") at ¶3.[2]

9.      As set forth in the accompanying Declaration of Bethany R. Nikitenko, Esquire

(the "Nikitenko Dec."), Movants' personal injury counsel, N.F. was admitted to the Hospital on

June 21, 2019, for a recurrent viral illness.  N.F. was experiencing persistent, rapid, shallow

breathing despite medical intervention which required N.F. to be transferred to the Intensive

Care Unit on June 23, 2019.  As a result of respiratory distress, N.F was intubated.  According to

the medical records, in the early morning hours of June 25, 2019, N.F. was "accidentally

extubated" and became hypotensive and bradycardic.  N.F.'s pulse was lost, and CPR was

performed for eight minutes with three rounds of epinephrine being administered before

spontaneous circulation returned.  On June 29, 2019, N.F. was noted to have seizure-like activity.

Several days later, an MRI of N.F.'s brain revealed subacute ischemia in the bilateral occipital,

parasagittal parietal, and posterior front cortex. Nikitenko Dec. at ¶4.

10.     The "accidental extubation" caused N.F. catastrophic personal injuries, including

brain damage, persistent respiratory problems, and severely delayed speech.  N.F. is now three

years old.  N.F. receives most nutrition through a gastrostomy tube.  N.F. has a home nurse seven

days per week from 10:00 p.m. through 6:00 a.m. to monitor N.F.'s breathing, provide

supplemental oxygen and administer supplemental nutrition. N.F. remains under the care and

treatment of a pediatrician, a pulmonologist, and a gastroenterologist.  N.F. was also referred to a

neurologist due to severely delayed speech. Nikitenko Dec. at ¶5.  The exact nature and extent of

---

[2]      The Movants were not listed on the Creditor Matrix or served with other pleadings and notices in
the case. *See* Doughty Dec. at ¶3.

N.F.'s neuropsychological injuries cannot be assessed because N.F. is too young to undergo a neuropsychological evaluation.

11.     The Debtors were aware at the time that the Bar Date Notice was served that Movants had "potential claims," as referenced in the Bar Date Notice. The Hospital sent a letter dated July 9, 2019, to N.F.'s mother, Ms. Smith, stating that "despite constant and committed efforts to provide and improve patient care, unanticipated events sometimes occur" and confirming that "an unanticipated event occurred with N.F. on June 25, 2019."  The Hospital sent Ms. Smith a second letter dated July 10, 2019, regarding an infection N.F. developed while in the Hospital. Nikitenko Dec. at ¶4 at Exhibit B thereto.

12.     On May 26, 2021, in order to preserve the statute of limitations and Movants' rights, Ms. Nikitenko filed a Writ of Summons (the "Writ of Summons") in the Court of Common Pleas, Philadelphia County (the "Pennsylvania Court"), captioned *Shawanda Smith & Chamarr Fanning as parents and natural guardians of N.F., a minor and Shawanda Smith and Chamarr Danning in their own right, v. Brett N. Perkins, R.N., Jessica Hegedus, CRT, St. Christopher's Healthcare, LLC d/b/a, St. Christopher's Hospital for Children, SCHC Pediatric Associates, LLC, Philadelphia Academic Health System, LLC and The American Academic Health System, LLC,* May Term, 2021, No. 02427 (the "State Court Action").  Nikitenko Dec. at ¶6.

13.     Prior to filing the Writ of Summons, Ms. Nikitenko contacted Gary Samms, Esquire, personal injury counsel for the Hospital in order to obtain clarification regarding the correct St. Christopher entities for purposes of filing suit.  By email dated March 15, 2021, Ms. Nikitenko provided Mr. Samms with a draft of the Writ of Summons for his review.  At no time

during their communications did Mr. Samms mention the Bar Date or need to file a Proof of

Claim. Nikitenko Dec. at ¶7 at Exhibit D.

14.     Since they were not served with the Bar Date Notice, Movants did not learn of the

Bar Date until after the defendants in the State Court Action filed a Suggestion of Bankruptcy.

Nikitenko Dec. at ¶7. As a result, Movants did not file a Proof of Claim before the expiration of

the Bar Date.

15.     Movants respectfully request that they be granted: (1) leave to file late proofs of

claim in the forms attached as Exhibit F to the Nikitenko Dec., have them deemed timely

submitted, and (2) relief from the automatic stay *nunc pro tunc* effective May 26, 2021.

16.     If the requested relief is not granted, Movants may be unable to obtain recovery

for catastrophic injuries suffered by the minor, N.F. due to N.F.'s "accidental extubation" while

being cared for in the Hospital.

## ARGUMENT

*A.     Movants Should Be Permitted to File Late Proofs of Claim Because They Were Not Served with the Bar Date Notice.*

17.     The Fifth Amendment to the Constitution provides that "[n]o person shall be …

deprived of life liberty or property without due process of law." U.S. Const. Amend. V.  Due

process requirements apply in bankruptcy proceedings. *In re Motors Liquidation,* 829 F.3d 135,

159 (2d Cir. 2016).  "The reorganization process is dependent on the proper notification to

creditors and other interested parties of all important steps in the proceeding so that they may

take such steps as necessary to safeguard their interests." *In re Weiand Automotive Industries*,

612 B.R. 824, 847-848 (Bankr. D. Del. 2020), quoting *In re Harbor Tank Storage Co.,* 385 F.2d

111, 115 (3d Cir. 1967).  "Notice must be 'reasonably calculated to reach all interested parties,

reasonably convey [ ] all required information, and permit [ ] a reasonable time for a response.'"

*In re Weiand,* 612 B.R. 824 at 848, quoting *In re Exide Techs.,* 600 B.R. 753, 763 (Bankr. D.

Del. 2019) (quoting *Chemetron Corp. v D. Jones,* 72 F.3d. 341, 346 (3d Cir. 1995).

18.    "Generally, legal claims are sufficient to constitute property such that a

deprivation would trigger due process scrutiny." *In re Motors Liquidation,* 829 F.3d at 159,

citing *Connecticut v. Doehr,* 501 U.S. 1, 12 (1991); *N.Y. State Nat'l Org. for Women v. Pataki,*

261 F.3d 156, 169-170 (2d Cir. 2001).

19.    "A claim is defined as (1) a right to payment (2) that arose before the filing of the

[bankruptcy] petition." *In re Motors Liquidation,* 829 F.3d at 156.

20.    "Due process and the Bankruptcy Rules entitle the creditor to adequate and

reasonable notice of bar dates." *In re First Magnus Financial Corp.,* 415 B.R. 416, 422 (Bankr.

D. Ariz. 2009).

21.    "[C]onstructive knowledge of a bankruptcy does not negate a creditor's right to

reasonable notice." *In re United Artists Theatre Co.,* 410 B.R. 385, 394 (Bankr. D. Del. 2009).

22.    "[E]ven creditors who have knowledge of a reorganization have a right to assume

that the statutory 'reasonable notice' will be given them before their claims are forever barred."

*City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S. Ct. 299, 301, 97 L. Ed.

333 (1953).  "The burden is on debtor to give formal notice.  A creditor who is not given notice,

even with actual knowledge of the case, does not have a duty to investigate and inject himself

into the proceedings." *In re First Magnus,* 415 B.R. at 423; *In re Circle K Corp.*, 198 B.R. 784,

789 (Bankr. D. Ariz. 1996), citing *In re Maya Constr. Company*, 78 F.3d. 1395, 1399 (9th Cir.

1996), *cert. denied*, 519 U.S. 862 (1996); *Joseph B. Dahlkemper Co. v. Liberatore (In re Joseph*

*B. Dahlkemper Co.),* 170 B.R. 853, 861 (Bankr. W.D. Pa. 1994) ("The responsibility does not lie

with creditors or claimants to search out what is required procedurally of them in this regard.

The bankruptcy rules provide them with a right to appropriate and effective notice"); *In re Arch Wireless, Inc.*, 534 F.3d 76, 83 (1st Cir. 2008) ("[T]he fact that the creditor may . . . be generally aware of the pending reorganization, does not itself impose upon him an affirmative burden to intervene in that matter and present his claim ...  [T]he creditor has a right to assume that proper and adequate notice will be provided before his claims are forever barred").

23.    When a creditor is deprived of its due process rights because of the debtor's failure to provide adequate notice of the bar date order, such creditor's claim is not discharged. *See e.g.  Ellis v. Westinghouse Electric Co.,* 11 F.4th 221, 237 (3d Cir. 2021) ("Any discharge of a late-filed administrative expense claim must comport with due process").

24.    A creditor is "known" if the debtor has either actual knowledge of the creditor's existence or if the creditor's identity can be ascertained through reasonably diligent efforts. *In re Trans world Airlines, Inc.,* 96 F.3d 687, 690 (3d Cir. 1996); *Chemetron Corp. v. Jones,* 72 F.3d 341, 347 (3d Cir. 1995).  The fact that there might be thousands of creditors does not lessen the debtor's duty to file a complete list. *In re First Magnus,* 96 F.3d 687 at 690.

25.    Movants in the case at bar were known creditors because as the letters it sent the Debtors clearly show, the Hospital was fully aware of the "unanticipated event" that caused N.F.'s catastrophic injuries.  As a result, the Debtors were required to notify them directly of both the bankruptcy and the Bar Date.

26.    Since Movants were not included on the Creditors' Matrix and they were not provided with notice of the Bar Date, they were denied due process.

27.    As a result, Movants should be granted leave to file a proof of claim that will be deemed timely.

**B.        *The Movants Should Be Permitted to File a Late Claim Due to Excusable Neglect.***

28.     Bankruptcy Rule 3003(c)(3) provides that the court may for cause shown extend the time within which proofs of claim may be filed. In addition, Bankruptcy Rule 9006(b)(1) allows for the acceptance of late-filed proofs of claim upon a showing of "excusable neglect."

29.     The determination of whether to permit a late filed claim is an equitable one, considering all relevant circumstances surrounding the party's failure to comply with the deadline. *See Chemetron*, 72 F.3d at 349; *In re Cendant Corp. Prides Litigation,* 223 F.3d 188, 196 (3d Cir. 2000); *In re Tribune Company,* 2013 WL 5966885, at *4 (Bankr. D. Del. 2013).

30.     The United States Supreme Court articulated the well-known excusable neglect standard in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship.*, 507 U.S. 380, 395 (1993), identifying four non-exclusive factors that bankruptcy courts should consider when determining whether to allow a late filing: (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

31.      In this case, granting Movants' leave to file a late proof of claim will not prejudice the Debtors and will not delay the progress of the case.

32.     No plan of reorganization has been confirmed, no distributions have been made and the claims objection process is ongoing.

33.     Further, to the extent there is inadequate insurance coverage, Movants will merely receive their *pro rata* share of the sums ultimately distributed to unsecured creditors. "Allowance of a late claim, in such circumstances, will generally merely result in a slightly different distribution of a liquidating debtor's assets.  Exactly how the debtor's assets are distributed is ultimately of little consequence to the debtor, so long as the claim is not filed so late as to disrupt the distribution process." *In re Cable & Wireless USA, Inc.,* 338 B.R. 609, 615

(Bankr. D. Del. 2006), citing *In re Sacred Heart Hospital of Norristown,* 186 B.R. 891, 897

(Bankr. E.D. Pa. 1995).  Reduced recovery by other creditors is not a consideration in evaluating

whether prejudice would result from the filing of a late claim. *In re Draw Another Circle, LLC*,

595 B.R. 174, 181 (Bankr. D. Del. 2018), citing *O'Brien Environmental Energy Inc.,* 188 F.3d

116 (3d Cir. 1999) at 126; *see also Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy &*

*Co.,),* 166 B.R. 799, 802 (S.D.N.Y. 1994) (depletion of resources otherwise available for timely

filed claims is not prejudicial).

34.     The Debtors failed to include Movants as creditors on their schedules and service

lists and did not provide Movants with the Bar Date Notice as required by the Bar Date Order,

despite their status as known creditors.  Thus, it is not Movants' fault that they did not file a

proof of claim before the deadline.

35.     Further, and most importantly, Movants would suffer extreme prejudice if they

are not permitted to assert their claims because N.F. has suffered catastrophic injuries because of

the "accidental extubation" while being treated at the Hospital.

36.     This Court has already entered orders allowing the filing of proof of claims by

personal injury claimants after the Bar Date.  For example, on September 22, 2021, this Court

entered an order granting the Motion to Allow Proof of Claim of Leslie Caldwell (the "Caldwell

Motion").  D.I. 2765.  The Caldwell Motion was filed on September 1, 2021, alleging that the

movant was injured during care and treatment at Hahnemann University Hospital and learned the

extent and alleged cause of the injuries on December 8, 2019, when she received an MRI. D.I.

2765 at 1.  The movant alleged that she did not recall receiving notice of the claims bar date and

did not communicate with her Pennsylvania counsel handling her personal injury matter prior to

the bar date. D.I. 2765 at 2.  Ms. Caldwell asserted that from March 2021 through May 2021, the

personal injury counsel made several attempts to communicate with opposing counsel, but received no responses. D.I. 2765 at 2.  This Court found good cause to grant the Caldwell Motion, deeming a proof of claim filed long after the Bar Date passed timely. D.I. 2861.

37.    Similarly, on December 20, 2021, this Court granted the Motion of Johnathan Carroll and Joseph Peraino, Administrator of the Estate of Augustine Peraino, for an Order Authorizing the Late Filing of a Proof of Claim (the "Carroll Motion"). *See* D.I. 3216 and Order D.I. 3333.  The Carroll Motion was filed on December 1, 2021 and alleged that both movants lacked notice of the Bar Date.  D.I. 3216.  Beginning on or about March 29, 2019, movant Carroll was a patient at Hahnemann University Hospital where he allegedly developed pressure ulcers to the left elbow and sacral.  From that time forward, movant Carroll was treated by the Debtors and other medical providers. D.I. 3216 at 3.  Movant Peraino was admitted to Hahnemann University Hospital on January 9, 2019 with a femur fracture. D.I. 3216 at 4.  On January 15, 2019, he died of cardiac arrest due to arrhythmia caused by the aspiration. D.I. 3216 at 4.  Movants alleged that one movant had no record or recollection of receiving any notice of the Debtors' bankruptcy case or Bar Date, and the other movant passed away before any notice was sent. D.I. 3216.  Also, the movants alleged that their personal injury counsel never received (a) a notice of the bankruptcy or (b) notice of the claims bar date until March 2021. D.I. 3216.  This Court granted the Carroll Motion and allowed the movants to file proofs of claim that would be deemed timely. *See* D.I. 3333

38.    For these reasons, Movants should be granted leave to file late proofs of claim.

*C.*       *Movants Should Be Granted Relief from the Automatic Stay.*

39.       Movants request that they be granted relief from the automatic stay to permit them to pursue available insurance coverage and to liquidate their claims for the purposes of distribution in these Chapter 11 cases.

40.       The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title." 11 U.S.C. § 362(a)(1).

41.       Pursuant to 11 U.S.C. § 362(d)(1), the automatic stay may be modified "for cause." "The party opposing stay relief has the ultimate burden of disproving the existence of 'cause,' *see* 11 U.S.C. § 362(g)(2), but the movant has the initial burden to show that 'cause' exists." *In re New York Medical Group, P.C.,* 265 B.R. 408, 412-413 (Bankr. S.D.N.Y 2001).

42.       "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

43.       "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." *In re Rexene Products*, 141 B.R. 574, 576 (Bankr. D. Del. 1992), *quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977).

44. There are several factors weighing strongly in favor of granting Movants relief from the automatic stay to allow their medical malpractice action to proceed against the Debtors to conclusion in the Pennsylvania Court.

45. First, the Movants' claims may not be tried in the bankruptcy court. *See* 28 U.S.C. §§ 157(b)(2)(B) and (b)(5)*; In re Todd Shipyards*, 92 B.R. 600, 604 (Bankr. D.N.J. 1988) (state court personal injury litigation allowed to proceed in light of 28 U.S.C. §157(b) (5)).

46. "If the bankruptcy court lacks jurisdiction to adjudicate a claim, relief from the automatic stay is required so that the claim can be adjudicated in a court that does have jurisdiction." *In re Nifong*, 2008 WL 2203149, at *4 (Bankr. M.D.N.C. May 27, 2008) (granting relief from stay as to personal injury claims).

47. In addition, the automatic stay should be lifted where the matter in dispute would be resolved more economically, conveniently, and quickly in a non-bankruptcy forum. *In re Gemini Equipment Business Trust*, 2005 WL 3050174, at * 4 (M.D. Pa. Nov. 14, 2005).

48. The Pennsylvania Court is the best forum for the adjudication of the Fanning Claim because (a) the claims will be governed by Pennsylvania law; (b) the events resulting in N.F.'s suffering and damages occurred in Pennsylvania, and (c) the witnesses and evidence are located in Pennsylvania.

49. In addition, it is well-settled that "debtors-defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for recovery against insurers, sureties or guarantors." *In re Wapotish*, 2009 WL 1916965, at *3 (Bankr. N.D. Ill. July 2, 2009), quoting *Int'l Bus. Machs. v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 736 (7th Cir. 1991); *see also In re*

*Tricare Rehabilitation Systems, Inc.*, 181 B.R. 569, 578 (Bankr. N.D. Ala. 1994); *In re Metzner*, 167 B.R. 414, 416-17 (E.D. La. 1994).

50.     "Where the claim is one covered by insurance or indemnity, continuation of the action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff ...  [and] the liquidation of a claim may be more conveniently and speedily determined by another forum." *2 Collier on Bankruptcy*, ¶362.07[3] (15th ed.) (footnotes omitted).

51.     On the other hand, if the automatic stay is not lifted, Movants will be unjustly forced to endure further delay or may be denied the ability to obtain redress altogether through recovery of available insurance proceeds and any available distributions to unsecured creditors.

52.     In *In re New York Medical Group, P.C.,* 265 B.R. 408 (Bankr. S.D.N.Y. 2001), the court found several factors favoring granting relief from the automatic stay that are equally applicable to this matter.  In that case, an action was filed by a patient who alleged that she was treated pre-petition by two physicians who failed to diagnose or treat her cancer.  Unaware of its pending bankruptcy proceedings, she filed a medical malpractice action against the medical group that had previously employed the two physicians seeking a judgment and recovery from the debtor's insurance policy.  The bankruptcy court granted stay relief, noting *inter alia* that: (1) "the state court action is already proceeding against the two employee-physicians;" (2) the "state court is the only forum that can award complete relief to all parties;" and (3) "in spite of the fact that the resolution of the litigation may affect distributions, the litigation itself will not interfere with the bankruptcy case." *Id*. at 414.

53.     Consequently, the Movants should be granted relief from the automatic stay *nunc pro tunc* effective May 26, 2021.

## **CONCLUSION**

For the foregoing reasons, Movants request that the Court enter an Order granting their

motion and for such other and further relief as the Court may deem just and equitable.


Dated:  March  7, 2022

Respectfully submitted,

SCHNADER  HARRISON  SEGAL
& LEWIS, LLP

/s/ Kristi J. Doughty_____
Richard A. Barkasy, Esq. (#4683)
Kristi J. Doughty, Esq. (#3826)
824 N. Market Street
Suite 800
Wilmington, DE  19801
(302) 482-4038
kdoughty@schnader.com

*Attorneys for* of  Shawanda Smith
and Chamarr Fanning Individually,
and as Guardians of N.F., a minor