## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Objection Deadline: March 29, 2022 at 4:00 p.m. (ET)** |
| | ) **Hearing Date: April 19, 2022 at 10:30 a.m. (ET)** |
| | ) |

### MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND ERNST & YOUNG LLP AND ERNST & YOUNG U. S. LLP

Center City Healthcare, LLC d/b/a Hahnemann University Hospital and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby move this Court (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("the "**Bankruptcy Rules**"), approving the Settlement Agreement, a copy of which is attached to the Proposed Order as **Exhibit 1** (the "**Settlement Agreement**") between the Debtors and Ernst & Young LLP and Ernst & Young U. S. LLP (collectively, "**EY**"). In support of this Motion, the Debtors rely upon the *Declaration of Allen Wilen in Support of Motion of the Debtors for Entry of an Order Approving Settlement*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).

*Agreement between the Debtors and Ernst & Young LLP and Ernst & Young U. S. LLP* attached hereto as **Exhibit B**, and respectfully state as follows:

**Jurisdiction and Venue**

1.     The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2.     This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory bases for the relief sought herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

5.     On June 30 or July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

39548272.1 03/15/2022

6. A description of the Debtors' businesses and the reasons for commencing these Chapter 11 Cases are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2].

7. Prior to the Petition Date, on March 14, 2017, EY entered into an agreement (the "**Agreement**") with non-debtor Paladin Healthcare Capital, LLC ("**Paladin**") to provide certain services related to the proposed transaction (the "**Project Liberty Transaction**") pursuant to which the Debtors would eventually acquire, *inter alia*, their hospital businesses and certain entities controlled by Joel Freedman and certain entities controlled by affiliates of Harrison Street Real Estate Capital LLC acquired certain real estate from Tenet Business Services Corporation and certain of its affiliates (collectively, "**Tenet**"). The Project Liberty Transaction closed on January 11, 2018.

8. Between March 14, 2017 and October 16, 2017, EY issued Paladin several "Statements of Work" related to the Agreement which detail the services to be provided by EY.

9. On May 1, 2018 and November 13, 2018, EY and Paladin entered into additional Statements of Work, which identifies the Debtors as "affiliates" of Paladin and purported to expand EY's services.

10. Consistent with the Agreement and certain of the statements of work noted above, EY issued the following invoices to Paladin (collectively, the "**Pre-Closing Services Invoices**"):

| Invoice No. | Date | Amount |
|---|---|---|
| US0131902840 | 11/8/17 | $145,000 |
| US0131903912 | 11/9/17 | $245,000 |
| US0131932961 | 12/20/17 | $20,000 |
| US0131972653 | 2/14/18 | $166,000 |

11. Each of the Pre-Closing Services Invoices were paid by the Debtors by wire transfer on February 20, 2018 (the "**Wire Transfer**").

39548272.1 03/15/2022

12.     On June 20, 2018, EY issued invoice number US0132079086 to non-debtor Philadelphia Academic Health Holdings LLC ("**PAHH**") in the amount of $147,453 (the "**Working Capital Adjustment Invoice**"); which services relate to a working capital adjustment dispute with Tenet related to the Project Liberty Transaction.

13.     The Working Capital Adjustment Invoice was paid by the Debtors by check number 25201, which check cleared on December 5, 2018 (the "**Working Capital Adjustment Transfer**").

14.     On November 8, 2018 and January 1, 2019, EY issued invoice numbers US0132175641 and US0132210141, respectively, to non-debtor American Academic Health System, LLC ("**AAHS**"), each in the amount of $125,030 (the "**PAHH Audit Invoices,**" collectively with Pre-Closing Services Invoices and the Working Capital Adjustment Invoice, the "**Invoices**") for services related to a 2018 audit of non-debtor PAHH.

15.     The Debtors paid the full amount of the PAHH Audit Invoices by check numbers 29662 and 31991 which checks cleared on January 28, 2019 and March 18, 2019, respectively (collectively with the Wire Transfer and the Working Capital Adjustment Transfer, the "**Transfers**").

16.     On October 21, 2021, the Debtors sent a demand/settlement letter to EY asserting that the Transfers were constructive fraudulent conveyances pursuant to section 548 of the Bankruptcy Code (the "**Alleged Claims**").

17.     EY disputes that the Transfers were constructive fraudulent transfers under Section 548 of the Bankruptcy Code and otherwise asserts certain defenses to the Alleged Claims.

18.    The Debtors and EY have engaged in good faith, arms-length negotiations in an attempt to resolve the Debtors' Alleged Claims.

19.    Subject to Court approval, the Debtors and EY now desire to resolve the Alleged Claims without the time, expense and uncertainty attendant with litigation over such issues on the terms set forth in the Settlement Agreement.

20.    The Settlement Agreement provides, generally, that:[2]

- EY shall pay the Debtors Four Hundred Ninety-Thousand Dollars ($490,000.00) (the "**Settlement Payment**").

- Subject to the Court approval of the Settlement Agreement by Final Order (as defined in the Settlement Agreement) and the Debtors receipt of the Settlement Payment, the Debtors will (a) release and discharge EY from any and all claims and (b) release and discharge EY's Representatives,[3] Ernst & Young Global Ltd. (and all of its member firms) and Ernst & Young Global Services and their Representatives from any and all claims relating to the Transfers and the Invoices.

- Subject to Court approval of the Settlement Agreement by Final Order, EY will (a) release and discharge the Debtors and the Debtors' estates from any and all claims and (b) release and discharge the Debtors' Representatives from any and all claims relating the Transfers, the Invoices, payment of the Settlement Amount, and the payment or reimbursement for the services related to the Invoices.

- Subject to Court approval of the Settlement Agreement by Final Order, EY will release and discharge the MBNF Parties[4] from any and all claims relating to the Transfers, the Invoices, payment of the Settlement Amount and the payment or reimbursement for the services related to the Invoices.

---

[2]    This description of the Settlement Agreement is meant only to be a summary of the key provisions of the Settlement Agreement. To the extent there is any inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall control.

[3]    The term "Representatives" is defined in the Settlement Agreement as "a person's or an entities' current and former members, partners, principals, owners, parent companies, subsidiaries, affiliates, officers, directors, agents, employees, representatives, attorneys, administrators, retained professionals, independent contractors, predecessors, insurers, successors and assigns."

[4]    The "MBNF Parties" are Joel Freedman, Stella Freedman, Svetlana Attestatova, Kyle Schmidt, MBNF Investments, LLC, AAHS, PAHH, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin, Paladin Healthcare Management, LLC, Paladin Capital and Globe Health Foundation, Inc.

## RELIEF REQUESTED

21.    By this Motion, the Debtors seek the entry of an Order, pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(a), substantially in the form of the Proposed Order, (i) approving the Settlement Agreement and (ii) granting such other and further relief as this Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

22.    Bankruptcy Code section 105(a) provides, in pertinent part, that "the court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  *See* 11 U.S.C. § 105(a).  In addition, Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

23.    Settlements and compromises are "a normal part" of the chapter 11 process. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  Indeed, "compromises are favored in bankruptcy" because they minimize litigation and expedite the administration of a bankruptcy estate.  *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Key3Media Group, Inc.*, No. 03–10323 (MFW), 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).

24.    In considering a Bankruptcy Rule 9019(a) motion, a court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  *E.g.*, *Martin*, 91 F.3d at 393.  Assessing this balance includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."
*Id*.; *see also In re Nutraquest, Inc.*, 434 F.3d 639, 644-45 (3d Cir. 2006).

25. Notably, in determining whether to approve a proposed settlement, courts should not determine whether the debtor is getting the best possible settlement, but rather whether the compromise is reasonable. *See In re Integrated Health Services, Inc.*, Case No. 00-398 (MFW), 2001 WL 1820426, at *2 (Bankr. D. Del. Jan. 3, 2001) (explaining that in approving a settlement, a court is not to determine that the settlement is the best that can be achieved by the debtor but "rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness'").

26. Moreover, when deciding whether to approve a compromise, a court will normally accept the judgment of the movant as long as a legitimate business justification exists. *E.g.*, *Martin*, 91 F.3d at 395; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 250 (D. Del. 1998); *see also In re Penn Central Transportation Co.*, 347 F. Supp. 1351, 1353 (E.D. Pa. 1972) (approving settlement agreement as reflection of business judgment). Once a debtor has articulated a valid business justification for a settlement, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

27. Applying the foregoing standards to the present case, the Debtors have concluded, in a proper exercise of their business judgment, that the agreement embodied in the Settlement Agreement is fair, reasonable and in the best interests of their estates and creditors. The Settlement Agreement also satisfies the *Martin* factors set forth above.

28.     First, the factor of "probability of success in litigation" is satisfied in the present case.  While the Debtors feel strongly that they would ultimate prevail in any litigation regarding the Alleged Claims, the outcome of litigation is never certain and the compromise set forth in the Settlement Agreement is an appropriate resolution of the Alleged Claims, taking into account the defenses asserted by EY, including EY's assertions (which are disputed by the Debtors) that (a) the Debtors were not insolvent or inadequately capitalized at the time of the Transfers and (b) the Debtors received reasonably equivalent value in exchange for the Transfers.

29.     Next, the third *Martin* factor[5] is clearly met in the present case.  The Alleged Claims implicate issues of insolvency, inadequate capitalization and reasonably equivalent value, all of which are factually and legally complex.  The complexity of these issues is reflected in the Settlement Agreement.  Further, the costs and delay associated with litigation are appropriately accounted for in the compromise of the Alleged Claims.

30.     Lastly, the fourth *Martin* factor - i.e. the paramount interest of the Debtors' creditors - is satisfied in the present case.  The Debtors' creditors will clearly benefit from the prompt payment of the Settlement Payment without further costs and delay.

31.     Based upon the foregoing, there can be no question that the settlement embodied in the Settlement Agreement does not "fall below the lowest point in the range of reasonableness."  *Integrated Health*, 2001 WL 1820426, at *2 (*quoting Cosoff v. Rodman (In re WW.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)).  The Settlement Agreement is the result of substantial good faith, arm's length negotiations between the Debtors and EY and constitutes a reasonable exercise of the Debtors' business judgment.  Accordingly, this Court should exercise its discretion and approve the Settlement Agreement.

---

[5]     The second *Martin* factor – i.e. the likely difficulty in collection – does not appear to be an issue with EY.

39548272.1 03/15/2022

## **NOTICE**

32.     Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the Official Committee of Unsecured Creditors; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; (xii) counsel to EY; and (xiii)  any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[remainder of page left intentionally blank]

39548272.1 03/15/2022

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A,** granting the Motion, approving the Settlement Agreement, and granting such other and further relief as is just and proper.

Dated: March 15, 2022

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Mark Minuti*

Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6840
Fax: (302) 421-6813
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com

*Counsel for Debtors and Debtors in Possession*

39548272.1 03/15/2022