## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, | ) |
| *et al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Objection Deadline: April 6, 2022 at 4:00 p.m. (EST)** |
| | ) **Hearing Date: April 19, 2022 at 10:30 a.m. (ET)** |
| | ) |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING SETTLEMENT CONTESTED MATTER WITH WILLIAM HAGANS

By this motion (this "Motion"), Philadelphia Academic Health Systems, LLC ("PAHS") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") seek the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking approval of the Confidential Settlement Agreement and General Release dated March 9, 2022, a copy of which is attached to the Proposed Order as Exhibit 1 (the "Settlement Agreement").[2]  As discussed in greater detail herein, the settlement described in the Settlement Agreement (the "Settlement") resolves the Charge (as defined below) and any claims and causes of action related thereto.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).   The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

[2] While the title of the Settlement Agreement includes the word "Confidential," paragraph 10 of the Settlement Agreement permits the Debtors to attach an unredacted copy of the Settlement Agreement to this Motion.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief requested by this Motion are Bankruptcy Rule 9019 and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

**A.    General Background**

4.    On June 30 and July 1, 2019 (collectively, the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of an examiner in these Chapter 11 Cases.  On July 15, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al.* [D.I. 182] (the "Committee").

5.      A description of the Debtors' businesses and the reasons for commencing these Chapter 11 Cases is set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2].

**B.      The Charge**

6.      William Hagans ("Hagans") was an employee of PAHS until on or about August 23, 2019, when PAHS terminated Hagans' employment.

7.      On or about February 14, 2020, Hagans filed a Charge of Discrimination with the Equal Employment Opportunity Commission, No. 530-2020-03052 (the "Charge") against PAHS and their non-debtor affiliate, American Academic Health System, LLC ("AAHS"). PAHS and AAHS denied and continue to deny the allegations set forth in the Charge.

**C.      The Settlement**

8.      Notwithstanding the fact that the Debtors deny any and all liability with respect to the Charge, in an effort to resolve the Charge, PAHS and Hagans (together, the "Parties") have, following extensive arms-length negotiations and subject to Court approval, agreed to the terms of the Settlement.

9.      A description of the Settlement is as follows:[3]

- In consideration for the execution of the Settlement Agreement, and in full resolution of the Charge and any and all claims related thereto, PAHS has agreed to pay Hagans[4] the sum of Fifty Thousand Dollars ($50,000.00) (the "Settlement Payment") within fifteen (15) calendar days following the Effective Date (as defined in the Settlement), in the following manner:

---

[3]   The description of the Settlement in this Motion is only a summary.  The Settlement controls in all instances to the extent the summary is incomplete, inaccurate or conflicts with the Settlement.  Capitalized terms used but not defined in this section shall have the meanings ascribed to them in the Settlement.

[4]   "Hagans" is defined in the Settlement Agreement as William Hagans and his heirs, executors, administrators, successors, and assigns.

39781954.2 03/23/2022

> o One wire transfer in the gross amount of Sixteen Thousand Two Hundred Fifty Dollars ($16,250.00) to Hagans for settlement of his alleged wage damages;
>
> o One wire transfer in the gross amount of Sixteen Thousand Two Hundred Fifty Dollars ($16,250.00) to Hagans for settlement of his alleged non-wage damages; and
>
> o One check in the gross amount of Seventeen Thousand Five Hundred Dollars ($17,500.00) to Murphy Law Group, LLC for attorneys' fees.

- Hagans has agreed to release and forever discharge the Debtors and AAHS and each of their respective parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their official capacities (collectively, the "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Hagans has or may have against the Releasees as of the date of execution of the Settlement Agreement, including the Charge and any claims related thereto.

## RELIEF REQUESTED

10.     By this Motion, the Debtors request the entry of an order, substantially in the form of the Proposed Order, approving the Settlement Agreement pursuant to Bankruptcy Rule 9019(a).

## BASIS FOR RELIEF

11.     Section 105(a) provides, in pertinent part, that "[t]he court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  In turn, Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

12.     Settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *See In re Penn Cent. Transp. Co.*, 596 F.2d 1127, 1146 (3d Cir. 1979); *In re Sassalos*, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are

favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise … rests in the sound discretion of the judge").  The United States Supreme Court has recognized that "in administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts."  *In re Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see In re Penn Cent. Transp. Co.,* 596 F.2d at 1146.  The district court, as the intermediate bankruptcy appellate court, "has described the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'"  *In re Marvel Entertainment Group, Inc*., 222 B.R. 243, 249 (D. Del. 1998), *quoting In re Louise's, Inc*., 211 B.R. 798, 801 (D. Del. 1997).  Bankruptcy Rule 9019 thus empowers this Court to approve compromises and settlements if they are in the "best interest[s] of the estate."  *In re Marvel Entertainment Group*, 222 B.R. at 249 (holding that proposed settlement was in the best interest of the estate); s*ee In the Matter of Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir. 1989).

13.    In determining whether to approve a motion or application to settle a controversy, a Bankruptcy Court must determine whether it is fair, reasonable and adequate by examining the following four factors: (i) the probability of success in the litigation; (ii) the complexity, expense and likely duration of the litigation; (iii) all other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and (iv) whether the proposed compromise is fair and equitable to the debtors, their creditors, and other parties in interest.  *See TMT Trailer Ferry, Inc.,* 390 U.S. at 424; *In re Martin*, 91 F.3d 389, 393 (3d. Cir. 1996) (stating that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy" and citing the criteria set forth above in determination

of reasonableness of particular settlements) (internal quotation marks and citation omitted); *In re Penn Cent. Transp. Co.*, 596 F.2d at 1114 (relevant factor is whether "[t]he settlement is well within the range of reasonably likely litigation possibilities") (internal quotation marks and citation omitted).

14.     Basic to the process of evaluating proposed settlements, then, is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry, Inc.*, 390 U.S. at 425.  However, "[t]he court need not decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to determine whether the settlement falls above the lowest point in the range of reasonableness." *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010); *see also In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotation marks omitted).

15.     In the present case, the Debtors submit that the Settlement satisfies the aforementioned factors and considerations.  First, although the Debtors (and AAHS) dispute the merits and validity of the Charge, if the Debtors were required to litigate the Charge and any additional claims related thereto, the probability of success in defending against the Charge would be uncertain and the Debtors would be exposed to the significant risk of being obligated to pay any and all asserted damages to Hagans.  In exchange for complete elimination of that risk, the Settlement provides for payment of the Settlement Payment to Hagans, fully resolving the matter and relieving the Debtors from potential additional exposure.

39781954.2 03/23/2022

16.     Second, the Action involves complex facts and legal issues that would be costly to litigate.  Accordingly, the Settlement benefits the Debtors' estates and creditors by avoiding such complex and costly litigation.

17.     Finally, the Settlement is the result of substantial, good faith, arms-length negotiations between the Parties.  The Debtors believe that the settlement appropriately takes into account the risks, expense and delay of further litigating the Charge, and is fair and reasonable based on the facts and issues contemplated by the Charge.

18.     In sum, the Debtors believe that the interests of creditors will be served by approval of the Settlement, and that the Settlement represents a compromise that is the best possible outcome for the Debtors' estates.  Accordingly, the Debtors respectfully submit that the Motion should be granted.

## NOTICE

19.     Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the Committee; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; (xii) counsel to Hagans; and (xiii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request the entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: March 23, 2022

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Monique B. DiSabatino*
    Mark Minuti (DE Bar No. 2659)
    Monique B. DiSabatino (DE Bar No. 6027)
    1201 N. Market Street, Suite 2300
    P.O. Box 1266
    Wilmington, DE 19899
    Telephone: (302) 421-6840
    Fax: (302) 421-5873
    mark.minuti@saul.com
    monique.disabatino@saul.com

        -and-

    Jeffrey C. Hampton
    Adam H. Isenberg
    Centre Square West
    1500 Market Street, 38th Floor
    Philadelphia, PA 19102
    Telephone: (215) 972-7777
    Fax: (215) 972-7725
    jeffrey.hampton@saul.com
    adam.isenberg@saul.com

    *Counsel for Debtors and Debtors in Possession*