## EXHIBIT A

## PROPOSED ORDER

39781954.2 03/23/2022

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* | ) |
| *al*.,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Related to Docket No. _____** |
| | ) |

**ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE APPROVING SETTLEMENT WITH WILLIAM HAGANS**

Upon the motion (the "Motion")[2] of the above-captioned Debtors for entry of an order,

pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, approving the

Settlement between the Parties; and the Court having jurisdiction to consider the Motion and the

relief requested therein; and due and sufficient notice of the Motion having been given; and upon

the record herein and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement annexed hereto as **Exhibit 1** is hereby APPROVED.

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

[2]     Any and all capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

2

3.      This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

39781954.2 03/23/2022

**EXHIBIT 1**

**Settlement Agreement**

39781954.2 03/23/2022

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release ("**Agreement**") is made and entered into by and between William Hagans, including his heirs, executors, administrators, successors, and assigns (collectively referred to as "**Hagans**") and Philadelphia Academic Health Systems, LLC ("**PAHS**") (together, Hagans and PAHS are referred to as the "**Parties**").

WHEREAS, on June 30 and July 1, 2019 (collectively, the "Petition Date"), PAHS and certain of its affiliates (together, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**");

WHEREAS, the Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, PAHS terminated Hagans' employment on or about August 23, 2019;

WHEREAS, on or about February 14, 2020, Hagans filed a Charge of Discrimination with the Equal Employment Opportunity Commission, No. 530-2020-03052 (the "**Charge**"), against PAHS and American Academic Health Systems, LLC ("**AAHS**");

WHEREAS, PAHS and AAHS have denied and continue to deny the allegations set forth in the Charge; and

WHEREAS, in exchange for Hagans entering into this Agreement, and in full resolution of the Charge and any and all claims related thereto, PAHS has agreed to provide Hagans consideration to which he would not otherwise be entitled under contract, policy, or law, such consideration to be outlined herein.

NOW, WHEREFORE, in consideration of the covenants, promises, and agreements contained herein, and intending to be legally bound hereby, the Parties agree as follows:

1.      **Effective Date.**  This Agreement is subject to and conditioned upon the entry of a final, non-appealable order of the Court approving this Agreement (the "**Effective Date**").  In the event that the Effective Date does not occur, this Agreement shall be deemed null and void and of no force or effect.  In such event, nothing (including the Recitals) contained in this Agreement, any motion or certification filed seeking an order from the Court approving this Agreement, or any correspondence or other communications related to the negotiations, drafting, or approval of this Agreement, shall be argued or deemed to be an admission against any Party's interest in any litigation by and between any parties, and the Parties shall be automatically returned to their respective positions *status quo ante*.

2.      **Settlement Payment.**  In consideration for the execution of this Agreement, and the promises contained herein, and in full resolution of the Charge and any and all claims related thereto, PAHS agrees to pay Hagans the sum of Fifty Thousand Dollars ($50,000.00) (the "**Settlement Payment**"), within fifteen (15) calendar days following the Effective Date, in the following manner:

a.      One wire transfer in the gross amount of Sixteen Thousand Two Hundred Fifty Dollars ($16,250.00) to Hagans for settlement of his alleged wage damages. PAHS shall issue Hagans an IRS Form 1099 for this amount;

b.      One wire transfer in the gross amount of Sixteen Thousand Two Hundred Fifty Dollars ($16,250.00) to Hagans for settlement of his alleged non-wage damages.  PAHS shall issue Hagans an IRS Form 1099 for this amount; and

c.      One check in the gross amount of Seventeen Thousand Five Hundred Dollars ($17,500.00) to Murphy Law Group, LLC for attorneys' fees.  PAHS shall issue both Hagans and Murphy Law Group, LLC IRS Form 1099s for this amount.

**3.    Time for Review and Revocation Period.**  By signing this Agreement, Hagans represents and warrants that he has been given at least twenty-one (21) calendar days to consider the terms of this Agreement and consult with his attorney concerning the same.  Hagans may sign this Agreement sooner if desired, but by doing so thereby waives any continuing right to a review period.  Any changes to this Agreement, whether material or immaterial, do not restart the running of the twenty-one (21) day review period.

Hagans further understands that he has seven (7) calendar days from the date of signing this Agreement (the "Revocation Period) to revoke this Agreement (including all releases set out herein) by delivering notice of revocation to PAHS' counsel, Carolyn Pellegrini, at carolyn.pellegrini@saul.com.  After the passage of the Revocation Period, the terms of this Agreement shall become irrevocable.

**4.    Court Approval**.  The Parties acknowledge that this Agreement is subject to Court approval.  Within five (5) business days after satisfaction of the following conditions, the Debtors shall file a motion (the "**9019 Motion**") with the Court for entry of an Order approving the terms of this Agreement:  (i) the expiration of the Revocation Period as described in Paragraph 3, (ii) PAHS' receipt of executed IRS Form W-9s from Hagans and Murphy Law Group, LLC, (iii) PAHS' receipt of valid wire transfer information from Murphy Law Group, LLC, and (iv) PAHS' receipt of valid wire transfer information from Hagans.

**5.    Tax Treatment.**  Hagans acknowledges that he has not relied on any statements or representations by PAHS with respect to the tax treatment of the payments contemplated by this Agreement.  Hagans shall be responsible for all taxes, if any, on the payments, including but not limited to the payment for the alleged wage damages as set forth in Paragraph 2(a).  In the event that any taxing authority seeks a tax payment, deficiency, penalty, or interest against PAHS with respect to any payments made pursuant to this Agreement, Hagans shall defend, indemnify, and hold PAHS harmless from any payment on account of taxes owed by Hagans (including any interest and/or penalties thereon).  PAHS shall provide reasonable notice to Hagans after it becomes aware that any taxing authority is seeking such payment deficiency, penalty, or interest.  In the event of an inquiry by any governmental or taxing authority, none of the Parties shall assert any position contrary to the terms of this Agreement.

Doc ID: ec1ecc8e8563dd93201ec5fe4d8538ae83e617c1

**6.**     **No Consideration Absent Execution of this Agreement.**  Hagans understands and agrees that he would not receive the monies and/or benefits specified in Paragraph 2, except for his execution of this Agreement and the fulfillment of the promises contained herein.

**7.**     **General Release of All Claims.**  Hagans knowingly and voluntarily releases and forever discharges the Debtors and AAHS and each of their respective parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their official capacities (collectively referred to throughout the remainder of this Agreement as "**Releasees**"), of and from any and all claims, known and unknown, asserted or unasserted, which Hagans has or may have against Releasees as of the date of execution of this Agreement.

a.     The release under this Agreement is intended to have the broadest application, and the rights and claims that Hagans hereby releases include, but are not limited to, any and all claims for violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("**ADEA**"), the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, the Family and Medical Leave Act, Employee Retirement Income Security Act, the National Labor Relations Act, the Immigration Reform Control Act, The Occupational Safety and Health Act, the Uniformed Services Employment and Reemployment Rights Act, the Fair Labor Standards Act, the Fair Credit Reporting Act, the Worker Adjustment and Retraining Notification Act, the Equal Pay Act, Sections 1981 through 1988 of Title 42 of the United States Code, all as amended, and any other federal, state, or local statute, regulation, or common law theory, all claims for reprisal, whistleblowing, or retaliation under federal or state law, any and all claims that involve or in any way relate to Hagans' employment with Releasees, any agreement governing Hagans' employment with, and the separation of Hagans' employment from Releasees, and all other losses, liabilities, claims, charges, demands, and causes of actions, claims for attorneys' fees, costs, expenses, known or unknown, suspected or unsuspected, arising directly or indirectly out of or in any way connected with Hagans' employment with Releasees.

b.     The claims Hagans is giving up and releasing do not include vested rights, if any, under any qualified retirement plan in which Hagans participates or participated, and COBRA, unemployment insurance and workers' compensation rights, if any.  Nothing in this Agreement shall be construed to constitute a waiver of:  (i) any claims Hagans may have against Releasees that arise from events that occur after the date Hagans signs this Agreement; (ii) Hagans' right to file an administrative charge with any governmental agency alleging employment discrimination or challenging the validity of the release set forth in this Paragraph 7; (iii) Hagans' right to participate in any administrative or court investigation, hearing or proceeding; or (iv) any other right that Hagans cannot waive as a matter of law.  Hagans agrees, however, to waive and release any right to receive any individual remedy or to recover any individual monetary or non-monetary damages as a result of any administrative charge, complaint or lawsuit filed by Hagans or anyone on Hagans' behalf.

**8.**     **Withdrawal of Charges and Pursuit of Released Claims.**  Hagans represents that, with the exception of the Charge, he has not filed any charges, complaints, or lawsuits with respect to any claims that this Agreement purports to waive ("**Released Claims**").

3

Doc ID: ec1ecc8e8563dd93201ec5fe4d8538ae83e617c1

a.      **Pursuit of Released Claims.**  Hagans represents that he has not filed any complaints or lawsuits with respect to any of the Released Claims, other than the Charge.  To the maximum extent permitted by law, Hagans covenants not to sue or to institute or cause to be instituted any complaints or lawsuits in any federal, state, or local court against any of the Releasee, based on any such Released Claims.  Hagans promises never to seek or accept any damages, remedies, or other relief for himself personally (any right to which he hereby expressly waives) by the pursuit of any such Released Claims in court litigation filed by him or on his behalf.

b.      **Administrative Claims.**  Hagans agrees not to seek or accept and acknowledges that he is not entitled to any monetary relief, whether for himself individually or as a member of a class or group, arising from a discrimination charge filed by him or on his behalf against PAHS and/or AAHS.  This Agreement prohibits Hagans' ability to pursue any claims against the Debtors and/or AAHS seeking monetary relief or other remedies for himself and/or as a representative on behalf of others.  Nothing in this Agreement precludes Hagans from reporting other, unrelated possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, the Congress, or from making other disclosures that are protected under the whistleblower provisions of federal law or regulation without prior approval of the Debtors and/or AAHS.

c.   No federal, state, or local government agency is a party to this Agreement, and none of the provisions of this Agreement restricts or in any way affects a government agency's authority to investigate or seek relief in connection with any of the Released Claims.  However, if a government agency were to pursue any matters falling within the Released Claims, Hagans, the Debtors, and AAHS agree that this Agreement will control as the exclusive remedy and full settlement of all such Released Claims as between the Parties.  This Agreement is a binding contract between the Parties.  Therefore, the Agreement affects the Parties' rights only, with no impact on any government agency.

9.   **Affirmations.**

a.      Hagans affirms that he has not filed, caused to be filed, or presently is a party to any claim against PAHS and/or AAHS, other than the Charge.

b.      Hagans also affirms that, except as alleged in the Charge, he has been paid and/or has received all leaves (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled, and is not entitled to any additional pay other than what is set forth in this Agreement.

c.      Hagans affirms that he has no known workplace injuries or occupational diseases for which he has not already filed a claim.

4

d.      Hagans further affirms that other than as alleged in the Charge, he was not retaliated against for reporting any allegations of wrongdoing by PAHS and/or AAHS or their officers, including any allegations of corporate fraud.

10.      **Confidentiality.** Hagans agrees not to disclose any information regarding the existence or substance of this Agreement, except to his spouse, tax advisor, and/or an attorney. Hagans also affirms that he has not divulged any proprietary or confidential information of PAHS and/or AAHS and affirms that he is under a continuing obligation to refrain from disclosing such proprietary or confidential information.  Notwithstanding anything to the contrary set forth herein, the Debtors shall be permitted to attach an unredacted copy of this Agreement as an exhibit to their 9019 Motion, and to describe the terms of this Agreement in any such motion.

11.      **Non-Disparagement.**  Hagans hereby agrees and promises that he will not make, publish, or cause to be made or published, whether orally, or in written or electronic form, any false or disparaging statements or comments, which in any way relate to, refer to, or otherwise concern the Debtors and/or AAHS or any of their officers, directors, executives, employees, affiliates, agents, and representatives whose affiliation with the Debtors and/or AAHS is known to Hagans or reasonably should be.  Hagans further agrees and understands that this non-disparagement provision is a material term to this Agreement and in the event he breaches his obligations under this provision, the Debtors and/or AAHS may pursue all remedies available to them in law or in equity.  The Debtors and/or AAHS shall provide a neutral reference for all future employment verifications.

12.      **Governing Law and Interpretation.**  This Agreement shall be governed and conformed in accordance with the laws of the Commonwealth of Pennsylvania without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.  Notwithstanding the foregoing, the Parties acknowledge and agree that the Court shall retain jurisdiction over all disputes concerning or related to the subject matter of this Agreement.

13.      **Defend Trade Secrets Act Notice.**  Notwithstanding anything to the contrary contained in this Agreement or PAHS's handbook, policies, or procedures, Hagans shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, State, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law.  Hagans shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal; and does not disclose the trade secret, except pursuant to court order.

Doc ID: ec1ecc8e8563dd93201ec5fe4d8538ae83e617c1

**14.**     <u>**No Admission of Wrongdoing**</u>.  The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by PAHS and/or AAHS of wrongdoing or evidence of any liability or unlawful conduct of any kind.

**15.**     <u>**Entire Agreement**</u>.  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except any confidentiality agreements previously signed by Hagans, which remain in full force and effect.  Hagans acknowledges that he has not relied on any representations, promises, or agreements of any kind made to him in connection with his decision to accept this Agreement, except for those set forth in this Agreement.

**16.**     <u>**Headings**</u>.  The paragraph headings set forth in this Agreement have been included for convenience only, and are not intended to and should not be used as a guide to interpretation of this Agreement.

**17.**     <u>**Contra Proferentem**</u>.  As Hagans has had the opportunity to review and have reviewed by counsel of his choosing, this Agreement shall be construed as the product of mutual drafting and negotiation by the Parties.  Hagans acknowledges that he has had an opportunity to retain an attorney to review this Agreement.  Accordingly, it is specifically agreed that neither the rule of contra proferentem (construction against the drafter), nor any other statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against a purported drafter, shall apply against any party.

**18.**     <u>**Execution**</u>.  This Agreement may be executed in one or more counterparts, including by facsimile and/or electronic mail, each of which when so executed shall be deemed to be an original, and all of which, when taken together, shall constitute one and the same Agreement.

Doc ID: ec1ecc8e8563dd93201ec5fe4d8538ae83e617c1

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date and year set forth below.

_William Hagans_
_____
William Hagans

Date: 03 / 09 / 2022
_____


For Philadelphia Academic Health System, LLC

_John A. D. R..._
_____
John Dinome
Chief Human Resources Officer and
Assistant General Counsel

Date: 03/11/2022
_____

7

Doc ID: ec1ecc8e8563dd93201ec5fe4d8538ae83e617c1