**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CENTER CITY HEALTHCARE, LLC d/b/a ) | |
| HAHNEMANN UNIVERSITY HOSPITAL, *et* ) | Case No. 19-11466 (MFW) |
| *al.*,[1] ) | |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | **Related to Docket Nos. 3657** |

### DECLARATION OF ALLEN WILEN IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC TO MAKE SECURED TERM LOAN TO BROAD STREET ENTITIES PURSUANT TO 11 U.S.C. § 363 AND 105(a) AND (II) GRANTING RELATED RELIEF

I, Allen Wilen, hereby declare the following, under the penalty of perjury:

1. I am the Chief Restructuring Officer ("CRO") of the above captioned debtors (the "Debtors") in these chapter 11 cases.

2. I am a Partner at EisnerAmper and serve as the national director of EisnerAmper's financial advisory services group. I have more than twenty-six years of financial and accounting experience, as well as extensive experience advising insolvent and troubled companies, including companies in the healthcare industry, in turnaround and crisis situations and navigating such companies through turnaround, sale and liquidation processes. I have frequently been involved in complex matters requiring expertise in forensic accounting and operational analysis and have

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 216 N. Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

been qualified as an expert in numerous state and federal courts throughout the United States, including the district of Delaware.

3. I began serving as the CRO of the Debtors on April 8, 2019. In such capacity, I am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I am above 18 years of age, and I am competent to testify.

4. I am familiar with the *Motion Of Debtors For Entry Of Interim And Final Orders (I) Authorizing Philadelphia Academic Health System, LLC To Make Secured Term Loan To Broad Street Entities Pursuant To 11 U.S.C. § 363 And 105(A) And (II) Granting Related Relief* (the "Motion"). Along with Mr. John DiNome, who is serving as the Debtors' Independent Manager, I authorized the filing of the Motion.

5. The Summary of Indicative Terms and Conditions (the "Term Sheet") attached to the Motion is a true and correct copy of the Term Sheet signed by Mr. DiNome on behalf of debtor Philadelphia Academic Health System LLC ("PAHS") and Joel Freedman on behalf of Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC. (collectively, the "Broad Street Entities").

6. I was personally involved in the negotiation of the Term Sheet.

7. The forms of Secured Promissory Note, Guaranty Agreement, Open-End Mortgage and Security Agreement, Second Amended and Restated Subordination Agreement, UCC-1 Financing Statements (collectively, the "Loan Documents") filed with the Court on March 29, 2022 at Docket No. 3787 are true and correct copies of the forms of Loan Documents to be signed by PAHS and the Broad Street Entities in furtherance of the Term Sheet.

8. I personally reviewed and approved the Loan Documents.

9. On June 29, 2021, following an investigation conducted jointly by the Debtors and the Official Committee of Unsecured Creditors (the "Committee"), the Debtors filed an Adversary Proceeding against, among other defendants, the Broad Street Entities. The Debtors also filed an Adversary Proceeding against, among other parties, Harrison Street Real Estate, LLC and certain related entities (collectively, "HSRE").

10. Since filing the adversary proceeding noted above, the Debtors, the Committee, the Broad Street Entities, the other defendants in the Adversary Proceeding, and HSRE have engaged in mediation (the "Mediation"), with the Honorable Kevin J. Carey (ret.) serving as mediator (the "Mediator").

11. Most recently, the mediation parties met in-person with Judge Carey in New York on March 22 and March 23, 2022 to continue the Mediation.

12. The Mediation is ongoing and has taken a significant amount of time because of, among other reasons, the number of parties to the Mediation, the number and complexity of the issues being mediated and the tax implications of different possible compromise structures.

13. Although I cannot divulge any details regarding the parties' Mediation discussions, it has become clear that preservation of the value of the real estate (the "Real Estate") owned directly by the Broad Street Entities and indirectly by Philadelphia Academic Health Holdings, LLC ("PAHH") is in the best interest of the Debtors and all other parties in the Mediation.

14. As described in the Motion, the Broad Street Entities' Real Estate includes:

- the North and South Tower where Hahnemann University Hospital formerly operated in center city Philadelphia;

- a separate nearby building called the "SHSH Building" and certain property adjacent thereto;

39752993.2 03/30/2022

- adjacent property underlying the building known as Stiles Alumni Hall;
- certain redevelopment land and a surface parking lot; and
- a park located on Broad Street in Philadelphia called "Martinelli Park."

15. As the Court may recall, on October 29, 2021, the Broad Street Entities and PAHH filed *The Motion of the Broad Street Entities and PAHH for Entry of an Order (I) Determining that the Automatic Stay Does Not Apply to their Assets or (II) in the Alternative, Granting Limited Relief from the Automatic Stay for them to Sell, Transfer, or Otherwise Encumber Such Assets* [D.I. 3002] (the "Financing Motion"), by which the Broad Street Entities and PAHH sought, among other relief, to enter into a loan agreement with Gordon Brothers Realty Services, LLC (the "Gordon Brothers Loan") that would have provided a term loan in excess of $17.5 million to the Broad Street Entities.

16. The Debtors, the Committee, HSRE and Tenet Business Services Corporation each objected to the Financing Motion, with the Debtors arguing, among other things, that the Debtors hold an interest in the Broad Street Entities' Real Estate.

17. The Debtors specifically objected to the proposed Gordon Brothers Loan because it was expensive and was to be used for, among other purposes, the payment of certain alleged advisory, professional and other fees of PAHH, the Broad Street Entities and/or certain of their non-Debtor affiliates, which the Debtors and Committee believed was inappropriate. PAHH and the Broad Street Entities disagreed with the Debtors' and the Committee's position.

18. Following an evidentiary hearing on December 1, 2021 (the "Hearing"), the Court denied the Financing Motion, but encouraged the parties to discuss with the Mediator a consensual resolution of their disputes regarding financing of the Real Estate, including possible funding provided by a loan from the Debtors, for the upkeep and maintenance of the Real Estate.

19. As the Court may recall from the Hearing, the Broad Street Entities do not have current revenue, but continue to incur expenses to maintain the Real Estate including, for example, the cost of electricity, steam, taxes, routine maintenance and security. The costs to simply maintain the Broad Street Entities' Real Estate is approximately $425,000 per month, inclusive of real estate taxes.

20. After the Hearing, and with the Mediator's assistance, the loan parties negotiated in good faith and at arms' length and, subject to Court approval, have agreed to the terms of the loan outlined in the Term Sheet and the Loan Documents (the "Proposed Loan").

21. At the time the Motion was filed, and based upon discussions with the Broad Street Entities and information provided to the Debtors, it was my understanding that the Broad Street Entities had an immediate need for $1.3 million to cover certain accrued and unpaid critical expenses related to the Real Estate.

22. Subsequent to filing the Motion, the Broad Street Entities provided the Debtors with the updated budget attached hereto as **Exhibit 1** which details the immediate funding needs of the Broad Street Entities, which now total $1,951,439. Absent immediate funding of the foregoing amount, critical services to the Real Estate may be delayed or terminated and the value of the Real Estate could be negatively impacted.

23. The $3,648,561 balance of the Proposed Loan will be used to primarily fund ongoing Real Estate related expenses.

24. In my view, the Broad Street Entities' Real Estate has significant value, far in excess of the amount of the Proposed Loan. My views are informed by my general knowledge of the Philadelphia real estate market, discussions with the Broad Street Entities' principals and

my review or understanding of prior offers and expressions of interest in the Real Estate, appraisals and broker's opinions of value.

25. The Proposed Loan from PAHS is in the best interest of the Debtors, their estates and creditors, as the Debtors assert an interest in the Broad Street Entities' Real Estate and the preservation and use of the value of the Real Estate is critical to a successful Mediation or litigation outcome in the Adversary Proceeding.

26. Absent appropriate financing, the Broad Street Entities will be unable to pay necessary ongoing operating and maintenance costs and the value of the Real Estate will decline rapidly.

27. As made clear by the Broad Street Entities' Financing Motion, other parties may be willing to provide financing to the Broad Street Entities, but such alternative financing is likely to be more expensive that the proposed loan before the Court, could result in loan proceeds being used for something other than preserving the value of the Real Estate and may include onerous terms that could otherwise put the value of the Real Estate in jeopardy. Accordingly, approval of the Motion may avoid litigation related to an alternative financing proposal.

28. In my view, the risks to the Debtors in providing the Proposed Loan are small, as the value of the Real Estate far exceeds the Proposed Loan and the Debtors will be granted a first priority secured position on the Real Estate, junior only to valid, existing, non-related party liens in the approximate asserted amount of $1.6 million.[2] As structured, the Proposed Loan provides the Debtors will complete oversight into the use of the proceeds and the funding mechanics ensure that the Proposed Loan proceeds will be used for specific, documented, agreed upon expenses.

---

[2] To be clear, the Debtors do not concede the validity or amount of any existing liens on the Real Estate and reserve the right to challenge any and all asserted amounts and liens.

39752993.2 03/30/2022

29. Again, in my view, the benefits of providing the Proposed Loan, which will preserve the value of the Real Estate, far exceed the limited risks attendant to providing the Proposed Loan. For these reasons, I would encourage the Court to approve the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct.

Executed on March 30, 2022

By: <i>/s/ Allen Wilen</i><br>Allen Wilen, Chief Restructuring Officer