# EXHIBIT A

Form of Secured Promissory Note

**BROAD STREET HEALTHCARE PROPERTIES, LLC**
**BROAD STREET HEALTHCARE PROPERTIES II, LLC**
**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

**SECURED PROMISSORY NOTE**

$5,600,000.00                                      Torrance, California

_____, 2022

      **FOR VALUE RECEIVED, BROAD STREET HEALTHCARE PROPERTIES,** **LLC**, a Delaware limited liability company ("**Broad Street I**"), **BROAD STREET HEALTHCARE PROPERTIES II, LLC**, a Delaware limited liability company ("**Broad Street II**"), **BROAD STREET HEALTHCARE PROPERTIES III, LLC**, a Delaware limited liability company ("**Broad Street III**" and collectively with Broad Street I and Broad Street II, "**Maker**"), unconditionally, jointly and severally, promise to pay to **PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC,** a Delaware limited liability company ("**Lender**"), in the manner and at the place hereinafter provided, the sum of **FIVE MILLION SIX HUNDRED THOUSAND DOLLARS,** (or such lesser amount as has been advanced by Lender to or for the benefit of Maker pursuant to this Note) (the "**Loan**"), together with any accrued and unpaid interest thereon on or before _____, 2022[1] (the "**Maturity Date**").

      1.    **Advances**.  This Secured Promissory Note (this "**Note**") evidences the advances made by Lender to Maker, another person or entity on behalf of Maker or designated by Maker, on or about the date hereof (the "**Current Advance**"), any additional advances made under this Note, including PIK Advances (defined hereafter) (such additional advances, the "**Additional Advances**" and together with the Current Advance, the "**Advances**" and each, an "**Advance**"). Any obligations of Lender to make additional advances hereunder shall be subject to approval of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), in the matter pending as *In re Center City Healthcare, LLC, et al., Case No. 19-11466 (MFW).*

      2.    **Interest**.  Interest on the unpaid principal amount of all Advances (including all PIK Amounts (as defined below) added thereto, the "**Principal Amount**") shall accrue at a rate equal to five percent (5%) per annum commencing, with respect to each Advance, on the date such Advance was made; provided that any Principal Amount not paid when due and, to the extent permitted by applicable law, any interest not paid when due, in each case whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (both before as well as after judgment), shall bear interest payable upon demand at a rate that is three percent (3%) per annum in excess of the rate of interest otherwise payable under this Note.  Interest shall be (i) calculated on the basis of a 360-day year, for the actual number of days elapsed in the relevant period, and (ii) payable quarterly, in arrears, on the first Business Day of each calendar quarter through and including the Maturity Date, and on the Maturity Date, whether by acceleration or otherwise (each, an "**Interest Payment Date**"); provided, however, that interest on the Principal Amount that shall have accrued and shall remain unpaid as of any Interest

---

[1] Nine mos.

Payment Date (for any Interest Payment Date, a "**PIK Amount**") shall be paid on such Interest Payment Date by addition of such PIK Amount to the Principal Amount (a "**PIK Advance**").

3.    **Payments**.

(a)    All payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America in same day funds at the location of Lender as Lender may direct.  Whenever any payment on this Note is stated to be due on a day that is not a Business Day, such payment shall instead be made on the next Business Day, and such extension of time shall be included in the computation of interest payable on this Note.  Each payment or prepayment made hereunder shall be credited first to interest then due and the remainder of such payment shall be credited to principal, and interest shall thereupon cease to accrue upon the principal so credited.

(b)    Payment obligations hereunder shall not be subject to setoff, counterclaim, recoupment or deduction of any kind.

(c)    Maker shall repay or otherwise satisfy its liability for the amounts due hereunder solely in accordance with a resolution reached through the Mediation (defined hereafter) or, absent such resolution, from the sale of the Property consistent with the provisions of this Note, provided that at any such sale shall be on terms and conditions reasonably acceptable to Lender.  Maker shall not repay the amounts due hereunder by or through any refinancing.

(d)    If Maker sells, transfers or otherwise disposes of any Collateral which results in the realization by Maker of any cash and cash equivalents received in connection with such transaction, Maker shall cause to be paid to Lender at the closing of such sale or other transfer the amounts due hereunder.

(e)    Lender shall have no obligation to re-advance amounts repaid hereunder.

(f)    Maker shall have no right to refinance the amounts due hereunder.

4.    Notwithstanding anything to the contrary set forth in this Note or the Mortgage (as defined herein), no covenant or any other provision of this Note or the Mortgage shall survive repayment in full of the amounts due hereunder.

5.    **Application of Payments**.   Any amounts received on account of the Obligations shall be applied by Lender first to any asserted but unpaid indemnities, expenses and other amounts payable under this Note and the Mortgage, <u>second</u> to unpaid interest and <u>then</u> to unpaid principal amount.

6.    **Use of Loan Proceeds; Advance Procedures**.

(a)    Advances (other than the PIK Advances), including the Current Advance, shall be used only for the purposes of funding budgeted and direct operating/maintenance costs of the Property (the "**Operating Costs**"), including without limitation taxes and insurance, through the procedures set forth in section 6(c) below.  Maker shall cause the

Property Manager (defined hereafter) to prepare monthly budgets of projected Operating Costs and a schedule of incurred but unpaid Operating Costs, which shall be subject to Lender's review and written approval (once so approved, a "**Budget**"). For the avoidance of doubt, Lender agrees that the costs listed on the Open Invoice List attached hereto as Exhibit "A" are approved by Lender for inclusion in the initial Budget as Operating Costs.

(b)     Disbursements of Advances for costs of Maker other than Operating Costs shall be in such amounts, at such times and through such procedures as may be mutually agreed to by Maker and Lender.

(c)     Advances for Operating Costs shall be disbursed to G&E Real Estate Management Services, Inc. d/b/a  Newmark Knight Frank or another third party property manager retained by the Maker and reasonably acceptable to Lender (the "**Property Manager**") in accordance with the approved monthly Budget, as follows. Not less often than once per month, the Maker shall provide to Lender a request for an Advance for Operating Costs, including reasonably detailed documentation supporting such request, such as invoices, work orders or vendor proposals, and including evidence of payment of all invoices for which prior Advances have been made. Following review and approval of a request for an Advance for Operating Costs, Lender shall disburse the appropriate funds to the Property Manager, which shall promptly use such funds solely to pay the budgeted Operating Costs for which the request was submitted. No less often than every fifteen (15) calendar days after the date hereof, Maker shall cause the Property Manager to provide to the Lender such additional written evidence as Lender may request to confirm the proper use of any Advance. Lender shall have the right to inspect the Property at any time during business hours upon reasonable advance notice to Maker and the Property Manager.

(d)     Upon the occurrence and during the continuation of an Event of Default by Maker under this Note, the Mortgage or the Subordination Agreement, Lender shall be relieved of any obligation to make any further Advances hereunder. Notwithstanding the foregoing, Lender may in its sole discretion make further Advances hereunder after the occurrence and during the continuation of any Event of Default.

(e)     Each Advance request shall automatically constitute a representation and certification by the Maker that (A) no event has occurred which is or with the passage of time or giving of notice or both would become an Event of Default under this Note or the Mortgage; and (B) each and all of the representations and warranties of Maker set forth in this Note continue to be true in all material respects on the date of such Advance except to the extent such representations and warranties specifically relate to an earlier date, in which case they were true, correct and complete in all material respects on and as of such earlier date; and (C) Maker has made a direction to the Property Manager to process the payments in accordance with each Advance request approved by Lender.

(f)     Notwithstanding anything else herein contained, Lender shall have the right, without specific consent of Maker, to apply any funds which it agrees to advance hereunder to the payment of any costs, taxes, assessments or other charges which could

be or become a Lien on the Property, and any part thereof, or any premium on any insurance policy affecting the Property, provided that, so long as there is no existing Event of Default, Lender agrees to give Maker notice of each such application of the funds.

(g)     Although the Lender and its agents may inspect the Property, such inspections are solely for the protection of the Lender as lender, and the Maker hereby confirms that the Lender is not making and will not be deemed to make any representations or warranties as to any matters pertaining to the Property by reason of such inspections.

7.     **Covenants**.  Maker covenants and agrees that until this Note is paid in full it will:

(a)     promptly provide to Lender all financial and operational information with respect to Maker and the Property as Lender may reasonably request;

(b)     promptly after the occurrence of an Event of Default or an event, act or condition that, with notice or lapse of time or both, would constitute an Event of Default, provide Lender with a certificate of the Maker specifying the nature thereof and Maker's proposed response thereto;

(c)     without Lender's prior written consent thereto, not create, assume, guaranty, incur or otherwise become or remain directly or indirectly liable with respect to any indebtedness for borrowed money, except for indebtedness listed in Exhibit "B" attached hereto, evidence of which has been disclosed to the Lender in writing;

(d)     not merge or consolidate with any other Person, or sell, lease or otherwise dispose of all or any part of its property or assets to any other Person except for the donation of the tangible personal property of Maker to Pegasus Therapeutic Riding Academy, Inc.;

(e)     not create, incur, assume or suffer to exist, directly or indirectly, any lien, security interest, mortgage, deed of trust, pledge, hypothecation, assignment, charge, encumbrance, easement, or other security arrangement (each of the foregoing, a "**Lien**") on or with respect to any of its property or assets, whether now owned or hereafter acquired, or any income or profits therefrom, except for the Liens listed in Exhibit "C" attached hereto;

(f)     without Lender's prior written consent thereto, not pay, redeem, defease, purchase or otherwise acquire any indebtedness;

(g)     without Lender's prior written consent thereto, not declare or pay any dividend or make any other payment or distribution on account of, or purchase or redeem, any equity interests issued by Maker, including, without limitation, any outstanding warrants, options or other rights to acquire equity interests of Maker, now or hereafter outstanding;

(h)    without Lender's prior written consent thereto, not use cash, cash equivalents or any other assets of Maker, and not direct the Property Manager to use cash, cash equivalents or any other assets of Maker, for any purpose other than the payment of Operating Costs; and

(i)    reserve its entire existing cash balance of $[42,000] and shall not use or expend such funds for any purpose without the prior written consent of Lender prior to the occurrence of the Mediation Termination Date.

8.    **Representations and Warranties**.    Maker hereby represents and warrants to Lender that:

(a)    it is a duly organized and validly existing limited liability company in good standing under the laws of the jurisdiction of its organization and has the power and authority under its limited liability company agreement to own and operate its properties, to transact the business in which it is now engaged and to execute and deliver this Note and the Mortgage (as defined in Section 15);

(b)    each of this Note and the Mortgage constitutes the duly authorized, legally valid and binding obligation of Maker, enforceable against Maker in accordance with its respective terms, subject to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and general principles of equity;

(c)    all consents and grants of approval required to have been granted by any Person in connection with the execution, delivery and performance of this Note and the Mortgage have been granted;

(d)    the execution, delivery and performance by Maker of this Note and the Mortgage do not and will not (i) violate any law, governmental rule or regulation, court order or agreement to which it is subject or by which its properties are bound or the organizational documents of Maker or (ii) contravene, result in a breach of, or violate any indenture, mortgage, deed of trust, lease, agreement or other instrument to which Maker is a party or by which Maker or any of its property or assets is bound;

(e)    other than as disclosed to Lender prior to the date hereof and the actions described in Section 18, there is no action, suit, proceeding or governmental investigation pending or, to the knowledge of Maker, threatened against Maker or any of its assets which, if adversely determined, would have a material adverse effect on the business, operations, properties, assets, condition (financial or otherwise) or prospects of Maker, or the ability of Maker to comply with its obligations hereunder;

(f)    the proceeds of the Advances evidenced by this Note shall be used by Property Manager solely for approved Operating Costs pursuant to the provisions of Section 6 and for no other purpose without Lender's consent, which Lender may withhold at its sole discretion; and

(g)    no Lien exists on any property or asset of Maker as of the date hereof and the execution, delivery, and performance by Maker of this Note and the Mortgage do not

and will not result in or require the creation or imposition of any Lien of any nature whatsoever upon any of its property or assets except (i) in favor of Lender pursuant to this Note and the Mortgage, (ii) in favor of the Tranche II Lender as security for the Tranche II Note pursuant to the Tranche II Note and the mortgages entered into by Maker in connection therewith; (iii) in favor of the Tranche III Lender as security for the Tranche III Note pursuant to the Tranche III Note and the mortgages entered into by Maker in connection therewith; (iv) in favor of the Tranche IV Lender pursuant to the Tranche IV Note (which Tranche IV Lender has no interest in the Property pursuant to a mortgage or otherwise) (the liens and mortgages in sections (ii) through (iv) above are collectively referred to as the "**Disputed Liens**") and (v) such other liens and encumbrances as are listed on Exhibit "C" hereto.

(h)     Notwithstanding anything to the contrary contained in this Note, all claims, right, objections, defenses, and remedies of Lender, its direct and indirect subsidiaries, the Committee, HSRE and Tenet Business Service Corporation are hereby reserved and preserved regarding the validity, enforceability, and priority of the Disputed Liens and the Tranche II Note, Tranche III Note and Tranche IV Note (collectively, the "**Disputed Notes**").

9.      [intentionally omitted].

10.     Events of Default.  The occurrence of any of the following events shall constitute an "Event of Default":

(a)     failure of Maker to pay any principal or interest under this Note when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, or failure of Maker to pay any other amount due under this Note within five days after the date due; or

(b)     failure of Maker to pay, or the default in the payment of, any amount due under or in respect of any promissory note, indenture or other agreement or instrument relating to any indebtedness owing by Maker, to which Maker is a party or by which Maker or any of its property is bound beyond any grace period provided; or the occurrence of any other event or circumstance that, with notice or lapse of time or both, would permit acceleration of such indebtedness, except with respect to any of the Disputed Notes; or

(c)     failure of Maker to perform or observe any other term, covenant or agreement to be performed or observed by it pursuant to this Note or the Mortgage; or

(d)     any representation or warranty made by Maker to Lender in connection with this Note or the Mortgage shall prove to have been false in any material respect when made; or

(e)     any money judgment in excess of $10,000 shall be entered against Maker and shall remain undischarged for a period of 60 days; or

(f)     suspension of the usual business activities of Maker or the complete or partial liquidation of Maker's business except in connection with the marketing contemplated in Section 14(o); or

(g)     (i) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of Maker in an involuntary case under Title 11 of the United States Code entitled "Bankruptcy" (as now and hereinafter in effect, or any successor thereto, the "Bankruptcy Code") or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, which decree or order is not stayed within 60 days; or any other similar relief shall be granted under any applicable federal or state law; or (ii) an involuntary case shall be commenced against Maker under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or a decree or order of a court having jurisdiction in the premises for the appointment of a receiver, liquidator, sequestrator, trustee, custodian or other officer having similar powers over Maker, or over all or a substantial part of its property shall have been entered; or the involuntary appointment of an interim receiver, trustee or other custodian of Maker for all or a substantial part of its property shall have occurred; or a warrant of attachment, execution or similar process shall have been issued against any substantial part of the property of Maker, and, in the case of any event described in this subsection (g), such event shall have continued for 60 days unless dismissed, bonded or discharged; or

(h)     an order for relief shall be entered with respect to Maker or Maker shall commence a voluntary case under the Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case, or to the conversion of an involuntary case to a voluntary case, under any such law, or shall consent to the appointment of or taking possession by a receiver, trustee or other custodian for all or a substantial part of its property; or Maker shall make an assignment for the benefit of creditors; or Maker shall be unable or fail, or shall admit in writing its inability, to pay its debts as such debts become due; or the governing body or equity-holders of Maker shall adopt any resolution or otherwise authorize action to approve any of the foregoing; or

(i)     Maker shall challenge, or institute any proceedings to challenge, the validity, binding effect or enforceability of this Note or the Mortgage; or

(j)     any provision of this Note or the Mortgage shall cease to be in full force or effect or shall be declared to be null or void or otherwise unenforceable in whole or in part; or Lender shall not have or shall cease to have a valid and perfected second priority security interest in the collateral described in the Mortgage or in the Collateral; or

(k)     a Change of Control (as defined below) shall occur with respect to Maker, unless the Lender shall have expressly consented to such Change of Control in writing. A "Change of Control" shall mean any event or circumstance as a result of which (i) any "Person" or "group" (as such terms are defined in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934 (as in effect on the date hereof, the "Exchange Act")), is or becomes the "beneficial owner" (as defined in Rules 13(d)-3 and 13(d)-5 under the Exchange Act), directly or indirectly, of ten percent (10%) or more on a fully diluted

basis of the then outstanding voting equity interest of Maker, (ii) the manager of Maker shall cease to consist of the same manager on the date hereof, or (iii) Maker merges or consolidates with, or sells all or substantially all of its assets to, any other Person.

Notwithstanding anything to the contrary in this Note or the Mortgage, Lender agrees that no Event of Default, or event which with the passage of time or the giving of notice will constitute an Event of Default, shall exist that arises from or relates to the nonpayment of the items set forth in any Budget, and that have not been advanced by Lender to Maker if required under the Note.

11.    **Remedies**.

(a)    Upon the occurrence of any Event of Default specified in Section 10(g) or 10(h) above, the Principal Amount together with accrued interest thereon shall become immediately due and payable, without presentment, demand, notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker). Upon the occurrence and during the continuance of any other Event of Default, Lender may, by written notice to Maker, declare the Principal Amount together with accrued interest thereon to be due and payable, and the Principal Amount together with such interest shall thereupon immediately become due and payable without presentment, further notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker).

(b)    In addition to all other rights and remedies provided for herein or otherwise available to it, Lender may exercise in respect of the Collateral, all the rights and remedies of a secured party on default under the Pennsylvania Uniform Commercial Code in effect on the date hereof (the "**UCC**") (to the extent the UCC applies to the affected Collateral, the "**UCC Collateral**").  Lender may be the purchaser of any or all of the UCC Collateral at any such sale and Lender shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the UCC Collateral sold at any such sale, to use and apply any of the Obligations as a credit on account of the purchase price for any UCC Collateral payable by Lender at such sale.  Maker hereby waives any claims against Lender arising by reason of the fact that the price at which any UCC Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale, even if Lender accepts the first offer received and does not offer such UCC Collateral to more than one offeree.

(c)    Notwithstanding anything to the contrary contained in this Note or in the Mortgage, including the existence of any Event of Default, or event which with the passage of time or the giving of notice will constitute an Event of Default, Lender shall not exercise any right of foreclosure or power of sale or take any action in furtherance thereof prior to the fifteenth (15th) month anniversary of the date hereof.

12.    **Definitions**.  The following terms used in this Note shall have the following meanings (and any of such terms may, unless the context otherwise requires, be used in the singular or the plural depending on the reference):

"**Business Day**" means any day other than a Saturday, Sunday or legal holiday under the laws of the State of California, the Commonwealth of Pennsylvania or any other day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"**Collateral**" means all of Maker's right, title and interest in the Property.

"**Committee**" means the Official Committee of Unsecured Creditors of Center City Healthcare, LLC et al., as appointed in the Debtors' chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware, case no. 19-11466 (MFW).

"**Debtors**" means the following parties (for reference, included are the last four digits of each Debtor's federal tax identification number): Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).

"**Event of Default**" means any of the events set forth in Section 10.

"**Guaranty**" means that certain Guaranty Agreement dated as of the date hereof by and between Philadelphia Academic Health Holdings, LLC and Lender, as the same may be amended, restated, supplemented or otherwise modified from time to time.

"**HSRE**" means Harrison Street Real Estate, LLC and certain related entities.

"**MBNF Parties**" means, collectively, Joel Freedman, Stella Freedman, Svetlana Attestatova, Kyle Schmidt, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, and Globe Health Foundation, Inc.

"**Obligations**" means, collectively, the obligations under this Note and the Mortgage, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder and thereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Maker, would accrue on such obligations, whether or not a claim is allowed against Maker for such amounts in the related bankruptcy proceeding).

"**Person**" means any individual, partnership, limited liability company, joint venture, firm, corporation, association, bank, trust or other enterprise, whether or not a legal entity, or any government or political subdivision or any agency, department or instrumentality thereof.

"**Property**" means the Mortgaged Property as set forth in the Mortgage.

"**Subordination Agreement**" means the Second Amended and Restated Subordination Agreement dated as of the date hereof by and among Lender, Tranche II Lender, Tranche III Lender, Tranche IV Lender and Maker, as the same may be amended, restated, supplemented or otherwise modified from time to time.

"**Tranche II Loan**" means those certain loans in the original aggregate principal amount of $2,500,000, evidenced by a certain Amended and Restated Demand and Secured Promissory Note dated as of October 28, 2021 by and among Maker and the Tranche II Lender, as modified by the note modification agreement and allonge effective as of January 30, 2022 (the "**Tranche II Note**").

"**Tranche II Lender**" means, collectively, the entities named on the signature pages to the Tranche II Note, as lenders, and Paladin Healthcare Capital, LLC, as administrative agent for such lenders.

"**Tranche III Loan**" means those certain loans in the original aggregate principal amount of $3,000,000, evidenced by a certain Demand and Secured Promissory Note dated as of October 28, 2021 by and among Maker and the Tranche III Lender, as modified by the note modification agreements and allonges effective as of November 11, 2021 and January 30, 2022 (the "**Tranche III Note**").

"**Tranche III Lender**" means, collectively, the entities named on the signature pages to the Tranche III Note, as lenders, and Paladin Healthcare Capital, LLC, as agent for such lenders.

"**Tranche IV Loan**" means those certain loans in the original aggregate principal amount of $15,000,000, evidenced by a certain Demand and Secured Promissory Note entered into by Maker as of February 12, 2020 in the original aggregate principal amount of $10,000,000, as modified by those certain note modification agreements and allonges dated as of June 1, 2020, January 30, 2021 and January 30, 2022, by and among Maker and the Tranche IV Lender (the "**Tranche IV Note**").

"**Tranche IV Lender**" means Front Street Healthcare Properties, LLC.

13.    **The Lender**.  The Lender: (i) shall not have any duty to ascertain or to inquire as to the performance or observance of any of the terms, covenants or conditions of this Note or the Mortgage on the part of the Maker or to inspect the property (including the books and records) of the Maker; (ii) shall not be responsible to any party for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of this Note, the Mortgage or any other instrument or document furnished pursuant hereto; and (iii) shall incur no liability under or in respect of this Note or the Mortgage by acting upon any notice, consent, certificate or other instrument or writing (which may be by electronic mail) believed by it to be genuine and signed or sent by the proper party or parties.

14.    **Miscellaneous**.

(a)    Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including telefacsimile communication and electronic communications via .PDF) and mailed, telecopied, or

delivered at its address specified under its signature below; or in each case at such other address as shall be designated by Lender or Maker.  All such notices and communications shall, when mailed, telecopied or sent by overnight courier, be effective when deposited in the mails, delivered to the overnight courier, as the case may be, or sent by telecopier, or when received if sent by electronic mail.

(b)     Maker agrees that the Obligations include any losses, claims, damages and liabilities and related expenses, including counsel fees and expenses, incurred by Lender arising out of or in connection with or as a result of the enforcement of this Note.  In particular, the Obligations include all costs and expenses, including reasonable attorneys' fees and expenses, of Lender incurred in connection with the enforcement, collection and administration of this Note, the documents and instruments referred to herein and any amendments, waivers or consents relating hereto or thereto.

(c)     No failure or delay on the part of Lender or any other holder of this Note to exercise any right, power or privilege under this Note and no course of dealing between Maker, on the one hand, and Lender on the other hand, shall impair such right, power or privilege or operate as a waiver of any default or an acquiescence therein, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies expressly provided in this Note are cumulative to, and not exclusive of, any rights or remedies that Lender would otherwise have.  No notice to or demand on Maker in any case shall entitle Maker to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of Lender to any other or further action in any circumstances without notice or demand.

(d)     Maker hereby consents to renewals and extensions of time at or after the maturity hereof, without notice, and hereby waive diligence, presentment, protest, demand and notice of every kind and, to the full extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.

(e)     **THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF MAKER AND LENDER HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES**.

(f)     **ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST MAKER ARISING OUT OF OR RELATING TO THIS NOTE MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE COMMONWEALTH OF PENNSYLVANIA, AND BY EXECUTION AND DELIVERY OF THIS NOTE MAKER ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE NONEXCLUSIVE JURISDICTION OF THE AFORESAID COURT AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS NOTE**.

Maker hereby agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested, to Maker at its address set forth below its signature hereto, such service being hereby acknowledged by Maker to be sufficient for personal jurisdiction in any action against Maker in any such court and to be otherwise effective and binding service in every respect.  Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Lender to bring proceedings or enforce any award or judgment or exercise any rights against Maker or against the property of Maker in the courts of any other county, state or other foreign or domestic jurisdiction.

(g)    **MAKER AND LENDER HEREBY IRREVOCABLY AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS NOTE AND THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED**.  The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation contract claims, tort claims, breach of duty claims and all other common law and statutory claims.  Each of Maker and Lender (i) acknowledges that this waiver is a material inducement to enter into a business relationship, that each has already relied on this waiver in entering into this relationship, and that each will continue to rely on this waiver in their related future dealings and (ii) further warrants and represents that each has reviewed this waiver with its legal counsel and that each knowingly and voluntarily waives its jury trial rights following consultation with legal counsel.  **THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS OF THIS NOTE**.  In the event of litigation, this provision may be filed as a written consent to a trial by the court.

(h)    Maker hereby waives the benefit of any statute or rule of law or judicial decision, which would otherwise require that the provisions of this Note be construed or interpreted most strongly against the party responsible for the drafting thereof.

(i)    This Note shall be binding upon Maker and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns, and prior to the fifteenth (15th) month anniversary of the date hereof may not be assigned by Lender to any person other than a subsidiary of Lender without the prior written consent of Maker, which shall not be unreasonably withheld, provided that the foregoing restriction shall not apply to any assignment by Mortgagee to any direct or indirect wholly owned subsidiary of Mortgagee, which Mortgagee shall be permitted to effect without consent of Mortgagor; any purported assignment in violation of the foregoing without such consent shall be null and void. Maker may not assign any of its obligations under this Note without the prior written consent of Lender, any such purported assignment without such consent being null and void.

(j)     Maker acknowledges that this Note and Maker's obligations under this Note to pay the principal of and interest on this Note at the place, at the respective times, and in the currency prescribed herein, are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker under this Note. This Note sets forth the entire agreement and understanding of Lender and Maker with respect to the subject matter hereof, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Note or the obligations of Maker hereunder or otherwise in any action or proceeding brought by Lender to collect this Note, or any portion thereof.  Maker acknowledges that no oral or other agreements, conditions, promises, understandings, representations or warranties exist with respect to this Note or with respect to the obligations of Maker under this Note, except those specifically set forth in this Note.

(k)     The headings and captions of the numbered Sections of this Note are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof. All personal pronouns used in this Note shall include the other genders, whether used in the masculine, feminine or neuter gender, and the singular shall include the plural and vice versa, whenever and as often as may be appropriate.

(l)     This Note may not be modified, amended, changed or terminated orally, except by an agreement in writing signed by Maker, on the one hand, and Lender, on the other hand. No waiver of any term, covenant or provision of this Note shall be effective unless given in writing by Lender and, if so given by Lender shall only be effective in the specific instance in which given.

(m)     Each entity comprising Maker is accepting joint and several liability hereunder in consideration of the financial accommodations to be provided by Lender evidenced by this Note, for the mutual benefit, directly and indirectly, of each entity comprising Maker and in consideration of the undertakings of the other entities comprising Maker to accept joint and several liability for the obligations evidenced by this Note.  If and to the extent that any entity comprising Maker shall fail to make any payment with respect to any of the obligations evidenced by this Note as and when due or to perform any such obligations in accordance with the terms thereof, then in each such event each other entity comprising Maker will make such payment with respect to, or perform, such obligations until such time as all of the obligations evidenced by this Note are paid in full.  The obligations of each entity comprising Maker under the provisions of this Section 14(n) constitute the absolute and unconditional, full recourse obligations of each entity comprising Maker enforceable against each entity comprising Maker to the full extent of its properties and assets, irrespective of the validity, regularity or enforceability of the provisions of this Note or any other circumstances whatsoever. Except as otherwise expressly provided in this Note, each entity comprising Maker hereby waives notice of acceptance of its joint and several liability, notice of any Advances, notice of the occurrence of any Event of Default, or of any demand for any

13

payment under this Note, notice of any action at any time taken or omitted by Lender under or in respect of any of the obligations evidenced by this Note, any requirement of diligence or to mitigate damages and, generally, to the extent permitted by applicable law, all demands, notices and other formalities of every kind in connection with this Note.

(n)     Lender shall have the right to extend the Maturity Date to such date as it may desire, at its sole discretion, on the terms and conditions contained herein, upon written notice to Maker.

(o)     Maker and Lender, in consultation with Tenet Business Services Corporation, HSRE and the Committee, commencing promptly after the date hereof, shall negotiate in good faith regarding the selection of a broker to market the Property, in accordance with the procedures and milestones to be set forth on an amendment to Exhibit "D" attached hereto (the "**Milestones**").  The Property shall be marketed for sale in accordance with the Milestones upon the occurrence of the earlier of (i) termination or deemed termination, without settlement, pursuant to Local Rues 9019-5(f)(ii) and 9019(h) of the United States Bankruptcy Court for the District of Delaware of the pending mediation (the "**Mediation**") among the Debtors, the Committee, the MBNF Parties and HSRE under the auspices of The Honorable Kevin J. Carey (ret.) (the "**Mediation Termination Date**") or (ii) the six-month anniversary of the date hereof if the Mediation has not resulted in a settlement.  Any disputes regarding the Milestones shall be subject to mediation before Judge Carey.  Maker shall not sell or otherwise convey all or any portion of the Property without Lender's prior written approval, which shall not be unreasonably withheld.

15.     **Reference Agreements**.

(a)     This Note is secured pursuant to the provisions of (a) that certain Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street I in favor of Lender, (b) that certain Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street II in favor of Lender, and (c) that certain Open-End Mortgage and Security Agreement dated on or about the date hereof by Broad Street III in favor of Lender, in each case, as the same may be amended, supplemented or otherwise modified from time to time (each such mortgage and security agreement, individually and collectively, the "**Mortgage**").

(b)     This Note is subject to and governed by the terms of the Subordination Agreement, the provisions of which are incorporated herein by this reference and made a part hereof.

16.     **Non-Recourse**.

(a)     Recourse against Maker is limited solely to the Property, and except as provided otherwise in the Guaranty (i) no member of Maker, (ii) no person owning, directly or indirectly, any legal or beneficial interest in Maker or a member of Maker, (iii) no partner, manager, principal, officer, controlling person, beneficiary, trustee, advisor,

representative, or other similar fiduciary, shareholder, employee, agent, affiliate or director of any person described above, and (iv) none of their respective successors and assigns, shall have any personal liability for the payment or performance of any of the obligations or otherwise under the Note or Mortgage (other than indirectly by virtue of the liability of Maker through the resulting loss of value of ownership investment by such person therein).

(b)    Notwithstanding the foregoing, nothing herein shall serve to limit Lender's right to seek a personal judgment against Maker to the extent such judgment or decree may be necessary to foreclose and bar Maker's interests in the Property or other Collateral following the fifteenth (15th) month anniversary of the date hereof; and further provided that nothing herein stated or set forth in the Note shall: (a) release, impair or otherwise affect the Note or the Mortgage; nor (b) impair or otherwise affect the validity or the lien of the Note or the Mortgage; nor (c) impair the right of Lender to accelerate the maturity of the Note (or to avail itself of any of its other rights and remedies hereunder, subject to the terms hereof) upon the occurrence of an Event of Default; nor (d) relieve the Maker from personal liability for, nor impair the right of Lender to proceed against or recover from the Maker for any fraud.  Furthermore, any loss or cost in connection with the enforcement of any claims associated with the foregoing matters including, but not limited to, reasonable attorneys' fees shall be obligations hereunder.

17.    **Preservation of Claims**.  Nothing contained herein or in the Mortgage or in any instrument executed in connection with the Loan shall in any way affect (A) the rights, claims and/or remedies of Lender and/or its direct or indirect subsidiaries asserted in (i) that certain adversary complaint (Adv. No. 21-50991-MFW) filed by the Lender and certain of its subsidiaries on or about June 29, 2021 against some or all of the MBNF Parties, including the Borrowers, in the United States Bankruptcy Court for the District of Delaware, case no. 19-11466-MFW (jointly administered) (the "**Bankruptcy Case**"), (ii) that certain adversary complaint (Adv. No. 21-50993-MFW) filed by the Lender and certain of its subsidiaries on or about June 29, 2021 against HSRE and certain other entities, in the United States Bankruptcy Court for the District of Delaware, case no. 19-11466-MFW (jointly administered) or (iii) the matter pending as *Broad Street Healthcare Properties LLC v. Center City Healthcare, LLC*, C.A. No. 21-1779-RGA in the United States District Court for the District of Delaware or (B) any objection, defense, right, remedy, claim or counterclaim with respect any claim held or asserted by Maker and/or any of its affiliates in the Bankruptcy Case.  Nothing contained herein or in the Mortgage or in any instrument executed in connection with the Loan shall in any way affect the rights, claims and/or remedies of Lender, Maker, any other MBNF Parties, HSRE, Tenet Business Services Corporation, the Committee, or any of their respective affiliates asserted in the matter pending as *In re Center City Healthcare, LLC, et al.*, Case No. 19-11466 (MFW) (jointly administered) in the Bankruptcy Court or the matter pending as *Broad Street Healthcare Properties LLC v. Center City Healthcare, LLC*, C.A. No. 21-1779-RGA in the United States District Court for the District of Delaware.  All of the foregoing rights, claims and remedies are expressly preserved.

18.    **Consultation**.  Lender shall consult with HSRE, Tenet Business Services Corporation and (so long as the Committee remains in effect and has not disbanded or otherwise been terminated) the Committee prior to providing any consent, exercising any remedy,

declaring any Event of Default, extending the Maturity Date, modifying any material terms or providing any material approval hereunder; *provided*, *however*, that any failure by Lender to comply with its obligations under this paragraph 18 shall not be used by Maker as a defense, affirmative defense, claim, counterclaim or otherwise to Lender's claims, rights, remedies or actions hereunder.

[signature follows]

IN WITNESS WHEREOF, Maker and Lender have caused this Note to be executed and delivered by their respective duly authorized officer as of the day and year and at the place first above written.

MAKER:

**BROAD STREET HEALTHCARE PROPERTIES, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**BROAD STREET HEALTHCARE PROPERTIES II, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

By: _____
Name:  Joel Freedman
Title:  Chief Executive Officer and President
Address:
21143 Hawthorne Blvd. #505
Torrance, CA 90503

**LENDER:**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**


By: _____
Name:
Title:
Address:

**EXHIBIT A**

**OPEN INVOICE LIST**

**EXHIBIT B**

**DEBTS**

      (i)     Subordinated Demand and Secured Promissory Note made by Broad Street Healthcare Properties LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC in favor of Front Street Healthcare Properties, LLC dated as of February 12, 2020 in the principal amount of $15,000,000.

      (ii)     Amended and Restated Demand and Secured Promissory Note by and among Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC in favor of Paladin Healthcare Capital, LLC, as administrative agent for the lenders set forth on the signature pages thereto, and such lenders dated as of October 28, 2021 in the original principal amount of $2,500,000 and the mortgages entered into in connection therewith.

      (iii)     Demand and Secured Promissory Note by and among Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC in favor of Paladin Healthcare Capital, LLC, as administrative agent for the lenders set forth on the signature pages thereto, and such lenders dated as of October 28, 2021 in the original principal amount of $3,000,000 and the mortgages entered into in connection therewith.

      (iv)     Global Intercompany Note dated as of May 29, 2019 among the Maker and other non-Debtor entities.

      (v)     Commercial Insurance Premium Finance and Security Agreement with Bank Direct Capital Finance and any replacement thereof.

**EXHIBIT C**

**LIENS**

(i)      Liens securing the indebtedness described in clauses (i), (ii), (iii) and (v) set forth on Exhibit B.

(ii)      Permitted Encumbrances set forth on Schedule B to the Mortgage.

(iii)      Liens for taxes, assessments or governmental charges or claims the payment of which is not, at the time, required; and

(iv)      statutory Liens and rights of set-off of banks, statutory Liens of mechanics, repairmen, workmen and materialmen, and other Liens imposed by law, in each case incurred in the ordinary course of business.

**EXHIBIT D**

**MARKETING MILESTONES AND PROCEDURES**

Maker and Lender, in consultation with Tenet Business Services Corporation, HSRE and the Committee, commencing promptly after the date hereof, shall negotiate in good faith regarding the following Milestones and shall amend this Exhibit D to reflect agreed-upon dates for the following:

| *Action/Event* | *Date* |
|---|---|
| Broker selection and engagement | |
| Establishment and population (by Maker) of data room | |
| Completion of marketing materials acceptable to Lender | |
| Marketing materials to market | |
| Deadline for initial indications of interest | |
| Execution of non-disclosure agreements | |
| Deadline to submit letters of intent | |
| Due diligence deadline | |
| Deadline to submit definitive offers | |
| Selection of offer (on terms and conditions reasonably acceptable to Lender) | |
| Execution of agreement | |
| Sale closing | |

Upon agreement regarding the Milestones, Maker and Lender shall amend this Exhibit D, and such amended Exhibit D shall be deemed to be a part of this Note.