```
              UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF DELAWARE

                              . Chapter 11
IN RE:                        .
                              . Case No. 19-11466(MFW)
CENTER CITY HEALTHCARE,       .
LLC, d/b/a HAHNEMANN          .
UNIVERSITY HOSPITAL, et al, .
                              . 824 Market Street
                              . Wilmington, Delaware 19801
              Debtors. .
. . . . . . . . . . . . . . . . Thursday, March 31, 2022
CENTER CITY HEALTHCARE,       .
LLC, d/b/a HAHNEMANN          .
UNIVERSITY HOSPITAL AND ST. . Adv. Proc. 21-51273(MFW)
CHRISTOPHER'S HEALTHCARE,     .
LLC,                          .
                              .
         vs.                  .
                              .
SHADES OF GREEN, INC.         .
. . . . . . . . . . . . . . .
(Continued)


              TRANSCRIPT OF VIDEO HEARING
        BEFORE THE HONORABLE MARY F. WALRATH
            UNITED STATES BANKRUPTCY JUDGE
```

Audio Operator:            Electronically Recorded
                           by Nolley Rainey, ECRO

Transcription Company:     Reliable
                           1007 N. Orange Street
                           Wilmington, Delaware 19801
                           (302)654-8080
                           Email: gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
CENTER CITY HEALTHCARE,        .
LLC, d/b/a HAHNEMANN           .  Adv. Proc. 21-50912(MFW)
UNIVERSITY HOSPITAL,          .
PHILADELPHIA ACADEMIC         .
HEALTH SYSTEM, LLC, ST.       .
CHRISTOPHER'S HEALTHCARE,     .
LLC, PHILADELPHIA ACADEMIC    .
MEDICAL ASSOCIATES, LLC,      .
HPS OF PA, LLC, SCHC          .
PEDIATRIC ASSOCIATES, LLC,    .
ST. CHRISTOPHER'S PEDIATRIC   .
ANESTHESIA ASSOCIATES, LLC,   .
STCHRIS CARE AT NORTHEAST     .
PEDIATRICS, LLC, TPS OF PA,   .
LLC, TPS II OF PA, LLC, TPS   .
III OF PA, LLC, TPS IV OF     .
PA, LLC AND TPS V OF PA,      .
LLC.                          .
. . . . . . . . . . . . . . . .
```

APPEARANCES VIA ZOOM:

For the Debtors:              Mark Minuti, Esq.
                             Monique DiSabatino, Esq.
                             SAUL, EWING, ARNSTEIN & LEHR, LLP

For the U.S. Trustee:        Benjamin Hackman, Esq.
                             OFFICE OF THE U.S. TRUSTEE

For the Official Committee
of Unsecured Creditors:      Seth Niederman, Esq.
                             FOX ROTHSCHILD

                             Rachel Brennan, Esq.
                             Boris Mankovetskiy, Esq.
                             Andrew Sherman, Esq.
                             SILLS, CUMMIS & GROSS, PC

For Capital One, N.A. and
Cadence Bank, N.A.:          Gregory Taylor, Esq.
                             ASHBY & GEDDES, PA

For Capital One, N.A.:       Alissa Piccione, Esq.
                             Louis Curcio, Esq.
                             TROUTMAN PEPPER HAMILTON
                              SANDERS, LLP

For Cadence Bank, N.A.:      Brandon Cook, Esq.
                             SMITH, HULSEY & BUSEY

(Appearances Continued)

APPEARANCES VIA ZOOM:   (Continued)

For the MBNF Non-Debtor
Entities:                      Brendan Schlauch, Esq.
                               RICHARDS, LAYTON & FINGER, PA

For HSRE-PAHH I, LLC and
its Affiliates:                Stuart Brown, Esq.
                               Joseph Kernan, Esq.
                               DLA PIPER, LLP (U.S.)

For Drexel University:         Chantelle McClamb, Esq.
                               BALLARD SPAHR, LLP

For Column Financial,
Inc.:                          Nicholas Sabatino, Esq.
                               Raniero D'Aversa, Esq.
                               ORRICK, HERRINGTON
                                & SUTCLIFFE, LLP

For the City of
Philadelphia:                  Megan Harper, Esq.
                               CITY OF PHILADELPHIA LAW
                                DEPARTMENT

For Tenant Business Services
Corporation and Conifer
Revenue Cycle Solutions,
LLC:                           Laura Davis Jones, Esq.
                               PACHULSKI, STANG, ZIEHL
                                & JONES, LLP

For Joel Freedman:             Suzzanne Uhland, Esq.
                               T.J. Li, Esq.
                               Alexandra Zablocki, Esq.
                               LATHAM & WATKINS, LLP

Also Appearing:                Svetlana Attestatova
                               Bill Brinkman
                               Kyle Schmidt
                               Joel Freedman
                               AMERICAN ACADEMIC HEALTH
                                SYSTEM, LLC

                               John DiNome
                               Allen Wilen
                               AMERICAN ACADEMIC

(Appearances Continued)

APPEARANCES VIA ZOOM:   (Continued)

Also Appearing:            Jason Powell
                           MCKESSON MEDICAL

                           Lam Nguyen
                           CITY OF PHILADELPHIA LAW
                            DEPARTMENT

                           Becky Yerak
                           WALL STREET JOURNAL

                           Leslie Pappas
                           LAW360

INDEX

| | Page |
|---|---|
| STATUS CONFERENCE RE:  ADVERSARY PROCEEDINGS | 7 |
| MOTION AUTHORIZING PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC TO MAKE SECURED TERM LOAN TO BROAD STREET ENTITIES | 10 |

| EXHIBIT | EVID. |
|---|---|
| Wilen Declaration | 17 |
| Termsheet | 20 |
| Loan Documents | 20 |

1        (Proceedings commence at 10:031 a.m.)

2              THE COURT:  Good morning.  This is Judge Walrath.

3  We're here in the Center City Health case.

4               I will turn it over to counsel for the debtor to

5  get us started on the agenda.

6              MR. MINUTI:  Good morning, Your Honor.  Mark Minuti

7  from Saul, Ewing, Arnstein & Lehr.  Can Your Honor hear me?

8              THE COURT:  I can.

9              MR. MINUTI:  Thank you, Your Honor.

10             I'm here today on behalf of the debtors.  With me

11  today is my partner Monique DiSabatino.  Also in the virtual

12  courtroom today, Your Honor, are Allen Wilen, the debtors'

13  Chief Restructuring Officer, and John DiNome, who is serving

14  as the acting independent manager of the debtors.

15             We appreciate the Court rescheduling the hearing

16  and making time for us today.  We think the initial time was

17  helpful and we were able to get the loan documents finalized.

18  And as Your Honor may have seen right before you took the

19  bench, there's been a flurry of activity.  But I -- but

20  that's a good thing because I think it's going to make

21  today's hearing much more streamlined and much easier.

22             There were 15 matters originally on today's agenda.

23  There's really only 2 matters or 2 categories of matters

24  going forward, and that's the debtors' financing motion.

25             And then we've got a brief status report on a

1    couple of adversary proceedings.  I think we ought to take --

2    unless Your Honor has a different preference, I think we

3    ought to take those first because I think those will be

4    pretty quick.  My partner Ms. DiSabatino is on the line, and

5    she can give Your Honor an update on those matters.

6            THE COURT:  All right.  Thank you.

7            MS. DISABATINO:  Good morning, Your Honor.  Monique

8    DiSabatino from Saul, Ewing, Arnstein & Lehr on behalf of the

9    debtors.

10           This matter is listed on the final item of the

11   agenda, but this is our status conference on the avoidance

12   actions that are subject to the adversary procedures order.

13           Pursuant to the adversary procedures order, the

14   debtors are to hold quarterly status conferences about the

15   status of all pending and resolved matters that are subject

16   to that adversary procedures order.  We're also required to

17   file a report in advance of the hearing that reflects the

18   status of those matters.

19           The debtors filed their report on February 23rd,

20   2022, and that's located at Docket Number 3623.  As reflected

21   in the report, there are about a 110 complaints that have

22   been filed by the debtors against parties to the avoidance

23   actions.  The majority of these were filed back in June of

24   2021, with a smaller batch filed in August of 2021.

25           At this point, Your Honor, the large majority of

1    these avoidance actions have been resolved.  As of the date

2    that we filed the report, there were 61 matters that were

3    settled and dismissed or otherwise dismissed and 23 matters

4    that were listed as settled with the settlements pending,

5    either because they remained subject to court approval, we

6    were waiting on settlement payments before dismissing, or the

7    settlements were subject to documentation.

8            At this point in time, Your Honor, most of those 23

9    have been resolved and dismissed.  There is only about 6

10   remaining, and those 2 are close to the point where they will

11   be dismissed.

12           There are also 2 other categories with respect to

13   these avoidance actions, the first being default judgment

14   matters.  There are about 20 matters listed in the report for

15   which default judgments were entered.

16           Before taking steps to execute on those judgments,

17   the debtors sent a letter directly to the parties, in order

18   to try and prompt a response from them as a last-ditch

19   effort, obviously, our goal to try and resolve these matters

20   without incurring costs associated with execution.  Those

21   letters did result in responses from about -- from certain

22   parties.  And therefore, as of today, about 7 of those 20

23   matters have either been resolved or settled or are subject

24   to ongoing negotiations.

25           The third bucket, Your Honor, are our remaining

1    open matters.  The report reflects that there are ten matters

2    that are unresolved at this point in time, and for which

3    either discovery is ongoing, there's a dispositive motion

4    pending, or we're in mediation.  Since the report was filed,

5    three of those matters have settled, subject to

6    documentation, so we're really looking at seven matters now.

7            One of those matters is McKesson, which had filed a

8    motion to dismiss.  The parties exchanged briefing and a

9    notice of completion of briefing and requests for argument

10    was filed on March 8th of 2022.

11            And the remaining six matters are in various stages

12    of discovery.  And I believe, in certain of those instances,

13    there's ongoing discussions.

14            So we have made significant progress with respect

15    to the avoidance actions.  We estimate that the resolution of

16    preference matters to date will result or has resulted in

17    about $5.2 million to the estate so far.  I say "will result"

18    because this figure takes into account settlements that have

19    been finalized and the money is in the bank, Your Honor.  It

20    also takes into account settlements where we have the

21    settlement agreements in place, but we don't have the checks

22    yet, but we expect them.

23            I should also note for Your Honor that there are

24    other avoidance actions out there that are not subject to the

25    adversary procedures order, either because we've told those

1    matters while we discussed it the parties, or because they

2    were filed later, and therefore weren't filed in time to be

3    included in that order.

4         But again, we've made significant progress.  And I

5    should note that certain of these matters were settled with

6    the assistance of the mediators appointed under the adversary

7    procedures order, and we do appreciate those -- their

8    efforts, and they did help us with some of the thornier

9    preference matters, and so we appreciate their assistance in

10   that regard.

11        So, unless the Court has any questions, that

12   concludes our report, Your Honor.

13        THE COURT:  No, I have no questions, just a

14   comment, though.

15        I did take a look at the briefing on the motion to

16   dismiss, and I think I'll just issue an opinion.  I don't

17   think oral argument is necessary.

18        MS. DISABATINO:  Got it.  Thank you very much, Your

19   Honor.

20        THE COURT:  All right.  Thank you.  All right.

21        MR. MINUTI:  Your Honor, again for the record, Mark

22   Minuti on behalf of the debtors.

23        That brings us to Item Number 15 on the agenda, and

24   that's the debtors' financing motion.

25        By way of procedural background, this motion was

1    filed on March 4 of 2022, with a motion to shorten.

2    On March 7, the Court had granted the motion to

3    shorten and scheduled the matter for a hearing on March 11th,

4    with objections due on March 10.

5    On March 9, we did receive two objections:  One

6    from the HSRE Entities, filed -- or was filed as a

7    reservation of rights; and one filed by the City of

8    Philadelphia.  Again, that was filed on March 9.  And as Your

9    Honor may have seen on the agenda, that the HSRE Entities

10   filed a supplemental objection or another objection

11   yesterday.

12   I'm pleased to report, Your Honor, that both of the

13   objections -- or I guess the three objections that were filed

14   have now all been resolved, and I'll talk about those

15   resolutions in a minute.

16   With the Court's permission, the hearing was moved

17   to today.  That gave us time, Your Honor, to finalize the

18   form of the relevant loan documents, which we actually

19   finalized for the first time on Monday afternoon, March 28th.

20   We -- within an hour of finalizing those documents, Your

21   Honor, we sent those to the relevant parties, and we filed

22   them all on the docket on March 29th.  They appear at Docket

23   Number 3787.

24   Since filing, we did receive some comments from

25   HSRE, Your Honor.  Those comments are now reflected in

1   updated versions of certain of the loan documents, which we

2   filed right before this hearing.  If the Court didn't have a

3   chance to take a look before the hearing, I'll be able to

4   walk Your Honor through those.  They're not many, Your Honor.

5          And there have been some sort of, you know, cleanup

6   changes, and not substantive changes.  I won't cover those,

7   but I'll walk Your Honor through what we consider to be the

8   more substantive changes at the appropriate time.

9          We -- let's see.  So, this morning, we did file

10  updated versions of those documents.  We also updated --

11  filed an updated version of the proposed order, Your Honor.

12  With the updated version of the proposed order, we also

13  included a redline.  If Your Honor had a chance to look at

14  that, we've added some language to resolve the City of

15  Philadelphia's objection.  And again, I'll talk about that in

16  a minute, Your Honor.

17         On March 30, 2022, we filed the declaration of Mr.

18  Wilen in support of the motion.  That declaration appears at

19  Docket Number 3799.

20         So that's it, in terms of procedural background,

21  Your Honor.

22         In terms of going forward, what I would propose,

23  Your Honor, is the following:

24         That I simply summarize what we're trying to do

25  here today and summarize the proposed loan at a very high

1    level.

2              We can then turn to the evidence portion.  And so

3    there's no surprises, what I propose is that we have Mr.

4    Wilen's declaration serve as his direct testimony.  Mr. Wilen

5    is in the virtual courtroom, is available for cross-

6    examination or to answer any questions that the Court may

7    have.  I don't anticipate, because there are no longer any

8    objections, any cross.

9              And then we can go to argument if Your Honor is so

10   inclined.

11             Is that acceptable to the Court?

12             THE COURT:  That's fine.

13             MR. MINUTI:  So, just by way overview, Your Honor -

14   - and the Court received a little bit of a preview of this

15   with the last time we were before you on December 1 -- by the

16   motion, the debtors are seeking court approval, pursuant to

17   Sections 105(a) and 363 of the Bankruptcy Code, for the

18   debtors to loan up to $5.6 million to the Broad Street

19   entities.  That loan is going to be guaranteed by nondebtor

20   Philadelphia Academic Health Holdings, LLC, pursuant to what

21   we call a "bad boy guarantee."

22             At today's hearing, Your Honor, we're asking for

23   court approval to advance under the loan up to $1,951,439.

24   And then we're going to return later, Your Honor, on more

25   fulsome notice, asking Your Honor to approve the balance of

1    the loan that we will make in due course, assuming Your Honor

2    approves the loan.

3            The loan will provide funding for the operating and

4    maintenance costs for the Broad Street entities real estate,

5    Your Honor, and will preserve the value of that real estate,

6    in which the debtors have asserted an interest.

7            The term of the loan is nine months, Your Honor.

8    That is subject to extension.

9            The loan proceeds are to be repaid in connection

10   with the sale of the real estate on terms and conditions

11   reasonably acceptable to the debtors, in consultation with

12   now the committee, HSRE, and the Tenet parties.

13           As the Court is aware, the loan parties and other

14   parties are currently engaged in a mediation before Judge

15   Carey.  If the mediation, Your Honor, is successful -- or

16   excuse me.  If the mediation is not successful -- and we

17   certainly hope that's not the case.  But if the mediation is

18   not successful or, if, in six months, we don't have a

19   resolution of the mediation, but the mediation is going, the

20   loan provides that the property will go to market.

21           The terms, in terms of how it will go to market,

22   it's going to be subject to mutually acceptable procedures

23   and milestones, again, to be developed with the borrowers,

24   with the debtors' consultation, again, with the committee, as

25   well as HSRE and the Tenet parties.

1            The debtors are going to disburse the loan proceeds

2    monthly, Your Honor, to the existing third-party manager

3    that's currently managing the real estate in Philadelphia.

4    They're going to use the loan proceeds to pay budgeted and

5    documented operating costs and other expenses approved by the

6    debtors.

7            The property manager must provide to the debtors

8    reasonable detailed documentation supporting the proposed

9    operating costs.

10           And to the extent there's anything for which the

11    property manager is going to seek reimbursement, we,

12    obviously, are going to require proof of payment of that, as

13    well.

14           The loan is to be secured by first priority liens

15    on the Broad Street entities' real estate, leaseholds,

16    fixtures, and contract rights.

17           That's subject only to valid existing liens of what

18    I'll call "non-related third parties."  Those liens, Your

19    Honor, approximate or allegedly is approximately $1.6

20    million.  And an example of that, Your Honor, would be, for

21    example, the City alleges water and sewer liens against the

22    property.  So we're not trying to prime any valid existing

23    liens of that nature, and the language we've added to the

24    order makes that clear.

25           The loan will be subject to payment in kind

1    inference, Your Honor, at five percent per annum, compounded

2    monthly.  If there's a default, an additional three percent

3    gets added to the interest rate.

4          The Broad Street entities have agreed not to

5    refinance the secured loan.  And in return, the debtors have

6    agreed that we're not going to foreclose on the loan or take

7    any action to foreclose on the loan for 15 months from the

8    closing.

9          The loan is nonrecourse; meaning, the debtors are

10   going to look solely to the property for repayment of the

11   loan.  But again, there is a bad boy guarantee here.  So,

12   under the circumstances spelled out in the guarantee, there

13   are situation where we can pursue relief against the

14   guarantee -- guarantor, as well.

15         The loan does provide that the Broad Street

16   entities are not going to use any of their existing cash

17   while the mediation is continuing.  We've learned

18   subsequently, Your Honor, that's not a big deal.  They're

19   only sitting on about $16,000 of cash.

20         Finally, Your Honor, there are certain disputed

21   liens on the real estate asserted by an affiliate of the

22   Broad Street entities on its own behalf and as agent for

23   certain of the -- certain parties.  Your Honor heard a lot

24   about that at the December 1 hearing.  These alleged liens

25   are being consensually subordinated pursuant to the

1      subordination agreement that we filed, Your Honor, a couple

2      of days ago and updated this morning.

3              And just to be clear, all parties' rights to

4      challenge those liens down the road, if we can't reach a

5      settlement in the mediation are fully preserved.

6              So that's what the loan is about.  Those are the

7      relevant terms, Your Honor.

8              Let me just pause there and ask if the Court has

9      any questions.

10             THE COURT:  No, I have none at this point.

11             MR. MINUTI:  So, Your Honor, that completes my

12     summary of the loan.

13             In terms of evidence, as I indicated at the outset,

14     what I would propose to do is have Your Honor accept Mr.

15     Wilen's declaration, which is of record and on the docket, as

16     his direct testimony.  As I indicated, Your Honor, Mr. Wilen

17     is in the courtroom and available to answer questions or for

18     cross-examination.

19             THE COURT:  Are there any objections to that?

20         (No verbal response)

21             THE COURT:  All right.  I will admit the

22     declaration as part of the record then.

23         (Wilen Declaration received in evidence)

24             THE COURT:  Does any --

25             MR. MINUTI:  By the way, Your Honor --

1           THE COURT:  Does anybody --

2           MR. MINUTI:  -- (indiscernible)

3           THE COURT:  -- wish to cross-examine or --

4           MR. BROWN:  Your Honor, Stuart Brown on behalf of

5    the HSRE parties.

6           Mr. Minute mentioned that we did file a

7    supplemental objection yesterday.  One of the issues that we

8    raised in that objection is an implication at Paragraph 16 of

9    Mr. Wilen's declaration, where the language could be

10   construed as HSRE's agreement with the debtors' assertion

11   that the debtors hold an interest in the real estate that is

12   to be mortgaged under these loan documents.

13          I don't think I need to take the Court's time or

14   cross-examine Mr. Wilen, but I did want mention, put on the

15   record that HSRE does not agree to -- does not agree that the

16   debtors hold an interest in the real estate presently, and

17   just wanted to make sure the objection was carried, in order

18   to have the record reflect that.  I don't need to take Mr.

19   Wilen's time or Your Honor's time with cross-examination.

20   And thank you, Your Honor, for indulging me.

21          THE COURT:  All right.  With that statement on the

22   record, does anybody else have any desire to cross-examine

23   the witness?

24      (No verbal response)

25          THE COURT:  I hear none.

1          All right.  You may proceed, Mr. Minuti.

2          MR. MINUTI:  Thank you, Your Honor.

3          Your Honor, there is one point in the declaration

4     that I've been asked to clarify, and so I would like to do

5     that.

6          At Paragraph 13 of the declaration, Mr. Wilen makes

7     reference to nondebtor Philadelphia Academic Health Holdings,

8     LLC's indirect interest in the real estate.

9          For purposes of clarity, Mr. Wilen, in the

10    declaration, was referring to the fact that Philadelphia

11    Academic Health Holdings, LLC is the holding company of the

12    membership interest in the Broad Street entities.  That's all

13    he was referring to and nothing more.  There wasn't any

14    attempt to make a legal opinion here or state an interest or

15    ownership interest in the property.  I wanted to make that

16    clear.

17         And of course, we don't have any problem with Mr.

18    Brown's reservation of rights with respect to their position

19    with regard to the debtors' interest in the property, so

20    that's fine by us.

21         THE COURT:  Okay.

22         MR. MINUTI:  With that, Your Honor, what we'd like

23    to do is ask Your Honor to also accept into evidence the

24    termsheet, which was an exhibit to the motion; the --

25    obviously, the Wilen declaration; and the forms of the loan

1    documents, Your Honor, that we filed of record.  Again, I

2    don't think anybody has any objection.  And I'll walk Your

3    Honor through some of the changes there.  But maybe -- I

4    think this is the right time to ask that Your Honor admit

5    those into evidence.

6         THE COURT:  All right.  Any objection to the

7    admission of the loan documents?

8         (No verbal response)

9         THE COURT:  All right.  They are admitted.

10         (Termsheet received in evidence)

11         (Loan Documents received in evidence)

12         Give me the docket number for the latest again.

13         MR. MINUTI:  Certainly, Your Honor.  Give me one

14    moment because it was this morning.

15         (Pause in proceedings)

16         THE COURT:  3806?  Yeah, dated forms of loan

17    documents.

18         MR. MINUTI:  Correct, Your Honor.

19         THE COURT:  All right.  Just for the record.  All

20    right.  They are admitted then.

21         MR. MINUTI:  Thank you.  Thank you, Your Honor.

22         Your Honor, that brings us to argument.  I think

23    I'll be brief and certainly able to answer any questions that

24    the Court may have.

25         You know, the debtors obviously appreciate that

1   this is an unusual motion.  It is not every day that a debtor

2   is before Your Honor asking to -- for the authority to loan

3   money.  But here, Your Honor, the funding that the debtor is

4   seeking court approval to provide is critically important to

5   the debtor and its estates.

6       As detailed by Mr. Wilen in his declaration, the

7   debtors have sued, among other parties, the Broad Street

8   entities.  They've asserted an interest in the subject

9   property.  And they're going to look to the value, frankly,

10  of that real property, Your Honor, to hopefully bring about a

11  successful mediation.  But if the mediation is not

12  successful, the value of that real property will become

13  relevant in successful litigation against the parties.

14      As I mentioned a minute ago, Your Honor, the

15  debtors and all of the other parties are parties to a

16  mediation before Judge Carey.  I can tell Your Honor that

17  everyone is working very hard, everyone is working in good

18  faith.  But the mediation is taking more time than I know

19  that anybody would want, Your Honor, simply because of the

20  number of parties, the number of issues, the complexity of

21  the issue -- the issues, and frankly, the implication of

22  different resolution structures, how it flows through and

23  affects the different parties in the case.

24      Now, meanwhile, as set forth in Mr. Wilen's

25  affidavit or declaration, it costs approximately $425,000 a

1  month to preserve the Broad Street entities' properties;

2  that's inclusive of real estate taxes.  And unfortunately,

3  the Broad Street entities themselves, Your Honor, have very

4  little funds with which to fund those properties to maintain

5  their value.

6          When we were last before the Court in December, the

7  Broad Street entities were trying ask Your Honor to help

8  approve a long from Gordon Brothers.  And at that time, I

9  think, all of the -- all of the objectors, at that time, we

10  all understood that financing was necessary to support the

11  properties, but obviously, we didn't like that particular

12  loan.

13          When Your Honor denied the loan, there was some

14  discussion on the record that the parties should get together

15  and see if we could come up with a resolution that would, in

16  fact, maintain the value of those properties, and the motion

17  before Your Honor today is that resolution.  With the help of

18  the mediator, Your Honor, we were able to negotiate with the

19  Broad Street entities, and so -- and ultimately reached and

20  finalized the loan documents.

21          So the loan before you today, we believe, is pretty

22  straightforward.  It's limited in amount, it's $5.6 million,

23  as compared to, for example, the seventeen-and-a-half-

24  million-dollar Gordon Brothers loan Your Honor heard about

25  back in December.

1      The loan today is directed in purpose.  It's going

2  to preserve the value of the real estate.  It is fully

3  secured.  It includes appropriate parameters and safeguards,

4  Your Honor, to ensure that the loan proceeds will be used to

5  support the real estate, which, ultimately, will enure to the

6  benefit of the debtors.

7      The Broad Street entities here do have an immediate

8  need of approximately $1.9 million, Your Honor, and so that's

9  what we're asking for approval today.  And we will come back

10  to the balance, Your Honor, on more wholesome [sic] notice to

11  all parties-in-interest.

12      And Mr. Wilen testified in his declaration, there

13  appears to be little risk here in providing the loan because

14  it appears the value to the estate is certainly worth

15  significantly more than the proposed loan amount.  I wouldn't

16  say there isn't any risk, Your Honor.  There's probably --

17  you know, there is some risk in any loan.  But here, we

18  believe the risk is outweighed by the benefits.

19      We believe the decision to pursue this loan and ask

20  Your Honor to approve the loan is the product of sound

21  business judgment on the part of the debtors because it will

22  enure to the benefit of the debtors and to the debtors'

23  estates.

24      As reflected by the certificates of service, Your

25  Honor, we did provide broad notice of the motion before Your

1    Honor today.

2           Again, we're only seeking a portion of the relief

3    today; we will come back later.

4           We're not seeking to prime any valid existing liens

5    of any unrelated third parties.  And that managed, as I've

6    indicated, to address the objection of the City.

7           You've already heard that the HSRE objection has

8    been resolved.

9           So, Your Honor, in conclusion, we believe the loan

10   is fair and reasonable under the circumstances, the product

11   of good faith and arm's length negotiations.  There's

12   certainly no evidence here of any bad faith.  And we would

13   ask that Your Honor approve the loan and authorize the debtor

14   to enter into the transaction.  Thank you.

15          THE COURT:  Thank you.

16          Does anybody else wish to be heard?

17          MS. UHLAND:  Yes, Your Honor.  Suzzanne Uhland of

18   Latham & Watkins on behalf of the Broad Street entities.

19          THE COURT:  Yes, Ms. Uhland.

20          MS. UHLAND:  So, Your Honor, thank you for your

21   patience in the multiple rescheduling of what I keep

22   referring to as a "reverse DIP loan."

23          As Mr. Minuti noted, it has been a process of arm's

24   length and constant negotiation to get us to this point.

25          It was critical, from our clients' perspective.  We

1    first believed -- one reason we're here in March, instead of

2    in January, is there was an optimistic time when we thought

3    we would actually complete our mediation by January, and we

4    wouldn't need to do this loan as an intermediate step.  But

5    as Mr. Minuti noted, it's a very complex -- unusually

6    complex, both because of the (indiscernible) parties and a

7    variety of other corporate and tax issues that have created

8    this very complex mediation.

9          So, accordingly, our role was to get the interim

10    financing, but, if we didn't reach a mediated resolution, not

11    to overly tilt the playing field, to try to keep the parties

12    in relatively the same position they would have been if they

13    would have gotten the loan, you know, and absent the

14    mediation situation.

15          So that's why we reached a compromise and agreed

16    that the loan would have this extended period of time for the

17    marketing of the property.  But at the same time, the Broad

18    Street entities have agreed they will not go out and

19    refinance the loan.  So this keeps a balanced measure of

20    maximizing the value of the property without the risk of the

21    other -- the objectors to the financing being concerned about

22    a refinance.

23          All the parties' rights are preserved in this.  And

24    while there is an agreement on the refinancing, the parties'

25    rights with respect to the appeal of the DIP financing -- or

1    the prior financing order are remaining.  Everyone is

2    reserving their rights.  But as I said -- Mr. Minuti said,

3    we're hopeful that the -- that our mediated resolution with

4    former Judge Carey will make all of that not relevant.

5         One thing I wanted to note, just a couple of small

6    matters with respect to this, is:  While there's a reference

7    to operating costs in the motion, I just wanted to be clear

8    to the Court that that includes, not just maintenance type of

9    operating costs; it also includes taxes and insurance and

10   everything you think of as like major costs needed to

11   maintain the property.

12        I also wanted to note that the updated loan

13   documents reflect the correct balance for the Broad Street

14   entities' bank accounts at approximately $42,000.  The prior

15   number that we were using was related to multiple parties'

16   bank accounts that are not the borrowers'.  So we have

17   updated that in the reflected loan documents that the Court

18   has.

19        And finally, I did want to note that there is a bad

20   boy guarantee, but this bad boy guarantee, like this reverse

21   DIP, is different from most.  Usually, you see a,

22   quote/unquote, "bad boy guarantee" if there's a risk of a --

23   because the lender wants to keep the company out of

24   bankruptcy.

25        In our particular case, it's a bad boy -- the

1    trigger of it for the bad boy is a change in control.  So, in

2    other words, the -- if the parent transfers the equity, that

3    is what would trigger that.  And then there's also some, you

4    know -- some -- that triggers the full amount of the loan.

5    There's also other nonrecourse events for certain what I call

6    "bad acts," up to the losses caused by those bad acts.

7              But I did want the Court to be aware that it was

8    not a -- you know, that the -- it was not a bankruptcy trigger

9    on this bad boy guarantee.  It was just to enforce the

10   covenant and the parties' agreement that the ownership will

11   remain with the current ownership as we try to all

12   collectively work through the situation.

13             So, Your Honor, again, thank you so much for your

14   patience.  Thank you for -- to the debtors and Judge Carey

15   for their patience, as well.  It's -- for a small loan, it's

16   been an inordinate amount of paper flying back and forth.

17   But I think it's worth it to maximize the value of these

18   assets for all of the collective stakeholders in this

19   process.

20             THE COURT:  Okay.  Thank you.

21             Anybody else wish to be heard?

22        (No verbal response)

23             THE COURT:  No.

24             Well, just let me add my thanks, not only to the

25   parties, but the mediator, as well.  And I see this agreement

1    as being evidence that the parties are getting closer

2    together, at least are able to resolve some of their issues.

3    And I am hopeful that the process continues and the parties

4    are able to resolve their, what are essentially business

5    issues.

6              All right.  Mr. Minuti, did you say you wanted to

7    go through the changes?  I see the one change in the form of

8    order for the Philadelphia -- the City.

9              MR. MINUTI:  Does Your Honor have the ability to

10   access the documents?

11             THE COURT:  I do.

12             MR. MINUTI:  Okay.  So, if you pull up the secured

13   promissory note.  And this will go quick, Your Honor, there

14   are not a lot of changes.

15             THE COURT:  Let me pull that up.  Hold on.  3806,

16   okay.  I have it.  That's the promissory --

17             MR. MINUTI:  And -- yeah.  So the first change is

18   on Page 3.  I'm looking at the blackline, if you are.

19             THE COURT:  Hold on.  Is there a blackline?  Oh, I

20   see, yeah.  Okay.  Page 3.  Got it.

21             MR. MINUTI:  Okay.

22             THE COURT:  (Indiscernible)

23             MR. MINUTI:  So NKF is the property manager, but we

24   just substituted the defined term, not a big deal.

25             Next, Your Honor, we'll turn to Page 6.

1          THE COURT:  Yep.

2          MR. MINUTI:  This is Subsection 8(h).  You will see

3  -- this is a reservation of rights.  You'll just see that we

4  expanded it to now include HSRE and tenant.

5          THE COURT:  Okay.  Looks good.

6          MR. MINUTI:  Just correcting a reference at the top

7  of Page 7.  That's non-substantive.

8          And then, if we jump ahead to Page 15, Paragraph

9  17.  Okay.  This is just simply preservation of claims.

10  Again, we've expanded this to include HSRE, Tenet, and the

11  committee.

12          And then, in Paragraph 18, we've expanded the

13  consultation between the committee to include HSRE and Tenet.

14          THE COURT:  I see it.

15          MR. MINUTI:  All right.  If we could turn next to

16  the guarantee.  Again, there should be a blackline, Your

17  Honor.

18          THE COURT:  Let me find -- yes, I have it.

19          MR. MINUTI:  Yeah, I think the changes here are

20  pretty minor.

21          If you go to Page 2, Subsection 3.2.  And this has

22  to do with the obligations guaranteed.  And we've simply

23  expanded it again to include consent from HSRE and Tenet.

24          THE COURT:  Okay.

25          MR. MINUTI:  And then, finally, if Your Honor will

1    turn to the second amended and restated lien subordination

2    agreement.  Again, there should be a blackline or a redline.

3              THE COURT:  I have it.

4              MR. MINUTI:  If we can turn to Page 9, Paragraph

5    21.

6              THE COURT:  Okay.  I have it.

7              MR. MINUTI:  Okay.  Again, this is a preservation

8    of claims section.  We've expanded it to include the senior

9    lender, HSRE, Tenet, and the committee.

10             And then, on the final page, Page 10, the

11   consultation section.  Again, we've expanded that to include

12   the senior -- that the senior lender here will consult with

13   HSRE and tenant.

14             THE COURT:  Okay.

15             MR. MINUTI:  And there, it already provided for the

16   committee.

17             So those were the changes.  I think Your Honor said

18   you already saw the change to the order.

19             THE COURT:  I did.

20             All right.  They look fine to me.

21             Again, any final comments from anybody?

22             MS. UHLAND:  Yes, Your Honor.  Suzanne Uhland of

23   Latham & Watkins for the borrowers.  I understand -- the

24   nondebtor borrowers.

25             I understand that there is a minor correction on

1    the borrowing amount because of a -- confirming a tax amount

2    that has to be paid.  Perhaps Mr. Wilen can confirm the new

3    amount has been agreed.  I think it's 1.99 million.

4            THE COURT:  Mister -- is he still on?  Oh, yes, he

5    is.  Can you unmute, Mr. Wilen?  Do you -- Mr. Wilen, do you

6    hear us?

7            MR. WILEN:  Yes.

8            The amount is 1,951,439.

9            THE COURT:  Ms. Uhland, you think it's a different

10   number?

11           MS. UHLAND:  Let me ... I do think it's a different

12   number.  I think it's increased by $90,000.

13           MR. WILEN:  I'm not aware of that change and have

14   not received anything related to that change.

15           MS. UHLAND:  Can we get -- can we get the Court to

16   authorize that number, so long as the debtors agree to that

17   number.

18           THE COURT:  Mr. Minuti, agreed on that then?

19           MR. MINUTI:  That would be fine.  As long as -- as

20   long it's subject to our consent, Your Honor, that will be

21   fine.

22           MS. UHLAND:  Yeah.

23           MR. MINUTI:  That will require a change to

24   Paragraph 2.  Does Your Honor want us to upload a clean --

25           THE COURT:  Yeah.

1           MR. MINUTI:  -- or just handwrite it in?  We will

2      upload a clean.

3           THE COURT:  Yeah, I'd like you to do a clean form

4      of order under certification of counsel, so it gets to me.

5           MR. MINUTI:  We will, Your Honor.

6           MS. UHLAND:  And Mr. Minuti, why don't you just do

7      up to and add $90,000 to the prior number.

8           MR. MINUTI:  Okay.

9           MS. DISABATINO:  Your Honor, one other housekeeping

10     matter.  There is a blank in the order for the date and time

11     of the final hearing that we would be happy to fill in when

12     we upload the order, subject to your schedule.

13          THE COURT:  That's a good idea.  Check with Ms.

14     Capp on the date.  Well, let me check with Ms. Capp, she is

15     ... how far out do you want?  Two weeks do we need because

16     it's a final financing, still?

17          MR. MINUTI:  That's acceptable to the debtors, Your

18     Honor.

19          THE COURT:  Let's see what we have.  She's

20     checking.  Oh, you have an April 9th hearing already at

21     10:30.  Shall we just put it down for that?

22          MR. MINUTI:  Let me ask Ms. Uhland if that works.

23          MS. UHLAND:  Did you say April 9th?  For some

24     reason, I thought that was actually a Saturday.

25          THE COURT:  No, 19th.  I'm sorry, I misspoke.  The

1   19th, that's a Tuesday.

2            MS. UHLAND:  Actually, that does not work for me.

3   I'm returning from Europe that day.  But if -- that is --

4   that's a scheduled hearing?

5            MR. MINUTI:  Yeah.

6   I'm sure my colleague Mr. Li can handle this, the final

7   hearing, for me.

8            MR. BROWN:  If I might, Your Honor?  Stuart Brown.

9   That -- the 19th also does not work for me.  I'm attached by

10  Judge Owens that morning.

11           THE COURT:  Yeah.  Mr. Minuti, I am free -- pretty

12  free the rest of the week.

13           Why don't I suggest this to the parties?  That they

14  -- you're going to be sending out notice of this anyway.  Why

15  don't you talk with Ms. Capp and pick a date after the 19th

16  that would work for the parties?  Okay?

17           MR. MINUTI:  We'll do so, Your Honor.

18           It's pretty important, Your Honor, that we get the

19  order signed today, so we will upload it as soon as we can

20  after coordinating with Ms. Capp, and would appreciate Your

21  Honor's prompt attention to it.  We thank you.

22           THE COURT:  I will.  I'll be looking for it, so --

23           MR. MINUTI:  Thank you.

24           THE COURT:  -- get it finalized for the final,

25  final time and upload it --

1      MR. MINUTI:  Very good.

2      THE COURT:  -- with a COC.

3      MR. MINUTI:  Your Honor, I believe that --

4      THE COURT:  All right.

5      MR. MINUTI:  -- that completes our agenda then.  We

6  appreciate the Court's time.  And again, thank you for your

7  patience.  And we, too, thank the -- frankly, all the

8  mediation parties that helped us bring us and get us together

9  here today, so thank you.

10      THE COURT:  Good.  Thank you.

11      MR. BROWN:  Thank you.

12      MS. UHLAND:  Thanks, everyone.

13      THE COURT:  Thanks to everybody.  And we'll stand

14  adjourned.

15      (Proceedings concluded at 11:07 a.m.)

16                          *****

1                          CERTIFICATION

2              I certify that the foregoing is a correct

3     transcript from the electronic sound recording of the

4     proceedings in the above-entitled matter to the best of my

5     knowledge and ability.

6

7

8

9

10    _____        April 1, 2022

11    Coleen Rand, AAERT Cert. No. 341

12    Certified Court Transcriptionist

13    For Reliable

14