# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 19-11466 (MFW)<br><br>(Jointly Administered) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC, ST. CHRISTOPHER'S HEALTHCARE, LLC, PHILADELPHIA ACADEMIC MEDICAL ASSOCIATES, LLC, HPS OF PA, L.L.C., SCHC PEDIATRIC ASSOCIATES, L.L.C., ST. CHRISTOPHER'S PEDIATRIC URGENT CARE CENTER, L.L.C., SCHC PEDIATRIC ANESTHESIA ASSOCIATES, L.L.C., STCHRIS CARE AT NORTHEAST PEDIATRICS, L.L.C., TPS OF PA, L.L.C., TPS II OF PA, L.L.C., TPS III OF PA, L.L.C., TPS IV OF PA, L.L.C. and TPS V OF PA, L.L.C.,<br><br>    Plaintiffs,<br><br>v.<br><br>HURON CONSULTING SERVICES LLC,<br><br>    Defendant. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Adv. Proc. No. 22-_____ (MFW) |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

2954580.1 04/14/2022

**COMPLAINT FOR AVOIDANCE AND RECOVERY OF
TRANSFERS PURSUANT TO 11 U.S.C. §§ 548 & 550**

Plaintiffs Center City Healthcare, LLC ("**CCH**"), Philadelphia Academic Health System, LLC ("**PAHS**"), St. Christopher's Healthcare, LLC ("**SCH**"), Philadelphia Academic Medical Associates, LLC, HPS of PA, L.L.C., SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., TPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., TPS IV of PA, L.L.C., and TPS V of PA, L.L.C. (collectively, the "**Debtors**" or the "**Plaintiffs**"), by their undersigned counsel, as and for their *Complaint for Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 548 & 550* ("**Complaint**") against Huron Consulting Services LLC ("**Huron**" or the "**Defendant**"), allege as follows:

**NATURE OF ACTION**

1.      Pursuant to Sections 548 and 550 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Plaintiffs seek to avoid and recover from the Defendant, or from any other person or entity for whose benefit the transfers were made, all transfers of property of the Plaintiffs to the Defendant during the period between January 11, 2018 and the commencement of the above-captioned bankruptcy cases (the "**Chapter 11 Cases**") for which the Plaintiffs did not receive reasonably equivalent value.

2.      Plaintiffs have conducted an analysis of the transfers made to the Defendant and have determined that transfers in the aggregate amount of at least $620,458.79 are avoidable and not protected from avoidance by any applicable defense.

3.      During the course of this Adversary Proceeding, Plaintiffs may learn (through discovery or otherwise) of additional transfers made to the Defendant that are avoidable under Section 548 of the Bankruptcy Code. Debtors intend to avoid and recover all such transfers made

to or for the benefit of the Defendant or any other transferee. Debtors reserve the right to amend this Complaint to include, without limitation: (i) further information regarding the Transfers (as such term is defined below), (ii) additional transfers made, (iii) additional plaintiffs, (iv) modifications of and/or revisions to the Defendant's name, (v) additional defendants, and (vi) additional causes of action, if applicable (collectively, the "**Amendments**"), that may become known to Plaintiffs at any time during this Adversary Proceeding, through formal discovery or otherwise, and intend for any such Amendments to relate back to this Complaint.

## THE PARTIES

4.     On June 30, 2019 or July 1, 2019 (collectively, the "**Petition Date**"), the Debtors commenced the above-captioned Chapter 11 Cases.

5.     No trustee has been appointed for any of the Debtors in the Chapter 11 Cases and the Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. Accordingly, Plaintiffs have the authority to file this Complaint commencing, and thereafter to prosecute, this adversary proceeding to avoid and recover fraudulent transfers and to disallow claims.

6.     Defendant is a limited liability company formed under the laws of the State of Delaware with an office address at 550 West Van Buren Street, Floor 17, Chicago, Illinois 60607.

7.     The Defendant can be served with process by sending a copy of the Complaint by regular United States mail to its registered agent, Corporation Service Company, 251 Little Falls Drive, New Castle, Delaware 19808.

## JURISDICTION AND VENUE

8.     The United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") has jurisdiction over this adversary proceeding under the Bankruptcy Code pursuant to

28 U.S.C. §§ 157(a) and 1334(a) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.

9. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter final orders herein.

10. Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiffs affirm their consent to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in this adversary proceeding consistent with Article III of the United States Constitution.

11. Venue of this adversary proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## FACTS

**A.    Paladin's Retention of Huron and the Reduced Huron Project Liberty Fees**

12. On February 15, 2017, non-debtor Paladin Healthcare Capital, LLC ("**Paladin**") signed a letter of intent with Tenet Business Services Corporation (together with certain of its affiliates, "**Tenet**") for the proposed purchase of, *inter alia*, Hahnemann University Hospital and St. Christopher's Hospital for Children (together, the "**Hospitals**"), two hospitals located in Philadelphia, Pennsylvania, and certain real property (collectively, the "**Project Liberty Transaction**").

13. Upon information and belief, at all times relevant to this Complaint, Paladin was a Delaware limited liability company owned and controlled by Joel Freedman ("**Freedman**"). Paladin is not an affiliate of any of the Debtors.

4

14.     In furtherance of the Project Liberty Transaction, on August 31, 2017, certain entities controlled by Freedman and entities controlled by or affiliated with Harrison Street Real Estate, LLC (collectively, the "**HSRE Entities**"), and Tenet entered into an asset sale agreement (as amended, the "**ASA**").

15.     In connection with the ASA, Freedman created (i) "OpCo" entities (the Debtors in the Chapter 11 Cases), to purchase the Hospitals and various related practice groups, and (ii) several "PropCo" entities, to purchase certain real estate, including the real estate on which the Hospitals were located.

16.     Certain other valuable real estate was to be acquired in the Project Liberty Transaction by joint venture owned by one of the HSRE Entities, as majority owner, and Philadelphia Academic Health Holding, LLC, another Freedman controlled entity, as minority owner.

17.     On or about October 11, 2017, Paladin engaged Defendant to provide consulting services to Paladin in connection with the Project Liberty Transaction pursuant to a written engagement letter (the "**Huron/Paladin Engagement Letter**").  In exchange for the consulting services to be provided by Defendant, Defendant and Paladin agreed in the Huron/Paladin Engagement Letter that Defendant would receive a flat fee of $999,000, plus a reimbursement of expenses.

18.     The Project Liberty Transaction closed on January 11, 2018 (the "**Closing**").

19.     Following the Closing, Defendant and Paladin engaged in discussions and negotiations concerning Defendant's fees and expenses and eventually entered into a First Amendment to Engagement Letter dated April 6, 2018 (the "**Huron/Paladin Amended Engagement Letter**"), under which the parties agreed that the total professional fees and expenses

owed to Defendant by Paladin for the Project Liberty Transaction would be reduced to $620,458.79 (the "**Reduced Huron Project Liberty Fees**").

20. Consistent with the Huron/Paladin Amended Engagement Letter, on April 9, 2018, Defendant issued Invoice #1111712 to Paladin alone for the amount of the Reduced Huron Project Liberty Fees.

21. While the Huron/Paladin Amended Engagement Letter required the Reduced Huron Project Liberty Fees to be paid within thirty (30) days following the effective date of the amended engagement letter, Freedman and Defendant later agreed that such amount would be paid in four (4) equal monthly installments.

**B.     The Debtors' Cash Management System Post-Acquisition**

22. At all times relevant to this Complaint, all of the Debtors were obligors under that certain Credit and Security Agreement dated as of January 11, 2018 (as amended and restated or otherwise modified from time to time, the "**MidCap Facility**") provided by MidCap Funding IV Trust and other entities related to MidCap Funding IV Trust (collectively, "**MidCap**").

23. Due to the manner in which draws under the MidCap Facility were funded, the Debtors used a combined cash management system for the collection of revenues, paydowns on the MidCap Facility, and the payment of the Debtors' other obligations.

24. Specifically, at all relevant times prior to and as of the Petition Date, Debtor PAHS maintained, *inter alia*, certain master deposit and concentration accounts. In addition, at all relevant times prior to and as of the Petition Date, the operating Debtors, including CCH and SCH, maintained government and non-government revenue lockbox accounts for collections.

25. Receipts from government and non-government payors were received by CCH and SCH in their respective lockbox accounts, which in turn were transferred into PAHS's master

6

deposit account (the "**Master Deposit Account**"). On a daily basis, MidCap would sweep the Master Deposit Account in order to pay the Debtors' joint loan obligations to MidCap.

26. The Debtors submitted aggregate loan advance requests to MidCap based on their respective funding needs. MidCap funded loan advances into a single bank account maintained by PAHS (the "**Master Concentration Account**").

27. The funds advanced into the Master Concentration Account were intended, *inter alia*, for payment of the Debtors' obligations.

28. Obligations of the Debtors sometimes were paid by check and sometimes were paid by wire transfer.

29. Payments made by wire transfer were made only from the Master Concentration Account.

30. Notwithstanding the facts that (i) the Defendant was engaged *by Paladin* pursuant to the Huron/Paladin Engagement Letter; (ii) the Defendant's services were provided *to Paladin*; and (iii) the Debtors received no benefit or value from the Defendant's services, the Debtors, and not Paladin, paid the Reduced Huron Project Liberty Fees to Huron, as detailed on **Exhibit A** attached hereto and incorporated by reference herein (collectively, the "**Transfers**").

31. **Exhibit A** sets forth the details of each of the Transfers, including the applicable wire information, the payment date and the payment amount. The aggregate amount of the Transfers is not less than $620,458.79.

32. Each of the Transfers was a transfer of an interest in property of the Plaintiffs.

33. Each of the Transfers was made to or for the benefit of the Defendant.

34. Each of the Transfers were made within two years prior to the Petition Date.

35. The Plaintiffs did not receive reasonably equivalent value for the Transfers.

36. The Plaintiffs made the Transfers at a time when the Plaintiffs (i) were insolvent, or became insolvent as a result of such Transfers, (ii) were engaged in a business or a transaction, or were about to engage in a business or a transaction for which any property remaining with Plaintiffs was unreasonably small capital, or (iii) intended to incur or believe that they would incur debts that would be beyond the Plaintiffs ability to pay such debts as they matured.

37. The Debtors have filed a proposed plan of liquidation in the Chapter 11 Cases that does not provide for payment in full of the claims of general unsecured creditors of any of the Debtors. General unsecured creditors will not receive payment in full on account of their claims in any of the above-captioned bankruptcy cases.

## FIRST CLAIM FOR RELIEF

### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 548)

38. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 37 of the Complaint as though set forth fully herein.

39. The Transfers are avoidable under Section 548 of the Bankruptcy Code as:

(a) the Plaintiffs making the Transfers received less than reasonably equivalent value in exchange for such Transfers; and

(b) the Plaintiffs making such Transfers: (i) were insolvent on the date such Transfers were made or became insolvent as a result of such Transfers, (ii) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining was an unreasonably small capital; or (iii) intended to incur, or believed they would incur, debts beyond such Plaintiffs' ability to pay as such debts matured.

40. Plaintiffs are entitled to an order and judgment under Section 548 of the Bankruptcy Code that the Transfers described herein be avoided.

## SECOND CLAIM FOR RELIEF

### (Recovery of Property -- 11 U.S.C. § 550)

41. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 of the Complaint as though set forth fully herein.

42. As alleged above, Plaintiffs are entitled to avoid the Transfers under Section 548 of the Bankruptcy Code.

43. As Defendant is the initial transferee of the Transfers, Plaintiffs are entitled to receive for their bankruptcy estates the proceeds or value of the Transfers under Section 550 of the Bankruptcy Code.

WHEREFORE, Plaintiffs pray for judgment as follows:

(a) For a determination that the Transfers are avoidable under 11 U.S.C. § 548 and that the Plaintiffs are entitled to recover the Transfers under 11 U.S.C. § 550 of the Bankruptcy Code;

(b) Awarding to Plaintiffs the costs of suit incurred herein, including pre-judgment interest; and

(c) For such other and further relief as the Court may deem just and proper.

Dated: April 14, 2022

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Monique B. DiSabatino*
Mark Minuti (DE Bar No. 2659)
John D. Demmy (DE Bar No. 2802)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-6813
mark.minuti@saul.com
john.demmy@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com

*Counsel for the Plaintiffs*