# **EXHIBIT B**

**(Declaration of Allen Wilen)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CENTER CITY HEALTHCARE, LLC, *et al.*,[1] | ) Case No. 19-11466 (MFW) |
|  | ) |
| Debtors. | ) Jointly Administered |
|  | ) |

**DECLARATION OF ALLEN WILEN IN SUPPORT OF MOTION OF
THE DEBTORS FOR ENTRY OF AN ORDER APPROVING SETTLEMENT
AGREEMENT BETWEEN THE DEBTORS AND CROWELL & MORING LLP**

I, Allen Wilen, hereby declare the following, under the penalty of perjury:

1. I am the Chief Restructuring Officer ("**CRO**") of Center City Healthcare, LLC and certain of its subsidiaries and affiliates, each a debtor and debtor-in-possession (each, individually, a "**Debtor**" and, collectively, the "**Debtors**") in the above-captioned chapter 11 cases.

2. I have served as CRO for the Debtors since April 8, 2019. In such capacity, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I am above 18 years of age, and I am competent to testify.

3. I am duly authorized to make and submit this declaration on behalf of the Debtors in support of the *Motion of the Debtors for Entry of an Order Approving Settlement Agreement*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).

*Between the Debtors and Crowell & Moring LLP* (the "**Motion**"),[2] filed contemporaneously herewith.

4. I read and authorized the filing of the Motion. The facts set forth in the Motion are true and correct to the best of my knowledge, information and belief.

5. Prior to the Petition Date, C&M entered into an engagement agreement with non-debtor Paladin to provide certain legal services related to the Project Liberty Transaction, pursuant to which (i) the Debtors would eventually acquire, *inter alia*, their hospital businesses and certain entities controlled by Joel Freedman and (ii) certain entities controlled by affiliates of Harrison Street Real Estate Capital LLC would acquire certain real estate from Tenet Business Services Corporation and certain of its affiliates.

6. The Project Liberty Transaction closed on January 11, 2018.

7. For the period prior to the closing of the Project Liberty Transaction, C&M issued the Pre-Closing Invoices identified on **Exhibit C** to the Motion to Paladin in the total amount of approximately $3.1 million. C&M ultimately agreed to discount the Pre-Closing Invoices to approximately $2.4 million.

8. On or about August 31, 2018, and as updated on September 24, 2018, C&M entered into an engagement agreement directly with the Debtors to provide certain legal services.

9. In addition to the Pre-Closing Invoices, C&M issued the invoices (which are identified on Exhibit A to the Settlement Agreement) for services provided subsequent to the Closing.

10. As detailed on Exhibit A to the Settlement Agreement, the Debtors alone paid C&M a total of $2,742,546 in satisfaction of the Invoices.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

11. On April 12, 2022, the Debtors sent the Demand Letter to C&M, asserting that the Transfers were constructive fraudulent conveyances pursuant to section 548 of the Bankruptcy Code. In the Demand Letter, the Debtors assert, *inter alia*, that C&M's services were provided to non-debtor Paladin and/or that the Debtors did not receive reasonably equivalent value in exchange for the Transfers.

12. By letter dated May 12, 2022, C&M responded to the Demand Letter, denying that the Transfers were constructive fraudulent transfers under section 548 of the Bankruptcy Code and otherwise asserting certain defenses to the Alleged Claims, including, but not limited to, C&M's assertion that the Debtors did receive reasonably equivalent value for the services provided.

13. The Debtors and C&M have exchanged information and engaged in good faith, arms-length negotiations in an attempt to resolve the Debtors' Alleged Claims.

14. Subject to Court approval, the Debtors and C&M now desire to resolve the Alleged Claims without the time, expense and uncertainty attendant with litigation over such issues on the terms set forth in the Settlement Agreement.

15. The Settlement Agreement attached as Exhibit 1 to the Proposed Order approving the Motion is a true and correct copy of the Settlement Agreement signed by the Parties.

16. While I believe the Debtors have a high probability of recovering on the Alleged Claims if the Debtors filed an adversary proceeding against C&M, the outcome of litigation is never certain and the compromise set forth in the Settlement Agreement is an appropriate resolution of the Alleged Claims, taking into account the defenses asserted by C&M, including C&M's assertions (which are disputed by the Debtors) that: (a) the Debtors were not insolvent or

-4-

inadequately capitalized at the time of the Transfers; and (b) the Debtors received reasonably equivalent value in exchange for the Transfers.

17. The Alleged Claims implicate issues of insolvency, inadequate capitalization and reasonably equivalent value, all of which are factually and legally complex. The complexity of these issues is reflected in the Settlement Agreement. Further, the costs and delay associated with litigation are appropriately accounted for in the compromise of the Alleged Claims.

18. Here, the paramount interest of creditors is served by the Settlement Agreement, as the Debtors' creditors will benefit from the prompt payment of the Settlement Payment without further costs and delay.

19. The Settlement Agreement is the result of good faith, arm's length negotiations between the Debtors and C&M and, in my view, constitutes a reasonable exercise of the Debtors' business judgment.

20. For all of the foregoing reasons, I would respectfully encourage the Court to approve the Settlement Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 8, 2022

/s/ Allen Wilen
Allen Wilen
Chief Restructuring Officer