**<u>EXHIBIT B</u>**


**(State Court Third Amended Complaint)**

**SHRAGER & SACHS**
By: Robert L. Sachs, Jr. / Theresa M. Blanco
Identification Number: 41355 / 77468
2300 One Commerce Square
2005 Market Street
Philadelphia, Pennsylvania 19103
tblanco@shragerlaw.com
(215) 568-7771                              Attorneys for Plaintiffs
(215) 568-7495 (fax)

| | |
|---|---|
| LILIANA E. RIVERA, Individually and as Administratrix of the Estate of JEZABELLE NGUYEN, a Minor, Deceased,  And JOHN THANH NGUYEN<br><br>                    Plaintiffs<br><br>            v.<br><br>ST. CHRISTOPHER'S HEALTHCARE LLC, DBA ST. CHRISTOPHER'S HOSPITAL FOR CHILDREN, ET AL.<br><br>                    Defendants | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY<br><br>NOVEMBER TERM 2020<br>NO.   002331<br><br>THIS IS A MEDICAL NEGLIGENCE ACTION |

## <u>NOTICE TO DEFEND</u>

**NOTICE**

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney by filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER (OR CANNOT AFFORD ONE), GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW (TO FIND OUT WHERE YOU CAN GET LEGAL HELP). THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.  IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE

**PHILADELPHIA BAR ASSOCIATION**
**LAWYER REFERRAL & INFORMATION SERVICE**
**1101 Market Street, 11th Floor, Philadelphia, PA  19107**
**(215) 238-6300**

**AVISO**

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las pginas siguientes, usted tiene veinte (20) dis de plazo al partir dela fecha de la demanda y la notificacin.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomar medidas y puede continuar la demanda en contra suya sin previo aviso o notificacin.  Adems, la corte puede decidir a favor del demandante y requiere que usted compla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

 "LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELFONO A LA OFICINA CUYA DIRECCIN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

**ASOCIACION DE LICENDIADOS DE FILADELFIA**
**SERVICIO DE REFERENCIA E INFORMACION LEGAL**
**1101 Market Street, 11th Floor**
**Filadelfia, Penna.  19107**
**Telfono: (215) 238-6300**

SHRAGER & SACHS
Robert L. Sachs, Jr., Esquire
Attorney ID #41355
By: Theresa M. Blanco, Esquire                    Attorneys for Plaintiffs
Attorney ID #77468
2300 Once Commerce Square
2005 Market Street
Philadelphia PA 19103
(215) 568-7771
tblanco@shragerlaw.com

| | |
|---|---|
| LILIANA E. RIVERA, Individually and as Admx of the Estate of JEZABELLE NGUYEN, s minor, Deceased; and<br><br>JOHN THANH NGUYEN, Individually and as Parent and Natural Guardian of JEZABELLE NGUYEN,<br><br>                           Plaintiffs<br><br>vs.<br><br>St. Christopher's Healthcare LLC, DBA Sr. Christopher's Hospital for Children;<br>Northeast Pediatrics, LLC;<br>Lehigh Valley Physicians Group;<br>Lehigh Valley Health Network, Inc.;<br>Blue Mountain Hospital DBA St. Luke's Hospital-Gnadden Huetten Campus;<br>St. Luke's Hospital Bethlehem Campus; and<br>Foundation Radiology Group,<br><br>                         Defendants | **IN THE COURT OF COMMON PLEAS OF PHILADELPHIA, PENNSYLVANIA**<br><br>**CIVIL DIVISION**<br><br>**November Term 2020**<br><br>No. 201102331<br><br><br>CIVIL ACTION<br>PROFESSIONAL NEGLIGENCE |

### THIRD AMENDED COMPLAINT

    Plaintiffs, by and through counsel, Shrager & Sachs, hereby bring the within medical malpractice action against the above-named defendants and demand damages in a sum in excess of the local arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs, upon the causes of action set forth below.

### FACTS APPLICABLE TO ALL COUNTS

1.  Plaintiff is Liliana E. Rivera, individually and as the representative of the Estate of

     JEZABELLE NGUYEN, a minor, deceased. She is an adult individual and the natural

parent of Plaintiff's decedent, JEZABELLE NGUYEN, and is the representative of his
estate.  She resides at 141 Center Street, Slatington PA.

2.  Plaintiff is John Thanh NGUYEN, individually and as parent and natural guardian of
    JEZABELLE NGUYEN. He resides at 950 N. 16th Street, Allentown PA.

3.  Plaintiff Liliana E. Rivera files this complaint in her capacity as parent and natural guardian
    of her daughter, JEZABELLE NGUYEN, and on behalf of herself individually, and in her
    own right.

4.  Plaintiff John Thanh Nguyen files this complaint in his capacity as parent and natural
    guardian of his daughter, JEZABELLE NGUYEN, and on behalf of himself individually
    and in his own right.

5.  Liliana E. Rivera is the representative of the Estate of JEZABELLE NGUYEN, and she is
    the person entitled under and by virtue of the Probate, Estates and  Fiduciaries Code, 20 P.S.
    § 3373, and The Survival Act, 42 P.S. § 8302 and under and by virtue of the Wrongful Death
    Act, 42 P.S. § 8301, and Pennsylvania Rule of Civil Procedure 2202 to bring and recover
    damages in a Survival Action on behalf of the Estate of Decedent and to bring and recover
    damages in Wrongful Death action on behalf of the wrongful death beneficiaries of
    Decedent.

6.  JEZABELLE NGUYEN suffered and is deceased as a direct and proximate result of the
    collective negligence of the defendants and their agents as described herein.

7.  Defendant, St. Christopher's Healthcare LLC, DBA St. Christopher's Hospital for Children
    (SCHC), is a partnership, corporation or other legal entity, organized and existing under the
    laws of the Commonwealth of Pennsylvania, with its principal place of business  located at
    160 E. Erie Avenue, Philadelphia PA. At all relevant times,SCHC was engaged in the
    provision of medical care and  services  to the public,  including JEZABELLE NGUYEN,

at SCHC at the aforesaid address.  At all relevant times, SCHC owned, maintained, operated, and/or controlled a hospital and medical practices and employed various physicians, interns, residents, fellows, nurses, physician assistants, nurse practitioners, technicians and other agents, servants, and employees who purportedly possessed skill and training for the purposes of providing medical care and services to pediatric patients, including, JEZABELLE NGUYEN in particular.  The claims asserted against this defendant are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the care of JEZABELLE NGUYEN during her treatment and evaluation by SCHC physicians and staff on or about March and April 2017, and any other interactions to be discovered up to and including the date of her death.  The claims against this defendant also include a claim for corporate (direct) negligence under *Thompson v. Nason,* 591 A.2d 703 (Pa. 1991), and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods,*768 A.2d 1144 (Pa. Super. 2001).  Plaintiff is asserting a professional liability claim against this Defendant for vicarious and corporate liability.  Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant has been  filed separately with the Court.

8.  Defendant, Northeast Pediatrics, LLC (NEP) is believed and therefore averred to be a provider of pediatric services who employs or otherwise manages the physicians and other staff who are employed or contracted by NEP to treat children. It is believed and therefore averred that NEP is a corporation formed and existing under the laws of the Commonwealth of Pennsylvania with a business address of 281 N. 12th Street, Suite E, Lehighton PA 18235.  The claims asserted against this defendant are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the care of JEZABELLE NGUYEN during her treatment and evaluation by

NEP physicians and staff on or about March and April 2017, and any other interactions existing or to be discovered up to and including the date of her death. The claims against this defendant also include a claim for corporate (direct) negligence under *Thompson v. Nason,* 591 A.2d 703 (Pa. 1991), and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods,*768 A.2d 1144 (Pa. Super. 2001). Plaintiff is asserting a professional liability claim against this Defendant for vicarious and corporate liability. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant has been filed separately with the Court.

9. Defendant, Lehigh Valley Physicians Group, (LVPG) is believed and therefore averred to be a provider of physician services who employs or otherwise manages the physicians and other staff who are employed or contracted by NEP and/or LVPG to treat children at the NEP location in Lehighton, PA. It is believed and therefore averred that LVPG is a corporation formed and existing under the laws of the Commonwealth of Pennsylvania with a business address of 2100 Mack Blvd 3rd Floor, Allentown PA 18105. The claims asserted against this defendant are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the care of JEZABELLE NGUYEN during her treatment and evaluation by LVPG physicians and staff beginning on or about March and April 2017, and any other interactions existing or to be discovered up to and including the date of her death. The claims against this defendant also include a claim for corporate (direct) negligence under *Thompson v. Nason,* 591 A.2d 703 (Pa. 1991), and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods,*768 A.2d 1144 (Pa. Super. 2001). Plaintiff is asserting a professional liability claim against this Defendant for vicarious and corporate liability. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant has been filed separately with the Court.

4

10. Defendant, Lehigh Valley Health Network, Inc. is believed and therefore averred to be a provider of healthcare and physician services who employs or otherwise manages the physicians and other staff who are employed or contracted or who otherwise work under the umbrella of LVHN, including those individuals who work at or for Northeast Pediatrics, LLC and LVPG Lehighton. It is believed and therefore averred the LVHN owns, operates and/or otherwise controls LVPG and NEP. It is believed and therefore averred that LVHN controls or otherwise manages and/or directs the granting of medical and practice privileges to the physicians who work for or with LVPG and/or NEP.  It is believed and therefore averred that LVPG is a corporation formed and existing under the laws of the Commonwealth of Pennsylvania with a business address of 1243 S. Cedar Crest Blvd., Allentown PA 18103.  The claims asserted against this defendant are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the care of JEZABELLE NGUYEN during her treatment and evaluation by LVHN physicians and staff on or about March and April 2017, and any other interactions existing or to be discovered up to and including the date of her death.  The claims against this defendant also include a claim for corporate (direct) negligence under *Thompson v. Nason,* 591 A.2d 703 (Pa. 1991), and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods,* 768 A.2d 1144 (Pa. Super. 2001). Plaintiff is asserting a professional liability claim against this Defendant for vicarious and corporate liability. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant has been filed separately with the Court.

11. Blue Mountain Hospital DBA St. Luke's Hospital-Gnaden Huetten Campus (hereafter SLHGH or Gnaden Huetten) is believed and therefore averred to be a provider of healthcare and physician services who employs or otherwise manages the physicians and

other staff who are employed or contracted or who otherwise work under the umbrella of

SLHGH, including those individuals who work at or for the emergency department at

SLHGH. It is believed and therefore averred that SLHGH is a corporation formed and

existing under the laws of the Commonwealth of Pennsylvania with a business address of

211 N. 12ᵗʰ Street, Lehighton PA 18235. The claims asserted against this defendant are for

the professional negligence of its actual, apparent and/or ostensible agents, servants and

employees who participated in the care of JEZABELLE NGUYEN during her treatment

and evaluation by SLHGH physicians and staff beginning on or about March and April

2017, and any other interactions existing or to be discovered up to and including the date of

her death.  The claims against this defendant also include a claim for corporate (direct)

negligence under *Thompson v. Nason,* 591 A.2d 703 (Pa. 1991), and its progeny of case law,

including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods,* 768 A.2d 1144

(Pa. Super. 2001). Plaintiff is asserting a professional liability claim against this Defendant for

vicarious and corporate liability. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to

this defendant has been filed separately with the Court.

12. St. Luke's Hospital Bethlehem Campus (hereafter SLHB) is believed and therefore averred

to be a provider of healthcare and physician services who employs or otherwise manages the

physicians and other staff who are employed or contracted or who otherwise work under the

umbrella of SLHB, including those individuals who provide medical and physician services

at other locations operated by the St. Luke's Health Network, including those physicians

interpreting imaging and radiology studies performed at other network facilities such as St.

Luke's Allentown. It is believed and therefore averred that SLHB is a corporation formed

and existing under the laws of the Commonwealth of Pennsylvania with a business address

of 801 Ostrum Street, Bethlehem PA 18015.  The claims asserted against this defendant are

for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the care of JEZABELLE NGUYEN during her treatment and evaluation by SLHB physicians and staff beginning on or about March and April 2017, and any other interactions existing or to be discovered up to and including the date of her death. The claims against this defendant also include a claim for corporate (direct) negligence under *Thompson v. Nason,* 591 A.2d 703 (Pa. 1991), and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods,*768 A.2d 1144 (Pa. Super. 2001). Plaintiff is asserting a professional liability claim against this Defendant for vicarious and corporate liability. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant has been filed separately with the Court.

13. Foundation Radiology Group is believed and therefore averred to be a provider of radiology and imaging services to a wide array of healthcare facilities, including St. Luke's Health Network, St. Luke's Allentown, SLHGH and SLHB. At all times relevant hereto, Foundation Radiology Group employed or otherwise contracted with radiologists at St. Luke's Health Network, St. Luke's Allentown, SLHB and SLHGH for services including those rendered to Jezabelle Nguyen. It is believed and therefore averred that Foundation Radiology Group is a corporation formed and existing under the laws of the Commonwealth of Pennsylvania with a business address of 3 Gateway Center 20th Floor, 401 Liberty Avenue, Suite 200, Pittsburgh PA 15222. The claims asserted against this defendant are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the care of JEZABELLE NGUYEN during her treatment and evaluation by FRG physicians and staff beginning on or about March and April 2017, and any other interactions existing or to be discovered up to and including the date of her death. The claims against this defendant also include a claim for corporate (direct)

7

negligence under *Thompson v. Nason,* 591 A.2d 703 (Pa. 1991), and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods,* 768 A.2d 1144 (Pa. Super. 2001). Plaintiff is asserting a professional liability claim against this Defendant for vicarious and corporate liability. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant has been filed separately with the Court.

14. At all relevant times, defendants and their agents, servants and employees were engaged in the practice of medicine, pursuing their respective specialties and/or health care duties, and were obligated to use the professional skill, knowledge and care which they possessed, and to pursue their professions in accordance with reasonably safe and accepted standards of medicine and professional care in general, and in their specialties in particular, as well as institutional standards of medical care, in their care and treatment of JEZABELLE NGUYEN

15. At all relevant times hereto, defendants SCHC engaged as their actual, apparent or ostensible agents, servants and/or employees various healthcare providers, physicians, residents, fellows, interns, physician assistants and pediatric nursing staff who at all times were acting within the course and scope of their agency and/or employment with defendants and under their exclusive control. Defendant SCHC is liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, agency, and right of control. The identities of these agents, servants and employees include, but are not limited to, Jennifer Tingo, M.D. and any other physician or health care personnel who had any role or input in the scheduling, interpretation, dissemination of information, or care provided to Jezabelle's Nguyen relative to her cardiac and/or cardiopulmonary condition, or her sister's cardiac and/or cardiopulmonary condition. These additional individuals' names, handwriting,

identification codes or other signifiers may appear in the medical chart, but are indecipherable or otherwise not identifiable and/or their actions not sufficiently recorded, and not known or knowable to plaintiffs after reasonable investigation and/or whose names do not appear in the chart, are known only to defendants, and will require additional discovery from defendants.

16. It is believed and therefore averred that at all relevant times hereto, SCHC maintained a clinical practice relationship with St. Luke's Hospital – Bethlehem such that pediatric cardiologists who were agents or ostensible agents of SCHC would see patients at SLHB, St. Luke's North and/or SCHC.

17. It is believed and therefore averred that at all times relevant hereto, pediatric cardiologists who were agents or ostensible agents of SCHC would order and interpret various testing, including ECGs and echocardiograms remotely, which included medical decisions made within Philadelphia County.

18. At all relevant times hereto, defendants Northeast Pediatrics engaged as their actual, apparent or ostensible agents, servants and/or employees various healthcare providers, physicians, residents, fellows, interns, physician assistants and pediatric nursing staff who at all times were acting within the course and scope of their agency and/or employment with defendants and under their exclusive control. Defendant Northeast Pediatrics is liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, agency, and right of control. The identities of these agents, servants and employees include, but are not limited to, Lakshmi Gajula, M.D.; Jocelyn Matthews, PA-C; and any and all staff who had any role in examining Jezabelle Nguyen or who had any role in interpreting imaging or reports of testing relative to Jezabelle Nguyen, including her

cardiac status and/or condition and/or her cardiopulmonary status or condition; including Jezabelle's status relative to her sister's cardiac or cardiopulmonary condition. These additional individuals' names, handwriting, identification codes or other signifiers may appear in the medical chart, but are indecipherable or otherwise not identifiable and/or their actions not sufficiently recorded, and not known or knowable to plaintiffs after reasonable investigation and/or whose names do not appear in the chart, are known only to defendants, and will require additional discovery from defendants.

19. At all relevant times hereto, defendant LVPG engaged as their actual, apparent or ostensible agents, servants and/or employees various healthcare providers, physicians, residents, fellows, interns, physician assistants and pediatric nursing staff who at all times were acting within the course and scope of their agency and/or employment with defendants and under their exclusive control. Defendant LVPG is liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, agency, and right of control. The identities of these agents, servants and employees include but are not limited to Lakshmi Gajula, M.D.; Jocelyn Matthews, PA-C; and any and all staff who had any role in examining Jezabelle Nguyen or who had any role in interpreting imaging or reports of testing relative to Jezabelle Nguyen, including her cardiac status and/or condition and/or her cardiopulmonary status or condition; including Jezabelle's status relative to her sister's cardiac or cardiopulmonary condition. These additional individuals' names, handwriting, identification codes or other signifiers may appear in the medical chart, but are indecipherable or otherwise not identifiable and/or their actions not sufficiently recorded, and not known or knowable to plaintiffs after reasonable investigation and/or whose

names do not appear in the chart, are known only to defendants, and will require additional discovery from defendants.

20. At all relevant times hereto, defendants LVHN engaged as their actual, apparent or ostensible agents, servants and/or employees various healthcare providers, physicians, residents, fellows, interns, physician assistants and pediatric nursing staff who at all times were acting within the course and scope of their agency and/or employment with defendants and under their exclusive control. Defendant LVHN is liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, agency, and right of control. The identities of these agents, servants and employees include Lakshmi Gajula, M.D.; Jocelyn Matthews, PA-C; and any and all staff who had any role in examining Jezabelle Nguyen or who had any role in interpreting imaging or reports of testing relative to Jezabelle Nguyen, including her cardiac status and/or condition and/or her cardiopulmonary status or condition; including Jezabelle's status relative to her sister's cardiac or cardiopulmonary condition. These additional individuals' names, handwriting, identification codes or other signifiers may appear in the medical chart, but are indecipherable or otherwise not identifiable and/or their actions not sufficiently recorded, and not known or knowable to plaintiffs after reasonable investigation and/or whose names do not appear in the chart, are known only to defendants, and will require additional discovery from defendants.

21. At all relevant times hereto, Defendant SLHGH engaged as their actual, apparent or ostensible agents, servants and/or employees various healthcare providers, physicians, residents, fellows, interns, physician assistants and pediatric nursing staff who at all times were acting within the course and scope of their agency and/or employment with defendants and under their exclusive control. Defendant SLHGH is liable for the negligent

acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, agency, and right of control. The identities of these agents, servants and employees include, but are not limited to, Noel Estioko, M.D., Steven Albuch, PA-C; Tanya Hricik RN; Joseph Dobroskey, MD; Amjad Safvi, MD; Gregory Trecha, MD; Diane Knudsen CRNP; Patrick Kane, DO; and any and all providers who treated to attended to Jezabelle Nguyen on or about the following dates: September 7, 2018, November 12, 2018, and November 29, 2018 at SLHGH. These additional individuals' names, handwriting, identification codes or other signifiers may appear in the medical chart, but are indecipherable or otherwise not identifiable and/or their actions not sufficiently recorded, and not known or knowable to plaintiffs after reasonable investigation and/or whose names do not appear in the chart, are known only to defendants, and will require additional discovery from defendants.

22. At all relevant times hereto, Defendant SLHB engaged as their actual, apparent or ostensible agents, servants and/or employees various healthcare providers, physicians, residents, fellows, interns, physician assistants and pediatric nursing staff who at all times were acting within the course and scope of their agency and/or employment with defendants and under their exclusive control. Defendant SLHB is liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, agency, and right of control. The identities of these agents, servants and employees include, but are not limited to, any and all providers who cared for or monitored Jezabelle Nguyen and/or her sister, Jaylanni Nguyen, with regard to Jezabelle's or Jaylanni's cardiopulmonary condition; anyone who evaluated either twin, or recorded findings in the chart for either twin; anyone who failed to properly identify Jezabelle or Jaylanni (and therefore, misidentify the other) such that

Jezabelle's well being and/or health was affected; anyone who failed to appreciate a cardiac murmur or other issue or problem with regard to Jezabelle's cardiopulmonary condition; anyone who failed to properly schedule Jezabelle for an echocardiogram, either inpatient or as an outpatient as detailed herein; anyone who failed to request or provide the appropriate consults with regard to Jezabelle's cardiopulmonary condition; anyone who failed to appropriately interpret and report imaging studies or other tests relative to Jezabelle's cardiopulmonary condition. With regard to the care Jezabelle received at St. Luke's Allentown, the identities of the providers are, but are not limited to, the following: Seth Vaughn, PA-C; Christopher Trend, MD; and anyone who examined Jezabelle on or about March 18, 2018, or who interpreted imaging or other test results relative to Jezabelle's cardiopulmonary condition  These additional individuals' names, handwriting, identification codes or other signifiers may appear in the medical chart, but are indecipherable or otherwise not identifiable and/or their actions not sufficiently recorded, and not known or knowable to plaintiffs after reasonable investigation and/or whose names do not appear in the chart, are known only to defendants, and will require additional discovery from defendants.

23. At all relevant times hereto, Defendant Foundation Radiology engaged as their actual, apparent or ostensible agents, servants and/or employees various healthcare providers, physicians, residents, fellows, interns, physician assistants and pediatric nursing staff who at all times were acting within the course and scope of their agency and/or employment with defendants and under their exclusive control. Defendant Foundation Radiology is liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, agency, and right of control. The identities of these agents, servants and employees include

Christopher Trend, MD and Gregory Trecha, MD; and any other provider who interpreted imaging of Jezabelle Nguyen, or otherwise advised or contributed to the interpretation of imaging performed on or about March 2018 and November 2018.

24. Defendants are vicariously liable to plaintiffs for injuries sustained as a result of the negligent acts and omissions of persons whose conduct was under their supervision, control or right of control, and which conduct increased the risk of and, in fact, did cause plaintiffs' catastrophic and permanent injuries and losses.

25. At all times relevant hereto, all defendants acted directly and/or by and through their duly authorized agents, servants and employees, as described herein, who themselves were acting within the course and scope of their employment and/or agency with defendants.

26. At all relevant times hereto, all named defendants who appear in the caption owed non-delegable legal duties directly to JEZABELLE NGUYEN pursuant to *Thompson v. Nason,* 591 A.2d 703 (Pa. 1991), and its progeny of case law. These duties consisted of: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and, (4) a duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the patients.

27. At all relevant times, JEZABELLE NGUYEN was under the medical care, treatment and attendance of defendants, their actual, apparent and/or ostensible agents and employees, as defined herein, all of whom were acting within the course and scope of their employment or agency with defendants, and under their right of control.

14

28. At all relevant times, a physician-patient relationship existed between JEZABELLE NGUYEN and defendants and at all relevant times, defendants had actual or constructive knowledge of the medical and professional care and treatment provided to JEZABELLE NGUYEN

29. At all relevant times, plaintiffs relied on the knowledge, care, skill, treatment and advice of the defendants in connection with the medical and professional care and treatment provided to her son.

30. The permanent and catastrophic injuries and damages and death suffered by JEZABELLE NGUYEN were caused solely and exclusively by the negligence of defendants, their agents, servants and/or employees, and were due in no manner to any act or failure to act on the part of plaintiffs.

31. The amount in controversy exceeds the prevailing, local arbitration limits.

32. Venue for this action is properly laid in Philadelphia County because some of the medical care at issue was rendered in Philadelphia County.

33. JEZABELLE NGUYEN was born on March 28, 2017.  She and her sister, Jaylanni, were the result of a monochorionic-diamniotic twin pregnancy.

34. Jezabelle and her sister Jaylanni were born at SLHB at 36 weeks gestational age to natural parents, Liliana Rivera and John Nguyen.

35. After birth the babies were sent to the NICU.

36. During their time in the NICU, it is believed that the girls were mixed-up at least once, so that Jezabelle was identified as Jaylanni and vice versa.

37. On or about March 29, 2017, it was noted that the twin identified as Jezabelle had a heart murmur. Thereafter, on April 3, 2017, it is believed that the twin identified as Jezabelle underwent an echocardiogram as an inpatient at SLHB, the results of which

are contained in the chart of the twin identified as Jezabelle, and these results indicated the presence of several congenital heart defects. This echocardiogram was ordered and interpreted by SCHC and its personnel at its location in Philadelphia.

38. Upon discharge, Ms. Rivera was directed by hospital staff to bring Jaylanni for the echo scheduled for April 12, 2017, and an appointment for this is noted in Jaylanni's chart. However, there is no notation in Jaylanni's chart that she had a murmur. In fact, Jaylanni's chart specifically states that she had no murmur.

39. On or about April 12, 2017, the twin identified as Jaylanni underwent an echocardiogram which was ordered and interpreted by SCHC and its personnel at its location in Philadelphia. This study found multiple congenital heart defects. Ms. Rivera was instructed not to worry about these heart defects because they would likely resolve on their own.

40. No recommendation was made by Dr. Tingo or anyone at SCHC that the twin who did not have the echocardiogram on April 3 or April 12 undergo an echocardiogram to rule out a cardiac defect.

41. Jaylanni and Jezabelle were seen at Northeast Pediatrics/LVPG Pediatrics Lehighton[1] for their neonatal and infant care. No provider at Northeast Pediatrics/LVPG Pediatrics Lehighton noted or addressed a cardiopulmonary problem with either child despite persistent signs and symptoms.

42. Jaylanni and Jezabelle also received care from Lehigh Valley Hospital Cedar Crest, St. Luke's Hospital Allentown, and St. Luke's Hospital Gnadden Huetten.

43. On March 18, 2018, Jezabelle presented to St. Luke's Allentown Hospital for upper

---

[1] Northeast Pediatrics and LVPG Pediatrics Lehighton appear to be the same entity, and their addresses are identical. They will be referred to herein together.

16

respiratory complaints. A chest x-ray was read as normal by radiologists at St. Luke's

Bethlehem and/or Foundation Radiology Group. Jezabelle was discharged.

44. On November 12, 2018, Jezabelle presented to Northeast Pediatrics/LVPG

Pediatrics Lehighton with signs and symptoms of an upper respiratory infection with

some respiratory distress. She was sent by personnel at Northeast Pediatrics/LVPG

Lehighton to St. Luke's Hospital Gnadden Huetten for a chest x-ray. This chest x-

ray was read as "bilateral lobe infiltrates". Jezabelle was sent home on antibiotics and

with a nebulizer.

45. On November 29, 2018, Jezabelle was seen at Northeast Pediatrics/LVPG Pediatrics

Lehighton after her mother called for an urgent appointment.  On arrival, Ms. Rivera

was directed to an exam room with Jezabelle where she was made to wait. When

staff realized after a period of time that Jezabelle had not been examined, they were

finally directed to the emergency department at St. Luke's Gnadden Huetten. Ms.

Rivera was instructed to take Jezabelle there herself. No ambulance was called.

Jezabelle was in significant respiratory distress.

46. Ms. Rivera arrived thereafter at SLHGH with Jezabelle. Records indicate that arrival

was at 1427 and despite being in significant respiratory distress, Jezabelle was not

examined for 25 minutes.

47. Thereafter, a variety of treatment was attempted without success and Jezabelle

continued to deteriorate.

48. A non-urgent chest x-ray was ordered and obtained. It took nearly an hour for those

results. This was read as follows: "cardiomegaly may be related to suboptimal

inspiration. Infiltrates in right lower lobe". At no point did any provider follow up

on the cardiomegaly or consult with an appropriate professional to determine

whether Jezabelle's condition was cardiac in nature. Moreover, Dr. Safvi failed to communicate or timely communicate the results of the imaging interpretation to appropriate clinicians. If other radiologists or technicians were involved in interpreting this chest film, they also failed to communicate or timely communicate the results of the imaging interpretation to appropriate clinicians.

49. As Jezabelle continued to deteriorate, intubation was required. Approximately three minutes after intubation, Jezabelle suffered a cardiac arrest. She could not be resuscitated.

50. The nurses and other staff (including physicians, physician-extenders and others) caring for JEZABELLE NGUYEN while she was a patient at SLHB (the neonatal admission) were unfamiliar with how to identify and care for identical twins; were unfamiliar with how to examine and treat newborns who had cardiac or cardiopulmonary problems, and this lack of knowledge put their patients, including Jezabelle Nguyen, at significant risk.

51. The physicians and staff at NEP/LVPG Pediatrics Lehighton (including physician extenders and others) caring for JEZABELLE NGUYEN while she was a patient at that practice were unfamiliar with the identification, diagnosis and treatment of children with congenital heart defects; were unfamiliar with how to examine and treat newborns or toddlers who had cardiac or cardiopulmonary problems, and this lack of knowledge and failure to treat put their patients, including Jezabelle Nguyen, at significant risk.

52. The physicians and staff at LVHN (including physician extenders and others) caring for JEZABELLE NGUYEN while she was a patient in the health network were unfamiliar with the identification, diagnosis and treatment of children with

congenital heart defects; were unfamiliar with how to examine and treat newborns or toddlers who had cardiac or cardiopulmonary problems, and this lack of knowledge and failure to treat put their patients, including Jezabelle Nguyen, at significant risk.

53. The physicians and staff at SLHGH (including physician extenders and others) caring for JEZABELLE NGUYEN while she was a patient at that facility were unfamiliar with the identification, diagnosis and treatment of children with congenital heart defects; were unfamiliar with how to examine and treat newborns or toddlers who had cardiac or cardiopulmonary problems, and this lack of knowledge and failure to treat put their patients, including Jezabelle Nguyen, at significant risk.

54. The physicians and staff at Foundation Radiology Group (including physician extenders and others) who interpreted imaging of JEZABELLE NGUYEN while she was a patient at various St. Luke's facilities as aforesaid, were unfamiliar with the identification, diagnosis and treatment of children with congenital heart defects; were unfamiliar with how to examine imaging of newborns or toddlers which might indicate cardiac or cardiopulmonary problems, and this lack of knowledge and failure to diagnose and identify these problems put their patients, including Jezabelle Nguyen, at significant risk.

55. JEZABELLE NGUYEN had critical congenital heart defects which required neonatal treatment. The providers identified here lacked the ability and training to diagnose and care for children who have congenital heart defects and/or failed to utilize those skills that they did have thereby causing devastating injury and death to JEZABELLE NGUYEN.

56. Defendants undertook and/or assumed a duty to JEZABELLE NGUYEN to provide her with timely and appropriate medical care, management and treatment in

connection with her physical condition and to avoid the risk of harm and additional injury to her.

57. Plaintiff relied on the knowledge, care, skill treatment and advice of the defendants.

58. The carelessness and negligence of defendants, individually, jointly and severally as described herein, increased substantially the risk of harm to JEZABELLE NGUYEN and did, in fact, cause her to suffer catastrophic and permanent injuries and death.

59. As a direct result of the negligence of defendants, JEZABELLE NGUYEN failed to receive a proper work-up, evaluation, management and treatment of her condition due to defendants' mismanagement and delay in treatment, and was subjected to repeated errors, all of which increased the risk of catastrophic injury and death, which she went on to suffer.

60. As a direct result of the negligence of defendants, JEZABELLE NGUYEN was exposed to an increased risk of harm and was caused to suffer the following injuries:

    a. Oxygen deprivation;

    b. Lack of perfusion;

    c. Cardiac arrest;

    d. Brain injury;

    e. Need for multiple interventions producing physical pain and discomfort;

    f. Physical pain and suffering;

    g. Mental pain and anguish;

    h. Emotional distress

    i. Loss of life's pleasures;

    j. Medical expenses;

      k.  Death

      l.  Such other injuries in the medical records and reports of physicians, other medical and non-medical professionals who provided care to JEZABELLE NGUYEN

61. Had defendants acted in compliance with accepted standards of care and treated JEZABELLE NGUYEN in a timely and appropriate manner, she would not have suffered catastrophic physical injuries and death.

62. The catastrophic injuries and death of JEZABELLE NGUYEN were caused solely and exclusively by the negligent acts and omissions of defendants, their agents, servants and employees, as described more specifically herein and were not caused by any act or failure to act on the part of Plaintiff.

63. As a direct result of the negligence of defendants, the plaintiff Liliana E. Rivera has suffered and/or will continue to suffer substantial economic and non-economic injuries, damages and losses, including past medical expenses and other expenses related to JEZABELLE NGUYEN's injuries and death which include all damages reasonably flowing from the negligence outlined herein; anxiety, depression, severe emotional distress, physical manifestations of emotional distress; and such other injuries and damages as described more fully herein.

64. As a direct result of the negligence of defendants, the plaintiff John Tranh Nguyen has suffered and/or will continue to suffer substantial economic and non-economic injuries, damages and losses, including past medical expenses and other expenses related to JEZABELLE NGUYEN's injuries and death which include all damages reasonably flowing from the negligence outlined herein; anxiety, depression, severe emotional distress, physical manifestations of emotional distress; and such other

injuries and damages as described more fully herein.

65. As a direct result of the negligence of defendants, Jezabelle Nguyen suffered during her lifetime, and has suffered a lifetime's deprivation of economic benefits.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.


## COUNT I – NEGLIGENCE

### Plaintiffs v. Defendant St. Christopher's Hospital for Children
### Survival Action

66. All prior paragraphs are hereby incorporated by reference as though each were fully set forth at length herein.

67. The negligent acts and omissions of defendants SCHC by and through their actual, apparent and/or ostensible agents for whom it is derivatively responsible and liable, as described herein, consisted of one or more of the following:

    a. Failure to perform adequate, appropriate, necessary, sufficient and/or timely assessment of JEZABELLE NGUYEN's cardiac and/or cardiopulmonary condition;
    b. Failure to properly identify the correct patient on whom to perform an echocardiogram;
    c. Failure to ascertain that the correct patient underwent an echocardiogram;
    d. Failure to avail themselves of sufficient information to ensure that the appropriate patient was being treated;
    e. Failure to treat Jezabelle Nguyen's cardiac and/or cardiopulmonary condition;
    f. Failure to properly treat Jezabelle Nguyen's cardiac and/or cardiopulmonary condition;
    g. Failure to properly supervise residents, fellows, CRNP's, PA's and others who were involved in JEZABELLE NGUYEN's care relative to a cardiac defect or cardiopulmonary problem;
    h. Failure to involve the appropriate personnel;

    i.   Failure to properly train or to have properly trained personnel to perform and/or interpret echocardiograms;

    j.   Failure to appropriately, adequately, properly and sufficiently anticipate complications attendant to a child who has an underlying cardiac or cardiopulmonary defect;

    k.   Failure to appropriately, adequately, and properly follow the hospital's policies relative to children with cardiac or cardiopulmonary problems;

    l.   Failure to appropriately, adequately, and properly follow the hospital's policies for patients who have underlying cardiac or cardiopulmonary defects;

    m.  Failure to appropriately, adequately, and properly follow the hospital's policies for resident supervision involving performing and interpreting echocardiograms;

    n.   Failure to appropriately, adequately and properly supervise personnel;

    o.   Failure to appropriately, adequately and properly supervise resident physicians given JEZABELLE NGUYEN's condition;

    p.   Failure to properly supervise and instruct the nursing and other staff with respect to the proper evaluation, treatment and management of JEZABELLE NGUYEN with regard to her underlying condition;

    q.   Failure to properly supervise and instruct the residents, fellows and medical students with respect to the proper evaluation, treatment and management of JEZABELLE NGUYEN with regard to her underlying condition;

    r.   Failure to obtain timely instruction, guidance or other advice from other members of the health care team regarding the proper, adequate and necessary treatments or interventions to treat JEZABELLE NGUYEN's condition;

    s.   Failure to timely communicate changes in JEZABELLE NGUYEN's clinical status to the resident and/or attending physician staff;

    t.   Failure to timely communicate changes in JEZABELLE NGUYEN's clinical status to the resident and/or attending physician staff;

    u.   Failure to appreciate or realize that JEZABELLE NGUYEN was at risk for a catastrophic event given her underlying condition;

    v.   Failure to possess the requisite skill, education, knowledge and experience necessary to treat a patient in JEZABELLE NGUYEN's condition as evidenced by all the preceding allegations of failing to properly monitor, diagnose and treat her condition.

68. The direct and vicarious negligence of defendants, as described herein, increased the risk of harm and did, in fact, cause harm to JEZABELLE NGUYEN.

69. At all times relevant hereto, SCHC engaged the individuals as aforesaid and previously described herein, as its agents, servants, and/or employees to provide medical care and treatment to JEZABELLE NGUYEN while acting within the course and scope of their agency and/or employment with SCHC.  Defendants'

agents also include those physicians, residents, fellow, interns, physician assistants,

pharmacists, and nurses who participated in, were consulted about or were

otherwise responsible for, the evaluation, care, management and treatment of the

condition of JEZABELLE NGUYEN specifically concerning examinations and

evaluations, assessment, planning, and treatment of JEZABELLE NGUYEN's underlying

cardiac and/or cardiopulmonary condition.  Accordingly, SCHC is derivatively liable for the

negligent acts and missions of these individuals under principles of respondeat superior,

vicarious liability, agency and/or right of control.

70. As a direct and proximate result of the negligent acts and omissions of defendants,

JEZABELLE NGUYEN suffered catastrophic injuries, pain and suffering and death as

described herein.

71. Solely as a result of the carelessness and negligence of Defendants as aforesaid, Plaintiff's

Decedent, JEZABELLE NGUYEN, suffered for 20 months, and was caused to suffer

injuries to her bones, nerves, organs, joints, muscles, tendons, blood vessels and soft tissues

throughout her entire body, both internally and externally, including, but not limited to loss

of oxygen and circulation and a deprivation of oxygen and circulation that were the

proximate and factual cause of her death and which Plaintiffs claim damages on behalf of

the Estate of JEZABELLE NGUYEN.

72.  As a result of the above injuries, Plaintiff's Decedent, JEZABELLE NGUYEN, suffered

conscious pain and suffering up to the time of her death, and for which Plaintiff, as

Administrator of the Estate of JEZABELLE NGUYEN, claim damages on behalf of the

Estate of JEZABELLE NGUYEN.

73.  As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as a result

therefrom, Decedent suffered a loss and deprivation of her earnings and earning capacity

24

throughout her entire life, and which Plaintiff, as Administrator of the Estate of

JEZABELLE NGUYEN, claim damages on behalf of the Estate of JEZABELLE

NGUYEN.

74.    As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as a result

therefrom, Plaintiff, as Administrator of the Estate of JEZABELLE NGUYEN, were

obligated to expend medical expenses, funeral expenses and expenses of administration of

the Estate of JEZABELLE NGUYEN following her death, and for which Plaintiffs claim

damages on behalf of the Estate of JEZABELLE NGUYEN.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and

severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the

prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and

costs.


## COUNT II – CORPORATE NEGLIGENCE

### Plaintiffs v. Defendant St. Christopher's Hospital for Children

### Survival Action

75. All prior paragraphs are hereby incorporated by reference as though each were fully

set forth at length herein.

76. In addition to the derivative and vicarious liability of defendant SCHC for the

negligent acts and omissions of its agents, servants and employees, as set forth in the

preceding and following counts, SCHC further owed direct and nondelegable duties

to plaintiffs under the tenets set forth in *Thompson v. Nason,* 591 A.2d 709 (Pa. 1991)

and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and

*Whittington v. Woods,* 768 A.2d 1144 (Pa. Super. 2001).

77. Defendant SCHC duties included: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients.

78. SCHC had a duty to JEZABELLE NGUYEN to exercise reasonable care in the appointment and reappointment of physicians, fellows, nurses, pharmacists, technicians and other staff.

79. SCHC had a duty to its patients, and to JEZABELLE NGUYEN, in particular, to provide reasonable and competent medical care and services and to avoid conduct that would increase the risk of harm and/or cause harm to its patients, including JEZABELLE NGUYEN.

80. It is believed and therefore averred that the physician, nursing, and technical staff who participated in the care of JEZABELLE NGUYEN as identified herein, did not possess the requisite training, experience, technical skills and judgment to render proper care and services to JEZABELLE NGUYEN.

81. It is believed and therefore averred that SCHC was negligent in failing to properly determine the qualifications and proficiencies of the nursing and/or medical staff identified herein, which will require additional discovery.

82. SCHC knew or should have known that the nursing and physician staff identified herein were not qualified to provide competent medical care and treatment to its patients presenting with the clinical issues with which JEZABELLE NGUYEN presented in March and April 2017, and which are the subject hereof.

26

83. SCHC further had an obligation to formulate, adopt and enforce adequate policies and procedures to ensure the safe and appropriate treatment to its patients, such as JEZABELLE NGUYEN.

84. The corporate negligence of SCHC, arising out of the medical care and treatment provided and/or negligently not provided to JEZABELLE NGUYEN, as described herein,

   a. failing to have physicians, interns, residents, fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions with respect to the evaluation, diagnosis, treatment and management of patients who present to the hospital with a clinical history, physical signs and symptoms, and/or results of diagnostic studies such as those demonstrated by JEZABELLE NGUYEN, as more particularly described herein;

   b. failing to have physicians, interns, residents and fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of patients with the same or similar airway issues as JEZABELLE NGUYEN;

   c. failing to ensure that JEZABELLE NGUYEN received appropriate attention from fully trained and experienced physicians, interns, residents, fellows, nursing staff, and technicians able to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of pediatric patients exhibiting signs of congenital heart disease; as well as failing to make timely and appropriate treatment decisions;

   d. failing to select and retain physicians, nurses, physician assistants, nurse practitioners, pharmacists, technicians and other medical staff competent in the evaluation, diagnosis, treatment and management of patients exhibiting signs of congenital heart disease and the related complications therefrom;

   e. failing to oversee all persons who practice medicine and surgery within its walls as to patient care to assure that JEZABELLE NGUYEN's medical condition and risk of additional harm were appropriately and timely evaluated, assessed, managed and treated;

   f. failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding:

      i. performing and interpreting echocardiograms on children;
      ii. supervision of residents or fellows performing echocardiograms;
      iii. supervision of personnel, including but not limited to off-site or remote radiologists or cardiologists and others who interpret imaging.

27

85. In violation of the accepted standards of institutional care, SCHC did not have adequate policies or procedures implemented in March and April 2017, as described above, and/or if such policies were in effect, SCHC failed to ensure that their medical, resident, fellow, nursing, and technician staff were aware of, familiar with and followed such policies.

86. SCHC knew or should have known that it did not have adequate written policies and procedures in place, as described above.

87. SCHC knew or should have known that its medical, resident, fellow, nursing, and technician staff were not familiar with and/or failed to follow the hospital's written policies and procedures with respect to the matters described above, to the extent that they existed.

88. The foregoing negligence of SCHC increased the risk of harm to JEZABELLE NGUYEN.

89. As a direct and proximate result of the corporate negligence of SCHC, as described herein, JEZABELLE NGUYEN was deprived of necessary, timely and appropriate evaluation, diagnosis, treatment and management of her condition.

90. As a direct and proximate result of the corporate negligence of SCHC, as described herein, JEZABELLE NGUYEN suffered catastrophic and permanent injuries and losses and death, as described herein.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and costs.

## COUNT III - NEGLIGENCE

## Plaintiffs v. Northeast Pediatrics, LLC, Lehigh Valley Physicians Group and Lehigh Valley Health Network, Inc.

### Survival Action

91. All prior paragraphs are hereby incorporated by reference as though each were fully set forth at length herein.

92. The negligent acts and omissions of defendants Northeast Pediatrics LLC; Lehigh Valley Physicians Group and Lehigh Valley Health Network, Inc., by and through their actual, apparent and/or ostensible agents for whom it is derivatively responsible and liable, as described herein, consisted of one or more of the following:

   a. Failure to perform adequate, appropriate, necessary, sufficient and/or timely assessment of JEZABELLE NGUYEN's cardiac and/or cardiopulmonary condition;
   b. Failure to ascertain that the correct patient underwent an echocardiogram;
   c. Failure to properly evaluate Jezabelle Nguyen's physician condition relative to her cardiac and/or cardiopulmonary status;
   d. Failure to avail themselves of sufficient information to ensure that the appropriate patient was being treated;
   e. Failure to treat Jezabelle Nguyen's cardiac and/or cardiopulmonary condition;
   f. Failure to properly treat Jezabelle Nguyen's cardiac and/or cardiopulmonary condition;
   g. Failure to properly supervise residents, fellows, CRNP's, PA's and others who were involved in JEZABELLE NGUYEN's care relative to a cardiac defect or cardiopulmonary problem;
   h. Failure to involve the appropriate personnel;
   i. Failure to properly train or to have properly trained personnel to evaluate, treat, and/or refer Jezabelle Nguyen for appropriate care relative to a cardiac or cardiopulmonary problem;
   j. Failure to appropriately, adequately, properly and sufficiently anticipate complications attendant to a child who has an underlying cardiac or cardiopulmonary defect;
   k. Failure to appropriately, adequately, and properly follow the practice and/or health network policies relative to children with cardiac or cardiopulmonary problems;
   l. Failure to appropriately, adequately, and properly follow the practice and/or

29

health network policies for patients who have underlying cardiac or cardiopulmonary defects;

m. Failure to appropriately, adequately, and properly follow the practice and/or health network policies for resident supervision involving performing and interpreting echocardiograms;

n. Failure to appropriately, adequately and properly supervise personnel;

o. Failure to appropriately, adequately and properly supervise resident physicians given JEZABELLE NGUYEN's condition;

p. Failure to properly supervise and instruct the nursing and other staff with respect to the proper evaluation, treatment and management of JEZABELLE NGUYEN with regard to her underlying condition;

q. Failure to properly supervise and instruct the residents, fellows and medical students with respect to the proper evaluation, treatment and management of JEZABELLE NGUYEN with regard to her underlying condition;

r. Failure to obtain timely instruction, guidance or other advice from other members of the health care team regarding the proper, adequate and necessary treatments or interventions to treat JEZABELLE NGUYEN's condition;

s. Failure to timely communicate changes in JEZABELLE NGUYEN's clinical status to the resident and/or attending physician staff;

t. Failure to timely communicate changes in JEZABELLE NGUYEN's clinical status to the resident and/or attending physician staff;

u. Failure to appreciate or realize that JEZABELLE NGUYEN was at risk for a catastrophic event given her underlying condition;

v. Failure to possess the requisite skill, education, knowledge and experience necessary to treat a patient in JEZABELLE NGUYEN's condition as evidenced by all the preceding allegations of failing to properly monitor, diagnose and treat her condition.

93. The direct and vicarious negligence of defendants, as described herein, increased the risk of harm and did, in fact, cause harm to JEZABELLE NGUYEN.

94. At all times relevant hereto, NEP/LVPG and LVHN engaged the individuals as aforesaid and previously described herein, as its agents, servants, and/or employees to provide medical care and treatment to JEZABELLE NGUYEN while acting within the course and scope of their agency and/or employment with NEP/LVPG and LVHN. Defendants' agents also include those physicians, residents, fellow, interns, physician assistants, and nurses who participated in, were consulted about or were otherwise responsible for, the evaluation, care, management and

30

treatment of the condition of JEZABELLE NGUYEN specifically concerning examinations and evaluations, assessment, planning, and treatment of JEZABELLE NGUYEN's underlying cardiac and/or cardiopulmonary condition. Accordingly, NEP/LVPG and LVHN are derivatively liable for the negligent acts and missions of these individuals under principles of respondeat superior, vicarious liability, agency and/or right of control.

95. As a direct and proximate result of the negligent acts and omissions of defendants, JEZABELLE NGUYEN suffered catastrophic injuries, pain and suffering and death as described herein.

96. Solely as a result of the carelessness and negligence of Defendants as aforesaid, Plaintiff's Decedent, JEZABELLE NGUYEN, suffered for 20 months, and was caused to suffer injuries to her bones, nerves, organs, joints, muscles, tendons, blood vessels and soft tissues throughout her entire body, both internally and externally, including, but not limited to loss of oxygen and circulation and a deprivation of oxygen and circulation that were the proximate and factual cause of her death and which Plaintiffs claim damages on behalf of the Estate of JEZABELLE NGUYEN.

97.  As a result of the above injuries, Plaintiff's Decedent, JEZABELLE NGUYEN, suffered conscious pain and suffering up to the time of her death, and for which Plaintiff, as Administrator of the Estate of JEZABELLE NGUYEN, claim damages on behalf of the Estate of JEZABELLE NGUYEN.

98.  As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as a result therefrom, Decedent suffered a loss and deprivation of her earnings and earning capacity throughout her entire life, and which Plaintiff, as Administrator of the Estate of

JEZABELLE NGUYEN, claim damages on behalf of the Estate of JEZABELLE NGUYEN.

99.   As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as a result therefrom, Plaintiff, as Administrator of the Estate of JEZABELLE NGUYEN, were obligated to expend medical expenses, funeral expenses and expenses of administration of the Estate of JEZABELLE NGUYEN following her death, and for which Plaintiffs claim damages on behalf of the Estate of JEZABELLE NGUYEN.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and costs.

## COUNT IV – CORPORATE NEGLIGENCE

### Plaintiffs v. Northeast Pediatrics, LLC, Lehigh Valley Physicians Group and Lehigh Valley Health Network, Inc.
### Survival Action

100.   All prior paragraphs are hereby incorporated by reference as though each were fully set forth at length herein.

101.   In addition to the derivative and vicarious liability of Defendants NEP/LVPG and LVHN for the negligent acts and omissions of its agents, servants and employees, as set forth in the preceding and following counts, NEP/LVPG and LVHN further owed direct and nondelegable duties to plaintiffs under the tenets set forth in *Thompson v. Nason,* 591 A.2d 709 (Pa. 1991) and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods,* 768 A.2d 1144 (Pa. Super. 2001).

102.	Defendants N E P / L V P G and  L V H N's duties included: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients.

103.	NEP/LVPG and PVHN had a duty to JEZABELLE NGUYEN to exercise reasonable care in the appointment and reappointment of physicians, fellows, nurses, pharmacists, technicians and other staff.

104.	NEP/LVPG and LVHN had a duty to its patients, and to JEZABELLE NGUYEN, in particular, to provide reasonable and competent medical care and services and to avoid conduct that would increase the risk of harm and/or cause harm to its patients, including J E Z A B E L L E  N G U Y E N.

105.	It is believed and therefore averred that the physician, nursing, and technical staff who participated in the care of JEZABELLE NGUYEN as identified herein, did not possess the requisite training, experience, technical skills and judgment to render proper care and services to J E Z A B E L L E  N G U Y E N.

106.	It is believed and therefore averred that NEP/LVPG and LVHN were negligent in failing to properly determine the qualifications and proficiencies of the nursing and/or medical staff identified herein, which will require additional discovery.

107.	NEP/LVPG and LVHN knew or should have known that the nursing and physician staff identified herein were not qualified to provide competent medical care and treatment to its patients presenting with the clinical issues with

33

which JEZABELLE NGUYEN presented and which are the subject hereof.

108.        NEP/LVPG and LVHN further had an obligation to formulate, adopt and enforce adequate policies and procedures to ensure the safe and appropriate treatment to its patients, such as JEZABELLE NGUYEN.

109.        The corporate negligence of NEP/LVPG and LVHN, arising out of the medical care and treatment provided and/or negligently not provided to JEZABELLE NGUYEN, as described herein,

    a.   failing to have physicians, interns, residents, fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions with respect to the evaluation, diagnosis, treatment and management of patients who present to the hospital with a clinical history, physical signs and symptoms, and/or results of diagnostic studies such as those demonstrated by JEZABELLE NGUYEN, as more particularly described herein;

    b.   failing to have physicians, interns, residents and fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of patients with the same or similar airway issues as JEZABELLE NGUYEN;

    c.   failing to ensure that JEZABELLE NGUYEN received appropriate attention from fully trained and experienced physicians, interns, residents, fellows, nursing staff, and technicians able to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of pediatric patients exhibiting signs of congenital heart disease; as well as failing to make timely and appropriate treatment decisions;

    d.   failing to select and retain physicians, nurses, physician assistants, nurse practitioners, technicians and other medical staff competent in the evaluation, diagnosis, treatment and management of patients exhibiting signs of congenital heart disease and the related complications therefrom;

    e.   failing to oversee all persons who practice medicine and surgery within its walls as to patient care to assure that JEZABELLE NGUYEN's medical condition and risk of additional harm were appropriately and timely evaluated, assessed, managed and treated;

    f.   failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding:

        i.   evaluating and diagnosing children suspected of having congenital heart defects and/or cardiopulmonary disease;

34

    ii.  the treatment of children who have or who are suspected of having congenital heart defects and/or cardiopulmonary disease;

    iii.  the referral of children who have or who are suspected of having congenital heart defects and/or cardiopulmonary disease;

    iv.  supervision of personnel including but not limited to off-site or remote radiologists and others who interpret imaging.

110.    In violation of the accepted standards of institutional care, NEP/LVPG and LVHN did not have adequate policies or procedures implemented during the relevant time periods, as described above, and/or if such policies were in effect, NEP/LVPG and LVHN failed to ensure that their medical, resident, fellow, nursing, and technician staff were aware of, familiar with and followed such policies.

111.    NEP/LVPG and LVHN knew or should have known that it did not have adequate written policies and procedures in place, as described above.

112.    NEP/LVPG and LVHN knew or should have known that its medical, resident, fellow, nursing, and technician staff were not familiar with and/or failed to follow the hospital's written policies and procedures with respect to the matters described above, to the extent that they existed.

113.    The foregoing negligence of NEP/LVPG and LVHN increased the risk of harm to JEZABELLE NGUYEN.

114.    As a direct and proximate result of the corporate negligence of NEP/LVPG and LVHN, as described herein, JEZABELLE NGUYEN was deprived of necessary, timely and appropriate evaluation, diagnosis, treatment and management of her condition.

115.    As a direct and proximate result of the corporate negligence of

NEP/LVPG and LVHN, as described herein, JEZABELLE NGUYEN suffered

catastrophic and permanent injuries and losses and death, as described herein.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and

severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the

prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and

costs.

## COUNT V - NEGLIGENCE

### Plaintiffs v. Blue Mountain Hospital DBA St. Luke's Hospital Gnadden Huetten Campus
### Survival Action

116.    All prior paragraphs are hereby incorporated by reference as though each

were fully set forth at length herein.

117.    The negligent acts and omissions of defendant SLHGH by and through

their actual, apparent and/or ostensible agents for whom it is derivatively responsible

and liable, as described herein, consisted of one or more of the following:

    a. Failure to perform adequate, appropriate, necessary, sufficient and/or timely assessment of JEZABELLE NGUYEN's cardiac and/or cardiopulmonary condition;
    b. Failure to properly interpret imaging;
    c. Failure to order and/or timely order appropriate imaging;
    d. Failure to avail themselves of sufficient information to ensure that Jezabelle Nguyen was treated appropriately;
    e. Failure to properly diagnose Jezabelle Nguyen's condition;
    f. Failure to treat Jezabelle Nguyen's cardiac and/or cardiopulmonary condition;
    g. Failure to properly treat Jezabelle Nguyen's cardiac and/or cardiopulmonary condition;
    h. Failure to properly supervise residents, fellows, CRNP's, PA's and others who were involved in JEZABELLE NGUYEN's care relative to a cardiac defect or cardiopulmonary problem;
    i. Failure to involve the appropriate personnel;
    j. Failure to properly train or to have properly trained personnel to perform exams on children;
    k. Failure to appropriately, adequately, properly and sufficiently anticipate

        complications attendant to a child who has an underlying cardiac or
        cardiopulmonary defect;

l.    Failure to appropriately, adequately, and properly follow the hospital's
        policies relative to children with cardiac or cardiopulmonary problems;

m.   Failure to appropriately, adequately, and properly follow the hospital's
        policies for patients who have underlying cardiac or cardiopulmonary defects;

n.    Failure to appropriately, adequately, and properly follow the hospital's
        policies for resident supervision involving performing and interpreting
        echocardiograms;

o.    Failure to appropriately, adequately and properly supervise personnel;

p.    Failure to appropriately, adequately and properly supervise resident
        physicians given JEZABELLE NGUYEN's condition;

q.    Failure to properly supervise and instruct the nursing and other staff with
        respect to the proper evaluation, treatment and management of
        JEZABELLE NGUYEN with regard to her underlying condition;

r.    Failure to properly supervise and instruct the residents, fellows and medical
        students with respect to the proper evaluation, treatment and management of
        JEZABELLE NGUYEN with regard to her underlying condition;

s.    Failure to obtain timely instruction, guidance or other advice from other
        members of the health care team regarding the proper, adequate and
        necessary treatments or interventions to treat JEZABELLE NGUYEN's
        condition;

t.    Failure to timely communicate changes in JEZABELLE NGUYEN's clinical
        status to the resident and/or attending physician staff;

u.    Failure to timely communicate changes in JEZABELLE NGUYEN's clinical
        status to the resident and/or attending physician staff;

v.    Failure to appreciate or realize that JEZABELLE NGUYEN was at risk for
        a catastrophic event given her underlying condition;

w.   Failure to possess the requisite skill, education, knowledge and experience
        necessary to treat a patient in JEZABELLE NGUYEN's condition as
        evidenced by all the preceding allegations of failing to properly monitor,
        diagnose and treat her condition.

118.      The direct and vicarious negligence of defendants, as described herein,

increased the risk of harm and did, in fact, cause harm to JEZABELLE NGUYEN.

119.      At all times relevant hereto, SLHGH engaged the individuals as aforesaid

and previously described herein, as its agents, servants, and/or employees to provide

medical care and treatment to JEZABELLE NGUYEN while acting within the

course and scope of their agency and/or employment with SLHGH.  Defendants'

agents also include those physicians, residents, fellow, interns, physician assistants,

pharmacists, and nurses who participated in, were consulted about or were otherwise responsible for, the evaluation, care, management and treatment of the condition of JEZABELLE NGUYEN specifically concerning examinations and evaluations, assessment, planning, and treatment of JEZABELLE NGUYEN's underlying cardiac and/or cardiopulmonary condition. Accordingly, SLHGH is derivatively liable for the negligent acts and missions of these individuals under principles of respondeat superior, vicarious liability, agency and/or right of control.

120.    As a direct and proximate result of the negligent acts and omissions of defendants, JEZABELLE NGUYEN suffered catastrophic injuries, pain and suffering and death as described herein.

121.    Solely as a result of the carelessness and negligence of Defendants as aforesaid, Plaintiff's Decedent, JEZABELLE NGUYEN, suffered for 20 months, and was caused to suffer injuries to her bones, nerves, organs, joints, muscles, tendons, blood vessels and soft tissues throughout her entire body, both internally and externally, including, but not limited to loss of oxygen and circulation and a deprivation of oxygen and circulation that were the proximate and factual cause of her death and which Plaintiffs claim damages on behalf of the Estate of JEZABELLE NGUYEN.

122.    As a result of the above injuries, Plaintiff's Decedent, JEZABELLE NGUYEN, suffered conscious pain and suffering up to the time of her death, and for which Plaintiff, as Administrator of the Estate of JEZABELLE NGUYEN, claim damages on behalf of the Estate of JEZABELLE NGUYEN.

123.    As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as a result therefrom, Decedent suffered a loss and deprivation of her earnings and earning capacity throughout her entire life, and which Plaintiff, as Administrator of the Estate of

JEZABELLE NGUYEN, claim damages on behalf of the Estate of JEZABELLE NGUYEN.

124.     As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as a result therefrom, Plaintiff, as Administrator of the Estate of JEZABELLE NGUYEN, were obligated to expend medical expenses, funeral expenses and expenses of administration of the Estate of JEZABELLE NGUYEN following her death, and for which Plaintiffs claim damages on behalf of the Estate of JEZABELLE NGUYEN.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and costs.


**COUNT VI – CORPORATE NEGLIGENCE**

**Plaintiffs v. Blue Mountain Hospital DBA St. Luke's Hospital Gnadden Huetten Campus**
**Survival Action**

125.     All prior paragraphs are hereby incorporated by reference as though each were fully set forth at length herein.

126.     In addition to the derivative and vicarious liability of defendant SLHGH for the negligent acts and omissions of its agents, servants and employees, as set forth in the preceding and following counts, SLHGH further owed direct and nondelegable duties to plaintiffs under the tenets set forth in *Thompson v. Nason,* 591 A.2d 709 (Pa. 1991) and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods,* 768 A.2d 1144 (Pa. Super. 2001).

127.     Defendant SLHGH duties included: (1) a duty to use reasonable care in

the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients.

128.    SLHGH had a duty to JEZABELLE NGUYEN to exercise reasonable care in the appointment and reappointment of physicians, fellows, nurses, pharmacists, technicians and other staff.

129.    SLHGH had a duty to its patients, and to JEZABELLE NGUYEN, in particular, to provide reasonable and competent medical care and services and to avoid conduct that would increase the risk of harm and/or cause harm to its patients, including JEZABELLE NGUYEN.

130.    It is believed and therefore averred that the physician, nursing, and technical staff who participated in the care of JEZABELLE NGUYEN as identified herein, did not possess the requisite training, experience, technical skills and judgment to render proper care and services to JEZABELLE NGUYEN.

131.    It is believed and therefore averred that SLHGH was negligent in failing to properly determine the qualifications and proficiencies of the nursing and/or medical staff identified herein, which will require additional discovery.

132.    SLHGH knew or should have known that the nursing and physician staff identified herein were not qualified to provide competent medical care and treatment to its patients presenting with the clinical issues with which JEZABELLE NGUYEN presented, and which are the subject hereof.

133.    SLHGH further had an obligation to formulate, adopt and enforce adequate policies and procedures to ensure the safe and appropriate treatment to

40

its patients, such as JEZABELLE NGUYEN.

134.     The corporate negligence of SLHGH, arising out of the medical care

and treatment provided and/or negligently not provided to JEZABELLE

NGUYEN, as described herein,

   a. failing to have physicians, interns, residents, fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions with respect to the evaluation, diagnosis, treatment and management of patients who present to the hospital with a clinical history, physical signs and symptoms, and/or results of diagnostic studies such as those demonstrated by JEZABELLE NGUYEN, as more particularly described herein;

   b. failing to have physicians, interns, residents and fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of patients with the same or similar airway issues as JEZABELLE NGUYEN;

   c. failing to ensure that JEZABELLE NGUYEN received appropriate attention from fully trained and experienced physicians, interns, residents, fellows, nursing staff, and technicians able to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of pediatric patients exhibiting signs of congenital heart disease; as well as failing to make timely and appropriate treatment decisions;

   d. failing to select and retain physicians, nurses, physician assistants, nurse practitioners, technicians and other medical staff competent in the evaluation, diagnosis, treatment and management of patients exhibiting signs of congenital heart disease and the related complications therefrom;

   e. failing to oversee all persons who practice medicine and surgery within its walls as to patient care to assure that JEZABELLE NGUYEN's medical condition and risk of additional harm were appropriately and timely evaluated, assessed, managed and treated;

   f. failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding:

      i. evaluating and diagnosing children suspected of having congenital heart defects and/or cardiopulmonary disease;

      ii. the treatment of children who have or who are suspected of having congenital heart defects and/or cardiopulmonary disease;

      iii. the referral of children who have or who are suspected of having congenital heart defects and/or cardiopulmonary disease;

      iv. supervision of personnel including but not limited to off-site or remote radiologists and others who interpret imaging.

41

135.     In violation of the accepted standards of institutional care,

SLHGH did not have adequate policies or procedures implemented during

the relevant times as aforesaid, as described above, and/or if such policies

were in effect,  SLHGH failed to ensure that their medical, resident, fellow,

nursing, and technician staff were aware of, familiar with and followed such

policies.

136.     SLHGH knew or should have known that it did not have

adequate written policies and procedures in place, as described above.

137.     SLHGH knew or should have known that its medical, resident, fellow,

nursing, and technician staff were not familiar with and/or failed to follow the

hospital's written policies and procedures with respect to the matters described

above, to the extent that they existed.

138.     The foregoing negligence of SLHGH increased the risk of harm to

JEZABELLE NGUYEN.

139.     As a direct and proximate result of the corporate negligence of SLHGH,

as described herein, JEZABELLE NGUYEN was deprived of necessary, timely

and appropriate evaluation, diagnosis, treatment and management of her

condition.

140.     As a direct and proximate result of the corporate negligence of SLHGH,

as described herein, JEZABELLE NGUYEN suffered catastrophic and permanent

injuries and losses and death, as described herein.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and

severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the

42

prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and costs.

### COUNT VII – NEGLIGENCE

### Plaintiffs v. St. Luke's Hospital Bethlehem Campus
### Survival Action

141.     All prior paragraphs are hereby incorporated by reference as though each were fully set forth at length herein.

142.     The negligent acts and omissions of defendant SLHB by and through their actual, apparent and/or ostensible agents for whom it is derivatively responsible and liable, as described herein, consisted of one or more of the following:

    a.  Failure to perform adequate, appropriate, necessary, sufficient and/or timely assessment of JEZABELLE NGUYEN's cardiac and/or cardiopulmonary condition;
    b.  Failure to properly identify Jezabelle Nguyen for evaluation and treatment;
    c.  Failure to properly interpret imaging;
    d.  Failure to order and/or timely order appropriate imaging;
    e.  Failure to avail themselves of sufficient information to ensure that Jezabelle Nguyen was treated appropriately;
    f.  Failure to properly diagnose Jezabelle Nguyen's condition;
    g.  Failure to treat Jezabelle Nguyen's cardiac and/or cardiopulmonary condition;
    h.  Failure to properly treat Jezabelle Nguyen's cardiac and/or cardiopulmonary condition;
    i.  Failure to properly supervise residents, fellows, CRNP's, PA's and others who were involved in JEZABELLE NGUYEN's care relative to a cardiac defect or cardiopulmonary problem;
    j.  Failure to involve the appropriate personnel;
    k.  Failure to properly train or to have properly trained personnel to perform exams on children;
    l.  Failure to appropriately, adequately, properly and sufficiently anticipate complications attendant to a child who has an underlying cardiac or cardiopulmonary defect;
    m.  Failure to appropriately, adequately, and properly follow the hospital's policies relative to children with cardiac or cardiopulmonary problems;
    n.  Failure to appropriately, adequately, and properly follow the hospital's policies for patients who have underlying cardiac or cardiopulmonary defects;

o.  Failure to appropriately, adequately, and properly follow the hospital's policies for resident supervision involving performing and interpreting echocardiograms;

p.  Failure to appropriately, adequately and properly supervise personnel;

q.  Failure to appropriately, adequately and properly supervise resident physicians given JEZABELLE NGUYEN's condition;

r.  Failure to properly supervise and instruct the nursing and other staff with respect to the proper evaluation, treatment and management of JEZABELLE NGUYEN with regard to her underlying condition;

s.  Failure to properly supervise and instruct the residents, fellows and medical students with respect to the proper evaluation, treatment and management of JEZABELLE NGUYEN with regard to her underlying condition;

t.  Failure to obtain timely instruction, guidance or other advice from other members of the health care team regarding the proper, adequate and necessary treatments or interventions to treat JEZABELLE NGUYEN's condition;

u.  Failure to timely communicate changes in JEZABELLE NGUYEN's clinical status to the resident and/or attending physician staff;

v.  Failure to timely communicate changes in JEZABELLE NGUYEN's clinical status to the resident and/or attending physician staff;

w.  Failure to appreciate or realize that JEZABELLE NGUYEN was at risk for a catastrophic event given her underlying condition;

x.  Failure to possess the requisite skill, education, knowledge and experience necessary to treat a patient in JEZABELLE NGUYEN's condition as evidenced by all the preceding allegations of failing to properly monitor, diagnose and treat her condition.

143.     The direct and vicarious negligence of defendants, as described herein, increased the risk of harm and did, in fact, cause harm to JEZABELLE NGUYEN.

144.     At all times relevant hereto, SLHB engaged the individuals as aforesaid and previously described herein, as its agents, servants, and/or employees to provide medical care and treatment to JEZABELLE NGUYEN while acting within the course and scope of their agency and/or employment with SLHB.  Defendants' agents also include those physicians, residents, fellow, interns, physician assistants, pharmacists, and nurses who participated in, were consulted about or were otherwise responsible for, the evaluation, care, management and treatment of the condition of JEZABELLE NGUYEN specifically concerning examinations and

evaluations, assessment, planning, and treatment of JEZABELLE NGUYEN's underlying

cardiac and/or cardiopulmonary condition.  Accordingly, SLHB is derivatively liable for the

negligent acts and missions of these individuals under principles of respondeat superior,

vicarious liability, agency and/or right of control.

145.      As a direct and proximate result of the negligent acts and omissions of

defendants, JEZABELLE NGUYEN suffered catastrophic injuries, pain and suffering and

death as described herein.

146.      Solely as a result of the carelessness and negligence of Defendants as aforesaid,

Plaintiff's Decedent, JEZABELLE NGUYEN, suffered for 20 months, and was caused to

suffer injuries to her bones, nerves, organs, joints, muscles, tendons, blood vessels and soft

tissues throughout her entire body, both internally and externally, including, but not limited

to loss of oxygen and circulation and a deprivation of oxygen and circulation that were the

proximate and factual cause of her death and which Plaintiffs claim damages on behalf of

the Estate of JEZABELLE NGUYEN.

147.      As a result of the above injuries, Plaintiff's Decedent, JEZABELLE NGUYEN,

suffered conscious pain and suffering up to the time of her death, and for which Plaintiff, as

Administrator of the Estate of JEZABELLE NGUYEN, claim damages on behalf of the

Estate of JEZABELLE NGUYEN.

148.      As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as

a result therefrom, Decedent suffered a loss and deprivation of her earnings and earning

capacity throughout her entire life, and which Plaintiff, as Administrator of the Estate of

JEZABELLE NGUYEN, claim damages on behalf of the Estate of JEZABELLE

NGUYEN.

149.     As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as

a result therefrom, Plaintiff, as Administrator of the Estate of JEZABELLE NGUYEN,

were obligated to expend medical expenses, funeral expenses and expenses of administration

of the Estate of JEZABELLE NGUYEN following her death, and for which Plaintiffs claim

damages on behalf of the Estate of JEZABELLE NGUYEN.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and

severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the

prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and

costs.


## COUNT VIII – CORPORATE NEGLIGENCE

### Plaintiffs v. St. Luke's Hospital Bethlehem Campus
### Survival Action

150.     All prior paragraphs are hereby incorporated by reference as though each

were fully set forth at length herein.

151.     In addition to the derivative and vicarious liability of defendant SLHB for

the negligent acts and omissions of its agents, servants and employees, as set forth in

the preceding and following counts, SLHB further owed direct and nondelegable

duties to plaintiffs under the tenets set forth in *Thompson v. Nason,* 591 A.2d 709 (Pa.

1991) and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa.

1997) and *Whittington v. Woods,* 768 A.2d 1144 (Pa. Super. 2001).

152.     Defendant SLHB duties included: (1) a duty to use reasonable care in the

maintenance of safe and adequate facilities and equipment; (2) a duty to select

and retain only competent physicians; (3) a duty to oversee all persons who

practice medicine within its walls as to patient care; and (4) a duty to formulate,

adopt and enforce adequate rules and policies to ensure quality care for patients.

153.    SLHB had a duty to JEZABELLE NGUYEN to exercise reasonable care in the appointment and reappointment of physicians, fellows, nurses, pharmacists, technicians and other staff.

154.    SLHB had a duty to its patients, and to JEZABELLE NGUYEN, in particular, to provide reasonable and competent medical care and services and to avoid conduct that would increase the risk of harm and/or cause harm to its patients, including JEZABELLE NGUYEN.

155.    It is believed and therefore averred that the physician, nursing, and technical staff who participated in the care of JEZABELLE NGUYEN as identified herein, did not possess the requisite training, experience, technical skills and judgment to render proper care and services to JEZABELLE NGUYEN.

156.    It is believed and therefore averred that SLHB was negligent in failing to properly determine the qualifications and proficiencies of the nursing and/or medical staff identified herein, which will require additional discovery.

157.    SLHB knew or should have known that the nursing and physician staff identified herein were not qualified to provide competent medical care and treatment to its patients presenting with the clinical issues with which JEZABELLE NGUYEN presented, and which are the subject hereof.

158.    SLHB further had an obligation to formulate, adopt and enforce adequate policies and procedures to ensure the safe and appropriate treatment to its patients, such as JEZABELLE NGUYEN.

159.    The corporate negligence of SLHB, arising out of the medical care and treatment provided and/or negligently not provided to JEZABELLE NGUYEN,

47

as described herein,

    a.   failing to have physicians, interns, residents, fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions with respect to the evaluation, diagnosis, treatment and management of patients who present to the hospital with a clinical history, physical signs and symptoms, and/or results of diagnostic studies such as those demonstrated by JEZABELLE NGUYEN, as more particularly described herein;

    b.   failing to have physicians, interns, residents and fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of patients with the same or similar airway issues as JEZABELLE NGUYEN;

    c.   failing to ensure that JEZABELLE NGUYEN received appropriate attention from fully trained and experienced physicians, interns, residents, fellows, nursing staff, and technicians able to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of pediatric patients exhibiting signs of congenital heart disease; as well as failing to make timely and appropriate treatment decisions;

    d.   failing to select and retain physicians, nurses, physician assistants, nurse practitioners, technicians and other medical staff competent in the evaluation, diagnosis, treatment and management of patients exhibiting signs of congenital heart disease and the related complications therefrom;

    e.   failing to oversee all persons who practice medicine and surgery within its walls as to patient care to assure that JEZABELLE NGUYEN's medical condition and risk of additional harm were appropriately and timely evaluated, assessed, managed and treated;

    f.   failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding:

        i.   evaluating and diagnosing children suspected of having congenital heart defects and/or cardiopulmonary disease;

        ii.   the treatment of children who have or who are suspected of having congenital heart defects and/or cardiopulmonary disease;

        iii.   the referral of children who have or who are suspected of having congenital heart defects and/or cardiopulmonary disease;

        iv.   supervision of personnel, including but not limited to off-site or remote radiologists and others who interpret imaging.

160.      In violation of the accepted standards of institutional care, SLHB

did not have adequate policies or procedures implemented during the

relevant times as aforesaid, as described above, and/or if such policies were in effect, SLHB failed to ensure that their medical, resident, fellow, nursing, and technician staff were aware of, familiar with and followed such policies.

161.    SLHB knew or should have known that it did not have adequate written policies and procedures in place, as described above.

162.    SLHB knew or should have known that its medical, resident, fellow, nursing, and technician staff were not familiar with and/or failed to follow the hospital's written policies and procedures with respect to the matters described above, to the extent that they existed.

163.    The foregoing negligence of SLHB increased the risk of harm to JEZABELLE NGUYEN.

164.    As a direct and proximate result of the corporate negligence of SLHB, as described herein, JEZABELLE NGUYEN was deprived of necessary, timely and appropriate evaluation, diagnosis, treatment and management of her condition.

165.    As a direct and proximate result of the corporate negligence of SLHB, as described herein, JEZABELLE NGUYEN suffered catastrophic and permanent injuries and losses and death, as described herein.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and costs.

## COUNT IX – NEGLIGENCE

**Plaintiffs v. Foundation Radiology Group**
**Survival Action**

166.      All prior paragraphs are hereby incorporated by reference as though each were fully set forth at length herein.

167.      The negligent acts and omissions of defendant Foundation Radiology Group (FRG) by and through their actual, apparent and/or ostensible agents for whom it is derivatively responsible and liable, as described herein, consisted of one or more of the following:

    a. Failure to perform adequate, appropriate, necessary, sufficient and/or timely assessment of JEZABELLE NGUYEN's cardiac and/or cardiopulmonary condition;

    b. Failure to properly identify Jezabelle Nguyen for evaluation and treatment;

    c. Failure to properly interpret imaging;

    d. Failure to order appropriate imaging;

    e. Failure to make appropriate recommendations for additional testing or evaluation;

    f. Failure to avail themselves of sufficient information to ensure that Jezabelle Nguyen was treated appropriately;

    g. Failure to properly diagnose Jezabelle Nguyen's condition;

    h. Failure to inform other clinicians caring for Jezabelle Nguyen that there were potential cardiac or cardiopulmonary issues on her imaging;

    i. Failure to properly supervise residents, fellows, CRNP's, PA's and others who were involved in JEZABELLE NGUYEN's care relative to interpreting imaging with regard to a cardiac defect or cardiopulmonary problem;

    j. Failure to involve the appropriate personnel;

    k. Failure to properly train or to have properly trained personnel to interpret imaging performed on children;

    l. Failure to appropriately, adequately, and properly follow the hospital's policies relative to imaging of children;

    m. Failure to adequately, and properly follow the hospital's policies for imaging and interpretation of imaging for children;

    n. Failure to appropriately, adequately, and properly follow the hospital's policies for resident supervision involving performing and interpreting echocardiograms;

    o. Failure to appropriately, adequately and properly supervise personnel;

    p. Failure to appropriately, adequately and properly supervise resident physicians;

    q. Failure to properly supervise and instruct the nursing and other staff with respect to the proper evaluation, treatment and management of JEZABELLE NGUYEN with regard to her underlying condition;

r.   Failure to properly supervise and instruct the residents, fellows and medical students with respect to the proper evaluation, treatment and management of JEZABELLE NGUYEN with regard to her underlying condition;

s.   Failure to obtain timely instruction, guidance or other advice from other members of the health care team regarding the proper, adequate and necessary treatments or interventions to treat JEZABELLE NGUYEN's condition;

t.   Failure to timely communicate changes in JEZABELLE NGUYEN's clinical status to the resident and/or attending physician staff;

u.   Failure to timely communicate changes in JEZABELLE NGUYEN's clinical status to the resident and/or attending physician staff;

v.   Failure to appreciate or realize that JEZABELLE NGUYEN was at risk for a catastrophic event given her underlying condition;

w.   Failure to possess the requisite skill, education, knowledge and experience necessary to treat a patient in JEZABELLE NGUYEN's condition as evidenced by all the preceding allegations of failing to properly monitor, diagnose and treat her condition.

x.   Failure to possess the requisite skill, education, knowledge and experience necessary to properly interpret imaging performed on children and specifically Jezabelle Nguyen.

168.    The direct and vicarious negligence of defendants, as described herein, increased the risk of harm and did, in fact, cause harm to JEZABELLE NGUYEN.

169.    At all times relevant hereto, FRG engaged the individuals as aforesaid and previously described herein, as its agents, servants, and/or employees to provide medical care and treatment to JEZABELLE NGUYEN while acting within the course and scope of their agency and/or employment with FRG.  Defendants' agents also include those physicians, residents, fellow, interns, physician assistants, nurses who participated in, were consulted about or were otherwise responsible for, the evaluation, care, management and treatment of the condition of JEZABELLE NGUYEN specifically concerning examinations and evaluations, assessment, planning, and treatment of JEZABELLE NGUYEN's underlying cardiac and/or cardiopulmonary condition.  Accordingly, FRG is derivatively liable for the negligent acts and missions of these individuals under principles of respondeat superior, vicarious

liability, agency and/or right of control.

170.        As a direct and proximate result of the negligent acts and omissions of defendants, JEZABELLE NGUYEN suffered catastrophic injuries, pain and suffering and death as described herein.

171.        Solely as a result of the carelessness and negligence of Defendants as aforesaid, Plaintiff's Decedent, JEZABELLE NGUYEN, suffered for 20 months, and was caused to suffer injuries to her bones, nerves, organs, joints, muscles, tendons, blood vessels and soft tissues throughout her entire body, both internally and externally, including, loss of oxygen and circulation and a deprivation of oxygen and circulation, and all other injuries reasonably flowing from the negligence described herein that were the proximate and factual cause of her death and which Plaintiffs claim damages on behalf of the Estate of JEZABELLE NGUYEN.

172.        As a result of the above injuries, Plaintiff's Decedent, JEZABELLE NGUYEN, suffered conscious pain and suffering up to the time of her death, and for which Plaintiff, as Administrator of the Estate of JEZABELLE NGUYEN, claim damages on behalf of the Estate of JEZABELLE NGUYEN.

173.        As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as a result therefrom, Decedent suffered a loss and deprivation of her earnings and earning capacity throughout her entire life, and which Plaintiff, as Administrator of the Estate of JEZABELLE NGUYEN, claim damages on behalf of the Estate of JEZABELLE NGUYEN.

174.        As a result of the above injuries and Decedent, JEZABELLE NGUYEN's death as a result therefrom, Plaintiff, as Administrator of the Estate of JEZABELLE NGUYEN, were obligated to expend medical expenses, funeral expenses and expenses of administration

of the Estate of JEZABELLE NGUYEN following her death, and for which Plaintiffs claim

damages on behalf of the Estate of JEZABELLE NGUYEN.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and

severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the

prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and

costs.

## COUNT X – CORPORATE NEGLIGENCE

### Plaintiffs v. Foundation Radiology Group
### Survival Action

175.    All prior paragraphs are hereby incorporated by reference as though each

were fully set forth at length herein.

176.    In addition to the derivative and vicarious liability of defendant FRG for

the negligent acts and omissions of its agents, servants and employees, as set forth in

the preceding and following counts, FRG further owed direct and nondelegable

duties to plaintiffs under the tenets set forth in *Thompson v. Nason,* 591 A.2d 709 (Pa.

1991) and its progeny of case law, including *Welsh v. Bulger,* 698 A.2d 581 (Pa.

1997) and *Whittington v. Woods,* 768 A.2d 1144 (Pa. Super. 2001).

177.    Defendant FRG duties included: (1) a duty to use reasonable care in the

maintenance of safe and adequate facilities and equipment; (2) a duty to select

and retain only competent physicians; (3) a duty to oversee all persons who

practice medicine within its walls as to patient care; and (4) a duty to formulate,

adopt and enforce adequate rules and policies to ensure quality care for patients.

178.    FRG had a duty to JEZABELLE NGUYEN to exercise reasonable care

in the appointment and reappointment of physicians, fellows, nurses, pharmacists,

technicians and other staff.

179.     FRG had a duty to its patients, and to JEZABELLE NGUYEN, in particular, to provide reasonable and competent medical care and services and to avoid conduct that would increase the risk of harm and/or cause harm to its patients, including JEZABELLE NGUYEN.

180.     It is believed and therefore averred that the physician, nursing, and technical staff who participated in the care of JEZABELLE NGUYEN as identified herein, did not possess the requisite training, experience, technical skills and judgment to render proper care and services to JEZABELLE NGUYEN.

181.     It is believed and therefore averred that FRG was negligent in failing to properly determine the qualifications and proficiencies of the nursing and/or medical staff identified herein, which will require additional discovery.

182.     FRG knew or should have known that the nursing and physician staff identified herein were not qualified to provide competent medical care and treatment to its patients presenting with the clinical issues with which JEZABELLE NGUYEN presented, and which are the subject hereof.

183.     FRG further had an obligation to formulate, adopt and enforce adequate policies and procedures to ensure the safe and appropriate treatment to its patients, such as JEZABELLE NGUYEN.

184.     The corporate negligence of FRG, arising out of the medical care and treatment provided and/or negligently not provided to JEZABELLE NGUYEN, as described herein,

   a.    failing to have physicians, interns, residents, fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions with respect to the evaluation, diagnosis, treatment and management of patients who present to the hospital with a clinical history, physical signs and symptoms, and/or results of diagnostic studies such as those demonstrated by JEZABELLE NGUYEN, as more

54

particularly described herein;

b.  failing to have physicians, interns, residents and fellows, technicians, and nurses appropriate in number, training, and/or experience to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of patients with the same or similar airway and cardiac issues as JEZABELLE NGUYEN;

c.  failing to ensure that J E Z A B E L L E  N G U Y E N  received appropriate attention from fully trained and experienced physicians, interns, residents, fellows, nursing staff, and technicians able to make appropriate and timely decisions regarding the evaluation, diagnosis, treatment and management of pediatric patients exhibiting signs of congenital heart disease; as well as failing to make or recommend timely and appropriate treatment decisions;

d.  failing to select and retain physicians, nurses, physician assistants, nurse practitioners, technicians and other medical staff competent in the evaluation, diagnosis, treatment and management of patients exhibiting signs of congenital heart disease and the related complications therefrom;

e.  failing to have on staff, under contract, or otherwise act as its agents, competent radiologists able to appropriately evaluate, analyze, and treat, or recommend treatment, relative to a child presenting in the manner in which Jezabelle Nguyen presented and with the same or similar findings on imaging;

f.  failing to oversee all persons who practice medicine and surgery within its walls as to patient care to assure that JEZABELLE NGUYEN's medical condition and risk of additional harm were appropriately and timely evaluated, assessed, managed and treated;

g.  failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding:

    i.   evaluating and diagnosing children suspected of having congenital heart defects and/or cardiopulmonary disease;
    ii.  the treatment of children who have or who are suspected of having congenital heart defects and/or cardiopulmonary disease;
    iii. the referral of children who have or who are suspected of having congenital heart defects and/or cardiopulmonary disease;
    iv.  supervision of personnel, including off-site or remote radiologists and others who interpret imaging, on-site radiologists and others who interpret imaging; staff who communicate with clinical personnel; staff who record and report results; and any other personnel who read imaging performed on children.

185.    In violation of the accepted standards of institutional care, FRG

did not have adequate policies or procedures implemented during the

55

relevant times as aforesaid, as described above, and/or if such policies were in effect, FRG failed to ensure that their medical, resident, fellow, nursing, and technician staff were aware of, familiar with and followed such policies.

186.     FRG knew or should have known that it did not have adequate written policies and procedures in place, as described above.

187.     FRG knew or should have known that its medical, resident, fellow, nursing, and technician staff were not familiar with and/or failed to follow the hospital's written policies and procedures with respect to the matters described above, to the extent that they existed.

188.     The foregoing negligence of FRG increased the risk of harm to JEZABELLE NGUYEN.

189.     As a direct and proximate result of the corporate negligence of FRG, as described herein, JEZABELLE NGUYEN was deprived of necessary, timely and appropriate evaluation, diagnosis, treatment and management of her condition.

190.     As a direct and proximate result of the corporate negligence of FRG, as described herein, JEZABELLE NGUYEN suffered catastrophic and permanent injuries and losses and death, as described herein.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and costs.

## COUNT XI

56

**Plaintiffs v. All Defendants**

**Wrongful Death Action**

191.　　　All prior paragraphs are hereby incorporated by reference as though each were fully set forth at length herein.

192.　　　Plaintiff, Liliana E. Rivera, is the Decedent, JEZABELLE NGUYEN's personal representative as defined by 42 P.S. §8301 and Pennsylvania Rule of Civil Procedure 2201 and brings this Wrongful Death Action on behalf of the wrongful death beneficiaries who are entitled to recover damages for the wrongful death of Decedent, JEZABELLE NGUYEN.

193.　　　The wrongful death beneficiaries are Liliana Rivera, the natural mother of Jezabelle Nguyen, and John Tranh Nguyen, the natural father of Jezabelle Nguyen.

194.　　　As a result of the negligence and carelessness of Defendants as more fully set forth herein, above, and Decedent's injuries and death therefrom, Plaintiff. Liliana E. Rivera, as representative of the Estate of JEZABELLE NGUYEN has been and may be in the future obligated to expend various and diverse sums of money for, all death-associated costs and expenses which include  funeral expenses, medical expenses, and expenses of representatives of the Estate of JEZABELLE NGUYEN and for which Plaintiff claims damages pursuant to 42 P.S. §8301.

195.　　　At the time of Decedent's death, it was reasonably expected and believed that had Decedent lived, she would make contributions to wrongful death beneficiary(ies) for housing, food, clothing, medical care, entertainment, gifts, education, and recreation throughout the remainder of his natural life.

196.　　　As a result of Defendant's negligence and carelessness of Defendants as set forth herein above and Decedent's death therefrom, the wrongful death beneficiary(ies) have been

deprived of the aforesaid contributions which would have been made to them by Decedent, to their great damage and detriment, and for which Plaintiffs claim damages pursuant to 42 P.S. §8301.

197.        At the time of Decedent's death, it was reasonably expected and believed that had Decedent lived, he would have provided society, services, emotional and psychological support, tutelage, guidance, moral upbringing and/or comfort to the wrongful death beneficiary(ies) and they have been deprived of the society, tutelage, guidance, moral upbringing and comfort that they would have received from Decedent throughout the remainder of their natural lives, to their great damage and detriment, and for which Plaintiff claims damages pursuant to 42 P.S. §8301.

198.        Plaintiffs hereby claim all wrongful death damages available to them under statute and case law.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interests and costs.

Respectfully submitted,

Shrager & Sachs

By:    _____
Robert L. Sachs, Jr., Esquire
Theresa M. Blanco, Esquire

Dated: June 26, 2021

58

# **V E R I F I C A T I O N**

I, Liliana E. Rivera, hereby state that I am one of the plaintiffs in the foregoing action and that the averments set forth in the foregoing Civil Action Complaint are true and correct to the best of my knowledge, information and belief. The language is that of counsel and, to the extent there are legal averments, I have relied on my counsel for all such paragraphs.

This statement is made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.


_____
Liliana E. Rivera