**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | Case No. 19-11466 (MFW) |
| Debtors. | Jointly Administered |
| | **Objection Deadline: August 22, 2022 at 4:00 p.m.**<br>**Hearing Date: August 29, 2022 at 10:30 a.m.** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT TERM SHEET BETWEEN THE DEBTORS AND DREXEL UNIVERSITY**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby move this Court (the "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to 11 U.S.C. § 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("the "Bankruptcy Rules"), approving the settlement Term Sheet, a copy of which is attached to the Proposed Order as **Exhibit 1** (the "Settlement Term Sheet") between the Debtors and Drexel University ("Drexel"). In support of this Motion, the Debtors rely upon the *Declaration of Allen Wilen in Support of Debtors' Motion*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

*for Entry of an Order Approving Settlement Term Sheet between the Debtors and Drexel University* attached hereto as **Exhibit B**, and respectfully state as follows:

## Preliminary Statement

1.      Following almost eight months of mediation before the Honorable Judith K. Fitzgerald, the Debtors, with the assistance of the Official Committee of Unsecured Creditors of Center City Healthcare, LLC, d/b/a Hahnemann University Hospital, *et al.* (the "Committee"), and Drexel have reached a comprehensive agreement that will resolve significant potential litigation and permit the Debtors to focus on winding down these Chapter 11 Cases.

2.      More specifically, since nearly a two year period prior to the Petition Date, the Debtors and Drexel have been engaged in significant ongoing disputes relating to the Amended and Restated Academic Affiliation Agreement (the "AAA") with Drexel that governed the relationship between the Hospitals (defined herein) and Drexel's medical school, in essence making the Hospitals a teaching hospital for the medical school, the use of space and facilities by Drexel, and various other contractual and performance based disputes. This relationship and the ongoing disputes forced the Debtors to devote significant funds and resources towards those issues, as opposed to the Debtors' businesses and, since the filing of the Chapter 11 Cases, their estates and creditors.

3.      To resolve their differences, the parties negotiated extensively and at arms' length, and with the tireless assistance of Judge Fitzgerald. Those efforts have resulted in a resolution of complex claims and open issues that best serves the Debtors' estates and creditors, the terms of which are set forth in the Settlement Term Sheet, without the need for costly discovery and litigation. This outcome will maximize the value of the Debtors' estates for the benefit of creditors.

4.      The resolution of the parties' significant claims through the Settlement Term Sheet also permits the Debtors to focus their efforts on achieving their ultimate objectives in these Chapter 11 Cases – i.e., the orderly wind-down of the Debtors' remaining assets and the development and

2

implementation of a chapter 11 liquidating plan that maximizes value to creditors and parties in interest. For these reasons, and as more fully described below, the Settlement Term Sheet constitutes a reasonable exercise of the Debtors' business judgment, best serves the Debtors' estates, creditors and parties in interest, and meets the requirements for approval by this Court.

## Jurisdiction and Venue

5.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

7.      On June 30 and July 1, 2019 (collectively, the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No motion for a trustee or examiner has been made in these Chapter 11 Cases.

3

8.      A description of the Debtors' businesses and the reasons for commencing these Chapter 11 Cases are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2] (the "First Day Declaration").

### A.      The Acquisition, the AAA, and Drexel Agreements

9.      On January 11, 2018, Philadelphia Academic Health Holdings, LLC, Philadelphia Academic Health System, LLC ("PAHS") and certain other purchasers consummated the purchase of the businesses of Hahnemann University Hospital ("HUH") and St. Christopher's Hospital for Children ("STC," and together with HUH, the "Hospitals") and certain related assets, including the Hospitals' related physician practice groups (together, the "Healthcare Businesses"), from Tenet Healthcare Corporation ("Tenet") and its affiliates pursuant to an Asset Sale Agreement ("ASA") dated August 31, 2017, as amended (the "Acquisition").

10.     At the time of the Acquisition and pursuant to the ASA, the Debtors were assigned the AAA and various leases and other contracts with Drexel previously utilized by Tenet in the operation of the Healthcare Business (collectively, the "Drexel Agreements").

11.     Shortly after the Acquisition, the Debtors and Drexel began having various disputes relating to the AAA and the Drexel Agreements, issues with the services provided under the AAA and Drexel Agreements, and issues surrounding the Debtors' nonpayment of invoices under the AAA and the Drexel Agreements. These disputes included, *inter alia*, the following:

- Disputes relating to the services provided and space utilized by Drexel under the Drexel Agreements;

- Claims relating to alleged representations made and actions by Drexel at the time of the Acquisition and throughout the Parties relationship;

- Disputes concerning the quality of services provided under the AAA and Drexel Agreements; and

- Disputes concerning the Debtors' alleged defaults under the AAA and the Drexel Agreements, including nonpayment of amounts owed.

12.     To be clear, each of the Debtors and Drexel dispute the claims asserted against them.

**B.      The Drexel Unsecured Claim**

13.     On August 3, 2020, Drexel filed proof of claim number 864 against Debtor Center City Healthcare, LLC alleging an unsecured claim in the amount of $32,063,705.47 ("Claim 864"). On August 3, 2020, Drexel filed proof of claim number 533 against Debtor St. Christopher's Healthcare, LLC alleging an unsecured claim in the amount of $917,268.27 ("Claim 533"). On August 4, 2020, Drexel filed proof of claim number 135 against Debtors Philadelphia Academic Health Systems, LLC alleging an unsecured claim in the amount of $32,980,973.74 ("Claim 135"). (Claim 864, Claim 533, and Claim 135 are collectively referred to herein as, the "Unsecured Claims"). As more specifically set forth in the Unsecured Claims, Drexel asserts claims against the Debtors for the failure to make payments to Drexel on account of services rendered by Drexel to the Debtors under the AAA and Drexel Agreements prior to the Petition Date.

**C.      The Drexel Administrative Claim Request**

14.     On March 11, 2021, Drexel filed the *Drexel University's Request for Allowance and Payment of Administrative Expense Claim* [Docket No. 2178] (the "Administrative Claim Request") seeking payment for services provided by Drexel under the AAA and Drexel Agreements after the Petition Date in the amount of at least $2,832,770.63.

**D.      The Parties Commence Discussions**

15.     Shortly after the filing by Drexel of its Administrative Claim Request, the Debtors and Drexel, through their respective counsel, began discussions regarding the relative claims between the Parties. These discussions included information exchanges, the articulation of formal positions regarding the claims asserted and ultimately led to a recognition that a mediation process

5

would be mutually advantageous.  To that end, the Debtors and Drexel agreed to utilize Judge

Fitzgerald as the mediator for their disputes.

**E.**   **The Mediation and the Settlement Term Sheet**

16.    After receiving confidential mediation statements from the Debtors and Drexel,

Judge Fitzgerald held in-person mediation sessions in Philadelphia on each of November 18, 19, 30,

2021 with the Debtors and Drexel. These in-person sessions were followed by numerous subsequent

telephonic and ZOOM sessions, as well as communications and information exchanges among the

Parties and Judge Fitzgerald over the ensuing eight months.

17.    Through the good work of Judge Fitzgerald, and as a result of this process and

extensive arms'-length negotiations, the Debtors, with the assistance of the Committee, and Drexel

reached agreement on the terms of the Settlement Term Sheet, which will settle all of the respective

claims and issues between the Debtors and Drexel, subject to Court approval.

18.    The key terms of the Settlement Term Sheet are as follows:[2]

- *Drexel Administrative Claim Request*.  The Administrative Claim Request of approximately $3,000,000.00 shall be allowed in the amount of $1,490,000.00 (the "Allowed Administrative Claim") and payable on the date the Approval Order becomes final and nonappealable,.

- *Drexel Unsecured Claim*.  The Unsecured Claims of approximately $34,000,000.00 shall be allowed in the amount of $20,000,000.00 (the "Allowed Unsecured Claim") and paid at the time of and in a manner consistent with the treatment of other allowed unsecured claims in the chapter 11 cases of the Debtors.

- *Releases*. Subject to and only upon entry of a final and nonappealable Approval Order and payment by the Debtors of the Allowed Administrative Claim as set forth above, the Parties will exchange mutual general releases of all claims excluding claims arising pursuant to the Settlement Term Sheet

---

[2]     This description of the Settlement Term Sheet is meant only to be a summary of its key provisions. To the extent there is any inconsistency between the description set forth herein and the Settlement Term Sheet, the terms of the Settlement Term Sheet shall control.

10018538.v11

or the Approval Order, or any claims or obligations under the *Order Approving Stipulation Among the Debtors, Drexel University, and Tenet HealthSystem Medical, Inc.* [Docket No. 1438].

• No Admissions. The settlement is intended to compromise disputed claims and to avoid costly discovery, litigation and motions practice. Nothing in the Settlement Term Sheet, nor any actions taken by, or failure to act by, the Debtors or Drexel in furtherance of the Settlement Term Sheet, shall be construed as an admission of liability, wrongdoing, or violation of rule or law on the part of the Debtors or Drexel and each expressly deny and dispute any such action taken by, or failure to act by, them.

Further, Drexel, on the one hand, and Joel Freedman, American Academic Health System, LLC, and Philadelphia Academic Health Holdings, LLC, on the other hand, have amicably resolved matters among them to the satisfaction of all parties, and Drexel and Mr. Freedman have and will have no further comment on this matter.

**RELIEF REQUESTED**

19.     By this Motion, the Debtors seek the entry of an Order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a), substantially in the form of the Proposed Order, (i) approving the Settlement Term Sheet and (ii) granting such other and further relief as this Court deems just and proper.

**BASIS FOR RELIEF REQUESTED**

20.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "the court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." See 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in pertinent part, that the Debtors, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate,…" *See* 11 U.S.C. § 363(b). In addition, Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

7

10018538.v11

21.     Settlements and compromises are "a normal part" of the chapter 11 process. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Indeed, "compromises are favored in bankruptcy" because they minimize litigation and expedite the administration of a bankruptcy estate. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Key3Media Group, Inc.*, No. 03–10323 (MFW), 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).

22.     In considering a Bankruptcy Rule 9019(a) motion, a court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *E.g., Martin*, 91 F.3d at 393. Assessing this balance includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.; see also In re Nutraquest, Inc.*, 434 F.3d 639, 644-45 (3d Cir. 2006).

23.     Notably, in determining whether to approve a proposed settlement, courts should not determine whether the debtor is getting the best possible settlement, but rather whether the compromise is reasonable. *See In re Integrated Health Services, Inc.*, Case No. 00-398 (MFW), 2001 WL 1820426, at *2 (Bankr. D. Del. Jan. 3, 2001) (explaining that in approving a settlement, a court is not to determine that the settlement is the best that can be achieved by the debtor but "rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness'").

24.     Moreover, when deciding whether to approve a compromise, a court will normally accept the judgment of the movant as long as a legitimate business justification exists. *E.g., Martin*, 91 F.3d at 395; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 250 (D. Del. 1998); *see also*

8

10018538.v11

*In re Penn Central Transportation Co.*, 347 F. Supp. 1351, 1353 (E.D. Pa. 1972) (approving settlement agreement as reflection of business judgment). Once a debtor has articulated a valid business justification for a settlement, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

25.     Applying the foregoing standards to the present case, the Debtors have concluded, in the proper exercise of their business judgment, that the agreement embodied in the Settlement Term Sheet is fair, reasonable and in the best interests of their estates and creditors. The Settlement Term Sheet also withstands scrutiny under the *Martin* factors set forth above.

26.     First, the factor of "probability of success in litigation" is satisfied in the present case. The Debtors recognize that resolving disputes through litigation always involves uncertainty and expense, and this especially applies in the present cases, where the Debtors have devoted considerable time and resources in analyzing and preparing potential claims against Drexel, analyzing Drexel's claims against the Debtors, and negotiating the resolution of their respective claims.  While the Debtors believe in the strength of their causes of action and objections to the Drexel Unsecured Claims and Administrative Claim Request, Drexel takes the position that the evidence is to the contrary. If Drexel is correct and is able to prevail at trial, the Debtors would incur significant costs and be obligated to pay significant amounts to satisfy Drexel's claims.

27.     Thus, given the significant risks involved in the litigation and the detrimental impact that any adverse ruling would have on the Debtors' estates, the Debtors submit that the

10018538.v11

Settlement Term Sheet reflects a reasonable exercise of their business judgment under the first *Martin* factor.

28.     Next, the third *Martin* factor[3] is clearly met in the present case. The respective claims asserted by the Debtors and Drexel involve complex issues relating to, *inter alia*, provisions of the AAA and the Drexel Agreements, and complicated factual disputes regarding the circumstances surrounding the execution of these agreements and the parties' performance under such agreements. The complexity of these issues has already required the Debtors to expend significant time and resources. Indeed, as noted above, beginning as early as March 2021 the Debtors have engaged in informal discussions with Drexel concerning the parties' respective claims, and in connection therewith, have devoted significant time and resources to gathering and analyzing supporting information and preparing to litigate such claims.

29.     Lastly, the fourth *Martin* factor - i.e., the paramount interest of the Debtors' creditors - is satisfied in the present case. The Debtors' disputes with Drexel have required significant attention and resources during these Chapter 11 Cases, to the detriment of the Debtors' estates, creditors and others. Indeed, the alternative to settlement is to commence a path of expensive litigation with uncertainty of outcome given the potential defenses available to and claims of Drexel. Given the costs of litigation, even if the Debtors prevailed, there is no assurance that the outcome would be better than that contained in the settlement proposed herein.  The same would be true if the Debtors and Drexel were to settle at a later point, because the likely incurrence of substantial additional administrative expenses would necessarily mean that the net result would be much less than under the Settlement Term Sheet.

---

[3]     The second Martin factor – i.e., the likely difficulty in collection – does not appear to be an issue with the Drexel.

10018538.v11

30.     With the Settlement Term Sheet and the resolution of their disputes with Drexel, the Debtors will avoid costly and time-consuming discovery and litigation, can devote their efforts and attention to finalizing the orderly wind-down of their estates, and developing a chapter 11 liquidating plan that will maximize value to creditors and parties in interest.  The Settlement Term Sheet also clarifies the resolution and treatment of Drexel's claims in these cases. The Settlement Term Sheet thus serves the paramount interests of the Debtors' patients and creditors and satisfies the fourth *Martin* factor.

31.     Based upon the foregoing, there can be no question that the settlement embodied in the Settlement Term Sheet does not "fall below the lowest point in the range of reasonableness." *Integrated Health*, 2001 WL 1820426, at *2 (*quoting Cosoff v. Rodman (In re WW.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)). The Settlement Term Sheet is the result of substantial good faith, arm's length negotiations between the Debtors, with the assistance of the Committee, and Drexel, and constitutes a reasonable exercise of the Debtors' business judgment. Accordingly, this Court should exercise its discretion and approve the Settlement Agreement.

## NOTICE

32.     Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the Official Committee of Unsecured Creditors; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; (xii) counsel to the Tenet Parties; (xiii) counsel to the Court appointed Patient Care Ombudsman; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light

10018538.v11

of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court enter the order, substantially in the form attached hereto as **Exhibit A**, granting the Motion, approving the Settlement Term Sheet, and granting such other and further relief as is just and proper.

Dated:   August 8, 20221
Wilmington, Delaware

/s/ Domenic E. Pacitti
**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193

*Special Counsel for the Debtors and Debtors-in-Possession*

10018538.v11