# **EXHIBIT A**

**(Proposed Order)**

10018538.v11

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Related to Docket No. _____** |
| | ) |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER
APPROVING SETTLEMENT TERM SHEET BETWEEN THE
DEBTORS AND DREXEL UNIVERSITY**

Upon the motion (the "Motion")[2] of the Debtors seeking entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Settlement Term Sheet attached hereto as **Exhibit 1**; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2019; and it appearing that this is a core proceeding pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Any and all terms not defined herein shall have the meaning ascribed to them in the Motion.

the Motion and the Settlement Term Sheet and any responses thereto; and after due deliberation and sufficient cause appearing therefor; IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Settlement Term Sheet is approved in all respects.

3. The parties to the Settlement Term Sheet are authorized to take all appropriate steps required to effectuate the terms of the Settlement Term Sheet.

4. All of the terms and provisions of this Order and the Settlement Term Sheet shall be binding upon any chapter 7 or chapter 11 trustees, successor and/or assign of the Debtors and the respective successors and assigns of Drexel.

5. The terms of any chapter 11 plan of the Debtors or any order dismissing these Chapter 11 Cases, shall be consistent with the terms of this Order and the Settlement Term Sheet.

6. The automatic stay under section 362(a) of the Bankruptcy Code is lifted to the extent necessary to implement the Settlement Term Sheet, including as may be applicable to the filing of any dismissals or withdrawals as provided in the Settlement Term Sheet or other agreement(s), as applicable.

7. Notwithstanding any rule to the contrary, this Order shall take effect immediately upon entry.

8. This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation and enforcement of this Order and the Settlement Term Sheet.

# Exhibit 1

**(Settlement Term Sheet)**

10018538.v11

**Execution Version**

**Exhibit 1 to Approval Order**

**Term Sheet**

---

*This term sheet (this "Term Sheet") sets forth the terms of a settlement (the "Settlement") between Philadelphia Academic Health System, LLC and its debtor affiliates (collectively, the "Debtors") and Drexel University ("Drexel"), subject to entry of an order (the "Approval Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Practice and Procedure (the "Bankruptcy Rules"). This Term Sheet and the Approval Order shall be binding upon any successor or assign of any party (including any trustee or examiner appointed in the Debtors' chapter 11 cases). The Debtors and Drexel shall be respectively referred to herein individually as a "Party" and collectively as the "Parties."*

1. <u>Drexel Administrative Claim</u>. Any and all claims of Drexel for payment of an administrative claim against the Debtors and their estates, whether set forth in *Drexel University's Request for Allowance and Payment of Administrative Expense Claim* [Docket No. 2178] or otherwise, shall be allowed in the amount of $1,490,000.00 (the "Allowed Administrative Claim") and payable on the date the Approval Order becomes final and nonappealable.

2. <u>Drexel Unsecured Claim</u>. Any and all claims of Drexel for payment of an unsecured claim against the Debtors and their estates, whether set forth in proof of claim # 135, proof of claim #533, proof of claim #864 or otherwise, shall be allowed in the amount of $20,000,000.00 (the "Allowed Unsecured Claim") and paid at the time of and in a manner consistent with the treatment of other allowed unsecured claims in the chapter 11 cases of the Debtors.

3. <u>Releases</u>.

    (A) Subject to and only upon entry of a final and nonappealable Approval Order and payment by the Debtors of the Allowed Administrative Claim as set forth in paragraph 1 hereof, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each Estate Releasing Party[1] hereby releases each Drexel Released Party[2] as of the date the Approval Order becomes final and nonappealable and payment by the Debtors of the Allowed Administrative Claim as set forth in paragraph 1 hereof (the "Release Effective Date"), from any and all claims, causes of action (including any preference, fraudulent conveyance, or similar causes of action pursuant to chapter 5 of the Bankruptcy Code and applicable state law), obligations,

---

[1] As used herein, "Estate Releasing Party" means each Debtor and its Representatives. As used herein, "Representative" means, with respect to any person or entity, any current or former direct or indirect subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such.

[2] As used herein, "Drexel Released Party" means Drexel University and its Representatives.

10018538.v11

rights, suits, damages, remedies, penalties, costs, attorneys' and other professional fees, and liabilities, of every kind and nature whatsoever, whether known or unknown, contingent or not contingent, matured or unmatured, including any derivative claims that were or could be asserted on behalf of the Debtors, that such entity would have been legally entitled to assert (whether individually or collectively), whether in contract or in tort or under any statute, or under any other legal or equitable theory, based in law or in equity, based on or relating to, or in any manner arising from, in whole or in part, the Amended and Restated Academic Affiliation Agreement between the Parties (the "AAA") and any and all other contracts and agreements between the Parties, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Debtors' chapter 11 cases, the formulation, preparation, dissemination, negotiation, or filing of the Term Sheet and entry of the Approval Order, any contract, instrument, release, or other agreement or document created or entered into in connection with the Term Sheet or the Approval Order, the pursuit of entry of the Approval Order, or any other related agreement with respect to the foregoing, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Release Effective Date, including for any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence; *provided that* the foregoing release shall not: (i) release any claims among the Parties under, or allowed by, this Term Sheet or the Approval Order; (ii) release any claims or obligations under the *Order Approving Stipulation Among the Debtors, Drexel University, and Tenet HealthSystem Medical, Inc.* [Docket No. 1438]; or (iii) release any claims, causes of action, obligations, rights, suits, damages, remedies, and liabilities against any person or entity that is not a Drexel Released Party.

(B)    Subject to and only upon entry of a final and nonappealable Approval Order and payment by the Debtors of the Allowed Administrative Claim as set forth in paragraph 1 hereof, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each Drexel Releasing Party[3] hereby releases each Estate Released Party[4] as of the Release Effective Date, from any and all claims, causes of action, obligations, rights, suits, damages, remedies, penalties, costs, attorneys' and other professional fees, and liabilities, of every kind and nature whatsoever, whether known or unknown, contingent or not contingent, matured or unmatured, whether in contract or in tort or under any statute, or under any other legal or equitable theory, based in law or in equity, based on or relating to, or in any manner arising from, in whole or in part, the AAA, and any and all other contracts and agreements between the Parties, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Debtors' chapter 11 cases, the formulation, preparation, dissemination, negotiation, or filing of the Term Sheet and entry of the Approval Order, any contract, instrument, release, or other agreement or document created or entered into in connection with the Term Sheet or the Approval Order, the pursuit of entry of the Approval Order, the administration and implementation of the Term Sheet, or any other related agreement with respect to the foregoing, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before entry of the Approval Order, including for any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross

---

[3]    As used herein, "Drexel Releasing Party" means Drexel University and its Representatives.

[4]    As used herein, "Estate Released Party" means each Debtor and its Representatives.

negligence; *provided* that the foregoing release shall not: (i) release any claims among the Parties under, or allowed by, this Term Sheet or the Approval Order; (ii) release any claims or obligations under the *Order Approving Stipulation Among the Debtors, Drexel University, and Tenet HealthSystem Medical, Inc.* [Docket No. 1438]; or (iii) release any claims, causes of action, obligations, rights, suits, damages, remedies, and liabilities against any person or entity that is not a Estate Released Party.  For the avoidance of any doubt, Drexel shall dismiss (with prejudice) as to Debtor Philadelphia Academic Health System, LLC, and covenant not to directly or indirectly pursue against any Estate Released Party any claim or cause of action Drexel asserted in, or with respect to the subject matter of, the proceedings styled as *Drexel University v. American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Philadelphia Academic Health System, LLC, and Joel Freedman* C.A. No. 190606771 pending in the Court of Common Pleas of Philadelphia County, PA.

4. Forthcoming Plan. Subject to entry of a final and nonappealable Approval Order and payment by the Debtors of the Allowed Administrative Claim set forth in paragraph 1 hereof, the Debtors shall incorporate this Term Sheet into any plan or plans of liquidation.

5. Further Assurances and Cooperation. Subject to the other terms of this Term Sheet, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court, from time to time, to effectuate the transactions contemplated hereby, as applicable, and to cooperate in and support entry of the Approval Order.

6. Entire Agreement. Except as otherwise explicitly provided herein, this Term Sheet constitutes the entire agreement by, between and among the respective Parties with respect to the Settlement and supersedes all prior agreements, oral or written, by, between and among the Parties with respect thereto, other than any confidentiality agreement with respect to the Settlement.

7. CHOICE OF LAW. THIS TERM SHEET IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Term Sheet in the Bankruptcy Court, and solely in connection with claims arising under this Term Sheet: (a) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court; (b) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (c) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party hereto.

8. Execution of Term Sheet. This Term Sheet may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Except as expressly provided in this Term Sheet, each individual executing this Term Sheet on behalf of a Party has been duly authorized and empowered to execute and deliver this Term Sheet on behalf of said Party.

9. <u>Rules of Interpretation</u>. This Term Sheet is the product of negotiations among the Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Term Sheet, or any portion hereof, shall not be effective in regard to the interpretation hereof. Each Party was represented by counsel during the negotiations and drafting of this Term Sheet and continues to be represented by counsel.

10. <u>Enforceability of Term Sheet</u>. Each of the Parties to the extent enforceable waives any right to assert that the exercise of termination rights under this Term Sheet is subject to the automatic stay provisions of the Bankruptcy Code, and expressly stipulates and consents hereunder to the prospective modification of the automatic stay provisions of the Bankruptcy Code for purposes of exercising termination rights under this Term Sheet, to the extent the Bankruptcy Court determines that such relief is required. Notwithstanding the foregoing, prior to the exercise of any termination rights under this Term Sheet, the terminating party shall provide the non-terminating party with five (5) business days' notice of termination and an opportunity to cure any default within such time period.

11. <u>Waiver</u>. If the Bankruptcy Court does not enter the Approval Order, or if this Term Sheet is terminated for any reason, the Parties fully reserve any and all of their rights. Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Term Sheet and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms or the payment of damages to which a Party may be entitled under this Term Sheet.

12. <u>Specific Performance</u>. It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Term Sheet by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Bankruptcy Court requiring any Party to comply promptly with any of its obligations hereunder.

13. <u>Several, Not Joint, Claims</u>.  Except where otherwise specified, the agreements and obligations of the Parties under this Term Sheet are, in all respects, several and not joint.

14. <u>Severability and Construction</u>. If any provision of this Term Sheet shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Term Sheet for each Party remain valid, binding, and enforceable. The captions preceding each of the paragraphs and/or sections of this Agreement have been inserted solely for convenience of reference and shall not be used to construing this Agreement.

15. <u>Remedies Cumulative</u>. All rights, powers, and remedies provided under this Term Sheet or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

16. <u>No Admissions</u>. This Agreement is intended to compromise disputed claims and to avoid further litigation and motions practice. Nothing in this agreement, nor any actions taken by, or failure to act by, the Parties in furtherance of this agreement, shall be construed as an admission of liability, wrongdoing, or violation of rule or law on the part any Party and each Party expressly denies and disputes any such action taken by, or failure to act by, the Parties.

17. <u>Amendments, Etc.</u>  The provisions of this Agreement cannot be waived, modified or amended unless such waiver, modification or amendment is in writing and is executed on behalf of each of the Parties.

18. <u>Successors and Assigns</u>.  This Agreement is binding upon the Parties hereto and shall inure to the benefit of the Parties hereto and their respective successors and assigns, including, without limitation, any chapter 7 trustee, chapter 11 trustee or examiner appointed in the Debtors' chapter 11 cases under the applicable provisions of the Bankruptcy Code.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]*

**CENTER CITY HEALTHCARE, LLC,** *ET AL***.**

_____
By:  Allen  Wilen, CRO

Dated: July 22, 2022

**DREXEL UNIVERSITY**

By: John A. Fry, President

Dated: July 25, 2022