# EXHIBIT B

**(Declaration of Allen Wilen in Support of Debtors' Motion for Entry of an Order Approving Settlement Term Sheet Between the Debtors and Drexel University)**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (MFW) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) |

## DECLARATION OF ALLEN WILEN IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT TERM SHEET BETWEEN THE DEBTORS AND DREXEL UNIVERSITY

I, Allen Wilen, hereby declare the following, under the penalty of perjury:

1. I am the Chief Restructuring Officer ("CRO") of Center City Healthcare, LLC and certain of its subsidiaries and affiliates, each a debtor and debtor-in-possession (each, individually, a "Debtor" and, collectively, the "Debtors") in the above-captioned chapter 11 cases.

2. I have served as CRO for the Debtors since April 8, 2019. In such capacity, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I am above 18 years of age, and I am competent to testify.

3. I am duly authorized to make and submit this declaration on behalf of the Debtors in support of the *Debtors' Motion for Entry of an Order Approving Settlement Term Sheet Between the Debtors and Drexel University* (the "Motion"),[2] filed contemporaneously herewith.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

10018538.v11

4. I read and authorized the filing of the Motion. The facts set forth in the Motion are true and correct to the best of my knowledge, information and belief.

## I. The Debtors' Disputes with Drexel

5. On January 11, 2018, Philadelphia Academic Health Holdings, LLC, Philadelphia Academic Health System, LLC ("PAHS") and certain other purchasers consummated the purchase of the businesses of Hahnemann University Hospital ("HUH") and St. Christopher's Hospital for Children ("STC," and together with HUH, the "Hospitals") and certain related assets, including the Hospitals' related physician practice groups (together, the "Healthcare Businesses"), from Tenet Healthcare Corporation ("Tenet") and its affiliates pursuant to an Asset Sale Agreement ("ASA") dated August 31, 2017, as amended (the "Acquisition").

6. At the time of the Acquisition and pursuant to the ASA, the Debtors were assigned the AAA and various leases and other contracts with Drexel previously utilized by Tenet in the operation of the Healthcare Business (collectively, the "Drexel Agreements").

7. Shortly after the Acquisition, the Debtors and Drexel began having various disputes relating to the AAA and the Drexel Agreements as detailed in the Motion.

## II. Drexel's Claims

8. As more fully detailed in the Motion, Drexel filed unsecured proofs of claim against the Debtors for approximately $34,000,000.00 and an Administrative Expense Request for approximately $3,000,000.00.

## III. The Mediation

9. Shortly after the filing by Drexel of its Administrative Claim Request, the Debtors and Drexel, through their respective counsel, began discussions regarding the relative claims between them. These discussions included information exchanges, the articulation of formal positions regarding the claims asserted and ultimately led to a recognition that a mediation process

would be mutually advantageous. To that end, the Debtors and Drexel agreed to utilize Judge Judith K. Fitzgerald as the mediator for their disputes.

10. While I was familiar with the Debtors' claims against Drexel and the claims of Drexel against the Debtors, in advance of the mediation, I took a number of additional steps to become fully informed of the strengths and weaknesses of all such claims, including:

- reviewing the AAA and other relevant agreements;

- reviewing the Debtors' relevant internal documents related to such claims;

- speaking with, or having current special counsel interview, a number of current and former employees and in-house counsel with knowledge of certain of the claims;

- reviewing certain analysis performed by the Debtors' special counsel;

- reviewing certain draft pleadings prepared by the Debtors' special counsel;

- consulting with other representatives of EisnerAmper regarding certain of the claims;

- speaking with, or having the Debtors' special counsel speak with, the Debtors' former counsel who assisted in analyzing certain of the claims; and

- directing the Debtors' special counsel to perform certain legal analysis of such claims and discussing and relying upon such analysis.

11. Shortly after Judge Fitzgerald's selection as mediator, the Debtors and Drexel (together, the "Parties") provided Judge Fitzgerald with the relevant documents and pleadings, provided confidential mediation statements, and thereafter engaged in ongoing discussions with Judge Fitzgerald in an effort to resolve their respective disputes and claims.

12. John DiNome, the Manager, Assistant General Counsel and Chief Human Resources Officer of the Debtors, the Debtors' special counsel and I attended in-person mediation sessions with Judge Fitzgerald in Philadelphia on each of November 18, 19, and 30, 2021. Representatives and counsel for Drexel also attended and participated in these in-person sessions.

These in-person sessions were followed by numerous subsequent telephonic and ZOOM sessions, as well as communications and information exchanges among the Parties and Judge Fitzgerald over the ensuing eight months.

13. Over the course of the mediation process, the Debtors consulted frequently with the Official Committee of Unsecured Creditors of Center City Healthcare, LLC, d/b/a Hahnemann University Hospital, *et al.* (the "Committee").

14. As a result of this process and extensive arms'-length negotiations, the Debtors, with the assistance of the Committee, and Drexel reached agreement on the terms of the Settlement Term Sheet, which will settle all of the respective claims and issues between the Debtors and Drexel, subject to Court approval.

IV. **The Settlement Term Sheet and the Benefits of the Settlement**

15. The Settlement Term Sheet attached as Exhibit 1 to the Proposed Order is a true and correct copy of the Settlement Term Sheet signed by the Parties.

16. I support the Settlement Term Sheet because the settlement provides tremendous benefit to the Debtors and their estates and, without question, is fair, reasonable and in the best interest of the Debtors and their creditors.

17. The Debtors' disputes with Drexel have required significant attention and resources both prior to and during these Chapter 11 Cases, to the detriment of the Debtors' estates, creditors and others.

18. With the Settlement Term Sheet, the Debtors' have resolved significant claims against the Debtors and also allows the Debtors to focus their efforts on achieving their ultimate objectives in these Chapter 11 Cases – i.e., the orderly wind-down of the Debtors' remaining assets and the development and implementation of a chapter 11 liquidating plan that maximizes value to creditors and parties in interest.

19. The Settlement Term Sheet also clarifies the resolution and treatment of Drexel's Unsecured Claims and Administrative Claim Request in these cases and provides for a significant reduction of those asserted claims against the Debtors' estates.

20. Finally, and as detailed in the Motion, the Settlement Term Sheet resolves complex, costly and time-consuming litigation and claims, the outcome of which were far from certain. While the Debtors believe in the strength their causes of action and objections to the Drexel Unsecured Claims and Administrative Claim Request, Drexel takes the position that the evidence is to the contrary. If Drexel is correct and is able to prevail at trial, the Debtors would incur significant costs and be obligated to pay significant amounts to satisfy Drexel's claims. Under these circumstances, the paramount interest of creditors is best served by the resolution embodied in the Settlement Term Sheet.

21. The Settlement Term Sheet is the result of the focused efforts of Judge Fitzgerald and the substantial, good faith, arms-length negotiations between the Debtors, with the assistance of the Committee, and Drexel.

22. For all of the foregoing reasons, I would respectfully encourage the Court to approve the Settlement Term Sheet.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 8, 2022                              Respectfully submitted,


                                                   */s/ Allen Wilen*
                                                   Allen Wilen
                                                   Chief Restructuring Officer

10018538.v11