# EXHIBIT A

**Redacted Version of MOU**

40373549.1

*Execution Version*

### MEMORANDUM OF UNDERSTANDING RE GLOBAL SETTLEMENT AMONG, *INTER ALIA*, DEBTORS, DEBTORS' SUBSIDIARIES, COMMITTEE, TENET, CONIFER, MBNF PARTIES, HSRE ENTITIES AND CONA PARTIES

*This memorandum of understanding (together with all exhibits and schedules hereto, this "**MOU**") is dated as of August 7, 2022 (the "**Execution Date**") and sets forth the definitive terms of a global settlement by and among the Debtors, the Debtors' Subsidiaries, the Committee, Tenet, Conifer, the MBNF Parties, the HSRE Entities, and the CONA Parties (each as defined below), subject to, among other things, the entry of the Approval Order (as defined below) pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). This MOU and all exhibits and schedules hereto constitute the full and complete agreement regarding the matters hereunder. Subject to the occurrence of the MOU Implementation Date (as defined below), this MOU and the Approval Order shall be binding upon any successor or assignee of any Party (including any trustee or examiner appointed in the Chapter 11 Cases (as defined below)). The "**Parties**" shall mean, collectively, the Debtors, the Debtors' Subsidiaries, PAHS Equity Buyer, PAHS Holdco LLC, the Committee, Tenet, Conifer, the MBNF Parties, MBNF Equity Buyer LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation, MBNF Liquidator LLC, the HSRE Entities, the CONA Parties and, solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, 29 – 45 and 47, the Broad Street Lenders (and as to Section 47, only with respect to the Broad Street Lenders described in such Section 47). This MOU is executed pursuant to a compromise and settlement entered into by each Party without any admission of liability to any other Party, and solely for the purpose of avoiding further uncertainty, controversy, litigation, and related legal and other expenses. Without limiting the foregoing, nothing contained herein shall be taken as or construed to be an implication or admission by any Party or any of its Representatives regarding, or as evidencing or indicating in any degree the truth or correctness of any claim or defense asserted by any Party or any of its Representatives.*

### Definitions

"**AAHS**" means American Academic Health System, LLC.

"**Actual Fraud**" means, with respect to a Party, actual and intentional fraud by such Party; provided that such actual and intentional fraud of a Party shall only be deemed to exist if any such Party has actual knowledge (as opposed to imputed or constructive knowledge) of a material misrepresentation or omission and such misrepresentation or omission was made with the intent of deceiving another Party (and does not include any fraud claim based on constructive knowledge, negligent misrepresentation, recklessness or any similar theory).

"**Additional Preserved Action Covered Parties**" means each of the MBNF Individuals, PAHH, Broad Street PropCos, Paladin, Sonsara Management Services, LLC, Jigsaw Advisors, LLC and William Brinkman.

"**Affiliate**" means with respect to a subject Person, (a) any direct and indirect subsidiaries of such subject Person, (b) any direct and indirect parent entities of such subject Person, and (c) any Person

that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with such subject Person. As used in this definition, the term "control" of a Person means the possession, directly or indirectly, of the power to vote ten percent (10%) or more of any class of voting securities of such Person or to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities, by contract or otherwise; provided, that (i) none of the Debtors or the Debtors' Subsidiaries is or shall be deemed to be an Affiliate of any of the MBNF Parties, the MBNF Affiliates, the Broad Street Lenders, the HSRE Entities, the CONA Parties, Tenet, Conifer or the Committee; (ii) none of the MBNF Parties is or shall be deemed to be an Affiliate of any of the Debtors, the Debtors' Subsidiaries, the HSRE Entities, the CONA Parties, Tenet, Conifer or the Committee; (iii) none of the Broad Street Lenders is or shall be deemed to be an Affiliate of any of the Debtors, the Debtors' Subsidiaries, the HSRE Entities, the CONA Parties, Tenet, Conifer or the Committee; (iv) none of the HSRE Entities is or shall be deemed to be an Affiliate of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the MBNF Affiliates, the Broad Street Lenders, the CONA Parties, Tenet, Conifer or the Committee; (v) none of the CONA Parties is or shall be deemed to be an Affiliate of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the MBNF Affiliates, the Broad Street Lenders, the HSRE Entities, Tenet, Conifer or the Committee; (vi) Tenet is not and shall not be deemed to be an Affiliate of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the MBNF Affiliates, the Broad Street Lenders, the HSRE Entities, the CONA Parties, or the Committee; (vii) Conifer is not and shall not be deemed to be an Affiliate of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the MBNF Affiliates, the Broad Street Lenders, the HSRE Entities, the CONA Parties, or the Committee; and (viii) the Committee is not and shall not be deemed to be an Affiliate of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the MBNF Affiliates, the Broad Street Lenders, the HSRE Entities, the CONA Parties, Tenet or Conifer.

"**Amended PAHS Loan Documents**" shall have the meaning ascribed to it in Section 3(a)(viii).

"**Ancillary Documents**" has the meaning set forth in the ASA, and includes, without limitation, the Closing Ancillary Documents; Bill of Sale and Assignment and Assumption Agreement; Real Estate Assignment Agreements; Funds Flow Memorandum; Powers of Attorney; Custodial Agreement; IP Assignment Agreements; Sellers' Guaranty; the Purchasers Promissory Note (each such term as defined in the ASA); the guaranties issued by any of the MBNF Parties in favor of Tenet; any mortgages granted by any of the MBNF Parties in favor of Tenet; the letter agreement dated January 11, 2018 between certain HSRE Entities and Tenet regarding note cure right and purchase option, acknowledged and agreed to by certain MBNF Parties; the Payment Agreement dated January 11, 2018 among certain Debtors, Debtors' Subsidiaries, Midcap Financial Trust, and Tenet; the Lease Payment Agreement dated January 11, 2018 among certain MBNF Parties, certain Debtor, Midcap Financial Trust, and Tenet; the letter agreement dated January 11, 2018 regarding the Timeshare Matter, as therein defined, among certain Debtors, Debtors' Subsidiaries, certain MBNF Parties, certain HSRE Entities and Tenet; the Assignment and Assumption Agreement effective as of January 11, 2018 among certain Debtors and Tenet regarding the HPP Notes; the letter agreement dated February 14, 2018 regarding the DLL Lease, as therein defined, among Tenet, certain Debtor and De Lage Landen Financial Services, Inc.; Indemnity and Hold Harmless Agreement dated January 11, 2018 between PAHH and Chicago Title Insurance Company with respect to certain 2018 real estate taxes; title closing settlement statements with respect to the January 2018 Transactions; Put Agreement (as defined in the ASA); Guaranty of Performance (Put

Option Agreement) dated January 11, 2018 by PAHH with respect to the Put Agreement; Right of First Opportunity to Purchase Agreement dated January 11, 2018 among Tenet, Center for the Urban Child, Inc., and Front Street Healthcare Properties II, LLC related to the Put Agreement's subject property (the "Tenet ROFO Agreement"); Guaranty of Performance (Right of First Opportunity to Purchase Agreement) dated January 11, 2018 by PAHH with respect to the Tenet ROFO Agreement; Tax Credit Reduction Event Indemnity Agreement dated January 11, 2018 among Tenet, Center for the Urban Child, Inc. and certain Debtor and related to the Put Agreement's subject property (the "Tax Indemnity Agreement"); Guaranty of Performance (Tax Credit Reduction Event Indemnity Agreement) dated January 11, 2018 by PAHH with respect to the Tax Indemnity Agreement; and Access License and Shared Services Agreement and Agreement Regarding Sublease dated January 11, 2018 among Tenet, Center for the Urban Child, Inc. and certain MBNF Parties and Debtor.

"**Approval Order**" means an order of the Bankruptcy Court, or another court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases, approving this MOU, the form of which order shall be in form and substance reasonably satisfactory to the Debtors, the MBNF Parties, the HSRE Entities, the CONA Parties, Tenet, and the Committee.

"**ASA**" means the Asset Sale Agreement by and among, among other parties, Tenet Business Services Corporation, the Debtors, certain of the HSRE Entities, certain of the MBNF Parties, and PAHH, as purchasers' representative, dated as of August 31, 2017, as amended and/or modified.

"**ASIC Bond**" means that certain Bond No. 800014386, issued by Atlantic Specialty Insurance Company, as surety ("**ASIC**"), on January 11, 2018, on behalf of CCH, as principal, for the benefit of the Pension Fund, in the penal sum of $5,000,000.

"**Assets**" shall have the meaning ascribed to it in Section 3(a)(vi).

"**BAA**" means the Sub-Business Associate Agreement, effective as of January 11, 2018, between RRG and PAHS.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

"**Broad Street Lenders**" means the lenders under the Broad Street Notes.

"**Broad Street Mortgages**" means the mortgages and/or amended mortgages on the Real Estate securing the Broad Street Notes.

"**Broad Street Notes**" means (i) the Amended and Restated Demand and Secured Promissory Note, dated October 28, 2021, among the Broad Street PropCos, as maker, certain professionals and other advisors described therein as lenders, and Paladin, as administrative agent for the lenders, in the original principal amount of $2,500,000, and (ii) the Demand and Secured Promissory Note, dated October 28, 2021, among the Broad Street PropCos, as maker, certain professionals and other advisors described therein as lenders, and Paladin, as administrative agent for the lenders, in the original principal amount of $3,000,000, in each case, as amended and/or modified.

"**Broad Street PropCos**" means, collectively, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, and Broad Street Healthcare Properties III, LLC.

"**Broad Street PropCos REAs**" means, collectively, (i) the Reciprocal Easement and Operating Agreement (Hahnemann Block), effective as of January 11, 2018, among PAHH New College MOB, LLC, PAHH Feinstein MOB, LLC, Broad Street Healthcare Properties, LLC, and Broad Street Healthcare Properties III, LLC; and (ii) the Parking, Access and Utilities Easement Agreement (Wood Street Garage/Stiles), effective as of January 11, 2018, among Broad Street Healthcare Properties II, LLC, PAHH Wood Street Garage, LLC, and Broad Street Healthcare Properties, LLC.

"**Broad Street PropCos Unity of Use Agreements**" means, collectively, (i) the Easement & Unity of Use Statement, effective as of January 11, 2018, among Broad Street Healthcare Properties, LLC, PAHH New College MOB, LLC, PAHH Feinstein MOB, LLC, and Broad Street Healthcare Properties III, LLC; and (ii) the Easement & Unity of Use Statement, effective as of January 11, 2018, among Broad Street Healthcare Properties II, LLC, PAHH Wood Street Garage, LLC, and Broad Street Healthcare Properties, LLC.

"**Broad Street UCC Fixture Filings**" means the UCC-1 financing statements set forth on **Schedule A** attached hereto.

"**CCH**" means Center City Healthcare, LLC.

"**Chapter 11 Cases**" means the jointly administered and procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

"**Committee**" means the Official Committee of Unsecured Creditors appointed by the Bankruptcy Court in the Chapter 11 Cases.

"**Committee Released Party**" means the Committee and its Representatives.

"**Committee Releasing Party**" means the Committee and its Representatives.

"**CONA Documents**" means, collectively, (i) the Loan Agreement dated as of January 11, 2018, among Capital One, N.A., as agent, the lenders party thereto and certain HSRE Entities; (ii) the open-end mortgages, assignments of leases and rents, security agreements and fixture filings entered in connection therewith; (iii) the subordination agreements with respect to the Master Leases entered into in connection therewith; (iv) the Intercreditor and Subordination Agreement dated January 11, 2018 between Capital One, N.A., as agent, and HSREP VI Holding, LLC; (v) the Escrow Agreement; and (vi) all other documents, instruments and agreements related thereto and executed prior to, concurrently therewith or at any time thereafter, as any or all of the same may be amended, supplemented, restated or otherwise modified from time to time.

"**CONA MBNF Claims**" means any and all claims of any of the CONA Parties against any of the MBNF Parties.

"**CONA Parties**" means each of Capital One, N.A., Cadence Bank, Column Financial Inc., and Sector Financial Inc.

"**CONA Released Party**" means each of the CONA Parties and each of their respective Representatives.

4

"**CONA Releasing Party**" means each of the CONA Parties and each of their respective Representatives.

"**Confirmation Order**" means an order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which Confirmation Order shall be consistent with/in accordance with this MOU.

"**Conifer**" means, collectively, Conifer Health Solutions LLC and Conifer Revenue Cycle Solutions, LLC and each of their respective Affiliates.

"**Conifer Released Party**" means Conifer and its Representatives.

"**Conifer Releasing Party**" means Conifer and its Representatives.

"**D&O Claims**" means the breach of fiduciary duty claims asserted by the Debtors against certain of the MBNF Parties in the MBNF Complaint.

"**D&O Insurance**" means that certain policy no. 086-LB-106855631 issued by Travelers, including the extended reporting period applicable thereto.

"**Debtor Released Party**" means each of the Debtors, each of the Debtors' Subsidiaries, and each of their respective Representatives.

"**Debtor Releasing Party**" means each of the Debtors, each of the Debtors' Subsidiaries, and each of their respective Representatives.

"**Debtor Settlement Payment**" means the payment from the Debtors to the Third Party Escrow Agent, in the amount of $1,450,000 for disbursement as set forth in the MBNF Direction Letter.

"**Debtors**" means, collectively, Center City Healthcare, LLC, Philadelphia Academic Health System, LLC, St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, HPS of PA, L.L.C., SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., TPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., TPS IV of PA, L.L.C., and TPS V of PA, L.L.C. and each of their respective estates.

"**Debtors' Subsidiaries**" means, collectively, Physicians Clinical Network, LLC, and Physician Performance Network of Philadelphia, L.L.C.

"**Disclosure Statement**" means the disclosure statement with respect to the Plan, including any exhibits, appendices, supplements, related documents, ballots, and procedures related to the solicitation of votes to accept or reject the Plan, which disclosure statement shall be in accordance with this MOU.

"**Disputed Claims**" means (i) any and all claims of Drexel University and its affiliates asserted against any of the MBNF Parties in the action captioned *Drexel University v. American Academic Health System, LLC, et al* (Case No. 190606771), pending in the Court of Common Pleas of Philadelphia County; and (ii) any other claims related to the foregoing action.

"**Equity Purchase Agreements**" means, collectively, the MBNF Limited Liability Company Interests Purchase Agreement attached hereto as Exhibit 3(a)(xiii), the PAHH Limited Liability Company Interests Purchase Agreement attached hereto as Exhibit 3(a)(xv) and the PAHS Limited Liability Company Interests Purchase Agreement attached hereto as Exhibit 3(a)(xvii).

"**Escrow Agreement**" means that certain Escrow Agreement dated January 11, 2018 between and among HSRE JV, PAHH and Land Services USA, Inc., as amended by that certain email correspondence between Joel Freedman and Mark Burkemper, dated January 10, 2018 with the time stamp of 10:57 PM, with the subject line "Amendment", and as may otherwise have been amended and/or modified.

"**Escrowed Funds**" means the funds held by Land Services USA, Inc., as escrow agent, pursuant to the Escrow Agreement in the original principal amount of $5,625,000, plus all accrued interest thereon.

"**Final Order**" means an order of the Bankruptcy Court, as entered on the docket in the Chapter 11 Cases, that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reconsideration, re-argument or rehearing has expired and as to which no appeal, re-argument, petition for certiorari, reconsideration or rehearing is pending or, if an appeal, re-argument, certiorari, reconsideration or rehearing thereof has been sought, such order has been affirmed by the highest court to which the order was appealed or from which the reconsideration, re-argument or rehearing was sought, or certiorari has been denied, and the time to take any further appeal or to seek certiorari or further reconsideration, re-argument or rehearing has expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Rule 9024 of the Federal Rules of Bankruptcy Procedure may be filed with respect to such order, as long as such a motion actually has not been filed.

"**Financial Liability**" means any indebtedness, financial obligation or financial liability, whether contingent or non-contingent.

"**Front Street Entities**" means Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC.

"**Front Street Note**" that certain promissory note dated as of February 12, 2020 by which one or more of the Broad Street PropCos allegedly owes one or more of the Front Street Entities approximately $15,000,000.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof, and any agency, department or Person exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"**Governmental Tax Claim Proceeding**" means any proceeding, claim objection, claim estimation, adversary proceeding or contested matter involving a claim asserted or scheduled, and/or any request for allowance of an administrative expense claim, by or on behalf of any Governmental Authority on account of asserted liability for any Tax.

39895352

"**HPP Notes**" means, collectively, the following notes, all of which were assigned to one or more of the Debtors on or about January 11, 2018: (i) that certain Surplus Note Number SCHC201502A issued by Health Partners Plans, Inc., to Tenet HealthSystem Saint [sic] Christopher's Hospital for Children, LLC, in the principal amount of $3,799,960; (ii) that certain Surplus Note Number TT201501A issued by Health Partners Plans, Inc., to Tenet HealthSystem St. Christopher's Hospital for Children, LLC, in the principal amount of $2,089,015; (iii) that certain Surplus Note Number HAHN201502A issued by Health Partners Plans, Inc., to Tenet HealthSystem Hahnemann, LLC, in the principal amount of $1,350,087; and (iv) that certain Surplus Note Number TT201501A issued by Health Partners Plans, Inc., to Tenet HealthSystem Hahnemann, LLC, in the principal amount of $506,257.

"**HSRE Allowed Lease Damages Claim**" shall have the meaning ascribed to it in Section 8 hereof.

"**HSRE Complaint**" means that certain adversary complaint (and the allegations and claims contained within or that could have been included within such complaint) filed in the Chapter 11 Cases, commencing adversary proceeding no. 21-50993-MFW, as filed on June 29, 2021 by the Debtors against some or all of the HSRE Entities and Capital One, N.A.

"**HSRE Debtor Claims**" means any and all claims held by, filed by, filed on behalf of, otherwise asserted by, or scheduled for, any of the HSRE Entities against any of the Debtors, including, without limitation, those claims listed on **Schedule B** hereto.

"**HSRE Documents**" means, collectively, and in each case as amended and/or modified as of the date hereof, (i) the Commitment Letter dated August 31, 2017 among Harrison Street Real Estate, LLC, PAHH and Paladin; (ii) the HSRE-PAHH Note; (iii) the HSRE-PAHH Note Pledge Agreement; (iv) any financing statements with respect to the HSRE JV Interests; (v) the Escrow Agreement; (vi) the Master Lease Guaranties; (vii) the REAs; (viii) the Unity of Use Agreements; (ix) the HSRE ROFO Agreement; (x) the HSRE Warrant; (xi) the Limited Liability Company Agreement of HSRE-PAHH I, LLC, dated as of August 31, 2017, between HSRE-PAHH IA, LLC and PAHH; (xii) the Delegation Agreement dated August 31, 2017 among certain MBNF Parties and HSRE JV; (xiii) the Limited Liability Company Agreement of PAHH dated as of August 31, 2017; and (xiv) any other documents, instruments, certificates, and agreements delivered by any of the MBNF Parties to, or for the benefit of, any HSRE Entity, or by any HSRE Entity to, or for the benefit of, any of the MBNF Parties.

"**HSRE Entities**" means, collectively, Harrison Street Real Estate, LLC, HSREP VI Holding, LLC, HSRE JV and HSRE-PAHH IA, LLC and their respective Affiliates, including, without limitation, PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Feinstein MOB, LLC, PAHH Wood Street Garage, LLC, and PAHH Erie Street Garage, LLC.

"**HSRE JV**" means HSRE-PAHH I, LLC.

"**HSRE JV Interests**" means, collectively, (i) those certain 100 Class A Units of HSRE JV, representing 10% of the outstanding equity interests of such class, and (ii) those certain 100 Class B Units of HSRE JV, representing 100% of the outstanding equity interests in such class, in

each case held by PAHH and pledged by PAHH pursuant to the HSRE-PAHH Note Pledge Agreement.

"**HSRE JV Releasing Party**" means the HSRE JV and its Representatives.

"**HSRE MBNF Claims**" means any and all claims of any of the HSRE Entities against any of the MBNF Parties, including, without limitation, (i) claims asserted in the matter captioned *HSRE-PAHH I, LLC et al. v. Philadelphia Academic Health Holdings, LLC et al.*, Case ID 200300202 (Ct. Com. Pl. Phila. Cty. – Commerce Program); (ii) claims asserted in the matter captioned *PAHH Broad Street MOB, LLC et al v. Philadelphia Academic Health Holdings, LLC et al.*, Case ID 190804677 (Ct. Com. Pl. Phila. Cty. – Commerce Program); (iii) claims related to or arising out of the HSRE-PAHH Note, the HSRE-PAHH Note Pledge Agreement or the HSRE JV Interests; and (iv) claims arising from, in connection with, or related to any other HSRE Documents.

"**HSRE-PAHH Note**" means that certain promissory note, dated January 11, 2018, issued by PAHH to HSREP VI Holding, LLC in the original principal amount of $51,075,000.

"**HSRE-PAHH Note Pledge Agreement**" means the Pledge Agreement dated January 11, 2018 between PAHH and HSREP VI Holding, LLC.

"**HSRE Released Party**" means each of the HSRE Entities and each of their respective Representatives.

"**HSRE Releasing Party**" means each of the HSRE Entities and each of their respective Representatives.

"**HSRE ROFO Agreement**" means the Non-Competition and Right of First Opportunity Agreement, dated January 11, 2018, between PAHH and Harrison Street Real Estate, LLC.

"**HSRE Warrant**" means the Class A Unit Purchase Warrant No. WCA-1, issued on January 11, 2018, by PAHH to HSREP VI Holding, LLC.

"**January 2018 Transactions**" means, collectively, those transactions entered into by some or all of the Parties on or about January 11, 2018 in connection with the sale and transfer by Tenet of Hahnemann University Hospital, St. Christopher's Hospital for Children, and associated real estate and other assets to certain of the Debtors, certain of the MBNF Parties, and certain of the HSRE Entities, including, without limitation, those effectuated by, related to, in connection with or arising from the ASA, the Ancillary Documents, the MSA, the TSA, the Leases, the HSRE Documents, the CONA Documents, and/or the MidCap Documents, or pursuant to any documents, instruments or agreements that amended, supplemented or otherwise modified any of the foregoing.

"**January 2018 Transactions Professionals**" has the meaning set forth in the definition of "Representative."

"**Leases**" means, collectively, the real estate leases, Master Leases, and real estate subleases executed by one or more of the Debtors, the MBNF Parties and/or the HSRE Entities, as lessor or sublessor, and one or more of the Debtors, the MBNF Parties and/or the HSRE Entities, as lessee or sublessee on or about January 11, 2018 in connection with the January 2018 Transactions.

"**Master Leases**" means, collectively, those certain six (6) master leases each dated as of January 11, 2018 between (i) St. Christopher's Healthcare, LLC, as tenant, and (ii) each of PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Feinstein MOB, LLC, PAHH Wood Street Garage, LLC, and PAHH Erie Street Garage, LLC, as landlord.

"**Master Lease Guaranties**" means, collectively, the guaranties of lease, each dated as of January 11, 2018 by each of PAHH and Paladin with respect to each of the Master Leases.

"**MBNF**" means MBNF Investments, LLC.

"**MBNF Affiliate**" means any current or former Affiliate of any MBNF Party.

"**MBNF Complaint**" means that certain adversary complaint (and the allegations and claims contained within or that could have been included within such complaint) filed in the Chapter 11 Cases, commencing adversary proceeding no. 21-50991-MFW, as filed on June 29, 2021 by the Debtors against certain of the MBNF Parties.

"**MBNF CONA Claims**" means any and all claims of any of the MBNF Parties against any of the CONA Parties.

"**MBNF Debtor Claims**" means any and all claims held by, filed by, filed on behalf of, otherwise asserted by, or scheduled for, any of the MBNF Parties against any of the Debtors, including, without limitation, those claims listed on **Schedule C** hereto.

"**MBNF Direction Letter**" has the meaning set forth in Section 51 of this MOU.

"**MBNF Entities**" means, collectively, MBNF, AAHS, PAHH, the Front Street Entities, the Broad Street PropCos and the RRG.

"**MBNF Equity Buyer Agreement**" has the meaning set forth in Section 30 of this MOU.

"**MBNF Equity Buyer LLC**" means the purchaser of the equity interests in MBNF.

"**MBNF HSRE Claims**" means any and all claims of any of the MBNF Parties against any of the HSRE Entities, including, without limitation, third party claims asserted in the matter captioned *HSRE-PAHH I, LLC et al. v. Philadelphia Academic Health Holdings, LLC et al.*, Case ID 200300202 (Ct. Com. Pl. Phila. Cty. – Commerce Program).

"**MBNF Individuals**" means, collectively, Joel Freedman, Stella Freedman, Svetlana Attestatova, and Kyle Schmidt.

"**MBNF Intercompany Claims**" means any and all claims among the MBNF Entities.

"**MBNF Liquidator LLC**" means the limited liability company that indirectly owns one hundred percent (100%) of the equity interests of MBNF Equity Buyer LLC, through MBNF Parent 1 Corporation and MBNF Parent 2 Corporation.

"**MBNF Parent 1 Corporation**" means a corporation that directly owns fifty percent (50%) of the equity interests of MBNF Equity Buyer LLC that is not owned by MBNF Parent 2 Corporation.

"**MBNF Parent 2 Corporation**" means a corporation that directly owns fifty percent (50%) of the equity interests of MBNF Equity Buyer LLC that is not owned by MBNF Parent 1 Corporation.

"**MBNF Parties**" means, collectively, the MBNF Entities, the MBNF Individuals, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, and Globe Health Foundation, Inc.

"**MBNF Released Party**" means each of the MBNF Parties, each of the Broad Street Lenders, each MBNF Affiliate, and each of their respective Representatives.

"**MBNF Releasing Party**" means each of the MBNF Parties, each of the Broad Street Lenders, each MBNF Affiliate, and each of their respective Representatives.

"**MBNF Tenet/Conifer Claims**" means any and all claims of any of the MBNF Parties against Tenet and/or Conifer, including, without limitation, (i) those claims asserted by PAHH in the Court of Chancery of the State of Delaware in the matter captioned *Philadelphia Academic Health Holdings, LLC v. Tenet Business Services Corporation*, case no. 2018-0684-KSJM, (ii) those claims asserted in the Superior Court of the State of Delaware in the matter captioned *Philadelphia Academic Health Holdings, LLC et al. v. Tenet Business Services Corporation*, case no. N19C-04-035EMDCCLD, and (iii) any other claims arising from, in connection with, or related to the January 2018 Transactions, the ASA, the Ancillary Documents, the TSA and/or MSA.

"**MidCap Documents**" means, collectively, (i) the Commitment Letter dated August 31, 2017 among MidCap Financial Trust, certain Debtors and certain MBNF Parties; (ii) the Credit and Security Agreement dated as of January 11, 2018, among the Debtors and MidCap Financial Trust, as administrative agent and lender, as amended by Amendment No. 1 to Credit and Security Agreement dated as of September 20, 2018 among the Debtors, Midcap Funding IV Trust, as administrative agent and lender, and MidCap Funding H Trust, as lender; (iii) the Payment Guaranty dated as of January 11, 2018, by PAHH for the benefit of MidCap Financial Trust; (iv) the Guaranty and Security Agreement dated as of September 20, 2018, by the Broad Street PropCos for the benefit of MidCap Funding IV Trust; (v) the First Priority Secured Priming Super-Priority Debtor in Possession Credit and Security Agreement, dated as of July 15, 2019, among the Debtors and MidCap Financial Trust, as agent and lender; (vi) the Guaranty and Security Agreement dated as of July 15, 2019, by the Broad Street PropCos for the benefit of MidCap Financial Trust; (vii) the Guaranty and Security Agreement dated as of July 15, 2019, by the Debtors' Subsidiaries for the benefit of MidCap Financial Trust; (viii) the Payment Guaranty dated as of July 15, 2019, by PAHH for the benefit of MidCap Financial Trust; and (ix) all other documents, instruments and agreements related thereto and executed prior to, concurrently therewith or at any time thereafter, as any or all of the same may be amended, supplemented, restated or otherwise modified from time to time.

"**MOU Implementation Date**" means the date on which all the conditions to the effectiveness of this MOU set forth in Section 23 shall have been satisfied or, if applicable, waived in writing.

"**MOU Implementation Date Certification**" shall have the meaning set forth in Section 50 of this MOU.

"**MOU Release Notice**" shall have the meaning set forth in Section 52 of this MOU.

"**MSA**" means the Master Services Agreement between Conifer Revenue Cycle Solutions, LLC and Philadelphia Academic Health System, LLC, dated January 11, 2018, and Statements of Work entered into in connection therewith, as such agreement and statements of work may have been amended or modified.

"**New MBNF Organizational Documents**" means such certificates or articles of formation, charters, bylaws, operating agreements, shareholder agreements, or other applicable formation documents for MBNF, AAHS, PAHH, and the Broad Street PropCos, as applicable, the forms of which shall be consistent in all respects with this MOU and reasonably acceptable to the Debtors, the Committee, the HSRE Entities, Tenet and MBNF Liquidator LLC.

"**New PAHS Organizational Documents**" means the amended operating agreement of PAHS, which shall be consistent in all respects with this MOU and reasonably acceptable to the MBNF Entities.

"**NKF**" means G&E Real Estate Management Services, Inc. d/b/a Newmark Knight Frank in its capacity as counter-party under that certain property management agreement dated June 1, 2020, as amended.

"**NKF Broker**" shall have the meaning set forth in Section 3(d)(ii) of this MOU.

"**Non-MBNF Parties**" means the Parties hereto other than the MBNF Parties, MBNF Equity Buyer LLC, MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation, PAHS Equity Buyer and PAHS Holdco LLC.

"**PAHH**" means Philadelphia Academic Health Holdings, LLC.

"**PAHS**" means Philadelphia Academic Health System, LLC.

"**PAHS Equity Buyer**" means the purchaser of the equity interests in PAHS.

"**PAHS Holdco LLC**" means the limited liability company that directly owns and controls one hundred percent (100%) of the equity interests of PAHS Equity Buyer.

"**PAHS Loan**" means any and all loans and advances made by PAHS to the Broad Street PropCos pursuant to the PAHS Loan Documents and the interim and final orders [Docket Nos. 3811 and 3892] approving the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Philadelphia Academic Health System, LLC to Make Secured Term Loan to Broad Street Entities Pursuant to 11 U.S.C. § 363 and 105(a) and (II) Granting Related Relief* [Docket No. 3657].

"**PAHS Loan Documents**" means collectively (i) the Secured Promissory Note dated as of March 31, 2022 in the amount of $5,600,000 from the Broad Street PropCos to PAHS; (ii) the Guaranty Agreement dated as of March 31, 2022 from PAHH to PAHS; (iii) the Open-End Mortgages and

Security Agreements dated as of March 30, 2022 and effective as of March 31, 2022 from each of the Broad Street PropCos to PAHS; (iv) the Second Amended and Restated Lien Subordination Agreement dated as of March 30, 2022 and effective as of March 31, 2022 by and among PAHS, Paladin, as agent under the Broad Street Notes, and Front Street Healthcare Properties, LLC; and (v) the UCC-1 Financing Statements and UCC fixture filings with each of the Broad Street PropCos, as a debtor, and PAHS, as a secured party.

"**Paladin**" means Paladin Healthcare Capital, LLC.

"**PAMA**" means Philadelphia Academic Medical Associates, LLC.

"**Pending Litigation Claims**" means (i) those claims (collectively, the "**Saechow Claims**") asserted by Pamela Saechow (A) before the American Arbitration Association in the pending matter captioned *Pamela Saechow v. Philadelphia Academic Health System, LLC, American Academic Health System, LLC, Paladin Healthcare Capital, LLC and Joel Freedman,* AAA NO: 01-21-0003-6682, (B) the related administrative charge captioned *Pamela Saechow v. American Academic Health System,* EEOC Charge No. 530-2019-04039, and (C) any other claims related to the Saechow Claims or to Pamela Saechow's employment or termination of employment by any Debtor or any of the MBNF Parties, that have been or may in the future be asserted by Pamela Saechow against any of the MBNF Parties, MBNF Affiliates or their respective Representatives; and (ii) those claims (collectively, the "**Richards Claims**") asserted by Suzanne Richards in (A) the administrative action captioned *Suzanne Richards v. Philadelphia Academic Health System LLC, American Academic Health System LLC, Paladin Healthcare Capital LLC, Hahnemann University Hospital, and St. Christopher's Hospital for Children*, PHRC Charge No. 201902231 and EEOC Charge No. 17F202060916, (B) the matter pending before JAMS captioned *Suzanne Richards and SMR Healthcare Management, Inc. v. American Academic Health System, LLC, Paladin Healthcare Capital, LLC and Joel Freedman,* JAMS No. 1450006960, and (C) any other claims related to the Richards Claims, SMR Healthcare Management, Inc.'s retention by, or arrangement with, any Debtor or any of the MBNF Parties, or to employment or termination of employment by any Debtor or any of the MBNF Parties of Suzanne Richards through the retention of, or arrangement with, SMR Healthcare Management, Inc., that have been or may in the future be asserted by Suzanne Richards and/or SMR Healthcare Management, Inc. against any of the MBNF Parties, MBNF Affiliates or their respective Representatives.

"**Pension Fund**" means the Pension Fund for Hospital and Health Care Employees of Philadelphia and Vicinity.

"**Pension Settlement Agreement**" means that certain Settlement, Assignment, and Release of Claims Agreement dated as of December 24, 2020 between the Pension Fund and American Academic Health System, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, the Broad Street PropCos, MBNF Investments, LLC, PAHH, and RRG, along with their affiliates, subsidiaries, and other members of the "control group" (as such term is set forth in the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1002, 29 U.S.C. § 1301(a)(14)(A)), but excluding the Debtors and the Debtors' Subsidiaries.

"**Person**" means any natural person, corporation, limited liability company, professional association, limited partnership, general partnership, joint stock company, joint venture,

association, company, trust, bank, trust company, land trust, business trust or other organization, whether or not a legal entity, and any Governmental Authority.

"**Plan**" means an amended plan of liquidation of the Debtors under Chapter 11 of the Bankruptcy Code, including the exhibits and schedules thereto and any Plan Supplement, as may be amended, supplemented, or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order and the terms hereof.

"**Plan Supplement**" means the compilation of disclosures, documents and forms of documents, schedules, and exhibits to the Plan, as amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms hereof.

"**Power of Attorney**" has the meaning set forth in Section 3(a)(vi) of this MOU.

"**Prior Pension Payments**" has the meaning set forth in Section 6 of this MOU.

"**Real Estate**" means the following properties, as more particularly described by the legal description attached hereto and made a part hereof as **Schedule D**, together with all of right, title and interest in and to all improvements and fixtures located thereon, and all rights, privileges and recorded easements appurtenant to any of the foregoing:

|  | Philadelphia, PA Address | OPA |
|---|---|---|
| North Tower, South Tower | 222-248 N. Broad Street | 772025002 |
| (Land next to SHSH Building) | 221-223 N. 15th Street | 772028498 |
| Stiles Alumni Hall Underground | 325 N. 15th Street | 881038202 |
| Martinelli Park | 300-304 N. Broad Street | 885620242 |
| (redevelopment land/surface parking) (city block) | 200-214 N. Broad Street | 885467862 |
| SHSH Building (city block) | 201-219 N. 15th Street | 772028496 |

"**REAs**" means, collectively, (i) the Broad Street PropCos REAs, and (ii) the Parking, Access and Utilities Easement Agreement (Erie Garage/St. Christopher's Hospital), effective as of January 11, 2018, among Front Street Healthcare Properties, LLC, PAHH Erie Street Garage, LLC, and Front Street Healthcare Properties II, LLC.

"**Release Certifying Parties**" has the meaning set forth in Section 52 of this MOU.

"**Released Claims**" has the meaning set forth in Section 14(i) of this MOU.

"**Released Party**" means, collectively or individually, as the context may require, Committee Released Party, CONA Released Party, Conifer Released Party, Debtor Released Party, HSRE Released Party, MBNF Released Party, Tenet Released Party and RRG Released Party.

13

"**Releasing Party**" means, collectively or individually, as the context may require, Committee Releasing Party, CONA Releasing Party, Conifer Releasing Party, Debtor Releasing Party, HSRE Releasing Party, HSRE JV Releasing Party, MBNF Releasing Party, Tenet Releasing Party and RRG Releasing Party.

"**Representative**" means, with respect to any Person, such Person's and such Person's current and former Affiliates' current and former officers, directors, control persons, equity holders, managers, supervisors, principals, managing members, members, employees, servants, agents, advisory board members, financial advisors, partners, attorneys, advisors, accountants, investment bankers, consultants, administrative agents, collateral agents, documentation agents, representatives, predecessors, successors (including successors in interest), trustees, assigns, assignee for the benefit of creditors, liquidators, receivers, heirs, estates, family members, executors, administrators, and other professionals, in each case, solely in their respective capacities as such, provided, however, that the term "Representative" shall not include (i) the members of the Committee; (ii) HRE Capital, LLC f/k/a Healthcare Real Estate Capital, LLC or Huron Consulting Services, LLC and its affiliates (collectively, the "**January 2018 Transactions Professionals**"); (iii) Accredited Surety and Casualty Company, Inc. and/or its affiliates; (iv) NKF; and (v) solely with respect to the pending claims reported under the D&O Insurance, Suzanne Richards; SMR Healthcare Management, Inc.; Pamela Saechow; Jeeni Patel; Candese Combs; Scherise Bell; Elizabeth Thomas; Michelle Beckal; Crystal Broomer;  and Joelle Leone and any other individuals or entities listed in Claim No. X2100660 under the D&O Insurance; underlined provided further that (a) none of the Debtors, the Debtors' Subsidiaries or their respective Representatives is or shall be deemed to be a Representative of any of the MBNF Parties, the Broad Street Lenders, the HSRE Entities, the CONA Parties, Tenet, Conifer or the Committee; (b) none of the MBNF Parties or their Representatives is or shall be deemed to be a Representative of any of the Debtors, the Debtors' Subsidiaries, the HSRE Entities, the CONA Parties, Tenet, Conifer or the Committee; (c) none of the Broad Street Lenders or their Representatives is or shall be deemed to be a Representative of any of the Debtors, the Debtors' Subsidiaries, the HSRE Entities, the CONA Parties, Tenet, Conifer or the Committee; (d) none of the HSRE Entities or their Representatives is or shall be deemed to be a Representative of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the Broad Street Lenders, the CONA Parties, Tenet, Conifer or the Committee; (e) none of the CONA Parties or their Representatives is or shall be deemed to be a Representative of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the Broad Street Lenders, the HSRE Entities, Tenet, Conifer or the Committee; (f) none of Tenet or its Representatives is or shall be deemed to be a Representative of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the Broad Street Lenders, the HSRE Entities, the CONA Parties, or the Committee; (g) none of Conifer or its Representatives is or shall be deemed to be a Representative of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the Broad Street Lenders, the HSRE Entities, the CONA Parties, or the Committee; and (h) none of the Committee or its Representatives is or shall be deemed to be a Representative of any of the Debtors, the Debtors' Subsidiaries, the MBNF Parties, the Broad Street Lenders, the HSRE Entities, the CONA Parties, Tenet or Conifer.

"**RRG**" means Philadelphia Academic Risk Retention Group, LLC.

"**RRG Dissolution**" has the meaning set forth in Section 2 hereof.

"**RRG Membership Interests**" means, collectively, (i) those certain 90 units of RRG, representing 90% of the outstanding membership interests of RRG held by PAHH, (ii) those certain 5 units of RRG representing 5% of the outstanding membership interests of RRG held by PAHS, and (iii) those certain 5 units of RRG representing 5% of the outstanding membership interests of RRG held by PAMA.

"**RRG MOU Implementation Date Actions**" has the meaning set forth in Section 2 hereof.

"**RRG Proceeds**" has the meaning set forth in Section 2 hereof.

"**RRG Released Party**" means each MBNF Released Party and each Debtor Released Party.

"**RRG Releasing Party**" means each MBNF Releasing Party and each Debtor Releasing Party.

"**Sale**" shall have the meaning ascribed to it in Section 3(b) hereof.

"**Settlement Balancing Payment**" means the payment by PAHS to the Third Party Escrow Agent, in the amount of $4,450,000, for disbursement as set forth in the MBNF Direction Letter; the source of repayment of which shall be limited to the proceeds of the Sale or other disposition of the Real Estate, and secured by a lien on the Real Estate, which claim for repayment shall have no recourse to any of the Broad Street PropCos, pursuant to the Amended PAHS Loan Documents.

"**Standstill Agreement**" means that certain standstill agreement, between and among the Debtors and the MBNF Parties, regarding the governance of the Debtors and entered into (and extended from time to time) in connection with the mediation conducted by The Honorable Kevin J. Carey (ret.).

"**Taxes**" means all present or future taxes, levies, imposts, duties, deductions, withholdings (including backup withholding), assessments, fees or other charges imposed by any Governmental Authority, including any interest, additions to tax or penalties applicable thereto.

"**Tenet**" means, collectively, Tenet Healthcare Corporation, Tenet Business Services Corporation, Tenet Healthsystem Hahnemann, L.L.C., Tenet Healthsystem St. Christopher's Hospital For Children, L.L.C., and each other "Seller" as that term is defined in the ASA and each of their respective Affiliates.

"**Tenet Allowed Claim**" shall have the meaning ascribed to it in Section 7 hereof.

"**Tenet Debtor Claims**" means, subject to the release of all claims against each MBNF Released Party as described in Sections 14(a), (d), (e), (i) and (l), any claims allowed to Tenet and/or Conifer, or retained by Tenet and/or Conifer, pursuant to that certain *Order Granting Motion of the Debtors for Entry of Order Approving Settlement Term Sheet Between the Debtors, Tenet Business Services Corporation, Conifer Revenue Cycle Solutions, LLC and The Official Committee of Unsecured Creditors* [D.I. 1118], and the Term Sheet attached thereto as Exhibit 1.

"**Tenet Net Settlement Payment**" means the payment from Tenet to the Third Party Escrow Agent in the amount of $23,500,000 less the Withdrawal Liability Settlement Payment, the Prior Pension

Payments and the Tenet Paladin Settlement Payment, for disbursement as set forth in the MBNF Direction Letter.

"**Tenet Paladin Settlement Payment**" means the payment from Tenet to the Third Party Escrow Agent, in the amount of $5,000,000, in settlement and full resolution of all pending and potential claims asserted or assertable by Paladin against Tenet, which payment shall be disbursed by the Third Party Escrow Agent to Paladin and PAHH in accordance with the MBNF Direction Letter.

"**Tenet Released Party**" means Tenet and its Representatives.

"**Tenet Releasing Party**" means Tenet and its Representatives.

"**Tenet/Conifer Indemnification Claims**" means any and all claims of Tenet and/or Conifer against any of the MBNF Parties for indemnification, whether relating to amounts due or potentially due to the Pension Fund, in connection with or relating to the MSA or the TSA, or otherwise.

"**Tenet/Conifer MBNF Claims**" means any and all claims of Tenet and/or Conifer against any of the MBNF Parties, including, without limitation, (i) claims and counterclaims asserted by Tenet and/or Conifer in the Chancery Court of the State of Delaware in the matter captioned *Philadelphia Academic Health Holdings, LLC v. Tenet Business Services Corporation*, case no. 2018-0684-KSJM, (ii) claims and counterclaims asserted by Tenet and/or Conifer in the Superior Court of the State of Delaware in the matter captioned *Philadelphia Academic Health Holdings, LLC et al. v. Tenet Business Services Corporation*, case no. N19C-04-035EMDCCLD, (iii) claims asserted in the Superior Court of the State of Delaware in the matter captioned *Tenet et. al. v Front Street et. al.*, case no. N19C-09-116-SKR; (iv) claims arising from or in connection with the "Put Agreement" (as defined in the ASA); (v) Tenet/Conifer Indemnification Claims; and (vi) any other claims arising from, in connection with, or related to the January 2018 Transactions, the ASA, Ancillary Documents, TSA and/or MSA.

"**Third Party Escrow Agent**" means Omni Agent Solutions.

"**Travelers**" means Travelers Casualty and Surety Company of America.

"**TSA**" means the Transition Services Agreement between Tenet Business Services Corporation and PAHS, dated January 11, 2018, as such agreement may have been amended and/or modified.

"**Unity of Use Agreements**" means, collectively, (i) the Broad Street PropCos Unity of Use Agreements and (ii) the Easement & Unity of Use Statement, effective as of January 11, 2018, among Front Street Healthcare Properties, LLC, PAHH Erie Street Garage, LLC, and Front Street Healthcare Properties II, LLC.

"**Withdrawal Liability Settlement Payment**" has the meaning set forth in Section 6 of this MOU.

## Agreement

For good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows, subject to the entry of the Approval Order and the occurrence of the MOU Implementation Date as set forth herein:

1. **Settlement of Matters**.    On the MOU Implementation Date, this MOU and the consideration provided herein constitutes, among other things, the settlement of all matters pending on appeal in the United States District Court for the District of Delaware, Civil Action No. 1:21-cv-01779-RGA and all other matters set forth in Section 15 herein.

2. **RRG Proceeds**.    From and after the Execution Date, RRG shall use commercially reasonable efforts to promptly obtain all necessary regulatory approvals for the dissolution and liquidation of the RRG (the "**RRG Dissolution**") and the distribution of the assets of RRG ("**RRG Proceeds**") to PAHH and the Debtors as set forth herein, and PAHH, PAMA and PAHS shall use commercially reasonable efforts to cooperate with RRG in obtaining such regulatory approvals.  In furtherance of timely distribution of the RRG Proceeds, as of the Execution Date, PAHH, PAHS, and PAMA, each in the capacity as a holder of the RRG Membership Interests, shall have executed the members dissolution resolutions attached hereto as **Exhibit 2(a)** and the board of managers of RRG shall have executed the board dissolution resolutions attached hereto as **Exhibit 2(b)**. Notwithstanding anything to the contrary set forth in the Operating Agreement of RRG, dated as of February 5, 2018, and/or the Agreement of Members of Philadelphia Academic Risk Retention Group, LLC effective as of March 11, 2020, or otherwise, the RRG Proceeds shall be disbursed as follows (the manner of which shall be referred to herein as the "**Disbursement Priorities**"): (i) first, the retention of a reserve in the amount of $200,000, to pay, solely from such reserve, (a) all of RRG's ordinary course taxes and obligations to its trade creditors and other vendors that are outstanding as of the MOU Implementation Date based on the issued and outstanding invoices, a schedule of which shall be provided by the RRG to the Debtors no less than ten (10) calendar days prior to the scheduled payment of such invoices, and (b) the documented, out-of-pocket expenses and costs associated with (x) the performance of RRG's obligations to cooperate with Accredited Surety and Casualty Company, Inc. as set forth in that certain Assignment, Assumption and Novation Agreement dated as of March 31, 2022 and (y) the dissolution and winding up of RRG (including preparing and filing of its final tax return and any regulatory filings), provided that any unused reserve shall revert to PAHS and PAMA; and thereafter, (ii) $2,760,000 to PAHH and (iii) all other proceeds to the Debtors, provided, however, that any funds payable by the RRG pursuant to clauses (ii) and (iii) above, whether by way of the return of surplus capital, dissolution or otherwise, shall be divided equally between (x) PAHH and (y) the Debtors until PAHH and the Debtors each receive $2,760,000 and thereafter all such distributions shall be made to the Debtors.  On or promptly after the Execution Date, the RRG shall  request an approval from the Vermont Department of Financial Regulation, in a form acceptable to PAHH, PAHS and PAMA, for the dissolution, liquidation and wind up of the RRG, and subject to such approval, (I) the following shall occur on the MOU Implementation Date (collectively, "**RRG MOU Implementation Date Actions**"): (a) RRG shall pay liquidating distributions in an amount equal to all RRG Proceeds *less* the reserve retained pursuant to clause (i) of the Disbursement Priorities, to PAHH and Debtors in accordance with clauses (ii) and (iii)

17

of the Disbursement Priorities; (b) PAHH shall voluntarily dissociate and withdraw as a member of the RRG and shall execute the Voluntary Dissociation of Membership Interest attached hereto as **Exhibit 2(c)**, thereby relinquishing its rights to participate as a member of the RRG and terminating its membership interest in the RRG; and (c) all MBNF Individuals that hold any board, officer or other position with the RRG shall resign from any and all such positions  by executing the two written resignations attached hereto as **Exhibit 2(d)**, and the remaining members of the RRG (i.e. PAHS and PAMA)  and the board of RRG shall appoint individuals to replace such MBNF Individuals acceptable to the Vermont Department of Financial Regulation and the Committee by executing the member and board resolutions each attached hereto as **Exhibit 2(e)**; and (II) after the MOU Implementation Date, RRG shall proceed to dissolve and liquidate, as expeditiously as reasonable, for the sole purpose of winding up and paying all final liabilities of the RRG, all in accordance with the Disbursement Priorities; and at such time as all final liabilities of the RRG have been paid, the RRG shall promptly file articles of termination with the Vermont Secretary of State terminating the legal existence of the dissolved RRG as of the date of filing, and deliver to each of PAHH, PAHS and PAMA a proper accounting made by the RRG's accountants of the RRG's assets, liabilities and results of operations through the date of termination.  The Approval Order shall provide, among other things, that all RRG distributions in accordance with the provisions set forth in this MOU are authorized and approved and no further authorization or approval from the Bankruptcy Court shall be required therefor, including pursuant to the *Order (I) authorizing Debtors to Enter into Assignment, Assumption and Novation Agreement Pursuant to 11 U.S.C. § 363 and (II) Granting Related Relief* [Docket No. 3710].  The Debtors shall seek to effectuate the dismissal of any MBNF Parties as part of entering into stipulations modifying the automatic stay to allow claimants to recover damages for personal injuries, solely by presenting such claimants with a copy of a declaration, substantially in the form attached hereto as **Exhibit 2(f).**

3. **Settlement Implementation/Broad Street PropCos / Real Estate**.

    a. **Settlement Implementation.**  On and after the MOU Implementation Date, the applicable Parties shall implement the settlement transactions, actions, and steps set forth in Sections 3(a)(i) – 3(a)(xx) herein in the sequence set forth below, provided that, if any step is delayed in implementation or effect but has occurred, it shall nevertheless be deemed to have occurred in the indicated sequence.  No transactions contemplated by the steps described in this Section 3(a) shall negate any express terms of this MOU, the intent being that all successors and assigns of the Parties shall be bound by the terms hereof.  To the extent any payment in these steps is misdirected, the recipient of such misdirected payment shall redirect such payment in accordance with the steps.

        i. On the MOU Implementation Date, Tenet shall pay the Withdrawal Liability Settlement Payment.

        ii. Immediately thereafter, (a) Tenet shall make the Tenet Paladin Settlement Payment; (b) Tenet shall make the Tenet Net Settlement Payment; (c) the Debtors shall make the Debtor Settlement Payment;

18

and (d) PAHS shall make the Settlement Balancing Payment. Immediately following its receipt of the payments set forth in the foregoing clauses 3(a)(i) and (3)(a)(ii)(a), (b), (c), and (d), the Third Party Escrow Agent shall, on the MOU Implementation Date, disburse such amounts in accordance with the MBNF Direction Letter. Such payments shall be in full and final satisfaction of, *inter alia*, the secured obligations under the Broad Street Notes, the Broad Street Mortgages, the Broad Street UCC Fixture Filings, all UCC-1 filings by any of the MBNF Parties against any of the Broad Street PropCos and/or their assets securing the Broad Street Notes, and all other liens granted in connection with the Broad Street Notes.

iii.    Immediately thereafter, the Third Party Escrow Agent shall release to the Debtors for filing in the appropriate land records in Philadelphia, Pennsylvania, the Office of the Secretary of State of Pennsylvania, the Office of the Secretary of the State of Delaware, or otherwise, fully executed originals of the documents attached hereto as **Exhibit 3(a)(iii)**, that are listed on **Schedule 3(a)(iii)**, in form suitable for recordation, releasing or terminating the Broad Street Mortgages; the Broad Street UCC Fixture Filings and all UCC-1 filings by any of the MBNF Parties against any of the Broad Street PropCos and/or their assets securing the Broad Street Notes or any other obligation, including, but not limited to, any MBNF Intercompany Claims, as applicable. For the avoidance of doubt, the PAHS Loan Documents and related liens shall be modified consistent with this MOU, but shall not be released.

iv.    Immediately thereafter, all MBNF Intercompany Claims, to the extent not released or satisfied hereunder, shall be deemed released and satisfied on the MOU Implementation Date. For the avoidance of doubt, the PAHS Loan Documents and related liens shall be modified consistent with this MOU, but shall not be released.

v.    Immediately thereafter, (a) PAHH shall assume the Broad Street Notes, the Front Street Note and any other obligations of any of the Broad Street PropCos to any of the other MBNF Parties and their Representatives to the extent not satisfied or released, and (b) the Third Party Escrow Agent shall release to PAHH, the Broad Street PropCos and the other parties party thereto a fully executed original of the assignment and assumption agreement attached hereto as **Exhibit 3(a)(v)**. Such assignment shall include a release of the obligation of the applicable Broad Street PropCo(s) for such obligations.

vi.    (a) Immediately thereafter, and pursuant to the Approval Order (but subject to Section 14 of this MOU), the assets of the Broad Street PropCos set forth on **Schedule 3(a)(vi)** hereto, including without limitation, the Real Estate and all rights of the Broad Street PropCos with respect to   contracts, deposits, pre-payments, overpayments,

19

rebates, refunds and the like (collectively with the Real Estate, the "**Assets**"), shall be substantively consolidated with the assets of CCH as follows.  The Approval Order shall provide, among other things, that CCH shall hold all equitable and other interests in the Real Estate, subject to all liens (other than the liens to be satisfied and/or released pursuant to Sections 3(a)(ii) and 3(a)(iii) hereof), agreements/encumbrances running with the land (including, for the avoidance of doubt, the REAs and Unity of Use Agreements), and all other assets of the Broad Street PropCos listed on **Schedule 3(a)(vi)** hereto, such that, subject to **Schedule 3(b)** hereof,  CCH shall have the sole and exclusive authority to use, possess, lease, encumber, sell, transfer, assign, convey or otherwise dispose of the Real Estate and/or such other assets and, shall be entitled to any proceeds of the Real Estate and such other assets, and to execute in the name, and on behalf of, one or more of the Broad Street PropCos any bills of sale, deeds, instruments, certificates and other documents effectuating any such use, lease, sale, transfer, assignment, conveyance and/or other disposition, subject to the terms of this MOU, further order of the Bankruptcy Court or the Plan, as applicable.  To facilitate the exercise by CCH, subject to **Schedule 3(b)** hereof, of the foregoing rights, and without intention of limitation thereof, each of the Broad Street PropCos shall, prior to the MOU Implementation Date, deliver to the Third Party Escrow Agent, for release to CCH on the MOU Implementation Date, a duly executed irrevocable limited power of attorney in the applicable form attached hereto as **Exhibit 3(a)(vi)** (each, a "**Power of Attorney**").

(b) CCH acknowledges and agrees that any exercise of its powers, rights and/or privileges granted pursuant to any Power of Attorney or, with respect to the Assets, the Approval Order, shall be, and shall be deemed to be CCH's sole Financial Liability and without the incurrence of any Financial Liability by any Broad Street PropCo to any third party or otherwise; <u>provided</u> however, that each Broad Street PropCo shall fulfill all liabilities, obligations and responsibilities limited solely to performance by each Broad Street PropCo that does not involve or cause any such Broad Street PropCo to incur any Financial Liability. Each Power of Attorney and any exercise thereof shall be subject to this MOU (including any Schedules and Exhibits hereto).  For the avoidance of doubt, CCH shall not (i) become liable for any obligation of PAHH or any of the Broad Street PropCos to any of the other MBNF Parties or any of their Representatives and (ii) acquire any claim held by any of the Broad Street PropCos against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any of the Broad Street Lenders.

vii.     Concurrently with Section 3(a)(vi), the liabilities relating to the preservation and maintenance of the Real Estate and such other liabilities, solely as described on **Schedule 3(a)(vii)** hereto shall be

substantively consolidated with the postpetition liabilities of CCH such that the liabilities set forth on **Schedule 3(a)(vii)** hereto shall become payable by CCH if past due, due or otherwise payable as incurred in the ordinary course.

viii. Immediately thereafter, (a) CCH shall assume any and all obligations of the Broad Street PropCos under the PAHS Loan pursuant to the assignment, assumption and novation agreement attached hereto as **Exhibit 3(a)(viii)(A)**, (b) the Third Party Escrow Agent shall release such agreement to CCH, PAHS and the Broad Street PropCos, (c) the Broad Street PropCos and PAHH shall be fully and unconditionally released from any and all obligations relating to or under the PAHS Loan, (d) the guaranty agreement made by PAHH in connection with the PAHS Loan shall be terminated and be of no further force and effect, (e) the intercreditor and subordination agreement executed in connection therewith shall be terminated and be of no further force or effect and (f) any and all recourse provisions contained in the PAHS Loan Documents shall be of no further force or effect. Upon the occurrence of the MOU Implementation Date, (I) the PAHS Loan Documents shall be amended and novated in a manner consistent with this MOU and attached hereto as **Exhibit 3(a)(viii)(B)** (the "**Amended PAHS Loan Documents**"), and (II) the Third Party Escrow Agent shall release to the Debtors for filing in the appropriate land records in Philadelphia, Pennsylvania, the Office of the Secretary of State of Pennsylvania, the Office of the Secretary of the State of Delaware, or otherwise, fully executed originals of the Amended PAHS Loan Documents, that are listed on **Schedule 3(a)(viii)**, in form suitable for recordation or filing, amending the mortgages and UCC-1 financing statements, recorded or filed in connection with the PAHS Loan in a manner consistent with this MOU and terminating the subordination agreement recorded in the land records in Philadelphia in connection with the PAHS Loan.

ix. Immediately thereafter, (a) to the extent that the HSRE ROFO Agreement, or any portion thereof, has not terminated, the HSRE ROFO Agreement shall be deemed terminated in its entirety and be of no further force or effect, and (b) the HSRE Warrant shall be deemed cancelled, released, extinguished, and discharged. For the avoidance of doubt, on the MOU Implementation Date, all of the MBNF Parties' and HSRE Entities' rights and privileges granted by the one to the other and their respective Affiliates and/or Representatives, whether under the HSRE Documents (excluding any of the rights and privileges of any Person under the Limited Liability Company Agreement of HSRE-PAHH I, LLC, dated as of August 31, 2017, between HSRE-PAHH IA, LLC and PAHH, all of which shall be deemed cancelled, released, extinguished, and discharged upon HSRE JV's dissolution which shall occur in accordance with Section 4(a)), the Limited Liability Company

Agreement of PAHH dated as of August 31, 2017, or otherwise, are cancelled, released, extinguished, and discharged, and if requested by the MBNF Parties after the MOU Implementation Date, the HSRE Entities shall confirm in writing that the HSRE Warrant has been cancelled, released, extinguished and discharged; provided, however, nothing herein shall be deemed to modify or impair Sections 3(b), 8 or 9 of this MOU.

x.   Immediately thereafter, pursuant to the merger agreements attached hereto as **Exhibit 3(a)(x)**, (a) each of the Front Street Entities shall be merged with and into PAHH, with PAHH as the surviving entity of each such merger, (b) the Third Party Escrow Agent shall release to counsel to the MBNF Parties the certificates of merger, forms of which are attached to the merger agreements as exhibits, (c) counsel to the MBNF Parties shall file the certificates of merger with the Secretary of State of the State of Delaware on a same day basis, and (d) the Third Party Escrow Agent shall release to PAHH and the Front Street Entities such merger agreements.

xi.   Immediately thereafter, (a) all of the RRG MOU Implementation Date Actions shall occur, and (b) the Third Party Escrow Agent shall release to the Debtors the fully executed original resignations attached hereto as **Exhibit 2(d)**.

xii.   Immediately thereafter, (a) the New MBNF Organizational Documents shall become effective and (b) the Third Party Escrow Agent shall release such New MBNF Organizational Documents to MBNF, AAHS, PAHH, and the Broad Street PropCos.

xiii.   Immediately thereafter, (a) MBNF Equity Buyer LLC shall acquire, from the members of MBNF, the membership interests of MBNF, pursuant to a limited liability company interest purchase agreement attached hereto as **Exhibit 3(a)(xiii)** and (b) the Third Party Escrow Agent shall release such limited liability company interest purchase agreement to MBNF Equity Buyer LLC and the members of MBNF.

xiv.   Immediately thereafter and pursuant to the assignment, assumption and novation agreement attached hereto as **Exhibit 3(a)(xiv)**, (a) the obligations of PAHH under the HSRE-PAHH Note shall be assigned by PAHH to PAHS and assumed by PAHS, and (b) the Third Party Escrow Agent shall release such assignment agreement to PAHS, PAHH and HSREP VI Holding, LLC. Effective upon PAHS' assumption of the obligations under the HSRE-PAHH Note on the MOU Implementation Date, PAHH, pursuant to and subject to the terms of such assignment agreement, shall be deemed released from any and all obligations under the HSRE-PAHH Note, and the HSRE-PAHH Note Pledge Agreement shall be terminated without any further action by any party and shall be

of no further force and effect, and the Third Party Escrow Agent shall release to the Debtors for filing with the Secretary of State of the State of Delaware termination statements to terminate the financing statements filed in connection with the HSRE-PAHH Note Pledge Agreement. Notwithstanding the foregoing assumption by PAHS of the obligations under the HSRE-PAHH Note, from and after the effective time of the assumption, the HSRE-PAHH Note shall be payable and satisfied solely from and be recourse solely to the share of any net proceeds of the Sale of the Real Estate received by or on behalf of the HSRE Entities pursuant to the allocation formula, as set forth in **Schedule 3(b)** hereto. Nothing herein shall convey or shall be deemed to convey to PAHS any interest in the escrow holding the Escrowed Funds, the Escrowed Funds or the release of the Escrowed Funds.

xv.    Immediately thereafter, (a) MBNF Equity Buyer LLC shall acquire, from AAHS, the membership interests of PAHH, pursuant to a limited liability company interest purchase agreement attached hereto as **Exhibit 3(a)(xv)**, and (b) the Third Party Escrow Agent shall release such purchase agreement to MBNF Equity Buyer LLC and AAHS. For the avoidance of doubt, after the consummation of such acquisition, the HSRE JV Interests shall remain an asset of PAHH, with PAHH remaining as a direct subsidiary of MBNF Equity Buyer LLC, and MBNF Equity Buyer LLC shall be bound by the restrictions on transfer of the HSRE JV Interests set forth in Section 4(a) below.

xvi.   Immediately following the transaction described in Section 3(a)(xv), the Third Party Escrow Agent shall release to the Debtors, and the Debtors shall immediately file:

a.   PAHH's IRS Form 8832, in the form of Exhibit A to **Exhibit 3(a)(xv)** to this MOU, the form and substance of which must be reasonably acceptable to PAHS, electing to be classified as an association taxable as a corporation for U.S. federal income tax purposes, with an effective date of such election on the day immediately following the date of filing. This Form 8832 shall stipulate that the election shall be effective immediately prior to the election by PAHS described in Section 3(a)(xvi)(b). Immediately following such filing, the Debtors shall provide a true and correct copy of such Form 8832 and proof of filing to PAHH, by email in accordance with Section 43 herein; and

b.   PAHS' IRS Form 8832, in the form of Exhibit A to **Exhibit 3(a)(xvii)** to this MOU, the form and substance of which must be reasonably acceptable to PAHH, electing to be classified as an association taxable as a corporation for U.S. federal income tax purposes, with an effective date of such election on the day immediately following the date of filing. This Form 8832 shall

stipulate that the election shall be effective immediately following the election made by PAHH described in Section 3(a)(xvi)(a). Immediately following such filing, the Debtors shall provide a true and correct copy of such Form 8832 and proof of filing to PAHH, by email in accordance with Section 43 herein.

xvii. On the effective date of the election by PAHS set forth on Form 8832 described in Section 3(a)(xvi)(b), (a) PAHH shall transfer its membership interest in PAHS to PAHS Equity Buyer, pursuant to a limited liability company interest purchase agreement attached hereto as **Exhibit 3(a)(xvii)**; and (b) the Third Party Escrow Agent shall release such purchase agreement to PAHH and PAHS Equity Buyer.

xviii. Concurrently with Section 3(a)(xvii), (a) the New PAHS Organizational Documents shall become effective, and (b) the Third Party Escrow Agent shall release such New PAHS Organizational Documents to PAHS.

xix. On the business day immediately following the MOU Implementation Date, but in no event prior to the completion of the actions described in Section 3(a)(xvii) of this MOU, MBNF shall assign all assets of AAHS for the benefit of its creditors.

xx. On the business day immediately following the MOU Implementation Date, but in no event prior to the completion of the actions described in Sections 3(a)(xvii) and 3(a)(xix) of this MOU, MBNF Equity Buyer LLC shall assign all assets of MBNF for the benefit of its creditors.

b. **The Sale.** The Real Estate shall be managed, marketed and sold in accordance with **Schedule 3(b)** hereto. The proceeds of the sale ("**Sale**") of the Real Estate shall be paid and/or distributed in the manner as set forth in **Schedule 3(b)**. For the avoidance of any doubt, none of the MBNF Parties nor the Broad Street Lenders shall participate in the management, marketing, sale or conveyance of the Real Estate except as may be required in Section 4(a)(ii) and/or Section 28 hereof, and none shall receive proceeds from the Sale. Notwithstanding anything herein to the contrary, the parties intend that for U.S. federal and state and local income tax purposes, the payments and/or distribution of the proceeds of the Sale pursuant to this Section 3(b) made to Tenet, HSRE Entities and the creditors of the Debtors under the Plan shall be with respect to the applicable creditors' claims, and no transaction preceding such payment and/or distribution shall be deemed to be treated as a payment and/or distribution with respect to such creditors' claims. Any proceeds of Sale payable to the HSRE Entities shall be paid to the HSRE Entities' account at Capital One, N.A., for application in accordance with the CONA Documents.

c. **As Is, Where Is.** The transactions contemplated by this MOU have been negotiated by the MBNF Parties and Non-MBNF Parties. This MOU reflects the mutual

agreement of all Parties.  The Debtors have had the right and opportunity to conduct their own independent examination of the Real Estate and all other Assets, and none of the Non-MBNF Parties has relied upon or will rely upon, either directly or indirectly, any representation or warranty of any MBNF Released Party.

Each MBNF Released Party, in each of its capacities (including as shareholder, owner, director, officer, or otherwise), specifically disclaims any representation, warranty or assurance whatsoever to any of the Non-MBNF Parties and their Representatives, and no warranties or representations of any kind or character, either express or implied, are made by any MBNF Released Party or any other Person or relied upon by any of the Non-MBNF Parties or their Representatives with respect to the status of title to, or the maintenance, repair, condition, design or marketability of, the Assets, or any portion thereof, including but not limited to:  (a) any implied or express warranty of habitability or fitness for habitation; (b) any implied or express warranty of merchantability; (c) any implied or express warranty of fitness in whole or in part for any or a particular purpose; (d) any rights under appropriate statutes to claim diminution of consideration; (e) any claim for damages because of defects, whether known or unknown, with respect to the Real Estate or personal property; (f) the financial condition or prospects of the Assets; and (g) the compliance or lack thereof of the Assets and any improvements with Governmental Authority regulations, including, without limitation, access laws or environmental laws now existing or hereafter enacted or promulgated.

Each of the Non-MBNF Parties, MBNF Equity Buyer LLC, MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation, PAHS Equity Buyer and PAHS Holdco LLC understands and acknowledges that it is the express intention of the Parties that the Assets will be consolidated with and determined to be property of CCH, with the underlying Real Estate in its present condition and state of repair, "as is" and "where is," subject to all faults and noncompliance with laws, as the case may be, and subject to the REAs and Unity of Use Agreements. Each of the Non-MBNF Parties (i) represents for itself that it is relying solely on its own expertise and that of its Representatives, (ii) has been given a sufficient opportunity to conduct and has conducted or determined not to conduct such inspections, investigations or other independent examinations of the Assets and related matters as each of them deems necessary, including but not limited to the physical and environmental conditions thereof and suitability for Non-MBNF Parties' purposes and will rely solely upon same, and (iii) will, upon the MOU Implementation Date, together with the other Non-MBNF Parties, assume the risk that adverse matters including, but not limited to, adverse physical and environmental conditions, may not have been revealed by the Non-MBNF Parties' inspections and investigations (it being understood that the MBNF Entities have delivered the notices required in accordance with Section 3(d)(iv) of this MOU). Each of the Non-MBNF Parties, MBNF Equity Buyer LLC, MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation, PAHS Equity Buyer and PAHS Holdco LLC acknowledges and agrees that, upon the MOU Implementation Date, the Real Estate and the other Assets will be consolidated with and determined to be property of CCH, with the underlying Real Estate in its present

39895352

condition and state of repair, "as is" and "where is," with all faults, liabilities, defects and other adverse matters that may be associated with the Real Estate.

Each of the Non-MBNF Parties acknowledges that no express or implied representation or warranty is made by any MBNF Released Party as to the accuracy or completeness of any materials provided to the Non-MBNF Parties during the Non-MBNF Parties' due diligence investigation of the Assets, including those materials provided in any file transfer links to which the Non-MBNF Parties were granted access by any MBNF Released Party, and no MBNF Released Party shall have any liability to any of the Non-MBNF Parties relating to or arising from any errors in or omissions from any such materials or any other fact or condition which may affect the Assets, including the physical condition, value, economics of operation or income potential of the Assets.

Each of the Non-MBNF Parties, MBNF Equity Buyer LLC, MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation, PAHS Equity Buyer and PAHS Holdco LLC further acknowledges and agrees that there are no oral agreements, warranties or representations collateral to or affecting the Assets by any MBNF Released Party or any third party. Each of the Non-MBNF Parties, MBNF Equity Buyer LLC,  MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation, PAHS Equity Buyer and PAHS Holdco LLC, with their counsel, has fully reviewed the disclaimers, waivers and releases set forth in this MOU and understands their significance and agrees that the disclaimers, waivers, releases and other agreements set forth herein are an integral part of this MOU, and that the MBNF Parties would not have agreed to enter into this MOU without the disclaimers, waivers, releases and other agreements set forth in or implied by this MOU.

The terms and conditions of this Section 3(c) will expressly survive the MOU Implementation Date.

d. **MBNF Entities Representation**.  Notwithstanding the disclaimers in Section 3(c) to the contrary, the MBNF Entities represent and warrant to the Non-MBNF Parties the following:

    i.  Certain of the MBNF Entities provided the following documents to the Debtors:  (a) all material licenses, material permits, property management agreements, utility agreements (other than that certain Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC, which agreement is publicly available and was filed in the Chapter 11 Cases at Docket No. 2400-1, Exhibit E), supply agreements, broker agreements, insurance policies, floor plans, engineering reports and maintenance reports;  (b) all notices of current real estate tax assessments;  (c) all pending property tax appeal submissions;  (d) MAI appraisals of the Real Estate and the most recent broker opinion of value dated December 2021; (e) the most recent "Open Invoice List" prepared by NKF and provided to

26

the Debtors; and (f) the documents and information contained in the four (4) USB flash drives provided by Tenet to and now in the possession of the MBNF Parties, which contain the diligence materials from the January 2018 Transactions including the transfer of the Real Estate to the Broad Street PropCos and provided in substantially the same form as originally provided by Tenet to the MBNF Parties.

ii.     The MBNF Entities have provided consent for Newmark Southern Region, LLC d/b/a Newmark Knight Frank ("**NKF Broker**") to share access to or the contents of the data room established, prepared and/or maintained by NKF Broker related to the marketing of the Real Estate, and the MBNF Entities have requested that NKF Broker provide such access and/or deliver such data to the Debtors.

iii.    The MBNF Entities have instructed NKF in writing to (a) respond to all inquiries from the Debtors/Committee, Tenet and HSRE Entities, including, without limitation, regarding the marketing, management, maintenance, sale, zoning, real estate tax assessment, tax appeals, licensing, inspections, and insurance of the Real Estate and the Broad Street PropCos, (b) provide the Debtors, for distribution of copies to the Committee, Tenet and HSRE Entities, with all management reports prepared by NKF, and (c) facilitate meetings requested by the Debtors with any of the vendors that are providing services at or for the benefit of the Real Estate.

iv.     The MBNF Entities have (i) caused Joel Freedman, Svetlana Attestatova, William Brinkman, Kyle Schmidt, and Grace Muranaga to search their respective physical files and ".pldn" email mailboxes, in each case, from March 21, 2020 to the third business day prior to the MOU Implementation Date, using the Outlook search function for emails from the senders with the .gov email extension as follows: from:".gov"; and (ii) reviewed all emails sent from Grace Muranaga to Svetlana Attestatova from March 21, 2020 to the third business day prior to the MOU Implementation Date, in each case, in order to locate all written notices from Governmental Authorities of any material uncorrected violation of law, ordinance or regulation, relating to the Real Estate and any responses thereto and shall have delivered any such written notices to the Debtors.  The MBNF Entities shall deliver to the Debtors the documents required by this Section 3(d)(iv) on no less than a weekly basis commencing on the Execution Date and continuing until  the MOU Implementation Date.

v.      The MBNF Entities have obtained from Cogency Global Inc. a record of all legal actions served on the Broad Street PropCos and delivered such report to the Debtors.

4. **Other Matters**.

a. **MBNF Liquidator LLC.**  MBNF Liquidator LLC shall cause its subsidiaries, including MBNF Parent 1 Corporation, MBNF Parent 2 Corporation, MBNF Equity Buyer LLC, MBNF, PAHH, and Broad Street PropCos, to comply with all obligations under this MOU from and after the MOU Implementation Date. MBNF Liquidator LLC shall: (i) not amend the New MBNF Organizational Documents; (ii) promptly execute, and cause the Broad Street PropCos to execute, any and all documents necessary to effectuate the Sale, as may be reasonably requested by the Debtors, notwithstanding anything to the contrary contained in any Power of Attorney; provided that CCH acknowledges and agrees that any Financial Liability incurred or resulting from any action taken pursuant to this Section 4(a)(ii) shall be, and shall be deemed to be, CCH's sole Financial Liability and without the incurrence of any Financial Liability by any Broad Street PropCo or MBNF Liquidator LLC to any third party or otherwise; provided, however, that each Broad Street PropCo and MBNF Liquidator LLC shall fulfill all liabilities, obligations and responsibilities limited solely to performance by each Broad Street PropCo and MBNF Liquidator LLC that does not involve or cause any such Broad Street PropCo or MBNF Liquidator LLC to incur any Financial Liability; (iii) not cause the Broad Street PropCos to incur any liabilities other than consistent with ordinary course liabilities for an entity that is being wound up and liquidated; (iv) maintain the Broad Street PropCos' corporate existence in good standing until closing of the Sale; provided that the Debtors shall pay MBNF Liquidator LLC, within ten (10) business days subsequent to any written request, any third party documented out-of-pocket reasonable costs and fees related thereto that were requested by MBNF Liquidator LLC in advance in writing and pre-approved in writing by the Debtors; and if the Debtors fail to approve or to pay MBNF Liquidator LLC any such costs or fees, MBNF Liquidator LLC shall not be required to maintain the Broad Street PropCos' corporate existence in good standing; (v) not transfer, abandon, or assign any of the HSRE JV Interests, which HSRE JV Interests shall continue to be held by PAHH, until the earlier of: (x) notice of dissolution of HSRE JV and (y) three months after the later to occur of (I) the final distribution to unsecured creditors in the Chapter 11 Cases and (II) the final distribution of proceeds of the Sale, so long as the last day of such three month period occurs within the same tax year as the distribution described in clause (I) or (II), and if it does not, then the last day of the period shorter than three months so long as the last day of such shorter period occurs within the same tax year as the distribution described in clause (I) or (II); (vi) not dissolve, liquidate, or assign assets of PAHH until the earlier of: (x) notice of dissolution of HSRE JV and (y) three months after the later to occur of (I) the final distribution to unsecured creditors in the Chapter 11 Cases and (II) the final distribution of proceeds of the Sale, so long as the last day of such three month period occurs within the same tax year as the distribution described in clause (I) or (II), and if it does not, then the last day of the period shorter than three months so long as the last day of such shorter period occurs within the same tax year as the distribution described in clause (I) or (II); and (vii) cause MBNF Parent 1 Corporation, MBNF Parent 2 Corporation, PAHH, and MBNF Equity Buyer LLC to comply with each of the requirements and restrictions set forth in the preceding

28

clauses (i) through (vi).  Unless required by applicable law or consented to in writing by Joel Freedman, MBNF Liquidator LLC and its subsidiaries shall not amend any tax return, make any tax election with retroactive effect, utilize any voluntary disclosure program, or take any other action, in each case, in respect of MBNF and its subsidiaries that would reasonably be expected to increase the tax liability of the beneficial owners of MBNF for any tax period (or a portion thereof) ending on or before the date on which the transaction described in Section 3(a)(xiii) is consummated.  Unless required by applicable law or consented to in writing by the Debtors, which consent shall not be unreasonably withheld, conditioned or delayed, neither Joel Freedman nor MBNF Liquidator LLC nor any of its subsidiaries shall amend any tax return, make any tax election with retroactive effect, utilize any voluntary disclosure program, or take any other action (unless expressly provided for by the terms of this MOU (including any Schedules and Exhibits hereto)), in each case with respect to MBNF and its subsidiaries that would reasonably be expected to increase or adversely affect in a material amount any tax liability of the Debtors for any tax period (or a portion thereof) beginning after the date on which the transaction described in Section 3(a)(xiii) is consummated. Notwithstanding the foregoing or any other provision of this MOU (including any Schedules and/or Exhibits hereto, but excluding Section 6 of each of the Equity Purchase Agreements), each MBNF Party, MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation and MBNF Equity Buyer LLC shall retain all rights to contest, object to, or take any other action they deem necessary and/or appropriate with respect to any claim asserted against or with respect to any MBNF Party, MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation or MBNF Equity Buyer LLC in any Governmental Tax Claim Proceeding; provided, however, that no MBNF Party, MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation or MBNF Equity Buyer LLC shall support, encourage, appear, intervene in or participate in, any Governmental Tax Claim Proceeding solely against or solely with respect to any of the Debtors, so long as the Debtors' actions therein are limited to (i) the assertion of their status as a disregarded entity, (ii) an identification of solely MBNF as a regarded entity by way of defense, and/or (iii) objecting to the amount asserted and/or priority of such amount in such Governmental Tax Claim Proceeding.

b.  **PAHS Holdco LLC.** PAHS Holdco LLC shall cause its subsidiaries, including PAHS Equity Buyer, PAHS and its subsidiaries, to comply with all obligations under this MOU from and after the MOU Implementation Date.  PAHS Holdco LLC agrees that it shall not amend, and shall cause PAHS Equity Buyer not to amend, the New PAHS Organizational Documents in a manner inconsistent with this MOU.  Unless required by applicable law or consented to in writing by Joel Freedman, which consent shall not be unreasonably withheld, conditioned or delayed, PAHS Holdco LLC and its subsidiaries shall not amend any tax return, make any tax election with retroactive effect, utilize any voluntary disclosure program, or take any other action (unless expressly provided for by the terms of this MOU (including any Schedules and Exhibits hereto)), in each case, in respect of PAHS and its subsidiaries that would reasonably be expected to increase or adversely affect in a material amount the tax liability of the beneficial owners of

PAHS for any tax period (or a portion thereof) ending on or before the date on which the transaction described in Section 3(a)(xvii) is consummated. Unless required by applicable law, neither any of the Debtors nor PAHS Holdco LLC nor any of its subsidiaries shall amend any tax return, make any tax election with retroactive effect, utilize any voluntary disclosure program, or take any other action, in each case with respect to the Debtors and their subsidiaries that would reasonably be expected to increase or adversely affect in a material amount any tax liability of MBNF and its subsidiaries for any tax period (or a portion thereof) beginning after the date on which the transaction described in Section 3(a)(xvii) is consummated. Notwithstanding the foregoing or any other provision of this MOU (including any Schedules and/or Exhibits hereto, but excluding Section 6 of each of the Equity Purchase Agreements), each Debtor shall retain all rights to contest, object to, or take any other action they deem necessary and/or appropriate with respect to any claim asserted against or with respect to any Debtor in any Governmental Tax Claim Proceeding; provided, however, that no Debtor shall support, encourage, appear, intervene in or participate in, any Governmental Tax Claim Proceeding solely against or solely with respect to any of the MBNF Parties, MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation or MBNF Equity Buyer LLC.

c.  **Master Lease Guaranties**. Upon the filing of the MOU Release Notice, the Master Lease Guaranties shall be deemed terminated, discharged, and deemed satisfied by allowance of the HSRE Allowed Lease Damages Claim as set forth in Section 8.

d.  **REA Demands**. Any outstanding demands under the REAs between the MBNF Parties and HSRE Entities shall be resolved as follows: the HSRE Entities shall, promptly upon receipt of the Escrowed Funds, cause to be paid $143,000 to the account of CCH in accordance with the wire instructions to be provided by CCH in full satisfaction of any claims by any of the Debtors or any of the MBNF Parties to pay or reimburse any of the MBNF Parties or any of the Debtors, including CCH, for water invoices or liens on or related to the Real Estate. When such payment has been made, all outstanding demands under the REAs between the MBNF Parties (and any of the Debtors, including CCH, as successor-in-interest to any of the MBNF Parties' interest in the Real Estate) and the HSRE Entities and the asserted obligations of any party under the Master Lease Guaranties shall be deemed satisfied, extinguished and discharged. The MBNF Parties (and any of the Debtors, including CCH, as successor-in-interest to any of the MBNF Parties' interest in the Real Estate) and the HSRE Entities acknowledge and agree that, upon payment of the foregoing amount, any other amounts that have been invoiced or in any other way asserted or alleged to be owing by any of the HSRE Entities under the REAs shall be considered no longer owing, due or payable, and the MBNF Parties (and any of the Debtors, including CCH, as successor-in-interest to any of the MBNF Parties' interest in the Real Estate) and the HSRE Entities shall agree not to invoice, assert or allege any such amounts in the future and that any and all disputes related to such amounts shall be waived. For the avoidance of doubt, this subsection or the payments described herein shall not have any effect on the obligations of any

purchaser of the Real Estate or any other parcels described in the REAs and no such purchaser is a third-party beneficiary of this MOU.

e. **Mediation Costs.**  Promptly upon receipt of the Escrowed Funds, HSRE Entities shall cause (i) to be paid reimbursement to each of the Debtors and the MBNF Parties for one third of the fees and costs of the Honorable Kevin J. Carey (ret.) paid by the Debtors and the MBNF Parties for mediation services rendered on or after July 28, 2021 of which reimbursement amount one-half shall be paid to the Debtors and one-half shall be paid to the MBNF Parties; and (ii) to be paid to the Honorable Kevin J. Carey (ret.) one third of any unpaid fees and costs of the Honorable Kevin J. Carey (ret.), including for time and expenses billing following the execution of this MOU payable in connection with the mediation (and the MBNF Parties may direct HSRE to pay the reimbursement amount to which they are entitled to pursuant to clause (i) to the Honorable Kevin J. Carey (ret.) for application to any unpaid fees and costs of the Honorable Kevin J. Carey for which the MBNF Parties are responsible).

5. **Debtor Management/Governance.**  On the MOU Implementation Date, the resignation of Joel Freedman as an officer of each of the Debtors and the Debtors' Subsidiaries and as a manager of PAHS shall be effective and the Third Party Escrow Agent shall release to the Debtors the fully executed original resignations attached hereto as **Exhibit 5**.

6. **Tenet Payments.**  On the MOU Implementation Date and in accordance with Section 3, Tenet shall make the following cash payments: (i) a payment in such amount (as determined by the Pension Fund and agreed to by the Debtors, the MBNF Entities, the HSRE Entities, the CONA Parties, Tenet, and the Committee) to the Third Party Escrow Agent for immediate subsequent payment, on the MOU Implementation Date and following receipt from Tenet, to the Pension Fund in full payment of amounts owed to the Pension Fund under the Pension Settlement Agreement as of the MOU Implementation Date (the "**Withdrawal Liability Settlement Payment**"); it being understood that in furtherance of this MOU, Tenet (a) made a payment to the Pension Fund in the amount of $580,617 on or about January 15, 2022, (b) made a payment in the amount of $894,309 to the Pension Fund on or about April 15, 2022, and (c) made a payment in the amount of $894,309 to the Pension Fund on or about July 15, 2022 (clauses (a), (b) and (c), collectively, the "**Prior Pension Payments**"); (ii) the Tenet Paladin Settlement Payment, and (iii) the Tenet Net Settlement Payment.  Immediately following receipt of the payments in Section 6(i), (ii) and (iii) hereof, the Third Party Escrow Agent shall, on the MOU Implementation Date, disburse such amounts in accordance with the MBNF Direction Letter.  For the avoidance of doubt, and notwithstanding anything to the contrary in this MOU, the total sum of the Withdrawal Liability Settlement Payment, the Prior Pension Payments, the Tenet Paladin Settlement Payment and the Tenet Net Settlement Payment provided in this Section 6 shall not exceed $23,500,000.

7. **Tenet Claim.**  Upon the MOU Implementation Date, but subject to the completion of the actions set forth in Sections 3(a)(i) through 3(a)(vi) of this MOU, Tenet shall be deemed to have a single allowed general unsecured non-priority claim against the Debtors in the amount of $30,000,000 (the "**Tenet Allowed Claim**"), in addition to the Tenet Debtor

Claims. In the absence of the substantive consolidation of the Debtors pursuant to the Plan or otherwise, the Tenet Allowed Claim shall be treated for purposes of allowance and distribution under the Plan as if the Debtors were substantively consolidated such that Tenet shall receive an aggregate distribution from all of the Debtors in an amount equal to the amount it would have received if the Debtors' cases were substantively consolidated.

8. **HSRE Claim.** Upon the filing of the MOU Release Notice, but subject to the Debtors' receipt of payment hereunder pursuant to Section 4(d) and 4(e) of this MOU, the HSRE Entities shall be deemed to have a single allowed general unsecured non-priority claim against the Debtors in the amount of $30,000,000 (the "**HSRE Allowed Lease Damages Claim**"). The HSRE Entities may allocate the HSRE Allowed Lease Damages Claim (and the proceeds thereof) among them in their sole discretion. Capital One, N.A.'s first-priority security interest in the HSRE Allowed Lease Damages Claim (and the proceeds thereof) shall be preserved notwithstanding this MOU or any allocation by the HSRE Entities thereof. In the absence of the substantive consolidation of the Debtors pursuant to the Plan or otherwise, the HSRE Allowed Lease Damages Claim shall be treated for purposes of allowance and distribution under the Plan as if the Debtors were substantively consolidated such that HSRE Entities shall receive an aggregate distribution from all of the Debtors in an amount equal to the amount they would have received if the Debtors' cases were substantively consolidated.

9. **Escrowed Funds.**

   a. On the MOU Implementation Date, but prior to the implementation step set forth in Section 3(a)(xiii), the Third Party Escrow Agent shall release to Land Services USA, Inc. the signed joint authorization of PAHH and HSRE JV, consented to by Capital One, N.A., attached hereto as **Exhibit 9**, directing the release of the Escrowed Funds to an account at Capital One, N.A., in its capacity as administrative agent, on behalf of HSRE JV, designated by Capital One, N.A. and the HSRE Entities.

   b. PAHH and HSRE JV shall promptly take any and all other actions as may be reasonably necessary to obtain the release of the Escrowed Funds and their payment to Capital One, N.A. For clarity, Capital One, N.A. has a first-priority security interest in the Escrowed Funds under the CONA Documents, which security interest remains notwithstanding this MOU. For the avoidance of doubt, the Escrowed Funds shall not be applied to either the obligations under the HSRE-PAHH Note or to the HSRE Allowed Lease Damages Claim.

10. **Debtors' Settlement Payment.** On the MOU Implementation Date and in accordance with Section 3, the Debtors shall make the Debtor Settlement Payment.

11. **Settlement Balancing Payment.** On the MOU Implementation Date and in accordance with Section 3, the Debtors shall make the Settlement Balancing Payment.

12. **ASIC Bond.** On the MOU Implementation Date, (i) upon receipt by the Pension Fund of the Withdrawal Liability Settlement Payment pursuant to the Pension Settlement

Agreement, the MBNF Parties shall notify the Pension Fund of the payment and its obligation to send a notice to ASIC's counsel in the form of Exhibit D to the Pension Settlement Agreement, along with the original ASIC Bond marked by the Pension Fund as "cancelled"; and (ii) the Third Party Escrow Agent shall release to ASIC the signed joint authorization of PAHH, PAHS, St. Christopher's Healthcare, LLC, CCH, and PAMA attached hereto as **Exhibit 12**, authorizing and directing ASIC to release the cash collateral posted in connection with the ASIC Bond as follows (net of reimbursement of legal costs and fees to ASIC consented to by the Debtors and PAHH): (i) 30% to such Person as PAHH may in writing direct and (ii) 70% to the Debtors. The Debtors and PAHH shall promptly take any and all other actions as may be commercially reasonable to obtain the release of the ASIC Bond and cash collateral posted in support thereof consistent with the foregoing. The prorated refund of the ASIC Bond premium paid on January 11, 2022, when received from ASIC upon cancellation of the ASIC Bond shall be split evenly between the Debtors and the MBNF Parties, and the Debtors shall reimburse the MBNF Parties the amount paid by the MBNF Parties for renewal of the ASIC Bond on January 11, 2022, net of the MBNF Parties' share of the ASIC Bond premium refund, not later than the business day after the MBNF Parties' receipt of such refund share.

13. **Insurance Cooperation.** Each of the MBNF Parties shall, upon the Debtors' written request, promptly provide to the Debtors all information and cooperation the Debtors/Committee, Tenet, or HSRE Entities reasonably believe is necessary or desirable to either maintain existing or obtain new casualty and general liability insurance with respect to the Real Estate.

14. **Releases.** Subject to and upon the filing of the MOU Release Notice, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, and subject to Sections 14(j), 14(l), 14(m), 14(n) and the affirmative defenses set forth in Section 14(c):

   a. **Debtor Released Claims.** Each Debtor Releasing Party and each Committee Releasing Party hereby releases, remises, acquits, and forever discharges each MBNF Released Party, each Tenet Released Party, each Conifer Released Party, each CONA Released Party, and each HSRE Released Party from any and all claims (including, without limitation, all claims that may be brought derivatively in any Debtor's capacity as a creditor of any of the MBNF Parties, or otherwise), actions, demands, payments, proceedings, causes of action (including, without limitation, estate causes of action, any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith and/or based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), obligations, loss, duties, benefits, fees, costs, accounts, rights, suits, controversies, awards, judgments, agreements, promises, damages (including, but not limited to, punitive, multiple, exemplary, or extra-contractual damages), offsets, remedies, penalties, debts, liabilities, interest, expenses, attorneys' fees, or other relief of any kind or character, or rights to any of the foregoing, whether under the Bankruptcy Code or under State or other applicable law, whether known or unknown, contingent or not contingent, suspected or unsuspected, asserted or unasserted, unforeseen, unanticipated or latent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured,

unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertible directly or derivatively, at law, in equity, contractual or otherwise, that such Debtor Releasing Party or such Committee Releasing Party ever had, now has, may ever have, or may ever claim to have, against any such released party, arising from, relating to, or in any way connected with, any event, transaction, action or omission that occurred or failed to occur prior to the filing of the MOU Release Notice, including, without limitation, based on or relating to, or in any manner arising from, in whole or in part, the ASA, the MSA, the TSA, the HSRE Documents, the CONA Documents, the MidCap Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, any of the MBNF Parties' businesses and operations, the RRG Membership Interests, the Debtors' Chapter 11 Cases, the Real Estate, the January 2018 Transactions, the Ancillary Documents, the HSRE Complaint, the MBNF Complaint, any alleged conflict of interest, disclosure of confidential information in contravention of any applicable agreement or order, or ethical violation, any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications and/or writings made, allowed to be made, or alleged to have been made or allowed to have been made, by, or attributable to any MBNF Released Party, Tenet Released Party, Conifer Released Party, CONA Released Party or HSRE Released Party, prior to the filing of the MOU Release Notice, any derivative claims asserted or assertible on behalf of any of the Debtors or other Person, that the Debtors or the Committee would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, any of the Debtors or other Person, or any related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place prior to the filing of the MOU Release Notice, including any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence (collectively, the "**Debtor Released Claims**").

Without limitation of the foregoing, no Debtor Releasing Party or Committee Releasing Party shall assert, instigate, assist, or encourage any other Person to investigate or to assert, any action, any action in its capacity as a creditor, or any derivative action on behalf of any Person(s) in their capacity as a creditor or otherwise, against any MBNF Released Party (or challenge any liens or claims of any MBNF Released Party), Tenet Released Party, Conifer Released Party, CONA Released Party or HSRE Released Party, or derive any benefit therefrom, directly or indirectly on account of any Debtor Released Claims. In the event that any Debtor Releasing Party or any Committee Releasing Party pursues any Debtor Released Claims against any MBNF Released Party, Tenet Released Party, Conifer Released Party, CONA Released Party or HSRE Released Party at any time subsequent to the filing of the MOU Release Notice, the party pursuing such Debtor Released Claims shall fully indemnify, protect, and hold such MBNF Released Party, Tenet Released Party, Conifer Released Party, CONA Released Party or HSRE Released Party, as applicable, harmless from and against any and all rights, claims, debts, losses, demands, acts, contracts, agreements, liabilities, obligations, damages, penalties, costs, fees (including, without limitation, all attorney,

34

consultant and expert fees and costs), expenses, duties, breaches, actions, lawsuits, allegations, causes of action and/or suits of every nature, character and description, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, legal or equitable, allegedly or actually arising from, related to or incurred in connection with, directly or indirectly, the assertion of any and all such Debtor Released Claims, regardless of whether a judicial proceeding of any type or nature has been commenced.

b. **MBNF Released Claims.** Each MBNF Releasing Party hereby releases, remises, acquits, and forever discharges each Debtor Released Party, each Committee Released Party, each Tenet Released Party, each Conifer Released Party, each CONA Released Party, and each HSRE Released Party from any and all claims (including, without limitation, all claims that may be brought derivatively in any MBNF Party's capacity as a creditor of any of the Debtors, or otherwise), actions, demands, payments, proceedings, causes of action (including, without limitation, estate causes of action, any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith and/or based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), obligations, loss, duties, benefits, fees, costs, accounts, rights, suits, controversies, awards, judgments, agreements, promises, damages (including, but not limited to, punitive, multiple, exemplary, or extra-contractual damages), offsets, remedies, penalties, debts, liabilities, interest, expenses, attorneys' fees, or other relief of any kind or character, or rights to any of the foregoing, whether under the Bankruptcy Code or under State or other applicable law, whether known or unknown, contingent or not contingent, suspected or unsuspected, asserted or unasserted, unforeseen, unanticipated or latent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertible directly or derivatively, at law, in equity, contractual or otherwise, that such MBNF Releasing Party ever had, now has, may ever have, or may ever claim to have, against any such released party, arising from, relating to, or in any way connected with, any event, transaction, action or omission that occurred or failed to occur prior to the filing of the MOU Release Notice, including, without limitation, based on or relating to, or in any manner arising from, in whole or in part, the ASA, the MSA, the TSA, the HSRE Documents, the CONA Documents, the MidCap Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, any of the MBNF Parties' businesses and operations, the RRG Membership Interests, the Debtors' Chapter 11 Cases, the Real Estate, the January 2018 Transactions, the Ancillary Documents, the HSRE Complaint, the MBNF CONA Claims, the MBNF Complaint, the MBNF Tenet/Conifer Claims, the MBNF HSRE Claims, any alleged conflict of interest, disclosure of confidential information in contravention of any applicable agreement or order, or ethical violation, any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications and/or writings made, allowed to be made, or alleged to have been made or allowed to have been made, by, or attributable to any Debtor Released Party, Committee Released Party, Tenet Released Party, Conifer Released Party, CONA Released Party or HSRE

39895352

Released Party, prior to the filing of the MOU Release Notice, any derivative claims asserted or assertible on behalf of any of the MBNF Parties or other Person, that the MBNF Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, any of the MBNF Parties or other Person, or any related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place prior to the filing of the MOU Release Notice, including any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence (collectively, the "**MBNF Released Claims**").

Without limitation of the foregoing, no MBNF Releasing Party shall assert, instigate, assist, or encourage any other Person to investigate or to assert, any action, any action in its capacity as a creditor, or any derivative action on behalf of any Person(s) in their capacity as a creditor or otherwise, against any Debtor Released Party, Committee Released Party, Tenet Released Party, Conifer Released Party, CONA Released Party or HSRE Released Party, or derive any benefit therefrom, directly or indirectly on account of any MBNF Released Claims.  In the event that any MBNF Releasing Party pursues any MBNF Released Claims against any Debtor Released Party, Committee Released Party, Tenet Released Party, Conifer Released Party, CONA Released Party or HSRE Released Party at any time subsequent to the filing of the MOU Release Notice,  the party pursuing such MBNF Released Claims shall fully indemnify, protect, and hold such Debtor Released Party, Committee Released Party, Tenet Released Party, Conifer Released Party, CONA Released Party or HSRE Released Party, as applicable, harmless from and against any and all rights, claims, debts, losses, demands, acts, contracts, agreements, liabilities, obligations, damages, penalties, costs, fees (including, without limitation, all attorney, consultant and expert fees and costs), expenses, duties, breaches, actions, lawsuits, allegations, causes of action and/or suits of every nature, character and description, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, legal or equitable, allegedly or actually arising from, related to or incurred in connection with, directly or indirectly, the assertion of any and all such MBNF Released Claims, regardless of whether a judicial proceeding of any type or nature has been commenced.

c.  **Broad Street Released Claims.**  Each of the Broad Street Lenders and each of the Broad Street PropCos on behalf of themselves and their Representatives, hereby releases, remises, acquits, and forever discharges each other from any and all claims (including, without limitation, all claims that may be brought derivatively), actions, demands, payments, proceedings, causes of action (including, without limitation, estate causes of action, any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith and/or based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), obligations, loss, duties, benefits, fees, costs, accounts, rights, suits, controversies, awards, judgments, agreements, promises, damages (including, but not limited to, punitive, multiple, exemplary, or extra-contractual damages), offsets, remedies, penalties, debts, liabilities, interest,

expenses, attorneys' fees, or other relief of any kind or character, or rights to any of the foregoing, whether under the Bankruptcy Code or under State or other applicable law, whether known or unknown, contingent or not contingent, suspected or unsuspected, asserted or unasserted, unforeseen, unanticipated or latent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertible directly or derivatively, at law, in equity, contractual or otherwise, that each of the Broad Street Lenders and any of their Representatives or each of the Broad Street PropCos and any of their Representatives ever had, now has, may ever have, or may ever claim to have, against any such released party, arising from, relating to, or in any way connected with, any event, transaction, action or omission that occurred or failed to occur prior to the filing of the MOU Release Notice, including, without limitation, based on or relating to, or in any manner arising from, in whole or in part, the ASA, the MSA, the TSA, the HSRE Documents, the CONA Documents, the MidCap Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, any of the MBNF Parties' businesses and operations, the RRG Membership Interests, the Debtors' Chapter 11 Cases, the Real Estate, the January 2018 Transactions, the Ancillary Documents, the HSRE Complaint, the MBNF Complaint, the Broad Street Mortgages, the Broad Street Notes, the Broad Street UCC Fixture Filings, any alleged conflict of interest, disclosure of confidential information in contravention of any applicable agreement or order, or ethical violation, any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications and/or writings made, allowed to be made, or alleged to have been made or allowed to have been made, by, or attributable to any of the Broad Street Lenders, the Broad Street PropCos or their Representatives, prior to the filing of the MOU Release Notice, any derivative claims asserted or assertible on behalf of any of the Broad Street Lenders, the Broad Street PropCos or any of their Representatives, that such parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, any of the Broad Street Lenders, the Broad Street PropCos or other Person, or any related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place prior to the filing of the MOU Release Notice, including any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence (collectively, the "**MBNF/Broad Released Claims**").

Without limitation of the foregoing, none of the Broad Street Lenders, the Broad Street PropCos or their Representatives shall assert, instigate, assist, or encourage any other Person to investigate or to assert, any action, any action in its capacity as a creditor, or any derivative action on behalf of any Person(s) in their capacity as a creditor or otherwise, against each other (including challenging any liens or claims), or derive any benefit therefrom, directly or indirectly on account of any MBNF/Broad Released Claims.  In the event that any of the Broad Street Lenders, the Broad Street PropCos or their Representatives pursue any MBNF/Broad Released Claims against any of the Broad Street Lenders, the Broad Street PropCos

or their Representatives at any time subsequent to the filing of the MOU Release Notice,  the party pursuing such MBNF/Broad Released Claims shall fully indemnify, protect, and hold such pursued party harmless from and against any and all rights, claims, debts, losses, demands, acts, contracts, agreements, liabilities, obligations, damages, penalties, costs, fees (including, without limitation, all attorney, consultant and expert fees and costs), expenses, duties, breaches, actions, lawsuits, allegations, causes of action and/or suits of every nature, character and description, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, legal or equitable, allegedly or actually arising from, related to or incurred in connection with, directly or indirectly, the assertion of any and all such MBNF/Broad Released Claims, regardless of whether a judicial proceeding of any type or nature has been commenced.  Notwithstanding the foregoing, each of the Broad Street Lenders, the Broad Street PropCos and their Representatives retains the right to assert MBNF/Broad Released Claims as affirmative defenses including setoff against third parties (i.e., other than the Broad Street Lenders, the Broad Street PropCos and their Representatives) that assert claims against any of the Broad Street Lenders, the Broad Street PropCos or their Representatives arising from the same events, transactions or circumstances as the claims released by the Broad Street Lenders, the Broad Street PropCos and their Representatives in this MOU.

d. **Tenet Released Claims.**  Each Tenet Releasing Party hereby releases, remises, acquits, and forever discharges each Debtor Released Party, each Committee Released Party, each MBNF Released Party, each CONA Released Party, and each HSRE Released Party from any and all claims (including, without limitation, all claims that may be brought derivatively in Tenet's capacity as a creditor of any of the Debtors, the MBNF Parties or otherwise), actions, demands, payments, proceedings, causes of action (including, without limitation, estate causes of action, any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith and/or based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), obligations, loss, duties, benefits, fees, costs, accounts, rights, suits, controversies, awards, judgments, agreements, promises, damages (including, but not limited to, punitive, multiple, exemplary, or extra-contractual damages), offsets, remedies, penalties, debts, liabilities, interest, expenses, attorneys' fees, or other relief of any kind or character, or rights to any of the foregoing, whether under the Bankruptcy Code or under State or other applicable law, whether known or unknown, contingent or not contingent, suspected or unsuspected, asserted or unasserted, unforeseen, unanticipated or latent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertible directly or derivatively, at law, in equity, contractual  or otherwise, that such Tenet Releasing Party ever had, now has, may ever have, or may ever claim to have, against any such released party, arising from, relating to, or in any way connected with, any event, transaction, action or omission that occurred or failed to occur prior to the filing of the MOU Release Notice, including, without limitation, based on or relating to, or in any manner arising from, in whole or in part, the ASA, the MSA, the TSA, the HSRE

Documents, the CONA Documents, the MidCap Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, any of the MBNF Parties' businesses and operations, the RRG Membership Interests, the Debtors' Chapter 11 Cases, the Real Estate, the January 2018 Transactions, the Ancillary Documents, the HSRE Complaint, the MBNF Complaint, the Tenet/Conifer MBNF Claims, the Tenet/Conifer Indemnification Claims, any alleged conflict of interest, disclosure of confidential information in contravention of any applicable agreement or order, or ethical violation, any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications and/or writings made, allowed to be made, or alleged to have been made or allowed to have been made, by, or attributable to any Debtor Released Party, Committee Released Party, MBNF Released Party, CONA Released Party or HSRE Released Party, prior to the filing of the MOU Release Notice, any derivative claims asserted or assertible on behalf of any of the Debtors, the MBNF Parties or other Person, that Tenet would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, any of the Debtors, the MBNF Parties, or other Person, or any related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place prior to the filing of the MOU Release Notice, including any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence (collectively, the "**Tenet Released Claims**").

Without limitation of the foregoing, no Tenet Releasing Party shall assert, instigate, assist, or encourage any other Person to investigate or to assert, any action, any action in its capacity as a creditor, or any derivative action on behalf of any Person(s) in their capacity as a creditor or otherwise, against any Debtor Released Party, Committee Released Party, MBNF Released Party, CONA Released Party or HSRE Released Party, or derive any benefit therefrom, directly or indirectly on account of any Tenet Released Claims. In the event that any Tenet Releasing Party pursues any Tenet Released Claims against any Debtor Released Party, Committee Released Party, MBNF Released Party, CONA Released Party or HSRE Released Party at any time subsequent to the filing of the MOU Release Notice, the party pursuing such Tenet Released Claims shall fully indemnify, protect, and hold such Debtor Released Party, Committee Released Party, MBNF Released Party, CONA Released Party or HSRE Released Party, as applicable, harmless from and against any and all rights, claims, debts, losses, demands, acts, contracts, agreements, liabilities, obligations, damages, penalties, costs, fees (including, without limitation, all attorney, consultant and expert fees and costs), expenses, duties, breaches, actions, lawsuits, allegations, causes of action and/or suits of every nature, character and description, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, legal or equitable, allegedly or actually arising from, related to or incurred in connection with, directly or indirectly, the assertion of any and all such Tenet Released Claims, regardless of whether a judicial proceeding of any type or nature has been commenced.

e.  **Conifer Released Claims.**  Each Conifer Releasing Party hereby releases, remises, acquits, and forever discharges each Debtor Released Party, each Committee Released Party, each MBNF Released Party, each CONA Released Party, and each HSRE Released Party from any and all claims (including, without limitation, all claims that may be brought derivatively in Conifer's capacity as a creditor of any of the Debtors, the MBNF Parties or otherwise), actions, demands, payments, proceedings, causes of action (including, without limitation, estate causes of action, any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith and/or based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), obligations, loss, duties, benefits, fees, costs, accounts, rights, suits, controversies, awards, judgments, agreements, promises, damages (including, but not limited to, punitive, multiple, exemplary, or extra-contractual damages), offsets, remedies, penalties, debts, liabilities, interest, expenses, attorneys' fees, or other relief of any kind or character, or rights to any of the foregoing, whether under the Bankruptcy Code or under State or other applicable law, whether known or unknown, contingent or not contingent, suspected or unsuspected, asserted or unasserted, unforeseen, unanticipated or latent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertible directly or derivatively, at law, in equity, contractual  or otherwise, that such Conifer Releasing Party ever had, now has, may ever have, or may ever claim to have, against any such released party, arising from, relating to, or in any way connected with, any event, transaction, action or omission that occurred or failed to occur prior to the filing of the MOU Release Notice, including, without limitation, based on or relating to, or in any manner arising from, in whole or in part, the ASA, the MSA, the TSA, the HSRE Documents, the CONA Documents, the MidCap Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, any of the MBNF Parties' businesses and operations, the RRG Membership Interests, the Debtors' Chapter 11 Cases, the Real Estate, the January 2018 Transactions, the Ancillary Documents, the HSRE Complaint, the MBNF Complaint, the Tenet/Conifer MBNF Claims, the Tenet/Conifer Indemnification Claims, any alleged conflict of interest, disclosure of confidential information in contravention of any applicable agreement or order, or ethical violation, any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications and/or writings made, allowed to be made, or alleged to have been made or allowed to have been made, by, or attributable to any Debtor Released Party, Committee Released Party, MBNF Released Party, CONA Released Party or HSRE Released Party, prior to the filing of the MOU Release Notice, any derivative claims asserted or assertible on behalf of any of the Debtors, the MBNF Parties or other Person, that Conifer would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, any of the Debtors, the MBNF Parties or other Person, or any related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place prior to the filing of the MOU Release Notice, including any claims

40

related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence (collectively, the "**Conifer Released Claims**").

Without limitation of the foregoing, no Conifer Releasing Party shall assert, instigate, assist, or encourage any other Person to investigate or to assert, any action, any action in its capacity as a creditor, or any derivative action on behalf of any Person(s) in their capacity as a creditor or otherwise, against any Debtor Released Party, Committee Released Party, MBNF Released Party, CONA Released Party or HSRE Released Party, or derive any benefit therefrom, directly or indirectly on account of any Conifer Released Claims.  In the event that any Conifer Releasing Party pursues any Conifer Released Claims against any Debtor Released Party, Committee Released Party, MBNF Released Party, CONA Released Party or HSRE Released Party at any time subsequent to the filing of the MOU Release Notice,  the party pursuing such Conifer Released Claims shall fully indemnify, protect, and hold such Debtor Released Party, Committee Released Party, MBNF Released Party, CONA Released Party or HSRE Released Party, as applicable, harmless from and against any and all rights, claims, debts, losses, demands, acts, contracts, agreements, liabilities, obligations, damages, penalties, costs, fees (including, without limitation, all attorney, consultant and expert fees and costs), expenses, duties, breaches, actions, lawsuits, allegations, causes of action and/or suits of every nature, character and description, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, legal or equitable, allegedly or actually arising from, related to or incurred in connection with, directly or indirectly, the assertion of any and all such Conifer Released Claims, regardless of whether a judicial proceeding of any type or nature has been commenced.

f.   **CONA Released Claims.**  Each CONA Releasing Party hereby releases, remises, acquits, and forever discharges each Debtor Released Party, each Committee Released Party, each MBNF Released Party, each Tenet Released Party and each Conifer Released Party from any and all claims (including, without limitation, all claims that may be brought derivatively in any CONA Parties' capacity as a creditor of any of the Debtors, the MBNF Parties or otherwise), actions, demands, payments, proceedings, causes of action (including, without limitation, estate causes of action, any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith and/or based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), obligations, loss, duties, benefits, fees, costs, accounts, rights, suits, controversies, awards, judgments, agreements, promises, damages (including, but not limited to, punitive, multiple, exemplary, or extra-contractual damages), offsets, remedies, penalties, debts, liabilities, interest, expenses, attorneys' fees, or other relief of any kind or character, or rights to any of the foregoing, whether under the Bankruptcy Code or under State or other applicable law, whether known or unknown, contingent or not contingent, suspected or unsuspected, asserted or unasserted, unforeseen, unanticipated or latent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertible directly or derivatively, at law, in equity, contractual  or otherwise, that such CONA Releasing Party ever had, now

41

has, may ever have, or may ever claim to have, against any such released party, arising from, relating to, or in any way connected with, any event, transaction, action or omission that occurred or failed to occur prior to the filing of the MOU Release Notice, including, without limitation, based on or relating to, or in any manner arising from, in whole or in part, the ASA, the MSA, the TSA, the HSRE Documents, the CONA Documents, the MidCap Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, any of the MBNF Parties' businesses and operations, the RRG Membership Interests, the Debtors' Chapter 11 Cases, the Real Estate, the January 2018 Transactions, the Ancillary Documents, the HSRE Complaint, the MBNF Complaint, the CONA MBNF Claims, any alleged conflict of interest, disclosure of confidential information in contravention of any applicable agreement or order, or ethical violation, any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications and/or writings made, allowed to be made, or alleged to have been made or allowed to have been made, by, or attributable to any Debtor Released Party, Committee Released Party, MBNF Released Party, Tenet Released Party, or Conifer Released Party, prior to the filing of the MOU Release Notice, any derivative claims asserted or assertible on behalf of any of the Debtors, the MBNF Parties or other Person, that the CONA Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, any of the Debtors, the MBNF Parties or other Person, or any related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place prior to the filing of the MOU Release Notice, including any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence (collectively, the "**CONA Released Claims**"); provided, however, that the foregoing release shall not release (i) the HSRE Allowed Lease Damages Claim (or CONA Parties' first-priority security interest therein), (ii) HSRE Entities' rights (or CONA Parties' first-priority security interest therein) to receive an allocated share of the net proceeds of the Sale of the Real Estate as set forth in **Schedule 3(b)**, (iii) HSRE Entities' rights (or CONA Parties' first-priority security interest therein) to the Escrowed Funds as set forth in Section 9, or (iv) except as set forth in Section 3(a)(xiv) (including as to the termination of PAHH's pledge of the HSRE JV Interests), the HSRE-PAHH Note obligations, any security interests of any of the CONA Parties, or subordination rights for the benefit of any of the CONA Parties with respect to the foregoing.

Without limitation of the foregoing, no CONA Releasing Party shall assert, instigate, assist, or encourage any other Person to investigate or to assert, any action, any action in its capacity as a creditor, or any derivative action on behalf of any Person(s) in their capacity as a creditor or otherwise, against any Debtor Released Party, Committee Released Party, MBNF Released Party, Tenet Released Party, or Conifer Released Party, or derive any benefit therefrom, directly or indirectly on account of any CONA Released Claims.  In the event that any CONA Releasing Party pursues any CONA Released Claims against any Debtor Released Party, Committee Released Party, MBNF Released Party, Tenet Released Party or Conifer

39895352

Released Party at any time subsequent to the filing of the MOU Release Notice, the party pursuing such CONA Released Claims shall fully indemnify, protect, and hold such Debtor Released Party, Committee Released Party, MBNF Released Party, Tenet Released Party or Conifer Released Party, as applicable, harmless from and against any and all rights, claims, debts, losses, demands, acts, contracts, agreements, liabilities, obligations, damages, penalties, costs, fees (including, without limitation, all attorney, consultant and expert fees and costs), expenses, duties, breaches, actions, lawsuits, allegations, causes of action and/or suits of every nature, character and description, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, legal or equitable, allegedly or actually arising from, related to or incurred in connection with, directly or indirectly, the assertion of any and all such CONA Released Claims, regardless of whether a judicial proceeding of any type or nature has been commenced.

g. **HSRE Released Claims.**  Each HSRE Releasing Party hereby releases, remises, acquits, and forever discharges each Debtor Released Party, each Committee Released Party, each MBNF Released Party, each Tenet Released Party and each Conifer Released Party from any and all claims (including, without limitation, all claims that may be brought derivatively in the HSRE Entities' capacity as a creditor of any of the Debtors, the MBNF Parties, or otherwise), actions, demands, payments, proceedings, causes of action (including, without limitation, estate causes of action, any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith and/or based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), obligations, loss, duties, benefits, fees, costs, accounts, rights, suits, controversies, awards, judgments, agreements, promises, damages (including, but not limited to, punitive, multiple, exemplary, or extra-contractual damages), offsets, remedies, penalties, debts, liabilities, interest, expenses, attorneys' fees, or other relief of any kind or character, or rights to any of the foregoing, whether under the Bankruptcy Code or under State or other applicable law, whether known or unknown, contingent or not contingent, suspected or unsuspected, asserted or unasserted, unforeseen, unanticipated or latent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertible directly or derivatively, at law, in equity, contractual  or otherwise, that such HSRE Releasing Party ever had, now has, may ever have, or may ever claim to have, against any such released party, arising from, relating to, or in any way connected with, any event, transaction, action or omission that occurred or failed to occur prior to the filing of the MOU Release Notice, including, without limitation, based on or relating to, or in any manner arising from, in whole or in part, the ASA, the MSA, the TSA, the HSRE Documents, the CONA Documents, the MidCap Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, any of the MBNF Parties' businesses and operations, any of the HSRE JV's or any of the HSRE JV member's respective businesses and operations, the RRG Membership Interests, the Debtors' Chapter 11 Cases, the Real Estate, the January 2018 Transactions, the Ancillary Documents, the HSRE Complaint, the MBNF Complaint, the HSRE MBNF Claims, any alleged conflict

43

of interest, disclosure of confidential information in contravention of any applicable agreement or order, or ethical violation, any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications and/or writings made, allowed to be made, or alleged to have been made or allowed to have been made, by, or attributable to any Debtor Released Party, Committee Released Party, MBNF Released Party, Tenet Released Party, or Conifer Released Party, prior to the filing of the MOU Release Notice, any derivative claims asserted or assertible on behalf of any of the Debtors, the MBNF Parties or other Person, that the HSRE Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, any of the Debtors, the MBNF Parties or other Person, or any related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place prior to the filing of the MOU Release Notice, including any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence (collectively, the "**HSRE Released Claims**"); provided, however, that the foregoing release shall not release (i) the HSRE Allowed Lease Damages Claim, (ii) HSRE Entities' rights to receive an allocated share of the net proceeds of the Sale of the Real Estate as set forth in **Schedule 3(b)**, (iii) HSRE Entites' rights to the Escrowed Funds as set forth in Section 9, or (iv) except as set forth in Section 3(a)(xiv) (including as to the termination of PAHH's pledge of the HSRE JV Interests), the HSRE-PAHH Note obligations, any security interests of any of the CONA Parties, or subordination rights for the benefit of any of the CONA Parties with respect to the foregoing.

Without limitation of the foregoing, no HSRE Releasing Party shall assert, instigate, assist, or encourage any other Person to investigate or to assert, any action, any action in its capacity as a creditor, or any derivative action on behalf of any Person(s) in their capacity as a creditor or otherwise, against any Debtor Released Party, Committee Released Party, MBNF Released Party, Tenet Released Party, or Conifer Released Party, or derive any benefit therefrom, directly or indirectly on account of any HSRE Released Claims.  In the event that any HSRE Releasing Party pursues any HSRE Released Claims against any Debtor Released Party, Committee Released Party, MBNF Released Party, Tenet Released Party or Conifer Released Party at any time subsequent to the filing of the MOU Release Notice,  the party pursuing such HSRE Released Claims shall fully indemnify, protect, and hold such Debtor Released Party, Committee Released Party, MBNF Released Party, Tenet Released Party or Conifer Released Party, as applicable, harmless from and against any and all rights, claims, debts, losses, demands, acts, contracts, agreements, liabilities, obligations, damages, penalties, costs, fees (including, without limitation, all attorney, consultant and expert fees and costs), expenses, duties, breaches, actions, lawsuits, allegations, causes of action and/or suits of every nature, character and description, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, legal or equitable, allegedly or actually arising from, related to or incurred in connection with, directly or indirectly, the assertion of any and all such HSRE Released Claims, regardless of whether a judicial proceeding of any type or nature has been commenced.

h. **HSRE JV Released Claims.** Each HSRE JV Releasing Party hereby releases, remises, acquits, and forever discharges each CONA Released Party, each HSRE Released Party and each MBNF Released Party from any and all claims (including, without limitation, all claims that may be brought derivatively in the HSRE JV's capacity as a creditor of any of the Debtors, the MBNF Parties, or otherwise), actions, demands, payments, proceedings, causes of action (including, without limitation, estate causes of action, any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith and/or based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), obligations, loss, duties, benefits, fees, costs, accounts, rights, suits, controversies, awards, judgments, agreements, promises, damages (including, but not limited to, punitive, multiple, exemplary, or extra-contractual damages), offsets, remedies, penalties, debts, liabilities, interest, expenses, attorneys' fees, or other relief of any kind or character, or rights to any of the foregoing, whether under the Bankruptcy Code or under State or other applicable law, whether known or unknown, contingent or not contingent, suspected or unsuspected, asserted or unasserted, unforeseen, unanticipated or latent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertible directly or derivatively, at law, in equity, contractual or otherwise, that such HSRE JV Releasing Party ever had, now has, may ever have, or may ever claim to have, against any such released party, arising from, relating to, or in any way connected with, any event, transaction, action or omission that occurred or failed to occur prior to the filing of the MOU Release Notice, including, without limitation, based on or relating to, or in any manner arising from, in whole or in part, the ASA, the MSA, the TSA, the HSRE Documents, the CONA Documents, the MidCap Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, any of the HSRE JV's or any of the HSRE JV member's respective businesses and operations, the Debtors' Chapter 11 Cases, the Real Estate, the January 2018 Transactions, the Ancillary Documents, the HSRE Complaint, the MBNF Complaint, the HSRE MBNF Claims, the MBNF HSRE Claims, any alleged conflict of interest, disclosure of confidential information in contravention of any applicable agreement or order, or ethical violation, any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications and/or writings made, allowed to be made, or alleged to have been made or allowed to have been made, by, or attributable to any CONA Released Party, HSRE Released Party or MBNF Released Party, prior to the filing of the MOU Release Notice, any derivative claims asserted or assertible on behalf of any of the Debtors, the MBNF Parties or other Person, that the HSRE JV would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, any of the Debtors, the MBNF Parties or other Person, or any related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place prior to the filing of the MOU Release Notice, including any claims related to any act or omission that may have

45

constituted actual fraud, willful misconduct or gross negligence (collectively, the "**HSRE JV Released Claims**").

Without limitation of the foregoing, no HSRE JV Releasing Party shall assert, instigate, assist, or encourage any other Person to investigate or to assert, any action, any action in its capacity as a creditor, or any derivative action on behalf of any Person(s) in their capacity as a creditor or otherwise, against any CONA Released Party, any HSRE Released Party, or any MBNF Released Party or derive any benefit therefrom, directly or indirectly on account of any HSRE JV Released Claims.  In the event that any HSRE JV Releasing Party pursues any HSRE JV Released Claims against any CONA Released Party, any HSRE Released Party, or any MBNF Released Party at any time subsequent to the filing of the MOU Release Notice,  the party pursuing such HSRE JV Released Claims shall fully indemnify, protect, and hold such CONA Released Party, HSRE Released Party or MBNF Released Party, as applicable, harmless from and against any and all rights, claims, debts, losses, demands, acts, contracts, agreements, liabilities, obligations, damages, penalties, costs, fees (including, without limitation, all attorney, consultant and expert fees and costs), expenses, duties, breaches, actions, lawsuits, allegations, causes of action and/or suits of every nature, character and description, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, legal or equitable, allegedly or actually arising from, related to or incurred in connection with, directly or indirectly, the assertion of any and all such HSRE JV Released Claims, regardless of whether a judicial proceeding of any type or nature has been commenced.

i.    **RRG Released Claims**.  Each RRG Releasing Party hereby releases, remises, acquits, and forever discharges each RRG Released Party from any and all claims (including, without limitation, all claims that may be brought derivatively in the capacity as a creditor of RRG, or otherwise), actions, demands, payments, proceedings, causes of action (including, without limitation, estate causes of action, any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith and/or based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), obligations, loss, duties, benefits, fees, costs, accounts, rights, suits, controversies, awards, judgments, agreements, promises, damages (including, but not limited to, punitive, multiple, exemplary, or extra-contractual damages), offsets, remedies, penalties, debts, liabilities, interest, expenses, attorneys' fees, or other relief of any kind or character, or rights to any of the foregoing, whether under the Bankruptcy Code or under State or other applicable law, whether known or unknown, contingent or not contingent, suspected or unsuspected, asserted or unasserted, unforeseen, unanticipated or latent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertible directly or derivatively, at law, in equity, contractual  or otherwise, that such RRG Releasing Party ever had, now has, may ever have, or may ever claim to have, against any RRG Released Party, arising from, relating to, or in any way connected with, any event, transaction, action or omission that occurred or failed to occur prior to the

46

filing of the MOU Release Notice, including, without limitation, based on or relating to, or in any manner arising from, in whole or in part, the ASA, the MSA, the TSA, the HSRE Documents, the CONA Documents, the MidCap Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, RRG's businesses and operations, any of the other MBNF Parties' businesses and operations, the RRG Membership Interests, the Debtors' Chapter 11 Cases, the Real Estate, the January 2018 Transactions, the Ancillary Documents, the HSRE Complaint, the MBNF Complaint, the BAA, any claims under any policy that was issued, written or assumed by RRG, or the administration thereof, any approval of the RRG Dissolution (regulatory or otherwise), each of the RRG MOU Implementation Date Actions, the dissolution, winding-up and/or liquidation of RRG or its assets, any distribution of RRG's assets, any alleged conflict of interest, disclosure of confidential information in contravention of any applicable agreement or order, or ethical violation, any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications and/or writings made, allowed to be made, or alleged to have been made or allowed to have been made, by, or attributable to any RRG Released Party, prior to the filing of the MOU Release Notice, any derivative claims asserted or assertible on behalf of any of the Debtors, the MBNF Parties or other Person, that any RRG Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, RRG or any other Person, or any related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place prior to the filing of the MOU Release Notice, including any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence (collectively, the "**RRG Released Claims**" together with the Debtor Released Claims, the MBNF Released Claims, the MBNF/Broad Released Claims, the Tenet Released Claims, the Conifer Released Claims, the CONA Released Claims, the HSRE Released Claims, and the HSRE JV Released Claims, the "**Released Claims**").

Without limitation of the foregoing, no RRG Releasing Party shall assert, instigate, assist, or encourage any other Person to investigate or to assert, any action, any action in its capacity as a creditor, or any derivative action on behalf of any Person(s) in their capacity as a creditor or otherwise, against any RRG Released Party (or challenge any liens or claims of any RRG Released Party), or derive any benefit therefrom, directly or indirectly on account of any RRG Released Claims. In the event that any RRG Releasing Party pursues any RRG Released Claims against any RRG Released Party at any time subsequent to the filing of the MOU Release Notice,  the party pursuing such RRG Released Claims shall fully indemnify, protect, and hold such RRG Released Party harmless from and against any and all rights, claims, debts, losses, demands, acts, contracts, agreements, liabilities, obligations, damages, penalties, costs, fees (including, without limitation, all attorney, consultant and expert fees and costs), expenses, duties, breaches, actions, lawsuits, allegations, causes of action and/or suits of every nature,

character and description, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, legal or equitable, allegedly or actually arising from, related to or incurred in connection with, directly or indirectly, the assertion of any and all such RRG Released Claims, regardless of whether a judicial proceeding of any type or nature has been commenced.

j.  **California Civil Code § 1542.**  The Parties intend and agree that the releases granted in this MOU shall be effective as a bar to any and all currently unsuspected, unknown, or partially known claims.  Each Party hereby acknowledges that it has been informed by its respective attorneys of, and that it is familiar with, the provisions of California Civil Code § 1542, and each  Party expressly waives any and all rights and benefits conferred upon it by the provisions of California Civil Code § 1542, which provides in pertinent part:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each Party also expressly waives any and all provisions, rights, and benefits conferred by any state or territory in the United States of America, or any other nation, or by the Restatements of the Law or by any principle of common law that is similar, comparable, or equivalent to California Civil Code § 1542.  Although the Parties may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the subject matter of this MOU, the Parties have fully, finally, and forever settled and released any and all claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed upon any theory of law or equity relating to this MOU, including, but not limited to, with respect to conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties acknowledge that the inclusion of such "Unknown Claims" in this MOU was separately bargained for and was a key element of this MOU.

k.  **Environmental Claims Release.**  For purposes of clarity, each of the Non-MBNF Parties understands and agrees that the foregoing releases in this Section 14 of the MOU includes the release of each MBNF Released Party of and from, any claim or cause of action, including, without limitation, any strict liability claim or cause of action, that any of the Non-MBNF Parties may have against any MBNF Released Party under any environmental law, now existing or hereafter enacted or promulgated, relating to environmental matters or environmental conditions in, on, under, about or migrating from or onto the Real Estate, including, without limitation, the Comprehensive Environmental Response, Compensation and

Liability Act or by virtue of any common law right now existing or hereafter created related to environmental conditions or environmental matters in, on, under, about or migrating from or onto the Real Estate, any and all of which claims shall constitute Released Claims under this MOU.

l.  **Prior Debtor/Tenet Settlement**. Notwithstanding anything to the contrary contained herein, the Debtors, Tenet and Conifer shall retain all rights against one another under and with respect to that certain *Order Granting Motion of the Debtors for Entry of Order Approving Settlement Term Sheet Between the Debtors, Tenet Business Services Corporation, Conifer Revenue Cycle Solutions, LLC and The Official Committee of Unsecured Creditors* [D.I. 1118], and the Term Sheet attached thereto as Exhibit 1, subject, however, to the release of all claims against each MBNF Released Party as described in Sections 14(a), (d), (e) and (i) hereof.

m.  **Release Limitations.**  Notwithstanding anything to the contrary contained herein, nothing contained in this MOU shall operate to (i) create, give rise to or accrue any claim or right of action that is not directly created or allowed by this MOU or expressly preserved by Sections 14(l) and 14(n) of this MOU; (ii) release any Released Party from (x) any claim allowed by this MOU or the Approval Order or (y) any term, condition, provision or obligation set forth in this MOU or the Approval Order arising on or after the MOU Implementation Date, except to the extent completed or performed prior to the filing of the MOU Release Notice; (iii) release any claims for Actual Fraud in the negotiation or documentation of the MOU; (iv) release any claims against Iron Stone Real Estate Partners, its affiliates or Representatives; or (v) release any claims (x) between Tenet or Conifer on the one hand and the CONA Parties or HSRE Entities on the other hand or (y) by or against the Representatives of the Parties (but excluding any Representative who also constitutes any MBNF Party, any MBNF Affiliate, Sonsara Management Services, LLC, or Jigsaw Advisors, LLC), in each case of the preceding clauses (x) and (y), that are unrelated to the ASA, the MSA, the TSA, the HSRE Documents, the CONA Documents, the January 2018 Transactions, the MidCap Documents, the Ancillary Documents, the Leases, the Debtors' in- or out-of-court restructuring efforts, any of the Debtors' businesses and operations, any of the MBNF Parties' businesses and operations, any of the HSRE JV's or any of the HSRE JV member's respective businesses and operations, the Debtors' Chapter 11 Cases, the Real Estate, the Broad Street Notes, the HSRE Complaint, the MBNF Complaint, the CONA MBNF Claims, the HSRE Debtor Claims, the HSRE MBNF Claims, the MBNF CONA Claims, the MBNF Debtor Claims, the MBNF HSRE Claims, the MBNF Tenet/Conifer Claims, the Tenet/Conifer Indemnification Claims, the Tenet/Conifer MBNF Claims, the Tenet Debtor Claims, the RRG, the RRG Membership Interests, the BAA, any claims under any policy that was issued, written or assumed by RRG, or the administration thereof, any approval of the RRG Dissolution (regulatory or otherwise), any of the RRG MOU Implementation Date Actions, the dissolution, winding-up and/or liquidation of RRG or its assets, any distribution of RRG's assets, or any false, misleading, inflammatory, defamatory, libelous, slanderous and/or disparaging statements, publications, and/or writings made, allowed to be made, or alleged to have been made or allowed to have been

made, by, or attributable to any Released Party prior to the filing of the MOU Release Notice.

n.  **Survival of ASA Provisions.**  For the avoidance of doubt, the releases in this Section 14 shall not affect the transfer of the Assets to the Purchasers as contemplated in Section 1.6 of the ASA, the retention of the Excluded Assets by the Sellers as contemplated in Section 1.7 of the ASA, the assumption of the Assumed Obligations by the Purchasers as contemplated in Section 1.8 of the ASA, and the retention of the Excluded Liabilities by the Sellers as contemplated in Section 1.9 of the ASA (except for the term "ASA" defined above, each capitalized term used in this Section 14(n) shall have the meaning assigned to it in the ASA). Each such provision (and the transfer of title to the Assets and Assumed Obligations in accordance with the applicable conveyance documents) shall remain in full force and effect in accordance with its terms.

o.  **Carrier Notices.**  In furtherance of the releases set forth in this Section 14, and promptly after the filing of the MOU Release Notice, (i) the Debtors and Committee shall countersign a notice to be prepared and sent by the MBNF Parties in the form attached hereto as **Exhibit 14(o)(i)** to each insurance carrier with respect to the policies set forth in items 1-7 on **Schedule 14(o)** hereto (other than Travelers with respect to the D&O Claims under the D&O Insurance) to advise such carrier of the settlement and releases set forth in this MOU and dismissal or withdrawal of pending litigation described in Section 15; and (ii) MBNF shall countersign a notice to be prepared and sent by the Debtors in the form attached hereto as **Exhibit 14(o)(ii)** to each insurance carrier with respect to the policies set forth in items 8-10 on **Schedule 14(o)** hereto  to advise such carrier of the settlement and releases set forth in this MOU and dismissal or withdrawal of pending litigation described in Section 15.

p.  **No Challenge of Liens or Claims.**  Subject to the terms of this MOU, no Releasing Party shall challenge any liens or claims of any of the Released Parties related to the subject matter of this MOU or the underlying transactions.

15. **<u>Dismissal and/or Withdrawal of Pending Litigation</u>.**  Promptly after the filing of the MOU Release Notice, each of the applicable Parties shall withdraw or stipulate to the voluntary dismissal of the following proceedings, matters and motions, including claims, counterclaims and crossclaims, with prejudice and with each party to such litigation to bear its own fees and costs:

| *Appellant(s)* | *Appellee(s)* | *Court* | *Case No.* |
|---|---|---|---|
| MBNF Parties | Debtors Committee Tenet Conifer HSRE Entities | United States District Court for the District of Delaware | Civil Action No. 1:21-cv-01779 (the "**Appeal**") |
|  |  |  |  |

| Plaintiff(s) | Defendant(s) | Court | Case No. |
|---|---|---|---|
| Debtors | MBNF Parties | Bankruptcy Court | Adv. No. 21-50991-MFW |
| Debtors | HSRE Entities/CONA | Bankruptcy Court | Adv. No. 21-50993-MFW |
| HSRE-PAHH I, LLC, *et al.*<br><br>PAHH | PAHH and Paladin<br><br>HSRE-PAHH IA, LLC | Court of Common Pleas, Philadelphia County – Commerce Program | Case ID 200300202 |
| PAHH Broad Street MOB, LLC, *et al.* | PAHH and Paladin | Court of Common Pleas, Philadelphia County – Commerce Program | Case ID 190804677 |
| Tenet and Conifer | Front Street Healthcare Properties, LLC, *et al.* | Superior Court of the State of Delaware | C.A. No. N19C-09-116-SKR |
| PAHH *et al.* | Tenet | Superior Court of the State of Delaware | C.A. No. N19C-04-035EMDCCLD |
| PAHH | Tenet | Court of Chancery of the State of Delaware | 2018-0684-KSJM |

| Movant(s) | Name of Pleading | Court | Docket No. |
|---|---|---|---|
| MBNF Parties | *The MBNF Non-Debtor Entities' Motion to Appoint a Chapter 11 Trustee* | Bankruptcy Court | D.I. 2543 |
| Broad Street Healthcare Properties, LLC, *et al.* | *Notice of Appeal* | Bankruptcy Court | D.I. 3338 |
| Tenet | *Motion of Tenet Business Services Corporation for an Order (i) Confirming that the Automatic Stay Does Not Apply, or (ii) in the Alternative, Granting Relief from the Automatic Stay* | Bankruptcy Court | D.I. 2162 |
| HSRE Entities | *Application of Master Landlords for Entry of an Order Allowing and Directing Payment of Administrative Expense Claim* | Bankruptcy Court | D.I. 1578 |

39895352

Each applicable Party agrees to take any and all reasonably necessary steps to effectuate the dismissal required by this Section 15. In the case of the Appeal, the Parties may dismiss that matter pursuant to a stipulation consistent with the MOU.

16. **Covenant Not to Sue.** From and after the filing of the MOU Release Notice, no Releasing Party shall bring any Released Claims before any court, arbitrator, or other tribunal or jurisdiction or any other Person, whether as a claim, cross-claim, or counterclaim. Any Released Party may plead this MOU as a complete bar and/or defense to any Released Claim brought in derogation of this covenant not to sue. No Releasing Party shall assert, attempt to assert in any manner, or benefit directly or indirectly from any Released Claims against any insurers of the Released Parties (other than (i) Travelers with respect to the D&O Claims under the D&O Insurance; and (ii) solely for any HSRE Entities to obtain reimbursement of such Party's attorney's fees, costs and expenses but only if such insurer agrees not to assert any subrogation rights against any Person and not to seek contribution, reimbursement or any other recovery therefor from any other Person). The Parties acknowledge and agree that: (i) a breach of this covenant by any of the Parties shall constitute irreparable harm to the other Parties; (ii) monetary damages would be inadequate to remedy the breach; and (iii) enforcement of this covenant may be made by complaint and petition for injunctive relief, without waiving any claim for damages.

17. **Tenet Shortfall Payment.** To the extent Sale proceeds of ▮▮▮▮▮ are not realized from the Sale of the Real Estate, Tenet (in order to recover the amount it would have received if the sale price had been ▮▮▮▮▮) will share to the extent of such shortfall, in an amount not to exceed $2 million, in any proceeds received by the Debtors from the HPP Notes.

18. **Tax Cooperation.**

   a. **Debtor Tax Cooperation.** For all periods in which the Debtors are in possession and control of the Debtors' books and records, and relating solely to time periods prior to the completion of the transaction described in Section 3(a)(xiii), and solely to the extent not previously provided to the MBNF Parties and/or any of their Representatives, the Debtors shall provide the MBNF Parties and the MBNF Equity Buyer LLC with the following information at such time, in such format and in such detail as the Debtors, the MBNF Parties and the MBNF Equity Buyer LLC shall reasonably agree:

   i. Trial balance, income statements, and balance sheets (in excel or similar format) for all Debtors;

   ii. Support related to any Taxes paid by the Debtors for all tax years;

   iii. Support related to potentially non-deductible items;

   iv. Detail and support related to any asset sales or dispositions;

   v. Detail and support related to payment of claims and obligations;

   vi. Detail and support of any adjusting journal entries recorded; and

52

vii.    Any other tax-related information or documentation that the MBNF Parties or the MBNF Equity Buyer LLC may reasonably request.

b.  **HSRE Tax Cooperation**.  For all periods commencing 2021 and thereafter until the HSRE JV is dissolved in which HSRE-PAHH IA, LLC or any other HSRE Entity is the tax matters partner or partnership representative (or any similar role under applicable state or local law) and/or are in possession and control of the HSRE JV's books and records, HSRE-PAHH IA, LLC or such HSRE Entity shall provide PAHH, and MBNF or the MBNF Equity Buyer LLC, as the taxpayer, at no material cost or expense to the HSRE Entities with the following information as soon as reasonably practicable (but in any event prior to filing of any tax returns for HSRE JV for the tax years 2021 or thereafter), in such format and in such detail as may be reasonably agreed to by (A) the HSRE Entities, (B) a Representative of Joel Freedman, and (C) a Representative of MBNF Liquidator LLC, for the 2021 tax year and each tax year going forward until the HSRE JV is dissolved:

i.    Schedule K-1 detailing PAHH's distributive share of income and losses, allocated liabilities, and ending tax capital (actual);

ii.    Trial balance, income statements, and balance sheets (in excel or similar format) for HSRE JV;

iii.    Roll-forward of PAHH's tax and IRC Section 704(b) capital detail (in excel or similar format);

iv.    Support related to any taxes paid by the HSRE JV or the HSRE Entities related to the HSRE JV;

v.    Support related to the HSRE JV's potentially non-deductible items;

vi.    Detail and support related to payment and/or forgiveness of debt, claims and obligations of HSRE JV;

vii.    Detail and support related to any federal and state tax positions taken by HSRE JV or by any of the HSRE Entities as it relates to HSRE JV; and

viii.    HSRE-PAHH IA, LLC shall cause a IRC Section 754 election to be made by the HSRE JV if requested in writing by any holder of the HSRE JV Interests.

c.  **MBNF Tax Cooperation**.  For all periods in which the MBNF Entities and/or MBNF Equity Buyer LLC are in possession and control of the MBNF Entities' books and records, and solely to the extent not previously provided to the Debtors and/or any of their Representatives, the MBNF Entities and/or MBNF Equity Buyer LLC shall provide to the Debtors such tax-related information or documentation that the Debtors may reasonably request at such time and in such format as the Debtors, the MBNF Entities and/or the MBNF Equity Buyer LLC shall reasonably agree.

53

19. **Pending Litigation Claims Cooperation**.  The MBNF Parties and the Debtors shall reasonably cooperate in good faith in defending, mediating, arbitrating, considering proposals for resolution, and/or resolving the Pending Litigation Claims, including, but not limited to telephone and in-person conferences to discuss or prepare for litigation or investigatory proceedings, such as hearings, depositions or other discovery proceedings or requests, or any proceedings in arbitration.  The cooperation described above shall not preclude the Debtors or the MBNF Parties from independently resolving their respective alleged liabilities with respect to the Pending Litigation Claims; provided that the Debtors will stipulate to any relief from the automatic stay with respect to the Pending Litigation Claims only after providing advanced written notice to and consulting in good faith with the applicable MBNF Parties.

20. **Information Cooperation.**  Following the MOU Implementation Date and, as is commercially reasonable, until the closing of the Sale, upon the reasonable request of the Debtors, and at no material cost or expense to the MBNF Parties, the MBNF Individuals shall reasonably cooperate in good faith with the Debtors in responding to information requests related to the Real Estate if such information is known and available at such time to the MBNF Individuals and not otherwise delivered to the Debtors in accordance with Section 3(d).  Following the MOU Implementation Date, and until the final decree and order closing the Chapter 11 Cases is entered, upon the reasonable request of the MBNF Parties, and at no material cost or expense to the Debtors, the Debtors shall reasonably cooperate in good faith with the MBNF Parties in connection with the winding-up and liquidation of any such parties.  For the avoidance of any doubt, any cooperation by the MBNF Parties or the Debtors under this Section shall not require such Party to waive or modify any of such Party's rights under this MOU.

21. **Casualty Loss and Insurance.**  On the MOU Implementation Date, the MBNF Parties shall be deemed to have assigned, transferred and conveyed to CCH all rights to insurance proceeds under all insurance policies and contracts and coverages obtained by any of the MBNF Entities or listing any of the MBNF Parties as an insured party, a beneficiary or loss payee, on account of any casualty claim arising from or relating to the Assets set forth on **Schedule 3(a)(vi)**.  To the extent that any of the MBNF Parties received or receive any insurance proceeds on account of any casualty claim arising from or relating to the Assets set forth on **Schedule 3(a)(vi)** and such proceeds have not been used to remedy the insured loss, then any such proceeds shall be deemed included in the Assets set forth on **Schedule 3(a)(vi)** substantively consolidated with CCH; provided, that such proceeds shall be separate and apart from the MBNF Entities' (exclusive of (x) RRG's deposit accounts and (y) the Broad Street PropCos' deposit accounts maintained at PNC Bank) ending cash balance as of the Execution Date in the amount of $99,680.19, which amount does not include $1,396 which shall be transferred on the MOU Implementation Date from the accounts of the Broad Street PropCos to PAHH, the entirety of which cash shall constitute

the property of the MBNF Entities and shall not be deemed included in the Assets set forth on **Schedule 3(a)(vi)** substantively consolidated with CCH.

22. **Plan.**

    a.  **MOU**.  This MOU shall be incorporated into the Plan.  The Committee, the MBNF Parties, Tenet, Conifer, the HSRE Entities and the CONA Parties shall support, and shall not directly or indirectly oppose, any substantive consolidation of the Debtors proposed in the Debtors' Plan, including, but not limited to, as set forth in this MOU, provided that the Plan and the Confirmation Order do not contain any provisions that are inconsistent with the terms and conditions of this MOU or diminish the rights existing or obtained through this MOU.

    b.  **Release**.  The Plan shall contain releases, consistent with the releases set forth in this MOU, by the Debtors for the benefit of each MBNF Released Party, Tenet Released Party, Conifer Released Party, CONA Released Party, HSRE Released Party and Committee Released Party.  In addition, the Debtors shall use commercially reasonable efforts to obtain consensual third-party releases in the Plan to the fullest extent permitted by law for the benefit of the MBNF Individuals, Paladin, Tenet, Conifer and the HSRE Entities.  Such efforts shall include the submission of briefing and consultation with the MBNF Parties and the Honorable Kevin J. Carey (ret.) upon receiving formal and/or informal objections to inclusion of such releases, to obtain approval of such releases.

    d.  **Exculpation**.  The Plan shall contain exculpation provisions, which shall include a full exculpation from liability in favor of the "**Exculpated Parties**" (a term defined to include Joel Freedman and his advisors, attorneys, accountants, consultants, financial advisors, investment bankers, agents, and other representatives, including Kyle Schmidt and Svetlana Attestatova, and any of such parties' successors and assigns), but only to the extent such persons served as a fiduciary to any of the Debtors' estates, from any cause of action for any claim related to any act or omission, from the Chapter 11 Cases' petition date to the effective date of the Plan, in connection with, relating to, or arising out of: (i) the Chapter 11 Cases, in whole or in part, including the planning, commencement, and administration thereof; (ii) the Debtors; (iii) the formulation, preparation, dissemination, negotiation, and filing of (A) the Disclosure Statement, (B) the Plan, (C) the Plan Supplement, (D) the MOU, including any schedules and exhibits attached thereto, (E) any sale order, (F) the Approval Order, or (G) any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the filing of the Chapter 11 Cases, the MOU, any sale order, or the Approval Order; (iv) solicitation of votes on the Plan; (v) the prepetition negotiation and settlement of claims; (vi) the pursuit of consummation of the Plan; or (vii) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, except for claims or causes of action related to or arising from any act or omission that is judicially determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

The Plan shall provide that the Exculpated Parties have, and upon effectiveness of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above shall not release or exculpate any claim relating to any post-effective date obligations of any Person created by the MOU, the Plan, or any document, instrument, or agreement executed to implement the Plan.

The Debtors shall use commercially reasonable efforts, including the submission of briefing and consultation with the MBNF Parties and the Honorable Kevin Carey (ret.) upon receiving formal and/or informal objections to inclusion of such exculpation, to obtain approval of such exculpation provisions.

23. **Conditions to MOU Implementation Date.** This MOU shall not be effective, and shall have no force or effect, unless and until the following conditions have been satisfied or waived by the Debtors, the MBNF Parties, the HSRE Entities, the CONA Parties, Tenet and the Committee in writing no later than ninety (90) calendar days after the Execution Date or such later date to which all of the foregoing parties consent in writing, which consent shall not be unreasonably withheld, conditioned, or delayed; provided, however, (a) the requirements with respect to Sections 23(b) and 23(e) are not subject to waiver, (b) Sections 14(a) through 14(j) and 16 shall not be effective until the MOU Release Notice is filed in accordance with Section 52, and (c) if the following conditions are satisfied or waived during the period between sixty-one (61) and ninety (90) calendar days after the Execution Date, the Debtor Settlement Payment shall be increased by the amount equal to one-half of the amount of the Withdrawal Liability Settlement Payment in excess of $15,759,921, which represents the Withdrawal Liability Settlement Payment as of September 15, 2022:

a. **Disputed Claims.** The Disputed Claims shall have been resolved or otherwise addressed in a manner reasonably acceptable to the Debtors, the Committee, and the MBNF Parties; it being understood that mutual general releases of the parties to the Disputed Claims shall be reasonably acceptable to the Debtors, the Committee, and the MBNF Parties.

b. **Approval Order.** The Bankruptcy Court shall have entered the Approval Order.

c. **Final Order.** The Approval Order shall have become a Final Order.

d. **D&O Settlement.** The Debtors shall have resolved, with Travelers and under the D&O Insurance, the D&O Claims in a manner acceptable to the Debtors and the Committee; provided, however, that any resolution of the D&O Claims shall include releases by Travelers, in each case acceptable to the MBNF Individuals, of Travelers' subrogation rights, if any, against the MBNF Individuals.

e. **RRG Approval**.  All necessary regulatory approvals, if any, for the RRG's entry into this MOU (including, for the avoidance of doubt, the dissolution, liquidation and termination of the RRG), and for the change in control of the RRG by virtue of PAHH's withdrawal as a member of the RRG, shall have been received.

f. **Signed Exhibits**.  The Debtors, the MBNF Parties, the HSRE Entities, the CONA Parties, Tenet, and the Committee shall have confirmed to their satisfaction that the Third Party Escrow Agent has in its possession fully and properly executed original copies of all documents attached to this MOU as exhibits and the HSRE Warrant required to be released upon the occurrence of the MOU Implementation Date.

g. **Standstill Agreement.**  The Standstill Agreement shall have remained in full force and effect at all times from July 21, 2021 through the MOU Implementation Date.

h. **Representations and Warranties.**  All of the representations and warranties of the MBNF Entities contained in Section 3(d) of the MOU and of each Releasing Party contained in Section 25 of the MOU shall be true and correct in all material respects as of the MOU Implementation Date, except for those representations and warranties which address matters only as of a particular date (which will remain true and correct in all material respects as of such date).  Notwithstanding the foregoing, none of the representations or warranties contained in this MOU and made by any party hereto shall survive the MOU Implementation Date, and no party hereto or its Representatives shall have the right to bring an action based on, arising out of, or related to such representations and warranties at any time after the MOU Implementation Date.

i. **Pension Fund Payoff Letter.**  The Debtors shall have received a copy of a payoff letter from the Pension Fund delivered pursuant to Section 3(b) of the Pension Settlement Agreement, confirming the payoff amount to the Pension Fund to fully satisfy the unpaid and outstanding Withdrawal Liability Settlement Payment, as such term is defined in the Pension Settlement Agreement as of the contemplated MOU Implementation Date.

j. **IRS Form 8832**.  PAHH and PAHS shall each have prepared an IRS Form 8832 consistent with the requirements of Sections 3(a)(xvi)(a) and 3(a)(xvi)(b) respectively, and each such party shall have confirmed in writing to the other that such forms are acceptable and consistent with the requirements of this MOU.

k. **MBNF Direction Letter.**  MBNF shall have provided the MBNF Direction Letter to the Third Party Escrow Agent.

l. **Third Party Escrow Agent Agreement**.  MBNF, Tenet and the Debtors shall have entered into an agreement with the Third Party Escrow Agent in form and substance reasonably satisfactory to all parties thereto.

m. **RRG Proceeds**.  The RRG Proceeds shall be no less than (i) $6,100,000 in cash or cash equivalents if the MOU Implementation Date occurs on or before September

15, 2022, or (ii) $6,070,000 in cash or cash equivalents if the MOU Implementation Date occurs after September 15, 2022.

24. **Non-Debtor Status.**  For the avoidance of doubt, as a result of entering into this MOU, none of the Broad Street PropCos or RRG shall be: (a) considered debtors or debtors in possession in the Chapter 11 Cases or any other case; (b) deemed to have filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code; or (c) responsible for any reporting obligations under the Bankruptcy Code, including, without limitation, schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, statement of financial affairs, and monthly operating reports.

25. **No Assignment of Claims.**  Each of the Releasing Parties represents and warrants that, as of its execution of this MOU, it has not assigned or otherwise transferred (other than with respect to as collateral in connection with the CONA Documents) to any Person any of the claims addressed by this MOU and shall not assign or otherwise transfer to any Person any such claim, provided, however, that the rights and claims of the HSRE Entities (and/or the proceeds thereof) constitute collateral that has been pledged to Capital One, N.A. for the benefit of the CONA Parties as set forth in the CONA Documents; it being understood that the CONA Parties' preservation of such pledge of collateral shall not reduce, diminish, condition or otherwise limit the releases by each CONA Releasing Party set forth in Section 14(f); provided, however, Capital One, N.A. shall release all rights and claims under the CONA Documents upon the final distribution of proceeds from the Sale of the Real Estate and proceeds from the Debtors' estates or successors thereto in accordance with **Schedule 3(b)**, except to the extent such rights and claims expressly survive the full satisfaction of the borrowers' and guarantors' obligations under the CONA Documents by the terms thereof.

26. **January 2018 Transactions Professionals**.  **[REDACTED]**

27. **Employment Preserved Action**.  **[REDACTED]**

28. **Further Assurances and Cooperation.**  The Parties, following entry of the Approval Order, agree to promptly execute, acknowledge and deliver any and all such documents and instruments and perform any and all such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court, from time to time, to effectuate the transactions contemplated hereby, to implement this MOU and to carry out the purpose and intent of this MOU, including, without limitation, any document, instrument or direction reasonably required by the Third Party Escrow Agent.  Without limitation of the foregoing, (i) Tenet and each of the MBNF Parties shall provide the Debtors with reasonable and prompt assistance and cooperation, if requested, in connection with the HPP Notes, CCH's interest in HPP and documentation related thereto; (ii) the Debtors shall use commercially reasonable efforts to cause the MBNF Individuals to be removed as authorized officers, officials, or delegated officials for all Debtor entities in any regulatory, billing, or claims processing register,

including, without limitation, any Medicare number registrations, the Medicare Provider Enrollment, Chain, and Ownership System, and Centers for Medicare and Medicaid Services profile; and (iii) the MBNF Parties shall instruct Wells Fargo Bank, N.A. to remove Joel Freedman, Stella Freedman, Kyle Schmidt, Steve Blake and William Brinkman as a Company Administrator for the Debtors' bank accounts.

29. **Construction and Severability.**  The captions and headings herein are solely for the convenience of the Parties and do not form a substantive part of this MOU.  Whenever the singular number is used in this MOU and when required by the context, the same shall include the plural, and vice versa, where applicable.  Whenever the masculine gender is used the reference shall include the feminine and neuter genders, and vice versa.  If any material term or other provision of this MOU is finally held by the Bankruptcy Court or appellate court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of law or public policy: (i) said term or other provision shall be enforced to the maximum extent allowed and/or construed in order to effect the intent of the Parties as closely as possible; and (ii) all other conditions and provisions of this MOU not otherwise affected shall nevertheless remain in full force and effect, it being understood that all Releases contained in Section 14, all payment terms contained in Sections 2, 4, 6, 10, and 11, and the provisions of Sections 3, 16 and 22 hereof are material terms.

30. **Entire Agreement.**  Other than the agreement among MBNF Equity Buyer LLC, MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation, the members of MBNF and other parties party thereto (together with all schedules, exhibits and attachments thereto, the "**MBNF Equity Buyer Agreement**"), which, for the avoidance of doubt, shall be binding only among the parties thereto, this MOU and the Exhibits and Schedules hereto constitutes the entire agreement and understanding among the Parties with respect to the matters addressed herein and supersedes all prior agreements and understandings, oral or written, among the Parties with respect to the subject matter hereof.

31. **Reliance.**  In executing this MOU, other than as set forth in the MBNF Equity Buyer Agreement, which, for the avoidance of doubt, shall be binding only among the parties thereto, each Party relied solely on the statements expressly set forth herein, and has placed no reliance whatsoever on any statement, representation, or promise of any other Party, or any other Person, not expressly set forth herein, or upon the failure of any other Party, or any other Person to make any statement, representation or disclosure of anything whatsoever.  The discovery by any Party, subsequent to the execution of this MOU, of any facts, events, transactions, actions or omissions not heretofore known to that Party, or that the facts, events, transactions, actions or omissions or law upon which any Party relied in executing this MOU was not as that Party believed it to be (other than as expressly set forth herein), shall not constitute grounds for declaring this MOU void, voidable, or otherwise unenforceable.  This Section is intended by the Parties to preclude any claim that any Party was induced to enter this MOU by a mistake of fact or law.

32. **Choice of Law.**  THIS MOU IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this MOU in the Bankruptcy Court, and solely in connection with claims arising under this MOU: (a) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court; (b) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (c) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party hereto.  Each Party agrees, at the request of another Party, other than as set forth in Section 52 herein, to consider in good faith and without unreasonable delay, exercising its reasonable business judgment, such other Party's request to engage in confidential mediation of any claim arising under this MOU.

33. **Execution of MOU.**  This MOU may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.  Except as may be expressly provided in this MOU, each individual executing this MOU on behalf of a Party represents and warrants that he/she has been duly authorized and empowered to execute and deliver this MOU on behalf of said Party.

34. **Rules of Interpretation.**  No Party shall be deemed the drafter of this MOU.  This MOU is the product of negotiations among the MBNF Parties and the Non-MBNF Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this MOU, or any portion hereof, shall not be effective in regard to the interpretation hereof.  Each Party was represented by counsel during the negotiation and drafting of this MOU and continues to be represented by counsel.

35. **Waiver.**  No negotiations relating to the MOU shall be admissible into evidence in any proceeding other than a proceeding to (i) obtain approval of the MOU, (ii) obtain confirmation of the Plan, (iii) to enforce the MOU, or (iv) recover the payment of damages to which a Party may be entitled under this MOU.

36. **Specific Performance.**  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this MOU by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy

of any such breach, including an order of the Bankruptcy Court requiring any Party to comply promptly and specifically with any of its obligations hereunder.

37. **Several, Not Joint, Claims.**  Except where otherwise specified, the agreements and obligations of the Parties under this MOU are, in all respects, several and not joint except each of the Debtors and Debtors' Subsidiaries shall be jointly and severally liable for all payment obligations of any of the Debtors or the Debtors' Subsidiaries set forth in this MOU.

38. **Remedies Cumulative.**  All rights, powers, and remedies provided under this MOU or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

39. **Mutual Non-Disparagement.**  Subject to applicable law, each of the Parties covenants and agrees that neither it nor any of its Representatives, shall, with respect to the subject matter of this MOU and any Released Claim, in any way publicly criticize, disparage, call into disrepute, or otherwise defame or slander the other Parties or the Parties' businesses, products, operations, or services, as applicable, in any manner that would reasonably be expected to damage the business or reputation of such other Parties, their businesses, products, operations, or services or their Representatives, as applicable.  This Section of the MOU shall not limit the ability of any Party or its Representative to act in accordance with his or her fiduciary duties or otherwise in accordance with applicable law. Notwithstanding the foregoing, nothing in this Section of this MOU shall be deemed to prohibit responses to any question or inquiry for information when required by legal process or to prevent any Party from complying with a request for information from any Governmental Authority with jurisdiction over the Party from whom information is sought; provided, that, solely in the case of any such disclosure that is proposed or required to appear in any required disclosure relating thereto, such Party must provide prompt written notice (email shall suffice), to the extent legally permissible and practicable under the circumstances, to the other Party prior to making any such public disclosure and reasonably consider any comments of such other Party.  For the avoidance of any doubt, this Section of the MOU shall not preclude any Party from exercising remedies pursuant to this MOU with respect to any disputes under this MOU that arise subsequent to entry of the Approval Order.  None of the Parties shall issue any press release regarding the MOU or the transactions contemplated hereunder, unless such press release is in a form reasonably acceptable to each of the Debtors, the Committee, the MBNF Parties, Tenet, Conifer and the HSRE Entities.

40. **No Admissions.**  This MOU is intended to compromise disputes and to avoid further litigation and motions practice.  Nothing in this MOU, nor any actions taken by or failure to act by any Party in furtherance of this MOU, shall be construed as an admission of liability, wrongdoing, or violation of rule or law on the part of the Debtors, the Debtors' Subsidiaries, the Committee, Tenet, Conifer, the MBNF Parties, the HSRE Entities or the CONA Parties, and each such Party expressly denies and disputes any such liability, wrongdoing, or violation of rule or law.  Each Party expressly denies any and all liability

or wrongdoing with respect to the claims or allegations described in any legal proceedings or any notices, letters, pleadings, or other documents or records described in this MOU, including, without limitation, the matters to be dismissed with prejudice described in Section 15 hereof.

41. **Attorneys' Fees**.  Each Party agrees that it is responsible for the payment of its own attorneys' and other advisors' fees, expenses, and costs associated with or arising out of the legal proceedings described in this MOU and/or the negotiation and execution of this MOU. In the event that following the MOU Implementation Date any Party should bring any action, suit, or other proceeding on any Released Claim, or contesting the validity of this MOU, or attempting to enforce the terms and provisions of this MOU, or to obtain any remedy or relief for any breach of this MOU, or to rescind, engage, modify, or reform this MOU or any of the terms or provisions hereof, the prevailing Party shall recover such Party's reasonable attorneys' fees incurred in each and every such action, suit, or other proceeding, including any and all appeals or petitions therefrom.

42. **Recitals; Exhibits and Schedules.**  All of the recitals set forth herein and the exhibits and schedules attached to this MOU are material and integral parts hereof and are hereby incorporated by reference as part of this MOU.

43. **Notices.**  Except as otherwise provided in this MOU, all notices required by or permitted in this MOU shall be in writing and shall be served on the Parties and their counsel at the addresses specified below.  Any such notices shall be either (i) sent by overnight delivery using a nationally recognized overnight courier, in which case notice shall be deemed delivered one (1) business day after deposit with such courier; (ii) sent by electronic mail, in which case notice shall be deemed delivered upon successful transmission of such notice; (iii) sent by personal delivery, in which case notice shall be deemed delivered upon receipt; or (iv) sent by United States mail, in which case notice shall be deemed delivered with five (5) business days of mailing.  A Party's or its counsel's address may be changed by written notice to the other Party and its counsel and shall be deemed delivered and effective in accordance with the same delivery method used and that method's corresponding deemed delivery schedule described above.  Notices delivered by counsel for a Party shall be deemed notices given by such Party.

If to the Debtors and/or Debtors' Subsidiaries:

| | | |
|---|---|---|
| Saul Ewing Arnstein & Lehr LLP | | Saul Ewing Arnstein & Lehr LLP |
| 1201 N. Market Street, Suite 2300 | | Centre Square West |
| P.O. Box 1266 | | 1500 Market Street, 38th Floor |
| Wilmington, DE 19899 | | Philadelphia, PA 19102 |
| Attn:  Mark Minuti | -and- | Attn:  Jeffrey C. Hampton and |
| *Telephone*: (302) 421-6800 | | Adam H. Isenberg |
| *Email*:  mark.minuti@saul.com | | *Telephone*:  (215) 972-7777 |
| | | *Email*:  jeffrey.hampton@saul.com |
| | | adam.isenberg@saul.com |

39895352

If to the Committee:

Fox Rothschild LLP
919 N. Market St.
Suite 300
Wilmington, DE 19899-2323
Attn:  Seth A. Niederman
*Telephone*:  (302) 622-4238
*Email*: SNiederman@foxrothschild.com

-and-

Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102
Attn: Andrew H. Sherman and
        Boris I. Mankovetskiy
*Telephone*:  (973) 643-7000
*Email*: asherman@sillscummis.com
bmankovetskiy@sillscummis.com

If to the MBNF Parties:

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attn:  Suzzanne Uhland, TJ Li, and
        Alexandra M. Zablocki
*Telephone*:  (212) 906-1200
*Email*: suzzanne.uhland@lw.com
        tj.li@lw.com
        alexandra.zablocki@lw.com

-and-

Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Attn: Mark D. Collins,
        Michael J. Merchant, and
        Brendan J. Schlauch
*Telephone*:  (302) 651-7700
*Email*: collins@rlf.com
        merchant@rlf.com
        schlauch@rlf.com

If to the HSRE Entities:

Brian Mutchler and Lauren Brabeck
HSRE Entities
444 West Lake Street, Suite 2100
Chicago, IL 60606
*Telephone*: (312) 920-5000
*Email*: bmutchler@harrisonst.com
lbrabeck@harrisonst.com

-and-

DLA Piper LLP (US)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Attn:  Stuart M. Brown
*Telephone*: (302) 468-5700
*Email*: stuart.brown@us.dlapiper.com

DLA Piper LLP (US)
One Liberty Place
1650 Market Street
Suite 5000
Philadelphia, PA 19103
Attn:  Joseph Kernen
*Telephone*:  (215) 656-3345
*Email*:  joseph.kernen@dlapiper.com

39895352

DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
Attn:  Richard A. Chesley
*Telephone*:  (312) 368-4000
*Email*:  richard.chesley@us.dlapiper.com

If to Tenet and/or Conifer:

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attn: Stephen C. Hackney and
    Kent J. Hayden
*Telephone*:  (312) 862-2000
*Email*: stephen.hackney@kirkland.com
    kent.hayden@kirkland.com

-and-

Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Attn:  Laura Davis Jones and
    Timothy P. Cairns
*Telephone*:  (302) 652-4100
*Email*:  ljones@pszjlaw.com
    tcairns@pszjlaw.com

If to the CONA Parties:

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Attn: Louis A. Curcio
*Telephone*: (212) 521-5400
*Email*:  lcurcio@reedsmith.com

If to MBNF Liquidator LLC, MBNF Parent 1 Corporation, MBNF Parent 2 Corporation or MBNF Equity Buyer LLC:

Seward & Kissel LLP
One Battery Park Plaza
New York, NY 10004
Attn: John R. Ashmead and
    Ross Hooper
*Telephone*:  (212) 574-1366
*Email*: ashmead@sewkis.com
hooper@sewkis.com

If to PAHS Holdco LLC or PAHS Equity Buyer:

SM Law PC
Post Office Box 530
Oldwick, NJ 08858
Attn: Steven J. Mitnick, Esq. and Marc D. Miceli, Esq.
*Telephone*: (908) 572-7275
*Email*: smitnick@sm-lawpc.com and mmiceli@sm-lawpc.com

44. **Binding Effect.**  Upon the MOU Implementation Date, this MOU shall be binding upon, shall inure to the benefit of, and shall be enforceable by, each of the Parties, their respective Affiliates and their respective Representatives, regardless of whether such Affiliates or such Representatives are signatories to this MOU.

45. **Covenant Enforceability.**  The covenants set forth in this MOU that create obligations arising on or after the MOU Implementation Date shall survive the MOU Implementation Date; provided that such covenants may not be enforced by a Party that is in material breach of its obligations hereunder as determined by the Bankruptcy Court.

46. **Adjustment to Claim Registry**.  Promptly after the filing of the MOU Release Notice, Omni Agent Solutions, the official claims agent in the Debtors' Chapter 11 Cases shall be directed by the Debtors to update and modify the official claims register consistent with the terms of this MOU. Omni Agent Solutions shall adjust the official claims register to mark as "withdrawn" all MBNF Debtor Claims and all HSRE Debtor Claims and shall modify any other filed or scheduled MBNF Debtor Claims and HSRE Debtor Claims consistent with this MOU, including, but not limited to, as set forth on **Schedule 46** attached hereto.

47. **Notices, Etc**.  Each of the MBNF Parties, Sonsara Management Services, LLC, Jigsaw Advisors, LLC, MBNF Equity Buyer LLC, MBNF Liquidator LLC, MBNF Parent 1 Corporation and MBNF Parent 2 Corporation shall promptly forward to the Debtors, at the addresses listed in Section 43 of this MOU, all written notices, written correspondence and electronically transcribed voicemail messages they receive, whether delivered electronically or otherwise, and including all enclosures, attachments and accompanying materials, on and after the Execution Date (and, for the avoidance of doubt, on and after the MOU Implementation Date) regarding or relating to the Real Estate or any other Assets set forth on **Schedule 3(a)(vi)**.

48. **Turnover**.  Each Party shall hold in trust any property received by such Party on or after the MOU Implementation Date that constitutes property of another Party and shall promptly turn over such property to the appropriate Party.  For the avoidance of doubt, payments received by the Parties that are not inconsistent with the terms of this MOU shall be considered the property of the recipient and shall not be subject to turnover.

49. **Limited Joinder.**  Each of the Broad Street Lenders is a signatory to this MOU solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, 29 through 45, and only with respect to the Broad Street Lenders described therein, Section 47.

50. **Notice of Occurrence of MOU Implementation Date**.  Upon the occurrence of the MOU Implementation Date, the Debtors shall file with the Bankruptcy Court in the Chapter 11 Cases a certification of the Debtors, the Committee, the MBNF Parties, the HSRE Entities, the CONA Parties and Tenet of such occurrence (the "**MOU Implementation Date Certification**") and serve such certification upon the Third Party Escrow Agent and each of the Parties on the Debtors' Bankruptcy Rule 2002 Notice List.  Such certification shall be in a form reasonably acceptable to the Debtors, the MBNF Parties, the HSRE Entities, the CONA Parties, Tenet, and the Committee.  The Approval Order shall provide that the Third Party Escrow Agent may rely: (i) on the MOU Implementation Date Certification without liability to any Party; and (ii) upon the MBNF Direction Letter.

51. **MBNF Direction Letter**.  On or before the MOU Implementation Date, the MBNF Parties shall provide the Third Party Escrow Agent with a written notice in the form reasonably acceptable to the Third Party Escrow Agent, including wire transfer instructions, specifying the allocation of the payments set forth Sections 6, 10 and 11, and as further described in Section 3(a)(ii), including without limitation, for full and final satisfaction of the secured obligations under the Broad Street Notes, the Broad Street Mortgages, the Broad Street UCC Fixture Filings, all UCC-1 filings by any of the MBNF Parties against any of the Broad Street PropCos and/or their assets securing the Broad Street Notes, and all other liens granted in connection with the Broad Street Notes (the "**MBNF Direction Letter**").   The MBNF Direction Letter shall, among other things, direct the Third Party Escrow Agent to disburse (i) the Tenet Paladin Settlement Payment to Paladin and PAHH, as set forth therein; and (ii) the Withdrawal Liability Settlement Payment to the Pension Fund.

52. **MOU Release Notice**.  Upon the completion of the actions set forth in Sections 3(a)(i) – 3(a)(v), 3(a)(vi)(a), 3(a)(viii), 3(a)(x)(b), 3(a)(x)(d) – 3(a)(xviii) and 9(a), inclusive, as determined in good faith by the Debtors, the Committee, the MBNF Parties, the HSRE Entities, the CONA Parties and Tenet (the "**Release Certifying Parties**"), the Debtors shall file with the Bankruptcy Court in the Chapter 11 Cases a certification of the Release Certifying Parties of the completion of all such actions (the "**MOU Release Notice**") and serve such certification upon the Third Party Escrow Agent and each of the Parties on the Debtors' Bankruptcy Rule 2002 Notice List.  Such certification shall be effective at the time filed and be in a form reasonably acceptable to the Release Certifying Parties.

If any of the Release Certifying Parties dispute whether the actions set forth in Sections 3(a)(i) – 3(a)(v), 3(a)(vi)(a), 3(a)(viii), 3(a)(x)(b), 3(a)(x)(d) – 3(a)(xviii) and/or 9(a) have been completed, the Release Certifying Parties hereby consent to (a) an immediate consensual mediation to be conducted by, and in such manner as determined by, The Honorable Kevin J. Carey (ret.), whose recommendation, absent resolution of the dispute, shall be immediately submitted to the Bankruptcy Court; and, if necessary (b) an expedited hearing before the Bankruptcy Court to determine the sole question of whether such action(s) in dispute have been completed; it being understood that each of the Release Certifying Parties shall preserve its right to seek reconsideration and to appeal the Bankruptcy Court's determination. If the Bankruptcy Court determines that all such actions have been completed, the Release Certifying Parties agree that an order shall be submitted and entered by the Bankruptcy Court, which order will include a waiver of the stay set forth in Federal Rule of Bankruptcy Procedure 6004(h), directing that the MOU Release Notice

39895352

shall be filed immediately upon the Bankruptcy Court's determination becoming effective (with or without the signatures of the disputing Release Certifying Parties) and deemed valid, provided, however, that the Release Certifying Parties reserve the right to seek a stay of any such order. Any prevailing Release Certifying Parties in any proceeding described in this paragraph shall recover from any non-prevailing Release Certifying Parties their reasonable costs and attorneys' fees.

[*Remainder of This Page Intentionally Left Blank; Signature Pages Follow*]

39895352

IN WITNESS WHEREOF, the Parties hereto have caused this MOU to be executed by their duly authorized representatives as of the Execution Date.

**Center City Healthcare, LLC**

By: _____

Name: Allen Wilen

Title: CRO

**Philadelphia Academic Health System, LLC**

By: _____

Name: Allen Wilen

Title: CRO

**St. Christopher's Healthcare, LLC**

By: _____

Name: Allen Wilen

Title: CRO

**Philadelphia Academic Medical Associates, LLC**

By: _____

Name: Allen Wilen

Title: CRO

**HPS of PA, L.L.C.**

By: _____

Name: Allen Wilen

Title: CRO

**SCHC Pediatric Associates, L.L.C.**

By: _____

Name: Allen Wilen

Title: CRO

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**St. Christopher's Pediatric Urgent Care Center, L.L.C.**

By: _____
    Name: Allen Wiles
    Title: CRO

**SCHC Pediatric Anesthesia Associates, L.L.C**

By: _____
    Name: Allen Wiles
    Title: CRO

**StChris Care at Northeast Pediatrics, L.L.C.**

By: _____
    Name: Allen Wiles
    Title: CRO

**TPS of PA, L.L.C**

By: _____
    Name: Allen Wiles
    Title: CRO

**TPS II of PA, L.L.C.**

By: _____
    Name: Allen Wiles
    Title: CRO

**TPS III of PA, L.L.C.**

By: _____
    Name: Allen Wiles
    Title: CRO

Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties

**TPS IV of PA, L.L.C.**

By: _____

Name: Allen Wiler

Title: CRO

**TPS V of PA, L.L.C.**

By: _____

Name: Allen Wiler

Title: CRO

**Physicians Clinical Network, LLC**

By: _____

Name: Allen Wiler

Title: CRO

**Physician Performace Network of Philadelphia, L.L.C.**

By: _____

Name: Allen Wiler

Title: CRO

**PAHS Equity Buyer, Inc.**

By: _____

Name:

Title:

**PAHS Holdco, LLC**

By: _____

Name:

Title:

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**TPS IV of PA, L.L.C.**

By:_____
    Name:
    Title:

**TPS V of PA, L.L.C.**

By:_____
    Name:
    Title:

**Physicians Clinical Network, LLC**

By:_____
    Name:
    Title:

**Physician Performance Network of Philadelphia, L.L.C.**

By:_____
    Name:
    Title:

**PAHS Equity Buyer, Inc.**

By:_____
    Name: Steven Mitnick
    Title: President

**PAHS Holdco, LLC**

By:_____
    Name: Steven Mitnick
    Title: President

**TPS V of PA, L.L.C.**

By:_____
      Name:
      Title:


**Physicians Clinical Network, LLC**

By:_____
      Name:
      Title:


**Physician Performance Network of Philadelphia, L.L.C.**

By:_____ _____
      Name:
      Title:


**PAHS Equity Buyer, Inc.**

By:_____
      Name:
      Title:


**PAHS Holdco, LLC**

By:_____
      Name:
      Title:


**Official Committee of Unsecured Creditors of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, et al.**

By:_____
Name: Andrew H. Sherman, Esq.
        Sills Cummis & Gross P.C.
        One Riverfront Plaza

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**Capital One, N.A.**

By: _Michael Gardullo_

Name: Michael Gardullo

Title: Duly Authorized Signatory

**Cadence Bank**

By: _____

Name:

Title:

**Column Financial Inc.**

By: _____

Name:

Title:

**Sector Financial Inc.**

By: _____

Name:

Title:

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**Capital One, N.A.**

By:_____

    Name:

    Title:

**Cadence Bank**

By:_____

    Name: MICHAEL R. MOERS

    Title: S.V.P.

**Column Financial Inc.**

By:_____

    Name:

    Title:

**Sector Financial Inc.**

By:_____

    Name:

    Title:

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**Capital One, N.A.**

By:_____
　　Name:
　　Title:

**Cadence Bank**

By:_____
　　Name:
　　Title:

**Column Financial, Inc.**

By:_____
　　Name: David Tlusty
　　Title: Authorized Signatory

**Sector Financial Inc.**

By:_____
　　Name:
　　Title:

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**Capital One, N.A.**

By:_____
    Name:
    Title:

**Cadence Bank**

By:_____
    Name:
    Title:

**Column Financial, Inc.**

By:_____
    Name:
    Title:

**Sector Financial Inc.**

By: *Todd Gordon*
    Name: *Todd Gordon*
    Title: *Authorized Signor*

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**Conifer Health Solutions LLC**

By: *Roger Davis*

Name: Roger Davis

Title: President and Chief Executive Officer

**Conifer Revenue Cycle Solutions, LLC**

By: *Roger Davis*

Name: Roger Davis

Title: President and Chief Executive Officer

**Tenet Healthcare Corporation**

By: _____

Name: Michael T. Maloney

Title: Vice President

**Tenet Business Services Corporation**

By: _____

Name: Michael T. Maloney

Title: Vice President

**Tenet Healthsystem Hahnemann, L.L.C.**

By: _____

Name: Michael T. Maloney

Title: Vice President

**Tenet Healthsystem St. Christopher's Hospital For Children, L.L.C.**

By: _____

Name: Michael T. Maloney

Title: Vice President

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**Harrison Street Real Estate, LLC**

By:_____
    Name:  Stephen M. Gordon
    Title:  Authorized Signatory

**HSREP VI Holding, LLC**

By:_____
    Name:  Stephen M. Gordon
    Title:  Authorized Signatory

**HSRE-PAHH I, LLC**

By:_____
    Name:  Stephen M. Gordon
    Title:  Authorized Signatory

**HSRE-PAHH IA, LLC**

By:_____
    Name:  Stephen M. Gordon
    Title:  Authorized Signatory

**PAHH New College MOB, LLC**

By:_____
    Name:  Stephen M. Gordon
    Title:  Authorized Signatory

**PAHH Bellet MOB, LLC**

By:_____
    Name:  Stephen M. Gordon
    Title:  Authorized Signatory

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**PAHH Broad Street MOB, LLC**

By: _____
     Name:  Stephen M. Gordon
     Title:  Authorized Signatory

**PAHH Feinstein MOB, LLC**

By: _____
     Name:  Stephen M. Gordon
     Title:  Authorized Signatory

**PAHH Wood Street Garage, LLC**

By: _____
     Name:  Stephen M. Gordon
     Title:  Authorized Signatory

**PAHH Erie Street Garage, LLC**

By: _____
     Name:  Stephen M. Gordon
     Title:  Authorized Signatory

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

MBNF Investments, LLC

By: _____
Name: Joel Freedman
Title: President

American Academic Health System, LLC

By: _____
Name: Joel Freedman
Title: Chief Executive Officer

Philadelphia Academic Health Holdings, LLC

By: _____
Name: Joel Freedman
Title: CEO & President

Front Street Healthcare Properties, LLC

By: _____
Name: Joel Freedman
Title: CEO & President

Front Street Healthcare Properties II, LLC

By: _____
Name: Joel Freedman
Title: CEO & President

Broad Street Healthcare Properties, LLC

By: _____
Name: Joel Freedman
Title: CEO & President

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**Broad Street Healthcare Properties II, LLC**

By: _____
    Name: Joel Freedman
    Title: CEO ; President

**Broad Street Healthcare Properties III, LLC**

By: _____
    Name: Joel Freedman
    Title: CEO ; President

**Philadelphia Academic Risk Retention Group, LLC**

By: _____
    Name: Joel Freedman
    Title: CEO ; President

**MBNF Equity Buyer LLC**

By: _____
    Name:
    Title:

**MBNF Liquidator LLC**

By: _____
    Name:
    Title:

**MBNF Parent 1 Corporation**

By: _____
    Name:
    Title:

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**Broad Street Healthcare Properties II, LLC**

By:_____
     Name:
     Title:

**Broad Street Healthcare Properties III, LLC**

By:_____
     Name:
     Title:

**Philadelphia Academic Risk Retention Group, LLC**

By:_____
     Name:
     Title:

**MBNF Equity Buyer LLC**

By:_____
     Name: Timothy Daileader
     Title: Authorized Signatory

**MBNF Liquidator LLC**

By:_____
     Name: Timothy Daileader
     Title: Authorized Signatory

**MBNF Parent 1 Corporation**

By:_____
     Name: Timothy Daileader
     Title: Authorized Signatory

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

**MBNF Parent 2 Corporation**

By: _____

Name:  Timothy Daileader

Title:  Authorized Signatory

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

_____

Joel Freedman

_____

Stella Freedman

_____

Svetlana Attestatova

_____

Kyle Schmidt

**Paladin Healthcare Capital, LLC**

By: _____

    Name: Joel Freedman
    Title: Chief Executive Officer

**Paladin Healthcare Management, LLC**

By: _____

    Name: Joel Freedman
    Title: Manager

**Globe Health Foundation, Inc.**

By: _____

    Name: Joel Freedman
    Title: Chairman & Treasurer

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

_____
**Joel Freedman**

_____
**Stella Freedman**

_____
**Svetlana Attestatova**

_____
**Kyle Schmidt**

**Paladin Healthcare Capital, LLC**

By:_____
    Name:
    Title:  Chief Executive Officer

**Paladin Healthcare Management, LLC**

By:_____
    Name:
    Title: Chief Executive Officer

**Globe Health Foundation, Inc.**

By:_____
    Name:
    Title:  Treasurer

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

_____

**Joel Freedman**


_____

**Stella Freedman**

_____

**Svetlana Attestatova**


_____

**Kyle Schmidt**


**Paladin Healthcare Capital, LLC**

By:_____
    Name:
    Title:


**Paladin Healthcare Management, LLC**

By:_____
    Name:
    Title:


**Globe Health Foundation, Inc.**

By:_____
    Name:
    Title:

Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter
Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE
Entities And CONA Parties

_____

**Joel Freedman**


_____

**Stella Freedman**


_____

**Svetlana Attestatova**


*Kyle Schmidt*

**Kyle Schmidt**


**Paladin Healthcare Capital, LLC**

By:_____
    Name:
    Title:


**Paladin Healthcare Management, LLC**

By:_____
    Name:
    Title:


**Globe Health Foundation, Inc.**

By:_____
    Name:
    Title:

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

Solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, and 29 through 45

**Latham & Watkins LLP**

_____
Suzzanne Uhland
Partner
1271 Avenue of the Americas
New York, NY 10020

Solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, 29 through 45 and 47

**Jigsaw Advisors, LLC**

By:_____
    Name:
    Title:

Solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, 29 through 45 and 47

**Sonsara Management Services, LLC**

By:_____
    Name:
    Title:

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

Solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, and 29 through 45

**Latham & Watkins LLP**

_____

Suzzanne Uhland
Partner
1271 Avenue of the Americas
New York, NY 10020

Solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, 29 through 45 and 47

**Jigsaw Advisors, LLC**

By: _____
Name: WILLIAM R. BRINKMAN
Title: PRINCIPAL

Solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, 29 through 45 and 47

**Sonsara Management Services, LLC**

By: _____
Name:
Title:

**Signature Page For Memorandum Of Understanding RE Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities And CONA Parties**

Solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, and 29 through 45

**Latham & Watkins LLP**

_____

Suzzanne Uhland
Partner
1271 Avenue of the Americas
New York, NY 10020

Solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, 29 through 45 and 47

**Jigsaw Advisors, LLC**

By:_____
    Name:
    Title:

Solely for the purposes of Sections 14(b), 14(c), 14(j), 14(m), 14(p), 16, 25, 28, 29 through 45 and 47

**Sonsara Management Services, LLC**

By:_____
    Name: SVETLANA ATTESTATOVA
    Title: PRESIDENT

### List of Schedules and Exhibits

Schedule A – Broad Street UCC Fixture Filings

Schedule B – HSRE Debtor Claims

Schedule C – MBNF Debtor Claims

Schedule D – Real Estate Legal Description

Schedule 3(a)(iii) – List of Documents originals of which are attached as Exhibit 3(a)(iii)

Schedule 3(a)(vi) – Broad PropCos' Assets to be Substantively Consolidated with CCH

Schedule 3(a)(vii) – Broad PropCos' Liabilities to be Substantively Consolidated with CCH

Schedule 3(a)(viii) – Amended PAHS Loan Documents

Schedule 3(b) – Real Estate Management and Marketing Procedures

Schedule 14(o) – Insurance Carriers and Policies

Schedule 46 – Adjustment to Claims Registry

Exhibit 2(a) – RRG Members Dissolution Resolutions

Exhibit 2(b) – RRG Board Dissolution Resolutions

Exhibit 2(c) – RRG Voluntary Dissociation of Membership Interest

Exhibit 2(d) – RRG Written Resignations

Exhibit 2(e) – RRG Member and Board Resolutions

Exhibit 2(f) – RRG Stipulation Declaration

Exhibit 3(a)(iii) – Original Documents to be released by Third Party Escrow Agent for Recordation / Filing (Broad Street Notes Etc.)

Exhibit 3(a)(v) – PAHH Assignment and Assumption Agreement

Exhibit 3(a)(vi) – Powers of Attorney

Exhibit 3(a)(viii)(A) – PAHS Loan Assignment, Assumption and Novation Agreement

Exhibit 3(a)(viii)(B) – Amended PAHS Loan Documents

39895352

Exhibit 3(a)(x) – Merger Agreements

Exhibit 3(a)(xiii) – MBNF Limited Liability Company Interests Purchase Agreement

Exhibit 3(a)(xiv) – HSRE-PAHH Note Assignment, Assumption and Novation Agreement

Exhibit 3(a)(xv) – PAHH Limited Liability Company Interests Purchase Agreement

Exhibit 3(a)(xvii) – PAHS Limited Liability Company Interests Purchase Agreement

Exhibit 5 – Debtors' Resignations

Exhibit 9 – Escrowed Funds Release Authorization

Exhibit 12 – ASIC Bond Joint Authorization

Exhibit 14(o)(i) – Form of Notice to Insurance Carriers (MBNF Parties' Policies)

Exhibit 14(o)(ii) – Form of Notice to Insurance Carriers (Debtors' Policies)

**SCHEDULE A**

**Broad Street UCC Fixture Filings**

| Debtor | Recorded in | Filing # | Filing Date |
|---|---|---|---|
| Broad Street Healthcare Properties, LLC | Philadelphia County Recorder | 53618498 | January 14, 2020 |
| Broad Street Healthcare Properties II, LLC | Philadelphia County Recorder | 53618499 | January 14, 2020 |
| Broad Street Healthcare Properties III, LLC | Philadelphia County Recorder | 53618500 | January 14, 2020 |
| Broad Street Healthcare Properties, LLC | Philadelphia County Recorder | 53897043 | October 28, 2021 |
| Broad Street Healthcare Properties II, LLC | Philadelphia County Recorder | 53897044 | October 28, 2021 |
| Broad Street Healthcare Properties III, LLC | Philadelphia County Recorder | 53897045 | October 28, 2021 |
| Broad Street Healthcare Properties, LLC | Philadelphia County Recorder | 53897046 | October 28, 2021 |
| Broad Street Healthcare Properties II, LLC | Philadelphia County Recorder | 53897047 | October 28, 2021 |
| Broad Street Healthcare Properties III, LLC | Philadelphia County Recorder | 53897048 | October 28, 2021 |

39895352

**Schedule B**
**HSRE Debtor Claims**

SCHEDULE B

## SCHEDULE B – HSRE DEBTOR CLAIMS

| Claim No. | Debtor | Creditor Name | Claim Amount |
|---|---|---|---|
| 609 | Center City Healthcare, LLC | PAHH Wood Street Garage LLC | Unliquidated |
| 613 | Center City Healthcare, LLC | PAHH New College MOB LLC | Unliquidated |
| 623 | Center City Healthcare, LLC | PAHH Feinstein MOB LLC | Unliquidated |
| 645 | Center City Healthcare, LLC | PAHH Erie Street Garage LLC | Unliquidated |
| 646 | Center City Healthcare, LLC | PAHH Broad Street MOB LLC | Unliquidated |
| 651 | Center City Healthcare, LLC | PAHH Bellet MOB LLC | Unliquidated |
| 99 | Philadelphia Academic Health System, LLC | PAHH Wood Street Garage LLC | Unliquidated |
| 100 | Philadelphia Academic Health System, LLC | PAHH New College MOB LLC | Unliquidated |
| 101 | Philadelphia Academic Health System, LLC | PAHH Feinstein MOB LLC | Unliquidated |
| 103 | Philadelphia Academic Health System, LLC | PAHH Erie Street Garage LLC | Unliquidated |
| 104 | Philadelphia Academic Health System, LLC | PAHH Broad Street MOB LLC | Unliquidated |
| 106 | Philadelphia Academic Health System, LLC | PAHH Bellet MOB LLC | Unliquidated |
| 5 | Philadelphia Academic Medical Associates, LLC | PAHH Wood Street Garage LLC | Unliquidated |
| 6 | Philadelphia Academic Medical Associates, LLC | PAHH New College MOB LLC | Unliquidated |
| 7 | Philadelphia Academic Medical Associates, LLC | PAHH Feinstein MOB LLC | Unliquidated |
| 8 | Philadelphia Academic Medical Associates, LLC | PAHH Erie Street Garage LLC | Unliquidated |
| 9 | Philadelphia Academic Medical Associates, LLC | PAHH Broad Street MOB LLC | Unliquidated |
| 10 | Philadelphia Academic Medical Associates, LLC | PAHH Bellet MOB LLC | Unliquidated |
| 166 | St. Christopher's Healthcare, LLC | PAHH Bellet MOB, LLC | $46,903,600.20[1] |
| 167 | St. Christopher's Healthcare, LLC | PAHH Broad Street MOB, LLC | $5,542,567.60[2] |
| 168 | St. Christopher's Healthcare, LLC | PAHH Erie Street Garage, LLC | $25,602,145.33[3] |
| 169 | St. Christopher's Healthcare, LLC | PAHH Feinstein MOB, LLC | $78,530,122.53[4] |
| 170 | St. Christopher's Healthcare, LLC | PAHH New College MOB, LLC | $239,420,942.56[5] |
| 171 | St. Christopher's Healthcare, LLC | PAHH Wood Street Garage, LLC | $37,951,713.49[6] |
| 298 | St. Christopher's Healthcare, LLC | PAHH Wood Street Garage LLC | Unliquidated |
| 303 | St. Christopher's Healthcare, LLC | PAHH New College MOB LLC | Unliquidated |
| 315 | St. Christopher's Healthcare, LLC | PAHH Feinstein MOB LLC | Unliquidated |
| 336 | St. Christopher's Healthcare, LLC | PAHH Erie Street Garage LLC | Unliquidated |
| 341 | St. Christopher's Healthcare, LLC | PAHH Broad Street MOB LLC | Unliquidated |
| 344 | St. Christopher's Healthcare, LLC | PAHH Bellet MOB LLC | Unliquidated |
| 4 | HPS of PA, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 5 | HPS of PA, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 6 | HPS of PA, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 7 | HPS of PA, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |
| 8 | HPS of PA, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 9 | HPS of PA, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 10 | HPS of PA, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
| 36 | TPS II of PA, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 37 | TPS II of PA, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 38 | TPS II of PA, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 39 | TPS II of PA, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |

---

[1]    Claim seeks either $46,903,600.20 or the entire $433,951,091.71 identified in the proof of claim as the total amount due.

[2]    Claims seeks either $5,542,567.60 or the entire $433,951,091.71 identified in the proof of claim as the total amount due.

[3]    Claim seeks either $25,602,145.33 or the entire $433,951,091.71 identified in the proof of claim as the total amount.

[4]    Claim seeks either $78,530,122.53 or the entire $433,951,091.71 identified in the proof of claim as the total amount due.

[5]    Claim seeks either $239,420,942.56 or the entire $433,951,091.71 identified in the proof of claim as the total amount due.

[6]    Claims seeks either $37,951,713.49 or the entire $433,951,091.71 identified in the proof of claim as the total amount due.

**SCHEDULE B**

| Claim No. | Debtor | Creditor Name | Claim Amount |
|---|---|---|---|
| 40 | TPS II of PA, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 41 | TPS II of PA, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
| 6 | TPS III of PA, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 7 | TPS III of PA, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 8 | TPS III of PA, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 9 | TPS III of PA, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |
| 10 | TPS III of PA, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 11 | TPS III of PA, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
| 17 | TPS IV of PA, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 18 | TPS IV of PA, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 19 | TPS IV of PA, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 20 | TPS IV of PA, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |
| 21 | TPS IV of PA, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 22 | TPS IV of PA, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
| 28 | SCHC Pediatric Associates, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 29 | SCHC Pediatric Associates, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 30 | SCHC Pediatric Associates, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 31 | SCHC Pediatric Associates, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |
| 32 | SCHC Pediatric Associates, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 33 | SCHC Pediatric Associates, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
| 6 | SCHC Pediatric Anesthesia Associates, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 7 | SCHC Pediatric Anesthesia Associates, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 8 | SCHC Pediatric Anesthesia Associates, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 9 | SCHC Pediatric Anesthesia Associates, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |
| 10 | SCHC Pediatric Anesthesia Associates, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 11 | SCHC Pediatric Anesthesia Associates, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
| 8 | StChris Care at Northeast Pediatrics, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 9 | StChris Care at Northeast Pediatrics, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 10 | StChris Care at Northeast Pediatrics, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 11 | StChris Care at Northeast Pediatrics, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |
| 12 | StChris Care at Northeast Pediatrics, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 13 | StChris Care at Northeast Pediatrics, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
| 3 | TPS of PA, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 4 | TPS of PA, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 5 | TPS of PA, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 6 | TPS of PA, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |
| 7 | TPS of PA, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 8 | TPS of PA, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
| 8 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 9 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 10 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 11 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |
| 12 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |
| 13 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
| 5 | TPS V of PA, L.L.C. | PAHH Wood Street Garage LLC | Unliquidated |
| 6 | TPS V of PA, L.L.C. | PAHH New College MOB LLC | Unliquidated |
| 7 | TPS V of PA, L.L.C. | PAHH Feinstein MOB LLC | Unliquidated |
| 8 | TPS V of PA, L.L.C. | PAHH Erie Street Garage LLC | Unliquidated |
| 9 | TPS V of PA, L.L.C. | PAHH Broad Street MOB LLC | Unliquidated |

**SCHEDULE B**

| 10 | TPS V of PA, L.L.C. | PAHH Bellet MOB LLC | Unliquidated |
|---|---|---|---|
| N/A | Unspecified | PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Feinstein MOB, LLC, PAHH New College, MOB, LLC, PAHH Wood Street Garage, LLC and PAHH Erie Street Garage, LLC | $2.6 million (admin.)[7] |
| N/A | Unspecified | PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Feinstein MOB, LLC, PAHH New College, MOB, LLC, PAHH Wood Street Garage, LLC and PAHH Erie Street Garage, LLC | Undetermined[8] |

---

[7]     Claim allowed by *Order Approving Stipulation Between Debtors and Master Landlords Regarding Rejection of Leases and Allowed Administrative Expense Claim* (Docket no. 1057).

[8]     Claim asserted via *Application of Master Landlords for Entry of an Order Allowing and Directing Payment of Administrative Expense Claim* (Docket no. 1578).

**Schedule C**
**MBNF Debtor Claims**

# SCHEDULE C

## MBNF Debtor Claims

| Case No. | Debtor | Claim No. | Claimant |
|---|---|---|---|
| 19-11466 | Center City Healthcare, LLC, et al. | 1033 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11466 | Center City Healthcare, LLC, et al. | 1040 | Broad Street Healthcare Properties II, LLC |
| 19-11466 | Center City Healthcare, LLC | 1046 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11466 | Center City Healthcare, LLC, et al. | 1048 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11466 | Center City Healthcare, LLC, et al. | 1050 | Broad Street Healthcare Properties II, LLC |
| 19-11466 | Center City Healthcare, LLC, et al. | 1060 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11466 | Center City Healthcare, LLC | 1067 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11466 | Center City Healthcare, LLC, et al. | 1072 | Paladin Healthcare Capital, LLC |
| 19-11466 | Center City Healthcare, LLC, et al. | 1073 | Broad Street Healthcare Properties II, LLC et al |
| 19-11466 | Center City Healthcare, LLC, et al. | 1076 | Philadelphia Academic Health Holdings |
| 19-11466 | Center City Healthcare, LLC, et al. | 1087 | Joel Freedman |
| 19-11466 | Center City Healthcare, LLC | 1074 | Broad Street Healthcare Properties, LLC |
| 19-11466 | Center City Healthcare, LLC | 1075 | Broad Street Healthcare Properties, LLC |
| 19-11467 | Philadelphia Academic Health System, LLC | 158 | MBNF Investments, LLC |
| 19-11467 | Philadelphia Academic Health System, LLC | 159 | American Academic Health System, LLC |
| 19-11467 | Philadelphia Academic Health System, LLC | 160 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11467 | Philadelphia Academic Health System, LLC | 162 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11467 | Philadelphia Academic Health System, LLC | 164 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11467 | Philadelphia Academic Health System, LLC | 165 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11467 | Philadelphia Academic Health System, LLC | 167 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11467 | Philadelphia Academic Health System, LLC | 169 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11467 | Philadelphia Academic Health System, LLC | 171 | Philadelphia Academic Risk Retention Group, LLC |
| 19-11467 | Philadelphia Academic Health System, LLC | 172 | Philadelphia Academic Risk Retention Group, LLC |
| 19-11467 | Philadelphia Academic Health System, LLC | 173 | Paladin Healthcare Capital, LLC |
| 19-11467 | Philadelphia Academic Health System, LLC | 174 | Philadelphia Academic Health Holdings, LLC |
| 19-11467 | Philadelphia Academic Health System, LLC | 175 | Philadelphia Academic Health Holdings, LLC et al |
| 19-11467 | Philadelphia Academic Health System, LLC | 177 | Joel Freedman |
| 19-11467 | Philadelphia Academic Health System, LLC | 178 | Joel Freedman |
| 19-11467 | Philadelphia Academic Health System, LLC | 179 | Joel Freedman, et al. |
| 19-11468 | St. Christopher's Healthcare, LLC | 663 | Broad Street Healthcare Properties II, LLC |
| 19-11468 | St. Christopher's Healthcare, LLC | 672 | Front Street Healthcare Properties II, LLC |
| 19-11468 | St. Christopher's Healthcare, LLC | 673 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11468 | St. Christopher's Healthcare, LLC | 678 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11468 | St. Christopher's Healthcare, LLC | 679 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11468 | St. Christopher's Healthcare, LLC | 682 | Philadelphia Academic Health Holdings, LLC et al. |

1

| | | | |
|---|---|---|---|
| 19-11468 | St. Christopher's Healthcare, LLC | 683 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11468 | St. Christopher's Healthcare, LLC | 686 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11468 | St. Christopher's Healthcare, LLC | 687 | Front Street Healthcare Properties, LLC |
| 19-11468 | St. Christopher's Healthcare, LLC | 688 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11468 | St. Christopher's Healthcare, LLC | 692 | Front Street Healthcare Properties, LLC |
| 19-11468 | St. Christopher's Healthcare, LLC | 695 | Joel Freedman |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 23 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 24 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 25 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 26 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 28 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 30 | Philadelphia Academic Health Holdings, LLC |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 31 | Philadelphia Academic Risk Retention Group, LLC |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 32 | Philadelphia Academic Health Holdings, LLC et. al |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 33 | Joel Freedman |
| 19-11469 | Philadelphia Academic Medical Associates, LLC | 34 | Joel Freedman, et al (see rider) |
| 19-11470 | HPS of PA, L.L.C. | 18 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11470 | HPS of PA, LLC | 19 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11470 | HPS of PA, L.L.C. | 21 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11470 | HPS of PA, L.L.C. | 22 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11470 | HPS of PA, L.L.C. | 23 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11470 | HPS of PA, L.L.C. | 25 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11470 | HPS of PA, L.L.C. | 26 | Joel Freedman |
| 19-11470 | HPS of PA, L.L.C. | 27 | Joel Freedman, et al. |
| 19-11471 | SCHC Pediatric Associates, L.L.C. | 73 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11471 | SCHC Pediatric Associates, L.L.C. | 75 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11471 | SCHC Pediatric Associates, L.L.C. | 77 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11471 | SCHC Pediatric Associates, L.L.C. | 78 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11471 | SCHC Pediatric Associates, L.L.C. | 80 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11471 | SCHC Pediatric Associates, L.L.C. | 82 | Joel Freedman, on behalf of himself and the indemnitees |
| 19-11471 | SCHC Pediatric Associates, L.L.C. | 83 | Joel Freedman, et al (see rider) |
| 19-11471 | SCHC Pediatric Associates, L.L.C. | 71 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11472 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | 24 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11472 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | 25 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11472 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | 26 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11472 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | 27 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11472 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | 28 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11472 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | 30 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11472 | St. Christopher's Pediatric Urgent Care Center, L.L.C | 31 | Joel Freedman, on behalf of himself and the indemnitees |
| 19-11472 | St. Christopher's Pediatric Urgent Care Center, L.L.C. | 32 | Joel Freedman, et al |
| 19-11473 | SCHC Pediatric Anesthesia Associates, L.L.C. | 17 | Philadelphia Academic Health Holdings, LLC et. al. |

| | | | |
|---|---|---|---|
| 19-11473 | SCHC Pediatric Anesthesia Associates, L.L.C. | 18 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11473 | SCHC Pediatric Anesthesia Associates, L.L.C. | 19 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11473 | SCHC Pediatric Anesthesia Associates, L.L.C. | 20 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11473 | SCHC Pediatric Anesthesia Associates, L.L.C. | 21 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11473 | SCHC Pediatric Anesthesia Associates, L.L.C. | 22 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11473 | SCHC Pediatric Anesthesia Associates, L.L.C. | 24 | Joel Freedman, on behalf of himself and the indemnitees |
| 19-11473 | SCHC Pediatric Anesthesia Associates, L.L.C. | 25 | Joel Freedman, et al |
| 19-11474 | StChris Care at Northeast Pediatrics, L.L.C. | 19 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11474 | StChris Care at Northeast Pediatrics, L.L.C. | 20 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11474 | StChris Care at Northeast Pediatrics, L.L.C. | 21 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11474 | StChris Care at Northeast Pediatrics, L.L.C. | 22 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11474 | StChris Care at Northeast Pediatrics, L.L.C. | 23 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11474 | StChris Care at Northeast Pediatrics, L.L.C. | 24 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11474 | StChris Care at Northeast Pediatrics, L.L.C. | 26 | Joel Freedman, on behalf of himself and the indemnitees |
| 19-11474 | StChris Care at Northeast Pediatrics, L.L.C. | 27 | Joel Freedman |
| 19-11475 | TPS of PA, L.L.C. | 18 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11475 | TPS of PA, L.L.C. | 19 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11475 | TPS of PA, L.L.C. | 20 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11475 | TPS of PA, L.L.C. | 21 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11475 | TPS of PA, L.L.C. | 22 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11475 | TPS of PA, L.L.C. | 26 | Joel Freedman, on behalf of himself and the indemnities |
| 19-11475 | TPS of PA, L.L.C. | 27 | Joel Freedman |
| 19-11475 | TPS of PA, L.L.C. | 23 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11475 | TPS of PA, L.L.C. | 24 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11476 | TPS II of PA, L.L.C. | 55 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11476 | TPS II of PA, L.L.C. | 56 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11476 | TPS II of PA, L.L.C. | 57 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11476 | TPS II of PA, L.L.C. | 58 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11476 | TPS II of PA, L.L.C. | 59 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11476 | TPS II of PA, L.L.C. | 60 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11476 | TPS II of PA, L.L.C. | 62 | Joel Freedman, on behalf of himself and the indemnities |
| 19-11476 | TPS II of PA, L.L.C. | 63 | Joel Freedman |
| 19-11477 | TPS III of PA, L.L.C. | 20 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11477 | TPS III of PA, L.L.C. | 21 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11477 | TPS III of PA, L.L.C. | 22 | Philadelphia Academic Health Holdings, LLC |
| 19-11477 | TPS III of PA, L.L.C. | 23 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11477 | TPS III of PA, L.L.C. | 24 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11477 | TPS III of PA, L.L.C. | 25 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11477 | TPS III of PA, L.L.C. | 27 | Joel Freedman, on behalf of himself and the indemnities |
| 19-11477 | TPS III of PA, L.L.C. | 28 | Joel Freedman |
| 19-11478 | TPS IV of PA, L.L.C. | 32 | Philadelphia Academic Health Holdings, LLC et. al. |

3

**SCHEDULE C**

| | | | |
|---|---|---|---|
| 19-11478 | TPS IV of PA, L.L.C. | 33 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11478 | TPS IV of PA, L.L.C. | 34 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11478 | TPS IV of PA, L.L.C. | 35 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11478 | TPS IV of PA, L.L.C. | 36 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11478 | TPS IV of PA, L.L.C. | 37 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11478 | TPS IV of PA, L.L.C. | 39 | Joel Freedman, on behalf of himself and the indemnitees |
| 19-11478 | TPS IV of PA, L.L.C. | 40 | Joel Freedman |
| 19-11479 | TPS V of PA, L.L.C. | 19 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11479 | TPS V of PA, L.L.C. | 21 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11479 | TPS V of PA, L.L.C. | 23 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11479 | TPS V of PA, L.L.C. | 24 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11479 | TPS V of PA, L.L.C. | 25 | Philadelphia Academic Health Holdings, LLC et. al. |
| 19-11479 | TPS V of PA, L.L.C. | 27 | Joel Freedman, on behalf of himself and the indemnitees |
| 19-11479 | TPS V of PA, L.L.C. | 28 | Joel Freedman |
| 19-11479 | TPS V of PA, L.L.C. | 20 | Philadelphia Academic Health Holdings, LLC et al. |
| 19-11479 | TPS V of PA, L.L.C. | 22 | Philadelphia Academic Health Holdings, LLC et. al. |

4

# Schedule D
## Real Estate Legal Description

## Schedule D
## Legal Description of the Properties

## TRACT I:

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1) THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2) THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8) THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

10)    THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 27.619' TO A POINT;

11)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12)    THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018  in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.      53316755.

AND

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1)    THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2)    THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

3)    THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

2)      THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)      THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)      THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)      THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)     THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

**TRACT II:**

Lot 1 – HUH North Fee Parcel:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2)      THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3)      THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4)      THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT  1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

Lot 1 – HUH North Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

**TRACT III:**

**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;
2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;
3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;
4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;
5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;
6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;
7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;
8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;
9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;
12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;
13) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
14) THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1)  THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;
2)  THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;
3)  THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;
4)  THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;
5)  THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;
6)  THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;
7)  THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;
8)  THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;
9)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

12) THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16) THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22) THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Schedule 3(a)(iii)**
**List of Documents originals of which are attached as Exhibit 3(a)(iii)**

## Schedule 3(a)(iii)

1. Release of Mortgage ($2.5 million) – Broad Street Healthcare Properties, LLC
2. Release of Mortgage ($2.5 million) – Broad Street Healthcare Properties II, LLC
3. Release of Mortgage ($2.5 million) – Broad Street Healthcare Properties III, LLC
4. Release of Mortgage ($3.0 million) – Broad Street Healthcare Properties, LLC
5. Release of Mortgage ($3.0 million) – Broad Street Healthcare Properties II, LLC
6. Release of Mortgage ($3.0 million) – Broad Street Healthcare Properties III, LLC
7. Release of UCC-1 Fixture Filings – Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC
8. UCC-3 Terminations - Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC, as debtors, and Paladin and Front Street Healthcare Properties, LLC, as secured parties

**Schedule 3(a)(vi)**
**Broad PropCos' Assets to be Substantively Consolidated with CCH**

**SCHEDULE 3(a)(vi)**

**Assets of Broad Street PropCos to be Substantively Consolidated with CCH**

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in the MOU in which this Schedule is referenced and to which it is attached; all Section references in this Schedule are to the Sections of the MOU.

All of each Broad Street PropCo's right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by any Broad Street PropCo and located upon or at any Real Estate
2. Broad Street PropCos REAs
3. Broad Street PropCos Unity of Use Agreements
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of any of the Broad Street PropCos, including those listed in item 36(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the PAHS Loan Documents in the following bank accounts of the Broad Street PropCos:
   a. Account No.:              10-7776-0053
      Account Name: Broad Street Healthcare Properties, LLC
   b. Account No.:              10-7776-0061
      Account Name: Broad Street Healthcare Properties II, LLC
   c. Account No.:              10-7776-0088
      Account Name: Broad Street Healthcare Properties III, LLC
      Transit/Routing:         043000096
      Bank Name:             PNC Bank, Pittsburgh, PA

   On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by the Broad Street PropCos to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the CCH bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").  Subject to confirmation by the Broad Street PropCos that there are no Outstanding Checks, the Broad Street PropCos shall promptly close all of the above bank accounts. If the Broad Street PropCos confirm that there are Outstanding Checks that the Broad Street PropCos have determined will not be cashed and to the extent such Outstanding Checks were

---

[1]        **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**

issued on or after the closing date of the PAHS Loan, the Broad Street PropCos shall promptly transfer to the CCH bank account designated by PAHS the amount represented by such Outstanding Checks and, after such transfer has occurred, shall close all of the above bank accounts.

6. All contracts and agreements listed as items 1-30 of Schedule 3(a)(vii) to the MOU.

7. All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets to be substantively consolidated with CCH shall not include, and shall not be deemed to include: (i) any claim held by any of the Broad Street PropCos against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any of the Broad Street Lenders, or (ii) with respect to any professional or advisor of any of the Broad Street PropCos, including those listed in item 36(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which any Broad Street PropCo may have any interest, rights or entitlement, and (b) no power, right or privilege granted by any Broad Street PropCo to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

**Schedule 3(a)(vii)**
**Broad PropCos' Liabilities to be Substantively Consolidated with CCH;**
**Broad PropCos' Contracts to be Substantively Consolidated with CCH**

## SCHEDULE 3(a)(vii)

### Liabilities of Broad Street PropCos to be Substantively Consolidated with CCH

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in the MOU in which this Schedule is referenced and to which it is attached.

1. Property Management Agreement dated as of June 1, 2020 between Broad Street PropCos and Front Street Healthcare Properties II, LLC, on the one hand, and G&E Real Estate Management Services, Inc. dba Newmark Knight Frank, as amended by the First Amendment effective as of April 6, 2021

2. Agreement dated March 27, 2020 between Broad Street Healthcare Properties, LLC and Elite Elevator Services, LLC

3. Service Contract dated May 1, 2021 between Broad Street Healthcare Properties, LLC and Apex Elevator Inspection & Testing, LLC

4. Service Contract dated January 1, 2021 between Broad Street Healthcare Properties, LLC and GenServe, LLC

5. Service Contract dated October 14, 2021 between Broad Street Healthcare Properties, LLC and Tozour Energy Systems, Inc.

6. Service Contract dated July 1, 2022 between Broad Street Healthcare Properties, LLC and Barclay Water Management, Inc.

7. Service Contract dated August 1, 2020 between Broad Street Healthcare Properties, LLC and GDI Services, Inc.

8. Service Contract dated January 29, 2021 between Broad Street Healthcare Properties, LLC and Energy Management Systems, Inc.

9. Service Contract dated July 1, 2020 between Broad Street Healthcare Properties, LLC and Western Pest Services

10. Security Professional Service Agreement, effective as of March 1, 2020, between Broad Street PropCos and Front Street Healthcare Properties II, LLC, on the one hand, and Universal Protection Service, LP d/b/a Allied Universal Security Services

11. Service Contract dated October 22, 2021, between Broad Street Healthcare Properties, LLC and BTM Construction, LLC

12. Service Contract dated August 25, 2021, between Broad Street Healthcare Properties, LLC and Athena Contracting, Inc.

13. Service Contract dated March 16, 2021, between Broad Street Healthcare Properties II, LLC and Jay B. Comly Building & Office Maintenance, LLC

14. Purchase Order Number: PH096-02 between Broad Street Healthcare Properties, LLC and Electronic Security Solutions

15. Work Authorization Form dated as of May 26, 2021 between Broad Street Healthcare Properties, LLC and Wayman Fire Protection, Inc.

16. Comcast Business Service Order #25456482 between Broad Street Healthcare Properties and Cable Communications Management, LLC and its operating affiliates

17. Comcast Enterprise Services Sales Order Form # PA-21812406-PDown-17207954 between Broad Street Healthcare Properties and Cable Communications Management, LLC and its operating affiliates.

18. Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC

19. Penn Environmental & Remediation, Inc. Proposal to Complete a Subsurface Evaluation dated February 25, 2022

20. Service Contract dated June 11, 2021 between Broad Street Healthcare Properties, LLC and Wayman Fire Protection, Inc.

21. Any and all contracts, purchase orders, proposals, statements of work, sales orders and similar documents and instruments for services at or relating to the Assets that are entered into from and after the Execution Date and through the MOU Implementation Date by NKF on behalf of any of the Broad Street PropCos, with the prior written consent of CCH.

22. Purchase Order PH096A-37 between Broad Street Healthcare Properties, LLC and Electronic Security Solutions

23. Service Contract dated May 20, 2022 between Broad Street Healthcare Properties, LLC and ASCENT Restoration Consultants

24. Service Contract dated May 18, 2022 between Broad Street Healthcare Properties, LLC and Wayman Fire Protection

25. Purchase Order PH096A-40 between Broad Street Healthcare Properties, LLC and Barclay Water Management

26. Work Authorization Form dated June 16, 2022 between Broad Street Healthcare Properties, LLC and Joseph Dugan, Inc.

27. Purchase Order PH096A-42 dated July 18, 2022 between Broad Street Healthcare Properties, LLC and Wayman Fire Protection

28. Service Contract dated July 18, 2022 between Broad Street Healthcare Properties, LLC and Wayman Fire Protection

29. Change Order with respect to Proposal #ESSQ29635 FA dated June 9, 2022 for the elevator wireless communicators, between Broad Street Healthcare Properties, LLC and Electronic Security Solutions

30. Service Contract dated July 1, 2022 between Broad Street Healthcare Properties, LLC and Electronic Security Solutions

31. All real and personal property taxes, charges, fees, duties, levies or other assessments, including use and occupancy, center city district and parking taxes and assessments

32. All liabilities and obligations under the PAHS Loan Documents, as amended or otherwise modified.

33. All utilities to or at the Real Estate and any liens and other encumbrances related thereto.

34. All liens and other encumbrances set forth in the schedule of permitted encumbrances to each mortgage entered into in connection with the PAHS Loan *other than* (i) $2,500,000.00 (Open-End Mortgage and Security Agreement) – Broad Street Healthcare Properties, LLC, a Delaware limited liability company to Joel Freedman, dated 1/7/2020, effective 1/8/2020 and recorded 1/14/2020 in Document ID #53618447; Assigned to Paladin Healthcare Capital, LLC, a Delaware limited liability company recorded 11/2/2021 in Document ID #53899050; Amended and Restated 11/2/2021 in Document ID #53899053, and (ii) $3,000,000.00 (Open-End Mortgage and Security Agreement) – Broad Street Healthcare Properties, LLC, a Delaware limited liability company to Paladin Healthcare Capital, LLC, a Delaware limited liability company dated

10/27/2021, effective 10/28/2021 and recorded 11/2/2021 in Document ID #53899056.  For the avoidance of doubt, the foregoing items (i) and (ii) shall not be assumed by, and shall not be deemed to be the liabilities of, CCH or any of the other Debtors and shall no longer be deemed liens or encumbrances on the Real Estate.

35. All trade and accounts payable relating to the Real Estate, as approved by PAHS under the PAHS Loan Documents or as set forth on the most recent "Open Invoice" list from NKF and approved in writing by the Debtors prior to the Execution Date, and as updated by NKF with any payables approved by PAHS under the PAHS Loan Documents on or immediately prior to the MOU Implementation Date, plus any unpaid trade and accounts payable included in any budget approved by PAHS in accordance with the PAHS Loan Documents.

36. For the avoidance of doubt:

   a. notwithstanding anything to the contrary set forth herein or in the MOU, liabilities of any of the Broad Street PropCos to any professional or advisor, including without limitation Latham & Watkins, LLP,  Richards Layton & Finger, PA, O'Melveny & Myers, LLP, Dovel & Luner LLP, Crowe, LLP, White and Williams, LLP, Chamberlain Hrdlicka White Williams & Aughty, Sonsara Management Services, LLC, Jigsaw Advisors, LLC, Moss Adams LLP and Bochetto & Lentz, P.C., shall not be deemed to be the liabilities of CCH or any other Debtor;

   b. all liabilities, indebtedness, obligations and responsibilities arising out of or relating to any act, omission, event or occurrence connected with the use, management, ownership or operation by CCH of the Real Estate or any other Assets incurred or arising on or after the MOU Implementation Date, including without limitation all indebtedness and all liabilities, obligations and responsibilities created or arising from CCH's exercise of any powers, rights or privileges granted pursuant to any Power of Attorney (other than the liabilities, obligations and responsibilities limited solely to performance by any Broad Street PropCo that does not involve or cause such Broad Street PropCo's expenditure of any funds), shall be, and shall be deemed to be, the liabilities, indebtedness, obligations and responsibilities of CCH in all respects;

   c. CCH shall not become liable for any obligation of any of the Broad Street PropCos to any of the other MBNF Parties or any of their Representatives; and

   d. any liability substantively consolidated with CCH, as set forth in this Schedule 3(a)(vii), shall be subject to all existing rights, claims, defenses, affirmative defenses, counterclaims, setoffs and recoupments, not otherwise released or waived in the MOU, all of which may be asserted by CCH.

**Schedule 3(a)(viii)**
**List of fully executed originals of the Amended PAHS Loan Documents**

## **Schedule 3(a)(viii)**

Assignment, Assumption and Novation Agreement among Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Health System, LLC and Center City Healthcare, LLC

Mortgage Modification Agreement (Broad Street Healthcare Properties, LLC)

Mortgage Modification Agreement (Broad Street Healthcare Properties II, LLC)

Mortgage Modification Agreement (Broad Street Healthcare Properties III, LLC)

UCC-3 Amendments to the Financing Statements (Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC)

Termination Agreement (re Intercreditor Agreement recorded for PAHS Loan)

**Schedule 3(b)**
**Real Estate Management and Marketing Procedures**

**Schedule 3(b)**

## Schedule 3(b)

## Real Estate Marketing/Management Provisions[1]

1.      Oversight Committee:

(a)      Upon the occurrence of the MOU Implementation Date, there shall be created an oversight committee (the "**Oversight Committee**"), which shall consist of representatives of the (i) Debtors/Committee, (ii) the HSRE Entities ("**HSRE**") and (iii) Tenet. Each of the Debtors/Committee, HSRE and Tenet shall in writing designate one business person, and one attorney, to receive communications and one person with authority to act on behalf of such Oversight Committee member with respect to the Oversight Committee.  CONA (as defined below), on behalf of the CONA Parties, shall have observation rights on the Oversight Committee but shall not be considered a "member" of the Oversight Committee.

(b)      Except as otherwise provided herein, the following decisions are to be made by the Oversight Committee by majority vote, with each of the following to have one equal vote: (a) the Debtors/Committee[2], (b) HSRE and (c) Tenet:

   (i)      Selection of any replacement Property Manager (as defined below) solely upon the resignation of NKF (as defined below) or any subsequent property manager or removal for good cause;

   (ii)      Selection and retention of a real estate broker for the Sale (as defined below) of the Real Estate (the "**Real Estate Broker**").

   (iii)      Approval of periodic Budgets (as defined below) and amendments thereto, which approval must include approval by the Debtors and at least one other member of the Oversight Committee.

   (iv)      Approval of any sale or other disposition of the Real Estate (a "Sale"); *provided*, *however*, that (a) any Sale of Real Estate, directly or indirectly, to Capital One, N.A. ("**CONA**"), any participant (a "**CONA Loan Participant**") in the CONA Loan[3], HSRE, Tenet, any MBNF Party, any affiliate of any of the foregoing, or any Sale of Real Estate proposed to be

---

[1]      Unless the context indicates otherwise, capitalized terms used herein shall have the meaning ascribed to them in the MOU.

[2]      If the Debtors and the Committee do not agree on a matter hereunder, they may jointly seek the assistance of the Honorable Kevin J. Carey (ret.) or, in the event Judge Carey is unavailable, another disinterested person, to assist in resolving any areas of disagreement.

[3]      As used herein, the term "**CONA Loan**" means that certain loan made pursuant to a Loan Agreement dated as of January 11, 2018 in which CONA serves as Administrative Agent and a Lender and certain affiliates of HSRE are borrowers.

1

financed in whole or in part by any such entity, shall require unanimous approval of all members of the Oversight Committee that have not voluntarily recused themselves, been recused or abstained from voting, (b) HSRE shall recuse itself from any vote on a Sale of Real Estate, directly or indirectly, to HSRE, CONA, a CONA Loan Participant and/or any affiliate of HSRE, CONA or a CONA Loan Participant; (c) Tenet shall recuse itself from any vote on a Sale of Real Estate, directly or indirectly,  to Tenet or any affiliate of Tenet and (d) any Sale of Real Estate for less than an amount that has been agreed to by the members of the Oversight Committee shall require the unanimous consent of all members of the Oversight Committee.

(v)    In the event any member of the Oversight Committee resigns, voluntarily recuses itself, is recused pursuant to these provisions, or abstains from voting on any matter, and the Oversight Committee is thereafter gridlocked on any matter, the remaining members of the Oversight Committee or, if applicable, those members that have not recused themselves, been recused, or abstained, shall seek the assistance of the Honorable Kevin J. Carey (ret.), or another disinterested party designated by all members of the Oversight Committee, to assist in resolving the gridlock.

(c)    Procedural Matters:

(i)    The Oversight Committee shall have meetings no less often than monthly, which shall be scheduled, to the extent practicable, for the same day of the month and time of day or as otherwise agreed by the members of the Oversight Committee.  Meetings may be held by teleconference or video conference.

(ii)    The Debtors' designated business person shall serve as the "chair'" of the Oversight Committee.

(iii)    Absent an emergency, all members of the Oversight Committee shall be given at least three (3) business days' prior written notice of Oversight Committee meetings.  The Oversight Committee shall use best efforts to avoid emergencies.

(iv)    Upon the occurrence of an emergency, which may be determined by any member of the Oversight Committee in consultation with the Property Manager (as defined below) if practicable, less than three (3) business days' notice may be given of an Oversight Committee meeting. Upon the occurrence of an emergency, and if immediate action is required to prevent a material loss to the Real Estate, in consultation with the Property Manager when practicable, Anthony Perno ("**Perno**") shall immediately advise each member of the Oversight Committee and the Debtors may take or authorize action unilaterally, with simultaneous or prompt notice thereafter to the other members of the Oversight Committee.

2

(v)     The Bankruptcy Court shall have jurisdiction over disputes among the members of the Oversight Committee.

2.     Real Estate Management and Maintenance Pending Sale:

(a)     The Real Estate shall be managed by NKF or, in the event of NKF's resignation or removal for good cause, such other third-party property manager as shall be selected by the Oversight Committee (the "**Property Manager**").

(b)     The Property Manager shall manage and maintain the Real Estate pending sale, pursuant to the Budget.

(c)     The Property Manager shall report to Perno and the Oversight Committee, shall be available for Oversight Committee meetings as requested, and shall provide to Perno reasonably detailed monthly reports that shall include without limitation (i) expenses incurred and amounts paid with respect to the Real Estate, (ii) Budget vs. actual analysis, (iii) property condition reports and, if appropriate, capital expenditure recommendations and a proposed budget for any proposed capital expenditures over $5,000; and (iv) other matters as shall be reasonably requested by Perno.

(d)     Perno shall (i) supervise the Property Manager and shall make monthly reports to the Oversight Committee regarding such matters as the Oversight Committee may reasonably request and (ii) have the authority to authorize non-Budgeted expenditures for the maintenance and operation of the Real Estate in an aggregate amount not to exceed $10,000 per month. Proposed non-Budgeted expenditures in an aggregate amount in excess of $10,000 per month shall require an amendment to the applicable Budget, which is subject to approval of the Oversight Committee, including for the avoidance of doubt the Debtors, as provided in paragraph 1(b)(iii) above; provided that the Debtors may approve an amendment to the Budget unilaterally to address an emergency, in accordance with the procedures set forth in paragraph 1(c)(iv) above to avoid or minimize loss.

(e)     The Property Manager and Perno shall provide such assistance to the Sale Process Manager (as defined below) and the Real Estate Broker regarding the marketing and sale of the Real Estate as shall be reasonably requested.

3.     Costs and Expenses of the Real Estate Pending Sale (the "**Carrying Costs**"):

(a)     Carrying Costs shall be paid, first, from any remaining proceeds of the $5.6 million secured term loan from PAHS, as approved by orders of the Bankruptcy Court entered on March 31, 2022, April 21, 2022 [D.I. 3811 and 3896] (the "**PAHS Loan**"), provided, however, that nothing contained herein shall negate or otherwise affect the rights and remedies of PAHS with respect to the PAHS Loan, or the terms and conditions thereof. In the event of any inconsistency between (i) the MOU and/or this Exhibit 3(b) and (ii) the documents executed in connection with the PAHS Loan (the "**PAHS Loan Documents**"), the MOU shall control.

3

(b)     Carrying Costs in excess of the amount of the PAHS Loan (the "**Additional Loan**"), if any, pursuant to an agreed Budget may be advanced and paid by the Debtors, in consultation with the other members of the Oversight Committee, or, absent the Debtors' agreement to fund, jointly or severally by the Debtors, Tenet and/or HSRE as may be agreed.

4.     Distribution of Sale proceeds: the proceeds of any sale of any of the Real Estate shall be distributed as follows:

(a)     First, to pay the customary costs of the sale (e.g., broker's commission).

(b)     Second, to satisfy liens on the Real Estate being sold (in order of priority) including but not limited to:

(i)     Water liens, Center City District judgment liens and such other amounts reflected on Exhibit "A" hereto (approx. $1.8 million as of 6/15/22).

(ii)    The PAHS Loan, as amended pursuant to the Amended PAHS Loan Documents, which for the avoidance of doubt shall provide that the Settlement Balancing Payment shall be secured by a lien on the Real Estate.

(c)     Third, to satisfy any Additional Loan.

(d)     Fourth, to reimburse or compensate the Debtors for reasonable amounts expended or incurred, on or after the MOU Implementation Date, directly related to the substantive consolidation and/or sale of the Real Estate and the distribution of the proceeds thereof, including without limitation (i) any taxes, fees and direct costs related thereto; or (ii) the fees and expenses of the Sale Process Manager (as defined below).

(e)     Fifth, all remaining sale proceeds after payment of the foregoing amounts (the "**Net Sale Proceeds**") shall be allocated and paid as follows:

(i)     The first $0-20,000,000 of Net Sale Proceeds are to be split as follows:

(1)     HSRE – 33.3333%

(2)     Tenet – 33.3333%

(3)     Debtors – 33.3333%

(ii)    All Net Sale Proceeds above $20,000,000 are to be split as follows:

(1)     HSRE - 55%

(2)     Tenet – 20%

(3)     Debtors – 25%

5.  The budget referenced in item 1(a)(iii), above, shall be the budget developed by the Property Manager in consultation with Perno and approved by the Oversight Committee (the "**Budget**").

6.  Real Estate Sale - the Real Estate shall be marketed and sold pursuant to a process which shall include the following:

    (a)  The sale process shall be led and managed by Mr. Albert Mezzaroba (the "**Sale Process Manager**"), who shall (i) supervise the actions of the Real Estate Broker; (ii) oversee the data room, diligence process and management meetings; and (iii) report to and engage with the Oversight Committee on matters related to the sale of the Real Estate.

    (b)  The Oversight Committee, the Sale Process Manager and the Real Estate Broker shall attempt to sell the Real Estate such that closing occurs at a price agreed upon by the Oversight Committee on or before such date as agreed by the Oversight Committee.

    (c)  The Sale Process Manager shall manage the sale process with the assistance of the Debtors' counsel, with reasonable, documented, out-of-pocket professional fees and costs of counsel to be paid from sale proceeds.

    (d)  The Sale Process Manager and the Real Estate Broker shall report regularly to and engage with the Oversight Committee and shall make themselves available as reasonably requested for status reports and to address questions of the Oversight Committee members.

7.  Subject to such sale procedures as may be developed by the Real Estate Broker, the members of the Oversight Committee shall approve any offer from any person that is not an Insider to purchase the Real Estate for more than an amount that has been agreed to by the members of the Oversight Committee, *provided* that such offer is by a qualified bidder, as determined and recommended by the Property Sale Manager and Real Estate Broker to the Oversight Committee, and, *provided further*, that such offer has terms and conditions acceptable to the Oversight Committee. As used herein, the term "**Insider**" means Debtors, HSRE, CONA, a CONA Loan Participant, Tenet, MBNF, Iron Stone Real Estate Partners, and any affiliate or successor of any of the foregoing.

8.  Any of the procedures specified above may be modified by the unanimous vote of the Oversight Committee. Without limitation of the foregoing, the Oversight Committee may by the unanimous vote of its members authorize the sale of different parcels of the Real Estate to different purchasers, at different times, and/or to an Insider.

9.  These provisions shall be binding upon the parties and their successors and assigns.

10. All members of the Oversight Committee, and each of the CONA Parties, shall at all times operate in good faith in a manner to maximize value and minimize expense, including Carrying Costs and professional fees.

**Exhibit "A"**

200-214 N Broad St

- Record Owner: Broad Street Healthcare Properties III, LLC

- Judgments:

  i.    (Active Case) Center City District vs Broad Street Healthcare; Assessment Lien entered for $16,064.73.

  ii.   (Active Case) Center City District vs Broad Street Healthcare P; Assessment Lien entered for $571.71.

- Liens:

  i.    (Active Case) City of Philadelphia vs Joel Freedman and Broad Street Healthcare Properties LLC; RE Tax Lien for $169,538.00 (2019 unpaid).

  ii.   (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $199,104.55 (Apr 2019 – Jun 2019 unpaid).

  iii.  (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $253,763.15 (Jul 2019 – Sep 2019 unpaid).

  iv.   (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $205,963.34 (Sep 2019 – Dec 2019 unpaid).

  v.    (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $103,833.76 (Jan 2020 – Mar 2020 unpaid).

  vi.   (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $94,670.50 (Apr 2020 – Jun 2020 unpaid).

  vii.  (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $45,034.01 (Jul 2020 – Sep 2020 unpaid).

  viii. (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $1,894.39 (Sep 2020 – Dec 2020 unpaid).

  ix.   (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $4,323.64 (Jan 2021 – Mar 2021 unpaid).

  x.    (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $7,852.93 (Apr 2021 – Jun 2021 unpaid).

  xi.   (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $6,688.09 (Jul 2021 – Sep 2021 unpaid).

xii.    (Active Case) City of Philadelphia vs Broad Street Healthcare Properties III LLC; Water/Sewer Lien for $14,187.25 (Sep 2021 – Dec 2021 unpaid).

xiii.   (Active Case) City of Philadelphia vs Joel Freedman; RE Tax Lien for $42,472.08 (2019 unpaid).

xiv.    (Active Case) City of Philadelphia vs Joel Freeman; RE Tax Lien for $178,407.28 (2021 unpaid).

xv.     (Active Case) City of Philadelphia vs Joel Freeman and Broad Street Healthcare Properties LLC; RE Tax Lien for $169,538.00 (2021 unpaid).

222-48 N Broad St

- Record Owner: Broad Street Healthcare Properties, LLC

- Judgments:

  i.    (Active Case) Center City District vs Broad Street Healthcare; Assessment Lien entered for $16,064.73.

  ii.   (Active Case) Center City District vs Broad Street Healthcare P; Assessment Lien entered for $571.71.

- Liens:

  i.    (Active Case) Otis Elevator Company vs Broad Street Healthcare Properties, LLC and Tenet Healthsystem Hahnemann LLC; Mechanics Lien.

  ii.   (Active Case) City of Philadelphia vs Broad Street Healthcare Properties LLC; RE Tax Lien for $139,069.88 (2021 unpaid).

300-04 N Broad St

- Record Owner: Broad Street Healthcare Properties II, LLC

- Judgments:

  i.    (Active Case) Center City District vs Broad Street Healthcare; Assessment Lien entered for $16,064.73.

  ii.   (Active Case) Center City District vs Broad Street Healthcare P; Assessment Lien entered for $571.71.

- Liens:

  i.    (Active Case) Center City District vs Broad Street Healthcare; Assessment Lien entered for $16,064.73 (same as above).

221-23 N 15th St

- Record Owner: Broad Street Healthcare Properties, LLC

- Judgments:

    i.    (Active Case) Center City District vs Broad Street Healthcare; Assessment Lien entered for $16,064.73.

    ii.   (Active Case) Center City District vs Broad Street Healthcare P; Assessment Lien entered for $571.71.

- Liens:

    i.    (Active Case) City of Philadelphia vs Broad Street Healthcare Properties LLC; RE Tax Lien for $5,791.72 (2019 unpaid).

    ii.   (Active Case) Center City District vs Broad Street Healthcare P; Assessment Lien entered for $571.71 (same as above).

325 N 15th St

- Record Owner: Broad Street Healthcare Properties, LLC

- Judgments:

    i.    (Active Case) Center City District vs Broad Street Healthcare; Assessment Lien entered for $16,064.73.

    ii.   (Active Case) Center City District vs Broad Street Healthcare P; Assessment Lien entered for $571.71.

- Liens:

    i.    (Active Case) City of Philadelphia vs Broad Street Healthcare Properties LLC; RE Tax Lien for $40,152.87 (2021 unpaid).

**Schedule 14(o)**
**Insurance Carrier Notices**

**SCHEDULE 14(o)**

**Insurance Carrier Notices**

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in the MOU in which this Schedule is referenced and to which it is attached.

1. Starr Indemnity Policy #1000620691191; Insured: MBNF Investments, LLC; Policy Period: 1/11/2019 – 1/11/2020, Extended Reporting to 1/11/2021 (D&O/EPL: 1st Excess)

2. AIG Policy #08-076-85-48; Insured: MBNF Investments, LLC; Policy Period: 1/11/2019 – 1/11/2020, Extended Reporting to 1/11/2021 (D&O/EPL: 2nd Excess)

3. AIG Policy #08-076-11-34; Insured: MBNF Investments, LLC; Policy Period: 1/11/2019 – 1/11/2020, Extended Reporting to 1/11/2021 (Fiduciary)

4. Chubb Policy #8255-7330; Insured: MBNF Investments, LLC; Policy Period: 1/11/2019 – 1/11/2020, Extended Reporting to 1/11/2021 (Employed Lawyers Liability)

5. Chubb (Westchester) Policy # G71780570 001; Insured: MBNF Investments, LLC; Policy Period: 1/11/2020 – 1/11/2021, Extension to 1/11/2022 (D&O/EPL/Employed Lawyers Liability)

6. Argo Policy #ML7601753-4; Insured: Paladin Healthcare Capital, LLC; Policy Period: 3/2/2020 – 3/2/2021 (D&O/ Fiduciary)

7. AIG Policy #13470625; Insured: Paladin Healthcare Capital, LLC; Policy Period: 3/2/2020 – 3/2/2021 (Employed Lawyers Liability)

8. Wesco Insurance Co./Amtrust Policy #EUW1843059 00; Insured: Philadelphia Academic Health System, LLC; Policy Period: 1/11/2020 – 1/11/2021, [Extension to 1/11/23] (D&O)

9. Ironshore Policy #DO6NABXGGP001; Insured: Philadelphia Academic Health System, LLC; Policy Period: 1/11/2020 – 1/11/2021, [Extension to 1/11/23] (D&O: Excess)

10. RSUI Indemnity Company Policy #NHS691289; Insured:  Philadelphia Academic Health System, LLC; Policy Period 1/11/2022 to 1/11/2023

# Schedule 46
# Adjustments to Claims Registry

## **Schedule 46**

Claims to be marked "withdrawn" by Omni Agent Solutions:

- All HSRE Debtor Claims including without limitation those listed on Schedule B to the MOU.
- All MBNF Debtor Claims including without limitation those listed on Schedule C to the MOU.

Claims to be marked "allowed" by Omni Agent Solutions:

- Tenet Allowed Claim consistent with Section 7 of the MOU.
- HSRE Allowed Lease Damages Claim consistent with Section 8 of the MOU.

**Exhibit 2(a)**
**Unanimous Consent of the Members of RRG re RRG Plan of Dissolution**

Exhibit 2(a)

## UNANIMOUS WRITTEN CONSENT OF THE MEMBERS

### of

## PHILADELPHIA ACADEMIC RISK RETENTION GROUP, LLC

Pursuant to Section 2.8 of the Operating Agreement of Philadelphia Academic Risk Retention Group, LLC (the "**Company**"), the undersigned, being duly authorized representatives of all of the Members of the Company, hereby consent to the adoption of the following resolutions:

RESOLVED: That, pursuant to a recommendation of the Company's Board of Managers, the Members hereby (1) approve and adopt the Plan of Dissolution in the form attached hereto as **Attachment A**; and (2) approve the dissolution and winding-up of the Company's affairs, and accordingly vote each of their Membership Interests, which together constitute 100% of the Company's Membership Interests, in favor of such dissolution and winding-up; and

FURTHER
RESOLVED: That the Members hereby acknowledge the Company's Board of Managers' approval of the Company's entry into and performance of its obligations under the Memorandum of Understanding Re Global Settlement by and among the Company, each undersigned Member, all other debtors in the jointly administered and procedurally consolidated chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware entitled *In re: City Center Healthcare, LLC d/b/a Hahnemann University Hospital*, et. al., and other parties party thereto in the form attached hereto as **Attachment B**; and

FURTHER
RESOLVED: That, any Officer of the Company shall each, acting alone or with any other Officer of the Company, be, and they hereby are, authorized and directed, for and on behalf of the Company, to execute, acknowledge, file and deliver such agreements, documents, certificates, notices, amendments and other instruments, and to take or cause to be taken such action, as they, or any of them, may deem necessary, advisable or appropriate to carry out the transactions contemplated by these resolutions and otherwise accomplish the purposes and intent of these resolutions; and

FURTHER
RESOLVED: That any and all actions previously taken by any Officer, representative or agent of the Company prior to the date hereof in furtherance, and within the authority conferred by, of the foregoing resolutions be, and

Exhibit 2(a)

such actions hereby are, ratified, confirmed and approved as the acts and deeds of the Company.

The Secretary of the Company is hereby directed to file this instrument with the minutes of the proceedings of the Members of the Company. The actions taken hereby shall be of the same force and effect as if taken at a meeting of the Members of the Company, duly called and constituted pursuant to the laws of the State of Vermont.

IN WITNESS WHEREOF, the undersigned Members have hereunto set their hands as of the ___ day of _____, 2022.

PHILADELPHIA ACADEMIC MEDICAL ASSOCIATES, LLC

PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC

_____
A Duly Authorized Representative

_____
A Duly Authorized Representative

PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC

_____
A Duly Authorized Representative

Exhibit 2(a)

## Attachment A

## Plan of Dissolution

[see attached]

**PLAN OF DISSOLUTION**

**of**

**PHILADELPHIA ACADEMIC RISK RETENTION GROUP, LLC**

Approved by Consent Action of the Board of Managers and the Members
[_____] \_\_\_, 2022

1.    Philadelphia Academic Risk Retention Group, LLC (the "**Company**") shall be liquidated, dissolved and terminated pursuant to 11 V.S.A. §§4101-4109, with the termination effective as of the filing of Articles of Termination with the Vermont Secretary of State.

2.    The Company has novated and been released in writing from all of its insurance liabilities, both known and unknown pursuant to the Assignment, Assumption and Novation Agreement dated as of March 31, 2022 by and among the Company, as assignor, Accredited Surety and Casualty Company, Inc., as assignee, and Philadelphia Academic Health System, LLC, as the first named insured.

3.    The Company is a party to a Memorandum of Understanding Re Global Settlement among the Company, each of its Members, all other debtors in the jointly administered and procedurally consolidated chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware entitled *In re: City Center Healthcare, LLC d/b/a Hahnemann University Hospital*, et. al., and other parties party thereto (the "**Global Settlement Agreement**").

4.    Following the novation and release described in Paragraph 2 above and the Global Settlement Agreement described in Paragraph 3 above becoming effective pursuant to the terms thereof, the Company has no further insurance liabilities, and all of its claims and disputes have been settled or arranged to be paid as contemplated in Section 2 of the Global Settlement Agreement.

5.    The Company is not involved in any litigation except for any litigation that has been released pursuant to the Global Settlement Agreement.

6.    The Company does not owe any unpaid wages to its employees.

7.    To the extent authorized by the Captive Division of the Vermont Department of Financial Regulation ("**DFR**"), on the MOU Implementation Date of the Global Settlement Agreement, the Company will make liquidating distributions to Philadelphia Academic Health Holdings, LLC ("**PAHH**"), Philadelphia Academic Health System, LLC ("**PAHS**"), and Philadelphia Academic Medical Associates, LLC ("**PAMA**") in a manner and amount as prescribed by Section 2 of the Global Settlement Agreement.

8.    Pursuant to the terms of the Global Settlement Agreement, upon the MOU Implementation Date of the Global Settlement Agreement, after the liquidating distributions described in

Paragraph 7 above have been made, (a) PAHH shall voluntarily dissociate and withdraw as a Member of the Company, thereby relinquishing its rights to participate as a Member of the Company and terminating its membership interest in the Company; and (b) Joel Freedman and Kyle Schmidt shall resign from any board, officer or other positions held with the Company and the remaining Members of the Company (i.e. PAHS and PAMA) shall appoint replacement board members and officers acceptable to DFR and the Official Committee of Unsecured Creditors appointed by the Bankruptcy Court in *In re: City Center Healthcare, LLC d/b/a Hahnemann University Hospital*, et. al.

9.     Pursuant to the terms of the Global Settlement Agreement, after the MOU Implementation Date of the Global Settlement Agreement, the Company shall proceed to dissolve and liquidate, as expeditiously as reasonable, for the sole purpose of winding up and paying all final liabilities of the Company, all in accordance with the terms of Section 2 of the Global Settlement Agreement; and at such time as all final liabilities of the Company have been paid, the Company shall promptly file articles of termination with the Vermont Secretary of State terminating the legal existence of the dissolved Company as of the date of filing, and deliver to each of PAHH, PAHS and PAMA a proper accounting made by the Company's accountants of the Company's assets, liabilities and results of operations through the date of termination.

8571848_7:14849-00001

Exhibit 2(a)

## **Attachment B**

## **Memorandum of Understanding**

[see attached]

8571849_5:14849-00001

**Exhibit 2(b)**

**Unanimous Manager Consent re RRG Plan of Dissolution**

Exhibit 2(b)

## UNANIMOUS WRITTEN CONSENT OF THE BOARD OF MANAGERS

### of

## PHILADELPHIA ACADEMIC RISK RETENTION GROUP, LLC

Pursuant to Section 2.8 of the Operating Agreement of Philadelphia Academic Risk Retention Group, LLC, a Vermont limited liability company (the "**Company**"), the undersigned, being all of the members of the Board of Managers of the Company (the "**Board**"), hereby consent to the adoption of the following resolutions:

RESOLVED:    That the following agreements (collectively, the "**Novation Documents**") and the actions of each of the Company's Officers, Managers, representatives and agents in negotiating, entering into, executing and delivering each of the Novation Documents are hereby approved and ratified as of the date of their execution:

(1) Assignment, Assumption and Novation Agreement dated as of March 31, 2022 by and among the Company, Accredited Surety and Casualty Company, Inc. ("**ASC**") and Philadelphia Academic Health System, LLC ("**PAHS**") attached hereto as **Attachment A**;

(2) Assignment and Assumption of Claims Service Agreement dated as of March 31, 2022 by and between the Company and ASC attached hereto as **Attachment B**; and

(3) Side Letter Agreement dated March 31, 2022 by and between the Company and ASC attached hereto as **Attachment C**.

FURTHER
RESOLVED:    That the Officers of the Company be, and each acting alone is, hereby authorized, empowered and directed, for and on behalf of the Company, to take or cause to be taken any and all such further action as they deem necessary, advisable or appropriate to effect, carry out, perform and comply with the Company's obligations under the Novation Documents and consummate the transactions contemplated therein, including, but not limited to, payment of the consideration due ASC per the terms of the Assignment, Assumption and Novation Agreement and acknowledgement,

Exhibit 2(b)

filing, amendment and delivery of all papers, agreements, documents, instruments and certificates.

FURTHER
RESOLVED:              That the Board has concluded that it is in the best interests of the Company to seek its voluntary dissolution, and in pursuance thereof hereby (1) approves the Memorandum of Understanding Re Global Settlement by and among the Company, PAHS, Philadelphia Academic Medical Associates, LLC ("**PAMA**"), all other debtors in the jointly administered and procedurally consolidated chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware entitled *In re: City Center Healthcare, LLC d/b/a Hahnemann University Hospital*, et. al., Philadelphia Academic Health Holdings, LLC ("**PAHH**" and together with PAHS and PAMA, the "**Members**") and other parties party thereto (the "**Global Settlement Agreement**") in the form attached hereto as <u>**Attachment D**</u>; and (2) approves and adopts the Plan of Dissolution (the "**Plan**") in the form attached hereto as <u>**Attachment E**</u>, including liquidating distributions described therein; and

FURTHER
RESOLVED:              That the Board hereby recommends the dissolution and liquidation of the Company in accordance with the Global Settlement Agreement and Plan to the Members of the Company; and

FURTHER
RESOLVED:              That, subject to approval of the Plan by the Members, the Board hereby authorizes the Officers of the Company, or any of them, to obtain approval to dissolve the Company from the Captive Division of the Vermont Department of Financial Regulation, to execute, carry out and perform the Company's obligations under the Global Settlement Agreement and to take actions in conformity with the Global Settlement Agreement, to finalize the Plan, to prepare and file Articles of Termination with the Vermont Secretary of State, to execute any related documents or instruments, and to take such further action as such Officers, or any of them, deem necessary, advisable or appropriate to complete the winding-up of the Company's affairs in accordance with the Plan as soon as possible; and

FURTHER
RESOLVED:              That, any Officer of the Company shall each, acting alone or with any other Officer of the Company, be, and they hereby are, authorized and directed, for and on behalf of the Company, to

Exhibit 2(b)

execute, acknowledge, file and deliver such agreements, documents, certificates, notices, amendments and other instruments, and to take or cause to be taken such action, as they, or any of them, may deem necessary, advisable or appropriate to carry out the transactions contemplated by these resolutions and otherwise accomplish the purposes and intent of these resolutions; and

FURTHER
RESOLVED:          That the Minutes of the December 8, 2021 Meeting of the Company's Board of Managers is hereby approved in the form attached hereto as **Attachment F**.

The Secretary of the Company is hereby directed to file this instrument with the minutes of the proceedings of the Board of Managers of the Company. The actions taken hereby shall be of the same force and effect as if taken at a meeting of the Board of Managers of the Company, duly called and constituted pursuant to the laws of the State of Vermont.

This Consent may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned Managers have hereunto set their hands as of the ___ day of _____, 2022.

_____          _____
Joel Freedman                                                    Kyle Schmidt


_____
Patrick Theriault

Attachments Omitted;
Available Upon Request

**Exhibit 2(c)**

**Voluntary Dissociation of Membership Interest**

Exhibit 2(c)

## PHILADELPHIA ACADEMIC RISK RETENTION GROUP, LLC

### VOLUNTARY DISSOCIATION OF MEMBERSHIP INTEREST

Pursuant to the Memorandum of Understanding Re Global Settlement by and among the Members of Philadelphia Academic Risk Retention Group, LLC (the "Company"), and other parties party thereto (the "MOU"), Philadelphia Academic Health Holdings, LLC does hereby voluntarily dissociate and withdraw as a Member from the Company, effective as of the MOU Implementation Date, as that term is defined in the MOU.

Dated: _____, 2022

PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC

_____
Duly Authorized Agent

8626283_4:14849-00001

**Exhibit 2(d)**

**Resignations**

Exhibit 2(d)

TO:          The Board of Managers of Philadelphia Academic Risk Retention Group, LLC
             ("**PARRG**")

FROM:        Joel Freedman

DATE:        _____ __, 2022


Ladies and Gentlemen:

        Pursuant to Section 2 of the Memorandum of Understanding Re Global Settlement
Among, *Inter Alia*, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties,
HSRE Entities and CONA Parties (the "**Agreement**"), I hereby submit my resignation as
Manager, Chief Executive Officer and President of PARRG, effective as of the MOU
Implementation Date (as defined in the Agreement), immediately following the voluntary
dissociation and withdrawal of Philadelphia Academic Health Holdings, LLC as a Member of
PARRG.

        .

Sincerely,


_____
Joel Freedman
8620427_7:14849-00001

Exhibit 2(d)

TO:         The Board of Managers of Philadelphia Academic Risk Retention Group, LLC
            ("**PARRG**")

FROM:       Kyle Schmidt

DATE:       _____ __, 2022


Ladies and Gentlemen:

      Pursuant to Section 2 of the Memorandum of Understanding Re Global Settlement
Among, *Inter Alia*, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties,
HSRE Entities and CONA Parties (the "**Agreement**"), I hereby submit my resignation as
Manager and Treasurer of PARRG, effective as of the MOU Implementation Date (as defined in
the Agreement), immediately following the voluntary dissociation and withdrawal of
Philadelphia Academic Health Holdings, LLC as a Member of PARRG.

Sincerely,


_____
Kyle Schmidt
8620424_7:14849-00001

**Exhibit 2(e)**

**Unanimous Written Consent of Members re Manager Replacement**

**Unanimous Written Consent of Board of Managers re Officer Replacement**

Exhibit 2(e)

## UNANIMOUS WRITTEN CONSENT OF THE BOARD OF MANAGERS

### of

### PHILADELPHIA ACADEMIC RISK RETENTION GROUP, LLC

Pursuant to Section 2.8 of the Operating Agreement of Philadelphia Academic Risk Retention Group, LLC, a Vermont limited liability company (the "**Company**"), the undersigned, being all of the members of the Board of Managers of the Company (the "**Board**"), hereby consent to the adoption of the following resolutions:

RESOLVED:      That, effective upon the MOU Implementation Date of the Memorandum of Understanding Re Global Settlement by and among the Company, its Members, all other debtors in the jointly administered and procedurally consolidated chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware entitled *In re: City Center Healthcare, LLC d/b/a Hahnemann University Hospital*, et. al., Philadelphia Academic Health Holdings, LLC ("**PAHH**") and other parties party thereto (the "**Agreement**"), and immediately after PAHH's voluntary dissociation and withdrawal as a Member of the Company pursuant to the Agreement, the resignation of Joel Freedman as the Chief Executive Officer and President of the Company and the resignation of Kyle Schmidt as Treasurer of the Company are both hereby accepted in the forms attached hereto; and

FURTHER
RESOLVED:      That, effective upon the MOU Implementation Date of the Agreement, and immediately upon the resignation of Joel Freedman, Allen D. Wilen is hereby appointed as the Chief Executive Officer and President of the Company, to serve for the remainder of his term and until a successor is duly elected and qualified; and

FURTHER
RESOLVED:      That, effective upon the MOU Implementation Date of the Agreement, and immediately upon the resignation of Kyle Schmidt, John DiNome is hereby appointed as the Treasurer of the Company, to serve for the remainder of his term and until a successor is duly elected and qualified; and

Exhibit 2(e)

FURTHER
RESOLVED:        That the Company's Officers and agents are hereby authorized and
                 directed to take any and all actions deemed necessary or desirable
                 to effectuate the foregoing resolutions.

The Secretary of the Company is hereby directed to file this instrument with the minutes
of the proceedings of the Board of Managers of the Company. The actions taken hereby shall be
of the same force and effect as if taken at a meeting of the Board of Managers of the Company,
duly called and constituted pursuant to the laws of the State of Vermont.

This Consent may be executed in two or more counterparts, each of which shall be
deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned Managers have hereunto set their hands as of
the ___ day of _____, 2022.


_____            _____
Allen D. Wilen                               John Dinome


_____
Patrick Theriault

Exhibit 2(e)

## ATTACHMENTS

## Resignations of Joel Freedman and Kyle Schmidt

[see attached]

8594503_6:14849-00001

Exhibit 2(e)

## UNANIMOUS WRITTEN CONSENT OF THE MEMBERS

### of

## PHILADELPHIA ACADEMIC RISK RETENTION GROUP, LLC

Pursuant to Section 2.8 of the Operating Agreement of Philadelphia Academic Risk Retention Group, LLC (the "**Company**"), the undersigned, being duly authorized representatives of all of the Members of the Company, hereby consent to the adoption of the following resolutions:

RESOLVED: That, effective upon the MOU Implementation Date of the Memorandum of Understanding Re Global Settlement by and among the Company, each undersigned Member, all other debtors in the jointly administered and procedurally consolidated chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware entitled *In re: City Center Healthcare, LLC d/b/a Hahnemann University Hospital*, et. al., Philadelphia Academic Health Holdings, LLC ("**PAHH**") and other parties party thereto (the "**Agreement**"), and immediately after PAHH's voluntary dissociation and withdrawal as a Member of the Company pursuant to the Agreement, the attached resignations of Joel Freedman and Kyle Schmidt as Managers of the Company are both hereby accepted; and

FURTHER
RESOLVED: That, effective upon the MOU Implementation Date of the Agreement, and immediately upon the resignation of Joel Freedman, Allen D. Wilen is hereby appointed as a Manager of the Company, to serve for the remainder of his term and until a successor is duly elected and qualified; and

FURTHER
RESOLVED: That, effective upon the MOU Implementation Date of the Agreement, and immediately upon the resignation of Kyle Schmidt, John DiNome  is hereby appointed as a Manager of the Company, to serve for the remainder of his term and until a successor is duly elected and qualified; and

FURTHER
RESOLVED: That the Company's Officers and agents are hereby authorized and directed to take any and all actions deemed necessary or desirable to effectuate the foregoing resolutions.

*5444206.1*

Exhibit 2(e)

The Secretary of the Company is hereby directed to file this instrument with the minutes of the proceedings of the Members of the Company. The actions taken hereby shall be of the same force and effect as if taken at a meeting of the Members of the Company, duly called and constituted pursuant to the laws of the State of Vermont.

IN WITNESS WHEREOF, the undersigned Members have hereunto set their hands as of the ___ day of _____, 2022.

PHILADELPHIA ACADEMIC MEDICAL
ASSOCIATES, LLC

PHILADELPHIA ACADEMIC HEALTH
SYSTEM, LLC


_____          _____
A Duly Authorized Representative          A Duly Authorized Representative

Exhibit 2(e)

## ATTACHMENTS

### Resignations of Joel Freedman and Kyle Schmidt

[see attached]

8594495_6:14849-00001

**Exhibit 2(f)**
**Declaration re Recovery for Personal Injuries**

Exhibit 2(f)

## AFFIDAVIT OF NON-INVOLVEMENT OF
## AMERICAN ACADEMIC HEALTH SYSTEM, LLC

I, _____, duly sworn according to law, hereby depose and say that:

1.      I am the _____ of American Academic Health System, LLC ("AAHS"), and I am authorized to take this Affidavit on behalf of AAHS.

2.      AAHS was formerly a parent company of Philadelphia Academic Health Holdings, LLC ("PAHH"), and AAHS's assets were assigned for the benefit of AAHS's creditors on _____.

3.      PAHH, as the purchasers' representative, and certain of its affiliates entered into, and consummated the purchase (the "Transaction") of certain assets of Tenet Business Services Corporation and certain of its affiliates (collectively, "Tenet"), including Hahnemann University Hospital, at 11:59 p.m. on January 11, 2018 pursuant to the asset sale agreement with Tenet (the "Agreement").

4.      Based on my review of the books and records of AAHS, AAHS was never a party to the Agreement or a purchaser of any of the assets acquired in the Transaction, and AAHS did not provide any medical care to any person.

_____

Sworn to and subscribed

before me this        day
of
_____
Notary Public

40201958.3

Exhibit 2(f)

## AFFIDAVIT OF NON-INVOLVEMENT OF
## PALADIN HEALTHCARE CAPITAL, LLC

I, Joel Freedman, duly sworn according to law, hereby depose and say that:

1.     I am the Chief Executive Officer of Paladin Healthcare Capital, LLC ("Paladin"), and I am authorized to take this Affidavit on behalf of Paladin.

2.     On February 15, 2017, Paladin entered into a Non-Binding Letter of Intent (the "Letter of Intent") to purchase certain assets of Tenet Business Services Corporation and certain of its affiliates ("Tenet"), including but not limited to Hahnemann University Hospital and St. Christopher's Hospital for Children (the "Transaction").

3.     Prior to entering into an asset sale agreement contemplated in the Letter of Intent, Paladin designated Philadelphia Academic Health Holdings, LLC ("PAHH") and other affiliates of PAHH (or their respective designees) as the parties to enter into an asset sale agreement and other definitive purchase documents contemplated in the Letter of Intent.

4.     PAHH, as the purchasers' representative, and certain of its affiliates entered into, and consummated the Transaction on January 11, 2018 pursuant to, the asset sale agreement with Tenet (the "Agreement").

5.     Paladin was never a party to the Agreement or a purchaser of any of the assets acquired in the Transaction.

6.     Paladin has no ownership interest in PAHH, any of the assets acquired in the Transaction or any of the purchasers party to the Agreement.

_____
Joel Freedman

Sworn to and subscribed
before me this        day
of                   .
_____
Notary Public

**Exhibit 3(a)(iii)**
**Original Documents to be released by**
**Third Party Escrow Agent for Recordation / Filing**

███████████

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Martin J. Doyle, Esquire

**B. E-MAIL CONTACT AT FILER (optional)**
martin.doyle@saul.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
53618498, 53896793, 53897040

**1b.** ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND   Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b; and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Paladin Healthcare Capital, LLC | | | |
| OR  9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
Pennsylvania - Philadelphia County Recorder

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form
**53618498, 53896793, 53897040**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:  Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME
**Paladin Healthcare Capital, LLC**

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13):  Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME
**Broad Street Healthcare Properties, LLC**

OR

| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. THIS FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:
**See Schedule A attached hereto and made a part hereof.**

18. MISCELLANEOUS:
**Pennsylvania - Philadelphia County Recorder**

**SCHEDULE A**
**Legal Description of the Premises**

**TRACT I:**

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNON! ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1) THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2) THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8) THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, N11 '21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

Schedule A - 1

10)     THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 7.619' TO A POINT;

11)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12)     THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.        53316755.

**AND**

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNON] ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1)      THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2)      THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

3)    THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

4)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

3

1)   THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

2)   THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3)   THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)   THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)   THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)   THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)   THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)  THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

1.   Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

2.   South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

3.      North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

4.      Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Martin J. Doyle, Esquire

**B. E-MAIL CONTACT AT FILER (optional)**
martin.doyle@saul.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
53897043

**1b.** ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | Paladin Healthcare Capital, LLC, as Agent | | | |
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
Pennsylvania - Philadelphia County Recorder

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form
**53897043**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME
**Paladin Healthcare Capital, LLC, as Agent**

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13):  Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME
**Broad Street Healthcare Properties, LLC**

OR

13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut    ☐ covers as-extracted collateral    ☑ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

**See Schedule A attached hereto and made a part hereof.**

18. MISCELLANEOUS:
Pennsylvania - Philadelphia County Recorder

**SCHEDULE A**
**Legal Description of the Premises**

**TRACT I:**

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1)     THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2)     THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3)     THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4)     THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5)     THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6)     THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8)     THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9)     THENCE: CONTINUING ALONG SAME, N11'21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

10)   THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 7.619' TO A POINT;

11)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12)   THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.      53316755.

**AND**

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNON] ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1)   THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2)   THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

2

3)      THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

3

1)   THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

2)   THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3)   THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)   THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)   THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)   THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)   THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)  THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

1.   Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

2.   South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

4

3.  North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

4.  Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

**Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**53897046**

1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | **Paladin Healthcare Capital, LLC, as Agent** | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
Pennsylvania - Philadelphia County Recorder

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

| |
|---|
| 11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form<br>**53897046** |
| 12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:  Same as item 9 on Amendment form |

| | |
|---|---|
| | 12a. ORGANIZATION'S NAME<br>**Paladin Healthcare Capital, LLC, as Agent** |
| OR | 12b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

| | | | | |
|---|---|---|---|---|
| | 13a. ORGANIZATION'S NAME<br>**Broad Street Healthcare Properties, LLC** | | | |
| OR | 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

| | |
|---|---|
| 15. This FINANCING STATEMENT AMENDMENT:<br><br>☐ covers timber to be cut  ☐ covers as-extracted collateral  ☑ is filed as a fixture filing<br>16. Name and address of a RECORD OWNER of real estate described in item 17<br>(if Debtor does not have a record interest): | 17. Description of real estate:<br>**See Schedule A attached hereto and made a part hereof.** |

18. MISCELLANEOUS:
**Pennsylvania - Philadelphia County Recorder**

**SCHEDULE A**
**Legal Description of the Premises**

**TRACT I:**

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNON! ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1)    THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2)    THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4)    THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8)    THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9)    THENCE: CONTINUING ALONG SAME, N11'21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

10)     THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 7.619' TO A POINT;

11)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12)     THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018  in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.        53316755.

**AND**

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNON] ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1)     THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2)     THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

2

3)    THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

4)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

2)      THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)      THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)      THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)      THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)     THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

1.      Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

2.      South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

4

3.      North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

4.      Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Martin J. Doyle, Esquire

**B. E-MAIL CONTACT AT FILER (optional)**
martin.doyle@saul.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
53618499, 53645870, 53896794, 53897041

**1b.** [✓] This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** [✓] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** [ ] **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** [ ] **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects [ ] Debtor or [ ] Secured Party of record

AND Check one of these three boxes to:

[ ] CHANGE name and/or address: Complete item 6a or 6b, and item 7a or 7b and item 7c  [ ] ADD name: Complete item 7a or 7b, and item 7c  [ ] DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**7   CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** [ ] **COLLATERAL CHANGE:** Also check one of these four boxes: [ ] ADD collateral  [ ] DELETE collateral  [ ] RESTATE covered collateral  [ ] ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here [ ] and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Paladin Healthcare Capital, LLC | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:**
Pennsylvania - Philadelphia County Recorder

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev 04/20/11)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form
**53618499, 53645870, 53896794, 53897041**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

OR

12a. ORGANIZATION'S NAME
**Paladin Healthcare Capital, LLC**

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

OR

13a. ORGANIZATION'S NAME
**Broad Street Healthcare Properties II, LLC**

13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut  ☐ covers as-extracted collateral  ☑ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

**See Schedule A attached hereto and made a part hereof.**

18. MISCELLANEOUS:
**Pennsylvania - Philadelphia County Recorder**

## SCHEDULE A
### Legal Description of the Premises

**TRACT II:**

**Lot 1 – HUH North Fee Parcel:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2) THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3) THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4) THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT 1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

**Lot 1 – HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>**Martin J. Doyle, Esquire** | |
| B. E-MAIL CONTACT AT FILER (optional)<br>**martin.doyle@saul.com** | |
| C. SEND ACKNOWLEDGMENT TO:   (Name and Address)<br><br>⌐ **Martin J. Doyle, Esq.**<br>**Saul Ewing Arnstein & Lehr LLP**<br>**Centre Square West**<br>**1500 Market Street, 38th Floor**<br>**Philadelphia, PA 19102** ⌐ | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER<br>**53897044** | 1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record]<br>(or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| OR | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| OR | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE:  Also check one of these four boxes: ☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| OR | 9a. ORGANIZATION'S NAME<br>**Paladin Healthcare Capital, LLC, as Agent** | | | |
|---|---|---|---|---|
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
Pennsylvania - Philadelphia County Recorder

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form

**53897044**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME

**Paladin Healthcare Capital, LLC , as Agent**

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)       SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties II, LLC**

OR

| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut    ☐ covers as-extracted collateral    ☑ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

**See Schedule A attached hereto and made a part hereof.**

18. MISCELLANEOUS:

**Pennsylvania - Philadelphia County Recorder**

**SCHEDULE A**
**Legal Description of the Premises**

**TRACT II:**

**Lot 1 – HUH North Fee Parcel:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)  THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;

2)  THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;

3)  THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;

4)  THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT 1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

**Lot 1 – HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Martin J. Doyle, Esquire

**B. E-MAIL CONTACT AT FILER** (optional)
martin.doyle@saul.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

⌐ Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102 ⌐

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| 53897047 | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Paladin Healthcare Capital, LLC, as Agent | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
Pennsylvania - Philadelphia County Recorder

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form
**53897047**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME

**Paladin Healthcare Capital, LLC , as Agent**

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties II, LLC**

OR

| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut    ☐ covers as-extracted collateral    ☑ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

**See Schedule A attached hereto and made a part hereof.**

18. MISCELLANEOUS:
Pennsylvania - Philadelphia County Recorder

## SCHEDULE A
### Legal Description of the Premises

**TRACT II:**

**Lot 1 – HUH North Fee Parcel:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2) THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3) THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4) THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT 1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

**Lot 1 – HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
**Martin J. Doyle, Esquire**

**B. E-MAIL CONTACT AT FILER (optional)**
**martin.doyle@saul.com**

**C. SEND ACKNOWLEDGMENT TO:    (Name and Address)**

⌐ **Martin J. Doyle, Esq.**
   **Saul Ewing Arnstein & Lehr LLP**
   **Centre Square West**
   **1500 Market Street, 38th Floor**
   **Philadelphia, PA 19102** ⌐

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| **53618500, 53896795, 53897042** | (or recorded) in the REAL ESTATE RECORDS |
| | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

**2.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | **Paladin Healthcare Capital, LLC** | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
Pennsylvania - Philadelphia County Recorder

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form
**53618500, 53896795, 53897042**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:  Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME
**Paladin Healthcare Capital, LLC**

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13):  Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME
**Broad Street Healthcare Properties III, LLC**

OR

13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut    ☐ covers as-extracted collateral    ☑ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17
   (if Debtor does not have a record interest):

17. Description of real estate:

**See Schedule A attached hereto and made a part hereof.**

18. MISCELLANEOUS:
**Pennsylvania - Philadelphia County Recorder**

**SCHEDULE A**
**Legal Description of the Premises**

**TRACT III:**

**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;

2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;

7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;

8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;

10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;

11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;

12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;

13)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;

14)    THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1)    THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;

2)    THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;

3)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;

4)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;

2

7)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;

8)    THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;

9)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;

10)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;

11)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

12)    THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16)    THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22)    THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

3

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Martin J. Doyle, Esquire

**B. E-MAIL CONTACT AT FILER (optional)**
martin.doyle@saul.com

**C. SEND ACKNOWLEDGMENT TO:    (Name and Address)**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 53897045 | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                     AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b; and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | Paladin Healthcare Capital, LLC, as Agent | | | |
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
Pennsylvania - Philadelphia County Recorder

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

| 11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form |
|---|
| **53897045** |

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

OR

| 12a. ORGANIZATION'S NAME |  |
|---|---|
| **Paladin Healthcare Capital, LLC**, as Agent | |
| 12b. INDIVIDUAL'S SURNAME | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

OR

| 13a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Broad Street Healthcare Properties III, LLC** | | | |
| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

| 15. This FINANCING STATEMENT AMENDMENT: | 17. Description of real estate: |
|---|---|
| ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☑ is filed as a fixture filing | **See Schedule A attached hereto and made a part hereof.** |
| 16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest): | |

| 18. MISCELLANEOUS: |
|---|
| Pennsylvania - Philadelphia County Recorder |

**SCHEDULE A**
**Legal Description of the Premises**

**TRACT III:**

**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;

2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;

7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;

8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;

10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;

11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;

12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;

13) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;

14) THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1) THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;
2) THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;
3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;
4) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;
5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;
6) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;

2

7)      THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;

8)      THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;

9)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;

10)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;

11)     THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

12)     THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16)     THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20)     THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22)     THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

3

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:    (Name and Address)

**Martin J. Doyle, Esq.**
**Saul Ewing Arnstein & Lehr LLP**
**Centre Square West**
**1500 Market Street, 38th Floor**
**Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| **53897048** | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                          AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b; and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Paladin Healthcare Capital, LLC, as Agent** | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Pennsylvania - Philadelphia County Recorder**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

| 11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form |
|---|
| **53897048** |

| 12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form |
|---|

| | 12a. ORGANIZATION'S NAME |
|---|---|
| | **Paladin Healthcare Capital, LLC , as Agent** |
| OR | 12b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

| | 13a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|---|
| | **Broad Street Healthcare Properties III, LLC** | | | |
| OR | 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

| 15. This FINANCING STATEMENT AMENDMENT: | 17. Description of real estate: |
|---|---|
| ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☑ is filed as a fixture filing | **See Schedule A attached hereto and made a part hereof.** |
| 16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest): | |

18. MISCELLANEOUS:
Pennsylvania - Philadelphia County Recorder

**SCHEDULE A**
**Legal Description of the Premises**

**TRACT III:**

**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;

2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;

7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;

8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;

10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;

11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;

12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;

13) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;

14) THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1) THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;

2) THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;

7)      THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;

8)      THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;

9)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;

10)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;

11)     THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

12)     THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16)     THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20)     THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22)     THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

BROAD STREET HEALTHCARE PROPERTIES, LLC

# UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

**Martin J. Doyle, Esq.**
**Saul Ewing Arnstein & Lehr LLP**
**Centre Square West**
**1500 Market Street, 38th Floor**
**Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| **20200180101** | |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:           **AND** Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record      ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c     ☐ ADD name: Complete item 7a or 7b, and item 7c     ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ COLLATERAL CHANGE:  Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | **Paladin Healthcare Capital, LLC** | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>**Martin J. Doyle, Esquire** | |
| B. E-MAIL CONTACT AT FILER (optional)<br>**martin.doyle@saul.com** | |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address)<br><br>**Martin J. Doyle, Esq.**<br>**Saul Ewing Arnstein & Lehr LLP**<br>**Centre Square West**<br>**1500 Market Street, 38th Floor**<br>**Philadelphia, PA 19102** | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER<br>**20210473679** | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]<br>(or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b, and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| OR | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| OR | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| OR | 9a. ORGANIZATION'S NAME<br>**Front Street Healthcare Properties, LLC** | | | |
|---|---|---|---|---|
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:    (Name and Address)

**Martin J. Doyle, Esq.**
**Saul Ewing Arnstein & Lehr LLP**
**Centre Square West**
**1500 Market Street, 38th Floor**
**Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| **20218660426** | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

OR

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

OR

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE:  Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

OR

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Paladin Healthcare Capital, LLC, as Agent** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Martin J. Doyle, Esq.**
**Saul Ewing Arnstein & Lehr LLP**
**Centre Square West**
**1500 Market Street, 38th Floor**
**Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| **20218660541** | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record      ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | **Paladin Healthcare Capital, LLC, as Agent** | | | |
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

BROAD STREET HEALTHCARE PROPERTIES II, LLC

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Martin J. Doyle, Esq.**
**Saul Ewing Arnstein & Lehr LLP**
**Centre Square West**
**1500 Market Street, 38th Floor**
**Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER **20200180671** | 1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
☐ This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME **Paladin Healthcare Capital, LLC** | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

**Martin J. Doyle, Esq.**
**Saul Ewing Arnstein & Lehr LLP**
**Centre Square West**
**1500 Market Street, 38th Floor**
**Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| **20210473836** | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION:  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:          AND Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record       ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c      ☐ ADD name: Complete item 7a or 7b, and item 7c      ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes:    ☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | **Front Street Healthcare Properties, LLC** | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Martin J. Doyle, Esquire

**B. E-MAIL CONTACT AT FILER (optional)**
martin.doyle@saul.com

**C. SEND ACKNOWLEDGMENT TO:    (Name and Address)**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| **20218660467** | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    **AND** Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | **Paladin Healthcare Capital, LLC, as Agent** | | | |
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

10. OPTIONAL FILER REFERENCE DATA:
Delaware Secretary of State

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Martin J. Doyle, Esq.**
**Saul Ewing Arnstein & Lehr LLP**
**Centre Square West**
**1500 Market Street, 38th Floor**
**Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| **20218660632** | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
   For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| OR | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| OR | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| OR | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | **Paladin Healthcare Capital, LLC, as Agent** | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

BROAD STREET HEALTHCARE PROPERTIES III, LLC

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**Martin.Doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**Martin J. Doyle, Esq.**
**Saul Ewing Arnstein & Lehr LLP**
**Centre Square West**
**1500 Market Street, 38th Floor**
**Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| **20200180846** | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: **AND** Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | **Paladin Healthcare Capital, LLC** | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**20210473950**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE:  Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME **Front Street Healthcare Properties, LLC** | | | |
|---|---|---|---|---|
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> **Martin J. Doyle, Esq.**
> **Saul Ewing Arnstein & Lehr LLP**
> **Centre Square West**
> **1500 Market Street, 38th Floor**
> **Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**20218660483**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                              AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record      ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c      ☐ ADD name: Complete item 7a or 7b, and item 7c      ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE:  Also check one of these four boxes:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Paladin Healthcare Capital, LLC, as Agent** | | | |
| OR  9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Martin J. Doyle, Esquire**

B. E-MAIL CONTACT AT FILER (optional)
**martin.doyle@saul.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Martin J. Doyle, Esq.**
**Saul Ewing Arnstein & Lehr LLP**
**Centre Square West**
**1500 Market Street, 38th Floor**
**Philadelphia, PA 19102**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| **20218660772** | |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:          AND  Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record          ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c          ☐ ADD name: Complete item 7a or 7b, and item 7c          ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:   Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:   Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:   Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | **Paladin Healthcare Capital, LLC, as Agent** | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

Exhibit 3(a)(iii)

**Prepared By:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Return To:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Parcel #772025002; #772028498; #881038202**

## RELEASE OF MORTGAGE

      **THIS RELEASE OF MORTGAGE** (the "Release") is made as of _____, 2022, and effective as of _____, 2022, by **PALADIN HEALTHCARE CAPITAL, LLC**, a Delaware limited liability company, as Agent (the "Mortgagee"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503, in favor of **BROAD STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company (the "Mortgagor"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503.

### W I T N E S S E T H

      A.     On October 27, 2021, Mortgagor executed and delivered a certain Open-End Mortgage and Security Agreement, effective as of October 28, 2021 (the "Mortgage"), in favor of Mortgagee.  The Mortgage was recorded on November 2, 2021 in the Office of the Recorder of Deeds of Philadelphia County, Pennsylvania, in Document Id# 53899056.

      B.     Pursuant to the terms of the Mortgage, Mortgagor granted Mortgagee a lien upon certain premises located in Philadelphia County, Pennsylvania, as more particularly described in Exhibit A (the "Mortgaged Premises").  The Mortgage secures certain obligations of Mortgagor (the "Obligations"), including the payment of  an indebtedness in the original principal amount of Three Million Dollars ($3,000,000.00), with interest, as more particularly described in the Mortgage.

Exhibit 3(a)(iii)

**NOW, THEREFORE,** Mortgagee, for and consideration of the sum of Ten Dollars ($10.00) paid by Mortgagor at the time of the execution of this Release and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has granted, released, quit-claimed, remised, exonerated, discharged and set over, and by these presents does grant, release, quit-claim, remise, exonerate, discharge and set over the Mortgaged Premises unto Mortgagor, its successors and assigns.

**TO HAVE AND TO HOLD** the Mortgaged Premises, with the appurtenances, unto Mortgagor, its successors and assigns, forever freed, exonerated and discharged of and from the lien of the Mortgage, and every part thereof.

**AND THE MORTGAGEE** also releases, discharges and terminates its lien and security interest in all other property covered by the Mortgage, including, without limitation, all machinery, equipment and other personal property located on or used in connection with the operation of the Mortgaged Premises, and all leases, rents, issues and profits of the Mortgaged Premises.

[Signatures page follows]

Exhibit 3(a)(iii)

**IN WITNESS WHEREOF**, Mortgagee has executed this Release of Mortgage as of the day and year first above written.

**MORTGAGEE:**

**PALADIN HEALTHCARE CAPITAL, LLC,**
a Delaware limited liability company, as Agent

By: _____

Name: _____

Title: _____


COMMONWEALTH OF PENNSYLVANIA    :

                                                       :      SS

COUNTY OF _____    :

        On this _____ day of _____, 2022, before me a Notary Public in and for the Commonwealth of Pennsylvania, the undersigned officer, personally appeared _____, who acknowledged him/herself to be the _____ of _____, a Delaware limited liability company, and that he/she as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by him/herself as such officer.

        In  Witness Whereof, I hereunto set my hand and official seal.

_____[SEAL]
Notary Public

My Commission Expires:


_____

Exhibit 3(a)(iii)

**EXHIBIT A**
**Legal Description of Mortgaged Premises**

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1) THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2) THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8) THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

10) THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 27.619' TO A POINT;

11)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12)   THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018  in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.     53316755.

AND

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1)   THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2)   THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

3)   THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

Exhibit 3(a)(iii)

4)     THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)     THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)     THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

1)     THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

2)     THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)    THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)    THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)    THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)    THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

Exhibit 3(a)(iii)

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(iii)

**Prepared By:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102


**Return To:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Parcel #772025002; #772028498; #881038202**


## RELEASE OF MORTGAGE

      **THIS RELEASE OF MORTGAGE** (the "Release") is made as of _____, 2022, and effective as of _____, 2022, by **PALADIN HEALTHCARE CAPITAL, LLC**, a Delaware limited liability company, as Agent (the "Mortgagee"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503, in favor of **BROAD STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company (the "Mortgagor"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503.

### W I T N E S S E T H

      A.      On January 7, 2020, Mortgagor executed and delivered a certain Open-End Mortgage and Security Agreement, effective as of January 8, 2020, to Joel Freedman, recorded on January 14, 2020 in Document Id# 53618447, which Joel Freedman assigned to Paladin Healthcare Capital, LLC on October 27, 2021, effective as of October 28, 2021, recorded on November 2, 2021 in Document Id# 53899050. On October 27, 2021, Mortgagor executed and delivered a certain Amended and Restated Open-End Mortgage and Security Agreement (the "Mortgage"), effective as of October 28, 2021, in favor of Mortgagee.  The Mortgage was recorded on November 2, 2021 in the Office of the Recorder of Deeds of Philadelphia County, Pennsylvania, in Document Id# 53899053.

      B.      Pursuant to the terms of the Mortgage, Mortgagor granted Mortgagee a lien upon certain premises located in Philadelphia County, Pennsylvania, as more particularly described in Exhibit A (the "Mortgaged Premises").  The Mortgage secures certain obligations of Mortgagor (the "Obligations"), including the payment of  an indebtedness in the original principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00), with interest, as more particularly described in the Mortgage.

Exhibit 3(a)(iii)

      **NOW, THEREFORE,** Mortgagee, for and consideration of the sum of Ten Dollars ($10.00) paid by Mortgagor at the time of the execution of this Release and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has granted, released, quit-claimed, remised, exonerated, discharged and set over, and by these presents does grant, release, quit-claim, remise, exonerate, discharge and set over the Mortgaged Premises unto Mortgagor, its successors and assigns.

      **TO HAVE AND TO HOLD** the Mortgaged Premises, with the appurtenances, unto Mortgagor, its successors and assigns, forever freed, exonerated and discharged of and from the lien of the Mortgage, and every part thereof.

      **AND THE MORTGAGEE** also releases, discharges and terminates its lien and security interest in all other property covered by the Mortgage, including, without limitation, all machinery, equipment and other personal property located on or used in connection with the operation of the Mortgaged Premises, and all leases, rents, issues and profits of the Mortgaged Premises.

[Signatures page follows]

Exhibit 3(a)(iii)

**IN WITNESS WHEREOF**, Mortgagee has executed this Release of Mortgage as of the day and year first above written.

MORTGAGEE:

**PALADIN HEALTHCARE CAPITAL, LLC,**
a Delaware limited liability company, as Agent

By: _____

Name: _____

Title: _____

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | SS |
| COUNTY OF _____ | : | |

On this _____ day of _____, 2022, before me a Notary Public in and for the Commonwealth of Pennsylvania, the undersigned officer, personally appeared _____, who acknowledged him/herself to be the _____ of _____, a Delaware limited liability company, and that he/she as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by him/herself as such officer.

In  Witness Whereof, I hereunto set my hand and official seal.

_____[SEAL]
Notary Public

My Commission Expires:

_____

Exhibit 3(a)(iii)

## EXHIBIT A
## Legal Description of Mortgaged Premises

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1) THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2) THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8) THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

10) THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 27.619' TO A POINT;

Exhibit 3(a)(iii)

11) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12) THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.      53316755.

AND

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1) THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2) THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

3) THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

Exhibit 3(a)(iii)

5)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the  Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

1)    THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

2)    THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

Exhibit 3(a)(iii)

3)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)      THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)      THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)      THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)     THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

Exhibit 3(a)(iii)

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(iii)

**Prepared By:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Return To:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Parcel #885620242**

## RELEASE OF MORTGAGE

**THIS RELEASE OF MORTGAGE** (the "Release") is made as of _____, 2022, and effective as of _____, 2022 by **PALADIN HEALTHCARE CAPITAL, LLC**, a Delaware limited liability company, as Agent (the "Mortgagee"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503, in favor of **BROAD STREET HEALTHCARE PROPERTIES II, LLC**, a Delaware limited liability company (the "Mortgagor"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503.

## W I T N E S S E T H

A.    On October 27, 2021, Mortgagor executed and delivered a certain Open-End Mortgage and Security Agreement, effective as of October 28, 2021 (the "Mortgage"), in favor of Mortgagee.  The Mortgage was recorded on November 2, 2021 in the Office of the Recorder of Deeds of Philadelphia County, Pennsylvania, in Document Id# 53899057.

B.    Pursuant to the terms of the Mortgage, Mortgagor granted Mortgagee a lien upon certain premises located in Philadelphia County, Pennsylvania, as more particularly described in Exhibit A (the "Mortgaged Premises").  The Mortgage secures certain obligations of Mortgagor (the "Obligations"), including the payment of  an indebtedness in the original principal amount of Three Million Dollars ($3,000,000.00), with interest, as more particularly described in the Mortgage.

Exhibit 3(a)(iii)

**NOW, THEREFORE,** Mortgagee, for and consideration of the sum of Ten Dollars ($10.00) paid by Mortgagor at the time of the execution of this Release and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has granted, released, quit-claimed, remised, exonerated, discharged and set over, and by these presents does grant, release, quit-claim, remise, exonerate, discharge and set over the Mortgaged Premises unto Mortgagor, its successors and assigns.

**TO HAVE AND TO HOLD** the Mortgaged Premises, with the appurtenances, unto Mortgagor, its successors and assigns, forever freed, exonerated and discharged of and from the lien of the Mortgage, and every part thereof.

**AND THE MORTGAGEE** also releases, discharges and terminates its lien and security interest in all other property covered by the Mortgage, including, without limitation, all machinery, equipment and other personal property located on or used in connection with the operation of the Mortgaged Premises, and all leases, rents, issues and profits of the Mortgaged Premises.

[Signatures page follows]

Exhibit 3(a)(iii)

**IN WITNESS WHEREOF**, Mortgagee has executed this Release of Mortgage as of the day and year first above written.

**MORTGAGEE:**

**PALADIN HEALTHCARE CAPITAL, LLC,**
a Delaware limited liability company, as Agent

By: _____

Name: _____

Title: _____

COMMONWEALTH OF PENNSYLVANIA        :
                                                                       :        SS

COUNTY OF _____        :

On this _____ day of _____, 2022, before me a Notary Public in and for the Commonwealth of Pennsylvania, the undersigned officer, personally appeared _____, who acknowledged him/herself to be the _____ of _____, a Delaware limited liability company, and that he/she as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by him/herself as such officer.

In  Witness Whereof, I hereunto set my hand and official seal.

_____[SEAL]
Notary Public

My Commission Expires:

_____

Exhibit 3(a)(iii)

# EXHIBIT A
## Legal Description of Mortgaged Premises

Lot 1 – HUH North Fee Parcel:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)    THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2)    THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3)    THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4)    THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT  1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

Lot 1 – HUH North Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(iii)

**Prepared By:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Return To:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Parcel #885620242**

### RELEASE OF MORTGAGE

      **THIS RELEASE OF MORTGAGE** (the "Release") is made as of _____, 2022, and effective as of _____, 2022, by **PALADIN HEALTHCARE CAPITAL, LLC**, a Delaware limited liability company, as Agent (the "Mortgagee"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503, in favor of **BROAD STREET HEALTHCARE PROPERTIES II, LLC**, a Delaware limited liability company (the "Mortgagor"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503.

### W I T N E S S E T H

      A.      On January 7, 2020, Mortgagor executed and delivered a certain Open-End Mortgage and Security Agreement, effective as of January 8, 2020, to Joel Freedman, recorded on January 14, 2020 in Document Id# 53618448, which Joel Freedman assigned to Paladin Healthcare Capital, LLC on October 27, 2021, effective as of October 28, 2021, recorded on November 2, 2021 in Document Id# 53899051. On October 27, 2021, Mortgagor executed and delivered a certain Amended and Restated Open-End Mortgage and Security Agreement (the "Mortgage"), effective as of October 28, 2021, in favor of Mortgagee.  The Mortgage was recorded on November 2, 2021 in the Office of the Recorder of Deeds of Philadelphia County, Pennsylvania, in Document Id# 53899054.

      B.      Pursuant to the terms of the Mortgage, Mortgagor granted Mortgagee a lien upon certain premises located in Philadelphia County, Pennsylvania, as more particularly described in Exhibit A (the "Mortgaged Premises").  The Mortgage secures certain obligations of Mortgagor (the "Obligations"), including the payment of  an indebtedness in the original principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00), with interest, as more particularly described in the Mortgage.

Exhibit 3(a)(iii)

**NOW, THEREFORE,** Mortgagee, for and consideration of the sum of Ten Dollars ($10.00) paid by Mortgagor at the time of the execution of this Release and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has granted, released, quit-claimed, remised, exonerated, discharged and set over, and by these presents does grant, release, quit-claim, remise, exonerate, discharge and set over the Mortgaged Premises unto Mortgagor, its successors and assigns.

**TO HAVE AND TO HOLD** the Mortgaged Premises, with the appurtenances, unto Mortgagor, its successors and assigns, forever freed, exonerated and discharged of and from the lien of the Mortgage, and every part thereof.

**AND THE MORTGAGEE** also releases, discharges and terminates its lien and security interest in all other property covered by the Mortgage, including, without limitation, all machinery, equipment and other personal property located on or used in connection with the operation of the Mortgaged Premises, and all leases, rents, issues and profits of the Mortgaged Premises.

[Signatures page follows]

Exhibit 3(a)(iii)

**IN WITNESS WHEREOF**, Mortgagee has executed this Release of Mortgage as of the day and year first above written.

**MORTGAGEE:**

**PALADIN HEALTHCARE CAPITAL, LLC,**
a Delaware limited liability company, as Agent

By: _____

Name: _____

Title: _____


COMMONWEALTH OF PENNSYLVANIA         :

                                                    :         SS

COUNTY OF _____         :

                  On this _____ day of _____, 2022, before me a Notary Public in and for the Commonwealth of Pennsylvania, the undersigned officer, personally appeared _____, who acknowledged him/herself to be the _____ of _____, a Delaware limited liability company, and that he/she as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by him/herself as such officer.

                  In  Witness Whereof, I hereunto set my hand and official seal.

_____[SEAL]
Notary Public

My Commission Expires:

_____

Exhibit 3(a)(iii)

## EXHIBIT A
### Legal Description of Mortgaged Premises

Lot 1 – HUH North Fee Parcel:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2)      THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3)      THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4)      THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT  1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

Lot 1 – HUH North Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(iii)

**Prepared By:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Return To:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Parcel #885467862; #772028496**

## RELEASE OF MORTGAGE

**THIS RELEASE OF MORTGAGE** (the "Release") is made as of _____, 2022, and effective as of _____, 2022, by **PALADIN HEALTHCARE CAPITAL, LLC,** a Delaware limited liability company, as Agent (the "Mortgagee"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503, in favor of **BROAD STREET HEALTHCARE PROPERTIES III, LLC,** a Delaware limited liability company (the "Mortgagor"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503.

### W I T N E S S E T H

A.     On October 27, 2021, Mortgagor executed and delivered a certain Open-End Mortgage and Security Agreement, effective as of October 28, 2021 (the "Mortgage"), in favor of Mortgagee.  The Mortgage was recorded on November 2, 2021 in the Office of the Recorder of Deeds of Philadelphia County, Pennsylvania, in Document Id# 53899058.

B.     Pursuant to the terms of the Mortgage, Mortgagor granted Mortgagee a lien upon certain premises located in Philadelphia County, Pennsylvania, as more particularly described in Exhibit A (the "Mortgaged Premises").  The Mortgage secures certain obligations of Mortgagor (the "Obligations"), including the payment of  an indebtedness in the original principal amount of Three Million Dollars ($3,000,000.00), with interest, as more particularly described in the Mortgage.

Exhibit 3(a)(iii)

      **NOW, THEREFORE,** Mortgagee, for and consideration of the sum of Ten Dollars ($10.00) paid by Mortgagor at the time of the execution of this Release and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has granted, released, quit-claimed, remised, exonerated, discharged and set over, and by these presents does grant, release, quit-claim, remise, exonerate, discharge and set over the Mortgaged Premises unto Mortgagor, its successors and assigns.

      **TO HAVE AND TO HOLD** the Mortgaged Premises, with the appurtenances, unto Mortgagor, its successors and assigns, forever freed, exonerated and discharged of and from the lien of the Mortgage, and every part thereof.

      **AND THE MORTGAGEE** also releases, discharges and terminates its lien and security interest in all other property covered by the Mortgage, including, without limitation, all machinery, equipment and other personal property located on or used in connection with the operation of the Mortgaged Premises, and all leases, rents, issues and profits of the Mortgaged Premises.

[Signatures page follows]

Exhibit 3(a)(iii)

**IN WITNESS WHEREOF**, Mortgagee has executed this Release of Mortgage as of the day and year first above written.

**MORTGAGEE:**

**PALADIN HEALTHCARE CAPITAL, LLC,**
a Delaware limited liability company, as Agent

By: _____

Name: _____

Title: _____

COMMONWEALTH OF PENNSYLVANIA          :

                                               :          SS

COUNTY OF _____          :

On this _____ day of _____, 2022, before me a Notary Public in and for the Commonwealth of Pennsylvania, the undersigned officer, personally appeared _____, who acknowledged him/herself to be the _____ of _____, a Delaware limited liability company, and that he/she as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by him/herself as such officer.

In  Witness Whereof, I hereunto set my hand and official seal.

_____[SEAL]
Notary Public

My Commission Expires:

_____

Exhibit 3(a)(iii)

# EXHIBIT A
## Legal Description of Mortgaged Premises

**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;
2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;
3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;
4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;
5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;
6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;
7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;
8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;
9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;
12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;
13) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
14) THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1) THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;
2) THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;
3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;
4) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;
5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;
6) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;
7) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;
8) THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;
9) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

12) THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16) THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22) THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

Exhibit 3(a)(iii)

**Prepared By:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Return To:**

Martin J. Doyle, Esq.
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

**Parcel #885467862; #772028496**

## RELEASE OF MORTGAGE

**THIS RELEASE OF MORTGAGE** (the "Release") is made as of _____, 2022, and effective as of _____, 2022, by **PALADIN HEALTHCARE CAPITAL, LLC,** a Delaware limited liability company, as Agent (the "Mortgagee"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503, in favor of **BROAD STREET HEALTHCARE PROPERTIES III, LLC,** a Delaware limited liability company (the "Mortgagor"), having an address at 21143 Hawthorne Boulevard, #505, Torrance, CA 90503.

## W I T N E S S E T H

A.    On January 7, 2020, Mortgagor executed and delivered a certain Open-End Mortgage and Security Agreement, effective as of January 8, 2020, to Joel Freedman, recorded on January 14, 2020 in Document Id# 53618449, which Joel Freedman assigned to Paladin Healthcare Capital, LLC on October 27, 2021, effective as of October 28, 2021, recorded on November 2, 2021 in Document Id# 53899052. On October 27, 2021, Mortgagor executed and delivered a certain Amended and Restated Open-End Mortgage and Security Agreement (the "Mortgage"), effective as of October 28, 2021, in favor of Mortgagee.  The Mortgage was recorded on November 2, 2021 in the Office of the Recorder of Deeds of Philadelphia County, Pennsylvania, in Document Id# 53899055.

B.    Pursuant to the terms of the Mortgage, Mortgagor granted Mortgagee a lien upon certain premises located in Philadelphia County, Pennsylvania, as more particularly described in Exhibit A (the "Mortgaged Premises").  The Mortgage secures certain obligations of Mortgagor (the "Obligations"), including the payment of  an indebtedness in the original principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00), with interest, as more particularly described in the Mortgage.

Exhibit 3(a)(iii)

**NOW, THEREFORE,** Mortgagee, for and consideration of the sum of Ten Dollars ($10.00) paid by Mortgagor at the time of the execution of this Release and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has granted, released, quit-claimed, remised, exonerated, discharged and set over, and by these presents does grant, release, quit-claim, remise, exonerate, discharge and set over the Mortgaged Premises unto Mortgagor, its successors and assigns.

**TO HAVE AND TO HOLD** the Mortgaged Premises, with the appurtenances, unto Mortgagor, its successors and assigns, forever freed, exonerated and discharged of and from the lien of the Mortgage, and every part thereof.

**AND THE MORTGAGEE** also releases, discharges and terminates its lien and security interest in all other property covered by the Mortgage, including, without limitation, all machinery, equipment and other personal property located on or used in connection with the operation of the Mortgaged Premises, and all leases, rents, issues and profits of the Mortgaged Premises.

[Signatures page follows]

Exhibit 3(a)(iii)

**IN WITNESS WHEREOF**, Mortgagee has executed this Release of Mortgage as of the day and year first above written.

**MORTGAGEE:**

**PALADIN HEALTHCARE CAPITAL, LLC,**
a Delaware limited liability company, as Agent

By: _____
Name: _____
Title: _____

COMMONWEALTH OF PENNSYLVANIA    :
    :    SS
COUNTY OF _____    :

On this _____ day of _____, 2022, before me a Notary Public in and for the Commonwealth of Pennsylvania, the undersigned officer, personally appeared _____, who acknowledged him/herself to be the _____ of _____, a Delaware limited liability company, and that he/she as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by him/herself as such officer.

In  Witness Whereof, I hereunto set my hand and official seal.

_____[SEAL]
Notary Public

My Commission Expires:

_____

Exhibit 3(a)(iii)

## EXHIBIT A
### Legal Description of Mortgaged Premises

**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;
2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;
3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;
4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;
5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;
6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;
7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;
8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;
9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;
12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;
13) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
14) THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

Exhibit 3(a)(iii)

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1) THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;
2) THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;
3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;
4) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;
5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;
6) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;
7) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;
8) THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;
9) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

Exhibit 3(a)(iii)

12)  THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;
13)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;
14)  THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;
15)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;
16)  THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;
17)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;
18)  THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;
19)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;
20)  THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;
21)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;
22)  THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Exhibit 3(a)(v)**
**Assumption and Assignment Agreement**

Exhibit 3(a)(v)

## ASSIGNMENT AND ASSUMPTION AGREEMENT

Reference is made to that certain Memorandum of Understanding Re Global Settlement dated [_____], 2022 (the "Global Settlement Agreement") among Broad Street Healthcare Properties, LLC ("Broad I"), Broad Street Healthcare Properties II, LLC ("Broad II"), Broad Street Healthcare Properties III, LLC ("Broad III" and individually and collectively with Broad I and Broad II, "Assignor" ), Philadelphia Academic Health Holdings, LLC ("Assignee"), Front Street Healthcare Properties, LLC ("Front I"), and other parties party thereto, and this Assignment and Assumption Agreement (this "Agreement") is being entered into pursuant to the Global Settlement Agreement.  Capitalized terms used in this Agreement without definition shall have the meanings assigned to them in the Global Settlement Agreement.

1.      On the MOU Implementation Date, (a) all of Assignor's obligations under the Broad Street Notes are being repaid and satisfied in full as described in, in accordance with, and pursuant to the Global Settlement Agreement, (b) all of Assignor's obligations under the Subordinated Demand and Secured Promissory Note made by Assignor in favor of Front dated as of February 12, 2020 in the original principal amount of $10,000,000, as modified to $15,000,000, shall be deemed satisfied, discharged, released and extinguished (the "Front Street Note"), (c) all of Assignor's obligations under the Global Intercompany Note dated as of May 29, 2019 among Assignor and other entities party hereto (the "Global Note") and (d) any other obligation of any Assignor to any of the other MBNF Parties or their Representatives (all such other obligations collectively, the "Remaining Intercompany Obligations"), shall be deemed satisfied, discharged, released and extinguished.  Nevertheless, to the extent any of Assignor's obligations under the Broad Street Notes, the Front Street Note or the Global Note or any of the Remaining Intercompany Obligations remain outstanding, unsatisfied, undischarged or unreleased after the MOU Implementation Date, all of such obligations (collectively, "Assumed Obligations") shall, as of the MOU Implementation Date, be deemed to be transferred, delegated and assigned by Assignor to Assignee without recourse to Assignor, absolutely and unconditionally, and Assignee hereby irrevocably accepts and assumes from Assignor without recourse to Assignor, absolutely and unconditionally, as its direct and primary obligation, all of the Assumed Obligations.  From and after the MOU Implementation Date, (x) Assignee agrees to perform and discharge all of the Assumed Obligations and (y) Assignor shall relinquish its rights, if any, with respect to the Assumed Obligations and be released from the Assumed Obligations.

2.      Each of Assignor, Assignee, the Broad Street Lenders, Front I and the other parties hereto represents and warrants that it has the right to execute this Agreement, and this Agreement constitutes the legally valid and binding obligation of such party, enforceable against such party in accordance with its terms.

3.      Each of Assignor, Assignee, the Broad Street Lenders, Front I and the other parties hereto hereby acknowledges and agrees that after giving effect to this Agreement, (i) the Assumed Obligations shall be debt as to which Assignor (a) provides no credit support of any kind, or (b) is not directly or indirectly liable as a guarantor or otherwise.

4.      The effective date of this Agreement shall be the MOU Implementation Date.

5.      All of the terms and provisions of this Agreement will apply to, be binding in all respects upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns. None of the provisions of this Agreement shall be varied or terminated except by written agreement of the parties hereto.  If any provisions of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby and each other term, covenant, condition, and provision shall be valid and enforceable to the fullest extent permitted by law. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures were upon the same instrument.  The headings contained in this Agreement

1

Exhibit 3(a)(v)

are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

6.    This Agreement is for the sole benefit of the parties hereto and their successors and assigns, and nothing herein expressed or implied shall give or be construed to give to any individual, partnership, corporation, association, trust, limited liability company, joint venture, unincorporated organization or other entity, other than the parties hereto and such successors and assigns, any legal or equitable rights, remedy or claim hereunder.

7.    This Agreement and the rights and obligations of the parties hereto shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of Delaware, without regard to conflicts of laws principles.

*[signatures follow]*

2

Exhibit 3(a)(v)

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption Agreement to be executed by their respective duly authorized signatories.

**ASSIGNOR:**

**BROAD STREET HEALTHCARE PROPERTIES, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES II, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**ASSIGNEE:**

**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**

By: _____
Name:
Title:

3

Exhibit 3(a)(v)

**<u>ACKNOWLEDGED AND AGREED</u>:**

**MBNF INVESTMENTS, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**AMERICAN ACADEMIC HEALTH SYSTEM, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer

**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**FRONT STREET HEALTHCARE PROPERTIES, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**FRONT STREET HEALTHCARE PROPERTIES II, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES II, LLC**

4

Exhibit 3(a)(v)

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**PHILADELPHIA ACADEMIC RISK RETENTION GROUP, LLC**

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

5

Exhibit 3(a)(v)

**DEBTORS:**

**CENTER CITY HEALTHCARE, LLC**


By: _____
Name:
Title:

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**


By: _____
Name:
Title:

**ST. CHRISTOPHER'S HEALTHCARE, LLC**


By: _____
Name:
Title:

**PHILADELPHIA ACADEMIC MEDICAL ASSOCIATES, LLC**


By: _____
Name:
Title:

**HPS OF PA, L.L.C.**


By: _____
Name:
Title:

**SCHC PEDIATRIC ASSOCIATES, L.L.C.**


By: _____
Name:
Title:

6

Exhibit 3(a)(v)

**ST. CHRISTOPHER'S PEDIATRIC URGENT CARE CENTER, L.L.C.**

By: _____
Name:
Title:

**SCHC PEDIATRIC ANESTHESIA ASSOCIATES, L.L.C.**

By: _____
Name:
Title:

**STCHRIS CARE AT NORTHEAST PEDIATRICS, L.L.C.**

By: _____
Name:
Title:

**TPS OF PA, L.L.C.**

By: _____
Name:
Title:

**TPS II OF PA, L.L.C.**

By: _____
Name:
Title:

**TPS III OF PA, L.L.C.**

By: _____
Name:
Title:

**TPS IV OF PA, L.L.C.**

40029993.6

Exhibit 3(a)(v)

By: _____
Name:
Title:

**TPS V OF PA, L.L.C.**

By: _____
Name:
Title:

**DEBTORS' SUBSIDIARIES:**

**PHYSICIANS CLINICAL NETWORK, LLC**

By: _____
Name:
Title:

**PHYSICIAN PERFORMANCE NETWORK OF PHILADELPHIA, L.L.C.**

By: _____
Name:
Title:

8

Exhibit 3(a)(v)

**BROAD STREET LENDERS:**

**PALADIN HEALTHCARE CAPITAL, LLC**


By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

**LATHAM & WATKINS, LLP**


By: _____
Name:  Suzzanne Uhland
Title:  Partner


**JIGSAW ADVISORS, LLC**


By: _____
Name:  William R. Brinkman
Title:  Principal


**SONSARA MANAGEMENT SERVICES, LLC**


By: _____
Name:  Svetlana Attestatova
Title:  President

9

**Exhibit 3(a)(vi)**
**Powers of Attorney**

Exhibit 3(a)(vi)

<u>Prepared by</u>:

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

<u>Property Addresses</u>:

222-248 N. Broad Street
221-223 N. 15th Street
325 N. 15th Street
Philadelphia, PA

<u>Tax Parcel Nos</u>.:

772025002
772028498
881038202

## <u>LIMITED POWER OF ATTORNEY</u>

THIS LIMITED POWER OF ATTORNEY is dated the ___ day of _____, 2022 and is effective as of the ___ day of _____, 2022.

NOTICE IS HEREBY GIVEN THAT BROAD STREET HEALTHCARE PROPERTIES, LLC, a Delaware limited liability company (the "Company"), does hereby appoint CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company (the "Agent"), as true and lawful attorney-in-fact for the Company to act for the Company in the Company's name for the following limited purposes:

To do and perform any act, deed, matter or thing relating to, in connection with or occasioned by the sale, lease, disposition, management, development, maintenance or operation of the property or properties listed in the heading above (collectively or individually, in whole or in part, the "Property"), as completely as the Company might itself do.

Without limiting the generality of the foregoing, the Agent may do any of the following:

1.   dispose of the Property or any interest therein, including, but not limited to the power to sell at public or private sale for cash or credit or partly for each;

2.   exchange, mortgage, encumber or lease the Property for any period of time;

3.   give or acquire options for sales, purchases, exchanges or leases of the Property;

Exhibit 3(a)(vi)

4.      manage, repair, improve, maintain, restore, alter, build, protect or insure the Property;

5.      amend, modify, terminate, administer and enforce leases of the Property;

6.      demolish structures or develop the Property or any interest in the Property;

7.      collect and distribute rent, sale proceeds, earnings and insurance and condemnation proceeds from the Property;

8.      pay, contest, protest and compromise the Property's real estate taxes and assessments;

9.      release in whole or in part, assign the whole or a part of, satisfy in whole or in part and enforce any mortgage, encumbrance, lien or other claim to the Property;

10.     grant easements, dedicate the Property, partition and subdivide the Property and file plans, applications or other documents in connection therewith; and

11.     make, execute and deliver any deeds, leases, licenses, contracts, agreements, writings, forms, applications, documents, statements, affidavits, and instruments for the Property, and do and perform any act, deed, matter or thing for the Property that may be necessary or appropriate on such terms and conditions, and under such covenants, as the Agent shall deem proper in connection with the exercise of the any of the foregoing powers, as fully as the Company could do.

This Limited Power of Attorney is IRREVOCABLE and coupled with an interest in and to the Property.

The Company hereby ratifies and confirms all that the Agent  shall lawfully do or cause to be done by virtue of this Limited Power of Attorney that is within the scope of the powers, rights and/or privileges granted pursuant to this Limited Power of Attorney.

Signature on following page.

Exhibit 3(a)(vi)

**IN WITNESS WHEREOF**, this Limited Power of Attorney has been duly executed by the Company.

**BROAD STREET HEALTHCARE PROPERTIES, LLC,** a Delaware limited liability company

By:_____
Name: Joel Freedman
Title:  Chief Executive Officer and President

STATE OF _____   )
_____       ) SS:
COUNTY OF_____   )

     I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that Joel Freedman, the Chief Executive Officer and President of Broad Street Healthcare Properties, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such Chief Executive Officer and President, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said Chief Executive Officer and President, for the uses and purposes therein set forth.

     GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____          _____
                                            Notary Public

Exhibit 3(a)(vi)

**ACKNOWLEDGED AND AGREED:**

**CENTER CITY HEALTHCARE,**
**LLC,** a Delaware limited liability
company

By:_____
Name:
Title:

STATE OF _____    :
                             : SS
COUNTY OF _____    :

      On this, the _____ day of _____ 2022, before me a Notary Public in and for the State and County aforesaid, personally appeared _____, who acknowledged himself/herself to be the _____ of CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company, and that as such party, being authorized to do so, he/she executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself/herself as such _____ on behalf of the company.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

                    _____
                    Notary Public
                    My Commission Expires: _____

Exhibit 3(a)(vi)

Prepared by:

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

Property Addresses:

300-304 N. Broad Street
Philadelphia, PA

Tax Parcel No.:
885620242

## LIMITED POWER OF ATTORNEY

THIS LIMITED POWER OF ATTORNEY is dated the ___ day of _____, 2022 and is effective as of the ___ day of _____, 2022.

NOTICE IS HEREBY GIVEN THAT BROAD STREET HEALTHCARE PROPERTIES II, LLC, a Delaware limited liability company (the "Company"), does hereby appoint CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company (the "Agent"), as true and lawful attorney-in-fact for the Company to act for the Company in the Company's name for the following limited purposes:

To do and perform any act, deed, matter or thing relating to, in connection with or occasioned by the sale, lease, disposition, management, development, maintenance or operation of the property or properties listed in the heading above (collectively or individually, in whole or in part, the "Property"), as completely as the Company might itself do.

Without limiting the generality of the foregoing, the Agent may do any of the following:

1.    dispose of the Property or any interest therein, including, but not limited to the power to sell at public or private sale for cash or credit or partly for each;

2.    exchange, mortgage, encumber or lease the Property for any period of time;

3.    give or acquire options for sales, purchases, exchanges or leases of the Property;

4.    manage, repair, improve, maintain, restore, alter, build, protect or insure the Property;

5.    amend, modify, terminate, administer and enforce leases of the Property;

Exhibit 3(a)(vi)

6.      demolish structures or develop the Property or any interest in the Property;

7.      collect and distribute rent, sale proceeds, earnings and insurance and condemnation proceeds from the Property;

8.      pay, contest, protest and compromise the Property's real estate taxes and assessments;

9.      release in whole or in part, assign the whole or a part of, satisfy in whole or in part and enforce any mortgage, encumbrance, lien or other claim to the Property;

10.     grant easements, dedicate the Property, partition and subdivide the Property and file plans, applications or other documents in connection therewith; and

11.     make, execute and deliver any deeds, leases, licenses, contracts, agreements, writings, forms, applications, documents, statements, affidavits, and instruments for the Property, and do and perform any act, deed, matter or thing for the Property that may be necessary or appropriate on such terms and conditions, and under such covenants, as the Agent shall deem proper in connection with the exercise of the any of the foregoing powers, as fully as the Company could do.

This Limited Power of Attorney is IRREVOCABLE and coupled with an interest in and to the Property.

The Company hereby ratifies and confirms all that the Agent  shall lawfully do or cause to be done by virtue of this Limited Power of Attorney that is within the scope of the powers, rights and/or privileges granted pursuant to this Limited Power of Attorney.

Signature on following page.

Exhibit 3(a)(vi)

**IN WITNESS WHEREOF**, this Limited Power of Attorney has been duly executed by the Company.

**BROAD STREET HEALTHCARE
PROPERTIES II, LLC,** a Delaware
limited liability company

By:_____

Name: Joel Freedman
Title:  Chief Executive Officer and
President

STATE OF _____    )
                            ) SS:
COUNTY OF_____    )

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that Joel Freedman, the Chief Executive Officer and President of Broad Street Healthcare Properties II, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such Chief Executive Officer and President, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said Chief Executive Officer and President, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this ____ day of _____, 2022.

My Commission Expires:

_____          _____

Notary Public

Exhibit 3(a)(vi)

**ACKNOWLEDGED AND AGREED:**

**CENTER CITY HEALTHCARE,**
**LLC,** a Delaware limited liability
company


By:_____
Name:
Title:

STATE OF _____    :
                                      : SS
COUNTY OF _____    :

      On this, the \_\_\_\_ day of _____ 2022, before me a Notary Public in and for the State and County aforesaid, personally appeared _____, who acknowledged himself/herself to be the _____ of CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company, and that as such party, being authorized to do so, he/she executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself/herself as such _____ on behalf of the company.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.


      _____
      Notary Public
      My Commission Expires: _____

Exhibit 3(a)(vi)

<u>Prepared by:</u>

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

<u>Property Addresses</u>:

200-214 N. Broad Street
201-219 N. 15th Street (Parcel E)
Philadelphia, PA

<u>Tax Parcel Nos</u>.:
885467862
772028496

## <u>LIMITED POWER OF ATTORNEY</u>

THIS LIMITED POWER OF ATTORNEY is dated the ___ day of _____, 2022 and is effective as of the ___ day of _____, 2022.

NOTICE IS HEREBY GIVEN THAT BROAD STREET HEALTHCARE PROPERTIES III, LLC, a Delaware limited liability company (the "Company"), does hereby appoint CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company (the "Agent"), as true and lawful attorney-in-fact for the Company to act for the Company in the Company's name for the following limited purposes:

To do and perform any act, deed, matter or thing relating to, in connection with or occasioned by the sale, lease, disposition, management, development, maintenance or operation of the property or properties listed in the heading above (collectively or individually, in whole or in part, the "Property"), as completely as the Company might itself do.

Without limiting the generality of the foregoing, the Agent may do any of the following:

1.    dispose of the Property or any interest therein, including, but not limited to the power to sell at public or private sale for cash or credit or partly for each;

2.    exchange, mortgage, encumber or lease the Property for any period of time;

3.    give or acquire options for sales, purchases, exchanges or leases of the Property;

4.    manage, repair, improve, maintain, restore, alter, build, protect or insure the Property;

Exhibit 3(a)(vi)

5.      amend, modify, terminate, administer and enforce leases of the Property;

6.      demolish structures or develop the Property or any interest in the Property;

7.      collect and distribute rent, sale proceeds, earnings and insurance and condemnation proceeds from the Property;

8.      pay, contest, protest and compromise the Property's real estate taxes and assessments;

9.      release in whole or in part, assign the whole or a part of, satisfy in whole or in part and enforce any mortgage, encumbrance, lien or other claim to the Property;

10.     grant easements, dedicate the Property, partition and subdivide the Property and file plans, applications or other documents in connection therewith; and

11.     make, execute and deliver any deeds, leases, licenses, contracts, agreements, writings, forms, applications, documents, statements, affidavits, and instruments for the Property, and do and perform any act, deed, matter or thing for the Property that may be necessary or appropriate on such terms and conditions, and under such covenants, as the Agent shall deem proper in connection with the exercise of the any of the foregoing powers, as fully as the Company could do.

This Limited Power of Attorney is IRREVOCABLE and coupled with an interest in and to the Property.

The Company hereby ratifies and confirms all that the Agent  shall lawfully do or cause to be done by virtue of this Limited Power of Attorney that is within the scope of the powers, rights and/or privileges granted pursuant to this Limited Power of Attorney.

Signature on following page.

Exhibit 3(a)(vi)

**IN WITNESS WHEREOF**, this Limited Power of Attorney has been duly executed by the Company.

**BROAD STREET HEALTHCARE
PROPERTIES III, LLC,** a Delaware
limited liability company

By:_____

Name: Joel Freedman
Title:  Chief Executive Officer and
President

STATE OF _____     )

                                                 ) SS:

COUNTY OF_____     )

      I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that Joel Freedman, the Chief Executive Officer and President of Broad Street Healthcare Properties III, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument  as  such Chief Executive Officer and President, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said Chief Executive Officer and President, for the uses and purposes therein set forth.

      GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____                    _____

                                     Notary Public

Exhibit 3(a)(vi)

**ACKNOWLEDGED AND AGREED:**

**CENTER CITY HEALTHCARE, LLC,** a Delaware limited liability company

By:_____
Name:
Title:

STATE OF _____    :
                                                      : SS
COUNTY OF _____    :

      On this, the _____ day of _____ 2022, before me a Notary Public in and for the State and County aforesaid, personally appeared _____, who acknowledged himself/herself to be the _____ of CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company, and that as such party, being authorized to do so, he/she executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself/herself as such _____ on behalf of the company.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

                                    _____
                                      Notary Public
                                      My Commission Expires: _____

**Exhibit 3(a)(viii)(A)**
**Assignment, Assumption and Novation Agreement**

*Exhibit 3(a)(viii)(A)*

## ASSIGNMENT, ASSUMPTION AND NOVATION AGREEMENT

Reference is made to the Secured Promissory Note dated March 31, 2022 (the "Promissory Note") made by Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC, all of which are Delaware limited liability companies (collectively, the "Assignor" or the "Broad Street PropCos"), and Philadelphia Academic Health System, LLC, a Delaware limited liability company (the "Lender"). Unless otherwise defined herein, terms defined in the Promissory Note and used herein shall have the meanings given to them in the Promissory Note.

The Assignor, the Lender and Center City Healthcare, LLC, a Delaware limited liability company (the "Assignee"), are parties to that certain Memorandum of Understanding Re Global Settlement dated [＿＿＿], 2022 (the "MOU"), and this Assignment, Assumption and Novation Agreement (this "Agreement") is being entered into pursuant to the MOU.

The Assignor, the Lender and the Assignee agree as follows:

1.     As of the MOU Implementation Date (as defined in the MOU), the Assignor hereby irrevocably, absolutely and unconditionally transfers, delegates and assigns, on a novation basis, to the Assignee, without recourse to the Assignor, all of Assignor's rights, duties, obligations, responsibilities and liabilities, whether joint or several (collectively the "Assumed Obligations"), in and under (a) the Promissory Note and (b) each of the Open-End Mortgages and Security Agreements dated as of March 30, 2022 and effective as of March 31, 2022 from each of the Broad Street PropCos to the Lender, each as amended by that certain Mortgage Modification Agreement made as of [＿＿＿＿＿＿], 2022[1] and effective as of the Effective Date as defined therein (each, a "Mortgage" and collectively, the "Mortgages"). From and after the MOU Implementation Date, Assignee hereby irrevocably, absolutely and unconditionally assumes and agrees to perform and discharge all of the Assumed Obligations, and Assignee shall be substituted for Assignor in Assignor's name, place and stead as the maker on and under the Promissory Note, so as to effect a novation of the Promissory Note and to fully release Assignor from any and all existing and further rights, interests, duties, obligations, responsibilities and liabilities under the Promissory Note.

2.     The Assignee (a) represents and warrants that it has the right to execute this Agreement, and this Agreement constitutes the legally valid and binding obligation of the Assignee, enforceable against the Assignee in accordance with its terms; and (b) confirms that it has received a copy of the Promissory Note and each Mortgage.

3.     The Lender represents and warrants that: (a) it is the owner and holder of the Promissory Note and each Mortgage; (b) it has the right to execute this Agreement, and this Agreement constitutes the legally valid and binding obligation of the Lender, enforceable against the Lender in accordance with its terms; (c) none of the Promissory Note nor any of the Mortgages has been amended or modified prior to the MOU Implementation Date; and (d) no act or omission on the part of Assignor has occurred, which would constitute an Event of Default or that, with notice or lapse of time or both, would constitute an Event of Default.

---

[1] NTD: this assignment only has the effective date and not any other date.

*Exhibit 3(a)(viii)(A)*

4.    The Assignor represents and warrants that it has the right to execute this Agreement, and this Agreement constitutes the legally valid and binding obligation of the Assignor, enforceable against the Assignor in accordance with its terms.

5.    Each of the Assignor, the Assignee and the Lender hereby acknowledges and agrees that after giving effect to this Agreement, (i) the Assumed Obligations shall be debt as to which none of the Assignor or any other MBNF Party (a) provides credit support of any kind, or (b) is directly or indirectly liable as a guarantor or otherwise; and (ii) the Second Amended and Restated Lien Subordination Agreement dated as of March 30, 2022 and effective as of March 31, 2022 by and among Lender, Paladin Healthcare Capital, LLC, as agent, and Front Street Healthcare Properties, LLC, and the Guaranty Agreement by Philadelphia Academic Health Holdings, LLC dated March 31, 2022 to and in favor of the Lender, shall be deemed terminated without any further action by any party and shall be of no further force and effect; *provided*, *however*, that notwithstanding anything to the contrary contained herein, the Assumed Obligations will continue to be secured by the Mortgages and the UCC Financing Statements from each of the Broad Street PropCos to the Lender, each of which shall be amended on the MOU Implementation Date pursuant to the Amended PAHS Loan Documents (as defined in the MOU) to provide, among other things, that none of the obligations and liabilities thereunder shall be recourse to any of the Broad Street PropCos.

6.    The effective date of this Agreement shall be the MOU Implementation Date.

7.    From and after the MOU Implementation Date, (i) the Assignee shall be deemed the maker of the Promissory Note and have the rights and obligations of a borrower under the Promissory Note and shall be bound by the provisions thereof, and shall perform the Assumed Obligations and (ii) the Assignor shall relinquish its rights and be released from its obligations under the Promissory Note and each Mortgage, subject, however, to the continuing effectiveness of each Mortgage and the UCC Financing Statements from each of the Broad Street PropCos to the Lender, and each of the Mortgages shall be amended on the MOU Implementation Date pursuant to the Amended PAHS Loan Documents to provide, among other things, that none of the obligations and liabilities thereunder shall be recourse to any of the Broad Street PropCos.  The Lender acknowledges and agrees that from and after the MOU Implementation Date its recourse under the Promissory Note, each Mortgage and each such UCC financing statement shall be limited solely to the Real Estate (as defined in the MOU).

8.    All of the terms and provisions of this Agreement will apply to, be binding in all respects upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns.  None of the provisions of this Agreement shall be varied or terminated except by written agreement of the parties hereto.  If any provisions of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby and each other term, covenant, condition, and provision shall be valid and enforceable to the fullest extent permitted by law.  This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures were upon the same instrument.

9.    This Agreement is for the sole benefit of the parties hereto and their successors and assigns, and nothing herein expressed or implied shall give or be construed to give to any Person,

*Exhibit 3(a)(viii)(A)*

other than the parties hereto and such successors and assigns, any legal or equitable rights, remedy or claim hereunder.

10. This Agreement and the rights and obligations of the Assignor, Assignee and Lender hereunder shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania, without regard to conflicts of laws principles.

[*signatures follow*]

*Exhibit 3(a)(viii)(A)*

IN WITNESS WHEREOF, the parties hereto have caused this Assignment, Assumption and Novation Agreement to be executed by their respective duly authorized signatories.

**<u>ASSIGNOR</u>:**

**BROAD STREET HEALTHCARE PROPERTIES, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES II, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**<u>ASSIGNEE</u>:**

**CENTER CITY HEALTHCARE, LLC**

By:_____
Name:
Title:

*Exhibit 3(a)(viii)(A)*

**LENDER:**

**PHILADELPHIA ACADEMIC
HEALTH SYSTEM, LLC**


By:_____
Name:
Title:

5

**Exhibit 3(a)(viii)(B)**
**Amended PAHS Loan Documents**

Exhibit 3(a)(viii)(B)

After recording, please return to:
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

Mortgaged Property Addresses:

222-248 N. Broad Street
221-223 N. 15th Street
325 N. 15th Street
300-304 N. Broad Street
200-214 N. Broad Street
201-219 N. 15th Street (Parcel E)
Philadelphia, PA

Tax Parcel Nos.:

772025002
772028498
881038202
885620242
885467862
772028496

# TERMINATION AGREEMENT

THIS TERMINATION AGREEMENT (this "**Agreement**") is made the ____ day of ____, 2022 and effective as of the ____ day of _____, 2022 (the "**Effective Date**") by and among **PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company ("**Senior Lender**"), **PALADIN HEALTHCARE CAPITAL, LLC**, a Delaware limited liability company, in its capacity as administrative agent for the Tranche II Debt (as defined below) ("**Tranche II Agent**"), **PALADIN HEALTHCARE CAPITAL, LLC**, a Delaware limited liability company, in its capacity as administrative agent for the Tranche III Debt (as defined below) ("**Tranche III Agent**"), and **FRONT STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company ("**Tranche IV Creditor**" and together with Senior Lender, Tranche II Agent and Tranche III Agent, the "**Parties**").

WHEREAS, the Parties are parties to the Second Amended and Restated Lien Subordination Agreement, dated March 30, 2022, effective as of March 31, 2022, and recorded on April 8, 2022 as Document ID # 54019851 (the "**Intercreditor Agreement**"), consented to by Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC (collectively, the "**Broad Street PropCos**"), with respect to the property located at 222-248 N. Broad Street, 221-223 N. 15th Street, 325 N. 15th Street, 300-304 N. Broad Street, 200-214 N. Broad Street and 201-219 N. 15th Street (Parcel E)

Exhibit 3(a)(viii)(B)

in the City and County of Philadelphia, Commonwealth of Pennsylvania, as more particularly described in Exhibit A attached hereto and made a part hereof (the "**Real Property**"); and

WHEREAS, the Parties and the Broad Street PropCos are parties to that certain Memorandum of Understanding Re Global Settlement dated [＿＿＿], 2022 (the "**MOU**"), and this Agreement is being entered into pursuant to the MOU.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements herein contained, and intending to be legally bound hereby, the Parties hereby agree as follows (all capitalized terms not defined herein shall have the meanings specified in the Intercreditor Agreement):

1.      **Representations and Warranties.**  The Tranche II Agent, Tranche III Agent and Tranche IV Creditor hereby represent and warrant to the Senior Lender, as of the Effective Date, that:

a.      the Tranche II Debt will be satisfied, and to the extent not satisfied, released as to each of the Broad Street PropCos pursuant to the MOU, and all mortgages, liens and other security interests respecting the Tranche II Debt that are attaching to the Real Property have been or will be satisfied, released or terminated of record pursuant to the MOU;

b.      the Tranche III Debt will be satisfied, and to the extent not satisfied, released as to each of the Broad Street PropCos pursuant to the MOU, and all mortgages, liens and other security interests respecting the Tranche III Debt that are attaching to the Real Property have been or will be satisfied, released or terminated of record pursuant to the MOU; and

c.      the Tranche IV Debt will be satisfied, and to the extent not satisfied, released as to each of the Broad Street PropCos pursuant to the MOU, and all liens and other security interests respecting the Tranche IV Debt as to each of the Broad Street PropCos have been or will be satisfied, released or terminated of record pursuant to the MOU.

2.      **Termination**. Effective as of the Effective Date, the Intercreditor Agreement shall terminate and be of no further force and effect, and none of the Parties shall have any further obligations thereunder or with respect thereto.

3.      **Counterparts**. This Agreement may be executed in counterpart originals, each of which shall constitute an original, and all of which together shall constitute one and the same agreement.

[Signatures on following pages]

2

Exhibit 3(a)(viii)(B)

      **IN WITNESS WHEREOF**, each of the Parties have executed this Agreement effective as of the Effective Date.

**"Senior Lender"**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**


By:   _____
Name:
Title:


**"Tranche II Agent"**

**PALADIN HEALTHCARE CAPITAL, LLC**


By:   _____
Name:
Title:


**"Tranche III Agent"**
**PALADIN HEALTHCARE CAPITAL, LLC**


By:   _____
Name:
Title:


**"Tranche IV Creditor"**
**FRONT STREET HEALTHCARE PROPERTIES, LLC**


By:   _____
Name:
Title:

Exhibit 3(a)(viii)(B)

STATE OF _____                                    )
                                                        )        SS:
COUNTY OF _____                                      )

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

       GIVEN under my hand and Notarial Seal this ____ day of _____, 2022.

My Commission Expires:

_____          _____
                                           Notary Public

40182494.8

Exhibit 3(a)(viii)(B)

STATE OF _____                                                      )
                                                                          )          SS:
COUNTY OF _____                                                         )

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of PALADIN HEALTHCARE CAPITAL, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

      GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____          _____
                                                              Notary Public

Exhibit 3(a)(viii)(B)

STATE OF _____                    )

                                            )       SS:

COUNTY OF _____           )

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of FRONT STREET HEALTHCARE PROPERTIES, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____       _____

                                                Notary Public

Exhibit 3(a)(viii)(B)

EXHIBIT A

**Legal Description of the Real Property**

**TRACT I:**

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1) THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2) THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8) THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

Exhibit 3(a)(viii)(B)

10)     THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 27.619' TO A POINT;

11)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12)     THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

## Parcel A Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.      53316755.

AND

## Parcel F:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1)     THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2)     THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

3)     THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

Exhibit 3(a)(viii)(B)

4)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

1)    THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

Exhibit 3(a)(viii)(B)

2)      THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)      THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)      THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)      THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)     THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

Exhibit 3(a)(viii)(B)

Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(viii)(B)

**TRACT II:**

Lot 1 – HUH North Fee Parcel:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2)      THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3)      THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4)      THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT  1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

Lot 1 – HUH North Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

**TRACT III:**

**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;

2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;

7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;

8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;

10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;

11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;

12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;

13) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;

14) THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1)  THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;
2)  THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;
3)  THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;
4)  THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;
5)  THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;
6)  THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;
7)  THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;
8)  THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;
9)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

Exhibit 3(a)(viii)(B)

12)     THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16)     THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20)     THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22)     THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

Exhibit 3(a)(viii)(B)

<u>After recording, please return to</u>:

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

<u>Mortgaged Property Addresses</u>:

222-248 N. Broad Street
221-223 N. 15th Street
325 N. 15th Street
Philadelphia, PA

<u>Tax Parcel Nos</u>.:
772025002
772028498
881038202

## MORTGAGE MODIFICATION AGREEMENT

This Mortgage Modification Agreement (this "<u>Modification</u>") is made as of the ___ day of _____, 2022, and effective as of the ___ day of _____, 2022 (the "<u>Effective Date</u>"), by and between **BROAD STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company ("<u>Broad</u>" or "<u>Mortgagor</u>") and **PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company ("<u>Mortgagee</u>").

WHEREAS, Mortgagor previously granted to Mortgagee a Mortgage dated as of March 30, 2022, effective as of March 31, 2022, and recorded April 7, 2022 as <u>Document ID # 54019494</u> (the "<u>Mortgage</u>"), which granted a lien on the property located at 222-248 N. Broad Street, 221-223 N. 15th Street and 325 N. 15th Street in the City and County of Philadelphia, Commonwealth of Pennsylvania, as more particularly described in <u>Exhibit A</u> attached hereto and made a part hereof (the "<u>Mortgaged Property</u>"); and

WHEREAS, the Mortgage was granted as security for Mortgagor's obligations pursuant to that certain Note (the "<u>Original Note</u>") and such other Loan Documents (each as defined in the Mortgage) and each reflecting a Loan amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00); and

WHEREAS, Mortgagor, Mortgagee and other parties have entered into that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties (the "<u>MOU</u>"); and

WHEREAS, pursuant to the MOU, the Original Note will be assigned to and assumed by Center City Healthcare, LLC ("CCH"), on the Effective Date, pursuant to the Assignment, Assumption and Novation Agreement effective as of the MOU Implementation Date (as defined in the MOU) (the "Assignment Agreement"), under which all of Mortgagor's rights, duties, obligations, responsibilities and liabilities under the Original Note will be transferred and assigned to and assumed by CCH, and the Original Note will be novated (as assigned, assumed and novated, the "Novated Note"); and

WHEREAS, pursuant to the MOU, Mortgagee shall make the payment in the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) (such amount, the "Settlement Balancing Payment") under and in accordance with the terms of the MOU; and

WHEREAS, the parties to the MOU have agreed, under the terms of the MOU (including Schedule 3(b) thereto), that when all or any part of the Property shall be sold, then the proceeds from such sale(s) shall be distributed in accordance with the terms of the MOU including, without limitation, for payments of amounts due under the Novated Note and reimbursement to Mortgagee of the Settlement Balancing Payment; and

WHEREAS, Mortgagor, as a party to the MOU, is benefitting by the MOU; and

WHEREAS, pursuant to the MOU, Mortgagor has agreed to amend the Mortgage to extend the lien of the Mortgage on the Mortgaged Property to secure the Settlement Balancing Payment Reimbursement Obligation (as defined below); and

WHEREAS, Mortgagor and Mortgagee have further agreed to amend the Mortgage, in each case with respect to Mortgagor's personal recourse duties, obligations, responsibilities and liabilities and with respect to personal recourse remedies available to Mortgagee and certain other terms and conditions as set forth herein; and

WHEREAS, the foregoing recitals are hereby incorporated in this Modification.

NOW THEREFORE, for good and valuable consideration, Mortgagor and Mortgagee agree to amend the Mortgage, effective as of the Effective Date:

1.  The Mortgage is hereby modified so that all references therein to the amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00) are replaced with the sum of Ten Million Fifty Thousand and No/100 Dollars ($10,050,000).

2.  The Mortgage is hereby modified so that all references to the "Mortgaged Property" shall be deemed to include the property listed on **Schedule A** hereto and the definition of "Agreements" shall be deleted and replaced in its entirety with the following:

    "**Agreements**" shall mean (i) all certificates, instruments, franchises, permits, licenses, plans, specifications, warranties, and guarantees, and (ii) all agreements, contracts and other documents listed on **Schedule A** attached to the Mortgage Modification Agreement dated [_____], in each case now or hereafter

Exhibit 3(a)(viii)(B)

entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements, or respecting any of Mortgagor's business or activity conducted at the Premises or any part thereof, or relating to any of the Fixtures, and all right, title and interest of Mortgagor therein and thereunder, including, without limitation, the right, upon the happening of an Event of Default hereunder, to receive and collect any sums payable to Mortgagor thereunder.

Mortgagee is hereby authorized to file amendments to the Financing Statements to reflect this modification of the Mortgaged Property, at Mortgagee's cost and expense.

3.  Pursuant to the Assignment Agreement, but subject to the provisions of Section 4.06 of the Mortgage (as modified herein), the Mortgagee acknowledges that any personal recourse duties, obligations, responsibilities and liabilities of Mortgagor under the Mortgage and any recourse remedies available to Mortgagee shall be the responsibility of and shall be performed by, CCH irrevocably, absolutely and unconditionally in all respects, without personal recourse to Broad.  Subject to Section 4.06 of the Mortgage (as modified herein), Mortgagee hereby releases Broad from any and all such personal recourse duties, obligations, responsibilities and liabilities under the Mortgage and any and all personal recourse remedies available to Mortgagee under the Mortgage.  For the avoidance of doubt, the performance of covenants, conditions, agreements and obligations under, *inter alia*, Article I, any provisions referenced in Section 2.01(a), Section 2.01(h), Section 2.08, or Section 3.14 of the Mortgage, repayment of "Future Advances" (as defined in the Mortgage) and the performance and observance of all other provisions of the Mortgage, the Novated Note and the other Loan Documents, shall be the sole responsibility of, and shall be performed by, CCH, and recourse for the failure to perform any of the foregoing shall be solely against CCH and the Mortgaged Property.

4.  The Mortgage is hereby modified so that all references to the "Note" shall refer to the Novated Note as transferred and assigned by Mortgagor to CCH pursuant to, and novated in accordance with, the Assignment Agreement.

5.  The following is hereby added to the definition of the term "Secured Obligations" in the Mortgage:

    and (vii) Repayment of the Settlement Balancing Payment Reimbursement Obligation, solely out of the proceeds of the sales and/or other dispositions of the Mortgaged Property in accordance with the terms of the MOU.

6.  The following are hereby added to the definitions section of the Mortgage in the proper alphabetical order:

    "**MOU**" shall mean that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties, dated as of _____, 2022.

"**Settlement Balancing Payment**" shall mean the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) paid by Mortgagee under and in accordance with the terms of the MOU.

"**Settlement Balancing Payment Reimbursement Obligation**" shall mean the obligation to repay to Mortgagee the Settlement Balancing Payment, in accordance with the terms of the MOU (including Schedule 3(b) thereto), when all or any part of the Mortgaged Property are sold, solely from the proceeds from such sale(s) and/or other dispositions.  For the avoidance of doubt, Mortgagor shall not in any circumstances be liable for or obligated on the Settlement Balancing Reimbursement Obligation and the repayment thereof shall be strictly limited to the proceeds from any sale of the Mortgaged Property.

7. The last paragraph of the Granting Clause of the Mortgage is hereby amended to read in its entirety as follows: "PROVIDED ALWAYS, and this instrument is created upon the express condition that, if Mortgagor pays or causes to be paid to Mortgagee, the Secured Obligations, then this Mortgage and the estate hereby granted shall cease and become void."

8. Section 2.01(b) of the Mortgage is hereby amended to delete the following phrase contained therein "or the other Loan Documents".

9. The final paragraph of Section 2.01(c) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

10. The final paragraph of Section 2.01(d) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

11. The final paragraph of Section 2.01(e) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

12. Section 2.01(g) of the Mortgage is hereby amended to delete the following phrase contained therein "(other than a default in payment of obligations of Borrower under the Note or any of the other Loan Documents)".

13. The second sentence of Section 3.04 of the Mortgage, commencing with the phrase "This Mortgage may not be assigned by Mortgagee prior to …", is hereby deleted in its entirety.

14. The final sentence of Section 3.04 of the Mortgage, commencing with the phrase "If there is more than one Mortgagor…", is hereby deleted in its entirety.

15. Section 3.14 of the Mortgage is hereby deleted in its entirety and replaced with the following:

Exhibit 3(a)(viii)(B)

SECTION 3.14.   Mortgagor acknowledges that this Mortgage is a Loan Document and agrees that any Event of Default under this Mortgage will constitute an "**Event of Default**" under the Co-Borrower Mortgages, the Note and the other Loan Documents, and that, in such event, in addition to any and all other remedies available to Mortgagee hereunder or under any of the other Loan Documents or at law or in equity, Mortgagee shall be permitted to recover any amounts secured hereby from the value of the Mortgaged Property and the property secured by the Co- Borrower Mortgages, on a pro rata basis or otherwise, as determined by Mortgagee in its reasonable discretion.

16. Section 4.06(a) of the Mortgage is hereby deleted in its entirety and replaced with the following:

   (a)      Recourse against Mortgagor is limited solely to the Mortgaged Property, and (i) neither Mortgagor, or (ii) nor (a) any member of Mortgagor, (b) any person owning, directly or indirectly, any legal or beneficial interest in Mortgagor or a member of Mortgagor, (c) any partner, manager, principal, officer, controlling person, beneficiary, trustee, advisor, representative, or other similar fiduciary, shareholder, employee, agent, affiliate or director of any person described above, or (d) any of their respective successors and assigns, shall have any personal liability for the payment or performance of any of the obligations or otherwise under the Note or Mortgage.

17. Section 4.06(b) of the Mortgage is hereby deleted in its entirety and replaced with the following:

   (b)      Notwithstanding the foregoing, nothing herein shall serve to limit Mortgagee's right to seek any judgment against Mortgagor solely to the extent such judgment or decree may be necessary to foreclose and bar Mortgagor's interests in the Mortgaged Property; provided that the recourse under such judgment or decree shall be solely to the Mortgaged Property; and further provided that nothing herein stated or set forth in the Note shall: (a) release, impair or otherwise affect the Novated Note or this Mortgage; nor (b) impair or otherwise affect the validity or the lien of the Novated Note or this Mortgage; nor (c) impair the right of Mortgagee to accelerate the maturity of the Novated Note (or to avail itself of any of its other rights and remedies) in accordance with the terms hereof.

18. Except as modified hereby, all other provisions of the Mortgage remain in full force and effect.

19. This Modification Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same instrument.

Exhibit 3(a)(viii)(B)

[END OF TEXT; SIGNATURE PAGE FOLLOWS]

Exhibit 3(a)(viii)(B)

**IN WITNESS WHEREOF**, this Modification is duly executed as of the day and year first above written.

**MORTGAGOR:**

**BROAD STREET HEALTHCARE
PROPERTIES, LLC,**
a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

STATE OF _____ )
                                 ) SS:
COUNTY OF _____ )

I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Broad Street Healthcare Properties, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____        _____
                                                      Notary Public

Exhibit 3(a)(viii)(B)

**MORTGAGEE:**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC,**
a Delaware limited liability company

By: _____
Name:
Title:

STATE OF _____ )
                                                                    ) SS:
COUNTY OF _____ )

       I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Philadelphia Academic Healthcare System, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

       GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____      _____
                                         Notary Public

Exhibit 3(a)(viii)(B)

# EXHIBIT A

LEGAL DESCRIPTION OF THE MORTGAGED PROPERTY

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1)    THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2)    THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4)    THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8)    THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

10) THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 27.619' TO A POINT;

11) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12) THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.       53316755.

AND

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1) THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2) THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

3) THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

2)      THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)      THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)      THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)      THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)     THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

Exhibit 3(a)(viii)(B)

Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(viii)(B)

## SCHEDULE A

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties, LLC ("Broad Street PropCo I") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo I and located upon or at any Real Estate.
2. Broad Street PropCo I REAs.
3. Broad Street PropCo I Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo I, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
   a. Account No.:          XX-XXXX-0053
      Account Name: Broad Street Healthcare Properties, LLC

      Transit/Routing:      043000096
      Bank Name:            PNC Bank, Pittsburgh, PA

Exhibit 3(a)(viii)(B)

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo I to PAHH and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH") bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo I against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo I, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo I may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo I to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

Exhibit 3(a)(viii)(B)

After recording, please return to:

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

Mortgaged Property Address:

300-304 N. Broad Street
Philadelphia, PA

Tax Parcel No.:
885620242

## MORTGAGE MODIFICATION AGREEMENT

This Mortgage Modification Agreement (this "Modification") is made as of the ___ day of _____, 2022, and effective as of the ___ day of _____, 2022 (the "Effective Date"), by and between **BROAD STREET HEALTHCARE PROPERTIES II, LLC**, a Delaware limited liability company ("Broad II" or "Mortgagor") and **PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company ("Mortgagee").

WHEREAS, Mortgagor previously granted to Mortgagee a Mortgage dated as of March 30, 2022, effective as of March 31, 2022, and recorded April 7, 2022 as Document ID # 54019493 (the "Mortgage"), which granted a lien on the property located at 300-304 N. Broad Street in the City and County of Philadelphia, Commonwealth of Pennsylvania, as more particularly described in Exhibit A attached hereto and made a part hereof (the "Mortgaged Property"); and

WHEREAS, the Mortgage was granted as security for Mortgagor's obligations pursuant to that certain Note (the "Original Note") and such other Loan Documents (each as defined in the Mortgage) and each reflecting a Loan amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00); and

WHEREAS, Mortgagor, Mortgagee and other parties have entered into that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties (the "MOU"); and

WHEREAS, pursuant to the MOU, the Original Note will be assigned to and assumed by Center City Healthcare, LLC ("CCH"), on the Effective Date, pursuant to the Assignment, Assumption and Novation Agreement effective as of the MOU Implementation Date (as defined in the MOU) (the "Assignment Agreement"), under which all of Mortgagor's rights, duties, obligations, responsibilities and liabilities under the Original Note will be transferred and assigned

Exhibit 3(a)(viii)(B)

to and assumed by CCH, and the Original Note will be novated (as assigned, assumed and novated, the "<u>Novated Note</u>"); and

WHEREAS, pursuant to the MOU, Mortgagee shall make the payment in the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) (such amount, the "<u>Settlement Balancing Payment</u>") under and in accordance with the terms of the MOU; and

WHEREAS, the parties to the MOU have agreed, under the terms of the MOU (including Schedule 3(b) thereto), that when all or any part of the Property shall be sold, then the proceeds from such sale(s) shall be distributed in accordance with the terms of the MOU including, without limitation, for payments of amounts due under the Novated Note and reimbursement to Mortgagee of the Settlement Balancing Payment; and

WHEREAS, Mortgagor, as a party to the MOU, is benefitting by the MOU; and

WHEREAS, pursuant to the MOU, Mortgagor has agreed to amend the Mortgage to extend the lien of the Mortgage on the Mortgaged Property to secure the Settlement Balancing Payment Reimbursement Obligation (as defined below); and

WHEREAS, Mortgagor and Mortgagee have further agreed to amend the Mortgage, in each case with respect to Mortgagor's personal recourse duties, obligations, responsibilities and liabilities and with respect to personal recourse remedies available to Mortgagee and certain other terms and conditions as set forth herein; and

WHEREAS, the foregoing recitals are hereby incorporated in this Modification.

NOW THEREFORE, for good and valuable consideration, Mortgagor and Mortgagee agree to amend the Mortgage, effective as of the Effective Date:

1.  The Mortgage is hereby modified so that all references therein to the amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00) are replaced with the sum of Ten Million Fifty Thousand and No/100 Dollars ($10,050,000).

2.  The Mortgage is hereby modified so that all references to the "Mortgaged Property" shall be deemed to include the property listed on **Schedule A** hereto and the definition of "Agreements" shall be deleted and replaced in its entirety with the following:

    "**Agreements**" shall mean (i) all certificates, instruments, franchises, permits, licenses, plans, specifications, warranties, and guarantees, and (ii) all agreements, contracts and other documents listed on **Schedule A** attached to the Mortgage Modification Agreement dated [_____], in each case now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements, or respecting any of Mortgagor's business or activity conducted at the Premises or any part thereof, or relating to any of the Fixtures, and all right, title and interest of Mortgagor therein and thereunder,

Exhibit 3(a)(viii)(B)

including, without limitation, the right, upon the happening of an Event of Default hereunder, to receive and collect any sums payable to Mortgagor thereunder.

Mortgagee is hereby authorized to file amendments to the Financing Statements to reflect this modification of the Mortgaged Property, at Mortgagee's cost and expense.

3.  Pursuant to the Assignment Agreement, but subject to the provisions of Section 4.06 of the Mortgage (as modified herein), the Mortgagee acknowledges that any personal recourse duties, obligations, responsibilities and liabilities of Mortgagor under the Mortgage and any recourse remedies available to Mortgagee shall be the responsibility of and shall be performed by, CCH irrevocably, absolutely and unconditionally in all respects, without personal recourse to Broad II.  Subject to Section 4.06 of the Mortgage (as modified herein), Mortgagee hereby releases Broad II from any and all such personal recourse duties, obligations, responsibilities and liabilities under the Mortgage and any and all personal recourse remedies available to Mortgagee under the Mortgage.  For the avoidance of doubt, the performance of covenants, conditions, agreements and obligations under, *inter alia*, Article I, any provisions referenced in Section 2.01(a), Section 2.01(h), Section 2.08, or Section 3.14 of the Mortgage, repayment of "Future Advances" (as defined in the Mortgage) and the performance and observance of all other provisions of the Mortgage, the Novated Note and the other Loan Documents, shall be the sole responsibility of, and shall be performed by, CCH, and recourse for the failure to perform any of the foregoing shall be solely against CCH and the Mortgaged Property.

4.  The Mortgage is hereby modified so that all references to the "Note" shall refer to the Novated Note as transferred and assigned by Mortgagor to CCH pursuant to, and novated in accordance with, the Assignment Agreement.

5.  The following is hereby added to the definition of the term "Secured Obligations" in the Mortgage:

> and (vii) Repayment of the Settlement Balancing Payment Reimbursement Obligation, solely out of the proceeds of the sales and/or other dispositions of the Mortgaged Property in accordance with the terms of the MOU.

6.  The following are hereby added to the definitions section of the Mortgage in the proper alphabetical order:

> "**MOU**" shall mean that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties, dated as of _____, 2022.

> "**Settlement Balancing Payment**" shall mean the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) paid by Mortgagee under and in accordance with the terms of the MOU.

Exhibit 3(a)(viii)(B)

"**Settlement Balancing Payment Reimbursement Obligation**" shall mean the obligation to repay to Mortgagee the Settlement Balancing Payment, in accordance with the terms of the MOU (including Schedule 3(b) thereto), when all or any part of the Mortgaged Property are sold, solely from the proceeds from such sale(s) and/or other dispositions.  For the avoidance of doubt, Mortgagor shall not in any circumstances be liable for or obligated on the Settlement Balancing Reimbursement Obligation and the repayment thereof shall be strictly limited to the proceeds from any sale of the Mortgaged Property..

7.  The last paragraph of the Granting Clause of the Mortgage is hereby amended to read in its entirety as follows: "PROVIDED ALWAYS, and this instrument is created upon the express condition that, if Mortgagor pays or causes to be paid to Mortgagee, the Secured Obligations, then this Mortgage and the estate hereby granted shall cease and become void."

8.  Section 2.01(b) of the Mortgage is hereby amended to delete the following phrase contained therein "or the other Loan Documents".

9.  The final paragraph of Section 2.01(c) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

10.  The final paragraph of Section 2.01(d) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

11.  The final paragraph of Section 2.01(e) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

12.  Section 2.01(g) of the Mortgage is hereby amended to delete the following phrase contained therein "(other than a default in payment of obligations of Borrower under the Note or any of the other Loan Documents)".

13.  The second sentence of Section 3.04 of the Mortgage, commencing with the phrase "This Mortgage may not be assigned by Mortgagee prior to …", is hereby deleted in its entirety.

14.  The final sentence of Section 3.04 of the Mortgage, commencing with the phrase "If there is more than one Mortgagor…", is hereby deleted in its entirety.

15.  Section 3.14 of the Mortgage is hereby deleted in its entirety and replaced with the following:

SECTION 3.14.  Mortgagor acknowledges that this Mortgage is a Loan Document and agrees that any Event of Default under this Mortgage will constitute an "**Event of Default**" under the Co-Borrower Mortgages, the Note and the other Loan Documents, and that, in such event, in addition to any and all other remedies available to Mortgagee

Exhibit 3(a)(viii)(B)

hereunder or under any of the other Loan Documents or at law or in equity, Mortgagee shall be permitted to recover any amounts secured hereby from the value of the Mortgaged Property and the property secured by the Co- Borrower Mortgages, on a pro rata basis or otherwise, as determined by Mortgagee in its reasonable discretion.

16. Section 4.06(a) of the Mortgage is hereby deleted in its entirety and replaced with the following:

> (a)    Recourse against Mortgagor is limited solely to the Mortgaged Property, and (i) neither Mortgagor, or (ii) nor (a) any member of Mortgagor, (b) any person owning, directly or indirectly, any legal or beneficial interest in Mortgagor or a member of Mortgagor, (c) any partner, manager, principal, officer, controlling person, beneficiary, trustee, advisor, representative, or other similar fiduciary, shareholder, employee, agent, affiliate or director of any person described above, or (d) any of their respective successors and assigns, shall have any personal liability for the payment or performance of any of the obligations or otherwise under the Note or Mortgage.

17. Section 4.06(b) of the Mortgage is hereby deleted in its entirety and replaced with the following:

> (b)    Notwithstanding the foregoing, nothing herein shall serve to limit Mortgagee's right to seek any judgment against Mortgagor solely to the extent such judgment or decree may be necessary to foreclose and bar Mortgagor's interests in the Mortgaged Property; provided that the recourse under such judgment or decree shall be solely to the Mortgaged Property; and further provided that nothing herein stated or set forth in the Note shall: (a) release, impair or otherwise affect the Novated Note or this Mortgage; nor (b) impair or otherwise affect the validity or the lien of the Novated Note or this Mortgage; nor (c) impair the right of Mortgagee to accelerate the maturity of the Novated Note (or to avail itself of any of its other rights and remedies) in accordance with the terms hereof.

18. Except as modified hereby, all other provisions of the Mortgage remain in full force and effect.

19. This Modification Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same instrument.


**[END OF TEXT; SIGNATURE PAGE FOLLOWS]**

Exhibit 3(a)(viii)(B)

**IN WITNESS WHEREOF**, this Modification is duly executed as of the day and year first above written.

**MORTGAGOR:**

**BROAD STREET HEALTHCARE
PROPERTIES II, LLC,**
a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

STATE OF _____ )
                                ) SS:
COUNTY OF _____ )

I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Broad Street Healthcare Properties II, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____        _____
                                                      Notary Public

Exhibit 3(a)(viii)(B)

**MORTGAGEE:**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC,**
a Delaware limited liability company

By: _____

Name:

Title:

STATE OF _____  )

　　　　　　　　　　　　　　　 ) SS:

COUNTY OF _____  )

     I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Philadelphia Academic Healthcare System, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

     GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____　　　　_____

　　　　　　　　　　　　　　　　　　　　　　Notary Public

40071017.7

Exhibit 3(a)(viii)(B)

## EXHIBIT A

LEGAL DESCRIPTION OF THE MORTGAGED PROPERTY

Lot 1 – HUH North Fee Parcel:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2)      THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3)      THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4)      THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT  1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

Lot 1 – HUH North Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(viii)(B)

## <u>SCHEDULE A</u>

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties II, LLC ("Broad Street PropCo II") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo II and located upon or at any Real Estate.
2. Broad Street PropCo II REAs.
3. Broad Street PropCo II Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
   a. Account No.:          XX-XXXX-0061
      Account Name: Broad Street Healthcare Properties II, LLC
      Transit/Routing:       043000096
      Bank Name:             PNC Bank, Pittsburgh, PA

Exhibit 3(a)(viii)(B)

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo II to PAHH and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH') bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo II against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo II may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo II to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in  certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

Exhibit 3(a)(viii)(B)

After recording, please return to:

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

Mortgaged Property Addresses:

200-214 N. Broad Street
201-219 N. 15th Street (Parcel E)
Philadelphia, PA

Tax Parcel Nos.:

885467862
772028496

## MORTGAGE MODIFICATION AGREEMENT

This Mortgage Modification Agreement (this "Modification") is made as of the ___ day of _____, 2022, and effective as of the ___ day of _____, 2022 (the "Effective Date"), by and between **BROAD STREET HEALTHCARE PROPERTIES III, LLC**, a Delaware limited liability company ("Broad III" or "Mortgagor") and **PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company ("Mortgagee").

WHEREAS, Mortgagor has previously granted to Mortgagee a Mortgage dated as of March 30, 2022, effective as of March 31, 2022, and recorded April 7, 2022 as Document ID # 54019476 (the "Mortgage"), which granted a lien on the property located at 200-214 N. Broad Street and 201-219 N. 15th Street (Parcel E) in the City and County of Philadelphia, Commonwealth of Pennsylvania, as more particularly described in Exhibit A attached hereto and made a part hereof (the "Mortgaged Property"); and

WHEREAS, the Mortgage was granted as security for Mortgagor's obligations pursuant to that certain Note (the "Original Note") and such other Loan Documents (each as defined in the Mortgage) and each reflecting a Loan amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00); and

WHEREAS, Mortgagor, Mortgagee and other parties have entered into that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties (the "MOU"); and

40071071.7

Exhibit 3(a)(viii)(B)

WHEREAS, pursuant to the MOU, the Original Note will be assigned to and assumed by Center City Healthcare, LLC ("CCH"), on the Effective Date, pursuant to the Assignment, Assumption and Novation Agreement effective as of the MOU Implementation Date (as defined in the MOU) (the "Assignment Agreement"), under which all of Mortgagor's rights, duties, obligations, responsibilities and liabilities under the Original Note will be transferred and assigned to and assumed by CCH, and the Original Note will be novated (as assigned, assumed and novated, the "Novated Note"); and

WHEREAS, pursuant to the MOU, Mortgagee shall make the payment in the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) (such amount, the "Settlement Balancing Payment") under and in accordance with the terms of the MOU; and

WHEREAS, the parties to the MOU have agreed, under the terms of the MOU (including Schedule 3(b) thereto), that when all or any part of the Property shall be sold, then the proceeds from such sale(s) shall be distributed in accordance with the terms of the MOU including, without limitation, for payments of amounts due under the Novated Note and reimbursement to Mortgagee of the Settlement Balancing Payment; and

WHEREAS, Mortgagor, as a party to the MOU, is benefitting by the MOU; and

WHEREAS, pursuant to the MOU, Mortgagor has agreed to amend the Mortgage to extend the lien of the Mortgage on the Mortgaged Property to secure the Settlement Balancing Payment Reimbursement Obligation (as defined below); and

WHEREAS, Mortgagor and Mortgagee have further agreed to amend the Mortgage, in each case with respect to Mortgagor's personal recourse duties, obligations, responsibilities and liabilities and with respect to personal recourse remedies available to Mortgagee and certain other terms and conditions as set forth herein; and

WHEREAS, the foregoing recitals are hereby incorporated in this Modification.

NOW THEREFORE, for good and valuable consideration, Mortgagor and Mortgagee agree to amend the Mortgage, effective as of the Effective Date:

1.  The Mortgage is hereby modified so that all references therein to the amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00) are replaced with the sum of Ten Million Fifty Thousand and No/100 Dollars ($10,050,000).

2.  The Mortgage is hereby modified so that all references to the "Mortgaged Property" shall be deemed to include the property listed on **Schedule A** hereto and the definition of "Agreements" shall be deleted and replaced in its entirety with the following:

    "**Agreements**" shall mean (i) all certificates, instruments, franchises, permits, licenses, plans, specifications, warranties, and guarantees, and (ii) all agreements, contracts and other documents listed on **Schedule A** attached to the Mortgage Modification Agreement dated [_____], in each case now or hereafter

Exhibit 3(a)(viii)(B)

> entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements, or respecting any of Mortgagor's business or activity conducted at the Premises or any part thereof, or relating to any of the Fixtures, and all right, title and interest of Mortgagor therein and thereunder, including, without limitation, the right, upon the happening of an Event of Default hereunder, to receive and collect any sums payable to Mortgagor thereunder.

Mortgagee is hereby authorized to file amendments to the Financing Statements to reflect this modification of the Mortgaged Property, at Mortgagee's cost and expense.

3. Pursuant to the Assignment Agreement, but subject to the provisions of Section 4.06 of the Mortgage (as modified herein), the Mortgagee acknowledges that any personal recourse duties, obligations, responsibilities and liabilities of Mortgagor under the Mortgage and any recourse remedies available to Mortgagee shall be the responsibility of and shall be performed by, CCH irrevocably, absolutely and unconditionally in all respects, without personal recourse to Broad III.  Subject to Section 4.06 of the Mortgage (as modified herein), Mortgagee hereby releases Broad III from any and all such personal recourse duties, obligations, responsibilities and liabilities under the Mortgage and any and all personal recourse remedies available to Mortgagee under the Mortgage.  For the avoidance of doubt, the performance of covenants, conditions, agreements and obligations under, *inter alia*, Article I, any provisions referenced in Section 2.01(a), Section 2.01(h), Section 2.08, or Section 3.14 of the Mortgage, repayment of "Future Advances" (as defined in the Mortgage) and the performance and observance of all other provisions of the Mortgage, the Novated Note and the other Loan Documents, shall be the sole responsibility of, and shall be performed by, CCH, and recourse for the failure to perform any of the foregoing shall be solely against CCH and the Mortgaged Property.

4. The Mortgage is hereby modified so that all references to the "Note" shall refer to the Novated Note as transferred and assigned by Mortgagor to CCH pursuant to, and novated in accordance with, the Assignment Agreement.

5. The following is hereby added to the definition of the term "Secured Obligations" in the Mortgage:

> and (vii) Repayment of the Settlement Balancing Payment Reimbursement Obligation, solely out of the proceeds of the sales and/or other dispositions of the Mortgaged Property in accordance with the terms of the MOU.

6. The following are hereby added to the definitions section of the Mortgage in the proper alphabetical order:

> "**MOU**" shall mean that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties, dated as of _____, 2022.

Exhibit 3(a)(viii)(B)

"**Settlement Balancing Payment**" shall mean the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) paid by Mortgagee under and in accordance with the terms of the MOU.

"**Settlement Balancing Payment Reimbursement Obligation**" shall mean the obligation to repay to Mortgagee the Settlement Balancing Payment, in accordance with the terms of the MOU (including Schedule 3(b) thereto), when all or any part of the Mortgaged Property are sold, solely from the proceeds from such sale(s) and/or other dispositions.  For the avoidance of doubt, Mortgagor shall not in any circumstances be liable for or obligated on the Settlement Balancing Reimbursement Obligation and the repayment thereof shall be strictly limited to the proceeds from any sale of the Mortgaged Property.

7. The last paragraph of the Granting Clause of the Mortgage is hereby amended to read in its entirety as follows: "PROVIDED ALWAYS, and this instrument is created upon the express condition that, if Mortgagor pays or causes to be paid to Mortgagee, the Secured Obligations, then this Mortgage and the estate hereby granted shall cease and become void."

8. Section 2.01(b) of the Mortgage is hereby amended to delete the following phrase contained therein "or the other Loan Documents".

9. The final paragraph of Section 2.01(c) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

10. The final paragraph of Section 2.01(d) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

11. The final paragraph of Section 2.01(e) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

12. Section 2.01(g) of the Mortgage is hereby amended to delete the following phrase contained therein "(other than a default in payment of obligations of Borrower under the Note or any of the other Loan Documents)".

13. The second sentence of Section 3.04 of the Mortgage, commencing with the phrase "This Mortgage may not be assigned by Mortgagee prior to …", is hereby deleted in its entirety.

14. The final sentence of Section 3.04 of the Mortgage, commencing with the phrase "If there is more than one Mortgagor…", is hereby deleted in its entirety.

15. Section 3.14 of the Mortgage is hereby deleted in its entirety and replaced with the following:

SECTION 3.14.   Mortgagor acknowledges that this Mortgage is a Loan Document and agrees that any Event of Default under this Mortgage will constitute an "**Event of Default**" under the Co-Borrower Mortgages, the Note and the other Loan Documents, and that, in such event, in addition to any and all other remedies available to Mortgagee hereunder or under any of the other Loan Documents or at law or in equity, Mortgagee shall be permitted to recover any amounts secured hereby from the value of the Mortgaged Property and the property secured by the Co- Borrower Mortgages, on a pro rata basis or otherwise, as determined by Mortgagee in its reasonable discretion.

16. Section 4.06(a) of the Mortgage is hereby deleted in its entirety and replaced with the following:

(a)    Recourse against Mortgagor is limited solely to the Mortgaged Property, and (i) neither Mortgagor, or (ii) nor (a) any member of Mortgagor, (b) any person owning, directly or indirectly, any legal or beneficial interest in Mortgagor or a member of Mortgagor, (c) any partner, manager, principal, officer, controlling person, beneficiary, trustee, advisor, representative, or other similar fiduciary, shareholder, employee, agent, affiliate or director of any person described above, or (d) any of their respective successors and assigns, shall have any personal liability for the payment or performance of any of the obligations or otherwise under the Note or Mortgage.

17. Section 4.06(b) of the Mortgage is hereby deleted in its entirety and replaced with the following:

(b)    Notwithstanding the foregoing, nothing herein shall serve to limit Mortgagee's right to seek any judgment against Mortgagor solely to the extent such judgment or decree may be necessary to foreclose and bar Mortgagor's interests in the Mortgaged Property; provided that the recourse under such judgment or decree shall be solely to the Mortgaged Property; and further provided that nothing herein stated or set forth in the Note shall: (a) release, impair or otherwise affect the Novated Note or this Mortgage; nor (b) impair or otherwise affect the validity or the lien of the Novated Note or this Mortgage; nor (c) impair the right of Mortgagee to accelerate the maturity of the Novated Note (or to avail itself of any of its other rights and remedies) in accordance with the terms hereof.

18. Except as modified hereby, all other provisions of the Mortgage remain in full force and effect.

19. This Modification Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same instrument.

Exhibit 3(a)(viii)(B)

[END OF TEXT; SIGNATURE PAGE FOLLOWS]

Exhibit 3(a)(viii)(B)

**IN WITNESS WHEREOF**, this Modification is duly executed as of the day and year first above written.

**MORTGAGOR:**

**BROAD STREET HEALTHCARE PROPERTIES III, LLC,**
a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

STATE OF _____    )

                                ) SS:

COUNTY OF _____    )

        I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Broad Street Healthcare Properties III, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

        GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____          _____
                                                       Notary Public

Exhibit 3(a)(viii)(B)

**MORTGAGEE:**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC,**
a Delaware limited liability company

By: _____
Name:
Title:


STATE OF _____ )
                              ) SS:
COUNTY OF _____ )

        I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Philadelphia Academic Healthcare System, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

        GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:


_____       _____
                                                       Notary Public

Exhibit 3(a)(viii)(B)

# EXHIBIT A

LEGAL DESCRIPTION OF THE MORTGAGED PROPERTY

**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;

2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;

7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;

8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;

10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;

11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;

12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;

13) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;

14)    THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1)    THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;
2)    THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;
3)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;
4)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;
5)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;
6)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;
7)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;
8)    THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;
9)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;

Exhibit 3(a)(viii)(B)

10)  THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;

11)  THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

12)  THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14)  THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16)  THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18)  THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20)  THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22)  THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

Exhibit 3(a)(viii)(B)

## SCHEDULE A

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties III, LLC ("Broad Street PropCo III") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1.  All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo III and located upon or at any Real Estate.
2.  Broad Street PropCo III REAs.
3.  Broad Street PropCo III Unity of Use Agreements.
4.  All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo III, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5.  Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
    a.  Account No.:          XX-XXXX-0088
        Account Name: Broad Street Healthcare Properties III, LLC
        Transit/Routing:          043000096
        Bank Name:          PNC Bank, Pittsburgh, PA

Exhibit 3(a)(viii)(B)

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo III to PAHH and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH') bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo III against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo III, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo III may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo III to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.


The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Christina M. Carry, Paralegal, Saul Ewing Arnstein & Lehr

**B. E-MAIL CONTACT AT FILER (optional)**
ccarry@saul.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

Christina M. Carry, Paralegal, Saul Ewing Arnstein &
Lehr LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20222743292

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:      AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record     ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c     ☐ ADD name: Complete item 7a or 7b, and item 7c     ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☑ **COLLATERAL CHANGE:**  Also check one of these four boxes:  ☑ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

See Exhibit A adding
additional collateral of the Debtor

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐  and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Philadelphia Academic Health System, LLC | | | |
| OR  9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
Delaware Secretary of State

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form

**20222743292**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties II, LLC**

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties II, LLC**

OR

13b. INDIVIDUAL'S SURNAME          FIRST PERSONAL NAME          ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

**See Exhibit A adding additional collateral of the Debtor**

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

**See Exhibit B**

18. MISCELLANEOUS:
Delaware Department of State

**EXHIBIT A**

**ADDITIONAL COLLATERAL**

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties II, LLC ("Broad Street PropCo II") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo II and located upon or at any Real Estate.
2. Broad Street PropCo II REAs.
3. Broad Street PropCo II Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
   a. Account No.:        XX-XXXX-0061
      Account Name: Broad Street Healthcare Properties II, LLC
      Transit/Routing:      043000096
      Bank Name:         PNC Bank, Pittsburgh, PA

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo II to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH") bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo II against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo II may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo II to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

---

[1]     **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo II to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH") bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo II against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo II may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo II to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

---

[1]    **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**

LEGAL DESCRIPTION

Exhibit B

Legal Description of the Premises

**TRACT II:**

Lot 1 – HUH North Fee Parcel:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2)      THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3)      THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4)      THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT 1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

Lot 1 – HUH North Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Christina M. Carry, Paralegal, Saul Ewing Arnstein & Lehr**

B. E-MAIL CONTACT AT FILER (optional)
**ccarry@saul.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Christina M. Carry, Paralegal, Saul Ewing Arnstein & Lehr LLP
1200 Liberty Ridge Drive, Suite 200 Wayne, PA 19087**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| **20222743342** | ☐ |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check _one_ of these two boxes:                    AND Check _one_ of these three boxes to:

This Change affects ☐ Debtor _or_ ☐ Secured Party of record          ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c     ☐ ADD name: Complete item 7a or 7b, and item 7c     ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only _one_ name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ **COLLATERAL CHANGE:** Also check _one_ of these four boxes: ☑ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:
**See Exhibit A adding additional collateral of the Debtor**

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only _one_ name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Philadelphia Academic Health System, LLC** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**Delaware Secretary of State**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form

**20222743342**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties III, LLC**

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties III, LLC**

OR
13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

**See Exhibit A adding additional collateral of the Debtor**

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17
(if Debtor does not have a record interest):

17. Description of real estate:

**See Exhibit B**

18. MISCELLANEOUS:
Delaware Department of State

**EXHIBIT A**

**ADDITIONAL COLLATERAL**

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties III, LLC ("Broad Street PropCo III") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo III and located upon or at any Real Estate.
2. Broad Street PropCo III REAs.
3. Broad Street PropCo III Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo III, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
    a. Account No.:          XX-XXXX-0088
       Account Name: Broad Street Healthcare Properties III, LLC
       Transit/Routing:        043000096
       Bank Name:              PNC Bank, Pittsburgh, PA

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo III to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH') bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo III against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo III, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo III may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo III to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

---

[1]    **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo III to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH') bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo III against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo III, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo III may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo III to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

---

[1]    **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**

LEGAL DESCRIPTION

Exhibit B

<u>Legal Description of the Premises</u>

## TRACT III:

### Parcel D:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;

2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;

7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;

8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;

10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;

11)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;

12)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;

13)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;

14)    THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1)    THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;

2)    THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;

3)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;

4)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;

7) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;

8) THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;

10) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;

11) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

12) THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16) THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22) THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Christina M. Carry, Paralegal, Saul Ewing Arnstein & Lehr

B. E-MAIL CONTACT AT FILER (optional)
ccarry@saul.com

C. SEND ACKNOWLEDGMENT TO:    (Name and Address)

Christina M. Carry, Paralegal, Saul Ewing Arnstein &
Lehr LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 20222743110 | ☐ |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ COLLATERAL CHANGE: Also check one of these four boxes: ☑ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:
See Exhibit A adding additional collateral of the Debtor

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Philadelphia Academic Health System, LLC | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
Delaware Secretary of State

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**
FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER:  Same as item 1a on Amendment form
**20222743110**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:  Same as item 9 on Amendment form

OR

12a. ORGANIZATION'S NAME
**Broad Street Healthcare Properties, LLC**

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)　　　　　　SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13):  Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

OR

13a. ORGANIZATION'S NAME
**Broad Street Healthcare Properties, LLC**

13b. INDIVIDUAL'S SURNAME　　　　　FIRST PERSONAL NAME　　　　　ADDITIONAL NAME(S)/INITIAL(S)　　　SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):
**See Exhibit A adding  additional collateral of the Debtor**

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17
(if Debtor does not have a record interest):

17. Description of real estate:
**See Exhibit B**

18. MISCELLANEOUS:
**Delaware Department of State**

**EXHIBIT A**

**ADDITIONAL COLLATERAL**

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties, LLC ("Broad Street PropCo I") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo I and located upon or at any Real Estate.
2. Broad Street PropCo I REAs.
3. Broad Street PropCo I Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo I, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:

    a. Account No.:         XX-XXXX-0053
       Account Name: Broad Street Healthcare Properties, LLC

       Transit/Routing:     043000096
       Bank Name:           PNC Bank, Pittsburgh, PA

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo I to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH") bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo I against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo I, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo I may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo I to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

---

[1]    **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo I to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH") bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo I against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo I, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo I may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo I to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

---

[1]      **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**

LEGAL DESCRIPTION

Exhibit B

Legal Description of the Premises

TRACT I:

Parcel A:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1)    THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2)    THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4)    THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8)    THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9)    THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

10)    THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 27.619' TO A POINT;

11)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12)    THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.    53316755.

AND

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1)    THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2)    THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

3)    THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

4)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

1) THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

2) THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7) THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)      THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)      THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)     THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

1.      Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

2.      South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

3.      North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

4.      Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

## Exhibit 3(a)(x)
## Merger Agreement (Front Street Entities merged into PAHH)

Exhibit 3(a)(x)

# AGREEMENT OF MERGER
## OF
## FRONT STREET HEALTHCARE PROPERTIES, LLC
(a Delaware limited liability company)
## WITH AND INTO
## PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC
(a Delaware limited liability company)

This **AGREEMENT OF MERGER** (this "**Agreement**") is dated as of [_____], 2022, by and between Front Street Healthcare Properties, LLC, a Delaware limited liability company ("**Front Street**"), and Philadelphia Academic Health Holdings, LLC, a Delaware limited liability company ("**PAHH**").

## RECITALS

**A.**    PAHH, the sole member and sole manager of Front Street, has deemed it advisable and in the best interests of Front Street that Front Street be merged with and into PAHH.

**B.**    American Academic Health System, LLC, the sole member with management authority for PAHH, has adopted resolutions approving this Agreement in accordance with the Delaware Limited Liability Company Act (the "**DLLCA**").

**NOW, THEREFORE**, the parties hereto, in consideration of the mutual covenants herein contained and intending to be legally bound, agree as follows:

1.    <u>**Parties to Merger**</u>.  Front Street and PAHH shall effect a merger (the "**Merger**") in accordance with and subject to the terms and conditions of this Agreement.

2.    <u>**Merger; Governing Law**</u>.  At the Effective Time (as defined in Section 3 hereof), Front Street shall be merged with and into PAHH, the separate existence of Front Street shall cease, and PAHH shall continue as the surviving limited liability company (the "**Surviving Limited Liability Company**") under the name "Philadelphia Academic Health Holdings, LLC." The Surviving Limited Liability Company shall continue to be governed by the laws of the State of Delaware.

3.    <u>**Filing and Effective Time**</u>.  A Certificate of Merger (the "**Delaware Certificate**") to be filed with the Secretary of State of the State of Delaware, substantially in the form of <u>**Exhibit A**</u> attached hereto with such changes as may be required by the Secretary of State of the State of Delaware, and such other documents and instruments as are required by, and complying in all respects with, the DLLCA shall be delivered to the appropriate state officials for filing. The Merger shall become effective at such time as the Delaware Certificate is accepted for record by the Secretary of State of the State of Delaware or such other time as specified in the Delaware Certificate (the "**Effective Time**").

Exhibit 3(a)(x)

4.      **Certificate of Formation**.  At the Effective Time, the Certificate of Formation of PAHH shall be and thereafter remain the Certificate of Formation of the Surviving Limited Liability Company until thereafter amended in accordance with applicable law, and the Surviving Limited Liability Company shall continue to be a limited liability company organized and governed by the laws of the State of Delaware.

5.      **Limited Liability Company Agreement**.  At the Effective Time, the Limited Liability Company Agreement of PAHH shall be and thereafter remain the Limited Liability Company Agreement of the Surviving Limited Liability Company until altered, amended or repealed in the manner therein provided in accordance with the Limited Liability Company Agreement of the Surviving Limited Liability Company and applicable law.

6.      **Cancellation of Limited Liability Company Interests**.  At the Effective Time, all of the limited liability company interests in Front Street issued and outstanding immediately prior to the Effective Time shall, by virtue of the Merger and without any action on the part of PAHH, be canceled and cease to exist.

7.      **Effect of Merger**.  At the Effective Time, the Merger shall have the effect set forth in the DLLCA.

8.      **Amendment or Termination**.  This Agreement may be amended or terminated at any time on or before the Effective Time by agreement of PAHH, the sole member and sole manager of Front Street, and AAHS the sole member with management authority for PAHH.

9.      **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same agreement.

*[Signature Page Follows]*

40279093.3

Exhibit 3(a)(x)

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement of Merger as of the day and year first written above.

**FRONT STREET HEALTHCARE PROPERTIES, LLC**


By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President


**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**


By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

SIGNATURE PAGE TO AGREEMENT OF MERGER

Exhibit 3(a)(x)

## EXHIBIT A

### Delaware Certificate

**CERTIFICATE OF MERGER**

**OF**
**AGREEMENT OF MERGER**
**OF**
**FRONT STREET HEALTHCARE PROPERTIES, LLC**
(a Delaware limited liability company)
**WITH AND INTO**
**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**
(a Delaware limited liability company)

---

Pursuant to Title 6, Section 18-209 of the
Delaware Limited Liability Company Act

---

Philadelphia Academic Health Holdings, LLC, a Delaware limited liability company ("**PAHH**"), executed the following Certificate of Merger:

**FIRST**:  The name of the surviving limited liability company is Philadelphia Academic Health Holdings, LLC, and the name of the limited liability company being merged into this surviving limited liability company is Front Street Healthcare Properties, LLC.

**SECOND**:  The Agreement of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent limited liability companies.

**THIRD**:  The name of the surviving limited liability company is Philadelphia Academic Health Holdings, LLC.

**FOURTH**: This Certificate of Merger, and the merger provided for herein, shall become effective at the time this Certificate of Merger is filed with the Secretary of State of the State of Delaware.

**FIFTH**:  The Agreement of Merger is on file at c/o Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, DE 19904 (Kent County), the place of business of the registered agent of surviving limited liability company in the State of Delaware.

**SIXTH**:  A copy of the Agreement of Merger will be furnished by the surviving limited liability company on request, without cost, to any member of the constituent limited liability companies.

EXHIBIT A

Exhibit 3(a)(x)

**SEVENTH**:  The current certificate of formation of PAHH shall be the certificate of formation of the surviving limited liability company.


IN WITNESS WHEREOF, the surviving limited liability company has caused this Certificate of Merger to be executed by the undersigned, its authorized officer, as of this ___ day of _____, 2022.

**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**


By: _____

Name: Joel Freedman

Title: Chief Executive Officer and President

EXHIBIT A

Exhibit 3(a)(x)

## AGREEMENT OF MERGER
## OF
## FRONT STREET HEALTHCARE PROPERTIES II, LLC
(a Delaware limited liability company)
## WITH AND INTO
## PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC
(a Delaware limited liability company)

This **AGREEMENT OF MERGER** (this "**Agreement**") is dated as of [_____], 2022, by and between Front Street Healthcare Properties II, LLC, a Delaware limited liability company ("**Front Street**"), and Philadelphia Academic Health Holdings, LLC, a Delaware limited liability company ("**PAHH**").

## RECITALS

A.      PAHH, the sole member and sole manager of Front Street, has deemed it advisable and in the best interests of Front Street that Front Street be merged with and into PAHH.

B.      American Academic Health System, LLC, the sole member with management authority for PAHH, has adopted resolutions approving this Agreement in accordance with the Delaware Limited Liability Company Act (the "**DLLCA**").

**NOW, THEREFORE**, the parties hereto, in consideration of the mutual covenants herein contained and intending to be legally bound, agree as follows:

1.      **Parties to Merger**.  Front Street and PAHH shall effect a merger (the "**Merger**") in accordance with and subject to the terms and conditions of this Agreement.

2.      **Merger; Governing Law**.  At the Effective Time (as defined in Section 3 hereof), Front Street shall be merged with and into PAHH, the separate existence of Front Street shall cease, and PAHH shall continue as the surviving limited liability company (the "**Surviving Limited Liability Company**") under the name "Philadelphia Academic Health Holdings, LLC." The Surviving Limited Liability Company shall continue to be governed by the laws of the State of Delaware.

3.      **Filing and Effective Time**.  A Certificate of Merger (the "**Delaware Certificate**") to be filed with the Secretary of State of the State of Delaware, substantially in the form of **Exhibit A** attached hereto with such changes as may be required by the Secretary of State of the State of Delaware, and such other documents and instruments as are required by, and complying in all respects with, the DLLCA shall be delivered to the appropriate state officials for filing. The Merger shall become effective at such time as the Delaware Certificate is accepted for record by the Secretary of State of the State of Delaware or such other time as specified in the Delaware Certificate (the "**Effective Time**").

Exhibit 3(a)(x)

4.     **Certificate of Formation**.  At the Effective Time, the Certificate of Formation of PAHH shall be and thereafter remain the Certificate of Formation of the Surviving Limited Liability Company until thereafter amended in accordance with applicable law, and the Surviving Limited Liability Company shall continue to be a limited liability company organized and governed by the laws of the State of Delaware.

5.     **Limited Liability Company Agreement**.  At the Effective Time, the Limited Liability Company Agreement of PAHH shall be and thereafter remain the Limited Liability Company Agreement of the Surviving Limited Liability Company until altered, amended or repealed in the manner therein provided in accordance with the Limited Liability Company Agreement of the Surviving Limited Liability Company and applicable law.

6.     **Cancellation of Limited Liability Company Interests**.  At the Effective Time, all of the limited liability company interests in Front Street issued and outstanding immediately prior to the Effective Time shall, by virtue of the Merger and without any action on the part of PAHH, be canceled and cease to exist.

7.     **Effect of Merger**.  At the Effective Time, the Merger shall have the effect set forth in the DLLCA.

8.     **Amendment or Termination**.  This Agreement may be amended or terminated at any time on or before the Effective Time by agreement of PAHH, the sole member and sole manager of Front Street, and AAHS the sole member with management authority for PAHH.

9.     **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same agreement.

*[Signature Page Follows]*

Exhibit 3(a)(x)

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement of Merger as of the day and year first written above.

**FRONT STREET HEALTHCARE PROPERTIES II, LLC**


By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President


**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**


By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

SIGNATURE PAGE TO AGREEMENT OF MERGER

Exhibit 3(a)(x)

## EXHIBIT A

### Delaware Certificate

**CERTIFICATE OF MERGER**

**OF**
**AGREEMENT OF MERGER**
**OF**
**FRONT STREET HEALTHCARE PROPERTIES II, LLC**
(a Delaware limited liability company)
**WITH AND INTO**
**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**
(a Delaware limited liability company)

---

Pursuant to Title 6, Section 18-209 of the
Delaware Limited Liability Company Act

---

Philadelphia Academic Health Holdings, LLC, a Delaware limited liability company ("**PAHH**"), executed the following Certificate of Merger:

**FIRST**:  The name of the surviving limited liability company is Philadelphia Academic Health Holdings, LLC, and the name of the limited liability company being merged into this surviving limited liability company is Front Street Healthcare Properties II, LLC.

**SECOND**:  The Agreement of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent limited liability companies.

**THIRD**:  The name of the surviving limited liability company is Philadelphia Academic Health Holdings, LLC.

**FOURTH**: This Certificate of Merger, and the merger provided for herein, shall become effective at the time this Certificate of Merger is filed with the Secretary of State of the State of Delaware.

**FIFTH**:  The Agreement of Merger is on file at c/o Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, DE 19904 (Kent County), the place of business of the registered agent of surviving limited liability company in the State of Delaware.

**SIXTH**:  A copy of the Agreement of Merger will be furnished by the surviving limited liability company on request, without cost, to any member of the constituent limited liability companies.

EXHIBIT A

Exhibit 3(a)(x)

**SEVENTH**:  The current certificate of formation of PAHH shall be the certificate of formation of the surviving limited liability company.

IN WITNESS WHEREOF, the surviving limited liability company has caused this Certificate of Merger to be executed by the undersigned, its authorized officer, as of this ___ day of _____, 2022.

**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**


By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

EXHIBIT A

40279095.4

**Exhibit 3(a)(xiii)**
**Limited Liability Company Purchase Agreement**

Exhibit 3(a)(xiii)

## LIMITED LIABILITY COMPANY INTEREST
## PURCHASE AGREEMENT

THIS LIMITED LIABILITY COMPANY INTEREST PURCHASE AGREEMENT (this "**Agreement**"), dated as of [_____], 2022 (the "**Execution Date**"), is made by and among Joel Freedman; Stella Freedman; Barbara S. Kramer, Trustee,  Michael Ouzounian Irrevocable Trust, dated June 26, 2017; Barbara S. Kramer, Trustee, Benjamin Joseph Freedman Irrevocable Trust, dated June 26, 2017; and Barbara S. Kramer, Trustee, Nathan Alexander Freedman Irrevocable Trust, dated June 26, 2017 (collectively, the "**Sellers**" and each, a "**Seller**"), on the one hand, and MBNF Equity Buyer LLC, a [_____] ("**Buyer**"), on the other hand (each of the Sellers and Buyer, a "**Party**," and collectively, the "**Parties**").

## WITNESSETH

WHEREAS, the Sellers collectively own one hundred percent (100%) of the issued and outstanding limited liability company interests (the "**MBNF Interests**") in, and constitute all of members of, MBNF Investments, LLC, a Delaware limited liability company ("**MBNF**");

WHEREAS, certain Sellers and Buyer are parties to that certain Memorandum of Understanding Re Global Settlement by and among the debtors in the jointly administered and procedurally consolidated chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware entitled *In re: City Center Healthcare, LLC d/b/a Hahnemann University Hospital*, et. al., and other parties party thereto (the "**Global Settlement Agreement**"); and

WHEREAS, the Sellers desire to sell, assign, transfer, convey and deliver the MBNF Interests, together with all of each Seller's rights, title and interest in, to and under the MBNF Interests, to Buyer, and Buyer desires to purchase, acquire and accept from the Sellers, all of each Seller's rights, title and interest in, to and under the MBNF Interests, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants set forth herein and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    <u>Transfer of the MBNF Interests</u>. On the terms and conditions set forth in this Agreement, each Seller hereby sells, assigns, transfers, conveys and delivers (the "**Transfer**") to Buyer and Buyer hereby purchases, acquires and accepts from each Seller, all of such Seller's right, title and interest in, to and under the MBNF Interests, free and clear of all Liens. For purposes of this Agreement, "**Lien**" means any lien (statutory or otherwise), pledge, hypothecation, security interest, encumbrance, claim or charge of any kind whatsoever.

2.    <u>Consideration</u>. In consideration for the Transfer of the MBNF Interests, Buyer will pay Sellers one dollar ($1.00).

Exhibit 3(a)(xiii)

3.    <u>Transfer Taxes</u>.  Buyer shall be responsible for, and shall pay, any and all transfer taxes (including interest and penalties, if applicable) imposed by and payable to any applicable governmental authority arising directly from the Transfer of the MBNF Interests as contemplated herein (collectively, "**Transfer Taxes**").  Each Party shall prepare and timely file all tax returns and statements required to be filed and delivered with and to all applicable governmental authorities in respect of Transfer of the MBNF Interests as contemplated herein, including with respect to any and all Transfer Taxes.

4.    <u>Representations and Warranties</u>.

(a)    Each Seller hereby represents and warrants to Buyer, as of the Execution Date, as follows:

(i)    MBNF is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware;

(ii)    such Seller has good title to such Seller's portion of the MBNF Interests as set forth on **Schedule A** hereto and will transfer the same to Buyer free and clear of all Liens;

(iii)    the MBNF Interests are not certificated; and

(iv)    the MBNF Interests have been duly authorized, validly issued, and are fully-paid and non-assessable and are held beneficially and of record by the Sellers, free and clear of any Liens, were offered, issued, sold and delivered in compliance with all applicable laws governing the issuance of securities and were not issued in violation of (or subject to), and are not currently subject to, any preemptive rights, rights of first refusal or offer or other similar rights.

(b)    Each Party hereby represents and warrants to the other Party, as of the Execution Date, as follows:

(i)    it has the power to execute, deliver and perform its obligations under this Agreement and all necessary action has been taken to authorize the execution, delivery and performance of the same;

(ii)    this Agreement has been duly and validly executed and delivered by such Party and, assuming due and valid execution by the other Party, this Agreement constitutes a valid and binding obligation of such Party enforceable in accordance with its terms subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditors' rights generally; and

(iii)    the execution, delivery and performance of this Agreement will not contravene any existing applicable law or regulation or authorization to which it is subject, any of its constitutive documents or any contract or agreement to which it is party.

Except for the representations and warranties expressly set forth herein, each Party

Exhibit 3(a)(xiii)

disclaims all other representations or warranties, including any implied or statutory representations and warranties, such as merchantability or fitness for a given purpose.

5.     Effectiveness.   This Agreement shall become effective on the business day immediately preceding the effective date of IRS Form 8832 filed by Philadelphia Academic Health Holdings, LLC ("**PAHH**") and signed by Buyer and MBNF, attached hereto as Exhibit A, pursuant to which PAHH will elect to be classified as an association taxable as a corporation for U.S. federal income tax purposes, as described in the Global Settlement Agreement.

6.     Tax Matters.

(a)     Each Seller shall provide Buyer with a duly executed IRS Form W-9 on or prior to the Execution Date.

(b)     Sellers shall be entitled to prepare and file, or cause to be prepared and filed, all U.S. federal and applicable state and local income tax returns of or in respect of MBNF with respect to any taxable period ending on or prior to the effective date of the Transfer pursuant to this Agreement, and Sellers shall be entitled to control any audit or similar proceeding of or in respect of MBNF with respect to any such income tax return.  Buyer shall promptly notify Sellers of any correspondence received by it or any of its subsidiaries from any taxing authority commencing, or stating such authority's intention to commence, an audit or other proceeding with respect to any such income tax return and any other correspondence received from any taxing authority relating to an audit or proceeding, and Buyer shall provide to Sellers copies of such correspondence.

(c)     For U.S. federal and other applicable income tax purposes, (i) the Parties intend that, in accordance with the principles of Rev. Rul. 99-6 (Situation 2), the Transfer pursuant to this Agreement will be treated by Sellers as a sale of partnership interests in MBNF and by Buyer as a purchase of all of the assets, and an assumption of all of the liabilities, of MBNF, and (ii) no Party shall file any income tax return or take any position for income tax purposes inconsistent with such treatment, unless otherwise required by a "determination" within the meaning of Section 1313(a) of the Internal Revenue Code of 1986, as amended (or an analogous provision of other applicable income tax law).

(d)     The Parties shall cooperate fully, as and to the extent reasonably requested by the other Party, in connection with the filing of tax returns and any audit or other proceeding with respect to taxes of or in respect of MBNF and its subsidiaries, including by executing or causing to be executed any IRS Form 2848 (or any analogous or similar form for U.S. federal, state and local tax purposes) or other documents reasonably requested to enable the requesting Party to file any income tax return or control any audit or other proceeding pursuant to Section 6(b) and to take any other action reasonably necessary in connection with the Transfer or the Global Settlement Agreement.

7.     Successors and Assigns.   No Party may assign or delegate this Agreement or its rights or obligations hereunder without the prior written consent of all other Parties.  All of the terms and provisions of this Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns.

8.     Amendments and Waivers; Rights and Remedies.   This Agreement may not be amended except by an instrument in writing signed by each of the Parties.  At any time a Party

Exhibit 3(a)(xiii)

may extend the time for the performance of any of the obligations or other acts of the other Party or waive compliance with any of the agreements or conditions contained herein. Any such extension or waiver shall be valid only if set forth in an instrument in writing signed by the Party to be bound thereby. The failure of any Party to assert any of its rights under this Agreement or otherwise shall not constitute a waiver of such rights. No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by applicable law.

9.    <u>Miscellaneous</u>. All costs and expenses incurred in connection with this Agreement shall be paid by the Party incurring such cost or expense. This Agreement is the result of arms-length negotiations among the Parties and has been prepared jointly by the Parties. In applying and interpreting the provisions of this Agreement, there shall be no presumption that this Agreement was prepared by any one Party or that this Agreement shall be construed in favor of or against any one Party. The section headings herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. Furthermore, this Agreement may be executed by transfer of an originally signed document by facsimile, email in PDF format or other electronic copy signature, each of which will be as fully binding as an original document. This Agreement constitutes the entire agreement among the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements and understandings among the Parties with respect to the subject matter of this Agreement; provided that nothing in this Agreement, in Section 1 or otherwise, is to be construed as affecting the rights or obligations of any of the parties to the Global Settlement Agreement (except for Buyer and Sellers and only to the extent expressly provided for in this Agreement), it being acknowledged that this Agreement is in furtherance of the purposes of the Global Settlement Agreement.

10.    <u>Severability</u>. If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms, conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in a manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent possible.

11.    <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to any choice of law or conflicts of law provision that would cause the application of the laws of any jurisdiction other than the State of Delaware.

[Signature Page Follows.]

Exhibit 3(a)(xiii)

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the Execution Date.

_____
Joel Freedman


_____
Stella Freedman


MICHAEL OUZOUNIAN IRREVOCABLE TRUST,
Dated June 26, 2017

_____
By: Barbara S. Kramer, Trustee


BENJAMIN JOSEPH FREEDMAN IRREVOCABLE
TRUST, Dated June 26, 2017


_____
By: Barbara S. Kramer, Trustee


NATHAN ALEXANDER FREEDMAN
IRREVOCABLE TRUST, Dated June 26, 2017


_____
By: Barbara S. Kramer, Trustee


MBNF Equity Buyer LLC


By:_____
Name:
Title:

40279861.4

Exhibit 3(a)(xiii)

## SCHEDULE A

### MBNF Interests

**Sellers' Ownership Schedule of MBNF Interests**

| Seller | Percentage Interest |
|---|---|
| Joel Freedman | 52.80% |
| Stella Freedman | 35.20% |
| Michael Ouzounian Irrevocable Trust, dated June 26, 2017 | 4.00% |
| Benjamin Joseph Freedman Irrevocable Trust, dated June 26, 2017 | 4.00% |
| Nathan Alexander Freedman Irrevocable Trust, dated June 26, 2017 | 4.00% |
| **Total:** | **100%** |

[Schedule A to Limited Liability Company Interest Purchase Agreement]

Exhibit 3(a)(xiii)

## **EXHIBIT A**

**PAHH's IRS Form 8832**

[see attached]

[Exhibit A to Limited Liability Company Interest Purchase Agreement]



**The form you are looking for begins on the next page of this file.** Before viewing it, please see the important update information below.

# New Mailing Addresses

Addresses for mailing certain forms have changed since the forms were last published. The new mailing addresses are shown below.

Mailing address for **Forms 706-A, 706-GS(D), 706-GS(T), 706-NA, 706-QDT, 8612, 8725, 8831, 8842, 8892, 8924, 8928:**

**Department of the Treasury
Internal Revenue Service Center
Kansas City, MO 64999**

Mailing address for **Forms 2678, 8716, 8822-B, 8832, 8855:**

| Taxpayers in the States Below | Mail the Form to This Address |
|---|---|
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana,Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | Department of the Treasury Internal Revenue Service Center Kansas City, MO 64999 |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | Department of the Treasury Internal Revenue Service Center Ogden, UT 84201 |

This update supplements these forms' instructions. Filers should rely on this update for the changes described, which will be incorporated into the next revision of the forms' instructions.

Form **8832**
(Rev. December 2013)

Department of the Treasury
Internal Revenue Service

# Entity Classification Election

OMB No. 1545-1516

▶ Information about Form 8832 and its instructions is at *www.irs.gov/form8832*.

| | |
|---|---|
| **Type or Print** | Name of eligible entity making election |
| | PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC |
| | Number, street, and room or suite no. If a P.O. box, see instructions. |
| | C/O MBNF LIQUIDATOR, LLC, 410 PARK AVENUE, SUITE 900, ATTN: TIM DAILEADER |
| | City or town, state, and ZIP code. If a foreign address, enter city, province or state, postal code and country. Follow the country's practice for entering the postal code. |
| | NEW YORK, NY 10022 |

Employer identification number

▶ Check if: ☐ Address change    ☐ Late classification relief sought under Revenue Procedure 2009-41
☐ Relief for a late change of entity classification election sought under Revenue Procedure 2010-32

## Part I   Election Information

**1**   **Type of election** (see instructions):

**a**   ☐ Initial classification by a newly-formed entity. Skip lines 2a and 2b and go to line 3.

**b**   ☒ Change in current classification. Go to line 2a.

**2a**   Has the eligible entity previously filed an entity election that had an effective date within the last 60 months?

☐ **Yes.** Go to line 2b.
☒ **No.** Skip line 2b and go to line 3.

**2b**   Was the eligible entity's prior election an initial classification election by a newly formed entity that was effective on the date of formation?

☐ **Yes.** Go to line 3.
☐ **No.** Stop here. You generally are not currently eligible to make the election (see instructions).

**3**   Does the eligible entity have more than one owner?

☐ **Yes.** You can elect to be classified as a partnership or an association taxable as a corporation. Skip line 4 and go to line 5.

☒ **No.** You can elect to be classified as an association taxable as a corporation or to be disregarded as a separate entity. Go to line 4.

**4**   If the eligible entity has only one owner, provide the following information:

**a**   Name of owner ▶   MBNF EQUITY BUYER, LLC

**b**   Identifying number of owner ▶

**5**   If the eligible entity is owned by one or more affiliated corporations that file a consolidated return, provide the name and employer identification number of the parent corporation:

**a**   Name of parent corporation ▶

**b**   Employer identification number ▶

For Paperwork Reduction Act Notice, see instructions.          Cat. No. 22598R          Form **8832** (Rev. 12-2013)

Form 8832 (Rev. 12-2013)                                                                                             Page **2**

| **Part I** | **Election Information** (Continued) |
|---|---|

**6**   **Type of entity** (see instructions):

**a**   ☒ A domestic eligible entity electing to be classified as an association taxable as a corporation.

**b**   ☐ A domestic eligible entity electing to be classified as a partnership.

**c**   ☐ A domestic eligible entity with a single owner electing to be disregarded as a separate entity.

**d**   ☐ A foreign eligible entity electing to be classified as an association taxable as a corporation.

**e**   ☐ A foreign eligible entity electing to be classified as a partnership.

**f**   ☐ A foreign eligible entity with a single owner electing to be disregarded as a separate entity.

**7**   If the eligible entity is created or organized in a foreign jurisdiction, provide the foreign country of
organization ▶ ............................................................................................................................................................

**8**   Election is to be effective beginning (month, day, year) (see instructions)  .  .  .  .  .  .  .  .  .  .  .  .  ▶ _____
                                                                                                                SEE ATTACHMENT

**9**   Name and title of contact person whom the IRS may call for more information | **10**  Contact person's telephone number

TIM DAILEADER, AUTHORIZED REPRESENTATIVE | (646) 650-5993

### Consent Statement and Signature(s) (see instructions)

Under penalties of perjury, I (we) declare that I (we) consent to the election of the above-named entity to be classified as indicated above, and that I (we) have examined this election and consent statement, and to the best of my (our) knowledge and belief, this election and consent statement are true, correct, and complete. If I am an officer, manager, or member signing for the entity, I further declare under penalties of perjury that I am authorized to make the election on its behalf.

| Signature(s) | Date | Title |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Form **8832** (Rev. 12-2013)

**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**

**EIN** ▮▮▮▮▮▮▮

**ATTACHMENT TO FORM 8832**


Philadelphia Academic Health System, LLC, EIN ▮▮▮▮▮▮▮ ("PAHS"), and Philadelphia Academic Health Holdings, LLC, EIN ▮▮▮▮▮▮▮ ("PAHH"), are filing Forms 8832 both having an effective date of _____, with each entity electing to be classified as an association taxable as a corporation. Pursuant to Treasury Regulation section 301.7701-3(g)(3)(iii), PAHS and PAHH wish to specify that the elections shall be effective in the following order:

1. *First*, PAHH shall change its classification to be treated as an association taxable as a corporation.

2. *Second*, PAHS shall change its classification to be treated as an association taxable as a corporation.


Immediately prior to these entity classification elections, both PAHH and PAHS were disregarded as separate from MBNF Equity Buyer LLC, EIN _____.

**Exhibit 3(a)(xiv)**
**Assignment, Assumption and Novation Agreement**

Exhibit 3(a)(xiv)

## ASSIGNMENT, ASSUMPTION AND NOVATION AGREEMENT

Reference is made to that certain Promissory Note (the "Promissory Note") made by Philadelphia Academic Health Holdings, LLC, a Delaware limited liability company (the "Company" or "Assignor"), to HSREP VI Holding, LLC, a Delaware limited liability company (the "Lender"). Unless otherwise defined herein, terms defined in the Promissory Note and used herein shall have the meanings given to them in the Promissory Note.

The Assignor, the Lender and Philadelphia Academic Health System, LLC, a Delaware limited liability company (the "Assignee"), among others, are parties to that certain Memorandum of Understanding Re Global Settlement dated [____], 2022 (the "MOU"), and this Assignment, Assumption and Novation Agreement (this "Agreement") is being entered into pursuant to the MOU.

The Assignor, the Lender and the Assignee agree as follows:

1.    As of the MOU Implementation Date (as defined in the MOU), the Assignor hereby irrevocably transfers, delegates and assigns, on a novation basis,  to the Assignee without recourse to the Assignor, absolutely and unconditionally, and the Assignee hereby irrevocably accepts and assumes, on a novation basis, from the Assignor without recourse to the Assignor, absolutely and unconditionally, as its direct and primary obligation, all of Assignor's rights, interests, duties, obligations, responsibilities and liabilities in and under the Promissory Note, *provided*, *however*, that Assignee's duties, obligations, responsibilities and liabilities with respect to the Promissory Note shall be solely as set forth in Section 3(a)(xiv), Section 3(b) and Schedule 3(b) of the MOU (for the avoidance of doubt, with recourse only to proceeds of the Real Estate (as such term is defined in the MOU)) (collectively the "Assumed and Amended Obligations").  From and after the MOU Implementation Date, Assignee agrees to perform and discharge all of the Assumed and Amended Obligations, and Assignee shall be substituted for Assignor in Assignor's name, place and stead as the maker on and under the Promissory Note, so as to effect a novation of the Promissory Note and to fully release Assignor from any and all existing and further rights, interests, duties, obligations, responsibilities and liabilities under the Promissory Note and, to the extent there is any interest of Assignor in the proceeds of the Real Estate, such interest is hereby released.  From and after the date hereof, all references in the Promissory Note to Assignor as the "Company" as defined in the Promissory Note shall be deemed to be a reference to Assignee as the "Company."

2.    The Assignee (a) represents and warrants that it has the right to execute this Agreement, and this Agreement constitutes the legally valid and binding obligation of the Assignee, enforceable against the Assignee in accordance with its terms; and (b) confirms that it has received a copy of the Promissory Note.

3.    The Lender represents and warrants that: (a) it is the owner and holder of the Promissory Note; and (b) it has the right to execute this Agreement, and this Agreement is legally valid and binding against the Lender.

1

Exhibit 3(a)(xiv)

4.    The Assignor represents and warrants that it has the right to execute this Agreement, and this Agreement constitutes the legally valid and binding obligation of the Assignor, enforceable against the Assignor in accordance with its terms.

5.    Each of the Assignor, the Assignee and the Lender hereby acknowledges and agrees that on and after the MOU Implementation Date and after giving effect to this Agreement, (i) the Assumed and Amended Obligations shall be debt as to which none of the Assignor, any of its subsidiaries (other than the Assignee and any of its subsidiaries) or any other MBNF Party (a) provides credit support of any kind, or (b) is directly or indirectly liable as a guarantor or otherwise; (ii) the Pledge Agreement shall be deemed terminated without any further action by any party and shall be of no further force and effect; (iii) the Promissory Note is and will remain unsecured; (iv) the Promissory Note shall remain subject to the terms and conditions of that certain Intercreditor and Subordination Agreement dated as of January 11, 2018 between Capital One, National Association, in its capacity as administrative agent and Lender (the "Subordination Agreement"); provided, however, that Lender and Capital One, National Association hereby release Assignor from any and all of its obligations under or with respect to the Subordination Agreement and in its stead accept the Assignee as the subordinated party thereto; and (v) all payments or other distributions made on account of the Promissory Note shall be made exclusively in accordance with written direction provided to Assignee in accordance with the MOU and shall be limited solely to the share of any net proceeds of the Sale (as such term defined in the MOU) of the Real Estate received by or on behalf of the HSRE Entities (as such term is defined in the MOU) pursuant to the allocation formula as set forth in Schedule 3(b) to the MOU, and that the Assignee shall have no other obligations under or with respect to the Promissory Note.  Assignee and Lender acknowledge that Lender remains subject to the terms and conditions of the Subordination Agreement, including, without limitation by holding all amounts received in connection with the Promissory Note in trust for the benefit of the Senior Loan (as defined in the Subordination Agreement) in accordance with terms of the Senior Loan Documents (as defined in the Subordination Agreement).

6.    The effective date of this Agreement shall be as of the MOU Implementation Date.

7.    All of the terms and provisions of this Agreement will apply to, be binding in all respects upon and inure to the benefit of the parties hereto and their respective successors and assigns.  None of the provisions of this Agreement shall be varied or terminated except by written agreement of the parties hereto.  If any provisions of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby and each other term, covenant, condition, and provision shall be valid and enforceable to the fullest extent permitted by law.  This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures were upon the same instrument.

8.    There are no third party beneficiaries to this Agreement.  This Agreement is for the sole benefit of the parties hereto and their successors and assigns, and nothing herein expressed or implied shall give or be construed to give to any Person (as defined in the MOU), other than the parties hereto and such successors and assigns, any legal or equitable rights, remedy or claim hereunder.

Exhibit 3(a)(xiv)

9.    This Agreement and the rights and obligations of the Assignor, Assignee and Lender hereunder shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of Delaware, without regard to conflicts of laws principles.

*[signatures follow]*

3

Exhibit 3(a)(xiv)

IN WITNESS WHEREOF, the parties hereto have caused this Assignment, Assumption and Novation Agreement to be executed by their respective duly authorized signatories.

**ASSIGNOR:**

**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**

By:_____

Name: Joel Freedman

Title: Chief Executive Officer and President

**ASSIGNEE:**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**

By:_____

Name:

Title:

**LENDER:**

**HSREP VI HOLDING, LLC**

By:_____

Name:

Title:

ACKNOWLEDGED AND AGREED AS TO SECTION 5:

**CAPITAL ONE, NATIONAL ASSOCIATION**

By:_____

Name:

Title:

4

39970855.16

**Exhibit 3(a)(xv)**
**MBNF Limited Liability Company Interest Purchase Agreement**

Exhibit 3(a)(xv)

# LIMITED LIABILITY COMPANY INTEREST
# PURCHASE AGREEMENT

THIS LIMITED LIABILITY COMPANY INTEREST PURCHASE AGREEMENT (this "**Agreement**"), dated as of [_____], 2022 (the "**Execution Date**"), is made by and between American Academic Health System, LLC, a Delaware limited liability company (the "**Seller**"), on the one hand, and MBNF Equity Buyer LLC, a [_____] ("**Buyer**"), on the other hand (each of the Seller and Buyer, a "**Party**," and collectively, the "**Parties**").

## WITNESSETH

WHEREAS, the Seller owns one hundred percent (100%) of the issued and outstanding limited liability company interests (the "**PAHH Interests**") in, and constitutes the sole member of, Philadelphia Academic Health Holdings, LLC, a Delaware limited liability company ("**PAHH**");

WHEREAS, the Seller and Buyer are parties to that certain Memorandum of Understanding Re Global Settlement by and among PAHH, the debtors in the jointly administered and procedurally consolidated chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware entitled *In re: City Center Healthcare, LLC d/b/a Hahnemann University Hospital*, et. al., and other parties party thereto (the "**Global Settlement Agreement**"); and

WHEREAS, the Seller desires to sell, assign, transfer, convey and deliver the PAHH Interests, together with all of the Seller's rights, title and interest in, to and under the PAHH Interests, to Buyer, and Buyer desires to purchase, acquire and accept from the Seller, all of the Seller's rights, title and interest in, to and under the PAHH Interests, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants set forth herein and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    <u>Transfer of the PAHH Interests</u>.  On the terms and conditions set forth in this Agreement, the Seller hereby sells, assigns, transfers, conveys and delivers (the "**Transfer**") to Buyer and Buyer hereby purchases, acquires and accepts from the Seller, all of the Seller's right, title and interest in, to and under the PAHH Interests, free and clear of all Liens.  For purposes of this Agreement, "**Lien**" means any lien (statutory or otherwise), pledge, hypothecation, security interest, encumbrance, claim or charge of any kind whatsoever.

2.    <u>Consideration</u>.  In consideration for the Transfer of the PAHH Interests, Buyer will pay Seller one dollar ($1.00).

3.    <u>Transfer Taxes</u>.  Buyer shall be responsible for, and shall pay, any and all transfer taxes (including interest and penalties, if applicable) imposed by and payable to any applicable governmental authority arising directly from the Transfer of the PAHH Interests as contemplated

Exhibit 3(a)(xv)

herein (collectively, "**Transfer Taxes**"). Each Party shall prepare and timely file all tax returns and statements required to be filed and delivered with and to all applicable governmental authorities in respect of Transfer of the PAHH Interests as contemplated herein, including with respect to any and all Transfer Taxes.

4.   Representations and Warranties.

(a)   The Seller hereby represents and warrants to Buyer, as of the Execution Date, as follows:

(i)   PAHH is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware;

(ii)   the Seller has good title to the PAHH Interests and will transfer the same to Buyer free and clear of all Liens;

(iii)   the PAHH Interests are not certificated; and

(iv)   the PAHH Interests have been duly authorized, validly issued, and are fully-paid and non-assessable and are held beneficially and of record by the Seller, free and clear of any Liens, were offered, issued, sold and delivered in compliance with all applicable laws governing the issuance of securities and were not issued in violation of (or subject to), and are not currently subject to, any preemptive rights, rights of first refusal or offer or other similar rights.

(b)   Each Party hereby represents and warrants to the other Party, as of the Execution Date, as follows:

(i)   it has the power to execute, deliver and perform its obligations under this Agreement and all necessary action has been taken to authorize the execution, delivery and performance of the same;

(ii)   this Agreement has been duly and validly executed and delivered by such Party and, assuming due and valid execution by the other Party, this Agreement constitutes a valid and binding obligation of such Party enforceable in accordance with its terms subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditors' rights generally; and

(iii)   the execution, delivery and performance of this Agreement will not contravene any existing applicable law or regulation or authorization to which it is subject, any of its constitutive documents or any contract or agreement to which it is party.

Except for the representations and warranties expressly set forth herein, each Party disclaims all other representations or warranties, including any implied or statutory representations and warranties, such as merchantability or fitness for a given purpose.

5.   Effectiveness.   This Agreement shall become effective on the business day

Exhibit 3(a)(xv)

immediately preceding the effective date of IRS Form 8832 filed by PAHH and signed by Buyer and MBNF Investments, LLC, attached hereto as **Exhibit A**, pursuant to which PAHH will elect to be classified as an association taxable as a corporation for U.S. federal income tax purposes, as described in the Global Settlement Agreement.

6. <u>Tax Matters</u>.

(a) Seller shall provide Buyer with a duly executed IRS Form W-9 on or prior to the Execution Date.

(b) For U.S. federal and other applicable income tax purposes, (i) the Parties intend that the Transfer pursuant to this Agreement will be disregarded, and (ii) no Party shall file any income tax return or take any position for income tax purposes inconsistent with such treatment, unless otherwise required by a "determination" within the meaning of Section 1313(a) of the Internal Revenue Code of 1986, as amended (or an analogous provision of other applicable income tax law).

(c) The Parties shall cooperate fully, as and to the extent reasonably requested by the other Party, in connection with the filing of tax returns and any audit or other proceeding with respect to taxes of or in respect of PAHH and its subsidiaries, including by executing or causing to be executed any IRS Form 2848 (or any analogous or similar form for U.S. federal, state and local tax purposes) or other documents reasonably requested to enable the requesting Party to take any action reasonable necessary in connection with the Transfer or the Global Settlement Agreement.

7. <u>Successors and Assigns</u>. No Party may assign or delegate this Agreement or its rights or obligations hereunder without the prior written consent of the other Party. All of the terms and provisions of this Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns.

8. <u>Amendments and Waivers; Rights and Remedies</u>. This Agreement may not be amended except by an instrument in writing signed by each of the Parties. At any time a Party may extend the time for the performance of any of the obligations or other acts of the other Party or waive compliance with any of the agreements or conditions contained herein. Any such extension or waiver shall be valid only if set forth in an instrument in writing signed by the Party to be bound thereby. The failure of any Party to assert any of its rights under this Agreement or otherwise shall not constitute a waiver of such rights. No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by applicable law.

9. <u>Miscellaneous</u>. All costs and expenses incurred in connection with this Agreement shall be paid by the Party incurring such cost or expense. This Agreement is the result of arms-length negotiations between the Parties and has been prepared jointly by the Parties. In applying and interpreting the provisions of this Agreement, there shall be no presumption that this Agreement was prepared by any one Party or that this Agreement shall be construed in favor of or against any one Party. The section headings herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof. This Agreement may be signed in any number of counterparts, each of which shall be an

Exhibit 3(a)(xv)

original, with the same effect as if the signatures thereto and hereto were upon the same instrument. Furthermore, this Agreement may be executed by transfer of an originally signed document by facsimile, email in PDF format or other electronic copy signature, each of which will be as fully binding as an original document. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements and understandings between the Parties with respect to the subject matter of this Agreement; provided that nothing in this Agreement, in Section 1 or otherwise, is to be construed as affecting the rights or obligations of any of the parties to the Global Settlement Agreement (except for Buyer and Seller and only to the extent expressly provided for in this Agreement), it being acknowledged that this Agreement is in furtherance of the purposes of the Global Settlement Agreement.

10.    <u>Severability</u>.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms, conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in a manner materially adverse to any Party.  Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent possible.

11.    <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to any choice of law or conflicts of law provision that would cause the application of the laws of any jurisdiction other than the State of Delaware.

[Signature Page Follows.]

Exhibit 3(a)(xv)

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the Execution Date.

**AMERICAN ACADEMIC HEALTH SYSTEM, LLC**

By:_____

Name:

Title:

**MBNF EQUITY BUYER LLC**

By:_____

Name:

Title:

40072918.7

Exhibit 3(a)(xv)

## **EXHIBIT A**

**PAHH's IRS Form 8832**

[see attached]

[Exhibit A to Limited Liability Company Interest Purchase Agreement]



**The form you are looking for begins on the next page of this file.** Before viewing it, please see the important update information below.

# New Mailing Addresses

Addresses for mailing certain forms have changed since the forms were last published. The new mailing addresses are shown below.

Mailing address for **Forms 706-A, 706-GS(D), 706-GS(T), 706-NA, 706-QDT, 8612, 8725, 8831, 8842, 8892, 8924, 8928:**

**Department of the Treasury
Internal Revenue Service Center
Kansas City, MO 64999**

Mailing address for **Forms 2678, 8716, 8822-B, 8832, 8855:**

| Taxpayers in the States Below | Mail the Form to This Address |
|---|---|
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana,Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | Department of the Treasury Internal Revenue Service Center Kansas City, MO 64999 |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | Department of the Treasury Internal Revenue Service Center Ogden, UT 84201 |

This update supplements these forms' instructions. Filers should rely on this update for the changes described, which will be incorporated into the next revision of the forms' instructions.

Form **8832**
(Rev. December 2013)

Department of the Treasury
Internal Revenue Service

# Entity Classification Election

OMB No. 1545-1516

▶ **Information about Form 8832 and its instructions is at** *www.irs.gov/form8832.*

| | |
|---|---|
| Name of eligible entity making election<br>PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC | Employer identification number |

**Type or Print**

Number, street, and room or suite no. If a P.O. box, see instructions.
C/O MBNF LIQUIDATOR, LLC, 410 PARK AVENUE, SUITE 900, ATTN: TIM DAILEADER

City or town, state, and ZIP code. If a foreign address, enter city, province or state, postal code and country. Follow the country's practice for entering the postal code.
NEW YORK, NY 10022

▶ Check if: ☐ Address change  ☐ Late classification relief sought under Revenue Procedure 2009-41
☐ Relief for a late change of entity classification election sought under Revenue Procedure 2010-32

| **Part I** | **Election Information** |
|---|---|

**1** **Type of election** (see instructions):

**a** ☐ Initial classification by a newly-formed entity. Skip lines 2a and 2b and go to line 3.

**b** ☒ Change in current classification. Go to line 2a.

**2a** Has the eligible entity previously filed an entity election that had an effective date within the last 60 months?

☐ **Yes.** Go to line 2b.
☒ **No.** Skip line 2b and go to line 3.

**2b** Was the eligible entity's prior election an initial classification election by a newly formed entity that was effective on the date of formation?

☐ **Yes.** Go to line 3.
☐ **No.** Stop here. You generally are not currently eligible to make the election (see instructions).

**3** Does the eligible entity have more than one owner?

☐ **Yes.** You can elect to be classified as a partnership or an association taxable as a corporation. Skip line 4 and go to line 5.

☒ **No.** You can elect to be classified as an association taxable as a corporation or to be disregarded as a separate entity. Go to  line 4.

**4** If the eligible entity has only one owner, provide the following information:

**a** Name of owner ▶     MBNF EQUITY BUYER, LLC
**b** Identifying number of owner ▶

**5** If the eligible entity is owned by one or more affiliated corporations that file a consolidated return, provide the name and employer identification number of the parent corporation:

**a** Name of parent corporation ▶
**b** Employer identification number ▶

For Paperwork Reduction Act Notice, see instructions.     Cat. No. 22598R     Form **8832** (Rev. 12-2013)

Form 8832 (Rev. 12-2013)                                                                                                          Page **2**

| **Part I** | **Election Information** (Continued) |
|---|---|

**6**   **Type of entity** (see instructions):

**a**   ☒ A domestic eligible entity electing to be classified as an association taxable as a corporation.

**b**   ☐ A domestic eligible entity electing to be classified as a partnership.

**c**   ☐ A domestic eligible entity with a single owner electing to be disregarded as a separate entity.

**d**   ☐ A foreign eligible entity electing to be classified as an association taxable as a corporation.

**e**   ☐ A foreign eligible entity electing to be classified as a partnership.

**f**   ☐ A foreign eligible entity with a single owner electing to be disregarded as a separate entity.

**7**   If the eligible entity is created or organized in a foreign jurisdiction, provide the foreign country of
organization ▶ ------------------------------------------------------------------------------------------------------------------

**8**   Election is to be effective beginning (month, day, year) (see instructions)  .  .  .  .  .  .  .  .  .  .  .  . ▶ _____

SEE ATTACHMENT

| **9**   Name and title of contact person whom the IRS may call for more information | **10**  Contact person's telephone number |
|---|---|
| TIM DAILEADER, AUTHORIZED REPRESENTATIVE | (646) 650-5993 |

### Consent Statement and Signature(s) (see instructions)

Under penalties of perjury, I (we) declare that I (we) consent to the election of the above-named entity to be classified as indicated above, and that I (we) have examined this election and consent statement, and to the best of my (our) knowledge and belief, this election and consent statement are true, correct, and complete. If I am an officer, manager, or member signing for the entity, I further declare under penalties of perjury that I am authorized to make the election on its behalf.

| Signature(s) | Date | Title |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Form **8832** (Rev. 12-2013)

**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**

**EIN** ███████

**ATTACHMENT TO FORM 8832**

Philadelphia Academic Health System, LLC, EIN ████████ ("PAHS"), and Philadelphia Academic Health Holdings, LLC, EIN ███████ ("PAHH"), are filing Forms 8832 both having an effective date of _____, with each entity electing to be classified as an association taxable as a corporation. Pursuant to Treasury Regulation section 301.7701-3(g)(3)(iii), PAHS and PAHH wish to specify that the elections shall be effective in the following order:

1. *First*, PAHH shall change its classification to be treated as an association taxable as a corporation.

2. *Second*, PAHS shall change its classification to be treated as an association taxable as a corporation.

Immediately prior to these entity classification elections, both PAHH and PAHS were disregarded as separate from MBNF Equity Buyer LLC, EIN _____.

40348350.1

**Exhibit 3(a)(xvii)**
**PAHS Limited Liability Company Interest Purchase Agreement**

Exhibit 3(a)(xvii)

# LIMITED LIABILITY COMPANY INTEREST
# PURCHASE AGREEMENT

THIS LIMITED LIABILITY COMPANY INTEREST PURCHASE AGREEMENT (this "**Agreement**"), dated as of [_____], 2022 (the "**Execution Date**"), is made by and between Philadelphia Academic Health Holdings, LLC, a Delaware limited liability company (the "**Seller**"), on the one hand, and PAHS Equity Buyer, Inc. a Delaware corporation ("**Buyer**"), on the other hand (each of the Seller and Buyer, a "**Party**," and collectively, the "**Parties**").

## WITNESSETH

WHEREAS, the Seller owns one hundred percent (100%) of the issued and outstanding limited liability company interests (the "**PAHS Interests**") in, and constitutes the sole member of, Philadelphia Academic Health System, LLC, a Delaware limited liability company ("**PAHS**");

WHEREAS, the Seller and Buyer are parties to that certain Memorandum Of Understanding Re Global Settlement Among, *Inter Alia*, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities and CONA Parties (each such term, as therein defined) in the jointly administered and procedurally consolidated chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware entitled *In re: City Center Healthcare, LLC d/b/a Hahnemann University Hospital*, et. al., Seller, and other parties party thereto (the "**Global Settlement Agreement**"); and

WHEREAS, the Seller desires to sell, assign, transfer, convey and deliver the PAHS Interests, together with all of the Seller's rights, title and interest in, to and under the PAHS Interests, to Buyer, and Buyer desires to purchase, acquire and accept from the Seller, all of the Seller's rights, title and interest in, to and under the PAHS Interests, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants set forth herein and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. <u>Transfer of the PAHS Interests</u>. On the terms and conditions set forth in this Agreement, the Seller hereby sells, assigns, transfers, conveys and delivers (the "**Transfer**") to Buyer and Buyer hereby purchases, acquires and accepts from the Seller, all of the Seller's right, title and interest in, to and under the PAHS Interests, free and clear of all Liens. For purposes of this Agreement, "**Lien**" means any lien (statutory or otherwise), pledge, hypothecation, security interest, encumbrance, claim or charge of any kind whatsoever.

2. <u>Consideration</u>. In consideration for the Transfer of the PAHS Interests, Buyer will pay Seller one dollar ($1.00).

3. <u>Transfer Taxes</u>. Buyer shall be responsible for, and shall pay, any and all transfer taxes (including interest and penalties, if applicable) imposed by and payable to any applicable

Exhibit 3(a)(xvii)

governmental authority arising directly from the Transfer of the PAHS Interests as contemplated herein (collectively, "**Transfer Taxes**"). Each Party shall prepare and timely file all tax returns and statements required to be filed and delivered with and to all applicable governmental authorities in respect of Transfer of the PAHS Interests as contemplated herein, including with respect to any and all Transfer Taxes.

    4.    <u>Representations and Warranties</u>.

    (a)    The Seller hereby represents and warrants to Buyer, as of the Execution Date, as follows:

    (i)    PAHS is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware;

    (ii)    the Seller has good title to the PAHS Interests and will transfer the same to Buyer free and clear of all Liens;

    (iii)    the PAHS Interests are not certificated; and

    (iv)    the PAHS Interests have been duly authorized, validly issued, and are fully-paid and non-assessable and are held beneficially and of record by the Seller, free and clear of any Liens, were offered, issued, sold and delivered in compliance with all applicable laws governing the issuance of securities and were not issued in violation of (or subject to), and are not currently subject to, any preemptive rights, rights of first refusal or offer or other similar rights.

    (b)    Each Party hereby represents and warrants to the other Party, as of the Execution Date, as follows:

    (i)    it has the power to execute, deliver and perform its obligations under this Agreement and all necessary action has been taken to authorize the execution, delivery and performance of the same;

    (ii)    this Agreement has been duly and validly executed and delivered by such Party and, assuming due and valid execution by the other Party, this Agreement constitutes a valid and binding obligation of such Party enforceable in accordance with its terms subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditors' rights generally; and

    (iii)    the execution, delivery and performance of this Agreement will not contravene any existing applicable law or regulation or authorization to which it is subject, any of its constitutive documents or any contract or agreement to which it is party.

    Except for the representations and warranties expressly set forth herein, each Party disclaims all other representations or warranties, including any implied or statutory representations and warranties, such as merchantability or fitness for a given purpose.

Exhibit 3(a)(xvii)

5.    <u>Effectiveness</u>.  This Agreement shall be deemed to become effective upon the later of (1) the opening of business on the effective date of IRS Form 8832 filed by PAHS and signed by an authorized officer of PAHS, attached hereto as **Exhibit A**, electing to be classified as an association taxable as a corporation for U.S. federal income tax purposes, as described in the Global Settlement Agreement (the "**Entity Classification Election**") and (2) the close of business on the date on which the Entity Classification Election is filed and proof of such filing is delivered to Buyer (*provided*, for the avoidance of doubt, that in the case of this clause (2), the Entity Classification Election shall be executed as required pursuant to Treasury Regulations Section 301.7701-3(c)(2)).

6.    <u>Tax Matters</u>.

(a)    Seller shall provide Buyer with a duly executed IRS Form W-9 on or prior to the Execution Date.

(b)    For U.S. federal and other applicable income tax purposes, (i) the Parties intend that the Entity Classification Election, followed by the Transfer pursuant to this Agreement will be treated as a taxable sale of the assets of PAHS and its subsidiaries (including assets substantively consolidated with them pursuant to the Approval Order, as described in the Global Settlement Agreement) to a newly formed corporation in exchange for assumption of the liabilities of PAHS and its subsidiaries (including liabilities substantively consolidated with them pursuant to the Approval Order, as described in the Global Settlement Agreement) by such newly formed corporation, followed by a transfer of shares in that corporation, and (ii) no Party shall file any income tax return or take any position for income tax purposes inconsistent with such treatment, unless otherwise required by a "determination" within the meaning of Section 1313(a) of the Internal Revenue Code of 1986, as amended (or an analogous provision of other applicable income tax law).

7.    <u>Successors and Assigns</u>.  No Party may assign or delegate this Agreement or its rights or obligations hereunder without the prior written consent of the other Party.  All of the terms and provisions of this Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns.

8.    <u>Amendments and Waivers; Rights and Remedies</u>.  This Agreement may not be amended except by an instrument in writing signed by each of the Parties.  At any time a Party may extend the time for the performance of any of the obligations or other acts of the other Party or waive compliance with any of the agreements or conditions contained herein.  Any such extension or waiver shall be valid only if set forth in an instrument in writing signed by the Party to be bound thereby.  The failure of any Party to assert any of its rights under this Agreement or otherwise shall not constitute a waiver of such rights.  No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by applicable law.

9.    <u>Miscellaneous</u>.  All costs and expenses incurred in connection with this Agreement shall be paid by the Party incurring such cost or expense.  This Agreement is the result of arms-length negotiations between the Parties and has been prepared jointly by the Parties.  In applying

Exhibit 3(a)(xvii)

and interpreting the provisions of this Agreement, there shall be no presumption that this Agreement was prepared by any one Party or that this Agreement shall be construed in favor of or against any one Party. The section headings herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. Furthermore, this Agreement may be executed by transfer of an originally signed document by facsimile, email in PDF format or other electronic copy signature, each of which will be as fully binding as an original document. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements and understandings between the Parties with respect to the subject matter of this Agreement; provided that nothing in this Agreement, in Section 1 or otherwise, is to be construed as affecting the rights or obligations of any of the parties to the Global Settlement Agreement (except for Buyer and Seller and only to the extent expressly provided for in this Agreement), it being acknowledged that this Agreement is in furtherance of the purposes of the Global Settlement Agreement.

10.   Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms, conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in a manner materially adverse to any Party.  Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent possible.

11.   Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to any choice of law or conflicts of law provision that would cause the application of the laws of any jurisdiction other than the State of Delaware.

[Signature Page Follows.]

Exhibit 3(a)(xvii)

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the Execution Date.

**PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC**

By:_____
Name:
Title:

**PAHS EQUITY BUYER, INC.**

By:_____
Name:
Title:

40019231.10

Exhibit 3(a)(xvii)

## **EXHIBIT A**

## **PAHS's IRS Form 8832**

[see attached]



**The form you are looking for begins on the next page of this file.** Before viewing it, please see the important update information below.

# New Mailing Addresses

Addresses for mailing certain forms have changed since the forms were last published. The new mailing addresses are shown below.

Mailing address for **Forms 706-A, 706-GS(D), 706-GS(T), 706-NA, 706-QDT, 8612, 8725, 8831, 8842, 8892, 8924, 8928:**

**Department of the Treasury**
**Internal Revenue Service Center**
**Kansas City, MO 64999**

Mailing address for **Forms 2678, 8716, 8822-B, 8832, 8855:**

| Taxpayers in the States Below | Mail the Form to This Address |
|---|---|
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana,Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | Department of the Treasury Internal Revenue Service Center Kansas City, MO 64999 |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | Department of the Treasury Internal Revenue Service Center Ogden, UT 84201 |

This update supplements these forms' instructions. Filers should rely on this update for the changes described, which will be incorporated into the next revision of the forms' instructions.

Form **8832**

(Rev. December 2013)

Department of the Treasury
Internal Revenue Service

# Entity Classification Election

OMB No. 1545-1516

▶ Information about Form 8832 and its instructions is at *www.irs.gov/form8832*.

| **Type or Print** | Name of eligible entity making election<br>PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC | Employer identification number |
| | Number, street, and room or suite no. If a P.O. box, see instructions.<br>C/O EISNERAMPER, 111 WOOD AVENUE SOUTH | |
| | City or town, state, and ZIP code. If a foreign address, enter city, province or state, postal code and country. Follow the country's practice for entering the postal code.<br>ISELIN, NJ 08830 | |

▶ Check if:  ☐ Address change   ☐ Late classification relief sought under Revenue Procedure 2009-41
☐ Relief for a late change of entity classification election sought under Revenue Procedure 2010-32

**Part I**    **Election Information**

**1**    **Type of election** (see instructions):

**a**    ☐ Initial classification by a newly-formed entity. Skip lines 2a and 2b and go to line 3.

**b**    ☒ Change in current classification. Go to line 2a.

**2a**    Has the eligible entity previously filed an entity election that had an effective date within the last 60 months?

☐ **Yes.** Go to line 2b.
☒ **No.** Skip line 2b and go to line 3.

**2b**    Was the eligible entity's prior election an initial classification election by a newly formed entity that was effective on the date of formation?

☐ **Yes.** Go to line 3.
☐ **No.** Stop here. You generally are not currently eligible to make the election (see instructions).

**3**    Does the eligible entity have more than one owner?

☐ **Yes.** You can elect to be classified as a partnership or an association taxable as a corporation. Skip line 4 and go to line 5.

☒ **No.** You can elect to be classified as an association taxable as a corporation or to be disregarded as a separate entity. Go to line 4.

**4**    If the eligible entity has only one owner, provide the following information:

**a**    Name of owner ▶     PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC*

**b**    Identifying number of owner ▶ _____
\* PHILADELPHIA ACADEMIC HEALTH HOLDINGS, LLC IS ELECTING TO BE TREATED AS A CORPORATION EFFECTIVE
IMMEDIATELY PRIOR TO THE EFFECTIVENESS OF THIS ENTITY CLASSIFICATION ELECTION. SEE ATTACHMENT.

**5**    If the eligible entity is owned by one or more affiliated corporations that file a consolidated return, provide the name and employer identification number of the parent corporation:

**a**    Name of parent corporation ▶ _____

**b**    Employer identification number ▶ _____

For Paperwork Reduction Act Notice, see instructions.          Cat. No. 22598R          Form **8832** (Rev. 12-2013)

Form 8832 (Rev. 12-2013)                                                                                                          Page **2**

| **Part I** | **Election Information** (Continued) |
|---|---|

**6**  **Type of entity** (see instructions):

**a**  ☒ A domestic eligible entity electing to be classified as an association taxable as a corporation.

**b**  ☐ A domestic eligible entity electing to be classified as a partnership.

**c**  ☐ A domestic eligible entity with a single owner electing to be disregarded as a separate entity.

**d**  ☐ A foreign eligible entity electing to be classified as an association taxable as a corporation.

**e**  ☐ A foreign eligible entity electing to be classified as a partnership.

**f**  ☐ A foreign eligible entity with a single owner electing to be disregarded as a separate entity.

**7**  If the eligible entity is created or organized in a foreign jurisdiction, provide the foreign country of
organization ▶ _____

**8**  Election is to be effective beginning (month, day, year) (see instructions) . . . . . . . . . . . . ▶ _____

SEE ATTACHMENT

**9**  Name and title of contact person whom the IRS may call for more information  |  **10** Contact person's telephone number

ALLEN WILEN, CHIEF RESTRUCTURING OFFICER  |  (732) 243-7386

### Consent Statement and Signature(s) (see instructions)

Under penalties of perjury, I (we) declare that I (we) consent to the election of the above-named entity to be classified as indicated above, and that I (we) have examined this election and consent statement, and to the best of my (our) knowledge and belief, this election and consent statement are true, correct, and complete. If I am an officer, manager, or member signing for the entity, I further declare under penalties of perjury that I am authorized to make the election on its behalf.

| Signature(s) | Date | Title |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Form **8832** (Rev. 12-2013)

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**

**EIN** ████████

**ATTACHMENT TO FORM 8832**

Philadelphia Academic Health System, LLC, EIN ████████ ("PAHS"), and Philadelphia Academic Health Holdings, LLC, EIN ████████ ("PAHH"), are filing Forms 8832 both having an effective date of _____, with each entity electing to be classified as an association taxable as a corporation. Pursuant to Treasury Regulation section 301.7701-3(g)(3)(iii), PAHS and PAHH wish to specify that the elections shall be effective in the following order:

1. *First*, PAHH shall change its classification to be treated as an association taxable as a corporation.

2. *Second*, PAHS shall change its classification to be treated as an association taxable as a corporation.

Immediately prior to these entity classification elections, both PAHH and PAHS were disregarded as separate from MBNF Equity Buyer LLC, EIN _____.

40337960.3

# Exhibit 5
# Debtors' Resignations

Exhibit 5

## LETTER OF RESIGNATION

**[_____], 2022**

Dear Manager of each entity listed below:

      I hereby resign, effective as of the occurrence of the MOU Implementation Date (as such term is defined in Memorandum of Understanding Re Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities and CONA Parties), as a Manager and President of Philadelphia Academic Health System, LLC and as President of:

      St. Christopher's Healthcare, LLC
      Center City Healthcare, LLC
      Philadelphia Academic Medical Associates, LLC
      Physicians Clinical Network, LLC
      HPS of PA, L.L.C.
      SCHC Pediatric Associates, L.L.C.
      SCHC Pediatric Anesthesia Associates, L.L.C.
      StChris Care at Northeast Pediatrics, L.L.C.
      TPS of PA, L.L.C.
      St. Christopher's Pediatric Urgent Care Center, L.L.C.
      TPS II of PA, L.L.C.
      TPS III of PA, L.L.C.
      TPS IV of PA, L.L.C. and
      TPS V of PA, L.L.C.

      In addition, I hereby resign, effective as of the occurrence of the MOU Implementation Date, from any and all positions that I may hold (i) as a director, officer, employee, or agent (or equivalent positions) of any such entity; (ii) on any committees of the board of directors, board of managers, or equivalent governing body of any such entity; and (iii) to the extent I have not already done so, as a fiduciary or trustee of any benefit plan sponsored by any such entity.

                                  Sincerely,

                                  Joel Freedman

Exhibit 5

## LETTER OF RESIGNATION

**[_____], 2022**

Physicians Clinical Network, LLC,
in its capacity as Sole Member of
Physicians Performance Network of Philadelphia, L.L.C. ("Company")

Dear Sole Member:

I hereby resign, effective as of the occurrence of the MOU Implementation Date (as such term is defined in Memorandum of Understanding Re Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities and CONA Parties), as President of Company.

In addition, I hereby resign, effective as of the occurrence of the MOU Implementation Date, from any and all positions that I may hold (i) as a director, officer, employee, or agent (or equivalent positions) of Company; (ii) on any committees of the board of directors, board of managers, or equivalent governing body of Company; and (iii) to the extent I have not already done so, as a fiduciary or trustee of any benefit plan sponsored by Company.

Sincerely,

Joel Freedman

40008931.6

**Exhibit 9**
**Escrowed Funds Release Authorization**

Exhibit 9

[LETTERHEAD]

[ ], 2022

VIA FEDEX & FAX (215) 568-8219

Land Services USA, Inc.
1835 Market Street
Suite 420
Philadelphia, PA 19103

Re:    **Escrow Agreement Dated January 11, 2018 between Land Services USA, Inc., HSRE-PAHH I, LLC and Philadelphia Academic Health Holdings, LLC (the "Escrow Agreement")**

Ladies & Gentlemen:

HSRE-PAHH I, LLC ("HSRE") and Philadelphia Academic Health Holdings, LLC ("PAHH") write in connection with the Escrow Agreement, a copy of which is attached hereto for your reference.  All capitalized terms used in this letter and not otherwise defined have the meanings set forth in the Escrow Agreement.

By this letter, we jointly waive the conditions of Exhibit A to the Escrow Agreement and authorize and direct you to release the Fund and all accrued interest thereon (collectively, the "Earnout") to Capital One, National Association, as administrative agent ("CONA"), which is the collateral assignee and a third party beneficiary of the Escrow Agreement. [Within [X] days of receipt of this letter,] please deliver the Earnout to CONA by electronic wire transfer in accordance with the following wiring instructions:

[CONA WIRING INSTRUCTIONS]

*[The remainder of this page has been intentionally left blank; signatures appear on the following page.]*

**Exhibit 9**

Please confirm your agreement with the foregoing instructions by executing this letter as indicated below and returning it to us in .pdf format via email to _____. We thank you for your cooperation.

Sincerely,

HSRE-PAHH I, LLC

By: _____
Name:  _____
Title:  _____


PHILADELPHIA ACADEMIC
HEALTH HOLDINGS, LLC

By: _____
Name:  _____
Title:  _____


ACKNOWLEDGED AND AGREED BY:

CAPITAL ONE, N.A.


By: _____
Name: _____
Title: _____

ACCEPTED AND AGREED TO:

LAND SERVICES USA, INC.


By: _____
Name: _____
Title: _____

Cc:   Michael Gardullo (via email)
        Capital One, National Association
        michael.gardullo@capitalone.com

        Louis A. Curcio (via email)
        Reed Smith LLP
        lcurcio@reedsmith.com

40030329.3

**Exhibit 9**

Jesse Criz (via email)
DLA Piper LLP (US)
jesse.criz@dlapiper.com

**Exhibit 12**
**ASIC Bond Joint Authorization**

**Exhibit 12**

[*NTD: to be sent after the Pension Fund's return of the cancelled bond*]

[_____ ], 2022

Seth D. Rosmarin, Esq.
Westermann Sheehy Keenan Samaan & Aydelott, LLP
90 Merrick Avenue, Suite 802
East Meadow, New York 11554

VIA EMAIL SethRosmarin@westerlaw.com

**Re:** **General Indemnity Agreement dated January 9, 2018 (the "Indemnity Agreement") executed by Philadelphia Academic Health System, LLC ("PAHS"), St. Christopher's Healthcare, LLC ("STC"), Center City Healthcare, LLC ("CCH"), Philadelphia Academic Medical Associates, LLC ("PAMA" and together with PAHS, STC, and CCH, the "Debtors" and each, a "Debtor"), and Philadelphia Academic Health Holdings, LLC ("PAHH"), in respect of Bond Number 800014386 in the face amount of $5,000,000 (the "Bond") issued by Atlantic Specialty Insurance Company ("ASIC")**

Dear Mr. Rosmarin:

In furtherance of the letter from the Pension Fund for Hospital and Health Care Employees of Philadelphia and Vicinity (the "**Fund**") dated [*insert the Fund's letter date*] informing you of the Fund's release of all claims against ASIC, which is attached hereto as Exhibit A, and the return by the Fund to ASIC of the Bond that has been marked as "cancelled" with such letter, we write on behalf of PAHH and the Debtors to request that ASIC return the $1,000,000 cash collateral posted pursuant to the Indemnity Agreement, as reduced by ASIC's costs and expenses reflected in ASIC's Breakdown attached hereto as Exhibit B (or $72,299.34), or the net amount of $927,700.66 as follows:

    (i)     30% of such net amount (or $278,310.20) to PAHH to the wire instructions below:

        [*insert PAHH's wire instructions*]

    (ii)    70% of such net amount (or $649,390.46) to PAHS to the wire instructions below:

        [*insert PAHS's wire instructions*]

We ask that the cash collateral be returned in accordance with the instructions above not later than three business days after your receipt of this letter.

Furthermore, due to the cancellation of the Bond, the prorated premium paid on or about January 11, 2022 should be returned by ASIC at the same time as the cash collateral described above as follows: 50% of such prorated premium to PAHH, and the other 50% to PAHS, in each case, to their respective wire instructions above.

40030352.2

**Exhibit 12**

Please don't hesitate to reach out to PAHH's counsel Suzzanne Uhland, Esq. of Latham & Watkins LLP at (212) 906-1308 / Suzzanne.Uhland@lw.com or Debtors' counsel Jeffrey Hampton, Esq. of Saul Ewing Arnstein & Lehr LLP at (215) 972-7118 / Jeffrey.Hampton@saul.com if you have any questions.

*[The remainder of this page has been intentionally left blank;*
*signatures appear on the following page.]*

**Exhibit 12**

Please confirm your agreement with the foregoing instructions by executing this letter as indicated below and returning it to us in .pdf format via email to Suzzanne.Uhland@lw.com and Jeffrey.Hampton@saul.com.  We thank you for your cooperation.

Sincerely,

Philadelphia Academic Health System, LLC         Philadelphia Academic Medical Associates, LLC


By: _____         By: _____
Name:                                                               Name:
Title:                                                                Title:

St. Christopher's Healthcare, LLC                     Philadelphia Academic Health Holdings, LLC


By: _____         By: _____
Name:                                                               Name:
Title:                                                                Title:

Center City Healthcare, LLC


By: _____
Name:
Title:

ACCEPTED AND AGREED TO:

Atlantic Specialty Insurance Company


By: _____
Name:
Title:

Cc:  Suzanne Uhland, Esq. (via email)
      Latham & Watkins LLP
      Suzzanne.Uhland@lw.com

      Jeffrey Hampton, Esq. (via email)
      Saul Ewing Arnstein & Lehr LLP
      Jeffrey.Hampton@saul.com

Attachments:         Exhibit A – Fund's Letter
                     Exhibit B – ASIC's Cost Breakdown

40030352.2

**Exhibit 14(o)(i)**
**Form of Notice to Insurance Carriers [MBNF]**

**EXHIBIT 14(o)(i)**

**Form of Notice to Insurance Carriers[1]**

[*Insert the Date Notice is Being Given that is after the filing of the MOU Release Notice*]

[*Insert Carrier's Name and Address*]

Attention: [*Insert Adjuster's Name, if known*]

> Policy Number: [*insert*]
> Policy Period: [*insert*]
> Claim/Reference Number: [*if applicable, insert*]

We write on behalf of [*choose one*] [MBNF Investments, LLC][Paladin Healthcare Capital, LLC] (the "**Insured**") to inform you that the Insured and certain of its affiliates (collectively, "**MBNF Parties**") have reached a global settlement agreement with:

(i) Center City Healthcare, LLC, Philadelphia Academic Health System, LLC, St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, HPS of PA, L.L.C., SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., TPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., TPS IV of PA, L.L.C., and TPS V of PA, L.L.C. and each of their estates (collectively, the "**Debtors**"),

(ii) Physicians Clinical Network, LLC, and Physician Performance Network of Philadelphia, L.L.C. (collectively, the "**Debtors' Subsidiaries**"),

(iii) the Official Committee of Unsecured Creditors appointed by the Bankruptcy Court in the Chapter 11 Cases (the "**Committee**"),

(iv) Tenet Healthcare Corporation, Tenet Business Services Corporation, Tenet Healthsystem Hahnemann, L.L.C., and Tenet Healthsystem St. Christopher's Hospital For Children, L.L.C. (collectively, "**Tenet**"),

(v) Conifer Health Solutions LLC and Conifer Revenue Cycle Solutions, LLC (collectively, "**Conifer**"),

(vi) Harrison Street Real Estate, LLC, HSREP VI Holding, LLC, HSRE-PAHH I, LLC and HSRE-PAHH IA, LLC and their respective affiliates, including, without limitation, PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Feinstein MOB, LLC, PAHH Wood Street Garage, LLC, and PAHH Erie Street Garage, LLC (collectively, "**HSRE Entities**"), and

---

[1] For the sake of clarify, notices substantially in the form of this Exhibit shall be provided to all carriers set forth in items 1 through 7 on Schedule 14(o).

EXHIBIT 14(o)(i)

(vii) Capital One, N.A., Cadence Bank, Column Financial Inc., and Sector Financial Inc. (collectively, "**CONA**" and collectively with the MBNF Parties, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer and HSRE Entities, the "**Parties**").

Pursuant to such global settlement agreement, each of the Parties has agreed to a full release of claims against each of the other Parties, including all claims against any of the Debtors and the MBNF Parties and their representatives that have been noticed to you previously by any MBNF Parties or Debtors, or their agents or representatives (collectively, the "**Noticed Claims**") [*insert for Starr excess/AIG excess/Argo notices only*: except with respect to the following Noticed Claims none of which have been released by the global settlement agreement][*insert for Starr 1st excess notice only*: your claim system nos TBD reported on January 10, 2021 (Employees and Individual Third Party Claimants), FLSIL0519903 (Patel, Jeeni), FLSIL0519243 (Combs, Candese), FLSIL0519242 (Bell, Scherise), FLSIL0519455 (Saechow, Pamela), FLSIL0519375 (Thomas, Elizabeth), FLSIL0519888 (Beckal, Michelle), FLSIL0519504 (Broomer, Crystal), and FLSIL0497538 (Richards, Suzanne)] [*insert for AIG 2nd excess notice only*: your claim system nos 5546587067US (Employees and Individual Third Party Claimants), 1996067456US (Patel, Jeeni), 6258482355US (Combs, Candese), 9683912770US (Bell, Scherise), 1456445502US (Saechow, Pamela), 0567071883US (Thomas, Elizabeth), 7652582441US (Beckal, Michelle), 8284442355US (Broomer, Crystal), and 2624280228US (Richards, Suzanne)] [*insert for Argo notice only*: your claim system no 280551 (Richards, Suzanne)].

Each of the Parties has also agreed that it will not commence any suit, action, or proceeding on any of the released claims, including the Noticed Claims, and that all of the pending suits, contested matters, actions or proceedings listed in *Exhibit A* to this letter shall be dismissed with prejudice or otherwise forever discontinued.  The release language from the global settlement agreement is reproduced in *Exhibit A* to this letter along with all relevant definitions.

If you have any questions about this letter or would like to discuss, please reach out to me.

Sincerely,

[*choose one*] MBNF Investments, LLC/Paladin Healthcare Capital, LLC

By: _____

Name:

Title:

Acknowledged and agreed:

Center City Healthcare, LLC, on behalf of itself and of each other Debtor (as defined above)

By: _____

Name:

Title:

**EXHIBIT 14(o)(i)**

Committee:


By: _____
Name:
Title:

<strong>EXHIBIT 14(o)(i)</strong>

<u><strong>EXHIBIT A</strong></u>

<strong>Release and Other Excerpts From Global Settlement Agreement</strong>

**A.    Releases**
*[copy and paste Section 14 and all pertinent definitions once finalized]*

**B.    Pending suits, actions or proceedings to be dismissed with prejudice or otherwise forever discontinued**

| *Appellant(s)* | *Appellee(s)* | *Court* | *Case No.* |
|---|---|---|---|
| **MBNF Parties** | Debtors<br><br>Committee<br><br>Tenet<br><br>Conifer<br><br>HSRE Entities | United States District Court for the District of Delaware | Civil Action No. 1:21-cv-01779 |
| | | | |

| *Plaintiff(s)* | *Defendant(s)* | *Court* | *Case No.* |
|---|---|---|---|
| Debtors | MBNF Parties | Bankruptcy Court | Adv. No. 21-50991-MFW |
| Debtors | HSRE Entities/CONA | Bankruptcy Court | Adv. No. 21-50993-MFW |
| HSRE-PAHH I, LLC, *et al.*<br><br><br>PAHH | PAHH and Paladin<br><br><br><br>HSRE-PAHH IA, LLC | Court of Common Pleas, Philadelphia County – Commerce Program | Case ID 200300202 |
| PAHH Broad Street MOB, LLC, *et al.* | PAHH and Paladin | Court of Common Pleas, Philadelphia County – Commerce Program | Case ID 190804677 |
| Tenet and Conifer | Front Street Healthcare Properties, LLC, *et al.* | Superior Court of the State of Delaware | C.A. No. N19C-09-116- SKR |
| PAHH *et al.* | Tenet | Superior Court of the State of Delaware | C.A. No. N19C-04-035EMDCCLD |
| PAHH | Tenet | Court of Chancery of the State of Delaware | 2018-0684-KSJM |
| | | | |

EXHIBIT 14(o)(i)

| Movant(s) | Name of Pleading | Court | Docket No. |
|---|---|---|---|
| MBNF Parties | *The MBNF Non-Debtor Entities' Motion to Appoint a Chapter 11 Trustee* | Bankruptcy Court | D.I. 2543 |
| Broad Street Healthcare Properties, LLC, *et al.* | *Notice of Appeal* | Bankruptcy Court | D.I. 3338 |
| Tenet | *Motion of Tenet Business Services Corporation for an Order (i) Confirming that the Automatic Stay Does Not Apply, or (ii) in the Alternative, Granting Relief from the Automatic Stay* | Bankruptcy Court | D.I. 2162 |
| HSRE Entities | *Application of Master Landlords for Entry of an Order Allowing and Directing Payment of Administrative Expense Claim* | Bankruptcy Court | D.I. 1578 |

**Exhibit 14(o)(ii)**
**Form of Notice to Insurance Carriers [Debtors]**

EXHIBIT 14(o)(ii)

**EXHIBIT 14(o)(ii)**

**Form of Notice to Insurance Carriers**[2]


[*Insert the Date Notice is Being Given that is after the filing of the MOU Release Notice*]

[*Insert Carrier's Name and Address*]

Attention: [*Insert Adjuster's Name, if known*]

> Policy Number: [*insert*]
> Policy Period: [*insert*]
> Claim/Reference Number: [*if applicable, insert*]

We write on behalf of Philadelphia Academic Health System, LLC (the "**Insured**") to inform you that the Insured and all of its wholly owned subsidiaries (collectively, "**Debtors**") have reached a global settlement agreement with:

> (i) MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, and Globe Health Foundation, Inc., Joel Freedman, Stella Freedman, Svetlana Attestatova, and Kyle Schmidt (collectively, the "**MBNF Parties**"),

> (ii) the Official Committee of Unsecured Creditors appointed by the Bankruptcy Court in the Chapter 11 Cases (the "**Committee**"),

> (iii) Tenet Healthcare Corporation, Tenet Business Services Corporation, Tenet Healthsystem Hahnemann, L.L.C., and Tenet Healthsystem St. Christopher's Hospital For Children, L.L.C. (collectively, "**Tenet**"),

> (iv) Conifer Health Solutions LLC and Conifer Revenue Cycle Solutions, LLC (collectively, "**Conifer**"),

> (v) Harrison Street Real Estate, LLC, HSREP VI Holding, LLC, HSRE-PAHH I, LLC and HSRE-PAHH IA, LLC and their respective affiliates, including, without limitation, PAHH New College MOB, LLC, PAHH Bellet MOB, LLC, PAHH Broad Street MOB, LLC, PAHH Feinstein MOB, LLC, PAHH Wood Street Garage, LLC, and PAHH Erie Street Garage, LLC (collectively, "**HSRE Entities**"), and

> (vi) Capital One, N.A., Cadence Bank, Column Financial Inc., and Sector Financial Inc. (collectively, "**CONA**" and collectively with the MBNF Parties, Debtors, Committee, Tenet, Conifer and HSRE Entities, the "**Parties**").

---

[2] For the sake of clarify, notices substantially in the form of this Exhibit shall be provided to all carriers set forth in items 8 through 10 on Schedule 14(o).

**EXHIBIT 14(o)(ii)**

Pursuant to such global settlement agreement, each of the Parties has agreed to a full release of claims against each of the other Parties, including all claims against any of the Debtors and the MBNF Parties and their representatives that have been noticed to you previously by any MBNF Parties or Debtors, or their agents or representatives (collectively, the "**Noticed Claims**").

Each of the Parties has also agreed that it will not commence any suit, action, or proceeding on any of the released claims, including the Noticed Claims, and that all of the pending suits, contested matters, actions or proceedings listed in *Exhibit A* to this letter shall be dismissed with prejudice or otherwise forever discontinued.   The release language from the global settlement agreement is reproduced in *Exhibit A* to this letter along with all relevant definitions.

If you have any questions about this letter or would like to discuss, please reach out to me.

Sincerely,

Philadelphia Academic Health System, LLC, on behalf of itself and of each other Debtor (as defined above)


By: _____
Name:
Title:

Acknowledged and agreed:

MBNF Investments, LLC, on behalf of itself and of each other MBNF Party (as defined above)


By: _____
Name:
Title:

EXHIBIT 14(o)(ii)

**EXHIBIT A**

**Release and Other Excerpts From Global Settlement Agreement**

A.    **Releases**

[*copy and paste Section 14 and all pertinent definitions once finalized*]

B.    **Pending suits, actions or proceedings to be dismissed with prejudice or otherwise forever discontinued**

| Appellant(s) | Appellee(s) | Court | Case No. |
|---|---|---|---|
| **MBNF Parties** | Debtors<br><br>Committee<br><br>Tenet<br><br>Conifer<br><br>HSRE Entities | United States District Court for the District of Delaware | Civil Action No. 1:21-cv-01779 |
|  |  |  |  |

| Plaintiff(s) | Defendant(s) | Court | Case No. |
|---|---|---|---|
| Debtors | MBNF Parties | Bankruptcy Court | Adv. No. 21-50991-MFW |
| Debtors | HSRE Entities/CONA | Bankruptcy Court | Adv. No. 21-50993-MFW |
| HSRE-PAHH I, LLC, *et al.*<br><br><br>PAHH | PAHH and Paladin<br><br><br><br>HSRE-PAHH IA, LLC | Court of Common Pleas, Philadelphia County – Commerce Program | Case ID 200300202 |
| PAHH Broad Street MOB, LLC, *et al.* | PAHH and Paladin | Court of Common Pleas, Philadelphia County – Commerce Program | Case ID 190804677 |
| Tenet and Conifer | Front Street Healthcare Properties, LLC, *et al.* | Superior Court of the State of Delaware | C.A. No. N19C-09-116- SKR |
| PAHH *et al.* | Tenet | Superior Court of the State of Delaware | C.A. No. N19C-04-035EMDCCLD |
| PAHH | Tenet | Court of Chancery of the State of Delaware | 2018-0684-KSJM |
|  |  |  |  |

EXHIBIT 14(o)(ii)

| Movant(s) | Name of Pleading | Court | Docket No. |
|---|---|---|---|
| MBNF Parties | *The MBNF Non-Debtor Entities' Motion to Appoint a Chapter 11 Trustee* | Bankruptcy Court | D.I. 2543 |
| Broad Street Healthcare Properties, LLC, *et al.* | *Notice of Appeal* | Bankruptcy Court | D.I. 3338 |
| Tenet | *Motion of Tenet Business Services Corporation for an Order (i) Confirming that the Automatic Stay Does Not Apply, or (ii) in the Alternative, Granting Relief from the Automatic Stay* | Bankruptcy Court | D.I. 2162 |
| HSRE Entities | *Application of Master Landlords for Entry of an Order Allowing and Directing Payment of Administrative Expense Claim* | Bankruptcy Court | D.I. 1578 |

**<u>Exhibit B</u>**


**(Proposed Travelers Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) ) ) ) ) ) ) ) ) ) | Chapter 11 |

In re:                )    Chapter 11

CENTER CITY HEALTHCARE, LLC d/b/a   )    Case No. 19-11466 (MFW)
HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] )

               Debtors.   )    Jointly Administered

                                     )    **Related to Docket No. ____**

**ORDER APPROVING SETTLEMENT AGREEMENT AND RELEASE AMONG THE**
**DEBTORS, THE COMMITTEE, THE MBNF NON-DEBTORS AND TRAVELERS**

Upon consideration of the *Debtors' Motion For Orders: (I) Approving Memorandum of Understanding Re Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities and CONA Parties, Which Provides For, Inter Alia, Resolution of Adversary Proceedings, Withdrawal Of Claims, Allocation and Distribution of Assets From RRG and Consensual Substantive Consolidation of Certain Assets, Contracts and Liabilities of the Non-Debtor Broad Street PropCos With Debtor Center City Healthcare, LLC, and Granting Related Relief; and (II) Approving Related Settlement Agreement and Release With Travelers Casualty and Surety Company of America* (the "**Motion**"),[2] by which the Debtors request, among other things,[3] the entry of an order, pursuant to sections 105(a) and

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).

[2]   Unless the context indicates otherwise, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3]   The Debtors' request for approval of the MOU will be addressed in separate order of the Court.

1

363 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Bankruptcy Rule 9019, (a) approving the Settlement Agreement And Release among the Debtors, the Committee, the MBNF Non-Debtors and Travelers attached hereto as **Exhibit 1** (the "**Travelers Settlement**") and (b) granting such other and further relief as the Court deems just and proper; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2019; and due and adequate notice of the Motion having been given under the circumstances and it appearing that no other or further notice of the Motion is required; and it appearing that this is a core proceeding pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered the Motion, any responses thereto; and the Court having held a hearing on the Motion on August 29, 2022 at 10:30 a.m. ET (the "**Hearing**"); and the Court having considered the evidence and arguments of counsel presented at the Hearing; and upon this Court finding that the decision to enter into the Travelers Settlement is within the sound business judgment of the Debtors, and that approval of the Travelers Settlement is in the best interest of the Debtors' estates; and after due deliberation and sufficient cause appearing therefor,

      **IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      The Travelers Settlement is hereby APPROVED in all respects.

3.      The Parties to the Travelers Settlement are authorized to take all appropriate steps required to effectuate the terms of the Travelers Settlement.

4.      Within thirty (30) calendar days of (i) the provision of ACH instructions from Debtors to Travelers, (ii) Debtors' provision of all requested W-9s to Travelers, (iii) this Order becoming a Final Order, and (iv) the filing of the MOU Release Notice, whichever comes last,

Travelers shall pay the settlement amount of Two Million Nine Hundred Fifty Thousand Dollars and 00/100 cents ($2,950,000) by ACH to Debtor PAHS.

5.      Subsection (3) of Section 5 of the Travelers Settlement is hereby replaced in its entirety, as follows" "(3) the MOU Release Notice is not filed as contemplated under Section 52 of the MOU."

6.      The terms and provisions of this Order and the Travelers Settlement shall be binding upon any chapter 7 or chapter 11 trustees, successor and/or assignee of the Debtors and the respective successors and assigns of the Parties to the Travelers Settlement.

7.      Notwithstanding the applicability of any Bankruptcy Rule to the contrary, this Order shall be effective immediately upon entry.

8.      The Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation and enforcement of this Order and/or the Travelers Settlement.

40339728.3 08/07/2022

**Exhibit 1**

**Travelers Settlement Agreement**

40339728.3 08/07/2022

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between:

1)      Travelers Casualty and Surety Company of America ("Travelers"); and

2)      Center City Healthcare, LLC; Philadelphia Academic Health System, LLC; St. Christopher's Healthcare, LLC; Philadelphia Academic Medical Associates, LLC; HPS of PA, L.L.C.; SCHC Pediatric Associates, L.L.C.; St. Christopher's Pediatric Urgent Care Center, L.L.C.; SCHC Pediatric Anesthesia Associates, L.L.C.; StChris Care at Northeast Pediatrics, L.L.C.; TPS of PA, L.L.C.; TPS II of PA, L.L.C.; TPS III of PA, L.L.C.; TPS IV of PA, L.L.C.; and TPS V of PA, L.L.C. (collectively, "Debtors");

3)      the Official Committee of Unsecured Creditors in the Bankruptcy Case, as hereinafter defined (the "Committee"); and

4)      Joel Freedman; Stella Freedman; Svetlana Attestatova; Kyle Schmidt; MBNF Investments, LLC; American Academic Health System, LLC; Philadelphia Academic Health Holdings, LLC; Front Street Healthcare Properties, LLC; Front Street Healthcare Properties II, LLC; Broad Street Healthcare Properties, LLC; Broad Street Healthcare Properties II, LLC; Broad Street Healthcare Properties III, LLC; Philadelphia Academic Risk Retention Group, LLC; Paladin Healthcare Capital, LLC; Paladin Healthcare Management, LLC, and Globe Health Foundation, Inc. (collectively, the "MBNF Non-Debtors").

Travelers, the Debtors, the Committee and the MBNF Non-Debtors are referred to collectively herein as the "Parties," and each is a "Party."

WHEREAS, Travelers issued Wrap+ Policy No. 106855631 (the "Policy") to Philadelphia Academic Health Holdings, LLC as the Named Insured[1] for the claims-made Policy Period from

---

[1] Capitalized terms are defined terms in the Policy.

January 11, 2019 to January 11, 2020, with an Extended Reporting Period from January 11, 2020 to January 11, 2021;

WHEREAS, on June 30 or July 1, 2019, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), with their bankruptcy cases jointly administered at Case No. 19-11466 (MFW) (collectively, the "Bankruptcy Case");

WHEREAS, on December 14, 2020, Travelers received a notice advising that the Committee has stated that it was investigating potential claims against the MBNF Non-Debtors (the "December 2020 Notice");

WHEREAS, on January 4, 2021, counsel for Debtors sent a letter to counsel for the MBNF Non-Debtors discussing claims of the Debtors against the MBNF Non-Debtors (the "January 2021 Letter");

WHEREAS, on January 8, 2021, Travelers received a notice advising that the Debtors filed the Chapter 11 Plan of Liquidation and Disclosure Statement referring to certain potential claims against the MBNF Non-Debtors (the "January 2021 Notice" and collectively with the December 2020 Notice, the "Notice");

WHEREAS, on June 29, 2021, the Debtors filed under seal an adversary complaint (the "Complaint"), Adv. Pro. No. 21-50991 (MFW), against certain MBNF Non-Debtors, which was served on certain of the MBNF Non-Debtors on September 8, 2021 and for which others of the MBNF Non-Debtors waived service;

WHEREAS, Travelers disputed coverage for part or all of the allegations in the Complaint and reserved all of its rights, including rights for potential recoupment and potential subrogation;

WHEREAS, the Debtors and the MBNF Non-Debtors reserved their rights to oppose Travelers' disputes regarding coverage and its purported reservation of rights;

WHEREAS, as set forth below, the Parties wish to compromise, settle, and resolve any disputes, fees, costs, claims, actions, suits, demands, causes of action, damages, debts, liabilities, contracts or promises made between or among them with respect to the Policy and/or the Policy's operation in response to the Bankruptcy Case, the Notice, the January 2021 Letter, and the Complaint except for those matters specifically identified below as not subject to this Agreement's release;

NOW, THEREFORE, for and in consideration of the foregoing and of the mutual promises, covenants, releases, and agreements set forth herein, the adequacy of which consideration is hereby acknowledged, and subject to the Bankruptcy Court approval, the Parties agree as follows:

1.      **Travelers' Settlement Payment to Debtors**

Within thirty (30) calendar days of (i) complete execution of this Agreement, (ii) the provision of ACH instructions from Debtors, (iii) Debtors' provision of all requested W-9s, (iv) approval of this Agreement by the Bankruptcy Court by Final Order, and (v) the filing of the MOU Release Notice, as such term is defined in the Memorandum of Understanding among, *inter alia*, the Debtors, Committee and MBNF Non-Debtors (the "**MOU**"), whichever comes last, Travelers shall pay the settlement amount of Two Million Nine Hundred Fifty Thousand Dollars and 00/100 cents ($2,950,000) (the "Settlement Amount") by ACH to Philadelphia Academic Health System, LLC, pursuant to instructions to be provided by Debtors.  This payment is the total and final amount due in settlement of the claims released herein.  The payment is not subject to any deductibles, self-insured retentions, premium charges, or any other charges, set-offs, or reductions of any kind or recoupment from any source.  For purposes of this Agreement, a "Final Order" means an order of the Bankruptcy Court, as entered on the docket in the Bankruptcy Case, that has

- 3 -

not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reconsideration, re-argument or rehearing has expired and as to which no appeal, re-argument, petition for certiorari, reconsideration or rehearing is pending or, if an appeal, re-argument, certiorari, reconsideration or rehearing thereof has been sought, such order has been affirmed by the highest court to which the order was appealed or from which the reconsideration, re-argument or rehearing was sought, or certiorari has been denied, and the time to take any further appeal or to seek certiorari or further reconsideration, re-argument or rehearing has expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Rule 9024 of the Federal Rules of Bankruptcy Procedure may be filed with respect to such order, as long as such a motion actually has not been filed.

2.      **Debtors', Committee's and MBNF Non-Debtors' Release of Travelers**

Effective upon complete execution of this Agreement, approval of this Agreement by the Bankruptcy Court by Final Order and the Debtors' receipt of the Settlement Amount in good and available funds, each of the Debtors (on behalf of themselves and their respective estates), Committee and the MBNF Non-Debtors, on behalf of themselves and their respective parents, affiliates, subsidiaries, successors, predecessors, assigns, heirs, estates, directors, officers, employees, attorneys, insurers, servants, agents, representatives, trustees, liquidators, creditors, and any other person or entity acting on their behalf (collectively, "Related Persons and Entities"), does hereby release, remise, acquit, and forever discharge Travelers and its Related Persons and Entities from any and all loss, claims, duties, debts, benefits, fees, costs, causes of action (including without limitation any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, and breach of duty of good faith), demands, payments, obligations, liabilities, rights, judgments, awards, interest, damages (including but not limited to punitive, multiple,

- 4 -

exemplary, or extra-contractual damages), expenses, attorneys' fees, or other relief of any kind or character, whether known or unknown, asserted or unasserted, whether at law, in equity, or contractual, which they now have or ever had against Travelers or its Related Persons and Entities arising out of or related to the Policy, the Bankruptcy Case, or the events or transactions described in any of the Notice, the January 2021 Letter, and/or the Complaint, including, but not limited to, Travelers claim system nos. T2019713 (Center City Healthcare, LLC), X2100658 (Creditors Who Filed Claims in Bankruptcy), T2100659 (MBNF Non-Debtor Entities), T2109538 (Center City Healthcare, LLC), X2100902 (Center City Healthcare, LLC), T1909938 (Drexel University), T1918319 (Medline Industries Holdings, L.P.), T2002361 (Atlantic Specialty Insurance Company), T2002689 (Tenet Business Services Corporation), T2003875 (HSRE-PAHH I, LLC), X2100661 (Mid-Cap Financial), and X2100662 (CapitalOne).

The only exceptions to the foregoing release are the following:

a.      Claims for Travelers' breach of this Agreement; and

b.      Travelers claim system nos. X2100660 (Employees and Individual Third Party Claimants), T2003963 (Patel, Jeeni), T1904553 (Combs, Candese), T1906699 (Bell, Scherise), T1907798 (Saechow, Pamela), T1912749 (Thomas, Elizabeth), T1916315 (Beckal, Michelle), T1916957 (Broomer, Crystal), T2001147 (Richards, Suzanne), and T1812767 (Leone, Joelle) (collectively, the "Open EPL Matters"). The fact that the Open EPL Matters are not included in this Agreement's release shall not be deemed an admission of coverage by Travelers for any of the Open EPL Matters. Rather, the Parties reserve all of their rights under the Policy and applicable law regarding each of the Open EPL Matters.

### 3.      **Travelers' Release of Debtors, Committee and the MBNF Non-Debtors**

Effective upon complete execution of this Agreement, and approval of this Agreement by the Bankruptcy Court by Final Order, Travelers, on behalf of itself and its Related Persons and

Entities, hereby releases, remises, acquits, and forever discharges Debtors, the Debtors' estates, the Committee, the MBNF Non-Debtors, and their respective Related Persons and Entities from any and all loss, claims, duties, debts, benefits, fees, costs, causes of action (including without limitation any claims sounding in contract or tort, fraud, misrepresentation, violation of statute or regulation, breach of duty of good faith and based on contractual or equitable subrogation, any alleged conflict of interest or an ethical violation), demands, payments, obligations, liabilities, rights, judgments, awards, interest, damages (including but not limited to punitive, multiple, exemplary, or extra-contractual damages), expenses, attorneys' fees, or other relief of any kind or character, whether known or unknown, asserted or unasserted, whether at law, in equity, or contractual, which it now has or ever had against Debtors, the Debtors' estates, Committee, the MBNF Non-Debtors, or their respective Related Persons and Entities arising out of or related to the Policy, the Bankruptcy Case, or the events or transactions described in any of the Notice, the January 2021 Letter, and/or the Complaint, including, but not limited to, Travelers claim system nos. T2019713 (Center City Healthcare, LLC), X2100658 (Creditors Who Filed Claims in Bankruptcy), T2100659 (MBNF Non-Debtor Entities), T2109538 (Center City Healthcare, LLC), X2100902 (Center City Healthcare, LLC), T1909938 (Drexel University), T1918319 (Medline Industries Holdings, L.P.), T2002361 (Atlantic Specialty Insurance Company), T2002689 (Tenet Business Services Corporation), T2003875 (HSRE-PAHH I, LLC), X2100661 (Mid-Cap Financial), and X2100662 (CapitalOne). As part of this release, Travelers covenants not to assert any released claims against unnamed third parties, defined to be parties other than any insured under the Policy, any of the Debtors or the Debtors' estates, any MBNF Non-Debtors and any of their respective Related Persons and Entities, in any of their respective capacities, based on contractual or equitable rights of subrogation. Notwithstanding the foregoing, Travelers retains the right to assert contractual or equitably subrogated claims as affirmative defenses including

setoff against such unnamed third parties who assert claims against Travelers arising from the same facts and circumstances as the claims released by Debtors, the Committee, and/or the MBNF Non-Debtors in this Agreement.

The only exceptions to the foregoing release are the following:

a.    Claims for Debtors', Committee's or the MBNF Non-Debtors' breach of this Agreement; and

b.    The Open EPL Matters.  The fact that the Open EPL Matters are not included in this Agreement's release shall not be deemed an admission of a lack of coverage by Debtors, Committee or the MBNF Non-Debtors for any of the Open EPL Matters.  Rather, the Parties reserve all of their rights under the Policy and applicable law regarding each of the Open EPL Matters.

## 4.    Knowing and Voluntary Waiver Of Unknown Claims

Notwithstanding any statute or provision of the common law that provides that a release does not extend to claims that a releasor does not know or suspect to exist at the time of executing the release, the releases in this Agreement shall be deemed to constitute full releases in accordance with their terms.  The Parties shall be deemed knowingly and voluntarily to have waived, to the fullest extent permitted by law, the provisions, rights, and benefits of any federal law, the law of any state or territory, the law of any foreign jurisdiction, or common law that would in any way limit the application of the releases to known or suspected claims.  Each Party hereby acknowledges that it has been informed by its respective attorneys of, and that it is familiar with, the provisions of California Civil Code § 1542, and each Party expressly waives any and all rights and benefits conferred upon it by the provisions of California Civil Code § 1542, which provides in pertinent part:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
THAT THE CREDITOR OR RELEASING PARTY DOES NOT
KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
THE TIME OF EXECUTING THE RELEASE AND THAT, IF
KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY.

Each Party also expressly waives any and all provisions, rights, and benefits conferred by any state or territory in the United States of America, or any other nation, or by the Restatements of the Law or by any principle of common law that is similar, comparable, or equivalent to California Civil Code § 1542. Although the Parties may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the subject matter of this Agreement, the Parties have fully, finally, and forever settled and released any and all claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed upon any theory of law or equity relating to this Agreement, including, but not limited to, with respect to conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge that the inclusion of such "Unknown Claims" in this Agreement was separately bargained for and was a key element of this Agreement.

## 5.    **Termination**

This Agreement shall automatically terminate, without notice, if for any reason (1) this Agreement is not approved by the Bankruptcy Court by Final Order, (2) the MOU Implementation Date, as defined in the MOU, does not occur within the timeframe set forth in Section 23 of the MOU, as such timeframe may be extended pursuant to the MOU, or (3) the MOU Release Notice is not filed. In the event of termination, this Agreement, including, but not limited to, the releases

set forth in Paragraphs 2 and 3, shall be null and void, and the Parties shall return to their respective positions *status quo ante* as if this Agreement never existed.

6.    **Choice of Law and Venue**

This Agreement and all questions relating to its validity, interpretation, performance, and enforcement shall be governed, construed, and interpreted in accordance with the laws of the State of Delaware, notwithstanding any conflicts-of-laws doctrines to the contrary.    All judicial proceedings arising out of or relating to this Agreement shall be brought in any state or federal court of competent jurisdiction in the State of Delaware, and each Party waives any defense of *forum non conveniens* and irrevocably agrees to be bound by any judgment rendered by such court.

7.    **Agreement Not to be Construed as an Admission**

This Agreement is entered into by the Parties solely for the purpose of compromising and settling the matters in dispute.    It does not constitute, nor shall it be construed to constitute, an admission by any of the Parties of the truth or validity of any claims between or among them or of any matters relating to the Policy, the Bankruptcy Case, or the events or transactions described in any of the Notice, the January 2021 Letter, or the Complaint, and each Party expressly denies and disputes any such truth or validity.    Neither the negotiation nor existence of this Agreement, nor any of the provisions contained in this Agreement, shall be deemed a presumption, concession, or admission by Travelers or any Travelers' Related Persons and Entities of any coverage under the Policy, and it shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used in any other action or proceeding, whether civil, criminal, or administrative, or for any purpose other than executing and enforcing the terms of this Agreement.

8.    **Authority**

The Parties represent that they have the authority to enter into this Agreement, provided however, that the Debtors' authorization is subject to the Bankruptcy Court approval.  Each Party

- 9 -

represents and warrants to the other Party that the signatories to the Agreement are competent and have been duly authorized to execute the Agreement on behalf of the entities and persons identified below.

**9.      No Assignment**

The Parties warrant and represent that they have not assigned, or in any way conveyed, transferred, or encumbered, all or any portion of the claims or rights covered by this Agreement.

**10.      Non-Prejudice and Construction of Agreement**

This Agreement is intended to be, and is, a commercial accommodation among the Parties and shall not be construed as an admission of coverage under the Policy or an admission of the truth or validity of any claims asserted in the Notice, the January 2021 Letter, the Complaint or the Bankruptcy Case.  This Agreement is not intended to reflect in any way the Parties' views as to their rights and obligations with respect to matters or persons outside the scope of this Agreement (other than the Parties' Related Persons and Entities).

**11.      Integration**

This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof, and supersedes all prior discussions, agreements, and understandings, whether written or oral, between or among the Parties with respect thereto.

**12.      Binding Effect**

This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights, and benefits hereof shall be binding upon, and shall inure to the benefit of, the Parties and their respective successors and assigns.

**13.      No Modification**

No change or modification of this Agreement shall be valid unless it is in written form and signed by all of the Parties and, to the extent required, approved by the Bankruptcy Court.

### 14.    **Interpretation**

The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not for or against any party.  No Party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between and among them.  The Parties cooperated in the drafting and preparation of the Agreement.  Any ambiguity or uncertainty existing herein shall not be interpreted against any Party.  The Agreement shall not be construed against Travelers because it is an insurance company or issuer of the Policy.

### 15.    **Severability**

In the event that any provision of this Agreement shall be held to be void, voidable, or unenforceable, the remaining provisions hereof shall remain in full force and effect if the Parties so agree in writing and, to the extent required, approved by the Bankruptcy Court.

### 16.    **Advice of Counsel**

This Agreement is made and executed by each of the Parties with the advice of counsel, and no Party has been coerced or induced to execute this Agreement by any improper action of any other Party or by counsel for any Party.

### 17.    **Headings and Captions**

The headings and captions used in this Agreement are for convenience only, are not a part of this Agreement, and shall not alter or affect the interpretation of this Agreement.

### 18.    **Execution and Counterparts**

This Agreement may be executed in hard copy or by facsimile or electronically in one or more counterparts, each of which shall be deemed an original and when taken together with the other signed counterparts, shall constitute one agreement.  This Agreement shall be fully executed on the date the last Party signs the Agreement.

IN WITNESS WHEREOF, this Agreement has been duly executed, and is effective as of the date the last signature is affixed.

**Travelers Casualty and Surety Company of America**

By: _____

Title: Assistant Vice President

Date: 7/29/2022

**Center City Healthcare, LLC**

By: _____

Title: _____

Date: _____

**Philadelphia Academic Health System, LLC**

By: _____

Title: _____

Date: _____

**St. Christopher's Healthcare, LLC**

By: _____

Title: _____

Date: _____

**Philadelphia Academic Medical Associates, LLC**

By: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, this Agreement has been duly executed, and is effective as of the date the last signature is affixed.

**Travelers Casualty and Surety Company of America**

By: _____

Title: _____

Date: _____

**Center City Healthcare, LLC**

By: _____

Title: _____CRO_____

Date: _____8/1/22_____

**Philadelphia Academic Health System, LLC**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**St. Christopher's Healthcare, LLC**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**Philadelphia Academic Medical Associates, LLC**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**HPS of PA, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/1/22_____

**SCHC Pediatric Associates, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**St. Christopher's Pediatric Urgent Care Center, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**SCHC Pediatric Anesthesia Associates, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**StChris Care at Northeast Pediatrics, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**TPS of PA, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**TPS II of PA, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**TPS III of PA, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**TPS IV of PA, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**TPS V of PA, L.L.C.**

By: _____

Title: _____CRO_____

Date: _____8/7/22_____

**The Official Committee of Unsecured Creditors**

By: _____

Title: _____

Date: _____

**Joel Freedman**

_____

Date: _____

- 14 -

**TPS II of PA, L.L.C.**

By: _____

Title: _____

Date: _____

**TPS III of PA, L.L.C.**

By: _____

Title: _____

Date: _____

**TPS IV of PA, L.L.C.**

By: _____

Title: _____

Date: _____

**TPS V of PA, L.L.C.**

By: _____

Title: _____

Date: _____

**The Official Committee of Unsecured Creditors**

By: _____

Title: _____Sills Cummis_____

Date: _____8/6/2022_____

**Joel Freedman**

_____

Date: _____

**TPS II of PA, L.L.C.**

By: _____

Title: _____

Date: _____

**TPS III of PA, L.L.C.**

By: _____

Title: _____

Date: _____

**TPS IV of PA, L.L.C.**

By: _____

Title: _____

Date: _____

**TPS V of PA, L.L.C.**

By: _____

Title: _____

Date: _____

**The Official Committee of Unsecured Creditors**

By: _____

Title: _____

Date: _____

**Joel Freedman**

_____

Date: ___August 7, 2022_____

- 14 -

**Stella Freedman**

_____

Date: ___August 7, 2022_____

**Svetlana Attestatova**

_____

Date: _____

**Kyle Schmidt**

_____

Date: _____

**MBNF Investments, LLC**

By: _____

Title: _____

Date: _____

**American Academic Health System, LLC**

By: _____

Title: _____

Date: _____

**Philadelphia Academic Health Holdings, LLC**

By: _____

Title: _____

Date: _____

**Stella Freedman**

_____

Date: _____

**Svetlana Attestatova**

_____

Date: ___August 7, 2022_____

**Kyle Schmidt**

_____

Date: _____

**MBNF Investments, LLC**

By: _____

Title: _____

Date: _____

**American Academic Health System, LLC**

By: _____

Title: _____

Date: _____

**Philadelphia Academic Health Holdings, LLC**

By: _____

Title: _____

Date: _____

**Stella Freedman**

_____

Date: _____

**Svetlana Attestatova**

_____

Date: _____

**Kyle Schmidt**

_Kyle Schmidt_____

Date: ___August 7, 2022_____

**MBNF Investments, LLC**

By: _____

Title: _____

Date: _____

**American Academic Health System, LLC**

By: _____

Title: _____

Date: _____

**Philadelphia Academic Health Holdings, LLC**

By: _____

Title: _____

Date: _____

- 15 -

**Stella Freedman**

_____

Date: _____

**Svetlana Attestatova**

_____

Date: _____

**Kyle Schmidt**

_____

Date: _____

**MBNF Investments, LLC**

By: _____

Title: ___Joel Freedman, President___

Date: ___August 7, 2022___

**American Academic Health System, LLC**

By: _____

Title: ___Joel Freedman, Chief Executive Officer___

Date: ___August 7, 2022___

**Philadelphia Academic Health Holdings, LLC**

By: _____

Title: ___Joel Freedman, CEO & President___

Date: ___August 7, 2022___

**Front Street Healthcare Properties, LLC**

By: _____

Title: Joel Freedman, CEO & President

Date: August 7, 2022

**Front Street Healthcare Properties II, LLC**

By: _____

Title: Joel Freedman, CEO & President

Date: August 7, 2022

**Broad Street Healthcare Properties, LLC**

By: _____

Title: Joel Freedman, CEO & President

Date: August 7, 2022

**Broad Street Healthcare Properties II, LLC**

By: _____

Title: Joel Freedman, CEO & President

Date: August 7, 2022

**Broad Street Healthcare Properties III, LLC**

By: _____

Title: Joel Freedman, CEO & President

Date: August 7, 2022

**Philadelphia Academic Risk Retention Group, LLC**

By: _____

Title: Joel Freedman, CEO & President

Date: August 7, 2022

**Paladin Healthcare Capital, LLC**

By: _____

Title: ___Joel Freedman, Chief Executive Officer___

Date: ___August 7, 2022___

**Paladin Healthcare Management, LLC**

By: _____

Title: ___Joel Freedman, Manager___

Date: ___August 7, 2022___

**Globe Health Foundation, Inc.**

By: _____

Title: ___Joel Freedman, Chairman & Treasurer___

Date: ___August 7, 2022___