```
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                        .  Chapter 11
                                   .  Case No. 19-11466(MFW)
 4   CENTER CITY HEALTHCARE, LLC   .
     d/b/a HAHNEMANN UNIVERSITY    .
 5   HOSPITAL, et al.,             .  (Jointly Administered)
                                   .
 6                                 .  824 Market Street
              Debtors.            .  Wilmington, Delaware 19801
 7                                 .
                                   .  Monday, August 29, 2022
 8   . . . . . . . . . . . . . . . .  10:30 a.m.
     CENTER CITY HEALTHCARE, LLC   .
 9   d/b/a HAHNEMANN UNIVERSITY    .
     HOSPITAL, PHILADELPHIA ACADEMIC .
10   HEALTH SYSTEM, LLC, ST.       .
     CHRISTOPHER'S HEALTHCARE, LLC, .
11   PHILADELPHIA ACADEMIC MEDICAL .
     ASSOCIATES, LLC, HPS OF PA,   .
12   L.L.C., SCHC PEDIATRIC        .
     ASSOCIATES, L.L.C., ST.       .
13   CHRISTOPHER'S PEDIATRIC URGENT .
     CARE CENTER, L.L.C., SCHC     .
14   PEDIATRIC ANESTHESIA ASSOCIATES,.
     L.L.C., STCHRIS CARE AT       .
15   NORTHEAST PEDIATRICS, L.L.C., .
     TPS OF PA, L.L.C., TPS II OF PA,.
16   L.L.C., TPS III OF PA, L.L.C., .
     TPS IV OF PA, L.L.C. and TPS V .
17   OF PA, L.L.C.,                .
                                   .
18                Plaintiffs,      .
                                   .
19          v.                     .  Adv. Proc. No. 22-50263
                                   .   (MFW)
20   HURON CONSULTING SERVICES LLC, .
                                   .
21          Defendant.             .
     . . . . . . . . . . . . . . . .
22   HURON CONSULTING SERVICES LLC, .
                                   .
23          Third Party Plaintiff, .
                                   .
24          v.                     .
                                   .
25   PALADIN HEALTHCARE CAPITAL, LLC,.
                Third-Party Defendant. .
     . . . . . . . . . . . . . . . .
```

1                    TRANSCRIPT OF ZOOM HEARING
              BEFORE THE HONORABLE MARY F. WALRATH
2                 UNITED STATES BANKRUPTCY JUDGE

3

APPEARANCES:
4

For the Debtors:          Mark Minuti, Esquire
5                         Adam Isenberg, Esquire
                          Jeffrey Hampton, Esquire
6                         Monique DiSabatino, Esquire
                          SAUL EWING ARNSTEIN & LEHR LLP
7                         Rodney Square
                          1000 North King Street
8                         Wilmington, Delaware 19801

9   For MBNF Non-Debtor
    Entities:             Suzzanne Uhland, Esquire
10                        LATHAM & WATKINS LLP
                          1271 6th Avenue
11                        New York, New York 10020

12  For JV Entities:      Stuart Brown, Esquire
                          DLA PIPER LLP (US)
13                        1201 North Market Street
                          Suite 2100
14                        Wilmington, Delaware 19801

15  For Official Committee
    Of Unsecured Creditors: Andrew Sherman, Esquire
16                        SILLS CUMMIS & GROSS PC
                          One Riverfront Plaza
17                        Newark, New Jersey 07102

18
    (APPEARANCES CONTINUED)
19
    Electronically
20  Recorded By:          Mandy Bartkowski, ECRO

21  Transcription Service: Reliable
                          1007 N. Orange Street
22                        Wilmington, Delaware 19801
                          Telephone: (302) 654-8080
23                        E-Mail:  gmatthews@reliable-co.com

24  Proceedings recorded by electronic sound recording:
    transcript produced by transcription service.
25

1                              INDEX

2

MATTER GOING FORWARD:                                    PAGE

3
    Agenda
4   Item 8 [FILED UNDER SEAL] Debtors' Motion for Orders      5
            (I) Approving Memorandum of Understanding Re
5           Global Settlement Among, Inter Alia, Debtors,
            Debtors' Subsidiaries, Committee, Tenet, Conifer,
6           MBNF Parties, HSRE Entities and CONA Parties,
            Which Provides For, Inter Alia, Resolution of
7           Adversary Proceedings, Withdrawal of Claims,
            Allocation and Distribution of Assets from
8           RRG and Consensual Substantive Consolidation of
            Certain Assets, Contracts and Liabilities of the
9           Non-Debtor Broad Street PropCos with Debtor Center
            City Healthcare, LLC, and Granting Related Relief;
10          and (II) Approving Related Settlement Agreement and
            Release with Travelers Casualty and Surety Company
11          of America [Docket No. 4128; filed: 08/08/22]

12

13  Court's ruling                                          40

14                            EXHIBITS

15  DECLARATIONS:                                            PAGE

16  1) Declaration of Allen Wilen                            29

17  DEBTORS' EXHIBITS:

18  Exhibit 1 - Memorandum of Understanding                  30

19  Exhibit 2 - Travelers settlement agreement               30

20

21  Transcriptionist's Certificate                          42

22
                              -o0o-
23

24

25

1        (Proceedings commenced at 10:30 a.m.)

2            THE COURT:  Good morning.  This is Judge Walrath,

3   and we're here in the Center City case.

4            Mr. Minuti, I'll turn it over to you to talk about

5   where we are.

6            MR. MINUTI:  Good morning, Your Honor.  Can you

7   hear me okay?

8            THE COURT:  I can.

9            MR. MINUTI:  Thank you, Your Honor.  Your Honor,

10  Mark Minuti from Saul Ewing Arnstein & Lehr, I'm here today

11  on behalf of the debtors.  With me are my partners Jeffrey

12  Hampton, Adam Isenberg, and Monique DiSabatino.

13           Also in the virtual courtroom today are John

14  Dinome, he is the Acting Manager of the debtors; and Allen

15  Wilen, who's our CRO; he's of course with EisnerAmper.

16           We are extremely pleased to be here today, Your

17  Honor.  This is a big day for us; this has been a long time

18  coming.  This is -- we had nine items on our agenda today,

19  but we're only going forward on one motion and that is the

20  motion, Your Honor, to approve a global settlement today

21  involving a memorandum of understanding, as well as what we

22  call the Travelers settlement agreement.  That motion, Your

23  Honor, is going to settle litigation claims among the debtors

24  and the other mediation parties and contested claims filed

25  against the debtors' estates by certain of the mediation

1  parties.

2          If approved, Your Honor, that settlement is going

3  to result in significant benefit to the debtors' estates,

4  including the fact that the property, the real property that

5  is currently titled in the name of the Broad Street PropCos,

6  as we've defined them in the motion, that property is going

7  to be substantively consolidated with the Center City

8  Healthcare estate, as well as the liabilities related to that

9  property.  That property is ultimately going to be sold, Your

10  Honor, for the benefit of the debtors' creditors and certain

11  of the mediation parties.

12          Beyond the real estate, under this settlement, the

13  debtors are going to receive settlement payments in the

14  approximate amount of $6,650,000.  The settlement will result

15  in the withdrawal of contested claims filed against the

16  debtors' estates by certain of the mediation parties, having

17  collectively a face amount in the billions of dollars.

18          The settlement is going to result in the

19  satisfaction of a pension fund withdrawal liability claim of

20  over $22 million; it will end what would be protracted and

21  costly litigation.

22          The settlement is going to allow the debtors to

23  move forward with a plan process, in close consultation with

24  the committee.

25          And finally, Your Honor, the settlement

1  effectuates a corporate divorce between the debtors and the

2  MBNF parties.  After the settlement, the MBNF parties will no

3  longer have an interest in or governance relationship with

4  the debtors.

5          The settlement documented in the memorandum of

6  understanding and the Travelers settlement agreement before

7  the Court today are the product of a one-year mediation

8  process before retired Judge Kevin Carey.  I believe Judge

9  Carey is also on -- or in the virtual courtroom today.  And

10 for some aspects, Your Honor, it was before or involved

11 retired former District Court Judge Joseph Farnan.  The

12 settlement would not have been possible without the efforts

13 of both judges, we thank them tremendously, particularly

14 Judge Carey, who hung in there with us even up until the last

15 minutes before the hearing today, Your Honor.

16         The settlement involves numerous parties,

17 including, Your Honor, are divided among and referred to in

18 the motion as the Debtors' Committee, the MBNF Parties, the

19 Broad Street Lenders, the HSRE Entities, the CONA Parties,

20 Tenet, Conifer, and Travelers, Your Honor, all of whom

21 participated in mediation in good faith, all of whom agreed

22 to compromise claims and issues and made the global

23 settlement possible.

24         The primary settlement document before the Court

25 is the memorandum of understanding.  While the memorandum is

1  long and detailed, Your Honor, given the number of parties

2  and the magnitude of the contested claims being addressed,

3  and, frankly, the fact that no party had a desire or wanted

4  to leave any ambiguities regarding how the settlement would

5  be implemented, the nature of the settlement, Your Honor, in

6  my view, is relatively straightforward.  We are settling

7  litigation claims that the debtors filed against third

8  parties and we're settling claims that have been filed

9  against the debtors' estates.

10       In terms of how we would move forward today, Your

11  Honor, what I would like to do is make just a brief -- or

12  give Your Honor -- or I'd like to make a record regarding the

13  procedural background in terms of how we got here.  I will

14  then, Your Honor, briefly summarize the MOU, the Travelers

15  settlement agreement, and a little bit of the background.

16       I am pleased to tell Your Honor that there are no

17  objections remaining to the approval of the settlement, so

18  I'll be at Your Honor's discretion in terms of how much

19  detail or how little detail you want me to give, but I think

20  some, I do want to hit a couple of the highlights in the MOU

21  so that everybody understands what's being provided.

22       We do have some evidence, Your Honor, to present

23  in support of the motion, I'll do that at the appropriate

24  time, but if I may, Your Honor, let me just start with the

25  procedural background and I'm going to cover this very

1  quickly.

2         In the spring of 2022, Your Honor, the debtors and

3  the committee began to conduct an investigation into what we

4  called in the motion the ASA transaction and the reasons for

5  the debtors' financial collapse.

6         By the fall of '22 -- I'm sorry, by the fall of

7  2020, it became clear to the debtors and the committee that

8  the debtors that the debtors' estates held significant claims

9  against certain of the MBNF parties and certain of the HSRE

10  entities, each of which, Your Honor, in turn had filed

11  significant claims against the debtors' estates.

12         While the merits of these competing claims are

13  highly contested, the debtors and the committee began to

14  discuss the possibility of mediation first with the MBNF

15  parties, and then we brought in later the HSRE entities and

16  Capital One, Your Honor, who has a lien position with respect

17  to the HSRE entities' claims.

18         By orders dated February 23 and July 28th, 2021,

19  the Court approved appointing Judge Carey as the mediator

20  over these disputes.  Now, by the end of June of 2021,

21  however, the debtors were facing statute of limitations on a

22  majority of the estate claims and so, on June 29th, the

23  debtors filed comprehensive adversary proceedings against

24  both certain of the MBNF parties and the HSRE entities.

25  Those adversary proceeding numbers are 21-50991 and 21-50993.

1  Both complaints were immediately sealed and both complaints

2  were stayed while the parties moved forward with the

3  litigation -- I'm sorry, with mediation.

4        Immediately after filing those complaints, the

5  MBNF parties, had filed a motion for the appointment of a

6  Chapter 11 trustee.  That likewise was stayed and sealed

7  while the parties moved forward with the mediation.

8        The debtors, the committee, and the MBNF parties

9  entered into a standstill agreement, essentially, with

10  respect to corporate governance.  We proceeded to mediation,

11  Your Honor, leading up to the first in-person mediation

12  session August of 2021.

13        The debtors and the committee had reviewed

14  thousands of internal documents that the debtors had, we also

15  reviewed thousands and thousands of documents that were

16  produced by the MBNF parties.  The debtors, the committee,

17  and the MBNF parties all submitted to Judge Carey detailed

18  mediation statements, including exhibits and replies.

19        The first in-person mediation session occurred on

20  August 9th.  All tolled, Your Honor, there were nine in-

21  person all-day mediation sessions.  In between, otherwise,

22  there were -- there have been too many conference calls and

23  Zoom meetings to count, hundreds of supplemental

24  communications among the parties, including numerous drafts

25  of the memorandum of understanding, the exhibits and

1  schedules.

2          The mediation included, when appropriate, Your

3  Honor, the participation of Travelers, who was the debtors'

4  insurance carrier; Tenet Healthcare Corporation and its

5  affiliates, including Conifer Revenue Cycle Solutions.

6  Retired Judge Farnan, Your Honor, was actually mediating

7  separate disputes between Tenet, Conifer, and certain of the

8  MBNF parties.

9          Ultimately, the parties reached a consensus on the

10  global settlement that's before Your Honor today.  We

11  finalized and signed the MOU and the companion Travelers

12  settlement agreement on August 8th.

13          On August 8th, the debtors filed the 9019 motion

14  before Your Honor, that's Docket Number 4128.  We filed a

15  motion to seal limited portions of the memorandum of

16  understanding; that appears at Docket Number 4129.  The Court

17  last Friday approved the motion to seal by order that's

18  docketed at Docket Number 4201.

19          Pursuant to Local Rule 9018-1(d), we did file a

20  notice, included a redacted version of the 9019 motion and

21  the MOU.  The 9019 motion included a notice setting a hearing

22  date for today, August 29th, and an objection deadline of

23  August 22nd.

24          In terms of service, Your Honor -- and this is

25  relevant to the relief we're asking Your Honor -- all

1  mediation parties and Travelers received a full packet, Your

2  Honor, unredacted, of the 9019 motion.  As detailed in the

3  72-page affidavit of service that appears at Docket Number

4  4173 that was filed on August 17th, all parties on the

5  debtors' 2002 service lists who consented to email notice

6  received the entire package, including the exhibits, Your

7  Honor, to the MOU.  Of course, they received the redacted

8  version, but received all the exhibits.

9        Anybody on the 2002 list, Your Honor, that did not

10 consent to email service received the entire packet, except

11 we did not serve with the exhibits.  Your Honor saw those,

12 they're quite voluminous, but we did include in the packet a

13 slip sheet that said, if you want the exhibits, you can go to

14 Omni, our claim agent, they're posted on the website.  It

15 also gave a phone number to call if anybody wanted to receive

16 a copy of the exhibits.

17       All creditors, Your Honor, of debtor Center City

18 Healthcare who filed claims or who had scheduled claims that

19 were not marked as disputed, contingent, or un-liquidated,

20 that were not superseded by a filed claim, we served them

21 with the entire packet, but, again, not the exhibits, just

22 the slip sheet.

23       And importantly, Your Honor, finally, all known

24 creditors of non-debtors the Broad Street PropCos and

25 American Academic Health Systems were also served by mail the

1   full packet, again, with the slip sheet.

2          At the time the 9019 motion was filed, Your Honor,

3   we had agreement, but not fully signed copies from all of the

4   parties.  We actually got that the next day.  And so, on

5   August 9th, the debtors filed under notice a fully-signed

6   copy of the MOU; that appears at Docket Number 4152.

7          As I indicated, Your Honor, the deadline to object

8   to today's motion was August 27th -- I'm sorry, August 22nd.

9   We received only one objection and that was the objection of

10  BBFB LLC and IS 245 North 15th LLC.  That appears at Docket

11  Number 4184.

12          I am pleased to report, Your Honor, that we

13  resolved their objection to some language we added to the

14  proposed order approving the MOU.  I know immediately before

15  Your Honor took the bench we uploaded that order.  I don't

16  know if Your Honor has had a chance to see that yet.  What

17  I'm going to suggest, Your Honor, at some point is maybe we

18  take a break.  I think it will be more -- I can either walk

19  you through the changes, it may be more efficient if you just

20  take two minutes to read it on your own, but I'll leave that

21  up to Your Honor.

22          We also received informal comments from the United

23  States Trustee's Office.  I'm happy to inform the Court that

24  we resolved the United States Trustee's concerns, again, with

25  some language added to the proposed form of order.  They also

1  requested, Your Honor, that we put on certain evidence and we

2  will do so today in today's hearing.

3          On August 26th, the debtors filed a declaration of

4  Allen Wilen in support of the motion.  That declaration

5  appears at Docket Number 4200.  That declaration includes the

6  testimony requested by the United States Trustee's Office

7  that I mentioned just a moment ago.

8          And then just this morning, Your Honor, we updated

9  revised proposed orders for both the Travelers settlement and

10 the MOU.  They appear at Docket Number 4208 for the Travelers

11 order and 4209 for the memorandum of understanding.

12         That notice, Your Honor, includes both clean

13 versions of the order and redlines showing all changes made

14 to the order from the version that was filed with the motion

15 and served on everyone.

16         So that concludes the procedural background, Your

17 Honor.  If I could, I'm going to turn to sort of the

18 background of the MOU and then I want to discuss or at least

19 hit some high points in the MOU itself.

20         The full background, Your Honor, of how the

21 debtors came to be and how the debtors got into their

22 financial difficulty is all set forth in the motion, so I'm

23 not going to repeat that, Your Honor.  I guess where I'll

24 pick up with is what I mentioned just a few moments ago.

25 You know, ultimately, the debtors and the committee believe

1  that there were viable claims against certain of the MBNF

2  parties and certain of the HSRE entities and those adversary

3  proceedings I mentioned earlier were in fact filed.

4          Again, both of those adversary proceedings were

5  stayed and sealed, Your Honor, immediately so we could head

6  to mediation and, because they're sealed, Your Honor, I'm not

7  going to go into too much detail, but what I can say is that

8  under both of those complaints, Your Honor, the debtors

9  sought damages under various theories.  Now, with respect to

10 the MBNF complaint, because it's relevant to the settlement,

11 Your Honor, one of the things that we did seek was the

12 equitable remedy of substantive consolidation against the

13 Broad Street PropCos.

14          Now, to be clear, Your Honor, all of the

15 defendants that are named in those two lawsuits deny and

16 dispute the allegations in claims set forth therein.  All of

17 those claims are going to be settled by the MOU and the

18 Travelers settlement agreement that are before the Court

19 today.

20          As I mentioned briefly a minute ago, Your Honor,

21 the bankruptcy filings have resulted overall in about $11.5

22 billion worth of claims that (indiscernible) filed against

23 the debtors' estates.  Those claims include significant

24 claims that were asserted by the MBNF parties and the HSRE

25 entities.  Some of those are duplicates, some of those are

1  joint and several, Your Honor; however, collectively, the

2  face amount of those claims is about $10 billion.

3       Included among the claims that the MBNF parties

4  asserted, Your Honor, were pension plan-related claims that

5  were originally asserted against the debtors by the pension

6  fund and that included a claim for withdrawal liability in

7  the approximate amount of $22.6 million.  During the

8  bankruptcy case, certain of those claims were assigned to

9  certain of the MBNF parties.  Again, the settlement before

10 Your Honor today resolves all of those claims.

11      The settlement before the Court also resolves

12 disputes related to the capitalization and the wind-down of

13 Philadelphia Academic Risk Retention Group, LLC, or the RRG.

14 The RRG is a Vermont-based risk retention group, 90 of which

15 is owned by non-debtor PAHH, five percent of which is owned

16 by debtor PAHS, and five percent of which is owned by PAHS's

17 wholly-owned subsidiary debtor, Philadelphia Academic Medical

18 Associates, LLC.

19      Your Honor, certain of the claims that we brought

20 in the MBNF adversary proceeding we believe implicated the

21 debtors' directors and officers liability insurance with

22 Travelers and other carriers.  Travelers was in fact put on

23 notice of the claims.  In response, Your Honor, Travelers

24 disputed coverage for part or all of the allegations in the

25 complaint on various grounds.  They reserved all their

1  rights, including their rights for potential recoupment and

2  potential subrogation.

3          As part of the settlement, Your Honor, we are

4  providing Travelers with a release and in return, Your Honor,

5  Travelers is paying the debtors' estates $2,950,000.

6          Meanwhile, Your Honor, certain of the MBNF parties

7  on the one hand and Tenet and Conifer on the other hand had

8  asserted their own claims against each other related to the

9  ASA transaction and some agreements that float from the ASA

10 transaction, including claims that were pending in Delaware

11 State Court.

12         Likewise, certain of the MBNF parties on the one

13 hand and certain of the HSRE entities on the other hand had

14 asserted various claims against one another arising out of

15 this transaction.  Some of those claims, Your Honor, were

16 pending or brought in Pennsylvania to the State Court.

17         The MBNF parties and the HSRE entities, just to be

18 clear, Your Honor, each deny and dispute the claims asserted

19 against them in those actions.

20         As the Court may recall from prior hearings in the

21 case, the Broad Street PropCos hold legal title to valuable

22 real estate in Center City Philadelphia, including, Your

23 Honor, the two towers that used to house Hahnemann University

24 Hospital.  In order to preserve the value of that real

25 estate, the Court authorized the debtors by orders dated

1  March 31st, 2022 and April 21, 2022 to loan the Broad Street

2  PropCos up to $5.6 million to cover the operating expenses to

3  maintain the value of that real estate.

4           That real estate is allegedly further encumbered

5  by mortgages granted to Paladin and certain of the MBNF

6  parties' professionals to secure notes related to alleged

7  services provided by these entities.

8           The value of these liens and claims is disputed by

9  the debtors and others.  The Broad Street lenders, Your

10  Honor, had agreed to subordinate their mortgages on the real

11  estate and security interest in the Broad Street PropCos'

12  assets to the PAHS loan, each of the debtors -- again, Your

13  Honor, all of that is going to be resolved as part of this

14  settlement.

15           What's important to understand, Your Honor -- and

16  this is really why we needed a global settlement and why the

17  mediation really needed to include all these parties, is

18  because of each of the debtors, Tenet, the HSRE entities,

19  they all asserted rights and/or claims against the Broad

20  Street PropCos and/or their real estate.  While these rights

21  and claims are disputed by the Broad Street PropCos and the

22  MBNF parties, the Broad Street PropCos real estate really

23  represented the most significant asset, Your Honor, available

24  to satisfy these competing claims and that's why, Your Honor,

25  it was really impossible, frankly, for any one of the MBNF

1  parties to sort of do a one-off settlement with one.  We

2  needed to bring them all in, and that's why my hair maybe is

3  a little bit grayer today and that's why it took us a year to

4  get to the court through the mediation.

5          Again, so for any settlement to be successful,

6  everybody had to participate.  The good news is, Your Honor,

7  everyone did and we wound up with the memorandum of

8  understanding and the Travelers settlement agreement that's

9  before Your Honor today.

10          Your Honor, in terms of a summary of the MOU, this

11  is all set forth in the motion itself.  It's all set forth in

12  Mr. Wilen's declaration, but, if I could, I'd like to hit

13  some of the highlights.  And first, Your Honor, I want to

14  focus on sort of what the debtor is getting and what the

15  debtor is giving under this settlement since we're asking

16  Your Honor to approve the debtor entering into this

17  settlement agreement.

18          In terms of what the debtors are receiving, Your

19  Honor, under the settlement agreement, we're receiving

20  substantive consolidation of the real estate and the

21  liabilities related to the real estate of the Broad Street

22  PropCos.  The debtors are then going to -- assuming Your

23  Honor approves the settlement agreement, the debtors are

24  ultimately going to settle that real estate and the net

25  proceeds of that real estate are going to be divided among

1  the debtors' estates, the HSRE entities, and Tenet.

2         The sale process itself, Your Honor, and the

3  property itself is going to be governed by an oversight

4  committee.  That oversight committee is going to include a

5  representative of the debtors and the committee, HSRE, Tenet,

6  and CONA.  And then the proceeds, as I said, Your Honor, are

7  ultimately going to be split as set forth in Schedule 3(b) to

8  the MOU.

9         In addition, Your Honor, the debtors are receiving

10  under the settlement payment from Travelers in the amount of

11  $2,950,000, as I mentioned before.  The debtors are going to

12  receive distributions from the RRG projected to exceed

13  $2,763,000.  The debtors will receive a payment from the HSRE

14  entities of approximately $143,000 that related to some

15  dispute over some utilities.  We're going to receive

16  reimbursement of a portion of the costs of what we call the

17  Judge Carey mediation from the HSRE entities.  We're going to

18  receive approximately $700,000 of cash collateral supporting

19  a bond that was posted in connection with the pension plan.

20  We're going to receive broad releases, Your Honor, from the

21  mediation parties and Travelers.

22         We're going to receive withdrawal of billions in

23  face amount of claims against the estate that I mentioned.

24  We're going to receive the dismissal of the contested matters

25  and other matters that were listed in Section 15 of the MOU.

1          And finally, Your Honor, we're going to receive

2  the satisfaction -- or we'll get the benefit of satisfaction

3  of that tension withdrawal liability claim.

4          Now, in return, Your Honor, the debtors are paying

5  the third party escrow agent for distribution, as directed by

6  the MBNF parties, of what we call the debtors' settlement

7  payment of $1.45 million; the settlement balancing payment,

8  which is in the amount of $4,450,000 -- and that settlement

9  balancing payment, Your Honor, that essentially is going to

10 be repaid or come off the top of the sale of the real estate.

11         We're also reimbursing the MBNF parties the amount

12 it paid to renew the pension bond.  That's at most, Your

13 Honor, about $50,000.

14         We've agreed to provide a general unsecured claim

15 to the HSRE entities of $30 million.

16         We've agreed to provide a general unsecured claim

17 to Tenet in the total amount of $30 million.

18         Subject to certain conditions, Your Honor,

19 regarding what the property ultimately sells for, if it sells

20 below a certain threshold, we've agreed to provide Tenet with

21 some of the proceeds we receive from the debtors' sale of

22 what we call the HPP notes.  Those are the notes that the

23 debtor owns that we have to liquidate in the future, Your

24 Honor.  But, again, that's almost like a backstop for a

25 little bit of what I think Tenet was expecting out of this

1  deal to contribute and bring everything they brought to the

2  table, Your Honor, to make this settlement possible.

3          We are granting the other mediation parties the

4  Travelers broad releases, Your Honor, including the releases,

5  as I said, set forth in the adversary complaints, and we are

6  -- the debtor PAHS, it's assuming the HSRE PAHH note, but,

7  again, that's going to be satisfied solely from the split on

8  the real estate that's set forth in Schedule B.

9          The settlement balancing payment that the debtors

10  are making and the debtors' settlement payment, Your Honor,

11  really is aggregate settlement consideration tied to a number

12  of factors including, but not limited to, the withdrawal of

13  the MBNF claims, tax issues related to the debtors' business

14  operation, and the MBNF parties agreement and desire to walk

15  away from the real estate.

16          I can tell Your Honor that one of the motivating

17  factors for MBNF that really brought them to the table was

18  they wanted to do a settlement, Your Honor, where they could,

19  frankly, put this all behind them and go about their

20  business.  And so we used that to our advantage, we believe,

21  in the settlement, Your Honor, to negotiate and get to where

22  we are today, but that was a big piece of what we were trying

23  to accomplish here.

24          As I mentioned, Your Honor, the settlement

25  balancing payment is going to be recovered from the sale of

1  the real estate.

2        Your Honor, let me just hit a couple other

3  highlights with regard to the MOU.

4        We talked about substantive consolidation.  One of

5  the things under the MOU is, I mentioned earlier the loan

6  Your Honor authorized debtor PAHS to make to the Broad Street

7  PropCos, that loan is essentially going to become the

8  responsibility of the debtors after this is done.  The loan

9  agreement itself is going to be modified.  The whole point,

10 Your Honor, is we're going to leave -- the Broad Streets are

11 going to be left without that debt.  So that's provided for

12 in the settlement agreement.

13       To be clear, Your Honor, notwithstanding the

14 consensual substantive consolidation under the MOU, debtor

15 CCH is not becoming liable for any MBNF intercompany claims

16 or related claims among those parties.

17       Once the MOU is implemented, Your Honor, it is

18 going to be sold, as previously described and set forth in

19 Section 3(b), the sale process itself is going to be managed

20 by someone we call or titled the Sale Process Manager.  We've

21 selected a gentleman named Albert -- when I say we, I mean --

22 it's Tenet, it's HSRE, it's the debtors and the committee --

23 we've selected Albert Mezzaroba to fulfill this role.  He is

24 a former independent manager of the debtors; he's a lawyer

25 and consultant in Philadelphia.

1            If Your Honor is not familiar with Mr. Mezzaroba,

2   he is the former president and CEO of the Pennsylvania

3   Convention Center, including at the time of the expansion of

4   the Convention Center.  As Your Honor may know from downtown

5   Philadelphia, that's almost directly across the street from

6   these properties.  He's the former chief counsel to the City

7   Council of Philadelphia.  He's very familiar with these

8   properties; he's very familiar with the process for selling

9   and developing properties such as this in this area.  He has

10  a high degree of credibility in Philadelphia and among the

11  local real estate development community, Your Honor.

12            So we believe he is perfect for this process, but

13  to be clear, Your Honor, he is really going to facilitate the

14  sale process, he has no decision-making authority, that

15  authority is ultimately going to rest with the debtors,

16  subject to Schedule 3(b) and the input of the oversight

17  committee.

18            Notwithstanding the proposed substantive

19  consolidation, I want to make clear, Your Honor, that the --

20  that the Broad Street entities, the PropCos, and the RRG are

21  not becoming debtors in these cases, they're not becoming

22  debtors on their own.

23            As I did mention, Your Honor, the settlement does

24  affect -- and this goes to the walk-away I've talked about --

25  it does effect sort of a separation from the MBNF parties

1  from the debtors, and there are a number of steps set forth

2  in the MOU that accomplish this, but I do want to mention a

3  couple, Your Honor.

4  　　　　PA -- non-debtor PAHH currently sits above debtor

5  PAHS.  And so one of the things that happens under this MOU

6  is that the equity interest of debtor PAHS is going to be

7  acquired by a new entity called PAHS Equity Buyer, LLC.

8  　　　　PAHS Equity Buyer, LLC is ultimately going to be

9  owned and controlled by a lawyer named Steve Mitnick.  Mr.

10  Mitnick is a principal of a firm called SM Financial.  He is

11  a lawyer, as I mentioned a moment ago; he is based in New

12  Jersey.  He is well known to many people in the courtroom,

13  Your Honor.  He has served as a Chapter 11 trustee, a

14  receiver, a special fiscal agent, an assignee for the benefit

15  of creditors in over 300 cases; he routinely serves as a

16  fiduciary.

17  　　　　His role here, Your Honor, is a small one, but an

18  important one.  He's going to hold the equity in debtor PAHS

19  and the idea behind that, Your Honor, is that nobody wanted

20  -- well, after the settlement, we want to make sure that all

21  the parties fulfill the settlement or do the steps that are

22  necessary, and that's why this step in the process is

23  necessary, in addition to providing sort of what I'll call

24  that management or corporate divorce that we talked about.

25  　　　　The MOU does require continued cooperation on a

1  number of provisions, Your Honor.  That's set forth

2  throughout the MOU.

3  Let me talk about the plan or a plan.  The MOU

4  does provide that the debtors are going to propose a new

5  plan, Your Honor, in consultation with the committee.  That

6  plan, Your Honor, is going to incorporate the MOU.  Under the

7  MOU, we're required to use commercially reasonable efforts to

8  attain court approval of a debtor release of the MOU parties,

9  consistent with the MOU, to include an exculpation provision

10  that includes Mr. Freedman and certain of his representatives

11  in Paladin, and consensual third party releases in favor of

12  the MOU parties.

13  To be clear, Your Honor, that's our, the debtors'

14  obligation to propose that under the MOU.  The Court today is

15  not being asked to bless any of that, predetermine it, or

16  prejudge it.

17  The MOU, Your Honor, does require the use or

18  contemplate the use of a third party escrow agent to collect

19  and disburse funds, as well as collect documents and disperse

20  documents, once the MOU goes effective.  Omni Agent Solutions

21  ha agreed to serve as the third party escrow agent.

22  There are a number of pages, Your Honor, in the

23  MOU that set forth the broad releases, covenants not to sue.

24  There's a cooperation provision with respect to publicity

25  related to this, there's a non-disparagement provision.  So

1  that's all throughout the MOU.

2          There are a number of conditions, Your Honor, to

3  the MOU becoming effective; they're all set forth at

4  paragraph -- or Section 23.  I only want to highlight two,

5  Your Honor.

6          Number one, the MOU did contemplate or require

7  that the issues among the debtors, certain of the MBNF

8  parties, and Drexel needed to be resolved.  Your Honor

9  entered an order on Friday approving a settlement between the

10 debtor and Drexel.  There's a separate settlement, as I

11 understand it, between certain of the MBNF parties and

12 Drexel.  So the good news, Your Honor, is I think that that

13 condition is well on its way to being satisfied.

14         Second, Your Honor, one of the conditions is

15 regulatory approval for the RRG's entry into the MOU and for

16 the change in control of the RRG was needed.  I can report to

17 the Court that the Vermont Department of Financial

18 Regulation, which is the regulatory body governing the RRG,

19 has provided approval.

20         So as we sit here today and assuming Your Honor is

21 inclined to approve the settlement, we're unaware of any

22 reason, Your Honor, why the conditions that are set forth in

23 Section 23 will not be satisfied.

24         Give me one moment, Your Honor.

25      (Pause)

1          MR. MINUTI:  Sort of mechanically, the way the MOU

2    works is that once all of the parties -- assuming Your Honor

3    approves the MOU and the related Travelers settlement

4    agreement, once all the parties agree that the conditions

5    have been satisfied, we come together and then the debtors

6    file what we call an MOU implementation date certification.

7    That will go on the docket of the Court.

8          Once that certification is filed, the parties then

9    implement the steps, primarily those steps, which are some of

10   those steps in Section 3 of the MOU.  And then once that's

11   done and all the parties agree it's done, we then file what's

12   called our MOU release notice.  When we file that notice,

13   that's when the releases contained in the MOU become

14   effective.

15         And the reason for that, Your Honor, is it's a

16   little different here.  Normally, the releases, you know,

17   would be conditioned on receipt of payments, but because of

18   the way we're doing this we needed to take those steps, but I

19   think it makes sense and I think it's self-explanatory.

20         So, Your Honor, that completes my summary of the

21   MOU.  I didn't talk a lot about the Travelers settlement

22   agreement, Your Honor, but I think that's pretty

23   straightforward.  The committee, the MBNF parties, the

24   debtors, and Travelers are all subject to that agreement.

25   Travelers is paying the debtors' estates $2,950,000; in

1  return, there are broad releases there with some carveout for

2  some ongoing, what I'll call, unrelated claims, but that's

3  pretty self-explanatory.

4            So that was a lot, Your Honor.   Let me just pause

5  there and see if the Court has any questions before I turn to

6  evidence.

7            THE COURT:  Okay, no questions.  Let's hear your

8  evidence and then I'll let other parties --

9            MR. MINUTI:  Thank you, Your Honor.

10           Your Honor, in support of the motion, the debtors

11 would offer the testimony of Allen Wilen, the debtors' CRO.

12 In today's technology, Your Honor, I did get a text two

13 minutes ago that said Mr. Wilen's internet died, but he is on

14 the phone, participating by phone.

15           On August 26th of 2022, the debtors filed --

16           THE COURT:  Well, let me just inquire as to, Mr.

17 Wilen, are you on?

18           MR. WILEN:  I am on, Your Honor.

19           MR. MINUTI:  Oh, there we go.

20           THE COURT:  Well, we can actually see you too.

21 All right, just so you can hear the presentation of your

22 testimony by Mr. Minuti.

23           Go ahead, Mr. Minuti.

24           MR. MINUTI:  Thank you, Your Honor.

25           Your Honor, as I mentioned to Your Honor at the

1  outset, on August 26th, we did file Mr. Wilen's declaration

2  in support of the 9019; that appears at Docket Number 4200.

3  What we would propose to do, Your Honor, is move that

4  declaration into evidence, have that declaration serve as Mr.

5  Wilen's direct testimony.

6           As we just saw, Mr. Wilen is actually present and

7  can be seen in the virtual courtroom.  So he is available for

8  cross-examination and respond to any questions that the Court

9  may have.  That would be my proposal, Your Honor.

10           THE COURT:  That is fine.

11           Anybody object to entry of the declaration into

12  evidence as Mr. Wilen's direct testimony?

13      (No verbal response)

14           THE COURT:  I hear none.

15           Just for the record, Mr. Wilen, is your

16  declaration true and correct, and what you would have

17  testified to had you been called to answer those questions?

18           MR. WILEN:  Yes, it is, Your Honor.

19           THE COURT:  Okay, then it is admitted into

20  evidence.

21      (Declaration of Allen Wilen received in evidence)

22           MR. MINUTI:  Thank you, Your Honor.

23           Your Honor, next I would move the memorandum of

24  understanding and its schedules and exhibits into evidence.

25  That appears under seal at Docket Number 4128.

1          THE COURT:  Any objection?

2     (No verbal response)

3          THE COURT:  All right, it is admitted.

4     (Debtors' Exhibit 1 was received evidence)

5          MR. MINUTI:  Next, Your Honor, we would move the

6  Travelers settlement agreement into evidence.  Likewise, Your

7  Honor, that appears under seal at Docket Number 4128.

8          THE COURT:  Any objection?

9     (No verbal response)

10          THE COURT:  All right, that will be admitted.

11     (Debtors' Exhibit 2 was received in evidence)

12          MR. MINUTI:  Your Honor, that then completes the

13  debtors' evidence in support of the motion.

14          THE COURT:  All right.  Does anybody else wish to

15  be heard?  Or, I guess I should ask, does anybody wish to

16  cross-examine Mr. Wilen?

17          MR. BROWN:  Your Honor, Stuart Brown, if I may.

18          THE COURT:  You may.

19          MR. BROWN:  Your Honor, Stuart Brown, DLA Piper,

20  on behalf of the HSRE entities.

21          I am not rising, so I am speaking merely to see

22  whether the Court would inquire of Mr. Minuti a little bit

23  more in depth. I believe that the plan currently on file

24  speaks to the debtor's request that the confirmation of the

25  plan result in the substantive consolidation of all the

1  debtors.  And wondering, in light of various provisions in

2  the MOU, whether the debtors continue to intend to pursue

3  substantive consolidation of the debtors' estates under the

4  plan that they contemplate filing.

5         Thank you, Your Honor.

6         THE COURT:  Can you respond, Mr. Minuti?

7         MR. MINUTI:  I can, Your Honor.  I apologize to

8  Mr. Brown, I was going to cover this when we walked through

9  the order, but, Your Honor, I can state on the record that

10 the debtors have a plan of record that sought substantive

11 consolidation of the debtor's estates.  In consultation with

12 the committee we do expect to file a new plan.  That new

13 plan, Your Honor, will also seek substantive consolidation of

14 the debtors' estates.  We appreciate the substantive

15 consolidation of the debtors' estates or approval of that,

16 Your Honor, is going to be subject to the plan process and

17 ultimately the

18 order of the court approving or confirming that plan.

19         So hopefully that satisfies Mr. Brown.

20         THE COURT:  Okay.

21         MR. BROWN:  Thank you, Your Honor.  Thank you, Mr.

22 Minuti.

23         THE COURT:  All right.  Mr. Carney, do you wish to

24 be heard?

25         MR. JAMES CARNEY:  Yes, I'm here.

1          THE COURT:  Yes, Mr. Carney.

2          MR. JAMES CARNEY:  Yes, I'm here.

3          THE COURT:  Did you have a question?

4          MR. JAMES CARNEY:  Well, I wanted to go make

5   settlement on my eye because its bad, its gone.

6          MR. WILLIAM CARNEY:  He wants to know -- I'm his

7   nephew.  I am right here.  He wants to know are they making a

8   decision on the claim that he is trying to settle for his

9   eyes.

10          THE COURT:  I understand.  No, this is a

11   settlement among lots of other entities. It does not settle

12   any individual claim.  And let me confirm that with Mr.

13   Minuti, this does not affect the settlement with the

14   insurance companies, has no effect on the claim of people

15   like Mr. Carney, is that correct?

16          MR. MINUTI:  Your Honor, for the record Mark

17   Minuti.  That is correct.

18          THE COURT:  Okay.

19          MR. WILLIAM CARNEY:  So this claim -- so in the

20   future is it a possibility that my uncle would get a

21   settlement?

22          THE COURT:  Yes.  His claim will be -- its called

23   reconciled, it will be dealt with at a later time, either

24   settled or he will present his case for his claim, but that

25   will --

1          MR. WILLIAM CARNEY:  Okay.

2          THE COURT:  -- be individually.

3          MR. WILLIAM CARNEY:  Are you Judge Walrath?

4          THE COURT:  I am.

5          MR. WILLIAM CARNEY:  Okay.  Well, Judge, I am

6    William T. Carney, III.  I'm his nephew.  We came from

7    Philadelphia because we were not notified ahead of time that

8    we couldn't -- that you were doing it virtually, so we came

9    and we just are getting on just in time.  But in the future

10   is it a possibility that we could get some other kind of

11   correspondence sooner so we don't have to make such a long

12   trip.

13         THE COURT:  I apologize that apparently somebody

14   in the Clerk's Office mislead you.  If you will, in the

15   future, look at the agenda that is filed, the agenda that

16   explains what it is going forward, at the beginning of the

17   agenda it will state whether the hearing is live or by zoom.

18   The agenda in this case did state it was all by zoom and gave

19   you the information of how to participate by zoom.

20         MR. WILLIAM CARNEY:  I understand that and I don't

21   want to keep it going on, but we didn't get the agenda until

22   we went to the -- until we came down here and then went

23   upstairs, then they printed out the agenda 15 minutes before

24   the court hearing.

25

```
 1                THE COURT:  I apologize for that.  I will ask Mr.

 2    Minuti to communicate with you if you will send an email or

 3    call Mr. Minuti's office and advise them that you would like

 4    specific notice of the agenda.  He will assure that you get

 5    that, okay.

 6                MR. WILLIAM CARNEY:  I just had one other question

 7    I wanted to ask you real quick and then I'm going to be done.

 8    Are you related to Jack Walrath the trumpet player?

 9                THE COURT:  I am not, unfortunately.

10                MR. WILLIAM CARNEY:  Wow, okay.

11                THE COURT:  Okay.

12                MR. WILLIAM CARNEY:  Do you need something else,

13    Unc?

14                MR. JAMES CARNEY:  No.

15                MR. WILLIAM CARNEY:  Okay.  So we're good.  Thank

16    you, Judge.

17                THE COURT:  Thank you.

18                Does anybody else wish to be heard then?

19                MS. UHLAND:  Your Honor?

20                THE COURT:  Oh, I'm sorry.

21                MS. UHLAND:  I don't know whether you are ready to

22    hear, I just had a couple of statements in support of the

23    motion.

24                THE COURT:  Okay.

25
```

1    MS. UHLAND:  First, I just wanted to clarify that

2  among the claims settled in the MOU is the pending appeal

3  that the District Court by our clients.  So that is getting -

4  - that will be resolved and dismissed pursuant to the MOU

5  once we close the MOU.

6    I also wanted to extend my deepest gratitude to

7  retired Judge Carey for his incredible patience and fortitude

8  in getting us to this day.

9    THE COURT:  Thank you.

10    Does anybody else wish to be heard?

11    (No verbal response)

12    THE COURT:  Well, let me add my thanks to my

13  former colleague, Judge Carey, as well as retired Judge

14  Farnan.  I appreciate it more then all of the other parties

15  because had it not been resolved I would have had to hear all

16  of these or many of these inter-related issues and I truly

17  appreciate Judge Carey's abstinence or persistence in getting

18  the parties to the table, talking, and ultimately resolving

19  it.

20    Anybody else wish to be heard in support or

21  otherwise?

22    (No verbal response)

23    THE COURT:  I see no other hands raised.

24    Mr. Minuti, anything further from you?

25

1      MR. MINUTI:  Your Honor, what I would like to do

2  is walk Your Honor through the orders.  I can -- if there's

3  anything Your Honor hasn't read I can probably walk you

4  through very quickly what those changes are.

5      If we could start with the Travelers order that is

6  the more simple one.  The only change to the Travelers order

7  that we made this morning from that, which we filed with the

8  motion, Your Honor, was add reference to Mr. Wilen's

9  declaration; otherwise, the order remains the same.

10     With respect to the MOU order, Your Honor, let me

11 just walk you through those changes.  On page 3 we, again,

12 added reference to Mr. Wilen's declaration.

13     THE COURT:  All right.  Let me pull that up.  All

14 right. I have it.

15     MR. MINUTI:  Okay.  So if you look on page 3

16 there's reference to -- I'm reading off the redline, there is

17 reference to Mr. Wilen's declaration.

18     THE COURT:  Yes.

19     MR. MINUTI:  If you then could jump ahead to

20 Paragraph, let's see, 16 this is on page 8.  There is some

21 clarifying language added here, Your Honor.  There was, in

22 section -- excuse me, in Schedule 3(b) to the MOU this is the

23 schedule, Your Honor, that talks about the sale of the real

24 estate and the provision among the parties.

25

1            There are certain values at which the parties have

2    agreed that the property could be sold at.  They have agreed

3    among themselves -- we, obviously, did want to put that in

4    the public domain, so all this paragraph is making clear is

5    that that agreement among the parties, which was confirmed

6    among counsel emails on August 7th, is approved.

7            If you jump ahead, Your Honor, to Paragraph 21 and

8    22 these two paragraphs -- are you there, Your Honor?

9            THE COURT:  I am.

10           MR. MINUTI:  Okay.  These two paragraphs were at

11   the request of the United States Trustees Office.  I think

12   they're pretty self-explanatory.  This was just clarification

13   that the trustee's office wanted.

14           Next, Your Honor, on -- are you with me?

15           THE COURT:  I'm with you.

16           MR. MINUTI:  So Paragraph 23 was a paragraph we

17   added to resolve the objection of IS BBFB LLC and IS 245

18   North 15th LLC.  Obviously, Your Honor, the property is

19   coming over by way of substantive consolidation.  They wanted

20   to make sure -- they believe they have certain rights, Your

21   Honor, that flow with that property.  They wanted to make

22   sure that there were no prior orders entered in the case that

23   would somehow trump that and we have agreed that that is --

24   we don't believe there are any such orders, Your Honor, but

25   if there are we don't believe it trumps their rights.  All of

1  that is preserved including any defenses are preserved as

2  well.

3        If you move forward to page -- to Paragraph 24,

4  Your Honor, this was another paragraph requested by the

5  trustee's office.  I touched on this before, this was really

6  designed to make it clear that the ultimate distribution of

7  the debtors or the net proceeds of the real estate is going

8  to be subject to a plan, subject to further order of the

9  Court down the road.

10        Your Honor, Paragraph 25 and -- Paragraphs 25 and

11  26 are really clean-up of the MOU.  Now let me just walk Your

12  Honor through that.

13        Under the MOU the MDF parties have a

14  responsibility to turn over to the debtors if they receive

15  information in the future about the property, right.  And the

16  way it's drafted right now or the way it was drafted in the

17  MOU there was no time limit at any point.  So now what that

18  is going to provide, Your Honor, is two things:

19        Number one, that we don't expect them to turn over

20  anything that is privileged.  So we have made that clear,

21  number one.

22        Number two, we don't expect them to turn over any

23  internal communications.  What we were really looking for,

24  Your Honor, was third-party communications related to the

25  property.  So we just clarified that.

1          We also provided, Your Honor, in Subsection (c) of

2    this paragraph that Schedule 3(a)(7) are the liabilities that

3    are coming over as part of the substantive consolidation.

4    Again, we have clarified that that includes the Broad Street

5    PropCo's REA's and the Broad Street PropCo's unity of use

6    agreement.

7          In new Paragraph 26, Your Honor, there is a non-

8    disparagement provision in the MOU that I mentioned.  That

9    too has no sunset period.  So we added the sunset period and

10   that is five years at order entered closing the last of the

11   debtors' cases.  That has been agreed to among all the

12   parties, Your Honor.

13         Your Honor, that is it in terms of changes.  Does

14   Your Honor have any further questions of me?

15         THE COURT:  I do not.

16         MR. MINUTI:  Your Honor, I've got a 20 minute that

17   I have prepared that I'm sure Your Honor is dying to hear,

18   but I sense not.

19         All I will say, Your Honor, is I am sincerely

20   grateful to the mediators, particularly Judge Carey, in this

21   case.  I say "I," but I'm speaking for all the debtors

22   including Mr. Wilen and Mr. Dinome.  We are extremely

23   grateful.  We are also grateful to the other mediation

24   parties

25   to get us to this spot.

1        You know, I am nowhere near retirement age, Your

2   Honor, but I suspect if we litigated this I would be close to

3   retirement, if not retired by the time it was over.  So I am

4   very grateful for that.

5        We do think this is in the best interest of the

6   debtors' estates, Your Honor.  We would ask that the Court

7   approve the settlements.

8        THE COURT:  Again, anybody else wish to be heard?

9        (No verbal response)

10       THE COURT:  I think this is a terrific settlement.

11   It resolves -- in that it resolves all the issues that were

12   impeding the debtors' progress in this case including how to

13   effectuate any sale of the Broad Street properties and how to

14   resolve all the many claims by and between all of these

15   parties.

16       Again, I truly appreciate the efforts of all the

17   parties, and former Judges Carey and Farnan.  I think it's

18   terrific and I'm pleased to approve it so that we can move

19   forward.

20       MR. MINUTI:  Would Your Honor -- we appreciate

21   that, Your Honor, and thank you for your time and attention.

22       Would you like us to upload the orders?  The

23   orders that were attached to the notices we filed this

24   morning can be signed by the court and docketed or we can

25   upload them

1  separately; whatever is your pleasure.

2           THE COURT:  Let me see if they were uploaded.

3       (Pause)

4           THE COURT:  Well, I think the Travelers order has

5  been uploaded, but I'm not sure that the MOU revised order

6  has been uploaded.

7           Just for clarification why don't you file a

8  certificate of service with a clean copy of both orders.  You

9  can do two certificates of service might be the easiest way

10 to do it.

11          MR. MINUTI:  Will do, Your Honor.

12          THE COURT:  I will sign them as soon as they are

13 uploaded.

14          MR. MINUTI:  Your Honor, again, we appreciate the

15 Court's time this morning.  That completes our agenda.  We

16 thank the Court.

17          THE COURT:  Again, thank you to all the parties

18 and we can stand adjourned.

19      (A chorus of "Thank you, Your Honor")

20      (Proceedings concluded at 11:19 a.m.)

21

22

23

24

25

1                           CERTIFICATION

2               I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9    /s/ Tracey Williams                     August 31, 2022

10   Tracey Williams, CET-914

11   Certified Court Transcriptionist

12   For Reliable

13

14

15

16

17

18

19

20

21

22

23

24

25