Exhibit 3(a)(vi)

**ACKNOWLEDGED AND AGREED:**

**CENTER CITY HEALTHCARE,**
**LLC,** a Delaware limited liability
company


By:_____
Name:
Title:

STATE OF _____     :
                            : SS
COUNTY OF _____     :

        On this, the _____ day of _____ 2022, before me a Notary Public in and for the State and County aforesaid, personally appeared _____, who acknowledged himself/herself to be the _____ of CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company, and that as such party, being authorized to do so, he/she executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself/herself as such _____ on behalf of the company.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.


                             _____
                             Notary Public
                             My Commission Expires: _____

Exhibit 3(a)(vi)

Prepared by:

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

Property Addresses:

200-214 N. Broad Street
201-219 N. 15th Street (Parcel E)
Philadelphia, PA

Tax Parcel Nos.:
885467862
772028496

## LIMITED POWER OF ATTORNEY

THIS LIMITED POWER OF ATTORNEY is dated the ___ day of _____, 2022 and is effective as of the ___ day of _____, 2022.

NOTICE IS HEREBY GIVEN THAT BROAD STREET HEALTHCARE PROPERTIES III, LLC, a Delaware limited liability company (the "Company"), does hereby appoint CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company (the "Agent"), as true and lawful attorney-in-fact for the Company to act for the Company in the Company's name for the following limited purposes:

To do and perform any act, deed, matter or thing relating to, in connection with or occasioned by the sale, lease, disposition, management, development, maintenance or operation of the property or properties listed in the heading above (collectively or individually, in whole or in part, the "Property"), as completely as the Company might itself do.

Without limiting the generality of the foregoing, the Agent may do any of the following:

1. dispose of the Property or any interest therein, including, but not limited to the power to sell at public or private sale for cash or credit or partly for each;

2. exchange, mortgage, encumber or lease the Property for any period of time;

3. give or acquire options for sales, purchases, exchanges or leases of the Property;

4. manage, repair, improve, maintain, restore, alter, build, protect or insure the Property;

Exhibit 3(a)(vi)

5.  amend, modify, terminate, administer and enforce leases of the Property;

6.  demolish structures or develop the Property or any interest in the Property;

7.  collect and distribute rent, sale proceeds, earnings and insurance and condemnation proceeds from the Property;

8.  pay, contest, protest and compromise the Property's real estate taxes and assessments;

9.  release in whole or in part, assign the whole or a part of, satisfy in whole or in part and enforce any mortgage, encumbrance, lien or other claim to the Property;

10. grant easements, dedicate the Property, partition and subdivide the Property and file plans, applications or other documents in connection therewith; and

11. make, execute and deliver any deeds, leases, licenses, contracts, agreements, writings, forms, applications, documents, statements, affidavits, and instruments for the Property, and do and perform any act, deed, matter or thing for the Property that may be necessary or appropriate on such terms and conditions, and under such covenants, as the Agent shall deem proper in connection with the exercise of the any of the foregoing powers, as fully as the Company could do.

This Limited Power of Attorney is IRREVOCABLE and coupled with an interest in and to the Property.

The Company hereby ratifies and confirms all that the Agent shall lawfully do or cause to be done by virtue of this Limited Power of Attorney that is within the scope of the powers, rights and/or privileges granted pursuant to this Limited Power of Attorney.

Signature on following page.

Exhibit 3(a)(vi)

**IN WITNESS WHEREOF**, this Limited Power of Attorney has been duly executed by the Company.

**BROAD STREET HEALTHCARE PROPERTIES III, LLC,** a Delaware limited liability company

By:_____
Name: Joel Freedman
Title:  Chief Executive Officer and
President

STATE OF _____     )
                             ) SS:
COUNTY OF_____     )

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that Joel Freedman, the Chief Executive Officer and President of Broad Street Healthcare Properties III, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument  as  such Chief Executive Officer and President, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said Chief Executive Officer and President, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____          _____
                                            Notary Public

Exhibit 3(a)(vi)

**ACKNOWLEDGED AND AGREED:**

**CENTER CITY HEALTHCARE, LLC,** a Delaware limited liability company


By:_____
Name:
Title:

STATE OF _____         :
                                 : SS
COUNTY OF _____          :

      On this, the ____ day of _____ 2022, before me a Notary Public in and for the State and County aforesaid, personally appeared _____, who acknowledged himself/herself to be the _____ of CENTER CITY HEALTHCARE, LLC, a Delaware limited liability company, and that as such party, being authorized to do so, he/she executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself/herself as such _____ on behalf of the company.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.


                          _____
                          Notary Public
                          My Commission Expires: _____

**Exhibit 3(a)(viii)(A)**
**Assignment, Assumption and Novation Agreement**

*Exhibit 3(a)(viii)(A)*

## ASSIGNMENT, ASSUMPTION AND NOVATION AGREEMENT

Reference is made to the Secured Promissory Note dated March 31, 2022 (the "Promissory Note") made by Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC, all of which are Delaware limited liability companies (collectively, the "Assignor" or the "Broad Street PropCos"), and Philadelphia Academic Health System, LLC, a Delaware limited liability company (the "Lender"). Unless otherwise defined herein, terms defined in the Promissory Note and used herein shall have the meanings given to them in the Promissory Note.

The Assignor, the Lender and Center City Healthcare, LLC, a Delaware limited liability company (the "Assignee"), are parties to that certain Memorandum of Understanding Re Global Settlement dated [____], 2022 (the "MOU"), and this Assignment, Assumption and Novation Agreement (this "Agreement") is being entered into pursuant to the MOU.

The Assignor, the Lender and the Assignee agree as follows:

1.    As of the MOU Implementation Date (as defined in the MOU), the Assignor hereby irrevocably, absolutely and unconditionally transfers, delegates and assigns, on a novation basis, to the Assignee, without recourse to the Assignor, all of Assignor's rights, duties, obligations, responsibilities and liabilities, whether joint or several (collectively the "Assumed Obligations"), in and under (a) the Promissory Note and (b) each of the Open-End Mortgages and Security Agreements dated as of March 30, 2022 and effective as of March 31, 2022 from each of the Broad Street PropCos to the Lender, each as amended by that certain Mortgage Modification Agreement made as of [_____], 2022[1] and effective as of the Effective Date as defined therein (each, a "Mortgage" and collectively, the "Mortgages").  From and after the MOU Implementation Date, Assignee hereby irrevocably, absolutely and unconditionally assumes and agrees to perform and discharge all of the Assumed Obligations, and Assignee shall be substituted for Assignor in Assignor's name, place and stead as the maker on and under the Promissory Note, so as to effect a novation of the Promissory Note and to fully release Assignor from any and all existing and further rights, interests, duties, obligations, responsibilities and liabilities under the Promissory Note.

2.    The Assignee (a) represents and warrants that it has the right to execute this Agreement, and this Agreement constitutes the legally valid and binding obligation of the Assignee, enforceable against the Assignee in accordance with its terms; and (b) confirms that it has received a copy of the Promissory Note and each Mortgage.

3.    The Lender represents and warrants that: (a) it is the owner and holder of the Promissory Note and each Mortgage; (b) it has the right to execute this Agreement, and this Agreement constitutes the legally valid and binding obligation of the Lender, enforceable against the Lender in accordance with its terms; (c) none of the Promissory Note nor any of the Mortgages has been amended or modified prior to the MOU Implementation Date; and (d) no act or omission on the part of Assignor has occurred, which would constitute an Event of Default or that, with notice or lapse of time or both, would constitute an Event of Default.

---

[1] NTD: this assignment only has the effective date and not any other date.

*Exhibit 3(a)(viii)(A)*

4.      The Assignor represents and warrants that it has the right to execute this Agreement, and this Agreement constitutes the legally valid and binding obligation of the Assignor, enforceable against the Assignor in accordance with its terms.

5.      Each of the Assignor, the Assignee and the Lender hereby acknowledges and agrees that after giving effect to this Agreement, (i) the Assumed Obligations shall be debt as to which none of the Assignor or any other MBNF Party (a) provides credit support of any kind, or (b) is directly or indirectly liable as a guarantor or otherwise; and (ii) the Second Amended and Restated Lien Subordination Agreement dated as of March 30, 2022 and effective as of March 31, 2022 by and among Lender, Paladin Healthcare Capital, LLC, as agent, and Front Street Healthcare Properties, LLC, and the Guaranty Agreement by Philadelphia Academic Health Holdings, LLC dated March 31, 2022 to and in favor of the Lender, shall be deemed terminated without any further action by any party and shall be of no further force and effect; *provided*, *however*, that notwithstanding anything to the contrary contained herein, the Assumed Obligations will continue to be secured by the Mortgages and the UCC Financing Statements from each of the Broad Street PropCos to the Lender, each of which shall be amended on the MOU Implementation Date pursuant to the Amended PAHS Loan Documents (as defined in the MOU) to provide, among other things, that none of the obligations and liabilities thereunder shall be recourse to any of the Broad Street PropCos.

6.      The effective date of this Agreement shall be the MOU Implementation Date.

7.      From and after the MOU Implementation Date, (i) the Assignee shall be deemed the maker of the Promissory Note and have the rights and obligations of a borrower under the Promissory Note and shall be bound by the provisions thereof, and shall perform the Assumed Obligations and (ii) the Assignor shall relinquish its rights and be released from its obligations under the Promissory Note and each Mortgage, subject, however, to the continuing effectiveness of each Mortgage and the UCC Financing Statements from each of the Broad Street PropCos to the Lender, and each of the Mortgages shall be amended on the MOU Implementation Date pursuant to the Amended PAHS Loan Documents to provide, among other things, that none of the obligations and liabilities thereunder shall be recourse to any of the Broad Street PropCos.  The Lender acknowledges and agrees that from and after the MOU Implementation Date its recourse under the Promissory Note, each Mortgage and each such UCC financing statement shall be limited solely to the Real Estate (as defined in the MOU).

8.      All of the terms and provisions of this Agreement will apply to, be binding in all respects upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns.  None of the provisions of this Agreement shall be varied or terminated except by written agreement of the parties hereto.  If any provisions of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby and each other term, covenant, condition, and provision shall be valid and enforceable to the fullest extent permitted by law.  This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures were upon the same instrument.

9.      This Agreement is for the sole benefit of the parties hereto and their successors and assigns, and nothing herein expressed or implied shall give or be construed to give to any Person,

*Exhibit 3(a)(viii)(A)*

other than the parties hereto and such successors and assigns, any legal or equitable rights, remedy or claim hereunder.

10.   This Agreement and the rights and obligations of the Assignor, Assignee and Lender hereunder shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania, without regard to conflicts of laws principles.

*[signatures follow]*

Exhibit 3(a)(viii)(A)

IN WITNESS WHEREOF, the parties hereto have caused this Assignment, Assumption and Novation Agreement to be executed by their respective duly authorized signatories.

**ASSIGNOR:**

**BROAD STREET HEALTHCARE PROPERTIES, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES II, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**BROAD STREET HEALTHCARE PROPERTIES III, LLC**

By:_____
Name: Joel Freedman
Title: Chief Executive Officer and President

**ASSIGNEE:**

**CENTER CITY HEALTHCARE, LLC**

By:_____
Name:
Title:

4

*Exhibit 3(a)(viii)(A)*

**LENDER:**

**PHILADELPHIA ACADEMIC
HEALTH SYSTEM, LLC**


By:_____
Name:
Title:

**Exhibit 3(a)(viii)(B)**
**Amended PAHS Loan Documents**

Exhibit 3(a)(viii)(B)

<u>After recording, please return to</u>:
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

<u>Mortgaged Property Addresses</u>:

222-248 N. Broad Street
221-223 N. 15th Street
325 N. 15th Street
300-304 N. Broad Street
200-214 N. Broad Street
201-219 N. 15th Street (Parcel E)
Philadelphia, PA

<u>Tax Parcel Nos</u>.:

772025002
772028498
881038202
885620242
885467862
772028496

## TERMINATION AGREEMENT

THIS TERMINATION AGREEMENT (this "**Agreement**") is made the ____ day of ____, 2022 and effective as of the ____ day of _____, 2022 (the "**Effective Date**") by and among **PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company ("**Senior Lender**"), **PALADIN HEALTHCARE CAPITAL, LLC**, a Delaware limited liability company, in its capacity as administrative agent for the Tranche II Debt (as defined below) ("**Tranche II Agent**"), **PALADIN HEALTHCARE CAPITAL, LLC**, a Delaware limited liability company, in its capacity as administrative agent for the Tranche III Debt (as defined below) ("**Tranche III Agent**"), and **FRONT STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company ("**Tranche IV Creditor**" and together with Senior Lender, Tranche II Agent and Tranche III Agent, the "**Parties**").

WHEREAS, the Parties are parties to the Second Amended and Restated Lien Subordination Agreement, dated March 30, 2022, effective as of March 31, 2022, and recorded on April 8, 2022 as <u>Document ID # 54019851</u> (the "**Intercreditor Agreement**"), consented to by Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC (collectively, the "**Broad Street PropCos**"), with respect to the property located at 222-248 N. Broad Street, 221-223 N. 15th Street, 325 N. 15th Street, 300-304 N. Broad Street, 200-214 N. Broad Street and 201-219 N. 15th Street (Parcel E)

Exhibit 3(a)(viii)(B)

in the City and County of Philadelphia, Commonwealth of Pennsylvania, as more particularly described in Exhibit A attached hereto and made a part hereof (the "**Real Property**"); and

WHEREAS, the Parties and the Broad Street PropCos are parties to that certain Memorandum of Understanding Re Global Settlement dated [＿＿＿], 2022 (the "**MOU**"), and this Agreement is being entered into pursuant to the MOU.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements herein contained, and intending to be legally bound hereby, the Parties hereby agree as follows (all capitalized terms not defined herein shall have the meanings specified in the Intercreditor Agreement):

1. **Representations and Warranties.** The Tranche II Agent, Tranche III Agent and Tranche IV Creditor hereby represent and warrant to the Senior Lender, as of the Effective Date, that:

   a. the Tranche II Debt will be satisfied, and to the extent not satisfied, released as to each of the Broad Street PropCos pursuant to the MOU, and all mortgages, liens and other security interests respecting the Tranche II Debt that are attaching to the Real Property have been or will be satisfied, released or terminated of record pursuant to the MOU;

   b. the Tranche III Debt will be satisfied, and to the extent not satisfied, released as to each of the Broad Street PropCos pursuant to the MOU, and all mortgages, liens and other security interests respecting the Tranche III Debt that are attaching to the Real Property have been or will be satisfied, released or terminated of record pursuant to the MOU; and

   c. the Tranche IV Debt will be satisfied, and to the extent not satisfied, released as to each of the Broad Street PropCos pursuant to the MOU, and all liens and other security interests respecting the Tranche IV Debt as to each of the Broad Street PropCos have been or will be satisfied, released or terminated of record pursuant to the MOU.

2. **Termination**. Effective as of the Effective Date, the Intercreditor Agreement shall terminate and be of no further force and effect, and none of the Parties shall have any further obligations thereunder or with respect thereto.

3. **Counterparts**. This Agreement may be executed in counterpart originals, each of which shall constitute an original, and all of which together shall constitute one and the same agreement.

[Signatures on following pages]

Exhibit 3(a)(viii)(B)

**IN WITNESS WHEREOF**, each of the Parties have executed this Agreement effective as of the Effective Date.

**"Senior Lender"**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**

By:_____
Name:
Title:

**"Tranche II Agent"**

**PALADIN HEALTHCARE CAPITAL, LLC**

By:_____
Name:
Title:

**"Tranche III Agent"**
**PALADIN HEALTHCARE CAPITAL, LLC**

By:_____
Name:
Title:

**"Tranche IV Creditor"**
**FRONT STREET HEALTHCARE**
**PROPERTIES, LLC**

By:_____
Name:
Title:

Exhibit 3(a)(viii)(B)

STATE OF _____     )
                                  )    SS:

COUNTY OF _____     )

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

       GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____       _____
                                                Notary Public

Exhibit 3(a)(viii)(B)

STATE OF _____                                    )
                                                         )          SS:
COUNTY OF _____                                       )

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of PALADIN HEALTHCARE CAPITAL, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____          _____
                                                 Notary Public

Exhibit 3(a)(viii)(B)

|  | ) |  |
|---|---|---|
| STATE OF _____ | ) | SS: |
| COUNTY OF _____ | ) |  |

I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of FRONT STREET HEALTHCARE PROPERTIES, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this ____ day of _____, 2022.

My Commission Expires:

_____          _____
                                                                              Notary Public

40182494.8

Exhibit 3(a)(viii)(B)

EXHIBIT A

**Legal Description of the Real Property**

**TRACT I:**

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1) THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2) THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8) THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

Exhibit 3(a)(viii)(B)

10)     THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 27.619' TO A POINT;

11)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12)     THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.     53316755.

AND

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1)     THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2)     THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

3)     THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

40182494.8

Exhibit 3(a)(viii)(B)

4)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)    THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)    THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

1)    THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

Exhibit 3(a)(viii)(B)

2)      THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)      THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)      THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)      THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)     THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

Exhibit 3(a)(viii)(B)

Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.

AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(viii)(B)

**TRACT II:**

Lot 1 – HUH North Fee Parcel:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2)      THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3)      THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4)      THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT  1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

Lot 1 – HUH North Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(viii)(B)

**TRACT III:**


**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;
2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;
3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;
4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;
5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;
6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;
7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;
8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;
9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;
12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;
13) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
14) THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

Exhibit 3(a)(viii)(B)

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1) THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;
2) THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;
3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;
4) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;
5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;
6) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;
7) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;
8) THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;
9) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

Exhibit 3(a)(viii)(B)

12)   THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14)   THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16)   THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18)   THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20)   THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21)   THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22)   THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

Exhibit 3(a)(viii)(B)

<u>After recording, please return to</u>:

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

<u>Mortgaged Property Addresses</u>:

222-248 N. Broad Street
221-223 N. 15th Street
325 N. 15th Street
Philadelphia, PA

<u>Tax Parcel Nos</u>.:

772025002
772028498
881038202

## MORTGAGE MODIFICATION AGREEMENT

This Mortgage Modification Agreement (this "<u>Modification</u>") is made as of the ___ day of _____, 2022, and effective as of the ___ day of _____, 2022 (the "<u>Effective Date</u>"), by and between **BROAD STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company ("<u>Broad</u>" or "<u>Mortgagor</u>") and **PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company ("<u>Mortgagee</u>").

WHEREAS, Mortgagor previously granted to Mortgagee a Mortgage dated as of March 30, 2022, effective as of March 31, 2022, and recorded April 7, 2022 as <u>Document ID # 54019494</u> (the "<u>Mortgage</u>"), which granted a lien on the property located at 222-248 N. Broad Street, 221-223 N. 15th Street and 325 N. 15th Street in the City and County of Philadelphia, Commonwealth of Pennsylvania, as more particularly described in <u>Exhibit A</u> attached hereto and made a part hereof (the "<u>Mortgaged Property</u>"); and

WHEREAS, the Mortgage was granted as security for Mortgagor's obligations pursuant to that certain Note (the "<u>Original Note</u>") and such other Loan Documents (each as defined in the Mortgage) and each reflecting a Loan amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00); and

WHEREAS, Mortgagor, Mortgagee and other parties have entered into that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties (the "<u>MOU</u>"); and

Exhibit 3(a)(viii)(B)

WHEREAS, pursuant to the MOU, the Original Note will be assigned to and assumed by Center City Healthcare, LLC ("CCH"), on the Effective Date, pursuant to the Assignment, Assumption and Novation Agreement effective as of the MOU Implementation Date (as defined in the MOU) (the "Assignment Agreement"), under which all of Mortgagor's rights, duties, obligations, responsibilities and liabilities under the Original Note will be transferred and assigned to and assumed by CCH, and the Original Note will be novated (as assigned, assumed and novated, the "Novated Note"); and

WHEREAS, pursuant to the MOU, Mortgagee shall make the payment in the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) (such amount, the "Settlement Balancing Payment") under and in accordance with the terms of the MOU; and

WHEREAS, the parties to the MOU have agreed, under the terms of the MOU (including Schedule 3(b) thereto), that when all or any part of the Property shall be sold, then the proceeds from such sale(s) shall be distributed in accordance with the terms of the MOU including, without limitation, for payments of amounts due under the Novated Note and reimbursement to Mortgagee of the Settlement Balancing Payment; and

WHEREAS, Mortgagor, as a party to the MOU, is benefitting by the MOU; and

WHEREAS, pursuant to the MOU, Mortgagor has agreed to amend the Mortgage to extend the lien of the Mortgage on the Mortgaged Property to secure the Settlement Balancing Payment Reimbursement Obligation (as defined below); and

WHEREAS, Mortgagor and Mortgagee have further agreed to amend the Mortgage, in each case with respect to Mortgagor's personal recourse duties, obligations, responsibilities and liabilities and with respect to personal recourse remedies available to Mortgagee and certain other terms and conditions as set forth herein; and

WHEREAS, the foregoing recitals are hereby incorporated in this Modification.

NOW THEREFORE, for good and valuable consideration, Mortgagor and Mortgagee agree to amend the Mortgage, effective as of the Effective Date:

1. The Mortgage is hereby modified so that all references therein to the amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00) are replaced with the sum of Ten Million Fifty Thousand and No/100 Dollars ($10,050,000).

2. The Mortgage is hereby modified so that all references to the "Mortgaged Property" shall be deemed to include the property listed on **Schedule A** hereto and the definition of "Agreements" shall be deleted and replaced in its entirety with the following:

   "**Agreements**" shall mean (i) all certificates, instruments, franchises, permits, licenses, plans, specifications, warranties, and guarantees, and (ii) all agreements, contracts and other documents listed on **Schedule A** attached to the Mortgage Modification Agreement dated [_____], in each case now or hereafter

entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements, or respecting any of Mortgagor's business or activity conducted at the Premises or any part thereof, or relating to any of the Fixtures, and all right, title and interest of Mortgagor therein and thereunder, including, without limitation, the right, upon the happening of an Event of Default hereunder, to receive and collect any sums payable to Mortgagor thereunder.

Mortgagee is hereby authorized to file amendments to the Financing Statements to reflect this modification of the Mortgaged Property, at Mortgagee's cost and expense.

3.  Pursuant to the Assignment Agreement, but subject to the provisions of Section 4.06 of the Mortgage (as modified herein), the Mortgagee acknowledges that any personal recourse duties, obligations, responsibilities and liabilities of Mortgagor under the Mortgage and any recourse remedies available to Mortgagee shall be the responsibility of and shall be performed by, CCH irrevocably, absolutely and unconditionally in all respects, without personal recourse to Broad. Subject to Section 4.06 of the Mortgage (as modified herein), Mortgagee hereby releases Broad from any and all such personal recourse duties, obligations, responsibilities and liabilities under the Mortgage and any and all personal recourse remedies available to Mortgagee under the Mortgage. For the avoidance of doubt, the performance of covenants, conditions, agreements and obligations under, *inter alia*, Article I, any provisions referenced in Section 2.01(a), Section 2.01(h), Section 2.08, or Section 3.14 of the Mortgage, repayment of "Future Advances" (as defined in the Mortgage) and the performance and observance of all other provisions of the Mortgage, the Novated Note and the other Loan Documents, shall be the sole responsibility of, and shall be performed by, CCH, and recourse for the failure to perform any of the foregoing shall be solely against CCH and the Mortgaged Property.

4.  The Mortgage is hereby modified so that all references to the "Note" shall refer to the Novated Note as transferred and assigned by Mortgagor to CCH pursuant to, and novated in accordance with, the Assignment Agreement.

5.  The following is hereby added to the definition of the term "Secured Obligations" in the Mortgage:

> and (vii) Repayment of the Settlement Balancing Payment Reimbursement Obligation, solely out of the proceeds of the sales and/or other dispositions of the Mortgaged Property in accordance with the terms of the MOU.

6.  The following are hereby added to the definitions section of the Mortgage in the proper alphabetical order:

> "**MOU**" shall mean that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties, dated as of _____, 2022.

Exhibit 3(a)(viii)(B)

"**Settlement Balancing Payment**" shall mean the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) paid by Mortgagee under and in accordance with the terms of the MOU.

"**Settlement Balancing Payment Reimbursement Obligation**" shall mean the obligation to repay to Mortgagee the Settlement Balancing Payment, in accordance with the terms of the MOU (including Schedule 3(b) thereto), when all or any part of the Mortgaged Property are sold, solely from the proceeds from such sale(s) and/or other dispositions. For the avoidance of doubt, Mortgagor shall not in any circumstances be liable for or obligated on the Settlement Balancing Reimbursement Obligation and the repayment thereof shall be strictly limited to the proceeds from any sale of the Mortgaged Property.

7. The last paragraph of the Granting Clause of the Mortgage is hereby amended to read in its entirety as follows: "PROVIDED ALWAYS, and this instrument is created upon the express condition that, if Mortgagor pays or causes to be paid to Mortgagee, the Secured Obligations, then this Mortgage and the estate hereby granted shall cease and become void."

8. Section 2.01(b) of the Mortgage is hereby amended to delete the following phrase contained therein "or the other Loan Documents".

9. The final paragraph of Section 2.01(c) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

10. The final paragraph of Section 2.01(d) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

11. The final paragraph of Section 2.01(e) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

12. Section 2.01(g) of the Mortgage is hereby amended to delete the following phrase contained therein "(other than a default in payment of obligations of Borrower under the Note or any of the other Loan Documents)".

13. The second sentence of Section 3.04 of the Mortgage, commencing with the phrase "This Mortgage may not be assigned by Mortgagee prior to …", is hereby deleted in its entirety.

14. The final sentence of Section 3.04 of the Mortgage, commencing with the phrase "If there is more than one Mortgagor…", is hereby deleted in its entirety.

15. Section 3.14 of the Mortgage is hereby deleted in its entirety and replaced with the following:

Exhibit 3(a)(viii)(B)

SECTION 3.14.  Mortgagor acknowledges that this Mortgage is a Loan Document and agrees that any Event of Default under this Mortgage will constitute an "**Event of Default**" under the Co-Borrower Mortgages, the Note and the other Loan Documents, and that, in such event, in addition to any and all other remedies available to Mortgagee hereunder or under any of the other Loan Documents or at law or in equity, Mortgagee shall be permitted to recover any amounts secured hereby from the value of the Mortgaged Property and the property secured by the Co- Borrower Mortgages, on a pro rata basis or otherwise, as determined by Mortgagee in its reasonable discretion.

16. Section 4.06(a) of the Mortgage is hereby deleted in its entirety and replaced with the following:

    (a)     Recourse against Mortgagor is limited solely to the Mortgaged Property, and (i) neither Mortgagor, or (ii) nor (a) any member of Mortgagor, (b) any person owning, directly or indirectly, any legal or beneficial interest in Mortgagor or a member of Mortgagor, (c) any partner, manager, principal, officer, controlling person, beneficiary, trustee, advisor, representative, or other similar fiduciary, shareholder, employee, agent, affiliate or director of any person described above, or (d) any of their respective successors and assigns, shall have any personal liability for the payment or performance of any of the obligations or otherwise under the Note or Mortgage.

17. Section 4.06(b) of the Mortgage is hereby deleted in its entirety and replaced with the following:

    (b)     Notwithstanding the foregoing, nothing herein shall serve to limit Mortgagee's right to seek any judgment against Mortgagor solely to the extent such judgment or decree may be necessary to foreclose and bar Mortgagor's interests in the Mortgaged Property; provided that the recourse under such judgment or decree shall be solely to the Mortgaged Property; and further provided that nothing herein stated or set forth in the Note shall: (a) release, impair or otherwise affect the Novated Note or this Mortgage; nor (b) impair or otherwise affect the validity or the lien of the Novated Note or this Mortgage; nor (c) impair the right of Mortgagee to accelerate the maturity of the Novated Note (or to avail itself of any of its other rights and remedies) in accordance with the terms hereof.

18. Except as modified hereby, all other provisions of the Mortgage remain in full force and effect.

19. This Modification Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same instrument.

Exhibit 3(a)(viii)(B)

[END OF TEXT; SIGNATURE PAGE FOLLOWS]

Exhibit 3(a)(viii)(B)

**IN WITNESS WHEREOF**, this Modification is duly executed as of the day and year first above written.

MORTGAGOR:

**BROAD STREET HEALTHCARE
PROPERTIES, LLC,**
a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

STATE OF _____ )

) SS:

COUNTY OF _____ )

      I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Broad Street Healthcare Properties, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

      GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____          _____

                                            Notary Public

Exhibit 3(a)(viii)(B)

**MORTGAGEE:**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC,**
a Delaware limited liability company

By: _____
Name:
Title:

STATE OF _____ )
                                ) SS:
COUNTY OF _____ )

       I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Philadelphia Academic Healthcare System, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

       GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____       _____
                                                      Notary Public

Exhibit 3(a)(viii)(B)

## EXHIBIT A

LEGAL DESCRIPTION OF THE MORTGAGED PROPERTY

**Parcel A:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF VINE STREET (ON CITY PLAN, LEGALLY OPEN, VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND RUNNING:

1) THENCE: ALONG SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 257.406' TO A POINT COMMON TO PARCEL C;

2) THENCE: ALONG PARCEL C, N78°59'00"W, A DISTANCE OF 121.833' TO A POINT;

3) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 94.348' TO A POINT;

4) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 32.915' TO A POINT;

5) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 42.110' TO A POINT;

6) THENCE: CONTINUING ALONG SAME, N78°39'00"W, A DISTANCE OF 46.670' TO A POINT;

7) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 1.740' TO A POINT COMMON TO THE EASTERLY LINE OF PARCEL B;

8) THENCE: ALONG THE NORTHERLY LINE OF PARCEL B, N78°39'00"W, A DISTANCE OF 20.198' TO A POINT;

9) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 122.199' TO A POINT ON THE SOUTHERLY SIDE OF VINE STREET;

Exhibit 3(a)(viii)(B)

10)  THENCE: ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 27.619' TO A POINT;

11)  THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 0.094' TO A POINT;

12)  THENCE: CONTINUING ALONG THE SOUTHERLY SIDE OF VINE STREET, S78°59'00"E, A DISTANCE OF 194.00' TO THE POINT AND PLACE OF BEGINNING.

PARCEL A BEING known and assessed as 222-48 North Broad Street

BEING OPA Parcel No. 77-2-0250-02

**Parcel A Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No.     53316755.

AND

**Parcel F:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF NORTH 15TH STREET, (ON CITY PLAN, LEGALLY OPEN, 70' WIDE), SAID POINT BEING LOCATED N 11°21'00" E, A DISTANCE OF 167.831' FROM THE INTERSECTION OF SAID EASTERLY SIDE OF NORTH 15TH STREET AND THE NORTHERLY SIDE OF RACE STREET, (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING;

1)  THENCE ALONG SAID EASTERLY SIDE OF NORTH 15TH STREET, LOCATED N 11°21'00" E, A DISTANCE OF 32.841' TO A POINT;

2)  THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG THE SOUTHERLY LINE OF PARCEL B, S78°59'00"E, A DISTANCE OF 65.000' TO A POINT COMMON CORNER TO PARCEL E;

3)  THENCE: ALONG THE PARCEL E, S11°21'00"W, A DISTANCE OF 14.659' TO A POINT;

Exhibit 3(a)(viii)(B)

4)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 25.578' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 13.296' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 8.528' TO A POINT;

7)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 4.886' TO A POINT;

8)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 30.894' TO THE POINT AND PLACE OF BEGINNING.

PARCEL F BEING known and assessed as 221-23 N. 15th Street.

BEING OPA Parcel No. 77-2-0284-98.

**Parcel F Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**AND**

**Lot 3 —HUH North:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL — EXISTING CONDITIONS/ PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WOOD STREET (40' WIDE) WHERE IT INTERSECTS WITH THE EASTERLY SIDE OF 15th STREET (72' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID SOUTHERLY SIDE OF WOOD STREET, S78°59'00"E, A DISTANCE OF 197.920' TO A POINT COMMON TO LOT 2;

Exhibit 3(a)(viii)(B)

2)      THENCE: ALONG THE WESTERLY LINE OF LOT 2, S11°21'00"W, A DISTANCE OF 54.327' TO A POINT;

3)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 33.740' TO A POINT;

4)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 29.468' TO A POINT;

5)      THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 6.460' TO A POINT;

6)      THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 22.779' TO A POINT COMMON TO THE NORTHERLY LINE OF LOT 1;

7)      THENCE: ALONG THE NORTHERLY LINE OF LOT 1, N78°59'00"W, A DISTANCE OF 31.720' TO A POINT;

8)      THENCE: N11°21'00"E, A DISTANCE OF 20.325' TO A POINT ON THE NORTHERLY SIDE OF PEARL STREET (18' WIDE);

9)      THENCE: ALONG THE SAID NORTHERLY SIDE OF PEARL STREET, N78°59'00"W, A DISTANCE OF 126.000' TO A POINT ON THE SAID EASTERLY SIDE OF 15th STREET;

10)    THENCE: ALONG THE SAID EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 86.250' TO THE FIRST MENTIONED POINT OF BEGINNING.

EXCEPTING THEREOUT AND THEREFROM:

ALL THAT CERTAIN lot or piece of ground lying above a horizontal plane 36.50 feet above Philadelphia City Datum, said elevation being the top of the structural floor slab at the first floor level.

BEGINNING at the point of intersection of the Southerly side of Wood Street (40 feet wide) with the Easterly side of 15th Street (72 feet wide); thence from said point of beginning extending the following four courses and distances:

Along the said side of Wood Street South 78 degrees 59 minutes 00 seconds East 197 feet, 9 inches to a point;

South 11 degrees 21 minutes 00 seconds West 54 feet, 3-1/2 inches to a point;

North 78 degrees 59 minutes 00 seconds West approximately along the Southerly face of a 16 story building 197 feet, 9 inches to a point on the Easterly side of 15th Street;

Exhibit 3(a)(viii)(B)

Along the said side of 15th Street North 11 degrees 21 minutes 00 seconds East 54 feet, 3-1/2 inches to the first mentioned point and place of beginning.


AND limited to all vertical area within the confines of the above horizontal boundaries up to an elevation of 205 feet above Philadelphia City Datum.

LOT 3 — HUH NORTH BEING known and assessed as 325 N. 15th St.

BEING OPA Parcel No. 88-1-0382-02.

**Lot 3 —HUH North Easement Parcel:**

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated 12/30/2017 and recorded 1/18/2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(viii)(B)

## <u>SCHEDULE A</u>

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties, LLC ("Broad Street PropCo I") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo I and located upon or at any Real Estate.
2. Broad Street PropCo I REAs.
3. Broad Street PropCo I Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo I, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
   a. Account No.:     XX-XXXX-0053
      Account Name: Broad Street Healthcare Properties, LLC

      Transit/Routing:     043000096
      Bank Name:           PNC Bank, Pittsburgh, PA

Exhibit 3(a)(viii)(B)

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo I to PAHH and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH") bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6. All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7. All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo I against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo I, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo I may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo I to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

Exhibit 3(a)(viii)(B)

After recording, please return to:

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

Mortgaged Property Address:

300-304 N. Broad Street
Philadelphia, PA

Tax Parcel No.:
885620242

## MORTGAGE MODIFICATION AGREEMENT

This Mortgage Modification Agreement (this "Modification") is made as of the ___ day of
_____, 2022, and effective as of the ___ day of _____, 2022 (the "Effective Date"), by and
between **BROAD STREET HEALTHCARE PROPERTIES II, LLC**, a Delaware limited
liability company ("Broad II" or "Mortgagor") and **PHILADELPHIA ACADEMIC HEALTH
SYSTEM, LLC**, a Delaware limited liability company ("Mortgagee").

WHEREAS, Mortgagor previously granted to Mortgagee a Mortgage dated as of March
30, 2022, effective as of March 31, 2022, and recorded April 7, 2022 as Document ID # 54019493
(the "Mortgage"), which granted a lien on the property located at 300-304 N. Broad Street in the
City and County of Philadelphia, Commonwealth of Pennsylvania, as more particularly described
in Exhibit A attached hereto and made a part hereof (the "Mortgaged Property"); and

WHEREAS, the Mortgage was granted as security for Mortgagor's obligations pursuant to
that certain Note (the "Original Note") and such other Loan Documents (each as defined in the
Mortgage) and each reflecting a Loan amount of Five Million Six Hundred Thousand and No/100
Dollars ($5,600,000.00); and

WHEREAS, Mortgagor, Mortgagee and other parties have entered into that certain
Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors'
Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties (the
"MOU"); and

WHEREAS, pursuant to the MOU, the Original Note will be assigned to and assumed by
Center City Healthcare, LLC ("CCH"), on the Effective Date, pursuant to the Assignment,
Assumption and Novation Agreement effective as of the MOU Implementation Date (as defined
in the MOU) (the "Assignment Agreement"), under which all of Mortgagor's rights, duties,
obligations, responsibilities and liabilities under the Original Note will be transferred and assigned

Exhibit 3(a)(viii)(B)

to and assumed by CCH, and the Original Note will be novated (as assigned, assumed and novated, the "Novated Note"); and

WHEREAS, pursuant to the MOU, Mortgagee shall make the payment in the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) (such amount, the "Settlement Balancing Payment") under and in accordance with the terms of the MOU; and

WHEREAS, the parties to the MOU have agreed, under the terms of the MOU (including Schedule 3(b) thereto), that when all or any part of the Property shall be sold, then the proceeds from such sale(s) shall be distributed in accordance with the terms of the MOU including, without limitation, for payments of amounts due under the Novated Note and reimbursement to Mortgagee of the Settlement Balancing Payment; and

WHEREAS, Mortgagor, as a party to the MOU, is benefitting by the MOU; and

WHEREAS, pursuant to the MOU, Mortgagor has agreed to amend the Mortgage to extend the lien of the Mortgage on the Mortgaged Property to secure the Settlement Balancing Payment Reimbursement Obligation (as defined below); and

WHEREAS, Mortgagor and Mortgagee have further agreed to amend the Mortgage, in each case with respect to Mortgagor's personal recourse duties, obligations, responsibilities and liabilities and with respect to personal recourse remedies available to Mortgagee and certain other terms and conditions as set forth herein; and

WHEREAS, the foregoing recitals are hereby incorporated in this Modification.

NOW THEREFORE, for good and valuable consideration, Mortgagor and Mortgagee agree to amend the Mortgage, effective as of the Effective Date:

1. The Mortgage is hereby modified so that all references therein to the amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00) are replaced with the sum of Ten Million Fifty Thousand and No/100 Dollars ($10,050,000).

2. The Mortgage is hereby modified so that all references to the "Mortgaged Property" shall be deemed to include the property listed on **Schedule A** hereto and the definition of "Agreements" shall be deleted and replaced in its entirety with the following:

> "**Agreements**" shall mean (i) all certificates, instruments, franchises, permits, licenses, plans, specifications, warranties, and guarantees, and (ii) all agreements, contracts and other documents listed on **Schedule A** attached to the Mortgage Modification Agreement dated [_____], in each case now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements, or respecting any of Mortgagor's business or activity conducted at the Premises or any part thereof, or relating to any of the Fixtures, and all right, title and interest of Mortgagor therein and thereunder,

Case 1:21Case 1:21-CV-11150-11150-CV-11150-WYW Document 42579Document 42-1 Filed 08/08/22/22 Pageeg&e 45 of 75eoID #: 4238

Exhibit 3(a)(viii)(B)

including, without limitation, the right, upon the happening of an Event of Default hereunder, to receive and collect any sums payable to Mortgagor thereunder.

Mortgagee is hereby authorized to file amendments to the Financing Statements to reflect this modification of the Mortgaged Property, at Mortgagee's cost and expense.

3. Pursuant to the Assignment Agreement, but subject to the provisions of Section 4.06 of the Mortgage (as modified herein), the Mortgagee acknowledges that any personal recourse duties, obligations, responsibilities and liabilities of Mortgagor under the Mortgage and any recourse remedies available to Mortgagee shall be the responsibility of and shall be performed by, CCH irrevocably, absolutely and unconditionally in all respects, without personal recourse to Broad II. Subject to Section 4.06 of the Mortgage (as modified herein), Mortgagee hereby releases Broad II from any and all such personal recourse duties, obligations, responsibilities and liabilities under the Mortgage and any and all personal recourse remedies available to Mortgagee under the Mortgage. For the avoidance of doubt, the performance of covenants, conditions, agreements and obligations under, *inter alia*, Article I, any provisions referenced in Section 2.01(a), Section 2.01(h), Section 2.08, or Section 3.14 of the Mortgage, repayment of "Future Advances" (as defined in the Mortgage) and the performance and observance of all other provisions of the Mortgage, the Novated Note and the other Loan Documents, shall be the sole responsibility of, and shall be performed by, CCH, and recourse for the failure to perform any of the foregoing shall be solely against CCH and the Mortgaged Property.

4. The Mortgage is hereby modified so that all references to the "Note" shall refer to the Novated Note as transferred and assigned by Mortgagor to CCH pursuant to, and novated in accordance with, the Assignment Agreement.

5. The following is hereby added to the definition of the term "Secured Obligations" in the Mortgage:

and (vii) Repayment of the Settlement Balancing Payment Reimbursement Obligation, solely out of the proceeds of the sales and/or other dispositions of the Mortgaged Property in accordance with the terms of the MOU.

6. The following are hereby added to the definitions section of the Mortgage in the proper alphabetical order:

"**MOU**" shall mean that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties, dated as of _____, 2022.

"**Settlement Balancing Payment**" shall mean the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) paid by Mortgagee under and in accordance with the terms of the MOU.

"**Settlement Balancing Payment Reimbursement Obligation**" shall mean the obligation to repay to Mortgagee the Settlement Balancing Payment, in accordance with the terms of the MOU (including Schedule 3(b) thereto), when all or any part of the Mortgaged Property are sold, solely from the proceeds from such sale(s) and/or other dispositions. For the avoidance of doubt, Mortgagor shall not in any circumstances be liable for or obligated on the Settlement Balancing Reimbursement Obligation and the repayment thereof shall be strictly limited to the proceeds from any sale of the Mortgaged Property..

7. The last paragraph of the Granting Clause of the Mortgage is hereby amended to read in its entirety as follows: "PROVIDED ALWAYS, and this instrument is created upon the express condition that, if Mortgagor pays or causes to be paid to Mortgagee, the Secured Obligations, then this Mortgage and the estate hereby granted shall cease and become void."

8. Section 2.01(b) of the Mortgage is hereby amended to delete the following phrase contained therein "or the other Loan Documents".

9. The final paragraph of Section 2.01(c) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

10. The final paragraph of Section 2.01(d) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

11. The final paragraph of Section 2.01(e) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

12. Section 2.01(g) of the Mortgage is hereby amended to delete the following phrase contained therein "(other than a default in payment of obligations of Borrower under the Note or any of the other Loan Documents)".

13. The second sentence of Section 3.04 of the Mortgage, commencing with the phrase "This Mortgage may not be assigned by Mortgagee prior to …", is hereby deleted in its entirety.

14. The final sentence of Section 3.04 of the Mortgage, commencing with the phrase "If there is more than one Mortgagor…", is hereby deleted in its entirety.

15. Section 3.14 of the Mortgage is hereby deleted in its entirety and replaced with the following:

SECTION 3.14. Mortgagor acknowledges that this Mortgage is a Loan Document and agrees that any Event of Default under this Mortgage will constitute an "**Event of Default**" under the Co-Borrower Mortgages, the Note and the other Loan Documents, and that, in such event, in addition to any and all other remedies available to Mortgagee

Exhibit 3(a)(viii)(B)

hereunder or under any of the other Loan Documents or at law or in equity, Mortgagee shall be permitted to recover any amounts secured hereby from the value of the Mortgaged Property and the property secured by the Co- Borrower Mortgages, on a pro rata basis or otherwise, as determined by Mortgagee in its reasonable discretion.

16. Section 4.06(a) of the Mortgage is hereby deleted in its entirety and replaced with the following:

> (a)      Recourse against Mortgagor is limited solely to the Mortgaged Property, and (i) neither Mortgagor, or (ii) nor (a) any member of Mortgagor, (b) any person owning, directly or indirectly, any legal or beneficial interest in Mortgagor or a member of Mortgagor, (c) any partner, manager, principal, officer, controlling person, beneficiary, trustee, advisor, representative, or other similar fiduciary, shareholder, employee, agent, affiliate or director of any person described above, or (d) any of their respective successors and assigns, shall have any personal liability for the payment or performance of any of the obligations or otherwise under the Note or Mortgage.

17. Section 4.06(b) of the Mortgage is hereby deleted in its entirety and replaced with the following:

> (b)      Notwithstanding the foregoing, nothing herein shall serve to limit Mortgagee's right to seek any judgment against Mortgagor solely to the extent such judgment or decree may be necessary to foreclose and bar Mortgagor's interests in the Mortgaged Property; <u>provided</u> that the recourse under such judgment or decree shall be solely to the Mortgaged Property; and further provided that nothing herein stated or set forth in the Note shall: (a) release, impair or otherwise affect the Novated Note or this Mortgage; nor (b) impair or otherwise affect the validity or the lien of the Novated Note or this Mortgage; nor (c) impair the right of Mortgagee to accelerate the maturity of the Novated Note (or to avail itself of any of its other rights and remedies) in accordance with the terms hereof.

18. Except as modified hereby, all other provisions of the Mortgage remain in full force and effect.

19. This Modification Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same instrument.

[END OF TEXT; SIGNATURE PAGE FOLLOWS]

Exhibit 3(a)(viii)(B)

**IN WITNESS WHEREOF**, this Modification is duly executed as of the day and year first above written.

**MORTGAGOR:**

**BROAD STREET HEALTHCARE PROPERTIES II, LLC,**
a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

STATE OF _____ )
                              ) SS:
COUNTY OF _____ )

I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Broad Street Healthcare Properties II, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____       _____
                                                      Notary Public

Exhibit 3(a)(viii)(B)

**MORTGAGEE:**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC,**
a Delaware limited liability company

By: _____
Name:
Title:

STATE OF _____  )
                                                        ) SS:
COUNTY OF _____  )

      I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Philadelphia Academic Healthcare System, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

      GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____        _____
                                                                           Notary Public

Exhibit 3(a)(viii)(B)

## EXHIBIT A

LEGAL DESCRIPTION OF THE MORTGAGED PROPERTY

Lot 1 – HUH North Fee Parcel:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2)      THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3)      THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4)      THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT  1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

Lot 1 – HUH North Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

Exhibit 3(a)(viii)(B)

## SCHEDULE A

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties II, LLC ("Broad Street PropCo II") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo II and located upon or at any Real Estate.
2. Broad Street PropCo II REAs.
3. Broad Street PropCo II Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
   a. Account No.: XX-XXXX-0061
      Account Name: Broad Street Healthcare Properties II, LLC
      Transit/Routing: 043000096
      Bank Name: PNC Bank, Pittsburgh, PA

Exhibit 3(a)(viii)(B)

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo II to PAHH and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH') bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6. All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7. All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo II against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo II may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo II to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

Exhibit 3(a)(viii)(B)

<u>After recording, please return to</u>:

Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Attention: Martin J. Doyle, Esq.

<u>Mortgaged Property Addresses</u>:

200-214 N. Broad Street
201-219 N. 15th Street (Parcel E)
Philadelphia, PA

<u>Tax Parcel Nos.</u>:

885467862
772028496

## MORTGAGE MODIFICATION AGREEMENT

This Mortgage Modification Agreement (this "<u>Modification</u>") is made as of the ___ day of _____, 2022, and effective as of the ___ day of _____, 2022 (the "<u>Effective Date</u>"), by and between **BROAD STREET HEALTHCARE PROPERTIES III, LLC**, a Delaware limited liability company ("<u>Broad III</u>" or "<u>Mortgagor</u>") and **PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company ("<u>Mortgagee</u>").

WHEREAS, Mortgagor has previously granted to Mortgagee a Mortgage dated as of March 30, 2022, effective as of March 31, 2022, and recorded April 7, 2022 as <u>Document ID # 54019476</u> (the "<u>Mortgage</u>"), which granted a lien on the property located at 200-214 N. Broad Street and 201-219 N. 15th Street (Parcel E) in the City and County of Philadelphia, Commonwealth of Pennsylvania, as more particularly described in <u>Exhibit A</u> attached hereto and made a part hereof (the "<u>Mortgaged Property</u>"); and

WHEREAS, the Mortgage was granted as security for Mortgagor's obligations pursuant to that certain Note (the "<u>Original Note</u>") and such other Loan Documents (each as defined in the Mortgage) and each reflecting a Loan amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00); and

WHEREAS, Mortgagor, Mortgagee and other parties have entered into that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties (the "<u>MOU</u>"); and

Exhibit 3(a)(viii)(B)

WHEREAS, pursuant to the MOU, the Original Note will be assigned to and assumed by Center City Healthcare, LLC ("CCH"), on the Effective Date, pursuant to the Assignment, Assumption and Novation Agreement effective as of the MOU Implementation Date (as defined in the MOU) (the "Assignment Agreement"), under which all of Mortgagor's rights, duties, obligations, responsibilities and liabilities under the Original Note will be transferred and assigned to and assumed by CCH, and the Original Note will be novated (as assigned, assumed and novated, the "Novated Note"); and

WHEREAS, pursuant to the MOU, Mortgagee shall make the payment in the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) (such amount, the "Settlement Balancing Payment") under and in accordance with the terms of the MOU; and

WHEREAS, the parties to the MOU have agreed, under the terms of the MOU (including Schedule 3(b) thereto), that when all or any part of the Property shall be sold, then the proceeds from such sale(s) shall be distributed in accordance with the terms of the MOU including, without limitation, for payments of amounts due under the Novated Note and reimbursement to Mortgagee of the Settlement Balancing Payment; and

WHEREAS, Mortgagor, as a party to the MOU, is benefitting by the MOU; and

WHEREAS, pursuant to the MOU, Mortgagor has agreed to amend the Mortgage to extend the lien of the Mortgage on the Mortgaged Property to secure the Settlement Balancing Payment Reimbursement Obligation (as defined below); and

WHEREAS, Mortgagor and Mortgagee have further agreed to amend the Mortgage, in each case with respect to Mortgagor's personal recourse duties, obligations, responsibilities and liabilities and with respect to personal recourse remedies available to Mortgagee and certain other terms and conditions as set forth herein; and

WHEREAS, the foregoing recitals are hereby incorporated in this Modification.

NOW THEREFORE, for good and valuable consideration, Mortgagor and Mortgagee agree to amend the Mortgage, effective as of the Effective Date:

1.  The Mortgage is hereby modified so that all references therein to the amount of Five Million Six Hundred Thousand and No/100 Dollars ($5,600,000.00) are replaced with the sum of Ten Million Fifty Thousand and No/100 Dollars ($10,050,000).

2.  The Mortgage is hereby modified so that all references to the "Mortgaged Property" shall be deemed to include the property listed on **Schedule A** hereto and the definition of "Agreements" shall be deleted and replaced in its entirety with the following:

    "**Agreements**" shall mean (i) all certificates, instruments, franchises, permits, licenses, plans, specifications, warranties, and guarantees, and (ii) all agreements, contracts and other documents listed on **Schedule A** attached to the Mortgage Modification Agreement dated [_____], in each case now or hereafter

entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements, or respecting any of Mortgagor's business or activity conducted at the Premises or any part thereof, or relating to any of the Fixtures, and all right, title and interest of Mortgagor therein and thereunder, including, without limitation, the right, upon the happening of an Event of Default hereunder, to receive and collect any sums payable to Mortgagor thereunder.

Mortgagee is hereby authorized to file amendments to the Financing Statements to reflect this modification of the Mortgaged Property, at Mortgagee's cost and expense.

3. Pursuant to the Assignment Agreement, but subject to the provisions of Section 4.06 of the Mortgage (as modified herein), the Mortgagee acknowledges that any personal recourse duties, obligations, responsibilities and liabilities of Mortgagor under the Mortgage and any recourse remedies available to Mortgagee shall be the responsibility of and shall be performed by, CCH irrevocably, absolutely and unconditionally in all respects, without personal recourse to Broad III. Subject to Section 4.06 of the Mortgage (as modified herein), Mortgagee hereby releases Broad III from any and all such personal recourse duties, obligations, responsibilities and liabilities under the Mortgage and any and all personal recourse remedies available to Mortgagee under the Mortgage. For the avoidance of doubt, the performance of covenants, conditions, agreements and obligations under, *inter alia*, Article I, any provisions referenced in Section 2.01(a), Section 2.01(h), Section 2.08, or Section 3.14 of the Mortgage, repayment of "Future Advances" (as defined in the Mortgage) and the performance and observance of all other provisions of the Mortgage, the Novated Note and the other Loan Documents, shall be the sole responsibility of, and shall be performed by, CCH, and recourse for the failure to perform any of the foregoing shall be solely against CCH and the Mortgaged Property.

4. The Mortgage is hereby modified so that all references to the "Note" shall refer to the Novated Note as transferred and assigned by Mortgagor to CCH pursuant to, and novated in accordance with, the Assignment Agreement.

5. The following is hereby added to the definition of the term "Secured Obligations" in the Mortgage:

and (vii) Repayment of the Settlement Balancing Payment Reimbursement Obligation, solely out of the proceeds of the sales and/or other dispositions of the Mortgaged Property in accordance with the terms of the MOU.

6. The following are hereby added to the definitions section of the Mortgage in the proper alphabetical order:

"**MOU**" shall mean that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties, dated as of _____, 2022.

Exhibit 3(a)(viii)(B)

"**Settlement Balancing Payment**" shall mean the amount of Four Million Four Hundred Fifty Thousand and No/100 Dollars ($4,450,000.00) paid by Mortgagee under and in accordance with the terms of the MOU.

"**Settlement Balancing Payment Reimbursement Obligation**" shall mean the obligation to repay to Mortgagee the Settlement Balancing Payment, in accordance with the terms of the MOU (including Schedule 3(b) thereto), when all or any part of the Mortgaged Property are sold, solely from the proceeds from such sale(s) and/or other dispositions. For the avoidance of doubt, Mortgagor shall not in any circumstances be liable for or obligated on the Settlement Balancing Reimbursement Obligation and the repayment thereof shall be strictly limited to the proceeds from any sale of the Mortgaged Property.

7. The last paragraph of the Granting Clause of the Mortgage is hereby amended to read in its entirety as follows: "PROVIDED ALWAYS, and this instrument is created upon the express condition that, if Mortgagor pays or causes to be paid to Mortgagee, the Secured Obligations, then this Mortgage and the estate hereby granted shall cease and become void."

8. Section 2.01(b) of the Mortgage is hereby amended to delete the following phrase contained therein "or the other Loan Documents".

9. The final paragraph of Section 2.01(c) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

10. The final paragraph of Section 2.01(d) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

11. The final paragraph of Section 2.01(e) of the Mortgage, commencing with the phrase "Notwithstanding anything to the contrary in this Mortgage or the Note, including the existence of any Event of Default…", is hereby deleted in its entirety.

12. Section 2.01(g) of the Mortgage is hereby amended to delete the following phrase contained therein "(other than a default in payment of obligations of Borrower under the Note or any of the other Loan Documents)".

13. The second sentence of Section 3.04 of the Mortgage, commencing with the phrase "This Mortgage may not be assigned by Mortgagee prior to …", is hereby deleted in its entirety.

14. The final sentence of Section 3.04 of the Mortgage, commencing with the phrase "If there is more than one Mortgagor…", is hereby deleted in its entirety.

15. Section 3.14 of the Mortgage is hereby deleted in its entirety and replaced with the following:

Exhibit 3(a)(viii)(B)

SECTION 3.14. Mortgagor acknowledges that this Mortgage is a Loan Document and agrees that any Event of Default under this Mortgage will constitute an "**Event of Default**" under the Co-Borrower Mortgages, the Note and the other Loan Documents, and that, in such event, in addition to any and all other remedies available to Mortgagee hereunder or under any of the other Loan Documents or at law or in equity, Mortgagee shall be permitted to recover any amounts secured hereby from the value of the Mortgaged Property and the property secured by the Co- Borrower Mortgages, on a pro rata basis or otherwise, as determined by Mortgagee in its reasonable discretion.

16. Section 4.06(a) of the Mortgage is hereby deleted in its entirety and replaced with the following:

(a) Recourse against Mortgagor is limited solely to the Mortgaged Property, and (i) neither Mortgagor, or (ii) nor (a) any member of Mortgagor, (b) any person owning, directly or indirectly, any legal or beneficial interest in Mortgagor or a member of Mortgagor, (c) any partner, manager, principal, officer, controlling person, beneficiary, trustee, advisor, representative, or other similar fiduciary, shareholder, employee, agent, affiliate or director of any person described above, or (d) any of their respective successors and assigns, shall have any personal liability for the payment or performance of any of the obligations or otherwise under the Note or Mortgage.

17. Section 4.06(b) of the Mortgage is hereby deleted in its entirety and replaced with the following:

(b) Notwithstanding the foregoing, nothing herein shall serve to limit Mortgagee's right to seek any judgment against Mortgagor solely to the extent such judgment or decree may be necessary to foreclose and bar Mortgagor's interests in the Mortgaged Property; provided that the recourse under such judgment or decree shall be solely to the Mortgaged Property; and further provided that nothing herein stated or set forth in the Note shall: (a) release, impair or otherwise affect the Novated Note or this Mortgage; nor (b) impair or otherwise affect the validity or the lien of the Novated Note or this Mortgage; nor (c) impair the right of Mortgagee to accelerate the maturity of the Novated Note (or to avail itself of any of its other rights and remedies) in accordance with the terms hereof.

18. Except as modified hereby, all other provisions of the Mortgage remain in full force and effect.

19. This Modification Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same instrument.

Exhibit 3(a)(viii)(B)

[END OF TEXT; SIGNATURE PAGE FOLLOWS]

Exhibit 3(a)(viii)(B)

**IN WITNESS WHEREOF**, this Modification is duly executed as of the day and year first above written.

MORTGAGOR:

**BROAD STREET HEALTHCARE PROPERTIES III, LLC,**
a Delaware limited liability company

By: _____
Name: Joel Freedman
Title: Chief Executive Officer and President

STATE OF _____ )
                                                    ) SS:
COUNTY OF _____ )

      I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Broad Street Healthcare Properties III, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

      GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____          _____
                                                                          Notary Public

Exhibit 3(a)(viii)(B)

**MORTGAGEE:**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC,**
a Delaware limited liability company

By: _____
Name:
Title:

STATE OF _____ )
                                                        ) SS:
COUNTY OF _____ )

       I, _____ , a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY, that _____, the _____ of Philadelphia Academic Healthcare System, LLC, a Delaware limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said _____, for the uses and purposes therein set forth.

       GIVEN under my hand and Notarial Seal this _____ day of _____, 2022.

My Commission Expires:

_____          _____
                                                                            Notary Public

Exhibit 3(a)(viii)(B)

## EXHIBIT A

LEGAL DESCRIPTION OF THE MORTGAGED PROPERTY

**Parcel D:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT OF INTERSECTION OF THE WESTERLY SIDE OF BROAD STREET (ON CITY PLAN, LEGALLY OPEN, 113' WIDE) AND THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND RUNNING:

1) THENCE: ALONG SAID NORTHERLY SIDE OF RACE STREET, N78°59'00"W, A DISTANCE OF 190.025' TO A POINT, COMMON CORNER TO PARCEL E;
2) THENCE: ALONG THE EASTERLY LINE OF PARCEL E, N11°21'00"E, A DISTANCE OF 94.333' TO A POINT;
3) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 19.967' TO A POINT;
4) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 15.667' TO A POINT;
5) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 9.942' TO A POINT;
6) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 31.333' TO A POINT;
7) THENCE: CONTINUING ALONG PARCEL E, S78°59'00"E, A DISTANCE OF 20.000' TO A POINT, COMMON CORNER TO THE SOUTHERLY LINE OF PARCEL C;
8) THENCE: ALONG THE SOUTHERLY LINE OF PARCEL C, S11°21'00"W, A DISTANCE OF 2.000' TO A POINT;
9) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 61.122' TO A POINT;
10) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 8.646' TO A POINT;
11) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 7.382' TO A POINT;
12) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 7.952' TO A POINT;
13) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 91.495' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;

Exhibit 3(a)(viii)(B)

14)     THENCE: ALONG THE WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 155.932' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 200-14 N. Broad St.

BEING OPA Parcel No. 88-5-4678-62

**Parcel D Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017 made effective January 11, 2018, and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

**Parcel E:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT AT THE INTERSECTION OF THE NORTHERLY SIDE OF RACE STREET (ON CITY PLAN, LEGALLY OPEN, 50' WIDE) AND THE EASTERLY SIDE OF 15TH STREET (ON CITY PLAN, LEGALLY OPEN, 70' WIDE) AND RUNNING:

1)     THENCE: ALONG THE EASTERLY SIDE OF 15th STREET, N11°21'00"E, A DISTANCE OF 167.831' TO A POINT, COMMON CORNER TO PARCEL F;
2)     THENCE: LEAVING SAID EASTERLY SIDE OF 15th STREET AND ALONG PARCEL F, S78°59'00"E, A DISTANCE OF 30.894' TO A POINT;
3)     THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 4.886' TO A POINT;
4)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 8.528' TO A POINT;
5)     THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 13.296' TO A POINT;
6)     THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 25.578' TO A POINT;
7)     THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 14.659' TO A POINT COMMON TO PARCEL B;
8)     THENCE: ALONG PARCEL B, S78°59'00"E, A DISTANCE OF 58.582' TO A POINT;
9)     THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 21.842' TO A POINT;

10) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 62.210' TO A POINT;

11) THENCE: CONTINUING ALONG SAME, N11°21'00"E, A DISTANCE OF 21.000' TO A POINT COMMON CORNER TO PARCEL C;

12) THENCE: ALONG PARCEL C, S78°59'00"E, A DISTANCE OF 9.708' TO A POINT;

13) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 42.833' TO A POINT;

14) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 29.832' TO A POINT;

15) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 16.035' TO A POINT, COMMON TO PARCEL D;

16) THENCE: ALONG PARCEL D, N78°59'00"W, A DISTANCE OF 9.333' TO A POINT;

17) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 31.333' TO A POINT;

18) THENCE: CONTINUING ALONG SAME, S78°59'00"E, A DISTANCE OF 9.942' TO A POINT;

19) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 15.667' TO A POINT;

20) THENCE: CONTINUING ALONG SAME, N78°59'00"W, A DISTANCE OF 19.967' TO A POINT;

21) THENCE: CONTINUING ALONG SAME, S11°21'00"W, A DISTANCE OF 94.333' TO A POINT ON THE SAID NORTHERLY SIDE OF RACE STREET;

22) THENCE: ALONG THE NORTHERLY SIDE OF RACE STREET, N 78°59'00" W, A DISTANCE OF 205.975' TO THE POINT AND PLACE OF BEGINNING.

BEING known and assessed as 201-19 N. 15th St.

BEING OPA Parcel No. 77-2-0284-96

**Parcel E Easement Parcel:**

TOGETHER WITH in that certain Reciprocal Easement and Operating Agreement made by and between Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties III, LLC, PAHH Feinstein MOB, LLC and PAHH New College MOB, LLC dated December 30, 2017, made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316755.

Exhibit 3(a)(viii)(B)

## SCHEDULE A

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties III, LLC ("Broad Street PropCo III") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo III and located upon or at any Real Estate.
2. Broad Street PropCo III REAs.
3. Broad Street PropCo III Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo III, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
   a. Account No.:       XX-XXXX-0088
   Account Name: Broad Street Healthcare Properties III, LLC
   Transit/Routing:      043000096
   Bank Name:        PNC Bank, Pittsburgh, PA

Exhibit 3(a)(viii)(B)

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo III to PAHH and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH') bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo III against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo III, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo III may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo III to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.


The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Christina M. Carry, Paralegal, Saul Ewing Arnstein & Lehr

**B. E-MAIL CONTACT AT FILER (optional)**
ccarry@saul.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

Christina M. Carry, Paralegal, Saul Ewing Arnstein &
Lehr LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| 20222743292 | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:   AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record     ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c     ☐ ADD name: Complete item 7a or 7b, and item 7c     ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ **COLLATERAL CHANGE:** Also check one of these four boxes:   ☑ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:
See Exhibit A adding
additional collateral of the Debtor

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Philadelphia Academic Health System, LLC | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
Delaware Secretary of State

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form

**20222743292**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties II, LLC**

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties II, LLC**

OR

13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

**See Exhibit A adding additional collateral of the Debtor**

15. This FINANCING STATEMENT AMENDMENT:
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

**See Exhibit B**

18. MISCELLANEOUS:
Delaware Department of State

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

**EXHIBIT A**

**ADDITIONAL COLLATERAL**

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties II, LLC ("Broad Street PropCo II") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo II and located upon or at any Real Estate.
2. Broad Street PropCo II REAs.
3. Broad Street PropCo II Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
   a. Account No.:              XX-XXXX-0061
      Account Name: Broad Street Healthcare Properties II, LLC
      Transit/Routing:          043000096
      Bank Name:                PNC Bank, Pittsburgh, PA

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH') bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo II against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo II may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo II to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.


The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

---

[1]     **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo II to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH") bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo II against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo II, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo II may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo II to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

---

[1]     **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**

LEGAL DESCRIPTION

Exhibit B

Legal Description of the Premises

**TRACT II:**

Lot 1 – HUH North Fee Parcel:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEGINNING IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS SHOWN ON A PLAN BY PENNONI ASSOCIATES ENTITLED "HAHNEMANN UNIVERSITY HOSPITAL – EXISTING CONDITIONS / PROPOSED SUBDIVISION PLAN" BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF VINE STREET (VARIABLE WIDTH) WHERE IT INTERSECTS WITH THE WESTERLY SIDE OF BROAD STREET (113' WIDE) AND RUNNING:

1)      THENCE: ALONG SAID NORTHERLY SIDE OF VINE STREET, N78°59'00"W, A DISTANCE OF 269.667' TO A POINT;
2)      THENCE: N11°21'00"E, A DISTANCE OF 122.675' TO A POINT COMMON TO LOT 3;
3)      THENCE: ALONG THE SOUTHERLY LINE OF LOT 3 AND LOT 2, S78°59'00"E, A DISTANCE OF 269.667' TO A POINT ON THE SAID WESTERLY SIDE OF BROAD STREET;
4)      THENCE: ALONG THE SAID WESTERLY SIDE OF BROAD STREET, S11°21'00"W, A DISTANCE OF 122.675' TO THE FIRST MENTIONED POINT OF BEGINNING.

LOT 1 - HUH NORTH BEING assessed and known as 300-04 N. Broad Street

BEING OPA Parcel No. 88-5-6202-42

Lot 1 – HUH North Easement Parcel:

TOGETHER WITH the reciprocal easements set forth in Parking, Access And Utilities Easement Agreement made by and between PAHH Wood Street Garage, LLC, Broad Street Healthcare Properties, LLC and Broad Street Healthcare Properties II, LLC dated December 30, 2017 made effective January 11, 2018 and recorded January 18, 2018 in the Office of the Recorder of Deeds for the County of Philadelphia as Document No. 53316753.

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Christina M. Carry, Paralegal, Saul Ewing Arnstein & Lehr |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| ccarry@saul.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Christina M. Carry, Paralegal, Saul Ewing Arnstein &
Lehr LLP
1200 Liberty Ridge Drive, Suite
200 Wayne, PA 19087

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. |
|---|---|
| 20222743342 | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:          AND   Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record          ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c          ☐ ADD name: Complete item 7a or 7b, and item 7c          ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ **COLLATERAL CHANGE:** Also check one of these four boxes:   ☑ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**See Exhibit A adding additional collateral of the Debtor**

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Philadelphia Academic Health System, LLC** | | | |
| OR | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
Delaware Secretary of State

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form

**20222743342**

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

OR

12a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties III, LLC**

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)　　　SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

OR

13a. ORGANIZATION'S NAME

**Broad Street Healthcare Properties III, LLC**

| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

**See Exhibit A adding additional collateral of the Debtor**

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut　☐ covers as-extracted collateral　☐ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

**See Exhibit B**

18. MISCELLANEOUS:

Delaware Department of State

**EXHIBIT A**

**ADDITIONAL COLLATERAL**

Capitalized terms used in this Schedule without definitions shall have the meanings assigned to them in that certain Memorandum Of Understanding to which Debtor and Secured Party are parties (the "MOU"); all Section references in this Schedule are to the Sections of the Mortgage.

All of Broad Street Healthcare Properties III, LLC ("Broad Street PropCo III") right, title and interest in and to the following rights, properties and assets, whether tangible or intangible, subject to all liens, claims and encumbrances, except as provided in the MOU:

1. All equitable and other interests in the Real Estate, as well as the tangible personal property, including equipment, furniture, fixtures, office furnishings, and leasehold improvements, owned by Broad Street PropCo III and located upon or at any Real Estate.
2. Broad Street PropCo III REAs.
3. Broad Street PropCo III Unity of Use Agreements.
4. All deposits, pre-payments, overpayments, rebates, refunds and the like pertaining to items 1-3, 6 and 7 of this Schedule (excluding, for the avoidance of doubt, deposits, pre-payments, overpayments, rebates, refunds and the like with or from any advisor or professional of Broad Street PropCo III, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU), including without limitation the security deposit made by Broad Street Healthcare Properties, LLC pursuant to the Steam Service Agreement dated December 1, 2020 between Vicinity Energy Philadelphia, Inc. and Broad Street Healthcare Properties, LLC by and through its agent, G&E Real Estate Management Services, Inc., a Delaware corporation, dba Newmark Knight Frank.
5. Any account balances representing Advances made pursuant to, and as defined in, the Philadelphia Academic Health System, LLC ("PAHS") Loan Documents in the following bank accounts:
   a. Account No.:               XX-XXXX-0088
         Account Name: Broad Street Healthcare Properties III, LLC
         Transit/Routing:        043000096
         Bank Name:           PNC Bank, Pittsburgh, PA

On the MOU Implementation Date (i) all such account balances that do not represent Advances (as such term is defined in the PAHS Loan Documents) shall be transferred by Broad Street PropCo III to PAHH[1] and (ii) all such account balances that represent Advances shall be transferred to the Center City Healthcare, LLC ("CCH') bank account designated by PAHS prior to the MOU Implementation Date, other than the sum of outstanding amounts due on account of issued checks that had not cleared ("Outstanding Checks").

6.  All contracts and agreements listed as items 1-26 of Schedule 3(a)(vii) to the MOU.

7.  All utilities to or at the Real Estate.

8. For the avoidance of doubt, (a) the assets shall not include, and shall not be deemed to include: (i) any claim held by Broad Street PropCo III against any of the other MBNF Parties, the MBNF Affiliates, any of their respective Representatives, or any Broad Street Lenders, or (ii) with respect to any professional or advisor of Broad Street PropCo III, including those listed in item 32(a) of Schedule 3(a)(vii) to the MOU, any engagement or services agreement, deliverable or rights thereunder, including any retainer or privileged communication, in which Broad Street PropCo III may have any interest, rights or entitlement, and (b) no power, right or privilege granted by Broad Street PropCo III to CCH pursuant to any Power of Attorney shall be exercised by CCH to demand, request, pursue or otherwise obtain any assets not substantively consolidated with CCH pursuant to the MOU.

The obligations that are secured by the collateral described herein, and by other collateral, are without personal recourse as to the Debtor, as set forth in certain agreements between, among other parties, the Debtor and the Secured Party hereunder.

---

[1]      **Amount represents the balance in the Broad Street PropCos' accounts immediately prior to the first funding under the PAHS Loan Documents.**