```
 1                  UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3  IN RE:                              .  Chapter 11
                                        .  Case No. 19-11466 (MFW)
 4  CENTER CITY HEALTHCARE, LLC,        .
    d/b/a HAHNEMANN UNIVERSITY          .  (Jointly Administered)
 5  HOSPITAL, et al.,                   .
                                        .
 6         Debtors.                     .
                                        .
 7  . . . . . . . . . . . . . . . . . . .
                                        .
 8  CENTER CITY HEALTHCARE, LLC,        .  Adversary Proceeding No.
    d/b/a HAHNEMANN UNIVERSITY          .  21-50920 (MFW)
 9  HOSPITAL, PHILADELPHIA              .
    ACADEMIC HEALTH SYSTEM, LLC,        .
10  ST. CHRISTOPHERS'S HEALTHCARE,      .
    LLC, and SCHC PEDIATRIC             .
11  ASSOCIATES, LLC,                    .
                                        .
12         Plaintiffs,                  .
                                        .
13  v.                                  .
                                        .  Courtroom No. 4
14  MEDLINE INDUSTRIES, INC.,           .  824 Market Street
                                        .  Wilmington, Delaware 19801
15         Defendant.                   .
                                        .  Friday, November 4, 2022
16  . . . . . . . . . . . . . . . . . . .  1:02 p.m.

17
                       TRANSCRIPT OF ZOOM HEARING
18              BEFORE THE HONORABLE MARY F. WALRATH
                    UNITED STATES BANKRUPTCY JUDGE
19

20  Electronically
    Recorded by:           Jermaine Cooper, ECRO
21
    Transcription Service:  Reliable
22                          1007 N. Orange Street
                            Wilmington, Delaware 19801
23                          Telephone: (302) 654-8080
                            E-Mail: gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording:
25  transcript produced by transcription service.
```

```
 1  APPEARANCES:

 2  For the Plaintiffs:        John D. Demmy, Esquire
                                SAUL EWING ARNSTEIN & LEHR, LLP
 3                              1201 North Market Street
                                Suite 2300
 4                              Wilmington, Delaware 19899

 5
    For Defendant, Medline
 6  Industries, Inc.:          Michael A. Kaplan, Esquire
                                LOWENSTEIN SANDLER, LLP
 7                              One Lowenstein Drive
                                Roseland, New Jersey 07068
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

INDEX

| MOTIONS: | PAGE |
|---|---|
| Agenda Item 1: Plaintiffs' Letter to the Honorable Mary F. Walrath Regarding Discovery Dispute [Adversary No. 41; filed: 10/17/22] | 4 |
| Court's Ruling: | 15 |
| Transcriptionists' Certificate | 18 |

1       (Proceedings commenced at 1:02 p.m.)
2              THE COURT:  Good afternoon, this is Judge Walrath.
3  We're here in the Center City case.  This is a discovery
4  dispute.
5              I don't know who wants to go first.  I've got two
6  letters, so maybe the Plaintiffs?
7              MR. DEMMY:  Yes, Your Honor.  Thank you.
8              Good afternoon, may I please the Court?  John
9  Demmy of Saul Ewing, and we are counsel for the Plaintiffs in
10 this adversary proceeding.  It's adversary proceeding 21-
11 50920.
12             First of all, can you hear me okay?
13             THE COURT:  You're kind of fading in and out, so
14 can you --
15             MR. DEMMY:  I will do my best.
16             THE COURT:  Okay.  That's good.
17             MR. DEMMY:  Thank you.
18             So, first of all, thank you for giving us the time
19 today to talk with the Court on one of the last beautiful
20 days of the fall and I know we all want to be here and it's
21 regrettable that we're here on a discovery issue, but we do
22 appreciate the Court giving us this time.
23             And Your Honor's noted the two-page letters that
24 were filed, and I assume Your Honor doesn't need me to recite
25 what's in those letters, so I'll just lay out what the issue

1 is from our perspective.

2 So to go back to the beginning a little bit, Your
3 Honor, earlier in the case, we filed, or served written
4 discovery on Medline.  We asked them the typical questions,
5 for you to identify people with knowledge.  Medline
6 identified nine Medline employees who had knowledge of issues
7 involving this case.

8 We did some document production discovery.  We
9 reviewed the documents and out of those nine, we thought that
10 five were substantially and significantly involved.
11 (Indiscernible) overall, a business relationship between
12 Medline and the Debtors and in the period prior to, and
13 during the 90-day preference period, so we thought they were
14 the appropriate people to depose as we started gearing up for
15 trial and discovery winds down.

16 There is another person, though, Mr. Abrams that
17 I'm sure Your Honor has seen referenced in the letters, he
18 was not identified by Medline among the people with knowledge
19 about issues involving the case.  Curious from our
20 perspective because when you look at the documents that
21 were -- and we provided a sampling of some of those with our
22 letter.

23 It seems pretty clear that Mr. Abrams was,
24 himself, a key actor.  He was involved in communications
25 internally with other Medline personnel and also externally

1  with Debtors' representatives about the business relationship
2  about shipments and payments and holding shipments and credit
3  terms and arranging those terms.
4           So, we had also, in early -- so, I'll fast-forward
5  a little bit.  In early October, we asked Medline to work
6  with us, to schedule the five people who we identified from
7  the nine, plus (indiscernible) for depositions.  I think we
8  first asked on October 4.
9           Eventually, Medline did get back to us on the 14th
10 of October.  We received a letter.  We attached that letter
11 to our October 17th submission to the Court, and Medline
12 said, No, we're not going to -- we don't believe it's
13 appropriate to take this number of depositions.  We'll
14 produce one person for a 30(b)(6) deposition, even though we
15 had nine at Medline.  (Indiscernible) 30(b)(6) designation
16 topics.
17          So, Your Honor, let me just note as a technical
18 matter under the Federal Rules of Civil Procedure, we're
19 nowhere close to the maximum number of depositions that a
20 party can take.  For having (indiscernible), that number
21 is 10, under Federal Rule of Civil Procedure 30.
22          As I said, we tried to do our best to winnow
23 from 9.  We certainly don't want to take 9 or 10 depositions.
24 We winnowed that down to 5, and then we still have Mr. Abrams
25 who makes the sixth.  And we don't think that that's an

1  unreasonable amount of witness depositions for a case of this
2  size and scope, not only in terms of dollar amounts, it's
3  just a fairly large case, but also, the amount of factual
4  issues that are involved in the case.
5  　　　　　With respect to Mr. Abrams, Your Honor, there's a
6  little bit different analysis.  As I said, Medline did not
7  identify him as a person with knowledge and Medline has taken
8  the position that as a high-ranking corporate officer, he
9  should not be deposed, and they cited some cases to that
10 effect.
11 　　　　　But as a general proposition, Your Honor, we don't
12 disagree with the notion that a high-ranking corporate
13 officer, you know, shouldn't be subject to a deposition or
14 whatever you call it, "harassment" or "wasting time" or
15 whatever, simply because he or she is a high-ranking
16 corporate officer.
17 　　　　　Here, it's clear that Mr. Abrams has personal
18 knowledge and even under the apex doctrine that Medline
19 relies upon, if a high-ranking corporate officer has personal
20 knowledge and you can't get the information otherwise, then
21 that person is going to be subject to a deposition and the
22 case that Medline cited recognized that.  And some of those
23 decisions held that the person, or some of the people that
24 were at issue, could, in fact, be deposed.
25 　　　　　And here, it's clear, Your Honor, that Mr. Abrams

1  has personal knowledge of the facts.  Look at the emails that
2  have been produced.  He's involved in decision-making.  He's
3  involved, sometimes, day-to-day, sometimes less frequently
4  than that, but he's making decisions, communicating about
5  credit issues, credit terms, changing plans, shipments,
6  payments, elections, both with -- you know, and also
7  obtaining apparent guaranty, you know, before and during the
8  preference period.
9           He also established communications with Debtors'
10 representatives.  So, clearly, he has personal knowledge and
11 we can't get to his personal knowledge, other than through
12 deposing Mr. Abrams.
13          Ask somebody else, what was Mr. Abrams thinking
14 when he said this?  What was Mr. Abrams thinking when he made
15 this decision?
16          That is going to be, you know, there's evidentiary
17 issues with that.  That other person that, presumably,
18 Medline wants to put up in a deposition, other than
19 Mr. Abrams, doesn't have personal knowledge about why
20 Mr. Abrams said something or why he decided something or why
21 he did something.  You can only get that from Mr. Abrams.
22          So, in short, Your Honor, the apex doctrine just
23 simply doesn't apply here.  And, Your Honor, fundamentally,
24 it's not really been my experience that a party -- let's call
25 this what this is -- Medline is (indiscernible) dictate what

1 they can and can't do over the (indiscernible) in the case.
2 　　　　　And it's certainly not been my experience that
3 that is appropriate.  Clearly, the Court can put limits on
4 discovery.  I don't think that what we're asking for is
5 unreasonable in any way, shape or form, given the size and
6 complexity of the case.
7 　　　　　But I can't allow Medline to dictate to us, we
8 can't depose Mr. Abrams.  You can only depose (indiscernible)
9 and that's, in effect, what Medline's position is, Your
10 Honor.
11 　　　　　I will say, without getting into the back-and-
12 forth, the parties have had some communications about trying
13 to resolve this, but we just couldn't do it and, therefore,
14 we're talking to you now.
15 　　　　　And unless Your Honor has any questions for me or
16 anything, in particular, that you would like me to expand
17 upon, I'm happy to turn it over to Medline's counsel.
18 　　　　　THE COURT:  Well, let me hear from Medline.
19 　　　　　MR. KAPLAN:  Thank you, Your Honor.
20 　　　　　Michael Kaplan from Lowenstein Sandler, on behalf
21 of the Medline.  Hopefully, you can hear me okay, Your Honor?
22 　　　　　THE COURT:  I can.
23 　　　　　MR. KAPLAN:  Thank you, Your Honor.
24 　　　　　So, I appreciate Mr. Demmy's argument and I
25 disagree fundamentally on a couple of points.  Number one,

1  Your Honor, this is not a very substantial and/or complex
2  case.  There's about $4 million that transacted within the
3  preference period.  Three million of that, everyone, I
4  believe, agrees, or will agree because the documents say it,
5  were new value.  We're talking about a million or less
6  dollars and the question will be, you know, whether or not
7  there was some extraordinary effort made to really collect
8  that.
9       So, I certainly disagree on the complexity and I
10 certainly disagree that you need even five depositions in a
11 case where we've got this sort of level of thing.  This is a
12 preference case, Your Honor, which you hear thousands upon
13 thousands of a year, I'm sure, and the majority of the
14 testimony is going to come in from experts and the rest is
15 going to come in from documents and maybe we'll put one
16 witness on in which, so we can figure out, you know, to
17 authenticate the documents or otherwise, but we'll probably
18 reach an agreement there.  So, I disagree on the fundamental
19 nature of the complexity and that, I think, should inform the
20 Court's decision on what is necessary on both sides.
21      Let me turn to the point of Mr. Abrams.  And,
22 certainly, I don't agree with the characterization that we
23 are dictating who can and can't be deposed.  What we have
24 said is, Your Honor, is if they sent us 30(b)(6) deposition
25 topics, we will produce a witness, or witnesses, who are the

1  most knowledgeable about those topics and which will bind the
2  company.  There's nothing unusual about that, at all, Your
3  Honor.  That is, you know, traditionally what we do in civil
4  litigation.
5            And in the event that, for some reason we do not
6  do our jobs, which I know Your Honor would know that we will
7  do our jobs, if our witness that we produce is not up to the
8  task, and there is some other need for a deponent beyond
9  that, then, obviously, that's a different scenario to have.
10 But we haven't even had the 30(b)(6) deposition to determine
11 whether or not they can get all the information.
12           So that, I think, in my mind, Your Honor, answers
13 the question to why we're even talking about individuals on
14 either side when we haven't gotten past the 30(b)(6).  This
15 is -- these are corporations.
16           But I want to turn specifically to Mr. Abrams,
17 because Mr. Abrams' deposition, Your Honor, he's not about
18 learning information from Mr. Abrams.  Mr. Abrams' deposition
19 is about trying to create litigation pressure in order to get
20 parties to settle, in order to resolve what is a, you know,
21 relatively small case.
22           The actual doctrine, the apex doctrine that
23 Mr. Demmy cited, it doesn't just say they have to have
24 personal knowledge.  They have to have personal and unique
25 knowledge is what the doctrine says.

1                And nowhere in Mr. Demmy's argument did you hear
2    anything about why Mr. Abrams may or may not have unique
3    knowledge.  Yes, Mr. Abrams is the chief operating officer.
4    He is copied on emails.  He makes decisions for the company.
5    That's -- I don't think that's news to anybody here.
6                But there's nothing that is unique about his
7    knowledge that, first instance, a 30(b)(6) could not bind the
8    company to.  If one of the 30(b)(6) topics were:  What was
9    Mr. Abrams thinking on X date?  Then, obviously, we're going
10   to have to produce a deponent responsive to that.
11               But the apex doctrine was created to prevent this
12   sort of litigation pressure and litigation tactics so that
13   high-level officers are not dragged into relatively
14   uncomplex, commercial disputes.  And in our view, the
15   Plaintiff has not made any showing whatsoever, certainly not
16   to us, and we don't believe before the Court today, as to why
17   Mr. Abrams should be brought in.
18               Again, we don't think that five deponents, plus
19   Mr. Abrams, are necessary if -- we have said, Your Honor,
20   that we will give you a 30(b)(6) and we will produce one
21   other witness, Ms. Tyler, who certainly has got some
22   knowledge.  And, obviously, Your Honor, if we don't have the
23   information -- if they haven't gotten all the information
24   they need and there is more information that, of course, the
25   ultimate testing, Your Honor, has to be relevant, because

1  just because Mr. Abrams or anyone else may or may not have
2  been thinking something, I don't think Your Honor's
3  particularly interested in what their personal thoughts are
4  one way or another.  I think we just want to get to the facts
5  of the case.
6         So, it just seems to us, Your Honor, that this is
7  an extraordinary, you know, waste of time and resources to be
8  taking five depositions.  I know Mr. Demmy, you know, was
9  kind enough.  He identified four or five witnesses for us who
10 he may call at trial.
11         I mean, we're talking about a million-or-less-
12 dollar preference case in which we may have 10 depositions
13 total or 11 depositions total, I just -- not in my
14 experience, that's what it is.
15         So, our argument, we've outlined in the letters.
16 We think Mr. Abrams is clearly protected by the apex
17 doctrine, at least now, and we believe, you know, will be
18 beyond, since there's been no showing of personal and unique.
19         We would like the Court to instruct the parties to
20 go forward with depositions and we can do corporate designees
21 on each side.  And if Mr. Demmy believes that, you know, one,
22 you know, other individual, two other individuals are
23 absolutely necessary, I don't think I'm going to throw up a
24 fight there, but in terms of what we've said, is that
25 Mr. Abrams is just not someone who should be brought, you

1  know, into this action and we don't believe he's actually
2  being brought in for a proper purpose.
3              And I'm happy to answer any other questions you
4  have, Your Honor, but that's our view.
5              THE COURT:  Any response?
6              MR. DEMMY:  Just very briefly, Your Honor.
7              First, Medline is speculating abolition pressure
8  and I reject that notion.  We are trying to get a case ready
9  for trial and responding to what Medline says the witnesses
10 are in the case.  And depositions may or may not be long,
11 it's not a correlative formula that if you're taking five
12 depositions, they're going to last 40 hours.  They might be
13 shorter than that.  But in any event, this litigation-
14 pressure thing, it's just absolutely conjured up without any
15 evidence at all and I reject it.
16             And, second, Medline is trying to tell us how to
17 do it.  There is no requirement under the Federal Rules that
18 you have to take a 30(b)(6) first or in lieu of any other
19 deposition.  Parties can discover in the order that they
20 think is best and do what they think is best in terms of
21 discovery.
22             And, okay, Mr. Kaplan got into our discussions.  I
23 agree, we had discussions and I agreed we'd limit our
24 witnesses to four.  But there were some things attached to
25 that in connection with the parties not calling any other

1   witnesses and the trial not being sandbagged, not, you know,
2   agreeing to admissibility of documents and so forth.
3              And, you know, we can go have those conversations
4   still, but I think the rock on which this lands is that
5   Medline, under no circumstances, is going to want to produce
6   Mr. Abrams, but he's the guy who is making the decisions.  He
7   was the guy that was having conversations with the Debtors
8   during the development period.
9              And to shield him on the basis of, Well, we'll
10  give you somebody else to depose who may or may not know why
11  those decisions were being made, to me, at this stage of the
12  case, is just inappropriate.
13             That's all I have, Your Honor.  Thank you.
14             THE COURT:  All right.  Well, let me do this.  I
15  agree that parties are free to conduct discovery in the
16  manner in which they wish to do so, but I am convinced that
17  Mr. Abrams need not be produced at this time.
18             I'm not convinced that he has unique and personal
19  knowledge that cannot be found -- that is relevant or can
20  lead to relevant information relating to what appear to be
21  the issues in this case.
22             But I will reserve on any further motion after
23  depositions are taken regarding whether or not that is the
24  case.  And I don't know if the parties have discussed doing
25  depositions by Zoom or some other video, rather than hauling

1  everybody to one place, but that seems to be logical, too,
2  especially if Mr. Demmy, you're correct, and some of these
3  depositions may not last that long.
4              I would urge --
5              MR. DEMMY:  Your Honor --
6              THE COURT:  Go ahead.
7              MR. DEMMY:  I apologize.  I was just going to
8  respond to that.  We're certainly happy to work with Medline
9  in terms of scheduling, whether that's location, you know,
10 dates, video, absolutely all of that is on the table and we
11 want to make this process as streamlined for everybody as
12 possible.  So, I do want to assure the Court and the parties,
13 that we can have those discussions.
14             MR. KAPLAN:  Yeah, Your Honor, we work -- I mean,
15 we may not agree on every point, but Mr. Demmy has been a
16 consummate professional and we've worked well on just about
17 every aspect of the scheduling and logistics, and I have
18 absolutely no doubt that we will continue to do so.
19             I know we're not coming back before you talking
20 about locations, times, or (indiscernible).  We'll get that
21 worked out.
22             THE COURT:  Okay.  All right.
23             Well, with the exception of Mr. Abrams, the
24 parties should continue with their discovery, then.
25             MR. KAPLAN:  Thank you, Your Honor.

```
1              MR. DEMMY:  Thank you, Your Honor.
2              THE COURT:  Thank you.
3              We'll stand adjourned, then.
4         (Proceedings concluded at 1:20 p.m.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

|   |   |   |
|---|---|---|
| 1 | CERTIFICATION | |
| 2 | I certify that the foregoing is a correct | |
| 3 | transcript from the electronic sound recording of the | |
| 4 | proceedings in the above-entitled matter to the best of my | |
| 5 | knowledge and ability. | |
| 6 | | |
| 7 | /s/ William J. Garling | November 9, 2022 |
| 8 | William J. Garling, CET-543 | |
| 9 | Certified Court Transcriptionist | |
| 10 | For Reliable | |