# Exhibit D

## Engagement Letter

January 6, 2023

Mr. Allen Wilen
Chief Restructuring Officer
Center City Healthcare, LLC
c/o EisnerAmper LLP
One Logan Square
130 North 18th Street, Suite 3000
Philadelphia, PA  19103

Dear Mr. Wilen:

This agreement ("Engagement Agreement") will serve as the contract between Center City Healthcare, LLC ("CCH" or "Propco") and SSG Advisors, LLC ("SSG") and Newmark Southern Region, LLC d/b/a Newmark Real Estate ("Newmark") (collectively "Advisors") regarding the retention of Advisors as exclusive investment banker and real estate broker to CCH for the purposes outlined in this Engagement Agreement.  Advisors' responsibilities hereunder involve providing investment banking and real estate brokerage services to CCH on an exclusive basis, focusing on the sale of the Real Estate (as defined below) (the "Sale").

This Engagement Agreement is separate from, and does not supplement, amend, or alter in any way, the Engagement Agreement between SSG and PAHH, RRG, PAHS (the "Company Group"), certain of which, including CCH, subsequently became Debtors before the U.S. Bankruptcy Court for the District of Delaware Case No. 19-11466 (KG) now (MFW) (the "Prior Retention").  SSG's Prior Retention was approved by Order of the Court dated August 2, 2019 [D.I. 229].

A. **Advisors' Role:**

1. **Sale**.  Advisors anticipate that our role in connection with a Sale would include the following:

   - Prepare an information memorandum describing the Real Estate;

   - In consultation with CCH, develop a list of suitable potential buyers who will be contacted on a discreet and confidential basis and only after approval by CCH;

   - Coordinate the execution of confidentiality agreements, in a form approved by CCH, for potential buyers wishing to review the information memorandum;

   - Assist CCH in coordinating site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

300 Barr Harbor Drive, Suite 420  •  West Conshohocken, PA  19428
Phone:  (610) 940-1094  •  Fax:  (610) 940-4719
www.ssgca.com

40958822.8

Mr. Allen Wilen
January 6, 2023
Page 2

- Solicit competitive offers from potential buyers;

- Advise and assist CCH in structuring the Sale(s), as the term is hereafter defined, and negotiating the Sale(s) agreements;

- If requested by CCH and, if necessary, approved by the Bankruptcy Court, conduct an auction of some or all of the Real Estate;

- Provide testimony in connection with any hearings on, or regarding, the Sale(s) and/or the process by which the Sale(s) is/are to be conducted;

- Otherwise assist CCH, its attorneys and advisors, as necessary, through closing on a best efforts basis; and

- Communicate with CCH and the sale process manager (as referenced in Schedule 3(b) to the MOU (as defined below)) on a regular basis regarding inquiries, offers, and the status of negotiations for a Sale.

In performing the services described above, CCH will use commercially reasonable efforts to furnish or cause to be furnished to Advisors such information as Advisors reasonably believe appropriate to the execution of their engagement hereunder (all such information so furnished being the "Information"). CCH represents to Advisors that all Information furnished by it or its agents will, to the best of its knowledge, be complete and correct in all material respects, and that, until the expiration of Advisors' engagement hereunder, it will advise the Advisors promptly of the occurrence of any event or any other change known by it or its agents that results in the Information ceasing to be complete and correct in all material respects. CCH recognizes and confirms that Advisors: (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; (b) does not assume responsibility for accurateness or completeness of the Information; and (c) will not make an appraisal of any of the Real Estate.

CCH agrees that Advisors shall be its exclusive investment banker and real estate broker in connection with any Sale(s) undertaken with respect to the Real Estate during the Engagement Term, as defined below, of this Engagement Agreement. CCH agrees that, during the Engagement Term, Advisors shall have the exclusive authority to initiate and conduct discussions and assist and advise CCH in its negotiations with all prospective purchasers. In that regard, CCH agrees to identify to Advisors: (a) all prospective purchasers who have been in contact with CCH prior to the date hereof; and (b) all prospective purchasers who come in contact with CCH during the Engagement Term.

Advisors will consult with and advise CCH with respect to the financial aspects of any proposed Sales(s), including price, terms and conditions of any Sale(s). Advisors will not, however, have any authority to bind CCH with respect to any proposed Sale(s). Likewise, nothing contained herein shall require CCH to accept the terms of any proposal and CCH shall at all times have the right in his sole and absolute discretion

Mr. Allen Wilen
January 6, 2023
Page 3

B. **Advisors' Compensation**

As compensation for providing the foregoing services, Advisors shall receive the following:

1. Sale Fee. Upon the consummation of Sale(s) to any party, Advisors shall, in the aggregate, be entitled to a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Sale, equal to three percent (3.0%) of Total Consideration (as such term is hereafter defined) up to and including $40,000,000; plus three and one half percent (3.5%) of Total Consideration over $40,000,000 and less than $60,000,000 plus four percent (4.0%) of total Consideration over $60,000,001. Advisors shall each receive one-half of the Sale Fee, with such payments being made at closing(s) to each. By way of example, and for the avoidance of doubt, the Sale Fee for a Sale for Total Consideration of $50,000,000 shall be $1,550,000, calculated as follows: first $40,000,000 x 3.00% = $1,200,000 Sale Fee *plus* next $10,000,000 x 3.5% = $350,000 Sale Fee, for a total Sale Fee of $1,550,000.

2. In addition to the foregoing Sale Fee noted above whether or not a Sale(s) is consummated, Advisors will be entitled to reimbursement for all of Advisors' reasonable, documented, out-of-pocket third-party expenses, including but not limited to reasonable legal expenses and travel costs incurred in connection with the subject matter of this Engagement Agreement provided, however, that Advisors shall obtain prior written approval for any individual expense in excess of $5,000 and all expenses in excess of $20,000.

C. **Definitions**

For the purpose of this Engagement Agreement:

**Real Estate** means the properties set forth below:

40958822.8

Mr. Allen Wilen
January 6, 2023
Page 4

| Property Name | Philadelphia, PA Address | OPA |
|---|---|---|
| North Tower, South Tower | 222-248 N. Broad Street | 772025002 |
| (Land next to SHSH Building) | 221-223 N. 15th Street | 772028498 |
| Stiles Alumni Hall Underground | 325 N. 15th Street | 881038202 |
| Martinelli Park | 300-304 N. Broad Street | 885620242 |
| (redevelopment land/surface parking) (city block) | 200-214 N. Broad Street | 885467862 |
| SHSH Building (city block) | 201-219 N. 15th Street | 772028496 |

**Sale Transaction** means and includes any Sale or series of Sales of separate parcels of the Real Estate or as a whole of the Real Estate.

**Total Consideration** shall mean the purchase price paid for the Real Estate in separate parcels or as a whole or the assumption or payoff of indebtedness (including capitalized lease obligations) by the acquirer(s).

For purposes of computing any fees payable to Advisors hereunder, non-cash consideration shall be valued as set forth in the definitive agreement related to such transaction and if not set forth therein shall be valued as follows: (a) publicly traded securities shall be valued at the average of their closing prices (as reported in <u>The Wall Street Journal</u>) for the five (5) trading days prior to the closing of the Sale Transaction; and (b) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by CCH and Advisors. If such aggregate consideration may be increased by contingent payments such as an "earnout" or other monetary agreement in the transaction, the portion of Advisors' fee relating thereto shall be calculated and paid when and as such contingent payments or other monetary amounts are received.

D. **Term of Engagement**

This Engagement Agreement shall remain in force (the "Engagement Term") for a period of six (6) months from the date of signing this Engagement Agreement and may thereafter be terminated by either CCH or both of the Advisors upon thirty (30) days prior written notice to the other. Upon termination of this Engagement, Advisors shall provide to CCH a written list of all potential buyers who (i) were previously approved by CCH and contacted by Advisors during the Engagement Term and (ii) received information regarding a Sale(s) from Advisors or CCH. Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that: (a) termination of the Engagement Agreement shall not affect Advisors' right to indemnification under the Indemnification section below; (b) CCH shall remain obligated to reimburse Advisors for any expenses incurred through the date of the termination of the Engagement Agreement; and (c) if a Sale(s) is

40958822.8

Mr. Allen Wilen
January 6, 2023
Page 5

consummated pursuant to a contract of sale entered into within six (6) months ("Trailer Term") of the termination of this Engagement Agreement to any of those parties listed pursuant to clauses (i) and (ii) above CCH shall remain obligated to pay a Sale Fee, as calculated above. Sections B, D, E, F and G (entitled Compensation, Term of Engagement, Indemnification, Miscellaneous, and Scope of Duties, respectively) of this Engagement Agreement shall survive until the later of (i) two years after the expiration or termination of this Engagement Agreement or (ii) the closing of CCH's bankruptcy case.

E. **Indemnification**

CCH hereby acknowledges and agrees to the indemnification arrangements between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

F. **Miscellaneous**

No fee payable to any other financial advisor or finder by CCH or any other party in connection with the subject matter of this Engagement Agreement shall reduce or otherwise affect any fee payable to Advisors hereunder. This Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties hereto other as set forth above with respect to SSG's Prior Retention which remains in full force and effect; provided, however, for the avoidance of doubt, that SSG shall not be entitled to earn any amount, fee, commission or other compensation under the Prior Retention for its services under the within Engagement Agreement. This Engagement Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by the parties. The benefits of this Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Engagement Agreement by the parties hereto shall be binding upon their respective successors and assigns.

Neither CCH or Advisors will compensate any third party broker(s) in connection with the Sale(s) of any part, parcel or the whole of the Real Estate. All offerings and marketing documents prepared by Advisors will contain a statement that any third party broker(s) will look solely to their respective potential buyer for a commission, fee, or other compensation in connection with the Sale(s).

Advisors shall not and may not represent any potential buyers or any potential buyer's lenders or other financing or funding sources, in any capacity in connection with any Sale. In addition, Advisors shall not and may not represent any party that may be subject to a unity of use, easement, right of first refusal and/or right of first offer agreement regarding any of the Real Estate.

The Engagement of Advisors requires Advisors to work as a cohesive team. All references in this Agreement to "Advisors" shall refer to SSG and Newmark both singly and jointly, provided that the liability of each firm for its own actions is individual not joint. SSG and Newmark shall establish and comply with mutually agreed-upon protocols to perform their obligations hereunder, which protocols shall include, without limitation, the coordination of all

40958822.8

Mr. Allen Wilen
January 6, 2023
Page 6

activities required or desirable hereunder and the provision to each other full, complete and timely cooperation and communication with respect to all activities performed in connection with this Engagement Agreement.

The parties acknowledge that Advisors are not responsible to determine whether toxic or hazardous wastes or substances or other undesirable materials are present at the Real Estate. CCH acknowledges that it is solely its responsibility to conduct any required investigations to determine the presence of such materials at the Real Estate. Advisors shall have no responsibility or liability for any information regarding such toxic or hazardous wastes or substances or other undesirable materials provided to it by CCH.

This Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Engagement Agreement.

G. **Scope of Duties**

CCH hereby acknowledges and agrees that: (a) he has retained Advisors for the purposes set forth in this Engagement Agreement and that the rights and obligations of the parties hereto are contractual in nature; and (b) Advisors have not made any warranties or guarantees of any nature with respect to the success or satisfactory conclusion of any Sale(s) or as to the economic, financial or other results which may be obtained or experienced by CCH as a result thereof.

H. **Bankruptcy Cases**

Advisors acknowledge that:

1. the Real Estate has been substantively consolidated with the bankruptcy estate of CCH pursuant to the *Memorandum of Understanding Re Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities and CONA Parties (the "***MOU***")*, as approved by the Bankruptcy Court by Order entered August 29, 2022 [Docket No. 4216] (the "**MOU Approval Order**").

2. this Engagement Agreement and all terms and conditions contained herein is subject to and conditioned upon approval of the U.S. Bankruptcy Court for the District of Delaware, Case No. 19-11466 (MFW).

3. **CCH's authority to approve any proposed Sale of any of the Real Estate shall be subject to the terms of Schedule 3(b) to the MOU;**

4. **any Sale of all or a portion of the Real Estate shall be subject to approval of the Bankruptcy Court; and**

5. **the payment of any amounts hereunder, including fees, compensation, and reimbursement of expenses, to the Advisors shall be subject to approval of the Bankruptcy Court in accordance with the Bankruptcy Code, including without limitation sections 328(a), 330 and 331 thereof, and the Federal Rules of Bankruptcy Procedure**.

Mr. Allen Wilen
January 6, 2023
Page 7

I. **Other Matters**

CCH agrees that each of the Advisors has the right, following the Sale(s), to place advertisements, emails, and social media posts of a "tombstone" type nature in financial and other newspapers and journals at its own expense describing its services to CCH hereunder.

In accordance with the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001), SSG is required to obtain, verify and record information that identifies its clients, which information may include the name and address of CCH and its senior management team as well as other information that will allow Advisors to properly identify its clients.  Additionally, SSG maintains important disclosures on the web site www.ssgca.com.  These disclosures may be updated periodically on an as-needed basis.  CCH agrees to accept and receive all of these disclosures by electronically accessing the website referenced above and acknowledges that printed hard copies of these disclosures are available upon request by contacting Advisors directly at (610) 940-1094.

J. **Securities and Real Estate Platform**

All transactions involving the sale or purchase of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under) are offered through SSG Capital Advisors, LLC, a Pennsylvania limited liability company. ("SCA"), an affiliated Pennsylvania corporation and registered Broker-Dealer in good standing with the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC").  Principals of SSG, including J. Scott Victor, are registered representatives of SCA.  Therefore, SCA is included collectively as "SSG" with all the rights and obligations thereto under the terms of this Engagement Agreement.

To the extent a Sale Fee is payable to SSG in connection with Transaction constituting the purchase or sale of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under), such Transaction Fee shall be specifically paid to SCA.  Under no circumstance will Company be obligated to pay a fee in an aggregate amount in excess of the amount provided in this Engagement Agreement.  Payment of the fee to SCA shall constitute and be deemed payment of the fee in this Engagement Agreement.

Newmark Southern Region, LLC, a Georgia limited liability company, does business as Newmark Real Estate, which is a real estate broker duly licensed by the Commonwealth of Pennsylvania and David Dolan is the real estate broker of record.

The Real Estate Recovery Fund (the "Fund") exists to reimburse a person who has obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting legal and equitable remedies.  For complete details about the Fund, call (717) 783-3658.

Mr. Allen Wilen
January 6, 2023
Page 8

K. **Notices**

All notices or communication required under this Engagement Agreement shall be delivered in writing by email, personal delivery, nationally recognized overnight courier service or by registered or certified mail, return receipt requested, addressed to the parties as set forth below:

1. **CCH**

    Allen Wilen
    Chief Restructuring Officer of CCH
    c/o EisnerAmper LLP
    One Logan Square
    130 North 18th Street, Suite 3000
    Philadelphia, PA  19103
    Allen.wilen@americanacademic.com

2. **Counsel to CCH**

    Jeffrey Hampton, Esq.
    Adam Isenberg, Esq.
    Saul Ewing LLP
    1500 Market Street
    Centre Square West, 38th Floor
    Philadelphia, PA  19102
    Jeffrey.hampton@saul.com
    Adam.isenberg@saul.com

3. **SSG**

    J. Scott Victor
    SSG Advisors, LLC
    300 Barr Harbor Drive, Suite 420
    West Conshohocken, PA  19428
    jsvictor@ssgca.com

4. **Newmark Real Estate**

    Jeff Tertel
    David Dolan
    Newmark Southern Region, LLC d/b/a Newmark Real Estate
    2005 Market Street, Suite 900
    Philadelphia, PA  19103
    Jeffrey.tertel@nmrk.com
    David.dolan@nmrk.com

40958822.8

Mr. Allen Wilen
January 6, 2023
Page 9

      **5. Counsel to Newmark Real Estate**

         General Counsel's Office
         Newmark Real Estate
         125 Park Avenue
         New York, NY  10017

Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning this Engagement Agreement.

**SSG ADVISORS, LLC**

By: _____*/s/ J. Scott Victor*_____
     J. Scott Victor
     Managing Director

**NEWMARK SOUTHERN REGION, LLC D/B/A NEWMARK REAL ESTATE**

By: _____
     David Dolan
     Broker of Record

ACCEPTED:

**CENTER CITY HEALTHCARE, LLC**

By: _____     _____
     Allen Wilen                                Date
     Chief Restructuring Officer

Mr. Allen Wilen
January 6, 2023
Page 9

### 5. Counsel to Newmark Real Estate

General Counsel's Office
Newmark Real Estate
125 Park Avenue
New York, NY 10017

Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning this Engagement Agreement.

**SSG ADVISORS, LLC**

By: _____
J. Scott Victor
Managing Director

**NEWMARK SOUTHERN REGION, LLC D/B/A NEWMARK REAL ESTATE**

By: *[signature]*
David Dolan
Broker of Record

ACCEPTED:

**CENTER CITY HEALTHCARE, LLC**

By: _____    _____
Allen Wilen                                                                Date
Chief Restructuring Officer

40958822.8

Mr. Allen Wilen
January 6, 2023
Page 9

      **5. Counsel to Newmark Real Estate**

          General Counsel's Office
          Newmark Real Estate
          125 Park Avenue
          New York, NY  10017

Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning this Engagement Agreement.

**SSG ADVISORS, LLC**

By: _____
     J. Scott Victor
     Managing Director

**NEWMARK SOUTHERN REGION, LLC D/B/A NEWMARK REAL ESTATE**

By: _____
     David Dolan
     Broker of Record

ACCEPTED:

**CENTER CITY HEALTHCARE, LLC**

By: *[signature]* _____      January 6, 2023 _____
     Allen Wilen                                                 Date
     Chief Restructuring Officer

Mr. Allen Wilen
January 6, 2023
Page 10

## ATTACHMENT A
## INDEMNIFICATION PROVISIONS

CCH agrees to indemnify, defend and hold harmless SSG and SCA and Newmark Real Estate and its affiliates, the respective partners, members, directors, officers, agents and employees of SSG and Newmark Real Estate and its affiliates and each other person, if any, controlling SSG and Newmark Real Estate or its affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to Advisors' acting for CCH under the Engagement Agreement of which this Attachment A forms a part, including, without limitation, in connection with any act or omission by Advisors related to its engagement under the Engagement Agreement. CCH will reimburse the Indemnified Parties for any legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto; provided, however, that CCH shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted primarily from any Advisor's gross negligence, bad faith or willful misconduct in the performance of its duties under said Engagement Agreement. Any amounts paid to an Advisor found to have been guilty of gross negligence, bad faith or willful misconduct prior to such finding shall be returned to CCH by such Advisor.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement.

40958822.8