# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 19-11466 (MFW)<br><br>(Jointly Administered) |
| Center City Healthcare, LLC d/b/a Hahnemann University Hospital, Philadelphia Academic Health System, LLC, St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, HPS of Pa, L.L.C., SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., TPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., TPA IV of PA L.L.C. and TPS V of PA, L.L.C.,<br><br>                  Plaintiffs,<br><br>v.<br><br>Huron Consulting Services LLC,<br><br>                  Defendant.<br><br>Huron Consulting Services LLC,<br><br>                  Third Party Plaintiff,<br><br>v.<br><br>Paladin Healthcare Capital, LLC,<br><br>                  Third-Party Defendant. | Adv. Proc. No. 22-50263 (MFW)<br><br><br><br><br><br><br><br><br><br><br><br><br><br>**Objection Deadline: January 17, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: January 24, 2023 at 10:30 a.m. (ET)** |

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 216 North Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND HURON CONSULTING SERVICES, LLC AND HURON CONSULTING GROUP, INC.**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby move this Court (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("the "**Bankruptcy Rules**"), approving the Settlement Agreement, a copy of which is attached to the Proposed Order as **Exhibit 1** (the "**Settlement Agreement**"), between the Debtors and Huron Consulting Services, LLC ("**HCS**") and Huron Consulting Group Inc. (collectively with HCS, "**Huron**"). In support of this Motion, the Debtors rely upon the *Declaration of Allen Wilen in Support of Motion of the Debtors for Entry of an Order Approving Settlement Agreement between the Debtors and Huron Consulting Services, LLP* and Huron Consulting Group Inc. attached hereto as **Exhibit B** (the "**Wilen Declaration**"), and respectfully state as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to entry of a

final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief sought herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

5. On June 30 or July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. A description of the Debtors' businesses as of the Petition Date and the reasons for commencing these Chapter 11 Cases are set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2].

7. Prior to the Petition Date, HCS entered into an engagement agreement (the "**Original Engagement Letter**") with non-debtor Paladin Healthcare Capital, LLC ("**Paladin**") to provide certain consulting services related to the proposed transaction (the "**ASA Transaction**") pursuant to which (i) the Debtors would eventually acquire, *inter alia*, their hospital businesses and (ii) certain entities controlled by Philadelphia Academic Health Holdings, LLC, and certain entities controlled by affiliates of Harrison Street Real Estate Capital LLC, would acquire certain real estate from Tenet Business Services Corporation and certain of its affiliates. The ASA Transaction closed on January 11, 2018 (the "**Closing**").

8. Following the Closing, HCS and the principals of Paladin and the Debtors engaged in discussions and negotiations concerning HCS' fees and expenses and eventually entered into a First Amendment to Engagement Letter dated April 6, 2018 (the "**Amended Engagement Letter**"), under which the parties agreed that the total professional fees and expenses owed to HCS for the Project Liberty Transaction would be reduced to $620,458.79 (the "**Reduced Huron Project Liberty Fees**").

9. On April 9, 2018, HCS issued Invoice #1111712 to Paladin for the amount of the Reduced Huron Project Liberty Fees.

10. While the Amended Engagement Letter required the Reduced Huron Project Liberty Fees to be paid within thirty (30) days following the effective date of the Amended Engagement Letter, the parties later agreed that such amount would be paid in installments.

11. The Debtors eventually paid HCS all Reduced Huron Project Liberty Fees, as follows (the "**Transfers**"):

| Wire Number   | Transfer  | Clear Date | Invoice Number | Invoice Date |
|---------------|-----------|------------|----------------|--------------|
| WT Fed#02911  | $155,115  | 07/30/2018 | 1111712        | 04/09/2018   |
| WT Fed#07489  | $155,115  | 08/29/2018 |                |              |
| WT Fed#07611  | $155,113  | 09/28/2018 |                |              |
| WT Fed#06649  | $155,116  | 10/24/2018 |                |              |

12. On April 14, 2022, the Debtors filed a complaint against HCS instituting Adversary Proceeding No. 22-50263 (MFW) (the "**Adversary Proceeding**"), which was later amended on June 15, 2022 (the "**Amended Complaint**"), seeking the avoidance and recovery the Transfers as alleged constructive fraudulent transfers pursuant to sections 548 and 550 of the Bankruptcy Code (the "**Alleged Claims**").

13. On June 29, 2022, Huron filed its answer to the Amended Complaint, denied any liability with respect to the Transfers and asserting various defenses to the Alleged Claims.

14. On July 1, 2022, HCS filed an Amended Third-Party Complaint (the "**Third-Party Complaint**") in the Adversary Proceeding against Paladin Healthcare Capital, LLC.

15. The Debtors and Huron have exchanged information and engaged in good faith, arms-length negotiations in an attempt to resolve the Alleged Claims included in the Adversary Proceeding.

16. Subject to Court approval, the Debtors and Huron now desire to resolve the Alleged Claims set forth in the Adversary Proceeding without the time, expense and uncertainty attendant with litigation over such issues on the terms set forth in the Settlement Agreement.

17. The Settlement Agreement, which is subject to Court approval by "Final Order"[2] provides, generally, that:[3]

- Huron shall pay the Debtors $135,000 (the "**Settlement Amount**").

- Subject to the Debtors' receipt of the Settlement Payment in good funds, the Debtors shall (a) release and discharge Huron from any and all claims, liabilities, and causes of action, whether known or unknown, and (b) release and discharge Huron's Representatives[4] from any and all claims, liabilities, and causes of action, whether known or unknown, of any nature or type relating to the Transfers, the services provided by Huron related to the Transfers and the payment of the Settlement Amount. Further, the Debtor Releasing Parties covenant and agree not to file or pursue any of the foregoing released claims relating to Huron or Huron's respective Representatives.

---

[2] Under the Settlement Agreement, an order is considered to be a "Final Order" if the order is not subject to any timely appeal or motion for reconsideration.

[3] This description of the Settlement Agreement is meant only to be a summary of the key provisions of the Settlement Agreement. To the extent there is any inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall control.

[4] The term "**Representatives**" means a person's or an entities' current and former members, partners, principals, owners, parent companies, subsidiaries, affiliates, officers, directors, agents, employees, representatives, attorneys, administrators, retained professionals, independent contractors, predecessors, insurers, successors and assigns.

- Huron shall (a) release and discharge the Debtors and the Estates from any and all claims, liabilities, and causes of action, whether known or unknown, and (b) release and discharge the Debtors' Representatives from any and all claims, liabilities, and causes of action, whether known or unknown, of any nature or type relating to the Transfers, the services provided by Huron related to the Transfers and the payment of the Settlement Amount.  Further, the Huron Releasing Parties covenant and agree not to file or pursue any claims relating to the Debtors against the Debtors, the Estates or the Debtors' respective Representatives in the Debtors' Bankruptcy Case, or otherwise.

- Huron will release and discharge the MBNF Parties[5] and each of the MBNF Parties' Representatives from any and all claims or assertable claims arising from the Amended Complaint or the Debtors' pursuit of any other claims or assertable claims against the Huron Releasing Parties under Chapter 5 of the Bankruptcy Code or similar state statutes.  Further, the Huron Releasing Parties covenant and agree not to file or pursue any of the foregoing released claims against any of the MBNF Parties or their respective Representatives. The MBNF Parties and their respective Representatives are intended and express third-party beneficiaries of section 5 of the Settlement Agreement.

- Notwithstanding the releases set forth in the Settlement Agreement, Huron has reserved the right to assert any claims released in the Settlement Agreement as defenses, including setoff and dismissal, against any person or entity that asserts claims against Huron arising from the same or related facts and circumstances as the claims released by Huron in the Settlement Agreement.

- The Debtors and the Estates covenant and agree they have not and will not, as part of the Chapter 11 Cases, abandon any claims, liabilities, or causes of action, whether known or unknown, of any nature or type against Huron and its Representatives.

- The Adversary Proceeding, including the Third-Party Complaint, will be dismissed with prejudice and without costs.

---

[5] The "MBNF Parties" are Joel Freedman, Stella Freedman, Svetlana Attestatova, Kyle Schmidt, MBNF Investments, LLC, AAHS, PAHH, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin, Paladin Healthcare Management, LLC, Paladin Capital and Globe Health Foundation, Inc.

**RELIEF REQUESTED**

18. By this Motion, the Debtors seek the entry of an Order, pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(a), substantially in the form of the Proposed Order, (i) approving the Settlement Agreement and (ii) granting such other and further relief as this Court deems just and proper.

**BASIS FOR RELIEF REQUESTED**

19. Bankruptcy Code section 105(a) provides, in pertinent part, that "the court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *See* 11 U.S.C. § 105(a). In addition, Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

20. Settlements and compromises are "a normal part" of the chapter 11 process. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Indeed, "compromises are favored in bankruptcy" because they minimize litigation and expedite the administration of a bankruptcy estate. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Key3Media Group, Inc.*, No. 03–10323 (MFW), 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).

21. In considering a Bankruptcy Rule 9019(a) motion, a court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *E.g.*, *Martin*, 91 F.3d at 393. Assessing this balance includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also In re Nutraquest, Inc.*, 434 F.3d 639, 644-45 (3d Cir. 2006).

22. Notably, in determining whether to approve a proposed settlement, courts should not determine whether the debtor is getting the best possible settlement, but rather whether the compromise is reasonable. *See In re Integrated Health Services, Inc.*, Case No. 00-398 (MFW), 2001 WL 1820426, at *2 (Bankr. D. Del. Jan. 3, 2001) (explaining that in approving a settlement, a court is not to determine that the settlement is the best that can be achieved by the debtor but "rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness'").

23. Moreover, when deciding whether to approve a compromise, a court will normally accept the judgment of the movant as long as a legitimate business justification exists. *E.g.*, *Martin*, 91 F.3d at 395; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 250 (D. Del. 1998); *see also In re Penn Central Transportation Co.*, 347 F. Supp. 1351, 1353 (E.D. Pa. 1972) (approving settlement agreement as reflection of business judgment).  Once a debtor has articulated a valid business justification for a settlement, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

24. Applying the foregoing standards to the present case, the Debtors have concluded, in a proper exercise of their business judgment, that the agreement embodied in the Settlement Agreement is fair, reasonable and in the best interests of their estates and creditors.  The Settlement Agreement also satisfies the *Martin* factors set forth above.

25. First, the factor of "probability of success in litigation" is satisfied in the present case. While the Debtors feel strongly that they would ultimate prevail in the Adversary Proceeding regarding the Alleged Claims, the outcome of litigation is never certain and the compromise set forth in the Settlement Agreement is an appropriate resolution of the Alleged Claims, taking into account the defenses asserted by Huron, which includes Huron's assertions (which are disputed by the Debtors) that: (a) the Debtors were not insolvent or inadequately capitalized at the time of the Transfers; and (b) the Debtors received reasonably equivalent value in exchange for the Transfers.

26. Next, the third *Martin* factor[6] is clearly met in the present case. The Alleged Claims implicate issues of insolvency, inadequate capitalization and reasonably equivalent value, all of which are factually and legally complex. The complexity of these issues is reflected in the Settlement Agreement. Further, the costs and delay associated with litigation are appropriately accounted for in the compromise of the Alleged Claims.

27. Lastly, the fourth *Martin* factor - i.e. the paramount interest of the Debtors' creditors - is satisfied in the present case. The Debtors' creditors will clearly benefit from the prompt payment of the Settlement Payment without further costs and delay.

28. Based upon the foregoing, there can be no question that the settlement embodied in the Settlement Agreement does not "fall below the lowest point in the range of reasonableness." *Integrated Health*, 2001 WL 1820426, at *2 (*quoting Cosoff v. Rodman (In re WW.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)). The Settlement Agreement is the result of substantial good faith, arm's length negotiations between the Debtors and Huron and constitutes

---

[6] The second *Martin* factor – i.e. the likely difficulty in collection – does not appear to be an issue with C&M.

a reasonable exercise of the Debtors' business judgment. Accordingly, this Court should exercise its discretion and approve the Settlement Agreement.

## NOTICE

29. Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the Official Committee of Unsecured Creditors; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Health; (xi) the City of Philadelphia; (xii) counsel to Huron; (xiii) counsel to the MBNF Parties; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the Motion, approving the Settlement Agreement, and granting such other and further relief as is just and proper.

Dated: January 9, 2023            **SAUL EWING LLP**

By: */s/ Mark Minuti*
    Mark Minuti (DE Bar No. 2659)
    Monique B. DiSabatino (DE Bar No. 6027)
    1201 N. Market Street, Suite 2300
    P.O. Box 1266
    Wilmington, DE 19899
    Telephone: (302) 421-6840
    Fax: (302) 421-6813
    mark.minuti@saul.com
    monique.disabatino@saul.com

          -and-

    Jeffrey C. Hampton
    Adam H. Isenberg
    Centre Square West
    1500 Market Street, 38th Floor
    Philadelphia, PA 19102
    Telephone: (215) 972-7777
    Fax: (215) 972-7725
    jeffrey.hampton@saul.com
    adam.isenberg@saul.com

*Counsel for Debtors and Debtors in Possession*