**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a<br>HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>　　　　　　　　　Debtors. | ) Chapter 11<br>)<br>)<br>) Case No. 19-11466 (MFW)<br>)<br>) Jointly Administered<br>)<br>) **Objection Deadline: February 2, 2023 by 4:00 p.m.**<br>) **Hearing Date: February 9, 2023 @ 10:30 a.m.** |

**DEBTORS' MOTION FOR ORDER:  (I) ENFORCING THE AUTOMATIC STAY AGAINST IRONSTONE REAL ESTATE PARTNERS, IS BBFB LLC AND IS 245 NORTH 15TH LLC; AND (II) AWARDING DAMAGES FOR DEBTORS AND AGAINST IRONSTONE REAL ESTATE PARTNERS, IS BBFB LLC AND IS 245 NORTH 15TH LLC FOR THEIR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby move this Court (the "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to 11 U.S.C. §§ 105(a) and 362 of title 11 of the United States Code (the "**Bankruptcy Code**"), finding that Ironstone Real Estate Partners, IS BBFB LLC and IS 245 North 15th LLC (collectively, "**Ironstone**") have willfully violated section 362(a)(3) the Bankruptcy Code as a result of their demolition, construction activity and related actions on the CCH Real Estate (as defined below), prohibiting Ironstone from taking any further such actions, and awarding damages

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).   The Debtors' mailing address is 216 N. Broad Street, 4th Floor, Philadelphia, Pennsylvania 19102.

to the Debtors for Ironstone's willful violations of the automatic stay including, without limitation, the attorneys' fees and costs that the Debtors have incurred as a result of Ironstone's willful actions, and in prosecuting the Motion. In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. As a result of the Debtors' global settlement with, among other parties, the Broad Street PropCos (as defined below), the Broad Street PropCos' real estate was substantively consolidated with the estate of CCH. This real estate is in Center City Philadelphia, and comprises much of the square block generally bounded by Broad Street on the east, 15th Street on the west, Race Street on the south and Vine Street on the north. Such real estate consists of the buildings and surface areas as depicted on **Exhibit B** attached hereto as follows: (i) the "North Tower" and "South Tower" buildings (Lot A); (ii) a large surface parking lot on the corner of Broad and Race Streets (Lot D); (iii), a building known as the "SHSH building" on the corner of 15th and Race Streets, together with a small adjacent parking lot and two access ramps, one of which leads to such parking lot and the other of which leads to an underground storage area and loading dock (Lot E); and (iv) a small parcel on 15th Street between Lots E and B (Lot F) (collectively, the "**CCH Real Estate**")[1].

2. Ironstone owns Lot B and Lot C shown on **Exhibit B**. Ironstone acquired Lot B and Lot C in the summer of 2021 and at all times relevant to this Motion was aware of the pendency of the Debtors' bankruptcy cases and CCH's interest in the CCH Real Estate. Among other things, it was served with, and filed an objection to, the Debtors' motion to approve the Memorandum of Understanding by which the CCH Real Estate was substantively consolidated with the CCH

---

[1] Under the terms of the referenced global settlement, certain other real estate titled in the name of one or more of the Broad Street PropCos, but north of Vine Street, in Center City Philadelphia, also was substantively consolidated with CCH. This real estate is not the subject of this motion.

bankruptcy estate. *See, e.g.*, *Objection of IS BBFB LLC and IS 245 North 15th Street LLC to Debtors' Motion for Orders Approving Memorandum of Understanding re Global Settlement* [D. I. 4184].

3. The global settlement resolved disputes over, among other things, the Debtors' interest in the CCH Real Estate and provides the Debtors the right to manage, market, sell and retain the value of the Real Estate, subject to among other things a sharing of the proceeds of sale with others in accordance with the terms of the global settlement.

4. Despite written notice and objections from, and warning by, the Debtors that it was interfering with the Debtors' rights in the CCH Real Estate, Ironstone took action and has indicated that it intends to continue taking action in connection with the CCH Real Estate. Specifically, Ironstone has: (i) begun the demolition of a portion of certain walls and the complete demolition of a sidewalk on the CCH Real Estate, (ii) begun to repave a ramp and a parking lot on the CCH Real Estate; and (iii) evidenced an intent to exercise primary control over portions of the CCH Real Estate. Ironstone's actions and continued threatened actions violate the automatic stay of section 362(a)(3) of the Bankruptcy Code, as it has exercised and intends to continue to exercise control over property of the Debtors' estates.

5. Ironstone contends that it has the right to take the actions described above under an easement agreement entered into in 2018, but such agreement simply does not provide any such authority.

6. Ironstone's actions to date in exercising control over portions of the CCH Real Estate will interfere with Debtors' marketing of the CCH Real Estate and negatively impact the Debtors' ability to maximize the value of the CCH Real Estate.

7. Despite demand, Ironstone has refused to cease and desist in its actions. To the contrary, Ironstone has given every indication that it intends to continue with its improper activities, despite the Debtors' unambiguous objections. Accordingly, the Debtors seek this Court's intervention, both to enforce the automatic stay and to award damages against Ironstone for its intentional violations of the automatic stay to date.

## JURISDICTION AND VENUE

8. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

10. On June 30 and July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11. A description of the Debtors' businesses as of the Petition Date is set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2].

**The CCH Real Estate**

12. Subsequent to the Petition Date, the Debtors engaged in numerous tasks, including investigating potential claims and causes of actions against various parties. On June 29, 2021, the Debtors filed under seal a multiple-count complaint instituting Adversary Proceeding No. 21-50991 (MFW) against certain co-called "MBNF Parties" including Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC and Broad Street Healthcare Properties III, LLC (collectively, the "**Broad Street PropCos**"). On June 29, 2021, the Debtors also filed under seal a multiple-count complaint instituting Adversary Proceeding No. 21-50993 (MFW) against Harrison Street Real Estate ("**HSRE**") and various of its affiliates and other parties. Each of these Adversary Proceedings was stayed while the Debtors, the applicable defendants and certain other parties mediated their disputes before The Honorable Kevin J. Carey (ret.).

13. The foregoing mediation resulted in a "Memorandum of Understanding" ("**MOU**") among the parties, which was approved by the Court by its Order entered August 29, 2022. *See Order (I) Approving Memorandum of Understanding Re Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities and CONA Parties, Which Provides For, Inter Alia, Resolution of Adversary Proceedings, Withdrawal Of Claims, Allocation and Distribution of Assets From RRG and Consensual Substantive Consolidation of Certain Assets, Contracts and Liabilities of Non-Debtor Broad Street PropCos With Debtor Center City Healthcare, LLC, and Granting Related Relief; and (II) Approving Related Settlement Agreement and Release With Travelers Casualty and Surety Company of America* [D.I. 4216] (the "**MOU Order**").

14. Pursuant to the MOU Order and the settlement approved therein, the following parcels of real estate, which as of the Petition Date were titled in the names of Broad Street PropCo entities, were substantively consolidated with the estate of Debtor CCH:

| Property Name | Philadelphia, PA Address | OPA |
|---|---|---|
| North Tower, South Tower | 222-248 N. Broad Street | 772025002 |
| (Land next to SHSH Building) | 221-223 N. 15th Street | 772028498 |
| Stiles Alumni Hall Underground | 325 N. 15th Street | 881038202 |
| Martinelli Park | 300-304 N. Broad Street | 885620242 |
| (redevelopment land/surface parking) (city block) | 200-214 N. Broad Street | 885467862 |
| SHSH Building | 201-219 N. 15th Street | 772028496 |

15. As further set forth therein, the MOU contemplates, among other things, the marketing and sale of the foregoing real estate and the sharing of its net sale proceeds among the Debtors and certain of the other parties to the MOU. Moreover, certain decisions regarding the real estate are to be made by an "Oversight Committee" created under the MOU. Per Schedule 3(b) of the MOU, the Oversight Committee consists of three constituents: (i) the Debtors/Committee; (ii) HSRE; and (iii) Tenet Business Services Corporation ("**Tenet**").

16. Ironstone acquired Lots B and C in the Summer of 2021 from entities primarily owned and/or controlled by HSRE.

**Ironstone's Willful Violation of the Automatic Stay**

17. Ironstone is in the process of developing certain of its property, including the redevelopment of the property formerly known as the Bobst Building into a project known as "Race Street Labs," which is located on Lot C. In such regard, and as noted in brief above, Ironstone's activities with respect to its redevelopment plan have resulted in a series of trespasses

6

onto and alterations of the CCH Real Estate, some of which continue and some of which involve demolition and construction of elements – such as wall cladding, lighting, repaving and the demolition of a sidewalk – located on the CCH Real Estate. Ironstone also has commenced with its plan, including repaving of CCH's Lot E (which is part of the CCH Real Estate), notwithstanding the lack of consent and written objections received from the Debtors and the Debtors' cease and desist demand.

18.   A rendering included on Ironstone's Race Street Labs website (www.racestreetlabs.com), a copy of which is attached hereto at **Exhibit C**, makes clear that Ironstone intends to exercise control over the CCH Real Estate through, among other things, further paving, construction and the installation of signage, all on the CCH Real Estate.[2]

19.   Preceded by numerous e-mail and oral requests for Ironstone to cease and desist, on December 9, 2022, the Debtors' counsel sent the formal demand attached hereto as **Exhibit D**.

20.   Ironstone asserts it has the right to demolish and reconstruct, and to re-pave, the Debtors' property based on the easement agreement described below.

**The Easement Agreement**

21.   Ironstone is the owner of Lots B and C as depicted on **Exhibit B**. Lots A, D, E and F have been substantively consolidated with CCH's bankruptcy estate pursuant to the MOU.

22.   Prior to January 11, 2018, Lots A through F had been owned by an affiliate of Tenet and operated as a single property. Lots A through F, in effect, comprised the Hahnemann campus. On January 11, 2018, Tenet sold Lots A through F and related assets to various parties. The

---

[2]  Based on Ironstone's actions, as well as the rendering attached hereto as Exhibit C, it appears that Ironstone believes that it has the right to access the "Race Street Labs" building, previously known as the "Bobst Building" (located on Lot C), by a ramp extending north from Race Street, approximately half-way between Broad and 15th Streets. The Debtors reserve all rights regarding Ironstone's rights, if any, to use such ramp, which is part of the CCH Real Estate.

Debtors acquired the operating assets of Hahnemann and STC, and practice groups relating to Hahnemann and STC, while other, non-debtor, entities acquired Lots A through F and other associated real estate.

23. In connection with the transfer of Lots A through F, the Broad Street PropCos entered into the *Reciprocal Easement and Operating Agreement* dated as of December 30, 2017 and effective as of January 11, 2018, which is attached hereto as **Exhibit E** (the "**Easement Agreement**").

24. The Easement Agreement provides for the following grant of easements applicable to Lots A through F, as set forth in paragraph 2 thereof:

> (a) Shared Utility Facilities and Separate Facilities. Each Owner upon whose Property any Shared Utility Facilities[2] or Separate Facilities[3] (other than the Helipad, which is addressed below) are currently located hereby declares and grants, conveys and sets over unto the Owners of each other Lot that is currently served by such Shared Utility Facilities or Separate Facility, as the case may be, for their respective use and benefit, the non-exclusive right, privilege and easement to Maintain, use, connect and tap into (in the case of Shared Utility Facilities), operate and receive services from and through such Shared Utility Facilities or Separate Facilities, as the case may be, substantially as the Shared Utility Facilities or Separate Facilities, as the case may be, are used on the Effective Date.

25. Ironstone's actions in trespassing on, demolishing and commencing (and/or intending to commence) reconstruction of, and/or repaving, portions of the CCH Real Estate – including walls, sidewalks, parking areas and a ramp – are not related to and do not impact either the Shared Utility Facilities or the Separate Facilities, as such terms are defined in the Easement

---

[2] The Easement Agreement defines "Shared Utility Facilities" as "any Utility Facilities that are located on one Lot and serve multiple Lots (including, if applicable, the Lot on which such Utility Facilities are located)."

[3] The Easement Agreement defines "Separate Facilities" as "those facilities that are located upon one Lot and are intended pursuant to this Agreement to provide the applicable services for the exclusive benefit of one (1) other Lot, such as the Helipad or emergency power supply or other Utility Facilities that serves only one Lot though located on a different Lot."

Agreement. Accordingly, Ironstone's actions are outside the scope of the Easement Agreement and constitute an improper attempt to exercise control over the CCH Real Estate, in blatant violation of the automatic stay.

## BASIS FOR RELIEF REQUESTED

**A.     The Automatic Stay Applies to Ironstone's Conduct**

26.     Bankruptcy Code section 362(a)(3) provides that commencement of a bankruptcy case operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). *See In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011).

27.     The automatic stay is an "existing, statutorily-created injunction" that the Debtors can enforce by motion. *In re Extraction Oil & Gas, Inc.*, Case No. 20-11548 (CSS), 2020 WL 7074142, at *4 (Bankr. D. Del. Dec. 3, 2020); *see also In re THG Holdings LLC*, 604 B.R. 154, 162 (Bankr. D. Del. 2019) ("the Bankruptcy Code itself establishes the basis for the enforcement of the automatic stay").

28.     "The automatic stay is intended . . . 'in general to avoid interference with the orderly liquidation or rehabilitation of the debtor.'" *In re Aleris Int'l, Inc.*, 456 B. R. 35, 46 (Bankr. D. Del. 2011) (quoting *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991)). Thus, the automatic stay represents a fundamental protection for a debtor in bankruptcy. *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1074 (3rd Cir. 1992); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3rd Cir. 1991) (quoting *Martin-Trigona v. Champion Fed. Sav. & Loan Assoc.*, 892 F.2d 575, 577 (7th Cir. 1989)).

29.     The automatic stay applies regardless whether notice of the bankruptcy filing or the applicability of the stay has been given or received. *Maritime Elec. Co., Inc. v. United Jersey*

*Bank*, 959 F.2d at 1204. But here, it cannot be seriously contested that Ironstone at all relevant times was aware of the Debtors' bankruptcy cases and of the applicability of the automatic stay.

30. A stay violation under section 362(a)(3) requires (i) a post-petition act, and (ii) that estate property is involved. *In re Welded Constr., L.P.*, 609 B.R. 101, 127 (Bankr. D. Del. 2019) (citing *In re APF Co.*, 274 B.R. 408, 416 (Bankr. D. Del. 2001)).

31. Ironstone's actions as described above clearly satisfy the first prong – it is acting post-petition with respect to the Debtors' property in ways that are not authorized by the Bankruptcy Code, any order of this Court or any other applicable law. The second prong also is satisfied – Ironstone's actions are with respect to estate property.

32. Accordingly, Ironstone has been, and intends to continue, violating the automatic stay.

33. While Ironstone may view its actions as "minor" and not causing damage to the CCH Real Estate, the Supreme Court has observed, in *Stern v. Marshall*, 564 US 461 (2011), that:

> 'Slight encroachments create new boundaries from which legions of power can seek new territory to capture.' *Reid v. Covert*, 354 U.S. 1, 39, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (plurality opinion). Although '[i]t may be that it is the obnoxious thing in its mildest and least repulsive form,' we cannot overlook the intrusion: 'illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure.' *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

564 US at 503.

34. Although the Supreme Court's observations were made in the context of a jurisdictional and constitutional dispute, they are equally applicable to real estate.

35. Ironstone should not be permitted to continue its unlaw actions. The Debtors accordingly request an order of the Court enforcing the automatic stay as set forth in Section 362(a)(3) of the Bankruptcy Code and prohibiting Ironstone, as well as its contractors and other

parties directly or indirectly acting for or on behalf of Ironstone, from taking any further improper actions on or with respect to the CCH Real Estate.

**B.    The Debtors are Entitled to Recovery of Their Costs and Attorneys Fees and Other Damages for Ironstone's Willful Violations of the Automatic Stay**

36.    Section 362(k)(1) of the Bankruptcy Code provides for the recovery of damages for any willful violation of the automatic stay including, "in appropriate circumstances," punitive damages.  Although section 362(k)(1) states that an "individual" is entitled to such damages, the term "individual" includes corporate debtors."  *In re Orleans Homebuilders, Inc.*, 2011 WL 841071, at *13 (citing *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990)).

37.    To recover under section 362(k)(1), it must be shown by a preponderance of the evidence that (1) there was a violation of the automatic stay; (2) the violation was willful; and (3) the willful violation caused "some injury."  *In re Johnson*, 601 B.R. 365, 377 (Bankr. E.D. Pa. 2019) (citation omitted).  The Debtors meet all three conditions necessary for the Court to allow recovery of their costs and attorneys' fees.

38.    <u>First</u>, as set forth above, Ironstone has violated, continues to violate and intends to continue violating the automatic stay.

39.    <u>Second</u>, Ironstone's violations have been willful (and will continue to be).  Ironstone at all relevant times was aware of the Debtors' bankruptcy cases.  Ironstone has conceded that its conduct has been in respect of property of the Debtors' estates in which it lacks any ownership interest.  Ironstone repeatedly has been warned by the Debtors that its conduct in respect of the Debtors' property was not consented to by the Debtors and the Debtors have demanded Ironstone to cease and desist.  Ironstone has refused, has taken action in respect of the Debtors' property after the cease and desist demand and has indicated that it intends to ignore the Debtors' property rights and cease and desist demand in the future.  Even a "good faith" mistake of law or

dispute regarding the right to take the action does not negate the willfulness of the violation. *Landsdale Family Rests., Inc. v. Weis Food Serv. (In re Landsdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3rd Cir. 1992).

40. <u>Third</u>, Ironstone's conduct has and will continue to cause injury to the Debtors. Initially, Ironstone is trespassing and is demolishing and/or altering aspects of the CCH Real Estate. Ironstone also intends to reconstruct such in its sole discretion. Such alone is an impairment of Debtors' property rights.

41. In addition, Debtors, consistent with the provisions of the MOU and the Approval Order, are about to embark on a marketing process for the CCH Real Estate. Prospective buyers will undoubtedly be concerned by Ironstone's actions.

## **RESERVATION OF RIGHTS**

42. The Debtors reserve the right to (i) seek damages they incurred as a result of Ironstone's violation of the automatic stay, and (ii) bring such other claims against Ironstone based on Ironstone's past and intended future conduct, in each case to the fullest extent available under applicable law.

## **NOTICE**

43. Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) Ironstone, (ii) the Office of the United States Trustee; (iii) the Official Committee of Unsecured Creditors; (iv) counsel to MidCap Funding IV Trust; (v) Drexel University d/b/a Drexel University College of Medicine; (vi) the Debtors' unions; (vii) the Internal Revenue Service; (viii) the United States Attorney for the District of Delaware; (ix) the United States Department of Justice; (x) the Pennsylvania Attorney General's Office; (xi) the Pennsylvania Department of Health; (xii) the City of Philadelphia; and (xiii) any party that has requested notice

pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the Motion, and granting such other and further relief as is just and proper.

Dated: January 19, 2023	**SAUL EWING LLP**

By: */s/ John D. Demmy*
Mark Minuti (DE Bar No. 2659)
John D. Demmy (DE Bar No. 2802)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6840
Fax: (302) 421-6813
mark.minuti@saul.com
john.demmy@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com

*Counsel for Debtors and Debtors in Possession*

40969116.10