# EXHIBIT A

**Form of Amended and Restated Secured Promissory Note**

<u>THIS AMENDED AND RESTATED SECURED PROMISSORY NOTE AMENDS, RESTATES AND REPLACES, BUT DOES NOT EXTINGUISH, THE OBLIGATIONS OF MAKER UNDER THAT CERTAIN SECURED PROMISSORY NOTE DATED AND EFFECTIVE AS OF MARCH 31, 2022, IN THE ORIGINAL PRINCIPAL AMOUNT OF $5,600,000.00 AND ORIGINALLY MADE BY BROAD STREET HEALTHCARE PROPERTIES, LLC, BROAD STREET HEALTHCARE PROPERTIES II, LLC AND BROAD STREET HEALTHCARE PROPERTIES III, LLC</u>

## AMENDED AND RESTATED
## SECURED PROMISSORY NOTE

$9,140,000.00                                                    Philadelphia, PA

                                                                    _____, 2023

FOR VALUE RECEIVED, **CENTER CITY HEALTHCARE, LLC**, a Delaware limited liability company ("**Maker**"), unconditionally promises to pay to **PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC,** a Delaware limited liability company ("**Lender**"), in the manner and at the place hereinafter provided, the sum of **NINE MILLION ONE HUNDRED FORTY THOUSAND DOLLARS**, (or such lesser amount as has been advanced by Lender to or for the benefit of Maker pursuant to this Note) (the "**Loan**"), together with any accrued and unpaid interest thereon on or before _____, 2023 (the "**Maturity Date**").

WHEREAS, **BROAD STREET HEALTHCARE PROPERTIES, LLC**, a Delaware limited liability company ("**Broad Street I**"), **BROAD STREET HEALTHCARE PROPERTIES II, LLC**, a Delaware limited liability company ("**Broad Street II**"), **BROAD STREET HEALTHCARE PROPERTIES III, LLC**, a Delaware limited liability company ("**Broad Street III**", and collectively with Broad Street I and Broad Street II, the "**Original Makers**" or "**Mortgagor**") and Lender entered into a certain secured loan transaction pursuant to which Lender extended to Original Makers a loan in the amount of up to $5,600,000.00 (the "**Original Loan**"), evidenced by a Secured Promissory Note (the "**Original Note**") dated as of March 31, 2022 and secured by, *inter alia*, (a) a certain Open-End Mortgage and Security Agreement by Broad Street I in favor of Lender, (b) a certain Open-End Mortgage and Security Agreement by Broad Street II in favor of Lender, and (c) a certain Open-End Mortgage and Security Agreement by Broad Street III in favor of Lender, each dated March 30, 2022 and effective as of March 31, 2022, (each such mortgage and security agreement, in each case, as the same has been amended and may be further amended, supplemented or otherwise modified from time to time, individually and collectively, the "**Mortgage**") covering the Original Makers' interest in certain real properties located in Philadelphia, Pennsylvania as more fully described in the Mortgage.

WHEREAS, Original Makers, Maker, Lender and other parties entered into that certain Memorandum of Understanding Re: Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities, and CONA Parties (the "**MOU**"); and

WHEREAS, in accordance with the terms of the MOU, the Original Note and all obligations of Original Makers thereunder were assigned to and assumed by Center City Healthcare, LLC, Maker hereunder, pursuant to an Assignment, Assumption and Novation Agreement, dated as of the MOU Implementation Date (as defined in the MOU); and

WHEREAS, upon such assignment and assumption, the Mortgage remained in effect and continued to secure the Original Note; and

WHEREAS, Lender has agreed to advance additional sums to Maker on the terms and conditions set forth in the Original Note, as amended and restated hereby, including that all such additional sums advanced hereunder shall be secured by the Mortgage, in furtherance of which, concurrently with the execution of this Note, Original Makers and Lender shall enter into various Mortgage Modification Agreements.

WHEREAS, the foregoing recitals are hereby incorporated in this Note.

NOW THEREFORE, for good and valuable consideration, Maker and Lender agree to amend and restate the Original Note on the terms set forth herein, effective as of the date hereof:

1. **Advances**. This Amended and Restated Secured Promissory Note (the "**Note**") evidences the advances made by Lender to Original Makers, Maker and/or to another person or entity on behalf of Original Makers or Maker and/or designated by Original Makers or Maker, prior to and including the date hereof (the "**Current Advance**"), and any additional advances made under this Note, including PIK Advances (defined hereafter) (such additional advances, the "**Additional Advances**" and together with the Current Advance, the "**Advances**" and each, an "**Advance**").

2. **Interest**. Interest on the unpaid principal amount of all Advances (including all PIK Amounts (as defined below) added thereto, the "**Principal Amount**") shall accrue at a rate equal to five percent (5%) per annum commencing, with respect to each Advance, on the date such Advance was made; provided that any Principal Amount not paid when due and, to the extent permitted by applicable law, any interest not paid when due, in each case whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (both before as well as after judgment), shall bear interest payable upon demand at a rate that is three percent (3%) per annum in excess of the rate of interest otherwise payable under this Note. Interest shall be (i) calculated on the basis of a 360-day year, for the actual number of days elapsed in the relevant period, and (ii) payable quarterly, in arrears, on the first Business Day of each calendar quarter through and including the Maturity Date, and on the Maturity Date, whether by acceleration or otherwise (each, an "**Interest Payment Date**"); provided, however, that interest on the Principal Amount that shall have accrued and shall remain unpaid as of any Interest Payment Date (for any Interest Payment Date, a "**PIK Amount**") shall be paid on such Interest Payment Date by addition of such PIK Amount to the Principal Amount (a "**PIK Advance**").

3. **Payments**.

(a) All payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America in same day funds at the location of

2

Lender as Lender may direct.  Whenever any payment on this Note is stated to be due on a day that is not a Business Day, such payment shall instead be made on the next Business Day, and such extension of time shall be included in the computation of interest payable on this Note.  Each payment or prepayment made hereunder shall be credited first to interest then due and the remainder of such payment shall be credited to principal, and interest shall thereupon cease to accrue upon the principal so credited.

(b) Payment obligations hereunder shall not be subject to setoff, counterclaim, recoupment or deduction of any kind.

(c) Maker shall repay or otherwise satisfy its liability for the amounts due hereunder from the sale of the Property.

(d) If Maker sells, transfers or otherwise disposes of all or any part of the Property or other Collateral which results in the realization by Maker of any cash and cash equivalents received in connection with such transaction, Maker shall cause to be paid to Lender at the closing of such sale or other transfer, the amounts due hereunder.

(e) Lender shall have no obligation to re-advance amounts repaid hereunder.

(f) Maker shall have no right to refinance the amounts due hereunder.

4. Notwithstanding anything to the contrary set forth in this Note or the Mortgage (as defined herein), no covenant or any other provision of this Note or the Mortgage shall survive the indefeasible repayment in full of the amounts due hereunder.

5. **Application of Payments**.  Any amounts received on account of the Obligations shall be applied by Lender first to any asserted but unpaid indemnities, expenses and other amounts payable under this Note and the Mortgage, second to unpaid interest and then to unpaid principal amount.

6. **Use of Loan Proceeds; Advance Procedures**.

(a) Advances (other than the PIK Advances), including the Current Advance, shall be used only for the purposes of funding budgeted and direct operating/maintenance costs of the Property (the "**Operating Costs**"), including without limitation taxes and insurance, through the procedures set forth in section 6(c) below.  Maker shall cause the Property Manager (defined hereafter) to prepare monthly budgets of projected Operating Costs and a schedule of incurred but unpaid Operating Costs, which shall be subject to Lender's review and written approval (once so approved, a "**Budget**").

(b) [intentionally omitted]

(c) Advances for Operating Costs shall be disbursed to G&E Real Estate Management Services, Inc. d/b/a Newmark Knight Frank or another third party property manager retained by the Maker and reasonably acceptable to Lender (the "**Property Manager**") in accordance with the approved monthly Budget, as follows.  Not less often than once per month, the Maker shall provide to Lender a request for an Advance for

3

Operating Costs, including reasonably detailed documentation supporting such request, such as invoices, work orders or vendor proposals, and including evidence of payment of all invoices for which prior Advances have been made. Following review and approval of a request for an Advance for Operating Costs, Lender shall disburse the appropriate funds to the Property Manager, which shall promptly use such funds solely to pay the budgeted Operating Costs for which the request was submitted. No less often than every fifteen (15) calendar days after the date hereof, Maker shall cause the Property Manager to provide to the Lender such additional written evidence as Lender may request to confirm the proper use of any Advance. Lender shall have the right to inspect the Property at any time during business hours upon reasonable advance notice to Maker and the Property Manager.

(d) Upon the occurrence and during the continuation of an Event of Default by Maker under this Note or by Original Maker under the Mortgage, Lender shall be relieved of any obligation to make any further Advances hereunder. Notwithstanding the foregoing, Lender may in its sole discretion make further Advances hereunder after the occurrence and during the continuation of any Event of Default.

(e) Each Advance request shall automatically constitute a representation and certification by the Maker that (A) no event has occurred which is an Event of Default under this Note or the Mortgage; and (B) each and all of the representations and warranties of Maker set forth in this Note continue to be true in all material respects on the date of such Advance except to the extent such representations and warranties specifically relate to an earlier date, in which case they were true, correct and complete in all material respects on and as of such earlier date; and (C) Maker has made a direction to the Property Manager to process the payments in accordance with each Advance request approved by Lender.

(f) Notwithstanding anything else herein contained, Lender shall have the right, without specific consent of Maker, to apply any funds which it agrees to advance hereunder to the payment of any costs, taxes, assessments, maintenance charges, costs incurred for the protection of the Property, or other charges which could be or become a Lien on the Property, and any part thereof, or any premium on any insurance policy affecting the Property, provided that, so long as there is no existing Event of Default, Lender agrees to give Maker notice of each such application of the funds.

(g) Although the Lender and its agents may inspect the Property, such inspections are solely for the protection of the Lender as lender, and the Maker hereby confirms that the Lender is not making and will not be deemed to make any representations or warranties as to any matters pertaining to the Property by reason of such inspections.

7. **Covenants**. Maker covenants and agrees that until this Note is paid in full it will:

(a) promptly provide to Lender all financial and operational information with respect to Maker and the Property as Lender may reasonably request;

(b) promptly after the occurrence of an Event of Default or an event, act or condition that, with notice or lapse of time or both, would constitute an Event of Default,

4

provide Lender with a certificate of the Maker specifying the nature thereof and Maker's proposed response thereto;

(c) not, without Lender's prior written consent thereto, create, assume, guaranty, incur or otherwise become or remain directly or indirectly liable with respect to any indebtedness for borrowed money, except for indebtedness listed in **Exhibit "A"** attached hereto;

(d) not, without Lender's prior written consent thereto, merge or consolidate with any other Person, or sell, lease or otherwise dispose of all or any part of its property or assets to any other Person;

(e) not, without Lender's prior written consent thereto, create, incur, assume or suffer to exist, directly or indirectly, any lien, security interest, mortgage, deed of trust, pledge, hypothecation, assignment, charge, encumbrance, easement, or other security arrangement (each of the foregoing, a "**Lien**") on or with respect to any of its property or assets, whether now owned or hereafter acquired, or any income or profits therefrom, except for the Liens listed in **Exhibit "B"** attached hereto;

(f) not, without Lender's prior written consent thereto, pay, redeem, defease, purchase or otherwise acquire any indebtedness;

(g) not, without Lender's prior written consent thereto, declare or pay any dividend or make any other payment or distribution on account of, or purchase or redeem, any equity interests issued by Maker, including, without limitation, any outstanding warrants, options or other rights to acquire equity interests of Maker, now or hereafter outstanding; and

(h) not direct the Property Manager to use cash, cash equivalents or any other assets of Maker, for any purpose other than the payment of Operating Costs.

8. **Representations and Warranties**. Maker hereby represents and warrants to Lender that:

(a) it is a duly organized and validly existing limited liability company in good standing under the laws of the jurisdiction of its organization and has the power and authority under its limited liability company agreement to own and operate its properties, to transact the business in which it is now engaged and to execute and deliver this Note;

(b) this Note constitutes the duly authorized, legally valid and binding obligation of Maker, enforceable against Maker in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and general principles of equity;

(c) all consents and grants of approval required to have been granted by any Person in connection with the execution, delivery and performance of this Note have been granted;

5

(d) the execution, delivery and performance by Maker of this Note do not and will not (i) violate any law, governmental rule or regulation, court order or agreement to which it is subject or by which its properties are bound or the organizational documents of Maker or (ii) contravene, result in a breach of, or violate any indenture, mortgage, deed of trust, lease, agreement or other instrument to which Maker is a party or by which Maker or any of its property or assets is bound;

(e) other than as disclosed to Lender prior to the date hereof, there is no action, suit, proceeding or governmental investigation pending or, to the knowledge of Maker, threatened against Maker or any of its assets which, if adversely determined, would have a material adverse effect on the business, operations, properties, assets, condition (financial or otherwise) or prospects of Maker, or the ability of Maker to comply with its obligations hereunder;

(f) the proceeds of the Advances evidenced by this Note shall be used by Property Manager solely for approved Operating Costs pursuant to the provisions of Section 6 and for no other purpose without Lender's consent, which Lender may withhold at its sole discretion; and

(g) no Lien exists on any property or asset of Maker as of the date hereof and the execution, delivery, and performance by Maker of this Note do not and will not result in or require the creation or imposition of any Lien of any nature whatsoever upon any of its property or assets except (i) in favor of Lender pursuant to this Note and the Mortgage and (ii) such other liens and encumbrances as are listed on Exhibit "B" hereto.

9. <u>Intentionally Omitted</u>.

10. <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "Event of Default":

(a) failure of Maker to pay any principal or interest under this Note when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, or failure of Maker to pay any other amount due under this Note within five days after the date due; or

(b) failure of Maker to perform or observe any other term, covenant or agreement to be performed or observed by it pursuant to this Note; or

(c) any Event of Default (as that term is defined in the Mortgage) shall occur under the Mortgage; or

(d) any representation or warranty made by Maker to Lender in connection with this Note shall prove to have been false in any material respect when made; or

(e) [intentionally omitted]

6

(f) suspension of the usual business activities of Maker or the complete or partial liquidation of Maker's business except in connection with the marketing contemplated in the MOU; or

(g) (i) a court having jurisdiction in the premises shall enter a decree or order converting the pending chapter 11 of Maker to a case under chapter 7 of Title 11 of the United States Code (as now and hereinafter in effect, or any successor thereto, the "Bankruptcy Code"); or (ii) or a decree or order of a court having jurisdiction in the premises for the appointment of a receiver, liquidator, sequestrator, trustee, custodian or other officer having similar powers over Maker, or over all or a substantial part of its property shall have been entered; or the involuntary appointment of an interim receiver, trustee or other custodian of Maker for all or a substantial part of its property shall have occurred; or (iii) an order is entered by a court having jurisdiction dismissing Maker's the bankruptcy case; or

(h) any one or more of the Original Makers shall commence a voluntary case under the Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall be the subject of a petition for relief in an involuntary case, or shall seek the conversion of an involuntary case against it to a voluntary case, under any such law, or shall consent to the appointment of or taking possession by a receiver, trustee or other custodian for all or a substantial part of its property; or any one or more of the Original Makers shall make an assignment for the benefit of creditors; or any one or more of the Original Makers shall be unable or fail, or shall admit in writing its inability, to pay its debts as such debts become due; or the governing body or equity-holders of one or more of the Original Makers shall adopt any resolution or otherwise authorize action to approve any of the foregoing; or

(i) Maker shall challenge, or institute any proceedings to challenge, the validity, binding effect or enforceability of this Note or the Mortgage; or

(j) any provision of this Note or the Mortgage shall cease to be in full force or effect or shall be declared to be null or void or otherwise unenforceable in whole or in part; or Lender shall not have or shall cease to have a valid and perfected security interest in the collateral described in the Mortgage or in the Collateral prior to all liens and mortgages other than those described in Exhibit B hereto; or

(k) a Change of Control (as defined below) shall occur with respect to Maker, unless the Lender shall have expressly consented to such Change of Control in writing. A "Change of Control" shall mean any event or circumstance as a result of which (i) any "Person" or "group" (as such terms are defined in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934 (as in effect on the date hereof, the "Exchange Act")), is or becomes the "beneficial owner" (as defined in Rules 13(d)-3 and 13(d)-5 under the Exchange Act), directly or indirectly, of ten percent (10%) or more on a fully diluted basis of the then outstanding voting equity interest of Maker, (ii) the manager of Maker shall cease to consist of the same manager on the date hereof, or (iii) Maker merges or consolidates with, or sells all or substantially all of its assets to, any other Person; or

7

(l) failure by Mortgagor to keep, perform, or observe any covenant, condition or agreement on the part of Mortgagor in any of Section 1.07, 1.08, 1.09 or 1.25 of the Mortgage.

Notwithstanding anything to the contrary in this Note or the Mortgage, Lender agrees that no Event of Default, or event which with the passage of time or the giving of notice will constitute an Event of Default, shall exist that arises from or relates to the nonpayment of the items set forth in any Budget, and that have not been advanced by Lender to Maker if required under the Note.

11. **<u>Remedies</u>**.

(a) Upon the occurrence of any Event of Default specified in Section 10(g) through 10(j), or 10(m) above, the Principal Amount together with accrued interest thereon shall become immediately due and payable, without presentment, demand, notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker). Upon the occurrence and during the continuance of any other Event of Default, Lender may, by written notice to Maker, declare the Principal Amount together with accrued interest thereon to be due and payable, and the Principal Amount together with such interest shall thereupon immediately become due and payable without presentment, further notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker).

(b) In addition to all other rights and remedies provided for herein or otherwise available to it, Lender may exercise in respect of the Collateral, all the rights and remedies of a secured party on default under the Pennsylvania Uniform Commercial Code in effect on the date hereof (the "**UCC**") (to the extent the UCC applies to the affected Collateral, the "**UCC Collateral**"). Lender may be the purchaser of any or all of the UCC Collateral at any such sale and Lender shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the UCC Collateral sold at any such sale, to use and apply any of the Obligations as a credit on account of the purchase price for any UCC Collateral payable by Lender at such sale. Maker hereby waives any claims against Lender arising by reason of the fact that the price at which any UCC Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale, even if Lender accepts the first offer received and does not offer such UCC Collateral to more than one offeree.

12. **<u>Definitions</u>**. The following terms used in this Note shall have the following meanings (and any of such terms may, unless the context otherwise requires, be used in the singular or the plural depending on the reference):

"**Business Day**" means any day other than a Saturday, Sunday or legal holiday under the laws of the State of California, the Commonwealth of Pennsylvania or any other day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"**Collateral**" means all of Maker's right, title and interest in the Property.

8

"**Committee**" means the Official Committee of Unsecured Creditors of Center City Healthcare, LLC et al., as appointed in the Debtors' chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware, case no. 19-11466 (MFW).

"**Debtors**" means the following parties (for reference, included are the last four digits of each Debtor's federal tax identification number): Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).

"**Event of Default**" means any of the events set forth in Section 10.

"**HSRE**" means Harrison Street Real Estate, LLC and certain related entities.

"**MBNF Parties**" means, collectively, Joel Freedman, Stella Freedman, Svetlana Attestatova, Kyle Schmidt, MBNF Investments, LLC, American Academic Health System, LLC, Philadelphia Academic Health Holdings, LLC, Front Street Healthcare Properties, LLC, Front Street Healthcare Properties II, LLC, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Philadelphia Academic Risk Retention Group, LLC, Paladin Healthcare Capital, LLC, Paladin Healthcare Management, LLC, and Globe Health Foundation, Inc.

"**Obligations**" means, collectively, the obligations under this Note and the Mortgage, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder and thereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Maker, would accrue on such obligations, whether or not a claim is allowed against Maker for such amounts in the related bankruptcy proceeding).

"**Person**" means any individual, partnership, limited liability company, joint venture, firm, corporation, association, bank, trust or other enterprise, whether or not a legal entity, or any government or political subdivision or any agency, department or instrumentality thereof.

"**Property**" means the Mortgaged Property as set forth in the Mortgage.

13. **The Lender**. The Lender: (i) shall not have any duty to ascertain or to inquire as to the performance or observance of any of the terms, covenants or conditions of this Note or the Mortgage on the part of the Maker or Original Maker or to inspect the property (including the books and records) of the Maker; (ii) shall not be responsible to any party for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of this Note, the Mortgage or any other instrument or document furnished pursuant hereto; and (iii) shall incur no liability under or in respect of this Note or the Mortgage by acting upon any notice, consent, certificate or other

9

instrument or writing (which may be by electronic mail) believed by it to be genuine and signed or sent by the proper party or parties.

14. **Miscellaneous**.

(a) Neither this Note nor anything done pursuant hereto shall be deemed to be a novation of the Loan.

(b) Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including telefacsimile communication and electronic communications via .PDF) and mailed, telecopied, or delivered at its address specified under its signature below; or in each case at such other address as shall be designated by Lender or Maker. All such notices and communications shall, when mailed, telecopied or sent by overnight courier, be effective when deposited in the mails, delivered to the overnight courier, as the case may be, or sent by telecopier, or when received if sent by electronic mail.

(c) Maker agrees that the Obligations include any losses, claims, damages and liabilities and related expenses, including counsel fees and expenses, incurred by Lender arising out of or in connection with or as a result of the enforcement of this Note. In particular, the Obligations include all costs and expenses, including reasonable attorneys' fees and expenses, of Lender incurred in connection with the enforcement, collection and administration of this Note, the documents and instruments referred to herein and any amendments, waivers or consents relating hereto or thereto.

(d) No failure or delay on the part of Lender or any other holder of this Note to exercise any right, power or privilege under this Note and no course of dealing between Maker, on the one hand, and Lender on the other hand, shall impair such right, power or privilege or operate as a waiver of any default or an acquiescence therein, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies expressly provided in this Note are cumulative to, and not exclusive of, any rights or remedies that Lender would otherwise have. No notice to or demand on Maker in any case shall entitle Maker to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of Lender to any other or further action in any circumstances without notice or demand.

(e) Maker hereby consents to renewals and extensions of time at or after the maturity hereof, without notice, and hereby waive diligence, presentment, protest, demand and notice of every kind and, to the full extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.

(f) **THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF MAKER AND LENDER HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES**.

(g)     **ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST MAKER ARISING OUT OF OR RELATING TO THIS NOTE MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE COMMONWEALTH OF PENNSYLVANIA, AND BY EXECUTION AND DELIVERY OF THIS NOTE MAKER ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE NONEXCLUSIVE JURISDICTION OF THE AFORESAID COURT AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS NOTE**. Maker hereby agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested, to Maker at its address set forth below its signature hereto, such service being hereby acknowledged by Maker to be sufficient for personal jurisdiction in any action against Maker in any such court and to be otherwise effective and binding service in every respect. Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Lender to bring proceedings or enforce any award or judgment or exercise any rights against Maker or against the property of Maker in the courts of any other county, state or other foreign or domestic jurisdiction.

(h)     **MAKER AND LENDER HEREBY IRREVOCABLY AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS NOTE AND THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED**. The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation contract claims, tort claims, breach of duty claims and all other common law and statutory claims. Each of Maker and Lender (i) acknowledges that this waiver is a material inducement to enter into a business relationship, that each has already relied on this waiver in entering into this relationship, and that each will continue to rely on this waiver in their related future dealings and (ii) further warrants and represents that each has reviewed this waiver with its legal counsel and that each knowingly and voluntarily waives its jury trial rights following consultation with legal counsel. **THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS OF THIS NOTE**. In the event of litigation, this provision may be filed as a written consent to a trial by the court.

(i)     Maker hereby waives the benefit of any statute or rule of law or judicial decision, which would otherwise require that the provisions of this Note be construed or interpreted most strongly against the party responsible for the drafting thereof.

(j)     This Note shall be binding upon Maker and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns. Maker may not assign

any of its obligations under this Note without the prior written consent of Lender, any such purported assignment without such consent being null and void.

(k)     Maker acknowledges that this Note and Maker's obligations under this Note to pay the principal of and interest on this Note at the place, at the respective times, and in the currency prescribed herein, are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker under this Note. This Note sets forth the entire agreement and understanding of Lender and Maker with respect to the subject matter hereof, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Note or the obligations of Maker hereunder or otherwise in any action or proceeding brought by Lender to collect this Note, or any portion thereof. Maker acknowledges that no oral or other agreements, conditions, promises, understandings, representations or warranties exist with respect to this Note or with respect to the obligations of Maker under this Note, except those specifically set forth in this Note.

(l)     The headings and captions of the numbered Sections of this Note are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof. All personal pronouns used in this Note shall include the other genders, whether used in the masculine, feminine or neuter gender, and the singular shall include the plural and vice versa, whenever and as often as may be appropriate.

(m)    This Note may not be modified, amended, changed or terminated orally, except by an agreement in writing signed by Maker, on the one hand, and Lender, on the other hand. No waiver of any term, covenant or provision of this Note shall be effective unless given in writing by Lender and, if so given by Lender shall only be effective in the specific instance in which given.

(n)     [intentionally omitted]

(o)     Lender shall have the right to extend the Maturity Date to such date as it may desire, at its sole discretion, on the terms and conditions contained herein, upon written notice to Maker.

15.    **Reference Agreement**. This Note is secured pursuant to the provisions of the Mortgage in favor of Lender, as the same may be amended, supplemented or otherwise modified from time to time.

16.    **Non-Recourse**.

(a)     Recourse against Maker is limited solely to the Property, and (i) no member of Maker, (ii) no person owning, directly or indirectly, any legal or beneficial interest in Maker or a member of Maker, (iii) no partner, manager, principal, officer, controlling person, beneficiary, trustee, advisor, representative, or other similar fiduciary, shareholder, employee, agent, affiliate or director of any person described above, and (iv) none of their

12

respective successors and assigns, shall have any personal liability for the payment or performance of any of the obligations or otherwise under the Note or Mortgage.

(b) Notwithstanding the foregoing, nothing herein shall serve to limit Lender's right to seek a personal judgment against Maker to the extent such judgment or decree may be necessary to foreclose and bar Maker's interests in the Property or other Collateral; <u>provided</u> that the recourse under such judgment or decree shall be solely to the Property or other Collateral; and further provided that nothing herein stated or set forth in the Mortgage shall: (a) release, impair or otherwise affect the Note or the Mortgage; nor (b) impair or otherwise affect the validity or the lien of the Note or the Mortgage; nor (c) impair the right of Lender to accelerate the maturity of the Note (or to avail itself of any of its other rights and remedies) in accordance with the terms hereof.

17. **Consultation**. Lender shall consult with HSRE, Tenet Business Services Corporation and (so long as the Committee remains in effect and has not disbanded or otherwise been terminated) the Committee prior to providing any consent, exercising any remedy, declaring any Event of Default, extending the Maturity Date, modifying any material terms or providing any material approval hereunder; *provided*, *however*, that any failure by Lender to comply with its obligations under this Section 17 shall not be used by Maker as a defense, affirmative defense, claim, counterclaim or otherwise to Lender's claims, rights, remedies or actions hereunder

18. **Amended and Restated Note**. This Amended and Restated Secured Promissory Note amends, restates and replaces, but does not extinguish the obligations of the Maker under the Original Note. All of the indebtedness outstanding under the Original Note on the date hereof is subsumed within the indebtedness evidenced by this Note.

19. This Note may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same Note.

[PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, Maker and Lender have caused this Note to be executed and delivered by their respective duly authorized officer as of the day and year and at the place first above written.

**MAKER**:

**CENTER CITY HEALTHCARE, LLC**,
a Delaware limited liability company

By: _____
Name: _____
Title: _____

**LENDER:**

**PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC**, a Delaware limited liability company

By: _____
Name:
Title:
Address:

# EXHIBIT A

## DEBTS

      i.      Settlement Balancing Payment reimbursement obligation;

      ii.      Any amounts due with respect to premium finance agreements; and

      iii.      Any amounts reflected in a filed proof of claim against the Maker or listed in the Maker's Schedules, as filed pursuant to Section 521 of the Bankruptcy Code in the Maker's pending chapter 11 case other than designated as "disputed", "unliquidated" and/or "contingent".

      iv.      Any amount agreed to or stipulated by one or more of the Debtors in a pleading that has been approved by the Court.

# EXHIBIT B

# LIENS

(i) Liens securing the indebtedness described in Exhibit A.

(ii) Permitted Encumbrances set forth on Schedule B to the Mortgage.

(iii) Liens for taxes, assessments or governmental charges or claims the payment of which is not, at the time, required;

(iv) statutory Liens and rights of set-off of banks, statutory Liens of mechanics, repairmen, workmen and materialmen, and other Liens imposed by law, in each case incurred in the ordinary course of business;

(v) municipal Liens imposed for past due water charges; and

(vi) municipal Liens imposed for past due real estate taxes and assessments.

In each instance, to the extent valid, enforceable and not avoidable.

39697415.6