## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 19-11466 (MFW) |
| CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, et al. | |
| | Hearing Date: TBD |
| | Objection Date: TBD |
| Debtors. | |

**MOTION BY LINDA RAMSEY, ESQUIRE FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT PAYMENT AND/OR ADVANCEMENT OF DEFENSE COSTS UNDER AN EMPLOYED LAWYERS LIABILITY POLICY PROVIDING INSURANCE COVERAGE FOR LEGAL MALPRACTICE CLAIMS ASSERTED BY THE DEBTORS**

Linda Ramsey ("**Insured**"), a former Assistant General Counsel and Vice President of Insurance Portfolio for Philadelphia Academic Holdings, L.L.C. ("**Debtor**"), by and through the undersigned counsel, and pursuant to 11 U.S.C. §362(d) and Federal Rule of Bankruptcy Procedure 4001, hereby moves this Court (the "**Motion**") for entry of an Order, substantially in the form attached hereto as **Exhibit A**, modifying the automatic stay to the extent necessary for the authorization, payment and/or advancement of defense costs under the Employed Lawyers Liability Policy issued by Federal Insurance Company, Policy No. 8255-7330 (the "Policy").

Insured respectfully states as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

3.      The statutory predicates for the relief sought herein are 11 U.S.C. §§105(a) and 362 of the Bankruptcy Code and Federal Bankruptcy Rule of Procedure 4001.

## BACKGROUND

4.      On June 30, 2019 and July 1, 2019, (the "Petition Dates"), the Debtors filed their voluntary chapter petition(s).

5.      The Debtors bankruptcy cases are jointly administered at Case Number 19-11466 (MFW).  ("Bankruptcy Case").

6.      Insured was employed in 2019 as an Assistant General Counsel and Vice President of Insurance Portfolio for Philadelphia Academic Health System L.L.C. ("PAHS").

7.      Federal Insurance Company ("Federal") Policy No. 8255-7330 provided "Employed Lawyers Liability" insurance coverage for lawyers employed by Debtor during the policy period January 11, 2019 through to January 11, 2020.

A true and correct copy of the Federal Policy is attached as Exhibit B. (hereinafter the "Federal Policy").

8.      Insured qualifies as an insured under the Federal Policy.

9.      Subsequent to the filing of the Bankruptcy Case, Insured received correspondence from Allen Wilen ("Wilen"), Chief Restructuring Officer for Debtor.  In addition to being the Chief Restructuring Officer for Debtor, Mr. Wilen is also Chief Restructuring Officer for St. Christopher's Healthcare, LLC ("STC") and Hahenemann University Hospital ("HUH").  A true and correct copy of the correspondence of Allen Wilen is attached as Exhibit C. (hereinafter the "Wilen Correspondence").

10.     The Wilen Correspondence advised Insured that the "…Debtors are pursuing a claim against you for legal malpractice, the effect of which was to cost the Debtors millions of dollars to rectify your error and mistake."  Ex. C.

11.     Furthermore, the Wilen Correspondence sets forth in **"Section D–Your Legal Error/Malpractice"-** the alleged acts, errors and/or omissions the Debtors claimed Insured committed in her role as legal counsel while employed by Debtor.

12.     This alleged legal malpractice is related to a purported request by the Debtors Chief Academic Officer, Dr. William Boyer, that Insured review the renewal of a "House Staff Employment Agreement" ("Employment Agreement")

that residents and fellows of STC and HUH entered into on an annual basis with each hospital.

13.     The Wilen Correspondence charges that Insured did not recognize that the draft Employment Agreement provided to her by Boyer promised the residents and fellows of HUH and STC that they would be insured under an "occurrence-based professional liability insurance coverage" when, in fact, the professional liability insurance coverage actually being provided to the residents and fellows of HUH and STC was being issued on a "claims made" basis through a risk retention group created by Philadelphia Academic Health Systems.[1]

14.     The Debtors contend that Insured should have known that the reference to an "occurrence-based" professional liability coverage in the draft Employment Agreement prepared by Dr. Boyer was "…not correct and is inconsistent with the claims made coverage under the PAARG Policy."

15.     As a result of Insured's alleged error, the Debtors claim that they were forced to purchase "tail coverage" at a cost of $4.1 Million.  The effect of the purchase of "tail coverage" was to convert the "claims made" professional liability policy issued by PAARG into an occurrence policy which would provide to the residents and fellows professional liability insurance coverage for acts and omissions

---

[1] The risk retention group was known as the Philadelphia Academic Risk Retention Group, LLC (PAARG) which issued Policy No. PARRG – 2019.

during the course of a resident's or fellow's employment, even if the claim was first made after the insurance policy term had expired.

16. The Wilen Correspondence claimed that Insured's alleged error entitled the Debtors to compensatory damages "…in an amount of no less than $6 million dollars to cover the damages they have suffered as a result of your errors and failure to perform legal services rendered to HUH".  Ex. C.

17. The Wilen Correspondence instructed Insured to do the following:

"In addition, the Debtors advise you to put your malpractice carrier on notice immediately of the Debtors claim."

Ex. C.

18. In response to the demand of the Debtors as relayed in the Wilen Correspondence, Insured placed Federal on notice of the Debtors legal malpractice claim against her.

19. Pursuant to the terms and conditions of the Federal Policy, Federal appointed defense counsel to represent Insured's interests against the Debtors legal malpractice claims as asserted in the Wilen Correspondence.

20. Federal has agreed to pay the defense costs and expenses incurred in the defense of Insured against the legal malpractice claims of the Debtor.

21. Accordingly, Federal and Insured request that the Court enter a "comfort order" permitting the payment of defense fees and costs, including, without limitation, the retention of liability and damage experts, and confirming that the

payment of such legal fees, expenses, and any possible payments to the Debtors by way of settlement will not result in violation of the automatic stay provided for under 11 U.S.C. §362 of the Bankruptcy Code.

## THE INSURANCE POLICY

22.    As noted, Insured is an insured under the Federal Policy which was issued to Debtor for the policy period January 11, 2019 to January 11, 2020.

23.    "The Federal Policy sets forth the following conspicuous insuring agreement:"

> **NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY. READ THE ENTIRE POLICY CAREFULLY.**

Ex. B, ELL Declarations, at Page 1 of 1.

24.    The Federal Policy is a claims made policy covering legal malpractice claims first made during the policy period and which provides a maximum aggregate limit of liability in the amount of $1 Million.  *See* Ex. B.

25.    Upon receipt of the Wilen Correspondence, Insured notified Federal of the allegations against her which triggered coverage under the Federal Policy.

26.     The Debtors advised Insured in the Wilen Correspondence that "…neither HUH and/or the Debtors will indemnify you for this demand." Ex. C.

27.     As a result of the Debtors advising Insured that no indemnification would be forthcoming for the Debtors' legal malpractice claims against her, the following Insuring Agreement contained in the Federal Policy is applicable:

> ### Insuring Clause (A): Individual Non-Indemnification Liability Coverage
>
> (A)     The Company shall pay, on behalf of an **Insured Person**, **Loss** on account of a claim first made against the **Insured Person** during the Policy Period, or the Extended Reporting Period, if applicable, to the extent such loss is not indemnified by an **Organization.**
>
> ### Insuring Clause (B): Individual Indemnified Liability Coverage
>
> (B)     The Company shall pay, on behalf of an **Organization, Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent the **Organization** indemnifies the **Insured Person** for such **Loss** as permitted or required by law.

Ex. B, Coverages, at Page 1 of 10 (Section I "INSURING CLAUSES").

28.     Since being notified by Insured of the Debtors legal malpractice claims, Federal is (1) providing a defense to Insured as is required under the terms of the Federal Policy, (2) continuing to investigate the Debtors legal malpractice claim(s), and (3) developing defense(s) for Insured against the legal malpractice claims asserted in the Wilen Correspondence.

29.     The Federal Policy insuring the Insured against the claims asserted in the Wilen Correspondence is an eroding policy meaning that payment of covered defense costs reduces the policy's limits dollar-for-dollar as such amounts are incurred and paid.

30.     Under the terms of the Federal Policy, Federal has "…the right and duty to defend any Claim covered by this Coverage Part.  Coverage shall apply even if any of the allegations are groundless, false, or fraudulent.  The Company's duty to defend any Claim shall cease upon exhaustion of the applicable Limit of Liability." Ex. B.  *Id*. at Page 8 of 10, (Section VII.A "DEFENSE AND SETTLEMENT).

31.     The Federal Policy further provides for the following: "The Company may make any investigation it deems necessary and may, with the consent of the Insured Persons against whom a claim is made, make any settlement of any claim it deems appropriate."   Ex. B, *Id.* at Page 8 of 10, (Section VII.B "Defense and Settlement").

32.     Finally, the Federal Policy provides for the following:

(A)     In the event of **Loss** arising from a **Claim** for which payment is concurrently due under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, and (B), Individual Indemnified Liability Coverage, the Company shall:

(1)     first, pay **Loss** for which coverage is provided under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, then

(2)     with respect to whatever remaining amount of the Limit of Liability is available after

8

> payment under Subsection (A) above, pay such **Loss** for which coverage is provided under Insuring Clause (B), Individual Indemnified Liability Coverage.

Ex. B, *Id.* at Page 9 of 10 (Section IX.A "Priority of Payments").

## RELIEF REQUESTED

33.     Insured seeks entry of an order from the Court modifying the automatic stay to permit Federal to make payments and/or advancement of defense costs and/or to enter into settlement discussions with the Debtors in accordance with the terms and conditions of the Federal Policy.

## BASIS FOR THE RELIEF REQUESTED

### A.     *The Policy Proceeds Are Not Property of the Debtor's Estate*

34.     Section 362(a) of the Bankruptcy Code provides that the commencement of a bankruptcy case operates as an "automatic stay" of an act to obtain property of the debtor's estate.  11 U.S.C. §362(a).

35.     Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of commencement of the case."  11 U.S.C. §541(a)(1).

36.     As a general rule, an insurance policy that provides protection for and is issued to a debtor is "property of the estate" within the meaning of the Bankruptcy Code.  *In re Allied Digital Technologies Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004).  However, the status of an insurance contract as property of the bankruptcy

9

estate is not determinative of whether "proceeds" of that policy—i.e., the payment made by the insurer pursuant to the insurance contract—also constitutes property of the estate. *Id.* (noting who owns the proceeds is a more complicated issue).

37.    This Court has explained the analysis to determine whether policy proceeds from an insurance policy are property of an estate. On one hand, when a debtor's liability insurance policy only provides direct coverage to the debtor, the proceeds are property of the estate. *In re Downey Fin. Corp.*, 428 B.R. 595, 603-04 (Bankr. D. Del. 2010)(*citing In re Matter of Vitek, Inc.*, 51 F.3d 530, 535 (5th Cir. 1995)); *Allied Digital Technologies Corp.*, 306 B.R. at 509). On the other hand, if a liability insurance policy only provides direct coverage to the employees, proceeds are not property of the estate. *Id.* When direct coverage is provided under the liability insurance policy to both the debtor and the subject employees, "the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *Id.* (emphasis in original).

38.    First and foremost, the language of the Policy protects the Insured in its Priority of Payments provision, which provides that when the limits are insufficient to pay all "Loss" on behalf of all insureds, the Policy puts the Insured *first*. Ex. B, Coverages, at Page 9 of 10, (Section IX.A "Priority of Payments"). This priority language is common among policies and is consistent with the purpose of such

liability policies which are intended to protect the individuals in exchange for the services they bring to the organization.

39.     Further, an interpretation that prevents coverage to the Insured when the Debtor files bankruptcy is contrary to the clear language of the Policy.  Ex. B, *Id.*, at Page 6 of 7, (Section XI "Bankruptcy").

40.     Accordingly, the Policy proceeds payable to the Insured are not property of the estate and the automatic stay does not prevent Federal from paying policy proceeds to the Insureds.

**B.      *Alternatively, the Automatic Stay Should Be Modified to the Extent Applicable.***

41.     To the extent the automatic stay applies, cause exists to grant limited relief from the automatic stay to permit Federal to pay fees and costs resulting from or relating to a claim covered by the Federal Policy.  The detrimental effect of the stay on the Insured (i.e. Ramsey), the balance of the harm, and the interests of judicial economy all weigh in favor of lifting the stay.

42.     Assuming, *arguendo*, that insurance proceeds are property of the estate, §362(d) of the Bankruptcy Code provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay –
>
> > (1) for cause, including the lack of adequate protection of an interest in property;

11 U.S.C. §362(d).

43.     Courts have recognized the need to grant stay relief to allow payments of defense costs or settlement costs by insurers.  *Allied Digital Technologies, Corp.*, 3036 B.R. 505 (Bankr. D. Del. 2004) (noting that "without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the Trustee's claims and may suffer substantial and irreparable harm.")  *Id*. at 514-14.

44.     For example, *In re Arter & Hadden, L.L.P.*, the insurance policy at issue covered the debtor and its employees and officers who demanded coverage.  335 B.R. 666 (Bankr. N.D. Ohio 2005).   While the court found the proceeds were property of the estate, cause existed to lift the automatic stay because the officers and employees were at risk to "suffer substantial and irreparable harm if prevented from exercising their right to defense payments to fund their defense of the Trustee's Complaint".  *Id*.

45.     Courts in other jurisdictions similarly have permitted the payment and/or advancement of defense costs incurred by an insured in the defense of claims asserted by a debtor even where such payments may ultimately reduce the total funds available to the debtor.  *See*, e.g., *In re MF Global Holdings Ltd.*, 469 B.R., 177, 192 (Bankr. S.D. N.Y. 2012); *In re Enron Corp.*, 2002 WL 1008240 (Bankr. S.D. N.Y. May 17, 2002) (granting relief from stay for payment of defense costs).

46.     In this case, "cause" exists to lift the automatic stay, to the extent it applies, to permit Federal to pay the Insured's defense costs since the Insured is relying on the protection afforded by the Federal Employed Lawyers Liability Coverage to combat the legal malpractice claims which have been asserted against her by the Debtors.

47.     The Insured relied on the protection afforded to her by the Policy, including the priority of payment in the event of a Loss in excess of the Policy limits. It would be unjust to strip her of that benefit when she needs it most.

48.     If stripped of the benefit of receiving a defense under the Federal Policy, Insured will suffer substantial and irreparable harm.

49.     Accordingly, the Federal Policy provides coverage to Insured and she is entitled to a complete and vigorous defense against the allegations of legal malpractice which have been asserted by the Debtors.  Insured respectfully requests that the Court enter an Order allowing Federal to pay the outstanding and future Defense Costs incurred by Insured in connection with the Debtors' claims of legal malpractice.

## <u>RESERVATION OF RIGHTS</u>

This Motion is not and shall not be deemed to be an admission by the Insured of any fact, liability, or other matter whatsoever.  The filing of this Motion is not and

shall not be deemed to constitute a waiver of any of the Insured's rights under the Federal Policy, at law or in equity, all such rights being expressly reserved.

## NOTICE

Notice of this Motion will be provided to the U.S. Trustee for the District of Delaware, counsel to the Debtors, counsel to the Creditor's Committee, counsel to the Examiner pursuant to electronic mail, and any other parties requesting ECF notice of this matter.  In light of the nature of the relief requested, the Insured submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, the Insured respectfully requests that the Court enter an Order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested in the Motion, and such other relief and further relief as may be just and proper.

March 20, 2023
Wilmington, Delaware

**GORDON REES**
**SCULLY MANSUKHANI, LLP**

/s/ Michael C. Heyden
Michael C. Heyden, Jr. (No. 5616)
Joseph E. Brenner (No. 6643)
824 N. Market St., Suite 220
Wilmington, DE 19801
 (302) 992-8955
mheyden@grsm.com

*Counsel for Insured Linda Ramsey*