# EXHIBIT B

PREMIUM BILL

Insured:   MBNF Investments, LLC                                    Date:   02/07/2019

Producer:   LOCKTON COMPANIES, LLC.
            725 S FIGUEROA ST 35 FL
            LOS ANGELES, CA 90017-0000

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:   8255-7330

Policy Period:   January 11, 2019 to January 11, 2020

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 8255-7330

| Product | Effective Date | Premium |
|---------|----------------|---------|
| FFP30 | 01/11/19 | $12,072.00 |
|  |  |  |
|  |  |  |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $12,072.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $12,072.00 |

Form 26-10-0426 (Ed. 2/98)

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company: Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 03/2015)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

# Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as listed in this Notice. You may order any brochure by email to formsordering@chubb.com and to view our full suite of loss prevention brochures/services go to www.chubb.com/us/fl-lossprevention

## Directors and Officers (D&O) Liability Loss Prevention Services

- ***Directors and Officers Liability Loss Prevention* Manuals:**
  Directors and Officers Liability Loss Preventions – #14-01-0035
  Directors and Officers Securities Litigation Loss Preventions – #14-01-0448
  Director Liability Loss Prevention in Mergers and Acquisitions – #14-01-1099
  Directors and Officers Liability Loss Prevention for Not-for-Profit- -#14-01-0036
  Cyber Loss Mitigation for Directors -#14-01-1199

## Employment Practices Liability (EPL) Loss Prevention Services

- **Toll-free Hot Line**

  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis P.C. We offer customers an unlimited number of calls to the hot line at no additional charge.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- ***Employment Practices Loss Prevention Guidelines* Manual**

  *Employment Practices Loss Prevention Guidelines - #14-01-0061*

- **Loss Prevention Consultant Services**

  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues.

- **Public Company EPL Customers**

  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues faced by for-profit companies and offers proactive idea for avoiding employment lawsuits.

- **Private Company EPL Customers**
  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues for –profit companies and offers proactive idea for avoiding employment lawsuits.

**Fiduciary Liability Loss Prevention Services**

- **Fiduciary Liability Loss Prevention Manual**
  Who May Sue You and Why: How to Reduce Your ERISA Risks and the Role of Fiduciary
  Liability Insurance #14-01-1019

**Crime Loss Prevention Services**

- **Crime/Kidnap, Ransom & Extortion Loss Prevention Manual**

  Preventing Fraud: How Anonymous Hotlines Can Help #14-01-1090

**Cyber Security Loss Prevention Services**

Visit: https://www2.chubb.com/us-en/business-insurance/cyber-security.aspx to learn more
about Chubb's Cyber Services for our policyholders.

**Health Care Directors and Officers (D&O) Liability Loss Prevention Services**

- **Readings in Health Care Governance Manual**
  Readings in Health Care Governance -#14-01-0788

- **ChubbWorks.com**
  ChubbWorks.com for Health Care Organizations – The Health Care Zone is a free online
  resource containing health care specific loss prevention information for employment practices
  liability, directors and officers (D&O) liability, and fiduciary liability exposures. To gain
  immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy
  number.

- **Health Care D&O Loss Prevention Consultant Services**
  Health Care D&O Loss Prevention Consultant Services- #14-01-1164

--------------------
The services provided are advisory in nature. While this program is offered as a resource in
developing or maintaining a loss prevention program, you should consult competent legal counsel
to design and implement your own program. No liability is assumed by reason of the services,
access or information provided. All services are subject to change without notice.

⊏ ⊓ ⊔ ⊟ ⊟˙ **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*^SM
*General Terms and Conditions*

---

**GTC DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**Policy Number**: 8255-7330

**NOTICE: THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**    **Parent Organization:**    MBNF Investments, LLC

Principal Address:    1500 Market Street, Suite 2400 - West Tower

Philadelphia, PA 19102

**Item 2.**    **Policy Period:**

(A)  From:    January 11, 2019

(B)  To:    January 11, 2020

At 12:01 AM local time at the address shown in Item 1.

**Item 3.**    **A Combined Maximum Aggregate Limit of Liability applies:**

[ ] Yes    [X] No

The Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Parts** shall be:

Not Applicable

**Item 4.**    **Coverage applicable to this Policy:**

[ ] Directors & Officers and Entity Liability Coverage Part

[ ] Employment Practices Liability Coverage Part

[ ] Fiduciary Liability Coverage Part

[ ] Miscellaneous Professional Liability Coverage Part

[X] Employed Lawyers Liability Coverage Part

CHUBB' **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0$^{SM}$*
*General Terms and Conditions*

☐ CyberSecurity Coverage Part

☐ Crime Coverage Part

☐ Kidnap Ransom and Extortion Coverage Part

☐ Workplace Violence Expense Coverage Part

**Item 5.**      **Extended Reporting Period:**

(A) Additional Period:      1 year

(B) Additional Premium:      100 % of Annual Premium

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____
Secretary

02/07/2019
_____
Date

_____
President

_____
Authorized Representative

 **CHUBB** Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0^SM*
*General Terms and Conditions*

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:

## I.    TERMS AND CONDITIONS

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part, the terms and conditions of each Coverage Part apply only to that Coverage Part. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part. All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in these General Terms and Conditions shall apply only to these General Terms and Conditions, unless otherwise stated. All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in a Coverage Part, shall apply only to such Coverage Part, unless otherwise stated.

## II.    DEFINITIONS

**Anniversary Date** means the date and time exactly one (1) year after the date and time set forth in Item 2(A), Policy Period, of the GTC Declarations and each succeeding date and time exactly one (1) year after the previous **Anniversary Date**.

**Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Coverage Event** means the event or loss which must occur or be sustained or discovered, in order to invoke coverage under each **Non-Liability Coverage Part**.

**Defense Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Expense** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured Person** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Liability Coverage Part** means:

(A)    the Directors & Officers and Entity Liability, Employment Practices Liability, Fiduciary Liability, Employed Lawyers Liability and Miscellaneous Professional Liability Coverage Parts; and

(B)    Insuring Clause (A), Cyber Liability Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Non-Liability Coverage Part** means:

(A)    the Crime, Kidnap Ransom and Extortion and Workplace Violence Expense Coverage Parts; and

(B)    Insuring Clauses (B), Privacy Notification and Crisis Management Expenses Coverage; (C), Reward Expenses Coverage; (D), E-Business Interruption and Extra Expenses Coverage; (E), E-Threat Expenses Coverage and (F), E-Vandalism Expenses Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Organization** means the **Parent Organization** and any **Subsidiary**. **Organization** shall also mean any such entity as a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Parent Organization** means the entity named in Item 1 of the GTC Declarations.

⊏⊢⊔⊒⊒˙ Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
**General Terms and Conditions**

**Policy Period** means the period of time set forth in Item 2 of the GTC Declarations, subject to any prior termination in accordance with Section X, Termination of Policy.

**Policy Year** means the period, within the **Policy Period**, from the date and time set forth in Item 2(A), Policy Period, of the GTC Declarations to the first **Anniversary Date**, or the period from an **Anniversary Date** to its next succeeding **Anniversary Date**, subject to any prior termination in accordance with Section X, Termination of Policy.

**Potential Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Securityholder Derivative Demand Evaluation Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Subsidiary** means:

(A)     any entity while more than fifty percent (50%) of the outstanding securities representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**;

(B)     any entity while:

  (1)     exactly fifty percent (50%) of the voting rights representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**; and

  (2)     the **Parent Organization**, pursuant to a written contract with the owners of the remaining and outstanding voting stock of such entity, solely controls the management and operation of such entity; or

(C)     any foundation, charitable trust or political action committee while such entity is controlled by the **Parent Organization**.

**Voluntary Program Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Voluntary Program Notice** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Wrongful Act** shall have the meaning ascribed to that term in each applicable Coverage Part.

---

III.    **LIMIT OF LIABILITY**

(A)     With respect to the **Liability Coverage Parts**:

  (1)     If the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations is elected, the amount stated in such Item 3 shall be the maximum aggregate limit of liability of the Company for all **Loss**, **Voluntary Program Loss** and **Securityholder Derivative Demand Evaluation Costs** during each **Policy Year** under all **Liability Coverage Parts** combined. However, any **Loss**, **Voluntary Program Loss** or **Securityholder Derivative Demand Evaluation Costs** paid under any **Liability Coverage Part** shall not exceed the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of such Coverage Part.

  (2)     If the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations is not elected, the maximum aggregate limit of liability of the Company for all **Loss**, **Voluntary Program Loss**, and **Securityholder Derivative Demand Evaluation Costs** during each **Policy Year** under each **Liability Coverage Part** shall be the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations for each **Liability Coverage Part**.

     (3)    **Defense Costs** are part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of each **Liability Coverage Part** and payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

(B)    With respect to the **Non-Liability Coverage Parts**, the Company's maximum liability shall be the Limits of Liability set forth in the Declarations of each **Non-Liability Coverage Part**.

## IV.   RELATED CLAIMS

With respect to the **Liability Coverage Parts**:

(A)    All **Related Claims** shall be deemed a single **Claim** made in the **Policy Year** in which the earliest of such **Related Claims** was first made or first deemed to have been made in accordance with the Reporting section of the applicable **Liability Coverage Part** (the "Earliest Related Claim").

(B)    All **Related Claims** shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Claim.

## V.   EXTENDED REPORTING PERIOD

With respect to the **Liability Coverage Parts**:

(A)    If this Policy does not renew or otherwise terminates for a reason other than for failure to pay premium (each a "Termination of Coverage"), then an **Insured** shall have the right to purchase an Extended Reporting Period for the Additional Period and Additional Premium set forth in Item 5 of the GTC Declarations.

(B)    In the event of a Termination of Coverage and upon request from an **Insured**, the Company shall, in its sole discretion, provide a quote for Additional Periods other than as set forth in Item 5, Extended Reporting Period, of the GTC Declarations.  Any such additional quote offered shall be subject to such Additional Premium as the Company may require.

(C)    The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

(D)    This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the applicable Additional Premium, is received by the Company within sixty (60) days after the effective date of the Termination of Coverage.

(E)    If an Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy shall be extended to apply to **Claims**: (1) first made during such Extended Reporting Period; and (2) reported to the Company pursuant to the Reporting section of the applicable Coverage Part, but only to the extent such **Claims** are for **Wrongful Acts** before the effective date of such Termination of Coverage or the date of any conversion of coverage described in Section VI, Changes in Exposure, whichever is earlier.  Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the **Policy Year** immediately preceding the Extended Reporting Period.

(F)    The entire premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

(G)    The limit of liability for the Extended Reporting Period is part of and not in addition to any maximum aggregate limit of liability for the **Policy Year** immediately preceding the Extended Reporting Period.

CHUBB' Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*$^{SM}$
*General Terms and Conditions*

## VI.    CHANGES IN EXPOSURE

(A)    **Acquisition of Another Organization**

   (1)    If before or during the **Policy Period** an **Organization** acquires voting rights in another entity such that the acquired entity becomes a **Subsidiary**,

   (2)    then coverage shall be provided for such **Subsidiary** and its **Insureds** with respect to any:

       (a)    **Liability Coverage Part**, solely for **Claims** for **Wrongful Acts** after such acquisition; or

       (b)    **Non-Liability Coverage Part**, solely after the effective date of such acquisition subject to the Liability for Prior Losses section of such **Non-Liability Coverage Part**.

(B)    **Cessation of Subsidiaries**

   (1)    If before or during the **Policy Period** an **Organization** ceases to be a **Subsidiary**,

   (2)    then with respect to any:

       (a)    **Liability Coverage Part**, coverage for such **Subsidiary** and its **Insureds** shall continue until termination of this Policy in accordance with Section VI(C), Conversion of Coverage Under Certain Circumstances, or Section X, Termination of Policy, whichever occurs first, but only for **Claims** for **Wrongful Acts** while such **Organization** was a **Subsidiary**; or

       (b)    **Non-Liability Coverage Part**, such **Subsidiary** and its **Insureds** shall cease to be **Insureds** as of the effective date of such cessation and coverage under this Policy shall apply as provided in such **Non-Liability Coverage Part**.

(C)    **Conversion of Coverage Under Certain Circumstances**

   (1)    If during the **Policy Period** any of the following events occur:

       (a)    another entity, person or group of entities or persons acting in concert, acquires more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the **Parent Organization**;

       (b)    the acquisition of all or substantially all of the **Parent Organization's** assets, by another entity, person or group of entities or persons acting in concert, or the merger of the **Parent Organization** into or with another entity such that the **Parent Organization** is not the surviving entity; or

       (c)    the **Parent Organization** emerges from bankruptcy as of the effective date stated in the plan of reorganization,

   (2)    then:

       (a)    any applicable coverage under this Policy with respect to:

           (i)    any **Liability Coverage Part**, shall continue until the expiration of the current **Policy Period**, solely for **Claims** for **Wrongful Acts** prior to such event;

           (ii)    the Crime Coverage Part, shall terminate subject to Exclusions III(C), Loss Sustained Option, or III(D), Loss Discovered Option, of such Coverage Part;

           (iii)    the Kidnap Ransom and Extortion Coverage Part, shall terminate subject to Exclusion III(A)(9), Notice, of such Coverage Part;

           (iv)    the Workplace Violence Coverage Part, shall terminate subject to Exclusion III(E) Notice, of such Coverage Part; or

           (v)    Insuring Clauses (B), Privacy Notification and Crisis Management Expenses Coverage; (C), Reward Expenses Coverage; (D), E-Business Interruption and

CHUBB' Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

***ForeFront Portfolio 3.0*<sup>SM</sup>***
***General Terms and Conditions***

Extra Expenses Coverage; (E), E-Threat Expenses Coverage and (F), E-Vandalism Expenses Coverage, of the CyberSecurity Coverage Part, shall continue until the expiration of the current **Policy Period** solely for **Expense** first incurred prior to such event;

(b)     the **Parent Organization** shall give written notice of such event to the Company as soon as practicable together with such information as the Company may require; and

(c)     the entire premium for this Policy shall be deemed fully earned as of the effective date of such event.

---

## VII.   SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES

With respect to the **Liability Coverage Parts**, coverage under this Policy shall extend to **Claims** for **Wrongful Acts** of an **Insured Person** made against:

(A)     the lawful spouse or domestic partner of such **Insured Person** solely by reason of such spouse or domestic partner's status as a spouse or domestic partner, or such spouse or domestic partner's ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**; or

(B)     the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased, or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is legally incompetent, insolvent or bankrupt;

provided that no coverage afforded by this Section VII shall apply with respect to any loss arising from an act, error or omission by an **Insured Person's** spouse, domestic partner, estate, heirs, legal representatives or assigns.

---

## VIII.   SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery. As a condition precedent to the Company's payment under this Policy, the **Insureds** agree to execute all papers required and shall take all reasonable actions to secure and preserve such rights, including the execution of such documents necessary to enable the Company to effectively bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

---

## IX.   NOTICE

(A)     Notice to the Company of any **Claim, Potential Claim, Voluntary Program Notice** or circumstances under any **Liability Coverage Part**, or any **Coverage Event** under any **Non-Liability Coverage Part**, shall be deemed notice under the Policy in its entirety.

(B)     All notices to the Company under this Policy of any **Claim, Potential Claim, Voluntary Program Notice** or circumstances under any **Liability Coverage Part**, or any **Coverage Event** under any **Non-Liability Coverage Part**, shall be given in writing to one of the following addresses:

(1)     specialtyclaims@chubb.com; or

(2)     Attn: Claims Department
Chubb Group of Insurance Companies
82 Hopmeadow St.
Simsbury, CT 06070-7683

(C)    All other notices to the Company under this Policy shall be given in writing addressed to:

> Attn: Chubb Underwriting Department
> Chubb Group of Insurance Companies
> 202B Hall's Mill Road
> Whitehouse Station, NJ 08889

(D)    Any notice described above shall be effective on the date of receipt by the Company.

## X.    TERMINATION OF POLICY

(A)    This Policy shall terminate at the earliest of the following times:

(1)    upon receipt by the Company of written notice of termination from the **Parent Organization**, provided that this Policy may not be terminated by the **Parent Organization** after the effective date of any event described in Section VI(C), Conversion of Coverage Under Certain Circumstances;

(2)    upon expiration of the **Policy Period** set forth in Item 2 of the GTC Declarations;

(3)    twenty (20) days after receipt by the **Parent Organization** of a written notice of termination from the Company based upon nonpayment of premium, unless the premium is paid within such twenty (20) day period; or

(4)    at such other time as may be agreed upon by the Company and the **Parent Organization**.

(B)    The Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## XI.    BANKRUPTCY

Bankruptcy or insolvency of an **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

## XII.    COORDINATION OF COVERAGE

Any **Loss** covered under more than one **Liability Coverage Part** shall be first covered under the CyberSecurity Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** which is not paid under the CyberSecurity Coverage Part shall then be covered under the Employment Practices Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** otherwise covered under any other applicable **Liability Coverage Part** which is not paid under the CyberSecurity or Employment Practices Liability Coverage Parts shall be covered under such other **Liability Coverage Part**, subject to the terms, conditions and limitations of such **Liability Coverage Part**.

Any loss covered under the CyberSecurity Coverage Part and the Kidnap Ransom and Extortion Coverage Part shall be first covered under the Kidnap Ransom and Extortion Coverage Part, subject to its terms, conditions and limitations. Any remaining portion of such loss otherwise covered under the CyberSecurity Coverage Part which is not paid under the Kidnap Ransom and Extortion Coverage Part shall be covered under the CyberSecurity Coverage Part, subject to its terms, conditions and limitations.

 Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*General Terms and Conditions*

---

**XIII.    VALUATION AND FOREIGN CURRENCY**

All premiums, limits, retentions, loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in this Policy, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

---

**XIV.    ACTION AGAINST THE COMPANY**

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

---

**XV.    ROLE OF PARENT ORGANIZATION**

By acceptance of this Policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: (A) the payment of premiums and the receiving of any return premiums that may become due under this policy; (B) the negotiation, agreement to and acceptance of endorsements; and (C) the giving or receiving of any notice provided for in this Policy (except the giving of notice to apply for an Extended Reporting Period as provided in Section V, Extended Reporting Period, the giving of notice as provided in Section VIII, Proof of Loss and Legal Proceedings, of the CyberSecurity Coverage Part and the giving of notice of **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances as provided in the Reporting section of the applicable **Liability Coverage Part**). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

---

**XVI.    ALTERATION AND ASSIGNMENT**

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of Chubb, a division of Federal Insurance Company.

---

**XVII.    TERRITORY**

This Policy shall apply anywhere in the world.

---

**XVIII.    HEADINGS**

The descriptions in the headings and subheadings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.

---

**XIX.    COMPLIANCE WITH TRADE SANCTIONS**

This insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the Company from providing insurance.

---

# Schedule of Forms

To be attached to and form part of
Policy No.  8255-7330

Company:   Federal Insurance Company

Issued to:   MBNF Investments, LLC

ForeFront Portfolio 3 0 General Terms and Conditions Policy

14-02-17798 (12/10 ed.)

14-02-22814 (12/17 ed.)

ForeFront Portfolio 3.0 Employed Lawyers Liability Coverage Part Federal

14-02-17587 (3/11 ed.)

14-02-17588 (3/11 ed.)

14-02-17803 (12/10 ed.)

14-02-18698 (2/12 ed.)

14-02-22834 (9/17 ed.)

Form 14-02-0854 (Ed. 04-01)

**ENDORSEMENT**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement: January 11, 2019                    Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8255-7330

Issued to:  MBNF Investments, LLC

---

### PENNSYLVANIA AMENDATORY ENDORSEMENT
### TO THE GENERAL TERMS AND CONDITIONS

In consideration of the premium charged, it is agreed that:

1.    Section V, Extended Reporting Period, is deleted and replaced with the following:

With respect to the **Liability Coverage Parts**:

If the Company or the **Parent Organization** terminates or does not renew this Policy, for any reason, then the **Parent Organization** shall have the right to purchase an Extended Reporting Period for the twelve (12) month period beginning on the effective date of the termination or non-renewal of this Policy.  The premium for this Extended Reporting Period shall be set forth in Item 5 (B) of the Declarations.

This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the additional premium due is received by the Company within sixty (60) days following the effective date of the termination or non-renewal of this Policy.

If the Extended Reporting Period is purchased, then coverage otherwise afforded by this Endorsement will be extended to apply to **Claims** first made during such Extended Reporting Period and reported in accordance with this Endorsement, but only for **Wrongful Acts** occurring or allegedly occurring before the effective date of termination or nonrenewal.  The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Year**. The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the immediately preceding **Policy Year**.

Where premium is due for coverage under this Policy, any payment received by the Company as payment for the Extended Reporting Period shall first be applied to such premium owing for this Policy. An Extended Reporting Period will not take effect until the premium due for this Policy is paid in full and the premium for the Extended Reporting Period coverage is paid promptly when due.

2.      Subparagraph (A)(3) of Section X, Termination of Policy, is amended to add the following at the end thereof:

>   provided that such notice of termination by the Company will include the reason for, and the effective date of, such termination and will be delivered or mailed, by first class or registered mail, to the **Parent Organization** at its last known address;

3.      The last sentence of Subparagraph (B) of Section X, Termination of Policy, is deleted and replaced with the following:

>   Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made (i) not later than thirty (30) days after the effective date of termination, if this Policy is terminated by the **Parent Organization**; or (ii) not later than ten (10) business days after the effective date of termination if this Policy is terminated by Company.

4.      Section X, Termination of Policy, is amended further to add the following at the end of such Section:

>   In the event of termination or non-renewal by the Company, the **Parent Organization** will have the right to request information regarding **Loss** and **Claims** or Covered Subpoenas under this Policy by submitting a written request to the Company within ten (10) days after receipt of the notice of termination or non-renewal from the Company. The Company will provide the requested information within thirty (30) days after receipt of the Parent Organization's written request.
>
>   Proof of mailing will be sufficient proof of notice for all notices referenced in this Section.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes and intent of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supercede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the State of Pennsylvania.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: January 11, 2019          Federal Insurance Company

                                                  Endorsement/Rider No. 2

                                                  To be attached to and
                                                  form a part of Policy No. 8255-7330

Issued to:  MBNF Investments, LLC

---

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

In consideration of the premium charged, it is agreed that:

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk
    Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the
    Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such
    losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro
    rata allocation in accordance with procedures established by the Secretary of the Treasury.

    "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance
    with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such
    Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the
    following:

    1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of
        insurance subject to the Terrorism Risk Insurance Act; and

    2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is
        committed by an individual or individuals as part of an effort to coerce the civilian population of the
        United States or to influence the policy or affect the conduct of the United States Government by
        coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism
    exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**CHUBB**   **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Employed Lawyers Liability*
*Coverage Part*

**ELL DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.   READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**  **Parent Organization:**          MBNF Investments, LLC

**Item 2.**  **Maximum Aggregate Limit of Liability for this Coverage Part:**          $1,000,000.00

**Item 3.**  **Retentions:**

(A)  Insuring Clause (A)
Individual Non-Indemnified Liability Coverage:          $0.00

(B)  Insuring Clause (B)
Individual Indemnified Liability Coverage:          $25,000.00

**Item 4.**  **Pending or Prior Proceedings Date:**          January 11, 2019

 Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Employed Lawyers Liability*
*Coverage Part*

**In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:**

## I.    INSURING CLAUSES

**Insuring Clause (A):  Individual Non-Indemnified Liability Coverage**

(A)    The Company shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent that such **Loss** is not indemnified by an **Organization**.

**Insuring Clause (B):  Individual Indemnified Liability Coverage**

(B)    The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent the **Organization** indemnifies the **Insured Person** for such **Loss** as permitted or required by law.

## II.    SUBPOENA DEFENSE COSTS COVERAGE

The Company shall pay **Subpoena Defense Costs** on behalf on an **Insured Person** on account of any **Covered Subpoena** first served during the **Policy Period**, provided that the **Wrongful Act** giving rise to the **Covered Subpoena** has not resulted in a **Claim** against an **Insured Person**, but only if such **Covered Subpoena** is reported to the Company in writing as soon as practicable but in no event later than ninety (90) days after such **Covered Subpoena** is first served.  The Company's maximum aggregate limit of liability for such **Subpoena Defense Costs** shall be $10,000, which shall be part of, not in addition to, the Maximum Aggregate Limit of Liability for this Coverage Part set forth in Item 2 of the ELL Declarations.

## III.    DEFINITIONS

For purposes of this Coverage Part:

**Application** means:

(A)    any portion of an application given to the Company for this Policy, including any attachments, written information or materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part; and

(B)    any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Claim** means any:

(A)    written demand first received by an **Insured Person** for monetary or non-monetary relief, including injunctive relief;

(B)    civil proceeding commenced by the service of a complaint or similar pleading;

(C)    criminal proceeding commenced by: (1) an arrest; or (2) a return of an indictment, information or similar document;

(D)    formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

(E)    arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document; or

CHUBB° Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0$^{SM}$*
*Employed Lawyers Liability*
*Coverage Part*

(F)     official request for **Extradition**,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

(G)     judicial, administrative, bar association or other proceeding against an **Employed Lawyer** which concerns the eligibility or license of such **Employed Lawyer** to practice law;

(H)     civil, criminal, administrative or regulatory investigation or interview of an **Employed Lawyer** for a **Wrongful Act** once such **Employed Lawyer** is identified in writing by any investigative authority as a target of such investigation or interview, including when such **Employed Lawyer** is served with a target letter or similar document; or

(I)     written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Subsections (A) through (H) above.

**Covered Subpoena** means a subpoena seeking documents, testimony or information solely in connection with an **Insured Person's Wrongful Act**.

**Defense Costs** means **Subpoena Defense Costs** and that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of an **Insured Person**, **Executive** or employee of an **Organization**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds.

**Employed Lawyer** means any person admitted to practice law anywhere in the world who is, was or becomes a full-time or part-time employee of an **Organization** for the purpose of providing legal services to the **Organization**.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996), the English Pension Scheme Act 1993 or the English Pensions Act 1995; all as amended; any similar statutory or common law anywhere in the world; or any rule or regulation promulgated under any such Act or law.

**Executive** means any natural person who is, was or will be:

(A)     a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)     a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America; or

(C)     a holder of an equivalent position to those described above in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

**Financial Impairment** means the status of an **Organization** resulting from:

(A)     the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(B)     such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country,

provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization**, or other party determined to have standing, for authorization of the **Organization** to indemnify an **Insured Person** for **Loss**; provided further that, the Company may, in its sole discretion, waive the foregoing requirement.

CHUBB® Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Employed Lawyers Liability*
*Coverage Part*

**First Inception Date** means the inception date of the first Employed Lawyers Professional Liability policy or coverage part issued by the Company and continuously renewed by the Company until the inception date of this current Policy.

**Independent Contractor Attorney** means any person admitted to practice law who provides legal services to an **Organization**, is indemnified by the **Organization** under an independent contractor services agreement, and is not employed by a law firm.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means any:

(A)     **Employed Lawyer**;

(B)     **Legal Assistant**;

(C)     person who is, was or becomes a full-time or part-time employee of an **Organization** whose duties include serving as a notary public, but only while acting in his or her capacity as a notary public under the supervision of an **Employed Lawyer**;

(D)     **Temporary Attorney**;

(E)     **Independent Contractor Attorney**; and

(F)     a holder of an equivalent position to Subsections (A), (B) or (C) above in any **Organization** incorporated, formed or organized anywhere in the world,

provided that **Insured Person** shall not include any **Secondment Attorney**.

**Legal Assistant** means any person who is, was or becomes a full-time or part-time employee of an **Organization** who supports an **Employed Lawyer** in the performance of **Professional Services**.

**Loss** means the amount which any **Insured Person** becomes legally obligated to pay as a result of any **Claim**, including:

(A)     compensatory damages;

(B)     punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages;

(C)     civil penalties assessed against an **Employed Lawyer** pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act), if and to the extent such penalties are insurable under the law of the jurisdiction in which such penalties are assessed;

(D)     judgments, including pre-judgment and post-judgment interest;

(E)     settlements; and

(F)     **Defense Costs**,

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)     cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;

(2)     amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)     tax, fine, sanction or penalty imposed by law; except as provided in Subsections (B) and (C) above with respect to punitive, exemplary or multiplied damages or civil penalties;

(4)     amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not then a **Claim**, other than **Subpoena Defense Costs**, even if (a) such amount also benefits the defense of a covered **Claim**; or (b) such action, proceeding or demand subsequently gives rise to a **Claim**;

CHUBB® Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0^SM*
*Employed Lawyers Liability*
*Coverage Part*

(5)  amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets;

(6)  any salary, wages, commissions, benefits or monetary payments owed to any **Insured Person**, **Executive**, or employee of an **Organization**; or

(7)  cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**.

**Moonlighting Legal Services** means legal services performed by an **Employed Lawyer** for others outside the scope of his or her employment with an **Organization**, including legal services rendered to an **Executive** or employee of the **Organization**, solely while such **Employed Lawyer** is a full-time or part-time employee of the **Organization**, provided that **Moonlighting Legal Services** shall not include such services performed by an **Employed Lawyer**: (A) in his or her capacity as an owner, principal, partner, director, officer, member, manager, employee or any equivalent position of an entity that is not the **Organization**; or (B) in connection with a trust or estate when such **Employed Lawyer** is also a beneficiary of such trust or estate.

**Personal Injury** means:

(A)  libel, slander, product disparagement, trade libel or other form of defamation;

(B)  invasion or infringement of the right of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness;

(C)  malicious prosecution or abuse of process;

(D)  false arrest, detention or imprisonment; or

(E)  wrongful entry or eviction, or other invasion of the right of private occupancy.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Professional Services** means:

(A)  legal services and notary public services, rendered to an **Organization** by an **Employed Lawyer** solely while acting in his or her capacity as such;

(B)  legal services and notary public services, rendered to an **Organization** by an **Independent Contractor Attorney**, **Temporary Attorney** or **Legal Assistant** solely while acting: (1) in his or her capacity as such; and (2) under the supervision and direction of an **Employed Lawyer**;

(C)  **Moonlighting Legal Services**; or

(D)  pro bono legal services rendered by an **Employed Lawyer** without compensation to indigent clients or for non-profit public interest groups solely while such **Employed Lawyer** is a full-time or part-time employee of an **Organization**.

**Secondment Attorney** means any person admitted to practice law anywhere in the world employed by an outside law firm and temporarily assigned by agreement between such law firm and an **Organization** to provide legal services.

**Subpoena Defense Costs** means reasonable attorneys fees incurred in connection with a **Covered Subpoena** including: (A) seeking to quash or modify a subpoena, (B) opposing any motion to enforce a subpoena against an **Insured Person;** and (C) representation of an **Insured Person** during the document production, witness preparation, and giving of testimony in connection with such subpoena.

**Temporary Attorney** means any person admitted to practice law anywhere in the world provided by a temporary employment agency through a service agreement between an **Organization** and the temporary employment agency to provide legal services to the **Organization**, but only if the **Organization** agrees in writing no later than thirty (30) days after a **Claim** is reported in accordance with Section V, Reporting, to indemnify the **Temporary Attorney** for **Loss** arising out of such **Claim**.

CHUBB' Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
**Employed Lawyers Liability**
**Coverage Part**

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty or **Personal Injury** committed, attempted, or allegedly committed or attempted solely in the performance of or failure to perform **Professional Services** by an **Insured Person** while acting in his or her capacity as such.

## IV.    EXCLUSIONS

The Company shall not be liable for **Loss** on account of any **Claim**:

(A)    Prior Notice
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the GTC Declarations, was the subject of any notice accepted under any policy or coverage part of which this Coverage Part is a direct or indirect renewal or replacement;

(B)    Pending or Prior Proceedings
based upon, arising from or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against, any **Insured Person**, on or prior to the Pending or Prior Proceedings Date set forth in Item 4 of the ELL Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(C)    Bodily Injury/Property Damage
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (C) shall not apply to **Loss** for any mental anguish or emotional distress or humiliation resulting from **Personal Injury**;

(D)    Pollution
based upon, arising from or in consequence of any:

(1)    discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

(2)    treatment, removal or disposal of any **Pollutants**; or

(3)    regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to an **Organization**, its security holders or its creditors based upon, arising from or in consequence of any matter described in Paragraphs (1), (2) or (3) of this Exclusion (D),

provided that this Exclusion (D) shall not apply to **Loss** which an **Insured Person** becomes legally obligated to pay and for which such **Insured Person** is not indemnified by an **Organization** either because the **Organization** is not permitted by common or statutory law to grant such indemnification or because of the **Financial Impairment** of the **Organization**, provided that this exception shall only apply to **Claims** first made during the **Policy Period** or the Extended Reporting Period, if applicable;

(E)    ERISA
for any violation of the responsibilities, obligations or duties imposed by **ERISA**, provided that this Exclusion (E) shall not apply to **Loss** arising out of the performance of **Professional Services** rendered to a fiduciary of a plan sponsored by an **Organization** for the benefit of the employees and **Executives** of the **Organization**;

(F)    Prior Knowledge
based upon, arising from or in consequence of any **Wrongful Act** first committed before the **First Inception Date**, if, on or before such date, any **Insured Person** knew or could have reasonably foreseen that such **Wrongful Act** did or could result in a **Claim** against any **Insured**;

⊏ H ⊔ B B˙  Chubb Group of Insurance Companies
           202B Hall's Mill Road
           Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
***Employed Lawyers Liability***
***Coverage Part***

(G)    <u>Insured v. Insured</u>
   (1)    brought by an **Insured Person**, provided that this Exclusion (G)(1) shall not apply to a **Claim**:

      (a)    for contribution or indemnity arising from another **Claim** otherwise covered under this Coverage Part;

      (b)    brought by any **Insured Person** who has ceased serving in his or her capacity as an **Insured Person** for at least one (1) year; or

      (c)    brought in such **Insured Person's** capacity as a whistleblower as defined under any federal, state, local or foreign law;

   (2)    brought by an **Organization**, provided that this Exclusion (G)(2) shall not apply to **Loss** in the event of **Financial Impairment** of the **Organization**.

      For all other **Claims** brought by an **Organization**, this Exclusion (G)(2) shall not apply to **Defense Costs**; provided further that the Company's maximum aggregate limit of liability for such **Defense Costs** on account of all such **Claims** shall be equal to eighty percent (80%) of the Maximum Aggregate Limit of Liability stated in Item 2 of the ELL Declarations and shall be part of, not in addition to, such Maximum Aggregate Limit of Liability; or

   (3)    brought by any security holder of the **Organization** on behalf of the **Organization** as a derivative action, provided this Exclusion (G)(3) shall not apply to a **Claim** brought without the solicitation, assistance, active participation, or intervention of: (a) the **Organization**; and (b) any **Insured Persons** and **Executives** who are serving or have served in such capacity within the past two (2) years;

(H)    <u>Publicly Traded Securities</u>
   based upon, arising from or in consequence of (1) any public offering of securities issued by any **Organization**, or (2) the purchase or sale of any publicly traded securities for which the **Organization** is subject to the Securities Act of 1934, provided that this Exclusion (H) shall not apply to **Loss**:

      (a)    based upon, arising from or in consequence of an offering, sale or purchase of securities that are not required to be registered under the Securities Act of 1933 or any similar foreign law that regulates the offering, sale or purchase of securities;

      (b)    on account of a **Claim** made by any securityholder of an **Organization** for the failure of the **Organization** to undertake or complete the initial public offering or sale of securities of the **Organization**; or

      (c)    for any **Wrongful Act** relating to an **Organization's** preparation for any public offering, including any road show presentation to potential investors or other similar presentation, made by the **Organization** and its **Executives** via any medium in connection with such public offering, if such offering does not occur;

(I)    <u>Wage and Hour</u>
   for any violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including the Fair Labor Standards Act and the Equal Pay Act) or amendments to or regulations promulgated under any such law that governs wage, hour and payroll policies and practices ("Wage and Hour Laws"), provided that this Exclusion (I) shall not apply to **Defense Costs**;

(J)    <u>NLRA, WARN, COBRA and OSHA</u>
   for any violation of the responsibilities, obligations or duties imposed by the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world, provided that this Exclusion (J) shall not apply to **Defense Costs**;

CHUBB® Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0℠**
**Employed Lawyers Liability**
**Coverage Part**

(K)   Employment Practices
based upon, arising from or in consequence of any employment practice not included in Exclusions (I) and (J) above, including discrimination, harassment, retaliation, breach of employment contract, or wrongful dismissal, discharge or termination; provided that this Exclusion (K) shall not apply to **Loss** for any violation of such employment practice committed by an entity or person, other than an **Employed Lawyer**, to the extent that such employment practice was committed in reliance upon **Professional Services** performed by an **Insured Person**;

(L)   Patent and Trade Secret
based upon, arising from or in consequence of any infringement of patent, false patent marking, or misappropriation of trade secrets;

(M)   Other Insurance
for which an **Insured Person** has coverage under any valid and collectible Directors and Officers Liability policy, Employment Practices Liability policy, Errors and Omissions policy, Media Liability policy, Lawyers Professional Liability policy or any similar insurance policy; whether or not the retention or deductible of such policy has been exhausted, and regardless of whether such policy is stated to be primary, contributory, excess, contingent or otherwise. This Exclusion (M) shall not apply to the amount of **Loss** that is in excess of both the amount of any retention or deductible and the limit or remaining limit of liability of such other policy; or

(N)   Notary
based upon, arising from or in consequence of any **Insured Person** notarizing any signature not made in the presence of such **Insured Person** at that time of such notarization; or

(O)   Conduct
based upon, arising from or in consequence of:

(1)   any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an **Insured Person**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes such an act or omission or violation; or

(2)   an **Insured Person** having gained any profit, remuneration or other advantage to which such **Insured Person** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes the gaining of such profit, remuneration or advantage,

provided that no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person**;

## V.   REPORTING

(A)   An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after an **Insured Person** or any person with the responsibility for the management of insurance claims of an **Organization** becomes aware of such **Claim**, but in no event later than:

(1)   if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2)   the expiration date of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization**, stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

CHUBB'  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0^{SM}*
*Employed Lawyers Liability*
*Coverage Part*

(B)    If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after an **Insured Person** or any person with the responsibility for the management of insurance claims of an **Organization** becomes aware of such **Claim**.

(C)    An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require, and shall include in any notice under Subsections (A) or (B) above of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

## VI.    RETENTION AND PRESUMPTIVE INDEMNIFICATION

(A)    The Company's liability under this Coverage Part  shall apply only to that part of each **Loss** which is in excess of the applicable Retention set forth in Item 3 of the ELL Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk.

(B)    If different parts of a single **Claim** are subject to different Retentions in different Insuring Clauses within this Coverage Part, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(C)    If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such retentions shall not exceed the largest applicable Retention.

(D)    **Claims** shall be subject to the Retention(s) applicable to the **Policy Year** during which such **Claims** are made or deemed to have been made.

(E)    If an **Organization** fails or refuses, other than for reasons of **Financial Impairment**, to indemnify an **Insured Person** for **Loss** to the fullest extent permitted by statutory or common law, then any payment by the Company of such **Loss** shall be excess of the Insuring Clause (B), Individual Indemnified Liability Coverage, Retention set forth in Item 3 of the ELL Declarations.

## VII.    DEFENSE AND SETTLEMENT

(A)    The Company shall have the right and duty to defend any **Claim** covered by this Coverage Part. Coverage shall apply even if any of the allegations are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)    The Company may make any investigation it deems necessary and may, with the consent of the **Insured Persons** against whom a **Claim** is made, make any settlement of any **Claim** it deems appropriate.

(C)    No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(D)    The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the ELL Declarations or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations, if applicable, has been exhausted by the payment of **Loss** and the premium shall be deemed fully earned.

CHUBB° Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Employed Lawyers Liability*
*Coverage Part*

(E)    The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agrees they will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

(F)    The Company shall not seek repayment from an **Insured Person** of any **Defense Costs** paid by the Company that are deemed uninsured pursuant to Exclusion IV(O), Conduct, unless the applicable determination standard (whether a final, non-appealable adjudication or other determination standard) set forth in such Exclusion has been met.

## VIII.    ALLOCATION

(A)    If the **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then such **Insured** and the Company shall allocate such amount between covered **Loss** (including an allocation of **Defense Costs**) and uncovered loss based upon the relative legal exposure of the parties to such matters.  The Company shall not be liable under this Policy for the portion of such amount allocated to uncovered loss.

(B)    If such **Insured** and the Company agree on an allocation of **Defense Costs**, then the Company shall pay, on behalf of such **Insured**, **Defense Costs** allocated to covered **Loss**.  If such **Insured** and the Company cannot agree on an allocation of **Defense Costs**:

(1)    no presumption as to allocation of **Loss**, including **Defense Costs**, shall exist in any arbitration, suit or other proceeding;

(2)    the Company shall pay, on behalf of such **Insured**, **Defense Costs** which the Company believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined; and

(3)    the Company, if requested by such **Insured**, shall submit the dispute regarding the allocation of **Defense Costs** to binding arbitration.  The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by such **Insured**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

## IX.    PRIORITY OF PAYMENTS

(A)    In the event of **Loss** arising from a **Claim** for which payment is concurrently due under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, and (B), Individual Indemnified Liability Coverage, the Company shall:

(1)    first, pay **Loss** for which coverage is provided under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, then

(2)    with respect to whatever remaining amount of the Limit of Liability is available after payment under Subsection (A) above, pay such **Loss** for which coverage is provided under Insuring Clause (B), Individual Indemnified Liability Coverage.

(B)    Except as otherwise provided in this Subsection (A) above, the Company may pay covered **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

CHUBB° Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0<sup>SM</sup>*
*Employed Lawyers Liability*
*Coverage Part*

**X.    OTHER INSURANCE**

(A)    If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(B)    Nothing in this Section X shall be construed to limit or impair the operation of Exclusion IV(M), Other Insurance.

**XI.    REPRESENTATIONS AND SEVERABILITY**

(A)    In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part.  Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(B)    The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**. With respect to the declarations and statements in such **Application,** no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)    However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to any **Insured Person** who knew of such misrepresentations (whether or not such **Insured Person** knew such **Application** contained such misrepresentations) or any **Organization** to the extent it indemnifies any such **Insured Person**.

(D)    The Company shall not be entitled under any circumstances to rescind this Coverage Part with respect to any **Insured**.

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3.0 Employed Lawyers Liability Coverage Part Federal

Effective date of
this endorsement/rider: January 11, 2019          Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8255-7330

Issued to: MBNF Investments, LLC

---

### AMENDED BODILY INJURY/PROPERTY DAMAGE EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to the Coverage Part identified above, the Policy is amended as follows:

Exclusion (C) of Section IV, EXCLUSIONS, is deleted and replaced by the following:

(C)     Bodily Injury/Property Damage
        based upon, arising from, or in consequence of bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (C) shall not apply to **Loss** for any mental anguish or emotional distress or humiliation resulting from **Personal Injury**;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-17587 (03/2011)          Page 1

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3.0 Employed Lawyers Liability Coverage Part Federal

Effective date of
this endorsement/rider: January 11, 2019                Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8255-7330

Issued to: MBNF Investments, LLC

---

ANTITRUST EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that, solely with respect to the Coverage Part identified above, the Policy is amended as follows:

Section IV, EXCLUSIONS, is amended by adding the following exclusion:

Antitrust

The Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-17588 (03/2011)                Page 1

**ENDORSEMENT**

Coverage Section:  ForeFront Portfolio 3.0 Employed Lawyers Liability Coverage Part Federal

Effective date of
this endorsement: January 11, 2019          Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8255-7330

Issued to:  MBNF Investments, LLC

---

### PENNSYLVANIA AMENDATORY ENDORSEMENT
### TO THE EMPLOYED LAWYERS LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed that:

1.    The phrase "including pre-judgment and post-judgment interest" as used in Subparagraph (D) of the definition of **Loss** set forth in Section III, Definitions, is deleted.

2.    Subparagraph (B)(3) of Section VIII, Allocation, is amended to add the following at the end of such paragraph: Any arbitration pursuant to this Section shall take place in Pennsylvania or such other place in which the **Insured** has its principal place of business.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes and intent of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supercede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the State of Pennsylvania.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

14-02-17803 (12/2010)          Page 1

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3.0 Employed Lawyers Liability Coverage Part Federal

Effective date of
this endorsement/rider: January 11, 2019          Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8255-7330

Issued to: MBNF Investments, LLC

FOREFRONT PORTFOLIO 3.0 FOR HEALTH CARE ORGANIZATIONS ELL ENDORSEMENT
(WITH HEALTH CARE FRAUD & ABUSE EXCLUSION)

In consideration of the premium charged, it is agreed that:

(1)     Section III, Definitions, of this Coverage Part is amended as follows:

(a) Amend Executive

Subsection (A) of the definition of **Executive** is amended to add the following:

trustee, trustee emeritus, department head, executive director, chief compliance officer, duly
constituted committee member, and member of the staff or faculty;

(b) Amend Loss

Subsection (C) of the definition of **Loss** is deleted and replaced with the following:

(C)     civil fines or civil penalties assessed against an **Employed Lawyer** pursuant to:

(1)     15 U.S.C §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act); or

(2)     Title II of the Health Insurance Portability and Accountability Act of 1996, amendments to
such law or regulations promulgated under such law concerning privacy of health information
("HIPAA Fines and Penalties"); provided that the Company's maximum aggregate liability for
all HIPAA Fines and Penalties on account of all **Claims** first made during the **Policy Year**
shall be $25,000.00, which amount is part of, and not in addition to, the Maximum Aggregate
Limit of Liability set forth in Item 2 of the ELL Declarations,

if and to the extent such fines or penalties are insurable under the law pursuant to which
this Coverage Part is construed;

(c) Amend Pollutants

The definition of **Pollutants** is amended to add the following:

**Nuclear Materials**; and infectious or medical waste.

(2)     Section III, Definitions, of this Coverage Part is amended by adding the following:

**Nuclear Materials** means any nuclear or radioactive substance or hazardous properties resulting from any nuclear reaction, nuclear radiation or radioactive contamination.

(3)    Section IV, Exclusion (C), of this Coverage Part is deleted and replaced with the following:

(C)    Bodily Injury/Property Damage

based upon, arising from, or in consequence of bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (C) shall not apply to **Loss** for any mental anguish or emotional distress or humiliation resulting from **Personal Injury**;

(4)    Section IV, Exclusions, of this Coverage Part is amended by adding the following:

The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from or in consequence of any actual or alleged violation of the Federal False Claims Act, any federal, state or local anti-kickback, self-referral or healthcare fraud and abuse law, or any similar federal, state or local statutory or common law anywhere in the world, or amendments to or regulations promulgated under any such law; provided that this exclusion shall not include any employment-related **Wrongful Act**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Employed Lawyers Liability Coverage Part Federal

Effective date of
this endorsement/rider: January 11, 2019          Federal Insurance Company

                                                  Endorsement/Rider No. 5

                                                  To be attached to and
                                                  form a part of Policy No. 8255-7330

Issued to:  MBNF Investments, LLC

---

SARBANES OXLEY ENDORSEMENT

In consideration of the premium charged, it is agreed that the Employed Lawyers Liability Coverage Part is amended as follows, Section III, Definitions, **Claim**, is amended to include the following:

- administrative, bar association, disciplinary or other proceeding against an **Employed Lawyer** pursuant to 17 CFR Part 205.6(b), which section was promulgated pursuant to Section 307 of the Sarbanes-Oxley Act of 2002.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-22834  (09/2017)          Page 1

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement: January 11, 2019

Company:  Federal Insurance Company

Endorsement No. 4

To be attached to and
form a part of Policy No. 8255-7330

Issued to:  MBNF Investments, LLC

---

AMEND SUBSIDIARY ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to any purchased **Liability Coverage Part**, the definition of **Subsidiary** in Section II, Definitions, of the General Terms and Conditions is amended to include the following entity(ies):

MBNF Investments, LLC
American Academic Health System, LLC

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement: January 11, 2019          Company: Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8255-7330

Issued to: MBNF Investments, LLC

---

AMEND PARENT ORGANIZATION ENDORSEMENT

In consideration of the premium charged, it is agreed that Item 1 of the GTC Declarations is deleted and
replaced with the following:

**Item 1.**     **Parent Organization:**     Philadelphia Academic Health Holdings, LLC
                Principal Address:            1500 Market Street, Suite 2400 - West Tower
                                              Philadelphia, PA 19102

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions
of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

PREMIUM BILL

Insured:    Philadelphia Academic Health Holdings, LLC                    Date:    01/09/2020


Producer:    LOCKTON COMPANIES, LLC.
             777 S FIGUEROA ST 52 FL
             LOS ANGELES, CA 90017-0000

Company:    Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:    8255-7330

Policy Period:    January 11, 2019 to January 11, 2020

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 8255-7330

| Product | Effective Date | Premium |
|---------|----------------|---------|
| FFP30 | 01/11/20 | $12,072.00 |
| | | |
| | | |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| TOTAL POLICY PREMIUM | $12,072.00 |
| TOTAL INSTALLMENT PREMIUM DUE | $12,072.00 |

Form 26-10-0426 (Ed. 2/98)

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: January 11, 2020          Federal Insurance Company

                                                  Endorsement/Rider No. 5

                                                  To be attached to and
                                                  form a part of Policy No. 8255-7330

Issued to:  Philadelphia Academic Health Holdings, LLC

ELECTION OF EXTENDED REPORTING PERIOD ENDORSEMENT

In consideration of an additional premium of $12,072.00 charged, the **Insureds** have elected to purchase an Extended Reporting Period from January 11, 2020 to January 11, 2021 in accordance with Section V, Extended Reporting Period, of the General Terms and Conditions.  Accordingly, this Policy is amended as follows:

(1)     Item 2 of the GTC Declarations is deleted and replaced with the following:

        Item 2.      **Policy Period**:
                     (A)     From:    January 11, 2019
                     (B)     To:      January 11, 2021
                     At 12:01 AM local time at the address shown in Item 1.

(2)     The limit of liability set forth in Item 3 of the GTC Declarations shall remain the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the **Policy Period** specified in Item 2 of the GTC Declarations (as amended pursuant to paragraph (1) above).

(3)     No coverage will be available under this Policy for **Loss** on account of any **Claim** based upon, arising from or in consequence of any **Wrongful Act** after January 11, 2020.

(4)     The **Insureds** shall have no right to purchase an extension of the coverage granted by this Policy after the expiration of the **Policy Period** specified in Item 2 of the GTC Declarations (as amended pursuant to paragraph (1) above).  Accordingly, Section V., Extended Reporting Period, of the General Terms and Conditions is deleted; Items 5(A) and 5(B) of the GTC Declarations are deleted; and all other references in this Policy to an "Extended Reporting Period" are also deleted.

(5)     Section VI, Changes in Exposure, of the General Terms and Conditions is deleted.

(6)     Section X, Termination of Policy, of the General Terms and Conditions, is amended by adding the following:

        The entire premium for this Policy is fully earned as of January 11, 2020. The Company will not be required to renew this Policy upon its expiration.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative