**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CENTER CITY HEALTHCARE, LLC d/b/a HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 19-11466 (MWF)<br><br>Jointly Administered<br><br>**Objection Deadline: May 30, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: June 6, 2023 at 11:30 a.m. (ET)** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE DEBTORS TO ENTER
INTO PREMIUM FINANCING AGREEMENT WITH
BANK DIRECT CAPITAL FINANCE WITH RESPECT TO
PROPERTY INSURANCE AND (II) GRANTING RELATED RELIEF**

Center City Healthcare, LLC d/b/a Hahnemann University Hospital ("**CCH**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through their proposed undersigned counsel, file this motion (this "**Motion**") pursuant to sections 105, 362, 363, 364, 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 4001, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) authorizing the Debtors to enter into a Premium Financing Agreement (as defined below) with Bank Direct Capital Finance (the "**Lender**") with respect to property insurance, including incurring secured debt thereunder,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540). The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

and (ii) granting related relief.  In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of Allen Wilen in Support of Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter into Premium Financing Agreement with Bank Direct Capital Finance with Respect to Property Insurance and (II) Granting Related Relief*, and respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On June 30 and July 1, 2019 (collectively, the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On July 15, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Center City Healthcare, LLC d/b/a Hahnemann University Hospital, *et al.* [D.I. 182] (the "**Committee**").

3. A description of the Debtors' businesses as of the Petition Date is set forth in the *Declaration of Allen Wilen in Support of First Day Relief* [D.I. 2].

4. On July 26, 2019, the Court entered a *Final Order Authorizing the Debtors to (I) Continue Insurance Coverage Entered into Prepetition and Satisfy Prepetition Obligations Related Thereto; (II) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies; (III) Honor the Terms of Premium Financing Agreement and Pay Premiums Thereunder; and (IV) Enter into New Premium Financing Agreements in the Ordinary Course of Business* [D.I. 290] (the "**Prior Insurance Order**").

5. Pursuant to the Prior Insurance Order, the Debtors were authorized to "purchase insurance policies, and to enter into premium financing agreements as necessary, to the extent that the Debtors determined, in their sole discretion, that such action was in the best interest of their estates", including entering into premium financing agreements secured by unearned premiums and insurance policy proceeds pursuant to Section 364(c). *See* Prior Insurance Order, at ¶¶ 4, 6.

6. Subsequent to the entry of the Prior Insurance Order, the Debtors, the Committee, Broad Street Healthcare Properties, LLC, Broad Street Healthcare Properties II, LLC, Broad Street Healthcare Properties III, LLC, Harrison Street Real Estate, LLC and certain related entities, together with certain other parties, engaged in mediation, with the Honorable Kevin J. Carey (ret.) serving as mediator. *See Order Appointing Mediator in Connection with Claims By and Between the Debtors' Estates and the MBNF Non-Debtor Entities*, entered February 23, 2021 [D.I. 2119] and *Order on Motion of HSEP VI Holding, LLC and Its Affiliates to Intervene/Participate in Mediation*, entered July 28, 2021 [D.I. 2648].

7. As a result of the foregoing mediation, the parties entered into a Memorandum of Understanding ("**MOU**"), which was approved by the Court on August 29, 2022. *See Order*

*(I) Approving Memorandum of Understanding Re Global Settlement Among, Inter Alia, Debtors, Debtors' Subsidiaries, Committee, Tenet, Conifer, MBNF Parties, HSRE Entities and CONA Parties, which Provides for, Inter Alia, Resolution of Adversary Proceedings, Withdrawal of Claims, Allocation and Distribution of Assets from RRG and Consensual Substantive Consolidation of Certain Assets, Contracts and Liabilities of Non-Debtor Broad Street PropCos with Debtor Center City Healthcare, LLC, and Granting Related Relief; and (II) Approving Related Settlement Agreement and Release with Travelers Casualty and Surety Company of America* [D.I. 4216] (the "**MOU Order**").

8. Pursuant to the MOU and the MOU Order, the following real estate (the "**Broad Street Real Estate**") was substantively consolidated with the estate of Debtor CCH:

| Property | Owner | Address | OPA |
|---|---|---|---|
| North Tower, South Tower | Broad Street Healthcare Properties, LLC | 222-248 N. Broad Street | 772025002 |
| (Land next to SHSH Building) | Broad Street Healthcare Properties, LLC | 221-223 N. 15th Street | 772028498 |
| Stiles Alumni Hall Underground | Broad Street Healthcare Properties, LLC | 325 N. 15th Street | 881038202 |
| Martinelli Park | Broad Street Healthcare Properties II, LLC | 300-304 N. Broad Street | 885620242 |
| (redevelopment land/ surface parking) (city block) | Broad Street Healthcare Properties III, LLC | 200-214 N. Broad Street | 885467862 |
| SHSH Building (city block) | Broad Street Healthcare Properties III, LLC | 201-219 N. 15th Street | 772028496 |

9. The MOU contemplates, among other things, the management, marketing and sale of the Broad Street Real Estate and the sharing of its net sale proceeds among the Debtors and certain other parties to the MOU.

10. In anticipation of the expiration of the current property insurance for the Broad Street Real Estate, CCH has arranged for the renewal of the existing property insurance pursuant

to multiple policies (collectively, the "**Property Insurance Policy**") with a group of insurers[2] (collectively, the "**Insurers**").

11. Pursuant to the terms of the Property Insurance Policy, CCH is required to pay the annual premium for the policy, in the amount of approximately $852,515.00, within thirty days of binding coverage.

12. Although CCH has adequate funds to pay the entire premium for the Property Insurance Policy,[3] by the Motion it seeks Court approval to finance the premium for the Property Insurance Policy in order to manage available funds, in accordance with the budget provided in connection with the recent additional secured funding for the Broad Street Real Estate provided by Philadelphia Academic Health System, LLC, while the sale process for the Broad Street Real Estate proceeds.

13. Prior to the filing of this Motion, CCH obtained several proposals for the financing of the premium for the Property Insurance Policy and determined that the proposal submitted by the Lender is most favorable. Attached hereto as **Exhibit B** is a copy of the Premium Finance Agreement Promissory Note (the "**Premium Financing Agreement**") proposed by the Lender. As set forth in greater detail therein, key terms of the Premium Finance Agreement include the following[4]:

---

[2] The Insurers include Endurance American Insurance Co., AXIS Surplus Insurance Company, Lexington Insurance Company, Navigators Specialty Insurance Co., Aspen Specialty Insurance Company, Landmark American Insurance Co., Starr Surplus Lines Insurance Company, MSIG Specialty Insurance USA Inc., Ascot Specialty Insurance Company and Scottsdale Insurance Company.

[3] CCH is funding the operating costs of the Broad Street Properties from a supplemental secured loan from Debtor Philadelphia Academic Health System, LLC. See *Order (I) Authorizing Philadelphia Academic Health System, LLC to Make Supplemental Secured Loan to Support Broad Street Real Estate Pursuant to Memorandum of Understanding and 11 U.S.C. §§ 363, 369 and 105(a) and (II) Granting Related Relief* entered March 20, 2023. [D.I. 4566]

[4] The Court and all parties-in-interest are respectfully referred to the Premium Financing Agreement for the full terms of the parties' agreement. In the event of any discrepancy between the description of the Premium

A. The down payment due under the Premium Finance Agreement is $372,285.02;

B. The amount financed will be $487,890.03;

C. The amount financed will bear interest at 8.33% *per annum* and will be payable in 7 monthly installments of $71,647.26 each, starting on June 8, 2023;

D. CCH's obligations under the Premium Financing Agreement will be secured by a first priority lien on and security interest in all unearned premiums that may become payable for any reason under the Property Insurance Policy, and loss payments that reduce the unearned premiums, subject to any mortgagee or loss payee interests, and any interest in any state guarantee fund related to the Property Insurance Policy.

E. The Lender also has required, as a condition to its entry into the Premium Financing Agreement, that the Court enter an order, substantially in the form of the Proposed Order, granting the Lender, among other things, prospective relief from the automatic stay so that it can exercise various remedies, including terminating the Property Insurance Policy and applying unearned premiums to amounts due under the Premium Financing Agreement, if CCH defaults on its obligations under the Premium Financing Agreement.

14. Although the Debtors believe substantially all of the foregoing relief is already contained in the Prior Insurance Order, they nevertheless file this Motion due to the Lender's requirement for a specific form of order granting it the relief at issue.

---

Finance Agreement, as contained in this Motion, and the actual terms of the agreement, the Premium Finance Agreement shall control.

**RELIEF REQUESTED**

15. By this Motion, the Debtors request entry of the Proposed Order, which among other things (i) authorizes CCH to enter into the Premium Financing Agreement and incur secured debt under the Premium Financing Agreement, and (ii) grants the Lender prospective relief from the automatic stay to permit it to perfect its security interest in the unearned premiums under the Property Insurance Policy and to exercise its remedies under the Premium Financing Agreement in the event of default.

**BASIS FOR RELIEF REQUESTED**

**A.    Entry into the Premium Financing Agreement is a Sound Exercise of the Debtors' Business Judgement**

16. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for the conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Moreover, the coverage provided under the Property Insurance Policy is required by certain of the regulations, laws and/or contracts that govern the Debtors' activities, including the operating guidelines issued by the Office of the United States Trustee (the "**U.S. Trustee Operating Guidelines**"). Accordingly, the Debtors believe it is essential to their estates and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines that they continue to satisfy all obligations related to the Property Insurance Policy.

17. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1). In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only

that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property)*; see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

18. Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

19. The Debtors' entry into the Premium Financing Agreement is necessary and appropriate and may be authorized under sections 105(a) and 363(b) of the Bankruptcy Code. Moreover, pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. *See*, *e.g.*, *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448-49 (D. Colo. 1985) (authorizing interim financing agreement where debtor's business judgment indicated financing was necessary and reasonable for benefit of estate).

8

20. Section 362(d) of the Bankruptcy Code authorizes the Court to grant relief from the automatic stay "for cause," including lack of adequate protection. Cause exists to grant an insurance premium finance lender relief upon default on the premium financing agreement, to allow that lender to recover unearned premiums. *In re JII Liquidating, Inc.*, 344 B.R. 875, 890 (Bankr. N.D. Ill. 2006) ("cause exists under § 362(d) to terminate the automatic stay in order to allow [premium finance lender] to receive the refund of the unearned insurance premiums")

21. As discussed above, the Debtors believe that entering into the Premium Financing Agreement is in the best interests of their estates. The Lender – and every other potential lender from whom CCH received a proposal – is unwilling to provide insurance premium financing to the Debtors on either an unsecured basis, or without a prospective grant of relief from the automatic stay and the other protections contained in the Proposed Order.

**REQUEST FOR WAIVER OF BANKRUPTCY RULES 4001(a)(3) AND 6004(h)**

22. To implement the Premium Financing Agreement immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.

23. Pursuant to Bankruptcy Rule 4001(a)(3), "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).

24. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

25. As set forth above, CCH's immediate entry into a Premium Financing Agreement is essential to prevent potentially significant damage to the Debtors' operations and value.

26. Also as set forth above, granting the Lender a perfected security interest in the Property Insurance Policy's unearned premiums and proceeds, and granting the Lender prospective relief from the automatic stay as set forth in the Proposed Order, are essential to the Premium Financing Agreement.

27. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rules 4001(a)(3), 6004(h).

**NOTICE**

28. The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to MidCap Funding IV Trust; (iv) Drexel University d/b/a Drexel University College of Medicine; (v) the Debtors' unions; (vi) the Internal Revenue Service; (vii) the United States Attorney for the District of Delaware; (viii) the United States Department of Justice; (ix) the Pennsylvania Attorney General's Office; (x) the Pennsylvania Department of Human Services; (xi) the City of Philadelphia; (xii) the Lender; (xiii) the Debtors' depository banks; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice of this Motion is required.

[*remainder of page left intentionally blank*]

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: May 15, 2023 **SAUL EWING LLP**

By: */s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-6813
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Jeffrey C. Hampton
Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
Fax: (215) 972-7725
jeffrey.hampton@saul.com
adam.isenberg@saul.com

*Counsel for Debtors and Debtors in Possession*