# Exhibit 1

# (APA)

## *AMENDED* ASSET PURCHASE AGREEMENT

**Center City Healthcare, LLC, Philadelphia Academic Health System, LLC, St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, HPS of PA, L.L.C., SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., StChris Care at Northeast Pediatrics, L.L.C., TPS of PA, L.L.C., TPS II of PA, L.L.C., TPS III of PA, L.L.C., TPS IV of PA, L.L.C., and TPS V of PA, L.L.C.** (collectively, the "Seller"), debtors and debtors in possession in jointly-administered chapter 11 bankruptcy cases pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") as Case No. 19-11466 (MFW), for good and valuable consideration in the amount of the Purchase Price (as defined below) set forth in Paragraph 1 below, the sufficiency of which is hereby acknowledged, sells, transfers and assigns, to **RC Mid-America Liquidators LLC** (the "Buyer") all of their right, title and interest in, to and under any and all claims, demands, rights and causes of action that Seller had, now has, or may in the future have (the "Claims"): (i) against or with respect to any potential future settlement fund or funds or judgment (the "Potential Settlement Fund") that may be established in connection with a settlement of claims or judgment (the "Potential Settlement") in that certain class action proceeding against Blue Cross Blue Shield Association and its members (collectively, the "Defendants") in the case captioned as *arising from In re: Blue Cross Blue Shield Antitrust Litigation, MDL 2406, N.D. Ala., Master File No. 2:13-cv-20000-RDP* (the "Class Action Case") including, but not limited to, the settlement contemplated by that certain proposed class Settlement Agreement executed on October 4, 2024 (Doc. 3192-2) (the "Settlement"); and (ii) against any of the Defendants arising out of or related to the conduct alleged in connection with the types of claims for relief asserted in any complaint, amended complaint or supplemental complaint in the Class Action Case, whether raised in the Class Action Case or in any other forum, whether such conduct took place during the class period alleged or sought to be established in the Class Action Case or otherwise, and whether by settlement or judgment, including, without limitation, all of Seller's rights, title and interest in and to (a) the Claims, (b) all rights to receive any monetary recoveries, principal, cash and interest, fees, and other amounts in connection with the Claims, and (c) all proceeds with respect to the foregoing, whether the approval of the Settlement by the United States District Court for the Northern District of Alabama ("District Court") or any other court of competent jurisdiction ("Judicial Approval") is modified, vacated or overturned, or whether such Claims are asserted outside of the Class Action Case. The Claims and the rights and interests described in clauses (i) and (ii) above are referred to collectively herein as the "Assigned Rights." Seller and Buyer sometimes are referred to in this Claim Sale Agreement ("Agreement") individually as a "Party" and collectively as the "Parties."

For the avoidance of doubt, Buyer is assuming no obligations or liabilities in respect of Assigned Rights, including any obligations which become due and owing to any claims filer or other third party service provider as a result of this transaction, which obligations and liabilities shall be retained by, and remain the sole responsibility of, the Seller. The Parties acknowledge and agree that: purchase of the Claims and the other Assigned Rights is speculative and may result in no distributions or payments or distributions or payments that are different in amount and kind from the Purchase Price.

1. In exchange for the purchase of the Claims and all other Assigned Rights, Buyer agrees to pay the total purchase price of $135,000.00 (the "Purchase Price") to Seller as set forth below by wire transfer of immediately available funds in accordance with the wire instructions of Seller set forth on Exhibit A to this Agreement within five (5) Business Days (as defined below) after the date that the order of the Bankruptcy Court approving this Agreement becomes final. Upon Buyer's payment of the Purchase Price, Buyer shall own all of Seller's rights, title and interest in and to (a) the Claims and the Assigned Rights and (b) all recoveries, distributions or proceeds of any kind on account of the Claims and the Assigned Rights. As used in this Agreement, the term "Business Day" shall mean any day that is not (i) a Saturday, (ii) a

Sunday or (iii) any other day on which commercial banks are required or permitted by law to be closed in the State of New York.

2. Seller agrees promptly to provide documentation (collectively, "Documentation") to an Administrator (as defined below) including, all "doing business as" names, to the extent such information is available to Seller, and, using a form provided by the Administrator to the Buyer expressly for this purpose, executing instructions.

3. Seller represents, warrants, covenants and acknowledges to Buyer that: (a) Seller is duly authorized and empowered to execute and perform this Agreement; (b) subject to Bankruptcy Court approval, this Agreement constitutes the valid, legal and binding agreements of Seller, enforceable against Seller and any successor of Seller in accordance with its terms; (c) to the best of its knowledge, Seller has not taken any action (nor failed to take any action) that would result in Seller being ineligible to participate as a member of a class in the Class Action Case; (d) to the best of its knowledge, Seller is the sole owner of, and has good legal and beneficial title to, the Claims and the other Assigned Rights, free and clear of all liens, claims, security interests or encumbrances of any kind; (e) notwithstanding clause (d), Seller's Claims with respect St. Christopher's Healthcare, LLC, Philadelphia Academic Medical Associates, LLC, Philadelphia Academic Medical Associates, LLC, SCHC Pediatric Associates, L.L.C., St. Christopher's Pediatric Urgent Care Center, L.L.C., SCHC Pediatric Anesthesia Associates, L.L.C., St Chris Care at Northeast Pediatrics, L.L.C., and TPS V of PA, L.L.C. (collectively, the "St Christopher Assets") and certain subsidiaries are limited to the period ending December 15, 2019 (the "St Chris Sale Date"), when ownership of the St Christopher Assets was transferred; (f) with respect to the St Christopher Assets, Seller does not have title and is not selling rights pertaining to conduct of the Defendants beginning on December 15, 2019; (g) Seller has not previously pledged, sold, assigned, participated or otherwise transferred the Claims or any other Assigned Rights, in whole or in part, or any interest therein; (h) Seller has not engaged any claims filer or other third party service provider with respect to the Assigned Rights or Claim (i) to the best of its knowledge, neither the execution, delivery or performance of this Agreement nor consummation of the transactions contemplated pursuant to this Agreement will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting Seller, the Claims or any other Assigned Rights; (j) other than Bankruptcy Court approval, no consent, approval, filing or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Agreement by Seller; (k) no payment has been received by or on behalf of Seller in full or partial satisfaction of the Claims or any other Assigned Rights; (l) Seller is the original holder of the Claims and has not acquired the Claims from any other person or entity except that, upon information and belief, to the extent any Claims relate to conduct of the Defendants prior to January 11, 2018, Seller believes that it acquired such claims pursuant to an Asset Sale Agreement between Tenet Business Services Corporation and certain sellers identified therein, and the Purchasers (and certain other purchasers identified therein), which transaction closed effective January 11, 2018; (m) as of the date of this Agreement, no objection to the Claims have been filed or threatened, except for defenses asserted in any public court filings; (n) Seller has not engaged in any acts, conduct or omissions that might result in Buyer receiving in respect of the Assigned Rights proportionately less payments or distributions or less favorable treatment (including the timing of distributions) than other similarly situated provider claimants; (o) Seller has the level of financial sophistication and adequate information concerning the Claims, the Assigned Rights and the Class Action Case necessary to make an informed decision regarding entry into this Agreement, and has done so independently and without reliance on Buyer; and (p) Seller has not relied and will not rely on Buyer to furnish or make available any documents or other information regarding the Claims, any other Assigned Rights, or the Class Action Case.

4.  Buyer represents, warrants, and acknowledges to Seller that: (a) Buyer is duly authorized and empowered to execute and perform this Agreement; (b) this Agreement constitutes the valid, legal and binding agreements of Buyer, enforceable against Buyer in accordance with its terms; (c) neither the execution, delivery or performance of this Agreement nor consummation of the transactions contemplated pursuant to this Agreement will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting Buyer; and (d) no consent, approval, filing or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Agreement by Buyer.

5.  Each Party represents, warrants and acknowledges to the other Party that (a) such Party is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation; (b) the transaction underlying this Agreement is the product of good faith, arms'-length negotiations for fair value; (c) the consideration being paid by Buyer pursuant to this Agreement might differ both in kind and amount from the amount ultimately distributed with respect to the Assigned Rights; (d) it has adequate information concerning the Claims and the Class Action Case to make an informed decision regarding the sale or purchase of the Assigned Rights and that it has independently and without reliance on the other, and based on such information as it deems appropriate, made its own decision to enter into this Agreement; provided, however, Seller acknowledges and agrees that Buyer has relied on Seller's representations and warranties contained herein, in Buyer's determination to enter into this Agreement and to pay the Purchase Price; (e) it is aware that information that potentially may be pertinent to its decision to sell or purchase the Claims and the other Assigned Rights is available and may be obtained from court files pertaining to the Class Action Case; (f) it is a sophisticated seller or buyer, as the case may be, with respect to the transactions described in this Agreement with sufficient knowledge and experience in investing in claims of this type to properly evaluate the merits of these transactions, and it is able to bear the substantial risk associated with these transactions contemplated by this Agreement; (g) this Agreement has been completely read and its terms and conditions are fully understood and are voluntarily accepted by it, and each Party has had an opportunity to consult with counsel of its choosing in connection with the transactions contemplated by this Agreement; and (h) no claims filer, third party service provider, broker, finder or other entity acting pursuant to its authority or the authority of any of its affiliates is entitled to any commission, fee or other compensation in connection with this Agreement, the Claims or any other Assigned Rights for which the other Party could be responsible.

6.  Seller agrees that in the event Seller receives any payments, recoveries, proceeds, disbursements or distributions with respect to or relating to the Claims or any other Assigned Rights, whether in the form of cash, securities, instruments or other property, Seller will accept the same as Buyer's agent and will hold the same in trust for and on behalf of and for the sole benefit of Buyer, and, at Seller's expense, promptly deliver the same forthwith to Buyer in the same form received (free of any withholding, set-off, claim or deduction of any kind), together with any endorsements or documents necessary to transfer such distributions or payments to the Buyer, within three (3) Business Days in accordance with Buyer's written instructions. After the date of this Agreement, should Seller receive with respect to or relating to the Claims or any other Assigned Rights any notice that is not otherwise publicly available, Seller promptly will deliver a scanned version of the same to Buyer at legal@rcpioneerfund.com.

7.  Seller agrees to indemnify Buyer and its officers, directors, employees, agents, partners and controlling persons and their successors and assigns from all costs, expenses, losses, damages or liabilities, including reasonable attorneys' fees and expenses, which result from or arise out of any breach of any representation, warranty, covenant or agreement of Seller (including any prior agreement made by Seller with a claims filer or other third party service provider with respect to the Assigned Rights or Claims) set forth in this Agreement. Buyer agrees to indemnify Seller and their officers, directors, employees, agents,

partners and controlling persons and their successors and assigns from all costs, expenses, losses, damages or liabilities, including reasonable attorneys' fees and expenses, which result from or arise out of any breach of any representation, warranty, covenant or agreement of Buyer set forth in this Agreement.

8. Each Party will be solely responsible for all costs or expenses (including legal expenses) incurred by it with respect to the negotiation, preparation and execution of this Agreement and consummating the transactions contemplated in this Agreement.

9. Seller hereby irrevocably appoints Buyer as its true and lawful attorney in fact and authorizes Buyer to act in Seller's name, place and stead, or otherwise, to demand, sue for, compromise and recover all such sums of money that now are or that hereafter might become due and payable for or on account of the Claims or any other Assigned Rights, and grants to Buyer full authority to do all things necessary to enforce the Claims and all other Assigned Rights, including, but not limited to, the right to file a claim or claims in the Class Action Case or in any other case or forum, on account of the Claims and all other Assigned Rights. Seller shall, at Buyer's expense, use commercially reasonable efforts to promptly make available for consultation or witness purposes its officers, employees, consultants or agents who (i) are employed or retained by Seller at the time of such request and (ii) have direct expertise or knowledge with respect to the Claims, who shall be made available to Buyer upon reasonable advance notice during normal business hours; provided, that such assistance shall not interfere with the normal operations of Seller's business. Seller agrees to execute, acknowledge and deliver all such further certificates, instruments and other documents and take all such further action as might be reasonably necessary or appropriate to effect assignment of the Claims and all other Assigned Rights to Buyer or as may otherwise be reasonably directed by Buyer in writing to Seller, including actions necessary to have Buyer recognized by any claims administrator or other individual or entity responsible for reconciling and paying the Claims (an "Administrator"). Without limiting the generality of the foregoing, if and to the extent that any Administrator, counsel for any party in the Class Action Case, any court of competent jurisdiction, or persons or entities acting in similar respective capacities in any alternative action to the Class Action Case, do not recognize Buyer as having the requisite standing or authority to file the Claims, in Seller's name or otherwise, then Seller agrees to file the Claims on Buyer's behalf upon written request of Buyer.

10. From time to time upon request from Buyer, Seller shall execute and deliver to Buyer such documents reasonably requested by Buyer to evidence and effectuate the transfer contemplated by this Agreement in a form reasonably acceptable to the parties hereto. However, Buyer shall reimburse Seller for its reasonable costs associated with such compliance.

11. To the extent it is determined by the Administrator (or a court of competent jurisdiction) that the Claims included in the Assigned Rights for any period through the St Chris Sale Date were not transferred to the Buyer due to Seller not having proper title to the Claims or due to the inability of the Claims to be assigned to the Buyer, Seller, upon written demand by Buyer, shall promptly repay to Buyer the full Purchase Price minus the pro-rated portion of the Purchase Price corresponding to the portion of time in which the Administrator (or a court of competent jurisdiction) does recognize the transfer of Assigned Rights, if any (such product, the "Repayment Amount") together with interest on the Repayment Amount calculated from the date of Buyer's payment of the Purchase Price to the date of Seller's payment of the Repayment Amount (as applicable) at the interest rate of 5.0% compounded semiannually. The Repayment Amount, plus applicable interest, shall be due and payable within three (3) Business Days after Seller's (and its counsel, if applicable) receipt of a written demand from Buyer by email. For the avoidance of doubt, Buyer and Seller acknowledge and agree that Buyer's demand for a Repayment Amount made pursuant to this Paragraph 11 is a non-exclusive remedy and shall not be deemed an election of remedies or any limitation on any other

rights that Buyer may have hereunder or under applicable law. Upon full execution of this Agreement, Seller will file a motion (the "Sale Motion") seeking Bankruptcy Court approval of the proposed transaction. The Sale Motion shall provide that the sale of the Assigned Rights is free and clear of all liens, claims and encumbrances, pursuant to 11 U.S.C. Section 363(f).

12. Each Party acknowledges that: (a) the other currently may have, and later may come into possession of, information concerning the Assigned Rights, the Class Action Case and/or the parties thereto, which information is not known to such other party and that may be material to a decision to buy or sell (as appropriate) the Claims or any other Assigned Rights (the "Excluded Information"); (b) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale (as appropriate) of the Claims and all other Assigned Rights hereunder without receiving the Excluded Information; and (c) the other Party shall have no liability to it, and each Party waives and releases any claims that it might have against the other Party or the other Party's officers, directors, employees, agents, partners and controlling persons, whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information; provided, however, that each Party's Excluded Information shall not and does not affect the truth or accuracy of such Party's representations or warranties in this Agreement.

13. Seller further agrees that Buyer may sell, transfer or assign the Assigned Rights, in whole or in part, together with all or any portion of the right, title and interest of Buyer in and to this Agreement, and may transfer or assign its rights and obligations pursuant to this Agreement, in whole or in part, without the consent of Seller (the purchaser or transferee of the Assigned Rights, the "Beneficial Owner") and, in such event, shall provide written notice of same to Seller. All representations and warranties contained in this Agreement will survive the execution and delivery of this Agreement and the purchase and sale of the Claims and all other Assigned Rights, and will inure to the benefit of, and be binding upon, the Parties and their respective successors and assigns.

14. This Agreement constitutes the entire agreement and understanding of the Parties with respect to the transactions described in this Agreement and supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, representations and warranties in respect thereof, all of which have become merged and finally integrated into the Agreement.

15. This Agreement will be governed and construed in accordance with the laws of the State of New York without giving effect to any choice of law principles. Each Party waives, to the fullest extent permitted by applicable law, any right that it might have to trial by jury in any action to enforce, interpret or construe any provision of this Agreement.

16. All notices required to be delivered pursuant to this Agreement are to be sent in writing and may be sent by electronic mail (e-mail) or to such other address as the Party desiring the change advises the other Party from time to time through a notice given in accordance with the provisions of this Paragraph 16.

17. This Agreement may be executed in counterparts and such counterparts taken together will be deemed to constitute a single agreement. The Parties agree that facsimile signatures or other forms of electronic transmission of an executed counterpart of this Agreement will have the same binding force and effect as original signatures.

18. The details of the transaction contemplated hereunder shall remain confidential except that either Party may disclose such details and this Agreement (i) if required to do so by any law, court or regulation including in a motion to approve this Agreement in any bankruptcy court (including the

Bankruptcy Court) or any court in the Class Action Case, (ii) to any banking, regulatory or examining authority, (iii) as required or advisable to implement or enforce or give effect to the transaction contemplated hereunder, (iv) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other entity, (v) to its affiliates and to its and its affiliates' respective professional advisors, auditors, employees, professionals, representatives, officers, directors, managers, members and agents, each of whom shall also agree to the confidentiality terms herein; (vi) to any funding sources, capital partners or investors or (vii) any actual or potential Beneficial Owner who agrees to maintain the confidentiality of such information and documents in accordance with this Paragraph 18.

*[Signature Page Follows]*

55591961.3

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representative dated this 4th day of June 2025.

SELLER:

CENTER CITY HEALTHCARE, LLC, PHILADELPHIA ACADEMIC HEALTH SYSTEM, LLC, ST. CHRISTOPHER'S HEALTHCARE, LLC, PHILADELPHIA ACADEMIC MEDICAL ASSOCIATES, LLC, HPS OF PA, L.L.C., SCHC PEDIATRIC ASSOCIATES, L.L.C., ST. CHRISTOPHER'S PEDIATRIC URGENT CARE CENTER, L.L.C., SCHC PEDIATRIC ANESTHESIA ASSOCIATES, L.L.C., STCHRIS CARE AT NORTHEAST PEDIATRICS, L.L.C., TPS OF PA, L.L.C., TPS II OF PA, L.L.C., TPS III OF PA, L.L.C., TPS IV OF PA, L.L.C., AND TPS V OF PA, L.L.C.

By: _/s/ Allen Wilen_

Name: Allen Wilen

Title: Chief Restructuring Officer


BUYER:

RC MID-AMERICA LIQUIDATORS LLC

By: _/s/ Robert Ryman_

Name: Robert Ryman

Title: Managing Member


*[Signature Page to Amended Claim Sale Agreement]*

55591961.3