# Exhibit "A"

## Tenet/Conifer Settlement

41200957.19

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CENTER CITY HEALTHCARE, LLC d/b/a | ) Case No. 19-11466 (KG) |
| HAHNEMANN UNIVERSITY HOSPITAL, *et al.*,[1] | ) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) **Related to Docket Nos. 1030, 1074 and __** |
|  | ) |

### ORDER GRANTING MOTION OF THE DEBTORS FOR ENTRY
### OF AN ORDER APPROVING SETTLEMENT TERM SHEET BETWEEN
### THE DEBTORS, TENET BUSINESS SERVICES CORPORATION,
### CONIFER REVENUE CYCLE SOLUTIONS, LLC AND
### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Upon the motion (the "**Motion**")[2] of the Debtors seeking entry of an order, pursuant to

sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the

Settlement Term Sheet attached hereto as **Exhibit 1**; and due and proper notice of the Motion

having been given; and it appearing that no other or further notice of the Motion is required; and

it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2019; and it appearing that this is a core

proceeding pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and

considered the Motion and the Settlement Term Sheet and any responses thereto, including the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Center City Healthcare, LLC (3341), Philadelphia Academic Health System, LLC (8681), St. Christopher's Healthcare, LLC (8395), Philadelphia Academic Medical Associates, LLC (8165), HPS of PA, L.L.C. (1617), SCHC Pediatric Associates, L.L.C. (0527), St. Christopher's Pediatric Urgent Care Center, L.L.C. (6447), SCHC Pediatric Anesthesia Associates, L.L.C. (2326), StChris Care at Northeast Pediatrics, L.L.C. (4056), TPS of PA, L.L.C. (4862), TPS II of PA, L.L.C. (5534), TPS III of PA, L.L.C. (5536), TPS IV of PA, L.L.C. (5537), and TPS V of PA, L.L.C. (5540).  The Debtors' mailing address is 230 North Broad Street, Philadelphia, Pennsylvania 19102.

[2]     Any and all terms not defined herein shall have the meaning ascribed to them in the Motion.

*Reservation of Rights of the Non-Debtor PAHH Entities with Respect to the Motion of the Debtors for Entry of an Order Approving Settlement Term Sheet Between the Debtors, Tenet Business Services Corporation, Tenet Healthcare Corporation, Conifer Health Solutions, LLC and the Official Committee of Unsecured Creditors* [Docket No. 1074]; and after due deliberation and sufficient cause appearing therefor; IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Settlement Term Sheet is approved in all respects.

3.      The parties to the Settlement Term Sheet are authorized to take all appropriate steps required to effectuate the terms of the Settlement Term Sheet.

4.      All of the terms and provisions of this Order and the Settlement Term Sheet shall be binding upon any chapter 7 or chapter 11 trustees, successor and/or assign of the Debtors and the respective successors and assigns of the Tenet Parties.

5.      The terms of any chapter 11 plan of the Debtors or any order dismissing these Chapter 11 Cases, shall be consistent with the terms of this Order and the Settlement Term Sheet, provided that nothing herein constitutes a determination that any of the Bankruptcy Code's confirmation requirements are satisfied, and provided further that nothing herein constitutes authorization or approval of any distribution that is not consistent with the Bankruptcy Code's priority scheme.

6.      Notwithstanding any provision of the Settlement Term Sheet to the contrary, to the extent a notice of termination is sent to a non-terminating party in accordance with paragraph 20 of the Settlement Term Sheet (a "**Termination Notice**"), such Termination Notice shall be filed with the Court and served on (i) counsel to the Debtors, Saul Ewing Arnstein & Lehr LLP, 1201 North Market Street, Suite 2300, Wilmington, Delaware 19801 (Attn: Mark Minuti, Esq.

[mark.minuti@saul.com] and 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102 (Attn: Jeffrey Hampton, Esq. [jeffrey.hampton@saul.com], (ii) the Office of the United States Trustee, 844 N. King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Benjamin A. Hackman, Esq. [benjamin.a.hackman@usdoj.gov], (iii) counsel to the Committee, Sills Cummis & Gross P.C., The Legal Center, One Riverfront Plaza, Newark, NJ 07102 (Attn: Andrew H. Sherman, Esq. [asherman@sillcummis.com] and Boris I. Mankovetskiy, Esq. [bmankovetskiy@sillcummis.com] and Fox Rothschild LLP, 919 N. Market Street, Suite 300, Wilmington, DE 19899-2323 (Attn: Thomas M. Horan, Esq. [thoran@foxrothschild.com], and (iv) counsel to the Patient Care Ombudsman appointed in these chapter 11 cases, Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Dennis A. Meloro [melorod@gtlaw.com] and 77 West Wacker Drive, Suite 3100, Chicago, IL 60601 (Attn: Nancy A. Peterman [petermann@gtlaw.com]).

7.      Notwithstanding any rule to the contrary, this Order shall take effect immediately upon entry.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation and enforcement of this Order and the Settlement Term Sheet.

Dated: December 9th, 2019
Wilmington, Delaware

KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

# **Exhibit 1**

**(Settlement Term Sheet)**

**Execution Version**

**Exhibit 1** to Approval Order

**Term Sheet**

---

*This term sheet (this "Term Sheet") sets forth the terms of a settlement (the "Settlement") between Philadelphia Academic Health System, LLC and its debtor affiliates (collectively, the "Debtors"), Tenet Healthcare Corporation, Tenet Business Services Corp. ("Tenet"), Conifer Health Solutions, LLC, Conifer Revenue Cycle Solutions, LLC ("Conifer"), and the Official Committee of Unsecured Creditors (the "Committee"), subject to entry of an order (the "Approval Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Practice and Procedure (the "Bankruptcy Rules"). This Term Sheet and the Approval Order shall be binding upon any successor or assign of any party (including any trustee or examiner appointed in the Debtors' chapter 11 cases). The "Parties" shall mean the Debtors, Tenet Healthcare Corporation, Tenet, Conifer Health Solutions, LLC, Conifer, and the Committee.*

1.    HUH Billing Data.  Conifer shall continue to provide billing and collection services consistent with its obligations under the Master Services Agreement between Conifer and Philadelphia Academic Health System, LLC, dated January 11, 2018 (the "MSA") for Hahnemann University Hospital ("HUH") through the earlier of the closing of the STC Sale (as defined below) and December 31, 2019, subject to transfer of the current and historical billing/collection data for HUH (the "HUH Billing Data"), formatted in a manner reasonably acceptable to the Debtors, Tenet, and Conifer, *provided* that such data must be in a format that it can be accessed and utilized by HUH and/or a third party billing service thereafter. Such reformatting and transfer of the HUH Billing Data to be made on the earlier of five (5) days after the closing of the STC Sale and January 5, 2020, at Conifer's sole expense.  Conifer will receive a cash fee of 2% of collections received from HUH collections from the period commencing on December 1, 2019, through the earlier of the date on which Conifer ceases to provide billing and collection services for HUH and December 31 2019 (such fee, the "Conifer HUH Collection Fee").

2.    STC Billing Data.  Conifer shall continue to provide billing and collection services for St. Christopher's Hospital for Children ("STC") through March 31, 2020, subject to transfer of the current and historical billing/collection data for STC (the "STC Billing Data"), formatted in a manner reasonably acceptable to the Debtors, Tenet, and Conifer, *provided* that such data must be in a format that it can be accessed and utilized by STC and/or a third party billing service thereafter.  Provided that Tenet and Conifer's postpetition administrative claims as set forth in paragraph 6(a) – (c) are paid in full in cash, without setoff, deduction, or reduction, on or before April 6, 2020, such reformatting and transfer of the STC Billing Data shall be made on or before April 6, 2020, at Conifer's sole expense.  Subsequent to the closing of the sale of STC contemplated by the *Order Under 11 U.S.C. §§ 105, 363, 365, 503 and 507 (A) Approving Asset Purchase Agreement with STC Opco, LLC (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Interests, (C) Authorizing Assumption and Assignment of Certain of the Debtors' Executory Contracts, and (D) Granting Related Relief* (D.I. 795) (the "STC Sale

Order" and, such sale, collectively, the "STC Sale"), Conifer will receive a cash fee of 2% of collections received from the STC Sale closing date through March 31, 2020 (the "Conifer STC Collection Fee"). Conifer shall promptly invoice monthly for the collection services and all invoices shall be paid in full in cash within 5 business days of receipt of each invoice. If the Conifer HUH Collection Fee, the Conifer STC Collection Fee, and/or any other invoices are not paid timely in full in cash, Conifer and Tenet have the right, subject to paragraph 20, to terminate HUH and STC collection services and support for the MSA and the Transition Services Agreement between Tenet and Philadelphia Academic Health System, LLC, dated January 11, 2018 (the "TSA"), without further notice to or approval by the Bankruptcy Court or any other court. Furthermore, the Debtors will not object to any commercial agreement between Tenet, Conifer, and the Buyer (as defined in the STC Sale Order) provided that any such agreement does not have a material, adverse effect on either this Term Sheet or the Buyer's (as defined in the STC Sale Order) post-closing obligations to the Debtors. Tenet and Conifer shall provide the Debtors with a copy of any such commercial agreement prior to any hearing seeking entry of the Approval Order, to the extent such an agreement exists as of that time, and if not thereafter, and provided that the Debtors agree to keep the information therein confidential and/or seek to seal such information. To the extent that the TSA and MSA have not been rejected or assumed and assigned prior to April 1, 2020, the TSA and MSA shall be deemed rejected on April 1, 2020 unless the Parties agree otherwise in writing. For the purposes of clarity, any rejection of the TSA and MSA shall not result in any additional claims against the Debtors beyond the Allowed Pre-Petition Claims identified in paragraph 11 below.

3.      TSA Services. Tenet shall provide TSA services as modified by this Term Sheet for HUH and, to the extent that the STC Sale has not closed prior to such date, STC, through December 31, 2019. In connection with such ongoing TSA services, HUH and STC will work in good faith with Tenet to eliminate services provided under the TSA that are no longer necessary given the status of operations at both hospitals. On or before December 31, 2019, Tenet shall, at its expense, transfer to HUH and STC, in a usable format, all reasonably available data regarding the Debtors' business operations (other than HR information but including, without limitation, accounting records, disbursements, accounts payable, but excluding medical records and medical data) created or maintained by Tenet pursuant to the TSA. To the extent the Debtors determine that any such data was not transferred to HUH and STC on or before December 31, 2019, the Debtors may request that data from Tenet and Tenet shall supply such data, if available, consistent with this paragraph. For the services documented in paragraph 2 above, Tenet will provide TSA support in a manner described in this paragraph 3, from the STC Sale date through March 31, 2020 at no additional charge to the Debtors.

4A.     Services Disputes. Notwithstanding any notice, cure, or dispute adjudication procedures set forth in the TSA or MSA, to the extent disputes or differences arise in connection with the services outlined in paragraph 2 and 3 above, the applicable Parties shall provide written notice (email shall suffice) of any such disputes or differences and, as soon as reasonably practicable thereafter, meet and confer, in good faith, with participation by the Honorable Judith Fitzgerald (Ret.) as mediator, in an attempt to resolves such disputes and differences. In the event the Parties are unable to resolve such disputes and differences within a reasonable period of time given the circumstances, then any Party may seek appropriate relief from the Bankruptcy Court.

4B.   Service Levels.  The Parties agree that with respect to any services rendered by Tenet or Conifer during the period following the Release Effective Date (as defined herein): (i) except as expressly provided herein, Tenet and Conifer shall only be required to provide services at service levels consistent with the TSA and MSA, as applicable, provided there will be no penalties as provided in the MSA that will result in the reduction of the payments set forth in paragraph 6 below; (ii) with respect to any services provided pursuant to this Term Sheet, no Debtor shall assert, and each Debtor hereby waives, any right to assert any claim against any Tenet and Conifer Released Party on any theory of liability for special, indirect, consequential or punitive damages arising out of, in connection with, or as a result of, this Term Sheet or any agreement or instrument contemplated hereby; and (iii) Tenet and Conifer's liability for performing services under this Term Sheet shall be limited to the amount paid for such services for such time period.

5.   Pre-Closing Superpriority Administrative Claim.  Tenet and Conifer shall waive any further administrative claim (in excess of $400,000 per week) for services rendered from the Petition Date through August 20, 2019, the unpaid portion of which totals $2,200,000 after taking into account payments received in the amount of $200,000 per week, which claim of $2,200,000 shall be paid from the net cash proceeds of the STC Sale closing (the "Pre-Closing Superpriority Administrative Claim").  The foregoing claim shall be entitled to super administrative expense priority status as to the net cash proceeds of the STC Sale, senior to any other administrative claim other than the super administrative expense priority claims of MidCap Funding IV Trust, in its capacity as lender ("MidCap"), and the Carveouts as provided in the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Adequate Protection; (IV) Granting Adequate Protection and Modifying the Automatic Stay* [Docket No. 557] (the "Final DIP Order").  In the event the STC Sale does not close on or before December 31, 2019, or the proceeds of the STC Sale are insufficient to satisfy the Pre-Closing Superpriority Administrative Claim in full in cash within three (3) business days after the closing of the STC Sale, the balance of the Pre-Closing Superpriority Administrative Claim shall be treated in the same manner as Tenet and Conifer's other administrative claims under Paragraph 6 hereof.

6.   Other Superpriority Administrative Claim.  Tenet and Conifer shall be entitled to an additional super-priority administrative claim, which claim shall be *pari passu* with the Pre-Closing Superpriority Administrative Claim and senior to any other administrative claim other than the super priority claims of MidCap and the Carveouts as provided in the Final DIP Order, equal to (a) $400,000 per week for the period August 21, 2019 through the closing of the STC Sale (subject to credit for payments already made); (b) $100,000 per week thereafter through December 31, 2019; (c) the Conifer HUH Collection Fee; and (d) the Conifer STC Collection Fee.  The foregoing amounts (to the extent not already paid), other than the Conifer HUH Collection Fee and the Conifer STC Collection Fee, each of which shall be paid in full in cash in accordance with paragraph 2 hereof, shall be paid in full in cash (without setoff, deduction, or reduction) weekly by the Debtors.

7.   HUH Electronic Medical Records.  Tenet shall maintain or engage a third-party to maintain, at Tenet's sole expense, and to the extent required by applicable law, all electronic medical records and related data (the "HUH Electronic Medical Records") maintained by, or for

3

the benefit of, Tenet for HUH consistent with such obligations under the TSA. Tenet shall arrange a process, at its expense, to maintain the Debtors' ability to access the HUH Electronic Medical Records for, *inter alia*, the defense of claims against Tenet and/or the Debtors; responding to subpoenas and/or governmental requests; and billing. Tenet will further allow physicians and HUH patients and/or their legal representatives (at their sole cost and expense, in each case, solely to the extent permitted by applicable law) reasonable ability to access, during business hours and upon reasonable prior written notice (email shall suffice) to Tenet or its counsel, to and/or copies of their medical records, within the time provided by all applicable state and federal laws, including the Health Insurance Portability and Accountability Act. The Debtors, the Committee, Tenet, and Conifer will engage, in good faith and consistent with applicable law and the Debtors' and Committees' fiduciary duties, to establish a process to limit the length of time that the HUH Electronic Medical Records shall be maintained.

8.      Iron Mountain HUH Records.  Iron Mountain Inc. currently maintains non-electronic medical records for HUH (the "Iron Mountain HUH Records"). Following Court approval of this Term Sheet, Tenet shall fund the costs of maintaining or engaging Iron Mountain Inc. or a different third party to maintain, at Tenet's sole expense and to the extent required by all applicable state and federal laws, all Iron Mountain HUH Records. Tenet shall arrange a process, at its expense, for a third party to maintain and provide access to the Iron Mountain HUH Records.  Subject to any such third party's internal billing, maintenance, and other procedures, Tenet, or such third party at Tenet's direction, will provide access, upon prior written notice (email shall suffice) to Tenet or Iron Mountain Inc. or a designated Iron Mountain Inc. representative, during reasonable business hours, in connection with, *inter alia*, requests for Iron Mountain HUH Records for the defense of claims against Tenet and/or the Debtors, responding to subpoenas, patient medical record requests, and billing. The cost of retrieval and return of any such records shall be borne by the party from whom the request is received. The Debtors, the Committee, Tenet, and Conifer will engage, in good faith and consistent with applicable law and the Debtors' and Committees' fiduciary duties, to establish a process to limit the length of time that the Iron Mountain HUH Records shall be maintained.

9.      HUH Sale Matters.  If the Debtors close on a sale of substantially all of the assets of HUH and the buyer agrees to maintain some or all of the HUH Electronic Medical Records and/or the Iron Mountain HUH Records, Tenet shall transfer, at its expense, such applicable records to the buyer; *provided* that the cost of transfer shall not exceed the cost to Tenet to maintain such records as reasonably determined by the Parties, or if the Parties are unable to agree, as determined by the Bankruptcy Court. The Debtors and their professionals shall consult with Tenet, and response to reasonable inquiries regarding, such transfer.

10.     Contribution Payment.  Provided that the Debtors pay the Pre-Closing Superpriority Administrative Claim, Tenet and/or Conifer shall pay the Debtors $2,800,000 (the "Contribution Payment") within three (3) business days after payment in full of the claims of MidCap (other than any holdback for indemnification or otherwise as provided in any payoff letter) or thereafter. The Contribution Payment shall be reduced on a dollar-for-dollar basis until and to the extent the Debtors do not satisfy the Pre-Closing Superpriority Administrative Claim in full in cash. Such funds will be treated as a contribution under a later filed liquidating plan litigation trust or order dismissing the chapter 11 cases absent confirmation of a liquidation plan. The

Parties agree to reasonably cooperate in connection with any requests for documents or information, at the sole cost and expense of the Party requesting such documents or information, in connection with the pursuit or defense of claims by or against any Party, other than the claims released pursuant to this Term Sheet. For purposes of clarity, such cooperation shall not be interpreted in any way as a waiver of any privileges, including, but not limited to, the attorney-client privilege and the attorney work-product privilege, which privileges are specifically preserved.

11.     <u>Allowance of Certain Claims</u>.  Tenet and Conifer's prepetition unsecured claims under the TSA and MSA, including those TSA and MSA claims arising under the Asset Sale Agreement dated August 31, 2017 (as conformed through its First Amendment on January 11, 2018, the "<u>ASA</u>"), shall be allowed in the amount of $57.2 million against the applicable Debtor(s) (the "<u>Allowed Pre-Petition Claims</u>").   Notwithstanding anything to the contrary contained herein, Tenet reserves the right to file additional unsecured claims under the ASA ("<u>Additional ASA Claims</u>") and claims related to any pension liability (the "<u>Pension Claim</u>"), and all of the Parties' rights to object to such claims shall be fully preserved. The Allowed Pre-Petition Claim and any allowed Additional ASA Claims or Pension Claim shall be subordinated in recovery, but not for any other purposes (including voting), until all allowed non-priority prepetition unsecured claims of creditors other than Tenet and Conifer, receive aggregate distributions in an amount equal to (such lesser amount, the "<u>Minimum Recovery Threshold</u>"): (A) 50% of the aggregate amount of such allowed non-priority amount of such other allowed prepetition unsecured claims; and (B) Twenty-Five Million Dollars ($25,000,000). Once other allowed non-priority prepetition general unsecured claims receive a distribution equal to the Minimum Recovery Threshold, then, all allowed non-priority general unsecured claims (including the Allowed Pre-Petition Claim and any allowed Additional ASA Claim or Pension Claim) shall share pro rata in any subsequent distributions.  For the avoidance of doubt, once other allowed non-priority prepetition general unsecured claims are satisfied in full, the holder of the Allowed Pre-Petition Claim and any allowed Additional ASA Claim or Pension Claim shall receive any remaining distributions until the Allowed Pre-Petition Claim and the allowed Additional ASA Claim and/or Pension Claim is satisfied in full.

12.     <u>Releases</u>.

        (A)     Subject to entry of the Approval Order and payment by Tenet and/or Conifer of any Contribution Payment as set forth in paragraph 10 hereof, for good and valuable consideration, the sufficiency of which is hereby acknowledged, each Estate Releasing Party[1]

---

[1]   As used herein, "<u>Estate Releasing Party</u>" means:  (a) each Debtor and its Representatives; and (b) the Committee.  As used herein, "<u>Representative</u>" means, with respect to any person or entity, any current or former direct or indirect subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such.  For the avoidance of doubt, for purposes of this Term Sheet, no member of the Committee, in its capacity as such, is a Party, an Estate Releasing Party, a Tenet and Conifer Released Party, a Estate Released Party, or a Representative.

hereby releases each Tenet and Conifer Released Party[2] as of the date of the later of entry of the Approval Order and payment by Tenet and/or Conifer of any Contribution Payment as set forth in paragraph 10 hereof (the "<u>Release Effective Date</u>"), from any and all claims (including the Debtors' claims and damages based on net working capital and vouchered accounts payable in connection with the ASA), causes of action (including any preference, fraudulent conveyance, or similar causes of action pursuant to chapter 5 of the Bankruptcy Code and applicable state law), obligations, rights, suits, damages, remedies, and liabilities, whether known or unknown, contingent or not contingent, including any derivative claims that could be asserted on behalf of the Debtors, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the MSA, the TSA, the ASA, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Debtors' chapter 11 cases, the January 2018 asset sale transaction, the formulation, preparation, dissemination, negotiation, or filing of the Term Sheet and entry of the Approval Order, any contract, instrument, release, or other agreement or document created or entered into in connection with the Term Sheet or the Approval Order, the pursuit of entry of the Approval Order, or any other related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Release Effective Date, including for any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence; *provided* that the foregoing release shall not: (w) release any claims among the Parties under, or allowed by, the Term Sheet or the Approval Order, *provided, further, that* any claims against Tenet and Conifer Released Party with respect to any services provided by Tenet or Conifer, on the one hand, to the Debtors, on the other hand, following the period commencing on the Release Effective Date through March 31, 2020, shall be deemed subject to the release set forth in this paragraph 12(A) as of March 31, 2020, without further action by, approval by, or notice to any person or entity, except to the extent that any such claims are determined by the Bankruptcy Court to have resulted primarily due to the bad faith, gross negligence, or willful misconduct of Tenet or Conifer, as applicable; or (x) release any claims, causes of action, obligations, rights, suits, damages, remedies, and liabilities against any person or entity that is not a Tenet and Conifer Released Party, including any Non-Released Party.[3] For the avoidance of any doubt, the Debtors shall dismiss (with prejudice) and covenant not to directly or indirectly pursue against any Tenet and Conifer Released Party any claim or cause of action of the Debtors asserted in, or with respect to the subject matter of, the proceedings styled as *Philadelphia Academic Health Holdings, LLC et al. v. Tenet Business Services Corp.*, C.A. No. N19C-04-035-EMD-CCLD, or *Philadelphia Academic Health Holdings, LLC v. Tenet*

---

[2]    As used herein, "<u>Tenet and Conifer Released Party</u>" means:  (a) Tenet Healthcare Corporation and its Representatives; (b) Conifer Health Solutions, LLC and its Representatives; *provided* that the term "<u>Tenet and Conifer Released Party</u>" shall not include any Non-Released Party.  As used herein, "<u>Non-Released Party</u>" shall mean, without limitation, each of the following, (a) Joel Freedman; (b) Front Street Healthcare Properties, LLC; (c) Front Street Healthcare Properties II, LLC; (d) Broad Street Healthcare Properties, LLC; (e) Broad Street Healthcare Properties II, LLC; (f) Broad Street Healthcare Properties III, LLC; (g) Philadelphia Academic Health Holdings, LLC; (h) Paladin Healthcare Capital, LLC; (i) American Academic Health System, LLC; and (j) MBNF Investments, LLC.

[3]    The releases contemplated by this Term Sheet are without prejudice to any Non-Released Party's rights with respect to Tenet and Conifer under the ASA; and /or any Non-Released Party's rights in any pending litigation current brought by any Non-Released Party against Tenet and/or Conifer.

*Business Services Corp.*, C.A. No. 2018-0684-KSJM, or otherwise released against the Tenet and Conifer Released Party herein. Any service disputes raised after entry of the Approval Order and on or before March 31, 2020 pursuant to paragraph 4A herein shall not be deemed released under this paragraph except as set forth above; any such disputes shall be resolved or adjudicated as set forth in paragraph 4A.

     (B)    Subject to entry of the Approval Order, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, each Tenet and Conifer Releasing Party[4] hereby releases each Estate Released Party[5] as of the date of entry of the Approval Order, from any and all claims, causes of action, obligations, rights, suits, damages, remedies, and liabilities, whether known or unknown, contingent or not contingent, based on or relating to, or in any manner arising from, in whole or in part, the MSA, the TSA, the ASA, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Debtors' chapter 11 cases, the January 2018 asset sale transaction, the formulation, preparation, dissemination, negotiation, or filing of the Term Sheet and entry of the Approval Order, any contract, instrument, release, or other agreement or document created or entered into in connection with the Term Sheet or the Approval Order, the pursuit of entry of the Approval Order, the administration and implementation of the Term Sheet, or any other related agreement with respect to the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before entry of the Approval Order, including for any claims related to any act or omission that may have constituted actual fraud, willful misconduct or gross negligence; *provided* that the foregoing release shall not: (w) release any claims among the Parties under, or allowed by, the Term Sheet or the Approval Order (including the Allowed Pre-Petition Claims, any Additional ASA Claims, and the Pension Claim); (x) release any claims, causes of action, obligations, rights, suits, damages, remedies, and liabilities against any person or entity that is not a Estate Released Party, including any Non-Released Party; (y) release the Allowed Pre-Petition Claims, any Additional ASA Claims, and/or the Pension Claim; *provided, further,* that the release by any Tenet and Conifer Releasing Party of any Estate Released Party will not prejudice any rights that such party has against any party that is not an Estate Released Party (including any Non-Released Party) in future litigation against such party; or (z) in any way limit or affect the right of the Debtors and/or their estates to assert against any person or entity that is not a Tenet and Conifer Released Party any claim or cause of action with respect to the subject matter of any released claim or cause of action.[6]    For the

---

[4]   As used herein, "<u>Tenet and Conifer Releasing Party</u>" means: (a) Tenet Healthcare Corporation and its Representatives; and (b) Conifer Health Solutions, LLC and its Representatives.

[5]   As used herein, "<u>Estate Released Party</u>" means: (a) each Debtor and its Representatives; and (b) the Committee and its professionals (solely in their capacity as such); *provided* that the term "<u>Estate Released Party</u>" shall not include any Non-Released Party.

[6]   The releases contemplated by this Term Sheet are without prejudice to, and Tenet and Conifer expressly reserve: (a) Tenet and Conifer's right to consent to any service agreement with STC's purchaser; (b) Tenet's right to the asserted cure cost of $230,154.63 with respect to the Access License and Shared Services Agreement and Agreement Regarding Sublease with Center for the Urban Child, Inc., as further set forth in *Tenet Business Services Corporation and Conifer Revenue Cycle Solutions, LLC's Supplemental Limited Objection and Reservation of Rights Regarding the Sale of St. Christopher's Hospital for Children* [Docket No. 762]; (c) Tenet's rights in connection with any matter in connection with any claim or cause of action asserted by, or that may be asserted by, Pension Fund for Hospital & Health Care Employees — Philadelphia and

avoidance of any doubt, this Term Sheet shall not release any claim that Tenet has under any personal guaranty executed with respect to the Senior Secured Promissory Note dated January 11, 2018 by Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC in favor of Tenet.

13.     Dismissal of Litigation and Appeal.  Subject to entry of the Approval Order and payment by Tenet and/or Conifer of any Contribution Payment as set forth in paragraph 10 hereof, the Debtors shall (a) dismiss (with prejudice and with each side to bear their own costs) and covenant not to directly or indirectly pursue against any Tenet and Conifer Released Party any claim or cause of action of the Debtors asserted in, or with respect to the subject matter of, the proceedings styled as *Philadelphia Academic Health Holdings, LLC et al. v. Tenet Business Services Corp.*, C.A. No. N19C-04-035-EMD-CCLD, or *Philadelphia Academic Health Holdings, LLC v. Tenet Business Services Corp.*, C.A. No. 2018-0684-KSJM, or otherwise released against the Tenet and Conifer Released Party herein; and (b) dismiss (with prejudice and with each side to bear its own costs) the appeal styled as *Center City Healthcare, LLC d/b/a Hahnemann University Hospital, et al. v. Tenet Business Services Corporation, et al.*, BAP 19-54 / Case No. 19-cv-01858-RGA.

14.     Forthcoming Plan.  Subject to entry of the Approval Order, the Debtors shall incorporate this Term Sheet into any plan or plans of liquidation.  The Committee and Tenet and Conifer will not oppose the Debtors' current request for an extension of exclusivity.  The Debtors, Tenet, and Conifer agree to support, and to not directly or indirectly oppose, confirmation of such plan or plans provided such plan or plans are consistent with the Term Sheet and Approval Order.

15.     Further Assurances; Access and Cooperation.  Subject to the other terms of this Term Sheet, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court, from time to time, to effectuate the transactions contemplated hereby, as applicable.  The Debtors further agree to reasonably cooperate with Conifer and Tenet in performing services contemplated by this Term Sheet, including timely responding to any reasonable requests or inquiries and providing reasonably access to the Debtors' advisers, personnel, books, and records that are not otherwise in the possession of Tenet or Conifer, as applicable.  During normal business hours and after advanced written notice to the Debtors' counsel (email shall suffice), Tenet and Conifer and their respective Representatives shall be given reasonable access to the Debtors' advisers, personnel, books, and records solely for purposes of performing services contemplated by this Term Sheet.

16.     Entire Agreement.  Except as otherwise explicitly provided herein, this Term Sheet constitutes the entire agreement among the Parties with respect to the Settlement and supersedes

---

Vicinity or any other person or entity in connection with the Debtor's multiemployer pension plan obligations; (d) Tenet's rights under the Senior Secured Promissory Note dated January 11, 2018 by Front Street Healthcare Properties, LLC and Front Street Healthcare Properties II, LLC in favor of Tenet; (e) Tenet's rights with respect to any non-Debtor party under the ASA; and/or (f) Tenet and Conifer's rights in any pending or future litigation brought by Tenet and/or Conifer against any Non-Released Party.

all prior agreements, oral or written, among the Parties with respect thereto, other than any confidentiality agreement with respect to the Settlement.

17.   CHOICE OF LAW.   THIS TERM SHEET IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Term Sheet in the Bankruptcy Court, and solely in connection with claims arising under this Term Sheet: (a) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court; (b) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (c) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party hereto.

18.   Execution of Term Sheet.   This Term Sheet may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Except as expressly provided in this Term Sheet, each individual executing this Term Sheet on behalf of a Party has been duly authorized and empowered to execute and deliver this Term Sheet on behalf of said Party.

19.   Rules of Interpretation.   This Term Sheet is the product of negotiations among the Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Term Sheet, or any portion hereof, shall not be effective in regard to the interpretation hereof. Each Party was represented by counsel during the negotiations and drafting of this Term Sheet and continue to be represented by counsel.

20.   Enforceability of Term Sheet.   Each of the Parties to the extent enforceable waives any right to assert that the exercise of termination rights under this Term Sheet is subject to the automatic stay provisions of the Bankruptcy Code, and expressly stipulates and consents hereunder to the prospective modification of the automatic stay provisions of the Bankruptcy Code for purposes of exercising termination rights under this Term Sheet, to the extent the Bankruptcy Court determines that such relief is required. Notwithstanding the foregoing, prior to the exercise of any termination rights under this Term Sheet, the terminating party shall provide the non-terminating party with five (5) business days' notice of termination and an opportunity to cure any default within such time period.

21.   Waiver.   If the Bankruptcy Court does not enter the Approval Order, or if this Term Sheet is terminated for any reason, the Parties fully reserve any and all of their rights. Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Term Sheet and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms or the payment of damages to which a Party may be entitled under this Term Sheet.

22.   Specific Performance.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Term Sheet by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Bankruptcy Court requiring any Party to comply promptly with any of its obligations hereunder.

23.   Several, Not Joint, Claims.  Except where otherwise specified, the agreements and obligations of the Parties under this Term Sheet are, in all respects, several and not joint.

24.   Severability and Construction.  If any provision of this Term Sheet shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Term Sheet for each Party remain valid, binding, and enforceable

25.   Remedies Cumulative.  All rights, powers, and remedies provided under this Term Sheet or otherwise available in respect hereof at Law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

26.   Mutual Non-Disparagement.  Subject to applicable law, each of the Parties covenants and agrees that, following execution of this Term Sheet, until such time as the other Party or any of its Representatives, shall have breached this Term Sheet, neither it nor any of its Representatives, shall, with respect to the subject matter of this Term Sheet and any claim or cause of action released pursuant to this Term Sheet, in any way publicly criticize, disparage, call into disrepute, or otherwise defame or slander the other Parties or the Parties' businesses, products, or services, as applicable, in any manner that would reasonably be expected to damage the business or reputation of such other Parties, their businesses, products, or services or their Representatives, as applicable.  This paragraph of the Term Sheet shall not limit the ability of any Party or its Representative to act in accordance with his or her fiduciary duties or otherwise in accordance with applicable law; *provided* that upon entry of the Approval Order, this Term Sheet shall be binding in all respects on each Party.  Notwithstanding the foregoing, nothing in this paragraph of this Term Sheet shall be deemed to prevent any Party from complying with a request for information from any governmental authority with jurisdiction over the Party from whom information is sought, provided that, solely in the case of any disclosure that is proposed or required to appear in any required disclosure relating thereto, such Party must provide prompt written notice (email shall suffice), to the extent legally permissible and practicable under the circumstances, to the other Party prior to making any such public disclosure and reasonably consider any comments of such other Party.  For the avoidance of any doubt, this paragraph shall not (a) limit the right or ability of any Party to (a) assert claims not otherwise released in this Term Sheet; (b) defend itself or its Representatives in connection with, or to assert any claim, counterclaim, or defense with respect to, any claim asserted or that may be asserted by any person or entity; or (c) preclude any Party from notifying Tenet or Conifer, or exercising remedies pursuant to this Term Sheet, the MSA or TSA, with respect to any performance

disputes under the TSA, the MSA, and/or this Term Sheet that arise subsequent to entry of the Approval Order.

27.    No Admissions.  This agreement is intended to compromise disputed claims and to avoid further litigation and motions practice.  Nothing in this agreement, nor any actions taken by, or failure to act by, the Parties in furtherance of this agreement, shall be construed as an admission of liability, wrongdoing, or violation of rule or law on the part of the Debtors, the Committee, Tenet, or Conifer, and the Debtors, the Committee, Tenet, and Conifer each expressly deny and dispute any such action taken by, or failure to act by, the Parties.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;*

*SIGNATURE PAGES FOLLOW]*

CENTER CITY HEALTHCARE, LLC, ET AL.

By: Allen Wilen, CRO

Dated: 11/6/19

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF CENTER CITY HEALTHCARE, LLC, ET AL.

By: Shane Reed

Dated: 11-6-19

TENET HEALTHCARE CORPORATION

By: Michael T. Maloney

Dated: 11/6/19

TENET BUSINESS SERVICES CORP.

By: Michael T. Maloney

Dated: 11/6/19

CONIFER HEALTH SOLUTIONS, LLC

By: _Tom Arist, chief Administrative officer_

Dated: 11/6/19

Case 19-11466-MFW    Doc 1918-1    Filed 12/00/13    Page 18 of 18

CONIFER REVENUE CYCLE SOLUTIONS, LLC

By: Tom Arnst, Chief Administrative Officer

Dated: 11/6/19